## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN and those similarly situated,

Plaintiffs,

v.

PAMELA H NOONAN;
THOMAS J NOONAN;
INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

Defendants.

---

### DEFENDANT CULTURAL CARE, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

---

### I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), this Court should enter an order, substantially similar to the proposed order attached as *Exhibit 1*, dismissing Plaintiff Johana Paola Beltran's ("Plaintiff") claim against Cultural Care, Inc. ("Cultural Care") asserted in Count I

of the Complaint for alleged violation of Section 1 of the Sherman Act, 15 U.S.C § 1 *et seq.*, which is the only claim asserted against Cultural Care, for the following reasons:

1) Cultural Care's conduct in complying with U.S. Department of State ("DOS") regulations and directives while acting as a DOS-designated exchange visitor program sponsor for the U.S. au pair cultural exchange program is protected from antitrust liability under the federal instrumentality/implied immunity doctrine, which provides private actors with immunity from antitrust claims when they are acting at the direction of the federal government. Plaintiff's claim is frivolous and fails under the long-settled body of case law cited below because it faults Cultural Care for complying with DOS regulations and directives by ensuring that host families paid au pairs the $195.75 weekly stipend amount set by DOS in the Notice issued by DOS dated June 14, 2007 (the "Stipend Notice"), which is attached as *Exhibit 2*.[1]

2) Plaintiff has failed to allege any facts showing that Cultural Care had any communications whatsoever with the other sponsor defendants, much less that Cultural Care conspired or otherwise reached an agreement with other sponsors to restrain trade. Plaintiff merely pleads parallel conduct coupled with a bare assertion of conspiracy, which the *Twombly* court specifically ruled does not suffice for purposes of stating a claim under Section 1 of the Sherman Act.

---

[1] When considering a motion to dismiss, "a Court may consider outside documents that are both central to the plaintiffs' claims and to which the plaintiffs refer in their complaint." *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384 (10th Cir. 1997) (and cases cited therein). A Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

Cultural Care is a United States Government-designated exchange visitor program sponsor that conducts a U.S. Government cultural exchange program under which foreign au pair candidates are afforded the opportunity to live in the United States and participate in the home life of an American host family.[2]  The au pair program is one of several U.S. cultural exchange programs that are governed by the Mutual Educational and Cultural Exchange Act of 1961 (Fulbright-Hays Act), 22 U.S.C. § 2451, *et seq.* and DOS regulations 22 C.F.R. § 62, *et seq.*  Au pairs are between eighteen and twenty-six years old, are high school graduates, are proficient in English and, in addition to providing au pair services, complete an educational requirement while in the program.  As explained in Section III(A)(1) below, the program "assist[s] the Department of State in furthering the foreign policy objectives of the United States."[3]

Plaintiff alleges in the Complaint that she participated in the au pair program in 2012 after Defendant InterExchange, Inc. ("InterExchange") placed her in the home of Defendants Pamela and Thomas Noonan, a host family in Highlands Ranch, Colorado. The defendants in this purported class action case are the Noonans and InterExchange, who were directly involved in Plaintiff's au pair placement, and fourteen other sponsors (including Cultural Care) who had no involvement whatsoever in Plaintiff's placement. Plaintiff seeks to circumvent the legislative/administrative process and effectively invalidate the DOS mandated $195.75 au pair weekly stipend by asserting a Sherman Act claim in Count I against Cultural Care and the other sponsors.  Plaintiff essentially claims

---

[2] 22 C.F.R. 62.2 (defining "sponsor" as "[a] legal entity designated by the Secretary of State to conduct an exchange visitor program.").
[3] *Id.* § 62.1(a).

that the sponsors engaged in an illegal "price fixing conspiracy" when they complied with DOS regulations by ensuring that host families paid the DOS mandated stipend to their au pairs in compliance with the regulations and the Stipend Notice.  At best, Plaintiff's claim demonstrates an inexcusable ignorance of basic governmental immunity principles.  At worst, it is a knowingly frivolous and sanctionable attempt to draw attention and publicity.  Either way, this Court should summarily dismiss the Sherman Act claim against Cultural Care based on immunity.  Plaintiff's utter failure to allege any facts against Cultural Care even plausibly pleading conspiracy also warrants dismissal.

## II. CERTIFICATION OF COMPLIANCE WITH CIV. PRACTICE STANDARD 7.1D

Counsel for Cultural Homestay International, James E. Hartley, spoke with plaintiff's counsel and attempted to determine whether the pleading deficiencies could be corrected by amendment.  Counsel for Cultural Care, Jeffrey P. Allen, left voicemail messages for plaintiff's counsel, which were not returned.  Based upon the nature of the defects in plaintiff's pleading, counsel for Cultural Care does not believe the deficiencies can be corrected by amendment.

## III. FACTUAL ALLEGATIONS

### A. Overview of Au Pair Program from Regulations and Stipend Notice Relied on by Plaintiff in Complaint.[4]

1. Overview of Exchange Visitor Programs.

The au pair program has its genesis in the Mutual Educational and Cultural Exchange Act of 1961 (Fulbright-Hays Act), 22 U.S.C. § 2451, *et seq.* (the "Act").  The Act's purpose is stated as follows:

---
[4] *Supra* note 1.

> The purpose of this chapter is to enable the Government of the United States to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchange; to strengthen the ties which unite us with other nations by demonstrating the educational and cultural interests, developments, and achievements of the people of the United States and other nations, and the contributions being made toward a peaceful and more fruitful life for people throughout the world; to promote international cooperation for educational and cultural advancement; and thus to assist in the development of friendly, sympathetic, and peaceful relations between the United States and the other countries of the world.

DOS currently oversees, facilitates, and regulates several exchange visitor programs including, among others, the au pair program. The programs "provide foreign nationals with opportunities to participate in educational and cultural programs in the United States and return home to share their experiences, and to encourage Americans to participate in educational and cultural programs in other countries." 22 C.F.R. § 62.1(b). Exchange visitors enter the United States on a J-1 visa issued by DOS. *Id.*

2. <u>Au Pair Program</u>.

The au pair program is a "Department of State-designated exchange visitor program under which foreign nationals are afforded the opportunity to live with an American host family and participate directly in the home life of the host family." 22 C.F.R. § 62.31(a). Au pairs provide child care services to the host family and attend a U.S. post-secondary educational institution. *Id.* "Au pair participants provide up to forty-five hours of child care services per week and pursue not less than six semester hours of academic credit or its equivalent during their year of program participation." *Id.* The program is highly regulated and carefully overseen by DOS. Sponsors must provide training to au pairs and have a system to screen and select prospective au pairs. *Id.* §§

62.10(a), 62.31(d)-(g). There are also significant requirements regarding host family selection, program monitoring, and reporting requirements. *Id.* § 62.31(g)-(i), (j)-(m).

### 3. Au Pair Stipend.

22 C.F.R. § 62.31(j)(1) provides that "[s]ponsors shall require that au pair participants are compensated at a weekly rate based upon 45 hours of child care services per week and paid in conformance with the requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor." Plaintiff alleges in paragraph 28 of the Complaint that DOS has adjusted the amount paid to au pairs by host families in response to changes in the minimum wage. However, Plaintiff misrepresents the nature of DOS's action. A copy of the DOS Stipend Notice in which DOS most recently adjusted the mandatory stipend amount, which notice is central to Plaintiff's claims and a **public** document, is attached as *Exhibit 2*.[5]  DOS issued the Stipend Notice on June 14, 2007 and explained therein the methodology by which DOS calculates the stipend. The Stipend Notice then **mandated** the $195.75 weekly stipend effective July 24, 2009 (the stipend increased over a period of two years to $195.75). It did not set a "wage floor" as Plaintiff claims. *Complaint* ¶¶ 26-28.

In the Stipend Notice, DOS referred repeatedly to the "weekly stipend" as a fixed amount that is set by DOS. *Exhibit 2, Stipend Notice.* DOS stated that "The weekly stipends . . . are directly connected to the federal minimum wage." *Id.* DOS stated that "The Au Pair Stipend is based on a U.S. Department of Labor formula that includes credit for the room and board Host Families provide for their Au Pairs. The room and board

---

[5] The Stipend Notice is publicly available through the DOS website at
http://j1visa.state.gov/wp-content/uploads/2012/09/aupair_wageincrease.pdf.

credit currently is 40% of an au pair's credited compensation." *Id.* DOS provided the following reference to the definite, nondiscretionary stipend amount: "The increases in the stipends affect all au pairs currently in the country as well as those who arrive after these changes go into effect." *Id.* DOS stated that **"The following are the increases in weekly stipend (including room and board) for the standard Au Pair and EduCare participants as follows"** and then DOS listed the new mandated stipend amount. *Id.*

### B. Plaintiff's Allegations.

#### 1. Overview of Lawsuit.

Plaintiff alleges in the purported class action Complaint that she participated in the au pair program in 2012 after Defendant InterExchange, a program sponsor wholly separate and distinct from Cultural Care, placed her in the home of Defendants Pamela and Thomas Noonan, a host family in Highlands Ranch, Colorado. *Complaint* at 1, ¶¶ 30-43. The defendants are the Noonans and InterExchange, who were directly involved in Plaintiff's au pair placement, and fourteen sponsors (including Cultural Care) who had no involvement whatsoever in Plaintiff's placement. *Id.* ¶¶ 3-20, 30-41. Plaintiff asserts assorted wage claims and a breach of fiduciary claim against the Noonans and/or InterExchange, but only a single claim under Section 1 of the Sherman Act against Cultural Care, InterExchange, and the other sponsors. *Id.* at Counts I-VI.

#### 2. Allegations Against Cultural Care (Count I—Sherman Act).

##### a. *Allegations regarding stipend.*

Plaintiff asserts her "price fixing" claim under Section 1 of the Sherman Act against Cultural Care on behalf of herself and a purported "Price Fixing Class." *Complaint* ¶ 62.

7

Plaintiff claims that, notwithstanding the plain terms of the Stipend Notice, DOS merely set a "wage floor" for au pair compensation instead of a fixed, mandated stipend tied to minimum wage increases. *Id.* ¶¶ 26-28. Plaintiff relies on the Stipend Notice by alleging that "[t]he USIA, and subsequently the U.S. State Department, automatically adjusted the wage floor several times with changes in the FLSA minimum wage." *Id.* ¶ 28.

### b. *Allegations regarding conspiracy.*

Plaintiff merely alleges parallel conduct, which conduct she admits was based on the DOS Stipend Notice, coupled with a bare assertion of conspiracy. Plaintiff alleges that "Sponsors moved together to create a wage rate exactly at this floor and expressed this rate to the 'host families' as a set price instead of a regulatory floor." *Id.* ¶ 27. Plaintiff alleges that "sponsors responded to these automatic adjustments by moving together to create a wage rate at the lowest possible wage floor . . . ." *Id.* ¶ 28. She alleges that "[a]s a group, the Sponsors agreed, either expressly or tactically, agreed [sic] on the absolute minimum weekly wage for an *au pair* under the FSLA. The Sponsors then agreed to fix all *au pair* weekly wages at exactly that minimum amount." *Id.* ¶ 85. Plaintiff claims "sponsors responded to these automatic adjustments by moving together to create a wage rate at the lowest possible wage floor each time even though this wage floor was a per se violation of the wage laws of several states and in application would violate the FSLA. [and] [t]his collusive agreement is evidenced by the ratcheting up of this agreed weekly wage rate each time the federal minimum wage increased. The Sponsors admitted the price ceiling by, among other things, stating on many of their websites that families would have to pay the price fixed weekly wage rate to their *au pairs.*" *Id.* ¶ 86.

8

## IV. LEGAL ARGUMENT

### A. Standard of Review.

A suit will be dismissed pursuant to Fed. R. Civ. Rule 12(b)(6) if the complaint does not "have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice"; rather, "a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555). Where an immunity defense or some other complete defense to the claims exists, the Court should dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6). *See GF Gaming Corp. v. City of Black Hawk,* 405 F.3d 876, 879 (10th Cir. 2005). The need for courts to screen out complaints that fail to state a plausible claim for relief is particularly important in the antitrust context. "[I]n *Twombly*, the Supreme Court . . . warned particularly of the high costs and frequent abuses associated with antitrust discovery." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).

### B. Cultural Care Is Entitled to Federal Instrumentality/Implied Immunity in Connection with Ensuring that Host Families Paid Au Pairs the Stipend.

This Court should dismiss Plaintiff's Sherman Act claim in Count I because it is clear from the face of the DOS regulations and the Stipend Notice that the federal government expressly directed Cultural Care to ensure that host families paid au pairs the weekly stipend of $195.75. Thus, Cultural Care's conduct is protected from antitrust liability under the federal instrumentality/implied immunity doctrine under the settled body

9

of federal case law that provides private actors with immunity from antitrust claims when they are acting at the direction of the federal government.

Although Section 1 of the Sherman Act generally proscribes all contracts, combinations, and conspiracies in restraint of trade, DOS, as a U.S. Government agency, is immune from suit under the antitrust laws. *See United States Postal Service v. Flamingo Indus. (USA) Ltd.,* 540 U.S. 736 (2004) (holding that neither the United States not its executive agencies are persons subject to potential liability under the Sherman Act). Under the federal instrumentality/implied immunity doctrine, alleged anticompetitive conduct by private parties is immune from antitrust challenge when the federal government expressly directs the conduct at issue. *See, e.g., Name.Space, Inc. v. Network Solutions, Inc.,* 202 F.3d 573, 581-84 (2d Cir. 2000) (discussed below); *Flamingo Indus. (USA) Ltd. United States Postal Service,* 302 F.3d 985, 993 (9th Cir. 2002) (holding antitrust immunity can apply when an entity acts at the direction of a federal sovereign, and citing *Name.Space*); *Medical Ass'n of Alabama v. Schweiker,* 554 F. Supp. 955, 966 (M.D. Ala. 1983) ("private parties to the extent they are acting at the direction or with the consent of federal agencies also fall outside the pale [of the Sherman Act]"); *Medical Ass'n of Alabama v. Heckler,* 714 F.2d 107 (11th Cir. 1983); *Agtronics Corp. v. National Dairy Herd Ass'n, Inc.,* 914 F. Supp. 814, 820-21 (N.D.N.Y. 1996) ("private parties, to the extent they are acting at the direction or with the consent of the federal agencies, also fall outside the [Sherman Act's] prohibition"); *Mich. Paytel Joint Ventures v. City of Detroit,* 287 F.3d 527, 538 (6th Cir. 2002) ("the basic question in antitrust cases involving [governmental] and private actors is whether the state or the

private actor made the effective decision that resulted in the alleged anticompetitive conduct. If the [governmental actor] was the effective decision maker, then the private actor is entitled to [governmental] immunity . . . ."); *Byers v. Intuit, Inc.* 600 F.3d 286, 295 (3d Cir. 2010) (extending governmental immunity to a private party acting anti-competitively pursuant to an agreement with a government agency).

In *Sakamoto v. Duty Free Shoppers, Ltd.,* 764 F.2d 1285 (9th Cir. 1985), the plaintiff claimed that an exclusive concession contract between the Government of Guam, the Guam Airport Authority, and a private third party violated antitrust laws. The contract gave the private third party exclusive rights to sell and deliver certain kinds of merchandise to departing passengers at the airport. *Id.* at 1285. The Ninth Circuit affirmed the district court's ruling dismissing the antitrust claim against all parties, including the private parties, holding that the contract was an act of the Government of Guam, which was immune from suit as an instrumentality of the United States. *Id.* at 1288-89. *See also IT&E Overseas, Inc. v. RCA Global Communications, Inc.,* 747 F. Supp. 6 (D.D.C. 1990) (dismissing Sherman Act claim against a telephone company that entered into an exclusive contract with the Guam Telephone Authority).

In *Name.Space, v. Network Solutions, Inc.,* 202 F.3d 573 (2d. Cir. 2000) the Second Circuit affirmed the district court and held that a private party's allegedly anticompetitive conduct was immune from antitrust challenge because the government agency with which it was contracting expressly directed the specific conduct. There*,* the U.S. Department of Commerce contracted with Network Solutions, Inc. ("Network Solutions") to manage the domain name system on the internet. *Id.* at 579. Thereafter,

the National Science Foundation explicitly directed Network Solutions to deny competitor requests to add additional top-level domain names. *Id.* at 579-80. Name.Space, a potential competitor, charged Network Solutions with illegal monopolization in violation of the Sherman Act due to its refusal, at the direction of the government, to grant Name.Space's request to issue more top-level domain names. *Id.* at 581. The Second Circuit affirmed the district court's judgment in favor of Network Solutions reasoning that the challenged conduct—Network Solution's alleged abuse of monopoly power over this part of the DNS—was entitled to implied immunity. *Id.* at 581-82. This immunity applied specifically to Network Solution's refusal to add additional top-level domain names to the DNS because this was conduct over which Network Solutions had no discretion pursuant to its contract with the federal government. *Id.* 582-83. The Second Circuit explained that "clearly, any alleged abuse of monopoly power was specifically mandated by [the National Science Foundation] and the Commerce Department." *Id.* at 583. The Second Circuit noted that private parties fall "outside the pale" of the Sherman Act when their conduct is at the direction of federal agencies. *Id.* The Second Circuit concluded that "[Network Solutions] is entitled to implied antitrust immunity for the conduct . . . as such conduct was expressly directed by the government . . . in furtherance of the government's policy with respect to the management of the DNS." *Id. at 584.*

Here, the federal instrumentality/implied immunity doctrine protects Cultural Care's conduct because the federal government directed the specific conduct being challenged by Plaintiff. Any uniformity in the stipend paid to au pairs was specifically mandated by DOS. Through 22 C.F.R. § 62.31(j)(1), DOS directed Cultural Care and the other

12

sponsors to "require that au pair participants are compensated at a weekly rate" based on a particular formula. DOS later issued the Stipend Notice, which 1) notified Cultural Care and the other sponsors of how DOS applies the formula; and 2) directed Cultural Care and the other sponsors to require a stipend amount of $195.75 effective June 24, 2009. *Exhibit 2, Stipend Notice.* The Stipend Notice specifically provides that "The following are the increases in weekly stipend . . . for the standard Au Pair . . . participants as follows." *Id.* The Stipend Notice then unequivocally mandates a stipend amount of $195.75 effective July 24, 2009. *Id.* The Stipend Notice sets a sum certain for the stipend and mandates that sponsors apply that number. There is nothing in the Stipend Notice that could be interpreted to make the stipend amount discretionary or suggesting that it was merely a "wage floor." In fact, Plaintiff's allegation that the Stipend Notice merely sets a "wage floor" is in direct conflict with the Stipend Notice and lacks any basis whatsoever. According to Plaintiff's allegations in the Complaint, Cultural Care was acting in compliance with the clearly articulated policies of DOS, which DOS policies were in furtherance of the au pair program. Accordingly, Cultural Care's conduct in assuring that host families paid au pairs the $195.75 weekly stipend amount is immune from antitrust liability and Plaintiff's claim in Count I under the Sherman Act should be dismissed.

### C. Plaintiff Fails to Plead Sufficient Facts Demonstrating that Cultural Care Conspired with Other Program Sponsors.

This Court should dismiss Plaintiff's Sherman Act claim in Count I because Plaintiff has failed to allege facts showing that Cultural Care had any communications whatsoever with the other sponsor defendants, much less that Cultural Care reached an agreement

13

with other sponsors to restrain trade. Under Plaintiff's absurd theory, all companies in an industry that follow the federal minimum wage would be in violation of the Sherman Act.

The Sherman Act regulates anticompetitive behavior, and makes illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. In the seminal case of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the plaintiffs asserted that the defendants had engaged in parallel conduct, relying on allegations of lockstep or simultaneous business decisions by defendants as the basis for pleading anti-competitive behavior. *Id.* at 548. The Court observed that, "[b]ecause § 1 of the Sherman Act 'does not prohibit [all] unreasonable restraints of trade . . . but only restraints effected by a contract, combination or conspiracy', 'the crucial question is whether the challenged anti-competitive conduct 'stems from independent decision or from an agreement, tacit or express.'" *Id.* at 553 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775 (1984); *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)). Thus, it is critical that the factual allegations in the complaint "suggest that an agreement was made." *Twombly*, 550 U.S. at 588. The Supreme Court ruled that the Section 1 allegation of concerted action in *Twombly* was insufficient because it merely alleged "parallel conduct unfavorable to competition" without "some factual context suggesting agreement, as distinct from identical, independent action." *Id.* at 548-49. Antitrust plaintiffs must establish a "plausible grounds to infer an agreement" by pleading "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556. As this Court has noted, the *Twombly* court explained that

"an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Design Basics, LLC v. ProBuild Co.*, LLC, 2011 WL 3366436 (D. Colo. 2011).

Here, Plaintiff's allegations regarding the existence of a conspiracy between Cultural Care and other sponsors are the epitome of bare conclusions and speculation. Plaintiff merely concludes that "Sponsors **moved together** to create a wage rate exactly at this floor" (Complaint ¶ 27), "Sponsors . . . **mov[ed] together** to create a wage rate at the lowest possible wage floor" (*Id.* ¶ 28), "[a]s a group, the **Sponsors agreed**, either expressly or tactically, agreed [sic] on the absolute minimum weekly wage for an *au pair*" (*Id.* ¶ 85), and "[t]his collusive **agreement** is evidenced by the ratcheting up of this agreed weekly wage rate each time the federal minimum wage increased" (*Id.* ¶ 86) (emphasis supplied). Nowhere does Plaintiff allege that conversations occurred between Cultural Care and other sponsors on this topic, that written correspondence were exchanged, or any other facts supporting the conclusion that Cultural Care communicated with the sponsors at all, much less reached agreement with other sponsors on the stipend. Plaintiff's Complaint is a perfect example of parallel conduct coupled with a bare assertion of conspiracy, which the *Twombly* court specifically ruled does not suffice for purposes of stating a claim under Section 1 of the Sherman Act and thus the Sherman Act claim fails.

## V. **CONCLUSION**

For the foregoing reasons, this Court should dismiss the Sherman Act claim against Cultural Care in Count I pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,


   /s/ Jeffrey P. Allen
Jeffrey P. Allen
E-mail: jallen@lawson-weitzen.com
Donald J. Gentile
E-mail: dgentile@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue
Boston, MA 02210
Telephone: (617) 439-4990
Facsimile: (617) 439-3987

-and-

W.V. Bernie Siebert
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Fax: (303) 298-0940
Email: bsiebert@shermanhoward.com

ATTORNEYS FOR DEFENDANT
CULTURAL CARE, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of February, 2015, a true and correct copy of the foregoing **DEFENDANT CULTURAL CARE, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** was electronically filed with the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Alexander N. Hood<br>Towards Justice-Golden<br>601 16th Street, Suite C #207<br>Golden, CO 80401<br>Telephone: (720) 239-2606<br>alex@towardsjustice.org<br><br>*Attorney for Johana Paola Beltran and those similarly situated* | Susan P. Klopman<br>H&K Law, LLC<br>3900 E. Mexico Ave. Ste. 330<br>Denver, CO 80210<br>Telephone: (303) 749-0659<br>sklopman@hklawllc.com<br><br>*Attorney for Defendants Pamela H. Noonan and Thomas J. Noonan* |

16

William J. Kelly III
Kelly & Walker LLC
1401 17th Street, Suite 925
Denver, CO 80202
Telephone: (720) 236-1800
wkelly@kellywalkerlaw.com

*Attorney for Defendant USAuPair, Inc.*

Meshach Y. Rhoades
Kutak Rock, LLP
1801 California Street, Suite 3000
Denver, CO 80202-2626
Telephone: (303) 297-2400
rhoadesm@gtlaw.com

*Attorney for Defendant GreatAuPair, LLC*

Brian T. Moore
Jester Gibson & Moore, LLP
1999 Broadway, Suite 3225
Denver, CO 80202
Telephone: (303) 377-7075
bmoore@jgllp.com

*Attorney for Defendant Au Pair International, Inc.*

Katherine A. Barrett
Martha L. Fitzgerald
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202-4432
Telephone: (303) 223-1100
Kbarrett@bhfs.com
Mfitzgerald@bhfs.com

*Attorneys for Defendant EuRaupair InterCultural Child Care Programs*

Kathryn A. Reilly
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244-1800
reilly@wtotrial.com

*Attorney for Agent Au Pair, Inc.*

Bogdan Enica
Bogdan Enica, Attorney at Law
111 2nd Avenue NE, Suite 213
St. Petersburg, FL 33701-3440
Telephone: (727) 225-2649
bogdane@hotmail.com

*Attorney for Expert Group International, Inc. d/b/a Expert AuPair*

Brian A. Birenbach
The Rietz Law Firm, LLC
114 Village Place, Suite 301
Dillon, CO 80435
Telephone: (970) 468-0210
brian@rietzlawfirm.com

*Attorney for Defendants Au Pair International, Inc. and American Cultural Exchange, LLC*

Daniel C. Perkins
Lawrence L. Lee
Fisher & Phillips, LLP
1801 California St., Suite 2700
Denver, CO 80202-3025
Telephone: (303) 218-3650
dperkins@laborlawlawyers.com
llee@laborlawlawyers.com

*Attorneys for APF Global Exchange, NFP and American Institute for Foreign Study, d/b/a Au Pair in America*

| | |
|---|---|
| Brooke A. Colaizzi<br>Raymond M. Deeny<br>Heather F. Vickles<br>Sherman & Howard L.L.C.<br>633 Seventeenth Street, Suite 3000<br>Denver, CO 80202<br>Telephone: (303) 297-2900<br>rdeeny@shermanhoward.com<br>hvickles@shermanhoward.com<br>bcolaizzi@shermanhoward.com<br><br>*Attorneys for Defendant Interexchange, Inc.* | James E. Hartley<br>Joseph Neguse<br>Mher Hartoonian<br>Holland & Hart LLP<br>555 Seventeenth Street, Suite 3200<br>Denver, CO 80202<br>Telephone: (303) 295-8000<br>jhartley@hollandhart.com<br>jneguse@hollandhart.com<br>mhartoonian@hollandhart.com<br><br>*Attorneys for Defendant Cultural Homestay International* |

Lawrence Daniel Stone
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Telephone: (303) 861-8013
lstone@duffordbrown.com

*Attorney for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair and 20/20 Care Exchange, Inc., d/b/a The International AuPair Exchange*

                                          /s/ Donald J. Gentile
                                          Donald J. Gentile