# INTEREXCHANGE AU PAIR USA

## AU PAIR AGREEMENT

This agreement (herein the "Agreement" or "Main Agreement") describes the terms and conditions of my participation in InterExchange's Au Pair USA Cultural Exchange Program and its sponsorship of my J-1 Visa.

### Background

InterExchange is a designated sponsor of the Au Pair J-1 Visa Program administered by the U.S. Department of State's Bureau of Educational and Cultural Affairs (the "Program"). The Program allows foreign participants ("Participant" herein defined below) to enter the United States to work as Au Pairs so that the Participant may increase their understanding of American culture and society and enhances the American Host Family's knowledge of foreign cultures through an open interchange of ideas.

This J-1 Visa Program requires employment for Au Pair Participants as part of the Cultural Exchange Program so that cost and expenses incurred during the Participant's time in the U.S. may be offset by the Program Stipend paid by the Host Family.

Now having understood the background and nature of this Agreement and Program, InterExchange and I hereby agree to the following terms and conditions:

1. **Definitions.** I agree to the following definitions:

    a. **"Adjustment Period"** begins when an Au Pair (see definition) first arrives to live in a Host Family's (see definition) home and ends thirty (30) days after the Au Pair has been living in a Host Family's home. During this period, an Au Pair cannot Transition (see definition) to a Rematch (see definition) Host Family except, in rare cases, Au Pairs may be moved as required by InterExchange.

    b. An **"Applicant"** or **"Candidate"** is anyone who applies to the Au Pair USA Program about whom InterExchange has not yet determined his or her suitability for the Program.

    c. An **"Au Pair"** is a carefully screened Participant (see definition), who is between the ages of 18 and 26, is a secondary school graduate or the equivalent, and is proficient in spoken English. Au Pairs are Matched (see definition) with a Host Family for cultural exchange purposes. The Au Pair lives with and provides child care services to a Host Family for up to ten (10) hours a day and forty-five (45) hours per week over five and a half (5 ½) days per week per Program regulations. The Au Pair is provided numerous cross-cultural activities, including, without limitation, taking at least six (6) credit hours of educational course work at a U.S. educational institution while participating in the Au Pair USA Program.

    d. **"At-Will Employment"** means either the Host Family or the Au Pair may end the employment relationship between the two parties at any time.

    e. **"Culture Exchange Program"** is a non-immigrant program operated by the U.S. Department of State's Bureau of Education and Cultural Affairs that increases a Participant's understanding of American culture and society and enhances the Host Family's knowledge of foreign cultures through an open interchange of ideas between Au Pairs and Host Families and the communities in which they live.

    f. **"Extension"** is a period of time in which the U.S Department of State allows a one-time extension of the Au Pair Program for six (6), nine (9), or twelve (12) additional months contingent upon successful completion of the initial 12-month Program and subject to certain limitations.

    g. **"30-Day Travel/Grace Period"** is the 30-day cultural exchange travel or "grace" period to which Au Pairs are entitled upon successful completion of the requirements of the Au Pair USA Program. During this 30-day period, Au Pairs are not permitted to engage in any employment. Au Pairs are required to leave the U.S. before the end of this 30-day period.

    h. **"Host Family"** is a carefully screened family of U.S. citizens or legal permanent residents who participate in the Au Pair USA Program by matching with an Au Pair to utilize the Au Pair's child care services for cultural exchange purposes.

    i. **"In-Country"** means an Au Pair is already in the U.S. An In-Country Au Pair may be in the U.S. due to an Extension or Transition.

    j. **"Insurance"** is accident and sickness coverage from an insurance company authorized by InterExchange (or, in rare cases, an International Cooperator (see definition below)) that meets or exceeds U.S. Department of State requirements.

    k. **"International Cooperator"** or **"IC"** is an independent contractor that performs services for InterExchange including, without limitation, recruiting Au Pairs for the Program, assisting the Candidates and InterExchange with the application process and



EX. E

providing additional pre-arrival support after an Au Pair is matched with a Host Family.

l. "**J-1 Visa Sponsorship**" means a non-immigrant cultural exchange visa issued pursuant to 8 U.S.C. 1101(a)(15)(J).

m. "**Local Coordinator**" is the InterExchange independent contractor or representative who liaises with the Au Pair and Host Family in the Host Family community. The Local Coordinator provides information in compliance with InterExchange Au Pair USA rules and requirements and coordinates monthly gatherings for InterExchange Au Pairs in the cluster area.

n. "**Match**" is the process by which the Host Family chooses to host the Au Pair, who as a result of being matched receives sponsorship for cultural exchange purposes under a J-1 visa sponsored by InterExchange.

o. "**Orientation**" is the period of time during which Participants visit New York City to be trained by InterExchange and are provided detailed information about the Program before the Participants start employment as an Au Pair for Host Families.

p. "**Participant**" is a suitable and qualified Candidate who matches with a Host Family and takes part in the InterExchange Au Pair USA Program under the U.S. Department of State regulations and InterExchange's requirements.

q. "**Program**" or "**Au Pair USA Program**" or "**Au Pair USA**" means the Cultural Exchange Program as administered by InterExchange. The Program includes the initial twelve (12) month program, Transitions and Extensions.

r. "**Rematch**" is the process by which an in-country Au Pair is Matched to a Host Family other than the one to which he or she was originally Matched. Please see the definition of "Match."

s. "**Replacement**" is an Au Pair who replaces another Au Pair after a Host Family enters Transition.

t. "**Social Media**" means a wide range of new and evolving communication tools including, without limitation, multi-media and social networking websites such as MySpace, Facebook, Yahoo! Groups, Linkedin, Flickr and YouTube and other media or video sharing sites; Blogs; Wikis such as Wikipedia and any other site where text or photos can be posted; Sites and/or apps like Twitter on smart devices such as cell phones, digital tablets and similar communication devices.

u. "**Special Needs Child**" is a Host Family child with emotional, physical or psychological needs, as identified by the Host Family, that require additional child care services from an Au Pair other than child care services generally provided to Host Families.

v. "**Sponsor**" is a legal entity designated by the U.S. Department of State to conduct Cultural Exchange Programs under the J-1 Visa.

w. The "**Stipend**" is the minimum amount that the Host Family is required to pay the Au Pair pursuant to U.S. Department of State regulations and employment and labor laws of the U.S. The current minimum required weekly amount is one hundred ninety-five dollars and seventy-five cents ($195.75).

x. "**Suitable Candidate**" means a candidate who meets the Program requirements of the both the U.S. Department of State regulations and InterExchange guidelines.

y. "**Transition**" is the process by which a Host Family or Au Pair may either leave the Program or be Rematched with a new placement.

z. "**Withdrawal**" means that a Host Family or Au Pair voluntarily ends its relationship with InterExchange.

aa. "**3-Point Meeting**" is an optional meeting facilitated by a Local Coordinator or InterExchange to mediate differences between a Host Family and an Au Pair.

2. **Program Overview.** I understand and agree that InterExchange operates Au Pair USA solely as a Cultural Exchange Program. I acknowledge receipt of a copy of 22 CFR Part 62.31, the Wilberforce Brochure (see below, "Dispute Process") and the Department of State publication "The Au Pair Exchange Program" from InterExchange. I further understand and agree that any conflict between the cultural exchange purposes of the Au Pair USA Program and the child care services offered by me as an Au Pair shall be decided in favor of the cultural exchange purposes and regulations of the Program.

3. **Certification, Application, Interview & Selection.**

    a. **Certification.** I certify that I have not previously participated in an Au Pair program based in the U.S. within the last twenty-four (24) months.

    b. **Application.** I agree that I must submit a complete application to be considered as an Au Pair Candidate by InterExchange and a Host Family. I agree that the application process and information requested on the application are responsibilities that I must fulfill under my Agreement with InterExchange. I further understand and agree that all information submitted under this application and Agreement is for the sole purpose of determining my suitability for the Au Pair USA Program.

c. **Background Investigation.** I understand and agree that I must successfully pass a background investigation that includes, without limitation, verification of school or high school diploma (minimally a secondary school or the equivalent); three, non-family related child care references; a criminal background check or its recognized equivalent; health screening report; and a psychometric personality test.

d. **Additional Information.** I agree that InterExchange may request, and I agree to supply, additional information other than the originally requested information for the purpose of making a final decision about my suitability for the Program.

e. **Read All Materials.** I certify that I have read and understood all application materials sent to me by InterExchange, including, without limitation, the InterExchange and U.S. Department of State rules and regulations required for me to participate in the Program.

f. **Interview.** I understand that an in-person interview conducted in English is a requirement that must be fulfilled as a condition of my application to the Au Pair USA Program. Further, I must be contacted by a potential Host Family by telephone prior to an agreement to a Match. As explained under Sections on Extensions and Transitions, I understand and agree that the requirements regarding Host Family interviews also apply to Extensions and Transitions for any potential Rematch Host Family.

g. **InterExchange Decision.** I agree that InterExchange makes the final decision about my participation in the Au Pair USA Program. I agree that InterExchange makes the final decision about approving my Match or Rematch with a Host Family. I understand and agree that all decisions are based on InterExchange's role as the Sponsor of my Cultural Exchange Program as set forth under this Agreement.

4. **Program.**

    a. **Orientation.** I must attend the Orientation provided by InterExchange in New York City. I must not arrive before my scheduled arrival date for my Orientation.

    b. **Training.** I agree to attend and engage in child development and child safety instructions provided by InterExchange to the best of my abilities. I understand and agree that I must successfully complete my training in the U.S. prior to starting my child care duties with the Host Family.

    c. **Nature of Au Pair Work Performed.**

        i. **Host Family/Au Pair Agreement.** Prior to departure from my home country, I must enter into a signed written agreement with the Host Family. I understand the Host Family will provide an outline of my duties and schedule in the Host Family application, which may be amended from time to time, but shall in no way conflict with Program rules, regulations and the terms and conditions of this Agreement. I agree to read and understand the obligations expected of me by the Host Family as detailed through the Host Family application and the Host Family/Au Pair Agreement. I understand that the Host Family/Au Pair Agreement shall include, without limitation, the terms of this Agreement and that the Host Family must conform to the Fair Labor Standards Act. I understand that the agreement between the Host Family and me must be signed only after my Match or Rematch with the Host Family. I understand that InterExchange does not offer, nor am I a Participant in, an Educare program, and, therefore, I am not subject to any Educare requirements regarding the Host Family/Au Pair Agreement.

        ii. **Duties.** I understand that my duties shall only include child care and activities related to care of the children of my Host Family. I agree that I cannot be directly responsible for the care of any non-Host Family children. Child care may include, without limitation, active duties such as taking care of children as they play, preparing children's meals, driving children to school and activities, light cleaning of their rooms, assisting children with school assignments and doing the children's laundry as well as passive duties such as being present when the children are sleeping.

        iii. **Permissible Duties.** I am not obligated to perform heavy chores, including, without limitation, yard work, taking care of pets, window washing or scrubbing floors. If I choose to engage in heavy chores, I must follow the safety standards under Section 7 of this Agreement.

        iv. **Medication.** I must not administer any medicine or medical/therapeutic treatment to children.

        v. **Disciplining Children.** I agree that I am not permitted under any circumstances to physically discipline children in any way (e.g., hitting children or withholding food as punishment). The terms of this Agreement are to be enforced even if the Host Family requests that I discipline the children. If I have questions over appropriate behavior, I shall ask my Local Coordinator for guidance.

    d. **Local Coordinator.** While I should seek general direction and advice about the Program from the Local Coordinator, I understand that InterExchange makes all final decisions. I agree that statements by the Local Coordinator are not binding on InterExchange unless confirmed in written policy and under the terms and conditions of this Agreement. If I have any questions or concerns regarding my Local Coordinator, I must contact an InterExchange manager directly.

    e. **Au Pair's Age.** I can only begin the Program between the ages of eighteen (18) and twenty-six (26).

f.  **Age of Children.**

   i. I agree that InterExchange cannot place or allow me to remain as an Au Pair in a Host Family home with a child under the age of two (2) unless I have at least two hundred (200) hours of documented experience working with children under the age of two (2). I must promptly notify InterExchange if a child under the age of two (2) years is a member of or joins the household at any time during the Program.

   ii. **I agree that if there are any children under three (3) months old living in the home there must be a responsible adult (e.g., baby nurse, grandparents) in the home at all times and I cannot be left as the sole child care provider, even for a limited amount of time, including sleeping hours.**

g.  **Special Needs Children.** I must inform InterExchange and the Local Coordinator about the new arrival or request for me to take care of a special needs child, which may include, without limitation, children with physical or mental disabilities. I understand that I must identify my prior experience, skills or training and willingness to care for special needs children if the circumstances arise in which I am to provide child care to special needs children.

h.  **3-Day Settling In Period.** I understand that during the first three (3) days of my stay with the Host Family, a parent or another responsible adult (e.g., grandparents) must remain in the home to facilitate my adjustment into the Host Family, household and community. Failure of this condition by the Host Family must be immediately reported to InterExchange and the Local Coordinator.

i.  **45-Hour Work Week.** I cannot provide more than ten (10) hours of child care services on any given day or more than forty-five (45) hours of child care in any one (1) week. Generally, I understand that the Host Family must arrange a consistent schedule of work hours per week to conform to Program requirements (e.g., if the Host Family schedules my hours from Monday through Saturday, this means I must work Monday through Saturday throughout the duration of my employment with the Host Family without variation), provided, however, that the Host Family and I may negotiate a mutually agreed upon change of schedule that does not violate this Agreement, U.S. Department of State regulations or employment and labor laws. I must be compensated at a weekly rate based on forty-five (45) hours per week and paid in conformance with the requirements of the Fair Labor Standards Act. I must notify InterExchange if the Host Family requires or asks me to work over forty-five (45) hours a week or more than ten (10) hour a day.

j.  **Room and Board.** I understand that the Host Family must provide me with board and lodging. I further understand that lodging shall be limited to a private room set aside by the Host Family for the purpose of my lodging rather than a room used for other purposes (e.g., sharing the room with another Au Pair is not permitted and a Host Family cannot require me to sleep in a room that is used for laundry or family entertainment).

k.  **Stipend.** I understand that my Stipend from the Host Family must meet the minimum requirement set by U.S. Department of State regulation, which may be amended from time to time. I agree to notify InterExchange if there is any problem with receiving my weekly Stipend. If paid by check, I agree to deposit or cash my Stipend within four (4) weeks of receiving the Stipend from the Host Family.

l.  **Weekly Time Off.** I must receive a minimum of one and a half (1½) days off per week, in addition to one (1) complete weekend (Friday evening until Monday morning) off each month. I must notify InterExchange if the Host Family fails to provide me with time off.

m.  **Vacation.** The Host Family must provide me two (2) weeks of paid vacation during the Program to be taken at a time mutually agreed upon between the Host Family and me. I must contact InterExchange if the Host Family fails to provide me with paid vacation. If joining the Host Family on vacation, I agree not to share lodging with any adult member of the Host Family or share a bed with anyone, including, without limitation, children.

n.  **Education.**

   i. **Required Educational Courses.** I agree to follow the applicable U.S. Department of State education regulations for Au Pairs participating in the initial twelve (12) month Program. Specifically, I must enroll in and complete classes or programs offered by an accredited, post-secondary institution for at least six (6) semester hours of academic credit or its equivalent. I understand that the Host Family must facilitate my enrollment and attendance and pay the cost of such academic course work in an amount not less than five hundred dollars ($500) for a twelve (12) month Au Pair Program. The Host Family is not obligated to pay an amount greater than the five hundred dollars ($500). I understand that the Host Family is responsible for facilitating my transportation to such classes or programs.

   ii. **Educational Requirements After Transition.** If I am placed in Transition (See Transition below) before completing the educational requirements, I agree to complete the requirements with the new Host Family to whom I am Rematched as described in the sections on Required Educational Courses and Transition, including, without limitation, restarting the six (6) semester hours in the manner required by the U.S. Department of State. I understand that my new Host Family is only required to pay a pro rated amount of the five hundred dollars ($500) based on my remaining time in the Program, which shall mean a pro rated value equaling nine dollars and sixty-two cents ($9.62) per week in a standard fifty two (52) week Program (e.g., if Transition to a Rematch Host Family after twenty-five (25) weeks, then the Rematch Host Family will be required to pay two hundred fifty-nine dollars and seventy-four cents ($259.74) towards my educational courses).

   iii. **Additional Cost of Courses.** I understand and agree that all additional costs of meeting the educational requirements of the Program are my responsibility.

   iv. **Optional Educational Courses.** If I complete the required number of credit hours in the manner required by InterExchange and U.S. State Department regulations, and there is an amount left over from the five hundred dollars ($500) contribution required of the Host Family, I, at my sole discretion, may elect to use the remaining balance to cover the cost of taking additional courses, provided, however, that the courses meet the academic requirements as set forth by InterExchange and the U.S. State Department. I understand that the Host Family is responsible for facilitating my transportation to and from the courses.

   v. **Driver's Education.** If required by the Host Family, I understand that I shall be responsible for taking a driver's education course, provided, however, that the Host Family pays for the cost of the driver's education course. If not required by the Host Family, I shall be responsible for the cost of the course if I elect to take a driver's education course.

o. **Cluster Meetings.** I agree to attend all monthly Cluster Meetings with the Local Coordinator. I understand that the Host Family must facilitate attendance and provide time off and transportation for the meetings.

p. **Insurance.**

   i. **Insurance.** I agree to the terms and conditions of the Insurance policy provided by the vendor authorized by InterExchange or the International Cooperator. I understand that InterExchange requires me to hold the Insurance policy through the authorized vendor solely for the purpose of ensuring the policy's compliance with U.S. Department of State regulations. I understand that neither InterExchange nor the International Cooperator are sellers or resellers of the Insurance. I understand that the Insurance arranged by InterExchange or the International Cooperator meets or exceeds Program regulation requirements, but is not comprehensive. For additional information about the Insurance policy from InterExchange, I agree to read the terms and conditions of the policy in the brochure and literature sent to me by InterExchange and by visiting InterExchange's web site. Except for the 30-Day Travel Period/ Grace Period Insurance, I understand that cost of the insurance policy is included in fees paid by the Host Family.

   ii. **30-Day Travel Period/Grace Period Insurance.** I agree to request and pay for the Insurance policy that covers the 30-Day Travel/Grace Period before the start of the 30-Day Travel/Grace Period.

   iii. **Supplemental Insurance.** I understand that the Insurance policy is limited to accident and medical sickness coverage and may have exclusions or limitations that may cause me to incur out of pocket expenses if I seek treatment for such exclusions or limitations. I agree to investigate and InterExchange strongly recommends that I obtain supplemental insurance to meet my medical and travel insurance needs above those covered by the InterExchange authorized Insurance policy for the duration of the Program.

   iv. **Automobile Insurance.** I understand that the Host Family must provide automobile insurance at the Host Family's sole cost if I use any of the Host Family's vehicles for work or personal use. I further understand that the insurance coverage shall not be less than the minimum mandatory insurance coverage required by law in the Host Family's state of residence. I agree that I am responsible for understanding the limitations of any insurance policy and the costs related to the policies.

q. **Passport.** I understand that I am responsible for obtaining a valid passport. I must keep my passport valid at least thirteen (13) months longer than the Program end date found on the DS-2019 form. If I lose my passport, I am responsible for replacing it at my own expense. I am solely responsible for safeguarding my passport and agree not to surrender it to any unauthorized person or entity. If I am in doubt about whether an organization should possess my passport, it is my duty to investigate.

r. **Visa.** I must complete all visa requirements in accordance with instructions provided by InterExchange and the U.S. government.

s. **Tax ID/Social Security Number.** I understand that I may need to secure either a tax payer id or social security number. I further understand that I must safeguard my personal information. If I am in doubt about whether an entity should possess my personal information, it is my duty to investigate.

t. **English.** I agree that my English language skills must be sufficient to communicate with the Host Family and during emergencies. I understand insufficient language skills may be a reason for my visa denial and/or my Program to end early.

u. **Failure to Return to the United States during Program Dates.** I understand that if I leave the U.S. at any time during my Program for any reason I must provide notice to InterExchange. Furthermore, I agree that my sponsorship will end if I fail to return to the U.S. or the Program within thirty (30) days.

v. **30-Day Travel/Grace Period.** I understand that upon successful completion of the Program I am permitted a 30-Day Travel/Grace Period during which I am allowed to travel within the United States. I understand that it is a violation of immigration law and Program regulations to conduct any form of employment (including working for my Host Family) during the 30-day Travel/Grace Period.

w. **Leaving Program Early or Overstaying 30-Day Travel/Grace Period.** If I leave the Program before the Program end dates or over-stay the 30-Day Travel or Grace Period, I forfeit my return flight, vacation time and unearned Stipend, and my Insurance will

be cancelled. I understand that InterExchange will report any circumstances of the Program ending early and/or violation of immigration laws to the U.S. Department of State and/or the Department of Homeland Security.

  x. **Leave U.S. At End Of Program.** I will return to my home country or leave the U.S. at the end of my Program, which is defined by the end date of my DS-2019 form plus my 30-Day Travel/Grace Period or, if the Program ends early, the date that I am required to leave the U.S. under immigration law and InterExchange requirements.

  y. **Visa Requirements of Other Countries.** During the Program, I agree that it is my obligation to research and meet any visa requirements for countries to which I plan to travel.

5. **Employment & Sponsorship.**

   a. **Notice of At Will Employment.** I understand that my position as an Au Pair is At-Will Employment as defined under the Definitions Section.

   b. **No outside employment.** I must not work in any additional position, including, without limitation, volunteer or paid employment or internships, during the Program. I must only work with the Host Family that has been approved by InterExchange.

   c. **InterExchange is not an Employer or Employment Agency.** I agree that InterExchange is not my employer or an employment or staffing agency.

   d. **Sponsorship.** I agree that InterExchange solely functions as my J-1 Visa sponsor.

   e. **Best of Abilities.** I understand that keeping my J-1 Visa sponsorship is based on remaining in good status throughout the duration of the Program. To increase the chances of keeping my sponsorship, I have investigated the duties and functions of an Au Pair. I am willing and able to function as an Au Pair in every way, including physical and mental stamina. To further promote the cultural exchange ideals of the Program and act as an ambassador of my home country to the Host Family and Host Family's children, I agree to carry out my child care duties and other responsibilities to the best of the abilities and with due respect.

6. **Air Travel & Transportation.**

   a. **Travel.**

      i. I agree to allow InterExchange, its officers, affiliates, independent contractors, vendors, agents and employees to act on my behalf in arranging transportation to and from InterExchange designated locations.

      ii. I must be present in enough time for all flights or other transportation provided or arranged by InterExchange. I understand and agree that InterExchange is not responsible for providing alternative transportation. I agree to bear the cost of any fees or charges incurred as a result of any failure to follow these instructions.

      iii. I understand that flights will depart from and return to assigned airports, and that I am responsible for any flight or other supplemental transportation to reach the designated points of departure.

      iv. I agree to notify InterExchange of any deviation from the arrangements that InterExchange made on my behalf.

   b. **Transportation- Motor Vehicle.** If I am required to drive and given access to a motor vehicle, I understand that the Host Family must pay for gas used by me and maintain the motor vehicle in good working order when performing my duties or when driving to/from meetings and/or classes in fulfillment of Program requirements. I agree to report any concerns about the working condition of the motor vehicle to my Host Family immediately. I further understand that a motor vehicle may or may not be available.

7. **Safety, Problems & Emergencies.**

   a. **Precautions.**

      i. I am responsible for my personal health and safety needs while participating in the Au Pair USA Program. If I suffer from any health or other condition that would create a risk to others or me, I should not apply or participate.

      ii. I must take reasonable precautions to prevent injury or harm to myself or a third party or damage to the property of a third party or myself.

   b. I agree to the following:

      i. I must notify InterExchange in the manner required under Communications and Notification Section if I experience any serious medical, psychological or criminal incident.

      ii. **I must contact InterExchange immediately if the Host Family endangers my safety or the safety of others or acts in a manner that raises questions about my safety or those of others.**

      iii. I must remain available and/or stay in contact (if contacted) by my Local Coordinator during any natural disaster or emergency. If I am unable to contact the Local Coordinator after my Local Coordinator contacts me, I must reach authorized staff at InterExchange to confirm my circumstances as soon as it is reasonably feasible to do so.

      iv. **Emergency Messaging.** In addition to following any emergency plan available to me from local authorities or the Host Family, if I supplied my mobile number, I agree to follow suggestions as may be sent through InterExchange emergency messaging, including, without limitation, emergency texts from InterExchange. If local authorities or the Host Family recommends actions that conflict with any messages sent via InterExchange emergency messaging, I shall follow the direction of the Host Family or local authorities as they may be better aware of local circumstances. I understand and agree that InterExchange is not obligated to provide me emergency messaging and that this is an additional service that InterExchange may provide to me as circumstances may permit.

      v. I must immediately contact InterExchange if the Host Family requests that I engage in any illegal activities (e.g., illegal drugs).

  c. **InterExchange.**

      i. In circumstances involving my health and safety, I agree that InterExchange may discuss my circumstances with my family (e.g., my Host Family and actual family), emergency contacts, the International Cooperator, my insurance company, healthcare officials, law enforcement, the U.S. Department of State or any other critical party with a need-to-know.

      ii. I agree that InterExchange, its officers, employees, independent contractors, vendors affiliates and agents or any Local Coordinator may, without liability, or expense to themselves (as explained in further detail under the Liability section), take whatever action they deem appropriate with regard to my health and safety and may place me in a hospital or health-related facility for medical services and treatment or, if no hospital or health-related facility is readily available, may place me in the care of a local medical doctor or health provider for treatment or service.

  d. **InterExchange Health, Safety or Exploitation.**

      i. I understand that in the event of an accident or serious illness that, in the judgment of InterExchange, prevents me from continuing my duties, I will end the exchange early and return home at my own expense.

      ii. If InterExchange finds that I am subject to exploitative or other unreasonable circumstances or conditions in Host's household (e.g. failure to pay the appropriate weekly Stipend or to provide the agreed upon free time or educational benefits), InterExchange, at InterExchange's sole judgment, may immediately withdraw me from the household.

      iii. I agree that any decision regarding my status as an Au Pair, dismissal, or replacement will be made at the sole discretion of InterExchange and shall be considered final.

  e. **Emergency Plan.**

      i. I must become aware of emergency plans set up by the Host Family and as issued by local authorities.

      ii. In case of emergencies (e.g., hurricanes, earthquakes, fires, terrorist attacks), I agree to follow the emergency plan, if any, issued to me by InterExchange, the Host Family and local authorities. I agree that InterExchange is not obligated to provide an emergency plan and that this is an additional service that InterExchange may provide as circumstances may permit. I understand that the instructions provided to me from the Host Family and local authorities take priority over InterExchange instructions.

8. **Extensions & Transitions.**

  a. **Extensions.** Extensions are explained in greater detail in the Extension Term Sheet found in Exhibit A and the clauses below. I understand that I must be eligible for the Extension upon submitting my application and that I must meet the requirements of the Program as follows:

      i. If I wish to participate in the Extension Program, I must submit my application on or before InterExchange Au Pair USA's published Extension application deadline date which is found on InterExchange's website. I understand and agree that InterExchange cannot guarantee that the U.S. Department of State will approve my Extension request and that failure to meet the application deadline is an automatic disqualification.

      ii. I understand that if my Extension is approved I will receive an updated DS-2019 form for participating in the Extension Program that reflects the updated Program dates. Although I will have a valid DS-2019 form, I understand that the J-1 Visa in my passport may have expired during the first 12-months of stay in the U.S. Therefore, I understand that InterExchange discourages me from traveling outside of the U.S. after the J-1 Visa expires because I may not be allowed re-entry into the U.S., and InterExchange has no jurisdiction over U.S. immigration personnel or their decisions.

      iii. By signing this Agreement, I agree to the terms of the Extension Agreement if the following terms and conditions are met:

a. Timely submission of my Extension application.

b. U.S. Department of State approval of my application.

c. My meeting the terms of this Agreement (including educational requirements).

d. The Host Family has paid all money owed and adhered to Program regulations including, without limitation, attendance at Host Family Day.

e. InterExchange's approval of the Host Family.

Except as set forth in the attached Extension Agreement, the general terms of this Agreement shall remain in effect and control.

iv. **Approval.** I understand and agree that completion of the terms and conditions described in this section of the Agreement or in the Extension Term Sheet does not guarantee an Extension. I further understand that nothing in this Agreement implies or requires me to participate in an Extension. The terms and conditions described are effective only if I participate in an Extension Program.

b. **Transitions.** After the initial adjustment time of one month following arrival, InterExchange has set up a Transition procedure regarding a possible breakdown in the relationship between the Host Family and me.

i. **Transitions-General Proceduree.** I agree to following:

a. The Host Family or I must communicate to InterExchange that there is a breakdown in the relationship between the Host Family and myself.

b. Upon becoming aware of a breakdown in the relationship, the Local Coordinator, at his or her discretion, may decide to mediate a meeting between the Host Family and myself.

c. If there is not a resolution of the problem(s) raised, the Host Family and I shall be placed into Transition, which shall mean for me either a Rematch or Withdrawal (see below) from the Program. During Transition, I may remain in residence with the Host Family for several weeks or be moved, if reasonably feasible, into temporary housing arranged by the Local Coordinator and authorized and approved by InterExchange. If I remain in residence with the Host Family, I may be asked to continue to fulfill my child care responsibilities. If I am asked to continue child care duties, I must receive the appropriate weekly Stipend and follow Program requirements and regulations until a new placement can be found. I understand InterExchange will make best efforts to move me from the Host Family as quickly as is reasonably possible so that I may continue, if possible, my Cultural Exchange Program. I understand that I may not arrange my own temporary accommodations and doing so may endanger my continued sponsorship.

d. I agree to fully cooperate with InterExchange during the Transition and not to involve outside parties.

ii. There are three outcomes that define the status of my continued involvement or lack therefore in the Au Pair USA Program:

a. **Transitions- Rematch.**

i. InterExchange will make reasonable attempts to locate a Rematch Host Family for me for up to two weeks during the Transition process. If after two (2) weeks, InterExchange cannot find a suitable Host Family for me, InterExchange may require me to return to my home country under the terms and conditions set forth in this Agreement. I understand and agree that any decision regarding my Program status shall be made at the sole discretion of InterExchange and shall be considered final.

ii. I agree to carefully consider the potential Rematch Host Family with whom I may be Rematched. I understand that my Rematch will possibly take me out outside of the area in which my existing Host Family resides.

iii. My Rematching shall comply with the remaining length of my original Program (e.g., If I have five (5) months left in the Program, then the Rematch contract length for me would be five (5) months).

iv. I agree that if a Rematch takes place, travel details will be organized by InterExchange and Local Coordinator working with the Host Family and me.

b. **Transitions – Withdrawal.** I may elect to withdraw from the Program. I understand that this Agreement must automatically terminate under the terms and conditions set forth in the Termination section of the Agreement. As explained in Sections 9 and 16, I agree that I am responsible for the cost of my airfare home and other costs incurred in the Program.

      c. **Transitions – Unsuitable or Lack of Suitable Placement**. InterExchange, at its sole discretion, may determine that I am unsuitable to remain in the Au Pair USA Program and/or no suitable placement is available after a reasonable time period has passed. I agree that I am responsible for the cost incurred in the Program.

9. **Fees, Expenses, Costs and Payment.**

   a. **Costs, Fees & Expenses.** I understand and agree that I am responsible for, without limitation, any educational cost and expenses above the amount that the Host Family is required to disburse; federal, state and local income taxes; withholding taxes; copayments and deductibles on the Insurance from the authorized vendor (Please see terms and conditions of Insurance policy coverage); the fee for my Insurance coverage during the 30-Day Travel/Grace Period; the cost of my return air flight (if applicable) under the conditions as described in this Agreement; all additional expenses of the Transitions including the education requirement as defined in this Agreement; damage to Host Family's car with the limitations as set forth in this Agreement; any driver's education course costs pursuant to the terms and conditions defined in this Agreement; any costs incurred by the Host Family or InterExchange regarding a change of sponsor as described below; any other costs related to me returning home early from the Program; any damages as described in this Agreement; the cost of any translations of application and background check costs; and any fees, costs and expenses not expressly covered under this Agreement.

   b. **Emergency Messaging Fee.** If I provide my mobile number for emergency contact (e.g., emergency texting) from InterExchange, I agree to assume all necessary charges per carrier fees for usage that may arise if InterExchange sends emergency messaging to me.

   c. **Payment.** I agree that the Credit Card Approval Form that I may sign for the purpose of paying any costs, fees and expenses described in Section 9 is incorporated into this Agreement in **Exhibit C**.

10. **Notice & Communications.**

    a. I must contact InterExchange by means of the contact information provided by InterExchange (e.g., telephone number or e-mail address). I must include InterExchange contact information in my address book to ensure receipt of communications from InterExchange. In the case of an emergency, safety or health issues, I agree to contact InterExchange immediately or as soon as it is reasonable under the circumstances. In addition, I agree to contact the Local Coordinator and InterExchange via the emergency contact information provided by InterExchange.

    b. InterExchange will contact me through the contact information that I provide to InterExchange, the Local Coordinator or Host Family. I agree to respond to communications from InterExchange in a timely manner. I understand that a failure to communicate with InterExchange may be a reason for withdrawal of InterExchange's Program sponsorship.

    c. **Emergency Messaging.** For the purpose of emergency messaging, I agree that InterExchange may contact me via text message and/or voice services through my mobile phone and/or by email.

    d. **Contact with Local Coordinator.** I understand that InterExchange's Local Coordinator will contact me and my Host Family within forty-eight (48) hours of my arrival to my Host Family. I also understand that InterExchange's Local Coordinator will visit my Host Family within two (2) weeks of my arrival. I understand that my Local Coordinator will call me twice monthly for the first two (2) months following a placement other than the initial placement for which I entered the U.S. I understand that my Host Family will also attend at least one of two Family Day Conferences sponsored by the Local Coordinator during the Program year. As stated in the Agreement above, I understand that I must also attend monthly cluster meetings with the Local Coordinator.

    e. **Student & Exchange Visitor Information System (SEVIS) Reporting.** I agree to provide notice to InterExchange about where I reside for the duration of the Program to ensure SEVIS and Au Pair status reporting requirements are met. I further agree to provide all relevant personal data for the purpose of InterExchange maintaining my record with SEVIS.

11. **Release, Intellectual Property, Social Media & Disrepute**

    a. Release

       i. I give permission to InterExchange to (i) take and retain any photographs (including group or Host Family photos), copies of images from passports, videos, audio recordings and other depictions of me (collectively, the "Reproductions") during activities associated with InterExchange; (ii) retain any Reproductions that Host Family submits to InterExchange, or that Host Family posts on any InterExchange-branded or InterExchange-affiliated media site, social networking site or video upload site or "channel" or blog, including, without limitation, Facebook, Linked-In, YouTube, Twitter, or any other electronic site; and (iii) publish, distribute and display, either in whole or in part, any Reproductions in any and all media throughout the world, including, without limitation, media sites, social networking sites, video upload sites or "channels," blogs, electronic postings, calendars, brochures, advertisements and other promotional materials.

       ii. I hereby waive compensation and any right to inspect or approve any such uses and Reproductions. I shall not submit any Reproduction unless I first obtained permission from each person whose name, image, voice, or likeness is included in the Reproduction, and each such person has granted me and InterExchange all copyright and other intellectual property rights, including renewal rights, necessary to use the Reproduction and his or her name, image, voice and likeness in it. I

hereby release, discharge and agree to hold InterExchange harmless from any liability arising out of InterExchange's use of the Reproductions, including any blurring, distortion, alteration, optical illusion or use in composite form with other works. I hereby assign all copyright and other intellectual property rights, including renewal rights, to InterExchange, in any materials produced that are the subject of this Release.

b. **Use of InterExchange Intellectual Property.** If I desire to use InterExchange Intellectual Property for any reason, I shall contact InterExchange's Marketing Department to request permission. I shall not use InterExchange's Intellectual Property without having obtained prior written permission. InterExchange Intellectual Property shall mean, without limitation, InterExchange copyrights, trademarks and trade secrets, patents, online content appearing on InterExchange's website, Facebook and other Social Media content and marketing tools, marketing material and the application and other materials that I submitted to InterExchange.

c. **Disrepute.** I must not act in a manner that brings InterExchange, the Exchange Visitor Program, me, my country or the U.S. Department of State into notoriety or disrepute.

12. **Social Media Policy.** I understand and agree to the following terms when using Social Media:

    a. I must respect privacy by not disclosing any information that could reasonably be considered identifying information, including, without limitation, social security numbers, tax payer identification numbers, full names, addresses (beyond web site or business addresses) and financial account information of anyone involved with the InterExchange Cultural Exchange Program.

    b. I must not post any images of anyone without written documentation of their knowledge. I must also not post images of children without the permission and knowledge of their parents. I understand that posting these images may subject me to violation of not only privacy law, but also other international or U.S. federal, state and local laws.

    c. I agree that my time and effort spent using Social Media should not interfere with meeting my requirements under my contract with InterExchange or duties or work commitments to my Host Family.

    d. **I must not use Social Media in a way that will subject anyone to liability (criminal or civil) such as by posting obscene or illegal material or services or harassment of others. I must not engage in any activity that may result in legal action against InterExchange or those in a contractual or business relationship with InterExchange.**

    e. I agree to use my common sense in all communications, particularly when using publically accessible Social Media platforms in a manner that may lead to disrepute. I understand that what I say or display online could potentially be harmful to InterExchange, others and myself.

    f. If I have any questions about this policy, I must contact InterExchange for guidance.

13. **Privacy & Background Check.**

    a. **Privacy.**

        i. **InterExchange Privacy Policy.** By signing below, I accept and agree to be bound by InterExchange's Privacy Policy pursuant to InterExchange's Terms of Use located at www.InterExchange.org/terms-use, its Privacy Policy located at www.InterExchange.org/privacy-policy, my application and the terms and conditions set forth in this Agreement. I agree that I have read each of these documents, which (if applicable) are incorporated herein by this reference, as they form a legal agreement between InterExchange and myself regarding the Privacy Policy of the Program. I understand that in the event of any conflict between the application, this Agreement and those of the Terms of Use and Privacy Policy, the Terms of Use and Privacy Policy shall supersede with regard to the Privacy Policy.

        ii. **Au Pair duty to provide privacy.** In addition to the specific requirement for Social Media listed under this Agreement, I understand and agree that I must protect the privacy of the Host Family. In addition, I agree to protect the privacy of any party in a relationship with InterExchange and/or Au Pair USA, including, without limitation, InterExchange staff and Local Coordinators. If I have questions about my duties under this clause of the Agreement, I shall contact the Local Coordinator and/or authorized InterExchange managers for guidance.

    b. **Background Check.**

        i. **InterExchange.** I agree that the **Background Information Usage Notice** is incorporated into this Agreement in **Exhibit B**. The Background Information Usage Notice authorizes InterExchange to obtain and use background information (e.g., police reports and child care references obtained by me) for the purpose of determining my suitability for the Au Pair USA Program. By signing this Agreement, I certify that I understand and agree to the purpose for which InterExchange procures the background information from me. By signing this Agreement, I further certify that I agree to the methods by which InterExchange procures the background information.

        ii. **Host Family.** I understand and agree that the Host Family may request additional screening of me at the Host Family's own expense. I understand that the Host Family must conduct such investigation pursuant to the laws of the U.S. and state and local laws in which the Host Family resides.

14. **Additional Agreement Terms.**

    a. **Entire Agreement.** I understand and agree that this Agreement contains the entire understanding of the parties with respect to the matters contained herein and supersedes any previous agreements (oral, written or otherwise) and may be altered or amended only by a written instrument duly executed by both parties hereto.

    b. **Documents Incorporated into Agreement.** I understand and agree that 22 CFR Part 62, the Wilberforce Brochure (see below, "Dispute Process"), the Extension Agreement (if applicable and as described in the Agreement), the Au Pair Handbook, and the Department of State publication "The Au Pair Exchange Program" from InterExchange are incorporated into this Agreement. With regard to the use of InterExchange's website located at www.InterExchange.org ("Site"), I understand and agree that I must follow terms and conditions of www.InterExchange.org/terms-use and www.InterExchange.org/privacy-policy, which are incorporated into this Agreement for the purpose of Privacy Policy and site use only rather than for the general terms and conditions of the Program. Unless required by law or regulation (e.g., required 22 CFR Part 62, Wilberforce, the Department of State or federal, state or foreign law) or involving InterExchange's Privacy Policy, if there is a conflict between this Agreement and other documents incorporated into this Agreement, the Agreement shall be controlling.

    c. **Agreement in English.** This Agreement and correspondence between InterExchange and myself shall be written in English. In the case of any disputes between InterExchange and myself, the language that shall govern interpreting this Agreement or any issue arising out of communications, including, but not limited to correspondence, shall be English. I am responsible for any cost associated with translation if any language other than English is required by me for any reason.

    d. **Assignment.** This Agreement is restricted solely to myself and shall not be assigned, transferred, encumbered, or subject to any third party agreement without the written consent of InterExchange. Any attempted assignment will be void and of no effect. InterExchange may assign this Agreement to a successor (whether by merger, a sale of all or a significant portion of its assets, a sale of a controlling interest of the company or otherwise), which agrees in writing to assume InterExchange's obligations under this Agreement.

    e. **Amendments.** I agree that InterExchange, at its sole discretion, may amend this Agreement, provided, however, that the amendment is in writing and InterExchange gives me thirty (30) days notice. I agree that any changes required by the U.S. Department of State or any other government entity with legal authority over InterExchange must be adhered to immediately without 30-days notice. I understand and agree that I cannot amend the Agreement.

    f. **Third Parties and Third Party Beneficiaries.** I understand and agree that the terms and conditions of this Agreement, expressed or implied, exist only for the benefit of the parties to this Agreement. No other person or entity will be deemed to be a third party beneficiary of this Agreement.

    g. **Waiver.** I agree that InterExchange's failure to enforce any provision of this Agreement shall not be construed as a waiver or limitation of InterExchange's right to subsequently enforce and compel strict compliance with each and every provision of this Agreement.

    h. **Void Provision.** I agree that if any provision of this Agreement is held to be void or contrary to law, such provision shall be construed as nearly as possible to reflect the intention of the parties, with the other provisions remaining in full force and effect.

    i. **Headings.** I agree that all headings are for purposes of convenience only and are not to be used in interpretation or enforcement of this Agreement.

    j. **Change of Sponsor.** I understand and agree that InterExchange is not required to facilitate a request to change sponsors during the Program. I understand and agree that if I terminate this Agreement or otherwise end my Program that I am to return to my home country rather than stay in the U.S. I agree that I shall owe InterExchange or Host Family for any costs and/or expenses incurred by either InterExchange or the Host Family due to a change of sponsor.

15. **Laws, Regulations & Culture**

    a. **U.S. State Department Regulations.** I acknowledge and agree that I am participating in a Cultural Exchange Program and agree to comply with all of the regulations published by United States Department of State under 22 CFR Sec. 62, which may be amended from time to time in the future.

    b. **Federal, state and local laws.** I must comply with federal, state and local laws of the U.S., including income tax filing requirements (see below), licensing for use of motor vehicles (and other motor vehicle requires described in this Agreement) and laws regarding alcohol and drug use (see below for further details). I am responsible for reading and carefully considering all materials made available to me that relate to safety, health, legal, environmental, political, cultural and religious customs and conditions in the U.S. I take full responsibility in the event that laws, regulations or customs are broken and for obtaining actual knowledge of these laws, regulation or customs.

    c. **Taxes.** I am hereby given notice that I may be considered, under most circumstances, a non-resident alien who is not subject to Social Security (FICA), Medicare, or federal unemployment (FUTA) withholding taxes. Under rare circumstances involving Participants who previously entered the U.S. under a J Visa program or as a student under the F Visa, I understand that I may be considered a resident immigrant for tax purposes and subject to paying Social Security (FICA), Medicare, or federal unemployment

(FUTA) withholding taxes. I understand it is my responsibility to contact a tax professional to determine the extent (if any) of any taxes that I may owe. For more information, I understand that I should visit the IRS website and search for "Au Pair." Under all circumstances, I am subject to paying federal, state (if applicable) and local (if applicable) income taxes on my Stipend. This information is provided for notice purposes only, "as is" and is subject to change.

d. **Driving.** I agree to be responsible for determining whether I will be able to legally drive in the Host Family's state of residence. I acknowledge responsibility to conform to any and all state or local laws regarding my use of Host Family's automobile (if one is made available), including obtaining a local driver's license (if required) and any car insurance requirements. I agree to comply with requests made by Host Family for additional driving related education and instructions in compliance to the terms and conditions of this Agreement.

e. **Drugs and Alcohol.** I understand that the drug and alcohol laws of the U.S. may differ significantly from those of my home country even in the case of over the counter drugs and herbal remedies. I agree to investigate and follow all U.S. federal, state and local laws regarding drugs and alcohol.

f. **Cooperation with InterExchange.** I will cooperate fully with those supervising the Program on behalf of and in cooperation with InterExchange. I agree to abide by any reasonable instructions they may give me.

16. **Warranties, Liability, Indemnification & Act of God**

    a. **No Guarantee of Match or Participation.** I agree that InterExchange neither guarantees a Match (or Rematch) nor participation in the Program.

    b. **No Guarantee of Satisfaction or Suitability.** I agree that InterExchange neither guarantees satisfaction nor suitability with the Program or a Host Family.

    c. **Information Provided "As Is" Without Warranty or Guarantees.** I agree that any information (e.g., tax and labor law requirements and emergency information and plans) communicated by InterExchange to me is provided "as is" without warranties or guarantees either expressed or implied that information is "up to date", correct and/or accurate.

    d. **Participant General Liability.** I waive and release InterExchange from any and all claims for contract damages, torts arising out of or concerning my employment with the Host Family and any liability that I incur that arise out of or concerning my participation in the Program, including, without limitation, any lost, stolen or damaged property and/or any bodily injuries that harms a third party or me.

    e. **Limitation of Liability.** If a court, government agency or legal authority finds that InterExchange has a duty under foreign or U.S. federal, state or local law, I understand and agree that InterExchange's liability (if any) shall be no greater than its role as a nonprofit Sponsor under the U.S Department of State regulations. I agree that nothing herein described in this paragraph or in the Agreement creates a duty or obligation under the law, and that the language written herein is provided solely for the purpose of limiting liability to InterExchange's role as my Sponsor. I further agree that InterExchange's liability is subject to the limitations set forth in separate paragraphs described in Section 16.

    f. **Change of Sponsorship Costs.** In compliance with Section 14(j), I agree that I shall owe InterExchange for any costs and expenses that arise from a change of sponsor.

    g. **Specific Liability.**

        i. **Motor Vehicle.** If I have an accident while driving the Host Family's motor vehicle during work hours, I understand that I will not be liable and responsible for any cost and/or damages arising out of or concerning the repair of the motor vehicle, provided, however, that I did not violate any drug and/or alcohol laws while using the motor vehicle. If I violated any drug and/or alcohol laws while driving the motor vehicle, I am liable and responsible for damages and/or costs arising out of or concerning the accident. If there is damage to the Host Family motor vehicle during non-working hours, I am liable and responsible for one half (½) the costs and/or damages up to five hundred dollars ($500) per accident, provided, however, that I did not violate any drug and/or alcohol laws while driving the motor vehicle. If I violated drug and/or alcohol laws while driving the motor vehicle, I am liable and responsible for costs and/or damages arising out of or concerning any accidents involving drug and/or alcohol use by me. I understand that the five hundred dollars ($500) shall only be payable upon Host Family presenting proof of repair that shall include, without limitation, photos of the damaged and repaired vehicle. I agree that InterExchange is not liable for any damages or loses resulting from my use of the Host Family's or any other party's motor vehicle or transportation during my participation in the Program.

        ii. **Expenses.** I am responsible for all my personal debts, including, without limitation, phone calls, gym memberships, and medical insurance co-pay. I agree that InterExchange shall not be liable for any personal bills incurred by me during the Program. I agree that I am responsible directly to the Host Family for all personal debts including without limitation, phone calls and gym memberships.

        iii. **Transportation.** I agree not to hold InterExchange, its officers, affiliates, independent contractors, agents and employees liable for arranging transportation in the Program, and I agree not to hold any of them liable in connection with any loss, damage, personal injury, delay or expense suffered or incurred by me, resulting from any act or omission of any carrier.

any member of the host family or any other body, corporate or non-corporate entity, in relation to transportation to and from and within the United States, my duties as an Au Pair or any other facility or service organized on my behalf.

  iv. **Specific Liabilities.** I agree that I am responsible, and that I shall hold InterExchange as not liable or responsible for any claims, liability, damages or costs incurred by reason of any breach, act, error, negligence or omission that arises out of or concerns, without limitation, the following:

   a. My performance of child care duties
   b. My disciplining children
   c. Decisions and actions carried out by the Host Family
   d. Section 7(c)(i) and (ii), which respectively address InterExchange discussing health and safety circumstances with third parties and taking action in case of health or safety emergencies. Although InterExchange may elect to act as set forth in Section 7(c)(i) and (ii), I agree that InterExchange is not liable if InterExchange fails to act. I agree that neither Section 7(c)(i) and (ii) nor any other term under the Agreement creates an affirmative duty, either expressed or implied, for InterExchange to act. In compliance with Section 7(c)(i) and (ii), I agree that InterExchange is not liable for acting on my behalf under the circumstances described in Section 7(c)(i) and (ii).
   e. Insurance (including car insurance for vehicles) or medical, dental and health care needs that I may have during the Program
   f. Alternative flights to and from the U.S.
   g. My failure to meet immigration status requirements while in Program (e.g., travel outside of U.S. with expired J-1 Visa)
   h. My failure to follow emergency, safety and problems rules suggested or required by InterExchange, the Host Family or local authorities
   i. My disclosure of information and/or documents to unauthorized parties (e.g., tax payer id number or passport)
   j. My failure to apply for and obtain necessary documentation and information as described in this Agreement
   k. Leaving the Program. If I leave the Program for any reason before my commitment is finished or over-stay my visa, I forfeit my return flight and any vacation time, unearned Stipend and my Insurance will be cancelled (and therefore I agree that I will be responsible for any medical costs or damages caused by my lack of Insurance coverage). I also agree that I will be liable for all costs and damages that are incurred or arise out of InterExchange acting to address my actions.
   l. Inadvertent disclosure to third parties in the course of conducting an investigation involving my well-being or suitability for the Program.
   m. Breaching any other term of this Agreement (e.g., failure to follow laws of the U.S. or guidance from states and local authorities).
   n. Violations of U.S. federal, state and local laws, regulations and customs

 h. **Act of God.** I agree that InterExchange and/or its officers, employees, independent contractors, Local Coordinators and agents are neither responsible nor liable for any events beyond their control, including, without limitation, Government restrictions that may interfere with or preclude operation of the Program; any events directly or indirectly caused by any intentional or negligent acts or omissions by the Host Family or those with whom Au Pair comes into contact as a consequence of participating in the Program; the necessity of returning me to my home country early or ending my program early due to health reasons, transportation (e.g., air travel); terrorism; wars; and natural disasters.

 i. **Indemnification.** I shall indemnify, without limitation, InterExchange, its officers, employees, agents, Local Coordinators, independent contractors, and organizations affiliated with InterExchange, against any loss or damage suffered by any of them, or any claims made against any of them as a result of any breach, act, error, omission or negligence by me during my participation in the Program and for the duration of my stay in the U.S.

17. **Dispute Process.**

 a. **Complaints Procedure.** I have the right to contact the U.S. Department of State regarding any serious allegation arising under the Wilberforce Anti-trafficking requirement as set forth in the Wilberforce brochure that I received from InterExchange or upon refusal of InterExchange to address claims. I also understand that allegations by third parties about my progress, well-being and suitability in the Program will be investigated by InterExchange. I understand that InterExchange will not divulge any background information about me other than the information required to conduct the investigation.

b. In the event that I wish to lodge a complaint about any services provided by InterExchange, its suppliers, agent, representatives, independent contractors, vendors and/or affiliates (e.g., Insurance vendor, Host Family, Local Coordinators, International Cooperator, hotel or anyone in a relationship with InterExchange), I must first notify both my Local Coordinator and an authorized InterExchange manager in writing in order to give InterExchange the chance to rectify the problem.

c. I understand and agree this Agreement is governed by laws of the state of New York.

d. I agree that any controversy, dispute or claim arising out of or in connection with this Agreement, the relationship of the parties, or its interpretation, performance or nonperformance, or any breach thereof shall be determined solely in arbitration conducted in New York City in accordance with the then existing rules of the American Arbitration Association.

e. **Cost of Arbitration**. In the event of arbitration as described in 17(d), I understand and agree that the non-prevailing party must reimburse the prevailing party for all reasonable attorneys' fees and costs resulting therefrom.

f. **Cost of Litigation**. In the event that a court or legal authority fails to enforce the arbitration clause set forth in 17(d), I understand and agree that the non-prevailing party shall reimburse the prevailing party for all reasonable attorneys' fees and costs resulting from the cost of the litigation, including, but not limited to any trial and/or appeals.

18. **Terms, Termination and Survivorship**

    a. **Start Date**. I agree that this Agreement shall be effective as of the date of my submitting an application to the International Cooperator for the purpose of participating in the InterExchange Au Pair USA Program (the "Effective Date").

    b. **End Date**. I agree that this Agreement shall automatically terminate at the end of the Au Pair USA Program for standard 12-month Programs, in-country placements, rematches or Extension Programs, whichever is latest, plus my 30-Day Travel/Grace Period. I understand and agree that the Agreement may automatically terminate once my Program with InterExchange ends, which may end at the end of my 30-Day Travel/Grace Period in the Program, or earlier subject to the terms and conditions of termination of the Agreement, whichever occurs first.

    c. **Termination**. This Agreement may be terminated by InterExchange at any time and will terminate automatically if InterExchange ends its sponsorship of my J-1 Visa. Provided that I meet my obligations under this Agreement, I may terminate this Agreement by withdrawing from the Program and leaving the U.S., provided, however that I provide InterExchange with 2-weeks notice prior to termination.

    d. **Survivorship**. I agree that any terms and conditions regarding definitions, liability, fees, privacy, releases, intellectual property, Social Media, reputation, confidentiality and expenses/costs shall survive the termination of this Agreement.

19. **Full Disclosure**. I am solely responsible for the full disclosure and accuracy of any information provided by me, my agent or a legal guardian. I confirm that the information I have provided is true, complete and accurate, and upon request I will provide any additional documentation necessary to participate in this Program. I agree to keep all information complete, fully accurate and up to date.

20. **Signature**. This Agreement must be signed by electronic signature under the procedures set forth in InterExchange's online Passport system.

---

Exhibit A

Au Pair

Extension Term Sheet

The following terms apply if and when my Cultural Exchange Program as an Au Pair is extended under the terms and conditions described in the Extensions section of the Main Agreement. I understand that neither InterExchange nor I shall be obligated to follow these additional terms and conditions unless and until the Extension is approved (e.g., by both InterExchange and the U.S. Department of State) and I accept the Extension pursuant to the terms and conditions set forth in the Main Agreement:

1. **Extension**. I agree to all terms and conditions of the InterExchange Au Pair USA Extension Program as mandated by the United States Department of State, other U.S. regulatory agencies and InterExchange.

2. **Extension Request Final Once Submitted**. I understand and agree that Extension requests are final and cannot be changed once submitted to the U.S. Department of State, but I understand that I may decide to withdraw my participation in the Program for any reason and at any time.

3. **U.S. State Department Determines Approval**. I agree that the Extension is at the sole discretion of the U.S. Department of State. I

understand and agree that InterExchange cannot be held accountable for any delay or denial of the Extension by the U.S. Department of State.

4. **Au Pair Agreement Remains In Effect.** Unless expressly modified in this Extension Term Sheet, I agree to comply with the terms and conditions of the Main Agreement, which shall remain in effect for the duration of the Extension.

5. **Educational Requirement.** I agree to complete the required academic courses as follows during my Extension and, except for the number of credit hours, meet the requirements of Section 4(n) of the Main Agreement:

    a. I shall take the following credit hours:

        i. Three (3) semester hours for a six (6)-month extension

        ii. Six (6) semester hours for nine (9) and twelve (12)-month extensions.

    b. I will receive from the Host Family, if applicable, transportation to and from the place of instruction, and the Host Family shall make a tuition payment for the me as follows:

        i. Up to a maximum of two hundred fifty dollars ($250) for six (6) month extensions

        ii. Up to a maximum of five hundred dollars ($500) for nine (9) and twelve (12) month extensions.

    c. If a remaining balance is left from the tuition payment after I complete the requisite semester hours, I, at my sole election, may use the balance to take additional course work that meets the academic requirements of U.S. State Department regulations. I understand that the Host Family must provide me adequate time to attend courses at an accredited post secondary institution.

    d. **Failure To Meet Educational Requirement.** If I fail to meet the educational requirements as set forth by U.S. State Department regulations and InterExchange policy, I agree that I must pay for my return ticket to my home country.

6. **Paid Vacation.** I understand that I must receive the following paid vacation time from my Host Family:

    a. Six (6) Month Extension receives one (1) week paid vacation

    b. Nine (9) Month Extension receives one and a half (1½) weeks paid vacation

    c. Twelve (12) Month Extension receives two (2) weeks paid vacation

7. **Travel.**

    a. **Domestic Travel.** I understand and agree that my optional 30-Day Travel/Grace Period is a one-time component of this Cultural Exchange Program and can only be taken at the end of my Extension period.

    b. **Travel Abroad.** I understand that InterExchange recommends that I only return home or travel abroad during the time of my Extension with a visa that has not expired. Additionally, I agree that I am responsible for obtaining any necessary visas for each country that I intend to travel.

8. **J-1 Visa.** I understand I may not leave and re-enter the United States after the expiration date on my J-1 Visa without acquiring a new visa. I understand it is my responsibility to acquire this J-1 Visa at an American Embassy or Consulate outside the USA, and I cannot hold InterExchange liable if a new visa is not issued. There is no guarantee that I will receive a visa.

---

### Exhibit B

### Background Information Usage Notice

1. I understand that the purpose of this Background Information Usage Notice is to provide additional communication to me to ensure my awareness of why and how background information is provided to InterExchange.

2. As explained in the Main Agreement between InterExchange and myself, I understand that criminal records, child care references, school records and health information forms gathered by me and delivered to InterExchange via the International Cooperator are for the sole purpose of determining my suitability for the Program.

3. By signing the Main Agreement, I confirm that I agreed to assist InterExchange by providing the background information as requested. I hereby release InterExchange and any and all persons, business entities (e.g., International Cooperators) and governmental agencies (e.g., U.S. Department of State), whether public or private, from any and all liability, claims and/or demands, by me, my heirs or others making such claims or demands on my behalf, for gathering Background Information and/or providing an investigative report based on

background information.

4. I understand that this Notice shall remain in effect for the duration of my association with InterExchange.

5. If I have questions about the background information and any reports derived from the background information, I must contact InterExchange management. I am entitled to a complete and accurate disclosure of the nature and scope of any investigation into my background of which I am the subject upon my written request to InterExchange, provided, however, requests are made in writing before the completion of the Program, or not longer than 12 months after, the background information is requested, whichever is shorter.

---

**Au Pair Candidate Signature:** /s/Johana Paola Beltran
**Time & Date:** 03/05/2012 5:43 PM (EST)
**IP Address:** 186.103.115.77