IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN; and those similarly situated

Plaintiff,

v.

PAMELA H NOONAN;
THOMAS J NOONAN;
INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY d/b/a AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GOAUPAIR;
AGENT AU PAIR; INC.;
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC d/b/a PROAUPAIR; and
20/20 CARE EXCHANGE, INC. d/b/a THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

**JOINT MOTION TO DISMISS BY CERTAIN SPONSOR DEFENDANTS AND
CERTIFICATION OF COMPLIANCE WITH CIVIL PRACTICE STANDARD 7.1D.**

---

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants

InterExchange, Inc., UsAuPair, Inc., GreatAuPair, LLC, EurAupair Intercultural Child

Care Programs, Cultural Homestay International, APF Global Exchange, NFP,

American Institute For Foreign Study d/b/a Au Pair In America, and Agent Au Pair,

(collectively, the "Moving Defendants"), respectfully move to dismiss Count I of the

Complaint (Doc. #1).  With the exception of defendant InterExchange, Inc.,[1] Count I is the only count that is asserted against the Moving Defendants.

For the Court's convenience, the Moving Defendants note that Sponsor Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair has filed a separate motion to dismiss (Doc. #74).  The remaining Sponsor Defendants[2] are expected to join in this motion by two or three short, separate filings in which they also draw to the Court's attention supplemental arguments applicable only to certain individual Sponsor Defendants.

Defendants Pamela H. Noonan and Thomas J. Noonan are not "sponsors" and do not join in this motion.  Additionally, defendant Aupaircare Inc. apparently has not been served and has not appeared in this case.

**CERTIFICATION OF COMPLIANCE WITH CIVIL PRACTICE STANDARD 7.1D.**

Pursuant to this Court's Civil Practice Standard 7.1D(a), on behalf of the Moving Defendants, counsel for defendant Cultural Homestay International, James E. Hartley, contacted counsel for plaintiff to determine whether the pleading deficiency set forth below could be corrected by an amendment to the complaint.  After an email exchange with plaintiff's counsel, and based upon the nature of the defect in plaintiff's pleading,

---

[1] InterExchange also is named in Counts II-V.  InterExchange has filed a separate motion to dismiss Counts II-V (Doc. #75).

[2] Expert Group International Inc., d/b/a Expert Aupair, EurAupair Intercultural Child Care Programs, Au Pair International, Inc., American Institute For Foreign Study d/b/a Au Pair In America, American Cultural Exchange, LLC, d/b/a Goaupair, A.P.Ex. American Professional Exchange, LLC d/b/a Proaupair; and 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange.

counsel for the Moving Defendants do not believe the deficiency can be corrected by amendment.

## I.    INTRODUCTION

As explained in more detail below, each of the defendants joining in this motion to dismiss, along with defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair, is an organization that the U.S. State Department has designated as a "sponsor" that is authorized to conduct an "au pair" exchange visitor program (collectively, the "Sponsor Defendants").  Count I is a purported national class action in which plaintiff alleges that the Sponsor Defendants have conspired to fix the amount of the weekly stipend paid by host families to au pair participants in the State Department's Exchange Visitor Program.

The weekly stipend for participants in the au pair program is directly connected to the federal minimum wage as established by the Department of Labor.  As of July 24, 2009, the Department of Labor and State Department set the weekly stipend at $195.75.  The only alleged factual basis for the conspiracy asserted in the complaint is that the Sponsor Defendants have engaged in parallel conduct by instructing their host families to pay a weekly stipend in the amount of $195.75.

As a matter of law, allegations of parallel conduct alone are insufficient to state a conspiracy claim, particularly where, as here, there is an economically plausible reason for the parallel conduct to be the product of unilateral decision-making.  As a result, this case raises the precise concern identified by the Supreme Court in *Twombly*:  Before a party is exposed to extensive discovery and the potentially ruinous cost of defending an

antitrust case, the complaint must allege sufficient facts to state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Here, where the conspiracy allegation is based solely on parallel conduct, the factual allegations are not sufficient to allege a plausible conspiracy claim.  As the Supreme Court has stated, "an allegation of parallel conduct and a bare assertion of conspiracy **will not suffice**."  *Id.* at 556 (emphasis added).

## II.    PLAINTIFF'S CLAIMS

This is a purported class action in which the plaintiff asserts a variety of claims arising out of her participation as an au pair in the State Department's Exchange Visitor Program.  Plaintiff Johana Paola Beltran is from Bogotà, Colombia, and participated as an au pair for three or four months, from August or September through November, 2012.  Compl., ¶¶ 41, 43, 58, 59.

Defendants Pamela H. Noonan and Thomas J. Noonan were the host family for Ms. Beltran.  Defendant InterExchange, Inc., is the sponsoring agency that arranged for Ms. Beltran to participate as an au pair for the Noonans.  Compl., ¶¶ 31-33, 41-43.

The remaining defendants also are "sponsors" designated by the State Department to place au pairs under the Exchange Visitor Program.  Compl., ¶¶ 5-20. Collectively, the Sponsor Defendants represent all of the firms designated by the Department of State to participate in placing persons under the au pair program.[3]

---

[3] J-1 Visa, Exchange Visitor Program, Designated Sponsor List, Au Pair Program, http://j1visa.state.gov/participants/how-to-apply/sponsor-search/?program=Au%20Pair (last visited February 23, 2015).

In Count I of the complaint, plaintiff claims that the Sponsor Defendants have "agreed to fix the weekly stipend paid by host families to au pairs at the level set by the State Department." Compl., ¶¶ 82-92. With the exception of defendant InterExchange, Inc., Count I is the only claim asserted against the Sponsor Defendants.

In Counts II-V, plaintiff asserts a variety of claims against defendant InterExchange for violations of the Fair Labor Standards Act and corresponding state statutes and common law provisions. Compl., ¶¶ 93-123. In Count VI, she asserts an individual claim against the Noonans. Compl., ¶¶ 124-30.

## III.   FACTUAL ALLEGATIONS

### A.   The State Department's Au Pair Program.

The au pair program has its origins in the Mutual Educational and Cultural Exchange Act of 1961, 22 U.S.C. § 2451, *et seq.* The purpose of the Act is "to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchanges. Educational and cultural exchanges assist the Department of State in furthering the foreign policy objectives of the United States." 22 C.F.R. § 62.31(a); *see also* 22 U.S.C. § 2451.

The au pair program is part of the State Department "Exchange Visitor Program" and is administered by the U.S. State Department. The State Department has promulgated a series of regulations governing the various Exchange Visitor Programs.[4]

_____

[4] 22 C.F.R. §§ 62.1-62.17 contain provisions applicable to the Exchange Visitor program generally, including definitions, sponsor eligibility, categories of participants, application procedures, general program requirements, and so forth. 22 C.F.R. § 62.31 applies specifically to the au pair program.

The au pair program "provides foreign nationals the opportunity to live with an American host family and participate directly in the home life of the host family."  22 C.F.R. § 62.31(a).  Typically, au pairs stay with host families chosen by the sponsoring organizations, and receive room, board, and a weekly stipend for a period of one year, which may be extended for a second year.  *Id.* at § 62.31(e), (j), (l).  The Department of Labor has determined there is an employer/employee relationship between the host families (not the sponsors) and the au pairs, and thus the stipend paid to an au pair must conform with minimum wage law and adjustments.[5]

The au pair program is regulated extensively by the State Department, with regulations governing everything from sponsor eligibility, au pair selection, placement, training and compensation, to host family selection and orientation, and sponsor responsibility for monitoring and reporting.  *Id.* at § 62.31(a)-(l).  Specifically, sponsors must require their host families to compensate their au pairs "at a weekly rate based upon 45 hours of child care services per week."  *Id.* at § 62.31(j).[6]  Host families are required to execute written agreements with their au pairs governing their employment relationship.  *Id.* at § 62.31(e)(5).  As the Department of Labor has mandated, the weekly stipend is "directly connected to the federal minimum wage," and reflects a 40% credit for room and board provided by the host family, which is based on a Department

---

[5] *See* Department of State Fact Sheet: Au Pair Stipend (March 14, 1997), available at http://dosfan.lib.uic.edu/usia/GC/GC_Docs/AuPair/stipend.htm (last visited February 23, 2015) (hereinafter "Fact Sheet:  Au Pair Stipend") (copy attached as Exhibit A).

[6] 22 C.F.R § 62.31(j) provides that "Sponsors shall require that au pair participants … [a]re compensated at a weekly rate based upon 45 hours of child care services per week and paid in conformance with the requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor."

of Labor formula.[7]   As of July 24, 2009, the designated weekly stipend in the federal au pair program was $195.75.  *Id.*

> **B.      Conspiracy Allegations.**

The conspiracy allegations in the complaint are remarkably sparse.  The complaint first states, in conclusory form:

> As a group, the Sponsors agreed, either expressly or tacitly, agreed on the absolutely minimum weekly wage for an *au pair* under the FLSA.  The Sponsors then agreed to fix all *au pair* weekly wages at exactly that minimum amount.  This fixed weekly rate was illegal as a matter of law in many states.

Compl., ¶ 85.  Then, in support of the alleged conspiracy, the only facts alleged in the complaint are that (1) the agreement "is evidenced by the ratcheting of this agreed weekly wage rate each time the federal minimum wage increased," and that (2) "many" of the sponsors stated on their websites "that families would only have to pay the price fixed weekly wage rate to their au pairs."  Compl., ¶ 86.

As shown below, these allegations not only are wrong on their face, but also are legally insufficient to state a conspiracy claim.

> ### IV.      ARGUMENT

> A.      **The Elements of Count I.**

Pursuant to the Court's Civil Practice Standard 7.1D, the Moving Defendants state that the elements of a claim for relief asserting a violation of Section 1 of the Sherman Act are that the Sponsor Defendants (1) entered into a plausible "contract,

---

[7] Notice, Federal Minimum Wage Increase (June 14, 2007), available at http://j1visa.state.gov/wp-content/uploads/2012/09/aupair_wageincrease.pdf (last visited February 23, 2015) (hereafter referred to as "Notice, Federal Minimum Wage Increase") (copy attached as Exhibit B).

combination or a conspiracy;" (2) that "unreasonably restrains trade;" (3) in a "relevant

market." *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964

F.2d 1022, 1027 (10th Cir. 1992).  The Moving Defendants assert that the complaint

fails to allege a plausible conspiracy as a matter of law, as required by the first element.

### B.      Rule 12(b)(6) Standard.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the

sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To

survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as

true, to provide 'plausible grounds' that discovery will reveal evidence to support the

plaintiff's allegations." *National Ass'n. of Investors Corp. v. Bivio, Inc.*, No. 11–cv–

02435–WJM, 2012 WL 1695042, at *1 (D. Colo. May 15, 2012) (quoting *Shero v. City of*

*Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007)); *Twombly*, 550 U.S. at 555.  A

court considering a motion to dismiss may identify allegations that are no more than

conclusions, and therefore not entitled to the assumption of truth.  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." *Id.* at 679.

The Supreme Court and Tenth Circuit have both made it clear that a complaint

***must be dismissed*** if the conspiracy allegations are legally insufficient.  "Because § 1

of the Sherman Act 'does not prohibit all unreasonable restraints of trade . . . but only

restraints effected by a contract, combination, or a conspiracy, . . . [t]he crucial question'

is whether the challenged anticompetitive conduct 'stem[s] from independent decision or

8

from an agreement, tacit, or express.'" *Twombly*, 550 U.S. at 553 (quoting *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 540 (1954)) (internal citations omitted).

Accordingly, at the pleading stage, stating a Section 1 conspiracy claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made . . . [and] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.  The complaint must allege plausible facts supporting the conclusion that the conspiring parties "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray Rite Serv. Corp.*, 465 U.S. 752, 768 (1984).

Of particular importance in this case, where the complaint only alleges parallel conduct, "in order to make a § 1 claim, [the allegations] must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.  In other words, the complaint must contain "allegations plausibly suggesting (not merely consistent with) agreement . . . ." *Id.*  As the Tenth Circuit has ruled, a "***conspiracy allegation will fail*** if there is an independent business justification which explains the alleged conspirators' conduct." *Cayman Exploration Corp. v. United Gas Pipeline Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (emphasis added).  After all, "there is no reason to infer that [defendants] had agreed among themselves to do what was only natural anyway." *Twombly*, 550 U.S. at 566.

Numerous courts in the Tenth Circuit have dismissed Section 1 claims for failure plausibly to allege the existence of a conspiracy.  *See e.g., Turner Network Television*, 964 F.2d 1022; *Cayman*, 873 F.2d at 1361; *Native American Distribution v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1297-98 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006); *Kissing Camels Surgery Center, LLC v. Centura Health Corp.,* No. 12-cv-3012-WJM-BNB, 2014 WL 4230713 (D. Colo. February 13, 2014) (Martinez, J.); *Compliance Marketing, Inc. v. DrugTest, Inc.*, No. 09-cv-01241-JLK, 2010 WL 1416823, at *12-13 (D. Colo. April 7, 2010) (Kane, J.); *Sweeney v. Marvin Windows, Inc.,* No. 10-cv-00457-WDM-KMT, 2010 WL 4256195, at *5 (D. Colo. October 20, 2010) (Miller, J.).

### C.   Matters Outside the Pleadings.

In this motion, Moving Defendants rely on several notices or other publications issued by the Department of Labor and State Department, including the "Fact Sheet: Au Pair Stipend" (Exhibit A), and the "Notice, Federal Minimum Wage Increase" (Exhibit B), which are cited *supra* at notes 5 and 7, respectively.  These materials properly may be considered by the Court in connection with this motion.  *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010) (in ruling on a motion to dismiss, court may consider matters of which a court may take judicial notice); *Wolfe v. Aspenbio Pharma, Inc.*, No. 11-CV-00165-REB-KMT, 2012 WL 4040344 (D. Colo. Sept. 13, 2012) ("a court is permitted to take judicial notice of . . . facts which are a matter of public record.") (citing *Folks v. State Farm Mutual Insurance Co.*, 299 Fed. Appx. 748, 756 n.12 (10th Cir. Oct. 20, 2008)); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

**D.    Plaintiff Has Not Alleged Facts Sufficient to Establish that the Sponsor Defendants Agreed on the Amount of the Weekly Stipend.**

As indicated, the complaint states in conclusory terms that the Sponsor Defendants "agreed to fix all au pair weekly wages at exactly [the] minimum amount" established by the State Department.  Compl., ¶ 85.  The only facts alleged in support of this conclusory allegation are (1) evidence of "the ratcheting of this agreed weekly wage rate each time the federal minimum wage increased," and (2) on their websites, the sponsors have indicated that the host families are obligated to pay *"only"* the weekly stipend of $195.75 designated by the Department of Labor and the State Department.  Compl., ¶ 86 (emphasis added).

The first alleged fact – even if taken as true -- proves nothing about a conspiracy.  All plaintiff alleges is that the Sponsor Defendants increased the weekly stipend in response to increases in the federal minimum wage to which the weekly stipend was tied.[8]  Of course, this is precisely what the sponsors were *required* to do under Department of Labor and State Department regulations.  *See* Notice, Federal Minimum Wage Increase (Exhibit B), *supra* at n.7.  Allegations of action that the defendants would

---

[8] As indicated, the complaint alleges that the weekly stipend is a minimum amount that must be paid weekly to the au pairs, not a mandatory weekly payment.  Compl., ¶¶ 27, 85-86.  The federal regulations and State Department notice, however, fairly could be read to set a mandatory weekly payment amount that is "directly connected to the federal minimum wage."  Notice, Federal Minimum Wage Increase (Exhibit B).  This is the argument advanced in the motion to dismiss filed by Cultural Care, Inc.  Defendant Cultural Care, Inc.'s Motion to dismiss at 6, 9-13 (Doc. #74).

Importantly, however, the Court need not resolve the question of whether the $195.75 weekly stipend designated by the Department of Labor and the State Department is a minimum or a mandatory payment.  Even assuming plaintiff is correct in arguing that the designated payment is a *minimum*, the conspiracy allegations in the complaint are still insufficient as a matter of law.

naturally undertake independently does not warrant the inference of a conspiracy. *Twombly*, 550 U.S. at 566 (after all, "there is no reason to infer that [defendants] had agreed among themselves to do what was only natural anyway").

The allegation that "many" of the sponsors state on their websites that host families are "only" required to pay the weekly stipend designated by the Department of Labor and the State Department fares no better.  None of the excerpts of the sponsor websites quoted in the complaint state that the weekly stipend established by the Department of Labor and the State Department is the ***maximum*** that can be paid to the au pair.

In fact, a review of the language of the websites cited in the complaint reveals that most of the websites simply state, consistent with State Department regulations, that the host family is obligated to pay a weekly stipend of $195.75 per week, and in several instances the sponsor states its understanding that this amount has been established by the Department of Labor and the State Department.  *See generally* Compl., ¶ 29 (websites for the Sponsor Defendants, and particularly the websites for defendants EurAuPair Intercultural Childcare Programs, Cultural Homestay International, and Cultural Care, Inc., cited at Compl., pages 8-9).

More importantly, the most that can be said is that the complaint alleges ***parallel conduct*** -- that consistent with State Department regulations, "many" of the Sponsor Defendants instructed their host families to pay a stipend of $195.75.  Yet, it is well settled that parallel conduct, standing alone, is not sufficient to allege a plausible conspiracy.  "Without more, parallel conduct does not suggest conspiracy, and a

conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57.

By the same token, an allegation of parallel conduct is not legally sufficient if parallel conduct is just as consistent with lawful conduct as it would be a conspiracy. *Cayman*, 873 F.2d at 1361; *see also Twombly*, 550 U.S. at 554.  Therefore, a plaintiff relying on allegations of parallel conduct must plead facts "which would support an inference that the alleged actions by [defendants] would be contrary to their economic interests absent an agreement." *Cayman*, 873 F.2d at 1361.  Mere allegations of parallel conduct consistent with a defendant's economic interest are insufficient to state a claim for a conspiracy. *Compliance Marketing*, 2010 WL 1416823, at *13.

In this case, it plainly is in the economic interest of a sponsor to require host families to pay the weekly stipend determined by the Department of Labor and the State Department. ***Indeed that is precisely what the sponsors are required to do.*** *See supra* at 6-7.  At most, the websites maintained by the Sponsor Defendants correctly state that a weekly stipend of $195.75 is required by State Department regulations. Nowhere does any website state that any of the Sponsor Defendants instructed host families that they could ***only*** pay a weekly stipend in the amount of $195.75.[9]

Thus, it certainly is economically plausible that the each of the Moving Defendants independently would conclude that it should inform its host families that the cost of hosting an au pair included a weekly stipend of $195.75, and that some of the

---

[9] In fact, several of the Sponsor Defendants set multiple rates, as indicated in their separate joinder in this motion, which Moving Defendants understand will be filed today, February 23, 2015.

Sponsor Defendants separately would elect to have higher charges for more experienced au pairs.  If the host family on its own determined to pay more, that was between the host family and the au pair.  The Moving Defendants have no interest in or information about individual host family payments above the amount set by the State Department.  Accordingly, it makes perfect sense for the Moving Defendants to inform their host families that costs include the weekly stipend of $195.75.

The Tenth Circuit has stated emphatically that a "conspiracy allegation will fail if there is an independent business justification which explains the alleged conspirators' conduct."  *Cayman*, 873 F.2d at 1361.  The complaint must be dismissed if it does not allege facts sufficient "to exclude the possibility that the [defendants] were acting independently." *Monsanto*, 465 U.S. at 764.  The Court's task is even easier where, as here, the plaintiff's own allegations demonstrate the independent business justification for the conduct.  *See Compliance Marketing*, 2010 WL 1416823, *12-13.

In summary, the complaint alleges only that "many" of the Sponsor Defendants engaged in parallel conduct that complied with federal regulations and was ***fully consistent*** with their individual economic interest.  As a matter of law, this allegation is insufficient to state a conspiracy claim under Section 1 of the Sherman Act.

## V.    CONCLUSION

The Supreme Court could have decided the *Twombly* case with the present lawsuit in mind.  Count I of the complaint alleges a violation of the antitrust law and seeks relief for a class composed of all current and former au pairs sponsored by any of

the Sponsor Defendants.  Compl., ¶¶ 62, 82-92.  Plaintiff estimates that there are more

than 50,000 members in the class from throughout the country.  Complt., ¶ 65.

But, as the Court observed in *Twombly*, defending an antitrust class action can

be enormously expensive.  550 U.S. at 558-59.  Where there is no reasonable basis for

inferring the existence of a conspiracy, the Moving Defendants should not be exposed

to the potentially ruinous cost of defending this case.  The undersigned defendants

respectfully request that the Court dismiss Count I of the complaint against the Moving

Defendants with prejudice.

Dated February 23, 2015.

Respectfully submitted,

*s/ James E. Hartley*
James E. Hartley
Mher Hartoonian
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone:  303-295-8000
jhartley@hollandhart.com
mhartoonian@hollandhart.com

ATTORNEYS FOR DEFENDANT
CULTURAL HOMESTAY INTERNATIONAL

s/ Brooke A. Colaizzi
Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
SHERMAN & HOWARD, LLC
633 17th Street, Suite 3000
Denver, CO 80202
Phone:  303-297-2900
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com

**ATTORNEYS FOR DEFENDANT
INTEREXCHANGE, INC**


s/ William J. Kelly, III
William James Kelly, III
KELLY & WALKER, LLC
1401 17th Street, Suite 925
DENVER, CO 80202
Phone:  720-236-1800
wkelly@kellywalkerlaw.com

**ATTORNEYS FOR DEFENDANT
USAUPAIR, INC.**


s/ Meshach Y. Rhoades
Meshach Y. Rhoades
Martin Estevao
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
Phone:  303-572-6500
rhoadesm@gtlaw.com
estevaom@gtlaw.com

**ATTORNEYS FOR DEFENDANT
GREATAUPAIR, LLC**

16

s/ Martha L. Fitzgerald
Martha Louise Fitzgerald
Kathryn Anne Barrett
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Phone:  303-223-1126
mfitzgerald@bhfs.com
kbarrett@bhfs.com

**ATTORNEYS FOR DEFENDANT
EURAUPAIR INTERCULTURAL CHILD CARE
PROGRAMS**

s/  Lawrence L. Lee
Lawrence L. Lee
Daniel C. Perkins
FISHER & PHILLIPS LLP
1801 California Street, Suite 2700
Denver, CO 80202
Phone:  303-218-3650
llee@laborlawyers.com
dperkins@laborlawyers.com

**ATTORNEYS FOR DEFENDANTS
APF GLOBALEXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a
AUPAIR IN AMERICA**

s/ Kathryn A. Reilly
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO 80202
Phone:  303-244-1800
reilly@wtotrial.com

**ATTORNEYS FOR DEFENDANT
AGENT AU PAIR**

17

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Alexander Neville Hood
TOWARDS JUSTICE-GOLDEN
alex@towardsjustice.org

Susan Penniman Klopman
H & K LAW, LLC
sklopman@hklawllc.com

Brian T. Moore
JESTER GIBSON & MOORE LLP
BMoore@jgllp.com

Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
W.V.Bernie Siebert
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
bsiebert@shermanhoward.com

Bogdan Enica
EXPERT AUPAIR
Bogdan@expertaupair.com

Martha Louise Fitzgerald
Kathryn Anne Barrett
BROWNSTEIN HYATT FARBER SCHRECK, LLP
mfitzgerald@bhfs.com
kbarrett@bhfs.com

Jeffrey Paul Allen
Donald J. Gentile
LAWSON & WEITZEN, LLP
jallen@lawson-weitzen.com

William James Kelly, III
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

Kathryn A. Reilly
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com

Lawrence D. Stone
Christian D. Hammond
DUFFORD & BROWN, P.C.
lstone@duffordbrown.com'
chammond@duffordbrown.com

Meshach Y. Rhoades
Martin Estevao
GREENBERG TRAURIG, LLP
rhoadesm@gtlaw.com
estevaom@gtlaw.com

Lawrence L. Lee
Daniel C. Perkins
FISHER & PHILLIPS LLP
llee@laborlawyers.com
dperkins@laborlawyers.com

s/ James E. Hartley
James E. Hartley
HOLLAND & HART LLP

18