IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN;
LUSAPHO HLATSHANENI;
BEAUDETTE DEEELEFS;
DAYANNA PAOLA CARDENAS CAICEDO;
ALEXANDRA IVETTE GONZÁLEZ;
and those similarly situated

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY d/b/a AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GOAUPAIR;
AGENT AU PAIR; INC.;
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC d/b/a PROAUPAIR; and
20/20 CARE EXCHANGE, INC. d/b/a THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

## JOINT MOTION TO STRIKE CERTAIN ALLEGATIONS

Pursuant to this Court's inherent power to regulate litigation conduct, defendants

InterExchange, Inc., USAuPair, Inc., GreatAuPair, LLC, Cultural Homestay

International, APF Global Exchange, NFP, American Institute For Foreign Study d/b/a

Au Pair In America, Agent Au Pair, American Cultural Exchange, LLC d/b/a Go Aupair,

Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc. d/b/a Cultural Au Pair

and Expert Group International, Inc. d/b/a Expert AuPair (collectively, the "Moving

Defendants"), respectfully move to strike ¶¶ 90 to 94 from the First Amended Complaint

("FAC") (Doc. #101).   Pursuant to **Civ. Practice Standard 7.1D**, counsel for USAuPair,

Inc. represents that on April 20, 2015, Plaintiffs advised that they oppose this Motion.

## INTRODUCTION

Immediately after this suit was filed on November 13, 2014, Plaintiffs' counsel

engaged in improper and unethical contacts with several "directors" and "representatives"

of certain defendants.  Plaintiffs'  counsel (or someone acting under his direction),

telephoned certain defendants' offices, did not identify himself as representing a party

who had just filed a class action lawsuit against it, and did not ask if the company was

represented by counsel.   The caller then proceeded to make substantive inquiries

designed to elicit admissions concerning the weekly stipend paid by host families to their

au pair.  *See* **Ex. 1,** Excerpts from FAC, ¶¶ 90 to 94 (hereafter referred to as the "Alleged

Statements"). On their face, the Alleged Statements reveal that Plaintiffs' counsel

orchestrated deceptive inquiries of certain defendants designed to elicit admissions

concerning issues in this litigation.  Such contacts were unethical and the Alleged

Statements referring to them should be stricken from the First Amended Complaint.

## FACTUAL BACKGROUND

### A.    The Litigation

Plaintiffs filed this lawsuit on November 13, 2014, alleging an antitrust claim

against the 15 sponsor agencies certified by the US Department of State to sponsor

foreign nationals under the J-1 visa program to work in America as au pairs.  Despite

filing the lawsuit in mid-November, Plaintiffs' counsel delayed serving any of the

defendants until mid-December 2014.  After all Defendants moved to dismiss the initial

Complaint, Plaintiffs amended the complaint to add new factual allegations, including

new allegations that on November 20 and  21, 2014 – after the lawsuit had been filed,

but more than four months before the amendment – at least three unidentified

employees of three unidentified sponsor defendants had made admissions during

questioning by the Plaintiffs' attorney or someone working on his behalf.  *See* **Ex. 1**,

FAC, ¶¶ 90-94.

### B.      Efforts to Discover Information about Alleged Statements

Upon receipt of the FAC, counsel for defendant Go AuPair, Kathryn Reilly,

contacted Plaintiffs' attorney Alexander Hood to inquire about the contacts with various

sponsor defendant personnel.  *See* **Ex. 2,** Reilly Email to Hood dated March 18, 2015.

Counsel for Plaintiffs responded that all of the communications with sponsor defendant

"directors" occurred *prior to service of* the Original Complaint on any of the sponsor

defendants.  *See* **Ex. 3,** Hood Email to Reilly dated March 18, 2015.  Subsequently,

through a series of additional exchanges, defense counsel attempted to obtain

additional details concerning these potentially improper contacts.  *See* **Ex. 4**, Reilly

Email to Hood dated March 19, 2015(2)**;** *see also* **Ex. 5,** letter from Hood to Reilly dated

April 1, 2015.  To this date, however, Plaintiffs' counsel has refused to identify all of the

specific people with whom he or his agent spoke and which of the defendants were

involved.  And, despite multiple requests, Mr. Hood has not disclosed who made the contacts.

In initial disclosures, however, Plaintiffs identified David Keil as someone who "among other things, has knowledge regarding the Defendant sponsors' alleged price fixing conspiracy and fraud."  *See* **Ex. 6**, Plaintiffs' Initial Disclosures, Witness No. 18. Defendants discovered that Mr. Keil is a Denver-based private investigator.  Thus, it seems to follow that the "other things" known by Mr. Keil relate to his retention by Plaintiffs' counsel, instructions he was given, and his communication with defendants during the pendency of this litigation.

With this disclosure, and using the phone number published on the David Keil Investigations website (http://www.davidkeilinvestigations.com), several defendants made attempts to determine whether, and when, they had been contacted.   Au Pair International, for example, was able to determine that someone from Mr. Keil's published phone number spoke for nearly 13 minutes to one of its employees. *See* **Ex. 7,** Declaration of J. Gorry.  The caller from the Keil number did not identify himself as an investigator, did not reveal that he was working under the direction of counsel, did not disclose the pending litigation, and feigned interest in the program as a member of a potential host family.  *See* **Ex. 7** at ¶¶ 8-9**.**  Defendant Cultural Care, Inc. has been able to determine that a caller from the same number called its switchboard on November 24, 2014, but hung up while on hold.  *See* **Ex. 8**, Declaration of Christian Rheault at ¶¶ 4-8.  AFP Global Exchange, NFP has not been able to determine who made any calls to it.  *See* **Ex. 9**, Declaration of Theresa Nelson at ¶¶ 6-7; *see also* **Ex. 10**, Declaration of

Carrie Crompton at ¶¶ 6-7.   But anyone calling that entity during that time period did not identify himself as an attorney or an investigator and did not disclose the pending litigation as the basis of any inquiries.  *See* **Ex. 9** at ¶ 7; **Ex. 10** at ¶ 7.

Pursuant to Rule 26(b)(3)(C), several Defendants issued written requests for immediate production of any statements (whether forming the basis of the Alleged Statements or otherwise). Many defendants, including InterExchange, Inc., Go Au Pair, Agent Au Pair, Cultural Care, Inc., Cultural American Institute For Foreign Study d/b/a Au Pair In America, USAuPair, Inc, Cultural Homestay International, GreatAuPair, LLC and Expert Group International d/b/a Expert AuPair, requested immediate Rule 26 disclosures of the persons contacted.  *See* Composite **Ex. 11-A to 11-P.**   Plaintiffs responded to most defendants as follows:

> Plaintiffs object to this request under Rule 26(b)(3)(C) of the Federal Rules of Civil Procedure to the extent it seeks statements beyond the scope of Rule 26(a)(3)(C) [sic].
>
> Without waiving the foregoing objections, and construing this request as seeking previous statements within the scope of Rule 26(b)(3)(C), Plaintiffs have no responsive statements.

*See* Id.   However, counsel identified the following statements attributable to APF Global Exchange, NFP:

- "We are in the middle, price-wise"

- "The more fixed expenses, like the stipend paid to the au pairs."

- "That is where pricing becomes standard across all agencies. There is no difference in prices, as far as the stipend goes, between all of the agencies."

- "Well, yah, it's that."

- "Plus, we are all subject to the same federal guidelines, so we all stay within that."

- "Sure, the government set an amount, and we all pay that amount."

- "Correct!  Correct!  Everybody agrees, correct!"

*See* **Ex. 12.**  These "quotes" have no context or attributions, but appear to be responses to leading statements made by the caller.  AFP Global Exchange, NFP affirms that no caller during this time frame identified the true nature of the call or the position of the caller. *See* **Ex. 9** at ¶ 7; **Ex. 10** at ¶ 7.

## ARGUMENT

## 1.   LEGAL STANDARD

A district court may exercise its inherent authority to exclude evidence obtained in bad faith that affects the fairness or integrity of the proceedings.  *See, e.g., Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725, at *7 (D. Ariz. Nov. 5, 2009) (improper *ex parte* contacts with an employee of the defendant, bars Plaintiff from using any statement, documentation, or information gained from the ex-parte communication); *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147, 1158-59 (D.S.D. 2001), *aff'd*, 347 F.3d 693 (8th Cir. 2003) (unethical recording of *ex parte* contact with defendant by investigator under direction of Plaintiff's counsel led to exclusion of evidence); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1335 fn. 2 (11th Cir. 1997) (upholding sanction barring defendant from using the testimony of paid witnesses in violation of [state] counterpart to Colorado Rule of Professional Conduct ("Colo.RPC") 4–3.4(b)).

The authority to strike evidence derives from the inherent power of the court to control the proceedings and to ensure the integrity of the process and fairness to the parties. *Longcrier v. HL-A Co., Inc.,* 595 F. Supp. 2d 1218, 1229-30 (N.D. Ala. 2008); *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,* 144 F. Supp. 2d 1147, 1150 (D.S.D. 2001). "Courts necessarily have the inherent equitable power over their own process 'to prevent abuses, oppression and injustices.'" *Gumbel v. Pitkin*, 124 U.S. 131, 144, 8 S.Ct. 379, 31 L.Ed. 374 (1888)). "[I]n addition to the sanctions authorized under the [Federal Rules of Civil Procedure], federal courts have the inherent power to sanction a party for conduct that constitutes an abuse of the judicial process." *Wilson v. Pasquale's DaMarino's, Inc.*, No. 10 Civ. 2709(PGG), 2013 WL 1195603, at *5 (S.D.N.Y. Mar.25, 2013) (citing *Chambers*, 501 U.S. at 43).

Further, counsel may not use an investigator or agent to circumvent the rules. Pursuant to Rule 5.3, lawyers are responsible for actions of those who work at their direction. "A lawyer shall be responsible for conduct of [another] that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if: (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved." Colo.RPC 5.3(c)(1) Similarly, "[i]t is professional misconduct for a lawyer to ... knowingly assist or induce another to [violate the rules of professional conduct], or do so through the act of another." Colo.RPC 8.4(a).[1]

---

[1]  The official comment to Colo.RPC 5.3 states: "whether employees or independent contractors, [these assistants] act for the lawyer in rendition of the lawyer's professional services," and thus, "[a] lawyer should give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment."   An attorney cannot avoid his ethical obligations by use of an agent or investigator. *See Upjohn Co. v. Aetna Cas. & Sur. Co.*, No. 4:88 CV 124, 1990 WL 446503, at * 1 (W.D.Mich. July 13, 1990).

While motions to strike allegations or evidence as a result of ethical violations are generally disfavored and should only be granted in exceptional circumstances, this Motion abundantly meets the standard.  The contacts were unethical and conducted under false and misleading pretenses in an effort to obtain admissions against interest.  The Alleged Statements emanate directly from the unethical contacts themselves.  While the discoverability and admissibility of the Alleged Statements are beyond the scope of this motion, allowing these statements to remain in the FAC would be prejudicial because, *inter alia*, the Alleged Statements potentially would be part of an operative pleading and, even after they are denied by Defendants in any responsive pleadings, potentially subject to consideration by the jury.  *See, e.g., Glaesman v. Shop-Rite Foods, Inc.*, 438 F.2d 341, 341 (10th Cir. 1971).  On the other hand, if Plaintiffs survive Defendants' motions to dismiss, then the Alleged Statements will be subject to the appropriate levels of inquiry through the parties' discovery.  This process, under these circumstances, is the conventional and fair way to develop evidence.

2.     **THE CONTACTS WERE UNETHICAL**

    A.     **Counsel Violated Rule 8.4 Because He Contacted Parties After Filing Suit, Under False Pretenses, to Obtain Admissions Against Interest.**

Rule 8.4 prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation and from accomplishing an otherwise prohibited act by inducing, encouraging, or employing a non-lawyer or other agent to engage in the conduct prohibited by the Rules of Professional Conduct.  In *People v. Pautler,* 47 P.3d 1175 (Colo. 2002), the Colorado Supreme Court affirmed a disciplinary panel's finding that an attorney who deliberately misrepresented his role as a prosecutor to an

8

unrepresented person to induce him to surrender to authorities violated Colo. RPC

8.4(c) and 4.3.  In so doing, the Court affirmed that the Rules impose an affirmative duty

upon all lawyers to deal honestly with others, noting that the petitioner "deceived [the

unrepresented person] and then took no steps to correct the misunderstanding. ..."  *Id.*

at 1182.  This is precisely the conduct engaged in by Plaintiff's counsel or his agent.

Here, counsel engaged in "dishonesty, fraud, deceit or misrepresentation" when,

approximately one week after filing this lawsuit, he or his agent made inquiries in the

guise of a disinterested third party.  He further violated Colo. RPC 8.4 when he failed to

disclose his status as an attorney (or agent of an attorney) for a party that had recently

filed a lawsuit against the directors' employers, and that therefore his client's interest

was directly adverse to the interests of the directors' employers.

**B.    Plaintiffs' Counsel Violated Rule 4.3 of the Colorado Rules of Professional Conduct.**

Counsel's actions also violate Rule 4.3, which requires attorneys to clarify their

role in a particular matter when speaking with unrepresented parties.  Under Rule 4.3, a

party and its attorneys are required to disclose their interest in a lawsuit and to reveal

their involvement.  *See Todd v. Montoya*, Civ. Action No. 10-0106 JB/WPL at *27

(D.N.M. Jan. 12, 2011) (finding no violation of New Mexico's version of Rule 4.3

specifically because the attorney and investigator disclosed who they represented and

the reason for the call); *Cole v. Appalachian Power Co.*, 903 F. Supp. 975, 980

(S.D.W.Va. 1995) (requiring attorney or investigator to (1) fully disclose representative

capacity, (2) state reason for seeking interview, and (3) inform individual of right to

refuse to be interviewed).  Here, counsel or his agents engaged in subterfuge and

concealed the true purpose of the contact.  To that end, they elicited statements, which they now claim constitute admissions that all of the sponsor defendants engaged in price-fixing conduct.

In *Midwest Motor Sports v. Arctic Cat Sales, Inc.*, the Eighth Circuit Court of Appeals concluded that a defendant's attorneys had violated South Dakota's version of Rule 4.3 when they engaged a private detective to pose as a potential customer and ask questions of both a salesman at the Plaintiff company and a co-defendant company's president in an attempt to discover evidence relevant to their claims.  347 F.3d at 1158-59.  Applying the rule to the investigator's interview of the salesman, the Court held:

> The statements taken from [the salesman] were in part an attempt to elicit admissions against his employer, the Plaintiff. The interview with [the salesman] would be prohibited under [Rule 4.2] as the investigator was intended by the defense counsel to elicit admissions. A standard only now being clearly established is not the basis for these sanctions.  The sanctions are supported by the interviews which took place under false pretenses, as such interviews are clearly prohibited by Rule 4.3 of the South Dakota Rules of Professional Conduct.

*Midwest Motor Sports*, 144 F. Supp.2d at 1158.  Thus, the Court affirmed that using guile, subterfuge, or false representations in an attempt to obtain information from an unrepresented person violates Rule 4.3, and this applied with equal force when the ruse is perpetrated by an agent or representative of an attorney.  *Id.* at 1157 (*citing Upjohn Co.*, 1990 WL 446503, at * 1.  This is precisely the conduct at issue here.

**C.      Counsel Violated Rule 4.2 by Making or Directing *Ex Parte* Contacts with Represented Persons.**

Rule 4.2 states that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."  Colo. RPC 4.2 (2012).  The rule is designed "to prevent situations in which a represented party may be taken advantage of by adverse counsel" because "the presence of the party's attorney theoretically neutralizes any undue influence." *Lobato v. Ford*, Civil Action No. 05-cv-01437-LTB-CBS, 2007 WL 3342598, at *15 (D. Colo. Nov. 9, 2007).

Comment to Rule 4.2 makes clear that where the party at issue is an organization, an attorney may not communicate "with persons having a managerial responsibility on behalf of the organization, [or] with any other person whose act or omission in connection with that matter may be imputed to the organization for the purposes of criminal or civil liability or whose statement may constitute an admission on the part of the organization." *See also* Colorado Bar Association ("CBA") Ethics Committee ("CBA Ethics Committee"), Revised Formal Opinion 69, "Propriety of Communicating with Employee or Former Employee of an Adverse Party Organization," (revision adopted June 20, 1987; addendum issued 1995); *see also Sequa Corp. v. Lititech, Inc.*, 807 F.Supp. 653, 662 (D.Colo. 1992).

### i.     The sponsor defendants were "represented persons" at the time of the communications by Plaintiffs' counsel.

Rule 4.2's prohibition against *ex parte* communication exists when the lawyer has knowledge of the representation.  *See* Colorado RPC 4.2, comment 8 (2012).  However, a lawyer cannot avoid actual knowledge by turning a blind eye to the representation question.  *Id.*  The proscription against attorney communication with a represented person or party of Rule 4.2 has force even before actual litigation is commenced.  *See Miano v. AC & R Advertising, Inc.*, 148 F.R.D. 68, 77 (S.D.N.Y. 1993); *White v. Illinois Central R.R. Co.*, 162 F.R.D. 118, 119 (S.D.Miss. 1995) (holding that pre-suit interview of defendant's foreman by Plaintiff's attorney's investigator was a violation of Rule 4.2). Counsel initiated these contacts approximately one week *after* filing suit. Counsel clearly intended to turn a blind eye to the fact that the persons with whom he spoke – and the companies for which they work – were either presently represented by counsel or, in response to the suit he had just filed, would imminently be represented.  Rushing to obtain statements under these circumstances cannot be condoned.

### ii.     The "directors" interviewed by Plaintiffs are "represented parties."

Plaintiffs' Amended Complaint characterizes the persons to whom Counsel or his agent spoke as "directors" or "representatives."  *See* FAC, ¶¶ 92-94. In *Weeks v. Independent Sch. Dist. I-89*, the Tenth Circuit upheld a motion disqualifying a Plaintiff's counsel and striking the use of tainted evidence after the district court determined that she had held improper *ex parte* communications with the defendant's supervisory personnel concerning matters relevant to the Plaintiff's Fair Labor Standards Act claims

against the defendant.  230 F.3d 1201, 1213 (10th Cir. 2000).  In so doing, the court noted that Oklahoma's equivalent to Colo. R.P.C. 4.2 prohibits *ex parte* contact with employees of represented parties when those employees can bind the organization with their admissions.  *Id.* at 1208.  There, the two supervisory employees interviewed were the plaintiff's immediate supervisor and the Director of Operations, both of whom were questioned extensively about the plaintiff's work hours, pay rate, and other matters relevant to the case.  *Id.* at 1205.  Further, the court opined that Rule 801(d)(2)(D) of the Federal Rules of Evidence "provides guidance" in determining whether an employee meets this test because it defines "admission" as a statement that is offered against a party, and that is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Id.* at 1209 (*citing* Fed.R.Civ.P. 801(d)(2)(D)).

Here, the fact that Plaintiffs intend to use these statements as admissions against interest by a party opponent, and have already referred to them in the Amended Complaint as binding the company, should be dispositive of this element of the inquiry. Either the contacts were of persons who can bind the company, and were unethical, or the contacts were of persons who do not speak for the company, and are erroneously attributed not only to their employers, but to *all* Sponsor Defendants, including those not actually called.  *See* FAC ¶ 91(i).

### iii.   The communications pertained to the subject of the representation.

The *ex parte* communication must have been "about the subject of the representation."  *Roe v. Karval School District RE23*, Civil Action No. 12-cv-00239-

WYD-KLM (D.Colo. April 12, 2013) (unpublished) (citing Colo. RPC 4.2 (2012)).  There is no question that the communications at issue in this matter pertained to the subject matter of the representation.  It is clear from the FAC that Plaintiffs contacted defendants for the purpose of obtaining information about the au pair stipend.  Indeed, Plaintiffs characterize the alleged statements as "admissions" concerning the alleged agreement to fix the stipend amount.  *See* FAC, ¶¶ 90-91.

3.  **THE CONTACTS WERE IN BAD FAITH**

Bad faith may be imputed where an offending attorney willfully ignored applicable law.  *See, Midwest Motor Sports*, 144 F. Supp. 2d at 1159-60; *Chambers v. Nalco, Inc.*, 501 U.S. 31, 44-45 (1991).  Here, the facts demonstrate that Plaintiffs' counsel made these contacts in willful disregard for the Rules of Professional Conduct.  He deceptively contacted, sought out and obtained *ex parte* information about a central issue in this litigation.  And he now seeks to use these Alleged Statements as admissions against interest of opposing parties.  The facts surrounding these contacts, viewed in conjunction with counsel's delayed service of the original complaint and his evasive responses to defendants' inquiries into these issues, demonstrate bad faith.

### CONCLUSION

Plaintiffs' Counsel violated Rules 8.4(a), 8.4(c), 4.2, and 4.3, of the Colorado Rules of Professional Conduct.  The Court should invoke its inherent power to strike the offending paragraphs in the FAC and to issue such other relief as the Court may find appropriate.  Counsel knew he had commenced litigation against the sponsor defendants and knew that his interests were adverse to the Directors he contacted; yet, he did

nothing to inform them of the nature of his inquiry and deliberately delayed serving the sponsor defendants in order to cloak his actions with legitimacy and turn a blind eye to the fact that each of these defendants were or soon would be represented by counsel. Counsel sought to trick represented parties into saying what he wanted them to say.  The Court should not condone such behavior, and the violation of numerous Rules of Professional Conduct warrant the use of this Court's discretion to remedy this wrong. Striking the Alleged Statements places the Defendants where they would have been, absent the improper communication.

**WHEREFORE**, Moving Defendants pray that this Court enter an Order striking paragraphs 90-94 of the FAC and issue such further orders or grant such further relief as may be necessary and appropriate in law and equity, and that the Court award attorney fees and costs attributable to this motion, the amount and reasonableness of which to be determined in future proceedings.

Respectfully submitted this 20th day of April, 2015.

**KELLY & WALKER LLC**

*s/William J. Kelly III*
William J. Kelly III
Chanda M. Feldkamp
1401 17th Street, Suite 925
Denver, CO 80202
Phone: 720-236-1800
Email: wkelly@kellywalkerlaw.com
   cfeldkamp@kellywalkerlaw.com

***Attorneys for Defendant USAuPair, Inc.***


*s/Brooke A. Colaizzi*
Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
SHERMAN & HOWARD, LLC
633 17th Street, Suite 3000
Denver, CO 80202
Phone: 303-297-2900
Email: bcolaizzi@shermanhoward.com
   rdeeny@shermanhoward.com
   hvickles@shermanhoward.com

***Attorneys for Defendant InterExchange, Inc.***


*s/Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin Estevao
GREENBERG TRAURIG, LLC
1200 17th Street, Suite 2400
Denver, CO 80202
Phone: 303-572-6500
Email: rhoadesm@gtlaw.com
   estevaom@gtlaw.com

***Attorneys for Defendant GreatAuPair, LLC***

s/James E. Hartley
James E. Hartley
Mher Hartoonian
Joseph Neguse
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: 303-295-8000
Email: jhartley@hollandhart.com
      mhartoonian@hollandhart.com
      jneguse@hollandhart.com

**Attorneys for Defendant Cultural Homestay International**

s/Daniel C. Perkins
Daniel C. Perkins
Lawrence L. Lee
FISHER & PHILLIPS LLC
1801 California Street, Suite 2700
Denver, CO 80202
Phone: 303-218-3650
Email: dperkins@laborlawyers.com
      llee@laborlawyers.com

**Attorneys for Defendants APF GlobalExchange, NFP and American Institute for Foreign Study d/b/a AuPair In America**

s/Kathryn A. Reilly
Kathryn A. Reilly
Torin G.E. Mushovic
WHEELER TRIGG O'DONNELL, LLP
370 17th Street, Suite 4500
Denver, CO 80202
Phone: 303-244-1800
Email: reilly@wtotrial.com
      mushovic@wtotrial.com

**Attorneys for Defendants Agent Au Pair and American Cultural Exchange, LLC d/b/a Go Aupair**

17

s/Brian A. Birenbach
Brian A. Birenbach
REITZ LAW FIRM, LLC
P.O. Box 5268
Dillon, CO 80435
Phone: 970-468-0210
Email: brian@reitzlawfirm.com

**Attorneys for Defendants American Cultural Exchange, LLC d/b/a Go Aupair and Au Pair International, Inc.**

s/Brian T. Moore
Brian T. Moore
JESTER GIBSON & MOORE, LLP
1999 Broadway, Suite 3225
Denver, CO 80202
Phone: 303-377-7888
Email: bmoore@jgllp.com

**Attorneys for Defendnat Au Pair International, Inc.**

s/John R. Mann
John R. Mann
Thomas B. Quinn
GORDON & REES, LLP-DENVER
555 17th Street, Suite 3400
Denver, CO 80202
Phone: 303-534-5160
Email: jmann@gordonrees.com
         tquinn@gordonrees.com

**Attorneys for Defendant AuPairCare, Inc.**

_s/Jeffrey P. Allen_____
Jeffrey P. Allen
Donald J. Gentile
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
Phone: 617-439-4990
Email: jallen@lawson-weitzen.com
        dgentile@lawson-weitzen.com

***Attorneys for Defendant Cultural
Care, Inc. d/b/a Cultural Au Pair***

_s/Walter V. Siebert_____
Walter Vernon Bernie Siebert
SHERMAN & HOWARD, LLC
633 17th Street, Suite 3000
Denver, CO 80202
Phone: 303-297-2900
Email: bsiebert@shermanhoward.com

***Attorneys for Defendant Cultural
Care, Inc. d/b/a Cultural Au Pair***

_s/Bogdan Enica_____
Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
111 2nd Avenue NE, Suite 213
St. Petersburg, FL 33701
Phone: 727-225-2649
Email: bogdane@hotmail.com

***Attorneys for Defenant Expert Group
International, Inc. d/b/a Expert AuPair***

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Alexander Neville Hood
TOWARDS JUSTICE-GOLDEN
alex@towardsjustice.org

Susan Penniman Klopman
H & K LAW, LLC
sklopman@hklawllc.com

Brian T. Moore
JESTER GIBSON & MOORE LLP
BMoore@jgllp.com

Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
W.V.Bernie Siebert
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
bsiebert@shermanhoward.com

Bogdan Enica
EXPERT AUPAIR
Bogdan@expertaupair.com

Martha Louise Fitzgerald
Kathryn Anne Barrett
BROWNSTEIN HYATT FARBER SCHRECK, LLP
mfitzgerald@bhfs.com
kbarrett@bhfs.com

Jeffrey Paul Allen
Donald J. Gentile
LAWSON & WEITZEN, LLP
jallen@lawson-weitzen.com

William James Kelly, III
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

Kathryn A. Reilly
Torin G.E. Mushovic
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
mushovic@wtotrial.com

Lawrence D. Stone
Christian D. Hammond
DUFFORD & BROWN, P.C.
lstone@duffordbrown.com'
chammond@duffordbrown.com

Meshach Y. Rhoades
Martin Estevao
GREENBERG TRAURIG, LLP
rhoadesm@gtlaw.com
estevaom@gtlaw.com

Lawrence L. Lee
Daniel C. Perkins
FISHER & PHILLIPS LLP
llee@laborlawyers.com
dperkins@laborlawyers.com

*s/William J. Kelly III*