IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN;
LUSAPHO HLATSHANENI;
BEAUDETTE DEEELEFS;
DAYANNA PAOLA CARDENAS CAICEDO;
ALEXANDRA IVETTE GONZÁLEZ;
and those similarly situated

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY d/b/a AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GOAUPAIR;
AGENT AU PAIR; INC.;
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC d/b/a PROAUPAIR; and
20/20 CARE EXCHANGE, INC. d/b/a THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

**JOINT MOTION BY CERTAIN SPONSOR DEFENDANTS
TO DISMISS THE FIRST AMENDED COMPLAINT AND
CERTIFICATION OF COMPLIANCE WITH CIVIL PRACTICE STANDARD 7.1D.**

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

I.      INTRODUCTION ................................................................................................. 2

II.     PLAINTIFFS' CLAIMS ........................................................................................ 4

III.    THE STATE DEPARTMENT'S AU PAIR PROGRAM .......................................... 4

IV.     ARGUMENT ....................................................................................................... 6

        A.    The Elements of Count I. ........................................................................... 6

        B.    Rule 12(b)(6) Standard. ............................................................................. 7

        C.    Matters Outside the Pleadings. ................................................................. 8

        D.    Plaintiffs Have Not Alleged Facts Sufficient to Establish that
              the Sponsor Defendants Agreed on the Amount of the
              Weekly Stipend. ........................................................................................ 9

V.      CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*,
No. 6:14-CV-310, 2015 WL 304048 (M.D. Fla. Jan. 21, 2015) ................................ 15

*AD/SAT v. Associated Press*,
181 F.3d 216 (2d Cir. 1999) ...................................................................................... 16

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ................................................................................. 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 7, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................ 3, 7, 8, 10, 13, 15, 17, 18

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
No. 14CV0751, 2015 WL 618665 (S.D. Cal. Jan. 6, 2015) ................................. 15, 16

*Cayman Exploration Corp. v. United Gas Pipeline Co.*,
873 F.2d 1357 (10th Cir. 1989) ............................................................... 8, 10, 13, 15

*Compliance Marketing, Inc. v. DrugTest, Inc.*,
No. 09-cv-01241-JLK, 2010 WL 1416823 (D. Colo. April 7, 2010) ............... 8, 10, 14

*Corr Wireless Communs., LLC v. AT&T, Inc.*,
893 F. Supp. 2d 789 (N.D. Miss. 2012) .................................................................... 16

*Folks v. State Farm Mutual Insurance Co.*,
299 Fed. Appx. 748 (10th Cir. Oct. 20, 2008) ........................................................... 9

*Gee v. Pacheco*,
627 F.3d 1178 (10th Cir. 2010) .................................................................................. 9

*Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.*,
998 F.2d 391 (7th Cir. 1993) .................................................................................... 16

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999) ..................................................................................... 17

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007) ......................................................................... 15

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
   No. 3:12-CV-3515, 2014 WL 5460450 (N.D. Tex. Oct. 27, 2014) ............................ 15

*In re Text Messaging Antitrust Litig.*,
   No. 14-2301, ___ F.3d ___, 2015 WL 1567837 (7th Cir. 2015) ........................ 15, 16

*In re Travel Agent Comm 'n Antitrust Litig.*,
   583 F.3d 896, 905 (6th Cir. 2009) .............................................................. 17

*Kissing Camels Surgery Center, LLC v. Centura Health Corp.*,
   No. 12-cv-3012-WJM-BNB, 2014 WL 4230713 (D. Colo. February 13,
   2014).............................................................................................. 8

*Maric v. St. Agnes Hosp. Corp.*,
   65 F.3d 310 (2d Cir. 1995) ...................................................................... 17

*Mayor & Council of Baltimore v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013) .................................................................... 13

*Monsanto Co. v. Spray Rite Serv. Corp.*,
   465 U.S. 752 (1984).......................................................................... 8, 13

*National Ass'n. of Investors Corp. v. Bivio, Inc.*,
   No. 11–cv–02435–WJM, 2012 WL 1695042 (D. Colo. May 15, 2012)...................... 7

*Native American Distribution v. Seneca-Cayuga Tobacco Co.*,
   546 F.3d 1288 (10th Cir. 2008) .................................................................. 8

*Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*,
   801 F. Supp. 2d 1163 (D.N.M. 2011) .......................................................... 16

*Quality Auto Body, Inc. v. Allstate Ins. Co.*,
   660 F.2d 1195 (7th Cir. 1981) .................................................................. 10

*Shero v. City of Grove, Okla.*,
   510 F.3d 1196 (10th Cir. 2007) .................................................................. 7

*Smith v. United States*,
   561 F.3d 1090 (10th Cir. 2009) .................................................................. 9

*Sweeney v. Marvin Windows, Inc.*,
   No. 10-cv-00457-WDM-KMT, 2010 WL 4256195 (D. Colo. October 20,
   2010)` .............................................................................................. 8

*Systemcare v. Wang Labs. Corp.*,
  117 F.3d 1137 (10th Cir. 1997) ................................................................ 7

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ............................................................... 8

*Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*,
  346 U.S. 537 (1954)................................................................................. 7

*TV Communications Network, Inc. v. Turner Network Television, Inc.*,
  964 F.2d 1022 (10th Cir. 1992) ........................................................... 7, 8

*Ulrich v. Moody's Corp.*,
  No. 13-CV-00008, 2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014) ........... 15

*Wilk v. Am. Med. Ass'n.*,
  895 F.2d 352 (7th Cir. 1990) ................................................................. 17

*Wolfe v. Aspenbio Pharma, Inc.*,
  No. 11-CV-00165-REB-KMT, 2012 WL 4040344 (D. Colo. Sept. 13,
  2012)....................................................................................................... 9

## STATUTES

15 U.S.C. §§ 1 .......................................................................... 4, 6, 7, 8, 9

22 U.S.C. § 2451 ........................................................................................ 4

## RULES AND REGULATIONS

22 C.F.R. §§ 62.1-62.17 ........................................................................ 4, 5

22 C.F.R. § 62.31 ....................................................................................... 5

22 C.F.R. § 62.31(a)............................................................................... 4, 5

22 C.F.R. § 62.31(e).................................................................................... 5

22 C.F.R. § 62.31(j)................................................................................. 5, 6

22 C.F.R. § 62.31(o).................................................................................... 5

29 C.F.R. § 552.100 .................................................................................... 6

59 Fed. Reg. 64296, 64298 (Dec. 14, 1994) ............................................. 6

60 Fed. Reg. 8547, 8550-51 (Feb. 15, 1995) .................................................................. 6

Fed.R.Civ.P. 12(b)(6) ............................................................................................... 1, 7

### OTHER AUTHORITIES

Department of State "Fact Sheet: Au Pair Stipend" (March 14, 1997) ........................... 5

IRS publication "Au Pairs" (May 28, 2014) .................................................................... 6

State Department, "Notice, Federal Minimum Wage Increase" (June 14, 2007) ............................................................................................................ 6

State Department, Office of Exchange Coordination and Designation, "Weekly Wage Due to Au Pair Program Participants" ............................................... 6

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Cultural Homestay International, UsAuPair, Inc., GreatAuPair, LLC, Expert Group International, Inc., EurAupair Intercultural Child Care Programs, AuPair Care, Inc., Au Pair International, Inc., APF Global Exchange, NFP, Agent Au Pair (collectively, the "Moving Defendants"), respectfully move to dismiss the antitrust claim asserted in count I of the first amended complaint (ECF No.101).  Count 1 is the only count asserted against the Moving Defendants.

The present motion is the defendants' primary motion to dismiss the antitrust claim.  Moving Defendants understand that separate motions to dismiss addressing additional claims against them have been or will be filed by defendants InterExchange, Inc. (ECF No. 130), Cultural Care, Inc. (ECF No. 127), American Institute for Foreign Study, American Cultural Exchange, LLC (ECF. No. 131), A.P. Ex. American Professional Exchange, LLC (ECF No. 133), and 20/20 Care Exchange, Inc. (ECF No. 132).

## CERTIFICATION OF COMPLIANCE WITH CIVIL PRACTICE STANDARD 7.1D.

Pursuant to this Court's Civil Practice Standard 7.1D(a), on behalf of the Moving Defendants, counsel for defendant Cultural Homestay International, James E. Hartley, contacted plaintiffs' attorney to determine whether the pleading deficiency set forth below could be corrected by a further amendment to the first amended complaint.  After an email exchange with plaintiffs' counsel, and based upon the nature of the defects in plaintiffs' pleading, counsel for the Moving Defendants do not believe the deficiency can be corrected by amendment.

1

## I.    INTRODUCTION

Defendants are organizations that the U.S. State Department has designated as "sponsors" that are authorized to conduct "au pair" exchange visitor programs (collectively, the "sponsors" or "sponsor defendants").[1]  Count I is a purported national class action in which plaintiffs allege that the sponsors have conspired to fix the amount of the weekly stipend paid by host families to au pair participants in the State Department's Exchange Visitor Program.

The weekly au pair stipend is directly connected to the federal minimum wage as established by Congress and administered by the Department of Labor.  After applying the 40% credit for room and board as determined by the Labor Department, effective July 24, 2009, the State Department set the weekly au pair stipend at $195.75.

The primary factual basis asserted for the alleged conspiracy is that the sponsor defendants have engaged in parallel conduct by instructing their host families to pay "standard" au pairs the weekly stipend set by the State Department in the amount of $195.75, "and no greater."  *See, e.g.*, Am. Compl. ¶¶ 5, 78.

These allegations are insufficient to state a conspiracy claim for several reasons. Initially, the first amended complaint itself refutes the contention that defendants engaged in parallel conduct.  In fact, the amended complaint demonstrates that defendants' treatment of the weekly stipend is not uniform:  many defendants advertise a weekly stipend that is higher than the level set by the State Department, other

---

[1] Two individuals, Pamela H. Noonan and Thomas J. Noonan originally were named as defendants, but the claims against them have been dismissed.  (ECF No. 125).

sponsors make it clear that host families are free to pay more than the designated amount, and two of the named plaintiffs admittedly received weekly stipends in excess of $195.75.  The variation in weekly stipends is not surprising, particularly given that the amount ultimately paid is a matter between the au pairs and host families, which the Department of Labor has determined to be the "employer" of the au pairs.

Moreover, the fact that multiple defendants may instruct host families to pay the $195.75 weekly stipend established by the Department of State is entirely consistent with unilateral action.  Indeed, the sponsor defendants would run afoul of federal regulations if they did **not** communicate to host families the State Department requirement that au pairs must pay a weekly stipend of $195.75.

In any event, allegations of parallel conduct are not sufficient to state a conspiracy claim, particularly where there is a plausible reason for the parallel conduct to be the product of unilateral decision-making.  As a result, this case raises the precise concern identified by the Supreme Court in *Twombly*:  Before a party is exposed to extensive discovery and the potentially ruinous cost of defending an antitrust case, the amended complaint must allege sufficient facts to state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Where, as here, the allegations of parallel action are not sufficient to allege a plausible conspiracy, the complaint must be dismissed.  As the Supreme Court has stated, "an allegation of parallel conduct and a bare assertion of conspiracy **will not suffice**." *Id*. at 556 (emphasis added).

3

## II.   PLAINTIFFS' CLAIMS

In the first amended complaint, the plaintiffs assert a variety of claims relating to the weekly stipend provided to au pairs participating in the State Department's Exchange Visitor Program.  Am. Compl. ¶¶ 322-427.  The sponsor defendants are all of the firms designated by the Department of State to participate in placing persons under the au pair program.  *Id.* ¶¶ 45, 46.

Count I is the only claim asserted against the Moving Defendants.  In count I, plaintiffs claim that the sponsor defendants have "agreed to fix the weekly stipend paid by host families to au pairs at the level set by the State Department," in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Am. Compl. ¶¶ 466-74.  Plaintiffs purport to bring their antitrust claim on behalf "all persons sponsored by any sponsor defendant to work as a standard au pair in the United States pursuant to a J-1 visa."  *Id.* ¶ 430.

## III.   THE STATE DEPARTMENT'S AU PAIR PROGRAM

The au pair program has its origins in the Mutual Educational and Cultural Exchange Act of 1961, 22 U.S.C. § 2451, *et seq.*  The purpose of the Act is "to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchange . . . ."  22 U.S.C. § 2451; *see also* 22 C.F.R. § 62.31(a); Am. Compl. ¶ 43.  Part of the State Department Exchange Visitor Program, the au pair program "provides foreign nationals the opportunity to live with an American host family and participate directly in the home life of the host family." *Id.*  The program enables au pairs to participate in educational and cultural programs in the United States and return home to share their experiences.  22 C.F.R. § 62.1(a).

The au pair program is heavily regulated, with State Department regulations governing everything from sponsor eligibility, au pair selection, placement, training and compensation, to host family selection and orientation, and sponsor responsibility for monitoring and reporting.[2]  *Id.* at § 62.31(a)-(l).  Typically, au pairs stay with host families for a period of one year, which may be extended for a second year.  *Id.* at § 62.31(o).

An au pair receives room and board and is paid a weekly stipend by the host family.  Sponsors must require host families to compensate their au pairs "at a weekly rate based upon 45 hours of child care services per week."  *Id.* at § 62.31(j); Am. Compl. ¶ 82.  The Department of Labor has determined there is an employer/employee relationship between the host families (not the sponsors) and the au pairs, and thus the stipend paid to an au pair must conform to the "requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor."  22 C.F.R. § 62.31(j)(1).  Host families are required to execute written agreements with their au pairs governing their employment relationship.  *Id.* at § 62.31(e)(5).

The Department of Labor "determines the credit (room and board) to be applied against the weekly stipend."[3]  As mandated by the Labor Department, the weekly stipend calculated by the State Department reflects a 40% credit against the minimum

[2] 22 C.F.R. §§ 62.1-62.17 contain provisions applicable to the Exchange Visitor Program generally, including definitions, sponsor eligibility, categories of participants, application procedures, general program requirements, and so forth.  22 C.F.R. § 62.31 applies specifically to the au pair program.

[3] Department of State "Fact Sheet: Au Pair Stipend" (March 14, 1997) (Ex. A).

wage for room and board provided by the host family.[4]  Each time the federal minimum

wage has been increased, the Department of State has updated its calculation and

notified sponsors of the new weekly stipend.  Notice, Federal Minimum Wage Increase

(Ex. C).; *see also* IRS publication "Au Pairs" (May 28, 2014) (Ex. E).  As of July 24,

2009, the designated weekly stipend in the federal au pair program was $195.75.  *Id.*;

Am. Compl. ¶ 83.

## IV.    ARGUMENT

### A.    The Elements of Count I.

The elements of a claim for relief for a violation of Section 1 of the Sherman Act

are that the defendants (1) entered into a plausible "contract, combination or a

---

[4] In the first amended complaint, plaintiffs mistakenly assert that it is improper for host families to receive a credit against the federal minimum wage for lodging.  Am. Compl. ¶ 63.  Plaintiffs' assertion is contrary to regulations adopted by both the Department of Labor and the State Department.

Early on, the au pair program was administered by the United States Information Agency ("USIA").  The USIA concluded that an "au pair living with a host family presents an analogous relationship to that contemplated at 29 C.F.R. 552.100," which is the Department of Labor regulation addressing the application of the Fair Labor Standards Act to domestic service.  59 Fed. Reg. 64296, 64298 (Dec. 14, 1994); *see* also 60 Fed. Reg. 8547, 8550-51 (Feb. 15, 1995).

The Department of Labor regulation provides a formula for determining the credit to be given to host families for the room and board provided to an au pair.  29 C.F.R. § 552.100 (Ex. B).  While stated in different terms, the formula permits a 40% credit for room and board combined.  The State Department has used the 40% credit in calculating the weekly stipend required to meet the federal minimum wage.  *See* State Department, "Notice, Federal Minimum Wage Increase" (June 14, 2007) (Ex. C); State Department, "Weekly Wage Due to Au Pair Program Participants" (Ex. D).

Accordingly, plaintiffs' claim that au pairs are paid "just $4.35 per hour"—which is repeated countless times in the amended complaint—simply is wrong.  *See, e.g.*, Am. Compl. ¶ 5.  When the 40% room and board credit is considered, au pairs receiving the weekly stipend designated by the State Department are paid $7.25 per hour as required by the federal minimum wage.  Notice, Federal Minimum Wage Increase (Ex. C).

conspiracy;" (2) that "unreasonably restrains trade" in a relevant market.  *Systemcare v. Wang Labs. Corp.*, 117 F.3d 1137, 1139 (10th Cir. 1997); *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992).  The Moving Defendants assert that the amended complaint fails to allege a plausible conspiracy as required by the first element.

**B.    Rule 12(b)(6) Standard.**

To survive a Rule 12(b)(6) motion, "[t]he amended complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *National Ass'n. of Investors Corp. v. Bivio, Inc.*, No. 11–cv–02435–WJM, 2012 WL 1695042, at *1 (D. Colo. May 15, 2012) (quoting *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007)); *see also Twombly*, 550 U.S. at 555.  Allegations that are no more than conclusions are not entitled to the assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Supreme Court and Tenth Circuit have both made it clear that an amended complaint ***must be dismissed*** if the conspiracy allegations are legally insufficient. "Because § 1 of the Sherman Act 'does not prohibit all unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or a conspiracy, . . . [t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit, or express.'"  *Twombly*, 550 U.S. at 553 (quoting *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 540 (1954)) (internal citations omitted).

7

Case 1:14-cv-03074-CMA-KMT   Document 135   Filed 04/20/15   USDC Colorado   Page 14 of 28

Accordingly, stating a Section 1 conspiracy claim requires a "complaint with enough factual matter (taken as true) to suggest that an agreement was made . . . [and] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.  Here, the amended complaint must allege plausible facts supporting the conclusion that the conspiring parties "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray Rite Serv. Corp.*, 465 U.S. 752, 768 (1984).  The amended complaint must be dismissed if it does not allege facts sufficient "to exclude the possibility that the [defendants] were acting independently." *Id.* at 764; *see also Twombly*, 550 U.S. at 557.  Numerous courts in the Tenth Circuit have dismissed Section 1 claims for failure plausibly to allege the existence of a conspiracy.[5]

### C.    Matters Outside the Pleadings.

In this motion, the Moving Defendants rely on several notices or other publications issued by the Department of Labor, State Department and IRS, including the "Fact Sheet:  Au Pair Stipend" (Ex. A), "Notice, Federal Minimum Wage Increase" (Ex. C), "Weekly Wage Due to Au Pair Program Participants" (Ex. D), and IRS publication "Au Pairs," which are cited *supra* at notes 3 and 4 and page 6, respectively.

---

[5] *See, e.g., TV Communications Network*, 964 F.2d at 1026-27; *Cayman Exploration Corp. v. United Gas Pipeline Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989); *Native American Distribution v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1297-98 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006); *Kissing Camels Surgery Center, LLC v. Centura Health Corp.,* No. 12-cv-3012-WJM-BNB, 2014 WL 4230713 (D. Colo. February 13, 2014); *Compliance Marketing, Inc. v. DrugTest, Inc.*, No. 09-cv-01241-JLK, 2010 WL 1416823, at *12-13 (D. Colo. April 7, 2010); *Sweeney v. Marvin Windows, Inc.,* No. 10-cv-00457-WDM-KMT, 2010 WL 4256195, at *5 (D. Colo. October 20, 2010).

These materials establish that the $195.75 weekly stipend is the product of government regulation and properly may be considered by the Court in connection with this motion. *Wolfe v. Aspenbio Pharma, Inc.*, No. 11-CV-00165-REB-KMT, 2012 WL 4040344, *2 (D. Colo. Sept. 13, 2012); *see also Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010); *Folks v. State Farm Mutual Insurance Co.*, 299 Fed. Appx. 748, 756 n.12 (10th Cir. Oct. 20, 2008); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

> **D.    Plaintiffs Have Not Alleged Facts Sufficient to Establish that the Sponsor Defendants Agreed on the Amount of the Weekly Stipend.**

The conspiracy allegations in the amended complaint are remarkably vague. Plaintiffs allege that:  (1) the sponsors agreed that each would place au pairs with host families at a wage pegged to the programmatic wage floor, and no greater (Am. Compl. ¶¶ 5, 77-78); (2) that defendants "pegged" the weekly stipend for au pairs at $195.75, as reflected in several telephone calls by an unidentified person, to an unidentified representative of three undisclosed defendants (*id.* at ¶¶ 91(ii), 91-94);  and (3) that defendants had the "means, opportunity and motive" to conspire.  *Id.* at ¶121.

As shown below, plaintiffs do not allege conduct that is truly parallel, much less conduct that is inconsistent with unilateral action.  As plaintiffs have failed to plead a plausible conspiracy, the allegations in the amended complaint are legally insufficient to state a conspiracy claim.

> **(1)    The alleged "parallel" conduct is insufficient to state a conspiracy claim.**

Where an amended complaint only contains allegations of parallel conduct, "in order to make a § 1 claim, [the allegations] must be placed in a context that raises a

suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557; *Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1200 (7th Cir. 1981). In other words, the amended complaint must contain "allegations plausibly suggesting (not merely consistent with) agreement . . . ." *Twombly*, 550 U.S. at 557. As the Tenth Circuit has ruled, a "***conspiracy allegation will fail*** if there is an independent business justification which explains the alleged conspirators' conduct." *Cayman Exploration Corp. v. United Gas Pipeline Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (emphasis added). After all, "there is no reason to infer that [defendants] had agreed among themselves to do what was only natural anyway." *Twombly*, 550 U.S. at 566.

Thus, an allegation of parallel conduct is not legally sufficient if the parallel conduct is just as consistent with lawful conduct as it would be a conspiracy. *Cayman*, 873 F.2d at 1361; *see also Twombly*, 550 U.S. at 554. A plaintiff relying on allegations of parallel conduct must plead facts that "would support an inference that the alleged actions by [defendants] would be contrary to their economic interests absent an agreement." *Cayman*, 873 F.2d at 1361. Mere allegations of parallel conduct consistent with a defendant's economic interest are insufficient to state a claim for a conspiracy. *Compliance Marketing*, 2010 WL 1416823, at *13.

Here, relying primarily on statements on the sponsors' websites, the plaintiffs in their amended complaint assert that the defendants act in parallel by advertising that the weekly stipend paid by host families to a "standard" au pair is precisely $195.75, as set by the State Department. Am. Compl. ¶¶ 96-114. Additionally, plaintiffs allege that

the sponsor defendants "ratchet[ed] up" the weekly stipend every time the federal minimum wage was increased.  *Id.* at ¶ 115.  For several reasons, these allegations of parallel conduct are not legally sufficient to state a conspiracy claim.

<u>First</u>, the alleged "parallel conduct" is hardly parallel.  The allegations of the amended complaint indicate that the sponsor defendants advertise, and a significant number of their host families pay, a weekly stipend in an amount greater than $195.75. For example, six of the sponsors advertise differing weekly stipends based on the experience of the individual au pair.[6]  Am. Compl. ¶ 78; *see also id.* at ¶¶ 274, 314 (referring to "tiered" payments to au pairs).

Additionally, plaintiffs acknowledge that sponsors have told their host families that the weekly stipend designated by the State Department is "the minimum required,"[7] and that host families are free to pay more than the designated amount.  Am. Compl. ¶¶ 170, 179, 261, 262.  It also is common for host families to pay $200 per week, not just the designated amount of $195.75.  *Id.* at ¶ 374.  In fact, plaintiffs Hlatshaneni and Gonzalez received weekly stipends of $200 per week.  *Id.* at ¶¶ 369, 418.

---

[6] *See* Joinder in and Supplement to Joint Motion to Dismiss at 3-4 (Doc. 84) (describing weekly stipends at rates other than $195.75).

[7] While paragraph 170 of the amended complaint cites the Expert Au Pair website for this statement, plaintiffs neglect to quote the next sentence, which states "You can pay more to your au pairs, according to the terms of your contract with them."  *Id.* at 4 and Ex. B (ECF No. 84-2 at 2); *see also* Am. Compl. ¶ 102 (ignoring quoted language).

While the plaintiffs brush over these inconvenient facts by defining them away,[8] the fact remains that these varied rates refute plaintiffs' basic contention that the sponsor defendants instruct their host families to pay a weekly stipend of $195.75 and not a penny more.  The allegations in the amended complaint make clear that the instructions given by the sponsor defendants to their host families were not as uniform or parallel as the allegations in the amended complaint's conclusory allegations suggest.

Second, the fact that many of the sponsor defendants might instruct their host families to pay a weekly stipend of $195.75 is totally consistent with unilateral action. Each of the sponsors has a compelling interest in telling host families that they must pay the weekly stipend determined by the Department of Labor and the State Department. Fairly interpreted, the sponsor websites correctly state that a weekly stipend of $195.75 is required by State Department regulations, and the sponsors simply are notifying the host families of this fact.  Nowhere does any website instruct host families that they could **only** pay a weekly stipend in the amount of $195.75.

Thus, it certainly is plausible that the Moving Defendants independently would conclude that they should inform host families that the cost of hosting an au pair includes a weekly stipend of $195.75, and that some of the sponsors individually would elect to promote higher stipends for more experienced au pairs.  If the host family on its own determined to pay more, that was between the host family and the au pair.

---

[8] In the first amended complaint, plaintiffs gloss over the differing payment levels by defining a "standard" au pair—in circular fashion—as an au pair position offered at a uniform rate.  Am. Compl. ¶ 78.

Accordingly, it makes perfect sense that the Moving Defendants independently would inform their host families that costs include the weekly stipend of $195.75, and that doing so does not support an inference that the defendants acted according to an agreement. *Mayor & Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 138 (2d Cir. 2013) (alleged conduct did not support an inference of a conspiracy because it made "perfect business sense" for the defendants acting unilaterally).

The allegation that the sponsor defendants each increased (or "ratchet[ed] up") the weekly stipend in response to increases in the federal minimum wage also is consistent with unilateral action.  Am. Compl. ¶ 115.  As alleged in the amended complaint, all the sponsors did was respond to increases in the federal minimum wage, just as they were ***directed*** to do by the State Department.  *Id.; see also* Notice, Federal Minimum Wage Increase (Ex. C).  Allegations of action that the defendants naturally would undertake independently—or as in this case, actions that the defendants were ***required*** to take—do not warrant the inference of a conspiracy.  *Twombly*, 550 U.S. at 566 (after all, "there is no reason to infer that [defendants] had agreed among themselves to do what was only natural anyway").

The Tenth Circuit has stated emphatically that a "conspiracy allegation will fail if there is an independent business justification which explains the alleged conspirators' conduct." *Cayman*, 873 F.2d at 1361.  Therefore, the amended complaint must be dismissed because it does not allege facts sufficient "to exclude the possibility that the [defendants] were acting independently." *Monsanto*, 465 U.S. at 764; *see also Twombly*, 550 U.S. at 557.  The Court's task is even easier where, as here, the

plaintiffs' own allegations demonstrate the independent business justification for the conduct.  *See Compliance Marketing*, 2010 WL 1416823, *12-13.

### (2)    The so-called admissions should be disregarded.

Next, the plaintiffs assert that "[s]everal sponsors have admitted to an agreement among all of the sponsors to keep standard au pair wages at exactly $195.75 per week."  Am. Compl. ¶ 90.  For several reasons, the so-called "admissions" also are legally insufficient to state a conspiracy claim.

First, it appears that the alleged statements by representatives of one or more sponsor defendants were obtained by plaintiffs' counsel in violation of his ethical duties and, therefore, they should be disregarded.  *See* Joint Motion to Strike Certain Allegations (ECF No. 134).

Second, the statements are impermissibly vague:  they purport to reflect statements to an *unidentified* witness, by an *unidentified* representative of an *undisclosed* sponsor.[9]  While plaintiffs claim that these statements constitute admissions that the sponsors have "conspired to reach an agreement on standard *au pair* wages" (Am. Compl. ¶ 91(i)), the statements do not allege a "specific time, place or person involved in the alleged conspirac[y]," or whether the speaker had knowledge of any alleged conspiracy or any authority to speak for the sponsor in question.[10]

---

[9] Plaintiffs' counsel has been remarkably coy about who was involved in these alleged conversations and has refused to provide any details.  Based on the limited information he has provided regarding the actual statements that were made, his reticence is understandable.

[10] Courts routinely dismiss antitrust complaints that allege a conspiracy at some unidentified time and place, but that fail to identify the specific alleged conspirators, the extent to which each participated in the alleged conspiracy, and when or how they

*Twombly*, 550 U.S. at 565 n.10.  And, there is no allegation that the persons making the alleged statements ever communicated on any subject with any representative of any other sponsor.  *See, e.g., In re Text Messaging Antitrust Litig.*, No. 14-2301, ___ F.3d ___, 2015 WL 1567837, *5-6 (7th Cir. April 9, 2015).

Third, the specific quotes attributed to representatives of undisclosed defendants are generally consistent with the facts that (a) the State Department has designated the amount of the weekly stipend, and (b) information concerning the host family financial obligation for each sponsor is generally known.  For example, the statement in paragraph 92 that "we all pay that amount" (or words to that effect) is easily explained by the simple fact that information regarding the policies of each sponsor is readily available.  Am. Compl. ¶¶ 95-110 (the sponsor websites listed the weekly stipend that their host families would pay).

Because the alleged admissions are vague and conclusory, they are legally insufficient to state a conspiracy claim.  *Bona Fide Conglomerate, Inc. v. SourceAmerica,* No. 14CV0751, 2015 WL 618665, *11-12 (S.D. Cal. Jan. 6, 2015) (rejecting alleged admission); *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-CV-310, 2015 WL 304048, *10 , (M.D. Fla. Jan. 21, 2015) (alleged admissions failed to establish plausibility of conspiracy allegations); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, No. 3:12-CV-3515, 2014 WL 5460450, *6 (N.D. Tex. Oct. 27, 2014) (rejecting evidence from so-called "trusted sources"); *Ulrich v. Moody's Corp.*,

---

reached the alleged agreement.  *Cayman*, 873 F.2d at 1361; *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).

No. 13-CV-00008, 2014 WL 4977562, *17 (S.D.N.Y. Sept. 30, 2014) (rejecting alleged

admission); *Corr Wireless Communs., LLC v. AT&T, Inc.*, 893 F. Supp. 2d 789, 805

(N.D. Miss. 2012) (rejecting evidence in alleged statements by defendants' employees).

Moreover, where a complaint is brought against multiple defendants, it must

contain factual allegations directed at each of them sufficient to support a claim for

relief. *See, e.g., Conglomerate,* 2015 WL 618665, *11 ("Further, upon close review,

Plaintiff's allegations regarding each individual Defendant, while augmented from the

original Complaint, do not sufficiently show any agreement with any other Defendant.");

*Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution").  Plaintiffs

failure to identify the person making the alleged statements means that they are not

sufficient to show that any specific sponsor participated in the claimed conspiracy.

> **(3)**    **The alleged "means, opportunity and motive," as well as the structure of the au pair "industry," all are legally insufficient to state a conspiracy claim.**

Plaintiffs also assert that the sponsors had the opportunity to conspire because

some (but not all) of them belonged to trade associations.  Am. Compl. ¶¶ 125-30.  Yet,

the law is clear that neither membership in a trade association, nor participation in trade

association activities alone, gives rise to an inference of a conspiracy.  *See Plant Oil*

*Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.,* 801 F. Supp. 2d 1163, 1197

(D.N.M. 2011) (citing cases); *In re Text Messaging Antitrust Litig.*, 2015 WL 1567837,

*10; *AD/SAT v. Associated Press*, 181 F.3d 216, 233-34 (2d Cir. 1999); *Greater*

*Rockford Energy and Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 396 (7th Cir. 1993);

*Wilk v. Am. Med. Ass'n.*, 895 F.2d 352, 374 (7th Cir. 1990).

At most, plaintiffs' allegations show a mere opportunity to conspire.  Allegations

of an opportunity to conspire do not support a plausible claim of conspiracy, even when

coupled with allegations of parallel conduct.  *See, e.g., Am. Dental Ass'n v. Cigna*

*Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) ("participation in trade organizations

provides no indication of conspiracy"); *In re Travel Agent Comm'n Antitrust Litig.*, 583

F.3d 896, 905 (6th Cir. 2009); *Maric v. St. Agnes Hosp. Corp.*, 65 F.3d 310, 313 (2d Cir.

1995).

The plaintiffs next allege that the sponsor defendants had a motive to conspire

because they could "increase Sponsor[] profits" or "expand[] the number of host

families."  Am. Compl. ¶ 132.  Yet, it is perfectly natural for a company to act unilaterally

to "increase profits," and surely it is consistent with unilateral action to attempt to

expand the number of host families and increase the demand for au pairs.  *See, e.g., In*

*re Baby Food Antitrust Litig.*, 166 F.3d 112, 134-35 (3d Cir. 1999).

Finally, plaintiffs allege that the structure of the *au pair* "industry" facilitates

collusion.  Am. Compl. ¶¶ 134-37.  But, parallel conduct—even in a concentrated

industry—is not unlawful.  *Twombly*, 550 U.S. at 553-54.

## V.   CONCLUSION

The Supreme Court could have decided the *Twombly* case with the present

lawsuit in mind.  Count I of the first amended complaint alleges a violation of the

antitrust law and seeks relief for a class composed of an estimated 50,000 current and former au pairs sponsored by any of the defendants.  Am. Compl. ¶ 443.

As the Court observed in *Twombly*, defending an antitrust class action can be enormously expensive.  550 U.S. at 558-59.  Where there is no reasonable basis for inferring the existence of a conspiracy, the Moving Defendants should not be exposed to the potentially ruinous cost of defending this case.  The undersigned defendants respectfully request that the Court dismiss count I of the amended complaint.  In light of plaintiffs' prior amendment of the complaint, the dismissal should be with prejudice.

Dated April 20, 2015.

Respectfully submitted,

*s/James E. Hartley*
James E. Hartley
Mher Hartoonian
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone:  303-295-8000
jhartley@hollandhart.com
mhartoonian@hollandhart.com

ATTORNEYS FOR DEFENDANT
CULTURAL HOMESTAY INTERNATIONAL

s/William J. Kelly, III
William James Kelly, III
Chanda Marie Feldkamp
KELLY & WALKER, LLC
1401 17th Street, Suite 925
DENVER, CO 80202
Phone:  720-236-1800
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

ATTORNEYS FOR DEFENDANT
USAUPAIR, INC.

s/Meshach Y. Rhoades
Meshach Y. Rhoades
Martin Estevao
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
Phone:  303-572-6500
rhoadesm@gtlaw.com
estevaom@gtlaw.com

ATTORNEYS FOR DEFENDANT
GREATAUPAIR, LLC

s/Bogdan Enica
Bogdan Enica, Attorney at Law
111 2nd Avenue NE, Suite 213
St Petersburg, FL 33701-3440
Phone:  727-225-2649
bogdane@hotmail.com

ATTORNEY FOR DEFENDANT
EXPERT GROUP INTERNATIONAL INC., D/B/A
EXPERT AUPAIR

19

*s/Martha L. Fitzgerald*
Martha Louise Fitzgerald
Kathryn Anne Barrett
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Phone:  303-223-1126
mfitzgerald@bhfs.com
kbarrett@bhfs.com

**ATTORNEYS FOR DEFENDANT
EURAUPAIR INTERCULTURAL CHILD CARE
PROGRAMS**


*s/John R. Mann*
John Roger Mann
Thomas Baker Quinn
Gordon & Rees, LLP-Denver
555 17th Street, Suite 3400
Denver, CO 80202
Phone:  303-534-5160
jmann@gordonrees.com
tquinn@gordonrees.com

**ATTORNEYS FOR DEFENDANT
AUPAIRCARE, INC.**


*s/Brian Thomas Moore*
Brian Thomas Moore
Jester Gibson & Moore, LLP
1999 Broadway, #3225
Denver, CO 80202
303-377-7888
bmoore@jgllp.com

**ATTORNEYS FOR DEFENDANT
AU PAIR INTERNATIONAL, INC.**

20

s/Lawrence L. Lee
Lawrence L. Lee
Daniel C. Perkins
FISHER & PHILLIPS LLP
1801 California Street, Suite 2700
Denver, CO 80202
Phone:  303-218-3650
llee@laborlawyers.com
dperkins@laborlawyers.com

**ATTORNEYS FOR DEFENDANTS
APF GLOBALEXCHANGE, NFP
D/B/A AUPAIR FOUNDATION**


s/Kathryn A. Reilly
Kathryn A. Reilly
Toren G. E. Mushovic
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO 80202
Phone:  303-244-1800
reilly@wtotrial.com
mushovic@wtotrial.com

**ATTORNEYS FOR DEFENDANT
AGENT AU PAIR**

21

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Alexander Neville Hood
TOWARDS JUSTICE-GOLDEN
alex@towardsjustice.org

Susan Penniman Klopman
H & K LAW, LLC
sklopman@hklawllc.com

Brian T. Moore
JESTER GIBSON & MOORE LLP
BMoore@jgllp.com

Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
W.V.Bernie Siebert
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
bsiebert@shermanhoward.com

Bogdan Enica
EXPERT AUPAIR
Bogdan@expertaupair.com

Martha Louise Fitzgerald
Kathryn Anne Barrett
BROWNSTEIN HYATT FARBER SCHRECK, LLP
mfitzgerald@bhfs.com
kbarrett@bhfs.com

Jeffrey Paul Allen
Donald J. Gentile
LAWSON & WEITZEN, LLP
jallen@lawson-weitzen.com

William James Kelly, III
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

Kathryn A. Reilly
Toren G. E. Mushovic
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com

Lawrence D. Stone
Christian D. Hammond
DUFFORD & BROWN, P.C.
lstone@duffordbrown.com
chammond@duffordbrown.com

Meshach Y. Rhoades
Martin Estevao
GREENBERG TRAURIG, LLP
rhoadesm@gtlaw.com
estevaom@gtlaw.com

Lawrence L. Lee
Daniel C. Perkins
FISHER & PHILLIPS LLP
llee@laborlawyers.com
dperkins@laborlawyers.com

s/James E. Hartley
James E. Hartley
HOLLAND & HART LLP

7699748_14