## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN;
LSUAPHO HLATSHANENI;
BEAUDETTE DEETLEEFS;
DAYANNA PAOLA CARDENAS CAICEDO;
ALEXANDRA IVETTE GONZALEZ;
and those similarly situated

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AUPAIR;
AUPAIRCARE INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

**DEFENDANT AMERICAN INSTITUTE FOR FOREIGN STUDY'S MOTION TO DISMISS AMENDED COMPLAINT**

---

Defendant American Institute for Foreign Study dba Au Pair in America ("AIFS" or "the company"), by and through its attorneys, Fisher & Phillips, LLP, hereby moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all counts of the First Amended

Complaint ("FAC") (Doc. #92). Plaintiffs have not and cannot state a claim in their First Amended Complaint upon which relief can be granted against AIFS.

## CERTIFICATION PURSUANT TO CIV. PRACTICE STANDARD 7.1D

On April 16, 2015, counsel for AIFS conversed with Plaintiffs' counsel, Alex Hood, provided a summary of the arguments herein, and requested Mr. Hood's response as to whether any of the deficiencies could be cured by amendment. Plaintiffs' counsel stated that he opposed this motion and did not intend to amend their FAC.

## INTRODUCTION

Plaintiffs' FAC fails to state claims against AIFS because it characterizes the company's au pair program in a manner that is wholly inconsistent with the laws and regulations that govern it.[1] The au pair program with AIFS was designed to provide foreign nationals the experience of living with an American family and to "participate directly in the home life of the host family." 22 C.F.R. §§ 62.4(h)(5), 62.31(a). It is not a work program, but a cultural exchange program designed around the federal government's specific foreign policy objective of "increasing mutual understanding between Americans and others through people-to-people contact." Exchange Visitor Program, 60 Fed. Reg. 8547 Summary (Feb. 15, 1995) (codified at 22 C.F.R. pt. 514).

Plaintiffs make four key contentions in their FAC. First, they allege that au pairs are employed (or co-employed) by their sponsor agencies and that four of the agency defendants, including AIFS, failed to pay them properly under the Fair Labor Standards Act and all related state and local wage laws (Counts VIII-X). Plaintiffs further argue that the sponsors conspired to pay au pairs at the minimum amount set by federal law, thus

---

[1] Defendant AIFS incorporates, by reference, the detailed recitation of the background and procedural facts set forth in the Motion to Dismiss Counts II-X of the First Amended Complaint By Defendant Interexchange, Inc., filed by Katie Barrett, Esq. of Brownstein Hyatt Farger Schreck, LLP contemporaneously with this motion.

2

creating a price-fixing "cartel" (Count I). Third, the Plaintiffs assert that AIFS breached its contracts with Plaintiff Hlatshaneni and those similarly situated by failing to pay state and federal minimum wage and overtime that was allegedly due. (Count VII). Finally, Plaintiffs set forth state and federal claims sounding in fraud, misrepresentation, and bad faith claiming that AIFS defrauded the Plaintiffs or misrepresented to them that they were being paid all monies owed to them (Counts II-VI). Plaintiffs' allegations fail to state a valid claim because they do not articulate allegations with sufficient factual specificity. By operation of law, the Court should dismiss all of Plaintiffs' claims against AIFS.

## I. STANDARD FOR MOTION TO DISMISS.

In reviewing a motion to dismiss alleging failure to state a claim, the Court must determine whether the complaint states a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Assuming the truth of Plaintiff's allegations, the Plaintiff's entitlement to the relief sought must be plausible, not merely possible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A formulaic recitation of the elements . . . will not do," and the Court is not bound to accept as true a legal conclusion couched as fact. *Twombly*, 550 U.S. at 555. Moreover, a complaint brought against multiple defendants must contain factual allegations directed at each of them sufficient to support a claim for relief. *See Iqbal*, 556 U.S. at 676.

## II. PLAINTIFFS' ANTI-TRUST CLAIM FAILS BECAUSE THE ALLEGATIONS AMOUNT TO NO MORE THAN MERE PARALLEL CONDUCT.

Count I against AIFS should be dismissed. Plaintiffs alleged no more than parallel conduct among the defendants, which may be explained by an economically plausible reason. Parallel conduct alone, however, is not sufficient and Plaintiffs' allegations in support of the alleged conspiracy fail to recite specific facts to establish a plausible

3

conspiracy.  *Twombly*, 550 U.S. at 557; *Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1200 (7th Cir. 1981).  Further, Plaintiffs' allegations set forth only motive and an opportunity to conspire, but fail to articulate any specific facts showing the existence of an actual conspiracy.  Motive or opportunity, even in the presence of parallel conduct, without some material allegation establishing the existence of the conspiracy is not sufficient to state a claim.  *See, e.g., In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009); *Marie v. St. Agnes Hosp. Corp.*, 65 F.3d 310, 313 (2d Cir. 1995); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) ("participation in trade organizations provides no indication of conspiracy").  Accordingly, Count I of Plaintiffs' FAC fails, and the Court should dismiss this claim against AIFS.[2]

### III. FEDERAL LAW PREEMPTS STATE LAW AS TO THE AU PAIR PROGRAM, AND THE STATE-LAW CLAIMS SHOULD BE DISMISSED.

#### A. The Au Pair Program is Encompassed by the Federal Power to Regulate Immigration Matters.

Federal law is "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any [t]hing in the Constitution or Laws of any State to the Contrary notwithstanding."  Const. Art. VI, cl. 2; *see also Arizona v. United States*, 132 S. Ct. 2492, 2498 (2012) (noting federal government's "broad, undoubted power" over immigration.).  "It is fundamental that foreign countries concerned about the status, safety, and security of their nationals in the United States must be able to confer and communicate on this subject with one national sovereign, not the 50 separate states."  *Id.*

In *Arizona*, the Supreme Court held that three of four challenged provisions of

---

[2] Contemporaneously with the filing of this motion, sponsor defendant, Cultural Homestay International, filed a motion to dismiss as to Count I.  See Motion to Dismiss filed by Jim Hartley, Esq. of Holland and Hart LLP.  AIFS joins in the arguments presented in that Motion to Dismiss and incorporates by reference those arguments and the authorities.

4

Senate Bill 1070 (S.B. 1070) were preempted, including Section 3, which made failure to comply with federal registration requirements a state misdemeanor. *Arizona*, 132 S. Ct. at 2502, 2503. The Court based its holding on the principle that the federal government has occupied the field of alien registration:

> If §3 of the Arizona statute were valid, every State could give itself independent authority to prosecute federal registration violations, 'diminish[ing] the [Government]'s control over enforcement' and 'detract[ing] from the "integrated scheme of regulation" created by Congress.

*Id.* (citing *Wisc. Dep't of Indus. v. Gould Inc.*, 475 U.S. 282, 288-89 (1986)).[3]

Similarly, in *Buckman Co. v. Plaintiffs' Legal Cmtee, 531 U.S. 341 (2001)*, the Supreme Court applied preemption to the relationship between a federal agency and a non-governmental third party subject to its regulations.). The Court ruled that the Medical Devices Amendments of 1976 preempted state-law fraud claims brought by injured plaintiffs against a non-governmental consultant that assisted a medical devices manufacturer in securing device approval[4] from the Food and Drug Administration (FDA). 531 U.S. at 347. In so doing, the Court recognized that the FDA had used its regulatory authority to "achieve a somewhat delicate balance of statutory objectives," and "complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants." *Id.* at 350. Allowing state-law tort claims for violation of the statutory and regulatory requirements would "exert an extraneous pull" on Congress' scheme. *Id.* at 353.

### B. State Law Conflicts with DOS's Au Pair Regulation.

---

[3] Sections 5(C) and 6 were preempted because they impeded the Government's execution of the objectives of Congress, and gave Arizona's officials "greater authority than federal officers, and prioritized the State's immigration policy in a field historically governed by the federal government. See *Arizona*, 132 S. Ct. at 2505, 2506-07.

[4] The Medical Devices Amendments give the FDA authority to approve such devices. 29 U.S.C. § 351, et seq.

Here, Plaintiffs' state-law claims are preempted by federal law because AFIS' au pair program, which is intimately regulated by DOS, falls within the federal government's immigration power. The program is historically a cultural exchange platform, not a work program. *See Bai Haiyan v. Hamden Pub. Sch.*, 875 F. Supp. 2d 109, 125 (D. Conn. 2012). Accordingly, AIFS does not operate within the *employment* laws of the various states, but within specific regulations created by DOS. AIFS is similar to the *Buckman* consultant as its connection to the federal government is "inherently federal," stemming entirely from the au pair regulations and the company's role as a program sponsor. The DOS regulations are broad, encompassing every aspect of the program, including the subject matter of Plaintiffs' claims. Plaintiffs have pleaded no facts or case law to support their claim that the purpose of the au pair program primarily is to provide labor for childcare. As clearly stated, the program is an immigration program based on cultural exchange. The U.S. government inhabits the "field" of cultural exchange, including the au pair program. Thus, the Plaintiffs' state-law claims are preempted.

Furthermore, applying state minimum wage and overtime laws to the au pair program would create an unacceptable conflict with federal law. As in *Arizona*, application of state laws here would convert a single unified program into 50 different programs, making it impossible for the government and the program sponsors to achieve the federal government's foreign relation objectives and provide a substantially uniform experience for program participants and host families. *See* Exchange Visitor Program Summary, 60 Fed. Reg. 8551 (Feb. 15, 1995) (codified at 22 C.F.R. pt. 514). For these reasons, the state-law claims against AIFS should be dismissed on preemption grounds.

### IV. COUNTS II, IV, V, AND VI ARE FRAUD CLAIMS, AND PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A PLAUSIBLE CLAIM OF FRAUD.

Counts II, IV, V, and VI in Plaintiffs' FAC are all fraud claims because they involve

allegations of misrepresentation by AIFS about au pair compensation. They allege that AIFS informed au pairs that they may not accept more than $195.75 per week and that doing so may lead to deportation (Doc. #101 at ¶¶ 199-200), and that AIFS directed host families to pay only $195.75, the "published fee." (*Id.* at ¶ 201.) Plaintiff's allegations are not supported with the specificity required to survive a dismissal motion under the principles of *Twombly*. Thus, Plaintiffs fail to state any fraud or misrepresentation claims upon which relief can be granted.

Plaintiffs contend that AIFS committed wire fraud and fraud in foreign labor contracting as the predicate acts for their RICO claim. (Doc. #101 at ¶ 478.) They further purport that AIFS breached a purported fiduciary duty to au pairs by deceiving them that the weekly stipend was an inflexible requirement. (*Id.* at ¶ 484.) Then, Plaintiffs allege negligent misrepresentation and constructive fraud/fraudulent concealment under state law. (*Id.* at ¶¶ 487, 490.), and allege violations of various states' consumer protection laws, based on the sponsors' purported "deception" and "false and misleading representations about the wage." (*Id.* at ¶ 493.) *The common theme of all of these claims is some element of "fraud" or "material misrepresentation." See U.S. v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003) (federal wire fraud requires proof of false or fraudulent pretenses, representations, or promises); Colo. CJI-Civil 26.1, 26.2 (breach of fiduciary duty involves breach of one's trust and acting primarily for the benefit or interests of another); *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (negligent misrepresentation requires the making of a false statement of material fact without reasonable care); *Kopeikin v. Merchants Mortg. And Trust Corp.*, 679 P2d 559, 601 (Colo. 1984) (fraudulent concealment is the suppression of a material fact that should be disclosed, with the intent that the concealment be relied upon); C.R.S. 6-1-105

(prohibiting "deceptive trade practices" as defined therein); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.2d 20, 26 (N.Y. 1995) (prohibited act must be "deceptive or misleading in a material way").

Plaintiffs make conclusory statements and do not allege any specific facts identifying the source of the statement that accepting more than the $195.75 stipend was either not permitted or could result in deportation. Plaintiffs do not allege any authority of that source to make such statements on AIFS's behalf. The only other allegations consist of similarly vague statements allegedly made by host families relaying hearsay statements. While explicit factual detail is not required by Fed.R.Civ. P. 8 under the *Iqbal/Twombly* standard, Plaintiffs must allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570. None of Plaintiffs' allegations in the FAC meet this standard.

Even if Plaintiffs' allegations were facially sufficient under *Iqbal* and *Twombly,* the "plausibility" is all but eliminated by irrefutable contradictory information in other sections of their FAC. On Pages 22 and 23, Plaintiffs admit that AIFS publishes au pair stipends in its website that allow for the payment of $250.00 per week to certain au pairs. (Doc. #101 at ¶ 98). This website is accessible to the public, including au pairs and host families. *See* http://www.aupairinamerica.com/options/ (last accessed April 16, 2015). It is not plausible that AIFS would verbally inform au pairs and host families that payment of $195.75 per week *is the required practice* for AIFS participants when the company's publicly accessible website clearly and unambiguously states otherwise. Plaintiffs' allegations are gratuitous and implausible with no modicum of specificity or detail in an effort to manufacture "facts" for the purpose of surviving a motion to dismiss. AIFS' published statements are consistent and compliant with the DOS regulations and

advisements implementing the DOS-calculated stipend in all of its iterations. Because Plaintiffs have not alleged facts that plausibly state a fraud or material misrepresentation, a key element of their claims, Counts II, IV, V, and VI must be dismissed.

## V. PLAINTIFFS' FIDUCIARY DUTY CLAIM AGAINST AIFS FAILS

In addition to preemption, Plaintiffs have not stated a viable fiduciary duty claim in Count III because no legal authority exists to support Plaintiff' Hlatshenani's assertion that AIFS owed her a fiduciary duty. (Doc. #101 at ¶¶ 482-84.) To articulate a breach of fiduciary duty, Plaintiff must plead facts plausibly establishing (1) AIFS acted in a fiduciary capacity toward her; (2) the agency breached its fiduciary duty; (3) Plaintiff suffered damages; and (4) AIFS's breach caused those damages. CJI-Civil 26.1. Plaintiffs fall significantly short in this case

A fiduciary relationship exists whenever one person is entrusted to act primarily for the benefit or in the interests of another and has the legal authority to do so. CJI-Civil 26:2. The existence of a fiduciary duty is a mixed question of law and fact. *Accident & Injury Med. Specialists, P.C. v. Mintz*, 279 P.3d 658, 662 (Colo. 2012). Here, the fiduciary relationship is absent because there is no authority that establishes the relationship between Plaintiffs and AIFS as a fiduciary relationship as a matter of law. The few courts that have analyzed the relationship between a visa applicant and visa sponsor have found that no fiduciary duty[5] exists. *See Shibeshi v. Alice Lloyd College*, No. 11-101-ART, 2011 WL 4970781, at *4 (E.D. Ky. Oct. 19, 2011) (citing cases).

In the absence of a *per se* fiduciary relationship, a fiduciary duty may arise from a confidential relationship, when one party occupies a superior position over another and

---

[5] In *DerKevorkian v. Lionbridge Tech., Inc.*, 316 Fed. Appx. 272 (10th Cir. Dec. 3, 2008) the Tenth Circuit found a fiduciary relationship between an employee seeking her green card and her employer. In that case, however, the employer accepted the employee into a specific immigration program for employees. (discussed below).

has the opportunity to use its position to its advantage over the other. *First Nat'l Bank of Meeker v. Theos*, 794 P.2d 1055, 1060-61 (Colo. App. 1990). The party claiming the existence of a confidential relationship must prove that (1) a special trust or confidence was in fact reposed, (2) the reposition was justifiable, and (3) the other party invited or accepted the trust imposed. *Id.* Plaintiffs have not alleged facts that plausibly support a justifiable or accepted reposition.

Plaintiffs' allegations regarding fiduciary duty relate to the stipend and room and board credit and generalized assertions that sponsors were au pairs' "protectors." Doc. #101 at ¶¶ 221-53. Nothing in the regulations, however, purports to create a fiduciary relationship between a sponsor agency and a J-1 participant. *See* 22 C.F.R. § 62.31. Rather, the regulations set forth generic requirements governing all aspects of the au pair program including eligibility, selection criteria, placement guidelines, orientations, etc. Nothing in the regulation establishes a relationship of trust or dependence sufficient to establish a fiduciary relationship. *See id.* There is, further, no per se fiduciary duty in which Plaintiffs could justifiably repose special trust or confidence in AIFS. The Plaintiffs' allegations of damage relate only to the minimum wage issue, the amount of which is set by the federal government and the host family but not set by AIFS.

Moreover, the facts of this case are not similar to those found in *DerKevorkian v. Lionbridge Tech., Inc.,* 316 Fed. Appx. 727 (10th Cir. Dec. 3, 2008). The Tenth Circuit held that the plaintiff's employer had a confidential relationship with an employee, giving rise to a fiduciary duty, after it promised to help her acquire her green card. 316 Fed. Appx. at 737-39. There, the employer created a formal program to assist employees with immigration issues and hired an attorney to assist with the plaintiff's immigration issues. *Id.* at 730. Although no fiduciary relationship typically existed between employer

and employee, the employer's act of accepting the plaintiff into the program for the specific purpose of assisting with her immigration issues created a fiduciary duty with respect to that assistance. No such promise or relationship of trust exists between Plaintiff Hlatshaneni and AIFS in this case. Thus, Count III should be dismissed.

## VI. PLAINTIFFS' FLSA CLAIM FAILS BECAUSE AIFS IS NOT AN "EMPLOYER," AND PLAINTIFFS WERE NOT ENTITLED TO OVERTIME.

Plaintiffs assert that they were "domestic service workers" under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.* and that AIFS and other sponsors were their "employers" and therefore liable for allegedly failing to pay au pairs overtime and minimum wage under federal law. (Doc. # 94 at ¶¶ 501-512.) Plaintiffs' allegations in Count VIII fail to state an FLSA claim because AIFS was not an employer, and Plaintiffs were not entitled to overtime.

### A. AIFS Was Not Hlatshaneni's "Employer." [6]

AIFS was not Plaintiff Hlatshaneni's or any Plaintiffs' employer, either singularly or jointly, with a host family. To the extent any FLSA violations occurred, AIFS is not liable for them. Under the FLSA, the term "employ" means "suffer or permit" to work. 29 U.S.C. §203(g). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 20 U.S.C. §203(d). DOL has identified the host family, not the sponsor, as an au pair's employer. 29 CFR 552.100.

Absent this determination, AIFS does not "employ" the au pairs it sponsors. Under the economic realities test, which used by the Tenth Circuit to determine "employer" status under the FLSA, an employer is one who has the power to hire and fire employees, supervises and controls their work schedules or conditions of

---

[6] Hlatshaneni is the only individually-named Plaintiff sponsored by AIFS.

11

employment, determines rate and method of payment, and maintains employment records.  See *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012).  AIFS is not an employer under this test.  While AIFS administers and monitors the host family-au pair relationship, its terms are dictated by DOS and DOL regulations and the agreement between the host family and au pair.  *See* 22 C.F.R. §§ 62.9, 62.31.  AIFS' compliance with federal regulations does not amount to "control" over an au pair's employment.  *See Ivanov v. Sunset Pools Mgmt. Inc.,* 567 F. Supp. 2d 189, 194-95 (D.D.C. 2008).

In *Ivanov*, the plaintiffs were J-1 visa recipients participating in the work travel exchange visitor program.  *Id.* at 190.  They sued their employer and their visa sponsor under the FLSA alleging they were joint employers and failed to pay the plaintiffs' overtime.  *Id.* at 191.  The D.C. District Court rejected the plaintiff's argument that their sponsor was their "employer" finding that the sponsor's obligations[7] under federal regulations did not demonstrate the required control over the employment relationship. *Id.* at 194-95.  The sponsor did not control the plaintiffs' schedules or dictate their pay. *Id.* at 195.  Although the plaintiffs paid to participate in the exchange visitor program, it did not do work involving the sponsor's equipment or facilities.  *Id.* at 196.

As in *Ivanov*, here, Plaintiff Hlatshaneni paid to participate in the au pair program. (Doc. #94 at ¶ 359)  *DOS and her host family, not AIFS, established the terms and conditions of her employment.*  See 22 C.F.R. § 62.31.  Her host family set her schedule and dictated her work.  (*Id.* at ¶¶ 343-49)  The compensation Hlatshaneni received from

---

[7] Those obligations included items such as recruitment, orientation training, health insurance, and employment monitoring, several of which are also obligations under the au pair program. Id. at 194.

her host family was not set by AIFS; it was set by DOS in conjunction with DOL.[8]  Clearly, AIFS was not an employer over any Plaintiff.

### B. Plaintiff Hlatshaneni Was Fully Compensated Under the FLSA.

#### 1. She was exempt from FLSA overtime provisions.

Even if Plaintiff Hlatshaneni could establish that she was a domestic service worker and that AIFS employed her, which she cannot, live-in domestic service employees are not entitled to overtime compensation under the FLSA.  *See* 29 C.F.R. 552.102(a) (domestic service employee who lives with employer for an extended period of time or permanently is exempt from the FLSA overtime requirements).

#### 2. Hlatshaneni received minimum wage for all hours worked.

If she was a live-in domestic service worker, and AIFS was her employer, neither of which is conceded, Plaintiff has not alleged facts sufficient to state a claim that she was paid less than minimum wage.  The stipend set by the DOS and DOL is computed based on 45 hours of work per week.  22 C.F.R. Sec. 62.31(j)(1).  Plaintiff Hlatshaneni has not alleged any facts supporting her contention that in any particular week she worked more than 45 hours.[9]  To the extent she complains that the 40 percent deduction for room and board is improper, this deduction was computed and applied *by DOS through DOL*, not by AIFS.  The regulations require that au pairs be compensated in accordance with the requirements of the FLSA *"as interpreted and implemented by the*

---

[8] Further, the United States Information Agency ("USIA") after consultation with DOL, concluded that au pairs are dependent upon their host families for subsistence, "the measure of economic reality." Exchange Visitor Program 60 Fed. Reg. 8550 (Feb. 15, 1995) (codified at 22 C.F.R. pg. 514).  USIA recognized that the host family determined the au pair's duties and the manner in which he or she would care for the children.  Id. at 8551.

[9] In fact, Hlatshaneni makes no allegations identifying how many hours per week she worked at all.

*United States Department of Labor."* 22 C.F.R. Sec. 62.31(j)(1) (*emphasis added*). Because DOL has authorized the 40 percent room and board credit, Plaintiffs' allegations are not supported as a matter of law. Accordingly, Plaintiffs have not stated a claim that they were denied federal minimum wage for all hours worked.

## VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.

Plaintiffs alleged that AIFS and Plaintiff Hlatshaneni signed an agreement constituting a contract. (Doc. #101 at ¶ 496.) However, Plaintiffs do not identify the contractual provisions allegedly breached by AIFS, but instead allege that the contracts between AIFS and the au pairs it sponsors "contained an illegal wage term" and "incorporated state, federal, and District of Columbia wage and hour laws and also created duties to ensure the protection of the au pairs. (Doc. #101 at ¶497.) The FAC does not contain facts establishing a breach of contract or even that the contract was binding. This claim fails to meet the *Twombly* standard[10] because conclusory allegations of a valid and binding contract and breach are insufficient to state a claim. *See McDonald v. Miller*, 945 F. Supp. 2d 1201, 1206 (D. Colo. 2013) *rev'd in part on different grounds*, 769 F.3d 1202, 1221 (10th Cir. 2014). There are no facts showing the promises breached or any reference to contractual provisions purporting to incorporate any state or local wage laws or any duty on AIFS toward the au pairs not mandated by DOS regulations. The breach of contract claims should be dismissed.

## VIII.   COUNTS IX AND X MUST BE DISMISSED BECAUSE CALIFORNIA AND NEW YORK WAGE AND HOUR LAWS DO NOT APPLY.

Assuming Plaintiffs' state wage claims are not preempted, Plaintiff Hlatshaneni

---

[10] Plaintiffs also fail to identify what alleged "duties" were created and/or breached; this deficiency further mandates the claim be dismissed.

still cannot sustain claims under California or New York wage laws against AIFS.[11] The New York State Department of Labor has concluded that au pairs are not subject to the state's domestic worker and labor laws. *See* http://www.labor.ny/gov/legal/laws/pdf/domestic-workers/facts-for-employers.pdf (last accessed Feb. 20, 2015) at pg. 3. Accordingly, Plaintiffs cannot bring a wage claim under New York state law.

Similarly, Plaintiffs are not employees of AIFS under California law. Generally, California courts defer to the definition of employer set forth by the Industrial Wage Commission, which defines an "employer" as any person…who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." California IWC Wage Order 15-2001 § (2)(G); *see also Martinez v. Combs,* 231 P.3d 259 (Cal. 2010). Here, Plaintiff Hlatshenani did not work for AIFS, but rather for her host family. AIFS did not control Plaintiff's wages, hours, or working conditions; instead, her host family was responsible for controlling those matters so long as they complied with the applicable DOS and DOL regulations. AIFS's only relationship to Plaintiff Hlatshenani was as her J-1 sponsor. Accordingly, Counts IX and X must be dismissed.

## IX.  CONCLUSION

WHEREFORE, for the reasons stated above, all counts against AIFS should be dismissed, and AIFS requests its costs and fees in preparing and filing this Motion.

DATED this 20th day of April, 2015.

---

[11] Plaintiffs attempt to plead violations of multiple states' minimum age laws, but Plaintiff Hlatshaneni, who is the only Plaintiff sponsored by AIFS, could only have claims under California or New York law.

Respectfully submitted,

FISHER & PHILLIPS, LLP

*s/ Lawrence Lee*
Lawrence L. Lee
Daniel C. Perkins
1801 California Street, Suite 2700
Denver, CO 80202
Tel: (303) 218-3650
Fax: (303) 218-3651
llee@laborlawyers.com
dperkins@laborlawyers.com

ATTORNEYS FOR DEFENDANT
AMERICAN INSTITUTE FOR FOREIGN
STUDY DBA AU PAIR IN AMERICA,
INC.

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April, 2015, I electronically filed the foregoing **DEFENDANT AMERICAN INSTITUTE FOR FOREIGN STUDY'S MOTION TO DISMISS COUNTS II-X OF PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
Towards Justice
601 16th Street, Suite C #207
Golden, CO 80401
Email: alex@towardsjustice.org

Toren G.E. Mushovic
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Email: mushovic@wtotrial.com

Brian T. Moore
Jester Gibson & Moore, LLP
1999 Broadway, Suite 3225
Denver, CO 80220
Email: BMoore@jgllp.com

Lawrence D. Stone
Christian D. Hammond
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Email: lstone@duffordbrown.com
Email: chammond@duffordbrown.com

William J. Kelly III
KELLY & WALKER LLC
1401 17th Street, Suite 925
Denver, CO 80202
Email: wkelly@kellywalkerlaw.com

Kathryn A. Reilly
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202
Email: reilly@wtotrial.com

Brian A. Birenbach
The Rietz Law Firm, L.L.C.
114 Village Place, Suite 301
Dillon, CO 80435
Email: brian@rietzlawfirm.com

James E. Hartley
Mher Hartoonian
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Email: jhartley@hollandhart.com
Email: mhartoonian@hollandhart.com

W.V. Bernie Siebert
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Email: bsiebert@shermanhoward.com

Jeffrey P. Allen
Donald J. Gentile
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
Email: jallen@lawson-weitzen.com
dgentile@lawson-weitzen.com

Bogdan Enica
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL  33701
Email:  Bogdan@expertaupair.com

Meshach Y. Rhoades
Martin Estevao
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, CO  80202
Email:  Rhoadesm@gtlaw.com
Email:  Estevaom@gtlaw.com

Martha L. Fitzgerald
Kathryn A. Barrett
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Email:  mfitzgerald@bhfs.com
Email:  kbarrett@bhfs.com

Brooke A. Colaizzi
Heather F. Vickles
Raymond M. Deeny
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Email: bcolaizzi@shermanhoward.com
Email:  hvickles@shermanhoward.com
Email:  rdeeny@shermanhoward.com

John R. Mann
Gordon & Reese LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email:  jmann@gordonrees.com

*s/Daniel C. Perkins*
Daniel C. Perkins