**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

**RESPONSE TO JOINT MOTION TO STRIKE AMENDED COMPLAINT SECTIONS 90 TO 94 BY CERTAIN MOVING DEFENDANTS**

---

      This is an antitrust, fraud, and wage-and-hour class action on behalf of foreign national *au pairs*. Defendants attacked the antitrust claims of the original complaint under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as lacking sufficient factual allegations of conspiracy. Plaintiffs then filed an Amended Complaint that included three defendants' admissions of the conspiracy. In response, a much larger group of defendants (the Defendants) filed a desperate motion to strike the admissions.

      The motion to strike fails on its own terms. The Defendants make sundry allegations of ethical violations, but ethical violations provide no basis for striking material from pleadings. The motion is thus dead-on-arrival. *See infra* I.A.

      In any event, Defendants' allegations of ethical violations are meritless. Their chief argument is that Plaintiffs' counsel violated Colorado RPC 4.2, which prohibits contact with represented parties. Yet, counsel never believed that the defendants that made the admissions, Au Pair International, Inc. (API), EurAupair Intercultural Child Care Programs (EurAupair), and APF Global Exchange, NFP (APF), were represented at the time. Even now, the Defendants offer no proof, and no reason to believe, that the

1

three defendants were represented when they spoke with Plaintiffs' investigator. And Defendants' attempt to apply Rule 4.2 to unrepresented parties is patently frivolous. *See infra* II.B.

The Defendants' other alleged ethical violations are equally unjustified. They claim a violation of Rule 4.3, which protects unrepresented parties from misunderstanding the role of counsel. Incredibly, their argument is built on a purported Eighth Circuit opinion on Rule 4.3, replete with quotes, which does not exist. *See infra* II.C. Defendants fare no better under Rule 8.4(c). They allege misrepresentations by analogizing to a prosecutor who tricked a criminal suspect by pretending to be his public defender. In sharp contrast, there was no misrepresentation here. *See infra* II.D.

For these reasons, this Court should deny the motion.

## BACKGROUND

Plaintiffs' counsel has submitted a declaration with background information. In brief, the Amended Complaint includes statements made by API, EurAupair, and APF on November 20 and 21, 2014. *See* Amended Complaint ¶¶ 90-94. At that time, the U.S. Marshals Service, which was handling service in this *in forma pauperis* action, had not yet served any Defendant. *See* Declaration of Alexander Hood, Esq., dated May 13, 2015 (Hood Decl.), ¶ 28. Likewise, no Defendant had appeared, and neither API, EurAupair, nor APF had indicated it was represented. *See id.* ¶¶ 28-29. Plaintiffs' counsel reasonably believed these three Defendants did not have counsel. *Id.* ¶ 30. Since then, there has never been any indication that API, EurAupair, or APF had counsel, or had notified Plaintiffs of that fact, in November 2014.

In November 2014, an investigator contacted API, EurAupair and APF on phone lines open to the general public. The Defendants provide no evidence of any misrepresentation by that investigator. Nor do their employees deny making the

admissions. The employees cannot even recall the contact. *See* Gorry Decl. ¶¶ 8-9, attached as Ex. 7 to Joint Motion (Jt. Mt.); Crompton Decl. ¶ 6, Jt. Mt., Ex. 10.

## ARGUMENT

### I. THE ALLEGATIONS PROVIDE NO GROUNDS TO STRIKE THE ADMISSIONS.

#### A. The Purported Ethical Violations Provide No Basis For Striking Material from the Amended Complaint.

This Court need not consider the ethical allegations unfairly directed at Plaintiffs' counsel because even if they were viable — and they are not — they could not support striking material from the complaint. Defendants cite no case in which a court relied on an ethical breach to strike material from a pleading.[1] Such relief is impermissible.

Defendants may not use ethical charges to erase evidence of their own wrongdoing. As Judge Kane of this Court explained, "[a]n exclusionary policy frustrates truth," "works against the client who may have been wronged by the opposing party," and is an "inappropriate remedy" for alleged ethical violations. *Johnson v. Cadillac Plastic Group*, 930 F. Supp. 1437, 1442 (D. Colo. 1996); *see also Gidatex, SrL v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119, 126 (S.D.N.Y. 1999) ("a court is not obligated to exclude evidence *even if* it finds that counsel obtained the evidence by violating ethical rules"); *Cartier v. Symbolix, Inc.*, 386 F. Supp. 2d 354, 362 (S.D.N.Y. 2005) ("plaintiffs' employment of the private investigator is a matter collateral to the subject matter of this litigation"). Defendants cannot seek to "be absolved of their

---

[1] Defendants misstate the holding of *Golden Jewelry Creations v. Lloyd Underwriters Non-Marine Ass'n*, 117 F.3d 1328 (11th Cir. 1997). There, the Eleventh Circuit affirmed a district court's refusal to strike pleadings for violations of state ethics rules. *Id.* at 1335 n.2. Contrary to Defendants' assertion, the exclusion of the related testimony was not reviewed on appeal. *See United States v. Lowery*, 166 F.3d 1119, 1125 n.3 (11th Cir. 1999). In any event, the Circuit later found such exclusion would be impermissible. *Id.*

3

alleged wrongdoing by . . . the suppression of evidence." *Plan Comm. Driggs Reorg. Case v. Driggs*, 217 B.R. 67, 72 (D. Md. 1998).

In fact, this Court lacks authority to exclude the material because state-enacted ethical rules cannot limit a federal court's consideration of evidence. "When it comes to the admissibility of evidence in federal court, . . . [s]tate rules of professional conduct, or state rules on any subject, cannot trump the Federal Rules of Evidence." *United States v. Lowery*, 166 F.3d 1119, 1124 (11th Cir. 1999). The same is true for any local rules incorporating state ethics rules. *Id.* at 1125. In both civil and criminal proceedings, a "state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible." *Id.* ("The same principle applies to civil law as well."); *accord United States v. Ruehle*, 583 F.3d 600, 613 (9th Cir. 2009); *United States v. Hailey*, WDQ-11-0540, 2012 U.S. Dist. LEXIS 82053, *21 n.15 (D. Md. June 13, 2012); *United States v. Orange*, No. 99-6009, 2000 U.S. App. LEXIS 137006, *4 (10th Cir. June 12, 2000) (unpublished); *United States v. Parker*, 165 F. Supp. 2d 431, 477 & n.8 (W.D.N.Y. 2001). Defendants thus cannot avoid their own admissions.

Federal Rule of Civil Procedure 12(f) likewise prevents this Court from striking the admissions. Every motion to strike material from a pleading is governed by Rule 12(f). That is true even where, as here, a party cites another purported basis for striking a pleading. *See, e.g.*, *Quick v. Grand Junction Lodging LLC*, No 13-cv-02917, 2014 U.S. Dist. LEXIS 174815, at *2-3 (D. Colo. Dec. 18, 2014) ("to the extent that it seeks to strike a pleading, it is more appropriately construed as a Rule 12(f) motion to strike"); *Sender v. Mann*, 423 F. Supp. 2d 1155, 1163 (D. Colo. 2006) (same).

Rule 12(f) authorizes courts to strike only "redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). Defendants do not even attempt to argue that the admissions come within any of those categories, which they clearly do

not. In any event, Rule 12(f) requires a showing of prejudice, which Defendants have not made. *See Big Cats of Serenity Springs v. Vilsack,* No. 13-cv-03275, 2015 U.S. Dist. LEXIS 37701, at *37 (D. Colo. Jan. 5, 2015); *Haskett v. Flanders*, No. 13-cv-03392, 2014 U.S. Dist. LEXIS 164460, at *9 (D. Colo. Oct. 24, 2014). The Defendants' sole argument suggesting prejudice — *i.e.*, that the statements "would be part of an operative pleading and, even after they are denied by Defendants in any responsive pleading, [could] potentially [be] subject to consideration by the jury," Jt. Mt. at 8 — was specifically considered and properly rejected as unavailing in *Martel v. Cadjew*, No. CIV S-11-0509, 2011 U.S. Dist. LEXIS 106575, at *11 (E.D. Cal. Sept. 20, 2011).

For these reasons, Defendants' allegations cannot justify striking the admissions.

### B. Only Two Defendants Have Standing.

Even if there were grounds to strike a pleading for purported ethical violations, ten of the twelve Defendants would lack standing to seek such relief. In particular, only API, EurAupair, and APF gave statements that are included within paragraphs 90 through 94. *See* Hood Decl. ¶ 10. EurAupair was wise enough not to join the motion. Thus, apart from API and APF, none of the Defendants had standing to move to strike. *See Weider Sports Equip. Co., Ltd. v. Fitness First, Inc.*, 912 F. Supp. 502, 504 (D. Utah 1996) (holding defendant "lack[ed] standing to seek suppression" for "unethical conduct . . . directed exclusively" to another party).

## II. IN ANY EVENT, THERE WAS NO ETHICAL VIOLATION.

### A. Defendants Bear The Burden of Proof.

Even if ethical violations provided grounds for motions to strike, the Defendants would bear a heavy burden of proof. *See Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). As Defendants concede, motions to strike "are generally disfavored and should only be granted in exceptional circumstances." Jt. Mt.

5

at 8.  "[S]triking a portion of a pleading is a drastic remedy," *Nigro v. Encompass Indem. Co.*, No. 14-cv-03464, 2015 U.S. Dist. LEXIS 23354, at *4 (D. Colo. Feb. 26, 2015), and "will only be granted under the rarest of circumstances," *Carroll v. Allstate Fire & Casualty Ins. Co.*, No. 12-cv-00007, 2013 U.S. Dist. LEXIS 152843, at *8 (D. Colo. Oct. 24, 2013).  The Defendants wholly fail to meet their burden.

### B. Plaintiffs' Counsel Did Not Violate Rule 4.2.

The Defendants dedicate most of their motion to the argument that "counsel violated Rule 4.2 by making or directing *ex parte* contacts with represented persons." Jt. Mt. at 11-14.  This argument is frivolous because (1) there is no evidence API, EurAupair, or APF was represented at the time of the contact; (2) Plaintiffs' counsel knew of no such representation; and (3) Rule 4.2 does not apply to unrepresented parties, even if they will likely become represented in the future.

#### 1. There Is No Proof That API, EurAupair, or APF Was Represented By Counsel In November 2014.

Rule 4.2 protects only those actually represented by counsel.  The Rule prohibits communications "about the subject of the *representation* with a person the lawyer knows to be *represented by another lawyer* in the matter."   Colo. RPC 4.2 (emphases added).  As the Comments reiterate, the "Rule applies to communications with any person who is *represented by counsel* concerning the matter to which the communication relates." Colo. RPC 4.2, Comment 2 (emphasis added).

Accordingly, "[t]he first question in applying Rule 4.2, Colo. R. Prof. Conduct, and [a] controlling question in the determination of this Motion, is whether the [Defendants] are in fact represented by [counsel]." *EEOC v. Albertson's, Inc.*, No. 06-cv-01273, 2006 U.S. Dist. LEXIS 72378, at *13 (D. Colo. Oct. 4, 2006).  If a person is not represented by counsel at the time of a communication, that communication cannot violate Rule 4.2

*See, e.g., Miano v. AC&R Adver., Inc.*, 148 F.R.D. 68, 77-81 (S.D.N.Y. 1993); *Fed. Savings & Loan Insur. Corp. v. Hildenbrand*, No. 89-A-535, 1989 U.S. Dist. LEXIS 19241, at *10-11 (D. Colo. Sept. 8, 1989).

Here, there is no evidence that API, EurAupair, or APF had retained counsel as of November 20-21, 2014, when the challenged communications were made. In their motion papers, the Defendants repeatedly assert that these three defendants were represented by counsel. *See, e.g.*, Jt. Mt. at 11 (claiming "ex parte contacts with represented persons"), 12, 15 ("Counsel sought to trick represented parties"). Yet, tellingly, Defendants provide no evidence substantiating those claims.

Moreover, it is difficult to understand how such claims could possibly be true. API told this Court, in January 2015, that it retained counsel "to represent it in this matter on December 31, 2014." *See* Motion dated Jan. 5, 2015 [Dkt. 16], ¶ 3. EurAupair represented to the Court, on February 12, 2015, that it "had not yet retained counsel" as of January 23, 2015. *See* Motion dated Feb. 12, 2015 [Dkt. 66], ¶¶ 3-5. And APF counsel did not make any appearance until February 2015, after APF failed to respond to the Complaint when required in mid-January 2015. *See* Hood Decl. ¶¶ 35-40. These defendants' statements and actions are thus fundamentally inconsistent with any representation by counsel in November 2014.

### 2. There Is Also No Proof That Plaintiffs' Counsel Knew That API, EurAupair, or APF Was Represented by Counsel in November 2014.

In any event, Plaintiffs' counsel had no reason to believe that API, EurAupair, or APF was represented by counsel on November 20-21, 2014. "The prohibition on communications with a represented person only applies in circumstances where the lawyer *knows* that the person is in fact represented in the matter to be discussed." Colo. RPC 4.2, Comment 8 (emphasis added); *see also* Colo. RPC 4.2, Comment 9 ("In

7

the event the person with whom the lawyer communicates is *not known* to be represented by counsel in the matter, the lawyer's communications are subject to Rule 4.3," not 4.2) (emphasis added). Although a lawyer may not "ignore the obvious," a lawyer must have "actual knowledge of the fact of the representation" before Rule 4.2 may apply. Colo. RPC 4.2, Comment 8; Colo. RPC 1.0(f); *see also State ex rel. Oklahoma Bar Ass'n v. Harper*, 995 P.2d 1143, 1147 (Okla. 2000) (holding attorney negligence is insufficient to trigger Rule 4.2).

Plaintiffs' counsel did not know that API, EurAupair, or APF was represented as of November 20-21, 2014. *See* Hood Decl. ¶¶ 26-44. Nor was any representation of API, EurAupair, or APF at that time "obvious," either then or now. In November 2014, none of these defendants had appeared in the case. *Id.* ¶¶ 28(f), 31. No lawyer had otherwise contacted Plaintiffs' counsel to introduce himself or herself as counsel for these defendants. *Id.* ¶ 29. Further, Plaintiffs' counsel reasonably believed that these defendants were unaware of this litigation at the time. *Id.* ¶ 30. None of the defendants had been served. *Id.* ¶ 28(d). And there had not yet been any press coverage. *Id.* ¶ 29. For these reasons, even now, Plaintiffs' counsel continues to believe these three defendants were not represented by counsel in November 2014. *Id.* ¶ 42.

**3. Rule 4.2 Does Not Apply To Persons Who Do Not Yet Have Counsel.**

Presumably because they know that the relevant defendants were not represented as of November 2014, and that Plaintiffs' counsel could not have known of any such representation in any event, the Defendants attempt to re-write the Colorado RPC to expand Rule 4.2 to unrepresented persons. In particular, they argue, without any support, that a litigant who "would imminently be represented" falls within the scope of Rule 4.2. *See* Jt. Mt. at 12. However, the language of Rule 4.2 is limited to "represented" persons. *See* Colo. RPC 4.2 ("Communication With Person Represented

by Counsel"); *id.*, Comment 1 ("This Rule . . . protect[s] a person who has chosen to be represented by a lawyer in a matter."); *id.*, Comment 2 ("This Rule applies to communications with any person who is represented by counsel"). That language admits of no exception.

The Defendants cite no authority for their illogical contention that Rule 4.2 covers a party that *may* become represented by counsel even when that party is not yet represented. Unsurprisingly, courts have long rejected that argument. *See, e.g.*, *State v. Sanchez*, 288 P.3d 351, 364 & n.4 (Wash. 2012) (finding Rule 4.2 inapplicable to counsel's conduct in "act[ing] quickly to interview [a party] three times" before he obtained counsel who would "cut off further conversations," because the party was "not yet represented"); *W.T. Grant Co. v. Haines*, 531 F.2d 671, 673-74 (2d Cir. 1976) (finding Rule 4.2 precursor did not apply to defendant "not yet represented" when interrogated by counsel, where complaint had been filed but not yet served on him).

There is thus no merit to Defendants' assertion that counsel violated Rule 4.2.

### C. Plaintiffs' Counsel Did Not Violate Rule 4.3.

#### 1. Defendants Base Their Arguments On A Non-Existent Circuit Decision.

The Defendants' claim that Plaintiffs' counsel violated Rule 4.3 is meritless and unsupported by any citation to Colorado authority. *See* Jt. Mt. at 9-10. Instead, the Defendants rely almost entirely on a non-controlling decision in the Eighth Circuit, *Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d 693 (8th Cir. 2003). The Defendants claim that "the Eighth Circuit Court of Appeals concluded that a defendant's attorneys had violated South Dakota's version of Rule 4.3." Jt. Mt. at 10. But that is simply not true.

The Eighth Circuit's opinion contains no reference whatsoever to Rule 4.3. In *Midwest Motor Sports*, the sanctioned counsel had sent an investigator to speak with

employees of a represented party.  347 F.2d at 696-98.  Counsel did so in the midst of discovery.  *Id.* at 696.  The Eighth Circuit held that counsel had violated Rule 4.2 — *not* Rule 4.3 — by sending an investigator to contact employees of that represented party.  *Id.* at 698.  Contrary to the Defendants' claims, the Eighth Circuit did not find a Rule 4.3 violation.  The Defendants' description of the case is dead wrong.

Moreover, none of the language in the block quote appearing on page 10 of the Defendants' brief can be found in the Eighth Circuit's opinion.  It can be found, instead, in the opinion by the U.S. District Court for the District of South Dakota.  *See Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147, 1158 (D.S.D. 2001).  The Rule 4.3 discussion in that decision was not affirmed and has never been adopted by the Eighth Circuit.  More importantly, the district court decision has never been followed in Colorado or elsewhere in the Tenth Circuit.[2]

### 2. Colorado Rule 4.3 Does Not Apply To Contacts By Plaintiffs' Investigator.

Rule 4.3 does not apply to communications with investigators who do not hold themselves out as making inquiries on behalf of lawyers.  The Rule provides:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than

---

[2] Moreover, in *Midwest* and each of Defendants' other cited cases, courts considered contacts with constituents of represented parties.  *See Todd v. Montoya*, CIV 10-0106, 2011 U.S. Dist. LEXIS 14435, at *36-41 (D.N.M. Jan. 12, 2011); *Cole v. Appalachian Power Co.*, 903 F. Supp. 975, 976-80 (S.D. W.Va. 1995).  With represented parties, courts "struggle[] to fashion an anti-contact rule which strikes an appropriate balance between the interests of the corporation and the need of adverse parties to conduct inexpensive informal discovery."  *Brown v. St. Joseph County*, 148 F.R.D. 246, 253 (N.D. Ind. 1993).  Here, none of contacted organizations was known to be represented.

>  the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

Colo. RPC 4.3.  The Rule "is limited to circumstances where an attorney is acting in his capacity as a lawyer — 'dealing on behalf of a client.'" *Apple Corps. v. Int'l Collectors Soc'y*, 15 F. Supp. 2d 456, 476 (D.N.J. 1998).

Rule 4.3 exists to protect unsophisticated people who "might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law."  *See* Colo. RPC 4.3, Comment 1.  This danger only exists when such a person understands he is "dealing" with an attorney.  Colo. RPC 4.3.  The Colorado courts have applied Rule 4.3 in those circumstances.  *See, e.g.*, *People v. Mascarenas*, 103 P.3d 339, 345 (Colo. 2003) (finding R. 4.3 violation where "lack of sophistication and experience gave her little choice but to accept the attorney's comments as legal advice without realistic questioning or consideration"); *People v. Pautler*, 47 P.3d 1175, 1182 (Colo. 2002) (finding R. 4.3 violation where prosecutor deceived suspect into believing attorney was public defender); *In re Myers*, 981 P.2d 143, 144 (Colo. 1999) (finding R. 4.3 violation where attorney told unrepresented party that she did not represent any client, "making it appear as if [the attorney] was a neutral party").

By contrast, Rule 4.3 has no application here, where an investigator did not claim to be an attorney or acting on behalf of one.  As the former chair of the ABA Standing Committee on Ethics has written, "[s]ince Rule 4.3 turns upon assumed expectations of persons dealing directly with lawyers, it should have no vicarious applicability to lawyers supervising the activities of undercover investigators," because "the latter by definition do not represent themselves as acting on behalf of a lawyer, and so cannot engender expectations of the sort that Rule 4.3 is intended to protect."  David B. Isbell, *Ethical Responsibility of Lawyers*, 8 Geo. J. Legal Ethics 791, 825 (1995).  "No unrepresented

person is realistically likely to apply his or her expectations of lawyers to an investigator," unless the "investigator [has] represented himself as acting on behalf of a lawyer." *Weider Sports Equip. Co.,* 912 F. Supp. at 512.

Here, the two employees at APF and API who spoke with the investigator confirmed that they did not believe that he was a lawyer or working with a lawyer. *See* Gorry Decl., ¶¶ 8-9, attached as Ex. 7 to Jt. Mt.; Crompton Decl., ¶ 7, attached as Ex. 10 to Jt. Mt. Rule 4.3 is therefore inapplicable.

### 3. Even If Colorado Rule 4.3 Applied, No Disclosure Was Necessary.

Even if Rule 4.3 were applicable, Colorado RPC 4.3 would not have required the investigator to volunteer that he was working on behalf of a lawyer and his clients. Colorado RPC 4.3 previously did provide that "a lawyer shall state that the lawyer is representing a client." *See* Prior Colo. RPC 4.3 & Comment, *available at* http://www.cobar.org/index.cfm/ID/402/subID/2063/CETH/Rule-4.3-Dealing-with-Unrepresented-Person/ (last visited May 11, 2015). However, effective January 1, 2008, Colorado deleted that affirmative disclosure obligation. *See* Colo. RPC 9. The current version of Rule 4.3 contains no such requirement. *See* Colo. RPC 4.3.

By deleting the prior requirement that counsel disclose the fact of his representation, Colorado has made clear that Rule 4.3 imposes no such obligation. Under Colorado law, courts "must give effect to the wording and the purpose" of enactments and may "not presume that the [State] makes its deletions and substitutions of statutory language idly." *Mid-Century Ins. Co. v. Travelers Indem. Co.*, 982 P.2d 310, 315 (Colo. 1999) (citations omitted). Thus, even if the current Colorado RPC 4.3 applied to the investigator — and it does not — the Rule would not have required him to disclose that he was working with counsel.

For all of these reasons, the Defendants' Rule 4.3 claims lack merit.

### D. Plaintiffs' Counsel Did Not Violate Rule 8.4.

Plaintiffs likewise did not violate Colorado RPC 8.4. Defendants cite no evidence or supporting precedent for this charge, but, instead, rely entirely on a case holding that a "prosecutor may not deceive an unrepresented person by impersonating a public defender." *People v. Pautler*, 47 P.3d 1175, 1176 (Colo. 2002) (en banc), *cited and discussed* at Jt. Mt. at 8-9. The analogy fails, as does Defendants' argument.

#### 1. *Pautler* Does Not Apply Here.

The facts in *Pautler* could not be further from the facts here. Mark Pautler, an assistant district attorney, decided to "impersonate" a public defender to trick a criminal target into believing that Pautler represented the target, whom Pautler was actually seeking to apprehend. *See* 47 P.3d at 1177. Pautler adopted a pseudonym, was introduced to the target as the public defender, and succeeded in tricking the target into believing Pautler was his lawyer. *See id.* at 1177, 1182.

The Defendants' contention that *Pautler* describes "precisely the conduct engaged in by Plaintiff's counsel or his agent" is absurd. Jt. Mt. at 9. Obviously here, there is no claim that Plaintiffs' counsel or their investigator ever pretended to represent API, EurAupair, or APF. Indeed, Ms. Gorry at API and Ms. Crompton at APF cannot recall any conversation with Plaintiffs' investigator. *See* Gorry Decl. ¶¶ 7-9; Crompton Decl. ¶¶ 6-7. Ms. Gorry and Ms. Crompton nowhere claim they believed the investigator was a lawyer, and certainly not their own lawyer. *Pautler* is thus inapposite.

#### 2. There Has Been No Misrepresentation.

Further, in sharp contrast to *Pautler*, there is no evidence here of "dishonesty, fraud, deceit, or misrepresentation," which Rule 8.4 prohibits. Colo. RPC 8.4(c). *See* Jt. Mt. at 8-9. Defendants' conclusory argument that the investigator "feigned interest in the program as a member of a potential host family," *see* Jt. Mt. at 4, cites Ms. Gorry's

declaration, which does not say that. Ms. Gorry explains only that she does not recall speaking to the investigator, and that the investigator did not volunteer that he was calling on behalf of the Plaintiffs. *See* Gorry Decl., ¶¶ 8-9. Neither Ms. Gorry nor any other witness identifies any misrepresentation.

### 3. Rule 8.4(c) Did Not Require the Investigator to Identify His Purpose.

Rule 8.4(c) also does not impose affirmative obligations on investigators to identify themselves as attorneys' agents, or to disclose their adverse interests. The *Pautler* court's observation that a prosecutor had failed to "correct [a] misunderstanding" related to mitigation, and was made without any reference to Rule 8.4. *See Pautler*, 47 P.3d at 1182. The court never suggested a Rule 8.4 duty to disclose one's purpose.

Indeed, Rule 8.4 could not possibly require investigators to voluntarily disclose their purpose because the Rule permits investigators to use a cover and lie about their identity and purpose. A "public or private lawyer's use of an undercover investigator to detect ongoing violations of the law is not ethically proscribed." *Cartier*, 386 F. Supp. 2d at 362; *Gidatex, S.r.L*, 82 F. Supp. 2d at 122 ("hiring investigators to pose as consumers is an accepted investigative technique, not a misrepresentation."); *see also* Simon's N.Y. RPC Annotated (2105 ed.) at 1858 ("deceptive techniques are permitted in all types of cases"). Because Rule 8.4 "does not apply to misrepresentations solely as to identity or purpose and solely for evidence-gathering," *Apple Corps.*, 15 F. Supp. 2d at 475, the Rule, *a fortiori*, cannot compel an investigator to identify his purpose.

For these reasons, there was no violation of Rule 8.4.

### III.   DEFENDANTS' CLAIMS OF BAD FAITH ARE UNFOUNDED.

Defendants make three meritless allegations of bad faith by Plaintiffs' counsel.

*First*, Plaintiffs' counsel did not act in "willful disregard for the Rules of Professional Conduct." Jt. Mt. at 14. Incredibly, Defendants make this claim while

simultaneously failing to provide Colorado authority to support their arguments. As an attorney at a firm representing multiple Defendants has more frankly noted, "[u]nfortunately, there are no precise guidelines for Colorado attorneys" in this area, "other than broadly written ethical rules and inconsistent decisions from other jurisdictions." Payne, "Investigative Tactics," 35 Colo. Law. 43 (Jan. 2006).[3]

*Second*, Plaintiffs' counsel did not "delay[] service of the original complaint." Jt. Mt. at 14. It is not clear how this claim is relevant, or how service was "delayed," as service was made well within the period provided by Rule 4. In any event, Plaintiffs' counsel did not control service. The case was filed *in forma pauperis*, *see* Order dated Nov. 15, 2014 [Dkt. 5], and, accordingly, the Clerk directed the U.S. Marshals Service to serve defendants, *see* Certificate of Service, dated Nov. 20, 2014 [Dkt. 8]. All of the Defendants know this, as they were each served by the U.S. Marshals Service.

*Third*, Plaintiffs were not "evasive" in responding to Defendants' requests for information. To the contrary, Plaintiffs promptly responded to all of Defendants' discovery requests, *see* Jt. Mt., Exs. 5 & 11, while Defendants refused to share their purported ethical concerns, despite repeated requests, *see, e.g.*, Jt. Mt., Ex. 5. Plaintiffs also offered to provide more discovery to Defendants, but Defendants declined to seek that information. *See* Jt. Mt., Ex. 5. Defendants thus rewrite history by charging Plaintiffs with bad faith for not responding to discovery requests that Defendants chose not to make. *See generally* Hood Decl. ¶¶ 45-53.

### **CONCLUSION**

This Court should deny the Joint Motion for the reasons stated above.

---

[3] Ms. Payne is a lawyer at Wheeler Trigg O'Donnell LLP, which represents defendants Agent Au Pair and Go Aupair.

Dated: May 13, 2015

           Respectfully Submitted,

           <u>s/ Alexander Hood</u>
           Alexander Hood
           Towards Justice
           1535 High Street, Suite 300
           Denver, CO  80218
           Tel: 720-239-2606
           Fax: 303-957-2289
           Email: [alex@towardsjustice.org](mailto:alex@towardsjustice.org)

## Certificate of Service

I hereby certify that on May 13, 2015, I served a true and correct copy of the forgoing on the individuals below pursuant to F.R.C.P. 5.

Raymond Myles Deeny
rdeeny@shermanhoward.com

Martha Louise Fitzgerald
mfitzgerald@bhfs.com

James Edward Hartley
jhartley@hollandhart.com

John Roger Mann
jmann@gordonrees.com

Lawrence Daniel Stone
lstone@duffordbrown.com

Walter Vernon Bernie Siebert
bsiebert@shermanhoward.com

Thomas Baker Quinn
tquinn@gordonrees.com

Heather Fox Vickles
hvickles@sah.com

Lawrence L. Lee
llee@laborlawyers.com

Brian Thomas Moore
bmoore@jgllp.com

Meshach Yustine Rhoades
rhoadesm@gtlaw.com

Kathryn A. Reilly
reilly@wtotrial.com

William James Kelly, III
wkelly@kellywalkerlaw.com

Daniel C. Perkins
dperkins@laborlawyers.com

Brian Alan Birenbach
brian@rietzlawfirm.com

Kathryn Anne Barrett
kbarrett@bhfs.com

Chanda Marie Feldkamp
cfeldkamp@kellywalkerlaw.com

Mher Hartoonian
mhartoonian@hollandhart.com

Bogdan Enica
bogdane@hotmail.com

Jeffrey Paul Allen
jallen@lawson-weitzen.com

Brooke A. Colaizzi
BColaizzi@shermanhoward.com

Donald Joseph Gentile
dgentile@lawson-weitzen.com

s/ Alexander Hood
Alexander Hood