IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

    Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

    Defendants.

---

**DECLARATION OF ALEXANDER HOOD, ESQ.**

---

I, Alexander N. Hood, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am an attorney at Towards Justice, and I represent Plaintiffs Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Dayanna Paola Cardenas Caicedo, and Alexandra Ivette González (collectively, Plaintiffs) in this matter. I submit this declaration in opposition to the Joint Motion to Strike Certain Allegations, dated April 20, 2015, and docketed as document 134 (the Joint Motion), and Defendant AuPairCare, Inc.'s Supplement to Joint Motion to Strike Certain Allegations, dated April 21, 2015, and docketed as document 137 (the AuPairCare Supplement). I submit this declaration on the basis of personal knowledge, unless otherwise noted, and upon my review of the Joint Motion and the AuPairCare Supplement.

2. This declaration is divided into three Parts. In **Part I**, I provide background regarding the allegations that certain defendants seek to strike. In **Part II**, I explain why

I did not believe, and still do not believe, that the three defendants contacted by the investigator were represented at the time of that contact. In **Part III**, I address the discovery issues raised by the Joint Motion.

3. In this declaration, I use the terms "Defendants," "Sponsor Defendants," and "Sponsors" to refer to all of the defendants named in this matter, except for Pamela and Thomas Noonan. I use the term "Moving Defendants" to refer to defendants InterExchange, Inc., USAuPair, Inc., GreatAuPair, LLC, Cultural Homestay International, APF Global Exchange, NFP, American Institute for Foreign Study d/b/a Au Pair in American, Agent Au Pair, American Cultural Exchange, LLC d/b/a Go Aupair, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc. d/b/a Cultural Au Pair, and Expert Group International d/b/a Expert AuPair. I use the term "Original Complaint" to refer to the complaint filed in this matter on November 13, 2014, and docketed as document 1. I use the term "Amended Complaint" to refer to the First Amended Complaint filed in this matter on March 13, 2015, and docketed as document 101.

### I. THE CHALLENGED ADMISSIONS.

4. The Original Complaint in this matter alleged a wage-fixing antitrust conspiracy among the fifteen Sponsor Defendants. *See* Original Complaint ¶¶ 82-92. Specifically, the Original Complaint alleged that the Sponsors had "agreed to fix all *au pair* weekly wages." *See id.* ¶ 85.

5. In response to that complaint, a number of Sponsor Defendants filed a joint motion to dismiss Plaintiffs' antitrust claims under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those defendants argued that the antitrust conspiracy

allegations were "sparse" and "legally insufficient to state a conspiracy claim." *See* Joint Motion to Dismiss by Certain Sponsor Defendants and Certification of Compliance with Civil Practice Standard 7.1D, dated Feb. 23, 2015 [Dkt. 82], at 7.  Defendants argued that the Original Complaint lacked direct evidence of conspiracy, such as "conversations," "correspondence," "or other facts" supporting a conspiracy.  *See, e.g.*, Defendant Cultural Care, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(b), dated Feb. 20, 2015 [Dkt. 74] at 15.  One defendant characterized the Original Complaint as containing no more than "a bare assertion of conspiracy."  *Id.* at 15.

6. On March 13, 2015, Plaintiffs filed an Amended Complaint, which added direct admissions that the Sponsors did, indeed, conspire amongst themselves to fix au pair wages.  These admissions were described in paragraphs 90 through 94 of the Amended Complaint.

7. Paragraph 90 of the Amended Complaint summarized that "Several Sponsors have admitted to an agreement among all of the Sponsors to keep standard *au pair* wages at exactly $195.75 per week."

8. Paragraph 91 of the Amended Complaint provides further detail regarding the admissions by certain Sponsor Defendants.  Those admissions included that:

> a. Each and every Sponsor conspired to reach an agreement on standard *au pair* wages;

b. In that agreement, all of the Sponsors pegged the weekly wage for their sponsored *au pairs* at the published minimum allowable amount of $195.75 per week;

c. The Sponsors agreed to ensure that host families "pay that amount, no more";

d. Maintaining this weekly wage keeps *au pair* labor as a "fixed expense"; and

e. As a result of the Sponsors' collective agreement on fixed wages, "pricing becomes standard across all agencies," "the stipend is identical across all companies," and "there is no difference in prices, as far as the stipend goes, between all of the agencies."

9. Paragraphs 92 through 94 of the Amended Complaint describe the telephone conversations in which these admissions were made. Those paragraphs identify three separate such conversations. One conversation took place on November 20, 2014, and two occurred on November 21, 2014.

10. The Sponsors whose statements are described in paragraphs 92 through 94 of the Amended Complaint are Au Pair International, Inc. (API); EurAupair Intercultural Child Care Programs (EurAupair); and APF Global Exchange, NFP (APF).

11. According to the Joint Motion, EurAupair has not joined that motion, and API and APF have joined that motion.

12. In the Joint Motion, none of the Moving Defendants denies that the admissions described in paragraphs 90 through 94 of the Amended Complaint were made and accurately recounted.

13. API does not challenge that it made the admissions described in the Amended Complaint.

14. API has submitted a declaration from an employee, Joanna Gorry, who describes her belief that she handled one of the calls with Plaintiffs' investigator. *See* Declaration of Joanna Gorry, dated Apr. 17, 2015 (Gorry Decl.), ¶¶ 1-6, attached as Ex. 7 to Joint Motion. My understanding is that Plaintiffs' investigator obtained the API admission from Ms. Gorry. Accordingly, Plaintiffs identified Ms. Gorry in their Rule 26(a) disclosures.

15. Ms. Gorry explains that she "does not appear to have made any notes" of the call and "cannot identify this call from memory." *Id.* ¶¶ 7-8.

16. Ms. Gorry does not deny that she could have made the admissions described in paragraphs 90 through 94 of the Amended Complaint.

17. APF also does not challenge that it made the admissions described in the Amended Complaint.

18. APF has submitted a declaration from Carrie Crompton, an APF employee and its National Director of Field Operations, in which Ms. Crompton explains that she "may be the person or one of the people who answered . . . [the] calls to APF . . . referenced by the Plaintiffs in their Amended Complaints." *See* Declaration of Carrie Crompton, dated Apr. 20, 2015 (Crompton Decl.), ¶ 5, attached as Ex. 10 to Joint

Motion. My understanding is that Plaintiffs' investigator contacted Ms. Crompton. Accordingly, Plaintiffs identified Ms. Crompton in their initial disclosures.

19. Ms. Crompton states that she "cannot be certain whether [she] might have made any of those statements." *Id.* ¶ 6.

20. Ms. Crompton does not deny that she could have made the admissions in paragraph 92 of the Amended Complaint.

21. APF has also submitted a declaration from one of its Vice Presidents, Theresa Nelson. *See* Declaration of Theresa Nelson, dated Apr. 20, 2015, ¶ 5, attached as Ex. 9 to Joint Motion.

22. Ms. Nelson states she "cannot be certain whether [she] or any other person affiliated with APF Global Foundation might have made any of those statements."

23. Ms. Nelson does not challenge that APF made the admissions in paragraph 92 of the Amended Complaint.

24. I have reviewed the Joint Motion. In the motion, the Moving Defendants do not deny the accuracy of the allegations in paragraphs 90 through 94 of the Amended Complaint.

## II. REPRESENTATION BY COUNSEL.

25. The Amended Complaint states that the admissions described in paragraphs 90 through 94 were made in conversations on November 20 and 21, 2014. I understand, from communications with investigator David Keil, that those statements were made by APF, EurAupair, and API.

26. I do not believe that APF, EurAupair, or API was represented by counsel as of November 21, 2014.

27. I am familiar with the ECF docket in this matter. I have been registered with ECF and have received ECF notices of all filings in this case. Those filings include notices about service on Defendants.

28. According to the docket, none of the Sponsor Defendants had been served by November 21, 2014. Neither APF, EurAupair, nor API had been served by that point. The following appears on the docket:

   a. Plaintiff Johana Paola Beltran, the original sole plaintiff, received leave to proceed *in forma pauperis*. *See* Order dated Nov. 15, 2014 [Dkt. 5].

   b. As a result, the Clerk mailed summonses to the United States Marshals Service for service of process on the Sponsor Defendants. *See* Certificate of Service, dated Nov. 20, 2014 [Dkt. 8].

   c. The Marshals did not receive that mailing until November 21, 2014. *See, e.g.*, Summons Retuned Executed, dated Dec. 22, 2014 [Dkt. 13] (stamped "RECEIVED," "2014 NOV 21").

   d. The first Sponsor Defendant was served on December 15, 2014; others were served between then and January 21, 2015. *See* Summons Returned Executed [Dkts. 13, 17-18, 27-28, 30-32, 34-36, 50-51].

   e. As of November 21, 2014, no defendant had filed a notice of appearance.

29. In addition, as of November 21, 2014, I had not received notice from APF, EurAuPair, or API stating that any of these Defendants had retained counsel. As of that point in time, no lawyer had contacted me to introduce himself or herself as counsel for any of these three defendants. I am unaware of any press coverage of this case that existed as of November 21, 2014.

30. Accordingly, as of November 21, 2014, I believed that neither APF, EurAupair, nor API had notice of this action or was represented by counsel.

31. The docket further indicates that no Sponsor Defendant made an appearance in this matter until January 2015, *i.e.*, not until months after the November 20-21, 2014 admissions.

32. Both API and EurAupair have previously told the Court that they were not represented by counsel until a date long after the admissions of November 20-21, 2015.

33. API, in its motion of January 5, 2015, for an extension of time to respond to the complaint, averred that it retained counsel on December 31, 2014 (*i.e.*, more than a month after the admissions). *See* Motion dated Jan. 5, 2015 [Dkt. 16], ¶ 3.

34. Likewise, EurAupair claimed that it "had not yet retained counsel" as late as January 23, 2015 (*i.e.*, more than two months following the admissions). *See* Motion dated Feb. 12, 2015 [Dkt. 66], ¶¶ 3-5.

35. In addition, there remains no indication on the docket that APF was represented by counsel in this matter in November 2014.

36. According to the docket, other Sponsor Defendants themselves recognized as late as January 23, 2015, that APF had no counsel of record in this matter. *See* Motion dated Jan. 23, 2015 [Dkt. 42], ¶ 2.

37. No counsel entered an appearance for APF until February 11, 2015 (*i.e.*, more than two months after the APF admissions). *See* Notices of Entry of Appearance, dated Feb. 11, 2015 [Dkts. 63, 65].

38. A group of Sponsor Defendants that had appeared in this case as of late January 2015 noted that APF had no counsel of record at that point. That group of nine Sponsors – which did not include APF – filed for an extension request on January 23, 2015, representing to the Court that they were the only Sponsor "Defendants to have counsel of record in this case." *See* Motion dated Jan. 23, 2015 [Dkt. 42], ¶ 2.

39. Their stated conclusion that APF was not yet represented by counsel is consistent with every indication on the docket. According to the docket, APF had been served on December 23, 2014, *see* Summons Returned Executed [Dkt. 31]; its response was due by January 13, 2015, *see* Fed. R. Civ. P. 12(a)(1)(A)(i); and yet, by January 23, 2015 (*i.e.*, ten days after its answer was due), APF had neither responded to the complaint nor moved for an extension of time.

40. In my experience, a party represented by counsel generally does not disregard response deadlines. I therefore believe it is most likely that, as the docket reflects and as the other Defendants appear to have assumed, APF was not represented by counsel until February 2015 (*i.e.*, months after APF's admissions).

41.     I am not aware of any evidence from API, EurAupair or APF showing that any of these defendants was represented by counsel as of November 20-21, 2015.

42.     For these reasons, I continue to believe that API, EurAupair, and APF were not represented by counsel in November 2014.

43.     As of November 21, 2014, I believed a single Sponsor Defendant had retained counsel to represent it on any matter relating to any Plaintiff. That Defendant was InterExchange. Plaintiff Beltran had retained an attorney before retaining me. That attorney had communicated with an attorney for InterExchange regarding Ms. Beltran, and had informed me of the communication. Because the InterExchange lawyer had been retained in connection with Ms. Beltran's prior representation, I had no reason to believe that InterExchange knew of this proceeding. Nevertheless, I instructed Plaintiffs' investigator to avoid any contact with InterExchange.

44.     If I had any grounds to believe that any other Sponsor Defendant had obtained representation, I would have instructed the investigator not to contact that party, in accordance with my instructions to avoid any contact with InterExchange.

### III. DISCOVERY ISSUES.

45.     Plaintiffs identified, in their Rule 26(a) disclosures of March 16, 2015, the particular individuals at APF, EurAupair, and API who participated in the conversations described in the Amended Complaint. The disclosures identified each individual, along with her respective phone number at each such organization. *See id.* ¶¶ 21-23.

46.     Plaintiffs' initial disclosures further identified Plaintiffs' investigator, David Keil.

47. Defendants served discovery under Rule 26(b)(3)(C) of the Federal Rules of Civil Procedure for their own statements. They styled the requests as urgent, with deadlines of less than one week. Copies of some of these requests are included within Exhibit 11 of the Joint Motion.

48. Plaintiffs promptly responded to these requests, with one exception as noted in the next paragraph. Exhibits 11 and 12 of the Joint Motion includes responses to the requests also included in that exhibit. As Exhibit 12 demonstrates, APF was among the Defendants serving such discovery, and Plaintiffs promptly responded by identifying statements of APF. Neither API nor EurAupair served similar requests. Plaintiffs completed these responses on April 6, 2015.

49. Plaintiffs did not respond to the Rule 26(b)(3)(C) request by Defendant AuPairCare, Inc. (AuPairCare). AuPairCare served Plaintiffs with this request on March 31, 2015. The request sought a response by April 8, 2015. On April 1, 2015, I sent an email to counsel for all Sponsors, including counsel for AuPair Care. The email said, "At this point I believe I responded to all of the discovery requests I received last week pursuant to FRCP 26(b)(3)(C). If you have not received a response and you served me with a request, please let me know. I'll correct the oversight asap." I attach to this declaration as Exhibit A a true and complete copy of the email. I never received a response from AuPairCare to my email.

50. Plaintiffs invited several defendants to serve discovery requests to obtain further information regarding the admissions. I attach to this declaration as Exhibit B a true and complete copy of a letter I sent counsel for American Cultural Exchange LLC

d/b/a Go Au Pair and Agent Au Pair, Inc. on April 1, 2015.  The letter states, "If Go Au Pair and Agent Au Pair are making demands under Rules 33 or 34 of the Federal Rules of Civil Procedure, please clarify that they are doing so, and Plaintiffs will respond in accordance with those rules."  I attach to this declaration as Exhibit C a true and complete copy of a similar letter I sent counsel for APF and Au Pair in America on April 6, 2015.  The letter states:  "[T]hese requests for additional information appear to be requests for the production of records, or requests that Plaintiffs answer particular questions. If so, please indicate that defendants are making demands under Rules 34 or 33 of the Federal Rules of Civil Procedure. Plaintiffs would then act promptly to address any such requests, in accordance with those rules."  However, none of the defendants served discovery for information beyond their Rule 26(b)(3)(C) requests.

51.     On April 10, 2015, shortly after I sent Plaintiffs' responses to Defendants' various Rule 26(b)(3)(C) discovery requests, Defendants informed me that they would seek to stay all discovery.

52.     Defendants requested a stay from the Court at a conference on April 17, 2015.  At that point, no Defendant had responded to Plaintiffs' discovery requests, which I had served on all Sponsor Defendants on March 19, 2015, and which were due within a week of the April 17 conference.

53. As a result of the temporary stay granted by the Court, the only discovery responses delivered in this matter have been Plaintiffs' responses to the Defendants' Rule 26(b)(3)(C) requests.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 13, 2015
Denver, Colorado

/s/ Alexander N. Hood