IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.,

Plaintiffs,

v.

INTEREXCHANGE, INC. et al.,

Defendants.

**DEFENDANTS' REPLY TO PLAINTIFF'S
RESPONSE TO MOTION TO STRIKE (DOC. 147)**

Defendants InterExchange, Inc., USAuPair, Inc., GreatAuPair, LLC, Cultural Homestay International, APF Global Exchange, NFP, American Institute For Foreign Study d/b/a Au Pair In America, Agent Au Pair, American Cultural Exchange, LLC d/b/a Go Aupair, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc. d/b/a Cultural Au Pair and Expert Group International, Inc. d/b/a Expert AuPair (collectively, "Moving Defendants") hereby Reply to Plaintiff's Response to Motion to Strike (Doc. 147) ("Response").

**INTRODUCTION**

Plaintiffs' Response only bolsters the grounds for this Motion. Plaintiffs admit their counsel hired an investigator to call certain defendants. They admit he did this shortly after the suit was commenced but prior to service. They admit that counsel retained the investigator to secure admissions against interest. They admit their investigator made no effort to determine if the party had retained counsel. They also admit their investigator did not identify the nature or purpose of his call, but rather asked purported directors of certain defendants leading questions central to the core issues in this litigation.

1

Given these four material admissions, the issues before this Court are narrow: Can Plaintiffs rely on "willful ignorance" to justify (1) commencing a potentially massive national class action lawsuit, and (2) thereafter contacting defendants to obtain admissions before receiving formal notice that the parties were represented by counsel. Plaintiffs request the adoption of a rule imposing the obligation on Defendants to notify Plaintiffs of representation before it can be improper for them to initiate surreptitious contacts with Defendants' principals. This is not the law.

## ARGUMENT AND AUTHORITIES

### I. Plaintiffs Rely on Inapplicable and Discredited Authority.

Plaintiffs' rely on three cases for their proposition that their counsel did not violate Rules 4.2 and 4.3: *Apple Corps v. Int'l Collectors Soc'y,* 15 F.Supp.2d 456, 474 (D.N.J.1998), *Gidatex, S.r.L v. Campaniello Imports, Ltd.,* 82 F. Supp.2d 119 (S.D.N.Y. 1999), and *Cartier v. Symbolix, Inc.,* 386 F.Supp.2d 354 (S.D.N.Y. 2005). However, each case is distinguishable, and none of the three cases support the conduct at issue.

### A. Plaintiffs cite inapplicable cases in which investigators contacted "low-level" employees in "ordinary business transactions."

All three cases cited by Plaintiffs involved allegations of trademark infringement where the plaintiffs' investigator contacted the defendant solely to purchase an infringing item available for sale to the public. In each case, the investigator simply ordered a product from the defendant without misrepresenting his intent (in *Cartier,* the contact occurred two months *before* the complaint was filed). In each case, the investigator's contact was with a sales clerk or other "low-level employee" who did not have authority to make admissions that would bind the corporate defendant under Fed.R.Evid. 801(d)(2).

2

*See Apple,* 15 F.Supp.2d at 474-475 ("RPC 4.2 cannot apply where lawyers and/or their investigators, seeking to learn about current corporate misconduct, act as members of the general public to engage in ordinary business transactions with low-level employees of a represented corporation."); *Gidatex* 82 F.Supp.2d at 121 ("On December 15, 1997, Peterson again visited Campaniello's 57th Street showroom and taped her conversation with an unidentified female sales clerk.").

In the instant case, however, the acts of Plaintiffs' Counsel and his investigator were not so innocently undertaken, nor were they limited to low-level employees. The court in *Apple* emphasizes the critical distinction that Plaintiffs overlook:

> Defendants' sales representatives do not fall within the "litigation control group" as defined by RPC 1.13. The sales representatives were not "responsible for or significantly involved in the determination of [ICS]'s legal position in the matter." *See* RPC 4.2.

*Apple,* 15 F.Supp.2d at 474. Conversely, the Plaintiffs' Amended Complaint specifically alleges their investigator spoke with "directors" of various Defendants, and clearly treats those directors as persons with authority to bind the Defendants that employ them. *See* First Amended Complaint (Doc. 101), at ¶¶ 90-94. These facts render the conduct here fundamentally different than the conduct at issue in *Apple* and Plaintiffs' other authority.

Further, a number of other federal courts have distinguished the Plaintiffs' cases precisely because they involve contact with "low-level employees" merely by ordering products. For example, *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,* 144 F.Supp.2d 1147, 1158 (D.S.D.2001) involved an attempt by an investigator to elicit admissions directly from a managerial employee:

> The interviews with "Bill", a salesman for Plaintiff, *do violate the standards now clearly established by the Court.* The statements taken from Bill were in part an

3

> attempt to elicit admissions against his employer, the Plaintiff. The interview with Bill would be prohibited under the fifth circumstance set forth above as *the investigator was intended by the defense counsel to elicit admissions.* A standard only now being clearly established is not the basis for these sanctions. The sanctions are supported by the interviews which took place under false pretenses, as *such interviews are clearly prohibited by Rule 4.3 of the South Dakota Rules of Professional Conduct.*

*Midwest,* 144 F.Supp.2d at 1158 (emphasis added).[1] That the attorney used an investigator did not make his conduct ethical:

> The ABA's Formal Opinion 95-396 goes on to state: A lawyer may not direct an investigative agent to communicate with a represented person in circumstances where the lawyer herself would be prohibited from doing so. . . . Because the attorneys could not contact Becker directly without permission, the investigator could not do so either.

*Id.* at 1158 (emphasis added). The court clearly stated that this type of conduct is expressly forbidden by Rules 4.2 and 4.3 in instances where the intent is to contact a represented party or mislead an unrepresented party in order to gain a litigation advantage by procuring admissions that can only be obtained from an organizational representative in a position of authority to bind the defendant. Counsel admits that was the very purpose for making these contacts. *See* Hood Declaration (Doc. 147-1) at ¶¶ 6-10.

### B. Plaintiffs' investigator unequivocally misled Defendants' directors in violation of Rules 4.3 and 8.4.

In addition to expressly and intentionally seeking to gain admissions from director level employees with the power to bind the Sponsor Defendants, Plaintiffs' investigator

---

[1] Plaintiffs attempt to distance themselves from *Midwest* by claiming that Defendants rely on a "non-existent" circuit court decision. This argument mischaracterizes the district court's decision, which found that the misrepresentations violated Rule 4.3 ("interviews are clearly prohibited by Rule 4.3") and ignores that the Eighth Circuit **affirmed** the sanctions for violations of Rule 4.2 and 4.3. *Midwest Motor Sports v. Arctic Cat, Inc.,* 347 F.3d 693, 700 (8th Cir. 2003). Regardless of whether the appellate court's decision mentioned Rule 4.3, its affirmance clearly endorses the district court's rationale.

affirmatively deceived and misled Defendants' directors to obtain substantive information that goes to the heart of this case, which is entirely distinguishable from the innocuous ordering of products in *Apple, Gidatex,* and *Cartier*. There is unquestionably a difference between merely ordering a product from a potentially adverse party that is freely available to the public on the one hand, and misleading the employee of an adverse party to provide substantively material admissions about the defendants' practices and policies, on the other. This distinction is clearly stated in *Apple*:

> There is no evidence that any of Plaintiffs' investigators asked the sales representatives any questions about instructions given or received with regard to Beatles/Lennon stamps. Plaintiffs' investigators did not ask the sales representatives about Defendants' practices or their own practices or policies with regard to Beatles/Lennon stamps. The sales representatives' communication with Plaintiffs' counsel and investigators were limited to recommending which stamps to purchase and accepting an order for Sell-Off Stamps. The investigators did not ask any substantive questions other than whether they could order the Sell-Off Stamps.

*Id.,* 15 F.Supp2d at 474. Here, Plaintiffs' investigator's improper calls were designed to trick defendants' agents into making statements they would not otherwise have made. The contacts were, by their very nature, deceptive and misleading. The failure to disclose this crucial information deprived Defendants' representatives of the ability to consult legal counsel before responding to the investigator's inquiry. As stated in *Gidatex*, 82 F.Supp.2d at 126:

> Gidatex's investigators *did not interview the sales clerks or trick them into making statements they otherwise would not have made.* Rather, the investigators merely recorded the *normal business routine* in the Campaniello showroom and warehouse. (emphasis added).

Here, while Defendants' representatives may have some knowledge of how the Departments of State and Labor figured their guidelines in setting the au pair stipend, they are not in the habit of explaining or attempting to explain the legal and regulatory

5

mechanics of the au pair industry's pay system–much less explaining those mechanics to opposing counsel in a complex lawsuit. And, far from purchasing a product, the investigator engaged persons for the specific purpose of eliciting "admissions."

By failing to disclose crucial information to Defendants' representatives, Plaintiffs' investigator made misrepresentations by omission. Thus, whether or not Defendants' directors were "represented," Plaintiffs' conduct was deceptive and misleading in violation of Rules 4.3 and 8.4. *Midwest Motor Sports v. Arctic Cat, Inc.,* 347 F.3d 693, 700 (8th Cir. 2003) ("Arctic Cat was using Mohr's undercover ruse to elicit damaging admissions from Elliott's employee and A-Tech's president to secure an advantage at trial. *Such tactics fall squarely within Model Rule 8.4(c)'s prohibition of "conduct involving dishonesty, fraud, deceit or misrepresentation."*) (emphasis added).

Other courts have made it clear that deceptive and misleading conduct such as that present here violates the ethical rules.

> Although *Midwest Motor Sports* is considerably more restrictive than *Gidatex,* we think there is a discernable continuum in the cases from clearly impermissible to clearly permissible conduct. *Lawyers (and investigators) cannot trick protected employees into doing things or saying things they otherwise would not do or say.* They cannot normally interview protected employees or ask them to fill out questionnaires.

*Hill v. Shell Oil Co.,* 209 F.Supp.2d 876, 880 (N.D.Ill.2002) (emphasis added). *See also U.S. v. Smallwood,* 365 F.Supp.2d 689, 696 (E.D.Va.2005) ("[N]either an attorney nor his agent can mislead an unrepresented employee into believing that they are a disinterested party when the attorney is acting on behalf of his client.")

Here, the investigator for Plaintiffs' counsel deceived the representatives of the Defendants by affirmatively misrepresenting himself as a consumer and failing to disclose

6

that he was working on behalf of an attorney. At the very least, Plaintiffs' counsel knew the contacted defendants were adverse parties, particularly since he had filed the Complaint less than 10 days earlier. His actions were calculated to take advantage of parties he knew were or imminently would be represented, since service was initiated on November 20, 2014, the same day as the first call. (Doc. 8).[2] Accordingly, Plaintiffs' deception violates Rules 4.3 and 8.4.

### C.  Plaintiffs' counsel should have known Defendants were represented.

Although Plaintiffs' counsel argues he did not know the contacted Defendants were represented, in fact, he did or should have. *Gidatex* identifies the context of the inappropriate contact as a factor that should be considered, and which may impact the analysis of whether counsel can credibly claim ignorance. In *Gidatex*, the court noted that a plaintiff may not adhere to the technical argument that defendant had not yet specifically retained counsel to represent it in that particular suit because "it was unrealistic" to assume that counsel had not been retained. *Gidatex,* 82 F.Supp.2d at 125. At the very least, Plaintiffs' counsel knew the contacted defendants were adverse parties, particularly because he had filed the Complaint less than 10 days earlier. His actions were calculated to take advantage of parties he knew were or soon would be represented.

Moreover, once a complaint has been filed, the only permissible methods of obtaining admissions directly from a party-opponent under the Federal Rules of Civil Procedure are depositions under Fed.R.Civ.P. 30, interrogatories under Fed.R.Civ.P. 33,

---

[2]Plaintiffs attempt to use this Motion to constitute admissions that the investigators' representations of the contacts, as expressed in the First Amended Complaint, are true and accurate.  Of course, no defendant has answered any operative complaint, and the veracity of any such allegations would be then admitted or denied as necessary.

7

and requests for admissions under Fed.R.Civ.P. 36. All of these methods contemplate that the party's counsel will be involved in responding to discovery requests. However, by initiating contact directly with Defendants' representatives in order to obtain admissions from them, Plaintiffs' counsel circumvented the discovery process, as well as the Federal Rules that govern it, thereby eliminating the ability of defense counsel to serve as a "filter" and object to improper requests for admissions. This is yet another reason why the Motion to Strike should be granted: to preclude the use of improperly obtained admissions. *See Midwest*, 144 F.Supp.2d at 1158.

## II.  Case Law in Fact Supports "Evidentiary" Sanctions or Striking of Pleadings.

Plaintiffs' counsel asserts that the requested relief is not permitted. In fact, federal courts routinely award evidentiary sanctions in such cases. In *Allen v. Int'l Truck & Engine,* 2006 U.S.Dist.LEXIS 63720, 20-21 (S.D.Ind.2006) and *In re Air Crash Disaster near Roselawn,* 909 F.Supp. 1116, 1123-24 (N.D.Ill.1995), both addressing Rule 4.3 and Rule 8.4 violations, the district courts issued sanctions striking or excluding evidence obtained in violation of ethical rules. Similarly, Plaintiffs' counsel ignores that in *Midwest Motor Sports v. Arctic Cat, Inc.,* 347 F.3d 693, 701 (8th Cir. 2003), the Eighth Circuit affirmed the lower court's evidentiary sanctions as well:

> Having determined that *the district court properly disallowed Mohr's recordings or any evidence gleaned from those recordings* to be introduced into evidence, we now turn to Elliott and A-Tech's argument advanced in their appeals that the district court abused its discretion by failing to award monetary sanctions.

Thus, Plaintiffs' contention that the requested relief is unsupported should be disregarded.

Finally, the article cited by Plaintiffs' counsel, D.B. Isbell and L.N. Salvi, *Ethical Responsibility of Lawyers for Deception by Undercover Investigators and Discrimination*

8

*Testers: An Analysis of the Provisions Prohibiting Misrepresentation Under the Model Rules of Professional Conduct*, 8 Geo. J. Legal Ethics 791 (1995) has been disapproved by a number of courts and should be given no weight. In *In re Crossen,* 880 N.E.2d 352, 378 n.41 (Mass. 2008), the Court noted:

> [The article] seems not to have garnered much judicial support. In the thirteen years since its publication, it has been cited by three Federal trial courts and one State court, and generally in connection with matters of dicta.
>
> Since 2008, the article has been cited only five times (including *Crossen* and a related case), and in none of those cases was the article cited favorably by the Court.

Accordingly, this "authority" should be disregarded. Plaintiffs' counsel's conduct, through his use of an investigator, violates Rules 4.2, 4.3, and 8.5 of the Colorado Rules of Professional Conduct; therefore, the Court should grant the Defendants' Motion to Strike.

### III.    All Joining Defendants Have Standing.

Plaintiffs contend that only Moving Defendants API and APF have standing to support this Motion. The standing of any one Moving Defendant is sufficient to carry the Motion and the requested relief. The response admits that two Moving Defendants have standing. However, each Moving Defendant does have standing.

As the court noted in *In re Perlin*, 30 F.3d 39, 41 (6th Cir.1994), standing "is a rather vague concept that defies precise formulation," but requires that a plaintiff have a personal stake in the outcome of the litigation. *See Baker v. Carr,* 369 U.S. 186, 204–08 (1962). While the conduct at issue pertains to contacts made to API and APF, who join the motion, and to EurAupair, who did not, the First Amended Complaint seeks to attribute the alleged admissions as a conspiracy applicable to all Defendants equally, without identifying the Defendant, witness, or representative at issue. *See* Joint Motion to Dismiss

9

(Doc. 135) Section IV(D)(2) at 14-16) ("The So-Called Admissions Should Be Ignored"). Plaintiffs wish to use the so-called admissions against all Defendants, without qualification, to avoid their Rule 12(b)(6) motions. Plaintiffs cannot have it both ways; they should not be permitted to attribute the statements to all Defendants to allege a conspiracy involving all defendants in the Complaint, but in response to this Motion to seek to isolate the statements to the three contacted Defendants. All Moving Defendants have an interest in striking allegations that Plaintiffs seek to use against them.

## CONCLUSION

Plaintiffs' Counsel violated Rules 8.4(a), 8.4(c), 4.2, and 4.3, of the Colorado Rules of Professional Conduct. The Court should invoke its inherent power to strike the offending paragraphs in the Amended Complaint and to issue such other relief as the Court may find appropriate. Plaintiffs' Counsel admits his interests were adverse to the Directors he retained an investigator to contact. He admits that he did nothing to inform them of the nature of his inquiry, and defiantly opines that he was under no obligation to do so. He deliberately timed his contacts and service on the sponsor Defendants to cloak his actions with legitimacy and turn a blind eye to the fact that each of these Defendants was or soon would be represented by counsel. Striking the Alleged Statements places Defendants where they would have been, absent the improper communication.

**WHEREFORE**, Moving Defendants pray that this Court enter an Order striking ¶¶ 90-94 of the Amended Complaint and issue such further orders or grant such further relief as may be necessary and appropriate in law and equity, and that the Court award attorney fees and costs attributable to this motion.

Respectfully submitted this 1st day of June, 2015.

*s/William J. Kelly III*
William J. Kelly III
Chanda M. Feldkamp
KELLY & WALKER LLC
1512 Larimer Street, Ste. 200
Denver, CO 80202
Phone: 720-236-1800
Email: wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

**Attorneys for Defendant USAuPair, Inc.**

*s/Brooke A. Colaizzi*
Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
SHERMAN & HOWARD, LLC
633 17th Street, Suite 3000
Denver, CO 80202
Phone: 303-297-2900
Email: bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com

**Attorneys for Defendant InterExchange, Inc.**

*s/Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin Estevao
GREENBERG TRAURIG, LLC
1200 17th Street, Suite 2400
Denver, CO 80202
Phone: 303-572-6500
Email: rhoadesm@gtlaw.com
estevaom@gtlaw.com

**Attorneys for Defendant GreatAuPair, LLC**

*s/James E. Hartley*
James E. Hartley
Mher Hartoonian
Joseph Neguse
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: 303-295-8000
Email: jhartley@hollandhart.com
mhartoonian@hollandhart.com
jneguse@hollandhart.com

**Attorneys for Defendant Cultural Homestay International**

*s/Daniel C. Perkins*
Daniel C. Perkins
Lawrence L. Lee
FISHER & PHILLIPS LLC
1801 California Street, Suite 270
Denver, CO 80202
Phone: 303-218-3650
Email: dperkins@laborlawyers.com
llee@laborlawyers.com

**Attorneys for Defendants APF GlobalExchange, NFP and American Institute for Foreign Study d/b/a AuPair In America**

*s/Kathryn A. Reilly*
Kathryn A. Reilly
Torin G.E. Mushovic
WHEELER TRIGG O'DONNELL, LLP
370 17th Street, Suite 4500
Denver, CO 80202
Phone: 303-244-1800
Email: reilly@wtotrial.com
mushovic@wtotrial.com

**Attorneys for Defendants Agent Au Pair and American Cultural Exchange, LLC d/b/a Go Aupair**

11

<table>
<tr><td>

s/Brian A. Birenbach
Brian A. Birenbach
REITZ LAW FIRM, LLC
P.O. Box 5268
Dillon, CO 80435
Phone: 970-468-0210
Email: brian@reitzlawfirm.com

**Attorneys for Defendants American Cultural Exchange, LLC d/b/a Go Aupair and Au Pair International, Inc.**

s/Brian T. Moore
Brian T. Moore
JESTER GIBSON & MOORE, LLP
1999 Broadway, Suite 3225
Denver, CO 80202
Phone: 303-377-7888
Email: bmoore@jgllp.com

**Attorneys for Defendant Au Pair International, Inc.**

s/Walter V. Siebert
Walter Vernon Bernie Siebert
SHERMAN & HOWARD, LLC
633 17th Street, Suite 3000
Denver, CO 80202
Phone: 303-297-2900
Email: bsiebert@shermanhoward.com

**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Au Pair**

</td><td>

s/John R. Mann
John R. Mann
Thomas B. Quinn
GORDON & REES, LLP-DENVER
555 17th Street, Suite 3400
Denver, CO 80202
Phone: 303-534-5160
Email: jmann@gordonrees.com
          tquinn@gordonrees.com

**Attorneys for Defendant AuPairCare, Inc.**

s/Jeffrey P. Allen
Jeffrey P. Allen
Donald J. Gentile
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
Phone: 617-439-4990
Email: jallen@lawson-weitzen.com
          dgentile@lawson-weitzen.com

**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Au Pair**

s/Bogdan Enica
Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
111 2nd Avenue NE, Suite 213
St. Petersburg, FL 33701
Phone: 727-225-2649
Email: bogdane@hotmail.com

**Attorneys for Defendant Expert Group International, Inc. d/b/a Expert AuPair**

</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Alexander Neville Hood
TOWARDS JUSTICE-GOLDEN
alex@towardsjustice.org

Susan Penniman Klopman
H & K LAW, LLC
sklopman@hklawllc.com

Brian T. Moore
JESTER GIBSON & MOORE LLP
BMoore@jgllp.com

Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
W.V. Bernie Siebert
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
bsiebert@shermanhoward.com

Bogdan Enica
EXPERT AUPAIR
Bogdan@expertaupair.com

Martha Louise Fitzgerald
Kathryn Anne Barrett
BROWNSTEIN HYATT FARBER SCHRECK, LLP
mfitzgerald@bhfs.com
kbarrett@bhfs.com

Lawrence L. Lee
Daniel C. Perkins
FISHER & PHILLIPS LLP
llee@laborlawyers.com
dperkins@laborlawyers.com

Jeffrey Paul Allen
Donald J. Gentile
LAWSON & WEITZEN, LLP
jallen@lawson-weitzen.com

William James Kelly, III
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

Kathryn A. Reilly
Torin G.E. Mushovic
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
mushovic@wtotrial.com

Lawrence D. Stone
Christian D. Hammond
DUFFORD & BROWN, P.C.
lstone@duffordbrown.com'
chammond@duffordbrown.com

Meshach Y. Rhoades
Martin Estevao
GREENBERG TRAURIG, LLP
rhoadesm@gtlaw.com
estevaom@gtlaw.com

*s/Daniel C. Perkins*
Daniel C. Perkins