**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *et al.*

    Plaintiffs,

v.

INTEREXCHANGE, INC.. *et al.*;

    Defendants.

---

**PLAINTIFFS' CONSOLIDATED RESPONSE TO THE DEFENDANTS' MOTIONS FOR PROTECTIVE ORDERS AND TO STAY DISCOVERY**

---

**Preliminary Statement**

The Court should reject the defendants' motions for protective orders and to stay discovery.[1] The defendants' requests are not supported by either the facts of this case or by the law. Judges in this district have repeatedly made clear that stays of discovery while motions are pending are disfavored. They have also made clear that a defendant can overcome this hurdle only when they can demonstrate that a pending motion to

---

[1] In this submission, "the Defendants" refers to all of the defendants, who have moved for protective orders and stays of discovery in four separate submissions. Cultural Care's June 4, 2015 Motion for a Protective Order is hereafter referred to as "Cultural Care Br." The June 9, 2015 Joint Motion filed by Defendants A.P.EX American Professional Exchange, LLC, and other named defendants is hereafter referred to as "A.P.EX Br." The June 12, 2015 Joint Motion filed by Defendants InterExchange, Inc. ("InterExchange") and other named defendants is hereafter referred to as "InterExchange Br." Defendant EurAupair's June 16, 2015 Motion for Joinder in the InterExchange submission is hereafter referred to as "EurAupair Mot."

1

dismiss can be decided entirely on jurisdictional or qualified immunity grounds. None of the defendants can show that these exceptions to the presumption against stays of discovery are applicable here. Indeed, the defendants have failed to cite a single case where a stay of discovery was granted in an analogous case. The defendants have also ignored the fact that, at this stage of the litigation, the Court is required to take the allegations of the Complaint as true. Instead, the defendants invite the Court to act in contravention of the Rules and treat the defendants' self-serving version of the facts as the record truth. In short, the defendants have not come close to meeting their burden with regard to this motion, and throughout their motions they have misstated or misapplied the law. The Court should reject the defendants' applications.

## Background

As set out in the Complaint, the J-1 visa program, created under the Mutual Educational and Cultural Exchange Act of 1961, was designed to foster cultural exchange between nations. (Compl. ¶1).[2] It includes a number of separate programs, including the au pair program and other related programs. The au pair program is open to foreign nationals between the ages of 18 and 26 who are proficient in English and who have at least a secondary school education. (*Id.* ¶44). Au pairs provide child care services to "host families" for no more than 45 hours per week, in exchange for room and board and a legal wage. (*Id.* ¶¶44).

---

[2] "Complaint" refers to the March 13, 2015 First Amended Complaint filed by Plaintiffs.

The State Department has authorized 15 "sponsor" organizations as the exclusive entities authorized to recruit and place au pairs; any foreign national seeking a position as an au pair must be sponsored by one of these 15 entities. (*Id.* ¶¶45-46). The sponsors, the defendants in this action, are a mix of for-profit and not-for-profit entities, which generate their revenue from fees paid by both au pairs for entry into the program and fees paid by host families for placement of an au pair. (*Id.* ¶¶47).

The State Department's regulations mandate that "[s]ponsors shall require that au pair participants [a]re compensated at a weekly rate based upon 45 hours of child care services per week and paid in conformance with the requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor." 22 C.F.R. § 62.31(j)(1). (*Id.* ¶48). The FLSA requires, among other things, that employees be paid the federal minimum wage. ((*Id.* ¶¶4, 62).

Notwithstanding this requirement, the sponsor agency defendants have uniformly determined that au pairs are to be paid $195.75 per week, which is less than the federal minimum wage, not to mention many state minimum wages. (*Id.* ¶¶90, 91, 93, 95). Each of the defendants, moreover, offers au pairs at precisely the same rate regardless of location, without respect to cost of living, supply, or demand – and regardless of job description, such that an au pair responsible for four children earns exactly the same as one responsible for one. Indeed, the defendants have boasted about this fact in promotional materials. (*Id.* ¶¶118, 119). For example, one sponsor agency advertised that "no matter how many children you have, your costs are for hosting one au pair, not based on each child." (*Id.* ¶246). The government, however, has repeatedly clarified

that the programmatic wage floor (a) is a bare minimum stipend, and (b) does not trump either the FLSA or state minimum wage laws. In 2002, for example, the State Department published a notice that provided, among other things, that "the wage given an Au Pair must conform to minimum wage law and adjustments." (*Id.* ¶165).

There is significant evidence that the defendants have colluded to hold au pair wages at an illegal level. One defendant, for example, advises potential au pairs, in writing, that the wage would be "the same regardless of which au pair agency you use." (*Id.* ¶197). Moreover, as set out in the Complaint, in phone calls with individuals acting on behalf of Towards Justice, several of the sponsor agencies have made damaging admissions regarding their conduct. (*Id.* ¶90). In the course of those calls, individuals within the defendant entities admitted that there was an understanding between all of the sponsors to pay standard au pairs the same amount. (*Id.* ¶92). The sponsor explained that the government sets a minimum amount, but that all of the sponsors then agreed among themselves to pay exactly that minimum amount. (*Id.* ¶92). In a call to another sponsor agency, a director admitted that the sponsors "all agreed to pay that amount, no more." (*Id.* ¶91). Consistent with this agreement, each of the 15 sponsor agencies publicly advertises that its au pairs will be paid $195.75 per week. (*Id.* ¶95). Nevertheless, there is evidence that the defendants recognized that this amount is a programmatic wage floor, and not a set wage set by the government – several of the defendants, for example, also offer premium categories of experienced and highly educated au pairs at significantly higher rates. (*Id.* ¶171-173).

The defendants have also disseminated false information. For example, one agency has warned potential au pairs about activity by host families, stating: "[l]egitimate host families will also not offer you a higher stipend than what is listed in the State Department bulletin." (*Id.* ¶143). Another defendant has stated to au pairs: "don't let your excitement cloud your judgment. . . . Scams and fraud involve many techniques. . . . . They may make you offers that sound amazing, like paying you more than the program amount of $195.75 per week." (*Id.* ¶188). Another has stated unequivocally that "[a]ll au pairs earn a weekly stipend of $195.75 per week – this is a number determined by the U.S. State Department." (*Id.* ¶190).

## Discussion

### A.   Applicable Law

"A stay of all discovery is generally disfavored in this District." *Wason Ranch Corp. v. Hecla Mining Co.*, No. 07–cv–00267–EWN–MEH, 2007 WL 1655362 at *1 (D. Colo. Jun. 6, 2007) (denying motion to stay discovery in citizen suit under the Resource Conservation and Recovery Act of 1976 and the Federal Clean Water Act) (citing *Chavez v. Youn Am. Ins. Co.*, No. 06–2419, 2007 U.S. Dist. LEXIS 15054 (D. Colo. Mar. 2, 2007)). The Federal Rules indicate that a stay of discovery may be warranted only in a narrow set of circumstances, when it is necessary to "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Judges in this district have made clear that "there is no preference for staying a case simply because a party filed a motion to dismiss that alleges failure to state a

claim. A stay is preferred only when there is a jurisdictional or qualified immunity issue." *See, e.g., Randazzo v. CH2M Hill, Inc.*, No. 13–cv–03276–MSK–KLM, 2014 WL 928207 at *2. (D. Colo. Mar. 10, 2014) (denying motion to stay discovery in lawsuit involving Family Medical Leave Act (FMLA), Colorado-Anti-Discrimination Act (CADA), the Age Discrimination in Employment Act (ADEA), and other claims, observing that "there is only a jurisdictional issue with respect to the CADA claim"). The courts have also instructed that '[t]he underlying principle in determination of whether to grant or deny a stay clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'" *Christou v. Beatport, LLC*, No. 10–cv–02912–CMA–KMT, 2011 WL 650377, at *1 (D.Colo. Feb. 10, 2011) (quoting *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt.*, Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)).

> In assessing a motion for a stay of discovery, this district looks to five factors:
>
>> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending . . . litigation.

*Wason*, 2007 WL 1655362 at *1 (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No 02-CV-1934-LTB-PA, 2006 WL 894955 at *2 (D. Colo. Mar. 20, 2006)). The burden of demonstrating good cause for a stay of discovery rests entirely with the moving party under Rule 26. *See* Fed. R. Civ. P. 26(c); *Christou*, 2011 WL 650377 at *1

("A party seeking a protective order under Rule 26(c) has the burden of demonstrating good cause and cannot sustain that burden simply by offering conclusory statements . . . . [the moving party] must make a particular and specific demonstration of fact in support of its request") (internal citation and quotation marks omitted).

**B.    The Defendants Have Failed to Show That This Case Falls into One of the Narrow Exceptions to the Court's Disinclination to Enter Stays of Discovery**

As described above, the types of commonplace discovery burdens that the defendants have identified in this case are insufficient to warrant the extraordinary remedy of staying discovery. *See, e.g.*, *Randazzo*, 2014 WL 928207 at *2 ("A stay is preferred *only* when there is a jurisdictional or qualified immunity issue") (emphasis added). Here, none of the defendants have been able to show that their arguments for dismissal fall into the two narrow exceptions that the courts have identified to the general rule that discovery should not be stayed merely because a potentially dispositive motion to dismiss is pending. There are no jurisdictional or qualified immunity arguments here. This fact alone is dispositive.

Indeed, the defendants simply misapply the law where they argue, for example, that "[c]ourts have routinely recognized that discovery may be inappropriate while the issues of immunity or other jurisdictional questions are being resolved pursuant to a motion to dismiss." (Cultural Care Br. 11). The cases upon which the defendants rely, however, are in no way analogous – they do not involve similar claims or defenses to those at hand. Certainly, these cases do not stand for the broad proposition that discovery should be stayed whenever, as here, a defensive preemption argument is

raised. The Supreme Court's decision in *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991) (Cultural Care Br. at 11), for example, addressed a government official's qualified immunity defense and the related stay of discovery that was appropriate in that specialized situation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (Cultural Care Br. at 11), similarly addressed discovery only within the context of a suit against government actors; the case involved the qualified immunity defenses of presidential aides. The Tenth Circuit's decision in *Workman v. Jordan* also involved claims against government officials – in that case, executives in the Sheriff's office. 958 F.2d 332, 335 (10th Cir. 1992) ("The defense by a public official based on a claim of qualified immunity, if successful, protects the official both from liability as well as from the ordinary burdens of litigation, including far-ranging discovery")

None of these cases suggest that the types of arguments pressed by the defendants are somehow included within the narrow category of cases for which a stay of discovery is appropriate. Regardless, even if the defendants could demonstrate that certain of the plaintiffs' claims fell within the two appropriate stay categories (and they cannot), the existence of additional claims outside of these categories would negate any argument that discovery should be stayed. *Randazzo*, 2014 WL 928207 at *2. Here, of course, the defendants are in an even worse position than the *Randazzo* defendants, because they have not been able to demonstrate that *any* of their claims can be dismissed on jurisdictional or qualified immunity grounds. They certainly have not demonstrated that all of the claims against them can be so dismissed. This fact is dispositive and should lead the Court to reject the defendants' motions.

**C.     Consideration of the Relevant Factors Weighs in Favor of Finding That Defendants' Have Failed to Meet Their Burden**

**1.   The Defendants Have Failed to Demonstrate That the Need for a Stay Outweighs the Interests of the Plaintiffs in Proceeding Expeditiously**

Even if the Court considers the defendants' application in light of the five factors that are generally used to assess a motion to stay, these factors weigh in favor of the plaintiffs. First, there can be little question that the interest of the plaintiffs in proceeding expeditiously with this litigation is great. Similarly, the potential prejudice to plaintiffs of a delay is enormous. As set out in the Complaint, the defendants are engaged in an ongoing practice of exploiting a vulnerable group of temporary workers. (Compl. ¶2). These workers are currently surviving in this country on wages that are below the minimum living wage set by Congress. Any delay will only exacerbate the harm that accompanies the illegal wage situation that has been created by the defendants. Here, the burden is on the defendants to demonstrate that the plaintiffs will not be prejudiced by a delay. Their papers, however, offer almost no explanation on this point. Defendant Cultural Care, for example, argues merely that plaintiffs have received limited extensions in responding to the extensive briefing on the motions to dismiss. (Cultural Care Br. at 12).[3] They note that the current briefing schedule ends in mid-July. (Cultural Care Br. at 12). As is obvious, neither of these factors negates the prejudice to the plaintiffs of a delay in proceeding with discovery. Moreover, while briefing may end in

---

[3]     The A.P.EX defendants argue only that "if the motions are denied, Plaintiffs will have ample time to conduct discovery in this case." ("A.P.EX Br. at 10). This argument ignores potential prejudice and instead asks the Court to act in the interest of the defendants' convenience.

July, the defendants ignore that the Court will be required to take appropriate additional time to assess the briefs and render a decision. Essentially, the defendants' argument is that there can be no prejudice because the motion to dismiss will be decided at some point. This argument ignores the precedent indicating that the mere pendency of a motion to dismiss is not a valid reason for stopping discovery. *See, e.g., Randazzo* 2014 WL 928207 at *2 ("there is no preference for staying a case simply because a party filed a motion to dismiss that alleges failure to state a claim"). The defendants have not even attempted to explain how, taking the allegations in the Complaint as true, a delay could not significantly harm a group of vulnerable plaintiffs receiving improperly low wages, many of whom have limited ability to speak English. (Compl. ¶2). In sum, they have failed to demonstrate that the plaintiffs will not be prejudiced by a stay.

### 2. The Defendants Have Failed To Articulate Any Significant Burden

Although the defendants make much in their papers of the alleged difficulties imposed by the discovery requests of plaintiffs, the potential burden on the defendants here is in fact quite minimal – defendants have failed to demonstrate anything to the contrary. First, the defendants' briefs suggest that if their motions are denied, they will be required instantly to produce the entire universe of discovery. In fact, as the Court well knows, they will be required only to produce this discovery over time on a reasonable schedule. Simply getting this process started and moving expeditiously does not constitute a significant burden. Indeed, even considering the defendants' hyperbolic assessments of the entire scope of discovery, in the context of modern litigation involving antitrust claims and organizational defendants, even the 1.4 million pages of

documents that Cultural Care, for example, claims it may be required eventually to produce is not particularly shocking. *Cf., e.g. In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 274 n. 29 (3d Cir. 2009) ("Prior to the settlement, '[c]ounsel for the Plaintiffs obtained approximately 70 million pages of documents . . . including roughly 1.4 million pages of documents and volumes of data from the Gallagher defendants alone . . . . Plaintiffs' counsel also . . .conducted approximately 181 depositions in connection with the action.'"). The defendants have offered no detail as to how the documents are stored or their logistical expectations in terms of retrieving the information that plaintiffs seek. That Cultural Care has already been able to tally the approximate number of documents and pages to be produced, however, indicates that the defendants are likely dealing with primarily digital records that the defendants can reasonably manage. The A.P.E.X. defendants have offered only inaccurate and non-specific hyperbole regarding their burden. A.P.E.X. Br. at 9 ("the Plaintiffs' first interrogatory seeks a seemingly limitless amount of information"). The Interexchange defendants have cited the interrogatories that they have received as proof of a purportedly exceptional burden, and further echo the claim of a "limitless" discovery request. (InterExchange Br. 8-9). Again, none of this represents an extraordinary amount of discovery. As the Court is well aware, even the production of "millions of pages" of documents is well within the normal range for discovery in significant civil litigation in this district. *See, e.g., Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 289 (D. Colo. 1997) (describing discovery that had taken place in EEOC age discrimination suit: "extensive discovery has been completed by the parties, including

depositions; the EEOC has reviewed millions of pages of documents . . . . These factors support the conclusion that the settlement was the result of an informed and carefully considered decision by the Parties"); *Gates Rubber Co. v. Bando Chemical Industries*, Ltd., 167 F.R.D. 90, 109-10 (D. Colo. 1996) (noting with approval in trade secrets theft litigation defendants' production of "'millions of pages of documents' [that] were produced for review, inspection and copying"). Here, the defendants have fallen far short of meeting their burden of demonstrating that the plaintiffs' discovery requests will unduly burden them.

Finally, it is important to note that any potential burden on the defendants is mitigated by the fact that they have already received significant discovery from plaintiffs. In March of 2015, after being served with plaintiffs' still unanswered discovery requests, the defendants served plaintiffs with Rule 26(b)(3)(C) requests regarding the admissions gathered by a private investigator working on behalf of the plaintiffs. The damaging admissions that were the result of the private investigator's work are described in part above and are detailed in the Amended Complaint. Plaintiffs promptly responded to the defendants' discovery requests, and the defendants relied on those responses to file motions to strike aspects of the Complaint.[4] As is obvious, there is a fundamental unfairness to the defendants benefiting from significant discovery obtained from plaintiffs and then pressing the Court for a protective order and a stay. Were a stay to be granted, the defendants would be able to continue to investigate and benefit from the information they obtained from plaintiffs, while plaintiffs would be forced to simply

---

[4] These documents are attached as Exhibit A to this Response.

deal idly with the consequences of delay. This set of facts underscores that the burden of discovery on the defendants is low, while the unfair prejudice to plaintiffs of is high.

### 3. The Remaining Relevant Factors – Particularly the Public Interest – Weigh in Favor of Denying the Motions to Stay

First, denying the defendants' motions is the interests of the convenience of the Court and the efficient use of judicial resources. Any delay in proceeding with discovery will only lengthen the amount of time until the resolution of the case. It is in the interests of the Court for the parties to have the benefit of discovery as quickly as possible in order to be in the best position to confer about issues in the case and resolve questions without the intervention of the Court. The longer the parties wait to begin discovery, the more of this work that will need to be compressed into the time period before any motions for summary judgment or any trial. Those dispositive actions will be resolved most efficiently if the parties have had the full benefit of discovery and the time to appropriately assess the information that will be exchanged.

Second, the interest of the public in resolving this litigation expeditiously is enormous. At any given time, more than 10,000 au pairs live and work in the United States under conditions that are, as the Complaint alleges, unlawful. Any delay will only perpetuate those unlawful conditions to the detriment of the au pairs and, in many cases, their families abroad. At the same time, any delay also extends the period of uncertainty regarding appropriate payments for the thousands of host families. It is in the interest of this broad cross-section of the public to have discovery move forward as efficiently as possible. *Cf. Christou*, 2011 WL 650377 at *3 (denying motion for stay and

noting that "Plaintiffs claim the violations are ongoing and, therefore, argue that the public interest is best served by denying the stay"). For all of these reasons, a stay of discovery would not be in the public interest.

**D.    The Defendants Cannot Demonstrate that Discovery Should Be Stayed Based on the Purported Likelihood of Success on the Motions to Dismiss**

Certain of the defendants have argued, incorrectly, that discovery should be stayed because they are likely to succeed on their motions to dismiss. (InterExchange Br. 5; A.P.EX Br. 5). First, even assuming the defendants could demonstrate that their motions to dismiss are likely to succeed, the defendants' argument is based on a misunderstanding of the appropriate factors the Court should consider in assessing the defendant's application for a stay. The defendants cite *United Steelworkers v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003), for the proposition that the first factor the court should consider is the likelihood that the defendants will "prevail in the related proceeding." (InterExchange Br. 5; A.P.EX Br. 5). In that case, however, the Tenth Circuit was not addressing a motion for a stay of discovery. *See id.* at 1226-27. The plaintiff brought suit under the Clean Air Act ("CAA") at approximately the same time that the EPA and a Colorado agency brought parallel actions against the defendant. *Id.* at 1224. The Court of Appeals was addressing the appropriate considerations when determining whether "CAA enforcement proceedings, including citizen suits, may go forward while the defendant is seeking a variance of emissions requirements imposed by the EPA and state authorities." *See id.* at 1226. The case dealt with a relatively unusual situation involving claims in separate courts with distinct

parties. Here, in contrast, the Court has the commonplace situation of a defendant that has filed a motion to dismiss and is attempting to forestall discovery. But as described earlier, the courts have reiterated that discovery should not be halted "simply because a party filed a motion to dismiss that alleges failure to state a claim" *Randazzo*, 2014 WL 928207 at *2. The defendants have simply misstated the appropriate factors to be considered – their alleged likelihood of success is not one of these factors. This is for good reason: by the defendants' logic, the court would have to pre-assess every pending motion to dismiss whenever a defendant moves for a stay. Defendants, in turn, would have an incentive to file voluminous and complicated motions to dismiss, however meritless, with the knowledge that this would forestall indefinitely their obligation to participate in discovery. This is the precise situation that courts have attempted to avoid in holding that there is no preference for staying discovery while motions are pending.

Regardless, the burden was on the defendants to demonstrate the likelihood of their success, and they have utterly failed. In the two pages of the InterExchange brief on this subject, the defendants focus entirely on the purported lack of specificity of the plaintiffs' allegations. (InterExchange Br. 5-7). On its face, this argument is absurd, given the over 500 paragraphs of detail in the Amended Complaint. (Compl. ¶¶ 1-534).

## CONCLUSION

For all of the reasons described above, the Court should deny the defendants' motions for protective orders and for a stay of discovery.

DATED: June 24, 2015

        Respectfully submitted,

        BOIES, SCHILLER & FLEXNER LLP

        /s/ Randall W. Jackson
        Matthew L. Schwartz
        Peter M. Skinner
        Randall W. Jackson
        575 Lexington Avenue
        New York, New York 10022
        Tel: (212) 446-2300
        Fax: (212) 446-2350
        mlschwartz@bsfllp.com
        pskinner@bsfllp.com
        rjackson@bsfllp.com

        Sigrid S. McCawley
        Lauren Fleischer Louis
        401 East Las Olas Blvd., Suite 1200
        Fort Lauderdale, Florida 33301
        Tel.: (954) 356-0011
        Fax: (954) 356-0022
        cmccawley@bsfllp.com
        llouis@bsfllp.com

        Alexander Hood
        TOWARDS JUSTICE
        1535 High Street, Suite 300
        Denver, Colorado 80218
        Tel: (720) 239-2606
        Fax: (303) 957-2289
        alex@towardsjustice.org

        *Attorneys for Plaintiffs*[5]

---

[5] As of the date of this filing, Boies, Schiller & Flexner LLP has been engaged by named plaintiffs Johana Paola Beltran and Lusapho Hlatshaneni; we anticipate being engaged by the remaining named plaintiffs in the near future. Towards Justice continues to represent all named plaintiffs, and respectfully submits this filing on behalf of all named plaintiffs.

**Certificate of Service**

I hereby certify that on 6/24/15 I served a true and correct copy of the forgoing on the individuals below pursuant to Fed. R. Civ. P. 5.

| | |
|---|---|
| Raymond Myles Deeny<br>rdeeny@shermanhoward.com | William James Kelly, III<br>wkelly@kellywalkerlaw.com |
| Martha Louise Fitzgerald<br>mfitzgerald@bhfs.com | Daniel C. Perkins<br>dperkins@laborlawyers.com |
| James Edward Hartley<br>jhartley@hollandhart.com | Brian Alan Birenbach<br>brian@rietzlawfirm.com |
| John Roger Mann<br>jmann@gordonrees.com | Kathryn Anne Barrett<br>kbarrett@bhfs.com |
| Lawrence Daniel Stone<br>lstone@duffordbrown.com | Chanda Marie Feldkamp<br>cfeldkamp@kellywalkerlaw.com |
| Walter Vernon Bernie Siebert<br>bsiebert@shermanhoward.com | Mher Hartoonian<br>mhartoonian@hollandhart.com |
| Thomas Baker Quinn<br>tquinn@gordonrees.com | Bogdan Enica<br>bogdane@hotmail.com |
| Heather Fox Vickles<br>hvickles@sah.com | Jeffrey Paul Allen<br>jallen@lawson-weitzen.com |
| Lawrence L. Lee<br>llee@laborlawyers.com | Brooke A. Colaizzi<br>BColaizzi@shermanhoward.com |
| Brian Thomas Moore<br>bmoore@jgllp.com | Donald Joseph Gentile<br>dgentile@lawson-weitzen.com |
| Meshach Yustine Rhoades<br>rhoadesm@gtlaw.com | Erica Herrera Gutherz<br>egutherz@shermanhoward.com |
| Kathryn A. Reilly<br>reilly@wtotrial.com | /s/ Randall W. Jackson<br>Randall W. Jackson |