# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No.  1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN;
LUSAPHO HLATSHANENI;
BEAUDETTE DEETLEFS;
DAYANNA PAOLA CARDENAS CAICEDO;
ALEXANDRA IVETTE GONZALEZ;
and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

Defendants.

---

## DEFENDANT CULTURAL CARE, INC.'S OPPOSITION TO PLAINTIFFS' OPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO MOTIONS TO DISMISS

---

## I.  INTRODUCTION

This Court should deny Plaintiffs' Opposed Motion for an Extension of Time to Respond to Defendants' Motions to Dismiss (the "Extension Motion") because the appearance of new counsel to assist existing counsel, especially a mere 48 hours prior to Plaintiffs' deadline to respond to Cultural Care, Inc.'s ("Cultural Care") Motion to Dismiss, suggests mismanagement and/or gamesmanship and falls far short of "good cause" for an extension of time under Fed. R. Civ. P. 6.  KMT Civ. Practice Standard III.H.1 specifically provides that inconvenience to counsel does not constitute good cause for an extension unless it was "unanticipatable and unavoidable."  Plaintiffs have already received two extensions for a total of **70 days** to respond to Cultural Care's Motion to Dismiss, which extensions Cultural Care did not oppose.  Plaintiffs now demand an additional 28-day extension of time to respond while offering the blatantly conflicting argument in their contemporaneously filed Opposition to Motion for Protective Order that "there can be little question that the interest of the plaintiffs in proceeding expeditiously with this litigation is great. Similarly, the potential prejudice to plaintiffs of a delay is enormous."  *Opp to Mtn. Prot. Order (Docket No. 173) at 9.*  This is just the latest example in a pattern of delay tactics and concerning conduct on the part of Plaintiffs' counsel; for example, Plaintiffs' counsel avoided opposing Defendants' initial round of Rule 12(b)(6) motions by filing an amended complaint at 7:47 p.m. on the day the response was due without prior notice or conferral and, *after this lawsuit was filed,* engaged in improper and unethical contacts with several "directors" and "representatives" of certain defendants through a private investigator.  *Docket No. 101,*

2

*134.*   Plaintiffs have already postponed the filing of their opposition through June 26, 2015 by requesting and receiving two extensions and they have now hired new counsel (who unbeknownst to Defendants or the Court has actually been working on the case for over a week[1]) and request another 28-day extension.   In addition, Plaintiffs' suggestion that Defendants' motions for protective order, which were filed after the Motion to Dismiss, have "diverted their attention" from the opposition to Motion to Dismiss seems doubtful.   The motions for protective order are simple motions and it is disingenuous to suggest that opposing these simple motions could be so time consuming as to warrant another extension.   This is especially true given that Plaintiffs now have 6 lawyers with appearances in this case who apparently have been working on it for over a week and despite the fact that Plaintiffs only revealed them to Defendants and the Court less than 24 hours ago.[2]   A further extension would reward gamesmanship, delay the Court's timely consideration of threshold legal issues that will be dispositive of Plaintiffs' claims, and therefore unduly prejudice Cultural Care by prolonging this dubious lawsuit. Thus, no good cause exists for a further extension.

---

[1] Plaintiffs state on page 2 of the Extension Motion that "[o]n June 17, 2015, Plaintiff Johana Paola Beltran retained [Boies, Schiller & Flexner LLP] to represent her."

[2] Counsel also states on pages 4 and 5 of the Extension Motion that "[o]n June 15, 2015, following the publication of an article in the *Washington Post* describing the case, Plaintiff Beudette Deetlefs was summarily fired from her position as an au pair and was kicked out on the street by her host family" and counsel further claims that she is now "effectively homeless."   Unsurprisingly, Ms. Deetlefs was dismissed by her host family due to the article that Plaintiffs' counsel orchestrated in which she criticized her host family living situation in the national press.   Contrary to what Plaintiffs' counsel has represented to this Court, Ms. Deetlefs has never been homeless; rather, she is living in the home of a Cultural Care staff member.   Her situation is being handled pursuant to standard operating procedure and, in any event, the initial period of time for which she signed up for the program is nearly over.

## II.  FACTUAL AND PROCEDURAL OVERVIEW

### A.  Case Overview.

As explained in detail in Cultural Care's Motion to Dismiss and its previous filings with the Court, Cultural Care is a United States Government-designated exchange visitor program sponsor that conducts a U.S. Government cultural exchange program under which foreign au pair candidates are afforded the opportunity to live in the United States and participate in the home life of an American host family.   Au pairs are between 18 and 26 years old, are high school graduates, are proficient in English and, in addition to providing limited child care services, complete an educational requirement while in the program.   The program assists the U.S. Department of State ("DOS") in furthering the foreign policy objectives of the United States.   Plaintiffs are five alleged participants in the au pair program, two of which were allegedly placed by Cultural Care.   While Plaintiffs assert myriad claims against Cultural Care from antitrust to civil RICO, the claims lack any merit because they seek to fault Cultural Care for ensuring that host families paid au pairs the $195.75 weekly stipend amount, which amount was directed by DOS.

### B. Cultural Care's First Motion to Dismiss and Filing of Amended Complaint.

The initial Complaint in this case was filed on November 13, 2014 and asserted a Sherman Act claim against all Defendants.   The initial Complaint also alleged an FLSA claim, breach of fiduciary claim, and state law wage claims against InterExchange, Inc. ("InterExchange").   Cultural Care filed its initial Motion to Dismiss with the Court on February 20, 2015 (Docket No. 74) seeking dismissal of the Sherman Act claim based on immunity and defective pleading.   The fourteen other defendants also moved for

dismissal of the Sherman Act claim. *Docket Nos. 74, 82, 84, 85, 86, 97*. InterExchange also filed a separate motion to dismiss seeking dismissal of the FLSA, fiduciary duty, and state law wage claims based on, among other things, federal preemption, that InterExchange was not an "employer" under FLSA, that Colorado and New York wage and hour law did not apply, and that no fiduciary duty existed between the sponsor and au pair. *Docket No. 75*. InterExchange extensively briefed these issues.

Plaintiffs' counsel waited until the day that a response to the motion to dismiss was due and, instead of filing a response, filed a 102-page amended complaint at 7:47 p.m. without any conferral with Defendants in advance. This is after Defendants, pursuant to Judge Arguello's practice standards, had conferred with counsel prior to drafting the motions to dismiss and it was agreed that the alleged defects in the complaint could not be cured by amendment. The amended complaint added four additional plaintiffs and added, among other claims, FLSA, state law wage claims, and breach of fiduciary duty claims against Cultural Care. This Court ruled that the filing of the Amended Complaint rendered Cultural Care's Motion to Dismiss moot (Docket No. 106).

### C. Cultural Care's Second Motion to Dismiss and Plaintiffs' Extensions though June 26, 2015 to Respond.

Cultural Care filed its second Motion to Dismiss on April 17, 2015 (Docket No. 127). The Motion to Dismiss requests dismissal of all Plaintiffs' claims based on threshold legal issues. As the Defendants argued in the first round of motions, Cultural Care argues in the Motion to Dismiss, among other things, that i) it is immune from Plaintiffs' antitrust claims since it was following a federal mandate; ii) Plaintiffs have

failed to validly plead conspiracy under *Twombly*; iii) the state-law wage claims fail for, among other reasons, that they are preempted by federal law; iv) Plaintiffs' FLSA claims fail because they are in direct conflict with the DOS regulations and Cultural Care never "employed" au pairs for purposes of FLSA; v) Plaintiffs' various fraud and misrepresentation claims fail on their face because, among other things, the state claims are preempted and Cultural Care's representations were true based on the DOS regulations and directives; vi) Plaintiffs' breach of fiduciary duty claims are preempted and rife with other legal defects; and vii) the breach of contract claims are preempted and include glaring pleading defects.

May 11, 2015 was Plaintiffs' initial deadline to respond to the Motion to Dismiss. On April 30, 2015, Plaintiffs sought an extension through June 1, 2015 to respond, which was granted by the Court (Docket Nos. 139, 140).  On May 21, 2015, Plaintiffs sought a second extension through June 26, 2015 to respond, which was granted by the Court and is Plaintiffs' current response deadline (Docket Nos. 152, 157).  Cultural Care, as a professional courtesy, did not oppose either extension.  Plaintiffs have therefore been afforded 70 days to respond to the Motion to Dismiss.

### D. Plaintiffs' New Counsel Enters Appearances 48 Hours Before Response Deadline and Requests Additional 28-Day Extension.

On the evening of June 23, 2015, three days before Plaintiffs' opposition to Cultural Care's second Motion to dismiss was to be filed with the Court, Defendants' counsel received an e-mail from Plaintiffs' counsel, Alexander Hood, requesting a further 28-day extension of Plaintiffs' response deadline.  Attorney Hood explained in the e-mail that "Because of the magistrate's accelerated briefing schedule on the

motions to stay discovery, we have been forced to divert our attention to that response."
Attorney Hood made no mention in the e-mail of new counsel being retained.  Lead
counsel for Cultural Care, Jeffrey Allen, had a telephone conference with Attorney Hood
on the morning of June 24, 2015 in which Attorney Allen explained that all Defendants
opposed the extension request.  Attorney Hood made no mention of new counsel during
the telephone conference.  Attorney Hood then called Attorney Allen on the afternoon of
June 24th with new counsel on the line and explained for the first time that they had
been retained to be Mr. Hood's co-counsel in this lawsuit.  This is despite the fact that
Plaintiffs admit in their Extension Motion that Plaintiff Johana Paola Beltran retained
Boies, Schiller & Flexner LLP on **June 17, 2015**.  *Extension Motion at 2.*  New counsel
entered their appearances at approximately 5:30 p.m. on June 24th and shortly
thereafter filed the Extension Motion, where Plaintiffs' deadline to oppose Cultural
Care's Motion to Dismiss is June 26th

### III.  <u>LEGAL ARGUMENT</u>

This Court should deny the Extension Motion because the appearance of new
counsel, especially a mere 48 hours prior to Plaintiffs' deadline to respond to Cultural
Care's Motion to Dismiss falls far short of "good cause" for an extension of time under
Fed. R. Civ. P. 6.  A further extension would delay the Court's timely consideration of
threshold legal issues that will be dispositive of Plaintiffs' meritless case and therefore
unduly prejudice Cultural Care.

Fed. R. Civ. P. 6(b)(1) provides that "When an act may or must be done within a
specified time, the court may, for good cause, extend the time . . . ."  Courts have

concluded that the appearance of new counsel does not constitute good cause for an extension of deadlines.  *See Marcin Eng'g, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D. Colo. 2003) ("That new counsel is dissatisfied with the state of the case it inherited is not" good cause for action requested "long after the court-ordered deadlines have passed."); *Pownell v. Credo Petroleum Corp.*, 2011 WL 1656499, *2 (D. Colo. 2011); *see also Aircraft Fueling Systems, Inc. v. Southwest Airlines Co.*, 2011 WL 3421518, *1 (N.D. Okla. 2011).*Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981) ("The retention of a new attorney able to perceive or draft different or more creative claims from the same set of facts is itself no excuse for the late filing of an amended complaint).  In exercising discretion regarding enlargements of time, courts should be mindful that rules are intended to force parties and their attorneys to be diligent in prosecuting their causes of action; deadlines serve useful purpose and reasonable adherence to them is to be encouraged.  *Spears v City of Indianapolis,* 74 F.3d 153, 33 (7th Cir. 1996).

Here, the action of Plaintiffs in waiting until 48 hours prior to their filing deadline to disclose their retaining of new counsel, after seeking two extensions totaling 70 days to respond, speaks for itself and should not be rewarded by this Court, especially given counsel's prior delay tactics and concerning conduct.  Plaintiffs' gamesmanship can be seen on the face of their filings.  Plaintiffs argue on the one hand in the Extension Motion that they are unable to timely oppose Cultural Care's Motion to Dismiss while offering the opposite argument in their contemporaneously filed Opposition to Motion for Protective Order that discovery should not be stayed because "the potential prejudice to

plaintiffs of a delay is enormous." *Opp to Mtn. Prot. Orde. (Docket No. 173) at 9.* Plaintiffs are playing fast and loose with this Court and offering whatever argument suits them at any given time in an attempt to inappropriately delay dismissal of a defective amended complaint under Rule 12(b)(6). While this Court has discretion with respect to enlargements of time, a further extension is inappropriate in this case because Plaintiffs' counsel has been anything but diligent in prosecuting their case. Indeed, they have been avoiding opposing Rule 12(b)(6) motions since February. They have also had ample notice of the issues raised in Cultural Care's Motion to Dismiss since February when many of the same issues were briefed in the Defendants' first round of Rule 12(b)(6) motions. Plaintiffs' need for new counsel to assist with the Motion to Dismiss, to the extent it exists, was able to be anticipated for months. The fact that Plaintiffs have decided to hire new counsel 48 hours before their deadline, and have therefore created an emergency through their own actions is not good cause for this Court to further extend deadlines and unduly prejudice Defendants.

In addition, Plaintiffs' suggestion that Defendants' motions for protective order, which were filed after the Motion to Dismiss, have "diverted their attention" from the opposition to Motion to Dismiss is doubtful. The motions for protective order seek a stay of discovery pending disposition of the pending motions to dismiss. They are simple motions. When considering a stay of discovery, this Court considers five straight-forward factors[3] that are factual in nature and can be discussed in short order. It is

---

[3] The five factors are (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants;

disingenuous to suggest that opposing these simple motions could be so time consuming as to warrant another extension.  A further extension would delay the Court's timely consideration of threshold legal issues that will be dispositive of Plaintiffs' meritless case and therefore unduly prejudice Cultural Care. Thus, no good cause exists for a further extension.

## IV.  <u>CONCLUSION</u>

This Court should deny the Extension Motion because the appearance of new counsel, especially a mere 48 hours prior to Plaintiffs' deadline to respond to Cultural Care's Motion to Dismiss falls far short of "good cause" for an extension of time under Fed. R. Civ. P. 6.  A further extension would delay the Court's timely consideration of threshold legal issues that will be dispositive of Plaintiffs' meritless case and therefore unduly prejudice Cultural Care.

---

(3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See String Cheese Incident v. Stylus Shows, Inc.*, 02-cv-01934-LTB-PA, 2006 U.S. Dist. LEXIS 97388, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (emphasis added) (citation omitted).

Respectfully Submitted,


___s/ Jeffrey P. Allen_____
Jeffrey P. Allen
E-mail: jallen@lawson-weitzen.com
Donald J. Gentile
E-mail: dgentile@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue
Boston, MA 02210
Telephone: (617) 439-4990
Facsimile:  (617) 439-3987

-and-

W.V. Bernie Siebert
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Fax: (303) 298-0940
Email: bsiebert@shermanhoward.com

ATTORNEYS FOR DEFENDANT
CULTURAL CARE, INC.

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on June 25, 2015, I electronically filed the Defendant Cultural Care, Inc.'s Opposition to Plaintiffs' Opposed Motion for Extension of Time to Respond to Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Alexander Hood**
  alex@towardsjustice.org

- **Bogdan Enica**
  bogdane@hotmail.com

- **Brian A. Birenbach**
  brian@rietzlawfirm.com

- **Brian T. Moore**
  bmoore@jgllp.com

- **Brooke A. Colaizzi**
  bcolaizzi@shermanhoward.com

- **Chandra M. Feldkamp**
  cfeldkamp@kellywalkerlaw.com

- **Christian D. Howard**
  chammond@duffordbrown.com

- **Daniel C. Perkins**
  dperkins@laborlawyers.com

- **Donald J. Gentile**
  dgentile@lawson-weitzen.com

- **Heather F. Vickles**
  hvickles@shermanhoward.com

- **James E. Hartley**
  jhartley@hollandhart.com

- **Jeffrey P. Allen**
  jallen@lawson-weitzen.com

- **John R. Mann**
  jmann@gordonrees.com

- **Kathryn Anne Barrett**
  kbarrett@bhfs.com

- **Lawrence D. Stone**
  lstone@duffordbrown.com

- **Lawrence L. Lee**
  llee@laborlawyers.com

- **Martin J. Estevao**
  estevaom@gtlaw.com

- **Martha L. Fitzgerald**
  mfitzgerald@bhfs.com

- **Meshach Y. Rhoades**
  rhoadesm@gtlaw.com

- **Mher Hartoonian**
  mhartoonian@hollandhart.com

- **Raymond M. Deeny**
  rdeeny@shermanhoward.com

- **Thomas B. Quinn**
  tquinn@gordonrees.com

- **W.V. Bernie Siebert**
  bsiebert@shermanhoward.com

- **William J. Kelly III**
  wkelly@kellywalkerlaw.com

- **Lauren Fleischer Louis**
  llouis@bsfllp.com

- **Matthew Lane Schwartz**
  mlschwartz@bsfllp.com

- **Peter Murray Skinner**
  pskinner@bsfllp.com

- **Randall Wade Jackson**
  rjackson@bsfllp.com

- **Sigrid Stone McCawley**
  **smccawley@bsfllp.com**

s/ Jeffrey P. Allen

Jeffrey P. Allen