# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

     Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

     Defendants.

---

## [PROPOSED] CIVIL SCHEDULING ORDER

---

## 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

Date of Conference: July 6, 2015, at 9:45 am.

### Attorneys for All Plaintiffs

Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Tel: 212-446-2300
Fax: 212-446-2360
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
BOIES, SCHILLER & FLEXNER LLP

Alexander Hood
TOWARDS JUSTICE
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

1

401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel.: 954-356-0011
Fax: 954-356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

**Attorneys for Defendants**

For InterExchange, Inc.:

Brooke A. Colaizzi
Erica H. Gutherz
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Tel:  (303) 297-2900
Fax:  (303) 298-0940
bcolaizzi@shermanhoward.com
egutherz@shermanhoward.com

For GreatAuPair:

Meshach Y. Rhoades
Martin Estevao
Greenberg Traurig, LLP
1200 Seventeenth Street, Suite 2400
Denver, CO  80202
Tel: (303) 572-6500
rhoadesm@gtlaw.com
estevaom@gtlaw.com

For EurAupair Intercultural Child Care
Programs:

Martha Louise Fitzgerald
Kathryn Anne Barrett
Brownstein Hyatt Farber Schreck, LLP

For USAupair, Inc.

William James Kelly, III
Chanda Marie Feldkamp
Kelly & Walker, LLC
1401 Seventeenth Street, Suite 925
Denver, CO  80202
Tel:  (720) 236-1800
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

For Expert Group International, Inc.:

Bogdan Enica
Bogdan Enica, Attorney at Law
111 2nd Avenue NE, Suite 213
St. Petersburg, FL  33701-3440
Tel:  (727) 225-2649
bogdane@hotmail.com

For Cultural Homestay International:

James E. Hartley
Mher Hartoonian
Holland & Hart LLP
555 Seventeenth Street, Suite 3200

2

410 Seventeenth Street, Suite 2200
Denver, CO  80202
Tel:  (303) 223-1126
mfitzgerald@bhfs.com
kbarrett@bhfs.com

For Cultural Care, Inc.:

Jeffrey P. Allen
Donald J. Gentile
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA  02210
Tel:  (617) 439-4990
jallen@lawson-weitzen.com
dgentile@lawson-weitzen.com

For Cultural Care, Inc.:

W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Tel:  (303) 297-2900
bsiebert@shermanhoward.com

For Au Pair International, Inc.:

Brian Thomas Moore
Jester Gibson & Moore, LLP
1999 Broadway, #3225
Denver, CO  80202

Denver, CO  80202
Tel:  (303) 295-8000
jhartley@hollandhart.com
mhartoonian@hollandhart.com

For AuPairCare,Inc.:

John Roger Mann
Gordon & Rees, LLP
555 Seventeenth Street, Suite 3400
Denver, CO  80202
Tel:  (303) 534-5160
jmann@gordonrees.com

For APF GlobalExchange, NFP and
American Institute for Foreign Study:

Lawrence L. Lee
Daniel C. Perkins
Fisher & Phillips LLP
1801 California Street, Suite 2700
Denver, CO  80202
Tel:  (303) 218-3650
llee@laborlawyers.com
dperkins@laborlawyers.com

For 20/20 Care Exchange, Inc. and
A.P.E.X. American Professional
Exchange, LLC:

Lawrence D. Stone (by telephone)

3

Tel:  (303) 377-7888
bmoore@jgllp.com

Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO  80290
Tel:  (303) 861-8013
lstone@duffordbrown.com
chammond@duffordbrown.com

For Agent Au Pair and American
Cultural Exchange:

Kathryn A. Reilly
Toren G.E. Mushovic
Wheeler Trigg O'Donnell, LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202
Tel:  (303) 244-1800
reilly@wtotrial.com
mushovic@wtotrial.com

## 2. STATEMENT OF JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal

question) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs'

related claims under state law.

## 3. STATEMENT OF CLAIMS AND DEFENSES

### <u>Plaintiffs</u>

Plaintiffs allege various causes of action.  Without limiting any allegation in the

Amended Complaint in any way, the gravamen of Plaintiffs' allegations is that

Defendants conspired to depress wages for *au pair* services and restrain competition for

*au pair* labor, which had the effect of greatly, and illegally, reducing the compensation of

4

*au pairs*, among other damages.  These actions give rise to liability under several legal theories, summarized below.

Count 1:  Restraint of trade in violation of 15 U.S.C. §§ 1 *et seq.* brought by Plaintiffs and the Price Fixed Class against the Sponsor Defendants.[1]

Count 2:  Civil RICO in violation of 18 U.S.C. § 1964(c) brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, and Ms. Hlatshaneni and the Au Pair in America Fraud Wage Class against Au Pair in America.

Count 3:  Breach of fiduciary duty under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 4:  Negligent misrepresentation under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

---

[1] All capitalized terms have the definition given to them in the Amended Complaint.

Count 5:  Constructive fraud or fraudulent concealment under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 6:  Consumer protection under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 7:  Breach of contract and quasi contract under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 8:  Failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* brought by Ms. Beltran and the InterExchange 216(b) Class against InterExchange and the Noonans, Ms. Deetlefs, Ms.

6

Cardenas, the Culture Care 216(b) Class, and the Culture Care 216(b) Sub-Class against Culture Care, Ms. Hlatshaneni, the Au Pair in American 216(b) Class, and the Au Pair in America 216(b) Sub-Class against Au Pair in America, and Ms. Invette, the GoAuPair 216(b) Class, and the GoAuPair 216(b) Sub-Class against Au Pair in America.

Count 9:  Claims for unpaid wages under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange National Wage Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care National Wage Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America National Wage Class against Au Pair in America, and Ms. Invette and the GoAuPair National Wage Class against GoAuPair.

Count 10:  Violation of the New York Wage Act brought by Ms. Beltran and the InterExchange New York Wage Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Class New York Wage Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America New York Wage Class against Au Pair in America, and Ms. Ivette and the GoAuPair New York Wage Class against GoAuPair.

Count 11:  Unpaid wages under Colorado laws, including C.R.S. § 8-6-101, *et seq.*, *implemented by* 7 CCR 1103-1, C.R.S. § 8-4-101, *et seq.*, and common law contract and equitable principles, brought by Ms. Beltran against the Noonans.

**Defendants**

The Defendants are the entities designated by the U.S. Department of State ("DOS") as sponsors for DOS' J-1 Visa Exchange Visitor au pair program.  The au pair program is a cultural exchange program, which gives foreign nationals an opportunity to live with an American family for one year, experience American family life and culture, and continue their education.  In exchange, au pair exchange visitors live with the host family, receive room and board, and provide up to 45 hours of child care services for the family per week.  The host family pays the au pair exchange visitor a weekly stipend calculated by the U.S. Department of Labor and communicated to the Defendants by DOS.  The stipend constitutes 45 hours of work at the federal minimum wage, less a 40 percent credit for room and board.

Plaintiffs' First Amended Complaint, filed March 13, 2015, asserts the following claims:

(1) Against all Defendants, a class action antitrust claim;

(2) Against InterExchange, Inc. ("InterExchange"), Cultural Care, Inc. ("Cultural Care"), and American Institute for Foreign Study ("Au Pair in America"), a civil RICO claim; and

(3) Against InterExchange, Cultural Care, Au Pair in America, and American Cultural Exchange, LLC ("GoAuPair"), a series of overlapping claims:  The core of all of these claims is the weekly stipend; Plaintiffs allege that the stipend is a minimum that

8

must be supplemented if state minimum wage exceeds federal minimum wage, and that the deduction for room and board is prohibited by Department of Labor regulations. Plaintiffs also allege that these Defendants made various representations about the nature of the stipend.

>(a) A class action claim for breach of fiduciary duty under all states' laws;

>(b) A class action claim for negligent misrepresentation under all states' laws;

>(c) A class action constructive fraud/fraudulent concealment claim under all states' laws;

>(d) A class action consumer protection claim under all states' laws;

>(e) A class action breach of contract claim;

>(f) An FLSA collective action claim alleging failure to pay the federal minimum wage for all hours worked and failure to pay overtime;

>(g) A class action claim for unpaid wages under all states' laws; and

>(h) A class action claim for violation of the New York Wage Act for failing to pay for training time in New York.

Defendants have filed motions to dismiss all of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6).  With respect to the antitrust claim asserted against all Defendants, among other deficiencies, Plaintiffs lack standing to sue on all or a portion of the claims for relief asserted in the First Amended Complaint and are not the real parties in interest

to prosecute all or a portion of the claims for relief asserted in the First Amended Complaint.  Plaintiffs' claims are or may be barred by 15 U.S.C. § 6a; the alleged conduct of Defendants amounts or amounted to parallel conduct and is therefore not actionable under 15 U.S.C. § 1.  Plaintiffs have failed to allege any facts showing that Defendants reached any agreement with respect to the stipend.  To the contrary, the first amended complaint demonstrates that Defendants' treatment of the weekly stipend is not uniform.  Moreover, the fact that multiple defendants may instruct host families to pay the $195.75 weekly stipend established by the Department of State is entirely consistent with unilateral action.  The <u>Twombly</u> court specifically held that allegations like these do not suffice for purposes of stating a claim under Section 1 of the Sherman Act.

The additional claims asserted against InterExchange, Cultural Care, Au Pair in America, and GoAuPair fare no better.  The federal regulations governing the au pair exchange visitor program preempt any application of state law, as the au pair program is a federal immigration program designed to meet specific foreign policy objectives. Plaintiffs were compensated in accordance with federal law governing the exchange visitor program and are not entitled to any additional compensation or damages.  The RICO claim and most of the state-law claims sound in fraud; Defendants made no misrepresentations to their respective au pair exchange visitors about the nature of the

stipend and never represented that it was a maximum or that host families could not choose to pay au pair exchange visitors more.

Defendants cannot be liable for any alleged unpaid wages as they were not the au pair exchange visitors' employer or joint employer within the meaning of the FLSA or any applicable state law.  No fiduciary relationship existed between the sponsors and the au pair exchange visitors, and if such a relationship did exist, it was not breached. Plaintiffs have not identified any specific contractual provisions they allege that Defendants breached with respect to their sponsored au pair exchange visitors.

Plaintiff's class action claims are not appropriate for certification under Fed. R. Civ. P. 23.  The claims not only lack merit, they lack the necessary elements of numerosity, commonality, typicality and adequate representation.  Individual questions of law and fact predominate over common issues, including individual damages issues, and the class action is not a superior way to adjudicate these claims asserting multiple subclasses.  The named Plaintiffs are not adequate class representatives; they lack standing to assert claims on behalf of others and their claims are not typical of alleged class claims.  The classes, as defined, are not susceptible to common methods of proof on liability or damages.  Plaintiffs' FLSA claim is not appropriate for certification as a collective action.  Plaintiffs were never employees of their sponsors, and they are not similarly situated to any employee of the sponsor defendants, nor to other au pair program participants.

11

Defendants assert the following additional defenses:  failure to state a claim on which relief can be granted; statutes of limitations; Defendants did not act willfully, but instead acted in good faith and with reasonable grounds to believe their actions were in compliance with the law, and Defendants acted in reliance on written regulations and interpretations of the U.S. Department of Labor; failure to join indispensable parties; Plaintiffs breached the terms of their agreements with Defendants and engaged in misconduct; unclean hands; estoppel; waiver; laches; failure to reasonably mitigate damages; any damages are limited by statutory damages caps; settlement and release; and accord and satisfaction.

## 4. UNDISPUTED FACTS

### Plaintiffs' Proposal

1.      Congress initially created the J-1 visa program to facilitate cultural exchange between nations.

2.      The J-1 visa program is a "cultural exchange" program that allows foreigners aged 18 to 26 that possess secondary school education and English proficiency to work for "host families" as child care workers.  Foreigners utilizing the J-1 visa program are known as au pairs.

3.      The United States Information Agency ("USIA"), an agency of the U.S. Department of State, established the au pair program in 1986 as an educational and

cultural exchange.  The program is now overseen, facilitated, and regulated by the U.S. Department of State ("DOS").

4.     The *au pair* program is administered by 15 sponsor organizations, identified in the Amended Complaint as "Sponsor Defendants."

5.     It is not possible to legally become or hire an *au pair* without going through one of the 15 sponsor defendants.

6.     Typically, both the *au pair* and the host family will pay a fee of varying amounts to the relevant sponsor.

7.     The Sponsor Defendants were designated as sponsors for the J-1 visa program by the State Department.

8.     By law, *au pairs* are limited to working a maximum of 45 hours and host families are required to provide room and board in addition to a legal wage and $500 towards attending an institution of higher education.

9.     By law, *au pairs* may not work more than 10 hours per day and must receive a minimum of one and half days off per week, plus one complete weekend off every month, in addition to two weeks of paid vacation.

10.     Sponsoring organizations in the U.S., such as the sponsor defendants, have the responsibility for administering the program in accordance with 22 CFR Part 62.

11.     *Au pair* relationships are typically controlled by form contracts written by the sponsors.

12.     With limited exceptions, *au pairs* placed through any of the Sponsor Defendants are paid $195.75 per week, regardless of the location or number of children being cared for.

13.     All Sponsor Defendants have a policy of requiring host families to pay $195.75 per week regardless of location or number of children to all *au pairs*, with limited exceptions.

14.     $195.75 for a 45 hour work week translates to $4.35 per hour.

15.     The federal minimum wage is higher than $4.35 per hour, and many states have minimum wages that are significantly higher.

**Defendants' Proposal**

1.     The J-1 Au Pair Program is an official U.S. State Department cultural exchange program.

2.     The United States Information Agency ("USIA"), an agency of the U.S. Department of State, established the au pair program in 1986 as an educational and cultural exchange.  The program is now overseen, facilitated, and regulated by the U.S. Department of State ("DOS").

3.      Sponsoring organizations in the U.S., such as the sponsor defendants, have the responsibility for administering the program in accordance with 22 CFR § 62.32 and within the regulations set by DOS.

4.      The United States Information Agency Visitor Program Final Rule, 60 Fed. Reg. 8547-8553 (Feb. 15, 1995) (amending 22 C.F.R. Part 514) recognized an employment relationship between an au pair exchange visitor and his or her host family.

5.      DOS regulations require that au pair exchange visitors be provided with a full weekend off each month, two weeks paid vacation, and up to $500 toward attending an institution of higher education.

6.      An au pair exchange visitor is not to work more than 10 hours a day or 45 hours a week, and is not expected to perform general housekeeping.

7.      At all applicable times, the au pair exchange visitor stipend set by the U.S. Department of Labor and enforced by DOS was $195.75 per week.

8.      U.S. State Department regulations require sponsor agencies to provide specified training to au pair program participants.

9.      U.S. State Department regulations do not require that au pair program participants be compensated for the training they are required by the regulations to attend.

15

10.     InterExchange, Inc. is a not-for-profit corporation with its principal office located in New York, New York, and at all times relevant herein, was a United States Government-designated exchange visitor program sponsor for the au pair program.

11.     Cultural Care, Inc. is a Massachusetts corporation with its principal office located at Eight Education Street, Cambridge, MA 02141 and, at all times relevant herein, was a United States Government-designated exchange visitor program sponsor for the au pair program.

12.     Au Pair International Incorporated is a Colorado corporation with its principal office located in the City of Boulder, Colorado, and, at all times relevant herein, was a United States Government-designated exchange visitor program sponsor for the au pair program.

13.     Cultural Homestay International is a California nonprofit corporation with its principal office in San Anselmo, California, and at all times relevant herein, was a United States Government-designated exchange visitor program sponsor for the au pair program.

14.     AuPairCare, Inc. is a California corporation with its principal office located in San Francisco, California, and at all relevant times was a United States Government-designated exchange visitor program sponsor for the au pair program.

15.     APF Global Exchange, NPF is an Illinois 501(c)(3) not-for-profit organization, doing business as Au Pair Foundation, with its principal office in Petaluma, California.

16.     American Institute for Foreign Study d/b/a Au Pair in America is a Delaware corporation with its principal office in Stamford, Connecticut, and at all times relevant herein, was a United States Government-designated exchange visitor program sponsor for the au pair program.

17.     Expert Group International Inc. d/b/a Expert AuPair is a Florida corporation with its principal office located in St Petersburg, Florida, and at all times relevant herein, was a United States Government-designated exchange visitor program sponsor for the au pair program.

18.     Defendant USAuPair, Inc. is an Oregon Corporation with its principal office located in Lake Oswego, Oregon and at all times relevant herein, was and is a United States Government-designated exchange visitor program sponsor for the au pair program.

19.     A.P.EX. American Professional Exchange, LLC dba ProAuPair, is a California limited liability company with its principal office located at 433 Calle Familia, San Clemente, CA  92672.

20.    20/20 Care Exchange, Inc. dba The International Au Pair Exchange, is a California corporation with its principal office located at 433 Calle Familia, San Clemente, CA  92672.

21.    Great AuPair, LLC is a Delaware limited liability company with its principal office located at 6836 Bee Caves Road, Suite 222, Austin, Texas.

22.    America Cultural Exchange LLC dba Go Au Pair is a Utah limited liability company with its principal office located at 151 East 6100 South, Suite 200, Murray, UT 84107.

23.    Defendant Agent Au Pair is a California corporation located at 1801 Van Ness Avenue, Suite #340, San Francisco, CA 94109.

24.    EurAupair Intercultural Child Care Programs is a California corporation located at 250 N. Coast Highway, Laguna Beach, CA  92651.

### 5. COMPUTATION OF DAMAGES

<u>Plaintiffs</u>

Damages cannot currently be calculated without further discovery and consultation with a yet-to-be-retained expert.  With that caveat, Plaintiffs currently estimate roughly $400,000,000.00 per year in actual damages, with the damages ongoing.  This number is based upon the difference between the $195.75 per week paid to the named Plaintiffs and those similarly situated and the $39,000 alternative annual

nanny wage provided on Defendant Au Pair in America's website. The categories of damages that Plaintiffs currently anticipate requesting are as follows:

1.     Actual damages of at least $400,000,000;

2.     Treble damages and attorneys' fees pursuant to the Sherman Anti-Trust Act (18 USC § 1964(c));

3.     Treble damages and attorneys' fees pursuant to RICO (15 USC § 15(a));

4.     Unpaid minimum wage and overtime, liquidated damages, and attorneys' fees pursuant to the FLSA (29 U.S.C. §§ 201 et seq.);

5.     Statutory damages and attorneys' fees, under various state consumer protection statutes;

6.     Statutory damages and attorneys' fees for unpaid labor pursuant to the unpaid labor laws of the several states;

7.     Costs;

8.     Prejudgment and post-judgment interest; and

9.     Such other relief as this Court deems just and proper.

**<u>Defendants</u>**

At this point, Defendants do not seek damages from Plaintiffs but expressly reserve the right to seek damages, costs, and attorney fees at a later time.  Defendants deny that Plaintiffs are entitled to recover any damages in this case.

## 6. REPORT OF PRECONFERENCE DISCOVERY
## AND MEETING UNDER FED. R. CIV. P. 26(f)

**Date of Rule 26(f) meeting**

March 2, 2015, with additional subsequent conversations.

**Names of each participant and party he/she represented.**

Alexander Hood for all Plaintiffs.

For InterExchange, Inc.:

Brooke A. Colaizzi
Heather F. Vickles

For GreatAuPair:

Meshach Y. Rhoades

For EurAupair Intercultural Child Care
Programs:

Kathryn Anne Barrett

For Cultural Care, Inc.

Jeffrey P. Allen
Donald J. Gentile
W.V. Bernie Siebert

For Au Pair International, Inc.:

Brian Thomas Moore

For Agent Au Pair and American Cultural

For USAupair, Inc.

William James Kelly, III

For Expert Group International, Inc.:

Bogdan Enica

For Cultural Homestay International:

James E. Hartley

For AuPairCare,Inc.:

John Roger Mann

For APF GlobalExchange, NFP and
American Institute for Foreign Study:

Lawrence L. Lee
Daniel C. Perkins

For 20/20 Care Exchange, Inc. and

Exchange:                                    A.P.E.X. American Professional
                                             Exchange, LLC:
Kathryn A. Reilly
                                             Lawrence D. Stone
                                             Christian D. Hammond

**Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

Disclosures from all parties were exchanged on or before March 16, 2015.

**Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

None.

**Statement concerning any agreements to conduct informal discovery**

The parties have not agreed to conduct any specific informal discovery at this time. However, during the discovery in this case if it appears to all counsel that informal discovery would be productive they will discuss and coordinate such informal discovery.

**Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

**Plaintiffs' Proposal**

Counsel agree to cooperate and will utilize a unified exhibit numbering system and reduce discovery and litigation costs where possible.  Counsel anticipate negotiating and presenting to the Court a joint protective order that would cover discovery confidentiality and procedures.

**Defendants' Proposal**

Defendants have moved the Court to stay discovery until such time as the Court rules on Defendants' Motions to Dismiss.  Defendants then seek a phased discovery schedule as described below to maximize efficiency and minimize costs.

In the event that discovery does commence, the parties shall develop and use a system for identifying by a unique number or symbol each document produced or referred to during the course of this litigation.  Each producing party will give each page of its documents produced a unique number, using a numbering system from which the producing party is identified.  In the event that documents produced by persons or entities who are not parties to this action are not, when produced, identified by a unique numbering system, the party at whose request production was made shall be responsible for numbering the documents in accordance with the terms of this paragraph.  Counsel agree to cooperate to reduce discovery and litigation costs where appropriate.

Counsel will endeavor to consecutively number exhibits across all depositions, irrespective of the person or entity being deposed.

**<u>Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.</u>**

**<u>Plaintiffs' Proposal</u>**

The parties anticipate that their claims and defenses will involve extensive electronically stored information ("ESI"). The Plaintiff anticipates that this ESI will include extensive emails from within and among Defendants' organizations.

All parties have issued hold notices or counsel has otherwise informed their clients of the duty to preserve potentially discoverable materials, including ESI.

Counsel anticipate negotiating and presenting to the Court a joint protective order that would cover the inadvertent production of privileged materials, claw-back provisions, the format of ESI and document production, and the manner in which produced information should be destroyed or returned upon conclusion of this case, among other issues.

To facilitate the discovery of ESI and limit the associated costs and delay, counsel intend to meet-and-confer on the appropriate method of searching the relevant databases, including the use of search terms if appropriate.  The parties shall also act in good faith to avoid any potential discovery disputes.

**Defendants' Proposal**

The parties expect the production of some electronically stored information ("ESI") and will cooperate to determine the most efficient way to exchange such documents.

    **i.**    **Steps the parties have taken or will take to preserve electronically stored information;**

Each party has taken steps to preserve ESI that may be relevant to this litigation.  The parties agree to preserve and to not destroy or modify ESI that can reasonably be anticipated to be relevant to this litigation.  The parties further agree to preserve all metadata.

    **ii.**    **Steps the parties have taken or will take to facilitate discovery of electronically stored information;**

The parties expect the production of some ESI and will cooperate to determine the most efficient way to exchange such documents. The parties will produce electronic documents in reasonably usable format, and reasonable efforts shall be used to produce documents in the manner in which they are maintained.  For the most part, the documents will consist of PDF or TIFF images and, upon request for specific documents, appropriate associated embedded data (sometimes referred to as metadata).  This

statement does not waive any party's right to request ESI be provided in a different format at a later date.  Such requests, if reasonable, shall be complied with by the producing party.

**iii.   Steps the parties have taken to limit the associated discovery costs and delay;**

The parties expect the production of some ESI and will cooperate to determine the most efficient way to exchange such documents. The parties anticipate limited electronic discovery in this case. The parties will be guided by the Sedona Principles regarding discovery of ESI.  The parties agree to confer with each other in order to facilitate the discovery of ESI in the most effective way possible, and agree that to the extent any information is stored electronically, it will be produced electronically.  When a party desires that a document be produced with its metadata, the requesting party shall specifically identify that document and the relevant metadata contained therein, so that the document can be produced with the metadata intact.  All documents shall be produced in a reasonably searchable format.

**iv.   Steps the parties have taken to avoid discovery disputes relating to electronic discovery; and**

25

The Parties agree to act in good faith to facilitate the discovery of all relevant, properly requested, non-privileged, and properly discoverable ESI.

**v.     Steps the parties have taken to address claims of privilege or of protection as trial-preparation materials after production of computer-generated records.**

The Parties will maintain electronically stored information that is relevant, but withheld due to privilege or trial-preparation (such as documents shielded from discovery by the work product doctrine), through trial and any appeals.  The parties agree that there shall not be any waiver of the attorney-client privilege, attorney work product, or any other privilege should there be an inadvertent disclosure of privileged information contained in ESI produced in response to a discovery request, as provided by Fed. R. Civ. P. 26.  The parties are taking reasonable steps to protect against inadvertent disclosure of materials protected by the work product doctrine and attorney-client privilege ("Protected Materials").  Any party that discovers that it has sent or received Protected Materials shall immediately notify the opposing party so that appropriate steps to return or destroy the Protected Materials may be taken.  By operation of the parties' agreement and Court Order, the parties are specifically afforded the protections of Fed. R. Evid. 502(d) and (e).

**Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

**Plaintiffs Proposal**

It is not anticipated that any global settlement resolving all claims against all Defendants is likely in the near future.  Moreover, any settlement that is negotiated is likely to be a class settlement requiring Court approval.

**Defendants Proposal**

Counsel for various sponsor Defendants raised the issue of settlement shortly after the Rule 26(f) conference.  Plaintiffs' counsel identified the categories of damages he seeks to recover on behalf of Plaintiffs but did not provide a specific settlement proposal.  Defendants expect the Parties would benefit from a discussion during the scheduling conference regarding pre-certification dismissal or settlement of any one or more defendants.  Several defendants are in legitimate and immediate jeopardy of being put out of business due to the costs of defending this case.

Nothing contained in this Scheduling Order No. 1 shall limit the right of any defendant to file a motion for summary judgment or other appropriate dispositive motion, at any time, pursuant to the Federal Rules of Civil Procedure.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY PLAN AND LIMITATIONS

**Plaintiffs' Proposal**

Plaintiffs propose conducting all discovery in one "phase."  As an initial matter, one discovery phase would be more efficient.  The phases suggested by Defendants are inherently overlapping and intertwined, which will lead to unnecessary disputes about whether a particular discovery request belongs in phase I or II or III.  For example, Plaintiffs anticipate seeking discovery on the issue of whether Defendants dictate the price of *au pair* labor.  As formulated by Defendants, this could be a Phase I discovery issue because it relates to whether there was "an agreement to instruct . . . host families to pay" certain amounts, or, if "agreement" is narrowly construed, this could be a Phase II issue if the manner in which Defendants exercise control over the price of *au pair* labor does not require a formal agreement.  Issues such as this could be avoided if all discovery were conducted at once.

Indeed, experience shows that "partial stays or bifurcated discovery have proven to be an inefficient process, leading to confusion of the parties about the type of discovery permitted during the stay and, consequently, discovery disputes which cannot be resolved without Court assistance. Further, the Court is inconvenienced by an ill-advised stay because the delay in prosecuting the case which results from imposition of a stay makes the Court's docket less predictable and, hence, less manageable." *Arocho v. Nafzinger*, No. CIV.A07CV02603REBKLM, 2008 WL 5101701, at *1 (D. Colo.

Dec. 1, 2008); *see Trustees of Springs Transit Co. Employee's Ret. & Disability Plan v. City of Colorado Springs*, No. CIVA09CV02842WYDCBS, 2010 WL 1904509, at *6 (D. Colo. May 11, 2010) ("Bifurcated discovery also has the potential for creating its own set of challenges and discovery disputes, which may adversely affect the goal of judicial efficiency.").

Moreover, the phased proposal Defendants suggest culminates in a highly prejudicial summary judgment brief after Phase I. One of the purposes of discovery is to allow the refinement of a plaintiff's legal and factual theories to meet the evidence. If the evidence permitted to Plaintiffs here is constrained, Plaintiffs' ability to present a full picture on summary judgment and, hence, to properly identify disputed issues of material fact, would be likewise constrained. There is, simply, no reason to predicate a discovery schedule on a motion for summary judgment that is virtually guaranteed to be procedurally improper because relevant discovery will be yet to occur.

Finally, drawn out and phased discovery is especially inappropriate where the statute of limitations continues to run on Plaintiffs' FLSA claims. (The limitations period does not begin tolling until conditional certification, when potential plaintiffs will be given the opportunity to opt in to the class. *See* 29 U.S.C. § 216(b) (providing for opt-in class actions); *id.* § 256(b) (providing for limitations tolling from the date of opt-in).) Speedy movement toward conditional certification is, therefore, a necessity unless Defendants

29

are willing to agree that any FLSA claims of potential class members will be tolled from the date of this order.

**Defendants' Proposal**

For the reasons set forth in their respective motions, Defendants have moved the Court to stay discovery in this matter until the Court rules on the Motions to Dismiss filed by Defendants on April 17 and 20, 2015.

In the event a stay of discovery is not granted, Defendants propose a phased discovery schedule. In Phase I, the Parties will conduct fact discovery relating only to the arguments asserted in Defendants' Motions to Dismiss, filed April 17 and 20, 2015 (the "Threshold Legal Issues").[2] If decided in Defendants' favor, the Threshold Legal Issues would completely resolve this case. These Threshold Legal Issues include:

1. Whether defendants entered into an agreement to instruct their host families to pay their au pair exchange visitors no more than the weekly stipend of $195.75, as designated by the State Department, and no more;

2. Whether the federal instrumentality/implied immunity doctrine protects Defendants from antitrust liability;

_____

[2] Defendants believe that all of the legal arguments raised in their Motions to Dismiss can be resolved based solely on the allegations in the first amended complaint. As addressed above, it is thus appropriate to stay all discovery pending resolution of the Motions to Dismiss. However, if the Court denies the requested stay, Defendants propose that the initial phase of discovery be limited to the discrete liability issues raised in Defendants' Motions to Dismiss.

3. Whether federal law and regulations preempt Plaintiffs' state-law claims;

4. Whether Defendants are "employers" of au pair exchange visitors under the Fair Labor Standards Act; and

5. Whether Plaintiffs have standing to sue under the wage laws of various states.

Discovery on these limited and discrete Threshold Legal Issues will be substantially more narrow than discovery pertaining to damages, class certification, expert testimony, and additional liability defenses.  The discovery and defense costs of this case are of a magnitude that is already threatening the viability of several Defendants.  Given the nationwide scope of the claims and the worldwide geographic scope of prospective class members, discovery will involve significant travel and related attorney costs, in addition to the disclosure of enormous amounts of information, much of which is considered proprietary by the Defendant holding it.  Defendants should not incur such devastating costs and disclosure unless and until the Court determines that viable legal claims remain.

Following Phase I discovery, Defendants will file summary judgment motions addressing only the Threshold Legal Issues.  If any claims are allowed to proceed following the Court's ruling on those summary judgment motions, Defendants propose the parties would then begin Phase II discovery covering class and merits/liability issues, as well as the damages discovery necessary for resolution of Plaintiffs' anticipated motions to certify an FLSA collective class and Rule 23 classes.

31

Following resolution of class certification issues, if Plaintiffs' claims are allowed to proceed, Defendants propose Phase III discovery on all remaining damages issues.

### Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

### Plaintiffs' Proposal

The parties reserve the right to take 45 depositions of fact witnesses per side.  In addition, each side shall have the right to depose any named expert.

### Defendants' Proposal

In Phase I, the initial discovery phase, as identified below, each party may depose any other party including opt-in Plaintiffs, and take five (5) additional depositions.  The parties reserve the right to seek Court approval for additional depositions as the case progresses.

The Parties anticipate a second Scheduling Conference will be necessary prior to Phases II and III in order to determine the appropriate scope of discovery for those Phases.

### Limitations which any party proposes on the length of depositions.

Each deposition will be limited to 7 hours, except depositions of witnesses who require the use of an interpreter, which may be extended up to, but not to exceed, a total of 14 hours of testimony.

**Limitations which any party proposes on the number of interrogatories, requests for production, and/or requests for admission.**

**Plaintiffs' Proposal**

The parties reserve the right to serve the other side with 100 requests for production, 100 interrogatories, and 100 requests for admission.  An interrogatory or request served on all parties on an opposing side shall be counted as a single interrogatory or request.

**Defendants' Proposal**

During Phase I, the following limitations shall apply.  The parties will comply with Fed. R. Civ. P. 33, with respect to interrogatories.  A party may serve on any other party, including opt-in Plaintiffs, 25 requests for production of documents pursuant to Fed. R. Civ. P. 34.  A party may serve on any other party, including opt-in Plaintiffs, 25 written requests to admit pursuant to Fed. R. Civ. P. 36.

**Other Planning or Discovery Orders**

**Plaintiffs' Proposal**

As noted above, the parties intend to negotiate and present to the Court a proposed protective order covering the production and use of discovery information. The parties will present the proposed protective order within 30 days of the date of this scheduling order.  Any discovery produced prior to that date shall automatically be retroactively covered by the proposed protective order if signed by the Court.  Moreover, that proposed protective order will recite that the parties agree that the allegation of a

cause of action against one Defendant shall make relevant discovery on issues related to that cause of action against all Defendants, and that the allegation of a cause of action under one state law shall make relevant discovery on issues related to that cause of action under all states' laws.

### Defendants' Proposal

The Defendants moved to dismiss the First Amended Complaint on April 17 and 20, 2015.  Defendants sought, and the Court granted, a stay of discovery until the Scheduling Conference on July 6, 2015.  Defendants also moved the Court to stay discovery until such time as the Court rules on Defendants' Motions to Dismiss.

If and when discovery commences, the sponsor Defendants propose that the discovery period be phased as outlined above.  Any party may seek leave of the Court to conduct additional discovery upon a showing of good cause.  The parties anticipate the need for a protective order to protect proprietary information and will file the appropriate motion with the Court.

## 9. CASE PLAN AND SCHEDULE

### Deadline for Joinder of Parties and Amendment of Pleadings

### Plaintiffs' Proposal

The deadline for the joinder of parties and amendment of pleadings shall be thirty days from the date on which the Court issues an order resolving the currently pending motions to dismiss.

Notwithstanding the prior paragraph, the deadline for the joinder of parties and amendment of pleadings is the fact discovery cut-off date if such amendment and joinder serves to (a) add class representatives; (b) allege claims already alleged against one Defendant against another already-named Defendant; or (c) allege state-law claims already alleged under the law of one or more states under the law of additional states.

**Defendants' Proposal**

The deadline for amendment of pleadings shall be August 7, 2015.  The deadline for joinder of parties in the FLSA collective action shall be 90 days after the date of the notice.

**Discovery Cut-off**

**Plaintiffs' Proposal**

Fact discovery shall end on Friday, April 1, 2016, or, if the Court orders a stay of discovery, nine months from the date that stay is lifted.  Expert discovery shall conclude three months from the date on which fact discovery concludes.

**Defendants' Proposal**

In the event this Court declines to stay discovery until such time as it rules on Defendants' Motions to Dismiss, the parties agree to a discovery cut-off of December 18, 2015 for all Phase I discovery.  Deadlines relating to Phases II and III will be determined after the conclusion of Phase I.

**Dispositive and Class Certification Motion Deadline**

**Plaintiffs' Proposal**

The parties shall cooperate to expedite discovery on issues bearing on class certification, including conditional certification, and Plaintiffs shall file such motions at the earliest practicable time, but in no event after the date one month from the day rebuttal expert reports are due.  If the Court grants a stay of discovery, that order will also toll the claims of potential class plaintiffs, including any FLSA claims, until the date the stay is lifted.

All motions for summary judgment shall be filed on or before the date one month from the day rebuttal expert reports are due.

**Defendants' Proposal**

Should discovery proceed to Phase II, Plaintiffs shall file their Motion for Conditional Certification of the FLSA class(es) no later than 30 days after commencement of Phase II discovery.  All deadlines for additional Motions for certification of classes, decertification of classes, or Motions for Summary Judgment with respect to the Rule 23 class action claims shall be determined after the conclusion of Phase I.

**Expert Witness Disclosure**

**Plaintiffs' Proposal**

Plaintiffs anticipate providing expert discover on the economic and practical realities of the *au pair* program, as well as on class certification and damages issues.

As noted above, expert discovery will conclude three months' from the date on which fact discovery concludes.  Nonetheless, nothing shall prevent expert discovery on class certification occurring more expeditiously where possible.

The parties shall designate all experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before the date one month after the close of fact discovery.

Rebuttal reports, if any, shall be served on the date one month from the service of opening reports.

The parties may notice depositions of the opposing parties' experts, which depositions will take place within one month of the service of rebuttal reports.

Plaintiffs as a group shall be limited to 4 experts on class certification and 4 experts on the merits.  Defendants as a group will be limited to 4 experts on class certification and 4 experts on the merits.

**Defendants' Proposal**

Defendant anticipates presenting expert economic testimony on issues of liability and damages, as well as expert testimony pertaining to the complex statutory and regulatory framework governing the U.S. Department of State J-1 Visa Exchange Visitor program.  Defendants anticipate that the U.S. Department of State expert would be necessary for Phase I discovery.

The parties propose a limit of three (3) expert witnesses per side.

The plaintiff shall designate all experts related to Phase I discovery and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before September 30, 2015.  Remaining expert disclosure deadlines will be  determined after the conclusion of Phase I.

The defendants shall designate all experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before October 30, 2015.  Remaining rebuttal expert disclosure deadlines will be determined after the conclusion of Phase I.

All final rebuttal opinions will be provided no later than December 4, 2015. Remaining final rebuttal opinions deadlines will be determined after the conclusion of Phase I.

### Identification of Persons to Be Deposed

At this time, the parties have identified as potential deponents the parties, representatives of the U.S. Department of State, and Plaintiffs' private investigator.  As discovery progresses, the parties will identify the persons to be deposed and will work cooperatively together to appropriately schedule all depositions on dates on which both the deponent and counsel for all parties are available.

**Deadline for Interrogatories**

**Plaintiffs' Proposal**

All interrogatories must be served no later than 33 days prior to the discovery cut-off.

**Defendants' Proposal**

All Phase I interrogatories must be served no later than 33 days prior to the discovery cut-off.

**Deadline for Requests for Production of Documents and/or Admissions**

**Plaintiffs' Proposal**

All requests for production of documents and requests for admission must be served no later than 33 days prior to the discovery cut-off.

**Defendants' Proposal**

All Phase I requests for production of documents and requests for admission must be served no later than 33 days prior to the discovery cut-off.

## 10. DATES FOR FURTHER CONFERENCES

*[The magistrate judge will complete this section at the scheduling conference if he or she has not already set deadlines by an order filed before the conference.]*

a.       Status conferences will be held in this case at the following dates and times: _____.

b.      A final pretrial conference will be held in this case on _____ at _____

o'clock ___m.  A Final Pretrial Order shall be prepared by the parties and submitted to

the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

**Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement**

None.

**Anticipated length of trial and whether trial is to the court or jury.**

The parties are unable to estimate trial length until classes and scope of the

case are determined.

**Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado.**

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with

D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon

the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

This scheduling order may only be amended upon a showing of good cause.

DATED at Denver, Colorado, this _____day of _____, 20___.

BY THE COURT:

_____
United States Magistrate Judge

41

APPROVED:

s/Matthew L. Schwartz
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Tel: 212-446-2300
Fax: 212-446-2360
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel.: 954-356-0011
Fax: 954-356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

s/Alexander Hood
Alexander Hood
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
720-343-4464
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

*Counsel for Plaintiffs*

s/Brooke A. Colaizzi
Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
Erica Gutherz
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Telephone: (303) 297-2900
bcolazzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
egutherz@shermanhoward.com

*Counsel for InterExchange, Inc.*

42

*s/* Brian T. Moore
Brian T. Moore
Jester Gibson & Moore, LLP
1999 Broadway, Suite 3225
Denver, CO 80220
Email:  BMoore@jgllp.com

*Counsel for Au Pair International, Inc.*

*s/* William J. Kelly III
William J. Kelly III
Chanda M. Feldkamp
Kelly & Walker LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
Email:  wkelly@kellywalkerlaw.com
Email:  cfeldkamp@kellywalkerlaw.com

*Counsel for USAupair, Inc.*

*s/* Kathryn A Reilly
Kathryn A. Reilly
Toren G.E. Mushovic
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Email:  reilly@wtotrial.com
Email:  mushovic@wtotrial.com

*Counsel for Agent Au Pair and American Cultural Exchange*

*s/* Jeffrey P. Allen
Jeffrey P. Allen
Donald J. Gentile
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
Email:  jallen@lawson-weitzen.com
Email:  dgentile@lawson-weitzen.com

*s/* W.B Bernie Siebert
W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Email:  bsiebert@shermanhoward.com

*Counsel for Cultural Care, Inc.*

43

s/ Bogdan Enica
Bogdan Enica
Expert AuPair
111 Second Avenue, NE, Suite 213
St. Petersburg, FL 33701
Email:  Bogdan@expertaupair.com

*Counsel for Expert Group Int'l, Inc.*

s/ Martha L. Fitzgerald
Martha L. Fitzgerald
Katheryn A. Barrett
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Email:  mfitzgerald@bhfs.com
Email:  kbarrett@bhfs.com

*Counsel for EurAupair Intercultural Child Care Programs*

s/ Lawrence D. Stone
Lawrence D. Stone
Christian D. Hammond
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Email:  lstone@duffordbrown.com
Email:  chammond@duffordbrown.com

*Counsel for 20/20 Care Exchange, Inc. and A.P.E.X. American Professional Exchange, LLC*

s/ James E. Hartley
James E. Hartley
Mher Hartoonian
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Email:  jhartley@hollandhart.com
Email:  mhartoonian@hollandhart.com

*Counsel for Cultural Homestay Int'l*

s/ Meshach Y. Rhoades
Meshach Y. Rhoades
Martin Estevao
Greenberg Traurig, LLP
1200 17th Street, Suite 2400

s/ Lawrence Lee
Lawrence Lee
Daniel C. Perkins
Fisher & Phillips LLP
1801 California Street, Suite 2700

44

Denver, CO 80202
Email:  Roadesm@gtlaw.com
Email:  Estevaom@gtlaw.com

*Counsel for GreatAuPair*

*s/* John Mann
John Mann
Thomas Quinn
Gordon & Rees, LLP
555 Seventeenth Street, Suite 3400
Denver, CO  80202
Email:  jmann@gordonrees.com
           tquinn@gordonrees.com

*Counsel for AuPairCare, Inc.*

Denver, CO 80202
Email:  llee@laborlawyers.com
Email:  dperkins@laborlawyers.com

*Counsel for APF GlovalExchange, NFP and American Institute for Foreign Study*