# EXHIBIT C

**U.S. Department of Labor**
Wage and Hour Division



(Revised June 2014)

# Fact Sheet #79E: Joint Employment in Domestic Service Employment Under the Fair Labor Standards Act (FLSA)

**Introduction**

Domestic service employment means services of a household nature performed by a worker in or about a private home (permanent or temporary).  The term includes services performed by workers such as babysitters, cooks, waiters, maids, housekeepers, nannies, janitors, caretakers, handymen, gardeners, and family chauffeurs, as well as those services provided by home care workers.  Home care workers may include companions, personal care aides, home health aides, nurses, and other workers who provide assistance to individuals in their homes.  These examples are illustrative and not exhaustive.

Domestic service employees are generally covered under the Fair Labor Standards Act ("FLSA") and therefore must be paid at least the federal minimum wage for all hours worked, and overtime pay at not less than one and one-half times the regular rate of pay for all hours worked over 40 in a workweek.  Section 13(a)(15) of the FLSA provides a narrow exemption from the minimum wage and overtime pay requirements for domestic service employees who are casual babysitters and domestic service workers employed to perform companionship services for people with disabilities and older adults ("companionship services exemption").  Section 13(b)(21) of the FLSA provides an exemption from the overtime pay requirement, but not the minimum wage requirement, for those employees who reside in the private home where they work ("live-in domestic service employee exemption").

In the Final Rule, Application of the Fair Labor Standards Act to Domestic Service, 78 FR 60454 (Oct. 1, 2013),[1] the Department modified the "third party employment" regulation, 29 C.F.R. 552.109, to prohibit third party employers of domestic service employees—i.e., employers other than the individuals receiving services or their families or households—from claiming the companionship services exemption from minimum wage and overtime or the live-in domestic service employee exemption from overtime.  78 FR 60480-85.

Private agencies, non-profit organizations, or public entities may be third party joint employers of domestic service employees, and in particular home care workers, under the FLSA.  Although the Final Rule did not change any of the Department's guidance about joint employment, the regulatory changes prohibiting third party employers from claiming the companionship services and live-in domestic service employee exemptions will require every potential employer to evaluate whether it may be a joint employer under the FLSA.

This fact sheet summarizes general longstanding joint employment principles established by case law, discusses how joint employment may arise in the home care context, and provides nine hypotheticals analyzing how these existing principles would apply in common home care scenarios, including both private-pay examples as well as Medicaid-funded consumer-directed programs.

---

[1] The effective date for the Final Rule is January 1, 2015.

FS 79E

**Joint Employment – General Principles**

A single individual may be simultaneously considered an employee of more than one employer under the FLSA. In such cases, the employee's work for the joint employers is considered as one employment for purposes of the Act, and the joint employers are individually and jointly responsible for FLSA compliance, including paying not less than the minimum wage for all hours worked during the workweek and, if applicable, overtime compensation for all hours worked over 40 in the workweek. 29 C.F.R. 791.2(a). A determination of whether joint employment exists must be based upon all the facts of the particular case. For instance, two employers may both supervise the same employee or one may hire and set the pay rates while another has authority to supervise or fire the worker; both scenarios may represent a joint employment relationship.

As a general example, workers sent by a cleaning company to a client-hotel to clean hotel rooms may be jointly employed by both the cleaning company and the hotel. Similarly, a private agency, non-profit organization, or public entity that hires a home care worker to provide services in an individual's home may be a joint employer with the individual (or family or household member of the individual).

**Determining Joint Employment**

Joint employment is determined by applying the "economic realities" test, which examines a number of factors to determine whether a worker is economically dependent on a purported employer, thus creating an employment relationship. Factors to consider may include whether a possible employer has the power to direct, control, or supervise the worker(s) or the work performed; whether a possible employer has the power to hire or fire, modify the employment conditions or determine the pay rates or the methods of wage payment for the worker(s); the degree of permanency and duration of the relationship; where the work is performed and whether the tasks performed require special skills; whether the work performed is an integral part of the overall business operation; whether a possible employer undertakes responsibilities in relation to the worker(s) which are commonly performed by employers; whose equipment is used; and who performs payroll and similar functions. Other factors also may be considered and no one factor is controlling. The ultimate question is one of economic dependence.

**Joint Employment and Home Care Workers**

In the home care context, there are a variety of employment situations in which joint employment may exist. Many home care providers are jointly employed by two or more entities; these entities may include a consumer,[2] a private home care agency, a non-profit organization, or a public entity (which include instrumentalities of state, county, or municipal governments or special-purpose entities created by a state, county, or municipal government). For example, a private home care agency and consumer may jointly employ a provider.

In other situations, a public entity and a consumer may jointly employ a provider through a Medicaid-funded consumer-directed program. In these programs, consumers (or their representatives, if applicable) have decision-making authority over some services and take direct responsibility for managing their services, assisted by a system of available supports. Other third parties may also be joint employers in consumer-directed programs. For example, a public entity, non-profit home care

---

[2] Throughout this document, the Department uses the term "consumer" to refer to an individual receiving home care services and "provider" to refer to a home care worker providing services.

agency, and consumer could all potentially jointly employ a provider through a consumer-directed program.

The Department has published Administrator's Interpretation No. 2014-2 (AI) to help determine when public entities are employers of home care workers who provide services through consumer-directed programs.  The AI describes in detail many common aspects of consumer-directed programs, such as which entity retains the right to hire and fire, which entity controls the wage, schedule and other conditions of employment, and which entity performs payroll and other administrative functions.  The AI provides guidance as to whether these various aspects are "strong," "moderate," or "weak" indicators of employer status.

In any potential joint employment situation, the same economic realities analysis applies.  All of the facts and circumstances relevant to whether a worker is economically dependent on a possible employer must be assessed in order to make a determination about employment status.

**Obligations of Joint Employers Under the FLSA**

Generally, where a joint employment relationship exists, each employer is responsible for complying with the FLSA (including payment of at least the federal minimum wage for all hours worked and overtime pay at not less than one and one-half times the regular rate of pay for hours worked over 40 in a workweek).

Under the Final Rule, in joint employment situations, the individual, family, or household employing the worker will be able to claim the companionship services or live-in domestic service employee exemption if the prerequisites for claiming those exemptions are met.  (For information about the companionship services exemption, see Fact Sheet # 79A: Companionship Services Under the Fair Labor Standards Act (FLSA).  For information about the live-in domestic service employee exemption, see Fact Sheet #79B: Live-In Domestic Service Workers Under the Fair Labor Standards Act (FLSA).)  This means that an individual consumer, family, or household who may properly claim the companionship services or live-in domestic service employee exemptions will not be liable for minimum wage or overtime pay obligations related to those exemptions.

Under the Final Rule, third party employers of home care workers (that is, any employer who is not the consumer or a member of the consumer's family or household, such as a private or non-profit home care agency or a public entity administering home care programs) are not permitted to claim either the exemption for companionship services or the exemption for live-in domestic service employees.  Third party employers may not claim these exemptions even when they jointly employ a worker with an individual, family, or household who may claim either exemption.  Thus, any third party employer of a domestic service worker is obligated to pay not less than the minimum wage for all hours worked and overtime compensation for all hours worked over 40 in a workweek, and any third party employer of a live-in domestic service worker is required to pay overtime pay for all hours worked over 40 in the workweek.

In addition, all third party employers of domestic service workers will be required to pay for time spent traveling between consumers, as well as overtime generated by working for multiple consumers.  An employee's normal commute between home and the worksite is not considered "hours worked" and therefore does not have to be paid.  However, the time an employee spends traveling from job site to job site during the workday for an employer (when, for instance, a home care worker assists multiple clients) must be counted and paid as hours worked.  Additionally, an employee who works for multiple consumers of a single joint employer (typically, a public entity or a

private home care agency) must be paid at the overtime rate for any hours worked over 40 in a single workweek, aggregating the time worked across consumers for a joint employer. For example, if a worker spends 30 hours per week providing home care services to one consumer and 20 hours per week providing home care services to a second consumer, then any joint employer – whether a private agency, a public entity, or both – is responsible for ensuring that the worker receives overtime pay for the 10 hours over 40 worked each week.

**Joint Employment Examples in the Home Care Context**

Below are several examples of common home care models and how joint employment principles would apply to each. Although this guidance focuses on the most common factors that may create an employment relationship in the home care context, all of the relevant facts and circumstances must be considered to make a determination about employment status, and courts may consider other factors when evaluating the economic dependence of a worker on a possible employer.

In these examples, the term "consumer" may also include an individual's family member, household member, or representative.

*Example One – Private-Pay Registry with Consumer as Sole Employer*

A private home care agency advertises as a "registry" that provides potential home care workers. The registry conducts a background screening and verifies credentials of potential workers, and assists consumers by locating home care workers who may be able to meet a client's needs. The registry informs a home care worker of the opportunity to work for a potential client. If interested in the opportunity, the worker is responsible for contacting the client for more information. The worker is not obligated to pursue this or any other opportunity presented and is not prohibited from registering with other referral services or from working directly with clients independent of this private registry. The registry does not provide its workers any equipment, does not supervise or monitor any work they perform, and has no power to terminate a worker's employment with a client. The registry processes the worker's payroll checks according to information provided by clients, but does not set the pay rate.

In this scenario, the home care worker is likely not an employee of the registry, and the consumer is the sole employer. There is no permanency in the relationship between the registry and provider. The registry does not provide any equipment or facilities, exercises no control over daily activities, and has no power to hire or fire. The worker is able to accept as many or as few clients as he or she wishes. The client sets the rate of pay and negotiates directly with the worker about which services will be provided. This conclusion, however, does not mean that every "registry" will not be an employer; any change in the specific facts may change the outcome. For example, a home care registry that maintains a log of assignments showing the shifts worked, establishes the rate which will be charged, and exercises control over the home care workers' duties and the work schedules would be an employer.

*Example Two – Private Agency and Consumer as Joint Employers*

A private home care agency offers a variety of services to older adults who require assistance in order to live at home. The agency recruits and hires providers, and ensures they are properly trained to assist with activities of daily living or instrumental activities of daily living, or to provide companionship services such as watching over a consumer while he or she sleeps. Consumers contract with the agency to receive services and are billed at a set hourly rate. The agency

determines each worker's rate of pay based on factors such as the services performed and the worker's qualifications and tenure at the agency. The agency performs typical payroll functions and provides the workers with some other job-related benefits.

The consumer decides what services he or she requires, how the worker will perform the services, the number of work hours he or she requires, and the schedule for the workers. Together, the agency and consumer agree on how many workers will be assigned to provide assistance. Although the agency retains the ultimate decision of whether to terminate the worker's employment with the agency, a consumer who is not satisfied with the performance of a particular worker may request a different worker at any time.

In this scenario, the agency and the consumer are joint employers. The agency, among other factors, sets the rate of pay, hires and trains the worker, and has the ability to terminate employment, while the consumer sets the schedule and solely controls and supervises the actual work performed.

*Example Three – Consumer-Directed Program with Public Entity and Consumer as Joint Employers*

In this consumer-directed program, the public entity collectively bargains with a union representing home care providers. The public entity exercises control by providing required training, offering paid time off, furnishing equipment, creating a procedure for redress of grievances, setting a wage rate, and offering a benefits package. The public entity also retains some control over hiring and firing by completing performance evaluations and reserving the right to terminate a worker for poor performance. A fiscal intermediary processes payroll and tax withholding.

The Department believes that in such programs, the public entity administering the program is a joint employer of the provider along with the consumer. The fiscal intermediary, performing purely ministerial functions, would not be an employer.

Other public programs in which the home care providers are not parties to a collective bargaining agreement but in which the public entity nonetheless demonstrates similar levels of control over the providers' working conditions will also be considered joint employers. For example, some programs are structured such that a case manager is involved in determining the worker's schedule or directing the method of work, or the public entity sets a wage rate for providers. In programs such as these, with similar levels of control as described above, the public entity will be considered a joint employer with the consumer.

*Example Four – Consumer-Directed Program, with Consumer as Sole Employer*

In this consumer-directed program, the public entity sets forth basic hiring requirements (such as a criminal background check or CPR/First Aid certification) and retains the limited right to remove a provider from the program if it is determined, after an investigation, that there has been fraud or abuse. The public entity also sets a wage rate range for services that is approved by the Centers for Medicare and Medicaid Services. The wage rate range for home care workers is from $10 per hour to $24 per hour. A consumer can hire anyone who meets minimal qualifications and the consumer retains the ability to fire for any reason. A budget is developed annually by the consumer with the help of a case manager. It is the responsibility of the consumer to keep up with financial statements to determine whether monthly spending should be adjusted. The consumer sets the worker's schedule, determines the tasks to be performed, and supervises how the work is performed. The consumer reviews and approves the worker's payroll, and the provider's tax withholdings are deducted from the individual consumer's budget (not any general state fund). The consumer has a

choice between three fiscal intermediaries that perform payroll and other administrative functions. The public entity does not provide any paid time off, equipment, mandatory training, or contributions to health insurance premiums.

In this scenario, the consumer is likely the sole employer of the worker. Any slight change in the specific facts of this example may change the analysis.

*Example Five – Consumer-Directed Program, with Consumer and Public Entity as Joint Employers*

In this consumer-directed program, the consumer posts the job announcement and selects applicants to interview. The consumer conducts interviews and chooses a provider, but the case manager must approve the hiring decision. The consumer provides all day-to-day supervision and controls the schedule as well as the manner in which work is performed. The consumer and public entity case manager conduct regular performance evaluations, and the case manager or consumer may decide to fire the provider for poor performance. The program also has required, ongoing, comprehensive, state-sponsored training requirements. The public entity sets a reimbursement rate for home care services, from which the consumer may not deviate. Payroll and withholdings are processed through a fiscal intermediary of the consumer's choice.

In this scenario, the public entity and the consumer are likely joint employers of the provider. The fiscal intermediary is not an employer.

*Example Six – Intermediary Agency Consumer-Directed Model, with Consumer and Agency as Joint Employers*

In this consumer-directed program, the public entity administers an intermediary agency model. The state sets reimbursement rates for all Medicaid services within the public entity, including home care services. The minimum qualifications for home care workers are set by state regulation. The public entity does not supervise the work, set schedules, or control conditions of employment. The public entity contracts with agencies to provide home care services, and provides a bundled reimbursement rate from which the agency is free to set a wage rate and retain a portion for administrative costs. The public entity reserves the right to conduct certain functions, including visiting the agency to assess performance, conduct fiscal and quality audits, and review personnel files on a random basis.

Consumers may recruit and select a provider, and the agencies participating in the program then screen and hire the worker (the agency may also recruit potential providers). Both consumers and agencies retain the right to fire the workers, and the agencies generally handle any disciplinary issues involving the workers. Agencies also conduct the administrative functions and supervision of workers required by regulation, train the workers, and evaluate job performance. The agencies maintain all employment records, although copies of such records are also sent to the public entity administering the program. Consumers provide daily supervision, set the worker's schedule, and decide how and when certain tasks will be performed.

In this scenario, the agencies and consumers are employers, and it is likely that the public entity is not an employer. The public entity performs minimal functions required by regulation, while the agencies set the wage rate, hire and train workers, and supervise much of the work.

*Example Seven – Cash and Counseling Consumer-Directed Program with a Wage Cap, with Consumer as Sole Employer*

In this cash and counseling consumer-directed program, consumers are given the option to manage a flexible budget and decide what mix of Medicaid-allowable goods and services best meet their personal care needs. Consumers may use their budgets to hire personal care workers, purchase

other services, purchase items, or make home modifications that help them live independently. The consumer retains authority over hiring and firing, negotiates the wage rate paid to the employee within a cap, and sets the terms and conditions of employment.

The public entity sets minimal qualifications for providers (by requiring a criminal background check and CPR/First Aid certification), determines eligibility and assesses need under the program, and then performs only ministerial payroll and tax functions through a fiscal intermediary, similar to those that commercial payroll agents perform for businesses, such as maintaining records, issuing payments, and addressing tax withholdings. The public entity also sets a cap on wages for all workers participating in the program so that consumers will have enough resources in their budget for the entire month, and to help ensure fiscal accountability as well as guard against exploitation. The cap for home care workers is at the agency reimbursement rate of, for example, $26 per hour. Thus, the consumer may pay anywhere from minimum wage to $26 per hour, and if the consumer elects to pay less than the cap, the remaining funds remain in the consumer's individual budget.

In this scenario, the consumer is likely the sole employer of workers hired through such a program.

*Example Eight – Public Entity, Managed Care Organization, and Intermediary Agency Consumer-Directed Program, with Consumer and Agency as Joint Employers*

This public entity contracts with a managed care organization (MCO) to provide health care services, including home care services, to Medicaid recipients. The public entity pays the MCO a per consumer monthly rate, and from that total budget the MCO contracts with various providers in its network, including home care agencies. Within this network are several agencies participating in a consumer-directed intermediary agency program. The MCO pays the agencies a bundled rate. The agency then sets the wage rate; authorizes a certain number of hours based upon an assessment; pays health insurance, workers' compensation, and unemployment insurance premiums; and also may choose to authorize overtime. The participating agencies permit consumers to hire and fire their own workers, and consumers set the provider's schedule and provide all day-to-day supervision.

In this scenario, on these specific facts, it is likely that the agencies and the consumers are joint employers, and that the MCO and public entity are likely not joint employers. The MCO merely pays the bundled rate to the agencies, and the agencies perform all other indicia of employment. However, any slight change in the particular facts could change the analysis.

*Example Nine – Public Entity, Managed Care Organization, and Intermediary Agency Program, with Consumer, Managed Care Organization, and Agency as Joint Employers*

This public entity contracts with a managed care organization (MCO) to provide health care services, including home care services, to Medicaid recipients. The public entity pays the MCO a per consumer monthly rate, and from that total budget the MCO contracts with various providers in its network, including home care agencies. Within this network are several agencies participating in a consumer-directed intermediary agency program. The MCO pays the agencies a bundled rate but requires the agencies to pay workers a particular hourly wage. The MCO also sets comprehensive provider qualifications and requires providers to attend training provided by the MCO on a regular basis. The agencies authorize a certain number of hours based upon an assessment; pay health insurance, workers' compensation, and unemployment insurance premiums; assist the consumer if disciplinary matters regarding the provider arise; provide back-up workers when needed; and may choose to authorize overtime. The participating agencies permit consumers to hire and fire their own workers, consumers set the providers' schedules, and consumers provide all day-to-day supervision.

In this scenario, based on these specific facts, it is likely that the MCO, the agencies and the consumers are joint employers and that the public entity is likely not a joint employer.  The MCO does far more than simply pay the bundled rate (as the MCO did in Example Eight) in this example, and indicia of employment is spread among the MCO, agencies, and consumers.  However, any slight change in the particular facts could change the analysis.

**Where to Obtain Additional Information**
**For additional information, visit our Wage and Hour Division Website:**
**http://www.wagehour.dol.gov and/or call our toll-free information and helpline**, **available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243)**.
This publication is for general information and is not to be considered in the same light as official statements of position contained in the Department's regulations.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
**Contact Us**