# EXHIBIT D

No. 10-13412-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NICOLAS RAMOS-BARRIENTOS, ET AL.,

Plaintiffs-Appellants,

v.

DELBERT C. BLAND and BLAND FARMS, LLC,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Georgia

BRIEF FOR THE SECRETARY OF LABOR AS
*AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

M. PATRICIA SMITH
Solicitor of Labor

WILLIAM C. LESSER
Acting Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

DIANE A. HEIM
Attorney
U.S. Department of Labor
Office of the Solicitor
Room N-2716
200 Constitution Ave., N.W.
Washington, D.C. 20210
(202) 693-5555

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

The Secretary of Labor believes that the Certificate
of interested Persons filed by Appellants in their
principal Brief is complete, other than the addition of the
Secretary of Labor, as follows:

Solis, Hilda L. (Secretary, U.S. Department of Labor,
*Amicus Curiae*)

C-1 of 1

i

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS
     AND CORPORATE DISCLOSURE STATEMENT................... i

TABLE OF CONTENTS......................................... ii

TABLE OF AUTHORITIES............................... iii-vii

STATEMENT OF THE ISSUE.................................... 2

STATEMENT OF IDENTITY OF THE AMICUS CURIAE,
     INTEREST, AND AUTHORITY TO FILE...................... 2

THE DISTRICT COURT'S DECISION............................. 3

SUMMARY OF THE ARGUMENT.................................. 6

ARGUMENT................................................. 8

     HOUSING THAT AN H-2A EMPLOYER IS OBLIGATED TO
     FURNISH FREE OF CHARGE TO ITS EMPLOYEES IS AN
     EMPLOYER BUSINESS EXPENSE AND THUS PRIMARILY
     FOR THE BENEFIT OF THE EMPLOYER..................... 8

     A.     Statutory and Regulatory Background........ 8

     B.     Housing that an H-2A Employer is
            Required by Law to Provide Free of
            Charge is an Employer Business
            Expense.................................. 12

CONCLUSION.............................................. 23

CERTIFICATE OF COMPLIANCE............................... 24

CERTIFICATE OF SERVICE.............................. 25, 26

ADDENDUM

TABLE OF AUTHORITIES

Page

Cases:

*Archie v. Grand Cent. P'ship, Inc.,*
    86 F. Supp. 2d 262 (S.D.N.Y. 2000).................. 20

*\*Arriaga v. Florida Pac. Farms, L.L.C.,*
    305 F.3d 1228 (11th Cir. 2002)........ 7, 9, 13, 21, 22

*Bailey v. Pilots' Ass'n for the Bay & River Del.,*
    406 F. Supp. 1302 (E.D. Pa. 1976)................... 20

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981)................................... 8

*Bonilla v. Baker Concrete Constr., Inc.,*
    487 F.3d 1340 (11th Cir. 2007)...................... 18

*Caro-Galvan v. Curtis Richardson, Inc.,*
    993 F.2d 1500 (11th Cir. 1993)...................... 11

*Castillo v. Case Farms of Ohio, Inc.,*
    96 F. Supp. 2d 578 (W.D. Tex. 1999)................. 21

*Chellen v. John Pickle Co., Inc.,*
    446 F. Supp. 2d 1247 (N.D. Okla. 2006)............. 20

*Davis Brothers, Inc. v. Donovan,*
    700 F.2d 1368 (11th Cir. 1983)...................... 21

*DeLuna-Guerrero v. North Carolina Grower's
Ass'n, Inc.,*
    338 F. Supp. 2d 649 (E.D.N.C. 2004)................. 12

*Federal Express Corp. v. Holowecki,*
    552 U.S. 389 (2008)................................. 17

*Garcia v. Frog Island Seafood, Inc.,*
    644 F. Supp. 2d 696 (E.D.N.C. 2009)................. 4

*Jiao v. Shi Ya Chen,*
    No. 03 Civ. 0165(DF), 2007 WL 4944767
    (S.D.N.Y. Mar. 30, 2007)............................ 19

*Leach v. Johnston,*
    812 F. Supp. 1198 (M.D. Fla. 1992).................. 21

Cases -- continued

*Marshall v. DeBord d/b/a/ Bernie's Rest Haven,*
    No. 77-106-C, 1978 WL 1705
    (E.D. Okla. July 27, 1978) ........................... 20

*Marshall v. Glassboro Serv. Ass'n, Inc.,*
    1979 WL 1989 (D.N.J. Oct. 19, 1979) .................. 5

*Marshall v. Truman Arnold Distrib. Co.,*
    640 F.2d 906 (8th Cir. 1981) ........................ 20

*Masters v. Maryland Mgmt. Co.,*
    493 F.2d 1329 (4th Cir. 1974) ....................... 19

*Mitchell v. Lublin, McGaughy & Assoc.,*
    358 U.S. 207 (1959) .................................. 8

*Morante-Navarro v. T&Y Pine Straw, Inc.,*
    350 F.3d 1163 (11th Cir. 2003) ...................... 18

*Osias v. Marc,*
    700 F. Supp. 842 (D. Md. 1988) ....................... 4

*Ramos-Barrientos, et al. v. Bland,*
    No. 606CV089, 2010 WL 2521041
    (S.D. Ga. June 21, 2010) ............... 3, 4, 5, 6, 19

*Resias Polycarpe, et al. v. E&S Landscaping*
    *Serv., Inc., et al.,*
    ___ F.3d ___, 2010 WL 3398825
    (11th Cir. 2010) ................................ 17, 18

*Rutherford Food Corp. v. McComb,*
    331 U.S. 722 (1947) .................................. 8

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ............................. 15, 17

*Soler v. G. & U., Inc.,*
    833 F.2d 1104 (2d Cir. 1987) ............... 10, 18, 19

*Soler v. G. & U, Inc. & Sec'y of Labor,*
    768 F. Supp. 452 (S.D.N.Y. 1991) ........... 17, 21, 22

*Strong v. Williams,*
    No. 78-124-Civ-TG, 1980 WL 8134
    (M.D. Fla. Apr. 22, 1980) ........................... 21

Cases -- continued

*Tony & Susan Alamo Found. v. Secretary of Labor,*
    471 U.S. 290 (1985)................................. 8

*Williams v. Atlantic Coast Line R.R. Co.,*
    1 Wage and Hour Cases (BNA) 289 (E.D.N.C. 1940)..... 11

Statutes:

Fair Labor Standards Act of 1938,
    as amended; 29 U.S.C. 201 et *seq.*,................... 1

    29 U.S.C. 202(a)...................................... 8
    29 U.S.C. 202(b)...................................... 8
    29 U.S.C. 203(m)................................. *Passim*
    29 U.S.C. 204(a)...................................... 2
    29 U.S.C. 204(b)...................................... 2
    29 U.S.C. 206(a).................................. 6, 9
    29 U.S.C. 216(c)..................................... 2
    29 U.S.C. 217....................................... 2
    29 U.S.C. 218(a).................................... 22

Immigration & Nationality Act of 1990,

    8 U.S.C. 1101(a)(15)(H)(ii)(a)....................... 1
    8 U.S.C. 1184(c)(1)................................. 2
    8 U.S.C. 1188....................................... 2
    8 U.S.C. 1188(a)(1)................................. 2
    8 U.S.C. 1188(c)(4)..................... 7, 11, 12, 13

Migrant and Seasonal Agricultural Worker
    Protection Act, 29 U.S.C. 1801 et *seq*................ 4

Code of Federal Regulations:

    20 C.F.R. Part 655, subpart B........................ 2
    20 C.F.R. 655.100................................ 2, 14
    20 C.F.R. 655.103(a)............................... 14
    20 C.F.R. 655.121.................................. 14
    20 C.F.R. 655.122.................................. 14
    20 C.F.R. 655.122(d)(1)..................... 7, 11, 13
    20 C.F.R. 655.122(i)............................... 14
    20 C.F.R. 655.122(1)............................... 14
    20 C.F.R. 655.122(n)............................... 13
    20 C.F.R. 655.135................................... 3
    20 C.F.R. 655.135(f)............................... 14

Code of Federal Regulations - continued

20 C.F.R. 655.135(i)................................. 14
20 C.F.R. 655.151................................... 14
20 C.F.R. 655.152................................... 14
20 C.F.R. 655.153................................... 14
20 C.F.R. 655.170(b)................................ 13

29 C.F.R. Part 501.................................. 2
29 C.F.R. 531.3..................................... 3
29 C.F.R. 531.3(d)(1).......................... 6, 9, 18
29 C.F.R. 531.3(d)(2)......................... 6, 10, 12
29 C.F.R. 531.31............................... 11, 16
29 C.F.R. 531.32.................................... 3
29 C.F.R. 531.32(a)................................. 22
29 C.F.R. 531.32(c)................... 7, 9, 10, 11, 12
29 C.F.R. 531.33.................................... 3
29 C.F.R. 531.34.................................... 3
29 C.F.R. 531.35............................... 3, 6, 9
29 C.F.R. 531.36.................................... 3
29 C.F.R. 531.36(b)................................. 9
29 C.F.R. 531.38............................. 7, 11, 12

Miscellaneous:

75 Fed. Reg. 6884 (Feb. 12, 2010)................... 7

Fed. R. App. P. 29(a).............................. 1, 3

Department of Labor, Wage-Hour
    Field Operations Handbook, ¶30c02(b) (1988),
    available at www.dol.gov/whd/FOH.................... 15

Department of Labor, Wage-Hour
    Field Operations Handbook, ¶30c03(a)(2) (1988)
    available at www.dol.gov/whd/FOH.................... 15

Department of Labor, Wage-Hour
    Field Operations Handbook, ¶30c13(a)(4) (1988)
    available at www.dol.gov/whd/FOH............... 14, 15

Department of Labor, Wage-Hour
    Field Operations Handbook, ¶30c13(a)(4)(a) (1988),
    available at www.dol.gov/whd/FOH.................... 15

Department of Labor, Wage-Hour
    Field Operations Handbook, ¶30c13(a)(4)(b) (1988)
    available at www.dol.gov/whd/FOH.................... 15

Miscellaneous - continued

Department of Labor, Wage-Hour
    Field Operations Handbook, ¶30c13(a)(4)(c) (1988)
    available at www.dol.gov/whd/FOH..................... 15

United States Dep't of Labor, Opinion Letter,
    dated Oct. 12, 1943................................. 16

United States Dep't of Labor, Opinion Letter,
    dated Sept. 18, 1959............................... 16

United States Dep't of Labor, Opinion Letter,
    dated June 16, 1975................................ 16

United States Dep't of Labor, Opinion Letter,
    1997 WL 998029, dated August 19, 1997.............. 16

No. 10-13412-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NICOLAS RAMOS-BARRIENTOS, ET AL.,

Plaintiffs-Appellants,

v.

DELBERT C. BLAND and BLAND FARMS, LLC,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Georgia

BRIEF FOR THE SECRETARY OF LABOR AS
*AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

Pursuant to Federal Rule of Appellate Procedure 29(a), the
Secretary of Labor ("Secretary") submits this brief as *amicus
curiae* in support of Plaintiffs-Appellants with respect to
whether the Fair Labor Standards Act ("FLSA" or "Act"), 29
U.S.C. 201 et seq., permits H-2A employers to take credit toward
the FLSA minimum wage for the cost of housing that they provide
to their H-2A employees when the H-2A program requires employers
to provide such housing free of charge.[1]

---

[1] The H-2A visa program, *see* 8 U.S.C. 1101(a)(15)(H)(ii)(a), is a
voluntary program that allows employers to bring foreign workers
into the United States in very limited circumstances, and only
after the United States Department of Labor ("Department") has

## STATEMENT OF THE ISSUE

Whether the district court erred when it held that, pursuant to section 3(m) of the FLSA, 29 U.S.C. 203(m), an employer may take credit toward the FLSA minimum wage for the cost of housing that the employer is obligated to furnish free of charge to agricultural employees working temporarily in the United States on H-2A visas.

## STATEMENT OF IDENTITY OF THE AMICUS CURIAE, INTEREST, AND AUTHORITY TO FILE

The Secretary is responsible for the administration and enforcement of the FLSA. *See* 29 U.S.C. 204(a) and (b), 216(c), and 217. The Secretary also is responsible for the procedures employers must follow to obtain labor certifications authorizing the admission of H-2A workers, and for the enforcement of the H-2A program's worker protection provisions. *See* 8 U.S.C. 1184(c)(1) and 1188; 20 C.F.R. Part 655, subpart B; 29 C.F.R. Part 501. The Secretary has compelling reasons to participate as *amicus curiae* in this case, because she has a substantial interest in the correct interpretation of the FLSA to ensure that all employees receive the wages to which they are entitled. In particular, the Secretary is interested in the correct

certified that there are not enough able and qualified U.S. workers available for the position, and that the employment of foreign workers will not adversely affect the wages and working conditions of workers in the U.S. who are similarly employed. *See* 8 U.S.C. 1188(a)(1); 20 C.F.R. 655.100.

interpretation of section 3(m) of the Act and the regulations interpreting it, including the requirements that employers may not shift their business expenses to employees and that employees must receive at least the minimum wage free and clear. *See* 29 C.F.R. 531.3, 531.32-.36. The Secretary also has an interest in ensuring that H-2A employers abide by the requirements of the H-2A visa program relating to employees' terms and conditions of employment, because employers must certify to the Department that they will comply with these requirements in order to obtain a labor certification authorizing their participation in the temporary nonimmigrant worker program. *See* 20 C.F.R. 655.135.

The Secretary submits this amicus brief pursuant to Federal Rule of Appellate Procedure 29(a).

## THE DISTRICT COURT'S DECISION

1. The H-2A employees in this case argued in the district court that Bland had not properly reimbursed them in the first workweek for certain inbound transportation, border crossing, and other expenses that it had required them to bear, expenses that the employees asserted were primarily for the benefit of the employer.[2] *See Ramos-Barrientos, et al. v. Bland*, 2010 WL

---

[2] The Secretary's participation as amicus is limited to the issue of whether an employer may take credit toward the FLSA minimum wage for housing it is required by law to provide free of charge.

3

2521041, at *2 (S.D. Ga. 2010). In response, Bland asserted that if it received credit under section 3(m) of the FLSA for the housing it furnished, there was no shortfall in wages. *Id.* Noting the "dearth of case law" on point, the district court rejected the argument that an H-2A employer may not take credit toward the FLSA minimum wage for housing that it must provide free of charge pursuant to the H-2A program and granted summary judgment to Bland. *Id.* at *3.

2. In so ruling, the court found the three cases the employees relied upon to be unhelpful. In two of those cases, the courts concluded that the employers were not entitled under section 3(m) to take any credit for lodging that they furnished because the housing had been provided in violation of state law. Thus, the court in *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696 (E.D.N.C. 2009), denied any credit for housing provided to H-2B workers because the employer had violated state law by failing to register with the state and to have the housing inspected prior to the employees' occupancy. The court in *Osias v. Marc*, 700 F. Supp. 842 (D. Md. 1988), similarly denied any wage credit for housing provided to domestic migrant farmworkers covered by the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"), 29 U.S.C. 1801, *et seq.*, because the housing was found to be seriously substandard. The district court here distinguished these two cases, because there was no

4

argument that the housing Bland furnished was substandard or otherwise provided in violation of the law. *See Ramos-Barrientos,* 2010 WL 2521041, at *4.

The third case the employees relied upon was *Marshall v. Glassboro Serv. Ass'n, Inc.*, 1979 WL 1989 (D.N.J. 1979), in which the court denied the employer the right to take any credit for housing provided to migrant farmworkers from Puerto Rico because a contract in the nature of a collective bargaining agreement, negotiated between the growers' association and the Commonwealth of Puerto Rico on behalf of the workers, required the employer to provide lodging at no cost. Citing the statutory construction canon of *expressio unius est exclusion alterius*, the district court stated that Congress, in section 3(m), would not have limited the exclusion from wages to housing and facilities provided pursuant to a collective bargaining agreement if it intended an additional exclusion for situations where the employer agrees in an individual employment contract to provide housing at no cost. *See Ramos-Barrientos*, 2010 WL 2521041, at *4.

3. The district court also rejected the employees' argument that allowing a wage credit under the FLSA would effectively cause Bland to be in violation of the H-2A requirement to provide housing free of charge, stating that this argument "convolutes the distinct requirements that employers

5

must adhere to under the FLSA and under the Department of Labor's H-2A program. . . . Defendants complied with H-2A regulations when they provided free housing to Plaintiffs and other H-2A employees. Defendants do not violate those regulations by taking a § 203(m) wage credit for the reasonable cost of housing provided to their employees, something that the FLSA permits them to do." *Ramos-Barrientos,* 2010 WL 2521041, at *4. Therefore, the district court held that Bland was entitled under section 3(m) to take credit toward the FLSA minimum wage for the housing it provided its H-2A workers. *Id.* at *5.

## SUMMARY OF THE ARGUMENT

FLSA-covered employers are required to pay their non-exempt employees at least the minimum wage "free and clear" for all hours worked. *See* 29 U.S.C. 206(a); 29 C.F.R. 531.35. In order to comply with the free and clear requirement, an employer may not take credit toward the minimum wage for the costs of furnishing facilities that are primarily for the benefit or convenience of the employer. *See* 29 C.F.R. 531.3(d)(1). Employer business expenses, such as tools of the trade and uniforms required by the nature of the job, are primarily for the benefit of the employer. *See* 29 C.F.R. 531.3(d)(2). Similarly, expenses that an employer is required by law to pay, such as worker's compensation taxes or the employer's share of Social Security taxes, are business expenses that are primarily

6

for the benefit of the employer. *See* 29 C.F.R. 531.32(c) and 531.38.

Because an H-2A employer that brings foreign workers into the country to perform temporary agricultural labor or services is required to furnish housing free of charge pursuant to the terms of the H-2A visa program, *see* 8 U.S.C. 1188(c)(4) and 20 C.F.R. 655.122(d)(1),[3] such an expense is an H-2A employer business expense. This makes the employer the primary beneficiary of that housing expense for purposes of section 3(m). Thus, the H-2A requirement to furnish housing at no cost rebuts the presumption created by section 3(m) that an employer ordinarily may count toward the minimum wage the reasonable cost of lodging for employees.

Therefore, this Court should reverse the district court's decision because the district court erred by failing to conduct a primary beneficiary analysis under section 3(m), and by concluding that an H-2A employer may take credit toward the FLSA minimum wages due in the first workweek for the H-2A required housing. Such a reversal would be consistent with this Court's decision in *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d

---

[3] The regulations governing the H-2A program were updated on February 12, 2010. *See* 75 Fed. Reg. 6884. Because there have been no substantive changes in the relevant H-2A regulations compared to the regulations in effect during the time period covered by this case, the citations in this brief refer to the current version of the regulations.

7

1228, 1236-37 (11th Cir. 2002), in which this Court held that where an expense is primarily for the benefit of the employer, the employer must reimburse the employees during the workweek in which the expense arose up to the point that their wages satisfy the FLSA minimum wage.

## ARGUMENT

HOUSING THAT AN H-2A EMPLOYER IS OBLIGATED TO FURNISH FREE OF CHARGE TO ITS EMPLOYEES IS AN EMPLOYER BUSINESS EXPENSE AND THUS PRIMARILY FOR THE BENEFIT OF THE EMPLOYER

A. Statutory and Regulatory Background

1. The FLSA is a statute of broad remedial purpose. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Congress enacted the minimum wage provision of the FLSA to protect workers from substandard wages and to prevent labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981); 29 U.S.C. 202(a), (b). Therefore, the Supreme Court "has consistently construed the Act 'liberally to apply to the furthest reaches consistent with congressional direction'" in order to effectuate the broad remedial and humanitarian purposes of the Act. *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985) (quoting *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 211 (1959)).

8

2. Section 6 of the FLSA requires covered employers to pay their nonexempt employees at least the minimum wage (currently $7.25 per hour) for each hour worked. *See* 29 U.S.C. 206(a). Generally, employers must pay the wages due in cash and must pay the wages "free and clear." 29 C.F.R. 531.35. However, section 3(m) of the FLSA provides that an employer also may count as wages "the reasonable cost, as determined by the Administrator [of the Wage and Hour Division], to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging or other facilities are customarily furnished by such employer to his employees: *Provided*, That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. 203(m).

The implementing regulations provide that the "cost of furnishing 'facilities' found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. 531.3(d)(1); *see* 29 C.F.R. 531.32(c) and 29 C.F.R. 531.36(b); *see also Arriaga*, 305 F.3d at 1241-44 (transportation and visa costs incurred by H-2A employees are primarily for the benefit of the employer and must

9

be reimbursed up to the point that the employees' wages satisfy the FLSA minimum wage); *Soler v. G&U, Inc. and Secretary of Labor*, 833 F.2d 1104, 1109 (2d Cir. 1987) (applying the balancing of benefits test to lodging and holding that the test provides a common-sense and logical approach to resolve whether costs may be counted toward the payment of an employee's wage). In applying this primary benefit test, the regulations specifically state that employer business expenses such as tools of the trade, other materials and services incidental to carrying on the employer's business, and uniforms required by the nature of the business are primarily for the convenience of the employer. *See* 29 C.F.R. 531.3(d)(2). The regulations similarly recognize that other employer business expenses, such as electric power used for commercial production, company police and guard protection, and taxes and insurance on the employer's buildings, are primarily for the benefit of the employer. *See* 29 C.F.R. 531.32(c).

Moreover, because an employer is not permitted to operate its business in violation of the law, expenses imposed on the employer by law also must be viewed as inherently for the primary benefit of the employer. Thus, the section 3(m) regulations recognize that "medical services and hospitalization which the employer is bound to furnish under workmen's compensation acts or similar Federal, State or local law" do not

10

qualify as facilities because they are primarily for the benefit of the employer. 29 C.F.R. 531.32(c). Furthermore, "[n]o deduction may be made for any tax or share of a tax which the law requires to be borne by the employer." 29 C.F.R. 531.38. For example, legally-required employer expenses like the employer's share of Social Security taxes and its taxes for unemployment compensation do not qualify as wages under section 3(m). *See Williams v. Atlantic Coast Line Railroad Co.*, 1 Wage and Hour Cases (BNA) 289, 294 (E.D.N.C. 1940). Finally, the regulations provide that "[f]acilities furnished in violation of any Federal, State, or local law, ordinance or prohibition will not be considered facilities 'customarily' furnished." 29 C.F.R. 531.31; *see Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 n.29 (11th Cir. 1993).

3. The H-2A program requires employers to furnish housing free of charge to their H-2A employees. The statute states that employers "shall furnish housing," either by providing housing that meets applicable Federal safety standards or by securing housing that meets the local standards for rental and/or public accommodations. 8 U.S.C. 1188(c)(4). The housing must be provided or secured "in accordance with regulations," *id.*, and the legislative regulations implementing this requirement state that the "employer must provide housing at no cost to the H-2A workers." 20 C.F.R. 655.122(d)(1). The statute further

11

requires that the "determination as to whether the housing furnished by an employer for an H-2A worker meets the requirements" of the statute must be made prior to the Secretary's decision whether to issue a labor certification allowing the employer to seek H-2A workers. 8 U.S.C. 1188(c)(4).

B. Housing that an H-2A Employer is Required by Law to Provide Free of Charge is an Employer Business Expense

1. The district court's decision is flawed because it fails to evaluate which party was the primary beneficiary of the housing that Bland was required by the H-2A program to provide or secure free of charge. *See DeLuna-Guerrero v. North Carolina Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 657 (E.D.N.C. 2004) ("[T]he ultimate issue before the court is whether the [] costs here were primarily for the benefit or convenience of the employer.").

As the regulations implementing section 3(m) demonstrate, employer business expenses must be viewed as primarily for the benefit of the employer. This is true whether the business expense is a uniform or tool of the trade, *see* 29 C.F.R. 531.3(d)(2), or is an expense the employer is required by law to bear, such as worker's compensation, unemployment compensation, or taxes. *See* 29 C.F.R. 531.32(c) and 531.38.

12

The H-2A program requires employers to provide or secure housing for their H-2A employees that meets applicable safety standards. *See* 8 U.S.C. 1188(c)(4). The employer must provide or secure that housing free of charge. *See* 20 C.F.R. 655.122(d)(1). This requirement, unique to the H-2A program, renders the housing an employer business expense, as a matter of law, for purposes of section 3(m). Additionally, the requirement for such free housing is an inherent and inevitable result of the employer's decision to participate in the H-2A program. *Cf. Arriaga*, 305 F.3d at 1242. The H-2A employees are foreign workers coming into the country for temporary employment. They obviously will have no permanent housing of their own. And their work for the H-2A farmers typically takes them to remote, rural locations, where their housing is under the control of their employers. Further, these H-2A guest workers have limited rights when they arrive. They may enter the country only for temporary agricultural employment of less than 12 months, absent extraordinary circumstances. *See* 20 C.F.R. 655.170(b). Moreover, they have no right to transfer to other U.S. employers, or to remain in the country if they quit or after their work contract period expires, unless they have secured subsequent temporary agricultural employment under the H-2A visa program. *See* 20 C.F.R. 655.122(n) and 655.135(i). Given these circumstances, employers benefit far more than usual

13

from the expenses incident to the employment relationship, and employees benefit less than normal from the job. Accordingly, the employer must be viewed as the primary beneficiary of this business expense under section 3(m), and an H-2A employer may not take section 3(m) credit for such a legally required expense.[4]

2. The Wage and Hour Division's Field Operations Handbook ("FOH") specifically addresses the application of section 3(m) to lodging expenses in these particular circumstances. The FOH states with regard to the wages of migrant and seasonal agricultural workers that an employer may generally take credit for "[l]odging used by a worker, including utility costs, *unless*

---

[4] The design of the H-2A program further confirms that the employer is the primary beneficiary of the required H-2A housing. The program imposes significant obligations on employers who seek to bring foreign guest workers into the U.S. to perform temporary agricultural work. For example, employers are obligated to follow a number of prescribed recruiting steps (e.g., submit a job order to the appropriate State Workforce Agency for posting; advertise the job in the newspaper for at least two days, one of which must be a Sunday; and contact laid-off U.S. employees and offer them the job). *See* 20 C.F.R. 655.121 and 655.151-.153. Employers also must offer and pay at least the prevailing wage or adverse effect wage rate; offer full-time employment; and guarantee workers wages for at least three-quarters of the hours set forth in the work contract period. *See* 20 C.F.R. 655.122(i), 655.122(l) and 655.135(f). The Department issues a labor certification authorizing employers to proceed with the H-2A visa program only if all these steps demonstrate both that there are not sufficient qualified U.S. workers available to the employer to perform the work, and that hiring H-2A workers will not adversely affect the wages and working conditions of U.S. workers similarly employed. *See* 20 C.F.R. 655.100 and 655.103(a).

14

required to be provided free of charge pursuant to the
employment contract or applicable law." FOH, ¶30c13(a)(4),
www.dol.gov/whd/FOH (emphasis added) (copies of the relevant
pages of the FOH are attached in Addendum). The FOH also states
that "[l]odging, like meals, is ordinarily considered for the
benefit and convenience of the employee. Circumstances may
exist, however, where housing is of little benefit to employees,
as where an employer requires an employee to live on the
employer's premises to meet some need of the employer, or where
the employee must travel away from home to further the
employer's business." FOH, ¶30c03(a)(2); cf. Skidmore v. Swift
& Co., 323 U.S. 134, 137 (1944) ("Living quarters may in some
situations be furnished as a facility of the task and in another
as a part of its compensation."). With regard to migrant and
seasonal agricultural workers, the FOH states that no credit may
be taken where: workers are required to live on the premises as
a condition of employment or where for other reasons the housing
primarily benefits the employer; the housing fails to meet
substantive safety and health standards and has been denied an
occupancy permit; or MSPA civil money penalties have been
assessed for a substantive safety and health violation. See
FOH, ¶30c13(a)(4)(a)-(c); see also FOH, ¶30c02(b) (facilities
furnished in violation of any law, such as housing denied an
occupancy permit or which resulted in MSPA civil money

15

penalties, are not considered customarily furnished); 29 C.F.R. 531.31 (same).

3.   Other Wage and Hour Division guidance interpreting section 3(m) also provides support for the principle enunciated in the FOH that an employer may not take credit for lodging required to be provided by law. *See* Wage and Hour Opinion Letters dated August 19, 1997, 1997 WL 998029 (stating with regard to the hiring of an employee on an *au pair* visa that "an employer may not take credit for facilities which the employer is required by law or regulation to provide") (copy attached in Addendum); June 16, 1975 (where state law limits the housing credit to a maximum of $140 per month, even though the reasonable cost or fair value is $400 per month, "the law providing the greater compensation to the employee will prevail" and the state law will govern the amount of credit allowed in computing the wage paid for FLSA minimum wage purposes) (copy attached in Addendum); Sept. 18, 1959 ("Costs of medical care required to be furnished by law, such as by workmen's compensation laws, must be excluded.") (copy attached in Addendum); and Oct. 12, 1943 ("The employer will be deemed to have received a benefit if the deduction [for a hospitalization prepayment plan] is used to pay for hospitalization for which the employer would be required by law to pay.") (copy attached in Addendum).   Similarly, the Wage and Hour Division's

16

enforcement practices provide further support for the principle that an employer may not take credit for expenses it is lawfully required to bear. *See Soler v. G&U, Inc. and Secretary of Labor*, 768 F. Supp. 452, 462 (S.D.N.Y. 1991) (on remand from the Second Circuit, upholding Wage and Hour's refusal to allow any credit for the value of heating fuel provided to the workers, because state law required that the fuel or power necessary to heat a room to 68 degrees "shall be provided free of charge to the occupants").

4.    Therefore, the Department's clear and longstanding position is that an employer may not take a section 3(m) credit for payments that it is required by law to make. Specifically, because an employer is not permitted to operate its business in violation of the law, expenses imposed on the employer by law must be viewed as business expenses that are primarily for the benefit of the employer. This interpretation of section 3(m) is entitled to deference, as the Department is the agency charged with administering and enforcing the FLSA and the interpretation is a reasonable one. *See Skidmore v. Swift & Co.*, 323 U.S. at 140 (the Administrator's FLSA interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"); *see also Federal Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008); *Resias Polycarpe, et al. v. E&S Landscaping Service, Inc., et al.*, ___

17

F.3d ___, 2010 WL 3398825, at *7 (11th Cir. 2010) (giving deference to the Department's FLSA interpretation set forth in an amicus brief and opinion letter); *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340 1342-43 (11th Cir. 2007) (giving deference to the Department's interpretive statements); *Morante-Navarro v. T&Y Pine Straw, Inc.*, 350 F.3d 1163, 1169-70 (11th Cir. 2003).

5. The Secretary's analysis is fully consistent with, and does not in any way diminish, section 3(m)'s allowance for a credit for lodging. But, as explained *supra*, that allowance must ultimately be viewed in the context of a "primary benefit" analysis. The district court here erred when it failed to recognize that, while section 3(m) creates a presumption that the employee is the primary beneficiary of employer-provided lodging, the presumption can be rebutted. As the Second Circuit stated in *Soler*, 833 F.2d at 1109, although section 3(m) creates a presumption that housing facilities ordinarily should be included in an employee's regular rate of pay, an exception to this presumption exists in special circumstances where the facilities are primarily for the benefit or convenience of the employer under 29 C.F.R. 531.3(d)(1). The court in *Soler* recognized that special circumstances may exist, for example, where lodging is of little benefit to an employee, such as when an employer requires an employee to live on-site to meet a

18

particular need of the employer, or when an employee is required to be on call at the employer's behest. However, "[r]ecourse to the Regulation's protection is best left to the Administrator's judgment based on the facts of particular cases submitted to him." *Id.* at 1110. Where the statutory presumption is rebutted, "the Administrator is empowered to find that the cost of on-site housing is not reasonable, and therefore may not be subsumed within an employee's wage." *Id.* By contrast, the district court here concluded that Bland was entitled to credit under section 3(m) simply because the housing was customarily furnished. *See Ramos-Barrientos*, 2010 WL 2521041, at *5.

Numerous other courts have applied the general principle that section 3(m) creates only a rebuttable presumption and, finding the presumption rebutted, have disallowed a housing credit under section 3(m). For example, courts have found the presumption rebutted where, due to the nature of an employee's job duties, the lodging was primarily for the benefit of the employer. *See Masters v. Maryland Management Co.*, 493 F.2d 1329, 1333-34 (4th Cir. 1974) (housing provided to employee of apartment management company who resided on the premises to be on call for up to 24 hours a day was primarily for the benefit of the employer); *Jiao v. Shi Ya Chen*, 2007 WL 4944767, at **13-14 (S.D.N.Y. 2007) (presumption that section 3(m) credit should be allowed for lodging was rebutted where it was primarily for

19

the benefit of the employer because the employee was required to live at the hotel to assist guests through the night); *Marshall v. DeBord*, 1978 WL 1705, at \*\*5-6 (E.D. Okla. 1978) (housing was primarily for the benefit of the employer because the employees were required to live at the nursing home and be available 24 hours a day and, therefore, no credit was allowed); and *Bailey v. Pilots' Ass'n for the Bay and River Delaware*, 406 F. Supp. 1302, 1305 (E.D. Pa. 1976) (housing was primarily for the benefit of the employer because the employee was required to remain on board the pilot boat for seven days at a time); *cf. Marshall v. Truman Arnold Distributing Co.*, 640 F.2d 906, 909 (8th Cir. 1981) (utilizing a primary benefit analysis, but concluding under the particular facts presented that the housing was primarily for the benefit of the employees where it was the result of voluntary contractual negotiations between the parties, even though gas stations received some benefit because the employees' presence deterred crime and vandalism).

Courts also have refused to allow any credit for lodging where the housing was substandard or otherwise in violation of the law. *See Chellen v. John Pickle Co., Inc.*, 446 F. Supp. 2d 1247, 1279 (N.D. Okla. 2006) (no section 3(m) lodging credit allowed for housing that is "seriously substandard"); *Archie v. Grand Central Partnership, Inc.*, 86 F. Supp. 2d 262, 270 (S.D.N.Y. 2000) (no credit allowed for lodging furnished in

20

violation of state law); *Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 637-40 (W.D. Tex. 1999) (no credit allowed for housing that is seriously substandard or provided in violation of law); *Soler v. G&U, Inc.*, 768 F. Supp. at 465-55 (no credit allowed where migrant farm workers' camp was operated in violation of its state permit due to overcrowding); *Strong v. Williams*, 1980 WL 8134, at *5 (M.D. Fla. 1980) (no credit allowed for housing provided to migrant farm workers in violation of state law); *see also Leach v. Johnston*, 812 F. Supp. 1198, 1213 (M.D. Fla. 1992) (no credit allowed for alcoholic beverages provided to employees in violation of state law). Thus, although section 3(m) specifically refers to "lodging," it should be construed to establish a presumption that an employer may take credit for housing in ordinary circumstances, but that such presumption may be rebutted.

Indeed, decisions of this Court are consistent with the conclusion that section 3(m) creates only a rebuttable presumption. For example, in *Davis Brothers, Inc. v. Donovan*, 700 F.2d 1368 (11th Cir. 1983), the Court discussed approvingly cases where credit had been disallowed for food or lodging. Citing cases that involved "grossly inadequate facilities for which employers sought excessive credit," this Court concluded, "[a]s one might expect, the court denied the employer any credit." *Id.* at 1371. Similarly, in *Arriaga*, 305 F.3d at 1241

n.16, this Court cited with approval two of the cases listed *supra* (*Masters* and *Bailey*), which held that lodging was not includable as wages because it was primarily for the benefit and convenience of the employer.

6. Allowing a contrary result would effectively negate the H-2A requirement to furnish housing free of charge and diminish the employees' entitlements under that law. Moreover, such a result would be in tension with section 18(a) of the FLSA, which provides that nothing in the FLSA "shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter." 29 U.S.C. 218(a). As the district court concluded in *Soler*, when deferring to the Wage and Hour Administrator's interpretation with regard to a state law requiring that heating fuel "shall be provided free of charge," such a law effectively establishes a higher minimum wage than the FLSA. Although normally section 3(m) would allow an employer credit for heating fuel provided for the employee's personal use, *see* 29 C.F.R. 531.32(a), under section 18(a) the conflict with the normal rule must be resolved by requiring the employer to comply with the higher minimum wage. *See* 768 F. Supp. at 462-63.

22

## CONCLUSION

For the foregoing reasons, the Secretary requests that this Court reverse the district court and hold that an H-2A employer may not take credit toward the FLSA minimum wage for the cost of the housing that it is required to furnish to its employees free of charge, because such expenses are primarily for the benefit of the H-2A employer.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

WILLIAM C. LESSER
Acting Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

DIANE A. HEIM
Attorney
U.S. Department of Labor
Office of the Solicitor
Room N-2716
200 Constitution Avenue, NW
Washington, DC 20210
Phone: (202) 693-5555
Fax:   (202) 693-5774
E-mail:  heim.diane@dol.gov

## CERTIFICATE OF COMPLIANCE

This Brief complies with the length limitation set forth in Federal Rules of Appellate Procedure 35(b)(2) and 40(b) because it does not exceed 7,000 words (excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)).

This Brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6). This Brief was prepared using Microsoft Office Word utilizing Courier New 12 point and a monospaced font.

DIANE A. HEIM
Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2010, a copy of the Brief for the Secretary Of Labor as *Amicus Curiae* in Support of Plaintiffs-Appellants was filed with the Clerk of the Court by mailing the original and six copies via UPS overnight mail to the Clerk of the Court at the following address, and one copy was served upon the following counsel by overnight UPS mail:

> Clerk, U.S. Court of Appeals
> Appeal No. 10-13412-CC
> Eleventh Circuit Court of Appeals
> 56 Forsyth Street, N.W.
> Atlanta, Georgia 30303
>
> William E. Dillard
> Wiley A. Wasden, III
> Brennan & Wasden, LLP
> P.O. Box 8047
> Savannah, Georgia 31412
>
> Gregory S. Schell
> Daniela Dwyer
> Migrant Farmworker Justice Project
> 508 Lucerne Avenue
> Lake Worth, Florida 33460-3819
>
> Robert J. Willis
> Post Office Box 1269
> Raleigh, North Carolina 27602
>
> James M. Knoepp
> Immigrant Justice Project
> Southern Poverty Law Center
> 233 Peachtree Street, N.E.
> Suite 2150
> Atlanta, Georgia 30303

Weeun Wang
Farmworker Justice
1126 16th Street, N.W.
Suite 270
Washington, D.C. 20036

Diane A. Heim
Attorney
U.S. Department of Labor

# ADDENDUM

30c     PAYMENT OF WAGES

30c00   Method of payment.

(a)   Wages may take the form of cash or facilities as defined in Reg 531. An employer who claims furnished facilities (meals, lodging, or other) as wages must maintain the records required in Reg 516.27.

(b)   The payment of wages through direct deposit into an employee's bank account is an acceptable method of payment, provided employees have the option of receiving payment by cash or check directly from the employer. As an alternative, the employer may make arrangements for employees to cash a check drawn against the employer's payroll deposit account, if it is at a place convenient to their employment and without charge to them.

30c01   "Facilities" furnished under Sec 3(m).

(a)   Section 3(m) of FLSA permits an employer, under conditions specified in Reg 531, to count toward its MW obligation, the "reasonable cost" of furnishing board, lodging, or other facilities which are customarily furnished to employees. Sec 3(m) also authorizes the Secretary to determine the "fair value" of the board, lodging, or other facilities based upon average cost to the employer or to groups of employers similarly situated, or on the average value to groups of employees. Where "reasonable cost" under Sec 3(m) has been established by an employer and appears to be excessive in relation to the facilities furnished, it will be necessary to ascertain whether the "fair value" of the facilities in question is lower than the "reasonable cost". If so , the employer must use the "fair value" rather than the "reasonable cost" in determining its wage obligation. In no case will the "fair value" be utilized where it is greater than the "reasonable cost".

(b)   The cost of board, lodging, or other facilities shall not be included as wages to the extent excluded therefrom under the terms of a bona fide collective bargaining agreement applicable to the particular employee. In most cases, a determination whether such an exclusion exists will be based upon the written provisions of the collective bargaining agreement.

(c)   Employees must receive the benefit of the facility for which the employer is taking a wage credit. Moreover, the reasonable cost to the employer of furnishing board, lodging, or other facilities (or the fair value thereof) must be included in the employee's R/R of pay for the purpose of computing OT pay.

30c02   Customarily furnished.

(a)   The reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee only where "customarily furnished" to the employee. This requirement is satisfied if either the facilities are furnished regularly by the employer to its employees or if

the same or similar facilities are customarily furnished by other employers engaged in the same or similar trade, business, or occupation in the same or similar communities. However, "customarily furnished" does not require establishing an industry-wide practice with regard to charges being made for facilities furnished to employees.

(b)  Facilities furnished in violation of any Federal, State, or local law, ordinance, or prohibition will not be considered facilities customarily furnished, (e.g. housing that has been denied an occupancy permit, or which, after inspection, results in MSPA/CMPs). Any question as to whether facilities are furnished in violation of any law should be referred to the AA/OPO for resolution.  Any such referral should include a detailed discussion of the facts and a copy of the applicable law.

30c03   Primarily for the benefit of the employee.

(a)  The crediting by an employer of facilities furnished to employees as wages will depend on whether such facilities are furnished primarily for the benefit or convenience of the employee, as determined by WH. Where the primary benefit of such facilities is to the employer's business interest, credit will be denied. The following are commonly viewed as furnished primarily for the benefit or convenience of employees:

(1) Meals

Meals furnished by the employer are regarded as primarily for the benefit and convenience of the employees. This rule does not apply, however, to the meal expenses incurred by an employee while traveling away from home on the employer's business. (See IB 778.217(b)(3).)

(2) Lodging

Lodging, like meals, is ordinarily considered for the benefit and convenience of the employee. Circumstances may exist, however, where housing is of little benefit to employees, as where an employer requires an employee to live on the employer's premises to meet some need of the employer, or where the employee must travel away from home to further the employer's business. In such circumstances, the housing will be considered as primarily benefiting the employer. (Note: while it may be to the employer's advantage to provide such facilities at or near the worksite, courts have consistently taken the view that the employer may take a wage credit when the facilities are primarily for the benefit or convenience of the employee.)

### (3) Transportation

a. Transportation furnished employees between their homes and work (i.e. normal, daily home-to-work travel) where the travel time does not constitute hours worked is generally an "other facility." However, transportation which is an incident of or necessary to the employment is not an "other facility." (See FOH 30c13 regarding transportation of migrant and seasonal agricultural workers.)

b. Transportation furnished for normal home to work travel from a voluntary assembly point to a job site and vice versa where the time does not constitute hours of work and the transportation is primarily for the benefit of the employees is an "other facility." In contrast, travel to distant or remote job sites is normally for the employer's benefit and does not qualify as an "other facility."

c. Cars furnished by an employer to employees primarily for the personal transportation use of the employees and not primarily for company business are "facilities" for which a wage credit may be claimed by the employer. (See FOH 30c11 regarding demonstrators used by automobile salespersons.)

### (4) Merchandise

Goods or merchandise, such as clothing and appliances, may be considered "other facilities" under Sec 3(m) and Reg 531. Only the actual cost to the employer (not necessarily the retail cost) may be taken as a wage credit.

### (5) Tuition expenses

Tuition furnished to an employee for courses or training for the individual's own personal benefit is a bona fide "facility" for which a wage credit may be taken, unless the training is related to employment or is required to retain employment.

### (6) Child care

Child care facilities which are furnished by an employer are bona fide "facilities" for which a wage credit may be taken.

30c13  Deductions from wages of migrant and seasonal agricultural workers.

(a)  The reasonable cost or fair value of facilities furnished a migrant or seasonal agricultural worker are generally creditable as wages. (However, see FOH 30c03.)  Examples of facilities for which deductions or credits are generally permissible include:

(1)  Meals and beverages actually furnished to the worker.

(2)  Off-the-job insurance authorized by the worker.

(3)  Canteen articles purchased by the worker, but not cigarettes or alcoholic beverages sold to the worker, if such sales are determined to be unlawful by appropriate local law enforcement authorities.  Apparent violations of State or local licensing laws should be referred promptly to the appropriate enforcement authority.  (See FOH 52a09, 53g03 and 54: WH-124.)  Prior to disallowing a deduction or wage credit based upon action by a State or local authority concerning illegal sales, the matter should be discussed through JRC procedures.

(4)  Lodging used by a worker, including utility costs, unless required to be provided free of charge pursuant to the employment contract or applicable law.  However, no credit may be taken nor may any charge be made where:

   a.  workers are required to live on the premises as a condition of employment or where for other reasons the housing primarily benefits the employer rather than the employee, or

   b.  the housing has been denied an occupancy permit because of failure to meet substantive S & H standards as determined by an inspection by any agency, or

   c.  S & H violations have been found for which MSPA CMPs are being assessed or violations of substantive S & H standards have been found by OSHA, a State, or county agency.  If the violations are corrected, a charge may be made or a credit taken for such lodging only during the period of compliance.

(b)  ETA regulations require that workers placed pursuant to a Job Service clearance order who are unable to return daily to their permanent residence must receive housing as a term and condition of their employment.  Such workers (and accompanying family members) must receive housing at no cost or public housing which meets the Federal and State standards (20 CFR 653.501(d)(2)(xv)).  Where it appears that a deduction has been made or a wage credit taken in apparent violation of ETA regulations, the matter should be reviewed through JRC before disallowing the deduction or wage credit.

(c) An employer who makes deductions from the wages of workers for board, lodging or other facilities or who furnishes such facilities to workers as additions to wages is required to maintain records substantiating the cost of such facilities in accordance with Reg 516.27.

(d) In Marshall v. Glassboro Service Association, Inc., the Third Circuit affirmed the district court's judgment that money advanced to farm workers for transportation costs from Puerto Rico to the mainland was primarily for the benefit of the employer and therefore could not be deducted from the workers' wages to the extent it reduced the wages below the statutory minimum. The court similarly upheld the district court's conclusion that FLSA prohibits the employer from taking a wage credit for facilities excluded from wages by the terms of a labor agreement which is the functional equivalent of a collective-bargaining agreement. The U.S. Supreme Court denied review. The Court of Appeals also ruled that, regardless of the manner or method by which the employer sought to pass on to its employees certain transportation costs, where the effect was to bring the wage rate below the statutory minimum, such practice was unlawful.

(e) It is the WH position that no deduction that cuts into the MW may be made for transportation of migrant workers from the point of hire and return to that point. This is so since in virtually all situations the transportation is primarily for the benefit of the employer and transportation costs are an incident of and necessary to the employment of migrant workers. Where an employer advances money to migrant workers to cover transportation expenses from the point of hire to a worksite, the employer may not recoup such advances when to do so results in a worker receiving less than the statutory MW. Such remains the case even though the transportation costs so recovered are accumulated and subsequently returned to the worker at some specified time during the season or upon the worker's return to the point of hire, after the individual has worked a full season or specified portion thereof. Further, such transportation costs may not be included as part of an employer's cost of furnishing board, lodging, or other facilities.

(f) Farm labor contractors and agricultural associations often provide daily transportation to both migrant and seasonal farmworkers as an integral part of their business of supplying agricultural workers to those who use their farm labor contracting services. Agricultural employers also transport their own workers under similar circumstances. Such daily transportation is provided to assure that sufficient workers will be available at the required time and place since the workers being transported are needed to work upon perishable commodities. Their availability for employment often depends upon being provided transportation. Where alternative transportation is readily available which the workers are permitted to use (i.e., personal auto or carpool arrangements) and where they know the location of the place where they are to work, the reasonable cost to an employer (or fair value, whichever is less) in providing transportation may be creditable towards wages.

In contrast, where furnishing transportation to workers is primarily for the benefit and convenience of the employer, and is necessary to and an incident of the employment, it is not considered a facility within the meaning of section 3(m). (See Reg 531.32(a) and (c).) Accordingly, it is the WH position that:

(1) Where the transportation is an incident of and necessary to the employment, it is for the benefit of the employer and no deduction may be made for the transportation of migrant or seasonal farmworkers that cuts into the MW. For example, transportation of migrant or seasonal farmworkers from the pickup point and return to that point, or from the temporary labor camp to the fields or for the return trip is transportation that is an incident of and necessary to the employment.

(2) Where the transportation is not incidental to the employment, it is for the worker's benefit and deductions may be made which cut into the MW, provided that if such transportation is subject to MSPA it must be furnished in vehicles which meet all substantive Federal and State motor vehicle safety and insurance standards. Transportation which is not incidental to the employment (and thus deductible) includes:

  a. the transportation of migrant workers to conduct personal business, such as trips from the rural temporary labor camp to a laundry, post office, and grocery store, and

  b. the daily transportation of migrant and seasonal farmworkers, where alternative transportation is readily available, which the workers have the option to use, and they know where to report to work but choose to use the employer's transportation, provided that the transportation is not required to be furnished by law or regulation.

30c14  Employees' taxes paid by employer may constitute "wages".

  (a) Pursuant to Reg 531.38, taxes which are assessed against an employee and which are collected by the employer and paid to the appropriate government agency may constitute "wages".

  (b) The same principle applies to taxes which, although owed by the employee, are paid by the employer. Thus, an employer may pay an employee's share of social security (FICA) taxes. Such payment constitutes "wages" and may therefore be credited toward the MW and OT requirements.

    (1) Where an employee receives the MW of $3.35, the employer and the employee must each make an FICA contribution of 24 cents an hour ($3.35 x .0715 = .2395). (7.15 percent is the current FICA rate which is, of course, subject to change.)

Westlaw.

1997 WL 998029 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion LetterFair Labor Standards Act (FLSA)

August 19, 1997

\*\*\*

This is in further response to your inquiry concerning the application of the minimum wage requirements of the Fair Labor Standards Act (FLSA) to the employment of an *au pair* child care worker. An *au pair* is subject to the Exchange Visitor Program regulations, 22 CFR §514, of the U.S. Information Agency (USIA).

You have petitioned the Wage and Hour Division pursuant to 29 CFR §531.4 and seek credit against the FLSA minimum wage requirement for the cost of educational expenses, two weeks paid vacation, and credit for the "personal" use of the family automobile by the *au pair*. For the reasons discussed below, it is our opinion that an *au pair* employer may not take credit in meeting its minimum wage obligations for any of the three items.

### EDUCATIONAL EXPENSES
Although the Department has previously ruled that the cost of tuition may be credited against the minimum wage under certain circumstances, the Department has specifically ruled in a February 28, 1997 opinion that an *au pair* employer may not take credit for educational expenses. Credit for facilities under 29 CFR §531.32 is conditioned by 29 CFR §531.30, which requires that the employee's acceptance of such facilities be voluntary and uncoerced. Section 531.32 was thus not intended to address situations where an employer is required, as a condition of participation in a federal program, to provide the employee the facility for which the employer wants to take credit. In the present situation, an *au pair* employer is required by USIA regulations at 22 CFR §514.31(k) to pay for an employee's tuition. Therefore, an *au pair* employer may not take credit for tuition payments. A copy of the February 28, 1997 ruling with a more detailed discussion is enclosed for your information.

### PAID VACATION
As stated in 29 CFR §531.29, the legislative history of section 3(m) of the FLSA, which permits an employer to take credit against the minimum wage for board, lodging or other facilities customarily furnished to the employee, "clearly indicate[s] that [it] was intended to apply to all facilities furnished by the employer as <u>compensation</u> to the employee ..." emphasis added. Consistent with section 7(e)(2) of the FLSA, the Department's regulations at 29 CFR §778.216 and §778.218 provide that payments made for occasional periods when no work is performed, such as those for vacation, cannot be considered compensation. Since such payments for hours not worked are not compensation, they cannot be "other facilities" for purposes of the FLSA. Thus, an *au pair* employer may not take credit against the minimum wage for two weeks paid vacation. We note that, in any event, a cash payment is not a "facility." Even if a paid vacation were considered "other facilities," as discussed above, an employer may not take credit for facilities which the employer is required by law or regulation to provide. Since a two-week paid vacation is specifically required by USIA regulations at 22 CFR §514.31(j)(4), no deduc-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion or credit against the minimum wage would be permissible.

## USE OF AUTOMOBILE

The Department has consistently ruled that an employer may not take credit for the personal use of an auto-
mobile where such automobile is incident of and necessary to the employment. This view was clearly approved
by the court in Brennan v. Modern Chevrolet Co., 363 F. Supp. 327 (N.D. Tex. 1973), affd. 491 F.2d 1271 (5th
Cir. 1975), in which a company automobile used by a car salesman was found not to be a facility, and therefore
credit for its cost could not be taken to meet the minimum wage, despite the fact that 90% of the car's use by the
salesman was personal. In the present case, the *au pair* employer is required by 22 CFR §531.4(k) to "facilitate
the enrollment and attendance of the *au pair* " in an accredited post-secondary institution. If the *au pair* uses the
automobile, even occasionally, to attend such institution or to transport the child being provided care for any
reason, credit for the automobile's use, whether personal or work-related, is inappropriate. A copy of the Modern
Chevrolet decision with a more detailed discussion is enclosed for your information.

## HOURS PER WEEK

You also inquire about the amount of the stipend an *au pair* employer must pay in situations where the *au pair*
works less than the maximum 45 hours per week. The FLSA only requires payment of the minimum wage for
hours worked. However, the Department has no authority to lower the amount of the minimum stipend where
the *au pair* works less than the maximum. USIA regulations assume that, without a specified maximum limit, an
*au pair* would work more than 45 hours per week. This assumption is reflected in USIA regulations at 22 CFR
§514.31(b)(2) and §514.31(j)(1), which require, respectively, that an *au pair* work no more than 45 hours per
week and that an *au pair* be provided a stipend of not less than $115.00 per week (which reflects the minimum
wage times 45 hours, minus deductions). You should direct your inquiry regarding this 45-hour issue to the
USIA, as the Department of Labor has no involvement with these regulatory provisions.

We trust that the above is responsive to your inquiry.

Sincerely,
Daniel F. Sweeney
Office of Enforcement Policy Fair Labor Standards Team

Enclosures

1997 WL 998029 (DOL WAGE-HOUR)
END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

*27CC 40*

U.S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
WASHINGTON, D.C. 20210

*27CC 403*

OFFICE OF THE ADMINISTRATOR

1 6 JUN 1975

Mr. Harry Weisbrod
6991 Helsem Way
Dallas, Texas 75230

Dear Mr. Weisbrod:

This is in reply to your letter dated December 28, 1974, asking how
overtime compensation should be computed for an employee under the
Fair Labor Standards Act where State law provides a different basis
for valuating board, lodging or other facilities provided employees
by the employer. We regret that the volume of correspondence received
in connection with the 1974 Amendments to the Act did not permit us to
respond sooner.

You indicate that the State of California Industrial Welfare Commission's
Minimum Wage Order No. 1-74 Section 4 states when apartments are furnished
by the employer as part of the minimum wage they "may not be evaluated in
excess of" two-thirds of the ordinary rental value and in no case more
than $140 per month ($210 per month where a couple are both employed by
the employer). Furthermore, "if, as a condition of employment, the
employee must live at the place of employment or occupy quarters owned
or under the control of the employer, then the employer may not charge
rent in excess of the value listed herein".

You ask us to assume that an employee is paid for a 40-hour week $84.00
cash plus an apartment which rents for $400 per month ($92.31 per week).
You ask us to assume further that $92.31 per week is the "reasonable
cost" or "fair value" of the facility as defined in 29 CFR Part 531.
Under such circumstances, the State of California's Division of Industrial
Welfare rules that the rental value cannot exceed $32.31 per week ($140
per month). Furthermore, if an employer shows on his records that the
employee(s) rental value is $92.31 per week he would run the risk of
having officials of the Division of Industrial Welfare conclude that he
owed the employee $60 per week in back wages ($92.31 minus $32.31).

In the case you describe, the reasonable cost or fair value, as defined
in 29 CFR Part 531, of the apartment furnished the employee would be
considered a part of the employee's wages and included in the employee's
regular rate of pay for the purposes of computing overtime compensation
under the Fair Labor Standards Act. Where State law is in conflict

2

with the Act in determining the value of facilities, the law providing the greater compensation to the employee will prevail. The State law limiting the rental value to $32.31 per week will govern in computing the wage for minimum wage purposes. However, in computing the employee's regular rate of pay for overtime purposes, which is not covered by State law, the reasonable cost or fair value of the apartment will govern. Reasonable cost, of course, is ordinarily lower than the rental price since it does not include such items as profit.

Sincerely,

/s/ Warren D. Landis

Warren D. Landis
Acting Administrator
Wage and Hour Division

WH - 209

Sept. 18, 1959

AIR MAIL

Mr. Sherwood A. Wiseman
Chief Accountant
Jones and Guerrero Company, Inc.
Post Office Box 7
Agana, Guam

Dear Mr. Wiseman:

Please refer to our prior correspondence relating to the furnishing of housing by your company to employees of the Jones and Guerrero Company, Inc., and the J and G Thrifty Market, Inc., Wholesale Division.

We have examined the data submitted and find that they do not support the costs claimed by you as the reasonable cost of the housing furnished to your employees. On the basis of information obtained during recent investigations of comparable housing on Guam, it appears that the cost claimed for the housing furnished to your employees is considerably in excess of the reasonable cost incurred by other employers in furnishing comparable housing facilities to Filipino workers. Under these circumstances, it will not be possible for us to approve the costs which you claim as a part of the wages of the employees under section 3(m) of the Act.

Our evaluation of your housing as compared with comparable housing facilities furnished by other employers on Guam indicates your costs should not exceed $3.00 per week per employee for the facilities furnished. In the absence of substantiating data for the actual cost claimed, and in the absence of a showing that a higher cost, if actually incurred, is reasonable, the Divisions will, in its enforcement activities, consider as reasonable an amount not exceeding $3.00 a week per employee, assuming the houses are maintained in the same condition of habitability that they were when visited by employees of these Divisions.

The Divisions will examine any further data you may wish to submit in support of any claim for a reasonable cost higher than that stated above and will review its conclusions in the future in line with

Mr. Sherwood A. Wiseman                                          page 2

any evidence submitted. In this connection, your attention is invited
to the requirements and procedures in Regulations, Part 531, and section
516.22 of the record keeping regulations, copies of which are enclosed.

There appears to be a wide difference between the two estimates
of costs incurred for providing the employees with medical care, which
you submitted. Consequently, it will not be possible for the Divisions
to indicate a precise figure which would be reasonable for this facility.
The Divisions will accept as reasonable the average of the costs actually
incurred per employee based upon a representative period. This average
cost may be computed, for example, by determining the total costs of
employee medical care over the past 6 months, or some other reasonable
period, and dividing this cost by the average number of employees employed
during the period. In using this method, the average number of employees
for the period includes all employees for whom the medical services are
provided, regardless of whether they are covered by the Act, or whether
they actually received such care. Costs of medical care required to be
furnished by law, such as by workmen's compensation laws, must be excluded.

The reasonable cost of the housing and medical care furnished
to the employees is part of the employee's wages for purposes of determin-
ing compliance with section 6 of the Act and must be included in his
regular rate of pay in computing any overtime compensation due under the
Act.

If any of your employees receiving this housing and medical
care are engaged as laborers and mechanics in Government construction and
other public work, you are required to obtain prior approval of the
Solicitor of Labor in order to make deductions from such employees' wages
for the housing and medical care. In this connection, please see sections
3.5(d) and 3.8 in the enclosed copy of the Copeland Regulations. We are
also enclosing a copy of Regulations, Part 5, dealing with labor standards
provisions applicable to contracts covering Federally financed and
assisted construction.

Very truly yours,

Administrator

Enclosures
RFX:JJO:NR:hw
8/11/59, 8/12/59, 8/13/59 (twice)
Orig.
cc Gen. Files

Z 66-302.0
27 FB-201.23
27-66-203
27-00-202.8
PC 402:2

25

SOL:AGW:RPV

80/451

Mr. Lee G. Warren
Manager of Administration
Tennessee Eastman Corporation
Clinton Engineer Works
Knoxville 5, Tennessee

Dear Mr. Warren:

The Secretary of Labor has asked me to reply to
your letter of September 23, 1943, asking whether deduc-
tions for a hospitalization prepayment plan are permissible
under the Walsh-Healey Act where such deductions reduce em-
ployee compensation below the minimum required by the act.

You state that the deductions will be voluntarily
consented to by employees and that no part of the funds de-
ducted will accrue to the benefit of the employer. You also
state that the operation of the hospital will be performed
by an entity distinct from your organization, but that
representatives of the "operating contractors" will be mem-
bers of the board of directors of the hospital.

You will note from the enclosed copy of R.1925
that the same standards apply to determine whether deduc-
tions are permissible under the Walsh-Healey Act as under
the Fair Labor Standards Act. Inasmuch as your letter does
not go into much detail, it is not possible to give a
definite answer to your inquiry.

If no representative of your company or any affiliate
thereof is a member of the hospital's board of directors, and
the hospital is not otherwise affiliated with your company, the
deduction may be treated as assignment of a part of the em-
ployees' wages. A voluntary assignment is permissible under
the act provided that neither the employer nor any person acting
in his behalf or interest directly or indirectly derives any
profit or benefit from the transaction. In this connection the
employer will be deemed to have received a benefit if the deduc-
tion is used to pay for hospitalization for which the employer
would be required by law to pay.

Mr. Lee G. Warren.                                                      Page 2

        If the hospital and medical services are supplied by
an affiliate of the employer and are supplied at "reasonable cost"
(as defined in Regulations, Part 531, under the Fair Labor Stand-
ards Act), and the deduction meets the further tests that it is
for a "facility" and the facility is one which is "customarily
furnished by such employer to his employees," deductions therefor
may be made without regard to the extent by which the employee's
cash wage is reduced. If the deduction is otherwise permissible
but exceeds "reasonable cost," the deduction is not permissible to
the extent that the amount in excess of "reasonable cost" reduces
the employee's compensation below the required minimum wage or
reduces his overtime compensation. Similarly, if the deduction
is for an item not included in the phrase "board, lodging or other
facility" or if the deduction is not for a facility which has been
customarily furnished, it is permissible only insofar as it does
not cut into the required minimum wage and does not reduce the
employee's overtime compensation.

        It is my view that hospitalization is a facility
except to the extent that the employee may pay for hospital
or medical care which the employer may be required to provide
or to compensate the employee for. Your letter does not indi-
cate whether the facilities are to be provided at "reasonable
cost." I am therefore enclosing a copy of Regulations, Part
531, from which you can ascertain the proper method of computing
"reasonable cost." Likewise, your letter does not indicate
whether such hospitalization has been customarily furnished
by your company or other employers in similar circumstances.

        I regret that I am not able to give you a more cate-
gorical answer to your question. By applying the principles
discussed above, you should be able to determine the permissi-
bility of the deductions. If you have further questions, I shall
be glad to assist you.

                                        Very truly yours,

                                        Wm. R. McComb
                                        Deputy Administrator

Enclosures