**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

---

## MOVING DEFENDANTS' REPLY MEMORANDUM IN RESPONSE TO PLAINTIFFS' CONSOLIDATED OPPOSITION (ECF NO. 199) AND IN SUPPORT OF THEIR JOINT MOTION TO DISMISS PLAINTIFFS' ANTITRUST CLAIM (ECF NO. 135)

Defendants Cultural Homestay International, UsAuPair, Inc., GreatAuPair, LLC, Expert Group International, Inc., EurAupair Intercultural Child Care Programs, AuPairCare, Inc., Au Pair International, Inc., APF Global Exchange, NFP, and Agent Au Pair moved to dismiss plaintiff's antitrust claim – which is the only claim asserted against them – on the ground that the amended complaint does not allege sufficient facts to state a plausible conspiracy to violate the antitrust laws.  Motion at 2, 9-17 (ECF No. 135).  In response, plaintiffs describe a series of alleged facts that they contend satisfy their pleading requirements under *Twombly*.  Plaintiffs' Consolidated Opposition at 9-11 (ECF No. 199) ("Opp.").

As shown below, plaintiffs' allegations do not state a plausible antitrust conspiracy claim.

### I.      Plaintiffs' Description of the Applicable Law is Erroneous.

Plaintiffs misstate the law in several ways.  First, plaintiffs assert that the moving defendants "conflate" the distinction between the allegations necessary to assert a plausible claim for relief, and the evidence required to overcome a motion for summary judgment.  Opp. at 12 (ECF No. 199).  Yet, the motion relies principally on the Supreme Court decision in *Twombly* and cases from the Tenth Circuit and this Court, all of which were decided on motions to dismiss.  Motion at 7, 8 n.5, 9-10 (ECF No. 135).

Second, plaintiffs' suggestion that the moving defendants seek to impose a "probability standard" at the pleading stage is erroneous.  Opp. at 13, 18.  The words "probable" and "probability" do not appear in the motion.  As stated in the case relied upon by plaintiffs, the proper test is that

> a complaint claiming conspiracy, to be plausible, must plead "enough factual matter (taken as true) to suggest that an agreement was made," *i.e.,* it must provide "some factual context suggesting [that the parties reached an] agreement," not facts that would be "merely consistent" with an agreement.

*Anderson News, L.L.C. v. American Media, Inc.,* 680 F.3d 162, 184 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 549, 557 (2007)).

Finally, plaintiffs state that the moving defendants "wrongly rely" on *Monsanto Co. v. Spray Rite Serv. Corp.*, 465 U.S. 752 (1984), for the proposition that the complaint must allege facts sufficient "to exclude the possibility that the [defendants] were acting independently."  Opp. at 18.  In fact, *Monsanto* was cited repeatedly by the Court in *Twombly* and it is clear that allegations of "conduct that could just as well be

independent action" are insufficient to state a conspiracy claim. *Twombly*, 550 U.S. at 557, 566; *Cayman Exploration Corp. v. United Gas Pipeline Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989).

## II.  Plaintiffs' Allegations are Insufficient to State a Plausible Conspiracy.

Plaintiffs contend the allegations in the amended complaint are "markedly different from [the allegations] in *Twombly*," which they assert only involved "parallel conduct." Opp. at 10 (ECF No. 199). Not true. Just like this case, *Twombly* involved (1) conclusory conspiracy allegations (550 U.S. at 550-51, 564, 565 n.10); (2) alleged parallel conduct consistent with unilateral conduct (*id.* at 564-66); (3) a concentrated industry (*id.* at 549, 550 n.1, 566-68); (4) means, opportunity and motive to conspire, including membership in trade associations (*id.* at 567-68 and n.12); and (5) alleged admissions (*id.* at 569; *see also id.* at 591 (Steven, J. dissenting)).

### A.  Plaintiffs' allegations of parallel conduct do not support a conspiracy claim.

The primary focus of plaintiffs' conspiracy allegations is that the sponsor defendants have acted in parallel by informing host families that the au pair weekly stipend is set at exactly $195.75, which plaintiffs describe as the "programmatic wage floor" or "weekly minimum stipend" established by the State Department.[1] Opp. at 5 (ECF No. 199); Am. Compl. ¶¶ 4, 61, 155, 166 (ECF No. 101).

Plaintiffs rely on the following allegations of parallel conduct:

---

[1] For purposes this motion, moving defendants assume that the weekly stipend designated by the State Department is a "programmatic wage floor" or "minimum weekly stipend" as asserted by plaintiffs. The Court need not decide whether the weekly stipend is a mandatory weekly stipend or a minimum.

3

- At least one Defendant has informed prospective *au pairs* that its weekly wage of $195.75 would be "the same regardless of which *au pair* agency you use."

- All Defendants set the wages for standard *au pair* services at the current programmatic wage floor of $195.75 per week, and each has advertised that weekly amount on its website."

- None of the Defendants have adjusted their weekly wages for geographic differences, the number of children in a home, or changes in market conditions.

- There is a programmatic wage floor, but there is no government-imposed requirement that the Defendants set au pair wages at $195.75 per week.

- Each time the programmatic wage floor has increased, the Defendants have acted in unison in raising their weekly wages for standard *au pair* services accordingly.

- Absent agreement, at least some Defendants would offer au pairs competitive wages higher than the current $195.75 per week programmatic wage floor.

Opp. at 10-11. In substance, these allegations assert simply that the sponsor defendants have engaged in parallel pricing by "setting" the au pair weekly stipend at exactly $195.75, and fail to allege a plausible conspiracy for several reasons.

As an initial matter, the conduct alleged in the amended complaint is not parallel. Some sponsors advertise, and a significant number of their host families decide to pay, a weekly stipend **greater** than $195.75. Sponsors have told their host families that the weekly stipend designated by the State Department is "the minimum required," and that host families are free to pay more than the designated amount. Some host families also pay $200 per week (the amount paid to plaintiffs Hlatshaneni and Ivette Gonzalez). And, some au pairs are paid a weekly stipend for each of 51 weeks, while others are

paid for 52 weeks, which obviously affects the total amount paid to the au pair. Motion at 11-12 (ECF No. 135); *see also* Am. Compl. ¶¶ 96, 98, 100, 101, 102, 105. These varied rates refute plaintiffs' basic contention that all of the sponsor defendants agreed to instruct their host families to pay a weekly stipend of $195.75, and not a penny more.

Perhaps more importantly, recognizing that the amount of the weekly stipend **is determined and paid by the host family** (Am. Compl. ¶ 155), the fact that some sponsors decided to advertise or instruct their host families to pay a weekly stipend equal to the "programmatic floor" set by the State Department is consistent with unilateral action and the individual, economic self-interest of each sponsor. The sponsors are required by regulation to ensure that host families are aware of and comply with the weekly stipend set by the State Department and Department of Labor. 22 C.F.R. § 62.31(j)(1). The regulatory requirement is the most obvious and plausible explanation for any parallel messaging.

Further, the au pair sponsors compete "fiercely" for host families. Am. Compl. ¶ 9. In the face of this competition, each sponsor individually has the incentive to advertise and tell host families that they must pay the $195.75 weekly stipend set by the State Department, rather than some higher amount. A sponsor that suggests its host families must pay a weekly stipend of $225 is not likely to be successful in competing for a host family who is told by another sponsor that the weekly stipend for an au pair with a comparable level of experience is $195.75.

Case No. 1:14-cv-03074-CMA-KMT   Document 211   filed 08/10/15   USDC Colorado   pg 6 of 20

Thus, in a concentrated market with relatively few competitors, where each is offering a fungible or undifferentiated product [Am. Compl. ¶ 136], common sense and economic logic predict that the prices will be largely the same – the firm that sets its price higher is not likely to compete successfully against a rival that offers the same product for less. *Twombly,* 550 U.S. at 553-54; *In re Ins. Brokerage*, 618 F.3d 300, 319 n.19 (3d Cir. 2010); *Suture Exp., Inc. v. Cardinal Health 200, LLC*, 963 F. Supp. 2d 1212, 1225 (D. Kan. 2013).

Plaintiffs mistakenly argue that a discussion of independent business judgment is "irrelevant at the motion to dismiss stage." Opp. at 18. But, an antitrust conspiracy claim predicated on parallel conduct must be dismissed "if 'common economic experience,' or the facts alleged in the complaint itself, show that independent self-interest is an 'obvious alternative explanation' for defendants' common behavior." *Ins. Brokerage*, 618 F.3d at 326 (quoting *Twombly*, 550 U.S. at 546, 567); *In re Aluminum Warehousing Antitrust Litigation*, No. 13-MD-2481, 2014 WL 4277510, at *27 (S.D.N.Y. Aug. 29, 2014); *see also supra* at 2-3.

In fact, plaintiffs themselves rely on similar allegations to argue that the sponsors must have agreed to instruct their host families to pay only the minimum weekly stipend. They argue that in a competitive market, some sponsors would offer a higher weekly stipend to "higher-quality *au pairs,*" which might be attractive to some host families willing to pay more for experience. Opp. at 19. Other sponsors might offer au pairs the lower weekly stipend, which would be "more attractive to host families." *Id.* Plaintiffs

state: "Absent agreement, at least some Defendants would offer *au pairs* competitive wages higher than the current $195.75 per week programmatic wage floor." *Id.* at 11. **This is exactly what has happened**. Some sponsors offer experienced au pairs for whom the host families pay a higher weekly stipend, and others suggest that host families pay their au pairs the $195.75 weekly stipend designated by the State Department. Am Compl. ¶ 78.

In short, recognizing that the burden of paying the weekly stipend rests with the host family, it is evident that each sponsor independently has an economic incentive to compete by offering an au pair program that minimizes the burden on the host family. Programs that offer au pair services at the programmatic wage floor of $195.75 do just that. Motion at 12-14.

The cases cited by plaintiffs stand in stark contrast to the absence of specific, plausible allegations here. Opp. 11-12. In *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.,* the allegations included the dates of meetings involving conspiratorial agreements and specific acts in furtherance of the conspiracy. No. 13-cv-3422, 2015 WL 753954, at *4 (D. Colo. Feb. 20, 2015). *Confre Cellars, Inc. v. Robinson*, decided before *Twombly*, involved allegations that defendants attended specified trade association meetings involving discussions in furtherance of the conspiracy, entered into explicit agreements, and subsequently engaged in particular conduct in furtherance of agreements that were against the defendants' economic self-interest. No. 01-N-1060, 2002 WL 32376945, *14-15 (D. Colo. March 6, 2002). Finally, in *Evergreen*

*Partnering Group, Inc. v. Pactiv Corp.,* the plaintiff identified a specific trade association meeting where the conspiracy was formulated, detailed parallel conduct following the meeting, listed at least eleven specific acts supporting the agreement, and described substantial additional, circumstantial evidence to establish a context for plausible agreement. 720 F.3d 33, 47-50 (1st Cir. 2013).

Similar, equally specific allegations are not made in this case.

### B. The structure of the market is not probative of a conspiracy.

Several of the allegations address the structure of the market:

- The Defendants control all *au pair* employment opportunities in the United States.

- The Defendants can easily monitor and police against cheating with the cartel.

Opp. at 11 (ECF No. 199). Plaintiffs contend that the fact that "only those firms that have been designated as 'sponsors' by the State Department can operate in the *au pair* marketplace" is probative of a conspiracy. *Id.* at 20; Am. Compl. ¶¶ 134, 135 (ECF No. 101).

But, industry regulation is not proof that the participants in the industry conspired; otherwise, every regulated industry would be subject to antitrust conspiracy claims. To the contrary, in an industry where prices are set by a regulatory authority, advertising those prices is consistent with unilateral action. Moreover, while plaintiffs assert that the au pair "industry structure inherently facilitates collusion" [Am. Compl. ¶ 134], the fact that a market may be "concentrated" – that there may be relatively few competitors – is

not probative of a conspiracy.  Parallel conduct, even in a concentrated industry, is not unlawful.  *Twombly*, 550 U.S. at 553-54; *see also supra* at 6.

Finally, plaintiffs' argument that "Defendants can easily monitor and police against cheating within the cartel" [Opp. at 11] is both irrelevant and wrong.  It is irrelevant because it proves too much:  any industry with public pricing would be susceptible to a conspiracy claim, and the cases cited above show that parallel conduct in a concentrated industry with regulated or public pricing is not probative of a price-fixing conspiracy.  Plaintiffs' argument is wrong because it is based on the false premise that because sponsors "advertise their standard au pair wages online," other sponsors can "easily monitor maintenance of the fixed wage."  Am. Compl. ¶ 135.  But, au pairs are paid by the **host family**.  While the sponsor must ensure that its host families pay their au pairs at least the minimum weekly stipend, the sponsor does not control the exact amount paid to the au pair.  Am. Compl. ¶¶ 170, 179, 369; *see also supra* at 4-5.

### C. The alleged "means, opportunity and motive" to enter into an agreement are not probative of a conspiracy.

Plaintiffs next argue that defendants were motivated to conspire:

- The Defendants have means, opportunity, and motive to agree to depress wages for standard *au pair* services in order to reap artificially high profits.

Opp. at 11 (ECF No. 199).  Plaintiffs claim that defendants have the "means and opportunity to fix the price of *au pair* labor" because they allegedly control 100 percent of the labor market, and "most" of the defendants are members of one of two trade associations.  *Id.* at 14, 15.  Plaintiffs also claim defendants had an incentive to conspire because keeping au pair wages low would increase the willingness of host families to

pay placement fees.  *Id.* at 15.  These alleged facts are not probative of a conspiracy for several reasons.  First, as indicated above, the mere fact that an industry is concentrated is not probative of a conspiracy.  *Supra* at 6.

Second, membership in a trade association does not support a plausible conspiracy claim, even when coupled with allegations of parallel conduct.  Motion at 17.  The amended complaint does not allege that any (let alone all) of the sponsor defendants reached an agreement or even discussed the au pair stipend at any trade association meeting.[2]  Without some indication that trade association activities were used as a vehicle for the alleged conspiracy, membership in a trade association is not probative of a conspiracy.  *Twombly*, 550 at 567 (mere membership in numerous trade associations is not probative of a conspiracy); *see also American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295–96 (11th Cir. 2010).

Finally, the allegation that defendants could only earn higher profits by agreeing to depress au pair wages is erroneous.  It is in the independent, economic self-interest of each sponsor to instruct host families that they were obligated only to pay the minimum weekly stipend set by the State Department.  *See supra* at 5-7.  A **unilateral** decision to advertise the minimum weekly stipend set by the State Department rather than some higher amount serves to attract host families just as much as a **joint** decision; there was no need for joint action to reach the goal of the alleged conspiracy.  *Twombly*, 550 U.S. at 567-68.

---

[2] In fact, the allegations in the amended complaint are not nearly as detailed and specific as the allegations in other cases cited by plaintiffs.  *See supra* at 7-8.

### D. Individual action in adopting the weekly stipend set by the State Department does not reflect an agreement on an "unlawful wage."

Next, plaintiffs rely on their claim that the weekly stipend is unlawful.

- The $195.75 per week wage is an illegal wage under federal law, and is less than many states' minimum wages.

Opp. at 11 (ECF No. 199). Plaintiffs assert that the weekly stipend set by the State Department is unlawful and cannot be explained by parallel conduct with an independent business justification. *Id.* at 15.

Once again, plaintiffs are wrong for several reasons. First, plaintiffs confuse proof of a conspiracy with proof of the legality of the weekly stipend. Whether or not the weekly stipend is legal under federal or state wage and hour laws is irrelevant to the question of whether plaintiffs have alleged a plausible **conspiracy**.[3] The Court need not reach the legality of the weekly stipend to decide the present motion.[4] The question before the Court is whether plaintiffs have alleged facts sufficient to prove a conspiracy – not whether the alleged object of the conspiracy is unlawful.

Second, there is no rule of law providing that a conspiracy is plausible merely because the alleged object of the conspiracy is claimed to be unlawful. *Monsanto* and *Twombly* teach that a conspiracy must be alleged by facts sufficient to "to exclude the possibility that the [defendants] were acting independently," and the complaint must

---

[3] A conspiracy among competitors to fix wages potentially violates the antitrust law whether the wage level is lawful or unlawful. *Cason-Merenda v. Detroit Medical Center*, 862 F.Supp.2d 603, 624-25 (E.D. Mich. 2012).

[4] While irrelevant, it is hard to understand how plaintiffs can argue credibly that the weekly stipend admittedly **set by the State Department** is "an illegal wage under federal law." Opp. at 15.

11

allege facts that the defendants actions would be contrary to their economic interest absent an agreement.  *Monsanto*, 465 U.S. at 764; *Twombly*, 550 U.S. at 554, 566.  As discussed above, the sponsor defendants had every reason, acting independently, to adopt the weekly stipend set by the State Department.  *Supra* at 5-7.

Plaintiffs' reliance on *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214 (D. Kan. 2008) is misplaced.  Opp. at 15.  The portion of the opinion cited by plaintiffs addresses a state law civil conspiracy claim, one of the elements of which is "one or more **unlawful** overt acts."  *Id*. at 1236 (emphasis added).  The defendants moved to dismiss asserting that the complaint alleged only parallel conduct, which was not sufficient to support the civil conspiracy claim.  The court denied the motion, concluding that the complaint "taken as a whole" alleged facts sufficient to state a plausible civil conspiracy claim.[5]  *Id*. at 1237.

Nowhere does *Motor Fuels* provide **any** support for plaintiffs' bald assertion that "[w]here multiple market participants have settled on the same **unlawful** wage, that alone is sufficient circumstantial evidence of conspiracy."  Opp. at 15 (emphasis in the original).  The reference in *Motor Fuels* to "unlawful acts" refers only to the overt act element of a civil conspiracy claim – not to the factual assertions required to allege a plausible conspiracy.

---

[5] Among the allegations cited by the court were that the defendants (1) agreed to sell motor fuel on a non-temperature compensated basis, (2) jointly refused to implement automatic temperature compensation technology, (3) collectively exerted pressure and influence on manufacturers and proponents of temperature compensation at the retail level, and (4) pressured manufacturers to not sell automatic temperature compensation equipment and retrofit kits in the United States.  *Id*. at 1237.

### E. The alleged admissions are not sufficient to assert a plausible conspiracy.

Finally, plaintiffs rely on so-called "direct evidence" of the alleged conspiracy:

- Representatives of some Defendants have admitted that they all agreed to fix standard *au pair* wages at the $195.75 per week programmatic wage floor.

Opp. at 11 (ECF No. 199). Moving defendants previously noted that the alleged statements should be disregarded because they were obtained by plaintiffs' counsel in violation of his ethical duties. Motion at 14; Joint Motion to Strike Certain Allegations (ECF No. 134).

Additionally, the purported admissions are impermissibly vague and do not meet the test in plaintiffs' opposition brief, which describes direct evidence as "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." Opp. at 16 (quoting *Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1083 (10th Cir. 2006)). The alleged admissions fail this test because they do not state a "specific time, place or person involved in the alleged conspirac[y]," or whether the speaker had knowledge of any alleged conspiracy or any authority to speak for the sponsor in question. *Twombly*, 550 U.S. at 565 n.10. And, there is no specific allegation that the persons making the alleged statements ever spoke on this subject with a representative of any other sponsor. *See, e.g., In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 873 (7th Cir. 2015); *see also In re LTL Shipping Servs. Antitrust Litig.*, No. 1:08-MD-01895-WSD, 2009 WL 323219, at *12 (N.D. Ga. Jan. 28, 2009).

Rather than eliminate the need for inferences, these allegations require the Court to make multiple inferences to reach the conclusion that all of the sponsors agreed to instruct their host families to pay no more than the weekly stipend set by the State Department. In fact, the purported admissions are contradicted by other allegations that multiple sponsors have told their host families that the weekly stipend designated by the State Department is "the minimum required," and that host families are free to pay more than the designated amount. Am. Compl. ¶¶ 170, 179, 261, 262; *see also supra* at 4-5; Motion at 11. In short, the purported admissions do not rise to the level of direct evidence of the alleged conspiracy. Motion at 15-16 (citing cases).

The *Champagne Metals* case is easily distinguished. There, the plaintiff was an aluminum distributor that purchased aluminum from mills and resold to end users. The defendants were competing distributors. The plaintiff alleged that the defendants jointly threatened to stop doing business with any mill that sold to plaintiff. 548 F.3d at 1077-78. The district court dismissed the complaint on the ground that plaintiff had not presented sufficient proof of a conspiracy. *Id.* at 1082. On appeal, the court concluded that specific statements by a named representative of one of the defendants were direct evidence of a conspiracy. *Id.* The court described these statements as "only weak direct evidence" that did not meet plaintiff's burden, in part because the statements did not indicate which, if any, of the defendants joined in the alleged agreement. *Id.* at 1084. Nonetheless, in the face of additional circumstantial evidence (not present here), the court reversed. *Id.* at 1086-87. *Champagne Metals* demonstrates that direct

evidence that fails to identify specifically who spoke to whom, when, and about what, is entitled to little weight.

### III.    Conclusion.

In their motion, moving defendants observed that the Supreme Court could have decided the *Twombly* case with this lawsuit in mind.  We repeat that observation here, particularly because the allegations in *Twombly* were markedly similar to those in this case.  *See supra* at 3.  Regardless of plaintiffs' attempt to challenge to the weekly stipend as a matter of employment law, they have not alleged a plausible antitrust conspiracy.

The first amended complaint also should be dismissed **with prejudice**.  Plaintiffs amended the complaint (ECF No. 101) after defendants filed their initial motion to dismiss spelling out the deficiencies in the original complaint.  (ECF No. 82). Presumably, the amended complaint contained all of the facts plaintiffs could muster in their effort to assert a plausible conspiracy.  Additionally, while plaintiffs make passing reference in their opposition brief that they should be granted leave to amend (Opp. at 74), nowhere do they suggest any additional facts that might be alleged.  Thus, any attempt to amend the complaint again to assert a plausible conspiracy would be futile. T*V Commc'ns Network, Inc. v, Turner Network Television*, 964 F.2d 1022, 1028 (10th Cir. 1992); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir.2006); *Nat'l Ass'n of Investors Corp. v. Bivio, Inc.*, No. 11-CV-02435-WJM, 2013 WL 316021, at *8 (D. Colo. Jan. 28, 2013)

Dated August 10, 2015.

Respectfully submitted,

*s/James E. Hartley*
James E. Hartley
Mher Hartoonian
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: 303-295-8000
jhartley@hollandhart.com
mhartoonian@hollandhart.com

**ATTORNEYS FOR DEFENDANT
CULTURAL HOMESTAY INTERNATIONAL**

*s/William J. Kelly, III*
William J. Kelly, III
KELLY & WALKER, LLC
1512 Larimer Street, Suite 200
DENVER, CO 80202
Phone: 720-236-1800
wkelly@kellywalkerlaw.com

**ATTORNEYS FOR DEFENDANT
USAUPAIR, INC.**

*s/Meshach Y. Rhoades*
Meshach Y. Rhoades
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
Phone: 303-572-6500
rhoadesm@gtlaw.com

**ATTORNEYS FOR DEFENDANT
GREATAUPAIR, LLC**

s/*Bogdan Enica*
Bogdan Enica, Attorney at Law
111 2nd Avenue NE, Suite 213
St Petersburg, FL 33701-3440
Phone:  727-225-2649
bogdane@hotmail.com

**ATTORNEY FOR DEFENDANT
EXPERT GROUP INTERNATIONAL INC., D/B/A
EXPERT AU PAIR**


*s/Martha L. Fitzgerald*
Martha Louise Fitzgerald
Kathryn Anne Barrett
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Phone:  303-223-1126
mfitzgerald@bhfs.com
kbarrett@bhfs.com

**ATTORNEYS FOR DEFENDANT
EURAUPAIR INTERCULTURAL CHILD CARE
PROGRAMS**


*s/John R. Mann*
John R. Mann
Thomas B. Quinn
GORDON & REES, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Phone: 303-534-5160
jmann@gordonrees.com
tquinn@gordonrees.com

**ATTORNEYS FOR DEFENDANT AUPAIRCARE, INC.**

*s/Kathryn A. Reilly*
Kathryn A. Reilly
Toren G.E. Mushovic
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO 80202
Phone: 303-244-1800
reilly@wtotrial.com
mushovic@wtotrial.com

**ATTORNEYS FOR DEFENDANTS
AU PAIR INTERNATIONAL AND
AGENT AU PAIR**


*s/Lawrence L. Lee*
Lawrence L. Lee
Daniel C. Perkins
FISHER & PHILLIPS LLP
1801 California Street, Suite 2700
Denver, CO 80202
Phone: 303-218-3650
llee@laborlawyers.com
dperkins@laborlawyers.com

**ATTORNEYS FOR DEFENDANTS
APF GLOBALEXCHANGE, NFP
d/b/a AUPAIR FOUNDATION**

## C<small>ERTIFICATE</small> O<small>F</small> S<small>ERVICE</small>

I hereby certify that on August 10, 2015, I have caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Lauren Fleischer Louis<br>llouis@bsfllp.com | Sigrid Stone McCawley<br>smccawley@bsfllp.com |
| Matthew Lane Schwartz<br>mlschwartz@bsfllp.com | Peter Murray Skinner<br>pskinner@bsfllp.com |
| Randall Wade Jackson<br>rjackson@bsfllp.com | Alexander Hood<br>alex@towardsjustice.org |
| Bogdan Enica<br>bogdane@hotmail.com | Brooke A. Colaizzi<br>bcolaizzi@shermanhoward.com |
| Chandra M. Feldkamp<br>cfeldkamp@kellywalkerlaw.com | Christian D. Howard<br>chammond@duffordbrown.com |
| Daniel C. Perkins<br>dperkins@laborlawyers.com | Heather F. Vickles<br>hvickles@shermanhoward.com |
| Jeffrey P. Allen<br>jallen@lawson-weitzen.com | John R. Mann<br>jmann@gordonrees.com |
| Kathryn A. Reilly<br>reilly@wtotrial.com | Kathryn Anne Barret<br>kbarrett@bhfs.com |
| Lawrence D. Stone<br>lstone@duffordbrown.com | Lawrence L. Lee<br>llee@laborlawyers.com |
| Martha L. Fitzgerald<br>mfitzgerald@bhfs.com | Martin J. Estevao<br>estevaom@gtlaw.com |
| Meshach Y. Rhoades<br>rhoadesm@gtlaw.com | Raymond M. Deeny<br>rdeeny@shermanhoward.com |

| | |
|---|---|
| Thomas B. Quinn<br>tquinn@gordonrees.com | Toren G. E. Mushovic<br>mushovic@wtotrial.com |
| William J. Kelly III<br>wkelly@kellywalkerlaw.com | W.V. Bernie Siebert<br>bsiebert@shermanhoward.com |
| Susan P. Klopman<br>sklopman@hklawllc.com | Brian A. Birenbach<br>Brian@rietzlawfirm.com |
| Susan M. Schaecher<br>sschaecher@laborlawyers.com | |

*s/James E. Hartley*
James E. Hartley
Holland & Hart LLP

7913994_10