IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN;
et al,

    Plaintiffs,

v.

INTEREXCHANGE, INC.;
et al,

    Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANT INTEREXCHANGE, INC. (DOC. # 130)**

---

Defendant InterExchange, Inc. ("InterExchange"), by its attorneys, hereby submits its Reply in support of its Motion to Dismiss the First Amended Complaint (Doc. # 130).

**I.    INTRODUCTION.**

The au pair program is an exchange visitor program under the control of the U.S. Department of State (DOS). DOS promulgated the regulations applicable to the au pair program. See, generally, 22 C.F.R. Part 62; see also 22 C.F.R. § 62.31. InterExchange and the other program sponsors are not responsible for the content of those regulations or DOS' interpretation of them. However, InterExchange, like all au

pair program sponsors, is required to comply with those regulations and interpretations. 22 C.F.R. § 62.9(a).

Plaintiffs seek to conflate their disagreements with the requirements of the au pair program, promulgated by DOS, and their allegedly disagreeable individual experiences with their host families, into legal claims against InterExchange. They have not stated plausible claims against InterExchange, however, and their claims must be dismissed.

## II. DOS DESIGNED A COMPENSATION SCHEME THAT EXCLUDES STATE AND LOCAL WAGE CONSIDERATIONS, AND STATE AND LOCAL LAWS THEREFORE ARE PREEMPTED IN THIS AREA.

Plaintiffs analyze the au pair program as they might a domestic employee working at a fast food franchise, ignoring completely the purpose and structure of the au pair program. The au pair program first and foremost is about cultural exchange, designed to further certain foreign policy objectives.[1] In 1990, the Government Accountability Office (GAO), in a report cited in the First Amended Complaint, explicitly recognized a distinction between J visas "and other visas granted for work purposes." (Doc. # 101 at ¶¶ 55-57; Exchange Visitor Program, 60 Fed. Reg. 8548 [Feb. 15, 1995] [codified at 22 C.F.R. pt. 514] [hereafter "1995 Regs."]). Plaintiffs repeatedly refer to concepts such as "open market," "market forces," the "au pair labor market," a "truly competitive marketplace," and a "prevailing market wage." (Doc. #199 at pp. 1, 4, 8, 14-15, 19, 20.) However, these traditional domestic economic concepts apply only in

---

[1] See Congressional statement of purpose, 22 U.S.C. § 2451: "The purpose of this chapter is to enable the Government of the United States to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchange . . . and thus to assist in the development of friendly, sympathetic, and peaceful relations between the United States and the other countries of the world."

2

limited respects to au pairs. J-1 au pair visas are not issued to bring young people into the United States to compete in the "open market" for childcare; au pairs are permitted to perform only certain, specified tasks subject to a host of terms dictated by DOS regulation. 22 C.F.R. § 62.4(h)(5). J-1 visa status does not permit open market competition but rather conditions au pairs' presence in this country on their participation in, and compliance with the terms of, the au pair program. 22 C.F.R. § 62.16.[2] And, as Plaintiffs acknowledge, the sponsors do not operate in an open market, as DOS alone determines who can sponsor an au pair program. (Doc. # 199 at p. 20; 22 C.F.R. §§ 62.3, 62.31(b).)

Thus, Plaintiffs err in attempting to characterize the au pair program as a program falling within the traditional police powers of the states and merely "touch[ing] upon immigration." (Doc. # 199 p. 51 n. 18.) The truth is the opposite; the au pair program first and foremost is a non-immigrant visa program designed to meet certain foreign policy objectives. (Doc. # 130 at pp. 2-3.) The federal government has broad authority over immigration and related matters and has identified "a programmatic need for a uniform wage" in the context of the au pair program. 1995 Regs. 8551. Plaintiffs allege that state law applies to the au pair program because the au pair regulations incorporate the FLSA, which incorporates state law. (Doc # 199 at p. 42.) The FLSA does no such thing. The Department of Labor ("DOL") has no authority over state wage laws, and if an employer violates a state wage law, that violation does not become a federal cause of action. The FLSA merely disavows FLSA preemption of certain state

---

[2] Nor do au pairs enter the country on temporary employment visas, such as H-2A and H-2B visas, to fill jobs for which there are an insufficient number of domestic workers. See 20 C.F.R. §§ 655.1, 655.103.

3

and local wage laws, and InterExchange does not argue that the FLSA preempts anything in this case.  Rather, preemption comes from the federal government's undisputed authority over immigration and its clearly intentional omission of state and local wage considerations from the au pair compensation structure.[3]

In an equally futile attempt to plead a plausible claim that state and local wage laws apply to au pairs, Plaintiffs cite repeatedly to the regulations codified at 22 C.F.R. § 62.10, which apply to exchange visitor programs generally, but completely fail to address the stark differences in the compensation schemes for the various *specific* J-1 programs, codified elsewhere in 22 C.F.R. part 62.  There is a *complete absence* of any suggestion that DOS ever issued regulations or other guidance providing that state and local wage laws apply to the au pair program.[4]  DOS and its predecessors made such a requirement explicit in the context of other J-1 visa programs.  For example, DOS requires that participants in the Summer Work and Travel Program be compensated at the higher of "[t]he applicable Federal, State, or Local Minimum Wage (including overtime); or [p]ay and benefits commensurate with those offered to their similarly situated U.S. counterparts."  22 C.F.R. § 62.32(i).  Camp Counselor participants must receive "pay and benefits commensurate with those offered to their American counterparts."  22 C.F.R. § 62.30(f).  Similarly, the regulations for the H-2a and H-2b

---

[3] Indeed, the language from the DOL website that Plaintiffs quote is telling:  "*In cases where an employee is subject to both the state and federal minimum wage laws*, the employee is entitled to the higher of the two minimum wage."  (Doc. #199 at p. 42 [emphasis added].)  DOS clearly did not provide for state and local wage laws to apply to the au pair program.

[4] In the first bullet point on page 49 of the Response, Plaintiffs cite to a regulation that only became effective in January 2015.  Exchange Visitor Program—General Provisions, 79 Fed. Reg. 60294 (Oct. 6, 2014) (codified at 22 C.F.R. pt. 62). The last bullet point on page 50 of the Response refers largely to the requirements for sponsors' accreditation and licensure, not substantive program terms.  22 C.F.R. §§ 62.9(c), 62.60(f).

4

temporary worker visas—promulgated by DOL because DOL, not DOS, administers these programs—specify that workers must be paid be "the highest of the [adverse effect wage rate], the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage," (20 C.F.R. § 655.120 [H-2a]), or "the prevailing wage obtained from the [national prevailing wage rate] or the Federal, State or local minimum wage, whichever is highest."  20 C.F.R. § 655.10 (H-2b). Neither DOS nor DOL has ever issued similar directives regarding the au pair program. In fact, DOL has never promulgated any regulations or issued any guidance whatsoever about the au pair program.  Through its actions over the past decades, DOS clearly has expressed its intent that the stipend formula preempt state and local wage and hour laws, the application of which would destroy the federal government's desired uniform wage for J-1 au pairs.

### III. PLAINTIFFS MAKE ONLY CONCLUSORY ALLEGATIONS TO SUPPORT THE THEORY THAT INTEREXCHANGE IS A JOINT EMPLOYER.

Preemption notwithstanding, Plaintiffs' claims survive only if they can prove that the sponsors are "employers" of the au pairs.  However, Plaintiffs' joint employment argument is untenable in light of DOS' regulations and host families' control over duties, hours, and pay.  Despite Plaintiffs' argument to the contrary, the factors of the economic realities test are relevant when a court reviews a motion to dismiss, as the court must determine whether the complaint states a plausible claim.  Ashcroft v. Iqbal, 554 U.S. 662, 678 (2009); see also Perry v. Pinon Mgmt. Inc., No. 12-cv-00653-MSK-MEH, 2013 WL 1149567, at *7 (D. Colo. Mar. 19, 2013) (when deciding a motion to dismiss, analyzing whether plaintiff properly alleged joint employment under economic realities

test); Cavallaro v. UMass Mem'l Healthcare, Inc., 678 F.3d 1, 9-10 (1st Cir. 2012) (finding that a joint employer theory failed to withstand a 12(b)(6) motion to dismiss); Chen v. Domino's Pizza, Inc., No. 09-107, 2009 WL 3379946, at *5 (D.N.J. Oct. 16, 2009) (motion to dismiss granted due to lack of a single factual allegation indicating defendant had control or authority over plaintiff's employment condition). DOS dictates the following terms and conditions by regulation: the length of an au pair's stay in the United States, limited to one year with extensions granted by DOS *in its sole* discretion; the background check and personality profile that au pairs must pass; the maximum workday and workweek for au pairs; the minimum stipend that au pairs must receive; the days off and paid vacation to which au pairs are entitled; the age and special needs of the children for whom the au pair provides care; and the existence of a written agreement between the au pair and his or her host family, as well as some of the content. 22 C.F.R. § 62.31(c)(1), (c)(2), (d), (e), (j). DOS also dictates the minimum frequency with which sponsors must contact au pairs and the background check and financial requirements for the host families. 22 C.F.R. § 62.31(h), (l). Host families are responsible for paying au pairs and creating the schedule of specific duties. (Doc. # 130-5 §§ 4(c)(i), (i), (j).) Thus, any assertion that sponsors control the terms of au pairs' employment is implausible.[5]

---

[5] Moreover, Plaintiffs' assertion that sponsors "hire" and "fire" au pairs misconstrues the sponsors' obligations. DOS requires sponsors to screen participants and host families and secure a host family placement. 22 C.F.R. §§ 62.31(d), (e), (h); http://j1visa.state.gov/programs/au-pair#program-sponsors (last accessed July 21, 2015). However, the sponsors are screening participants to determine if the meet requirements set by DOS. Id. Plaintiffs similarly confuse the sponsor's right to remove an au pair from the program who has violated DOS regulations with the host family's ability to fire an au pair for a host of reasons.

6

Plaintiffs have not pleaded any facts suggesting that sponsors exercised authority over wages, hours, and other terms of au pairs' work beyond their regulatory obligations to ensure participant and host family compliance with the program.  Thus, they have not plausibly pleaded joint-employer status as to the sponsors.  See Ivanov v. Sunset Pools Mgmt. Inc., 567 F. Supp. 2d 189, 194-95 (D.D.C. 2008) (in context of the DOS' Summer Work and Travel Program, holding that such regulatory enforcement obligations are not the equivalent of joint employment); see also Taylor v. Waddell & Reed Inc., No. 09cv2909 DMS (WVG), 2010 WL 3212136, at *3 (S.D. Cal. Aug. 12, 2010) (at motion to dismiss stage, determining that compliance with legal requirements is not indicative of control for purposes of establishing an employer-employee relationship when the legal requirements are more than "general" in nature).[6]

---

[6] None of Plaintiffs' cited cases (Doc. # 199 at pp. 29-30) deal with circumstances similar to those presented here:  the employer status of an entity enforcing the regulatory terms of an immigration program.  Most of the cases involve wholly dissimilar employment situations.  Two cases dealt with migrant labor.  However, both of these cases address whether farms/farmers are joint employers of migrant labor, in the au pair program the equivalent of the host family.  See Does v. Rodriguez, No. 06-cv-00805, 2007 WL 684117 (D. Colo. Mar. 2, 2007) (grower arguing he was not an employer of migrant worker working on his farm); Antunez v. G. & C Farms, Inc., No. 92-cv-308, 1993 WL 451344 (D.N.M. Aug. 9, 1993) (whether farm and farmer were joint employers with migrant labor contractor).  In Does, the labor contractor (who Plaintiffs seem to find to be the equivalent of the au pair sponsors) constantly surveilled the workers and patrolled farm perimeters to keep farm workers from escaping and themselves made numerous monthly deductions from worker pay.  Does, 2007 WL 684117, at *1.  In Antunez, the labor contractors were responsible for controlling worker behavior in the fields, monitoring how the workers filled their buckets, cleaning field restrooms, paying the workers, making appropriate pay deductions, and providing the farms with daily payroll sheets.  Antunez, 1993 WL 451344, at *2.  Thus, neither of these cases is instructive in evaluating Plaintiffs' arguments that au pair sponsors are employers; they have not sufficiently pleaded facts that the sponsors had any involvement in day-to-day, or even week-to-week, activities of au pairs.

## IV. PLAINTIFFS HAVE NO PLAUSIBLE CLAIM THAT THE STIPEND IS ILLEGAL OR THAT SPONSORS COULD BE LEGALLY LIABLE FOR ITS CALCULATION.

### A. The Stipend is Legal Under Federal Law.

Just as Plaintiffs have not plausibly alleged that the sponsors are joint employers, they have not plausibly alleged that the stipend is illegal. Plaintiffs refer to the $195.75 stipend as a "programmatic wage floor," set by DOS but also somehow illegal under both federal and state law. (Doc. # 199 at p.5 n.3.) Nothing in the regulations or DOS communications references a "programmatic wage floor." Nor does it make any sense that DOS would communicate $195.75 as the "minimum stipend" if it was *per se* illegal. Such a "wage floor" would have no purpose.

Plaintiffs point to the language in the regulations that sponsors must ensure the stipend is paid in conformance with the requirements of the FLSA as proof that the stipend is illegal. (Doc. # 199 at pp. 33-41.) However, the 1995 regulations adopted and explained the DOL formula for calculating the stipend, the same formula that resulted in the $195.75 figure about which Plaintiffs now complain.[7] 1995 Regs. 8551. For 20 years, DOS has updated sponsors when the stipend changes as a result of changes in the federal minimum wage, subject to the same formula. (Doc. # 130-2, 130-3.) DOS has represented to sponsors DOL's approval of the stipend calculation. (Id.) DOL has never contradicted that representation, through regulations or otherwise.

Plaintiffs assert that merely looking to the FLSA proves the stipend is illegal. (Doc. # 199 at pp. 33-34.) Not true. As an initial matter, DOS regulations establish a

---

[7] Plaintiffs' assertion that the sponsors set the $195.75 figure is simply incorrect and not made in good faith. (Doc. # 199 at p. 33.)

departure from a rote application of the FLSA.  The au pair stipend itself is an artificial creation, not a function of the statute.  The FLSA requires that workers be paid the federal minimum wage *for all hours worked.*  29 U.S.C. § 206(a).  Au pairs, however, are entitled to a weekly payment based upon 45 hours of work, *even if they work fewer hours*.  22 C.F.R. § 62.31(j)(1).  Although the FLSA mandates overtime compensation in applicable situations, it does not otherwise set a maximum weekly hours limit.  DOS regulations do set such a limit—10 hours per day and 45 hours per week.  22 C.F.R. § 62.31(j)(2).  DOS did not leave au pair pay to the terms of the FLSA.  Moreover, DOL has expressly disclaimed any authority to change the terms of the minimum stipend or the au pairs' hours.  See Opinion Letter Fair Labor Standards Act, 1997 WL 998029 (Aug. 19, 1997) ("[T]he Department has no authority to lower the amount of the minimum stipend where the au pair works less than the maximum.")

Similarly, Plaintiffs do not cite, and InterExchange has not located, any legal authority suggesting that DOL has interpreted the live-in component of the au pair program such that a deduction for room and board is not permitted.  Plaintiffs allege that "Defendants say that they are entitled to take a 40% deduction to use as a 'credit' for the au pairs' housing."  (Doc. # 199 at p. 33.)  The sponsors are not taking any credit at all; the host families pay the au pairs and therefore take the credit.  (Doc. # 130-1 at p. 3.)  Second, it is DOS, after consultation with DOL, that established the calculation for the stipend, *which includes a 40% deduction for room and board*.  (Doc. # 130-2, 130-3.)  Neither of the two opinion letters from DOL that Plaintiffs cite addresses the room and board deduction.  Both address whether or not the *host family* (not the sponsor) can

9

take credit for the cost of educational expenses, two weeks paid vacation, insurance, and the personal use of the family automobile.  1997 WL 998029, 1997 WL 959980.  Neither these letters, nor any others, address room and board in the context of the au pair program. In explaining the rationale for the stipend, DOL states:

> USIA regulations assume that, without a specified maximum limit, an *au pair* would work more than 45 hours per week.  This assumption is reflected in USIA regulations at 22 CFR §514.31(b)(2) and §514.31(j)(1), which require, respectively that an *au pair* work no more than 45 hours per week and that an *au pair* be provided a stipend of not less than $115.00 per week (which reflects the minimum wage times 45 hours, *minus deductions*).  You should direct your inquiry regarding this 45-hour issue to the USIA, as the Department of Labor *has no involvement in these regulatory provisions*.

1997 WL 998029. (emphasis added).  The $115.00 stipend included the deduction for room and board.  1995 Regs. 8551.[8]  The USIA, DOS' predecessor in the au pair program, specifically noted in 1995 that the formula for the stipend, which generated the $115.00 stipend figure, "is consistent with Fair Labor Standards Act requirements governing payment of minimum wage . . . ."  Id.  In the 20 years since those regulations, DOS communications about the stipend have adhered to the formula set forth in 1995 and have included a room and board deduction.[9]  (Doc. # 130-2; 130-3; 130-4; 130-7.)

Plaintiffs cite to no authority whatsoever directly addressing the deduction of room and board in the context of the au pair program, which requires that the au pair

---

[8] The Wilberforce pamphlet is of no help to Plaintiffs.  It states, "[A]n employer *usually* may not deduct for housing (with some visa classifications, housing must be provided free of charge."  (Doc. # 199-1 at p. 7.)  Indeed, the *amicus* brief that Plaintiffs rely on (Doc. # 199-4) dealt not with au pairs, but rather with H-2A temporary agricultural visas, for which employers must provide housing "at no cost."  20 C.F.R. § 655.122(d)(1).  The brief also notes that the "free of charge" requirement is "unique to the H-2A program" that "renders the housing an employer business expense."  (Doc. # 199-4 at p. 13.)

[9] Contrary to Plaintiffs' assertion, the Washington Post article (Doc. # 199-2) is wholly irrelevant as to DOS' official position or any aspect of the actual administration of the au pair program.  It post-dates this lawsuit by several months.

10

live *in the host family's home.* The au pair program is dissimilar from other work programs where DOL and courts have determined that housing cannot be deducted because it is primarily for the benefit of the employer. See, e.g., Ramos-Barrientos v. Bland, 661 F.3d 587, 597 (11th Cir. 2011). The host family's obligation is not simply to "provide housing," but rather to integrate the au pair into their family life, including providing him or her with a private bedroom in the family's home. Thus, living in the host family's home is one of the most significant, if not the most significant, benefit of the au pair program to au pairs. (See http://jwvisa.state.gov/programs/au-pair [last accessed July 31, 2015] [first benefit listed for au pair participants is "Host Family Stay," living with a family for 12 months with the option to extend]; Doc. # 130-1 at p. 1 ["Au pair" is French for "on par," reminding host families that, although an employee, their international visitor is to be treated like a member of the family."].)[10] Thus, in the au pair program, lodging remains a facility for the benefit and convenience of the employee, or at most, a benefit that benefits both participants. See DOL Field Operations Handbook, § 30c-03, available at www.dol.gov/whd/FOH/FOH_Ch30.pdf (last accessed July 30, 2015) (in most cases DOL considers lodging a benefit and convenience for the employee).

Moreover, Plaintiffs' authority speaks in terms of an *employer* taking a credit against wages for housing. The employer is the host family; sponsors do not pay the au pairs or provide them with lodging, so the sponsors do not take any credit for room and

---

[10] Notably, none of the cases Plaintiffs cite in support of their assertion that housing in the au pair program should be treated as a business expense deal even remotely with situations in which the employees receiving housing are living with their employer. (Doc. # 199 at pp. 36-37.)

11

board.  (Doc. # 101 at ¶ 155.)  Plaintiffs' assertion that Defendants are somehow taking a credit for housing provided by the host families is wholly unsupported by law or any non-conclusory factual allegations.  The same is true of Plaintiffs' allegation that the sponsor Defendants are not paying overtime.  (Doc. # 199 at pp. 39-41.)  Aside from the fact that DOS' au pair compensation scheme, and DOL's interpretation of it, has never required overtime, Plaintiffs have not pleaded any facts as to why the <u>sponsors</u> are responsible for this allegedly unpaid overtime.  Moreover, Plaintiffs do not at all address the fact that they have not pleaded any specific facts establishing that Plaintiff Beltran worked over 40 hours in any given week, even if overtime were a proper issue in this case.  (Doc. # 130 at p. 22.)

      B.    <u>DOS Has Never Issued Any Regulation or Directive Suggesting State and Local Wages to Apply to Au Pairs.</u>

Simply put, Plaintiffs have not identified, and Defendants have not located, a single statute, regulation, or DOS or DOL communication predating this lawsuit that in any way embodies an intent that state and local wage laws apply to the au pair program.  More importantly, nothing reflects an intent for <u>sponsors</u> to have any legal obligation related to state and local wage laws.  DOS clearly knows how to articulate such an intent, as it has done with the compensation schemes for other exchange visitor programs.  However, it does not do so, <u>anywhere</u>, with respect to the au pair program.

## V. PLAINTIFFS FAIL TO ADDRESS THE DEFICIENCIES IN THEIR FRAUD CLAIMS AGAINST INTEREXCHANGE.

Plaintiffs fail to address in their Response the fundamental, dispositive flaw in their fraud claims against InterExchange: they have not pleaded any facts demonstrating why the statements attributed to InterExchange are false. (See Doc. # 130 at pp. 14-15.) They allege nothing specific related to the falsity of InterExchange's alleged statement that scammers sometimes offer a stipend above $195.75. (Id.) Also, despite their assertions that $195.75 is illegal as a stipend, no dispute exists that the figure, along with the equation used to calculate that figure, was communicated to sponsors by DOS on numerous occasions. (Doc. # 101 at ¶ 83.) Plaintiffs' fraud claims (Counts II-VI) do not survive a motion to dismiss.

## VI. DOMESTIC WORKERS ARE EXEMPT FROM THE COLORADO MINIMUM WAGE ORDER.

Plaintiffs have not pleaded a plausible claim that InterExchange is an employer under Colorado law. Plaintiffs simply disregard the plain language of the Colorado Minimum Wage Order, which exempts domestic employees employed by households "from all provisions of Minimum Wage Order No. 31." 7 CCR 1103-1:5. Indeed, the minimum wage language at the beginning of the Wage Order acknowledges that "[s]ome restrictions and exemptions may apply" to the minimum wage requirement. 7 CCR T.1100, Refs & Annos. This claim must be dismissed.

## VII. NEW YORK DOES NOT APPLY ITS LABOR LAWS TO AU PAIRS.

Plaintiffs provide no meaningful response to the New York Department of Labor advisory that clearly identifies au pairs as an exception to the general premise that all

13

employees, regardless of immigration status, are subject to New York's labor laws. The New York DOL enforces state labor law, including minimum wage, hours of work, and wage payment. N.Y. Labor Law § 20 (2013); www.Labor.ny.gov/about/ (last accessed August 10, 2015). Plaintiffs provide no legal authority to the contrary, and the claim must be dismissed.

### VIII. PLAINTIFFS STILL HAVE NOT ALLEGED ANY SPECIFIC CONTRACT PROVISIONS THAT THEY ALLEGE INTEREXCHANGE BREACHED.

Plaintiffs continue to maintain that InterExchange breached its contract with Plaintiff Beltran because the contract included an illegal wage term. (Doc. # 199 at pp. 72-74.) However, the InterExchange contract contains no wage term. (Doc. # 130-5.) Plaintiffs have not identified any other alleged breaches. This claim must be dismissed.

### IX. INTEREXCHANGE'S ENFORCEMENT OBLIGATIONS DO NOT RISE TO THE LEVEL OF A FIDCUIARY DUTY.

Plaintiffs cite only to sponsors' enforcement duties to support their breach of fiduciary duty claims. (Doc. # 199 at pp. 71-72.) Just as such enforcement does not give rise to joint employer status, it does not give rise to a fiduciary duty. (Doc. # 130 at p. 18.) Thus, the breach of fiduciary duty claim must be dismissed.

### X. INTEREXCHANGE ADOPTS CULTURAL HOMESTAY INTERNATIONAL'S RESPONSE REGARDING THE ANTITRUST CLAIM.

InterExchange hereby incorporates the arguments regarding the antitrust claim presented in the Reply filed by Defendant Cultural Homestay International and other sponsor defendants on August 10, 2015. Plaintiffs have not pleaded any facts tying InterExchange specifically to any "agreement" to fix au pair compensation. Plaintiffs

have not stated a claim against InterExchange under the Sherman Act, and the Count must be dismissed as against InterExchange.

## XI. REQUEST TO AMEND

Plaintiffs should not be allowed to replead the deficiencies in the First Amended Complaint. Judge Arguello's practice standards require that, prior to filing a motion to dismiss, the parties confer as to whether any of the asserted deficiencies could be cured by amendment. Civ. Practice Standard 7.1D(a). Plaintiffs disagreed that the First Amended Complaint was deficient, and therefore maintained that no cure was necessary. (Doc. # 130 at p. 2.) Thus, Plaintiffs' claims should be dismissed with prejudice, as Plaintiffs should have pursued any relevant amendments as a result of the conferral process.

WHEREFORE, for the reasons stated here in and in its Motion (Doc. # 130), InterExchange respectfully requests that Plaintiffs' claims be dismissed with prejudice.

15

DATED this 10th day of August, 2015.

Respectfully submitted,

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
Heather F. Vickles
Raymond M. Deeny
Erica H. Gutherz
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Fax: (303) 298-0940
Email:  hvickles@shermanhoward.com
Email:  bcolaizzi@shermanhoward.com
Email:  rdeeny@shermanhoward.com
Email:  egutherz@shermanhoward.com

ATTORNEYS FOR DEFENDANT
INTEREXCHANGE, INC.

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 10th day of August, 2015, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANT INTEREXCHANGE, INC. (DOC. # 130)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
Towards Justice
1535 High Street, Suite 300
Denver, CO  80218
Email:  alex@towardsjustice.org

Lawrence D. Stone
Christian D. Hammond
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO  80290-2101
Email: lstone@duffordbrown.com
           chammond@duffordbrown.com

William J. Kelly III
Chanda M. Feldkamp
Kelly & Walker LLC
1512 Larimer Street, Suite 200
Denver, CO  80202
Email:  wkelly@kellywalkerlaw.com
Email:  cfeldkamp@kellywalkerlaw.com

Brian A. Birenbach
The Rietz Law Firm, L.L.C.
114 Village Place, Suite 301
Dillon, CO  80435
Email:  brian@rietzlawfirm.com

Kathryn A. Reilly
Toren G.E. Mushovic
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver CO  80202-5647
Email:  reilly@wtotrial.com
Email:  mushovic@wtotrial.com

James E. Hartley
Mher Hartoonian
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Email:  jhartley@hollandhart.com
Email:  mhartoonian@hollandhart.com

W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Email:  bsiebert@shermanhoward.com

Jeffrey P. Allen
Donald J. Gentile
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA  02210
Email:  jallen@lawson-weitzen.com
Email:  dgentile@lawson-weitzen.com

EMPLOY/1226513.1

Bogdan Enica
Expert AuPair
111 Second Avenue, NE, Suite 213
St. Petersburg, FL  33701
Email:  Bogdan@expertaupair.com

Meshach Y. Rhoades
Martin Estevao
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, CO  80202
Email:  Rhoadesm@gtlaw.com
Email:  Estevaom@gtlaw.com

Martha L. Fitzgerald
Kathryn A. Barrett
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Email:  mfitzgerald@bhfs.com
Email:  kbarrett@bhfs.com

Lawrence Lee
Daniel C. Perkins
Fisher & Phillips LLP
1801 California Street, Suite 2700
Denver, CO  80202
Email:  llee@laborlawyers.com
Email:  dperkins@laborlawyers.com

John R. Mann
Thomas B. Quinn
Gordon & Rees, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email:  jmann@gordonrees.com
Email:  tquinn@gordonrees.com

Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY  10022
Email:  mlschwartz@bsfllp.com
Email:  pskinner@bsfllp.com
Email:  rjackson@bsfllp.com

Lauren F. Louis
Sigrid S. McCawley
Boies, Schiller & Flexner, LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Email:  llouis@bsfllp.com
Email:  smccawley@bsfllp.com

*s/ Laura Lewis*