## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

## PLAINTIFFS' OPPOSITION TO CULTURAL CARE, INC.'S MOTION TO STRIKE [DOC. 206]

---

### Preliminary Statement

On a motion to dismiss under Rule 12(b)(6), courts do not consider "evidence." They evaluate the well-pleaded allegations of a complaint, and – assuming those allegations are true – determine whether the complaint states a claim. In this case, plaintiffs have asserted claims stemming from the defendants' unlawful and deceptive practice of setting *au pair* wages at a uniform level, which is below both the state and federal minimum wage and far below the prevailing market wage.

One of the central questions is therefore the meaning of the State Department's regulation regarding *au pair* wages, which obliges the defendants to "require that *au pair* participants [a]re compensated at a weekly rate based upon 45 hours of child care services per week and paid in conformance with the requirements of the Fair Labor

Standards Act as interpreted and implemented by the United States Department of Labor."  22 C.F.R. § 62.31(j)(1).

Plaintiffs argue that this provision means precisely what it says:  *au pairs* must be paid consistent with the FLSA – which provides for a federal, and where higher, state minimum wage.  (*See* Doc. 199 at 33-44; 29 U.S.C. § 218).[1]  The defendants, on the other hand, cannot agree on which alternative (and implausible) reading of the regulation is correct.  To Cultural Care, the regulation requires the sponsors to pay precisely $195.75 per week, and not a penny more.  (*e.g.,* Doc. 127 at 8 (State Department "**mandated** the $195.75 weekly stipend" (emphasis in original)).  To the other defendants, the regulation requires the sponsors to pay at least that amount.  (Doc. 135 at 2-3 ("many defendants advertise a weekly stipend that is higher than the level set by the State Department, other sponsors make it clear that host families are free to pay more than the designated amount")).  And to all the defendants, the State Department regulation – though explicitly invoking the FLSA, which in turn explicitly preserves higher state minimum wage laws – somehow preempts state labor laws.  (*E.g.*, Doc. 136 at 5-6).

---

[1]   In their replies on the motions to dismiss, several of the defendants argue that the fact that *au pairs* are paid by the week, rather than the hour, somehow is an exception to the FLSA specific to the *au pair* program.  (*E.g.,* Doc. 207 at 2-3; Doc. 214 at 9).  Not so.  Whether an employee is paid by the hour, the week, or receives an annual salary, the FLSA requires that the resulting hourly pay be at least the federal and applicable state minimum wage.  *See* 29 U.S.C. § 217, *et seq*.  The State Department regulations merely require that *au pairs* be paid for 45 hours of work a week.

2

The defendants rely almost exclusively on a 2007 State Department "notice" in support of their arguments, which – though the State Department has withdrawn it – Cultural Care claims is "dispositive." (Doc. 207 at 7). But the more commonsense reading of the regulation advanced by plaintiffs is supported by an avalanche of formal and informal guidance in the form of opinion letters and an amicus brief from the Department of Labor – the agency that actually has the authority to interpret the FLSA – as well as various other notices from the State Department.

Not surprisingly, the defendants would rather the Court not consider that weight of authority. Attempting to characterize certain of these resources as "evidence," Cultural Care argues that it is "inadmissible" and should be stricken.

But the law is not "evidence." The Supreme Court has determined that courts should give deference to an executive agency's interpretation of the law, "whatever its form." *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001). In deciding the defendants' motions to dismiss, therefore, this Court should have a complete picture of what the federal government has said about the *au pair* program, rather than just the authority that the defendants prefer. Indeed, everything Cultural Care says about the materials it wishes the Court to strike – we don't know who authored it or what authority she had to do so, it is hearsay, it lacks context, etc. – could be said about the State Department notice. The Court should consider all of it, or none. Cultural Care's motion should be denied, or in the alternative, the Court should strike all references to the State

Department notice and the other documents submitted in support of defendants' motions to dismiss.[2]

## Background

Cultural Care moves to strike three documents attached as exhibits to the plaintiffs' consolidated opposition to the defendants' motions to dismiss: (1) a brief *amicus curiae* submitted by the Department of Labor offering the agency's interpretation of the FLSA (Exhibit D); (2) a State Department presentation concerning the rights of non-immigrant visa-holders (Exhibit E); and (3) a *Washington Post* article that contains an on-the-record statement from the State Department (Exhibit B).[3]

### A.    Department of Labor Amicus Brief (Exhibit D).

In October 2010, the Department of Labor submitted an *amicus curiae* brief to the Eleventh Circuit in *Ramos-Barrientos v. Bland*, an appeal that presented the issue of "[w]hether the district court erred when it held that, pursuant to section 3(m) of the FLSA, 29 U.S.C. [§] 203(m), an employer may take credit toward the FLSA minimum wage for the cost of housing that the employer is obligated to furnish free of charge to agricultural employees working temporarily in the United States on H-2A visas." (Ex. D

---

[2] Consistent with this Court's local rules, plaintiffs are filing a separate motion requesting this alternative relief, as well as to strike two new documents, attached to defendant Go Au Pair's reply for the first time, which are plainly evidence and may not be considered on a motion to dismiss. *See* D. Colo. L. Civ. R. 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.").

[3] Unless otherwise noted, all references to "Exhibit __" are to exhibits to the plaintiffs' consolidated opposition to the defendants' motions to dismiss, which is document 199 on the docket.

at 2). Ultimately, and after affording the Department of Labor's views appropriate deference under *Auer v. Robbins*, 519 U.S. 452 (1997), the Eleventh Circuit agreed, holding that because employers must pay their employees at least the minimum wage "free and clear" for all hours worked, *see* 29 U.S.C. 206(a); 29 C.F.R. § 531.35, employers may not receive a wage credit for providing housing to H-2A visa holders, since the housing was "primarily for the benefit or convenience of the employer," 29 C.F.R. § 531.3(d)(1). Relying on precisely the same interpretation of this provision of the FLSA, plaintiffs argue that *au pairs*' employers should not receive a wage credit, since the *au pair* rules, like the H-2A rules, require that housing be provided. *Compare* 22 C.F.R. § 62.31(e)(6) (requiring *au pairs* receive housing) *with* 20 C.F.R. § 655.122(d) (same for H-2A visa holders); *see also* Doc. 199 at 34-35, 39.

### B.  State Department Wilberforce Presentation (Exhibit E)

Plaintiffs also submitted a State Department presentation that, as Cultural Care acknowledges, (Doc. 206 at 2, 5), is publicly available (at http://1.usa.gov/1EgwnSc) on the State Department's website. The presentation, consistent with the Wilberforce pamphlet (Exhibit A) and other State Department guidance, provides that, with respect to all visa holders, "you have the right to . . . be paid at least the minimum wage," (Ex. E at 10), and "employers should <u>not</u> . . . deny you pay for overtime work," (Ex. E at 22).

### C.  State Department statement to the *Washington Post* (Exhibit B)

Finally, in March 2015, the *Washington Post* reported about this lawsuit. As part of their reporting, the *Post*'s staff obtained an on-the-record statement from the State

Department, through its spokesman Nathan Arnold. (Ex. B at 2).  According to the State Department, designated sponsors (*i.e.*, the defendants) "must also comply with all other applicable federal, state, and local laws, including any state minimum wage requirements."  The statement continued, "[t]he Department has been communicating with au pair sponsors to confirm that they are aware of their obligations under the regulations – including with respect to host family requirements – and will continue to do so."  (*Id.*)

The *Washington Post* article is cited twice in plaintiffs' briefing.  In both cases, it is used to support plaintiffs' interpretation of the Wilberforce Pamphlet — a document to which Cultural Care does not object — by showing that the State Department unambiguously interprets its regulation to require that defendants ensure that *au pairs* are paid the state and federal minimum wages. (Doc. 199 at 2-3, 44.)  As such, the State Department's statement to the *Post* is directly responsive to Cultural Care's argument that the Wilberforce pamphlet applies to all visa holders and does not address *au pairs* in particular.  (*See* Doc. 207 at 11).

## Legal Standards

"The Rule 12(b)(6) standard tests 'the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.'" *Wyles v. Aluminaid International, A.G.*, No. 15–cv–00393–CMA–KMT, 2015 WL 4035862, at *2 (D. Colo. June 30, 2015) (quoting *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)). "Indeed, 'the court's function on a Rule 12(b)(6) motion is not to weigh potential

evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *DeAtley v. Allard*, No. 14–cv–00100–RM–KMT, 2014 WL 1258170, at *4 (D. Colo. Mar. 27, 2014) (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)).

There is therefore no need to consider the Rules of Evidence. Factual material is either taken as true – and as admissible – or it is outside the complaint and must be disregarded. Concepts like authentication and hearsay have little role on a Rule 12(b)(6) motion. *See generally Lipsky v. Commonwealth United Corporation*, 551 F.2d 887, 893 (2d Cir. 1976) ("Evidentiary questions . . . should especially be avoided at such a preliminary stage of proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint . . . on the sterile field of the pleadings alone."); *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, No. 09–2857, 2009 WL 3540786, at *2–3, (E. D. Pa. Oct. 30, 2009) ("It is not necessary at this stage to determine whether or not evidence . . . will be admissible if offered at trial."); *McAndrews Law Offices v. Sch. Dist. of Phila.*, No. 06–5501, 2007 WL 515412, at *3–4 (E. D. Pa. Feb. 12, 2007) ("At this stage of the proceedings, the court will not strike pleadings simply because they may not later be admissible at trial.").

Legal authority, however, is of obvious importance at this stage. In a case concerning the proper interpretation of a federal regulation, the government's views

carry the weight of authority, and should be considered by the Court.  While formal notice-and-comment rule-making remains the gold standard of interpretative guidance, *see Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), the Supreme Court has expressly blessed the use of agency guidance that falls short of the sort that would receive *Chevron*-style deference.

"*Chevron* did nothing to eliminate *Skidmore* [*v. Swift & Co.*, 323 U.S. 134 (1944)]'s holding that an agency's interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires."  *Mead Corp.*, 533 U.S. at 234 (internal citations and quotation marks omitted).  The weight accorded to an agency position under *Skidmore* "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

In particular, courts have historically afforded the Department of Labor's interpretation of ambiguous regulations under the FLSA "great weight."  *In re Wal-Mart Stores, Inc. Fair Labor Standards Act Litig.*, 395 F.3d 1177, 1185-86 (10th Cir. 2005) (collecting cases).  In *Salazar v. Butterball, LLC*, for example, the court deferred to Department of Labor Opinion Letters because "agency interpretations are not controlling on courts, but are sources to which courts may look for guidance as they incorporate an

agency's specialized experience with the issue." No. 08-cv-2071, 2010 WL 965353, at *5 (D. Colo. Mar. 15, 2010) (internal quotation marks omitted).

## Discussion

I. **Cultural Care's Motion to Strike Should Be Denied Because the Challenged Exhibits Are All Examples of Interpretive Guidance from the Government**

Contrary to Cultural Care's arguments, none of the documents attached to plaintiffs' opposition brief is submitted as "evidence." Indeed, the Court may not consider evidence outside of the pleadings on a motion to dismiss. Instead, the exhibits were all provided as legal authority: agency guidance interpreting the FLSA and the *au pair* regulations. Cultural Care's arguments about hearsay, authentication, and the Rules of Evidence generally should therefore be rejected out of hand. Nonetheless, we describe briefly the significance of the three objected-to documents.

### A. The Department of Labor Amicus Brief

Cultural Care argues that the Department of Labor's amicus brief should be stricken because it is a "rogue document," has "no connection to this case," and "will only confuse the issues at bar." (Doc. 206 at 4). Cultural Care then cites cases holding that it is generally within the Court's discretion to accept the filing of an amicus brief.

This entirely misses the point. The amicus brief is being offered as a statement of the Department of Labor's interpretation of its own regulations – some of the very regulations at issue in this case, most notably 29 C.F.R. § 531.3, which provides that employers may not take a credit for facilities provided "for the benefit or convenience of the employer." Moreover, in reaching its conclusion, the Labor Department's brief relies

9

heavily on its prior analysis in a 1997 Opinion Letter that dealt explicitly with the *au pair* program.  (Ex. D at 16 (citing August 19, 1997 Opinion Letter)).

The amicus brief is therefore powerful support for plaintiffs' argument that the Department of Labor has interpreted its regulations to mean that employers are not afforded credit for providing food and lodging when calculating minimum wages, if the employer is required to provide food and lodging as part of the prevailing visa program — a point supported by at least three Department of Labor Opinion Letters as well as the governing regulation itself.  (*See* Doc. 199 at 34-35, 39.)  The amicus brief also supports the plaintiffs' additional argument that even if a credit applied, it would not be a straight 40% credit, but would be fact-dependent and vary from state to state.  (*Id.* at 34-35; *id.* at 39 ("the [state or federal housing credit] law providing the greater compensation to the employee will prevail").).

Amicus briefs from federal agencies are precisely the sort of interpretive guidance that the Supreme Court has explicitly held is entitled to *Skidmore* deference.  *See Chase Bank N.A. v*. McCoy, 562 U.S. 195, 210-11 (2011); *see also In re Wal-Mart Stores, Inc. Fair Labor Standards Act Litig.*, 395 F.3d at 1185.  Indeed, in the seminal case announcing this principle, the Court deferred to the Department of Labor's views in an amicus brief interpreting the FLSA.  *See Auer*, 519 U.S. at 462 ("Petitioners complain that the Secretary's interpretation comes to us in the form of a legal brief; but that does not, in the circumstances of this case, make it unworthy of deference.").  It is for that reason that the cases that Cultural Care cites about the Court's ability to accept or reject

amicus briefs have no application to submissions filed on behalf of the government. *See, e.g.,* Fed. R. App. P. 29(a) (unlike any other party, "[t]he United States or its officer or agency or a state may file an amicus-curiae brief without the consent of the parties or leave of court."); 28 U.S.C. § 517 (United States may file statement of interest in any action).

While Cultural Care is free to argue that the Labor Department's interpretation of the FLSA as set forth in the amicus brief is unpersuasive, or that the situation in that case is distinguishable, there is no legitimate basis on which to strike it.

### B. The Wilberforce Presentation

Next, Cultural Care asks the Court to strike the Wilberforce presentation – even though it undisputedly is a State Department document – because "it lacks context, and thus is not properly authenticated." (Doc. 206 at 5). To begin with, even assuming the concept of authentication matters with respect to legal authority like the presentation, this argument is misplaced. On a motion to dismiss, the Court must draw all inferences in plaintiffs' favor, including the inference that the State Department presentation about non-immigrant visa-holders' rights is, in fact, a State Department presentation about non-immigrant visa-holders' rights.

More to the point, Cultural Care is just wrong when it claims that the presentation lacks context or that "there is no accompanying website page that explains the PowerPoint Presentation or provides any context." (Doc. 206 at 6). As set forth in the plaintiff's opposition papers, the Wilberforce Trafficking Victims Protection

Reauthorization Act of 2008 requires the State Department to "develop an information pamphlet and video on legal rights and resources for aliens applying for employment- or education-based nonimmigrant visas." 8 U.S.C. § 1375b(a).

Consistent with the Act, the State Department maintains a page entitled "Rights and Protections for Temporary Workers." That page (http://1.usa.gov/1LImtSc) contains information for nonimmigrant visa-holders, including J-1 visa holders such as *au pairs*, as well as links to the Wilberforce pamphlet in English and numerous foreign languages. The website continues:

> The Department has also prepared an informational video in response to section 1206 of the Violence Against Women Reauthorization Act of 2013 (Pub. L. 113-4). The video complements the Wilberforce Pamphlet and provides information on protections for certain employment- and education-based nonimmigrant visa applicants, including domestic workers. The English version of the video is linked in the section below.

There is then a line that reads, "Know Your Rights Video and PDF," with links to both:

> Rights, Protections and Resources Pamphlet:
> English Version
> - Online Reading Pamphlet Version (PDF - 73 KB)
> - Double-Sided Printing Pamphlet Version (PDF - 70 KB)
> - Know Your Rights Video and PDF (PDF - 4.6 MB)

The hyperlink for the PDF brings you to Exhibit E – the State Department presentation. Thus, there *is* a website that explains precisely what the presentation is and provides context. Cultural Care's motion to strike it should be denied.

### C. The State Department's Statement to the Washington Post

Finally, Cultural Care wants this Court to strike the State Department's statement to the *Washington Post*, arguing that it is hearsay and that it post-dates this lawsuit.

Cultural Care's hearsay argument is misplaced. The statement to the *Washington Post* is being offered as a statement of the agency's views. It is therefore not "evidence" to which the hearsay rule applies. Even if the article were being offered into evidence, moreover, the State Department's statement is not hearsay because it is not being offered for the truth of the matter asserted; it is being offered to demonstrate what the State Department said. This is a classic non-hearsay use. *See, e.g., United States v. Rodriguez-Lopez,* 565 F.3d 312, 314 (6th Cir. 2009) ("A statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay.").

And the fact that the statement was made after this lawsuit was filed, and in direct response to the lawsuit, makes the State Department's statement particularly relevant. Indeed, courts often defer to post-litigation agency interpretations, an agency's amicus brief being the classic example. Here, when asked specifically about this case, an official State Department spokesman said, on the record and for attribution, that *au pairs* are entitled to be paid in accordance "with all other applicable federal, state, and local laws, including any state minimum wage requirements." This is

13

an expression of the State Department's interpretation of its own regulations – and one that directly undercuts the defendants' strained preemption argument. [4]

It is particularly important that the Court consider the State Department's position because it is entirely consistent with the Wilberforce pamphlet, which provides that "regardless of your visa status," "[y]ou have the right to earn at least the federal minimum wage," and that visa-holders should "[a]lso check [t]he minimum wage for the state in which you work. If that wage is higher, you have the right to be paid the higher amount." (Doc. 199, Ex. A at 7). In its reply brief on the motion to dismiss, however, Cultural Care argued that these clear statements in the Wilberforce pamphlet somehow do not apply to *au pairs*. (Doc. 207 at 11 ("Plaintiffs' reliance on the poorly worded Wilberforce Pamphlet is a paper tiger" because it "is given to *all* visa holders")). The State Department's explicit statement to the *Post*, however, makes clear that it does.

---

[4] The State Department spokesman who provided the statement to the *Post*, Nathan Arnold, (*see* Ex. B), is the Public Affairs Officer for the Bureau of Educational and Cultural Affairs. *See, e.g.,* Valerie Strauss, "Why Can't the State Department Do More to Help These Stranded Exchange Students," *Washington Post* (July 20, 2015), available at http://wapo.st/1JVAeqo; *see also* Nathan Arnold's LinkedIn profile, available at http://bit.ly/1JtCe2E. The Bureau of Educational and Cultural Affairs is the same component of the State Department that in the past has been responsible for commenting on the application of the *au pair* regulations, including in documents relied upon by the defendants. (*See, e.g.,* Doc. 130-4). Cultural Care's repeated assertion that the statement was issued to the *Post* by an "unnamed" State Department spokesman is therefore incorrect, in addition to being irrelevant. (*E.g.,* Doc. 206 at 4).

## Conclusion

For the reasons just given, Cultural Care's motion to strike should be denied in its entirety.

Dated: August 31, 2015

                                                Respectfully Submitted,
BOIES, SCHILLER & FLEXNER LLP

 /s/  Matthew L. Schwartz
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
575 Lexington Avenue
New York, New York  10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel.: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

**Certificate of Service**

I hereby certify that on August 31, 2015, I served a true and correct copy of the forgoing on the individuals below pursuant to F.R.C.P. 5.

Brooke A. Colaizzi
BColaizzi@shermanhoward.com

Erica Herrera Gutherz
egutherz@shermanhoward.com

Chanda Marie Feldkamp
cfeldkamp@kellywalkerlaw.com

Meshach Yustine Rhoades
mrhoades@armstrongteasdale.com

Bogdan Enica
bogdane@hotmail.com

Martha Louise Fitzgerald
mfitzgerald@bhfs.com

Mher Hartoonian
mhartoonian@hollandhart.com

Donald Joseph Gentile
dgentile@lawson-weitzen.com

John Roger Mann
jmann@gordonrees.com

Brian Alan Birenbach
brian@rietzlawfirm.com

Toren G.E. Mushovic
mushovic@wtotrial.com

Lawrence L. Lee
llee@laborlawyers.com

Raymond Myles Deeny
rdeeny@shermanhoward.com

Heather Fox Vickles
hvickles@sah.com

William James Kelly, III
wkelly@kellywalkerlaw.com

Martin Estevao
mestevao@armstrongteasdale.com

Kathryn Anne Barrett
kbarrett@bhfs.com

James Edward Hartley
jhartley@hollandhart.com

Jeffrey Paul Allen
jallen@lawson-weitzen.com

Walter Vernon Bernie Siebert
bsiebert@shermanhoward.com

Thomas Baker Quinn
tquinn@gordonrees.com

Kathryn A. Reilly
reilly@wtotrial.com

Daniel C. Perkins
dperkins@laborlawyers.com

Susan M. Schaecher
sschaecher@laborlawyers.com

Christian Dow Hammond
chammond@duffordbrown.com

Lawrence Daniel Stone
lstone@duffordbrown.com

                                             /s/  Matthew L. Schwartz
                                            Matthew L. Schwartz