# Exhibit A

U.S. Department of Labor
Wage and Hour Division
Washington, D.C. 20210



**Administrator's Interpretation No. 2016-1**

January 20, 2016

Issued by ADMINISTRATOR DAVID WEIL

SUBJECT:  Joint employment under the Fair Labor Standards Act and Migrant and Seasonal Agricultural Worker Protection Act.

Through its enforcement efforts, the Department of Labor's Wage and Hour Division (WHD) regularly encounters situations where more than one business is involved in the work being performed and where workers may have two or more employers.  More and more, businesses are varying organizational and staffing models by, for instance, sharing employees or using third-party management companies, independent contractors, staffing agencies, or labor providers.  As a result, the traditional employment relationship of one employer employing one employee is less prevalent.[1]  WHD encounters these employment scenarios in all industries, including the construction, agricultural, janitorial, warehouse and logistics, staffing, and hospitality industries.

The growing variety and number of business models and labor arrangements have made joint employment more common.[2]  In view of these evolving employment scenarios, the Administrator believes that additional guidance will be helpful concerning joint employment

---

[1] For example, a corporate hotel chain may contract out to another business the management, catering, or housekeeping services at one of its hotels.  Workers who perform these services at the hotel may wear uniforms with the name of the hotel chain or the other business and may perform tasks dictated by the hotel chain, the other business, or both.

[2] WHD considers joint employment in hundreds of investigations every year.  WHD has determined, for example, that maritime fabrication facilities jointly employed welders, pipefitters, and other workers hired by staffing agencies; that hotels and hotel operating companies jointly employed housekeeping and guest services workers hired by staffing agencies; and that growers and farm labor contractors jointly employed farmworkers.  *See also Perez v. Lantern Light Corp.*, 2015 WL 3451268, at *17 (W.D. Wash. May 29, 2015) (finding that satellite television provider was a joint employer of the installers employed by the company with whom the provider contracted to install its services).

under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201, *et seq.*, and the Migrant and Seasonal Agricultural Worker Protection Act (MSPA), 29 U.S.C. 1801, *et seq.*[3]

Whether an employee has more than one employer is important in determining employees' rights and employers' obligations under the FLSA and MSPA. It is a longstanding principle under both statutes that an employee can have two or more employers for the work that he or she is performing. When two or more employers jointly employ an employee, the employee's hours worked for all of the joint employers during the workweek are aggregated and considered as one employment, including for purposes of calculating whether overtime pay is due. Additionally, when joint employment exists, all of the joint employers are jointly and severally liable for compliance with the FLSA and MSPA.[4] Where joint employment exists, one employer may also be larger and more established, with a greater ability to implement policy or systemic changes to ensure compliance. Thus, WHD may consider joint employment to achieve statutory coverage, financial recovery, and future compliance, and to hold all responsible parties accountable for their legal obligations.

Certainly, not every subcontractor, farm labor contractor, or other labor provider relationship will result in joint employment. This Administrator's Interpretation (AI) provides guidance on identifying those scenarios in which two or more employers jointly employ an employee and are thus jointly liable for compliance under the FLSA or MSPA. This AI first discusses the broad scope of the employment relationship under the FLSA and MSPA.[5] It then discusses the concepts of horizontal and vertical joint employment and relevant joint employment regulations.

Horizontal joint employment exists where the employee has employment relationships with two or more employers and the employers are sufficiently associated or related with respect to the

---

[3] In June 2014, WHD issued Administrator's Interpretation No. 2014-2, "Joint Employment of Home Care Workers in Consumer-Directed, Medicaid-Funded Programs by Public Entities under the Fair Labor Standards Act" (Home Care AI), available at http://www.dol.gov/whd/opinion/adminIntrprtn/FLSA/2014/FLSAAI2014_2.pdf. Although the Home Care AI was directed toward a particular employment scenario in a specific industry, the legal analyses in the Home Care AI and this Administrator's Interpretation are harmonious and are intended to be read in conjunction with one another.

[4] In other words, each joint employer is individually responsible, for example, for the entire amount of wages due. If one employer cannot pay the wages because of bankruptcy or other reasons, then the other employer must pay the entire amount of wages; the law does not assign a proportional amount to each employer.

[5] In July 2015, WHD issued Administrator's Interpretation No. 2015-1, "The Application of the Fair Labor Standards Act's 'Suffer or Permit' Standard in the Identification of Employees Who Are Misclassified as Independent Contractors" (Misclassification AI), available at http://www.dol.gov/whd/workers/Misclassification/AI-2015_1.pdf. In the Misclassification AI, the Administrator also discussed the FLSA's broad statutory definitions; that AI addressed the issue of the misclassification of employees as independent contractors and provided guidance regarding determining whether a worker is an employee or independent contractor.

employee such that they jointly employ the employee. The analysis focuses on the relationship of the employers to each other. This AI explains that guidance provided in the FLSA joint employment regulation – which focuses on the relationship between potential joint employers – is useful when analyzing potential horizontal joint employment cases.

Vertical joint employment exists where the employee has an employment relationship with one employer (typically a staffing agency, subcontractor, labor provider, or other intermediary employer) and the economic realities show that he or she is economically dependent on, and thus employed by, another entity involved in the work. This other employer, who typically contracts with the intermediary employer to receive the benefit of the employee's labor, would be the potential joint employer. Where there is potential vertical joint employment, the analysis focuses on the economic realities of the working relationship between the employee and the potential joint employer. This AI explains that guidance provided in the MSPA joint employment regulation is useful when analyzing potential vertical joint employment. The structure and nature of the relationship(s) at issue in the case, reflecting potentially horizontal or vertical joint employment or both, should determine how each case is analyzed.

## I. The FLSA and MSPA Broadly Define the Employment Relationship and Thus the Scope of Joint Employment

The scope of employment relationships subject to the protections of the FLSA and MSPA is broad. The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. 203(e)(1), and "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. 203(d). The FLSA's definition of "employ" "includes to suffer or permit to work." 29 U.S.C. 203(g). The "suffer or permit" definition of employment is "'the broadest definition that has ever been included in any one act.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting statement of Sen. Hugo Black, 81 Cong. Rec. 7657 (1938)). MSPA defines "employ" in exactly the same way as the FLSA, and the scope of employment relationships under MSPA is thus the same as it is under the FLSA. *See* 29 U.S.C. 1802(5) ("The term 'employ' has the meaning given such term under [the FLSA, 29 U.S.C. 203(g)]."); 29 C.F.R. 500.20(h)(1); *see also* 29 C.F.R. 500.20(h)(2)-(3) (the terms "employer" and "employee" under MSPA are also given their meaning as found in the FLSA).

The FLSA and MSPA both "specifically cover 'joint employment' relationships." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996). The FLSA regulations explicitly state that a single worker may be "an employee to two or more employers at the same time." 29 C.F.R. 791.2(a); *see also Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998) ("The FLSA contemplates several simultaneous employers, each responsible for compliance with the Act."). The MSPA regulations provide that MSPA's definition of the term "employ" includes the FLSA's joint employment principles. *See* 29 C.F.R. 500.20(h)(5); *see also Antenor*, 88 F.3d at 929 (MSPA makes clear that a worker can be jointly employed by more than one entity at the same time). "Joint employment under the Fair Labor Standards Act is joint employment under the MSPA." 29 C.F.R. 500.20(h)(5)(i) (emphasis omitted).[6]

---

[6] The Department amended the MSPA joint employment regulation in 1997.

3

The concept of joint employment, like employment generally, "should be defined expansively" under the FLSA and MSPA. *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997); *see also* Misclassification AI, 3-4. The concepts of employment and joint employment under the FLSA and MSPA are notably broader than the common law concepts of employment and joint employment, which look to the amount of control that an employer exercises over an employee. *See Antenor*, 88 F.3d at 933. Unlike the common law control test, which analyzes whether a worker is an employee based on the employer's control over the worker and not the broader economic realities of the working relationship, the "suffer or permit" standard broadens the scope of employment relationships covered by the FLSA. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947) (FLSA's definitions are "comprehensive enough to require its application" to many working relationships which, under the common law control standard, may not be employer-employee relationships); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (FLSA's "suffer or permit" standard for employment "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."). The test for joint employment under the FLSA and MSPA is thus different, for example, than the test under other labor statutes, such as the National Labor Relations Act, 29 U.S.C. 151 *et seq.*, and the Occupational Safety and Health Act, 29 U.S.C. 651 *et seq*. Indeed, in FLSA and MSPA cases, "courts have found economic dependence under a multitude of circumstances where the alleged employer exercised little or no control or supervision over the putative employees." *Antenor*, 88 F.3d at 933 n.10.

Moreover, prior to the FLSA's enactment, "suffer or permit" or similar phrasing was commonly used in state laws regulating child labor and was "designed to reach businesses that used middlemen to illegally hire and supervise children." *Antenor*, 88 F.3d at 929 n.5. A key rationale underlying the "suffer or permit" standard was that an employer should be liable for the child labor if it had the opportunity to detect work being performed illegally and the ability to prevent it from occurring. *See, e.g., People ex rel. Price v. Sheffield Farms-Slawson-Decker Co.*, 225 N.Y. 25, 29-31 (N.Y. 1918). Thus, the "suffer or permit to work" standard was designed to expand child labor laws' coverage beyond those who controlled the child laborer, counter an employer's argument that it was unaware that children were working, and prevent employers from using "middlemen" to evade the laws' requirements.

In sum, the expansive definition of "employ" as including "to suffer or permit to work" rejected the common law control standard and ensures that the scope of employment relationships and joint employment under the FLSA and MSPA is as broad as possible.

## II.     Horizontal and Vertical Joint Employment Analyses in FLSA and MSPA Cases

The FLSA and MSPA regulations provide relevant and complementary guidance on joint employment. The structure and nature of the relationship(s) at issue should determine whether a particular case should be analyzed under horizontal or vertical joint employment, or both.[7]

---

[7] Given the potential complexity of employment relationships, aspects of both horizontal and vertical joint employment may be present in a single joint employment relationship. For example, both forms of joint employment could potentially exist where two warehouses share employees and use a staffing agency to provide them with labor.

4

Joint employment may exist when two (or more) employers each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee. *See* 29 C.F.R. 791.2. This type of joint employment is sometimes referred to as <u>horizontal</u> joint employment. In a possible horizontal joint employment situation, there is typically an established or admitted employment relationship between the employee and each of the employers, and often the employee performs separate work or works separate hours for each employer. Thus, the focus of a horizontal joint employment analysis is the relationship between the two (or more) employers. The FLSA regulation provides guidance on horizontal joint employment. *See, e.g., Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917-18 (9th Cir. 2003) (citing FLSA regulation). Examples of horizontal joint employment may include separate restaurants that share economic ties and have the same managers controlling both restaurants, *see Chao v. Barbeque Ventures, LLC*, 2007 WL 5971772, at *6 (D. Neb. Dec. 12, 2007), or home health care providers that share staff and have common management, *see A-One Med. Servs.*, 346 F.3d at 918.

Joint employment may additionally exist when an employee of one employer (referred to in this AI as an "intermediary employer") is also, with regard to the work performed for the intermediary employer, economically dependent on another employer (referred to in this AI as a "potential joint employer").[8] *See* 29 C.F.R. 500.20(h)(5); *A-One Med. Servs.*, 346 F.3d at 917 (describing vertical joint employment as possible in circumstances where "a company has contracted for workers who are directly employed by an intermediary company"). This type of joint employment is sometimes referred to as <u>vertical</u> joint employment. The vertical joint employment analysis is used to determine, for example, whether a construction worker who works for a subcontractor is also employed by the general contractor, or whether a farmworker who works for a farm labor contractor is also employed by the grower.[9] Unlike in horizontal joint employment cases, where the association between the potential joint employers is relevant, the vertical joint employment analysis instead examines the economic realities of the relationships between the construction worker and the general contractor, and between the farmworker and the grower, to determine whether the employees are economically dependent on those potential joint employers and are thus their employees. The MSPA regulation provides a set of factors to apply an economic realities analysis in vertical joint employment cases. Although they do not all apply the same factors, several Circuit Courts of Appeals have also adopted an economic realities analysis for evaluating vertical joint employment under the FLSA. Regardless of the exact factors, the FLSA and MSPA require application of the broader

---

[8] Depending on the industry, the "intermediary employer" in a vertical joint employment relationship could be, for example, a staffing agency, farm labor contractor, subcontractor, or other labor provider, supplier, or broker, and the "potential joint employer" could be a parent corporation, farm owner, higher-tier contractor, or client of the staffing agency or labor provider, supplier, or broker.

[9] As discussed below, a threshold determination in those examples would be whether the subcontractor or farm labor contractor itself is an independent contractor or whether it has an employment relationship with the general contractor or grower.

5

economic realities analysis, not a common law control analysis, in determining vertical joint employment.

The joint employment approaches described in the FLSA and MSPA regulations interpret the same definition of employment. MSPA borrowed the FLSA's definition of the term "employ" "with the deliberate intent" of adopting the FLSA's joint employer doctrine "as the 'central foundation' of MSPA and 'the best means by which to insure that the purposes of this MSPA would be fulfilled.'" 29 C.F.R. 500.20(h)(5)(ii) (quoting MSPA's legislative history); *see also* 29 C.F.R. 500.20(h)(5)(i) ("Joint employment under the Fair Labor Standards Act is joint employment under the MSPA.") (emphasis omitted). Therefore, the FLSA regulation is useful when analyzing potential horizontal joint employment cases, whether arising under the FLSA or MSPA. Likewise, the factors identified in the MSPA regulation are useful when analyzing potential vertical joint employment cases, whether arising under MSPA or the FLSA.[10] This is not to say that the MSPA joint employment regulation itself applies in FLSA cases; however, the MSPA joint employment regulation and its economic realities factors are useful guidance in an FLSA case because of the shared definition of employment and the coextensive scope of joint employment between the FLSA and MSPA.[11] For the reasons explained above, including the common definitions, using the joint employment factors identified in the MSPA regulation in an FLSA case is consistent with both statutes and regulations. It is also consistent with WHD's prior guidance. *See* Home Care AI, 3 (economic realities factors identified in the MSPA regulation should be considered when determining joint employment under the FLSA, citing 29 C.F.R. 500.20(h)); May 11, 2001 WHD Opinion Letter (identifying MSPA regulation's economic realities factors as relevant factors when determining joint employment under the FLSA, citing 29 C.F.R. 500.20(h)) (available at 2001 WL 1558966). Many potential joint employment cases arising under the FLSA will involve vertical joint employment, and an economic realities analysis of the type described in the MSPA joint employment regulation should be applied in those cases.

   A. <u>Horizontal Joint Employment and the Association of Potential Joint Employers</u>

---

[10] Courts have long turned to an economic realities analysis in analyzing vertical joint employment under the FLSA. The MSPA regulation itself cites to FLSA cases in defining joint employment. *See, e.g.,* 29 C.F.R. 500.20(h)(5)(ii) (citing *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973)).

[11] In *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1176-78 (11th Cir. 2012), the court applied an economic realities analysis primarily based on the pre-1997 version of the MSPA joint employment regulation and correctly recognized that "in considering a joint-employment relationship, we must not allow common-law concepts of employment to distract our focus from economic dependency." Yet, because the case arose under the FLSA, not MSPA, the court declined to use the factors in the current MSPA joint employment regulation despite the fact that the FLSA and MSPA define the scope of employment in the same way. *See id.* at 1177 ("Although [MSPA] defines joint employment by reference to the definition provided in the FLSA, that does not mean that the reverse holds true—that joint employment under the FLSA is invariably defined by [MSPA] regulations.").

6

Horizontal joint employment should be considered when an employee is employed by two (or more) technically separate but related or overlapping employers.[12] For example, the horizontal joint employment analysis would apply where a waitress works for two separate restaurants that are operated by the same entity and the question is whether the two restaurants are sufficiently associated with respect to the waitress such that they jointly employ the waitress; or where a farmworker picks produce at two separate orchards and the orchards have an arrangement to share farmworkers. In these scenarios, there would already be an established employment relationship between the waitress and each restaurant, and between the farmworker and each orchard. This joint employment analysis focuses on the relationship of the employers to each other.

In cases where joint employment is established, the employee's work for the joint employers during the workweek "is considered as one employment," and the joint employers are jointly and severally liable for compliance, including paying overtime compensation for all hours worked over 40 during the workweek. 29 C.F.R. 791.2(a).

**Example:**[13]   Casey, a registered nurse, works at Springfield Nursing Home for 25 hours in one week and at Riverside Nursing Home for 25 hours during that same week. If Springfield and Riverside are joint employers, Casey's hours for the week are added together, and the employers are jointly and severally liable for paying Casey for 40 hours at her regular rate and for 10 hours at the overtime rate. Casey should receive 10 hours of overtime compensation in total (not 10 hours from each employer).

In determining whether a horizontal joint employment relationship exists, the focus should be on the relationship (and often the degree of association) between the two (or more) potential joint employers with respect to the employee and all of the relevant facts of the particular case. *See* 29 C.F.R. 791.2(a). According to 29 C.F.R. 791.2(b), "[w]here the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist" in situations such as: (1) arrangements between the employers to share or interchange the employee's services; (2) where one employer acts directly or indirectly in the

---

[12] Even where two establishments are sufficiently related that they are part of a single enterprise (as defined in 29 U.S.C. 203(r)(1)) for FLSA coverage purposes, a separate determination is necessary to determine whether the establishments are joint employers. *See* 29 C.F.R. 779.203; *A-One Med. Servs.*, 346 F.3d at 917 ("Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers . . . are technically separate issues."). As explained by the case law, although the two analyses may require similar fact-finding and have similar considerations, determining that an employer is part of an enterprise to ascertain coverage under the FLSA is different from determining that the employer is a joint employer that is liable for minimum wages and overtime. *See, e.g., Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986).

[13] The addition or alteration of any of the facts in any of the examples in this AI could change the resulting analysis.

interest of another employer in relation to the employee; or (3) where the employers are associated "with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." *Id.* at 791.2(b). In *Schultz v. Capital International Security, Inc.,* for example, the court looked to the FLSA regulation and concluded that security workers were jointly employed by a security firm and the individual that the workers were hired to protect because the two employers were associated with respect to the employment of the workers and shared common control over them. *See* 466 F.3d 298, 306 (4th Cir. 2006) ("the entire employment arrangement fits squarely within the third example of joint employment in the regulation"). Specifically, the court explained that the employers were both involved in the hiring of the workers, played some role in scheduling, discipline, and terminations, and shared responsibility for supplying the workers with equipment. *See id.*

The following facts may be relevant when analyzing the degree of association between, and sharing of control by, potential horizontal joint employers:

- who owns the potential joint employers (i.e., does one employer own part or all of the other or do they have any common owners);
- do the potential joint employers have any overlapping officers, directors, executives, or managers;
- do the potential joint employers share control over operations (e.g., hiring, firing, payroll, advertising, overhead costs);
- are the potential joint employers' operations inter-mingled (for example, is there one administrative operation for both employers, or does the same person schedule and pay the employees regardless of which employer they work for);
- does one potential joint employer supervise the work of the other;
- do the potential joint employers share supervisory authority for the employee;
- do the potential joint employers treat the employees as a pool of employees available to both of them;
- do the potential joint employers share clients or customers; and
- are there any agreements between the potential joint employers.

*See, e.g.,* 29 C.F.R. 791.2(b); June 14, 2005 WHD Opinion Letter (identifying a number of the above facts as relevant in finding joint employment) (available at 2005 WL 6219105); April 11, 2005 WHD Opinion Letter (identifying a number of the above facts in finding joint employment) (available at 2005 WL 2086804); *Barbeque Ventures*, 2007 WL 5971772, at *1, 5-6 (separate legal entities who employed employees at five different restaurants were joint employers given common ownership, management and control; the same manager owned one legal entity, was the majority owner and manager of the other entity, and supervised the Area Director for all five restaurants). This is not an all-inclusive list of facts that could potentially be relevant to the analysis. Moreover, not all or most of the foregoing facts need to be present for joint employment to exist. Rather, these facts can help determine if there is sufficient indication that the potential joint employers are associated with respect to the employee and thus share control of the employee.

8

Joint employment does not exist, however, if the employers "are acting entirely independently of each other and are completely disassociated" with respect to an employee who works for both of them. 29 C.F.R. 791.2(a).  In that event, each employer may disregard all work performed by the employee for the other when determining its own responsibilities under the law.  *See id*.  There are many workers who have multiple jobs with multiple employers who are not joint employers.  For example, a high school teacher may also work a part-time job as an instructor for a standardized test preparatory company; the high school and the preparatory company would not be joint employers.  In sum, the focus of the horizontal joint employment analysis is the degree of association between the two potential joint employers even if they are formally separate legal entities and the degree to which they share control of the employee.

**Example:** An employee is employed at two locations of the same restaurant brand.  The two locations are operated by separate legal entities (Employers A and B).  The same individual is the majority owner of both Employer A and Employer B.  The managers at each restaurant share the employee between the locations and jointly coordinate the scheduling of the employee's hours.  The two employers use the same payroll processor to pay the employee, and they share supervisory authority over the employee.  These facts are indicative of joint employment between *Employers A and B*.

In contrast, an employee works at one restaurant (Employer A) in the mornings and at a different restaurant (Employer B) in the afternoons.  The owners and managers of each restaurant know that the employee works at both establishments.  The establishments do not have an arrangement to share employees or operations, and do not otherwise have any common management or ownership.  These facts are not indicative of joint employment between *Employers A and B*.

B.  <u>Vertical Joint Employment and Economic Dependence on the Potential Joint Employer</u>

The vertical joint employment inquiry focuses on whether the employee of the intermediary employer is also employed by another employer – the potential joint employer.  In vertical joint employment situations, the other employer typically has contracted or arranged with the intermediary employer to provide it with labor and/or perform for it some employer functions, such as hiring and payroll.  There is typically an established or admitted employment relationship between the employee and the intermediary employer.  That employee's work, however, is typically also for the benefit of the other employer.

In contrast to the horizontal joint employment analysis, where the focus is the relationship between the employers, the focus in vertical joint employment cases is the employee's relationship with the potential joint employer and whether that employer jointly employs the employee.  Examples of situations where vertical joint employment might arise include garment workers who are directly employed by a contractor who contracted with the garment manufacturer to perform a specific function, *see Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003); nurses placed at a hospital by staffing agencies, *see Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 143-49 (2d Cir. 2008); or warehouse workers whose labor

9

is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility, *see Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014). *See also A-One Med. Servs.*, 346 F.3d at 917; *Lantern Light*, 2015 WL 3451268, at *3 (where company has contracted for workers who are directly employed by an intermediary, court applies vertical joint employment analysis to relationship between company and workers); *Berrocal v. Moody Petrol., Inc.*, 2010 WL 1372410, at *11 n.16 (S.D. Fla. Mar. 31, 2010) (vertical joint employment may exist when "an employer hires laborers through a third party labor contractor").

A threshold question in a vertical joint employment case is whether the intermediary employer (who may simply be an individual responsible for providing labor) is actually an *employee* of the potential joint employer. Where there is vertical joint employment, there is likely a contract or other arrangement – but not necessarily an employment relationship – between the intermediary employer and the potential joint employer.[14] If the intermediary employer is an employee of the potential joint employer, then all of the intermediary employer's employees are employees of the potential joint employer too, and there is no need to conduct a vertical joint employment analysis. For example, if a farm labor contractor is not actually an independent contractor but is an employee of the grower (i.e., is economically dependent on the grower as a matter of economic reality), then all of the farm labor contractor's farmworkers are also employees of the grower. *See* 29 C.F.R. 500.20(h)(4). Likewise, if a drywall subcontractor is not actually an independent contractor but is an employee of the higher-tier contractor, then all of the drywall subcontractor's workers are also employees of the higher-tier subcontractor. In sum, it is critical to first determine whether the intermediary employer is an employee of the potential joint employer before proceeding with the vertical joint employment analysis.[15]

Once it is determined that the intermediary is not an employee, the vertical joint employment analysis should be applied to determine whether the intermediary employer's employees are also employed by the potential joint employer. Because it is an employment relationship analysis under the FLSA or MSPA, the vertical joint employment analysis must be an economic realities analysis and cannot focus only on control. As WHD has explained, the Supreme Court and the Circuit Courts of Appeals apply an economic realities analysis to determine the existence of an employment relationship under the FLSA and MSPA. *See, e.g.*, Home Care AI; Misclassification AI; *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) (the test of employment under the FLSA is economic reality); *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961) (the economic realities of the worker's relationship with the employer are the test of employment); 29 C.F.R. 500.20(h)(5)(iii). The particular economic

---

[14] The contract between the potential joint employer and the intermediary employer may purport to disclaim or deny any responsibility by the potential joint employer as an employer. However, that type of contractual provision is not relevant to the economic realities of the working relationship between the potential joint employer and the employee.

[15] The intermediary employer will be either an independent contractor or employee of the potential joint employer under the FLSA or MSPA. The Misclassification AI discusses the analysis for determining whether a worker is an employee or independent contractor. *See also* 29 C.F.R. 500.20(h)(4).

realities factors relied upon differ somewhat depending on the court, and courts routinely note that other additional relevant factors may be considered, but regardless, it is not a control test.

The MSPA regulation, describing seven economic realities factors in the context of a farm labor contractor acting as an intermediary employer for a grower, provides useful guidance to analyze any vertical joint employment case.  *See* 29 C.F.R. 500.20(h)(5)(iv).  These factors are probative of the core question of whether the employee is economically dependent on the potential joint employer who, via an arrangement with the intermediary employer, is benefitting from the work.  As courts have cautioned, the factors in an economic realities analysis should not be considered mechanically or in a vacuum; rather, they are guides for resolving the ultimate inquiry whether the employee is economically dependent on the potential joint employer.  *See Antenor*, 88 F.3d at 932-33; Misclassification AI, 5-6.[16]  Accordingly, these factors should be applied in a manner that does not lose sight of that ultimate inquiry or the expansive definition of employment under the FLSA and MSPA.  *See Antenor*, 88 F.3d at 932-33 ("the factors are used because they are indicators of economic dependence" and should be viewed "qualitatively to assess the evidence of economic dependence").  The seven factors are:

- A. <u>Directing, Controlling, or Supervising the Work Performed</u>.  To the extent that the work performed by the employee is controlled or supervised by the potential joint employer beyond a reasonable degree of contract performance oversight, such control suggests that the employee is economically dependent on the potential joint employer.  The potential joint employer's control can be indirect (for example, exercised through the intermediary employer) and still be sufficient to indicate economic dependence by the employee.  *See Torres-Lopez*, 111 F.3d at 643 ("indirect control as well as direct control can demonstrate a joint employment relationship") (citing pre-1997 MSPA regulation); *Antenor*, 88 F.3d at 932, 934; 29 C.F.R. 500.20(h)(5)(iv).  Additionally, the potential joint employer need not exercise more control than, or the same control as, the intermediary employer to exercise sufficient control to indicate economic dependence by the employee.[17]

---

[16] The vertical joint employment economic realities factors overlap some with the economic realities factors used to determine whether a worker is an employee or an independent contractor, as discussed in the Misclassification AI.  However, the exact factors applicable when determining whether a worker is an employee or an independent contractor cannot apply in a vertical joint employment case because they focus on the possibility that the worker is in business for him or herself (and thus is an independent contractor).  In a vertical joint employment case, the worker is not in business for him or herself, but is an employee of the intermediary employer, and may also be employed by the potential joint employer.

[17] This point holds true for the vertical joint employment analysis in general.  It is not necessary for the employee to be more economically dependent on the potential joint employer than the intermediary employer for there to be joint employment.  *See Antenor*, 88 F.3d at 932-33.  The focus is the employee's relationship with the potential joint employer and not a comparison of that relationship with the employee's relationship with the intermediary employer.  *See id*.

B. <u>Controlling Employment Conditions</u>.  To the extent that the potential joint employer has the power to hire or fire the employee, modify employment conditions, or determine the rate or method of pay, such control indicates that the employee is economically dependent on the potential joint employer.  Again, the potential joint employer may exercise such control indirectly and need not exclusively exercise such control for there to be an indication of joint employment.

C. <u>Permanency and Duration of Relationship</u>.  An indefinite, permanent, full-time, or long-term relationship by the employee with the potential joint employer suggests economic dependence.  This factor should be considered in the context of the particular industry at issue.  For example, if the work in the industry is by its nature seasonal, intermittent, or part-time, such industry condition should be considered when analyzing the permanency and duration of the employee's relationship with the potential joint employer.

D. <u>Repetitive and Rote Nature of Work</u>.  To the extent that the employee's work for the potential joint employer is repetitive and rote, is relatively unskilled, and/or requires little or no training, those facts indicate that the employee is economically dependent on the potential joint employer.

E. <u>Integral to Business</u>.  If the employee's work is an integral part of the potential joint employer's business, that fact indicates that the employee is economically dependent on the potential joint employer.  Whether the work is integral to the employer's business has long been a hallmark of determining whether an employment relationship exists as a matter of economic reality.  *See, e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729-30 (1947).

F. <u>Work Performed on Premises</u>.  The employee's performance of the work on premises owned or controlled by the potential joint employer indicates that the employee is economically dependent on the potential joint employer.  The potential joint employer's leasing as opposed to owning the premises where the work is performed is immaterial because the potential joint employer, as the lessee, controls the premises.

G. <u>Performing Administrative Functions Commonly Performed by Employers</u>.  To the extent that the potential joint employer performs administrative functions for the employee, such as handling payroll, providing workers' compensation insurance, providing necessary facilities and safety equipment, housing, or transportation, or providing tools and materials required for the work, those facts indicate economic dependence by the employee on the potential joint employer.

*See* 29 C.F.R. 500.20(h)(5)(iv).

Courts have applied many of the above factors to vertical joint employment scenarios in FLSA cases, though they have not explicitly relied on the MSPA regulation.  *See, e.g., Carrillo v. Schneider Logistics,* 2014 WL 183956, at *6 (applying Ninth Circuit's joint employment

12

economic realities analysis). In *Carrillo*, for example, warehouse workers sued the companies that operated the distribution warehouses and the company that owned the warehouses. The owner of the warehouses argued that it was not a joint employer of the warehouse workers. In denying the owner's motion for summary judgment, the court noted that there was evidence of possible joint employment for the following reasons: the owner exercised control over the warehouse workers' employment conditions because it approved staffing levels at the warehouse, directed that employees be shifted to an alternative workweek schedule, closely monitored productivity levels, and established various operating metrics; the work was performed on premises owned or leased by the owner, who provided all of the equipment necessary to perform work at its warehouses; the work consisted primarily of conventional manual labor, requiring little skill; and the work was an integral part of the owner's corporate strategy. *See id.* at *9-15. As the court did in *Carrillo,* applying these or similar factors will help to determine whether the employee is economically dependent on the potential joint employer.

As noted, the economic realities factors to apply vary somewhat depending on the court, but any formulation must address the "ultimate inquiry" of economic dependence. In applying any other relevant factors, the broad scope of joint employment under the FLSA and MSPA must be recognized. For example, in analyzing joint employment, the Second Circuit applies six economic realities factors: (1) use of the potential joint employer's premises and equipment for the work; (2) whether the intermediary employer has a business that can or does shift from one potential joint employer to another; (3) whether the employee performs a discrete line-job that is integral to the potential joint employer's production process; (4) whether the potential joint employer could pass responsibility for the work from one intermediary to another without material changes for the employees; (5) the potential joint employer's supervision of the employee's work; and (6) whether the employee works exclusively or predominantly for the potential joint employer. *See Zheng*, 355 F.3d at 71-72.

The Ninth Circuit applies factors from different sources: *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (four factor test primarily assessing potential joint employer's control of employment conditions); the pre-1997 version of the MSPA joint employment regulation; and the eight economic realities factors set forth in *Torres-Lopez*, 111 F.3d at 640-41. *See, e.g.*, *Lantern Light*, 2015 WL 3451268, at *2-17 (applying both the *Bonnette* and *Torres-Lopez* factors and finding that satellite television provider was a joint employer of the installers employed by the company with whom the provider contracted to install its services); *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1061-62 (D. Or. 2010) (applying both the *Bonnette* and *Torres-Lopez* factors). Thus, there are several formulations of the economic realities factors used to determine the employee's economic dependence on a potential joint employer that are consistent with the broad scope of employment under the FLSA.

Some courts, however, apply factors that address only or primarily the potential joint employer's control (power to hire and fire, supervision and control of conditions or work schedules, determination of rate and method of pay, and maintenance of employment records). *See, e.g., Baystate Alt. Staffing*, 163 F.3d at 675; *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 468-69 (3d Cir. 2012). This approach is not consistent with the breadth of

13

employment under the FLSA. "Measured against the expansive language of the FLSA," addressing only the potential joint employer's control "is unduly narrow" and "cannot be reconciled with the 'suffer or permit' language in the [FLSA], which necessarily reaches beyond traditional agency law." *Zheng*, 355 F.3d at 69. Indeed, the Second Circuit explained that, although satisfaction of the four "formal control" factors can be sufficient to establish joint employment, it has "never held 'that a positive finding on those four factors is *necessary* to establish an employment relationship.'" *Barfield*, 537 F.3d at 143 (quoting *Zheng*, 355 F.3d at 69) (emphasis in original); *see also Zheng*, 355 F.3d at 69 ("[T]he broad language of the FLSA, as interpreted by the Supreme Court in *Rutherford,* demands that a district court look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA."). As explained above, the FLSA rejected control as the standard for determining employment, and any vertical joint employment analysis must look at more than the potential joint employer's control over the employee.[18]

**Example:**   A laborer is employed by ABC Drywall Company, which is an independent subcontractor on a construction project. ABC Drywall was engaged by the General Contractor to provide drywall labor for the project. ABC Drywall hired and pays the laborer. The General Contractor provides all of the training for the project. The General Contractor also provides the necessary equipment and materials, provides workers' compensation insurance, and is responsible for the health and safety of the laborer (and all of the workers on the project). The General Contractor reserves the right to remove the laborer from the project, controls the laborer's schedule, and provides assignments on site, and both ABC Drywall and the General Contractor supervise the laborer. The laborer has been continuously working on the General Contractor's construction projects, whether through ABC Drywall or another intermediary. *These facts are indicative of joint employment of the laborer by the General Contractor*.

**Example:**   A worker is hired by a farm labor contractor (FLC) to pick produce on a Grower's farm. The FLC hired and pays the worker. The Grower dictates the timing of the harvest, which fields the worker should harvest, and the schedule each day. The work is unskilled, and any training is provided by the Grower. The Grower keeps track of the amount of produce that the worker picks per

---

[18] *Enterprise Rent-A-Car* involved whether a parent company was a joint employer of its subsidiaries' employees. *See* 683 F.3d at 464. The Third Circuit acknowledged the breadth of employment under the FLSA and that indirect control can show joint employment, but it nonetheless ruled that joint employment in that case was determined by whether the parent exercised significant control. *See id.* at 467-68. The Third Circuit recognized that the control factors "*do not constitute an exhaustive list* of all potential relevant facts" and should not be blindly applied; rather, a joint employment determination must consider the employment situation in totality, including the economic realities of the working relationship. *Id.* at 469 (emphasis in original). The Third Circuit seemed to leave open the possibility that, in a case involving an intermediary employer providing labor to another employer, it would consider applying economic realities factors beyond the control factors applied in *Enterprise Rent-A-Car* to determine whether that other employer is a joint employer.

        hour.  The Grower provides the buckets for the produce, transports the produce from the field, and stores the produce.  The Grower pays the FLC per bucket of produce picked, and withholds money to cover workers' compensation insurance.  The worker has been continuously working on the Grower's farm during the harvest seasons, whether through this FLC or another farm labor contractor.  *These facts are indicative of joint employment of the worker by the Grower.*

**Example:**   A mechanic is employed by Airy AC & Heating Company.  The Company has a short-term contract to test and, if necessary, replace the HVAC systems at Condor Condos.  The Company hired and pays the mechanic and directs the work, including setting the mechanic's hours and timeline for completion of the project.  For the duration of the project, the mechanic works at the Condos and checks in with the property manager there every morning, but the Company supervises his work.  The Company provides the mechanic's benefits, including workers' compensation insurance.  The Company also provides the mechanic with all the tools and materials needed to complete the project.  The mechanic brings this equipment to the project site.  *These facts are not indicative of joint employment of the mechanic by the Condos.*

## III.   Conclusion

As a result of continual changes in the structure of workplaces, the possibility that a worker is jointly employed by two or more employers has become more common in recent years.  In an effort to ensure that workers receive the protections to which they are entitled and that employers understand their legal obligations, the possibility of joint employment should be regularly considered in FLSA and MSPA cases, particularly where (1) the employee works for two employers who are associated or related in some way with respect to the employee; or (2) the employee's employer is an intermediary or otherwise provides labor to another employer.

Whether to apply a horizontal or vertical joint employment analysis (or both analyses) depends on the circumstances of the case.  The focus of a horizontal joint employment analysis is the relationship and association between the two (or more) potential joint employers, and the FLSA joint employment regulation provides guidance in evaluating such cases.  The focus of the vertical joint employment analysis is the relationship between the employee and the potential employer and whether an employment relationship exists between them.  The analysis must determine whether, as a matter of economic reality, the employee is economically dependent on the potential joint employer.  The economic realities factors in the MSPA regulation provide guidance for analyzing vertical joint employment cases, although additional or different economic realities factors that are consistent with the broad scope of employment under the FLSA and MSPA may be helpful as well.

WHD will continue to consider the possibility of joint employment to ensure that all responsible employers are aware of their obligations and to ensure compliance with the FLSA and MSPA.  As with all aspects of the employment relationship under the FLSA and MSPA, the expansive  definition of "employ" as including "to suffer or permit to work" must be considered when determining joint employment, so as to further the statutes' remedial purposes.