IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

      Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

      Defendants.

## DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDATION [DOC. #240] AS TO CLAIMS II-XI

As authorized by Federal Rule of Civil Procedure 72(b)(2), Defendants InterExchange, Inc., Cultural Care, Inc., American Cultural Exchange, LLC d/b/a GoAuPair, and Au Pair in America ("the Defendants") object to the Magistrate Judge's Recommendation (Doc. #240) ("Recommendation" or "Rec."). The Recommendation erroneously concludes that plaintiffs have plausibly alleged that the Defendants are joint employers of the au pairs, and the au pair weekly stipend formula established 21 years ago by U.S. Department of State ("DOS") regulations and uniformly applied by DOS and the Department of Labor ("DOL") since then is inapplicable and illegal.

Since 1995, DOS has consistently and unambiguously applied this formula, which is codified in the governing regulation—including issuing notices specifying the applicable weekly stipend based on each of the four increases to the federal minimum wage. The Recommendation rejects the DOS formula and erroneously applies the

1

FLSA and state wage laws in their entirety, a clear legal error. If allowed to stand, the Recommendation's conclusion that the longstanding DOS formula may be illegal could severely impair the au pair program.

## I. PLAINTIFFS' FEDERAL WAGE CLAIMS SHOULD BE DISMISSED.

### A. The DOS Formula Determines the Weekly Stipend.

The Recommendation incorrectly concluded that plaintiffs have plausibly alleged that the FLSA applies whole cloth to the au pair program, and the weekly stipend formula consistently applied by DOS since 1995 has always been illegal. The Recommendation opined that the 1997 amendments to the stipend regulation abandoned the formula included in the1995 regulation, which specified a weekly stipend based on multiplying the federal minimum wage by 45 hours and subtracting a 40% credit for room and board, in favor of wholesale incorporation of the FLSA. (Rec. at 25.) Not so. The governing regulations and extensive agency guidance since 1997 confirms that the 1995 stipend formula has always applied.

### 1. The DOS Regulations Deviate from the FLSA in Multiple Respects.

The DOS regulations by their terms refute the Recommendation's conclusion that the FLSA in isolation, instead of the DOS formula, governs calculation of the weekly stipend. The regulations require that au pairs must work no more than 45 hours per week. 22 C.F.R. § 62.31(c)(2). The FLSA has no such cap on weekly hours. The DOS regulations mandate a weekly stipend based on 45 hours of child care per week, regardless of whether the au pair actually works the maximum 45 hours or some lesser amount. 22 C.F.R. § 62.31(j)(1). The FLSA requires only payment of the minimum wage

2

for hours worked. 29 U.S.C. § 206. DOL has expressly acknowledged that it has "no authority" to lower the amount of the stipend where the au pair works less than 45 hours. Opinion Letter Fair Labor Standards Act, 1997 WL 998029 (Aug. 19, 1997). Consequently, the Recommendation's sweeping conclusion that the FLSA may apply in total to the au pair program is irreconcilable with the DOS regulations.

   2. <u>The Regulatory History Confirms the DOS Stipend Formula Still Applies.</u>

The evolution of the au pair program regulations confirms that DOS's formula—not the FLSA in its entirety—governs calculation of the weekly stipend. Importantly, the au pair program is a J-1 cultural exchange program created under the Fulbright-Hays Act—not a labor program (such as H-1) administered by DOL. Following DOL's determination in 1994 that au pairs are employees of the host families under the FLSA, DOS' predecessor, the USIA, established an hours and compensation structure that balanced a variety of concerns, including the programmatic need for a "uniform wage" and the overarching desire to ensure the continued viability of the program in a manner consistent with its purpose of cultural exchange. 59 Fed. Reg.64296 at 64298 (Dec. 14, 1994); 60 Fed. Reg. 8547, 8550-51 (Feb. 15, 1995). USIA promulgated a DOL-approved weekly stipend calculated by multiplying the federal minimum wage rate by 45 hours and subtracting a fixed credit of 40% for room and board. 59 Fed. Reg. at 64298; 60 Fed. Reg. at 8551. Using this formula, the 1995 regulation required a $115 weekly stipend. 60 Fed. Reg. at 8553 (to be codified at 22 C.F.R. § 514.31(j)). USIA proposed and ultimately implemented amended regulations in 1997 (1) to "further define the selection and screening requirements for au pair participants;" (2) to clarify that au pair

3

participants must "attend rather than merely enroll for six hours of academic credit;" and (3) to expressly limit au pairs' hours to 10 hours per day and 45 hours per week. 62 Fed. Reg. 34632, 34632 (June 27, 1997) ("summary" of proposed changes) (adopted as final without change 62 Fed. Reg. 46876 (Sept. 5, 1997)).   USIA also made a minor revision to the stipend provision. (*Id.*, not listing this revision in the summary of amendments). Whereas the 1995 regulation specified a weekly stipend in a fixed amount (i.e., $115), the amended regulation provides for automatic adjustments to the stipend based on changes to the federal minimum wage by requiring that au pairs be "compensated at a weekly rate based upon 45 hours per week and paid in conformance with the requirements of the [FLSA] as interpreted and implemented by the [DOL]." 62 Fed. Reg. at 34634. In contrast to the extensive commentary on the other amendments, USIA offered a single comment on the stipend amendment:

> [DOL] has determined that au pair participants are covered under the provisions of the [FLSA] and therefore must receive federal minimum wage. The Agency is amending this regulation to ensure that there is no future confusion regarding the payment of minimum wage.

*Id.* at 34633. This statement, however, merely repeats conclusions that USIA reached in 1995. 60 Fed. Reg. at 8550-51. <u>Nothing</u> in the commentary indicates that USIA intended to alter the formula by which the weekly stipend is calculated.

The central error of the Recommendation is that it assumes the 1997 regulation discarded DOS's stipend formula through wholesale incorporation of the FLSA. (Rec. at 25-26.)  This interpretation is untenable as a matter of law. The 1997 stipend provision simply codifies the <u>formula</u> on which the previous fixed-sum stipend of $115 was based. while referencing the FLSA in a way that incorporates adjustments in the rate. Nothing

4

in the language of the 1997 regulation or the accompanying commentary reflects any intent to depart from this formula.

The subsequent conduct of DOS and DOL confirms this interpretation of the amended stipend provision. After 1997, DOS continued to use the stipend formula adopted in 1995 to calculate the weekly stipend. Indeed, for every one of the four increases to the federal minimum wage following 1995, DOS issued notices applying the formula to recalculate the stipend. (*See* Doc. #130 Ex. D [applying formula in 2001 to recalculate "the weekly wage due Au Pair program participants" to $139.05]; Ex. C [applying the formula to recalculate weekly stipend "including room and board" for 2007, 2008, and 2009 based on increases in the federal minimum wage, including prescribing the $195.75 stipend at issue here]). DOL, too, has acknowledged that DOS's formula governs. In an opinion letter issued after publication of the 1997 amendments, DOL recognized that an au pair must receive a "stipend of not less than $115.00 per week (which reflects the minimum wage times 45 hours, minus deductions)," and acknowledged it had "no authority" to modify the stipend to conform with standard FLSA requirements. (*See* Opinion Letter Fair Labor Standards Act, 1997 WL 998029 (Aug. 19, 1997)). The Recommendation's conclusion that DOS abandoned the stipend formula and that it may be illegal lacks any legal authority and should be rejected.[1]

    3.    <u>Credit for Room and Board is Permissible.</u>

The Recommendation concludes that host families (and sponsors) may not credit

---

[1] The Recommendation treats Plaintiffs' assertion of the meaning of the federal regulations as if they were factual allegations. They are not. They are legal conclusions and entitled to no presumption of truth.

costs for room and board against au pairs' wages because the FLSA precludes such a credit when employers are required by law to provide the same. (Rec. at 23-25.) But this holding is premised on the incorrect conclusion that the FLSA, rather than DOS's stipend formula, governs calculation of the stipend.

The Recommendation's analysis of the room and board credit is otherwise flawed. The FLSA generally allows employers to take appropriate credit for room and board when the employee's acceptance of them is voluntary and uncoerced. 29 C.F.R. § 552.100 (concerning the application of minimum wage and overtime compensation to "domestic service employees"). The Recommendation erroneously concludes that, on the facts alleged in the Amended Complaint, the FLSA prohibits host families (and sponsors) from taking the contested credit because they are legally required by law to provide room and board and, thus, the provision of such benefits the host family, not the au pair. (Rec. at 25.) This analysis is divorced from the purpose of the au pair program as a cultural exchange premised on the au pair's immersion in the home life of the host family, not as an employment program. *See* 22 C.F.R. 62.31(a) (recognizing that the au pair program affords foreign nationals "the opportunity to live with an American host family and participate directly in the home life of the host family"); *Bai Haiyan v. Hamden Pub. Schs.,* 875 F. Supp. 2d 109, 126 (D. Conn. 2012) (distinguishing a cultural exchange program from an "employment" program, such as those under the H visa). The "legally required" premise is not found in the FLSA regulations. In the context of H-2A <u>employment</u> visas, the Secretary of Labor opined in an *amicus* brief that housing for H-2A employees, which must be provided free of charge pursuant to statute, primarily

6

benefited the employer and therefore was not subject to deduction pursuant to 29 C.F.R. § 531.3(d)(1). *Ramos-Barrientos v. Bland*, 661 F.3d 587, 595 (11th Cir. 2011). DOL has reached no such conclusion with respect to the au pair program, a major component of which is the cultural opportunities provided the au pair by means of living with an American family. Provision of room and board, thus, benefits <u>both</u> the host family and the au pair. For this reason, too, Plaintiffs' FLSA claims should be dismissed.

### B. Defendants Are Not Plaintiffs' Employers under the FLSA.

The Recommendation's conclusion that plaintiffs allege sufficient facts to plead that Defendants are "joint employers" of au pairs (with their host families) must be rejected.

The Recommendation's conclusion that Defendants meet the test for joint employment confuses the host family's status as employer of an au pair with the sponsor's role as visa sponsor. *Compare, e.g.*, Rec. at 19 (Defendants are required to address "routine and emergency matters arising from the au pair's <u>employment</u> with the host family"), *with* 22 C.F.R. § 62.31(c)(5) (sponsors are required to address "routine and emergency matters arising from the au pair's <u>participation in their exchange program</u>"); *see also* 22 C.F.R. § 62.10(a) ("Sponsors shall provide a system to screen and select prospective exchange visitors to ensure that they are eligible for <u>program participation</u>." (emphasis added)); *see also Bai Haiyan v. Hamden Public Schs.*, 875 F. Supp. 2d 109, 125-26 (D. Conn. 2012) (recognizing Congressional intent to create a cultural exchange program "as opposed to an employment program" evident through use of nomenclature describing the plaintiff's participation in the program). Defendants'

7

compliance with their respective regulatory obligations to administer and oversee their au pair programs does not translate to "control" over the au pairs' employment such that they may be liable for FLSA violations, if any occurred. *Ivanov v. Sunset Pools Mgmt. Inc.*, 567 F. Supp. 2d 189, 194-96 (D.D.C. 2008).[2]

The Recommendation also repeats plaintiffs' conclusion that defendants "dictate" the au pairs' wages. (Rec. at 18, 22.) Again, this conclusion is based on the Recommendation's erroneous conclusions about the stipend formula. Defendants inform host families and au pairs of the stipend required to comply with government regulations. *See* 22 C.F.R. § 62.31(j)(1). The Amended Complaint itself alleges that the host families, and not the sponsors, ultimately determine the weekly stipend. (*See*, *e.g.*, Doc. #101 at ¶¶ 179 [plaintiffs allege that some families choose to pay more than the required $195.75 stipend and that many families choose to increase the stipend during an extension year]; 369 [Plaintiff Hlatshaneni's host family paid her $200 per week]; 374 [Plaintiff Deetlefs was told "that the $195.75 stipend was a minimum [and] that some families might pay $200 because it's easier"]; 418 [Plaintiff Gonzalez was paid $200 per week].)[3]

---

[2] The Recommendation rejects comparison to *Ivanov* in part based on the perception defendants have "much more in depth [statutory] obligations . . . than those discussed in *Ivanov*." (Rec. at 22.) In fact, as sponsors of a work-travel exchange program, the *Ivanov* defendant had substantially similar statutory obligations to those imposed on au pair program sponsors. *See* 22 C.F.R. § 62.32 (specifying requirements for summer work-travel programs).

[3] Additionally, the Recommendation suggests that certain Defendants' contracts with au pairs indicate an employment relationship insofar as they "touch upon the daily employment duties for the au pairs." (Rec. at 22-23.) However, to the extent such contracts address the nature of an au pair's child care duties, they simply repeat the

Plaintiffs have alleged no basis on which to conclude that Defendants are "joint" or "third-party" employers of au pairs that can be liable under the FLSA.

## II. DOS REGULATIONS PREEMPT STATE WAGE LAWS.

The Recommendation improperly failed to conclude that Plaintiffs' state wage claims are preempted by federal law, as the state wage laws conflict with DOS regulations. Again, this error is grounded in the incorrect legal conclusion that the plaintiffs have sufficiently alleged that the FLSA and not the DOS formula governs the au pair program. Federal law preempts state law when application of state law conflicts with, and thus undermines, federal policy goals relating to foreign affairs. *See, e.g.*, *Arizona v. United States*, 132 S. Ct. 2492, 2503-05 (2012) (recognizing that state employment law cannot "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

Here, federal agencies (USIA and, now, DOS) have established a comprehensive regulatory framework for implementation, administration, and oversight of the au pair program expressly designed to meet the foreign policy objectives of the program. *See* 59 Fed. Reg. 64296, 64297 (Dec. 14, 1994) ("[T]he [USIA] has undertaken the task of crafting regulations to govern the au pair programs that are . . . consistent with the provisions of the Fulbright-Hays Act [i.e., the MECE]."). This regulatory framework reflects a careful balance of policy objectives concerning the government's interest in furthering cultural exchange, affording adequate protection to

---

DOS regulations, which limit the childcare services au pairs may perform. See 22 C.F.R. § 62.31; Doc. #130 Ex. E at 3.

9

au pair participants and their American host families, and safeguarding the continued viability of the au pair program. *See* 60 Fed. Reg. 8547, 8548, 8551 (Feb. 15, 1995); *see also Geier v. Am. Honda Moto Co.*, 529 U.S. 861, 877 (2000) (recognizing that court may look to regulatory "history" and the agency's "contemporaneous explanation" of regulations to identify policy concerns).

The Recommendation incorrectly concludes that plaintiffs' state-law wage claims are not preempted by federal law because—according to the Recommendation—the governing regulations expressly incorporate the FLSA, which in turn incorporates state and local minimum wage laws. Initially, preemption does not flow from the FLSA but rather from the regulatory framework designed by USIA, which embodies the government's policy judgments regarding au pair compensation. USIA expressly recognized "the programmatic need for a uniform wage" and adopted a compensation structure that would "ensure that all au pair participants receive uniform compensation." 60 Fed. Reg. at 8551 ; 59 Fed. Reg. at 64298. Application of state minimum wage laws presents an obstacle to the accomplishment of this objective because it eliminates any uniformity in the wage calculation. Accordingly, Plaintiffs' state-law wage claims are preempted pursuant to traditional conflict-preemption principles. *See, e.g., Buckman Co. v. Pls.' Legal Committee*, 531 U.S. 341, 347-51 (2001) (state-law fraud claim was preempted by federal regulatory scheme when it undermined federal policy judgments); *Geier*, 529 U.S. at 877-81 (federal regulatory scheme preempted state-law tort claim when application of common-law principles caused conflict with regulatory objective).

The Recommendation misses this point, instead resting on the incorrect assumption that the stipend regulation's reference to the FLSA somehow mandates compliance with state minimum wage requirements. (Rec. at 29-31). In fact, the "savings clause" in the FLSA merely acknowledges that the FLSA does not preempt state minimum wage requirements when they apply. "Neither an express pre-emption provision nor a savings clause 'bar[s] the ordinary working of conflict pre-emption principles.'" *Buckman*, 531 U.S. at 351 (quoting *Geier*, 529 U.S. at 869).

Moreover, the regulations clearly express DOS' desire that state minimum wage laws not apply to the au pair program.  DOS regulations governing other J visa programs specifically require payment of state minimum wage or prevailing wage.  *See* 22 C.F.R. §§ 62.32(i) (summer work travel), 62.30(f) (camp counselor).  No DOS regulation or notice has applied the same requirements to the au pair program.  For this reason, too, plaintiffs' state-law wage claims should be dismissed.

**III.   DOMESTIC WORKERS ARE EXEMPT FROM THE COLORADO MINIMUM WAGE ORDER.**

The Recommendation erred in finding that au pairs are covered by the minimum wage provisions of the Colorado Wage Order ("Wage Order") because she disregarded the explicit exemption from the state minimum wage for domestic workers.  The Wage Order provides that an employee is entitled to the Colorado minimum wage if either "[t]he employee is covered by the minimum wage provisions of Colorado Minimum Wage Order Number 31" or "[t]he employee is covered by the minimum wage provisions of the Fair Labor Standards Act."  7 CCR 1103-1.  The next sentence provides, "Some restrictions and exemptions may apply . . . ."   *Id.*  Section 5 of the Wage Order states

11

that "domestic employees employed by households . . . to perform duties in private residences" are exempt from "all provisions" of the Wage Order. 7 CCR 1103-1(5). Significantly, the Wage Order contains other exemptions that apply <u>only</u> to the Wage Order's overtime provisions. 7 CCR 1103-1(6). The Recommendation's conclusion is irreconcilable with the exemption provided for domestic employees, which applies to <u>all</u> provisions of the Wage Order, including the minimum wage. Plaintiffs' claim under the Colorado Wage Act (Count XI) must be dismissed.

### IV. NO LEGAL AUTHORITY APPLIES NEW YORK WAGE LAWS TO AU PAIRS.

The Recommendation erred in finding that Plaintiffs have stated a claim under New York state wage law because no legal authority supports that finding. Plaintiffs' assertion that New York labor laws apply to au pairs is not a factual allegation but a legal one. As such, it is not entitled to the deference that the court must give to Plaintiffs' factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The New York Department of Labor's "Facts for Employers" document states, in reference to New York state labor laws, "These laws cover ALL workers. Their immigration status does not matter. ***The only exception is au pairs hired through the federal au pair program and admitted into the United States under a J-1 visa, which are subject to special federal rules.***" (Doc. #130 Ex. H at p. 3.) Thus, the New York Department of Labor clearly has stated to employers that immigration status <u>does</u> matter with respect to au pairs and the application of New York labor laws. Defendants have found no legal authority contradicting this interpretation, nor have Plaintiffs or the Court cited to any such authority or to any authority establishing a viable claim in these

12

circumstances. Plaintiffs' claim under New York state law (Count X) must be dismissed.[4]

## V. PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY.

Plaintiff's fraud claims fail under a correct legal interpretation of the au pair stipend, as the asserted misrepresentations are all tied to the stipend. In the alternative, the Recommendation failed to apply the specific pleading requirements for fraud to the statements that Plaintiffs attribute to Defendants. Without analysis, the Recommendation simply concluded that "Plaintiffs have set forth specific statements allegedly made by Defendants in order to deceive and/or mislead au pairs that $195.75/week was a fixed or set rate," sufficient to satisfy Rule 9(b). (Rec. at 37-38.) However, this conclusion does not satisfy the Rule 9(b) requirements. Plaintiffs assert that every sponsor held au pair wages at $195.75. Notwithstanding their protest over the legality of this wage, they offer nothing to suggest that InterExchange's statement about scammers offering higher stipends is false. Moreover, as explained above, the stipend is calculated from DOS' formula incorporating a 40 percent room and board credit. (Doc. #101 at ¶¶ 163, 164, 168.) The statement that $195.75 is derived from a strict equation—one promulgated by DOS—is absolutely true. Similarly, Plaintiffs offer nothing to suggest that Cultural Care's statements about the stipend being fixed and set by the Department of Labor are false; to the contrary, the 2007 Notice from DOS

---

[4] The Recommendation appears to have erroneously adopted Plaintiffs' assertion that the Fair Labor Standards Act somehow incorporates and affirmatively mandates compliance with state and local wage laws. (Doc. #199 at p. 70; Recommendation at pp. 31-32.) The FLSA merely disavows preemption of state and wage laws. 29 U.S.C. § 218(a).

13

specifically states that "The au pair stipend is based on a [sic] U.S. Department of Labor's formula . . . ." Plaintiffs' assertion that the DOS formula is illegal does not alter the truth of these statements. The Recommendation improperly disregarded the extensive authority cited above establishing that the DOS stipend formula includes a 40 percent credit for room and board. Because Plaintiffs fail to adequately plead fraud, Counts II-VI must be dismissed.[5]

## VI. PLAINTIFFS' FIDUCIARY DUTY CLAIM FAILS BECAUSE IT IS BASED ON THE AU PAIR STIPEND AS SET FORTH BY DOS.

The Magistrate's Recommendation on Plaintiffs' breach of fiduciary duty claim is based on a legally incorrect interpretation of the au pair stipend, and thus the claim fails under the correct interpretation. In the alternative, the Recommendation's conclusion that allegations that the Sponsors misled au pairs create a fiduciary duty is unsupported in law. (*See* Doc. #130 at p. 16 [elements of a claim]). The Recommendation wholly failed to address any contracts between sponsors and au pairs, or the fact that everything Plaintiffs cite as evidence of a fiduciary duty is mandated by the Department of State. (*See* Doc. #130 at pp. 17-18.) Plaintiffs do not state a claim for breach of fiduciary duty.

---

[5] The Magistrate referenced Plaintiffs' assertion that InterExchange's website informed au pairs that they can earn "**almost** $10,000" per year as an alleged misrepresentation supporting fraud. (Doc. #240 at p. 36.) However, Plaintiffs did not include this statement in their Amended Complaint, but rather only in their Opposition to Defendants' Motion to Dismiss. (*See* Doc. #101 at pp. 40-42; Doc. #199 at p. 73.) Thus, the Magistrate erred in relying on the statement.

## VII. PLAINTIFFS FAIL TO STATE A QUASI-CONTRACT CLAIM.

The Recommendation correctly dismissed Plaintiffs' breach of contract claim because "Plaintiffs do not allege that Defendants violated a provision within their respective contracts with the *au pairs*." (Doc. #240 at 41-42.) But the Recommendation erred in failing to also dismiss Plaintiffs' quasi-contract claims—to the extent that such claims even existed—on the same ground. As an initial matter, Plaintiffs state that "[i]f the contracts fail," the Defendants are liable under theories of quasi-contract. (Doc. #101 at ¶ 500.) Plaintiffs do not assert that any contract of these Defendants fails or is void or voidable under applicable law. Moreover, the Court rejected the notion that Defendants made separate promises with respect to the au pair compensation. (Rec. at pp. 41-42.) This conclusion eliminates the promissory estoppel and unjust enrichment claims, as well, to the extent they were sufficiently pleaded at all. *See Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (unjust enrichment requires benefit acquired at plaintiffs' expense); *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) (promissory estoppel requires a promise made to plaintiff).

## VIII. DEFENDANTS JOIN THE OBJECTIONS FILED REGARDING COUNT I.

With respect to Count I, Defendants join the objections filed by the other Defendants.

## IX. CONCLUSION.

For the reasons stated herein in the Motions to Dismiss, Defendants respectfully request that Counts II-XI be dismissed.

DATED this 14th day of March, 2016.

        Respectfully submitted,

        *s/ Brooke A. Colaizzi*
        Heather F. Vickles
        Brooke A. Colaizzi
        Raymond M. Deeny
        Erica L. Herrera
        SHERMAN & HOWARD L.L.C.
        633 Seventeenth Street, Suite 3000
        Denver, CO 80202
        Tel: (303) 297-2900
        Fax: (303) 298-0940
        Email: hvickles@shermanhoward.com
        Email: bcolaizzi@shermanhoward.com
        Email: rdeeny@shermanhoward.com
        Email: eherrera@shermanhoward.com

        ATTORNEYS FOR DEFENDANT
        INTEREXCHANGE, INC.

        *s/Jeffrey P. Allen*
        Jeffrey P. Allen
        Donald J. Gentile
        Lawson & Weitzen, LLP
        88 Black Falcon Avenue, Suite 345
        Boston, MA  02210
        Email: jallen@lawson-weitzen.com
        Email: dgentile@lawson-weitzen.com

        W.V. Bernie Siebert
        Sherman & Howard L.L.C.
        633 Seventeenth Street, Suite 3000
        Denver, CO 80202
        Email: bsiebert@shermanhoward.com

William L. Monts III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Email:  William.monts@hoganlovells.com

ATTORNEYS FOR DEFENDANT
CULTURAL CARE, INC. d/b/a CULTURAL
CARE AU PAIR


*s/ Kathryn A. Reilly*
Kathryn A. Reilly
Toren G.E. Mushovic
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:      Reilly@wtotrial.com
            Mushovic@wtotrial.com

ATTORNEYS FOR DEFENDANT
AMERICAN CULTURAL EXCHANGE, LLC
d/b/a GOAUPAIR


s/*Lawrence Lee*
Lawrence Lee
Susan M. Schaecher
Fisher & Phillips LLP
1801 California Street, Suite 2700
Denver, CO  80202
Email:  llee@laborlawyers.com
Email:  sschaecher@laborlawyers.com

ATTORNEYS FOR DEFENDANT
AMERICAN   INSTITUTE   FOR   FOREIGN
STUDY d/b/a Au Pair in America

17

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 14th day of March, 2016, I electronically filed the foregoing **DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDATION [DOC. #240] AS TO CLAIMS II-XI** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
Towards Justice
1535 High Street, Suite 300
Denver, CO  80218
Email:  alex@towardsjustice.org

Lawrence D. Stone
Christian D. Hammond
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO  80290-2101
Email: lstone@duffordbrown.com
   chammond@duffordbrown.com

William J. Kelly III
Chanda M. Feldkamp
Kelly & Walker LLC
1512 Larimer Street, Suite 200
Denver, CO  80202
Email:  wkelly@kellywalkerlaw.com
Email: cfeldkamp@kellywalkerlaw.com

Brian A. Birenbach
The Rietz Law Firm, L.L.C.
114 Village Place, Suite 301
Dillon, CO  80435
Email:  brian@rietzlawfirm.com

Kathryn A. Reilly
Toren G.E. Mushovic
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver CO  80202-5647
Email:  reilly@wtotrial.com
Email:  mushovic@wtotrial.com

James E. Hartley
Mher Hartoonian
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Email:  jhartley@hollandhart.com
Email:  mhartoonian@hollandhart.com

W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Email:  bsiebert@shermanhoward.com

Jeffrey P. Allen
Donald J. Gentile
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA  02210
Email:  jallen@lawson-weitzen.com
Email:  dgentile@lawson-weitzen.com

Bogdan Enica
Bogdan Enica, Attorney at Law
111 Second Avenue, NE, Suite 213
St. Petersburg, FL  33701
Email:  Bogdane@hotmail.com

Meshach Y. Rhoades
Martin Estevao
Armstrong Teasdale LLP
4643 S. Ulster St., Suite 800
Denver, CO  80237
Email:  mrhoades@armstrongteasdale.com
Email:  mestevao@armstrongteasdale.com

Martha L. Fitzgerald
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Email:  mfitzgerald@bhfs.com

Margo J. Arnold
Brownstein Hyatt Farber Schreck, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
Email:  marnold@bhfs.com

Daniel C. Perkins
Arapahoe County Attorney's Office
5334 S. Prince Street
Littleton, CO 80120
Email: dperkins@arapahoegov.com

William L. Monts III
Hogan Lovells US LLP
555 Thirteenth Street, N.S.
Washington, D.C. 20004-1109
Email: William.monts@hoganlovells.com

Lawrence Lee
Susan M. Schaecher
Fisher & Phillips LLP
1801 California Street, Suite 2700
Denver, CO  80202
Email:  llee@laborlawyers.com
Email:  sschaecher@laborlawyers.com

John R. Mann
Thomas B. Quinn
Gordon & Rees, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email:  jmann@gordonrees.com
Email:  tquinn@gordonrees.com

Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY  10022
Email:  mlschwartz@bsfllp.com
Email:  pskinner@bsfllp.com
Email:  rjackson@bsfllp.com

Lauren F. Louis
Sigrid S. McCawley
Boies, Schiller & Flexner, LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Email:  llouis@bsfllp.com
Email:  smccawley@bsfllp.com

s/*Laura Lewis*
Legal Secretary

EMPLOY/1274750.1