**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.

     Plaintiffs,

     v.

INTEREXCHANGE, INC., et al.

     Defendants.

---

**MOVING DEFENDANTS' OBJECTIONS TO RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE REGARDING DISMISSAL OF
COUNT I: RESTRAINT OF TRADE IN VIOLATION OF 15 U.S.C. §§ 1, *ET SEQ*.**

---

Defendants Cultural Homestay International; UsAuPair, Inc.; GreatAuPair, LLC;

Expert Group International, Inc.; EurAupair Intercultural Child Care Programs;

AuPairCare, Inc.; Au Pair International, Inc.; APF Global Exchange, NFP; A.P.Ex.

American Professional Exchange, LLC; 20/20 Care Exchange, Inc.; American Institute

for Foreign Study; and Agent Au Pair (collectively "Defendants" or "sponsor

Defendants") hereby object to and respectfully request that the Court reject the

Recommendation ("the Recommendation," abbreviated "Rec") (Doc. #240), which, if

adopted, would allow Plaintiffs' Sherman Act claim against the Defendants to proceed.[1]

---

[1] The Recommendation on the Sherman Act claims is on the Joint Motion to Dismiss Plaintiffs' Antitrust Claim (Doc. #135), Defendant American Institute for Foreign Study's Motion to Dismiss Amended Complaint (Doc. #136), A.P.Ex. American Professional Exchange, LLC' s Joinder to Doc. # 135 ("Doc. #133), and 20/20 Care Exchange, Inc. Joinder to Doc. #135 (Doc. # 132). Due to space constraints, Defendant sponsors cannot fully re-brief all arguments set out in these motions or in the "Joinder in and Supplement to Joint Motion to Dismiss" (Doc. # 84), or Reply Brief in support of the Joint Motion (Doc.

The conclusion that Plaintiffs have adequately pled a Sherman Act § 1 claim is wrong.  The recommendation that the claim should proceed at best misapprehends and at worst ignores controlling Supreme U.S. Court and Tenth Circuit precedent which mandate dismissal of the claim.  Not following this authority is erroneous as a matter of law.

## I.   THE MAGISTRATE ERRED IN FINDING PLAINTIFFS' ALLEGATIONS SUFFICIENT TO STATE A PLAUSIBLE CONSPIRACY

To survive a motion to dismiss for a § 1 claim, a plaintiff must sufficiently allege that defendants engaged in "anticompetitive conduct" which stems "from an agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In their Amended Complaint, (Doc. # 101), Plaintiffs not only fail to allege the existence of an agreement, but also aver facts contrary to parallel behavior on the part of Defendants.  Nonetheless, the Recommendation piles together a series of Plaintiffs' allegations to formulate a conclusion that Plaintiffs have sufficiently alleged a plausible antitrust conspiracy claim. In doing so, the Recommendation strays from the law by failing to recognize the impermissibility of inferring anticompetitive conspiracy from parallel conduct where there is independent business rationale for the behavior.

*Twombly* instructs that "a statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; *without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in the neutral territory.*"

---

#211) ("Reply").  The Defendant sponsors therefore incorporate the arguments set out in those pleadings as though set out fully herein.

*Twombly*, 550 U.S. 544 at 557 (emphasis added). The Recommendation acknowledges that none of the Plaintiffs' cited admissions or allegations alone may be sufficient to allege an antitrust violation. (Rec. at p. 15).  But it concludes that Plaintiffs have provided a "sufficiently plausible claim" to allow them to proceed. *Id*. That is error.  Each of the cited allegations upon which the Recommendation relies to support parallel behavior are, in fact, either contrary to the allegations of the Amended Complaint, contrary to law, or entirely consistent with the individual economic interest of each sponsor Defendant.

### A.    Plaintiffs Themselves Allege Facts Contradictory to Parallel Behavior

The Amended Complaint and Recommendation rely on allegedly parallel conduct. (Rec. at pp. 11-12, points 2, 6, 7).  Yet, through their own allegations Plaintiffs admit host families in many instances offer stipends above the $195.75 specified by the U.S. Department of State ("DOS").[2]

Plaintiffs allege that six of the Defendants advertise higher stipends for au pairs with child care study and child care experience.  (Doc. # 101 at ¶ 78).  The Recommendation disregards the admission that over a third of the Defendant sponsors advertised stipends above $195.75, reasoning that the "only instance in which Defendants advertise a higher compensation rate is for non-standard positions."  (Rec.

---

[2] As set forth in the wage Defendants' Objections, in 1995 DOS established a formula to calculate the au pair stipend, which DOS and Department of Labor ("DOL") have uniformly applied for the last 21 years. The formula multiplies the effective federal minimum wage by 45 hours, and then subtracts the 40% room and board credit set by DOL.  For each of the four federal minimum wage increases that have occurred since 1995, DOS issued notices to the sponsors applying its formula to recalculate and specify the weekly stipend, including the $195.75 stipend at issue in this action.  (See Doc. #130 Ex. D (applying formula in 2001 to recalculate "the weekly wage due Au Pair program participants" to $139.05); Ex. C (applying the formula to recalculate weekly stipend "including room and board" for 2007, 2008, and 2009 based on increased in the federal minimum wage).)

at p. 13-14).  However, the Court cannot ignore inconvenient evidence, but "must take plaintiff's factual allegations [as] true," *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).

Plaintiffs further argue that in a competitive market, some sponsors likely would offer a higher weekly stipend to "higher-quality au pairs" – which might be attractive to some host families willing to pay more for experience – and other sponsors might offer au pairs the lower weekly stipend – which would be "more attractive to host families." (Plaintiffs' Consolidated Opposition (Doc. # 199) at p. 19). The facts set out in the Amended Complaint show this is exactly what has happened.  The court cannot side with Plaintiffs' averments that the au pair sponsor marketplace is functioning in a competitive fashion when it is contrary to the pled facts.

Plaintiffs also pick and choose the information contained in the cited sources in order to distort the facts in support of their theory. For example, while the Amended Complaint cites the Expert Group International, Inc.'s website for providing the DOS stipend as a fixed amount, Plaintiffs neglect to quote the sentence which states "You can pay more to your au pairs, according to the terms of your contract with them." (Doc. # 135 at n.7; Doc. # 84 at ¶ 4 and Ex. B; *see also* Doc. # 101 at ¶ 102 (quoted language omitted).

Plaintiffs also quote an article from a host parent blog which contradicts allegations of parallelism. The article was written by a speaker at an International Au Pair Association annual conference: "Host families do each other a disservice when they start to compete with each other (or try to stand out as a 'better family') by offering

more pocket money. We don't want au pairs to be 'shopping' for a higher stipend." (Doc. # 101 at ¶ 130). Notably, Plaintiffs fail to include the portion of the same article that notes agencies (sponsors) permit host families to advertise and pay higher stipends, while opining that families – not agency sponsors – should not compete with each other by offering higher stipends:

> ("*Although the required amount is set, some host families offer their au pairs a stipend above the required amount… including rounding the amount up to $200, or even going beyond that by $30 to $50 extra a week.*"). [3]

The Court may take judicial notice of the full article[4] on a motion to dismiss, and consider the missing portion of the article as an additional admission of the Plaintiffs' acknowledgement that sponsor Defendants do not act in a parallel fashion.

### B.   The Plaintiffs Failed to Plead the Existence of an Agreement

Plaintiffs, as explained above, allege conduct on the part of Defendants which is contrary to parallel behavior. But that is not the only pleading defect mandating dismissal of the § 1 claim here. More fundamentally, Plaintiffs fail to allege the existence of an agreement.  Even with allegations of parallel conduct, a § 1 claim may only proceed if the Plaintiffs sufficiently plead that the Defendants *agreed or colluded* to

---

[3] CV Harquail, *Au Pair Pocket Money: Do you pay more than the required stipend? (Poll)*, www.aupairmom.com, Feb 15, 2011 (http://aupairmom.com/au-pair-pocket-money-do-you-pay-more-than-the-required-stipend-poll/2011/02/15/celiaharquail/, viewed on March 13, 2016).

[4] "If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001) (cited by *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008)).  The Supreme Court in *Twombly* agreed with that proposition when assessing an analogous use in the complaint of a quote from an article, stating: "[T]he District Court was entitled to take notice of the full contents of the published article referenced in the complaint, from which the truncated quotations were drawn." 550 U.S. 568 at n.13 (discussing the published comments of one defendant's chief executive, which had been cited in the complaint as supporting the existence of an antitrust conspiracy).

restrain commerce. The Recommendation states that *Twombly* requires, at a minimum, that the complaint plead facts sufficient to infer "evidence that the conspiring parties 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" (Rec. at p. 13) (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)). Yet, it ignores that *Twombly* commends dismissal when *the complaint does not include facts which suggest that the Defendants agreed to set a price ceiling on the au pair stipend.*

Plaintiffs' failure to plead the contours of an alleged agreement is telling.  In contrast to cases where an agreement or collusion is held to be adequately pled,[5] here, Plaintiffs offer only vague statements from purported, but unidentified, sponsor employees that the stipend is "the same regardless of which au pair agency you use" (Doc. # 101 at ¶ 20) and from the above-described  blog article written by a host parent (not a sponsor Defendant) which calls for families not to offer higher stipends.  *Id.* at ¶ 130. Neither of these statements rationally supports the existence of a price-fixing agreement between the agencies, and neither is adequate under controlling authority.

*Twombly* makes clear that allegations of conspiracy are inadequate where they fail to mention any "[s]pecific time, place, or person involved in the actual conspiracy." 550 U.S. at 565, n. 10. In rejecting the adequacy of the pleading in that case, the Court further noted that the complaint "[f]urnish[ed] no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and

---

[5] *See Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.,* 80 F.Supp.3d 1257, 1264 (D. Colo. 2015) (dismissal inappropriate where allegations included specific dates of meetings where conspiracy agreed to and specific acts in furtherance of the agreement); *Evergreen Partnering Group, Inc. v. Pactiv Corp.,* 720 F. 3d 33, 47 (1st Cir. 2013) (dismissal vacated where complaint alleged specific meeting of when agreement was made, specified acts supporting the agreement, and named members of association who specifically agreed to forebear from doing business with competitors and urged others to follow suit); *In re Text Messaging Litig.,* 630 F.3d 622, 628-29 (7th Cir. 2010) (dismissal inappropriate where complaint cited specific language from telecom trade association that encouraged members to "substitute 'co-petition for competition'").

where the illicit agreement took place." *Id.* The pleading omissions in *Twombly* are identical to those here, and thus, under its ruling, the conclusion in the Recommendation that this Amended Complaint has met threshold requirements to assert a plausible conspiracy is error.

      **C.**    **<u>Allegations Upon Which the Recommendation Relies to Infer Parallel Conduct Are Either Wrong as a Matter of Law or Independent Actions Based on The Department of State's Requirements and Natural Market Behavior</u>**

The Recommendation ultimately compounds ten separate insufficient allegations of parallel conduct set out in the Amended Complaint and then summarily concludes that *Twombly's* pleading requirements are met. The Recommendation reaches that conclusion even though it concedes that none of the Plaintiffs' cited admissions or allegations may be sufficient to allege an antitrust violation. (Rec. at p. 15). While the allegations of the Amended Complaint must be considered as a whole, a null (empty) set does not transform to a set containing substance when additional nullities are described.

The Recommendation's observation that Plaintiffs are "not required to have direct evidence of admissions in order to support their claims," (Rec. at p. 15), is beside the point.  Defendants made no such argument.  In any event, absent further circumstances pointing toward a meeting of the minds in an anticompetitive agreement, parallel commercial efforts stay "in the neutral territory."  *Twombly*, 550 U.S. 544 at 557. Further, it has long been the law in the Tenth Circuit that that a conspiracy allegation must fail if there is an independent business justification for the alleged anticompetitive conduct. *Cayman Exploration Corp. v. United Gas Pipeline Co.,* 873 F.2d 1357, 1361

(10th Cir.1989). And finally, the Recommendation also fails because it does not even address that Plaintiffs fail to allege facts in their Amended Complaint *sufficient to exclude* the possibility of independent action, even where parallel conduct is present, as required by *Monsanto Co. v. Spray Rite Serv. Corp.,*484 U.S. 752 (1984) (cited by the Court in *Twombly* for that proposition at 550 U.S. 557, 556).

The Recommendation cited the following ten factors in concluding that Plaintiffs pled sufficient facts to allege a plausible conspiracy. Set out after each allegation is the common-sense and independent business rationale for the commercial conduct, and/or the reason the allegation cannot serve as a basis under the law as  to satisfy pleading requirements.

**Allegation 1:**  *"At least one Sponsor, Cultural Care, has informed prospective au pairs, in writing, that the weekly stipend arranged by Cultural Care would be 'the same regardless of which au pair agency you use.'"* [6]

**Response:**  The purported admission is undercut and in fact neutralized by allegations in the Amended Complaint that multiple sponsors informed their host families that they could indeed pay more than the DOS stipend. (Doc. # 101 at ¶¶ 170, 179, 261, 262). Thus the allegation does not further a conclusion that Plaintiffs have stated a plausible antitrust conspiracy claim.

**Allegation 2:**  *"Sponsors informed au pairs and host families that $195.75/week plus room and board is the only permitted compensation for au pairs."* [7]

---

[6] Rec. at p. 14 (citing Doc. # 101 at ¶ 20).
[7] Doc # 101 at ¶¶ 73-74; 76-77.

**Response:** The allegation is undermined by the other allegations of the Amended Complaint; *see* Response to Allegation 1, *supra* at pp. 3-4. Plaintiffs cannot plausibly plead an agreement by contradicting themselves.

> **Allegation 3:**  *"As the exclusive entities authorized to recruit, provide training, place and supervise au pairs with host families in the United States, Defendants control au pair opportunities within the United States."*[8]

**Response:**  DOS, as the Recommendation acknowledges, oversees the au pair program, and sponsor Defendants are chosen by that agency. (Rec. at p. 5). Further, DOS regulations establish the parameters of the program and its terms, as the Recommendation also acknowledges.  *Id*.  Thus, the assertion lends no additional weight to the adequacy of the pleading here.  (*See* Reply at p. 5).

> **Allegation 4:** *"The Sponsors' industry structure facilitates collusion as they are a relatively small group, 15 agencies, with 100% market share."* [9]

**Response:**  There were only seven defendants in the group of defendant CLECS targeted in *Twombly*. Nonetheless, the Supreme Court refused to conclude that that size of the competitive group of defendants in and of itself lends plausibility to the pleading of an anticompetitive conspiracy. *Twombly*, 550 U.S. at 553-54. Fifteen agencies is not a "small group" and the Recommendation cites no legal or economic authority suggesting that such a large number of competitors creates an industry structure facilitating collusion.  The *In Re Text Messaging Litigation* case, cited by the Recommendation, had only four competitors controlling 90% of the market.  Here, there are nearly four times as many participants as in *In Re Text Messaging*.

---

[8] Rec. at p. 14 (citing Doc. # 101 at ¶¶ 10-11).
[9] Citing Doc. # 101 at ¶ 32.

Here, as acknowledged by the Recommendation, DOS controls all designation applications.  As in *Twombly,* the Defendants here have no say in the size of the competition pool.  DOS dictates that the sponsors have 100% market share. The fact that a market is concentrated, especially when competition is regulated, is not probative of conspiracy. The Recommendation quotes *In re Text Messaging* to support the conclusion that "the industry structure facilitates collusion." (Rec. at pp. 15-16.) But, in any event, in that case, there were concrete allegations of actual anticompetitive behavior, including quotes from industry leaders presented at trade meetings. The facts pled there are dissimilar to those here. The allegation, therefore, does not move Plaintiffs' pleading into the realm of plausibility.

> **Allegation 5:**  *"In addition to industry structure, many Sponsors are members of the Alliance for International Education and Cultural Exchange and the International Au Pair Association ("IAPA"), individuals from certain Sponsors sit on IAPA's Board, and the featured speaker at a recent IAPA conference published an article arguing for strict maintenance of the fixed $195.75 weekly wage for standard au pairs, stating that 'host families do each other a disservice when they start to compete with each other (or try to stand out as a 'better family') by offering more pocket money. We don't wait au pairs shopping for a higher stipend.'"[10]*

**Response:**  First, as explained above, the statement was not made by a sponsor Defendant, but by a parent, and is only a fragment of a larger statement. (*See infra* n. 2 and accompanying text). There is no averment in the Amended Complaint that one host had any authority to speak for the sponsor Defendants. As a point of comparison, in *Twombly* the Supreme Court found Plaintiffs had not alleged a plausible antitrust conspiracy even where they cited a reported statement from the then-CEO of defendant

---

[10] Citing Doc. # 101 at ¶¶ 30-31.

Qwest,[11] Richard Notebaert, to the effect that encroaching on another defendant's territory "[m]ight be a good way to turn a quick dollar but that doesn't make it right." 550 U.S. at 568, n.13. If the Supreme Court holds a comment by the chief executive of one of the seven defendant entities insufficient to adequately plead a plausible conspiracy, certainly the comments of one host parent do not suffice.

Further, membership in a trade association does not, as a matter of common sense or law, amplify the plausibility of an antitrust conspiracy claim; almost every U.S. industry has trade organizations. Moreover, Plaintiffs do not even allege in the Amended Complaint that au pair stipends were ever discussed at any trade association meeting, much less that any association meetings were the focus of an anti-competitive conspiracy. Membership in a trade organization is not supportive of a plausible claim of conspiracy absent more, as the *Twombly* court emphasized.  554 U.S. 550 at 567, n.12; Reply at p. 10; s*ee also infra* n. 4 and accompanying text, discussing cases in which claims survived where conspiracy allegations were pled with specificity.).

> **Allegation 6:**  *"The Sponsors uniformly advertise au pair wages at an identical amount even though the federal government does not require that au pairs only receive minimum wage."*[12]

**Response:**  The conclusion suffers from two flaws.  First, it erroneously treats the legal conclusions as allegations entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Second, as Plaintiffs have pled, the weekly stipend ultimately paid to the au pair is determined by the host family, (Doc. # 101 at ¶ 155), not by the sponsors.

---

[11] Qwest was one of the seven regional CLECs accused, *inter alia,* of colluding to forebear from competition in each other's territories with the ultimate goal of killing of potential competitors in the provision of local telephone service. *See Twombly,* 550 U.S. at 591-92 (Stevens. J., dissenting).
[12] Rec. at p. 15 (citing Doc. # 101 at ¶¶ 13-15, 20, 22-29; *see also supra* p. 3).

Pursuant to regulation, sponsors must inform host families of their obligation to comply with the stipend set by DOS. 22 C.F.R. §67.31(j)(i). The regulatory requirement is the obvious legitimate reason for similarities in the cited sponsor messaging, as those advertisements simply repeat the language in DOS notices publicizing the required stipends.  (See Doc. # 130, Exs. D & C (DOS Notices specifying stipends without reference to "minimum.")).  Additionally, sponsors compete for host families. They have no business incentive to advertise that hosts must pay more than $195.75.  (Reply at pp. 6-7.)  And where independent business judgment and self-interest are an "obvious alternative explanation" for common behavior of Defendants, then that behavior cannot support an antitrust conspiracy claim. *In re Ins. Brokerage*, 618 F.3d 300, 326 (3rd Cir. 2010); *Cayman Exploration Corp.,* 873 F.2d at 1361.

> **Allegation 7:** *"There are no adjustments to advertised compensation with relation to geographic differences, varying state laws and/or the number of children in the home."* [13]

**Response:**  This allegation is irrelevant as to whether Plaintiffs have adequately pled their Sherman Act claim.[14] It is worth noting, however, that the au pair program is a cultural exchange program - not a domestic worker program.  Au Pairs are "on par" and living with the family while performing childcare.  The only guidance that sponsors receive is regarding the weekly stipend, and that the au pair covered by a J1-Visa is allowed to work 45 hours a week. DOS, as administrator and regulator of the program, does not discern among and between other factors set out in the allegation.

---

[13] Rec. at p. 15 (citing Doc. # 101 at ¶¶ 29-30).
[14] The issues addressed by the allegation are discussed in a separate brief on the wage claims that Defendants subject to those claims have filed.

**Allegation 8:**  *"By depressing wages for au pair services, the Sponsors reap artificially high profits because if the host family's direct cost for an au pair does not increase, then any increase, while still costing the family less than a full-time nanny on the open market, goes to the Sponsor in the form of fees, and keeping the cost down will theoretically increase the number of potential host families."* [15]

**Response:**  Fixed fees are charged to host families, and those fees are not tied to the au pair's wages. Currently, the supply of au pairs (and consequently the number of potential host families available to hire them) is limited by DOS. The sponsors have no power to increase the number of host families they serve. Further, the allegation ignores how the au pair market naturally functions. The agencies, which are paid by the host families (Doc. # 101 at ¶ 47), generally advertise the DOS stipend in order to comply with DOS regulations and to stay competitive with one and other. The host families then advertise higher stipends to the au pairs in order to stay competitive among the other families. For that business reason, the agencies do not advertise higher stipends based on the geographic location of a host family or number of children in the home. Requiring host families to pay a higher stipend or suggesting that they do so would not render a sponsor agency more competitive in the market; alternatively, it would likely drive away business. (Reply at pp. 5-6.)  Thus, the allegation does not render the claim as pled more plausible, because there is a natural business purpose explaining the complained-of behavior.

**Allegation 9:**  *"Representatives of certain Sponsors have specifically admitted that the Sponsors agreed to fix au pair wages at the minimum wage rate."* [16]

---

[15] Citing Doc. # 101 at ¶ 32.
[16] Rec. at p. 15 (citing Doc. # 101 at ¶¶ 20-22).

**Response:**  Allegations that are not specific as to time, place, or person provide no basis for inferring agreement. *See Twombly* at 565, n.10.  Further, the failure to identify the persons to which the allegation refers renders it insufficient because the Plaintiffs present no information to suggest the individuals actually had authority to speak for one, much less all, of sponsor Defendants.  (*See also infra p. 10*, Response to Allegation 5, discussing fact that even published comments of the chief executive officer of one of the defendants in *Twombly* was insufficient to render the conspiracy claim plausible; Reply at pp. 13-15).

>   **Allegation 10:**  *"Defendants advertise that their labor costs are set lower than the cost of a comparable child-care worker in the free market."*[17]

**Response***:*  The legitimate business explanation for this behavior is apparent; sponsors wish to attract families. And there is no rational business incentive for sponsors to suggest pricing structures which would negatively impact their own commercial enterprises. Further, the agencies advertise that an au pair stipend is less than the salary of a comparable child care worker because DOS allows host families to pay an au pair a lower salary in exchange for also providing the au pair with room, board, and a cultural experience.  (Doc. #101 at ¶ 44).  This conduct is entirely consistent with each sponsor's independent business interest.  Reply at pp. 5-6.  While the Plaintiffs would like these facts to infer anticompetitive collusion, they instead illustrate how market forces relate to individual business interests. As with the other nine allegations, this allegation does not add to the sufficiency of pleading to state a plausible conspiracy in violation of the Sherman Act.

---

[17] Rec. at pp. 23-24 (citing Doc. # 101 at ¶¶ 5, 54, 55).

## II.     <u>CONCLUSION</u>

The Recommendation ignored the prohibition against drawing inference of collusion from parallel conduct or interdependence "without more" when it found that the Amended Complaint sufficiently pleaded a plausible conspiracy among the Defendants. That was error under current law, and this Court should reject the Recommendation as it relates to the Sherman Act claim.

Respectfully submitted this 14th day of March 2016.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: <u>*s/ Martha L. Fitzgerald*</u>
     Martha L. Fitzgerald, #14078
     Margo J. Arnold, CA #278288
     Brownstein Hyatt Farber Schreck, LLP
     410 Seventeenth Street, Suite 2200
     Denver, Colorado  80202-4432
     Phone:  303-223-1100
     mfitzgerald@bhfs.com
     marnold@bhfs.com

*Attorneys for Defendant*
*EurAupair Intercultural Child Care Programs*

*Filed on behalf of Defendants*
*Cultural Homestay International,*
*UsAuPair, Inc.,*
*GreatAuPair, LLC,*
*Expert Group International, Inc.,*
*EurAupair Intercultural Child Care Programs,*
*AuPairCare, Inc.,*
*Au Pair International, Inc.,*
*APF Global Exchange, NFP,*
*A.P.Ex. American Professional Exchange, LLC,*
*20/20 Care Exchange, Inc.,*
*American Institute for Foreign Study, and*
*Agent Au Pair.*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 14th day of March 2016, a true and correct copy of: **MOVING DEFENDANTS' OBJECTIONS TO RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE REGARDING DISMISSAL OF COUNT I: RESTRAINT OF TRADE IN VIOLATION OF 15 U.S.C. §§ 1, *ET SEQ.*** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Alexander N. Hood<br>alex@towardsjustice.org | Sigrid S. McCawley<br>smccawley@bsfllp.com |
| Lauren Fleischer Louis<br>llouis@bsfllp.com | Matthew L. Schwartz<br>mlschwartz@bsfllp.com |
| Peter M. Skinner<br>pskinner@bsfllp.com | Randall W. Jackson<br>rjackson@bsfllp.com |
| Brooke A. Colaizzi<br>bcolaizzi@shermanhoward.com | Raymond M. Deeny<br>rdeeny@shermanhoward.com |
| Heather F. Vickles<br>hvickles@shermanhoward.com | Erica H. Gutherz<br>egutherz@shermanhoward.com |
| William J. Kelly III<br>wkelly@kellywalkerlaw.com | Chanda M. Feldkamp<br>cfeldkamp@kellywalkerlaw.com |
| Martin J. Estevao<br>estevaom@gtlaw.com | Meshach Y. Rhoades<br>rhoadesm@gtlaw.com |
| Bogdan Enica<br>bogdane@hotmail.com | James E. Hartley<br>jhartley@hollandhart.com |
| Mher Hartoonian<br>mhartoonian@hollandhart.com | Jeffrey P. Allen<br>jallen@lawson-weitzen.com |

| | |
|---|---|
| Donald J. Gentile<br>dgentile@lawson-weitzen.com | W.V. Bernie Siebert<br>bsiebert@shermanhoward.com |
| Brian A. Birenbach<br>brian@rietzlawfirm.com | Toren G.E. Mushovic<br>mushovic@wtotrial.com |
| Susan M. Schaecher<br>sschaecher@laborlawyers.com | Lawrence L. Lee<br>llee@laborlawyers.com |
| Daniel C. Perkins<br>dperkins@laborlawyers.com | Kathryn A. Reilly<br>reilly@wtotrial.com |
| Lawrence Daniel Stone<br>lstone@duffordbrown.com | John R. Mann<br>jmann@gordonrees.com |
| Christine D. Hammond<br>chammond@duffordbrown.com | Thomas B. Quinn<br>tquinn@gordonrees.com |

s/ *Allecia Cavallaro*
Allecia Cavallaro, Paralegal

017997\0001\14543078.2