# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

## SCHEDULING ORDER

---

**1.     DATE OF CONFERENCE AND APPEARANCES OF COUNSEL**

Date of Conference: April 25, 2016, at 10:15 a.m.

<u>**Attorneys for All Plaintiffs**</u>

Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Tel: 212-446-2300
Fax: 212-446-2360
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301

Alexander Hood
TOWARDS JUSTICE
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

Tel.: 954-356-0011
Fax: 954-356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

**Attorneys for All Defendants**

For InterExchange, Inc.:

Heather F. Vickles
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Tel:  (303) 297-2900
Fax:  (303) 298-0940
hvickles@shermanhoward.com

For GreatAuPair:

Meshach Y. Rhoades
Martin J. Estevao
Armstrong Teasdale LLP
4643 S. Ulster St., Ste. 800
Denver, CO 80237
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

For EurAupair Intercultural Child Care Programs:

Martha Louise Fitzgerald
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202
Tel:  (303) 223-1126
mfitzgerald@bhfs.com

For Cultural Care, Inc.:

Jeffrey P. Allen
Donald J. Gentile

For USAupair, Inc.

William James Kelly, III
Chanda Marie Feldkamp
Kelly & Walker, LLC
1401 Seventeenth Street, Suite 925
Denver, CO  80202
Tel:  (720) 236-1800
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

For Expert Group International, Inc.:

Bogdan Enica
Bogdan Enica, Attorney at Law
111 2nd Avenue NE, Suite 213
St. Petersburg, FL  33701-3440
Tel:  (727) 225-2649
bogdane@hotmail.com

For Cultural Homestay International:

James E. Hartley
Adam A. Hubbard
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Tel:  (303) 295-8000
jhartley@hollandhart.com
aahubbarg@hollandhart.com

For AuPairCare,Inc.:

Thomas Quinn
Brian P. Maschler

2

Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA  02210
Tel:  (617) 439-4990
jallen@lawson-weitzen.com
dgentile@lawson-weitzen.com

William L. Monts III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Tel:  (202) 637-6440
william.monts@hoganlovells.com

Gordon & Rees, LLP
555 Seventeenth Street, Suite 3400
Denver, CO  80202
Tel:  (303) 534-5160
tquinn@gordonrees.com
bmaschler@gordonrees.com

W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Tel:  (303) 297-2900
bsiebert@shermanhoward.com

For APF GlobalExchange, NFP and
American Institute for Foreign Study:

Lawrence L. Lee
Susan Schaecher
Fisher & Phillips LLP
1801 California Street, Suite 2700
Denver, CO  80202
Tel:  (303) 218-3650
llee@laborlawyers.com
sschaecher@laborlawyers.com

For Agent Au Pair, Au Pair International,
Inc., and American Cultural Exchange:

Kathryn A. Reilly
Toren G.E. Mushovic
Wheeler Trigg O'Donnell, LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202
Tel:  (303) 244-1800
reilly@wtotrial.com
mushovic@wtotrial.com

For 20/20 Care Exchange, Inc. and
A.P.E.X. American Professional
Exchange, LLC:

Lawrence D. Stone
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO  80290
Tel:  (303) 861-8013
lstone@duffordbrown.com
chammond@duffordbrown.com

2.      **STATEMENT OF JURISDICTION**

This Court has jurisdiction of this matter in its present form pursuant to 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' related claims under state law.

3.      **STATEMENT OF CLAIMS AND DEFENSES**

a.      **Plaintiffs' Position**

Plaintiffs allege various causes of action.  Without limiting any allegation in the Amended Complaint in any way, the gravamen of Plaintiffs' allegations is that Defendants conspired to depress wages for *au pair* services and restrain competition for *au pair* labor, which had the effect of greatly, and illegally, reducing the compensation of *au pairs*, among other damages.  These actions give rise to liability under several legal theories, summarized below.

Count 1: Restraint of trade in violation of 15 U.S.C. §§ 1 *et seq.* brought by Plaintiffs and the Price Fixed Class against the Sponsor Defendants.

Count 2: Civil RICO in violation of 18 U.S.C. § 1964(c) brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, and Ms. Hlatshaneni and the Au Pair in America Fraud Wage Class against Au Pair in America.

Count 3: Breach of fiduciary duty under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in

4

America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 4: Negligent misrepresentation under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 5: Constructive fraud or fraudulent concealment under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 6: Consumer protection under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 7: Breach of quasi contract under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange Fraud Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care Fraud Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America Fraud Class against Au Pair in America, and Ms. Ivette and the GoAuPair Fraud Class against GoAuPair.

Count 8: Failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* brought by Ms. Beltran and the InterExchange 216(b) Class against InterExchange and the Noonans, Ms. Deetlefs, Ms. Cardenas, the Culture Care 216(b) Class, and the Culture Care 216(b) Sub-Class against Culture Care, Ms. Hlatshaneni, the Au Pair in American 216(b) Class, and the Au Pair in America 216(b) Sub-Class against Au Pair in America, and Ms. Invette, the GoAuPair 216(b) Class, and the GoAuPair 216(b) Sub-Class against Au Pair in America.

Count 9:  Claims for unpaid wages under the laws of the several states and the District of Columbia brought by Ms. Beltran and the InterExchange National Wage Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Care National Wage Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America National Wage Class against Au Pair in America, and Ms. Invette and the GoAuPair National Wage Class against GoAuPair.

Count 10: Violation of the New York Wage Act brought by Ms. Beltran and the InterExchange New York Wage Class against InterExchange, Ms. Deetlefs, Ms. Cardenas, and the Culture Class New York Wage Class against Culture Care, Ms. Hlatshaneni and the Au Pair in America New York Wage Class against Au Pair in America, and Ms. Ivette and the GoAuPair New York Wage Class against GoAuPair.

**b.** **Defendants' Position**

The Defendants are the entities designated by the U.S. Department of State ("DOS") as sponsors for DOS' J-1 Visa Exchange Visitor au pair program.  The au pair program is a cultural exchange program, which gives foreign nationals an opportunity to

live with an American family for one year, experience American family life and culture, and continue their education.  In exchange, au pair exchange visitors live with the host family, receive room and board, and provide up to 45 hours of child care services for the family per week.  The host family pays the au pair exchange visitor a weekly stipend in accordance with federal law governing the au pair program.  The stipend is calculated by DOS by multiplying 45 hours of work by the federal minimum wage, less a 40 percent credit for room and board.  The host family has discretion to pay the au pair visitor more than the weekly stipend prescribed by DOS.

Plaintiffs' First Amended Complaint, filed March 13, 2015, asserts the following claims:

(1) Against all Defendants, an antitrust claim under Section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiffs have styled this claim as a class claim;

(2) Against InterExchange, Inc. ("InterExchange"), Cultural Care, Inc. ("Cultural Care"), and American Institute for Foreign Study ("Au Pair in America"), a civil RICO claim (18 U.S.C. § 1961, *et seq.*); and

(3) Against InterExchange, Cultural Care, Au Pair in America, and American Cultural Exchange, LLC ("GoAuPair"), a series of overlapping claims brought under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (FLSA), various state wage and hour laws, and the common law.  The core of all of these claims is the weekly stipend prescribed by the Department of State (DOS).   Plaintiffs allege that the stipend is a minimum wage and must be supplemented if state minimum wage exceeds federal minimum wage, and that the deduction for room and board is prohibited by Department

of Labor regulations.  Plaintiffs also allege that these Defendants made various representations about the nature of the stipend.  Their claims include:

> (a) A class action claim for breach of fiduciary duty under all states' laws;
>
> (b) A class action claim for negligent misrepresentation under all states' laws;
>
> (c) A class action constructive fraud/fraudulent concealment claim under all states' laws;
>
> (d) A class action consumer protection claim under all states' laws;
>
> (e) A class action breach of contract claim;
>
> (f) An FLSA collective action claim alleging failure to pay the federal minimum wage for all hours worked and failure to pay overtime;
>
> (g) A class action claim for unpaid wages under all states' laws; and
>
> (h) A class action claim for violation of the New York Wage Act for failing to pay for training time in New York.

Defendants filed motions to dismiss certain of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) specifically, the antitrust, FLSA, fraud, breach of fiduciary duty, and quasi-contract counts, and wage claims brought under California and New York law, respectively.

On February 22, 2016, Magistrate Judge Tafoya issued a Recommendation (Doc. # 240) that denied most Defendants' Rule 12(b)(6) challenge to the adequacy of the First Amended Complaint, as pled.  The Magistrate Judge's Recommendation

noted, *inter alia*, that a number of Defendants' arguments were better suited to resolution on summary judgment, with the benefit of a fully developed record.

On March 14, 2016, Defendants filed Objections (Docs. # 247, 248) to the Magistrate Judge's Recommendation. Plaintiffs filed a Response to Defendants' Objections. (Doc. # 256).

By Order dated March 31, 2016 (Doc. # 258), the Court adopted and affirmed in large measure the Magistrate Judge's Recommendation.

Once the evidentiary record is developed through discovery, the lack of merit and viability of Plaintiffs' claims will be readily exposed.

With respect to the antitrust claim asserted against all Defendants, among other deficiencies, Plaintiffs lack standing to sue on all or a portion of the claims for relief asserted in the First Amended Complaint and are not the real parties in interest to prosecute all or a portion of the claims for relief asserted in the First Amended Complaint. Plaintiffs' claims are or may be barred by 15 U.S.C. § 6a. Moreover, the alleged conduct of Defendants amounts to independent, parallel conduct and is therefore not actionable under 15 U.S.C. § 1. There is no basis whatsoever for Plaintiffs' contention Defendants reached any agreement with respect to the stipend or on host families' compensation of au pairs in general. Even the First Amended Complaint alleges that Defendants' treatment of the weekly stipend is not uniform. The fact that multiple Defendants may advise host families to pay the $195.75 weekly stipend calculated and directed by the Department of State is entirely consistent with

unilateral action.  The Twombly Court specifically held that allegations like these do not suffice for purposes of sustaining a claim under Section 1 of the Sherman Act.

The additional claims asserted against InterExchange, Cultural Care, Au Pair in America, and GoAuPair also lack merit, and are legally untenable.  The federal regulations governing the au pair exchange visitor program preempt any application of state law, as the au pair program is a federal immigration program designed to meet specific foreign policy objectives.  Plaintiffs were compensated in accordance with federal law governing the exchange visitor program and are not entitled to any additional compensation or damages.  The RICO claim and most of the state-law claims sound in fraud; Defendants made no misrepresentations to their respective au pair exchange visitors about the nature of the stipend and never represented that it was a maximum or that host families could not choose to pay au pair exchange visitors more.

In any event, Defendants cannot be liable for any alleged unpaid wages as they were not the au pair exchange visitors' employer or joint employer within the meaning of the FLSA or any applicable state law.  Defendants acted in full compliance with applicable DOS regulations and interpretations, and reasonably relied on them in administering their au pair programs.   No fiduciary relationship existed between the sponsors and the au pair exchange visitors, and if such a relationship did exist, it was not breached.  Plaintiffs have not identified any specific promises they allege that Defendants made and failed to fulfill with respect to their sponsored au pair exchange visitors.  Similarly, Plaintiffs have not identified how Defendants were unjustly enriched by any aspect of their program participation.

Plaintiff's class action claims are not appropriate for certification under Fed. R. Civ. P. 23.  The claims not only lack merit, they also lack the necessary elements of numerosity, commonality, typicality and adequate representation.  Individual questions of law and fact predominate over common issues.  The claims in suit are not susceptible to common methods of proof on liability or damages.  The class action is not a superior way to adjudicate these claims asserting multiple subclasses.  The named Plaintiffs are not adequate class representatives; they lack standing to assert claims on behalf of others and their claims are not typical of alleged class claims.

For similar reasons, Plaintiffs' FLSA claim is not appropriate for certification as a collective action.  Also, Plaintiffs were never employees of their sponsors, and they are not similarly situated to any employee of the sponsor defendants, nor to other au pair program participants.

Defendants shall contest any motion for class certification or collective action certification, conditional or otherwise.

Certain Defendants have mandatory arbitration agreements with au pairs they sponsored and reserve their right to move to dismiss the action and/or compel arbitration.

On April 21, 2016 Defendants filed Answers to the First Amended Complaint.  In their Answers they denied all of Plaintiffs' charging allegations and claims, and asserted various affirmative defenses.

**4.     STATEMENT OF UNDISPUTED FACTS**

1.     All of the Defendants are or were listed as "Designated Sponsor Organizations" on the U.S. Department of State's ("DOS") website for the J-1 Visa Exchange Visitor Program.

2.     An au pair cannot be issued a J-1 Visa without being sponsored by a Designated Sponsor Organization.

**5. COMPUTATION OF DAMAGES**

**<u>Plaintiffs</u>**

Damages cannot currently be calculated without further discovery and consultation with an expert. With that caveat, Plaintiffs currently estimate roughly $400,000,000.00 per year in actual damages, with the damages ongoing. This number is based upon the difference between the $195.75 per week paid to the named Plaintiffs and those similarly situated and the $39,000 alternative annual nanny wage provided on Defendant Au Pair in America's website. The categories of damages that Plaintiffs currently anticipate requesting are as follows:

1.     Actual damages of at least $400,000,000;

2.     Treble damages and attorneys' fees pursuant to the Sherman Anti-Trust Act (18 USC § 1964(c));

3.     Treble damages and attorneys' fees pursuant to RICO (15 USC § 15(a));

4.     Unpaid minimum wage and overtime, liquidated damages, and attorneys' fees pursuant to the FLSA (29 U.S.C. §§ 201 et seq.);

5.      Statutory damages and attorneys' fees, under various state consumer protection statutes;

6.      Statutory damages and attorneys' fees for unpaid labor pursuant to the unpaid labor laws of the several states;

7.      Costs;

8.      Prejudgment and post-judgment interest; and

9.      Such other relief as this Court deems just and proper.

**Defendants**

At this point, Defendants do not seek damages from Plaintiffs but expressly reserve the right to seek damages, costs, and attorney fees at a later time.  Defendants deny that Plaintiffs are entitled to recover any damages in this case.

**6.      REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)**

**a.      Date of Rule 26(f) meeting**

The Parties first discussed Rule 26(f) issues on  March 2, 2015, and have participated in additional conversations since that time.

**b.      Names of each participant and party he/she represented.**

**For All Plaintiffs:**
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Alexander Hood

**For All Defendants:**

For InterExchange, Inc.:

Brooke A. Colaizzi
Heather F. Vickles
Erica Herrera

For GreatAuPair:

Meshach Y. Rhoades
Martin J. Estevao

For EurAupair Intercultural Child Care
Programs:

For Cultural Care, Inc.:

Jeffrey P. Allen
Donald J. Gentile
W.V. Bernie Siebert
William L. Monts, III

For Agent Au Pair, Au Pair International,
Inc., and American Cultural Exchange:

Kathryn A. Reilly

For USAupair, Inc.

William
 James Kelly, III

For Expert Group International, Inc.:

Bogdan Enica

For Cultural Homestay International:

James E. Hartley
Adam A. Hubbard

For AuPairCare,Inc.:

Thomas Quinn
Brian P. Maschler
Peggy Kozal

For APF GlobalExchange, NFP and
American Institute for Foreign Study:

Lawrence L. Lee
Susan Schaecher

For 20/20 Care Exchange, Inc. and
A.P.E.X. American Professional
Exchange, LLC:

Lawrence D. Stone
Christian D. Hammond

**c.**    **Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

Disclosures from all parties were exchanged on or before March 16, 2015.

**d.**    **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

None.

**e.**    **Statement concerning any agreements to conduct informal discovery**

The parties have not agreed to conduct any specific informal discovery at this time. However, during the discovery in this case if it appears to all counsel that informal discovery would be productive they will discuss and coordinate such informal discovery.

**f.**    **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

**Plaintiffs' Proposal**

Counsel agree to cooperate and will utilize a unified exhibit numbering system and reduce discovery and litigation costs where possible.  Counsel anticipate negotiating and presenting to the Court a joint protective order that would cover discovery confidentiality and procedures.

**Defendants' Proposal**

In order to further the proportionality concerns reflected in Rule 26(b)(2)(C), and to maximize efficiency and minimize costs, Defendants proposed the structured discovery and class action certification schedule described below.  This schedule is particularly

appropriate in view of the multiple claims and Rule 23 classes, sub-classes and FLSA collective action classes alleged in this case and the differing procedures that apply to those putative classes and collective action classes.

With regard to production of documents, the parties shall develop and use a system for identifying by a unique number or symbol each document produced or referred to during the course of this litigation.  Each producing party will give each page of its documents produced a unique number, using a numbering system from which the producing party is identified.  In the event that documents produced by persons or entities who are not parties to this action are not, when produced, identified by a unique numbering system, the party at whose request production was made shall be responsible for numbering the documents in accordance with the terms of this paragraph.  Counsel agree to cooperate to reduce discovery and litigation costs where appropriate.

Counsel will endeavor to consecutively number exhibits across all depositions, irrespective of the person or entity being deposed.

**g.** **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

**Plaintiffs' Proposal**

The parties anticipate that their claims and defenses will involve extensive electronically stored information ("ESI"). Plaintiffs anticipate that this ESI will include extensive emails from within and among Defendants' organizations.

All parties have issued hold notices or counsel has otherwise informed their clients of the duty to preserve potentially discoverable materials, including ESI.

Counsel anticipate negotiating and presenting to the Court a joint protective order that would cover the inadvertent production of privileged materials, claw-back provisions, the format of ESI and document production, and the manner in which produced information should be destroyed or returned upon conclusion of this case, among other issues.

To facilitate the discovery of ESI and limit the associated costs and delay, counsel intend to meet-and-confer on the appropriate method of searching the relevant databases, including the use of search terms if appropriate. The parties shall also act in good faith to avoid any potential discovery disputes.

**Defendants' Proposal**

The parties expect the production of some electronically stored information ("ESI") and will cooperate to determine the most efficient way to exchange such documents.

i. **Steps the parties have taken or will take to preserve electronically stored information;**

Each party has taken steps to preserve ESI that may be relevant to this litigation. The parties agree to preserve and to not destroy or modify ESI that can reasonably be anticipated to be relevant to this litigation.  The parties further agree to preserve all metadata.

**ii.    Steps the parties have taken or will take to facilitate discovery of electronically stored information;**

The parties expect the production of some ESI and will cooperate to determine the most efficient way to exchange such documents. The parties will produce electronic documents in reasonably usable format, and reasonable efforts shall be used to produce documents in the manner in which they are maintained.  For the most part, the documents will consist of PDF or TIFF images and, upon request for specific documents, appropriate associated embedded data (sometimes referred to as metadata).  This statement does not waive any party's right to request ESI be provided in a different format at a later date.  Such requests, if reasonable, shall be complied with by the producing party.

**iii.   Steps the parties have taken to limit the associated discovery costs and delay;**

The parties expect the production of some ESI and will cooperate to determine the most efficient way to exchange such documents. The parties anticipate limited electronic discovery in this case. The parties will be guided by the Sedona Principles regarding discovery of ESI.  The parties agree to confer with each other in order to facilitate the discovery of ESI in the most effective way possible, and agree that to the extent any information is stored

electronically, it will be produced electronically.  When a party desires that a document be produced with its metadata, the requesting party shall specifically identify that document and the relevant metadata contained therein, so that the document can be produced with the metadata intact.  All documents shall be produced in a reasonably searchable format.

**iv.    Steps the parties have taken to avoid discovery disputes relating to electronic discovery; and**

The Parties agree to act in good faith to facilitate the discovery of all relevant, properly requested, non-privileged, and properly discoverable ESI.

**v.    Steps the parties have taken to address claims of privilege or of protection as trial-preparation materials after production of computer-generated records.**

The Parties will maintain electronically stored information that is relevant, but withheld due to privilege or trial-preparation (such as documents shielded from discovery by the work product doctrine), through trial and any appeals.  The parties agree that there shall not be any waiver of the attorney-client privilege, attorney work product, or any other privilege should there be an inadvertent disclosure of privileged information contained in ESI produced in response to a discovery request, as provided by Fed. R. Civ. P.

26.  The parties are taking reasonable steps to protect against inadvertent disclosure of materials protected by the work product doctrine and attorney-client privilege ("Protected Materials").  Any party that discovers that it has sent or received Protected Materials shall immediately notify the opposing party so that appropriate steps to return or destroy the Protected Materials may be taken.  By operation of the parties' agreement and Court Order, the parties are specifically afforded the protections of Fed. R. Evid. 502(d) and (e).

**h.** **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

Although Plaintiffs have begun settlement discussions with various Defendants, Plaintiffs do not anticipate that any global settlement resolving all claims against all Defendants is likely in the near future.  Moreover, any settlement that is negotiated is likely to be a class settlement requiring Court approval.

Nothing contained in this Scheduling Order shall limit the right of any party to file a motion for summary judgment or other appropriate dispositive motion pursuant to the Federal Rules of Civil Procedure.

**7.    CONSENT**

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

8.     **DISCOVERY PLAN AND LIMITATIONS**

a.     **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

Each side shall be limited to 25 depositions, , excluding Rule 30(b)(6) witnesses and named  parties.  Each party shall be limited to receive 25 interrogatories.

b.     **Limitations which any party proposes on the length of depositions.**

Depositions shall not exceed 7 hours, without prior agreement or absent leave of court.

c.     **Limitations which any party proposes on the number of interrogatories, requests for production, and/or requests for admission.**

Each party shall be unlimited as to requests for production and requests for admission.

d.     **Other Planning or Discovery Orders**

9.     **CASE PLAN AND SCHEDULE**

a.     **Deadline for Joinder of Parties and Amendment of Pleadings**

August 15, 2016.

b.     **Fact Discovery Cut-off:**   April 17, 2017

**Expert Discovery Cut-off:**   July 17, 2017

c.     **Dispositive Motion:** to be set at a later date.

1.     Plaintiffs' motion for conditional collective class certification

Opening Brief: on or before August 15, 2016

35

Opposition Brief:  30 days after the motion is filed

Reply Brief:  21 days after the 30 day response time

2. Defendant's motion to de-certify FLSA conditional collective class (if any)/Plaintiff's Rule 23 class certification

Defendant files motion for de-certification of conditionally certified collective action (if necessary):  60 days after the close of the last opt-in period.

Plaintiff files motion for Rule 23 certification: **February 17, 2017**

Defendant's Opposition to motion to certify Rule 23 class:  **March 17, 2017**

Reply briefs to motion to certify Rule 23 class: **April 7, 2017**

d. **Expert Witness Disclosure**

1. Disclosure of Affirmative Experts on Class Action Issues:  December 16, 2016.

2. Disclosure of Rebuttal Experts on Class Action Issues:  January 30, 2017.

3. Each side shall be limited to 8 expert witnesses, absent leave of court.

4. Disclosure of all other Affirmative Experts:      May 17, 2017.

**5.** Disclosure of all other Rebuttal Experts:      June 16, 2017

e. **Identification of Persons to Be Deposed**

At this time, the parties have identified as potential deponents the parties, representatives of the U.S. Department of State, and Plaintiffs' private investigator. As discovery progresses, the parties will identify the persons to be deposed and will work cooperatively together to appropriately schedule all depositions on dates on which both

the deponent and counsel for all parties are available.

**f.** **Deadline for Interrogatories**

All interrogatories must be served no later than 33 days prior to the fact discovery

cut-off.

**g.** **Deadline for Requests for Production of Documents and/or Admissions**

All requests for production of documents and requests for admission must be

served no later than 33 days prior to the fact discovery cut-off.

**10.** **DATES FOR FURTHER CONFERENCES**

*[The magistrate judge will complete this section at the scheduling conference if he or she has not already set deadlines by an order filed before the conference.]*

**a.** A Status Conference is set for April 13, 2017 at 9:30 a.m. in

Courtroom C201 before Magistrate Judge Kathleen M. Tafoya.

**b.** A final pretrial conference will be held in this case on_____at _____

o'clock.  A Final Pretrial Order shall be prepared by the parties and submitted to the

court no later than seven (7) days before the final pretrial conference.

**11.** **OTHER SCHEDULING MATTERS**

**a.** **Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement**

**b.** **Anticipated length of trial and whether trial is to the court or jury.**

The parties are unable to estimate trial length until classes and scope of the case

are determined.

   **c.**   **Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities a t 212 N. Wahsatch Street, Colorado Springs, Colorado; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado.**

None.

### 12.   NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a pro se party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

**13.    AMENDMENTS TO SCHEDULING ORDER**

This scheduling order may only be amended upon a showing of good cause.

DATED at Denver, Colorado, this 25th day of April , 2016.

BY THE COURT:

_____

Kathleen M. Tafoya
United States Magistrate Judge