Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3     Case No. 14-cv-03074-CMA-KMT

 4     _____

 5     JOHANA PAOLA BELTRAN, et al.,

 6          Plaintiffs,

 7     vs.

 8     INTEREXCHANGE, INC., et al.

 9          Defendants.

10     _____

11              Proceedings before KATHLEEN M. TAFOYA, United

12     States Magistrate Judge, United States District Court for the

13     District of Colorado, commencing at 10:54 a.m., April 25,

14     2016, in the United States Courthouse, Denver, Colorado.

15     _____

16              WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17     ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18     _____

19                         APPEARANCES

20              LAUREN F. LOUIS, ALEXANDER N. HOOD and DAVID

21     SELIGMAN, Attorneys at Law, appearing for the plaintiffs.

22              WILLIAM J. KELLY, III, Attorney at Law, appearing

23     for the defendant USAuPair, Inc.

24     _____

25                    SCHEDULING CONFERENCE
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

```
 1              APPEARANCES (Cont'd)

 2         BROOKE A. COLAIZZI and HEATHER F. VICKLES,

 3  Attorneys at Law, appearing for the defendant InterExchange,

 4  Inc.

 5          MARTIN J. ESTEVAO, Attorney at Law, appearing for

 6  the defendant GreatAuPair, LLC.

 7          BOGDAN ENICA, Attorney at Law, appearing for the

 8  defendant Expert Group International Inc.

 9          MARTHA L. FITZGERALD, Attorney at Law, appearing

10  for the defendant EuRaupair InterCultural Child Care

11  Programs.

12          ADAM A. HUBBARD and JAMES E. HARTLEY, Attorneys at

13  Law, appearing for the defendant Cultural Homestay

14  International.

15          JEFFREY P. ALLEN, Attorney at Law, appearing for

16  the defendant Cultural Care, Inc.

17          THOMAS B. QUINN, Attorney at Law, appearing for

18  the defendant AuPairCare, Inc.

19          KATHRYN A. REILLY, Attorney at Law, appearing for

20  the defendants Au Pair International, Inc. and American

21  Cultural Exchange, LLC.

22          LAWRENCE L. LEE and SUSAN M. SCHAECHER, Attorneys

23  at Law, appearing for the defendants APF Global Exchange, NFP

24  and American Institute for Foreign Study.

25          LAWRENCE D. STONE, Attorney at Law, appearing for
```

Johana Paola Beltran, et al. vs.                                    **Scheduling Conference**
Interexchange, Inc., et al.                                              **April 25, 2016**

```
 1    the defendant A.P.E.X. American Professional Exchange, LLC.
 2                      P R O C E E D I N G S
 3              (Whereupon, the within electronically recorded
 4    proceedings are herein transcribed, pursuant to order of
 5    counsel.)
 6              THE CLERK:  All rise.  Court is in session.
 7              THE COURT:  Good morning, everyone.  Please be
 8    seated.
 9              UNIDENTIFIED SPEAKER:  Good morning.
10              THE COURT:  All right.  We are here today in Case
11    Number 14-cv-3074, Johana Paola Beltran, et al., plaintiffs,
12    versus a number of au pair companies, defendants.  And I'll
13    let you introduce yourself and check it off and make sure
14    that we've got everybody as we go along, defendants.  So
15    we'll take care of reading the whole caption as we introduce
16    lawyers.  All right?
17              So representing the plaintiffs.
18              MS. LOUIS:  Good morning, Your Honor.  Lauren
19    Louis from Boies Schiller & Flexner on behalf of the
20    plaintiff class.  With me at counsel table is Alex Hood and
21    David Seligman both from Towards Justice.
22              THE COURT:  All right.  Good morning to you.  So
23    let's take the representation for the groups.  And if you
24    could, would you just go in order of the caption as it was --
25    because that's how -- the order I have it in.  So first would
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 4

 1   be Interchange -- InterExchange, Inc.

 2          MS. COLAIZZI:  Good morning, Your Honor.  Brooke

 3   Colaizzi and Heather Vickles from Sherman & Howard on behalf

 4   of InterExchange.

 5          THE COURT:  All right.  And USAuPair.

 6          MR. KELLY:  William Kelly.  Good morning, Your

 7   Honor.

 8          THE COURT:  Good morning.  And GreatAuPair, LLC.

 9          MR. ESTEVAO:  Martin Estevao.  Good morning, Your

10   Honor.

11          THE COURT:  Good morning.  Expert Group

12   International, Inc.

13          MR. ENICA:  Good morning, Your Honor.  Bogdan

14   Enica.

15          THE COURT:  And I think it's EuRa -- EuRaupair or

16   EuRaupair InterCultural Child Care Programs.

17          MS. FITZGERALD:  Good morning, Your Honor.  Martha

18   Fitzgerald for EuRaupair.

19          THE COURT:  Thank you.  Cultural Homestay

20   International.

21          MR. HARTLEY:  Good morning, Your Honor.  James

22   Hartley and Adam Hubbard.

23          THE COURT:  All right.  Good morning to you.  And

24   let's see.  Cultural Care, Inc.

25          MR. ALLEN:  Good morning, Your Honor.  Jeffrey

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 5

```
 1   Allen for Cultural Care, Inc.
 2           THE COURT:  And let's see.  AuPairCare, Inc.
 3           MR. QUINN:  Good morning, Your Honor.  Tom Quinn.
 4           THE COURT:  All right.  And Au Pair International,
 5   Inc.
 6           MS. REILLY:  Good morning, Your Honor.  Katie
 7   Reilly.
 8           THE COURT:  Okay.  And APF Global Exchange.
 9           MR. LEE:  Good morning, Your Honor.  Larry Lee and
10   Sue Schaecher.
11           THE COURT:  American Institute for Foreign Study.
12           MR. LEE:  We are here.
13           THE COURT:  Okay.  And let's see.  American
14   Cultural Exchange, LLC.
15           MS. REILLY:  Katie Reilly again.  And, Your Honor,
16   I also have the Agent Au Pair, the next defendant.
17           THE COURT:  All right.  So those -- all of these
18   last four here.  And A.P.E.X. American Professional Exchange,
19   LLC.
20           MR. STONE:  Larry Stone, and also appearing on
21   behalf of 20/20 Care Exchange.
22           THE COURT:  And Associates in Cultural Exchange
23   d/b/a GoAuPair.  No one here for them.
24           UNIDENTIFIED SPEAKER:  Your Honor, I was just
25   reading off the docket, it shows terminated on 3/25/2015.
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 6

```
 1          THE COURT:  Okay.  They're out.  Okay.  That takes
 2  care of everybody.  Anybody here whose name I didn't call?
 3  Okay.
 4          So we're here today for a scheduling order.  And
 5  with this many people, I'm not surprised to see that you seem
 6  to disagree on almost everything, so, of course, I'm going to
 7  disagree with all of you.  No.  I'm only kidding.
 8          I do want to talk to you about some of the main, I
 9  think, issues that I'm having with some of your scheduling
10  because it's so far out.  You're a 2014 case, late in the
11  year, I understand, but you have a district judge who's very,
12  very conscientious about case management.  So I don't think
13  she's going to want this case getting on her three-year list
14  is basically what I'm telling you.  So I think we need to
15  really talk about realistic, but not so far out dates because
16  these look too far to me.  And so I don't -- I'm not sure --
17  there's a couple of issues.
18          First of all, the FLSA claims, it looks to me that
19  we don't have a real problem with cutting people out of the
20  claims until January of 2017.  I'm not asking that all of you
21  necessarily agree with that, but that's when -- the law
22  changed in January of 2015.  And so going backwards
23  doesn't -- you don't lose a bunch of people who might
24  otherwise be qualified, the way I'm kind of thinking about
25  it, because normally, it seems to me, that you would want
```

Johana Paola Beltran, et al. vs.                                    **Scheduling Conference**
Interexchange, Inc., et al.                                                    **April 25, 2016**

Page 7

```
 1   your motions for certification -- you know, the conditional
 2   certification sooner than what you have it down.  You have it
 3   down as like March of 2017.
 4               MS. LOUIS:  We -- we don't, Your Honor.  The --
 5   the defendants' proposal was for the conditional
 6   certification date at that time.  We are not seeking to have
 7   a court-ordered date by which -- or I'm sorry, one which to
 8   file our motion for conditional certification or for class
 9   certification.  We intend to do so with the Court's
10   permission as soon as we're ready.
11               THE COURT:  Okay.  So how soon do you think that's
12   going to be?
13               MS. LOUIS:  Oh, Judge, I think that it will be --
14   I think it is more likely than not to be within the next 30
15   to 60 days.
16               THE COURT:  Okay.  For -- are you talking about
17   Rule 23 class 2 because they're --
18               MS. LOUIS:  I'm not, Your Honor.  I'm speaking to
19   the -- the motion for conditional certification, which, you
20   know, I'm trying not to overly bind all of the plaintiffs'
21   (sic) attorneys, but it is, as the Court's aware, a very low
22   standard, and nothing that requires prior discovery.  And we
23   would like to be moving for conditional certification in very
24   short order.
25               THE COURT:  Okay.  And from defendants'
```

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                              April 25, 2016

Page 8

1  perspective, I understand that this really ramps up discovery

2  quickly.

3          UNIDENTIFIED SPEAKER:  Yes.

4          THE COURT:  But on the other hand -- and maybe I

5  should -- before I ask the defendants to address it maybe I

6  should ask you:  If -- if the Court's correct about the date

7  with the change in the law, what's the rush, right?  Why --

8  why do we have to rush defendants to the conditional

9  certification?

10         UNIDENTIFIED SPEAKER:  Your Honor, I don't think

11  you're correct about the date.

12         THE COURT:  Okay.

13         UNIDENTIFIED SPEAKER:  Because that's just one of

14  the many listed issues.  So, for example -- and there are

15  other listed issues as well that would predate the

16  January 1st change in the law.  That only has to do with

17  third-party overtime.  We also have listed claims.  For

18  example, there are a number that would predate that for the

19  room and meal deductions.  Those would predate the

20  January 1st change in the law, and also for training time.

21  Those are just two examples.  But there are several listed

22  claims that would predate the January 1st date.

23         THE COURT:  Okay.  So -- so even though we had

24  that change in the law and the inclusion of household, right,

25  for the overtime, household help or --

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                              April 25, 2016

Page 9

 1               UNIDENTIFIED SPEAKER:  Right, Your Honor.  It's
 2    third -- we don't need to flesh it out too much.
 3               THE COURT:  Yeah.
 4               UNIDENTIFIED SPEAKER:  But it's third-party
 5    employer liability for -- for household worker overtime.
 6               THE COURT:  Okay.  So with that said, then, what's
 7    the defendants' thinking on this?
 8               UNIDENTIFIED SPEAKER:  Your Honor, two things.
 9    First of all, on Friday afternoon we exchanged with -- with
10    plaintiffs' counsel some amended dates.  And I don't know if
11    we were able to get -- we filed it.  I don't know if the
12    Court had a chance to see it.  And we've got some revised
13    orders.  And if -- or revised proposed deadlines, excuse me.
14    And I've got them here with me.  Would you like for me to
15    approach and share them with you?
16               THE COURT:  Yeah.  That would be good.
17               UNIDENTIFIED SPEAKER:  Okay.  And I'll -- I'll
18    give a copy to the clerk.
19               THE COURT:  Because I don't -- I don't think what
20    I read --
21               THE CLERK:  I think the addendum is up.  It's --
22               THE COURT:  Oh, the addendum is up here already?
23               THE CLERK:  It's on your screen.
24               THE COURT:  Okay.  So it's filed 4/19.  Is that --
25    okay.  Yeah.  That's not what I read.

Johana Paola Beltran, et al. vs.                         Scheduling Conference
Interexchange, Inc., et al.                                    April 25, 2016

Page 10

```
 1              THE CLERK:  It's -- it's the other document on
 2   your screen.
 3              UNIDENTIFIED SPEAKER:  Your Honor, and just to
 4   clarify, that's a defendants' proposed amended.  It is not a
 5   joint amended propose -- proposal.
 6              UNIDENTIFIED SPEAKER:  At any rate, I think if you
 7   see that in terms of conditional certification, we proposed
 8   the hard date of August 15th, 2016.
 9              THE COURT:  For the certification of class?
10              UNIDENTIFIED SPEAKER:  A conditional certification
11   of the FLSA class.
12              THE COURT:  Yeah.  Okay.  Or collective, I guess,
13   is the better term.  So what's wrong with that date?
14              MS. LOUIS:  Your Honor, there is a few things.
15   It's unnecessary.  I -- there's -- I mean, as the Court's
16   aware, for conditional certification, it's asking the Court
17   to approve a form of notice and communication with our class
18   members.  The defendants' initial discovery responses are due
19   presently May 4th, so in -- just shy of two weeks.  And
20   assuming that there are responses made, we'll have the
21   plaintiff classes' information and can be communicating with
22   them.  We want the Court's review and approval of the form of
23   notice and the communication that we have to go out in a
24   standard form.  But, Your Honor, the statute of limitations
25   is ticking.  We did try to enter into a tolling agreement
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 11

1   with the current four FLSA defendants that are named.  We

2   executed -- the plaintiffs have executed, and we returned it

3   to them.  They have not executed it.  There was -- as I

4   understand it, the last disagreement was over whether or not

5   discovery was stayed.  It is not.  But, Your Honor, this --

6   as you pointed out, this claim was filed in 2014 and the

7   statute of limitations has not tolled for all of our class

8   members, so we do need to conditionally certify this class

9   and begin having our plaintiffs opt-in.

10             THE COURT:  Okay.  So why -- why do you want --

11  what do you need that you're not going to have if they file

12  it earlier?

13             UNIDENTIFIED SPEAKER:  They can file it early.

14  This is the deadline.  It's a motion for conditional

15  certification.  They can file their motion, seek conditional

16  certification, and we'll object.

17             THE COURT:  Okay.  You'll object to them filing it

18  when they do, or you'll object to the --

19             UNIDENTIFIED SPEAKER:  No.  We'll object to the --

20  to the request for conditional certification.

21             THE COURT:  Okay.  So it's -- it's a date to make

22  sure that it's no later than August.  So is that a problem?

23  That gives you between now and August to make up your mind

24  whenever you want to file it.  And when you file it, they've

25  got to respond 21 days and 14, right?

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 12

```
 1              UNIDENTIFIED SPEAKER:  Yes, Your Honor.  If it's
 2   a -- if it's a deadline by which to file it, but not a date
 3   by which we cannot file it sooner than, that's fine.
 4              THE COURT:  Okay.  But that's not how you read it
 5   originally?
 6              UNIDENTIFIED SPEAKER:  No, Your Honor.  It -- I
 7   think that defendant even referred to it as a hard deadline
 8   of the opening brief being filed on August 15, 2016.  So
 9   that's -- and it sets a briefing schedule.  So, yes, I'm
10   sorry, that is how I read it.  If it's a suggested deadline,
11   then we don't object to that.
12              THE COURT:  Yeah.  It does say a deadline for, but
13   what -- what you're telling me is that no one objects to
14   having on or before, right?
15              UNIDENTIFIED SPEAKER:  That's correct.
16              THE COURT:  Okay.
17              MS. LOUIS:  That's correct, Your Honor, with
18   respect to the opening brief, but we do object to the
19   imposition of the briefing schedule.  We would ask that the
20   Court just allow the normal rules for a time to respond
21   control.
22              THE COURT:  Okay.
23              UNIDENTIFIED SPEAKER:  Your Honor --
24              THE COURT:  That's what I had put down on my notes
25   was why -- why make a special schedule?
```

Johana Paola Beltran, et al. vs.                                    **Scheduling Conference**
Interexchange, Inc., et al.                                                    **April 25, 2016**

Page 13

 1            UNIDENTIFIED SPEAKER:  A special schedule for the

 2   conditional -- for the briefing schedule.  Is that what

 3   you're saying?

 4            THE COURT:  Yeah.  On -- on your Section 3 it

 5   says, and we're jumping kind of ahead, but the opening brief

 6   for conditional certification.

 7            UNIDENTIFIED SPEAKER:  Right.

 8            THE COURT:  Let's say for some reason they -- they

 9   don't file it till August 15.  You're giving yourself more

10   than 30 days to respond, and the normal would be 21 days.

11            UNIDENTIFIED SPEAKER:  Well, the -- that's the

12   following Monday, so that's what -- the 19th is a Monday so

13   that it gobbled up the weekend.  So that's why it's more than

14   30 days.  But I was shooting for a 30-day turnaround time.

15   It is a big case.  You know, the plaintiffs -- perhaps you

16   saw this.  They're seeking $400 million a year per year in

17   damages at the threshold.  I was seeking additional time

18   because -- given the magnitude of the case and the effort

19   that it's going to take at almost every stage, and that was

20   the basis for it.

21            THE COURT:  Well, but it's a little case when you

22   break it down into each of your cases individually or each of

23   the attorneys standing here.  A little bit bigger for the one

24   who has four, right?  But it's -- it's not a big case when

25   you break it down into pieces.  And the problem is, is that

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 14

1   the plaintiff is going to get, not 15, but maybe 11, 10 or 11
2   responses because there's -- all of you are representing
3   somebody different.  And I -- I don't know how differently at
4   this point you're situated, but the response to a collective
5   doesn't seem to me very hard.  Now, I'm not -- I'm not saying
6   that it's a slam dunk for plaintiffs because it isn't really.
7   You know, that would be to dismiss the objections as not
8   well-founded.  There is a threshold they have to make, but
9   it's not that hard.  So I don't -- I don't understand why
10  that date has to be pushed out.
11              UNIDENTIFIED SPEAKER:  Well, among the -- in
12  addition to what I just explained, there's a lot of us.  And
13  so we've tried thus far to consolidate and to coordinate and
14  to present unified pleadings, which I think we have so far.
15  And we will try to do that again.  So as we proceed forward
16  it just takes time.  There are unique interests between
17  Mr. Allen's client and my client.  And so when you try and
18  find compromise in drafting, it just takes time.  And I think
19  the beneficiary of consolidated pleadings, and I'm not -- I'm
20  not telling you there will only be one objection.  There
21  might be two based -- or three based upon the number of
22  people that are here, but we will definitely work towards a
23  consolidated pleading.  And that benefits the Court and it
24  benefits plaintiffs' counsel when they are only having to
25  respond to one consolidated pleading or two, or a small

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                              April 25, 2016

 1   number, as opposed to a whole bunch of them.  And I think it
 2   works better as a group.  So we try and coordinate and
 3   consolidate.  It just takes a smidge more time.
 4           THE COURT:  So really all they're asking for is
 5   one week extra, right?  So why is that such a big deal for
 6   you?
 7           MS. LOUIS:  Your Honor, I agree with you.  It is
 8   one week extra.  I think that for purposes -- and it belongs
 9   elsewhere in the context of the scheduling order.  They had
10   imposed very lengthy briefing schedules for the class
11   certification.  So with respect to seven days, it is likely
12   an extension we would have given voluntarily if they had
13   asked us for it.  So that's not as much of an issue.  It's
14   just with -- I generally would say that it is better in this
15   case to just follow the regular rules for a briefing schedule
16   rather than to come in in advance and plan to set them out so
17   far.  That was my suggestion.
18           THE COURT:  Okay.  Well, I think defendants have,
19   to me, demonstrated that they can and probably will work
20   together on some of these things.  Now, I can't -- I can't
21   make them work together.  They can do whatever they want as
22   lawyers, whatever they think is best for their client, but
23   they've shown a desire to do that.  And if giving them one
24   extra week encourages that, it's good for everyone.  It's
25   good for defendants, good for plaintiff, good for the Court.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 16

 1   So -- so I think putting these dates out -- the only problem

 2   is you've told me that you are likely to file your motion

 3   sooner.  So I don't like having these dates.  But we could

 4   agree, I think, that you're going to go with 30 days for a

 5   response.  So whatever -- whenever you file it, their

 6   response would be due 30 days.  And then it looked -- what

 7   had you figured in, defendants, for the reply brief, 15?

 8            UNIDENTIFIED SPEAKER:  It's -- it would be 14, so

 9   it would be two Mondays from the 19th.

10            THE COURT:  Okay.  So is that enough for you for a

11   reply from -- let's assume the worst happens and you get one

12   from everybody.  Yeah.

13            MS. LOUIS:  Right.  Your Honor, in an abundance of

14   caution then, if the Court would work an extra week in or

15   even a five-day extra grace period so that our response

16   instead of being done -- due in 14 days, is due in 20.

17            THE COURT:  Yeah.  Any objection to that, that we

18   can say 21?

19            UNSPECIFIED SPEAKER:  That's fine.

20            THE COURT:  That's three weeks even which would be

21   good.

22            MS. LOUIS:  Thank you, Your Honor.

23            UNSPECIFIED SPEAKER:  Fine.  Thanks.

24            THE COURT:  Okay.  All right.  So we're talking

25   only now about the conditional certification for the FLSA

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 17

 1    class.  Plaintiffs will file on or before August 15, 2016,

 2    any motion that they wish to file concerning a conditional

 3    certification of that class.  The response will be due

 4    30 days later.  And a reply will be due 30 -- or excuse me,

 5    21 days after the first response is filed, or after the

 6    30 days.  Let's say after the 30-day date just in case one of

 7    you jumps the gun and files real early.  I want to give them

 8    enough time.  Okay?  Is that clear to everybody?

 9              UNIDENTIFIED SPEAKER:  Yes, Your Honor.

10              THE COURT:  So count the 30 days from whenever

11    it's filed.  From that 30-day date, whatever it is, then the

12    plaintiffs will have another 21 days to file their response.

13    And if there's some stragglers, which sometimes there are

14    that are a day or two late those won't affect anything one

15    way or the other really.  Okay?

16              So let's go -- let's -- outside of that, then, I

17    do want to talk to you, and -- and you'll -- you're going to

18    have to kind of lead me down here where you're talking

19    about --

20              UNIDENTIFIED SPEAKER:  21 days.

21              THE COURT:  -- some of the dates that you changed

22    since I didn't see this.  So I've got some dates in mind for

23    general cutoffs.  And so what -- did you change the dates

24    here for Rule 23 class motions?

25              UNIDENTIFIED SPEAKER:  We did.  If you look just

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 18

1  below that -- excuse me.  If you look just below the

2  paragraph into 3b, we address them in there.

3          THE COURT:  Okay.  So that's the -- any motion by

4  defendants to decertify an FLSA class or collective --

5          UNIDENTIFIED SPEAKER:  Right.

6          THE COURT:  -- and --

7          UNIDENTIFIED SPEAKER:  And plaintiffs' Rule 23

8  class certification.

9          THE COURT:  Okay.  All right.  So we need to talk

10  about all of these dates because I -- I really don't -- I

11  understand it's a big number case, and it's a big -- a lot of

12  people, but -- which is typical, I think, for an antitrust

13  kind of claim, but I'm hesitant to put everything out that

14  far.  I'm thinking about class briefing at about the

15  discovery cutoff date, which I was thinking would be

16  January 31st, 2017.  That's -- I think that's the date you

17  originally proposed, or somebody did.  I'm not sure who.

18          MS. LOUIS:  That was our proposal, Your Honor.

19          UNIDENTIFIED SPEAKER:  Your Honor, in our revised

20  pleading we had suggested October 25th, 2017, for close of

21  fact discovery.

22          THE COURT:  Well, that's not going to work.  Okay.

23  I'm not going to give you that.  I'm not going to give you

24  that far out.  That's -- that's a year and a half from now.

25          UNIDENTIFIED SPEAKER:  Yes.  And just to -- to put

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 19

```
 1   it into context as we move forward.  So part -- part of the
 2   issues in this case is that they're seeking 60 depositions --
 3   the parties are talking about 60 depositions.  And one of our
 4   suggested changes or additions to that would be, we don't
 5   know how many named plaintiffs there will be, so it would be
 6   60, plus the named -- or the class representative plaintiffs.
 7   So I don't know how many that will be.  There will
 8   probably -- more than 70, less than 80 perhaps.  So that's 80
 9   fact witness depositions.  And then you have -- you have all
10   of the written discovery that will -- that will occur between
11   them, including electronic discovery.  Then you'll have
12   30(b)(6) depositions perhaps on top of that, a corporate
13   representative.  There's a few more.  And then we have expert
14   discovery.  So we have a lot of depositions to cover in a
15   very short period of time if we do something like
16   January 31st.  That would be -- you know, I'm just estimating
17   here so don't hold me to this, but something along the lines
18   of 15 or 20 depositions a month through a January 31st
19   deadline.  That's pretty difficult to do, especially with one
20   of the months being the holiday season.  You know, my
21   experience is everything sort of cuts down from the week
22   before Thank -- the Friday before Thanksgiving until, you
23   know, sometime a week or so after New Year's, so we lose a
24   lot of time in there.  So my thinking -- that was the basis
25   for going out to October.  That is, in part, the basis for
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 20

 1   going out to October is to measure and pace this.

 2              And there's just one other thing I want to talk

 3   real quickly about here, Your Honor, and so bear with me.  It

 4   will take me just a minute or to.  So our -- this group of

 5   people that are behind me comprise of about three or four

 6   pretty good-sized au pair agencies, and the rest of them are

 7   sort of 50 to -- or where they might place 50 a year, 100

 8   year to 50.  And a lot of them are closely held companies,

 9   family type companies that are really burdened by this

10   litigation.  And it's expensive for them.  I get that the

11   plaintiffs feel they have a valid complaint, but maybe --

12   maybe it's not as bad as they say, and maybe at the end of

13   this we want their businesses to survive.  So when they're

14   trying to gear up and pay for things as they go there has to

15   be some measured pace to all of this.  And I appreciate the

16   Court's calendar.  I appreciate that the wheels of justice

17   must move quickly.  At the same time, they've got to survive

18   through this because it just doesn't happen if we don't.

19              THE COURT:  But don't you think the longer --

20   my -- my feeling is the longer things drag on, the more

21   expensive it is.

22              UNIDENTIFIED SPEAKER:  Could be, could not be.

23   But you're right.  There's always that propensity.  But what

24   we're trying to do internally, and I'm happy to share this

25   with you, is we're trying to share -- you know, some of the

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 21

1    bigger folks are trying to share with some of the smaller

2    folks to help bear the burden.  There's a lot of work that's

3    being done to try and keep up and keep consolidated

4    pleadings, to keep the case moving, to identify discovery.

5    It's a ton of work on this side.  So I think -- I understand

6    the preference of the Court calendar deadlines.  And we're

7    here to compromise.  But there has to be some balance and

8    proportionality to all of this to make sure that these

9    companies survive and can move forward.  I'm not trying to

10   say the sky is falling, but I do think this has to be a

11   concept as we move through each stage.  And what we did in

12   our -- why we submitted the proposed, we were trying to stage

13   it in order to represent the need to slow the case down and

14   keep proportionality so that these defendants -- after having

15   worked through it, I concede that maybe that wasn't the best

16   idea.  Having said that, we want to -- we want to try and

17   phase this -- or not phase it, try and work consistently in a

18   measured pace.  Thank you.  And that's -- that's the

19   reasoning behind the October 17th, 2017, cutoff.  Thank you.

20             THE COURT:  Okay.

21             MR. ALLEN:  Your Honor, if I may, I -- just

22   briefly to that.  As one of the -- as representing the

23   largest sponsor, I think some of the numbers, when we start

24   talking about the cut -- their discovery, is focused on 2009

25   forward.  What we're talking about is maybe around, for my

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 22

 1    client, 55,000 au pairs, maybe 65,000 host families.  And
 2    significant -- I can see on the horizon significant
 3    international type of discovery disputes.  I would be
 4    surprised if significant discovery disputes were resolved
 5    before September or October as to the recruiting of au pairs
 6    and the like.  There's some significant issues on the
 7    horizon.  And I just -- while the October date may be a
 8    little too lenient for Your Honor, I think January 31st,
 9    given the number of depositions, given the amount, at least
10    for my client, of paper discovery, and they're not as
11    digitally inept -- adept as they should be, we're going to
12    have to create some of these files actually, I just don't see
13    how with the depositions, with the paper discovery, with the
14    disputes, and some -- there will be some meaty disputes for
15    Your Honor to weigh in on, it's realistic to see January 31st
16    as a discovery cutoff.  And I would just pray Your Honor's
17    judgment for a little more leniency on that discovery
18    deadline.  I just can't see how that we could possibly comply
19    with that and the number of depositions.  We also have to
20    work through some Tuohy (phonetic) issues with the state
21    department for state department discovery and the like.  So I
22    think January 31st would be extremely unrealistic, given the
23    realities of the discovery in this case.
24            THE COURT:  Well, maybe that -- maybe we're
25    putting the cart before the horse a bit.  I -- when I read

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 23

 1   the 60 depositions I -- I thought, Why?  I mean, you don't

 2   take -- well, obviously with 55,000 au pairs you're not going

 3   to take the deposition of everyone who's affected.  But 60

 4   seems like a lot to me, even in a case like this.

 5          MR. LEE:  I agree with you, Your Honor.  And I --

 6   I would -- we have 15 sponsors.  They take the corporate

 7   representative from each.

 8          THE COURT:  Right.  So that's 15.

 9          MR. LEE:  And there -- and there may be more than

10   one for some defendants like my defendant where we get a

11   30(b)(6) notice.  There may be two different deponents.  And

12   there will be some, I would assume, some au pairs, some host

13   families, some issues from the trade organizations, from the

14   state department, and so forth.  So I realistically judged

15   maybe 40 to 45 depositions, and all of which -- the majority

16   of which will take a fair amount of travel.  We're here in

17   Denver, but most of the action will be outside of Denver.

18   So -- and there may be international travel involved.  And

19   there's international entities from which they're going to

20   end up seeking -- trying to get discovery from that recruit

21   au pairs.  So all of these issues don't, I think, bode well

22   for a January 31, 2017, discovery cutoff.  I think we'd be

23   back before you seeking an extension.  And I -- my crystal

24   ball said it would be an unopposed -- it would be a joint

25   motion because there are these issues that are going to pop

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 24

1   up.  So I -- I just put that before Your Honor so that you'll

2   have a complete picture of what I -- what I think,

3   representing at least the largest of the sponsors, is a

4   realistic outlook for the future.

5            UNIDENTIFIED SPEAKER:  Your Honor, if I may, I'd

6   just add briefly to that.

7            THE COURT:  Yes.

8            UNIDENTIFIED SPEAKER:  The proposal is 60

9   depositions per side broken down amongst 15 sponsors.  That's

10  only depositions per sponsor.  When it comes to depositions

11  of host families and au pairs, there's going to be very

12  little, if any, utility of those depositions between and

13  amongst sponsors because they're only going to the individual

14  liability of that sponsor.  And so I wish we could say we

15  could get by with 60 depositions, but I don't see how that's

16  at all possible, given the claims, the number of defendants.

17           Another point to be made, briefing on conditional

18  certification doesn't even close until October.  We're not

19  going to know what our class looks like until we have the

20  notice period after that.  And to say that we have no more

21  depositions, no more discovery before we even know what our

22  class looks like just doesn't seem (indiscernible).

23           THE COURT:  Mm-hmm.  On the -- you're talking

24  about the collective, right?

25           UNIDENTIFIED SPEAKER:  That's correct.

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                             April 25, 2016

Page 25

```
 1              THE COURT:  And not -- not counting the Rule 23
 2    class?
 3              UNIDENTIFIED SPEAKER:  Correct.  And it seems to
 4    be that the most logical way of trying to consolidate and
 5    limit and organize discovery is by starting with our
 6    conditional class.
 7              THE COURT:  Mm-hmm.
 8              UNIDENTIFIED SPEAKER:  We're not even going to
 9    know what that looks like until almost the first week
10    (indiscernible).
11              THE COURT:  Right.  Because it will be the biggest
12    class --
13              UNIDENTIFIED SPEAKER:  Correct.
14              THE COURT:  -- for sure, right?
15              UNIDENTIFIED SPEAKER:  Very likely.
16              THE COURT:  Do you agree with that?
17              UNIDENTIFIED SPEAKER:  Could be.
18              MS. LOUIS:  Do we agree that their largest class
19    will be the FLSA class?
20              THE COURT:  Mm-hmm.
21              MS. LOUIS:  Your Honor, the antitrust and fraud
22    claims will capture everyone, all au pair, and has a longer
23    statute of limitations, so, no, I don't agree with that at
24    all.  Your Honor, may I -- I don't know where the Court's
25    thinking is, and I don't want to take extra time, but if I
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 26

1  have an opportunity just to respond, that, first, if

2  experience teaches anything, the longer we set out a

3  discovery cutoff date, that just means the slower it gets out

4  of the gate.  So I would really encourage the Court to stick

5  to the January 31st, 2017, deadline.  And the parties have

6  the ability, as defense counsel has just forecasted, to come

7  back and ask the Court if there's good cause shown to extend

8  it.  So we'd start with the premise that seven months, even

9  if it means taking 15 depositions a month, which I'm prepared

10  to do, is much better than telling us now that we should take

11  more than a year to do discovery.  The defendants know who

12  the class is.  This is information they control, and it's

13  information they should be turning over to us within the next

14  two weeks.

15       THE COURT:  Well, they -- they don't know -- I

16  mean, they know -- they know who the notice will go to,

17  right?  Each of them should know about notice, but that

18  doesn't mean that all those people will opt-in.

19       MS. LOUIS:  That's true, Your Honor.  And

20  that's -- it's actually another point that we haven't gotten

21  to yet within their proposal.  But the, I would think,

22  biggest difference between how the plaintiffs and how the

23  defendants have laid out their discovery limits are tied to

24  whether or not each of the defendants should be able to seek

25  certain number of depositions, including all of the plaintiff

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 27

 1   opt-ins, which I would discourage the Court from allowing

 2   their discovery either to count in that manner because it --

 3   it is a matter of taking off opt-in plaintiffs.  And also

 4   it's -- it will just be a very lopsided discovery.  The way

 5   that the defendants have currently suggested this five

 6   additional depositions on top of plaintiffs and all opt-in

 7   plaintiffs --

 8               THE COURT:  Show me where you're reading.

 9               MS. LOUIS:  I'm reading on page 26, Your Honor,

10   under subheading A, defendants' proposal.  Now, the

11   plaintiffs have just suggested 60 per side, Your Honor.  And

12   you heard defense counsel say that that might not even be

13   enough for them.  But the way that the defendants have

14   structured it, we would get 15 depositions, essentially, and

15   then five.  So we would have 20, not including parties.

16   They're starting with an extra five per party.  So they're

17   starting out of the gate with 75 additional depositions on

18   top of our current five named reps.  We intend to move for

19   leave to amend the complaint in short order, Your Honor, and

20   be adding additional plaintiffs, to add additional FLSA

21   defendants.  And then anyone who opts in by that time would

22   also be a deposition.  And that's aside from the 75 they're

23   asking the Court for permission to take.  So it is truly

24   lopsided in how it's presented.  And I -- you know, I'd

25   encourage the Court to omit, to the extent that you're

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 28

 1   considering limiting us to parties and then not including

 2   opt-in plaintiffs in the -- in the description of parties

 3   there.

 4              With respect, Your Honor, to the -- to the notion

 5   that there has to be proportionality, we absolutely agree.  I

 6   mean, Your Honor is looking at the courtroom and you can see

 7   the proportionality does not favor us in terms of the

 8   discovery burdens, but we're prepared to take it on.  But I

 9   think experience teaches that it is not generally this side

10   of the V that is driving discovery costs up to try to put

11   somebody out of business.  We're going to be taking the

12   depositions that we need and that's it.  We don't need to be

13   looking to international disputes at this point I think, Your

14   Honor.  To the extent that those things come out, as has been

15   alluded to for purposes of discovery related to the

16   recruitment of the au pair, that is a slice of the case, Your

17   Honor, that doesn't have to distract or take away from any of

18   the other moving pieces.  And ultimately we're in an age

19   where depositions don't have to be attended live.  They -- a

20   lot of our plaintiffs are not in the country.  I don't think

21   that most of us are planning to travel to South Africa for

22   them.  So -- so none of those concerns should encourage this

23   Court to extend the discovery deadline by another 10 months

24   beyond where the Court was inclined to be.

25              MR. LEE:  Your Honor, can I just say one more

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 29

 1   thing?  I think plaintiffs' counsel hit on a point.  They're
 2   expecting to get these lists in a week or two.  I've hired a
 3   firm to put together the list because they're not kept in
 4   that form.  It -- at best, we're going to be a month or two
 5   away from even having a list to give them with -- that's
 6   being created by hand to be put in a digital format by going
 7   through every au pair application, matching it up with host
 8   families, and so forth, as they ask.  It's being done as we
 9   speak.  We didn't wait for this to start.  It's an expensive
10   process that's being done by a reputable third-party.  So, I
11   mean, they're not going to have these -- just on discovery,
12   they're not going -- even if we agree they were discoverable,
13   they're not going to have them in two weeks.
14          THE COURT:  So you get 55,000 people a year that
15   are being placed?
16          MR. LEE:  No, no, no.  I said for the -- from 2009
17   to the present, my estimate is about 55,000 au pairs.
18          THE COURT:  And it's done by hand?  There's no
19   computerized --
20          MR. LEE:  Not to matching her up to the -- au
21   pairs are totally separate and done separately in -- au pairs
22   are recruited and their information is done by a foreign
23   entity.  Then when they come over here they're entered into
24   SEVIS, which is a US government thing, but it doesn't have
25   their home addresses and so forth.  So to match the au pair

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 30

```
 1   with the home address, their last known address, and then

 2   match them with what host families.  Some of them went to

 3   more than one host family.  Some of them extended.  They're

 4   allowed to extend for 3, 6, or 9 or 12 months, I believe.  So

 5   putting the list together as they wanted them, that would be

 6   useful to them, is -- is an effort that we have to do because

 7   it doesn't exist in that state.  There's no digital copy, as

 8   I'm told and led to believe.  And my client is incurring a

 9   significant expense to create it.  So I don't have any reason

10   to doubt what they're saying.  And it is -- I can't explain

11   to you because I didn't understand when the -- when the

12   various IT people met, although I was in the room, five

13   minutes into the conversation it was well over my

14   understanding.  They're talking about certain files, reading

15   with other files.  It's being done, but it's not going to be

16   done tomorrow or in the next two weeks I can tell you that.

17   And in total, we're talking about over 100,000, not au pairs,

18   but when you mash in the host families too.  I don't want to

19   mislead the Court.  So from 2009 to 2016 it's probably

20   somewhere between 50 and 60,000 au pairs --

21             THE COURT:  Okay.  And are you --

22             MR. LEE:  From my client only.

23             THE COURT:  -- are you responding to discovery

24   that's already been sent out, or are you considering that

25   initial disclosures?  How -- you know, what do you -- what do
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 31

1   you think -- you said you're going to produce it.  What are

2   you responding to?

3                 MR. LEE:  I said we're considering whether or not

4   it's object -- but in any event, I will -- there will be

5   responses to discovery filed by my client at least in a

6   timely fashion.  There won't be -- other than a smattering of

7   documents that we readily have.  The others are being

8   digitalitized (sic) and will be produced in a not too distant

9   future.

10                THE COURT:  Okay.  And have you -- you've sent out

11  discovery to all of these people already?

12                MS. LOUIS:  We have, Your Honor.  The deadline

13  passed.  The defendants collectively asked for additional

14  time, which we agreed to.  And responses are currently due on

15  May 4th.  And, Your Honor, I understand this is not a

16  discovery conference, and there isn't presently a dispute, I

17  just feel one brewing, that if defendants are generating

18  documents that will take a month to two beyond the extended

19  deadline to respond to, that, Your Honor, they are required

20  under the law to keep records of everyone they've sponsored.

21  So if -- if we're building in already two months to respond

22  to initial discovery so that they can generate a document as

23  opposed to just simply turning over the approximately 55,000

24  documents that would reveal the names of the J1 -- these are

25  sponsored au pair, I can see how it is that they're asking

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 32

```
 1   for October 2017 for a deadline.  I just feel like we're

 2   hearing why that date is inappropriate, you know, here.

 3              MR. LEE:  Well, if the -- if the -- if the

 4   plaintiff is saying they'll take the SEVIS list, what we're

 5   required to keep in the -- in the forward required to keep,

 6   that would make our job much easier.  I don't want to get

 7   into a discovery dispute here, but they -- that's not what

 8   they asked for.  So -- and that's the problem.  We are

 9   required to keep it, and that we have.

10              THE COURT:  Okay.  Well --

11              MS. LOUIS:  It's not all we asked for, Your Honor.

12   The list would be part of the responsive documents to our

13   RFPs.  So there is nothing that would keep Cultural Care from

14   turning over the responsive documents on the deadline, on the

15   responsive deadline that would reveal the 55,000 or so au

16   pair.  And then to the extent that production comes in on a

17   rolling basis, interrogatory responses, you know, are

18   updated, I think that's the normal course of a complex

19   litigation.  We don't have an objection to getting a list

20   after May 4th that helps and assists us in our job.  I just

21   don't think it's appropriate to start thinking about the

22   delay of revealing the class members by two months so that a

23   document could be generated when otherwise responsive

24   documents can be turned over and reveal the same information.

25              THE COURT:  Well, I think what she's saying is a
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 33

 1   rolling production for all of you that have big clients, and

 2   I don't know who that is, but -- is appropriate, which I

 3   agree with.  That would be appropriate.

 4            MR. LEE:  And we -- we intend to.  We intend to do

 5   that.

 6            THE COURT:  Right.

 7            MR. LEE:  And we're getting them as quickly as we

 8   can.

 9            THE COURT:  All right.

10            MR. LEE:  And we hired a third-party to do it so

11   that it's done in an organized fashion.

12            THE COURT:  And, plaintiff, as I -- as I read your

13   proposal on page 26, this is where you said 60 depositions

14   per side.  And it seems to me that if you really -- that's --

15   that's -- you're -- you're under what they wanted.  If it's

16   really 60 depositions per side, then January probably is

17   awfully optimistic.  That doesn't even count experts or

18   anything like that, so --

19            MS. LOUIS:  Well, that's -- that's true, Your

20   Honor.  We put expert discovery beyond the January cutoff for

21   fact discovery.

22            THE COURT:  Right.

23            MS. LOUIS:  But, Your Honor, it's seven months.

24   And assuming that we begin getting the responses in May,

25   discovery -- I mean, depositions should begin in earnest

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 34

1    immediately.  You've heard defense counsel say that not every

2    deposition is relevant to every one of the defendants.  And I

3    just don't think that seven months to take the depositions

4    and get to the close of fact discovery is -- is really all

5    that optimistic -- I mean, overly optimistic, Your Honor.

6            THE COURT:  Yeah.

7            MS. LOUIS:  We can do it.

8            THE COURT:  Right.

9            UNIDENTIFIED SPEAKER:  Is there a compromise

10   between January and October that works for both sides, and is

11   realistic, and doesn't make us come back?  I think that's

12   probably splitting the difference of the 10 months and

13   putting it in June.  And I -- that would be my proposal,

14   having heard the plaintiffs and the Court's concern, and just

15   trying to find some common ground right here where we can

16   hustle through and get this thing done.

17           THE COURT:  How about the -- let's -- let me

18   figure into this the class action briefing.  Are you still

19   maintaining that for -- to begin on January 31st?  So Rule

20   23 -- and there's more than one class, right?

21           UNIDENTIFIED SPEAKER:  Right.  So in the -- in the

22   new -- in the new and improved schedule, we have scheduled

23   for May 15th, 2017.  And then counsel -- plaintiffs' counsel

24   indicated a moment ago there was a concern about the delay.

25   There's a 60-day delay between the two.  And if I may -- if I

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 35

1   may, I'd like to explain why we put the 60 days in there.

2           THE COURT:  Are you talking about between May 15

3   and July 18?

4           UNIDENTIFIED SPEAKER:  July 18.  Yep.

5           THE COURT:  Okay.

6           UNIDENTIFIED SPEAKER:  The reason that we have

7   that there, Your Honor, is because we anticipate that

8   plaintiffs will endorse experts as part of their effort to

9   either create a class or oppose the decertification that may

10  occur during that time period, and so there will have to be

11  discovery of the experts in order to accommodate -- take

12  their depositions, and then prepare the responsive pleadings.

13  So that's why -- that's -- that is what represents the

14  60 days.

15          THE COURT:  Well, the case -- the case officially

16  hits the -- the three-year list, which is important, and it's

17  not because it's just -- I mean, for -- for us as a court

18  it's a check box, right?  So it's not like it's any work or

19  anything, but it's there for a reason.  And with the -- with

20  the defendants' proposal, while -- you know, it does seem

21  more realistic actually, although it makes me cringe to think

22  of it, I mean, there are just a lot of things to do in the

23  case.  You're not even going to be really through with things

24  until the case has reached that, and then Judge Arguello

25  needs to put it to trial before March of 2018.  And that's

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 36

 1   not going to happen under the schedule that's being proposed

 2   by defendants.  And I -- I hear what you're saying, but the

 3   more time that all of you have to play around with dates for

 4   depositions, etc., the more complicated it's going to get

 5   because there is no way that everybody in this room is going

 6   to be able to even agree on 10 depositions on one date.

 7   On -- not -- I don't mean all on one day.  But you know what

 8   I mean.  Each day for 10.  It just doesn't happen because

 9   attorneys' schedules are what they are.  By -- by forcing you

10   into a faster ramp-up, you will need to decide, for each of

11   you, whether or not you really need to attend all these

12   depositions, whether or not you really have to be available

13   by phone, or whether or not reading the transcript is good

14   enough.  And unfortunately, I think you need to have to make

15   those decisions because it will take 10 years to get all the

16   discovery if you wait for everybody to agree.  Plaintiffs are

17   going to have to do the same thing, but it's probably pretty

18   important that they attend all of them.  So, you know, I

19   think that if they're willing to take on that burden, then, I

20   see it as less burdensome for defendants, frankly, because

21   you have each other to rely on, and you have each other to

22   get together and say, Okay, I'll -- I'll do these

23   depositions, you do those, you know, and have a little more

24   cooperative position, I think, than plaintiffs have.  They've

25   got to be at all of them, so --

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                               April 25, 2016

Page 37

```
 1              UNIDENTIFIED SPEAKER:  From a calendar

 2   perspective -- I'm sorry, Your Honor.  From a calendar

 3   perspective, the Court's probably right, that they are -- you

 4   know, they're -- they're -- they're just gearing up and

 5   taking depositions.  Conversely, on this side we're actually

 6   defending a case.  We're gathering millions -- hundreds of

 7   thousands of documents.  We're preparing 30(b)(6) witnesses,

 8   something they don't do.  We're defending -- we're preparing

 9   extensive lists of former personnel.  We're working with the

10   state department.  We're working with trade organizations.

11   It's just a boatload of work over here.  So it's not -- it's

12   not just attending depositions.  And I think the Court's

13   point is well-taken, and we've talked about that, I can

14   guarantee you on this side, about not -- you know, whoever is

15   up, if they're -- if they're deposing my 30(b)(6) person, the

16   only -- the only calendar it's going to get cleared on is

17   mine.  Everyone else get -- do the best you can.  If you --

18   make your decision whether you want to attend or not or just

19   read the transcript.  We've already made those types of

20   accommodations.  It's the pure elbow grease and heavy lifting

21   that has to go on on this side that's really going to take

22   time.  And I think that's the difference between the two

23   sides as we approach this case.

24              UNIDENTIFIED SPEAKER:  Your Honor, if I may.

25   Again, I certainly understand everything the Court's saying,
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 38

 1    and I understand the sacrifices the defendants need to make.

 2    But I still, on behalf of my client, am very concerned about

 3    not even knowing what our conditional class is until we're

 4    right on top of or probably past the discovery deadline.

 5    That makes a lot of the au pair host family depositions that

 6    we do between now and then possibly irrelevant, or at least

 7    superfluous.  And so it seems that we need at least some

 8    period of time after the opt-in period ends so that we know

 9    what our class looks like before we finish the discovery.

10            THE COURT:  Mm-hmm.  Well, obviously the -- the

11    compromise position would be to make your discovery period

12    about a year and shorten the experts, the expert time,

13    because the heavy lifting really, from the perspective of

14    trying to gather everything, will be the fact discovery,

15    don't you think?  I mean, the experts are in some ways

16    harder, but, you know, there -- there won't be as many.  Did

17    I write down -- I think I wrote down eight per side you had

18    agreed on for the experts, or maybe you didn't agree.  I

19    don't think you agreed on very much, but that --

20            MS. LOUIS:  That -- that was the plaintiffs'

21    proposal, Your Honor.

22            THE COURT:  Okay.  And what -- what if we did a

23    discovery schedule, something -- I don't want to do phase

24    discovery because I think phase discovery invites discovery

25    motions.  This isn't in the right phase.  He's not supposed

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 39

```
 1   to ask that now.  I hate those.  I hate those.  I do
 2   understand it because there's so much paper that's going
 3   to -- well, not paper probably, electronic that's going to be
 4   generated by defendants.  But a lot of it, it seems to me, is
 5   things you have to keep anyway.  So it's -- there's a lot.
 6   There's a mass.  But that's the way it goes in today's
 7   litigation the way it is.  But I think maybe if we did a year
 8   for everything and then had a short expert time after that,
 9   right, because you don't want to do experts if you don't need
10   to, that would give you time with the -- if we put the
11   collective action paperwork on the -- on the table quickly
12   like we did in August, then Ms. Colaizzi, your -- your
13   concern is going to be eliminated as soon as that gets kind
14   of ruled on, so you'll know where that's going after that.
15   And then -- but I do want to put the class action briefing in
16   there somewhere.  So let's -- let's toy for a moment with a
17   date in April for discovery cutoff.  Do we have to wait until
18   April, or if it's March, to do class action motions?  Do you
19   have to have all the facts in first, or can we put that --
20   move that into the period?
21             MS. LOUIS:  Can we have just one second --
22             THE COURT:  Yes.
23             MS. LOUIS:  -- to just kind of flesh that out?
24   Yes.  Your Honor, thank you for giving me the opportunity.
25   That's fine with us.
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 40

1      THE COURT:  Okay.  So -- so could you -- could you
2  do, do you think, class action briefing starting on
3  January 31st?  So if you had a schedule, something like class
4  action motions have to be filed by January 31st, responses by
5  February 21st, and replies by March 14, is that doable?
6      MS. LOUIS:  It is for the plaintiffs.
7      THE COURT:  Okay.
8      UNIDENTIFIED SPEAKER:  The only thing you'd have
9  to (indiscernible), the fly in the ointment with that is you
10  have to have the expert disclosures well in advance of the
11  Rule 23 briefing.
12      THE COURT:  Yeah, at least that kind of expert,
13  right?
14      UNIDENTIFIED SPEAKER:  Right.
15      MS. LOUIS:  We -- we do anticipate having expert
16  both -- or discretely for merit versus class certification.
17  Then the question where you say well in advance, we'd have
18  the initial reports -- I mean, we wouldn't have the
19  depositions finished before the initial brief came out.  What
20  do you think?  What do you propose?  They're saying 60 days
21  on their side.  60 days before --
22      UNIDENTIFIED SPEAKER:  60 -- 60 days in advance of
23  the briefing deadline?
24      MS. LOUIS:  Let me look at that.
25      UNIDENTIFIED SPEAKER:  On the initial expert

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 41

```
 1   reports --
 2          MS. LOUIS:  For the initial reports is what
 3   they're saying.
 4          UNIDENTIFIED SPEAKER:  Why don't you just --
 5          MR. HARTLEY:  Excuse us, Your Honor.  We're trying
 6   to consolidate our responses.  Jim Hartley for -- for
 7   Cultural Homestay International.  The reason -- and I will
 8   confess to having been a party to urging the group to accept
 9   the 60-day response date to the plaintiffs' Rule 23 class
10   motion because rather than have an earlier deadline for
11   expert reports relating to class issues, it seems like the
12   most efficient way would be to give us 60 days, get their
13   motion, see what their experts have said.  We then have
14   60 days to take a deposition.  Our experts will be well
15   underway, but they will then be able to prepare whatever
16   reports or declarations we need for our response.
17   Anything -- anything less than that would require us to have
18   disclosure deadlines.  We could avoid the disclosure if we
19   have a 60-day response date.  And that's a whole lot simpler.
20          THE COURT:  Mm-hmm.  So you would -- you would say
21   that your -- your response date and your disclosure of class
22   action experts would be the same day, right?
23          MR. HARTLEY:  Effectively, yes, because I would
24   envision that the plaintiffs would file their motion for Rule
25   23.  Let's keep -- keep well in mind we're only talking about
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 42

 1    Rule 23 here.  The collective action stuff happened earlier.

 2              THE COURT:  Yeah.  That was -- that's all --

 3              MR. HARTLEY:  That was early.

 4              THE COURT:  Mm-hmm.

 5              MR. HARTLEY:  On Rule 23, you'll file your Rule 23

 6    motion for the Rule 23 classes and you'll attach whatever

 7    expert declarations you want.  Then we have 60 days to file

 8    our responses.  And during that period of time we will work

 9    with our experts as part of the response effort.  And then

10    when we file our response to your brief, we'll go ahead then

11    and file our expert declarations, much as they had just done.

12    The alternative is to give them an earlier Rule 23 class

13    expert disclosure date, like a month ahead of their motion,

14    and then we get going right away and we can then respond in a

15    shorter period of time.

16              MS. LOUIS:  Your Honor, for purposes of the expert

17    disclosures, our proposal had and remains that -- had been

18    and remains that the disclosures be simultaneous.  So the

19    plaintiffs and defendants both make their expert disclosures,

20    and then likewise, simultaneously, do their rebuttal

21    disclosures thereto and move into expert discovery.  So if

22    we're carving some time out of the fact discovery period to

23    do class certification, and disclosures are going to take

24    place before that in depositions, after that for the experts,

25    then the disclosures should still be simultaneous.  If they

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 43

1   have to be in advance of our deadline to file the class

2   certification, then we'll accommodate and find a way to make

3   that fit, but they should still be simultaneous.

4         THE COURT:  Well, why would the -- the defendants

5   necessarily have, what I would call, true affirmative experts

6   on class issues?  They don't -- probably don't want a class,

7   right?  They aren't going to be -- they'd be very happy to

8   just have individual.  Am I right about that?

9         UNIDENTIFIED SPEAKER:  Sure.  The simultaneous --

10  the simultaneous, you know, disclosures typically happen, I'm

11  sorry, simultaneously happen when you each have a burden of

12  proof.  So I have a burden of proof on something.  They have

13  the burden of proof to get to -- to satisfy the elements of

14  Rule 23.  So I don't think there will be simultaneous

15  disclosure on Rule 23.  I don't think it would be appropriate

16  under the rules.

17        THE COURT:  I mean, if they didn't -- if they

18  didn't designate an expert on class issues and move for

19  class, then you wouldn't have an expert on that issue.  Now,

20  I just researched this just really, really recently, like

21  last week on the issue of damages because there was an

22  argument made to me that we don't have any burden of proof as

23  a defendant on damages.  Plaintiff has to prove their damages

24  or they don't have a case.  But the case law seems to say

25  that in areas like damages where you know there's going to be

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 44

1   that issue that you do have affirmative experts.  So -- and
2   not every -- not every defense damages expert is an
3   affirmative obviously.  But if they do more than just punch
4   holes, which was the language that's used, if -- if there --
5   do more than just punch holes in the affirmative expert's
6   report, if they come up with their own theory, then there are
7   affirmative experts and damages, even though there's no
8   burden of proof there.  So that doesn't always work I think.
9           MR. HARTLEY:  And if I may, Your Honor, I think --
10  this is Jim Hartley again.  I think the -- the nature of the
11  expert declaration that would be filed in connection with the
12  class issues is more -- not to diminish it, but in the punch
13  holes variety, because we don't know what kind of
14  mathematical formula their guy may come up, their person may
15  come up with to -- to address commonality and typicality
16  issues and the sort.  So we're going to have to wait and see
17  that, and then our guys will have to move quickly, and our
18  experts are going to have to put something together.  But how
19  we could do that without seeing first what they are proposing
20  is very difficult for me to see.
21          MS. LOUIS:  Sorry, Your Honor.  But what's being
22  described is a rebuttal expert.
23          THE COURT:  Right.
24          MS. LOUIS:  If the defendants aren't going to have
25  any affirmative experts for class certification, then they

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 45

 1   would disclose zero on the same date.  But rebuttal expert

 2   disclosures are different than the affirmative.  And, Your

 3   Honor, I don't -- I also just want to point out that we have

 4   defendants that have asserted something -- several dozen

 5   affirmative defenses in the answers that were filed last

 6   week, and a variety of those affirmative defenses goes

 7   towards the issues that will cover the 23 -- the Rule 23

 8   class.  So I know that a lot of the focus and discussion has

 9   been on the FLSA claims, and permanent employer and employer

10   perspective, but that puts aside the antitrust and the fraud

11   claims that are also raised.  So just to the extent that they

12   intend to bring forward an affirmative expert, there should

13   be simultaneous disclosures.

14            THE COURT:  Okay.  So do you -- are there experts

15   that are not class related or -- or are they all class

16   related really in one way or another?

17            MS. LOUIS:  Your Honor, I don't know the answer to

18   that yet.

19            THE COURT:  Okay.

20            MS. LOUIS:  I know that we have -- we've

21   contemplated that there may be -- that are strictly class and

22   that are strictly merits or -- but it's premature for me to

23   make that representation.

24            THE COURT:  So it seems to me, then, that I've got

25   the cart before the horse, and that what should come first is

Johana Paola Beltran, et al. vs.                               Scheduling Conference
Interexchange, Inc., et al.                                          April 25, 2016

Page 46

 1   expert disclosures, and then the -- then the class motions
 2   instead of class motions first or simultaneously.  Do the --
 3   do the expert disclosures first.
 4              MR. LEE:  At least the class experts.  You're
 5   right, Your Honor.
 6              MS. LOUIS:  Your Honor, I think that one
 7   proposal -- our scheduling order had proposed four experts
 8   for merits and four for class.  And I think that that
 9   separation is maybe what's causing this hitch.  The
10   defendants had suggested, I think, a total, I want to say
11   three, but I'm not sure.  But perhaps the better way to do it
12   is just to say expert disclosures are of a date, whether they
13   be on merits or on the class, so that we're not picking
14   through these -- the timing issues, the class certification,
15   and so forth.  Just expert disclosure dates, rebuttal,
16   disclosure dates, and then the discovery period for experts.
17              THE COURT:  So by "discovery period for experts,"
18   you mean to take their depositions?
19              MS. LOUIS:  Yes, Your Honor.
20              THE COURT:  Okay.  And that can -- that definitely
21   can come after the class action motions?
22              MS. LOUIS:  Yes, Your Honor.
23              THE COURT:  Okay.
24              MS. LOUIS:  Well, at least it would be after the
25   opening brief.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 47

```
 1              THE COURT:  Okay.  So what about then a --
 2              UNIDENTIFIED SPEAKER:  The only --
 3              THE COURT:  -- schedule that talks about
 4   disclosure of experts early next year?  February maybe.
 5              MS. LOUIS:  That -- we would agree with that, Your
 6   Honor.
 7              UNIDENTIFIED SPEAKER:  So is that in advance of --
 8   is that in advance of the -- the Rule 23 briefing?
 9              THE COURT:  Yes.
10              MR. LEE:  But that would be both class and
11   nonclass experts?
12              THE COURT:  Everything, I guess.  And then that
13   way --
14              MR. LEE:  I don't think that makes sense.
15              THE COURT:  -- we don't have arguments over
16   whether they're class related or not, right?  They're just
17   the experts in the case.
18              MS. LOUIS:  Right.
19              MR. LEE:  I don't -- I'm not sure that you can do
20   all experts before the class certification.
21              THE COURT:  Why not?
22              MR. LEE:  Because I think there's damages issue
23   once the class is certified, and there may be the need for
24   different -- and I think by doing that, Your Honor, you're
25   unnecessarily delaying the class certification by -- because
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 48

 1   you need more discovery to get all your experts.  If we just

 2   do class certification experts, then we can move the class

 3   certification up like Your Honor envisioned.  I think by

 4   lumping all experts together, what's going to happen is we're

 5   going to move class certification back later and slow down

 6   the case, which I thought was -- we all agreed was a mistake.

 7   If we just do class certification, experts early on, we can

 8   probably stick with that 1/31, so forth, date that you said,

 9   but if we join them all together, I don't see how we could

10   stick with that date.

11          THE COURT:  What if we just pulled out damages

12   experts?  They're the ones that are clearly different, right?

13          MR. LEE:  Right.  I can't -- my problem is, that

14   in the course of discovery, I can't envision it now, there

15   may be a factual expert that is very different than class

16   certification.  It could be someone on the state department.

17   I'm just trying to think about it.  I -- it's just I think

18   dangerous to lump them all together because there may well be

19   something that comes up in discovery that jumps out for a

20   need for an expert, for either them or us.  It's hard to, you

21   know -- as much as we think we know everything at the start

22   of the case, my experience is telling me that there's always

23   surprises.  And I don't -- I think it's important to get

24   class certification out of the way early, as early as

25   possible, to reach our goal of hopefully moving the case

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 49

1   forward quickly, which I think -- so I think it's -- I just

2   would -- I think putting all those experts together is a

3   mistake.  And we -- class certification experts are distinct.

4   And it's -- you don't get into the -- I agree with you on the

5   phase discovery.  But when you're dealing with class

6   certification experts, they are a horse of a different color.

7   You know what they are.  And I don't think there will be any

8   dispute about that.  So I would just throw that out there.  I

9   think it's a way to move up class cert.

10          MS. LOUIS:  Your Honor, my final point would be

11   that I think that these types of arguments are exactly why

12   the good cause standard to amend the scheduling order exists.

13   I think that we're sort of letting perfect be the enemy of

14   the good in terms of forecasting what kind of problems we're

15   going to run into.  I think it's a very reasonable

16   suggestion, as the Court has just made, that we have the

17   disclosures in February.  To the extent that as the parties

18   approach and the defense bar -- or, I'm sorry, the defendants

19   in this case feel that there is a very distinct need to

20   separate out the experts or stagger their disclosures, we'll

21   be in a much better position after discovery has started in

22   earnest to come back and inform the Court, but right now

23   these are all hypotheticals.

24          THE COURT:  Okay.  Well, I think for me, from

25   hearing from all of you, it seems to me that the best way to

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 50

 1    proceed with getting everything out there that we need to get

 2    out up front and not disadvantage anybody on the class --

 3    when the class action briefing is to be done, I think we

 4    ought to put affirmative experts on class-related issues.

 5    And I understand this will -- this may invite problems if

 6    these aren't a horse of a different color.  But if they are a

 7    horse of a different color, then you should be able to pull

 8    them out and say, These are the -- these are the affirmative

 9    class-action-related experts, and I want them disclosed

10    30 days before the opening brief.  Now, defendants may or may

11    not have an affirmative class action expert.  You know that

12    class action is going to be pled in this case.  So I will

13    leave it up to you to read those cases that I have read, and

14    one of them is in the Tenth Circuit, that talks about if you

15    know that something is coming -- for instance, an affirmative

16    defense.  You know because it's been pled that it's coming,

17    then I think you might have an affirmative expert.  So -- but

18    if you don't -- if you don't have any, fine, then you don't

19    have to disclose anything.  But I think this puts us for

20    class action briefing into February because -- and this is

21    Rule 23 class, of course, because I don't want to put it in

22    January because I don't want to have you having all these

23    deadlines hit at Christmastime.  That's just silly because no

24    one will get it done, or whatever holiday every celebrates.

25    I still say "Christmas," but I mean "holiday."  Okay.  So

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 51

 1   let's talk about maybe Feb -- the -- mid February for class

 2   action briefing.  And this -- this burden is going to be on

 3   plaintiffs primarily.  So do you prefer to have a Monday or a

 4   Friday?  Do you want the weekend to kill yourselves or not?

 5            MS. LOUIS:  We like Friday, Your Honor.

 6            THE COURT:  So get it over and go relax.  How

 7   about February 17 for the day that all class actions, motions

 8   will be due?  That's February 17, 2017.  And that would make

 9   experts due on the 17th of January, affirmative class action

10   experts.  So January the 17th, 2017.  The initial motions

11   filed on -- in mid February.  And then we need a response

12   date and disclosure of any rebuttal experts on class action.

13            MR. LEE:  What was the reply brief date?

14            UNIDENTIFIED SPEAKER:  Well, given that we have to

15   do some discovery in-between probably, is the 60-day gap

16   still acceptable to the Court, 60-day trailing date?

17            THE COURT:  Since I'm giving you the 30 ahead of

18   time, you'll know who their experts are, I'd rather not do

19   60.

20            UNIDENTIFIED SPEAKER:  Okay.

21            THE COURT:  So if -- but if we made it March --

22   March 17 is a -- is a Friday.  Do you prefer Fridays or

23   Mondays?

24            UNIDENTIFIED SPEAKER:  Mondays.  Monday.  And I'm

25   speaking for the group, I guess.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 52

 1            UNIDENTIFIED SPEAKER:  I can agree on that one,
 2   Your Honor.
 3            THE COURT:  Yeah.  I think that's a good -- there
 4   might be some good sociological study or something, right?
 5   Who wants the Monday date?  They'll work all weekend.  And
 6   who would rather have Friday, kill yourself all week and have
 7   the weekend off.
 8            So let's just say the 17th because that's the
 9   date.  And it's not a weekend.  So -- so the 17th, March 17,
10   2017, will be the response date to the motions and disclosure
11   of rebuttal -- disclosure of rebuttal experts on class
12   action.
13            MS. LOUIS:  Your Honor?
14            THE COURT:  Yes.
15            MS. LOUIS:  I apologize for reopening this can of
16   worms, but we would really be behind the 8-ball to find out
17   who their rebuttal expert is after we've already filed our
18   class action.  We would rather -- or motion.  We would rather
19   move our disclosure date even further up so that it is
20   60 days and know their rebuttal expert 30 days.  And for --
21   for several reasons.  First of all, I just -- first, out of
22   fairness, to know what their -- their disclosure and their
23   rebuttal is going to be before we even advance the motion,
24   maybe it's so good, Your Honor, we rethink the motion.  But
25   the other part too, though, Your Honor, is, again, I'm sorry

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 53

1   to do the hypothetical thing, but anticipate that it may not
2   be so rebuttal, and it may be affirmative.  And to the extent
3   that either of those things happen, we're willing to move up
4   our disclosure deadline so that it's 60 days before we file
5   our motion in February.  So that would put us in, you know,
6   mid December, so that then in mid January they're disclosing
7   to us who their rebuttal class expert is.
8           THE COURT:  So you just -- what you're wanting is
9   their rebuttal experts --
10          MS. LOUIS:  Before we file our initial opening
11  brief.
12          THE COURT:  -- before you even file the opening
13  brief.
14          MS. LOUIS:  Yes, Your Honor.
15          THE COURT:  Even though you've got to reply
16  because -- I mean --
17          MS. LOUIS:  We do, Your Honor.  We have a reply
18  that -- so once we are in the reply world, we're replying to
19  what's in their response, and also that is, in theory,
20  governed by what we've put in our opening motion.
21          THE COURT:  Right.
22          MS. LOUIS:  Our opening motion will be better
23  informed if we know what their expert opinion is.  I think,
24  Your Honor, both, that it is more efficient for purposes of
25  the Court being able to decide the motion.  The parties will

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 54

 1   have the issues much more focused.  It will be a clearer

 2   briefing.  I just think it advances it for everyone's

 3   judicial economy here.

 4          MS. REILLY:  Quickly, Your Honor, Katie Reilly.

 5   If we're going to go with that, it doesn't work simply to go

 6   back 30 days and have them file December 17th, and have

 7   defendants file their rebuttal before January 17th.

 8   (Indiscernible) just 30 days over the holidays.  So if we're

 9   going to go in that direction, it would mean to get -- move

10   forward rather than backward.  So all the others expressed an

11   opinion as to staggering.  But if you filed it -- the

12   plaintiffs filed their initial disclosures January 17,

13   defendants filed the rebuttal February 17th.  And then if you

14   all need an additional 30 days to get your motion on file,

15   which I think is what you're proposing, so March 17th.  And

16   then we have the one more month to get our response,

17   April 17th, or whenever the dates fall in, we would just

18   request that and not have our 30-day rebuttal period between

19   December 17th and January 17th.

20          MS. LOUIS:  That's fair.

21          THE COURT:  Right.

22          UNIDENTIFIED SPEAKER:  One last thing, Your Honor.

23   And I'm -- I know you spent a lot of time putting the numbers

24   together, and I appreciate it, but if -- if we're talking

25   about a discovery cutoff, fact discovery cutoff of April 1st,

Johana Paola Beltran, et al. vs.                          Scheduling Conference
Interexchange, Inc., et al.                                        April 25, 2016

1    more or less, then we're doing -- we're doing experts in

2    advance of some of the conclusions of the 30(b)(6) of some of

3    these people --

4            THE COURT:  Well, yeah.

5            UNIDENTIFIED SPEAKER:  -- and some of the fact

6    witnesses.

7            THE COURT:  But don't wait.  Don't wait on those.

8    Right?  That's -- that's the idea.  I mean, most cases have

9    the expert disclosures.  And this goes for little baby

10   cases --

11           UNIDENTIFIED SPEAKER:  Mm-hmm.

12           THE COURT:  -- to medium-sized cases.  Have the

13   experts within the discovery period.  And that's six months,

14   you know, in a regular one, two, kind of case.  So I don't

15   see any problem with that.  The big problem is, is that you

16   all have to decide who you need first, and take those

17   depositions first.  All right?  I mean, that's a -- that's a

18   litigation tactic.  But don't wait.  Don't wait to take them

19   or you won't have them.

20           UNIDENTIFIED SPEAKER:  And just to clarify, Your

21   Honor, these deadlines are for class expert disclosures?

22           THE COURT:  Right.  Class experts.

23           UNIDENTIFIED SPEAKER:  So that takes care of that

24   issue out.

25           THE COURT:  Right.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 56

```
 1              UNIDENTIFIED SPEAKER:  Okay.

 2              THE COURT:  Only class experts.  I'm thinking that

 3     the other experts can come later.

 4              UNIDENTIFIED SPEAKER:  Okay.

 5              THE COURT:  Okay?  So what do you think about

 6     that?  Instead of saying December 15, we say somewhere in

 7     early January since you don't mind -- seem to mind the

 8     holidays too much for work, how about early January instead

 9     of moving it to mid?  You know, January 10 or something like

10     that.

11              MS. LOUIS:  Your Honor, we don't have a problem on

12     our side filing it in December and just giving them the time

13     that Ms. Reilly suggested.  Just sliding -- you know, instead

14     of making it January 17th, work in the extra week or two

15     weeks that accommodates the holidays, and just slide their

16     disclosure date back a little bit.  And we're fine to still

17     stick with the -- what is it, the -- the February 17th date

18     for our opening brief.  We don't need a full 30 days with

19     their rebuttal, I'm sorry, yes, with their rebuttal

20     disclosure.  But if we file on the 17th of December, and they

21     have, you know, end of January, beginning of February, we

22     have two weeks, then we'll file our initial brief, and it

23     doesn't have to push everything else back.

24              THE COURT:  That seems reasonable, right?  Okay.

25     All right.  So I'm going to have to get another piece of
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 57

1   paper here.

2           All right.  So we've got expert disclosure,

3   affirmative expert disclosures.  So remember, defendants,

4   this could be you.  You know, you decide.  Affirmative expert

5   disclosures on class action only for December 17.  And one

6   thing I didn't look was to make sure -- okay.  Because that's

7   a Saturday.  So we'll make that December 16th?

8           MS. LOUIS:  Yes, Your Honor.

9           THE COURT:  All right.  So December 16 of 2016.

10  Then we'll have -- rebuttal expert disclosure on class action

11  issues only will be the end of January 2017.  So how about

12  the 30th of January?  Okay.  So January 30, 2017, rebuttal

13  experts for class action.  And then we'll stay with our

14  briefing schedule of February 17 for opening briefs.  And

15  then March 17.  Do you need -- if you've already disclosed

16  exhibits, do you need 30 days, or is 21 enough?

17          UNIDENTIFIED SPEAKER:  The 30 would be great just

18  for all the reasons we said before.  We'll try and

19  consolidate and work our way through.

20          THE COURT:  Okay.  And then what do you want for

21  your reply?  How long do you need?

22          MS. LOUIS:  Your Honor, if we could have that

23  extra week as well so that our response is 21 days, our

24  reply.

25          THE COURT:  Okay.  So three weeks from March 17.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 58

 1   Did I give you that date?  March 17, then, for the responses.

 2   And then the reply would be due the 7th of April, 4/7 of '17.

 3   Okay.  And can that be the date for fact discovery cutoff

 4   too, April 7, 2017?

 5            UNIDENTIFIED SPEAKER:  Could we get just about

 6   another 30 days?  May -- May 1.

 7            THE COURT:  That's -- that's a long time because I

 8   want to start your -- see, the -- after -- after the close of

 9   that discovery you need to start expert, for the remaining

10   experts, right?  You still have that.

11            MR. LEE:  How about two weeks after the -- like

12   Tax Day?

13            MS. LOUIS:  We -- we agree with you, Your Honor.

14   Fact -- I mean, I'm sorry, expert discovery should begin

15   after the close of the briefing period for motion to stay the

16   class.

17            THE COURT:  Yeah.  You're not going to have a

18   ruling, but -- you'll have a ruling from Judge Arguello

19   faster than anybody else though, I bet.

20            UNIDENTIFIED SPEAKER:  Well, I guess my thinking

21   is, is there's going to be some loose ends, some things that

22   aren't done.  Maybe 30 -- maybe 23 days was -- was asking too

23   much, but how about 14 more?  So something like April 21st

24   just in case there's loose ends.  As you've indicated, it

25   should be done before we got through the Rule 23 briefing,

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 59

```
 1   but --
 2              THE COURT:  Okay.  Let's -- let's call it even and
 3   say April 17, which is probably -- well, that's what I said
 4   in the beginning, didn't I?  No.  I said April 7th.  So let's
 5   say April 17.  That probably is Tax Day because the 15th is
 6   on a Saturday.  So we'll make the -- our discovery cutoff on
 7   that lovely day that we all love so much, Tax Day, so
 8   4/17/17.
 9              Now, we have then remaining experts.  So that
10   would be damages experts and anything else.  I mean, I don't
11   know.  Do you have an expert maybe on state department
12   procedures and policies or -- you know, I don't know.
13              MR. LEE:  We could -- we could have them, but --
14              THE COURT:  Yeah.  Who knows?
15              MR. LEE:  -- too early to --
16              THE COURT:  So --
17              MS. LOUIS:  I mean, I would anticipate at a
18   minimum we're going to have an expert on the antitrust
19   issues.
20              THE COURT:  Well, right.  Yeah.
21              MS. LOUIS:  Right.  In addition to the damage
22   experts.
23              THE COURT:  Okay.  So how long do you think we
24   should build in that time period?  Because this is also going
25   to be your time period, maybe, where you're still deposing
```

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                              April 25, 2016

Page 60

1   some of these class action experts if you want to.  You'll

2   have had -- you have their reports and everything, but you

3   might -- you might not have deposed them all, so you need

4   enough time in there to --

5          MS. LOUIS:  Well, Your Honor, may I first seek to

6   clarify whether the Court's imposing limits on the number of

7   experts?  I think Your Honor had said eight initially.  So

8   are you thinking that the sides will be limited to four for

9   class and four for merits?  Because the total number of

10  experts may inform our discussion about the period for

11  discovery.

12         THE COURT:  Well, I was thinking eight per side

13  and you decide how you want to divide them up.

14         MS. LOUIS:  Okay.

15         THE COURT:  Does that sound reasonable for

16  everybody?  I mean, it -- it limits eight for all of these

17  defendants, but I think your -- your expert issues are going

18  to be pretty much the same.

19         UNIDENTIFIED SPEAKER:  Perhaps.  I think we're

20  fine with eight with an understanding we may -- some people

21  may come back and ask some carve-outs because their

22  circumstances, their operations, their contracts, and so on,

23  are different.

24         THE COURT:  Okay.  And -- but let me tell you,

25  defendants: It's going to have to be really different because

Page 61

1    eight is a lot, even -- even though there's 15 of you or

2    however many.  I think one -- one less than I counted before.

3    So -- but I think eight per side should be enough.  I'm

4    always open to more, though, if you really need it of

5    anything.  You know, you shouldn't not ask thinking I'm going

6    to do an automatic no because that's not the case with me.

7    Because it's a criminal background, right?  I'm used to

8    everybody gets everything.  It doesn't matter what it is.

9    You get it unless someone is going to get killed, you know.

10   If it's going to make somebody get killed, probably you don't

11   get it.  But other than that -- so let's -- let's go on that.

12   So if we -- is a three-month period of time enough?

13          MS. LOUIS:  Yes, Your Honor.

14          THE COURT:  Okay.

15          UNIDENTIFIED SPEAKER:  Yes.

16          THE COURT:  And would you say maybe affirmative

17   experts, 30 days after April 17?

18          MS. LOUIS:  Yes, Your Honor.

19          THE COURT:  Okay.  So all other experts,

20   affirmative experts, no matter who's got the burden or

21   what -- you know, you read the case law yourself because I

22   think that is kind of a tricky issue.  I didn't think so

23   before, but I -- I do now, having just read up on it.  So

24   affirmative experts will be due May 17.  That's midweek.  So

25   May 17, 2017.  And then rebuttal experts on 6/16/2017 because

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 62

```
 1    the 17th was a Saturday.  So those are the disclosures.  And
 2    then one month after that should be the close of all
 3    discovery.  So that puts you July 17.  And, you know, this is
 4    broken down so that this three-month period is just expert
 5    disclosure -- or discovery, but it's not unlikely that you
 6    have certain people that you couldn't get and you need to do
 7    them.  And I don't care as long as you all agree.  As long as
 8    there's no real dispute about it, it doesn't make any
 9    difference really to the Court who you put in there, but
10    officially it's only experts during that last three months
11    because after that comes dispositive motions.  And since
12    we've built in some time, I think it's likely you would have
13    answers on your class motions.  But what I'm -- what I'm
14    wondering is if we should not set these last remaining dates
15    and we should meet instead and see where we are on -- I mean,
16    I'm not sure that it helps us to set motions for summary
17    judgment.  I mean, you may or may not know about your class.
18    Certainly all the notices and stuff won't be done.  So what
19    do you want to do about that?
20              MS. LOUIS:  Your Honor, I agree with your
21    recommendation that we should set another time to come in and
22    see where we are, set the final briefing.
23              THE COURT:  Yeah, or a status report or something.
24              MS. LOUIS:  Mm-hmm.
25              THE COURT:  What do you --
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 63

```
 1            MR. LEE:  I think as -- as we found today, a
 2   status conference would be very valuable.  I mean, a report
 3   just underscores the disagreements.
 4            THE COURT:  Well, that's true.
 5            MS. REILLY:  Your Honor, just one further thing.
 6   Katie Reilly.  I'd like to leave open the possibility here of
 7   possible multiple motions for summary judgment.  If we do
 8   find a way to officially tee up the dispositive issues
 9   earlier rather than later, and let -- especially some of the
10   smaller ones who aren't fighting the wage and other claims,
11   we -- we're going to be very focused on doing so.  So if we
12   could leave that open.
13            THE COURT:  That's not going to be my call.
14   That's going to be Judge Arguello's call.  And I -- as I
15   recall, I'm not positive, but I do not think she's one of
16   them that says you only get one motion for summary judgment.
17            MS. REILLY:  That's my understanding as well, Your
18   Honor.
19            THE COURT:  Yeah.  Because I -- I think she
20   agrees -- and I -- you know, just incidentally, I do too,
21   that if you can get some legal issues out of the way it's
22   helpful.  So you don't want to drive people crazy with it,
23   but -- but still it's helpful.
24            MR. KELLY:  I'm sorry to interrupt.  Judge, this
25   is Bill Kelly.  I have USAuPair.  Would it be possible to
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 64

 1    schedule that status conference prior to the close of the

 2    merits and expert discovery following the certification?  The

 3    rationale being that the scope of certification is going to

 4    impact who the members are, potentially who the defendants

 5    certified or not certified are, how many plaintiffs we have

 6    on what claims.  And what discovery gets done in the face of

 7    that certification, which may or may not had been issued,

 8    which may or may not be up on appeal is, is kind of a

 9    guessing game at this point.  And so to -- to even enter --

10    and I understand the good cause standard, but I think that

11    kicks the can down the road and increases the burden on the

12    defendants because now we have an uphill battle of trying to

13    now convince the Court that the scheduling order that we

14    agreed to several years ago should be amended, whereas, I

15    think we're really kind of buying a pig in a poke with those

16    discovery cutoffs.

17            THE COURT:  So what are you suggesting?  When --

18    when would you --

19            MR. KELLY:  That the status conference occur prior

20    to the fact discovery cutoff and the expert discovery cutoff

21    that postdates the certification motion.

22            THE COURT:  So maybe somewhere -- somewhere in

23    that little Netherland between 4/7 and 4/17?

24            MR. KELLY:  I think the parties will be much

25    better informed about what remains to go forward and how much

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 65

 1  time it will take.

 2          THE COURT:  All right.  Everybody agree with that?

 3          MR. LEE:  It's fine.

 4          THE COURT:  I mean, we're not limited to one.  We

 5  can have as many as we want.  It's just costly, right, for

 6  you.  I'm here anyway.  But the more -- I don't want to

 7  schedule unnecessary.  It's kind of like business meetings,

 8  you know.  I don't want to schedule something that isn't

 9  necessary, but maybe that would be helpful.

10          MR. KELLY:  My experience is there's no scenario

11  where it will not be necessary following the certification

12  (indiscernible).

13          THE COURT:  Okay.  But the certification will just

14  be briefing.

15          MR. KELLY:  Correct.

16          THE COURT:  Okay.  So does everybody agree?  Maybe

17  a status conference there?

18          MR. LEE:  I do.  And just as a request, and maybe

19  the plaintiffs will agree as we discuss this area, if there's

20  any way you could stay away from Mondays so that those of us

21  who are out of town and have small children don't have to

22  travel on Sunday.

23          THE COURT:  Okay.  Midweek better for most people?

24          MR. LEE:  Much better for those of us who are out

25  of town, Your Honor.

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                                April 25, 2016

Page 66

```
 1              THE COURT:  Those that are in town, it probably
 2   doesn't matter too much, right?  And I don't like Fridays, so
 3   I'm not going to set you on a Friday.  So how about -- so how
 4   about the 11th, which is on a Tuesday?
 5              MS. LOUIS:  The 11th of what, Your Honor?
 6              THE COURT:  April.  You're supposed to have read
 7   my mind there.
 8              MS. LOUIS:  Yes, Your Honor.
 9              MR. LEE:  That -- if -- could we do it the
10   following week, Your Honor?  The only reason, the 11th is a
11   somewhat significant family Jewish holiday.
12              THE COURT:  Okay.
13              UNIDENTIFIED SPEAKER:  We're trying to do it
14   between the 7th -- the 1st and the 17th.
15              THE COURT:  How -- can you do it later that week?
16              MR. LEE:  Oh, yes.  I could do it -- I could do it
17   the 13th, I think.
18              THE COURT:  Okay.  How does the 13th look for
19   everybody?  Traveling -- traveling from the East Coast, is
20   an -- is an afternoon better so you can, like, leave in the
21   morning and get here?
22              MR. LEE:  No.
23              THE COURT:  It doesn't matter?
24              MR. LEE:  How about if we -- Your Honor, just to
25   stay away from that holiday, could we do it the 6th?  Is that
```

Johana Paola Beltran, et al. vs.                          Scheduling Conference
Interexchange, Inc., et al.                                        April 25, 2016

 1    still within that timeframe?

 2              MS. LOUIS:  Your Honor, that's the day before our

 3    reply is due.

 4              THE COURT:  Right.  So you'll probably be busy.

 5              MS. LOUIS:  Is that -- Jeff, is that Passover?

 6              MR. ALLEN:  Yeah.

 7              MS. LOUIS:  When is the first night?

 8              MR. ALLEN:  I'm trying to figure -- I think the

 9    first night is the 10th, and the second night would be the

10    11th.  So I think --

11              MS. LOUIS:  3rd -- I mean, I do Seder too, Jeff.

12    Is 13 okay?

13              MR. ALLEN:  I think Thursday works.  I think

14    Thursday.  I think so.  Yeah.  I think, you know, when you

15    load those cal -- holidays in, they come in 60 different

16    varieties.  But I think the 13th is fine.

17              THE COURT:  Okay.  Morning or afternoon?

18              MR. ALLEN:  I'll fly in the day before so it

19    doesn't matter.

20              THE COURT:  So it doesn't matter the day before.

21              MR. ALLEN:  Actually the morning is probably

22    better.

23              MS. LOUIS:  Yeah.  I agree.  Thank you.

24              THE COURT:  Okay.  So -- well, I like mornings

25    better, so let's do mornings then.  Let's say April 13 at

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 68

1  9:30.  I'm sorry.  Did I say 19th?  April 13 at 9:30.  April

2  13, 9:30 a.m. for a status conference.  And at that point

3  there will be no doubt some -- besides the class issues,

4  probably some -- some discovery motions.  So I think I'm

5  going to clear my calendar for the day.  And if there's

6  anything pending, we'll take it up.  So whatever is pending,

7  if it's briefed and all that, count on taking it up.  I mean,

8  I'll send you out an order to that effect anyway, but -- but

9  plan on being here that day.  And that -- even if you're here

10  all day, you could still go home on the 14th.  So -- or maybe

11  in the evening.  I -- traveling backwards is hard.

12            MR. ALLEN:  No.  That's perfect, Your Honor.

13  Thank you.  That's perfect.

14            THE COURT:  Okay.  So is there any reason -- I

15  can't think of any reason why we would want to have a status

16  conference before that, or even status reports because I

17  think as you have issues arise that will kind of take care of

18  it.  We'll be talking.  Now, just -- I don't think I was

19  clear on this.  The class action briefing on the Rule 23,

20  that's also the date for objections to the collective, or

21  not?  I mean, that's pretty far out.  But do you want to take

22  up the decertification?

23            UNIDENTIFIED SPEAKER:  That would be the -- the

24  same day the motion to decertify would occur?

25            THE COURT:  Yeah.  Is that acceptable?

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 69

 1                UNIDENTIFIED SPEAKER:  What -- I'm sorry.  What
 2    date are we talking about, Your Honor?
 3                THE COURT:  So we'd be talking about February 17.
 4    So the day of the opening brief for the class action motions
 5    would be the -- also the day to decertify the collective.
 6                UNIDENTIFIED SPEAKER:  I'm not sure we're even
 7    going to have the opt-ins in by then, Your Honor.
 8                THE COURT:  Okay.  That's too early?
 9                UNIDENTIFIED SPEAKER:  I mean, if the briefing
10    doesn't -- and for more or less the end of this year, then
11    there's going to be at the least 60 days and I anticipate
12    that maybe longer because of the international aspect of
13    this.  And then we're going to need some discovery time with
14    respect -- once we see what our opt-in class looks like.  So
15    I think it needs to be pushed back closer to the discovery
16    cutoff.  (Indiscernible).  It needs to be much later.  We
17    can't certify before we know what our class looks like.
18                MS. LOUIS:  No objection, Your Honor, to however
19    the defendants propose.
20                THE COURT:  So when do you -- when -- when would
21    you put it in?
22                UNIDENTIFIED SPEAKER:  Could I have just a moment,
23    Your Honor?
24                THE COURT:  Mm-hmm.
25                UNIDENTIFIED SPEAKER:  Does anybody else

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 70

1    (indiscernible) that way?

2            Your Honor, we would propose a deadline for

3    motions to decertify 60 days from the deadline for opt-ins.

4    So that would give us a chance to see what our class looks

5    like, 60 days for additional discovery, and the motion to

6    decertify.  But we don't know what date that is because we

7    obviously don't know, you know, exactly when orders will come

8    out and notices go out and those type of things.  But we

9    need -- you know, we need a fairly good period of time after

10   we know what our class looks like.  So we would -- that's

11   what we would propose.

12           MS. LOUIS:  Your Honor, I -- I submit that that

13   might not be an efficient way of -- of setting the deadline.

14   Currently four of the defendants here are named in FLSA

15   counts.  And the motion for conditional certification that I

16   alluded to at the beginning of the hearing is most likely

17   going to be limited to the four that are currently named.

18   But as I also alluded, we'll be moving to -- for leave to

19   amend the complaint and add additional defendants to FLSA

20   counts.  There may be --

21           THE COURT:  Plaintiffs?

22           MS. LOUIS:  Pardon?

23           THE COURT:  Additional plaintiffs?

24           MS. LOUIS:  Additional plaintiffs.  And the

25   additional plaintiffs are for the purp -- will -- will have

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 71

1    worked for defendants who are not currently named in any of

2    the FLSA counts.  That may necessitate more than one motion

3    for conditional certification and more than one notice and

4    opt-in period.  So unless the defendants -- I put that out

5    there so that the defendants know whether or not they want to

6    have a deadline that relates to each motion for conditional

7    certification or the -- each end of an opt-in period, or

8    whether they just want to have a deadline by which to

9    decertify, which I would think for efficiency you would want

10   to do one at the tail end once the classes were defined.

11          THE COURT:  So like 30 days or 45 days or 60 days

12   past the last opt-in, close at the last FLSA opt-in period?

13          MS. LOUIS:  Yes.  That -- that, Your Honor, yes, I

14   think would be appropriate.

15          MR. ALLEN:  Yeah.

16          UNIDENTIFIED SPEAKER:  I'm sorry, Your Honor.

17          MR. ALLEN:  Why not just make it 45 days after the

18   last opt-in?

19          UNIDENTIFIED SPEAKER:  Your Honor, while

20   they're -- while they're huddling, one of the things that we

21   have -- deadlines we haven't talked about that's probably

22   tied to this is the deadline for joinder of parties and

23   amendment of pleadings.

24          THE COURT:  Right.

25          UNIDENTIFIED SPEAKER:  And so I think if we set

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 72

1   that date -- we had proposed June 20th, 2016, which is in

2   advance of the deadline for the -- for filing conditional

3   settle -- class certification.  I think that's a date that

4   maybe takes care of some of this and puts some -- puts some

5   organization to this discussion we're having right now.

6           UNIDENTIFIED SPEAKER:  I mean, our -- our

7   understanding, Your Honor, that we'd already set a deadline

8   for the motion for conditional certification, and maybe I'm

9   misunderstanding, but I'm hearing they now may be different.

10          THE COURT:  Well, we set -- we set a last date,

11  right --

12          UNIDENTIFIED SPEAKER:  Right.

13          THE COURT:  -- with the understanding here in open

14  court that they're probably going to file something sooner

15  rather than later, so --

16          UNIDENTIFIED SPEAKER:  So my concern is that the

17  (indiscernible) party who is subject to a collective action

18  class has sufficient time after the notice period ends to do

19  the discovery without a motion.  So our proposal is 60 days.

20  It could be structured however it needs to be structured if

21  there's different deadlines for different parties.

22          THE COURT:  Okay.  So let's say -- let's say

23  60 days after the close of the last opt-in period is the time

24  for all motions for decertification --

25          MR. ALLEN:  Just so --

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 73

1          THE COURT:  -- of the collective.

2          MR. ALLEN:  -- so if there are two different

3    dates, it runs from the later of the two --

4          THE COURT:  Right.

5          MR. ALLEN:  -- for all decertification.

6          THE COURT:  For everybody.  That just keeps it

7    simpler, I think.

8          MR. ALLEN:  That's -- that's fine as long as I

9    understood it.

10          UNIDENTIFIED SPEAKER:  And --

11          THE COURT:  No.  I -- I really don't like doing

12    that because I have no way of keeping track of something that

13    goes 60 days after something.  There's nothing I can plug in

14    to our system here that gives me a date.  So that's going to

15    be on you to know that date.

16          UNIDENTIFIED SPEAKER:  The calendar may take care

17    of some of this, but will we get some sort of indication from

18    plaintiffs' counsel that there's a second wave of conditional

19    groupings coming through, or a third wave?  Because if

20    we're -- if we're -- if it's all tied to the last one, we'll

21    want to know if they're coming or not.

22          MS. LOUIS:  Your Honor, I mean, we're -- it's not

23    in our interest to -- to keep you in the dark.  To the extent

24    that we're able to do that, I just -- as I alluded before,

25    some of this is hypothetical.  So to the extent that we know

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 74

```
 1   it -- and we want to keep the Court's schedule on track.  So
 2   we're going to be as up-front as we can about what's coming
 3   down the pike.  It's not just to our interest to surprise you
 4   or have you think that you've got a decertification motion
 5   that is due when -- you know, there's not going to be a
 6   gotcha behind it.  I don't -- I don't know what the waves are
 7   going to be yet, but it's something that we'll be up-front
 8   and transparent about.
 9           THE COURT:  All right.  And how about the -- the
10   deadline for joinder of parties and amendment of pleadings?
11   With the exception of --
12           MS. LOUIS:  Opt-ins.
13           THE COURT:  -- the class things.  But --
14           MS. LOUIS:  You --
15           THE COURT:  -- when should that be?
16           MS. LOUIS:  -- we had proposed, Your Honor, that
17   it be tied to the discovery responses which are due in --
18   like I said, about next week.  So our proposal was about
19   August 16th.  The deadline for the motion for conditional
20   certification is the 15th.  So we'll be moving for leave to
21   amend, you know, before that.  Give us -- you know, I don't,
22   unfortunately, have a calendar to look at the days of the
23   week there, but I would -- it's -- it would be before the
24   motion for conditional certification.
25           THE COURT:  Okay.  And why --
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 75

```
 1              MS. LOUIS:  The defendants said -- suggested a
 2    date that's June 20th, but particularly if we're not looking
 3    to get fulsome discovery that reveals the name of our class
 4    members before then, or at least not meaningfully before
 5    then, then we're not going to be in a position to -- to
 6    amend -- to add all parties before that date.
 7              THE COURT:  So that seems like a reasonable date
 8    to me, August 15th.
 9              UNIDENTIFIED SPEAKER:  August 15th.  Sure.
10              THE COURT:  Yeah.  Okay.  So joinder -- joinder of
11    parties and amendment of pleadings date will be -- what did
12    we say?  August 15 of 2016.
13              Now, I don't think that we fully decided on the
14    numbers of any -- any restrictions on numbers.  Did we go
15    over all that, the numbers of depositions?  I didn't think
16    so.  Okay.  So it does seem to me to be easier, frankly, just
17    easier for everyone if we just give a number per side.  Do
18    you think 60 is something you can live with?  I don't like
19    the phrasing of defendants because it was way too open-ended
20    for me because it said, Defendants ultimately reserve the
21    right to take the deposition of any named plaintiff or any
22    individual who is a class member.  So that could be like, you
23    know, thousands.
24              UNIDENTIFIED SPEAKER:  Yeah.  I mean, none --
25    nobody wants to take thousands of depositions.
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 76

```
 1            THE COURT:  Right.
 2            UNIDENTIFIED SPEAKER:  But, again, if we take 60,
 3    divide it up amongst 15 defendants, that's four depositions
 4    for, you know, officials, for entity representatives, plus
 5    all of our classes and collective action classes.  And it's
 6    impractical to try to defend a class action with elective
 7    certification if we have a sum total of four depositions,
 8    including all of the putative class members.  We need to be
 9    able to have a much larger sample out of the class than we
10    would get with those, you know, four depositions.
11            THE COURT:  But isn't it -- isn't it the case that
12    all of you are -- I'm not saying everybody will be identical
13    because certainly they won't be, but -- but they're going --
14    that problem is more on plaintiffs trying to figure out the
15    differences between you than it will be on you.  Like if
16    there's -- if there's a few people in the state department,
17    you all care about the same people, right?  The same people
18    that are administering the -- are the same positions at
19    least.
20            UNIDENTIFIED SPEAKER:  Well, I think in large part
21    if we're talking about witnesses who are not host families,
22    are not au pairs, we can share a large number of those
23    witnesses.
24            THE COURT:  Right.
25            UNIDENTIFIED SPEAKER:  But when we get into our
```

Johana Paola Beltran, et al. vs.                          Scheduling Conference
Interexchange, Inc., et al.                                      April 25, 2016

1    individual classes, that is not going to help any other

2    entity -- agency except mine because they're our au pairs,

3    our host families, our policies, our procedures, our

4    practices.  And, you know, even if we have all four of our

5    depositions (indiscernible) to the au pairs and the host

6    families when we're talking about thousands of putative class

7    members, that's not an adequate representation for us to

8    defend this case.

9              THE COURT:  So how many are you thinking?

10             UNIDENTIFIED SPEAKER:  Give me just a minute, Your

11   Honor.

12             THE COURT:  Okay.

13             UNIDENTIFIED SPEAKER:  I'd go seven per side.

14             MR. LEE:  Seven per defendant.

15             UNIDENTIFIED SPEAKER:  Seven per defendant.

16             MR. LEE:  Well, what I was saying is five per

17   defendant, and then 10 in general, like the state department,

18   like they're (indiscernible).  Why don't we just do -- didn't

19   you hear what she said?

20             We're not getting along right now, Your Honor.

21             THE COURT:  There's no fisticuffs in the

22   courtroom, please.

23             MR. LEE:  See, we don't always get along, Your

24   Honor.  It's not that easy.

25             UNIDENTIFIED SPEAKER:  Now you see why we need the

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 78

1    extra couple of days.

2              UNIDENTIFIED SPEAKER:  I apologize, Your Honor.

3    Our proposal is 10 percent of the class, the opt-in class

4    (indiscernible).  It's hard to put a number on it because we

5    don't know how many opt-ins we're going to end up with.  If

6    we say four, five, six, there's just -- I'm sorry, it's just

7    too small a number from our view.  If we take 10 percent,

8    that gives us an amount that adjusts based on how big our

9    class is (indiscernible).  So that would be my

10   recommendation.

11             UNIDENTIFIED SPEAKER:  And I --

12             UNIDENTIFIED SPEAKER:  And just to clarify, I

13   believe that that will be -- that would be with respect to

14   the defendants who are defending against the additional

15   claims.  So right now there are four, right?  So that's not

16   -- (indiscernible) be 11 or defending only against the

17   (indiscernible).

18             UNIDENTIFIED SPEAKER:  For now.

19             UNIDENTIFIED SPEAKER:  For now.  But

20   (indiscernible) want to get out of it, that (indiscernible).

21             MR. LEE:  And one of the reasons why it's

22   necessary to do this this way, Your Honor, is this isn't a

23   traditional wage claim.  A lot of the information that is

24   important for the wage claim we don't have.  We're not --

25   whether an employer or not, I'll leave to another day.  But

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 79

 1   even -- we don't have, for instance, hours worked.  Most of

 2   the defendants don't have a clue.  That's between the host

 3   family and the au pair.  So that we have more of a need for

 4   discovery of the class members than we would have in a normal

 5   wage case because we didn't pay the wages.  We're not the

 6   wage payer.  So that we're in the dark about as much as the

 7   plaintiffs, maybe less -- more than the plaintiffs because I

 8   assume they'll be talking to their clients.  We'll be --

 9   we'll -- we need to have the discovery to find those basic

10   facts out upon which their wage claim basis.

11           MS. LOUIS:  I don't want to be rude.  Is it my

12   turn?

13           Your Honor, a couple of points in response.  The

14   first is a concern that I'm already starting to hear the

15   tactic of trying to pick off opt-in plaintiffs by subjecting

16   each to a seven-hour deposition.

17           UNIDENTIFIED SPEAKER:  (Indiscernible.)

18           MS. LOUIS:  Well, right.  Exactly.  I'm sorry.

19   The defendants have actually asked for a 14-hour deposition

20   limit with respect to any party that may need -- any

21   plaintiff that may need an interpreter.  Your Honor, a couple

22   of things.  There is overwhelmingly, or so I am told,

23   contracts as between these defendants and their host families

24   and the au pairs.  So that does inform, first of all, a first

25   layer of what the au pair contracted to work for per week and

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 80

1  how many hours they contracted to work.  This type of

2  discovery that they're referring to in terms of the number of

3  hours and how much they were paid is also appropriate to the

4  extent that we're going to need it for damages and any --

5  anything that's turned over is appropriate on a first level

6  in paper discovery.  These can be answered in interrogatories

7  and requests for production.  Now, I don't -- I don't mean to

8  suggest that they are limited to picking and choosing.  They

9  can take the depositions.  But, again, I think it is

10  concerning that we're already talking about taking all of the

11  opt-in plaintiffs' depositions to find out how many hours

12  that they worked, and whether or not that they were

13  representative of the class structure, when, you know, to get

14  just for a moment into the merits of this case, Your Honor,

15  it's been defended not on the basis that it doesn't happen,

16  but that it's not their responsibility and that it's not a

17  violation of the law.  So to set the number of depositions to

18  be tied to the number of opt-ins, again, I think is designed

19  to both discourage and pick off opt-ins unnecessary.  And to

20  the extent -- I know the defense doesn't like hearing this,

21  but to the extent that additional depositions are needed down

22  the road should 60 depositions be exhausted and they're

23  finding that they're not getting an adequate -- or they're

24  finding that there are unsimilarly situated plaintiffs that

25  need additional depositions, that's the moment to come back

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 81

1    to the court and explain why.  But these -- these people are

2    so similarly situated it's -- it's almost an unusual case

3    from that perspective.  So I don't have a practical

4    disagreement with a large number of depositions.  We were the

5    side that advanced 60.  But we'd oppose an open-ended number

6    of depositions that is tied to the number of plaintiff

7    opt-ins.  We're also, I think, Your Honor, not imposing a

8    limit.  We've got four FLSA defendants now.  So I think that

9    we're hearing that they're asking the Court to parse out this

10   four, get this many depositions, and the rest of the

11   defendants get more.  I'm not sure, but I think that's what

12   was just suggested.  And then as soon as we move to amend --

13   and I'd hate to think that that would also be a consideration

14   for the Court to then weigh against a motion for leave to

15   amend a complaint that now all this is going to be more

16   open-ended discovery for more additional defendants, I just

17   think that it's untenable.

18             MR. LEE:  Your Honor -- I didn't mean to interrupt

19   you.  I'm sorry.  I think that underscores why.  We -- we as

20   au pair agency sponsors, we don't have any -- I'm speaking

21   for Cultural Care.  We don't have contracts for the au pairs.

22   And so I don't think you envision what's going on here.  And

23   the only contracts we have with the host family simply recite

24   the maximum set forth by the federal regulations.  An au pair

25   can't work more than 45 hours a week.  That doesn't mean that

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 82

1  she works or he works 45 hours a week.  Some work 30.  Some

2  work 20.  Some have a couple of weeks where they work zero.

3  So we know that anecdotally, but we don't -- we don't have

4  that information, and we don't have contracts with these au

5  pairs.  So we need this discovery.  And it's not our fault --

6  you know, there are four of us that -- they brought a federal

7  wage claim act against us.  So we -- the fact that it's not

8  against everybody isn't our fault, but we have to defend

9  ourselves.  I think that's, frankly, as I look at this case,

10  it's that claim that's the most substantial and the most

11  troubling and needs the most defense.  So we're not trying to

12  opt anybody out, but if they're -- if they're bringing a

13  claim and they're a named -- a member of the opt-in, then we

14  have a right to discover of them, at least a percentage

15  number.  I think -- I think our request is rather minimum

16  given the exposure.

17              UNIDENTIFIED SPEAKER:  And one more thing, Your

18  Honor, if I may.  They've got state law claims for wages and

19  fraud under all 50 state (indiscernible).  So what one au

20  pair's experience is in California is going to mean nothing

21  with respect to what one au pair's experience might be in a

22  state that has different wage laws.  So that just to me

23  reemphasizes that we need to have the tools to discover all

24  of the various factual issues that are going to be in play

25  here.  And they are immense, not only because of the number

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 83

1   of potential witnesses that we have, but because of the

2   breadth of the claims that they filed.

3          UNIDENTIFIED SPEAKER:  Let me see if I can put

4   some framework on this, Your Honor.  How about if we -- if

5   the defendants proposed 20 fact witness depositions, plus 10

6   percent of the opt-in class?  And I think that will get us

7   down the road a ways.  And I do think 10 percent of the

8   opt-in class is a very small percentage of the class.

9   That's -- that's a ceiling number that we're asking for.  And

10  if we have to come back, we have to come back.  But I think

11  that what we're talking about is fair in light of the risk of

12  exposure and the breadth of the states that we're looking at.

13  And -- I understand, again, merits.  I don't want to get into

14  it.  Every situation is going to be different.  You've got 15

15  different agencies here.  You've got limited amounts of

16  families here that are in this class.  And they all -- in

17  some respects they act the same, in every respect they act

18  differently towards their au pair, so every experience is

19  different, so --

20          THE COURT:  So what do you mean by "20"?

21          UNIDENTIFIED SPEAKER:  Well, department of state.

22          THE COURT:  So 20 for everybody to share?

23          UNIDENTIFIED SPEAKER:  Right.  I think we could do

24  those types of depositions within 20, and then take 10

25  percent of the opt-ins.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 84

```
 1            MS. LOUIS:  Your Honor, may I just tell you in
 2   terms of what that number could mean?  Cultural Care has said
 3   that it has 55,000 au pair.  We're talking about almost 2,000
 4   depositions then.
 5            MR. LEE:  That's if they all --
 6            THE COURT:  Well, assuming, Your Honor, that about
 7   a third opt-in, that would be almost --
 8            MR. LEE:  Well, wait a minute.
 9            MS. LOUIS:  -- two --
10            MR. LEE:  I'm not sure -- respectfully, I'm not
11   sure -- from our general alumni mail, the addresses we have
12   are probably good for about 50 percent.  The last known
13   addresses are probably good for about, I would say, about
14   50 percent is our guesstimate.  Because if we had an au pair
15   from 2009, 2010, we have no further contact with that person.
16   The only address we have is the address from 2 -- actually
17   from 2008, the year before they came.  So even if I gave you
18   55,000 addresses, I don't think you're going to find 55,000
19   au pairs, thankfully.
20            THE COURT:  So how about -- how about something
21   like this:  What I'm thinking of is 20 depositions.  And then
22   I need to parse this with the plaintiffs too.  But if I gave
23   you 20 depositions to share, and just say that's for your
24   side, use them however you want, but I -- my anticipation is
25   you'll have used them for people that all of you have an
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 85

1   interest in and care about.  And then if I gave you five

2   each, I understand that for some of you five is not very

3   many.  For some of you five is probably more than you need.

4   And then we talk about it because five each is 75.  So that's

5   a total of 95 depositions for your side of the case.  And

6   that's a lot of depositions.  And I agree with plaintiffs

7   that I don't foresee allowing you to take depositions of all

8   these opt-ins and scare the crap out of them and make them

9   stop participating.  That's not good.  I don't like that.

10          MR. LEE:  I -- that certainly isn't our intent.

11  But here's my problem, Your Honor:  Five each.  If one

12  defendant has 50 au pairs a year, and has, over that seven

13  years, 3500 -- they probably weren't -- they got up to 50

14  each.  If they have 2,000 au pairs in the nine -- in the

15  seven-year period, and I have 55,000 au pairs in that

16  seven-year period, I'm sort of getting prejudiced because

17  I'm -- I'm limited to the same five that a smaller defendant

18  is limited to.

19          THE COURT:  Right.

20          MR. LEE:  And although we work collectively, I

21  think that that -- five may be right for some defendants.  I

22  think for some of the medium to larger, it's -- it's

23  inadequate, respectfully.

24          THE COURT:  But I just don't see how you're going

25  to have -- you know, as a practical reality to try the case

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 86

1  under an accelerated schedule like we have I think now, more
2  or less, or a really slow one, and it takes five years to try
3  it, it's still a lot of depositions.  And most of this is not
4  going to be done with depositions.  You may have to have,
5  depending on how many people you have, some kind of sampling
6  questionnaire or something that goes out.  I mean, you're
7  going to have to do this other than depositions.  And the
8  only other choice I have is to give you the same number, it
9  would be 95, to share however you want.  You know, I just
10 think -- I just can't imagine because I'm not going to
11 deprive the plaintiff of their right to have that many too.
12         MR. LEE:  No.
13         THE COURT:  That's 200 depositions in this case.
14 I mean, I suppose it's possible, but --
15         MR. LEE:  That's the case they brought, Your
16 Honor.
17         THE COURT:  Yeah.  I understand.
18         MR. LEE:  And I understand your concern, but I
19 also understand the concern that they're looking for 400,
20 what, million a year.  And -- and I'd like somebody to be
21 standing at the end of this case, hopefully.  I mean, really,
22 I'm not sure how else to approach it because we have to be
23 able to defend the case.  To say that we're scaring them
24 away, we're not scaring them away.  They're scaring us away.
25 I mean, this is a case that's sending shock waves 50 states,

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 87

 1   a couple of hundred -- you know, a couple thousand host

 2   families.  We need to be able to defend this case.

 3              THE COURT:  Well, I understand, but you -- but you

 4   also have to be able to position it for trial somehow or

 5   another.  You know, we've got to get it somehow corralled,

 6   and the way of doing that might be some kind of questionnaire

 7   type things.  I mean, the way I'm looking at this, and I --

 8   this may be wrong from your perspective, but is, yes, these

 9   opt-ins are going to become clients of the plaintiffs, but

10   right now they're your people.  They're your people.  You

11   placed them, right?  You got the host families.  So -- so go

12   get them, talk to them.  You know, I mean, I -- I know that's

13   easier said than done, but we can't -- you can't depose all

14   of them.

15              MR. LEE:  And I'm --

16              THE COURT:  So you're going to have to figure out

17   some other way to do this.

18              MR. LEE:  I hear what Your Honor is saying, and

19   I'm trying to think of -- maybe what we say is 20 general

20   depositions, 20 general depositions.  Isn't that what you

21   said, Tom, 20 general depositions?

22              MR. QUINN:  Yes.

23              MR. LEE:  And 75 opt-ins.  And -- and -- and with

24   the understanding in open court that we may come back for

25   good cause and say, That's inadequate because we -- no, it

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 88

 1  doesn't cover host families.

 2          THE COURT:  Right.

 3          MR. ALLEN:  Right.  I mean --

 4          THE COURT:  I mean, you need depositions of a

 5  variety of people to get some feel for things, or you need

 6  some way to do it, but I don't -- I'm not sure depositions is

 7  the way to do it in this case.

 8          MR. ALLEN:  But dealing -- dealing with a foreign

 9  citizen that I'm not sure -- I'm not even sure how we're

10  going to get these depositions, frankly.

11          THE COURT:  Right.

12          MR. ALLEN:  I mean, if they're plaintiffs, I guess

13  they have to produce them for depositions.  But host

14  families, I don't -- I'm not sure the host families have

15  anything to do with this other than lending some evidence

16  on -- on the payment of wages.  I'm inclined -- right now my

17  view is I'm staying away from the host families until I see

18  more of the -- it's a can of worms I'm not ready to open.

19          THE COURT:  So what do you think of something tied

20  to the number of defendants or just an overall big number?

21          MS. LOUIS:  Your Honor, I preferred the Court's

22  suggestion.  I thought it was more fair that it was 25 for

23  the group and five for each individual defendant to pick and

24  choose how they wanted to use.  But -- but I've just

25  forgotten the second point I wanted to make to the Court, and

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 89

```
 1    I apologize for that.
 2              THE COURT:  Well, it does -- it does --
 3              MS. LOUIS:  I'm sorry.  I swear there was
 4    something.
 5              THE COURT:  -- disadvantage the larger --
 6              MS. LOUIS:  Oh, no.  I'm sorry.  That was exactly
 7    it, Your Honor.  So we've heard that they're going to be
 8    prejudiced.  They're going to be prejudiced.  But I don't --
 9    we haven't heard at all how they're going to be prejudiced
10    other than it's a simple matter of their size.  And I'm
11    having trouble piecing out exactly what the argument is
12    because we're being told by the larger defendants that the
13    smaller ones can't afford to defend it, but the larger
14    ones --
15              MR. ALLEN:  Well --
16              MS. LOUIS:  -- want to have more depositions.  I
17    think that the Court's suggestion was the appropriate one.
18    If some of the smaller defendants -- they might not have any
19    opt-ins they need to depose because they're never named as
20    FLSA defendants, in which case should Cultural Care absorb
21    their five extra depositions?  It is not the most important
22    thing to me today, Your Honor, to win on, but I just don't --
23    I don't see the -- I don't see the prejudice argument that is
24    purportedly being made, however, they -- they can get the
25    information through a request for production.  They can get
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 90

1   the information through an interrogatory.  I don't see why

2   seven hours -- or 14 hours of deposition testimony for an au

3   pair to reiterate what could have been processed in a single

4   page document that says what she or he worked is appropriate

5   for us to worry about yet.  It hasn't happened, and I just

6   don't see the prejudice.

7           MR. ALLEN:  I --

8           THE COURT:  What -- what about -- what about this:

9   What about a number now so that you have plenty to get

10   started and do the people at state and all these other people

11   that I think you may need.  And we come back and talk about

12   how we're going to handle the opt-in class once we see it.

13   And then we'll know whether or not any of the other agencies

14   are going to care.  Right?  Right now there's only four of

15   you, but if there's a bunch of people that opt in from the

16   others, there's going to be more, and talk about those once

17   we see who they are.

18           MR. ALLEN:  And then we'll know what percentage I

19   have.  I have no problem.  I think Your Honor -- that

20   suggestion makes incredible sense.  I will say this:  I can't

21   imagine, and I know some of my other defendants are getting

22   nervous now, but I can't imagine deposing an au pair for

23   seven hours -- for four -- if I come up with four hours worth

24   of questions, that's a lot.  I mean --

25           UNIDENTIFIED SPEAKER:  Mr. Allen is limited to 15.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 91

```
 1   (Indiscernible).

 2             THE COURT:  There you go.

 3             UNIDENTIFIED SPEAKER:  I think the only other

 4   thing that we want to raise now that -- when we come back and

 5   talk to Your Honor about depositions would be the supporting

 6   declarants for the Rule 23 or conditional class

 7   certifications.  Those persons may be someone that wouldn't

 8   have been on our radar to start with and may raise the

 9   profile where we might need to take their depositions, but

10   that's something we can deal with perhaps down the road.

11             THE COURT:  Right.  So rather than trying to

12   anticipate everything.  So what I'm thinking about is maybe

13   doing 25 per side, not counting 30(b)(6).  What do you think?

14   Because everybody -- everybody is going to want to take a

15   corporate representative, right?  I mean, plaintiffs are

16   going to want to take them of the 15.  You only have -- well,

17   I guess you -- and you -- and the plaintiffs.

18             UNIDENTIFIED SPEAKER:  Your Honor, I believe that

19   the 30(b)(6) that plaintiffs would want to take would all be

20   encompassed in their 25.

21             THE COURT:  In -- okay.  Is that --

22             UNIDENTIFIED SPEAKER:  (Indiscernible).

23             THE COURT:  That's most of yours, right?

24             MS. LOUIS:  No, Your Honor.  No, not necessarily

25   at all.  I understood the Court's suggestion, and if I'm
```

Johana Paola Beltran, et al. vs.                    Scheduling Conference
Interexchange, Inc., et al.                                April 25, 2016

Page 92

1    right we agree with it, that each side has 25, plus its named

2    parties essentially.  So that would be our named plaintiffs,

3    their 30(b)(6).

4                 THE COURT:  Right.

5                 MS. LOUIS:  And if that's the Court's proposal, we

6    agree with it.

7                 THE COURT:  And that -- that would change if

8    there's more named parties, right?  Obviously your number

9    goes up if the -- if the complaint is amended.  But just to

10   start with, just to start with, and then let's talk about it.

11   Let's -- let's have a proposal on how -- how we're going to

12   handle what might be a really significant number or might

13   not, but I think it's likely it is.

14                MR. ALLEN:  As long as -- as long as we're clear

15   that we are going forward on that with the clear

16   understanding that we still have to come up with some way to

17   deal with the opt-ins.

18                THE COURT:  I -- I think the -- I think the

19   plaintiffs do also.

20                MR. ALLEN:  Okay.

21                THE COURT:  Right?  I mean, I think everybody

22   needs to deal with -- with what -- are you going to do a

23   percentage method?  I'm sure you thought about these things,

24   and I'm not asking you to comment now, but -- but there's got

25   to be a way to -- if you're going to have a class action,

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 93

1    where you can put the people together, you know.  We can't --
2    we can't bring in every host family and say, Give us all your
3    records.  Well, maybe you can, but 55,000 seems like a lot of
4    records.  And that's just one agency.  So I think we have to
5    be thinking about that.  And some depositions obviously are
6    going to be appropriate, but this gets you started, gets us
7    down the road.  And, you know, I don't mean to suggest that
8    we just punt, but let's talk from a position of a little more
9    knowledge.  How about that?  Okay.  So 25 per side, just kind
10   of blanket, plus any named party.
11          MS. LOUIS:  Agreed, Your Honor.
12          THE COURT:  Okay.  I'm seeing shaking or nodding
13   heads.
14          UNIDENTIFIED SPEAKER:  Yes.
15          THE COURT:  Okay.  That's all right.  All right.
16   Now, how about the written discovery?  How do you want to
17   limit that, or do you?
18          MS. LOUIS:  Your Honor, before we move off of
19   depositions, the -- the defendants had sought leave to
20   essentially double the deposition time to 14 hours should
21   there be an interpreter.  The Court hasn't mentioned it, so
22   if it's not part of your scheduling order, I assume that the
23   regular rules would apply and it would be seven hours.  But I
24   wanted to raise it because we do oppose that.  So if it is
25   going to be part of the scheduling order that they are

Johana Paola Beltran, et al. vs.                    Scheduling Conference
Interexchange, Inc., et al.                                 April 25, 2016

Page 94

 1   allowed to take more than a seven-hour deposition of any

 2   named representative, I wanted to bring it to the Court's

 3   attention.

 4            THE COURT:  Okay.  I'm going to limit you to seven

 5   hours at this point.  If you need more, though, because

 6   someone truly doesn't speak English, I'm -- I'm envisioning

 7   this, the group that we're talking about now, most people

 8   probably will because it's the heads of the various agencies.

 9   I don't -- I don't know.  Do all the -- all of your named

10   parties, do they speak English, your named plaintiffs?

11            MS. LOUIS:  The -- the current five --

12            THE COURT:  The current five, yeah.

13            MS. LOUIS:  -- have English.  Yes, Your Honor.

14            THE COURT:  So -- so let's not -- let's not bite

15   off more -- if one of them doesn't, then I would look to the

16   attorneys here to try to compromise because that's exactly

17   what I'm going to do.  You know, if you want more, I'm

18   probably going to give more, but it's going to be -- not

19   going to be a whole nother day, you know.  So if you really

20   think you need 10 hours because of somebody's language, you

21   know, compromise on that.

22            MS. LOUIS:  Your Honor, I just want to clarify.  I

23   mean, for a lot of our au pair, English is their second

24   language, and so we are likely to at least offer the

25   accommodation of an interpreter.  I just wanted to clarify so

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 95

1   it doesn't appear that I'm misleading anybody that they're

2   all perfectly fluent in English.

3          THE COURT:  Yeah.  I mean, this is a lawsuit so I

4   think it's important that if people need interpreter skills,

5   they get them, but on the other hand, it's also a lawsuit

6   about people that came over here speaking English, didn't

7   they?  I mean, that was part of it.

8          MR. ALLEN:  They -- they all pass in English

9   proficiency tests.

10          THE COURT:  Right.  So use -- use your money

11  however you want, if you want to hire interpreters, but I'm

12  not going to -- if -- if it's -- the way they interpret for

13  me when I have to do things in court is, they're talking in

14  earphones to the people while I'm speaking.  And so that

15  doesn't take any extra time, much.  I mean, it does take a

16  little bit of extra time, but not much.

17          So onto written discovery.  The presumptive number

18  of interrogatories is 25.  Now, what that means in this case

19  is a whole nother thing.  And I don't think there is a

20  presumptive number on requests for production of documents

21  and requests for admissions.  And this might be one case

22  where I'd be inclined to say, I just don't put any on those,

23  but that's burdensome, no question about it, but it's going

24  to be burdensome anyway.  So tell me what you think.  What do

25  you really -- do you want me to put a limit on production and

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 96

 1    admissions or not?

 2            UNIDENTIFIED SPEAKER:  This is dangerous.  I'm not

 3    talking to anyone else.  But I think if we just start with

 4    the presumptive limit of interrogatories at this phase like

 5    we're talk -- you're talking about coming back and talking to

 6    discovery of the class reps down the road or the opt-ins down

 7    the road, perhaps we can come -- we can cross that bridge

 8    when we get to it as well.  And there may be something like

 9    an agreed-upon questionnaire for class members or something

10    like that.  I throw that out there.  We're not at that point

11    yet, but I think we can hold off on making -- just go

12    presumptive limit at this stage until we meet again.

13            THE COURT:  Okay.  And are you thinking per party?

14    That's -- I mean, that's a lot because you've got, what -- is

15    there -- are there five plaintiffs now?

16            MS. LOUIS:  Yes, Your Honor.

17            UNIDENTIFIED SPEAKER:  Yes.

18            THE COURT:  Okay.  So is it 25 per plaintiff, for

19    instance?

20            UNIDENTIFIED SPEAKER:  Yes.

21            THE COURT:  And then plaintiff gets to send 25 to

22    each of the 15?

23            MS. LOUIS:  I'm just trying -- we -- we've --

24    we've sent the initial discovery, Your Honor.  We had four

25    interrogatories, and we sent those identical four to all 15

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 97

```
 1   defendants.  So I'm trying to parse out from the Court's
 2   perspective whether that counts as four or that counts as 60.
 3              THE COURT:  That counts as four, right?
 4              MS. LOUIS:  Okay.
 5              MR. ALLEN:  Well --
 6              MS. LOUIS:  Because it's -- it's identical
 7   questions.
 8              THE COURT:  Because you would -- you would have 25
 9   to each.
10              MS. LOUIS:  Okay.
11              THE COURT:  Okay.  Right?
12              MR. ALLEN:  The question in this case, I think,
13   frankly, is not going to be the number of discovery --
14   interrogatories or the number of requests or the relevancy in
15   the scope of what they're asking.  And -- and, you know --
16              THE COURT:  That's a different issue?
17              MR. ALLEN:  That's a whole different issue.  And
18   we're not prepared to address that, and you don't have
19   anything before you.  But the -- sticking to 25 per -- for
20   plaintiff, for defendant, that's presumptive.  Let's -- let's
21   not argue over it.  I know everybody disagrees with me, but
22   let -- just -- that's what the law provides.  Let's just do
23   it.
24              THE COURT:  Okay.  So the only thing that I will
25   caution all of you on is there -- since there's -- there's
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 98

1   five plaintiffs, not every defendant probably cares about

2   those five, right?  So you're going to get a lot.  I mean,

3   you're going to get 15 times 25 interrogatories under this

4   scenario.  That's what you get that you have to respond to.

5           MS. LOUIS:  But likewise, Your Honor, we have five

6   plaintiffs, so we'll have five times the 25 --

7           THE COURT:  Right.

8           MS. LOUIS:  -- to propound on the other side.

9           THE COURT:  Right.  That's -- that's an awful lot.

10  So I really -- whatever you can consolidate, I would say you

11  might want to think about coming up with an agreement among

12  yourselves.  For instance, you -- you sent four to each.  If

13  it goes to everybody, then, maybe make that one, right?  Like

14  maybe have some -- some that are collective.  Like there --

15  you have -- and I could order that if you want, that you get

16  X number that go to everybody.  Right?  And they don't --

17  they don't count as separate little things that you have to

18  ask them because they're all individual companies.  Likewise,

19  your five, probably there's some things that are all similar

20  that all of you would want to ask.  I don't know.

21          UNIDENTIFIED SPEAKER:  I'm doing the math in my

22  head.  So they -- I just think allowing the plaintiffs to

23  have 425 interrogatories, interrogatory requests, is just too

24  much.  It's a lot.  And I get that maybe they don't want to

25  go through all of them, but that seems -- that just seems to

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 99

 1  be way too many.  So is there -- is there -- and I like -- I
 2  think you're headed towards a -- is there sort of a common
 3  questionnaire or common -- a global interrogatory that can
 4  be -- is adequate for everyone?  And then a number that might
 5  go on an individual plaintiff that was employed by an
 6  individual au pair agency.
 7          THE COURT:  Right.  That's what I was thinking is,
 8  like, have a certain -- whatever the number is, a certain
 9  number that plaintiffs can issue that go to -- get -- go to
10  everybody, and then a certain number that defendants can
11  issue.  And it would be the same number, just for -- to keep
12  it equal, that would go to every plaintiff.  Is there such a
13  thing though?  Are the plaintiffs that much the same?
14          MS. LOUIS:  I don't -- I can't -- at this point
15  I'm not sure what questions are going to come in our
16  interrogatories other than hours you worked and what were you
17  paid.  I'm having trouble imagining how to put the -- that
18  order into effect and how to keep track of which
19  interrogatories were supposed to be global and which ones are
20  supposed to be unique.  I'm just --
21          THE COURT:  Right.
22          MS. LOUIS:  -- I'm just thinking it through, Your
23  Honor, and I'm just not sure how it's going to work.
24          UNIDENTIFIED SPEAKER:  Yeah.  I have -- I have --
25  maybe this is how we do it.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 100

 1            MS. LOUIS:  Okay.

 2            UNIDENTIFIED SPEAKER:  Instead of more

 3    interrogatories are issued or directed by any party, we --

 4    the two parties get together and we try and see if we can

 5    come up with some global ones that match within a number that

 6    work and within a -- you know, both globally and then

 7    individually.  So we have -- we have a preset -- it's almost

 8    like a questionnaire type of thing, whatever it may be.  And

 9    those are exchanged and they're agreed upon.  If we can't get

10    to that within the next two weeks, then -- then I think we --

11    I hate to come back here, but we call you on the phone and

12    say, Here's the progress we did make.  Here's the progress we

13    didn't.  Can you help us?  But I think this is the type of

14    thing we can flesh out between us and maybe we can find

15    common ground on it.

16            THE COURT:  All right.  Because the same -- the --

17    the -- the 15 defendants, the questions that you need answers

18    to of the five, many of them will be the same, right?  Where

19    did you work?  How long did you work?  What kind of this or

20    that, that you would all ask of these five.

21            MS. REILLY:  Your Honor, (indiscernible) it's

22    actually easier than we're making it.  And I've got

23    (indiscernible) older (indiscernible) cases that

24    (indiscernible) where we solved it by -- you do it based on

25    how many parties receive it.  Okay?  So then you don't have

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                              April 25, 2016

Page 101

1   to worry about it's identical or global.  But each plaintiff
2   shall receive no more than a total of 25, the standard
3   limits.  The same with us.  Because the reality is we don't
4   care about each other's plaintiffs.  Right?  So if -- if
5   GoAuPair -- my client, GoAuPair, you know, issues discovery
6   requests to plaintiff Yvette, no one else cares about
7   plaintiff Yvette because that's not their -- you know, she
8   wasn't their au pair.  So 25 to each.  And that goes our way
9   too.  So none of our clients are receiving any more than the
10  presumptive limits for now.  If we need to come back and talk
11  about additional --
12          THE COURT:  I see what you're saying.  Yeah.
13          MS. REILLY:  And then if you want to make them the
14  same, identical or not, it's up to people.  It's just --
15  everyone can decide exactly how to craft those.  But no
16  one -- no party is receiving more than the requested limit
17  for interrogatories or requests for production.
18          THE COURT:  So -- so for each of the plaintiffs,
19  there's five of them --
20          MS. REILLY:  Mm-hmm.
21          THE COURT:  -- no one of them would have
22  anything -- any more than 25 from the collective group of
23  defendants.
24          MS. REILLY:  Right.
25          THE COURT:  Okay.  And then for each company, no

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 102

```
 1   company would get more than 25 questions directed at them
 2   from the plaintiffs as a group.
 3            MS. REILLY:  Exactly.
 4            THE COURT:  How does everybody feel about that?
 5            MS. LOUIS:  Your Honor, we -- we like the
 6   proposal.  We think 25 is a little bit low.  We'd like to
 7   advance the number as 40.  Any party receives 40
 8   interrogatories and responds to 40.
 9            UNIDENTIFIED SPEAKER:  I will object to that, Your
10   Honor.  Again, representing three of the smaller agencies,
11   and going back to proportionality, Mr. Quinn can pick up
12   where I leave off on this.  But these are tiny businesses.
13   We're talking one employee.  Less -- fewer than 100 au pairs.
14   Just the first four interrogatories is threatening to put one
15   of my three clients out of business.  We're honestly meeting
16   with transactional counsel to determine whether the costs in
17   connection with just responding to this first set justifies
18   continuing business.  So any more than the presumptive limits
19   is -- is too much, given the resources of these defendants
20   and the issues that we're dealing with.  They're very, very
21   broad requests that (indiscernible) issue too.
22            UNIDENTIFIED SPEAKER:  Yeah.
23            UNIDENTIFIED SPEAKER:  The reason I'm standing,
24   Your Honor, is because we're the bookends.  He represents the
25   largest.  I represent the smallest.  I have a very nice woman
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 103

1    who operates a computer in her kitchen out of Oregon.  And

2    she generates in gross under six figures a year, half of that

3    often, per year in gross.  And it has been appended to, what

4    we're now hearing, is this lawsuit.  And she simply cannot

5    afford this process.  And the reason I'm standing, Your

6    Honor, is just to remind everyone in the room that there is

7    no plaintiff who has sued her in the case.  She has one cause

8    of action which is for the antitrust claim.  And to permit

9    five plaintiffs who have nothing to do with my client

10   whatsoever, and almost an unlimited amount of requests for

11   production and 40 interrogatories is just an opportunity for

12   a fishing expedition.  There's no plaintiff who has sued my

13   client yet.  And we're only in on the antitrust claim.  So

14   for the smaller people who really do stand to go out of

15   business almost any day now, I would pray for some

16   proportionality.  And it may be, going back to Mr. Quinn's

17   suggestion, that this is something that's just really not

18   ripe to deal with today because it's going to be a fight.

19            MS. LOUIS:  Your Honor, could I just throw out

20   that with respect to proportionality and the ability of

21   particular defendants to respond to our discovery, the

22   initial wave of discovery -- the -- the deadline already

23   passed and they asked for an extra 30 days.  No one has

24   contacted me and said, These are too broad.  I can't respond

25   to them.  I may have to move for a protective order.  These

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 104

```
 1    are the kinds of issues that could have been and still can be
 2    worked out in a meet and confer.  So there's no reason for us
 3    to prospectively set discovery limits on defendants that
 4    range from the lady in Oregon to Cultural Care instead of
 5    sending out discovery.  I mean, if the requests are overly
 6    broad with respect to these two defendants, tell us that and
 7    we will work back from there.  But I don't -- I don't see the
 8    inverse being true, that because we have a couple of small
 9    defendants to whom our discovery responses -- or discovery
10    requests were irrelevant, that we then don't get to take
11    discovery for which our complaint has essentially three
12    almost unrelated components.  I mean, there's an FLSA piece,
13    an antitrust piece, a fraud piece.  Maybe the lady in Oregon
14    genuinely has nothing to do with most of what occurred, and
15    we'll know that from her initial discovery response or from a
16    phone call from counsel after this hearing.  But I don't
17    think that the absence of relevance to some of the responses
18    to some of the defendants should impose, for purposes of
19    entering a scheduling order, a limit -- an arbitrary limit
20    really on the number of discovery responses or -- because I'm
21    hearing that even the 25 presumptive would have been too much
22    for these two defendants.  That shouldn't impact how Cultural
23    Care and the other large ones should have to answer.  I
24    just -- I just don't think that these are the kinds of issues
25    to go into our scheduling order.  They go into a meet and
```

**Stevens-Koenig Reporting**
**303-988-8470 www.SKReporting.com**

**Page 104**

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 105

```
 1   confer.

 2           UNIDENTIFIED SPEAKER:  I'm going to let Attorney

 3   Quinn answer that.  But, yeah, I just couldn't disagree with

 4   that more than I do.  To legislate for all of the defendants

 5   and to treat the two of us the same in this case when there

 6   are 10 causes of action against this client and one against

 7   mine, and there's a named plaintiff for his client and

 8   there's none for mine, is truly conscionable.  I'll let

 9   Attorney Quinn address the rest.

10           MR. QUINN:  I think the safe road right now is the

11   presumptive limit.  I mean, that's going to be a burden on

12   the smaller defendants, and we get it, and they can pick up

13   the phone and call.  But there's no need to just pick an

14   arb -- as we just said, an arbitrary number of 40.  Let's go

15   with the presumptive limits.  We're coming back.  If it's

16   not, we'll deal.

17           THE COURT:  Well, that's -- that's too appealing

18   to pass up, frankly, because it is the presumptive limits,

19   so -- but I do like -- I do like your idea of no one

20   plaintiff, no one defendant can receive more than 25.  Now,

21   their responses to those 25 are liable to be extremely

22   different.  Right?  That's where the -- that's where the

23   difference comes in to me.  The lady in Oregon, if she places

24   two people during the year, I think that's probably kind of

25   low, but -- but let's say she places 10 or something, 10
```

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                              April 25, 2016

Page 106

1    people.  The -- the burden to answer for 10 people is
2    probably not all that high.  So I think that she's not in the
3    same position as -- as the 55,000 whose answers are going to
4    be reams of paper.  Well, not paper, probably electronic.
5    So -- so I think that that kind of settles it out.  Plus
6    there may be questions that are not asked of your client.  I
7    mean, that's -- that's going to be kind of plaintiffs'
8    choice.  You can certainly ask less than 25 obviously.  But I
9    think 25, and we'll limit it to -- to the amount that you
10   receive.  And I think that's a very good idea.  It's easy to
11   calculate.  And then we will talk about it, if after the
12   collective action paperwork is done we see what we've got.
13   And I -- I'm assuming, without making any ruling or any
14   indication, that probably the collective will be
15   preliminarily certified just because the burden is so low.
16   So if it is, then -- then, let's talk about what we do with
17   that.  We're talking about the notice.  We don't know who the
18   opt-ins are unless it's actually certified as a collective.
19   So I just want to make that clear that I'm not assuming that
20   on any legal basis just because I think it's helpful to talk
21   about it.  But if we did 25 of the interrogatories, requests
22   for production of documents, and requests for admissions,
23   then when we talk about it again -- are we doing more on the
24   others?
25            MS. LOUIS:  Your Honor, I thought the Court

Johana Paola Beltran, et al. vs.                                    Scheduling Conference
Interexchange, Inc., et al.                                                April 25, 2016

Page 107

1   indicated that RFPs and requests for admissions would follow

2   the federal rules and be unlimited.

3             THE COURT:  There's no limit on those normally.

4   And I don't -- I don't think that's much of an issue anyway,

5   so we won't -- we won't put a limit on those.  But on the

6   interrogatories, we'll do the 25.  And then if you -- if you

7   feel that that's inadequate, tell me why.  Then by that time

8   you should know specifically.  Okay.  I wasn't able to ask

9   these questions of this big guy over here and I need to do

10  that.  So whoever can tell me why they need more will

11  probably get more.  But just in general, let's keep it at

12  that and see if we -- you know, it makes everybody think

13  sharper about exactly what questions are really important to

14  ask.  And let's try to do that at this point.

15            So I think -- the only thing I didn't ask you that

16  I usually start with is about initial disclosures.  Do we

17  need to talk about initial disclosures or not?

18            MR. ALLEN:  I think we made them quite sometime

19  ago, Your Honor.

20            THE COURT:  That's what I thought.  Okay.

21            MS. LOUIS:  They were made over a year ago, Your

22  Honor.

23            THE COURT:  All right.  So no issues with that

24  now.  And we've talked about numbers of discovery.  We've

25  talked about dates.  Anything else?

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 108

1      MS. LOUIS:  Oh --

2      THE COURT:  Do we want to set a -- how do you want

3  to handle the -- talking about opt-in class?  Do you want to

4  file a motion saying you're ready to have a hearing on that

5  or not, or do you want me to set one now?

6      MS. LOUIS:  Sorry, Your Honor.  I was looking at

7  my notes.  For which issue?

8      THE COURT:  So the issue of -- of how many more

9  depositions you might get.  Right?  How many more once you

10  have the opt-in class kind of decided.  We need to have a

11  discussion.  Do you want to have it by status reports and

12  then I set a hearing, or what do you think?

13      UNIDENTIFIED SPEAKER:  It seems, Your Honor, that

14  we -- it's going to be hard to set a specific date because

15  nothing really starts until we get the Court's order, and

16  obviously we don't have a date for that.  So some mechanism

17  by which we can all get back together after we know when the

18  notice period is going to expire because, again, it's got to

19  expire and we've got to see what our numbers are, so --

20      THE COURT:  Right.

21      UNIDENTIFIED SPEAKER:  My suggestion would be

22  let's -- let's wait.  And I think the defendants certainly --

23  if it would be helpful to assume the burden of starting that

24  process, we can get (indiscernible).

25      THE COURT:  Okay.  Because it's really you that

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 109

1  want -- is going to want everything.  So I will put that
2  burden then on the defendants to let the Court know.  You can
3  do it by motion or joint status or however you want to do it.
4  Let me know what you want to do about discussing more
5  discovery.  I mean, maybe you'll -- you'll discover that you
6  don't need anymore.  I kind of doubt that, but --
7           UNIDENTIFIED SPEAKER:  That would be lovely,
8  but --
9           MR. ALLEN:  I --
10          THE COURT:  We'll leave it open just in case.
11          MR. ALLEN:  Thank you, Your Honor.
12          THE COURT:  But let me know, and coordinate
13  with -- with plaintiffs.  And you might even suggest some
14  dates and times.  You can always call my clerks.  They're --
15  I -- I don't have a judicial assistant.  So you can call my
16  law clerks who are both lawyers, obviously, and clear some
17  dates, but they can't guarantee you to keep them clear.
18  That's the trouble.  But if you want to suggest some dates,
19  I'll try to fit you in when we can.  Tell me how long you
20  think it might take.  We took a long time today, so three
21  hours or something.  So probably would need to schedule
22  something in the two or three-hour range.  So ask for an
23  afternoon or morning or something.  Afternoons are usually
24  better.  And then I'll try to accommodate you.  If you give
25  me four or five different things, I -- I might be able to

Johana Paola Beltran, et al. vs.                            Scheduling Conference
Interexchange, Inc., et al.                                        April 25, 2016

Page 110

 1    just move some stuff that's easier to schedule than trying to
 2    fit all of you in.  Okay?
 3              Anything else you think we need to talk about?
 4              MS. LOUIS:  I do, Your Honor.  One issue that
 5    isn't related necessarily to scheduling, but at some point
 6    the Court encouraged defendants to go and talk to their
 7    people.  And it's something I wanted to raise.  This is a
 8    putative class action.  And it has come to my attention that
 9    some of the defendants have sent communications to class
10    members that purport to be settlement agreements.  They don't
11    enumerate this class action, but they purport to settle all
12    potential claims that that au pair may have pending against
13    the agency.  It would be plaintiff counsel's request that any
14    such communication that purports to settle claims, including
15    anything relating to this lawsuit, should be copied --
16    plaintiffs' counsel should be copied.  And those
17    communications should not be going out without including us
18    in settling out our class members.  So with respect to their
19    ability to just go out and speak to the class members, the
20    reason that, you know, notice is overseen by the Court is to
21    make sure that both sides have honest and complete
22    communications with the class members.  So I'm very concerned
23    about the prospects of the defendants going and talking to
24    their class members.  We're already comprised of a very
25    vulnerable group of people who live in fear of being thrown

Johana Paola Beltran, et al. vs.                           Scheduling Conference
Interexchange, Inc., et al.                                      April 25, 2016

Page 111

1    out of this country by the visa holders who can have them --
2    or at least very much in their minds they believe they can be
3    deported for crossing the paths of any of the sponsor
4    defendants.  So encouraging them to go and speak to the
5    putative class members, especially in light of our knowledge
6    that they're sending out -- not all of them, but I've seen
7    settlement agreements.  So I'm concerned about that.  And if
8    we could both have the Court's clarification about the extent
9    that they're able to speak to class members and guidance with
10   respect to their ability to send out settlement agreements
11   that purport to settle this class before we adjourn.
12              MR. ALLEN:  Can I just say one -- ask one
13   question, Your Honor?  My client is not involved in what she
14   just said.  And I have a scheduling conflict.  Can I be
15   excused?  My client hasn't sent anything like that out, and
16   I'm not really involved in that.
17              THE COURT:  All right.  But since you're -- since
18   you represent the biggest group --
19              MR. ALLEN:  I'll wait.
20              THE COURT:  -- let me just tell all the clients
21   collectively or all the -- all the defense attorneys.  If --
22   if you think for a minute that you should be, you know, kind
23   of threatening or that you -- you should let your principals
24   of your agencies threaten anybody in any way, you might want
25   to go check out the case -- I cannot remember which casino it

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 112

```
 1   was.
 2               UNIDENTIFIED SPEAKER:  Gold Foil v. Bernard
 3   (phonetic), Your Honor.
 4               THE COURT:  Okay.
 5               UNIDENTIFIED SPEAKER:  And -- and the -- and the
 6   law is very well established on this.  I'm sorry to
 7   interrupt.  But they should file a motion if this is a real
 8   issue.  This shouldn't be addressed in this manner.
 9               THE COURT:  I -- I agree -- I agree with that.
10   But don't -- just -- just be aware.  There's a case out there
11   that I wrote where the sanctions were about half a million
12   on -- on the casino that decided to take matters into their
13   own hands.  I don't like unfairness.  Right?  And who does?
14   I mean, none of us really do.  You all have clients to
15   represent, and you're going to do it to your best ability.
16   But, you know, there are -- there are -- there are boundaries
17   not to step over.  But I think -- you know, I'm not going to
18   assume that anybody has here.  I didn't assume it in that
19   case either.  I was absolutely shocked when I found out what
20   happened, so --
21               MR. ALLEN:  I -- I can tell you from our
22   understanding, most -- all of the big au pair agencies are
23   conducting business as usual.  And, in fact, communicating
24   about this suit with either au pairs or host families we
25   don't believe to be in our best interest at this juncture.
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 113

1       THE COURT:  Yeah.  I don't think it is either.  So
2  I'll just let it go at that because I think really if you do
3  have proof that something like that's happening, you really
4  do need to bring it by motion.
5       MS. LOUIS:  Understood, Your Honor.  I just -- it
6  was on the heals of the Court's comment, and I just wanted to
7  clarify the extent to which defense counsel was leaving the
8  scheduling conference under the impression that contact with
9  the putative class members was appropriate under those
10 circumstances.
11      THE COURT:  Okay.  I'll let you make the decision
12 what you do about your own clients and how you communicate
13 with them.
14      Anything else?  Okay.  We'll be in recess.
15      MR. ALLEN:  Thank you, Your Honor.
16      THE COURT:  All rise.
17      (Whereupon, the within hearing was then in
18 conclusion at 1:15 p.m.)
19      I certify that the foregoing is a correct
20 transcript, to the best of my knowledge and belief (pursuant
21 to the quality of the recording) from the record of
22 proceedings in the above-entitled matter.
23
24 /s/ Laurel S. Tubbs                    May 15, 2016
25 Signature of Transcriber               Date