**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

     Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

     Defendants.

---

**PLAINTIFFS' MOTION FOR
CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND INCORPORATED MEMORANDUM OF LAW**

---

## <u>TABLE OF CONTENTS</u>

Page

CERTIFICATE OF CONFERAL PURSUANT TO D.C. COLO.LCiv.R. 7.1(A) ................ 1

PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION 1

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

I.     THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASSES AND
       APPROVE NOTICE TO THE POTENTIAL OPT-IN PLAINTIFFS. ...................... 3

       A.     Requirements for Conditional Certification ................................................. 4

       B.     Plaintiffs and Other Potential Claimants Are Similarly Situated Because
              They Are All Victims of the Same Decision and Policy Implemented by
              the Sponsor Defendants. .......................................................................... 7

              1.     Plaintiffs Have Alleged That The FLSA Defendants Were Their
                     Employers. ...................................................................................... 8

              2.     The FLSA Defendants Each Imposed a Policy That Impacted
                     All Class Members Similarly ............................................................. 9

                     a.     InterExchange ..................................................................... 9

                     b.     Cultural Care ..................................................................... 11

                     c.     Au Pair in America ............................................................ 12

                     d.     GoAuPair ........................................................................... 14

II.    THE NOTICE AND DISCOVERY. ..................................................................... 15

III.   THE COURT SHOULD APPROVE CLASS REPRESENTATION BY THE
       NAMED PLAINTIFFS ........................................................................................ 18

CONCLUSION ......................................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**<u>Cases</u>**

*Baker v. Flint Eng'g & Constr. Co.*,
    137 F.3d 1436 (10th Cir. 1998) ............................................................................ 8

*Beall v. SST Energy Corp.*,
    No. 15-cv-01741, 2016 WL 286295 (D. Colo. Jan. 25, 2016) ..................................... 6

*Brown v. Money Tree Mortgage, Inc.*,
    222 F.R.D. 676 (D. Kan. 2004) ..................................................................................... 6

*Calder v. GGC-Bal*timore, LLC,
    No- BPG-12-2350, 2013 WL 3441178 (D. Md., July 8, 2013)................................... 17

*Chavez v. Excel Services S.E.*, No. 13-cv-03299-CMA-BWB,
    2014 WL 4651997 (D. Colo. Sept. 18, 2014) ............................................................ 5

*Daugherty v. Encana Oil & Gas, Inc.*,
    838 F. Supp. 2d 1127 (D. Colo. 2011) ........................................................................ 6

*Greenstein v. Meredith Corp.*,
    948 F. Supp. 2d 1266 (D. Kan. 2013) ......................................................................... 6

*Hodge v. Signia Marketing, Ltd.*,
    No. 15-cv-02839-KMT (D. Colo. June 13, 2016) ......................................................... 6

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989) ............................................................................................. 5, 16

*Johnson v. Am. Airlines, Inc.*,
    531 F. Supp. 957 (N.D. Tex. 1982) .......................................................................... 17

*Porter v. West Side Restaurant, LLC*,
    No. 12-1112-JAR-KGG, 2014 WL 1642152 (D. Kan. 2014) ........................................ 6

*Renfro v. Spartan Computer Servs., Inc.*,
    243 F.R.D. 431 (D. Kan. 2007) ................................................................................... 5

*Romero v. Producers Dairy Foods, Inc.*,
    235 F.R.D. 474 (E.D. Cal. Apr. 19, 2006) ................................................................. 17

*Smith v. Pizza Hut, Inc.*,
   Case No. 09-cv-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012) .... 4, 5

*Thiessen v. General Elec. Capital Corp.*,
   267 F.3d 1095 (10th Cir. 2001) ................................................................... 4

*Turner v. Chipotle Mexican Grill, Inc.*,
   123 F. Supp. 3d 1300 (D. Colo. 2015) ........................................................ 6

*Tyson Foods, Inc. v. Bouaphakeo*,
   __ U.S. __, 136 S. Ct. 1036 (2016) ............................................................. 5

*Underwood v. NMC Mortgage Corp.*,
   245 F.R.D. 720 (D. Kan. 2007) .................................................................. 5

*Veliz v. Cintas Corp.*,
   2004 WL 2623909 (N.D. Cal. Nov. 12, 2004) ........................................... 17

## Statutes

29 U.S.C. § 216(b) ..................................................................................*passim*

## Rules

D.C. Colo.L.Civ.R. 7.1(a) ............................................................................ 1

Fed. R. Civ .P. 5 ......................................................................................... 21

## CERTIFICATE OF CONFERAL PURSUANT TO D.C. COLO.LCiv.R. 7.1(A)

Pursuant to D.C. Colo.L.Civ.R. 7.1(a), Plaintiffs conferred with counsel for all Defendants via email on July 15, 2016, regarding Defendants' position on Plaintiffs' Motion For Conditional Certification. The FLSA Defendants indicated they would not be able to state their positions on the Motion before they were able to review. The parties will continue to confer in attempt to reach agreement on the relief sought.

### Plaintiffs' Motion for Conditional Collective Action Certification

Plaintiffs Johana Paola Beltran, Beaudette Deetlefs, Lusapho Hlatshaneni, Ivette Alexandra Gonzalez Cortes, and Dayanna Paola Cardenas Caicedo, by and through their counsel from the law firms of Boies, Schiller & Flexner LLP and Towards Justice, hereby move for conditional collective action certification and the issuance of a court-supervised notice (the "Notice") to potential opt-in plaintiffs.  Plaintiffs seek conditional certification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), with respect to all current and former *au pairs* who were sponsored by Defendants Cultural Care, Au Pair in America, GoAuPair, or InterExchange ("the FLSA Defendants"), at any time during the last three (3) years.  In order to facilitate the Notice, Plaintiffs also seek an Order directing the FLSA Defendants to provide Plaintiffs with data, in electronic form, containing the name, last known address, e-mail address, and other identifying information for each such current and former *au pairs*.

### INTRODUCTION

The FLSA Defendants have uniformly determined that *au pairs* shall be paid $195.75 per week for up to 45 hours of work. In so mandating, the FLSA Defendants have a policy of paying the FLSA Plaintiffs less than the federal minimum wage, not to mention the laws of many states.  First Amended Complaint ("FAC") [Doc. 101] ¶¶ 5,

1

80-89.  The uniformity of this policy, applicable to all *au pairs* sponsored by *any* of the Defendants, has been admitted by many of the Defendants. Defendant Cultural Care, for example, advised potential *au pairs*, in writing, that the wage would be "the same regardless of which au pair agency you use." *Id.* ¶ 197.  Similar statements were made to Plaintiffs Gonzalez and Cardinas, who met with representatives of multiple sponsors, including one for Cultural Care, and learned from each that the pay would be the same no matter which agency sponsored them. *See* Exhibit A to the Declaration of Lauren Louis in Support of Plaintiffs' Motion for Conditional Certification ("Louis Decl.") ¶ 2 attached hereto as Exhibit 1; *see also* Exh. B, Louis Decl., ¶ 2-3.

Each of the named plaintiffs, as a so-called standard *au pair*, was paid below the federal minimum hourly wage of $7.25: each one was paid a weekly stipend of approximately $195.75, for up to 45 hours of work, or approximately $4.35 per hour. Each named plaintiff routinely worked in excess of 40 hours per week without receiving overtime compensation.  Each named plaintiff paid fees to the Defendant or agency for the Defendant before she was permitted to begin working as an *au pair*.  Each Plaintiff was subject to the Defendants' policy of deducting "room and board" from her wages. And each Named Plaintiff participated in mandatory training presented by her respective Sponsor Defendant, for which none of the named Plaintiffs were paid to attend.  These statements apply with equal force to every putative class member, resulting from the Defendants' collective decision to implement identical policies with respect to *au pair* wages. Accordingly, collective action is appropriate in this case.  This motion for

conditional certification therefore seeks collective action treatment for all *au pairs* who

were sponsored by any of the FLSA Defendants over the last three years.

## ARGUMENT

**I.      THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASSES AND APPROVE NOTICE TO THE POTENTIAL OPT-IN PLAINTIFFS.**

Plaintiffs seek conditional certification pursuant to 29 U.S.C. § 216(b) for the

following classes of employees:

- All current and former *au pairs* for whom Defendant InterExchange, Inc. was a J-1 Visa Sponsor.  *See* FAC ¶ 458 (defining the "InterExchange 216(b) Class").

- All current and former *au pairs* for whom Defendant American Institute for Foreign Study, d/b/a Au Pair in America, was a J-1 Visa Sponsor.  *See* FAC ¶ 459 (defining the "Au Pair in America 216(b) Class").

- All current and former *au pairs* for whom Defendant American Institute for Foreign Study, d/b/a Au Pair in America, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.  *See* FAC ¶ 460 (defining the "Au Pair in America []216(b) [Sub-]Class").

- All current and former *au pairs* for whom Defendant Cultural Care, Inc., d/b/a Cultural Care Au Pair, was a J-1 Visa Sponsor.  *See* FAC ¶ 461 (defining the "Cultural Care 216(b) Class").

- All current and former *au pairs* for whom Defendant Cultural Care, Inc., d/b/a Cultural Care Au Pair, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.  *See* FAC ¶ 462 (defining the "Cultural Care 216(b) Sub-Class").

- All current and former *au pairs* for whom Defendant GoAuPair was a J-1 Visa Sponsor.  *See* FAC ¶ 463. (defining the "GoAuPair 216(b) Class").

- All current and former *au pairs* for whom Defendant GoAuPair was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in

a week for work performed after January 1, 2015.  *See* FAC ¶ 464  (defining the "GoAuPair 216(b) Sub-Class").

For purposes of this motion, the InterExchange 216(b) Class, the Au Pair in America 216(b) Class, the Au Pair in America 216(b) Sub-Class, the Cultural Care 216(b) Class, the Cultural Care 216(b) Sub-Class, the GoAuPair 216(b) Class, and the GoAuPair 216(b) Sub-Class are referred to collectively as the "Proposed Classes" or simply the "Classes," and each of them is a "Proposed Class" or just "Class."

### A.    Requirements for Conditional Certification.

Section 216(b) of the FLSA allows employees who have been denied the protections of the FLSA to proceed with a collective action; unlike a typical Rule 23 class action, however, similarly-situated FLSA claimants must explicitly choose to participate in the class.  *See* 29 U.S.C. §216(b).[1]

Courts take a two-step approach to certifying FLSA collective actions.  *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).  At the first step, which occurs prior to discovery, courts evaluate the pleadings and any supporting affidavits to determine whether potential claimants are similarly situated. *See id.*; *see also Smith v. Pizza Hut, Inc.*, Case No. 09-cv-01632-CMA-BNB, 2012 WL

---

[1]    Section 216(b) provides, in relevant part:

> An action [under the relevant provisions of the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

4

1414325, at *3 (D. Colo. Apr. 21, 2012).  If it appears that they are, the court will conditionally certify the class for the purposes of providing notice to prospective class members, so that they may opt to join the action.  *See Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036, 1043 (2016) (the "sole consequence of conditional certification [under § 216] is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court").  As this Court has explained:

> At the first step, prior to discovery, the district court makes a 'notice stage' determination of whether the plaintiffs are similarly situated.  For conditional certification at the notice stage, the Tenth Circuit 'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.  This initial step creates a lenient standard which typically results in conditional certification of a representative class.'

*Pizza Hut,* 2012 WL 1414325, at *3 (*quoting Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007) (internal citations omitted)); *see generally Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

For purposes of conditional certification, "[a]lthough the FLSA does not define 'similarly situated,' 'generally, where putative class members are employed in similar positions the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single, decision, policy or plan.'"  *Chavez v. Excel Services S.E.*, No. 13-cv-03299-CMA-BWB, 2014 WL 4651997, at *1 (D. Colo. Sept. 18, 2014) (*quoting Underwood v. NMC Mortgage Corp.*, 245 F.R.D. 720, 723 (D. Kan. 2007)); *see also Pizza Hut,* 2012 WL 1414325, at *6 (noting that drivers were subject to the same practice nationwide and

5

explaining "[t]he fact that delivery drivers from every region have not yet opted in to this action does not mean that a nationwide class cannot exist"); *Beall v. SST Energy Corp.*, No. 15-cv-01741, 2016 WL 286295, at *1 (D. Colo. Jan. 25, 2016).

Because certification at stage one is only conditional, "the standard of proof 'is a lenient one that typically results in class certification.'" *Hodge v. Signia Marketing, Ltd.*, No. 15-cv-02839-KMT, slip op. at 3 (D. Colo. June 13, 2016) (quoting *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004)); *see also Daugherty v. Encana Oil & Gas, Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. 2011) (standard for conditional certification at the notice stage is a "lenient standard which typically results in conditional certification of a representative class").  Given this "lenient" standard, a court at stage one does not resolve factual disputes, make credibility determinations, or make determinations about the merits.  *See Porter v. West Side Restaurant, LLC*, No. 12-1112-JAR-KGG, 2014 WL 1642152, at *11 (D. Kan. 2014); *Greenstein v. Meredith Corp.*, 948 F. Supp. 2d 1266, 1267 (D. Kan. 2013).

After discovery is closed, the second step of the certification analysis is conducted as the court determines whether the case should continue as a collective action.  At that point, the court will conduct a more searching review of whether the class is in fact similarly situated.  *See Smith* at *3.  At the initial stage, however, courts take a "lenient" view of conditional certification, *see, e.g., Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1302 (D. Colo. 2015) ("a proper reading of the FLSA at this stage of collective action proceedings requires little more than the permissive joinder of putative class members").

**B.    Plaintiffs and Other Potential Claimants Are Similarly Situated Because They Are All Victims of the Same Decision and Policy Implemented by the Sponsor Defendants.**

Applying these standards, the Court should conditionally certify the Proposed Classes so that notice may go out to *au pairs*.  Indeed, at the most recent scheduling conference in this case, Magistrate Judge Tafoya expressed her assumption that this action would be preliminarily certified "just because the burden is so low."  *See* Exh. C, Louis Decl., at 106.  It is particularly important that the Court does so now, because – although Plaintiffs have served the Sponsor Defendants with interrogatories that would allow Plaintiffs to identify potential class members, among other things – each and every one of the Defendants have objected to the production of information or documents pertaining to the putative class prior to certification.

Certification is appropriate because there is no real dispute about whether the Plaintiffs and other members of the Proposed Classes are similarly situated.  The Court has already found that the Plaintiffs have adequately alleged an antitrust conspiracy, meaning that the pleadings satisfactorily allege an agreement amongst the Sponsor Defendants to set wages at an illegally low level that also violates the FLSA. Specifically, Plaintiffs have alleged that a uniform policy amongst the Sponsor Defendants set the weekly wages for all *au pairs* below the federal minimum wage, failed to compensate *au pairs* for hours worked in excess of forty per week, failed to compensate *au pairs* for time spent in training, and took illegal deductions or credits from the *au pairs'* wages.

7

### 1. Plaintiffs Have Alleged That The FLSA Defendants Were Their Employers.

The Court has already concluded that the Amended Complaint adequately alleges that the FLSA Defendants were and are joint employers of the Plaintiffs.  ECF Doc. 258 at 19-20; FAC ¶¶ 63, 66-67, 289-296.  The FLSA Defendants exert considerable control over *au pairs*' working conditions. For example, the FLSA Defendants recruit and screen *au pairs* before placing them with a host family.  FAC ¶ 46. The FLSA Defendants are required to and do provide training to each *au pair* before the *au pair* begins working with a host family, and in some instances, throughout the course of the *au pair*'s placement with the host families.  *Id.* ¶ 11, 222, 298.  The FLSA Defendants contractually established the class members' daily duties; exclusively determined the class members' right to continued participation in the program; and had the right to terminate class members from their positions. And particularly relevant here, the FLSA Defendants dictate the *au pair* wages.  *See* Exh. A, Louis Decl., ¶ 2; Exh. B, Louis Decl., ¶¶ 2, 13; Exh. D, Louis Decl., ¶¶ 15; Exh. E, Louis Decl., ¶¶ 7, 11; Exh. F, Louis Decl., ¶¶ 3, 13.

Magistrate Judge Tafoya relied on these facts in reaching her conclusion that, applying the Tenth Circuit's economic realities test,[2] Plaintiffs' allegations are sufficient to state FLSA claims against the Defendants.  *See* ECF Doc. 240 at 22-23.  The Court likewise held that the First Amended Complaint adequately alleged that the FLSA Defendants are Plaintiffs' joint employers. *See* ECF Doc. 258 at 19-20.  For the same

---

[2]    *See generally Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1439 (10th Cir. 1998).

reasons, the pleadings sufficiently allege that the FLSA Defendants jointly employ or employed the FLSA class members for conditional certification purposes.

### 2. The FLSA Defendants Each Imposed a Policy That Impacted All Class Members Similarly.

As this Court has already found, the First Amended Complaint also adequately alleges that the FLSA Defendants violated the FLSA and paid Plaintiffs and the other class members an unlawful wage through a policy and practice of, among other things: (a) imposing an unlawful wage of $195.75 per week for up to 45 hours of work, in contravention of the federal minimum wage; (b) failing to pay *au pairs* overtime for hours worked in excess of 40 per week; (c) improperly crediting against *au pairs'* wages items such as room and board; and (d) failing to pay *au pairs* for hours worked, such as during mandatory training periods.

Because these policies and practices impacted each *au pair* in fundamentally the same way, conditional certification is appropriate. For the sake of completeness, we recount the critical allegations against each of the four FLSA Defendants in turn.

### a. InterExchange

InterExchange's wage policy applies to all regular InterExchange *au pairs*, and thus all members of the InterExchange 216(b) Class. Indeed, InterExchange uses its website to advertise a uniform weekly stipend of at least $195.75, *see* FAC ¶ 190 (quoting blog entry from Jan. 22, 2014 InterExchange website: "All au pairs earn a weekly stipend of at least $195.75 per week") – a figure that both assumes a work-week that exceeds 40 hours, and which incorporates an (illegal) deduction for room and board, *see id.*; *see also* Exh. G, Louis Decl.

Though InterExchange has attempted to diminish the rigidity of its wage policy by explaining those statements establish only a minimum, its website makes clear that InterExchange has established a policy of paying all *au pairs* the $195.75 without meaningful variation.  For example, InterExchange informs potential *au pairs* that they can earn "<u>nearly</u> $10,000.00" per year, a figure that only makes sense if *au pairs* are being paid $195.75 per week for 50 weeks per year ($195.75 x 50 = $9,787.50).  *See* Exh. G, Louis Decl.*;* FAC ¶ 248.  InterExchange warned potential *au pairs* that offers to pay higher wages are likely a scam:  "a scammer may pretend to be an *au pair* agency like InterExchange, or a host family that saw your profile online.  . . . They may make you offers that sound amazing, like paying you more than the program amount of $195.75 per week."  *See* Exh. H-1, Louis Decl.; FAC ¶¶ 188.[3]

Johana Beltran's experiences with InterExchange comport with these advertised policies. Ms. Beltran paid fees of $5,000,000 pesos ($2,500 USD) to InterExchange before receiving her J-1 visa and traveling to the United States to begin work as an *au pair*.  See Exh. D, Louis Decl., ¶ 5.  Ms. Beltran arrived in the United States in August 2012 and upon arrival attended InterExchange's week-long mandatory training session related to *au pair* and childcare duties; *id.* ¶ 7-8.  InterExchange did not pay Ms. Beltran for this training session, nor did the host family.  *Id.* ¶ 8.  Ms. Beltran worked for her host family in Denver, Colorado from August through November of 2012. Throughout her employment, Ms. Beltran routinely worked more than 40 hours per week, even in

---

[3]      After this lawsuit was filed, InterExchange modified its warning to *au pairs* that scammers "may make you offers that sound amazing, like paying you <u>much more</u> than the <u>minimum</u> program amount of $195.75 per week."  *See* Exh. H-2 (underlining added to show revision).

excess of the 45 hour limit.  *Id.* ¶ 14, 15.  Yet she was always paid the same amount: $195.75 per week.  *Id.* ¶ 15.  Ms. Beltran's wages were reduced by the room and board "credit" claimed by InterExchange.  This was not a benefit voluntarily accepted by Ms. Beltran but rather a requirement.  Indeed, the conditions to which Ms. Beltran was subjected demonstrate just how involuntarily this "benefit" was:  her room was in the basement, and the family routinely failed to provide her with meals.  *Id.* ¶ 12; FAC ¶¶ 338, 344-346.

### b.   Cultural Care

Cultural Care's policy of setting the weekly stipend at $195.75 for all *au pairs* is advertised on its website, where it informs host families that "all *au pairs* make the same weekly stipend of $195.75."  FAC ¶ 194; *see also* Exh. I ("*Au pair* are paid a set weekly stipend of $195.75, as dictated by the U.S. Department of State.").  These policies are common to, and similarly affected, each members of the Cultural Care 216(b) Class and the Cultural Care 216(b) Sub-Class.

Dayanna Paola Cardenas Caicedo and Beaudette Deetlefs worked for Cultural Care and were subjected to its policies.  Ms. Cardenas visited a Cultural Care office in Bucaramanga and learned that, as an *au pair*, she would be paid $195.75 per week.[4] See Exh. B, Louis Decl., ¶ 2.  After completing mandatory, yet unpaid, training related to child care, *id.* ¶ 6; FAC ¶¶ 401-402, Ms. Cardenas worked for two different families.  Both host families paid her precisely $195.75 every week that she worked.  Exh. B,

---

[4]    In fact, Ms. Cardenas visited offices for other agencies and was given the same information with respect to pay; from this she deduced that the salary for an *au pair* is the same regardless of which agency she worked for.  Exh. B, Louis Decl., ¶ 3.

Louis Decl., ¶ 9, 13, FAC ¶ 407.  Her second family explicitly told Ms. Cardenas that Cultural Care had instructed them to pay her that amount.  Exh. B, Louis Decl., ¶ 13. When Ms. Cardenas worked in excess of 40 hours per week, she was not paid overtime.  *Id.* ¶¶ 9, 14.

Ms. Deetlefs similarly learned she would be paid $195.75 per week from a Cultural Care representative at the mandatory, unpaid training session.  Exh. E, Louis Decl., ¶ 7.  Ms. Deetlefs was required to pay and did pay Cultural Care $900 prior to receiving her J-1 visa; *id.* ¶ 4.  Ms. Deetlefs was paired with a family of three children, ranging in ages from 11 months to 9 years old.  *Id.* ¶ 9.  She worked in excess of 10 hours daily.  *Id.* ¶ 10.  Her host family paid her precisely $195.75 per week, which is the amount they told her they were instructed by Cultural Care to pay. *Id.* ¶ 11; FAC ¶ 386. Ms. Deetlefs was subject to Cultural Care's policy of subtracting room and board credit from her wages.  Beyond being unlawful generally, Ms. Deetlefs did not actually receive room and board consistently: on more than one occasion, her host family left her while they went on vacation, without providing any food for her in their absence.  FAC ¶ 387.

### c.    Au Pair in America

Au Pair in America lists the "Program Fees" on its website and identifies the weekly stipend for regular *au pairs* as $195.75.[5]  *See* Exh. K, Louis Decl.  Au Pair in America advertises, on a website entitled "Benefits of Being an *Au Pair*," that "an Au Pair in America [will] earn a weekly stipend of $195.75" and advertises to potential *au*

---

[5]    The Website has been modified since the inception of this class action and now states that the "minimum weekly stipend" is $195.75.  Exh. J, Louis Decl.

*pairs* on foreign websites, "You get: US$195.75 / approx. US$9990 per year." *See* FAC ¶ 113.

Lusapho Hlatshaneni, who was sponsored by Au Pair in America, was told on multiple occasions that her wages would be precisely $195.75 per week and in fact, that she could be penalized for accepting any higher amount. *See* Exh. F, Louis Decl., ¶ 3. Ms. Hlatshaneni paid 9,500 South African Rand (approximately $800USD) in fees before receiving her J-1 visa. *Id.* ¶ 4. At the mandatory training session presented by Au Pair in America, which Ms. Hlatshaneni attended for four days without pay, a representative told Ms. Hlatshaneni and the other *au pairs* that they could not accept more than $195.75 per week from their families; if the *au pair* accepted more money, she was told, she might be deported. FAC ¶ 362; Exh. F, Louis Decl., ¶ 6. Ms. Hlatshaneni was likewise told by her host families that Au pair in America warned them that paying Ms. Hlatshaneni more than $195.75 was not permitted. FAC at ¶¶ 366, 369; *see also* Exh. F, Louis Decl., ¶ 15. Indeed, both of the host families Ms. Hlatshaneni paired with paid her $195.75 per week.[6] Ms. Hlatshaneni frequently worked more than 40 hours per week and as much 60 hours per week. She received no overtime compensation for the time in excess of 40 hours per week. *See* Exh. F, Louis Decl., ¶ 14. Accordingly, Ms. Hlatshaneni is similarly situated to the other members of the Au Pair in America 216(b) Class and the Au Pair in America 216(b) Sub-Class.

---

[6]     Ms. Hlatshaneni's host family rounded the weekly amount to $200 for their convenience. Exh. F, Louis Decl., ¶ 369.

### d.   GoAuPair

On its website, GoAuPair defines "[t]he weekly stipend" as "the term for the wages paid to the *Au Pair* by the Host family" and sets the amount at $195.75.  Under a heading entitled "What is the Au Pair Stipend and how is it determined?"  GoAuPair claims that the Department of Labor has "sole jurisdiction" over matters that go into the determination, shows a purported calculation of the stipend that includes an (unlawful) credit for room and board, and declares that the stipend is $195.75.  *See* Exh. L, Louis Decl.  GoAuPair's website leaves no doubt about the uniformity of its policy to pay all *au pairs* precisely the same, and thus affects in substantially the same way the members of the GoAuPair 216(b) Class and the GoAuPair 216(b) Sub-Class.

Ivette Alexandra Gonzalez Cortes's experience with GoAuPair confirms that GoAuPair's regular *au pairs* were paid pursuant to this policy. Ms. Gonzalez was informed by the GoAuPair agency representative in Colombia that, as an *au pair*, Ms. Gonzalez would be paid $195.75 and expected to work 45 hours per week.  FAC ¶ 410.  The agency told her that her wages would be the same whether she worked for GoAuPair or another sponsor.  *See* Exh. G, Louis Decl., ¶ 2.  Ms. Gonzalez paid GoAuPair $1600 before she could receive her J-1 visa.  *Id.* ¶ 3.  Ms. Gonzalez, after completing GoAuPair's mandatory yet unpaid training, traveled to the United States and to her host family in Maryland.  *Id.* ¶ 5.  Ms. Gonzalez routinely worked in excess of 40 hours per week but was never paid for her overtime; her host family paid her $200 per week.  *Id.* ¶¶ 7-8.  Ms. Gonzalez was also subject to a 9 PM curfew, and was thus restricted to the host family home even when she was not working.  *Id.* ¶ 9.

14

\*          \*          \*

Each of the FLSA Defendants advertised that its *au pairs* would be paid a set wage that was less than the federal minimum wage, involved working more than 40 hours per week without overtime pay, and which incorporated an unlawful credit for room and board—after requiring payment of some amount of administrative fees to the respective Defendant to participate in the *au pair* program.  Each of the FLSA Defendants also required its *au pairs* to attend mandatory trainings, but did not compensate the *au pairs* during that time at all.  In short, *au pairs* employed by each of the FLSA Defendants were injured as the result of a uniform policy and practice, and the members of each of the Proposed Classes are therefore similarly situated for conditional certification purposes.

## II.      THE NOTICE AND DISCOVERY.

Plaintiffs request that the Court approve the proposed form of notice (the "Notice"), attached hereto as Exhibit 2, to be sent to all members of each of the Proposed Classes.  The Notice accurately informs the potential opt-ins of the nature of the suit, informs them of their right to join the suit and how they may do so, and advises them that their employers may not retaliate against them as a result of their involvement.  Many of the potential class members will be former *au pairs* who have returned to their home countries after completing their time as *au pairs* in the United States.  As a result, a somewhat longer opt-in period is necessary to ensure that notice is received by the *au pairs* in their foreign countries and they have sufficient time to

return the notices.  Plaintiffs therefore request that the Court grant a 120-day opt-in

period, with a reminder notice being issued on or about the 60 day mark.

In order to reach the opt-in class members, Plaintiffs further respectfully request

that the Court order each FLSA Defendant to produce, within 14 days of the Court's

Order, a list providing the following identifying information for potential class members:

- The names of all *au pairs* sponsored by the Defendant at any time on or after July 25, 2013;
- The *au pair's* last known addresses;
- The *au pair's* home country address;
- Any and all e-mail addresses associated with the *au pair*;
- Any and all telephone numbers (including cellular numbers) associated with the *au pair*;
- Any and all other contact information for the *au pair*, such as Facebook ID, Twitter handle, Skype address, or the like;
- The *au pair's* dates of employment;
- The *au pair's* date of birth;
- The *au pair's* social security number, alien number (known as an "A number"), or other government issued identifier;
- The *au pair's* passport number and country of issuance;
- A copy of the *au pair*'s J-1 Visa and supporting application; and
- The name, address, telephone number(s), and e-mail addresses(s) for any family or families that hosted the *au pair*.

Plaintiffs also respectfully request that the Court require the FLSA Defendants to update

the list every 30 days to include new hires during the pendency of this litigation;

Plaintiffs will provide notice to the new potential opt-ins upon receipt of those updates.

Plaintiffs respectfully request the Court's permission to deliver the Notice by mail,

e-mail or comparable electronic communications (such as via Facebook), and

publication. Notice serves the purpose of informing employees potentially harmed by

the employers' alleged unlawful pay policies that a suit is pending that may provide

them with relief.  *Hoffman-LaRoche*, 493 U.S. at 172.  To maximize the benefit of court-

16

ordered notice, and because of the material likelihood that Plaintiffs will not be able to reach many putative class members directly, such publication is warranted for this opt-in class.

The potential opt-ins are a highly transient group. Upon completion of the *au pair*'s year in the United States (or two, if the *au pair* extends and the relevant Sponsor Defendant agrees to seek a visa renewal), he or she returns to her home country, as each of the named Plaintiffs have done. Once an *au pair* leaves the United States, even an e-mail address may not ensure reliable communication with the *au pair*.  *See* Exh. F, Louis Decl., ¶ 16.  Plaintiffs also seek court approval for submission of electronically signed opt-in notices from class members, which will allow class members to submit their consent to join without incurring the cost or delay of mailing such forms.

Electronic mail, in particular, has become "the norm" for notice.  *Calder v. GGC-Baltimore, LLC*, No- BPG-12-2350, 2013 WL 3441178, at *3 (D. Md., July 8, 2013).  In addition to requiring written notice mailed or e-mailed or otherwise personally delivered to the opt-in class members, the Court should require the FLSA Defendants to post notice on their websites to ensure the notice will reach this particularly transient class. *See, e.g.*, *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. Apr. 19, 2006) (requiring notice by mail and posting); *Veliz v. Cintas Corp.*, 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (requiring notice to be posted at all employer's job sites); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (requiring notice by mail and posting on employer's bulletin boards).

**III.    THE COURT SHOULD APPROVE CLASS REPRESENTATION BY THE NAMED PLAINTIFFS**

Finally, the Court should approve the named Plaintiffs as the representatives of the relevant Proposed Class or Classes.  Named Plaintiffs Johana Paola Beltran, Beaudette Deetlefs, Lusapho Hlatshaneni, Alexandra Ivette Gonzalez, and Dayanna Paola Cardenas Caicedo are satisfactory representatives of the proposed FLSA classes. As set forth above, Ms. Beltran is a former employee of InterExchange and she is familiar with and was subjected to the pay policies at issue in this suit.  Similarly, Ms. Cardenas and Ms. Deetlefs are former employees of Cultural Care, Ms. Gonzalez is a former employee of GoAuPair, and Ms. Hlatshaneni is a former employee of Au Pair in America.  Each of them was subjected to, and is familiar with, the pay policies of the relevant Sponsor Defendant at issue in this lawsuit.  Each of the named Plaintiffs will continue to fairly and adequately protect the interests of the relevant Class or Classes.

<u>**CONCLUSION**</u>

For the reasons given above, Plaintiffs respectfully ask that the Court:

1. Conditionally certify Plaintiffs' FLSA claims against Defendants InterExchange, Cultural Care, GoAuPair and Au Pair in America as collective actions pursuant to 29 U.S.C. § 216(b);

2. Order the FLSA Defendants to provide a list of all *au pairs* sponsored by the respective Defendant on or after July 25, 2013, including the identifying information set forth above;

3. Order that the FLSA Defendants provide the information within 21 days of an Order approving notice by this Court;

4. Authorize Plaintiffs to provide notice via the form attached as Exhibit 2 to all *au pairs* identified by the FLSA Defendants by mail, e-mail, and other direct electronic means, such as via Facebook, and to post the Notice and consent form on a website established by class counsel;

5. Order the FLSA Defendants to conspicuously post the Notice and consent form on their own websites;

6. Order a 120 day opt-in period to begin on the date that the Notice is mailed for each potential opt-in class member to opt into the case;

7. Authorize Plaintiffs to mail, e-mail, or otherwise serve a reminder notice to potential class members at the 60 day mark; and

8. Designate named Plaintiffs Johana Paola Beltran, Beaudette Deetlefs, Lusapho Hlatshaneni, Alexandra Ivette Gonzalez, and Dayanna Paola Cardenas Caicedo to serve as representatives of the conditional classes.

Dated: July 25, 2016

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

 /s/  Matthew L. Schwartz
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
575 Lexington Avenue
New York, New York  10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel.: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org
*Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on July 25, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Heather Fox Vickles, Esq.
Brooke A. Colaizzi, Esq.
Raymond M. Deeny, Esq.
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: 303-297-2900
Fax: 303-298-0940
hvickles@shermanhoward.com
bcolaizzi@shermanhoward.com
redeeny@shermanhoward.com

William J. Kelly, III, Esq.
Chandra Marie Feldkamp, Esq
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
Tel: 720-236-1800
Fax: 720-236-1799
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com


Meshach Y. Rhoades, Esq.
Martin J. Estevao, Esq.
ARMSTRONG TEASDALE, LLP
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Tel: 720-722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

Bogdan Enica, Esq.
111 Second Avenue NE, Suite 204
St. Petersburg, FL 33701
Tel: 727-388-3472

bogdane@hotmail.com

David Meschke, Esq.
Martha L. Fitzgerald, Esq.
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1219
Fax: 303-223-1111
dmeschke@bhfs.com
mfitzgerald@bhfs.com

James Hartley, Esq.
Jonathan S. Bender, Esq
HOLLAND & HART
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Tel: 303-295-8000
jhartley@hollandhart.com
jsbender@hollandhart.com

Adam A. Hubbard, Esq.
HOLLAND & HART
1800 Broadway, Suite 300
Boulder, CO 80302-5234
Tel: 303-473-2700
aahubbard@hollandhart.com

Robert M. Buchanan, Jr.
Joan A. Lukey
Lyndsey M. Kruzer
Michael T. Gass
Justin J. Wolosz
Choate Hall & Stewart LLP
Two International Place
Boston, MA 02110
rbuchanan@choate.com
joan.lukey@choate.com
lkruzer@choate.com
mgass@choate.com

Jessica L. Fuller
Diane Hazel
James M. Lyons

Lewis Roca Rothgerber Christie LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
jfuller@lrrc.com
dhazel@lrrc.com
jlyons@lrrc.com


Thomas B. Quinn, Esq.
Peggy E. Kozal, esq.
John R. Mann, Esq.
GORDON & REES, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Tel: 303-534-5160
Fax: 303-534-5161
tquinn@gordonrees.com
pkozal@gordonrees.com
jmann@gordonrees.com

Brian P. Maschler, Esq.
GORDON & REES, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-986-5900
Fax: 415-986-8054
bmaschler@gordonrees.com

Kathryn A. Reilly, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: 303.244.1983
Fax: 303.244.1879
reilly@wtotrial.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
P.O. Box 5268
114 Village Place, #301
Dillon, CO 80435
Tel: 970-468-0210
Fax: 970-468-0371

brian@rietzlawfirm.com


Lawrence L. Lee, Esq.
Susan M. Schaecher, Esq.
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651
llee@laborlawyers.com
sschaecher@laborlawyers.com


Brian Alan Birenbach
RIETZ LAW FIRM, LLC
P.O. Box 5268
114 Village Place, #301
Dillon, CO 80435
Tel: 970-468-0210
Fax: 970-468-0371
brian@rietzlawfirm.com

Lawrence, D. Stone
Kathleen E. Craigmile
Nixon Shefrin Hensen Oburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood, Vilage, CO 80111
303-773-3500
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

Christian Hammond, Esq.
DUFFORD & BROWN, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
chammond@duffordbrown.com


   /s/  Matthew L. Schwartz
Matthew L. Schwartz