IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

       Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

       Defendants.

_____

**MOVING DEFENDANTS' JOINT MOTION TO STRIKE REPUDIATED ALLEGATIONS AND FOR LEAVE TO FILE RECONSTITUTED MOTION TO DISMISS ANTITRUST CLAIM, AND INCORPORATED MEMORANDUM**

This Court has the inherent authority to regulate the conduct of parties in litigation before it. Indeed, that authority rises to the level of a mandate when, confronted with a challenge to the sufficiency of a claim stated, a plaintiff adds allegations to save the foundering claim that are designed to mislead the Court. Here, confronted with a motion to dismiss a wholly inadequate antitrust claim shoehorned into an alleged wage case,[1] Plaintiffs added allegations of collusion based on purported admissions by agents of three Defendants to a private investigator retained by Plaintiffs. That investigator, David Keil ("Keil"), has now provided testimony under oath demonstrating that Plaintiffs' allegations are misleading by omission to the point of

---

[1] Defendants do not concede that the Au Pair program, which was created and is administered as a cultural exchange program under the Fulbright-Hays Act, is a labor program. However, that is not material to this motion.

2010588185_1

being false.[2] Not only do the testimony and notes regarding Keil's conversations with Defendants debunk the collusion alleged in Plaintiffs' First Amended Complaint, they show that Defendants did not agree to a stipend cap. Ex. 1, 185:17-21, 186:24-25.

The following exchange is emblematic of Defendants' point:

> Q:  You have no evidence, then, of any communications occurring between two or more sponsors in which they agreed to set the amount of the stipends; is that correct?
> A:  Correct."

Ex. 1, 187:21-25.

On the basis of the information now available, the undersigned Moving Defendants move (1) to strike (a) paragraphs 90 to 94 of the First Amended Complaint (ECF No. 101), (b) Paragraphs 4-24 of the May 13, 2015 Declaration of Alexander Hood, Esq., and (c) the portions of Plaintiffs' Motion for Conditional Collective Action Certification (ECF No. 325) that rely upon this Court's earlier denial of Defendants' Motions to Dismiss the antitrust claims (ECF Nos. 74, 82); and (2) for leave to file a reconstituted motion and supporting memorandum seeking the dismissal of Plaintiffs' antitrust claim.

Pursuant to D.C.Colo.LCivR 7.1(a), counsel for Cultural Care, Inc. d/b/a Cultural Care Au Pair represents that undersigned counsel has communicated with Plaintiffs' counsel regarding the subject of this motion, and that Plaintiffs oppose.

## **INTRODUCTION**

From the beginning of the litigation, Plaintiffs' allegations of an antitrust violation awkwardly insinuated into this wage case have consumed a disproportionate portion of

---

[2]  Defendants will address the conduct of Plaintiffs' counsel at a later date.

2010588185_1    2

the Court's and Defendants' time and effort. Given both the financial exposure and the disproportionately more expensive discovery to which the claim subjects them, Defendants' resolute focus on eliminating this attenuated claim is unsurprising; but, the burden is nonetheless unjustified.[3] Plaintiffs cannot contend that the original antitrust allegations were anything more than perfunctory. Plaintiffs set out to shore up the claim by enlisting Keil to seek admissions from Defendants' employees.[4] Purportedly (but not actually) relying on information that Keil gathered, Plaintiffs then amended their antitrust allegations to assert a "collective agreement" among Defendants to hold the State Department stipend paid to *au pairs* as both a ceiling and a floor.

But, as described below, the new allegations omitted key information conveyed to Keil, and by Keil to Plaintiffs' counsel, that invalidated the purpose, intent, and ultimately the import of the allegations.

Once Keil's "report," i.e., the running electronic log of his calls (Ex. 1, 17:10-13), was belatedly[5] turned over to Defendants, the material omissions in Plaintiffs' allegations became obvious. As explained below, the comments attributed to agents of

---

[3] The antitrust claim is the only claim alleged against eleven of the fifteen Defendants, many of which are small businesses whose existences have been placed in jeopardy by this lawsuit.

[4] Keil acknowledged that he was not looking for "top decision makers" when reaching out to sponsors. Ex. 1, 193:5. Rather, he was "seeking a …minimal level of authority" and knowledge sufficient to permit reliance on the information provided. *Id.* at 99:16-19.

[5] Despite prior requests, the "report" was finally produced mid-deposition, albeit subject to Plaintiffs' continuing claim of attorney work product protection. *Id.* at 144:1-9. Plaintiffs' counsel had previously withheld the document on the basis of the latter doctrine. *Id.* at 19:10-16. When it became undeniably clear from Keil's testimony that the "report" contained only his factual summary of the phone calls to three Sponsors and not his (*id.* at 17:19-18:20) or counsel's (*id.* at 170:5-24) thought processes, the report was turned over.

the only three Sponsors with whom Keil engaged in substantive conversations (*id.* at 204:3-8) were lifted out of context, and quoted selectively to disguise the truth. The employees did not simply state that "everyone agreed" to pay the same amount, but rather that "everybody agree[d] that the minimum amount that can be paid is that set by the Department of State" (*id.* at 173:15-18) and that all agencies have Host Families pay the same stipend because "we are all subject to the same federal guidelines, so we stay within that" (*id.* at 182:2-4). And, most glaringly missing from the allegations, each of the three employees told Keil that if Host Families wanted to pay more, they could (*id.* at 172:20, 179:20). The selective allegations and quotations thus distorted the truth, apparently intentionally, to support unfounded allegations of collusion. The relief requested in this motion is necessary to begin correcting the injustice flowing from Plaintiffs' misconduct.

## **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs filed their initial complaint (ECF No. 1) on November 13, 2014, alleging, *inter alia*, that Defendant Sponsors engaged in a price-fixing conspiracy to depress the weekly stipend paid by Host Families to *au pairs*. While Count I alleged that the Defendants' conspiracy constituted a violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Complaint was devoid of allegations to support an alleged conspiracy. Defendants responded with motions to dismiss based on the failure to state a claim for violation of the federal statute. *See, e.g.,* ECF No. 74 at 13-15; ECF No. 82 at 7-14.

On March 13, 2015, before Defendants' motions to dismiss could be heard, Plaintiffs filed their First Amended Complaint ("FAC"), which included five new paragraphs alleging that certain Defendants had conceded that all Defendants had

engaged in an improper conspiracy.  FAC ¶¶ 90-94.  Plaintiffs aver that, during telephone conversations on November 20 and 21, 2014, "directors" working for three Sponsor Defendants admitted that all Defendants agreed to cause Host Families to pay all *au pairs* exactly $195.75, no more, no less.  FAC ¶¶ 92-94.  The allegations provided no specifics as to which sponsors or employees Keil called.  *Id.*

Days after receiving the FAC, counsel for various Defendants contacted Plaintiffs' counsel and requested information about the alleged admissions.  ECF No. 134-2.  Plaintiffs' counsel declined to provide the requested information.  ECF No. 134-3 through 134-5.  In initial disclosures, however, Plaintiffs identified Keil as an individual who "among other things, has knowledge regarding the Defendant sponsors' alleged price fixing conspiracy and fraud."  ECF No. 134-6.  Using this information, Defendants were able to determine that Keil is a Denver-based private investigator, and that several of them received calls from a phone number associated with him.  ECF No. 134-7 through 134-10.   Defendants thus inferred that Keil was the source for the new allegations in the FAC.

Pursuant to Fed. R. Civ. P. 26(b)(3)(C), various Defendants demanded immediate production of any statements attributed to them, and several also demanded identification of the persons contacted by Keil.  ECF No. 134-11.  Plaintiffs responded to most of those demands with an objection and a claim that they had no responsive statements.  *Id.*  Plaintiffs did, however, identify seven short quotations, devoid of context, attributable to APF Global Exchange, NFP.  ECF No. 134-12.  As subsequently learned, the quoted statements were incomplete and, indeed, ultimately proved to be inaccurate by omission.  *Id.*

Defendants again moved to dismiss. With respect to the antitrust claim, Defendants argued principally that, at most, the FAC alleged parallel conduct insufficient to state a claim for price fixing. ECF No. 135 at 8-13. Separately, Defendants moved to strike paragraphs 90-94 of the FAC ("FAC ¶¶ 90-94") on the only basis of which they were aware at the time, i.e., unethical use of an agent by Plaintiffs' counsel to contact Defendants' director-level employees *after* the lawsuit was filed. ECF No. 134. Plaintiffs' counsel submitted a declaration averring his purported belief that Defendants were unrepresented at the time. ECF No. 147-1.[6] Keil's log was not produced.

On November 16, 2015, based on Plaintiffs' incomplete and inaccurate recitation of Keil's conversations, the Magistrate Judge denied the motion to strike. ECF No. 235.

The Magistrate Judge also recommended that the motion to dismiss be denied, and Defendants timely objected. On March 31, 2016, the Court entered its Order Adopting and Affirming in Part February 22, 2016 Recommendation of United States Magistrate Judge ("MTD Order"), ECF No. 258. The Court highlighted FAC ¶¶ 90-94 in particular because, in the Court's view, they constituted *direct* (albeit weak) evidence, as contrasted with circumstantial evidence potentially subject to an alternate explanation, of an agreement among the sponsors. MTD Order at 9-18. The Court considered this "direct evidence" in conjunction with Plaintiffs' circumstantial allegations and found the antitrust allegations sufficient, "particularly in light of Plaintiffs' well-plead allegations of direct agreement." MTD Order at 18.

---

[6] Notably, Keil testified in his deposition that he would not have contacted the sponsors had he known that they were adverse parties in litigation. Ex. 1, 110:17-23.

2010588185_1      6

As soon as discovery began, Defendants promptly noticed Keil's deposition and demanded that he produce documents, including with regard to FAC ¶¶ 90-94. Ex. 2 (subpoena); 3 (revised notice). As the deposition date – July 21, 2016 – approached, Plaintiffs' counsel, who also represents Keil, advised Defendants' counsel that Keil had no non-privileged documents responsive to the subpoena. Defendants' demand for a privilege log resulted in the production of a l with one entry: "Memorandum to counsel summarizing telephonic discussions with employees of defendants APF Global Exchange NFP, Au Pair International, and EurAuPair Intercultural," dated December 2, 2014. Ex. 4.

The assertion of work product was unjustified. Keil testified that the memorandum – a running electronic log – was prepared in real time as the calls took place. Ex. 1, 16:20-17:13. His answers made clear that the memorandum contained only factual recitations, no mental impressions, and that his questions were not based on a script or questions provided by counsel. Ex. 1, 33:11-13. Despite these admissions, Plaintiffs' counsel continued to rebuff requests from Defendants' counsel, until finally acquiescing in production, pursuant to a continuing claim of work product protection, in the afternoon. Ex. 1, 19:10-16; 93:4-8; 120:12-14; 144:4-9.

Keil's electronic log immediately made it clear that Plaintiffs omitted – particularly in FAC ¶¶ 90-94 – key portions of the information that Keil conveyed. Such portions not only provided context, but also belied Plaintiffs' suggestion that any Defendant had admitted a conspiracy to cap the stipends:

    (i)    Plaintiffs allege at FAC ¶ 92 that a "director" at one sponsor, now known to be APF Global Exchange, said that "the government sets a minimum

2010588185_1    7

amount, but that all of the Sponsors then agreed among themselves to pay exactly that minimum amount," and that the stipend was "standard across all [sponsor] agencies." Plaintiffs did not reveal that the speaker clarified that the amount set by the government is a minimum, and "nobody would have to know if a particular family elected to pay an au pair [a] little bit more." Ex. 5, p. 1.

(ii) Plaintiffs allege at FAC ¶ 93 that a "director" at a second sponsor, now understood to be EurAuPair Intercultural Child Care Programs, disclosed that "each and every Sponsor got together and agreed to pay *au pairs* a stipend of no more than $195.75 a week" and "all agreed to pay that amount, no more." Plaintiffs did not reveal that, immediately after making the "no more" statement, the "director" acknowledged that "you could pay more if you wanted to," as one of their families in fact did. Ex. 5, p. 3.

(iii) Plaintiffs allege at FAC ¶ 94 that a "director" at a third sponsor, now understood to be Au Pair International, Inc., purportedly said that "'[e]verybody agrees' to pay au pairs no more than the minimum weekly wage." Plaintiffs did not reveal that the individual also stated that (a) "[t]he Department of State sets all of the rules. The rules, so of course the stipend is identical across all companies," and (b) while everyone agrees to pay the same minimum, a Host Family is free to pay more, e.g., when the Au Pair does something nice: "[I]t's fine, it's up to you." Ex. 5, p. 2.

Other aspects of Keil's testimony further confirmed that, notwithstanding the language of FAC ¶¶ 90-94, the interviewees were basically confirming a universal awareness among sponsors of the State Department's legally mandated minimum:

2010588185_1     8

- According to Keil, Carrie Crompton, Director of Field Operations of APF Global Exchange NFP, "seemed to believe that the ability to pay more was okay." Ex. 1, 152:15-16.

- In explaining his conversation with Irina Gussev, Regional Director for EurAuPair Intercultural Child Care Programs, when Keil was asked: "So everybody agrees that's the *minimum* amount; is that right?" Keil responded, "[t]hat's what this person stated." Ex. 1, 171:22-24 (emphasis added).

- When Keil was asked, "[a]nd in both instances, they also, also agreed that if somebody wanted to pay more, they could?" Keil responded, "[i]n – in small – small amounts, yes." When Keil was asked, " [d]id they say in small, small amounts, or did they happen to give you examples that were small amounts?" Keil responded, "[t]hey happened to give me examples of small amounts." Ex. 1, 172:17-25.

- Keil acknowledged that, "[t]he individuals I spoke to in these conversations plus others that are not documented here led me to believe it was a *minimum amount set by law* and that everyone in the industry followed that minimum amount." Ex. 1, 180:4-8 (emphasis added).

- Particularly tellingly, when asked,"[y]ou have no evidence, then, of any communications occurring between two or more sponsors in which they agreed to set the amount of the stipends; is that correct?" Keil responded, "[c]orrect." Ex. 1, 187:21-25.

While it is apparent from the running log that Keil attempted to put words in the employees' mouths, the more complete record of his conversations in the log shows that the three employees referenced a government imposed minimum stipend by which all sponsors, not surprisingly, agreed to abide, while recognizing that Host Families can pay more (but not less) if they wish. In sum, if the Sponsors "agreed" on anything, it is that the State Department set a minimum stipend of $195.75, and that a Host Family is free to pay more. *See, e.g.*, Ex. 1, 136:4-17.

**ARGUMENT**

Plaintiffs have omitted key elements of Keil's interviews in an attempt to convert unhelpful interviewee responses into conversations that they assert admit an antitrust conspiracy. These actions have already prejudiced Defendants. The eleven antitrust-only Defendants must defend baseless litigation, well beyond the financial capabilities of many of them. The four antitrust/wage Defendants must bear the greater burden and excessive expense of defending two unrelated categories of claims. The continuing existence of the unfounded antitrust claim materially increases the expense of this litigation, e.g., by compelling Defendants to search for and collect a far broader swath of electronically stored information. Now that the full content of Keil's interviews have belatedly come to light, this Court should strike the prior mischaracterizations of those interviews and permit new briefing of the motions to dismiss, in order to correct the injustice flowing from Plaintiffs' conduct.

**I.     The Court Should Strike Paragraphs 90-94 of the FAC and Paragraphs 4-24 of the May 13, 2015 Declaration of Alexander Hood.**

The "rules and standards [which govern litigation]—derived from the Federal Rules of Civil Procedure, the court's inherent powers, and the standards of professional conduct—aim to make federal court litigation just, efficient, and ethical. They form a structured process designed to uncover the truth." *Xyngular Corp. v. Schenkel*, No. 2:12-cv-876, 2016 WL 4126426, at *45 (D. Utah Aug. 2, 2016). This Court should invoke both the powers granted to it under the Federal Rules of Civil Procedure and its inherent powers to remedy Plaintiffs' misleading conduct, which has substantially prejudiced Defendants in this litigation.

The Court has, under Federal Rule of Civil Procedure 12(f), the power to strike material from a pleading, at least if such materials prejudice the opposing party. *See, e.g.*, *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997). Further, courts have inherent powers to strike materials from any filing that is not compliant with federal or local rules or court orders. *Dubrovin v. Ball Corp. Consl. Welfare Benefit Plan*, No. 08-cv-00563, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009).[7]

Courts also possess broad inherent authority to manage their courtroom and dockets, and to remedy bad faith litigation practices. That power is not borne out of a statute or rule, but "is rooted in the court's equitable power to process litigation to a just and equitable conclusion." *Cooper v. Ducharme*, No. 13-cv-01154, 2014 WL 2021829, at *2 (D. Colo. May 15, 2014) (Tafoya, J) (court has inherent power to amend or alter interlocutory order) (internal citation and quotation omitted); *see In re HealthTrio, Inc.*, No. 09-34404, 2013 WL 6500478 at *8 (Bankr. D. Colo. Dec. 11, 2013) (power to vacate fraudulently obtained judgment); *see also Roadway Express v. Piper*, 447 U.S. 752, 765 (1980) (assess attorneys' fees against counsel for abusive practices); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 35 (1991) (same).

Pursuant to this clear authority, the Court should strike the misleading and false representations made by Plaintiffs in FAC ¶¶ 90-94, Alexander Hood's affidavit

---

[7] While under Federal Rule of Civil Procedure 12(f)(2) a party may move to strike within 21 days of service of the pleading, given the concealment of the defects in the pleading by Plaintiffs' counsel, the Court should allow this motion, which Defendant has submitted within 21 days of learning the details of Plaintiffs' counsel's concealment. Additionally, even if the Court were to decline to extend the 21 day period, under Rule 12(f)(1), the Court has the power to strike without motion by a party.

2010588185_1    11

concerning those paragraphs, and the references to the Order denying dismissal in Plaintiffs' Motion for Conditional Collective Action Certification, all of which omit key facts that change the import of the paragraphs.[8]  As explained above, Keil's electronic log acknowledges that the stipend set by the State Department was a minimum amount, thereby directly undermining the allegations of a stipend "price fixing" conspiracy in FAC ¶¶ 90-94.  Plaintiffs' counsel were in possession of the log, selectively quoted from it in a misleading manner, and did not even give Keil the opportunity to comment on the allegations purportedly drawn from his log.  Ex. 1, 151:13-17.  The prejudice to Defendants if FAC ¶¶ 90-94 remain extant is clear:  Defendants will be forced to continue to defend and engage in discovery regarding a cause of action that Plaintiffs had no good-faith basis to bring.  *See Gilmer v. Colo. Inst. of Art*, 12 F. App'x. 892, 894, 896 n.6 (10th Cir. 2001) (affirming district court's factual finding that plaintiff manufactured evidence, which resulted in related allegations struck from the complaint).

---

[8]  To the extent this Court views striking these portions as a sanction, courts have inherent powers to do so. *Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 107 (D. Colo. 1996) (court "is not forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.") (internal citation and quotation omitted);  *see also Xyngular Corp.*, 2016 WL 4126426 at *23 (issuing sanctions in response to motion not brought under Rule 11).  Importantly, this "sanction" would not be merely punishment, but would correct the demonstrably misleading (to the point of being false) allegations that Plaintiffs used to attempt to save their conclusory antitrust claim.

2010588185_1     12

## II.      The Court Should Reopen Defendants' Motion to Dismiss Briefing.

In allowing the antitrust claims to stand, this Court relied heavily upon FAC ¶¶ 90-94.  Indeed, the Court cited to Judge Posner's description of direct evidence as "the smoking gun" of Plaintiffs' antitrust claims, and dedicated several pages to discussing them. *See* MTD Order at 8-15.  Although the Court relied heavily on this evidence, it also noted, "the Court **does** recognize that this evidence – at least as it is currently pled – is 'weak' direct evidence, insofar as it does not provide critical details, such as the individuals with whom the investigator spoke." (emphasis in original)  More of those details are now available; and the details undercut, rather than support, the allegations upon which Plaintiffs relied in opposing the motions to dismiss.[9]  While circumstantial evidence was also considered, the analysis of such evidence was through the prism of the "direct" evidence that has now been nullified by Keil's testimony and log.  If, as the Kiel testimony indicates, Sponsor employees with whom he spoke considered the State Department directed stipend to be a minimum, the fact that the Sponsors may have advertised the minimum stipend in the same amount does not allege a plausible conspiracy.

Deferring the validity of the antitrust claims to a later date is insufficient, as that approach would give Plaintiffs that to which they are not entitled:  massive and expensive discovery regarding a claim for which they lacked a good-faith basis at the complaint stage.  The "direct evidence" on which Plaintiffs relied was, even in its misleading form, "weak" evidence of conspiracy, and the circumstantial evidence was

---

[9]  Plaintiffs' conduct may also have affected the Court's ruling on other claims, such as the RICO claim.

assessed against the backdrop of purported "direct evidence." Defendants should be entitled to brief and argue the motions to dismiss again, without the prejudice of that wrongfully deceptive "evidence." This Court possesses an inherent power to fashion an appropriate remedy where it has "acted based on the fraudulent representations of [a] party appearing before it." *In re HealthTrio*, 2013 WL 6500478 at *8. Reopening the briefing so that parties may re-brief the motions to dismiss is the only remedy (short of outright dismissal of the claims) that can ameliorate the impact of Plaintiffs' conduct.

### III. Plaintiffs' Reliance Upon The Court's Denial of the Motions to Dismiss the Antitrust Claim Should be Stricken from Plaintiffs' Motion for Conditional Collective Action Certification.

Finally, Plaintiffs' primary argument in favor of conditional certification as recited in their Motion for Conditional Collective Action Certification is that, "there is no real dispute about whether the Plaintiffs and other members of the Proposed Classes are similarly situated" because "[t]he Court has already found that the Plaintiffs have adequately alleged an antitrust conspiracy, meaning that the pleadings satisfactorily allege an agreement amongst the Sponsor Defendants to set wages at an illegally low level that also violates the FLSA." ECF No. 325 at 7. As discussed above, Plaintiffs' allegations regarding this alleged conspiracy, as well as this Court's decision to allow the antitrust allegations to move forward, are premised on inaccurate and incomplete statements presented by Plaintiffs with respect to the private investigator's finding.

For these reasons, although a conditional certification motion is not a typical target for a motion to strike, the equities in this case demand that the Certification argument premised upon the Order denying dismissal be stricken from Plaintiffs' motion. Plaintiffs knew the allegations in those paragraphs lacked evidentiary support

2010588185_1    14

at the time the FAC was filed, and asserted them anyway in a successful effort to save a foundering claim that had no proper place in this wage action.  Defendants uncovered the evidence of the falsehood days before the Motion for Conditional Collective Certification was filed.  It would be a manifest injustice to (1) allow Plaintiffs to rely on an Order derived by their own inaccurate representations, and (2) force Defendants to expend the time and money to defend against the now-disproven allegations.   Plaintiffs should not, under these circumstances, be permitted to rely on a "common policy" basis for certification, even on a conditional basis.

## CONCLUSION

The Court should invoke its inherent power to (1) strike the offending paragraphs in the FAC and the Hood Declaration, and to issue such other relief as the Court may find appropriate, including but not limited to (2) re-open the briefing on the motions to dismiss; and (3) strike the corresponding portion of the Motion for Conditional Collective Action Certification.  Plaintiffs have concealed key information in order to mislead the Court and the Defendants.  This misconduct has prejudiced Defendants at all phases of the litigation up to the present, including but not limited to the Defendants' ability to accurately present their motions to dismiss.

WHEREFORE, Moving Defendants pray that this Court strike FAC ¶¶ 90-94 and all related submissions, grant such further relief as may be necessary and appropriate in law and equity, and award attorneys' fees and costs attributable to this motion, the amount and reasonableness of which to be determined in future proceedings.

Dated: August 11, 2016.         Respectfully submitted,

*s/ Diane Hazel*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

*s/ Kathryn A. Reilly*
Kathryn A. Reilly (reilly@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

***Attorneys for Defendants Agent Au Pair and American Cultural Exchange, LLC d/b/a Go Aupair***

*s/ Brian Alan Birenbach*
Brian Alan Birenbach
(brian@rietzlawfirm.com)
Rietz Law Firm
LLC P.O. Box 5268
114 Village Place #301
Dillon, CO 80435

**Attorneys for Defendants American Cultural Exchange, LLC d/b/a Go Aupair and Au Pair International, Inc.**

*s/ Kathleen E. Craigmile*
Kathleen E. Craigmile
(kcraigmile@nixonshefrin.com)
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
lstone@nixonshefrin.com

**Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair and 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange**

*s/ James E. Hartley*
James E. Hartley (jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway Suite 300
Boulder, CO 80302

**Attorneys for Defendant Cultural Homestay International**

2010588185_1   17

*s/ Susan M. Schaecher*_____
Lawrence L. Lee, Esq.
(llee@laborlawyers.com)
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

**Attorneys for Defendants APF Global Exchange, NFP and American Institute for Foreign Study d/b/a Au Pair in America**

*s/ Bogdan Enica*_____
Bogdan Enica (Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair**

*s/ Brian P. Maschler*_____
Brian P. Maschler
(bmaschler@gordonrees.com)
Gordon & Rees, LLP-San Francisco
275 Battery Street, Suite 2000 San Francisco, CA 94579

John R. Mann (jmann@gordonrees.com)
Peggy E. Kozal (pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Gordon & Reese LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**

*s/ Martha L. Fitzgerald*_____
Martha L. Fitzgerald (mfitzgerald@bhfs.com)
David B. Meschke (dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

***Attorneys for Defendant EurAuPair Intercultural Child Care Programs***

*s/ Brooke A. Colaizzi*_____
Brooke A. Colaizzi (bcolaizzi@shermanhoward.com)
Heather F. Vickles (hvickles@shermanhoward.com)
Raymond M. Deeny (rdeeny@shermanhoward.com)
Erica Lynn Herrera (eherrera@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

***Attorneys for Defendant InterExchange, Inc.***

*s/ William J. Kelly III*_____
William J. Kelly III (wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp (cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

***Attorneys for Defendant USAuPair, Inc.***

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on August 11, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Randall W. Jackson (rjackson@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Boies Schiller & Flexner, LLP
401 East Las Olas Boulevard
Suite 1200
Ft. Lauderdale, FL 33301


Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver
1535 High Street
Suite 300
Denver, CO 80218


*s/ Diane Hazel*
Of: Lewis Roca Rothgerber Christie LLP