**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**


Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

**PLAINTIFFS' SECOND MOTION FOR
CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND INCORPORATED MEMORANDUM OF LAW**

---

## **TABLE OF CONTENTS**

Page

CERTIFICATE OF CONFERAL PURSUANT TO D.C. COLO.LCiv.R. 7.1(A) ................ 1

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 3

I.      THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASSES AND
        APPROVE NOTICE TO THE POTENTIAL OPT-IN PLAINTIFFS. ...................... 3

        A.      Requirements for Conditional Certification .................................... 3

        B.      Plaintiffs and Other Potential Claimants Are Similarly Situated Because
                They Are All Victims of the Same Decision and Policy Implemented by
                the Sponsor Defendants. .......................................................... 6

                1.      Plaintiffs Have Alleged That The FLSA Defendants Were Their
                        Employers. ................................................................ 7

                2.      The FLSA Defendants Each Imposed a Policy That Impacted All
                        Class Members Similarly. ............................................. 8

                        a.      AuPairCare ........................................................ 9

                        b.      Expert Au Pair ................................................. 11

II.     THE NOTICE AND DISCOVERY. .................................................. 13

III.    THE COURT SHOULD APPROVE CLASS REPRESENTATION BY THE
        NAMED PLAINTIFFS .................................................................. 15

CONCLUSION .................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**<u>Cases</u>**

*Baker v. Flint Eng'g & Constr. Co.*,
   137 F.3d 1436 (10th Cir. 1998) ................................................................. 8

*Beall v. SST Energy Corp.*,
   No. 15-cv-01741, 2016 WL 286295 (D. Colo. Jan. 25, 2016) ...................................... 5

*Brown v. Money Tree Mortgage, Inc.*,
   222 F.R.D. 676 (D. Kan. 2004) ................................................................. 5

*Calder v. GGC-Baltimore, LLC*,
   No- BPG-12-2350, 2013 WL 3441178 (D. Md., July 8, 2013) ...................................... 14

*Chavez v. Excel Services S.E.*, No. 13-cv-03299-CMA-BWB,
   2014 WL 4651997 (D. Colo. Sept. 18, 2014) ................................................... 5

*Daugherty v. Encana Oil & Gas, Inc.*,
   838 F. Supp. 2d 1127 (D. Colo. 2011) .......................................................... 5

*Greenstein v. Meredith Corp.*,
   948 F. Supp. 2d 1266 (D. Kan. 2013) .......................................................... 6

*Hodge v. Signia Marketing, Ltd.*,
   No. 15-cv-02839-KMT (D. Colo. June 13, 2016) ............................................... 5

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) ..................................................................... 5, 14

*Johnson v. Am. Airlines, Inc.*,
   531 F. Supp. 957 (N.D. Tex. 1982) ............................................................. 15

*Porter v. West Side Restaurant, LLC*,
   No. 12-1112-JAR-KGG, 2014 WL 1642152 (D. Kan. 2014) ...................................... 6

*Renfro v. Spartan Computer Servs., Inc.*,
   243 F.R.D. 431 (D. Kan. 2007) ................................................................. 5

*Romero v. Producers Dairy Foods, Inc.*,
   235 F.R.D. 474 (E.D. Cal. Apr. 19, 2006) ....................................................... 15

*Smith v. Pizza Hut, Inc.*,
    Case No. 09-cv-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012) .... 4, 5

*Thiessen v. General Elec. Capital Corp.*,
    267 F.3d 1095 (10th Cir. 2001) ................................................................... 4

*Turner v. Chipotle Mexican Grill, Inc.*,
    123 F. Supp. 3d 1300 (D. Colo. 2015) ....................................................... 6

*Tyson Foods, Inc. v. Bouaphakeo*,
    __ U.S. __, 136 S. Ct. 1036 (2016) ............................................................ 4

*Underwood v. NMC Mortgage Corp.*,
    245 F.R.D. 720 (D. Kan. 2007) .................................................................. 5

*Veliz v. Cintas Corp.*,
    2004 WL 2623909 (N.D. Cal. Nov. 12, 2004) .......................................... 15

## **Statutes**

29 U.S.C. § 216(b) ...................................................................................*passim*

## **Rules**

D.C. Colo.L.Civ.R. 7.1(a) ............................................................................... 1

Fed. R. Civ .P. 5 ............................................................................................ 18

## CERTIFICATE OF CONFERRAL PURSUANT TO D.C. COLO.LCiv.R. 7.1(A)

Pursuant to D.C. Colo.L.Civ.R. 7.1(a), Plaintiffs conferred with counsel for all Defendants via email on August 12, 2016, regarding Defendants' position on Plaintiffs' Second Motion For Conditional Certification. Defendants indicated they wished to review the filings before stating their position, and thus did not consent to the relief requested.

## Plaintiffs' Second Motion for Conditional Collective Action Certification[1]

Plaintiffs Laura Mejia Jimenez, Juliane Harning, and Nicole Mapledoram, by and through their counsel from the law firms of Boies, Schiller & Flexner LLP and Towards Justice, hereby move for conditional collective action certification and the issuance of a court-supervised notice (the "Notice") to potential opt-in plaintiffs. Plaintiffs seek conditional certification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), with respect to all current and former *au pairs* who were sponsored by Defendants AuPairCare or Expert Au Pair ("the FLSA Defendants"), at any time during the last three (3) years. In order to facilitate the Notice, Plaintiffs also seek an Order directing the FLSA Defendants to provide Plaintiffs with data, in electronic form, containing the name, last known address, e-mail address, and other identifying information for each such current and former *au pairs*.

## INTRODUCTION

The FLSA Defendants have uniformly determined that *au pairs* shall be paid $195.75 per week for up to 45 hours of work. In so mandating, the FLSA Defendants have a policy of paying the FLSA Plaintiffs less than the federal minimum wage, not to

---

[1] The relief sought herein is in addition to, and not lieu of, that sought in Plaintiffs' Motion for Conditional Certification as to FLSA Defendants InterExchange, Cultural Care, GoAuPair and Au Pair in America, which was filed on July 25, 2016.

1

mention the laws of many states.  Second Amended Complaint ("SAC") ¶¶ 5, 83-92. The uniformity of this policy, applicable to all *au pairs* sponsored by *any* of the Defendants, has been admitted by many of the Defendants. Defendant Cultural Care, for example, advised potential *au pairs*, in writing, that the wage would be "the same regardless of which au pair agency you use." *Id.* ¶ 207.  Similar statements were made to Plaintiffs Jimenez, Harning and Mapledoram, who learned from advertisements by multiple defendants that the pay would be the same no matter which agency sponsored them. *See* Exhibits A-B to the Declaration of Matthew L. Schwartz in Support of Plaintiffs' Second Motion for Conditional Certification ("Schwartz  Decl.") ¶ 2-4 attached hereto as Exhibit 1.

Each of the named plaintiffs, as a so-called standard *au pair*, was paid below the federal minimum hourly wage of $7.25: each one was paid a weekly stipend of approximately $195.75, for up to 45 hours of work, or approximately $4.35 per hour. Each named plaintiff routinely worked in excess of 40 hours per week without receiving overtime compensation.  Each named plaintiff paid fees to the Defendant or agency for the Defendant before she was permitted to begin working as an *au pair*.  Each Plaintiff was subject to the Defendants' policy of deducting "room and board" from her wages. And each Named Plaintiff participated in mandatory training presented by her respective Sponsor Defendant, for which none of the named Plaintiffs were paid to attend.  These statements apply with equal force to every putative class member, resulting from the Defendants' collective decision to implement identical policies with respect to *au pair* wages. Accordingly, collective action is appropriate in this case.  This motion for

conditional certification therefore seeks collective action treatment for all *au pairs* who were sponsored by either of the FLSA Defendants over the last three years.

## ARGUMENT

**I.     THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASSES AND APPROVE NOTICE TO THE POTENTIAL OPT-IN PLAINTIFFS.**

Plaintiffs seek conditional certification pursuant to 29 U.S.C. § 216(b) for the following classes of employees:

- All current and former *au pairs* for whom Defendant AuPairCare Inc. was a J-1 Visa Sponsor.  *See* SAC ¶ 561 (defining the "Au Pair Care 216(b) Class").

- All current and former *au pairs* for whom Defendant Au Pair Care Inc. was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.  *See* SAC ¶ 562 (defining the "Au Pair Care 216(b) [Sub-]Class").

- All current and former *au pairs* for whom Defendant Expert Group International Inc., d/b/a Expert Au Pair, was a J-1 Visa Sponsor.  *See* SAC ¶ 563 (defining the "Expert Au Pair 216(b) Class").

- All current and former *au pairs* for whom Defendant Expert Group International Inc., d/b/a Expert Au Pair, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.  *See* SAC ¶ 564 (defining the "Expert Au Pair 216(b) Sub-Class").

For purposes of this motion, the Au Pair Care 216(b) Class, Au Pair Care 216(b) Sub-Class, the Expert Au Pair 216(b) Class, and the Expert Au Pair 216(b) Sub-Class are referred to collectively as the "Proposed Classes" or simply the "Classes," and each of them is a "Proposed Class" or just "Class."

### A.     Requirements for Conditional Certification.

Section 216(b) of the FLSA allows employees who have been denied the protections of the FLSA to proceed with a collective action; unlike a typical Rule 23

3

class action, however, similarly-situated FLSA claimants must explicitly choose to participate in the class. *See* 29 U.S.C. §216(b).[2]

Courts take a two-step approach to certifying FLSA collective actions. *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). At the first step, which occurs prior to discovery, courts evaluate the pleadings and any supporting affidavits to determine whether potential claimants are similarly situated. *See id.*; *see also Smith v. Pizza Hut, Inc.*, Case No. 09-cv-01632-CMA-BNB, 2012 WL 1414325, at *3 (D. Colo. Apr. 21, 2012). If it appears that they are, the court will conditionally certify the class for the purposes of providing notice to prospective class members, so that they may opt to join the action. *See Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036, 1043 (2016) (the "sole consequence of conditional certification [under § 216] is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court"). As this Court has explained:

> At the first step, prior to discovery, the district court makes a 'notice stage' determination of whether the plaintiffs are similarly situated. For conditional certification at the notice stage, the Tenth Circuit 'require[s] nothing more than

---

[2]     Section 216(b) provides, in relevant part:

> An action [under the relevant provisions of the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

> substantial allegations that the putative class members were together the victims of a single decision, policy or plan.  This initial step creates a lenient standard which typically results in conditional certification of a representative class.'

*Pizza Hut,* 2012 WL 1414325, at *3 (*quoting Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007) (internal citations omitted)); *see generally Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

For purposes of conditional certification, "[a]lthough the FLSA does not define 'similarly situated,' 'generally, where putative class members are employed in similar positions the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single, decision, policy or plan.'"  *Chavez v. Excel Services S.E.*, No. 13-cv-03299-CMA-BWB, 2014 WL 4651997, at *1 (D. Colo. Sept. 18, 2014) (*quoting Underwood v. NMC Mortgage Corp.*, 245 F.R.D. 720, 723 (D. Kan. 2007)); *see also Pizza Hut,* 2012 WL 1414325, at *6 (noting that drivers were subject to the same practice nationwide and explaining "[t]he fact that delivery drivers from every region have not yet opted in to this action does not mean that a nationwide class cannot exist"); *Beall v. SST Energy Corp.*, No. 15-cv-01741, 2016 WL 286295, at *1 (D. Colo. Jan. 25, 2016).

Because certification at stage one is only conditional, "the standard of proof 'is a lenient one that typically results in class certification.'"  *Hodge v. Signia Marketing, Ltd.*, No. 15-cv-02839-KMT, slip op. at 3 (D. Colo. June 13, 2016) (quoting *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004)); *see also Daugherty v. Encana Oil & Gas, Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. 2011) (standard for conditional certification at the notice stage is a "lenient standard which typically results

in conditional certification of a representative class").  Given this "lenient" standard, a court at stage one does not resolve factual disputes, make credibility determinations, or make determinations about the merits.  *See Porter v. West Side Restaurant, LLC*, No. 12-1112-JAR-KGG, 2014 WL 1642152, at *11 (D. Kan. 2014); *Greenstein v. Meredith Corp.*, 948 F. Supp. 2d 1266, 1267 (D. Kan. 2013).

After discovery is closed, the second step of the certification analysis is conducted as the court determines whether the case should continue as a collective action.  At that point, the court will conduct a more searching review of whether the class is in fact similarly situated.  *See Smith* at *3.  At the initial stage, however, courts take a "lenient" view of conditional certification, *see, e.g., Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1302 (D. Colo. 2015) ("a proper reading of the FLSA at this stage of collective action proceedings requires little more than the permissive joinder of putative class members").

> **B.    Plaintiffs and Other Potential Claimants Are Similarly Situated Because They Are All Victims of the Same Decision and Policy Implemented by the Sponsor Defendants.**

Applying these standards, the Court should conditionally certify the Proposed Classes so that notice may go out to *au pairs*.  Indeed, at the most recent scheduling conference in this case, Magistrate Judge Tafoya expressed her assumption that this action would be preliminarily certified "just because the burden is so low."  *See* Exh. F, Schwartz Decl., at 106:15.  It is particularly important that the Court does so now, because – although Plaintiffs have served the Sponsor Defendants with interrogatories that would allow Plaintiffs to identify potential class members, among other things –

each and every one of the Defendants have objected to the production of information or documents pertaining to the putative class prior to certification.

Certification is appropriate because there is no real dispute about whether the Plaintiffs and other members of the Proposed Classes are similarly situated.  The Court has already found that the Plaintiffs have adequately alleged an antitrust conspiracy, meaning that the pleadings satisfactorily allege an agreement amongst the Sponsor Defendants to set wages at an illegally low level that also violates the FLSA. Specifically, Plaintiffs have alleged that a uniform policy amongst the Sponsor Defendants set the weekly wages for all *au pairs* below the federal minimum wage, failed to compensate *au pairs* for hours worked in excess of forty per week, failed to compensate *au pairs* for time spent in training, and took illegal deductions or credits from the *au pairs'* wages.

### 1.   Plaintiffs Have Alleged That The FLSA Defendants Were Their Employers.

The Court has already concluded that the Amended Complaint adequately alleges that the FLSA Defendants Cultural Care, InterExchange, Au Pair in America and GoAuPair were and are joint employers of the Plaintiffs.  ECF Doc. 258 at 19-20.  In the Second Amended Complaint, Plaintiffs have raised similar allegations pertaining to Defendants AuPairCare and Expert Au Pair. The FLSA Defendants exert considerable control over *au pairs*' working conditions. For example, the FLSA Defendants recruit and screen *au pairs* before placing them with a host family.  SAC ¶ 49. The FLSA Defendants are required to and do provide training to each *au pair* before the *au pair* begins working with a host family, and in some instances, throughout the course of the

*au pair*'s placement with the host families.  *Id.* ¶ 11, 235, 361.  The FLSA Defendants contractually established the class members' daily duties; exclusively determined the class members' right to continued participation in the program; and had the right to terminate class members from their positions. And particularly relevant here, the FLSA Defendants dictate the *au pair* wages.  *See* Exh. A, Schwartz Decl., ¶ 21.

Magistrate Judge Tafoya relied on these facts in reaching her conclusion that, applying the Tenth Circuit's economic realities test,[3] Plaintiffs' allegations are sufficient to state FLSA claims against the Defendants.  *See* ECF Doc. 240 at 22-23.  The Court likewise held that the First Amended Complaint adequately alleged that the FLSA Defendants Cultural Care, InterExchange, Au Pair in America and GoAuPair are Plaintiffs' joint employers. *See* ECF Doc. 258 at 19-20.  For the same reasons, the Second Amended Complaint sufficiently alleges that the FLSA Defendants jointly employ or employed the FLSA class members for conditional certification purposes.

## 2.   The FLSA Defendants Each Imposed a Policy That Impacted All Class Members Similarly.

As this Court has already found, the First Amended Complaint also adequately alleged that the FLSA Defendants Cultural Care, InterExchange, Au Pair in America and GoAuPair violated the FLSA and paid Plaintiffs and the other class members an unlawful wage through a policy and practice of, among other things: (a) imposing an unlawful wage of $195.75 per week for up to 45 hours of work, in contravention of the federal minimum wage; (b) failing to pay *au pairs* overtime for hours worked in excess of

---

[3]      *See generally Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1439 (10th Cir. 1998).

40 per week; (c) improperly crediting against *au pairs'* wages items such as room and board; and (d) failing to pay *au pairs* for hours worked, such as during mandatory training periods.  The Second Amended Complaint raises identical claims with respect to FLSA Defendants AuPairCare and Expert Au Pair.

Because these policies and practices impacted each *au pair* in fundamentally the same way, conditional certification is appropriate.  For the sake of completeness, we recount the critical allegations against each of the FLSA Defendants in turn.

### a.    AuPairCare

AuPairCare's wage policy applies to all regular AuPairCare *au pairs*, and thus all members of the AuPairCare 216(b) Class. Indeed, AuPairCare uses its website to advertise a uniform weekly stipend of $195.75, *see S*AC ¶ 297; *see also* Exh. D, Schwartz Decl. ("Program Costs, Payment Plans & Discounts with AuPairCare").

AuPairCare warned potential *au pairs* that offers to pay higher wages are likely a scam:  "Legitimate host families will also not offer you a higher stipend than what is listed in the regulations published by the U.S. Department of State for the Au Pair Program."  The message continues:  "There's no need to be overly alarmed regarding this message.  Just be aware and cautious."  *See* Exh. A Schwartz Decl. ¶ 17;  SAC ¶ 146.

Named Plaintiffs Laura Mejia Jimenez and Juliane Harning had experiences with AuPairCare consistent with these advertised policies. Ms. Jimenez compared several sponsor agencies before electing to apply to AuPairCare. She learned that all of the sponsors offered the same weekly wage to au pair. When she met with the agent of

AuPairCare in Colombia, the representative told Ms. Jimenez that because the stipend amount was set by the United States Government, that is the amount she would be paid. Jimenez Decl. ¶¶ 5-6.

Ms. Jimenez matched with a family in Pennsylvania but before she could begin working, she attended AuPairCare's mandatory training. *Id.* ¶ 9. The training, which AuPairCare conducts in New Jersey, provided instruction about the responsibilities and duties of an *au pair*. Ms. Jimemez was not paid for the four days she spent in training. *Id.* ¶ 9. At the training, Ms. Jimenez and the other attendees were told that the wages they would be paid were uniform: "all au pairs were paid the same, no matter where they work and no matter how many children they care for." *Id.* ¶ 11. Throughout her time as an *au pair*, Ms. Jimenez consistently worked 45 hours per week. Her host family paid her based on the stipend, and rounded the weekly amount to $200. *Id.* ¶ 13.

Ms. Harning first applied to AuPairCare in 2007, and spent a year with a family in Michigan in 2008. Harning Decl. ¶¶ 2, 6. Ms. Harning attended training presented by AuPairCare in New Jersey for which she was not paid. *Id.* ¶ 6. At the training, she and the other *au pair* were told that all au pair are paid the same stipend and it is an amount set by the U.S. Department of State. ¶ 7. Indeed she was paid throughout the year at the minimum stipend amount; she was never compensated for her overtime, even when a family emergency resulted in Ms. Harning to become the primary, round-the-clock care taker of the families 5 children. *Id.* ¶ 11-12.

Ms. Harning applied a second time to AuPairCare and upon acceptance, she again attended the mandatory training presented by AuPairCare in New Jersey; this

time, she had an extra day of instruction focused on infant care. ¶ 18. Before embarking, Ms. Harning received an email from AuPairCare addressed to "au pair" and warning all recipients about the potential for fraud and internet scammers. The email warned her that "[l]egitimate host families will also not offer you a higher stipend than what is listed in the regulations published by the U.S. Department of State for the Au Pair Program." *Id.* ¶ 17. Ms. Harning's host family paid her $200 weekly for up to 45 hours of work weekly.

### b.    Expert Au Pair

Expert Au Pair's policy of setting the weekly stipend at $195.75 for all *au pairs* is advertised on its website, where it informs potential applicants that its program "offer[s] au pairs a weekly salary of US$195.75."  SAC ¶¶ 117, 510. Though Expert Au Pair notes on its website that the amount of the stipend is a minimum, its most prominent message to potential au pair reports one standard stipend amount. In the brightly colored charts comparing the "regular" program to the "educare" program, Expert Au Pair lists the pay per week for a standard au pair as "$195.75".  Exh. E, Schwartz Decl. These policies are common to, and similarly affected, each members of the Expert Au Pair 216(b) Class and the Expert Au Pair 216(b) Sub-Class.

Nicole Mapledorem worked for Expert Au Pair and was subjected to its policies. Ms. Mapledoram applied to Expert Au Pair in January 2014. She investigated other sponsor agencies, and surmised that they all offered the same wage to standard *au pair*. [Mapledoram Decl. ¶¶ 2-3]. Ms. Mapledoram paid Expert Au Pair $500 in fees and contributed another $500 for her airfare. *Id.* ¶ 4. Ms. Mapledoram was accepted by

Expert Au Pair into the program and matched with a family in Colorado. Before she begin working as an *au pair*, Ms. Mapledoram attended the five-day mandatory training Expert Au Pair presented in Florida. *Id.* ¶ 5. Ms. Mapledoram was not paid to attend this training, which provided instruction on the duties she would be expected to perform as an *au pair*. At the training, a representative of Expert Au Pair informed the attendees they would all be paid the same weekly stipend, and that it was an amount set by the Department of State. *Id.* ¶ 6.

Ms. Mapledoram's family paid her $195.75 per full week that she worked, requiring a minimum—not a maximum—of 45 hours of work. In fact, her family deducted from her wages any time under 45 hours she worked in a particular week. Her family calculated that her hourly wage was 195 divided by 45 (4.33), and used this multiplier to reduce her paycheck by the number of hours she failed to work, as when she took a sick day. *Id.* ¶ 11. Ms. Mapledoram rematched with another family in Colorado in February of 2015. Her second host family paid her based on the minimum stipend, but rounded the weekly amount to $200. ¶ 14. Ms. Mapledoram worked 45 hours per week for her family and was not compensated extra for her time in excess of 40 hours per week.

\*       \*       \*

Both of the FLSA Defendants advertised that its *au pairs* would be paid a set wage that was less than the federal minimum wage, involved working more than 40 hours per week without overtime pay, and which incorporated an unlawful credit for room and board—after requiring payment of some amount of administrative fees to the

respective Defendant to participate in the *au pair* program.  Both of the FLSA

Defendants also required its *au pairs* to attend mandatory trainings, but did not

compensate the *au pairs* during that time at all.  In short, *au pairs* employed by each of

the FLSA Defendants were injured as the result of a uniform policy and practice, and

the members of each of the Proposed Classes are therefore similarly situated for

conditional certification purposes.

## II.      THE NOTICE AND DISCOVERY.

Plaintiffs request that the Court approve the proposed form of notice (the

"Notice"), attached hereto as Exhibit 2, to be sent to all members of each of the

Proposed Classes.  The Notice accurately informs the potential opt-ins of the nature of

the suit, informs them of their right to join the suit and how they may do so, and advises

them that their employers may not retaliate against them as a result of their

involvement.  Many of the potential class members will be former *au pairs* who have

returned to their home countries after completing their time as *au pairs* in the United

States.  As a result, a somewhat longer opt-in period is necessary to ensure that notice

is received by the *au pairs* in their foreign countries and they have sufficient time to

return the notices.  Plaintiffs therefore request that the Court grant a 120-day opt-in

period, with a reminder notice being issued on or about the 60 day mark.

In order to reach the opt-in class members, Plaintiffs further respectfully request

that the Court order each FLSA Defendant to produce, within 14 days of the Court's

Order, a list providing the following identifying information for potential class members:

- The names of all *au pairs* sponsored by the Defendant at any time on or after August 15, 2013;

- The *au pair's* last known addresses;
- The *au pair's* home country address;
- Any and all e-mail addresses associated with the *au pair*;
- Any and all telephone numbers (including cellular numbers) associated with the *au pair*;
- Any and all other contact information for the *au pair*, such as Facebook ID, Twitter handle, Skype address, or the like;
- The *au pair's* dates of employment;
- The *au pair's* date of birth;
- The *au pair's* social security number, alien number (known as an "A number"), or other government issued identifier;
- The *au pair's* passport number and country of issuance;
- A copy of the *au pair's* J-1 Visa and supporting application; and
- The name, address, telephone number(s), and e-mail addresses(s) for any family or families that hosted the *au pair*.

Plaintiffs also respectfully request that the Court require the FLSA Defendants to update the list every 30 days to include new hires during the pendency of this litigation; Plaintiffs will provide notice to the new potential opt-ins upon receipt of those updates.

Plaintiffs respectfully request the Court's permission to deliver the Notice by mail, e-mail or comparable electronic communications (such as via Facebook), and publication. Notice serves the purpose of informing employees potentially harmed by the employers' alleged unlawful pay policies that a suit is pending that may provide them with relief. *Hoffman-LaRoche*, 493 U.S. at 172. To maximize the benefit of court-ordered notice, and because of the material likelihood that Plaintiffs will not be able to reach many putative class members directly, such publication is warranted for this opt-in class.

Electronic mail, in particular, has become "the norm" for notice. *Calder v. GGC-Baltimore, LLC*, No- BPG-12-2350, 2013 WL 3441178, at *3 (D. Md., July 8, 2013). In addition to requiring written notice mailed or e-mailed or otherwise personally delivered

to the opt-in class members, the Court should require the FLSA Defendants to post notice on their websites to ensure the notice will reach this particularly transient class. *See, e.g.*, *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. Apr. 19, 2006) (requiring notice by mail and posting); *Veliz v. Cintas Corp.*, 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (requiring notice to be posted at all employer's job sites); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (requiring notice by mail and posting on employer's bulletin boards).

The potential opt-ins are a highly transient group. Upon completion of the *au pair*'s year in the United States (or two, if the *au pair* extends and the relevant Sponsor Defendant agrees to seek a visa renewal), he or she returns to her home country, as each of the named Plaintiffs have done. Once an *au pair* leaves the United States, even an e-mail address may not ensure reliable communication with the *au pair*.  *See* Exh. F, Louis Decl., ¶ 16.  Plaintiffs also seek court approval for submission of electronically signed opt-in notices from class members, which will allow class members to submit their consent to join without incurring the cost or delay of mailing such forms.

**III.    THE COURT SHOULD APPROVE CLASS REPRESENTATION BY THE NAMED PLAINTIFFS**

Finally, the Court should approve the named Plaintiffs as the representatives of the relevant Proposed Class or Classes.  Named Plaintiffs Laura Mejia Jimenez, Juliane Harning and Nicole Mapledoram are satisfactory representatives of the proposed FLSA classes. As set forth above, Mmes. Jimenez and Harning are former employees of AuPairCare and they are familiar with and were subjected to the pay policies at issue in this suit.  Similarly, Ms. Mapledoram is a former employee of Expert Au Pair and was

subjected to, and is familiar with, the pay policies of Expert Au Pair at issue in this lawsuit.  Each of the named Plaintiffs will continue to fairly and adequately protect the interests of the relevant Class or Classes.

## **CONCLUSION**

For the reasons given above, Plaintiffs respectfully ask that the Court:

1. Conditionally certify Plaintiffs' FLSA claims against Defendants AuPairCare and Expert Au Pair as collective actions pursuant to 29 U.S.C. § 216(b);

2. Order the FLSA Defendants to provide a list of all *au pairs* sponsored by the respective Defendant on or after August 15, 2013, including the identifying information set forth above;

3. Order that the FLSA Defendants provide the information within 21 days of an Order approving notice by this Court;

4. Authorize Plaintiffs to provide notice via the form attached as Exhibit 2 to all *au pairs* identified by the FLSA Defendants by mail, e-mail, and other direct electronic means, such as via Facebook, and to post the Notice and consent form on a website established by class counsel;

5. Order the FLSA Defendants to conspicuously post the Notice and consent form on their own websites;

6. Order a 120 day opt-in period to begin on the date that the Notice is mailed for each potential opt-in class member to opt into the case;

7. Authorize Plaintiffs to mail, e-mail, or otherwise serve a reminder notice to potential class members at the 60 day mark; and

8. Designate named Plaintiffs Laura Mejia Jimenez, Juliane Harning and Nicole Mapledoram to serve as representatives of the conditional classes.

Dated: August 15, 2016

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

 /s/  Matthew L. Schwartz
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
575 Lexington Avenue
New York, New York  10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel.: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org
*Attorneys for Plaintiffs*

**Certificate of Service**

I hereby certify that on August 15, 2016, I served a true and correct copy of the

forgoing on the individuals below pursuant to F.R.C.P. 5.

Heather Fox Vickles, Esq.
Brooke A. Colaizzi, Esq.
Raymond M. Deeny, Esq.
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: 303-297-2900
Fax: 303-298-0940
hvickles@shermanhoward.com
bcolaizzi@shermanhoward.com
redeeny@shermanhoward.com

William J. Kelly, III, Esq.
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
Tel: 720-236-1800
Fax: 720-236-1799
wkelly@kellywalkerlaw.com

Meshach Y. Rhoades, Esq.
Martin J. Estevao, Esq.
ARMSTRONG TEASDALE, LLP
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Tel: 720-722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

Bogdan Enica, Esq.
111 Second Avenue NE, Suite 204
St. Petersburg, FL 33701
Tel: 727-388-3472
bogdane@hotmail.com

David Meschke, Esq.
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1219
Fax: 303-223-1111
dmeschke@bhfs.com

James Hartley, Esq.
Jonathan S. Bender, Esq
HOLLAND & HART
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Tel: 303-295-8000
jhartley@hollandhart.com
jsbender@hollandhart.com

Adam A. Hubbard, Esq.
HOLLAND & HART
1800 Broadway, Suite 300
Boulder, CO 80302-5234
Tel: 303-473-2700
aahubbard@hollandhart.com

Robert M. Buchanan, Jr.
Joan A. Lukey
Lyndsey M. Kruzer
Michael T. Gass
Justin J. Wolosz
Choate Hall & Stewart LLP
Two International Place
Boston, MA 02110
rbuchanan@choate.com
joan.lukey@choate.com
lkruzer@choate.com
mgass@choate.com

Jessica L. Fuller
Diane Hazel
James M. Lyons
Lewis Roca Rothgerber Christie LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
jfuller@lrrc.com
dhazel@lrrc.com
jlyons@lrrc.com

Thomas B. Quinn, Esq.
Peggy E. Kozal, esq.
John R. Mann, Esq.
GORDON & REES, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Tel: 303-534-5160
Fax: 303-534-5161
tquinn@gordonrees.com
pkozal@gordonrees.com
jmann@gordonrees.com

Brian P. Maschler, Esq.
GORDON & REES, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-986-5900
Fax: 415-986-8054
bmaschler@gordonrees.com

Kathryn A. Reilly, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: 303.244.1983
Fax: 303.244.1879
reilly@wtotrial.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
P.O. Box 5268
114 Village Place, #301
Dillon, CO 80435
Tel: 970-468-0210
Fax: 970-468-0371
brian@rietzlawfirm.com

Lawrence L. Lee, Esq.
Susan M. Schaecher, Esq.
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651
llee@laborlawyers.com
sschaecher@laborlawyers.com

Lawrence L. Lee, Esq.
Susan M. Schaecher, Esq.
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651
llee@laborlawyers.com
sschaecher@laborlawyers.com

Kathryn A. Reilly, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: 303.244.1983
Fax: 303.244.1879
reilly@wtotrial.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
P.O. Box 5268
114 Village Place, #301
Dillon, CO 80435
Tel: 970-468-0210
Fax: 970-468-0371
brian@rietzlawfirm.com

Lawrence, D. Stone
Kathleen E. Craigmile
Nixon Shefrin Hensen Oburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood, Vilage, CO 80111
303-773-3500
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

Christian Hammond, Esq.
DUFFORD & BROWN, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
chammond@duffordbrown.com

Lawrence D. Stone
Kathleen E. Craigmile
Nixon Shefrin Hensen Oburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood, Vilage, CO 80111
303-773-3500
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

Christian Hammond, Esq.
DUFFORD & BROWN, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
chammond@duffordbrown.com


                              /s/  Matthew L. Schwartz
                              Matthew L. Schwartz