IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.,

      Plaintiffs,

v.

INTEREXCHANGE, INC., et al.,

      Defendants.

---

**DEFENDANT INTEREXCHANGE, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTON CERTIFICATION
AND INCOPRORATED MEMORANDUM OF LAW (DOC. #325)**

---

      Defendant InterExchange, Inc. ("InterExchange") hereby opposes Plaintiffs'

Motion for Conditional Collective Action Certification ("Motion") (Doc. #325).[1]

## I.    INTRODUCTION.

      InterExchange is a non-profit agency and one of sixteen designated sponsors for

the Department of State's ("DOS") J-1 visa au pair program.[2]  Plaintiff Johana Paola

Beltran ("Beltran") is a former au pair whom InterExchange sponsored from August

---

[1] Plaintiffs filed a Motion to Amend and proposed Second Amended Complaint and a Second Motion for Conditional Collective Action Certification on August 15, 2016.  (Doc. #329, 330.)

[2] At the time the Complaint was filed, DOS had fifteen designated sponsors.  Currently, sixteen agencies are designated sponsors for the J-1 au pair program.

2012 to November 2012.  On November 13, 2014, Beltran commenced this action against InterExchange and fourteen other designated au pair sponsors ("Defendants"). (Doc. #1.)  Beltran, joined by new Plaintiffs Hlatshaneni, Deetlefs, Cardenas, and Gonzalez, filed a First Amended Complaint on March 13, 2015.  (Doc. #101.)  The proposed Second Amended Complaint, filed August 15, 2016, proposes to add named Plaintiffs Rascon, Jimenez, Harning, and Mapledoram.  (Doc. #329-2.)  Beltran is the only named or proposed named Plaintiff who was sponsored by InterExchange.

The regulations governing the au pair program, promulgated by DOS, mandate that au pairs be "compensated at a weekly rate based upon 45 hours of child care services per week."  22 C.F.R. § 62.31(j)(1).  Plaintiffs do not dispute that DOS has communicated to sponsors that, since 2009, this weekly rate is $195.75.  (Doc. #101 at ¶ 83; see also Exhibit A, Declaration of Michael McHugh, hereafter "McHugh Decl.," ¶¶ 11-12.)  Notwithstanding Plaintiffs' allegations in this case, the DOS communications set out the calculation for the stipend that satisfied 22 C.F.R. § 62.31(j)(1), which included a 40 percent credit for the au pair's room and board.  (McHugh Decl. ¶ 13.)  Although the stipend is based on a maximum of 45 hours of work per week, the stipend calculation distributed by DOS does not include overtime.  (Id.)

Plaintiffs allege that all Defendants have conspired to fix the weekly au pair stipend at exactly $195.75.  (Doc. #101 at ¶¶ 83-84; Doc. #325 at p. 1-2.)  Plaintiffs also allege that the Defendants are joint employers of their respective sponsored au pairs and allege the following FLSA violations against eight Defendants, including InterExchange:  (1) the room and board deduction is illegal, and therefore the au pair

stipend of $195.75 computed by DOS and communicated to the sponsors and au pair program participants fails to compensate au pairs at least federal minimum wage for all hours worked; (2) au pairs did not receive overtime compensation for hours worked over 40 in one week; and (3) Defendants did not pay au pairs for the time they spent in DOS-mandated training prior to beginning their au pair year.  (Doc. #101 at ¶¶ 289; 501-12; Doc. #325 at p. 2.)   Beltran seeks conditional certification of a class pursuant to § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  (Doc. #325.) The class she seeks to conditionally certify consists of "all current and former au pairs for whom Defendant InterExchange, Inc. was a J-1 Visa Sponsor" from July 25, 2013 to the present (the "InterExchange class").   (Doc. #325 at pp. 1, 3.)  For the reasons set forth below, the Court should deny conditional certification of the InterExchange class.

## II.      ARGUMENT.

A. Standard for Conditional Class Certification.

For conditional certification of a class under § 216(b), Beltran must demonstrate that she is "similarly situated" to the putative InterExchange class members.  Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001).    At the notice stage, Beltran must present "substantial allegations" that the putative class members were together the victims of a *single decision, policy, or plan.*  Id. at 1102 (emphasis added).

B. Beltran Is Not a Member of the Class She Seeks to Represent.

Beltran cannot serve as a class representative for the InterExchange class because she is not part of the proposed class.  Beltran seeks conditional certification of a class of former InterExchange au pairs "during the last three (3) years."  (Doc. #325 at

p. 1.)  As the Motion was filed July 25, 2016, the proposed class encompasses au pairs sponsored between July 25, 2013 and July 25, 2016.  (Doc. #325 at p. 20.)  Beltran participated in the au pair program between August 2012 and November 2012.  (Doc. #325-1, Ex. D, at ¶¶ 7-16.)  Beltran is not a member of the proposed class.  Although the FLSA collective action process does not explicitly adopt the requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure, adequacy of class representation is still relevant.  Wilkerson v. Martin Marietta Corp., 875 F. Supp. 1456, 1461 (D. Colo. 1995); Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 682 (D. Kan. 2004).  It is well settled that the first requirement for an adequate class representative is that the named plaintiff be a member of the class.  E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1216 (10th Cir. 2014); Stubbs v. McDonald's Corp., 227 F.R.D. 661, 665 (D. Kan.) (adopting the principle in the FLSA collective action context).  Although opt-in plaintiffs may recover for different time periods because consents will be filed at different times, *at no time* was Beltran part of the proposed class.

This defect is even more pronounced in the context of the overtime claim still pending against InterExchange.  The Court ruled that Plaintiffs' overtime claims apply only to work performed on or after January 1, 2015, due to new Department of Labor regulations regarding the overtime exemption for live-in domestic service employees. (Doc. #258 at p. 27 [adopting recommendation at Doc. #240 pp. 27-28].)  Beltran was an au pair in 2012.  Therefore, she has no claim for unpaid overtime under the FLSA and cannot adequately represent any class with respect to overtime claims under the

FLSA.  Beltran seems to acknowledge in that, unlike other named Plaintiffs, she does not seek to conditionally certify a sub-class for overtime.  (Doc. #325 at p. 3.)  However, the proposed Second Amended Complaint still contains this claim against InterExchange.  (Doc. #329-2 at ¶¶ 595, 601.)  The claim should be dismissed; Beltran cannot prosecute this claim much less represent a class for it.  Beltran is not a member of the proposed class, and for that reason alone the Motion should be denied.

C. <u>Beltran Has Not Met the Requirements for Conditional Class Certification.</u>

Even if Beltran were an appropriate class representative, she has not set forth the substantive allegations necessary to show that she and the putative InterExchange class members were similarly situated in that they were the victims of a single decision, policy, or plan.  <u>Thiessen</u>, 267 F.3d at 1105.

1. *Beltran fails to present allegations about other proposed class members, and her own allegations negate a common decision, policy, or plan.*

Beltran does not make a single allegation about, much less provide a declaration from, any other au pair sponsored by InterExchange.  In her deposition, Beltran was questioned about the au pairs she met or came to know during her participation in the program.  She could not provide any substantive information about their experiences, nor did she provide any information about their desire to join the lawsuit.  (Exhibit B, Beltran Dep. 118:4-123:15; 123:16-19; 124:6-126:20.)  In most cases, she had no knowledge of which agency sponsored their J-1 visas.  (<u>Id.</u>)  Beltran's experience alone is insufficient to establish a class of similarly situated InterExchange au pairs.  Courts generally require a plaintiff seeking conditional certification to demonstrate that other aggrieved individuals exist, that other individuals wish to join the lawsuit, and that the

plaintiff is similarly situated to these individuals.  Barten v. KTK & Assoc., Inc., No. 8:06-CV-1574-T-27EAJ, 2007 WL 2176203, at *2 (M.D. Fla. July 26, 2007).  Simply alleging that other similarly situated persons exist is insufficient.  Shaffer v. M-I, LLC, No. H-14-2966, 2015 WL 7313415, at *3 (S.D.Tex. Nov. 19, 2015); see also Stubbs, 227 F.R.D. at 666.  In Stubbs, despite the plaintiff's affidavit stating that he had spoken to coworkers who confirmed that their circumstances were similar to his, these general allegations were insufficient to show similarity for purposes of conditional collective action class certification.  Id.; see also Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *3 (S.D.N.Y Nov. 13, 2009) (testimony that de facto policy applied to dozens, if not hundreds, of other employees and specifically naming five was "anecdotal hearsay" and insufficient to show a common plan or practice).

Beltran alleges that InterExchange told host families that they must pay *at least* $195.75 per week.  (Doc. #325 at p. 2.)  That is, $195.75 is a minimum.  InterExchange does not pay stipends to au pairs and does not dictate what a host family pays above $195.75.  (McHugh Decl. ¶¶ 15, 19.)  Beltran offers nothing from which the court could infer that other proposed class members were paid only $195.75 per week and were so paid as a result of an InterExchange policy to hold the stipend at exactly $195.75.

In addition to the defects noted above, Beltran's chief complaint about her au pair experience and her request for damages are fundamentally different from the legal claims brought against InterExchange.  Beltran asserts that her host family made her work as a housekeeper and that she performed few, if any, au pair duties.  (Beltran Dep. 138:22-139:18; 187:5-12)  Her damages calculations, unspecific though they are,

are based on what she believes she should have earned as a *housekeeper*, not as an au pair.[3]  (Id.)  The First Amended Complaint seeks damages for the named Plaintiffs and those similarly situated for the work they did as au pairs, tied to the prevailing wage for educated, trained, live-in nannies, on the theory that the Defendants improperly excluded au pairs from the nanny market in the United States.  (Doc. #101 at ¶ 148.)  Whether or not InterExchange manipulated the au pair stipend is irrelevant to Beltran's claims, as Beltran is not seeking recovery as an au pair.[4]  Given Beltran's unique allegations regarding her experiences—and her alleged unique damages as a result— she is not a suitable class representative.  See Crowley v. Paint & Body Experts of Slidell, Inc., No. 14-172, 2014 WL 2506519, at * 4 (E.D. La. June 3, 2014) (a court may deny conditional certification if the action arises from purely personal circumstances).

The proper inquiry as to conditional class certification is the extent to which Beltran can establish a single policy *within InterExchange* that renders her and the putative InterExchange class members similarly situated.  Notwithstanding the uniqueness of her allegations, Beltran has not set forth substantial allegations of a common illegal policy within InterExchange.  (Doc. #325 at pp. 9-10.)  Her "critical allegations," as she describes them, wholly fail to exemplify any "uniform policy" to manipulate the stipend.  InterExchange, like every sponsor, is required to follow DOS regulations regarding the au pair program, including stipend and hours requirements.

---

[3] To further emphasize how differently Beltran considers herself from other au pairs, she testified that the childcare references on her au pair application were false, and it made no difference because she did not work as an au pair.  (Beltran Dep. 210:15-18.)

[4] Beltran has no knowledge that InterExchange contributed at all with respect to Beltran's hours or duties with the Noonans.  (Beltran Dep. 129:12-15; 159:2-16, 21-25.)

See generally 22 C.F.R. § 62.10; 22 C.F.R. § 62.31(j).  DOS has repeatedly published the current minimum stipend of $195.75 per week, as well as its formula for the stipend, which assumes a 45-hour week and a 40 percent credit for room and board, but does not in any way account for overtime.  (Doc. #101 at ¶ 83; McHugh Decl. ¶¶ 10-13.) InterExchange advertised that au pairs must receive *at least* $195.75 per week, not that the stipend is exactly $195.75 per week.  InterExchange's representation about an au pair earning nearly $10,000 per year is consistent with the minimum DOS-set stipend; InterExchange could not fairly represent otherwise, as the host families ultimately determine the amount of the stipend, subject to the regulatory minimum.  (See McHugh Decl. ¶ 16.)  InterExchange's warnings to au pairs about scams do not suggest the existence of an illegal policy, either.  InterExchange has confirmed scams involving offers of slightly more than $195.75 per week, and offers of significantly more than $195.75 per week, including offers of monthly salaries.  (See McHugh Decl. ¶¶ 27-29.)

Beltran's experiences were fundamentally different from other InterExchange au pairs because each au pair was placed with a *different host family*.  Her specific experience is a stark example, as she asserts she is due wages for completely different work, unlike the other named plaintiffs.  Moreover, despite the broad-sweeping allegations against the Defendants as a group, Beltran's specific allegations regarding InterExchange belie the existence of an Interexchange plan to fix the stipend.  Beltran has not set forth the substantial allegations necessary for conditional certification of a class against InterExchange, and her Motion should be denied.

> 2. *Beltran cannot use other named Plaintiffs to establish that she and other InterExchange au pairs are similarly situated as victims of a single policy.*

Attempting to compensate for the fatal defect in her request for conditional class certification, Beltran asserts alleged comparisons among herself and the other named Plaintiffs in lieu of comparison with other potential InterExchange class members. (See Doc. #325 at pp. 1-2, 15.) However, the other named Plaintiffs were sponsored by different Defendants. (Doc. #101 at ¶¶ 356, 372, 394, 412.) Just as Beltran cannot be a class representative when she does not belong to the proposed class, she cannot prove that she is similarly situated to other putative InterExchange class members when none of her comparators are or would be part of the InterExchange class.

Nevertheless, Beltran asserts that "there is no real dispute about whether the Plaintiffs and other members of the Proposed Classes are similarly situated" because "[t]he Court has already found that the Plaintiffs have adequately alleged an antitrust conspiracy, meaning that the pleadings satisfactorily allege an agreement amongst the Sponsor Defendants to set wages at an illegally low level that also violates the FLSA." (Doc. #325 at p. 7.) Even assuming the antitrust allegations met her burden to show similarity among the putative *InterExchange* class members, Beltran's reliance on the allegations of an antitrust conspiracy cannot help her now with respect to conditional certification. Beltran has not identified a single admission of a conspiracy that allegedly came from or can be tied to InterExchange. (See Doc. #101 at ¶¶ 90-94; Doc. #147-1 at ¶¶ 10, 43; Doc. #325 at p. 2.) Despite the lack of any nexus between the alleged conspiracy and InterExchange, in declining to dismiss the antitrust claim, the Court relied heavily on what it described as "well-pled allegations of a direct agreement

9

among the Sponsors," alleged telephone conversations between a private investigator hired by Plaintiffs' attorneys and unnamed representatives of unnamed Defendants. (Doc. #258 at pp. 9-10.)  These conversations allegedly resulted in admissions of an agreement among *all* of the sponsors to illegally depress the au pair stipend.[5]  (Id.)

As explained in detail in Moving Defendants' Joint Motion to Strike Repudiated Allegations and For Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated Memorandum (Doc. #327) (hereafter "Motion to Strike"), filed August 11, 2016, the recent deposition of the private investigator revealed that Plaintiffs' counsel materially misrepresented the information acquired from the sponsors.  Specifically, the three sponsor employees who provided the private investigator with "substantive information" as he called it confirmed that the agreement, if any, was that the minimum amount that could be paid to au pairs was the DOS-set stipend of $195.75.  (Doc. #327 at p. 4.)  All three sponsor employees also told the private investigator that host families could pay more if they wanted to.  (Id.)  The private investigator admitted that he had "no evidence . . . of any communications occurring between two or more sponsors in which they agreed to set the amount of the stipends . . . ."  (Doc. #327 at p. 9.)

The private investigator's testimony "invalidated the purpose, intent, and ultimately the import" of the allegations related to the sponsor conversations.  (See Doc. #327 at p. 3.)  Plaintiffs admit that the most current DOS regulations "mandate that Sponsors ensure au pairs are 'compensated at a weekly rate based upon 45 hours of

---

[5] InterExchange was not one of the sponsors contacted by the private investigator, and therefore none of the alleged admissions came from InterExchange.  (Doc. #147-1 at ¶ 43.)

child care services per week . . . ."  (Doc. #101 at ¶ 82; 22 C.F.R. § 62.31(j)(1).)  They

also admit that in 2009 DOS set "the weekly minimum programmatic wage floor to

$195.75 for 45 hours of weekly work."  (Doc. #101 at ¶ 83.)  Thus, Beltran's assertion

that *[t]he FLSA Defendants* have uniformly determined that au pairs shall be paid

$195.75 per week for up to 45 hours of work is patently false based upon her own

admissions.  (Doc. #325 at p. 1; Doc. #101 at ¶ 83.)  In the wake of the private

investigator's admissions, which obliterate any evidence that *any* of the Defendants

actually conspired, much less that InterExchange participated in any alleged conspiracy,

Beltran cannot simply point to her general antitrust allegations to show the existence of

a "single decision, policy, or plan," within InterExchange or among all Defendants, or

that she is similarly situated to members of the proposed InterExchange class.  See

Castro v. Spice Place, Inc., No. 07Civ.4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30,

2009).  In Castro, the plaintiffs sued six restaurants, all independent corporations,

alleging that the six restaurants maintained a common policy of requiring plaintiffs to

work over forty hours per week without adequate minimum wage and overtime

compensation under the FLSA.  Id. at *1.  The plaintiffs alleged that several of them

worked at various times for more than one of the restaurants.  Id. at *2.  They also

submitted affidavits describing the amounts of compensation received from the various

restaurants and recordkeeping and form of payment information that suggested

coordinated, wage-related policy changes.  Id. at *3.  Given that the restaurants were

separate corporations and denied that they were joint employers of the plaintiffs, the

court held that the plaintiffs must provide some evidence of a true "common policy"

maintained by all of the defendants in violation of the FLSA.  Id.  Simply showing that

the defendants followed similar policies, without providing evidence that the similar

policies were in fact one *common* policy, did not satisfy the plaintiffs' burden for

conditional certification.  Id.  In the absence of any viable allegations of a conspiracy,

Beltran has not shown a "common policy" among the Defendants.

Moreover, the named Plaintiffs' individual allegations show differences, not

similarities.  None of the named Plaintiffs allege that she actually was paid by her

sponsor; rather, each was paid by her host family.  Some of the named or proposed

named Plaintiffs were paid $195.75, some were paid $200, and some received extra

money in certain situations.  (Doc. #325-1 Ex. A at ¶ 7; Ex. B at ¶¶ 9, 13; Ex. D ¶ 15; Ex.

E at ¶ 11; Ex. F at ¶¶ 10, 13; Doc. #330-1 Ex. A at ¶¶ 21-22; Ex. B at ¶¶ 10, 14; Ex. C at

¶¶ 14-15.)  Some of the named Plaintiffs allege that their sponsors dictated the amount

of the stipend.  (Doc. #325-1 Ex. B at ¶ 13; Ex. E at ¶ 11; Ex. F at ¶ 15.)  However,

others state that DOS dictated the amount of the stipend.  (Doc. #330-1 Ex. A at ¶¶ 7,

21; Ex. B at ¶ 6; Ex. C at ¶ 6.)  Beltran alleges neither with respect to InterExchange,

only that InterExchange advertised $195.75 to be the minimum stipend.  (Doc. #325 at

p. 9.)  In sum, despite the Plaintiffs' claim that the sponsors mandated what host

families paid au pairs, the named Plaintiffs' declarations are inconsistent at best on this

point.  (Doc. #325-1, Ex. A, at ¶¶ 7, 9; Ex. F at ¶¶ 10, 13, 14; Doc. #330-1 Ex. A at ¶¶

21-22; Ex. B at ¶ 14; Ex. C at ¶ 15; Doc. #325 at pp. 13 n.6, 14.)

The named Plaintiffs also complain about their room and board, meals, hours

and schedule, curfews, and stipend deductions; these are individual complaints not tied

to action by Defendants.  (Doc. #325 at p. 12; Doc. #325-1, Ex. D, at ¶¶ 11-13; Doc. #325-1, Ex. A, at ¶ 9; Doc. #330-1 Ex. A at ¶¶ 12, 22; Doc. #330-1 Ex. B at ¶ 11.)  In sum, the named Plaintiffs implicitly acknowledge that the sponsors *did not* require that host families pay only $195.75 per week, and every au pair's experience depended on the requirements, behaviors, and circumstances of her host family.  Even if Beltran could properly rely on her alleged common policy among the sponsors, she has not provided substantial allegations of the existence of such a policy.

D.   Beltran's Requested Discovery is Overly Broad.

Plaintiffs seek certain class discovery as part of their Motion.  (Doc. #325 at p. 16.)[6]  The requested discovery goes beyond that which is needed to give notice to putative class members, which, as Plaintiffs acknowledge, is the consequence of conditional certification.  (Id. at p. 5.)  Should the court conditionally certify an InterExchange class, InterExchange can provide au pair names, last known home country addresses, email addresses, and dates of sponsorship.  The other information requested is not likely to facilitate notice to putative class members and/or constitutes an improper form of notice, as set out below.

E.   InterExchange Objects to Certain Items in Plaintiffs' Proposed Notice.

Plaintiffs filed a proposed Notice and Consent to Join form with their Motion. (Doc. #325-2.)  Exhibit C is an alternative Notice and Consent to Join Form.

---

[6] It is unclear whether Plaintiffs seek the information within 14 days or within 21 days of an order conditionally certifying a class.  (See Doc. #325 at pp. 16, 18.)  Due to the fact that the requests will cover thousands of current and former au pairs, InterExchange requests a minimum of 21 days within which to provide the information.

The Notice should exclude any suggestion that the au pairs are or were employees of the sponsors or performed work for the sponsors, as these points are strongly disputed in this case.

Email and mail notification are presumed sufficient, and InterExchange objects to the Court approving other forms of notice.  See Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (email communication is now the norm); Earl v. Norfolk St. Univ., No. 2:13CV148, 2014 WL 6608769, at *8 (E.D. Va. Nov. 18, 2014) (email addresses are an appropriate alternative if notice by email is ineffective).  Social media, telephone, and similar methods are less private and do not lend themselves to faithful communication of the court-approved notice.  Mendoza v. Mo's Fisherman Exch., Inc., No. ELH-15-1427, 2016 WL 3440007, at *20 (D. Md. June 22, 2016); Calder v. GGC-Baltimore, LLC, No. BPG-12-2350, 2013 WL 3441178, at * 3 (D. Md. July 8, 2013). Plaintiffs have not shown that mail or email is insufficient, and thus InterExchange should be required to provide only mail and email information.

InterExchange also objects to Beltran's request that the opt-in notice be posted on its website.  Beltran has offered no evidence that such a posting, while extremely harmful to InterExchange's business, would reach the "transient class."  The cases Plaintiffs cite involve situations in which putative class members were located at a defendant's worksite, and the defendant was required to post at the worksite locations. Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 493 (E.D. Cal. 2006); Veliz v. Cintas Corp., No. C 03-1180 SBA, 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004); Johnson v. Am. Airlines, Inc., 531 F. Supp. 957, 962 (N.D. Tex. 1982).  In this case,

posting on a website is not equivalent to posting at a putative class member's place of work; it does not carry the strong presumption that putative class members will see it. See Mark v. Gawker Media LLC, No. 2014 WL 5557489, 2014 WL 5557489, at *3-4 (S.D.N.Y. Nov. 3, 2014) (declining to approve posting on website as it "extracts a cost from Defendants," "has the potential to appear punitive," and has only an incremental chance of reaching plaintiffs who otherwise would not receive notice).

As to the method of notice, a 120-day opt-in period is unreasonable given the extremely fast case plan for which Plaintiffs advocated and which was granted by the Court.  InterExchange requests an opt-in period of no longer than 60 days.

InterExchange objects to Plaintiff's request that it provide her with the host family contact information for each au pair.  Plaintiff has not identified a compelling reason for the information, and certainly not with respect to au pairs who may or may not opt-in to the lawsuit.  InterExchange will agree to provide the host family information for those au pairs who opt-in to the lawsuit.

### III.    CONCLUSION.

For the reasons stated above, InterExchange requests that the Court deny Plaintiff Beltran's request for conditional certification of an InterExchange class under the FLSA.

DATED this 15th day of September, 2016.

Respectfully submitted,


s/Brooke A. Colaizzi
Brooke A. Colaizzi
Heather F. Vickles
Raymond M. Deeny
Erica L. Herrera
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Fax: (303) 298-0940
Email:  hvickles@shermanhoward.com
Email:  bcolaizzi@shermanhoward.com
Email:  rdeeny@shermanhoward.com
Email:  eherrera@shermanhoward.com

ATTORNEYS FOR DEFENDANT
INTEREXCHANGE, INC.

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on this 15th day of September, 2016, I electronically filed the foregoing **DEFENDANT INTEREXCHANGE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTON CERTIFICATION AND INCOPRORATED MEMORANDUM OF LAW (DOC. #325)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
Towards Justice
1535 High Street, Suite 300
Denver, CO  80218
Email:  alex@towardsjustice.org

Christian D. Hammond
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO  80290-2101
Email: chammond@duffordbrown.com

Lawrence D. Stone
Kathleen E. Craigmile
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
E-mail:  LStone@Nixonshefrin.com
         kcraigmile@nixonshefrin.com

William J. Kelly III
Chanda M. Feldkamp
Kelly & Walker LLC
1512 Larimer Street, Suite 200
Denver, CO  80202
Email: wkelly@kellywalkerlaw.com
        cfeldkamp@kellywalkerlaw.com

Brian A. Birenbach
The Rietz Law Firm, L.L.C.
114 Village Place, Suite 301
Dillon, CO  80435
Email:  brian@rietzlawfirm.com

Kathryn A. Reilly
Grace A. Fox
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver CO  80202-5647
Email:  reilly@wtotrial.com
        fox@wtotrial.com

James E. Hartley
Adam A. Hubbard
Jonathan S. Bender
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Email:  jhartley@hollandhart.com
        aahubbard@hollandhart.com
        jsbender@hollandhart.com

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
Choate Hall & Stewart LLP
Two International Place
Boston, MA 82110
Email: joan.lukey@choate.com
        rbuchanan@choate.com
        mgass@choate.com
        jwolosz@choate.com
        lkruzer@choate.com

James M. Lyons
Jessica Fuller
Diane Hazel
Lewis Roca Rothgerber Christie LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Email: jlyons@lrrc.com
        jfuller@lrrc.com
        dhazel@lrrc.com

Bogdan Enica
Expert AuPair
111 Second Avenue, NE, Suite 213
St. Petersburg, FL 33701
Email: Bogdane@hotmail.com

Meshach Y. Rhoades
Martin Estevao
Armstrong Teasdale LLP
4643 S. Ulster St., Suite 800
Denver, CO 80237
Email:
mrhoades@armstrongteasdale.com
Email:
mestevao@armstrongteasdale.com

Martha L. Fitzgerald
David B. Meschke
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Email: mfitzgerald@bhfs.com
        dmeschke@bhfs.com

Lawrence Lee
Susan M. Schaecher
Fisher & Phillips LLP
1801 California Street, Suite 2700
Denver, CO 80202
Email: llee@laborlawyers.com
        sschaecher@laborlawyers.com

John R. Mann
Thomas B. Quinn
Brian P. Maschler
Peggy Kozal
Gordon & Rees, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email: jmann@gordonrees.com
Email: tquinn@gordonrees.com
Email: bmaschler@gordonrees.com
Email: pkozal@gordonrees.com

Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY 10022
Email: mlschwartz@bsfllp.com
Email: pskinner@bsfllp.com
Email: rjackson@bsfllp.com

Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
Boies, Schiller & Flexner, LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Email:  llouis@bsfllp.com
Email:  smccawley@bsfllp.com
Email:  smcelroy@bsfllp.com

*s/ Laura Lewis, Legal Secretary*