Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3

 4   Case No. 14-cv-03074-CMA-KMT

 5   _____

 6   JOHANA PAOLA BELTRAN, et al.,

 7        Plaintiffs,

 8   vs.

 9   INTEREXCHANGE, et al;

10        Defendants.

11   _____

12

13          Proceedings before KATHLEEN M. TAFOYA, United States

14   Magistrate Judge, United States Court for the District of

15   Colorado, commencing at 1:45 p.m. on September 8, 2016, in the

16   United States Courthouse, Denver, Colorado.

17

18    _____

19          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

20   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

21   _____

22

23

24        TELEPHONIC INFORMAL DISCOVERY CONFERENCE

25
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 2

```
 1                        APPEARANCES

 2          LAUREN F. LOUIS, ALEXANDER N. HOOD, AND NINA DiSALVO,

 3   Attorneys at Law, appearing for the plaintiffs.

 4          BROOKE A. COLAIZZI, Attorney at Law, appearing for the

 5   defendant InterExchange, Inc.

 6          BOGDAN ENICA, Attorney at Law, appearing for the

 7   defendant Expert AuPair, LLC.

 8          ADAM M. HUBBARD, Attorney at Law, appearing for

 9   defendant Cultural Homestay International.

10          KATHRYN A. REILLY, Attorney at Law, appearing for the

11   defendants Au Pair International and American Cultural

12   Exchange, LLC.

13          LAWRENCE E. LEE, Attorney at Law, appearing for the

14   defendants APF Global Exchange, NFP and American Institute for

15   Foreign Study.

16          THOMAS B. QUINN and PEGGY KOZAL, Attorneys at Law,

17   appearing for the defendant AuPairCare, Inc.

18          MARTHA L. FITZGERALD, Attorney at Law, appearing for the

19   defendant EuRaupair InterCultural Child Care Programs.

20          JOAN LUKEY, JUSTIN WOLOSZ, LINDSEY KRUZER and DIANE

21   HAZEL, Attorneys at Law, appearing for Cultural Care Au Pair.

22          KATHLEEN CRAIGMILE, Attorney at Law, appearing for

23   defendants, A.P.EX and 20/20 Care Exchange.

24   /////

25   /////
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 3

```
 1            P R O C E E D I N G S
 2      (Whereupon, the within electronically recorded proceedings
 3  are herein transcribed, pursuant to order of counsel.)
 4         THE CLERK:  Court is in session.
 5         THE COURT:  Good afternoon, everyone.  This is Judge
 6  Tafoya, and we are here today in Case No. 14-cv-3074.  This is
 7  Beltran and four other plaintiffs versus a number of groups.
 8  Just for some ease, I'm going to just call the groups.
 9         So, first of all, let me have appearances representing
10  the plaintiff group.
11         MR. HOOD:  Your Honor --
12         MS. LOUIS:  This is Lauren Louis from Boies, Schiller
13  and Flexner.  I know that there's co-counsel who is also going
14  to make their appearance.
15         THE COURT:  All right.
16         MR. HOOD:  Your Honor, Alexander Hood and Nina DiSalvo
17  from Towards Justice for the plaintiffs.
18         THE COURT:  All right.  Anyone else for plaintiff?
19         MR. HOOD:  No, Your Honor.
20         MS. LOUIS:  No, Your Honor.
21         THE COURT:  All right.  So let's -- let's go -- I will
22  call your name, if you represent more than one person or one
23  entity, just let me know.  But let's start with Interexchange,
24  Inc.
25         MS. COLAIZZI:  Good afternoon, Your Honor.  Brooke
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 4

```
 1   Colaizzi from Sherman and Howard on behalf of Interexchange.

 2        THE COURT:  Okay.  And USAupair, Inc.  No one?  All

 3   right.  How about Great Aupair, LLC?  No on that, too.  Expert

 4   Group International, Inc.?

 5        MR. ENICA:  Good afternoon, Your Honor.  Bogdan Enica on

 6   behalf of Expert AuPair.

 7        THE COURT:  All right.  And EuRauPair InterCultural

 8   Child Care?  Cultural Homestay International?

 9        MR. HUBBARD:  Good afternoon, Your Honor.  Adam Hubbard

10   on behalf of Cultural Homestay International and Holland and

11   Hart.

12        THE COURT:  And Cultural Care, Inc.?

13        MS. LUKEY:  You Honor, in Boston, it's Joan Lukey and

14   Justin Wolosz and Lindsey Kruzer, and I think we have

15   (inaudible) counsel present as well.

16        MS. HAZEL:  Your Honor, it's Diane Hazel from

17   (inaudible) also on behalf of Cultural Care.

18        THE COURT:  Thank you.  Au Pair International?

19        MS. REILLY:  Good afternoon, Your Honor.  This is Katie

20   Reilly with Wheeler Trigg O'Donnell on behalf of Au Pair

21   International, Go Au Pair and Agent Au Pair.

22        THE COURT:  All right.  If I call those again, just

23   remind me that it's Ms. Reilly for that one.  All right?

24        MS. REILLY:  Okay.

25        THE COURT:  APF Global Exchange?
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 5

1        MR. LEE:  Hi, Your Honor.  Larry Lee of Fisher and

2   Phillips appearing on behalf of APF as well as AIFS, and I will

3   remind you if you call it again.

4        THE COURT:  Okay.  That's American Institute for Foreign

5   Study?

6        MR. LEE:  Yes.

7        THE COURT:  Okay.  I've got you for that one then.  That

8   was the next one I was going to call anyway.  How about

9   American Cultural Exchange, LLC?  Is that you, Ms. Reilly?

10       MS. REILLY:  Yes.  They're doing business as Go Au Pair.

11       THE COURT:  Go Au Pair, yes.  How about Agent Au Pair?

12       MS. REILLY:  And that's me as well.  This is Katie

13   Reilly again.

14       THE COURT:  Okay.  And APEX, American Professional

15   Exchange?

16       MS. CRAIGMILE:  Good afternoon, Your Honor.  It's Kate

17   Craigmile from Nixon Shefrin, et al, and I represent APEX and

18   then the final defendant 20/20.

19       THE COURT:  All right.  Is there anybody on the phone

20   who I didn't ask to appear?

21       MS. FITZGERALD:  Yes, Your Honor.  It's Martha

22   Fitzgerald from Brownstein Hyatt on behalf of EuRaupair.

23       THE COURT:  EuRaupair.

24       MR. QUINN:  Your Honor, Tom Quinn and Peggy Kozal on

25   behalf of AuPairCare, Inc.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 6

1       THE COURT:  All right.  Anyone else?  Okay.  I can hear

2   you all pretty well.  So I think our line is fairly clear.  I

3   hope you can hear me.

4       We are here for an informal discovery conference, and

5   what was explained to me by my law clerk is that there is, I

6   believe, one of the plaintiffs who is here from Germany, you're

7   taking a deposition, and there was some issue over whether or

8   not she needed to be able to testify about her tax returns.

9   And then I think there's some other issue and I'm not sure what

10  that is.

11      So let's start with the first issue which is the tax

12  returns, and who wants to brief me on that?

13      MS. LOUIS:  I will.  This is Lauren Louis.  Since it's

14  really our request for the protective order, I'll explain the

15  context.  But I would say, Your Honor, that we would prefer to

16  brief this and reserve a ruling until we've had an opportunity

17  to present the Court with (inaudible) case law and analysis and

18  also samples from the other plaintiffs' depositions that have

19  occurred so far so that the Court could make a decision with

20  the benefit of briefing, and we can leave this deposition open

21  to answer what we are told would be the single questions that

22  defense counsel wishes to inquire about on this topic which is

23  whether or not plaintiff Harning filed tax returns for the

24  years that she was here in the United States.

25      So it is our request, Your Honor, that she -- we have a

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 7

1  protective order in place through the completion of today's

2  session of the deposition, that defense counsel not to

3  permitted to ask her.  We'll just brief it.  And if the Court

4  disagrees with us, then we can leave the deposition open and

5  she can answer that question by special interrogatory or

6  written deposition.

7       THE COURT:  Okay.  Well, let me ask you just as a

8  practical matter.  Okay.  It seems as a practical matter that

9  the opposite should happen, that she should go ahead and answer

10 the questions, and then whether or not that could be used in

11 the case could be briefed later, if it comes up.  Because she's

12 here now, and apparently she won't be later.

13      MS. LOUIS:  Your Honor, that's true.  But there is going

14 to be follow-up questions to be asked if we ask her the

15 question which will come across every bit as clearly in writing

16 as it will in the deposition transcript.

17      And, Your Honor, the reason that we want to brief this

18 and we want to move for a protective order is that these

19 questions and many other avenues of questioning that the

20 defense counsel have explored in this deposition, the

21 deposition yesterday and one last week, because it has no

22 bearing on any issue in this case.  These questions are doing

23 nothing other than intimidating and harassing these plaintiffs.

24      The question of the taxes is but one example.  And, Your

25 Honor, before Ms. Hlatshaneni was deposed yesterday, we had, in

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 8

1  writing, indicated to defense counsel, and provided case law

2  demonstrating, but particularly in an FSLA case where

3  immigration status and other aspects of easy intimidation or

4  (inaudible) for defense to ask at depositions, these lines of

5  inquiry are recognized as harassing and intimidating, not

6  related at all to FSLA claims, whether (inaudible) duty or the

7  antitrust claims in this case, Your Honor.

8       And Courts have awarded protective orders to prevent

9  this line of questioning.  And, Your Honor, I'll draw your

10 attention to a case, UPO vs. Jobsite Services, Inc., and I'll

11 say the citation slowly, 269 FRD 209, up in the Eastern

12 District of New York from 2010, in an FSLA case, very similar

13 circumstances, and, you know, defense counsels, their

14 (inaudible) defendant, their avenue of this interrogation as

15 related to what monies were earned. Courts have recognized,

16 particularly in FSLA cases, but in other context, that in order

17 to get a party's tax returns, you have to demonstrate a need.

18      And it can't just be for the financial information but

19 rather to demonstrate that it's not available anywhere else

20 because Courts recognize that just the demand itself is

21 intimidating.

22      So in this particular case, this FSLA case out of the

23 Eastern District of New York, the judge ruled there that, I

24 find plaintiff's income tax returns are not relevant to their

25 FSLA claims which are the crux of their complaint nor have

Johana Paola Beltran, et al. vs.          Telephonic Informal Discovery Conference
Interexchange, Inc., et al.          September 08, 2016

Page 9

1  defendants demonstrated a compelling need for them.  According,

2  plaintiff's request for a protective order is granted with

3  respect to discovery requests that seek copies of their income

4  tax returns or information about the filing of income tax

5  returns.

6         Your Honor, you were correct when you started this

7  hearing by noting that when the hearing was requested by

8  defense counsel, it was with the limited question of whether or

9  not Ms. Harning should have to answer this question.  And part

10 of the reason why we want to brief it and bring to the Court a

11 (inaudible) protective order, is that it's not limited to the

12 issue of whether or not these plaintiffs should have to answer

13 questions about whether they filed a tax return, which the

14 plaintiffs have been asked.

15        Yesterday, this was likewise an issue for Ms.

16 Hlatshaneni despite our written correspondence noting the

17 objection and providing the case law of the impropriety of the

18 question.

19        So it is -- I understand the Court's position that she

20 should have to answer the question or not, but the -- I'm sorry

21 -- and then a decision could be made, but what use will be made

22 of it?  The point, Your Honor, is defense counsel has explored

23 questions -- for example, yesterday, Ms. Hlatshaneni was asked

24 about a car accident and then from there, what other tickets

25 she received, what other violations of law she committed while

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 10

1  she was here.

2  Ms. Beltran was asked about her immigration status, and

3  defense counsel openly expressed that her purpose in asking

4  those questions was to explore whether or not she had

5  overstayed her visa.  But Ms. Beltran was also asked about who

6  sent her flowers on Valentine's Day.

7  There is no proper purpose for these lines of questions.

8  And defense counsel is not -- has not heeded all our attempts

9  to keep the lines of questions from becoming intimidating and

10  to treat these plaintiffs with some manner of respect.

11  And, Your Honor, you noted at the scheduling conference

12  back in April that just sitting at a deposition can be

13  intimidating.  I mean, I'm looking back at the transcript at

14  page 85, and the Court there stating, I agree with plaintiff,

15  but I don't (inaudible) allowing you to take depositions of all

16  these options and scaring the crap out of them and make them

17  stop participating.  That's not good.  I don't like that.  And

18  that's what we've got.

19  THE COURT:  Okay.  Who would like to address kind of the

20  general gist of this?  I will let all of you know that I very

21  recently dealt with this issue in an FLSA case, and I can't

22  tell you which one of mine it was.  But it's not that I'm

23  prohibited.  I just can't remember which one it was.

24  But I'm familiar with the law that is being cited by Ms.

25  Louis, and I think that there is quite a bit of case law.  I

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 11

1  don't -- I haven't really addressed it with tax returns.  But

2  there was quite a concern about immigration status in the cases

3  that I was looking at because they were primarily undocumented

4  workers, frankly, in Mexican restaurants.

5       And so there's that intimidation factor of if you ask

6  them that, are they going to get deported, and so they didn't

7  want to be plaintiffs because they'd get asked the question.

8  And I think the case law is very clear in an FLSA case, that

9  those are improper questions because they're designed to keep

10 people from exercising their rights and enforcing the law, you

11 know, because the law is the law.

12      You're supposed to pay overtime in certain instances and

13 that sort of thing.  So I'd like to hear from defendants.  I

14 would like to hear -- I hope I hear that the question about who

15 sent you flowers on Valentine's Day was a joke because

16 something like that is not relevant.  So who wants to speak to

17 that?

18      MR. QUINN:  Your Honor, this is Tom Quinn.  I'm the

19 lawyer taking the deposition, and I think there should be a

20 little bit more background that is necessary, and then we'll

21 get into the issues, and I know that Ms. Colaizzi is going to

22 follow me when I'm done.

23      THE COURT:  All right.

24      MR. QUINN:  So on the issue -- let's just kind of get

25 this thing straightened back out.  So last night, I -- after

Johana Paola Beltran, et al. vs.                    Telephonic Informal Discovery Conference
Interexchange, Inc., et al.                                        September 08, 2016

Page 12

1  last night's deposition, which I was a participant in, I called

2  Mr. Hood and Ms. Louis, and said, you know, there's been a lot

3  of objections that I don't think are appropriate, so what I'd

4  like to do is to make sure we're all on the same page and that

5  we have conduct and decorum that is appropriate throughout a

6  deposition.

7        So we spent time last night ultimately getting to where

8  we are today, saying if there's a -- let's get the objections

9  straightened out, and if there's a problem, I suggest that we

10 take -- take these matters to your attention.

11       Then, I met with Mr. Hood this morning and he said, I

12 have three areas of inquiry which I think are objectionable,

13 and the first one would be immigration status.  And I said, I

14 have no problems, I'm not going there.  Then, the next one

15 would be love life or lack of a better term, and I said, I'm

16 not going there.  And then the final thing he said is tax

17 returns.  And I said, I am going to go there.  He says, well,

18 we object, we might consider filing a motion for protective

19 order.

20       And I said, well, if you think you're going to do that,

21 let me know.  So I was advised that we would get to this point

22 sometime after the first break this morning.  I told Mr. Hood

23 that regardless of how we were going to resolve the case, I

24 would need to lay some foundational questions so that I'd have

25 an ability to provide you with some background and information

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 13

 1   in support of our pursuit of relevant information regarding tax

 2   filings.

 3          So that's where we're at.  And so then, you know, we

 4   laid the foundation and we didn't -- we agreed that it would be

 5   best to call you, and I thank you for taking our call this

 6   afternoon.

 7          After that, just when -- after -- some moment after your

 8   clerk called, Mr. Hood explained to us that there were going to

 9   be multiple issues, including the visa and all the rest of

10   that.  So there's really not much effort by counsel to put this

11   in context.

12          And to the extent that plaintiffs' counsel thinks that

13   some of the questions have been inappropriate and couched in

14   that way, there's two things.  I think the lawyers that asked

15   those questions in defending their client should have an

16   opportunity to present their position on those issues in

17   briefing to the Court because they were not advised that they

18   could have that opportunity to do so here today.  It just sort

19   of fell out of the sky on them as you were probably walking

20   down the hall to the bench.

21          However, we did clean up the issue of the tax returns

22   because we do have witnesses that have made themselves

23   available in various cities, and this one happens to be here in

24   Denver.  So that's -- that's how we got to this point.

25          There is one other issue that may be raised by

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 14

 1  plaintiffs' counsel and we'll deal with that if they choose to

 2  raise it in a moment.

 3        But let's get to the issue of tax returns.  So if this

 4  were just an FLSA case and just having FLSA claims, there may

 5  be, you know, some of the case law that's been cited by

 6  plaintiffs' counsel may have some -- may have a stronger

 7  bearing in the case.  However, there are multiple claims for

 8  relief, including antitrust, multiple negligence claims, fraud,

 9  breach of fiduciary duty, which I believe the plaintiffs are

10  still trying to seek damages related to lost wages out of.

11        And that is the principle type of claim here, unpaid --

12  undercompensation as it relates to the hourly wage for 40 hours

13  and under, unpaid overtime for the time 41 hours to 45 hours,

14  and then in certain instances, wages that would be related to

15  access of unpaid compensation for overtime in excess of 45

16  hours a week.

17        We also have the issue of commonality and typicality for

18  each of these plaintiffs for which we're seeking this

19  information.  They are purported to be class representatives.

20  They're being offered as class representatives.

21        So we have the ability and the opportunity and the right

22  to pursue our investigation on whether or not they actually are

23  typical plaintiffs and adequate for class reps.  And so that's

24  another reason why this information is relevant and

25  discoverable.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 15

1      Now, taking it to today's predicate questions in
2  preparation for this hearing, I asked multiple questions about
3  -- from this witness about how much money she was paid in total
4  by the host family.  She said she can't remember.  How much on
5  overtime she was paid by the host family.  She can't remember.
6  She can't tell me anything about the amount of income that she
7  earned in this case from this particular host family.
8      In theory, I should be able to test that by seeking her
9  tax return at the time that the United States Government
10  Department of Treasury required this particular plaintiff as
11  part of the Department of State Au Pair Program to file a tax
12  return.  When she signed an agreement to be an au pair, she --
13  and which she said testified here today that she understood the
14  terms of the agreement, and that she signed off on it, she
15  under -- she recognized that she must file her tax return.
16      So -- and then the final thing that I did in preparation
17  is I have provided a proper IRS Form 4506-P, Request for a
18  Transcript of Tax Returns, with one recipient to be my office
19  and one recipient to be plaintiffs' counsel's office, and I
20  have made a proffer during the course of this deposition and
21  asked that the plaintiff sign this release of income tax
22  information so that we can secure and see how much money she --
23  she earned and then we can figure out what the deficit is
24  between what she reported as income and what she claims as lost
25  income.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 16

1        That's just verifying information that's relevant to

2    multiple claims for relief in this case.  We have a protective

3    order in place.  (Inaudible), you know, but perhaps it's

4    intimidating, perhaps it's not.  We haven't had a chance to

5    find out.  Having said this, this is a very public lawsuit with

6    multiple claims for relief and we're entitled to this

7    information.

8        So there you go, Your Honor, again, this is Tom Quinn.

9    I appreciate you taking this, and I think that Ms. Colaizzi has

10   something to add.

11       THE COURT:  All right.  Ms. Colaizzi, before you start,

12   Mr. Quinn, let me ask you, you mentioned that you need this

13   information to talk about commonality and typicality, but you

14   didn't tell me how the tax return information relates to that.

15   I understand your argument on the damages issue, but I don't

16   understand how tax returns would help on that.

17       MR. QUINN:  Well, you know, so what we've learned --

18   what we've learned here today is that Ms. Harning worked at

19   times more than 45 hours a week, sometimes 45 hours a week,

20   sometimes less than 45 hours a week.  I want to know more about

21   her compensation.  She can't recall.  And, frankly, I don't

22   have a real-time testimony in front of me so I'm paraphrasing.

23       THE COURT:  All right.

24       MR. QUINN:  You know, I'm trying to do this accurately.

25   But I would have a chance to confirm whether or not that her

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 17

1   wages, in fact, are accurately reported and how she would be

2   compared to another person who had at times worked more than 45

3   hours a week, less than 45 hours a week, how she -- how she

4   compares to these people in terms of the class status.  So

5   that's it.

6          I wish I -- I wish I could tell you that I had a better

7   legal argument sitting here right now, Your Honor, but I'll

8   know it when I see it, and it is likely in my opinion to lead

9   to the discovery of admissible information.  And so that's why

10  I believe we're at a stage where we're looking at everything we

11  can to determine what our appropriate challenges and her status

12  as a putative class representative.

13         THE COURT:  Well, you know, we have some limitations

14  these days on just anything that could lead to admissible

15  evidence.   I haven't read the new rule in a little while, but,

16  you know, Rule 26 doesn't -- isn't quite as broad as it used to

17  be because of proportionality.  And I think proportionality is

18  fair in every case, but it certainly is -- needs to be closely

19  watched in a case where there's this many parties, defendants

20  and plaintiffs, and in class action cases and in general and in

21  cases that you do have some kind of information that is --

22  could be intimidating for -- for many people, the question --

23  not -- and I don't mean -- and I'm not carving out nannies

24  here, I'm saying for many people, the question about tax

25  returns is a very sensitive one because -- and the wrong answer

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 18

1  could get you prosecuted, right?

2       So that's kind of why I think there's a lot of

3  protection.  Plus, in this country, we believe that your

4  finances are in general private.  That said, of course, tax

5  returns are given up all the time in certain kinds of cases.

6  But I think you have to make more of a showing than it just --

7  it could lead to admissible evidence and I'll know it when I

8  see it.  That's not -- that is no longer really acceptable to

9  the extent that it ever was.

10      So let's go in -- then to Ms. Colaizzi.  What do you

11 think?  What would you like to add?

12      MS. COLAIZZI:  Your Honor, I don't have anything to add

13 on the tax return issue so I'll defer to any other counsel who

14 might want to weigh in on that.  I can speak to some of the

15 other issues.

16      THE COURT:  All right.

17      MS. COLAIZZI:  And, again, this is Brooke Colaizzi on

18 behalf of Interexchange.  Depending on what the Court decides

19 to do here, you know, Ms. Louis seemed to suggest that certain

20 questions, that they -- that plaintiffs object to originated

21 with the deposition of Ms. Beltran, which I took last week.

22      I don't think a discussion of those issues is fair

23 without explaining what was asked and the context in which it

24 was asked.  If the Court is inclined to pursue that now, I'm

25 happy to explain that.  If the Court prefers to reserve that

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 19

1  for a briefing issue, I'm happy to defer.  I don't believe

2  those issues are relevant to the deposition today.  So I'll

3  leave that up to the Court and other counsel.

4       THE COURT:  Well, let me explain that we're not really

5  here on totally an informal conference.  We're here on a

6  question posed during a deposition.  So, to me, there's a big

7  difference there because I routinely issue orders when it is a

8  question that arises that needs an answer from the Court on a

9  deposition.

10      On an informal conference, I rarely issue orders.  You

11 try to get people to compromise, try to tell you, you know, how

12 I feel about something.

13      So I think that the issues of what was asked in the past

14 might be more appropriately raised in briefing, if you want the

15 Court to do something about it.  In other words, strike the

16 testimony.  I think that could be briefed and we wouldn't even

17 probably need to have a hearing.

18      But I think we do need to know today with a ruling

19 whether or not this plaintiff should answer the question, did

20 you file a tax return.  So I think that's really what we have

21 to decide today just because it's current, you know, it's

22 something I can rule on.  And I'm not going to, you know, I'm

23 not going to get you -- I know I'm going to get any attorney in

24 this room -- well, you're not in this room, but you're in this

25 room by audio. I'm not going to get anyone to say, I asked a

Johana Paola Beltran, et al. vs.                    Telephonic Informal Discovery Conference
Interexchange, Inc., et al.                                                September 08, 2016

Page 20

1  question that was improper.  No one's going to admit that.

2  They're all going to have reasons for why they asked the

3  question.  So I will leave that for a motion to strike if you

4  think it's important enough to brief that.

5       But I do think we ought to get some groundwork hammered

6  down, and I think tax returns are one of them, because there is

7  a little heightened expectation of privacy in tax returns.

8  Even law enforcement officers don't give tax returns just by

9  asking for them, you know.  They actually have to get a court

10  permission to get tax returns.  So I understand that it's a

11  sensitive subject.  I understand it can be intimidating and

12  harassing, but I also understand that there's got to be some

13  way to prove the income in this case, because that is the case,

14  really, how much did you make and how many hours did you work.

15       MS. LOUIS:  Your Honor, may I respond to Mr. Quinn's

16  representations about the relevancy of the tax returns for that

17  purpose?

18       THE COURT:  Yes.  But let me ask first if -- on the tax

19  return question, if any of the other defendants have anything

20  to add?

21       MR. LEE:  Your Honor, this is Larry Lee of Fisher and

22  Phillips.  And I took the deposition of Lusapho Hlatshaneni

23  yesterday.  All I asked was, did you file a tax return in year

24  2013 and went down the years.  I was objected to as harassing

25  and intimidating.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 21

1        If I could just briefly tell the Court, and I'll just

2    cut to the chase. I think everything has been drawn out, I

3    agree with the Court's original statements on what you had said

4    at how this applies specifically to tax records.

5        In my point of view as to the compelling need and

6    relevance, plaintiffs, all the plaintiffs, not just the one

7    that I deposed, claim they suffered damages from incorrect

8    payments.  The employees that are required to pay taxes and the

9    return of that evidence of amounts actually paid are relevant

10   because this plaintiff, and I don't know about the other

11   plaintiffs, I don't remember the exact testimony, have not kept

12   some of the records, or they have not kept such records.

13       So it certainly is relevant.  There's a compelling need.

14   Further, let me just let the Court know that or remind the

15   Court that we do have a protective order in this case, and it

16   does apply to confidentiality and confidential records.  In

17   that situation, then there's nothing wrong with keeping that --

18   or certainly having the Court consider that under the current

19   protective order that it's already approved.

20       THE COURT:  All right.  Thank you.  Anyone else --

21       MR. LEE:  Thank you.

22       THE COURT:  -- before Ms. Louis responds?  Okay.

23   Hearing nothing, Ms. Louis, the floor is yours.

24       MS. LOUIS:  I appreciate that, Your Honor.  I will try

25   to be as quick as I can.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 22

 1        The first point that I would make is that during the
 2  deposition, Mr. Quinn defended the question regarding the
 3  filing of taxes on the grounds that it was part of her
 4  contractual obligations, and there is no breach of contract
 5  claims, and there is no breach -- or counterclaim for breach of
 6  contract.  It is not a defense to any of the claims that have
 7  been asserted, whether or not she's breached the contract with
 8  AuPairCare.  So as to the in-the-moment offered basis for
 9  relevancy, there is none.
10        With respect to the ability to prove her typicality or
11  adequacy to represent the class, whether or not she has filed
12  her tax returns for those respective years will not give any
13  indication as to the number of hours that she worked or the
14  amount of wages that she earned over the course -- I'm sorry --
15  or the amount of wages that she earned week-by-week.
16        And to clarify that point, Your Honor, she has provided
17  substantial testimony regarding a regular work week and how
18  many hours she generally worked, and we have also today or
19  actually yesterday in response to a subpoena duces tecum
20  produced a volume of documents that demonstrate the exact hours
21  or the exact weeks that she worked from her host mom.
22        So there is -- as to the two prongs that are required
23  for them to prove or to get tax returns themselves, compelling
24  me, and the absence of anywhere else to get them, they have
25  other avenues for getting this information.

Johana Paola Beltran, et al. vs.                    Telephonic Informal Discovery Conference
Interexchange, Inc., et al.                                         September 08, 2016

1     I'm sorry. I kind of jumped there, Your Honor.  My point

2  was that these tax returns would -- the answer about whether or

3  not she filed will not demonstrate whether she is either

4  typical or adequate in any other way, as Mr. Quinn said, nor

5  will they demonstrate the number of hours that she worked or

6  what she was paid there for.

7     And, finally, Your Honor, one of the reasons why I

8  wanted to advance three things is because while -- at least two

9  of defense counsel have proffered that the tax returns are

10  necessary in order to prove what income these au pairs made

11  because they are asserting claims that they weren't adequately

12  paid.

13     The very basis, Your Honor, of our FLSA motion is that

14  they were all paid 195.75, and that is -- or up to $200 per

15  week.  And that is the tax money that's been given.  There is

16  no expectation that they're going to see tax returns -- excuse

17  me -- and find out, for example, that they weren't paid up to

18  the 195 or that they were paid well in advance of it.

19     So one of the reasons -- I'm sorry, I keep circling

20  back, Your Honor.  It's so hard to do these things

21  telephonically when I'm not looking at you -- is that I, in my

22  research of this, have not found a single FLSA case where the

23  Court agreed with the defendants' need for tax returns.  And

24  it's uniformly said this is not relevant in an FLSA case.

25  That's not how you get to prove or disprove the income.

Johana Paola Beltran, et al. vs.                    Telephonic Informal Discovery Conference
Interexchange, Inc., et al.                         September 08, 2016

Page 24

1    And so I would like to be able to have a better chance

2    to research that, and then come here to court and really say,

3    you know, there isn't that case or, you know, the Court said --

4    actually said, listen, in an FLSA case, no.  I only have a

5    handful of examples.  I have five cases where courts have said

6    no to an FSLA defendant, that's not how you get to prove

7    income.

8         THE COURT:  Well, let me ask a question on that.  What

9    if -- and I'm not sure of this, but are the host families

10   keeping records of what they paid?  Is that -- who keeps the

11   records -

12        MS. LOUIS:  Okay.

13        THE COURT:  -- because in an FSLA case -

14        MS. LOUIS:  That we -

15        THE COURT:  -- an FSLA case, there's a company usually

16   that keeps payment records, you know.  So, you know, there's

17   employment records and there's payroll and there's all that

18   kind of thing so they really don't need tax returns.  But who

19   keeps it in this case?

20        MS. LOUIS:  Well, Your Honor, two answers there.  The

21   first is that the J-1, these are sponsors, each of the

22   defendants are required to make sure that all the limitations

23   of the program are met, including that the au pairs are not

24   working in excess of 45 hours.  So that was one of our document

25   requests right out of the bat, to the sponsor to send these.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 25

1  How do you identify yourself, what records do you keep that the

2  au pairs don't work in excess of 45 hours.

3       We did not receive -- it's kind of like, and I know

4  everybody else -- remember seeing any indication from any

5  sponsor defendant that they do keep such records. I'm sure that

6  I'll be corrected if I'm wrong.  But with respect to the host

7  families, we have not taken discovery of host families.  This

8  somewhat bleeds into the more wholesome protective order issue

9  which is the very demeanor of these questions.  First, I'll

10  respond to the Court's suggestion, should we just have our

11  answer and then decide what to do with it, is intimidating to

12  these witnesses.

13       I'm sorry, Your Honor, I'm kind of bleeding into these

14  issues here.

15       The bottom line is we don't have discovery from host

16  families because we have been denied across the board for

17  information about host families.  And, to the extent that we

18  have documents from defendants, most have redacted out any host

19  family information or contact info on the sensitivity that we

20  will contact them and seek discovery.

21       So I don't -- I'm not yet in a position to answer to the

22  Court whether or not the host families keep those records.

23       MR. QUINN:  Your Honor, this is Tom Quinn.  May I just

24  follow up just a -- I know you want to get going, but I just

25  have a few points to follow up on.  May I, please?

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 26

1        THE COURT:  Yes.  Yes.  Go ahead.

2        MR. QUINN:  So working backwards on what Ms. Louis just

3   said.  In terms of the contract, when I raised the issue with

4   the contract, I also want to make sure that the Court

5   understands that, also, the contract goes to surprise and --

6   the surprise and intimidation factor that at least these au

7   pairs were told they had to pay taxes.

8        And, in fact, Exhibit 44 in this case is a Form 1040-NR-

9   EZ telling them how to do it, and then there are a series of

10  written instructions on how to file and fill out tax returns.

11  And every au pair gets this.  So they know they're supposed to

12  fill it out.

13       Then in terms of -- we're really here about this witness

14  and these questions and this request that she sign a tax return

15  today.  And this whole concept of intimidation is I offered to

16  have the -- and we agreed that this particular witness, this

17  party claimant could step out of the room at any time tax

18  returns were offered so that she would not be intimidated.  I

19  went over -- out of my way.  Her counsel was invited

20  (inaudible) she's been sitting here within three feet of the

21  speaker the entire time hearing about intimidation.  I can't

22  imagine that the intimidation factor still exists with this

23  witness and that's why we are here today.

24       Finally, on the hours produced, you know, I don't know

25  what the host families track.  The ones who got the host family

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 27

1  information is the (inaudible) no one's ever (inaudible) the

2  level of compensation of the people that have earned this and

3  were to report it.

4        And, finally, the last point is, this is not just an

5  FLSA case.  There are negligent claims here that surround

6  damages relating to unpaid wages which is why we see what --

7  how much they believe they earned, this is what they did, what

8  they're entitled to that are relevant and important.  And,

9  finally, there is a protective order in place now to help

10  protect any concerns that there may be about price.

11        Thank you, Your Honor.

12        THE COURT:  All right.  So let me make sure that I

13  understand the question, because as I heard you, the only

14  question that's really been asked and for which an answer has

15  not been given is did you file a tax return for year whatever

16  it is; is that right?

17        MR. QUINN:  No, Your Honor, I did not ask any questions

18  by agreement.  We held off until we would get to this.  So my

19  questions -

20        MR. HOOD:  Your Honor, I would just like to go on the

21  record.  That question was absolutely asked.  There was a

22  provision in the contract that required her -

23        Mr. Quinn, this is Alex Hood for the plaintiffs, and Mr.

24  Quinn (inaudible) for her that said that she was required to

25  file a tax return, and he asked her whether she complied with

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 28

1  that provision, which necessarily is asking her whether or not

2  she filed a tax return.

3          THE COURT:  All right.  So -- but are you -- I guess let

4  me just be more blunt about it.  Are you planning on asking

5  questions about getting her tax returns or information so that

6  you -- I think you want her to sign something to release her

7  tax returns, right?

8          MR. QUINN:  Yes and yes.

9          THE COURT:  Okay.  I think you can ask the question, did

10  she file a tax return.  I don't know that you can use it for

11  any purpose other than the possibility that you need to prove

12  her wages.

13          And the reason that I say that is because from what I'm

14  hearing from both sides, this isn't a typical FLSA case.

15  Number one, there's a lot of other claims, and I recognize

16  that, too, but the first point is there doesn't seem to be

17  employer records, which you almost always have in an FLSA

18  claim.

19          You have testimony as well about hours that are off the

20  clock or, you know, something like that, but you have a wage

21  record.  And I don't see it here.  We're saying that, oh, no,

22  only the employee would have a wage record and that should be

23  in a tax return, and we don't know what the host families did,

24  they're supposed to pay, but did they pay, we don't know.

25          And I think that the only person who might have any

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 29

 1  evidence at this point seems to be the deponents, the

 2  plaintiffs, who most reasonably would know what they made, how

 3  much money they made.  But, apparently, they don't remember and

 4  can't say.  And so I don't see any other way to prove the wages

 5  earned other than a tax return.

 6        Now, that might change over time, and it could be that

 7  that's not the best evidence when you get to trial, that that's

 8  not what you use.  But I think the tax returns for when you

 9  have a situation like that where the plaintiff says, I don't

10  know how much money I made, I don't have any records of it, and

11  there are no other records anywhere, you know, probably ought

12  to come and -- or could come in the form of the tax return.

13  That's one place where you could get it.

14        And so I think they should answer the question of did

15  you file a tax return for that purpose, but not for the purpose

16  of compliance with their contract because there's not a breach

17  of contract claim.  But for that purpose, I think that that

18  would be admissible.

19        I guess the heart of the question is, though, have

20  30(b)(6) depositions been taken of the sponsors and should the

21  sponsors have any record of that?  Is that a place where that

22  information resides because of the responsibility to make sure

23  that they get paid at least the minimum?

24        MR. HOOD:  Your Honor, if I may, this is Alex Hood for

25  the plaintiffs.  I think that's particularly why it doesn't

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 30

1   make sense to have her answer the question now.  There's other

2   discovery avenues that could be pursued, and there's no reason,

3   if the Court decides that she should answer this question, that

4   she couldn't answer that yes-or-no question by a special

5   interrogatory.

6          So why not pursue this more discovery into that -- that

7   issue of whether -- of what income she made?  If it ultimately

8   is a dead end, then we can resort to the taxes.  But before

9   then, I feel like all other -- all other avenues other than

10  simply asking her in her deposition how much did you make in

11  total in 2013 should be explored.  And, also, Your Honor, one

12  other point -- no.  I'll leave it at that, Your Honor.

13      MR. QUINN:  Tom Quinn again, Your Honor.  Ms. Harning's

14  already testified that she did not receive any checks from my

15  client, AuPairCare, and that her compensation came directly

16  from the host families.  So I think that -- that answers your

17  question.

18      MR. HOOD:  She testified that she opened the bank

19  account and she did not have the chance to examine those

20  records, Your Honor.  There are other avenues to explore this

21  total income question, other than a yes or no, did you file

22  taxes, which, honestly, I don't see how it relates to that

23  question at all.

24          But one other thing, Your Honor, Mr. Quinn, as he told

25  you earlier, has asked Ms. Harning to sign a release for all of

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 31

1  her tax returns.  It's a Request for Transcript of Tax Return,

2  Form 506-P, so there is that issue on the table to Your Honor

3  other than a simple yes-or-no question about whether she filed

4  a tax return.

5        MS. LUKEY:  Your Honor, this is Joan Lukey for Cultural

6  Care.  I'd like to correct what I think was a misimpression

7  left by earlier comments about the regulations.

8        The Department of State regulations do not impose a

9  recordkeeping obligation on either the sponsors or the host

10 families.  The host families (inaudible) maintain their own

11 logs, but there is not a requirement for recordkeeping because

12 the stated amount of the stipend is a minimum due regardless of

13 the number of hours worked up to 45.

14       The obligation of the sponsor is to inform the host

15 family of the requirement that the employee be paid at least

16 the stipend and not more than -- and not work more than ten

17 hours a day or 45 hours per week.  That's the requirement under

18 the State Department regulation.

19       MR. ENICA:  Your Honor, this is Bogdan Enica.

20       MR. HOOD:  Your Honor, again, this is Alex Hood

21 representing the plaintiffs.  Ms. Lukey has misrepresented what

22 the regulations actually say.  They instruct that au pairs, as

23 Your Honor pointed out in her Order, shall be paid according to

24 the Fair Labor Standards Act which required employers to keep

25 records.  They're not absolved by the State Department

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 32

1  regulations (inaudible) records from keeping those Fair Labor

2  Standards Act records.

3          THE COURT:  All right.  Well, I think -

4          MR. ENICA:  Bogdan -

5          THE COURT:  Okay, everybody, quiet.  And I don't mean to

6  be rude about that, but if you're talking, then you can't hear

7  me talk on this phone connection we have.

8          So I think the best way to handle this is to say that

9  because tax returns are sensitive information, even though we

10  have a protective order in place, that's really not the heart

11  of everything.  It may be the most important thing.

12          But there's also the issues that I think do surround the

13  case law that I've read that has to do with asking questions

14  that could be intimidating because they could lead to some kind

15  of negative action against the deponent.  Immigration status,

16  of course, is the big one that I was reading up on.  But I

17  think tax returns also could -- are the same thing.

18          If you're required to file them and then you don't, that

19  could have some negative influence.  So I think that the time

20  is not exactly ripe yet to talk about tax returns with these

21  plaintiffs.  I do not buy the argument at all that the tax

22  returns have anything to do with typicality or commonality or

23  the other things that you need to prove when attacking a Rule

24  23 class.

25          So I'm not inclined to let you ask those questions now.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 33

1   However, that is going to be open to revisiting when we have a

2   little more information.  If there is no recordkeeping for any

3   of these plaintiffs by themselves or by the host families or by

4   the sponsors, then tax returns become a viable alternative

5   because there's no other method to get them.

6          It occurred to me while all of you were talking that

7   bank records are also a viable way to get income depending on

8   whether or not a person opened a US bank account.  If they did,

9   it might show regular deposits of a certain amount that could

10  help prove up their testimony.

11         So I'm not -- and bank records are not treated the same

12  as tax returns.  Bank records, there wouldn't be very much

13  argument about, I suspect.

14         So I think that for now, the Court's ruling is going to

15  be you're not going to ask about the tax return information.

16  You can ask the question, did you file a tax return, because I

17  think it's good to know whether or not they did.  Not for

18  purposes of compliance with the contract but just to know that

19  that's one place that you might go.

20         If they say no, then, you know, then, what are we even

21  talking about?  Right?  They didn't file one, so you're not

22  going to get one and they're not going to sign a release and

23  it's a moot point.  So let's leave it at that for now.

24         I only want to address that narrow issue.  I'm sure my

25  law clerk told you, I have criminal matters coming up.  They

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 34

1 are here at 2:30 so they're going to start filling the

2 courtroom.  They're trying to get in now, but we're keeping you

3 on the phone.

4        So I think that'll be the ruling of the Court on this

5 very narrow issue.

6        Now, to the extent that anybody wants to strike

7 questions or strike testimony on relevant documents, I think

8 you should probably go ahead and brief that, because I don't

9 want to sit on the phone with all of you addressing one

10 question at a time whether or not that question was

11 appropriate.

12        In general, I don't think someone's love life is

13 appropriate.  And so I kind of agree with the -- in general,

14 the statements that I don't think any of you would actually

15 legitimately disagree with.  I think that immigration status is

16 out.  That's not relevant to anything.  Because these -- most

17 of these people don't even work, I don't think, for the

18 sponsors anymore.  And questions about their love life or what

19 they did in their off time or all that sort of thing, that's

20 just not relevant to the issues before the Court, and I don't

21 know why you even want to know.

22        But I am leaving open the issue of tax returns because I

23 think there are circumstances under which I would allow tax

24 returns to be received.  But I don't have enough information

25 yet to make that ruling.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 35

1          So is that clear enough for everyone?

2          MR. QUINN:  Yes, Your Honor.  This is Tom Quinn.

3          MR. ENICA:  I do have a question.

4          MR. QUINN:  Go ahead, Bogdan.

5          MR. ENICA:  This is Bogdan Enica for Expert AuPair.

6   When you say immigration status is out, are you referring to

7   people that might be in other states or their immigration

8   status that we don't want to talk about?  Are you referring to

9   any immigration status in the country?  And how about the

10  people that are just coming here for their deposition?

11         We know everything is fine with their current

12  immigration status, but maybe you want to ask questions about

13  their J-1 immigration status.  I mean, immigration is so

14  intertwined in everything for this sponsor even if it's not a

15  question of what their immigration status is now.  Are you

16  legal?  We may want to inquire into their J-1 status.  So, you

17  know, when they filed their applications for J-1 status, are

18  they legal, or their income, and what are their incomes they

19  declare there?

20         THE COURT:  Well -

21         MR. ENICA:  (Inaudible) clarification.

22         THE COURT:  Well, I don't think immigration status is

23  relevant to the issues before the Court right now.  I haven't

24  seen it as being -- you may want to ask it, but I don't see why

25  other than to intimidate people who may have some immigration

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 36

1  problems.  And that's a danger.  And that's what all the cases

2  talk about.  And I haven't seen one that decided it any

3  differently.

4       If you -- you know, if you really feel like certain

5  questions are relevant and you can point to me exactly why

6  they're relevant and why you need to know that information to

7  defend your case, I'll reconsider.

8       But at this point, I would say no because the case law

9  is very clear that this is a big intimidation factor.  And,

10  again, I refer you back, not to your own case, but to how many

11  of them arise in this country, and that is because illegal --

12  people who are here illegally are working at restaurants or

13  wherever they're working, mine happened to be a restaurant, and

14  they are afraid.

15       They're afraid to join a class action to get the wages

16  that they're due.  I mean, if they're going to work, they're

17  due the wages.  And they're afraid to file because they know

18  what will happen, they'll get deported, and then they will have

19  no job.  So they would rather have an unpaid job than no job.

20  And so that's the problem.

21       And I think the same problem exists or could exist in

22  this case, although you're in a bit of a different posture.  So

23  if you want to brief that, I will certainly read the briefs and

24  may reconsider that.  But at this point, I'm going to say that

25  the immigration questions are not proper.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Telephonic Informal Discovery Conference
September 08, 2016

Page 37

1      MR. ENICA:  Bogdan Enica, Your Honor.  I will go ahead

2  and visit this issue again.  I was definitely referring

3  typically to the financial declaration that they made, for

4  example, while on the (inaudible) about their current

5  immigration status but about past immigration status.  Maybe

6  they disclosed (inaudible) financial information, and that we

7  have to get it somehow, we won't get it from the tax returns.

8  I'm not sure if we can get it from the bank accounts.  We will

9  have to explore ways of getting their income maybe besides

10  immigration.  I was only willing to go there, not about their

11  status, and then (inaudible).  So I totally understand.

12      THE COURT:  All right.  Okay.  Anything further for

13  today?  Okay.  The Court will be in recess.

14          (Whereupon, the within hearing was then in

15  conclusion at 2:36 p.m.)

16

17

18

19      ·I certify that the foregoing is a correct

20      transcript, to the best of my knowledge and belief

21      (pursuant to the quality of the recording) from the

22      record of proceedings in the above-entitled matter.

23

24  /s/ Pam Hawkins · · · · · · · September 10, 2016

25  Signature of Transcriber· · · · · · ·Date