IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

       Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

       Defendants.

---

**DEFENDANT AMERICAN CULTURAL EXCHANGE, LLC D/B/A GO AU PAIR'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION [ECF NO. 325]**

---

      Defendants American Cultural Exchange, LLC d/b/a Go Au Pair and Go Au Pair Operations LLC (together, "Go Au Pair")[1] oppose Plaintiffs' Motion for Conditional Collective Action Certification ("Motion") [ECF No. 325].[2] In addition to the arguments made herein, Go Au Pair joins and adopts, as if fully set forth herein, all arguments and objections raised in any defendant's opposition to conditional certification.

## INTRODUCTION

      The Court should deny conditional certification of the putative Go Au Pair classes

---

[1] The proposed Second Amended Complaint also names Associates in Cultural Exchange as a defendant. That entity has no relationship with American Cultural Exchange, LLC or Go Au Pair Operations LLC, and is not represented by undersigned counsel.

[2] Plaintiffs filed a Second Motion for Conditional Collective Action Certification ("Second Motion") [ECF No. 330] on behalf of three individuals they seek to add as named plaintiffs. Go Au Pair responds to Plaintiffs' first motion for conditional collective action certification, but addresses portions of Plaintiffs' Second Motion to the extent those allegations impact the proposed conditional class certification against Go Au Pair.

because Plaintiff Ivette Alexandra Gonzalez Cortes ("Gonzalez")—the only named plaintiff sponsored by Go Au Pair—has not presented substantial allegations showing that she and the other putative Go Au Pair class members were subject to a single decision, policy, or plan implemented by Go Au Pair. Instead, Gonzalez relies on her debunked allegations of an antitrust conspiracy among Defendants and the experiences of other named plaintiffs—each of whom was sponsored by a different organization—to show she is similarly situated to those other plaintiffs. This, however, cannot satisfy her burden to show she is similarly situated to other Go Au Pair-sponsored au pairs, particularly when the allegations demonstrate that Gonzalez's and the other plaintiffs' individual experiences depended upon the decisions of their respective host families.

## **BACKGROUND**

Go Au Pair is one of 16 designated sponsors for the Department of State's ("DOS") J-1 visa au pair program. Joined by several named plaintiffs sponsored by other entities, Gonzalez brought this action against Go Au Pair and 14 other designated au pair sponsors ("Defendants"), alleging violations of the Sherman Act and the Fair Labor Standards Act ("FLSA"), among other claims. (*See* First Am. Compl. [ECF No. 101].) Gonzalez, a former au pair, is the only named plaintiff sponsored by Go Au Pair.

The DOS-promulgated regulations governing the United States au pair program mandate that au pairs be "compensated at a weekly rate based upon 45 hours of child care services per week." 22 C.F.R. § 62.31(j)(1). In 2009, when the federal minimum wage increased, DOS advised Defendants that the weekly minimum rate was now $195.75—an amount expressly based on the DOS-approved formula of multiplying the

federal minimum wage by 45 hours and subtracting a 40% credit for room and board. (First Am. Compl. ¶ 83; Declaration of Bill Kapler ("Kapler Dec.") ¶ 3 & Ex. 1 (attached hereto as Exhibit A).)

Nevertheless, Plaintiffs allege that all Defendants have conspired to fix the weekly au pair stipend at $195.75. (First Am. Compl. ¶¶ 83-84.) Plaintiffs further allege that Defendants are the joint employers of their sponsored au pairs and assert minimum wage and overtime claims under the FLSA against six Defendants, including Go Au Pair. (*Id.* ¶¶ 289-96, 310-12.) Gonzalez now seeks conditional certification of two FLSA classes consisting of (1) all current and former au pairs for whom Go Au Pair was a J-1 visa sponsor[3] and (2) all current and former au pairs for whom Go Au Pair was a J-1 visa sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015. (Mot. at 3-4.)

## ARGUMENT

### I. GONZALEZ IS NOT ENTITLED TO CONDITIONAL CERTIFICATION

The FLSA permits assertion of minimum wage and overtime claims as a collective action only when the other complaining employees[4] are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). To demonstrate that she and the putative Go Au Pair class members are "similarly situated" for conditional certification at the notice stage,

---

[3] While not specified in the proposed class definition, Gonzalez appears to limit this class to au pairs sponsored on or after July 25, 2013. (Mot. at 16 (requesting notice discovery of the names of all au pairs sponsored on or after July 25, 2013).)

[4] Go Au Pair was not, in fact, the employer of Gonzalez or any other au pair.

3

Gonzalez must present "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

### A. Gonzalez Fails to Show that She and the Putative Go Au Pair Class Members Were Subject to a Single Decision, Policy, or Plan

Gonzalez does not present substantial allegations showing that she and the other putative class members, which she defines as other au pairs <u>sponsored by Go Au Pair</u> (Mot. at 3-4), are similarly situated as "victim[s] of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Gonzalez does not provide a single declaration from, or even a single allegation about, any other au pair sponsored by Go Au Pair. Instead, relying on the fact that Go Au Pair advised host families that au pairs must receive a <u>minimum</u> weekly stipend of $195.75 for up to 45 hours of work per week—an amount and formula set by DOS regulations—Gonzalez asserts that other Go Au Pair-sponsored au pairs received a weekly stipend of $195.75 and worked over 40 hours a week. Gonzalez, however, cannot sustain her burden by asking the Court merely to assume that other Go Au Pair-sponsored au pairs are similarly situated.[5]

Absent further factual predicate, Plaintiffs' Motion fails to meet the modest standard for conditional certification. That Go Au Pair, pursuant to DOS regulations,

---

[5] *See, e.g.*, *Anjum v. J.C. Penney Co.*, No. 13 CV 460, 2015 WL 3603973, at *8 (E.D.N.Y. June 5, 2015) (plaintiffs' "belief" that employees working at other store locations under different supervisors were "similarly situated" was insufficient for conditional certification absent "firsthand evidence" that those employees were denied proper wages); *Crowley v. Paint & Body Experts of Slidell, Inc.*, Civ. Action No. 14-172, 2014 WL 2506519, at *7 (E.D. La. June 3, 2014) (denying conditional certification when plaintiff did not provide affidavits or even identify other employees that were similarly situated); *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 666 (D. Kan. 2004) ("[T]he initial *ad hoc* FLSA class certification standard . . . require[s] plaintiff to provide more than his own speculative allegations, standing alone.").

advised host families that they must pay a <u>minimum</u> stipend of $195.75 does not establish that Go Au Pair implemented a single, uniformly applicable policy setting the stipend at that amount. To the contrary, aside from communicating the minimum stipend set by DOS, Go Au Pair did not implement <u>any</u> policy regarding the weekly stipend, for it is the host family, not Go Au Pair, who determines the amount and timing of payment to au pairs. (Ex. A, Kapler Dec. ¶ 5.) As evidenced by the agreement between Gonzalez and her host family, Go Au Pair provides host families a blank contract form, leaving it up to the host family to fill in the amount of the stipend and when it will be paid. (*Id.* ¶ 6.) Gonzalez even concedes that her host family paid her a weekly stipend of $200, not the supposedly mandated $195.75. (*See* Mot. at Ex. 1-A ¶ 7.) Accordingly, Gonzalez's own allegations and declaration, as well as her host family contract, show that host families have discretion to set a weekly stipend above the DOS-required minimum. Gonzalez, therefore, has not shown that Go Au Pair implemented a policy dictating a weekly stipend of $195.75. *See Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-cv-592, 2011 WL 4351631, at *7 (W.D.N.C. Sept. 16, 2011) (denying conditional certification because plaintiffs failed to show implementation of a common policy when the alleged policies were "actually left to the discretion" of individual units and management staff).

Similarly, the fact that government regulations provide for calculation of the weekly stipend based on 45 hours per week does not mean that Go Au Pair-sponsored au pairs necessarily worked over 40 hours per week, or that Go Au Pair set any policy regarding hours. Once again, as demonstrated by Gonzalez's contract, <u>host families</u> dictate the au pair's hours and duties, not Go Au Pair. The form contract provided to

host families—which both Gonzalez and her host family signed—requires the host family to fill in the au pair's anticipated hours and expected duties, subject to the DOS-mandated maximum of 45 hours per week. (Kapler Dec. ¶ 6 & Ex. 3 (specifying that Gonzalez could work no more than 45 hours per week, but leaving the total number of hours worked and work schedule up to the host family).) Moreover, Gonzalez's only allegation in support of this contention is that she regularly worked over 40 hours per week without overtime pay. (Mot. at 14.) But Gonzalez's own testimony is not enough to establish that she is similarly situated to other putative class members, particularly when each individual host family is responsible for setting its au pair's work schedule and weekly stipend. *See, e.g.*, *Eng-Hatcher v. Sprint Nextel Corp.*, No. 7 Civ. 7350, 2009 WL 7311383, at *4 (S.D.N.Y. Nov. 13, 2009) (named plaintiff's testimony about her experience, coupled with generalized statements about others, did not establish common policy in light of localized management discretion). The Court, therefore, should deny conditional certification.

### B.    The Conspiracy Allegations Do Not Establish that Go Au Pair Implemented A Single Policy Affecting Putative Class Members

In the Motion, Gonzalez asserts that "there is no real dispute about whether the Plaintiffs and other members of the Proposed Classes are similarly situated" because "[t]he court has already found that the Plaintiffs have adequately alleged an antitrust conspiracy" by which Defendants supposedly agreed to set au pair wages at $195.75 per week. (Mot. at 7.) Thus, Gonzalez attempts to satisfy her conditional-certification burden by alleging that the Defendants collectively implemented an illegal wage policy to which the named plaintiffs were collectively subject. This attempt fails.

6

As an initial matter, Gonzalez's own experience belies any claim that Go Au Pair implemented any policy—alone or in concert—dictating that au pairs be paid a weekly stipend of $195.75. For one, Gonzalez concedes that her host family paid her a weekly stipend of $200, not $195.75. (Mot. at Ex. 1-A ¶ 7.) Moreover, like her host family contract, Gonzalez's contract with Go Au Pair demonstrates that she understood her "weekly stipend [would] be no less than $195.75." (Kapler Dec. ¶ 4 & Ex. 2 at 2 (emphasis added).) Thus, although Go Au Pair communicated the DOS-required minimum, the amount of the stipend was left to the host families' discretion.

Second, Gonzalez cannot rely on her antitrust allegations to establish a common policy, as her claim that the alleged uniform policy "has been admitted to by many of the Defendants" is both hollow—she doesn't identify a single admission by Go Au Pair—and, as revealed by recent discovery, demonstrably false. This Court's previous determination that Plaintiffs adequately pleaded their antitrust conspiracy claim rested heavily on what it described as "well-pled allegations of a direct agreement among the Sponsors." (Order [ECF No. 258] at 9-10.) These allegations referred to telephone conversations between a private investigator hired by Plaintiffs' counsel and unnamed representatives of unidentified Defendants in which those representatives allegedly admitted to an agreement among *all* Defendants to illegally depress the au pair stipend. (*Id.*) Defendants, however, subsequently learned in deposing the private investigator that Plaintiffs' counsel materially misrepresented the information acquired from the unnamed Defendants. (*See* Moving Defs.' Joint Mot. to Strike Repudiated Allegations and for Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated

Mem. ("Motion to Strike") [ECF. No. 327] at 7-9 (Aug. 11, 2016).) Specifically, the three sponsors who provided the private investigator with "substantive information" confirmed that the so-called agreement was in fact a common understanding that federal regulations dictated that the weekly stipend must be a minimum of $195.75, but that host families could pay a higher stipend if they chose to do so. (*Id.* at 4.) The private investigator clarified he had "no evidence . . . of any communication occurring between two or more sponsors in which they agreed to set the amount of the stipends . . . ." (*Id.* at 9.) Thus, any alleged agreement amounts to no more than a shared understanding that sponsors must comply with federal regulations governing the weekly stipend.

The private investigator's testimony "invalidated the purpose, intent, and ultimately the import" of the antitrust allegations about Defendants' conversations and render Plaintiffs' claims of an antitrust conspiracy patently false. (*Id.* at 3.) Plaintiffs admit that the most current regulations governing the au pair program "mandate that Sponsors ensure au pairs are 'compensated at a weekly rate based upon 45 hours of child care services per week . . . .'" (First Am. Compl. ¶ 82.) *See also* 22 C.F.R. § 62.31(j)(1). Plaintiffs also admit that in 2009, DOS set "the weekly minimum programmatic wage floor to $195.75 for 45 hours of weekly work." (*Id.* ¶ 83.) Thus, Gonzalez's assertion that "[t]he FLSA Defendants uniformly determined that au pairs shall be paid $195.75 per week for up to 45 hours of work" is inaccurate. (*See* Mot. at 1 (emphasis added).) The private investigator's testimony refutes any allegation that Defendants actually conspired to implement a uniform pay policy; thus, Gonzalez cannot rest on her general antitrust allegations to show that Go Au Pair alone, or

8

Defendants collectively, implemented a single decision, policy, or plan. *See Castro v. Spice Place, Inc.*, No. 07Civ4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009) ("Some evidence of a common policy . . . is particularly significant in this case given that Defendant[s] . . . are six distinct New York corporations and that defendants dispute plaintiffs' characterization of [them] as a joint employer under the FLSA.").

### C. Declarations from Named Plaintiffs Sponsored by Other Defendants Do Not Satisfy Gonzalez's Burden on Conditional Certification

Finally, Gonzalez attempts to satisfy her burden by drawing comparisons between her experience and those of the other named Plaintiffs, each of whom was sponsored by a different organization. Thus, the other named Plaintiffs are <u>not</u> members of the putative Go Au Pair classes but, rather, members—and proposed representatives—of entirely different putative classes relating to claims against other Defendants. But Gonzalez cannot demonstrate that she is similarly situated to the putative Go Au Pair class members when none of her comparators are or would be part of the Go Au Pair classes. Moreover, the comparisons to the other named Plaintiffs do not show the existence of a common policy or plan but instead merely highlight the differences inherent in each au pair's experience.

Indeed, declarations from the various named Plaintiffs demonstrate that their experience with respect to pay and hours varied based on decisions made by their host families.[6] Some of the named Plaintiffs received a weekly stipend of $195.75, while

---

[6] Plaintiffs' experiences also varied based on their sponsor organizations. Some plaintiffs allege their sponsors set the stipend amount (Mot., Ex. 1-B ¶ 13; *id.*, Ex. 1-E ¶ 11; *id.*, Ex. 1-F ¶ 15; Second Mot., Ex. 1-A ¶ 21), whereas others claim that their

9

others, including Gonzalez, received $200. (*See* Mot. at Ex. 1-A ¶ 7 ($200); Second Mot. at Ex. 1-C ¶ 14 ($200); *id.* at Ex. 1-B ¶ 14 ($200); Mot. at Ex. 1-B ¶ 13 ($195.75); *id.* at Ex. 1-D ¶ 15 ($195.75).) One Plaintiff reports receiving different stipend amounts from different host families. (Second Mot. at Ex. 1-B ¶¶ 11, 14.) As to hours, Gonzalez claims that she worked 45 hours every week (Mot. at Ex. 1-A ¶ 8), but Plaintiff Deetlefs worked only two or three days a week and does not claim she worked overtime (*id.* at Ex. 1-E ¶ 10). Plaintiffs Harning and Jiminez report that they received extra pay when they worked excess hours. (*See* Second Mot. at Ex. 1-A ¶ 22; *id.* at Ex. 1-C ¶ 15.)[7]

Collectively, Plaintiffs' allegations demonstrate that Defendants, as their visa sponsors, did not require all host families to pay a specific stipend amount, did not dictate the number of hours Plaintiffs must work, and did not control the circumstances in which Plaintiffs performed child care services as part of the au pair program. Rather, each au pair's experience depended on the requirements and circumstances of her host family. Plaintiffs have thus failed to show the existence of any common or single policy implemented collectively by Defendants, or individually by Go Au Pair. Conditional certification should therefore be denied.

---

sponsors represented that DOS dictated the amount (Second Mot., Ex. 1-A ¶ 7; *id.*, Ex. 1-B ¶ 6; *id.*, Ex. 1-C ¶ 6).

[7] Plaintiffs also raise other complaints that are in no way connected to any alleged policy implemented by Defendants. Deetlefs alleges that she did not consistently receive room and board from her host family, but not as a result of any common policy among Defendants. (Mot. at 12.) Beltran complains about her duties and her meals, but like Deetlefs, does not attribute those issues to any common policy. (Mot. at Ex. 1-D ¶¶ 11-12.) And Gonzalez complains about her curfew, but acknowledges that the curfew was imposed by her host family, not Go Au Pair. (Mot. at Ex. 1-A ¶ 9.)

## II.     PLAINTIFFS' PROPOSED NOTICE AND CONSENT IS IMPROPER

Generally, a class notice must: (1) be accurate; (2) notify potential plaintiffs of their obligations and duties if they join the lawsuit; and (3) be fair and impartial. *See In re Qwest Commc'ns Int'l, Inc. Secs. Litig.*, 625 F. Supp. 2d 1133, 1137 (D. Colo. 2009) (class notice must be "written in objective, neutral terms" (internal quotation marks omitted)); *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2012 WL 1414325, at *7-8 (D. Colo. Apr. 21, 2012) (proposed notice should advise potential plaintiffs of their obligations if they join the lawsuit). Here, Plaintiffs propose a confusing and misleading notice that fails to meet these requirements. Defendants have raised their concerns with Plaintiffs' counsel, but the parties have been unable to reach an agreement. (*See* Ltr. from B. Colaizzi to L. Louis (Aug. 12, 2016) (attached hereto as Exhibit B).) Accordingly, in the event the Court conditionally certifies a class, Go Au Pair requests that the Court order use of Defendants' proposed form of notice, which is consistent with notice language approved by this Court in other FLSA cases.[8]

### A.     The Notice Is Not Neutral

Plaintiffs' proposed notice and consent refers to putative class members as "employees," refers to Defendants as "employers," and uses language suggesting that Defendants had an employer-employee relationship with au pairs. Defendants, however, strongly dispute that they are employers under the FLSA, and maintain that they are only the au pairs' visa sponsors. At this time, no determination has been made on this central issue. Accordingly, Plaintiffs' use of employer-employee terminology

---

[8] Clean and redline versions of Defendants' proposed form of notice are attached hereto as Exhibits C and D, respectively.

11

infuses their proposed notice with unwarranted legal conclusions that favor their position. To maintain neutrality, the notice should not suggest that Defendants are or were the au pairs' employers or that the au pairs performed any "work" on behalf of Defendants. Instead, the notice should refer to potential claimants as "au pairs," to Defendants as the au pairs' "visa sponsor," and use neutral language concerning potential class members' participation in the au pair program.

### B. Plaintiffs' Proposed Notice Does Not Adequately Advise Potential Plaintiffs of their Recovery Prospects or Obligations

Section 4 of Plaintiffs' proposed notice misleadingly states that those who opt in "will share in the money that may be recovered for everyone who joins the lawsuit." (Mot., Ex. 2.) But recovery by individual class members is not automatic; each individual must show proof of a violation and injury. Defendants, thus, propose replacing the first sentence of section 4 with this: "If you join in this lawsuit, you may have the opportunity to prove that you are entitled to a share of any money recovered by Plaintiffs."

Plaintiffs' proposed notice also fails to disclose that potential plaintiffs may be required to participate in written discovery, provide deposition or trial testimony in the United States, or contribute towards payment of Defendants' litigation costs should Defendants ultimately prevail. Any notice should include this information.[9]

---

[9] *See Smith v. Pizza Hut, Inc.*, No. 09-cv-01632, 2012 WL 1414325, at *7 (D. Colo. Apr. 21, 2012) (stating that absent an affidavit from plaintiffs' counsel that they will cover any award of costs, "the Court finds that because an award of costs is a possibility under existing case law, potential class members should be informed of that possibility"); *Darrow v. WKRP Mgmt., Inc.,* No. 09-cv-01613-CMA-BNB, 2012 WL 638119, at *6 (D. Colo. Feb. 28, 2009) (stating that "it is reasonable and necessary to inform potential plaintiffs that they may be deposed, required to submit written discovery, compelled to testify, and obligated to appear in Denver" (internal quotation marks omitted)).

### C. Section 6 of Plaintiffs' Proposed Notice Is Confusing

Section 6 of Plaintiffs' proposed notice purports to explain to potential class members "what happens if [they] do not join this lawsuit." (Mot., Ex. 2.) Plaintiffs state:

> If you choose not to join the Lawsuit, you will not share in any money that may be recovered in this case. If you do not join, you will not be affected by any adverse judgment in the litigation unless such a determination has a preclusive precedential effect on your overtime rights. Your rights to participate in any other action against the company will be preserved. However, the statute of limitations will not stop running on any FLSA claims for unpaid wages you may have until you join this action or file suit on your own.

(Mot., Ex. 2 § 6.) While Plaintiffs use simple language to advise potential plaintiffs that a decision not to join the lawsuit will prevent them from recovering money, they use confusing legal language to inform potential claimants that they will not be affected by an adverse judgment. Further, if au pairs do not join the lawsuit, an adverse judgment will not have any "preclusive" effect; it would serve only as potential precedent or persuasive authority concerning certain legal issues. Plaintiffs' proposed language is, thus, confusing and inaccurate. Defendants propose alternative language for Section 6, as indicated in their conferral letter and proposed notice. (*See* Ex. B at 3; Ex. C at 3.) This language is accurate, impartial, and has been approved by this Court in other FLSA cases. *See Darrow*, 2012 WL 638119, at *5.

### D. Notice Should Only Be Given by Mail and Email

Plaintiffs' request to serve their proposed notice through social media and by publication on Defendants' websites should be denied, as notice by mail and email are generally considered sufficient absent a showing of special circumstances warranting additional methods of notice. *See, e.g., Alequin v. Darden Restaurants, Inc.*, No. 12-

13

61742-CIV, 2013 WL 3945919, at *2 (S.D. Fla. July 31, 2013); *Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 277 (S.D. Iowa 2011). Notice by Skype or social media, however, is inherently less private and does not promise faithful communication of the court-approved notice. *See, e.g.*, *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630-31 (D. Colo. 2002) ("[E]lectronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court.").

Gonzalez has also failed to show that notice by publication on Go Au Pair's websites is appropriate. Gonzalez has offered absolutely no basis on which to believe that notice on Go Au Pair's website would even reach potential plaintiffs, who are current and former au pairs and, thus, have no reason to visit Go Au Pair's website. Further, posting the class notice on Go Au Pair's website would necessarily provide notice to individuals—namely, potential host families and au pairs—who are <u>not</u> members of the putative class. Plaintiffs' request should therefore be denied. *See, e.g.*, *Alequin*, 2013 WL 3945919, at *2 (denying request to post class notice on employer's internal network because such notice "is overly and unnecessarily intrusive into the operations" of the employer's business).[10]

---

[10] The cases cited by Plaintiffs are inapposite, as they involve situations in which courts have permitted notice by publication on employee bulletin boards and in employee areas at the relevant worksite when the putative class members currently worked at the employer's worksite and, thus, were likely to see the notice. *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (permitting positing and distribution of opt-in notice at jobsites where putative class members worked); *Veliz v. Cintas Corp.*, No. C 03-1180 SBA, 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (same); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (requiring that opt-in notice be posted on company bulletin boards).

### III. GONZALEZ'S REQUESTED DISCOVERY IS OVERLY BROAD

Gonzalez's request for information regarding current and former au pairs' social media accounts, social security numbers or other government issued identifiers, passport numbers, and visa applications should be denied, as should her request for host families' contact information. This information is either not likely to facilitate notice to potential class members or is only needed to effect improper forms of notice, as explained above. Plaintiffs make no effort to show why this information is needed to notice potential plaintiffs. If the Court conditionally certifies the Go Au Pair classes, discovery should be limited to the relevant au pairs' names, dates of birth, dates of sponsorship, and last-known home country addresses, email addresses, and telephone numbers. Absent a showing that this information is inadequate to effectuate notice, Defendants should not be required to divulge au pairs' and host families' confidential information. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) ("[C]ourts typically decline to allow discovery [of social security numbers] in the first instance . . . ."); *Stickle v. SCI W. Market Support Ctr., L.P.*, 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009) (notice discovery should avoid "needless intrusion into the privacy" of putative class members).

### CONCLUSION

For the reasons stated above, Go Au Pair respectfully requests that the Court deny Plaintiffs' Motion for Conditional Certification. However, should the Court grant Conditional Certification, Go Au Pair requests that the Court adopt Go Au Pair's proposed form of notice and consent and limit discovery as outlined above.

Dated:  September 15, 2016.         Respectfully submitted,


                                                      *s/ Kathryn A. Reilly*
Kathryn A. Reilly
Grace A. Fox
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:  Reilly@wtotrial.com
        Fox@wtotrial.com

Attorneys for Defendant American Cultural Exchange, LLC d/b/a Go Au Pair

16

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that September 15, 2016, I electronically filed the foregoing DEFENDANT AMERICAN CULTURAL EXCHANGE, LLC D/B/A GO AU PAIR'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION [ECF NO. 325] with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

*s/ Claudia Jones*
Legal Secretary