IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

**DEFENDANT AUPAIRCARE, INC.'S OPPOSITION TO PLAINTIFFS' SECOND
MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
[DOC. NO. 330]**

---

## TABLE OF CONTENTS

*Page*

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND............................................................................................2

ARGUMENT ..................................................................................................................4

I.     HARNING AND MEJIA ARE NOT ENTITLED TO CONDITIONAL CERTIFICATION...................................................................................................4

     A.     Standard For Conditional Collective Class Certification .............................4

     B.     Proposed Plaintiffs Harning And Mejia's Claims Are Barred By The Mandatory Arbitration And Forum Selection Provisions Of Their AuPairCare Contracts...................................................................................6

     C.     Harning And Mejia Have Failed To Show That They And The Putative AuPairCare Collective Class Members Were Victims Of A Single Decision, Policy, Or Plan. ................................................................8

           1.     Their Declarations and Testimony Separate Them from Other Putative Class Members.........................................................8

           2.     Plaintiffs Cannot Properly Rely on the Repudiated Statements by their Private Investigator that Informed the Court's Prior Ruling on the Motion to Dismiss the Antitrust Count...............................................................................................13

           3.     There Is No Valid Basis to Conditionally Certify a Collective Class Under a "Willfulness" Standard. .............................................14

     D.     The Proposed Class Notice and Consent Are Defective ..........................15

CONCLUSION.............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**Cases**

*Anjum v. J.C. Penney Co.,*
   No. 13 CV 460, 2015 WL 3603973 (E.D.N.Y. June 5, 2015) ...................................9

*Avendano v. Averus, Inc.,*
   2015 WL 1529354 (D. Colo. March 31, 2015)...............................................................5

*Bernard v. Household Intl, Inc.,*
   231 F.Supp.2d 433 (E.D. Va 2002) ...............................................................................5

*Blancarte v. Provider Plus, Inc.,*
   2012 WL 4442642 (D. Kan. Sept. 26, 2012) ................................................................5

*Blaney v. Charlotte-Mecklenburg Hospital Authority,*
   2011 WL 4351631 (W.D.N.C. Sept. 16, 2001) ...........................................................10

*Camper v. Home Quality Mgmt., Inc.,*
   200 F.R.D. 516 (D.Md. 2000) ........................................................................................4

*Castro v. Spice Place, Inc.,*
   2009 WL 229952 (S.D.N.Y. Jan. 30, 2009) ................................................................14

*Connor v. Gusano's Chicago Style Pizzeria,*
   779 F.3d 835 (8th Cir. 2015) .........................................................................................7

*Eagle v. Freeport-McMoran, Inc.,*
   Civ. No. 2:15-CV-00577-MV-SMV, 2016 U.S. Dist. LEXIS 103362 (D.N.M. August 3,
   2016)..............................................................................................................................5

*Eng-Hachter v. Sprint Nextel Corp.*
   2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) .............................................................11

*H&R Block, Ltd. V. Housden,*
   186 F.R.D. 399, 4001-01 (E.D. Tex. 1999) ..................................................................5

*Haynes v. Singer Co.,*
   696 F.2d 884 (11th Cir. 1983) .......................................................................................5

*Hill v. Ricoh Ams. Corp.,*
   603 F.3d 766 (10th Cir. 2010) .......................................................................................8

*Hoffman v. Sbarro,*
   982 F.Supp. 249 (S.D.N.Y. 1997) .................................................................................5

*Hoffman-LaRoch, Inc. v. Sperling,*
   493 U.S. 165 (1989)............................................................................4, 7

*Luksza v. TJX Companies, Inc.,*
   2012 WL 3277049 (D. Nev. Aug. 8, 2012) ..............................................5, 9

*McLaughlin v. Richland Shoe Co.,*
   486 U.S. 128 (1988)........................................................................14, 15

*Morgorvsky v. Adbrite, Inc.,*
   2012 WL 1595105 (N.D. Cal. May 2, 2012) .................................................15

*Nelson v. Waste Mgmt. of Alameda Cty., Inc.,*
   33 Fed. Appx. 273 (9th Cir. 2002) ....................................................14, 15

*Owen v. Bristol Care, Inc.,*
   702 F.3d 1050 (8th Cir. 2013) .................................................................8

*Reich v. Gateway Press, Inc.,*
   13 F.3d 685 (3rd Cir. 1994) ...................................................................15

*Reich v. Japan Enterp. Corp.,*
   91 F.3d 154 (9th Cir. 1996) ...................................................................15

*Services Employees Int'l Union, Local 102 v. City of San Diego,*
   60 F.3d 1346 (9th Cir. 1994) .................................................................15

*Stickle v. Adick,*
   2009 WL 3710717 (D. Ariz. Nov. 2, 2009).....................................................5

*Stubbs v. McDonald's Corp.,*
   227 F.R.D. 661 (D. Kan. 2004) ................................................................9

*Thiessen* v. *Gen. Elec. Capital Corp.,*
   267 F.3rd 1095 (10th Cir. 2001) ............................................................4, 8

*Trinh v. JP Morgan Chase & Co.,*
   644 F. Supp. 2d 653 (S.D. Cal. April 27, 2008) .............................................9

*Walthour v. Chipio Windshield Repair, LLC,*
   745 F.3d 1326 (8th Cir. 2014) .................................................................8

**Statutes**

29 United States Code
   Section 216 ..........................................................................4, 6, 14

29 United States Code
   Section 255 ..........................................................................4, 5, 14

29 United States Code
    Section 256 .................................................................................................................4

9 United States Code
    Section 3 ....................................................................................................................8

**Regulations**

22 Code of Federal Regulations
    Section 62.31 .........................................................................................................3, 14

Defendant, AuPairCare, Inc. ("AuPairCare" or "APC"), hereby opposes Plaintiffs' Second Motion for Conditional Collective Action Certification ("Motion") (Doc. No. 330). AuPairCare also joins the arguments and objections raised in other Defendants' oppositions to conditional certification.

## INTRODUCTION

AuPairCare is one of the designated sponsors for the Department of State's ("DOS") J-1 Visa Au Pair program. On August 15, 2016, the last day permitted in the Court's Scheduling Order (Doc. 295), Plaintiffs filed a motion to amend the complaint and a second motion for conditional collective action certification. Their proposed Second Amended Complaint ("SAC") seeks to add two new proposed plaintiffs, Juilane Harning ("Harning") and Laura Mejia Jimenez ("Mejia"), former au pairs whom AuPairCare previously sponsored under the J-1 visa program, and to assert a claim under the FLSA against AuPairCare. The proposed SAC is the first version of the pleading that lists as plaintiffs any former au pairs sponsored by AuPairCare.

Plaintiffs' second motion for conditional certification should be denied as against AuPairCare for the following reasons:

*First*, the claims of Harning and Mejia, and those of other putative collective class members, are subject to the mandatory arbitration and forum selection provisions of their contracts with AuPairCare. (*See* Exhs. 3,4,2 to Declaration of Sarah McNamara [Exh. A] p.6, ¶77). Their pursuit of this action in this Court is barred by those provisions.

*Second*, Harning and Mejia fail to demonstrate they are "similarly situated" with other putative AuPairCare collective class members. At the conditional certification

-1-

stage, they must present "substantial allegations" that the putative class members together were the victims of a single decision, policy, or plan.  As a threshold matter, a defendant's adherence to a legal requirement imposed by the U.S. Government, here, that the host families pay their au pairs a minimum weekly stipend of $195.75, is not a single decision, policy or plan supporting conditional certification.   The host families, not the J-1 visa sponsor AuPairCare, set the actual compensation, work duties and hours of their au pairs.  Plaintiffs' own declarations establish fundamental differences between them and other putative class members that negate any semblance of being "similarly situated."  Among other dissimilarities, Harning and Mejia were regularly paid by their host families more than the $195.75 minimum stipend prescribed by DOS.

In addition, the primary ground on which Plaintiffs rest their "similarly situated" argument, that the "Court has already found that the Plaintiffs have adequately alleged an antitrust conspiracy" (Mtn. 7), has been eliminated by the deposition testimony of private investigator David Keil. Keil admitted that none of the au pair agencies had made the statements alleged in the First Amended Complaint (Doc. 104, ¶¶90-94), which the Court ruled constituted "direct evidence" of an antitrust conspiracy.  With Keil having conceded the falsity of those allegations, Plaintiff's central argument evaporates. AuPairCare was not even among the agencies this investigator contacted.

*Third,* Plaintiffs' proposed class notice is defective.

## FACTUAL BACKGROUND

As one of designated sponsors for the DOS' J-1 visa au pair program, APC is bound to follow DOS' regulations governing the program.  Those regulations mandate

-2-

that au pairs be "compensated at a weekly rate based upon 45 hours of child care services per week." 22 C.F.R. § 62.31(j)(1). In 2009, when the federal minimum wage increased, DOS advised Defendants that the weekly minimum rate was now $195.75— an amount expressly based on the DOS-approved formula of multiplying the federal minimum wage by 45 hours and subtracting a 40% credit for room and board.  (First Am. Compl. ¶ 183; McNamara Dec. ¶ 3 & Exh. 1)

Yet Plaintiffs allege that all Defendants have "conspired to" fix the weekly au pair stipend at $195.75. (First Am. Compl. ¶¶183-84.).  In the proposed SAC, Plaintiffs allege that APC was a joint employer of Harning and Mejia (Doc. 329, Exh. 1). In fact, AurPairCare was not an employer of Harning or Mejia or any other au pair.  (McNamara Dec. ¶¶ 4-7, Exhs. 2-4).  That is spelled out in the AurPairCare contracts signed by Harning, Mejia and other putative class members (McNamara Dec., Exhs. 5, 6, 2-4 & at ¶ 8). Both Harning and Majia admit that their families, not APC, set their weekly compensation, set their work schedules, determined what work needed to be done, and paid them. (Maschler Dec., Exh. 6 at 46, 47-48, 49, Exh. 7 at 77, 157-58, 160, 163, 170-71, 173-79, 186, 202, 204). [1]

Harning and Mejia now seek conditional certification of two FLSA classes consisting of (1) all current and former au pairs for whom APC was a J-1 visa sponsor and (2) all current and former au pairs for whom APC was a J-1 visa sponsor, and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015. (Mtn. at 3-4.)  The first proposed class does not have a start

---

[1] **For case of reference, unless otherwise indicated, all "Exh." references are to the Maschler Declaration, which is Exhibit A to this Opposition.**

date, and thus does not take into account the FLSA statute of limitations.[2]   Mejia terminated her au pair engagement before January 1, 2015 (Exh. 6 at p 189, 191), and thus is not a member of the putative overtime class.

## ARGUMENT

### I.   HARNING AND MEJIA ARE NOT ENTITLED TO CONDITIONAL CERTIFICATION

#### A.   Standard For Conditional Collective Class Certification

This Court has absolute discretion to deny conditional certification under 29 U.S.C. § 216(b).  In order to qualify for conditional certification, Harning and Mejia must demonstrate that they are "similarly situated" to other complaining employees.   29 U.S.C. §216; *Thiessen* v. *Gen. Elec. Capital Corp.*, 267 F.3rd 1095, 1102 (10th Cir. 2001).   To meet this burden, Harning and Mejia must present "substantial allegations that the putative class member were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3rd at 1102.

A court's discretion to conditionally certify and approve notice to an approved class should be exercised "only in appropriate cases," where the plaintiffs have met their burden. *Hoffman-LaRoch, Inc. v. Sperling,* 493 U.S. 165, 170 (1989). *See also Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D.Md. 2000) ("The relevant inquiry then is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion").

---

[2] The FLSA provides a two-year statute of limitations for claims brought under Section 16 of the Act and a three-year statute for "willful violations". 29 U.S.C. §255(a). The statute continues to run until a plaintiff files a suit or gives written consent to become a party-plaintiff.  29 U.S.C. §256.  As discussed below, there is no basis in Plaintiffs' motion to support a willful violation on the part of APC that would be subject to a three-year limitations period.

"Conditional certification in the notice stage... is by no means automatic." *Eagle v. Freeport-McMoran, Inc.*, Civ. No. 2:15-CV-00577-MV-SMV, 2016 U.S. Dist. LEXIS 103362, at *6 (D.N.M. August 3, 2016); *Stickle v. Adick*, 2009 WL 3710717, at *10 (D. Ariz. Nov. 2, 2009) (same).  *See also Avendano v. Averus, Inc.*, 2015 WL 1529354 at *24 (D. Colo. March 31, 2015) (denying conditional certification on the grounds that Plaintiff had failed to provide "substantial allegations" that the allegedly unlawful wage policy was implemented in other locations); *Luksza v. TJX Companies, Inc.*, 2012 WL 3277049, at **28-29 (D. Nev. Aug. 8, 2012) (denying conditional certification).

At this stage, the Court must consider all of the evidence and declarations before determining whether Plaintiffs have made a sufficient factual showing that they and the purported class were "similarly situated" victims of an illegal and common policy or plan. *Hoffman v. Sbarro,* 982 F.Supp. 249, 261-62 (S.D.N.Y. 1997).  Plaintiffs must make their showing with competent *evidence*; unsupported assertions or conclusory allegations will not suffice.  *Haynes v. Singer Co.,* 696 F.2d 884, 887 (11th Cir. 1983) (affirming denial of conditional certification in light of "unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores"); *Eagle v. Freeport-Moran, Inc.* 2016 U.S. Dist. LEXIS 103362 at *6 ("At least some evidence beyond unsupported factual assertions must be asserted.") [3]

---

[3] *See also Bernard v. Household Intl, Inc.,* 231 F.Supp.2d 433, 435 (E.D. Va 2002) ("Mere allegations will not suffice; some factual evidence is necessary."); *H&R Block, Ltd. V. Housden,* 186 F.R.D. 399, 4001-01 (E.D. Tex. 1999) (denying certification where the plaintiffs relied on "unsupported assertions" and "affidavits making conclusory allegations"); *Blancarte v. Provider Plus, Inc.,* 2012 WL 4442642 (D. Kan. Sept. 26, 2012) (denying certification).

This Court acknowledged at the April 25, 2016 Scheduling Conference that Section 16 of the FLSA does not confer a judicial rubber stamp:  "Now I'm not saying that it's a slam dunk for plaintiffs because it

As discussed below, the only "evidence" offered by Plaintiffs in support of conditional certification of an AuPairCare collective class is the Harning and Mejia declarations and a prior ruling by the Court on the adequacy of the FAC's antitrust count. Those cookie-cutter declarations (a) demonstrate key distinguishing characteristics that render Harning and Mejia dissimilar from the putative class, (b) are belied by declarants' testimony, and (c) contain inadmissible speculation. The bases for the Court's ruling on the antitrust count have been gutted by investigator Keil's deposition testimony. Harning and Mejia have not met their burden under 29 U.S.C. §216. And as discussed below, their claims are barred in the first instance by their arbitration agreements.

> **B.** **Proposed Plaintiffs Harning And Mejia's Claims Are Barred By The Mandatory Arbitration And Forum Selection Provisions Of Their AuPairCare Contracts.**

The AuPairCare contracts signed by Harning and Mejia expressly provide that any disputes arising from their respective au pair engagements are subject to mandatory arbitration:

> 77. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party.
>
> …The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair [Harning and Mejia] agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was

---

really isn't . . . [T]hat would be to dismiss the objections as not well-founded."  (Exh. 10 to Maschler Dec. at p.14)

-6-

> negotiated in large part in California, and AuPairCare is domiciled in California.

> In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. (Exhs. 5, 6 to McNamara Dec. at p. 6; s*ee also* Maschler Dec., Exh. 7, at 152-55, Exh. 6 at 14, 15, 16 (Mejia and Harning read and understood the contract.)

The Au Pair Agreement was signed by all members of the putative collective class. (McNamara Dec. ¶ 4.) Thus, each putative class member has the option to have his or her claims decided by an arbitrator rather than a court, as does APC. The arbitrator, not this Court, has the authority to decide whether any putative collective class should be certified, conditionally or otherwise.[4] In *Connor v. Gusano's Chicago Style Pizzeria,* 779 F.3d 835 (8th Cir. 2015), the Eighth Circuit recognized that even arbitration agreements prepared and signed *after an FLSA collective action had been filed* (not the case here) would bar the trial court from conditionally certifying an FLSA class consisting in part of persons subject to such arbitration agreements. *Id.* at 841 (overturning the district court's order enjoining the arbitration agreement's enforcement.) Here, sending out a *Hoffman-LaRoch* notice to putative class members, only to compel arbitration (or transfer to a court in California) later would cause a colossal waste of judicial resources and intractable confusion among putative class members.

Even if the arbitration clause were deemed inapplicable, the contract specifies that the suit must be filed in California.

---

[4] Although the proposed addition of former APC-sponsored au pairs in the SAC marks the first time the issue of their mandatory arbitration agreements may be fully joined, APC has asserted this defense from the outset, and Plaintiffs were on full notice before filing this motion. (Maschler Dec. ¶¶ 3-7). To date, Plaintiffs have refused to stipulate to referring the Harning and Mejia claims to arbitration. (*Id.* at ¶ 8).

Because the Court has not yet ruled upon Plaintiffs' motion for leave to file a Second Amended Complaint, which for the first time added former AuPairCare-sponsored au pairs as potential plaintiffs, AuPairCare has not yet had an opportunity to move to dismiss or stay this action based upon the provisions cited above. *See* 9 U.S.C. §3 (the court, "upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement") (emphasis added); *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) ("the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements.")  For present purposes, however, the Court may not provisionally certify an FLSA class consisting of putative members bound by mandatory arbitration agreements. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1337 (8th Cir. 2014) (upholding dismissal of FLSA collective action based on arbitration clause); *Owen v. Bristol Care, Inc.,* 702 F.3d 1050, 1555 (8th Cir. 2013) (directing district court to stay proceedings and compel arbitration).

**C.**     **Harning And Mejia Have Failed To Show That They And The Putative AuPairCare Collective Class Members Were Victims Of A Single Decision, Policy, Or Plan.**

**1.**     **Their Declarations and Testimony Separate Them from Other Putative Class Members.**

Harning and Mejia do not present substantial allegations showing that they and other putative class members (au pairs sponsored by AuPairCare) are similarly situated as "victim(s) of a single decision, policy or plan." *Thiessen*, 267 F.3rd at 1102. Harning's declaration does not mention any other au pair sponsored by AuPairCare.

-8-

(Doc. 330-1, p. 5).  Mejia's declaration states that she is "acquainted with many other au pair who were (*sic*) recently working in the United States, and that she is "not aware of one au pair earning more than $200.00 per week (other than amounts paid for hours worked in excess of 45 in a week); our wages have all been based on the stipend of $197.75 advertised by all of the sponsored Defendants."  However, in deposition, she admitted (1) she did not know how much any other au pairs were compensated, (2) she could not identify even her "friends" who had been au pairs, let alone "friends of friends of friends," and (3) she had not reviewed advertisements by most of the sponsored Defendants. (Exh. 7 at 195, 196-97, 198-200). In short, Mejia has no foundation for her conjecture. Her unsupported assumptions should be disregarded by this Court.[5]

That AuPairCare advised host families they must pay a minimum stipend of $195.75 and advised au pairs they were entitled to such payments does not establish that AuPairCare implemented a single decision, policy or plan.  Such advice merely complied with the applicable law.  Compliance with the law cannot serve as a predicate for collective class certification. *See, e.g.*, *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 345, 350-51, ED Michigan 2004 (denying conditional certification where defendants' policies complied with federal regulations); *Luksza v. The TJX Companies,* 2012 WL 3277049, at *28-29 (D. Nev. Aug. 8, 2012). (same)

---

[5] *See, e.g., Anjum v. J.C. Penney Co.,* No. 13 CV 460, 2015 WL 3603973, at *8 (E.D.N.Y. June 5, 2015) (plaintiffs' "belief" that employees working at other store locations under different supervisors were "similarly situated" was insufficient for conditional certification absent "firsthand evidence" that those employees were denied proper wages); *Trinh v. JP Morgan Chase & Co.*, 644 F. Supp. 2d 653 (S.D. Cal. April 27, 2008) at *4 (finding that plaintiffs' declarations were insufficient to provide the factual showing required at the notice stage; the declarations "provided no real evidence, beyond [plaintiffs'] own speculative beliefs"); *Stubbs v. McDonald's Corp.,* 227 F.R.D. 661, 666 (D. Kan. 2004) ("[T]he initial *ad hoc* FLSA class certification standard . . . require[s] plaintiff to provide more than his own speculative allegations, standing alone.").

-9-

In fact, aside from communicating the DOS-mandated stipend in accordance with DOS regulations, AuPairCare did not implement any policy with respect to the weekly stipend or other compensation.   Rather, as Mejia and Harning acknowledged in deposition, their host families determined the exact amounts of their compensation. (Exh. 7 at 157-58, 160, 173-79, Exh. 6 at 46-49, 60) *see also* McNamara Dec. ¶¶ 4-7). This is underscored by the facts that neither Harning nor Mejia was paid the minimum $195.75 stipend, but rather, at their host families' discretion, were each paid $200 per week for the stipend (Harning Dec. ¶21; Mejia Dec. ¶ 14), and both of them were paid "extra money for each hour they worked over the 45-hour maximum (Harning Dec. ¶22; Exh. 6 at 46-47, 48, 49, 66 [$20 per hour extra]; Mejia Dec. ¶ 15; Exh. 7 at 67-68, 70, 173, 179, 181-82 [$10 per hour extra]).   These critical differences separate Harning and Mejia from the putative class, and quickly expose the fallacy of Plaintiffs' argument, set forth in the first sentence of their brief's "Introduction," that "[t]he FLSA Defendants have uniformly determined that au pair shall be paid $195.95 per week for up to 45 hours of work." (Mtn. at 1). The APC contract signed by Harning and Mejia states that the stipend of $195.75 is set forth in DOS regulations.   (Exhs. 3, 4 to McNamara Dec. at p.3, ¶36).   Harning and Mejia thus cannot show that AuPairCare implemented a policy dictating a weekly stipend of $195.75; that was set by the DOS. (*See* Exh. 7 at 162 [Mejia understood DOS set the stipend].) *See Blaney v. Charlotte-Mecklenburg Hospital Authority,* 2011 WL 4351631 at *7 (W.D.N.C. Sept. 16, 2001) (denying conditional certification where the alleged policies were "actually left to the discretion" of individual personnel.)

-10-

Neither can the DOS-mandated hours limit of 45 hours per week, on which the DOS minimum stipend was based, serve as a valid conditional certification predicate. APC's contract with the au pairs recites the DOS requirement that au pairs' hours are not to exceed forty-five (45) hours per week, five and one-half (5 1/2) days per week, with a maximum of ten (10) hours per day. (Exhs. 2-4 to McNamara Dec. at p.2, ¶17). Here again, mere compliance with a federal regulation cannot properly be bootstrapped into a common practice, policy or decision by AuPairCare.  Harning and Mejia testified in deposition that there were weeks in which they worked fewer than 45 hours, yet were paid the full amount of the stipend (Exh. 6, at 52, 63, Exh. 7 at 163, 186, 202, 204). Mejia's own handwritten schedule confirms this. (Exh. 9, Maschler Dec.)  Both claimed to have worked more than 45 hours in some weeks, but, as noted above, admit that the precise nature of the duties they were asked to perform and the amounts of hours they had to work were dictated by the host families, not any decision or action by APC.[6]

In short, the declarations and deposition testimony of Harning and Mejia are a study in deviations from, rather than alignment with, putative class members.    Even leaving aside those glaring distinctions, their testimony alone would not be enough to establish that they are similarly situated to other putative class members, particularly when, as their own experiences confirm, each individual host family is responsible for setting its own au pairs work schedule and weekly stipend.  *See, e.g.*, *Eng-Hachter v. Sprint Nextel Corp.* 2009 WL 7311383, at *4 (S.D.N.Y. Nov. 13, 2009) (plaintiff's

---

[6] Harning also admitted that the statement in her declaration that "I always worked 45 hours per week minimum," was false, and she made handwritten corrections to her declaration which became an exhibit to her deposition. (Exh. 6 at 41-42, Exh. 8).  The warning regarding Internet scams sent by APC, which Plaintiffs cite in their motion (at p. 11), is not part of any common policy.  This warning was issued in response to prior scams that targeted au pair applicants.  (McNamara Dec. ¶ 10)

testimony about her experience, with coupled with generalized statements about others, did not suffice to establish common policy).

Declarations from named plaintiffs sponsored by other au pair agencies cannot satisfy Harning's or Mejia's burden on conditional certification. The other named plaintiffs are not members of the putative au pair classes; their claims are against different agencies. The experiences of au pairs sponsored by agencies other than AuPairCare do not speak to, much less prove the existence of any purported policy, plan or decision by AuPairCare.

In fact, declarations from the various named Plaintiffs sponsored by other agency-defendants show that their experiences with respect to compensation and hours worked varied widely based on decisions made by their host families.[7]

Given these wide discrepancies among the named plaintiffs as to compensation and hours, Plaintiffs have failed to show the existence of any common or single policy implemented either individually by AuPairCare, or by Defendants collectively. Conditional certification thus should be denied.

---

[7] Some claim that their sponsors set the stipend amount (Mtn., Exh. 1-B, ¶13; Second Mtn., Exh. 1-A ¶21) while others claim that their sponsors represented that DOS dictated the amount (Second Mtn. Exh. 1-A ¶7; Exh. 1-B ¶6; Exh. 1-C; ¶6). Whereas some of the named plaintiffs received a weekly stipend of $195.75, others, including Harning and Mejia, received $200.00 in the form of a weekly stipend plus "extra" compensation. (*Compare* Second Mtn. at Exh. 1-C ¶14 ($200.00); Exh. 1-B ¶14 ($200.00); *with* Mtn. at Exh. 1-B ¶13 ($195.75); *Id.* at Exh. 1-D ¶15 ($195.75). As to hours, while Harning recanted her testimony that she "always worked 45 hours per week minimum," and Mejia admitted that there were weeks in which she did not work 45 hours and other occasions in which she incorrectly reported her hours, (Exh. 6 at 41-42 & Exh. 8, Exh. 7 at 163, 202, 204, 186), Gonzales claims that she worked 45 hours every week (Mtn. at Exh. 1-A ¶8). Plaintiff Deetlefs worked only two or three days per week and does not claim she worked overtime at all. (*Id.* at 1-E ¶ 10.)

-12-

**2.    Plaintiffs Cannot Properly Rely on the Repudiated Statements by their Private Investigator that Informed the Court's Prior Ruling on the Motion to Dismiss the Antitrust Count**

As a proxy for a purported single "policy, plan or decision," Plaintiffs rely on the Court's prior ruling regarding the adequacy of Plaintiffs' antitrust allegations, as pled: "[t]he Court has already ruled that the Plaintiffs have adequately alleged an antitrust conspiracy, meaning that the pleadings satisfactorily allege an agreement between these Sponsored Defendants to set wages at an illegally low level that also violates the FLSA." Leaving aside the dubious logic of that syllogism, this argument fails. First, as noted, AuPairCare was not among agencies that private investigator Keil contacted, much less provided corroborative "evidence" of an alleged conspiracy by and between au pair agencies. Second, Keil has admitted under oath that the statements upon which the Court relied in ruling that Plaintiffs had well-pleaded allegations of fact concerning a purported agreement to depress the au pair stipend were not in fact made to him. (Doc. 258 at pp.9-10).

As explained in Defendants' Joint Motion to Strike Repudiated Allegations (Doc. 327), Keil's deposition revealed that Plaintiffs' counsel materially misrepresented the information he acquired from the other sponsors. Specifically, the three sponsor employees who provided the private investigator with "substantive information" as he called it confirmed that the agreement, if any, was that the minimum amount that could be paid to au pairs was the DOS-set stipend of $195.75. (Doc. 327 at p. 4.) All three sponsor employees also told the private investigator that host families could pay more if they wanted to. (Id.) The private investigator admitted that he had "no evidence . . . of

-13-

any communications occurring between two or more sponsors in which they agreed to set the amount of the stipends . . . ." (Doc. 327 at p. 9.) The private investigator's testimony "invalidated the purpose, intent, and ultimately the import" of the allegations related to the sponsor conversations. (*Id.* at p.3.) Plaintiffs admit that the most current DOS regulations "mandate that Sponsors ensure au pairs are 'compensated at a weekly rate based upon 45 hours of child care services per week . . . ." (Doc. 101 at ¶82; 22 C.F.R. § 62.31(j)(1).) They also admit that in 2009 DOS set "the weekly minimum programmatic wage floor to $195.75 for 45 hours of weekly work." (Doc. 101 at ¶83.) Harning and Mejia cannot rely upon Plaintiffs' general antitrust allegations to show the existence of a "single decision, policy, or plan" within or among all Defendants, or that they are similarly situated to members of the proposed APC class. *See Castro v. Spice Place, Inc.,* 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009) (conditional certification denied in the absence of evidence of a "common policy" among defendants).

### 3. There Is No Valid Basis to Conditionally Certify a Collective Class Under a "Willfulness" Standard.

The "normal period" for an FLSA collective class is two years from the date of the plaintiff's filing or opt-in. 29 U.S.C. §255(a); *Nelson v. Waste Mgmt. of Alameda Cty., Inc.,* 33 Fed. Appx. 273 at *2 (9th Cir. 2002). "[T]he party claiming an exception to the normal period bears the burden of showing the violation was willful in order to trigger the extended three-year period." *Id.* A finding of willfulness (for which there may also be a criminal prosecution, 29 U.S.C. § 216(a)), may be made only in narrow circumstances –

if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action" is not willful. *Id.* at 135.[8]

Here, Plaintiffs admit that the $195.75 stipend was mandated by DOS. Harning and Mejia admit their individual compensation, which exceeded the Government-mandated minimum stipend amount, was set by their host families. APC's compliance with this DOS requirement cannot rightly be twisted into any kind of "willful violation." APC believed, and had every reason to believe, its actions were lawful. (McNamara Dec. ¶ 3). Therefore, even if an FLSA collective class were conditionally certified, it should be for the normal, two-year period, not a three-year period.

### D. The Proposed Class Notice and Consent Are Defective

Plaintiffs' proposed notice and consent are improper in that: the proposed notice is not neutral; it does not adequately advise potential plaintiffs of their recovery prospects or obligations; it contains confusing language about what happens if notice recipients do not join this lawsuit; and its proposed notice period (120 days) is much too long. In addition, notice by mail and email, not by publication through Defendants'

---

[8] *See also Services Employees Int'l Union, Local 102 v. City of San Diego*, 60 F.3d 1346, 1655-56 (9th Cir. 1994) (finding that "[a]ny conclusion that [defendant's] behavior was deliberate or willful is clearly wrong" and reversing with respect to the "extended statute of limitations."); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 703 (3rd Cir. 1994) (violations not willful where there are "close questions of law and fact"); *Nelson, supra,* 33 Fed. Appx. 273 at *2 (ruling that "district court correctly concluded that the employees did not raise a genuine issue regarding the willfulness of [defendant's] actions"); *Reich v. Japan Enterp. Corp.*, 91 F.3d 154, 157 (9th Cir. 1996), (upholding ruling that defendant's FLSA violations were not willful under *McLaughlin* and that the two-year statute thus applied); *Morgorvsky v. Adbrite, Inc.*, 2012 WL 1595105, 17-18 (N.D. Cal. May 2, 2012) (granting motion to dismiss the complaint as time-barred).

websites, is adequate.  APC supports American Cultural Exchange's red-lined revisions to Plaintiffs' proposed notice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification of an AuPairCare collective class should be denied.

Dated this 22nd day of September, 2016.

Respectfully submitted,

*/s/ Brian P. Maschler*
Thomas B. Quinn
Brian P. Maschler
Peggy E. Kozal
GORDON & REES LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
Fax: (303) 534-5161
tquinn@gordonrees.com
bmaschler@gordonrees.com
jmann@gordonrees.com
pkozal@gordonrees.com
***Attorneys for Defendant***
***AuPairCare, Inc.***

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system, which will send notification to all counsel referenced below, and/or sent via electronic mail on this the 22nd day of September, 2016 addressed to:

Lauren F. Louis
Sigrid S. McCawley

Sabria McElroy
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
BOIES SCHILLER & FLEXNER, LLP
llouis@bsfllp.com
smccawley@bsfllp.com
smcelroy@bsfllp.com
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

     *and*

Alexander N. Hood
TOWARDS JUSTICE – DENVER
alex@towardsjustice.org
**Attorneys for Plaintiffs**

Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
Erica L. Herrera
Joseph H. Hunt
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
eherrera@shermanhoward.com
jhunt@shermanhoward.com
**Attorneys for Defendant InterExchange, Inc.**

William J. Kelly, III
Chanda M. Feldkamp
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com
**Attorneys for Defendant USAuPair, Inc.**

Meshach Y. Rhoades
Martin J. Estevao
ARMSTRONG TEASDALE, LLP
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
**Attorneys for Defendant GreatAuPair, LLC**

Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
bogdane@hotmail.com
**Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair**

-- 17 --

David B. Meschke
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
dmeschke@bhfs.com
mfitzgerald@bhfs.com
***Attorneys for Defendant EurAupair InterCultural Child Care Programs***

James E. Hartley
Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART, LLP
jhartley@hollandhart.com
aahubbard@hollandhart.com
jsbender@hollandhart.com
***Attorneys for Defendant Cultural Homestay International***

Brian A. Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

*and*

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
***Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair***

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
***Attorney for Defendant Agent Au Pair***

Lawrence L. Lee
Susan M. Schaecher
FISHER & PHILLIPS, LLP
llee@laborlawyers.com
sschaecher@laborlawyers.com
***Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation; American Institute for Foreign Study d/b/a Au Pair in America***

Joan A. Lukey
Robert M. Buchanan, Jr.

Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
CHOATE, HALL & STEWART, LLP
joan.lukey@choate.com
rbuchanan@choate.com
mgass@choate.com
jwolosz@choate.com
lkruzer@choate.com

       *and*

Diane R. Hazel
James M. Lyons
Jessica L. Fuller
LEWIS ROCA ROTHGERBER CHRISTIE LLP
dhazel@lrrc.com
jlyons@lrrc.com
jfuller@lrrc.com
**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair**

Christian D. Hammond
DUFFORD & BROWN, P.C.
chammond@duffordbrown.com

       *and*

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com
**Attorneys for Defendants A.P.E.X. American
Professional Exchange, LLC d/b/a ProAuPair;
20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange**

                         */s/ Monica Vela*
                         For Gordon & Rees LLP

1104001/29674706v.1