```
 1              THE WITNESS:  I don't remember.

 2  BY MR. MASCHLER:

 3      Q.   Well, do you know if any of the two or three

 4  friends were paid more than you on an average basis per

 5  week?                                                    05:19:33

 6      A.   I don't remember, because one of them also

 7  worked extra hours.

 8      Q.   Okay.  So you don't really know how much they

 9  made a week, do you?

10      A.   No.                                             05:20:01

11      Q.   So we're talking about your friends, and you

12  know even less about how much the friends of friends of

13  friends made per week; isn't that right?

14           MS. LOUIS:  Object to foundation.

15           THE WITNESS:  Correct.                          05:20:24

16  BY MR. MASCHLER:

17      Q.   Okay.  So when you say, "Our wages have all

18  been based on the stipend of $195.75 advertised by all

19  of the sponsor defendants," that's speculation on your

20   part, isn't it?                                         05:20:42

21           MS. LOUIS:  Object to foundation.

22           (Interpreter interprets question.)

23           MR. MASCHLER:  I'm not sure that's a good one.

24  Listen to my question again, please.

25           (Record read.)                                  05:21:10
```



LAURA MEJIA-JIMINEZ on 09/14/2016

Page 198

```
 1                (Question interpreted again.)
 2                THE WITNESS:  No.
 3   BY MR. MASCHLER:
 4        Q.   Well, do you know --
 5             Go ahead.                                05:22:17
 6        A.   So with all my friends and all my friends of
 7   friends, they all said they were paid for 45 hours, the
 8   195.  And some people were paid for extra hours.  Some
 9   people didn't get paid for that.  That's the information
10   I don't remember.  I don't remember how -- which of my   05:22:43
11   friends were paid more than me and which I was paid more
12   than.  But we were all paid $195 for the 45 hours.
13        Q.   Do you know what the term "sponsor defendants"
14   means?
15        A.   Yes.                                     05:23:11
16        Q.   What?  What does that mean?
17        A.   The agencies.
18        Q.   Okay.  And can you identify all of the sponsor
19   defendants in this case?
20        A.   Do I have to identify them?              05:23:29
21        Q.   I'm asking if you can.  You referred to
22   "all" -- I'm sorry.  You referred to "all of the sponsor
23   defendants" in your declaration that you signed under
24   penalty of perjury.  And I'm asking you if, standing --
25   sitting here today, you can identify all of your sponsor  05:23:45
```



LAURA MEJIA-JIMINEZ on 09/14/2016

Page 199

```
 1   defendants.

 2       A.   I can't name all of them, but I know it's

 3   AuPairCare, Cultural Care, AuPair in America.

 4       Q.   Any others that you can identify?

 5       A.   I don't remember the names.                    05:24:21

 6       Q.   You testified that in connection with your

 7   decision to apply for an au pair position in the U.S.,

 8   you looked into some information about culture care --

 9   Cultural Care, AuPair in America, and AuPairCare.  Do

10   you recall that?                                        05:24:49

11       A.   Yes.

12       Q.   Did you ever look at advertisements by any

13   other au pair agencies?

14       A.   Do you want to know if I looked at them at that

15   time or when I made my decision?                        05:25:36

16       Q.   At any time.  Have you ever looked at the

17   advertisements by any au pair agencies other than

18   Cultural Care, AuPair in America, and AuPairCare?

19       A.   Yes.  Later on, I found out there were some

20   other agencies, and I looked at a couple of them, but I  05:26:04

21   don't remember which ones.

22       Q.   So when you say, "advertised by all of the

23   sponsor defendants," you can't say with certainty that

24   you've actually even seen the advertisements by all of

25    the other sponsor defendants; isn't that right?        05:26:17
```



**LAURA MEJIA-JIMINEZ on 09/14/2016**

Page 200

```
 1        A.   No.  I'm talking about all of the au pair
 2   agencies.  I know I don't remember the names, but I know
 3    there are more.
 4        Q.   Well, you refer to "all of the sponsor
 5   defendants," and you said that you think "sponsor        05:26:50
 6   defendants" mean au pair agencies; isn't that right?
 7        A.   Yes.
 8        Q.   Okay.  And have you reviewed the advertisements
 9   by all au pair agencies in the United States?
10             MS. LOUIS:  Objection.                          05:27:14
11             THE WITNESS:  No.
12   BY MR. MASCHLER:
13        Q.   So when you signed this affidavit on or about
14   August 15, 2016, you did not know what the
15   advertisements said by a number of sponsor defendants,   05:27:29
16   au pair agencies; correct?
17             MS. LOUIS:  Object to foundation.
18             THE INTERPRETER:  I'm sorry.  The interpreter
19   requests a repetition of the question, please.
20             MR. MASCHLER:  Read it back, please.            05:27:46
21             (Record read.)
22             (Question interpreted again.)
23             MS. LOUIS:  Objection.
24             THE WITNESS:  That's not right.  I said that I
25   don't remember the names, but I did say that I know that 05:28:33
```



```
 1   there are more agencies.

 2   BY MR. MASCHLER:

 3        Q.   That's not my question.

 4             My question is, did you or did you not review

 5   the advertisements for all au pair agencies in the          05:28:47

 6   United States before making the statement in your

 7   declaration that has -- that we've referred to at

 8   paragraph 16?

 9             MS. LOUIS:  Object to form.

10             THE WITNESS:  No.                                  05:29:09

11   BY MR. MASCHLER:

12        Q.   You did not review all of them?

13        A.   No.

14        Q.   Okay.  Did you ever take a vacation to Niagara

15   Falls when you were an au pair with the Mele family?         05:29:21

16        A.   It wasn't vacation.  It was my weekend off.

17        Q.   Okay.  Who did you go to Niagara Falls with?

18        A.   With Melissa from Mexico and Sajoa from Spain.

19        Q.   And did the Mele family pay for a rental car

20   for you for that trip?                                       05:29:57

21        A.   Yes.

22        Q.   Did they ever ask you to reimburse them for

23   that expenditure?

24        A.   No.

25        Q.   Okay.  You terminated your au pair engagement     05:30:26
```



LAURA MEJIA-JIMINEZ on 09/14/2016

Page 202

```
 1   with the Mele family before its scheduled one-year

 2   duration; correct?

 3       A.   Yes.

 4       Q.   And you terminated the au pair engagement with

 5   the Mele family on December 30, 2014.  Does that sound       05:30:51

 6   right?

 7       A.   Yes.

 8       Q.   And you did so because you were having

 9   difficulties with caring for the children?

10            MS. LOUIS:  Objection.                              05:31:13

11            THE WITNESS:  No.

12   BY MR. MASCHLER:

13       Q.   Well, wasn't that the reason you gave

14   AuPairCare for your terminating the au pair engagement

15   early?                                                       05:31:24

16       A.   No.

17       Q.   What was the reason you gave AuPairCare, if

18   any, for terminating the au pair engagement seven months

19   early?

20            MS. LOUIS:  Objection.                              05:31:49

21            THE WITNESS:  Because I worked extra hours and

22   I had already spoken to the family about the activities

23   of the children, and I suggested that we take them out,

24   because I felt like the children needed to get out.

25            And so in a certain way, I had already             05:32:16
```



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

LAURA MEJIA-JIMINEZ on 09/14/2016

Page 204

```
 1  because Beth had told him on the phone.

 2          And I left the house, because he came home very

 3  angry.  He started attacking me verbally.  He started

 4  yelling.  He started hitting the walls.  So I said,

 5  "That's enough for me.  I'm leaving the house."              05:34:31

 6          I called a girlfriend of mine, Helen.  I asked

 7  if she could come and pick me up.  I grabbed my things,

 8  and I left.

 9  BY MR. MASCHLER:

10      Q.   In fact, you raised your voice at Carmen,         05:34:46

11  didn't, you on that occasion, and you used foul language

12  in front of the children; isn't that correct?

13      A.   No.

14      Q.   And, in fact, you falsely represented to Carmen

15  that Beth Lawrence had told you that it was okay for you    05:35:04

16  to leave immediately, when, in fact, she'd made no such

17  assurance to you?

18      A.   That's not true.

19      Q.   After December 30, 2014, did you ever work for

20  the Mele family as an au pair?                              05:35:34

21      A.   No.

22      Q.   So you left the same day that you told Beth

23  that you were leaving; is that right?

24          MS. LOUIS:  Object to foundation.

25          THE WITNESS:  Of course.                            05:35:53
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

LAURA MEJIA-JIMINEZ on 09/14/2016

Page 236

```
 1   STATE OF CALIFORNIA       )
                               ) ss:
 2   COUNTY OF NEVADA          )

 3

 4            I, KIMBERLY E. D'URSO, do hereby certify:

 5            That the witness named in the foregoing

 6   deposition was present and duly sworn to testify to the

 7   truth in the within-entitled action on the day and date

 8   and at the time and place therein specified;

 9            That the testimony of said witness was reported

10   by me in shorthand and was thereafter transcribed through

11   computer-aided transcription;

12            That the foregoing constitutes a full, true and

13   correct transcript of said deposition and of the

14   proceedings which took place;

15            Further, that if the foregoing pertains to the

16   original transcript of a deposition in a federal case,

17   before completion of the proceedings, review of the

18   transcript [ ] was [ ] was not requested.

19            That I am a disinterested person to the said

20   action;

21            IN WITNESS WHEREOF, I have hereunder subscribed

22   my hand this 19th day of September, 2016.

23

24   _____
     KIMBERLY D'URSO
25   CSR NO. 11372, STATE OF CALIFORNIA
```



# Exhibit 8



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL*.

    Plaintiffs,

v

INTEREXCHANGE, INC , *ET AL*.

    Defendants

### DECLARATION OF JUILANE HARNING

I, Juliane Harning, declare as follows:

1    My name is Juliane Harning and I am over the age of 18

2    In November of 2007, I decided to apply to be an au pair in the United States. I started investigating the varies agencies using the internet

3    I decided to apply to Defendant Au Pair Care because it was the agency that advertised the lowest fees I would have to pay of all of the sponsors I saw Plus, at the time, Au Pair Care had a promotion advertising that it would give back half of the fees paid at the conclusion of the year.

4    I did not base my selection on how much I could earn because the information that was publicly available from the sponsors told me that I would be paid the same amount no matter which one accepted my application.

5    I paid approximately $400 Euros to Au Pair Care to apply to the program, and I also paid $100 dollars to the embassy to apply for my visa.

6    In July 2008 I travelled from Germany to New Jersey. I participated in training presented by Au Pair Care over three days. I was not paid to attend the training, which covered all aspects of the duties I would be expected to perform as a standard au pair, but did not include the newborn-care training, for which the family would had to have paid more.

7    They told us at the training that we would be paid the same stipend and that it was an amount set by the Department of State. I recall that my stipend amount was also stated in my contract with Au Pair Care

Case No. 1:14-cv-03074-CMA-KMT  Document 360-5  filed 09/22/16  USDC Colorado  pg 11
of 22
Case 1:14-cv-03074-CMA-KMT  Document 330-1  Filed 08/15/16  USDC Colorado  Page 6 of
42

8.    Upon completion of the three-day training, I flew to Michigan to begin working as an au pair

9.    My host family had two sets of twins, infants and two-year olds, a five-year old and a thirteen year old—six children in total  The family did not have any other child care help besides me.

10.    I worked five days a week, 8-10 hours a day, and generally worked in excess of 40 hours per week.

11.    My host family paid me $157.95 for the first week per week, the stipend amount changed and I was thereafter paid $176 per week. I was always paid the minimum stipend regardless of the number of hours I actually worked  I was never compensated for my overtime hours

12.    In December 2008, tragically, my host father was hit by a car while he was on a bicycle. He was hospitalized for months following the accident. During that time, my host mom practically lived at the hospital with him. I was left as the primary care giver for the five youngest children during this time, with intermittent assistance from the neighbors and the grandparents. I worked seven days a week, literally around the clock.

13.    The family did not pay me for the extra hours I worked but asked me to extend for a second year and offered to buy me a plane ticket to Florida as a way of thanking me

14.    In June 2009 I was involved in a car accident with the family vehicle. Though I paid the family $250 for the deductible, the family rescinded the offer to extend, terminated my year with them early, and backed out of the promise to fly me to Florida for vacation. I knew the family was financially struggling and I do not believe they asked me to leave because of the car accident, but because they could not afford to fly me as promised or otherwise pay me for all the extra time I worked for them.

15.    Because there were only two weeks left in my year, Au Pair Care did not attempt to rematch me with another family. Au Pair Care deemed my year unsuccessfully completed and thus did not refund half of the fees I had paid them.

16.    In 2013, I decided to try again to work as an au pair in the United States. I again applied to Au Pair Care. My best recollection is that I paid $350 Euros to apply in 2013, and again paid for my own visa.

17.    I was accepted to the program. In October 20123, I received an email from Au Pair Care addressed to "Dear Au Pair" that offered tips for protecting oneself against internet scams. The email states that "[l]egitimate host families will also not offer you a higher stipend than what is listed in the regulations published by the U.S. Department of State for the Au Pair Program."

18.    I matched with a family in Virginia. In February 2014, I again flew to Newark, New Jersey and attended the Au Pair Care training. This time I attended not

2

Case No. 1:14-cv-03074-CMA-KMT   Document 360-5   filed 09/22/16   USDC Colorado   pg 12
of 22
Case 1:14-cv-03074-CMA-KMT   Document 330-1   Filed 08/15/16   USDC Colorado   Page 7 of
42

just the three days that all au pair attend but the extra day dedicated to infant care. I
was not paid for the training.

19.     At the training, the Au Pair Care representatives told us that we would be
paid $195.75 per week.

20.     My host family had one infant girl and a full time nanny besides myself to
care for her.

21.     My host family paid me $200 per week. My host mother told me they were
only supposed to pay me $195.75, but told me not to worry about giving them back the
few dollars "change." My host mother said the amount was set by the agency.

I was always expected to work 45 hours per week.
22.     ~~I always worked forty five hours per week minimum.~~ Occasionally, my
host mom would run late returning to the house to relieve me, causing me to work more
than the permitted amount of hours. She acknowledged that doing so violated the
program rules and gave me extra money on these occasions. She recognized that was
against the rules too.

I solemnly affirm under the penalties of perjury that the contents of this

Declaration are true and correct to the best of my knowledge.

Dated: August 12, 2016

JULIANE HARNING

3

# Exhibit 9

## Michael Calvin

| | |
|---|---|
| **From:** | laura mejia jimenez <laura_meji@hotmail.com> |
| **Sent:** | Tuesday, September 13, 2016 7:56 PM |
| **To:** | Lauren Louis |
| **Subject:** | Fw: Schedule |
| **Attachments:** | 20141231_163052_resized.jpg; 20141231_163104_resized.jpg; 20141231_163115 _resized.jpg; 20141231_163128_resized.jpg; 20141231_163159_resized.jpg |

---

**From:** laura_meji <laura_meji@hotmail.com>
**Sent:** Wednesday, December 31, 2014 4:35 PM
**To:** Blawrence@aupaircare.com
**Cc:** sbwint@aupaircare.com
**Subject:** Schedule

Enviado desde Samsung Mobile de Claro



1

WOODLOCH

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |

October
2014

POCONOS with the family

WOOLOCH

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |

# November 2013

# Exhibit 10

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLORADO

 3      Case No. 14-cv-03074-CMA-KMT

 4      _____

 5      JOHANA PAOLA BELTRAN, et al.,

 6           Plaintiffs,

 7      vs.

 8      INTEREXCHANGE, INC., et al.

 9           Defendants.

10      _____

11              Proceedings before KATHLEEN M. TAFOYA, United

12      States Magistrate Judge, United States District Court for the

13      District of Colorado, commencing at 10:54 a.m., April 25,

14      2016, in the United States Courthouse, Denver, Colorado.

15      _____

16              WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17      ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18      _____

19                            APPEARANCES

20              LAUREN F. LOUIS, ALEXANDER N. HOOD and DAVID

21      SELIGMAN, Attorneys at Law, appearing for the plaintiffs.

22              WILLIAM J. KELLY, III, Attorney at Law, appearing

23      for the defendant USAuPair, Inc.

24      _____

25                        SCHEDULING CONFERENCE
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Scheduling Conference
April 25, 2016

Page 14

```
 1    the plaintiff is going to get, not 15, but maybe 11, 10 or 11
 2    responses because there's -- all of you are representing
 3    somebody different.  And I -- I don't know how differently at
 4    this point you're situated, but the response to a collective
 5    doesn't seem to me very hard.  Now, I'm not -- I'm not saying
 6    that it's a slam dunk for plaintiffs because it isn't really.
 7    You know, that would be to dismiss the objections as not
 8    well-founded.  There is a threshold they have to make, but
 9    it's not that hard.  So I don't -- I don't understand why
10    that date has to be pushed out.
11              UNIDENTIFIED SPEAKER:  Well, among the -- in
12    addition to what I just explained, there's a lot of us.  And
13    so we've tried thus far to consolidate and to coordinate and
14    to present unified pleadings, which I think we have so far.
15    And we will try to do that again.  So as we proceed forward
16    it just takes time.  There are unique interests between
17    Mr. Allen's client and my client.  And so when you try and
18    find compromise in drafting, it just takes time.  And I think
19    the beneficiary of consolidated pleadings, and I'm not -- I'm
20    not telling you there will only be one objection.  There
21    might be two based -- or three based upon the number of
22    people that are here, but we will definitely work towards a
23    consolidated pleading.  And that benefits the Court and it
24    benefits plaintiffs' counsel when they are only having to
25    respond to one consolidated pleading or two, or a small
```