IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

Defendants.

---

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO STRIKE**

---

Plaintiffs offer two main arguments in their Opposition to Joint Motion to Strike (ECF No. 345) ("Opposition"). They claim that: (1) Paragraphs 90-94 of the First Amended Complaint ("FAC") (ECF No. 101) ("Paragraphs 90-94") are not false or misleading, and the testimony of their investigator, David Keil ("Keil"), is consistent with their antitrust theory; and (2) even if that were not the case, and even if the Court agreed that these paragraphs misstate the Defendants' alleged admissions as recorded by Mr. Keil, Plaintiffs should be allowed to proceed with their antitrust theory and Defendants must wait until summary judgment or trial to show that the allegations are baseless.

As explained more fully below, Plaintiffs' strained attempt to read Mr. Keil's alleged conversations and his testimony about those conversations as supporting a price fixing conspiracy is flawed. Keil's notes from the conversations contradict, rather

than support, Paragraphs 90-94, with regard to any price fixing conspiracy. *See* ECF No. 327-5. The actual statements recorded, which could have been presented in their entirety in the complaint rather than through Plaintiffs' selective quotations, far more plausibly support the notion that the defendants all understood the law to be consistent with the Department of State directives. As the Court can ascertain upon its own review of the notes, if the speakers "agreed" to anything, it was to follow the law as they reasonably understood it to be. Plaintiffs' attempt to harmonize that evidence with the allegations in the FAC is really an attempt to change their theory on the fly, in a manner that conflicts with the key paragraphs that saved their antitrust claim at the motion to dismiss stage.

Plaintiffs' second argument is simply wrong. Defendants are not merely quarreling with the truth or falsity of an allegation, which of course happens in litigation all the time. Here, by Plaintiffs' own admission, the allegations in Paragraphs 90-94 – which the District Court found so important in allowing Plaintiffs' claims to survive – are based upon the investigation of Mr. Keil, and nothing more. The Court can look at the actual document from which Plaintiffs quoted in the FAC. Defendants believe that if it does, the Court would reach a different conclusion regarding whether those crucial paragraphs are sufficient to allow the antitrust claim to survive. If the Court agrees with Defendants, it simply cannot be the case that the Court is powerless to take any action in response. The extraordinary burden and expense of going through antitrust discovery where no factual basis exists is truly disproportionate. The Court's authority means little if, as Plaintiffs suggest, the Court and the parties have no choice but to

proceed with full discovery and further litigation even in the face of discovering misleading allegations and in the absence of a properly stated antitrust claim.

For all of the foregoing reasons, and the further reasons set forth below and in their initial motion papers, the Court should grant Moving Defendants' Joint Motion to Strike Repudiated Allegations and for Leave to File Reconstituted Motion to Dismiss Antitrust Claim (ECF No. 327).

### 1. Plaintiffs' First Amended Complaint, and All Documents Relying on It, Materially Misrepresented Statements Made by Defendants to the Point of Falsity

Plaintiffs first suggest that because Defendants have not argued that the words in Paragraphs 90-94 were inaccurately quoted, there can be no basis to conclude that they are materially false. Opposition at 2. This proposition ignores the fact, discussed in detail in Defendants' Motion, that in the context of Keil's full conversation with each of the three sponsor employees the statements have a materially different meaning from that propounded by Plaintiffs.

Plaintiffs go on to argue that, (1) to the extent they failed to provide the Court with the necessary context in the FAC or the briefing on the motions to dismiss, they can do so now in response to this motion, and (2) when they do, the allegations (apparently now placed in context) "still support the plaintiffs' theory." Opposition at 4. Their main contention is that, for the most part, host families who paid more than what Defendants understood to be a government-imposed minimum did so only by a small amount. Opposition at 5-8. That theory, however, is not set forth in the Complaint. To the contrary, the theory set forth in Paragraphs 90-94 alleges that the Sponsors agreed that

*au pairs* would be paid exactly $195.75. FAC, ¶¶ 90 ("exactly $195.75"); 91 ("that amount, no more"); 92 ("exactly that minimum amount"); 93 ("no more than $195.75 a week"). This new theory, as advanced in Plaintiffs' Opposition, seems to be that because some representatives of some defendants referred only to "small amounts" in excess of the government-mandated stipend, and because Plaintiffs have seen evidence of *au pairs* paid in what they consider only small amounts above the stipend amount, it can be inferred that the real agreement among Defendants was to make various statements to host families that would have the effect of persuading them to pay either the stipend amount or a small amount more, the latter "amount" apparently being undefined within the scope of the conspiracy. Plaintiffs cannot amend their complaint and change their theory of the case in response to a motion to strike. If they had a basis to allege in the FAC that the host families really admitted that they agreed to try to persuade host families to pay only a little bit more than $195.75, they should have alleged that theory. There is no basis for Plaintiffs to change their theory of the case now, without seeking to amend the complaint, simply because Defendants have uncovered the fact that Plaintiffs had no basis for the theory they did allege.

Moreover, Plaintiffs' attempt to sweep this new theory into their antitrust claim fails. In that regard, Plaintiffs' reliance on *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) (Posner, J) is inapposite. Opposition at 7. That court merely cautioned against failing to distinguish between "the existence of a conspiracy and its efficacy," criticizing defendants' argument that because some goods were sold for less than list price that there could not be a scheme to fix the list price. *In re HFCS*

*Litig.*, 295 F.3d at 656. This is because a scenario could exist where list prices serve a "guiding" function and a starting point for negotiations. *Id.* Indeed, as the court further explained, it would be of no import if goods were sold below list price as long as the list price was agreed upon because agreement to fix prices is a *per se* Sherman Act violation. *Id.* However, the court continued "[w]hat is true is that if many sales are made at prices below the list price, the fact that the sellers' list prices are the same is not compelling proof of collusion … But it wouldn't be anyway, since identical list prices might be adopted by imitation rather than by explicit agreement." *Id.* The *au pair* "market" presents precisely the same situation. It is certainly plausible, in *Twombly* parlance, that the stipend amount was adopted because of the Department of State regulation, not because of any price fixing agreement. A specific stipend amount of $195.75, untethered to any lawful guideline, could arguably support the inference that the sponsors conspired to arrive at that amount. Where the amount is tethered to a directive based upon a regulation, that inference falls away. And, where the actual payments are not even identical, because some *au pairs* were paid amounts above the stipend amount, it further underscores the absence of facts sufficient to infer a conspiracy.

Plaintiffs' manipulation of Keil's investigation notes in the FAC is perhaps most notable in ¶ 94, where a representative of a sponsor is characterized as "explain[ing]" why "the stipend is identical across companies." The FAC alleges:

> [t]he representative admitted that the Sponsors all agreed to pay that exact same minimum rate. As the Sponsor noted, '[e]verybody agrees' to pay *au pairs* no more than the minimum weekly wage.

Keil's log makes it clear that the Sponsor representative was not offering forth any sort of policy position but was instead attempting to entice Keil to sign up for the Sponsor's services, which is understandable given that Keil did not identify himself as an agent of Plaintiffs or explain that he was calling in connection with active litigation. Keil Depo. (ECF No. 327-1) 129:12-17. Far from offering any admission of price fixing, the representative told Keil "The Department of State sets all of the rules. The rules, so of course the stipend is identical across all companies . . . **It's a base rate, it's a minimum**." Keil Memo (ECF No. 327-5) at 2 (emphasis added). Nothing in these remarks could reasonably be construed as evidence of an improper agreement to fix prices. Her statement, in response to Keil's leading questions, "[e]verybody agrees" was merely an acknowledgement that, to her knowledge, the Sponsors understand that the stipend is the "base rate . . . minimum" established by the Department of State, which is true. The other examples, detailed in the Motion to Strike at 7-9, show similarly misleading characterizations of the Sponsor agent statements.

In short, nothing in Plaintiff's Opposition explains Keil's statements in a manner that would justify proceeding with their price fixing claim – either as alleged in the FAC or as they are attempting to modify it now. The paragraphs in the FAC and related language in other pleadings should be stricken.

**2. The Relief Requested by Defendants is Proper**

Not surprisingly, Plaintiffs' Opposition attempts to describe the subject of this motion as a garden-variety factual dispute, which will need to be resolved after lengthy, costly discovery proceeds at a later stage of the case. But, Defendants are not simply

contending that Paragraphs 90-94 are false, although they are. Rather, the crux of this motion is that Plaintiffs' counsel affirmatively knew, at the time they signed the pleading and filed it with this Court, that they were improperly, selectively quoting their own investigator's statements in a way that was materially misleading to the point of being false.

Notably, at no point in their Opposition do Plaintiffs attempt to explain why the complete quotations (which themselves were not that long) were not included in the FAC, or why the memorandum setting forth those conclusions was not simply included as an attachment to the complaint. If Plaintiffs had taken either of these steps, then the Court could have analyzed the full statements and reached its own conclusion. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits … and documents incorporated into the complaint by reference.") (citations omitted), *accord Handy v. Diggins*, Civil Action No. 10-cv-02022-WYD-KMT, 2011 WL 1743394 at *9 n.2 (D. Colo. Mar. 23, 2011) (Tafoya, J). Again, *Twombly* teaches that the question at the pleading stage is whether the allegations provide "plausible grounds … [so as] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). It cannot reasonably be disputed that, had this context been provided, Defendants' motions to dismiss and likely the Court's analysis would have had a different focus than they did.

This is not the case of a "successful deposition" wherein there is a revelation of information, new to both sides, that disproves an allegation in the complaint. Opposition

at 15. The deposition revealed what never should have occurred – an intentional deceit by Plaintiffs' counsel, which severely impacted the early dispositive motion proceedings and has now prejudiced Defendants in a severe way.

Plaintiffs' contention that "even if there were evidence contradictory to the admissions quoted in the Complaint, plaintiffs had no duty to include it in their Complaint" is telling. Opposition at 12. While Plaintiffs certainly have no duty to bring to light all contradictory evidence, they do have a duty not to mislead the Court and to consider the evidence available and decide whether they have a good faith basis to allege a claim. Plaintiffs should not be permitted to put up blinders and make empty assertions, and thereby obtain discovery to figure out whether they have a viable cause of action. *See, e.g., Twombly*, 550 U.S. at 548 ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive... It is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process…").

Despite Plaintiffs' suggestion to the contrary, this Court has broad inherent authority to grant the relief requested, even if the relief could not be granted under Fed. R. Civ. P. 12(f) as Plaintiffs allege. Plaintiffs' counsel selectively quoted and intentionally misled by omission to fill a gap in their allegations. Courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). In analogous circumstances, Courts have routinely found the "fabrication of evidence to be

an abusive litigation practice, or even a type of fraud on the court." *Gilmer v. Colo. Inst. Of Art*, 12 Fed. App'x 892, 894, (10th Cir. 2001) (citing *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999); *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898-99 (5th Cir. 1997); *Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118-19 (1st Cir. 1989); *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916-17 (9th Cir. 1987)). The Court is therefore well within its inherent powers to strike the fraudulent allegations and all references to them. *Gilmer*, 12 Fed. App'x 892, 896 n.6 (affirming district court's factual finding that plaintiff manufactured evidence, which resulted in related allegations being struck from the complaint. While the district court did not specify the basis for its decision, the Tenth Circuit "believe[d] its actions are best viewed as pursuant to its inherent power.").

* * *

Although factual allegations are generally not resolved by motion, common sense dictates that that principle cannot apply to factual allegations that were known to be false and misleading at the time they were made. This Court's Order, November 16, 2015 Order (ECF No. 235) at 5, repeating the maxim that factual allegations are to be proven or disproven at trial, was necessarily premised on its understanding that the factual allegations had evidentiary support. Where it is demonstrated that there was no support for an allegation, it cannot be the case (as Plaintiff claims) that the Court is powerless to take any action until summary judgment or trial. *See* Opposition at 15. Such a rule would allow plaintiffs to knowingly include false factual allegations in their complaint and then rely on those false allegations to obtain discovery, prolonging the

baseless litigation. This would incentivize exactly the sort of "tactical maneuvering" that this Court stressed was to be avoided when initially denying Defendants' first Motion to Strike. November 16, 2015 Order at 3.[1]

## CONCLUSION

For all of the foregoing reasons, the Court should grant Moving Defendants' Joint Motion to Strike Repudiated Allegations and for Leave to File Reconstituted Motion to Dismiss Antitrust Claim (ECF No. 327).

[1] In addition to this motion, Defendants also reserve the right to seek similar and further relief pursuant to Fed. R. Civ. P. 11 at a later date.

Dated: September 23, 2016.

Respectfully submitted,

*s/ Diane Hazel*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

*s/ Kathryn A. Reilly*
Kathryn A. Reilly (reilly@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

***Attorneys for Defendants Agent Au Pair and American Cultural Exchange, LLC d/b/a Go Aupair***

*s/ Brian Alan Birenbach*
Brian Alan Birenbach
(brian@rietzlawfirm.com)
Rietz Law Firm
LLC P.O. Box 5268
114 Village Place #301
Dillon, CO 80435

***Attorneys for Defendants American Cultural Exchange, LLC d/b/a Go Aupair and Au Pair International, Inc.***

*s/ Kathleen E. Craigmile*
Kathleen E. Craigmile
(kcraigmile@nixonshefrin.com)
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
lstone@nixonshefrin.com

***Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair and 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange***

*s/ James E. Hartley*
James E. Hartley (jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway Suite 300
Boulder, CO 80302

***Attorneys for Defendant Cultural Homestay International***

*s/ Susan M. Schaecher*
Lawrence L. Lee, Esq.
(llee@laborlawyers.com)
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

***Attorneys for Defendants APF Global Exchange, NFP and American Institute for Foreign Study d/b/a Au Pair in America***

*s/ Bogdan Enica*
Bogdan Enica (Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

***Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair***

*s/ Brian P. Maschler*
Brian P. Maschler
(bmaschler@gordonrees.com)
Gordon & Rees, LLP-San Francisco
275 Battery Street, Suite 2000 San Francisco, CA 94579

John R. Mann (jmann@gordonrees.com)
Peggy E. Kozal (pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Gordon & Reese LLP
555 17th Street, Suite 3400
Denver, CO 80202

***Attorneys for Defendant AuPairCare, Inc.***

*s/ Martha L. Fitzgerald*
Martha L. Fitzgerald (mfitzgerald@bhfs.com)
David B. Meschke (dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

***Attorneys for Defendant EurAuPair Intercultural Child Care Programs***

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Erica Lynn Herrera
(eherrera@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

***Attorneys for Defendant InterExchange, Inc.***

*s/ William J. Kelly III*
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

***Attorneys for Defendant USAuPair, Inc.***

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on September 23, 2016, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Randall W. Jackson (rjackson@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Boies Schiller & Flexner, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, FL 33301

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218

*s/ Diane Hazel*
Diane Hazel