IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-

JOHANA PAOLA BELTRAN, et al.,

        Plaintiffs,

v.

INTEREXCHANGE, INC., et al.,

        Defendants.
_____/

**PLAINTIFF DAYANNA PAOLA CARDENAS CAICEDO'S ANSWERS TO DEFENDANT'S FIRST AMENDED SET OF INTERROGATORIES**

Plaintiff Dayanna Paola Cardenas Caicedo ("Caicedo"), by and through her undersigned counsel, files Plaintiff's Answers to Amended Interrogatories propounded by Defendant, Cultural Care, Inc. ("Cultural Care").

**PRELIMINARY STATEMENT**

The answers below reflect the current state of Caicedo's knowledge, understanding and belief based upon the investigation and discovery to date. Caicedo reserves the right to make subsequent revisions and to supplement her responses as additional information is discovered, if any.

Caicedo further reserves the right to object on any ground and at any time to a demand for further answers to these Interrogatories. In responding to the Interrogatories, Caicedo does not waive, or intend to waive, any privilege or objection, including but not limited to, any objection to the competency, relevance, materiality, or admissibility of any of the Interrogatories.

**EXHIBIT H**

The preceding Preliminary Statement is incorporated into Caicedo's answers to each and every Interrogatory.  No response to any Interrogatory is, or shall be deemed to be, a waiver of Caicedo's Preliminary Statement.

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

<u>INTERROGATORY 1</u>:  Identify all representations made to you by, or communications that you had with, (a) Cultural Care, Inc., a Massachusetts company, and (b) International Care, Ltd., a Swiss company operating under the registered business name Cultural Care Au Pair, in both instances regarding your participation in the Au Pair Program, including but not limited to communications regarding any payments you could or would earn as an au pair.

<u>RESPONSE</u>:  Caicedo objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and vague with respect to the phrase "all representations made to you by, or communications that you had with, (a) Cultural Care, Inc., a Massachusetts company, and (b) International Care, Ltd., a Swiss company operating under the registered business name Cultural Care Au Pair, in both instances regarding your participation in the Au Pair Program."  As phrased, this interrogatory requires Caicedo to recall each and every communication with Cultural Care and, in addition, calls for Caicedo to speculate about the corporate organization and structure of Cultural Care, and the specific legal entitles that employed Cultural Care's representatives.  Subject to and without waiver of the foregoing objections, Caicedo states that she recalls the following statements and communications by representatives who identified themselves as employees or agents of "Cultural Care":

a) In or around December 2013 or January 2014, Caicedo visited a Cultural Care office in Bucaramanga and an employee there made the following representations:  (1) Caicedo would have to complete the au pair

2

application process and play applicable fees, including a registration fee of $50,000 COP; (2) Caicedo would have to pay half of the program fees to begin the application process and she would be responsible for paying the balance after matching with a family; and (3) the au pair program required the applicant to be a woman under the age of 26 who is single and has no kids. Caicedo was also provided with a brochure which stated that au pairs were paid $195.75. Either the brochure or the employee stated that Caicedo would have to work up to 45 hours per week. Caicedo was also told that the $500 educational stipend would be sufficient to cover her desired course work in the United States.

b) After Caicedo paid the registration fee, she presented proof of payment at the Cultural Care office and met with Teresa Bordon. Bordon told Caicedo that she could be eligible for the program despite the fact that she was no longer a student, because she had experience in child care and had held a driving license for several years. Bordon also stated that Caicedo would be paid $195.75 weekly as an au pair.

c) Caicedo met and spoke with "Kelly Diaz," who works in the Bogota office for Cultural Care. Diaz conducted Caicedo's interview and tested her for English proficiency. Caicedo also communicated several times by e-mail with Diaz regarding her au pair application.

d) After Caicedo arrived to work for her first host family, she met with her LCC in person at the host family home. After approximately one week of work

3

with the host family, Caicedo and her host family contacted the LCC to request a rematch. Caicedo was then contacted by the main director from Boston and told that it was "insane" to request a rematch after only one week and that no family would rematch with her after only a week. Subsequently, Caicedo was re-matched with a family in Pennsylvania.

e) Caicedo had various email communications with Cultural Care while she was an au pair. She does not recall the exact date or subject of these communications.

f) One of Cultural Care's LCC informed Caicedo via email that if she failed to attend the au pair meeting of the month, Cultural Care would refuse to pay for her flight home. Caicedo does not recall the date of this communication. The main Cultural Care office in Boston later confirmed that this information was incorrect.

g) Towards the end of Caicedo's au pair year, she filled out an online questionnaire providing feedback and criticism of the program, after which she received an email from Cultural Care asking her for a telephonic interview. Caicedo agreed to the interview, but the call was never scheduled.

h) After finishing the au pair program, Caicedo called Cultural Care and was provided with a Program Completion letter by email.

INTERROGATORY 2: Describe all payments made to you, or amounts of money you

4

received during or as a result of your participation in the Au Pair Program, including: (a) the date(s) on which you were paid; (b) the amount of compensation you received with each payment; (c) the method of payment; (d) the person or entity from whom you received each payment; and (e) the purpose of the payment (e.g., compensation for services performed, reimbursement for expenses, monetary gifts, bonuses, etc.).

RESPONSE: Caicedo states that in June 2014, she was paid $195.75 by her first host family for one week of work. From in or around July 2014 to December 2015, Caicedo was paid precisely $195.75 by her second host family for every week that she worked. Her host family paid her every other week in the amount of $391.50. Occasionally, but very rarely, the host family asked Caicedo to exceed her scheduled hours for a particular day.  When this occurred, the host family paid her additional money for that time.  Additionally, Caicedo walked the host family's dog on occasion and was paid for this duty.  On one such weekend, her host family paid her $40 for the weekend to walk the dog. Caicedo does not recall the exact dates or the exact amounts of payments she received for walking the dog on other occasions.  Caicedo performed housekeeping duties on some occasions and the host family paid her $100 every time she performed the duties.  She does not recall the exact dates on which she performed housekeeping services.  Additionally, Caicedo almost always received reimbursement from the host family for expenditures related to the care of the children, materials for activities, groceries and gasoline.

INTERROGATORY 3: Describe all other benefits you received from your Host Family (e.g., personal use of their vehicle, vacations, dinners at restaurants, use of a cell phone, payments of bills or debts made on your behalf, and/or non-monetary gifts), including (a) the nature of the benefit; (b) the date(s) on which you received or had use of the befit; and (c) the approximate monetary value of the benefit.

RESPONSE: Caicedo objects to Interrogatory No. 3 on the grounds that the term "benefit" is not defined and ambiguous as used in this Interrogatory.  Subject to

5

and without waiver of the foregoing objection, Caicedo states that she received the following non-monetary items from her host family:

a) The host family gave Caicedo money for her birthday and for Christmas, as well as some other small gifts, such as hand lotion and a citrus juicer. To the best of Caicedo's recollection, these gifts were worth approximately $200.

b) The host family paid Caicedo's phone bill and provided her with the use of a phone, which she returned at the end of the program. Caicedo is unable to estimate cost of the cell phone plan.

c) On occasion, Caicedo accompanied the host family to dinners. Caicedo is unable to estimate the cost of those dinners.

d) The host family permitted Caicedo to use their cars, if available, for her personal use and to use the family van to transport the children.

INTERROGATORY 4: Identify any communication you have had with any person, other than your counsel, regarding this lawsuit and/or the allegations in the Complaint.

RESPONSE: Caicedo objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and vague with respect to the phrase "any communication you have had with any person…regarding this lawsuit and/or the allegations in the Complaint." As phrased, this interrogatory requires Caicedo to recall each and every communication with every individual during an undefined period of time.

6

In addition, Caicedo objects to this interrogatory on the grounds that it calls for information pertaining to individuals not a party to this action, and potentially encompasses communications not relevant to the facts at issue in this action. Subject to and without waiver of the foregoing objections, Caicedo identifies the following individuals: her mother, Ana Esther Caicedo Rodriguez and her sister, Fernanda Sofia Cardenas. Caicedo may have also discussed this lawsuit with her friends.

INTERROGATORY 5: Describe (a) any complaints that you had but did not tell anyone with regard to your time as an au pair, and (b) any complaints that you made to any other person or entity, including but not limited to Cultural Care, a Local Childcare Consultant ("LCC"), and/or the United States Department of State, related to any aspect of your participation in the Au Pair Program (e.g., working conditions, rules, hours, vacation, education, the relationship with your host family, etc.). With regard to (b), your response should include: (i) the date of the complaint; (ii) the method of communication of the complaint; (iii) the person or persons to whom you directed the complaint; (iv) the details of the complaint; (v) a description of what happened with the complaint after you made it (e.g., additional communications, resolution, etc.); and (vi) how the complaint was resolved.

RESPONSE: Caicedo objects to subpart a of this interrogatory on the grounds that the term "complaints" as used in this context is vague, unduly burdensome, ambiguous, and overbroad. As phrased, this interrogatory requires Caicedo to recall and describe thoughts, feeling, and mental impressions that could be construed as "complaints" over an extended period. Caicedo objects to subpart b of this interrogatory on the grounds that Defendant has documents in its possession that would have further informed Caicedo's response and enabled her to provide a more fulsome response. However, Defendant has failed, since May 12, 2016, when its responses to Plaintiffs' Requests for the Production of Documents were due, to produce documents responsive to those requests. Subject to and without waiver of the foregoing objections, Caicedo states that she

7

recalls making the following complaints to other persons or entities: (1) Caicedo complained to Cultural Care regarding the placement with her first host family; (2) During the placement with her second host family, Caicedo complained to Cultural Care that her medical insurance was poor and did not cover preventative treatments; (3) Caicedo informed Cultural Care that the $500 education stipend was not enough to pay for quality course work, as she had been led to believe it would be, and that the courses available to her were cheap and of a poor quality; (4) Caicedo expressed dissatisfaction with the au pair program to her family and friends while she an au pair; and (4) Caicedo submitted a survey to Cultural Care at the end of the program that critiqued some aspects of the program and her experience as an au pair.

INTERROGATORY 6: Have you, your attorneys, their investigators, or anyone acting on your behalf interviewed or taken any statement from any Sponsor or its past or present agents, employees, or representatives? If so, state: (a) the name, address, and telephone number of the person interviewed; (b) the name, address, and telephone number of the person conducting the interview; (c) the person or persons present when the interview occurred; (d) the persons having knowledge of the substance of the interview; (e) whether the interview was recorded or otherwise how obtained; (f) the substance of the statements made; (g) if notes exist purporting to be a summary or verbatim recital of an oral statement, state the name and address of the person who made or took the notes, the nature of the notes, and the date(s) the notes were prepared; and (h) the date of and place where the interview was conducted.

RESPONSE: Caicedo objects to this Interrogatory to the extent it seeks protected work product or attorney-client communications. Caicedo further objects to this Interrogatory on the grounds that it asks her to verify under oath information that is outside her personal knowledge.

INTERROGATORY 7: Did you apply to any other education, job, cultural or other

8

activities for the year or years in which you ultimately decided to be an au pair. If so, state (a) the name and address of the entity to which you applied; (b) the position for which you applied; (c) the advertised compensation, if any, for that position; and (d) whether you received an offer for that position.

RESPONSE:  Caicedo states that she did not apply to any other education, job, cultural or other activities for the year or years in which she ultimately decided to be an au pair.

INTERROGATORY 8:  Did your Host Family provide you with a Communications Journal or other form of log or journal? If so, what did you use it for and how often did you or the Host Family contribute to it, and where is it now?

RESPONSE:  Caicedo states that she was not provided with any log or journal.

INTERROGATORY 9:  Describe your employment history for the last seven years, including: (a) dates of employment; (b) the resume(s) you submitted to obtain employment (c) identity of your employer(s); (d) the position(s) you held; (e) your responsibilities and duties for each position; and (f) the amount of compensation you earned in each position.

RESPONSE:  Caicedo states that she has been employed in the positions described below over the last seven years, not including her position as an au pair.

All salary and wage information is provided in Colombian pesos.

- **UNIVERSIDAD INDUSTRIAL DE SANTANDER- INNOTEC RESEARCH GROUP
  April 2012 –June 2014, Bucaramanga, Colombia.
  Researcher**
  -Systematic review of academic literature about innovation practices in education and service sectors
  -Development of innovation projects
  -Academic papers
  Salary: $1.700.000/month

- **UNIVERSIDAD INSUTRIAL DE SANTANDER- POSTGRADUATE STUDIES OFFICE
  April 2011 – April 2012, Bucaramanga, Colombia.**

**Administrative Assistant**
-In charge of logistics processes for the MBA classes
-Coordination of activities with professors and students
-Organization of academic events, open houses and day to day activities. Production of reports
Salary: $600.000/month

- **UNIVERSIDAD INSUTRIAL DE SANTANDER- OPALO RESEARCH GROUP**
  **September 2011 – April 2012, Bucaramanga, Colombia.**
  **Administrative Assistant**
  -Assistant of a Ph.D. professor
  Salary: $600.000/month

- **UNIVERSIDAD INSUTRIAL DE SANTANDER- UNIVERSITY WELFARE**
  **June 2010 – September 2011**
  **Bucaramanga, Colombia.**
  **Administrative Assistant**
  -Customer service
  Salary: $600.000/month

- **INSTITUTO COLOMBIANO PARA LA EVALUACION DE LA EDUCACION-ICFES, October 2011 – June 2014**
  **Bogotá, Colombia.**
  **Test manager**
  **-**Management of academic tests**.**
  -Management of human resources during the days of the tests, contract of personal and review of their work.
  Salary: $600.000/test

DATED this 12th day of August, 2016.

                        As to the objections stated:

BOIES, SCHILLER & FLEXNER LLP

*/s/ Lauren Louis*
Lauren Fleischer Louis
Sigrid S. McCawley
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Boies Schiller & Flexner, LLP-Ft. Lauderdale
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, FL 33301
llouis@bsfllp.com
smccawley@bsfllp.com

Matthew L. Schwartz
Peter Skinner
Randall W. Jackson
Boies Schiller & Flexner, LLP-New York
575 Lexington Avenue, 7th Floor
New York, NY 10022
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

Alexander Hood
Towards Justice
601 16th Street, Suite C #207
Golden, CO 80401
alex@towardsjustice.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.,

    Plaintiff,

v.

INTEREXCHANGE, INC., et al.,

    Defendants.

_____/

### DECLARATION OF DAYANNA PAOLA CARDENAS CAICEDO

I, Dayanna Paola Cardenas Caicedo, respectfully submit this Declaration in support of Plaintiff's, Dayanna Paola Cardenas Caicedo, Answers to Defendant's First Set of Interrogatories. I affirm and attest that the foregoing Answers to the Interrogatories are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12 day of August, 2016.

                                                                         Dayanna Paola Cardenas Caicedo

1

Scanned by CamScanner

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 12th day of August, 2016, I electronically served the foregoing PLAINTIFF'S, JOHANA PAOLA BELTRAN, ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES to the following e-mail addresses:

Kathryn A. Reilly
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Email: reilly@wtotrial.com

Brian Alan Birenbach Rietz Law Firm, LLC P.O. Box 5268
114 Village Place #301
Dillon, CO 80435
Email: brian@rietzlawfirm.com

Christian D. Hammond
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Email: chammond@duffordbrown.com

Lawrence D. Stone
Kathleen E. Craigmile
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
Email: lstone@nixonshefrin.com
Email: kcraigmile@nixonshefrin.com

William J. Kelly III
Chandra Marie Feldkamp
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
Email: wkelly@kellywalkerlaw.com
Email: cfeldkamp@kellywalkerlaw.com

James E. Hartley
Jonathan S. Bender
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Email: jhartley@hollandhart.com
Email: jsbender@hollandhart.com

Adam A. Hubbard
Holland & Hart LLP
1800 Broadway Suite 300
Boulder, CO 80302
Email: aahubbard@hollandhart.com

Robert M. Buchanan, Jr.
Joan A. Lukey
Lyndsey M. Kruzer
Michael T. Gass
Justin J. Wolosz
Choate Hall & Stewart LLP
Two International Place
Boston, MA 02110
Email: rbuchanan@choate.com
Email: joan.lukey@choate.com
Email: lkruzer@choate.com
Email: mgass@choate.com
Email: jwolosz@choate.com

Jessica L. Fuller
Diane Hazel
James M. Lyons
Lewis Roca Rothgerber Christie LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Email: jfuller@lrrc.com
Email: dhazel@lrrc.com
Email: jlyons@lrrc.com

Bogdan Enica
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701
Email: Bogdan@expertaupair.com

Meshach Y. Rhoades
Martin Estevao
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
Email: Rhoadesm@gtlaw.com
Email: Estevaom@gtlaw.com

Martha L. Fitzgerald
David B. Meschke
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Email: mfitzgerald@bhfs.com
Email: dmeschke@bhfs.com

Brooke A. Colaizzi
Heather F. Vickles
Raymond M. Deeny
Erica Lynn Herrera
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Email: bcolaizzi@shermanhoward.com
Email: hvickles@shermanhoward.com
Email: rdeeny@shermanhoward.com
Email: eherrera@shermanhoward.com

Brian P. Maschler
Gordon & Rees, LLP-San Francisco
275 Battery Street, Suite 2000 San
Francisco, CA 94579
Email: bmaschler@gordonrees.com

John R. Mann
Peggy E. Kozal
Thomas Baker Quinn
Gordon & Reese LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email: jmann@gordonrees.com
Email: pkozal@gordonrees.com
Email: tquinn@gordonrees.com

Lawrence L. Lee, Esq.
Susan M. Schaecher, Esq.
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651
Email: llee@laborlawyers.com
Email: sschaecher@laborlawyers.com


/s/ Lauren Louis
Lauren Louis