IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

_____

**DEFENDANT CULTURAL CARE, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION**

## INTRODUCTION

*Au pairs* do not work for Cultural Care. Each *au pair* lives with a host family, is paid a stipend by the host family, and cares for the family's children. The hours and responsibilities of the *au pair* are determined by the host family, within the bounds permitted by Department of State regulations. Plaintiffs Dayanna Paola Cardenas Caicedo ("Caicedo") and Beaudette Deetlefs ("Deetlefs") (collectively, "Plaintiffs") have failed to show that they are similarly situated, adequate, or capable of representing the class and sub-class of *au pairs* they seek to represent pursuant to this motion to certify.[1] Plaintiffs were indeed both *au pairs* matched by Cultural Care, Inc. ("Cultural Care") with host families in the United States, but their similarities, to each other and to other prospective putative class members, end there: the two Plaintiffs were cultural exchange visitors in different homes, in different states, and with different host families,

---

[1] Cultural Care does not address Sarah Carolina Azuela Rascon ("Rascon"), who is named only in the *proposed* Second Amended Complaint, and who has not been proposed as a representative of either the Cultural Care FLSA Class or Sub-Class.

7744308v8

who individually set the terms and conditions of the childcare component of their cultural exchange visits, including childcare schedules, duties, and compensation.  Moreover, each has individualized defects as a putative class representative: Caicedo has failed to submit to her deposition, and even to explain her failure to do so, and Deetlefs encountered issues – hopefully entirely aberrational in relation to other *au pairs* -- with her host family relating to demonstrations of racism.  Given the individualized nature of each *au pair*'s experience, Plaintiffs cannot show that they were subject to a common policy or that they were otherwise similarly situated.  Therefore, conditional collective action certification is inappropriate.

## **STATEMENT OF FACTS**

### A. Cultural Care's Role as a Sponsor Organization.

Cultural Care is designated by the U.S. Department of State ("DOS") as a "sponsor" authorized to oversee an *au pair* exchange visitor program (the "*au pair* program").  First Amended Complaint, ECF No. 101, ("FAC") ¶ 46, Defendant Cultural Care, Inc.'s Answer to Plaintiffs' First Amended Complaint and Jury Demand, ECF No. 277, ("Answer") ¶ 46.  As such, Cultural Care sponsors the J-1 visas of *au pairs* who wish to come to the United States as cultural exchange visitors and matches them with families who wish to host *au pairs.*  FAC ¶¶ 43-46, Answer ¶¶ 43-46.  The requirements of the J-1 visa program are dictated by DOS, and Cultural Care informs families of the DOS requirements.  FAC ¶¶ 42-45, Answer ¶¶ 42-45. Once the *au pairs* are living in the United States with a host family, a local representative from Cultural Care (pursuant to DOS requirements) checks in with the family and separately with the *au pair* on at least

a monthly basis in order to ensure that both parties are complying with the DOS requirements.  Defendant Cultural Care, Inc.'s Answers to Plaintiffs' First Set of Interrogatories ("CC Int.," attached hereto as Exhibit A) at No. 2.

During his or her time in the United States, an *au pair* is permitted to provide services in only one respect: providing up to a maximum of 10 hours per day and 45 hours per week of childcare and directly related services for the host family with whom the *au pair* is living.  The host families are required to compensate the *au pairs* for childcare through a weekly stipend and room and board, as well as providing a beneficial cultural experience and underwriting the au pair's continuing education in the U.S.  The minimum stipend amount is set by the DOS and is currently $195.75 per week.  *See* Notice: Federal Minimum Wage Increase, ECF No. 74-2.  Although there is no statute that defines how the stipend minimum is determined, DOS has, for decades, chosen to calculate it by tying the stipend to the federal minimum wage (currently $7.25 per hour), multiplied by 45 hours per week, and applying a 40% credit primarily based on the Department of Labor's guidelines to account for the cost of lodging and food provided by the host family to the *au pair*.  *Id.*  As a sponsor organization, Cultural Care is required to inform both *au pairs* and host families of the minimum stipend and the maximum childcare hours.  *Id.*; CC Int. at No. 2, 3.  Cultural Care has no policy regarding how much each host family should pay its *au pair*, other than that the amount must at least meet the DOS's stated $195.75 per week minimum, regardless of how many *or how few* hours an *au pair* provides childcare services in a given week.  *See id.* at No. 3.

7744308v8

Beyond ensuring minimum compliance with DOS regulations, Cultural Care has no role in setting the terms and conditions of *au pairs*' arrangements with their host families. Instead, each host family is responsible for setting the family's childcare schedule, paying the *au pair*'s stipend, and assigning the childcare and related responsibilities to the family's *au pair*. Host family & *au pair* acknowledgement ("Hours Agreement"), attached hereto as Exhibit B, Host family agreement, ¶ 5-6, attached hereto as Exhibit C. Culture Care maintains no records regarding the hours each *au pair* devotes to childcare or the amount each *au pair* is paid, other than asking both host families and *au pairs* to certify that the *au pair* has been paid the minimum stipend for each week and has not exceeded the maximum on-duty hours for each day and week. *See* Hours Agreement; Host family agreement, ¶ 5; CC Int. at No. 4. Weekly stipends are paid solely by the families with no involvement from Cultural Care. *Id.*

B.  Plaintiff Beaudette Deetlefs.

Deetlefs participated in the *au pair* program from August 2014 to June 2015. *See* Plaintiff Beaudette Deetlefs' Supplemental Answers to Defendant's First Amended Set of Interrogatories ("Deetlefs Int."), attached hereto as Exhibit D, at No. 2. Through Cultural Care, she was matched with a host family in Utah. Deetlefs' host family scheduled her childcare responsibilities for 2 or 3 days per week. Declaration of Beaudette Deetlefs ("Deetlefs' Decl."), ECF No. 325-1 at 21. Deetlefs has pled in the FAC and stated in her Declaration that she sometimes provided childcare for more than 10 hours per day, but she did not state in either that she ever provided such services for

more than 40 hours per week.[2]  *Id*.  Although Deetlefs apparently did not provide childcare for the programmatic maximum of 45 hours per week, her host family paid her $195.75 per week for each week during Deetlefs' placement.  *See* Deetlefs Int. at No. 2.  In this case, Deetlefs is seeking to recover damages only for the difference between what she was paid per hour and the full minimum wage amount.  Deposition of Beaudette Deetlefs ("Deetlefs Dep."), excerpts attached hereto as Exhibit E, 197:9-23.  Deetlefs has not alleged in any document or in her deposition that she is seeking damages for unpaid overtime.

Deetlefs' host family complained to Cultural Care that Deetlefs was racist.  Specifically, a Cultural Care local care consultant reported, "… Bella [Deetlefs] is a raciest [sic] and that is [sic] really been hard for the family.  She [the host mother] has limited Bella's time with the older kids because of it.  Bella makes comments and does not see the wrong in it… it is not appropriate in their home or in America."  Deetlefs Dep., Exhibit 67, attached hereto as Exhibit F, 155:3-13, 157:17-158:9.  The host family's concerns are confirmed by Deetlefs' public comments on the internet about blacks in South Africa, including an image that questions blacks' ability to govern South Africa and a posting that states: "You are WHITE.  Your anscesters [sic] did not steal this country… they BUILT this country! #ReclaimYourStake."  Deetlefs Dep., 158:23-

---

[2] Although she did not plead in either the FAC or her Declaration that she ever provided childcare more than 40 hours in a week, Deetlefs testified in her deposition that she sometimes did but that she "can't tell… a precise number" and that she "do[es]n't know" how she could figure out how many times she provided childcare over 40 hours in a week.  Deetlefs Dep., 116:10-16.  She acknowledged, however, (1) that she did not say in her Declaration that she provided childcare more the 40 hours in any week and (2) that she told a media source she said that she only provided childcare for 35-40 hours per week.  Deetlefs Dep., 113:9-114:12; 115:4-116:9.

5

159:6; Deetlefs Dep., Exhibits 68 and 69, attached hereto as Exhibit G.

      C.     <u>Plaintiff Dayanna Paola Cardenas Caicedo.</u>

Caicedo should be stricken from the case for the reasons discussed herein and in the Motion of Defendant Cultural Care, Inc. for Sanctions Pursuant to Rule 37(d), and Incorporated Memorandum (ECF No. 337) ("Rule 37(d) Motion"). She participated in the *au pair* program from June 2014 to December 2015. Declaration of Dayanna Paola Cardenas Caicedo ("Caicedo Decl."), ECF No. 325-1 at 10-11. Through Cultural Care, she was initially matched with a host family in New Jersey. Caicedo Decl. at 10. After one week, Caicedo requested to be placed with a new family, and Cultural Care honored her request and re-matched her with a family in Pennsylvania. Caicedo Decl. at 11. Caicedo remained with her host family in Pennsylvania for the remainder of her first year in the *au pair* program, and she and her host family mutually decided to extend her participation into a second year. *Id.*

During her time with her host family, Caicedo apparently sometimes provided care for more than 40 hours per week, but she does not allege that she ever provided such service for more than the programmatic maximum of 45 hours per week. *Id.* at 11. Her host family always gave her a payment of $391.50 every other week, and some weeks her host family gave her additional payments of $40 for walking the dog and / or $100 for performing certain household tasks. Plaintiff Dayanna Paola Cardenas Caicedo's Answers to Defendant's First Amended Set of Interrogatories ("Caicedo Int."), attached hereto as Exhibit H, at No. 2. Therefore Caicedo's compensation varied from $195.75 up to $335.75 per week. Caicedo provides no information regarding the

7744308v8

precise (or even approximate) number of hours for which she provided services in any given week, nor if the dog-walking or household tasks were done concurrent with, in place of, or in addition to her childcare responsibilities.  Cultural Care has been deprived of the opportunity to test these answers by her refusal to appear for her deposition.  At any rate, she has not claimed that her services ever exceeded 45 hours per week.

As described in detail in the Rule 37(d) Motion, incorporated here by reference, Plaintiff Caicedo failed, without offering any explanation, to appear for her deposition in this case on August 16, 2016.  Since that date, over a month ago, Defendants have repeatedly asked, through counsel, for an explanation of Caicedo's non-appearance and for another date to depose Caicedo.  Plaintiffs have offered neither.  That time has passed because of this motion.

## ARGUMENT

Although the standard for conditional certification of a collective action under the FLSA may be "lenient," conditional certification is not automatic.  "A collective action under the FLSA may be maintained only by and among employees who are 'similarly situated.'"  *Young v. Dollar Tree Stores, Inc.*,  2012 WL 3705005 at *1 (D. Colo. August 24, 2012).  In deciding whether to grant conditional certification of the collective action, a trial court must determine whether plaintiffs have made "**substantial allegations** that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002) (emphasis added) (internal citation and quotation omitted).

### I. Plaintiff Caicedo Should Not Be Permitted to Proceed as a Class Representative.

As Cultural Care argued in its Rule 37(d) Motion, Caicedo should not be permitted to serve as a class representative. When a party fails to appear for her own deposition, the Court on motion may issue an order prohibiting a plaintiff from supporting her claims (Rule 37(b)(2)(A)(ii)), striking allegations in the complaint (Rule 37(b)(2)(A)(iii)), and dismissing the action (Rule 37(b)(2)(A)(v)).  Fed. R. Civ. P. 37(d)(3). At this juncture, the Court should not consider a belated excuse from Caicedo if one is forthcoming. This is only fair, given that her reasons for her conduct may actually bear on her fitness as a putative class representative, or whether she even wishes to serve in that role.

### II. Plaintiffs Have Not Put Forth Substantial Allegations that the Putative Class Members Were Subjected to a Single Policy.

#### A. Deetlefs and Caicedo Fail to Show that They and the Putative Cultural Care Class Members Were Subject to a Single Policy, Decision, or Plan.

Deetlefs and Caicedo do not present substantial allegations that they and the other putative class members, whom they define as other *au pairs* sponsored by Cultural Care (Plaintiffs' Motion for Conditional Collective Action Certification and Incorporated Memorandum of Law ("Motion for Conditional Certification") (ECF No. 325) at 3-4), are similarly situated as "victim[s] of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Nor do they provide a single declaration from, or allegation about, any other *au pair* sponsored by Cultural Care. Instead, relying on the fact that Cultural Care advised host families that au pairs must receive a <u>minimum</u> weekly

8

stipend of $195.75 for up to 45 hours of childcare per week—an amount set by DOS regulations—Deetlefs and Caicedo assert that other Cultural Care-sponsored *au pairs* received a weekly stipend of $195.75 and provided care for over 40 hours a week. Deetlefs and Caicedo, however, cannot sustain their burden by asking the Court to assume that other Cultural Care-sponsored *au pairs* are similarly situated. *See, e.g.*, *Anjum v. J.C. Penney Co.*, No. 13 CV 460, 2015 WL 3603973, at *8 (E.D.N.Y. June 5, 2015) (plaintiffs' "belief" that employees working at other store locations under different supervisors were "similarly situated" was insufficient for conditional certification absent "firsthand evidence" that those employees were denied proper wages); *Crowley v. Paint & Body Experts of Slidell, Inc.*, Civ. Action No. 14-172, 2014 WL 2506519, at *7 (E.D. La. June 3, 2014) (denying conditional certification when plaintiff did not provide affidavits or identify other employees that were similarly situated); *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 666 (D. Kan. 2005) ("[T]he initial *ad hoc* FLSA class certification standard . . . require[s] plaintiff to provide more than his own speculative allegations, standing alone.").

Moreover, the affidavits of Deetlefs and Caicedo themselves demonstrate that the terms and conditions of *au pairs*' arrangements vary greatly and are set by the individual host families, not by Cultural Care.[3] Each host family decides, among other

---

[3] Although the other named Plaintiffs in the FAC are not *au pairs* who were placed by CCAP, their declarations show how much the experience of each *au pair*, particularly with respect to hours and pay, may vary. *See, e.g.,* Declaration of Ivette Alexandra Gonzalez Cortes, ECF No. 325-1 at 7 (plaintiff alleges she was paid $200 per week); Declaration of Lusapho Hlatshaneni, ECF No. 325-1 at 24 (plaintiff alleges she was paid $195.75 by one host family and was paid $200 by another host family, for whom she provided childcare 40 to 60 hours per week).

9

matters, how much to pay its *au pair*, what childcare duties to assign to its *au pair*, how the childcare should be performed, and what hours its *au pair* will provide childcare each week. Cultural Care's involvement, on the other hand, is limited to ensuring compliance with DOS regulations, such as the minimum stipend payment, the maximum hours of service, and the minimum time-off requirements.

Because of this arrangement, Plaintiffs' living conditions, compensation, and schedule vary widely. For example, Deetlefs provided childcare two or three days per week for fewer than forty total hours per week, and her host family paid her the DOS minimum stipend of $195.75 every week. Caicedo, on the other hand, typically provided childcare for between 40 and 45 hours per week, and her compensation varied between $195.75 and $335.75 per week.

If this Court were to grant conditional certification, it would be taking an unprecedented step of conditionally certifying a class where every potential class member has a separate employer.[4] Even if Plaintiffs were able to prevail on their claim that Cultural Care is a joint employer – which Cultural Care contends they cannot – they have not cited a single case in which a court has conditionally certified a class of individuals with different co-employers at different geographic locations. To the contrary, when Plaintiffs are at different sites and are subjected to different terms and conditions of "employment," such that a common policy does not exist, conditional

---

[4] In the telephonic discovery conference on September 8, 2016, Magistrate Judge Tafoya, when referring to the *au* pairs, stated, "Because these – most of these people don't even work, I don't think, for the sponsors anymore." Transcript, attached hereto as Exhibit I, at 34:16-18. As detailed herein and throughout this litigation, Cultural Care respectfully disagrees with the implication that *au pairs* have ever worked for sponsor agencies.

10

certification should be denied.  For example, in *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660 (E.D. Pa. 2010), the court considered whether to conditionally certify a class of healthcare workers who were employed by a common staffing agency but placed at different client worksites.  In denying conditional certification, the court reasoned that the workers' claims were not suitable for collective action because different clients "…determine the healthcare workers' schedules, scope of responsibilities, and length of contract."  *Id.* at 666.  Moreover, the court noted that the staffing agency "d[id] not supervise the healthcare workers' work."  *Id.*  The role of Cultural Care is even less than that of the staffing agency in *Bamgbose*.   As a DOS designated sponsor, Cultural Care matches *au pairs* with host families; only the families have the ability to supervise the *au pairs* and determine their hours and stipend amount.

In other contexts, courts have likewise denied conditional certification to proposed classes of workers (which *au pairs* are not) who work at different locations and under different supervisors, particularly where the named plaintiffs have not submitted evidence that workers at other locations were subjected to similar work hours or wage policies.  *See, e.g., Anjum*, 2015 WL at *8 (denying conditional certification that included workers at different locations with different supervisors because named plaintiffs relied on "belief" rather than "firsthand evidence" that employees in other locations were denied proper wages); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 687 (D. Md. 2010) (denying conditional certification to a class of field interviewers because their case assignments varied from location to location and manager to manager, with no central record-keeping system to track hours worked); *see Xavier v. Belfor USA*

11

*Group, Inc.*, 585 F. Supp. 2d 873, 880 (D. La. 2008) ("While the named plaintiffs and potential opt-in plaintiffs may all have been denied overtime payments, the similarity ends there. The action taken by each of the subcontractors at each Belfor job site would have to be reviewed and individually analyzed to determine, *inter alia*, whether a violation occurred and whether Belfor would be liable for such a violation").

Conditional certification should be denied because adjudication of this case would require "substantial individualized determinations for each class member." *Syrja*, 756 F. Supp. 2d at 687 (internal citation and quotation omitted).

### B. Plaintiffs' Argument Erroneously Relies on Their Antitrust Allegations to Satisfy Their Burden.

In light of their failure to raise substantial allegations that Cultural Care subjected its *au pairs* to a single policy that interfered with their rights under the FLSA, Plaintiffs erroneously rely on their antitrust allegations to argue that the Court has already made a finding on this issue. In particular, Plaintiffs' primary argument in their Motion for Conditional Certification is:

> Certification is appropriate because there is no real dispute about whether the Plaintiffs and other members of the Proposed Classes are similarly situated. The Court has already found that the Plaintiffs have adequately alleged an antitrust conspiracy, meaning that the pleadings satisfactorily allege an agreement amongst the Sponsor Defendants to set wages at an illegally low level that also violates the FLSA.

*See* Motion for Conditional Certification at 7. However, in making its preliminary determination, at a stage where all of Plaintiffs' allegations must be taken as true, the Court relied primarily upon purported "direct" evidence of an alleged conspiracy supposedly gathered by Plaintiffs' private investigator, David Keil ("Keil").

As detailed in Moving Defendants' Joint Motion to Strike Repudiated Allegations, ECF No. 337, incorporated here by reference, subsequent to the Court's decision, Defendants deposed Keil and discovered that his investigation did *not* show a conspiracy among Defendants. At very least, Keil's testimony demonstrates that Plaintiffs should not be permitted to rely on their shaky antitrust allegations to justify condition certification.

Deetlefs and Caicedo both offer vague statements that they were paid $195.75 per week by their host families "because Cultural Care told them to."  However, neither gives any context to this statement. The most reasonable conclusion is that Cultural Care, as required, provided host families with information consistent with the DOS notice: that host families were required to pay a weekly stipend of at least $195.75. Indeed, Caicedo's host family paid her significantly more than $195.75 during several weeks, suggesting that her host family did not feel constrained by the DOS minimum.

### III. Deetlefs Is Not an Adequate Class Representative.

Deetlefs' publicly-expressed racist views render her an inappropriate representative of potential class members.  Deetlefs' host family sought to shield their older children from Deetlefs because of her views.  At her deposition, Deetlefs acknowledged the shocking Facebook posts attached at Exhibit G and referenced above.  (E.g., "You are WHITE.  Your anscesters [sic] did not steal this country… they BUILT this country! #ReclaimYourStake.")  This publicly-expressed animus disqualifies Deetlefs as a class representative, both because her racism tainted her relationship with her host family, and because the putative class includes individuals of many different

13

races.  *See, e.g., Parrish v. NFLPA & NFL Players Inc.*, 2008 WL 1925208 at *8 (N.D. Cal. April 29, 2008) ("racially charged comments on an internet blog" would have been a valid basis to disqualify named plaintiff as a class representative; plaintiff's comments were "particularly disturbing considering many of the putative class members that Parrish is seeking to represent are African American").

## IV. Plaintiffs Have No Representative for the Cultural Care Sub-Class.

Plaintiffs seek conditional certification of a Cultural Care Sub-Class for claims of unpaid overtime after January 1, 2015.  However, Plaintiffs do not have a class representative for the Sub-Class.  Although the FLSA collective action process does not explicitly adopt the requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure, adequacy of class representation is still relevant.  *See Wilkerson v. Martin Marietta Corp.*, 875 F. Supp. 1456, 1463 (D. Colo. 1995); *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004). The most basic requirement for an adequate class representative is that the named plaintiff be a member of the class.  *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977); *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014); *Stubbs*, 227 F.R.D. at 665 (adopting the principle in the FLSA collective action context).

Even if one gets beyond Caicedo's Fed. R. Civ. P. 37(d) issues,  she has not asserted that she worked overtime after January 1, 2015.  In her declaration, she asserts merely that, "I worked some weeks more than 40 hours (but not all)."  Caicedo Decl. at 11.  Because she was an *au pair* both before and after January 1, 2015, and she has not claimed that any of these unknown number of weeks occurred after that

14

date, she has not adequately pled that she was a member of the Sub-Class, much less that she is an adequate representative of it.

Likewise, if Deetlefs is permitted to continue as a potential representative of the Class despite her racial animus, she has not pled, in either the FAC or her Declaration, that she ever provided childcare for more than 40 hours per week.  Despite her efforts to backtrack at her deposition, Deetlefs was unable to say how often or when this allegedly happened, and she testified that she did not know how she could figure out how often or when it happened.  Like Caicedo, Deetlefs was an *au pair* both before and after January 1, 2015, and she offered no testimony to show that the weeks where she allegedly provided childcare for more than 40 hours occurred after the latter key date.  Moreover, Deetlefs testified that she seeks to recover damages only for minimum wage violations, thereby removing her from a class or Sub-Class seeking overtime.

### V.  Plaintiffs' Proposed Notice and Forms of Notification are Inaccurate and Over-reaching.

Cultural Care incorporates and joins in Sections II and III of Defendant American Cultural Exchange LLC d/b/a Go Au Pair's Opposition to Plaintiffs' Motion for Conditional Certification, ECF No. 359 ("Go Au Pair's Opposition"), as well as the proposed class notice attached to Go Au Pair's Opposition at Exhibits C and D.

### CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion for Conditional Collective Action Certification should be denied, or, if it is allowed, the means of notice should be limited to regular mail and electronic mail, and the content of the notice should be amended as proposed herein.

Dated:  September 23, 2016.                    Respectfully submitted,


*s/ James M. Lyons*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

7744308v8

## CERTIFICATE OF SERVICE (CM/ECF)

  I hereby certify that on September 23, 2016, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Randall W. Jackson (rjackson@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Boies Schiller & Flexner, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, FL 33301


Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218


            *s/ James M. Lyons*
            James M. Lyons

7744308v8