# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, ET AL.

    Plaintiffs,

v.

INTEREXCHANGE, INC., ET AL.

    Defendants.

## PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

### Certification of Compliance with D. Colo. L. Civ. R. 7.1(a)

Pursuant to District of Colorado Local Civil Rule 7.1(a), Plaintiffs hereby certify that on September 8, 2016, during a telephonic conference with Magistrate Judge Tafoya, Plaintiffs moved for a protective order to prevent Defendants from asking irrelevant and harassing deposition questions about Plaintiffs' personal lives and immigration status. Defendants opposed that motion. Magistrate Judge Tafoya offered her preliminary thoughts on the issue and invited Plaintiffs to submit briefing in further support of their motion. Plaintiffs now submit this brief in further support of their motion for a protective order.

### Preliminary Statement

Defendants have engaged in a pattern of abusive, harassing, and irrelevant inquiries during their depositions of Plaintiffs. Despite Magistrate Judge Tafoya's clear instructions that questions about the Plaintiffs' love lives, personal lives, personal time

and immigration status are improper, Defendants have continued to ask inappropriate questions at Plaintiffs' depositions. As a result, Plaintiffs seek a protective order providing that Defendants cease any inquiries into Plaintiffs' personal lives, requiring that questions about immigration status and financial condition remain off limits, and mandating that Defendants focus their inquiries on questions relating to the work Plaintiffs engaged in while employed by one of Defendants' companies.[1]

## Factual Background

Over the course of multiple depositions, defense counsel have asked the named Plaintiffs offensive, personal, and degrading questions in a transparent effort to punish those who have brought claims against them and to intimidate others from bringing similar claims.

For instance, on August 30, 2016, defense counsel deposed Plaintiff Johana Paola Beltran. During that deposition, counsel for Defendant Interexchange inexplicably asked Ms. Beltran about her love life:

Q: Do you currently have a boyfriend or someone that you date?
A: No.
Q: Have you at any point in time since leaving the Noonans?
A: No. The – I've been kidnapped just to be in school all the time.

See Transcript of the Deposition of Paola Beltran, dated August 30, 2016 ("Beltran Tr.") at 199:17-23 (attached as Exhibit C to the Declaration of Lauren F. Louis, dated September 26, 2016 ("Louis Decl.")). Not to be undone, counsel for Defendants Agent Au Pair, GoAuPair and Au Pair in America then pursued *one* line of questioning, all about flowers that had been sent to Ms. Beltran:

---

[1] A proposed protective order is attached at Exhibit 1.

> Q: . . . On your Facebook page, who was it who sent you the beautiful flowers for Valentine's Day?
> A: Somebody from the school.
> Q: Not Orlando?
> A: No.
> Q. Okay. Nothing further. Thank you.

*See* Beltran Tr. at 200:19-23.  Ms. Beltran was also interrogated about her travel within the United States, for the stated purpose of determining whether she had overstayed her visa.  *See* Beltran Tr. at 171-174, 177, 200; *see also* Louis Decl. at ¶ 6.  And she was challenged about whether she had committed a federal crime by bribing someone to sponsor her for a visa: *Id.* at ¶ 7.

> Q: Okay. And did you give him any money or anything in exchange for his agreement to sponsor your student visa?...
> A: No.

Beltran Tr. at 178:11-21

The harassing questions continued during the deposition of Plaintiff Lusapho Hlatshaneni, which was held on September 7, 2016.  Ms. Hlatshaneni was asked repeated questions about speeding tickets and traffic violations that occurred during her time off from working as an au pair:

> Q. Did you violate any other U.S. traffic or criminal laws other than the two you've testified to?
> A. No.
> Q. Who paid the penalties for those traffic violations?
> A. I did.
> Q. Did you ask for reimbursement from the Prime family?
> A. No.
> Q. Did you ask for reimbursement from Au Pair In America?
> A. No.
> Q. Were these two traffic violations committed during the time that you were having some time off from the family?
> A. Yes.

3

Transcript of the Deposition of Lusapho Hlatshaneni, dated September 7, 2016 ("Hlatshaneni Tr.") at 119:5-21 (attached as Exhibit D to the Louis Decl.); *see also id.* at 117-18.  Ms. Hlatshaneni testified that she was uncomfortable with the tone in which she was questioned.  *See id.* 131:15-19.  Ms. Hlatshaneni was also asked numerous questions about her finances, which she described as "borderline" "intimidating" and "harassment".  *Id.* at 153-54.

At the September 8, 2016 deposition of Plaintiff Juliane Harning, the intrusive and harassing questioning continued yet again.  Ms. Harning was asked about trips she had taken to the United States when she was not even working as an au pair, as well as details about a "road trip" she took on the East Coast.  *See* Transcript of the Deposition of Juliane Harning, dated September 8, 2016 ("Harning Tr.") at 126:18–127:8 (attached as Exhibit B to the Louis Decl.).  During the middle of the deposition, the parties contacted Magistrate Judge Tafoya to seek clarification on the permissible scope of the questions which may be posed to plaintiffs. *See* Harning Tr. at 128-165.

Magistrate Judge Tafoya invited further briefing on the issue of a protective order but gave her preliminary thoughts on topics that she believed would be out-of-bounds for questioning:

> [I]mmigration status is out…And questions about their love lives or what they did in their off time and all that sort of thing, that's just not relevant to the issues before the Court.  And I don't know why you would even want to know.

*See* Harning Tr. at 162:5-11; *see also id.* at 161:25-162:1 ("In general, I don't think someone's love life is appropriate . . .").

Notwithstanding Judge Tafoya's admonitions, the harassing questioning continued in the next two depositions.  On September 14, 2016, defendants deposed

Plaintiff Laura Mejia Jimenez. Ms. Jimenez was asked about her personal life, including where she deposited her money, whether she sent any money home to her family, and how she spent the money she received. *See* Transcript of the Deposition of Laura Mejia Jimenez, dated September 14, 2016 ("Mejia Tr.") at 179:15-180:05 (attached as Exhibit E to the Louis Decl.). After Ms. Mejia stated that she had worked what she felt was too many hours (in excess of 45 per week), she was asked "…what else did *you* have going on…?" Mejia Tr. at 220. Defense counsel also accused Ms. Mejia repeatedly of lying. *Id.* at 192-93, 204-05, 229. After the deposition, Ms. Mejia collapsed and sobbed outside of the deposition on the street. *See* Louis Decl. at ¶ 14.

And most recently, the harassing questions continued during Plaintiff Beaudette Deetlefs' deposition on September 21, 2016. Once again, in contradiction of Magistrate Judge Tafoya's instructions, defense counsel asked Ms. Deetlefs irrelevant questions about her personal life. For instance, defense counsel inquired: "What did you do in your free time?" *See* Rough Transcript of the Deposition of Beaudette Deetlefs, dated September 21, 2016 ("Deetlefs Tr.") at 123:4 (attached as Exhibit A to the Louis Decl.). Despite plaintiffs' counsel's objections and reference to Judge Tafoya's instruction on the permissible scope of discovery, defense counsel insisted on an answer. *See id.* at 123-126. Ms. Deetlefs was also asked whether she met a "boyfriend" while in the United States, *id.* at 147-48; questioned about her travel in the United States, *id.* at 148; asked about her living expenses before she applied to work as an au pair, *id.* at 80-81; and questioned about the amount of money she brought with her to the United States, *id.* at 81. She was even asked how she planned to spend the money that she earned as an au pair:

5

> Q: Did you bring money with you to the United States?
> A: Yes I did.
> Q: How much did you bring?
> A: A little more than 200 dollars.
> Q: Did you plan to spend all of your stipend or save some of it?
> A: The main idea was to save and send it back home.
> Q: Send it back home to save or to – for some other purpose?
> A: Firstly to pay off that money that I borrowed to pay the – that initial fee I had to pay that off and then after 10 to see how much I could save up to bring back with me.

Id. at 81:23-82:11.

## Discussion

### A. Legal Standard

The Federal Rules of Civil Procedure limit the scope of discovery to "any matter relevant to the claims or defenses of any party and proportional to the needs of the case." See Fed. R. Civ. P. 26(b)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Boden v. Hmshost Corp.*, No. 15-CV-00606-CMA-KMT, 2015 WL 3826725, at *1 (D. Colo. June 19, 2015) (quoting Fed. R. Civ. P. 26(c) (Tafoya, J.). Rule 26(c) also allows a court to, "among other actions, forbid the disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters." *Brown v. Brown*, No. 11-cv-00517-WYD-KMT, 2011 WL 6020589, at *2 (Dist. Colo. Dec. 2, 2011) (Tafoya, J.). "The decision to issue a protective order rests within the sound discretion of the trial court." *Wang v. Hsu,* 919 F.2d 130, 130 (10th Cir. 1990)

Such a protective order may be available where a party can "show that the discovery request will result in a clearly defined and serious injury to that moving party." *Brunet v. Quizno's Franchise Co. LLC*, No. 07-cv-01717-PAB-KMT, 2008 WL 5378140,

6

at *1 (D. Colo. Dec. 23, 2008) (Tafoya, J.). "As a general rule, the 'good cause' calculation requires that the Court balance the moving party's need for information against the injury which might result from unrestricted disclosure…In addition, the Court should consider any privacy interests that may be implicated and whether the case involves issues that may be important to the public." *Zvelo, Inc. v. SonicWALL, Inc.*, No. 06-CV-00445-PAB-KLM, 2013 WL 2338352, at *3 (D. Colo. May 29, 2013) (internal citations omitted). Courts have granted protective orders where the discovery sought is largely irrelevant and would have an *in terrorem* effect. *See Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1236 (D. Colo. 2012) (refusing to allow inquiries into a FLSA plaintiff's immigration status due to the "*in terrorem*" effect of such an inquiry); *accord Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (the same).

**B.     Defendants' Questions are Not Designed to Elicit Relevant Testimony**

Defendants' persistent questions regarding Plaintiffs' personal lives are not designed to elicit relevant testimony; rather, they are designed to harass plaintiffs and intimidate them from pursuing their claims. As Magistrate Judge Tafoya has already indicated, Defendants have no legitimate need for information about Plaintiffs' love lives, personal time, or immigration status. *See* Beltran Tr. at 161-62. On the other hand, these questions clearly injure Plaintiffs by invading their privacy and intimidating them from prosecuting their claims. Given Defendants' persistent questioning on highly irrelevant and personal topics, even after Magistrate Judge Tafoya made plain that such questions are out-of-bounds, the Court should enter the requested protective order.

The entry of a written protective order will serve at least two purposes. First, it will make plain, in writing, the scope of impermissible questions going forward — a necessary step given that Plaintiffs' depositions continue. Second, it will provide teeth to the Court's previous instruction that Defendants' questions are inappropriate and impermissible, as Defendants will risk being held in contempt of court if they defy an express order.[2]

## **CONCLUSION**

For the foregoing reasons, the Court should grant the motion and enter a protective order prohibiting Defendants from their continued abusive, harassing and irrelevant inquiries.

Dated: New York, New York
September 26, 2016

        Respectfully Submitted,

        BOIES, SCHILLER & FLEXNER LLP

        S/ Peter M. Skinner
        Matthew L. Schwartz
        Peter M. Skinner
        575 Lexington Avenue
        New York, New York  10022
        Tel: (212) 446-2300
        Fax: (212) 446-2350
        mlschwartz@bsfllp.com
        pskinner@bsfllp.com

        Sigrid S. McCawley
        Lauren Fleischer Louis

---

[2] If Plaintiffs prevail on this motion for a protective order, they intend to move in the future — and after conferring with defense counsel pursuant to Local Civil Rule 7.1(a) — for their reasonable expenses in bringing this motion. *See* Fed. R. Civ. P. 37(a)(5) (providing that if a protective order is granted, the party (or attorney advising that party) whose conduct gave rise to the entry of the order must pay the movant's reasonable expenses).

401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel.: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

**Certificate of Service**

I hereby certify that on September 26, 2016, I served a true and correct copy of the forgoing on all counsel of record by ECF pursuant to Fed. R. Civ. P. 5.

S/      Peter M. Skinner
Peter M. Skinner