IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

**DECLARATION OF LAUREN F. LOUIS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS AND PLAINIFFS' MOTION FOR A PROTECTIVE ORDER**

I, Lauren F. Louis, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the State of Florida and am Counsel with the law firm of Boies, Schiller & Flexner LLP, Co-Counsel for the Plaintiffs and for the Class. I am admitted to practice in Florida, New York, the Southern District of Florida and the District of Colorado. The matters stated herein are based on my personal knowledge and, if called upon to testify, I could and would testify competently thereto. I make this declaration in support of Plaintiffs' opposition to Defendants' motion for sanctions and in support of Plaintiffs' motion for a protective order.

2. The defendants in this case have harassed the named Plaintiffs in a transparent effort to punish those who have brought claims against them and to intimidate others from bringing similar claims. The defendants have targeted the named Plaintiffs; they have tried to use their host families against them; and they have intimated and harassed

the named Plaintiffs during depositions.  In the relatively short time since discovery began in this case, and even before, the defendants have undertaken specific measures to attack the Plaintiffs, rather than their allegations.

3. For example, in or around June 2015, defendant Cultural Care – consistent with its control over the conditions of *au pair*'s employment – demanded that plaintiff Beaudette Deetlefs leave her host family's home within hours of being terminated as a result of her participation in this lawsuit.  *See* Rough Transcript of the Deposition of Beaudette Deetlefs, dated September 21, 2016 ("Deetlefs Tr. (Rough)") at 30:9-12 (Q: And what did you say was the reason that you got fired? A: Because of the article that was in the newspaper because of this lawsuit."). Though she was planning to extend her stay for a second year as an *au pair*, emotionally exhausted from the experience, Ms. Deetlefs returned early to her home country of South Africa.  *See* Deetlefs Tr. (Rough) at 186:6-10 ("Q: Now, in the end you voluntarily withdrew from the re-match process, is that correct? A: Yes.  Q: Why?  A: I just wanted to go home.").  True and correct copies of the relevant pages of Ms. Deetlefs' deposition are attached as Exhibit A.

4. More recently, on or about September 7, 2016, a lawyer representing plaintiff Juliane Harning's former host family called my law partner and explained that Ms. Harning's former sponsor, AuPairCare, was "all over [the host family] to help out." During Ms. Harning's deposition, defense counsel for AuPairCare asked a series of leading questions indicating that he knew precisely how the host family had confronted Ms. Harning about her participation in the lawsuit, and questioned Ms. Harning at length about whether her former host mother – with whom Ms. Harning remained close, even

staying with her former host family for a time while she was back in the United States – had expressed that she was "disappointed" or "upset" by Mr. Harning's providing a declaration.  *See* Transcript of the Deposition of Juliane Harning, dated September 8, 2016 ("Harning Tr.") at 59-60.  True and correct copies of the relevant pages of Ms. Harning's deposition are attached as Exhibit B.

5. Defense counsel has also engaged in a pattern of harassing and intimidating questioning during Plaintiffs' depositions.  For instance, on August 30, 2016, defense counsel for sponsors GoAuPair, Agent Au Pair, and Au Pair International, asked Plaintiff Johana Paola Beltran about her love life, going so far as to ask who had sent her "the beautiful flowers for Valentine's Day."  *See* Transcript of the Deposition of Paola Beltran, dated August 30, 2016 ("Beltran Tr.") at 199:17-23 ("Q:  Do you currently have a boyfriend or someone that you date?  A:  No.  Q:  Have you at any point in time since leaving the Noonans?  A:  No.  The — I've been kidnapped just to be in school all the time.").  *See also* Beltran Tr. at 200:19-23 ("Q: … On your Facebook page, who was it who sent you the beautiful flowers for Valentine's Day? A: Somebody from the school. Q: Not Orlando?  A: No.").

6. Defense counsel further interrogated Ms. Beltran about her travel within the United States for the stated purpose of trying to determine if she had overstayed her visa.  *Id.* at 171-174, 177, 200.

7. Defense counsel also questioned Ms. Beltran about whether she had committed a federal crime by bribing someone to sponsor her for a visa.  *Id.* at 178:11-21 ("Q: Okay.  And did you give him any money or anything in exchange for his agreement to

sponsor your student visa? . . . A: No."). True and correct copies of the relevant pages from Ms. Beltran's deposition transcript are attached at Exhibit C.

8. On September 7, 2016, at the deposition of Plaintiff Lusapho Hlatshaneni, defense counsel for sponsor Au Pair in America asked Ms. Hlatshaneni about speeding tickets and traffic violations that occurred while she was on her time off:

> Q. Did you violate any other U.S. traffic or criminal laws other than the two you've testified to?
> A. No.
> Q. Who paid the penalties for those traffic violations?
> A. I did.
> Q. Did you ask for reimbursement from the Prime family?
> A. No.
> Q. Did you ask for reimbursement from Au Pair In America?
> A. No.
> Q. Were these two traffic violations committed during the time that you were having some time off from the family?
> A. Yes.

Transcript of the Deposition of Lusapho Hlatshaneni, dated September 7, 2016 ("Hlatshaneni Tr.") at 119:5-21; *see also id.* at 117-18. Defense counsel also interrogated Ms. Hlatshaneni about a minor car accident that had occurred in her host family's garage. *Id.* at 126-133. Ms. Hlatshaneni testified that she was uncomfortable answering these questions because of the "tone" defense counsel used while questioning her. *Id.* at 131.

9. Defense counsel also questioned Ms. Hlatshaneni persistently about her finances and whether she had filed her taxes – questions that Ms. Hlatshaneni explained she found to be "borderline" "intimidating" and "harassment." *Id.* at 153-54. True and correct copies of the relevant pages from Ms. Hlatshaneni's deposition transcript are attached at Exhibit D.

10. On September 8, 2016, when defense counsels' pattern of harassing conduct continued at Ms. Harning's deposition, the parties contacted Magistrate Judge Tafoya during the middle of the deposition to seek clarification on the permissible scope of the questions that could be posed to Plaintiffs. *See* Harning Tr. at 128-65. Magistrate Judge Tafoya invited briefing on the issue of a protective order but offered her general view that defense counsel may not question Plaintiffs about irrelevant topics, including how they spend their free time, their immigration status, and their personal lives, including their romantic relationships. *Id.* at 162. Magistrate Judge Tafoya further recognized the intrusive nature of inquiring about Plaintiffs' tax filings but ruled that the Plaintiffs must answer whether or not they had filed tax returns, subject to a motion for a protective order or to strike the testimony. *Id.* at 161.

11. On September 14, 2016, defendants deposed Plaintiff Laura Mejia Jimenez. Notwithstanding the limitations imposed by Magistrate Judge Tafoya, defense counsel once again used the deposition as an opportunity to harass and intimidate one of the plaintiffs in this lawsuit. For instance, counsel for AuPairCare delved into irrelevant questions about Ms. Mejia's personal life, asking how she had spent the money she earned as an *au pair*. *See* Transcript of the Deposition of Laura Mejia Jimenez, dated September 14, 2016 ("Mejia Tr.") at 179:15-180:05.

12. In response to Ms. Mejia's statement that she felt that she worked too many hours (in excess of 45 per week), defense counsel asked, "…what else did *you* have going on?" *Id.* at 220.

13. Defense counsel further accused Ms. Mejia repeatedly, on the record, of lying. *Id.* at 192-93, 204-05, 229.

14.     After the deposition, Ms. Mejia collapsed and sobbed on the street. True and correct copies of the relevant pages from Ms. Mejia's deposition transcript are attached at Exhibit E.

15.     Beaudette Deetlefs was deposed on September 21, 2016 in her home country of South Africa. Once again, in contradiction of Magistrate Judge Tafoya's instructions, defense counsel for Cultural Care asked Ms. Deetlefs' irrelevant questions about her personal life. For example, counsel asked Ms. Deetlefs, "What did you do in your free time?" *See* Deetlefs Tr. (Rough) at 123:4. And despite plaintiffs' counsel's objection and reference to Judge Tafoya's limitations on the permissible scope of discovery, defense counsel insisted on an answer. *See id.* at 123-26.

16.     Ms. Deetlefs was also questioned about friends she made in the United States and whether she has a boyfriend. *Id.* at 147 ("Q: Did you meet a boyfriend while you were in the United States?"); *see also id.* at 147-48.

17.     She was further questioned about her travel in the United States, *id.* at 148, her living expenses before she applied to work as an *au pair*, *id.* at 80-81, and the amount of money she brought with her to the United States. *id.* at 81.

18.     Ms. Deetlefs was also questioned about differences between the rules her host family imposed and the limitations on her lifestyle choices while living in her home country of South Africa. *Id.* at 97-98 (exploring whether plaintiff found living in Salt Lake City "irritating" or "restricting")

19.     Counsel for Cultural Care even questioned Ms. Deetlefs about how she planned to spend the money that she earned as an *au pair*:

   Q:   Did you bring money with you to the United States?
   A:   Yes I did.

      Q:      How much did you bring?
      A:      A little more than 200 dollars.
      Q:      Did you plan to spend all of your stipend or save some of it?
      A:      The main idea was to save and send it back home.
      Q:      Send it back home to save or to – for some other purpose?
      A:      Firstly to pay off that money that I borrowed to pay the – that initial fee I had to pay that off and then after 10 to see how much I could save up to bring back with me.

*Id.* at 81:23-82:11.

20. On August 15, 2016, I met with Plaintiff Dayanna Paola Cardenas Caicedo for approximately three hours to prepare her for her deposition, which was scheduled to take place on August 16, 2016.

21. I met Ms. Cardenas at the site of the deposition on the morning of August 16, 2016. She was overwhelmed with fear and decided that she could not go forward with the deposition. I immediately informed counsel for the defendants that Ms. Cardenas was not going to appear for the deposition.

22. Almost immediately after Ms. Cardenas canceled her deposition, counsel for Cultural Care indicated that they would seek to have Ms. Cardenas removed as a named plaintiff; and sanctions for their fees and costs.

23. On August 18, 2016, Cultural Care's attorneys sent an email to Plaintiffs' counsel, a true and correct copy of which is attached as Exhibit F. That email demanded fees for the time spent preparing for Ms. Cardenas's deposition but did not indicate the amount sought.

24. On August 25, 2016, my colleague Matthew Schwartz sent an email to Cultural Care, a true and correct copy of which is attached as Exhibit G, asking for the amount in costs they were seeking.

25. On August 26, 2016 (a Friday), at approximately 4:00 in the afternoon, Cultural Care's attorneys sent an email to Plaintiffs' counsel, a copy of which is attached as Exhibit H. In that email, Cultural Care demanded over $80,000. They further claimed the amount was subject to increase and warned that they intended to file a motion for sanctions by close of business that same day.

26. Mr. Schwartz promptly scheduled an appointment to discuss the fee issue with Cultural Care's counsel on August 29, 2016 (the following Monday). On August 29, Mr. Schwartz interrupted his vacation with his family to speak to Joan Lukey, one of Cultural Care's lawyers, about Cultural Care's prospective motion.

27. On August 30, 2016, Cultural Care's counsel again warned in an email that Cultural Care would file a motion for sanctions in the morning. I responded by email that same day by reiterating Plaintiffs' commitment to confer and noting the absence of any emergency. On August 30, 2016, Cultural Care moved for sanctions, despite Plaintiffs' counsels' willingness to continue conferring.

28. Had Cultural Care continued to confer with Plaintiffs' counsel in good faith, most if not all of its motion would have been unnecessary.

FURTHER DECLARANT SAYETH NOT.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that I executed this declaration on September 26, 2016 in Fort Lauderdale, Florida.

                LAUREN F. LOUIS
*(admitted pro hac vice)*
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL  33301
Tel:  (954) 356-0011
Fax: (954) 356-0022