# **<u>Exhibit B</u>**

*Johana Paola Beltran, et al. vs.*

*Interexchange, Inc., et al.*

*Confidential Video Deposition of Juliane Harning*

*September 08, 2016*



Stevens-Koenig Reporting

700 17th Street, Suite 1750
Denver, CO 80202
303-988-8470 (Office)  303-988-8478 (Fax)
SKReporting.com

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 59

1    either cooking the dinner or helping watch the kid while

2    she cooked dinner because the husband was gone.

3           Q.   So typically she would have you assist her

4    for another 30 or 45 minutes at the end of the day after

5    she returned home, correct?

6           A.   Yes.

7           Q.   When you talked with Whitney Russell

8    within the last two weeks about your declaration, did

9    she -- did the two of you have a copy of it on a table or

10   hand it between each other?

11          A.   I think she pulled it up online maybe.  We

12   didn't hand anything --

13          Q.   Okay.  And did you sit together or stand

14   together and look at a computer screen, and did she ask

15   you questions about the declaration?

16               MR. HOOD:  Objection.

17          A.   We didn't sit at a computer, no.

18          Q.   (By Mr. Quinn)  Okay.  Did she tell you she

19   was disappointed with you for filling out this

20   declaration?

21          A.   I don't know if those were her exact

22   words.

23          Q.   Okay.  Did you get the sense that she was

24   pretty disappointed in you for filling out this

25   declaration?

Johana Paola Beltran, et al. vs.                                    Confidential Video Deposition of Juliane Harning
Interexchange, Inc., et al.                                                                      September 08, 2016

Page 60

 1            A.    Upset.

 2            Q.    Yeah.  Did you -- did you get the sense

 3     that she felt that she was upset with you because she

 4     felt the declaration was inaccurate?

 5            A.    No, that's not what I sensed.

 6            Q.    Okay.  Did you tell -- did you sense --

 7     did you get a sense that she was disappointed with you

 8     because she thought that the portions of this declaration

 9     were false?

10            A.    I don't know what she thought.

11            Q.    Did she -- how soon after that, you looked

12     at this declaration on the computer screen, did you move

13     out of their house?

14            A.    We didn't look at it at a computer screen.

15            Q.    You looked at it -- you pulled it up on

16     something; is that right?

17                  MR. HOOD:  Objection.

18            A.    Yeah.

19            Q.    (By Mr. Quinn)  On what?

20            A.    She had it on her phone, but we didn't

21     look at it together.

22            Q.    Did you -- how soon after that, this

23     declaration was on her phone and you two discussed it,

24     did you move out of the house?

25            A.    Two days later I think she told me to

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 128

 1   AuPairCare Defendant.  I'm the counsel taking the

 2   deposition.  Are the other counsel on the phone as well?

 3                  MS. LOUIS:  Yes.  Hi.  This is Lauren

 4   Louis from Boies Schiller & Flexner, counsel for

 5   plaintiff.

 6                  MR. HOOD:  Alexander Hood and Nina DiSalvo

 7   from Towards Justice are also here for plaintiffs.

 8                  MR. QUINN:  And then there are a lot of

 9   other lawyers on the line.  Did -- should we take entries

10   of appearance, or what would you like us to do?

11                  THE CLERK:  Let me have you guys hold off

12   and wait until the judge gets on the bench.  She'll be

13   out in just a moment.

14            (Discussion off the record.)

15                  THE CLERK:  Court is in session.

16                  THE COURT:  Good afternoon, everyone.

17   This is Judge Tafoya, and we are here today in Case

18   Number 14-cv-3074.  This is Beltran and four other

19   plaintiffs versus a number of groups.  Just to ease, I'm

20   going to call the groups.  So first of all, let me have

21   appearances for plaintiffs.

22                  MR. HOOD:  Your Honor, this is --

23                  MS. LOUIS:  Your Honor, this is Lauren

24   Louis from Boies Schiller & Flexner.  I know that

25   co-counsel is also going to make their appearances.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 129

 1                    MR. HOOD:  Your Honor, Alexander Hood and
 2    Nina DiSalvo for the plaintiffs.
 3                    THE COURT:  Anyone else for plaintiffs?
 4                    MS. LOUIS:  No, Your Honor.
 5                    THE COURT:  I will call your name.  If you
 6    represent more than one person or one entity, just let me
 7    know.  But let's start with InterExchange, Inc.
 8                    MS. COLAIZZI:  Good afternoon, Your Honor.
 9    Brooke Colaizzi of Sherman and Howard on behalf of
10    InterExchange.
11                    THE COURT:  And USAuPair, Inc.?  No one?
12    All right.  How about GreatAuPair, LLC?  No on that too?
13    Expert Group International, Inc.?
14                    MR. ENICA:  Good afternoon, Your Honor.
15    Bogdan Enica on behalf of Expert AuPair.
16                    THE COURT:  Okay.  And EurAupair
17    InterCultural Childcare?  Homestay International?
18                    MR. HUBBARD:  Good afternoon, Your Honor.
19    This is Adam Hubbard on behalf of Cultural Homestay
20    International from Holland and Hart.
21                    THE COURT:  And Cultural Care, Inc.?
22                    MS. LUKEY:  Your Honor, in Boston it's
23    Joan Lukey, Justin Wolosz, and Lyndsey Kruzer.  And I
24    think we have Denver counsel present as well.
25                    MS. HAZEL:  Your Honor, it's Diane Hazel

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 130

1    from Lewis Roca Rothgerber Christie also on behalf

2    Cultural Care.

3                      THE COURT:  Au Pair International?

4                      MS. REILLY:  Good afternoon, Your Honor.

5    This is Katie Reilly with Wheeler Trigg O'Donnell on

6    behalf of Au Pair International, GoAuPair, and Agent Au

7    Pair.

8                      THE COURT:  All right.  If I call those

9    again, just remind me that it's Ms. Reilly.

10                     MS. REILLY:  Will do.

11                     THE COURT:  APF Global Exchange?

12                     MR. LEE:  Good afternoon, Your Honor.

13   Larry Lee of Fisher & Phillips appearing on behalf of APF

14   as well as AIFS, and I will remind you if you call them

15   again.

16                     THE COURT:  That's American Institute for

17   Foreign Studies?

18                     MR. LEE:  Yes.

19                     THE COURT:  I've got you for that one

20   then.  That was the next one I was going to call anyway.

21   How about American Cultural Exchange, LLC?  Is that you,

22   Ms. Reilly?

23                     MS. REILLY:  Yes, doing business as

24   GoAuPair.

25                     THE COURT:  GoAuPair, yes.  How about

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 131

 1   Agent Au Pair?

 2              MS. REILLY:  That's me as well.  This is

 3   Katie Reilly again.

 4              THE COURT:  And A.P.EX., American

 5   Professional Exchange?

 6              MS. CRAIGMILE:  Good afternoon, Your

 7   Honor.  It's Kate Craigmile from Nixon Shefrin, et al.

 8   And I represent A.P.EX. and then the final defendant,

 9   20/20.

10              THE COURT:  All right.  Is there anybody

11   on the phone who I didn't ask to appear?

12              MS. FITZGERALD:  Yes, Your Honor.  It's

13   Martha Fitzgerald from Brownstein Hyatt on behalf of

14   EurAupair.

15              MR. QUINN:  Your Honor, Tom Quinn and

16   Peggy Kozal on behalf of AuPairCare, Inc.

17              THE COURT:  Okay.  Anyone else?  Okay.  I

18   can hear you all pretty well, so I think our line is

19   fairly clear.  I hope you can hear me.  We are here for

20   an informal discovery conference, and what was explained

21   to me by my law clerk is that there -- I believe one of

22   the plaintiffs, who is here from Germany, you're taking a

23   deposition.  And there was some issue over whether or not

24   she needed to be able to testify about her tax returns.

25   And then I think there's some other issue, and I'm not

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 132

 1   sure what that is.  So let's start with the first issue,

 2   which is the tax returns.  Who wants to brief me on that?

 3                    MR. QUINN:  Your Honor --

 4                    MS. LOUIS:  I will.  This is Lauren Louis.

 5   Since it's really our request for the protective order,

 6   I'll explain the context.  But I would say, Your Honor,

 7   that we would prefer to brief this and reserve a ruling

 8   until we've had an opportunity to present the Court with

 9   both some case law analysis and also examples from the

10   other plaintiffs' depositions that have occurred so far

11   so that the Court can make a decision with the benefit of

12   briefing.  And we can leave this deposition open to

13   answer what we are told will be the single questions from

14   defense counsel, which is to inquire about on this topic,

15   which is whether or not Plaintiff Harning filed tax

16   returns for the years that she was here in the United

17   States.

18                    So it is our request, Your Honor, that

19   she -- that we have a protective order in place through

20   the completion of today's session of the deposition, that

21   defense counsel not be permitted to ask her -- we will

22   brief it.  And if the Court disagrees with us, then we

23   can leave the deposition open.  And she can answer that

24   question by special interrogatory or written deposition.

25                    THE COURT:  Well, let me ask you as a

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 133

1   practical matter, okay?  It seems as a practical matter

2   that the opposite could happen, that she should go ahead

3   and answer the question.  And then whether or not that

4   could be used in the case could be briefed later if this

5   comes up.  Because she's here now, and apparently she

6   won't be later.

7             MS. LOUIS:  Your Honor, that's true.  But

8   there isn't a follow-up question to be asked.  It's a

9   yes-or-no question, which will come across every bit as

10  clearly in writings as it will at the deposition

11  transcript.

12            And, Your Honor, the reason why we want to

13  brief this and we want to move for a full protective

14  order is that this question and many other avenues of

15  questionings that the defense counsel have explored in

16  this deposition, the deposition yesterday, and one last

17  week is because it has no bearing on any issue in this

18  case.  These questions are doing nothing other than

19  intimidating and harassing these plaintiffs.  So the

20  question of the taxes is but one example.

21            And, Your Honor, before Ms. Hlatshaneni

22  was deposed yesterday, we had in writing indicated to

23  defense counsel and provided case law demonstrating that,

24  particularly in an FLSA case where immigration status and

25  other aspects of easy intimidation or low-hanging fruit

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 134

1   for defense counsel to have asked at deposition, these

2   lines of inquiry are recognized as harassing and

3   intimidating not related at all to FLSA or the fiduciary

4   duty or the antitrust claims in this case, Your Honor.

5   And courts have awarded protective orders to prevent this

6   line of questioning.

7              And, Your Honor, I'll draw your attention

8   to a case, UPO versus Job Site Services, Inc.  And I'll

9   say the citation slowly.  269 FRD 209.  That was the

10  Eastern District of New York from 2010 in an FLSA case,

11  very similar circumstances.  And in defense counsel's --

12  their claim or defendant, their avenue of this

13  interrogation as related to what moneys were earned,

14  courts have recognized, particularly in FLSA cases but in

15  other contexts, that in order to get a party's tax

16  returns you have to demonstrate a need.  And it can't

17  just be for the financial information but rather to

18  demonstrate that it's not available anywhere else because

19  courts recognize that just the demand itself is

20  intimidating.

21             So in this particular case, this FLSA case

22  out of the Eastern District of New York, the judge ruled

23  there that I find plaintiffs' income tax returns are not

24  relevant to their FLSA claims which are the crux of their

25  complaint, nor have defendants demonstrated a compelling

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 135

1    need for them.  Accordingly, plaintiff's request for a

2    protective order is granted with respect to discovery

3    requests that seek copies of their income tax returns or

4    information about the filings of income tax returns.

5                    Your Honor, you were correct when you

6    started this hearing by noting that when the hearing was

7    requested by defense counsel, it was with the limited

8    request of whether or not Ms. Harning should have to

9    answer this question.  And part of the reason why we want

10   to brief it and bring to the Court for a full protective

11   order is that, you know, it's not limited to the issue of

12   whether or not these plaintiffs should have to answer

13   questions about whether they filed tax returns, which the

14   plaintiffs have been asked.  Yesterday this was likewise

15   an issue for Ms. Hlatshaneni despite our written

16   correspondence noting the objection and providing the

17   case law of the impropriety of the questions.

18                    So it is -- I understand the Court's

19   position that she should have to answer the question or

20   not, but the -- I'm sorry -- and then a decision can be

21   made about what use will be made of it.  But the point,

22   Your Honor, is that defense counsel has explored

23   questions -- for example, yesterday Ms.Hlatshaneni was

24   asked about car accidents and then from there what other

25   tickets she received, what other violations of law she

Johana Paola Beltran, et al. vs.                                    Confidential Video Deposition of Juliane Harning
Interexchange, Inc., et al.                                                                              September 08, 2016

Page 136

 1    committed while she was here.

 2                    Ms. Beltran was asked about her

 3    immigration status, and defense counsel openly expressed

 4    that her purpose in asking those questions was to explore

 5    whether or not she overstayed her visa.  Ms. Beltran was

 6    also asked about who sent her flowers on Valentine's Day.

 7    There is no proper purpose for these lines of questions.

 8    And defense counsel is not -- has not heeded our attempts

 9    to keep the lines of questions from becoming intimidating

10    and to treat these plaintiffs with some manner of

11    respect.

12                    Your Honor, you noted at the scheduling

13    conference back in April that just the sitting of a

14    deposition can be intimidating.  I mean, I'm looking back

15    to the transcript at page 85.  And the Court there said,

16    You know, I agree with plaintiffs that I don't foresee

17    allowing you to take depositions of all these -- and

18    scare the crap out of them and make them stop

19    participating.  That's not good.  I don't like that."

20    And that's what we've got.

21                    THE COURT:  Okay.  Who would like to

22    address kind of the general gist of this?  I will let all

23    of you know that I very recently dealt with this issue in

24    an FLSA case.  I can't tell you which one of mine it was,

25    and it's not that I'm prohibited.  I just can't remember

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 137

1  which one it was.  But I'm familiar with the law that is

2  being cited by Ms. Louis, and I think that there is quite

3  a bit of case law.

4              I haven't really addressed it with tax

5  returns, but there was quite a concern about immigration

6  status in the cases that I was looking at because they

7  were primarily undocumented workers, frankly, in Mexican

8  restaurants.  So there's that intimidation factor if you

9  ask them that, are they going to get deported?  So they

10  didn't want to be plaintiffs because they would get asked

11  the question.  And I think the case law is very clear in

12  an FLSA case that those are improper questions because

13  they're designed to keep people from exercising their

14  rights and enforcing the law.  You know, the law is the

15  law.  You're supposed to pay overtime in certain

16  instances and that sort of thing.

17              So I'd like to hear from defendants.  I

18  would like to hear -- I hope I hear that the question

19  about who sent you flowers on Valentine's Day was a joke

20  because something like that is not relevant.  So who

21  wants to speak to that?

22              MR. QUINN:  Your Honor, this is Tom Quinn.

23  I'm the lawyer taking the deposition.  I think there

24  should be a little more background that is necessary, and

25  then we'll get into the issues.  I know Ms. Colaizzi is

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 138

1    going to follow me when I'm done.

2                    So on the issue, let's kind of get this

3    thing straightened back out.  So last night I -- after

4    last night's deposition, which I was a participant in, I

5    called Mr. Hood and Ms. Louis and said, you know, There's

6    been a lot of objections that I don't think are

7    appropriate.  So what I'd like to do is make sure we're

8    all on the same page and that we have conduct and decorum

9    that is appropriate throughout a deposition.  So we spent

10   time last night ultimately getting to where we are today,

11   saying if there is -- let's get the objections

12   straightened up.  And if there's a problem, I suggest

13   that we take -- take these matters to your attention.

14                   Then I met with Mr. Hood this morning.

15   And he said, I have three areas of inquiry which I think

16   are objectionable, and the first one would be immigration

17   status.  And I said, I have no problems.  I'm not going

18   there.  Then the next one would be love life, for lack of

19   a better term.  And I said, I'm not going there.  And

20   then the final thing he said is tax returns, and I said,

21   I am going to go there.  And he says, Well, we object.

22   We might consider filing a motion for protective order.

23   And I said, Well, if you think you're going to do that,

24   let me know.

25                   So I was advised we would get to this

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 139

```
 1   point sometime after the first break this morning.   I
 2   told Mr. Hood that regardless of how we were going to
 3   resolve the case, I would need to lay some foundational
 4   questions so that I'd have an ability to provide you with
 5   some background and information in support of our pursuit
 6   of relevant information regarding tax filings.
 7                    So that's really where we're at.   So then
 8   we laid the foundation.   We agreed it would be best to
 9   call you and thank you for taking our call this
10   afternoon.   After that just when -- some moment after
11   your clerk called, Mr. Hood explained to us there was
12   going to be multiple issues, including the visa and all
13   the rest of that.   So there's really not much effort by
14   counsel to put this in context.
15                    And to the extent plaintiffs' counsel
16   thinks that some of the questions have been inappropriate
17   and couched in that way, there's two things.   I think the
18   lawyers that asked those questions in defending their
19   clients should have an opportunity to present their
20   position on those issues in briefing to the Court because
21   they were not advised that they could have that
22   opportunity to do so here today.   It would just sort of
23   fall out of the sky on them as you were probably walking
24   down the hall to the bench.
25                    However, we did tee up the issue of the
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 140

1  tax returns because we do have witnesses that have made

2  themselves available in various cities, and this one

3  happens to be here in Denver.  So that's how we got to

4  this point.  There is one other issue that's -- that may

5  be raised by plaintiff's counsel, and we'll deal with

6  that if they choose to raise it in a moment.  But let's

7  get to the issue of tax returns.

8           So if this were just an FLSA case and just

9  having FLSA claims, there may be -- you know, some of the

10  case law that's been cited by plaintiffs' counsel may

11  have some -- may have stronger bearing in the case.

12  However, there are multiple claims for relief, including

13  antitrust, multiple negligence claims, fraud, breach of

14  fiduciary duty, which I believe the plaintiffs are still

15  trying to seek damages related to lost wages out of.

16           And that is the principal type of claim

17  here, unpaid -- undercompensation as it relates to the

18  hourly -- the hourly wage for 40 hours and under, unpaid

19  overtime for the time 41 hours to 45 hours, and then, in

20  certain instances, wages that would be related to excess

21  of unpaid compensation for overtime in excess of 45 hours

22  a week.

23           We also have the issue of commonality and

24  typicality for each of these plaintiffs for which we're

25  seeking this information.  They are purported to be class

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 141

1   representatives.  They're being offered as class

2   representatives.  So we have the ability and the

3   opportunity and the right to pursue our investigation on

4   whether or not they actually are typical plaintiffs and

5   adequate class reps.  So that's another reason why this

6   information is relevant and discoverable.

7                    Now, taking it to today, as predicate

8   questions in preparation for this hearing, I asked

9   multiple questions about -- from this witness about how

10  much money she was paid in total by the host family.  She

11  can't remember.  How much overtime she was paid by the

12  host family.  She can't remember.  She can't tell me

13  anything about the amount of income that she earned in

14  this case from this particular host family.

15                   In theory I should be able to test that by

16  seeking her tax return.  At the time the United States

17  government, Department of Treasury required this

18  particular plaintiff as part of the Department of State

19  au pair program to file a tax return.  When she signed an

20  agreement to be an au pair, she -- in which she said --

21  testified here today that she understood the terms of the

22  agreement and that she signed off on it.  She -- she

23  recognized that she must file her tax return.

24                   So then the final thing that I did in

25  preparation is I have provided proper IRS form 4506-T

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 142

1    Request for Transcript of Tax Return with one -- with one

2    recipient to be my office and one recipient to be

3    plaintiffs' counsel's office.  And I have made a proffer

4    during the course of this deposition and asked that the

5    plaintiff sign this release of tax information so that we

6    can secure and see how much money she earned, and then we

7    can figure out what the delta is between what she

8    reported as income and what she claims as lost income.

9              That's just verifying information that's

10   relevant to multiple claims for relief in this case.  We

11   have a protective order in place.  I wish -- you know,

12   perhaps it's intimidating.  Perhaps it's not.  We haven't

13   had a chance to find out.  Having said that, this is a

14   very public lawsuit with multiple claims for relief, and

15   we're entitled to this information.

16             So there you go, Your Honor.  Again, this

17   is Tom Quinn.  I appreciate you taking this, and I think

18   Ms. Colaizzi has something to add.

19             THE COURT:  All right.  Ms. Colaizzi,

20   before you start, Mr. Quinn, let me ask you, you

21   mentioned that you need this information to talk about

22   commonality and typicality.  But you didn't tell me how

23   tax return information relates to that.  I understand

24   your argument on the damages issue, but I don't

25   understand how tax returns would help on that.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 143

1          MR. QUINN:  Well, if -- so what we've

2   learned here today is that Ms. -- Ms. Harning worked at

3   times more than 45 hours a week, sometimes 45 hours a

4   week, sometimes less than 45 hours a week.  I want to

5   know more about her compensation.  She can't recall.

6   Frankly -- and I don't have -- I don't have realtime

7   testimony in front of me, so I'm paraphrasing.  If I'm --

8   I'm trying to do this accurately.  But I would have a

9   chance to confirm whether or not that her wages, in fact,

10  are accurately reported and how she would be compared to

11  another person who had at times worked more than 45 hours

12  a week, less than 45 hours a week, how she compares to

13  these people in terms of the class status.  So that's it.

14          I wish I could tell you I had a better

15  legal argument sitting here right now, Your Honor.  But

16  I'll know it when I see it.  And it is likely, in my

17  opinion, to lead to the discovery of admissible

18  information.  So that's why I believe -- we're at a stage

19  we're looking at everything we can to determine what are

20  appropriate challenges to her status as a putative class

21  representative.

22          THE COURT:  Well, you know, we have some

23  limitations these days on just anything that could lead

24  to admissible evidence.  I haven't read the new rule in a

25  little while, but Rule 26 doesn't -- it isn't quite as

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 144

1    broad as it used to be because of proportionality.  And I

2    think proportionality is fair in every case, but it

3    certainly is -- needs to be closely watched in a case

4    where there's this many parties: defendants and

5    plaintiffs.  And in class-action cases and in general and

6    in cases that you do have some -- some kind of

7    information that is -- could be intimidating for many

8    people, the question -- and I don't mean -- I'm not

9    putting out names here.  But for many people the question

10   of tax returns is a very sensitive one because -- and the

11   wrong answer could get you prosecuted, right?

12            So that's kind of why I think there's a

13   lot of protection.  Plus, in this country we believe that

14   your finances are, in general, private.  That said, of

15   course, tax returns are given up all the time in certain

16   kinds of cases.  But I think you have to make more of a

17   showing than just it could lead to admissible evidence

18   and I'll know it when I see it.  That's not -- that is no

19   longer really acceptable, to the extent it ever was.

20            So let's go then to Ms. Colaizzi.  What do

21   you think?  What would you like to add?

22            MS. COLAIZZI:  Your Honor, I don't have

23   anything to add on the tax return issue.  So I'll defer

24   to any other counsel who might want to weigh in on that.

25   I can speak to some of the other issues.

Page 145

1          THE COURT:  All right.

2          MS. COLAIZZI:  Again, this is Brooke

3   Colaizzi on behalf of InterExchange.  Depending on what

4   the Court decides to do here, Ms. Louis seemed to suggest

5   that certain questions that they -- that plaintiffs

6   object to originated with the deposition of Ms. Beltran,

7   which I took last week.  I don't think a discussion of

8   those issues is fair without explaining what was asked in

9   the context in which it was asked.  If the Court is

10  inclined to pursue that now, I'm happy to explain that.

11  If the Court prefers to reserve that for a briefing

12  issue, I'm happy to defer.  I don't believe those issues

13  are relevant to the deposition today.  So I'll leave that

14  up to the Court and other counsel.

15          THE COURT:  Well, let me explain that

16  we're not really here on totally an informal conference.

17  We're here on a question posed during a deposition.  So

18  to me there's a big difference there because I routinely

19  issue orders when it is a question that arises that needs

20  an answer from the Court on a deposition.  On an informal

21  conference I rarely issue orders.  You try to get people

22  to compromise, try to tell you how I feel about

23  something.

24          I think that the issues of what was asked

25  in the past might be more appropriately raised in

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 146

1  briefing if you want the Court to do something about it,

2  in other words, strike the testimony.  That could be

3  briefed, and we wouldn't even probably need to have a

4  hearing.  But I think we do need to know today with a

5  ruling whether or not this plaintiff should answer the

6  questions, Did you file a tax return?  So I think that's

7  really what we have to decide today just because it's

8  current.  It's something I can rule on.  You know, I'm

9  not going to get you -- I know I'm not going to get any

10  attorney in this room -- well, you're not in this room,

11  but you're in this room by audio.  I'm not going to get

12  anyone to say I asked a question that was improper.  No

13  one's going to admit that.  They all have reasons for why

14  they asked a question.  We'll leave that for a motion to

15  strike if you think it's important enough to brief that.

16              But I do think we ought to get some

17  groundwork hammered down, and I think tax returns are one

18  of them because there is a little heightened expectation

19  of privacy in tax returns.  Even law enforcement officers

20  don't get tax returns just by asking for them.  They have

21  to actually get court permission to get a tax return.  So

22  I understand that it's a sensitive subject.  I understand

23  it can be intimidating and harassing, but also understand

24  there's got to be some way to prove the income in this

25  case because that is the case really.  How much did you

Johana Paola Beltran, et al. vs.                    Confidential Video Deposition of Juliane Harning
Interexchange, Inc., et al.                                                September 08, 2016

Page 147

1  make, and how many hours did you work?

2              MS. LOUIS:  Your Honor, may I respond to

3  Mr. Quinn's representation about the relevancy of the tax

4  returns for that purpose?

5              THE COURT:  Yes, but let me ask first if

6  on the tax return question any of the other defendants

7  have anything to add.

8              MR. LEE:  Your Honor, this is Larry Lee of

9  Fisher & Phillips, and I took the deposition of Lusapho

10  Hlatshaneni yesterday.  All I asked was, Did you file a

11  tax return in the year 2013 and went down the years.

12  That was objected to as harassing and intimidating.  If I

13  may just briefly tell the Court -- and I'll cut to the

14  chase.  I think everything has been drawn out.  I agree

15  with the Court's original statement on what you had said

16  and how this applies specifically to tax records.

17              From my point of view as to the compelling

18  need and relevance, plaintiffs, all the plaintiffs, not

19  just the one that I deposed, plaintiffs have suffered

20  damages from incorrect payment.  Well, employees that are

21  required to pay taxes and the return of that evidence of

22  amounts actually paid are relevant because this

23  plaintiff -- and I don't know about the other plaintiffs;

24  I don't remember the exact testimony -- have not kept

25  similar records or have not kept such records.  So it

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 148

 1    certainly is relevant.  There's a compelling need.

 2                    Finally, let me just let the Court know --

 3    or remind the Court we do have a protective order in this

 4    case, and it does apply to confidentiality and

 5    confidential records.  In that situation, then there's

 6    nothing wrong with keeping that -- or certainly having

 7    the Court consider that under the current protective

 8    order that is already approved.

 9                    THE COURT:  All right.  Thank you.  Anyone

10    else?

11                    MR. LEE:  Thank you, Your Honor.

12                    THE COURT:  Anyone else before Ms. Louis

13    responds?  Okay.  Hearing nothing, Ms. Louis, the floor

14    is yours.

15                    MS. LOUIS:  I appreciate that, Your Honor.

16    I'll try to be as quick as I can.  The first point I

17    would make is that during the deposition, Mr. Quinn

18    defended the question regarding the filing of taxes on

19    the grounds that it was part of her contractual

20    obligations.  And there is no breach of contract claim,

21    and there is no breach -- or counterclaim for breach of

22    contract.  It is not a defense to any of the claims that

23    have been asserted, whether or not she breached the

24    contract with AuPairCare.  So as to the in-the-moment-

25    offered basis for relevancy, there is none.

Johana Paola Beltran, et al. vs.                    Confidential Video Deposition of Juliane Harning
Interexchange, Inc., et al.                                                    September 08, 2016

Page 149

1             With respect to the ability to prove her

2    typicality or adequacy to represent the class, whether or

3    not she has filed her tax returns for those respective

4    years, will not give any indication as to the number of

5    hours that she worked or the amount of wages that she

6    earned over the course -- I'm sorry, over the amount of

7    wages that she earned week by week.

8             And to clarify that point, Your Honor, she

9    has provided substantial testimony regarding her regular

10   workweek and how many hours she generally worked.  And we

11   have also today -- or actually yesterday in response to a

12   subpoena duces tecum produced a volume of documents that

13   demonstrate the exact hours on the exact weeks that she

14   worked from her host mom.  So there is -- as to the two

15   prongs that are required in order for them to prove -- in

16   order to get tax returns themselves, compelling need and

17   the absence of anywhere else to get them, they have other

18   avenues for getting this information.

19             I'm sorry.  I kind of jumped there, Your

20   Honor.  My point was that the -- these tax returns or the

21   answer about whether or not she filed will not

22   demonstrate whether she is either typical or adequate in

23   any of the ways that Mr. Quinn said, nor will they

24   demonstrate the number of hours that she works or what

25   she was paid therefore.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 150

 1          And finally, Your Honor, one of the

 2   reasons why I wanted to advance briefing is because while

 3   at least two of the defense counsel have proffered that

 4   the tax returns are necessary in order to prove what

 5   information these au pairs made because they are

 6   asserting claims that they weren't adequately paid, the

 7   very basis, Your Honor, of our FLSA motion is that they

 8   were all paid 195.75.  And that is -- or up to $200 per

 9   week, and that is the testimony that's been given.

10   There's no expectation that they're going to see these

11   tax returns -- excuse me -- and find out, for example,

12   that they weren't paid up to the 195 or that they were

13   paid well in advance of it.

14          So one of the reasons -- I'm sorry I keep

15   circling back, Your Honor.  It's so hard to do these

16   things telephonically when I'm not looking at you -- is

17   that I, in my research of this, have not found a single

18   FLSA case in which a court agreed with the defendant's

19   needs for tax returns.  And it uniformly said, This is

20   not relevant in an FLSA case.  That's not how you get to

21   prove or disprove the income.

22          And so I would like to be able to have a

23   better chance to research that and then come to the Court

24   and really say, you know, There isn't that case or, you

25   know, courts have actually said, listen, in an FLSA case,

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 151

1   no.  I only have a handful of examples.  I have five

2   cases where courts have said no to an FLSA defendant,

3   that's not where you get to prove income.

4                   THE COURT:  Well, let me ask you a

5   question on that.  What is -- I'm not sure of this.  But

6   are the host families keeping records of what they've

7   paid?

8                   MS. LOUIS:  Your Honor, we have not been

9   able --

10                  THE COURT:  In an FLSA case -- in an FLSA

11  case there's a company usually that keeps payment

12  records, you know.  So there's employment records and

13  there's payroll, and there's all that kind of thing.  So

14  they really don't need tax returns.  But who keeps it in

15  this case?

16                  MS. LOUIS:  Well, Your Honor, to answer

17  fair, the first is that J-1 visa sponsors of the

18  defendants are required to make sure that all of the

19  limitations of the program are met, including that the

20  au pairs are not working in excess of 45 hours.  So that

21  was one of our document requests right out of the bat to

22  the sponsored defendants:  How do you satisfy yourself?

23  What records do you keep that the au pairs don't work in

24  excess of 45 hours?

25                  We did not receive -- I'm kind of flying

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 152

1    from memory there, but I don't remember seeing any

2    indication from any sponsored defendants that they do

3    keep such records short of -- and correct me if I'm

4    wrong -- but with respect to the host families, we have

5    not taken discovery of the host families.  And this

6    somewhat leads into the more wholesome protective order

7    issue, which is the very demand of these questions.

8                    To respond to the Court's suggestion,

9    should we have just her answer and decide what to do with

10   it, is intimidating to these witnesses -- I'm sorry, Your

11   Honor, I'm kind of bleeding into these issues here.  The

12   bottom line is we don't have discovery from host families

13   because we had been denied across the board for

14   information about host families.

15                   And to the extent that we have documents

16   from defendants, most have redacted out any host family

17   information or contact info on the sensitivity that we

18   will contact them and seek discovery.  So I don't -- I'm

19   not yet in a position to answer to the Court whether or

20   not the host families keep those records.

21                   MR. QUINN:  Your Honor, this is Tom Quinn.

22   May I just follow up -- I know you want to get going, but

23   I just have a few points to follow up on.  May I, please?

24                   THE COURT:  Yes, go ahead.

25                   MR. QUINN:  So just working backwards on

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 153

1    what Ms. Louis just said, in terms of the contract, when

2    I raised the issue of the contract, I also want to make

3    sure that the Court understands that it also -- the

4    contract goes to the surprise and the, quote, surprise

5    and intimidation factor that -- and these au pairs were

6    told they had to pay taxes.  And, in fact, Exhibit 44 in

7    this case is a Form 1040NR-EZ with telling them how to do

8    it.  And then there are a series of written instructions

9    on how to fill out tax returns, and every au pair gets

10   this.  So they know they're supposed to fill it out.

11              Then in terms of -- we're really here

12   about this witness and these questions and this request

13   that she sign a tax return today, and the whole -- this

14   whole concept of intimidation was I offered to have

15   the -- and we agreed that this particular witness, this

16   party plaintiff, could step out of the room at any time

17   tax returns were offered so that she would not be

18   intimidated.

19              I went over -- out my way.  Her counsel

20   has invited her to listen to this.  She has been sitting

21   here within 3 feet of the speaker the entire time hearing

22   about intimidation.  I can't imagine that the

23   intimidation factor still exists with this witness, and

24   that's why we are here today.

25              Finally, on the hours produced, you know,

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 154

1    the -- I don't know what the host family tracks.  The

2    ones who've got the host family information is the --

3    excuse me, the level of compensation are the people that

4    earned it and were to report it.  So I -- and finally,

5    the last point is this is not just an FLSA case.  There

6    are negligence claims here that surround damages relating

7    to unpaid wages, which is why seeing what -- how much

8    they believe they earned versus what they think they're

9    entitled to is relevant and important.  Finally, there is

10   a protective order in place to help protect any concerns

11   that there may be about privacy.  So thank you, Your

12   Honor.

13                  THE COURT:  Let me make sure I understand

14   the question because as I heard you, the only question

15   that's really been asked and for which an answer has not

16   been given is, Did you file a tax return for year

17   whatever it is; is that right?

18                  MR. QUINN:  No, Your Honor.  I did not ask

19   any questions by agreement.  We held off when we would

20   get to this.  So my questions with --

21                  MR. HOOD:  Your Honor, I would like to

22   correct the record.  That question was absolutely asked.

23   There was a provision in the contract that required

24   her -- that Mr. Quinn -- this is Alex Hood for the

25   plaintiffs -- that Mr. Quinn quoted for her that said

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 155

1    that she was required to file a tax return.  And he asked

2    her whether she complied with that provision, which

3    necessarily is asking her whether or not she filed a tax

4    return.

5              THE COURT:  Okay.  Are you -- I guess let

6    me just be more blunt about it.  Are you planning on

7    asking questions about getting her tax returns or

8    information so that you -- I think you want her to sign

9    something to release her tax returns, right?

10             MR. QUINN:  Yes and yes.

11             THE COURT:  Okay.  I think you can ask the

12   question:  Did she file tax returns?  I don't know that

13   you can use it for any purpose other than the possibility

14   that you need to prove her wages.

15             MR. QUINN:  Right.

16             THE COURT:  And the reason I say that is

17   because it's -- from what I'm hearing from both sides,

18   this isn't a typical FLSA case.  Number one, there's a

19   lot of other claims.  I recognize that too.  But the

20   first point is there doesn't seem to be employer records,

21   which you almost always have in an FLSA claim.  You have

22   testimony as well about hours that are off the clock or

23   something like that.  But you have a wage record, and I

24   don't see it here.

25             We're saying that, Oh, no, only the

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 156

1    employee would have a wage record and that should be a
2    tax return.  And we don't know what the host family did.
3    They're supposed to pay, but did they pay?  We don't
4    know.  I think that the only person who might have any
5    evidence at this point seems to be the deponent, the
6    plaintiff who most reasonably would know what they made,
7    how much money they made.  But apparently they don't
8    remember and can't say, and so I don't see any other way
9    to prove the wages earned other than a tax return.
10              Now, that might change over time.  And it
11   could be that that's not the best evidence when you get
12   to trial, that that's not what you use.  But I think the
13   tax returns for when you have a situation like that where
14   the plaintiff says, I don't know how much money I made, I
15   don't have any records of it, and there are no other
16   records anywhere, you know, probably ought to come -- or
17   could come in the form of a tax return.  That's one place
18   where you could get it.
19              So I think they should answer the question
20   of, Did you file a tax return? for that purpose, but not
21   for the purpose of compliance with their contract because
22   there's not a breach of contract claim?  But for that
23   purpose, I think that that would be admissible.  I guess
24   the heart of the question is, though, have 30(b)(6)
25   depositions been taken of the sponsors, and should the

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 157

1   sponsors have any record of that?  Is that a place where

2   that information resides because of the responsibility to

3   make sure they get paid at least the minimum?

4               MR. HOOD:  Your Honor, if I may, this is

5   Alex Hood for the plaintiffs.  I think that's

6   particularly why it doesn't make sense to have her answer

7   the question now.  There's other discovery avenues that

8   could be pursued, and there's no reason if the Court

9   decides that she should answer this question that she

10  couldn't answer that yes-or-no question by special

11  interrogatory.

12             So why not pursue just more discovery into

13  that issue of whether -- of what income she made?  If it

14  ultimately is a dead end, then we can resort to the

15  taxes.  But before then I feel like all other -- all

16  other avenues, other than simply asking her in her

17  deposition, How much did you make in total in 2013,

18  should be explored.

19             Also, Your Honor, one other point -- no.

20  I'll leave it at that, Your Honor.

21             MR. QUINN:  Tom Quinn, Your Honor, again.

22  I apologize.  Ms. Harning already testified she did not

23  receive any checks from my client, AuPairCare, and that

24  her compensation came directly from the host family.  So

25  I think that answers it, your question.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 158

1    MR. HOOD:  But she testified that she

2  opened a bank account.  And she has not had the chance to

3  examine those records, Your Honor.  There are other

4  avenues to explore this total income question other than

5  a yes or no, Did you file taxes?  Which, honestly, I

6  don't see how it gets to that question at all.

7    The one other thing, Your Honor,

8  Mr. Quinn, as he told you earlier, has asked Ms. Harning

9  to sign a release for all of her tax returns.  It's a

10  Request for Transcript of Tax Return, 4506-T.  So that

11  issue -- there's that issue on the table too, Your Honor,

12  other than a simple yes-or-no question of whether she

13  filed tax returns.

14    MS. LUKEY:  Your Honor, this is Joan Lukey

15  for Cultural Care.  I would like to correct what I think

16  was a misimpression by earlier comments about the

17  regulations.  The Department of State regulations do not

18  impose a recordkeeping regulation on either the sponsors

19  or the host family.  Host families, if they wish, may

20  maintain their own logs.

21    But there is not a requirement for

22  recordkeeping because the stated amount of the stipend is

23  a minimum due regardless of the number of hours or up to

24  45.  The obligation of the sponsor is to inform the host

25  family of the requirement that the employee be paid at

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 159

1    least the stipend and not more and not work more than 10

2    hours a day or 45 hours per week.  That's the requirement

3    under the State Department regulation.

4                    MR. HOOD:  Your Honor, sorry --

5                    MR. ENICA:  Bogdan Enica, Your Honor.

6                    MR. HOOD:  -- Ms. Lukey has misrepresented

7    what the regulations actually say.  They instruct that

8    au pairs, as Your Honor pointed out in her order, shall

9    be paid to the Fair Labor Standards Act, which requires

10   employer to keep records.  They are not absolved by the

11   State Department regulations not mentioning records from

12   keeping those Fair Labor Standards records.

13                   THE COURT:  All right.  Well, I hope --

14                   MR. ENICA:  Your Honor --

15                   THE COURT:  Okay.  Everybody, quiet.  And

16   I don't mean to be rude about that.  But if you're

17   talking, then you can't hear me talk on this phone

18   connection we have.  So I think the best way to handle

19   this is to say that because tax returns are sensitive

20   information, even though we have a protective order in

21   place, that's really not the heart of everything.

22                   It may be the most important thing, but

23   there's also the issues that I think do surround the case

24   law that I've read that has to do with asking questions

25   that could be intimidating because they could lead to

Johana Paola Beltran, et al. vs.                              Confidential Video Deposition of Juliane Harning
Interexchange, Inc., et al.                                                                    September 08, 2016

Page 160

1    some kind of negative actions against the deponent.

2    Immigration status, of course, is the big one that I

3    usually go on.  But I think tax returns also -- are the

4    same thing.  If you're required to file them and then you

5    don't, that could have some negative influence.

6              So I think that the time is not exactly

7    ripe yet to talk about tax returns with these -- with

8    these plaintiffs.  I do not buy the argument at all that

9    the tax returns have anything to do with typicality or

10   commonality or the other things you need to prove when

11   attacking a Rule 23 class.  So I'm not inclined to let

12   you ask those questions now.

13             However, that is going to be open to

14   revisiting when we have a little more information.  If

15   there is no recordkeeping for any of these plaintiffs by

16   themselves or by host families or by the sponsors, then

17   tax returns become a viable alternative because there's

18   no other method to get them.

19             It occurred to me while all of you were

20   talking that bank records are also a viable way to get

21   income, depending on whether or not the person opened a

22   U.S. bank account.  If they did, it might show regular

23   deposits of a certain amount that could help prove up

24   their testimony.  So I'm not -- and bank records are not

25   treated the same as tax returns.  Bank records, there

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 161

1    wouldn't be very much argument about it, I suspect.

2              So I think that for now the Court's ruling

3    is going to be you're not going to ask about the tax

4    return information.  You can ask the question, Did you

5    file a tax return? because I think it's good to know

6    whether or not they did, not for purposes of compliance

7    of the contract, just to know that that's one place that

8    you might go.  If they say no, then, you know -- then

9    what are we even talking about?  They didn't file one, so

10   you're not going to get one.  And they're not going to

11   sign a release, and it's a moot point.  So let's leave it

12   at that for now.  I only want to address that narrow

13   issue.

14             As my law clerk told you, I have criminal

15   matters coming up.  They are here at 2:30.  So they're

16   going to start filling the courtroom.  They're trying to

17   get in now, but we're keeping you on the phone.  So I

18   think that will be the ruling of the Court on this very

19   narrow issue.

20             Now, to the extent that anybody wants to

21   strike questions or strike testimony on irrelevant

22   documents, I think you should probably go ahead and brief

23   that because I don't want to sit on the phone with all of

24   you addressing one question at a time whether or not that

25   question was appropriate.  In general, I don't think

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 162

1   someone's love life is appropriate, and so I kind of

2   agree with the -- in general the statement that I don't

3   think any of you would actually legitimately disagree

4   with.

5              I think that immigration status is out.

6   That's not relevant to anything because most of these

7   people don't even work, I think, for the sponsors

8   anymore.  And questions about their love lives or what

9   they did in their off time and all that sort of thing,

10  that's just not relevant to the issues before the Court.

11  And I don't know why you would even want to know.

12             But I am leaving open the issue of tax

13  returns because I think there are circumstances under

14  which I would allow tax returns to be received, but I

15  don't have enough information yet to make that ruling.

16  So is that clear enough for everyone?

17             MR. QUINN:  Yes, Your Honor.  This is Tom

18  Quinn.

19             MR. ENICA:  I do have a question.

20             MR. QUINN:  Go ahead, Bogdan.

21             MR. ENICA:  This is Bogdan Enica for

22  Expert AuPair.  When you said immigration status is out,

23  are you referring to people that might be in the United

24  States with an immigration status that we don't want to

25  talk about?  Are you asking about any immigration status

Johana Paola Beltran, et al. vs.                    Confidential Video Deposition of Juliane Harning
Interexchange, Inc., et al.                                              September 08, 2016

Page 163

1    in any country?  And how about people that are just

2    coming here for their deposition?  We know everything is

3    fine with our current immigration status, but maybe we

4    want to ask questions about their J-1 immigration status.

5                    I mean, immigration is so intertwined in

6    everything in this lawsuit even if it's not a question of

7    the type, what immigration status are you now, are you

8    legal, we may want to inquire into their J-1 status or,

9    you know, when they filed that application to change the

10   status, they declared an income and what are the income

11   they declared there.  So I just want a clarification.

12                   THE COURT:  Well, I don't think

13   immigration status is relevant to the issues for the

14   Court right now.  I haven't seen -- you may want to ask

15   it, but I don't see why, other than to intimidate people

16   who may have some immigration problems.  And that's a

17   danger, and that's what all the cases talk about.  And I

18   haven't seen one that cited it any differently.

19                   If you -- you know, if you really feel

20   like certain questions are relevant and you can point to

21   me exactly why they're relevant and why you needs to know

22   that information to defend your case, I'll reconsider.

23   But at this point I would say no because the case law is

24   very clear that this is -- this is a big intimidation

25   factor.

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 164

1   And again, I refer you back -- not to your
2   own case, but to how many of them arises in this -- in
3   this country.  And that is because illegal -- people who
4   are here illegally are working at restaurants or wherever
5   they're working, might happen to be a restaurant.  And
6   they are afraid.  They're afraid to join a class action
7   to get the wages that they're due.  I mean, if they're
8   going to work, they're due the wages.  And they're afraid
9   to file because they know what will happen.  They'll get
10  deported, and then they will have no job.  So they would
11  rather have an underpaid job than no job.  So that's the
12  problem.
13   I think the same problem exists -- or
14  could exist in this case.  Although you're in a bit of a
15  different posture.  So if you want to brief that, I will
16  certainly read the briefs and may reconsider that.  But
17  at this point I'm going to say the immigration questions
18  are not proper.
19   MR. ENICA:  I do understand, Your Honor.
20  I -- we will go ahead and brief the issue.  Again, I was
21  just referring typically to financial declaration that
22  they made, for example, while under the immigration
23  status.  It wasn't about their current immigration status
24  but about past immigration status.  Maybe they disclosed
25  any sort of financial information -- again, we have to

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 165

1   get it somehow.  We won't get it from the tax returns.

2   I'm not sure if we'll get it from the bank accounts.

3                   But if we have to explore ways of getting

4   their income, maybe they file something with immigration.

5   I was only willing to go there, again not about their

6   status.  I'm very sensitive to this.  And again, I'm an

7   immigrant myself.  So I totally understand.

8                   THE COURT:  All right.  Anything further

9   for today?  Okay.  Court will be in recess.

10                  MR. QUINN:  Thank you.

11                  MS. DiSALVO:  Thank you, Your Honor.

12                  MR. ENICA:  Thank you.

13                  (End of conference with judge.)

14                  MR. QUINN:  So is everyone still on the

15  line?

16                  MR. ENICA:  Yes.

17                  MR. QUINN:  Why don't we take a few

18  moments.  The witness can use the restroom, and then

19  we'll come back in and wrap up.  Does that sound good?

20                  (Recess taken from 2:42 p.m. to 2:55 p.m.)

21                  (Mr. Hood left the proceedings.)

22                  THE VIDEOGRAPHER:  We are back on the

23  record.  The time is 2:55.

24                  MR. QUINN:  Are you ready, Counsel?

25                  MS. DiSALVO:  Yes.