**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN *et al.*,

    Plaintiffs,

v.

INTEREXCHANGE, INC. *et al.*,

    Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT CULTURAL CARE'S
MOTION FOR SANCTIONS**

---

**PRELIMINARY STATEMENT**

Rather than litigate the serious allegations of wage-fixing, wage and hour violations, and fraud, Defendants have approached discovery as an opportunity to delve into the private lives of the named Plaintiffs, in at least one occasion reducing the Plaintiff to tears. In the case of Dayanna Paola Cardenas Caicedo, when the time came to give her deposition, Ms. Cardenas was too scared of her former sponsor to go forward. Although she participated actively throughout the litigation — providing discovery, reviewing and signing interrogatories, signing a declaration, participating in several hours of witness preparation, and even driving to the deposition itself — she was simply too afraid of Cultural Care to go forward when she found herself on the verge of the deposition. As a result, Ms. Caicedo will not be going forward as a named Plaintiff in this case. To ensure that this does not happen again, Plaintiffs are

simultaneously cross-moving for a protective order to limit the harassment and intimidation of the members of the class. For the same reason, Cultural Care's application for fees should be denied, both because Ms. Cardenas is unable to pay any sanction, and because sanctions are not in fact warranted.

## RELEVANT FACTS

On August 15, 2016, Ms. Cardenas met with plaintiffs' counsel for approximately three hours to prepare for her deposition, which was scheduled for the following day. *See* Declaration of Dayanna Paola Cardenas Caicedo, dated September 26, 2016 ("Cardenas Decl.") ¶ 5; Declaration of Lauren F. Louis, dated September 26, 2016 ("Louis Decl.") ¶ 20. The next morning, she got up and drove to Philadelphia to attend her deposition. Cardenas Decl. ¶ 6. At the door to the office building, however, she was overcome by fear and was unable to appear for her deposition. *Id.* ¶ 6.

Ms. Cardenas is petrified of Cultural Care. The company exercised substantial control over her when she was an au pair, treating her more like a commodity than a human being. Cardenas Decl. ¶ 7. When she was to appear for her deposition, those feelings of intimidation rushed back and overwhelmed Ms. Cardenas. *Id.* ¶ 8. She was also afraid that if she continued to press her claims, she would risk her legal status in the United States. *Id.* ¶ 9. Given her emotional state, Ms. Cardenas was unable to proceed with her deposition. *Id.* ¶ 6, 10.

Immediately after learning that Ms. Cardenas would be unable to proceed with her deposition — which is to say, at about the same time that the deposition was

scheduled to start — Plaintiffs' counsel informed defense counsel of the situation and cancelled the deposition. Louis Decl. ¶ 21.

Two days later, on August 18, 2016, Cultural Care indicated that it would file a motion to strike Ms. Cardenas as a named plaintiff and to have her claims dismissed, and also demanded compensation for its attorneys' fees in connection with Ms. Cardenas's deposition. The company failed to explain, however, how much money it was demanding. Louis Decl. ¶ 22-23 and Ex. F.

On August 25, 2016, having heard nothing further from Cultural Care, Plaintiffs' counsel asked Cultural Care how much money it was seeking in connection with its demand for attorneys' fees so that it could understand Cultural Care's position. Louis Decl. ¶ 24 and Ex. G. The next day (a Friday), at approximately 4:00 in the afternoon, Cultural Care responded by demanding over $80,000. *Id.* ¶ 25 and Ex. H. They further claimed the amount was subject to increase and warned that they intended to file a motion for sanctions by close of business that same day. *Id.*

Plaintiffs' counsel promptly scheduled an appointment to discuss the fee issue with Cultural Care's counsel on August 29, 2016 (the following Monday). On that date, Plaintiffs' counsel interrupted his vacation with his family to speak to one of Cultural Care's lawyers about Cultural Care's prospective motion. *Id.* ¶ 26 and Ex. I.

On August 30, 2016, Cultural Care's counsel again warned in an email that Cultural Care would file a motion for sanctions in the morning. *Id.* ¶ 27 and Ex. J. Plaintiffs' counsel responded by email that same day by reiterating Plaintiffs'

commitment to confer and noting the absence of any emergency. *Id.* ¶ 27 and Ex. J. On August 30, 2016, Cultural Care moved for sanctions, despite Plaintiffs' counsels' willingness to continue conferring.

## THE MOTION SHOULD BE DENIED

A. **Ms. Cardenas Has Agreed To Withdraw As A Named Plaintiff**

In the weeks after Ms. Cardenas's scheduled deposition, various defendants have taken the depositions of a number of the other named plaintiffs. As detailed in Plaintiffs' cross-motion for a protective order and in the accompanying Declaration of Lauren F. Louis, those depositions have been notable for the irrelevant, personal, and harassing depths that have been plumbed by defense counsel. In view of that conduct, and Ms. Cardenas' fears about retaliation from Cultural Care — fears that have been borne out as other sponsors have delved into questions about immigration status, or have enlisted the help of host families to pressure the named Plaintiffs — it became clear that Ms. Cardenas was not prepared to continue in this litigation as a named Plaintiff. She therefore consents to the dismissal of her claims, without prejudice, and Cultural Care's motion should be denied as moot.

Although it seems unlikely that Ms. Cardenas will seek to rejoin this lawsuit as a named Plaintiff, there is no reason to dismiss her claims with prejudice, and Cultural Care implicitly concedes that dismissal with prejudice is unnecessary. *See* ECF No. 337 at 10-11. Ms. Cardenas received no warning that her claims would be dismissed if she failed to attend her deposition, and Cultural Care can claim no real litigation

4

prejudice from it. Indeed, Ms. Cardenas was the first plaintiff scheduled to be deposed, and discovery is still ongoing.

In *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), the Tenth Circuit set forth a non-exhaustive list of factors to be considered when evaluating grounds for dismissal of an action with prejudice. The factors are: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* at 921 (internal quotations and citations omitted). As the Court admonished, however, dismissal with prejudice "represents an extreme sanction appropriate only in cases of willful misconduct," and should be used "as a weapon of last, rather than first, resort.". *Id.* at 920. Here, the *Ehrenhaus* factors do not favor dismissal with prejudice.

First, Cultural Care has not been prejudiced by Ms. Cardenas's failure to appear for her deposition. Ms. Cardenas agrees not to serve as a class representative and to the dismissal of her claims without prejudice. Moreover, Cultural Care is a part of this lawsuit regardless of Ms. Cardenas's participation, as there are other named Plaintiffs raising claims against Cultural Care in both the First Amended Complaint and the proposed Second Amended Complaint. Cultural Care misses the point in claiming that they have been prevented from collecting evidence to oppose the motion for class certification and challenge Ms. Cardenas's claims. *See* Sanctions Br. at 8-9. Put

simply, they do not need evidence from Ms. Cardenas to address her suitability to represent the class or otherwise defend this case.

Nor has Ms. Cardenas's failure to appear for her deposition interfered with the judicial process. As just explained, the Court has not expended unnecessary time or resources considering this lawsuit against Cultural Care, as Ms. Cardenas is not the only proposed class representative who has raised claims against Cultural Care. Moreover, Cultural Care cannot credibly blame this motion on Ms. Cardenas's decision not to proceed with her deposition, as the motion may have been avoidable had Cultural Care complied with its obligations to meaningfully confer with opposing counsel before seeking judicial relief.

Third, although Ms. Cardenas bears some responsibility for her decision not to be deposed, her "degree of culpability" does not weigh heavily in favor of dismissal with prejudice. Indeed, as explained above, Ms. Cardenas did not appear because she was afraid of Cultural Care — a fear that was substantially justified by Ms. Cardenas's past experiences and Cultural Care's other conduct in this case.

The fourth factor does not militate toward dismissal with prejudice, as there is no dispute that Ms. Cardenas was not warned by the Court that dismissal would be a likely sanction for her failure to appear for her deposition.

Lastly, there are lesser sanctions that will appropriately address her inability to sit for a deposition — namely, the dismissal without prejudice to which Ms. Cardenas consents. Ms. Cardenas is guilty of nothing more than biting off more than she could

chew. Her best intentions aside, Ms. Cardenas found herself overwhelmed with fear and emotion when she was at the very threshold of confronting Cultural Care's attorneys. She therefore should not serve as a class representative. But she should not face the ultimate sanction of having her claims dismissed with prejudice. *See, e.g.*, *Cimino v. Long*, No. 14-CV-00209-CMA-KLM, 2014 WL 4627581, at *3 (D. Colo. Sept. 15, 2014) (finding that the *Ehrenhaus* factors favored dismissal without prejudice even where "Plaintiff abandoned his lawsuit" by failing to update his address with the Court and disregarded a Court Order to respond to a motion to dismiss).

**B.     Cultural Care Is Not Entitled To Fees From Ms. Cardenas**

The Court should not award Cultural Care its costs and attorneys' fees in preparing for the deposition because Ms. Cardenas's failure to appear was substantially justified and, in any event, the entry of monetary sanctions would be unjust.

Cultural Care is incorrect that that Rule 37(d)(3) "requires the Court to impose monetary sanctions" for Ms. Cardenas's failure to appear at her deposition. *See* ECF No. 337 at 11. Rule 37(d) provides that the Court "*may*, on motion, order sanctions" if a party does not appear for her deposition after being served with proper notice. Fed. R. Civ. P. 37(d)(1)(A). The rule's plain language therefore makes clear that sanctions are permissive, not mandatory.

Rule 37(d)(3) further identifies the types of sanctions available. First, the rule states that sanctions "may include" any of the relief provided in Rule 37(b)(2)(A)(i)-(vi),

which does not include monetary sanctions. Fed. R. Civ. P. 37(d)(3). The rule then continues to provide that monetary relief is also permissible in limited circumstances:

> Instead of or in addition to these sanctions [that is, the sanctions available under Rule 37(b)(2)(A)(i)-(vi)], the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3).

In this case, an award of monetary sanctions against Ms. Cardenas is inappropriate, both because her failure to attend was substantially justified, and because an award of monetary sanctions would be unjust. Ms. Cardenas failed to appear not out of disregard for her responsibilities as a class representative or to gain some tactical advantage, but because she was afraid. She intended to appear and prepared to do so — even driving 30 minutes to the location of the deposition — but at the last moment, she was simply unable to proceed because she was emotionally overwhelmed.

Such a reaction, though regrettable, is certainly understandable given Ms. Cardenas's youth, inexperience with the judicial system, foreign citizenship, and prior experience with Cultural Care, which was intimidating and demeaning. Indeed, Ms. Cardenas felt like Cultural Care controlled all aspects of her life and treated her like a commodity rather than a human being. And she now lives in fear that her immigration status will be threatened if she continues to press her claims. Cardenas Decl. ¶ 9.

Given the intimidation tactics employed by the defendants in this case thus far, that fear was warranted. As described more fully in Plaintiffs' simultaneously-filed motion for a protective order, those tactics have included both asking lines of harassing and intimidating questions at depositions, and taking other actions to exert their control over the named Plaintiffs. For instance, defendant Cultural Care required plaintiff Beaudette Deetlefs to pack her belongings and leave her host family's home within hours after she was terminated in retaliation for her participation in this lawsuit. Louis Decl. ¶ 3. Moreover, in their deposition of Ms. Deetlefs, Cultural Care's lawyers repeatedly pursued irrelevant and personal lines of questioning (*e.g.,* asking "Did you meet a boyfriend while you were in the US?" or exploring whether plaintiff found living in Salt Lake City "irritating" or "restricting"), despite Magistrate Judge Tafoya's clear instructions not to engage in such questioning. Given her past experiences with Cultural Care and the company's actions in this case to date, Ms. Cardenas's emotional reaction to the prospect of facing Cultural Care's lawyers across the deposition table was therefore substantially justified.

And even if Ms. Cardenas's failure to appear for her deposition were not justified, monetary sanctions would also be unjust. Ms. Cardenas simply does not have the money to pay the award Cultural Care is seeking. Cardenas Decl. 11. It would be particularly inequitable to bankrupt Ms. Cardenas to pay Cultural Care's fees, in a case in which the defendants are responsible for plaintiffs like Ms. Cardenas being systematically underpaid for years.

Cultural Care also asks generically that "Plaintiffs, their attorneys, or both" should be liable for fees. But plainly an award of sanctions against counsel would be inappropriate on this record.

The Tenth Circuit has found that where an attorney has acted under "substantial justification," then the attorney should not have sanctions imposed upon him under Rule 37. *See Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227-28 (10th Cir. 2015) ("Rule 37(c)(1) requires only the absence of substantial justification—a less stringent standard characterized as not justified to a high degree, but justified to a degree that could satisfy a reasonable person.") (internal citations and quotations omitted); *see also A PDX Pro Co. v. Dish Network Serv., LLC*, 311 F.R.D. 642, 656 (D. Colo. 2015) (denying sanction under Rule 26 where attorney was held to have been "substantially justified" and his actions deemed "reasonable" in the context of the circumstances of his hiring). Further, the Tenth Circuit has admonished courts to apply sanctions only on the party actually at fault. *See Matter of Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984) ("It is the trial court's duty, within the spirit of its total powers…to impose sanctions and compensating awards of expenses, including attorney's fees, in a manner designed to solve the management problem. If the fault lies with the attorneys, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged.").

Counsel met for Ms. Cardenas for three hours on the day prior to her deposition, and Ms. Cardenas showed up for the deposition itself — she was simply too scared to

proceed. There is nothing that Plaintiffs' counsel could have done to avert this situation. Certainly, counsel's conduct was "substantially" — indeed, entirely — "justified," and an award of monetary sanctions would be unjust.

## C.     Cultural Care's Fees and Expenses Are Excessive

The amount of fees and expenses sought by Cultural Care is also excessive and not properly supported, providing an independent reason to deny its application for a monetary sanction. Cultural Care seeks more than $28,469.04 in fees and costs for *one deposition*, which did not even take place. $25,942.50 of that figure is attributed to 58.6 hours of attorney time. *See* Declaration of Justin J. Wolosz, dated August 31, 2016 ("Wolosz Decl."), ¶ 15 and Exhibit C. As even a cursory review of the time entries reveals that the attorney time spent on the aborted deposition was duplicative and inefficient. For example:

- Cultural Care had multiple attorneys duplicating work (Wolosz Decl. Ex C. at 2-5);

- Cultural Care's attorneys billed for nonlegal work, such as circulating call-in numbers and travel time (*id.*); and

- Cultural Care's attorneys billed 1.3 hours each for attending the deposition, even though the deposition was cancelled roughly 45 minutes after it was scheduled to begin and the transcript of the on-the-record portion of the deposition was only three pages long (*see* Sanctions Br., Ex. 3).

Because Cultural Care has attempted to charge for inappropriate and excessive items, its application for costs should be denied.[1]

---

[1]     *Cf. Robert W. Thomas and Anne McDonald Thomas Revocable Trust v. First W. Trust Bank*, 11-CV-03333-WYD-KLM, 2012 WL 5504775, at *2–3 (D. Colo. Nov. 13,

**D.     Cultural Care Cannot Demand the Costs of Preparing This Motion for Sanctions Because It Unilaterally Terminated Its Conferral With Plaintiffs' Counsel**

Cultural Care's demand for its costs associated with bringing this sanctions motion should be swiftly rejected, as well.  Cultural Care made the decision to draft its motion for sanctions before it even began conferring with Plaintiffs' counsel about its demand for fees and costs.  Louis Dec., Ex. H (noting before conferring with Plaintiffs' counsel that its motion for sanctions was "already drafted").  And in the midst of conferring with Plaintiffs' counsel about those fees, Cultural Care unilaterally terminated the discussions and filed its motion.  Louis Decl. ¶¶ 23-28 at Exs. F-J.  Given that Ms. Cardenas has decided not to continue in her capacity as a named plaintiff, its motion was entirely unnecessary.[2]  Neither Ms. Cardenas nor her attorneys should have to pay for Cultural Care's strategic decision to move for sanctions rather than trying first to negotiate a resolution, particularly where there were no deadlines or other emergent facts requiring Cultural Care to move when it did.

---

2012) ("The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment."); *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F3d 1243, 1250 (10th Cir 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

[2]     Cultural Care may have persisted in seeking its fees and expenses, but it never conferred in good faith on that point.  Indeed, when Plaintiffs' counsel asked Cultural Care how much it claimed its fees were, it asked for more than $80,000.  Not surprisingly, however, it declined Plaintiffs' request for an accounting of those fees, and asked this Court for $28,000 – a number that is itself substantially inflated, as set forth above.

## CONCLUSION

For the foregoing reasons, the defendants' motion for sanctions should be denied.

Dated: New York, New York
September 26, 2016

                                Respectfully Submitted,

                                BOIES, SCHILLER & FLEXNER LLP

                                S/ Peter M. Skinner
                                Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
575 Lexington Avenue
New York, New York  10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel.: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

13

**Certificate of Service**

      I hereby certify that on September 26, 2016, I served a true and correct copy of the forgoing on all counsel of record via ECF pursuant to Fed. R. Civ. P. 5.

                                            Peter M. Skinner
                                            Peter M. Skinner