IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC., et al.

    Defendants.

_____

**DEFENDANT EXPERT AUPAIR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW [ECF 330]**
_____

Defendant Expert Group International, Inc. d/b/a Expert AuPair ("Expert AuPair"), hereby opposes Plaintiff's Second Motion for Conditional Collective Action Certification ("Motion") (ECF No. 330). In addition to the arguments made herein, Expert AuPair also joins the arguments and objections raised in the other Defendants' opposition to conditional certification.

### INTRODUCTION

Expert AuPair is one of the sixteen designated private sector program sponsors for the Department of State's ("DOS") Au Pair program. Plaintiffs sued fifteen of the sponsors on allegations of antitrust conspiracy[1]. Six of the sponsors were sued on FLSA allegations. On August 15, 2016, Plaintiffs filed

---

[1] At the time of filing the First Amended Complaint, DOS had fifteen designated sponsors. The sixteenth sponsor was designated after the filing of the First Amended Complaint and it was not included as a defendant in this lawsuit.

1

a motion to amend their complaint to include Expert AuPair as one of the FSLA defendants. At the same time they filed a second motion for conditional collective action certification. Plaintiff Nicole Renee Mapledoram ("Mapledoram") is the only named or proposed named plaintiff who was sponsored by Expert AuPair.

Plaintiff's second motion for conditional certification should be denied as against Expert AuPair because Mapledoram has not presented any substantial allegation showing that she and the other putative Expert AuPair class members were subject to a single decision, policy or plan implemented by Expert AuPair. Mapledoram was not placed, by Expert AuPair, her application was not circulated by it, and she did not match with families introduced to her by Expert AuPair. Also, Mapledoram negotiated her employment agreement as an au pair prior to even contacting Expert AuPair, modified her employment agreement without informing her sponsor agency, and failed to show how she is similarly situated with any other Expert AuPair sponsored au pairs. In requesting conditional certification Mapledoram relies on experiences of other named plaintiffs or au pairs sponsored by other sponsor agencies. Even if true, this would not satisfy her burden.

## BACKGROUND

As a private sector sponsor, Expert AuPair was designated by DOS to administer the implementation of the J-1 au pair program in the United States. DOS is the Government entity mandated with supervising the Au Pair program and prescribing regulations.

According to the regulations promulgated by DOS, au pairs sponsored in the Au Pair program should be "compensated at a weekly rate based upon 45 hours of childcare services per week." 22 C.F.R. § 62.31(j)(1). In 2007, at the last minimum wage increase, DOS communicated to the sponsors that starting July 24, 2009, the approved weekly minimum stipend was of $195.75 (First Am. Compl. (ECF No. 101) ¶83). This amount is calculated by DOS using a formula that multiplies the minimum wage by 45 hours and subtracts a 40% credit for room and board. (Declaration of Mark Gaulter ( "Gaulter Dec.") ¶3 & Exhibit 1).

Plaintiffs allege that all Defendants have conspired to "fix the weekly au pair stipend at exactly $195.75. (First Am. Compl. (ECF 101) ¶¶183-184). Furthermore, in the proposed Second Amended Complaint ("SAC"), the Plaintiffs allege that Expert AuPair was a joint employer of Mapledoram as well as the other au pairs it sponsored. They also claim the following FLSA violations related to the minimum stipend calculated by DOS: the rooms and board deduction is illegal and therefore the minimum stipend fails to properly compensate the au pairs at least federal minimum wage, and the stipend fails to compensate the au pairs for hours worked in excess of 40 hours per week.

Mapledoram seeks now conditional certification of two FLSA classes consisting of (1) all current and former au pairs for whom defendant Expert AuPair was a J-1 Visa Sponsor and (2) all current and former au pairs for whom defendant Expert AuPair was a J-1 visa sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015. (Motion at 3) Notably the first proposed class does not have a start date

3

and it is defined without accounting for the FLSA statute of limitations.

## ARGUMENT

I. **Mapledoram is not entitled to conditional certification**

    A. **Standard for Conditional Certification**

In order for this Court to permit the assertion of minimum wage and overtime claims as a collective action under 29 U.S.C. § 216(b), Mapledoram has to demonstrate that she was an employee of Expert AuPair and that she is "similarly situated" with other complaining employees. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3rd 1095, 1102 (10th Cir. 2001). Even if the standard is lenient, to demonstrate that she and the putative class members are similarly situated for conditional certification at the notice stage, Mapledoram must present "substantial allegations" that the putative class members were together the victims of a single decision, policy or plan." *Thiessen*, 267 F.3rd at 1102. The notice and opt-in process should not be treated as a discovery device to determine if conditional certification is appropriate. *Sanchez v. JMP Ventures, LLC*, 214 U.S. Dist. LEXIS 14980 (S.D.N.Y. Jan 27, 2015).

    B. **Mapledoram Failed to Show that She and the Members of the Proposed Expert Au Pair Classes Were Victims of Single Decision, Policy or Plan**

        1. Mapledoram's Testimony and the Evidence Presented Separates Her from the Other Proposed Class Members

Mapledoram's experience is fundamentally different from the other Expert AuPair class members. Specifically, the Plaintiffs allege that Expert AuPair, as an FLSA defendant recruits and screen au pairs before placing them with families (Motion at 7). Unlike other class members, Mapledoram was not recruited or

4

screened by Expert AuPair prior to being matched with her host family. She was rather recruited by a foreign company, who was not an agent of Expert AuPair at the time of recruiting Mapledoream (Gaulter Dec. ¶6). She was originally recruited for the purpose of being placed by another sponsor agency. She was in fact placed with another host family by a different sponsor agency and she obtained a visa, but that host family terminated the contract with Mapledoram prior to her arrival in the United States. (Declaration of Mark Jeffery ("Jeffery Dec.") ¶¶5,6).

Prior to even contacting Expert AuPair, Mapledoram found a new host family, negotiated her terms of employment and agreed to her weekly pay. (Jeffery Dec. ¶7). Without Expert AuPair's knowledge she accepted the amount of $195.75 as her weekly pay. (Jeffery Dec. ¶7). This amount is the minimum amount allowed by the DOS regulations. Only after Mapledoram and her Host Family agreed on the terms of employment, their applications were forwarded to Expert AuPair for the purpose of facilitating the visa and sponsorship process. Expert AuPair did not interfere in any way in setting Mapledoram's wages. (Jeffery Dec. ¶9, Gaullter Dec. ¶7).

The Plaintiffs claim that Ms. Mapledoram "was accepted by Expert AuPair into the program and matched with a family in Colorado" (Motion at 11 and 12) which is factually inaccurate. She was in fact accepted in the program only together with her preselected host family, located in Colorado, which separates her from other au pairs that go through a standard process and therefore negotiate salaries, working hours and working conditions after being accepted in

5

the program.

Unlike other au pairs who paid to Expert AuPairs before being permitted to work as au pairs (Motion at 2), Mapledoram didn't do so. (Gaulter Dec. ¶8). While all the other members of the putative class would have been required to pay $1,000 (if coming from Australia), Mapledoram was only required to pay a discounted amount and no evidence of her making such payment is available. In fact, according to Expert AuPair records, she never paid any amount whatsoever to Expert AuPair (Gaulter Dec. ¶8).

Furthermore Mapledoram does not claim FLSA violations for her entire employment as an au pair. Rather, she choses to make FLSA related claims for only part of her time as an au pair in the Untied States, which is dissimilar to any other potential class member.

2. Mapledoram Fails to Show that Expert AuPair Was Her Employer.

Testimony shows that Expert AuPair was not Mapledoram's employer for the duration of her employment in the United States.

In order to determine if Mapledoram is an employee under the FLSA, we may use the "economic realities test" used by the Tenth Circuit. *Baker v. Flint Eng'g & Constr. Co.,* 137 F.3d 1436, 1439 (10th Cir. 1998). The test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Baker* 137 F.3d at 1439 (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir.1990)).

6

While in the United States, Mapledoram was employed by two host families. Her agreement with each family was memorialized in the form of a written "Employment Agreement" (Exhibit 2 and Exhibit 3). While Expert AuPair provided the template form, each employment contract was negotiated and signed by Mapledoram and her respective host family. The template allowed the parties to fill in the names for the employer and the employee, the amount for salary, the method of payment, the pay day, the number of hours and weekly schedule, and other conditions of employment. Mapledoram signed both employment contracts acknowledging that the host family is her employer, and agreeing to the conditions. According to the Employment Contract only the host family had the power to fire Mapledoram. In contrast, it is important to mention that Expert AuPair did not have the power to terminate Mapledoram's employment. The Plaintiffs use the word "termination" to refer to both the termination of employment and the termination of the J-1 status. In fact the concepts are very different. While only the host family is entitled to terminate the employment of an au pair, Expert AuPair is entitled to update the SEVIS record of an au pair to record termination of the program.

Expert AuPair did not control Mapledoram's work schedules or conditions of employment. As the Plaintiff testified, during her stay in the United States, the Host Family alone would often change the work schedule or the number of hours worked without even informing Expert AuPair. During her last weeks in the Au Pair program, Mapledoram and her host family completely changed both the number of hours worked and the salary paid and entered into a new verbal

7

agreement that was never disclosed to Expert AuPair (see Mapledoram Deposition Transcript ("Depo.") at 257[2]). Also, in accordance to her Au Pair Agreement the quality of the childcare provided was judged exclusively by the host family. (Exhibit 4).

Expert AuPair did not dictate the wages that Mapledoram received. Apart from informing both the host family and the au pair of the obligations imposed by DOS, Expert AuPair was not part of the salary negotiations. Mapledoram accepted a stipend of $195.75 from her first host family and a stipend of $200.00 from her second family. In both cases the Plaintiff accepted such stipend prior to contacting Expert AuPair for starting the legal sponsorship process.

Expert AuPair did not maintain employment records for Mapledoram. In accordance to the Employment Contract, it was the host family's responsibility to maintain records of the payments they made to the au pair[3].

Furthermore, Expert AuPair did not recruit and place Mapledoram. The Plaintiff was recruited by a foreign entity that was not working with Expert AuPair at the time it recruited Mapledoram. (Gaulter Dec. ¶6) She was not placed by Expert AuPair but rather matched with a Host Family prior to contacting the sponsor. Mapledoram found her second employer through a friend, and was not placed by Expert AuPair either. (Gaulter Dec. ¶8).

---

[2] Due to the time restrictions and witness availability, the deposition of Mapledoram took place just two days before the deadline for filing this opposition. A final deposition transcript is not available at this time. Exhibit A contains excerpts from de rough draft transcript. The final transcript will be filed as soon as available.

[3] Section 3: Remuneration of The Employment Contract contains a note stating that "Au Pair must be paid at least 195.75 per week and the payment should be documented. Expert AuPair is not a party to the Employment Contract.

        3.      Mapledoram failed to show there are other plaintiffs willing to join this action.

In a Motion for Collective Class Certification the plaintiffs bear the burden of showing a reasonable basis for the claim that there are other similarly situated employees who desire to join in the litigation. *Vondriska v. Premier Mort. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007). Here, Mapledoram relies on experiences of other named plaintiffs or au pairs sponsored by other sponsor agencies. Her testimony shows that she may know only one or no au pairs who were sponsored by Expert AuPair and might be wiling to join this action.

Mapledoram cannot use policies implemented by other sponsors or au pairs sponsored by other agencies to establish that she is similarly situated.

Expert AuPair advertised the minimum amount as a minimum, as required by law. Even in their Motion the Plaintiffs admit that Expert Au Pair notes on its website that the amount is a minimum (Motion at 11) only to forget about this fact and to claim that au pairs would be paid a set wage which was less than the federal wage (Motion at 12), which is contradicting previous statements made in the Motion. In reality the au pairs placed by Expert AuPair earn between $195.75 and $961.54 weekly. (Gaulter Dec. ¶9)

While ignoring words like "minimum" and "at least" used in the Expert AuPair's website and materials, the motion is citing policies implemented by Cultural Care, a distinct defendant in this case. Also while mentioning that she has knowledge of other au pairs similarly situated Mapledoram admitted that they are in their vast majority sponsored by other agencies.

9

```
"8           Q.   So you said that you had contact with
 9      various au pairs and you talked about stipend.  Do you
10      know if these au pairs were all with Expert AuPair?
11             A.   I don't know what agency or sponsor most
12      of them were with.  To my knowledge, none of them were --
13      actually maybe one of them was Expert AuPair.  Most of
14      them were not.  One of them I know, but, yeah I don't
15      know what agency they're from."
```

(Depo. at 236).

### C.     The Court should strike Mapledoram's declaration.

Mapledoram's declaration in support of the Motion ("Declaration") is inaccurate and intended to mislead and therefore the Court should strike it.

Courts have inherent powers to strike materials from any filing that is not compliant with federal or local rules or court orders. Dubrovin v. Ball Corp. Consl.Welfare Benefit Plan, No. 08-cv-00563, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009).

Under 28 U.S.C. § 1746 (2), every unsworn declaration under the penalty of perjury, if signed outside the United States, its territories and commonwealths, should include a writing substantially in the following form: "I declare (or certify, verify, or state) under penalty of perjury **under the laws of the United States of America** that the foregoing is true and correct." (emphasis added). The declaration attached to this Motion was signed in Brisbane, Australia and does not contain the emphasized part, making it, therefore, non compliant with the applicable federal rules.

The date of the declaration is also in question. Plaintiffs filed the Motion and Declaration on the August 15, 2016, the last date allowed by the court. However, at the time the Motion was filed, date in Brisbane was August 16, 2016.

10

Mapledoram admitted during her deposition that the correct date on the Declaration might have been August 16 and that she might have dated the document according to the date in the US at the time of signing. She mentioned that she was confused because of the time difference. (Depo. at 217).

In the second paragraph of her Declaration, Mapledoram misrepresents both the month when she applied with Expert AuPair and the number of sponsors she applied with. Mapledoram stated that "It was approximately January or February" when she applied with Expert AuPair. (Depo. at 219).

In the fourth paragraph of the Declaration, Mapledoram misrepresents the amount she was required to pay to Expert Au Pair, the amounts she paid to Expert AuPair and the amounts that she paid for her visas:

> 24   A.  Yes.  I'm saying to me like 500 and 500 is
> 25        approximately the same as 400 and 400. [...]

(Depo. at 223).

> 1    [I] wrote this approximately was accurate.  But now I've read
> 2    this document today I would change that and say I paid
> 3    $800.

(Depo. at 224).

> 11   A.   I would actually update that now because I
> 12        have after today remembered other amounts that I paid for
> 13        my visa to the embassy.

(Depo. at 226).

In the fifth paragraph of her Declaration, Mapledoram misrepresents both the number of days of her training, who the training was presented by, and the content of the training.

11

```
           4    A.  Some of it was presented by them and some
           5        of it was not, but it was all organized by them.
```
(Depo. at 228).

In the ninth paragraph of her declaration, Mapledoram misrepresents the fact that she never worked less than 45 hours per week. During the deposition, she admitted that she actually worked less than 45 hours in more than one occasion.

The declarant chose not to review any of the documents she had in her possession prior to signing the declaration, but include inaccurate and misleading information in a sworn document. An accurate Declaration would have shown that Mapledoram is not similarly situated with other potential class members. Her inaccurate declaration is used to substantiate her claims against Expert AuPair (Motion at 11 and 12).

The Court should not reward filing of inaccurate and non-compliant documents and has the inherent power of striking the document or, in the alternative, refusing to consider such document for the purpose of the Motion.

## II.     **Plaintiff's Consent and Class Notice are Improper**

This court recognized that a class notice must be accurate, fair and impartial. It should also notify the potential plaintiffs of their obligation and duties if they join the lawsuit. s*ee In re Qwest Commc'ns Int'l, Inc. Sec. Litig*, 625 F. Supp. 2d 1133, 1137 (D. Colo. 2009). Here, the proposed notice failed to inform the potential plaintiffs of their obligations if they join the lawsuit.

## CONCLUSION

For the reasons stated above, Expert AuPair respectfully requests that the Court deny Plaintiff Mapledoram's request for conditional certification of an Expert AuPair class under FLSA.

Dated this 6th day of October 2016.

                                         Respectfully submitted,

                                         *s/Bogdan Enica*
                                         Bogdan Enica, Esq.
                                         111 Second Avenue NE, Suite 204
                                         St Petersburg, FL 33701
                                         Phone:  727-388-3472
                                         bogdane@hotmail.com
                                         ATTORNEY FOR DEFENDANT EXPERT GROUP INTERNATIONAL INC. D/B/A EXPERT AUPAIR

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2016, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the counsel of record

                                         s/Bogdan Enica
                                         Bogdan Enica, Esq.