# EXHIBIT G

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT
_____

JOHANA PAOLA BELTRAN; et al.,

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.,

    Defendants.

_____

VIDEO DEPOSITION OF LUSAPHO HLATSHANENI

SEPTEMBER 7, 2016

_____

PURSUANT TO NOTICE and the Colorado Rules of Civil Procedure, the video deposition of LUSAPHO HLATSHANENI was taken on behalf of the Defendant American Institute for Foreign Study, Inc., Au Pair In America, Au Pair Foundation at 1801 California Street, Toronto Room, Denver, Colorado, on September 7, 2016, at 9:11 a.m., before Renee S. Wilson, Certified Shorthand Reporter and Notary Public within the State of Colorado.

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 114

1      Q.    (BY MR. LEE)  How did you know that?
2      A.    The Prime family told me.
3      Q.    When did they tell you?
4      A.    Once I commenced my duties as an au pair
5  with the Prime family.
6      Q.    Was that the only time they told you?
7      A.    Yes.
8      Q.    What were your duties with the Prime family?
9      A.    As previously stated, it was taking care of
10 their two children, and it was minding them and
11 taking care of them in the absence of their parents.
12 It included taking them to the library, play dates,
13 providing meals, playing with them, reading to them,
14 taking them wherever they needed to be taken within
15 that time when they're in my care.
16     Q.    You slept in the Prime household during your
17 tenure with that family?
18     A.    Yes.
19     Q.    Where did you sleep?  In a room by yourself?
20     A.    Yes.
21     Q.    Were you allowed to drive the Prime family
22 vehicle?
23     A.    Yes.
24     Q.    Do you remember what kind of car that was?
25     A.    I drove two cars, the car -- the minivan,

Wilson & Associates, LLC
(303) 588-0079

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 115

1  the family minivan, and the smaller Ford Fiesta car.
2         MR. LEE:  It sounds like someone joined us.
3  Could you please make your appearance?
4         MR. QUINN:  Yes, Tom Quinn again.  Sorry.  I
5  keep getting bumped out.
6         MR. LEE:  No worries.  Thanks.
7         MR. QUINN:  Yep.
8     Q.   (BY MR. LEE)  Did you have a driver's
9  license from South America that transferred over
10 here in the U.S. as a temporary driver's license?
11    A.   Not from South America.
12    Q.   Where was it from?
13    A.   South Africa.
14    Q.   Strike that.  I apologize.  South Africa?
15    A.   Yes.
16    Q.   Did you receive any traffic violations while
17 you were with the Prime family?
18    A.   Yes.
19    Q.   What were they?
20    A.   A speeding ticket.
21    Q.   When was the speeding ticket issued?
22    A.   I don't remember exactly, but it was in the
23 beginning of the year.
24    Q.   Do you still have a copy of the speeding
25 ticket?

Wilson & Associates, LLC
(303) 588-0079

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 116

1    A.   No, I don't.
2    **Q.   What were you cited for as it applied to**
3    **speeding?**
4    A.   It was a few units above the speeding limit
5    at the time.
6    **Q.   Was it 5 miles per hour or more?**
7    A.   Yes.
8    **Q.   Was it 10 miles per hour or more?**
9    A.   It was 10.
10   **Q.   Were you cited for 10 miles per hour or**
11   **over?**
12   A.   I was cited for driving 10 miles over the
13   speeding limit.
14   **Q.   Who was in the car with you?**
15   A.   I was alone.
16   **Q.   Were there any other traffic violations that**
17   **you received while driving one or both of the Prime**
18   **family vehicles?**
19   A.   Yes.
20   **Q.   What was the other one?**
21   A.   Driving in the HOV lane while I was only
22   passenger.
23   **Q.   When was that?**
24   A.   I don't remember exactly when, but it was
25   during the time I was with the Prime family.

Wilson & Associates, LLC
(303) 588-0079

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 117

1    Q.   Did you receive a ticket for that violation?
2    A.   Yes.
3    Q.   Did you receive a ticket for the speeding
4 violation?
5    A.   I was instructed to pay.
6    Q.   Did you receive some speeding ticket that
7 indicated what your name was and what you were being
8 cited for specifically as to speeding?
9    A.   Yes.
10   Q.   Do you have a copy of either of those
11 violations?
12   A.   No.
13   Q.   Were you cited for any other type of traffic
14 or criminal violations when you were with the Prime
15 family?
16   A.   No.
17        MR. HOOD:  I'm going to stop this line of
18 questioning and object.
19        Larry, can you articulate a reason -- other
20 than to harass and intimidate my client -- why
21 you're asking questions about traffic violations?
22        MR. LEE:  Is that a form or foundation
23 question -- objection?
24        MR. HOOD:  I'm trying to decide whether I
25 should seek a protective order and stop you from

Wilson & Associates, LLC
(303) 588-0079

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 118

1  asking these questions or whether there's a real
2  reason to ask these questions.
3           MR. LEE:  I think the real reason, which I
4  just found out just now, was how serious she took
5  safety, which is not only part of her training but
6  also part of her execution with the kids.
7           Is that relevant enough for you or do you
8  need more than that?
9           MR. HOOD:  I don't see how that's relevant
10 to the case.
11          MR. LEE:  It's very relevant to the case.  I
12 would like to know what she did while she was an
13 au pair with both families.
14          MR. HOOD:  What she did with what?
15          MR. LEE:  What she did as an au pair.  This
16 is an open discovery process.
17          MR. HOOD:  Right.  But --
18          MR. LEE:  It's not designed to harass or
19 intimidate.
20          MR. HOOD:  It appears to be designed to
21 harass or intimidate her.
22          MR. LEE:  In your opinion.
23          So do you have an objection?
24          MR. HOOD:  Lusapho, do you feel comfortable
25 answering the question?

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 119

1        THE DEPONENT:  At this point, it's okay.
2   And if I don't, I'll let you know.
3        MR. HOOD:  All right.  You may answer the
4   question.
5        Q.   (BY MR. LEE)  Did you violate any other
6   U.S. traffic or criminal laws other than the two
7   you've testified to?
8        A.   No.
9        Q.   Who paid the penalties for those traffic
10  violations?
11       A.   I did.
12       Q.   Did you ask for reimbursement from the Prime
13  family?
14       A.   No.
15       Q.   Did you ask for reimbursement from Au Pair
16  In America?
17       A.   No.
18       Q.   Were these two traffic violations committed
19  during the time that you were having some time off
20  from the family?
21       A.   Yes.
22       Q.   Did you eat meals with the Prime family in
23  their home?
24       A.   Yes.
25       Q.   Who paid for those meals?

Wilson & Associates, LLC
(303) 588-0079

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 125

1     Q.   -- "Start date" and "End date"; is that
2  accurate?
3     A.   That is accurate.
4     Q.   Regarding the cooking class, when did you
5  attend?
6     A.   I don't remember the dates, but it was
7  spread over a few weeks.
8     Q.   Did you have to meet one day or more than
9  one day per week?
10    A.   It would be one day per week.
11    Q.   Do you recall how many hours that you had to
12 meet for the cooking class?
13    A.   I don't recall, but I do remember most of
14 the classes were four hours.
15         MR. LEE:  Okay.  I'm going to hand you
16 what's been -- or will be marked as Exhibit 34.
17         (Exhibit 34 marked.)
18    Q.   (BY MR. LEE)  This is an e-mail on
19 January 27, 2014, from Mr. Prime to you where he's
20 also copying his wife, Janine Prime.
21         Do you see that at the top?
22    A.   Yes.
23    Q.   Please review this e-mail and then look up
24 when you're finished.
25    A.   Okay.

Wilson & Associates, LLC
(303) 588-0079

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 126

1    Q.   According to the first paragraph of
2    Exhibit 34, it appears that you were in a car
3    accident using one of the Primes' cars.
4             MR. HOOD:  I'm going to object again and ask
5    what -- what the purpose of this line of questioning
6    into the car accident is --
7             MR. LEE:  I don't have --
8             MR. HOOD:  -- and decide whether or not I
9    should instruct my client not to answer --
10            MR. LEE:  Based on what?
11            MR. HOOD:  -- and ask for protective
12   order.
13            I think you're trying to intimidate my
14   client.
15            MR. LEE:  I'm not trying to intimidate your
16   client at all.  That's your opinion.
17            And once again, this is a speaking
18   objection.  There's --
19            MR. HOOD:  I'm not --
20            MR. LEE:  Let me finish.  Let me make the
21   record.  I've listened to you.
22            That's an inappropriate speaking objection.
23   I can ask her any question of any document -- which,
24   by the way, you provided, Alex, to us.  So if you're
25   not -- if you have a problem with the documents that

Wilson & Associates, LLC
(303) 588-0079

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 127

1  you provide us, I would look more carefully at
2  documents before you actually disclose them.
3          I can certainly ask about -- any questions
4  about her experience with the -- with the Prime
5  family as it applies to safety, as it applies to her
6  experiences, and I take offense by the fact that you
7  believe that I'm trying to intimidate her.
8          MR. HOOD:  It's what it appears, because I
9  don't see any real purpose of this question other
10 than intimidating her.  That's why I'm asking you to
11 provide a rationale.
12         MR. LEE:  Is that a form or a foundation
13 objection?
14         MR. HOOD:  You asked me a question, Larry.
15         MR. LEE:  I'm asking you, is that a form or
16 foundation objection?
17         MR. HOOD:  Lusapho, are you okay with
18 answering the question?  Are you okay with answering
19 questions regarding the car accident?
20         If you're comfortable, you can proceed.
21         THE DEPONENT:  I don't feel comfortable
22 answering the question.
23    **Q.   (BY MR. LEE)  May I ask why you don't feel**
24 **comfortable answering a question about a car**
25 **accident you had in the Prime family's car?**

Wilson & Associates, LLC
(303) 588-0079

1            MR. HOOD:  My client doesn't need to respond
2    to that question.
3            MR. LEE:  No, you do need to respond,
4    because you asked her a question out of turn, and
5    you can't do that as well.  You're breaking all the
6    rules.
7        **Q.   (BY MR. LEE)  Why do you feel uncomfortable?**
8            MR. HOOD:  We're going to seek a protective
9    order regarding this issue.  She does not have to
10   answer the question.  If she would like to answer
11   the question, she can.
12           MR. LEE:  Is it based on privilege?
13           MR. HOOD:  The protective order is based on
14   trying to scare and intimidate the witness.
15           MR. LEE:  Tell me how I'm trying to scare
16   and intimidate this witness by asking about a
17   document that you, Alex Hood, from your law firm,
18   provided to us.  Tell me how that's intimidating and
19   harassing.
20           MR. HOOD:  I don't see what the relevance is
21   other than trying to intimidate.
22           MR. LEE:  You're not the judge.  I can ask
23   about anything regarding this document that you
24   provided.
25           MR. HOOD:  Rule 26(c) bars intimidating and

1  harassing witnesses.
2        MR. LEE: I know --
3        MR. HOOD: And you can seek a protective
4  order for that. If my client feels comfortable
5  responding, she may, but if she says she doesn't
6  want to respond because she doesn't feel
7  comfortable, that is a sufficient response, and we
8  can move for protective order. It's up to her.
9        MR. LEE: Because you asked her that
10 question, what else is she supposed to say other
11 than "yes"? You made a speaking objection, which is
12 completely inappropriate. You've done it this
13 entire deposition. You will have the chance to ask
14 questions after my questions.
15       MR. HOOD: I made very few objections in
16 this deposition, other than where I think my client
17 is being intimidated. If she is in fact not feeling
18 intimidated, she may respond to the question and we
19 will not seek a protective order.
20    **Q. (BY MR. LEE) May I ask why you feel**
21 **intimidated?**
22    A.   Because I am being asked about car accidents
23 that I had, and I don't really understand how it all
24 comes with the case.
25    **Q.   Did you understand that there was a safety**

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 130

1  component of what you did in the child care duties
2  as the au pair over the Prime family?  Did you
3  understand that not only in your training but also
4  as part of your duties?
5      A.   Yes.
6      Q.   And do you think getting in a car accident
7  has anything to do with the safety component of what
8  your job was as an au pair?  If I'm not allowed to
9  ask any questions about the circumstances of this
10 car accident, do you understand why that is
11 relevant?
12          MR. HOOD:  I'm going to again instruct my
13 witness that she does not need to respond if she's
14 feeling that the purpose of this line of questioning
15 is to harass and intimidate her.  I don't see any
16 relevance to this line of questioning.
17          MR. LEE:  I would ask that you keep your
18 objections to form or foundation and not --
19          MR. HOOD:  I can certainly --
20          MR. LEE:  Let me finish.
21          MR. HOOD:  Okay.
22          MR. LEE:  I'm letting you make your
23 objections, but they're not true objections.  It's
24 either form or foundation, not speaking objections.
25 And you are leading this witness, clearly.  You have

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 131

1  done it for the last two hours.
2    Q.  (BY MR. LEE)  Were you cited for this
3  accident?  Yes or no.
4    A.  No.
5    Q.  Were the kids in the car when you were
6  cited -- when you were in this accident?
7       MR. HOOD:  Again, instruct my witness that
8  she does not have to respond to the question.  We'll
9  seek a protective order if she feels that the
10 purpose of the question is to intimidate or harass
11 her.
12   Q.  (BY MR. LEE)  I'm not trying to intimidate
13 or harass you.
14      Yes or no.
15   A.  I don't feel comfortable answering this
16 question.
17   Q.  Why not?
18   A.  Because of the tone that I'm receiving about
19 this -- about this exact question.
20   Q.  I'll ask you in a nicer tone.
21      Were the kids in the car during this
22 accident?  Yes or no.
23      MR. HOOD:  Again, instruct my witness, if
24 she's feeling intimidated or harassed by the
25 question, that she does not need to respond to the

Wilson & Associates, LLC
(303) 588-0079

Page 132

1  question and we'll seek a protective order.
2          Larry, if we could go off the record after
3  this?
4          MR. LEE:  I'm not going off the record until
5  I get an answer to this question because it's
6  perfectly legal.  And you should know better, Alex,
7  quite frankly.
8      Q.   (BY MR. LEE)  Were the kids in the car
9  during the time of the accident?
10     A.   Yes.
11     Q.   And also, as it proceeds, it looks like
12  there was some sort of payment to repair the car;
13  was that your understanding?
14     A.   Yes.
15     Q.   Was there anything unfair about the proposal
16  that Mr. Prime offered you to take care of the cost
17  of the car?
18     A.   No.
19     Q.   In fact, he indicates in here that you split
20  the cost $500 each way; is that right?
21     A.   Yes.
22     Q.   Did you end up resolving the cost of the
23  repairs with Mr. Prime?
24     A.   Yes.
25     Q.   Were there any problems with that

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 153

1    Q.   (BY MR. LEE)  Do you recognize this
2  document?
3    A.   Yes.
4    Q.   Did you have a chance to review this
5  document in its entirety prior to August 9, 2016?
6    A.   Yes.
7    Q.   Did you review it anytime after that?
8    A.   Yes.
9    Q.   When?
10   A.   I don't remember exactly, but it was after.
11   Q.   Did you review it in preparation for this
12 deposition?
13   A.   Yes.
14   Q.   Turn to Page 8.  Is that your signature at
15 the bottom of the -- titled "Declaration"?
16   A.   Yes.
17   Q.   Just so I'm clear, you had a chance to
18 review this document for truth, accuracy, and
19 thoroughness; is that correct?
20   A.   As far as I can remember, yes.
21   Q.   As far as you remember, the answers were
22 complete and truthful to the best of your knowledge,
23 right?
24   A.   Yes.
25   Q.   Did you file taxes with the U.S. Government

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 154

1   in 2013?

2       MR. HOOD:  I'm going to object.  I think the
3   purpose of this line of questioning is to harass or
4   intimidate my client, and I'm going to instruct my
5   client if she feels that she is being harassed or
6   intimidated by this question that she does not need
7   to answer.

8       Q.   (BY MR. LEE)  Sitting here today, while
9   under oath, despite your attorney's speaking
10  objection, by me asking you the simple question of
11  whether or not you filed taxes in 2013, is that
12  intimidating or harassing to you?

13      A.   I just don't understand why it's being
14  asked.

15      Q.   That wasn't what I asked.

16      A.   What did you ask?

17      Q.   Is my question of asking you if you filed
18  taxes with the U.S. Government in 2013, is that
19  intimidating or harassing to you?

20          MR. HOOD:  Objection as to form.

21      A.   Intimidating, yes.  Harassment, it's
22  borderline.

23      Q.   (BY MR. LEE)  Tell me why it's intimidating.

24      A.   As I said, I don't understand why it's being
25  asked, so. . .

Page 155

1    Q.   I'm just asking you if you ever filed.  I'm
2  not asking what is in the content of those tax forms
3  if you did file.
4         Do you understand that?
5    A.   Yes.
6    Q.   Do you feel comfortable to answer the simple
7  question:  Did you file taxes with the federal
8  government in 2013?
9    A.   I can answer.
10   Q.   What is your answer?
11   A.   No.
12   Q.   Same question for 2014.
13        MR. HOOD:  Again, the purpose of this
14  question is to harass and intimidate my client.  If
15  my client feels that she is being harassed or
16  intimidated by this question, then she does not need
17  to respond, and I'll file a protective order.
18   Q.   (BY MR. LEE)  You can answer the question.
19        Did you file taxes with the federal
20  government in 2014?
21        MR. HOOD:  You do not have to respond.  I
22  will file a protective order if you do not feel
23  comfortable.
24        And I'll mark this segment, the questions
25  regarding taxes, as confidential if she does --

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 156

1   under the protective order, if she does choose to
2   respond.
3        A.   No.
4        Q.   (BY MR. LEE)  Same question for 2015.
5             MR. HOOD:  If my client --
6             MR. LEE:  I recognize your standing
7   objection.
8             MR. HOOD:  And if my client chooses to
9   respond, I would mark this confidential under the
10  protective order.
11       A.   No.
12            MR. LEE:  Would you like to take a break, or
13  would you like to keep testifying?
14            THE DEPONENT:  I would like to take a break,
15  please.
16            MR. LEE:  Sure.
17            THE VIDEOGRAPHER:  Going off the record.
18  This is the end of Media No. 4.  The time is 2:15.
19            (Recess taken from 2:15 to 2:39 p.m.)
20            THE VIDEOGRAPHER:  We're back on the
21  record.  This is the beginning of Media No. 4.  The
22  time is 2:39.
23       Q.   (BY MR. LEE)  Ms. Hlatshaneni, you earlier
24  alluded to four friends of yours that you had
25  reported your complaints about the wage and hour

Wilson & Associates, LLC
(303) 588-0079