Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLORADO

 3    Case No. 14-cv-03074-CMA-KMT

 4    _____

 5    JOHANA PAOLA BELTRAN, et al.,

 6            Plaintiffs,

 7    vs.

 8    INTEREXCHANGE, INC., et al.

 9            Defendants.

10    _____

11            Proceedings before KATHLEEN M. TAFOYA, United

12    States Magistrate Judge, United States District Court for the

13    District of Colorado, commencing at 11:36 p.m., October 25,

14    2016, in the United States Courthouse, Denver, Colorado.

15    _____

16            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18    _____

19                         APPEARANCES

20            LAUREN F. LOUIS, PETER SKINNER and NINA DiSALVO,

21    Attorneys at Law, appearing for the plaintiffs

22            BROOKE COLAIZZI, HEATHER VICKLES and JOSEPH

23    Attorney at Law, appearing for defendant InterExchange, Inc.

24    _____

25                    AMENDED MOTION HEARING
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 2

```
 1              APPEARANCES (Cont'd)
 2              BOGDAN ENICA, Attorney at Law, appearing via
 3  telephone for defendant Expert Group International Inc.
 4              DAVID MESCHKE and MARTHA FITZGERALD, Attorneys
 5  at Law, appearing for EuRaupair Intercultural Child Car
 6  Programs.
 7              JAMES HARTLEY, ADAM HUBBARD and JONATHAN
 8  BENDER, Attorneys at Law, appearing for Cultural Homstay
 9  International.
10              JAMES LYONS, JOAN LUKEY, JUSTIN WOLOSZ (via
11  telephone) and LYNDSEY KRUZER (via telephone), Attorneys
12  at Law, appearing for Cultural Care, Inc., d/b/a Cultural
13  Care Au Pair.
14              PEGGY KOZAL, THOMAS QUINN and BRIAN MASCHLER
15  (via telephone), Attorneys at Law, appearing for
16  AuPairCare.
17              KATHRYN REILLY, Attorney at Law, appearing for
18  Au Pair International, Inc., American Cultural Exchange,
19  LLC, d/b/a GoAuPair, Agent Au Pair.
20              SUSAN SCHAECHER, Attorney at Law, appearing for
21  American Institute for Foreign Study d/b/a Au Pair in
22  America.
23
24  _____
25
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 3

```
 1                    APPEARANCES (Cont'd)
 2             LAWRENCE STONE (via telephone), appearing for
 3    A.P.E.X. American Professional Exchange, LLC d/b/a
 4    ProAuPair, and 20/20 Care Exchange, Inc. d/b/a The
 5    International Au Pair Exchange.
 6                    P R O C E E D I N G S
 7             (Whereupon, the within electroncially recorded
 8    proceedings are herein transcribed, pursuant to order of
 9    counsel.)
10             THE CLERK:  All rise.  Court is in session.
11             THE COURT:  Good morning, everyone.  Please be
12    seated.
13             All right.  We are here today i Case No.
14    14-cv-3074.  This is Johana Paola Beltran, et al.,
15    plaintiffs, versus Interexchange, Inc., and a number of
16    other defendants.  We'll take the first hour taking
17    appearances.
18             First, may I have plaintiff.
19             MR. SKINNER:  Yes, Your Honor.  Good afternoon.
20             Peter Skinner and Lauren Louis from Boies
21    Schiller & Flexner, for plaintiffs.
22             MS. DiSALVO:  Good afternoon.  Nina DiSalvo of
23    Towards Justice, for the plaintiff.
24             THE COURT:  All right.  Thank you.
25             And, defendants, do know what order you are
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 4

```
 1   in, or you want me just to call?  Is it easier if I just
 2   call it out?  Okay.
 3                 Interexchange, Inc.
 4                 MS. COLAIZZI:  Good afternoon, Your Honor.
 5   Brooke Colaizzi and Joseph Hunt, of Sherman & Howard, on
 6   behalf of Interexchange.
 7                 THE COURT:  Is Ms. Vickles here, too?
 8                 UNIDENTIFIED SPEAKER:  (Inaudible) she is not.
 9                 THE COURT:  She's not here?  All right.
10                 For USA -- excuse me.  USAuPair, Inc.  No
11   appearance for that person.  Does anybody know, have you
12   talked to anybody on that?  I mean, do they not care
13   about these two motions or --
14                 MR. HARTLEY:   Your Honor, they are not directly
15   implicated in these motions.  I know USAuPair is a very
16   small company, so I suspect that is driving.
17                 THE COURT:  All right.  Well, we will go forward
18   without them then.  How about Great AuPair?  I don't think
19   anyone is appearing for them either.
20                 MR. HARTLEY:  I should have identified myself.
21   It's Jim Hartley, counsel for Cultural Homstay, and I think
22   the same would apply to Great AuPair.
23                 THE COURT:  All right.  So we'll just assume,
24   then, because they are smaller companies, we are going to
25   save money and not appear today.
```

Johana Paola Beltran, et al. vs.                                   Amended Motion Hearing
InterExchange, Inc., et al.                                             October 25, 2016

 1            How about Expert Group International, Inc.?

 2            MR. ENICA:  Good  afternoon, Your Honor.  Bogdan

 3  Enica here, on the phone, for Expert AuPair.

 4            THE COURT:  All right.  And thank you.  And

 5  EurAuPair Intercultural Child Care Programs.

 6            MR. MESCHKE:  Your Honor, David Meschke, on

 7  behalf of EurAuPair.  Martha Fitzgerald did not make it

 8  today.

 9            THE COURT:  All right.  For those of you who have

10  a good, loud voice, you can kind of shout it out, if you

11  don't want to run up to the podium.

12            MR. MESCHKE:  Your Honor, one correction.  Martha

13  Fitzgerald is right behind me.

14            THE COURT:  Oh, she is here?

15            MR. MESCHKE:  Yes.

16            MS. FITZGERALD:  I just walked in, Your Honor.

17  Thank you.

18            THE COURT:  Cultural Homstay International, Mr.

19  Hartley, you are here?

20            MR. HARTLEY:  Yes, Your Honor.  Jim Hartley from

21  Holland & Hart.  John Bender and Adam Hubbard are also here

22  representing Cultural Homstay.

23            THE COURT:  And Cultural Care, Inc., d/b/a

24  Cultural Care AuPair.

25            MR. LYONS:  Good afternoon, Your Honor.  Jim

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 6

 1    Lyons of Lewis Rocca Rothgerber Christie and I would like

 2    to introduce my cocounsel, Joan Lukey of  Choate, Hall &

 3    Stewart.

 4              MS. LUKEY:  Good afternoon, Your Honor.

 5              THE COURT:  Good afternoon.  Did I have

 6    appearances by (inaudible) by Cultural Care, Inc., also?

 7              MS. LUKEY:  That's the same entity, Your Honor.

 8    The d/b/a is Cultural Care AuPair.

 9              THE COURT:  And Mr. Wolosz, are you on the phone.

10              MS. LUKEY:  Wolosz.  He's supposed to be --

11    Justin, are you on?  Must've had a problem with the

12    dial-in, I guess, Your Honor.

13              THE COURT:  Okay.  And --

14              MR. WOLOSZ:  There was a problem with the phone.

15              MS. LUKEY:  There he is.

16              THE COURT:  There you are.

17              MR. WOLOSZ:  Sorry, Your Honor.  There was a

18    problem with the phone.  Yes, this is Justin Wolosz.  I am

19    here on behalf of Cultural Care, as is my colleague Lyndsey

20    Kruzer.

21              THE COURT:  All right.  Thank you.  And let's

22    see, AuPairCare, Inc.

23              UNIDENTIFIED SPEAKER:  (Inaudible), Your Honor,

24    Gordon & Ree.

25              THE COURT:  And on the phone?

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 7

 1                    MR. MASCHLER:  Brian Maschler, Your Honor, Gordon

 2    & Ree.

 3                    THE COURT:  There we go.  Okay.  All right.

 4                    AuPair International, Inc. and I think the

 5    same counsel probably represent American Cultural

 6    Exchange, LLC; GoAuPair Operations, LLC, d/b/a GoAuPair;

 7    and I think a separate entity, Agent AuPair.

 8                    MS. REILLY:  That's correct, Your Honor. Katy

 9    Reilly on behalf of all three, actually all four of those

10    defendants, Wheeler, Trigg, O'Donnell.

11                    THE COURT:  All right.  Thank you.  How about APF

12    Global Exchange, NFP, and American Institue for Foreign

13    Study?

14                    MS. SCHAECHER:  Susan Schaecher with Stettner

15    Miller Your Honor.

16                    THE COURT:  And then finally, A.P.EX. American

17    Professional Exchange, LLC and 20/220 Care Exchange, Inc.?

18                    MR. STONE:  Yes, Your Honor.  Larry Stone,

19    appearing on behalf of both defendants by telephone.

20                    THE COURT:  All right.  Does that take care of

21    everyone?  Did I miss anyone that thought they should be

22    standing up and saying, Hello?  All right. Good.

23                    THE COURT:  Okay, we're here today for

24    consideration of two motions.  The first is 337, this is a

25    motion for sanctions that was filed by Cultural Care, Inc.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 8

 1   Who's going to be arguing on behalf?

 2           MS. LUKEY:  I will, Your Honor.

 3           THE COURT:  All right.  And then the other motion

 4   that we're here on is the Motion for Protective Order No.

 5   365 that was filed by the plaintiffs.  So I'm going to set

 6   aside, first, the Motion for Protective Order -- oh, I know

 7   that's the one all of you care about the most, but I think

 8   that talking about the sanctions and this very first au

 9   pair deposition might be the practical way to proceed.

10           So I want to proceed on that first.  Are you

11   ready to go forward?

12           MS. LUKEY:   I am, Your Honor.  Thank you, Your

13   Honor.  Joan Lukey for Cultural Care.

14           This motion relates to the fact that on August

15   16th of this year, the first scheduled deposition of a

16   plaintiff in this case was to have occurred.  The

17   location was Philadelphia.  It was selected by the

18   deponent, Ms. Cardenas Caicedo, who now lives in

19   Philadelphia.  The date, as I mentioned, was August 16th.

20   That, too, was selected by Ms. Cardenas Caicedo.  At the

21   time of that deposition, there had been no earlier

22   depositions of any plaintiff, merely the deposition of a

23   private investigator, which is the subject of a different

24   motion.

25           MS. KRUZER:  When was the meeting?

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 9

1          MS. LUKEY:  On August 15th, because the scheduled

2     start time for the deposition the next morning was 9 a.m.

3     My partner, Justin Wolosz and my colleague, Lyndsey Kruzer,

4     flew down to Philadelphia to be prepared and ready to begin

5     at 9 a.m.  At about 7 o'clock that night, they receive from

6     plaintiff's counsel an additional 400-plus pages of

7     documents which they reviewed and had copied and ready for

8     the deposition the next morning.  When no one, counsel or

9     witness, had appeared by 9:30, whereas Mr. Wolosz and Ms.

10    Kruzer had been present in person and several of the

11    co-defendants present by telephone and the videographer and

12    stenographer standing by, Mr. Wolosz e-mailed plaintiff's

13    counsel and inquired as to where they were.  Received an

14    answer about 10 minutes later that she, counsel, was in the

15    building and would be up shortly.  At 9:45, Ms. Louis

16    arrived as counsel for plaintiff, but she was alone.  She

17    indicated that the deposition would not be going forward

18    that day.  She indicated that she was not in a position to

19    explain or express a reason.  I won't attempt to paraphrase

20    what she said, but stated that she would not be explaining

21    on that day why Ms. Cardenas Caicedo had decided not to

22    appear.

23          The parties went on the record, briefly, so

24    that it could be established on the record that this

25    chronology had occurred and that no reason was being

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 10

1    given.  And shortly thereafter, the deposition was

2    suspended without having occurred.  For the next several

3    weeks, efforts were made to ascertain what had happened

4    and why Ms. Cardenas Caicedo had not appeared.  No reason

5    was given.  The answer was always that they were not in a

6    position to explain at that point.  The first -- as far

7    as we are aware, the first that any of defendants, but

8    certainly that Cultural Care, was aware of any reason was

9    about six weeks later on September 26 in the evening,

10   when plaintiffs filed the motion for protective order

11   that you'll be dealing with next.

12               In that motion, they alluded to supposed fear

13   or intimidation on the part of Ms. Cardenas Caicedo, who

14   was supposedly afraid of her former sponsor, Cultural

15   Care.  Obviously, there was no one from the former

16   sponsor there, just attorneys.  The next day, the

17   opposition was filed to the motion that we're now arguing

18   before you, Your Honor.  And the same reason was stated,

19   along with an affidavit or declaration from Ms. Cardenas

20   Caicedo stating that she did not appear, she got to the

21   door of the building, was supposedly frightened and

22   afraid to come in because of her fear of Cultural Care.

23   She states in fairly inflammatory terms the reasons that

24   she felt afraid; that she was supposedly treated as a

25   commodity and the like during her tenure, none of which

Johana Paola Beltran, et al. vs.                                    Amended Motion Hearing
InterExchange, Inc., et al.                                              October 25, 2016

Page 11

```
 1    had ever appeared in any of three complaints that, by
 2    that point, were on file, although the third had not yet
 3    been allowed by the Court, nor had it appeared in her
 4    original declaration, nor had it been heard at any time,
 5    nor was it ever given to us as an explanation.  And I
 6    could tell the Court, as you have probably seen from the
 7    email exchange, if there had been a reason -- an illness,
 8    a family problem, something -- perhaps even some
 9    explanation that she needed a little more time to gather
10    herself and needed a later start, we would certainly have
11    been sympathetic to that.  But there was nothing and the
12    frustration grew because we weren't being given any
13    reason at a time when all parties were moving forward
14    with trying to do their briefing on the motions for the
15    conditional class approval, the certification, and.
16    Therefore, when we filed the motion, it was after
17    communications -- several between me and plaintiffs'
18    counsel, all of which are appended -- I believe to their
19    opposition, actually -- in which we stated that we could
20    not wait any longer, having waited some weeks and we were
21    moving, therefore, to strike Ms. Cardenas Caicedo as a
22    named representative of the punitive class.  We also ask
23    that she be dismissed from the lawsuit with prejudice,
24    meaning also with regard to being a member of the class.
25    We ask that allegations pertaining to her be stricken
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 12

 1    from the Amended Complaint.  Now it would be the Second

 2    Amended complaint and finally, we asked that reasonable

 3    fees -- costs and fees be awarded as actually required by

 4    Rule 37(d)(3) for a no-show party at a deposition unless

 5    there is justification -- substantial justification, or

 6    basically other extenuating circumstances.

 7              We submitted to the Court, my partner, Mr.

 8    Wolosz's, declaration as to the amounts.  We indicated

 9    that we did not request the amounts on the basis of the

10    Boston fees, even as already discounted by us for this

11    client, but that rather, in consultation with our

12    co-counsel, Mr. Lyons, used a Denver fee schedule,

13    feeling that would be more appropriate under the

14    circumstances and made the submission.

15              In the opposition, Ms. Cardenas Caicedo

16    acknowledges that she is not going to be -- she is out as

17    a named representative of the punitive class and we do

18    appreciate that fact.  We believe, nonetheless, it would

19    be, under the circumstances, to proceed at all -- even as

20    a member of the class, since it is apparent that, under

21    no circumstances apparently, will she be deposed and that

22    we inquired over the several weeks following the

23    deposition as scheduled, whether she would appear for a

24    new date.

25              So at this point, we believe that she should

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 13

1  be out of the case.  That leaves us then, with the only

2  issue being that of the fees.  I don't, as a lawyer,

3  enjoy asking for fees or sanctions of this type.  I don't

4  think any experienced lawyer does, but this is a

5  circumstance where we were given no advance warning.  It

6  was a circumstance where the lives of a couple of

7  partners were disrupted and there were childcare issues

8  and whatnot to do the deposition on the date that had

9  been requested by this individual.  And, frankly, most

10  compellingly, we just weren't given any reason until a

11  court filing setting forth what we consider to be

12  inflammatory and inappropriate contentions that have

13  never appeared over the course of this case, that somehow

14  Cultural Care, a State Department sponsor of the J1

15  program had intimidated her during the course of her

16  time, even though she was sufficiently fond of both her

17  host family and her experience, to extend six months

18  after her original year.  We find the declaration

19  unfortunate, inflammatory and highly incredible under

20  those circumstances.

21           We ask, at this time, as 37(d)(3) anticipates,

22  that the fees and costs be awarded both for the aborted

23  deposition and an amount to be determined for what it has

24  taken to bring this motion before the Court.

25           We recognize that in the opposition, there is

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 14

1    a contention that Ms. Cardenas Caicedo can't afford to

2    pay the funds.  We understand that.  The rule states that

3    either the party or the party's attorney.  This case is

4    an extremely expensive case in which the plaintiffs are

5    claiming $400 million a year in damages for seven years

6    before traveling, it is being -- apparently the costs are

7    being borne by (inaudible).

8              Respectfully, Your Honor, under these

9    circumstances, it ought not to be Cultural Care that has

10   to bear this burden of these costs.  This is a drop in

11   the bucket, I'm sure, compared with the costs that are

12   being incurred otherwise and fronted by (inaudible) and

13   we ask that the fee award be made against (inaudible)

14             Thank you, Your Honor.

15             THE COURT:  Thank you.  And who will be

16   responding for plaintiff?

17             MR. SKINNER:  Peter Skinner for plaintiffs, Your

18   Honor.

19             THE COURT:  Okay.

20             MR. SKINNER:  And if you'd -- so first of all,

21   Your Honor, I don't think we have much issue with the

22   factual recitation that was offered by Ms. Lukey.  She

23   obviously doesn't have the perspective of having heard our

24   client's side of this and those conversations are

25   privileged in any event, so I'm not going to get into them

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 15

1    today.  But I think most of what she laid out is right and,

2    really, with respect to why she didn't appear, it's simple.

3    As we said in our paper, she was overwhelmed by fear and

4    emotion at the threshold of appearing for this deposition.

5            THE COURT:  You haven't told me any reason why

6    she would be fearful.

7            MR. SKINNER:  Well, she --

8            THE COURT:  Your papers have nothing in them.

9    Only that she was mistreated and she thought she was a

10   commodity.  And that's all we've heard and I think all

11   deponents are a little bit fearful.  I think I would be, if

12   I was going to be a deponent.  You're nervous and fearful,

13   you don't want to say the right -- the wrong thing.  You're

14   prepped.  I understand that, but I don't think you can

15   argue fear and intimidation.  From what?

16           MR. SKINNER:  Well, Your Honor, I agree with you.

17   I think anybody undergoing a deposition is put in a

18   stressful situation.  I think the plaintiffs in this case

19   are in a uniquely stressful situation.  They're all

20   foreigners, they're all young, they have no experience with

21   the US legal system and they're taking on their former

22   employers, alleging that they weren't paid enough by their

23   former employers.  They are taking on what they view as an

24   entrenched institution of power that, as was explained in

25   Ms. Cardenas' declaration, she had viewed as somebody who

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 16

 1   would really exercise a lot of control over her.  Now she

 2   appeared for the deposition; she said she simply couldn't

 3   go forward.

 4        THE COURT:  Well, she didn't really appear.  She

 5   didn't come in --

 6        MR. SKINNER:  She made it to the building, Your

 7   Honor.

 8        THE COURT:  And say, I can't go forward.

 9        MR. SKINNER:  The point here, for sanctions, is

10   -- you know, if she had decided two weeks ahead of time I'm

11   not doing it and we had sat on that information and we had

12   forced everybody to show up at great expense -- and mind

13   you, this was at expense to us as well.

14        THE COURT:  Mhm.

15        MR. SKINNER:  Ms. Louis flew up from Florida.  We

16   spent hours the day before preparing this woman.  We

17   reviewed hundreds of pages of documents to produce to them.

18   She's a named plaintiff for a class that we're seeking to

19   certify.  By no means were we taking this lightly or that

20   we had any intention that this plaintiff was not going to

21   appear for her deposition.  And we did everything we could,

22   Your Honor, to try to get her to appear.  But on the

23   morning of, she said she couldn't do it.  It's mid-August;

24   she said I just can't do it.  What are we supposed to do?

25   Put her on behind our back?  Walk her into the deposition,

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 17

 1   force her to undergo what she says she can't do?

 2          THE COURT:  Well, walking her into the deposition

 3   is probably a good idea.  You're the only people, if you

 4   had -- and I don't want to know, because I don't want you

 5   to tell me anything that's privileged, that you talked to

 6   her the day before and that is the time to ascertain

 7   whether or not you've got a really skittish witness or a

 8   person who may not appear.  And if that's the case I think,

 9   as an attorney, you have an obligation to go pick her up

10   and drive her to the thing.

11          Now, can you twist her arm and make her

12   testify?  Could she have dissolved there on the -- at the

13   witness table?  And, you know, everything could have

14   blown up right then and there, which it probably would

15   have, that you can't do anything about --

16          MR. SKINNER:  And that's what happened, Your

17   Honor.

18          THE COURT:  But you're the only people that could

19   have known how she was feeling.

20          MR. SKINNER:  But that's exactly what happened.

21   I mean, the only thing in the recitation Your Honor just

22   gave that we did not do was go and pick her up, you know.

23   And I don't want to testify incorrectly here.  I'm not a

24   witness and I wasn't even there, but my colleague was

25   staying at a hotel near where the deposition was and had

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 18

 1    ascertained that the deponent was going to get herself

 2    there.  And if we had reason to believe on the evening of

 3    August 15th, that what happened on the 16th was not going

 4    to happen -- was -- that she was going to refuse to go into

 5    the room, she was going to make it to the building, drive

 6    herself a half hour from the suburbs of Philadelphia into

 7    downtown Philadelphia for the deposition, park her car,

 8    walk to the lobby of the building, meet the attorney who

 9    had prepared her to go in and then say, I'm sorry, I just

10    can't do it -- if we could have read a crystal ball and

11    foreseen that, then we would have told these folks.  But we

12    thought, in good faith, that although she was a skittish

13    witness -- a very skittish witness -- you know, like I

14    said, I'm not going to get into the privileged

15    conversations we had with her.  But we thought, in good

16    faith, that she would appear and she got awfully close,

17    Your Honor, and she was right there.  And like I said, we

18    made a decision that we were not going to force her to go

19    into the room, because this was a young woman who was

20    really beside herself and there wasn't really any point to

21    it.  And she made it clear that she was not going to be

22    able to go forward at that time --

23            THE COURT:  Well, do you feel like -- without

24    asking you what you said to her, don't you feel like that

25    you had some responsibility on advising her that this could

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 19

 1   happen, that she could get stuck with the fees and costs of

 2   the other side?

 3           MR. SKINNER:  I'm not going to get into what we

 4   said.  And I hope that nobody argues that what I'm doing

 5   right now is a waiver of the attorney-client privilege, but

 6   I can say that we took every effort to impress upon our

 7   client the seriousness of this proceeding, the seriousness

 8   of what she had signed up for as a named plaintiff in this

 9   lawsuit, the commitment that she had made, both to the

10   attorneys who were prosecuting this suit, as well as to all

11   of the other au pairs she was seeking to represent and that

12   she had to go forward with the deposition.  It was not

13   presented as like, Okay, you can show up and see how you

14   feel and she decided -- she couldn't do it.  She was

15   overcome, she was overwhelmed.  That happens.

16           I don't think it happens often, I'm not saying

17   that this is a routine occurrence, but it does happen.

18   And I think in the circumstances in which this young

19   woman found herself, it's not completely difficult to

20   comprehend how she might have been overwhelmed.  Now,

21   this was mid-August.  A lot of people were on vacation.

22   Some of the lawyers working on this case were on

23   vacation.  Ms. Lukey said that if she had gotten an

24   explanation as to why this had happened, maybe that would

25   of changed things.  I don't know, maybe we can all look

Johana Paola Beltran, et al. vs.                                    Amended Motion Hearing
InterExchange, Inc., et al.                                              October 25, 2016

Page 20

```
 1   back, right now, and say that's true.  I have no idea.  I
 2   don't know if we had told her, She's really afraid of
 3   your client and she just can't face you in a deposition
 4   room, I don't know if that would have changed things or
 5   not.  She would have said probably what we were thinking,
 6   which is she made an obligation, she has to go through
 7   with it.  But we had hoped that she might come around and
 8   that we might be able to salvage this situation where she
 9   could proceed with her claims and the rest of the
10   depositions started and we continued to be in touch with
11   this young woman in an effort to try to first, see how
12   she was doing and, second, see if there was any way to
13   try again.  And she asked us what was happening in the
14   other depositions and, again, without getting into the
15   conversations that we had with our client, I can say that
16   we couldn't tell her, in good faith, that the depositions
17   were going to be limited to her professional work as an
18   au pair.  Not given what had been happening in the
19   depositions.  We couldn't give her that assurance and we
20   sent her transcripts so she could read how these
21   depositions were going.  We asked her to reconsider, to
22   do everything -- you know, to take a deep breath, to
23   reset, to try to see if she could do it again.  And
24   ultimately, even after the motion for sanctions had been
25   filed, which I think was at the very end of August, she
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 21

1   ultimately made the decision, prior to the time that we

2   filed our opposition to the sanctions motion, that she

3   unfortunately just could not go forward.  And that's why

4   when we did respond to the sanctions motion, we said, We

5   agree, she's going.  Complaints against her should be

6   dismissed and we believe they should be dismissed without

7   prejudice, but we'll get to that in a moment.

8           But really, the ultimate sanction for any

9   plaintiff who is trying to pursue a claim against the

10  defendant is the loss of their claim.  That sanction is

11  here.  It's done.  We all agreed to it and we fully

12  expect the Court to dismiss Ms. Cardenas' claims against

13  Cultural Care.  So all we're talking about is the money

14  and who should bear the expense for the unfortunate

15  situation that Ms. Cardenas found herself in where she

16  was unable to overcome a flood of emotion that prevented

17  her from going into the room for her deposition.  Now a

18  couple of things that I want to add to what we've had in

19  our briefing and respond to what Ms. Lukey said, because

20  I think they're relevant to the consideration of who

21  should bear the expense.

22          First, as I noted before, this is not a

23  situation where we have somehow not expended any money on

24  this deposition and they have and as a result of our

25  client's actions, they're out money and we're not.  We've

Page 22

1  expended time and effort on this.  As we can get to in a

2  moment, I don't think quite as much time as they did,

3  because they seem to have expended an awful lot of time

4  preparing for this one deposition, but we'll put that

5  aside for a moment.

6         THE COURT:  But you picked her, right?  I mean,

7  you're the one who picked her as the plaintiff

8  representative.  You -- I don't know who you had a choice

9  of or if there -- you know, I don't know how you make those

10 choices, but you're the one that put her in as a plaintiff,

11 as a named plaintiff.  Not Cultural Care.  Cultural Care

12 has nothing to do with it, except that they've got to

13 defend against it, right?

14        MR. SKINNER:  That's right, Your Honor, and I

15 think that's a different point.  The one I'm making, which

16 I don't think is a particularly overall important point of

17 the overall calculus, but it's just one to simply note that

18 this is not a situation where there's been money expended

19 by one side but not another.  We're talking about money.

20         With respect to picking a plaintiff, first of

21 all, these plaintiffs tend to pick themselves.  You know,

22 I mean, you can't just go out on the street and grab

23 somebody and say, Hey, we think you'd make a nice

24 plaintiff.  And we can't go out on the internet and find

25 people that we think are going to be strong enough to go

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 23

1    through with this and hunt them down and hope that they

2    have -- that they were au pairs and that they had an au

3    pair experience and everything else.  And I mean, to a

4    certain extent, these people select themselves.  And

5    certainly, when you're talking to a plaintiff, a

6    potential plaintiff, you analyze them like you would any

7    other client, because you're signing on to represent

8    these individuals.  And particularly in a case like this,

9    where -- you know, where we're proceeding as a class

10   action and there's some risk being taken on the other

11   side with respect to investment in a case that you might

12   lose down the road, you do everything you can to make

13   sure that you identify folks who are going to be able to

14   be adequate and effective class representatives, add

15   something to the prosecution of their case and see the

16   case forward.  And we certainly thought, when we had

17   agreed to represent Ms. Cardenas, that she fit into that

18   category.  Now, it ultimately proved that when push came

19   to shove and she had to appear for a deposition, she

20   wasn't able to go through with it, but I don't think that

21   there was anything in the introductory stages of our

22   relationship with this particular client that that's

23   where we were headed down the road.  If there were, we

24   wouldn't have put her forward.  It wouldn't have made any

25   sense, from our perspective, to get as far as we got and

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 24

1   then lose one of our named class representatives.  Two
2   years into the litigation, Your Honor.  And this is not
3   something that we, by any means, you know -- agreeing to
4   dismiss her out of this case is not something that we've
5   done lightly and we would prefer, very much, to have her
6   as an additional class representative, but we can't force
7   this young woman to do what she needs to do, which is sit
8   for her deposition.  And we haven't come forward and made
9   any kind of argument that she should be able to proceed
10  without being deposed.  We agree, if she's going to go
11  forward, she needs to sit for her deposition and she
12  hasn't been able to do that, but with respect to who
13  should bear the cost for this, you know the law is clear
14  -- well, first of all, I disagree with the suggestion
15  that it's mandatory.  That these costs need to be borne
16  by either the either plaintiff or the defense counsel or
17  both.  I actually think this rule is written in an
18  inconsistent way in that the rule says that sanctions are
19  permissive as an overall matter and that "shall" that is
20  contained within the subclause, with respect to the cost
21  borne when somebody doesn't appear for the deposition is
22  inconsistent with that overall precept that sanctions
23  should be permissive.
24              THE COURT:  But somebody's got to bear the cost.
25  I mean, if it's not plaintiff's counsel and it's not

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 25

 1    plaintiff herself, then it's going to be Cultural Care.

 2            MR. SKINNER:  That's right.  And you know what,

 3    Your Honor, for the investment in the cost for what they've

 4    got, they've actually gotten a great result.  They've got a

 5    plaintiff that is no longer a part of the case.  They've

 6    dismissed a named plaintiff out of the case.  It would have

 7    cost them more money, going forward, if she had appeared

 8    for the deposition.  It would have cost them more money to

 9    go through with the deposition itself.  It would have cost

10    them more money to continue litigating against this young

11    woman.

12            So, look, yeah, they would have -- if you're

13    not going to put it on the plaintiff and you're not going

14    to put it on the plaintiff's law firm, the only other

15    person bearing this cost is the defense counsel.  And

16    yes, they have to bear that.  But at the end of the day,

17    it's actually a lot less than they might be spending

18    otherwise and they have been spending money to defend

19    this case.  That's part of being involved in a lawsuit.

20    That's part of losing your motion to dismiss.  We have

21    presented sufficient claims to go forward with discovery.

22    And as a result, there is going to be some cost borne by

23    the defendants and with respect to this particular

24    plaintiff, the overall cost has not been exceedingly

25    high, given the outcome that they've managed to get for

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 26

 1    their client, which is a dismissal of the plaintiff,

 2    although this case has been pending for awhile at a

 3    relatively early stage in the overall proceeding.  The

 4    law from the 10th Circuit, and we cite it in our brief at

 5    page 10, is clear that just because the plaintiff's

 6    lawyers may have the means to pay a sanction in a

 7    situation where the plaintiff herself might not otherwise

 8    be able to do it doesn't mean that you just look to them

 9    to make this whole.  You look to try and ascribe fault in

10    an unfortunate situation like this.  And, frankly, Your

11    Honor, there was nothing else that we could have done to

12    avoid this particular situation.  Like I said before, we

13    had no notice well in advance.  We couldn't have nipped

14    this in the bud weeks in advance and just said, You know

15    what, Ms. Lukey, stand down on Ms. Cardenas, because it

16    doesn't appear she's going to go through with it.  We

17    didn't have that.  The day before, the night before, we

18    had every indication that she was going to appear for

19    this deposition and we were hopeful that it was going to

20    go forward and at that point, even if we had been able to

21    pull the plug, most of the damage would have been done.

22    I mean, everybody's there.  People have flown from Boston

23    to Philadelphia, they've done their 58.7 hours of prep

24    work, or whatever it might have been.  You know, the only

25    thing that we could have saved, I guess, was the 1.3

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 27

 1   hours of billable time for both the videographer and the

 2   court reporter the next day.

 3          So, yes, obviously it would have been

 4   preferable if we could have saved that and perhaps sent

 5   people home that evening, but we didn't have any reason

 6   to.  And if we did, we would have told folks and we would

 7   have tried to nip this in the bud and we would have gone

 8   about our lives as well.  Because, like I noted, we were

 9   in the same situation where we had traveled in from out

10   of town in order to prepare this woman for her deposition

11   and to appear for it.

12          So I really don't think that under any fair

13   reading of the applicable 10th Circuit law here, you can

14   just say, Not really fair for them, she's your client,

15   you guys should pay for it.  That's not the way this

16   works.  And I think, as I noted before, an overall

17   calculation of fairness, whatever that might be, you

18   should take into consideration, the result that they got

19   as a result of the money they spent to prepare for this

20   deposition.

21          Also, I guess just with respect to the scope

22   of the award that they're asking for, I don't -- similar

23   to Ms. Lukey, I really don't relish arguing about another

24   lawyer's hours or fees.  I really don't want to fly-spec

25   this.  I do think that the amount of time that they spent

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 28

1   on this was high.  I think if you ask most people, Did

2   you spend nearly 60 hours preparing for a deposition of a

3   plaintiff, that's probably toward the high range.  High

4   end of the range.  Now they're thorough lawyers, I'm sure

5   they wanted to make sure they were ready to go and they

6   were going to ably represent their client, but it's a bit

7   high.

8               I also think that the way this broke was

9   unfortunate in that it's actually just ratcheted the

10  costs up.  And we were talking to them.  Apparently, they

11  didn't like the fact that we weren't telling them the

12  reason she wasn't appearing.  The reason we weren't

13  giving them that reason was because we were still hopeful

14  that our client might be able to appear for a deposition

15  in the near future and, you know, we hadn't ruled that

16  possibility out.  We were also in the second half of

17  August -- we were really talking about two weeks, here,

18  Your Honor, August 16th until they filed their motion,

19  which was, I think, August 30th.  August 31st.  So we're

20  talking about two weeks here.  People are on vacation, we

21  were trying to talk to them.  We'd asked them what they

22  thought a reasonable amount of fees might be so that we

23  could try and ascertain whether it was just worth our

24  while to write a check and be done with this.  But in the

25  middle of all that -- well, I shouldn't even say the

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 29

 1    middle of all that, because it's really the beginning of

 2    all this.

 3              I mean, Your Honor, the first day that there

 4    was a discussion about what their fees might be was a

 5    Friday afternoon and they said, Well, we're going to

 6    move.  We have our motion ready.  We're going to move

 7    today.  And that is not indicative of somebody who is

 8    trying to work things out.  That's indicative of somebody

 9    who's decided of going to Court to get relief, has

10    already written a brief, even before we've had any back

11    and forth.

12              Matthew Schwartz, who's the lawyer from my

13    firm, that had been talking to Ms. Lukey -- I was even

14    further out of town than Matthew at that point in time.

15    He was on vacation, but he interrupted his vacation to

16    talk to her.  And we got all this pressure, trying to

17    resolve this right away.  And it's kind of, I think,

18    really false sense of urgency to try and put this to bed

19    right away.  And it doesn't make -- it didn't a lot of

20    sense then and it still doesn't make sense to me now.

21    They didn't file their opposition to our motion for

22    conditional class certification until weeks after that.

23              So the idea that they had to have an immediate

24    answer with respect to what her situation was and how the

25    attorney's fees were going to play out in all of that, it

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 30

1  didn't make a lot of sense to us then and it still

2  doesn't now.  And because they then elected to go forward

3  and move for sanctions and all of that, they put into

4  place a procedure, you know, that perhaps has been more

5  expensive than it needed to be.

6          So big picture, Your Honor, I think this

7  situation is regrettable and I certainly know, from the

8  perspective of the plaintiffs, we would prefer to have

9  Ms. Cardenas going forward.  You know, having sat for her

10  deposition and being considered as a potential class

11  representative, I also regret the time and effort and

12  money that was spent on the defense side of this in order

13  to prepare for this deposition, but I do not think that

14  the right result here is to impose a financial burden on

15  our client, because she simply can't pay.  And I really

16  don't think that bankrupting her at this point with a

17  judgment is the just result.  And I also don't think

18  that, given the way these facts played out and given the

19  timing of this situation and everything else, that you

20  can look to us to write a check in this situation.  This

21  is a situation that, unfortunately, must be borne by the

22  defense and they've gotten, as I've noted, a pretty good

23  return for their investment.

24          THE COURT:  All right.  Thank you.  Ms. Lukey?

25          MS. LUKEY:  I will be brief, Your Honor.  As I

Johana Paola Beltran, et al. vs.                                    Amended Motion Hearing
InterExchange, Inc., et al.                                             October 25, 2016

Page 31

1   mentioned earlier, a key factor for us was the continuing

2   unwillingness of the plaintiff's counsel to tell us either

3   why Ms. Cardenas would not appear or whether she would be

4   available at a different date.  A certain amount of

5   frustration builds up in that process as you're in the

6   midst of attempting to respond to the conditional class

7   certification motions, particularly in a circumstance where

8   there were and remain -- there were only two and now only

9   one Cultural Care plaintiffs in the mix.

10          THE COURT:  What size is Cultural Care, are you

11   one of the bigger sponsors?

12          MS. LUKEY:  We are, Your Honor.  We're the

13   largest.

14          THE COURT:  You're the largest?

15          MS. LUKEY:  Yes.

16          THE COURT:  Okay.

17          MS. LUKEY:  However, not getting an answer was

18   very concerning for us.  We already knew there were issues

19   relating to the appropriateness of the other plaintiff

20   that's a subject of other motions.  And with this

21   plaintiff, we then needed to know whether someone who might

22   otherwise have been appropriate if a conditional class were

23   to be certified, was in or out and we could not get a

24   response.  It is not adequate to finally respond six weeks

25   later in the form of filing a motion for protective order

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 32

 1   the evening before you file your opposition.  That's not

 2   how it works between counsel.  If they're about to reveal,

 3   on October -- sorry, September 26 and 7 that she was

 4   supposedly in fear of a sponsor who wasn't physically

 5   present, there were only two young attorneys present with a

 6   videographer and stenographer, then that should have been

 7   made known to us before we read it in a motion for

 8   protective order that seemed to imply that part of Ms.

 9   Cardenas' problem was the conduct at other depositions,

10   which you'll hear about shortly from others, which hadn't

11   occurred when she didn't show up.  Hers was the first.

12            I will close simply by reading the language of

13   Federal Rules Civil Procedure 37(d)(3), which is the one

14   applicable to no shows, failure to answer and the like.

15   Quote:  The Court must require the party failing to act,

16   the attorney advising that party or both, to pay the

17   reasonable expenses, including attorney's fees caused by

18   the failure unless the failure was substantially

19   justified or other circumstances make an award of

20   expenses unjust.  Three -- quote/close quote, three quick

21   points.  There's been no challenge in the papers and no

22   counter-declaration to Mr. Wolosz's declaration on the

23   reasonableness of the fees.

24            We are hearing this contention about the --

25   perhaps, unreasonableness of the preparation time, which

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 33

1   I am surprised to hear because it is not, certainly, out
2   of line in my experience for the first named plaintiff in
3   an action to require 57 hours of preparation.  But that
4   has not been challenged, there is no counter-declaration
5   on the issue of reasonableness.
6            Point two, the only way that mandatory -- that
7   phrase is "mandatory," that particular phrase.  The
8   37(d)(3) relief is mandatory, only two circumstances
9   excuse it.  That the failure was substantially justified.
10            Respectfully, Your Honor, we have these very
11  first time contentions of conduct that apparently somehow
12  frightened this young woman, with no explanation as to
13  what that conduct was, who did it or why it was she found
14  it frightening and why it would frighten her now, all
15  this time later, to be deposed by two attorneys who are
16  not that sponsor, certainly has not been made clear to
17  this Court or to Cultural Care.
18            And,  threeother circumstances making an award
19  of expenses unjust.  Someone has to bear these expenses.
20  I've already indicated to you we understand Ms. Cardenas'
21  declaration that she does not have the wherewithal to do
22  it.  And I have already said to you, Your Honor, and I
23  will close by saying again:  If that is the case, the
24  plaintiff's law firm, which is bearing substantial cost
25  in this case, is the preferable bearer of this burden to

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 34

```
 1    the innocent defendant at issue here.

 2              Thank you.

 3              THE COURT:  All right.  Well --

 4              MR. SKINNER:  Your Honor, may I say one thing --

 5    not in response to anything Ms. Lukey said, because I don't

 6    want to get into a back and forth.  I failed to address one

 7    point before I sat down.

 8              THE COURT:  Go ahead.

 9              MR. SKINNER:  And it's with respect to dismissal

10    with prejudice.  We can respond on that.  If Your Honor

11    isn't contemplating that, then I won't belabor anybody.

12              THE COURT:  I don't think you need to belabor

13    that with me.  I think you're going to need to belabor it

14    with Judge Arguello, right?  That you have?

15              MR. SKINNER:  That's right, Your Honor.

16              THE COURT:  Yeah, I think that's who you're going

17    to have to --

18              MR. SKINNER:  But let me just quickly respond

19    then.  I'm sorry, Your Honor, I was thinking all about the

20    dollar signs and what matters most for our client is this

21    dismissal with prejudice or without.  The law is clear that

22    dismissal without prejudice is the ultimate sanction, a

23    last resort.  The factors that are outlined in the case

24    laws as being in favor of it don't weigh in favor of it.

25              THE COURT:  Well, maybe I didn't make myself
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 35

 1    clear.  I'm not going to dismiss with prejudice.

 2           MR. SKINNER:  Okay.  But you're saying -- I

 3    thought you were saying you might want to preserve your

 4    record in some way--

 5           THE COURT:  Number one, I can't dismiss.

 6           MR. SKINNER:  We'll just rely on what we have in

 7    the brief.

 8           THE COURT:  All right.

 9           MR. SKINNER:  Thank you, Your Honor.

10           THE COURT:  Maybe I'll put the cart before the

11    horse.  I have, as the last part of what I think should be

12    considered in connection with these sanctions, that I am

13    going to recommend to the district court that Ms. -- and

14    I'll just say her full name for the record -- I think it's

15    pronounced, Dayanna Paola Cardenas Caicedo, be dismissed

16    from the case.  I am not going to make a recommendation of

17    prejudice or not prejudice because I seldom ever do that

18    with the district court.  I think that's up to the district

19    court, how they do a dismissal.  So the minutes from today

20    will say that there's a recommendation of the magistrate

21    court.  My understanding is that no one objects to

22    dismissal, but you may want to make an argument in your --

23    and I'll call them objections, just because that's the way

24    the rule's written.  So there'll be a recommendation

25    effective today.  You may want to address as part of any

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 36

1  objections or other thoughts to Judge Arguello your request

2  that she be dismissed without prejudice and obviously

3  defendants that should be dismissed with prejudice.  That's

4  going to be Judge Arguello's call, okay?

5          So -- and this is just a reminder, just so the

6  record is clear that since this is a dispositive motion,

7  recommendation, you have 14 days to file your objections

8  or additions or whatever -- however you want to call

9  them -- with respect to the recommendation of dismissal.

10          Now the attorney's fees, however -- the motion

11  for sanctions has been referred to me and that includes

12  the consideration of attorney fees, so that I'm not doing

13  by recommendation, I'm doing by order and just -- there's

14  no real set 14 days that goes with an order from a

15  magistrate court.  But obviously you do have a right to

16  object to that too.  It's just that the burden is

17  different on that -- so it's clearly erroneous or

18  contrary to law, okay?

19          So I think it's not contested, and I didn't

20  hear anything different today that Ms. Cardenas -- her

21  deposition was duly scheduled, properly noticed and in

22  spite of this, Ms. Cardenas did not appear at the

23  deposition.  Now there has been testimony she appeared at

24  the door, but I don't consider that appearing for the

25  deposition.  And in fact, the -- what I've heard in

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 37

1    argument is that the attorney for plaintiffs may have met

2    her at the door and talked to her that morning.  That is

3    a little bit unclear to me but, for sure, the other

4    attorneys for Cultural Care were sitting in the room just

5    waiting and not knowing what was going on.

6         MR. SKINNER:  And, Your Honor, apologies for

7    interrupting, but to make it clear:  That's precisely what

8    happened.  The plaintiff, Ms. Cardenas, met Ms. Louis at

9    the building where the deposition was to go forward and

10   said she was unable to go upstairs and go forward with the

11   deposition.

12        THE COURT:  Okay.  So I'm glad I heard that

13   right, then.  The deposition date and location in

14   Philadelphia was picked by the deponent, apparently, Ms.

15   Cardenas.  Both counsel had to travel and incur cost,

16   airplane cost and probably hotel cost, et cetera, although

17   I don't know for sure what plaintiff's cost were.  They've

18   been represented that she did travel and was staying in a

19   hotel.  Her deposition, Ms. Cardenas' deposition, was the

20   first one scheduled of the named au pairs seeking to

21   represent one or more of the classes in this case and,

22   therefore, the Court thinks, and will find, that

23   preparation time for this particular deposition would

24   probably be longer than for subsequent depositions.  That

25   may or may not be true.  Everyone has their own way of

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 38

1    preparing, but given that it's the first one and the first
2    time to really test the allegations of any of the
3    complaints, I think it's reasonable that there would be a
4    considerable amount of effort put forth, especially by -- I
5    won't call them the lead defendant, necessarily, but the
6    largest of the defendant sponsors.  So the amount of time
7    that was submitted in the time cards, although I will get
8    to that later, is not particularly surprising to me.
9             Ms. Cardenas' allegations that Cultural Care
10   was intimidating and demeaning to her while she was an au
11   pair are not supported by any evidence whatsoever.  Not
12   even anecdotal evidence from Ms. Cardenas herself.  There
13   is no evidence before the Court at all of any
14   intimidation or anything.  Now I can't say there's
15   evidence before the Court that there wasn't any either.
16   There's just not any evidence.  So her excuse for not
17   appearing has, at least to this Court, and what's been
18   presented to me, has absolutely no excuse at all.  None.
19   I mean, she just didn't show up.  Well, she showed up at
20   the door, apparently, but then refused to participate.
21   So I've heard nothing to suggest that Ms. Cardenas was in
22   any way treated improperly by Cultural Care while she was
23   an au pair.
24             The evidence that was, and I put that in
25   quotes, submitted by plaintiff's counsel with respect to

Johana Paola Beltran, et al. vs.                                    Amended Motion Hearing
InterExchange, Inc., et al.                                              October 25, 2016

Page 39

```
 1   other depositions of au pairs which occurred subsequent
 2   to Ms. Cardenas' willful failure to appear, really has no
 3   relevance to Ms. Cardenas' so-called reasons for her
 4   failure to appear for her deposition or any supposed
 5   intimidation.  And as I said to you earlier, I recognize
 6   that being deposed, although I've never been deposed, I
 7   can't imagine it's a pleasant experience and I don't
 8   think people would look forward to it.  I think they'd be
 9   nervous, but what we're talking about is an utter failure
10   on her part to do what she said she would do and what she
11   was prepped by her counsel to do, et cetera.
12             I mean, this was a -- this particular
13   deposition was a big deal, being that it was first.
14   Counsel for Ms. Cardenas, I believe, is under duty to
15   ensure that Ms. Cardenas was fully prepared to be a class
16   representative in this case.  I am not suggesting any
17   type or order of preparation for a deposition, that's not
18   what I'm talking about.  I'm talking about -- I'm talking
19   about the preparation that must have been -- or should
20   have been made by plaintiff's counsel to make this
21   person, who is from a foreign country and has been
22   represented as being, I think, 25 years old now, so
23   pretty young -- although, this only happened a few months
24   ago -- prepared for what she's getting into, before they
25   take on the whole class with her as a class
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 40

1  representative.  I also think that counsel for Ms.

2  Cardenas -- and I'll find this, too -- is obligated to

3  ensure that their first class representative would appear

4  for a deposition as scheduled.  And as I had mentioned

5  earlier, if that meant picking her up and driving her

6  there, then that should have been done.  Counsel spent

7  the day before the scheduled depositions with Ms.

8  Cardenas and had ample opportunity to ascertain whether

9  or not Ms. Cardenas was fearful or so fearful that her

10 appearance was going to be a problem.  And they were the

11 only ones that could have really predicted that in the

12 scheme of things.

13           Counsel is the one that was there with her.

14 Again, as I noted, no credible explanation for her fear

15 was presented to the Court, just some random reason why

16 she apparently felt fearful.  I don't know why.  The

17 Court, as will be expressed later during the hearing on

18 the motion of protective order, has not seen any evidence

19 of intimidation tactics having been employed by

20 defendants while deposing the punitive class

21 representative, other than a few questions concerning

22 immigration status, which the Court specifically forbade,

23 once I was contacted about it.  Other than that, I really

24 haven't seen intimidation.

25           Now, it begs the question of improper

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 41

1   questions, et cetera, that we're here to talk about

2   later, but intimidation, no.  Additionally, the evidence

3   now known to the parties concerning the treatment of

4   other class representatives while they were au pairs is

5   really irrelevant to the Court's finding of substantial

6   justification concerning Ms. Cardenas' failure to appear

7   and sit for her pre-arranged depositions.

8              In other words, what may have happened to Ms.

9   Jimenez, for instance, in her au pair duties, you know,

10  her relationship with the host family, et cetera, just

11  doesn't make any difference here, because there's no

12  evidence that Ms. Cardenas went through the same thing.

13  From what everyone is telling me, there's -- I may have

14  the number wrong, but there's at least 30,000 au pairs

15  that may have been involved and the fact that a few of

16  them get a problem host families, if that's what

17  happened, is not too surprising.  People being people,

18  they're not all going to get along and not everybody's

19  going to be as good as others, including the au pairs and

20  the host families.

21             So I don't think that that bears on any

22  substantial justification for Ms. Cardenas' failure to

23  appear.  So I am going to find that there was no

24  justification at all for Ms. Cardenas' failure to sit for

25  and appear at her deposition scheduled at her convenience

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 42

1    in both place and time.

2           So when determining proper sanctions, though,

3    for this kind of behavior, the Court just has to consider

4    a number of factors, including the degree of actual

5    prejudice to the opposing party, in this case the

6    defendants; the amount of interference with the judicial

7    process; the culpability of the deponent, whether the

8    Court warned the defaulting party in advance that

9    dismissal of the action would be a likely sanction for

10   non-compliance and the efficacy of lesser sanctions --

11   and obviously, I'm paraphrasing from (inaudible) v.

12   Reynolds 965 2nd 916 and page 912.  That's a 10th Circuit

13   case, 1992.

14          So I looked at, first of all, the sanctions

15   that are provided for in Rule 37(d)(2), since those are

16   permissive in this case.  And they include directing that

17   the matters embraced in the order or other designated

18   facts be taken as established for purposes of the action

19   as the prevailing party claims and/or prohibiting the

20   disobedient party from supporting or opposing designated

21   claims or defenses or from introducing designated matters

22   in evidence and/or striking pleadings, in whole or in

23   part, and/or staying further proceedings until the order

24   is obeyed and/or dismissing the action or proceeding, in

25   whole or in part, and/or rendering a default judgment

Johana Paola Beltran, et al. vs.                                    Amended Motion Hearing
InterExchange, Inc., et al.                                         October 25, 2016

Page 43

1   against the disobedient party and/or treating as contempt
2   of court, the failure to obey a court order, which
3   actually is not part of this case, because this just
4   comes under a different section than disobeying a court
5   order.  I think that imposition of those sanctions
6   appears to be permissive under Rule 37(d)(i), a small i.
7   Because they say -- the word "may" is used and I agree
8   with plaintiff counsel that the rule itself seems to be a
9   little bit jumbled, if you will.  It's kind of -- it's a
10  little bit hard to figure out exactly what is permissive
11  and what is mandatory.  However, the rule clearly states
12  that assessment of cost for failure to appear at your own
13  deposition, in addition to, or in lieu of these
14  permissive sanctions is mandatory.  And that's how I read
15  it.  So I think costs are mandatory when someone does not
16  show up for their own deposition, unless there are
17  circumstances -- in this case, it would be unless there's
18  other circumstances which makes an award of expenses
19  unjust.  So either it's got to be substantially
20  justified, which I already found it was not, or there's
21  got to be some showing that an award of expenses is
22  unjust and unjust is kind of the key word here.  Simply
23  because someone is unable to pay, because they don't have
24  a very good job or whatever doesn't make an award unjust.
25  It may make it uncollectable, it may make it hollow

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 44

```
 1   judgment; but it doesn't make it unjust.  And there's
 2   nothing unjust in assessing damages or an award of cost
 3   -- not damages, but an award of cost and expenses against
 4   a person that doesn't show up when they're the plaintiff
 5   in a case and it's their case and they're supposed to be
 6   there for a deposition and they've got a myriad of
 7   attorneys there -- there were a number of attorneys on
 8   the phone.  And while they didn't incur airplane costs,
 9   their time and effort was expended sitting there, waiting
10   for this -- an important deposition.  The first one.  So
11   I think that an award of attorney fees and costs are
12   mandated here.  So we're down to the issue, which I know
13   all of you know in who should bear the expense, who is it
14   that should do it?  And I don't think it's ever been the
15   law that the person with the most money should do it.
16   Just because a defendant -- for instance, in this case,
17   is the largest of the sponsors and may presumably have
18   more money than Ms. Cardenas, doesn't mean that they
19   should bear the cost of something that they didn't do.  I
20   mean, all they did is show up and do what they were
21   supposed to do.  And plaintiff's argument is,
22   essentially, that, So did we.  You know, we attorneys for
23   the plaintiff class, which includes other named
24   plaintiffs, just showed up and we did what we could and
25   so therefor you can't award costs against us, but that's
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 45

```
 1   not really what the rule says.  So first, let me put as a
 2   matter of law, of what I've looked at here:  Where a
 3   Court deems proper, an award of attorney fees, the movant
 4   must demonstrate the amount it seeks is reasonable and
 5   I'm not going to give you all the case cites on this
 6   because they're pretty standard law, but I'll give you a
 7   few of them.  Generally, the starting point for the
 8   calculation of reasonable attorneys fees is -- and this
 9   is not withstanding the fact that it said who's got to
10   pay them, but the attorney fee is a load star, so the
11   number of hours reasonably expended multiplied by a
12   reasonable hourly rate.  The 10th Circuit case on that is
13   (inaudible) v. Monaham 703 F3rd 1012.  That's at 1017
14   through 18, it's a 1996 case.  To determine whether a
15   reasonable number of hours was expended, the Court
16   reviews counsel's billing entries to ensure that counsel
17   exercised proper billing judgment.  Counsel must make a
18   good faith effort to exclude hours or costs that are
19   excessive, redundant, or otherwise necessary.  Once a
20   Court determines the load star, if any, it can adjust the
21   load star upward or downward to account for the
22   particularities of the work performed.  This Court is not
23   required to reach a load star determination necessarily.
24   However, I will tell you that that's exactly what I did
25   in this case and that is -- I don't think I've had very
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 46

```
 1    many cases where I've done anything differently, because

 2    it seems like the fair thing to do.

 3              As for the hourly rate, the 10th Circuit has

 4    indicated that the Court must look to what the evidence

 5    shows the market commands for analogous litigation.  The

 6    burden is on the party seeking if the -- to provide

 7    evidence of the prevailing market rate for similar

 8    services by lawyers of a reasonably comparable skill,

 9    experience and reputation in the relevant community.

10              Now I will note that I do not have the resumes

11    of any of the lawyers that were submitted billing in this

12    case.  However, there was some information provided to me

13    that Mr. Wolosz was -- I'm trying to find my last page

14    here -- a partner with the firm and Ms. Kruzer was an

15    associate with the firm.  Those were the two primary

16    people who were billing on the account or submitting

17    billings on the account in connection, at least with this

18    deposition and I think that the reduced rate which, I

19    don't know what the rate is that these attorneys charge

20    their client, but I do know that they submitted a reduced

21    rate here, according to the declaration of Mr. Wolosz.

22    And so the $500 for a partner in a law firm and the $375

23    that submitted by Ms. Kruzer are both, seem to me to be,

24    fairly reasonable rates in the community here in

25    Colorado, based on my own experience of dealing with
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 47

1   attorney fee cases all the time.  The attorneys working

2   for Cultural Care are a Boston-based law firm and I think

3   that that -- from what I've seen, and again this is kind

4   of anecdotal, but Boston, New York, certain places on the

5   East Coast have a significantly higher billing rate than

6   do attorneys here in Colorado.  Again, dependent on who

7   they are and what kind of practice they have.  But it's

8   this Court's experience that these two billing rates, the

9   $500 for Mr. Wolosz and the $375 for Ms. Kruzer are in

10  line with those in the Denver attorney community,

11  especially in a case which involves a nationwide class

12  allegations for damages maybe in the millions of dollars.

13  And there's some suggestion it's something like 400

14  million a year and where both RICO and Anti-Trust price

15  fixing allegations are involved.  Those are complicated

16  cases that take some experience to handle and.  So I'm

17  assuming that these attorneys have that or they would not

18  be taking the number one deposition of the first named

19  plaintiff in the case.

20          So I find that the resumes of the two -- those

21  two attorneys are not particularly germane to the Court's

22  finding on reasonableness and so I'll find that the

23  billing rates are reasonable.  In determining the

24  reasonableness of the hours expended, the Court must

25  consider several factors.  I've considered them and

Page 48

```
 1   outlined them in the case of General Steel Domestic Sales
 2   vs. Chumley, which is 2014 West Law 3057496, that was in
 3   2014.  First, the Court considers whether the fees
 4   pertain to the task that would ordinarily be billed to a
 5   client, which these did seem to be.  Plaintiff must
 6   demonstrate that his counsel used billing judgment, as
 7   I've already talked about, in winnowing down the hours
 8   actually spent to those reasonably expended.  If not, a
 9   Court must take extra care to ensure that an attorney has
10   not included unjustified charges in the billing
11   statement.  A Court should also consider whether the
12   amount of time spent on a particular task appears
13   reasonable in light of the complexity of the case, which
14   I've already said is complex here, the strategies pursued
15   and the response is necessitated by an opponent's
16   maneuvering and that is not -- that's language out of the
17   case and I'm not suggesting that plaintiffs were
18   maneuvering here, although the delay in letting counsel
19   for Cultural Care know what was going on, while I believe
20   is -- was probably prudent, given that they thought they
21   might be able to convince her to come forward at a later
22   date, that is still somewhat maneuvering.  You don't want
23   to tell the other side that your client is too scared of
24   them to go have a deposition unless you absolutely have
25   to, because you can't do it.  So I understand the delay,
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 49

1   but it is somewhat of a maneuver.

2           But ultimately, my goal is to fix a fee that

3   would be equivalent to what an attorney would reasonably

4   bill for the same services in an open market.  In

5   reviewing the itemized summary that was submitted to me

6   -- and this is found at document number 337-5, I find

7   that the inclusion of attorneys fees associated with Ms.

8   Lukey were redundant.  And I'm sorry, Ms. Lukey, but I

9   know you were the supervising attorney but I don't like

10  supervising attorney's fees included when I'm going to

11  assess them against someone else, although I have no

12  doubt that you actually bill them and did them.  But I

13  think they're redundant of the work that was performed by

14  the two primary attorneys in charge of the Cardenas

15  deposition and, therefore, I'm not going to allow fees

16  associated with those three individuals work and further,

17  I find that while Cultural Care, of course, is free to

18  pay for the attendance of more than one attorney at a

19  deposition, if they want to, when considering an award of

20  fees, I think it's fair and just only to include the

21  expenses for the attendance of one attorney and usually I

22  pick the one who was going to actually conduct the

23  deposition and in that case, that was Mr. Wolosz.  So,

24  therefore, I have concluded that all expenses will be

25  allowed in connection with the appearance of Mr. Wolosz,

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 50

1   however, those that are in connection with the appearance
2   of Ms. Kruzer at the deposition will be disallowed.
3           So that's -- by that, what I mean is the air
4   fare, the hotel, any taxi and the claim for her time
5   associated with attending the deposition.  So that will
6   not be awarded for Mr. Kruzer's billing.  And then I find
7   that it's reasonable, however, to include portions of Ms.
8   Kruzer's time associated with preparing for the
9   deposition because it's cost-effective and efficient for
10  an attorney with a lower billing rate to help in the
11  preparation of the partner who's taking the deposition
12  and I note that some of the extra cost came from this
13  document dump, if you will, at the 7:00 the night before
14  the deposition.  However, to the extent that the work
15  done by Mr. Wolosz and Ms. Kruzer was what appeared to me
16  to be duplicative.  I have cut the entries for Ms. Kruzer
17  and allowed those of Mr. Wolosz.  So after thoroughly
18  analyzing each and every billing and I'm not going to go
19  through each and every one of them at this point, but I
20  did do that -- the Court finds that the reasonable
21  billing time for Mr. Wolosz for preparing for and
22  attending the scheduled deposition of Ms. Cardenas was
23  25.4 hours and the reasonable billing time for Ms.
24  Kruzer's preparation efforts was 14.20 efforts.
25  Therefore, I'm going to allow attorneys fees in the

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 51

 1    amount of  $12,850 for Mr. Wolosz's time and attorney

 2    fees of $5,325 for Ms. Kruzer's time.  Additionally, I

 3    will allow $589.22 for Mr. Wolosz's airline travel

 4    expenses, $249.40 for Mr. Wolosz's hotel and I'm going to

 5    allow taxi and other conveyances, because there were a

 6    number of those in there, but I'm going to limit that to

 7    a total of $150.  And then I will certainly allow the

 8    fees that were assessed by the court reporter and the

 9    videographer, which were $243.57 and $400 respectively.

10    So the total fees in costs awarded by the Court that's

11    going to be allowed is $19,807.19.  As provided by Rule

12    37, the Court's award of fees and costs is going to be

13    levied against the deponent party Dayanna Paola Cardenas

14    Caicedo jointly and severally with the attorneys advising

15    her under the rules the law firm of Bois and Flexner LLP.

16    The reason being that I believe that the attorneys of

17    that law firm had the last chance to make good on this

18    and that since they didn't or couldn't and the defendants

19    had no notice whatsoever and were not at fault, I think

20    that's where the costs should be borne is by plaintiff's

21    attorneys now.  I think that primarily and first place is

22    Ms. Cardenas herself, but the rule says it can be

23    individually or jointly and I'm saying it's jointly.

24            All right.  So that said, motion 337 for

25    sanctions is granted in part and the in part is only

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 52

 1   because I didn't award the amount of money that was

 2   requested, but it's granted in all other respects.

 3               So let's talk about the motion for protective

 4   order.  That's No. 365 and let me just explain to all of

 5   you who want to talk to me about this, what I did in

 6   preparation for today -- for today's hearing.  I reread

 7   the transcript of the scheduling conference, I reread the

 8   transcript of our informal conference and I think a lot

 9   of what I heard and saw on the video clips and the full

10   video deposition videos of those people -- there was one

11   that I only got audio on, but of the others that I had

12   video on, in general, what I think happened was on page

13   34 of our informal conference, I made the comment, In

14   general, I don't think someone's love life is

15   appropriate.  And so I kind of agree with the -- in

16   general, the statements that I don't think any of you

17   would actually legitimately disagree with, which of

18   course is not a sentence, but that's what I said anyways.

19   I think that immigration status is out.  That's not

20   relevant to anything, because these -- most of these

21   people don't even work, I don't think, for the sponsors

22   anymore and here comes the last sentence which is And

23   questions about their love life or what they did in their

24   off time or all that sort of thing, that's just not

25   relevant to the issues before the Court and I don't know

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 53

 1   why you even want to know.  I think that's a correct

 2   statement, although -- you know, wish I talked in full

 3   sentences.  I don't like reading my own transcripts, but

 4   I think that is still the way the Court feels.  It's an

 5   accurate statement of that.  However, I will say that the

 6   objection that is to be made under a statement like that,

 7   which was not an order, it was merely the Court's opining

 8   because I didn't -- the only order I issued was then on

 9   the tax return issue -- is:  Objection, relevance.  That

10   is the objection.  Not, I think the witness should be

11   instructed that if the Court thinks that if she's

12   uncomfortable, she doesn't have to answer.  That's not an

13   objection.  So wrong objection.  And I think that they

14   have to go ahead and answer it unless you see that the

15   witness is becoming harassed and intimidated.  That's

16   when you stop the deposition and you say I instruct you

17   not to answer, we're calling the Court.  This is in

18   violation of the Court's order.  That said, I'm really

19   giving you that as a go by for the future, because these

20   other depositions, what's been done is done.  So -- but I

21   was a little surprised because I don't think that what I

22   said was that every single time an attorney opens their

23   mouth to say -- well, let's take a good example was Ms.

24   Beltran about the flowers that she got for Valentine's

25   Day.  I made several comments that I didn't see how that

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 54

 1    could possibly be relevant.  In the context of looking at

 2    her deposition, though, I understood why it was relevant

 3    and it was relevant, although I could see an objection

 4    for relevance on there.  To me, the defendant taking that

 5    deposition was trying to find out who this Orlando guy

 6    was.  Is he really just a sponsor or is he really a

 7    boyfriend, husband, spouse?  You know, what is he,

 8    really?  And that seemed to be the thrust of the

 9    question.  When the answer was given, which didn't seem

10    to cause the deponent any problem at all, It was somebody

11    from school, the attorney said, And not Orlando?  And she

12    said, No.  That was the end of it.  I mean, it really

13    didn't matter who gave her the flowers.  It might have

14    mattered, however, if it had been Orlando, because

15    Orlando is apparently a potential witness in the case

16    because of that letter that he wrote saying they didn't

17    pay the au pair, Ms. Beltran in this case, enough.  So I

18    think taking someone's comment without considering the

19    context is always dangerous and that's always a danger

20    that we judges run into when we make gratuitous comments.

21    So -- but I do think that in the future you kind of need

22    to have some guidance on this because what I went and did

23    was went back and looked at the second amended complaint,

24    which believe me, between all of this, has taken me quite

25    a bit of time.  But I reread the complaint and so I now

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 55

```
 1    know what all of the claims are.  And I will say that the
 2    way I read it, they are all based on -- even the
 3    constructive fraud and misrepresentation, are all based
 4    on the fact that the sponsors are alleged to have told
 5    both the au pairs, host families, whoever, that the $195
 6    and some odd cents was a mandatory fixed stipend and
 7    there was no ability to make it higher or lower.  They
 8    all seem to revolved around that premise, no matter what
 9    the actual charges or what the facts supporting it are.
10    It's all that.  So that means that it doesn't -- it's
11    really irrelevant to these charges what someone did in
12    their off time unless what you're trying to get to is how
13    much money were they paid and on at least one of these
14    depositions, that's exactly what I saw and I believe -- I
15    can look at my notes, but I believe it was Ms. Jimenez
16    who said that she made lots of money -- well, she didn't
17    say lots.  She said she made money above $200 a week, but
18    she couldn't remember how much money and she couldn't
19    even say whether it was $50, $100, $200, $1000, I mean
20    she had no idea.  Every question was met with, I don't
21    know.  And what was then said after that was, I had a
22    bank, I didn't put it in the bank.  I don't know, I
23    didn't put it in the bank.  So no one knows whether or
24    not, for instance, Ms. Jimenez made a lot more than these
25    other au pairs and if she did, does that take her out of
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 56

1   being an appropriate class representative?  Does that go

2   to commonality, typicality, all that stuff?  Because if

3   she made a lot more money, than her minimum wage would be

4   more.  Right?  Per hour.  Unless she worked a whole lot

5   more hours too.  So -- but those are questions where I

6   think it was fully appropriate to say Okay, what did you

7   in your off time.  If what she says is, I traveled

8   frequently to Europe, it might be a lot more money.  If

9   what she says is, I went out and ran around the block or

10  jogged or what one of them said which was, I worked for

11  the Red Cross, something like that, then it becomes kind

12  of like it's probably not good evidence, but it's not

13  improper.  It's not an improper question.  However, I

14  think that questions are What did you do with your

15  boyfriend?  Or Did you have a boyfriend, are generally

16  improper.  But I didn't see any of those.  So I think you

17  really have to focus on does this question, this line of

18  questioning, have anything to do with determining the

19  wage that was paid, the hours that were worked or

20  something relevant to that topic, because that's really

21  what the case is all about.  So I just -- I wanted to

22  impress on you, before you make your arguments, that for

23  the most part, I think you can quote to me from these

24  depositions and I will know what you're talking about,

25  because I watched them and I saw them and the only one

Page 57

1   that was even a bit combative was Ms. Jimenez and I don't

2   know her, of course, I only know what I saw, but she

3   seemed perfectly capable of defending herself and she

4   didn't seem a bit intimidated by the questioner.  She had

5   absolutely no problems saying, Nope, that's not right,

6   that's not what happened.  She said it in Spanish, I

7   would think it was Spanish, but that's what she said.  So

8   I don't think she was intimidated by the questioner,

9   although I think the questioning was more heated than

10  some of the others, but Ms. Beltran, that was very calm

11  and passive and I thought Ms. (inaudible) was as well.  I

12  don't see the intimidation.  Although a couple of the

13  questions, like I said, I think the question was okay,

14  but further questioning probably wouldn't have been

15  because of the answer that was given.  For instance, on

16  the flowers.  You know -- well, who's this guy at the

17  school that gave you flowers?  Now that would probably be

18  going too far and it's irrelevant and that's the

19  question.  I also noted and I just will say this in

20  passing because I think it's important in this case from

21  a real distant point of view looking at this for all of

22  you who, I believe, were coaching the au pairs in your

23  objections, it didn't work.  It didn't work because all

24  of them answered the question anyway, even after being

25  told, If you're not comfortable, makes you uncomfortable

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 58

1   you won't have to answer, the Judge said you don't have

2   to.  We're not going to go in this, so if you're

3   uncomfortable don't answer.  And then they answered the

4   question.  So it's not working, it's taking out too much

5   time.

6           Let's get something decided and I think -- I

7   really think that unless the person is crying or there

8   was real harassment, really truly is harassment, at that

9   point the obligation, I think, of plaintiffs' attorneys,

10  although you have to make that decision on your own, is

11  to say I instruct you not to answer until we talk to the

12  Judge, this is ridiculous.  Right?  But it's not because

13  they ask Well, what did you do on Saturday?  You know,

14  kind of wait for the answer and see and if they -- if

15  defendants can't back that up with some kind of relevance

16  to their wages, then it is going to be out, but it didn't

17  seem to me to be bothering anyone particularly.

18          MR. SKINNER:  Sorry, Your Honor, your rulings --

19  do you want to hear from us?

20          THE COURT:  Nope.  I'm not ruling yet, I want to

21  talk to you all about this so that we're all on the same

22  page.

23          MR. SKINNER:  Very well.

24          THE COURT:  So it's your motion --

25          MR. SKINNER:  Well, it's our motion, can I go

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 59

 1   first?

 2              THE COURT:  Yes, you can go first.

 3              MR. SKINNER:  I don't have much to say.  I think

 4   Your Honor's doing exactly what we wanted, which is if --

 5   if Your Honor agrees with us, which is our fundamental

 6   position that what they do on their off time is not

 7   relevant, unless the defendants can find some other reason

 8   to pull it in:  How it goes, how much they were earning

 9   while they were working, then we're all in agreement.

10   First and foremost, under Rule 26, Rule 26 was redrafted.

11   We're not in the regime of could possibly lead to discovery

12   of relevant evidence; it has to be relevant.  And we don't

13   believe -- and it's very difficult to get down in the weeds

14   on this things ahead of time because you're not there.  But

15   we don't believe, as a general matter, that what the au

16   pair did on their off time is relevant.  We have said as

17   much and we have said, Why is it relevant?  And the answers

18   that we got in the motion don't add up.  And I'm not going

19   to go through it again because I think Your Honor read it

20   and understood it.  And it sounds like you generally agree

21   with us, that their off time is not relevant.

22              THE COURT:  I think that's true, but like I said,

23   there were examples that I saw --

24              MR. SKINNER:  There may be.

25              THE COURT:  -- where I think it was, it was

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 60

 1   relevant.

 2           MR. SKINNER:  There may be but this is -- this is

 3   the only issue I have then with how Your Honor has set it

 4   up.  And I didn't -- I haven't taken any of these

 5   depositions yet.  I may in the future.  But, you know, I

 6   went through and reviewed the transcripts.  I respectfully

 7   disagree with the assessment that not all of these

 8   plaintiffs were harassed.  I think some of it, it's just

 9   not visible when they're answering.  I don't see how you

10   could watch the video testimony of Ms. Hlatshaneni at

11   certain points and not think that this is somebody who has

12   --

13           THE COURT:  I only had it on vocal.  I didn't see

14   --

15           MR. SKINNER:  That may have been the issue then

16   and maybe we need to get you the video because we didn't

17   put that in.  The defendants put that in.  But, you know,

18   there was one scene, in particular, where there was a long

19   pregnant pause because she was clearly upset.  I mean, she

20   paused for quite bit before she proceeded.

21           THE COURT:  I noted that --

22           MR. SKINNER:  And some of the questioning, I

23   think, you know, in Harning and the Jimenez depositions was

24   heated, but putting all of that aside --

25           THE COURT:  I do think that that on the -- how do

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 61

1    you say her last name?  Hlatshaneni?

2              MR. SKINNER:  I took my best guess, Hlatshaneni.

3              THE COURT:  Part of it, part of that long, if we

4    will, pregnant pause was (inaudible) and calling it an

5    (inaudible) after her final explanation about it is

6    probably a little overboard.  But her scratching up the car

7    a little bit or doing some damage to the car when she was

8    pulling the garage.  But the kids were in the car with her,

9    right? And so --

10             MR. SKINNER:  And our objection, Your Honor, was

11   not to that.  Our objection has been to the questions about

12   speeding tickets and other motor vehicle infractions that

13   occurred on her personal time.  So, look, and hopefully to

14   short-circuit this, I know people are in from out town.

15   Maybe some, like me, are hoping to get on a plan later on

16   today.  We will do everything we can to curtail the

17   speaking objections.  I hear Your Honor on that front.  But

18   to put this -- to agree with us that questions about

19   irrelevant, a presumptively irrelevant subject matter,

20   which is their off time, that we object relevance and then

21   have to answer, I don't think that's the way this should be

22   set up.  There's been a presumption in this case that their

23   off time is inbounds, for a variety of reasons they given,

24   none of which actually hold water.  This case should be

25   focused on the time they worked as au pairs and the money

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 62

 1   they earn.

 2          Now, there may be limited exceptions to that,

 3   certainly.  There may be instances where the door was opened

 4   to some other line of inquiry.  There also remains, Your

 5   Honor, notes of situations where facts that have to do with

 6   their off time might bear on discovering how much they were

 7   receiving in wages.  But the presumption should be that their

 8   off time is off limits and the plaintiff shouldn't have to

 9   answer an irrelevant question unless the defendants have

10   articulated a reason for why this particular examination into

11   what happened on personal is relevant, for one of the reasons

12   that Your Honor gave.

13          And if we agree, it goes forward.  If we

14   disagree, we call the Court, we get a ruling; but I don't

15   think that the mechanism that should be set up is

16   objection, relevance, plaintiffs answer anyway.  Because

17   in that situation, the damage is done.  The answer is

18   given --

19          THE COURT:  What damage?

20          MR. SKINNER:  Well, that's --

21          THE COURT:  If it's irrelevant, it doesn't matter

22   what damage.

23          MR. SKINNER:  Well, first of all, it's our -- our

24   clients are having to answer questions about their personal

25   lives that don't have anything to do with this case.  We

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 63

1   shouldn't have to wait and see what they designate later.

2   We shouldn't be put to the burden of moving to strike

3   questions and answers after the fact if the Court agrees

4   with us that the presumption is that their off time is out

5   of bound.

6          The burden should be back on them to establish

7   why something that is presumptively irrelevant in this

8   unique case is okay, is permissible.  And we will listen

9   and if we can't agree amongst ourselves, we'll involve

10  the Court.  And now, Your Honor, probably somewhat to

11  your chagrin, is well-versed in all of these things and

12  you've got a context to make those rulings.  But I would

13  ask you to adjust the way you envision going forward on

14  this to that.

15         All we want is for the presumption to be that

16  their personal time is off limits.  And if the defendants

17  want to get into their personal time, they need to

18  explain why it fits into one of these exemptions to the

19  presumption that it's off limits.  If that's the clear

20  rule that we have going forward, I think things will be

21  much easier.  And we all, I think all of us collectively

22  want to know what's inbounds and what's out of bounds so

23  that we know how to handle ourselves in these depositions

24  going forward.

25         Now, most of them will already happen, so

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 64

 1   there will be -- presumably, there will be some

 2   additional plaintiffs that this will apply to.  And

 3   that's why I think these rulings will be helpful.  But

 4   I'd ask you to consider setting it up in that way,

 5   because I don't think that these young women should have

 6   to answer questions that are presumptively irrelevant

 7   without any further explanation from the defendants to

 8   these young women's lawyers as to why this particular

 9   line of inquiry is inbounds.  And if they want to do that

10   outside the presence of the witness to avoid some kind of

11   coaching, I'm sure we can figure out a way to address

12   that.

13              But it should not be:  Objection, relevance.

14   Answer.  Because like I just said --

15              THE COURT:  Why would it be different in this

16   case from every other case that is in this court?

17              MR. SKINNER:  Because we've --

18              THE COURT:  In every other case, that's the way

19   it works.

20              MR. SKINNER:  Because we have moved for

21   protective order, arguing that a certain category of

22   information is irrelevant.  And Your Honor has agreed with

23   us --

24              THE COURT:  No, no.  What you've moved for is a

25   protected order because you said that these people were

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 65

 1   being harassed and intimated.

 2            MR. SKINNER:  But, Your Honor --

 3            THE COURT:  That's the ground for protected

 4   order.

 5            MR. SKINNER:  -- respectfully, we've moved on two

 6   grounds.   The first is that under Rule 26, you are only

 7   permitted to gain discovery of relevant evidence.  That is

 8   what almost all of our brief is about.  And I think in -- I

 9   completed in the sections where we argued that even if it

10   was relevant, then the Court should still be drawing a

11   line.  It was -- there was one wrap-up session after we

12   talked about their general arguments of relevance on page

13   6.  And we also argued with respect to certain of the

14   plaintiffs' -- individual arguments with respect to certain

15   of the plaintiffs, those would have been unduly harassing.

16            We are not saying -- the grounds for our

17   motion is not the defendants [sic] are being harassed;

18   therefore, they can't be asked about their personal

19   lives.  I want to be exclusively clear about that.

20            We are moving on the basis that the questions

21   have nothing to do with the claims or defenses in this

22   case.  They, therefore, are impermissible discovery under

23   Rule 26.

24            The secondary argument was, even to the extent

25   there was some limited relevance, they should be

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 66

1  forbidden because the burden is unduly high on these

2  plaintiffs to have to answer questions about their

3  personal lives.

4           The plaintiffs are proposing that the way we

5  address this going forward is that we all have an

6  agreement that personal lives are presumptively not

7  relevant, unless that presumption is rebutted by a

8  particular line of questioning that the defendant wants

9  to go into because it relates back to discovery about

10  wages or because the plaintiffs somehow otherwise opened

11  the door.

12           And if we are confronted with that situation,

13  as plaintiffs' counsels, we have two choices.  We listen

14  to what they have to say, and we either say, Okay, I get,

15  I understand where you're coming from.  I'm going to

16  instruct my client to answer.  Or we say, We're going to

17  call the Court and get a ruling as to whether this is

18  relevant or not because we disagree.

19           And if the Court says it's relevant and we

20  feel it is limitedness since it might add particular

21  harassing, we'll let you know at that point.  But

22  harassment is really not what is driving this, as much as

23  they shouldn't have to get into, in the first place.  It

24  feeds upon itself, to a certain extent, because our

25  clients -- our clients want to know when they sit down

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 67

1  with us ahead of time:  Am I going to have to talk about

2  my boyfriend?  Am I going to have to talk about this?

3  Can they ask me about them?  Can they ask me where I went

4  on a Friday night?  Can they ask me about -- how I spent

5  my weekends, where I went on vacation?  And we should be

6  able to tell them:  Most likely, not.  The Court has

7  already ruled that questions about your personal time

8  really have nothing to do with this case, but there may

9  be specific exceptions that apply and we'll have to deal

10  with those on a case-by-case basis.

11          But there's no reason we should be having to

12  tell our clients ahead of time:  Yes, they can ask you

13  that and you're going to have to answer, even though we

14  all know it's not relevant to anything.

15          THE COURT:  Well, I think -- I think you're

16  asking me to do something that the Rules don't provide for.

17  Under 26(c), it says:  The Court, for good cause, issue an

18  order to protect the party or a person from annoyance,

19  embarrassment, oppression or undue burden or expense.

20  Okay.

21          So that's -- that's what you issue a

22  protective order for.  If I took a poll from every

23  attorney in every deposition where the objection was

24  relevance, I would never be able to do anything else.

25          MR. SKINNER:  I get it, Your Honor.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 68

1    THE COURT:  It happens all the time.  Should it

2    happen?  No.  And that's why we have time limits on

3    depositions.  So if they use all their time talking about

4    somebody's personal life, then they are out of time.

5    Right?  Don't let them go forward --

6         MR. SKINNER:  But, Your Honor, in most

7    depositions, you don't already have the argument of

8    relevance having been presented to the Court and the Court

9    having had the opportunity to rule on it.  You don't have

10   the Judge say:  I think questions about their off time are

11   off limits.

12         I agree with you, that I'm proposing would not

13   work in most cases, nor would it be appropriate.  And I'd

14   be happy to submit a supplemental letter to explain why

15   what I'm asking for is completely permissible Rule 26.

16   But discovery is only permissible if it's relevant.  Rule

17   26 makes that very clear.  And if we already know that

18   something is not relevant, based on how we all view the

19   claims of defenses, it's of no help to these plaintiffs

20   in going through with these depositions -- or, frankly,

21   of counsel is how to make effective use of their time to

22   permit these questions anyway and force them to answer,

23   even though we all know it's not relevant.

24         THE COURT:  But that -- we don't all know.

25   That's the point.  We don't all know.  You don't know.  I

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 69

1    -- I decided that most of these things that you objected to

2    -- not personally, but the plaintiffs objected to -- were

3    relevant; the question was relevant.  Now, the answer may

4    have made the question irrelevant as far as having it being

5    presented at trial but they were mostly relevant because

6    you don't have just -- I mean, these are all the wage

7    claims, and I wanted to make clear that I understood that.

8    But you also have witnesses that are going to be

9    testifying, so you need to test the veracity of your

10   witnesses.  You --

11           MR. SKINNER:  Of course.

12           THE COURT:  You need to test what their bias or

13   self-interest is.  I mean, there's lots and lots of things

14   that you do when, either prosecuting or defending a

15   deposition.  And I can't sit here ahead of time and say

16   that their time off is going to be presumptively irrelevant

17   because in each and every case, I think maybe, one, I

18   thought the question was relevant and should be answered,

19   under the circumstances.

20           MR. SKINNER:  But, Your Honor, they --

21           THE COURT:  If they're going to -- if they're

22   going to testify that -- that the host family (inaudible),

23   which is (inaudible), I don't know what in the world it has

24   to do with this case.  That adds nothing.  But if they're

25   going to testify that they were abused by this program and

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 70

 1   the sponsor and everything, I think the defendants have a

 2   right to quiz on that, although I think all of you are

 3   going to be disappointed that none of that is going to come

 4   in at trial.  I can't imagine Judge

 5   Arguella letting that in.  But who knows, you know?

 6   Stranger things have happened.

 7          So -- but that stuff, I agree with you it's

 8   irrelevant.  But if they've already testified to it,

 9   that's testing their credibility as a witness.  It may be

10   testing a boyfriend's credibility as a witness, or

11   something like that.  And I don't think we can make these

12   calls in a vacuum and I think the best advice that I gave

13   all of you, although probably not as articulate as it

14   could be, is that, in general, questions about someone's

15   love life, or what they do in their time off are probably

16   not relevant to the claims in this case.

17          But you're the lawyers.  I'm not trying the

18   case for you and I'm not going to sit here every single

19   time that say:  Objection, that happened on Saturday and

20   she wasn't working Saturday.  No.  Absolutely not.

21   They've got a right to get an answer and if you think

22   they're going down the path of going overboard, there are

23   two options.  You've got a time -- a time limit, so

24   they're using up their time on irrelevant garbage.  Or if

25   you think that your client is being oppressed or

Johana Paola Beltran, et al. vs.                                    Amended Motion Hearing
InterExchange, Inc., et al.                                              October 25, 2016

Page 71

 1   embarrassed or that sort of thing, then you can direct

 2   them not to answer and you can call me.  Because that's

 3   what's in the Rule.

 4           And, you know, I'm not going to put up with

 5   that.  I understand what you're saying about these young

 6   women.  And some of them, Ms. Beltran comes to mind, seem

 7   pretty fragile and like she might have, you know, be

 8   teary and that sort of thing.  So quizzing her about her

 9   boyfriend, outside of that issue on who this witness is,

10   would likely be inappropriate and I would expect that the

11   defense attorneys would not do that.  And that's I did

12   say, No question -- there is a presumption that there's

13   no questions about immigration status.  I think the law's

14   clear on that.  Because that is intimidating.  The mere

15   fact that they are here, whether legally or not, they're

16   about citizens of this country, that's intimidating.

17   That's trying to chill their -- their ability to

18   prosecute a case like this.  So that's off limits.

19           And certainly, any -- I can't imagine anyone

20   asking them about what kind of things they do with the

21   boyfriend, but that would clearly be irrelevant.  The

22   things about where you are going and what you are doing

23   and how much money you spending when they tell you

24   they've got extra money, but they don't -- they don't

25   know, they don't remember, they don't have any idea -- it

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 72

 1   wasn't that long ago --
 2          MR. SKINNER:  That was one -- that was one
 3   plaintiff, Your Honor.
 4          THE COURT:  Right.
 5          MR. SKINNER:  And I think -- and I would -- and I
 6   would agree that, in that circumstance, some inquiry in
 7   that area was proper.
 8          THE COURT:  Well, but there were a million
 9   objections.  Objection.  Objection.  Objection.  Continuing
10   objection.  Right?
11          MR. SKINNER:  Yes.  And that's my point.  So we
12   -- we didn't -- we know because we've argued this out,
13   we've said ahead of time -- let's take her out.  Let's take
14   that example out.  Let's say the two defendants -- the two
15   plaintiffs who have said, We have -- we received extra pay
16   and the defendants were saying we were trying to test how
17   they received extra pay --
18          THE COURT:  And how did --
19          MR. SKINNER:  -- I, frankly, think that the
20   reverse engineering is questionable, at best.  Some limited
21   inquiry in that circumstance may have been appropriate.
22   But the people -- you know, why were you -- why were you
23   traveling here?  Where did you go?  How did you spend your
24   off time?  How did you spend time after the AuPair Program?
25   Where were you living?  Do you have a boyfriend now?  No.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 73

1    What's your boyfriend's name?  Well, I don't want to give

2    it.  That makes me uncomfortable.  He knows you're here.

3    But there's no foundation that he knows anything about the

4    case.  I mean, the number of -- I think that -- it's a

5    little frustrating because I feel like the Court is in

6    agreement that what this case is about is what happened

7    while they were working and their wages and in some limited

8    circumstances, there may be some other stuff that is

9    permissible.

10            That's our position; that this case is about

11   what happened while they were working, their

12   qualifications, their wages.  And there may be some other

13   circumstances where other lines of inquiry are

14   permissible.  But we're being told, you know, with that

15   time work, with an acknowledgment that they're -- you

16   know, there's nothing that we can see at this point that

17   would be irrelevant outside of that, even if they choose

18   to waste their time on irrelevant, completely out-there

19   questions that have nothing to do with their work as au

20   pairs, that our only remedy is to sit and object and have

21   our clients answer, until they are reduced to tears or

22   otherwise intimidated, and then we can call.  That's not

23   the way this should work.  They should confine themselves

24   to discovery on relevant topics.

25            THE COURT:  Well, I agree.  They are professional

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 74

```
 1    attorneys.  I mean, they're qualified; they're officers of
 2    the court, I'm assuming that that's what they're going to
 3    do.  If someone were to break that mold and show that the
 4    way they were going to try to defend the case is to badger
 5    and belittle the witnesses, that's a different matter.  And
 6    that's pretty self-evidence and pretty quickly.  So all you
 7    need to do is get to me on that and I --
 8              MR. SKINNER:  Well, I guess --
 9              THE COURT:  -- am not going to put up with that.
10    But I also don't think that any of the officers of this
11    court, no matter where they are located in the country, are
12    going to do that.
13              MR. SKINNER:  Well, Your Honor, that's the only
14    place card that I think is going to be a little bit
15    difficult to police.  Because, given the class of
16    plaintiffs that we're dealing with and the vulnerability of
17    these plaintiffs, given their relationship, viz-a-viz their
18    former employers, their foreign status in this country,
19    their unfamiliarity with the US legal system and all of
20    that, I think to say to them:  You know, we're going to
21    have to wait and see, you know, how you react to these
22    things, is just not -- it's not the right way to go about
23    this.  They should -- we should be able to tell them, and
24    we will, because Your Honor has said it, that -- that your
25    off time, the Court has already ruled is not relevant to
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 75

 1   this case.

 2            THE COURT:  I didn't rule that. I said, in

 3   general --

 4            MR. SKINNER:  Well, you said:  In general --

 5            THE COURT:  -- what the do on their off time is

 6   probably not relevant to the -- the charges --

 7            MR. SKINNER:  And that's -- so we will use that

 8   --

 9            THE COURT:  -- in general.

10            MR. SKINNER:  We will use that exact language:

11   In general, your off time is generally not relevant.  I

12   don't think that we should then have to say:  But they can

13   still ask you about it and you're going to have to answer

14   until it reaches the point where it's clear that you're

15   being intimidated and harassed.

16            It's very difficulty when you're sitting in

17   these depositions, and -- you know, I've said that these

18   -- these women are vulnerable, but they also very brave

19   and very strong, very motivated to go forward with these

20   claims because they were wronged and they want the

21   opportunity to talk about these things.  So I think it's

22   very difficult to say:  Oh, I've looked at it and they've

23   actually done pretty well.  So, therefore, it's okay.

24   They shouldn't have to answer questions about their

25   personal lives that don't have anything to do with this.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 76

 1   And we should be able to shut down lines of inquiry,

 2   based on relevance; not based on, Well, clearly --

 3   clearly, she becoming upset.

 4          THE COURT:  Well, but that's not your right in

 5   any kind of civil case.  That's not your right, to shut

 6   down lines of inquiry just because you think they're not

 7   relevant.

 8          MR. SKINNER:  That's -- that's -- that's where we

 9   get to, Your Honor.  It's not me.  It's you.  You said:

10   This is not relevant.

11          THE COURT:  I said:  In general --

12          MR. SKINNER:  In general, it's not relevant.

13          THE COURT:  -- it's not relevant to the charges

14   in this case.  But every specific instance that I've been

15   given, I saw relevance in the questions that were being

16   asked, except, I think, one.  Something about a trip on the

17   northeast seaboard, which I kind of thought was kind of

18   like before she even started as an au pair.  But that

19   aside, that's one question.  Wasn't real personal, wasn't

20   designed, I didn't think, to make anybody feel

21   uncomfortable.  It almost sounded like it was a question to

22   make -- to kind of build a rapport with the person that

23   you're just talking to them about, Oh, really?  Where'd you

24   go?  You know, that kind of thing.  I agree it's probably

25   not relevant, but it's also not harmful.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 77

1           And when a Court has to step in and say, This

2    isn't going to allowed, is when the question is harmful.

3    It's so off course, that it's harmful.  Otherwise, the

4    defendants, in any civil case, have somewhat free license

5    to go forward and ask about things.  It's when they into

6    really, really personal things and they start asking

7    about that, yes, it's relevant; it's also embarrassing.

8    All right?  So "embarrassing" is a word that's in Rule

9    26.  So that's the fine line that everyone has to walk in

10   this case.  And you have to walk it in every case.  It's

11   harder in some cases than others.

12           But if it's embarrassing to them, or if it's,

13   you know, makes them cry or makes them unhappy and it's

14   irrelevant, then I think you can instruct them not to

15   answer it until they talk to the Court.  And I'm more

16   than willing to do that --

17           MR. SKINNER:  Okay.

18           THE COURT:  -- we may have to have a few that we

19   test that way.  But, you know, the great majority of

20   defense counsel are here, sitting in court.  And I can't

21   imagine anybody, in theory, disagrees.  The theory in

22   practice are two different things, though.  And I'm not

23   going to say that presumptively, their off time is off

24   limits or out of bounds because I don't know if it is or

25   not.  But I will stick by the advisement that I gave to

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 78

1   everyone that, in general, you need to make sure that the

2   questions have to do with the issues in the case, which

3   include more than just wages, because it includes testing

4   witnesses, testing memory, finding out who other witnesses

5   are, all of those kind of things.

6          MR. SKINNER:  Your Honor, I appreciate it.  I

7   actually think this will be helpful.  I think actually

8   having the Court reiterate what you said during that

9   telephone conference, that, as a general matter, the

10  personal lives of our clients are not relevant to this

11  case, should put a stop-gap into unnecessary frolics, if we

12  will.  And I guess we will just have to see what -- see

13  what happens.

14         THE COURT:  Right, because I haven't seen any

15  real egregious, unnecessary frolics.  That's -- I guess

16  that's a point I want to make is I, by agreeing with you,

17  I'm not saying that I've seen it from the defendants.

18  Because what you've pointed me to and what defendants then

19  showed me on a video-taped deposition -- and I know that

20  you know they gave me the full deposition, too.  And I

21  didn't listen to every minute of every of full deposition,

22  but I spot-checked it all along.  And I just didn't see any

23  of that.  So I'm not -- I'm not saying that presumptively

24  they're going to do it.  I know that there's going to be

25  some questions that are asked that, because of the answer,

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 79

1   turn out to be completely irrelevant.  Or a question that

2   might be asked that probably went one step too far.  But if

3   it doesn't embarrass or oppress or intimidate or quell your

4   clients from pursuing their case, I'm not going to be too

5   concerned about it if it's an isolated event.  I think you

6   should make your objections so that you have preserved it

7   for trial and move on.

8           And I'm assuming that defense counsel are all

9   getting that same message.

10          MR. SKINNER:  Thank you, Your Honor.

11          THE COURT:  Mr. Lyons, are you going to address

12  this one?

13          MR. LYONS:  I've been --

14          THE COURT:  I see you taking notes.

15          MR. LYONS:  Well, I was listening carefully, Your

16  Honor.  I -- I think it might be useful, just briefly, to

17  take a step back here.

18          If this were just a case about employment,

19  separate and apart from anything else, then questions

20  about issues outside of the employment probably are not

21  relevant and probably aren't going to be allowed at

22  trial.  But it's not.

23          This is a case about a cultural exchange

24  program, of which employment is a feature, but not the

25  only feature.  This program has been in place for over 60

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 80

1    years.  It is designed to bring young women from around

2    the world to the United States to be exposed to our

3    cultural by living with a family and by also

4    understanding, appreciating and having the opportunity to

5    see our culture, as compared to theirs.

6              That's why they come.  They don't come for

7    $195 every two weeks and free room and board.  They come

8    for the cultural experience.

9              THE COURT:  But that's not the point of this

10   case.

11             MR. LYONS:  It is the point of this --

12             THE COURT:  I mean, this isn't an attack directly

13   on the program.  Like, State Department, you should stop

14   administering it, the Department of Labor ought to do it

15   and, in fact, we ought to abolish it.  That's not this

16   case.

17             This case is you have to pay minimum wage.

18             MR. LYONS:  It's more than -- I think it's more

19   than that, Your Honor.

20             THE COURT:  That's what this case.

21             MR. LYONS:  This case includes clearly the

22   monetary feature that you just described, but it also

23   includes the nonmonetary feature.  These women have

24   testified, by and large, that's why they came.  Some of

25   them have said:  And we were lied to.  And that's why

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 81

1   they've accused us of fraud.  And we're entitled to explore

2   that.  And that means:  So, while you were here, what did

3   you do outside of the family and your work hours?  What

4   advantages did you have that was nonmonetary consideration

5   that is entitled to be considered in this employment case,

6   even if that's all this is -- one.

7            Two, they've made antitrust allegations and

8   have said there's a price-fixing conspiracy here, which

9   represses wages and compensation.  Well, they're going to

10  have to show antitrust injury, which is more than just

11  what they were paid.  It includes the nonmonetary

12  considerations.

13           So we agree with you.  Questions about

14  someone's love life are off limits.  We agree with you.

15  Questions about immigration are off limits.  Visa status,

16  however, is another matter.  These people get J-1 visas

17  that we're responsible -- the sponsors -- are responsible

18  for procuring, policing and reporting to the state

19  department when they are terminated.  So to that extent,

20  I'm drawing a distinction between immigration status and

21  visa status.

22           THE COURT:  It all depends on when the visa

23  status you are talking about.

24           MR. LYONS:  Exactly.

25           THE COURT:  If it was during their au pair

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 82

1   program, sure.  Were you here on a J-1 visa?

2           MR. LYONS:  Right.  But J-1 visa, by the way,

3   extends for another 30 days after they complete their au

4   pair assignment.  After that, they either have to leave the

5   country or make other arrangements for either another J-1

6   or some other kind of visa.

7           THE COURT:  Right.

8           MR. LYONS:  So questions about the cultural

9   experience, leaving personal lives aside, it seems to me,

10  are not only implicated in what they've claimed against us

11  -- I mean, of the nine claims in their Second Amended

12  Complaint, five of them are fraud-based.  And they are

13  fraud-based about the compensation; but you to look at all

14  of the compensation, because that's what they signed up

15  for.  That's why they came.  They didn't come just to work

16  for a year being paid some amount by a family.  They came

17  to be part of this cultural exchange.  So it's a fair

18  question.  There are limits to it, though, and we would

19  concede that.  And love life is clearly one of those

20  limits.

21          Let me point to two -- the Second Amended

22  Complaint.  And I appreciate you took the time read it,

23  as well as look at those deposition excerpts.  Because as

24  you say, I think the deposition videos and excerpts

25  clearly show there was no harassment going here.  There

Johana Paola Beltran, et al. vs.                                    Amended Motion Hearing
InterExchange, Inc., et al.                                              October 25, 2016

Page 83

 1    was no intimidation.  These lawyers who took these

 2    depositions were professionals, they were officers of the

 3    court and they've been maligned for having misbehaved

 4    when, in fact, they didn't.  If you listen -- you won't

 5    see them, of course, in the video excerpts but hear their

 6    tone of voice.  You hear how they are respectful and

 7    polite.  They are doing exactly what a professional

 8    attorney ought to do.  So we take comfort in the fact

 9    that the Court finds that that was their behavior, or

10    certainly finds that they didn't misbehave because they

11    didn't.

12               Let me point you to a new plaintiff in the

13    case, yet to be deposed.  And I'm at page 87 of the

14    Second Amended Complaint.  This is of Ms. Roscon

15    (phonetic) from Mexico.  Paragraph 472 of the Complaint

16    -- and I quote -- says:  Ms. Roscon selected Cultural

17    Care because of the advertising she saw in Mexico by

18    Cultural Care, which promised her, quote, the best year

19    of her life, unquote.

20               We're entitled to probe that allegation.  What

21    did you expect while you were here in the United States?

22    And, Oh, by the way, she was here for, not one, not two,

23    but three successive matches with families.  One in

24    Boston.  One in New York, I believe.  It wasn't New York.

25               UNIDENTIFIED SPEAKER:  Maryland.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 84

1          MR. LYONS:  Maryland.  Yes, Boston, Maryland and

2    Virginia.  So she was here for, roughly, three years and

3    came expecting -- as she's alleged in this Complaint -- the

4    best year of her life.  We're entitled to ask her about

5    that.

6          THE COURT:  I agree with you, that you're

7    entitled --

8          MR. LYONS:  All right.

9          THE COURT:  -- to ask her because it's in the

10   Complaint.  But, frankly, it's not really relevant.  It's

11   not relevant to the actual Counts that are alleged against

12   you or any of the other people.  It's just not relevant to

13   whether or not they were told 195 was minimum or the

14   maximum, or the mandatory, or however you want to put it,

15   it's not relevant to that.  It may be relevant to an attack

16   on the cultural program itself, but that's not this case.

17   It may have that effect --

18         MR. LYONS:  Well --

19         THE COURT:  -- but it's not this case.  That's

20   not charged.

21         MR. LYONS:  Respectfully, Your Honor --

22         THE COURT:  They put it in, so I think you get to

23   ask about it.  Did you have the best year of your life?

24   Why?  Why not?  Probably those are okay --

25         MR. LYONS:  Okay, fair enough.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 85

 1              THE COURT:  -- to a certain extent.

 2              MR. LYONS:  Well, we're not interested in their

 3    love life, but we are interested in where she went, what

 4    she did, what apparently made this not the best year or

 5    three years of her life.

 6              THE COURT:  Something happened.

 7              MR. LYONS:  And I think that's fair game.

 8              THE COURT:  I think it's okay because it's in the

 9    Complaint.

10              MR. LYONS:  Okay.

11              THE COURT:  So if you can point to that,

12    something like that, I think that's okay.  However, I will

13    tell you -- and I will tell all of you -- that that is

14    really barking up the wrong tree here.  That's not this

15    tree.  You know, you're in the forest and I'm not -- I'm

16    not going to say you can't ask, unless it becomes

17    oppressive or burdensome, or whatever.  But I don't know

18    why you would care because I doubt that Judge Arguello is

19    even going to let that in, unless they drag out from her:

20    Is it the best year of your life?  In fact, putting it in

21    the Complaint, they say that they're going to do that.

22    So --

23              MR. LYONS:  Well --

24              THE COURT:  -- that's fine.  You can attack that.

25              MR. LYONS:  You and I are probably not going to

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 86

 1    see this the same way.  But the nonmonetary compensation

 2    that these au pairs receive is clearly part of the Federal

 3    Fair Labor Standards Act test for determining what's fair

 4    compensation and what's not.  So it is relevant - one.

 5            Two, it clearly relates to my client, who is

 6    one of the few accused of antitrust violations, because

 7    they can't show antitrust injury -- they have to show

 8    antitrust injury.  And that's not just measured by

 9    dollars and cents.  It's a much broader standard under t

10    he Sherman Act.  And that's why it will be relevant at

11    trial.

12            But we don't have to argue that today --

13            THE COURT:  Right.

14            MR. LYONS:  -- because we're not at trial.

15            THE COURT:  Right.  And that's exactly what I'm

16    saying.  I think -- I think those questions will probably

17    draw an objection if you go very much beyond the best year

18    of your life.  But since they put it in there, I think you

19    can explore it and I know that there's other things that I

20    haven't even touched on that all of you may be thinking in

21    terms of defense of your client.  That's why I'm not -- I'm

22    unwilling to say a blanket prohibition on things have to do

23    with you -- their lives outside of work.  I'm not going to

24    do that.  You're going to have to make those calls as you

25    go along.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 87

 1           MR. LYONS:  Look, let me just try it this way, at

 2      the risk of arguing with you.

 3           The program that they signed up for is not

 4      just how much they get paid.  It is a question, in

 5      addition of the cultural experience to which they are

 6      exposed.  And those make up the package that they agreed

 7      to, sought after and took when they came to the United

 8      States for these various programs.  It is relevant.  It

 9      is a cultural exchange program.  And for purposes of what

10      they got paid, you can't ignore it.  It is relevant and

11      that'll be our position our trial and that's a position

12      we're entitled to develop in discovery.

13           THE COURT:  Well, I agree with you, that's your

14      --

15           MR. LYONS:  All right.

16           Mr. Quinn has a few comments, too.  Thank you.

17           MR. QUINN:  Your Honor, thank you for your long

18      afternoon of argument already.  Appreciate it.

19           I don't want to leave the courtroom today with

20      plaintiffs having framed discovery in too narrow a

21      fashion.  And what we heard from Mr. Skinner is it's

22      defendants' duty to show that there must -- that the

23      question must have some relevance to lost wages.  I don't

24      see the case that narrow as it's currently plead.

25           THE COURT:  I don't either, and I didn't order

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 88

 1   that.  I disagreed with that.

 2           MR. QUINN:  I think we should leave it at this:

 3   That there's -- that the defendants are entitled to ask

 4   questions and conduct with respect to the elements of every

 5   Claim for Relief that has been pled.  That will frame

 6   discovery.  And I think that's what good lawyers do, and

 7   what I expects will do when they depose our clients.  And

 8   that's what I've been seeing the lawyers do when they

 9   depose theirs.  And I think that's what you saw in the

10   transcripts.  And the Claims for Relief that go beyond lost

11   wages, alone, are stated in plaintiffs' Complaint.  And

12   they are -- the ones that I want to bring to the Court's

13   attention are:  Breach of fiduciary duty, negligent

14   misrepresentation, constructive fraud and violation of

15   state consumer protection laws.  Those are beyond just wage

16   claims.  Those include noneconomic damages, if, indeed, the

17   plaintiffs pursue them.  We're pretty early in the case.

18   Those are claims that are outside of class claims.  Those

19   are claims that are unique to the individual plaintiffs in

20   this case.  They trigger a different set of discussions.

21   They trigger an analysis of what was -- if you think that

22   -- and there has certainly been representations today in

23   the pleadings and at the depositions where there have been

24   emotional responses to the conduct of the -- of the

25   defendants.  And if there are other elements in an au

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 89

```
 1   pair's life, or a plaintiff's life, that is triggering

 2   emotional response at or about the time of their -- of

 3   their time with the agency, then that's certain

 4   discoverable.  Whether it's uncomfortable or not, we get a

 5   chance to talk about it.

 6             You've seen my deposition, presumably.  You

 7   go.  You test.  If there's nothing there, you move on.

 8             THE COURT:  Who did you depose?

 9             MR. QUINN:  Ms. Harning.

10             THE COURT:  Okay.  I didn't get very much of Ms.

11   Harning.

12             MR. QUINN:  Okay.  Well, I'll tell --

13             THE COURT:  So obviously plaintiffs don't --

14             MR. QUINN:  I'll tell you, it was perfect.  There

15   was no problem.  I stayed to the script.

16             THE COURT:  But I don't want to leave this with

17   you thinking that I agree with that, in whole --

18             MR. QUINN:  Okay.

19             THE COURT:  -- though, because I actually don't.

20   The breach of fiduciary duty, the negligent

21   misrepresentation, the constructive fraud, et cetera, all

22   involve allegations that the sponsors didn't tell the au

23   pairs that they could bargain for wages.

24             MR. QUINN:  Right.

25             THE COURT:  So it all has to do with that kernel
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 90

1    of evidence.  It doesn't have to do with fraud, in general,

2    for any and everything.  And, obviously, that would violate

3    the rules of pleading.

4              MR. QUINN:  Sure.

5              THE COURT:  So they have to be specific.  They

6    were specific and I think that you are limited to that.

7    Now, that has little branches that come off --

8              MR. QUINN:  Yes.

9              THE COURT:  -- and you do with that what you

10   want, but I don't think it opens the whole door to, Oh, we

11   have emotional distress and all that kind of stuff.

12             MR. QUINN:  I don't think you've seen that being

13   pursued here but I think that there's certainly an element

14   to probe and to move on and get out.  I'm sure it will draw

15   the appropriate objection and if it goes too far, you will

16   probably hear from us again.

17             What I'm trying to do is put it in my

18   perspective as I represent my client.

19             The other issue that I think is, you talked

20   about, Well, what are they doing in their off time and

21   there's a limit to this.  I left it over here.  I think

22   this will do.

23             One of the claims that is alleged in here is

24   the Consumer Protection Act, a state law.  And Element 4

25   is: Evidence that the challenged trade -- excuse me.

Johana Paola Beltran, et al. vs.                     Amended Motion Hearing
InterExchange, Inc., et al.                          October 25, 2016

1   Element 3 under 29.4 of the Pattern Jury Instructions

2   says:  The bargaining power of the consumers affected by

3   the challenged trade practice.

4              So in this case, the consumer would be, let's

5   take Ms. Harning, for example.  Ms. Harning was someone

6   that came over here and is complaining that she was

7   treated unfairly and, therefore, she's entitled to

8   recovery of attorney's fees, entitled to treble damages,

9   and actual damages, which include, not only her lost

10  wages, but anything else that she can prove up along with

11  it.

12             Well, a little bit of background, I think what

13  we discovered about Ms. Harning -- and I have already

14  heard some light complaints about her deposition

15  questions is:  She was an au pair one time in the United

16  States, outside of the statute of limitations that would

17  apply to this case.  Then she went on and she was an au

18  pair in Sweden, Norway.  Then she went on and she was an

19  au pair in England.  And then she went on and was a

20  college graduate.  And then she tried to extend beyond

21  the average age.  So she -- and then she signs up for her

22  fourth au pair experience back here in the United States.

23             I think that that type of knowledge, What

24  you've done before; what you do on the weekend; what you

25  know about the employment place for child care in the

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 92

1   United States is all relevant to bargain power with

2   respect to deceptive trade practice.  Did you go into

3   this program wanting to take this wage?

4           THE COURT:  I agree with you, only because the

5   argument would be made, for damages purposes, I'm assuming

6   --

7           MR. QUINN:  Right.

8           THE COURT:  -- that had she known she had the

9   ability to bargain, had she know that she could bargain

10  that she could bargain for a higher wage, she would have.

11  And probably could have gotten it because of her vast

12  experience.

13          MR. QUINN:  Right.

14          THE COURT:  So I think that's relevant, I agree

15  with you.

16          MR. QUINN:  All right.  Let's go on then.  I'll

17  move on then.  I think get what our -- what my frame on the

18  questioning is.  I may be the only lawyer here who

19  respectfully wants to probe the issue of immigration

20  status.  This is a little different in this case because on

21  immigration status, what this program offers is a package.

22  And think Mr. Lyons has described it.  It's a J-1 visa for

23  a limited period of time.  It's room and board, it's a

24  stipend and it's a relationship with the sponsor.

25              And so you understand that package when you go

Page 93

1    into it.  And when you either come back off the J-1 visa

2    program, but agree to become and au pair and work towards

3    this -- and work under au pair, sort of off label au pair

4    type program, that I think we are entitled to know

5    whether or not you did under appropriate immigration

6    status or not.

7          THE COURT:  I don't.  I don't agree with that.

8    And I believe that that kind of probing is a way to

9    intimidate her that if she carries on, you are going to

10   make a big deal out of this, and she's going to get

11   deported.  And that's what -- I mean, I'm paraphrasing

12   wildly.  But that's what that that line of cases say and I

13   grant that they all have to do with FLSA-type cases, rather

14   than an antitrust.  But you have an FLSA claim in this case

15   and I agree with those cases; that while interesting,

16   depending on how you feel about immigration and deporting

17   people who are here illegally, might be interesting and it

18   might be -- you might think that's a real good thing to get

19   people out who are here illegally, that's not -- the case

20   law says absolutely not.  Because what it does is chill

21   their ability to be plaintiffs.

22          And that's what we don't want to do.  The

23   whole FLSA thing is to take people who don't have any

24   power, who don't -- can't bargain for themselves -- never

25   would have even thought of asking for ten cents more an

Page 94

1   hour and say, Look, you know, Employer, this is on you.

2   You have to do this.  You have to do it right. I don't

3   care whether they ask for it or not; you got to do it.

4   And that's what you don't want to chill, are those little

5   guys, the little people, that don't have access to an

6   attorney just one on one, because the claim's too small.

7           MR. QUINN:  Yes.  Well, just to close up my

8   record, there's two points that I want to make on that and

9   the first is I do think that there are opportunities for

10  women who are within the program range, 18 to 26, I believe

11  it is, that choose to work off program when they can go

12  back in program would be relevant.  And that's -- I

13  understand your ruling, and I just wanted to make a record

14  on that particular point.

15          And I think Your Honor has already covered the

16  issue of other income.

17          So thank you for your time here today, I

18  appreciate it.

19          THE COURT:  Can I ask one -- one question while

20  you're standing there, since you represent a sponsor you

21  probably know.

22          MR. QUINN:  Sure.

23          THE COURT:  Everybody talked about the women in

24  the case.  Is this program, for some reason --

25          UNIDENTIFIED SPEAKER:  Men, too, Your Honor.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 95

 1          THE COURT:  -- limited to women?

 2          UNIDENTIFIED SPEAKER:  Men, too.

 3          UNIDENTIFIED SPEAKER:  Men and women 18 to 26,

 4  Your Honor.

 5          THE COURT:  All right.

 6          UNIDENTIFIED SPEAKER:  Thank you.

 7          THE COURT:  I was just curious.

 8          UNIDENTIFIED SPEAKER:  To be truly accurate, it

 9  depends on what country you're coming from, but there

10  certainly are some men in the program.

11          THE COURT:  Okay.

12          UNIDENTIFIED SPEAKER:  And we have a male

13  (inaudible).

14          THE COURT:  Oh, you do?  Good.  Well, that's not

15  necessarily good or bad.  I was just curious because you

16  kept say "women," and I thought, You know, I wonder if

17  there is some kind of requirement because they are going in

18  someone's home that it be only women.

19          UNIDENTIFIED SPEAKER:  I just want to point out

20  it was two men who kept saying "women," Your Honor.

21          THE COURT:  Duly noted.

22          Okay.  So the Motion for Protective Order is

23  granted, in part, and denied, in part.  It's more denied

24  than it's granted; but I'm say -- I'm giving the benefit

25  of the doubt and going kind of both ways because I do

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 96

1   agree with the statement that I made in the other hearing

2   we had that were, more or less, I guess you could call

3   them dicta because they certainly weren't an order and

4   I'm not making them an order now, either.  But I am

5   reiterating to you that questions about their love life

6   or what they do in their off time or that sort of thing,

7   is just not relevant to the issues before the Court and I

8   don't know you would even want to know.

9              Frankly, I think that last little bump there

10  is -- is how you should take the Court's rulings that are

11  likely to come in the future.  Why would you want to

12  know?  I mean, if you really have a reason why you want

13  to know that's relevant to this case that has to do with

14  the allegations against your clients in this case, okay.

15  That's good.  Right?  But if you really don't have a

16  reason to know and you're just fishing around seeing if

17  you can find something that makes them squirmy or

18  uncomfortable, there's the line.  And I know all of you

19  know that, and I don't suspect you'll do it.  I haven't

20  actually seen that.  So that's why -- I mean, I'm giving

21  you the benefit of the doubt anyway, frankly, because you

22  are officers of the court and I think you will try to do

23  what's right.  All of you, plaintiffs' and defense

24  counsel.

25              UNIDENTIFIED SPEAKER:  Your Honor, if I may.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 97

```
 1    This is really important because the Motion for Protective

 2    Order really did impugn the professionalism and ethics of

 3    many of us.  So to the extent -- it sounds to me, from what

 4    I've been hearing, that the Motion for Protective Order is

 5    denied.  You've looked at their examples, you've concluded

 6    that all but one of the questions was relevant.  You're

 7    also concluded that there was no harassment or

 8    intimidation, which was the basis on which they sought the

 9    Protective Order.  So appreciating the lines and the

10    guidance that you've provided and understanding our

11    obligations, we would ask for a full denial of the Motion

12    for Protective Order, in part, to really protect the

13    professionalism of the attorneys whose conduct was very

14    unfairly maligned.

15             Thank you.

16             UNIDENTIFIED SPEAKER:  Your Honor, you've ruled

17    that immigration status is off limit.  They've asked you to

18    reconsider that ruling and given you a legal basis that you

19    disagreed with.  I think that clearly our Motion for

20    Protective Order which sought a ruling that immigration

21    status was off limits should be granted.

22             There's no reason to deny our motion on that

23    --

24             THE COURT:  But I've ruled on that already.

25             UNIDENTIFIED SPEAKER:  Yeah.  So, I mean, I don't
```

Johana Paola Beltran, et al. vs.                                      Amended Motion Hearing
InterExchange, Inc., et al.                                              October 25, 2016

Page 98

 1    understand why we're --

 2                THE COURT:  That was done informal conference.

 3                UNIDENTIFIED SPEAKER:  That was already granted

 4    earlier.

 5                THE COURT:  Yeah, that Motion for Protective

 6    Order on immigration was already granted, as was -- it was

 7    denied on the basis of the tax returns.  So I issued what I

 8    thought were two rulings during the deposition.  Tax

 9    returns was one and immigration was the other.  I clearly

10    said, No, on the immigration.

11                UNIDENTIFIED SPEAKER:  Actually, didn't view the

12    immigration as being that clean and that's why we moved for

13    the protective order on it now.  The only clean ruling we

14    had out of the previous telephonic conference was, I think

15    it asked:  Did you file tax returns?  And they could get an

16    answer yes or not.  It was not a definitive ruling with

17    respect to the immigration status, which is why we moved

18    for a protective order on those grounds and why we have

19    continued to maintain our application for protective order

20    on those grounds.

21                And, Your Honor, I know the defendants don't

22    like the fact that we've accused them of trying to harass

23    and intimidate our clients, but that's how it appears to

24    our clients.  And it's our job to represent them.  And we

25    made a valid motion, on valid grounds, based on good law

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 99

1   and good facts.  And in some, they won.  And some, they

2   lost.  And we've got clear instructions on how this case

3   is going to go forward.

4           THE COURT:  What did they lose?  I guess I'm not

5   --

6           MR. SKINNER:  The immigration part of, Your

7   Honor.  And also, frankly --

8           THE COURT:  That was already -- that was already

9   lost and that was reraised at oral argument by one of the

10  attorneys who prefaced by saying, I think I'm the only here

11  that really wants to address this, but I would like to

12  reconsider.  And I said, No.  That wasn't in the papers

13  that I read.

14          MR. SKINNER:  Your Honor, we moved for a

15  Protective Order for the immigration.  And that's what we

16  got.  We moved --

17          THE COURT:  I agree -- I agree with defense

18  counsel, I was trying to be nice about it and not be too

19  belligerent because I think we all are on kind of the same

20  page.  But you're right.  The Motion for Protective Order

21  is denied because I saw no evidence, as I've said over and

22  over again, of anybody being harassed or oppressed.  I'm

23  not saying that that couldn't happen and that I

24  acknowledged that it could happen.  But I didn't see it

25  happen, and I looked.  I looked very carefully at all of

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 100

1   the information all of you gave me.  I think -- I hope

2   that's clear because I've spent days doing it.

3          But I didn't see it.  As far as I'm concerned,

4   it didn't happen.

5          MR. SKINNER:  Well, Your Honor, I think it's a

6   little unfair to confine the record to what happened at

7   these depositions.  We haven't -- we haven't put forward

8   any additional evidence from our clients as to how they

9   felt or any of that.  And perhaps, we'll have to do that

10  going forward, knowing now that this is how the Court is

11  going to view it.  We have to look at the questions and

12  answers and limit it to how they answered.  I'm actually

13  proud of them for how they did.

14         THE COURT:  I think they did well, too.  They

15  didn't seem intimidated, they didn't seem -- they gave

16  straightforward answers.  I think they did fine.  I'm not

17  saying they did anything wrong either.  The deposition

18  seemed to go along, to me.  I mean everything -- I told you

19  what --

20         MR. SKINNER:  Well, Your Honor, you're not

21  dealing --

22         THE COURT:  -- everyplace I saw --

23         MR. SKINNER:  -- you're not dealing with the

24  aftermath of it.  I mean, you're not dealing with the

25  plaintiff who conked out afterwards and collapsed in tears

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 101

1   on the street.  You're not dealing with the plaintiffs who,
2   ahead of time, are in tears, saying:  Really?  I'm going to
3   be subjected to this, simply because I want to try and get
4   what was rightfully mine as far as -- as far as an unfair
5   wage.  So we know now, I guess, what we will have to do in
6   the future in order to make the record that needs to be
7   made.  But to suggest that, you know, these plaintiffs
8   because they performed well at their deposition, therefor
9   have not been intimidated or harassed, I think is too
10  narrow a view on all of this.
11          THE COURT:  Well, and I'm not trying to give you
12  the narrow view.  What I'm trying to say to you is that I
13  can only rule on what I see.  And I actually was provided
14  with the video of the deposition.  And I did not see a look
15  of somebody crying and being very upset and saying, you
16  know, Oh, my god, I didn't want to answer.  You know,
17  things that you would expect to see if someone is very
18  stressed out and it's very stressful to them.
19          I'm not saying they don't feel it inside, that
20  I can't see it.  But I didn't see anything that I felt
21  was out of line by any defense attorney that would have
22  caused undue stress other than what we have already
23  about, that it's obviously stressful to these people.
24  And I agreed that they have some vulnerability.  But on
25  the other hand, you have clients who have the guts and

Johana Paola Beltran, et al. vs.                                    Amended Motion Hearing
InterExchange, Inc., et al.                                             October 25, 2016

1    courage to go out and go to another country and

2    experience in another country where they can't even speak

3    the language very well and try it.

4              So, you know, I don't see your clients

5    necessarily as quaking lambs, either.

6              MR. SKINNER:  They're not.

7              THE COURT:  Because they're pretty strong to do

8    that.

9              MR. SKINNER:  They're not.

10             THE COURT:  I don't know that I could have done

11   that.

12             MR. SKINNER:  They shouldn't have to answer

13   questions about their love life, but I think we all agree

14   on that.

15             THE COURT:  Yes, we all agree on that.

16             MR. SKINNER:  Your Honor, one last thing that has

17   to do with any of this.

18             The defendants have -- defendant Cultural Care

19   filed an application to put in a sur-reply with respect

20   to the Motion for Conditional Class Certification.  We

21   intend to put something in in writing with respect to

22   that.  We would ask for leave to put that in tomorrow.

23             THE COURT:  That's not pending in front of me.

24             MR. SKINNER:  It was actually referred earlier

25   this afternoon, I believe.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 103

```
 1              THE COURT:  Oh, it was?
 2              MR. SKINNER:  Yes.
 3              THE COURT:  The whole motion is?
 4              MR. SKINNER:  I believe the application for leave
 5   to file a sur-reply was referred.  Am I wrong about that?
 6              UNIDENTIFIED SPEAKER:  (inaudible) .
 7              MR. SKINNER:  That's how we read what happened.
 8              UNIDENTIFIED SPEAKER:  It was just a couple of
 9   hours ago.
10              UNIDENTIFIED SPEAKER:  Probably while we were
11   sitting here.
12              UNIDENTIFIED SPEAKER:  And GoAuPair also filed
13   leave to file a sur-reply, as well, based on new evidence
14   introduced in the reply.  So there's two.  I don't believe
15   that one has been referred yet.
16              THE COURT:  Okay.  But what has been referred to
17   me is the request for more time to do something that Judge
18   Arguello is going to rule on?
19              MR. SKINNER:  No, Your Honor.  What --
20              UNIDENTIFIED SPEAKER:  No.  We filed an
21   application, Your Honor, on behalf of Cultural Care, to
22   file a sur-reply because new argument was added in the
23   reply to which we wanted to respond.  It's that that was
24   referred to you, our request for the ability to file a
25   sur-reply on their Conditional Cert motion.
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 104

```
 1              THE COURT:  And is that Motion 325, the motion to
 2   certify class?
 3              MR. SKINNER:  Yes, that's right, Your Honor.
 4              UNIDENTIFIED SPEAKER:  That's the underlying
 5   motion and this is just a motion to file a sur-reply
 6   because of new argument.
 7              THE COURT:  Well, I have to tell you, the reason
 8   I'm acting like an idiot here is that's pretty unusual for
 9   Judge Arguello to refer something to me that has to do with
10   briefing she has to read.  Do you see what I mean?  She has
11   to decide on this.  And so whether or not she wants to read
12   a sur-reply is really up to her.  I have never seen her do
13   that before.  That may be a mistake.
14                But that aside, it's done.  So I get to rule
15   on that.  Do you have any objection to their motion?
16              MR. SKINNER:  Your Honor, we learned about this
17   -- the first request was made to us on Friday.  We just got
18   their proposed sur-reply yesterday.  We've been a little
19   occupied with getting ready for all of this.  I'm asking
20   until tomorrow.  We may object to the entire thing.  We
21   may, now that we've seen what they're putting in a
22   sur-reply, the proposed brief, we may actually agree that
23   part of it should properly come in.  We're not going to
24   agree all of it should properly because there's some merits
25   discussion in that brief that is not yet properly before
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 105

```
 1   the Court.

 2              But what we're asking from you is a little

 3   time to (inaudible) and we will put something in

 4   tomorrow.

 5              THE COURT:  Okay.  I understand.  You don't want

 6   me to rule tonight?

 7              MR. SKINNER:  I want you to rule tonight.

 8              THE COURT:  And you know what?  I won't --

 9              MR. SKINNER:  Thank you, Your Honor.

10              THE COURT:  -- so you have until, at least

11   tomorrow night, but probably much longer than that before I

12   actually rule on it.

13              Was it expedited?  Was there any need to have

14   expedited --

15              UNIDENTIFIED SPEAKER:  There was not, Your Honor.

16   It was simply to get it before the Court before a ruling

17   entered, since there isn't usually a --

18              THE COURT:  I promise you I will not rule it or

19   even read it until sometime after tomorrow at 5:00.  How's

20   that.

21              MR. SKINNER:  Thank you, Your Honor.

22              THE COURT:  So the oral motion is granted.

23              And then the Motion for Protective Order

24   denied.

25              Okay.  Anything else we need to do today?
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Amended Motion Hearing
October 25, 2016

Page 106

1            UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

2            UNIDENTIFIED SPEAKER:  Thank you.

3            THE COURT:  All right, we'll be in recess.

4            (Whereupon, the within hearing was then in

5    conclusion at 3:53 p.m.)

6

7

8

9            I certify that the foregoing is a correct

10   transcript, to the best of my knowledge and belief (pursuant

11   to the quality of the recording) from the record of

12   proceedings in the above-entitled matter.

13

14   /s/Dyann Patterson                    October 28, 2016

15   Signature of Transcriber             Date

16

17

18

19

20

21

22

23

24

25