IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

      Defendants.

---

**DEFENDANT AUPAIRCARE, INC.'S MOTION TO COMPEL ARBITRATION AND
DISMISS OR, ALTERNATIVELY, STAY LAWSUIT (RESPONSE TO SECOND
AMENDED COMPLAINT, DOC. #395); SUPPORTING MEMORANDUM OF POINTS
AND AUTHORITIES**

---

Defendant, AuPairCare, Inc. ("AuPairCare" or "APC"), submits this Motion to Compel Arbitration and Dismiss, or Alternatively, Stay Lawsuit, and supporting Memorandum of Points and Authorities.

<b><u>INTRODUCTION</u></b>

Plaintiffs Juliane Harning ("Harning") and Laura Mejia Jimenez ("Mejia") were added as plaintiffs to this case in the Second Amended Complaint ("SAC"), filed in this Court on October 18, 2016. (Doc #395).  Before the filing of the SAC, no persons currently or formerly sponsored as *au pairs* by APC had been in this case, and the sole cause of action asserted against APC had been Plaintiffs' antitrust claim. (*See* First Amended Complaint, Doc. #101).  This Motion is thus APC's first occasion to respond to alleged claims brought by new plaintiffs Harning and Mejia.

The claims of Harning and Mejia brought in this action are subject to and barred by the mandatory arbitration and forum selection provisions of their contracts with APC. (*See* Exh.1 to Declaration of Sarah V. McNamara,  p.6, ¶ 77, Exh.2, p. 6, ¶ 80).  Those contracts ("APC Agreement" or "Agreement") expressly provide that Harning and Mejia, and APC, "acknowledge and agree that any dispute or claim arising out of [those] Agreement[s], including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by mutual, exclusive and binding arbitration in San Francisco, California..." (*Id.*).  The causes of action alleged in the SAC unquestionably arise from these Agreements.  The SAC so alleges.  (Doc. #395, ¶¶ 192, 213, 348-350)  APC has invoked this mandatory arbitration clause, and preserved the defense of mandatory arbitration at every available opportunity – even before this

issue became ripe by virtue of Plaintiffs' first filing of a version of the Complaint that included former APC-sponsored *au pairs* subject to this clause. APC has requested that Plaintiffs stipulate to referring to arbitration Harning's and Mejia's claims. Plaintiffs have not responded to these requests.

The Court should enforce these mandatory arbitration provisions according to their terms. These arbitration agreements are valid and enforceable, and entered into voluntarily by these two plaintiffs. In the face of APC's repeated assertions that the arbitration clause would and does control when, as now, there are plaintiffs in the case subject to it, Plaintiffs have not once asserted the clause is unenforceable. They cannot in any event meet their heavy burden of demonstrating that these arbitration agreements should not be enforced. The bedrock policies favoring arbitration, codified in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") and recognized time and again by the United States Supreme Court, courts in this Circuit and California courts, compel that this case be referred to arbitration and this action be dismissed or in the alternative stayed as to these Plaintiffs.

The Agreements also provide that "in the event that the arbitration clause is deemed void or inapplicable, [the parties] consent to and submit to the personal jurisdiction of the federal or state courts of San Francisco County, California." (McNamara Dec., Exh. 1, p. 6, ¶ 77, Exh. 2, p. 6, ¶ 80). Thus, if this Court were to rule that the subject arbitration clauses are void or inapplicable, this case as against these Plaintiffs must be transferred to federal court in San Francisco.

## RELEVANT FACTS

### I.   PLAINTIFFS' ARBITRATION AGREEMENTS

In or about August, 2013, Harning signed an APC Agreement (Exh. 1 to McNamara Dec).[1]  In or about July 2014, Mejia signed an APC Agreement (Exh. 2 to McNamara Dec). The Agreements describe the nature of the relationship between these *au pairs* and their host families, the basic requirements to serve as an *au pair*, the minimum compensation and other benefits to which the *au pairs* would be entitled from the host families, and other terms and conditions of the program.   They expressly provide that any disputes arising from their *au pair* engagements are subject to mandatory arbitration:

> The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party.

> ...The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

> In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. contract.)

(McNamara Dec, Exh. 1, p.6, ¶ 77; Exh. 2, p.6, ¶ 80).

The Agreements further provide that their "validity, construction, breach, performance and interpretation shall be governed by the State of California, U.S." (Exh.

---

[1] This was Harning's second engagement as an *au pair* sponsored by APC.  (*See* Doc. #330-1, ¶ 16.) She also worked as an *au pair* in the UK and the Netherlands. (Exh. 7 to Maschler Dec., pp. 122, 125).

1, ¶75, Exh. 2, ¶ 77 to McNamara Dec.).

Harning and Mejia testified in deposition that before signing these Agreements they read and understood their provisions.  (Maschler Dec., Exh. 7, pp. 14-16; Exh. 8, pp. 152-157, 162).  Pursuant to these Agreements, Harning and Mejia served as *au pairs* with host families with which they were matched. There is no claim in this case (1) that APC breached its Agreements with these Plaintiffs or (2) seeking to declare void or rescind them, or any portion thereof.

II.     **THE COURT-APPROVED FILING OF THE SAC, WHICH ADDED PLAINTIFFS HARNING AND MEJIA, TRIGGERED, FOR THE FIRST TIME, THE <u>MANDATORY ARBITRATION PROVISIONS OF THE APC AGREEMENTS</u>**

      A.     **Although The Prior Versions Of The Complaint Did Not Name As Plaintiffs Any APC-Sponsored *Au Pairs* Who Were Subject To These Mandatory Arbitration Provisions, APC Expressly Preserved Its Mandatory Arbitration Defense**

APC's motion to compel arbitration is timely.  Before the Court approved the filing of the SAC and Plaintiffs filed it, there were no plaintiffs in the case who were subject to the mandatory arbitration provisions of the APC Agreements.  The FAC did not list any such person as a plaintiff, and contained only a single count against APC, for violation of Section 1 of the Sherman Act. (Doc. # 101).  Nevertheless, to ensure its defense of mandatory arbitration was preserved and Plaintiffs were on notice of its existence in the event any former (or current) APC-sponsored *au pairs* were added to the case, APC asserted this defense at every available opportunity.  Thus, in its Answer to the FAC, it asserted the affirmative defense that "[a]ny alleged disputes between this Defendant and the au pairs it has sponsored are subject to mandatory arbitration provisions." (Doc # 286 at p. 91, "Second Defense" [Exh. 1 to Maschler Dec]).

- 4

In responding to discovery, APC again preserved its objections regarding the mandatory arbitration bar. In its written responses to Plaintiffs' First Request for Production of Documents and First Set of Interrogatories, APC asserted this mandatory arbitration defense in its first General Objection and in response to each and every individual request and interrogatory:

> Defendant objects to these requests on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper. AuPairCare expressly reserves the right to move to dismiss this action and/or compel arbitration. Nothing in these responses or objections may be deemed a waiver of that right.

(Maschler Dec.; Exh. 2, at 2 [emphasis in original], *see also id.* at 4-20, Exh. 3 at 2, 4, 6, 7). In response to the Request for Production, APC produced copies of its AuPairCare Agreement forms for 2010-2015, all of which contained mandatory arbitration provisions. (Maschler Dec. ¶ 5, Exh. 4)

Plaintiffs' counsel, having been apprised of the AuPairCare mandatory arbitration provisions, then propounded a Second Request for Production requesting "all arbitration agreements that you contend apply to these claims." In APC's Response, it specifically referred by Bates-numbers to the APC Agreements already produced. (Exh. 5 to Maschler Dec. at p. 5). APC again asserted the same objections regarding mandatory arbitration. (*Id.* at 2, 4-5). Thus, Plaintiffs knew of the existence of the mandatory arbitration provisions of these APC Agreements nearly four (4) months before filing their motion for leave to file the SAC and their second motion for conditional collective action certification.

B.   **Plaintiffs' Simultaneous Filing, On August 15, 2015, Of A Motion To Amend The Complaint And A Second Motion For Conditional Certification Of A Collective FLSA Class**

On August 15, 2015, the last day allowed in the Court's Scheduling Order, Plaintiffs filed both their motion to amend (Doc #329) and their second motion for conditional certification (Doc #330). In their motion to amend, Plaintiffs sought to add as new plaintiffs, Harning and Mejia. The proposed SAC also alleged, for the first time, a proposed collective FSLA class and sub-class consisting of APC-sponsored *au pairs*. Plaintiffs' second motion for conditional certification sought conditional certification of the alleged APC classes and approval of Harning and Mejia as class representatives, even before the Court had approved the filing of a SAC.[2]

C.   **APC's Request That Plaintiffs Stipulate To Referring Harning And Mejia's Claims To Arbitration; Plaintiffs' Failure To Respond**

On September 14, 2016, defense counsel sent to Plaintiffs' counsel a letter reminding them of the mandatory arbitration provisions to which Harning and Mejia are bound, and requesting that Plaintiffs' counsel agree to refer their claims in the proposed SAC to arbitration. Plaintiffs' counsel did not respond. (Maschler Dec. ¶ 8, Exh. 6).

---

[2] At the request of the parties, the Court convened an informal discovery conference on August 19, 2016. At this hearing Defendants requested a modified scheduling order that (1) coordinated the briefing on the two pending motions for conditional certification, (2) allowed time in the schedule for defendants to take the depositions of the proposed, new class representatives before opposing conditional certification, and (3) scheduled the briefing on the motion for leave to amend and the Court's ruling thereon to precede the briefing on the second motion for conditional certification. The Court declined to stagger the filing deadlines for the oppositions to the motion to amend the complaint and the second motion for conditional certification. It did order that the briefing in opposition to the first and second motions for conditional certification be coordinated and set a schedule that permitted Defendants to take the depositions of proposed collective class representatives before they had been approved as plaintiffs in the case. (*See* Doc #333). In accordance with the Court's Order, APC took the depositions of Harning and Jimenez on September 8 and 14, 2016, respectively -- before the Court had ruled on the pending motion to amend, and, thus, before the issue of whether the SAC violated the mandatory arbitration clauses in the APC Agreements was ripe. (Exhs. 7, 8 to Maschler Dec).

D.  **AuPairCare's Opposition To Motion For Conditional Certification**

In APC's Opposition to Plaintiffs' Second Motion for Conditional Collective Action Certification (Doc. # 360), APC again raised the issue of Harning's and Mejia's mandatory arbitration clauses, as a basis for denying that motion. (*Id.* at 1, 6-8.) Harning's and Mejia's signed APC Agreements, which contain the subject mandatory arbitration clauses, were filed with the Court with APC's Opposition. (Doc. # 360-1, pp. 30-43). As shown in APC's Opposition, because all members of the proposed APC classes were subject to the same mandatory arbitration provisions and thus are free to arbitrate any disputes arising from their APC Agreements, those Agreements preclude the maintenance of the proposed, collective action. (*See* Doc. # 360, at pp. 7-8; Doc. # 360-1, ¶ 4; Exhs. 1-4 to Doc. # 360-1, pp. 1-29).

## LEGAL ARGUMENT

I.  **THE LAW FAVORS ARBITRATION AND REQUIRES THE ENFORCEMENT OF VALID ARBITRATION AGREEMENTS**

Both federal law and California law strongly favor the enforcement of arbitration provisions. Regardless of which is applied here, the result must be the same:  the arbitration agreements signed by Harning and Mejia must be enforced, their claims referred to arbitration, and this action dismissed, or in the alternative, stayed as to them.

In general, the FAA applies to "a written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract…" 9 U.S.C. § 2. The FAA's term "involving commerce" is interpreted broadly. *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). This case involves a J-1 visa program created by Congress and administered by the

Department of State ("DOS")  (*See* SAC Doc. # 395, ¶46: "The J-1 visa *au pair* program is one of several official J-1 visa 'cultural exchange' programs overseen and administered by the U.S. Department of State.")  Plaintiffs allege in the SAC that "[t]he conduct of the Sponsor Defendants, as described herein, substantially affected interstate and international commerce..."  (*Id.* at ¶ 568).[3] The FAA applies to the claims in this case.

However, as noted above, the APC Agreements have California choice of law provisions. Therefore, we examine the enforceability of these mandatory arbitration agreements under both federal and California law.

As affirmed by the Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) ("*Concepcion*"), the FAA declares and embodies a liberal policy favoring the enforcement of arbitration provisions:   "A written provision in any ....contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or contraction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. "Section 2 [of the FAA] is a Congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.  The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act."  *Moses H. Cone Memorial Hospital v.*

---

[3]*See also id.* at ¶ 578 (alleging wire fraud affecting interstate commerce as RICO predicate); ¶ 598 (Defendants "handled goods or materials that had been moved in or produced for interstate commerce...")

*Mercury Construction Corp.*, 460 U.S. 1, 24 (1983); *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (quoting *Moses H. Cone*). In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement or arbitration agreements. *See Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).

The Supreme Court has recognized that the FAA permits private parties to "trade [] the procedures...of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991); *see also Moses H. Cone*, 460 U.S. at 22 (the FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible").

Section 4 of the FAA provides that: "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

The courts' role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. (*See* 9 U.S.C. §§ 4; *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Hosam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). "Any doubt concerning the scope of arbitrable issues should be resolved

in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F. 3d 716, 719 (9th Cir 1999) (citing *Moses H. Cone*, 460 U.S. at 24-25); *Mortenson v. Bresnam Comm., LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) ("*Concepcion* crystalized the directive that the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions.") This strong presumption favoring arbitration "applies with even greater force" when a broad arbitration clause is at issue. *P&P Indus., Inc. v. Sutter Corp.*, 179 F. 3d 861, 871 (10th Cir. 1999). The APC Arbitration Agreement is particularly broad and inclusive.

"California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Foundation Health Psych Care Services, Inc.*, 24 Cal. 4th 83, 97 (2000). "There is a strong public policy in favor or arbitration agreements." *Blake v. Ecker*, 93 Cal.App.4th 728, 744 (2001). "The strong public policy of this state favoring arbitration as a means of dispute resolution requires courts to indulge every intendment to give effect to such proceedings." *Martinez v. Scott Specialty Gases, Inc.*, 83 Cal.App.4[th] 1236, 1249 (2000), citing *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992); *see also Coast Plaza Doctors Hospital v. Blue Cross of California*, 83 Cal.App.4[th] 677, 686 (2000) ("California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration"); *Cione v. Foresters Equity Serv. Inc.*, 58 Cal.App.4[th] 625, 641 (1997) ("A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted unless it can be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute.")[4]

## II.   THE AUPAIRCARE ARBITRATION AGREEMENTS ARE ENFORCEABLE AND COVER THE SUBJECT MATTER OF THIS CASE

### A.   The APC Agreements Are Valid

"Whether the parties agree to arbitrate 'is a threshold matter,'" *Avedon Engineering, Inc. v. Seatex*, 126 F. 3rd 1279, 1287 (10th Cir. 1997), governed by state law contract principles. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995).[5] Under California law, arbitration can be denied only where a party proves a defense to enforcement of the agreement, such as unconscionability. *E.g., Hoffman v. Citibank*, N.A., 546 F.3d 1078, 1082 (9th Cir. 2008). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Id.*; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 235 (2012).

Plaintiffs bear the burden of proving that the agreement is ***both*** procedurally and substantively unconscionable. *Pinnacle Museum*, 55 Cal. 4th at 247; *Armendariz*, 24 Cal. 4th at 89 ("no matter how heavily one side of the scale tips, both procedural and substantive unconscionability are required for a court to hold a arbitration agreement

---

[4] The California counterpart to the FAA, Cal.Code of Civ. Proc. § 1281.2, states that on petition of a party to an arbitration agreement , if the court determines that an agreement to arbitrate a controversy exists and there are no grounds for waiver or revocation, then it "shall order the petitioner and the respondent to arbitrate the controversy." This language is mandatory, not precatory." *Post Plaza Doctors Hospital*, 83 Cal.App.4th at 687 (2002).

[5] While generally courts should apply "ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute," 465 F.3d 470 (10th Cir. 2006), the state law contract analysis must also give "due regard...to the federal policy favoring arbitration." *Volt Info. Sciences Inc. v. Bd. of Trustees*, 489, 475-76 (1989).

unenforceable."). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise." *Pinnacle Museum*, 55 Cal. 4th at 246; *Kilgore v. KeyBank Nat'l Ass'n*, 673 F. 3d 947, 964 (9th Cir. 2012). Substantive unconscionability focuses on whether the terms of the contract "shock the conscience," *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007), or a person would have to be "under delusion" to accept. *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 214-215 (1994). *See also Pinnacle Museum*, 55 Cal. 4th at 246.

Under California's "sliding scale" approach to unconscionability, if "the procedural unconscionability, although extant, [is] not great," the party attacking the term must provide "a greater degree of substantive unconscionability." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng., Inc.*, 89 Cal. App. 4th 1042, 1057 (2001); *Armendariz*, 24 Cal. 4th at 114.

### 1. APC Arbitration Clause is not procedurally unconscionable.

As noted, Harning and Mejia have testified they read and understood the AuPair Agreements before signing them.[6]   Harning signed up with APC for two *au pair* engagements.  She was well-acquainted with the APC Agreement.

---

[6] Indeed, their Agreements state immediately above their signature lines, as follows:
> Please read the following statements carefully.  Your signature below indicates you have read and understood these statements and that you agree to them:
> - I am capable of reading and understanding this Agreement in English.
> - I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety.
> - I accept the terms of this entire Agreement and understand that is legally binding.  .
> - I have retained a copy of this Agreement for my own records.

(McNamara Dec., Exh. 1, p. 6, ¶ 79; Exh. 2, p. 6, ¶ 82).]

Mejia, before signing her au pair agreement, consulted with other au pairs and with Interexchange, the agency in Columbia that guided her through the application process. (Doc. #330-1, p. 42, ¶¶ 4-5; Maschler Dec., Exh. 8, pp. 87, 96-97, 99-100, 107, 109, 116).

Harning and Mejia were free to pursue *au pair* engagements through other sponsoring agencies, and in fact considered other such sponsors before deciding to sign on with APC. (Maschler Dec., Exh. 7, p. 171; Exh. 8, p. 116-19; Doc. #330-1, p. 42, ¶3). They were under no duress or compulsion to sign any agreement with APC.

The mandatory arbitration provisions of the APC Agreement are clear and straightforward. There is no effort to surprise or avoid detection. The clear intent of these provisions is to apprise the *au pair* of her right to arbitrate and the meaning of these arbitration terms. There is no procedural unconscionability here. *See Robison v. City of Manteca*, 78 Cal. App. 4th 452, 459 (2000) (upholding arbitration clause where there is no lack of disclosure of material contract terms or "unfair surprise"); *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1165 (2004) (the fact that a form contract is used does not make it procedurally unconscionable); *Cardenas v. AmeriCredit Fin. Serv. Inc.*, 2010 WL 3619851,*4 (N.D. Cal. Sept. 13, 2010) (same.)

### 2.    The Arbitration Clause is not substantively unconscionable.

Because the APC Arbitration Agreement is not procedurally unconscionable, the Court need not reach the issue of substantive unconscionability. *Kilgore*, 473 F. 3rd 964; *Armendariz*, 24 Cal. 4th at 14 (both must be present for a court to refuse to enforce an agreement). Even if the Court reaches this issue, Plaintiffs cannot meet their burden

of proving substantive unconscionability.   There is nothing unfair, "shocking to the conscience" or "one-sided" about the Arbitration Agreement.   *First*, it is bilateral – both the *au pair* and APC may elect to arbitrate a dispute arising from the Agreement. *Second*, it provides for neutral arbitrators. *Third*, it provides for full and fair discovery as sanctioned by Cal. Code Civ. Proc. §§1282.6, 1283, and 123.05.   *Fourth,* it provides that if the arbitration provision is deemed void or inapplicable, the *au pair* will have recourse in court.   *Fifth*, it does not require the *au pair* to bear any unreasonable arbitration costs or expenses. *Sixth*, there is no limitation on the types of relief recoverable in arbitration.  In short, this arbitration agreement meets all of the requirements of California law.   *Armendariz*, 24 Cal.App.4th 102-13, 17, 124-25; *Cheng-Canindin v. Renaissance Hotel Assoc.*, 50 Cal. App. 4th 676, 684-85 (1996).[7]

Applying the standards discussed above, Plaintiffs cannot demonstrate substantive unconscionability.  The APC Arbitration Agreement is valid, and should be enforced according to its terms.

### B.   The Claims In The SAC Are Covered By The APC  Agreement

As noted above, the Agreement encompasses "any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the

---

[7] *Armendariz*, which sets forth these arbitration criteria, applies specifically to *employment* agreements. The *au pairs* sponsored by AuPairCare are not employees. (*See* Agreement, p. 1, ¶ 9 ("Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.")  Plaintiffs have proffered a theory under which AuPairCare is a "joint employer" of *au pairs*.  APC vigorously disputes that theory. Leaving aside the merits, it is questionable whether *Armendariz* survived the Supreme Court's decision in *Concepcion*, which limits a state's ability to impose conditions on the enforceability of arbitration agreements that effectively discourage arbitration, such as applying more stringent unconscionability standards than those applicable to contracts in general. *See Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1137 (2012), ("*Concepcion* adopts a sweeping rule of FAA preemption.  Under *Concepcion,* the FAA preempts any rule or policy rooted in state law that subjects agreements to arbitrate particular kinds of claims to more stringent standards of enforceability than contracts generally.")

relationship of the parties." (McNamara Dec.,Exh. 1, ¶77, Exh.2, ¶80). Courts interpreting such expansive language has given it a broad construction. *E.g., Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F. 3d 1288, 1289-92 (10th Cir. 2004); *ARW Exploration Corp. v. Aguirre*, 45 F. 3d 1455, 1461-62 (10th Cir. 1995).[8] Here, as noted, Plaintiffs in the SAC predicate their claims against APC on its Au Pair Agreement (Doc. #395, ¶¶ 192, 213, 347-350; *see also id.* at ¶¶ 519, 551, 566, 575, 582, 585, 588, 594, 605, 620 [incorporating by reference all previous paragraphs of the SAC]). This case and controversy, as alleged in the SAC, are clearly encompassed by APC's Arbitration Agreement. The Agreement should be enforced.

## CONCLUSION

For the foregoing reasons, the Court should grant AuPairCare's motion to compel arbitration, and dismiss this action in its entirety as to them. In the alternative, it should stay this action.

Respectfully submitted,

*s/Thomas B. Quinn*
Thomas B. Quinn
GORDON & REES LLP
555 17th Street, Suite 3400
Denver, Colorado 80202

*Attorneys for Defendant*
*AuPairCare, Inc.*

---

[8] Thus, such arbitration agreements extend to tort claims arising from contractual relationships, *see P&P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (reasoning that "arising out of and relating to" language includes all claims that "touch matters" covered by the parties' contract, including tort claims), and anti-trust disputes. *See Coors Brewing Co. v. Molson Breweries*, 51 F. 3d 1511 (10th Cir. 1995).

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on November 10, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
BOIES SCHILLER & FLEXNER, LLP
llouis@bsfllp.com
smccawley@bsfllp.com
smcelroy@bsfllp.com
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com

*and*

Alexander N. Hood
TOWARDS JUSTICE – DENVER
alex@towardsjustice.org
**Attorneys for Plaintiffs**

Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
Joseph H. Hunt
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
jhunt@shermanhoward.com
**Attorneys for Defendant InterExchange, Inc.**

William J. Kelly, III
Chanda M. Feldkamp
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com
**Attorneys for Defendant USAuPair, Inc.**

Meshach Y. Rhoades
Martin J. Estevao
ARMSTRONG TEASDALE, LLP
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
*Attorneys for Defendant GreatAuPair, LLC*


Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
bogdane@hotmail.com
*Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair*


David B. Meschke
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
dmeschke@bhfs.com
mfitzgerald@bhfs.com
*Attorneys for Defendant EurAupair InterCultural Child Care Programs*


James E. Hartley
Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART, LLP
jhartley@hollandhart.com
aahubbard@hollandhart.com
jsbender@hollandhart.com
*Attorneys for Defendant Cultural Homestay International*


Brian A. Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

          *and*

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
*Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair*

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
**_Attorney for Defendant Agent Au Pair_**

Lawrence L. Lee
Susan M. Schaecher
FISHER & PHILLIPS, LLP
llee@laborlawyers.com
sschaecher@laborlawyers.com

and

John B. Fulfree
Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
PUTNEY, TWOMBLY, HALL & HIRSON, LLP
jfulfree@putneylaw.com
jcartafalsa@putneylaw.com, jbc54@cornell.edu
rtucker@putneylaw.com, robert.m.tucker1@gmail.com
smacri@putneylaw.com

**_Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation;_**
**_American Institute for Foreign Study d/b/a Au Pair in America_**

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
CHOATE, HALL & STEWART, LLP
joan.lukey@choate.com
rbuchanan@choate.com
mgass@choate.com
jwolosz@choate.com
lkruzer@choate.com

_and_

Diane R. Hazel
James M. Lyons
Jessica L. Fuller
LEWIS ROCA ROTHGERBER CHRISTIE LLP
dhazel@lrrc.com
jlyons@lrrc.com
jfuller@lrrc.com
*Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair*


Christian D. Hammond
DUFFORD & BROWN, P.C.
chammond@duffordbrown.com

            *and*

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com
*Attorneys for Defendants A.P.E.X. American
Professional Exchange, LLC d/b/a
ProAuPair;
20/20 Care Exchange, Inc.
d/b/a The International Au Pair Exchange*


Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
BOIES SCHILLER & FLEXNER, LLP
llouis@bsfllp.com
smccawley@bsfllp.com
smcelroy@bsfllp.com
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com

            *and*

Alexander N. Hood
TOWARDS JUSTICE – DENVER
alex@towardsjustice.org
*Attorneys for Plaintiffs*

Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
Joseph H. Hunt
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
jhunt@shermanhoward.com
*Attorneys for Defendant InterExchange, Inc.*

William J. Kelly, III
Chanda M. Feldkamp
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com
*Attorneys for Defendant USAuPair, Inc.*

Meshach Y. Rhoades
Martin J. Estevao
ARMSTRONG TEASDALE, LLP
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
*Attorneys for Defendant GreatAuPair, LLC*

Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
bogdane@hotmail.com
*Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair*

David B. Meschke
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
dmeschke@bhfs.com
mfitzgerald@bhfs.com
*Attorneys for Defendant EurAupair InterCultural Child Care Programs*

James E. Hartley
Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART, LLP
jhartley@hollandhart.com
aahubbard@hollandhart.com
jsbender@hollandhart.com
*Attorneys for Defendant Cultural Homestay International*


Brian A. Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

     *and*

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
*Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair*


Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
*Attorney for Defendant Agent Au Pair*

Lawrence L. Lee
Susan M. Schaecher
FISHER & PHILLIPS, LLP
llee@laborlawyers.com
sschaecher@laborlawyers.com

and

John B. Fulfree
Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
PUTNEY, TWOMBLY, HALL & HIRSON, LLP
jfulfree@putneylaw.com
jcartafalsa@putneylaw.com, jbc54@cornell.edu
rtucker@putneylaw.com, robert.m.tucker1@gmail.com
smacri@putneylaw.com

*Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation; American Institute for Foreign Study d/b/a Au Pair in America*

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
CHOATE, HALL & STEWART, LLP
joan.lukey@choate.com
rbuchanan@choate.com
mgass@choate.com
jwolosz@choate.com
lkruzer@choate.com

*and*

Diane R. Hazel
James M. Lyons
Jessica L. Fuller
LEWIS ROCA ROTHGERBER CHRISTIE LLP
dhazel@lrrc.com
jlyons@lrrc.com
jfuller@lrrc.com
*Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair*

Christian D. Hammond
DUFFORD & BROWN, P.C.
chammond@duffordbrown.com

*and*

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com
*Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair;*
*20/20 Care Exchange, Inc.*
*d/b/a The International Au Pair Exchange*

/s/ Fran Aragon Eaves
For Gordon & Rees LLP

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

     Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

     Defendants.

---

## CERTIFICATE OF COMPLIANCE WITH D.C. COLO. LCivR. 7.1 (a)

---

I, Brian P. Maschler, certify as follows:

1.     I am an attorney at Gordon & Rees, LLP, counsel of record for Defendant AuPairCare, Inc. ("APC").

2.     Before filing APC's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit, counsel for APC conferred with Plaintiffs' counsel to resolve

the matters raised in this Motion. Specifically, we requested that Plaintiffs stipulate to referring this case, as against Plaintiffs Juliane Harning and Laura Mejia Jimenez, to arbitration.

3.      Thus, on September 14, 2016, we sent to Plaintiffs' counsel a letter (Exhibit 6 to the Maschler Declaration, filed herewith) requesting that Plaintiffs so stipulate.  Plaintiffs' counsel did not respond to that letter.

4      On November 9, 2016, I sent to Plaintiff's counsel, Lauren Louis, an email advising Plaintiffs of APC's intention to file the instant motion and inquiring whether Plaintiffs would agree to arbitration.  I stated that if Plaintiffs' counsel did not notify APC counsel that it would stipulate to arbitration and dismiss or stay this lawsuit, we would inform the Court that Plaintiffs are opposed.

5.      Plaintiffs' counsel did not respond to this email.  They oppose this motion.


I hereby certify that the foregoing is true and correct.


Dated: November 10, 2016

/s/ Brian P. Maschler
Brian P. Maschler