# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT
JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

**DECLARATION OF BRIAN P. MASCHLER IN SUPPORT OF DEFENDANT AUPAIRCARE, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY LAWSUIT (RESPONSE TO SECOND AMENDED COMPLAINT, DOC. # 395)**

---

I, Brian P. Maschler, declare as follows:

1.    I am a partner in the law firm of Gordon & Rees, LLP, counsel of record for

Defendant AuPairCare, Inc. ("AuPairCare") in the above-caption matter.  I am over the

age of 18.  I have personal knowledge of the matters set forth in this Declaration, except

1

those stated on information and belief, and as to those matters, I am informed and believe they are true.  If called as a witness, I could and would testify competently to the matters set forth in this declaration.

2.      The First Amended Complaint filed in this action (Doc. No. 101) did not list as plaintiffs any current or former au pairs at AuPairCare, and did not allege any claim under the Fair Labor Standards Act ("FLSA") against AurPairCare.   The Second Amended Complaint, which adds as plaintiffs Juliane Harnig ("Harning") and Laura Mejia Jimenez ("Mejia") and adds AuPairCare as a defendant in the FLSA count, is the first version of the pleading that identifies any former AuPairCare-sponsored au pair.

3.      AuPairCare's Agreement with the au pairs it sponsors contains a mandatory arbitration provision as well as a forum selection clause specifying that any court action arising from the au pair relationship be venued in San Francisco, California. To ensure that this defense of mandatory arbitration was preserved, in AuPairCare's Answer to the First Amended Complaint (Doc. No. 286), it stated in response to Paragraph 16, as follows: "Defendant AuPairCare asserts that in the event the First Amended complaint is amended, AuPairCare expressly reserves the right to challenge the Court's jurisdiction on the grounds that claims alleged…are subject to mandatory arbitration." (Doc. No. 286 at p. 3)  AuPairCare also asserted the affirmative defense that "[a]ny alleged disputes between this Defendant and the au pairs it has sponsored are subject to mandatory arbitration provisions."   (*Id.* at p. 91, "Second Defense, MANDATORY ARBITRATION").  A true and correct copy of excerpts from AuPairCare's Answer to Frist Amended Complaint is attached as **Exhibit 1**.

4.      In AuPairCare's responses to Plaintiffs' First Request for Production of Documents and First Set of Interrogatories, AuPairCare again preserved its objections regarding the arbitration bar.  True and correct copies of AuPairCare's Responses to Plaintiffs' First Request for Production of Documents and its Responses to Plaintiffs' First Set of Interrogatories are attached as **Exhibits 2** and **3**, respectively.

5.      In response to Plaintiffs' First Request for Production on March 3, 2016, AuPairCare produced copies of the Au Pair Agreements (for 2010-2015) which contain the subject mandatory arbitration and forum selection provisions.  (True and correct copies of those documents produced to Plaintiffs are attached as **Exhibit 4**).

6.      Plaintiffs' counsel, having been apprised of the AuPairCare mandatory arbitration provisions, then propounded, on or about May 7, 2016, a Second Request for Production upon AuPairCare that specifically requested "all arbitration agreements that you contend apply to these claims."  In AuPairCare's response, dated June 6, 2016, it specifically referred Plaintiffs to the AuPairCare Agreement previously produced (Bates-numbered APC 000254-APC 000298).  In addition, in its General Objections (at p. 2) and its Response to Request for Production No. 21 (at pp. 3-4), AuPairCare again asserted the objection of the mandatory arbitration bar.  A true and correct copy of AuPairCare's Answer to Plaintiffs' Second Request for Production is attached as **Exhibit 5**.

7.      Thus, Plaintiffs were on notice of the existence of this mandatory arbitration provision nearly four (4) months before filing their motion for leave to file a second amended complaint and their second motion for conditional collective action certification.

8.      On September 14, 2016, I caused to be sent to Plaintiffs' counsel a letter in which we reminded them of the mandatory arbitration provisions to which proposed plaintiffs Harning and Mejia are bound, and requested that Plaintiffs' counsel agree to refer their claims to arbitration and dismiss or stay their claims proposed in this action. A true and correct copy of this letter is attached as **Exhibit 6**.

9.      As of the date of this declaration, we have received no response to this letter from Plaintiffs' counsel.

10.      Attached as **Exhibit 7** is a true and correct copy of excerpts from the deposition of Juilane Harning, taken on September 8, 2016.

11.      Attached as **Exhibit 8** is a true and correct copy of excerpts from the transcript of the deposition of Laura Mejia Jimenez, taken on September 14, 2016.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.   Executed this 10th day of November, 2016, in San Francisco, California.

_____*/s/  Brian  P.  Maschler*_____
Brian P. Maschler

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

      Defendants.

---

## ANSWER TO FIRST AMENDED COMPLAINT OF DEFENDANT AUPAIRCARE, INC.

---

Defendant AuPairCare, Inc. (AuPairCare), by and through its counsel of record, hereby answers and defends the First Amended Complaint (Doc. 101) pursuant to Fed.R.Civ.P. 8 and 12, denying each and every allegation not specifically admitted, and, without assuming any burden of proof that otherwise would not be placed on AuPairCare, averring separate defenses as follows:

## INTRODUCTORY STATEMENT

1.     Defendant AuPairCare denies the allegations of paragraph ("¶") 1 of the First Amended Complaint.

2.     Defendant AuPairCare denies the allegations of ¶ 2 of the First Amended Complaint.

3.     Defendant AuPairCare denies the allegations of ¶ 3 of the First Amended Complaint.

4.     Defendant AuPairCare denies the allegations of ¶ 4 of the First Amended Complaint.

5.     Defendant AuPairCare denies the allegations of ¶ 5 of the First Amended Complaint.

6.     Defendant AuPairCare denies the allegations of ¶ 6 of the First Amended Complaint.

7.     Defendant AuPairCare denies the allegations of ¶ 7 of the First Amended Complaint.

8.     Defendant AuPairCare denies the allegations of ¶ 8 the First Amended Complaint.

9.     Defendant AuPairCare denies the allegations of ¶ 9 of the First Amended Complaint.

10.     Defendant AuPairCare denies the allegations of ¶ 10 of the First Amended Complaint.

11.     Defendant AuPairCare denies the allegations of ¶ 11 of the First Amended Complaint.

12.     Defendant AuPairCare denies the allegations of ¶ 12 of the First Amended Complaint.

## **NATURE OF THE ACTION**

13.     Although ¶ 13 of the First Amended Complaint does not appear to contain any factual allegations, to the extent that ¶ 13 contains factual allegations, Defendant AuPairCare denies the allegations of ¶ 13 of the First Amended Complaint.

14.     Although ¶ 14 of the First Amended Complaint does not appear to contain any factual allegations, to the extent that ¶ 14 contains factual allegations, Defendant AuPairCare denies the allegations of ¶ 14 of the First Amended Complaint.

15.     Although ¶ 15 of the First Amended Complaint does not appear to contain any factual allegations, to the extent that ¶ 15 contains factual allegations, Defendant AuPairCare denies the allegations of ¶ 15 of the First Amended Complaint.

## **JURISDICTION**

16.     Defendant AuPairCare admits the Court currently has jurisdiction over the claim brought under Sherman Act, 15 U.S.C. § 1.  However, Defendant AuPairCare asserts that in the event the First Amended Complaint is amended, AuPairCare expressly reserves the right to challenge the Court's jurisdiction on the grounds that claims alleged herein are subject to mandatory arbitration.

17.     Defendant AuPairCare denies the allegations of ¶ 17 of the First Amended Complaint.

The First Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
### MANDATORY ARBITRATION

Any alleged disputes between this Defendant and the au pairs it has sponsored are subject to mandatory arbitration provisions.

## THIRD DEFENSE
### NO DUTY

This Defendant had no duty or obligation to the Plaintiffs under the circumstances forming the basis for the First Amended Complaint and no other duty or obligation on the part of this Defendant exists as a matter of law.

## FOURTH DEFENSE
### LACK OF STANDING TO SUE

Plaintiffs lack standing to sue on all or a portion of the claims for relief asserted in the First Amended Complaint, and in particular but without limitation, lack antitrust standing.

## FIFTH DEFENSE
### REAL PARTY IN INTEREST

Plaintiffs are not the real parties in interest to prosecute all or a portion of the claims for relief asserted in the First Amended Complaint.

## SIXTH DEFENSE
### NO ANTITRUST INJURY

Plaintiffs' claims are barred, in whole or in part, because plaintiffs have not suffered antitrust injury proximately caused by the conduct of CHI and/or have not

# Exhibit 2

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

    Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

    Defendants.

---

## DEFENDANT AUPAIRCARE, INC.'S ANSWERS
## TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION

---

Defendant AuPairCare, Inc. ("Defendant," "AuPairCare" or "Responding Party"), by counsel, Gordon & Rees LLP, submits the following response to Plaintiffs' First Requests for Production of Documents pursuant to Fed.R.Civ.P. 34:

### GENERAL OBJECTIONS

Defendant makes the following general objections, to which each of the

responses set forth below is subject:

A.      Defendant objects to these requests on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.   Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.   <u>AuPairCare expressly reserves the right to move to dismiss this action and/or compel arbitration.   Nothing in these responses or objections may be deemed a waiver of that right.</u>

B.      Defendant objects to Plaintiffs' instructions to the extent they require acts inconsistent with the Federal Rules of Civil Procedure or the Local Rules of this Court.

C.      Defendant objects to Plaintiffs' requests for production to the extent they improperly seek class-wide merits or damages discovery before any class or collective action has been certified or any motion for certification filed.   At present, the only plaintiffs in this case are the named Plaintiffs.   In particular but without limitation, Defendant objects to requests seeking the identity of and private and confidential information concerning putative class members prior to class certification.

D.      Defendant generally objects to Plaintiffs' requests for production of documents to the extent that Plaintiff seeks financial information and documents.   Evidence of a defendant's financial status is not discoverable.   Absent relevancy and a compelling need, a party may not obtain a defendant's financial records through discovery.   *See Bonanno v. Quizno's Franchise Co. LLC*, 255 F.R.D. 550, 555-56 (D. Colo. 2009) (*citing Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 159

(Colo. 2008)); *In re Dist. Ct., City & Cnty. of Denver*, 256 P.3d 687, 691 (2011); *Corbetta v. Albertson's, Inc.,* 975 P.2d 718, 721 n.4, 723 (Colo. 1999); s*ee also Leidholt v. Dist. Ct.*, 619 P.2d 768, 770 (Colo. 1980); *Packard v. Moore*, 71 P.2d 922 (Cal. 1937); *Baggett v. Davis*, 169 So. 372 (Fla. 1936); *Laidlaw v. Sage*, 52 N.E. 679 (N.Y. 1899); and 1 Jones on Evidence, §§ 4.48, 49 (6th ed. 1972)).

E.    Defendant objects to Plaintiffs' requests for production to the extent they seek information pertaining to claims in the First Amended Complaint that are not brought against Defendant.

F.    Defendant objects to Plaintiffs' requests for production to the extent they require production of attorney-client or work product privileged information. Defendant's production of such privileged materials is unintentional and inadvertent. Defendant requests that Plaintiff immediately return to Defendant all documents that appear to be subject to the attorney-client privilege or work product doctrine.

G.    Defendant objects to Plaintiffs' requests for production to the extent they would require production of Defendant's proprietary business information or trade secrets.

H.    Defendant objects to Plaintiffs' requests for production to the extent they would require production of documents and things that are not in Defendant's possession, custody, or control.

I.    Defendant objects to Plaintiffs' requests for production to the extent they seek information that violates the privacy rights of non-parties.

J.    A response that Defendant "will produce" responsive documents means

- 3 -

that if such documents exist, are within Defendant's possession, custody and control, and are not privileged, they will be produced subject to the Court's protective order.

K.   Defendant objects to Plaintiffs' requests for production to the extent they are irrelevant and reserves all rights and objections with respect to relevance, materiality and admissibility.

L.   Defendant objects to Plaintiffs' requests for production pursuant to Fed.R.Civ.P. 26(b)(1) to the extent they are not proportional to the needs of the case or seek information that is not proportional to the needs of the case.

M.   Defendant objects to Plaintiffs' requests for production insofar as they seek production of documents prior to the entry of an appropriate protective order. Defendant's production of documents shall be subject to that protective order.

N.   Defendant reserves the right to supplement its responses as additional information and things are discovered, if any.

## RESPONSE TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Documents sufficient to identify all au pairs you have sponsored, including the period of sponsorship, the state in which each au pair worked, and the family for whom each au pair worked.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant further objects to this request for production on the grounds it is overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint and unduly burdensome. Defendant further objects to this request on the grounds it seeks documents that are not relevant to any issue at this phase of the case, it seeks information that is not proportional to the needs of the case, it is not reasonably calculated to lead to the discovery of relevant or admissible evidence and is compound and contains multiple sub-parts. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare.

**REQUEST FOR PRODUCTION NO. 2:** Documents concerning au pair compensation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At

present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant AuPairCare objects to this request for production on the ground that it is vague and ambiguous, overbroad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint and is unduly burdensome. Defendant further objects to this request for production on the grounds that it seeks documents that are subject to AuPairCare's privacy policy, that it seeks information that is not proportional to the needs of the case, and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 3:** Documents concerning any other sponsor's rate of au pair compensation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendant objects to this request on the grounds that alleged any disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Subject to and without waiving this objection, Defendant does not possess documents responsive to this request. Discovery is continuing.

**REQUEST FOR PRODUCTION NO. 4:** Documents concerning any meetings between

you and any other sponsor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendant objects to this request on the grounds that alleged any disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

**REQUEST FOR PRODUCTION NO. 5:** Correspondence with or about any other defendant in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it seeks documents and information subject to the joint defense privilege, attorney-client privilege and/or work product doctrine. Defendant further objects to this request for

production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request insofar as it seeks information protected from disclosure by the joint defense privilege.

**REQUEST FOR PRODUCTION NO. 6:** Documents concerning agreements, contractual or otherwise, entered into between or among defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

Defendant further objects to this request for production on the grounds it seeks documents and information that are protected by the attorney-client and attorney work

product privileges, and by a joint defense agreement between the parties and their counsel.   Subject to and without waiving these objections, Defendant responds that it does not possess non-privileged documents responsive to this request.   Discovery is continuing.

**REQUEST FOR PRODUCTION NO. 7:** Correspondence with any Putative Class member in this lawsuit, including contracts executed by or provided to such class member.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.   Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.   AuPairCare expressly reserves the right to dismiss this action and/or move to compel arbitration.   Nothing in these responses or objections may be deemed a waiver of that right.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed.   At present, the only parties to whom documents are properly discoverable are the named Plaintiffs.  Defendant objects to this request for production on the ground that it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, and is unduly burdensome.   Defendant further objects to this request for production on the grounds that it seeks documents that are subject to AuPairCare's privacy policy, documents that are not relevant to any issue in the case or

reasonably calculated to lead to the discovery of admissible evidence and seeks information not proportional to the needs of the case.  Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare.  Subject to and without waiving these objections, following the entry of a suitable protective order, Defendant will produce sample form contracts between it and au pair sponsor candidates.

**REQUEST FOR PRODUCTION NO. 8:** Contracts between defendants and host families relating to the Putative Class members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.  Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed.  At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs.  Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the

discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare. Subject to and without waiving these objections, upon entry of a suitable protective order, Defendant will produce exemplars of contracts between Defendant and host families.

**REQUEST FOR PRODUCTION NO. 9:** Any document relating to any named plaintiff in this case, excluding filed pleadings in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Subject to and without waiving this objection, Defendant responds that it does not possess any documents responsive to this request. Discovery is continuing.

**REQUEST FOR PRODUCTION NO. 10:** Time records sufficient to show the actual number of hours worked by the putative class members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks

- 11 -

class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant further objects to this request on the grounds that it pertains to claims or causes of action in the First Amended Complaint that are not asserted against Defendant. Defendant further objects to this request on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare.

**REQUEST FOR PRODUCTION NO. 11:** Documents supporting defendants' claim that the government has mandated a uniform wage.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**   Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.   Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Without waving these objections, Defendant responds that it does not claim that the government has mandated a uniform wage. It possesses no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 12:** Documents concerning statements you have made to host families regarding compensation to au pair [sic].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant objects to this request on the grounds it is vague, is overbroad, is not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, and is unduly burdensome. Defendant further objects to this request on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 13:** Documents concerning statements you have made to host families regarding the number of hours au pairs may be required to work.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request insofar as it pertains to claims or causes of action in the First Amended Complaint that are not asserted against Defendant. Defendant further objects to this request on the grounds it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, and is unduly burdensome. Defendant further objects to this request on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 14:** Documents concerning or constituting complaints from au pairs about an au pair's compensation or work schedule, including but not limited to complaints that the au pair was working more than ten hours per day or 45

- 14 -

hours per week; that the au pair's work schedule prevented the au pair from attending school; that the au pair was not permitted days off or vacation time; or that the au pair was required to be "on call" for the host family.  This Request includes responses made to au pairs and any discussion about the complaint(s).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.  Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed.  At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs.  Defendant further objects to this request on the grounds it seeks information and documents pertaining to claims and causes of action, including FLSA and state law wage and hour claims, that are not brought against Defendant.

**REQUEST FOR PRODUCTION NO. 15:** Communications concerning au pair compensation between you and any government entity or nongovernment entity representing au pairs, including but not limited to the U.S. Department of State, the U.S. Department of Labor, the Alliance for International Educational and Cultural Exchange, or the International Au Pair Association.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the ground that the government and nongovernment entities identified in the Request—the U.S. Department of State, the U.S. Department of Labor, the Alliance for International Educational and Cultural Exchange, or the International Au Pair Association—do not "represent" au pairs. Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request for production to the extent that it calls for production of documents that are matters of public record and which are therefore available to Plaintiffs from the government agency with which they were filed. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 16:** Your audited or unaudited financial statements, including documents sufficient to show your annual revenue and income derived from participating in the au pair program during each year in which you have partici-

pated in the program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds it seeks documents and information that are proprietary and confidential to Defendant and in the nature of a trade secret.

Defendant further objects to Plaintiffs' Requests for Production of Documents to the extent that Plaintiff seeks financial information and documents. Evidence of a defendant's financial status is not discoverable. Absent a compelling need, a party may not obtain a defendant's financial records through discovery. *See Bonanno v. Quizno's Franchise Co. LLC*, 255 F.R.D. 550, 555-56 (D. Colo. 2009) (*citing Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 159 (Colo. 2008)); *In re Dist. Ct., City & Cnty. of Denver*, 256 P.3d 687, 691 (2011); *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 721 n.4, 723 (Colo. 1999); s*ee also Leidholt v. Dist. Ct.*, 619 P.2d 768, 770 (Colo. 1980);

- 17 -

*Packard v. Moore*, 71 P.2d 922 (Cal. 1937); *Baggett v. Davis*, 169 So. 372 (Fla. 1936); *Laidlaw v. Sage*, 52 N.E. 679 (N.Y. 1899); and 1 Jones on Evidence, §§ 4.48, 49 (6th ed. 1972)).

**REQUEST FOR PRODUCTION NO. 17:** Documents sufficient to show your corporate structure, including your internal reporting lines as well as the existence of parent companies, affiliates and subsidiaries, including but not limited to organizational charts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request for production on the ground that it seeks documents and information that are proprietary and confidential to Defendant.

**REQUEST FOR PRODUCTION NO. 18:** Documents sufficient to identify your employees, including names, titles and reporting lines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:** Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has

sponsored are subject to mandatory arbitration provisions.   Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence.  Defendant further objects to this request on the ground it seeks documents and information that are proprietary and confidential to Defendant.  Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 19:** All advertisements intended to reach potential au pairs concerning compensation, including all prior versions of your website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.  Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds it is vague and ambiguous with respect to the phrase "intended to reach potential au pairs concerning compensation," it is overly broad,  not reasonably limited in time to the facts

and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case, and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving these objections, Defendant will produce responsive documents following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 20:** Documents concerning training provided to au pairs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request insofar as it pertains to claims or causes of action in the First Amended Complaint that are not asserted against Defendant. Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not pro-portional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

DATED this 4th day of May, 2016.

*s/Peggy Kozal*
Thomas B. Quinn
Peggy Kozal
GORDON & REES LLP
555 17th Street, Suite 3400
Denver, Colorado 80202
Tel: 303-534-5160
tquinn@gordonrees.com
pkozal@gordonrees.com

-and-

Brian P. Maschler
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94579
Tel: 415-875-3127
bmaschler@gordonrees.com

*Attorneys for Defendant*
*AuPairCare, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2016, I served the foregoing Defendant AuPairCare, Inc.'s Answers to Plaintiffs' First Requests For Production via email and regular U.S. Mail on all counsel of record as follows:

| Attorneys for Plaintiffs: | Alexander N. Hood |
|---|---|
| *Alexandra Ivette Gonzalez* | Towards Justice-Denver |
| *Beaudette Deetlefs* | Suite 300 |
| *Dayanna Paola Cardenas Caicedo* | 1535 High Street |
| *Johana Paola Beltran* | Denver, CO 80218 |
| *Lusapho Hlatshaneni* | alex@towardsjustice.org |
| | |
| | -and- |
| | |
| | Randall W. Jackson |
| | Matthew L. Schwartz |
| | Peter M. Skinner |
| | Boies Schiller & Flexner, LLP-New York |
| | 7th Floor |
| | 575 Lexington Avenue |
| | New York, NY 10022 |

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

## DEFENDANT AUPAIRCARE, INC.'S ANSWERS
## TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

---

Defendant AuPairCare, Inc., ("AuPairCare," "Defendant" or "Responding

Party"), by counsel, Gordon & Rees LLP, submits the following answers to Plaintiffs'

First Set of Interrogatories pursuant to Fed.R.Civ.P. 33:

### GENERAL OBJECTIONS

AuPairCare makes the following general objections, to which each of the

responses set forth below are subject:

A.    Defendant objects to these interrogatories on the grounds that alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.   Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.   AuPairCare expressly reserves the right to move to dismiss this action and/or compel arbitration.   Nothing in these responses or objections may be deemed a waiver of that right.

B..    Defendant objects to Plaintiffs' instructions to the extent they require acts inconsistent with the Federal Rules of Civil Procedure or the Local Rules of this Court.

C.    Defendant objects to Plaintiffs' interrogatories to the extent they improperly seek class-wide merits or damages discovery before any class or collective action has been certified or any motion for certification filed.   At present, the only plaintiffs in this case are the named Plaintiffs.   In particular but without limitation, Defendant objects to interrogatories seeking the identity of and private and confidential information concerning putative class members prior to class certification.

D.    Defendant objects to Plaintiffs' interrogatories to the extent they seek information pertaining to claims in the First Amended Complaint that are not brought against Defendant.

E.    Defendant objects to Plaintiffs' interrogatories to the extent they would require production of attorney-client or work-product privileged information. Defendant's production of such privileged materials or information is unintentional

- 2 -

and inadvertent.  Defendant requests that Plaintiffs immediately return to Defendant all documents that appear to be subject to the attorney-client privilege or work product doctrine.

F.      Defendant objects to Plaintiffs' interrogatories to the extent they would require production of Defendant's proprietary business information or trade secrets.

G.      Defendant objects to Plaintiffs' interrogatories to the extent they seek information that violates the privacy rights of non-parties.

H.      Defendant objects to Plaintiffs' interrogatories to the extent they seek information that violates the privacy rights of non-parties.

I.      Defendant objects to Plaintiffs' interrogatories pursuant to Fed.R.Civ.P. 26(b)(1) to the extent they are not  proportional to the needs of the case or seek information that is not proportional to the needs of the case.

J.      Defendant reserves the right to supplement its responses as additional information and things are discovered, if any.

K.      Any information disclosed in response to these interrogatories shall be subject to a suitable protective order.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify all au pairs that you have sponsored, past and present.  For each au pair, identify the au pair's name, home address, last known contact information (e.g., email addresses, phone numbers, etc.), country of origin, date of sponsorship, duration of sponsorship, host family(ies), host family address(es), last known contact information for each host family identified (e.g., email addresses, phone

numbers, etc.), duration of placement with each host family, foreign agent(s) involved in
facilitating sponsorship, total fees charged to each au pair (including an itemization of
what the fee was for), and total fees charged.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant objects to this interrogatory on the grounds that any alleged disputes
between it and the au pairs it has sponsored are subject to mandatory arbitration
provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of
this court proceeding is improper.

Defendant further objects to this interrogatory insofar as it seeks discovery
relating to claims of causes of action in the First Amended Complaint not asserted
against Defendant. Defendant further objects to this interrogatory on the grounds it
improperly seeks class-wide discovery before any class or collective action has been
certified or any motion for certification filed.

Defendant AuPairCare further objects to this interrogatory as having multiple
discrete subparts that should count as at least thirteen separate interrogatories pursuant
to Fed.R.Civ.P. 33(a)(1). Defendant further objects to this interrogatory on the grounds
that it is overly broad, is not reasonably limited in time to the facts and transactions
alleged in the Amended Complaint, seeks information that is not proportional to the
needs of the case, and is unduly burdensome.   Defendant also objects to this
interrogatory on the grounds that it seeks information that is subject to AuPairCare's
privacy policy and is violative of the privacy rights of host families and others who are
not parties to this action, that is not relevant to any issue in the case, and that is not

reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this interrogatory on the grounds it seeks information that is proprietary and confidential to AuPairCare.

**INTERROGATORY NO. 2:** Identify all steps you take to ensure that program participants satisfy all requirements as mandated by 22 C.F.R. § 62.31, including but not limited to steps you take to ensure that au pairs are not working more than 10 hours per day or 45 hours per week; are permitted required time off including paid vacation; and are completing educational requirements.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects to this interrogatory on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this interrogatory insofar as it seeks information pertinent to claims or causes of action in the First Amended Complaint that are not asserted against Defendant. Defendant further objects to this interrogatory on the grounds it is compound and improperly contains multiple subparts. Subject to and without waiving these objections, Defendant responds as follows:

Defendant's specific obligations with respect to the au pair exchange program are set forth in 22 CFR 62.31. Defendant complies with all of these requirements, including but not limited to requiring monthly personal contact by the local counselor with each au pair and host family; requiring quarterly contact by the regional counsel

with each au pair and host family; and requiring that all local and regional counselors are appraised of their obligation to report unusual or serious situations or incidents involving either the au pair or host family. Defendant further fulfills its obligations under 22 C.F.R. §62.31 by providing the disclosures, documents, and agreements specifically referenced in that regulation to au pairs and host families.

**INTERROGATORY NO. 3:** Identify each time you have communicated to anyone that au pairs in your sponsorship may be compensated more than the weekly stipend. For each responsive communication, identify the audience by name, whether an au pair, host family, government entity or other; the forum in which the communication was made; the date or, if published, range of dates the communication was viewable; and the precise communication.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects to this interrogatory on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this interrogatory on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified or any motion for certification filed.

Defendant further objects to this interrogatory as having multiple discrete subparts that should count as at least five separate interrogatories pursuant to Fed.R.Civ.P. 33(a)(1). Defendant further objects to this interrogatory on the grounds

that it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the Amended Complaint, seeks information that is not proportional to the needs of the case, and is unduly burdensome. Defendant also objects to this inter-rogatory on the grounds it seeks information that is subject to AuPairCare's privacy policy and/or is violative of the privacy rights of host families and others who are not parties to this action, that it is not relevant to any issue in the case, and that it is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this interrogatory on the grounds it seeks information that is proprietary and confidential to AuPairCare.

**INTERROGATORY NO. 4:** Identify all putative Class members who have been paid more than $195.75 per week. For each Putative Class member that has been paid Compensation in excess of the $195.75 weekly stipend, state how much the Putative Class member was paid and the dates of employment.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to this interrogatory on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this interrogatory on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified or any motion for certification filed.

Defendant further objects to this interrogatory as having multiple discrete

subparts that should count as at least three separate interrogatories pursuant to Fed.R.Civ.P. 33(a)(1). Defendant further objects to this interrogatory on the grounds it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the Amended Complaint, seeks information that is not proportional to the needs of the case, and is unduly burdensome. Defendant also objects to this interrogatory on the grounds it seeks information that is subject to AuPairCare's privacy policy and/or is violative of the privacy rights of host families and others who are not parties to this action, that it is not relevant to any issue in the case, and that it is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this interrogatory on the grounds that it seeks information that is proprietary and confidential to AuPairCare.

## **VERIFICATION**

I, Marcie Schneider, President of AuPairCare, declare that the foregoing
AUPAIRCARE, INC.'S ANSWERS TO PLAINTIFFS' FIRST SET OF
INTERROGATORIES are true and correct.

May 4, 2016 (Date) _____(Signature)

STATE OF CALIFORNIA            )

                               )

COUNTY OF *SAN FRANCISCO* )

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not the truthfulness,
> accuracy, or validity of that document.

Subscribed and sworn to before me, a Notary Public, this 4th day of May, 2016,
Witness my hand and official seal.            BY  MARCIE LYN SCHNEIDER

My commission expires:  12/17/19 (Date)

Signature  *M. Vdovychenko*

MARIYA VDOVYCHENKO
COMM. # 2137186
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXPIRES DEC. 17, 2019

- 9 -

DATED this 4th day of May, 2016.

s/Thomas B. Quinn
Thomas B. Quinn
GORDON & REES LLP
555 17th Street, Suite 3400
Denver, Colorado 80202

Attorneys for Defendant
AuPairCare, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2016, I served the foregoing via electronic mail
and regular U.S. mail on the following:

Alexander Neville Hood
Towards Justice
1535 High Street, Suite 300
Denver, CO 80218
alex@towardsjustice.org
**Attorney for Plaintiffs**

Lauren F. Louis
Sigrid S. McCawley
Boies, Schiller & Flexner, LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
**Attorney for Plaintiffs Deetlefs,
Caicedo and Gonzalez**

Randall W. Jackson
Peter M. Skinner
Matthew L. Schwartz
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor

New York, NY 10022
**Attorney for Plaintiffs Deetlefs,
Caicedo and Gonzales**

Sigrid S. McCawley
Lauren F. Louis
Randall W. Jackson
Peter M. Skinner
Matthew L. Schwartz
Boies, Schiller & Flexner, LLP
401 E. Las Olas Blvd., Ste. 1200
Ft. Lauderdale, FL 33301
**Attorney for Plaintiffs Beltran and
Hlatshaneni**

Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
Sherman & Howard, LLC

- 10 -

# Exhibit 4

**ATTORNEY EYES ONLY**

 ─────────────────────────────── *Connecting People and Cultures*

# AuPairCare
# Au Pair Agreement
(rev. 11/2009)

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

5. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

6. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

7. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee in the amount of US $_____.

8. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

9. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not

## ATTORNEY EYES ONLY

covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

10. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

11. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

12. Au pair agrees to pay a **$300.00 USD** cancellation fee, **plus the actual cost of international and/or domestic airfare** (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

13. Au pair agrees to pay a **$300.00 USD** change fee and **any applicable airfare penalties**, in the event he/she requests to change their arrival date.

### D. Responsibilities

14. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

15. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

16. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

17. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

18. Au Pair is hereby advised and understands that if there is an **infant under the age of two years** old in the household, the **au pair must have 200 hours of documented experience working with children under the age of two.** Such documented experience shall be verified by AuPairCare prior to au pair placement.

19. Au Pair understands that in the event there is an **infant under the age of three months** in the household, a parent or other responsible adult shall be present in the home at all times, and **Au Pair shall not be the sole caregiver for that child at any time.**

20. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

21. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

**Au Pair Agreement Page 2 of 8**
**Rev 11/09**

CONFIDENTIAL                    APC 000255

## ATTORNEY EYES ONLY

22. If Au Pair is expected or permitted to drive the family car(s), **Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

23. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

24. Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair.

25. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. **Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

26. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

27. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

### F. Compensation and Financial Responsibility

28. **Au Pair will receive room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

29. **Au Pair will receive a weekly stipend** in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

30. **Au Pair will receive two calendar weeks paid vacation (10-days)**, to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

## ATTORNEY EYES ONLY

31. **Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.**

32. **Au Pair will receive subsidy of educational costs** from the Host Family as outlined in the "Training and Education Requirements" section of this document.

33. **Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare** to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

34. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore **Au Pair is required to file U.S. individual tax returns, even if no taxes are due.**

35. **Au Pair is responsible for complying with any Federal or state labor and/or income tax laws** that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

36. **Au Pair is wholly responsible for personal expenses and management of personal finances.** AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses **not covered by insurance.** Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

37. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

38. **Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.**

39. **Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment.** It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

40. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

41. **If Au Pair's medical condition changes (including pregnancy),** between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

42. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant

**Au Pair Agreement Page 4 of 8**
**Rev 11/09**

# ATTORNEY EYES ONLY

to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

43. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

44. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

45. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

46. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State.  To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project** as defined by AuPairCare.

47. **Au Pair understands that all 12-month program Au Pairs are required to attend courses of study** at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours.  Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

48. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family.  Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

49. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

50. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension.  Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S.  Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

51. Au Pair understands that **Extension Au Pairs are required to repeat the educational component** of the program during the extension time as follows:  The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component.  The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

### J. Problem Resolution and Placement Changes

52. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff.  Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant

**Au Pair Agreement Page 5 of 8**
**Rev 11/09**

## ATTORNEY EYES ONLY

event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

53. Au Pair is hereby advised and understands that **AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered**; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

54. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.** If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

55. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. **Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.**

56. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, **Au Pair agrees to cooperate with AuPairCare during the entire re-matching process**, including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

57. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

58. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

59. **In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.**

60. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

61. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

62. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

63. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

CONFIDENTIAL                    APC 000259

## ATTORNEY EYES ONLY

64. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

65. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

66. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

67. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

68. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year.

69. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

70. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

71. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party.

CONFIDENTIAL                    APC 000260

## ATTORNEY EYES ONLY

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

72. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

73. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

**Please initial each of the below statements:**

_____ (initial) **I promise that the information I have given in the application form completed by me is accurate, I have read this entire agreement carefully, and I have had the opportunity to ask questions, obtain advice as to its meaning, and I understand it. I am capable of reading and understanding this agreement in English. I do not rely on any promises, statements or representations that are not expressly stated in this Agreement. I have retained a copy of this Agreement for my files.**

_____ (initial) **I agree to provide childcare services for my host family. I understand that my hours will not exceed forty-five (45) hours per week, for a maximum of ten (10) hours on any given day, over a period of five and one-half (5 ½) days on a given week, and that I will have at least one (1) full weekend free each month, scheduled in advance.**

_____ (initial) **My signature below indicates acceptance of the terms of this Agreement, and is legally binding. No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing.**

AU PAIR NAME (PRINT): _____

AU PAIR NAME (SIGNATURE): _____   DATE:_____

CONFIDENTIAL                    APC 000261

**ATTORNEY EYES ONLY**

# AuPairCare

### Au Pair Agreement

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

5. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

6. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

7. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

8. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee in the amount of US $_____.

9. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

10. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

11. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program,

## ATTORNEY EYES ONLY

including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

12. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

13. Au pair agrees to pay a **$300.00 USD** cancellation fee, plus the **actual cost of international and/or domestic airfare** (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

14. Au pair agrees to pay a **$300.00 USD** change fee and **any applicable airfare penalties**, in the event he/she requests to change their arrival date.

### D. Responsibilities

15. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

16. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

17. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

19. Au Pair is hereby advised and understands that if there is an **infant under the age of two years old in the household, the au pair must have 200 hours of documented experience working with children under the age of two.** Such documented experience shall be verified by AuPairCare prior to au pair placement.

20. Au Pair understands that in the event there is an **infant under the age of three months** in the household, a parent or other responsible adult shall be present in the home at all times, and **Au Pair shall not be the sole caregiver for that child at any time.**

21. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

22. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

23. If Au Pair is expected or permitted to drive the family car(s), **Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

**Au Pair Agreement Page 2 of 7**
**Rev 11/2010**

CONFIDENTIAL                    APC 000263

## ATTORNEY EYES ONLY

24. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

25. Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities and social networking websites such as Facebook, Orkut, MySpace or other sites.  Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

26. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. **Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.**  As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

27. Au Pair agrees to abide by all local, state and federal laws.  If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

28. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program.  This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

### F. Compensation and Financial Responsibility

29. **Au Pair will receive room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

30. **Au Pair will receive a weekly stipend** in accordance with the U.S. Department of State Regulations in the amount of $195.75.  Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

31. **Au Pair will receive two calendar weeks paid vacation (10-days)**, to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times.  A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

32. **Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.**

33. **Au Pair will receive subsidy of educational costs** from the Host Family as outlined in the "Training and Education Requirements" section of this document.

34. Upon successful completion of the program, **Au Pair will receive a return flight airline ticket from AuPairCare** to Au Pair's home country.  Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country.  Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

35. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family.  Au Pair's wages are essentially in the nature of household employment, and therefore **Au Pair is required to file U.S. individual tax returns, even if no taxes are due.**

## ATTORNEY EYES ONLY

36. **Au Pair is responsible for complying with any Federal or state labor and/or income tax laws** that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

37. **Au Pair is wholly responsible for personal expenses and management of personal finances.** AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

38. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

39. **Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.**

40. **Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment.** It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

41. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

42. **If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

43. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

44. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

45. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

46. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

47. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project** as defined by AuPairCare.

48. **Au Pair understands that all 12-month program Au Pairs are required to** attend courses of study at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay

CONFIDENTIAL                              APC 000265

## ATTORNEY EYES ONLY

tuition up to a maximum of $500 per au pair per year.   Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

49. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family.   Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family.  Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans.  Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

50. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

51. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension.  Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S.  Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

52. Au Pair understands that **Extension Au Pairs are required to repeat the educational component** of the program during the extension time as follows:  The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component.   The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

### J. Problem Resolution and Placement Changes

53. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

54. Au Pair is hereby advised and understands that **AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered**; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

55. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family.  AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change.   **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.**  If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

56. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair.  Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. **Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.**

57. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, **Au Pair agrees to cooperate with AuPairCare during the entire re-matching process**, including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews.  Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability.  A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host

CONFIDENTIAL                          APC 000266

## ATTORNEY EYES ONLY

Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

58. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

59. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

60. **In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.**

61. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

62. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

63. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

64. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program.  Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

65. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

66. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

67. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

68. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization").  Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement.  AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

69. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

70. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

# ATTORNEY EYES ONLY

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

71. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

72. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party.

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

73. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

74. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

Please initial each of the below statements:

_____ (initial) I promise that the information I have given in the application form completed by me is accurate, I have read this entire agreement carefully, and I have had the opportunity to ask questions, obtain advice as to its meaning, and I understand it. I am capable of reading and understanding this agreement in English. I do not rely on any promises, statements or representations that are not expressly stated in this Agreement. I have retained a copy of this Agreement for my files.

_____ (initial) I agree to provide childcare services for my host family. I understand that my hours will not exceed forty-five (45) hours per week, for a maximum of ten (10) hours on any given day, over a period of five and one-half (5 ½) days on a given week, and that I will have at least one (1) full weekend free each month, scheduled in advance.

_____ (initial) My signature below indicates acceptance of the terms of this Agreement, and is legally binding. No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing.

AU PAIR NAME (PRINT): _____

AU PAIR NAME (SIGNATURE): _____   DATE: _____

**Au Pair Agreement Page 7 of 7**
**Rev 11/2010**

CONFIDENTIAL                    APC 000268

**ATTORNEY EYES ONLY**

# AuPairCare

**2012 AU PAIR AGREEMENT**

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____ , (Country) _____ ". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

5. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

6. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

7. Au Pair understands that they cannot be married, engaged to be married or have children of their own and participate in AuPairCare's au pair program.

8. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

9. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee in the amount of US $_____ to Originating Exchange Organization.

10. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

11. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

12. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

13. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

14. Au pair agrees to pay a $300.00 USD cancellation fee, plus the actual cost of international and/or domestic airfare (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

15. Au pair agrees to pay a $300.00 USD change fee and any applicable airfare penalties, in the event he/she requests to change their arrival date.

### D. Responsibilities

16. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

17. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per

**ATTORNEY EYES ONLY**

# AuPairCare

month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

20. Au Pair is hereby advised and understands that if there is an infant under the age of two years old in the household, the **au pair must have 200 hours of documented experience working with children under the age of two.** Such documented experience shall be verified by AuPairCare prior to au pair placement.

21. Au Pair understands that in the event there is an infant under the age of three months in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.

22. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

23. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

24. If Au Pair is expected or permitted to drive the family car(s), **Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license** at his/her own expense. Failure to do so may result in termination from the program.

25. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

26. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

27. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

29. Au Pair agrees to exercise sound judgment and caution while participating in internet-based communities, dating and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

30. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. **Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

31. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

32. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

rev 1/2012

**CONFIDENTIAL**                    **APC 000270**

Au Pair's Initials_____

**ATTORNEY EYES ONLY**

# AuPairCare

33. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be implemented in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child(ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

### F. Compensation and Financial Responsibility

34. Au Pair will receive room and board in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

35. Au Pair will receive a weekly stipend in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

36. Au Pair will receive two calendar weeks paid vacation (10-days), to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

37. Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.

38. Au Pair will receive subsidy of educational costs from the Host Family as outlined in the "Training and Education Requirements" section of this document.

39. Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

40. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore Au Pair is required to file U.S. individual tax returns, even if no taxes are due.

41. Au Pair is responsible for complying with any Federal or state labor and/or income tax laws that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

42. Au Pair is wholly responsible for personal expenses and management of personal finances. AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

43. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said

    coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

44. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

45. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

46. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

47. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

48. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary for Au Pair's health and well-being during Au Pair's stay abroad.

rev 1/2012

Au Pair's Initials_____

CONFIDENTIAL       APC 000271

**ATTORNEY EYES ONLY**

# AuPairCare

49. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

50. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

51. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

#### H. Training and Education Requirements

52. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State.  To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project** as defined by AuPairCare.

53. **Au Pair understands that all 12-month program Au Pairs are required to attend courses of study** at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year.  Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

54. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family.  Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family.  Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans.  Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

#### I. Extension of Au Pair Program

55. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

56. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension.  Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S.  Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

57. Au Pair understands that **Extension Au Pairs are required to repeat the educational component of the program during the extension time** as follows:  The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component.  The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

#### J. Problem Resolution and Placement Changes

58. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

59. Au Pair is hereby advised and understands that **AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered**; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

60. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family.  AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change.   **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.** If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

61. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair.  Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year.  **Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.**

62. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, Au Pair agrees to cooperate with AuPairCare during the entire re-matching process, including but not limited to ensuring

Page 4 of 6

**ATTORNEY EYES ONLY**

# AuPairCare

that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

63. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

64. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

65. In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.

66. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

67. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

68. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

69. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

70. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

71. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

72. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

73. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

74. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

75. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

rev 1/2012

Au Pair's Initials_____

CONFIDENTIAL

APC 000273

**ATTORNEY EYES ONLY**

# AuPairCare

76. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

77. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party.

    In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction

    of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

    In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

78. If there are any differences between this Agreement and any other program materials, this Agreement shall control.  AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

79. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

    Please initial each of the below statements:

    _____ (initial) I promise that the information I have given in the application form completed by me is accurate, I have read this entire agreement carefully, and I have had the opportunity to ask questions, obtain advice as to its meaning, and I understand it. I am capable of reading and understanding this agreement in English.  I do not rely on any promises, statements or representations that are not expressly stated in this Agreement. I have retained a copy of this Agreement for my files.

    _____ (initial) I agree to provide childcare services for my host family. I understand that my hours will not exceed forty-five (45) hours per week, for a maximum of ten (10) hours on any given day, over a period of five and one-half (5 ½) days on a given week, and that I will have at least one (1) full weekend free each month, scheduled in advance.

    _____ (initial) My signature below indicates acceptance of the terms of this Agreement, and is legally binding.  No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing.

    AU PAIR NAME (PRINT): _____

    AU PAIR NAME (SIGNATURE): _____   DATE: _____
                                                                        month/day/year

rev 1/2012
**CONFIDENTIAL**                                        **APC 000274**

ATTORNEY EYES ONLY

# AuPairCare

## AU PAIR AGREEMENT

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1.  Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2.  Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3.  Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4.  Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

5.  Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

6.  AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

7.  Au Pair understands that they cannot be married, engaged to be married or have children of their own and participate in AuPairCare's au pair program.

8.  Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

9.  Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee in the amount of US $_____ to Originating Exchange Organization.

10. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

11. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

12. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

13. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

14. Au pair agrees to pay a $300.00 USD cancellation fee, plus the **actual cost of international and/or domestic airfare** (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

15. Au pair agrees to pay a $300.00 USD change fee and **any applicable airfare penalties**, in the event he/she requests to change their arrival date.

### D. Responsibilities

16. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

17. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per

rev 2/11/2013

**ATTORNEY EYES ONLY**

# AuPairCare

month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

20. Au Pair is hereby advised and understands that if there is an **infant under the age of two years old** in the household, the **au pair must have 200 hours of documented experience working with children under the age of two.** Such documented experience shall be verified by AuPairCare prior to au pair placement.

21. Au Pair understands that in the event there is an **infant under the age of three months** in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.

22. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

23. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

24. If Au Pair is expected or permitted to drive the family car(s), Au Pair will obtain a valid international driver's license prior to arrival **in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program.

25. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

26. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

27. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

29. Au Pair agrees to exercise sound judgment and caution while participating in internet-based communities, dating and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

30. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. **Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

31. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

32. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

rev 2/11/2013

CONFIDENTIAL   APC 000276   Au Pair's Initials_____

**ATTORNEY EYES ONLY**

# AuPairCare

33. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be implemented in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child(ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

### F. Compensation and Financial Responsibility

34. Au Pair will receive room and board in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

35. Au Pair will receive a weekly stipend in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

36. Au Pair will receive two calendar weeks paid vacation (10-days), to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

37. Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.

38. Au Pair will receive subsidy of educational costs from the Host Family as outlined in the "Training and Education Requirements" section of this document.

39. Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

40. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore Au Pair is required to file U.S. individual tax returns, even if no taxes are due.

41. Au Pair is responsible for complying with any Federal or state labor and/or income tax laws that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

42. Au Pair is wholly responsible for personal expenses and management of personal finances. AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

43. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said

    coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

44. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

45. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

46. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

47. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

48. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

rev 2/11/2013

Au Pair's Initials_____

CONFIDENTIAL

APC 000277

**ATTORNEY EYES ONLY**

# AuPairCare

49.   Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

50.   Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

51.   In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

52.   Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State.  To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project** as defined by AuPairCare.

53.   **Au Pair understands that all 12-month program Au Pairs are required to attend courses of study** at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year.  Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

54.   Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family.   Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family.  Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans.  Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

55.   Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

56.   Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

57.   Au Pair understands that **Extension Au Pairs are required to repeat the educational component of the program during the extension time** as follows:  The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component.  The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

### J. Problem Resolution and Placement Changes

58.   Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

59.   Au Pair is hereby advised and understands that AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

60.   Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family.  AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change.   **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.**  If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

61.   Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair.  Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year.  **Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.**

62.   In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, Au Pair agrees to cooperate with AuPairCare during the entire re-matching process, including but not limited to ensuring

**ATTORNEY EYES ONLY**

# AuPairCare

that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

63.  If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

64.  If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

65.  In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.

66.  AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

67.  Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

68.  In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

69.  Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

70.  Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

71.  Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

72.  Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

73.  Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

74.  Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

75.  Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair and/or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

rev 2/11/2013

**CONFIDENTIAL**  APC 000279

Au Pair's Initials_____

ATTORNEY EYES ONLY

# AuPairCare

76. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

77. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party. In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction.  Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

78. If there are any differences between this Agreement and any other program materials, this Agreement shall control.  AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

79. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

**ENTIRE AGREEMENT**
Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
- I accept the terms of this entire Agreement and understand that it is legally binding
- I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
- No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
- I have retained a copy of this Agreement for my own records

Au Pair Full Name (Signature): _____

Au Pair Full Name (Print): _____     Date : _____

Month/Day/Year

rev 2/11/2013
CONFIDENTIAL                    APC 000280

**ATTORNEY EYES ONLY**

# AuPairCare

**2014 AU PAIR AGREEMENT**

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://j1visa.state.gov/programs/au-pair

3. Au Pair understands their rights as visa participant under the Wilberforce Trafficking Victims Act. Said rights and resources for can be found by visiting: http://travel.state.gov/pdf/Pamphlet-Order.pdf

4. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

5. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

6. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

7. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

8. Au Pair understands that they cannot be married, engaged to be married or have children of their own and participate in AuPairCare's au pair program.

9. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

10. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee to Originating Exchange Organization.

11. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

12. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

13. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

14. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

14. Au pair agrees to pay a $300.00 USD cancellation fee, plus the actual cost of international and/or domestic airfare (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

15. Au pair agrees to pay a $300.00 USD change fee and any applicable airfare penalties, in the event he/she requests to change their arrival date.

### D. Responsibilities

16. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

rev 12/18/2013

Au Pair's Initials_____

**CONFIDENTIAL**

**APC 000281**

**ATTORNEY EYES ONLY**

# AuPairCare

17.  Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

18.  Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

19.  Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

20.  Au Pair is hereby advised and understands that if there is an infant under the age of two years old in the household, the **au pair must have 200 hours of documented experience working with children under the age of two**. Such documented experience shall be verified by AuPairCare prior to au pair placement.

21.  Au Pair understands that in the event there is an infant under the age of three months in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.

22.  Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

23.  Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

24.  If Au Pair is expected or permitted to drive the family car(s), Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense. Failure to do so may result in termination from the program.

25.  Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

26.  Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

27.  Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

28.  Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

29.  Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities, dating and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

30.  Au Pair agrees not to send, receive or view inappropriate content (sexual or violent) in the host family home, or outside of the home using the host family's equipment (i.e. computer, cell phone, handheld device, tablet, DVD player, television, etc.) by means of, but not limited to: live video, photos, pre-recorded videos, instant messages, sexting/texting, social media posts/updates. Failure to adhere to this agreement may result in immediate termination from the program.

31.  Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program. Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

32.  Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

33.  Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this

rev 12/18/2013

**CONFIDENTIAL**

APC 000282

Au Pair's Initials_____

**ATTORNEY EYES ONLY**

# AuPairCare

Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

34. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be implemented in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child(ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

## F. Compensation and Financial Responsibility

35. **Au Pair will receive room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

36. **Au Pair will receive a weekly stipend in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.**

37. **Au Pair will receive two calendar weeks paid vacation (10-days)**, to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

38. Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.

39. **Au Pair will receive subsidy of educational costs** from the Host Family as outlined in the "Training and Education Requirements" section of this document.

40. Upon successful completion of the program, **Au Pair will receive a return flight airline ticket from AuPairCare** to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

41. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore Au Pair is required to file U.S. individual tax returns, even if no taxes are due.

42. **Au Pair is responsible for complying with any Federal or state labor and/or income tax laws** that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

43. **Au Pair is wholly responsible for personal expenses and management of personal finances.** AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses **not covered by insurance.** Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

## G. Travel and Accident Insurance

44. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website: http://www.aupaircare.com/current-au-pair/insurance. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes. *Note: This section [43] does not apply to au pairs recruited by Originated Exchange Organization; STS Student Travel Schools AB. STS Travel School AB au pairs should refer to section [44].*

45. If recruited by Originating Organization, STS Student Travel Schools AB, Au Pair will receive travel and accident insurance provided by STS Student Travel Schools AB through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes. Said information can be accessed by visiting www.faick.com/travelcare. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

46. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

47. **Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment.** It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

48. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

rev 12/18/2013

Au Pair's Initials_____

**CONFIDENTIAL**                    **APC 000283**

**ATTORNEY EYES ONLY**

# AuPairCare

49. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

50. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

51. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

52. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

53. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

54. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project as defined by AuPairCare.

55. Au Pair understands that all 12-month program Au Pairs are required to attend courses of study at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

56. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

57. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

58. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

59. Au Pair understands that Extension Au Pairs are required to repeat the educational component of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

60. Au Pair is hereby advised that by extending their program they must complete the new program terms in order to be eligible for a return flight home arranged by AuPairCare. In the event that the au pair chooses to leave the program early, he/she will be responsible for booking and paying for their own return flight home.

### J. Problem Resolution and Placement Changes

61. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

62. Au Pair is hereby advised and understands that AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

**Page 4 of 6**

**ATTORNEY EYES ONLY**

# AuPairCare

63. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.** If Au Pair has made a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

64. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.

65. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, **Au Pair agrees to cooperate with AuPairCare during the entire re-matching process,** including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

66. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

67. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

68. In the event Au Pair does not successfully complete their first year program, and extension program, if applicable, Au Pair is responsible for his/her return travel expenses.

69. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

70. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

71. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

72. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

73. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

74. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

75. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

76. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

77. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

78. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

Page 5 of 6

CONFIDENTIAL  APC 000285

Au Pair's Initials_____

ATTORNEY EYES ONLY

AuPairCare

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

79.  This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

80.  The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party.

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

81.  If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

82.  An electronic or facsimile signature on this Agreement shall be considered the same as an original.

ENTIRE AGREEMENT
Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
- I accept the terms of this entire Agreement and understand that it is legally binding
- I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
- No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
- I have retained a copy of this Agreement for my own records

Au Pair Full Name (Signature): _____

Au Pair Full Name (Print): _____     Date : _____

Month/Day/Year

rev 12/18/2013
CONFIDENTIAL                              APC 000286                         Au Pair's  Initials_____