# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

## PLAINTIFFS' OPPOSITION TO DEFENDANT AUPAIRCARE'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY LAWSUIT

---

### INTRODUCTION

Defendant AuPairCare ("APC") has been a part of this case since it first began on November 13, 2014. And for nearly two years, APC has made the strategic choice to litigate the case rather than attempting to dodge it through arbitration.

During those two years, APC tried (unsuccessfully) to dismiss Plaintiffs' claims on the merits. It opposed Plaintiffs' motion for conditional class certification on the merits. And it participated in and benefited from extensive discovery—including depositions from the two plaintiffs it would now send to arbitration. Most egregiously, it actively hid any intent to seek arbitration, waiting until the second of its two depositions had started before sending a letter to Plaintiffs' counsel requesting arbitration.

Now, having lost its motion to dismiss and facing real exposure, APC seeks to abort its old strategy and replace it with a new one—arguing for the first time that all of

Plaintiffs' claims must be arbitrated. APC is wrong. By continually and consistently litigating this case for two years, it has waived any right to arbitrate.

But even were the Court to find that the doctrine of implied waiver did not foreclose arbitration, APC's arbitration agreement would be unenforceable for many reasons. The contract was a "take-it-or-leave-it" contract of adhesion presented to individuals with no bargaining power or business sophistication, making it *procedurally* unconscionable. The arbitration provision is also *substantively* unconscionable because it contains an improper fee shifting provision, it improperly gives APC the sole discretion to choose the arbitral pool, and it requires arbitration in San Francisco.

## BACKGROUND

On November 13, 2014, Plaintiffs filed their first Complaint (DE 1), alleging that APC restrained trade by colluding with other Sponsor Defendants to fix *au pair* wages. (DE 1 at ¶ 87). Plaintiffs further brought their antitrust claim against APC on behalf of a nation-wide class of all standard *au pairs*, including *au pairs* who had been employed by APC. Rather than moving to compel arbitration, APC began to litigate on the merits.

On March 2, 2015, APC joined defendants' motion to dismiss Plaintiffs' complaint. (DE 97). Nowhere in their notice of joinder or in the motion to dismiss was there a reference to an agreement to arbitrate. Instead, Defendants argued that Plaintiffs' claims failed on the merits.

On March 13, 2015, Plaintiffs filed their First Amended Complaint ("FAC"), adding an allegation that APC told *au pairs* that any wage beyond $195.75 a week is illegal, and alleging, again on behalf of a nationwide class of all standard *au pairs* employed by APC, that APC illegally conspired to set *au pair* wages. (DE 101 at ¶ 143).

On March 31, 2015, APC sent a letter to Plaintiffs' counsel demanding pursuant to Rule 26(b)(3)(C) any statements from APC that Plaintiffs had obtained. (DE 137-1). Plaintiffs received similar requests from other defendants and responded to the requests from those defendants. (DE 173-1).

On April 20, 2015, APC moved to dismiss the FAC, again without any attempt to compel arbitration. (DE 135). Rather, APC again attacked Plaintiffs' claims on the merits. (*See, e.g.*, DE 135 at 3). That same day, APC joined defendants' motion to strike certain statements from the FAC, which relied on Plaintiffs' responses to other defendants' Rule 26(b)(C)(3) demands. (DE 134).

On June 9, 2015, APC joined in a motion to stay discovery filed by certain of the Sponsor Defendants. (DE 162). That motion sought a stay of discovery pending resolution of Defendants' motions to dismiss.

On July 6, 2015, APC participated in a conference before Magistrate Judge Tafoya, at the conclusion of which the Court ordered a stay of discovery pending the issuance of a recommendation on the Defendants' motions to dismiss. Again, APC did not raise the issue of arbitration. (DE 198, 218).

On February 22, 2016, Magistrate Judge Tafoya recommended that the Court deny virtually the entirety of Defendants' motion to dismiss. (DE 240). APC reacted not by seeking arbitration, but by filing objections to Magistrate Tafoya's recommendations.

On March 31, 2016 the District Court denied virtually the entirety of Defendants' motions to dismiss. (DE 258). And once again, APC declined to seek arbitration. Instead, on April 21, 2016, it answered Plaintiffs' FAC. (DE 286).

In that answer, APC for the first time referenced its arbitration agreement. But

3

rather than invoking its purported right to arbitrate, APC reserved its right to assert that Plaintiffs' claims were subject to mandatory arbitration (DE 286 at ¶¶16, 534) and raising an affirmative defense disputes with its *au pairs* are subject to mandatory arbitration provisions (*id.* at 91). APC then continued to litigate the case.

On April 25, 2016, APC participated in a status conference to set a case management schedule and determine the scope of discovery, advocating for the number of depositions Defendants should be permitted to take. (DE 307 at 87, 113). APC did not raise arbitration during that conference.

APC then began participating in discovery. On July 21, 2016, it participated in the deposition of Plaintiffs' investigator, David Keil. (*See* Hood Decl. Ex. B, at 206:14-212:17). On August 15, 2016, Plaintiffs produced to all defendants, including APC, 2,418 pages of documents. (See Hood Decl. ¶¶ 13, 15-18). That same day, Plaintiffs moved to amend the Complaint by adding new named plaintiffs, including Juliane Harning and Laura Mejia-Jimenez, both of whom had worked for APC. Ms. Harning and Ms. Mejia had both signed form employment agreements with APC containing identical arbitration provisions. (DE 431-1, Ex. 1, ¶ 77; DE 431-2, Ex. 2, ¶ 80).

On August 19, 2016, the parties appeared for a discovery conference at which depositions were scheduled and a briefing schedule for conditional class certification motion was set. (*See* Hood Decl. Ex. A). At that conference, counsel for APC stated that he was agreeable to moving forward with the depositions of Ms. Harning and Ms. Mejia, but wanted assurances that "by participating in discovery there's going to be no claim that we waived our objection on the motion to amend." (Hood Decl. Ex. A at 24). Both Plaintiffs' counsel and the Court confirmed that APC could object to the proposed

Second Amended Complaint ("SAC"), notwithstanding their participation in discovery. (*Id.* at 24-25). Yet again, APC did not mention arbitration. APC ultimately did not oppose Plaintiffs' motion to amend, which was granted, and the SAC was filed on October 17, 2016. (DE 395).

Meanwhile, APC continued to litigate the case and to receive discovery from Plaintiffs. In addition to those documents it received on August 15, between August 29 and September 7, APC received 4,381 pages of documents, 3,694 of which were documents from Ms. Harning.  (Hood Decl. ¶¶ 14, 20-27)

APC also continued to participate in depositions. APC was present for the depositions on August 25, 2016, August 30, 2016, and September 7, 2016. APC then deposed Ms. Harning and Ms. Mejia. First, on September 8, 2016, APC deposed Ms. Harning, who traveled to the United States from New Zealand. Next, on September 14, 2016, APC deposed Ms. Mejia, who lives in Germany and interrupted a visit to the United States to be deposed. (Hood Decl. ¶¶ 7-8). Mid-way through Ms. Mejia's deposition, APC sent an email to Plaintiffs' counsel attaching a letter asking whether Plaintiffs agreed to send the case to arbitration (*See* Hood Decl. Exs. D, E).

Despite having sent this letter, APC continued to participate in depositions. (*See, e.g.*, Hood Decl. Ex. F). APC also continued to accept documents from Plaintiffs, including 1,623 pages from other Plaintiffs between September 27, 2016 and October 3, 2016, and 421 pages from Ms. Mejia on October 12, 2016. (Hood Decl. ¶¶ 24-27).

On September 22, 2016, APC opposed Plaintiffs' motion for conditional class certification. In that motion, APC relied on the evidence it had gathered in discovery to substantively oppose Ms. Beltran's and Ms. Mejia's motion for conditional class

5

certification. (*See, e.g.*, DE 360 at 10). It also for the first time relied on the arbitration provisions in its *au pair* contracts, arguing (incorrectly) that the Court may not provisionally certify an FLSA class consisting of putative class members bound by arbitration agreements. (*Id.* at 10). In their opposition, Plaintiffs pointed out that APC had not initiated an arbitration proceeding, moved to compel arbitration, or moved to stay Ms. Harning's and Ms. Mejia's claims pending a decision on the arbitration of those claims. Still, APC did nothing to put the arbitrability of those claims before the Court.

Instead, APC continued to litigate on the merits. APC moved with other Defendants to file a sur-reply in further opposition to Plaintiffs' motion for conditional collective action certification (DE 404), vigorously opposed Plaintiffs' motion for a protective order regarding future discovery (DE 385), and argued the scope of permissible discovery in a courtroom hearing on October 25, 2016 (DE 411).

After all of that, on November 10, 2016 (just three days shy of the case's second anniversary), APC finally filed the instant motion to compel arbitration.

## ARGUMENT

### I.     APC WAIVED ITS RIGHT TO ARBITRATE

 "[T]he right to arbitration, like any other contract right, can be waived." *Reid Burton Constr., Inc. v. Carpenter's Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980). Here, APC waived any right to arbitration both by litigating this case for two years and by delaying its motion to compel arbitration—even after Plaintiffs' motion to file their SAC—to depose Ms. Beltran and Ms. Mejia.

Under long-settled Tenth Circuit law, a party may waive its right to arbitrate through its litigation conduct. Courts weigh six non-exclusive factors courts to determine

6

whether a party has impliedly waived its right to seek arbitration:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of the lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps, *e.g.* taking advantage of judicial discovery procedures not available in arbitration had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772-773 (10th Cir. 2010) (internal quotation omitted).[1]  Here, five of the six factors clearly weigh in favor of waiver.

*First*, APC's actions have been inconsistent with the right to arbitrate because APC strategically avoided arbitration for two years in the hope of getting a clean win on the merits. *See, e.g.*, *Renteria-Camacho v. DirecTV, Inc.*, 175 F. Supp. 3d 1308, 1312 (D. Kan. 2016) ("[o]nly after the court denied the motion to dismiss, and the parties participated in a planning conference, exchanged initial disclosures, and participated in a scheduling conference, did defendant request arbitration. These actions—after receiving plaintiff's discovery response that put defendant on express notice that an arbitration agreement was applicable—are inconsistent with the right to arbitrate and instead demonstrate an intent to litigate."). *Second*, APC has "substantially invoked" the "litigation machinery" by filing (and losing) dispositive motions, opposing conditional class certification, and demanding and receiving significant discovery. *Robinson v. Food*

---

[1] The standard for waiver is supplied by federal law rather than under California state law, which, as explained below, governs whether APC's contract may be enforced. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir.), *opinion amended on denial of reh'g,* 289 F.3d 615 (9th Cir. 2002).

*Serv. of Belton, Inc.*, 415 F. Supp. 2d 1221, 1223-24 (D. Kan. 2005) (finding a waiver where over "six months, the parties engaged in discovery, including written discovery, and the taking of the depositions of several plaintiffs, including at least three of the four plaintiffs who are the subject of defendants' motion"). *Third*, APC never sought a stay and delayed compelling arbitration, even after Plaintiffs filed their motion to amend in August, 2016. *See*, *e.g.*, *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir. 1994) (waiver occurred after a delay of four months before advancing arbitration claim); *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 886 F.2d 1249, 1261 (10th Cir. 1989) (affirming finding of waiver in part because the party that sought arbitration engaged in "a delay of more than twenty months and did not seek a stay at any time during that period"). *Fourth*, APC has taken advantage of discovery not available in arbitration.[2]  *See*, *e.g.*, *Hill*, 603 F.3d at 772-773 (specifically instructing district courts to consider whether the party seeking arbitration had been taking advantage of judicial discovery procedures not available in arbitration. And *fifth*, APC's delay in seeking arbitration prejudiced Plaintiffs, who have incurred significant expenses litigating APC's motions and responding to APC's discovery demands.  *See Hill*, 603 F.3d at 772 ("plaintiffs have been prejudiced by the cost and expense of the "litigation machinery"') (quotation marks omitted).

APC's only argument against waiver seems to be its passing contention that

---

[2] Under the arbitration provision in APC's employment contract, "the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Section 1282.6, 1283 and 1283.05."  (*See* DE 431-1, Ex. A, ¶77). The cited provisions apply specifically to procedures in arbitration, and provide—unlike under the Federal Rules, where a party may engage in document and deposition discovery as a matter of right—that depositions may "not be taken unless leave to do so is first granted by the arbitrator or arbitrators." Cal. Civ. Proc. Code § 1283.05(e).

8

arbitration was not "ripe" until the filing of the SAC. (DE 431 at 1-2; *id.* at 6 n.2). There can be no dispute, however, that APC failed to request arbitration or to take any step to vindicate its purported arbitration rights until after it had obtained many of the benefits of litigation—namely, dispositive motion practice and substantial discovery. Indeed, APC's continued delay despite asserting arbitration as an affirmative defense evinces an intent to try the case in federal court. *See Robinson*, 415 F. Supp. 2d at 1226 ("While plaintiffs may have been made aware [by the Affirmative Defense] of defendants' *right* to arbitrate, they were not notified of defendants' *intent* to arbitrate until the current motion was filed") (emphasis in original).

In any event, even if arbitration was not "ripe" until Plaintiffs sought to add Ms. Beltran and Ms. Mejia as Plaintiffs, APC's active participation in the litigation since August 15, 2016—when Plaintiffs' filed their motion to amend—was more than enough on its own to constitute waiver. The waiver doctrine exists in part to avoid the strategic "manipulat[ion] of the judicial process," *Hill*, 603 F.3d at 773 (10th Cir. 2010), but such manipulation is precisely what took place here.

Most egregiously, APC hid its intention to seek arbitration while pressing forward with depositions of Ms. Beltran and Ms. Mejia. First, at the August 19, 2016 discovery conference, APC indicated its concern that proceeding with the depositions of Ms. Beltran and Ms. Mejia would waive possible objections to Plaintiffs' motion to amend the complaint—an objection that it never ended up filing—but conspicuously avoided voicing any similar concerns with respect to arbitration. Second, and even more calculatedly, APC lay in wait until the second of the two depositions had begun before sending a letter to Plaintiffs' counsel requesting arbitration. If APC were proceeding in

good faith, it should have told Plaintiffs' counsel it was seeking arbitration, moved to stay discovery in the interim, and avoided making Ms. Beltran and Ms. Mejia travel around the world to attend depositions.[3]

Only after receiving the benefit of this significant discovery did APC move to compel arbitration. The Tenth Circuit has made clear that is the very type of "manipulation" warranting waiver. Indeed, "manipulation" does not imply or require a finding of bad faith—though the timing of APC's September 14 letter suggests such a finding may be warranted here. Instead, "manipulation" means only that the party tried to have it both ways, only seeking arbitration after taking advantage of the federal courts. *See Hill*, 603 F.3d at 773-74.[4]

For all of these reasons, APC waived any right to arbitrate by litigating this case for two years or, in addition, by strategically taking advantage of judicial discovery while masking its plain intention to seek arbitration once the motion to amend was filed.

---

[3]   In addition to deposing Ms. Mejia and Ms. Beltran, APC also demanded and received 4,014 pages of documents from Plaintiffs Harning and Mejia, received 5,976 pages of documents from the other proposed or named plaintiffs, and attended six other depositions. (*See* Hood Decl. at ¶¶ 3-8, 11-12).

[4]   APC's failure to seek a stay and to compel arbitration following the filing of Plaintiffs' motion to amend further distinguishes this case from cases where courts have held that an amendment was sufficient to revive a right to arbitration that had otherwise been waived through litigation conduct. *See, e.g., Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1199 (11th Cir. 2011) (finding that where plaintiff's Amended Complaint offered a new definition for the proposed class which greatly expanded the class, and where Defendant *immediately moved to compel arbitration* after amended complaint filed, arbitration right was revived, as the amended complaint "made major, not merely cosmetic, changes to its original complaint, altering and adding to the issues to be determined at trial"); *Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik GMBH*, 832 F. Supp. 1293, 1296 (E.D. Wis. 1993) (where plaintiff brought amended complaint adding additional basis for fraudulent inducement claim, additional prayer for relief, and a new count, *and defendants moved immediately for motion to compel arbitration* instead of answering amended complaints, arbitration right deemed "revived" despite long period of litigation which preceded amended complaint).

## II. The Arbitration Clause is Unenforceable

Separate and apart from APC's waiver of its purported right to arbitrate, the Court should deny APC's motion because the agreement is unconscionable.

Under the Federal Arbitration Act, an agreement to arbitrate is "valid, irrevocable and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, under the applicable choice of law provision (*see* DE 431-1, Ex. 1, ¶ 76), California law governs.

Under California law, contracts that are procedurally and substantively unconscionable may not be enforced. *Armendariz v. Foundation Health Pyschcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). "[T]he former focus[es] on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Id.* Both must be present for a court to refuse to enforce a contract, but they need not be present to the same degree. *Id.* In short, the "more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### A. The Arbitration Clause Is Procedurally Unconscionable.

"Procedural unconscionability addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1005 (N.D. Cal. 2015). "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix

11

printed form." *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 805 (Cal. Ct. App. 2005) (quotation omitted). In this case, APC's arbitration agreement is procedurally unconscionable due to both oppression *and* surprise.

Contracts presented in a take-it-or-leave-it manner are by their nature oppressive. *See Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016) ("Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced . . . contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.'"). Here, there was plainly no negotiation, as evidenced by the face of the contracts themselves, which contain blanks for the *au pair's* name and home city, but which are otherwise identical boilerplate. Further, Ms. Harning and Ms. Mejia confirmed that they were not given an opportunity to negotiate the agreements' terms. (Harning Decl. at ¶¶ 6-7) (Mejia Decl. at ¶ 6-7). And tellingly, APC essentially admitted the utter lack of any negotiation by any *au pairs* who signed the agreement when it informed Plaintiffs' counsel that "APC's . . . other au pairs" subscribed to the same "mandatory arbitration and forum selection clause." (Hood Decl., Ex. E at 1).

The sophistication of the party being asked to submit to arbitration is also relevant. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006). At the time they first contracted with APC, Ms. Harning and Ms. Mejia were 19- and 22-years' old respectively. (Mejia Decl. at ¶ 4) (Harning Decl. ¶ 4). Both were foreigners, both spoke English as a second language, and neither had experience with contract law. (Mejia Decl ¶¶ 2, 4, 8-12) (Harning Decl. at ¶¶ 2, 8-11). Neither even understood what the term "arbitration" meant. (Harning Decl. at ¶ 9) (Mejia Decl. at ¶ 8). *See Higgins v.*

12

*Superior Court*, 140 Cal. App. 4th 1238, 1252, 45 Cal. Rptr. 3d 293, 304 (2006), *as modified* (July 10, 2006) (finding youth and vulnerability of plaintiffs—aged 21, 19, 17, 16, and 14—contributed to finding of procedural unconscionability of arbitration clause in contract).

The procedural unconscionability of APC's agreement is compounded by the element of surprise. For example, the arbitration clause in the employment agreement was buried at the end of an 82-paragraph contract and was not highlighted in any way—there was no header or section heading indicating "arbitration" or even "dispute resolution." (*See* DE 431-1, Ex. 1, ¶ 77). *Compare, e.g., Pinnacle Museum Tower Assoc. v. Pinnacle Market Dev. (US) LLC*, 282 P.3d 1217, 1232 n.12 (Cal. 2012) (finding no surprise where the arbitration provisions of an agreement appeared under "bold, capitalized, and underlined" captions) *with Higgins*, 140 Cal. App. 4th at 1252–53 (finding procedural unconscionability where "[i]n contrast to several other paragraphs, no text in the arbitration provision is highlighted. No words are printed in bold letters or larger font; nor are they capitalized."). Moreover, the arbitration clause does not explain, in plain English or otherwise, that it purports to waive the *au pair*'s rights to access to the U.S. court system, trial by jury, or appeals, among other things. (*Id.*).

In sum, APC's purported arbitration agreement was procedurally unconscionable because it was hidden in an obscure provision purporting to waive the Plaintiffs' critical (but unenumerated) rights in a take-or-leave-it contract provided to young foreigners.

### B. The Agreement Was Substantively Unconscionable

APC's arbitration clause is substantively unconscionable for three reasons.

*First*, APC's arbitration clause contains an improper fee shifting mechanism that

grants to the prevailing party "attorney's fees and costs, including but not limited to the costs of arbitration." (*See* DE 431-1 Ex. 1 at ¶77). The Supreme Court has held that an arbitration agreement may be invalidated where a prospective litigant will be unable to "effectively . . . vindicate its statutory cause of action in the arbitral forum." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013); *see also Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966) (holding that the purposes of the FLSA may not be frustrated by contract). The FLSA provides that only prevailing *plaintiffs* may obtain attorneys' fees. 29 U.S.C. § 216 (b). Therefore, arbitration clauses—such as the one at issue here—that grant attorneys' fees to either prevailing plaintiffs or defendants violate a plaintiff's unwaivable rights under the FLSA and may not be enforced. *See, e.g.*, *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015) (holding that the imposition of a fee shifting provision in an arbitration clause was an "effective deterrent[] to [Plaintiff's] pursuit of his rights against [Defendant] under the FLSA and further demonstrate[d] the substantive unconscionability of arbitration in this context").[5]

*Second*, APC's arbitration clause is substantively unconscionable because it gives APC the exclusive right to choose the arbitration provider. (*See* DE 431-1, Ex. 1 at ¶ 77). *See Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 924-25 (9th Cir. 2013)

---

[5] Indeed, in addition to providing a basis for finding the contract substantively unconscionable under state law, the "effective vindication exception" to the FAA provides an independent ground for invalidating this arbitration agreement. *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376-77 (10th Cir. 2016) (in an FLSA action, despite finding that the arbitration agreement was procedurally conscionable and therefore would have been enforceable under Colorado state law, the 10th Circuit found that an arbitration agreement which would have forced the plaintiff to share in the costs of arbitration and which contained a provision mandating that the parties would each have to bear their own fees was unenforceable on the independent ground that the Arbitration Agreement would prevent the plaintiff and the putative class members from effectively vindicating their statutory rights under the FLSA).

(finding substantively unconscionable a provision whereby the employer "gets to pick the pool of potential arbitrators every time an employee brings a claim").

*Third*, the requirement that the dispute be decided by arbitration in San Francisco is unconscionable. California prohibits forum selection clauses for arbitration that "are unduly oppressive or have the effect of shielding the stronger party from liability," *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). Courts scrutinize "the respective circumstances of the parties," *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 908–10, 104 Cal. Rptr. 2d 888, 894–95 (2001), and analyze whether, given those circumstances, a "remote forum would work severe hardship." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1288 (9th Cir. 2006).

Neither Ms. Harning nor Ms. Mejia is a resident of California or has any connection to California. (Harning Decl. at ¶ 2, Mejia Decl. at ¶ 2). The only current nexus to California is the location of AuPairCare's headquarters. But the limitation of a venue to the location of the headquarters of a national employer (let alone one with an international workforce) is not reasonable. *See Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002) ("Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes").[6]

---

[6] APC cannot save its deficient arbitration clause by seeking to sever out the unconscionable terms, because arbitration clauses that are permeated by unconscionability are non-severable. *See Armendariz*, 24 Cal. 4th 83, at 124 (2000). "An agreement to arbitrate is considered "permeated" by unconscionability where it contains more than one unconscionable provision," *Magno v. Coll. Network, Inc.*, 204 Cal. Rptr. 3d 829, 841 (Ct. App. 2016), *i.e.*, where, as here, there is "no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Armendariz*, 24 Cal. 4th at 124 (2000). Furthermore, the contract does not otherwise contain a severance clause.

**Conclusion**

For the foregoing reasons, the Court should deny AuPairCare's motion.

Dated: New York, New York
December 5, 2016

Respectfully Submitted,

TOWARDS JUSTICE

 /s/   Alexander Hood
Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org
*Attorneys for Plaintiffs*