**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

     Plaintiffs,

v.


INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, [LC. DBA GOAUPAIR;
AGENT AU PAIR;
A P.E.X AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

     Defendants.

---

**DEFENDANT AUPAIRCARE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION (DOC. #449) TO AUPAIRCARE, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY LAWSUIT (DOC. #395)**

---

I.     **INTRODUCTION**

     Plaintiffs do not dispute that the AuPairCare, Inc.'s ("AuPairCare" or "APC")

arbitration agreement covers the subject matter of this case as set forth in the Second

Amended Complaint ("SAC").  Their sole arguments in opposition to the enforcement of

this agreement are that APC has "waived" its right to assert it and it is "unconscionable."

1

Both arguments, as to which Plaintiffs bear a heavy burden of proof, miss the mark.

AuPairCare's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit was its first response to the first pleading in this case, the SAC, that named as plaintiffs persons (Juliane Harning ["Harning'] and Laura Mejia Jimenez ["Mejia"]) who are subject to the mandatory arbitration provisions of the APC Au Pair Agreement (Doc. ## 431-1, 431-2).  Before Harning and Mejia were added as plaintiffs (by virtue of the Court's October 17, 2016 Order granting Plaintiffs' motion to file the SAC (Doc. # 394), there was no pleading on file in this case that triggered those mandatory arbitration provisions.  In the First Amended Complaint ("FAC"), there was only a single antitrust count asserted against APC, and no current or former APC-sponsored *au pairs* (hereinafter "APC *au pairs*") were named.  No antitrust (or other) class, let alone one that included APC *au pairs*, had been certified.  Had APC filed a motion to enforce the arbitration agreement before that agreement was actually before the Court, based on the hypothetical possibility that one or more current or former APC au pairs *might be* added *later* to this case, it would have been seeking an advisory opinion — an idle act, beyond the Court's Article III jurisdiction.  Plaintiffs no doubt would have argued that the arbitration issue was not properly before the Court and APC had jumped the gun.

Although APC could not have justifiably filed this arbitration motion sooner than it did, it provided Plaintiffs with ample notice, at every available opportunity, that in the event such persons *were* added as plaintiffs, they would be bound by mandatory arbitration agreements, and APC reserved all rights to enforce those agreements.  Thus,

1.   In its Answer to the FAC it asserted the Affirmative Defense that: "[a]ny alleged disputes between this Defendant and the au pairs it has sponsored are subject to mandatory arbitration provisions."  ("Second Defense," Doc. #286 at p. 91);

2.   In APC's responses to Plaintiff's interrogatories and requests for production of documents, served on May 4, 2016, it asserted :

2

"Defendant objects to these requests on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.  Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper. <u>AuPairCare expressly reserves the right to move to dismiss this action and/or compel arbitration.  Nothing in these responses or objections may be deemed a waiver of that right.</u>"  (Doc. #431-3 at p. 14 [emphasis in original]; *see also id.* at 16-32, 36, 38, 39, 40, 41);

3.  In response to Plaintiffs' First Request for Production, APC produced copies of the APC Au Pair Agreements for 2010-2015, which contained the subject mandatory arbitration agreements.  (Doc. #431-3, p. 4, ¶ 5, *id.* at pp. 46-78; 431-4 at pp. 1-12);

4.  Plaintiffs, having been apprised of (and received) these mandatory arbitration agreements, propounded upon APC a Second Request for Production, which specifically asked for "all arbitration agreements that you contend apply to these claims."  (Doc. # 431-3, p. 3, ¶ 6);

5.  In response to this Request, APC again asserted the objection of the mandatory arbitration bar (*id*; 431-4 at p. 15), and referred Plaintiffs, by Bates numbers, to the APC Au Pair Agreements previously produced, which contain the arbitration provisions (Doc # 431-4 at p. 18);

6.  On September 14, 2016, before the Court had ruled on the pending Motion to Amend (for leave to file the SAC), APC requested of Plaintiffs' counsel that if Harning and Mejia were added as plaintiffs, they stipulate to referring this case to arbitration.  (Doc # 431-3, P. 5, ¶ 8; 431-4, pp. 71-72).  **Plaintiffs never even responded to that letter.**  (*See* Doc. # 431-3, p. 5, ¶ 8); and

7.  In APC's Opposition to Plaintiffs Second Motion for Conditional Collective Certification (Doc. # 360), APC again asserted the defense of the mandatory arbitration bar.  (*Id.* at pp. 1, 6-8).  Because of (a) Plaintiffs' simultaneous, late filing of their Motion to Amend and Second Motion for Conditional Collective Certification (on August 15, 2015, the last day permitted in the Court's Scheduling Order), and (b) the Court's August 19, 2016 Minute Order (Doc. # 333) directing that discovery relating to the certification motion be conducted and oppositions thereto be filed before the Court ruled on the motion to amend, APC filed its opposition to the conditional certification motion before the Court had formally ruled on the proposed addition of Harning and Mejia.

Plaintiffs unquestionably were on notice of the mandatory arbitration provisions

<u>months</u> before filing their motion for leave to file the SAC and their second motion for

conditional collective action certification.[1]  They gloss over all of these factors, and do

---

[1] Both of the Plaintiffs' motions for conditional certification are pending before the Court. As to APC, granting this motion to compel arbitration would moot Plaintiffs' second motion for conditional certification.

AFDOCS/14412778.1

not even mention they chose to ignore APC's demand for arbitration made before filing this motion.  The timing of this motion was dictated by Plaintiffs' own delay in seeking to add as plaintiffs former APC *au pairs* Harning and Mejia.  Contrary to Plaintiffs' unfounded contention, APC has not "manipulated" the judicial process.  Plaintiffs have not cited a single case like this one, in which the late addition of the parties bound by the arbitration cause necessitated the filing of the motion to compel arbitration.  They have in no way been prejudiced by the timing of this motion.  The discovery taken by Plaintiffs of APC (some of which, as noted, targeted the very arbitration agreements at issue) and by APC is permitted in the APC arbitration agreement and can be used in the arbitrations of Harning's and Mejia's claims.  Plaintiff's waiver argument is not just lacking in merit, it is wholly disingenuous.

Plaintiffs' unconscionability argument also is untenable.  First of all, Plaintiffs fail to come to grips with the Federal Arbitration Act, 9 U.S.C., § 1 *et seq.*  (FAA), and case law interpreting the FAA, which overwhelmingly favor the arbitration of disputes and hold that the Act preempts state law that encroaches upon the enforcement of arbitration provisions.  Second, the APC arbitration agreement meets all putative state law requirements for enforceability.

Last, Plaintiffs fail to mention that in the event the APC arbitration agreement is "deemed void or inapplicable," Harning and Mejia have agreed this case must be brought (at their or APC's election), in a court in California.  (Doc. ## 431-1, p.10, ¶77, 431-2, p.7, ¶8)  Thus, if this Court were to decline to compel arbitration, the appropriate venue would be a California federal court.

## II.   APC DID NOT "WAIVE" ITS RIGHT TO ARBITRATE

"The burden of persuasion lies with the party claiming that the right to arbitration has been waived." *Hill v. Ricoh Americas Corp.*, 603 F.3d. 766, 775 (10th Cir. 2010) (holding no waiver of arbitration rights).  "A party asserting a waiver of arbitration has a heavy burden of proof." *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464,

4

466 (10th Cir. 1988) (finding no waiver of arbitration rights).  "[I]n assessing whether that burden has been met, we give substantial weight to the strong policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."  *Hill*, 603 F.3d at 755 (internal citation omitted).  *See also Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Plaintiffs have not met that heavy burden.  The do not cite a single case that holds that an arbitration right can be waived before any party subject to that right has even joined the case.  No such case exists.

Indeed, courts in this Circuit and elsewhere have recognized that where asserting the right to arbitration would be futile or premature, there is no "waiver" of the right to arbitrate through participation in a court proceeding or compliance with court procedures.  Thus, in *Peterson v. Shearson/American Express, supra* (cited by Plaintiffs), the Tenth Circuit held there had been no waiver because:  "[t]here was no requirement that Shearson make a futile attempt to obtain arbitration on the federal claim given the state of the law; indeed, it would be difficult to argue that such an attempt had a basis in existing law."  849 F.2d at 466.  The *Peterson* Court also cited *Miller v. Drexel, Burnham, Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986) for the proposition that there is "no need for a party to engage in futile gestures to avoid a claim of waiver of arbitration."

In *Krinsk v. SunTrust Banks, Inc.* 654 F.3d 1194 (11th Cir. 2011), the Eleventh Circuit rejected plaintiff's waiver argument on facts closely analogous to those at bar.  In *Krinsk*, the plaintiff filed a class-action complaint, and the defendant moved to dismiss it for failure to state a claim, but did not assert the arbitration bar.  The litigation proceeded for approximately six months while the parties waited on a ruling on the pending motion to dismiss.  The lower court eventually granted the motion in part and allowed plaintiff leave to file an amended complaint.  The amended complaint changed the class definition.  In the defendant's answer to the amended complaint, it asserted

AFDOCS/14412778.1

the arbitration bar as an affirmative defense, and filed a motion to compel arbitration. Thus, as in the present case, the defendant in *Krinsk* filed its motion to compel arbitration only after the amended complaint had been filed with leave of court. The Eleventh Circuit, in rejecting the plaintiff's waiver argument, ruled the arbitration right was revived, as the amendment complaint "made major, not merely cosmetic, changes to the original complaint, altering and adding to the issues to be determined..." 654 F.3d at 1199. Here, the case against waiver is much stronger, as the FAC did not name as plaintiffs any current or former APC au pairs and thus, there were no claims subject to APC's mandatory arbitration agreements until the SAC was filed.

In *Embirex Inc. v. K.H. Schussler Fur Umwelttechnik GMBH*, 832 F.Supp. 1293 (E.D. Wis. 1993), the court also rejected plaintiff's argument that the right to arbitrate had been waived. Defendants moved to stay the case in favor of arbitration in response to the second amended complaint. The court, while noting that defendants had stipulated to the first amended complaint, which arguably gave rise to a right to arbitration, found that was not enough to support plaintiff's waiver argument in light of defendants' motion to compel arbitration shortly after the filing of the second amended complaint. *Id.* at 1296. In the present case, APC also filed a motion to compel arbitration in response to the SAC, but the FAC did <u>not</u> implicate the right to arbitrate.

In *Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638 (7th Cir. 1981), the Court also ruled that the addition of arbitrable claims in an amended pleading " revived" the right to arbitration as to all arbitrable claims noting that waiver may not be inferred on the basis of conduct relating to non-arbitrated issues. (*Id.*, at 641-42.)[2]

---

[2] *See also Williams v. Cigna Financial Advisors*, 56 F.3d 656, 661-62 (5th Cir. 1995) (no waiver despite extensive activity in court case [including the filing of a counter-claim] where defendant filed its motion to arbitrate "as soon as it discovered the dispute was subject to arbitration"); *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 890 (2nd Cir. 1985) (no waiver where pre-arbitration motion state of the law was a "formidable obstacle to arbitration").

AFDOCS/14412778.1

The futility of APC's moving to compel arbitration sooner should dispose of the implied waiver issue.  However, other relevant factors also militate against waiver.  As noted in *Hill*, generally,

> Courts weigh six non-exclusive factors courts to determine whether a party has impliedly waived its right to seek arbitration: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of the lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps, *e.g.* taking advantage of judicial discovery procedures not available in arbitration had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

603 F.3d at 772-773.

APC has not taken any action "inconsistent with [its] right to arbitrate."  It could not assert that right unless and until there were parties-plaintiff in the case subject to that right.  That did not happen until the SAC was approved by the Court and on file.  And even before APC could have asserted its right to arbitrate, it provided Plaintiffs with consistent notice of its intention to assert that right if and when APC *au pairs* were added to the case.

Second, although APC complied with this Court's procedures prior to the addition of Harning and Mejia and timely responded to Plaintiffs' discovery, APC notified Plaintiffs of its arbitration rights early on, in its Answer to the FAC.  The only discovery initiated by APC in this case was the depositions of Harning and Jimenez and the documents requested for those depositions.  Because the Court ordered that such depositions be taken before it would rule on the motion to amend the complaint, APC took them before the deponents were technically plaintiffs.  Compliance with the Court's Orders is no basis to imply a waiver of arbitration.  Moreover, under the APC Agreement, these same depositions may be used in the arbitrations, as they are

7

permitted in the California Code of Civil Procedure referenced therein.  (Doc. ## 431-1, 431-2).[3]

Third, APC is not requesting enforcement of the mandatory arbitration agreement close to the trial date.  No trial date has been set.  APC timely sought to dismiss, or stay this action in its very first response to the SAC.

Fourth, APC has not filed a counterclaim.

Fifth, APC's limited discovery in this case (the timing of which, as noted, was mandated by the Court's Order on sequencing of discovery and briefing on pending motions), *is* available in arbitration.  As noted, APC's arbitration agreement provides that the same types of discovery available under the California Code of Civil Procedure is available in arbitration.  (Doc. ## 431-1, 431-2).  *See Hill*, 603 F.3d at 775-76 (that discovery taken in court case also was available in arbitration prompted court to reject implied waiver claim).

Sixth, there has been no delay by APC in asserting its arbitration rights, much less one that had "misled or prejudiced" Plaintiffs.  Plaintiffs' argument that APC should have brought this motion before the Court ruled on the motion to amend (on the proposed SAC) is procedurally wrong, and Plaintiffs cannot claim any prejudice due to APC's filing of its motion in response to the SAC.[4]

APC is but one of fifteen (15) defendants in this case, and the litigation has proceeded apace against all Defendants notwithstanding APC's repeated notification of

---

[3] Contrary to Plaintiffs' assertion, APC did not initiate a motion to dismiss the original Complaint, but rather joined in other defendants' motion.  The deposition of David Kiehl was noticed by Cultural Care, Inc. APC was but one of 14 defendants who were represented at that deposition.

[4] Plaintiff's timing arguments beg the question: Before any APC-sponsored *au pairs* were in the case, what would a stay have looked like – staying the action indefinitely, until Plaintiffs' counsel got around to deciding whether to seek to add such individuals as plaintiffs and then, if the Court approved it and the parties proceeded to arbitration, until that potential arbitration had been completed?  Obviously unworkable.

AFDOCS/14412778.1

Plaintiffs that if and when current or former APC *au pairs* were added to the case, it would assert its right to mandatory arbitration.  This case will continue apace with respect to the other Defendants if the claims against APC are referred to arbitration.

## III.   PLAINTIFFS HAVE NOT MET THEIR BURDEN OF PROVING THAT THE APC ARBITRATION AGREEMENT SHOULD NOT BE ENFORCED.

Plaintiffs have not met their heavy burden of overcoming the presumption, recognized under the FAA and California law, that the APC arbitration agreement should be enforced.  (*See* APC's Op. Mem. pp. 7-11).  In trying to attack the validity of this agreement, they contradict their own testimony and mischaracterize the terms of the Agreement.  The Agreement should be enforced according to its terms, and the claims of Harning and Mejia referred to arbitration.

### A.   The APC Arbitration Agreement is Procedurally Conscionable.

Plaintiffs claim, for the first time, that they did not "understand" the arbitration agreement.  This contradicts their own deposition testimony.  Harning, who signed up for the APC *au pair* program *twice*, testified:

> Q.  You signed a contract with AuPairCare twice in the past, haven't you?
>
> A.   Yes.
>
> Q.  Did you understand it before you signed it?
>
> A.  Yes, because we got it in German.

(Doc. # 431-4, at p. 31, ll. 1-6).

> Q.  Were there any portions of this Au Pair Agreement that you have any confusion about or misunderstandings or needed any counseling on?
>
> A.  I don't remember exactly, but I don't think so.
>
> Q.  Okay.  So when you signed it, you agreed to abide by the terms of the Au Pair Agreement, right?
>
> A.  Yes.  I - - yeah.

9

(*Id.* at p. 33, ll. 3-10.)

Mejia also testified in deposition that she signed the *au pair* Agreement willingly and voluntarily, and determined that the statements in the Agreement were true:

> Q. Exhibit 53 is a copy of the 2014 Au Pair Agreement between AuPairCare and Ms. Mejia… Do you recognize this document, Ms. Mejia?
>
> A. Yes.
>
> Q. Is that your signature that appears on the last page of this document?
>
> A. Yes.
>
> Q. Did you sign this document willingly and voluntarily?
>
> A. Yes…
>
> Q. Ok. And did you review this document before you signed it?
>
> A. Yes.
>
> Q. Did you ever see a Spanish version of this Au Pair Agreement before you signed it?
>
> A. Yes.
>
> Q. Ok. And did you satisfy yourself that the statements in this document were true before you signed it?
>
> A. Yes.
>
> Q. Did you satisfy yourself that the statements and provisions in this document were acceptable to you before you signed it?
>
> A. At that time, yes.

(Doc. # 431, p. 63, l 10- p. 65, l. 6)

In addition, in signing the APC Au Pair Agreements, Plaintiffs represented that they read and understood the provision of the Agreement. (Doc. # 431-1, p. 10, ¶ 79; 431-2, p. 7, ¶ 82). In this lawsuit, Plaintiffs have asserted other provisions of the APC Agreement in arguing, for example, they should be permitted to bring a collective action on behalf of a putative class – never claiming they did not understand *those* provisions. These arbitration provisions are clear, straightforward and understandable.

AFDOCS/14412778.1

There is no effort to surprise or hide anything.  They are procedurally valid.

**B.     The APC Arbitration Agreement Is Substantively Conscionable.**

In challenging the substantive conscionability of the APC Arbitration Agreement, Plaintiffs misrepresent its terms.  Their lead argument against enforcement is that it has a fee-shifting provision.  However, that provision ***only applies*** to "action[s] including arbitration, brought for breach of this Agreement. . . "  (Doc. # 431-1, at p. 10, ¶77; Doc. # 431-2, p. 7, ¶ 80).  Here, while there is no dispute that the claims in this case "arise out of" the APC Agreement and are thus subject to the mandatory arbitration clause, neither Harning nor Mejia have brought claims in this action for "breach of this Agreement."  That fee-shifting provision does not apply here.  It would not apply to claims brought under the FLSA, for example, rendering inapposite the so-called "effective vindication exception" cited by Plaintiffs.  In sum, Plaintiffs' primary attack on the substantive enforceability of this Agreement is a red herring.

That the Agreement provides that the arbitration *provider* be selected by APC, does not render it unconscionable.  That provision does not give APC the power to select a particular arbitrator, but merely ensures that a reputable provider, such as AAA or JAMS, be used.  Its intent is to protect the interests of both *au pairs* and APC.

Plaintiffs' reliance on *Chavarria v. Ralphs Grocery Co.*, 733 F.3rd 916 (9th Cir. 2013), is misplaced.  In that case, unlike this one, the arbitration provision "explicitly prohibit[ed] the use of an administrator from either the American Arbitration Association ("AAA") or the Judicial Arbitration and Mediation Service ("JAMS")."  *Id*. at 920.  At issue in *Chavarria* was not the selection of a <u>provider</u> of arbitration services, but the peculiar procedure for selecting a particular arbitrator (providing that names may be stricken from each side's list, with the lone remaining arbitrator on a list "decid[ing] the claims." *Id*.)  The Court found that the process could disadvantage a plaintiff-employee who initially sought arbitration, and thus was unfair, noting that Ralphs itself had "not argued that the selection process is fair."  *Id*. at 925.  Here, by contrast, once a reputable

11

provider is selected, the parties will be afforded the selection procedures provided by that provider, *e.g.*, AAA or JAMS.  The APC Agreement itself requires that the arbitration be "neutral."

That the APC Agreement specifies that the arbitration be held in San Francisco, California, is simply consistent with the federal venue statute.  28 U.S.C. §1391, which "govern[s] the venue of all civil actions brought in district courts of the United States," provides that "a civil action may be brought in "a judicial district in which any defendant resides. . . "  28 U.S.C. § 1391(b)(1).  APC is a California corporation that maintains its principal place of business in San Francisco.  Therefore, under 28 U.S.C. § 1391(c)(2), venue is appropriate as to it in San Francisco where not only it is subject to the court's personal jurisdiction as a defendant, but also, if it were to proceed as a plaintiff, is the "only… judicial district" in which it may bring suit.  Therefore, this arbitration agreement contains the same procedural safeguards and venue provisions as would apply to a court action.  There is nothing unfair or unconscionable about that aspect of this Agreement.  Plaintiffs have fallen fall short of meeting their burden of establishing that the APC Agreement is so one-sided as to "shock the conscience."[5]

## IV.    CONCLUSION

For the foregoing reasons and those set forth in APC's Opening Memorandum,

//

//

//

//

//

---

[5] As noted in APC's Opening Memorandum, *Armandariz v. Foundation Health Psychare Servs., Inc.,* 6 P.3d 669 (Cal. 2000), applies only to employees.  APC is not an "employer" of *au pairs* - - notwithstanding Plaintiffs' attempt to label it as a "national employer."  And to the extent that case imposes restrictions on arbitrations that violate the FAA, it cannot get in the way of enforcing this Agreement.

AFDOCS/14412778.1

the Court should grant APC's motion to compel arbitration and dismiss, or alternatively stay, this action.

Dated this 19th day of December, 2016.

Respectfully submitted,

s/Thomas B. Quinn
Thomas B. Quinn
GORDON & REES, LLP
555 17th Street, Suite 3400
Denver, Colorado  80202

**Attorneys for Defendant
AuPairCare, Inc.**

AFDOCS/14412778.1

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system, which will send notification to all counsel referenced below, and/or sent via electronic mail on this the 19th day of December, 2016 addressed to:


Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
BOIES SCHILLER & FLEXNER, LLP
llouis@bsfllp.com
smccawley@bsfllp.com
smcelroy@bsfllp.com
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com

    *and*

Alexander N. Hood
TOWARDS JUSTICE – DENVER
alex@towardsjustice.org
***Attorneys for Plaintiffs***


Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
Joseph H. Hunt
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
jhunt@shermanhoward.com
***Attorneys for Defendant InterExchange, Inc.***


William J. Kelly, III
Chanda M. Feldkamp
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com
***Attorneys for Defendant USAuPair, Inc.***

14

AFDOCS/14412778.1

Meshach Y. Rhoades
Martin J. Estevao
ARMSTRONG TEASDALE, LLP
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
***Attorneys for Defendant GreatAuPair, LLC***


Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
bogdane@hotmail.com
***Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair***


David B. Meschke
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
dmeschke@bhfs.com
mfitzgerald@bhfs.com
***Attorneys for Defendant EurAupair InterCultural Child Care Programs***


James E. Hartley
Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART, LLP
jhartley@hollandhart.com
aahubbard@hollandhart.com
jsbender@hollandhart.com
***Attorneys for Defendant Cultural Homestay International***


Brian A. Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

        *and*

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
***Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair***

AFDOCS/14412778.1

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
***Attorney for Defendant Agent Au Pair***

Lawrence L. Lee
Susan M. Schaecher
FISHER & PHILLIPS, LLP
llee@laborlawyers.com
sschaecher@laborlawyers.com

and

John B. Fulfree
Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
PUTNEY, TWOMBLY, HALL & HIRSON, LLP
jfulfree@putneylaw.com
jcartafalsa@putneylaw.com, jbc54@cornell.edu
rtucker@putneylaw.com, robert.m.tucker1@gmail.com
smacri@putneylaw.com

***Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation;
American Institute for Foreign Study d/b/a Au Pair in America***

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
CHOATE, HALL & STEWART, LLP
joan.lukey@choate.com
rbuchanan@choate.com
mgass@choate.com
jwolosz@choate.com
lkruzer@choate.com

and

AFDOCS/14412778.1

Diane R. Hazel
James M. Lyons
Jessica L. Fuller
LEWIS ROCA ROTHGERBER CHRISTIE LLP
dhazel@lrrc.com
jlyons@lrrc.com
jfuller@lrrc.com
**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair**


Christian D. Hammond
DUFFORD & BROWN, P.C.
chammond@duffordbrown.com

        *and*

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com
**Attorneys for Defendants A.P.E.X. American
Professional Exchange, LLC d/b/a
ProAuPair;
20/20 Care Exchange, Inc.
d/b/a The International Au Pair Exchange**


                              */s/ Karla Freeman*
                              For Gordon & Rees LLP

AFDOCS/14412778.1