# Ex. K

# B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

October 11, 2016

Peggy Kozal, Esq.
555 17th Street, Suite 3400
Denver, CO  80202

>      *Re:*      ***Beltran v. InterExchange, et al.***

Dear Ms. Kozal,

Thank you for your work to diligently respond to Plaintiffs' First Request for the Production of Documents ("First RFP") and Plaintiffs' First Set of Interrogatories ("First Interrogatories"). We write to address the deficiencies in your production.

### General Objections

Classwide Discovery.  We begin by noting that you have made an almost uniform objection to the First RFP and First Interrogatories on the basis that they improperly seek classwide discovery before any class has been certified or any motion for certification has been filed. You have made this objection with respect to Document Requests #1, #2, #7, #8, #10, #12, and #14, and Plaintiffs' Interrogatories #1, #3, and #4. You have also objected to Document Requests #2 and #7, and Plaintiffs' Interrogatories #1, #3, and #4 on the basis that they violate the privacy rights of AuPairCare and non-parties, an objection directly tied to the issue of whether Plaintiffs' are entitled to class wide discovery. These objections are unjustified. The Magistrate Judge specifically rejected Defendants' attempts to bi-furcate discovery into phases relating to class and merits discovery.  In addition, a Motion for conditional certification is now pending and the caselaw is clear that plaintiffs are generally entitled to pre-certification discovery to establish the requirements for a class action.[1]

If you will not withdraw this objection and begin production of class related discovery immediately, we will need to raise this issue with the Magistrate Judge.  The delay and bifurcation of discovery will impede the efficient adjudication of this matter and will not allow discovery sufficient for Plaintiffs to establish their claims.  Please let us know by Thursday October 19, 2016 whether you will withdraw this objection; otherwise we will seek to elevate this issue to the Magistrate.

---

[1] *Roberts v. C.R. England, Inc.*, No. 2:12-CV-0302, 2013 WL 3893987, at *2 (D. Utah July 26, 2013). ("Some discovery is necessary prior to a determination of class certification.").  See also *In re Bank of Am. Wage & Hour Employment Practices Litig.*, 275 F.R.D. 539-543 (D. Kan. 2011) (allowing discovery pre-certification, noting that to obtain certification Plaintiffs were required to show that members of the putative class were similarly situated.) (finding the privacy interests of the Bank's former employees did not outweigh Plaintiffs' need for discovery.)

Peggy Kozal
January 8, 2017
Page 2

Confidential proprietary business information. You have objected to a number of requests, specifically Requests #1, #2, #7, #8, #10, #12, #16, #17, and #18, and Plaintiffs' Interrogatories #1, #3, and #4 on the basis that they are proprietary and confidential. Even if this designation were appropriate for the documents encompassed by these requests – which include documents concerning au pair compensation and a request for a list of AuPairCare's employees - we have a protective order[2] in place specifically for the protection of confidential information. Therefore, this objection must be withdrawn.

Attorney-client privilege and/or work product doctrine. AuPairCare objects to Plaintiffs' request for correspondence with or about any other Defendant and agreements entered into by Defendants, on the basis that the requests seek documents subject to the joint defense privilege or the attorney-client privilege and/or work product doctrine.[3] This objection is specious and must be withdrawn. To further address this objection, Plaintiffs clarify that we only ask that ESI be searched prior to the date of service and that no Request seeks communications to, from, or produced by outside litigation counsel.

Arbitration. We also note that you have made a uniform objection to the First RFP and First Interrogatories on the basis that the dispute is governed by an arbitration clause. Even if this objection was valid, you have waived this objection by participating in the first two years of litigation.

## Specific Objections

Deficiencies regarding specific responses are discussed below.

**RFP Nos. 1, 2, 7, 8, 10, 12, & 14.** AuPairCare's blanket refusal to produce responsive documents for the Putative Class members is entirely unjustified. As discussed above, unless your objections are withdrawn, we will seek resolution before the Magistrate.

**RFP Nos. 3 & 9**: AuPairCare states that it has no documents responsive to these requests. Please identify the searches that were conducted in response to these requests.

---

[2] "Generally, concerns about confidentiality or the disclosure of private or sensitive information are not a sufficient basis to withhold discovery and are best addressed in the form of a protective order." *In re Bank of Am. Wage & Hour Employment Practices Litig.*, 275 F.R.D. 534, 541 (D. Kan. 2011).

[3] One relying on the joint defense privilege must establish that (1) the documents are protected by the attorney client privilege and/or the work product doctrine; (2) there was existing litigation or a strong possibility of future litigation at the time of the communications reflected in the documents; and (3) the documents were exchanged between parties and their separate counsel for the purpose of mounting a common defense against the litigation. *Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co.*, 142 F.R.D. 471, 478-479 (D. Colo. 1992). See also *CGC Holding Co., LLC v. Hutchens*, No. 11-CV-01012-RBJ-KLM, 2016 WL 233551, at *2 (D. Colo. Jan. 20, 2016).

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

Peggy Kozal
January 8, 2017
Page 3

**RFP No. 4.** Your objection that Plaintiffs' request for documents concerning any meetings between you and any other sponsor is not relevant is not credible. This request goes to the core of Plaintiffs' claims that Defendants conspired to keep the weekly stipend for au pairs fixed at $195.75.

**RFP No. 5.** AuPairCare objects to this request on the basis that it seeks documents and information subject to the joint defense privilege, attorney-client privilege and/or work product doctrine. As stated above, this objection is specious and must be withdrawn. Correspondence with or about any other Defendant in this lawsuit is relevant as to whether there may have been a conspiracy to keep the weekly stipend for an au pair fixed at $195.75.

**RFP No. 6:** AuPairCare states that it has no non-privileged documents responsive to Request No. 6. Please identify the searches that were conducted in response to this request.

**RFP No. 14**: Documents relating to complaints au pairs may have made about compensation or work schedule are entirely relevant as to whether that compensation was fixed and/or whether they may have been eligible for or received an increase. In lieu of a full production, Plaintiffs will accept (1) a stipulation that communications to host families were uniform and stated that the pay was fixed at $195.75 for standard au pairs; or (2) the audits that summarize the information requested in RFP No. 14 and were provided to the Department of State. These documents are easily identifiable and eliminate any production burden.

**RFP No. 16 & 17:** You have also objected to Plaintiffs' requests for AuPairCare's financial statements and information relating to its corporate structure. Plaintiffs have the right to all information that may lead to the discovery of admissible evidence and this information is imperative to the majority of Plaintiff's claims. Plaintiff claim damages arising from the fees the class has paid to AuPairCare and the amount of revenue derived therefrom is clear evidence of the amount of these damages suffered by the class.[4]

**RFP No. 20.** You have also objected to RFP No. 20 on the basis of relevance. Documents that relate to what au pairs may have been told about their responsibilities as au pair, as well as what they should do if they had a problem or complaint, are relevant as to whether that compensation was fixed. In lieu of a full production to RFP No. 20, Plaintiffs will also accept a stipulation that communications to au pair were uniform and stated that the pay was fixed at $195.75 for standard au pairs.

---

[4] *Gulf Coast Shippers Ltd. P'ship v. DHL Express (USA), Inc.*, No. 2:09CV221, 2015 WL 127857, at *2 (D. Utah Jan. 7, 2015) (granting motion to compel of plaintiff's financial statements).

Peggy Kozal
January 8, 2017
Page 4

## II. Interrogatories

AuPairCare's objection to Plaintiffs' Interrogatories #1, #2, and #4 on the basis that they contain multiple sub-parts is without merit and contrary to caselaw, which recognizes that "interrogatory subparts are to be counted as part of but one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question." *Wildearth Guardians v. Pub. Serv. Co. of Colorado*, 09-CV-01862-ZLW-MEH, 2010 WL 5464313, at *1 (D. Colo. 2010).[5] Applying this standard, Plaintiffs' have submitted 4 interrogatories to AuPairCare and have not come close to exceeding the limit.

Again with respect to the Interrogatories**,** AuPairCare's blanket refusal to produce responsive documents for Putative Class members is entirely unjustified. As discussed above, unless your objections are withdrawn, we will seek resolution before the Magistrate.

## III. Correcting Deficiencies

We look forward to AuPairCare correcting the deficiencies listed above. In addition, please let us know whether you will withdraw the objection to class discovery by Thursday, October 19th so that we can promptly seek resolution of this issue before the Magistrate.

Sincerely,

---

[5] *See also* Notes of Advisory Committee on Rules, Fed. R. Civ. P. 33 ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."); 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1 (3d. ed.2010) (Subparts "directed at eliciting details concerning a common theme should be considered a single question.")

Ex. L

# BOIES, SCHILLER & FLEXNER LLP

401 EAST LAS OLAS BLVD.* SUITE 1200* FT. LAUDERDALE, FL 33301* PH. 954-356-0011* FAX 954-356-0022

LAUREN LOUIS
E-mail: llouis@bsfllp.com

October 19, 2016

BY ELECTRONIC MAIL

Justin Wolosz (jwolocz@choate.com)
Choate Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110

     **Re:**    ***Beltran v. InterExchange, et al.***

Dear Justin:

     Your letter yesterday indicates you have not heard from me since our conferral on September 29th. Indeed, after our call on that date, Dawn and I asked you to respond to our various outstanding issues - for example, follow up information regarding the custodian you indicated you intended to withdraw from initial disclosures- by the middle of the following week. Because you were going on vacation, you asked if you could get back to us on that Friday. We agreed, and had not heard from you until your letter yesterday.

     Cultural Care has objected to discovery on the basis that the requests are "not proportional to the needs of the case and the burden and expense of producing the material is outweighed by its likely benefit." Cultural Care has not supported this objection by defining the cost or burden it contends outweighs the benefit to Plaintiffs and merely relies on volumes of names presumably responsive to the request (represented to be 100,000). Your assertion of burden is belied by your predecessor's representation to the Court on April 25, 2016, that the task of compiling the information *had already begun* and would be produced within weeks. Four months later, Plaintiffs have not received the results of what Cultural Care's counsel promised in open court.

     Substantively, Plaintiffs will agree to your ESI proposal with respect to limiting collection to data created within the period of January 1, 2009 through January 15, 2015. This agreement is without prejudice to either side's right to assert that other dates should govern in other respects. The agreement also has no impact on Cultural Care's duty to produce documents outside the defined time period to the extent any such documents are identified.

     With respect to your suggestion of targeted searches over the email data for custodians identified as having interacted with the named plaintiffs, first, it is astonishing that no prior inquiry has been made as to the availability of email for these custodians. Whatever objections Cultural Care may assert with respect to the class claims, communications made directly to or about the named plaintiffs is incontestably relevant and within the bounds of this lawsuit. Cultural Care's failure to identify relevant custodians, issue litigation holds, collect pertinent data and search the same *in advance of the Plaintiff's deposition*, is inexplicable. Plaintiffs will require an explanation of the "availability" of the email for those custodians and the steps Cultural Care has taken to preserve

**B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P**

relevant documents in this case. Assuming that no emails have been destroyed and that they are therefore still available, we will not agree to the overly-narrow terms you have applied to identify only documents that name Plaintiff Deetlefs. These custodians are the individuals who interact directly with the class of au pair and their communications have relevance beyond the single plaintiff to show what they routinely inform the au pair, and how and what they communicate to host families. If you want to propose a subset of search terms to apply to these witnesses, we will consider such terms, but reject this proposal.

We cannot evaluate your proposal with respect to the corporate structure documents in a vacuum. When they are finally produced, we will review, but unless your client's corporate structure involves only these two entities, I do not anticipate they will satisfy the request.

We similarly reject your proposal with respect to the intentional delay of responsive documents pertaining to the financial records. The attempt to justify such delay on the ESI production is not well taken. As a reminder, Cultural Care's counsel represented in open court that the collection and processing was underway in *April*. Audits are likewise available; they are presented every year to the Department of State and should be produced.

Finally, your letter fails to indicate whether Cultural Care will amend its response to Interrogatory No. 3, which asks Cultural Care to identify communications made to anyone indicating that au pair may be paid more than the weekly stipend. If no amendment is made this week, we will include this issue among those to present to the Magistrate for informal resolution, along with class wide discovery.

Sincerely,

 /s/  Lauren Louis
Lauren Louis

LL/jlb

cc:    Joan A. Lukey, Esq. (joan.lukey@choate.com)
       Lyndsey M. Kruzer, Esq. (lkruzer@choate.com)

Ex. M

# CHOATE

CHOATE HALL & STEWART LLP

Justin J. Wolosz
t 617-248-5221
f 617-502-5221
jwolosz@choate.com

October 24, 2016

**VIA EMAIL & FIRST CLASS MAIL**

Lauren Louis
Boies, Schiller & Flexner LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Email: llouis@bsfllp.com

Re:     Document Searches and Production by Cultural Care in *Beltran, et al. v. InterExchange, Inc., et al.*

Dear Lauren:

This letter responds to your letter dated October 19.  Your letter incorrectly recounts our September 29 discussion.  At the conclusion of that call, you agreed to get back to me that day or the next with your client's position on a threshold issue – the "relevant timeframe" to use for Cultural Care's ESI review.  You then asked when, *if you get back to me on that schedule*, I could respond further with respect to other issues – the most significant of which (particularly in terms of volume) was to be a revised ESI proposal, keyed off that relevant timeframe.[1]  You never got back to me.

We also agreed during the September 29 call that we would have a follow-up conversation on Monday, October 10, but you said that before finalizing that plan you needed to check whether Columbus day is celebrated in your state.  You endeavored to look into that issue and propose a time for that call, but you did not.

With respect to the balance of your letter:

1.      David Widerberg is the Geschäftsführer (loosely translated, the CEO) of International Care Ltd. ("ICL"), a Swiss company that identifies and performs an initial screening of au pairs for Cultural Care pursuant to a service agreement.  Attached are Cultural Care's Amended Initial Disclosures, which do not list Mr. Widerberg as an "individual likely to have discoverable information . . . that [Cultural Care] may use to support its claims or defenses."  Mr. Widerberg, who is not employed by Cultural Care, will not be a custodian

---

[1] The relevant timeframe is a threshold issue because, among other things, you asked us to amend the proposed search terms.  We needed to know the timeframe so that we could run new proposed search terms and determine the volume of hits, so that we could craft a revised ESI proposal.

Lauren Louis
October 24, 2016
Page 2

for purposes of document collection or review.  If Plaintiffs require more information about him, Cultural Care is willing to request that he make himself available for a deposition on topics relating to ICL's work with Cultural Care, while he is otherwise in the United States.

2.      During our call, you pressed us to produce a list of names and contact information for *au pairs*, and I assume that your second paragraph concerns that issue.  When we spoke, I asked why you need this list now, and you responded that you do not have to answer that question.  Without an explanation, we must assume that you want this list so that you can contact additional individuals and attempt to recruit them as plaintiffs as an end run around the Court's conditional certification/notice process.  We consider it inappropriate for you to make any such contact before a conditional class is certified and the Court's carefully crafted notice is ready.  If and when the latter occurs, Cultural Care will promptly provide the names and addresses; but, until that time, we have no interest in facilitating any effort to obviate the purpose of the Court's actions.  Such premature outreach is not a proper basis to seek this information, and Cultural Care objects to producing such a list now.  *See, e.g., Crawford v. Dothan City Bd. Of Educ.*, 214 F.R.D. 694, 695 (M.D. Ala. 2003) ("Where discovery [of the names and addresses of prospective class members] is sought in the absence of a conditionally certified collective action, however, such discovery has been denied."); *see also Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 681-82 (D. Colo. 1997) ("*Upon certification of a collective action*, the named plaintiffs and their counsel may contact potential members of the class by sending them court-approved notice and consent forms… In addition, plaintiffs are entitled to specific discovery to determine the names and addresses of the putative class members.") (emphasis added).[2]

Any suggestion to the contrary would make no sense.  As you know, the parties are currently litigating regarding the notice that would be sent to class members *if* a class is conditionally certified.  That exercise would be moot if Plaintiffs were provided a list of *au pairs* now, and could send them whatever notice Plaintiffs choose by way of blast email or other group communication.[3]

3.      We are encouraged that you have agreed to our proposed time period for the ESI review, but you did not comment on the search terms we have provided for the NetApp/SharePoint documents or the emails for the twelve custodians.  As I mentioned in my letter, we adjusted those terms based on your comments, so please let me know if Plaintiffs agree with the terms.  This has been and will continue to be an enormous (and costly) review, and we are anxious to continue the process without delay.

---

[2] Contrary to the statement in your letter, the objection we have discussed regarding this list is not based on burden.

[3] Cultural Care also disputes any suggestion that our predecessor counsel represented that such a list "would be produced within weeks."

Lauren Louis
October 24, 2016
Page 3

4.      With respect to the additional custodians, Cultural Care is not declining to produce communications with or about Ms. Deetlefs, based on relevance or any other objection. To the contrary, the targeted search terms we have proposed (which are consistent with our discussion during our call) would capture those documents. Your letter suggests that you now want something different, i.e., broader searches within these custodians' emails for documents unrelated to any named plaintiff. Cultural Care will not agree simply to expand the number of custodians indefinitely. We have explained that the ESI review we have proposed will already require a page-by-page review of approximately 100,000 documents, not including the various other categories of documents that Plaintiffs are demanding. Cultural Care will not simply increase the volume of the review indefinitely. In the interest of attempting to reach agreement, if you want to propose additional search terms for these custodians, Cultural Care is willing to discuss them, provided that they remain narrow and targeted.

Your remaining contentions in this paragraph, including your supposed "astonishment" and speculation regarding preservation, are without basis. Relevant Cultural Care employees have received document hold notices. Local Childcare Consultants are not Cultural Care employees, but nevertheless have been asked to preserve documents.

5.      We will produce the corporate contract and financial documents as set forth in my October 18 letter, and get back to you regarding audit documents.

6.      Cultural Care disagrees that there is anything deficient with respect to its response to Interrogatory No. 3. As I explained during our call, to the extent that additional detail is available it would be contained in documents. In the interest of avoiding a needless dispute, however, attached is an amended response to that interrogatory.

7.      Finally, please clarify what you mean by an issue regarding "class wide discovery" that you intend to present to the Magistrate Judge. During our conferrals, you used that phrase when discussing only two things:

(i) The list of *au pairs'* names and addresses (see above). Cultural Care continues to object to Plaintiffs' attempt to short circuit the notice process and obtain this list now. This is not a broad issue of "class wide discovery," however, it is a specific issue regarding a list of names and addresses.

(ii) You asked for *au pair* records for the four individuals who filed consents on July 27, 2016. During our call, I explained that we do not understand the status of these individuals. In response, you called them "opt in plaintiffs," but as I explained there is nothing into which they can opt because no conditional class has been certified and the Court has not provided the parameters of the notice to be sent in the event that one is. Further, they clearly are not identified in either of your motions for conditional class certification. As a result, we still do not understand what role (if any) they have in this litigation. Nevertheless, in order to avoid a dispute, and without prejudice to its position with respect to any future requests, Cultural Care is willing to produce records for these four individuals like

Lauren Louis
October 24, 2016
Page 4

those we produced previously for Ms. Deetlefs and Ms. Cardenas (i.e., contracts and other records from Cultural Care's Tellus and Salesforce repositories).

Other than these two discrete items, you have not raised any issue regarding "class wide discovery," nor are we aware of any dispute regarding any such issue.

Please feel free to contact me if you wish to confer further with respect to any of these subjects.

Sincerely,

Justin J. Wolosz

Enclosures

Ex. N

## B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

December 19, 2016

**VIA EMAIL**
Justin J. Wolosz
Choate Hall & Stewart, LLP
Two International Place
Boston, MA  02110

     *Re:*    ***Beltran v. InterExchange, et al.***

Justin,

     Thank you for taking the time to speak with me on Friday. I was pleased to learn that Cultural Care would begin its production this week, and that this production would include information for the four individuals who filed consents to join the lawsuit on July 27, 2016.

     As I mentioned to you in our call, plaintiffs must determine what the au pairs were actually paid to support plaintiffs' claims. Cultural Care has represented that it does not have this information since it does not process the au pair's wages on a weekly basis. If Cultural Care as a sponsor agency is not in possession of this information, plaintiffs will need to contact the individual *au pairs* or the host families to request this information. Information from host families is also relevant as to what they were told by sponsor agencies regarding the cost of employing an au pair and whether they were told that that cost was fixed and/or subject to wage and hour laws.

     You have maintained an objection to producing *au pair* contact information before a conditional class has been certified. However, your rationale for refusing to produce information about putative class members does not extend to host family contact information and there is no basis for your refusal to produce these documents.  Please confirm that the names and contact information of host families will be produced, or that you object to producing this information and the basis for that objection, so that we can appropriately elevate this issue with the court.

     Plaintiffs have also sought as part of discovery the audit documents that Cultural Care provides to the Department of State on an annual basis. On our call you were unsure whether the audit documents were included in your production and said that you would check to confirm if they were included. Please let me know if you will be producing the audit documents and if not, on what basis you are withholding them.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

Justin J. Wolosz
December 19, 2016
Page 2

As you are aware, class certification deadlines are quickly approaching.  I look forward to your response and the prompt production of documents responsive to Plaintiffs' Request for Documents.

Thank you,

Dawn Smalls

cc:     Jessica L. Fuller
        jfuller@lrrc.com

# Ex. O

# CHOATE

CHOATE HALL & STEWART LLP

Justin J. Wolosz
t 617-248-5221
f 617-502-5221
jwolosz@choate.com

December 23, 2016

**VIA EMAIL**

Dawn Smalls, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Floor
New York, New York  10022
E-mail: dsmalls@bsfllp.com

Re:   *Beltran, et al. v. Interexchange, Inc., et al.*

Dear Dawn:

On behalf of Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair ("Cultural Care"), we are today producing documents that we have identified as responsive to Plaintiffs' First Request for Production of Documents.  The documents, which are numbered CC00001310 through CC00005976, are being produced subject to the objections and responses set forth in Defendant Cultural Care, Inc.'s Responses to Plaintiffs' First Request for the Production of Documents (including all supplemental responses).

Please note that certain of the documents have been designated as "Confidential" or "Attorneys' Eyes Only" pursuant to the Stipulated Protective Order entered in this case.  Please also note that, by making this production, Cultural Care does not waive any objection it has asserted as to any other documents that may arguably be responsive to Plaintiffs' Requests for Production.

This production will be delivered by secure file delivery.  You will receive an email with instructions shortly.  Please let me know if you have any questions.

Sincerely,

Justin J. Wolosz

7770348v3

Ex. P

# B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

December 30, 2016

**VIA EMAIL**
Peggy E. Kozal, Esq.
Gordon & Rees, LLP
555 Seventeenth Street, Suite 3400
Denver, CO  80202

> **_Re:_**      **_Beltran v. InterExchange, et al._**

Peggy,

Thank you for taking the time to speak with me on Wednesday regarding Plaintiffs' ongoing discovery requests. In our conversation, you noted that AuPairCare's Motion to Compel Arbitration and Dismiss or, Alternatively Stay Lawsuit ("Motion to Compel") is pending and that you would want assurances from Plaintiffs that the production of documents would not prejudice your Motion to Compel before producing additional documents. As I communicated to you in our phone conversation, Plaintiffs' waiver argument has been presented to the court; further production of documents will not prejudice your Motion to Compel or be offered by Plaintiffs as further support for our argument that AuPairCare waived its right to compel arbitration by its active participation in this lawsuit.

By this letter, I write to confirm that documents sufficient to identify host families for _au pairs_ sponsored by AuPairCare, as well as any documents in AuPairCare's possession, custody and control that identify wages and/or other amounts paid by host families to _au pairs,_ will be included in AuPairCare's production. Plaintiffs first requested these documents in its First Request for Production of Documents issued March 3rd in which we requested (1) Documents sufficient to identify all au pair you have sponsored, including the period of sponsorship, the state in which each au pair worked, and the family for whom each au pair worked; and (2) documents concerning au pair compensation.

As I communicated in our call, Plaintiffs must determine what _au pairs_ were actually paid to support Plaintiffs' claims. AuPairCare has represented that it does not have this information since it does not process the _au pair's_ wages on a weekly basis. If AuPairCare as a sponsor agency is not in possession of this information, Plaintiffs will need to contact the individual _au pairs_ or the host families to request it. Information from host families is also relevant as to what they were told by sponsor agencies regarding the cost of employing an au pair and whether they were told that that cost was fixed and/or subject to wage and hour laws.

You have maintained an objection to producing _au pair_ contact information before a conditional class has been certified. However, your rationale for refusing to produce information about putative class members does not extend to host family contact information and there is no

Peggy E. Kozal, Esq.
December 30, 2016
Page 2

basis for a refusal to produce these documents.  Please confirm that documents sufficient to identify host families will be produced, or that you object to producing this information and the basis for that objection by **January 6, 2017**, so that we can appropriately elevate this issue with the court.

On our call, I also reissued our request for AuPairCare's financial statements and documents relating to its organizational structure.  Plaintiffs claim damages arising from the fees the class has paid to AuPairCare and the amount of revenue derived therefrom is clear evidence of the amount of these damages suffered by the class. In addition, patterns in costs and revenues as well as the company's margins over time, could be indicative of collusive behavior.  Plaintiffs also reissue their demand for documents relating to au pair compensation including (1) any reports and surveys collected, maintained, or generated relating to au pair wages; and (2) documents relating to complaints au pairs may have made about compensation or work schedule. Information relating to complaints can be found in the monthly audits provided to the Department of State and is relevant as to whether au pair compensation was fixed and/or whether they may have been eligible for or received an increase.

As you are aware, class certification deadlines are quickly approaching.  I look forward to your response and/or the production of documents referenced above by **January 6, 2017.**

Sincerely,

/s/ Dawn Smalls

Dawn L. Smalls

Ex. Q

# B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

December 30, 2016

**VIA EMAIL**
Susan M. Schaecher, Esq.
Fisher & Phillips, LLP
1801 California Street, Suite 2700
Denver, CO  80202

   *Re: Beltran v. InterExchange, et al.*

Susan,

   I write to follow up on my phone message to you regarding the status of your responses to Plaintiff's discovery requests. There are number of deficiencies in your production that need to be addressed immediately. First, Plaintiffs ask that documents sufficient to identify host families for *au pairs* sponsored by American Institute for Foreign Study ("AIFS"), as well as any documents in AIFS's possession, custody and control that identify wages and/or other amounts paid by host families to *au pairs,* be included in AIFS's production. Plaintiffs first requested these documents in its First Request for Production of Documents issued March 3rd in which we requested (1) Documents sufficient to identify all au pair you have sponsored, including the period of sponsorship, the state in which each au pair worked, and the family for whom each au pair worked; and (2) documents concerning au pair compensation.

   Plaintiffs must determine what *au pairs* were actually paid to support Plaintiffs' claims. AIFS has represented that it does not have this information since it does not process the *au pair's* wages on a weekly basis. If AIFS as a sponsor agency is not in possession of this information, Plaintiffs will need to contact the individual *au pairs* or the host families to request it. Information from host families is also relevant as to what they were told by sponsor agencies regarding the cost of employing an au pair and whether they were told that that cost was fixed and/or subject to wage and hour laws.

   You have maintained an objection to producing *au pair* contact information before a conditional class has been certified. However, your rationale for refusing to produce information about putative class members does not extend to host family contact information and there is no basis for a refusal to produce these documents.  Please confirm that documents sufficient to identify host families will be produced, or that you object to producing this information and the basis for that objection by **January 6, 2017**, so that we can appropriately elevate this issue with the court.

   Plaintiffs also reissue their request for AIFS's financial statements and documents relating to its organizational structure.  Plaintiffs claim damages arising from the fees the class has paid to AIFS and the amount of revenue derived therefrom is clear evidence of the amount of

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

Susan M. Schaecher, Esq.
December 30, 2016
Page 2

these damages suffered by the class. In addition, patterns in costs and revenues as well as the company's margins over time, could be indicative of collusive behavior.  Plaintiffs also reissue their demand for documents relating to au pair compensation including (1) any reports and surveys collected, maintained, or generated relating to au pair wages; and (2) documents relating to complaints au pairs may have made about compensation or work schedule. Information relating to complaints can be found in the monthly audits provided to the Department of State and is relevant as to whether au pair compensation was fixed and/or whether they may have been eligible for or received an increase.

        As you are aware, class certification deadlines are quickly approaching.  I look forward to your response and/or the production of documents referenced above by **January 6, 2017.**


                                Sincerely,

                                /s/ Dawn Smalls

                                Dawn L. Smalls

Ex. R

**From:**      Dawn Smalls
**To:**          Maria Guarisco
**Subject:**   FW: Your message
**Date:**       Thursday, January 5, 2017 2:26:47 PM
**Attachments:**  2016 12 30 ltr re AuPairCare.pdf

---

**From:** Dawn Smalls
**Sent:** Thursday, January 05, 2017 1:06 PM
**To:** 'Peggy Kozal'
**Subject:** RE: Your message

Peggy,

I hope you had a nice holiday. As you know the deadline to exchange affirmative expert witness disclosures is next Friday, January 13, 2017. Accordingly, please indicate by tomorrow whether you plan to produce additional documents, and whether in that production you intend to provide wage data for au pairs or the audits submitted to the State Department on a monthly basis, as well as the information indicated in the attached correspondence.

Thank you.

Dawn

---

**From:** Dawn Smalls
**Sent:** Friday, December 30, 2016 4:07 PM
**To:** 'Peggy Kozal'
**Subject:** RE: Your message

Hi Peggy,

Please use this version. Both are identical but this is the pdf version.

Thanks,

Dawn

---

**From:** Dawn Smalls
**Sent:** Friday, December 30, 2016 4:04 PM
**To:** 'Peggy Kozal'
**Subject:** RE: Your message

Hi Peggy,

Please find correspondence relating to the Beltran matter attached.

Best,

Dawn

---

**From:** Peggy Kozal [mailto:pkozal@gordonrees.com]
**Sent:** Friday, December 23, 2016 11:43 AM
**To:** Dawn Smalls
**Subject:** RE: Your message

That is fine.  Please call me on my direct line at 12:30 MST/2:30 EST.  Thank you.

**PEGGY E. KOZAL**
**Of Counsel**
**GORDON & REES**
**SCULLY MANSUKHANI**
Direct: 303-200-6888

---

**From:** Dawn Smalls [mailto:DSmalls@BSFLLP.com]
**Sent:** Thursday, December 22, 2016 4:05 PM
**To:** Peggy Kozal
**Subject:** RE: Your message

Could we push it to 2:30?

---

**From:** Peggy Kozal [mailto:pkozal@gordonrees.com]
**Sent:** Thursday, December 22, 2016 12:45 PM
**To:** Dawn Smalls
**Subject:** RE: Your message

Dawn,

Does 12:00 MST/2:00 EST on the 28th work for you?

**PEGGY E. KOZAL**
**Of Counsel**
**GORDON & REES**
**SCULLY MANSUKHANI**
Direct: 303-200-6888

---

**From:** Dawn Smalls [mailto:DSmalls@BSFLLP.com]
**Sent:** Wednesday, December 21, 2016 7:35 AM
**To:** Peggy Kozal

**Subject:** RE: Your message

Hi Peggy,

Yes. The afternoon of the 27th or the 28th should work for a call. Please let me know when works for you.

Dawn

---

**From:** Peggy Kozal [mailto:pkozal@gordonrees.com]
**Sent:** Tuesday, December 20, 2016 11:57 AM
**To:** Dawn Smalls
**Subject:** Your message

Hi Dawn,

I got your message on AuPairCare's document production.  Can we schedule a time to talk after Christmas, on 12/27 or 12/28?  Thanks.

Peggy

---

**PEGGY E. KOZAL**  | Of Counsel
**GORDON & REES**
**SCULLY MANSUKHANI**

555 Seventeenth Street, Suite 3400
Denver, CO 80202
D: 303-200-6888  |  P: 303-534-5160  |  F: 303-534-5161
pkozal@gordonrees.com

vCard  |  Bio

Alabama • Arizona • California • Colorado • Connecticut • Florida • Georgia
Illinois • Maryland • Massachusetts • Missouri • Nevada • New Jersey • New York
North Carolina  • Ohio • Oregon • Pennsylvania • South Carolina • South Dakota
Texas • Virginia • Washington • Washington, D.C. • West Virginia
www.gordonrees.com

---

Alabama * Arizona * California * Colorado * Connecticut * Florida * Georgia * Illinois * Maryland * Massachusetts * Missouri * Nevada * New Jersey * New York * North Carolina * Ohio * Oregon * Pennsylvania * South Carolina * South Dakota * Texas * Virginia * Washington * Washington, DC * West Virginia

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON & REES LLP**

http://www.gordonrees.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]