IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *et al.*,

Plaintiffs,

v.

INTEREXCHANGE, INC., *et al.*,

Defendants.

---

**CERTAIN DEFENDANTS' JOINT RESPONSE TO MOTION FOR PROTECTIVE ORDER OR, IN THE ALTERNATIVE, AMENDMENT OF THE SCHEDULING ORDER (DOC. #454)**

---

Defendants InterExchange, Inc.; USAuPair, Inc.; Expert AuPair; EurAupair; Cultural Homestay International; Cultural Care, Inc.; AuPairCare; Au Pair International; APF Global Exchange; Au Pair in America; GreatAuPair, LLC, Go Au Pair; and Agent Au Pair (collectively "Defendants" or "sponsors") hereby respond to Plaintiffs' Motion for Protective Order or, in the Alternative, Amendment of the Scheduling Order (Doc. #454) ("Motion").

## I. INTRODUCTION.

Plaintiffs' Motion is an improperly postured and misleading attempt to extricate themselves from timing problems of their own making. Specifically, Plaintiffs move for a protective order regarding discovery issues that they neglected for months to resolve pursuant to the Court's well-established discovery procedures. Plaintiffs attempt to

convert Defendants' good-faith objections and responses to certain discovery requests into *per se* discovery violations and preemptively prohibit Defendants from making hypothetical arguments in future proceedings and submissions without proper resolution of these outstanding discovery issues. The federal rules do not contemplate such a process. Moreover, this Motion is now moot. All parties submitted their class expert reports on January 13, 2017, and Plaintiffs filed a significantly belated motion to compel on January 26, 2017. The motion to compel is the proper vehicle for resolving the issues raised in the Motion, and the Motion should be denied.

## II. PROCEDURAL BACKGROUND.

Plaintiffs served written discovery on Defendants on or about March 19, 2015. Defendants did not respond to these requests, as on April 16, 2015, the Court entered a stay of discovery that ultimately was extended until the Court resolved Defendants' Motions to Dismiss. (Doc. #198.) The stay of discovery lifted in February 2016 following the Court's orders on the Motions to Dismiss.[1]

On March 3, 2016, Plaintiffs served identical discovery requests on each Defendant that "supersede[d] the demands Plaintiffs previously served in this case." (See Exhibit A, Skinner email to Defendants, Mar. 3, 2016.) Therefore, Plaintiffs' suggestion that Defendants neglected to respond to the 2015 requests, or that requests have been outstanding for two years, is insincere at best. Defendants submitted initial responses to the discovery requests on or about May 4, 2016, nearly nine months ago, and many Defendants have since supplemented those responses. Plaintiffs focus on

[1] Plaintiffs' statement that a discovery dispute has been brewing "for twenty months" is thus impossible, as discovery was stayed for eleven months. (Doc. #454 at p. 1.)

Defendants' respective objections and responses to two categories of requests: (1) the amount that au pairs were actually paid; and (2) the identities of au pairs and their host families. (Doc. #454 at p. 1.)

As Defendants represented in their initial discovery responses, they generally have very little information about what au pairs were actually paid. Defendants are not the employers of the au pairs they respectively sponsor, and no Defendant actually pays the au pairs. (See, e.g., Exhibit B Colaizzi Decl. ¶ 4, Ex. 1 at pp. 7-8; Exhibit G Macri Decl. ¶¶ 5-6; Exhibit H Wolosz Decl. ¶ 3, Ex. 1 at p. 9.) Aside from confirming that au pairs receive at least the Department of State-set minimum stipend each week, payment generally is a matter between the au pairs and their host families. (See, e.g., Exhibit B Colaizzi Decl. ¶ 4, Ex. 1 at pp. 7-8; Exhibit G Macri Decl. ¶ 6; Exhibit H Wolosz Decl. ¶ 3, Ex. 1 at p. 9.) Defendants have no comprehensive records of the stipend amounts actually paid by host families to au pairs. (Exhibit B Colaizzi Decl. ¶ 4; Exhibit H Wolosz Decl. ¶¶ 12-13; Exhibit J Kozal Decl. ¶ 4.) Compensation information that Defendants do have includes standard form contracts, annual program audit reports, audit surveys, monthly contact records, advertisements, websites, and emails, much of which has been produced. (See Exhibit B Colaizzi Decl. ¶ 4.) Only three sponsors—Go Au Pair, Expert Au Pair, and APF Global—maintain records of contracts between host families and au pairs that indicate specific stipend amounts host families agreed to pay au pairs; agreements have been or will be produced. Others have only a small number of documents tthat appear to reflect dollar amounts paid, which they have produced. (Exhibit H Wolosz Decl. ¶¶ 12-13, Exs. 2-3.)

Each Defendant also objected to providing comprehensive contact information for au pairs, as a collective action had not (and as of this filing still has not) been certified, nor has a Rule 23 antitrust class been certified. See, e.g., Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co., No. 09-cv-02757-WYD-KMT, 2011 WL 5865059, at *1 (D. Colo. Nov. 22, 2011) ("At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues . . . ."); Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 681 (D. Colo. 1997) (plaintiffs are entitled to discovery of the names and addresses of putative class members "upon certification of a collective action"). Prior to filing this Motion, Plaintiffs did not seek a Court order authorizing an exception to this general rule for any reason.[2] Defendants objected to releasing host family information because such information has serious implications for the Defendants' businesses and the host families' privacy. (See Exhibit G Macri Decl. ¶ 9; Exhibit H Wolosz Decl. ¶ 3, Ex. 1 at pp. 3-5; Exhibit I Schaecher Decl. ¶ 2.)

## III. COMMUNICATIONS REGARDING DISCOVERY ISSUES AND MOTION.

### A. Plaintiffs Failed to Disclose Any Issues with Affirmative Expert Report.

The Motion focuses first and foremost on the affirmative expert disclosure deadline. (See, e.g., Doc. #454 at p. 2.) The original deadline for the parties to serve affirmative expert reports was December 16, 2016. (Doc. #295 at p. 36.) On December 8, 2016, during a discussion regarding the scope of the parties' affirmative expert

[2] Plaintiffs seem to concede in some of their communications that au pair contact information is not discoverable until the Court's ruling on their motion for conditional certification. (Exhibit B Colaizzi Decl. Ex. 3.) At the Scheduling Conference, Plaintiffs' counsel Ms. Louis affirmatively recognized that the reason the class action notice process is overseen by the Court is "to make sure that both sides have honest and complete communications with the class members" Tr. 110:4-111:11.

disclosures, Plaintiffs' counsel informed counsel for Defendant Cultural Care that Plaintiffs needed more time to complete expert reports and suggested the parties attempt to agree on a revised proposed schedule. (See Exhibit C Lukey Decl. ¶3.) Plaintiffs filed an Unopposed Motion for Amendment of the Scheduling Order on December 12, 2016, requesting an extension to January 27, 2017 to file affirmative expert reports on class issues and requesting corresponding extensions of other dates in the Scheduling Order. (Doc. #450.) The Court granted the Motion in part and extended the affirmative expert disclosure deadline to January 13, 2017. (Doc. #452.)

At no time during discussion about the proposed modifications, and nowhere in the Motion for Amendment itself, did Plaintiffs suggest that discovery issues were impacting their ability to produce an expert report, despite the "good cause" standard for modification of the Scheduling Order. (Exhibit C Lukey Decl. ¶ 3.) See Jenkins v. FMC Tech., Inc., No. 07-cv-02110-LTB-KMT, 2009 WL 1464416, at *1 (D. Colo. May 26, 2009) (schedule modification requires good cause, meaning the deadline cannot reasonably be met despite the diligence of the party). Pre-Motion communications with Defendants did not indicate that Plaintiffs were seeking contact information for purposes of expert disclosures. (Exhibit B Colaizzi Decl. Ex. 3; Exhibit H Wolosz Decl. ¶ 9.) In fact, Plaintiffs' counsel stated to Cultural Care that they did not need to provide a reason as to why they needed the information before certification. (Exhibit H Wolosz Decl. ¶ 6.) Only on January 26, 2017, after this Motion was filed and after the parties served affirmative class expert reports, did Plaintiffs move to compel contact information. (Doc.

#465.) Thus, Defendants had no inkling at that time that Plaintiffs were contemplating the instant Motion.[3]

B. Plaintiffs Failed to Confer in Any Meaningful or Timely Manner.

Plaintiffs' blanket assertion that they have been "discussing the issues raised in this motion with the defendants for several months" (Doc. #454 at p. 1) is significantly overstated and misleading. Each Defendant had different and individual communications with Plaintiffs' counsel regarding discovery issues. (See, e.g., Exhibit B Colaizzi Decl. ¶¶ 7-10; Exhibit G Macri Decl. ¶¶ 8-10, 12-13; Exhibit H Wolosz Decl. ¶¶ 6-9.) Some Defendants heard nothing from Plaintiffs until shortly before this Motion was filed. (See Exhibit B Colaizzi Decl. ¶¶ 7-10; Exhibit J Kozal Decl. ¶ 2.) For example, Plaintiffs' first communication to InterExchange was by an emailed letter sent January 4, 2017, less than a week before Plaintiffs filed the Motion, which requested a response no later than January 6. (Exhibit B Colaizzi Decl. ¶ 6.) Even Defendants who received communications from Plaintiffs before January 2017 were not told that Plaintiffs believed the discovery issues were related to their ability to submit affirmative expert reports. (Exhibit H Wolosz Decl. ¶ 9.) In addition, these communications made only a passing reference to class certification. (See Exhibit B Colaizzi Decl. Ex. 3.)

---

[3] The whole premise for Plaintiffs' Motion—that their ability to serve an affirmative expert report is compromised—is dubious given Plaintiffs' repeated assurances in the Motion that they were fully prepared to serve expert reports by the January 13, 2017 deadline. (Doc. #454 at pp. 9-10, 14.) Plaintiffs even go so far as to state that they have "more than sufficient data . . . for the experts to do their work" and, as far as Plaintiffs are concerned, "it is obvious that plaintiff's core contention is correct." (Doc. #454 at pp. 9, 10.) Plaintiffs did in fact serve two expert reports on January 13, 2017. In their motion to compel, Plaintiffs focus primarily on needs for the merits of their case, not for class certification. (See, e.g., Doc .#465 at p. 8.) These admissions and submissions seem to render the Motion not just meritless, but frivolous.

Plaintiffs' "conferral" regarding this Motion specifically was by email sent on Saturday, January 7, 2017 at 5:58 p.m. MST. (Exhibit D, Skinner email to Defendants, Jan. 7, 2017.) The email requested a response no later than 9:00 a.m. MST on Monday, January 9, 2017, that is, by the *opening* of business. (Id.) Some Defendants were able to respond in some fashion before Monday, but it was not possible for Defendants to confer with their clients in those circumstances. (Exhibit B Colaizzi Decl. Ex. 5; Exhibit G, Macri Decl. ¶ 14; Exhibit H Wolosz Decl. ¶ 10.) Plaintiffs filed the Motion late in the evening on January 9.

On January 11, Plaintiffs' counsel, *for the first time*, requested a meet and confer with Defendants regarding a contemplated motion to compel "the production of wage data and contact information for host families and au pairs."[4] (Exhibit E, Skinner email to Defendants Jan. 11, 2017.) Following a call on January 12 and another call on January 17, the parties scheduled an informal discovery conference with the Court for January 24, 2017 regarding production of au pair and host family contact information only. (Doc. #459.) As a result of the conference, the Court set a briefing schedule and hearing for oral argument regarding Plaintiffs' motion to compel the contact information. (Doc. #462.) Plaintiffs' motion to compel was filed January 26, 2017. (Doc. #465.)

On January 13, 2017, Plaintiffs' counsel requested a meet and confer on the production of "wage data." (Exhibit F, Smalls email to Defendants, Jan. 13, 2017.) The call took place on January 17, 2017, and some parties have had additional follow-up

[4] Defendants dispute the terminology "wage data." Au pairs are cultural exchange visitors who receive stipends.

calls since then. As of this filing, Plaintiffs have not communicated an intention to move to compel stipend data from the Defendants.[5] (See, e.g., Exhibit I Schaecher Decl. ¶ 8.)

## IV. ARGUMENT.

Plaintiffs' approach to the issues raised in the Motion is precisely backwards. If Plaintiffs believed that discovery issues were impacting their ability to complete their affirmative expert disclosures, they had an obligation to address that precise concern with Defendants and, if necessary, seek Court intervention in a timely manner before the disclosure deadline. They did not do so, and they now seek to use Federal Rule of Civil Procedure 37 as a sword to impose a blanket prohibition on a category of hypothetical future argument in both expert rebuttal and motion practice on class certification.[6] (Doc. #454 at p. 2.) Rule 37 is not intended to be used in that fashion, and Plaintiffs' Motion must be denied.

### A. Applicable Law.

Except in limited circumstances, this Court requires a party contemplating a motion to make "reasonable good faith efforts" to confer with the other party or parties to attempt to resolve the dispute short of Court involvement. D.C.COLO.LCiv.R 7.1(a). This duty applies to a motion for protective order pursuant to F.R.C.P. 37. See D.C.COLO.LCivR 7.1(b) (listing the types of motions excluded from conferral obligation; motions pursuant to Rule 37 are not excluded). It also applies to a contemplated motion

[5] Plaintiffs' separation of contact information from what they call "wage data" makes no sense, as the only reason Plaintiffs have proffered for their immediate need for contact information is to begin collecting stipend information from au pairs and host families.

[6] This effort is similar to Plaintiffs attempt during argument on Defendant Cultural Care's Motion for Sanctions on October 25, 2016 to seek a protective order to preemptively prohibit Defendants from asking certain questions in deposition. (Doc. #411.)

to compel. See, e.g., Auguste v. Alderden, No. 03-cv-02256-WYD-KLM, 2008 WL 3211283, at *1 (D. Colo. Aug. 6, 2008). It is axiomatic that a duty to confer requires a party to identify the relief sought and the reason for seeking that relief in a manner that permits the parties to engage in meaningful conferral. See Hoelzel v. First Select Corp., 214 F.R.D. 634, 636 (D. Colo. 2003) (stating that the conferral requirement is not satisfied by merely making a demand for compliance or sending a single communication). The parties are also required to set an informal discovery conference with Magistrate Judge Tafoya before engaging in motions practice on discovery-related issues. KMT Civ. Practice Standards III.A.1, 2. In the event the informal conference fails to resolve the issue, the parties must again confer "in light of the insights gained" during the conference prior to filing motions for Court resolution. Id. at III.A.4, 5.

Plaintiffs justify their request for a protective order by asserting that Defendants violated Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure. (Doc. #454 at p. 10.) The rule states in pertinent part:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

The critical language for purposes of the Motion is "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." (Doc. #454 at p. 11.) Plaintiffs contend that Defendants' objections to producing au pair and host family

contact information and alleged failure to produce "wage data" amount to a failure to "supplement or correct" discovery responses. (Doc. #454 at p. 11.)

Defendants dispute that their responses were in any way incomplete or incorrect. Moreover, Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that a party who fails to provide information or identify witnesses under Rule 26(e) is not allowed to use the information or witness "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Plaintiffs have not alleged that any Defendant has actually tried to use unproduced information in such a manner; their request for a protective order relates to the possible use of such information in the future. (Doc. #454 at pp. 2-3, 13-14.)

B. Plaintiffs Failed to Confer Regarding the Motion for Protective Order.

Mr. Skinner's email of 5:58 p.m. on Saturday, January 7 in no way satisfied Plaintiffs' obligation to meaningfully confer with Defendants regarding the Motion. The email stated Plaintiffs' intention to file the Motion and asked Defendants to respond by 9:00 a.m. MST on Monday "[i]f any of you will agree to either form of relief." (Exhibit D.) This communication did not even attempt to address the merits of the proposed motion and is not meaningful conferral. Hoelzel, 214 F.R.D. at 636; see also Connolly v. Toll Brothers, Inc., No. 15-cv-00380-KMT, 2015 WL 2345639, at *1 (D. Colo. May 14, 2015) (finding that a single email, letter, or voicemail, without any follow-up, ordinarily does not constitute a good faith effort to confer); Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *25 n.16 (D. Colo. Feb. 8, 2010) (a letter threatening a motion to compel unless a supplemental response was provided in two

days was not adequate conferral). The Court may deny the Motion on this ground alone. Connolly, 2015 WL 2345639, at *1; Borwick v. T-Mobile West Corp., No. 11-cv-01683-LTB-MEH, 2012 WL 3984745, at *2 (D. Colo. Sept. 11, 2012).

C. The Motion Predated Any Determination of a Rule 26(e) Violation.

Plaintiffs filed the Motion without any determination that any Defendant violated F.R.C.P. 26(e) and before any Defendant attempted to "use" disputed information as evidence. Thus, the Motion is premature and has no merit whatsoever. Plaintiffs' request for a protective order presupposes that Defendants' good-faith discovery objections and responses—which at the time this Motion was filed had never been the subject of either an informal or a formal hearing with the Court or a motion to compel—are a violation of Rule 26(e) *simply because Plaintiffs say so*. Plaintiffs cannot simply declare that Defendants violated discovery rules. The proper course of action was to bring the issues before the Court, including if necessary a motion to compel. See Cartel Asset Mgmt., 2010 WL 502721, at *19 (citing In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 331, 337 (N.D. Ill. 2005) (a party objecting to discovery is not required to seek a protective order; it has the option of providing appropriate written objections and leaving it to the requesting party to file a motion to compel). Plaintiffs made no timely effort to do so. Indeed, it was not until two days after Plaintiffs filed this Motion—and two days before the affirmative expert disclosure deadline—that they requested a "meet and confer" with all Defendants regarding a contemplated motion to compel.[7] (See Exhibit

[7] The Motion is also an end-run around the requirements of F.R.C.P. 37(a) regarding motions to compel. The rules require that a party certify it made efforts to secure the requested discovery "without court action." This Motion is nothing if not an attempt by

E.) Plaintiffs' inexplicable delay is dispositive here because although Plaintiffs had engaged some Defendants (but not all) in discussions regarding discovery objections, responses, and production, it was only at the eleventh hour before expert disclosures—and on a Saturday evening—that Plaintiffs conveyed their position that discovery issues were affecting their affirmative expert reports, their chief complaint in the Motion.[8]

The appropriate road was, and still is, for the parties to resolve discovery matters through the Court's approved processes. Defendants have not improperly withheld any information, nor have they used (nor do they intend to use) improperly withheld information to rebut Plaintiffs' experts, defeat class certification, or for any other purpose. If later Plaintiffs believe Defendants improperly withheld or used undisclosed information, they have avenues available to them at that juncture. The alleged violation is hypothetical, and the alleged prejudice is pure speculation. Plaintiffs' premature Motion has, to use Plaintiffs' phrase, put the cart before the horse.[9]

The cases that Plaintiffs cite do not support their request for relief and indeed emphasize the inappropriate timing of the request for a protective order. For example, in Alvariza v. Home Depot, the defendant turned over incomplete personnel files. 241 F.R.D. 663, 664 (D. Colo. 2007). The Court noted Rule 37(c) is "chiefly targeted at

---

Plaintiffs to use court action, through a requested protective order, to ease prejudice caused by Plaintiffs' lack of diligence regarding discovery.

[8] Plaintiffs had a prime opportunity to raise this issue in December 2016 when the parties were discussing a joint proposal to extend the affirmative expert disclosure deadline. Plaintiffs said nothing. (Exhibit C Lukey Decl. ¶ 3.)

[9] In addition to Plaintiffs' inexplicable delays in raising these issues, they have made no effort to conduct 30(b)(6) depositions or to depose anyone in position of authority with any Defendant regarding the sponsor's practices, procedures, or knowledge of stipends paid, nor sought to depose any of the host families for whom they have contact information by virtue of the named Plaintiffs in this case.

protecting a party from being ambushed at trial with previously undisclosed evidence." Id. at 665. Because defendant contended that the missing information was lost, it was inconceivable to think the defendant would attempt to use it in the lawsuit. Id. at 665-66. A "proper" Rule 37(c) motion would be one brought in response to the defendant's actual use of allegedly lost or nonexistence evidence. Id. at 666. The Court also called out the plaintiff's attempt to use a protective order to rectify plaintiff's failure to pursue the documents through discovery, calling it "mind-boggling." Id.

Here, Defendants have produced what limited stipend information they have; Defendants cannot use information they do not possess. Moreover, Defendants' objections to the production of contact information—Plaintiffs' alternative for acquiring stipend information—were made clear to Plaintiffs nine months ago and were not challenged until recently. Plaintiffs' attempted use of a protective order is misplaced.

D. Outstanding Discovery Issues Are Proceeding Through Normal Channels.

After this Motion was filed, Plaintiffs finally began the appropriate process of reaching out to each Defendant regarding the production of contact information and what kind of "wage data" the Defendant had for au pairs. The Court has set a briefing scheduling for Plaintiffs' motion to compel contact information, which is the proper avenue for resolving that issue. (Doc. #462.) Defendants will respond fully to Plaintiffs' motion to compel according to the briefing schedule set by the Court. Rule 37 provides a remedy only in the event that a party's failure to supplement or correct discovery responses was not "harmless or substantially justified." Fed. R. Civ. P. 37(c)(1). This determination cannot be made unless and until the Court first determines that one or

more Defendants failed to supplement or correct discovery responses when obligated to do so. The Motion is premature and speculative and must be denied.

E. Plaintiffs' Alternative Relief Request is Moot.

In the alternative to a protective order, Plaintiffs request that the Court extend the deadlines to disclose affirmative expert reports. (Doc. #454 at pp. 14-15.) As the January 13, 2017 disclosure deadline has come and gone, this request is moot. Any additional discussion about case scheduling will necessarily involve resolution of the discovery issues that Plaintiffs have started—albeit belatedly—to raise with the Court.

## V. CONCLUSION AND REQUEST FOR FEES.

Defendants respectfully request that the Court deny Plaintiffs' Motion.

Defendant InterExchange, Inc., requests recovery of the fees and costs that it incurred in responding to the Motion. As noted above, the very first communication that Plaintiffs had with InterExchange regarding any of the issues raised in the Motion was by emailed letter on January 4, 2017. InterExchange was not afforded any meaningful opportunity to respond to that communication before the Motion was filed, as the next communication was Mr. Skinner's Saturday evening email. Neither Plaintiffs' Motion nor the declaration of Plaintiffs' counsel Ms. Smalls makes any mention whatsoever of InterExchange in terms of the substance of the Motion. As to InterExchange, this Motion is not substantially justified and required InterExchange to expend significant time and energy in responding. InterExchange is entitled to its fees and costs incurred in responding to the Motion.

Respectfully submitted this 31st day of January, 2017.

*s/ Brooke A. Colaizzi*

Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com
Heather F. Vickles
(hvickles@shermanhoward.com
Raymond M. Deeny
(rdeeny@shermanhoward.com
Joseph H. Hunt
(jhunt@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Fax: (303) 298-0940

***Attorneys for Defendant InterExchange, Inc.***

*s/ Joan A. Lukey*

Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

*s/ Kathryn A. Reilly*

Kathryn A. Reilly (reilly@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

***Attorneys for Defendants Agent Au Pair, Au Pair International, Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair***

*s/ Bogdan Enica*

Bogdan Enica (Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

***Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair***

*s/ James E. Hartley*

James E. Hartley
(jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway Suite 300
Boulder, CO 80302

***Attorneys for Defendant Cultural Homestay International***

*s/ Brian P. Maschler*

Brian P. Maschler
(bmaschler@gordonrees.com)
Gordon & Rees, LLP-San Francisco
275 Battery Street, Suite 2000
San Francisco, CA 94579

John R. Mann (jmann@gordonrees.com)
Peggy E. Kozal (pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Gordon & Reese LLP
555 17th Street, Suite 3400
Denver, CO 80202

***Attorneys for Defendant AuPairCare, Inc.***

*s/ Susan M. Schaecher*

Lawrence L. Lee, Esq.
(llee@laborlawyers.com)
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

***Attorneys for Defendants APF Global Exchange, NFP***

*s/ William J. Kelly III*

William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

***Attorneys for Defendant USAuPair, Inc.***

*s/ Martha L. Fitzgerald*

Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

***Attorneys for Defendant EurAuPair Intercultural Child Care Programs***

*s/ Meshach Y. Rhoades*

Meshach Y. Rhoades
(mrhoades@armstrongteasdale.com)
Martin Estevao
(mestevao@armstrongeasdale.com)
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237

***Attorneys for Defendant GreatAuPair, LLC***

*s/ Stephen J. Macri*

Stephen J. Macri
(smacri@putneylaw.com)
Joseph B. Cartafalsa
(jcartafalsa@putneylaw.com)
Robert M. Tucker
(rtucker@putneylaw.com)
John B. Fulfree
(jfulfree@putneylaw.com)
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

***Attorneys for American Institute for Foreign Study d/b/a Au Pair in America***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of January, 2017, a true and correct copy of the foregoing **CERTAIN DEFENDANTS' JOINT RESPONSE TO MOTION FOR PROTECTIVE ORDER OR, IN THE ALTERNATIVE, AMENDMENT OF THE SCHEDULING ORDER (DOC. #454)** was served upon the following:

Randall W. Jackson (rjackson@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Dawn Smalls (dsmalls@bsfllp.com)
Boies Schiller & Flexner, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, FL 33301

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218

***Attorneys for Plaintiffs***

*s/ Laura Lewis*
Laura Lewis