IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

                Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

                Defendants.
_____

**DEFENDANTS' OPPOSITION TO MOTION TO COMPEL ANSWER TO PLAINTIFFS' INTERROGATORY NO. 1 AND REQUEST FOR PRODUCTION NO. 1**

## INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") makes sweeping, unequivocal allegations of price fixing of stipends paid to au pairs participating in a Department of State ("DOS") sponsored cultural exchange program.  For example, Plaintiffs allege that sponsors "conspired and agreed to fix" au pair stipends "at exactly the programmatic wage floor" and "all potential Class Members experienced the same or similar pay as a result of Defendants' conspiracy."  SAC ¶¶ 80, 541, ECF 395.  But, as Plaintiffs' Motion to Compel[1] ("Motion") makes clear, Plaintiffs do not know whether all au pairs were paid the same amount, or whether they provided the same number of hours of childcare per week.  Plaintiffs now seek to conduct an individualized inquiry of au pairs and host

_____

[1] The full title is "Motion to Compel Answer to Plaintiffs' Interrogatory No. 1 and Request for Production No. 1 Pursuant to Rule 37(a)."  The Motion focuses on, and this brief is filed on behalf of, all Defendants except A.P.E.X. American Professional Exchange, LLC and 20/20 Care Exchange, Inc.  AuPairCare, Inc. joins this Opposition, but does not waive its arbitration demand and expressly reserves all rights related thereto.

families to attempt to determine whether their allegations are accurate.

The fact that Plaintiffs must poll putative class members (and others) to determine the threshold question of what au pairs were paid confirms that Plaintiffs' claims are not subject to common proof, and that no one au pair is representative of all others. In addition, Plaintiffs' suggestion that they can shortcut a class-wide inquiry by surveying a representative sample is dubious. Even the limited information available shows stipend amounts and childcare hours that varied significantly across the tens of thousands of putative class members. Regardless, the process Plaintiffs have proposed is not appropriate. As discussed below, Plaintiffs' counsel should not be permitted to engage in class-wide or group contact with au pairs outside of the approved notice process. Nor would it be proper, or likely effective, to poll host families for information. Plaintiffs' Motion should be denied.

## BACKGROUND

Plaintiffs served written discovery on Defendants on or about March 19, 2015, after which discovery was stayed. ECF 198. The stay was lifted in February 2016, after the Court ruled on Defendants' Motions to Dismiss. On March 3, 2016, Plaintiffs served discovery requests that superseded the earlier set. *See* Pls. Email, ECF 476-1. Defendants submitted initial responses on or about May 4, 2016, and many Defendants have supplemented those responses. Plaintiffs' Motion focuses on objections to identifying au pairs (at least at this time) and identifying host families. Mot. at 1.

Each Defendant objected to providing contact information for au pairs as premature because neither a collective action nor a Rule 23 class had been certified.

Defendants objected to providing host family information because, among other things, such information is private and proprietary, and its disclosure would have serious implications for host families' (including their children's) privacy and for the Defendants' businesses.  *E.g.,* Smalls Decl. Ex. K;[2] Wolosz Decl. ¶ 3 and Ex. 1 pp. 3-5, ECF 476-13.

Although Defendants stated their objections in May 2016, for the most part Plaintiffs only recently began to press for au pair and host family contact information. The relevant conferrals are discussed in detail at pages 2-8 of Certain Defendants' Joint Response to Motion for Protective Order Or, In the Alternative, Amendment of the Scheduling Order, ECF 476, which Defendants incorporate herein.  As that recitation explains, Plaintiffs raised the issue of au pair contact information with a few defendants in Fall 2016.  At that time, Plaintiffs did not disclose a desire to use the information to conduct a survey and, indeed, declined to say why they needed the information prior to class certification.  *Id.* at 4-5; Wolosz Decl. ¶ 6, ECF 476-13; Smalls Decl. Ex. N.

In late December 2016 and early January 2017, Plaintiffs raised the issue of au pair contact information with the remaining defendants, and raised with all Defendants the issue of host family contact information and the idea of a survey.[3]  Smalls Decl. ¶¶ 19-27, 29, 31, 45-46.  Since disclosing the survey concept, Plaintiffs have equivocated regarding its purpose.  In their Motion for Protective Order (ECF 454), they claimed that the information is critical for class certification expert reports (which have now been served).  More recently, Plaintiffs have claimed that they need the survey

---

[2] Citations to "Smalls Decl. __" are to the Declaration of Dawn L. Smalls filed in support of the Motion, ECF 467, and exhibits attached thereto.

[3] Given this timing, Plaintiffs are responsible for any urgency they now claim to face.

100510582_1

primarily for merits issues and damages, and they need to proceed because the discovery deadline is approaching.[4]  Mot. at 2.

In the conferral process, Defendants explained that it would be inappropriate for Plaintiffs to have au pair contact information, which would allow them to send class-wide communications outside of the approved notice process.  *See, e.g.,* Smalls Decl. Ex. N. Plaintiffs have not committed to refrain from such contact, nor have they denied that this is one purpose in seeking the information.  Indeed, during meet and confer calls and the informal conference, Plaintiffs confirmed that in addition to surveys, they may attempt discussions with putative class members outside of the approved notice process.  *See* Jan. 24, 2017 Disc. Conf. Tr. at 16-17, ECF 484.

On January 18, 2017, certain Defendants offered a compromise.  In exchange for Plaintiffs' agreement to refrain from filing this Motion or seeking host family information unless a Rule 23 class is certified, Defendants would email the au pairs a survey prepared by Plaintiffs and their experts.  Smalls Decl. Ex. NN.  In order to ensure that Plaintiffs do not include language aimed at recruiting class members, Defendants reserved the right to "veto" survey language.  *Id.*  Plaintiffs summarily rejected the proposal and offered no counter-proposal.  Smalls Decl. Ex. QQ.

The Court held an informal conference on January 24, 2017.  Plaintiffs maintained that they should have unfettered access to au pairs and host families, and argued against both Defendants' proposal and the Court's alternate suggestion that the parties retain a third party to conduct a survey.

---

[4] Plaintiffs have since moved to amend the deadlines, so this concern may be moot.

## **ARGUMENT**

Plaintiffs have been unable to obtain from Defendants records of au pair stipends and hours of childcare provided.  This is hardly surprising, given that sponsors do not employ the au pairs.  By May 2016, Plaintiffs had discovery responses from Defendants stating exactly that.  *See, e.g.*, Smalls Decl. Ex. F at 10 (explaining that Defendant has no documents responsive to request for time records); InterExchange's Responses to Pls.' First Interrogatories at 7-8, ECF 476-2 ("[A]u pairs are paid by their host families, not by Defendant.").

Having failed to obtain records that Defendants do not have, Plaintiffs now want the Court to order production of tens of thousands of names and contact information for au pairs and host families, so they can attempt to fill this evidentiary gap.  As explained below, the Motion should be denied at this time as to both sets of contact information.

### I.    **Plaintiffs Should Not Be Given Unfettered Pre-Certification Access to the Contact Information of the Putative Classes.**

The dispute regarding production of au pair contact information is largely one of timing.  If a class is certified, Defendants likely will be required to provide available au pair contact information to facilitate court-approved notice to the class.  Defendants oppose Plaintiffs' attempt to obtain this information pre-certification because it would likely be used outside of that formal process to send unapproved communications.

There are important reasons that class-wide communications should occur pursuant to the approved notice required by Fed. R. Civ. P. 23(c)(2) and in a collective action brought under Section 216(b) of the FLSA.  A court-approved notice will be crafted to explain the litigation and assist putative class members in deciding whether

- 5 -

they wish to participate.[5]  *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 172 (1989) ("By

monitoring preparation and distribution of the notice, a court can ensure that it is timely,

accurate, and informative."); *Smith v. Keypoint Gov't Solutions, Inc.*, No. 15-cv-00865-

REB-KLM, 2016 WL 7324606, at *3 n.6 (D. Colo. Dec. 16, 2016) (same).

That court-approved process would be meaningless if Plaintiffs' counsel could

disseminate blast emails of their choosing to the putative class now.  In connection with

the conditional certification motion, the parties attempted to agree on the notice, and

presented only narrow disputes to the Court.  *See* Am. Cultural Exchange Opp. to Pl.

Cond. Cert. Mot. Exs. B-D, ECF 359-5-7.  That exercise will be moot if the approved

notice is sent *after* Plaintiffs' counsel have already directed their own communications to

a large number of putative class members.

Delaying class communications until certification will also respect putative class

members' privacy.  Au pairs have a reason to expect that their information will be kept

confidential, and sponsors take steps to maintain confidentiality.  *See* Declaration of

Natalie Jordan ("Jordan Decl."), attached hereto as Exhibit A, ¶¶ 3-7 and Ex. 1;

Declaration of Sarah V. McNamara ("McNamara Decl."), attached hereto as Exhibit B,

¶¶ 4-9 and Exs. 1-2.  Allowing class action lawyers to contact au pairs would intrude on

their privacy.  Plaintiffs argue that such concerns are ameliorated by the Protective

Order (Mot. at 2); but that order does not protect au pairs who prefer not to be contacted

at all, much less questioned by Plaintiffs' counsel.  *See Velasquez-Monterrosa v. Mi*

---

[5] Plaintiffs' counsel previously agreed:  "the reason that . . . notice is overseen by the
Court is to make sure that both sides have honest and complete communications with
class members."  Apr. 25, 2016 Sched. Conf. Tr. at 110, ECF 307.

*Casita Rests.*, No. 5:14-CV-448-BO, 2015 WL 1964400, at *8 (E.D.N.C. May 1, 2015) (denying motion to compel identifying information for putative FLSA class as an "unjustified intrusion" on privacy); *Strauch v. Comput. Scis. Corp.*, No. 3:14 CV 956 (JBA), 2015 WL 75884, at *4 (D. Conn. Jan. 6, 2015) (finding request of identifying information to be "excessive and intrusive" and ordering disclosure of anonymized data). This is not a hypothetical concern; one Plaintiff has withdrawn rather than participate in the litigation. Au pairs who are merely members of a *putative* class that may not be certified should not face unfettered, uninvited communication from counsel.[6]

Moreover, Defendants are concerned that Plaintiffs' counsel will use the information to recruit clients. *See, e.g.*, Smalls Decl. Ex. N. The desire to find clients is not a reason to demand production of putative class contact information prematurely. *See Velasquez-Monterrosa*, 2015 WL 1964400, at *8 ("[P]roduction of the contact information . . . presents the risk of recruitment of class members outside the bounds of court supervision."); *Burkhart-Deal v. Citifinancial, Inc.*, No. 7-1747, WL 3053718, at *1 (W.D. Pa. Sept, 18, 2009); *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI) (MDG), 2006

---

[6] Plaintiffs' authority does not dictate a contrary result. For example, in *Currie-White v. Blockbuster, Inc.*, the Court stated that a protective order *should* address privacy issues, but directed the parties to confer as to additional protections. No. C 09-2593 MMC (MEJ), 2010 WL 1526314, at *3-4 (N.D. Cal. Apr. 15, 2010). *Estate of Rice v. City & Cty. of Denver* concerned disclosure of identifying information of *named parties.* No. 07-cv-01571-MSK-BNB, 2008 WL 2228702, at *13-14 (D. Colo. May 27, 2008). *Thurby v. Encore Receivable Mgmt.* concerned disclosure of home addresses and phone numbers for individuals identified in initial disclosures. 251 F.R.D. 620, 621 (D. Colo. 2008). *Tomanovich v. Glen* ordered disclosure of former employees' addresses after plaintiff demonstrated a "particularized need" connected to her claim. No. IP 01-1247 C Y/K, 2002 WL 1858795, at *4 (S.D. Ind. Aug. 13, 2002). In any event, even if some courts have found in favor of disclosure on the facts before them, those decisions do not bind this Court, which should conduct its own analysis and decline to order production.

WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow

discovery of class members' identities at the pre-certification stage out of concern that

plaintiffs' attorneys may be seeking such information to identify potential new clients…").

Indeed, numerous courts in this Circuit and and others have delayed identifying

class members until a class is certified.[7]  *See, e.g., Saenz v. Erick Flowback Servs.*

*LLC*, No. CIV-14-593-D, 2014 WL 7005358, at *2 (W.D. Okla. Oct. 23, 2014) ("Should

the Court conditionally certify a class of employees, then a list of individual class

members will be relevant to a party's claim or defense and, thus, discoverable.");

*Palmer v. Priority Healthcare, Inc.*, No. 3:13-CV-480-TSL-JMR, 2013 WL 5771662, at

*4-5 (S.D. Miss. Oct. 24, 2013) (denying motion to provide names and addresses of

potential class members until certification); *Ketch, Inc. v. Heubel Material Handling, Inc.*,

No. Civ-11-12-M, 2011 WL 4527881, at *2 (W.D. Okla. Sept. 28, 2011) (finding no need

for class identifying information until a class is certified); *Levine v. Gunther Motor Co. of*

*Plantation, Inc.*, No. 10-61812-CIV, 2010 WL 5140590, at *2-3 (S.D. Fla. Dec. 9, 2010)

(same); *Charles v. Nationwide Mut. Ins. Co.*, No. 09 CV 94 (ARR), 2010 WL 7132173,

at *6-8 (E.D.N.Y. May 27, 2010) (denying disclosure of contact information for putative

---

[7]  Plaintiffs claim that *Allen v. Mill-Tel, Inc.,* 283 F.R.D. 631, 635-36 (D. Kan. 2012), supports their plan to seek stipend and hour discovery.  *Allen*, however, excluded compensation and hours discovery pre-certification.  *Id.* at 636.  Plaintiffs' other citations to the same line of cases are distinguishable in that identifying information was relevant to certification, whereas here Plaintiffs filed this Motion six months after they sought conditional certification.  *See In re Bank of Am. Wage & Hour Emp't Practices Litig.*, 275 F.R.D. 534, 537 (D. Kan. 2011); *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 673 (D. Kan. 2003).  Finally, *Long v. Landvest Corp.* is inapposite, as those defendants voluntarily disclosed information, and the dispute concerned only the scope.  No. Civ.A. 04-2025-CM-DJW, 2006 WL 897612, at *12-13 (D. Kan. Mar. 31, 2006).

Rule 23 and FLSA class members); *see also Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 681-82 (D. Colo. 1997) (finding that plaintiffs and their counsel may contact class members after certification using court-approved notice).

This Court should reach the same conclusion.  If Plaintiffs want stipend and hour information, they should focus on what they already can obtain from their clients or otherwise, or entertain the alternate proposals suggested by the Defendants or the Court.[8]  Their unwillingness to do so strongly suggests that recruiting is a primary goal. Because that is not a proper reason to circumvent the notice process, Plaintiffs' request for premature production of au pair contact information should be denied.

## II.    The Court Should Deny Plaintiffs' Request for Host Family Information.

Plaintiffs' demand for host family information is even more problematic.  For the reasons discussed below, their proposed outreach to host families is unlikely to yield the information they want, but it will cause serious harm to Defendants and violate the privacy of the host families and their children.

### A.    Plaintiffs' Attempt to Survey Host Families Will Not Work

The SAC asserts claims against sponsors, not host families.  Nonetheless, Plaintiffs remarkably describe host families who pay the DOS minimum stipend as "lawbreakers" (Mot. at 13), even though payment of the minimum is not unlawful. Apparently, Plaintiffs maintain that host families who pay the DOS minimum stipend are

---

[8] Plaintiffs claim that Defendants' proposal is flawed because au pairs would be biased in favor of sponsors.  Motion at 15.  But, the more logical bias would be to increase the likelihood of a judgment in their favor.  *See, e.g., Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-00758, 2015 WL 410703, at *4-6 (N.D. Ohio Jan. 29, 2015) (excluding FLSA survey data because of failure to account for pro-plaintiff biases).

liable for not paying more.  At the informal conference, counsel for Cultural Care asked if Plaintiffs would stipulate that they will not seek recovery from host families, and they refused.  *See* Jan. 24, 2017 Disc. Conf. Tr. at 43-45, ECF 484.

Despite their position, Plaintiffs press for contact information because they say "host families will be more easily polled."  Mot. at 13.  They propose to send surveys to host families about stipend amounts, fees, hours, and "other relevant features" of the au pair program.  *Id.* at 8.  Plaintiffs assume that host families will respond.

Plaintiffs' assumption is flawed, and apparently stems from their mistaken view that they can contact host families without making a full disclosure regarding this lawsuit.  The rules of ethics dictate otherwise.  Any such communication by Plaintiffs' counsel or their agents must begin by disclosing counsel's role in this case and asking if the host family is represented by an attorney.  *See, e.g.*, Colo. RPC 4.3; ABA Model Rules of Prof'l Conduct r. 4.3.  All communications must cease if the answer is yes.  *Id.*

For host families who are not represented, any further communication must be preceded by (i) a suggestion that the individuals obtain counsel; (ii) an explanation of the lawsuit; (iii) a disclosure that Plaintiffs are adverse and contend that host families face liability based on what they paid au pairs; (iv) a disclosure that the host family is under no obligation to communicate; and (v) a warning that if the host family provides information, it could be used against them.  *Id.; see also, e.g., Marino v. Usher*, Civ. No. 11–6811, 2014 WL 2116114, at *10 (E.D. Pa. May 21, 2014) ("[The attorney] did not ask Guice if he had a lawyer, did not advise Guice to get a lawyer, and did not explain to Guice that [his client's] interests were adverse to Guice's. [The attorney's]

- 10 -

manipulation of Guice is exactly what Rule 4.3 was intended to prevent."); *In re Domestic Air Transp. Antitrust Litig.,* 141 F.R.D. 556, 562 (N.D. Ga. 1992) ("prior to making any <u>ex parte</u> contact with [defendant's] former employees . . . plaintiffs must deliver . . . a letter informing her of the nature of the lawyer's role in the matter giving occasion for the contact, including the identity of the lawyer's client and the fact that the witness's former employer is an adverse party. Counsel must also inform the former employee that she has no obligation to talk with plaintiffs' counsel.") (emphasis in original); *Curley v. Cumberland Farms*, 134 F.R.D. 77, 94-95 (D.N.J. 1990) (imposing seven "guidelines" when contacting former employees).

As the rule's comment explains, this disclosure is crucial because "[a]n unrepresented person . . . might assume that a lawyer is disinterested . . . or is a disinterested authority on the law even when the lawyer represents a client. In order to avoid a misunderstanding, a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person."  Colo. RPC 4.3, cmt. 1.  Communication without this disclosure would thus be a "paradigm example of conduct prohibited by Rule 4.3."  *In re Air Crash Disaster near Roselawn*, 909 F. Supp. 1116, 1123 (N.D. Ill. 1995) (questionnaire with cover letter that concealed the purpose for which the information was being solicited by litigation counsel violated the identical Illinois Rule 4.3); *see also People v. Pautler*, 35 P.3d 571, 581 (Colo. 2001) (citing with approval *In re Air Crash*).

Once these disclosures are made, host families will not be "easily polled."  Mot. at 13.  No rational host family that understands the case, the adverse position Plaintiffs

are taking, and the voluntary nature of the survey would ever choose to respond.  *See, e.g., Norton v. Sperling Law Office, P.C.*, 437 F. Supp. 2d 398, 404 (D. Md. 2006) ("It is highly doubtful that [defendant] would have discussed *anything* with [plaintiff's] attorney had he made such a call and properly explained that he had been retained to sue [defendant] for hundreds of thousands of dollars.") (emphasis in original).  The exercise is unlikely to yield any meaningful information.

###    B.    The Harm From the Disclosure of Host Family Contact Information Would Be Severe.

Although the surveys are unlikely to yield information, the exercise will cause significant harm to host families.  Host families are not corporations, they are parents, with children, who paid at least the stipend that the DOS informed them they must pay. In connection with their participation in the program, they provided their sponsor personal, confidential contact information.  These tens of thousands of families reasonably expect confidentiality.  Particularly where, as here, the production of information is unlikely to yield helpful evidence, the Court should protect these privacy interests.  *See, e.g., Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1002) (acknowledging privacy right of third parties); *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2009 WL 1194155, at *7 (D. Colo. April 30, 2009) (refusing to compel names and contact information of prison inmates, finding "the privacy interests of non-parties in the information requested outweighs its value in this litigation"); *JB v. Asarco, Inc.*, 225 F.R.D. 258, 262 (N.D. Okla. Dec. 2, 2004) (denying production of third-party information because "[d]iscovery that … intrudes upon privacy rights should not be permitted 'unless there is a showing that the need for disclosure outweighs the

- 12 -

importance of protecting non-parties' privacy.") (citation omitted).

The requested disclosure will also harm Defendants.  Host family information is a key asset, which sponsors take steps to maintain in confidence.  Jordan Decl. ¶¶ 8-16 McNamara Decl. ¶¶ 4-9 and Exs. 1-2; Declaration of Stephan Lehan ("Lehan Decl."), attached hereto as Exhibit C, ¶¶ 3-4 and Ex. 1; APF Global Privacy Policy, attached hereto as Exhibit D.  Plaintiffs' disclosure regarding the lawsuit, if sufficiently robust to pass ethical muster, is likely to be interpreted by host families as a threat.  When host families start receiving these communications and become concerned that they may be dragged into litigation under threat of being forced to pay significant amounts of money, the repercussions would likely be devastating.  The contact by class action lawyers would cause significant harm to sponsors' relationships with host families, to their goodwill, and ultimately to their business.  *See, e.g.*, Jordan Decl. ¶¶ 17-18; McNamara Decl. ¶¶ 10-12; Lehan Decl. ¶ 5.

The disclosure will impact the au pair program as well.  There is a cost for host families to participate in the program.  Host families welcome a stranger into their home. They pay the stipend as well as for housing, food, utilities, and (often) car insurance, spend time on cultural exchange activities and to support au pairs through culture shock and homesickness, and accept child care providers with less experience than professionals.  To offset these concessions (and make the program viable), the DOS set a stipend that is lower than the cost of many other childcare options.  This tradeoff obviously works for many:  they face expense and uncertainty of hosting an au pair, but in exchange they derive cultural exchange benefits and an affordable childcare option.

If Plaintiffs' communications lead host families to fear that they may be at risk for substantial damages in addition to program participation costs, many will likely opt out. Some may even terminate their participation prematurely, impacting both the au pairs, who will be forced to scramble to find a new family, and the host families, who will be forced to scramble to find alternate child care.  Even though Defendants dispute Plaintiffs' claims, and Plaintiffs may never prove them or even file suit against host families, the damage to the program and the Defendants' business would be severe.

Plaintiffs suggest that this harm does not exist because there is a protective order.  But the protective order will not prevent the intrusion when host families are contacted by class action lawyers, the backlash that sponsors will suffer when host families learn that sponsors provided their contact information, or the impact on the program as host families react to plaintiffs' threat of a costly lawsuit.  *See, e.g., Bennett v. Fieser*, 152 F.R.D. 641 (D. Kans. 1994) (imposing protective order preventing plaintiffs from attempting to contact patients identified through discovery).

### C.    Plaintiffs' Request for Host Family Contact Information Should Be Denied Or, At a Minimum, Deferred

The Court must balance the value to Plaintiffs of host family information against the burden to Defendants and host families of providing it.  *Gonzalez v. Goodyear Tire & Rubber Co.*, No. CIV 05–941 BB/LFG, 2006 WL 7290047, at *5 (D.N.M. Aug. 10, 2006) ("full discovery is necessary to the proper functioning of the adversary system. But that general principle must now be balanced against the need to curb abusive discovery practices in the interests of fairness and efficiency."); *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998) (in managing discovery, district

courts must balance "the need to protect the rights of all parties."). The value of host family information to the Plaintiffs, which is slight, is outweighed by the negative impact, burden and harm to host families, Defendants, and the au pair program that will result.

At a minimum, the potential fallout warrants deferring the Motion. Plaintiffs have a different source of this information – the au pairs. Their own clients have recollections and, in some cases, records. *See, e.g.,* Pl. Rascon's Response to Cultural Care's First Discovery Requests, attached hereto as Exhibit E, at No. 2. In addition, if a class is certified, court-approved notice will be distributed, and Plaintiffs' counsel will have access to more au pairs. Those sources should be mined before the Court orders the massive, harmful production of host family information that Plaintiffs seek.[9]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion and enter a protective order providing that Defendants are not required to produce au pair or host family contact information at this time. *See* Fed. R. Civ. P. 26(c) and 37(a)(5)(B).

Date:  February 9, 2017                       Respectfully submitted,

                                              s/ Jessica L. Fuller
                                              Joan A. Lukey (joan.lukey@choate.com)
                                              Robert M. Buchanan, Jr.
                                              (rbuchanan@choate.com)
                                              Michael T. Gass (mgass@choate.com)
                                              Justin J. Wolosz (jwolosz@choate.com
                                              Lyndsey M. Kruzer (lkruzer@choate.com)

---

[9] Plaintiffs should not be heard to complain that the absence of stipend information will harm their chance of success at class certification. Plaintiffs have alleged that Defendants fixed the au pairs' stipends. If Plaintiffs cannot even show that Defendants know what stipend amounts were paid, that only demonstrates the absence of a conspiracy, and there is nothing unjust about their claims failing.

CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-5000

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc.
d/b/a Cultural Care Au Pair***

*s/ Kathryn A. Reilly*
Kathryn A. Reilly (reilly@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

***Attorneys for Defendants Agent Au Pair  and
American Cultural Exchange, LLC  d/b/a Go
Aupair***

*s/ James E. Hartley*
James E. Hartley (jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway Suite 300
Boulder, CO 80302

***Attorneys for Defendant Cultural  Homestay
International***

- 16 -

_s/ Susan M. Schaecher_

Lawrence L. Lee, Esq.
(llee@laborlawyers.com)
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

***Attorneys for Defendants APF Global
Exchange, NFP***

_s/ Stephen J. Macri_

Stephen J. Macri
(smacri@putneylaw.com)
Joseph B. Cartafalsa
(jcartafalsa@putneylaw.com)
Robert M. Tucker (rtucker@putneylaw.com)
John B. Fulfree
(jfulfree@putneylaw.com)
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

***Attorneys for American Institute for Foreign
Study d/b/a Au Pair in America***

_s/ Bogdan Enica_

Bogdan Enica (Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

- 17 -

*Attorney for Defendant Expert Group*
*International, Inc. d/b/a Expert Au Pair*

s/ Brian P. Maschler
Brian P. Maschler
(brian.maschler@arentfox.com)
Arent Fox LLP
55 2nd Street, 21st Floor
San Francisco, CA 94105

John R. Mann (jmann@gordonrees.com)
Peggy E. Kozal (pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Gordon & Reese LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**

s/ Martha L. Fitzgerald
Martha L. Fitzgerald (mfitzgerald@bhfs.com)
David B. Meschke (dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant EurAuPair**
**Intercultural Child Care Programs**

s/ Brooke A. Colaizzi
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Erica Lynn Herrera
(eherrera@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

- 18 -

**Attorneys for Defendant InterExchange, Inc.**

s/ William J. Kelly III
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

**Attorneys for Defendant USAuPair, Inc.**

100510582_1

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

   I hereby certify that on February 9, 2017, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, including:

Randall W. Jackson (rjackson@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Boies Schiller & Flexner, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, FL 33301

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218

        s/ Jessica L. Fuller

7966753

100510582_1