IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–03074–CMA–KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
DAYANNA PAOLA CARDENAS CAICEDO,
ALEXANDRA IVETTE GONZALEZ,
SARAH CAROLINA AZUELA RASCON,
LAURA MEJIA JIMENEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM, and those similarly situated,

       Plaintiffs,

v.

INTEREXCHANGE, INC,
USAUPAIR, INC.,
GREAT AUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMSTAY INTERNATIONAL,
CULTURAL CARE, INC. d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a AuPair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
GOAUPAIR OPERATIONIS, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC d/b/a/ ProAuPair, and
20/20 CARE EXCHANGE, INC. d/b/a The International Au Pair Exchange,

       Defendants.

---

**ORDER**

---

This matter is before the court on "Moving Defendants' Joint Motion to Strike Repudiated Allegations and For Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated Memorandum." (Doc. No. 327 ["Mot."].) Plaintiffs filed a Response (Doc. No. 345 ["Resp."]), to which Defendants replied. (Doc. No. 361 ["Reply"].)

## BACKGROUND INFORMATION

In their Amended Complaint, Plaintiffs assert, *inter alia*, an antitrust claim against Defendants alleging Defendants colluded to set standard au pair wages at the purportedly minimum amount allowed by law. (Doc. No. 101 ["Am. Comp."] at 20-35, 86-88.) Paragraphs 90-94 in the Amended Complaint include allegations supporting their antitrust claim and are supported by interviews of certain Defendants' directors and/or employees by Plaintiffs' investigator, David Keil. (Am. Comp. at 20-22.) During discovery, Defendants obtained Mr. Keil's telephone logs, which summarize his conversations with the agents and/or employees. (Doc. Nos. 327-5.) Defendants also took Mr. Keil's deposition. (Doc. No. 327-1 ["Keil Depo."].)

By the current Motion, Defendants allege Mr. Keil's logs and deposition testimony do not support the allegations contained within paragraphs 90-94 of the Amended Complaint and therefore, these paragraphs should be stricken. Additionally, because the court relied at least in part upon these specific paragraphs in previously denying Defendants' Motions to Dismiss Plaintiffs' antitrust claim, if the court grants Defendants' request, they request the opportunity to file a second Motion to Dismiss.

**LEGAL STANDARD**

Fed. R. Civ. P. 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  However, striking a portion of a pleading is a drastic remedy; federal courts generally view motions to strike with disfavor and infrequently grant such requests.  5C Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1380 (3d ed. 2011).  Given that motions to strike are disfavored and will only be granted under the rarest of circumstances, the moving party's "burden of proof is a heavy one." *Holzberlein v. OM Fin. Life Ins. Co.,* Case No. 08–cv–02053–LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008).  Further, "[e]ven where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike."  *Sierra Club v. Tri-State Generation and Transmission Ass'n, Inc.,* 173 F.R.D. 275, 285 (D. Colo. Feb. 6, 1997).  In addition, regardless of whether the moving party has met its burden to prove that allegations contained in a pleading violate Rule 12(f) by being redundant, immaterial, impertinent or scandalous, discretion remains with the Court to grant or deny the motion.  *See* Fed. R. Civ. P. 12(f) (denoting only that allegations which are subject to Rule 12(f) "may" be stricken).

**ANALYSIS**

Reviewing the relevant materials the court finds that, contrary to Defendants' Motion, Mr. Keil's deposition and telephone logs do not repudiate Plaintiffs' allegations.  Examining the challenged allegations in turn, paragraph 92 of the Amended Complaint provides the following:

> [I]n a telephone conversation on November 20, 2014, a representative of one
> Sponsor Defendant, with the title of "director," admitted that there was an
> understanding between all of the Sponsors to pay standard au pairs the same
> amount.  The Sponsor explained that the government sets a minimum amount, but

> that all of the Sponsors then agreed among themselves to pay exactly that minimum amount.  This Sponsor thus characterized the 'stipend paid to the au pairs' as a 'fixed expense.'  The Sponsor explained that the stipend 'is where pricing becomes standard across all agencies,' and that 'there is no difference in prices, as far as the stipend goes, between all of the agencies.'

(Am. Comp. at 21.)  Mr. Keil's telephone logs reveal the subject-Sponsor in paragraph 92 is

Defendant APF Global Exchange and Mr. Keil spoke with "Carrie Crompton, Director of Field

Operations."  (Doc. No. 327-5 at 2.)

Mr. Keil's telephone log regarding his conversation with Ms. Crompton sets forth the

following, in relevant part:

> [With regard to the stipend], [s]he stated, 'That is where pricing becomes standard across all agencies.  There is no difference in prices, as far as the stipend goes, between all of the agencies."

> I asked, "So, is there an understanding among all the agencies about paying the au pairs this set amount?"

> She answered, "Well, yea, it's that."

> Then after a long pause, she added, "Plus, we're all subject to the same federal guidelines, so we all stay within that."

> Later that day, I called back and spoke [with] Ms. Crompton, seeking clarification.

> I stated, "I'm a little confused on the stipend amount.  Can you explain it to me?" She responded, "Sure, the government sets an amount, and we all pay that amount."

> I then asked, "So, you're saying that the government sets a minimum amount to pay, and all the agencies agree to pay that exact same minimum amount?"

> And Carrie answered, "Correct, correct!  Everybody agrees, correct!"

> At the end of the conversation, Ms. Crompton, who seemed to need to explain further, volunteered, that since these fees are paid directly to the au pair, and since the $196 is a minimum amount, that nobody would have to know if a particular family elected to pay an au pair a little bit more.

(Doc. No. 327-5 at 2.)

> Similarly, in paragraph 93 of the Amended Complaint, Plaintiffs stated the following:
>
> [O]n November 21, 2014, a representative of another Sponsor, also with the title of "director," admitted that all of the Sponsors agreed to set au pair wages at $195.75. Specifically, the Sponsor acknowledged that each and every Sponsor got together and agreed to pay au pairs a stipend of no more than $195.75 a week. As the representative added, the Sponsors "all agreed to pay that amount, no more."

(Am. Comp. at 21.)  Mr. Keil's referenced conversation was with Irina Gussev, Regional Director for the East Coast Region, for Defendant EurAuPair Intercultural Child Care Programs.

(Doc. No. 327-5 at 3-4.)  The telephone log regarding this conversation provides:

> I asked, "what about the amounts paid directly to the au pair?"
>
> She answered, "Yes, that called the Stipend.  It's $195.75."
>
> I asked, "Is that just like the educational fee?  Do all of the companies require a family to pay the exact same amount?"
>
> She answered, "yes, it's exactly the same amount, equal in all programs" (As if this is a prepared answer to certain questions.
>
> I then asked, "Are you saying that each an [sic] every one of the fifteen companies have gotten together and they made an agreement to pay all au pairs a stipend that is no more then [sic] $195.75 per week?"
>
> She first answered, "Yes, they all agreed to pay that amount, no more."  Then she added, "we have one family who pays a little bit more, so I guess you could pay more if you wanted to, but yes, it's exactly the same, equal in all programs."

(*Id.* at 3-4.)

> Paragraph 94 in the Amended Complaint provides:
>
> In yet another telephone conversation on November 21, 2014, a representative of yet another Sponsor, again with a  "director" title, explained why "the stipend is identical across all companies."  The representative admitted that the Sponsors all

agreed to pay the exact same minimum rate.  As the Sponsor noted, "[e]verybody agrees" to pay au pairs no more than the minimum weekly wage.

(Am. Comp. at 22.)  Based on Mr. Keil's telephone logs, the conversation memorialized above was with "Joanna" who was the Placement Coordinator/Area Director for Au Pair International.

(Doc. No. 327-5.)  The actual memorialization provided, in relevant part:

> When she began to address the Au Pair's stipend, she stated, "The Department of State sets all of the rules.  The rules, so of course the stipend is identical across all companies."
>
> She then added, "It's a base rate, it's a minimum."
>
> I asked, "So, everybody agrees . . ."
>
> I then asked, "So all the companies agree to pay that same exact minimum rate?"
>
> Joanna answered, "Everybody agrees, yep, exactly!"
>
> She then explained that while she was working for this company, as an Au Pair in Florida, her host family rounded her weekly stipend up, to $200 a week.  She added, if your Au Pair did something extra nice for you [sic] child one week, like cleaning out a dresser, you could maybe pay a little more that week.  It's fine, it's up to you."

(*Id.* at 3.)

In their Motion, Defendants' repeatedly argue Plaintiffs' allegations are misleading because they fail to mention that the directors acknowledged families could pay more.  However, in light of the context in which the directors acknowledged the same, such statements do not contradict Plaintiffs' allegations.  Indeed, in one instance, the director indicated a family could pay more and "nobody would have to know."  (*Id.* at 2.)  This statement is in complete accord with Plaintiffs' Amended Complaint wherein they indicate one host family paid their au pair slightly more than the $195.75 stipend "on the assumption that Au Pair in America would not find out about the cash payments."  (Am. Comp. at 74.)  Similarly, Joanna indicated a family

could round up or if the au pair did something extra the family "could maybe pay a little more that one-week." (Doc. No. 327-5 at 3.) These statements fall far short of repudiating Plaintiffs' allegations regarding the Sponsors agreeing to set the au pair wages at the minimum amount.

According to Defendants, Mr. Keil's logs show that "if the Sponsors 'agreed' on anything, it is that the State Department set a minimum stipend of $195.75, and that a Host Family is free to pay more." (Mot. at 9.) The court concurs that the Sponsors were in agreement that the State Department set a minimum stipend to which 'they all' agreed. However, the directors interviewed also stated that the agencies had affirmatively agreed to pay au pair wages at the same rate; that rate being the minimum stipend dictated by the State Department. (Doc. No. 327-5 at 2-4.) The fact that the Sponsors added that an au pair could be paid "a little bit more" or paid for extra services or secretly paid additional sums does not undermine Plaintiffs' primary allegation, that Defendants colluded to advertise and set the au pairs' wages at the purported minimum amount.

Defendants also rely upon portions of Mr. Keil's deposition testimony to argue that his interviews did not support Plaintiffs' allegations. For example, they explain Mr. Keil testified that Ms. Crompton "seemed to believe that the ability to pay more was okay." (Mot. at 9.) However, in Mr. Keil's testimony, like in his telephone log, he explained that she told him a family could pay more "but no one would have to know" and they "just don't have to tell us." (Keil Depo. at p. 152.) Again, this testimony does not diminish Plaintiffs' allegations that Defendants agreed to set au pairs' pay at the purportedly minimum amount.

Defendants also contend Mr. Keil testified he did not have any evidence of any communications between two or more sponsors in which they agreed to set the amount of the

stipends.  (Mot. at 9.)  However, in asserting this argument, Defendants take Mr. Keil's testimony well out of context.

Mr. Keil testified repeatedly that when the agency employees stated that "we agreed" or "we all agreed," he interpreted that to mean the agencies.  (Keil Depo. at pp. 182, 187.)

> Q.  Okay.  Did you find out from her what, if any, information she had directly of any agreement being reached?
>
> A.  I thought it was implied in her statement that there – "We all agree" – I didn't believe Ms. Crompton and her coworkers were agreeing.  I believed when she said, "We," she meant we, her organization.

(*Id.* at p. 182).)  He further testified:

> Q.  I want you to tell us, sir, each and every piece of evidence that you learned of a communication between any two or more sponsors in which they reached an agreement on the amount.
>
> A.  They statements that I've made here – the statements that are here are my complete statements.  I – as I stated earlier on several occasions, they used the term "we."  I assumed or believed that to be, when they said, "we," they were talking about their organizations, not themselves personally, and that's the sum total of what I have.
>
> Q.  You have no evidence, then, of any communications occurring between two or more sponsors in which they agreed to set the amount of the stipends; is that correct?
>
> A.  Correct.

(*Id.* at p. 187.)  It is a reasonable interpretation of Mr. Keil's logs and testimony that the Sponsors' employees, most of them directors, were indicating an agreement between the Sponsors to set the au pairs' pay at the minimum amount.

The court finds Mr. Keil's telephone logs and deposition testimony support Plaintiffs' allegations in their Amended Complaint, including specifically paragraphs 90-94.  In light of this finding, it is unnecessary for the court to address the remaining relief requested by Defendants.

It is therefore **ORDERED** that "Moving Defendants' Joint Motion to Strike Repudiated Allegations and For Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated Memorandum" (Doc. No. 327) is **DENIED.**

Dated this 13th day of February, 2017.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge