**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

  Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

  Defendants.

---

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
THEIR MOTION FOR PROTECTIVE ORDER**

---

**PRELIMINARY STATEMENT**

  A protective order is necessary to ensure that the defendants do not benefit from withholding critical evidence until it was too late to be used.[1] In this case, the parties exchanged expert reports on January 13, 2017, without the defendants having produced extensive wage data *in their possession*—a fact that their subsequent productions has confirmed—which plaintiffs have been requesting literally for years. Allowing the defendants to rely on later-produced (or as-yet-unproduced) evidence to attack plaintiffs' experts would be grossly unfair, as would allowing defendants to complain about the amount of wage data relied upon by plaintiffs' experts. Simply put, defendants should not be rewarded for their failure to produce responsive documents that go to the heart of the claims in this case.

---

[1]  Plaintiffs do not seek the requested protective order with respect to APEX and 20/20 at this time because they are separately conferring with APEX and 20/20 with respect to the provisioning of wage data.

Defendants' main response is to object that a protective order is "premature," given plaintiffs' pending motion to compel certain wage and identifying data. But the two issues, though related, are independent, and plaintiffs are entitled to both forms of relief. The defendants should be compelled to provide relevant and responsive documents in their possession. And at the same time, to the extent they failed to do so prior to the exchange of expert reports, plaintiffs are entitled to a protective order preventing defendants from attacking plaintiffs' experts for not basing their opinions on comprehensive wage data.

Defendants' other arguments are equally meritless. The suggestion that plaintiffs should have moved in two steps—first to obtain an order that defendants violated Rule 26, and then a second motion for relief under Rule 37—is both contrary to law and common sense, and grossly inefficient. Courts routinely find that a party has engaged in discovery misconduct and fashion appropriate relief at the same time. Likewise, the suggestion that plaintiffs failed to meet and confer prior to moving for a protective order is both wrong—the parties have been discussing the issues raised in this motion for months if not years, and plaintiffs conferred specifically with respect to the relief sought here—and exalts form over substance. Plaintiffs therefore respectfully request that the Court issue a protective order prohibiting defendants from taking advantage of their manipulation of the discovery process.

## **ARGUMENT**

### A. Plaintiffs' Motion is Not "Premature"

A protective order is necessary because the plaintiffs' experts did not have comprehensive wage data in time to incorporate them into class certification reports.

2

While the Court has subsequently provided more time for class certification *briefing* (*see* DE 485 (staying deadline to file Rule 23 Class Certification motion pending ruling on DE 482 motion to amend the scheduling order)), and plaintiffs hope to receive some of the data they seek through separate motions to compel, the fact remains that defendants failed to produce large amounts of wage information until after expert reports were exchanged. Plaintiffs' motion is therefore far from "premature" because it seeks simply to prevent defendants from taking advantage of their late disclosures.

Since 2015, plaintiffs have been asking for comprehensive wage data and contact information for host families and *au pairs* (*see generally* DE 455, Smalls Declaration). In their Opposition, defendants admit that "[c]ompensation information that Defendants do have includes standard form contracts, annual program audit reports, audit surveys, monthly contact records, advertisements, websites, and emails." (DE 476 at 3). Defendants do not dispute that these kinds of documents are relevant. And they do not dispute that they are available. Instead, they argue—incredibly, given what we now know—that they "dispute that their responses were in any way incomplete or incorrect," (DE 476 at 10), and claim that "Defendants have produced what little stipend information they have" (DE 476 at 13).

These statements were incorrect as of January 9, 2017, when plaintiffs were compelled to file their motion for a protective order. At that point, the overwhelming majority of defendants' productions had yet to be made. (*See generally* DE 482; DE 455, Smalls Decl., ¶34). Indeed, as recently detailed in plaintiffs' motion to amend the scheduling order, defendants waited until January 13, 2017—the day class certification expert reports were due—to begin producing the bulk of the discovery in this case. (*See*

3

D.E. 482, Ex. A).  In the three weeks that followed, defendants made at least twenty separate productions totaling more than 86,000 pages of records—more than twice what they had produced since the outset of this case.  (*Id*.)

Nor was defendants' claim to have produced "what little stipend information they have" correct as of January 31, 2017, when they filed their opposition to this motion.  To the contrary, they were in the midst of the massive document dump described above and in greater detail in Plaintiffs' motion to amend the discovery schedule (D.E. 482).  Significant amounts of responsive information thus was not disclosed until it was too late to be useful at the Rule 23 expert report stage.  For example, Go Au Pair waited until February 3, 2017—the day rebuttal reports were due—to produce an eighty-two-page document containing a list of *au pairs* (identified only by number) and stating the date of placement and the stipend amount they received. (D.E. 482 at 4).  Defendants' claim, as of January 31, 2017, to have already produced what little stipend information they have is therefore provably false.

In the meantime, the time for class certification expert disclosures—both opening and rebuttal—has come and gone.  By delaying the majority of their document productions until after the expert reports were exchanged, the defendants effectively denied plaintiffs' experts the opportunity to make any meaningful use of that evidence—which, to be clear, is fully consistent with the plaintiffs' theory of the case—before submitting their reports.  A protective order precluding the defendants from using their own failure to provide relevant evidence as a weapon is therefore entirely appropriate. *Accord Harrison v. Principi, C.A.* 3:03-1398-MBS, 2006 WL 1581807, at *3 (D.S.C. June 6, 2006) ("…if Defendant failed to turn over discoverable documentation requested by

4

Plaintiff, Defendant cannot use the absence of such documentation from the record to support its position.").[2]

Defendants' suggestion that plaintiffs' subsequent motion practice somehow undermines the need for a protective order also misunderstands the scope of plaintiffs' motion to compel. The motion for a protective order was based on defendants' failure to provide virtually any discovery related to wage data (*see* D.E. 454), such as annual program audit reports and audit surveys, monthly contact records, and e-mail correspondence describing stipends actually paid—the very types of documentation that defendants themselves contend comprise relevant wage data (*see* DE 476 at 3). In contrast, plaintiffs' motion to compel is (at this stage) narrower, seeking contact information for host families and *au pairs* (*see* DE 467). The Court therefore could and should find that defendants violated Rule 26(e) without considering defendants' failure to provide contact information. Indeed, Go Au Pair's belated production of a spreadsheet containing evidence of wages paid to hundreds (if not thousands) of *au pairs* alone justifies the protective order plaintiffs seek.

Defendants' argument that this motion is "premature" would effectively impose a prohibition on raising discovery deficiencies as they arise, deferring them instead to the end of discovery. Such a result would, of course, needlessly prolong every case. But that is just what defendants would like to happen here. Plaintiffs were forced to file this

---

[2]   Despite their clear failures to make adequate productions prior to expert discovery, defendants claim that plaintiffs have "made no effort to conduct 30(b)(6) depositions or to depose anyone in position of authority with any Defendant regarding the sponsor's practices, procedures, or knowledge of stipends paid…" (DE 476 at 12). But plaintiffs cannot conduct depositions while defendants' documents continue to rain down upon them. Put simply, defendants are the ones largely responsible for the pace of discovery in this case.

motion when the defendants failed to provide basic discovery that plaintiffs have been asking for literally for years, prior to January 6, 2017—the last date by which plaintiffs could make meaningful use of the information in their expert reports and the deadline plaintiffs specifically set in their conferrals with numerous defendants.  (*See*, *e.g.*, DE 455, Smalls Decl. Exs. P-R).  Further conversations with the defendants revealed that they could not, or would not, provide the type of comprehensive wage data plaintiffs can gather directly from host families and *au pairs*, so plaintiffs filed a motion to compel the production of that information. While both motions deal with similar deficiencies in defendants' productions, they seek separate relief, and are therefore properly pursued separately and contemporaneously.  Indeed, the original motion for a protective order put the defendants on notice that a motion to compel was forthcoming.  (*See* DE 454 at 15).

Lastly, defendants' "premature" argument makes little sense because the Court will have the opportunity to consider both the motion to compel and the motion for a protective order at the same time.  Briefing for the motion to compel will be completed on February 16, 2017, two days after briefing on this motion will be finished.  The Court will therefore have the opportunity to consider the disposition of both motions at the same time and do what defendants suggest: determine whether "one or more Defendants failed to supplement or correct discovery responses when obligated to do so." (DE 476 at 13-14).  Defendants' purported concern with the order of operations in this motion practice is therefore entirely misplaced.

### B.  A Separate Resolution of a Rule 26(e) Motion Is Not A Prerequisite

Defendants next argue that the motion is "premature and has no merit whatsoever" because it was brought prior to a judicial determination of a violation of Rule 26(e).  Defendants would thus precede every motion for a protective order or other Rule 37 sanction with a separate motion to compel or judicial determination of a discovery violation. That is not the law.

Courts routinely determine that a party has failed adequately to supplement its discovery and, in the same motion, fashion a sanction for that failure. *See*, *e.g. Harvey v. United States*, No. CIVA 04-CV188-WYDCBS, 2005 WL 3164236, at *14 (D. Colo. Nov. 28, 2005), *report and recommendation adopted sub nom. Estate of Harvey, ex rel. Grace v. United States*, No. CIVA 04-CV188-WYDCBS, 2006 WL 2505850 (D. Colo. Aug. 28, 2006) (finding a violation of Rule 26 and granting sanctions under Rule 37 in the same motion); *Orbit Irrigation Prod. v. Sunhills Int'l,* No. 1:10-CV-113-TS-EJF, 2014 WL 12586387, at *1 (D. Utah Feb. 11, 2014) (finding a Rule 26 violation and proceeding to describe appropriate sanction under Rule 37); *AVX Corp. v. Cabot Corp.,* 251 F.R.D. 70, 78 (D. Mass. 2008) ("having found a violation of Rule 26(a)(1)(A) and Rule 26(e)…the court turns to the issue of what sanctions to impose.")  Far from filing a "premature" motion, the relief plaintiffs seek here is that provided in the ordinary course, and presented in the most efficient manner possible.[3]

---

[3]     Defendants' suggestion to the contrary notwithstanding (DE 476 at 12), the sanction Plaintiffs seek—that the Court should preclude defendants from relying upon undisclosed evidence in opposing class certification or challenging class certification—is well within the powers of the Court.  *See generally Carroll v. Allstate Fire & Cas. Ins. Co.*, No. 12-CV-00007-WJM-KLM, 2014 WL 859238, at *4 (D. Colo. Mar. 4, 2014) ("although Rule 37(c) refers to Rule 37(b)(2)(A)(I)-(v), which provides a list of potential options for a court's consideration in fashioning an appropriate sanction, the

7

### C. Plaintiffs Have Engaged in Good Faith Conferral For Months

Lastly, in an apparent attempt to avoid consideration of the merits of their position, defendants criticize plaintiffs for a perceived failure to meet and confer before filing this motion. (DE 476 at 10-11). Defendants' claim that no "conferral" has taken place (*id.*) is both mistaken and revelatory, in that it demonstrates why this motion was necessary in the first place.

As described in detail in plaintiffs' opening brief (DE 454 at 7-10) and the accompanying Smalls Declaration (DE 455), plaintiffs have been discussing the issues raised in this motion with the defendants for months, if not years.[4] As also detailed in the Smalls Declaration, plaintiffs engaged in some form of conferral with each of the Defendants about wage and stipend data, and received very few documents in response.

Further, plaintiffs specifically complied with their conferral obligations for the motion for a protective order. Expert disclosure took place on January 13, 2017. Plaintiffs had notified numerous defendants that they would need the comprehensive wage information by January 6, 2017. (*See*, *e.g.*, DE 455, Smalls Decl., Exs. P-R).

---

determination of an appropriate sanction is left to the sound discretion of the court, limited only by the requirements that the sanction be "just," and "related to the particular claim" at issue."). Indeed, plaintiffs need not wait for defendants to improperly rely to their advantage upon their failure to produce relevant discovery for the Court to bar the defendants from doing so. *Cf. Harrison v. Principi, C.A.* 3:03-1398-MBS, 2006 WL 1581807, at *3 (D.S.C. June 6, 2006) ("…if Defendant failed to turn over discoverable documentation requested by Plaintiff, Defendant cannot use the absence of such documentation from the record to support its position.").

[4]   For example, in September 2016, Plaintiffs explained to AIFS that, if it persisted in its refusal to amend its productions and include documents "pertaining to the class," Plaintiffs would move for sanctions under Rule 37. (DE 454, Smalls Decl. Ex. F).

Upon defendants' failure to produce that information, plaintiffs, on January 7, 2017, notified defendants of their intent to file this motion, and invited a response.

On January 8, 2017, defendant Interexchange responded that it objected to the relief requested.  On January 9, Cultural Care, Go Au Pair, Au Pair International, Agent Au Pair, Apex 20/20, Cultural Homestay International, and Expert Au Pair all stated that they did not have enough time to respond and that they would require several additional days (*see* DE 454 at 1).  No further response was forthcoming.

Plaintiffs, however, could not wait several more days to confer, as their expert disclosures were due on January 13, 2017, and the relief they sought was relevant to that deadline.  Nor was there any requirement in the local rules or the individual practices of this Court that plaintiffs continue to confer or seek a conference with the Court prior to moving for a protective order.  As of the evening of January 9, Plaintiffs had conferred, they had a response from defendants, and to the extent that some defendants asked for more time, plaintiffs had given them an additional day to formulate a further response.  Hearing nothing, and with time an important factor, plaintiffs filed their motion.  This was perfectly appropriate, particularly because—as defendants' response illustrates—waiting further would have been pointless.

Indeed, the conferral requirement is meant to promote judicial economy, as the hope is "to have the parties exchange ideas regarding the requested relief and, hopefully, eliminate through discussion or compromise any issues they can before filing a motion so as to limit the issues brought before the Court." *Sparks v. Duncan Race Cars, Inc.*, No. 14-CV-00447-PAB-KLM, 2014 WL 7403382, at *3 (D. Colo. Dec. 29, 2014).  But Defendants never allege that further conferral would have been productive

or have otherwise led to a more efficient disposition of the case.  As explained above and in plaintiffs' subsequent motion practice, defendants have timed their productions in such a manner that all of the relief plaintiffs seek—a protective order, an order compelling the production of contact information, and an order amending the discovery schedule—is warranted.  Where there is no reason to believe further conferral would have been fruitful, courts may turn to the substance of a motion even if the conferral requirement has not been completely exhausted.  *See Dempsey v. Jason's Premier Pumping Servs., LLC*, No. 15-CV-00703-CMA-NYW, 2015 WL 4761191, at *1 (D. Colo. Aug. 13, 2015) ("In the interest of judicial economy, and finding from the emails that Defendants generally opposed the motion regardless, the Court will address the substance of Plaintiff's motion.") (Arguello, J.); *JAH IP Holdings, LLC v. Mascio*, No. 13-CV-02195-MSK-KLM, 2014 WL 2462545, at *2 (D. Colo. June 2, 2014) ("Plaintiffs do not argue, and there is no evidence to suggest, that further conferral would have resulted in resolution of the issues raised in the Motion, the Response, or the Reply. Further, striking the Motion or denying it without prejudice will simply result in it being re-filed after counsel engages in further conferral, which would waste the Court's and the parties' resources. Accordingly, in the interest of expedience and judicial efficiency, the Court will consider the merits of the Motion.*");  Gunn v. Carter*, No. 13-CV-02197-WJM-MEH, 2014 WL 7050471, at *3 (D. Colo. Dec. 12, 2014) (finding no failure of conferral where a party had "every reason to believe that the dispute could not be resolved without the Court's assistance.").[5]

---

5   For the same reason, InterExchange's request for costs and fees incurred in responding to this motion should be denied.

## CONCLUSION

The Court should issue the requested protective order.[6]

Dated: New York, New York
February 14, 2017

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

/s/ Peter M. Skinner
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
575 Lexington Avenue
New York, New York  10022
Tel:  (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
Sabria McElroy
401 East Las Olas Blvd., Suite 1200 Fort Lauderdale, Florida 33301 Tel.: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com
smcelroy@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300

---

[6] Plaintiffs are withdrawing their request for alternative relief in the form of an adjourned schedule as the request became moot when the parties exchanged expert reports on January 13, 2017.  Moreover, the request in the alternative has been subsumed by plaintiffs' subsequent motion to adjourn the discovery schedule (DE 482), which is based on facts that did not exist at the time this motion was filed—namely, the need to review the tens of thousands of pages of records that defendants produced *after* January 9, 2017.

11

Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 14, 2017, I electronically served the foregoing Reply in Further Support of Plaintiffs' Motion for a Protective Order on all counsel of record.

/s/ Peter M. Skinner
Peter M. Skinner
