**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,
v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
MOTION TO COMPEL ANSWERS TO PLAINTIFFS' INTERROGATORY No. 1 AND
REQUEST FOR PRODUCTION NO. 1 PURSUANT TO RULE 37(a)**

---

**PRELIMINARY STATEMENT**

Plaintiffs seek contact information for host families and *au pairs*. It is undisputed that both groups have relevant information about the working conditions and compensation of *au pairs*. It is undisputed that Defendants[1] claim not to have the employment information that Plaintiffs seek, and that *au pairs* and host families are the best—or in some cases only—sources of that information. It is undisputed that Defendants intend to argue that there is significant variation in the payment of *au pairs*, contrary to the content of Defendants' own form contracts, a position which makes the information possessed by *au pairs* and host families necessary. And it is undisputed that the burden of producing the requested information is low because Defendants are required to keep such records by statute and, hence, can easily collect and produce the information.

---

[1] References to "Defendants" do not include Apex and 20/20, as to whom the Motion was not directed.

Indeed, the only thing that is disputed in this motion is whether the law's requirement of broad discovery of relevant information, when applied to these facts, requires that Defendants make the production sought. It does.

## ARGUMENT

### A. Defendants Concede That Plaintiffs Met Their Burden to Compel Production

As Plaintiffs explained in the Motion, and as Defendants do not contest, "[o]nce the low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request." *Fox v. Morreale Hotels, LLC*, No. 10-CV-03135-RPM-MJW, 2011 WL 2894066, at *2 (D. Colo. July 20, 2011). Relevance of the contact information is not contested. Indeed, Defendants' preliminary statement begins by identifying some of the passages in the Second Amended Complaint that demonstrate relevance, and Defendants later suggest that Plaintiffs need the information that is the subject of the motion to compel to "fill [an] evidentiary gap." (D.E. 489 at 1, 5).[2] The burden, therefore, lies with Defendants to

---

[2] While acknowledging the relevance of the contact information, Defendants suggest, incorrectly, that the information sought is not relevant to class certification. (*See* D.E. 489 at 15 n.9). Defendants, however, are ignoring the consequences of their own positions. As they admitted in briefing on other issues, Defendants possess "Compensation information" in the form of, *inter alia*, "standard form contracts." (D.E. 476 at 3); *see also* Smalls Decl. Ex. SS. Plaintiffs offered to forgo the subject discovery if Defendants would stipulate that *au pairs* were paid consistently with these standard form agreements. *See* Smalls Decl. Exs. L, QQ. Defendants refused while maintaining the position that the form contracts do not show what *au pairs* were "actually paid." *Id.* Ex. VV. While Plaintiffs would be satisfied taking the position that the standard form contracts demonstrate commonality at class certification (and expressly reserve the right to do so), neither Plaintiffs nor Defendants can ignore the fact that Defendants have stated they will oppose that position and argue that the standard form contracts Defendants promulgate somehow do not reflect actual *au pair* compensation. The survey proposed by Plaintiffs is relevant to this issue because it seeks to determine what *au pairs* were actually paid.

explain an acceptable reason for failure to produce. For the reasons explained below, Defendants have not met this burden with respect to either *au pair* contact information or host family contact information.

### B. Defendants' Objections to Discovery of *Au Pair* Information Are Meritless

As to *au pair* contact information, Defendants have essentially conceded that they cannot meet their burden of demonstrating that the subject discovery should not be produced. Defendants argue instead that the dispute regarding "production of au pair contact information is largely one of timing" and that Defendants will produce after certification. (D.E. 489 at 5). But the Court has already expressly declined to bifurcate discovery into pre- and post- certification phases. (D.E. 295). This argument, therefore, is unavailable to Defendants (and also ignores the relevance of the information to class certification). *See Montano v. Chao*, No. CIVA07CV-00735CMAKMT, 208 WL 5377745, at *4 (D. Colo. Dec. 19, 2008) (Tafoya, J.) (requiring pre-certification discovery of issues not relevant to certification where discovery was not bifurcated). In any event, Defendants' three arguments to delay producing *au pair* information—information that they concede they must ultimately produce—may be easily rejected.

*First*, Defendants' argument concerning notice to the class ignores the purpose of the requested discovery. Plaintiffs seek the discovery in order to conduct a representative survey of issues relevant to this case. The purpose, in other words, is factual investigation. Plaintiffs do not seek to "disseminate blast emails of their choosing" in some undisciplined and ad hoc manner. (*See* D.E. 489 at 6). Nor do Plaintiffs seek to usurp the Court's role in approving opt-in or opt-out notice of a certified class. Defendants are spinning scenarios premised on the unjustified notion that

3

Plaintiffs' counsel will somehow act unprofessionally rather than simply pursuing legitimate avenues of discovery. This unfounded argument should be rejected out of hand.[3]

*Second*, Defendants' argument concerning *au pair* privacy simply makes no sense. Whatever privacy concerns *au pairs* have are the same pre- or post- class certification. Because Defendants concede that this information will ultimately need to be produced, it makes no difference when that production occurs. Regardless, Defendants' authority is simply not on-point. Defendants rely primarily on an out-of-circuit district court case that acknowledged that the rule in some other districts was to allow disclosure of contact information pre-certification, and which ultimately relied on the fact that the plaintiff made "no showing of need particularized to th[at] case." *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2015 WL 1964400, at *6, 8 (E.D.N.C. May 1, 2015). Here, in contrast, there is virtually no dispute that Plaintiffs have demonstrated a particularized need for the contact information to demonstrate definitively how much *au pairs* were paid.[4]

---

[3] The cases cited by Defendants (D.E. 489 at 6) are entirely inapposite, having nothing whatsoever to do with discovery. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("As it comes before us, this case presents the narrow question whether, in an ADEA action, district courts may play any role in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought."); *Smith v. Keypoint Gov't Solutions, Inc.*, No. 15-cv-00865-REB-KLM, 2016 WL 7324606 (D. Colo. Dec. 16, 2016).

[4] Defendants suggest that Plaintiffs' need for the information somehow undermines their ability to certify a class. (See D.E. 489 at 1-2). However, the discovery obtained thus far in this case—testimony, contracts, advertisements, admissions, correspondence, surveys and other documents, as well as the expert reports Plaintiffs have disclosed to opposing counsel—all supports Plaintiffs' contention that standard *au pair* wages are set at $195.75 across the industry and that there are issues common to

Defendants misleadingly claim that their other case, *Strauch v. Computer Scis. Corp.*, No. 3:14 CV 956 (JBA), 2015 WL 75884 (D. Conn. Jan. 6, 2015), found a request for identifying information to be "excessive and intrusive." (D.E. 489). To the contrary, the *Strauch* court found a request for social security numbers to be excessive, but otherwise ordered a procedure by which the relevant "individual identifying information" could be determined and disclosed pre-certification. *Strauch*, 2015 WL 75884 at *4 ("pre-certification discovery of some identifying information regarding putative class members is appropriate").

Moreover, courts in this circuit have permitted discovery of personally identifying information over privacy objections. In a putative FLSA wage-and-hour class action, one court summarized its holding as follows: "Although the Bank's former employees may have a privacy interest in disclosure of their identities and contact information, such disclosure does not pose a serious invasion of privacy in routine civil cases, such as this wage-and-hour MDL proceeding. Moreover, these former employees likely have information about the Bank's overtime policies, which as previously explained, appears relevant. In short, Plaintiffs' need for discovery outweighs any minimal invasion of former employees' privacy." *In re Bank of Am. Wage & Hour Employment Practices Litig.*, 275 F.R.D. 534, 543 (D. Kan. 2011). As the court noted, "witnesses may not opt out of discovery," and whatever other role *au pairs* may have in this litigation, they are certainly witnesses and that is the role that triggers the instant discovery demand. *Id.* at

---

the proposed classes. A comprehensive survey will *further* aid Plaintiffs in proving the merits of their claims, including verifying the actual wages paid in this wage-fixing case, as well as calculating class-wide damages wrought by defendants' illegal wage-fixing scheme. It will also further cement Plaintiffs' arguments in favor of class certification. But it is not necessary for class certification.

5

543. That case was considered dispositive by Magistrate Judge Watanabe, who similarly ordered pre-certification discovery over a privacy objection. *Young v. Dollar Tree Stores, Inc.*, No. 11-cv-01840-REB-MJW, 2012 WL 1719792 (D. Colo. May 11, 2012). (*See also* D.E. 465 at 10 (collecting cases)).

*Third*, Defendants advance the irrelevant proposition that the "desire to find clients is not a reason to demand production of putative class contact information prematurely." (D.E. 489 at 7). But a desire to find clients is not the reason for the discovery demand. The reason for the discovery demand is to gather evidence relevant to the merits of the case and also relevant to certification due to a position taken by Defendants in repudiating their own form contracts.[5]

*Finally*, Defendants collect cases that denied discovery for a variety of reasons without identifying the legal principle they wish the Court to draw from those cases. (*See* D.E. 489 at 8-9). For the reasons described in the footnote, none of these cases are on point and most stand for the uncontroversial and irrelevant proposition that when discovery is not needed, it will not be compelled.[6] What Defendants fail to acknowledge

---

[5] At the risk of being repetitive, it is Plaintiffs' position that the form contracts will be sufficient to justify certification, but Plaintiffs are nonetheless entitled to explore in discovery the response that Defendants have indicated they will make to Plaintiffs' argument.

[6] *See Saenz v. Erick Flowback Servs, LLC*, No. CIV-14-593-D, 2014 WL 7005358, at *2 (W.D. Okla. Oct. 23, 2014) (denying discovery where it was "unclear . . . what Plaintiff wishes to receive" and where the only purpose for such discovery was notice to the class); *Palmer v. Priority Healthcare, Inc.*, No. 3:13-CV-480-TSL-JMR, 2013 WL 5771662, at *4-5 (S.D. Miss. Oct. 24, 2013) (only purpose was notice to the class); *Ketch, Inc. v. Heubel Material Handling, Inc.*, No. Civ.-11-12-M, 2011 WL 4527881, at *2 (W.D. Okla. Sept. 28, 2011) (defendant committed not to challenge the issues as to which the motion to compel argued that the information was relevant); *Levine v. Gunther Motor Co. of Plantation, Inc*, No. 10-61812-CIV, 2010 WL 5140590, at *2-3 (S.D. Fla. Dec. 9, 2010) (discovery was "requested for the sole purpose of contacting

is that in this case the discovery is needed for the reasons given in the Motion and not challenged in the Opposition—indeed, Defendants concede its relevance—and is sought for the purposes of ordinary factual investigation. Further, Defendants implicitly acknowledge the weakness of the authority supporting their position when they attempt to distinguish Plaintiffs' authority on the grounds that in those cases "identifying information was relevant to certification." (D.E. 489 at 8 n.7). The same is true here.

### C. Defendants' Objections to the Discovery of Host Family Information Are Likewise Meritless

Defendants' first objection to producing host family information is apparently motivated by a concern that the suggested survey will not work. This argument is entirely irrelevant—the host families possess relevant information to this suit and Plaintiffs are permitted to pursue that information in discovery, for which purpose they need contact information. If Plaintiffs' first approach to investigating its case does not succeed, Plaintiffs can adopt a different approach. For example, Plaintiffs could choose to subpoena host families for information in lieu of a more informal survey.

In addition, Defendants appear to be under the misapprehension that host families' roles in the challenged conduct decrease the appropriateness of discovery. The precise opposite is true. Defendants' theory of the case is that the host families are the sole employers of *au pairs*. If Defendants are correct, then the proper defendants of the wage-and-hour claims are the host families. Plaintiffs, of course, disagree and assert that the host families are joint employers with the Defendants. Either way, even

---

putative class members, to ascertain whether they wish to opt-in to this action"); *Charles v. Nationwide Mut. Ins. Co.*, No. 09 CV 94 (ARR), 2010 WL 7132173, at *6-8 (E.D.N.Y. May 27, 2010) (plaintiff failed to show a need for the discovery); *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 681-82 (D. Colo 1997) (considering a motion for class certification, not a motion to compel, and noting that "plaintiffs are entitled to specific discovery to determine the names and addresses of the putative class members").

pre-suit discovery of Defendants would be permissible to determine the contact details for host families in order to permit the host families to be named as defendants. *Cf.* Fed. R. Civ. P. 27(a) (where perpetuation of testimony otherwise warranted, permitting pre-litigation depositions "about any matter cognizable in a United States court"). Although that is not Plaintiffs' purpose at this time, the Defendants' positions that (1) host families are the proper defendants for the purpose of labor violation claims, and (2) host families' identities should be protected from disclosure, are untenable.

Defendants' reliance on the rules of ethics is also misplaced. Rule 4.3 of the Colorado Rules of Professional Conduct states as follows:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

Plaintiffs' counsel's obligations, therefore, are to (1) not state or imply that they are disinterested; (2) correct a known misunderstanding as to counsel's role; and (3) not offer legal advice. Those obligations are not inconsistent with a survey designed to elicit factual information about the employment conditions of *au pairs*.

Defendants highlight *In re Air Crash Disaster*, because it also concerned a survey. (D.E. 489 at 11). The cover letter in that case, however, not only failed to disclose counsel's role in preparing the survey but also went "to great lengths to persuade the recipient of its neutral and unbiased character. For example, the letter describes the questionnaire as an 'independent survey' . . . ." *In re Air Crash Disaster Near Roselawn, Indiana on Oct. 31, 1994*, 909 F. Supp. 1116, 1123 (N.D. Ill. 1995).

8

Plaintiffs' counsel would obviously not draft such a cover letter. And even were the Rules of Professional Conduct an insurmountable hurdle, Plaintiffs could utilize formal discovery mechanism authorized under the applicable rules.

In sum, Defendants' concerns are misplaced. Plaintiffs' counsel have given neither Defendants nor the Court any reason to question their fidelity to the applicable ethical rules, and Defendants' concern that the survey will not be successful at eliciting responses is beside the point and readily curable by adopting a different approach to discovery.

Defendants' next argument is to, again, raise privacy concerns. (D.E. 489 at 12). But, again, the default rule is that "witnesses may not opt out of discovery." *In re Bank of Am. Wage & Hour Employment Practices Litig.*, 275 F.R.D. at 543. Defendants' lead case illustrates the unusual circumstances required to avoid that default rule. There, the court considered the privacy interests of parents who had to make a "decision whether to administer heroic life-sustaining treatment to a severely handicapped newborn" and who were not implicated in any wrongdoing under circumstances where discovery had already been provided "about the care rendered to each participant in the study." *Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 2002). Here, of course, the privacy interests are less, the involvement of the witnesses in the challenged conduct is greater, and Defendants have not provided comparable discovery. *Johnson* simply bears no comparison to this case. *See also Georgacarakos v. Wiley*, NO. 07-cv-01712-SK-MEH, 2009 WL 1194155, at *7 (D. Colo. Apr. 30, 2009) (plaintiff had not tailored his discovery request to his relevant claim); *JB v. Asarco, Inc.*, 225 F.R.D. 258,

9

262 (N.D. Okla. Dec. 2, 2004) (permitting discovery of the relevant information regarding nonparties over privacy concerns).

Defendants then argue that disclosure of host families will harm them because being contacted by "class action lawyers" will harm their relationships with host families. (D.E. 489 at13). To a certain extent, that is a risk borne by every litigant. Third parties with relevant information rarely appreciate receiving discovery requests, but they nonetheless must contribute their relevant information to civil litigation.

The remainder of Defendants' argument relies on denying both the substance of the Court's prior rulings and the Defendants' own responsibility for their behavior. Defendants persist in arguing that "the DOS set a stipend that is lower than the cost of many childcare options" (D.E. 489 at 13), but this Court has already held that "the FLSA applies to Plaintiffs' claims" (D.E. 258 at 24) and that Plaintiffs have stated a viable claim that deduction from the minimum wage for room and board would be unlawful (*Id.*). If dissemination of the fact that *au pairs* must be paid minimum wage would hurt Defendants' business, then it is not Plaintiffs who are to blame, but Defendants themselves for unlawfully underpaying *au pairs* and advising host families to do the same. Regardless, if the formula for Coca-Cola is not so secret that it can be protected from disclosure in civil litigation, then neither are the names of host families. *See Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 290 (D. Del. 1985) ("Except for a few privileged matters, nothing is sacred in civil litigation; even the legendary barriers erected by The Coca-Cola Company to keep its formulae from the world must fall if the formulae are needed to allow plaintiffs and the Court to determine the truth in these disputes.").

Nor have Defendants offered any authority for the proposition that they may avoid otherwise proper discovery requests by claiming that third-parties would react poorly to having had their contact details produced. Defendants' citation to *Bennett v. Fieser*, 152 F.R.D. 641 (D. Kans. 1994) (*see* D.E. 489 at 14), is inapposite because in that case the court permitted discovery of the non-party medical records with the name of the non-party redacted, a condition to which the plaintiff agreed (the issue was whether the plaintiff should be permitted to make any efforts to identify the non-party patient outside of the medical records). As has been a common thread through the cases discussed above, the information that was relevant was disclosed.

Finally, Defendants argue that host family information should be disclosed only after *au pair* contact information is disclosed. Of course, Defendants also resist disclosure of *au pair* contact information. Regardless, Plaintiffs are entitled to the best evidence to prove their case and for the reasons given in the Motion—primarily the relative ease of contacting host families compared to *au pairs*, the likely higher rate of success in contacting host families as compared to au pairs, and the increased likelihood that they would have records—that best evidence can be found with the host families.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to compel answers to Plaintiffs' Interrogatory No. 1 and Plaintiffs' Request for Production of Documents No. 1 should be granted, and Plaintiffs awarded their reasonable attorneys' fees, pursuant to Fed. R. Civ. P. 37(a)(5)(A).

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

/s/ Peter M. Skinner
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
Sabria McElroy
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Tel.: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com
smcelroy@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado 80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2017, I electronically served the foregoing Plaintiffs' Reply Memorandum in Further Support of Their Motion to Compel Answers to Plaintiffs' Interrogatory No. 1 and Request for Production No. 1 Pursuant to Rule 37(a) on all counsel of record.

/s/ Peter M. Skinner
Peter M. Skinner