IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

        Defendants.

---

**DEFENDANT CULTURAL CARE, INC.'S RULE 72(a) OBJECTIONS TO ORDER ON DEFENDANTS' MOTION TO STRIKE**

---

    Defendant Cultural Care, Inc. ("Cultural Care" or "Defendant"), through its undersigned counsel and pursuant to Fed. R. Civ. P. 72(a), hereby respectfully submits its Objections to the Order entered by Magistrate Judge Tafoya on February 13, 2017 (ECF No. 490) and, in support thereof, states as follows:

### INTRODUCTION

    When this Court analyzed Defendants' motion to dismiss Plaintiffs' antitrust claim, it focused heavily on five key paragraphs of the First Amended Complaint, ECF No. 101 (Mar. 13, 2015) ("FAC").  Those paragraphs, in the view expressed by the Court in the early context of a motion to dismiss, contained "smoking gun" allegations of price fixing sufficient to save the antitrust claim in the FAC.  In the paragraphs, Plaintiffs alleged that "directors" working for three au pair sponsors "admitted" in telephone conversations that the sponsors had engaged in a price fixing conspiracy.  The Court highlighted these paragraphs as the only "direct" allegations (albeit "weak" direct

allegations, according to the Court) proffered by Plaintiffs to support their antitrust conspiracy claim.

Since the denial of their motion to dismiss, Defendants have deposed the private investigator who placed the calls described in the allegations and uncovered a situation that differs markedly from that represented in the FAC. Through the investigator's testimony and the production of his contemporaneous file memorandum, Defendants confirmed several points. First, the investigator intentionally directed his questions only to unsuspecting field operations employees who were not in any way "directors" who could bind their employers. Second, the responses of those three individuals (none of whom is affiliated with Cultural Care) did not approach the level of "smoking gun" admissions because the allegations cherry-picked only favorable portions of ambiguous responses to leading questions without the clarifying context. Third, the responses relied upon regarding the supposed "agreement," when read in full, merely communicate the employees' understanding that all sponsors must follow the governing Department of State regulations and guidance, including what the State Department calculated as the minimum permissible stipend amount. Most compellingly, the investigator acknowledged under oath that he had *no evidence* of any communications occurring between two or more sponsors in which they agreed to set the amount of the stipends. *Compare* Order, ECF No. 490 at 8 (Feb. 13, 2017). In short, Plaintiffs' investigator – the lone source behind these paragraphs – did not provide any direct evidence of an antitrust conspiracy.

2

Given that the crucial allegations that this Court deemed to be the only "direct evidence" have now been undermined, Defendants moved to strike and for leave to renew their motion to dismiss.  ECF No. 327 (Aug. 11, 2016) ("Mot. to Strike").  On February 13, 2017, Magistrate Judge Tafoya denied the motion.  ECF No. 490.  Cultural Care respectfully objects to that Order pursuant to Fed. R. Civ. P. 72(a).  Given the substantial burden and cost that the antitrust claim has visited upon Cultural Care, the largest of the sponsors (Oct. 25, 2016 Am. Mot. Hr'g Tr., ECF No. 428 at 31), Cultural Care respectfully requests that the Court review this matter and overrule the Magistrate Judge's Order as clearly erroneous and contrary to law.  More specifically, Cultural Care requests that the Court (1) strike paragraphs 90-94 of the FAC,[1] as well as the corresponding portions of the Declaration of Alexander Hood and Plaintiffs' Motion for Conditional Collective Action Certification; and (2) permit Cultural Care to renew its motion to dismiss and to submit a revised memorandum in support.

## BACKGROUND AND PROCEDURAL HISTORY

In their initial Complaint, Plaintiffs alleged that Defendants engaged in "collusive activity" by conspiring to set the weekly stipend paid by Host Families to *au pairs* at the minimum amount allowed under the Fair Labor Standards Act.  ECF No. 1 at ¶¶ 82-92 (Nov. 13, 2014).  Because Plaintiffs alleged no evidence of collusive activity to support their Sherman Act allegations, Cultural Care (like other defendants) moved to dismiss the claim.  ECF No. 74 at 13-15 (Feb. 20, 2015).

---

[1] Plaintiffs' Second Amended Complaint repeats the allegations at paragraphs 93-97. ECF No. 395 (Oct. 17, 2016) ("SAC").  For convenience, this Objection refers to the FAC paragraphs; Cultural Care requests that the Court also strike corresponding paragraphs in the SAC.

8000283v3

Before that motion was decided, Plaintiffs filed the FAC.  The FAC added five striking, new paragraphs alleging that in three separate conversations in November 2014, representatives of three sponsors *admitted* that all sponsors "collectively colluded to set standard *au pair* wages" at exactly $195.75 per week.  FAC ¶¶ 90-94.  Although Plaintiffs declined to provide details, Defendants eventually determined that David Keil ("Keil"), a private investigator based in Denver, had called several Defendants on behalf of Plaintiffs while the lawsuit was pending and asked the questions alluded to in the FAC.  *See* Mot. to Strike at 5.

On April 20, 2015, several Defendants moved to dismiss the FAC, including Plaintiffs' antitrust claim.  ECF No. 135 (Apr. 20, 2015).  Defendants also moved to strike paragraphs 90-94 (the "challenged allegations") of the FAC on the grounds that Plaintiffs' counsel had inappropriately used an agent to contact certain of Defendants' employees after the suit was filed.  ECF No. 134 (Apr. 20, 2015).  Magistrate Judge Tafoya denied the latter motion on November 16, 2015 (ECF No. 235), and on February 22, 2016, recommended that Defendants' motion to dismiss be denied as well (ECF No. 240).

Defendants objected to the Magistrate Judge's recommendation with respect to the motion to dismiss, and on March 31, 2016, this Court entered an order adopting and affirming the recommendation in part.  ECF No. 258 (the "MTD Order").  Of particular import to this objection, the Court's analysis of Plaintiffs' antitrust claim focused heavily on FAC paragraphs 90-94.  *Id.* at 8-15.  The Court described these allegations as "what Judge Richard Posner has termed 'the smoking gun in a price-fixing case' – namely,

'direct evidence, . . . [in] the form of an admission by an employee of one of the conspirators, that officials of the defendants had met and agreed explicitly on the terms of a conspiracy to raise prices.'" *Id.* at 9 (quoting *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010) (Posner, J.)).  The Court found the allegations were "'weak' direct evidence" because they lacked "critical details."  *Id.* at 14.  Nevertheless, the Court concluded that the antitrust claim survived, "particularly in light of Plaintiffs' well-plead allegations of direct agreement."  *Id.* at 18.

Given the strong reliance by the Court on the challenged allegations in declining to dismiss Plaintiffs' antitrust claim, Defendants promptly noticed Keil's deposition and requested that he produce documents related to these allegations.  Mot. to Strike at 7.  Plaintiffs' counsel initially advised that Keil had no non-privileged, responsive documents in his possession.  Eventually, Plaintiffs provided a privilege log with one entry dated December 2, 2014: "Memorandum to counsel summarizing telephonic discussions with employees of defendants APF Global Exchange NFP, Au Pair International, and EurAuPair Intercultural" (attached as Exhibit A).  At his deposition, Keil testified that the memorandum was prepared in real time as he conducted the telephonic interviews, that the memorandum contained factual recitations rather than mental impressions, and that his questions were neither based off of nor provided by Plaintiffs' counsel.  Keil July 21, 2016 Deposition Tr. Excerpts, attached as Exhibit B ("Keil Dep."),[2] at 17, 32-33.

---

[2] The complete deposition transcript for Keil was previously filed with Defendants' August 11, 2016 Motion to Strike, at ECF No. 327-1.

After repeated requests from defense counsel, Plaintiffs eventually provided the memorandum ("Keil Memo." attached as Exhibit C) mid-deposition, subject to a continuing claim of work-product protection.  Keil Dep. at 144.  Upon receipt of the memorandum, it was apparent that paragraphs 90-94 of the FAC were misleading, if not simply false.  In addition, at his deposition, Keil confirmed that he had no evidence of any communications occurring between sponsors in which they agreed to fix the amount of *au pair* stipends.  Keil Dep. at 205.

Cultural Care respectfully objects to the Magistrate Judge's legal and factual analysis in her Order denying the motion to strike, not only because it disagrees with that analysis, but also because the Tenth Circuit requires such action to preserve those issues for appeal.  *See, e.g., Jones v. Norton*, 809 F.3d 564, 582 (10th Cir. 2015).  Because the antitrust claim based on the challenged and discredited allegations significantly expands the scope of this litigation, and the cost and burden of defending it, Cultural Care respectfully requests review by this Court.

## LEGAL STANDARDS

An objection to a magistrate judge's order on a nondispositive matter is governed by Fed. R. Civ. P. 72(a).  The district court judge "must consider timely objections" to a magistrate judge's order on a nondispositive motion "and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).

"The clearly erroneous standard applies to factual findings."  *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 637 (D. Kan. 2006) (citing 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069, at

355 (2d ed.1997)); *see also Lester v. City of Lafayette*, 639 F. App'x 538, 543 (10th Cir. 2016) (unpublished) (holding that attorney-fee award was premised upon clearly erroneous assessment of the evidence); *Lykins v. CertainTeed Corp.*, 555 F. App'x 791, 797 (10th Cir. 2014) (unpublished) (requiring the factual predicate of the magistrate judge's order be clearly erroneous). A ruling is clearly erroneous if, based on the entirety of the record, the Court "is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

The "contrary to law" standard under Rule 72(a) permits "plenary review as to matters of law." *Williams*, 238 F.R.D. at 638 (citing Wright, Miller & Marcus, § 3069, at 355). This Court should set aside rulings under this standard where the magistrate judge's application of the law amounted to legal error. *Lykins*, 555 F. App'x at 797; *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) ("[U]nder the 'contrary to law' standard of review, a district court may reverse a finding only if it finds that the magistrate failed to apply or misapplied relevant statutes, case law or rules of procedure.") (citation, internal quotation, and alterations omitted).

## ARGUMENT

**I.** **The Magistrate Judge's Order Denying the Motion to Strike Is Clearly Erroneous and Contrary to the Law.**

A. Plaintiffs' Allegations Should Be Stricken Because They Constitute Misrepresentation by Omission Derived from Extra-Judicial Discovery.

Plaintiffs' allegations purporting to constitute direct evidence of a conspiracy among the Defendants are, viewed in the appropriate context of Keil's deposition and

7

real-time memorandum, nothing more than conclusory, self-serving assertions targeted at a glaring deficiency in Plaintiffs' antitrust claim.  A fair reading of these "few stray statements [that] speak directly of an agreement" is that they are "merely legal conclusions" surreptitiously elicited by a litigant, and therefore they have no legal relevance to the antitrust claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

Pleadings that are "conclusory and contain false, immaterial, impertinent and scandalous matter . . . should be stricken for this reason alone pursuant to Fed. R. Civ. P. 12(f)."  *Garrett v. Payne*, No. CIV-05-472-WH, 2006 U.S. Dist. LEXIS 96920, at *8 (E.D. Okla. Feb. 23, 2006), attached as Exhibit D.  The challenged allegations constitute conclusory pleading with the gloss of one-sided, targeted, and extra-judicial party discovery that fail to place the "admissions" in the accurate context.  False and sham allegations such as these that are crafted to remedy an obvious deficiency in a claim must be stricken.  *See Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324 (Fed. Cir. 1998).

1. Plaintiffs' Improperly Sourced "Admissions" Do Not
   Support the Allegations at Issue.

The Order is predicated upon a clearly erroneous assessment of selective quotes in response to leading questions[3] from "directors,"[4] none of whom is alleged to be a

---

[3]  The purported admissions were qualified affirmative responses to the following leading questions: "So, you're saying that . . . all the agencies agree to pay that exact same minimum amount?" Keil Memo. at 1; "[a]re you saying that each an [sic] every one of the fifteen companies have gotten together and they made an agreement to pay all au pairs a stipend that is no more than $195.75 per week?" *id.* at 3; "So all the companies agree to pay that exact same minimum rate?" *id.* at 2.

corporate director and all of whom were in field operation positions.[5]  Indeed, Keil was

intentionally *not* seeking to interview individuals who could make binding admissions

against Defendants.  Keil Dep. at 99.  Rather, he was looking for employees with  "a

*minimal* level of authority and knowledge" to permit him to rely upon their information.

*Id.* (emphasis added).  The responses of all others were omitted from the memorandum.

*Id.* at 100-101; Keil Memo. at 3.

　　　Based upon his real-time memorandum of the only three calls in which he felt the

interviewees "answered [his] questions thoroughly" (Keil Dep. at 100), Keil made no

inquiry as to whether the interviewees were even in a position to know if purported

collusion occurred among the sponsors, nor did he question the sources of their

purported beliefs.  Rather, he canvassed "virtually everyone on [his] list" (*id.* at 101),

and chose to memorialize only comments from the employees who were malleable

enough to agree with at least part of his leading and ambiguous questions.  *See* note 3,

*supra*; Keil Dep. at 188-89.  Indeed, affirmative responses by two of the three field

operators to questions quoted in footnote 3, *supra*, merely indicate that the two

interviewees agreed with the unremarkable premise that all sponsors recognized that

they were legally bound to use the same dollar amount as the *minimum* that could be

paid under the Department of State regulations.  Keil Dep. at 171-73.  An agreement

---

[4]  *Compare* FAC ¶ 94 ("a representative of yet another sponsor, again with a 'director' title"); *with* Gorry Decl., ECF No. 134-7 at ¶ 1 (identifying herself as a "part-time Placement Coordinator").

[5]  The three individuals were the Director of Field Operations for APF Global Exchange, the Regional Director for the East Coast Region for EurAuPair Intercultural Child Care Programs, and the Placement Coordinator/Area Director for Au Pair International.  ECF No. 490 at 4-6.

8000283v3

among sponsors on the *minimum* permissible payment is completely unremarkable because it is set by law.  Two of the three questions do not even suggest that the stipend was also the maximum that sponsors agreed to pay.  *Id.* at 172-74.  Further questions muddied the water, rather than clarifying the ambiguity.  *Id.* at 174-79.

Numerous courts have recognized the infirmity of relying upon lower-level employees' statements as direct evidence of an antitrust conspiracy.  *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125 (3d Cir. 1999) (granting summary judgment in antitrust price-fixing case where plaintiffs solely relied on "[e]vidence of sporadic exchanges of shop talk among field sales representatives who lack pricing authority"); *see also R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 701 (7th Cir. 2006) ("Some of the employees are bound to take almost any view about almost every subject[;] [y]et only the CEO and Board of Directors speak for [the party corporation] . . . .").

Keil's ambiguous leading questions and selective quotations from cherry-picked interviews with individuals with "a minimal level of authority and knowledge" do not constitute direct evidence of unlawful conspiracy, as this Court was previously led to believe.  *See* MTD Order at 12-13 (discussing *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1083 (10th Cir. 2006)).

      2.     The Purported "Direct Evidence" Should Also Be Stricken Because It Is the Result of Extra-Judicial Discovery That Is Both Improper and Unreliable.

Although Magistrate Judge Tafoya previously declined to strike the challenged allegations on the basis of improper extra-judicial conduct, Keil's deposition and

memorandum also militate in favor of striking on the basis of unreliability.  At the time of his interviews, Keil was acting as an undisclosed agent of Plaintiffs, seeking admissions from Defendants in furtherance of the Plaintiffs' active litigation, and intentionally attempting to fly under the radar by contacting only individuals with "a minimal level of authority and knowledge" sufficient to satisfy his standard of reliability.  *See* Keil Dep. at 79-80, 99-100.  Keil testified that he contacted "somewhere between 10 and 20" sponsors at least once, and in some instances several times each (*see* Keil Dep. at 87, 126-27), taking great pains not to identify himself or the purpose of his calls (*id.* at 71), and avoiding contact with parties known to be represented by counsel (*id.* at 87-88) and individuals of sufficient authority to bind their employers (*id.* at 99).  Further, the entirety of Keil's records of potentially dozens of calls are limited to three brief excerpts of conversations that coincidentally include the exact quotations of Keil's ambiguous leading questions and the responses that purport to remedy Plaintiffs' deficient allegations.  *See* Keil Memo.; Keil Dep. at 119 (stating that the reason for excerpting the three conversations was that they answered "all my questions in a manner that I felt confident I could report to [Plaintiffs' counsel] on").

Keil's clandestine inquiries are nothing more than extra-judicial party discovery conducted in a manner that yielded wholly unreliable results.  Allegations based upon evidence that is both improperly obtained and patently unreliable must be stricken as immaterial and impertinent.  *See Allen v. Figuera*, 416 F. App'x 771, 775 (10th Cir. 2011) (unpublished) (trial court "was more than justified in striking" pursuant to

Rule 12(f) plaintiff's factual submissions derived from procedurally flawed and improper "admissions" from defendants).

        3.      The Challenged Allegations Cannot Fairly Support an Antitrust Claim Against Cultural Care and Eleven Other Defendants.

During Keil's deposition, Defendants requested that he elaborate upon his findings of an explicit, industry-wide conspiracy.  They specifically asked whether he had knowledge or evidence of any communications—at all—between or among sponsors, information which logically would have prompted him to ask the leading questions and to seek the admissions from Defendants that he did.  Keil Dep. at 187, 205.  Keil stated that he did not.  *Id.*

In addition, when asked how he came to the conclusion that there was a price-fixing conspiracy among fifteen separate entities based on phone calls with only three employees of three sponsors, he testified that was *the most that he could assume or infer* based upon the employees' use of the words "we" and "everybody."  *See id.* at 183 ("They all used the word 'we.'  That's the maximum I can glean from that – those statements."); *id.* at 187 ("I assumed or believed that . . . they were talking about their organizations . . . and that's the sum total of what I have."); *see also id.* at 182.

None of the three interviewees worked for Cultural Care, or for eleven other named Defendants.  Nor did the interviewees reference Cultural Care by name, or even state the number of sponsors who supposedly agreed that all host families should pay the State Department-sanctioned stipend.  In short, as attenuated as Keil's evidence is with regard to all Defendants, *see* section A.1, *supra*, it is even more so with regard to Cultural Care.

B.     Plaintiffs' Assertion of False and Misleading Allegations of Conspiracy Are Causing Prejudice to Defendants.

In addressing the legal standard applicable to a motion to strike, Magistrate Judge Tafoya noted that, "[e]ven where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike."  Order, ECF No. 490, at 3 (quoting *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.,* 173 F.R.D. 275, 285 (D. Colo. 1997)). She did not thereafter address whether Defendants were prejudiced by the baseless allegations, which constitutes an erroneous omission or implicit conclusion that they were not.

Cultural Care respectfully disagrees:  When a defendant is compelled to defend a multi-year, nationwide antitrust class action involving thousands of prospective members of a putative class, the onerous cost of defense – to say nothing of the impact upon business reputation – constitutes clear prejudice.  When the Supreme Court established the plausibility standard for pleading violations of Section 1 of the Sherman Act, it also discussed at length the "potentially enormous expense of discovery" and the threat of *in terrorem* settlement leverage.  *See Twombly*, 550 U.S. at 557–60 & n.6.[6] Those principles apply here.

For these reasons, it was clearly erroneous and contrary to the law not to strike such allegations to avoid further prejudice.

_____

[6] The antitrust claim is the only claim alleged against ten of the fifteen Defendants.

8000283v3

II.     **To the Extent that Magistrate Judge Tafoya's Order Could Be Interpreted to Include Implied "Factual Findings," Such Findings Are Clearly Erroneous and Cannot Be Binding in this Litigation.**

Among the reasons that Cultural Care has proceeded with this objection is to ensure that any implied findings within Magistrate Judge Tafoya's Order – *e.g.*, her reference to the interviewees as "directors" – are not treated as final or binding in this litigation or on appeal.  *See, e.g., Poche v. Joubran*, 389 F. App'x 768, 774 (10th Cir. 2010) (unpublished) ("Only final judgments may qualify as law of the case, and district courts generally remain free to reconsider their earlier interlocutory orders.") (citations, internal quotations, and alterations omitted); *Flenker v. Willamette Indus.*, No. CIV.A. 95-2480-JWL, 1999 WL 459348, at *3 (D. Kan. June 14, 1999) (order on motion to strike did not create law of the case).  As explained above, Cultural Care objects to any such findings as clearly erroneous and unsupported by the record.

<u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Cultural Care respectfully objects to the Magistrate Judge's Order and requests that this Court (1) order that paragraphs 90-94 of the FAC, paragraphs 93-97 of the SAC, and the corresponding portions of the Declaration of Alexander Hood (ECF No. 449-3) (Dec. 5, 2016) and Plaintiffs' Motion for Conditional Collective Action Certification (ECF No. 325) (July 25, 2016) be stricken; (2) permit Cultural Care to renew its motion to dismiss and submit a revised memorandum in support thereof; and (3) grant Cultural Care such further relief as the Court deems just and proper.

8000283v3

Dated: February 27, 2017

*s/ Jessica L. Fuller*
Joan A. Lukey
(joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com)
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

*Attorneys for Defendant Cultural Care, Inc.*
*d/b/a Cultural Care Au Pair*

8000283v3

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2017, I caused to be electronically filed the foregoing DEFENDANT CULTURAL CARE, INC.'S RULE 72(a) OBJECTIONS TO ORDER ON DEFENDANTS' MOTION TO STRIKE with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Randall W. Jackson (rjackson@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Boies Schiller & Flexner, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, FL 33301

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218

*Counsel for Plaintiffs*

*s/ Jessica L. Fuller*
Jessica L. Fuller

8000283v3