IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

    Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

    Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT CULTURAL CARE, INC'S RULE 72(a) OBJECTIONS TO ORDER ON MOTION TO STRIKE [ECF No. 495]**

---

## PRELIMINARY STATEMENT

Cultural Care's Rule 72(a) objections to Magistrate Judge Tafoya's order denying its motion to strike (the "Objection") is a thinly-veiled attempt to re-litigate its motion to dismiss and should be denied. Cultural Care spends most of the Objection arguing that the deposition of Plaintiffs' investigator, and the associated documentary evidence, is not a sufficient basis upon which to hold it liable for an antitrust violation. That proposition can be tested at trial or, if Cultural Care believes it can make a colorable motion, at summary judgment—at which points Plaintiffs shall present the significant additional evidence of liability developed through discovery—but is irrelevant now.

Whether or not the case should move forward is based upon the allegations in the complaint. And whether or not the allegations in the complaint are proper depends, in part, upon whether they were consistent with the information available to Plaintiffs at the time they were filed. Yet, Cultural Care is almost silent on this crucial issue and at no point tackles Magistrate Judge Tafoya's thorough analysis of the record evidence

1

and allegations. This failure to engage with the Judge Tafoya's key factual findings is fatal to the Objection, which must be overruled.

## LEGAL STANDARD

Cultural Care must clear two high legal standards. *First*, Cultural Care must satisfy the standard for objections to a non-dispositive order. As it correctly notes [ECF No. 495 at 6], Cultural Care must demonstrate that Magistrate Judge Tafoya's order was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "Under this standard of review, a magistrate judge's finding should not be rejected merely because the Court would have decided the matter differently. A district court must affirm a magistrate judge's decision unless on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed." *Vreeland v. Griggs*, No. 12-CV-01921-PAB-KMT, 2014 WL 641512, at *1 (D. Colo. Feb. 18, 2014) (internal citations, quotation marks, and brackets omitted).

*Second*, Cultural Care must satisfy the heavy burden imposed by Rule 12(f). The Order correctly outlines the standard, to which Cultural Care does not object:

> Fed. R. Civ. P. 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, striking a portion of a pleading is a drastic remedy; federal courts generally view motions to strike with disfavor and infrequently grant such requests. 5C Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1380 (3d ed. 2011). Given that motions to strike are disfavored and will only be granted under the rarest of circumstances, the moving party's "burden of proof is a heavy one." *Holzberlein v. OM Fin. Life Ins. Co.*, Case No. 08–cv–02053–LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008). Further, "[e]ven where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club v. Tri-State Generation and*

> *Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. Feb. 6, 1997). In addition, regardless of whether the moving party has met its burden to prove that allegations contained in a pleading violate Rule 12(f) by being redundant, immaterial, impertinent or scandalous, discretion remains with the Court to grant or deny the motion. *See* Fed. R. Civ. P. 12(f) (denoting only that allegations which are subject to Rule 12(f) "may" be stricken).

[ECF No. 490 at 3 (alteration in original).] Taken together, therefore, in order to sustain the Objection, Cultural Care needs to demonstrate that Magistrate Judge Tafoya "clearly err[ed]" in a matter committed to her sound "discretion" when she denied a motion that was "disfavored" and granted under the "rarest of circumstances" in the first place. Cultural Care cannot come close to meeting this "heavy" burden, as Judge Tafoya's Order was entirely correct.

## ARGUMENT

### A.  The Order's Factual Findings Are Correct, Not Clearly Erroneous

Cultural Care premises its motion on the assumption that the record contradicts the allegations in the First Amended Complaint ("FAC"). Nowhere, however, does Cultural Care take on the Order's analysis of the evidentiary record or locate any error in the Order's factual findings underlying the conclusion that "Mr. Keil's telephone logs and deposition testimony support Plaintiffs' allegations in their Amended Complaint, including specifically paragraphs 90-94." [ECF No. 490 at 8.]

Starting at page 3, the Order takes each of the challenged allegations in turn and compares it to the evidence. For paragraph 92 of the FAC, the Order reviews the record evidence that defendant APF Global Exchange's Director of Field Operations stated: (i) "There is no difference in prices, as far as the stipend goes, between all of the agencies"; (ii) answered, "Well, yea, it's that" to the question, "is there an understanding

3

among all the agencies about paying the au pairs this set amount"; and (iii) answered, "Correct, correct!  Everybody agrees, correct!" to the question, "So you're saying that the government sets a minimum amount to pay, and all the agencies agree to pay that exact same minimum amount?"  The Order correctly found these statements to be consistent with the allegation that "there was an understanding between all of the Sponsors to pay standard au pairs the same amount."  [ECF No. 490 at 3-4.]

For paragraph 93, the Order reviewed the record evidence that defendant EurAuPair Intercultural Child Programs' Regional Director for the East Coast Region stated: (1) "yes, it's [*i.e.*, the stipend is] exactly the same amount, equal in all programs"; and (2) answered, "Yes, they all agreed to pay that amount, no more" to the question, "Are you saying that each an [sic] every one of the fifteen companies have gotten together and they made an agreement to pay all au pairs a stipend that is no more then [sic] $195.75 per week?"  The Order correctly found these statements to be consistent with the allegation that "the Sponsor acknowledged that each and every Sponsor got together and agreed to pay au pairs a stipend of no more than $195.75 a week."  [ECF No. 490 at 5.]

For paragraph 94, the Order reviewed the record evidence that Au Pair International's Placement Coordinator/Area Director answered, "Everybody agrees, yes, exactly!" to the question, "So all the companies agree to pay the same exact minimum rate?"  The Order correctly found this statement consistent with the FAC, which quoted a portion of the same language.  [ECF No. 490 at 5-6.]

The Order also reviewed the evidence that Cultural Care claims is contrary to the FAC, specifically addressing Cultural Care's argument that the defendants' employees

also noted the possibility of paying more than the minimum. [ECF No. 490 at 6.] In light of the "context" of such statements, and the fact that "in one instance, the director indicated a family could pay more and 'nobody would have to know,'" the Order found that "These statements fall far short of repudiating Plaintiffs' allegations regarding the Sponsors agreeing to set the au pair wages at the minimum amount." [ECF No. 490 at 6-7.] The Order is correct because allegations of an agreement among Sponsors to set the stipend at $195.75 are entirely consistent with some host families choosing to pay slightly more for additional work or because they rounded up. Indeed, the FAC explicitly recognized as much. Order at 6 (quoting FAC ¶ 74, alleging that "one host family paid their au pair slightly more than the $195.75 stipend 'on the assumption that Au Pair in America would not find out about the cash payments'"). Moreover, the statement that "nobody would have to know" was nothing more or less than the director suggesting a deviation from an established rule—the rule to pay *au pairs* $195.75 per week. Judge Tafoya was therefore entirely correct to conclude that the evidence—including the references to paying slightly more than $195.75 per week in certain situations—supports the allegations of the FAC.

The Order continues to analyze the record, including by dispelling Cultural Care's claim that "the investigator acknowledged under oath that he had no evidence of any communication occurring between two or more sponsors in which they agreed to set the amount of the stipends." [ECF No. 495 at 2.] As the Order states, this claims takes "Mr. Keil's testimony well out of context," because he "testified repeatedly that when the agency employees stated that 'we agreed' or 'we all agreed,' he interpreted that to

5

mean the agencies." [ECF No. 490 at 7-8.] Magistrate Judge Tafoya agreed that Mr. Keil's was "a reasonable interpretation" of the evidence. [ECF No. 490 at 8.]

The closest Cultural Care comes to addressing the Order's analysis is at pages 8-10 of the Objection. There, Cultural Care outlines its arguments as to why a fact-finder should give little weight to the admissions upon which the FAC is based—all of which can be addressed at the proper time, but is irrelevant to whether the material should be stricken from the FAC. Indeed, Cultural Care's authority comes from appeals after trial or of summary judgment—phases of litigation at which the weight of evidence is relevant. *See R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper*, 462 F.3d 690 (7th Cir. 2006) (appeal after trial); *In re Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999) (appeal from grant of summary judgment).[1] Cultural Care does not argue—nor could it—that the evidence does not provide a good faith basis on which to make the allegations in the FAC, which is all that is required. *See generally* Fed. R. Civ. P. 11(b).

In sum, although Cultural Care repeats the assertions it made before the Magistrate Judge, nowhere does Cultural Care perform any kind of textual analysis to explain why the reasoning summarized above is wrong, let alone clearly so. Nor does Cultural Care identify any portion of the record overlooked or misread in the Order. This is fatal to Cultural Care's objection, which is premised on the assumption that the

---

[1]   Cultural Care makes another reliability argument at pages 10-12 of the Objection, but in addition to failing for the reason given above, that argument is not preserved. The Court will search in vain for any reference to "extra-judicial" discovery or conduct in the original motion from which this objection is lodged. *See generally* [ECF No. 327]. Indeed, Cultural Care appears to implicitly acknowledge that this argument is more closely related to arguments it made in its first motion to strike [ECF No. 134] and denied by order back in November 2015 [ECF No. 235]. [ECF 495 at 10 ("Magistrate Judge Tafoya previously declined to strike the challenged allegations on the basis of improper extra-judicial conduct").]

investigator repudiated the allegations in the FAC rather than testifying consistently. Because that assumption is wrong for the reasons given in the Order and not significantly addressed in the Objection, the Court need not continue beyond this point in its analysis. The Objection should be overruled.

### B. Cultural Care's Legal Analysis Neither Addresses the Issues Decided in the Order Nor Undermines Its Factual Conclusion

Cultural Care argues that "False and sham allegations such as these that are crafted to remedy an obvious deficiency in a claim must be stricken." [ECF No. 495 at 8.] This argument assumes that the allegations are inconsistent with the record, which—as explained above—is simply not the case. Cultural Care's argument, therefore, is inapplicable on its face.

Indeed, the inapplicability of Cultural Care's argument is underlined by the cases it cites—cases that bear no resemblance whatsoever to the issue before the Court. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007) (discussing the standard on a motion to dismiss, not a motion to strike); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324 (Fed. Cir. 1998) (confronting a situation in which the plaintiff amended his complaint in a manner that contradicted his original pleading in "a transparent attempt to conform the facts to the requirements of the cause of action"); *Garrett v. Payne*, No. 05-CV-472 (E.D. Okla. Feb. 23, 2006), Ex. D to Objection (confronting a pro se litigant's suit against "nearly every Judge on the Tenth Circuit, all but one District Judge from the Eastern District of Oklahoma, some Court Clerks and United States Attorneys" that did not state a claim, "could not prevail on the facts alleged," and had been filed "time and again").

### C. Cultural Care Cannot Establish Prejudice

Lastly, Cultural Care has not and cannot establish prejudice.

It is important first to note that prejudice is only relevant if Cultural Care can establish that the other requirements of Rule 12(f) are met. For the reasons given above, they are not. Regardless, Cultural Care attempts to establish prejudice in two ways, both of which should be rejected. *First*, Cultural Care notes that none of the interviewees on which the challenged allegations were based worked for Cultural Care. [ECF NO. 495 at 12.] But no one ever said they did. Indeed, in weighing the evidence in the motion to dismiss, this Court explicitly took into account the fact that "Plaintiffs (1) did not identify the specific individuals . . . , and (2) provide no information to suggest the individuals actually had authority to speak for one, much less all, of sponsor Defendants." *Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1074 (D. Colo. 2016). The fact that only three employees were referenced made it clear that not all Defendants were being quoted. There is no prejudice, therefore, because this consideration has already been judged by the Court.

*Second*, though related, Cultural Care argues that having to defend itself in this litigation is prejudice. [ECF No. 495 at 13.] Cultural Care cites no authority for the proposition that having to continue the litigation constitutes prejudice. More fundamentally, however, Cultural Care's assumption that the motion to dismiss would have turned out differently absent the allegations that some Sponsors admitted to an agreement is unwarranted. Indeed, Magistrate Judge Tafoya's recommendation did not

8

rely upon those allegations at all.  *See generally Beltran v. InterExchange, Inc.*, No. 14-cv-3074, 2016 WL 695967 (D. Colo. Feb. 22, 2016).[2]

### D.  The Additional Relief Sought Must Also Be Denied

Cultural Care's request for additional relief is all premised on the same arguments as its primary request for relief, and should be denied for the same reasons. Cultural Care does not, and could not, argue that any of the relief can be granted independently.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiffs' original opposition to Cultural Care's motion to strike, the Objection should be overruled.

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

*/s/      Peter M. Skinner*
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com

---

[2]     For that additional reason, even if Cultural Care could meet the requirements of Rule 12(f) and demonstrate prejudice, Judge Tafoya still would have been within her considerable discretion in denying Cultural Care's motion to strike.

Sigrid S. McCawley
Lauren Fleischer Louis
Sabria McElroy
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Tel.: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com
smcelroy@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado 80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org
*Attorneys for Plaintiffs*

Case No. 1:14-cv-03074-CMA-KMT Document 509 filed 03/20/17 USDC Colorado pg 10 of 11

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 20, 2017, I electronically served the foregoing Plaintiffs' Opposition to Defendant Cultural Care, Inc.'s Rule 72(a) Objections to Order on Motion to Strike on all counsel of record.


                                          */s/ Peter M. Skinner*
                                          Peter M. Skinner