IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *et al.*,

    Plaintiffs,

v.

INTEREXCHANGE, INC., *et al.*,

    Defendants.

---

**DEFENDANT CULTURAL CARE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

---

Defendant Cultural Care, Inc. ("Cultural Care"), hereby responds to Plaintiffs' Motion to Compel Response to Document Request No. 16,[1] ECF No. 507 (the "Motion") as follows.

## ARGUMENT

Plaintiffs' Motion should be denied as to Cultural Care. Cultural Care has produced the relevant portions of its audited financial statements, which contain all of the financial information Plaintiffs requested during conferral and all that Plaintiffs are arguably even entitled to discover at this stage. Despite this, Plaintiffs maintain their

---

[1] Plaintiffs' Request for Production of Documents No. 16 sought Cultural Care's "audited or unaudited financial statements, including documents sufficient to show your annual revenue and income derived from participating in the au pair program during each year in which you have participated in the program." *See* Exhibit 1 to Declaration of Justin J. Wolosz ("Wolosz Decl."), attached hereto as Exhibit A. Cultural Care objected, *inter alia*, on grounds of overbreadth, non-proportionality, and the proprietary and confidential nature of the documents sought. *See* Wolosz Decl. at ¶ 4 and Ex. 2.

Motion against Cultural Care in an effort to now target corporate net worth, which is irrelevant, overbroad, and, at a minimum, premature.

**I.      Cultural Care Has Fully Met the Discovery Obligations
to Which the Motion Relates.**

Plaintiffs did not seek and are not entitled to all conceivable financial records and information from Cultural Care.  Rather, Plaintiffs requested only audited or unaudited financial statements, including records "sufficient to show" revenue and income information.  During the conferral process,[2] Plaintiffs' counsel confirmed that Plaintiffs were specifically seeking revenue and expense numbers.  Wolosz Decl. at ¶ 7.  From these numbers, Plaintiffs could calculate Cultural Care's net income, or, loosely stated, its profitability, which tied into Plaintiffs' disputed theory that high profitability could constitute evidence of collusion for antitrust purposes.

Plaintiffs are unable to cite to any judicial decision or statute in support of their proposition that evidence of profitability creates an inference of collusion or a violation of the antitrust laws.  In fact, courts have resoundingly rejected this proposition.  *See, e.g., Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1251-55 (11th Cir. 2002); *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic,* 65 F.3d 1406, 1412 (7th Cir. 1995) (Posner, J.); *The Sample, Inc. v. Pendleton Woolen Mills, Inc.*, 704 F. Supp. 498, 504 n.6 (S.D.N.Y. 1989).  Indeed, as Judge Posner notes in *Blue Cross & Blue Shield United of Wisconsin,* profits are an accounting convention that do not necessarily reflect

---

[2] Cultural Care disagrees with aspects of Plaintiffs' description (*see* Motion at 3-5) of the meet and confer process.  *See* Wolosz Decl. at ¶¶ 5-12, Exs. 3-8.

economic rates of return and, in any event, do not establish monopoly power. 65 F.3d at 1412.

Nonetheless, in an effort to avoid motion practice, Cultural Care produced the statements of income from its audited financial statements for fiscal years ending September 30, 2009 through September 30, 2015. Wolosz Decl. at ¶¶ 8-9 and Exs. 4-5. These statements include the revenue and expense numbers demanded by Plaintiffs, and even perform the calculation of the net income derived from those numbers.[3]

When Plaintiffs rejected these stand-alone pages from the audited financial statements, Cultural Care produced the audited financial statements themselves to establish the context of the statements of income. Wolosz Decl. at ¶¶ 11-12 and Exs. 6-7. However, Cultural Care redacted the balance sheets and related notes because (a) Plaintiffs are not entitled to corporate net worth information, perhaps ever but certainly not before class certification, and (b) outdated net worth information is not relevant under any circumstances. *See infra* Part III. Hence, Cultural Care has fully provided in audited form all financial information to which Plaintiffs are even arguably entitled.[4] Cultural Care is prepared to share its production with the Court *in camera*, if the Court would find that helpful.

---

[3] These statements cover the time period applicable to the request. *See* Wolosz Decl. at ¶ 3 and Ex. 1, at p. 4 (Instruction No. 16).

[4] For this reason, among others, Plaintiffs reliance upon *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420 (N.D. Ill. 1977) is misplaced. Nothing in that case suggests that, as here, revenues, expenses and other information had been provided and the only financial information withheld was net worth. In any event, in *Board of Educ. of*

3

II.     **Plaintiffs Have Articulated No Basis to Contend That Corporate Net Worth Bears on Liability or Class Certification, Much Less Demonstrated That They Have a "Compelling Need" for Such Information.**

Although Plaintiffs contend that they need Cultural Care's entire balance sheets, no viable rationale exists for that position. The information included on such statements, such as assets (including the value the company attributes to the intangible asset known as "good will"), prepaid and deferred expenses and other liabilities, and stockholder equity, have nothing whatsoever to do with the merits of Plaintiffs' labor, antitrust, and miscellaneous state and RICO claims, let alone whether a class should be certified relating to any of those claims.

Pursuant to Fed. R. Civ. P. 26, the initial consideration when evaluating a motion to compel is whether the discovery is relevant to the subject matter of the case. *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 552 (D. Colo. 2009). For this reason: "[W]hen a request for discovery is overly broad on its face or *when relevancy is not readily apparent*, the party seeking the discovery has the burden to show the relevancy of the request." *Id.* at 553 (emphasis added); *Havens v. Johnson*, No. 09-cv-01380, 2013 WL 1828245, at *3 (D. Colo. Apr. 30, 2013).[5]

---

*Evanston Tp. High School Dist. No. 202, Cook County, Ill. v Admiral Heating and Ventilating, Inc.,* 104 F.R.D. 23, 34 (N.D. Ill. 1984), a court in the same district subsequently held that high profits had minimal probative value in a price-fixing antitrust case, stating that use of evidence of high profits "seems [like a] long way around in a case like this, seeking to pile inference on inference as a substitute for directly probative (and more readily available) evidence of bid-rigging."

[5] Even if the Court were to conclude that outdated balance sheets are relevant, which they are not, "the Court may limit discovery upon a showing of good cause, to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden or

But, Plaintiffs' burden in this instance goes well beyond that.  The District of Colorado has recognized a test specifically to determine whether confidential financial information, such as financial statements, must be disclosed.  *See Alcon v. Spicer*, 113 P.3d 735, 743 (Colo. 2005) (a party seeking confidential financial information must demonstrate a "compelling need" for the information sought); *see also Bonanno*, 255 F.R.D. at 555 (applying Colorado test as a matter of comity for discoverability of financial information and holding that the information sought was not "an *essential* element of proof with respect to either liability or damage" and that Plaintiffs therefore did not meet their burden of demonstrating a compelling need for the confidential information) (emphasis added).

Cultural Care's balance sheets are neither required nor essential to prove any element of the Rule 23 standards, Plaintiffs' claims, or Defendants' defenses.  Indeed, Plaintiffs have not articulated or demonstrated **any** nexus between the requirements for class certification and the information in the balance sheets.  Without such a nexus, Plaintiffs have simply failed to carry any of their arguments of relevance.

As Plaintiffs cannot meet the heavy burden of demonstrating a compelling need for the financial statements, the instant motion must be denied.  *See E.E.O.C. v. Dillon Companies, Inc.*, No. 09-cv-02237, 2010 WL 3239262, at *5 (D. Colo. Aug. 13, 2010) (holding that plaintiff provided no compelling reason for defendant to produce its financial information, in spite of plaintiff's claim for punitive damages).

---

expense.'"  *Tinley v. Poly-Triplex Techs., Inc.*, No. 07-cv-01136, 2008 WL 732590, at *1 (D. Colo. Mar. 18, 2008) (Tafoya, M.J.) (citing Fed. R. Civ. P. 26(c)).

### III. With Regard to Punitive Damages, Plaintiffs Are Not Entitled to Net Worth Information, Perhaps at All, but Certainly Not Before Class Certification, and Outdated Net Worth Information in Past Balance Sheets Is Irrelevant.

Plaintiffs have identified no facts that would support any award of punitive damages in this case. Even if they had facts to suggest that punitive damages might be appropriate (for those claims that would allow such a recovery), Plaintiffs would only be entitled to Cultural Care's current balance sheet if (a) a class were certified against Cultural Care relating to a claim for which punitive damages are available, and (b) the applicable jurisdiction's law allowed consideration of net worth as a factor in determining punitive damages. *See, e.g.*, C.R.S. § 13-21-102 (expressly prohibiting consideration of a defendant's net worth or income in connection with punitive damage awards).[6]

Furthermore, courts in the Tenth Circuit have routinely delayed discovery of financial information related to punitive damages claims until after determination of post-discovery dispositive motions, or until after a jury determination of liability for the underlying claim. *James v. Heuberger Motors, Inc.*, No. 10-cv-01648, 2011 WL 334473, at *3 (D. Colo. Jan. 28, 2011); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007); *Dillon Companies, Inc.*, 2010 WL 3239262, at *5 (D. Colo. Aug. 13, 2010), *on reconsideration*, 2010 WL

---

[6] Ironically, Plaintiffs rely upon this statute in an effort to demonstrate the availability of punitive or exemplary damages (*see* Motion at 11, fn. 7), but overlook the limits imposed by that very statute when seeking to establish such damages. Specifically, "…evidence of the income or net worth of a party shall not be considered in determining the appropriateness or amount of [punitive] damages." C.R.S. § 13-21-102(6) (emphasis added). Accordingly, Colorado law would preclude discovery of Defendants' financial statements for the purposes of determining punitive damages. *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 721 (Colo. 1999).

3926066 (D. Colo. Oct. 4, 2010); *Am. Maplan Corp. v. Heilmayr,* 203 F.R.D. 499, 503 (D. Kan. 2001); *Ramirez v. IBP, Inc.,* No. 94-4101, 1996 WL 455022, at *2 (D. Kan. July 3, 1996).

In *Heartland*, a case relied upon by Plaintiffs, the Court stayed production of financial statements until after determination of any post-discovery dispositive motions because the issue of a defendant's financial condition was not ripe before that time. *Heartland*, 2007 WL 950282, at *14. The Court stated as follows:

> Based upon the holding in *Audiotext Communications Network, Inc.*[7] the Court will therefore limit the financial information required from defendants concerning the issue of punitive damages to the most recent annual reports and current financial statements of the defendants measured at the time set above for defendants to produce such information. The Court further notes that by delaying the production of this financial information to a point closer to trial, the information produced will, in fact, be more "current" than information that would be produced now.

*Id*.

### IV.   The Protective Order Does Not Change the *Heartland* Analysis.

Plaintiffs' contention that the Protective Order entered into by the parties on May 6, 2016 (ECF No. 305) adequately protects Defendants' confidential information misses the points articulated in *Heartland*: disclosure is not ripe before the issues are truly joined with regard to punitive damages, and outdated financial information is of minimal value in any event.

---

[7] Plaintiffs also mistakenly rely upon *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. 94-2395, 1995 WL 625962, at * 3-4 (D. Kan. Oct. 5, 1995).

In addition, Plaintiffs' argument ignores the potential harm from inadvertent disclosure and the limits of the Protective Order. These concerns are amplified because Defendants' most sensitive business information could end up in the hands of their direct competitors, i.e., the other Defendants. *Suture Express, Inc. v. Cardinal Health 200, LLC,* No. 14-cv-04737, 2014 WL 6478077, at *6 (N.D. Ill. Nov. 18, 2014) (protective order provided insufficient protection to privacy interests because of the inescapable risk of inadvertent disclosure); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 138 F.R.D. 530, 536-37 (C.D. Ill. 1991).

## CONCLUSION

For all of the above reasons, Cultural Care respectfully requests that the Court deny Plaintiffs' Motion to Compel in its entirety, together and with such other and further relief as the Court deems just and proper.

Respectfully submitted this 27th day of March, 2017

*s/ Jessica L. Fuller*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com)
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

*Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 27, 2017, I caused to be electronically filed the foregoing DEFENDANT CULTURAL CARE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Randall W. Jackson (rjackson@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Boies Schiller & Flexner, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, FL 33301

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218

*Counsel for Plaintiffs*

                                      *s/ Jessica L. Fuller*
                                        Jessica L. Fuller