IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *et al.*,

      Plaintiffs,

v.

INTEREXCHANGE, INC., *et al.*,

      Defendants.

---

**AIFS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

---

      Defendant, American Institute for Foreign Study d/b/a Au Pair in America ("AIFS"), hereby responds to Plaintiffs' Motion to Compel Defendants' production of information responsive to Document Request No. 16 of Plaintiffs' First Request for the Production of Documents (hereinafter "Motion").

## PRELIMINARY STATEMENT

      During the conferral process preceding this Motion, Plaintiffs stated that they requested financial statements in order to determine revenue, expenses and "profits" associated with AIFS' operation of the APIA Program. AIFS provided Plaintiffs with financial information specific to the Au Pair in America ("APIA") Program's revenues, expenses and income for the years 2009 through 2014 inclusive. Notwithstanding, Plaintiffs persist in this Motion without explaining why AIFS financial statements, which demonstrate aggregate revenue, expense and income from its five distinct programs— four of which are unrelated to au pairs, are relevant to the instant litigation.

1

While Plaintiffs' characterize the requested documents as "basic,"[1] it is inarguable that AIFS' financial statements contain sensitive, confidential and proprietary business information that is not otherwise publicly available or subject to disclosure. Plaintiffs must demonstrate that there is a "compelling need" for the unrelated information in AIFS' financial statements and that it is the "least intrusive" means to obtain the desired information.  Plaintiffs have failed to meet this heavy burden. Far from establishing a compelling need for financial statements, Plaintiffs fail to demonstrate the relevancy of the statements to their anticipated FRCP Rule 23 motion.

Plaintiffs also fail to present any rational basis why their punitive damages claims warrant production of financial statements. Plaintiffs rely upon Colorado Revised Statutes Section 13-21-102 for their contention (See Pl. Br., p. 11 at fn. 7), but fail to address that the same statute expressly prohibits consideration of a defendant's net worth or income in connection with punitive damages awards. Even where this statutory prohibition does not apply, information contained in AIFS' prior financial statements is irrelevant, and any demand for current financial statements is premature.

Plaintiffs similarly fail to provide any viable reason why AIFS' financial information is relevant to their antitrust claims.  Contrary to Plaintiffs' unsubstantiated assertions, evidence of accounting profits, which may be reflected in a financial statement, does not establish an inference or evidence of collusion, conspiracy or illegality.  Such a contention is wholly undermined where, as here, Plaintiffs allege that AIFS engaged in a purported conspiracy with at least five other entities whose not-for-profit corporate

---

[1] See Plaintiffs' Brief in Support of its Motion (hereinafter "Pl. Br.") at page 5.

status precludes them from amassing profits as a matter of law.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs' served their First Request for the Production of Documents on March 3, 2016; Request 16 ("Request No. 16") therein reads as follows:

> Audited or unaudited financial statements, including documents sufficient to show your <u>annual revenue and income derived from participating in the au pair program during each year in which you have participated in the program</u>.

(Macri Decl., Ex. 1 at p. 7) (<u>emphasis added</u>).  On May 4, 2016, AIFS responded and specifically objected to Request No. 16 (Macri Decl., Ex. 2 at p. 15).

There is no evidence to support Plaintiffs' claims of seeking responses from AIFS to Request No. 16 for more than one year (Pl. Br., p. 5).  (Macri Decl. ¶ 12).  In fact, Plaintiffs waited more than nine months (until February 17, 2017) to respond to AIFS' objection.  <u>Id</u>. Thereafter, AIFS promptly conferred with Plaintiffs' counsel.  <u>Id</u>. at ¶ 13.

During the confer process, AIFS reaffirmed and elaborated on its objections to production of financial statements in response to Request No. 16. (Macri Decl., Ex. 6). In accordance with case law, AIFS agreed that it would again meet and confer with Plaintiffs' counsel about production of financial statements after issuance of post-discovery dispositive motions. <u>Id</u>.

Unlike the non-profit defendants, neither law nor regulation requires AIFS to make its financial statements subject to public disclosure. (Mahoney Aff. ¶ 3). Moreover, as APIA is one of five distinct AIFS programs, AIFS consolidated financial statements do not demonstrate revenue, expenses and income that is attributable solely to APIA.

(Mahoney Aff. ¶ 5).  In fact, AIFS financial statements **have no specific information** about "annual revenue and income derived from participating in the au pair program during each year in which [AIFS] have participated in the program" as stated in Request No. 16.  Id.

Most importantly, AIFS has provided Plaintiffs with information and data about the APIA Program's "annual revenue and income" as well as its allocated expenses for each of the years from 2009 through 2014. (Mahoney Aff. ¶ 6).  Accordingly, Plaintiffs already possess all the financial information necessary to know and/or calculate the information that they purportedly seek from AIFS' financial statements.  Id.  Finally, it cannot be overstated that, as virtually **all other au pair program sponsors** are involved in this action, disclosure of financial statements will expose AIFS' proprietary business information to practically the entire field of its competitors. Id. at ¶ 3.

## ARGUMENT

### I.   **Legal Standard**

Pursuant to FRCP Rule 26, the initial consideration when evaluating a motion to compel is whether the discovery is relevant to the subject matter of the case. Bonanno v. Quizno's Franchise Co., LLC, 255 F.R.D. 550, 553 (D. Colo. 2009).  For this reason: "[W]hen a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."  Id.

Even if the information sought is relevant, "the Court may limit discovery upon a showing of good cause, to 'protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense.'" <u>Tinley v. Poly-Triplex Techs., Inc.</u>, 2008 WL 732590, at *1 (D. Colo. Mar. 18, 2008) (Tafoya, MJ.) <u>citing</u> Fed.R.Civ.P. 26(c).

The District of Colorado also has recognized the test articulated in <u>Alcon v. Spicer</u>, 113 P.3d 735 (Colo. 2005) to determine whether confidential financial information, such as financial statements, must be disclosed.  <u>Bonanno</u>, 255 F.R.D. at 555 (applying Colorado test as a matter of comity for discoverability of financial information), <u>citing</u> <u>Alcon v. Spicer</u>, 113 P.3d 735 (Colo. 2005), as modified (June 27, 2005); <u>Stone v. State Farm Mut. Auto. Ins. Co.</u>, 185 P.3d 150, 155 (Colo. 2008) <u>holding modified by</u> <u>In re Dist. Court, City & Cty. of Denver</u>, 256 P.3d 687 (Colo. 2011).  The <u>Alcon</u> test establishes the following standard: (i) a party seeking confidential financial information must demonstrate a "compelling need" for the information sought; and (ii) the disclosure must occur in a manner that is least intrusive to the confidentiality and privacy interests at stake.  <u>Id</u>.   Plaintiffs have not satisfied the general relevance standard under Rule 26 and/or the prerequisites to compel disclosure under <u>Alcon</u>.

## II. Request No. 16 Seeks Irrelevant Documents

As AIFS has already provided financial information about the APIA Program's specific revenue, expenses and income, Plaintiffs' Motion seeks unrestricted access to 30 years of AIFS' financial statements without establishing legal and factual nexus to their antitrust claims, their punitive damages claims, or the requisites necessary to certify a class.

### A. Prior Financial Statements Contain Information Wholly Irrelevant to Punitive Damages Claims

While citing to Colorado Revised Statutes Section 13-21-102, in an effort to

5

demonstrate the availability of punitive or exemplary damages, Plaintiffs ignore the limits imposed by the same statute when seeking to establish such damages. Specifically, Plaintiffs failed to disclose that "…evidence of the income or net worth of a party shall not be considered in determining the appropriateness or amount of [punitive] damages." C.R.S.A. § 13-21-102(6) (emphasis added). Accordingly, Colorado law precludes discovery of AIFS' financial statements for the purposes of determining punitive damages. Corbetta v. Albertson's, Inc., 975 P.2d 718 (Colo. 1999).

In Corbetta, the Colorado Supreme Court expressly held that C.R.S. § 13-21-102(6) prohibited the discovery of financial information for purposes of assessing punitive damages. 975 P.2d at 721. The court concluded as follows:

> [T]he legislature sought to tie punitive damage awards to the amount of the actual damages awarded, rather than to the defendant's income…When the legislature's express desire to link punitive damages to actual damages is viewed in conjunction with the language of section 13–21–102(6), it is clear that the discovery of petitioner's financial records is impermissible.

Id. at 722-23.

None of the cases relied upon by Plaintiffs in support of the instant Motion involve pertinent federal laws or Colorado law. (See Pl. Br., pp. 9-11).[2]  C.R.S.A.

---

[2] See Scavetta v. King Soopers, Inc., 2012 WL 3545278, at *2 (D. Colo. Aug. 16, 2012) (federal discrimination claims); Meeker v. Life Care Centers of America, Inc., 2015 WL 7882695, at *6 (D. Colo., 2015) (federal Section 1983 claims) ; Audiotext Commc'ns Network, Inc. v. US Telecom, Inc., 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995) (Kansas law); Aero Tech Aviation Design, LLC v. Otto Aviation Grp., LLC, 2016 WL 6595031, at *1 (D. Kan. Nov. 8, 2016)  (Kansas law); Gust v. Wireless Vision, L.L.C., 2015 WL 9462078, at *5 (D. Kan. Dec. 24, 2015) (Kansas law); Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 151 (D. Kan. 1990) (Kansas law); Patient A v. Vermont Agency of Human Servs., 2016 WL 880036, at *2 (D. Vt.

Section 13-21-102 at subparagraph 6 renders documents concerning AIFS' financial condition irrelevant under Colorado law and, thus, barred from disclosure. Corbetta, 975 P.2d at 722-23.

Beyond this Colorado statutory preclusion, case law establishes that ***prior*** financial statements are irrelevant, and that it is premature to compel production of current statements. Specifically, courts in the Tenth Circuit have routinely delayed discovery of financial information related to punitive damages claims until after determination of post-discovery dispositive motions, or until after a jury determination of liability for the underlying claim.  James v. Heuberger Motors, Inc., 2011 WL 334473, at *3 (D. Colo. Jan. 28, 2011); Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007); E.E.O.C. v. Dillon Companies, Inc., 2010 WL 3239262, at *5 (D. Colo. Aug. 13, 2010), on reconsideration, 2010 WL 3926066 (D. Colo. Oct. 4, 2010); Am. Maplan Corp. v. Heilmayr, 203 F.R.D. 499, 503 (D. Kan. 2001); Ramirez v. IBP, Inc., 1996 WL 455022, at *2 (D. Kan. July 3, 1996).

In Heartland, a case relied upon by Plaintiffs, the court stayed production of financial statements until after determination of any post-discovery dispositive motions because the issue of a defendant's financial condition is not ripe before that time. Heartland, 2007 WL 950282, at *14.  The court stated as follows:

> Based upon the holding in Audiotext Communications Network, Inc.[3] the Court will therefore limit the financial

---

Mar. 1, 2016) (Vermont law); Searcy v. Esurance Ins. Co., 2015 WL 9216573, at *1 (D. Nev. Dec. 16, 2015) (Nevada law).

[3]     Plaintiffs also rely upon Audiotext Communications Network, Inc. v. U.S. Telecom Inc., 1995 WL 625962 at * 3–4 (D. Kan. Oct. 5, 1995).

7

> information required from defendants concerning the issue of punitive damages to the most recent annual reports and current financial statements of the defendants measured at the time set above for defendants to produce such information. The Court further notes that by delaying the production of this financial information to a point closer to trial, the information produced will, in fact, be more "current" than information that would be produced now.

Heartland, 2007 WL 950282, at *14.

Plaintiffs seek production of financial statements for "each year" during which AIFS conducted an au pair program. AIFS has conducted an au pair program for more than 30 years—since 1986. (Mahoney Aff. ¶ 1). Under the very case relied upon by Plaintiffs, a defendant's *prior* financial information is not relevant, and production of financial information is delayed until a point time in the litigation when an issue specific to a defendant's financial condition becomes viable. Even then, *only the most current* financial information must be produced. Under the rule enunciated in Heartland, Request No. 16 is premature and overbroad to the extent that it demands production of financial statements from the past 30 years.

### B. Financial Statements are Not Relevant to Plaintiffs' Antitrust Claims

Plaintiffs further assert that AIFS' financial statements are relevant to their antitrust claims. Plaintiffs principally rely upon out-of-context statements from the Order issued by Hon. Christine M. Arguello as support for this assertion. (ECF No. 258). In the Order, Judge Arguello simply held that Plaintiffs' allegations were sufficient to withstand a motion to dismiss. See (ECF No. 258, p. 18). Judge Arguello's Order makes no mention of whether "artificially high profits" are either necessary or sufficient evidence to establish Plaintiffs' antitrust claims, or of whether "artificially high profits"

create an inference of collusion or conspiracy. See id.

Plaintiffs were unable to cite to any judicial decision or statute in support of their proposition that evidence of profitability creates an inference of collusion.  In fact, courts have resoundingly rejected such a proposition. See e.g., Bailey v. Allgas, Inc., 284 F.3d 1237, 1251-55 (11th Cir. 2002); Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic, 65 F.3d 1406, 1412 (7th Cir.1995) (Posner, J.); The Sample Inc. v. Pendleton Woolen Mills, Inc., 704 F. Supp. 498, 504 n.6 (S.D.N.Y. 1989).

In Bailey, the Eleventh Circuit held that, even when a business' profits are extremely high, profitability remains contingent upon numerous factors and does not constitute unequivocal evidence of anticompetitive behavior. The court stated:

> Although the consistent extraction of supracompetitive profits may be an indication of anticompetitive market power, such profits could just as easily be obtained as a result of good management, superior efficiency, or differences in accounting, none of which is inconsistent with an efficient market.

Bailey, 284 F.3d at 1252.  The court then elaborated about why accounting profits—the precise type of income reflected on AIFS' financial statements—are mostly relevant to questions of tax liability, rather than a true reflection of economic profitability:

> [T]he rate of return indicated by accounting data is greatly influenced by the firm's growth rate, accounting procedures, the useful life of its assets and the way that those assets are depreciated, and which expenses are capitalized or treated as current costs. Moreover, when a firm produces products in addition to the one under scrutiny, there may be serious dispute over the allocation of overhead and joint costs. These factors are largely irrelevant to economic profit. The overall picture suggests extreme caution in using such data to infer market power.

<u>Bailey</u>, 284 F.3d at 1252-53, <u>emphasis added</u>, (internal citations omitted); <u>see</u> <u>Blue</u> <u>Cross & Blue Shield</u>, 65 F.3d at 1412 ("…measured rates of return reflect accounting conventions more than they do real profits (or losses), as an economist would understand these terms…").  Contrary to Plaintiffs' theory, the Eleventh Circuit has expressly rejected a contention that "supracompetitive" accounting profits establish an inference of oligopolistic collusion.  <u>Bailey</u>, 284 F.3d at 1255. Indeed, the court emphasized that such a contention is particularly inappropriate where, as with AIFS, an entity has a consolidated financial statement with revenue, expenses and income attributable to distinct business endeavors. <u>Id</u>.  Indeed, AIFS' financial statements aggregate this information for its five programs; four of which have nothing to do with APIA.

The court in <u>The Sample Inc.</u> reached a similar conclusion for the same reasons. Specifically, the court declined to "infer a conspiracy based upon '[t]he dramatic rise in the gross margins of cooperating retailers....'" 704 F. Supp. at 504 n.6.  The court held as follows: "a rise in gross margins is not necessarily the result of a conspiracy. There could be other factors at work."   <u>Id</u>.

AIFS has produced financial information about APIA's allocated revenue, expenses and income for the six years related to the instant matter solely to avoid further litigation.  (Macri Decl., Ex. 8); (Mahoney Aff. ¶ 6). Notwithstanding, any information about APIA's potential "profits" that might be gleaned from AIFS' financial statements remains irrelevant to Plaintiffs' collusion claims.  Approximately one-third of the defendants in the instant action are not-for-profit entities. As a matter of law, these

au pair programs operate with zero-sum budgets and must not amass annual accounting "profits." Plaintiffs have failed to address this critical issue in any manner. Accordingly, while AIFS' production of the relevant financial information should in itself render the Motion moot, any information that may be contained in AIFS' financial statements remains irrelevant to the antitrust claims.

Plaintiffs' reliance on In re Folding Carton Antitrust Litigation, 76 F.R.D. 420 (N.D. Ill. 1977) is misplaced. Nothing expressed in that case indicates that, as here, the respondent had provided allocated revenue, expense and income information to the movant. Moreover, the case has not been followed subsequently by courts in the same federal district and lacks any factual nexus to AIFS' circumstances.

In Folding Carton, the district court ordered production of financial information on the theory that it "may help [movants] determine whether or not [respondents] enjoyed unreasonably high or excessive profits which are relevant to the issues here involved." 76 F.R.D. at 427.  However, the court did not otherwise explain, or even identify, the facts and issues in Folding Carton such that one could compare them to the instant litigation.  See id. Unlike the instant matter, the only basis asserted by the Folding Carton respondents for refusing to produce financial information was the movant's refusal to produce its own corresponding financial information.  See id.

In Bd. of Educ. of Evanston Tp. High School Dist. No. 202, Cook County, Ill. v. Admiral Heating and Ventilating, Inc., 104 F.R.D. 23, 34 (N.D. Ill. 1984), the court did not adopt the holding in Folding Carton and questioned the probative value of high profits as relevant evidence in a price-fixing antitrust case:

> [Use of evidence of high profits] seems like a long way around
> in a case like this, seeking to pile inference on inference as a
> substitute for directly probative (and more readily available)
> evidence of bid-rigging.  In sum this court will not lend itself to
> a fishing expedition in the waters of defendants' finances.

Thus, a subsequent decision by a court in the same federal judicial district does not

follow, and widely deviates from, the holding in <u>Folding Carton</u>.

Assuming *arguendo*, that the accounting profitability of AIFS' au pair programs is

relevant to Plaintiffs' claims, AIFS' financial statements do not contain <u>any</u> such

information.  As cautioned against by the court in <u>Bailey</u>, AIFS' financial statements

consolidate information about income derived from five distinct programs; there is no

information segregated or specific to its au pair program. (Mahoney Aff. ¶ 5).  As the five

programs are not equivalent to one another with respect to size, scope or resources,

generally accepted accounting practices would not permit information specific to APIA

to be derived simply by dividing the aggregate numbers by five.  <u>Id</u>. at ¶ 7. Most

significantly, AIFS has already provided Plaintiffs with information about revenue,

allocated expense and income specific to its APIA Program for the years 2009 through

2014. (Macri Decl., Ex. 8); (Mahoney Aff. ¶ 6).  Therefore, the production of financial

statements will result in substantial potential harm to AIFS without resulting in discovery

of any corresponding information probative of issues in the instant litigation.

### C. Plaintiffs Cannot Meet the <u>Alcon</u> Test's Requirements

Plaintiffs also fail to enumerate any reason why AIFS' financial statements are

relevant to their intended Rule 23 motion. Even if Plaintiffs are able to satisfy the Rule

26 relevancy standard, they cannot satisfy the required elements of the <u>Alcon</u> test for

the following reasons: (1) far from demonstrating a "compelling need," Plaintiffs have not demonstrated *any* nexus between the requirements for class certification and the information within AIFS' financial statements; and (2) as AIFS has already supplied information about revenue, expense and income, disclosure of financial statements would be highly intrusive to its confidentiality and privacy interests without providing any corresponding value to the litigation. <u>Alcon</u> 113 P.3d at 743; <u>see</u> <u>also</u> <u>Bonanno</u>, 255 F.R.D. at 555. Ironically, the disclosure of such information by and between virtually all of the au pair sponsors risks enabling the very same anticompetitive behavior of which Plaintiffs allege in their antitrust claims.

Applying <u>Alcon</u>, the court in <u>Bonnano</u> reaffirmed that the party seeking disclosure of confidential financial information must demonstrate a compelling need for the information by demonstrating that "[the] information is <u>required</u> in order to prove an element of one of their claims."  <u>Bonanno</u>, 255 F.R.D. at 555 (<u>emphasis added</u>). Indeed, the information sought must be "an <u>essential</u> element of proof with respect to either liability or damages."  <u>Id</u>. (<u>emphasis added</u>).  AIFS' financial statements are neither required nor essential to prove any element of the Rule 23 standards, Plaintiffs' claims, or Defendants' defenses.  As Plaintiffs cannot meet the heavy burden of demonstrating a compelling need for financial statements, the Motion must be denied. <u>See</u> <u>Dillon Companies, Inc.</u>, 2010 WL 3239262 at *5 (plaintiff did not have a "compelling reason" for financial information in order to support a claim for punitive damages).

Assuming *arguendo* that AIFS' financial statements contain both specific and relevant information about its au pair program, AIFS has provided the desired

information about revenue, allocated expense and income specific to its APIA Program *in an alternative form*. (Macri Decl., Ex. 8); (Mahoney Aff. ¶ 6). Thus, Plaintiffs cannot demonstrate that discovery of financial statements is the least intrusive means by which to access such information.  Accordingly, production of financial statements constitutes an unnecessary intrusion upon AIFS' proprietary interests.

### III.   The Protective Order Is Insufficient to Ensure Privacy of Financial Statement Information

Plaintiffs' contention that the Protective Order entered into by the parties on May 6, 2016 (ECF No. 305) adequately protects AIFS' privacy interests ignores its express limitations and the potential harm from inadvertent disclosure. These concerns are amplified because AIFS' most sensitive business information could end up in the hands of its direct competitors. Suture Express, Inc. v. Cardinal Health 200, LLC, 2014 WL 6478077, at *6 (N.D. Ill. Nov. 18, 2014); Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 138 F.R.D. 530, 536 (C.D.Ill.1991).

In Suture Express, the Court recognized the potential harm caused by disclosure of confidential information in an antitrust case, notwithstanding the existence of a protective order.  2014 WL 6478077, at *6.  The mere fact that commercially sensitive information would be provided to direct competitors was sufficient for the court to deny the request.  Id.  The court also found that the parties' protective order enabled an inescapable risk of inadvertent disclosure.  Id.  Finally, the court found that the protective order would not preclude disclosure to experts or use at a public trial.  Id.

Based upon relative magnitude of parties and attorneys, the Protective Order in the instant matter provides much less protection. Suture Express involved only one

plaintiff and two defendants. Here, there are 17 defendants, appearances by more than 75 attorneys, and potentially tens of thousands of plaintiffs.  Thus, the risk of inadvertent disclosure increases exponentially when so many individuals would have access to, and there is a potential for public disclosure of, this confidential business information during the course of a public trial.  See (ECF No. 305).  Most significantly, there is a presumption in favor of access to judicial records recognized by the Tenth Circuit, even when the parties agree that public access should be restricted. Suture, 2014 WL 6478077 at *6; see also JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose, Col., 754 F.3d 824, 826 (10th Cir. 2014) ("'[T]he parties cannot overcome the presumption against sealing judicial records simply by pointing out that the records are subject to a protective order in the district court.'") (internal citations omitted).

## CONCLUSION

For all of the above reasons, AIFS respectfully requests that the Court deny Plaintiffs' Motion to Compel in its entirety, together and with such other and further relief as the Court deems just and proper.

Date:  March 27, 2017

Respectfully submitted,

s/ *Stephen J. Macri*
Stephen J. Macri (smacri@putneylaw.com)
Robert M. Tucker (rtucker@putneylaw.com)
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

***Attorneys for American Institute for Foreign Study d/b/a Au Pair in America***