1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLORADO

3    Case No. 14-cv-03074-CMA-KMT

4    _____

5    JOHANA PAOLA BELTRAN, et al.,

6         Plaintiffs,

7    vs.

8    INTEREXCHANGE, INC., et al.,

9         Defendants.

10   _____

11             Proceedings before KATHLEEN M. TAFOYA, United

12   States Magistrate Judge, United States District Court for the

13   District of Colorado, commencing at 3:40 p.m., March 9, 2017,

14   in the United States Courthouse, Denver, Colorado.

15   _____

16             WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18   _____

19                      APPEARANCES

20             DAWN SMALLS and ALEXANDER N. HOOD, Attorneys at

21   Law, appearing for the plaintiffs.

22             WILLIAM J. KELLY, III, Attorney at Law, appearing

23   for the defendant USAuPair, Inc.

24   _____

25             TELEPHONIC INFORMAL DISCOVERY CONFERENCE

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 2

```
 1                    APPEARANCES (Cont'd)

 2             BOGDAN ENICA, Attorney at Law, appearing for the

 3     defendant Expert Group International, Inc.

 4              DAVID MESCHKE, Attorney at Law, appearing for the

 5     defendant EuRaupair InterCultural Child Care Programs.

 6              JONATHAN S. BENDER and JAMES E. HARTLEY, Attorneys

 7     at Law, appearing for the defendant Cultural Homestay

 8     International.

 9              JOAN A. LUKEY, JAMES M. LYONS, JUSTIN J. WOLOSZ

10     and JESSICA L. FULLER, Attorneys at Law, appearing for the

11     defendant Cultural Care, Inc.

12              BRIAN P. MASCHLER and PEGGY E. KOZAL, Attorneys at

13     Law, appearing for the defendant AuPairCare, Inc.

14              KATHRYN A. REILLY, Attorney at Law, appearing for

15     the defendants Au Pair International, Inc., and American

16     Cultural Exchange, LLC.

17              STEPHEN J. MACRI, Attorney at Law, appearing for

18     the defendant American Institute for Foreign Study.

19              LAWRENCE D. STONE, Attorney at Law, appearing for

20     the defendant A.P.E.X. American Professional Exchange, LLC.

21                      P R O C E E D I N G S

22              (Whereupon, the within electronically recorded

23     proceedings are herein transcribed, pursuant to order of

24     counsel.)

25              THE COURTROOM DEPUTY:  Court is in session.
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 3

```
 1              THE COURT:  Good afternoon, everyone.  This is
 2   Judge Tafoya.  We are here in case number 14-cv-3074.  This
 3   is Beltran, Joanna Beltran, et al., plaintiffs, versus
 4   InterExchange, Inc., and a number of other defendants who I
 5   won't call now.  I'll let you introduce yourselves.  And
 6   we'll take a roll of who's here in just a moment.  So, first,
 7   may I have appearance for plaintiffs?
 8              MS. SMALLS:  Yes, Your Honor.  Dawn Smalls from
 9   Boies Schiller & Flexner on behalf of the plaintiffs.
10              THE COURT:  All right.
11              MR. HOOD:  Alexander Hood from Towards Justice on
12   behalf of the plaintiffs.
13              THE COURT:  Okay.  I'm sorry.  What -- say your
14   name for me again.
15              MR. HOOD:  Sorry, Your Honor.  Alexander Hood from
16   Towards Justice on behalf of the plaintiffs.
17              THE COURT:  All right.  Good afternoon to you two.
18   And let's take the -- I'm not sure that everybody is here.  I
19   think my law -- my courtroom deputy took a roll.  So she's
20   highlighted the people that I think are on the phone.  So why
21   don't I just ask you.  Let's see.  For USAuPair.
22              MR. KELLY:  Good afternoon, Your Honor.  William
23   Kelly from Kelly & Walker.
24              THE COURT:  All right.  And for Expert Group
25   International.
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 4

 1          MR. ENICA:  Good afternoon, Your Honor.  Bogdan

 2   Enica for Expert AuPair.

 3          THE COURT:  Okay.  And for EuRaupair InterCultural

 4   Child Care Programs.  Mr. Meschke, are you on?

 5          MR. MESCHKE:  I'm sorry, Your Honor.  David

 6   Meschke from Brownstein Hyatt Farber Schreck.

 7          THE COURT:  All right.  And let's see.  For

 8   Cultural Care, Inc.

 9          MS. LUKEY:  Your Honor, Joan Lukey, Justin Wolosz,

10   Jim Lyons, and Jessica Fuller.

11          THE COURT:  All right.  Good afternoon.  And from

12   AuPairCare, Inc.

13          MR. MASCHLER:  Good afternoon, Your Honor.  Brian

14   Maschler and Peggy Kozal.

15          THE COURT:  Okay.  And Au Pair International,

16   Inc.?

17          MS. REILLY:  Good afternoon, Your Honor.  This is

18   Katie Reilly on behalf of Au Pair International, Agent Au

19   Pair, and Go Au Pair.

20          THE COURT:  All right.  Thank you.  And let's see.

21   I think -- American Institute for Foreign Study.

22          MR. MACRI:  Good afternoon, Your Honor.  Steve

23   Macri.

24          THE COURT:  All right.  And A.- -- A.P.E.X.

25   American Professional Exchange.  Mr. Stone?

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 5

 1          MR. STONE:  Yes, Your Honor.  Thank you.

 2  Appearing on behalf of A.P.E.X. and 20/20.  I apologize.

 3          THE COURT:  All right.  Thank you.  Is there

 4  anyone that I left out?  Okay.  Not hearing anything --

 5          MR. BENDER:  Your Honor, this is Jon -- Your

 6  Honor, it's Jon Bender and Jim Hartley for Cultural Homestay

 7  International.  We're actually not a part of this dispute,

 8  but we're listening in on the call.

 9          THE COURT:  Okay.  It's Mr. Bender, right?

10          MR. BENDER:  Yes, Your Honor.

11          THE COURT:  Okay.  All right.  All right.  Anyone

12  else?

13          Okay.  So I -- I'm not sure exactly -- I know

14  we're having a hearing in the morning.  So I was kind of

15  surprised to see this on the calendar.  My law clerk said

16  that the issues seem to be something about getting financial

17  statements from only one of you, AIFS.  But since you're all

18  on the phone, I'm assuming that it's a little more broad than

19  that.  So who would like to present this for me?

20          MS. SMALLS:  Yes, Your Honor.  This is Dawn Smalls

21  from Boies Schiller.  And I'll be speaking on behalf of the

22  plaintiffs.

23          So plaintiffs have requested this informal

24  discovery conference to discuss defendants' refusal to

25  produce financial statements as requested in plaintiffs'

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 6

 1   first request for documents issued in March of 2016.  While

 2   defendants have produced over 110,000 pages over the last

 3   eight weeks since the filing of our expert report, they have

 4   generally refused to produce financial statements or the

 5   contact information for au pairs or host families.  The

 6   au pair and host family issue is the subject of tomorrow's

 7   hearing.  This informal discovery conference is to discuss

 8   the production of financial statements.  I would note, as

 9   you've already discerned, that this dispute is only brought

10   against a subset of defendants.  The others either agreed to

11   produce their financial statements or publicly filed form 990

12   with the IRS which detailed their costs and expenses.

13           As Judge Arguello has already noted, plaintiffs

14   have circumstantial evidence of a viable economic theory of

15   collusion.  And defendants' profits are evidence of the

16   alleged collusion.  The information is unquestionably

17   relevant to plaintiffs' claims.  It is unquestionably in

18   defendants' possession and control.  And it is unquestionably

19   easily produced.  Defendants argue that the information is

20   sensitive, however, financial statements are always sensitive

21   and are regularly produced in litigation where that

22   information is relevant, particularly antitrust cases.  That

23   is true in cases where there is no protective order in place.

24   And defendants have stated no reason why in this case the

25   protective order would not adequately protect the

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 7

 1  confidentiality of the information.  They have offered

 2  several compromises in lieu of producing the financial

 3  statements in their possession and control, including

 4  offering to affirm the amount of revenue that they derived in

 5  a given year.  However, revenues do not equal profits.

 6  Profits means revenue offset by costs and expenses.  And

 7  plaintiffs have no way of determining that without looking at

 8  defendants' financial statements.

 9          It is also important to note that this is a case

10  where punitive damages have been requested.  And the

11  financial condition of defendants is discoverable as relevant

12  to the issue of punitive damages generally, but particularly

13  in cases where fraud is alleged as it is here.

14          THE COURT:  All right.  Who -- who is the primary

15  person that would like to speak first for defendants?

16          MR. MACRI:  Your Honor, this is Steve -- Steve

17  Macri.  And I'm responding on behalf of all defendants with

18  the exception of A.P.E.X. and 20/20 that are involved in this

19  matter.

20          THE COURT:  All right.  Go ahead.

21          MR. MACRI:  As a preliminary point -- thank you,

22  Your Honor.  As a preliminary point, I would like to say that

23  the -- the requests for financial information has been made

24  also in the 30(b)(6) notices as well.  So just to put that on

25  the radar as being another area of potential objection and

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 8

1    dispute and/or -- between these specific parties.

2              In the first instance it's inarguable that

3    financial information demanded from the defendants is not

4    public.  And it is competitive and confidential business

5    information.  None of the defendants in this group are

6    required to publicly file or disclose tax or financial

7    information.  In the case of AIFS, the Au Pair in America

8    Program, my -- my specific client, APIA, maintains

9    consolidated financial statements for six varied and distinct

10   programs, and does not maintain isolated financial statements

11   reflecting specific program expenses or revenues.

12             In -- in response to the second interrogatory,

13   Your Honor, the defendants have already provided information

14   and data which enabled the plaintiffs largely to calculate

15   each defendants' year by year program revenues, although some

16   of the defendants provide discounts of various degrees and --

17   and various matters.

18             Specifically, Your Honor, with respect to the

19   contention that profitability is evidence of collusion, more

20   than half of the defendants in this action, not just the

21   defendants involved in this specific motion, are

22   not-for-profit entities and do not make profits.  The

23   question as to whether an entity makes a profit is not

24   indicative of their legal behavior.  The -- the fact as to

25   whether an entity lost money doesn't mean that that entity

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 9

 1   complied with the law because it lost money.  So we don't see

 2   relevancy and nexus between profitability and illegality in

 3   this specific case or in the general instance.

 4           With respect to the punitive damage claim, Your

 5   Honor, to the extent it is permitted, plaintiffs are seeking

 6   all historic evidence of profitability.  To the extent

 7   information is relevant for the punitive damage claim, it's

 8   the -- it's the question as to the net worth and/or the

 9   profitability of the defendants at the time of the award, not

10   throughout all of history.  If the punitive damage claim

11   survives and continues to be viable, then it is a question of

12   "when" rather than "whether."  Then the precedent establishes

13   it's a question that should be disclosed post discovery,

14   certainly post dispositive motions under the case law -- some

15   of the case law that we have reviewed with respect to the

16   argument today.

17           And there's -- in our -- in our instance -- the

18   last instance Ms. Smalls referenced with respect to why the

19   protective order is insufficient, we believe that there's a

20   very, very high risk of inadvertent disclosure of

21   confidential information.  At the case in point, during the

22   provision of the preliminary expert reports, the initial

23   disclosure of expert reports, plaintiffs' counsel did not

24   mark those as highly confidential attorney's eyes only.  And

25   there was, in fact, inadvertent disclosure which de- -- which

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 10

```
 1   defendants' counsel had to cure after that inadvertent
 2   disclosure.  By our count there's approximately 80 attorneys
 3   who have entered appearances in this matter.  So the
 4   disclosure of this matter is not akin to the case law
 5   precedent that we have reviewed on this where it is to one or
 6   two individual people, an in-house counsel and the out -- and
 7   the external counsel who's handling a particular matter is
 8   usually the case in point.  So to the extent that there is a
 9   disclosure, the current protective order is insufficient to
10   protect the interest of the clients.
11           THE COURT:  Well, I don't -- I -- I don't think
12   the number of attorneys has anything to do with it.  I think
13   that it's unusual to ever have a case that has 80 attorneys.
14   You know, that just doesn't happen very often.  But that
15   doesn't -- I mean, it may just mean, statistically speaking,
16   that there might be more chance of inadvertent disclosure.
17   But I don't really think that -- and I don't know if we could
18   ever test it.  But it doesn't seem to me like that even
19   statistically that your -- your suspicions would be borne out
20   because attorneys can lose their licenses to practice law,
21   and feed their families, as well as themselves if they run
22   around disclosing confidential documents.  I mean, they're
23   not supposed to.  So it's been my experience that it doesn't
24   happen very often.  And, of course, it does sometimes, but I
25   think it happens rather seldom with attorney's eyes only,
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 11

 1   although I'm not sure that this qualifies for attorney's eyes

 2   only.  But, you know, you can -- under your protective order

 3   you can mark it however you want.  But I do think that the

 4   plaintiffs are entitled to the financials.

 5            Now, it -- I understand what you're saying, that

 6   you run other programs and so can't really parse out this

 7   one.  But a couple of -- a couple of questions in a 30(b)(6)

 8   deposition would probably take care of that like What percent

 9   is the au pair program of your overall business?  And if it's

10   20, you know, then you divide things by 5, right?  You know,

11   me -- it's -- I think you -- you have to give them the

12   financials.  And I think you can protect them however you

13   want to under your protective order, but the financial

14   information is part of the case.

15            MS. SMALLS:  Your Honor, this is Dawn Smalls.  If

16   I can just respond to both your comments and Mr. Macri's

17   argument around financial documents encompassing more than

18   just the au pair program.  You know, plaintiffs would argue

19   that in those cases we still need to see the entire picture

20   because -- to compare apples to apples.  Whether there be

21   administrative costs that may be centrally located or

22   allocated within a financial statement versus allocated

23   specifically to the au pair program, if we were to compare

24   that with another defendant that only did the au pair program

25   specifically, to do apples to apples we would need a

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 12

```
 1    comparison of how those administrative costs are actually
 2    allocated which may not be apparent in an au pair only
 3    financial statement from an entity that had six different
 4    programs.  You know, their argument about the
 5    interrogatories, they've offered that we can, quote, unquote,
 6    back into what the revenues are.  The interrogatories he
 7    refers to actually requested the amount of sponsor -- the
 8    amount that was charged for sponsor fees.  But that's not
 9    necessarily the sum total of revenue.  And obviously does not
10    illuminate anything with respect to costs and -- and expenses
11    which would lead to the ultimate piece of information that
12    we're looking at which is profits.
13            And just, lastly, to address his -- his comment
14    about the inadvertent risk of disclosure, I -- I may be
15    mistaken, but I think what he's referring to is the filing of
16    our expert reports.  And I would just note, and we will raise
17    this at some point in time, but everything in this case --
18    you know, plaintiffs dispute defendants' designations.
19    Everything is confidential or highly confidential with -- for
20    things that are -- are some- -- somewhat mysterious to
21    plaintiffs.  And in the filing of our expert reports there
22    was -- in the actual expert report defendants pointed out
23    that it built on and incorporated some information that they
24    had designated highly confidential.  We conceded that point.
25    We -- and reserved our objection to challenge the -- the
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 13

 1   designation because we disagreed with that.  But -- and then

 2   they asked for clarification that -- and -- and that

 3   clarification was sent, I think, within hours of the

 4   submission of our expert report.  And they asked for a

 5   clarification of whether we had shared the information or the

 6   expert report with any of our plaintiffs.  So using that --

 7   and which we clarified we had not.  So using that as an

 8   inadvertent disclosure of an example of how things can go

 9   awry and, you know, their financial doc- -- statements might,

10   you know, inadvertently be shared I think is a little bit

11   inapposite to what we're talking about here.

12           MR. STONE:  Your Honor, this is Larry Stone.  When

13   it's an appropriate time, I'd like to make some comments with

14   regard to our two clients, A.P.E.X. and 20/20.

15           THE COURT:  Yes.  I was going to ask if you -- you

16   were exempted from all of the defendants, but I didn't know

17   whether that was because you -- you didn't have a horse in

18   the race or what.  So go ahead, Mr. Stone.

19           MR. STONE:  Just -- thank you, Your Honor.  Just

20   -- our two clients, A.P.E.X. and 20/20, are u- -- are unique

21   among the sponsors because our business model is to focus on

22   children with special needs and host families that have

23   children with special needs.  We then -- when we -- a host

24   family contacts us, we attempt to find a -- an au pair that

25   fits the bill for that child's special needs, whether that be

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 14

```
 1   a nurse, a therapist, a teacher.  So we are -- we're
 2   placing -- and our whole focus of our business is on placing
 3   what are called "professional au pairs."  And because of
 4   their additional experience, it warrants a higher stipend.
 5   And, in fact, more than 95 percent of the au pairs that we
 6   have placed are -- have been placed as professional au pairs
 7   at the rate of $250 per week for a stipend or more.
 8            And so with regard to our financial statements,
 9   they are not going to demonstrate -- and, in fact, that
10   95 percent of our au pairs, plaintiffs' counsel has agreed
11   are not part of the punitive class on the antitrust class
12   action against the antitrust -- asserted in the lawsuit.
13   They're only claiming that the -- the remaining 5 percent of
14   the au pairs that got placed as standard au pairs or regular
15   au pairs are part of the punitive class, which because our
16   financial statements are merged and they -- they don't
17   distinguish the revenues or expenses between placement of a
18   professional au pair or a standard au pair, this is not going
19   to establish anything with regard to collusion, with regard
20   to whether we -- we entered into some antitrust conspiracy
21   with the other defendants because, in fact, 95 percent of our
22   au pairs are not even -- you know, they're not the type that
23   they're making claim against.  And similarly, with regard to
24   the fees, Your Honor, the -- the administrative costs that
25   Ms. Smalls is speaking about, that complicates the financial
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 15

1  statements as well because the -- the administrative cost to

2  place a professional au pair are twice as much as we charge

3  for standard au pairs.  Professional au pairs are not part of

4  the class.  And so that's also merged with our financial

5  statements.  And getting the financial statements is not

6  going to advance this one iota towards proving any kind of

7  collusion on the part of our clients with the other -- with

8  the other sponsors.

9         With regard to her argument about punitive

10  damages, there's not a punitive damage claim against our

11  clients.  That's only -- the punitive damage claim only

12  attaches to the tort claims asserted against the FLSA

13  defendants, as -- as I understand.

14         So, Your Honor, I think that this is just a ruse

15  to get -- because it's not going to establish -- neither for

16  us and the other defendants.  This is just a ruse to

17  determine the profitability and -- of the large sponsors so

18  that they can use that to their best advantage going forward.

19  This is not going to establish anything that they're

20  attempting to accomplish here.  Thank you.

21         MS. SMALLS:  Your Honor --

22         THE COURT:  Yes.

23         MR. MACRI:  Your Honor -- Your Honor, if I -- if I

24  might have an opportunity to respond to Ms. Smalls' secondary

25  comments, and then ask a question, please.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 16

```
 1              THE COURT:  Yes.  Go ahead, Mr. Macri.

 2              MR. MACRI:  Thank you.  Thank you very much.

 3   Rather than reiterating everything, our reading of the case

 4   law on -- to the extent that the disclosure is going to be

 5   compelled from the comments that I've heard Your Honor make

 6   thus far, our -- our question is to when because the case

 7   law, although there is some split among it, there is

 8   significant authority both within the district and within the

 9   circuit that says that the disclosure is not required until

10   subsequent to dispositive motions pretrial.

11              THE COURT:  What's the -- what's the --

12              MS. SMALLS:  Your Honor, the --

13              THE COURT:  What's the rationale for that, do you

14   think, Mr. Macri?

15              MR. MACRI:  The rat- -- the rationale has to be a

16   surviving claim or punitive damages.

17              THE COURT:  Okay.

18              MR. MACRI:  That's -- that's the stated authority

19   of the -- of the judicial authority that has determined this.

20   And there's significant authority, Your Honor.

21              MS. SMALLS:  Your Honor, that's -- that's only

22   with respect -- I don't know what case law he's referring to.

23   But he -- he just limited it to his comments to punitive

24   damages.  The core of our argument is that this is critical

25   evidence in establishing a core element of our claims with
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 17

 1    respect to the -- the antitrust claims and the alleged

 2    collusion.

 3              MR. MACRI:  How so if -- how -- if the defendants

 4    don't make profits?  How so, Dawn?  Give some law on that

 5    argument.

 6              MS. SMALLS:  Well, your revenue -- I mean, whether

 7    you want to use the word -- profit means whether you're in

 8    the black or in the red.  So whether you're a nonprofit or a

 9    for-profit, the information about whether you are making

10    money or coming out ahead or not is -- is what I am terming

11    "profit."  So if your cost -- if you're losing money on the

12    au pair program versus making money on the au pair program,

13    that is still very much relevant to our claims,

14    notwithstanding the defendants' nonprofit status.

15              MR. MACRI:  A not-for-profit operates on a zero

16    sum budget.  It's -- it's not supposed to have losses.  And

17    it's not supposed to have profits.  It's supposed to

18    break-even within the requirements of the statutory authority

19    of the jurisdiction and the tax code with- -- within a very

20    narrow margin.  So it's supposed to operate at a zero sum

21    margin.  So there will be neither losses nor profits for a

22    standard not-for-profit corporation.

23              MS. SMALLS:  Overall --

24              MR. MACRI:  So I'm still -- I'm still not seeing

25    how our purported collusion with nonprofits is evidence of --

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 18

```
 1   where some are profitable and some must operate at a zero sum

 2   budget, how is that evidence of anything with respect to

 3   collusion?

 4           MS. SMALLS:  Well, let's just take AIFS.

 5   You've -- you've already represented to the Court that you

 6   have six different programs all of which may not be a zero

 7   sum proposition.  The au pair program --

 8           MR. MACRI:  I'm not indicating -- Dawn, I -- my

 9   client is -- is a for-profit entity.  I'm not contending

10   that.  You're contending that my client is in -- in collusion

11   with other clients who have a business objective to

12   break-even, who have a business obligation to break-even.

13           MS. SMALLS:  No.  I -- what I'm saying is -- I

14   mean, we -- Judge Arguello has already said that the --

15   and -- and you're -- you're parsing the definition of

16   "profit."  But let's just use the amount -- the difference

17   between what it costs to administer the au pair program and

18   then the amount above that that defendants receive could be

19   evidence of alleged collusion.  I'm using the word "profit."

20   So --

21           MR. MACRI:  Dawn, that difference must be zero for

22   all not-for-profit sponsors.

23           MS. SMALLS:  That's not true where there are --

24   are several programs.

25           MR. MACRI:  It -- it must -- it must be true under
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 19

```
 1   law otherwise they're not -- they're -- they -- they -- they
 2   lose their status as a not-for-profit.
 3              THE COURT:  Okay.  Counsel, Counsel --
 4              MR. MACRI:  It's a question of law.
 5              MS. SMALLS:  They're --
 6              THE COURT:  Counsel, you're kind of leaving the
 7   Court out of this now and arguing with each other.  And, you
 8   know, what that usually tells me is that this is something
 9   that's going to have to be briefed and ruled on because I
10   don't see compromise here which is kind of the point of an
11   informal conference is to try to work out some kind of an
12   agreement that's acceptable to everybody, and do, you know,
13   give some but not all.  And this seems like kind of a yes or
14   no issue for -- at least for the parties that are here on the
15   phone and being represented by Mr. Macri.
16              I -- I've already told you that -- that my
17   position is that financials are, in a case like this, usually
18   quite important and should be produced.  And you certainly
19   have the right to put them under some kind of protective
20   order.  I don't think a company's financial information, if
21   it's not a publicly traded company, should be plastered all
22   over the place just because they get sued.  So I would be
23   inclined to accept a confidential designation, although I --
24   I really don't think that -- that this rises to the level of
25   attorney's eyes only, but maybe you do.  And if you do,
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 20

```
 1   that's fine.  That's another argument for another day.  But I
 2   do think that's the way it should go.
 3             So if -- for you defendants who believe that you
 4   should not have to do that, your job, should you choose to
 5   accept it, is to convince me otherwise.  And generally the
 6   way to do that would be with law or, for instance, in
 7   Mr. Stone's case, convincing me that your two people are
 8   outside of the realm of a normal case.  And it -- for your
 9   two, it really isn't practical or reasonable, and so why
10   should they could do it?  And I'm happy to read the briefing
11   on this and -- and set a hearing and have a ruling.  But I --
12   I'm not happy to sit here and listen to you argue because I
13   think you should do that outside of my presence.  Okay?
14             MS. SMALLS:  Yes, Your Honor.
15             MR. MACRI:  Yes, Your Honor.
16             THE COURT:  All right.  So sorry that it's not
17   very helpful to you today to -- to have had this, but I think
18   at least you kind of know where to take the briefing if
19   you -- if you want to brief it out.  Okay?  And I suppose
20   I'll see you --
21             MR. MACRI:  Okay.  So (inaudible).
22             THE COURT:  I'll -- I'll see and hear from most of
23   you tomorrow, right?
24             MR. MACRI:  From that, Your Honor, are we going to
25   establish a schedule for briefing the motion to compel, and
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 21

1    then our response?

2            THE COURT:  Well, is there a reason -- is there

3    any reason to expedite it at this point, or can it just be

4    done in the normal course?

5            MS. SMALLS:  (Inaudible.)

6            MR. MACRI:  Normal course.

7            MS. SMALLS:  Plaintiffs would request expedited

8    briefing.  The deadlines are still the deadlines.  And as

9    Your Honor already noted, this is information that, you know,

10   plaintiffs have requested and are entitled to.  We've

11   requested it for over a year just as -- as the dispute over

12   au pair and host family information, you know.  No fact

13   discovery.  And the deadlines are the deadlines.  And we've

14   already asked for an extension, and want to resolve this, as

15   well as the other issues stemming from our first request

16   for -- of documents from over a year ago are addressed, as

17   expeditiously as possible.

18           THE COURT:  O- --

19           MR. MACRI:  Your Honor, over a year ago we

20   responded to those requests and raised our objections.  And

21   plaintiffs did nothing in response to that until confronted

22   with the current deadline which they now seek to have altered

23   and/or an expeditious resolution of this motion.  So to the

24   extent that there was untimely processing of this or we're

25   bumping up against deadlines, that is not the fault of

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 22

1  defendant.  It's the prerogative of plaintiffs to not respond

2  to the objections raised by the defendants in a very timely

3  manner in response to the original request.

4          MS. SMALLS:  Your Honor, I mean --

5          THE COURT:  All right.  So, Ms. -- Ms. Smalls,

6  when -- when do you think --

7          MS. SMALLS:  Yes.

8          THE COURT:  -- you can file the motion?  I -- I

9  assume you want to file the motion, right?  A motion to

10 compel?

11         MS. SMALLS:  Yes.

12         THE COURT:  All right.

13         MS. SMALLS:  We can have it filed by end of the

14 day Monday.

15         THE COURT:  All right.  So if it's filed on the

16 13th, let's have responses -- how about the 27th, which is

17 two weeks?  So it's 14 days.  And it gives you a couple of

18 weekends in there too.  Does that work?

19         MR. MACRI:  That's fine, Your Honor.

20         THE COURT:  Okay.  And then a reply we'll make due

21 on the 3rd.  That's -- that's one week for a reply.  Do you

22 think that's enough?

23         MS. SMALLS:  Yes, Your Honor.

24         THE COURT:  Okay.  So it will be briefed out on

25 the 3rd.  So I hate to set a hearing on it yet.  I'd like to

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery Conference
March 09, 2017

Page 23

```
 1   look and see what the briefing says because some of these
 2   things, just as a legal matter, we can -- we can do without
 3   briefing because I've heard from both of you.  Well, from
 4   three of you now.  So I -- I understand what the argument is.
 5   You know, I just would like to see some of the case law on
 6   it, and why you think, you know, certain cases apply to your
 7   case.  So I think that we won't set a hearing right now.  But
 8   I'll let you know if we need to set one after I see the
 9   briefing.  Does that work?
10           MS. SMALLS:  Sounds great.  Thank you.
11           MR. MACRI:  Thank you for your time, Your Honor.
12           THE COURT:  All right.  Everyone, I'll talk to you
13   tomorrow then.  Court will be in recess.
14           MS. SMALLS:  Okay.
15           (Whereupon, the within hearing was then in
16   conclusion at 4:10 p.m.)
17
18           I certify that the foregoing is a correct
19   transcript, to the best of my knowledge and belief (pursuant
20   to the quality of the recording) from the record of
21   proceedings in the above-entitled matter.
22
23
24   /s/ Laurel S. Tubbs                    April 5, 2017
25   Signature of Transcriber               Date
```