1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLORADO

3    14-cv-03074-CMA-KMT

4    _____

5    JOHANA PAOLA BELTRAN, et al.,

6          Plaintiffs,

7    vs.

8    INTEREXCHANGE, INC., et al.,

9          Defendants.

10   _____

11          Proceedings before MAGISTRATE JUDGE KATHLEEN M.

12   TAFOYA, United States District Court for the District of

13   Colorado, commencing at 9:10 a.m., May 11, 2017, in the

14   United States Courthouse, Denver, Colorado.

15   _____

16          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18   _____

19                       APPEARANCES

20          DAWN SMALLS and JOSHUA LIBLING, Attorneys at Law,

21   appearing for plaintiffs.

22          BROOKE COLAIZZI, Attorney at Law, appearing for

23   defendant InterExchange, Inc.

24   _____

25   AUDIO RECORDED TELEPHONIC INFORMAL DISCOVERY/STATUS CONFERENCE

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 2

```
 1                    APPEARANCES (Continued)

 2              MARTHA FITZGERALD, Attorney at Law, appearing for

 3    defendant EuRaupair InterCultural Child Care Program.

 4              JONATHAN BENDER and ADAM HUBBARD, Attorneys at Law,

 5    appearing for defendant Cultural Homestay International.

 6              JOAN LUKEY and JUSTIN WOLOSZ, Attorneys at Law,

 7    appearing for defendant Cultural Care, Inc.

 8              PEGGY KOZAL, Attorney at Law, appearing for

 9    defendant AuPairCare, Inc.

10              KATHRYN REILLY, Attorney at Law, appearing for

11    defendants Au Pair International, Inc., Agent Au Pair and

12    GoAuPair.

13              LAWRENCE LEE, Attorney at Law, appearing for

14    defendant APF Global Exchange, NFP.

15              ROBERT TUCKER, Attorney at Law, appearing for

16    defendant American Institute for Foreign Exchange, d/b/a Au

17    Pair in America.

18              MARTIN ESTEVO, Attorney at Law, appearing for

19    defendant GreatAuPair, LLC.

20              KATHLEEN CRAIGMILE, Attorney at Law, appearing for

21    defendant A.P.E.X., American Professional Exchange.

22                    P R O C E E D I N G S

23              (Whereupon, the within electronically recorded

24    proceedings are herein transcribed, pursuant to order of

25    counsel.)
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 3

 1          THE COURT:  Good morning, everyone.  This is Judge

 2   Tafoya.  We are here today in Case Number 14-cv-3074.  This

 3   is Johana Beltran, et al., versus a number of defendants.

 4          I'm not going to read the defendants yet, because

 5   I'll ask you to enter your appearances for the record and so

 6   I'll read them then.

 7          So, first of all, let me ask for appearances for

 8   counsel for plaintiffs.

 9          MS. SMALLS:  Your Honor, this is Dawn Smalls from

10   Boies, Schiller & Flexner here on behalf of the plaintiffs.

11          MR. LIBLING:  Good morning, Your Honor.  This is

12   Joshua Libling also with Boies, Schiller & Flexner on behalf

13   of the plaintiffs.

14          THE COURT:  All right.  And let's go down the list

15   then for defendants.  InterExchange, Inc.

16          MS. COLAIZZI:  Brooke Colaizzi from Sherman &

17   Howard on behalf of InterExchange attending in a spectator

18   capacity.

19          THE COURT:  All right.  And USAAupair -- is it

20   US -- I'm sorry, it's USAuPair.  Is anyone appearing for that

21   entity?  No?  Okay.  And then GreatAuPair, LLC.

22          MR. ESTEVO:  Good morning, Your Honor.  This is

23   Martin Estevo for GreatAuPair.

24          THE COURT:  And for Expert Group International?  No

25   one is appearing for them either, okay.  How about EuRaupair

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 4

 1    InterCultural Child Care.

 2            MS. FITZGERALD:  Good morning, Your Honor.  Martha

 3    Fitzgerald for EuRaupair.

 4            THE COURT:  And Cultural Homestay.

 5            MR. BENDER:  Good morning, Your Honor.  It's Jon

 6    Bender and Adam Hubbard from Holland & Hart for Cultural

 7    Homestay International.

 8            THE COURT:  All right, thank you.

 9            How about Cultural Care, Inc?

10            MS. LUKEY:  Good morning, Your Honor.  Joan Lukey

11    and Justin Wolosz for Cultural Care, Inc.  Spectators on the

12    first count, participants on the second.

13            THE COURT:  Perhaps this begs the question -- and

14    I'm marking my spot here, so I don't -- I'm not ignoring the

15    rest of you.  But did everyone understand that we're having a

16    status conference first with all the people that are

17    involved -- I think the issue there was giving up the contact

18    information for all the au pairs who are involved in only the

19    antitrust claims.

20            Did anyone miss that that you're aware of?  Okay.

21    Not hearing anything, I'll assume everybody knew that.

22            All right.  So let's go forward on AuPairCare.

23            MS. KOZAL:  Good morning, Your Honor.  This is

24    Peggy Kozal on behalf of AuPairCare.  I'm also attending for

25    the limited purpose of observing.  I'm not one of the

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 5

 1   antitrust-only defendants, so to speak.

 2            THE COURT:  All right.  Au Pair International?

 3            MS. REILLY:  Good morning, Your Honor.  This is

 4   Katie Reilly on behalf of Au Pair International, Agent Au

 5   Pair and GoAuPair.

 6            THE COURT:  Okay.  And then let's see, is

 7   Mr. Wolosz, are you there?

 8            MR. WOLOSZ:  I am, Your Honor.  I'm co-counsel with

 9   Ms. Lukey and we are here on behalf of Cultural Care, but

10   just observing with respect to this first conference.

11            THE COURT:  Okay.  Let's see, and then how about

12   APF Global Exchange?

13            MR. LEE:  Lawrence Lee on behalf of APF Global

14   Exchange, et al., of Fisher & Phillips, Your Honor.  Good

15   morning.

16            THE COURT:  Good morning.  American Institute for

17   Foreign Study d/b/a Au Pair in America, is anyone appearing

18   for them?  No?  Okay.

19            How about A.P.E.X American Professional Exchange?

20            MS. CRAIGMILE:  Good morning, Your Honor.  This is

21   Kathleen Craigmile appearing on behalf of A.P.E.X American

22   Professional Exchange, also 20/20 Care Exchange.

23            THE COURT:  According to my list, that's everyone.

24   Is there anyone on the phone who I didn't talk to that needs

25   to enter an appearance?  All right.  Hearing nothing, we'll

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 6

 1  go forward.

 2          So I'm proposing -- I'm assuming that you may have

 3  a spokesperson, so let me know who that is, but I'm thinking

 4  that we should go forward first on the status conference as

 5  far as the au pair contact information.

 6          Who would like to speak to that?

 7          MR. LIBLING:  Your Honor, this is Joshua Libling

 8  from Boies, Schiller on behalf of the plaintiff.  I can speak

 9  to that issue on our behalf.

10          THE COURT:  All right.

11          MR. LIBLING:  So just to set the stage here, back

12  in January plaintiffs moved to compel au pair and host family

13  information.  Formally it was defined interrogatories and

14  sponsors requests for document production, but in substance

15  it was au pair and host family contact information.  That

16  motion was fully briefed.

17          We then had an argument before Your Honor on March

18  10.  And at that motion -- and at that motion hearing and

19  then at a subsequent -- in a subsequent order, Your Honor

20  granted the motion in part and denied it in part.  You

21  granted it as to host family information and denied it as to

22  au pair contact information.

23          At the hearing, Your Honor made it clear that the

24  Court was denying the portion of the motion to (inaudible)

25  seeking au pair information out of a concern that there is a

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 7

1    reason that Judge Arguello had not yet ruled as what was a

2    then pending motion for a conditional class certification.

3            After that hearing on March 31, Judge Arguello did

4    grant plaintiffs' motion for conditional certification.  And

5    after that order came in, plaintiffs wrote to defendants

6    asking them whether this order changed their position on the

7    production of au pair contact information.

8            And here I should note that Judge Arguello's order,

9    as it has been amended, deals with au pair contact

10    information from the FLSA defendants and we are not here to

11    discuss, or not seeking at this time any additional contact

12    information from the FLSA defendant.  But Judge Arguello's

13    order did not cover information that we sought from the

14    non-FLSA defendant because they weren't relevant to the

15    motion for conditional class certification.

16            When we wrote to defendants and plaintiffs wrote to

17    defendants, we pointed out that at the March 10 conference

18    Your Honor had said that if Judge Arguello certified the

19    collective action, quote, you better be prepared to give out

20    the au pair list, close quote, and ask them whether they

21    would, in fact, produce the contact information that we

22    sought.

23            We were informed that they would not and that they

24    were standing on the objection.  To my knowledge, no one has

25    made any argument that was not contained in the original

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 8

1   briefing.

2           So what plaintiffs are seeking is that the original

3   motion that we briefed back in January and argued in March be

4   put back on the docket for the purposes of the au pair

5   contact information because the reason that the Court gave

6   for denying that portion of the motion is no longer

7   applicable, and we don't see a need for further briefing or

8   argument in addition to what has already happened.

9           So I am, of course, prepared to address our reasons

10  now if that would help, Your Honor, and we would just -- we

11  would just seek a ruling on au pair contact information.

12          THE COURT:  All right.  Who wants to speak either

13  first or on behalf of the antitrust defendants?  As I

14  understand it -- perhaps I should direct this at plaintiff

15  first before I let you off the hook.

16          I believe that there are nine defendants who are --

17  out of the total, who are not FLSA defendants and that you've

18  got a total of 15, so I think that's the way it breaks out.

19          And the way I understood the complaint -- and I

20  will admit to not going back and checking my facts; this is

21  kind of from memory -- but I thought that all of the

22  departments were antitrust defendants and then only the six

23  were antitrust and FLSA.

24          Is there anything wrong about what I just said?

25          MR. LIBLING:  I don't believe so.  I believe you

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 9

1  have it right.  Not all of the defendants are FLSA

2  defendants, but all of them are antitrust defendants.  And we

3  are only here seeking additional production from the ones who

4  are not FLSA defendants.

5          THE COURT:  All right.  So who wants to speak first

6  for the defendants?

7          MR. BENDER:  Your Honor, this is Jon Bender for

8  Cultural Homestay International.  And I'm going to address

9  the issue, at least first, for the Court on this issue.

10         THE COURT:  All right.

11         MR. BENDER:  We generally agree with most of what

12  plaintiffs' counsel has said with respect to setting a stage,

13  with the exception of the reason underlying the Court's

14  order.  I'll get to that in a moment.  But we do agree that

15  this is a relatively straightforward issue; that it has been

16  briefed and argued, and, in fact, decided.  The requested

17  relief has been denied with respect to au pair contact

18  information.

19         The antitrust-only defendants have followed the

20  Court's order that was issued after the briefing and the

21  argument on the motion to compel.  The Court did, of course,

22  order the production of host family contact information; all

23  defendants, including the antitrust-only defendants complied.

24  And the Court, of course, additionally recognized that if

25  Judge Arguello granted the conditional certification motion,

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 10

1    then the FLSA defendants should be ready to produce the

2    contact information for au pairs; but otherwise, the motion

3    to compel was denied in all other respects.

4           So as we -- we reviewed the transcript and the

5    Court's decision, underlying the decision, as we understand

6    it, was a distinction between the au pairs and the host

7    family.  Of course, au pairs are potential class members,

8    whereas the host families are not.

9           There was also a recognition, of course, in the

10   hearing on March 10 that the antitrust claim and the FLSA

11   claim should be treated differently, if for no other reason

12   than the conditional collective action certification process

13   is entirely different, it's a different standard, it's on a

14   different timeline.

15          That conditional collective action has been

16   certified, of course.  The briefing on the Rule 23

17   certification, of course, hasn't even begun and will not

18   close until mid-July.

19          So the antitrust-only defendants proceeded with the

20   understanding that production of the au pair contact

21   information was not required because no Rule 23 class has

22   been certified.  And because of that, we do stand on our --

23   on our arguments that have been briefed, which essentially

24   are twofold.

25          First, it's the disclosure of this information is

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 11

1   premature and we cited cases in our papers for that

2   proposition.

3            And secondly, we have concerns related to

4   confidentiality and we think that sort of an uninvited

5   communication precertification is inappropriate at this time.

6            THE COURT:  All right.  Anyone else want to speak

7   on this issue for defendants or any one of the defendants?

8   No?  All right.

9            Well, Mr. Libling, do you want to go ahead and

10  respond to that?

11           MR. LIBLING:  Yes, Your Honor, thank you.

12           I think there are a couple of things that I want to

13  avoid too much arguing over what you meant and what you said,

14  because Your Honor probably knows what you meant better than

15  either of the parties.

16           I think that I accurately described what happened

17  at the hearing in terms of the reason that you gave for

18  denying the motion with respect to au pair contact

19  information, and I don't think there is any dispute and that

20  reasoning is no longer applicable.  So while it's true that

21  the motion was decided, I think the request to renew the

22  motion is timely and appropriate at this point.

23           On the substance, they certainly did cite some

24  cases saying that, under certain circumstances, it is not

25  appropriate to provide -- it is not appropriate to provide au

Page 12

1   pair contact information to au pair host families -- I mean

2   class members.  But all of the -- and this is all contained

3   in our briefing, but all of the case law is premised on the

4   idea that you are seeking the documents for notice purposes.

5              And we cited cases, again in our briefing, talking

6   about how when you are not seeking to provide notice of the

7   class in advance of certification, that you are actually

8   seeking merits discovery, which is what we are doing.  We're

9   seeking facts.  We want to do -- I mean, it's relevant for

10  class certification; but we are seeking discovery, true

11  discovery, not to provide notice.  Then that is granted when

12  the witnesses are important and they have relevant

13  information, just as they would be for any other -- any other

14  witness.

15             And so we believe that it is appropriate to seek

16  information from au pairs, not least of which because the

17  sponsors have taken the position that they cannot provide

18  information about what au pairs were actually paid.  And

19  because they have taken that position -- with which we

20  disagree, but it is their position and we need to prepare for

21  it.  Because they've taken that position, we need to reach

22  out to whoever might have information about what au pairs

23  were actually paid.  And, obviously, au pairs are one of the

24  groups that have information about what they were actually

25  paid.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 13

 1            At the hearing we had a back and forth of whether
 2    au pairs or host families was a better source of that
 3    information, and I don't think we need to repeat that now.
 4    But the point I would emphasize is that au pairs and host
 5    families have different kinds of information at their
 6    disposal and different sorts of record, and it is perfectly
 7    legitimate for us to seek what is inarguably relevant
 8    information from a source that has that relevant information
 9    when the defendants have said that they do not have that
10    information.  That's what we're trying to do.
11            THE COURT:  All right.  Well, let me tell all of
12    you that I did go back -- I did not read the transcript in
13    full, so if you -- if you wanted to refer me to any
14    particular spot -- I think you did that in your papers, but I
15    did look -- I glanced at it.  I, you know, kind of reviewed
16    it.  And then I did go back and read the parties' papers as
17    well.  And I looked at some of the cases that I really hadn't
18    particularly paid attention to before on strictly Rule 23
19    provision of your class members' contact information.
20            And I agree with plaintiff in this case that
21    primarily the cases deal with kind of a standard case where
22    there is a class claim alleged of one form or another and you
23    have only a Rule 23 class and the Court hasn't said that you
24    really have one yet.  And so why give up all of these names,
25    sometimes very voluminous records in some of these cases,

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 14

 1   when you haven't even decided if there really is a class or

 2   not under the factors?

 3         So they really do -- the objections to giving up

 4   all that information, which is again kind of the standard

 5   that you don't give up that information until after the class

 6   is certified, but the real reason is that it is for notice

 7   purposes.  It's to let people know that there is a class

 8   action out here and try to get the word out because obviously

 9   Rule 23 is an opt-in -- excuse me, an opt-out kind of

10   situation where an FLSA is an opt-in.  So you have to get

11   your class members out early to see who is in and not.  But

12   with a Rule 23, that's why the Court does things first.

13         And I'm putting this on the record.  I know all of

14   you know that.  But I did take another look at those cases to

15   make sure that I understood what was going on.  And one thing

16   that I saw that I really haven't paid a whole lot of

17   attention to before because, frankly, in my court any

18   attorney that appears in front of me gets the benefit of --

19   well, I don't think there is any doubt, but gets the benefit

20   of my belief that you're telling me the truth; that you're

21   trying to do the right thing.  And while everybody is

22   zealously representing their clients, my experience with most

23   attorneys is that we, because I'm one, too, obviously, are

24   trying to obey the law and do the right thing.  We're not

25   trying to be underhanded and go, you know, secretly meet with

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 15

1    class members, although, you know, it has happened and I've

2    seen it happen, but you get the benefit of me believing that

3    that is not what you're going to do.

4            So I haven't really looked for these negatives, but

5    I will tell you that one thing I did notice in all of the

6    parties' cases that I read was that Courts often mentioned

7    the problem of plaintiffs' counsel -- I'll use the word

8    "trolling," although that has some pretty negative

9    connotations, but basically trying to find new clients, find

10   new classes, new issues and new cases to file.

11           And so that popped up over and over and over again.

12   And this is not that case.  There is a limited number of

13   sponsors that were allowed to even participate in this

14   program by the government.

15           I believe, I'm not positive of this, but I thought

16   that all or almost all of them were part of this case, and

17   there just aren't a lot of other clients to get.  I mean,

18   this is a pretty unique situation with this particular kind

19   of program that has the state department involvement and all

20   that kind of thing, and there is just -- there is only so

21   many clients you can get out of this.

22           And if they were an au pair and they were here

23   under that program, they're part of this case.  So it's not

24   that danger that many courts recognize that I really discount

25   most of the time.  It just isn't even there in this case.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 16

 1              And then the other thing that I noticed -- and this

 2    is all in addition to, let me just say that I do understand

 3    that plaintiffs have merits-based reasons for wanting to see

 4    these au pairs and all of us know it.  I mean, that is a

 5    fact.  The sponsors have said they didn't pay the au pairs;

 6    that there is, you know, a minimum threshold that was

 7    explained to the host families, but that they have no way of

 8    knowing because they did not collect the information on who

 9    actually got what money, especially if it came in the terms

10    of tips or cash or whatever, but the only people that would

11    know that would be the host families and the au pairs.

12              And that was precisely why the Court gave up -- or

13    wanted you to give up the host family information because

14    that seemed to me to be the absolute best place to get the

15    real information about what they were paid, but it was argued

16    and I agree that au pairs also have that.

17              And while they may or may not keep good records,

18    they're people, like everybody else, and so some of them

19    probably kept excellent records of what they made and when

20    they got paid and, who knows, you know, until you explore?

21    But those -- those two groups of people are the only ones

22    apparently that really know.  The hosts know what they paid

23    them if they kept any records and the au pairs know what they

24    got.

25              So there is really important information that is

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 17

1   critical to the case in the hands of both of these groups.

2   But when we had our hearing last time, my feeling was with

3   Judge Arguello not ruling on the collective action yet, I was

4   not comfortable giving up the au pair information yet because

5   they are also in addition to these -- to being fact

6   witnesses, they're also members of a class, if there is a

7   class.

8              So I felt like without her ruling on either one of

9   those things, even an early certification of a collective,

10  that I just couldn't do that; that would be kind of usurping

11  her prerogative there.

12             But now she has ruled and she has done an amended

13  order, so I think it was -- it clarified the dates that I

14  believe some of you, at least, maybe all of you, called my

15  chambers about wanting to have a conference on that.  And so

16  that's now cleared up.

17             And what I have to look at is that there are six of

18  you who have given up all the au pair information now because

19  it's the FLSA, but it works both ways.  I mean, the au pairs

20  don't change just because the claim is the antitrust, instead

21  of the FLSA.  The au pairs and that information is the same.

22             And I see none of the dangers that everyone has

23  talked about in these cases of giving up that information

24  pre-Rule 23 certification, and I see a glaring unfairness in

25  the fact that six of the sponsors have had to do that, simply

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 18

 1   because they were charged in FLSA matters.  And that is

 2   usually -- and I may be wrong about this, so I'll admit that

 3   this is not a concrete fact, but I perceive that as being

 4   because you found plaintiffs, right?  There is some named

 5   plaintiffs from each of these groups and perhaps from the

 6   other groups named plaintiffs have not been found.

 7          So I think that the dangers that we've been talking

 8   about and the disparity between who has to give up what is

 9   now getting pretty glaring, especially in light of something

10   that has been argued to me repeatedly by the defendants; and

11   that is, that although you are sitting on the same side of

12   the table in this case, you are competitors and there is

13   competitive information out there.

14          And I don't think it's fair that six have to give

15   up everything and nine sit back and say, No, we're going to

16   wait until -- I mean, if I listen to you, the class

17   certification briefing isn't even done until July 19.  And

18   then there is time to have to review and rule on that, and I

19   don't know whether that will be Judge Arguello or me that

20   rules on that -- those briefs.  Probably Judge Arguello.  And

21   it could be, you know, several months down the line for that

22   too, and that's just wrong.

23          I mean, that's just not right, especially when the

24   au pairs are one of only two sets of witnesses that know the

25   issue of money.  And that's the whole case.  It's not the

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 19

 1   whole case, obviously, because collusion is the bigger part

 2   of the antitrust.  But until you know what they're paid, you

 3   know, you can't even say that they're colluding, because what

 4   if they're all paid vastly different amounts, right?  That's

 5   a very -- that would be a very good fact for defendants and

 6   not so good for plaintiffs.

 7           So I think we need to get the show on the road.  I

 8   hate to use those -- those little phrases when I see them in

 9   the transcript, I don't like them, but I think everybody

10   knows what's meant by them.  So I think we need to get things

11   underway.

12           The situation has changed since I last looked at

13   this very much so because of Judge Arguello's order and

14   amended order, and the fact that six of the defendants have

15   given up this information already under her order.

16           And I understand the different reason, there is a

17   collective there, but I don't -- I think that's an artificial

18   distinction at this point.

19           So I am going to reconsider that part of the order

20   and today's order will be that all of the remaining antitrust

21   defendants must give up au pair information within 14 days of

22   today's order.

23           And I'm going to read this just so it's in the

24   record, but I want all of you to know that I'm reading from

25   Judge Arguello's order at page 12, this is Document 539, so

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 20

1   there is no misunderstanding about where I'm getting this

2   information.

3           So what you need to provide within 14 days for the

4   remaining defendants is the names of all au pairs sponsored

5   by -- and her order says "the FLSA defendant," but I'm

6   substituting for that "sponsored defendant" -- at any time on

7   or after July 24, 2009, the au pair's last known address; the

8   au pair's home country address; any and all email addresses

9   associated with the au pair; any and all telephone numbers,

10  including cellular numbers, associated with the au pair; any

11  and all other contact information for the au pair, such as

12  Facebook ID, Twitter, Handle, Skype address or the like; and

13  the au pairs' dates of employment.

14          And I will tell you all that what I perceive dates

15  of employment is may affect the hearing that we're having

16  later; but dates of employment to me is how long the -- the

17  person was employed -- well, not employed -- was associated

18  with the sponsor defendant.  So I think that's -- to me,

19  that's pretty clear in her order; that the dates that the au

20  pair was associated with that particular sponsor is part of

21  it.

22          So that's the Court's order on the au pairs.

23          Any further thing we need to talk about on that?

24          Plaintiff?

25          MR. LIBLING:  Not from plaintiff.  Thank you, Your

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 21

 1    Honor.

 2            THE COURT:  All right.  Anyone -- Mr. Bender, I'll

 3    just call on you, since you made the argument, but any other

 4    defendant can speak up if you think you need to make a record

 5    on something.

 6            So Mr. Bender.

 7            MR. BENDER:  Thank you, Your Honor.

 8            I don't have anything else on the au pair contact

 9    information issue.  I did have one additional point after

10    others have a chance to weigh in if they want to on this

11    issue, but I would like to flag something else for the Court

12    before we move on.

13            THE COURT:  All right.  Anybody else from the

14    antitrust group that wants to say anything?  All right.

15            Hearing nothing then, Mr. Bender, go ahead.

16            MR. BENDER:  Thank you, Your Honor.

17            I figured that while several of us are on the call,

18    I wanted to -- to foreshadow an issue that will likely

19    require briefing before the Court, and it's related to the

20    host family survey that was circulated.  It was actually just

21    circulated, as far as we know, the evening of Tuesday, May 9,

22    so this week.  And we reviewed it.

23            There are significant problems with it from our

24    perspective, and I'm not here to argue it.  I simply wanted

25    to forecast there are some issues to come.  We're very

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 22

 1    concerned about it.

 2              We don't think that plaintiffs' counsel has

 3    complied with their 4.3 obligations, which were discussed at

 4    some length during the March 10 hearing.  Specifically,

 5    plaintiffs' counsel appeared disinterested on the survey when

 6    they're clearly not.  There is no disclosure of potential

 7    adversity.

 8              From our review, certain questions are biased.

 9    There is no inquiry, for example, into additional amounts

10    that could have been paid by host families, besides the

11    stipend.  And we think there are certain inaccuracies that

12    are a real problem and really call into question the fairness

13    of the survey and the validity of any information that

14    plaintiffs would collect.

15              So I don't mean to take a left turn during the

16    status conference.  I simply wanted to flag the issue for --

17    for further discussion.  We'll -- we'll meet and confer with

18    plaintiffs on this and we'll likely have to address by a

19    written motion.

20              THE COURT:  All right.  Plaintiffs' counsel, I know

21    you're probably itching to chime in, but I would rather not

22    hear anything on this until we get it a little bit more teed

23    up.  If you -- excuse me.  If you want to have a -- even an

24    informal conference over certain language, if you think that

25    there is any way the Court could kind of help compromise or

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 23

 1   give you some other thoughts.  I mean, there is an awful lot

 2   of very skilled attorneys in this case, so I'm not sure

 3   really what I could give you that you probably haven't

 4   already thought of; but I'm happy to do that if you want to

 5   submit to me after you make the -- you know, the appointment

 6   to have an informal conference for a change.

 7          I would like some submissions, if you want that

 8   kind of hearing and I would like to know -- I would like to

 9   see what plaintiffs propose as a survey, and I would also

10   like to see a red line of what defendants think might be more

11   appropriate so that I could see and maybe I can come up with

12   something that's in between or something.

13          So if you want that kind of hearing, rather than

14   just briefing in the dark, I'm happy to do that; but I do

15   need you to give me the versions that you like.  All right.

16   So I will leave it up to you, whether you want to call and

17   get an informal conference on that, okay.

18          MS. SMALLS:  Yes.  This is Dawn Smalls on behalf of

19   the plaintiffs.

20          I just want to clarify a couple of things.  First,

21   the survey is out.  It was sent, I believe, in the last 24 to

22   48 hours.  And so we are happy to submit to the Court what

23   was sent which plaintiffs conferred about internally,

24   conferred with the firm's general counsel to ensure that we

25   were acting in compliance with Rule 4.3.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 24

 1            And then second, just note as just a procedural

 2   point that certain of the defendants sent out communications

 3   to host families immediately after your order ordering host

 4   family contact information, some of which was in compliance

 5   with the guidance that you provided in the hearing and some

 6   of which we believe clearly was not.

 7            Plaintiffs followed procedure and called the clerk

 8   and raised the issue.  Your clerk advised us that because the

 9   communication was already sent, it would not be appropriate

10   for an informal discovery conference; but that it would be

11   appropriate for a motion, which he gave us license to file,

12   which plaintiffs have been holding, subject to getting all of

13   the communications that were sent by defendants.  We only

14   have a few that have been forwarded to us by host families

15   that received them.

16            So to the extent that there was an issue again, it

17   was fully discussed and -- internally and discussed with the

18   firm's general counsel to ensure full compliance with Rule

19   4.3.  But to the extent that there was a dispute regarding

20   our survey, or our communications with host families, this is

21   the first time that plaintiffs are hearing about it on the

22   phone with Your Honor, which, for many reasons, we find

23   grossly inappropriate and contrary to the local rules, but I

24   defer to you about the best way to handle that.

25            The guidance that we had been operating under was

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 25

1    that for communications that were sent, they are sent, and

2    so, therefore, the most appropriate way to proceed is to

3    submit something formally where you could see the actual --

4    you could see the actual communication at issue and make your

5    own judgment, rather than raising it for the fist time before

6    the Court today without consultation or notice to plaintiffs'

7    counsel.

8              THE COURT:  Well, let me say I'm sorry, I

9    misunderstood you, Mr. Bender.  I didn't -- I didn't

10   understand that the survey had already been sent.  I just --

11   I must have missed that in my selective listening or

12   something, but so I think the clerk is right.

13             I haven't actually talked to her about that issue,

14   but I think she's absolutely right.  If it has already been

15   sent, there is no compromise.  You know, that's the point of

16   an informal conference, is to have a compromise hearing

17   before you have to go briefing.  But once it's sent, if there

18   is some kind of violation, especially one that you think

19   might result in harm to you, the way to raise it is by a

20   motion.

21             So I'll withdraw my offer to do a compromise

22   hearing with you because there is no -- there is no reason to

23   now.  It has already been sent out.

24             So I agree also that you don't have to call me

25   again.  You can just file your motion.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 26

 1          And the same thing on the letters.  Those are
 2   already gone.  We talked about those.  I don't remember every
 3   detail of what we discussed about the letters, but I remember
 4   very clearly talking about them and what should be said and
 5   what probably shouldn't be said.
 6          And as all of you know, because of what I filed, I
 7   did get a call on one of those letters from one of the host
 8   family members, and so the -- that's kind of water under the
 9   bridge.  And so if you -- if you think it's harm to you to
10   some degree that needs to be addressed by the Court or
11   whatever, you can go ahead and file your motions on that,
12   too.
13          MR. BENDER:  Your Honor, this is Jon Bender.  Just
14   very briefly.  Thank you for that clarification.  That was
15   what I was seeking to clarify.
16          And just one final point.  We don't believe it's
17   improper to bring up an issue like this here.  This is not --
18   this is a status conference.  And we believed it was
19   appropriate, and still do believe that it's appropriate, to
20   give the Court the benefit of hearing what's going on in the
21   case.  And counsel is on the line and, you know, we'll --
22   we'll beseech what we think is an appropriate remedy on our
23   papers, but that's all I wanted to say on that.
24          THE COURT:  I mean, I think -- you know, we all
25   generally talk about consulting with one another first; but I

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 27

1   would say every day someone tells me something kind of off

2   the cuff in the middle of a hearing or a scheduling

3   conference or something that hasn't been brought up with the

4   other side, but I consider that just notice.

5          I don't think you're really trying to influence me.

6   And if you are, it probably isn't going to work, because,

7   frankly, something that's said kind of like this, I'll

8   remember that you may have said it, but I won't remember much

9   about it.  What I'm going to remember is what you submit in

10  the briefs.

11         So assuming that Judge Arguello would refer these

12  issues to me, which I think she probably would, you know, I'm

13  not influenced either way.  And I actually appreciate knowing

14  that things are coming down the line because when I do see

15  it, then I think, Oh, okay, that's what this is.

16         So let's leave it at that for now.  I'm not -- I

17  don't see anything improper about anything that all of you

18  have done today, and it is a status conference.

19         So are we ready to -- for some of you to drop off,

20  do you think, and go to the various issues?

21         I -- I looked at what my law clerk said was Issue

22  Number 1 and 2, and I suppose you have probably arranged your

23  schedules and everything on those.  And what she has put is

24  that plaintiff and Cultural Care will go first and then

25  second would be plaintiffs and AuPairCare and American

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 28

 1    Institute of Foreign Studies.

 2            Now, if it's all the same to you, it seems to me

 3    like the second issue would be faster to hear; but if you've

 4    made all your plans, based on hearing the one with Cultural

 5    Care first, that's fine with me, we can go that way.

 6            What do you think?  Plaintiff?

 7            MS. LUKEY:  This is Joan Lukey for Cultural Care.

 8    My only problem is that I have another meeting because I

 9    thought we were going earlier.  We got moved once because of

10    the status conference.  If it isn't too much of a problem for

11    the Court, I would appreciate it if we could go in the order

12    in which they were scheduled so I don't have to attempt to

13    rearrange the other meeting.

14            THE COURT:  Okay, that's fine.  That's what I was

15    afraid, is that you might have been counting on that order,

16    so I won't rearrange it.

17            What was your arrangement?  Did you all want to

18    drop off this call and then call back?  Was that the idea?

19    Or were people just going to hang up from this conference

20    call?

21            MS. SMALLS:  Your Honor, we're using the same

22    conference line, so I think for people -- the only two people

23    who are currently on the line that we have the issues for

24    informal discovery conferences are Cultural Care and

25    AuPairCare.  So even if we called back in, using the same

Page 29

1    number, so I would propose that the other defendants drop off

2    as the easiest way to proceed.

3            MR. BENDER:  Your Honor, this is Jon Bender.

4            We're fine with that.  That makes perfect sense.

5    And if that's acceptable to the Court, we're -- we're happy

6    to sign off and thank you for your time today.

7            THE COURT:  All right.  So anyone, except

8    AuPairCare and Cultural Care may drop off, if you want to.

9    If you don't want to, however, if you want to kind of just

10   sit as a monitor or whatever, that's fine also.  So don't

11   feel you have to drop off.

12           I don't think any of these are confidential;

13   however, if you're staying just to hear, is there a person

14   that is kind of sponsoring the call that would know who is

15   staying on the line?

16           MS. SMALLS:  Your Honor, this is Dawn Smalls from

17   the plaintiff.  I am the host, but I do not have a way of

18   determining who stays on the line.

19           THE COURT:  All right.  So let's do this.  Who out

20   of the non-Cultural Care and non-AuPairCare is going to plan

21   on staying on?  Is anyone?  All right.

22           Hearing nothing, then everybody -- we're in recess

23   as to everyone else, and we will take up the matter of

24   Cultural Care first so everyone else can drop off the line.

25           UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 30

1          UNIDENTIFIED SPEAKER:  (Inaudible).

2          UNIDENTIFIED SPEAKER:  Somebody's still on.

3          THE COURT:  That's just someone talking that didn't

4     actually hang up?

5          UNIDENTIFIED SPEAKER:  I think so.

6          THE COURT:  Okay.  Maybe they've hung up now.  I

7     didn't hear the little hang-up signal.

8          All right.  So let's -- let's take up the Cultural

9     Care portion of this.

10          The law clerk has given me like four different

11    things that I think you want to talk about, but I prefer it

12    if you would just bring them up to me as you -- as you want

13    to and let's discuss each issue one at a time, okay.

14          So, Ms. Lukey, do you want to go first or

15    plaintiff?

16          MS. LUKEY:  Your Honor, this is Joan Lukey.  I only

17    had three down -- this is Joan Lukey -- but maybe one of them

18    had a subpart.  One was ours, the first one raised.  And then

19    Ms. Smalls suggested we do two of theirs at the same time.

20    We can go whatever order you wish, but I just want you to

21    know that if there is a fourth, I may have missed it.

22          THE COURT:  Okay.  And it could be she just

23    (inaudible).

24          MS. SMALLS:  Sorry, this is Dawn Smalls for the

25    plaintiffs.  That's correct with respect to Cultural Care.  I

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 31

1  think the fourth issue is the issue with respect to

2  AuPairCare and AIFS.

3            THE COURT:  All right.  So why don't we go first,

4  Ms. Lukey, with what your issue is.

5            MS. LUKEY:  Thank you, Your Honor.

6            And I think this can be relatively brief, because

7  it's the kind of issue that will have to be, I think,

8  submitted in writing because it deals with too many documents

9  for us to try to summarize on the phone.

10           In very short form, there is a host family mom

11  named Eileen Boehne, B-O-E-H-N-E, who submitted a declaration

12  that was relied upon by the plaintiffs' economic expert,

13  Dr. William Kerr (phonetic), and was provided directly in

14  connection with his deposition.

15           In that declaration, he includes a statement to the

16  effect that two of the sponsors, Au Pair America and Cultural

17  Care, had placed a total of eight au pairs with her, seven by

18  Au Pair in America, one by Cultural Care, and that in each

19  instance representatives of the sponsors said -- informed her

20  that it was a fixed stipend.  Obviously, a matter of dispute.

21           We then, at Cultural Care, propounded a request for

22  production of documents addressed specifically to Ms. Boehne

23  and any documents that resulted in her declaration because it

24  is disputed.  We received a (inaudible) revised --

25           THE COURT:  Oh, oh.  Is anyone on the line?

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 32

```
 1                MS. SMALLS:  Your Honor --
 2                THE COURT:  Yes.
 3                MS. SMALLS:  Yeah, I'm here.
 4                THE COURT:  All right.  Ms. Lukey, are you there?
 5                MS. SMALLS:  Your Honor, are you still --
 6                THE COURT:  I'm still here.  Can you hear me?
 7                MS. SMALLS:  Yes, but it looks like Cultural Care
 8     dropped.
 9                THE COURT:  Okay.  Do you want to hang up and call
10     her back and just call back into the court.
11                MS. SMALLS:  Sure.
12                THE COURT:  We're going to take five minutes to go
13     to the bathroom, so that will be -- and then we'll get back
14     into it.  Okay?
15                MS. SMALLS:  Okay, sounds great.
16                MS. KOZAL:  Dawn, this is Peggy Kozal for
17     AuPairCare.  I will also call back in now, as well, because
18     I'm still on the line.
19                MS. SMALLS:  Okay, thank you.
20                (Break was taken.)
21                THE COURT:  Hello everyone.  We're back in session
22     in 14-cv-3074.
23                May I ask who is on the phone now.  I'm just trying
24     to make sure everybody is here.
25                MS. LUKEY:  Joan Lukey and Justin Wolosz for
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 33

1    Cultural Care, Your Honor.

2              THE COURT:  Thank you.

3              MS. SMALLS:  Dawn Smalls from Boies Schiller &

4    Flexner for the plaintiffs.

5              MR. TUCKER:  Robert Tucker for AIFS.

6              MS. KOZAL:  And Peggy Kozal for AuPairCare.  Thank

7    you.

8              THE COURT:  All right, thank you.  I think that's

9    everyone I was expecting.

10             So, Ms. Lukey, I'm sorry, you were right in the

11   middle of your argument when we broke, but I did hear the

12   first part of it, so I know we're talking about Ms. Boehne.

13             And I wrote down she had basically done a

14   declaration that said that she had been involved with several

15   different au pairs and that each time -- one was from

16   Cultural Care, and each time she was told that there was a

17   fixed amount of money that had to be paid to the AuPairCare,

18   and that's -- or to the au pair and that is where I lost you.

19             MS. LUKEY:  Thank you, Your Honor, I appreciate

20   that.  I think it was my phone that went dead for which I

21   apologize, I don't know what happened.

22             But in any event, let me just pick up right there

23   and say this.  It is Cultural Care's intention to take

24   Ms. Boehne's deposition as a fact witness in this case.  And

25   in connection with that, we propounded a document request

Johana Paola Beltran, et al. vs.                    Telephonic Informal Discovery/Status Conference
InterExchange, Inc., et al.                                                   May 11, 2017

Page 34

1   seeking all of the written communications that she had had

2   with Boies, Schiller.

3          For the first better half after she contacted them,

4   their privilege log reflects that they're claiming

5   attorney/client privilege because she had contacted them

6   about potentially representing her in a matter against

7   Cultural Care about five hours after -- I'm sorry, two and a

8   half hours after the last such entry, the entries begin with

9   the nature of the privilege change to the work product

10  doctrine.  We are not at this stage challenging the notion

11  that she apparently was in consultation with Boies, Schiller

12  about representing her for a day and a half.  That's

13  privileged.

14         We are, however, intending to challenge the work

15  product claim because she is a potentially adverse party to

16  Boies, Schiller, and there is a substantial amount of case

17  law on -- including in Colorado, that says you cannot claim

18  work product protection once you produce documents to

19  somebody who is potentially adverse to you.

20         So that would be the basis for our motion to

21  compel, that very discrete issue of seeking to obtain the

22  communications that occurred, any drafts that went back and

23  forth and the like, after a period when they claimed

24  attorney/client privilege on the basis -- on the specific

25  basis that if a party is potentially adverse.  We have a

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 35

1  number of entries in the transcripts and in the pleadings in

2  which plaintiffs have acknowledged that on wage an hour, the

3  host families are potentially adverse.  We have a number of

4  occasions when they refer to the host families as potential

5  defendants.

6         And what we seek to do is to obtain the documents,

7  the drafts and the communications post the period when Ms.

8  Boehne was talking to Boies, Schiller about representing her,

9  but that would be the subject of our motion to compel.

10        It's a very discrete issue, but I do think it

11  requires us to provide the Court with the case law.

12        THE COURT:  All right.  Ms. Smalls, do you want to

13  address that?

14        MS. SMALLS:  Yes.

15        So I don't disagree with much of what Ms. Lukey has

16  just outlined.  Ms. Boehne reached out to Boies, Schiller in

17  seek of potential representation around a lawsuit that she

18  was interested in pursuing against Cultural Care for what she

19  believed was unsavory business practices.

20        We consulted.  We determined that we would not be

21  in a position to represent Ms. Boehne, but she was interested

22  in providing testimony in this lawsuit.

23        And so there was a period of time where she was an

24  individual seeking legal representation and very clearly so.

25  And then there was a point in time in which, we, at Boies,

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 36

1  Schiller, determined that we would not undertake that legal

2  representation.  And at that point Ms. Boehne became a

3  potential and then eventually an actual witness as she

4  provided a signed declaration in this lawsuit.

5          So I agree -- and I will state the obvious, that

6  the communications with and draft statements of a witness are

7  clearly work product, absent this issue that Ms. Lukey is

8  identifying of potential adversity, even when on its face

9  none currently exists.

10         Host families are not defendants in this lawsuit,

11 and plaintiffs have certainly not taken any action or

12 articulated an intent to name Eileen Boehne as a defendant in

13 this lawsuit.

14         And so the core of this dispute is whether the

15 potential adversity and the fact that she could be, at some

16 point in time, an adverse party in this lawsuit is sufficient

17 to undermine and eliminate the work product protection that

18 would almost in any other circumstance apply to these

19 communications and draft statements.

20         THE COURT:  Well, that sounds pretty clear that you

21 and Ms. Lukey are on the same page, that the Court needs to

22 look at the law and make a -- you know, say yes or no, right?

23         MS. LUKEY:  I believe that's correct, Your Honor.

24         MS. SMALLS:  Yes, Your Honor.

25         THE COURT:  So let's pass on that one, then.  And

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 37

1   you've met your obligation under my practice standards and

2   everything to try to have an informal resolution, but this

3   one isn't the kind of thing that can be refereed.  This is

4   something you need an answer to, so you're free to file your

5   briefs on that.

6           MS. LUKEY:  Thank you.

7           THE COURT:  Or I guess it would be a motion.  I

8   always say "briefs," but one of you will have to file a

9   motion.  And I assume it will be Cultural Care who files a

10  motion to compel for the information.

11          MS. LUKEY:  That was our intention, Your Honor.

12  Thank you.

13          THE COURT:  All right.  So what's next?  That's

14  Ms. Lukey's issue.

15          So let me ask, plaintiff, what are your issues that

16  we should discuss today with respect to Cultural Care?

17          MS. SMALLS:  We have two, but I would just ask,

18  Your Honor, if we need to discuss or set a schedule for

19  briefing or just leave that for another day?

20          THE COURT:  You know, I don't -- I don't think so.

21  I mean, it's one of those things that if -- defendants, if

22  you want the information, you ought to file your motion to

23  compel right away.  Every day that you wait makes me think

24  it's not very important.  So, you know, I would assume you

25  want to do it sooner, rather than later; but if you change

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 38

1   your mind -- I don't want to give you a schedule because if

2   you change your mind and decide you don't even want to file

3   the briefs, then I have no interest in compelling you to do

4   it.

5           MS. LUKEY:  We intend to move forward

6   expeditiously.

7           Thank you, Your Honor.

8           THE COURT:  So ball is back to you, Ms. Smalls.

9           MS. SMALLS:  Great, thank you.

10          We have two issues that we are raising with respect

11  to Cultural Care, and the first relates to its privileged

12  logs.  And the dispute is specifically with respect to a

13  series of communications withheld on Cultural Care's

14  privilege log that appear to have included third parties and

15  to not have included any attorneys that we can recognize on

16  the communications.

17          Plaintiffs' concerns about Cultural Care's

18  relationship and positioning with respect to third parties

19  was first raised in its objections to plaintiffs' 30(b)(6)

20  Notice for Cultural Care in which -- with respect to our --

21  our topics on the recruiting and advertising to au pairs.

22          Cultural Care responded that Cultural Care was not

23  involved in advertising for recruiting, collecting any fees

24  charged to or contracting with au pairs.  Instead plaintiffs

25  have learned that those responsibilities are by contract

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 39

 1    overseeing and managed by a Swiss entity that is legally

 2    separate from Cultural Care.

 3            Further, in its objections to plaintiffs' request

 4    for a 30(b)(6) witness that can testify to their finances,

 5    including, but not limited to their financial records revenue

 6    and expense streams, Cultural Care stated an objection on the

 7    grounds that, quote, such information was propriety and

 8    confidential information belonging to parties other than

 9    Cultural Care and is, therefore, beyond the scope of this

10    lawsuit.

11            In Cultural Care's privilege logs, there are

12    numerous communications which are neither to, from, or cc'd

13    to a lawyer, but appear to be individuals working at Cultural

14    Care in one instance, and one of two Swiss entities, one of

15    which being one called ICL and the other one named EF.  And

16    the log also contains documents which the logs say -- reflect

17    request for legal advice, even when no lawyer is a sender or

18    a recipient or cc'd to the message.

19            Other documents with no lawyer on the email chain

20    were withheld on the basis that the document contains or

21    reflects attorneys' thoughts, impressions, or analyses

22    containing -- concerning actual or potential litigation.  And

23    again, many of these communications appear to have

24    non-Cultural Care entities either cc'd or are direct

25    recipients of these emails.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 40

1          So I will leave it -- I assume -- well, I don't

2    want to presume their argument, but that is -- that is the

3    dispute that we are raising with respect to the Court today.

4          We don't think that the bases which Cultural Care

5    has put forward or the justification that they had put

6    forward for withholding these communications with these Swiss

7    third-party entities is appropriate.

8          THE COURT:  All right.

9          MS. LUKEY:  May I proceed, Your Honor.

10         THE COURT:  Yes.

11         MS. LUKEY:  As we see it, there were two separate

12   issues that were just raised, one of which we hadn't actually

13   thought was part of the informal conference, but I'll address

14   it anyway.  That is the issue whether there were lawyers on

15   these communications.

16         On that issue we actually need specificity from

17   them as to which entries they're talking about.  I believe in

18   some instances, they may not be aware of attorney names.  In

19   other instances, they are talking about emails in which

20   advice having been rendered by an attorney as being conveyed

21   from one person to a person who has a common interest or need

22   to know.

23         So that the Court understands, it is, in fact, the

24   case that Cultural Care, Incorporated, is a U.S. entity, it's

25   a Massachusetts company.  It is the sponsor.  It does

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 41

 1   contract with a company International Care, Limited, in

 2   Switzerland.  It does not own, control, or direct the actions

 3   of ICL.  Both of them are in a lease affiliation of companies

 4   called the EF Group.  There is not common ownership between

 5   those two entities, and again, there is absolutely no control

 6   running from Cultural Care, Inc., to ICL, something which

 7   predated the existence of Cultural Care, Inc.

 8          On the issue of -- the second issue -- so the

 9   nonlawyer issue, she's going to have to tell us which entries

10   she's talking about because we can't, in fact, specifically

11   respond, Yes, Mr. Smith is a lawyer involved in this matter,

12   and then bring legal advice, or that communication is the

13   conveyance from one person within Cultural Care to another or

14   potentially conveying advice that has been given as to an

15   action that must be taken to someone at ICL which has a

16   common interest.

17          The second issue is, in fact, the different

18   entities -- the contention that because they're a different

19   entity they defeat the privilege.  Respectfully, that is

20   incorrect.  That requires briefing, but it has to do with

21   common interest.  If we are in a situation -- for example,

22   let me just step back and give an example from this case.

23          We have 15 sponsors who are each individual

24   defendants, and as the Court noted earlier, are rather

25   separate competitors with each other.  However, the schedule

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 42

1    imposed in this case called upon the defendants to work

2    together to limit the number of, for example, their positions

3    and to try to provide consolidated briefing whenever

4    possible.  As a result, these 15 very separate entities all

5    working jointly under joint defense agreement to address the

6    discovery in the fashion and the briefing in the fashion

7    which the Court has directed, they are not the same party.

8    They are separate entities, but they have a common interest.

9            Here, too, we would be able to brief if it were

10   raised in a motion, what the common interest is in this case

11   relating to specific communications between ICL and Cultural

12   Care, Inc.

13           As another example, one other request was made by

14   plaintiffs for all contracts between Cultural Care, Inc., and

15   ICL since there are contracts.  Cultural Care, Inc., was

16   unable to find several years of the contracts; therefore, a

17   request was made directly and then indirectly passed on again

18   from counsel, or at counsel's request to ICL to gather their

19   copies of the contract if they were willing to provide them.

20   They didn't have to, but given that they were they were

21   documents that they knew Cultural Care should already have in

22   its own possession, they did so.  The same is not true, for

23   example, with regard to financial information.  The entities

24   began on very, very separate and do not have common owners.

25           So we believe we need to have briefing on this,

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 43

1    Your Honor.  We need to know specifically which entries fall

2    in to Category 1 where they think no lawyer is involved and

3    which entries relate to their contention that because they

4    are different entities, privilege is automatically defeated

5    without giving deference to the common interest concept,

6    which we believe is applicable and we'd like the opportunity

7    to brief.

8              THE COURT:  All right.  Do you want to wait --

9              MS. SMALLS:  Your Honor.

10             THE COURT:  Any more?  Ms. Smalls.

11             MS. SMALLS:  Yes, thank you.

12             Two things.  One, for the common interest to apply,

13   the interest must be more than similar.  The interest must be

14   identical.  And the example that Ms. Lukey just gave of the

15   sponsor entities that are defendants in this lawsuit where

16   all of them are similarly situated is inapplicable.

17             It is hard to gather how a U.S. entity that has

18   been designated by the United States Department of State as a

19   J-1 visa sponsor agency could have identical interest with a

20   Swiss-based company that has no legal obligation to act in

21   accordance with state department regulations or, say, U.S.

22   state or federal minimum wage laws.

23             Second, Ms. Lukey made reference to the need to

24   identify specific communications.  We had an extended meet

25   and confer via email on this and a number of other issues and

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 44

1   plaintiffs specifically noted Bates numbers for every

2   objection that we had with respect to their privileged log.

3          So it is inaccurate to say that we have not

4   identified the specific communications that are at issue and

5   serve as the basis for raising it before the Court today.

6          MS. LUKEY:  If I may briefly respond, Your Honor.

7          We responded on those Bates-numbered documents and

8   attempted to explain where a lawyer was involved or where

9   there was legal advice being transmitted from one person to

10  another.  Again, I think this is something that would be

11  appropriate for briefing.

12         The reference to the Department of State

13  Regulations is misplaced because the Department of State

14  Regulations expressly permit the U.S. sponsor -- again, the

15  sponsor must be a U.S. company.  But it expressly permits a

16  U.S. sponsor to contract with an international entity, the

17  purpose of recruitment of au pairs (inaudible).  There is

18  nothing improper about it.  It is simply the arrangement that

19  exists in this case.  And among the various sponsors, there

20  are a variety of methods by which they do the recruitment.

21         But, respectfully, Your Honor, on the common

22  interest issue, in particular, we believe that briefing would

23  be appropriate.

24         MS. SMALLS:  Your Honor, I just -- if I may, I just

25  have one additional point to add.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 45

 1          We -- Cultural Care has never specifically said

 2     that they believe that -- at least to my knowledge or

 3     recollection -- they can correct me if I'm wrong -- that they

 4     are withholding this information based on common interest

 5     privilege.  They have said that is not -- that plaintiffs'

 6     articulation of why we think we are entitled to the documents

 7     is not the law, but plaintiffs are fairly unclear about what

 8     Cultural Care's articulation of what the Swiss entities are

 9     with respect to Cultural Care and this lawsuit.

10          And it's plaintiffs' belief that there is very

11     little, if any, distance between Cultural Care and the Swiss

12     entities, notwithstanding Cultural Care's position that they

13     are completely separate, legally separate entities.

14          So they either are aligned and the common interest,

15     you know, privilege applies or they are not aligned, and

16     they're, you know, completely legally separate that are,

17     quote/unquote, beyond the scope of this lawsuit.  Plaintiffs

18     do not believe that you can have it both ways.

19          And so it may be the case that these communications

20     are appropriate for, you know, a charge of common interest

21     privilege; but it has to -- we are unclear of what Cultural

22     Care's position actually is with respect to these entities.

23     And we do not believe that you can, on the one hand, say that

24     they are -- information with respect to these entities is,

25     quote, beyond the scope of this lawsuit, and then also claim

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 46

 1    the common interest privilege because their interests are so

 2    aligned.

 3              And then the last thing I would say is that the

 4    other thing that Cultural Care has not articulated, to my

 5    knowledge, is who is representing ICL.  So another important

 6    component of the common interest privilege is that it either

 7    be attorney to attorney or that one counsel is representing

 8    both parties.

 9              I -- we have not received any information about who

10    is actually representing either or both of the Swiss

11    entities.  And so from the best that we can read this

12    privilege log, it is legal advice that has flowed down to a

13    nonlegal business person at Cultural Care who then proceeds

14    to communicate with a nonlegal business person over at the

15    Swiss entity.  And these are the communications that are

16    being withheld.

17              MS. LUKEY:  Your Honor, we obviously have a legal

18    dispute.

19              THE COURT:  Right.  I mean, that's exactly what I

20    was going to say.

21              There is obviously a legal dispute over really how

22    attenuated the common interest can be, in addition to the

23    relationship between Cultural Care and these two other

24    entities.  I mean, one of you is talking like they're just

25    completely -- it's just a contract.  I go out and contract

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 47

1    with the gardener.  It doesn't mean that, you know, we have

2    anything in common other than that contract; but there is all

3    kinds of variations in between getting that contract and

4    actually being a partner.  So I think that's something that

5    does need to be cleared up and probably would be cleared up

6    in motions briefing.

7           I do agree with plaintiff, though, and I -- so this

8    is just some guidance to everyone as they're moving forward.

9    You cannot have it both ways.  Either they're totally

10   separate, which means that every time you tell them

11   something, you waive the privilege.  You know, this is a

12   broad, broad, broad generalization.  But that would be kind

13   of my take on it, is that if you're really separate and

14   your -- your people at Cultural Care are relaying to this

15   separate entity what the lawyers told you, you've just waived

16   the privilege, at least, as to that -- that communication.

17   Or they're not totally separate.  They're very intertwined,

18   however it is that they are, and so, therefore, you can

19   invoke common interest privilege rules.

20           So I do think you have to decide one way or the

21   other.  And I agree with Ms. Lukey that the way to do that is

22   probably to brief it because you're not going to -- well, I

23   can't get you to compromise because I don't know what the

24   facts are.  I can only look at the facts that you give to me

25   and then make a decision one way or the other, and so that is

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 48

1   clearly something that has to be brought up.  And I would

2   assume that would be plaintiff motion to compel, right?

3          MS. SMALLS:  Yes, Your Honor.  And we agree that

4   the -- the issue needs to be briefed.

5          THE COURT:  Okay.  So we'll look for a motion

6   there.  Again, I'm not going to give you a deadline either in

7   case you don't want to file a motion; but if you do want to

8   file a motion, you should do it fairly quickly.

9          What -- do we have cutoff dates or something where

10  I really should be scheduling this out?  Or is it fair to

11  just let you decide within a week or two what you want to do?

12         MS. SMALLS:  Well, I would just note for Your Honor

13  that we have our motion for class cert coming up next Friday.

14         THE COURT:  Right.

15         MS. SMALLS:  So we will -- plaintiffs will be

16  fairly clearly focused on that through the 19th, but could

17  move fairly quickly thereafter to file a motion on this

18  issue.

19         MS. LUKEY:  The fact discovery cutoff, I believe,

20  Your Honor, isn't until the fall, September.

21         THE COURT:  All right, all right.

22         So I'm going leave the timing up to you.  And we'll

23  take it up, but you've met your obligation to have an

24  informal conference with the Court.  And I agree with what I

25  believe you both are saying, that this just isn't something

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 49

1  that can be compromised.  You need to have a ruling, so

2  you're free to brief it now.

3              MS. SMALLS:  Thank you, Your Honor.

4              THE COURT:  All right.

5              Are there any other issues having to do with

6  Cultural Care then?

7              MS. SMALLS:  Yes.  We have one remaining issue that

8  we wanted to raise with respect to Cultural Care, and that

9  has to do with communications with other sponsors.  This was

10  one of the topics included in plaintiffs' original request

11  for documents.

12              And Cultural Care, along with other defendants,

13  conducted an electronic -- a search of electronic

14  information, including emails, and provided a production to

15  plaintiffs of documents, responses, to that RFP with respect

16  to communications with other sponsors, as well as the

17  other -- as well as the other topics in our RFP.

18              Since that time, because the nature of this

19  particular topic is that we are -- all of the 15 sponsors are

20  producing information about communications with each other,

21  you know, we have been faced and presented with a number of

22  situations where one sponsor has produced a document or an

23  email and another sponsor has not, although they have all

24  said that they have, you know, met their obligations and

25  searched for all, you know, responsive documents.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 50

1           A couple of examples are, you know, we have one

2  sponsor that, you know, testified that when she had a

3  question about a regulation, she would reach out to another

4  sponsor, you know, to ask for their thoughts and guidance.

5           Another example is that sponsors work together and

6  through trade group to lobby the state department, to not put

7  in writing its position in response to a congressional

8  inquiry as to whether the stipend should vary based on state

9  minimum.

10           Those examples do not relate to Cultural Care, but

11  we do have one example where the leadership of InterExchange,

12  another defendant, emailed -- and it's, you know, an email

13  chain -- emailed the CEO of Cultural Care that was produced

14  by InterExchange and not produced by Cultural Care.

15           This is an issue that we are raising with a number

16  of defendants.  And some defendants have said that they will

17  go back and search and will produce additional responsive

18  documents.  Despite us having at least one concrete example

19  of the leadership of one defendant communicating with the

20  leadership of Cultural Care and this email exchange not being

21  included in Cultural Care's production, Cultural Care has

22  refused to conduct an additional search to ensure that it --

23  it has provided all documents that would be responsive to

24  this document request.

25           MS. LUKEY:  Your Honor, at this point I'm not even

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 51

1    sure what we would do because we did produce everything that

2    we could find.  We did, in fact, run an extraordinarily

3    detailed and complex ESI discovery in a time period to which

4    plaintiffs had agreed and Mr. Rennifor (phonetic), the

5    individual she has referred to, is one of those custodians.

6    It doesn't exist.  And the only thing we can figure is that

7    it's now (inaudible) because the custodians need to file or

8    subfile these emails to prevent them from lasting forever.

9           And if he went in and, instead of his choice, he

10   can -- if he leaves it there and does nothing, there is a

11   reasonable shot it can be found.  The fact that it cannot be

12   found means he neither filed it, nor did he leave it there.

13   He deleted it.  It wasn't a substantive -- it wasn't a matter

14   of concern whether on a subject relevant to this lawsuit, but

15   in fact, we did what they asked and we searched for, and to

16   the limited extent we found anything, we produced the

17   communications with other sponsors.  We didn't hide it.  We

18   didn't do anything on purpose.

19          Out of the many thousands and thousands of

20   documents that we produced, they have taken only to this one

21   that doesn't match on our side, because we don't have it.  We

22   checked.  It isn't there.

23          So we did run all the custodians that we agreed to

24   run.  We did run all the search terms for them.  We did apply

25   the agreed-upon time period.  And if there was another

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 52

1    sponsor to whom a communication was made or from whom it was

2    received, it was produced.  That's all I can say.

3              There is nothing more we can do.  That email is

4    gone, so he probably clicked on it and deleted it because it

5    wasn't important.

6              THE COURT:  All right.  Well, the thing that the

7    Court was going to suggest with this issue is that you look

8    at the email that was not produced and you see what about it

9    caused it to be produced with the search that was run by one

10   of the sponsors and not the search that was run by the other,

11   but it sounds to me like this is a different situation.

12             You're not saying, Yeah, we have it, but it didn't

13   come up in our -- the way we searched, it just didn't come,

14   which at that point I would tell you you need to search

15   again.  Because if there is one missing, there may be more.

16   But you're telling me, you've looked for it, you don't have

17   it, right.

18             MS. LUKEY:  I'm sorry, I didn't mean to speak over

19   you.

20             If -- the search term would have picked it up if it

21   existed.  It was -- it was one of the documents that had one

22   of the search terms in it.  I believe our search terms were

23   actually broader than most of the other sponsors, if not all

24   of them.  It just doesn't exist, which means he deleted it.

25             THE COURT:  All right.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 53

1          So I guess, Ms. Smalls, that kind of begs the

2    question.  I mean, if you think there is something that can

3    be done about that or that you've got a spoliation issue,

4    that's -- spoliation is obviously a matter you don't discuss

5    with me informally because no one is going to agree that they

6    deliberately spoliated something.  If it doesn't exist, it

7    doesn't exist.  I can't make them produce it.

8          You've got -- the information that you do have, the

9    piece of evidence that you do have, is that something

10   happened to it, it existed, but Cultural Care doesn't have

11   it.  And maybe that's a good little piece of information for

12   you.

13         MS. SMALLS:  Your Honor, just to clarify, it has

14   never been particularly -- specifically articulated that it

15   is not in their possession.

16         And as I understand Ms. Lukey's comments, she said

17   two different things, both of which may or may not be

18   correct; but one was:  We ran a bunch of search terms before

19   and we believe that it would have been captured by that.  And

20   second, that she checked, and it does not exist.

21         She has -- Cultural Care has previously said the

22   first part, that they ran a search, a broad-based search that

23   they have confidence in, that should have captured

24   everything, and that they are not going to search again.

25   They have not previously articulated to me that it does not

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 54

1   exist and that it is not on their system.

2          And so the reason that we are raising this -- this

3   is an antitrust case, so these communications are of the

4   supreme importance.  A reason that we are raising it is to

5   the extent -- we didn't conduct a search, so we can't -- we

6   can't certify or be confident that -- particularly when we're

7   getting communications by one defendant versus the other

8   defendant, that the previous search was sufficient.

9          So what we asked them to do was to look again.  And

10  their response was, No, a previous search was sufficient.  We

11  said, We have this document.  It's an indication that there

12  may be deficiencies.  Again, we're not going to conduct the

13  search.  They are going to certify to that.  But the thing

14  that we asked them to do was to go back and check and make

15  sure that there were no additional responsive documents, to

16  this specific RFP.  And the answer to that -- that inquiry

17  was no.

18          THE COURT:  Well, okay.  That's two different

19  things, right.

20          I mean, Ms. Lukey, what I heard you tell me just

21  now is that you looked for this specific email and it does

22  not exist in Cultural Care, not that you ran another search,

23  but that you looked for it.

24          MS. LUKEY:  Correct, Your Honor.  I'm going to ask

25  that Mr. Wolosz might respond, because he's the one who had

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 55

1   the conversation that went back and looked for the email.

2             THE COURT:  All right.

3             MS. WOLOSZ:  Your Honor, thank you.

4             The problem was certainly with the way Ms. Smalls

5   is phrasing it is very different from the way she has in the

6   past.  Let me explain it this way.

7             Her complaint, as she framed it to us, was, We

8   think we should get more communications responses.  We just

9   didn't think you produced enough.

10            In response, we relied upon our EFI search, which

11   as Ms. Lukey explained was very expensive, which involved a

12   lot of key custodians, which involved a lot of search terms

13   which we expanded based on comments from the plaintiff.  And

14   so our response to that was, We don't know what you mean.

15            When they gave us this one individual email, which

16   we -- so now we have something concrete -- we went back and

17   looked.  And we were scratching our head, because it was --

18   the individual on the email was one of our custodians and it

19   contained search terms that included -- it contained words

20   that were included in our search term list.

21            So we looked.  And as I said to Ms. Smalls -- I

22   didn't actually have it when we conferred, but on the phone

23   call with your clerk, I explained that we had looked and this

24   email wasn't there, and we can only surmise that he must have

25   deleted it, because there isn't anything wrong with our

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 56

1    protocol.  In other words, this email is not evidence that

2    our protocol was flawed.  It doesn't (inaudible) it's not

3    there, but the protocol was very comprehensive and we would

4    have captured this email if it was included in the account.

5            MS. SMALLS:  And it wasn't.  We checked.

6            THE COURT:  Okay.  So that -- that makes sense to

7    me.  And I -- I think on that record that you've just made,

8    that what you've told me is that on the search that you did,

9    the keywords you used and the custodians you used, this email

10   would have been captured if it existed because it had a

11   keyword and it was one of those custodians, but it wasn't

12   captured.  It does not exist on your system.  That is a piece

13   of evidence, in and of itself, plaintiff, I would think.

14           Now, I don't know how persuasive one email is.  I

15   don't know what it says.  I don't know whether it's a smoking

16   gun.  If you think it is the smoking gun, it's a great piece

17   of evidence that they don't have it; but -- but, otherwise,

18   it's just a fact I can't make them do it and there is no

19   reason for me to make them run a search that's any different

20   or run their search over because what they've told you is the

21   search would have gotten it, it should have gotten it.  If

22   they had it, it would have.

23           So I think that you just have to be satisfied with

24   the fact that you do have a little piece of information there

25   that might be pretty good evidence, under some circumstances;

Page 57

```
 1   but I'm not going to make them run the search again, because
 2   there is no point.  It should have turned up if it was there.
 3            MS. SMALLS:  Your Honor, I hear and appreciate your
 4   conclusions on this.
 5            I would just note that Mr. Wolosz had said that he
 6   said it in the conversation with the clerk.  To my
 7   recollection, it had never been communicated that the
 8   document did not exist, but they did not have it; that the
 9   meet and confer and the previous discussions were centered on
10   the fact that their prior -- their protocol and prior
11   searches should have, and would have, captured it.  And so
12   one document should not be an indication, but there is
13   something wrong.  But to the extent that the document
14   actually does not exist on their server, plaintiffs concede
15   that it is not an indication that there was a problem with
16   their protocol.
17            THE COURT:  Okay.  And that's kind of why we have
18   informal conferences, because a lot of times when people are
19   trying to explain to me, you know, out of the blue what they
20   did or what they mean by things, that you get the message
21   finally also, so we quit running around with all the legalese
22   and get the answer.  And now the answer is out there, so I
23   think this issue is pretty much resolved.
24            Does everyone agree?
25            MS. SMALLS:  Yes, Your Honor.
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 58

 1              MS. LUKEY:  Yes.  Thank you, Your Honor.

 2              THE COURT:  Okay.  Now, does that -- does that

 3   conclude everything for Cultural Care then?

 4              MS. SMALLS:  It does.

 5              MS. LUKEY:  Your Honor, if it's all right, then we

 6   would drop off with the call to allow the next phase to go

 7   forward.

 8              THE COURT:  All right.  Thank you.

 9              We'll be recess on that part then.

10              MS. LUKEY:  Thank you very much.  Thank you.

11              THE COURT:  Does anyone need to take a break before

12   -- I don't think either of us here in the court need to, but

13   do any of you need to take a break before we take up the next

14   matter?

15              MS. SMALLS:  No, Your Honor.

16              MR. TUCKER:  No, Your Honor.

17              THE COURT:  Okay, good.

18              MS. KOZAL:  No, Your Honor.

19              THE COURT:  Then let's go.  Who -- who --

20              MS. SMALLS:  Thank you.

21              So we have one primary issue that you alluded to

22   earlier, which was the duration of placement that -- with

23   respect to host families.

24              So your order ordering host families, the dispute

25   is about -- the language of your order says the motion is

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 59

 1   granted as to the production of contact information with

 2   respect to the host families, including the names of

 3   sponsored au pairs as discussed.

 4           And so the dispute with respect to the two

 5   defendants on the line, AIFS and AuPairCare, is with respect

 6   to that "as discussed" or the language of the order.

 7           The motion to compel was based on plaintiffs' first

 8   set of RFPs and first set of interrogatories which asked for

 9   host family contact information and au pair contact

10   information.  Specifically, in the interrogatory the language

11   included information about the duration of placement of the

12   au pair.

13           AuPairCare -- we raised this issue with a number of

14   defendants -- well, first of all, in response to your order,

15   a number of defendants just automatically produced, made the

16   production of host family information with the duration of

17   placement data.  There was a larger subset that did not

18   include it and plaintiffs put forward the basis for the fact

19   that that information was included in our first

20   interrogatories and, therefore, was the basis of the motion

21   to compel and the foundation for your order.

22           Most defendants thereby revised their productions

23   and included, or made accommodations to include the duration

24   of placement data for au pairs.

25           AuPairCare and AIFS are the two defendants out of

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 60

1   the 15 that steadfastly refused to provide it.

2          I would add that the information, it's not a small

3   matter in the sense that we are -- the reason that we are

4   seeking this information is to conduct a survey to host

5   families about what au pairs were paid.

6          The years, the class, the order for conditional

7   class cert was specifically for years 2009 and on.  We were

8   given data initially by defendants that included au pairs

9   from 2007 and 2008.  We had to go back to them and ask them

10  to scrub that data so that we did not have au pairs outside

11  the class.  But we were able to make that adjust- -- to make

12  that adjustment and to ask for that clarification and ask for

13  that data to be scrubbed because we could see there was some

14  information with respect to the years of placement of the au

15  pairs to the host families that they were provided.

16         I would also offer that counsel for CHI offered

17  earlier in this conference that the host family survey has

18  gone out, and it has gone out to -- to the universe of host

19  families.  And there are, you know, over a thousand responses

20  to that survey that host families self-identify as having au

21  pairs in 2007 and 2008.

22         And, you know, there is no information at this

23  point whether that is with respect to these two defendants,

24  but we had the structure, the survey and add additional

25  questions to try to get at the year information because that

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 61

1    information, defendants AIFS and AuPairCare refused to

2    produce it.  They said it was not required by your order.

3            And just on its face, we, plaintiffs, believe that

4    we weren't asking them for anything outside of the order, but

5    that duration of placement -- the duration of employment and

6    placement for the au pairs was encompassed by your order.

7    And the majority of other defendants in this case seemed to

8    have agreed.

9            THE COURT:  All right.  So I have two of you on the

10   phone.

11           Are you going to argue this separately or is one of

12   you a spokesperson for defendants?

13           MS. KOZAL:  Your Honor, I think it might make sense

14   for us to comment separately on this.  You know, I'm happy to

15   let Au Pair in America go first, and to the extent we've got

16   any follow-up, we would chime in at that point.

17           THE COURT:  All right.  That's fine with me.

18           MR. TUCKER:  Good morning, Your Honor.  Good

19   morning, Your Honor.

20           So just in response, a couple things.  First to

21   Ms. Smalls' quotation from the order, she left out what I

22   consider a fairly key provision, which was at the end of the,

23   quote, the continued -- the motion is denied in all other

24   respects.

25           So our position is that the duration information is

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 62

1    not contact information with respect to the host families and

2    it is not the names of the sponsored au pairs, and,

3    therefore, it's outside the scope of the order.  So that's

4    our first basis for resisting plaintiffs' attempts to get the

5    duration information.

6              The second is, we don't believe that they have

7    articulated a legitimate good faith need for the information.

8    The information provided was in the period sought by the

9    plaintiffs.  We provided that information, searched for

10   information only in that period.  We offered, on the call of

11   the clerk, to certify that the information was only from that

12   period.  Plaintiffs turned down our offer.

13             And so there is no reason for us to believe or for

14   plaintiff to believe that the information is not entirely

15   responsive and consistent with their need.

16             With respect to Ms. Smalls' comment about the host

17   family survey turning up responses from host families who

18   hosted au pairs in 2007 to 2008, I just want to add that that

19   does not mean that they didn't also host au pairs in 2009.

20   You know, host families routinely host au pairs for multiple

21   years and it's not uncommon for that to be the case.

22             And then lastly, I would just add that the fact

23   that other defendants have capitulated to plaintiffs' demands

24   does not mean that plaintiffs' legal position on this issue

25   is correct.

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 63

1          THE COURT:  All right.  Ms. Smalls.

2          MS. KOZAL:  Your Honor, if you would permit, I

3   would like to just add one more comment.

4          THE COURT:  Yes, go ahead.

5          MS. KOZAL:  I guess I'm a little confused why we're

6   having this discussion at this juncture.

7          I understand that Mr. Tucker has sent an email to

8   Ms. Smalls, you know, asking why this issue even needs to be

9   raised at this juncture.  We have received Judge Arguello's

10  order, which requires us to produce the dates of employment

11  for these au pairs.  And so that piece of it is going to be

12  dealt with in the production, according to Judge Arguello's

13  order.  And I'm not quite sure what remaining dispute that

14  there would be.

15         THE COURT:  Because -- is your argument, then, that

16  if you match the au pair to the host family and you have all

17  those dates of employment, you know the answer to the

18  question?  Is that what you're saying?

19         MS. KOZAL:  Right.

20         THE COURT:  So why -- why isn't it good enough

21  already with the au pair order, the order from Judge

22  Arguello?

23         MS. KOZAL:  I do not know the answer to that

24  question.

25         THE COURT:  All right.  Ms. Smalls, do you?

Johana Paola Beltran, et al. vs.                                    Telephonic Informal Discovery/Status Conference
InterExchange, Inc., et al.                                                                              May 11, 2017

 1              MS. SMALLS:  Yes.  I would say two things.

 2              One, with respect to Mr. Tucker's argument about

 3     host families that sponsored au pairs in 2007 and 2008,

 4     meaning that they didn't also sponsor au pairs in 2009, is

 5     100 percent correct, but we have no way of knowing that.  And

 6     so we have to exclude any host family that has affirmatively

 7     said, you know, We hosted au pairs in 2007 and 2008 because

 8     spatially it's outside the class.

 9              If we actually had the information about the host

10     family and the au pairs that they sponsored and the years of

11     sponsorship, we would -- we would be able to scrub that data

12     more effectively than we can at present where we just have to

13     deal with the information that has been received on its face.

14              With respect to Mr. Tucker's offer of certification

15     that he conducted the search correctly -- again, this is a

16     statistical survey -- and all of the defendants certified or

17     represented that they conducted the search correctly.  And

18     when we sent the data to our data folks that are responsible

19     for administering the survey, it became apparent, for some

20     sponsors, they included premium au pairs that are outside the

21     class.  If it became apparent that there were au pairs

22     outside of the Bay class range.

23              And so the question is whether we again --

24     plaintiffs are, you know, subject and completely at the

25     behest of defendants whether they actually conducted the

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 65

1   search correctly or not or whether they provide the

2   information that we believe was included or encompassed by

3   your original order in the first place so that we could

4   ensure the integrity of our statistical survey.

5          And then the third thing about Judge Arguello's

6   order, which does order, you know, the duration of placement

7   data for au pairs, I would note two things.  One, those are

8   two separate bodies of -- those are two separate productions

9   and two separate bodies of data.

10          One is host families that includes au pairs they

11   sponsored.  And then the other one is au pair data.  So their

12   proposal is that we merge and scrub the data to get the

13   information we need or we seek from the second, but I don't

14   think the second production obviates their need to produce in

15   the first instance.

16          And then the second thing I would say is that

17   plaintiffs felt it was important to raise this issue prior to

18   the production of the information that is required by Judge

19   Arguello's order because, as you can see, there are different

20   readings and different disputes, many of which plaintiffs

21   cannot anticipate about what we understand and expect will be

22   the productions and, you know, by defendants as a result of

23   both your and Judge Arguello's order.

24          Plaintiffs offered to both AIFS and AuPairCare

25   to -- if they wanted to produce the information prior to this

Johana Paola Beltran, et al. vs.  
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference  
May 11, 2017

Page 66

1   conference, that we would stand down and not raise this issue

2   with the Court.  But we did not feel that it was appropriate

3   or that we were in a position, particularly where we have had

4   significant and ongoing disputes with these defendants and

5   other defendants about what we believe is the clear letter,

6   whether it be production of au pair data for non-FLSA

7   defendants or duration of placement data for au pairs for the

8   host family information.  We cannot project what they will do

9   in response to an order.

10        And this is a separate obligation in response to

11   your order for the production of host family information,

12   which we have had an ongoing dispute and they have rested on

13   the motion is "denied in all other respects" language to say

14   that it is not required with respect to your order in the

15   production of host family information.

16        THE COURT:  But -- and I understand your argument,

17   and I will tell defendants that language "denied in all other

18   respects" is probably not a very good place to pin your hat

19   because, as you know, we were talking about host families

20   versus au pair information.  And so what was denied was the

21   getting -- the au pair information at that point, and that's

22   really what I meant.

23        So it's like anything else, I'm not -- I'm trying

24   to clarify a bit for you.  But, you know, those are -- you're

25   putting a little bit too fine a point on it when you have to

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 67

```
 1   go back to a transcript and read every comma, you know, from
 2   things that are said.  But, of course, that's the problem
 3   with oral rulings, as opposed to written rulings; they're
 4   usually clearer.
 5           And I think that Judge Arguello's order is very
 6   clear about the -- I think using a "duration of placement" is
 7   a better term in this case than "dates of employment" because
 8   there is obviously some question whether we should call it
 9   employment at all, right.  So I think dates of placement is
10   important and it's important information, and I would have
11   expected that you put that in there with your -- the host
12   families.
13           So to the extent that my order was not clear about
14   putting duration of placement or, you know, how long they had
15   the -- the au pair in their home, what was the time limit,
16   what were the time factors, that -- you should produce that,
17   because if I wasn't clear, I hope it's clear now that that
18   should be produced.
19           Now, that said, I really don't disagree with you
20   that if all this information about the au pairs has been
21   produced and their dates of placement and, you know, where
22   they were hosted, there is a database kind of information
23   that could compare those two and say, Well, clearly, you
24   know, this is the duration because you've got au pairs here
25   who say they were placed with, you know, Bill and Mary Jones.
```

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 68

1         So, you know, you can do that, but that's not

2   really what the order was.  The order was that you produce it

3   for the host families because that was really all that was

4   granted then.  It was the information, relevant information

5   about the host families.

6         So for both of you, I think that's what you should

7   produce.  And if you haven't produced that, you should

8   produce it.  And I don't think relying on that throwaway

9   language "in all other respects denied" when you know that

10  what that meant us au pair care -- excuse me, au pair

11  information that, you know, potential members of the class --

12  that's really what we were talking about, so I think you

13  should go ahead and produce that.

14        That's how I read my own order, so I hope that

15  clarifies it to you.

16        MS. KOZAL:  Your Honor, I believe that does clarify

17  it.  This is Peggy Kozal of EuRaupair Care.

18        I will note that in the transcript of the hearing

19  you stated that you were granting a motion to compel insofar

20  as the names and contact information for the host families

21  and then later indicated that the names of the au pairs had

22  to be linked to the host families.  So a reliance on just the

23  language of the courtroom minutes was, you know -- that was

24  not the universe of our reliance.

25        But for clarification purposes, is the production

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 69

1    that we are supposed to be doing tomorrow in conjunction with
2    Judge Arguello's order?  What I'm hearing you say that that
3    is not sufficient, that we need to do additional work in
4    gathering duration data for the -- for the au pairs as it
5    relates to the host families?
6            THE COURT:  Well, no.  What I'm saying is that my
7    order only concerned the host families, right.  So I'm saying
8    that you need to give the duration of placement information
9    or dates of employment, whatever you want to call that, for
10   the host families; in other words, how long were the host
11   families on -- on board?  Because it could be that a host
12   family came in, that the au pair that they got had already
13   been an au pair in America somewhere, and so, you know that.
14   I'm trying to clarify my order, which had nothing to do with
15   au pairs, because the au pair information I denied until
16   Judge Arguello ordered that.
17           So on her written order, you know, it's very clear
18   that you have to give that information up because she puts it
19   right in there and she calls it the "au pair's dates of
20   employment."  So I'm -- the way she wrote it with the
21   apostrophe S, it looks like for each au pair, they have to
22   say dates of employment, which, generically, I would think is
23   dates of placement with a host family, but that's separate
24   from my order.
25           Now, if you want to do it in terms of a specific

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 70

1   reference, I think that's acceptable, since you didn't do it

2   before, you know.  And I don't blame you for not, you know,

3   really getting that out of my order.

4           So since you didn't do it before, you could link

5   it, if you want, but some way that makes it your

6   responsibility to give those, rather than the plaintiffs to

7   have to go dig for it since you now have to give it all up.

8   So if you want to link it, that's fine.

9           MS. KOZAL:  Okay.  I guess I'm just trying to

10  envision how this works because this -- I want to emphasize

11  that this is an incredible amount of labor for our clients to

12  gather this data.  It's not just at their fingertips.

13          So as I see it, we'll respond to the judge's order

14  tomorrow.  But with respect to the host family data, we need

15  to indicate how long those host families were a part of the

16  program.  But are you also stating that we could somehow

17  reference the data that's being produced tomorrow in order to

18  satisfy the obligations under your order?  And I apologize

19  for not fully understanding this.

20          MS. SMALLS:  Your Honor, if I may just clarify a

21  bit.

22          So the production of host family information

23  requires the name of the host family and all of the relevant

24  contact information.  And then it also includes the name of

25  the au pair and should have included information related to

Johana Paola Beltran, et al. vs.                    Telephonic Informal Discovery/Status Conference
InterExchange, Inc., et al.                                                            May 11, 2017

Page 71

1    the dates of placement.

2              So what defendants -- AIFS and AuPairCare produced

3    was names of host families and contact information and a name

4    of an au pair.  And there are on that list several -- host

5    families can be listed more than once because sometimes host

6    families host more than one au pair.  But for the host

7    family, that list, whether the host family and then there is

8    a name of au pair, for the host family list that served as

9    the basis for the host family survey, which went out 48 hours

10   ago, that did not include the information, which is long

11   overdue, in terms of the timeline that that information

12   should have been produced before plaintiffs sent out their

13   survey.  It did not include the duration of placement data

14   for the au pair as each of those entries was listed for each

15   host family.

16             So what plaintiffs are asking is -- and I think you

17   hit it on the head of whether the burden is on us to try to

18   combine or scrub that information in conjunction with the

19   production that is due tomorrow, subject to a different order

20   from Judge Arguello.  But what we are asking is for

21   defendants to fulfill their obligation under your order to

22   include the duration of placement data for the host families

23   that were previously produced.

24             It has an au pair name.  If there is a way for them

25   to produce -- to be responsive to Judge Arguello's order

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 72

1   where they have to pull the au pair data and somehow transfer

2   that information to their host family production, plaintiffs

3   do not have a view one way or the other; but our position is

4   we should have a file in Native or Excel format that is

5   responsive to your order with host family contact information

6   and au pair name and the duration of placement for that au

7   pair.

8            THE COURT:  And that's exactly what I'm saying.

9            You know, if -- if it's easily -- I don't know

10  whether that's easy or hard.  The problem the Court is having

11  is, I don't know what any of this looks like and both of you

12  do.  But I -- what I'm telling you is, I agree with

13  plaintiffs on this because my order was -- was issued in a

14  different context before you had to give up any au pair

15  information.

16           So I want you to give the complete host family

17  information separately if you can.  Well, I know you can, but

18  I -- what I'm telling you is, you can use whatever means you

19  need to use about it.  For instance, if you have numbered

20  your au pairs, right, each one has a given number, and you

21  could -- you could cross-reference by saying, you know, See

22  au pair number 34, 452, whatever it is, if you want, if

23  that's an easier way do it, but I want you to make that

24  cross-reference.

25           And, frankly, one of the reasons why is that we're

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 73

1  going to end up with problems where people have similar or

2  the same names, or a name that really is the same, it's the

3  same person, but she got -- she changed her name for some

4  reason.  I won't say get married.  I don't know whether that

5  applies but, you know, whatever.  So I -- so I think those

6  connections have to be made by the sponsor because you're the

7  only one that knows whether they're connected or not.

8          So if you have to do it totally separate, then so

9  be it; but if you want to use a cross-reference to your

10 production on au pair names and contact information, that's

11 okay.  Just tell them what the cross-reference is.  It's not

12 up to them to draw the cross-reference.  It's up to you, the

13 sponsored defendants.

14         Is that clearer, Ms. Kozal?

15         MS. KOZAL:  I think so, Your Honor.

16         I guess what I'm struggling with is that I have

17 conveyed to the plaintiffs multiple times the au pair names

18 that are listed with the host family contact information that

19 we gave in response to your order, that all of those are in

20 the 2009 forward timeframe.  So tomorrow when we're required

21 to produce the list of au pairs, all of them are also from

22 the 2009 timeframe forward.

23         So if I were to cross-reference -- we don't have a

24 situation where we have the au pairs listed by some kind of

25 identifying number; we just have their name.  But plaintiffs

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 74

1    could cross-reference what we have produced already in

2    compliance with your order to what we will produce tomorrow

3    to get the data that they're claiming they need today.

4              MS. SMALLS:  And, Your Honor, that proposal puts

5    the onus on plaintiffs.  And again, I would just note that we

6    are talking about two separate obligations on behalf of

7    defendants of which the Court is trying to offer them a

8    compromise to ease the burden on them.  But what plaintiffs

9    seek is compliance in the first instance with your order.

10   And your order that required host family contact information,

11   and as you have outlined in this conversation au pair -- the

12   dates of placements for au pairs, that's what we seek.

13             And a separate order from Judge Arguello that is

14   not germane to this discussion provides for the production of

15   au pair information starting in 2009.

16             I -- to me, it is -- it is a fairly clear request

17   and I had heard the guidance from the Court that I don't -- I

18   don't want to interpret what you're saying, but I had heard

19   you to say that they should act in compliance with both

20   orders.  They are overdue in terms of compliance with

21   production to your order, which other defendants have already

22   complied and served as the basis for the host family survey

23   that is already in progress.

24             How they accomplish that, I don't think is really

25   appropriate to engage the Court on other than the fact that

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 75

1  they -- they are out of compliance with your initial order

2  and need to revise their production or update their

3  production to include information that they did not

4  previously include.

5       THE COURT:  Well, I think what Ms. Kozal is saying

6  is that if -- if the information was supplemented -- let's

7  say, instead of reproducing everything, what they did is

8  supplement, what they would give you is for every au pair

9  named, they would give you the dates of employment of the au

10 pair, and you're getting that tomorrow.  It's part of another

11 order, I agree with you, but you're getting that tomorrow.

12      And if they supplemented and said, you know -- they

13 can't apparently link it any clearer than by name, you know,

14 so you've got the names of the au pairs that worked for the

15 host family.  And tomorrow you're getting the au pairs'

16 information and the dates of employment there and that's all

17 they would give you if they supplemented.  They would name

18 the au pair and give you the dates of employment.  I guess

19 the difference is they would name the au pair and name the

20 host family, right?  Is that the -- is that really the key?

21      MS. SMALLS:  Well, I think the other (inaudible)

22 that you identified earlier is who is doing the

23 cross-referencing, whether it's more accurate and more

24 reliable for the plaintiffs and whether the burden should be

25 on the plaintiffs to cross-reference two different lists or

Page 76

1   whether defendants should do it in however the best way to do

2   that, in their best judgment, to ensure that the information

3   that they are providing us is accurate and provide it to

4   plaintiffs, in accordance with your order and in accordance

5   with Judge Arguello's order.

6            THE COURT:  Okay.  Let me -- let me tell you this

7   then.  Here is what I will tell you.

8            If they were to supplement and they said, This is

9   our supplement to Judge Tafoya's order on the host families,

10  here are all the au pairs' dates of employment and the au

11  pairs are all listed by at -- you know, in the host family

12  information, I would -- I think I would find that adequate

13  because, you know, when you have to supplement, I agree they

14  didn't do it.  Okay.  They had an objection -- and it seems a

15  fairly well-founded, I don't think the oral order was as

16  clear as it could have been.

17           So if they're going to supplement, which that is my

18  order, that you're going to have to somehow supplement this

19  information, and that's how they did it, I would think that's

20  okay.  Because I don't see any reason to reproduce

21  information you already have if they're just going to do it

22  by name anyway.  It's no easier, no harder, no nothing.  You

23  know, they're just going to -- that's what they're going to

24  say.

25           So I guess at this point, what I would say is I

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 77

1   think you should look at what they supplement.  And I know

2   what you're saying.  You are saying you want them to add the

3   information to the list they gave you of host families,

4   rather than you having to go look at the au pair name and see

5   what the employment dates were.  But the information is the

6   information, and if they supplemented it that way, I would

7   think that's okay.  I wouldn't make them reproduce everything

8   over again.  So I don't see why they should do it now.

9          Why don't you take a look at it and see if it's

10  going to be -- if there is some real burden about it,

11  something really hard, like you just can't tell from the

12  dates of employment, that it was always with that one host

13  family, that's a problem that I see maybe.

14         MS. SMALLS:  Your Honor, I would just say that we

15  don't know because they haven't produced it yet.  And so

16  plaintiffs tried to address this -- this very issue about

17  whether this was -- there was (inaudible) issue by asking

18  AIFS and AuPairCare to produce the information that they say

19  that they are going to produce and that will take care of or

20  address the information that they should have already

21  produced beforehand so that plaintiffs could make that

22  judgment.

23         It has now been, you know, two weeks, about, since

24  we first raised this issue, you know, with the clerk to get

25  something on the schedule for an informal discovery

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 78

 1    conference so -- and our host family survey is already out.

 2            So we're happy to proceed and operate on the basis

 3    that we will receive information in -- you know, in a usable

 4    Excel format that acts in conformity with both your order and

 5    Judge Arguello's order; but again, you know, plaintiffs

 6    cannot project -- we have been surprised on a number of

 7    occasions by the positions that the defendants have taken

 8    with respect to this order and other orders with what we

 9    consider clear language, you know, with respect to orders

10    that they should comply with.

11            If they provide everything that they say they are

12    going to provide in the format that they provide it, then

13    hopefully we will have, you know, no dispute; but what I

14    would ask is to the extent that there is an issue, that we be

15    able to quickly get back on your calendar to get your

16    guidance on how to fix it.

17            THE COURT:  Okay.  I think that's a good idea to

18    look at it and see if this is a real issue or not.

19            I will tell defendants' counsel, Ms. Kozal and

20    Mr. Tucker, the one place where I could see there might be a

21    problem -- and, you know, maybe there is absolutely

22    nothing -- is that Judge Arguello's order regarding the au

23    pair information doesn't say anything about linking it to a

24    host family.

25            So if they are not -- if it is not completely

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 79

1    obvious, that would not be compliance with my order because

2    my order would have been -- you know, my order had to do with

3    host families.  So, yes, here is the au pair that worked for

4    the host family.  There is no information other than the name

5    of the au pair required in my order, but you gave the au

6    pair -- and then you would give the duration that that au

7    pair was employed by that host family.

8            And that's the place where I see that the two

9    orders do not overlap.

10           So if there is a problem there -- and I'm just

11   going to leave this to you, defendants, to say whether or not

12   you see that problem -- then you need to fix that because

13   then it wouldn't be enough just to give them what's compliant

14   with Judge Arguello's order, because I can see a situation

15   where you can't -- the employment dates are different.

16           I mean, I think I heard about one of the -- isn't

17   one of the named plaintiffs had difficulty with one family

18   and had to be placed with a different one?  So if that

19   happens, then your dates of employment for the au pair don't

20   match the date of placement with the host family.

21           MR. TUCKER:  Your Honor, if I may.

22           To your point, I think that is a real issue here.

23   And so my request would be because of that issue, we would

24   need some time to supplement the placement information if the

25   employment information -- the, quote/unquote, employment

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 80

1    information -- you know, the (inaudible) dispute the use of

2    the word "employment", but because it's not synched up in

3    accordance with Judge Arguello's order, would be host family.

4    So our request of AIFS is that we would have some time to

5    provide that information.

6            THE COURT:  How much time?

7            MR. TUCKER:  A week.

8            THE COURT:  I think that's fair.  Do you have any

9    objection to that, Ms. Smalls?  And then you get the

10   information that you really need.  You're getting them to

11   link it to the host family so it all matches up.

12           MS. SMALLS:  Understanding that it takes

13   information -- time to pull information, I have no knowledge

14   in terms -- in terms of how long it actually takes to pull

15   it.  I think plaintiffs would concede to a week only if it

16   was a freestanding production of host family information with

17   the au pair data, rather than a production that required us

18   to cross-reference or do anything else with two different

19   productions and try to cobble that together, because it

20   doesn't seem that there is any basis for delay if the onus is

21   going to be on plaintiffs to do that.  And I would just note

22   that it has been -- it has been several weeks since, you

23   know, defendants were obligated to produce this information

24   and our host family survey is already in process.

25           And it would be helpful, actually, to have this

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 81

1    information before we file our motion for class cert, now

2    that I'm actually looking at the calendar.  Because, again,

3    this is -- this is data we are compiling with the intention

4    of potentially using it in our brief.

5              And as I said to you, it is important to have that

6    information, not just as self-reported from the family, but

7    to the extent that it is -- the sponsors have accurate

8    information about the dates of placement of au pairs, it will

9    help our data and what we actually present to be more

10   accurate.

11             So if we are looking at the 11th and don't get the

12   data until the 18th, you know, that really, you know, I

13   think -- you know, handicaps us in terms of our ability to

14   use the information that we are then collecting before we

15   scrub it and potentially use it in our brief on the 19th.

16             And then the second thing I would just note is that

17   the two defendants that you have on the line are two of the

18   largest.  And so, you know, it's not insignificant whereas,

19   some of defendants, you know, hosted a few hundred au pairs.

20   The fact that these two defendants have withheld this

21   information is not insignificant in terms of the universe of

22   host families that it affects and, therefore, our ability to

23   ensure the integrity of the data.

24             So that would be my only flag and concern about

25   giving a full week, with knowing that our deadline to file

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 82

1    the motion for class cert is next Friday.

2            THE COURT:  Well, I'm not giving any time to

3    produce what you -- you defendants need to produce tomorrow,

4    right?  I'm not giving you any extra time on that.

5            MR. TUCKER:  We understand that, yes.

6            THE COURT:  Yes.  This would just be for the

7    additional information that links up kind of, if you will,

8    with the host family chart that says the employment of this

9    particular au pair was of a certain duration.  Because I

10   don't think those are always going to match perfectly;

11   however, my guess is the vast majority will match up.  You

12   know, a person is placed in one host family -- now, the host

13   family can have a lot more than one au pair; but it seems

14   like because of the visa situation, it's less likely that the

15   au pair -- au pairs have a bunch of host families, but they

16   may have two.  So -- so that's the danger there that I see.

17           That's the information you would not have for a

18   week, but you would have the au pair list.

19           So, you know, in general, you would have the vast

20   majority of the matchup pretty easily by just looking at --

21   under the -- under the au pair's name.

22           So I think a week should be sufficient to -- say,

23   to maybe the 17th, instead of the 18th, one day short.  How

24   about six days?  Will that work?

25           MS. SMALLS:  That would be better than the 18th.

Page 83

1          THE COURT:  Okay.  So let's do that.

2          MS. KOZAL:  I just need a bullet point of

3  clarification in response to what Ms. Smalls was just

4  referring to.

5          First of all, the way I understand it is our host

6  family list has already been utilized in furtherance of

7  conducting the survey that has already been sent out.  Is

8  that incorrect?

9          MS. SMALLS:  That's correct.

10         MS. KOZAL:  So to the extent that you have any

11  response from an AuPairCare host family that indicated that

12  they had an au pair in 2007 or 2008, you would have that

13  information?

14         MS. SMALLS:  I don't -- I don't understand what

15  you're asking or why we need to do this before the Court.

16         MS. KOZAL:  Well, I'm trying to get -- I'm trying

17  to understand, number one, how to explain to my client that

18  they need to go back and link further information that --

19  that is already at your disposal and the reason for that.

20         I'm still -- and I apologize to the Court and all

21  counsel.  I'm still not clear on whether or not my obligation

22  is to go back and add an additional column to the host family

23  list that we've already produced from the 2009 timeframe

24  going forward or whether or not my production, in conformance

25  with Judge Arguello's order, tomorrow would satisfy that

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 84

 1    need.

 2              THE COURT:  Well, it's the Court's view that, for

 3    the most part, your production tomorrow would probably

 4    satisfy the need.  However, it does create one step for

 5    plaintiffs, because they need to go look up the au pair.  I

 6    don't consider that to be particularly onerous, and so I

 7    would not make you redo the whole production by adding a

 8    column when you've already given them the information.

 9              My concern is that there may be a point where that

10    information is not quite accurate because if a -- if an au

11    pair leaves a host family and goes to another one, but

12    doesn't have a break in -- and I'm putting this in quotes --

13    "employment," so you're placed differently in a different

14    spot, but it's all part of that same year, or however long it

15    is that they were here, then the dates that you're giving on

16    the au pair information won't be the same as the host family

17    information because one host family maybe only had the au

18    pair for a couple of months.  So those -- because the

19    information isn't there, right, so --

20              MS. SMALLS:  Your Honor --

21              THE COURT:  Yes.

22              MS. SMALLS:  -- if I can just offer, I think we've

23    come to the place that defendants have said that they are and

24    expect to produce tomorrow a production that will fully be in

25    compliance with Judge Arguello's order.  Plaintiffs will

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 85

1   accept that production and send it to our data team and see

2   whether it is sufficient or not and why not, but it should --

3   it should be sufficient.  But again, plaintiffs cannot

4   project what defendants are going to produce prior to their

5   actual production.

6              To the extent that there is an issue with the

7   production, I would -- we would suggest that we reach out to

8   defendants, identify that issue, and ask them to address it.

9   And if it can be addressed, short of doing the wholesale

10  production of host family information with the duration of --

11  or doing a whole new column for the entire production of host

12  family production, plaintiffs will, in good faith, endeavor

13  do that.  But if it cannot, we will ask defendants to produce

14  the information that plaintiffs need and was required by the

15  previous order.

16             I think that at this stage, the production is

17  coming, I think the likelihood that there is an issue at this

18  point is fairly small.  And so I really kind of hate to take

19  more of the Court's time discussing this and just say that I

20  think you've made yourself clear about what defendants'

21  obligations are and also the fact that the production from

22  Judge Arguello should address what most of our needs -- most,

23  if not all, of our needs.

24             And we can -- plaintiffs can endeavor to reach out

25  to defendants if that is not the case and then, if necessary,

Johana Paola Beltran, et al. vs.
InterExchange, Inc., et al.

Telephonic Informal Discovery/Status Conference
May 11, 2017

Page 86

1  re-raise with the Court if there is another issue.  But I

2  just -- I don't want to take any more of the Court's time

3  discussing this if there is no issue with the pending

4  production forthcoming tomorrow.

5            THE COURT:  Is that an acceptable place to leave it

6  for defendants?

7            MR. TUCKER:  Yes, Your Honor.

8            MS. KOZAL:  Yes, Your Honor.  We are working

9  diligently to compile the list in response to Judge

10  Arguello's order, so that approach sounds completely

11  reasonable to me.

12            THE COURT:  Okay.  We'll leave it at that then.  Is

13  there -- are there any other issues we need to take up?

14            MS. SMALLS:  No, Your Honor.

15            THE COURT:  Defendants, you agree?

16            MR. TUCKER:  Yes, Your Honor.

17            MS. KOZAL:  Yes, Your Honor.  Thank you.

18            THE COURT:  Okay, all right.  We'll leave it there

19  then and hopefully it will all work out.  If it doesn't,

20  though, you know, just call my clerk and we'll try to get you

21  on the calendar pretty quickly.

22            So court will be in recess.

23            MS. SMALLS:  Thank you.

24            MR. TUCKER:  Thank you.

25            (Whereupon, the within hearing was then in

Johana Paola Beltran, et al. vs.                        Telephonic Informal Discovery/Status Conference
InterExchange, Inc., et al.                                                                    May 11, 2017

Page 87

1    conclusion at 11:28 a.m.)

2

3           I certify that the foregoing is a correct

4    transcript to the best of my ability to hear and understand

5    the audio recording and based on the quality of the audio

6    recording from the above-entitled matter.

7

8    /s/ Dyann Patterson                    May 24, 2017

9    Signature of Transcriber               Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25