IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ, and
SARAH CAROLINE AZUELA RASCON,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a/ Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a ProAuPair,
THE 20/20 CARE EXCHANGE, INC., d/b/a The International Au Pair Exchange,
ASSOCIATES IN CULTERUAL EXCANGE, d/b/a GoAu Pair, and
GOAUPAIR OPERATIONS, LLC,

    Defendants.

---

**SECOND AMENDED ORDER GRANTING MOTION FOR CONDITIONAL
COLLECTIVE ACTION CERTIFICATION**

This matter is before the Court on Plaintiffs' Motion for Conditional Collective Action Certification (Doc. # 325) and Plaintiffs' Second Motion for Conditional Collective Action Certification (Doc. # 330).

Pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the named Plaintiffs in this action seek conditional collective action certification of eleven classes and subclasses and the issuance of a court-supervised notice to potential opt-in plaintiffs. Plaintiffs allege Defendants APC, Cultural Care, Inc. ("CC"), Au Pair in America ("APIA"), GoAuPair ("GAP"), Interexchange, Inc. ("InterExchange"), and Expert Au Pair ("EAP") (collectively, the "FLSA Defendants") violated the FLSA by uniformly implementing a policy by which *au pairs* were paid $195.75 a week for up to 45 hours of work, a rate below the federal minimum wage.[1]

For the reasons detailed herein, the motions for conditional certification are granted.

## I. BACKGROUND

### A. FACTS

The FLSA Defendants in this action are a collection of federally authorized business entities with an exclusive right to recruit and place *au pairs* with host families

---

[1] There are two motions for conditional certification now before the Court. The first pertains to named Plaintiffs Johana Paola Beltran, Beaudette Deetlefs, Lusapho Hlatshaneni, and Alexandra Gonzalez Cortes and FLSA Defendants CC, APIA, GAP, and InterExchange. The second pertains to named Plaintiffs Laura Mejia Jimenez, Juliane Harning, and Nicole Mapledoram and FLSA Defendants APC and EAP. Save for factual recitations specially tailored for the individual plaintiffs and their respective sponsor FLSA Defendants, the motions are identical.

in the United States pursuant to the J-1 visa program.[2]  In brief, this suit arises from allegations that the FLSA Defendants conspired to set weekly wages for sponsored *au pairs* at unlawfully low rates, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, *et seq.*, and the FLSA.

Specifically, Plaintiffs allege that the FLSA Defendants "uniformly determined" that *au pairs* would be paid $195.75 per week for up to 45 hours of work and, in so doing, effectuated a policy of paying Plaintiffs and other similarly situated *au pairs* approximately $4.35 an hour, well below the federal minimum hourly wage of $7.25. (Doc. ## 325 at 1–2, 330 at 1–2.)  Plaintiffs further allege that they each routinely worked in excess of 40 hours per week without receiving overtime compensation, that they paid fees to the FLSA Defendants before being permitted to begin work as *au pairs*, that they were subject to the FLSA Defendants' policy of deducting "room and board" from their wages, and that they were required to participate in mandatory training presented by their respective sponsor Defendants without receiving any compensation. (*Id.*)  Plaintiffs argue that each of these allegations apply with equal force to all of the sponsored *au pairs*—named Plaintiffs and putative class members—because of the FLSA Defendants' collective and conspiratorial decision to implement identical policies with respect to wages.  (*Id.*)

---

[2] The history of the J-1 visa program, its administration, and the efforts of the United States government to regulate the *au pair* industry is recounted in considerable detail in a Report and Recommendation addressing past motions in this case issued by United States Magistrate Judge Kathleen M. Tafoya on February 22, 2016.  (Doc. # 240.)

**B.     PROCEDURAL HISTORY AND INSTANT MOTIONS**

This suit, which has been vigorously litigated from the beginning, was commenced on November 13, 2014. (Doc. # 1.) A first amended complaint was filed on March 13, 2015. (Doc. # 101.) A flurry of motions to dismiss were thereafter filed by the Defendants, all of which were adjudicated in an order of this Court issued on March 31, 2016. (Doc. # 258.) In brief, the motions to dismiss succeeded in ejecting certain claims brought pursuant to the Utah Minimum Wage Act and claims for breach of contract, but the suit proceeded largely intact. A second amended complaint was filed on October 17, 2016, which added more named plaintiffs to the action. (Doc. # 395.)

In July and August of 2016, Plaintiffs filed a set of motions seeking conditional certification of the suit as a collective action under § 216(b) of the FLSA. (Doc. ## 325, 330.) Plaintiffs seek conditional certification of eleven classes or subclasses, described as follows:[3]

- All current and former *au pairs* for whom Defendant InterExchange, Inc. was a J-1 Visa Sponsor.

- All current and former *au pairs* for whom Defendant American Institute for Foreign Study, d/b/a Au Pair in America, was a J-1 Visa Sponsor.

- All current and former *au pairs* for whom Defendant American Institute for Foreign Study, d/b/a Au Pair in America, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.

---

[3] There is some confusion among the parties, no doubt created by an inconsistency in both motions for conditional certification, concerning whether the classes are defined in reference to a specified range of time. In a non-substantive introductory section of the motions for preliminary certification, Plaintiffs seek conditional certification with "respect to all current and former *au pairs* who were sponsored by . . . [the FLSA Defendants] at any time during the last three (3) years." (Doc. ## 325 at 1, 330 at 1.) However, in the body of the motions, and in the second amended complaint, *see* (Doc. # 395 at 100–03), the class definitions are not time-limited. The Court construes and evaluates the request for conditional certification using the unconstrained class definition.

- All current and former *au pairs* for whom Defendant Cultural Care, Inc., d/b/a Cultural Care Au Pair, was a J-1 Visa Sponsor.

- All current and former *au pairs* for whom Defendant Cultural Care, Inc., d/b/a Cultural Care Au Pair, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.

- All current and former *au pairs* for whom Defendant GoAuPair was a J-1 Visa Sponsor.

- All current and former *au pairs* for whom Defendant GoAuPair was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.

- All current and former *au pairs* for whom Defendant AuPairCare Inc. was a J-1 Visa Sponsor.

- All current and former *au pairs* for whom Defendant Au Pair Care Inc. was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.

- All current and former *au pairs* for whom Defendant Expert Group International Inc., d/b/a Expert Au Pair, was a J-1 Visa Sponsor.

- All current and former *au pairs* for whom Defendant Expert Group International Inc., d/b/a Expert Au Pair, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.

Plaintiffs also seek an order requiring each Defendant to provide to Plaintiffs' counsel, within fourteen days, the following identifying information for potential class members:

• The names of all *au pairs* sponsored by the Defendant at any time on or after August 15, 2013;
• The *au pair*'s last known address;
• The *au pair*'s home country address;
• Any and all e-mail addresses associated with the *au pair*;
• Any and all telephone numbers (including cellular numbers) associated with the *au pair*;

5

> • Any and all other contact information for the *au pair*, such as Facebook ID, Twitter handle, Skype address, or the like;
> • The *au pair*'s dates of employment;
> • The *au pair*'s date of birth;
> • The *au pair*'s social security number, alien number (known as an "A number"), or other government issued identifier;
> • The *au pair*'s passport number and country of issuance;
> • A copy of the *au pair*'s J-1 Visa and supporting application; and
> • The name, address, telephone number(s), and e-mail addresses(s) for any family or families that hosted the *au pair*.

Additionally, Plaintiffs seek approval of the proposed form of notice attached as an exhibit to their motions, (Doc. ## 325-2, 330-2); permission to deliver notice by mail, e-mail, or comparable electronic communications, and publication; and an order requiring the FLSA Defendants to "conspicuously post the Notice and consent form on their own websites." (Doc. ## 325 at 18–19, 330 at 16.)  Defendants filed a number of responses to the motions, (Doc. ## 355, 359, 360, 375), and the Plaintiffs thereafter replied (Doc. # 383).  Many of the arguments made in response and reply go well beyond the relatively lenient analysis required for this very preliminary, first-stage certification—still, the Court has carefully reviewed all of the filings.

## II. LEGAL STANDARD

Section 216(b) of the FLSA authorizes a collective action to proceed under the FLSA for minimum wage violations.  The statute provides that an action "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact . . . ." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Further, a collective action gives similarly situated plaintiffs

"the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.*

Courts take a two-step approach to certifying FLSA collective actions. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–05 (10th Cir. 2001). At the first step, prior to the completion of discovery, the district court makes a "notice stage" determination of whether potential claimants are similarly situated. (*Id.*) For conditional certification at the notice stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (quotation omitted). "This initial step creates a lenient standard which typically results in conditional certification of a representative class." *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007). At this notice stage, "a court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations." *Id.* at 434.

The second step for class certification under § 216(b) demands a higher level of scrutiny. At the second step, which occurs after discovery is complete and usually prompted by a motion to decertify, a district court examines, *inter alia*, any disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendant that appear to be individual to each plaintiff, and fairness and procedural considerations. *See Thiessen*, 267 F.3d at 1103.

## III.  ANALYSIS

A.  PLAINTIFFS' REQUESTS FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION

Given that discovery has not yet been completed, the parties do not dispute that the Court should apply the more lenient first-step approach to evaluate the pending motions for preliminary certification.

Plaintiffs argue they have met their burden of presenting substantial allegations that the proposed class members were "together the victims of a single decision, policy, or plan."  *Thiessen*, 267 F.3d at 1102.  Specifically, Plaintiffs allege in the underlying complaint and in the motions for conditional certification that a uniform and conspiratorial policy amongst the FLSA Defendants set the weekly wages for all *au pairs* below the federal minimum wage, failed to compensate *au pairs* for hours worked in excess of forty per week, failed to compensate *au pairs* for time spent in training, and took illegal deductions or credits from the *au pairs*' wages.  (Doc. ## 325 at 7, 330 at 7.)

The FLSA Defendants counter with a number of arguments, most of which go well beyond the relatively shallow inquiry that is appropriate for first-stage conditional certification.  Generally, the FLSA Defendants oppose the instant motion on the basis that Plaintiffs failed to conclusively demonstrate that they are similarly situated with a universe of unidentified *au pairs* also sponsored by a respective FLSA Defendant.

In adjudicating a raft of motions to dismiss, this Court already concluded that Plaintiffs adequately alleged an antitrust conspiracy, meaning that their pleadings satisfactorily alleged an agreement among the FLSA Defendants to fix wages at an unlawfully low level.  (Doc. # 258 at 3–19.)  The conspiracy alleged in the underlying

8

complaint represents precisely the "single decision, policy, or plan" that would make Plaintiffs and other *au pairs* sponsored by the FLSA Defendants similarly situated. These allegations alone are sufficient to comfortably meet Plaintiffs' limited burden at the notice stage. Moreover, in support of the present motions, Plaintiffs submitted signed declarations relating their own experiences securing employment as *au pairs* and a number of representations made by the FLSA Defendants concerning their compensation policies. (Doc. ## 325-1, 330-1.) The affidavits reiterate the allegations in the complaint concerning non-payment for overtime, a requirement to attend mandatory training without compensation, and the payment of fees associated with the employment. In many cases, the affidavits reference the uniformity of the compensation policies among sponsor agencies, which, at the very least, impliedly establishes for the purposes of conditional certification that other, unnamed *au pairs* employed by the FLSA Defendants were similarly situated.

Defendants seek to derail conditional certification by leaning on minor variances in the individual circumstances of particular Plaintiffs that might set them apart from an unidentified class of *au pairs*. However, "the predominance of individual questions is only relevant at the post-discovery stage of the collective action certification." *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2011 WL 2791331, at *6 (D. Colo. July 14, 2011). The Court recognizes that additional discovery might bolster existing evidence of material differences between the Plaintiffs and putative class members. More searching scrutiny will be warranted at the close of discovery but, at this early phase, the interests of justice and judicial economy counsel in favor of certification. *See*

*Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 690 (W.D. Mo. 2007) ("[A]t this stage in the litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs."). Thus, the Court finds that Plaintiffs have provided "substantial allegations" that the potential class members of the eleven classes and subclasses were "together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

**B.    NOTICE**

In light of the Court's conclusion that conditional certification of eleven FLSA classes and subclasses is appropriate, Plaintiffs may disseminate notice and consent forms to potential class members. *See Hoffman-La Roche*, 493 U.S. at 169-70. Plaintiffs submitted proposed notice and consent forms for the Court's review. (Doc. ## 325-2, 330-2.) "Under the FLSA, the Court has the power and duty to ensure that the notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary." *Lewis v. ASAP Land Exp., Inc.*, No. 07-CV-2226, 2008 WL 2152049, at *2 (D. Kan. May 21, 2008) (unpublished). Defendants made a number of objections in their responses, and the Court will respond to each in turn:

1.    Defendants object to the neutrality of the notice language. Plaintiffs' proposed notice and consent refers to putative class members as "employees," refers to Defendants as "employers," and uses language suggesting that Defendants had an employer-employee relationship with *au pairs*. The FLSA Defendants still strongly dispute that they are employers under the FLSA, and it is true that no determination has yet been made on this issue.

10

The Court agrees with Defendants that the language is not neutral and SUSTAINS the objection. The Notice should refer to any potential claimants simply as *au pairs*, and any of the FLSA Defendants as "visa sponsors." Thus, Plaintiffs are ORDERED to make this change.

2. Defendants object that the proposed notice fails to properly set forth the obligations of a potential plaintiff that opts into this action, or their recovery prospects. The Court SUSTAINS THIS OBJECTION IN PART AND OVERRULES IN PART. Defendants propose that the Notice should advise potential claimants that they may have to pay costs if they do not prevail. "[C]ourts typically refuse requests to include a warning of possible costs in a class notice." *Hose v. Henry Indus., Inc.*, 49 F. Supp. 3d 906, 919 (D. Kan. 2014), *order clarified sub nom. Hose v. Henry Indus.*, No. 13-2490-JTM, 2014 WL 5510927 (D. Kan. Oct. 31, 2014). Moreover, Plaintiffs' counsel have accepted responsibility for the costs of litigation should the class not prevail. As such, warning the class in the notice is neither necessary nor appropriate.

The Court, however, agrees with the Defendants that the proposed notice fails to inform potential plaintiffs of other obligations they may encounter if they opt into this action. "[I]t is reasonable and necessary to inform potential plaintiffs that they may be deposed, required to submit written discovery, compelled to testify, and obligated to appear in Denver." *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2012 WL 638119, at *6 (D. Colo. Feb. 28, 2012). Accordingly, Plaintiffs are ORDERED to include the following language in the proposed notice: "While this suit is pending you

may be required to submit documents and written answers to questions and to testify under oath at a deposition, hearing, or trial, which may take place in Denver, Colorado."

3. In order to facilitate notice, Plaintiffs request an order of this Court requiring the FLSA Defendants to divulge within fourteen days a list of personal information for current and former *au pairs*, which was listed *supra*. The Defendants object, arguing some information is either unnecessary to effectuate notice, or overly intrusive. This Court agrees. The majority of the requested information will do nothing to effectuate notice, is needlessly intrusive, and will create delay to assemble. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) ("[C]ourts typically decline to allow discovery [of social security numbers] in the first instance . . . ."); *Stickle v. SCI W. Market Support Ctr.*, L.P., 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009) (notice discovery should avoid "needless intrusion into the privacy" of putative class members). Accordingly, Defendants' objection is SUSTAINED, and the Court ORDERS that, within 14 fourteen days of the entry of this order, the FLSA Defendants disclose the following information:

- The names of all *au pairs* sponsored by the FLSA Defendant at any time on or after July 24, 2009;
- The *au pair*'s last known address;
- The *au pair*'s home country address;
- Any and all e-mail addresses associated with the *au pair*;
- Any and all telephone numbers (including cellular numbers) associated with the *au pair*;
- Any and all other contact information for the *au pair*, such as Facebook ID, Twitter handle, Skype address, or the like;
- The *au pair*'s dates of employment.

4.     Plaintiffs request notice be distributed via mail, email, publication, and other electronic means, including social media platforms like Facebook. Defendants object, arguing notice should be given only by mail and email.

Recent opinions recognize the efficiency of the internet in communicating to class members. *See, e.g., Mark v. Gawker Media LLC*, No. 13-CV-4347 AJN, 2014 WL 5557489, at *5 (S.D.N.Y Nov. 3, 2014) ("To the extent Plaintiffs propose to use social media to provide potential plaintiffs with notice that mirrors the notice otherwise approved by the Court, that request is granted.") The Court agrees that electronic notice through social media platforms is particularly appropriate for classes comprised of largely young, largely transient unnamed plaintiffs, because email addresses and physical addresses may not "provide a reliable, durable form of contact . . . ." *Woods v. Vector Marketing Corp.*, 14-V-0264-EMC, 2015 WL 1198593, at *6–7 (N.D. Cal. Mar. 16, 2015). Like the plaintiffs in *Woods*, putative class members here are "particularly likely to maintain a social networking presence." *Id.* (approving the use of Facebook for posting notice subject to court approval of the Facebook ad content). Accordingly, Defendants' objection is OVERRULED, and Plaintiffs are permitted to distribute notice through the requested channels.

5.     Plaintiffs request an order of this Court directing the FLSA Defendants to post the notice and consent form conspicuously on Defendants' websites. Defendants object, arguing that such a posting would do little to reach potential class members, and could negatively and unfairly impact Defendants' business interests. This Court agrees. A webpage posting "extracts a cost from Defendants," "has the potential to appear

punitive," and has only an incremental chance of reaching plaintiffs who otherwise would receive notice through the avenues already afforded under the current notice plan. *See Gawker*, 2014 WL 5557489, at *3–4. Accordingly, Defendants' objection is SUSTAINED.

6.  Except as specifically addressed above, the Court APPROVES the proposed notice and consent forms. Before sending these materials to potential plaintiffs, Plaintiffs shall provide a new notice form, revised in accordance with this Order, to Defendants for review. Defendants shall have two business days from the receipt of such a revised notice form to assert any objection that the form does not comply with this Order. Defendants may not assert any new objection that it failed to raise in its opposition to the instant motion. If Defendants raise any proper objection, the parties shall confer, and involve the Court only if they are unable to resolve the issue between themselves.

## IV.  **CONCLUSION**

Accordingly, it is ORDERED that Plaintiffs' Motion for Conditional Collective Action Certification (Doc. # 325) and Plaintiffs' Second Motion for Conditional Collective Action Certification (Doc. # 330) are GRANTED, and the eleven plaintiff opt-in class and subclasses, defined *supra*, are conditionally certified as set forth herein.

It is FURTHER ORDERED that Plaintiffs are authorized to send notice and consent forms, in accordance with this Order, to each member of the classes employed

on or after July 24, 2009.[4]  To facilitate the dissemination of such forms, Defendants are ORDERED to provide to Plaintiffs' counsel, within fourteen days of this Order, the identifying information detailed *supra*.  This information should be provided on a computer readable data file.

It is FURTHER ORDERED that a 120 day opt-in period will begin on the date that notice is mailed for each potential opt-in class member to opt into the case.  Plaintiffs are authorized to mail, email, or otherwise serve a reminder notice to all potential class members at the 60 day mark.

It is FURTHER ORDERED that Plaintiffs Johana Paola Beltran, Beaudette Deetlefs, Lusapho Hlatshaneni, Alexandra Ivette Gonzalez, Laura Mejia Jimenez, Juliane Harning, and Nicole Mapledoram are designated as representatives of the conditional classes.

DATED:  June 9, 2017

BY THE COURT:

*Christine M Arguello*

CHRISTINE M. ARGUELLO
United States District Judge

---

[4] There is a dispute as to whether the statute of limitations, *see* 29 U.S.C. 255, has been tolled.  (Doc. # 383 at 30) (alleging Defendants "actively concealed the rights of the putative class members" such that the statute of limitations should be tolled).  At this stage, the Court reserves ruling on the issue, because there is no prejudice to Defendants in notifying putative plaintiffs that may have a claim, and no significant additional burden associated with the accompanying discovery.