IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

       Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

       Defendants.

_____

**DEFENDANT CULTURAL CARE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND**

## INTRODUCTION

Ignoring the procedural status of this case, Plaintiffs have filed this motion in reliance on the wrong standard. The deadline for seeking to amend the pleadings passed on August 15, 2016; thus, as Plaintiffs note in a footnote, any attempt to amend now would be ten months late. In these circumstances, Plaintiffs may not simply move for leave to amend as they have attempted. They must seek relief from the Scheduling Order, which requires that they meet the "good cause" requirement of Rule 16 and demonstrate that, despite their diligent efforts, they could not comply with the deadline. Plaintiffs do not mention Rule 16 or this standard in their Motion to Amend and Incorporated Memorandum of Law (ECF No. 561, "Motion to Amend" or "Motion"), much less show that amendment is warranted under the applicable law. Instead, Plaintiffs focus on other, more lenient standards that miss the mark.

The questions presented by the Motion are straightforward:  Have Plaintiffs come forward with sufficient evidence to show good cause and demonstrate that they could not have requested this proposed amendment before the deadline?  Only if they have, would the Court then ask whether Plaintiffs have shown that amendment is warranted under Rule 15.  Because Plaintiffs cannot satisfy either of these standards, their Motion should be denied.

## **BACKGROUND**

Plaintiffs filed this case on November 13, 2014, and, in lieu of responding to Defendants' first motion to dismiss, filed a First Amended Complaint which added four additional Plaintiffs.  ECF No. 101.  Plaintiffs moved on the deadline the Court had set to join additional parties and amend the pleadings, August 15, 2016, to file a Second Amended Complaint adding four additional plaintiffs.  ECF No. 329.  On November 14, 2016, the Court dismissed one named plaintiff.  ECF No. 432.  This case has persisted with the current parties ever since.

Plaintiffs' Motion to Amend seeks to file a Third Amended Complaint that would add two more categories of additional parties.  First, Plaintiffs seek to add three additional plaintiffs. Mot. at 2. Plaintiffs make no attempt to explain why they are asking to add these named plaintiffs now or to demonstrate the "good cause" they need to show in order to allow the amendment after the Court-imposed deadline.[1]

---

[1] Plaintiffs simply presume that amendment will be allowed, and seek to certify three new subclasses corresponding to the new plaintiffs, each of which purports to assert claims under five different causes of action.  See ECF No. 565-3 (App. A, which identifies sub-classes corresponding solely to the three proposed Plaintiffs).

2

Second, Plaintiffs seek to add a new defendant, International Care, Ltd. ("ICL"). Mot. at 2. ICL is an international affiliate of Cultural Care, Inc. ("Cultural Care") that handles certain tasks in connection with the recruitment of potential au pairs. *See* summary of disclosures, *infra*. Plaintiffs were well aware of the existence of ICL even before this lawsuit was filed. Both of the initial named Plaintiffs who were sponsored by Cultural Care signed an agreement with ICL that lists ICL's registered business address in Switzerland. Ex. A at 1 (Beaudette Deetlefs); Ex. B at 1 (Dayanna Paola Cardenas Caicedo).[2] Ms. Deetlefs and Ms. Cardenas Caicedo produced these agreements in response to Cultural Care's discovery requests. *See* Exs. A, B. Thus the existence of ICL has been known to Plaintiffs for at least several years.

At no point in this litigation has Cultural Care obscured or otherwise hidden the existence of ICL's role in connection with Cultural Care's administration of the au pair program. For example, during the status conference on April 25, 2016—more than a year before Plaintiffs filed their Motion—Cultural Care's former counsel explained to the Court that "au pairs are recruited and their information is done by a foreign entity." ECF No. 307 at 29:20–23. ICL has also been mentioned by the parties on numerous occasions, including many instances before the deadline to amend had passed:

- Plaintiffs' First Amended Complaint, filed on March 13, 2015, and every complaint since then, quotes from the agreement that Plaintiff Beaudette Deetlefs signed with ICL. *See* ECF No. 101 ¶ 303; ECF No. 395 ¶ 331

---

[2] Citations in the form of "Ex. \_\_" refer to the exhibits attached to the Declaration of Justin J. Wolosz, filed herewith.

(Second Am. Compl.); ECF No. 561-2 ¶ 335 (Proposed Third Am. Compl.).

- On April 25, 2016, Cultural Care's counsel stated in a scheduling conference before this Court that Plaintiffs may try "to get discovery from [international entities] that recruit au pairs." ECF No. 307 at 23:18–21.[3]

- In its May 9, 2016 interrogatory responses, Cultural Care stated that plaintiffs were "recruited and screened by International Care, Ltd." Ex. C at 4–5.

- In May 2016, Cultural Care produced documents that further identified ICL, including the 2010 Host Family Handbook referenced in paragraph 383 of the Proposed Third Amended Complaint. This handbook identified ICL (then known as Cultural Care, Ltd.) as Cultural Care's overseas affiliate, "headquartered in Luzern, Switzerland," with foreign offices and staff that "recruit and screen qualified au pair candidates." *See, e.g.*, Ex. D at 10.

- Cultural Care served discovery requests upon Plaintiffs Caicedo (since dismissed) and Deetlefs on July 11, 2016. Exs. E, F. Interrogatory No. 1 asks for all communications between the Plaintiffs and "International Care, Ltd., a Swiss company operating under the registered business name Cultural Care Au Pair." Exs. E and F at 6. Both Plaintiffs objected to this Interrogatory as overbroad, unduly burdensome, and vague. Exs. G and H at 2.

- Cultural Care's Request for Production No. 2, also served on July 11, 2016,

---

[3] Plaintiffs responded: "We don't need to be looking to international disputes at this point . . . . To the extent that those things come out, as has been alluded to for purposes of discovery related to the recruitment of the au pair . . . , that doesn't have to distract or take away from any of the other moving pieces." ECF No. 307 at 28:12–18.

4

- sought "[a]ll communications with, or documents given to you by, . . . International Care, Ltd., including without limitation agreements, completed application package forms, notes, marketing information, or other documents related to the Au Pair Program."  Exs. E and F at 8.  Neither Caicedo nor Deetlefs objected or sought clarification.  *See* Exs. I and J at 4–5.
- As this litigation has progressed, Plaintiffs and Defendants have continued to refer to ICL in correspondence and discovery responses.

Although Plaintiffs knew of ICL and the role it played prior to the deadline to amend pleadings, Plaintiffs only now seek to add ICL as a defendant, claiming in a conclusory manner that they "have only recently been able to understand the full scope of Cultural Care's Position vis-à-vis ICL" and that they "were not in a position to appreciate the extent of ICL's involvement until April 2017."  Mot. at 6–7 & n.3.  The fundamental characteristics of ICL to which they point are that ICL contracts with and recruits au pairs, that ICL is a separate and distinct entity, and that Cultural Care maintains its objection to any request for ICL's documents or other ICL information that is not in Cultural Care's possession, custody, care, or control.  *Id.* at 5–6.

Perhaps recognizing that information disclosed early in the litigation will not justify a late amendment now, Plaintiffs attempt to focus on contracts between Cultural Care and ICL that were produced in April 2017.[4]  *Id.* at 6–7 & n.3.  These contracts

---

[4] These contracts were not requested in Plaintiffs' initial requests for production, but Cultural Care offered to produce them in October 2016 as part of a compromise with respect to discovery issues.  ECF No. 467-14 at 5.  Plaintiffs never responded to this

provide additional detail about the business relationship, which had been referenced on numerous prior occasions, as discussed *supra* (among others). Plaintiffs claim that, upon receiving these documents, they became "aware of the contours of Cultural Care's apparent corporate form defense and the problems with that theory." *Id.* at 7.

## LEGAL STANDARD

In order to file an untimely amended pleading, a party must satisfy a two-part inquiry. First, the moving party must show good cause for its failure to comply with the applicable deadline. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). Second, the party must show that the proposed amendment complies with Rule 15(a). *Id.; see also Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

## ARGUMENT

### I. Plaintiffs Have Not Shown Good Cause for Their Untimely Amendment.

A Court's scheduling order can be modified only upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4). Rule 16(b)'s good-cause standard is "much different than the more lenient standard contained in Rule 15(a)," which governs timely motions to amend. *Woods v. Nationbuilders Ins. Servs.,* No. 11-cv-02151-CMA-KMT, 2014 WL 1213381, at *2-3 (D. Colo. Mar. 24, 2014) (Arguello, J.). To show good cause, a party must demonstrate that it could not comply with the scheduling order, despite diligent efforts. *Birch v. Polaris Indus.*, 812 F.3d 1238, 1247 (10th Cir. 2015). This requires a

---

proposal, so they were not provided at that time. ECF No. 561-8. Plaintiffs resurrected the issue with Cultural Care in April 2017, at which point they were provided.

showing that the party discovered the facts giving rise to its amended complaint after the deadline for amending the pleadings had expired. *See T.D. v. Patton*, 149 F. Supp. 3d 1297, 1310 (D. Colo. 2016). If a party fails to explain why it could not comply with the scheduling order, its motion should be denied. *Woods*, 2014 WL 1213381, at *3.

### A.  There Is No Reason Why Plaintiffs Could Not Have Added the New Named Plaintiffs Before August 15, 2016.

Plaintiffs offer no reason why they could not have added the newly named plaintiffs before the August 15, 2016 deadline. Instead, a footnote acknowledges that Plaintiffs are past the deadline and asks for "relief from the Court's order." Mot. at 4 n.2. The footnote claims that the proposed amendment does not change the "contours of the lawsuit," and that the new plaintiffs could commence individual actions alleging the same claims. *Id.* Plaintiffs therefore urge that "[r]eason and efficiency" weigh in favor of permitting the amendment. *Id.*

If the Court is inclined to consider this argument at all, it should reject it. *See, e.g., In re C.W. Mining Co.*, 740 F.3d 548, 564 (10th Cir. 2014) ("arguments raised in a perfunctory manner, such as in a footnote, are waived") (internal quotations omitted). Neither "[r]eason" nor "efficiency" is sufficient to satisfy the requirements of Rule 16. Instead, the Rule "focuses on the diligence of the party seeking leave to modify the scheduling order." *Woods*, 2014 WL 1213381, at *2; *see also Birch*, 812 F.3d at 1247 (Rule 16(b) requires a showing that the deadline could not be met "despite the movant's diligent efforts") (internal quotations and alterations omitted). Plaintiffs do not assert—because they cannot—that they were somehow incapable of adding the new class representatives before the deadline; indeed, they did so twice. The Motion fails for that

7

reason alone. *Gorsuch*, 771 F.3d at 1240–41.

Even if Plaintiffs' arguments did address Rule 16, they would fail. It is true that the new plaintiffs—like every putative class member—could bring individual claims. Mot. at 4 n.2. That will be true through most of this litigation, regardless of whether a class is certified. At some point, however, the claims and parties must be set so that the case can be adjudicated. That is why Rule 16 fixes a deadline—one that the Court is required to set in its scheduling order—for the amendment of pleadings. *See* Fed. R. Civ. P. 16(b)(3)(A); *see Lariviere v. Phillips*, No. 07-cv-01723-WYD-CBS, 2010 WL 2844361, at *11 (D. Colo. July 15, 2010) ("Both the court and defendants are entitled to expect that by a date certain, the plaintiff's claims will be fixed and the case will proceed on that basis."). That deadline has come and gone, and Plaintiffs' generic appeals to efficiency are no reason to discard it. *See Gorsuch*, 771 F.3d at 1240–41.

Weaker still is Plaintiffs' claim that this amendment is like their prior one, which they note was unopposed. Mot. at 5. First, Plaintiffs sought that amendment on August 15, 2016 (ECF No. 329 at 7), the deadline for amending the pleadings. ECF No. 295 at 35. Hence, that motion to amend was timely, whereas this one is not. Second, Plaintiffs did not move for class certification on the same day that they filed that previous motion to amend the complaint. Plaintiffs seem to ignore this fact and indeed, assume that they can argue in favor of three new subclasses corresponding to three new plaintiffs, each of whom asserts claims under five different causes of action, even though there has been no prior notice or discovery to the Defendants. *See* ECF No. 565-3 (App. A).

Plaintiffs have failed to demonstrate—indeed, have failed even to argue—that they could not have added the new named plaintiffs before August 15, 2016. This reason alone justifies denial of the Motion.

**B.     Plaintiffs Knew of ICL Long Before the Deadline and Have No Excuse for Their Failure to Add ICL Before August 15, 2016.**

Plaintiffs' Motion as to ICL fails for similar reasons. From the beginning, Plaintiffs have had ample notice of ICL's role as Cultural Care's international affiliate. Plaintiffs cited an agreement between named plaintiff Beaudette Deetlefs and ICL in their First Amended Complaint, which they filed on March 13, 2015. *See* ECF No. 101 ¶ 303; Ex. A. Throughout this litigation, Cultural Care has reminded Plaintiffs of ICL's role in recruiting au pairs for Cultural Care. For example, at the April 25, 2016 scheduling conference, Cultural Care's former counsel stated his assumption that Plaintiffs would seek discovery from international entities that recruit au pairs, acknowledging that "au pairs are recruited and their information is done by a foreign entity." ECF No. 307 at 23:18-21; 29:20-23. Plaintiffs' counsel acknowledged and ignored this information. *Id.* at 28:12-14. Less than one month later, discovery confirmed that ICL was primarily responsible for recruiting au pairs and had "recruited and screened" the two relevant named Plaintiffs. Ex. C at 4–5; Ex. D at 10.

Against that backdrop, Plaintiffs nevertheless contend that they "were not in a position to appreciate the extent of ICL's involvement until April 2017." Mot. at 7 n.3. That specious claim wilts in the face of the discovery record described above.

Plaintiffs' papers hardly argue otherwise. According to Plaintiffs, "*[d]iscovery has revealed* that ICL is the entity principally responsible for the recruitment of *au pairs*,

9

advertising, and contracting with *au pairs*." Mot. at 2 (emphasis added). True enough, but the operative discovery revealed those facts *before* the deadline to amend pleadings, and Plaintiffs should have known those facts from the contracts they signed to become au pairs. *See* Exs. A, B; Ex. C at 4–5. Likewise, while it is possible that "prior to discovery" Plaintiffs were unaware that ICL was "primarily responsible for significant portions of [Cultural Care's] relationship with *au pairs*" (Mot. at 7), Plaintiffs cannot claim that discovery revealed facts leading them to assert that allegation *after* August 15, 2016. *See, e.g.*, ECF No. 101 ¶ 303; Ex. C at 4–5. Because Plaintiffs knew of ICL's role long before the deadline to amend pleadings, they cannot show good cause for their late amendment. *See Birch*, 812 F.3d at 1247.

Unable to claim that they learned of ICL's role after the deadline, Plaintiffs are forced to rely on their recent perception of a possible legal defense. They claim that "Cultural Care appears to be preparing a defense to the claims in this lawsuit based in part on disclaiming responsibility for ICL's actions," and ICL allegedly is better situated to pay a judgment than Cultural Care. Mot. at 6. Plaintiffs' tardy perception of a potential defense is no substitute for good cause. Between now and trial, Plaintiffs may perceive any number of ways in which amending their pleadings would strengthen their legal arguments. No authority, however, relaxes the good-cause requirement for amendments that might strengthen Plaintiffs' case.

In light of these problems under Rule 16, it is no surprise that Plaintiffs appeal to other Federal Rules that speak to the addition of parties. *See* Mot. at 7–8. Neither Rule 20 nor Rule 21, however, offers an end-run around the good-cause requirement for

untimely amendments. The Tenth Circuit has made clear: "We now hold that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so." *Gorsuch*, 771 F.3d at 1241. Because Plaintiffs cannot show good cause for the amendment they seek, their Motion fails. *Id.*

## II. Plaintiffs' Amendment Would Prejudice Defendants and Is the Product of Undue Delay.

If Plaintiffs could demonstrate good cause—which they cannot—then they also would have to show that their amendment complies with Rule 15(a). *Gorsuch*, 771 F.3d at 1241. Rule 15(a) does not permit amendments that are the product of undue delay or that would prejudice the opposing party. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205–06 (10th Cir. 2006). Plaintiffs' amendment is the product of a lengthy, unexplained delay and would prejudice Defendants by extending the discovery period. For both reasons, Plaintiffs' proposed amendment does not comply with Rule 15(a).

### A. The Amendment Is the Product of Undue Delay.

Plaintiffs' Motion should be denied because the Plaintiffs unduly delayed in seeking this amendment. *Minter*, 451 F.3d at 1205. "The longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.* (internal quotation omitted). When determining whether delay is undue, the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206. If the proponent has no adequate explanation for the delay, the motion should be denied. *Frank v. U.S. West,* 3 F.3d 1357, 1365–66 (10th Cir. 1993).

Plaintiffs' proposed amendment is a classic example of undue delay. This has

11

been a putative class action since November 13, 2014. ECF No. 1. As described above, Plaintiffs offer no explanation for their late addition of the new named plaintiffs.

So too with Plaintiffs' attempted addition of ICL. Plaintiffs and their counsel have known that ICL signed the au pairs' contracts since March 2015 at the latest. *See* ECF No. 101 ¶ 303. They have known that ICL recruited Plaintiffs since April 25, 2016 at the latest. *See supra* at 3. And they have known that ICL screened the Plaintiffs since May 9, 2016 at the latest. Ex. C at 4–5. Yet they waited until 2017—ten months after the applicable deadline, and years after they had that information—to file their Motion. An unexplained delay of that magnitude does not comply with Rule 15(a). *See, e.g.*, *Klaassen v. Atkinson*, No. 13-2561-DDC, 2016 WL 1715434, at \*3 (D. Kan. Apr. 29, 2016) (delay of four months undue).

### B. The Proposed Amendment Would Prejudice Defendants.

Plaintiffs' proposed amendments also should be rejected because they would prejudice Defendants. *Minter*, 451 F.3d at 1206. The opposing party suffers prejudice if an amendment would require the parties to "re-start discovery" or "engage in an extended period of discovery if amendment is granted." *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, No. 11-cv-00970, 2013 U.S. Dist. LEXIS 174681, at \*15 (D. Colo. Sept. 16, 2013). Courts have found prejudice under such circumstances where the parties have made substantial progress in discovery, even if discovery has not yet closed. *Id.* (denying amendment where parties had engaged in five months of discovery); *Semsroth v. Wichita*, No. 04-1245-MLB, 2006 WL 2570557, at \*5 (D. Kan. Sept. 5, 2006) (finding prejudice where party sought to amend "after the completion of

12

significant discovery").

Permitting the addition of ICL (if otherwise proper) would require an extension of the discovery period so that Plaintiffs and ICL could start from scratch. Document production and depositions have been ongoing since March 16, 2016. ICL has not participated. ICL will be entitled to a full opportunity to take discovery from Plaintiffs, and Plaintiffs will surely seek discovery from ICL. That amounts to an entirely new round of fact discovery after Plaintiffs have sought class certification and shortly before motions for summary judgment. Hitting reset on discovery this late in the game would prejudice Defendants by further delaying this matter and increasing the cost of defense. *Gorsuch*, 2013 U.S. Dist. LEXIS 174681, at \*38; *Semsroth*, 2006 WL 2570557, at \*5.

Defendants would suffer prejudice from the addition of the named plaintiffs as well. Defendants are currently preparing their opposition to Plaintiffs' motion for class certification. As discussed *supra*, Plaintiffs have included these new "plaintiffs" in their class certification briefing, with three corresponding state-based sub-classes that each asserts five causes of action. If the amendment is to be allowed, then Defendants must either (i) anticipate that decision and respond to these additional claims without any discovery from these plaintiffs; (ii) try to take the discovery on an unfairly expedited basis while briefing a critical and complex motion; or (iii) accept a significant delay in the schedule as a direct result of Plaintiffs' tardy Motion. Defendants would suffer clear prejudice from any of those three alternatives.

### III. Even If Amendment Were Otherwise Proper, the Addition of Plaintiffs' Alter Ego Theory Should Be Denied as Futile.

To the extent that Plaintiffs seek to amend the complaint to allege that ICL is the

"alter ego" of Cultural Care, amendment should be denied as futile. Plaintiffs' argument in favor of adding ICL amounts to little more than reference to Cultural Care and ICL's contractual relationship, which alone is not sufficient to support an alter ego theory.

Plaintiffs are required to make well-pleaded factual allegations to support an alter ego theory. *See Med. Supply Chain, Inc. v. GE*, 144 F. App'x 708, 713 (10th Cir. 2005). Here, Plaintiffs are required to plead that the corporate principal exercises pervasive control over the subject corporation, and that there is a fraudulent or injurious consequence as a result. *See Kraft Power Corp. v. Merrill*, 981 N.E.2d 671, 682 (Mass. 2013).[5] Under Massachusetts law, courts will look beyond the corporate form "[o]nly in rare instances, in order to prevent gross inequity." *Spaneas v. Travelers Indem. Co.*, 668 N.E.2d 325, 326 (Mass. 1996). No such allegations are made here.

Plaintiffs' allegations, which can be summarized by the fact that Cultural Care and ICL used a common brand name, do not include factual enhancement that would allow the Court to conclude that an alter ego theory is plausible. While a common brand name may be relevant to such an analysis, it is well short of what is required. For instance, Plaintiffs do not plead factual allegations suggesting that Cultural Care is a one-person corporation, failed to observe corporate formalities, lacked functioning officers and directors, or did not maintain corporate records. Where only one factor is arguably well-pleaded and the remaining allegations merely recite the elements, courts

---

[5] Cultural Care is incorporated and headquartered in Massachusetts and, therefore, Massachusetts law applies. *See United States ex rel. Fowler v. Evercare Hospice, Inc.*, No. 11-cv-00642-PAB-NYW, 2015 WL 5568614, at *13 (D. Colo. Sept. 21, 2015).

have dismissed alter ego claims at the pleading stage. *See, e.g.*, *Springfield Fin. & Mortg. Co., LLC v. Lilley*, No. 2:14-cv-00679-EJF, 2016 WL 4275642, at *5 (D. Utah Aug. 12, 2016).

Indeed, apart from generalized conclusory allegations as to Cultural Care's and other Defendants' purportedly fraudulent conspiracy, Plaintiffs do not allege that either Cultural Care or ICL was created for fraudulent purposes. Courts routinely dismiss alter ego claims for this reason alone. *See, e.g.*, *Warad W., LLC v. Sorin CRM USA Inc.*, No. 14-cv-3242-WJM-KLM, 2016 WL 1089825, at *13-14 (D. Colo. Mar. 21, 2016); *XY, LLC v. Trans Ova Genetics, LC*, No. 13-cv-0876-WJM-NYW, 2016 WL 64310, at *3 (D. Colo. Jan. 5, 2016).

The mere fact that ICL and Cultural Care have a contractual relationship and performed that contract does not give rise to the gross inequity required to disregard the corporate form. Leave to amend as to ICL should, therefore, be denied as futile.

## IV. Plaintiffs' Argument Regarding Relation Back Is Premature.

Plaintiffs make a premature argument that the proposed amended complaint relates back to their prior complaints. Mot. at 8–13. Defendants reserve the right to contest whether any claims are time-barred, if necessary, at the appropriate time.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Amend should be denied.

Dated:  June 23, 2017     Respectfully submitted,

*/s/ Jessica L. Fuller*
Joan A. Lukey
(joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass
(mgass@choate.com)
Justin J. Wolosz
(jwolosz@choate.com
Lyndsey M. Kruzer
(lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on June 23, 2017, I caused Defendant Cultural Care Inc.'s Response In Opposition To Plaintiffs' Motion To Amend to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

> */s/ Jessica L. Fuller*