# Exhibit B



# Cultural Care Au Pair

Au Pair reference number

## Agreement

Cultural Care (registered business name of International Care, Ltd.), with registration number CH-1003.023.491-6, having its registered address at Haldenstrasse 4, 6006 Lucerne, Switzerland, together with its successors and assignees ("CC"), and the undersigned au pair,

**Dayanna Paola Cardenas Caicedo**
(Please print full au pair name)

with date of birth: **24-03-91** (Hereafter refered to as "I", "me" or "my"), for good and valuable consideration, understand and agree to the following terms and conditions (the "Agreement") relating to the au pair's participation in Cultural Care Au Pair au pair program (the "Program").

1. In addition to the terms of this Agreement, I agree to abide by additional reasonable terms and conditions stipulated by CC during the Program, including the Extension program. If there is any confusion between this Agreement and the terms of any other contracts, agreements, or materials of any kind, the terms of this Agreement shall prevail.

2. I acknowledge that any materials I submit to Cultural Care will be used to make a suitable host family match for me and therefore agree that any submitted materials may be disclosed to prospective host families during the selection process, including my submitted medical forms.

3. I agree to comply with the Program regulations issued by the United States Department of State (22 CFR Part 62) ("Regulations"). I acknowledge receipt of a copy of the Regulations as they apply to me. I also understand that I must comply with CC's rules as outlined in this Agreement, the Au Pair Handbooks and other materials that CC has supplied to me. This includes staying within the legal number of working hours per day and week without exception. This also includes participation in all child safety and child development training and orientation sessions sponsored by CC. I will inform my Local Childcare Coordinator or CC if I encounter anything that does not comply with the Program regulations as outlined by the U.S. Department of State Regulations.

4. I agree to perform the child care responsibilities as outlined by CC and my host family to the best of my ability. I understand that providing childcare is my primary obligation in this Program and that any personal plans or activities will take secondary priority to caring for my host children. Should I be found to act in a way that puts my host children at risk or is inappropriate in any way, I understand that I will be removed from the Program immediately. I understand that my host family may ask me to respect a curfew and/or assign other reasonable restrictions designed to protect the safety and well-being of my host children. I agree to abide by such reasonable restrictions. I also understand that I may not post photos or personal information about my host family, host children, or host home on any web site, blog or the like without the express written consent of my host parents.

5. During my participation in the Program I will abide by all local, state and federal laws and other regulations. I understand that breaking these laws (such as shoplifting, driving under the influence of alcohol, drinking alcohol under the age of 21, possession, or use of illegal substances, etc.) shall be grounds for my immediate dismissal from the program and my return flight will be forfeited.

6. I understand that I may not use the family's automobile(s) for any reason without express permission from the host family and that any agreement to use the host family's automobile is strictly between the host family and me. I will not use the automobile unless the host family has obtained all of the mandatory automobile insurance coverage required under the laws of the state where the host family resides. I understand that if I have a car accident while using the car for personal use not related to my child care duties that I will be required to pay a deductible up to $500 US.

7. I agree to pay any personal expenses I incur while participating in the Program, including but not limited to, health expenses not covered by insurance, phone bills and/or car damages. CC is not responsible for any financial disputes I have with my host family such as outstanding money for educational component, weekly stipend, etc. I understand that I must settle all disputes directly with my host family prior to my departure from their home.

8. I understand that my Local Childcare Coordinator and the Cultural Care staff in the U.S. are my primary contacts during the Program, and are responsible for ensuring a positive and successful program year for me and my host family. I will notify the staff of CC in the U.S. in case of disagreement, misunderstanding or serious problems including but not limited to my health, safety, welfare, adjustment to my host family, school, culture or language, or misunderstandings or problems with my host family. I acknowledge that CC is solely responsible for choosing appropriate host families for me and I will not make attempts to obtain placements on my own after my arrival in the U.S. In situations where I am having problems with my host family, I agree to consult with and meet with my Local Childcare Coordinator and to follow CC's mediation guidelines as outlined in the Au Pair Handbook. I understand that it is CC's policy to try to resolve issues in the existing placement if possible before considering a new placement.

9. If CC determines that my placement within the host family will not continue, CC shall determine whether or not to pursue a new host family match for me. I understand that CC may not pursue a new host family for me due to safety concerns, a lack of positive recommendations or for other reasons relating to my suitability on the Program. I acknowledge that CC has sole discretion to pursue a new placement or not. Should CC decide to pursue a new placement, I understand that CC will use reasonable efforts for two weeks to find another host family for me. During such time, I shall continue to live with my current host family who, in its discretion, may request me to provide, or not to provide, any childcare services and I shall remain reachable by phone/email with CC at all times. If I do not perform childcare duties during the transition period (even if I am staying with a host family) I understand that I will not receive the weekly stipend. CC will make every effort to match me with appropriate host families. Should I reject these host families for reasons of geographical region, car/computer use or other non-essential reasons I understand that CC may opt to discontinue a search for replacement. I understand that CC cannot guarantee a new family placement for me within the two-week transition period and inability to be replaced will result in my early return to my home country. Notwithstanding the above, I further understand that the first month of any placement is a period of adjustment and therefore CC will not process any non-emergency transitions during this period.

10. I understand that CC has the exclusive right to determine my suitability for acceptance and for my continued participation in the Program. I understand that if CC determines that my emotional or physical state does not make me suitable for providing quality childcare, I will be removed from the Program. I also

Au Pair's signature for this page: **Dayana Cardenas**
Date: **5-Feb-2014**

Version SY13, Last updated August 2012

CAICEDO000467

understand that should I marry or become pregnant while on the Program I will also be removed from the Program. If my performance as an au pair and/or participation in the program is deemed unsatisfactory by CC for whatever reason, CC will reassess my suitability for future placement. I understand that I may be terminated from the Program if I do not successfully complete the Program requirements and uphold Program expectations for reasons including, but not limited to, the following: leaving the host family without prior consent from CC; engaging in behavior that CC deems inappropriate during the Program duration, performance reasons including but not limited to breaking host family rules, neglectful or inappropriate behavior towards the children, etc.; non-participation in training, nor fulfilling educational credit, non-attendance at monthly meetings, or if I in any way violate this Agreement. I further understand that should it be discovered that I have falsified or withheld critical information from my application materials including, but not limited to, health conditions, criminal history, educational documentation, childcare experience, etc. I may be terminated from the Program. Should I be terminated from the Program because of my actions including, but not limited to, those outlined above, I forfeit my return to my home country and must pay for this flight on my own.

11. I understand that the Program is designated as a full year program with the possibility to extend for a further six (6), nine (9) or twelve (12) months. I confirm receiving information about the optional Extended Insurance coverage, including a copy of the general conditions booklet. If I extend after my first program year, I will be contacted regarding the activation of Extended Insurance coverage for my extension term under a new policy. Should I voluntarily decide to return home before the regular end date of my program (including extension period) I understand that my flight will not be paid for by CC. The exception to this will be in cases of my own extreme illness or the extreme illness or a death in my immediate family. Should I terminate or be terminated from the Program for any reason as outlined in this agreement, such termination will result in the following:

a) I will forfeit the return ticket and I will be required to make my own arrangements to return to my home country at my own expense; and b) My CC insurance coverage will no longer be valid and no part of it refunded other than the additional month optional insurance; and c) My status will be reported to U.S. Immigration and my participation in the au pair program will be canceled. d) CC will not provide me with housing in the USA.

12. CC will arrange my flights from and to my home country, from a CC approved gateway. I am responsible for my own transportation and the cost involved to the specified departure gateway in my home country. My departure date to the US (Group Arrival Date), will be determined by my availability and my host family's request. Should I cancel either of the included flights once the ticket has been issued, I understand that I will then be held responsible for any penalties and costs relating to this cancellation. CC will determine my return date based on the end date of my program and my host family gateway will be my return gateway. Special requests may be considered, however additional fees may apply and these costs will be my responsibility. I agree to provide proof of medical insurance coverage, either purchased as additional month optional insurance through CC or as a comparable policy from a third party, in order for CC to book my return flight for a date later than the completion of my Program. I understand that CC cannot book my return flight for a date later than thirty (30) days after completion of my Program. I understand that CC will not arrange for my return flight in case that I do not successfully complete the Program (including completion of required educational component). In this case I shall be responsible for my own flight home.

13. This agreement is made between me and CC. In regards to confidentiality, CC agrees not to divulge medical or confidential information (with the exception of my submitted medical forms, and any accompanying documents) about me or my Program experience to any third party except in case of medical emergency, or in the event I am incapacitated for any reason. As a person of the age of majority I understand that this also includes my parents or family members as well as any partner or friends. Any disputes will be settled between me and CC or any legal entity bound to represent us and no other third party.

14. I agree to irrevocably, unconditionally, and fully remise, release and forever discharge CC and its affiliates; and said persons' respective officers, directors, successors, assigns, attorneys, insurance companies, agents, employees and affiliates, or others to the extent acting or purporting to act on the afore mentioned persons' behalf (all of said persons hereinafter, in the aggregate, being referred to as "Released Parties"), from any and all claims or causes of action which I have or may hereafter have, which arise out of illness, injury, damage or loss of any other kind to me or my property resulting from or during participation in the Program. This includes, without limitation, my performance of services for and involvement with the host family, regardless of how such illness, injury, damage or loss may arise. I further agree to indemnify and hold harmless the Released Parties from and against any losses, claims, damages or liabilities related to or arising out of my participation in the Program, including (without limitation) any illness, injury or damage to me, that my host family causes, that any third party causes, that I cause or to which I contribute, and any illness, injury or damage to my host family which I cause or to which I contribute.

15. This Agreement shall take effect as a sealed instrument under and shall be governed by the laws of Switzerland. In the event of any claim, dispute, or proceeding arising out of the relationship of me and CC, or any claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this Agreement, the parties submit and consent to the exclusive jurisdiction and venue of the arbitrational tribunals of Switzerland.

16. My signature on this agreement indicates acceptance of this Agreement and is legally binding. No alterations to the terms of this agreement will be valid unless approved in writing by CC. If any provision of this agreement shall be deemed unenforceable, such paragraph shall be omitted and the remainder of the agreement shall be valid and enforceable to the fullest extent allowed by law.

* _Dayana Cardenas_   _5-Febrero-2014 / February 5th._
Au pair signature   Date

* _Dayanna Paola Cardenas Caicedo_
Au pair name printed

If au pair will not be of the legal age of majority in his/her home country at the time of anticipated departure to the USA, please include below signature of parent or legal guardian.

_____   _____
Legal guardian signature   Date

_____
Legal guardian name printed

Version SY13, Last updated August 2012

CAICEDO000468