# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

JOHANA PAOLA BELTRAN; et al.

Plaintiffs,

No. 1:14-cv-03074-CMA-KMT

v.

INTEREXCHANGE, INC.; et al.

Defendants.

---

**INTERNATIONAL CARE LIMITED'S SPECIAL APPEARANCE**
**TO OPPOSE PLAINTIFFS' MOTION**
**TO AMEND THE SECOND AMENDED COMPLAINT**

International Care Limited ("ICL") respectfully makes a special appearance to oppose Plaintiffs' Motion to Amend (Dkt. 564). ICL has not been served with the Third Amended Complaint ("TAC") or Plaintiffs' Motion to Amend, and ICL hereby expressly reserves all rights to assert any and all defenses should the motion be granted.

Plaintiffs' motion to join ICL with a third amended complaint three years after this action was commenced is futile, untimely, and prejudicial. The Court has authority to deny leave to amend under Rule 15 if amendment is the result of "undue delay," causes "undue prejudice to the opposing party," or if amendment is "futile" and will result in dismissal. *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiffs' Motion to Amend suffers from all of these faults:

*First*, Plaintiffs' motion is futile. In particular, Plaintiffs fail to allege facts that would establish a basis for this Court's exercise of personal jurisdiction over ICL. ICL is

a foreign corporation headquartered in Lucerne, Switzerland. It has no operations or employees in Colorado or even the United States. ICL's sole contacts with the United States are its contractual relationships with Cultural Care, Inc. [redacted] . ICL has not submitted itself to any United States forum, but rather agreed with *au pairs* that arbitration in Switzerland is the exclusive forum for resolving any disputes. Personal jurisdiction here is inconsistent with the requirements of the Due Process Clause.

The Court's lack of jurisdiction is not cured by Plaintiffs' conclusory allegations that ICL is an "alter ego" of defendant Cultural Care, Inc. Plaintiffs alleged no facts that would support the drastic remedy of ignoring Cultural Care, Inc.'s corporate form, and they failed to establish that the remedy is needed to avoid a "gross inequity." Under the relevant Massachusetts law, alter ego liability is improper, and the Court accordingly lacks personal jurisdiction over ICL.

Moreover, Plaintiffs' contracts with ICL contain exclusive forum selection clauses and mandatory arbitration provisions requiring the parties to arbitrate all disputes in Switzerland under Swiss law. Plaintiffs' antitrust claims are likewise woefully insufficient under the *Twombly-Iqbal* standard to state a Sherman Act Section 1 claim against ICL. Because all of Plaintiffs' claims against ICL are fatally defective, the Motion to Amend with respect to ICL should be denied.

*Second*, Plaintiffs' motion is also untimely. Plaintiffs have been aware for a considerable length of time that *au pairs* contracted with ICL in order to participate in the

J-1 visa program. Plaintiffs nonetheless delayed three years to add ICL. Indeed, Plaintiffs' Motion to Amend the Complaint for a third time is almost a year past the court-ordered August 15, 2016 deadline for motions to amend the complaint. (Dkt. No. 295).

*Third*, Plaintiffs' motion is unduly prejudicial to ICL. Joinder at this stage deprives ICL of any opportunity to participate in the proceedings to date, including class certification and extensive discovery. If and when ICL is served, trial will be imminent. Joinder at this late date amounts to trial by ambush. Instead, the proceedings would virtually have to start all over again, starting with ICL filing a motion to dismiss.

The bottom line is Plaintiffs' attempt to add ICL at this late date is prejudicial, untimely, and ultimately futile. ICL is not subject to personal jurisdiction in this Court. All of Plaintiffs' claims are subject to arbitration and exclusive forum selection clauses mandating arbitration in Switzerland, or they are fatally defective. Moreover, the proposed amendment to add ICL is untimely, and it results in significant prejudice to ICL's ability to mount a defense. The Court should deny Plaintiffs' Motion to Amend.

## I. PLAINTIFFS' MOTION TO AMEND AND JOIN ICL IS FUTILE

Plaintiffs' Motion to Amend should be denied because the proposed amendment with respect to ICL is futile and subject to dismissal. *See Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In determining futility, the Court applies the same standard as under F.R.C.P. 12(b)(6). *See Conkleton v. Zavaras*, No. 08-cv-2612-WYD-MEH, 2010 WL 6089079, at *3 (D.Colo. Oct. 6, 2010).

**A. Plaintiffs' Claims Against ICL are Subject to Dismissal for Lack of Personal Jurisdiction**

Plaintiffs' claims against ICL are subject to dismissal for lack of personal jurisdiction. A corporation may only be subject to the Court's *in personam* jurisdiction if consistent with the Due Process Clause. Jurisdiction may be exercised under either the Court's general jurisdiction, or "specific" jurisdiction related to the defendant's activities directed at the forum state. The allegations against ICL meet neither test, a conclusion that cannot be saved by Plaintiffs' legally insufficient alter ego allegations.

***ICL is Not Subject to the Court's General Jurisdiction*.** This Court does not have general jurisdiction over ICL. The "paradigm" forum where a court may exercise general jurisdiction is a corporation's "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). Absent that, a court may assert general jurisdiction over a foreign corporation *only* where that foreign corporation's operations in a state are "so substantial and of such a nature as to render the corporation at home in that [s]tate." *Id.* at 761 n.19. "[S]lim contacts" between the defendant and forum state do not render the foreign defendant "at home" in that state for purposes of general jurisdiction. *Id.* at 760.

In this case, ICL is incorporated and has its principal place of business in Lucerne, Switzerland. General jurisdiction is therefore inappropriate absent contacts significant enough to render ICL "at home" in Colorado. But no such showing is made here: ICL's contacts with Colorado are far less than "slim" – they actually are non-existent. ICL has no officers, employees, or operations in the United States at all, much less in Colorado. As Plaintiffs acknowledge, [redacted]

[redacted] TAC ¶ 369. [redacted] The foreign individuals who sign contracts in foreign countries agree in the contracts to exclusive forum selection clauses mandating that all disputes be heard in arbitration in Switzerland. In short, nothing in the TAC shows that ICL has contacts with Colorado that could subject it to the Court's general jurisdiction.

***ICL is not Subject to the Court's Specific Jurisdiction*****.** Similarly, ICL is not subject to the specific personal jurisdiction of the Court. The Due Process Clause protects a defendant against the binding judgments of a foreign court where the defendant has no meaningful "contacts, ties, or relations" with a forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (personal jurisdiction must not "offend traditional notions of fair play and substantial justice."). To ensure a defendant has "fair warning" that it can be haled into a forum, specific jurisdiction over an out-of-state defendant is appropriate only where a defendant "'purposefully directed'" activities towards *residents* of the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). A defendant's "*suit-related* conduct must create a substantial connection with the forum State." *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016) (alterations in the original).

Here, Plaintiffs' claims are that ICL, [redacted] TAC ¶¶ 373, 388-92. Notably, none of these allegations –

including the purported fraudulent statements or conspiracy – relate to any conduct by ICL directed towards Colorado. Indeed, none of ICL's alleged conduct was aimed at Colorado or any individuals residing there; ICL had no fair warning that it would be haled into a Colorado court on that basis. Instead, Plaintiffs' claims involve actions and representations made outside the United States toward individuals outside of the United States (the foreign *au pairs*). *See Anzures*, 819 F.3d at 1280. For that very reason, ICL's contracts with the Plaintiffs specified that the exclusive jurisdiction for resolving any and all disputes was arbitration in Switzerland, with Swiss law governing the proceedings. That some of the Plaintiffs eventually found themselves in Colorado is inapposite – as Plaintiffs acknowledge, [REDACTED] TAC ¶ 373; *See Anzures*, 819 F.3d at 1282 (stating that "personal jurisdiction may not rest solely on the fact that a defendant's conduct affected the plaintiff in the forum state"). Nothing in the TAC demonstrates that ICL purposefully availed or directed itself at or in Colorado, and specific jurisdiction is therefore inappropriate.

***Plaintiffs' Conclusory Alter Ego Allegations Do Not Confer Personal Jurisdiction.*** Plaintiffs cannot avoid dismissal for lack of jurisdiction merely by pointing to their conclusory allegations that ICL is an "alter ego" of Cultural Care, Inc. TAC ¶ 370. The TAC's alter ego allegations are legally insufficient to impose liability for Cultural Care, Inc.'s conduct on ICL. Such a holding would make a mockery of the pleading standards under *Twombly-Iqbal* and the protections of the Due Process Clause. *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (Allegations that are "no more than conclusions" are "not entitled to the assumption of truth").

In the Commonwealth of Massachusetts,[1] the "standard for disregarding the separate entities of different corporations is a demanding one." *Lothrop v. N. Am. Air Charter, Inc.*, 95 F. Supp. 3d 90, 100 (D. Mass. 2015) (citing *My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748, 752 (Mass. 1968)). For that reason, Massachusetts law only allows disregard of separate corporate entities where not doing so would result in "gross inequity." *OMV Assocs., L.P. v. Clearway Acquisition, Inc.*, 976 N.E.2d 185, 193 (Mass. App. Ct. 2012); *see also Lothrop*, 95 F. Supp. 3d at 100 ("[The] corporate veil may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity"). Alter ego liability is thus imposed in Massachusetts in only in two instances: (1) where "there is active and pervasive control of related business entities by the same controlling persons *and* there is a fraudulent or injurious consequence by reason of the relationship among those business entities," *Evans v. Multicon Constr. Corp.*, 574 N.E.2d 395, 398 (Mass. App. Ct. 1991); or (2) where "there is a confused intermin[gling] of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate activities, or serious ambiguity about the manner and capacity in which

---

[1] Cultural Care, Inc. is a Massachusetts corporation and therefore Massachusetts law applies. *See* TAC ¶ 36 (alleging the same); *United States ex rel. Fowler v. Evercare Hospice, Inc.*, No. 11-cv-00642-PAB-NYW, 2015 WL 5568614, at *13 (D. Colo. Sept. 21, 2015) ("A request to pierce the corporate veil is governed by the law of the defendant company's state of incorporation").

the various corporations and their respective corporations are acting." *My Bread Baking*, 233 N.E.2d at 752. The following factors are used to apply these tests:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

*Scott v. NG U.S. 1, Inc.*, 881 N.E.2d 1125, 1132 (Mass. 2008) (alterations omitted). Control in and of itself is not sufficient to disregard the corporate entity. *See id.* at 767-68. Nor is a "confusing relationship" between two corporations grounds for taking the drastic step of imposing alter ego liability. *Egan v. Tenet Health Care*, 193 F. Supp. 3d 73, 82 (D. Mass. 2016) (refusing to impose alter ego liability even though parent and subsidiary held themselves out as one entity; parent performed job searches on behalf of subsidiary; subsidiary used the logo and website of parent; subsidiary employees represented themselves as officers of parent). Rather, such confusion is recognized as the ordinary result of a typical corporate relationship; something "to be expected" between a local subsidiary and a national corporate parent. *Id.* at 83 (noting "no evidence at all of a confused intermingling of business assets, nonobservance of corporate formalities, absence of corporate records").

In this case, the TAC fails to even come close to alleging sufficient facts that would meet the demanding test for alter ego liability. Cultural Care, Inc. is a Massachusetts corporation. TAC ¶ 36. ICL is a Swiss corporation headquartered in Lucerne, Switzerland. *Id.* ¶ 37. Cultural Care, Inc. and ICL are legally distinct entities

with different officers and finances. *Id.* ¶ 371. Plaintiffs' only allegation for purportedly imposing alter ego liability is that ICL and Cultural Care, Inc. [REDACTED] *Id.* ¶¶ 376, 379-87. But this merely spells out an ordinary, typical commercial relationship between two entities. The TAC makes no attempt to allege *any* other factors that might justify alter ego liability, including a claim of common ownership, pervasive control, thin capitalization, nonobservance of corporate formalities, absence of corporate records, insolvency, siphoning away of corporate funds, nonfunctioning of officers and directors, and use of Cultural Care, Inc.'s corporate form in promoting fraud. *See also Medici v. Lifespan Corp.*, No 16-cv-10289-ADB, 2017 WL 888308, at *11 (D. Mass. Mar. 6, 2017) ("[W]ebsites suggest[ing] that [defendants] have a close working relationship . . . is not enough to compel the disregard of separate entities"); *TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353, 356-57 (D. Mass. 2010) (common ownership and intermingling of business assets insufficient for alter ego liability).

Nor can Plaintiffs meet the demanding standard for alter ego liability on the basis of "gross inequity." "The 'gross inequity' that can lead to the piercing of the corporate veil typically requires some finding that the corporation engaged in misconduct through the corporate form." *Lothrop*, 95 F. Supp. 3d at 103 (citing *Scott*, 881 N.E.2d at 1131). Plaintiffs do not allege that Cultural Care, Inc. and ICL engaged in misconduct *through Cultural Care's corporate form*. Instead, they allege just the opposite: that ICL and Cultural Care, Inc. presented themselves as an integrated entity [REDACTED]

TAC ¶ 382. Plaintiffs' claim that ICL must be joined to ensure Plaintiffs can fully recover their losses is thus insufficient. *See, e.g.*, *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 524 (7th Cir. 1991) ("[Courts that] properly have pierced corporate veils to avoid 'promoting injustice' have found that . . . some 'wrong' beyond a creditor's inability to collect would result.").

Plaintiffs' alter ego theory is therefore legally insufficient, and cannot serve as the Court's basis for exercising personal jurisdiction over ICL. *See Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364 (10th Cir. 1974) (declining to exercise jurisdiction over the parent because plaintiff did not show that parent was alter ego of subsidiary). Without such jurisdiction, Plaintiffs' claims against ICL are futile, and the Court should accordingly deny Plaintiffs' Motion to Amend.

**B. Plaintiffs' Claims are Subject to Mandatory Arbitration in Switzerland**

Plaintiffs' proposed amendment is also futile because Plaintiffs' claims against ICL arise from a contract that specifies arbitration in Switzerland as the exclusive forum for resolution of all disputes between the parties. U.S. courts uniformly hold that forum selection clauses are valid and enforceable. *See, e.g.*, *Adams Reload Co. v. Int'l Profit Assocs.*, 143 P.3d 1056, 1060-61 (Colo. App. 2005). A forum selection clause specifying a foreign forum is also presumptively valid, and Plaintiffs allege no reason why enforcement would be unreasonable or unjust. Similarly, the Federal Arbitration

Act ("FAA") strongly favors enforcement of arbitration provisions. 9 U.S.C. § 2; *see AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (FAA reflects "liberal federal policy favoring arbitration"). Such provisions are, in the words of the FAA, "valid, irrevocable, and enforceable," 9 U.S.C. § 2, notwithstanding state substantive or procedural policies to the contrary. The Court's role is only to determine whether a valid agreement to arbitrate exists and whether it encompasses the dispute at issue. Courts resolve doubts concerning the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Here, the TAC alleges ICL is liable for a variety of conduct arising from its agreement with Plaintiffs, including antitrust, civil RICO, fraud, tort claims, and violations of the FLSA. However, the *au pair* contracts contained the following provision:

> This Agreement. . . *shall be governed by the laws of Switzerland*. In the event of *any* claim, dispute, or proceeding arising out of the relationship of me and CC [defined in the contract as ICL], or any claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this Agreement, the parties submit and consent to the *exclusive jurisdiction and venue of the arbitrational tribunals of Switzerland*." (Emphasis added).

*See* Decl. of Harvey Wolkoff Exs. A and B.[2] All of the Plaintiffs who contracted with ICL signed contracts containing this exclusive forum selection and mandatory arbitration provision. TAC ¶¶ 377 (noting Plaintiffs' signed contracts with ICL). The agreements describe the nature of the relationship between these *au pairs* and their host families, the requirements to serve as an *au pair*, and other terms and conditions of the program.

---

2 *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (court may consider on motion to dismiss documents incorporated by reference in the complaint when no party disputes their authenticity).

The claims in the TAC are thus covered by the named Plaintiffs' agreements with ICL. Those agreements are quite broad, and encompass "*any* claim, dispute, or proceeding arising out of the relationship of me and [ICL], or *any* claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this Agreement." Courts interpret such language expansively, *e.g.*, *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F. 3d 1288, 1289-92 (10th Cir. 2004), and broadly construe the arbitration requirement to extend to tort and antitrust claims arising from the contractual agreements. *See P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) ("[A]rising out of and relating to" includes all claims that "touch matters" covered by parties' contract); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515 (10th Cir. 1995) (same for antitrust claims). Here, all of Plaintiffs' claims arise out the agreements and their subject matters.

Similarly, the contracts mandate arbitration in Switzerland as the "exclusive" remedy for resolving claims and disputes. Under Tenth Circuit law, language stating that a forum is to be the "exclusive," "sole," or "only" forum for resolving disputes renders the forum selection clause mandatory. *See K & V Sci. Co., Inc. v. BMW*, 314 F.3d 494, 500 (10th Cir. 2002) (finding forum selection clause to be merely permissive since it lacked such language). The language of the forum selection clause here is unambiguous: arbitration in Switzerland is the only forum in which *au pairs* can bring claims against ICL regarding the *au pair* program, and courts must enforce that clause. *See id.* Accordingly, the arbitration and forum selection provisions of the parties' contracts are enforceable, and the TAC's claims against ICL are therefore futile.

**C. Plaintiffs' Antitrust Claims Against ICL Fail to State a Claim**

Finally, the antitrust claims are also fatally defective because they contain no factual allegations supporting the conclusory assertion that ICL is "independently liable" for the alleged conspiracy. To state a claim under Section 1 of the Sherman Act, Plaintiffs must provide "plausible grounds to infer an agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id*. Plaintiffs must allege enough plausible facts to conclude that the parties had a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).

Here, the TAC alleges *no* facts to support the allegation that ICL is independently liable. Plaintiffs allege ICL "deceive[d]" *au pairs* by advertising au pair wages of $195.75 per week. TAC ¶ 390. An alleged misrepresentation is not an "agreement" with competitors. At most, it amounts to an allegation that ICL merely advertised parallel pricing that its contractual partner, Cultural Care, Inc., and host families were allegedly responsible for setting and implementing. But parallel pricing, decided upon and implemented by a vertical party, cannot form the basis of a Section 1 claim. *See Twombly*, 550 U.S. at 557.

Similarly, despite the extensive recitation of services ICL provided to Cultural Care, Inc., nowhere is there *any* allegation that ICL or its employees *agreed* with other sponsor agencies to set any prices. Nor would ICL's contractual relationship with Cultural Care, Inc. suffice – a vertical relationship to provide services to another firm

does not constitute a price-fixing agreement. *See Leegin Creative Leather Prods. v. PSKS, Inc.* 551 U.S. 877, 882 (2007). In short, beyond the TAC's conclusion that ICL is "independently liable," Plaintiffs fail to allege any facts whatsoever suggesting that ICL *agreed* to anything with the other defendants. They thus failed to state a viable claim under Sherman Act Section 1.

**II. PLAINTIFFS' MOTION TO AMEND IS UNTIMELY**

The Plaintiffs' unexcused three-year delay in adding ICL to this action is an independent and sufficient reason to deny Plaintiffs' Motion to Amend. It is "well settled" in the Tenth Circuit that "untimeliness alone may be a sufficient reason to deny leave to amend." *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991).

Here, Plaintiffs' delay is both significant and inexcusable. Plaintiffs commenced this suit in November 2014. Plaintiffs twice amended their complaint, and are now well past the August 15, 2016 deadline for such amendments. (Dkt. No. 295). Plaintiffs' motion offers no valid excuse for missing that deadline: throughout the pendency of this suit, Plaintiffs knew they contracted with ICL. The very contracts they signed to become *au pairs* list ICL, including a registration number and place of business. Plaintiffs also have been repeatedly put on notice throughout discovery that Cultural Care, Inc. is a distinct entity from ICL. *See Castleglen, Inc. v. Resolution Tr. Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (denying motion to amend complaint against three new defendants as untimely since the plaintiff had been aware of the those individuals and their connection to the existing defendants for over one and one half years). If Plaintiffs' counsel had questions about ICL being a separate entity from Cultural Care, Inc., they

could have taken discovery from ICL. They did not. The bottom line is that Plaintiffs' failure to add ICL until the eleventh hour is their fault alone.

## III. PLAINTIFFS' DELAY IN JOINING ICL PREJUDICES ICL'S DEFENSE

Plaintiffs' untimely motion to join ICL should also be denied because of the significant prejudice to ICL. The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). An amendment prejudices the non-moving party where that amendment "unfairly affects [that party] in terms of preparing their defense to the amendment." *Id.* at 1208.

Joining ICL three years into the action denies ICL the opportunity to defend itself and thus of due process. ICL will be prevented from opposing class certification and raising arguments specific to ICL, since oppositions to Plaintiffs' motion for class certification were due on June 17, 2017, before the Court rules on Plaintiffs' Motion to Amend and before ICL has even been served. (Dkt. No. 555). Additionally, fact discovery ends on October 6, 2017. ICL would need to not only prepare and argue its own motion to compel arbitration and motion to dismiss, but also propound and respond to discovery requests, review and produce documents, review documents produced by Plaintiffs, and take and defend depositions. This is a herculean task that would very substantially prejudice ICL. The Motion to Amend should accordingly be denied.

## CONCLUSION

For the reasons herein, Plaintiffs' Motion to Amend the Complaint to join ICL is untimely, prejudicial, and ultimately futile, and should therefore be DENIED.

Respectfully submitted,

By: s/ Harvey J. Wolkoff
Harvey J. Wolkoff
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: 617-951-7000
harvey.wolkoff@ropesgray.com

*Counsel for International Care, Ltd.*