IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

**AuPairCare's Brief in Opposition to Plaintiffs' Motion for Class Certification**

---

Defendant AuPairCare, Inc. ("APC"), by and through its attorneys of Gordon & Rees LLP, hereby submits this brief in opposition to Plaintiffs' Motion for Rule 23 Class Certification [Dkt. 562] and, more specifically, to Plaintiff's Request to Certify State Law Subclasses against APC. See Id. Appendix, Classed (A)(4), (B)(3) and (C)(3) and (4).

# TABLE OF CONTENTS

I. Introduction .................................................................................................. 1

II. Statement of Facts ....................................................................................... 1

III. Legal Argument ............................................................................................ 3

    A. Plaintiffs Cannot Demonstrate Predominance Because Individual Questions of Law and Fact Overwhelm any Common Issues ................................................................................. 3

        1. Plaintiffs State Law Claims Require Individualized Adjudication of Factual Issues Such as Reliance and Causation. ............................................. 4

        2. Plaintiffs' State Law Claims Require Individual Adjudication of Legal Issues ................................................... 6

    B. The Named Plaintiffs Fail to Satisfy the Adequacy and Typicality Requirements of Rule 23(a) ............................................. 7

        1. Ms. Harning is an inadequate class representative and her claims are not typical. .................................. 9

        2. Ms. Jimenez is an inadequate class representative and her claims are not typical .................................. 11

    C. Plaintiffs Have Not Established that Classwide Adjudication Is Superior .................................................................. 12

IV. Conclusion ................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases:**

Aronson v. Greenmountain.com,
809 A.2d 399 (Pa. Super. 2002) ...................................................................................4

Basile v. H & R Block, Inc.,
52 A.3d 1202, 1211-12 (Pa. 2012) ...............................................................................5

Beck v. Maximus, Inc.,
457 F.3d 291, 296-97 (3rd Cir. 2006) ........................................................................ 11

City P'ship Co. v. Jones Intercable, Inc.,
213 F.R.D. 576, 586 (D. Colo. 2002) ...........................................................................8

Comcast Corp. v. Behrend,
133 S. Ct. 1426, 1432 (2013) ......................................................................................7

Friedrich v. U.S. Comput. Sys., Inc.,
1996 WL 32888, at *8 (E.D. Pa. Jan. 22, 1996) ..........................................................6

General Telephone Co. of the Northwest, Inc. v. Equal Opportunity
Employment Comm'n, 446 U.S. 318, 330 (1980) ........................................................8

Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank,
801 A.2d 1248, 1252 (PA. Super. 2002) .....................................................................5

In re Hydrogen Peroxide Antitrust Litig.,
552 F.3d 305, 311 (4th Cir. 2009) ............................................................................. 12

Kelley v. Mid-Am. Racing Stables, Inc.,
139 F.R.D. 405, 410 (W.D. Okla. 1990) ................................................................ 7, 11

Masri v. Wakefield,
106 F.R.D. 322, 325 (D. Colo. 1984) ...........................................................................8

Reed v. Bowen,
849 F.2d 1307, 1309 (10th Cir. 1988) .........................................................................3

In re Smart Techs., Inc.,
295 F.R.D. 50, 54 (S.D.N.Y. 2013) ..............................................................................7

Smith v. Pizza Hut, Inc.,
2011 WL 2791331, *8-10 (D. Colo.) ............................................................................6

Vallario v. Vandehey,
554 F.3d 1259, 1265 (10th Cir. 2009) .................................................................... 3, 8

Viquers v. Philip Morris USA, Inc.,
837 A.2d 534 (Pa. Super 2003) ...........................................................................................5

Wal-Mart Stores, Inc. v. Dukes,
131 S. Ct. 2541, 2551-2552 (2011) ................................................................................ 3, 7

Weinstein v. Am. Biomaterials Corp.,
123 F.R.D. 442, 466 (S.D.N.Y. 1988) ................................................................................9

Welling v. Alexy,
155 F.R.D. 654, 659 (N.D. Cal. 1994) ............................................................................ 10

Williams v. Terra Energy, Ltd.,
No. 260725, 2006 Mich. App. Lexis 2309, At *21 (July 25, 2006) ..........................................5

Zine v Chrysler Corp,
600 N.W.2d 384 (Mich. App. 1999) ...................................................................................5

**Rules and Statutes:**

Ca. Labor Code § 1182.12...................................................................................................7

Fed. R. Civ. P. Rule 23.......................................................................................... 1, 3, 4, 7, 8

2014 Mi. ALS 138 § 9(1) ................................................................................................... 10

NY Labor Law Art. 19 .........................................................................................................7

**Other Authorities:**

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d ............................................7

**Exhibits:**

| **Exhibit A** | Deposition of Juliane Harning, Sept. 8, 2016 |
| **Exhibit B** | Deposition of Laura Mejia-Jimenez, Sept. 14, 2016 |
| **Exhibit C** | Deposition of APC 30(b)(6) designee, Sarah McNamara, May 4, 2017 |
| **Exhibit D** | Plaintiffs' Host Family Survey, RFP572, sorted for APC by stipend amount |
| **Exhibit E** | Declaration of Peggy Kozal, July 17, 2017 |
| **Exhibit F** | Plaintiffs' Host Family Survey, sorted for APC by host family comment |
| **Exhibit G** | Calendar Entries of Laura Mejia-Jimenez |

## I. INTRODUCTION

Plaintiffs have asked this Court to certify a medley of class actions asserting federal and state law claims against more than a dozen sponsors of the State Department's J-1 Visa program for au pairs.[1] This brief is directed to Plaintiffs' proposed Michigan and Pennsylvania state law subclasses, as well as their proposed nationwide subclass of au pairs who allegedly underwent unpaid training in New Jersey. Plaintiffs fail to satisfy the exacting standards required to obtain certification of a class. First, Plaintiffs cannot establish predominance under Rule 23(b)(3) because individual questions of law and fact overwhelm any common issues. Second, Plaintiffs fail to satisfy the typicality and adequacy requirements of Rule 23(a)(3) and (4) because named plaintiffs have abdicated their role to supervise this case, lack basic knowledge and are subject to unique defenses. Third, and finally, Plaintiffs have not demonstrated superiority under Rule 23(b)(3) since certification of this class would be unmanageable in light of issues requiring individualized scrutiny.

## II. STATEMENT OF FACTS

With respect to their state law claims, Plaintiffs seek certification of a subclass of "[a]ll persons sponsored by [APC] to work as a standard au pair in the State of Michigan." See Mot. at 38-46; App. A to Mot. at C.3. Plaintiffs similarly seek certification of a subclass of "[a]ll persons sponsored by [APC] to work as a standard au pair in the Commonwealth of Pennsylvania…." App. A. to Mot. at C.4. They also seek a subclass of "all persons subjected to unpaid standard au pair training" by APC in New Jersey, with Juliane Harning and Laura Mejia-Jimenez serving as class representatives of each subclass. Id. at B.3.

Ms. Harning, the putative representative of Plaintiffs' proposed subclass of Michigan au pairs, is a resident of Germany. Harning Dep., Ex. A at 11:10-13. She first applied to

---

[1] APC incorporates by reference Defendants' Brief in Opposition to Plaintiffs' Rule 23 Motion for Class Certification filed July 17, 2017 ("Joint Opposition"), which addresses Plaintiffs' requests pursuant to Federal Rules 23(a) and 23(b)(3) to certify (1) national Antitrust and RICO classes and (2) national state law classes.

become an au pair towards the end of 2007. Id. at 75:25-76:03; 86:10-13; Harning Decl. EXF 560-25 ¶ 2. In July 2008, following three days of training in New Jersey, Ms. Harning traveled to Michigan to begin working as an au pair. Harning Decl. ¶¶ 6, 8. Upon arrival, she allegedly was paid a stipend of $157.95 per week, which later was raised to $176 per week. Id. ¶ 11. She claims that, for the first several months, she worked eight to ten hours per day, five days per week, that she "generally worked in excess of 40 hours per week," and that she was "never" compensated for her overtime hours. Id. ¶¶ 10-11. She claims that approximately five months after arriving, she began working "seven days a week, literally around the clock" with no pay for the extra hours. Id. ¶ 12. Ms. Harning left the U.S. in June 2009.[2]  Id. ¶ 14.

Ms. Jimenez worked as an au pair for the Mele family in Pennsylvania for approximately five months, from July 2014 to December 2014. Jimenez Dep., Ex. B, at 16:23-18:12, 33:12-18, 163:07-13; Jimenez Decl., ECF 560-32 ¶¶ 9, 12. During the first month, Ms. Jimenez worked less than 45 hours per week because the family's previous au pair was still there. Jimenez Dep. at 66:07-14. The Mele family paid Ms. Jimenez $200 per week, plus $10 per hour for any time over 45 hours in a week. Jimenez Decl. at 14-15. Just five months after starting as an au pair, Ms. Jimenez decided it was not a good match and left the Meles without any notice. Ex. B at pp. 202-204.

---

[2] Immediately after her experience in Michigan, Ms. Harning chose to work as an au pair for approximately nine months in the Netherlands. Harning Dep., Ex. A, at 80:05-16. She then moved to an au pair position in England for approximately three months. Id. at 82:09-15. Explaining the reasoning behind her desire to return to the U.S. au pair program after these experiences in Europe, Ms. Harning wrote on her 2013 application that she wanted "another year of challenges," wanted to come back for "fun," wanted to be "part of the life of another family" and its "traditions," and wanted to participate in "the culture." Id. at 169:01-170:05. She returned to the United States to serve as an au pair in Virginia in February 2014. Harning Decl. ¶ 18.

### III.  LEGAL ARGUMENT

Under Fed. R. Civ. P. 23(a), Plaintiffs must satisfy the requirements of numerosity, commonality, typicality and adequacy of representation. Because they seek certification under Rule 23(b)(3), Plaintiffs must also demonstrate 'predominance' and 'superiority' – that common issues of fact and law predominate over individual ones and that a class action is superior to other ways of resolving the claim. Fed. R. Civ. P. 23(b).

Plaintiffs "must affirmatively demonstrate compliance" with Rule 23. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-2552 (2011). "Whether to certify a case as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive." Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988) (internal citations omitted). In the Tenth Circuit, this "rigorous analysis" requires a district court to conduct a "searching inquiry" and to make findings that all of the Rule 23 factors have been satisfied before certifying a class. Vallario v. Vandehey, 554 F.3d 1259, 1265 (10th Cir. 2009).

**A. Plaintiffs Cannot Demonstrate Predominance Because Individual Questions of Law and Fact Overwhelm any Common Issues.**

Plaintiffs' own evidence shows their state law claims, require individual adjudication. APC is a cultural exchange program, providing au pairs introduction to American culture and English by being incorporating into the host families' family life. McNamara Dep. Ex. C, at pp. 14-25; 29:18-30:2; see also McNamara Dep. ECF No. 558-6 at 71:4-23. APC's role with respect to the stipend was to help ensure that au pairs were paid at least $195.75 per week. Id. at 17:19-18:4.

Even Plaintiffs' experts' faulty survey to host families shows that au pairs worked varying hours and received a wide range of income and other benefits:[3]

---

[3] Defendants disagree with the methodology and reliability of the survey performed by Plaintiffs' expert. *See generally* Rebuttal Report of Paul J. Lavrakas.  *See* Exhibit to Joint Opposition. But even its flawed results show that individual issues predominate for the putative class.

- 3 -

- 57% of host families who recalled and reported the stipend amount reported a stipend of $200 or higher per week, many times ranging from $202 to $1000; Plaintiffs' Survey, RFP572, sorted for APC, Ex. D; see also Declaration of Peggy Kozal, Ex. E, ¶¶ 3-5;

- Indeed, less than a quarter of host families that reported the stipend paid to their au pair reported paying precisely $195.75. See Id.

Further, as the attached chart representing host families' questionnaire responses shows, au pairs sponsored by APC worked various hours and received various other forms of compensation. See Ex. F, Excerpted Host Family Questionnaire Responses; see also Declaration of Peggy Kozal, Ex. E, ¶¶ 6-7.

- "I would give an extra $100 each week, always gave gift cards for entertainments and extra." Id. at l. 4.
- "We paid overtime at a rate of $15/hour if our au pair worked more than 10 hours in a day or 45 hours in a week." Id. at l. 29.
- "The stipend we gave was just for her personal use. We also paid for ALL food, hair and make-up supplies, new clothes, shoes, trips, travel, a car, and household items she wanted for her room." Id. at l. 43.
- "I only worked my au pairs 35 hours per week." Id. at l. 35.
- "My aupair . . .in reality did very little in my household because I have a full time nanny and a full time housekeeper" Id. at l. 24.
- "[Au Pair worked] 18 to 25 hrs a week" Id. at l. 42.
- "She worked about 30 hours per week." Id. at l. 70.

Thus, the putative class involves au pairs that worked different hours, received widely varied incomes, and received other compensation. Plaintiffs' own faulty questionnaires underscore that individual issues predominate and Plaintiffs have not met their burden under Rule 23.

### 1. Plaintiffs State Law Claims Require Individualized Adjudication of Factual Issues Such as Reliance and Causation.

As discussed in the Joint Opposition, Plaintiffs' state law claims require individual adjudication and evidence of causation and reliance. Indeed, Pennsylvania and Michigan courts routinely decline to certify the state law claims asserted here. See, e.g., Aronson v.

Greenmountain.com, 809 A.2d 399 (Pa. Super. 2002) (false advertisement claim could not be certified where each customer had to prove reliance and such questions would have predominated over common issues); Basile v. H & R Block, Inc., 52 A.3d 1202, 1211-12 (Pa. 2012) (affirming trial court's denial of certification of fraud and negligent misrepresentation claims based on individual issues of reliance and further affirming decertification of breach of fiduciary duty class because "a core element of the plaintiffs' proof – the presence of a confidential relationship – was not amenable to class treatment."); Williams v. Terra Energy, Ltd., No. 260725, 2006 Mich. App. Lexis 2309, At *21 (July 25, 2006) (declining motion for class certification of plaintiffs' claim alleging fraud, misrepresentation, breach of fiduciary duty and active concealment reasoning these claims "are not appropriate for determination in a class action because such claims require individual proof of reliance"); Zine v Chrysler Corp, 600 N.W.2d 384 (Mich. App. 1999) (affirming denial of class under the Michigan Consumer Protection Act reasoning "factual inquiries, all of which were subject to only individualized proof, predominate over the one common question and would render the case unmanageable as a class action").

When asked why she signed up for the au pair program, Ms. Harning testified that she did not "know why [she] decided," Harning Dep. at 99:11-15, or that it was "to see the United States" because serving as an au pair "was a pretty cheap option" for doing so. Id. at 76:08-11. The one thing Ms. Harning made clear was that she "did not come here for the stipend." Id. at 100:19-24.

Pennsylvania, too, requires a showing of justifiable reliance to succeed on misrepresentation and fraud claims. Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank, 801 A.2d 1248, 1252 (PA. Super. 2002); Viguers v. Philip Morris USA, Inc., 837 A.2d 534 (Pa. Super 2003). When asked how she first learned of the possibility of becoming an au pair, Ms. Jimenez testified not that she relied upon APC's marketing materials or statements, but rather that she spoke to "friends who had already been au pairs" because

she was "looking for a way to study English in a foreign country." Jimenez Dep. at 98:17-99:07. Indeed, one of her "very best friends" (who was sponsored by Cultural Care, not APC) is the one who first told her about the au pair program in the United States, including about the educational component, required hours, and compensation. Id. at 99:04-101:24. Her "main reason" for joining the au pair program was to learn English and to "have the experience," id. at 107:07-09, and she testified that she would have joined the program even if the weekly stipend was only $175. Id. at pp. 131-132. Such factual issues would overwhelm any common questions.

### 2. Plaintiffs' State Law Claims Require Individual Adjudication of Legal Issues.

Plaintiffs' state law claims present myriad questions of law that must be individually adjudicated. With respect to Plaintiffs' proposed New Jersey subclass, for example, most states apply their own state law to employee wage claims when they perform work or training outside that state's borders. See Joint Opposition Brief FN 1 and 2; Friedrich v. U.S. Comput. Sys., Inc., 1996 WL 32888, at *8 (E.D. Pa. Jan. 22, 1996) (PA Minimum Wage Act applied to plaintiffs who worked in various other states). APC currently places au pairs in 31 states and in the District of Columbia. See https://www.aupaircare.com/stories/aupaircare-areas-serviced. The applications of state laws from at least 31 states establishes, on its own, that individual issues of law would predominate.[4]

Further, the laws of these states vary substantially: For example, California's minimum wage ranges from $10 to $10.50. California applies an exception for learners, regardless of age, who may be paid not less than 85 percent of the minimum wage rounded to the nearest nickel during their first 160 hours of employment in occupations in

---

[4] Both Ms. Harning and Ms. Jimenez also lack standing to represent members of the putative nationwide New Jersey subclass to the extent it includes members who are subject to the laws of states in which neither has resided. See Smith v. Pizza Hut, Inc., 2011 WL 2791331, *8-10 (D. Colo.).

which they have no previous similar or related experience. See, e.g., Ca. Labor Code § 1182.12. New York's minimum wage for 2016 ranges from $9.70 to $11.00 hourly, depending on number of employees and where in the state an employee is located. NY Labor Law Art. 19. Thus, Plaintiffs' New Jersey training class will, at a minimum, require application of 31 state laws to the au pairs' claims, as well as separating the au pairs based on the location within the state where an au pair worked for certain states and on different ages for those states that apply exceptions to the minimum wage for "learners." Such litigation would be unmanageable and far from the superior method of adjudication.

### B. The Named Plaintiffs Fail to Satisfy the Adequacy and Typicality Requirements of Rule 23(a).

"A party seeking class certification must affirmatively demonstrate" compliance with Rule 23 by proving that each of its requirements are satisfied, including typicality and adequacy of representation. Wal-Mart Stores, Inc., 131 S. Ct. at 2551-2552; Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (reiterating that typicality and adequacy of representation must be proven). The typicality and adequacy requirements of Rule 23(a) are "closely related." In re Smart Techs., Inc., 295 F.R.D. 50, 54 (S.D.N.Y. 2013). It is well-settled that "'inquiry into the knowledge of the representative is [required] to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney.'" Kelley v. Mid-Am. Racing Stables, Inc., 139 F.R.D. 405, 410 (W.D. Okla. 1990) (quoting Wright, Miller, and Kane 7A Federal Practice & Procedure §1766) (if representative has "lack of knowledge or understanding concerning what the suit is about, then the court may conclude that Rule 23(a)(4) is not satisfied"). Courts deny class certification "when 'the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" Kelley, 139 F.R.D. at 409.

"The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980); see also Rule 23(a)(3). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." City P'ship Co. v. Jones Intercable, Inc., 213 F.R.D. 576, 586 (D. Colo. 2002) (internal quotations omitted). Where a putative class representative is subject to a unique defense "there is concern that the representation of the class will suffer as the representative becomes distracted by the presence of possible defenses applicable only to him." Masri v. Wakefield, 106 F.R.D. 322, 325 (D. Colo. 1984).

For the same reasons that common issues of law and fact do not predominate, as discussed in §III(A), supra, Ms. Harning and Ms. Jimenez have failed to establish that they are adequate representatives or that their claims are sufficiently typical of the putative subclasses. See Vallario v. Vandehey, 554 F.3d 1259, 1265 (10th Cir. 2009) (recognizing that the analysis of typicality (under Rule 23(a)) and predominance (under Rule 23(b)) often overlap).[5] Though Plaintiffs have devoted some of their brief to arguing that their counsel are experienced and qualified, and have summarily stated that neither counsel nor the named plaintiffs have any conflicts with the class, they have not even attempted to establish Ms. Harning's or Ms. Jimenez' adequacy. See Mot. at 25-27.  And though Plaintiffs claim that all of the named plaintiffs are typical because each was "a victim of the same fraudulent scheme, tricked into accepting an illegally low wage," the evidence belies that this was the case for Ms. Harning and Ms. Jimenez. In fact, neither Ms. Harning nor Ms. Jimenez is suited to the task of representing the interests of Plaintiffs' proposed subclasses.

---

[5] Both Ms. Harning and Ms. Jimenez also are inadequate representatives because their claims are subject to mandatory arbitration. See APC's Motion to Compel Arbitration [Dkt. 431] and Reply in Support [Dkt. 453].

### 1. Ms. Harning is an inadequate class representative and her claims are not typical.

Ms. Harning – the putative representative of Plaintiffs' proposed Michigan state law and New Jersey nationwide training subclasses – has demonstrated an alarming lack of knowledge and credibility. Indeed, she testified that she did "not know," could "not remember," or some variation thereof, with astonishing frequency. And some of her memory lapses strain credulity. Unbelievably, she could not remember very basic information such as: (1) whether she ever spoke with an investigator who asked about her experiences as an au pair and then asked that she join the lawsuit (Harning Dep. at 18:21-25); (2) whether she had provided any documents to her attorneys as of one week prior to her deposition (id. at 19:25-20:13); (3) whether she visited any websites that discuss the lawsuit (id. at 21:12-23); and (4) whether she exchanged emails about the lawsuit with any other au pairs (id. at 24:14-18). Her supposed inability to recall such basic facts presents a serious credibility issue and undermines her adequacy as a class representative. Weinstein v. Am. Biomaterials Corp., 123 F.R.D. 442, 466 (S.D.N.Y. 1988) (denying class certification motion where plaintiff's "credibility is subject to serious question and serious doubt").

Ms. Harning similarly did "not know" or "remember" (1) whether her Virginia host mother, in a discussion between the two within 10 days of the deposition, had denied that Ms. Harning always worked at least 45 hours per week (id. at 41:01-15); (2) whether she expected extra money when she had to work late as an au pair (id. at 47:16-19); (3) how often she was required to work more than 45 hours per week during her time in Virginia (id. at 52:03-10); (4) how often she was paid for work beyond 45 hours (id. at 62:19-24); (5) whether she ever received more that 10 days of paid vacation (id. at 66:16-67:01); (6) why she decided to sign up for the au pair program (id. at 99:11-15); (7) whether she ever received promotional materials from APC (id. at 120:08-24); (8) when she may have

- 9 -

exchanged text messages with other au pairs about the lawsuit (id. at 23:20-24:13); (9) where she posted her blogs about being an au pair, what she wrote in those blogs, or even whether the blogs were written in English or German (id. at 29:22-30:16); and (10) whether she ever applied to work as an area director, regional director, or any other non-au pair position with an au pair agency (id. at 171:25-172:06). The dearth of Ms. Harning's knowledge of relevant facts undermines any claim by Plaintiffs that she would be capable of providing the appropriate "check on the otherwise unfettered discretion of counsel in prosecuting the suit." Welling v. Alexy, 155 F.R.D. 654, 659 (N.D. Cal. 1994).

Ms. Harning is fatally flawed as a class representative in other ways, as well. For example, as discussed supra, §III(A)(1), her Michigan state law fraud and misrepresentation claims require a showing of justifiable reliance. But Ms. Harning made clear that the stipend was not among her reasons for joining the au pair program.  Id.

Similarly, claims for unpaid wages pursuant to Michigan's Workforce Opportunity Wage Act (Count VI) are subject to a three-year statute of limitations. 2014 Mi. ALS 138 § 9(1). Because Ms. Harning served as an au pair in Michigan in from July 2008 to June 2009, Harning Decl. ¶¶ 6, 8, 14, the statute of limitations on her state law claim for unpaid wages expired in June 2012. That was approximately two and a half years before Plaintiffs filed their Original Complaint [Dkt. 1] and nearly four and a half years before Plaintiffs filed the Second Amended Complaint adding Ms. Harning as a named plaintiff [ECF 395].[6] Courts regularly hold that both adequacy and typicality are destroyed by defenses unique

---

[6] Also significant is the fact that Ms. Harning did not receive the so-called "fraud notice" from APC, which notified au pairs that "[l]egitimate host families will also not offer you a higher stipend that what is listed in" the Department of State regulations, until October 2013. Harning Decl. ¶¶ 16-17. This notice, which Plaintiffs claim is key evidence in their favor, was sent over four years after she completed her time as an au pair in Michigan and also came after her application had been accepted to participate in the program as an au pair in Virginia. Id.

- 10 -

to a named plaintiff or small subset of the class because the putative representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class. See Beck v. Maximus, Inc., 457 F.3d 291, 296-97 (3rd Cir. 2006) (collecting cases). "A class representative should 'not be permitted to impose such a disadvantage on the class.'" Id. (internal citation omitted).

### 2. Ms. Jimenez is an inadequate class representative and her claims are not typical.

Ms. Jimenez – the putative representative of Plaintiffs' proposed Pennsylvania state law and New Jersey nationwide training subclasses – has similarly demonstrated her inadequacy as a class representative. For example, she testified that she (1) does not remember whether she knew the plaintiffs had brought FLSA claims against APC at the time she agreed to serve as a named plaintiff; (2) does not remember what the FLSA is; (3) does not remember whether she has ever heard of the FLSA at all; and (4) does not remember whether she had an understanding of what the FLSA was at the time she agreed to serve as a named plaintiff in this litigation. Jimenez Dep. at 218:11-219:17. She likewise does not remember whether she has ever read the Second Amended Complaint or whether it includes allegations about her. Id. at 224:16-225:05. Similarly, Ms. Jimenez testified that she has no understanding of the term "class representative" and that she does not remember her understanding of the term "collective class representative." Id. at 231:05-10; 233:03-11. Like Ms. Harning, the evidence establishes that Ms. Jimenez is "simply lending" her name "to a suit controlled entirely by" her attorneys. Kelley, 139 F.R.D. at 410.

And just like Ms. Harning, Ms. Jimenez has a reliance problem. For example, as discussed supra, §III(A)(1), her Pennsylvania state law fraud and misrepresentation claims require a showing of justifiable reliance. But it was one of her "very best friends," not APC, who first told her about the au pair program in the United States, including about the educational component, required hours, and compensation. Ex. B at 99:4. She also made

- 11 -

clear that she was motivated to join the program, not by the stipend, but by a desire to study English in a foreign country, to have "the experience," and because she loved the "American lifestyle." Id. at 138:25-139:12. She also testified that she would have joined the program even if the stipend was only $175 per week. Id. at pp. 131-132. Her claims are not typical.

### C. Plaintiffs Have Not Established that Classwide Adjudication Is Superior.

APC notes that, "'[a] critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof.'" In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 319 (3d Cir. 2009). Plaintiffs have proposed twenty separate classes or subclasses, including three related to APC alone, some of which would require application of the laws of all 50 states and the District of Columbia. But Plaintiffs make no effort to offer a plan demonstrating manageability, summarily stating instead that litigating this case "as a class action poses no particular manageability concerns" and that the Court and parties can simply be "creative." Mot. at 47. That is not enough.

### IV. CONCLUSION

For the reasons set forth herein, APC respectfully requests that this Court deny Plaintiffs' Motion for Class Certification, including the proposed subclasses directed to APC.

- 13 -

Respectfully submitted this 17th day of July, 2017.

*s/ Thomas B. Quinn*
Thomas B. Quinn, Atty. Reg. No. 2772
Peggy E. Kozal, Atty. Reg. No. 33700
Heather K. Kelly, Atty. Reg. No. 36052
GORDON & REES LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
Fax: (303) 534-5161
tquinn@grsm.com
pkozal@grsm.com
hkelly@grsm.com
**At*torneys for Defendant*
*AuPairCare, Inc.***

**CERTIFICATE OF SERVICE (CM/ECF)**

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/CF system, which will send notification to all counsel referenced below, and/or sent via electronic mail on this the 17th day of July, 2017 addressed to:

| | | |
|---|---|---|
| Lauren F. Louis<br>Sigrid S. McCawley<br>Sabria McElroy<br>Matthew L. Schwartz<br>Peter M. Skinner<br>Randall W. Jackson<br>Dawn L. Smalls<br>Joshua Libling<br>Sean P. Rodriguez<br>Juan P. Valdivieso<br>BOIES SCHILLER & FLEXNER, LLP<br>llouis@bsfllp.com<br>smccawley@bsfllp.com<br>smcelroy@bsfllp.com<br>mlschwartz@bsfllp.com<br>pskinner@bsfllp.com<br>rjackson@bsfllp.com<br>dsmalls@bsfllp.com<br>jlibling@bsfllp.com<br>srodriguez@bsfllp.com<br>jvaldivieso@bsfllp.com<br>          and<br>Alexander N. Hood<br>TOWARDS JUSTICE – DENVER<br>alex@towardsjustice.org<br>**Attorneys for Plaintiffs** | Brooke A. Colaizzi<br>Raymond M. Deeny<br>Heather F. Vickles<br>Joseph H. Hunt<br>Alyssa L. Levy<br>SHERMAN & HOWARD, LLC<br>bcolaizzi@shermanhoward.com<br>rdeeny@shermanhoward.com<br>hvickles@shermanhoward.com<br>jhunt@shermanhoward.com<br>alevy@shermanhoward.com<br>**Attorneys for Defendant InterExchange, Inc.** | William J. Kelly, III<br>Chanda M. Feldkamp<br>KELLY & WALKER, LLC<br>wkelly@kellywalkerlaw.com<br>cfeldkamp@kellywalkerlaw.com<br>**Attorneys for Defendant USAuPair, Inc.** |
| Meshach Y. Rhoades<br>Martin J. Estevao<br>Vance O. Knapp<br>ARMSTRONG TEASDALE, LLP<br>mrhoades@armstrongteasdale.com<br>mestevao@armstrongteasdale.com<br>vknapp@armstrongteasdale.com<br>**Attorneys for Defendant GreatAuPair, LLC** | Bogdan Enica<br>BOGDAN ENICA, ATTORNEY AT LAW<br>bogdane@hotmail.com<br>**Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair** | David B. Meschke<br>Martha L. Fitzgerald<br>BROWNSTEIN HYATT FARBER SCHRECK, LLP<br>dmeschke@bhfs.com<br>mfitzgerald@bhfs.com<br>**Attorneys for Defendant EurAupair InterCultural Child Care Programs** |

- 14 -

| James E. Hartley<br>Adam A. Hubbard<br>Jonathan S. Bender<br>HOLLAND & HART, LLP<br>jhartley@hollandhart.com<br>aahubbard@hollandhart.com<br>jsbender@hollandhart.com<br>**Attorneys for Defendant Cultural Homestay International** | Brian A. Birenbach<br>RIETZ LAW FIRM, LLC<br>brian@rietzlawfirm.com<br>    and<br>Kathryn A. Reilly<br>Grace A. Fox<br>Natalie West<br>WHEELER TRIGG O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>**Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair** | Kathryn A. Reilly<br>Grace A. Fox<br>Natalie West<br>WHEELER TRIGG O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>**Attorney for Defendant Agent Au Pair** |
|---|---|---|
| Lawrence L. Lee<br>Susan M. Schaecher<br>FISHER & PHILLIPS, LLP<br>llee@laborlawyers.com<br>sschaecher@laborlawyers.com<br><br>and<br><br>John B. Fulfree<br>Joseph B. Cartafalsa<br>Robert M. Tucker<br>Stephen J. Macri<br>PUTNEY, TWOMBLY, HALL & HIRSON, LLP<br>jfulfree@putneylaw.com<br>jcartafalsa@putneylaw.com,<br>jbc54@cornell.edu<br>rtucker@putneylaw.com,<br>robert.m.tucker1@gmail.com<br>smacri@putneylaw.com<br><br>**Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation; American Institute for Foreign Study d/b/a Au Pair in America** | Eric J. Stock<br>Gibson, Dunn & Crutcher LLP<br>estock@gibsondunn.com<br>mao@gibsondunn.com<br>**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**<br><br>Lawrence D. Stone<br>Kathleen E. Craigmile<br>NIXON SHEFRIN HENSEN OGBURN, P.C.<br>lstone@nixonshefrin.com<br>kcraigmile@nixonshefrin.com<br>**Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair;<br>20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange** | Joan A. Lukey<br>Robert M. Buchanan, Jr.<br>Michael T. Gass<br>Justin J. Wolosz<br>Lyndsey M. Kruzer<br>Kevin P. O'Keefe<br>CHOATE, HALL & STEWART, LLP<br>joan.lukey@choate.com<br>rbuchanan@choate.com<br>mgass@choate.com<br>jwolosz@choate.com<br>lkruzer@choate.com<br>kokeefe@choate.com<br>    and<br>Diane R. Hazel<br>James M. Lyons<br>Jessica L. Fuller<br>LEWIS ROCA ROTHGERBER CHRISTIE LLP<br>dhazel@lrrc.com<br>jlyons@lrrc.com<br>jfuller@lrrc.com<br>**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair** |

*s/ Thomas B. Quinn*
Thomas B. Quinn, Atty. Reg. No. 2772
GORDON & REES LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
Fax: (303) 534-5161
tquinn@grsm.com
**Attorneys for Defendant AuPairCare, Inc.**