IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

        Defendants.
_____

**RESPONSE OF DEFENDANT CULTURAL CARE, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION**

---

Defendant Cultural Care, Inc. ("Cultural Care") submits this response in opposition to Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel ("Motion"). Plaintiffs seek to certify four Cultural Care-specific subclasses (the "Subclasses"), each with five state-based claims in the states where Plaintiffs Beaudette Deetlefs ("Deetlefs") and Sarah Carolina Azuela Rascon ("Azuela") served as au pairs: Maryland, Massachusetts, Utah, and Virginia. *See* ECF No. 565-3.[1]

Each subclass must satisfy Rule 23 in order to be certified. *Soseeah v. Sentry Ins.*, 808 F.3d 800, 813 (10th Cir. 2015). The Subclasses fail because (1) Plaintiffs' representatives are deficient – indeed, both testified that they were told they could be

---

[1] Plaintiffs also seek certification of classes in Texas and Pennsylvania. Mot. 3 & n.3; ECF No. 565-3. Because there is no named plaintiff from those states, Plaintiffs lack standing to pursue these claims. Fed. R. Civ. P. 23(a); *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2011 WL 2791331, at *8-10 (D. Colo. July 14, 2011). The proposed amendment will not remedy this deficiency (Resp. to Pls. Mot. to Amend, ECF No. 589), but if allowed, Cultural Care reserves its rights to challenge these classes.

paid more than the minimum stipend, (2) no au pair is able to state a cause of action under the relevant law, and (3) individual issues will necessarily predominate.

## **BACKGROUND**

Deetlefs first learned details of the *au pair* program at a meeting in Cape Town. She was told that $195.75 was a minimum and her host family could pay more. Ex. AG (Deetlefs' Interrog. Resp.), 2-3; Ex. K (Deetlefs Dep.), 42:21-45:8.[2] Deetlefs alleges that representatives of Cultural Care later told her, after she arrived in the United States and thus after she decided to participate in the Program, that a host family could not pay more than the minimum stipend. Ex. K, 90:16-92:18.

Deetlefs "usually" assisted with childcare two to three days per week. ECF No. 325-1 (Deetlefs Decl.), 20-21, ¶ 10; Ex. K, 108:24-109:1. She said that her schedule varied and was closer to five days per week near the end of her term, but could not say how many weeks she assisted with childcare four or five days. Ex. K, 108:24-109:1; 127:19-128:8. She testified that her hours "averaged" 35-40 hours per week. *Id.* at 111:10-112:10, 115:19-22. Though the family had three children, her sole responsibility was assisting the nanny with two younger children. *Id.* at 26:25-27:6. The host mother's schedule was "flexible," i.e., she worked "a few days a week." *Id.* at 95:6-9.

Deetlefs is openly, racially prejudiced. She posted on her Facebook page a photo of South Africa with the caption "You are WHITE[.] Your ancesters [sic] did not steal this country . . . They BUILT this country! #ReclaimYourStake." She also posted a graphic

---

[2] Citations in the form "Ex. __" refer to exhibits to Defendants' Response in Opposition to Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel, ECF No. 603.

2

disparaging South Africa's black leaders, implying they were responsible for an increase in crime. Deetlefs disputes that these postings are racist, characterizing them as "what's actually happening." Ex. K, 160:24.

Azuela was an au pair for families in Massachusetts, Maryland and Virginia. Her first exposure to the program occurred when she met with a former au pair in Mexico after responding to a Cultural Care Au Pair advertisement. That representative, who was not an employee of Cultural Care,[3] told Azuela that she would assist with childcare "around 40 hours and sometimes less," and that the stipend was $196, but that she "sometimes earned more." Ex. L (Azuela Dep.), 30:1-2, 30:10.

In Massachusetts, Azuela had an irregular schedule. Her host parents kept "varied" schedules and were not busy. *Id.* at 51:18-23. One child was in school and the other in daycare. *Id.* at 58:18, 60:5. Azuela testified that no document exists reflecting her hours but that she assisted with childcare exactly 45 hours per week. *Id.* at 53:22-55:8. Azuela did not assist with weekend childcare. *Id.* at 57:19-20. Azuela claims she was paid $196 per week and never asked to be paid more. *Id.* at 67:3-5.

In Maryland, Azuela cared for one child who was also in daycare. *Id.* at 88:7-14. The host mother did not work at first but later worked half-days. *Id.* at 86:19-20. The host father worked from home. *Id.* at 86:22-23. Azuela was "not sure" how many hours she assisted with childcare per week, and did not recall it being more than 40. *Id.* at 87:12-20. She testified that her hours varied and there was no "typical" day. *Id.* at 87:24.

---

[3] The recruiting of au pairs who ultimately are sponsored by Cultural Care is handled by a foreign affiliate, International Care, Ltd., which is a separate and distinct entity from Cultural Care. *See* Resp. to Pls. Mot. to Amend, ECF No. 589.

She did not ask her host family to pay more than $195.75. Ex. L, 92:17-21.

In Virginia, Azuela cared for three children who attended school full-time. She assisted with childcare five or "sometimes six" days per week. She did not assist with childcare on weekends. *Id.* at 133:23-134:18. Azuela cannot remember how many hours per day she cared for the children (who attended school during the week), but she estimated that she provided childcare "around 40" hours per week, but not more. *Id.* at 134:3. Her weekly payments varied from $200 to $600. *Id.* at 138:6-9. Azuela concedes her experience was not typical of most *au pairs*. *Id.* at 145:21-25.

## ARGUMENT

**I. Plaintiffs Cannot Satisfy Rule 23 With Respect to Their State Wage Claims.**

**A. Azuela's Inability to Establish Actual Hours "Worked" Forecloses Certification of Wage Claims for the Subclasses.**

The wage laws in Maryland, Massachusetts and Virginia require payment for hours that are *actually* worked,[4] and a plaintiff asserting a violation must be able to state with a reasonable degree of accuracy the hours actually worked. Conclusory statements of "on average 45" are not sufficient. Under Virginia law, for instance, employees must at a minimum establish a reasonable inference of the hours worked, and that inference is rebuttable if evidence casts doubt on the allegations. *Skoglund v. Ideal Elec. Sec. Co.*, 45 Va. Cir. 250, 251 (Va. Cir. Ct. 1998) (denying overtime claim where worker's hours varied and his evidence was only "his own testimony").

Certification of a class claiming classwide violations of the minimum wage laws of

---

[4] Md. Code Ann. § 3-401 *et seq.*; Mass. Gen. Laws ch. 151, § 1 *et seq.*; Va. Code Ann. § 40.1-28.8 *et seq.*

4

these states must be denied if either the class representative cannot establish with some specificity the number of hours worked, or proof of actual hours worked is not common across the class. *See Vitali v. Reit Mgmt. & Res., LLC*, No. SUCV2012-00588-BLS1, 2016 WL 1425725 (Mass. App. Ct. Mar. 2, 2016) (denying certification where representative could not prove hours worked, and proof would not be common across the class); *Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177, 197 (Md. Ct. Spec. App. 2007) (reversing certification and rejecting analysis of time-sheets as evidence of hours worked, because "proof of that issue would require individual inquiry").

Azuela's testimony cannot support a reasonable inference of the hours she actually "worked." Nor can an amount be presumed without individual inquiry, given that au pairs' hours vary widely. *See* ECF No. 603, § II.C.1.b. And as with their federal claims, Plaintiffs cannot circumvent this key requirement by assuming a 45-hour workweek for every au pair based solely on the regulatory maximum. *See id.* There is no basis in federal or state wage law for "importing" such a requirement from a U.S. Department of State ("DOS") regulation.

### B. State Law Regarding Room and Board Forecloses Certification for Classes in Maryland or Virginia.

Room and board may be included as part of wages owed under Maryland law. Md. Code Ann., Lab. & Empl. § 3-418(b) (2017); Md. Code Regs. 09.12.41.18 (2017). Azuela benefited from living with her host family because it helped her experience American culture and relieved her of the burden of finding a place to live.[5] Ex. L, 41:1-

---

[5] The requirements to deduct room and board (such as voluntariness and benefit to the employee), are easily met. Md. Code Regs. 09.12.41.18.

5

42:8. As a result, the room and board deduction was appropriate as a matter of law. If Azuela (or a putative class member) claims that in their situation, they did not benefit or there was some unique reason that the deduction would be inappropriate, the individualized inquiry would defeat certification. Fed. R. Civ. P. 23(b)(3).

The Virginia Minimum Wage Act ("VMWA"), Va. Code Ann. § 40.1-28.8 through 40.1-28.2, applies the federal minimum wage, does not recognize overtime wages, and allows a credit for room and board. As such, Plaintiffs cannot argue that the DOS stipend calculation of $195.75, которое is based upon 45 hours per week at the federal minimum wage with a credit for room and board, violates VMWA.[6] No plaintiff—including Azuela—who received at least the minimum stipend of $195.75 and worked 45 or fewer hours per week would have a claim.

Moreover, Virginia, like Utah, exempts employees covered by the FLSA. VMWA § 40.1-28.9.[7] While Cultural Care denies that the FLSA applies in its entirety, Plaintiffs cannot succeed under an VMWA claim and an FLSA claim. Finally, the VMWA exempts employers with three or fewer employees, which should include nearly all host families.

## II. Deetlefs and Azuela Are Inadequate and Atypical Class Representatives.

Plaintiffs' non-wage state law claims are all premised on the allegation that

---

[6] If Plaintiffs argue that the DOS-fixed deduction for room and board is not reasonable, class certification becomes improper because individual inquiries would predominate. Virginia allows deduction of the reasonable cost of meals and lodging. VMWA § 40.1-28.9(C). "Reasonable cost" is a determination made based on "experience and judgment." Va. Dep't of Labor & Industry Div. of Labor & Emp. Law, Field Ops. Manual, ch. 1, Minimum Wage Act (last revised Dec. 2007) 1.00(B)(3)(1). Thus, the room and board deduction in Virginia requires individual inquiry that precludes classwide treatment. Fed. R. Civ. P. 23(b)(3).

[7] The Court dismissed Utah wage claims on this basis. *See* ECF No. 258.

Sponsors misrepresented the stipend amount as fixed, and au pairs relied on that representation to their detriment. Mot. 41-42 & n.52. Deetlefs and Azuela cannot represent a class of au pairs who were allegedly misled in this manner because both admitted under oath that they were told they could be paid more than $195.75 per week. As a result, neither can show that she was induced by or relied upon some misrepresentation. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019-20 (9th Cir. 2011) ("because [the putative class representative] insisted that he was not really deceived into joining the . . . program . . . he is not at all typical of the proposed class.").[8] Indeed, Azuela testified that she knew she could be paid more than $195.75, did not negotiate a stipend increase with any of her three host families, and received weekly payments ranging from $200 up to $600.

Deetlefs is also inadequate and atypical for a culturally diverse class because she harbors racist views that will prevent her from adequately representing the rights of prospective minority class members. Her views are particularly troublesome due to her insistence that the racist views she publishes are factual. *See, e.g., Parrish v. NFLPA & NFL Players Inc.*, No. C 07-00943 WHA, 2008 WL 1925208, at *8 (N.D. Cal. April 29, 2008) (racially charged comments on an internet blog could disqualify named plaintiff).

### III. Plaintiffs Cannot Represent Proposed Maryland, Massachusetts and Utah Subclasses Because They Have No Viable Consumer Protection Claims that Would Qualify Them as an Adequate Representative.

---

[8] Even if, as Deetlefs claims, she was told after she arrived in the United States that she could earn no more than $195.75 (which Cultural Care disputes), any claims she might have based on that after-the-fact alleged misrepresentation would be vastly different than claims by putative class members who allege claims based on representations that supposedly induced them to join the Program.

Plaintiffs' Massachusetts Subclass asserts claims pursuant to the state consumer protection statute, Mass. Gen. Laws ch. 93A ("93A"). ECF Nos. 565-3, 565-4. Azuela cannot maintain a claim under section 9 (consumer protection) of 93A because she failed to send a demand letter.[9] *See* 93A § 9(3); *Mitchell v. Norman B. Watt Assocs.*, 1996 Mass App. Div. 21, 22-23 (1996) (demand letter "is a jurisdictional prerequisite to suit"). Nor can she bring claims under section 11 of 93A, which covers business-to-business relationships,[10] because (among other things) Azuela is not engaged in trade or commerce and the complained-of conduct ("lies told to attract labor at these illegal rates") did not occur "primarily and substantially" in Massachusetts and was not allegedly committed by Cultural Care.[11] Finally, Azuela cannot simultaneously allege she is Cultural Care's employee and also maintain a claim under 93A. *See Manning v. Zuckerman*, 388 Mass. 8, 11-12 (1983); *Debnam v. FedEx Home Delivery*, 766 F.3d 93, 96-97 (1st Cir. 2014) (services under an alleged employment relationship are not within the purview of 93A).

Similarly, the Maryland Subclass asserts claims based on the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq.* (the "MCPA"). ECF Nos. 565-3, 565-4. The MCPA prohibits deception related to consumer goods or services and, critically, "the deceptive practice must occur in the sale or offer for sale to

---

[9] To the best of Cultural Care's knowledge, no such demand letter was sent by Azuela or any other class member. Consistent with this conclusion, Plaintiffs did not allege in their Complaint that a demand letter was sent. *See* ECF No. 395.

[10] This position would be inconsistent with Plaintiffs' Complaint, which refers to Plaintiffs as "consumers of the Sponsors' services." *See, e.g.,* ECF No. 395 ¶ 593.

[11] *See supra* note 3, explaining that au pairs are recruited by a different entity than Cultural Care.

consumers." *Morris v. Osmose Wood Preserving*, 340 Md. 519, 542 (1995). Plaintiffs do not and cannot offer a construction of the record that would bring Cultural Care within the definition of "merchant," Azuela within the definition of "consumer," or statements about wages within the definition of "consumer services."  MCPA § 13-101. Azuela therefore cannot assert an MCPA claim, much less serve as a class representative for such a claim. *See Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt.*, 95 F. Supp. 3d 886, 909 (D. Md. 2015).

Finally, Plaintiffs' Utah Subclass purports to seek classwide damages pursuant to the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 ("UCSPA") (2017), (*see* ECF Nos. 565-3, 565-4), but this type of action is expressly prohibited by the UCSPA, (UCSPA § 13-11-19(2) ("A consumer who suffers a loss . . . may recover, *but not in a class action*, actual damages . . . .") (emphasis added)).

### IV.   Issues of Reliance and Causation Predominate for the Misrepresentation-Based Claims, and Plaintiffs Lack Standing or Are Not Typical.

As an initial matter, in Maryland "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." *Kann v. Kann*, 344 Md. 689, 713 (1997). Therefore, the Maryland Subclass cannot be certified with respect to this claim, which does not exist under Maryland law.[12]

Reliance[13] or causation[14] is a necessary element of each of the non-wage

---

[12] Plaintiffs bear the burden of establishing a fiduciary relationship.  *See, e.g., Cobb v. Rector & Visitors of the Univ. of Va.*, 69 F. Supp. 2d 815, 824 (W.D. Va. 1999).  They have not even attempted to make the specific, individualized showing that would be required under Massachusetts, Virginia and Utah law.

[13] *Lloyd v. GMC*, 397 Md. 108, 136, 138, 143 (2007) (negligent misrepresentation, fraudulent concealment, MCPA); *Davidson v. GMC*, 57 Mass. App. Ct. 637, 642 (2003)

9

causes of action asserted in Plaintiffs' four subclasses. *See* Add. B, ECF No. 603-2. Plaintiffs' Motion, however, fails to address the well-settled principle that individualized inquiries of reliance generally predominate over other common issues of fact and law in misrepresentation-based class actions. *See Martinez v. Nash Finch Co.*, No. 11-CV-02092-MSK-KLM, 2013 WL 1313899, at *5-6 (D. Colo. Mar. 29, 2013) (individualized inquiries into reliance "significantly predominate" over common issues related to alleged misrepresentations in widespread, uniform advertisements); *Turcios v. Cama Labs. Inc.*, 296 F.R.D. 638, 646 (C.D. Cal. 2014) (no commonality because of individualized reliance inquiries); *Lloyd v. GMC*, 266 F.R.D. 98, 111 & nn.20-21 (D. Md. 2010) (reliance inquiries predominate over common issues); *see also* ECF No. 603, § II.B.

Plaintiffs have failed to demonstrate that putative class members received and relied upon a common misrepresentation. Plaintiffs themselves did not rely on the alleged misrepresentations, rendering them improper representatives but highlighting the individualized nature of establishing reliance and causation. As discussed *supra*, Deetlefs and Azuela knew they could be paid more than the minimum stipend before

---

(breach of fiduciary duty); *DeWolfe v. Hingham Ctr., Ltd.*, 464 Mass. 795, 799-800 (2013) (negligent misrepresentation); *Nat'l Acad. of Scis. v. Cambridge Tr. Co.*, 370 Mass. 303, 309-10 (1976) (constructive fraud); *Hal Taylor Assocs. v. Unionamerica, Inc.*, 657 P.2d 743, 749 (Utah 1982) (breach of fiduciary duty); *McBroom v. Child*, 392 P.3d 835, 842 (Utah 2016) (negligent misrepresentation); *Papanikolas v. Sampson*, 73 Utah 404, 414-15 (1929) (constructive fraud); *Spence v. Basic Research*, No. 2:16-cv-925-CW, 2017 WL 2416913, at *6 (D. Utah May 31, 2017) (UCSPA); *Bd. of Supervisors v. Davenport & Co., LLC*, 285 Va. 580, 589 (2013) (breach of fiduciary duty); *Caperton v. A.T. Massey Coal Co.*, 285 Va. 537, 553 (2013) (negligent misrepresentation, constructive fraud); *Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005) (Consumer Protection Act).

[14] *Fraser Eng'g Co. v. Desmond*, 26 Mass. App. Ct. 99, 104 (1988) (reliance or causation required for Chapter 93A).

they agreed to become au pairs, and their lack of reliance defeats certification. *See In re St. Jude Med., Inc.*, 522 F.3d 836, 838-39 (8th Cir. 2008) (reliance predominates where named plaintiffs did not rely on alleged misrepresentation); *Turcios*, 296 F.R.D. at 643, 647-48 (plaintiff lacked standing and was neither typical nor adequate where he knew of alleged misrepresentation and continued to use product); *Martinelli v. Petland, Inc.*, 274 F.R.D. 658, 663-64 (D. Ariz. 2011).

Moreover, under Plaintiffs' theory, the alleged misrepresentations were made by fourteen Sponsors and untold numbers of foreign and domestic agents. But, the "wage" decisions were made by families who compensated au pairs with widely varying amounts and non-monetary benefits. *See* ECF No. 603, Facts § C. These intervening actors defeat certification, as there is no evidence that host families uniformly relied upon or communicated alleged misrepresentations and then undertook a singular course of conduct. "Any trial thus would require … inquiries into each [host family's] sources of information about the [stipend], and the credibility of any [host family's] denial that [they] relied on [Cultural Care's] statements." *See In re St. Jude*, 522 F.3d at 839.

Plaintiffs' reliance on *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 514 (D. Utah 2017) is flawed. *See* Mot. 42. *Roberts* concerned training and employment marketed by <u>a single defendant</u> to a class whose members would not have undertaken the training but for <u>that defendant's</u> misrepresentations. *Roberts'* prerequisite for inferring reliance and causation, i.e., "the behavior of plaintiffs . . . cannot be explained in any other way than reliance upon the defendant's conduct," is not present here in light of (1) Deetlefs' and Azuela's knowledge that they could be paid more than the minimum stipend, (2)

11

their particular choices to not seek an increased stipend, and (3) their desire to extend their au pair terms beyond one year. There is no basis on this record to suggest that the putative class would not present the same individualized reliance inquiries.

Plaintiffs' conspiracy theory involving every Sponsor, foreign and domestic contractors, and thousands of host families, if presumed true, only provides another basis to deny certification. *See David v. Signal Int'l, LLC*, No. CIV.A. 08-1220, 2012 WL 10759668, at *29-32 (E.D. La. Jan. 3, 2012) (individualized reliance and causation will predominate where plaintiffs allege wide-ranging, international scheme to defraud guest workers, occurring over years and employing varied misrepresentations directed to class and third parties); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 94-95 (2d Cir. 2015). Plaintiffs have no uniform basis for inferring classwide reliance, so the misrepresentation subclasses cannot be certified.

### V.    Azuela Does Not Have Standing Under Virginia Law to Pursue Claims on Behalf of Unnamed Class Members.

Plaintiffs' request to certify a Virginia Subclass (*see* ECF No. 565-3) must also be denied. Under Virginia law, a plaintiff "who files a putative class action is not recognized as having standing to sue in a representative capacity on behalf of the unnamed members of the putative class." *Casey v. Merck & Co.*, 283 Va. 411, 418 (2012).[15]

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

---

[15] Cultural Care disagrees with the two Courts outside Virginia that have found that *Shady Grove Ortho. Assoc's v. Allstate Ins. Co.*, 559 U.S. 393 (2010) precludes application of this rule. *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2013 WL 3717743 (D. Minn. July 15, 2013); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 WL 7734558, at *27 (N.D. Cal. Sept. 14, 2016).

Dated:  July 17, 2017.                    Respectfully submitted,


*s/ Jessica L. Fuller*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on July 17, 2017, I have caused to be electronically filed the foregoing **RESPONSE OF DEFENDANT CULTURAL CARE, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Jessica L. Fuller*
Jessica L. Fuller