**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

    Plaintiffs,
v.

INTEREXCHANGE, INC., *ET AL.*

    Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR ORDER TO SHOW CAUSE**

---

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

background ..................................................................................................................... 2

LEGAL STANDARD ....................................................................................................... 6

ARGUMENT ................................................................................................................... 6

   I.   Defendants' Objections to the Transmittal Email Are Without Merit. ..................... 6

       A.  The Transmittal Email is a Faithful Distribution of the Notice. ......................... 8

       B.  The Transmittal Email Is Not a Solicitation. .................................................... 10

       C.  The Transmittal Email Does Not Circumvent the Class Notice. .................... 12

   II.  The Non-FLSA Issue Has Already Been Remedied. ........................................... 13

CONCLUSION ............................................................................................................. 15

## PRELIMINARY STATEMENT

On July 5, 2017, Plaintiffs' counsel began the process of providing notice to members of the FLSA classes conditionally certified by the Court. Within days, Defendants raised objections ranging from those worth discussion to the absurd. Over the next week, Plaintiffs conferred with Defendants to attempt to resolve their objections. What remains before the Court are the issues on which the parties were unable to reach agreement. Defendants' motion contains negligible analysis—although plenty of invective—misrepresents the state of the record, and ignores this Court's findings and rulings. After attacking Plaintiffs' counsel's ethics and moving for sanctions—a tactic Defendants have used before with equally nonexistent justification, *see* Appendix 2—Defendants demand that au pairs who have done nothing wrong be removed from the class and prohibited from being represented in this action. This shift from counsel to au pairs demonstrates Defendants' true purpose: they will file any motion and take any position to gain even the slightest advantage in this lawsuit because they know they cannot win on the merits.

Defendants strategically choose to omit from their filing a full explanation of what happened, but there are, in essence, three issues. *First*, the parties dispute whether the notice to the class should be for 2009-2016 or 2013-2016. Because the Certification Order held clearly that "Plaintiffs are authorized to send notice and consent forms . . . to each member of the class employed on or after July 24, 2009" (Certification Order, DE 569, at 14-15), 2009-2016 is the correct date range.

*Second*, the parties disagree as to whether transmittal emails and social media postings—again, explicitly endorsed by the Court—must be word perfect facsimiles of the entire long form notice, or whether Plaintiffs are permitted to "transmit" the notice via

1

communications appropriate to the medium so long as the entire long form notice is also provided. Because the Certification Order expressly endorsed social media postings that "transmit" the notice, Plaintiffs take the position that the latter is permissible.[1]

*Third*, the parties disagree as to the appropriate remedy for an honest mistake. Contrary to counsel's instruction, Plaintiffs' vendor sent the FLSA notice transmittal e-mail to au pairs who worked for non-FLSA Defendants.[2] As soon as Plaintiffs' counsel learned of this error, Plaintiffs immediately took the exact corrective action requested by Defendants: a corrective email containing the precise language Defendants requested.

Thus, for the first two issues, Plaintiffs' position is firmly grounded in the Court's orders and the case law, whereas Defendants seek to re-litigate issues they have already lost, prevent effective notice, and penalize au pairs for any mistakes they believe (incorrectly) that they can identify. For the third, the honest error has already been remedied through a corrective email and through counsel's commitment not to take advantage of the error. On that issue, therefore, no further action is necessary.

## BACKGROUND

In an order dated June 9, 2017, the Court conditionally certified various classes of au pairs under the FLSA over the objections of the FLSA Defendants. That order contained two passages highly relevant to this dispute. The first defined the class period: "Plaintiffs are authorized to send notice and consent forms, in accordance with this Order, to each member of the classes employed on or after July 24, 2009.[FN 4:]

---

[1] Along with this opposition, Plaintiffs have filed a "Motion to Amend the FLSA Notice Documents" that seeks the Court's approval of a revised Class Notice, revisions to the existing transmittal email, and a 60-day-reminder email (the "Notice Motion").

[2] The "non-FLSA Defendants" are Agent Au Pair, EurAuPair, Cultural Homestay International, GreatAuPair, Au Pair International, APF Global Exchange, and APEX and 20/20. The "FLSA Defendants" are American Institute for Foreign Study, AuPairCare, Cultural Care, Expert Au Pair, Go AuPair and InterExchange.

2

There is a dispute as to whether the statute of limitations has been tolled.  At this stage, the Court reserves ruling on the issue, because there is no prejudice to Defendants in notifying putative plaintiffs that may have a claim, and no significant additional burden associated with the accompanying discovery."  Certification Order 14-15. & n.4 (internal citations omitted).  In the second crucial passage, the Court overruled Defendants' objection and stated that "plaintiffs are permitted to distribute notice through the requested channels," which included "mail, email, publication, and other electronic means, including social media platforms like Facebook."  *Id.* at 13.

The first wave of transmittal emails to the class was sent on July 5, 2017. Exs. 4, 10-1; *see also* Declaration of Marlon Marshall, ¶ 5 (Exhibit 10 to Smalls Decl., "Marshall Decl.").  The transmittal email contained a short description of the purpose of the email and the nature of the lawsuit, as well as four hyperlinks: three to the front page of the class website, and one to a single pdf containing the Notice and Consent to Join form (the "Opt-In Form"), both of which were also accessible from the front page of the class website.  Exs. 10-1 (email) & 8 (website); *see also* Smalls Decl. ¶ 12.  That email went to 30,741 FLSA au pairs (*i.e.*, au pairs who were employed by an FLSA Defendant) out of a total of 91,204 FLSA au pairs.  Smalls Decl. ¶ 13; Marshall Decl. ¶ 7 & Ex. 10-1.  The remaining 60,463 FLSA au pairs have not yet received any notice.[3]  Unbeknownst to Plaintiffs, and due to a vendor error that was contrary to counsel's instructions, the transmittal email was also sent to 4,482 non-FLSA au pairs.  Smalls Decl. ¶ 13.

On the evening of Friday, July 7, 2017, counsel for the FLSA Defendants

---

[3] Given the high number of undeliverable messages, the vendor halted transmission to review which emails were valid.  Smalls Decl. ¶ 54.  Plaintiffs have since voluntarily ceased transmission of the email.  *Id.*

3

contacted Plaintiffs to raise objections to the transmittal email and website.  Ex. 13.  A flurry of correspondence ensued over the weekend and into the following week.  Although the full details of this correspondence are not germane to the issues before the Court, the entire record is included as Exhibits 11-28 and detailed in the Smalls Declaration.  Key communications are highlighted below.

Over the weekend, Defendants continued to voice their objections to the transmittal email and the website and the parties discussed the erroneous email to non-FLSA au pairs.  Although, Plaintiffs expressed the view that "a corrective email will cause more confusion," Plaintiffs agreed to send an email containing the language demanded by the non-FLSA Defendants—with no revisions whatsoever.  Ex. 12.

On Monday July 10th, Defendants demanded a meet and confer within 1.5 hours.  Plaintiffs acquiesced and the parties conferred by phone.  Ex. 20.  On that call, the non-FLSA Defendants sought: (1) assurance that the corrective email had been sent; (2) the names of all au pairs who received the erroneous message; and (3) a prospective agreement that Plaintiffs' counsel would refuse representation to any au pair who received the erroneous email for any FLSA claims that might arise in the future.  Smalls Decl. ¶ 33.

On July 11th, Plaintiffs wrote to Defendants to provide the assurance asked for in point (1)—*i.e.*, that the corrective email had been sent—which had also been provided orally on the July 10 call.  Ex. 25.  Plaintiffs also agreed to provide the names of all au pairs who accidentally received the notice email (point (2)), but did not agree to the requested bar to representation.  *Id.*  Significantly, Defendants' counsel never raised, requested, or conferred about reimbursement for business interruption costs before

4

filing this motion.[4] In correspondence the following day, Plaintiffs' counsel expanded on their reasoning:

> First, let me state unequivocally that Plaintiffs do not seek or have any intention on capitalizing on the error. We are carefully monitoring the sponsor of any au pair that completes a consent form and are disregarding any that are received for any of the non-FLSA Defendants. Further, Plaintiffs will not use responses from the erroneous email as an opportunity to contact au pairs to discuss their potential FLSA claims, or to identify new named plaintiffs.
>
> Second, a prospective bar to BSF's or TJ's representation of all au pairs who received the email is neither appropriate nor proportionate as such a bar may prejudice au pairs who had no role in the error and adversely affect their substantive rights. For instance, if an au pair who did not receive the email notification came forward and volunteered to serve as a named plaintiff with respect to a new FLSA class, and the court permitted that class to be added to the complaint, any au pairs who received the email would [be] barred from opting into that class through no fault of their own.
>
> Third, the discussion is hypothetical at this point as none of the au pairs that received the email may ever be added as a named plaintiff. To the extent that that were to ever happen, your rights are fully reserved. Plaintiffs also agree not to assert a laches defense if and when this issue ever becomes ripe.

Exhibit 28.[5]

During the parties' meet and confer on July 10, the FLSA Defendants also voiced various objections to the transmittal email, website, and the fact that 2009-2013 au pairs were sent the Notice. Smalls Decl. ¶ 35. The parties did not reach agreement on any issue. Nonetheless, on July 11th, Plaintiffs wrote to Defendants stating that while the

---

[4] The demand for business interruption costs appears to be for costs that Defendants would have had to bear regardless of the errant email: the dissemination of the notice to the more than 90,000 FLSA sponsored au pairs and the publishing of a website with the Notice and other case documents likely would have generated those same questions.

[5] Defendants misrepresent that Plaintiffs "unequivocally agreed" to their non-representation demand during the July 10 call (Def. Br. 4, n.4), strategically omitting the email quoted above. See Def. Br., Exhibit C. In other omitted emails, Plaintiffs' counsel repeatedly disagreed with defense counsel's account of the July 10 call, both by email and in a subsequent phone call on the morning of July 12, 2017. See Exs. 25, 26, 28.

notice process for the FLSA au pairs was entirely proper, Plaintiffs were "open to compromises", including a follow-up email to opt-ins, modifications to the website, and changes to future emails.  Ex. 20.  Defendants never responded.  Smalls Decl. ¶ 38.

## LEGAL STANDARD

In FLSA cases, there "is no prohibition against pre-'opt-in' communication with a Section 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice, or is misleading, coercive, or otherwise improper." *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1105-06 (D. Colo. 2013).  If a court issues "an order limiting communications between parties and potential class members, it should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 1105. (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981)) (alterations omitted).  Such "restrictive order[s] must be narrowly tailored to avoid impinging upon the parties' constitutional rights of free speech and association." *Id.*

## ARGUMENT

**I.     Defendants' Objections to the Transmittal Email Are Without Merit.**

The transmittal email provides a brief introduction to the reason for contacting the recipient, as befits email, social media, and other electronic means of communication. The body of the email contains these elements:  (i) a salutation; (ii) the purpose of the communication; (iii) a link to the class website that reads, "You may be owed additional compensation for the work you did as an au pair. Find out more or sign up to join the lawsuit."; (iv) a quotation from the Notice describing the case and a link to the Notice; (v) a second link to the class website that reads, "You have the right to participate in this lawsuit to recover any money owed to you. To do so, you must sign up."; (vi) disclosure

6

that the email is being sent on behalf of "Boies Schiller Flexner LLP, the attorneys for the au pairs in their litigation against the visa sponsor agencies"; (vii) a statement that counsel represents class members and a third link to the class website that reads, "Sign up now."; and (viii) a sign-off that reads, "Thank you, Jesse." – which is the name of the actual person who sent the email.  Ex. 10-1; Smalls Decl. ¶ 12.  Through the hyperlinks in the email, recipients are able to download and print the Class Notice and Opt-In Form, or they can go to the class website—where users again are able to view the Class Notice, request additional information about the lawsuit, and submit an Opt-In Form electronically or by mail.  In sum, there is nothing remarkable or controversial about electronically disseminating the FLSA notice in this way.

Defendants nonetheless raise several objections.  Cutting through their overheated rhetoric, their core objections are threefold: (i) that it is not simply the long form Class Notice pasted into an email; (ii) that its contents somehow amount to a client solicitation; and (iii) that it allows au pairs to join the lawsuit without ensuring that they have read the Class Notice.[6]  These objections lack merit and, if accepted by the Court, would drastically reduce participation in the class, particularly given the difficulties in providing notice to a class of "many low-wage, mainly immigrant workers [who] face real risks in pursuing their rights under wage-and-hour laws".  Ex. 29, *Avendano v. Averus,*

---

[6] Defendants also argue that the email should not contain any hyperlinks.  Def. Br. 15.  Inclusion of hyperlinks is entirely proper and Defendants cite nothing to the contrary.  *See* Fed. Jud. Center, Manual for Complex Litig. (4th ed) sec. 21.311 ("referring class members to an Internet site for further information can provide complete access to a wide range of information about a class settlement"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (Posner, J.) ("a firm that was hired to administer the settlement maintained a website with details of the case, and so far as appears that was an acceptable substitute" for traditional notice methods in a Rule 23 case, where due process concerns create more stringent requirements than in FLSA cases).

7

*Inc.*, No. 14-cv-01614, "Order Granting in Part and Denying in Part Plaintiff's Motion For Class Certification Under Rule 23(b)(3)" (Arguello, J.) (D. Colo. Sept. 29, 2016).

### A. The Transmittal Email is a Faithful Distribution of the Notice.

Defendants' position that any transmittal email or other electronic form of communication must contain only the long-form Notice and nothing else (Def. Br. 15) is an attempt to re-litigate an issue Defendants already lost. The Certification Order authorizes Plaintiffs to "distribute notice" through electronic and social media channels. This authorization would be a chimera if Defendants' argument were correct. The one certainty in this case is that a millennial is not going to read an unsolicited email or Facebook message that simply contains the Class Notice without explanation.[7]

Electronic and social media communications must "mirror[] the notice otherwise approved by the Court," Certification Order at 13 (quoting *Mark v. Gawker Media LLC*, 13-cv-4347 AJN, 2014 WL 5557489, at *5 (S.D.N.Y. Nov. 3, 2014)), but must do so in a way that is appropriate to the medium. That is precisely what Plaintiffs have done by using a transmittal email that provides a short, neutral synopsis of the purpose of the message, and directly links au pairs to the full Class Notice and the Class Website.

Courts routinely find no problem with truncated cover messages in emails and even text messages to potential FLSA plaintiffs. *See, e.g.*, *Shoots v. iQor Holdings US Inc.*, No. 15-CV-563 (SRN/SER), 2015 WL 6150862, at *22 (D. Minn. Oct. 19, 2015) (approving plaintiffs' email message directing potential plaintiffs to attached Notice); *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) (approving

---

[7] In today's world where anxiety about cyber-security and hacking is at a high, no one with any technological knowledge would knowingly open a hyperlink in, or attachment to, an unsolicited and otherwise blank email. Some basic statement explaining why an au pair is receiving an unsolicited message about a lawsuit is necessary to authenticate it and show that it is from a credible source.

email message that included the Notice as an attachment); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625 RJS, 2015 WL 4240985, at *6 (S.D.N.Y. July 13, 2015) (approving a brief cover text message that linked would be plaintiffs to the notice). In addition, as here, courts also routinely delegate the form and substance of the transmittal message itself to Plaintiffs. *See, e.g.*, *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015) (authorizing plaintiffs to send email without requiring approval of the content); *Moore v. Performance Pressure*, No. 5:15-CV-346, 2016 WL 7486371, at *4 (W.D. Tex. Jan. 11, 2016) (same). Indeed, this Court has itself recently permitted precisely the kind of truncated cover message used by Plaintiffs. *See* Ex. 30, *Avendano v. Averus, Inc.*, "Order Granting Joint Motion to Approve FLSA Opt-In Notice and Consent to Join".[8]

Defendants also argue that certain statements in the transmittal email are not neutral, but as illustrated in Appendix 1 these statements all have analogs in the Notice, *i.e.*, they "mirror" the language in the Notice. *See* Def. Br. 9-10. The only time Defendants actually engage with the language of the Notice is to make the strange argument that "The use of the word 'work' flies in the face of the Court's directive to remove sponsor-as-employer related language." Def. Br. 10. The Notice itself, however, states that au pairs "were sponsored to work as an au pair by one of the named visa sponsors." *See also* App'x 1. Defendants' objection to the word "work," therefore, is just as inconsistent with the Notice as Defendants' other arguments. There is no legitimate dispute that, whoever their employer, what au pairs do is "work." S*ee*

---

[8] Defendants state that, despite waiting 6 days to file their motion, their multiple law firms' worth of "undersigned counsel were unable to find a *single* case where a cover email transmittal or other form of notice deviated from a court approved notice." Def. Br. 11 (emphasis in original). As discussed above, there are numerous such cases.

9

22 C.F.R. 62.31(j)(1) (au pairs' must be compensated in accordance with FLSA).

### B. The Transmittal Email Is Not a Solicitation.

Defendants' next argument is that the transmittal email is somehow a solicitation. As an initial matter, this argument must fail because the transmittal email is a faithful distribution of the Notice and, as such, cannot also be an improper solicitation. *See* Colo. R. Prof. Cond. 7.2, Comment [4] ("Neither this Rule nor Rule 7.3 prohibits communications authorized by law, such as notice to members of a class in class action litigation."). Regardless, Defendants argument is heavy on accusations that counsel violated "ethical duties," but light on authority. This lack of authority is not surprising: "Once conditional certification is granted, communications with the putative class are not prohibited where a party has not engaged in misleading, coercive, or otherwise abusive communications." *Stransky*, 929 F. Supp. 2d at 1105.

Defendants' position that the transmittal email is "solicit[ous]" and "unethical" is premised on the statement, "If you sign up, the attorneys will represent you too. Sign up now." Def. Br. 14. Defendants also complain that the email is signed by "Jesse"—the actual sender of the message. Smalls Decl. ¶ 12. There is nothing "misleading, coercive or otherwise abusive" about either statement. As seen in Appendix 1, the Court-approved Class Notice also states that "the attorneys representing the Plaintiffs will also represent" au pairs that join the class—indeed, that is the point of a class. It makes no sense to argue that the same information is coercive in the transmittal email.

There is similarly no basis for Defendants' statement that the use of "Jesse" is an "apparently intentional choice by plaintiffs to mislead au pairs into believing this email was perhaps sent by a fellow au pair rather than a law firm." Def. Br. 8-9. *First*, Jesse is the name of the person who sent out the emails. *Second*, even if the email had come

10

from one of the undersigned attorneys, it could just have easily been signed "Dawn," "Alex," "Pete," or "Matt." But most fundamentally, Defendants ignore the sentence that appears shortly before "Jesse": "This email is being sent to you on behalf of Boies Schiller Flexner LLP, the attorneys for the au pairs in their litigation against the visa sponsor agencies." Ex. 10-1.

In any event, courts have rejected Defendants' argument even when, unlike here, the communication did not identify a law firm as the sender. In *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392 (D.N.J. 1988), defendants sought to nullify consent forms for an opt-in class under the Age Discrimination in Employment Act because the cover letter was generically signed by named plaintiffs and did not state that it was prepared by lawyers. *Id.* at 407-410. The court rejected defendants' argument, reasoning that there was "no way that such nondisclosure could have misled readers" and that "[t]o the extent that defendant implies that such activity on the part of plaintiffs' counsel is unethical . . . defendant's contention [is] strained, and irrelevant" to the issue of whether the consent forms were valid. *Id.* at 409-410. The same is true here.

Finally, with regard to supposed ethical violations implicated by these two facets of the transmittal email, it is noteworthy that Defendants fail to provide any legal analysis of any state or bar association ethical rules.[9] As illustrated in Appendix 2, when Defendants have no credible legal arguments to make, they stoop to personal

---

[9] With no analysis, Defendants make passing reference to "R.Prof'l C.7.3" and *Macarz v. Transworld Sys.*, 201 F.R.D. 54 (D. Conn. 2001). *Macarz* bears no resemblance to this case. There, the court had already granted summary judgment on liability to the plaintiffs, and then certified a Rule 23 class. Plaintiffs' counsel therefore attempted to insert language into the class notice that advised class members that they should opt out of the class, and that class counsel would represent them individually on terms to be negotiated. The District Court struck that "should" language. *See id.* at 57.

11

attacks on Plaintiffs' counsel.  The Court should not condone such mud-slinging, particularly when it concerns matters already decided by the Court.  *See* DE 567 at 6 (advising counsel to stop attempting to re-litigate issues and instead "expend their precious resources moving this case forward.").  At the least, if Defendants are going to accuse Plaintiffs' counsel of misconduct, they should cite some relevant legal authority.

### C. The Transmittal Email Does Not Circumvent the Class Notice.

Defendants object to the transmittal email on the grounds that it "circumvents the Court-approved Notice" by allowing au pairs to join the lawsuit without certifying that they have viewed the Notice.  Def. Br. 7.  Accordingly, Defendants request that the Court "strik[e] any putative plaintiff that has opted-in through Plaintiffs' website without reviewing the Court-approved Notice".  Def. Br. 15.  This argument misses the mark.

Starting with the basics:  the transmittal email provides a link directly to the Notice.  There is no circumvention—potential plaintiffs were sent the Notice.  More generally, regardless of whether Plaintiffs use mail, email, social media, or any other means of providing notice, there is no way to guarantee that opt-in plaintiffs have read a class notice prior to joining a class.  For example, had Plaintiffs used traditional mail, and placed the Class Notice alongside the Opt-In Form in an envelope, the recipient of that envelope could just as easily sign the Form without ever reading the accompanying Notice.  Just as with the envelope, the transmittal email provides recipients with all of the relevant materials, including the Class Notice, and the class website (which itself contains the Class Notice and the Opt-In Form), and it is up to the recipient to decide how much of the Notice to read.

Again, Defendants cite no legal requirement that class members have to actually read a notice as a precondition for joining a class—because there is none.  Instead, the

FLSA requires only that the parties send notice of the opportunity to opt into the collective action, and that potential collective action members "give . . . consent in writing" to become a party.  29 U.S.C. § 216(b); *see also Landry v. Swire Oilfield Servs., L.L.C.*, No. CIV 16-621 JB/LF, 2017 WL 1709695, at *26-27 (D.N.M. May 2, 2017). Accordingly, Defendants' assertion that "the email transmittal likely resulted in a large number of opt-ins never having received or read the Court-approved Notice" is a red herring.  Def. Br. 12.  In reality, there is no such requirement, and courts have actually found the opposite—that the use of email actually tends to "increase the chance of the class members receiving and reading the notice".  *Landry*, 2017 WL 1709695, at *39.

The Court need not rely on theory, however.  The actual responses of au pairs demonstrate that they are paying attention to the Notice.  Plaintiffs have received inquiries about the difference between the 2009 date in the transmittal email and the 2013 date in the Notice, and there have been 2,040 requests for further information.  Smalls Decl. ¶¶ 47, 55.  Moreover, the Opt-In Form itself explicitly requires au pairs to agree to terms from the Notice: to join the class au pairs must "consent to the attorney fee arrangement described in the ***Notice of Your Right to Join Lawsuit For Unpaid Wages***".  Ex. 1. (emphasis added).  This statement is prominently displayed directly above the signature line.

Beyond the lack of any legal basis for the supposed problems with the notice, the remedy Defendants seek of striking Opt-In Forms is overbroad.  Plaintiffs' counsel has received a number of opt-in forms via hand-signed PDF documents—and the only way to download the Form and sign it is to also download the Notice.  Smalls Decl. ¶ 55.

**II.     The Non-FLSA Issue Has Already Been Remedied.**

The inadvertent transmission of emails to non-FLSA au pairs has been remedied

13

through a corrective email that Defendants requested and drafted, and through Plaintiffs' counsel's representation (omitted from Defendants' motion) that "Plaintiffs do not seek or have any intention on capitalizing on the error." Ex. 28.  No further action is necessary.  Indeed, in similar situations, courts have endorsed precisely the corrective measures already taken here—even in cases where the communications have been intentional.  *See, e.g.*, *Bullock v. Auto. Club of S. California*, No. SA CV01-731-GLT(ANX), 2002 WL 432003, at *3 (C.D. Cal. Jan. 28, 2002) ("The Court is authorized to order corrective notices. . . "); *Haffer v. Temple Univ.*, 115 F.R.D. 506, 514 (E.D. Pa. 1987) (ordering corrective notice where defendants made improper statements to potential plaintiffs); *see also* Manual for Complex Litigation § 30.24, p. 273 (curative notice is appropriate where party provided class members with inappropriate communications).  Courts have even refused the very remedies Defendants request, such as striking opt-in forms and sanctions, in situations where, unlike here, the supposed communications were intentional.  *See, e.g., Bennett v. Advanced Cable Contractors, Inc.*, 2012 WL 1600443, at *9–11 (N.D. Ga. May 7, 2012); *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1121–22 (W.D. Wash. 2011).[10]

Defendants also seek extraordinary punitive relief not just against counsel, but against the au pairs themselves, who inarguably did nothing wrong.  Nothing in Defendants' cited authority supports such a result.  In *Hamm v. TBC Corp.*, not only was the case "in its earliest stages, and ha[d] not yet been conditionally certified," during which period there is a "unique potential for abuse" not present at this case's more

---

[10] Defendants' request to invade privilege by receiving communications between counsel and the vendor is inappropriate.  Defendants have no good faith basis to question the sworn testimony of both Plaintiffs' counsel and the vendor.

14

advanced stage, but the parties also agreed that the law firm's conduct in reaching out to potential plaintiffs was entirely intentional, and the Court explicitly found that the communications violated a specific Florida bar rule. 597 F. Supp. 2d 1338, 1341, 1351-53 (S.D. Fla. 2009). Similarly in *In re Universal Bldg. Prod.*, the court refused to allow a law firm to represent the unsecured creditors committee because the law firm had solicited creditors to join the committee and engaged in a scheme to trade their committee votes in exchange for hiring the broker who arranged the scheme to be the committee's official translator. 486 B.R. 650, 658-664 (Bankr. D. Del. 2010). There too, the law firm's actions were unquestionably intentional, and there was a finding that the firm's conduct violated Delaware's ethics rules. *Id.* Finally, in *Kaufman v. Am. Family Mut. Ins. Co.*, 05-cv-02311-WDM-MEG, 2008 WL 1806195 (D. Colo. Apr. 21, 2008), it was "in large part undisputed" that plaintiffs' counsel intentionally used defendants' confidential information to solicit named plaintiffs for a class action—and did in fact recruit several—in direct violation of a court order and ethical rules. *Id.* at *5.

Here, by contrast, conditional certification has been granted, and Plaintiffs' vendor erroneously sent the initial transmittal email to au pairs who are not part of the FLSA class, despite the express instruction of Plaintiffs' counsel that only the FLSA class au pairs were to be contacted. Smalls Decl. ¶¶ 11-13; Marshall Decl. ¶¶ 3, 7. The facts of this situation simply compare in no way to the cases cited by Defendants.

## CONCLUSION

For the reasons given herein, Plaintiffs' request that the Court overrule each of Defendants' objections and deny Defendants' request for sanctions.

Dated: New York, New York
July 20, 2017

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

*/s/* Dawn L. Smalls
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
575 Lexington Avenue
New York, New York  10022
Tel:  (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 20, 2017, I electronically served the foregoing motion on all counsel of record.

                                                        */s/* Dawn L. Smalls  
                                                        Dawn L. Smalls