**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

**DECLARATION OF DAWN L. SMALLS REGARDING FLSA OPT-IN PROCESS**

---

I, Dawn L. Smalls, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the State of New York and am a Partner with the law firm of Boies Schiller Flexner LLP, counsel for the Plaintiffs and for the Class. I am admitted to practice in New York, Massachusetts, the United States Court of Appeals for the Second Circuit, the United States Court of Appeals for the Sixth Circuit, the United States District Court for the Southern and Eastern Districts of New York, the United States District Court for the District of Massachusetts and the United States District Court for the District of Colorado.

2. The matters stated herein are based on my personal knowledge and, if called upon to testify, I could and would testify competently thereto.

3. I submit this declaration to notify the Court of several issues that have arisen in the process of notifying au pairs of their right to join the FLSA class, and in

support of both Plaintiffs' Motion to Amend the FLSA Notice Documents and Plaintiff's Opposition to Defendants' Motion for Order to Show Cause.

4. **First**, in the process of sending the first wave of transmittal emails to FLSA au pairs, an erroneous email was sent to certain non-FLSA au pairs of the Notice of Your Right to Join Lawsuit for Unpaid Wages. Upon being notified of the error, Plaintiffs immediately investigated the scope of the error and sent a corrective email at the request of Defendants. The full correspondence between Plaintiffs' counsel and Defendants' counsel regarding this issue is included as exhibits to this Declaration.

5. **Second**, in the days after sending the first wave of transmittal emails, Plaintiffs' counsel received a number of inquiries from au pairs on three points: (1) whether the lawsuit was seeking recovery from sponsors or host families; (2) whether the message was spam, a scam, or otherwise illegitimate; and (3) confusion over whether the date for eligibility to join the FLSA class begins in 2009 or 2013.

6. To remedy the confusion, Plaintiffs propose amending the class notice, to correct the start date of the class to 2009, as illustrated in the proposed revised notice, attached hereto as **Exhibit 3**. The original notice and a redline against the original notice are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.

7. To remedy the confusion arising out of the transmittal email, Plaintiffs propose to revise the email with a header and text stating that the lawsuit is not against host families, as illustrated in the proposed revised transmittal email attached hereto as **Exhibit 6**. The original transmittal email is attached as **Exhibit 4**, and a redline of the revised email against the original is attached hereto as **Exhibits 5**. In addition, a

proposed 60-day reminder email that is substantially the same in relevant respects to the revised transmittal email is attached hereto as **Exhibit 7**.

8.     ***Third***, two days after sending the initial wave of transmittal emails, Plaintiffs' counsel received an email from the FLSA Defendants' counsel threatening to file a temporary restraining order over concerns about the class website and transmittal email.  Over the next several days, the parties conferred over email and by phone, and while Plaintiffs believed that Defendants' concerns were unsubstantiated, Plaintiffs nonetheless voluntarily offered to make a number of changes to address Defendants' stated concerns.  The parties reached no agreement.  The full correspondence between Plaintiffs' counsel and Defendants counsel regarding these issues is included below or attached as exhibits.

9.     To remedy concerns expressed by Defendants over the class website, Plaintiffs made several changes to the website to make the class notice more prominent, including adding a sub-header to the banner linking to the notice identifying the FLSA sponsors and inserting a "View Notice" button into the "Join the Lawsuit" section, and changing the wording of the text of the transmittal email to link to the notice rather than the Documents section of the website.  A screenshot of the original website is attached hereto as **Exhibit 8**.  A screenshot of the revised website is attached hereto as **Exhibit 9**.

### *Email Transmission to Non-FLSA Au Pairs*

10.    On April 27, 2017, Boies Schiller Flexner retained 270 Strategies to manage the outreach portion of the opt-in notification process, including the email notification of au pairs and targeted social media outreach to au pairs.  The retention

agreement also provided for the administration of a survey to (1) host families and (2) au pairs to determine the wages actually paid to au pairs and other terms of employment. Attached hereto as **Exhibit 10** is a true and correct copy the Declaration of Marlon Marshall, a partner of 270 Strategies engaged on this matter.

11. Prior to, and after retaining 270 Strategies, I communicated that there were two classes, broadly speaking: one opt in that included six Defendants, and one opt out that had not yet been certified that included all Defendants. I further explained that the opt in notification process only applied to the six FLSA Defendants and that au pairs sponsored by these six Defendants were the only au pairs that were to receive a communication from Plaintiffs as part of the opt in notification process.

12. On July 5, 2017, 270 Strategies sent the initial transmittal email notification to putative class members, consistent with the Court's June 9, 2017 Second Amended Order Granting Motion for Conditional Collective Action Certification (DE 569), notifying them of the case, and including links to the class website, Notice of Your Right to Join Lawsuit for Unpaid Wages and Consent to Join form. A true and correct sample copy of this email is attached hereto as **Exhibit 1 to the Declaration of Marlon Marshall (Exhibit 10-1)**. The email was sent by Jesse Boateng, who is an employee of 270 Strategies.

13. Completely unbeknown to Plaintiffs, and contrary to counsel's instruction, 270 Strategies inadvertently sent the transmittal email to 4,482 au pairs sponsored by the non-FLSA defendants Agent Au Pair, Au Pair International, EurAuPair, Great Au Pair, APEX-20/20, and Au Pair Foundation. No au pairs from non-FLSA Defendants

Cultural Homestay International[1] or USAuPair were contacted. The 4,482 emails to these au pairs represent 4.7% of the 95,686 total au pairs (both FLSA and non-FLSA Defendant) for whom we have email contact information. The email was sent to 30,741 FLSA au pairs.

14. On July 7, 2017 at 4:07 p.m., Plaintiffs were informed of the error via an email from Jonathan Bender, counsel for Cultural Homestay International, stating that au pairs sponsored by certain non-FLSA Defendants had received an email containing the Notice of Your Right to Join Lawsuit for Unpaid Wages. A true and correct copy of this email is attached hereto as **Exhibit 11.** After receiving this email, I immediately contacted 270 Strategies to determine which au pairs were sent the email and whether any non-FLSA au pairs could have received the notification.

15. On Saturday, July 8, 2017 at 1:42 p.m., Kathryn Reilly, counsel for non-FLSA Defendants Agent Au Pair and Au Pair International, emailed Plaintiffs asking for confirmation as to whether the email had been sent to au pairs sponsored by non-FLSA Defendants. At 12:54 p.m.[2], I replied to Kathryn Reilly's email stating that Plaintiffs were investigating whether the email could have been erroneously sent to non-FLSA au pairs and that if the email was sent to non-FLSA au pairs, it was done so in error. At 3:14 p.m., I received a reply from Kathryn Reilly asking to speak by phone. At 3:36 p.m., I called Kathryn Reilly but received no answer. I then emailed her to inform her of my attempt. A true and correct copy of this email chain is included in **Exhibit 11**.

---

[1] Five au pairs from the list produced by Cultural Homestay International were sent the email as they were also included in the au pair productions of other sponsors.
[2] Although my account of the correspondence is chronological, the time stamps may not appear as such because the sender and/or recipient were in different time zones. Thus, for example, Exhibit 10 came in response to Exhibit 9, although Exhibit 9's timestamp appears to be earlier.

5

16. On Saturday, July 8, 2017 at 3:40 p.m., I spoke with Kathryn Reilly. During that call, she requested that a corrective email be sent to non-FLSA au pairs by the end of that day. At 4:15 pm., I received an email from her stating that Agent Au Pair, Au Pair International, Great Au Pair, and Cultural Homestay demanded that an email be sent to any au pairs sponsored by them that had received the erroneous email and that the corrective email go out that night. At 7:18 p.m., I wrote to counsel stating that Plaintiffs thought a follow up email would cause additional confusion and did not believe a corrective email was necessary as "(1) the notice clearly outlines which sponsors it applies to; and (2) the Consent to Join form asks for the au pair's sponsor making it easy to filter out any forms received from any non-FLSA au pairs." Instead, counsel for Plaintiffs offered to add language to the class website that outlined specifically which sponsors were covered by the FLSA claims in prominent lettering and at the top of the page. In the email, Plaintiffs nonetheless offered language for a corrective email to the extent that counsel still thought one necessary, and offered to send it that evening as originally requested. A true and correct copy of this email is attached hereto as **Exhibit 12**.

17. On Sunday, July 9, 2017 at 9:43 a.m., I received a reply from Kathryn Reilly stating that a retraction email was "absolutely necessary" and providing alternative language for the email. She requested that it be sent to all au pairs that received it in English that day, and sent to any au pairs that received it in Spanish and Portuguese the following day once an official translation could be completed. At 9:50 a.m., I replied that although Plaintiffs still did not believe a corrective email was necessary, Plaintiffs would send an email with the language proposed by the non-FLSA

6

Defendants. I also stated that Plaintiffs would voluntarily make the changes to the website outlined above. Kathryn Reilly replied to me at 11:54 a.m., stating "Thanks Dawn." A true and correct copy of this email chain is included in **Exhibit 12**.

18. On Sunday, July 9, 2017 at 10:00 p.m., I received confirmation that the email requested by Defendants had been sent to all au pairs sponsored by non-FLSA au pairs that received it.

19. On Monday, July 10, 2017 at 11:23 a.m., I replied to Jonathan Bender, counsel for Cultural Homestay International, and informed him that only 5 au pairs from Cultural Homestay had been contacted –all of which were included on another sponsor's list, three of which were also included on a FLSA sponsor's list. A true and correct copy of this email is attached hereto as **Exhibit 19**.

20. On Monday July 10, 2017, I received individual inquiries from counsel for APEX- 20/20 and Great Au Pair as to whether any of their au pairs had been sent the notice. I replied to those emails and I provided the information requested to Great Au Pair in an email on Monday, July 10 at 2:59 p.m. I provided an excel spreadsheet of the au pairs that had received the email, and separately au pairs that had received the retraction, to counsel for Agent Au Pair, Au Pair International, EurAuPair, Au Pair Foundation, and APEX-20/20, at approximately 12:30 a.m. on July 12, 2017. True and correct copies of these emails are attached hereto as **Exhibits 21-23**.

21. On Thursday, July 13, 2017 at 1:58 p.m., I received an inquiry from Courtney Richardson, counsel for USAuPair as to whether any of their au pairs had been sent the notice. I replied at 12:00 p.m. confirming that the notice was not sent to any USAuPairs, and Ms. Richardson responded at 2:02 p.m. thanking me for the

7

prompt response.  A true and correct copy of this email chain is attached hereto as **Exhibit 24**.

### *FLSA Defendants Threaten to Seek Temporary Restraining Order*

22. At the same time that I was communicating with counsel for the non-FLSA Defendants regarding the erroneous email, I was also communicating with counsel for the FLSA defendants regarding their objections to the transmittal email and class website.

23. That correspondence began on Friday, July 7, 2017 at 5:02 p.m., when Plaintiffs received an email from Thomas Quinn, counsel for FLSA Defendant AuPairCare, Inc., informing Plaintiffs of the filing of a potential Temporary Restraining Order against Plaintiffs, and demanding that "all further transmittal emails…cease and that the website associated with the transmittal email…be taken down immediately, or in the alternative what plaintiffs' position is on the TRO."  A true and correct copy of this email is attached hereto as **Exhibit 13**.

24. On Saturday, July 8, 2017 at 5:49 p.m., I received an email from Joan Lukey, counsel for Cultural Care, objecting to an "electronic 'cover page' that looks like chatty outreach from an au pair inviting her peers to participate in a pot of money." The email also asks whether Plaintiffs "erroneously sen[t] the notice to au pairs who participated between 2009 and 2013?" The email proceeded to state that all opt-ins received thus far should be nullified and no outreach should be permitted "except notification of the nullification followed by an email of the actual Notice."  The email then

8

stated that the process should start over "*sans* chatty solicitation and use of social media."  A true and correct copy of this email is attached hereto as **Exhibit 14**.

25. On Saturday, July 8, 2017 at 8:38 p.m., I received an email from Brooke Colaizzi, counsel for InterExchange, citing an earlier communication with Joan Lukey, counsel for Cultural Care and requesting to be included in any further conferrals or communications related to the stated objections to the transmittal email and the website.  A true and correct copy of this email is attached hereto as **Exhibit 15**.

26. On Saturday, July 8, 2017 at 10:03 p.m., I received an email from Joan Lukey, counsel for Cultural Care, requesting that if the notice had been sent to au pairs placed by Cultural Care prior to 2013 that Plaintiffs "correct that error when inviting au pairs placed by Cultural Care (and any other concerned FLSA defendant) to opt in."  A true and correct copy of this email is attached hereto as **Exhibit 16.**

27. On Sunday, July 9, 2017 at 9:12 a.m., I received an email from Thomas Quinn, counsel for AuPairCare, Inc., asking for a response to his prior email, with a message to "preserve all intra-firm/inter-firm emails dealing with this improper Notice transmittal; preserve all email exchanges with all vendors that your firm has communicated with on the class notice process; preserve all draft transmittal Notice communications of any nature; any other communications on this Notice process; draft web site pages from the initial concept of an au pair class web site to this latest version that is currently operating."  The message also asked for Plaintiffs' availability for a hearing the next day.  At 8:08 a.m., I replied to Thomas Quinn's email relaying that Plaintiffs did not understand his prior demands. I then suggested a Monday call to discuss "[his] concerns (and the legal support for them) and… any appropriate

9

accommodations." At 2:25 p.m., I received an email from Thomas Quinn offering his position that "many courts…have been offended by putative class Notice communications that have not been authorized by the presiding judge" and asking whether Plaintiffs had answers to the questions he posed on Friday regarding proposed remedies. At 2:39 p.m., I replied to Thomas Quinn's email, including all Defendants on my response. In this e-mail, I reviewed each of the objections made by Defendants and provided Plaintiffs' response as to why those objections were unjustified and suggested a conference call in which to discuss their concerns. A true and correct copy of this email chain is attached hereto as **Exhibit 13**.

28. On Sunday, July 9, 2017 at 12:41 p.m., I received an email from Joan Lukey replying to my email to Kathryn Reilly agreeing to send out the email requested by the non FLSA Defendants, asking whether Plaintiffs would also include a "single link that will lead the au pair to the court-approved notice in order to opt in? Will the chatty 'cover email' be removed?" The email concluded by stating that they "still require an answer to our question as to whether this went out to au pairs who participated in the program before the start date expressly stated in the notice, i.e., July 25, 2013. If it did, (a) we need to know whether that was an error or intentional, and (b) you need to retract that invitation to 'participate in this lawsuit' to all au pairs who fall outside the court-ordered period. PLEASE CLARIFY THESE POINTS ASAP." A true and correct copy of this email is attached hereto as **Exhibit 17**.

29. On Sunday, July 9, 2017 at 3:48 p.m., Thomas Quinn replied to my email stating that he understood social media to be an approved method of "class communication. Importantly, no defendant has objected to the use of social media as

10

best I can see. It is the content and variance from approved language, along with the hyperlinks that has generated this extended discussion." A true and correct copy of this email is attached hereto as **Exhibit 18**.

      30.     On Sunday, July 9, 2017 at 4:38 p.m., I received an email from Joan Lukey stating, "While Judge Arguello may have granted permission over objection for you to send "notice and consent forms" to the classes participating in the au pair program on or after July 24, 2009, she did not indicate that the SAME notice and consent form could go to the groups on both sides of the July 2013 dividing line." And that the email "misleads four years of au pair participants into believing that they already have a right to participate in this lawsuit, when their right, if any, is dependent upon a ruling that has not been made." The email then stated that no Defendants had objected to the use of social media notwithstanding her demand that Plaintiffs cease contact via social media in earlier correspondence. On Monday, July 10, 2017 at 9:03 a.m., I replied to Joan Lukey's e-email, offering as a response to her objection to emails to pre-2013 au pairs the "plain language" of the Court's Order. At 9:33 a.m., I received an email from Joan Lukey stating that the circulation of the Notice to au pairs from 2009 – 2013 was improper, stating that "while the July 2013 forward group actually have a right to participate, the July 2019 to July 2013 group at this point merely *may* have a right to participate once the court determines the equitable tolling issue." Then at 9:57 a.m., I received another email from Joan Lukey stating that they were formally objecting to correcting the date on the Notice from 2013 to 2009 requesting that Plaintiffs send the notice with track changes stating that it was their position that we could not "leave the incorrect webpage up." Upon receipt of this email, I resent the redlined Notice with the

11

proposed date change that I had circulated previously to Defendants. A true and correct copy of this email chain is included in **Exhibit 13.**

      31. On Monday, July 10, 2017 at 1:23 p.m., I received an email from Joan Lukey requesting a conferral on the objections previously raised by counsel and calling upon Plaintiffs to "(1) provide today a complete list of all recipients of the Notice, organized by sponsor; (2) Provide copies to defendants of all prior communications with the vendor sending the notice; (3) removal of the current webpage; (4) posting on the webpage of the approved notice only, and nothing else, without an alteration of the dates until and unless agreement is reached or a court order obtained as to the proper notice to the pre-July 2013 au pairs; and (5) agreement that all current opt-ins are nullified, pending further agreement or court order." At 2:42 p.m., I replied to Joan Lukey's email accepting the conferral request and expressing the desire to distinguish between the objections raised by the FLSA sponsors and the non-FLSA sponsors. At 4:26 p.m., I received a reply to my email stating that Defendants would like to confer at 6:00 or 6:15 p.m. in 1.5 hours from the transmission of the email. At 5:46 p.m., I replied to Joan Lukey's email and informed her that Plaintiffs would participate in a joint call, but would not discuss the erroneous email error with non-FLSA Defendants; and conversely would not discuss the objections of the FLSA Defendants regarding the notification process with the non-FLSA Defendants, as those objections did not pertain to them, and agreed to participate in a 6 p.m. call. At 5:49 p.m., Joan Lukey confirmed the time for the conferral of 6:00 p.m. and provided a call in number. A true and correct copy of this email chain is attached hereto as **Exhibit 20**.

### *July 10, 2017 Conference Call*

32.     On July 10, 2017, at 6 p.m., counsel for both the FLSA and non-FLSA Defendants had a conference call with Plaintiffs' counsel. I, along with Sean Rodriguez and Byron Pacheco, represented Plaintiffs on the call.

33.     The non-FLSA Defendants via Kathryn Reilly, counsel for Agent Au Pair and Au Pair International, spoke first, and made three requests. On the call, Ms. Reilly (1) requested confirmation that the corrective email had been sent and (2) a list of all the names of the au pairs that had received the inadvertent email and a list of all au pairs that had received the retraction. Plaintiffs agreed to both requests. Her third request was that Plaintiffs agree that they would refuse future representation to any au pair who had received the errant email, describing them as "fruit of the poisonous tree". More generally, Ms. Reilly reasoned that Plaintiffs should not be able to earn any advantage in this lawsuit from their error.

34.     Initially, I said that I would agree to the third request. However, my partner Sean Rodriguez interjected and asked a series of questions about the scope of Ms. Reilly's request, and raised the prospect that there might be some ethical problem with refusing representation to class members. Following an extended back and forth about this request, I stated that Plaintiffs would consider the request and discuss it internally, and get Ms. Reilly an answer the next day.

35.     The second half of the call was led primarily by Joan Lukey, counsel for Cultural Care, who appeared to be speaking on behalf of all of the FLSA Defendants, and who outlined a number of concerns the FLSA Defendants had with the transmittal email and the class website.

13

36. In response to these objections, I stated that while Plaintiffs believed Defendants' objections were without basis, we would consider them in the hopes of avoiding needless litigation.

### *Plaintiffs Propose Additional Compromises*

37. In an email on Tuesday, July 11, 2017 at 3:39 p.m., I provided my response to Joan Lukey, offering "compromises that will resolve the dispute efficiently", including an agreement to provide Defendants with information about the opt-ins that have been received thus far, additional changes to the website, and an additional email to au pairs that have already opted-in resending the class notice to address their concern that au pairs may have opted-in without seeing it. Regarding Defendants' proposed bifurcation of au pairs into pre-2013 and post-2013 au pairs, I explained that Plaintiffs still did "not understand the contours" of that position, and asked Defendants to propose the precise language they seek, so that we could determine if the parties could reach an agreement about it. This email is the top, most recent email in the chain included in **Exhibit 20**.

38. I received no response to this email.

39. On Tuesday, July 11, 2017 at 10:18 p.m., I emailed Kathryn Reilly (for the non-FLSA Defendants) outlining the requests of the non-FLSA Defendants, noting that Plaintiffs agreed to the first two requests but did not agree to the bar to representation. On Wednesday, July 12, 2017 at 9:08 a.m., I received a reply from Kathryn Reilly, expressing her "shock[]"at Plaintiffs' response to the non-FLSA Defendants third request regarding non-representation of au pairs. At 7:19 a.m., I replied to Kathryn Reilly's email, explaining that I had agreed preliminarily with the non-representation request, but

had stated that I needed to discuss it internally before I could formally agree. At 9:38 a.m., Kathryn Reilly responded to my email expressing further "shock[]" at Plaintiffs' response and copying other Defendants to verify that the third request was agreed to "immediately--without reservation". A true and correct copy of this email chain is attached hereto as **Exhibit 25**.

40. On Wednesday, July 12, 2017 at 8:24 a.m., I replied to Kathryn Reilly's email to strongly disagree with the characterization that I went back on my word regarding the third request by non-FLSA Defendants. At 8:29 a.m., 10:27 a.m., and 10:33 a.m., respectively, I received emails from Brooke Colaizzi, counsel for InterExchange, Joan Lukey, counsel for Cultural Care, and David Meschke, counsel for EurAuPair, stating their recollection of the July 10 call was the same as Kathryn Reilly's. True and correct copies of these email chains are included in **Exhibit 25**.

41. On Wednesday, July 12, 2017 at 9:44 a.m., I replied to Kathryn Reilly's email at 9:08 a.m. and told her that I tried to call her, but it went to voicemail. A true and correct copy of this email is attached hereto as **Exhibit 27**.

42. On Wednesday, July 12, 2017 at approximately 10:00 a.m., Kathryn Reilly and I spoke by phone to discuss our different accounts of the July 10 meet and confer call. On the call she asked me to provide a more fulsome response as to why Plaintiffs would not agree to the bar to representation, so that she could share it with her clients and the other non-FLSA Defendants.

43. On Wednesday, July 12, 2017 at 10:34 a.m., I replied to Brooke Colaizzi's email standing by my account, and stating that all parties acknowledge that I did in fact make a qualification about the need to confer internally, but there was disagreement

about the scope.  A true and correct copy of this email is attached hereto as **Exhibit 26**.

44. On Wednesday, July 12, 2017 at 6:15 p.m., I sent an email providing the explanation in writing requested by Kathryn Reilly as to why Plaintiffs believed the bar to representation to be neither a necessary nor proportionate remedy.  In that email I also explicitly offered additional compromises and assurances, including Plaintiffs' "unequivocal[]" intention to not seek to capitalize on the error and that Plaintiffs would not use [the error] to identify new named plaintiffs.  I also stated that Defendants' rights are fully reserved, in the event an actual dispute about this ever materialized, and that Plaintiffs would agree not assert a laches defense if it did.  A true and correct copy of this email is attached hereto as **Exhibit 28**.

45. I received no response to this email.

### *Confusion among putative class members*

46. In the days following the initial transmittal email on July 5, 2017, I was informed of a number of inquiries from potential class members expressing confusion about the lawsuit.

47. First, I have been informed that there is confusion about who is eligible to join the class because of an inconsistency in the dates on the relevant documents.  The transmittal email states that au pairs who worked from 2009-2016 are eligible to opt-in; the class notice states that au pairs who worked from July 25, 2013 forward are eligible to opt-in.

48. Second, I have been informed that there is confusion about whether the transmittal email itself is spam, a scam, or for some other illegitimate purpose.

49. Third, I have been informed that there is confusion about whether the lawsuit seeks recovery from host families or from the Sponsor agencies.

50. Plaintiffs propose to remedy the existing confusion by revising the existing class notice documents.

51. Attached hereto as **Exhibit 3** is a revised notice that contains the correct date range for eligible au pairs, "2009". A redline against the original notice is attached as **Exhibit 2**.

52. Attached hereto as **Exhibit 6**, is a revised transmittal email with alterations to address the existing confusion, including a header stating, "This is a Court-Authorized Communication", and additional language (underlined here) clarifying that host families are not being sued: "You are receiving this message because you worked as an au pair between 2009 and 2016 and may be entitled to additional compensation from the agency that sponsored your au pair visa for your past work. The lawsuit described below, and in Notice of Your Rights, does not seek any relief from your host family." A redline against the original transmittal email is attached as **Exhibit 5**.

53. Attached hereto as **Exhibit 7**, is the proposed 60-day reminder transmittal email, which contains language substantially the same as the revised transmittal email.

### *Current Status*

54. At present, 60,463 FLSA au pairs have received no email notice about the lawsuit. 270 Strategies ceased sending the transmittal emails in order to review the accuracy of the email addresses due to a high number of invalid email addresses produced by Defendants. Given the strident objections to the notification process raised

17

by Defendants, Plaintiffs have voluntarily ceased further notification emails until this matter can be resolved.

55. I have also been informed that as of July 18, 2017, there have been 15,533 unique visitors to the class website, 2,040 requests for more information via the class website, and 1,020 completed Consent to Join forms that identified an FLSA Defendant as the sponsor that have been submitted either electronically through the website, or as pdfs via email.

### *Other Relevant Information*

56. Attached hereto as **Exhibit 29**, is a true and correct copy of the "Order Granting in Part and Denying in Part Plaintiff's Motion For Class Certification Under Rule 23(b)(3)", *Avendano v. Averus, Inc.*, No. 14-cv-01614 (Arguello, J.) (D. Colo. Sept. 29, 2016).

57. Attached hereto as **Exhibit 30**, is a true and correct copy of the "Order Granting Joint Motion to Approve FLSA Opt-In Notice and Consent to Join", *Avendano v. Averus, Inc.*, No. 14-cv-01614 (Arguello, J.) (D. Colo. Oct. 25, 2016).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 20th day of July, 2017 at New York, New York.

                                                  /s/ Dawn L. Smalls
                                                  Dawn L. Smalls