IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–03074–CMA–KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
DAYANNA PAOLA CARDENAS CAICEDO,
ALEXANDRA IVETTE GONZALEZ,
SARAH CAROLINA AZUELA RASCON,
LAURA MEJIA JIMENEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM, and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC,
USAUPAIR, INC.,
GREAT AUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMSTAY INTERNATIONAL,
CULTURAL CARE, INC. d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a AuPair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
GOAUPAIR OPERATIONS, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC d/b/a/ ProAuPair, and
20/20 CARE EXCHANGE, INC. d/b/a The International Au Pair Exchange,

---

**ORDER**

---

Plaintiffs are a number of *au pairs* who came to America on what is known as a J-1 visa to stay with host families while providing care for minor children in the household.  This program is sponsored by the United States State Department, which sets certain minimum weekly stipends that must be paid by the host families to the *au pairs* ostensibly for the services she or he provides to the families.  Plaintiffs allege, on behalf of themselves and others similarly situated, that the program has devolved from a cultural exchange between nations, into a source of cheap, migrant labor wherein the foreign *au pairs* provide 45 hours of child care per week to American families at a below-market rate which violates Federal and State minimum wage laws. (Second Amended Complaint [Doc. No. 395] ("SAC") at ¶¶ 2-12.)  The plaintiffs allege they were paid at a rate of $4.35 per hour which was illegally set through a price fixing conspiracy between fifteen sponsor organizations, comprised of both for-profit and non-profit organizations, who recruit and place *au pairs* with American families for a fee.

In addition to claims involving violation of various state wage laws and the Fair Labor Standards Act, the plaintiffs have asserted claims for violation of consumer protection laws of several states, constructive fraud or fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, civil RICO and restraint of trade/antitrust conspiracy.

In the instant motion, Plaintiffs seek from Defendants Apex, 20/20, Agent Au Pair, AIFS, Au Pair Care, Au Pair International, Cultural Care, Expert Au Pair, and Go Au Pair,[1] compliance with Request for Production of Documents, No. 16,[2] which requests

---

[1] Plaintiffs use the abbreviated names for Defendants from whom they seek discovery.  The court interprets this motion to apply to Defendants A.P.Ex. American Professional Exchange, LLC d/b/a/ ProAuPair, 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange, Agent Au Pair, Au Pair Care, Inc., Au Pair International, Cultural Care, Inc. d/b/a Cultural Care Au

> Your audited or unaudited financial statements, including documents sufficient to show your annual revenue and income derived from participating in the au pair program during each year in which you have participated in the program.

(Plaintiffs' First Request for Production of Documents, [Doc. No. 467-3], dated March 3, 2016.)

Plaintiffs argue the financial statements may provide circumstantial economic evidence supporting Plaintiffs' antitrust conspiracy allegations, including Plaintiffs' claim that Defendants are able to reap artificially high profits by suppressing *au pair* wages while at the same time raising fees for participation in the program.  Plaintiffs assert that through the requested discovery, Plaintiffs will be able to establish the profits Defendants garnered from administering the *au pair* program, detail the difference between those profits and the profits that would be expected in an economically competitive marketplace, and isolate patterns among Defendants' financial statements indicating the existence of anticompetitive behavior.  (Mot. at 2.) Additionally, Plaintiffs claim punitive damages may be obtainable on some of their claims against Cultural Care, Au Pair in America, Go Au Pair, Au Pair Care, and Expert Au Pair and the financial status of the organizations will be a factor in determining punitive damages awards. (*Id.*)

Plaintiffs filed their "Motion to Compel Response to Document Request No. 16 from Defendants Apex, 20/20, Agent Au Pair, AIFS, Au Pair Care, Au Pair International, Cultural Care, Expert Au Pair, and Go Au Pair" [Doc. No. 507] ("Mot.") on March 13, 2017.  The

---

Pair, Expert Group International Inc., d/b/a Expert AuPair, American Cultural Exchange, LLC, d/b/a GoAuPair, and GoAuPair Operations, LLC, d/b/a GoAuPair .

[2] Plaintiffs state they have been able to reach a separate agreement for the production of financial information with Defendant Great Au Pair, and have been able to obtain relevant financial information from publicly available sources from Defendants Interexchange, Cultural Homestay International, US Au Pair, EurAupair, and APF Global Exchange.

defendants filed separate responses on March 27, 2017 as follows: "Defendant Cultural Care, Inc.'s Response in Opposition to Plaintiffs' Motion to Compel" [Doc. No. 511] ("Resp.CC"); "Defendant AuPairCare, Inc.'s Opposition to Plaintiffs' Motion to Compel Response to Document Request No. 16 [ECF No. 507]" together with "Supporting Memorandum of Points and Authorities" [Doc. No. 513]("Resp. AuPairCare"); "AIFS' Response to Plaintiffs' Motion to Compel" [Doc. No. 515] was filed on behalf of American Institute for Foreign Study d/b/a Au Pair in America ("Resp. AIFS"); and, "Defendants Agent Au Pair, Inc., American Cultural Exchange, LLC d/b/a GoAuPair, GoAuPair Operations LLC, and Au Pair International Inc.'s Response to Plaintiffs' Motion to Compel (ECF No. 507)" [Doc. No. 517] "Resp.AgentAuPair"). No separate response was received from the remaining defendants named in the title of the motion. Plaintiffs filed a consolidated "Reply in Further Support of Their Motion to Compel Responses to Document Request No. 16 from Defendants Agent Au Pair, AIFS, Au Pair Care, Au Pair International, Cultural Care, and Go Au Pair" [Doc. No. 528] ("Consol.Reply") on April 3, 2017.

Additionally, the court addresses "Defendant AuPairCare, Inc.'s Motion for Oral Argument Regarding Plaintiffs' Motion to Compel Response to Document Request No. 16 [ECF No. 507]" [Doc. No. 514] filed March 27, 2017. Having reviewed the briefing and arguments of counsel, the court finds that oral argument would not be helpful and therefore denies the motion.

### *LEGAL STANDARDS*

"Discovery in federal courts is generally governed by the Federal Rules of Civil Procedure regardless of whether federal jurisdiction is based on a federal question or diversity of

citizenship." *Etter v. Bibby*, No. 10-cv-00557-JLK-CBS, 2011 WL 5216855, at *4 (D. Colo.

Nov. 2, 2011).  Fed. R. Civ. P. 26(b) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.*  As such, the requested information must be both nonprivileged and relevant to be

discoverable and the production of such discovery must be proportional to the needs of the case.

The determination of whether information is discoverable must be assessed by the parties and the

court on a case-by-case basis.  *See* Fed. R. Civ. P. 26(b)(1).  In considering whether information

is subject to discovery, the court exercises its discretion while balancing the interests and

burdens of all parties.  *Meeker v. Life Care Ctrs. of Am., Inc.*, No. 14-CV-02101-WYD-NYW,

2015 WL 7882695, at *3 (D. Colo. Dec. 4, 2015).

Although federal law does not provide absolute protection from disclosure for

confidential financial information such as that included in personal tax returns, applicable

precedent directs the court to weigh the need for privacy of financial information against the

need for disclosure.  *Gottlieb v. Wiles,* 143 F.R.D. 235, 237 (D. Colo. 1992); *Bennett v. SSC

Palisade Operating Co., LLC*, No. 14-CV-00923-WJM-KLM, 2014 WL 3809768, at *1 (D.

Colo. Aug. 1, 2014).  If a state doctrine promoting confidentiality of this type of information

does not conflict with federal interests, it may be taken into account in a case filed in federal

court as a matter of comity.  *I'Mnaedaft, Ltd. v. Intelligent Office Sys., LLC*, No. 08-cv-01804-

LTB-KLM, 2009 WL 824304, at *2 (D. Colo. Mar. 30, 2009).

The District of Colorado has recognized the test articulated in Colorado's *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005) when determining whether confidential financial information, such as financial statements, must be disclosed.  *See Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 555 (D. Colo. 2009) (applying Colorado[3] test as a matter of comity for discoverability of financial information).  With respect to tax returns, arguably the most sensitive type of financial information, the party seeking disclosure of tax returns must demonstrate a "compelling need" for the information contained therein.  *Alcon*, 113 P.3d at 737.  *See also Stone v. State Farm Mut. Auto. Ins. Co*., 185 P.3d 150, 159 (Colo. 2008) ("[B]ecause of their confidential nature, tax returns may not be ordered disclosed unless a court finds that they are relevant to the subject of the action and that there is a compelling need for information contained in the returns because the information sought is not otherwise readily obtainable.")  *Stone* was later modified by the Colorado Supreme Court, holding that outside of tax returns, when the right to privacy is at issue concerning a discovery request, "the trial court must give the discovery request special consideration and balance an individual's right to keep personal information private with the general policy in favor of broad disclosure." *In re Dist. Court, City & Cnty. of Denver*, 256 P.3d 687, 690–91 (Colo. 2011).

---

[3] In its Response, AuPairCare has devoted considerable argument to the alleged choice of law questions it claims are applicable in this case.  (Resp. AuPairCare at 4-8.)  However, as noted *infra*, even though certain of Plaintiffs' claims are based on state law and there may be some differences of opinion on which state's laws apply, discovery in this federal court is governed by federal law.  *Etter,* 2011 WL 5216855, at *4.  Therefore, this court does not engage in the choice of law analysis at this time, but rather simply looks for guidance to the law of the state where the action is filed.

Magistrate Judge Michael E. Hegarty, in *Gordon v. Rice*, No. 13-cv-00514-RBJ-MEH, 2014 WL 903205, at *6-7 (D. Colo. Mar. 7, 2014), cited *In re Dist. Court* with approval concerning discovery of "income records" and adopted the following test

> The party requesting the information must always first prove that the information requested is relevant to the subject of the action. Next, the party opposing the discovery request must show that it has a legitimate expectation that the requested materials or information is confidential and will not be disclosed. If the trial court determines that there is a legitimate expectation of privacy in the materials or information, the requesting party must prove either that disclosure is required to serve a compelling state interest or that there is a compelling need for the information. If the requesting party is successful in proving one of these two elements, it must then also show that the information is not available from other sources. Lastly, if the information is available from other sources, the requesting party must prove that it is using the least intrusive means to obtain the information.

*Gordon*, 2014 WL 903205, at *7 (quoting *In re Dist. Ct.,* 256 P.3d at 691-92.

Plaintiff strenuously argues this heightened burden with respect to discovery of financial documents is not required in federal court. This court specifically declines to weigh in on the matter at this time because Plaintiffs meet the heightened standard enunciated in *Gordon* in any event.

### ANALYSIS

Initially, the court notes that Request for Production of Documents ("RFP") 16 asks for documents "during each year in which you have participated in the program." For some of the defendants this is upwards of thirty years. Paragraph 16 of the Definitions and Instructions section of the discovery requests, however, states, "The time period covered by these Requests is from January 1, 2009 to the present." For purposes of this Order and RFP 16, therefore, the court deems the relevant time period for which production is to be made for any of the requests is

January 1, 2009 to present, notwithstanding when a Sponsor began participating in the program at issue.

I.      **Relevance of Financial Statements.**

A.      **Punitive Damages.**

Colorado's exemplary damages statute, Colo. Rev. Stat § 13-21-102, ties punitive damages to the actual damages rendered in the case rather than to the worth of the defendant. For that reason, cases examining this statute often cite to the provision, "(6) In any civil action in which exemplary damages may be awarded, evidence of the income or net worth of a party shall not be considered in determining the appropriateness or amount of such damages." *Id.  See also Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 723 (Colo. 1999).

Under the Federal Rules, however, the only express limitations on discovery "are the information sought is not privileged, and is relevant to the subject matter of the pending action." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164–MLB–DWB, 2007 WL 1246216, at *2 (D. Kan., April 27, 2007) ("A concern for protecting confidentiality does not equate to privilege.").

In the Tenth Circuit, the financial condition of the defendant is generally discoverable as relevant to the issue of punitive damages.  *See Scavetta v. King Soopers, Inc.*, No. 10-CV-02986-WJM-KLM, 2012 WL 3545278, at *3 (D. Colo. Aug. 16, 2012); *Meeker,* 2015 WL 7882695, at *6.

AIFS argues that ***prior*** financial statements are irrelevant to a punitive damages claim and it is premature to compel production of financial statements until much closer to trial, if at all.  (Resp. AIFS at 7.)  In the Tenth Circuit, courts have frequently delayed discovery of

financial information related to punitive damages claims until after determination of post-discovery dispositive motions, or until after a jury determination of liability for the underlying claim.  *James v. Heuberger Motors, Inc.*, No. 10-cv-01648-CMA-KLM, 2011 WL 334473, at *2 (D. Colo. Jan. 28, 2011) ("[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded.").  *See also City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 270 (1981); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *13-14 (D. Kan. Mar. 26, 2007) (finding that current information of the defendants' net worth or financial condition relevant to the issue of punitive damages).  *But see, c.f., E.E.O.C. v. Dillon Cos., Inc.,* No. 09–cv–02237–ZLW–MEH, 2010 WL 3239262, at *5 (D. Colo. Aug. 13, 2010) (finding the defendant's net worth irrelevant in light of the statutory cap limiting the sum of compensatory and punitive damages).

This court therefore finds that while current net worth or financial condition of the defendants, measured at or near the time of trial, is relevant to the issue of punitive damages, historical information such as requested in RFP 16 is not.

### B.      Antitrust Claims.

Plaintiffs argue the financial documents now requested are important to substantiate an economic rationale, or motive, for the alleged collusion of the Sponsor agencies to suppress *au pair* wages.  Motive, of course, while not an element of an antitrust claim, is relevant to any litigation.  In *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986), the trial court stated,

> The absence of any plausible motive to engage in the conduct charged is highly
> relevant to whether a "genuine issue for trial" exists within the meaning of rule

56(e).  Lack of motive bears on the range of permissible conclusions that might be drawn from ambiguous evidence: if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.

*Id.* at 596-97.  *See also In Re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1152 (D. Kan. 2012) (same).  The Tenth Circuit has stated, "[T]he more economically rational a conspiracy is in a given situation, the broader the range of inferences than can be drawn from the evidence." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006).[4]

Plaintiffs claim that by keeping *au pair* wages low, the Sponsors are able to attract more host families and charge those families higher fees, thus generating artificially high profit for the Sponsors.  Plaintiffs argue Defendants' ability to generate outsized profits in this way is the straightforward economic motive for Sponsors to have been collaborating on depression of *au pair* wages, as alleged in the Second Amended Complaint.  (Mot. at 2, 7-9.)  In seeking discovery of Defendants' financial statements, Plaintiffs argue they will be able to establish the profits Defendants garnered from administering the *au pair* program, detail the difference between those profits and the profits which would be expected in an economically competitive marketplace, and isolate patterns among Defendants' financial statements indicating the existence of anticompetitive behavior.[5]

---

[4] District Court Judge Christine Arguello commented on this very concept in her Order of March 31, 2016 [Doc. No. 258] at 15-18, denying the numerous motions to dismiss filed early in this case, stating, "[A] plaintiff can survive **summary judgment** if he or she presents a combination of direct evidence and circumstantial evidence positing an economically rational theory of an agreement."

[5] AuPairCare argues Plaintiffs' reliance on Judge Posner's work on antitrust law in support of its theory of economic rational is fundamentally flawed and leaves out important analytical concepts.  (Resp. AuPairCare at 8-10.)  *See* Richard Posner, *Antitrust Law* 90-91 (2d Ed. 2009). That may or may not be true, but that is not the issue for the moment.  The issue is whether the

Given that the District Court here has already commented on the fact that evidence of profit motive may be circumstantial evidence of Defendants' antitrust collusion, there can be no credible dispute that financial statements, which show profits and losses, are relevant to Plaintiffs' antitrust claim, particularly given Fed. R. Civ. P. 26's broad interpretation of relevance.  *See Collins v. Trans Union, LLC*, No. 14-cv-00742-RBJ-NYW, 2015 WL 1932044, at *2 (D. Colo. Apr. 28, 2015) ("Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" the information sought may be relevant to the claim or defense of any party.")  *See, e.g.*, *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 427 (N.D. Ill. 1977) (granting antitrust plaintiffs' motion to compel financial statements from the defendant as "[t]he financial information here requested may help plaintiffs determine whether or not defendants enjoyed unreasonably high or excessive profits, facts which are relevant to the issues here involved.").

Plaintiffs would have us stop the analysis at this point because the court has found that the information sought is relevant and material to proof of one or more elements in Plaintiffs' case.  No party has argued the requested information will be especially burdensome to produce, removing the primary thrust of a proportionality assessment.  However, since the court has declined to address the applicable burden to financial document discovery in this case, the court will consider the remaining factors of the heightened burden test discussed in *Gordon*.

---

Plaintiffs should be allowed to discover financial information in an attempt to prove collusion alleged among the Sponsor defendants on the antitrust claim.  That the Plaintiffs' theory may prove to be irretrievably flawed in its logic or in its application is an issue for trial and/or expert analysis and testimony.  At this juncture, the court will not weigh in on the viability of Plaintiffs' theory, but notes that "[i]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it."  *Bourjaily v. United States,* 483 U.S. 171, 179-80 (1987), cited with approval in antitrust case by *Champagne Metals*, 458 F.3d at 1082, n.6.

II.     **Legitimate Expectation of Confidentiality and Whether Confidential Documents can be Protected.**

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish that the objectionable discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  *Collins*, 2015 WL 1932044, at *2; *Simpson v. Univ. of Colo.,* 220 F.R.D. 354, 359 (D. Colo. 2004).

A.     **Confidentiality.**

On May 6, 2016, the parties entered into a stipulated protective order that allows parties to designate documents "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." [Doc. No. 305].  The parties have now been successfully utilizing the Protective Order for over a year.  In this case, the primary danger of a breach of confidentiality is not between Plaintiffs and Defendants, but rather among Defendants themselves who are direct competitors in the relevant market.  The parties have labored under the Protective Order with respect to disclosures of confidential client lists (naming host families), as well as their unique policies and procedures for obtaining and retaining both *au pairs* located in other countries, as well as host families in the United States.  That Defendants' financial records are confidential is no different than any other confidential information currently being protected from disclosure by the Protective Order.  Defendants have stated no reason why this procedure would not adequately protect the confidentiality of this information.  *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.,* No. CIV.A.94-2395-GTV, 1995 WL 625962, at *3 (D. Kan. Oct. 5, 1995). ("A respondent's interest in the nondisclosure and confidentiality of its financial records can usually be adequately protected by a protective order."); *see also Heartland Surgical Specialty*

*Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 950282, at *12 (discussing confidentiality of financial data relevant to punitive damages).

Defendants argue the sheer number of litigants -- 17 defendants, with appearances by more than 75 attorneys, and potentially tens of thousands of plaintiffs -- increases the risk of potential harm from inadvertent disclosure.   First, the court notes such information could be designated under the AEO provision of the Protective Order and therefore limited at this stage to only the attorneys of record in the case.  These attorneys are officers of the court and attorneys who are licensed to practice law subject to professional responsibility rules in their licensing state and who are subject to contempt sanctions in this District.  Second, there has simply been no reason thus far in the case to believe that confidential information is not being scrupulously guarded by all concerned.  Therefore, while the court does not completely discount the concerns of the defendants, given the substantial track record of the attorneys in this case with dealing with confidential material, the court cannot give more than marginal weight to the thus-far ungrounded fear of improper disclosure.

### B.    Compelling Need.

Collusion is a critical element of an antitrust conspiracy claim.  In *Bonnano v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550 (D. Colo. 2009)*,* the court reaffirmed that the party seeking disclosure of confidential financial information must demonstrate a compelling need for the information by demonstrating that "[the] information is required in order to prove an element of one of their claims."  *Id.* at 555.  Indeed, the information sought must be "an essential element of proof with respect to either liability or damages."  *Id.*

Plaintiffs have argued that the financial documents will be essential to proving the economic motive behind Defendant Sponsors' alleged collusion to keep *au pair* wages low and therefore increase the volume of individual fees paid by the host families for Sponsor services. Again, for discovery purposes, the court does not dissect the viability of Plaintiffs' theory; that will be fodder for the experts. The court finds at this stage that Plaintiffs have shown a compelling need for the financial discovery they are seeking when limited to the time period 2009-present.

## C.    Availability of Other Sources.

Plaintiffs have demonstrated that, when possible, they can and will obtain financial information from other sources with respect to the Sponsors' finances. (See Mot. at 1, n.1.) Plaintiffs "have been able to obtain relevant financial information from publicly available sources from Defendants Interexchange, Cultural Homestay International, US Au Pair, EurAupair, and APF Global Exchange." Additionally, as noted, *supra*, Plaintiffs have been able to come to agreement with several other entities to produce records.

It is clear from the arguments of counsel in all the briefing, however, that the financial information sought from Defendants named in this motion cannot be obtained elsewhere.[6] (*See e.g.,* Resp.AIFS, Ex. 11, Affidavit of James Mahoney, VP of Finance for AIFS [Doc. No. 515-11] ("Mahoney Aff.") at ¶ 3, "AIFS is a for-profit entity. To the extent of my professional knowledge, neither AIFS' tax returns nor its financial statements are subject to public disclosure or otherwise in the public domain.") Further, none of the defendants has referred the court to any other place or mechanism to obtain the information Plaintiffs seek. Therefore, the court

---

[6] If such information was publically available, Defendants' arguments about the danger of inadvertent disclosure would hold no water at all.

finds the information sought by Plaintiffs is not available elsewhere.  By extension, the least intrusive means to obtain such information is from Defendants themselves who can mark the documents with appropriate confidentiality designations under this court's Protective Order.

In weighing all the factors, the court finds the financial information sought by Plaintiffs is relevant to the subject of the action and also that Defendants have shown they have a legitimate expectation that the requested materials or information would be kept confidential from their competitors and others.  The court also finds Plaintiffs have proven a compelling need for the information and the information is not available from other sources.   Therefore, Defendants must comply fully with RFP No. 16 and provide to Plaintiffs their audited or unaudited financial statements, including documents sufficient to show their annual revenue and income derived from participating in the *au pair* program during the period January 1, 2009 through present.

## III.      Sufficiency of Discovery Already Produced.

Usually, it is the burden of the party seeking further answers to prove that the answers of the resisting party are incomplete or otherwise deficient. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221 (10th Cir. 1976) ("[A]ppellees had the burden of proving the answer to their interrogatory was indeed incomplete")); *see also Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D. Colo. 1986) (noting the burden of proof lies with the proponent of additional discovery to prove the answers before the court are incomplete, inadequate, or false).  Only the following enumerated Defendants purport to have complied with RFP 16.

### A.     AIFS

AIFS states it has produced financial information about its Au Pair in America ("APIA") program[7] that includes its allocated revenue, expenses and income for the time period 2009-2014.  (Resp.AIFS, Ex. 1, Declaration of Stephen J. Macri [Doc. No. 515-1] ("Macri Decl."), Ex. 8 (redacted)[8]; Mahoney Aff. ¶ 6).  AIFS states, "AIFS' consolidated financial statements reflect the aggregate revenue and expenses attributable to all of those AIFS' [sic] programs.  The financial statements do not segregate information by program and, thus, the statements do not demonstrate revenue, expenses and/or income solely attributable to APIA."  (Mahoney Aff. ¶ 5.)

RFP 16 requests "audited or unaudited financial statements" that are "sufficient to show your annual revenue and income derived from participating in the au pair program."  AIFS argues that as to the APIA program individually, such financial statements do not exist and strict compliance with the request is therefore impossible.  AIFS states, however, that the production to Plaintiffs, albeit in a different format, provides them all the information that would be covered by Plaintiffs' request.

Plaintiffs contend in response that the information does not "provide( ) Plaintiffs with complete information about the respective Defendants' finances" but does not further state why the production was inadequate, what is missing that Plaintiffs believes is encompassed in their request, or how the production could be supplemented to satisfy the request for production.

---

[7] AIFS administers five different programs, four of which it claims are unrelated to the *au pair* program in this case.  ("Mahoney Aff.") at ¶1.)
[8] The court copy of the information produced to Plaintiffs contains no figures in the category boxes.  AIFS states that the unredacted version containing the exact figures was produced to Plaintiffs.

The court finds Plaintiffs have failed in their burden "to prove that the answers before the court are incomplete, inadequate, or false."  Therefore, the court finds AIFS has satisfied its burden of production with respect to RFP 16 and the motion will be denied as to AIFS.

### B.    Cultural Care

Defendant Cultural Care states that it originally produced the statements of income from its audited financial statements for fiscal years ending September 30, 2009 through September 30, 2015.  ("Resp.CC, Ex. A, Declaration of Justin J. Wolosz [Doc. No. 511-1] ("Wolosz Decl.") ¶¶ 8-9 and Exs. 4-5.)  Cultural Care asserts these statements include the revenue and expense numbers demanded by Plaintiffs, and even perform the calculation of the net income derived from those numbers.  Further, Cultural Care states that when Plaintiffs rejected these stand-alone pages from the audited financial statements, Cultural Care produced the audited financial statements themselves to establish the context of the statements of income, however they redacted the balance sheets and related notes.  (Wolosz Decl. at ¶¶ 11-12 and Exs. 6-7.) Plaintiffs argue the audited financial statements produced contained "redactions so significant it is difficult to understand what remains."  The example provided to the court is that "Cultural Care appears to have redacted significant payments to affiliates for, at least in part, costs related to the au pair program, but the redactions are so extensive that they prevent any real understanding of the scope of what was removed."  (Reply at 11.)

Plaintiffs asked for, and the court has granted, production of "audited or unaudited financial statements," not "redacted-however-the-producing-party-deems-appropriate audited or unaudited financial statements."  The court finds Cultural Care's production to be inadequate and

Cultural Care shall produce unredacted audited financial statements to Plaintiffs for the relevant time period.  The motion is granted as to Defendant Cultural Care.

### C.      Go Au Pair, Agent Au Pair, Inc. and Au Pair International Inc.

These defendants state in their five page response that they agreed to produce documents "sufficient to show [their] annual revenue and income derived from participating in the au pair program during each year in which [they] . . . have participated in the program."  (RespAgent AuPair at 2.)  The defendants state that as a result of conferrals, the defendants understood Plaintiffs wanted profit and loss statements for the years 2009-2014, which they agreed to produce, with the exception of Agent Au Pair which has access to that information only beginning in 2011.  Additionally, the Defendants state that Plaintiffs have asserted no objection to the fact that Go Au Pair's profit and loss statements are reflected in tax returns.  As a limited liability company owned by a single entity, Go Au Pair's profits and losses are reported on Schedule C of the owner's personal tax returns.  *Id.* Defendants Go Au Pair, Agent Au Pair, and Au Pair International claim to be completely befuddled by Plaintiffs' persistence in this motion against them as they have agreed to produce everything Plaintiffs said they wanted.

Plaintiffs respond that "Defendant[s] Go Au Pair, Agent Au Pair, and Au Pair International offered to provide tax returns in lieu of producing financial statements, but have refused to produce documents that would provide additional detail into their costs—information that is necessary to compare 'apples to apples' across Defendants and accurately determine individual sponsor and industry profits."  (Reply at 11.)

Obviously, the parties were not of one mind on the conferral concerning RFP 16. Accordingly the court can only proceed on the request's language and the representation of the Defendants that they did not intend to and did not produce "audited or unaudited financial

statements, including documents sufficient to show your annual revenue and income derived from participating in the au pair program."  Therefore, the motion is granted as to Defendant[s] Go Au Pair, Agent Au Pair, and Au Pair International.

It is therefore **ORDERED**

1.       "Defendant AuPairCare, Inc.'s Motion for Oral Argument Regarding Plaintiffs' Motion to Compel Response to Document Request No. 16 [ECF No. 507]" [Doc. No. 514] is **DENIED**.

2.       "Motion to Compel Response to Document Request No. 16 from Defendants Apex, 20/20, Agent Au Pair, AIFS, Au Pair Care, Au Pair International, Cultural Care, Expert Au Pair, and Go Au Pair" [Doc. No. 507] is **GRANTED IN PART and DENIED IN PART**.

a.       The motion is **denied** to the extent Plaintiffs seek to collect from the Defendants as sanctions, expenses incurred in bringing the motion, including attorneys' fees.

b.       The motion is **denied** as it applies to Defendant American Institute for Foreign Study d/b/a Au Pair in America.

c.       The motion is **granted** in all other respects.

3.       Defendants A.P.Ex. American Professional Exchange, LLC d/b/a/ ProAuPair, 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange, Agent Au Pair, Au Pair Care, Inc. Au Pair International, Cultural Care, Inc. d/b/a Cultural Care Au Pair, Expert Group International Inc., d/b/a Expert AuPair, American Cultural Exchange, LLC, d/b/a GoAuPair, and GoAuPair Operations, LLC, d/b/a GoAuPair shall produce documents fully responsive to Plaintiffs' RFP 16 **on or before July 31, 2017**.

Dated this 24th day of July, 2017.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge