**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

     Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

     Defendants.

---

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL RESPONSES TO DOCUMENT REQUEST NO. 16 FROM DEFENDANTS AGENT AU PAIR, AIFS, AU PAIR CARE, AU PAIR INTERNATIONAL, CULTURAL CARE, AND GO AU PAIR[1]**

Pursuant to Federal Rules of Civil Procedure Rules 26 and 37, Plaintiffs respectfully submit this reply in further support of their motion to compel. (DE 507).

**<u>PRELIMINARY STATEMENT</u>**

This antitrust action alleges that the defendants conspired to keep au pair wages low and their profits high. Financial statements will detail sponsors' revenues and expenses; revenues minus expenses equals profits; financial statements will thus demonstrate profits. From this simple logic, it is plain that financial statements are relevant. Yet Defendants still refuse to produce them.

---

[1] Plaintiffs withdraw their motion to compel with respect to APEX/2020 and Expert Au Pair. Defendant APEX/2020 produced audited financial statements—the documents subject to this motion to compel—on March 23, 2017. Expert Au Pair likewise has withdrawn its opposition to Plaintiffs' request and has agreed to produce financial statements.

1

EXHIBIT
*A*
tabbies

In doing so, they point to no privilege, disproportionate burden, or prejudice they would suffer by producing the documents to Plaintiffs.  Instead they focus on damage they might suffer if the information were inadvertently produced to other Defendants; why alternatives should be sufficient; why the information is discoverable but should not be produced until a later stage in the case; why a state law "compelling need" standard should be applied; and why, even if they do produce the information, Plaintiffs will not succeed on the merits.  These arguments are incorrect and, in any event, say nothing about this motion, which turns on whether the requested discovery is relevant to Plaintiffs' claims and proportional to the needs of the case.  The Court should therefore grant Plaintiffs' motion to compel the production of financial statements.

## ARGUMENT

**A.**      **Defendants' financial records are plainly relevant to Plaintiffs' antitrust claims**.

Plaintiffs' request for audited or unaudited financial statements is plainly relevant to Plaintiffs' well-pled allegation that Defendants conspired to keep *au pair* wages low in order to maximize their profits.  Indeed, Defendants' financial records will show their profits, which is relevant evidence of collusion and will show the competitiveness of the industry and the presence or absence of anti-competitive harm.

As a general matter, the type of financial information Defendants refuse to produce is often relied upon by litigants in antitrust cases because proving such claims typically requires analysis of the competitiveness of the industry at large, as well as analysis of any anti-competitive harm caused by the alleged anti-competitive behavior. *See, e.g.*, *Champagne Metals v. Ken-Mac Metals*, 458 F.3d 1073, 1086-87 (10th Cir. 2006) (considering market share, profit, and price information as proper circumstantial

Case No. 1:14-cv-03074-CMA-KMT    Document 627-1    filed 07/27/17    USDC Colorado    pg 3
of 15
Case 1:14-cv-03074-CMA-KMT    Document 528    Filed 04/03/17    USDC Colorado    Page 3 of 15

evidence supporting collusion claim); *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420,

427 (N.D. Ill. 1977) (compelling production of defendants' financial statements as

relevant to profits analysis); *In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299, 309

(S.D.N.Y. 1982) (compelling production of sales and profits information of individual

companies as relevant to the competitiveness of the industry and harm caused by the

anti-competitive behavior); *Trans World Airlines, Inc. v. Hughes*, 29 F.R.D. 523, 524

(S.D.N.Y. 1961) (compelling production of balance sheets, profit and loss statement,

and tax returns because "[t]he complaint states claims of conspiracy in violation of the

antitrust statutes. The scope of proof is quite broad in these cases and under the liberal

federal rules wide latitude is permitted in the deposition-discovery proceedings."); *Erone

Corp. v. Skouras Theatres Corp.*, 22 F.R.D. 494, 501 (S.D.N.Y. 1958) (compelling

production of fee data as relevant to plaintiffs' conspiracy-related damages).

In this case, the Court has already found that Plaintiffs' antitrust claims were

adequately pled. Specifically, Judge Arguello ruled that a plaintiff alleging an antitrust

conspiracy can "present[] a combination of direct evidence and circumstantial evidence

positing an economically rational theory of an agreement." (DE 258 at 15). Judge

Arguello then listed findings that demonstrate "sufficient circumstantial evidence of a

viable economic theory of collusion," (DE 258 at 16), including the allegation that "[b]y

depressing wages for *au pair* services, the Sponsors reap artificially high profits

because if the host family's direct cost for an *au pair* does not increase, then any

increase, while still costing the family less than a full-time nanny on the open market,

Case No. 1:14-cv-03074-CMA-KMT   Document 627-1   filed 07/27/17   USDC Colorado   pg 4
of 15
Case 1:14-cv-03074-CMA-KMT   Document 528   Filed 04/03/17   USDC Colorado   Page 4 of 15

goes to the Sponsor in the form of fees…" (DE 258 at 17).[2]  Further, in the informal

discovery conference regarding this dispute on March 9, 2017, Judge Tafoya observed

that Defendants' financial statements are part of this case. Given the previous rulings

that Defendants' profits may be circumstantial evidence of collusion, there is no credible

dispute that financial statements, which show revenues and expenses, are relevant

here. *See Griffin v. Home Depot USA, Inc.*, No. 11-2366-RDR, 2013 WL 1304378, at *4

(D. Kan. Mar. 28, 2013) (internal citations omitted) (relevance is broadly construed at

the discovery stage).

In response, Defendants advance the remarkable position that the Court "simply

held that Plaintiffs' allegations were sufficient to withstand a motion to dismiss", (DE 515

at 8), and that such a finding is limited only "to the standard applicable to a motion to

dismiss". (DE 513 at 12).  In other words, Defendants posit that allegations which are

sufficient to withstand a motion to dismiss are nonetheless insufficient to support

discovery.  To state the proposition is to refute it.  The purpose of pre-trial discovery is

to exchange information relevant to allegations that have been deemed sufficient to

state a claim. *See Hickman v. Taylor*, 329 U.S. 495, 500 (1947) (The purpose of

discovery is to provide parties with access to the "fullest possible knowledge of the

issues and facts prior to trial.").  Not surprisingly, Defendants provide no authority to

support the notion that a plaintiff is <u>not</u> entitled to discovery on well-pled allegations in a

---

[2] The Court's March 31, 2017 Order granting conditional FLSA certification reaffirms this
view: "In adjudicating a raft of motions to dismiss, this Court already concluded that
Plaintiffs adequately alleged an antitrust conspiracy, meaning that their pleadings
satisfactorily alleged an agreement among the FLSA Defendants to fix wages at an
unlawfully low level." (DE 525 at 8).

Case No. 1:14-cv-03074-CMA-KMT   Document 627-1   filed 07/27/17   USDC Colorado   pg 5
of 15
Case 1:14-cv-03074-CMA-KMT   Document 528   Filed 04/03/17   USDC Colorado   Page 5 of 15

complaint, because there is none.  There can be no credible dispute that financial statements are relevant, as that term is used in Rule 26, and are thus discoverable.

**B.      Relevance, not "compelling need", is the standard.**

Contrary to the arguments presented by Defendants in their briefs, relevance, not "compelling need" is the standard for discovery in Federal Court.  (*See* DE 511 at 5). Defendants refer to *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005), (DE 515 at 5), for that proposition—a case decided by the Colorado Supreme Court under Colorado's rules of procedure, which delineates a three-part test for whether a litigant may refuse production of relevant information on the basis that the information is private. Defendants argue that the heightened "compelling need" test applies in the District of Colorado based on cherry-picked quotes from dicta in *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550 (D. Colo. 2009).  Defendants' argument is inconsistent with deeply-rooted precedent and the Federal Rules of Civil Procedure.

Well-established legal principles govern the relationship between state and federal courts.  Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny, federal courts sitting in diversity (or exercising supplemental jurisdiction over state law claims) apply substantive state law and federal procedural law and "[i]f a Federal Rule controls an issue and directly conflicts with state law, the [Federal] Rule…applies." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 438 (2010) (Ginsburg, J., dissenting).

In the context of discovery in federal court, *Erie* dictates that the Federal Rules of Civil Procedure alone govern those procedures.  *See Sibbach v. Wilson & Co.,* 312 U.S. 1 (1941); *Hanna v. Plumer,* 380 U.S. 460 (1965).  Federal courts reject litigants' efforts

to supplant federal discovery rules with state law ones. *See, e.g.*, *Everitt v. Brezzel*, 750 F. Supp. 1063, 1065 (D. Colo. 1990) (rejecting Colorado "official information privilege" rule because "[d]iscovery in the federal courts is governed by federal law as set forth in the Federal Rules of Civil Procedure); *see also* 8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2005 (3d ed.) ("[E]xcept for those two matters [privilege and attachment] it is wholly settled that discovery in a federal court is governed only by [federal] rules and that state discovery practices are irrelevant.").

With respect to confidential information, the Federal Rules make no special allowance for parties to resist disclosure unless that information is privileged. Although some states have their own procedural privacy protections for purportedly confidential, private or otherwise sensitive information, the opposite is true of the Federal Rules, which "often allow extensive intrusion into the affairs of both litigants and third parties." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 30 (1984). This is because the "[Federal] Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action." *Id.*; *see also Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*, 2007 WL 1246216 at *2 (D. Kan., April 27, 2007) ("A concern for protecting confidentiality does not equate to privilege.").

Notwithstanding Defendants arguments that the "compelling need" test applies in the District of Colorado, *Bonanno* stands for the uncontroversial proposition that relevance is the core consideration in federal discovery analysis, including with respect to sensitive financial information. *Bonanno* fails to impose a blanket rule on federal

litigants in Colorado; to do so would run afoul of *Erie*, "one of the modern cornerstones of our federalism, expressing policies that profoundly touch the allocation of judicial power between the state and federal systems." *Hanna*, 380 U.S. at 474 (Stevens, J., concurring). Although courts in this District occasionally look to Colorado's confidentiality doctrine when privacy concerns arise, as did *Bonanno*, they cannot do so where it would "conflict with federal interests." *Schwartz v. Jefferson Cty. Dep't of Human Servs.*, No. 09-CV-00915-WJM-KMT, 2013 WL 3713640, at *5 (D. Colo. July 15, 2013) (Tafoya, J.). On the facts of this case, imposition of such a heightened "compelling need" test, as Defendants have articulated, would directly conflict with Rule 26's much lower "relevance" standard, and therefore must be disregarded.

Even assuming arguendo, however, that the "compelling need" doctrine applies, Plaintiffs have clearly articulated how the information is necessary to proving their claims, as discussed herein, and Defendants have no compelling privacy interest to prevent its production, especially given the Protective Order in this case.[3] *See id.* (finding protective order sufficient to address Colorado state procedural concerns about confidential juvenile records). In sum, under *Erie* and its progeny, the federal discovery process cannot be overrun by state procedural rules, particularly one such as the one at issue in *Alcon,* which conflict with the Federal Rules by heightening the standard for the production of relevant information.

---

[3] Defendants vigorously argued against providing host family contact information for many of the same reasons they oppose the production of financial statements. Upon the Court's March 10, 2017 Order to produce host family contact information, Defendants came up with supplementary measures to ensure that the production of the information was subject to additional protections, namely an agreement that the host family information could not be shared with clients and providing an opportunity to object and seal such information that might be included in court filings. (*See* DE 523).

**C.      Plaintiffs need not demonstrate the underlying merits of their claims to obtain discovery.**

To side-step Plaintiffs' straightforward request for clearly relevant financial records, Defendants attack the merits of Plaintiffs' antitrust claims, arguing that it will be difficult for Plaintiffs to prove collusion, even if given access to profit information. Defendants' merits arguments say nothing about this motion to compel, particularly where the Court has already held that Plaintiffs' antitrust allegations are sufficient to state a claim.  We nevertheless briefly consider the Defendants' individual merits claims, all of which masquerade as relevance arguments.

For examples, in a section of Defendant AuPairCare, Inc.'s ("APC") brief (DE 513) entitled "AuPairCare's Financial Statements are not Relevant to Plaintiffs' Antitrust Claims", APC devotes no attention to actually arguing relevance.  Instead, APC argues why Judge Posner would agree with APC's position that Plaintiffs are unlikely to prevail on their antitrust claims, even if provided with financial records.  APC also criticizes Plaintiffs for not providing a detailed explanation of how Plaintiffs will use the requested financial information, and then goes on to "presume[]" three specific ways Plaintiffs will use the information and argues why those will likely be failing efforts.  (DE 513 at 10-12).  These are not relevance arguments.  They are APC's opinions on the likely success of APC's version of Plaintiffs' claims that have no bearing on APC's duty to produce responsive documents.  Irrespective of whether APC thinks Plaintiffs' case is one of the "few" (*see* DE 513 at 9) in which Judge Posner believes that collusion can be inferred from high profits, Plaintiffs are entitled to an opportunity to prove their case.

Defendant American Institute for Foreign Study ("AIFS") likewise claims Plaintiffs will be unable to prove collusion even if given access to financial information.  (DE 515

at 9). Again, these arguments say nothing about whether Plaintiffs' motion to compel should be granted. Indeed, AIFS discusses three cases in which courts questioned the application of profit-related information to plaintiffs' antitrust claims, *after* that information had already been obtained in discovery. *See, e.g.*, *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1251-55 (11th Cir. 2002) (discussing inadequacies in plaintiff's profitability evidence in upholding district court grant of summary judgment in favor of defendant); *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1412 (7th Cir. 1995) (Posner, J.) (discussing inference for jury to draw from its consideration of price and profit evidence during trial in affirming in part, and reversing verdict in part); *The Sample Inc. v. Pendleton Woolen Mills, Inc.*, 704 F. Supp. 498 (S.D.N.Y. 1989) (granting summary judgment for defendant on the basis, in part, that the rising margins evidence that had been presented to the court did not support an inference of conspiracy). Regardless of the eventual outcome in each case, there is no dispute that, at the very least, the profit information was "relevant" to plaintiffs' claims, as it informed the courts' later evaluation of those claims. AIFS's discussion of *Bailey*, *Blue Cross*, and *Sample*, thus, misses the point: here, Plaintiffs have filed a motion to compel the production of documents, not one for summary judgment or post-trial relief, procedural points that occur well *after* such documents have already been produced.

Defendants AIFS and Cultural Care also preemptively attack the merits of Plaintiffs' as-yet to be-filed motion for class certification under the guise of "relevance". Cultural Care insists that its financial records are "neither required nor essential to prove any element of the Rule 23 standards..." (DE 511 at 5). Similarly AIFS contends that the request for financial statements lacks "*any* nexus between the requirements for

class certification and the information within AIFS' financial statements." (DE 515 at 13). Both Defendants also invoke the improper Colorado "compelling need test", discussed *supra* B., to argue that their financial records need not be produced for class certification.

First and foremost, it does not matter at this stage whether the information sought is relevant to class certification. Plaintiffs are preparing their case on the merits, as they must given the short time remaining to complete fact discovery. And in any event, financial statements are also plainly relevant to class certification, because analysis of class-wide harm involve a preliminary analysis of the competitiveness of the industry and the presence or absence of anti-competitive harm. Such industry-wide analysis will be aided by a review of the financial statements of the industry's participants, which include information sufficient to identify the Sponsors' costs, revenues, and profits.

Finally, Defendants again present an inappropriate merits argument in their discussion of Plaintiffs' punitive damage claims. For example, Defendant Cultural Care elevates the standard for discovery to that of a Rule 12 motion to dismiss, asserting that "Plaintiffs have identified no facts that would support any award of punitive damages in this case" (DE 511 at 6) – ignoring the fact that Defendants have already litigated a motion to dismiss wherein they raised no objections to Plaintiffs' punitive damages allegations. APC devotes half of its brief to an analysis of the requirements for *proving* punitive damages in several states and the likelihood that Plaintiffs will meet these standards. (DE 513 at 2-8). Although Defendants take issue with the likelihood of success of Plaintiffs' punitive damage claims, they say nothing about relevance, and

Case No. 1:14-cv-03074-CMA-KMT   Document 627-1   filed 07/27/17   USDC Colorado   pg 11
of 15
Case 1:14-cv-03074-CMA-KMT   Document 528   Filed 04/03/17   USDC Colorado   Page 11 of 15

dispute only the timing of production.  Regardless of the timing or burden of proof

Plaintiffs must meet in the various states whose laws may or may not apply, information

about Defendants' financial condition is undoubtedly relevant to these claims.

**D.**     **Defendants' proposed alternatives are inadequate.**

Rather than produce what they do not want to produce, Defendants have made

halfhearted productions of limited financial information.  None of these productions is

adequate.

For instance, days before its reply to this motion was due, Cultural Care

produced audited financial statements for 2009 to 2015, but with redactions so

significant it is difficult to understand what remains.  For instance, Cultural Care appears

to have redacted significant payments to affiliates for, at least in part, costs related to

the au pair program, but the redactions are so extensive that they prevent any real

understanding of the scope of what was removed.  (*See* Wolosz Decl., Exs. 7, 8, DE

511-1 at 25-27).

Defendant Go Au Pair, Agent Au Pair, and Au Pair International offered to

provide tax returns in lieu of producing financial statements, but have refused to

produce documents that would provide additional detail into their costs—information

that is necessary to compare "apples to apples" across Defendants and accurately

determine individual sponsor and industry profits.

Defendant APC made no attempt to provide documents responsive to Document

Request No. 16 arguing that fee data, which would require Plaintiffs back into profit

information, is all that Plaintiffs could possibly need in order to prove collusion among

sponsors.  This argument is clearly wrong, as fees alone are insufficient to establish

profits—even if they were APC's only source of revenue—without information regarding the expenses associated with running the program.

Defendant AIFS provided non-contemporaneous statements which purport to represent the revenue, allocated expenses and income of its au pair program for the relevant years, and similarly argued that that information along with data on the number of au pairs would be sufficient for Plaintiffs "to make any and all financial contentions desired for the years relevant to the instant action." (DE 515-10 at 3).

None of these productions provides Plaintiffs with complete information about the respective Defendants' finances—information that other Defendants have tellingly agreed to produce. And none of these productions satisfies Defendants' discovery obligations. Indeed, the standard is not what Defendants *want* to produce, but whether the discovery sought is relevant. It is up to Plaintiffs, not Defendants, to determine which evidence of Defendants is the best evidence to prove Defendants' collusion.

### E. The Protective Order is more than sufficient to safeguard Defendants' financial statements.

The exchange of sensitive information using protective orders is common in federal court, including in class actions involving many parties and attorneys. Cultural Care and AIFS maintain that they should not be required to produce responsive financial records because the Protective Order is insufficient to safeguard their confidential information from ending up in the hands of their direct competitors.[4] AIFS

---

[4] Cultural Care and AIFS cite *Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 14-CV-04737, 2014 WL 6478077 (N.D. Ill. Nov. 18, 2014) and *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530 (C.D. Ill. 1991) to claim that the Protective Order is inadequate. Both of those cases involved **non-parties** that had been subpoenaed to provide sensitive financial information to their competitors. *See Suture Express*, 2014 WL 6478077, at *10; *Greater Rockford*, 138 F.R.D. at 539. Here, in

Case No. 1:14-cv-03074-CMA-KMT   Document 627-1   filed 07/27/17   USDC Colorado   pg 13
of 15
Case 1:14-cv-03074-CMA-KMT   Document 528   Filed 04/03/17   USDC Colorado   Page 13 of 15

also argues that the risk competitors will gain access to their documents is amplified due to the large number of plaintiffs, defendants and attorneys. (DE at 515 at 14-15).

These arguments are unavailing, particularly since Defendants helped negotiate, draft, and seek approval of the very Protective Order they now disavow. Nowhere do Defendants explain how the Protective Order is insufficient. Further, the Protective Order can be amended to address any additional concerns Defendants have with providing this information. For example, when previously ordered by the Court to share the names and contact information of host families, information they vigorously argued was proprietary and could not be shared with their competitor co-Defendants, the sponsors came up with additional measures to ensure that that did not happen. (*See* DE 523 – "First Addendum to Stipulated Protective Order", prohibiting sharing of host family list with clients and providing for opportunity to object and seal information in filings). The same measures can be taken to address any heightened concerns Defendants have about producing their financial information.

## Conclusion

For the reasons stated above, Plaintiffs' Motion to Compel Defendants' response to Request No. 16 from Plaintiffs' First Request for the Production of Documents should be granted, and Plaintiffs should be awarded their reasonable expenses incurred in bringing this motion, including attorneys' fees, pursuant to Rule 37(a)(5)(A).[5]

---

contrast, Cultural Care and AIFS are parties to the litigation who are being directed to produce relevant documents to individual plaintiffs who are not their competitors.
[5] Defendant APC alone has made a request for oral argument. (*See* DE 514). Plaintiffs believe that the dispute is straightforward and would not benefit from additional argument before the Court – argument that would require Plaintiffs to devote additional resources in time and money to an unnecessary motion. The fact that no other Defendants joined APC's request for oral argument suggests that they agree.

Dated: New York, New York
       April 3, 2017

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

/s/ Peter M. Skinner
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
575 Lexington Avenue
New York, New York  10022
Tel:  (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2017, I electronically served the foregoing motion on all counsel of record.

/s/ Peter M. Skinner
Peter M. Skinner