IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

_____

**AUPAIRCARE, INC.'S BRIEF IN RESPONSE TO MINUTE ORDER [DOC. NO. 597] FOR ADDITIONAL BRIEFING REGARDING PERMISSIBILITY OF COLLECTIVE ACTION ARBITRATION AND IMPACT OF COLLECTIVE ACTION LIMITATIONS ON UNCONSCIONABILITY ANALYSIS**

_____

## TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................... 1

ARGUMENT .............................................................................................................. 4

I.     The Federal Arbitration Act Favors Arbitration and Controls ............................ 4

II.    APC-Sponsored Au Pairs May Not Arbitrate Collectively, But Must
       Instead Arbitrate As Individuals. ......................................................................... 5

III.   Requiring Au Pairs to Bilaterally Arbitrate FLSA Claims Does Not Impact
       the Court's Conscionability Analysis ................................................................ 10

       A.     Legal Standard Governing Unconscionability ........................................ 10

       B.     Conditioning Enforcement of Arbitration on the Availability of Class
              Procedure is Preempted By the FAA .................................................... 10

       C.     Bilateral Arbitration Does Not Interfere With Plaintiffs' Substantive
              Rights .................................................................................................... 12

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Labor Ready, Inc.,*
  303 F.3d 496 (4th Cir. 2002) ........................................................................ 14

*Allied Bruce v. Terminix Cos.,*
  513 U.S. 265 (1995) ....................................................................................... 5

*Am. Express Co. v. Italian Colors Rest.,*
  133 S. Ct. 2304 (2013) ................................................................................. 11

*American Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974) ....................................................................................... 8

*AT&T Mobility v. Concepcion,*
  131 S.Ct. 1740 (2011) ......................................................................... 5, 10, 11

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006) ....................................................................................... 4

*Caley v. Gulfstream Aerospace Corp.,*
  428 F.3d 1359 (11th Cir. 2005) ................................................................... 14

*Carmax Auto Superstores Cal. Ltd. Liabl. Co. v.Hernandez,*
  94 F. Supp. 3d 1078 (C.D. Cal. 2015) ......................................................... 10

*Carter v. Countrywide Credit Indus. Inc.,*
  362 F.3d 294 (5th Cir. 2004) ....................................................................... 14

*CompuCredit Corp. v. Greenwood,*
  132 S. Ct. 665 (2012) ................................................................................... 12

*Cramer v. Bank of Am., N.A.,*
  2013 WL 2384313 (N.D. Ill. May 30, 2013) ................................................... 2

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991) ....................................................................................... 12

*Golden v. O'Melveny & Meyers LLP,*
  2016 U.S. Dist. LEXIS 103621, 2016 WL 4168853 (C.D. Cal.) .................... 4

*Green Tree Financial Corp. v. Bazzle,*
   539 U.S. 444 (2003) ............................................................................. 2, 6

*Hedges v. Carrigan,*
   117 Cal.App.4th 578 (2004) ................................................................... 5

*Horenstein v. Mortgage Mkt., Inc.,*
   9 F. App'x 618 (9th Cir. 2001) ........................................................ 13, 14

*Kinecta Alternative Financial Solutions, Inc. v. Superior Court,*
   205 Cal. App. 4th 506 (2012) ................................................................ 9

*Lewis v. Epic Sys. Corp.,*
   823 F.3d 1147 (7th Cir. 2016) .............................................................. 13

*Lucas v. Grund, Inc.,*
   450 F. Supp. 2d 1125 (C.D. Cal. 2006) ................................................ 3

*Mistubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985) .............................................................................. 7

*Morris v. Ernst & Young LLP,*
   No. C-12-04964 RMW, 2013 U.S. Dist. LEXIS 95714 (N.D. Cal. July 9, 2013) ....... 13, 14

*Moses H. Cone Hospital v. Mercury Constr. Corp.*
   460 U.S. 1 (1983) ................................................................................. 4

*Nelsen v. Legacy Partners Residential, Inc.,*
   207 Cal. App. 4th 1115 (2012) .......................................................... 8, 9

*Owen v. Bristol Care, Inc.,*
   702 F.3d 1050 (8th Cir. Jan. 7, 2013) ................................................. 14

*Oxford Health Plans LLC v. Sutter,*
   133 S. Ct. 2064 (2013) .......................................................................... 8

*Raniere v. Citigroup Inc.,*
   827 F. Supp. 2d 294 (S.D.N.Y. 2011) ................................................. 13

*Serpa v. California Surety Investigations, Inc.*
   215 Cal.App.4th 695 (2013) .................................................................. 4

*Simula, Inc. v. Autoliv, Inc.,*
   175 F.3d 716 (9th Cir. 1999) ................................................................. 4

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ........................................................................... 1, 5, 6, 7, 8, 9, 10

**Statutes**

29 U.S.C. § 216............................................................................................................... 13

9 U.S.C. § 2 ..................................................................................................................... 4

9 USC § 1 ......................................................................................................................... 4

CCP § 1280 ...................................................................................................................... 4

CCP § 1281 ...................................................................................................................... 4

This Court, on July 14, 2017, ordered the parties to provide additional briefing on two issues: (1) whether APC-sponsored au pairs would be permitted to arbitrate collectively or forced to arbitrate as individuals in the event that the Court compels arbitration, and (2) how any limitations on collective action would impact the unconscionability analysis. *See* Minute Order (July 14, 2017) (Dkt. 597).[1] The answers to both questions are straight-forward: (1) APC-sponsored au pairs who entered into arbitration agreements with APC may <u>not</u> arbitrate their claims collectively because there is no contractual basis for concluding that the parties agreed to do so, and (2) this factor has <u>no impact</u> on the unconscionability analysis because such considerations are preempted by the Federal Arbitration Act ("FAA").

### B<small>ACKGROUND</small>

On August 15, 2016, Plaintiffs moved for leave to file a Second Amended Complaint ("SAC") adding Juliane Harning ("Harning") and Laura Mejia Jimenez ("Jimenez") as plaintiffs. Dkt. 329. They filed their Second Motion for Collective Action Certification that same day, seeking conditional certification of Fair Labor Standards Act ("FLSA") claims against AuPairCare, Inc. ("APC"). Dkt. 330. APC opposed Plaintiffs' motion for collective action certification on September 22, 2016, arguing that the Court could not certify an FLSA class against APC in light of the mandatory arbitration and forum

---

[1] As discussed in greater detail below, the Supreme Court has stated that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so…." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010). For that reason, APC respectfully suggests that the issue is better framed not as whether APC-sponsored au pairs would be permitted to arbitrate collectively or forced to arbitrate as individuals, but rather whether the parties *agreed* to collective or class arbitration.

1

selection provisions of the contracts Harning and Jimenez signed with APC.[2]  Dkt. 360 at 6-8. On October 12, 2016, Plaintiffs argued in reply that the arbitrability of Harning's and Jimenez's claims was not yet before the Court, that APC had waived arbitration by participating in the case, and that the impact of arbitration agreements entered into by absent members of the putative class cannot be adjudicated until after those members actually become a part of the case by opting in.  *See* Plaintiffs' Reply in Support of Motions for Conditional Collective Action Certification (Dkt. 383) at 19 -21.

      The Court did not grant Plaintiffs' motion for leave to file the SAC until October 17, 2016 (Dkt. 394), five days after Plaintiffs' reply in support of conditional collective action certification, and Harning and Jimenez were added as parties to this case when Plaintiffs filed the SAC that same day (Dkt. 395). APC moved to compel arbitration on November 10, 2016, approximately three weeks after Harning and Jimenez were added as parties (Dkt. 431). As noted in APC's motion to compel arbitration, the agreements signed by both Harning and Jimenez provide that:

> The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S.

---

[2] APC argued in its Opposition to Plaintiffs' Rule 23 Motion for Class Certification (Dkt. 562) that Harning and Jimenez are not adequate class representatives in light of their agreement to mandatory arbitration. *See* Dkt. 602 at 8, n. 5.  APC further argued that the arbitrator, and not this Court, has the authority to decide whether any putative collective class should be certified, conditionally or otherwise.  *Id.* at 7.  As discussed herein, the FAA preempts the notion that limitations on class arbitrability could render an arbitration agreement unconscionable.  However, even if this were not true, this consideration is still not appropriate for this Court to decide, as it is the arbitrator, not a court, who decides class arbitrability.  *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 454 (2003); *Cramer v. Bank of Am., N.A.,* 2013 WL 2384313, *4 (N.D. Ill. May 30, 2013).

before an arbitration provider selected by AuPairCare upon the petition of either party.

APC Mot. to Compel (Dkt. 431) at 3.[3]

Plaintiffs opposed APC's motion to compel arbitration on December 5, 2016, contending that the FAA and California contract law govern the question of whether the arbitration clause can be enforced. *See* Plaintiffs' Opp. to Mot. to Compel Arbitration (Dkt. 449) at 11 (invoking the FAA and California contract law). Plaintiffs did not address the question of how any limitation on collective or class action arbitration might impact the unconscionability analysis, but did argue that the "effective vindication exception" to the FAA serves as an independent ground to nullify the arbitration clause in light of the contract's fee-shifting provision. *See id*. at 13-14 (arguing that fee shifting frustrates the purposes of the FLSA and may not be enforced).[4] APC filed a reply in support of its motion to compel arbitration on December 19, 2016, arguing that the fee-shifting provision of the contract applies only to claims brought for breach of the agreement, and therefore is

---

[3] Copies of the contracts signed by Harning and Jimenez are attached as Exhibits 1-3 to the Declaration of Sarah McNamara (Ex. A). In addition to the identical agreements Harning and Jimenez signed in 2013 and 2014, respectively, Harning signed an Au Pair Agreement with APC in December 2007 providing that "any dispute or claim arising out of this Agreement, and resulting or related transaction, or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration…before JAMS/Endispute, Inc." *See* Ex. 1 to McNamara Declaration. The fact that JAMS was designated as the arbitral forum in the 2007 agreement between Harning and APC—as compared to the lack of such designation in the agreement between Jimenez and APC—supports that bilateral arbitration would allow the arbitration agreements to be more easily enforced in accordance with their individual terms.

[4] To the extent that the Court is persuaded by Plaintiffs' argument, this term could be severed from the arbitration agreement without disturbing the primary intent of the parties to arbitrate their dispute. *See e.g., Lucas v. Grund, Inc.*, 450 F. Supp. 2d 1125, 1134 (C.D. Cal. 2006).

inapplicable in the present case. *See* Dkt. 453 at 11-12.  The Court granted Plaintiffs'

motion for conditional collective action certification on March 31, 2017, but did not address

the impact of the arbitration agreements on that ruling. *See generally* Dkt. 525.

## ARGUMENT

### I.      The Federal Arbitration Act Favors Arbitration and Controls

Both federal and California law strongly favor arbitration. *Buckeye Check Cashing,*

*Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Moses H. Cone Hospital v. Mercury Constr.*

*Corp.* 460 U.S. 1, 24-25 (1983); 9 USC § 1 *et seq*.; California Arbitration Act, CCP § 1280

*et seq*. Each Act makes arbitration agreements valid, irrevocable and enforceable except

on grounds that exist for revocation of any type of contract generally. CCP § 1281; 9 U.S.C.

§ 2; *Serpa v. California Surety Investigations, Inc.* 215 Cal.App.4th 695, 701 (2013).

Federal substantive law governs the question of arbitrability. *Simula, Inc. v. Autoliv,*

*Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal citations omitted). The FAA reflects

Congress' intent to provide for the enforcement of arbitration agreements within the full

reach of the Commerce Clause. *Id.* The FAA embodies a clear federal policy in favor of

arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in

favor of arbitration."[5] *Id.* Further, if an arbitration agreement evidences a transaction

"involving interstate commerce," it is governed by the FAA. 9 U.S.C. § 1. The FAA term

"involving commerce" signals the broadest permissible exercise of Congress's Commerce

---

[5] Plaintiffs have not argued that their contracts' California choice of law provisions
dictate application of the California Arbitration Act instead of the FAA. To the extent they
do so, however, it should be noted that such an argument was rejected by the Central
District of California in *Golden v. O'Melveny & Meyers LLP*, 2016 U.S. Dist. LEXIS
103621, *  2016 WL 4168853, *21-45 (C.D. Cal.).

Clause power. *Allied Bruce v. Terminix Cos.,* 513 U.S. 265, 273-275 (1995); *Hedges v. Carrigan,* 117 Cal.App.4th 578, 585-86 (2004).

Here, APC currently sponsors au pairs in 31 states and in the District of Columbia. Ex. A, ¶ 6. APC's Area Directors are also located in these several states and provide local support to families and au pairs participating in the program. *Id.* Thus, there can be no dispute that APC's services implicate interstate commerce and that APC's motion to compel arbitration is governed by the FAA. When the FAA applies, controlling federal precedent operates via the Supremacy Clause to mandate enforcement of an arbitration agreement even if state law may differ. *See generally, AT&T Mobility v. Concepcion,* 131 S.Ct. 1740 (2011).

## II. APC-Sponsored Au Pairs May Not Arbitrate Collectively, But Must Instead Arbitrate As Individuals.

The contracts signed by both Harning and Jimenez provide for arbitration of "any dispute or claim arising out of [the] Agreement, including but not limited to any resulting or related transaction or the relationship of the parties…." APC Mot. to Compel (Dkt. 431) at 3. However, the agreement does not specifically allow for class arbitration, nor does it include a class action waiver – it is completely silent on the issue of collective or class arbitration. *Id.* Because the contracts both Harning and Jimenez signed with APC do not evidence any agreement to engage in collective or class arbitration, they must arbitrate their claims individually.

The Supreme Court's holding in *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), is controlling: "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to

do so…." *Id*. at 683 (emphasis in original). The parties to that action had "selected a panel of arbitrators and stipulated that the arbitration clause was 'silent' with respect to class arbitration." *AnimalFeeds Int'l Corp.*, 559 U.S. at 668.[6]  Despite the agreement's silence, the arbitrators concluded that it allowed for class arbitration. *Id*. at 669. They "found persuasive the fact that arbitrators ruling after *Bazzle* had construed a 'wide variety of clauses in a wide variety of settings as allowing for class arbitration'….and that [p]etitioners' expert evidence did not show an 'inten[t] to preclude class arbitration….'" *Id*. The arbitrators also reasoned that if an express agreement to class arbitration was required, there would be "'no basis for a class action absent express agreement among all parties and the putative class members.'" *Id*.

Following appeals to the district and appellate court, the Supreme Court reversed the Second Circuit, ruling that the arbitration could not proceed on a class basis because the arbitrators had exceeded their authority by imposing their "own view of sound policy regarding class arbitration" instead of interpreting and enforcing the contract. *AnimalFeeds Int'l Corp.*, 559 U.S. at 671. The Court noted that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Id*. at 681 (internal citation omitted). The Court also referenced its pronouncement "on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'"

---

[6] The parties also entered into a supplemental agreement providing for the question of class arbitration to be submitted to a panel of three arbitrators, consistent with the Supreme Court's plurality opinion in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), to determine "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." *AnimalFeeds Int'l Corp.*, 559 U.S. at 668.

*AnimalFeeds Int'l Corp.*, 559 U.S. at 682 (internal citations omitted). "In this endeavor, 'as with any other contract, the parties' intentions control.'" *Id.* (citing *Mistubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). In light of these principles, the Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* (emphasis in original).

Observing that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed that the parties consented to it by simply agreeing to submit their disputes to an arbitrator,"[7] the *AnimalFeeds* Court held that "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *AnimalFeeds Int'l Corp.*, 559 U.S. at 685-87. The relevant question was "whether the parties *agreed to authorize* class arbitration." *Id.* at 687 (emphasis in original). Because the agreement at issue was silent on the question of class arbitration and because they had stipulated that there was "no agreement" to class arbitration, the Court ruled that the parties could not be compelled to submit their dispute to class arbitration. *Id.*[8]

---

[7] The Court engaged in an extensive discussion of the differences between bilateral and class-action arbitrations, noting among other things that the commercial stakes are increased and that confidentiality is lost in class arbitrations. *AnimalFeeds Int'l Corp.*, 559 U.S. at 685-87.

[8] Even though the contract was silent as to class arbitration, the Court upheld an arbitrator's decision to allow class arbitration in *Oxford Health Plans LLC v. Sutter* based on the limited review available under the FAA because the arbitrator had not exceeded his authority by interpreting the contract (though the Court signaled its disagreement with the arbitrator's conclusion). *Oxford Health Plans LLC v. Sutter*, 133

Importantly, California law does not provide a "default rule" in favor of class arbitration where the contract is silent on the issue.[9] For example, a California appellate court in *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115 (2012) examined an agreement entered into by parties to an employment action that was silent on the issue of class arbitration. Applying the holding in *AnimalFeeds*, the court determined that there was no admissible extrinsic evidence reflecting the parties' intent with respect to class arbitration, so it turned to the language of the arbitration agreement. *Nelsen*, 207 Cal. App. 4th at 1128-30. In concluding that class arbitration was not permissible, the court focused on the fact that the "agreement only covers claims, disputes, and controversies 'between myself and Legacy Partners,' that is, between [plaintiff and defendant]." *Id*. at 1129-30. If class arbitration was allowed, "it would be a dispute between [defendant] and numerous different individuals, one of whom is [plaintiff]." *Id*. at 1130. "Although [defendant] agreed with [plaintiff] to arbitrate all kinds of disputes that might arise between

_____

S. Ct. 2064, 2068-71 (2013). Justice Alito observed in his concurring opinion that there are serious concerns about class arbitration — "with no reason to believe that the absent class members ever agreed to class arbitration, it is far from clear that they will ever be bound by the arbitrator's ultimate resolution of this dispute…." because "an arbitrator's erroneous interpretation of contracts that do not authorize class arbitration cannot bind someone who has not authorized the arbitrator to make that determination." *Id*. at 2071. In the context of certification pursuant to Rule 23, "distribution of opt-out notices" would "not cure this fundamental flaw" because "an offeree's silence does not normally modify the terms of a contract." *Id*. (internal citations omitted). Expanding on this point, Justice Alito observed that "[c]lass arbitrations that are vulnerable to collateral attack allow absent class members to unfairly claim the 'benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Id*. at 2072 (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 546047 (1974).

[9] The Court in *AnimalFeeds* criticized the arbitrators for failing to inquire "whether the FAA, maritime law, or New York law contains a 'default rule' under which an arbitration clause is construed as allowing class arbitration in the absence of express consent." *AnimalFeeds*, 559 U.S. at 673.

8

them," the court found that "this choice of contractual language, by its ordinary meaning, unambiguously negates any intention by [defendant] to arbitrate claims or disputes to which [plaintiff] was not a party." *Id*.

The California court of appeals reached the same conclusion in *Kinecta Alternative Financial Solutions, Inc. v. Superior Court*, 205 Cal. App. 4th 506 (2012). *Kinecta* involved a putative wage and hour class action brought by a credit union employee against her former employer. Applying *AnimalFeeds* and interpreting the contract, the court held that arbitration could not proceed on a classwide basis because the arbitration provision "identifie[d] only two parties to the agreement," the employee and the employer. *Id*. at 517. Significantly, the arbitration provision made "no reference to employee groups or to other employees…." *Id*. Neither *Nelsen*, nor *Kinecta* applied a default rule in favor of class arbitration where the contracts were silent on that question.

Similar to the provisions at issue in *Nelsen* and *Kinecta*, the contracts here provide that "the parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California…." APC Mot. to Compel (Dkt. 431) at 3. The contract is entirely silent on the question of class arbitration and contains nothing indicating that APC, Harning, or Jimenez agreed to class arbitration. Indeed, the only available evidence of the parties' intent on the face of the contract runs counter to the notion that they intended to agree to class arbitration. The agreements are made between the "parties" (APC, Harning, and Jimenez) and apply to disputes arising out of the "Agreement, including but not limited

9

to any resulting or related transaction or the relationship of the *parties*…." *Id*. Absent

members of a collective or class action are not "parties" to the agreements between APC

and Harning, nor are they "parties" to the agreement between APC and Jimenez. The

contract therefore is clear that the parties intended for "bilateral" arbitrations, and not class

arbitrations. APC's agreement to arbitration is not enough to infer that it consented to

collective or class arbitration. *AnimalFeeds Int'l Corp.*, 559 U.S. at 685-87.

Because APC has not agreed to class arbitration, Harning and Jimenez must

arbitrate their claims individually.

**III.     Requiring Au Pairs to Bilaterally Arbitrate FLSA Claims Does Not Impact the
         Court's Conscionability Analysis**

**A.  Legal Standard Governing Unconscionability**

The party opposing arbitration has the burden of showing the arbitration agreement

is both procedurally and substantive unconscionable. *Carmax Auto Superstores Cal. Ltd.*

*Liabl. Co. v.Hernandez*, 94 F. Supp. 3d 1078, 1104 (C.D. Cal. 2015). Here, Plaintiffs cannot

show that the arbitration agreements at issue are unconscionable due to limitations on

Plaintiffs' ability to arbitrate FLSA claims as collective or class actions.

**B.  Conditioning Enforcement of Arbitration on the Availability of Class
     Procedure is Preempted By the FAA**

The U.S. Supreme Court's holding in *Concepcion* is instructive on the issue of

whether limiting an au pair's ability to bring a collective action impacts the consciionability of

the subject arbitration agreements. In *Concepcion*, the high court held that the FAA

preempted California's "*Discover Bank* rule" which allowed any party to a consumer

contract of adhesion to demand class-wide arbitration. *Concepcion,* 131 S. Ct. at 1750-51.

The Court held the rule interfered with arbitration and was inconsistent with the FAA, even where the arbitration agreement was silent on the issue. *Id.* First, requiring class arbitration rather than bilateral arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1751. Second, class arbitration *requires* more procedural formality. *Id.* (emphasis in original). Third, class arbitration greatly increases risks to defendants. *Id.* at 1752. In short, the Supreme Court held that "**requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA**." *Id.* at 1748 (emphasis added).  As a result, conditioning enforcement of arbitration on the availability of class action procedures is preempted by the FAA.  In *Concepcion*, the argument that class arbitration is necessary to prosecute claims "that might otherwise slip through the legal system" was specifically rejected, since states cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons. *Id.* at 1753.

APC anticipates that Plaintiffs will argue that individual arbitration would be unconscionable because the costs au pairs would incur to prove their claim could exceed the amount they recover in arbitration. This argument, however, has also been expressly rejected by the Supreme Court. In *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013), the Supreme Court held that the FAA did not permit courts to invalidate a contractual waiver of class arbitration on the ground that a plaintiff's costs of individually arbitrating a federal statutory claim exceeded potential recovery, stating that "the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution

of low-value claims," as such interest is "unrelated" to the FAA. *Id.* Indeed, the FAA does not sanction a "judicially created superstructure" wherein "a federal court determine[s] (and the parties litigate) the legal requirements for success on the merits claim-by-claim and theory-by-theory, the evidence necessary to meet those requirements, the cost of developing that evidence, and the damages that would be recovered in the event of success." *Id.* Litigating such preliminary hurdles "would undoubtedly destroy the prospect of speedy resolution that arbitration in general and bilateral in particular was meant to secure." *Id.* Accordingly, Harning and Jimenez have no grounds to assert that limitations on collective action arbitrability would render the arbitration agreements unconscionable based on considerations of cost or efficiency.

### C. Bilateral Arbitration Does Not Interfere With Plaintiffs' Substantive Rights

The Savings Clause of the FAA requires courts to enforce arbitration agreements unless the FAA's mandate has been "overridden by a contrary congressional command" found in another statute that supersedes the liberal federal policy favoring arbitration agreements. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012). By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute, but rather only submits to their resolution in an arbitral, instead of judicial, forum. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). If Congressional intent to override the FAA exists, it will be found in the text of the statute, its legislative history or because of an inherent conflict between arbitration and the statute's underlying purposes. *Id.* The party challenging the arbitration agreement bears the burden of showing that Congress intended to preclude a waiver of the judicial forum. *Id.*

Here, the collective action procedures of the FLSA, 29 U.S.C. § 216(b), do not confer a substantive right to a collective action. It is well-established among California state courts, the Ninth Circuit and other Circuits that there is nothing in the FLSA or its legislative history that indicates a congressional intent to bar employees (or au pairs) from agreeing to arbitrate FLSA claims individually instead of as a collective action. *See e.g.*, *Morris v. Ernst & Young LLP,* No. C-12-04964 RMW, 2013 U.S. Dist. LEXIS 95714, at *34 (N.D. Cal. July 9, 2013) (reversed and remanded on other grounds); *Horenstein v. Mortgage Mkt., Inc.,* 9 F. App'x 618, 619 (9th Cir. 2001) (holding "there is nothing in the text [of the FLSA], and plaintiffs have shown nothing in the legislative history, indicating that Congress intended to preclude arbitration of FLSA claims."). While the FLSA *allows* collective actions, it "do[es] not guarantee collective process." *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1161 (7th Cir. 2016) (distinguishing the FLSA from the National Labor Relations Act ("NLRA") when refusing to compel arbitration since Sections 7 and 8 of NRLA guarantee collective process).

In *Horenstein*, the Ninth Circuit found that "[a]lthough plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the [FLSA]." *Horenstein,* at 619. In *Morris*, the Northern District of California similarly found that the right to collective action under the FLSA is not a substantive right and expressly rejected *Raniere v. Citigroup Inc.,* 827 F. Supp. 2d 294 (S.D.N.Y. 2011)—one of the few opinions which has found that a waiver of collective action in an FLSA case is unenforceable as a matter of law. *Morris* instead found that despite the *Raniere* analysis, "every circuit court that has addressed the issue has held the opposite:

13

that arbitration agreements *can* validly waive collective action because Congress did *not* intend to confer a nonwaivable right to a class action under the FLSA." *Morris*, at \*31-32 *(citing, Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. Jan. 7, 2013) ("[T]he FLSA contains no 'contrary congressional command' as required to override the FAA."); *see also Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294, 298 (5th Cir. 2004), *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002), *Horenstein, supra*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005).

Here, similar to the long line of cases that have found an arbitration agreement is not substantively unconscionable or void and unenforceable because it waives collective action rights, Harning and Jimenez cannot successfully argue that an inability to proceed with a collective action deprives them of substantive rights under the FLSA or otherwise affects the consciousability of their agreement with APC.

## **CONCLUSION**

For the reasons set forth herein, APC respectfully submits that APC-sponsored au pairs who entered into arbitration agreements with APC may <u>not</u> arbitrate their claims collectively and this factor has <u>no impact</u> on the unconscionability analysis because such considerations are preempted by the FAA. APC's motion to compel arbitration should be granted, Plaintiffs Harning and Jimenez should be dismissed from this action, and Plaintiffs' collective FLSA action against APC should be decertified.

Respectfully submitted this 28th day of July, 2017.

/s/ Peggy Kozal
Thomas B. Quinn
Peggy E. Kozal
Nathan Huey
GORDON & REES LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
Fax: (303) 534-5161
tquinn@grsm.com
pkozal@grsm.com
nhuey@grsm.com
**Attorneys for Defendant**
**AuPairCare, Inc.**

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system, which will send notification to all counsel referenced below, and/or sent via electronic mail on this the 28th day of July, 2017 addressed to:

| | | |
|---|---|---|
| Lauren F. Louis<br>Sigrid S. McCawley<br>Sabria McElroy<br>Matthew L. Schwartz<br>Peter M. Skinner<br>Randall W. Jackson<br>Dawn L. Smalls<br>Joshua Libling<br>Sean P. Rodriguez<br>Juan P. Valdivieso<br>BOIES SCHILLER &<br>FLEXNER, LLP<br>llouis@bsfllp.com<br>smccawley@bsfllp.com<br>smcelroy@bsfllp.com<br>mlschwartz@bsfllp.com<br>pskinner@bsfllp.com<br>rjackson@bsfllp.com<br>dsmalls@bsfllp.com<br>jlibling@bsfllp.com<br>srodriguez@bsfllp.com<br>jvaldivieso@bsfllp.com<br>*and*<br>Alexander N. Hood<br>TOWARDS JUSTICE –<br>DENVER<br>alex@towardsjustice.org<br>***Attorneys for Plaintiffs*** | Brooke A. Colaizzi<br>Raymond M. Deeny<br>Heather F. Vickles<br>Joseph H. Hunt<br>Alyssa L. Levy<br>SHERMAN & HOWARD,<br>LLC<br>bcolaizzi@shermanhoward.com<br>rdeeny@shermanhoward.com<br>hvickles@shermanhoward.com<br>jhunt@shermanhoward.com<br>alevy@shermanhoward.com<br>***Attorneys for Defendant InterExchange, Inc.*** | William J. Kelly, III<br>Chanda M. Feldkamp<br>KELLY & WALKER, LLC<br>wkelly@kellywalkerlaw.com<br>cfeldkamp@kellywalkerlaw.com<br>***Attorneys for Defendant USAuPair, Inc.*** |
| Meshach Y. Rhoades<br>Martin J. Estevao<br>Vance O. Knapp<br>ARMSTRONG TEASDALE,<br>LLP<br>mrhoades@armstrongteasdale.com<br>mestevao@armstrongteasdale.com<br>vknapp@armstrongteasdale.com<br>***Attorneys for Defendant GreatAuPair, LLC*** | Bogdan Enica<br>BOGDAN ENICA,<br>ATTORNEY AT LAW<br>bogdane@hotmail.com<br>***Attorneys for Defendant Expert Group International, Inc. d/b/a Expert AuPair*** | David B. Meschke<br>Martha L. Fitzgerald<br>BROWNSTEIN HYATT<br>FARBER SCHRECK, LLP<br>dmeschke@bhfs.com<br>mfitzgerald@bhfs.com<br>***Attorneys for Defendant EurAupair InterCultural Child Care Programs*** |
| James E. Hartley | Brian A. Birenbach | Kathryn A. Reilly |

| | | |
|---|---|---|
| Adam A. Hubbard<br>Jonathan S. Bender<br>HOLLAND & HART, LLP<br>jhartley@hollandhart.com<br>aahubbard@hollandhart.com<br>jsbender@hollandhart.com<br>***Attorneys for Defendant Cultural Homestay International*** | RIETZ LAW FIRM, LLC<br>brian@rietzlawfirm.com<br>*and*<br>Kathryn A. Reilly<br>Grace A. Fox<br>Natalie West<br>WHEELER TRIGG<br>O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>***Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair*** | Grace A. Fox<br>Natalie West<br>WHEELER TRIGG<br>O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>***Attorney for Defendant Agent Au Pair*** |
| Lawrence L. Lee<br>Susan M. Schaecher<br>FISHER & PHILLIPS, LLP<br>llee@laborlawyers.com<br>sschaecher@laborlawyers.com<br>and<br>John B. Fulfree<br>Joseph B. Cartafalsa<br>Robert M. Tucker<br>Stephen J. Macri<br>PUTNEY, TWOMBLY, HALL & HIRSON, LLP<br>jfulfree@putneylaw.com<br>jcartafalsa@putneylaw.com,<br>jbc54@cornell.edu<br>rtucker@putneylaw.com,<br>robert.m.tucker1@gmail.com<br>smacri@putneylaw.com<br><br>***Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation; American Institute for Foreign Study d/b/a Au Pair in America*** | Eric J. Stock<br>Gibson, Dunn & Crutcher LLP<br>estock@gibsondunn.com<br>mao@gibsondunn.com<br>***Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America***<br><br>Lawrence D. Stone<br>Kathleen E. Craigmile<br>NIXON SHEFRIN HENSEN OGBURN, P.C.<br>lstone@nixonshefrin.com<br>kcraigmile@nixonshefrin.com<br>***Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair; 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange*** | Joan A. Lukey<br>Robert M. Buchanan, Jr.<br>Michael T. Gass<br>Justin J. Wolosz<br>Lyndsey M. Kruzer<br>Kevin P. O'Keefe<br>CHOATE, HALL & STEWART, LLP<br>joan.lukey@choate.com<br>rbuchanan@choate.com<br>mgass@choate.com<br>jwolosz@choate.com<br>lkruzer@choate.com<br>kokeefe@choate.com<br>*and*<br>Diane R. Hazel<br>James M. Lyons<br>Jessica L. Fuller<br>LEWIS ROCA ROTHGERBER CHRISTIE LLP<br>dhazel@lrrc.com<br>jlyons@lrrc.com<br>jfuller@lrrc.com<br>***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair*** |

*/s/Lisa Riggenbach*
For Gordon & Rees LLP

17