**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

     Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

     Defendants.

---

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT AUPAIRCARE'S MOTION TO COMPEL ARBITRATION**

---

Plaintiffs submit this Supplemental Memorandum of Law in Opposition to

Defendant AuPairCare's Motion to Compel Arbitration (DE 431), pursuant to the Court's

July 14, 2017 Minute Order, which directed "additional briefing on the narrow issue of

whether APC-sponsored au pairs would be permitted to arbitrate collectively or forced to

arbitrate as individuals in the event that this Court compels arbitration, and how any

limitations on collective action would impact the unconscionability analysis."  DE 597.

<u>**PRELIMINARY STATEMENT & BACKGROUND**</u>

Despite having participated in every facet of this case for over two years,

Defendant AuPairCare ("APC") chose not to seek arbitration until after it had struck out

on its motion to dismiss. Having chosen to actively litigate this case and take advantage

of judicial discovery, APC waived any right to arbitrate.

Even if APC had not waived its right to arbitrate, however, the arbitration provision would be unenforceable because it is both procedurally and substantively unconscionable:  it was part of a "take-it-or-leave-it" contract of adhesion presented to individuals with no bargaining power or business sophistication, making it **procedurally** unconscionable; and it is **substantively** unconscionable because it contains an improper fee-shifting provision, improperly gives APC the sole discretion to choose the arbitral pool, and requires arbitration in San Francisco.

Furthermore, it is worth noting that the arbitration provision of the APC Au Pair agreement does not express whether it allows for collective or class arbitration. The relevant provisions state:

> The Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.
>
> The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party.
>
> In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05.  The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction.  Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.
>
> In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S.  In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration[.]

APC Agreement at ¶¶ 76-77 (DE 438-1).

On the narrow issue now before the Court, if the Court forces APC-sponsored au pairs into arbitration, an unconscionable result will follow. It will be up to the arbitrator, not the court, to decide whether collective arbitration is permitted. If the arbitrator construes the contract to allow for collective arbitration that might mitigate, in part, the unfairness of the illegal fee-shifting and venue terms. If, however, the arbitrator declines to allow APC-sponsors to pursue their claims collectively, then the illegal terms in the contract will render the entire term unenforceable. To ensure that such a result never comes to pass, Plaintiffs urge the Court to deny APC's motion to compel arbitration.

## ARGUMENT

**I.     If the Court compels APC-sponsored au pairs into arbitration, the arbitrator would decide whether those au pairs would be permitted to arbitrate collectively.**

In the event that the Court compels APC-sponsored au pairs into arbitration, the arbitrator would decide whether APC-sponsored au pairs can proceed with a collective action. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 679 (2010) ("the arbitrator and not a court should decide whether the contracts were indeed "silent" on the issue of class arbitration") (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, (2003)); *Dent v. Encana Oil & Gas, Inc.*, 166 F. Supp. 3d 1210, 1215 (D. Colo. 2016) (Arguello, J) ("in accordance with . . . *Bazzle*, the Court finds that the arbitration clause. . . authorizes the arbitrator to . . . determine whether it permits Plaintiff's collective and class actions claims to proceed in arbitration.). As in *Dent*, the APC arbitration clause's language is "broad" because it includes "any dispute or claim arising out of this Agreement." APC Agreement at ¶ 77. Accordingly, "[w]hether the agreement

permits class arbitration is purely a matter of contract interpretation—a task that has been expressly delegated to the arbitrator" by the contract's broad language.  166 F. Supp. 3d at 1214.

**II.    Where the arbitration clause is silent on collective action, the arbitrator will look to other relevant bodies of law, which undoubtedly encourage collective arbitration.**

For arbitration to proceed on a collective basis, an arbitrator must either find an express or implied "contractual basis for concluding that the part[ies] **agreed** to do so" or that there is some other relevant law that provides a "default rule under which an arbitration clause is construed as allowing class arbitration in the absence of express consent," such as state law relevant to the contract. *Stolt-Nielsen*, 559 U.S. at 685, 674; *see also Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2066 (2013) (arbitrator's decision to permit collective arbitration must be based on at least some review and construction of the contract).

As noted above, the APC arbitration clause—like the clauses in *Bazzle* and *Stolt-Nielsen*—is silent as to whether collective arbitration is permitted.[1]  Accordingly, if the Court compels arbitration here, *Stolt-Nielsen* and its progeny, including *Sutter*, will

---

[1] In *Bazzle*, although the parties disputed whether the contract's language was silent on collective action, a plurality of the Court found that it was.  *Bazzle*, 539 U.S. at 451 ("the literal terms of the contract do not decide" whether collective action is barred).  In *Stolt-Nielsen*, by contrast, the parties stipulated that the contract was silent on collective arbitration.  *Stolt-Nielsen*, 559 U.S. at 668.  Here, although APC has never articulated a position on the issue, nothing on the face of the contract mentions collective arbitration, and therefore, the contract is "silent."  Moreover, the APC arbitration provision bears no resemblance to the arbitration clauses that affirmatively ***mandate*** individual arbitration of employee claims, the enforceability of which has divided several Circuit Courts.  *See, e.g., Nat'l Labor Relations Bd. v. Alternative Entm't, Inc.*, 858 F.3d 393, 401-402 (6th Cir. 2017) (discussing circuit split).  Unlike here, the *Alternative Entm't* arbitration clause clearly intended to bar collective action, stating that "you and [the employer] also agree that a claim may not be arbitrated as a class action".  *Id.* at 397.

provide the framework for analysis of collective action.

Cases interpreting *Stolt-Nielsen* and *Sutter* provide useful guidance to an arbitrator seeking to construe an "arbitration provision [that] contain[s] no reference to class arbitration." *S. Commc'ns Servs., Inc. v. Thomas* provides, 720 F.3d 1352, 1355 (11th Cir. 2013).  In *Thomas*, the arbitration provision made reference to arbitration in the State of Georgia and the rules of the American Arbitration Association ("AAA"). Accordingly, the arbitrator reviewed AAA rules and applied Georgia law to interpret the meaning of silence as to class arbitration and concluded "that the intent [of the clause] was not to bar class arbitration." *Id.* at 1359-60.  Similarly, in *Laughlin v. VMWare, Inc.*, No. 5:11-CV-00530-EJD, 2012 WL 6652487 (N.D. Cal. Dec. 20, 2012), the arbitrator "looked to the entirety of the relevant circumstances surrounding execution of the Agreement in order to glean the understanding of the parties at the time the contract was entered into." *Id.*at *4.  There, in absence of any express language regarding collective arbitration, the arbitrator looked to California state contract law, which governed the contract, and found that California law "favors procedural devices of class actions and class arbitrations" and that "[t]he strong public policy of the state . . . supported class arbitration." *Id.*

The APC agreement provides that it is governed by California law, which favors class arbitrations. *Laughlin*, 2012 WL 6652487 at *4; *Mathias v. Rent-A-Ctr., Inc.*, No. CIV. S-10-1476 LKK/K, 2010 WL 3715059, at *3 (E.D. Cal. Sept. 15, 2010) (discussing California law favoring class arbitrations).  Thus, an arbitrator applying California contract law within the *Stolt-Nielsen* framework would likely permit APC-sponsored au pairs to pursue collective arbitration.

**III.    If the arbitrator nonetheless decides that collective action is unavailable, the arbitration clause would be void under the "effective vindication" doctrine.**

Although it is likely that an arbitrator would permit collective arbitration for the reasons stated, a material risk remains for APC-sponsored au pairs forced into arbitration.  Faced with similarly broad arbitration provisions, some courts have construed silence to imply a collective action bar, particularly where there is language that contemplates bilateral arbitration.  *See, e.g., Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 945 (N.D. Cal. 2015) (construing contract's usage of singular and "individual" language to support a bar on collective arbitration).  Even if the APC arbitration clause is distinguishable from these cases (as it refers to "partie*s*" rather than singular first person pronouns), federal courts reviewing arbitral decisions apply an extremely forgiving standard.  *See Oxford Health Plans LLC*, 133 S. Ct. at 2071 ("The arbitrator's construction holds, however good, bad, or ugly.").  Mistakes are tolerated because the parties "must…live with th[eir] choice" to arbitrate, and arbitral decisions are overturned "only in very unusual circumstances."  *Id.* at 2071, 2068 (citation and quotation marks omitted).

Thus, while the risk is slight, should an arbitrator refuse to allow collective arbitration in these circumstances, the results would be plainly unconscionable under the relevant case law.  Imposing such a bar would prevent the "effective vindication" of Plaintiffs FLSA claims.  *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376-77 (10th Cir. 2016) (invalidating an FLSA action arbitration agreement under the "effective vindication doctrine").  As articulated by the Supreme Court, the "effective vindication" doctrine is an exception to the Federal Arbitration Act that allows courts to "invalidate, on public

policy grounds, arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310–11 (2013) (refusing to apply effective vindication doctrine to an express class waiver) (citations and quotation marks omitted).

Here, as stated in Plaintiffs' original opposition papers, the APC arbitration provision contains certain offensive elements, including a requirement that unsuccessful au pairs pay APC's attorneys' fees.  Whereas a collective arbitration may mitigate the harmful effects of a fee-shirting provision by spreading them out over a larger pool of plaintiffs, the provision presents an impossible hurdle for an individual au pair, with limited financial resources, seeking to pursue a small individual claim against a large corporate entity like APC.[2]  To the extent effective vindication continues to apply to 'silent' arbitration provisions following *Am. Exp. Co.*, in light of this provision, refusing collective arbitration would effectively end any chance au pairs have at obtaining relief for their claims against APC through arbitration.

## Conclusion

For the foregoing reasons, the Court should deny AuPairCare's motion to compel arbitration.

---

[2] Other than the effective vindication doctrine, unconscionability no longer plays a role in class arbitration waiver analysis following the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (holding that the FAA preempts the unconscionability of class arbitration waivers in consumer contracts).  However, for APC-sponsored au pairs whose contracts pre-date *Concepcion*, the prior, class arbitration-friendly California rule articulated in *Discovery Bank v. Superior Court*, 36 Cal. 4th 148 (2005) would apply.

Dated: Denver, Colorado

    July 28, 2017

Respectfully Submitted,

TOWARDS JUSTICE

s/Alexander Hood
Alexander Hood

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2017, I electronically served the foregoing memorandum of law on all counsel of record.

s/Alexander Hood
Alexander Hood