IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

_____

**CERTAIN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE FLSA NOTICE DOCUMENTS [ECF NO. 618-1]**

    Plaintiffs' Motion to Amend the FLSA Notice Documents ("Motion") is a transparent attempt to gain retroactive approval of their decision to unilaterally send potential FLSA opt-in plaintiffs communications that differed from the Court-approved notice (the "Notice"). In submitting this Motion, Plaintiffs continue to acknowledge their wrongdoing (without adequate explanation), but now try to benefit from it by seeking additional, unwarranted modifications to the Notice. For the reasons discussed herein, Plaintiffs' Motion should be denied, and Plaintiffs should be required to proceed by notifying potential opt-in plaintiffs using only the Notice negotiated by all parties and approved by the Court.

**I.    Procedural Background**

    On July 24, 2016 and August 15, 2016, Plaintiffs moved to conditionally certify FLSA classes against six Defendants: Cultural Care, Inc., AuPairCare, Inc, Go Au Pair

Operations, and American Cultural Exchange, LLC d/b/a GoAuPair, American Institute for Foreign Study, Inc. d/b/a Au Pair In America, Expert Group International, Inc. d/b/a Expert Au Pair, and InterExchange, Inc. (collectively, for the purposes of this Opposition, "Defendants").  Defendants opposed conditional certification on several grounds, including the inappropriateness of aspects of the notice proposed by Plaintiffs.  On March 31, 2017, this Court entered an order granting conditional certification.  ECF No. 525.  This order was twice amended, and the operative Second Amended Order Granting Motion for Conditional Certification (the "Order") was entered on June 9, 2017.  ECF No. 569.

In the Order, the Court discussed at length the disputed aspects of the proposed notice.  On several issues, including Plaintiffs' obligation to inform potential opt-in plaintiffs of both the potential benefits *and* the potential obligations of participating in the lawsuit, the Court determined that Plaintiffs' proposed notice was deficient and was "not neutral;" and the Court ordered that new, neutral language be incorporated.  *Id.* at 11*.* The Court further ordered that, after revising the proposed notice to incorporate the neutral language, Plaintiffs present the final Notice to Defendants at least two business days before sending it to potential opt-in plaintiffs so that Defendants had an opportunity to object and to bring any objections to the Court if they were not resolved among the parties.  *Id.* at 14.  The Court also ruled that the opt-in period would be 120 days long and that Plaintiffs could send the Notice, to be followed by a reminder Notice 60 days later.  *Id* at 15*.*

On June 26, 2017, Plaintiffs provided Defendants with their proposed revised Notice, which incorporated much of the neutral language ordered by the Court. However, Plaintiffs retained some of the employment-related language that the Court had ordered be removed. Following conferrals, Plaintiffs agreed to revise the language as requested by Defendants, and Defendants agreed to several further edits requested by Plaintiffs outside the scope of the earlier draft. The Notice was then deemed final by all parties.

As described in greater detail in Certain Defendants' Motion for Order to Show Cause for Failure to Comply with the Court's Order Granting Conditional Collective Action Class Certification ("Motion to Show Cause") (ECF No. 596) (incorporated by reference herein), Defendants learned on or about July 6, 2017, that Plaintiffs had violated the Court's Order and departed from the language in the approved Notice. Instead of sending the approved Notice in accordance with the Order, on July 5, 2017, Plaintiffs sent an email to potential opt-in plaintiffs. The email purported to be from "Jesse" (who likely appeared to many recipients to be a fellow au pair), and included casual, unapproved language and multiple links that allowed the recipient to opt in *without* ever having seen the Notice. Indeed, based on the structure of the email and the website to which it was linked, many recipients were likely unaware that a court-approved Notice even existed. Moreover, Defendants came to learn that Plaintiffs

emailed au pairs who served in the Program between 2009 and 2013,[1] even though the approved notice was, on its face, directed to au pairs who served "on or after July 25, 2013." Plaintiffs had not notified Defendants that they intended to email au pairs who served in the 2009 to July 25, 2013 period, who would carry the additional burden of demonstrating that the statute of limitations had been tolled.

After Plaintiffs failed to cure the myriad problems engendered by their process errors, and after they refused to comply with the Court's Order, Defendants filed their Motion to Show Cause. Thereafter, Plaintiffs filed the instant Motion, in which they recognized their violation of the Court's Order by (among other things) disseminating a non-approved notice, and sought retroactive permission for the conduct in which they have already engaged.

**II.   Argument**

    A.   <u>Plaintiffs' Proposed Cover Email Is an Inappropriate and Misleading Solicitation and Should Not Be Permitted.</u>

As detailed in Defendants' Motion to Show Cause, the cover email and website created by Plaintiffs constitute improper solicitation, depart significantly from the Court-ordered language, and run counter to the purpose of the notice process. Now, Plaintiffs

---

[1] Defendants incorporate by reference the relevant discussion in the Motion to Show Cause and their Reply in Support of the Motion to Show Cause (ECF No. 644), which explain this procedural history in greater detail.

seek Court approval of a similarly deficient cover email to be provided to potential opt-in plaintiffs at the 60-day mark.[2]

"Under the FLSA, the Court has the power and the duty to ensure fair and accurate notice . . . ." *Lewis v. ASAP Land Express, Inc.*, No. 07-CV-2226, 2008 WL 2152049, at *2 (D. Kan. May 21, 2008). District courts must closely monitor the notice process and take steps to safeguard class members from "unauthorized [and] misleading communications from the parties or their counsel." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980). Here, the Court exercised its power when it considered the arguments of the parties and issued the Order concerning the content of the Notice.

Plaintiffs' after-the-fact request for a "transmittal email" is a "do over," in which they ask to use some of the same language and messaging that the Court rejected for the notice process. For example, Plaintiffs' proposed transmittal email would inform potential opt-in plaintiffs only of the potential benefits of joining the lawsuit ("[you] may be entitled to additional compensation," "You may be owed additional compensation," and "You have the right . . . to recover any money owed to you"), ECF No. 619-5, while entirely omitting any of the potential obligations associated with joining the lawsuit. This approach is directly at odds with the Court's Order, which states, "[t]he Court, however,

---

[2] The 60-day mark will occur on September 3, 2017, weeks before the hearing on Plaintiffs' Motion. As discussed in Section II.C herein, Defendants believe that Plaintiffs should send the court-ordered Notice (and nothing more) on that date and should not benefit from an extension of the opt-in period caused by their own wrongdoing.

agrees with the Defendants that the proposed notice fails to inform potential plaintiffs of other obligations they may encounter if they opt into this action. It is reasonable and necessary to inform potential plaintiffs that they may be deposed, required to submit written discovery, compelled to testify, and obligated to appear in Denver." ECF No. 569 at 11 (internal quotations omitted). Moreover, the transmittal email improperly allows potential opt-in plaintiffs to click a link to "sign up now," without ever seeing or even opening the Notice.[3] Thus, by using this transmittal email, Plaintiffs are able to fully evade the proper notice procedure and solicit opt-ins with the false promise of obligation-free, easy money. Further, although this version of the email at least mentions that it is being sent on behalf of Plaintiffs' counsel, it is still crafted as coming from "Jesse," which is likely to add to confusion regarding who is really behind the communication.

Plaintiffs' attempt to re-litigate the content of the Notice, an issue already settled by this Court, should be squarely rejected. The Court-approved Notice means little if it can be bypassed entirely via an email (which can easily be forwarded or shared by au pairs on social media) that has strategically-placed links to encourage putative class members to opt into the case without ever seeing the balanced, Court-approved

---

[3] For the purposes of this Opposition, Defendants address only Plaintiffs' current proposed transmittal email, which still is highly problematic for these reasons and others discussed herein. Plaintiffs' original transmittal email – which was even more egregious and was sent without Court approval – is addressed fully in the Motion to Show Cause.

language.[4]  If Plaintiffs want to distribute the Notice via email, the email must contain the approved Notice itself.  If Plaintiffs, instead, wish to link from the email to the Notice, they should be required to send a short, simple email that only informs potential opt-in plaintiffs that they can view the court-approved Notice by clicking on a *single link* that sends them to the Notice (and not an opt-in form that evades the Notice).[5]

### B. Plaintiffs Should Not Be Permitted to Add Language Regarding Host Families.

Curiously, Plaintiffs – who obtained plenary contact information for all host families, because they contended in this Court that they are wrong-doers and co-employers of the au pairs – seek to reassure au pairs that no potential harm will come to their host families as a result of this lawsuit.  Mot. 7.  Although Plaintiffs never say it, the reasonable inference is that many au pairs who were happy with the Program would

---

[4] Plaintiffs cite no case law in the Motion for the proposition that a plaintiff can avoid elements of a court-ordered notice process by using a non-neutral "transmittal email" with a direct link to join the lawsuit.  As far as Defendants are aware, no such case law exists.  To the contrary, courts have held that plaintiffs must distribute the notice itself or a direct link to it, and not a truncated, self-serving version, which allows bypass of the actual, required notice.  *See, e.g., Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-3624 (RJS), 2015 WL 4240985, at *6 (S.D.N.Y. July 13, 2015) (after *rejecting* a short-form notice text submitted by the plaintiffs, approving a brief text message that directed potential opt-in plaintiffs to a website that displayed the long-form notice).

[5] Plaintiffs claim that, in order to alleviate concerns that the transmittal email is spam, they would like to include "This is a Court-Authorized Communication" at the top of the transmittal email.  As a preliminary matter, Defendants contend that if the email just contained the Notice itself, rather than a chatty, solicitous communication, it would be readily apparent that the email was a court-authorized communication.  That said, if Plaintiffs use a transmittal email that contains just the Notice or just a simple link to the Notice, Defendants do not object to adding this requested language.

be reluctant to join the lawsuit if there is any chance that their host family, with whom they may maintain a relationship, could be at risk.

Although Plaintiffs' current claims are brought against the sponsor defendants, Plaintiffs previously sued a host family (the Noonans), with whom they reached a separate resolution. ECF No. 118. Since then, Plaintiffs have continued to reserve their right to recover from host families. Perhaps most obviously, Plaintiffs take the position that host families are joint employers who engaged in the alleged underpayment at issue in the case. *See, e.g.,* Second Amended Complaint ¶ 317 (ECF No. 395). Moreover, during a January 24, 2017 discovery conference, Defendants raised concerns that Plaintiffs' unfettered ability to contact host families would effectively result in voluntary admissions from host families that could be used against them in support of claims that had been implicitly or explicitly threatened. Jan. 24, 2017 Conf. Tr. 42-44 (ECF No. 484). Plaintiffs not only refused to consider a waiver of possible claims against host families, they went further to argue that it is not "the defendants['] place to protect the identity of individuals who are violating the law," and the sponsors "wouldn't have an argument to say that . . . they're just protecting these people from becoming defendants in the case." *Id.* at 44-45.

Plaintiffs doubled down on that position in later briefs, when they believed it would increase their chances of obtaining host families' contact information:

8

> The desire to shield lawbreakers from identification . . . is not a valid basis to resist [disclosure].
>
> Put simply, the Federal Rules do not allow [sponsors] to suppress information in order to shield potentially wrong-doing third part[y host families] from possible suit.
>
> [T]he court should not consider whether host families will be upset with defendants due to the production of this information.

Pl. Mot. to Compel (ECF No. 465), at 13-14 & n.13;

> Plaintiffs . . . disagree and assert that the host families are joint employers with the Defendants. . . . [P]re-suit discovery of Defendants would be permissible to determine the contact details for host families *in order to permit the host families to be named as defendants.*

Pls.' Reply Br. for Mot. to Compel 7-8 (ECF No. 492 ) (emphasis added).

Counsel for Cultural Care requested assurances from Plaintiffs' counsel regarding the addition of host families to this lawsuit during the discovery conference on January 24, 2017. Jan. 24, 2017 Conf. Tr. 42-44 (ECF No. 484). However, Plaintiffs have not offered a release or even confirmation that host families will not be implicated in the claims they allege (or could allege). Instead, they propose a carefully-worded addition that "[t]he lawsuit . . . does not seek any relief from your host family." ECF Nos. 618-2, 619-5.

Plaintiffs' proposed language obfuscates the question that au pairs appear to be asking – which is whether host families could be "on the hook." For example, is this language intended to say that only named Plaintiffs (but not the class itself) will agree

not to seek relief from a host family?[6]  Or is the promise being made on behalf of the conditional class, or Plaintiffs' counsel (or both)?  If Plaintiffs could clarify this point, and provide assurance that they will not seek recovery from host families, some Defendants may agree with appropriate additional language.  If, however, Plaintiffs' carefully-worded statement that the lawsuit "does not seek any relief from your host family" is intended to leave open the possibility that the putative class could seek such relief in the future, then Plaintiffs' requested addition should be denied.  Plaintiffs should not be encouraging au pairs to opt into the class based on a representation that their host families will not be implicated, when the representation is actually a carefully-worded statement designed to preserve the right for the class to seek recovery from host families at a later time.

Relatedly, the language that immediately precedes this host family assurance is also problematic.  The relevant paragraph states, "You are receiving this message because you worked as an au pair between 2009 and 2016 and may be entitled to *additional compensation* from the agency that sponsored your au pair visa for your past work."  ECF No. 618-2, 619-5 (emphasis added).  The notion that potential opt-in plaintiffs "may be entitled to *additional* compensation" (emphasis added) from Defendants is extremely misleading, given that it is undisputed that Defendants neither paid, nor were obligated to pay any compensation to au pairs in the first place.

---

[6] These portions of the brief are phrased as questions because Plaintiffs have never raised this request to address host family liability with Defendants.  Defendants first learned of this proposed edit regarding host families when Plaintiffs filed the Motion.

Defendants understand that some disclosure of Plaintiffs' theory, such as that contained in the approved Notice, is necessary.  *See* Mot. at Ex. 1 (ECF No. 618-2) ("Plaintiffs have sued the visa sponsors named above to recover unpaid minimum and overtime wages they claim you, and all other au pairs sponsored by these visa sponsors, are owed.").  But advertising that au pairs "may be entitled to additional compensation" from Program Sponsors is misleading, suggests that the Court has already resolved the disputed issue of joint employment, and is well beyond the scope of any Notice discussed with Defendants or approved by the Court.

C. <u>Plaintiffs Should Not Be Permitted to Benefit from Their Own Wrongdoing by Extending the Opt-In Period, Thereby Delaying Resolution of the Litigation.</u>

Instead of complying with the Order and sending out the approved Notice to the au pairs to whom it was directed, Plaintiffs "voluntarily ceased further notification emails" (Smalls Decl. ¶ 54, ECF No. 619) after Defendants informed them that they were in violation of the Order.  As a result, Plaintiffs state in an affidavit that they have sent no notice at all to 60,463 of the Defendants' au pairs.  This large number apparently includes tens of thousands of individuals who served as au pairs after July 24, 2013. (Defendants address au pairs who participated in the program before this date in Section II.D, *infra*.)  Rather than ceasing distribution, the logical course of action for Plaintiffs would have been to *distribute the Notice itself* to au pairs in the relevant time period, by either embedding it in the email itself or by providing a direct link to it from a simple, neutral email negotiated with Defendants.  Instead, Plaintiffs seek to re-litigate

11

the Notice content and, in the process, grant themselves a *de facto* extension of the opt-in period by not sending the Notice to all Plaintiffs. While Plaintiffs have argued that they would like to use different language to communicate with potential opt-in plaintiffs, they have failed to show any deficiency in the court-ordered Notice that would justify derailing the normal notice process and the schedule set by this Court.

Plainly put, Plaintiffs should not be permitted to benefit from their failure to comply with the Order. The first transmittal emails were sent out on July 5, 2017, which means the 60-day reminder Notice should be sent on September 3, 2017, and the opt-in period is set to close on November 2, 2017. The Court should hold Plaintiffs to these dates because Plaintiffs have had the opportunity throughout this entire period to distribute the Notice to au pairs who participated in the Program after July 24, 2013, without any objection from Defendants.[7]

D.  <u>Plaintiffs Cannot Simply Change the Years in the Notice to Send to Au Pairs Who Participated in the Program Before July 24, 2013.</u>

For the reasons discussed in Defendants' Motion to Show Cause and Reply in support thereof, which are incorporated by reference here, Plaintiffs should not be permitted to send notice to au pairs who participated in the program before July 24, 2013 until the Court rules substantively on the issue of equitable tolling. However, if

---

[7] Plaintiffs also complain of "a high number of invalid email addresses produced by Defendants." Plaintiffs have sought to send notices to au pairs who participated in a 1-2 year program as long as 8 years ago when most were living in a country other than the one in which they currently reside. "Bounce-backs" should hardly be surprising in these circumstances.

Plaintiffs are to be permitted to send notice to these earlier au pairs as the Court has previously suggested, more is required than simply changing the date range on the existing notice. There are material differences between the au pairs in the pre-July 25, 2013 period and those who participated in the program after July 24, 2013. Any notice to the earlier au pairs must make it clear, in non-legal language, that their claims are contingent on this Court's ruling on equitable tolling. If Plaintiffs simply change the "2013" in the Notice and transmittal email to "2009," they are materially misleading approximately half of the recipients about the status of their claims and their rights in this lawsuit. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989) (notice should be "timely, accurate, and informative"); *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1203 (11th Cir. 1985) ("The best practicable notice…is notice that conveys objective, neutral information about the nature of the claim and the consequence of proceeding as a class."); ECF No. 569 at 11 (citing *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2012 WL 638119, at *6 (D. Colo. Feb. 28, 2012)).

Plaintiffs incorrectly suggest that the Defendants are insisting on two separate notices when the Court only authorized one. But, the issue is accuracy, not number of notices. In order to be accurate and apprise potential opt-in plaintiffs of their rights, <u>any</u> notice to individuals who participated in the program before July 24, 2013 must plainly explain the statute of limitations hurdle. Because Plaintiffs chose to seek approval of a notice only for potential plaintiffs who served in the Program after July 24, 2013, and because that notice does not acknowledge the statute of limitations hurdle, either

additional language *(see, e.g.*, footnote 8) in the same notice, or a different notice containing such language, is required for these earlier au pair participants.

### E. Communications Between Potential Opt-In Plaintiffs and Plaintiffs' Counsel Should Be Produced Forthwith.

Plaintiffs premise several of their arguments regarding notice on the substance of the communications they have received from potential opt-in plaintiffs.  *See* Mot. 7-9; Smalls Decl. ¶¶ 46-49, ECF No. 619.  To the extent that these communications may have previously been privileged when made, any such privilege has been waived, in two ways.  First, Plaintiffs have put the communications "at issue" in this Motion.  Second, Plaintiffs have disclosed the substance of communications with putative FLSA class members.

A party may not use a privilege as both a sword and a shield.  *Am. Econ. Ins. Co. v. Schoolcraft*, No. 05-cv-01870-LTB-BNB, 2007 WL 1229308, at *3 (D. Colo. Apr. 24, 2007) (finding waiver of privilege, stating "[c]ourts have found implied waiver of the attorney-client privilege when a defendant places the allegedly privileged communication at issue in the litigation, because any other rule would enable the client to use as a sword the protection which is awarded him as a shield") (internal citation and quotation omitted).  Plaintiffs are using communications with putative class members as a "sword" in support of the relief they request – changes to the notice. Plaintiffs may not at the same time use the privilege as a "shield" and refuse to allow Defendants the right to examine those communications.  *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 WL 3923092, at *10 (D. Colo. Oct.

1, 2010) ("Where a party injects part of a communication as evidence, fairness demand[s] that the opposing party be allowed to examine the whole picture . . . the attorney-client privilege cannot be used as both a sword and a shield.") (citation omitted). That the communications were only summarized or were not directly quoted has no impact on this analysis. *Frontier Ref. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998) (finding privilege was not waived because plaintiff did not rely on the communications "*in any manner* to justify" the relief requested) (emphasis added).

In addition, by discussing the substance of the communications in a public filing, Plaintiffs have waived privilege by disclosure. *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (disclosure of attorney-client communications waives privilege as to those communications). Accordingly, all communications with au pairs regarding the Notice (or at a minimum, all those that allegedly support the requests Plaintiffs have made in the Motion) should be produced to Defendants immediately.

### III. Conclusion

For these reasons, Defendants respectfully request that the Court deny the relief sought in the Motion and require Plaintiffs to distribute the Notice, as it was already approved by the Court, with additional language for the pre-July 25, 2013 au pairs if they are to receive notice as the Court previously indicated.[8]

---

[8] Defendants reserve all rights with regard to their position that the statute of limitations bars notice to the au pairs who served in this earlier period.

Dated: August 10, 2017

Respectfully submitted,

*s/ Jessica L. Fuller*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair**

*s/ Kathryn A. Reilly*
Kathryn A. Reilly (reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Natalie E. West (west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

**Attorneys for Defendants Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair**

*s/ Stephen J. Macri*
Stephen J. Macri
(smacri@putneylaw.com)
Joseph B. Cartafalsa
(jcartafalsa@putneylaw.com)
Robert M. Tucker
(rtucker@putneylaw.com)
John B. Fulfree
(jfulfree@putneylaw.com)
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301

**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**

*s/ Bogdan Enica*
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair**

*s/ Peggy Kozal*
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey (nhuey@gordonrees.com)
Heather K. Kelly (hkelly@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

***Attorneys for Defendant AuPairCare, Inc.***

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

***Attorneys for Defendant InterExchange, Inc.***

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on August 10, 2017, I caused Certain Defendants' Opposition to Plaintiffs' Motion to Amend the FLSA Notice Documents [ECF No. 618-1] to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Jessica L. Fuller*
Jessica L. Fuller