IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *et al.*,

    Plaintiffs,

v.

INTEREXCHANGE, INC., *et al.*,

    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF WILLIAM KERR PURSUANT TO F.R.E. 702 (ECF NO. 606)**

Defendants, through their counsel and pursuant to Federal Rule of Evidence 702, hereby submit this reply brief in support of their motion to exclude the testimony of William Kerr and state as follows:

## I.  INTRODUCTION

Throughout this litigation, Plaintiffs have persisted in presenting alleged violations of various wage-and-hour laws as antitrust claims. Because they now seek to certify an antitrust class, Plaintiffs must at last come forward with evidentiary proof establishing that the class suffered an antitrust impact. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013). Among other things, that means Plaintiffs must identify a damages model that is capable of measuring any injury that resulted from the alleged reduction of competition among the defendants. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification."). And they must do so now. *Id.*

For that, Plaintiffs turned to their economist, William Kerr ("Kerr"). In his report, Kerr has discussed two so-called damages models, but neither supplies the evidence that Plaintiffs require to carry their burden. In fact, neither is an antitrust damages model at all, and neither meets the evidentiary standards that govern expert testimony. One is a labor-law damages model, which cannot, as a matter of law and economics, measure an antitrust injury, and the other is an empty shell, which Kerr has not been able to use. Without these models, Kerr's host-family survey is irrelevant, because Plaintiffs have no but-for stipend to compare to the stipend au pairs actually received. Even if it were relevant, it is fatally flawed and would not be admissible.

In their Opposition, ECF No. 650 ("Opp."), Plaintiffs first improperly argue that they can obtain certification of an *antitrust* class based upon Kerr's model, which measures *labor-law* damages under the minimum wage laws. Second, ignoring their burden to demonstrate antitrust impact and predominance, Plaintiffs also argue that Kerr may rely upon his untested and unapplied "price-competition model" to get them over the certification hump, leaving any actual assessment of antitrust impact and damages for another day. That is not the law. Finally, Plaintiffs attempt to mask Kerr's host family "survey" in a cloak of reliability and relevance that cannot withstand scrutiny. Kerr's class certification opinions should be excluded.

## II. ARGUMENT

### A. The Wage-Law Compliance Model Is Not an Antitrust Damages Model.

Kerr's wage-law compliance model (the "wage-law model") merely describes the damage calculation to be applied if the Court holds that certain wage-and-hour laws

2

apply to au pairs, i.e. the minimum wage minus the stipend actually paid to the au pair.[1] Opp. 6.  To determine whether expert evidence is admissible, a trial court "must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact."  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2004).  "The Supreme Court has described the consideration of relevant evidence as one of fit." *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc*, 509 U.S. 579, 591 (1993)).

The wage-law model does not "fit" Plaintiffs' antitrust claims.  It is a long established, bedrock principle of antitrust jurisprudence that, in order to show an antitrust impact, Plaintiffs must trace the harm they allegedly suffered to a reduction of competition.  *Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1124 (10th Cir. 2005); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  But the wage-law model traces their claimed harm to an alleged failure to comply with minimum wage laws, not a reduction of competition.  *See* Opp. at 6-7.  It is thus relevant, if at all, only to Plaintiffs' labor-law claims, and bears no legal or logical relationship to Plaintiffs' antitrust claims.  Plaintiffs cannot utilize a damages theory for one claim (i.e. labor) to obtain certification for another (i.e. antitrust).  *See Comcast*, 133 S. Ct. at 1433 (a class-certification damages model must be consistent with a plaintiff's theory of liability).

Plaintiffs do not advance any theory in their response or their class certification papers that connects the alleged failure to comply with the minimum wage laws to a

---

[1] That is why, as Defendants showed in their opening memorandum, ECF No. 606 ("Mot."), the wage-law "model" is nothing more than a legal conclusion combined with an arithmetic calculation.  Mot. 9–10.

diminution in competition. Nor does Kerr provide the missing link. *See, e.g.*, Report of William Kerr ¶¶ 89-99, ECF No. 560-65 ("Kerr Rpt.") (describing the wage-law model but not explaining how the failure to pay the minimum wage is attributable to a lack of competition). Instead, Plaintiffs attempt to defend the wage-law model—or distract from their inability to do so—with the irrelevant observation that antitrust law "accepts regulatory and legal overlays" as part of the but-for world. Opp. 23. But Plaintiffs cannot establish antitrust injury merely by observing a difference between the but-for world and the actual world. *Brunswick*, 429 U.S. at 489 (holding plaintiffs "must prove more than injury causally linked" to an alleged violation of law in the relevant market). They must also show that the difference is attributable to a reduction of competition. *Sharp v. United Airlines, Inc.*, 967 F.2d 404, 408 (10th Cir. 1992). Plaintiffs cite no case relaxing the antitrust injury requirement for an alleged deprivation of a regulatory minimum wage or price. *See* Opp. 23.

Plaintiffs' repeated efforts to conflate their labor and antitrust claims in order to obtain certification for both cannot obfuscate the fundamental and irreconcilable difference between them: antitrust injury is measured by the wage established in a competitive market, and labor-law injury is determined by the applicability of minimum wage laws that exist only because a legislative body has decided that wages should not be determined by competitive forces. Merely pointing to the alleged labor-law injury thus does not demonstrate that Plaintiffs have suffered an antitrust injury.

The record confirms that there is no connection between increased competition and payment of the allegedly applicable minimum wage. Indeed, there is no evidence

4

at all that increased competition would encourage compliance with minimum wage laws—in fact, just the opposite. As a vice president of one major sponsor testified:



Ex. A, ¶ 8.[2] So, even if one sponsor were to advertise au pair stipends that conformed with the minimum wage standards that Plaintiffs allege apply here, there would be no *competitive* incentive for other sponsors to follow. *See id.* The only record evidence flatly refutes the notion that the failure to pay the minimum wage could qualify as a competitive injury. The wage-law model therefore cannot serve as common proof of antitrust impact and should be excluded.

**B.     Kerr's "Price-Competition Model" Is Not a Working Damages Model.**

In contrast to his wage-law model, Kerr's price-competition model purports to rely on antitrust principles. But Kerr admitted that he could not use this model. Mot. 10-11 (collecting admissions by Kerr). Plaintiffs concede that the model "is not a complete damages model," but contend that they do not need one until trial. Opp. 24.

That is not so. If Plaintiffs want to certify an antitrust class, then they must <u>now</u> present to the Court an antitrust damages model that can establish common impact: "No damages model, no predominance, no class certification." *In re Rail Freight*, 725

---

[2] Citations in the form of "Ex. __" refer to the exhibits to Defendants' Response in Opposition to Plaintiffs' Motion for Rule 23 Class Certification, ECF No. 603, and the consecutively numbered exhibits attached hereto.

F.3d at 253; *Comcast*, 133 S. Ct. at 1432 (plaintiffs must identify "evidentiary proof" to satisfy Rule 23's requirements). That is why Plaintiffs have offered Kerr's opinions. Opp. 6. It therefore will not do merely to claim that Kerr will use the price-competition model later on: Plaintiffs have offered the model to assist the Court at class certification, and by Kerr's own admission there is no evidence that the model can do so.

Even if Plaintiffs were correct, however, and could discharge their burden at class certification simply by identifying a model that Kerr could use later, the price-competition model still would fail. Kerr has not done any work to determine whether he will be able to use the model at a later stage. Kerr has not investigated even basic structural facts about the market, such as whether there is an oversupply of au pairs. Rebuttal Report of William Kerr ¶ 42, ECF No. 560-66. Kerr has not attempted to use the model to demonstrate impact—let alone calculate damages. Ex. V-1, 296:21-297:1. And Kerr admitted that he could not even estimate the degree to which the stipend has been depressed. *Id.* at 222:10-14. Kerr has not performed any analysis capable of demonstrating that the price-competition model will be usable at trial.

In defense of the price-competition model, Plaintiffs point to benchmarks cited in portions of Kerr's reports, which they contend represent the "first step" towards "calibrating" the model. Opp. 7. But Kerr has not performed any analysis to determine whether his benchmarks are useful either. An expert must take steps to ensure that any benchmark is "truly comparable" to the market he is studying. Areeda & Hovenkamp, Antitrust Law ¶ 392f1. That means the expert must control for "salient factors, not attributable to the defendant's misconduct," that might explain any observed differences

between the relevant market and the benchmarks.  *Blue Cross & Blue Shield United v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998).

Plaintiffs maintain that Kerr satisfied these standards, but they can do so only by mischaracterizing Kerr's reports and testimony.  Plaintiffs claim—without citation—that Kerr's benchmarks allowed him to control for key variables such as "geography, qualifications, and time."  Opp. 20.  Even a cursory review of Kerr's reports and testimony confirms that is not so.

- Geography:  Kerr's reports contain no analysis of whether his benchmark industries ("nannies" and "other childcare providers") differ from au pairs in terms of geographic concentration.  Kerr did not control for differences relating to where childcare workers are employed at all:  he had no idea what percent of childcare workers worked in private homes.  Ex. V-1, 185:6-186:1.

- Qualifications:  Kerr did not control for disparities in qualifications between au pairs and the populations of his benchmarks.  He knew that the benchmarks were better-educated than au pairs and had more experience than au pairs, but imposed no corresponding controls.  Ex. V-1, 196:23-198:16.

- Time: Kerr did not perform any analysis controlling for "time."  Kerr took no steps to control for differences between au pairs and his benchmarks that might be attributable to the amount of the time spent in the same position.  Ex. AJ, 189:16-23.

In fact, as Defendants pointed out in their opening brief, Kerr admitted that neither benchmark could be used to calculate damages or demonstrate impact.  Ex. V-1, 193:17-194:1 ("I'm not using the nanny data as a way of calculating damages."); 190:5-24 ("I can't imagine it ever being done.  This is not something that could be used to do damages . . . .").  Plaintiffs ignore these admissions.  *See* Opp. 19-22.

Plaintiffs spend more time explaining what Kerr could not do than defending what he did.  They protest that identifying a truly similar benchmark "would not be possible."

Opp. 8.  Courts reject arguments of this kind as a matter of course.  "The supposed 'uniqueness' of a market does not justify substituting a guess for careful analysis." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418-19 (7th Cir. 2005).  The failure to identify a reliable benchmark is no excuse for using on a flawed one.  Antitrust Law ¶ 392f1 ("The major difficulty encountered in the use of a yardstick is finding one.").

In their Opposition, Plaintiffs come up with an entirely new proposed benchmark—one that Kerr has never considered or used.  They say that Kerr could have compared the au pair market to itself by contrasting the "before-conspiracy" period (before 2009) with the "after-conspiracy" period (from 2009 forward), but did not do so because he had not yet received the pre-2009 data.  Opp. 8.  This is nothing more than after-the-fact scrambling.  Plaintiffs did not request the pre-2009 data until July 30, 2017—six months after Kerr submitted his opening report and five months after he submitted his rebuttal.  *See* Ex. AK.  Plaintiffs cannot insulate Kerr's opinions from review—or excuse his use of a baseless benchmark—by pointing to the unavailability of information that they sought months after the relevant expert deadlines.

### C.     Kerr's Host-Family Survey Should Be Excluded.

Plaintiffs offer no serious defense of Kerr's survey-design credentials.  Nowhere in their 27-page response do they even recite the applicable standard—that is, whether Kerr has "researched, written about, or opined" on survey design before.  *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013).  At his deposition, Kerr confirmed that he has not authored any articles on survey design, that he is not a member of any professional organizations that focus on survey-design research, that he has never

taken or taught a class focused on survey design, and that he has never been qualified by any Court to testify as a survey-design expert.  Ex. V-2, 343:25-344:2; 344:3-5; 343:13-22; Ex. V-1, 213:14-17.  These admissions demonstrate that Kerr is not qualified to design the host-family survey.[3]  *See Conroy*, 707 F.3d at 1168-69.

Because they cannot defend Kerr's expertise, Plaintiffs retreat to defending the expertise of his assistants.  No matter that Kerr lacked the required qualifications, Plaintiffs insist, for he worked with a consultant whose publicly available CV includes survey-design experience.  Opp. 25.  Plaintiffs cannot muster a single citation for the proposition that an unqualified expert may hide behind the expertise of his assistants.  *See id.*  It was Kerr who designed the host-family survey, and Kerr who signed the affidavit.  It is therefore Kerr, and not his assistants, who must satisfy the requirements of Rule 702.  *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613-15 (7th Cir. 2002) (excluding expert testimony where assistants were not "merely gofers or data gatherers but exercise[d] professional judgment that [was] beyond the expert's ken").

Finally, Plaintiffs suggest that Kerr is qualified because there is no such thing as a "survey design expert."  Opp. 25.  Again, Plaintiffs cite no case for that proposition.  And again, courts that have considered the question have reached the opposite conclusion.  Where an expert designs a survey, he must be an expert in survey design.  *New York v. United Parcel Serv., Inc.*, No. 15-CV-1136 (KBF), 2016 WL 4735368, at *7-

---

[3] Plaintiffs half-heartedly defend Kerr's credentials by observing that he "was on an industry task force for the 1982-84 President's Private Sector Survey on Cost Control." Opp. 25.  They nowhere explain what his role was or how his participation qualifies him as an expert in survey design.  *See id.*

8 (S.D.N.Y. Sept. 10, 2016). When an expert—like Kerr—lacks "any apparent training in survey design methods," any survey he designs should be excluded. *Id.*

Even if Kerr were qualified, the host-family survey still would be inadmissible. The problem of nonresponse bias alone suffices to doom the survey. Because "nonresponse often is not random," Fed. Jud. Ctr. Reference Manual on Scientific Evidence (3d. ed.) at 383, courts universally require that experts take steps to control for and assess whether nonresponse biased a survey's results. *See, e.g.*, *Wallace v. Countrywide Home Loans, Inc.*, No. SACV 08-1463-JST, 2012 WL 11896333, at *4 (C.D. Cal. Aug. 31, 2012) ("[I]t is the survey proponent's burden to assure that the nonresponses are random."). The problem of nonresponse looms large here, for Kerr's survey yielded only an 18% response rate. *See, e.g.*, *Hostetler v. Johnson Controls, Inc.*, No. 3:15-cv-226 JD, 2016 WL 3662263, at *13 (N.D. Ind. July 11, 2016) (non-response bias becomes concerning if the response rate is less than 80%).

Plaintiffs make no attempt to defend the manner in which Kerr accounted for nonresponse bias. *See* Opp. 25-26. Any such attempt would have been futile: Kerr did not even mention the topic in his affidavit. Instead, Plaintiffs resort to caricature, contending that Defendants proposed a bright-line rule requiring an 80% response rate. *Id.* at 25. That mischaracterization is no substitute for the nonresponse analysis Kerr failed to perform. Defendants' charge that Kerr wholly failed to account for nonresponse bias thus stands unrebutted. The host-family survey should be excluded.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, the Court should exclude Kerr's testimony.

Respectfully submitted this 21st day of August, 2017.

Dated:  August 21, 2017

Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane R. Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair**

*s/ Kathryn A. Reilly*
Kathryn A. Reilly (reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Natalie E. West (west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

**Attorneys for Defendants Agent Au Pair,**

11

*Au Pair International, Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair*

*s/ Lawrence D. Stone*
Lawrence D. Stone
(lstone@nixonshefrin.com)
Katheleen E. Craigmile
(kcraigmile@nixonshefrin.com)
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111

*Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair and 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange*

*s/ James E. Hartley*
James E. Hartley
(jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302

*Attorneys for Defendant Cultural Homestay International*

*s/ Lawrence L. Lee*
Lawrence L. Lee, Esq.
(llee@laborlawyers.com)
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700

Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

***Attorneys for Defendants APF Global Exchange, NFP***

*s/ Stephen J. Macri*
Stephen J. Macri
(smacri@putneylaw.com)
Joseph B. Cartafalsa
(jcartafalsa@putneylaw.com)
Robert M. Tucker
(rtucker@putneylaw.com)
John B. Fulfree
(jfulfree@putneylaw.com)
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

*s/ Eric J. Stock*
Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301


***Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America***

*s/ Bogdan Enica*
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

***Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair***

13


*s/ Peggy Kozal*
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey (nhuey@gordonrees.com)
Heather K. Kelly (hkelly@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**

*s/ Martha L. Fitzgerald*
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant EurAuPair Intercultural Child Care Programs**

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

**Attorneys for Defendant InterExchange, Inc.**

*s/ William J. Kelly III*
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

**Attorneys for Defendant USAuPair, Inc.**


*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
1700 Broadway, Suite 2100
Denver, CO 80290-2101
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

**Attorneys for Defendant GreatAuPair, LLC**

15

## CERTIFICATE OF SERVICE

      I hereby certify that on August 21, 2017, I caused to be electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF WILLIAM KERR PURSUANT TO F.R.E. 702** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

                                            *s/ Diane R. Hazel*
                                             Diane R. Hazel