IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ, and
SARAH CAROLINE AZUELA RASCON,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a/ Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a ProAuPair,
20/20 CARE EXCHANGE, INC., d/b/a The International Au Pair Exchange,
ASSOCIATES IN CULTERUAL EXCANGE, d/b/a GoAu Pair, and
GOAUPAIR OPERATIONS, LLC,

    Defendants.

**ORDER DENYING DEFENDANT AUPAIRCARE, INC.'S MOTION TO COMPEL ARBITRATION**

This matter is before the Court on Defendant AuPairCare, Inc.'s Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit. (Doc. # 431.) For the reasons detailed herein, the Motion is DENIED.

## I. BACKGROUND AND PROCEDURAL HISTORY

Defendant AuPairCare, Inc. ("APC") is one of several federally authorized business entities that recruits and places au pairs with host families in the United States pursuant to the J-1 visa program. In brief, this suit arises from allegations that APC and its fellow Defendants conspired to set weekly wages for sponsored au pairs at unlawfully low rates in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, et seq., and the FLSA. The factual background of this dispute has been set forth in greater detail in prior orders, *see* (Doc. ## 240, 569), and will be reiterated only to the extent necessary to adjudicate the instant motion to compel arbitration.

### a) APC

When this suit was initiated in November of 2014, the original complaint did not name as plaintiffs any APC-sponsored au pairs, and the allegations against APC were limited to an antitrust claim brought pursuant to 15 U.S.C. § 1, et seq. Nevertheless, in apparent anticipation of a day when the scope of the suit might expand to include au pairs it had sponsored, APC asserted as an affirmative defense in its answer to the Complaint that "[a]ny alleged disputes between [APC] and the au pairs it has sponsored are subject to mandatory arbitration provisions." (Doc. # 286 at 91.)

In response to discovery requests, APC framed objections with the explicit purpose of preserving a right to assert a mandatory arbitration defense should APC-sponsored au pairs join the suit.  Specifically, in its written responses to Plaintiffs' First Request for Production of Documents and First Set of Interrogatories, APC asserted the mandatory arbitration defense in its first General Objection and in response to each and every individual request and interrogatory:

> Defendant Objects to these requests on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper. <u>AuPaireCare expressly reserves the right to move to dismiss this action and/or compel arbitration.  Nothing in these responses or objections may be deemed a waiver of that right.</u>

(Doc. # 431-3 at 35–44) (emphasis in original).  As part of that discovery, APC produced sample au pair agreements containing the mandatory arbitration provisions.  (*Id.* at 4.) Thereafter, Plaintiffs' counsel propounded a Second Request for Production, requesting "all arbitration agreements that you contend apply to these claims."  (Doc. # 431-4 at 17–18.)  In response, APC reiterated the objections designed to preserve arbitration, and referred Plaintiffs' counsel to the Bates-stamped sample agreements produced in response to the first request for production.  (*Id.*)

On August 15, 2015, Plaintiffs filed a Motion to Amend Complaint.  (Doc. # 329.) The proposed Second Amended Complaint added Juliane Harning and Laura Mejia Jimenez—both APC-sponsored au pairs—as plaintiffs, and alleged, for the first time, a proposed collective FLSA class and sub-class consisting of APC-sponsored au pairs.

3

*See* (Doc. # 321-1). On October 17, 2016, this Court granted the Motion to Amend, and accepted the Second Amended Complaint. (Doc. # 394.)

### b) Harning, Jimenez, and the APC Agreements

In or about August, 2013, Harning signed an APC "Au Pair Agreement." (Doc. # 431-1 at 5-10.) In or about July, 2014, Jimenez signed an APC "Au Pair Agreement" (collectively, the " APC Agreements"). (Doc. # 431-2 at 2–7.) The APC Agreements describe the nature of the relationship between au pairs and host families, the basic requirements to serve as an au pair, the minimum compensation and other benefits to which the au pairs would be entitled from the host families, and other terms and conditions of the program. Both APC Agreements expressly provide that any disputes arising from an APC au pair engagement are subject to mandatory arbitration:

> The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon petition of either party.
>
> . . . The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Court of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.
>
> In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S.

(*Id.*)  The APC Agreements further provide that their "validity, construction, breach, performance and interpretation shall be governed by the State of California, U.S."  (*Id.*)  Both include a final acknowledgement before the signature, which reads:

> Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:
>
> - I am capable of reading and understanding this Agreement in English
> - I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
> - I accept the terms of this entire Agreement and understand that it is legally binding
> - I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
> - No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
> - I have retained a copy of this Agreement for my own records

(*Id.*)  Harning and Jimenez both testified that they read Agreements before signing them, (Doc. # 431-4 at 30–31, 45), but neither understood the meaning of the term "arbitration" (Doc. ## 449-1 at 2, 449-2 at 2).

On September 14, 2016, counsel for APC sent Plaintiffs' counsel a letter raising the mandatory arbitration provisions in its agreements with Harning and Jimenez, and requested that counsel agree to refer the claims related to APC for arbitration.  (Doc. # 431-4 at 25–26.)  Plaintiffs' counsel did not respond.  (*Id.*)

### c)  The Motion to Compel Arbitration

On November 11, 2016, APC filed the instant Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit, seeking enforcement of the mandatory

5

arbitration provisions in the agreements signed by Harning and Jimenez. (Doc. # 431.) Plaintiffs' counsel responded to the Motion on December 5, 2016, arguing that APC waived its right to invoke arbitration by "strategically avoid[ing] arbitration for two years in the hope of getting a clean win on the merits." (Doc. # 449 at 7.) Alternatively, Plaintiffs' counsel argue that the arbitration provisions are unenforceable for procedural and substantive unconscionability. APC filed a reply on December 19, 2016. (Doc. # 453.)

## II. **DISCUSSION**

Both federal law and California law[1] strongly favor the enforcement of arbitration provisions. The Federal Arbitration Act ("FAA") declares and embodies a liberal policy favoring the enforcement of arbitration provisions: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or contraction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described this provision as reflecting both a "liberal federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and the "fundamental principle that arbitration is a matter of contract," *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

---

[1] The parties agree that, because the APC Agreements have California choice of law provisions, it is appropriate to evaluate the enforceability of the arbitration provisions under both federal and California law. (Doc. ## 431 at 8, 449 at 11.)

"California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). "The strong public policy of [California] favoring arbitration as a means of dispute resolution requires courts to indulge every intendment to give effect to such proceedings." *Martinez v. Scott Specialty Gases, Inc.*, 83 Cal. App. 4th 1236, 1246 (2000); *see also Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 686 (2000) ("California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration."); *Cione v. Foresters Equity Serv. Inc.*, 58 Cal. App. 4th 625, 641 (1997) ("A heavy presumption weighs in favor or arbitrability; an order directing arbitration should be granted unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

A court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Hosam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).

With respect to the second issue, "[a]ny doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing Moses H. Cone, 460 U.S. at 24–25). This presumption regarding the scope of arbitrable issues "applies with even greater force" when a broad arbitration clause is at issue. *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999). The Court concludes that, in this case, the scope of the arbitration clause

covers all causes of actions brought against APC, including the FLSA and antitrust claims. The terms of the arbitration provision are broad, encompassing "any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties." (Doc. ## 431-1 at 5-10, 431-2 at 2–7.) Courts interpreting similarly expansive language have broadly construed the range of arbitrable issues. *See P&P Indus.*, 179 F.3d at 871 ("If the allegations underlying the claims touch matters covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them.") (citations omitted); *see also Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1289–92 (10th Cir. 2004); *AW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1461–62 (10th Cir. 1995). For their part, Plaintiffs' counsel, who are silent on the issue of scope, apparently concede that the APC arbitration provisions encompass all claims against APC.

However, with respect to validity, Plaintiffs make two arguments. First, Plaintiffs argue that APC has waived its right to invoke arbitration by failing to raise the issue at an earlier stage of litigation. Second, and in the alternative, Plaintiffs argue that the arbitration provisions are procedurally and substantively unconscionable. The Court will address each argument in turn.

**a) Waiver**

"[T]he right to arbitration, like any other contract right, can be waived." *Reid Burton Constr., Inc. v. Carpenter's Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980). "A party asserting a waiver of arbitration has a heavy burden of proof." *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 466 (10th Cir. 1988). "[I]n

assessing whether that burden has been met, [the Tenth Circuit] gives substantial weight to the strong policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." *Hill v. Ricoh Americas Corp.*, 603 F.3d. 766, 755 (10th Cir. 2010) (internal citation omitted).  Though there is no set rule as to what constitutes waiver of the right to arbitrate, the Tenth Circuit has noted several factors useful in making the assessment:

> (1) whether the party's actions are inconsistent with the right to arbitrate;
> (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate;
> (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay;
> (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings;
> (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and
> (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Peterson*, 849 F.2d at 467–68 (quoting *Reid Burton*, 614 F.2d at 702) (brackets in original).  The Tenth Circuit has also observed that a party need not engage in futile gestures to avoid a claim of waiver of arbitration.  *Id.* at 466.

The gist of Plaintiffs' waiver argument is that APC "strategically avoided arbitration for two years in the hope of getting a clean win on the merits" and, in so doing, foreclosed any opportunity to enforce the arbitration provisions in its au pair agreements.  (Doc. # 449 at 7.)  Plaintiffs also assert that "APC hid its intention to seek arbitration."  (*Id.* at 9.)

9

APC moved for arbitration on November 10, 2016, a little over a month after this Court accepted the Second Amended Complaint, which added for the first time APC-sponsored au pairs as plaintiffs. Essentially, it is the Plaintiffs' position that APC waived its right to arbitrate because it did not assert arbitration at a time when no APC au pairs, and consequently no APC au pair agreements, were implicated in the suit. That argument boggles the mind. Had APC filed a motion to enforce an arbitration agreement based on the hypothetical possibility that one or more current or former APC au pairs might be added to the case, APC would have been seeking an advisory opinion—an idle act beyond this Court's Article III jurisdiction and one which would have no doubt been opposed by the Plaintiffs as premature. Counsel for APC had no obligation to file a futile motion to compel arbitration in order to preserve the right to move for arbitration at a later, appropriate time.

It is especially absurd to suggest that APC in any way concealed its intention to seek arbitration should APC-sponsored au pairs join the suit. As detailed *supra*, at every practicable opportunity, counsel for APC endeavored—almost compulsively—to communicate and preserve arbitration objections.

Applying the guidance set forth by the Tenth Circuit to the particular facts and circumstances of this case, this Court has no trouble concluding that APC did not waive its right to arbitrate. Filing a motion to compel arbitration within one month of the introduction of APC-sponsored au pairs and au pair agreements is not inconsistent with the right to arbitrate—indeed, the timing was perfectly reasonable given that any motion prior to the Second Amended Complaint would have been procedurally and

10

jurisdictionally defective. Nor could a reasonable person construe APC's behavior as an effort to mislead or prejudice the Plaintiffs in this case, who were clearly and repeatedly put on notice that APC would move for arbitration should APC-sponsored au pairs join the suit.

### b) Unconscionability

Under the Federal Arbitration Act, an agreement to arbitrate is "valid, irrevocable and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, under the applicable choice of law provision, California law governs.

Under California law, the unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. *Armendariz*, 6 P.3d at 766–67. "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961). If the contract is adhesive, the court must then determine whether "other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable]." *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 172 (Cal. 1981). "Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the

weaker or 'adhering' party will not be enforced against him. The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.' " *Id.* at 172–73. More recently, California Courts have referred to both the "reasonable expectations" and the "oppressive" limitations as dimensions of the unconscionability inquiry. *See Armendariz*, 6 P.3d at 767.

Unconscionability has a "procedural" and a "substantive" element, and both must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause. *Id.* at 768. "[T]he former focus[es] on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Id.* Although both must be present for a court to refuse to enforce a contract, they need not be present to the same degree. *Id.* In short, the "more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* The party opposing arbitration has the burden of showing the arbitration agreement is both procedurally and substantive unconscionable. *Carmax Auto Superstores Cal. Ltd. Liabl. Co. v.Hernandez*, 94 F. Supp. 3d 1078, 1104 (C.D. Cal. 2015).

Applying the guidance of the California Courts, this Court first concludes that the APC Agreements are adhesive. There can be little dispute on this point. The APC au Agreements were presented both to Harning and Jimenez as a take-it-or-leave-it proposition. The contracts contain blanks for the au pair's name and home city, but are

12

otherwise identical.  Both Harning and Jimenez confirmed that they were not given an opportunity to negotiate terms, (Doc. ## 449-1 at ¶¶ 6–7, 449-2 at ¶¶ 6–7), and counsel for APC essentially concede that prospective au pairs were not permitted to negotiate terms by repeatedly characterizing the arbitration and forum selection clause in each agreement as "mandatory."  *See, e.g.,* (Doc. # 449-3.)  What remains is to determine whether the agreements are infected with sufficient procedural and substantive unconscionability to justify a discretionary refusal to enforce the arbitration provisions.

   *i. Procedural unconscionability*

"Procedural unconscionability addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power."  *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1005 (N.D. Cal. 2015). "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."  *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 805 (Cal. Ct. App. 2005) (quotation omitted).  "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises."  *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016).

  The APC Agreements at issue in this case are unquestionably contracts of adhesion that carry an inherent degree of procedural unconscionability.  However, after considering the nature of the APC Agreements in conjunction with the unique vulnerabilities of the Plaintiffs, the Court perceives a degree of procedural

unconscionability that exceeds what one would reasonably expect from a standard adhesion contract.

When evaluated in context, the APC Agreements are unquestionably oppressive. At the time they first contracted with APC, Harning and Jimenez were 19 and 22-years old, respectively. (Doc. ## 449-1 at 1, 449-2 at 1); *see Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1252 (2006) (finding youth and vulnerability of plaintiffs—aged 21, 19, 17, 16, and 14—contributed to procedural unconscionability of arbitration clause). Both were foreigners, both spoke English as a second language, and neither had experience with contracts or contract law. (Doc. ## 449-1 at 1–2, 449-2 at 1–2); *see Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (finding that the sophistication of the party being asked to submit to arbitration is relevant to the unconscionability analysis). Though both testified that they read the contract before signing, neither understood what the word "arbitration" meant. (Doc. ## 449-1 at 1, 449-2 at 1.) It is beyond dispute that neither Harning nor Jimenez was afforded an opportunity to negotiate terms. Indeed, after Ms. Jimenez indicated that she did not want to sign the contract, an APC representative told her that she "had to." (Doc. # 449-2 at 2.)

The procedural unconscionability of the APC Agreements is compounded by the element of surprise.[2] The arbitration provision is buried at the end of an 82-paragraph,

---

[2] Because this Court concluded that the APC Agreements are oppressive, it need not consider the element of surprise. *See Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 656 (2004) ("Where an adhesive contract is oppressive, surprise need not be shown."). Still, the presence of both oppression and surprise only bolsters this Court's conclusion that the Agreements are infected with a high degree of procedural unconscionability.

14

prolix, form contract, under the exceedingly nondescript header "Other Terms and Conditions."  *Compare, e.g., Pinnacle Museum Tower Assoc. v. Pinnacle Market Dev. (US) LLC*, 282 P.3d 1217, 1232 n.12 (Cal. 2012) (finding no surprise where the arbitration provisions of an agreement appeared under "bold, capitalized, and underlined" captions) *with Higgins*, 140 Cal. App. 4th at 1252–53 (finding procedural unconscionability where "[i]n contrast to several other paragraphs, no text in the arbitration provision is highlighted. No words are printed in bold letters or larger font; nor are they capitalized.").  Moreover, the arbitration clause does not explain, in plain English or otherwise, that it purports to waive the au pair's rights to access to the U.S. court system, trial by jury, or appeal.

In light of the oppressive circumstances surrounding the formation of the APC Agreements, the degree to which the arbitration provisions were buried, and the extreme disparity in the bargaining power between the parties, this Court concludes that the APC Agreements are significantly undermined by procedural unconscionability.

    *ii. Substantive unconscionability*

Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.  *Pinnacle Museum Tower Assn. 0076. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012).  A contract term is not substantively unconscionable merely because it gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience.  *Id.* (citations omitted).

Plaintiffs argue that the APC Agreements are substantively unconscionable for three reasons: (1) the arbitration provisions contain an improper fee shifting mechanism; (2) the arbitration provisions give APC the exclusive right to choose the arbitration provider; and (3) the arbitration provisions require that the dispute be decided in San Francisco.

As applied to the facts of this case, Plaintiffs' first argument is a red herring. Although the APC Agreements do contain a fee shifting mechanism that permits the prevailing party "to recover reasonable attorney's fees and costs, including but not limited to the costs or arbitration," the fee provision applies only to "any action . . . brought for breach of [the APC] Agreement."  (Doc. # 431-1 at 10.)  The action APC is now seeking to arbitrate was brought for violations of the FLSA and Sherman Act, not breach of the APC Agreements.  Because the fee shifting provision would not apply in an arbitration of this action, this Court need not consider it.

With respect to the second argument, the Court agrees that the provision vesting APC with the right to unilaterally select an arbitrator is substantively unconscionable.  In *Magno v. College Network, Inc.*, the California Court of Appeals considered an arbitration provision which allocated to the drafting party a right to unilaterally select the arbitrator.  1 Cal. App. 5th 277, 290 (Ct. App. 2016).  The Court concluded that the provision was unconscionable, in spite of a clause that permitted the opposing parties to withhold consent, so long as consent was not "unreasonably withheld."  *Id.*

The provision at issue in this case is more troublesome.  Though it calls for the appointment of a "neutral" arbitrator, there is no mechanism through which Harning and

Jimenez could withhold consent, reasonably or otherwise. In practice, APC—by fiat—would name an arbitrator, leaving Harning and Jimenez with no opportunity to oppose the pick, let alone confirm the arbitrator's neutrality. Under California law, "an adhesive agreement that gives the employer the right to choose a biased arbitrator is unconscionable." *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 207 (Cal. 2013). Because the arbitration provision, in function if not form, allocates to APC the unilateral and unreviewable right to select a biased arbitrator, the provision is substantively unconscionable. *Magno*, 1 Cal. App. 5th at 287 (citing *Sanchez v. Valencia Holding Co., LLC,* 353 P.3d 741

Finally, the Court concludes that the forum selection clause requiring any dispute to be decided by arbitration in San Francisco is another indicium of unconscionability. "[F]orum selection clauses are valid and should be given effect unless enforcement of the clause would be unreasonable." *Intershop Commc'ns, AG v. Superior Court*, 104 Cal. App. 4th 191, 196 (2002) (citing *Smith, Valentino & Smith, Inc. v. Superior Court*, 551 P.2d 1206 (Cal. 1976)). However, if the "place and manner" restrictions of a forum selection provision are "unduly oppressive," *see Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909–10 (2001), or have the effect of shielding the stronger party from liability, *see Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165, 1177 (N.D.Cal.2002), then the forum selection provision is unconscionable. California Courts have also found unconscionability in forum selection clauses where they "seek to negate the reasonable expectations of the nondrafting party." *Magno*, 1 Cal. App. 5th at 287 (citing *Sanchez v. Valencia Holding Co., LLC,* 353 P.3d 741, 748 (Cal. 2015)).

There is nothing in the record to suggest Harning or Jimenez could have reasonably expected that they would be required to resolve any disputes in San Francisco, California. Harning and Jimenez are, by definition, foreign nationals. They prepared their APC applications in their respective home countries. (Doc. # 379 at 89-93.) Prior to placement, both attended a mandatory training session in New Jersey. (*Id.*) Harning did two stints as an APC au pair—once in Michigan, and once in Virginia. (*Id.*) Jimenez was placed with a family in Pennsylvania. (*Id.*) The only apparent connection this case has to the state of California is that APC is headquartered there, and there is nothing in the record to suggest that either au pair was aware of that fact.

The arbitration provision is silent with regard to whether Harning or Jimenez would be permitted to appear by phone or video. Even assuming *arguendo* that they would be allowed to participate electronically, they are left with a Hobbesian choice: incur significant expenses to pursue their claims in an unreasonable and inconvenient forum or appear remotely, foregoing the ability to testify in person, while APC participates in proceedings in its own backyard. Absent reasonable justification for this arrangement, "arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing [the stronger party's] advantage." *Armendariz*, 6 P.3d at 692. "Arbitration was not intended for this purpose." *Id.*; *see also Comb*, 218 F.Supp. 2d 1165, 1177 ("Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes.").

The Court perceives substantive unconscionability in both the provision vesting APC with the unilateral authority to pick an arbitrator and the forum selection clause. Considered in conjunction with the procedural unconscionability infecting the core of the APC Agreements, the arbitration provisions shock the conscience of this Court, and are unenforceable.

### iii. Severability

If an agreement to arbitrate is unconscionable, "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." *Magno*, 1 Cal. App. 5th at 291. "In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever unless the agreement is 'permeated' by unconscionability." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 802 (2012).

An agreement to arbitrate is considered "permeated" by unconscionability where it contains more than one unconscionable provision. *Armendariz*, 6 P.3d at 696. "Such multiple defects indicate a systematic effort to impose arbitration on [the nondrafting party] not simply as an alternative to litigation, but as an inferior forum that works to the [drafting party's] advantage." *Id.* at 697. An arbitration agreement is also deemed "permeated" by unconscionability if "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* If "the court would have to, in effect, reform the contract, not through severance or restriction,

but by augmenting it with additional terms," the court must void the entire agreement. *Id.*

The Court concludes that the APC Agreements are so permeated with unconscionability that severance or reformation is inappropriate. The APC Agreements contain more than one substantively unconscionable provision. Moreover, the APC Agreements are, at their very core, infected with a degree of procedural unconscionability that renders them irredeemable.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant AuPairCare, Inc.'s Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit (Doc. # 431) is DENIED.

DATED:  September 21, 2017                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge