# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

## PLAINTIFFS' MOTION TO COMPEL AND FOR RELIEF UNDER FEDERAL RULES OF CIVIL PROCEDURE 26, 37, AND 45

---

## CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCivR. 7.1(A)

Pursuant to D.C.Colo.LCivR. 7.1(a), Plaintiffs conferred about this Motion with counsel for all Defendants by email and telephone from September 13 to September 19, 2017.  On September 21, 2017, the Court held an informal discovery conference.  The dispute could not be resolved.

\*                \*                \*

i

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................1

FACT BACKGROUND ......................................................................................2

LEGAL STANDARD.........................................................................................4

ARGUMENT ...................................................................................................5

I.      DEFENDANTS CANNOT ESTABLISH WORK PRODUCT PROTECTION. ............. 5

II.     THE ATTORNEY-CLIENT PRIVILEGE CANNOT APPLY......................................... 7

III.    THERE IS NO SUCH THING AS A GOVERNMENT-ADVOCACY PRIVILEGE....... 9

IV.     ANY PRIVILEGE OR PROTECTION WAS WAIVED.................................................. 10

        A.      Defendants And The Alliance Waived Any Privilege Or Protection Through
                Third-Party Disclosure...........................................................................10

        B.      Defendants Also Waived Privilege/Protection Through Their Litigation
                Conduct.................................................................................................12

V.      THE COMMON-INTEREST DOCTRINE DOES NOT SAVE DEFENDANTS........... 12

VI.     THERE IS NO JOINT DEFENSE PRIVILEGE BECAUSE THE ALLIANCE IS NOT A
        DEFENDANT AND DEFENDANTS HAVE NOT ESTABLISHED THE EXISTENCE
        OF A JOINT DEFENSE AGREEMENT. ...................................................... 13

VII.    DEFENDANTS' SELECTIVE PRIVILEGE CLAIMS ARE INTERNALLY
        INCONSISTENT AND UNPRINCIPLED . ................................................... 14

CONCLUSION.................................................................................................15

## PRELIMINARY STATEMENT

Defendants assert the attorney work product doctrine, attorney-client privilege, and a joint-defense privilege over documents produced by the Alliance for International Exchange (the "Alliance"). The Alliance is a trade organization that existed before this litigation and has continued its business through the litigation. The Alliance is not a party to this case.

Plaintiffs served a Rule 45 subpoena on the Alliance. After months of delay and excuses, the Alliance made a 77-document initial production. Almost three weeks later—on the night before the deposition of the Alliance's chairman—Defendants sent a letter demanding that Plaintiffs return or destroy the entire Alliance production.

The majority of the documents at issue appear to be an Alliance staffer's handwritten contemporaneous notes of communications to which the Alliance and various Defendants were party. The production also includes some non-legal memoranda and emails.

Defendants do not claim that any lawyer was directly involved in creating the documents or in the meetings they record. The Alliance is not a joint defendant, and regardless Defendants have never identified any "joint defense"-style agreement with the Alliance. Moreover, the unredacted portions of the notes show that Defendants were not communicating for the purpose of seeking legal advice. Nor does anything suggest that the meetings memorialized by the notes took place at the direction of counsel or subject to an attorney's supervision or control. There is every indication that the documents concern Defendants' efforts to further their business interests, to discuss the history and future of their conspiracy, and identify ways that legislators might be convinced to do them favors.

Despite identifying no colorable privilege claim, Defendants argue that the common-interest privilege protects their lawyer-free discussions with the Alliance. The argument seems to be (1) that the Alliance furthers Defendants' interest (as trade groups do) and (2) Defendants satisfy the standard because they identified a colloquially "common interest." That is a word game, not legal argument.

Defendants' privilege theories have no discernable bounds. At times Defendants have

1

argued that any communications they can connect to the claims in this litigation must be attorney work product (or attorney-client privileged information) because this litigation is significant for their businesses and they happen to employ lawyers who handle the litigation.  As for "common interest," Defendants have produced documents and testified about Alliance communications throughout this litigation without objection.  And comparing the portions of the notes that Defendants chose not to redact with Defendants' arguments about their redactions indicates that Defendants are using "privilege" as a sword and a shield:  By Defendants' lights, much of the material they chose not to redact should be redacted, while some of their privilege log entries remain inexplicable.

Finally, upon producing the disputed documents, the Alliance's counsel expressly indicated that the documents had been reviewed for privilege.  Yet two days after Defendants served their letter claiming privilege, new counsel for the Alliance contacted Plaintiffs and explained that the prior attorney was gone, and subsequently the Alliance's view on privilege changed to mirror the Defendants'.

Defendants' incredible privilege assertions have forced Alliance depositions to occur after the expert report deadline, and are causing more production delays and disputes with the Alliance.  Plaintiffs therefore request that Defendants be ordered to pay all fees and costs associated with this dispute.[1]

## FACT BACKGROUND

Plaintiffs served an initial subpoena on the Alliance on or about January 30, 2017, Vald. Decl. Ex. 1,[2] followed by an amended subpoena on the Alliance on May 25.  Vald. Decl. Ex. 2. On June 6, attorney John Hathway served objections on the Alliance's behalf.  Vald. Decl. Ex 3. That day, counsel for Plaintiffs emailed Mr. Hathway to schedule a meet and confer.  Vald. Decl. Ex. 4.

---

[1]      If necessary, Plaintiffs may later seek relief that will put Plaintiffs' expert disclosures in the same position as they would have been but for this dispute.

[2]      References to "Vald. Decl." refer to the Declaration of Juan P. Valdivieso filed in support of the Motion and the attached exhibits.

The Alliance deferred conferring until June 22, *see* Vald. Decl. Exs. 5 & 6, at which time Plaintiffs and the Alliance started discussing potential privilege claims.  Vald. Decl. ¶ 9.  After a delay of two more months, the Alliance made a 77-page document production on August 23 (the "Alliance documents").  Vald. Decl. Ex. 7 & 8.  The production cover letter distinguished the production from "<u>additional</u>" documents that the Alliance had not finished reviewing:

> Enclosed <u>please find documents responsive</u> to your subpoena. We also have a large volume of <u>potentially responsive documents but which have taken more time to get through</u> than expected.
>
> Accordingly, in an effort to get you those documents as soon as practicable, I propose that we enter into a clawback agreement, <u>such that we could produce additional documents now while preserving our rights to clawback</u> any documents which are determined to be privileged or otherwise confidential. Let me know if you agree. [ . . . ]

Vald. Decl. Ex. 7 (emphasis added).  Plaintiffs immediately offered a clawback agreement. Vald. Decl. Ex. 9.  The Alliance never responded.  Vald. Decl. ¶ 13.

The next day, on August 24, Plaintiffs deposed an executive from Defendant EurAuPair. Vald. Decl. Ex. 10.  Defendants permitted use of the Alliance documents subject to a stipulation that use in the deposition did not constitute waiver.  *See* Vald. Dec. Ex. 11 (Hayes Dep. Tr. 190:6-11).  Plaintiffs heard nothing further about the Alliance documents for almost three weeks, and the Alliance did not produce any additional documents let alone complete its production on August 23, as agreed.  *See* Vald. Decl. Ex. 12 at 2 (memorializing agreement) & ¶ 13.

Defendants' next communication about the Alliance documents came at 8:00 p.m. the night before the deposition of Alliance Chairman and Defendant AIFS CEO William Gertz on September 14.  At that time, Defendants demanded immediate return or destruction of the entire Alliance production.  Vald. Decl. Ex. 14.  Because of the demand for immediate sequestration of all documents produced by the Alliance, Plaintiffs were unable to question Mr. Gertz about them and held open his deposition pending resolution of this dispute.  Vald. Ex. 15 (Gertz Dep. Tr. 209: 15-21).

By September 15, the Alliance had new counsel.  Vald. Decl. ¶ 20.  The Alliance's

counsel has been well informed of Defendants' privilege claims and the proceedings before this Court.  In fact, Defendants and the Alliance have all represented that the Alliance asserts the same privilege claims as the Defendants.  Vald. Decl. Exs. 16 at 2 & 17.[3]

Defendants' privilege log, attached as **Exhibit A** to the Valdivieso Declaration, identifies the privilege claims that Defendants make (on both their own behalf and on the Alliance's behalf).  Most entries do not specify the actual participants in the underlying communications or the documents' creation.  Several just say "Unknown" persons received allegedly privileged materials.  The privilege claim descriptions contain such convoluted and tenuous entries as:

> Draft memorandum concerning regulatory advocacy strategy informed by litigation posture and potential legal consequences.

Vald. Decl. Ex. A, at 2.  Other entries concede that the redacted portions constitute waiver because they discuss "legal advice in connection with regulatory interpretation and litigation" with nonlawyer nonparties.  Vald. Decl. Ex. A, at 1-3.

## LEGAL STANDARD

"[F]ederal courts narrowly construe *all* privileges, whether of constitutional, common-law, or statutory origin."  *Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990) (emphasis added); *see also United States v. Nixon*, 418 U.S. 683, 710 (1974) ("exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.").  The party asserting privilege bears the burden to show that the privilege applies.  *Plaza Ins. Co. v. Lester*, No. 14-CV-01162-LTB-CBS, 2015 WL 3528336, at *5 (D. Colo. June 4, 2015).  The party asserting privilege also bears the burden to establish non-waiver.  *See Gallegos v. Safeco Ins. Co. of Am.*, No. 14-CV-01114-WJM-MJW, 2015 WL

---

[3]     The Court at the preliminary discovery conference expressed concern that the Alliance might hold a privilege that does not belong to the Defendants, or that there could be an issue with Defendants' standing to litigate the issue given the Alliance's involvement.  By joining in the Defendants' arguments and making none of its own, the Alliance confirms that only the Defendants' claims matter here.  Further, the Alliance is not an attorney or firm that could hold a work product claim.  The Alliance never sought legal counsel for Defendants, and no one has suggested that the Alliance's production concerns advice or work product created for the Alliance itself.  Finally, Plaintiffs note that all parties agreed at the informal discovery conference that this Court could resolve the dispute.

1009247, at *2 (D. Colo. Mar. 4, 2015).  The party claiming privilege must meet its burden with a "clear showing" and "precise reasons."  *See Plaza Ins. Co.*, 2015 WL 3528336, at *5.

A district court may impose a monetary sanction, pursuant to its inherent powers, upon a finding of bad faith conduct, i.e. conduct that was "motivated by improper purposes such as harassment or delay."  *Lobato v. Ford*, No. CV.A. 05-CV-01437LTB, 2007 WL 3342598, at *3 (D. Colo. Nov. 9, 2007).  The Court also has the power under Rule 37 to "require the party or deponent whose conduct necessitated [a] motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

<u>**ARGUMENT**</u>

# I.    DEFENDANTS CANNOT ESTABLISH WORK PRODUCT PROTECTION.

The "uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)" governs all work product claims in federal court.  *Frontier Ref., Inc. v. Gorman-Rupp Co*., 136 F.3d 695, 702 n.10 (10th Cir. 1998).  The doctrine protects documents that are "prepared in anticipation of litigation or for trial by or for [a] <u>party</u> or its representative."  Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).  The doctrine exists to shield attorneys' mental impressions and work undertaken in anticipation of litigation at attorneys' direction or control.  Thus, work product "only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation."  *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Intrawest ULC*, No. 13-CV-00079-PAB-KMT, 2015 WL 5047635, at *1 (D. Colo. Aug. 27, 2015) (Tafoya, J.).  By contrast, documents "prepared in the ordinary course of business . . . are not protected as work product unless the proponent of the protection demonstrates that the documents would not have been created 'but for' the prospect of litigation."  *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-02868-MSK-KMT, 2014 WL 3732943, at *5 (D. Colo. July 29, 2014) (Tafoya, J.).  "The party seeking to invoke work product immunity bears the burden of establishing that it applies."  *Arkansas River Power Auth. v. The Babcock &*

*Wilcox Co.*, No. 14-CV-00638-CMA-NYW, 2016 WL 192269, at *4 (D. Colo. Jan. 15, 2016) (citing *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984)).

Defendants fail to meet their burden. Plaintiffs pointed out this deficiency, Vald. Decl. Ex. 18 at 1, but Defendants never identified an attorney or an attorney's agent involved with the creation of the documents. *See Kurlander v. Kroenke Arena Co., LLC*, No. 16-CV-02754-WYD-NYW, 2017 WL 3084473, at *4 (D. Colo. July 20, 2017) ("As an initial matter, Defense counsel did not author the emails, and the emails do not constitute correspondence exchanged between Defense counsel and [defendant] in preparation for trial."). After pointing the deficiency out, Defendants provided a privilege log, which invokes "work product" as the basis for withholding no less than fifteen times, but nowhere identifies any attorney or agent involved. Vald. Decl. Ex. A. Instead, with two exceptions where Defendants are the speaker/author, the only other author identified is a non-attorney staffer at the Alliance, a third party with "no relationship, such as those identified in Rule 26(b)(3), that justifies the extension of the work product doctrine." *Kurlander*, 2017 WL 3084473, at *5.[4] Defendants cannot argue that the Alliance is their "agent" as used in the Rule 26. *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179 (10th Cir. 2013). Defendants would need to demonstrate that the Alliance stands "in the legal shoes of the party" such that it is "entitled to the same work-product protections as the party itself." *Id.* at 1184. The Alliance is not an attorney or law firm, and it was not "acting in any type of legal agency capacity" for Defendants nor did it "ha[ve] the authority to act" on Defendants' "behalf for purposes of this litigation when" it authored the documents at issue. *See President & Fellows of Harvard Coll. v. Elmore*, No. CV 15-472 RB/KK, 2016 WL 7508832, at *2 (D.N.M. Apr. 13, 2016) (citing *Republic of Ecuador*, 735. F.3d at 1184).[5]

---

[4]    Defendants' privilege log repeatedly identifies "Lisa Hines, Alliance / unknown" or "Alliance staff" as the author of many entries. Vald. Decl. Ex. A, at rows 1, 4, 12 & 13.

[5]    To the contrary, the Alliance appears to make minimal use of attorneys. *See* Vald. Decl. Ex. 15 (Gertz. Dep. Tr. 194:5-10) ("Q. Does the Alliance have a general counsel? A. It has, like, a guy. I know from a budget prospective, there is not a lot of money budgeted for legal, I don't know the firm, I didn't meet the lawyer, I don't know.").

Nor can Defendants show that Alliance documents were prepared in anticipation of litigation or trial. *Nat'l Union Fire*, 2015 WL 5047635, at *1 (noting that work product doctrine applies "only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation.") (internal quotations and citation omitted).

Finally, the attorney work product doctrine, as embodied in Fed. R. Civ. P. 26, by its very terms applies only to "*parties*"; non-parties like the Alliance have no basis to assert the doctrine – and Defendants have no basis to do so on the Alliance's behalf. *See Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 539 (D. Kan. 1989) ("Moreover, work product status does not apply to documents submitted to or received from a third party.").[6]

## II.   THE ATTORNEY-CLIENT PRIVILEGE CANNOT APPLY.

"The attorney-client privilege protects from discovery communications made in confidence between the client and the attorney." *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 635 (D. Colo. 2012) (citing *EEOC v. Outback Steakhouse of Florida*, 251

---

[6]     Even assuming some work product privilege could apply, Plaintiffs can overcome the privilege by demonstrating "substantial need for the materials to prepare its case" and that they "cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Thane*, 2017 WL 3157966, at *8 (citing Fed. R. Civ. P. 26(b)(3)(A)); *see also Nevada v. J–M Manufacturing Company, Inc.,* 555 Fed. Appx. 782, 785 (10th Cir. 2014). Here, there is substantial need because the Alliance documents provide information about meetings and phone calls central to Plaintiffs' allegations, which is otherwise unattainable. As the Alliance production documents indicate, the Alliance is where Defendants meet and conspire. *See, e.g.*, Vald. Decl. Ex. 8 at ALLI000018 (reflecting that "Bill" (we believe to be Mr. Gertz) stated, "50 different wages won't work . . . we cannot deviate from this."); *see also* Vald. Decl. Exs. 20 (expressing concern over "smaller competitors"), 21, 22 (discussing inviting them to an Alliance pre-meeting so they can "see how we work together."). Moreover, in deposition after deposition, defense witnesses have repeatedly denied having discussions amongst themselves about the conspiracy's subject matter, or professed not to recall anything about Alliance meetings, calls, or other participation. Defense witness amnesia subsides only when an Alliance-related document is presented. *See, e.g.*, Vald. Decl. Exs. 25 & 26 (Kapler Dep. Tr. 144:16-145:2; 146:13-152:4 & Ex. 12) (failing to recall meeting with Department of State where *au pair* wages and hours were discussed, but once shown document recollection was refreshed) & 11 (Hayes Dep. Tr. 196:7-12) (confirming did not have any independent recollection of any conference calls with other sponsors on which the *au pair* stipend was discussed apart from the Alliance documents); *see also Carolan v. New York Tel. Co.*, No. 83 CIV. 8308 (JMC), 1984 WL 368, at *4 (S.D.N.Y. May 17, 1984) ("It has repeatedly been recognized that a witness's memory long after the events in question is not nearly as reliable as his recollection at or near the time of the event, and this advantage of contemporaneous statements by itself can constitute sufficient justification for disclosure of such statements."). Thus, there is substantial need, at the very least, to refresh witness recollection.

F.R.D. 603, 610 (D. Colo. 2008)) (Tafoya, J.).  To qualify for the privilege, a "communication between a lawyer and client must relate to legal advice or strategy *sought by the client*."  *Id.* (citing *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (emphasis in original)).  "[A]ttorney-client communications in the presence of a third-party not the agent of either are generally not protected by privilege."  *Id.* at 637 (citation omitted).  Finally, the "party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability and the lack of waiver of any privilege."  *Id.* at 635 (citing *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999)).[7]

Defendants failed to identify an attorney involved in the communications or that the communications were made for the purpose of obtaining legal advice.  Defendants privilege log invokes the privilege nine times, without providing any indications that attorneys (or advice) were even involved in the communications.  Vald. Decl. Ex. A, at rows 1-4, 6-7, 10-11, 15.  Four entries in the log go so far as to claim privilege over communications between Alliance staff and "unknown" speakers or recipients.  *Id.*at rows 1, 4, 12-13.

Defendants' privilege log puts this case on all fours with *Running Foxes Petroleum, Inc. v. Nighthawk Prod. LLC*, No. 14-CV-01466-MSK-MJW, 2015 WL 9312097 (D. Colo. Dec. 23, 2015).  There defendants refused to produce to plaintiff certain legal opinions created by outside counsel regarding a disputed lease.  *Id.* at *3.  Plaintiff argued that privilege had been waived because defendant voluntarily shared them with a third-party marketing agency.  *Id.*  Defendant insisted that no waiver had occurred because the third-party agency was an "independent contractor" working on its behalf to promote its interests.  The court rejected defendant's position, reasoning that defendant's "transfer of those opinions to [the marketing agency] had nothing to do with its representation by its attorney in preparing them."  *Id.* at *5.  Moreover, the

---

[7]     Where, as here, a case has both federal and state law claims under the Court's pendent jurisdiction, the federal law of privilege applies even if the discovery sought is also relevant to the state law claims.  *See Dataworks, LLC v. Commlog LLC*, No. 09-CV-00528-PAB-BNB, 2011 WL 66111, at *1 (D. Colo. Jan. 10, 2011) (citing *Atteberry v. Longmont United Hospital*, 221 F.R.D. 644, 646–47 (D. Colo. 2004)); *see also Record v. Healthone of Denver, Inc.*, No. 10-CV-03106-REB-MJW, 2011 WL 2115823, at *4 (D. Colo. May 26, 2011).

court noted that there had been "no showing that [the marketing agency] acted as the Defendant's agent in dealing with Defendant's attorney." *Id.* The same is true here. There is no showing that the Alliance was acting as some legal agent for any of the Sponsors, nor did the transfer of purportedly privileged information to the Alliance have anything to do with the Sponsors' representation by their separate attorneys.

## III.  THERE IS NO SUCH THING AS A GOVERNMENT-ADVOCACY PRIVILEGE.

Six privilege log entries refer to "regulatory advocacy" that Defendants contend is somehow in connection with this litigation. Vald. Decl. Ex. A, at rows 2-4, 8-9, 14-15. Setting aside all the foregoing issues and the fact that Defendants' communications with a government entity are third-party communications that cannot be privileged, Defendants' theory still makes no sense. Plaintiffs' research indicates that the Tenth Circuit has never suggested that such a federal privilege exists, and the only case even to approach the issue has been criticized but never followed so far as Plaintiffs can determine.[8]

At any rate, Defendants' businesses necessarily involve relationships with governmental bodies. Their businesses do not become protected merely because Defendants have built businesses that take advantage of a government program. To the contrary, Defendants have primarily private, business purposes for such communications. In these circumstances, documents or communications that reflect both legal advice or attorney work product, and non-legal advice and non-attorney work product (such as discussions about legislative strategy) to be protected, "[l]egal advice must predominate." *Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 667 (D. Kan. 2007) (attorney-client privilege); *see also Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kan. 1997) (for work product doctrine to apply the "primary or

---

[8]      *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1158–59 (D. Kan. 2010) (noting that only one case - *Heartland Surgical Specialty Hosp., LLC v. Midwest Div.*, Inc., No. 05-2164-MLW-DWB, 2007 WL 852521, at *1 (D. Kan. Mar. 16, 2007) – arguably "presumed prima facie privilege with regard to trade association internal lobbying and legislative activities," but in light of policy that privileges and weight of authority it would be contrary to law if [Magistrate Judge's order] presumed that internal trade association communications with regard to legislative and lobbying . . . are prima facie privileged under the First Amendment").

9

motivating purpose for the preparation of the document must be to assist in pending or anticipated litigation.").

IV.     **ANY PRIVILEGE OR PROTECTION WAS WAIVED.**

It "is well-settled that when a client voluntarily discloses privileged communications to a third-party, the privilege is waived." *Roe*, 281 F.R.D. at 637; *see also Silverstein v. Fed. Bureau of Prisons*, No. CIV.A07CV02471PABKMT, 2009 WL 4949959, at *9 (D. Colo. Dec. 14, 2009) ("The Tenth Circuit recognizes that production of work-product material during discovery waives a work-product objection." (citing *Grace United Methodist Church v. Cheyenne*, 427 F.3d 775, 801–02 (10th Cir. 2005)). A waiver may be express – "i.e., a party may affirmatively consent to disclosure of the information" – or implied through conduct. *Gebremedhin v. Am. Family Mut. Ins. Co.*, No. 113CV02813CMANYW, 2015 WL 4272716, at *5 (D. Colo. July 15, 2015), *objections overruled*, No. 13-CV-02813-CMA-NYW, 2015 WL 12967849 (D. Colo. Aug. 18, 2015) (Arguello, J.). The "burden of showing that the privilege has not been waived remains with the party claiming the privilege." *Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-CV-00587-BNB-KMT, 2014 WL 943115, at *9 (D. Colo. Mar. 10, 2014) (Tafoya, J.).

A.     **Defendants And The Alliance Waived Any Privilege Or Protection Through Third-Party Disclosure.**

Assuming (counterfactually) that the communications in the Alliance documents could be covered by the work product or attorney client doctrines, any such privilege or protection would have been waived when Defendants knowingly and voluntarily disclosed the information to a non-party, the Alliance. *Grace*, 451 F.3d at 668 (10th Cir. 2006). Defendants' privilege log repeatedly indicates that they knowingly and willingly discussed supposed legal advice in the presence of Alliance staff. Vald. Decl. Ex. A, at rows 1, 4, 6-7, 10, 15. Disclosure to the Alliance made it likely that the information would get to the Plaintiffs because it is only logical given the allegations in the Complaint that the Alliance provided Defendants with the opportunity to collude, SAC ¶¶ 129-133, that Plaintiffs would serve the Alliance with a third party subpoena for the production of documents relating to Defendants' antitrust conspiracy. *See*

*Larson v. One Beacon Ins. Co.*, No. 12-CV-03150-MSK-KLM, 2013 WL 2477150, at *8 (D. Colo. June 10, 2013) ("Unlike the attorney-client privilege, where voluntary disclosure of a privileged communication to a third party always waives that privilege, waiver of work product is limited to disclosures that are likely to fall into an adversary's possession.") (internal quotations and citation omitted).  Indeed, prior to a call with Defendants, Mr. McCarry, the Executive Director of the Alliance, indicated it would be "inappropriate" to discuss the litigation, which makes sense if he knew the conversation would not be privileged.  *See* Vald. Decl. Ex 19.

In any event, the Alliance further waived any protection that could have remained when producing the documents to Plaintiffs on August 23, 2017.  When Mr. Hathway produced the Alliance documents on August 23, he indicated that he needed additional time to review a "large volume of potentially responsive documents" he had collected, but "in an effort to get [Plaintiffs] those documents as soon as practicable," he proposed entering "into a clawback agreement" for those different, "additional" documents.  Vald. Decl. Ex. 7.  *Cf. Silverstein v. Fed. Bureau of Prisons*, No. CIV.A07CV02471PABKMT, 2009 WL 4949959, at *11 (D. Colo. Dec. 14, 2009) (finding waiver and noting, "This is not a case where the questioned document was part of a larger production which went unnoticed by the producer to the opposition party.").  The Alliance's new counsel wants to change its position, but the Alliance remains bound by its prior counsel's conduct and statements.  *See Security Nat'l Bank of Enid, Okl. v. John Deere Co.*, 927 F.2d 519, 520 (10th Cir. 1991) ("[I]t is a fundamental principle of our representational legal system . . . that a party acts through chosen counsel, whose carelessness or ignorance, therefore, generally does not constitute grounds for relief for his client."); *see also Lariviere, Grubman & Payne, LLP v. Phillips*, No. 07-CV-01723-WYD-CBS, 2011 WL 650001, at *6 (D. Colo. Feb. 11, 2011) ("new counsel are bound by the representations that were made by [party] through [its] prior counsel.") (internal quotations and citation omitted).[9]

---

[9]    The Alliance has never contended that the previous attorney engaged in positive misconduct such that his actions cannot be attributed to the Alliance.  Instead, the Alliance has threatened to file duplicative and wasteful parallel litigation in the D.C. District Court unless

11

**B.    Defendants Also Waived Privilege/Protection Through Their Litigation Conduct.**

"In certain cases, a party may waive privileges by its conduct." *Arkansas River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 14-CV-00638-CMA-NYW, 2015 WL 4031846, at *5 (D. Colo. June 30, 2015). A party is required to "take reasonable precautions against disclosure of privileged documents and to take reasonable and immediate actions when a disclosure of an otherwise privileged document is discovered." *Galena*, 2014 WL 943115, at *9 (internal quotations and citation omitted).

Here, Defendants waived any claim to privilege by delaying over three weeks and waiting until 8:00 p.m. the night before a 10:00 a.m. deposition of the Alliance Chairman to notify Plaintiffs of their objections. The timing is suspect, and it disrupted deposition preparation and proceedings.[10]

**V.    THE COMMON-INTEREST DOCTRINE DOES NOT SAVE DEFENDANTS.**

The common interest doctrine serves as an exception to the general proposition that a party waives attorney client privilege or work product protection over material disclosed to a third party. *See Roe*, 281 F.R.D. at 638. For the common interest doctrine to apply, it "must be established that the materials fall within the ambit of either the attorney-client privilege or the qualified immunity afforded to work product." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 250 F.R.D. 575, 578 (D. Colo. 2007). As discussed above, Defendants have failed to show that either the attorney client privilege or the work product doctrine applies to the Alliance documents.

---

Plaintiffs in this case drop the foregoing argument. Vald. Decl. Ex. 17. Since the Alliance has confirmed that it joins Defendants' arguments without addition or modification, any such filing would serve no legitimate purpose and would properly be transferred to this Court. Fed. R. Civ. P. 45(f). Plaintiffs will not object if the Alliance seeks to participate in this motion's proceedings.

[10]    Defendants also waived privilege at the deposition of William Gertz, during which Mr. Gertz testified that he had reviewed Alliance handwritten notes in preparation for his deposition. *See* Vald. Decl. Ex. 15 (Tr. 12: 15-21) ("Q. My question was, so the only handwritten notes that you remember reviewing in preparation for today's deposition were the handwritten notes that were taken concurrently with the Alliance meeting, is that correct? A. Yes."); *N. Nat. Gas Co. v. Approximately 9117.53 acres in Pratt, Kingman, & Reno Ctys., Kan.*, 289 F.R.D. 644, 651–52 (D. Kan. 2013).

Moreover, common interest is a narrow doctrine that applies "only when the nature of the interest at issue is identical, not similar." *Gebremedhin*, 2015 WL 4272716, at *6 (internal quotations and citations omitted). It "is designed to protect communications between co-defendants or co-litigants." *Roe*, 281 F.R.D. at 638. Defendants have not articulated how their interests are identical to the Alliance's, which is a trade group with broader interests than the au pair program. *See In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2013 WL 4781035, at *2 (D. Kan. Sept. 5, 2013) (holding doctrine inapplicable where defendant and third party did not "align" where one had an "interest in demonstrating that it did not participate in a conspiracy to coverup anticompetitive behavior."); Vald. Decl. Ex. 24 (showing that Alliance membership extends beyond *au pair* program).

**VI.    THERE IS NO JOINT DEFENSE PRIVILEGE BECAUSE THE ALLIANCE IS NOT A DEFENDANT AND DEFENDANTS HAVE NOT ESTABLISHED THE EXISTENCE OF A JOINT DEFENSE AGREEMENT.**

The joint-defense doctrine is an anti-waiver doctrine that requires an independent, underlying privilege. *CGC Holding Co., LLC v. Hutchens*, No. 11-CV-01012-RBJ-KLM, 2016 WL 233551, at *2 (D. Colo. Jan. 20, 2016). Defendants identify none.

Further, there must be <u>evidence</u> of an agreement for the joint-defense doctrine to apply. *See Gunn v. Carter*, No. 13-CV-02197-WJM-MEH, 2015 WL 12967825, at *3 (D. Colo. Aug. 26, 2015). Plaintiffs asked for, but Defendants never provided any evidence of an agreement between the Defendants and the Alliance. See Vald. Decl. Ex. 18 at 4.

Finally, "[t]he mere fact that the communications were among co-defendants who had joined in a joint defense agreement is, without more, insufficient to bring such statements within the attorney-client privilege." *United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017). Instead, there must be some indicia that a lawyer was involved in the communications, such as that they were made for the purpose of obtaining legal advice or facilitating communication with counsel. *Id.*; *see also Garcia v. Berkshire Life Ins. Co. of Am.*, No. 04-CV-01619-LTB-BNB, 2007 WL 3407376, at *8 (D. Colo. Nov. 13, 2007) (denying joint defense privilege where it did not "appear that any lawyer was involved as either an author or recipient of any of the

13

[communications]").  Here, no such indicia of attorney involvement are apparent, and Defendants have pointed to none.

## VII.   DEFENDANTS' SELECTIVE PRIVILEGE CLAIMS ARE INTERNALLY INCONSISTENT AND UNPRINCIPLED.

"Like the attorney-client privilege, a litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoke the privilege to prevent an opponent from challenging the assertion."  *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1278 (10th Cir. 2014) (internal quotations and citation omitted). That is precisely what Defendants propose to do here.  Their arguments have no discernable bounds or objective criteria, and their privilege line drawing follows no consistent principles.

Defendants' privilege log illustrates.   Defendants redact numerous statements that supposedly contain work product, attorney client communications, or common interest material, on the one hand, while on the other hand they disclose statements that would be protected if one takes Defendants' arguments at face value.  For example, one non-redacted statement attributed to "Ellen", who we believe to be Ellen Hoggard (President of Defendant APF Global Exchange NFP), reads, "be careful what you wish for: - reg could be <u>retrospective</u> –we don't want them to say 'you've done it wrong all along' – Don't we have a friend on the hill who should speak up?" Vald. Decl. Ex. 8 at ALLI-000002 (emphasis in original).  Yet on the prior page of notes, Defendants propose to redact a statement because it contains "[d]iscussion of developments in litigation proceedings, communication of legal advice from sponsor to Alliance."  Vald. Decl. Ex. A, at row 1.  By the same token, Defendants have produced documents discussing the litigation amongst themselves and have failed to assert privilege over them when those documents have been discussed in deposition.  *See, e.g.*, Vald. Decl. Ex. 26 (Kapler Dep. Tr. 209:3-210:5) & 25 (Kapler Ex. 17) (questioning witness about document discussing litigation between parties but declining to assert privilege after having opportunity).  Defendants cannot have it both ways:  they cannot selectively redact discussions that purportedly implicate their legal position in this case, while also not asserting privilege over other, similar statements.  Such

14

inconsistencies demonstrate just how inexplicable and unworkable Defendants' privileges theories are.

Defendants sat on their hands for nearly three weeks, from the time the Alliance documents were first used in a deposition, until they decided to make baseless privilege claims about those documents. They did so the night before Plaintiffs were set to depose the current Alliance chair, William Gertz. As a result, Plaintiffs were forced to leave open Mr. Gertz's deposition, and engage in protracted re-negotiations with the Alliance over additional depositions and additional productions – despite the fact that the Alliance had already agreed to such depositions and additional productions several weeks before Defendants decided to intervene and exert their influence. *See* Vald. Decl. Ex. 12 at 2 & ¶ 20. The Court has inherent power to sanction Defendants for their conduct. *See Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995) (Recognizing district court's "inherent power to impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter frivolous filings."). Where, as here, Defendants force Plaintiffs to litigate a baseless discovery motion, may also "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Finally, the Court may sanction Defendants for their interference with a third-party's discovery compliance. *See Servicemaster of Salina, Inc. v. United States*, No. 11-1168-KHV-GLR, 2012 WL 1327812, at *1 (D. Kan. Apr. 17, 2012). Having intervened to disrupt the Alliance's prior cooperation in producing documents and making their witnesses available, sanctions would be a proper exercise of this Court's discretion."

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants cannot claim any privilege over the Alliance materials at issue, and Defendants should pay Plaintiffs' expenses associated with this dispute.

Dated: September 27, 2017

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

*s/Sean P. Rodriguez*
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

16

## Certificate of Service

I hereby certify that on September 27, 2017, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

Heather Fox Vickles, Esq.
Brooke A. Colaizzi, Esq.
Raymond M. Deeny, Esq.
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: 303-297-2900
Fax: 303-298-0940
hvickles@shermanhoward.com
bcolaizzi@shermanhoward.com
redeeny@shermanhoward.com

William J. Kelly, III, Esq.
Chandra Marie Feldkamp, Esq
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
Tel: 720-236-1800
Fax: 720-236-1799
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

Meshach Y. Rhoades, Esq.
Martin J. Estevao, Esq.
ARMSTRONG TEASDALE, LLP
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Tel: 720-722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

Bogdan Enica, Esq.
111 Second Avenue NE, Suite 204
St. Petersburg, FL 33701
Tel: 727-388-3472
bogdane@hotmail.com

Martha L. Fitzgerald, Esq.
David Meschke, Esq.
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1219
Fax: 303-223-1111
mfitzgerald@bhfs.com
dmeschke@bhfs.com

James Hartley, Esq.
Jonathan S. Bender, Esq.
HOLLAND & HART
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Tel: 303-295-8000
jhartley@hollandhart.com
jsbender@hollandhart.com

Adam A. Hubbard, Esq.
HOLLAND & HART
1800 Broadway, Suite 300
Boulder, CO 80302-5234
Tel: 303-473-2700
aahubbard@hollandhart.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
P.O. Box 5268
114 Village Place, #301
Dillon, CO 80435
Tel: 970-468-0210
Fax: 970-468-0371
brian@rietzlawfirm.com

Robert M. Buchanan, Jr.
Joan A. Lukey
Lyndsey M. Kruzer
Michael T. Gass
Justin J. Wolosz
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
rbuchanan@choate.com
joan.lukey@choate.com
lkruzer@choate.com
mgass@choate.com

Lawrence, D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN
OBURN, P.C.
5619 DTC Parkway, Suite 1200
Greenwood, Village, CO 80111
303-773-3500
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

Jessica L. Fuller
Diane Hazel
James M. Lyons
LEWIS ROCA ROTHGERBER CHRISTIE
LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
jfuller@lrrc.com
dhazel@lrrc.com
jlyons@lrrc.com

Christian Hammond, Esq.
DUFFORD & BROWN, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
chammond@duffordbrown.com
Thomas B. Quinn, Esq.
Peggy E. Kozal, esq.

John R. Mann, Esq.
GORDON & REES, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Tel: 303-534-5160
Fax: 303-534-5161
tquinn@gordonrees.com
pkozal@gordonrees.com
jmann@gordonrees.com

Brian P. Maschler, Esq.
GORDON & REES, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-986-5900
Fax: 415-986-8054
bmaschler@gordonrees.com

Kathryn A. Reilly, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: 303.244.1983
Fax: 303.244.1879
reilly@wtotrial.com

Lawrence L. Lee, Esq.
Susan M. Schaecher, Esq.
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651
llee@laborlawyers.com
sschaecher@laborlawyers.com

Eric J. Stock
GIBSON DUNN & CRUTCHER, LLP
200 Park Avenue, 48th Floor
New York, NY 10166-0193
estock@gibsondunn.com

_s/Sean P. Rodriguez_____
Sean P. Rodriguez