**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**


Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL AND FOR RELIEF
UNDER FEDERAL RULES OF CIVIL PROCEDURE 26, 37, AND 45**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT...............................................................................................................................2

I.  DEFENDANTS CANNOT ESTABLISH WORK PRODUCT PROTECTION ............... 2

    A.  As Neither A Party Nor Its Representative, The Alliance Cannot Create Work Product ....................................................................................................................3

    B.  Defendants Fail To Show That The Documents Would Not Have Been Created "But For" This Litigation .............................................................................4

    C.  Defendants' Work Product Theory Departs Fundamentally From The Law .........4

II.  THE ATTORNEY-CLIENT PRIVILEGE CANNOT APPLY.......................................... 9

III.  THE COMMON-INTEREST DOCTRINE DOES NOT SAVE DEFENDANTS........... 11

IV.  DEFENDANTS WAIVED ANY PRIVILEGE AND ARGUE NOTHING DIFFERENT THAN THE ALLIANCE................................................................................................. 14

CONCLUSION.........................................................................................................................15

## PRELIMINARY STATEMENT

Plaintiffs' Motion challenges Defendants' privilege claims on a 77-page initial production from a third party, the Alliance.  ECF No. 710.  The great majority of those pages consist of handwritten notes by a non-attorney staffer at the Alliance.

The night before Defendants filed their Opposition (ECF No. 715), Defendants served a new privilege log and revised (narrowed) redactions.  ECF No. 715-5 (cited hereafter as "Log").  Defendants' Opposition also drops the joint-defense privilege argument that they propounded at the informal discovery conference.  Plaintiffs appreciate Defendants' movement in the right direction, but the new privilege log and redactions are no less defective than before.

*First*, Defendants ignore the black-letter law that work product protection applies to "documents and tangible things" made by a "party" to the litigation (or certain persons acting on the party's behalf).  The only documents and things at issue are notes and a memorandum created by the Alliance—a nonparty that Defendants admit was not acting on their behalf.  Opp. 9 (the Alliance is not Defendants' "representative").  Defendants go even further.  They advocate an unbounded privilege divorced from any attorney supervision or control; in fact, it would not even require an attempt to assist an attorney in litigation.  At bottom, Defendants argue that if a businessperson writes about or discusses litigation or its subject matter, then the work product doctrine can shield any admission she makes or information she divulges to another person, permitting Defendants to draw arbitrary lines and obstruct discovery.

*Second*, Defendants cannot establish that the attorney-client privilege applies because any discussions here were made in the presence of a third party that Defendants concede was neither their attorney nor their agent nor their attorney's agent.  As with work product protection, Defendants stretch the doctrine beyond recognition to support their argument.  At one point they suggest they could have redacted everything about "all of their [attorney-free] discussions about legislative efforts (outside the presence of lobbyists)."  Opp. 11 n.10.

*Third*, Defendants cannot use the common interest doctrine because their legal interests in this litigation are not <u>identical</u> to the Alliance's.  The only interest Defendants articulate they

1

share in common with the Alliance is a business interest to "prevail" in this litigation. Opp. 13. Court routinely reject that argument. In addition, Defendants' extreme position once again disproves itself: Under Defendants' theory, any trade association discussion concerning litigation, legislation, or regulation would be protected *ipso facto*.

*Fourth*, to the extent Defendants had any colorable privilege claim, it was waived as many as four times over—by disclosing the information to a third party, by failing to timely invoke the privilege, by using the privilege as a sword and a shield, and because the Alliance's conduct waived any privilege that it might have shared with Defendants.

*Finally*, this situation warrants awarding Plaintiffs all fees and costs in connection with the Alliance-related dispute. The Alliance depositions have been postponed and the Alliance's remaining productions have been delayed. Defendants' latest privilege log and redacted Alliance production is the third time that Defendants' unreasonable positions have changed at the last minute. As explained in the Motion, Defendants sent their first privilege claim the night before the Alliance chairman's deposition (and three weeks after the Alliance production was shared with Defendants and used at a deposition). Then Defendants waited until less than two hours before the informal discovery conference to back away from their position that the entire Alliance production was privileged. And now they have shifted the ground on which the Motion is being litigated by replacing, the night before their Opposition, the privilege log that Plaintiffs briefed and that the Court may have already analyzed. Yet Defendants' arguments remain unreasonable.

## ARGUMENT

## I.      DEFENDANTS CANNOT ESTABLISH WORK PRODUCT PROTECTION

Every entry on the privilege log claims work product protection. Log, Rows 1-10. Each of the three sub-sections below is an independently sufficient ground to defeat the privilege claim on every entry. Defendants cannot establish any element of the work product doctrine. Furthermore, Defendants advocate an unprecedented position that violates every tenet of the

doctrine.

A.    **As Neither A Party Nor Its Representative, The Alliance Cannot Create Work Product**

Defendants cannot claim work product protection because a third party prepared the documents at issue.  The present dispute concerns documents that memorialize meetings or telephone calls between the third-party Alliance and Defendants.  The notes were authored by "Lisa Hines, Alliance," as well as one non-legal memorandum authored by unspecified "Alliance staff."  Log, Rows 1-10.  As this section explains, work product protection is only available for documents (not communications), and the protectable material must be created by an attorney, an agent, or a legal representative of a party (not a third party).  Since the Alliance is none of those, work product protection cannot apply.

To make their argument, Defendants must convert the work product doctrine into an amorphous protection for, as their Opposition puts it, "communications concerning litigation by non-attorneys."  Opp. 7 n.8.  But the work product doctrine covers "<u>documents and tangible things</u>."  Fed. R. Civ. P. 26(b)(3)(A) (emphasis added); *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kan. 1997) ("The party claiming the immunity afforded under the doctrine must establish that the material is (i) a document or tangible thing . . . ."); *see also L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.,* No. 10-CV-02868-MSK-KMT, 2014 WL 3732943, at *5 (D. Colo. July 29, 2014) (Tafoya, J.) (noting that "work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails").

The distinction matters here because only a party, its legal representative, or agent could have created a protectable document or thing.  *Ricoh Co. Ltd., v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003) ("Courts have routinely held that documents prepared by one who is not a party to the case at bar are not protected by Rule 26(b)(3), even if the non-party is itself a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the instant suit."); *Hunter's Ridge Golf Co. v. Georgia-Pac. Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006) ("It is well settled that ordinarily, the work product doctrine does not shield from discovery documents

created by third-parties") (citing cases); *see also Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 539 (D. Kan. 1989) (documents "submitted to or received from a third party" cannot be protected).

The authors—Ms. Hines and undisclosed Alliance staff—fall into none of the required categories.  Defendants concede that the Alliance is neither their attorney nor legal representative.  Opp. 9 & n.7.  They do not argue that the Alliance is Defendants' agent or even an agent for Defendants' attorneys.  Defendants therefore cannot claim work product protection over Alliance materials.[1]

### B.    Defendants Fail To Show That The Documents Would Not Have Been Created "But For" This Litigation

To qualify for work product protection, business documents must have a "but for" connection to the litigation or its likely prospect.  *L-3*, 2014 WL 3732943, at *5.  Defendants represent that the redacted statements "relate to this litigation."  Opp. 7.  "Relating to" is not "but for."

Defendants appear to concede that the documents were created in the regular course of the Alliance's lobbying activities but assert that the discussions reflected therein (which they seek to redact) were not "regular business discussions" because they had some connection to this litigation or its subject matter.  Opp. 7.  The "but-for" requirement exists to prohibit this sort of loose argument, and to ensure a tight connection between a lawyer's trial preparation and litigation strategy and work product materials.  *See L-3*, 2014 WL 3732943, at *5-6 (explaining the doctrine's history and purpose in the course of explicating the but-for requirement).

### C.    Defendants' Work Product Theory Departs Fundamentally From The Law

The attorney work product doctrine requires that work be undertaken at the direction or

---

[1]     Defendants suggest that Rule 26's reference to "another party" extends the work product doctrine to documents authored by and on behalf of a non-party to the litigation such as Ms. Hines or the Alliance staff.  *See* Opp. 6.  The quoted language is in the context of what "one party" to a litigation may or may not discover from "another party" to the litigation.  *See* Fed. R. Civ. P. 26(b)(3)(A).

control of an attorney or, at a minimum, to further an attorney or other legal representative's efforts in litigation. Defendants' work product theory departs so far from the actual doctrine that they disavow it, saying that they rely on something different. Opp. 6 n.7.[2] Defendants never explain what rules or standards might limit the doctrine they imagine. They cannot; it has none.

According to Defendants, employees create work product if what they say or do has some connection—any connection—to litigation. Only from that premise can Defendants contend that "communications concerning litigation by non-attorneys" are the "essence of work product." Opp. 7. Defendants appear to argue that if they can create a privilege log entry that "specifically" says "litigation" they can claim protection. *Id.* Nowhere does Defendants' Opposition articulate how their work product theory can be limited in any principled or objective way. If permitted to stand, Defendants' view will let them conceal any party admission they find inconvenient, and shield it from challenge so long as they can create a log entry referencing this litigation's subject matter.

Defendants' main authority is *Carrion v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)* (*In re Republic of Ecuador*), 735 F.3d 1179 (10th Cir. 2013), which addressed the 2010 amendments to Rule 26 that created additional protection for expert materials in litigation. Defendants are correct that the Rule 26(a) expert provisions do not embody the formal work product doctrine. Its expert-specific protections are necessary precisely because the attorney work product doctrine under Rule 26(b)(3) is not broad enough to cover expert reports and other materials. *Id.* at 1184 ("We fail to see how the Rules or interpreting cases demonstrate that expert materials are protected under Rule 26(b)(3)'s work-product doctrine.").

In fact, *Carrion* endorses the "traditional understanding of the work-product doctrine." *Id.* It quotes the Supreme Court's observation that it is "necessary" that "the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Carrion*, 735 F.3d at 1184 (quoting *United States v. Nobles*, 422 U.S. 225,

---

[2]      This is puzzling because the Rules create a "uniform federal standard" for work product protection. *Frontier Ref. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998).

238-39 (1975)).  The Tenth Circuit goes on to explain that the work product doctrine exists to protect the "mental impressions of an attorney," and that the Rules codified the doctrine in order to stop the "confusion" that had led courts to extend the work product doctrine so far that it covered work performed by experts.  *Id.*  The 2010 Amendments changed the rules for experts— and only experts—in order to "refocus" attorney work product protection to where it belongs: The "theories or mental impressions of <u>counsel</u>."  *Id.* at 1187 (quoting 2010 A.C.N.) (emphasis added).  Those are the touchstones of Rule 26(b)(3)'s protections, and what stops it from becoming an unbounded and arbitrary protection for anything related to "litigation."  *Accord McDougall v. Dunn*, 468 F.2d 468, 473 (4th Cir. 1972) (citing the "painstaking and thorough consideration of the construction to be given Rule 26(b)(3)" by the court in *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372 (N.D. Ill. 1972) (explaining that Rule 26(b)(3) was intended to keep the focus on attorneys' "legal expertise")); *Scott Paper Co. v. Ceilcote Co.*, 103 F.R.D. 591, 594 (D. Me. 1984).

Decades of authority at all levels of the federal judiciary consistently support this interpretation.  *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *Nobles*, 422 U.S. at 238-39 (the doctrine is designed to "protect material prepared by agents for the attorney as well as those prepared by the attorney himself"); *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (holding that a letter created by a non-lawyer with "no role in the decision to proceed with . . . litigation" was not "work product" because the doctrine "only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation"); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007) ("the work-product privilege protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case . . . .  It is not up to the client to determine whom to make an agent for the purposes of asserting the work-product privilege; the privilege extends to the work of the attorney's agents, not the client's agents.") (citations omitted); *In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) (work product protection "extends beyond materials prepared by an attorney to include materials prepared by an

attorney's agents and consultants"); *In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 4 (D.D.C. 2002) ("A document satisfies [the Rule 26] inquiry on a showing that the document was prepared by an attorney or his or her agent, and the attorney or agent prepared the document in anticipation of litigation."); *Thomas Organ*, 54 F.R.D. at 372; *Scott Paper*, 103 F.R.D. at 594; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Intrawest ULC*, No. 13-CV-00079-PAB-KMT, 2015 WL 5047635, at *1 (D. Colo. Aug. 27, 2015) (Tafoya, J.) ("Materials covered by the work-product doctrine fall into two categories:  fact work product, consisting of materials compiled <u>by the attorney</u> and <u>agents of the attorney</u> which do not contain the mental impressions, conclusions or opinions of the attorney; and opinion work product, consisting of <u>the attorney's</u> mental impressions, conclusions, opinions, or legal theories." (emphases added)).[3]

Defendants cite two cases that suggest a misguided, and purportedly literal, interpretation of Rule 26(b)(3), that unmoors it from the purpose of protecting a lawyer's or other legal representative's strategy.  Opp. 6-7 (citing *In re LDK Solar Secs. Litig.*, No. C07-5182 WHA (BZ), 2010 WL 114009 (N.D. Cal. Jan. 7, 2010) (Zimmerman, M.J.); *Doe v. Autauga Cnty. Bd. of Educ.*, No. 2:04-CV-1155-F, 2006 WL 1223831, *1 (M.D. Ala. May 5, 2006).  One of those cases notes that it "may be surprising to long-time practitioners that a lawyer need not be

---

[3]     Defendants also cite *National Union*, Opp. 8, pointing out that insurance dispute-related materials prepared by a non-attorney may be work product.  On *National Union* specifically, this Court knows its own decisions better than any party.  Plaintiffs observe only that Defendants' interpretation requires striking all references to any "attorney" in the rule quoted above.  As to the broader proposition that non-attorneys' work is protected in insurance cases under some circumstances, that is true—because coverage agents' and insurance adjustors' work assists counsel in litigation, and once litigation becomes reasonably likely their work ultimately takes place under the supervision of the attorneys responsible for interpreting policies and litigating policy disputes.  *See, e.g.*, *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 636-37 (N.D. Iowa 2000) (cited in *National Union*, 2015 WL 5047635, at *2).  That is consistent with the traditional rule as applied in other contexts.  *E.g.*, *S.E.C. v. NIR Grp., LLC*, 283 F.R.D. 127, 134 (E.D.N.Y. 2012) ("The work product privilege protects documents produced by staff working at an attorney's direction, in addition to those prepared by the attorney herself." (citing, among others, *S.E.C. v. Nacchio*, No. 05–cv–00480, 2007 WL 219966, at *10 (D. Colo. Jan. 25, 2007) ("The work-product doctrine is no less applicable to materials prepared in anticipation of litigation by SEC accountants working under the direction or at the behest of Commission attorneys.")).

involved at all for the work product protection to take effect." *LDK*, 2010 WL 114009, at *1 (internal quotation omitted).

The reason for that "surprise" is simple: Since it was added by amendment in 1970, Rule 26(b)(3) has been properly interpreted to require that the work be undertaken to assist an attorney or legal representative in litigation. *See Thomas Organ*, 54 F.R.D. at 372; *Scott Paper*, 103 F.R.D. at 594. The "agents" and others listed in the Rule, however, are there to clarify that an attorney need not be the actual author, recognizing the reality that non-attorneys must often assist attorneys or other legal representatives in litigation.

Defendants' cited cases in fact reach results no different from the traditional rule. One addressed the uncontroversial situation where the document at issue was created at an attorney's direction. *Doe v. Autauga Cnty. Bd. of Educ.*, 2006 WL 1223831, at *1 ("counsel asked" that document at issue be created). The other ordered production notwithstanding its misapprehension of the doctrine. *LDK*, 2010 WL 114009, at *2.[4]

Because "work product" is the sole basis for redacting rows 1 and 7-9 in Defendants' privilege log, the material identified in those rows should be ordered unredacted.[5]

---

[4] Where the courts do venture into areas that might extend the doctrine beyond its traditional confines they insist on a strong showing and rigorously enforce the distinction between opinion and non-opinion work product. In the insurance context, the connection with litigation must be strong enough that it is likely that a claims agent is doing work that is for an attorney's use in litigation. *See, e.g.*, *Smith v. Marten Transp., Ltd.*, No. 10-CV-0293-WYD-KMT, 2010 WL 5313537, at *2 n.2 (D. Colo. Dec. 17, 2010) (Tafoya, J.) (citing *Thomas Organ*, 54 F.R.D. at 373-74)); *see also Martinez v. Liberty Ins. Corp.*, No. 15-CV-00838-REB-MEH, 2015 WL 5915415, at *5 (D. Colo. Oct. 9, 2015). When addressing work done by employees of a defendant securities firm, courts identify an objectively ascertainable point at which the firm's financial analysts began working to assist in litigation that would be led by attorneys. *Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, No. 12-CV-1699-CSH, 2015 WL 11237310, at *4-5 (D. Conn. July 6, 2015) (discussing and adopting the reasoning of Judge Cote and an experienced Magistrate Judge from other cases).

[5] Plaintiffs maintain that even if the work product doctrine could apply, Plaintiffs have shown sufficient need to overcome any protection afforded by Rule 26. Mot. 7 n.6. As the Motion explained, defense witnesses profess not to remember Alliance meetings or calls until shown contemporaneous documents. Mot. 7 n.6. Plaintiffs have no other way of obtaining a full record of what was said other than through the unrestricted use of materials concerning the

## II.    THE ATTORNEY-CLIENT PRIVILEGE CANNOT APPLY

Defendants do not dispute that federal attorney-client privilege law controls this case, nor do they dispute that they bear the burden on both the initial showing of privilege and that they did not waive any privilege.  Mot. 8 & n.7; Opp. 6.

Not until the night before filing their Opposition did Defendants name a single attorney on their privilege log.  The new log contains six entries that purportedly reflect advice received from Jeffrey Allen of Lawson & Weitzen LLP.  Log, Rows 2-6 & 10.  Defendants have not explained how his advice is connected to this litigation.  *See id*.  Nor is it clear who is the relevant "client" for assessing the privilege or its waiver (though Cultural Care appears to be the most likely candidate, *see* Opp. Exs. 1 ¶ 7; 2 ¶ 5).[6]

"The attorney-client privilege can extend to communications between representatives of the client or between the client and a representative of the client, if the communication was made in confidence for the primary purpose of obtaining legal advice."  *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 637 (D. Colo. 2012) (Tafoya, J.) (quoted in Opp. 10-11).  But "attorney-client communications in the presence of a third-party not the agent of either are generally not protected by privilege."  *Id.* (citation omitted).  As discussed above, Defendants do not argue that the Alliance was their agent or any attorney's agent for purposes of this litigation.  Accordingly, the attorney-client privilege cannot apply.  *Id.*; *see also Running Foxes Petroleum, Inc. v. Nighthawk Prod. LLC*, No. 14-CV-01466-MSK-MJW, 2015 WL 9312097, at *5 (D. Colo.

---

Alliance meetings as Defendants' own declarations in support of their opposition show.  *See, e.g.*, Opp. Ex. 3 ¶ 13 (declaring "no specific recollection" of relevant meeting).

[6]    Defendants claim attorney-client privilege over a statement from Mr. Gertz (who is not an attorney) in row 5 of their privilege log.  It is unclear whether this advice was also received from Mr. Allen.  Opp. Ex. 3 ¶ 13 (noting that "to the extent that [Mr. Gertz] may have engaged in any such discussions, [his] participation and statements would, by necessity, have been informed by communications with and advice received from legal counsel.").  The fact that someone talked to a lawyer about litigation at some point does not mean that any future conversation he has regarding the litigation is subject to the attorney-client privilege.  In fact, Mr. Gertz testified that he has little awareness of the Alliance's attorneys' involvement in this case, *see* Mot. 6 n.5, and his declaration does not indicate which counsel may have informed his statements.  *See* Opp. Ex. 3 ¶ 13.

Dec. 23, 2015) (no privilege where there was "no showing that [third party] acted as the Defendant's agent in dealing with Defendant's attorney.").

Defendants cite *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 460 F. Supp. 2d 915, 919-20 (S.D. Ind. 2006) for the proposition that where a client's discussion or writing is based on attorney advice, the privilege is extended to that communication, because "such statements involve counsel's advice and/or mental impressions." Opp. at 10. Not only does *Reginald Martin* apply Indiana state attorney-client privilege law, it merely holds that the attorney-client privilege may not be waived where aligned <u>parties</u> to the litigation discuss legal advice among themselves. 460 F. Supp. 2d at 920. And Defendants' quotation from *United States v. Dish Network, L.L.C.*, 283 F.R.D. 420, 423 (C.D. Ill. 2012) omits the crucial qualification: that the privilege "also extends to communications about the privileged material between non-attorneys <u>[who are properly privy to the privileged information]</u>." *See* Opp. 11 (omitting underlined language). *Dish Network* does not explain who might be "properly privy" to privileged information nor do Defendants argue that the Alliance meets that standard.

Rows 2 and 3 of Defendants' privilege log refer to "regulatory advocacy"; row 4 to "strategy" for a meeting with the Department of State; and row 5-6 & 10 to "regulatory interpretation." Defendants rely on state law for the proposition that the attorney-client privilege extends to "material concerning legislative efforts . . . where the documents 'resemble legal advice and analysis.'" Opp. 11 (quoting *Barfield v. Sho-Me Power Elec. Coop.*, 2014 WL 2575220, *3 (W.D. Mo. June 9, 2014) (applying Missouri state privilege law) and citing *Black v. Southwestern Water Conservation District*, 74 P.3d 462, 469 (Colo. Ct. App. 2003) (applying Colorado state privilege law)). Federal law applies here. Mot. 9; Opp. 6. Furthermore, in *Barfield*, the communications that were withheld were between an association member who had a dual role as board member of the association, and <u>the association's counsel</u>. 2014 WL 2575220, at *3. The fact that the statements Defendants seek to redact here were made in the context of legislative efforts does nothing to strengthen Defendants claim to privilege in the

10

absence of an attorney-client relationship between the Alliance and Defendants.[7]

Defendants go further.  They make the incredible assertion that they could redact "all of their discussions about legislative efforts (outside the presence of lobbyists)," Opp. 11 n.10 (citing *United States v. Torf*, 357 F.3d 900, 910 (9th Cir. 2003)).  *Torf* held that some documents were protected (as attorney work product) when they were prepared under the direction of an attorney providing legal advice in preparation for litigation.  357 F.3d at 909.  Plaintiffs have been unable to locate any authority in the Tenth Circuit citing *Torf* and, as discussed in Plaintiffs' motion, in the Tenth Circuit, where a communication has a dual purpose (business and legal advice), for privilege to apply the "[l]egal advice must predominate."  Mot. 9-10 (citing *Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 667 (D. Kan. 2007) and *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kan. 1997)).  The unredacted portions of the 77-page Alliance production indicate that legal advice does not predominate.[8]

## III.   THE COMMON-INTEREST DOCTRINE DOES NOT SAVE DEFENDANTS

The common-interest doctrine is not a standalone privilege but a non-waiver doctrine that requires a valid underlying privilege.  *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 250 F.R.D. 575, 578 (D. Colo. 2007).  Defendants have not shown any valid underlying privilege.

Defendants' common-interest doctrine theory would collapse even if it had an underlying privilege.  The "common" interest must "be identical, not similar, and be legal, not solely commercial."  *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2013 WL 4781035, at *2

---

[7]     Defendants' irrelevant *Black* case would not help them in a state court either.  It explains, "Summaries of legislative meetings, progress reports, and general updates on lobbying activities [even if provided by a lawyer] do not constitute legal advice and therefore are not protected by the attorney-client privilege or work product doctrine."  74 P.3d at 468.

[8]     Defendants appear to ask this Court to change the law of privilege to suit them because, they say, this case may affect their business models and work a "sea change" in their industry. Opp. 11 n.10.  Antitrust violators have tried that excuse for centuries.  It does not work.  *Cf. Northern Secs. Co. v. United States*, 193 U.S. 197, 351 (1904) ("It is the history of monopolies in this country and in England that predictions of ruin are habitually made by them [ . . . . ]  But even if the court shared the gloomy forebodings in which the defendants indulge, it could not refuse to" apply the law).

(D. Kan. Sept. 5, 2013). Defendants assert, without authority, that their identical legal interest in common with the Alliance is "to prevail." Opp. 13-14. Not so. *E.g.*, *United States v. Hudson*, No. CRIM.A. 13-20063-01, 2013 WL 4768084, at \*2 (D. Kan. Sept. 5, 2013) ("shared desire to see same outcome in legal matter is insufficient to establish common interest"); *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1246 (D. Wyo. 2016) (same), *reconsideration denied*, No. 14-CV-45-ABJ, 2016 WL 8453415 (D. Wyo. July 1, 2016).

Defendants' own cited cases underscore that the identity of interest between Defendants and the Alliance falls short of that required by the Tenth Circuit's common interest rule. For example, in *Cejka v. Vectrus Sys. Corp.*, 15-cv-02418, 2017 U.S. Dist. LEXIS 117419, \*8 (D. Colo. July 27, 2017) (Opp. Ex. 7; cited at Opp. 12), the court held that the defendant and third party were identically situated because plaintiffs had sent a nearly identical copy of the complaint that would have named the third party on the same claims, for the same conduct. *Id.* at \*11-12. Not so here. Nor are Defendants' and the Alliance's interests identical as were the interests in *U.S. ex rel. (Redacted) v. (Redacted)*, 209 F.R.D. 475 (D. Utah 2001) (cited at Opp. 12), where the United States and *qui tam* relator action were essentially "co-plaintiffs" on the same false claims theory. *Id.* at 479. The Alliance and Defendants are not codefendants.[9]

Defendants say that they "expected" or "understood" that the conversations with the Alliance were and would remain confidential, Opp. 2, but their mental state is not the law. On this one-sided and subjective "understanding" theory, Defendants cite only a case applying state, not federal, law. *See* Opp. 2 (citing *Marianist Province of U.S., Inc. v. Century Indem. Co.*, Civ. No. 08-cv-01760, 2010 WL 3938355, \*2 (D. Colo. Oct. 5, 2010)). Further, the relevant persons in that case had a joint-defense agreement (the Alliance has none) and the relevant communications occurred between the co-defendants' counsel and concerned a witness interview

---

[9]     Defendants also cite *Reginald Martin Agency* and *BASF Aktiengesellschaft v. Reilly Indus.*, 224 F.R.D. 438 (S.D. Ind. 2004), in their common interest section. Opp. 13. *BASF* did not actually decide that the common interest applied, 224 F.R.D. at 443 n.4, and, unlike here, the document at issue was prepared by defendant's employee at the direction of counsel and shared with a third party bound by a confidentiality agreement. *Id.* at 441-43

(a traditional subject of work product protection).

Finally, Defendants argue that "[o]ne scenario where courts have found different entities to share common legal interest is where, as here, various companies form a trade association." Opp. 12-13 (citing *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 220 (W.D. Ky. 2006)). *Broessel* did not apply the Tenth Circuit's strict standard requiring an identical legal interest for the common interest privilege to apply.  Moreover, the *Broessel* defendants and their trade association shared an interest "beyond pooling their resources to prepare a common or united defense to the claims asserted in an alleged class action suit."  *Broessel*, 238 F.R.D. at 220. Defendants have not asserted that the Alliance and the Defendants have pooled their resources to prepare a common defense.  Defendants say only that the Alliance wants them to "prevail."

The "mere fact" that an entity is a "trade association does not automatically establish that all the communications between [the trade association's] counsel and [the trade association's] members are attorney-client privileged." *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2013 WL 791432, at *3 (N.D. Ill. Mar. 4, 2013); *see also United States v. Duke Energy Corp.*, 214 F.R.D. 383, 390 (M.D.N.C. 2003), *aff'd*, No. 1:00CV1262, 2012 WL 1565228 (M.D.N.C. Apr. 30, 2012) (rejecting proposition that "whenever a business group bands together for a common purpose of making their will known to government regulators, all attorney communication to the group is privileged and/or work product."); *see also In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. 112, 122-25 (E.D. Pa. 2011) (finding that communications between antitrust defendants and trade association were neither privileged nor protected nor subject to the common interest doctrine).  In fact, the trade association context— where competitors interact and where Defendants have conspired—is the most dangerous context for the common-interest doctrine.[10]

---

[10]     Jared S. Sunshine, *Seeking Common Sense for the Common Law of Common Interest in the D.C. Circuit*, 65 Cath. U. L. Rev. 833, 850 (2016) ("Market rivals clearly cannot be allowed to conceal anticompetitive collusion behind a fig leaf of putative common interest, which would impermissibly co-opt the shield of privilege for violations of the law."); Gregory B. Mauldin, *Invoking the Common Interest Privilege in Collaborative Business Ventures*, 56 Fed. Law. 54, 58

## IV.   DEFENDANTS WAIVED ANY PRIVILEGE AND ARGUE NOTHING DIFFERENT THAN THE ALLIANCE

Plaintiffs explained in their Motion the multiple ways in which Defendants' claims to privilege or protection, even if valid, were waived.  Mot. 10-12.  Other than assert the common interest doctrine, Defendants do not seriously argue against waiver.[11]

As for the Alliance, its conduct waived any privilege that it may have held.  Defendants' quarrels about who can waive which privilege miss the point:  If the Alliance could claim any privilege on its own behalf, the Alliance waived it.  That addresses this Court's concern about the Alliance's role, as expressed at the informal discovery conference.  Mot. 4 n.3.

Furthermore, and contrary to Defendants' contention (Opp. 5 n.5), the Alliance <u>does</u> in fact simply adopt Defendants' privilege arguments.[12]  To the extent the Court has any remaining concerns about the Alliance's interests in this dispute, the Alliance is free to attempt to identify its own independent privilege (it never has)—or, if it attempts to re-litigate the same privilege issues, to explain why it and Defendants are identically situated within the common interest privilege's meaning but are so different that it should not be collaterally estopped from relitigating the issues.

\*          \*          \*

---

(Nov./Dec. 2009) ("courts and commentators have suggested that application of the common interest privilege is less warranted--or even not warranted--in antitrust cases.") (citing sources).

[11]     Defendants do not cite any authority for their assertion that Mr. Gertz's review of the production prior to deposition effected a waiver.  Opp. 15 n. 12.  Plaintiffs cited case law to the contrary, explaining that this is an impermissible use of work product as both a sword and shield. Mot. 12 n.10 (citing *N. Nat. Gas Co. v. Approximately 9117.53 acres in Pratt, Kingman, & Reno Ctys., Kan.*, 289 F.R.D. 644, 651-52 (D. Kan. 2013)).

[12]     Vald. Reply Decl. Ex. 28 (notifying "that Alliance too designates as privileged, and asks you to return, the privileged materials noted by the Defendants" and that the "documents subject to the claw back demand are subject to various privileges, ***as set forth by Defendants***, and therefore are entitled to protections under Rule 45(d)(3).") (emphasis added).

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Motion, Plaintiffs respectfully request that the Court order that (1) the Alliance documents be unsequestered and (2) Defendants pay Plaintiffs' expenses associated with the Alliance dispute.


Dated: October 11, 2017

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

    *s/Sean P. Rodriguez*
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel: (954) 356-0011

15

Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on October 11, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Heather Fox Vickles, Esq.
Brooke A. Colaizzi, Esq.
Raymond M. Deeny, Esq.
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: 303-297-2900
Fax: 303-298-0940
hvickles@shermanhoward.com
bcolaizzi@shermanhoward.com
redeeny@shermanhoward.com

William J. Kelly, III, Esq.
Chandra Marie Feldkamp, Esq
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
Tel: 720-236-1800
Fax: 720-236-1799
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

Meshach Y. Rhoades, Esq.
Martin J. Estevao, Esq.
ARMSTRONG TEASDALE, LLP
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Tel: 720-722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

Bogdan Enica, Esq.
111 Second Avenue NE, Suite 204
St. Petersburg, FL 33701
Tel: 727-388-3472
bogdane@hotmail.com

Martha L. Fitzgerald, Esq.
David Meschke, Esq.
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1219
Fax: 303-223-1111
mfitzgerald@bhfs.com
dmeschke@bhfs.com

James Hartley, Esq.
Jonathan S. Bender, Esq.
HOLLAND & HART
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Tel: 303-295-8000
jhartley@hollandhart.com
jsbender@hollandhart.com

Adam A. Hubbard, Esq.
HOLLAND & HART
1800 Broadway, Suite 300
Boulder, CO 80302-5234
Tel: 303-473-2700
aahubbard@hollandhart.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
P.O. Box 5268
114 Village Place, #301
Dillon, CO 80435
Tel: 970-468-0210
Fax: 970-468-0371
brian@rietzlawfirm.com

i

Robert M. Buchanan, Jr.
Joan A. Lukey
Lyndsey M. Kruzer
Michael T. Gass
Justin J. Wolosz
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
rbuchanan@choate.com
joan.lukey@choate.com
lkruzer@choate.com
mgass@choate.com

Lawrence, D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN
OBURN, P.C.
5619 DTC Parkway, Suite 1200
Greenwood, Village, CO 80111
303-773-3500
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

Jessica L. Fuller
Diane Hazel
James M. Lyons
LEWIS ROCA ROTHGERBER CHRISTIE
LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
jfuller@lrrc.com
dhazel@lrrc.com
jlyons@lrrc.com

Christian Hammond, Esq.
DUFFORD & BROWN, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
chammond@duffordbrown.com
Thomas B. Quinn, Esq.
Peggy E. Kozal, esq.

John R. Mann, Esq.
GORDON & REES, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Tel: 303-534-5160
Fax: 303-534-5161
tquinn@gordonrees.com
pkozal@gordonrees.com
jmann@gordonrees.com

Brian P. Maschler, Esq.
GORDON & REES, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-986-5900
Fax: 415-986-8054
bmaschler@gordonrees.com

Kathryn A. Reilly, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: 303.244.1983
Fax: 303.244.1879
reilly@wtotrial.com

Lawrence L. Lee, Esq.
Susan M. Schaecher, Esq.
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651
llee@laborlawyers.com
sschaecher@laborlawyers.com

Eric J. Stock
GIBSON DUNN & CRUTCHER, LLP
200 Park Avenue, 48th Floor
New York, NY 10166-0193
estock@gibsondunn.com

_s/Sean P. Rodriguez_
Sean P. Rodriguez