APPEAL,CLASAC,NDISPO

# U.S. District Court
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:14−cv−03074−CMA−KMT</u>

| | |
|---|---|
| Beltran, et al v. Interexchange, Inc., et al | Date Filed: 11/13/2014 |
| Assigned to: Judge Christine M. Arguello | Jury Demand: Both |
| Referred to: Magistrate Judge Kathleen M. Tafoya | Nature of Suit: 410 Anti−Trust |
| Cause: 15:1 Antitrust Litigation | Jurisdiction: Federal Question |

**Plaintiff**

**Johana Paola Beltran**                      represented by   **Byron Pacheco**
Boies Schiller & Flexner, LLP−New York
575 Lexington Avenue
7th Floor
New York, NY 10022
212−446−2300
Fax: 212−446−2350
Email: bpacheco@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Daniel R. Schwartz**
Boies Schiller & Flexner, LLP−New York
575 Lexington Avenue
7th Floor
New York, NY 10022
212−303−3537
Email: dschwartz@bsfllp.com
*TERMINATED: 06/13/2017*

**Dawn Smalls**
Boies Schiller & Flexner, LLP−New York
575 Lexington Avenue
7th Floor
New York, NY 10022
212−446−2300
Fax: 212−446−2350
Email: DSmalls@BSFLLP.com
*ATTORNEY TO BE NOTICED*

**Joshua James Libling**
Boies Schiller & Flexner, LLP−New York
575 Lexington Avenue
7th Floor
New York, NY 10022
212−446−2300
Fax: 212−446−2350
Email: jlibling@bsfllp.com
*ATTORNEY TO BE NOTICED*

1

**Juan Pablo Valdivieso**
Boies Schiller & Flexner, LLP–Oakland
1999 Harrison Street
Suite 900
Oakland, CA 94612
510–874–1010
Fax: 510–874–1460
Email: jvaldivieso@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Lauren Fleischer Louis**
Boies Schiller & Flexner, LLP–Ft.
Lauderdale
401 East Las Olas Boulevard
Suite 1200
Ft. Lauderdale, FL 33301
954–356–0011
Fax: 954–356–0022
Email: llouis@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**
Boies Schiller & Flexner, LLP–New York
575 Lexington Avenue
7th Floor
New York, NY 10022
212–446–2300
Fax: 212–446–2350
Email: mlschwartz@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
Boies Schiller & Flexner, LLP–New York
575 Lexington Avenue
7th Floor
New York, NY 10022
212–446–2300
Fax: 212–446–2350
Email: pskinner@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Randall Wade Jackson**
Boies Schiller & Flexner, LLP–New York
575 Lexington Avenue
7th Floor
New York, NY 10022
212–446–2300
Fax: 212–446–2350
Email: rjackson@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Sabria Alexandria McElroy**

Boies Schiller & Flexner, LLP–Ft. Lauderdale
401 East Las Olas Boulevard
Suite 1200
Ft. Lauderdale, FL 33301
954–356–0011
Fax: 954–356–0022
Email: smcelroy@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
Boies Schiller & Flexner, LLP–Oakland
1999 Harrison Street
Suite 900
Oakland, CA 94612
510–874–1000
Email: srodriguez@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Sigrid Stone McCawley**
Boies Schiller & Flexner, LLP–Ft. Lauderdale
401 East Las Olas Boulevard
Suite 1200
Ft. Lauderdale, FL 33301
954–356–0011
Fax: 954–356–0022
Email: smccawley@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
Towards Justice–Denver
1535 High Street
Suite 300
Denver, CO 80218
720–239–2606
Fax: 303–957–2289
Email: alex@towardsjustice.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lusapho Hlatshaneni**                    represented by   **Byron Pacheco**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel R. Schwartz**
(See above for address)
*TERMINATED: 06/13/2017*

**Dawn Smalls**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua James Libling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Juan Pablo Valdivieso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauren Fleischer Louis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Randall Wade Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sabria Alexandria McElroy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sigrid Stone McCawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Beaudette Deetlefs**                    represented by  **Byron Pacheco**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel R. Schwartz**
(See above for address)
*TERMINATED: 06/13/2017*

**Dawn Smalls**
(See above for address)

4

*ATTORNEY TO BE NOTICED*

**Joshua James Libling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Juan Pablo Valdivieso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauren Fleischer Louis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Randall Wade Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sabria Alexandria McElroy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sigrid Stone McCawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Dayanna Paola Cardenas Caicedo**                represented by   **Dawn Smalls**
*TERMINATED: 11/14/2016*                                                                (See above for address)
                                                                                                        *ATTORNEY TO BE NOTICED*

**Lauren Fleischer Louis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**

5

(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Randall Wade Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sabria Alexandria McElroy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sigrid Stone McCawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Alexandra Ivette Gonzalez**
*and those similarly situated*

represented by **Byron Pacheco**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel R. Schwartz**
(See above for address)
*TERMINATED: 06/13/2017*

**Dawn Smalls**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua James Libling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Juan Pablo Valdivieso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauren Fleischer Louis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Randall Wade Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sabria Alexandria McElroy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sigrid Stone McCawley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Juliane Harning**                    represented by   **Byron Pacheco**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel R. Schwartz**
(See above for address)
*TERMINATED: 06/13/2017*

**Dawn Smalls**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua James Libling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Juan Pablo Valdivieso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Nicole Mapledoram**<br>*and those similarly situated* | represented by | **Byron Pacheco**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Daniel R. Schwartz**
(See above for address)
*TERMINATED: 06/13/2017*

**Dawn Smalls**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua James Libling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Juan Pablo Valdivieso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Laura Mejia Jimenez**                    represented by   **Byron Pacheco**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel R. Schwartz**
(See above for address)
*TERMINATED: 06/13/2017*

**Dawn Smalls**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua James Libling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Juan Pablo Valdivieso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Sarah Carolina Azuela Rascon**           represented by   **Byron Pacheco**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel R. Schwartz**
(See above for address)
*TERMINATED: 06/13/2017*

**Dawn Smalls**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua James Libling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Juan Pablo Valdivieso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Lane Schwartz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Murray Skinner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Phillips Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Neville Hood**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Pamela H Noonan**                    represented by    **Susan Penniman Klopman**
*TERMINATED: 04/14/2015*                                 H & K Law, LLC
                                                          3900 East Mexico Avenue
                                                          Suite 330
                                                          Denver, CO 80210
                                                          303−749−0659
                                                          Fax: 303−927−0809
                                                          Email: sklopman@hklawllc.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas J Noonan**                    represented by    **Susan Penniman Klopman**
*TERMINATED: 04/14/2015*                                 (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**InterExchange, Inc.**                represented by    **Brooke A. Colaizzi**
                                                          Sherman & Howard, L.L.C.−Denver
                                                          633 17th Street
                                                          Suite 3000
                                                          Denver, CO 80202−3622
                                                          303−297−2900
                                                          Fax: 303−298−0940
                                                          Email: BColaizzi@shermanhoward.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Raymond Myles Deeny**
Sherman & Howard, L.L.C.–Denver
633 17th Street
Suite 3000
Denver, CO 80202–3622
303–299–8194
Fax: 303–298–0940
Email: rdeeny@shermanhoward.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alyssa Lauren Levy**
Sherman & Howard, L.L.C.–Denver
633 17th Street
Suite 3000
Denver, CO 80202–3622
303–299–8256
Fax: 303–298–0940
Email: alevy@shermanhoward.com
*ATTORNEY TO BE NOTICED*

**Erica Lynn Herrera**
Erica L. Herrera, Attorney at Law
3710 West 112th Avenue
Westminster, CO 80031
303–809–7038
Email: herrera.erical@gmail.com
*TERMINATED: 10/12/2016*

**Heather Fox Vickles**
Sherman & Howard, L.L.C.–Denver
633 17th Street
Suite 3000
Denver, CO 80202–3622
303–299–8194
Fax: 303–298–0940
Email: hvickles@shermanhoward.com
*ATTORNEY TO BE NOTICED*

**Joseph H. Hunt**
Sherman & Howard, L.L.C.–Denver
633 17th Street
Suite 3000
Denver, CO 80202–3622
303–299–8302
Fax: 303–298–0940
Email: jhunt@shermanhoward.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**USAuPair, INC**                    represented by   **Chanda Marie Feldkamp**
Kelly & Walker, LLC
1512 Larimer Street
Suite 200
Denver, CO 80202
720–236–1805
Fax: 720–236–1799
Email: cfeldkamp@kellywalkerlaw.com
*ATTORNEY TO BE NOTICED*

**William James Kelly , III**
Kelly & Walker, LLC
1512 Larimer Street
Suite 200
Denver, CO 80202
720–236–1800
Fax: 720–236–1799
Email: wkelly@kellywalkerlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**GreatAuPair, LLC**                    represented by   **Martin Jose Estevao**
Armstrong Teasdale, LLP–Denver
4643 South Ulster Street
Suite 800
Denver, CO 80237
720–200–0676
Fax: 720–200–0679
Email: mestevao@armstrongteasdale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meshach Yustine Rhoades**
Armstrong Teasdale, LLP–Denver
4643 South Ulster Street
Suite 800
Denver, CO 80237
720–722–7195
Email: mrhoades@armstrongteasdale.com
*ATTORNEY TO BE NOTICED*

**Vance Orlando Knapp**
Armstrong Teasdale, LLP–Denver
4643 South Ulster Street
Suite 800
Denver, CO 80237
720–200–0676
Fax: 720–200–0679
Email: vknapp@armstrongteasdale.com
*ATTORNEY TO BE NOTICED*

12

**<u>Defendant</u>**

**Expert Group International, Inc**  
*doing business as*  
Expert AuPair

represented by   **Bogdan Enica**  
Bogdan Enica, Attorney at Law  
111 2nd Avenue NE  
Suite 213  
St Petersburg, FL 33701–3440  
727–225–2649  
Fax: 727–822–8959  
Email: bogdane@hotmail.com  
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**EuRaupair InterCultural Child Care Programs**

represented by   **David Meschke**  
Brownstein Hyatt Farber Schreck, LLP–Denver  
410 17th Street  
Suite 2200  
Denver, CO 80202–4432  
303–223–1219  
Email: dmeschke@bhfs.com  
*ATTORNEY TO BE NOTICED*

**Kathryn Anne Barrett**  
JE Dunn Construction Company  
2000 South Colorado Boulevard  
Denver, CO 80222  
303–782–7340  
Email: katie.barrett@jedunn.com  
*TERMINATED: 04/18/2016*

**Margo J. Arnold**  
Brownstein Hyatt Farber Schreck, LLP–Los Angeles  
2049 Century Park East  
Suite 3550  
Los Angeles, CA 90067  
310–564–8679  
Fax: 310–500–4602  
Email: marnold@bhfs.com  
*TERMINATED: 03/28/2016*  
*ATTORNEY TO BE NOTICED*

**Martha Louise Fitzgerald**  
Brownstein Hyatt Farber Schreck, LLP–Denver  
410 17th Street  
Suite 2200  
Denver, CO 80202–4432  
303–223–1100  
Fax: 303–223–1111  
Email: mfitzgerald@bhfs.com

*ATTORNEY TO BE NOTICED*

**Defendant**

**Cultural Homestay International**    represented by    **Adam A. Hubbard**
Holland & Hart, LLP–Boulder
1800 Broadway
One Boulder Plaza
Suite 300
Boulder, CO 80302
303–473–4827
Fax: 303–473–2720
Email: aahubbard@hollandhart.com
*ATTORNEY TO BE NOTICED*

**James Edward Hartley**
Holland & Hart, LLP–Denver
P.O. Box 8749
555 17th Street
Suite 3200
Denver, CO 80201–8749
303–295–8000
Fax: 303–295–8261
Email: jhartley@hollandhart.com
*ATTORNEY TO BE NOTICED*

**Jonathan S. Bender**
Holland & Hart, LLP–Denver
555 17th Street
Suite 3200
Denver, CO 80202
303–295–8456
Fax: 303–295–8261
Email: jsbender@hollandhart.com
*ATTORNEY TO BE NOTICED*

**Joseph Neguse**
Snell & Wilmer, LLP–Denver
1200 17th Street
One Tabor Center
Suite 1900
Denver, CO 80202
303–634–2096
Fax: 303–634–2020
Email: jneguse@swlaw.com
*TERMINATED: 01/27/2015*

**Mher Hartoonian**
Holland & Hart, LLP–Denver
P.O. Box 8749
555 17th Street
Suite 3200
Denver, CO 80201–8749

303−295−8000
Fax: 303−295−8261
Email: mhartoonian@hollandhart.com
*TERMINATED: 03/22/2016*

**Defendant**

**Cultural Care, Inc.**                    represented by    **Diane Rebecca Hazel**
*doing business as*                                          Lewis Roca Rothgerber Christie
Cultural Care Au Pair                                        LLP−Denver
                                                            1200 17th Street
                                                            One Tabor Center
                                                            Suite 3000
                                                            Denver, CO 80202−5855
                                                            303−628−9545
                                                            Fax: 303−623−9222
                                                            Email: dhazel@lrrc.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Donald Joseph Gentile**
                                                            Lawson & Weitzen, LLP
                                                            88 Black Falcon Avenue
                                                            Suite 345
                                                            Boston, MA 02210
                                                            617−439−4990
                                                            Fax: 617−439−3987
                                                            Email: dgentile@lawson−weitzen.com
                                                            *TERMINATED: 06/21/2016*

                                                            **James Michael Lyons**
                                                            Lewis Roca Rothgerber Christie
                                                            LLP−Denver
                                                            1200 17th Street
                                                            One Tabor Center
                                                            Suite 3000
                                                            Denver, CO 80202−5855
                                                            303−623−9000
                                                            Fax: 303−628−9222
                                                            Email: jlyons@lrrc.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jeffrey Paul Allen**
                                                            Lawson & Weitzen, LLP
                                                            88 Black Falcon Avenue
                                                            Suite 345
                                                            Boston, MA 02210
                                                            617−439−4990
                                                            Fax: 617−439−3987
                                                            Email: jallen@lawson−weitzen.com
                                                            *TERMINATED: 06/21/2016*

                                                            **Jessica Lynn Fuller**
                                                            Lewis Roca Rothgerber Christie

LLP–Denver
1200 17th Street
One Tabor Center
Suite 3000
Denver, CO 80202–5855
303–623–9000
Fax: 303–623–9222
Email: jfuller@lrrc.com
*ATTORNEY TO BE NOTICED*

**Joan A. Lukey**
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110
617–248–4949
Fax: 617–502–4949
Email: joan.lukey@choate.com
*ATTORNEY TO BE NOTICED*

**Justin J. Wolosz**
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110
617–248–5221
Fax: 617–502–5221
Email: jwolosz@choate.com
*ATTORNEY TO BE NOTICED*

**Kevin Patrick O'Keefe**
Choate Hall & Stewart, LLP
Two International Place
Boston, MA 02110
617–248–4025
Fax: 617–502–4025
Email: kokeefe@choate.com
*ATTORNEY TO BE NOTICED*

**Lyndsey Marie Kruzer**
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110
617–248–4790
Fax: 617–502–4790
Email: lkruzer@choate.com
*ATTORNEY TO BE NOTICED*

**Michael T. Gass**
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110
617–248–4750
Fax: 617–502–4750

Email: mgass@choate.com
*ATTORNEY TO BE NOTICED*

**Robert M. Buchanan , Jr.**
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110
617–248–5027
Fax: 617–502–5027
Email: rbuchanan@choate.com
*ATTORNEY TO BE NOTICED*

**Walter Vernon Siebert**
Sherman & Howard, L.L.C.–Denver
633 17th Street
Suite 3000
Denver, CO 80202–3622
303–297–2900
Fax: 303–298–0940
Email: bsiebert@shermanhoward.com
*TERMINATED: 06/21/2016*

**William Leitzsey Monts , III**
Hogan Lovells US LLP–DC
555 13th Street, N.W.
Columbia Square
Suite 1300
Washington, DC 20004–1109
202–637–5600
Fax: 202–637–5910
Email: william.monts@hoganlovells.com
*TERMINATED: 07/07/2016*

**Defendant**

**AuPairCare, Inc.**                  represented by   **Brian P. Maschler**
Arent Fox LLP–San Francisco
55 Second Street
21st Floor
San Francisco, CA 94105
415–757–5500
Fax: 415–757–5501
Email: brian.maschler@arentfox.com
*TERMINATED: 05/15/2017*

**Heather K. Kelly**
Gordon & Rees LLP–Denver
555 17th Street
Suite 3400
Denver, CO 80202
303–534–5160
Fax: 303–534–5161
Email: hkelly@gordonrees.com

*TERMINATED: 09/22/2017*

**Jennifer Arnett Roehrich**
Gordon & Rees LLP–Denver
555 17th Street
Suite 3400
Denver, CO 80202
303–200–6865
Email: jarnett–roehrich@grsm.com
*ATTORNEY TO BE NOTICED*

**Jennifer Wirkus Vedra**
Gordon & Rees LLP–Denver
555 17th Street
Suite 3400
Denver, CO 80202
303–534–5160
Fax: 303–534–5161
Email: jvedra@gordonrees.com
*ATTORNEY TO BE NOTICED*

**John Roger Mann**
Gordon & Rees, LLP–Denver
555 17th Street
Suite 3400
Denver, CO 80202
303–534–5160
Fax: 303–534–5161
Email: jmann@gordonrees.com
*TERMINATED: 05/15/2017*

**Nathan Andrew Huey**
Gordon & Rees LLP–Denver
555 17th Street
Suite 3400
Denver, CO 80202
303–534–5160
Fax: 303–534–5161
Email: nhuey@gordonrees.com
*ATTORNEY TO BE NOTICED*

**Peggy E. Kozal**
Gordon & Rees LLP–Denver
555 17th Street
Suite 3400
Denver, CO 80202
303–534–5160
Fax: 303–534–5161
Email: pkozal@gordonrees.com
*ATTORNEY TO BE NOTICED*

**Thomas Baker Quinn**

Gordon & Rees, LLP–Denver
555 17th Street
Suite 3400
Denver, CO 80202
303–534–5160
Fax: 303–534–5161
Email: tquinn@gordonrees.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Au Pair International, Inc.** | represented by | **Brian Alan Birenbach** |

Rietz Law Firm, LLC
P.O. Box 5268
114 Village Place
#301
Dillon, CO 80435
970–468–0210
Fax: 970–468–0371
Email: brian@rietzlawfirm.com
*ATTORNEY TO BE NOTICED*

**Brian Thomas Moore**
Jester Gibson & Moore, LLP
1999 Broadway
#3225
Denver, CO 80202
303–377–7888
Fax: 303–377–7075
Email: bmoore@jgllp.com
*TERMINATED: 07/01/2015*

**Grace Anne Fox**
Wheeler Trigg O'Donnell, LLP
370 17th Street
Suite 4500
Denver, CO 80202–5647
303–244–1906
Email: fox@wtotrial.com
*ATTORNEY TO BE NOTICED*

**Kathryn A. Reilly**
Wheeler Trigg O'Donnell, LLP
370 17th Street
Suite 4500
Denver, CO 80202–5647
303–244–1800
Fax: 303–244–1879
Email: reilly@wtotrial.com
*ATTORNEY TO BE NOTICED*

**Natalie Elizabeth West**
Wheeler Trigg O'Donnell, LLP

370 17th Street
Suite 4500
Denver, CO 80202–5647
303–244–1800
Fax: 303–244–1879
Email: west@wtotrial.com
*ATTORNEY TO BE NOTICED*

**Toren G. E. Mushovic**
Wheeler Trigg O'Donnell, LLP
370 17th Street
Suite 4500
Denver, CO 80202–5647
303–244–1800
Fax: 303–244–1879
Email: mushovic@wtotrial.com
*TERMINATED: 05/02/2016*

**Defendant**

| | | |
|---|---|---|
| **APF Global Exchange, NFP** | represented by | **Daniel C. Perkins** |

*doing business as*
Aupair Foundation

Arapahoe County Attorney's
Office–Littleton
5334 South Prince Street
Littleton, CO 80120–1136
303–795–4639
Fax: 303–738–7836
Email: dperkins@arapahoegov.com
*TERMINATED: 04/18/2016*

**Lawrence L. Lee**
Fisher & Phillips, LLP–Denver
1801 California Street
Suite 2700
Denver, CO 80202–3025
303–218–3650
Fax: 303–218–3651
Email: llee@laborlawyers.com
*ATTORNEY TO BE NOTICED*

**Susan M. Schaecher**
Fisher & Phillips, LLP–Denver
1801 California Street
Suite 2700
Denver, CO 80202–3025
303–218–3650
Email: sschaecher@fisherphillips.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **American Institute for Foreign Study** | represented by | **Daniel C. Perkins** |

*doing business as*

(See above for address)

Au Pair in America

*TERMINATED: 04/18/2016*

**Eric Jonathan Stock**
Gibson Dunn & Crutcher, LLP–New York
200 Park Avenue
48th Floor
New York, NY 10166–0193
212–351–2301
Fax: 212–716–0801
Email: estock@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**John B. Fulfree**
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
10th Floor
New York, NY 10175
212–682–0020
Fax: 212–682–9380
Email: jfulfree@putneylaw.com
*ATTORNEY TO BE NOTICED*

**Joseph B. Cartafalsa**
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
10th Floor
New York, NY 10175
212–682–5428
Fax: 212–682–9380
Email: jcartafalsa@putneylaw.com
*ATTORNEY TO BE NOTICED*

**Lawrence L. Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert M. Tucker**
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
10th Floor
New York, NY 10175
212–682–0020
Fax: 212–682–9380
Email: rtucker@putneylaw.com
*ATTORNEY TO BE NOTICED*

**Stephen J. Macri**
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
10th Floor
New York, NY 10175
212–682–0020

Fax: 212–682–9380
Email: smacri@putneylaw.com
*ATTORNEY TO BE NOTICED*

**Susan M. Schaecher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| American Cultural Exchange, LLC | represented by | **Brian Alan Birenbach** |
| doing business as | | (See above for address) |
| GoAuPair | | *ATTORNEY TO BE NOTICED* |

**Grace Anne Fox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kathryn A. Reilly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Natalie Elizabeth West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Toren G. E. Mushovic**
(See above for address)
*TERMINATED: 05/02/2016*

**Defendant**

| Agent Au Pair | represented by | **Grace Anne Fox** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**Kathryn A. Reilly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Natalie Elizabeth West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Toren G. E. Mushovic**
(See above for address)
*TERMINATED: 05/02/2016*

**Defendant**

| A.P.E.X. American Professional | represented by | **James D. Kilroy** |
| Exchange, LLC | | Snell & Wilmer, LLP–Denver |
| doing business as | | 1200 17th Street |
| ProAuPair | | One Tabor Center |

Suite 1900
Denver, CO 80202
303–634–2000
Fax: 303–634–2020
Email: jkilroy@swlaw.com
*TERMINATED: 02/04/2015*
*LEAD ATTORNEY*

**Aubrey Jane Markson**
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway
Suite 1200
Greenwood Village, CO 80111–3061
303–773–3500
Fax: 303–779–0740
Email: amarkson@nixonshefrin.com
*ATTORNEY TO BE NOTICED*

**Christian Dow Hammond**
Dufford & Brown, P.C.
1700 Broadway
Suite 2100
Denver, CO 80290–2101
303–861–8013
Fax: 303–832–3804
Email: christian@dallahammond.com
*TERMINATED: 01/30/2017*

**Kathleen E. Craigmile**
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway
Suite 1200
Greenwood Village, CO 80111–3061
303–773–3500
Fax: 303–779–0740
Email: kcraigmile@nixonshefrin.com
*ATTORNEY TO BE NOTICED*

**Lawrence Daniel Stone**
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway
Suite 1200
Greenwood Village, CO 80111–3061
303–773–3500
Fax: 303–779–0740
Email: lstone@nixonshefrin.com
*ATTORNEY TO BE NOTICED*

**Neal J.G. McConomy**
Snell & Wilmer, LLP–Denver
1200 17th Street
One Tabor Center

Suite 1900
Denver, CO 80202
303–634–2000
Fax: 303–634–2020
Email: nmcconomy@swlaw.com
*TERMINATED: 01/23/2015*

**Defendant**

| **20/20 Care Exchange, Inc** | represented by | **James D. Kilroy** |
| *doing business as* | | (See above for address) |
| International Au Pair Exchange, The | | *TERMINATED: 02/04/2015* |
| | | *LEAD ATTORNEY* |

**Aubrey Jane Markson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dow Hammond**
(See above for address)
*TERMINATED: 01/30/2017*

**Kathleen E. Craigmile**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lawrence Daniel Stone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Neal J.G. McConomy**
(See above for address)
*TERMINATED: 01/23/2015*

**Defendant**

**Associates In Cultural Exchange**
*doing business as*
GoAuPair

**Defendant**

| **GoAuPair Operations, LLC** | represented by | **Grace Anne Fox** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**Kathryn A. Reilly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

| **International Care Limited** | represented by | **Harvey J. Wolkoff** |
| | | Ropes & Gray, LLP–Boston |

800 Boylston Street
Prudential Tower
Suite 3600
Boston, MA 02199–3600
617–951–7000
Fax: 617–951–7050
Email: harvey.wolkoff@ropesgray.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/13/2014 | 1 | | COMPLAINT against 20/20 CARE EXCHANGE, INC., A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, AGENT AU PAIR, AMERICAN CULTURAL EXCHANGE, LLC, AMERICAN INSTITUTE FOR FOREIGN STUDY, APF GLOBAL EXCHANGE, NFP, AU PAIR INTERNATIONAL, INC., AUPAIRCARE INC., CULTURAL CARE, INC., CULTURAL HOMESTAY INTERNATIONAL, EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS, EXPERT GROUP INTERNATIONAL INC., GREATAUPAIR, LLC, INTEREXCHANGE, INC., Pamela H Noonan, Thomas J Noonan, USAUPAIR, INC. Attorney Alexander Neville Hood added to party Johana Paola Beltran(pty:pla), filed by Johana Paola Beltran.(Hood, Alexander) (Entered: 11/13/2014) |
| 11/13/2014 | 2 | | Unopposed MOTION and Affidavit for Leave to Proceed Under 28 U.S.C. 1915 by Plaintiff Johana Paola Beltran. (Hood, Alexander) (Entered: 11/13/2014) |
| 11/14/2014 | 3 | | Case assigned to Magistrate Judge Gordon P. Gallagher. Text Only Entry (sphil, ) (Entered: 11/14/2014) |
| 11/14/2014 | 4 | | No summons issued. Magistrate Judge Consent Form issued pursuant to Local Rule (sphil, ) (Entered: 11/14/2014) |
| 11/15/2014 | 5 | | ORDER Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. § 1915 2 Motion, by Magistrate Judge Gordon P. Gallagher on 11/15/14.(morti, ) (Entered: 11/17/2014) |
| 11/15/2014 | 6 | | ORDER Drawing Case; This case shall be drawn to a presiding judge, and when applicable to a magistrate judge, by Magistrate Judge Gordon P. Gallagher on 11/15/14. (morti, ) (Entered: 11/17/2014) |
| 11/17/2014 | 7 | | CASE REASSIGNED pursuant to 6 Order Drawing Case. This case is reassigned to Judge Wiley Y. Daniel. All future pleadings should be designated as 14–cv–03074–WYD–CBS. (Text Only Entry) (morti, ) (Entered: 11/17/2014) |
| 11/20/2014 | 8 | | CERTIFICATE of Service by Clerk of Court re 1 Complaint for Service of Process,, (Attachments: # 1 U.S.Marshal Forms) (sphil, ) (Entered: 11/20/2014) |
| 11/24/2014 | 9 | | MEMORANDUM RETURNING CASE for Reassignment by Judge Wiley Y. Daniel. (rkeec) (Entered: 11/24/2014) |
| 11/24/2014 | 10 | | CASE REASSIGNED pursuant to 9 Memorandum Returning Case. This case is reassigned to Judge Christine M. Arguello. All future pleadings should be |

| | | | |
|---|---|---|---|
| | | | designated as 14–cv–03074–CMA–CBS. (Text Only Entry) (rkeec) (Entered: 11/24/2014) |
| 12/10/2014 | 11 | | SUMMONS Returned Executed by Johana Paola Beltran. Pamela H Noonan served on 12/5/2014, answer due 12/26/2014. (evana, ) (Entered: 12/10/2014) |
| 12/10/2014 | 12 | | SUMMONS Returned Executed by Johana Paola Beltran. Thomas J Noonan served on 12/5/2014, answer due 12/26/2014. (evana, ) (Entered: 12/10/2014) |
| 12/22/2014 | 13 | | SUMMONS Returned Executed by Johana Paola Beltran. Au Pair International, Inc. served on 12/15/2014, answer due 1/5/2015. (evana, ) (Entered: 12/23/2014) |
| 12/26/2014 | 14 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond by Plaintiff Johana Paola Beltran. (Hood, Alexander) (Entered: 12/26/2014) |
| 12/29/2014 | 15 | | MINUTE ORDER granting 14 Motion for Extension of Time to Answer or Otherwise Respond. The Noonans shall have up to and including 1/30/2015, within which to file a response to the complaint. By Judge Christine M. Arguello on 12/29/2014. Text Only Entry(shart) (Entered: 12/29/2014) |
| 01/05/2015 | 16 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond *to Complaint* by Defendant Au Pair International, Inc.. (Moore, Brian) (Entered: 01/05/2015) |
| 01/07/2015 | 17 | | SUMMONS Returned Executed by Johana Paola Beltran. InterExchange, Inc. served on 12/16/2014, answer due 1/6/2015. (evana, ) (Entered: 01/07/2015) |
| 01/07/2015 | 18 | | SUMMONS Returned Executed by Johana Paola Beltran. American Cultural Exchange, LLC served on 12/22/2014, answer due 1/12/2015. (evana, ) (Entered: 01/07/2015) |
| 01/07/2015 | 19 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint,, by Defendant Cultural Homestay International. (Neguse, Joseph) (Entered: 01/07/2015) |
| 01/08/2015 | 20 | | ORDER granting 16 Motion for Extension of Time to Answer or Otherwise Respond. Au Pair International, Inc. shall have up to and including 1/30/2015 within which to file its Answer or otherwise respond. SO ORDERED BY Judge Christine M. Arguello on 1/8/2015. Text Only Entry(cmalc2) (Entered: 01/08/2015) |
| 01/08/2015 | 21 | | ORDER granting 19 Motion for Extension of Time to Answer or Otherwise Respond. Cultural Homestay International shall have up to and including 1/30/2015 within which to file its Answer or otherwise respond. SO ORDERED BY Judge Christine M. Arguello on 1/8/2015. Text Only Entry (cmalc2) (Entered: 01/08/2015) |
| 01/09/2015 | 22 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint,, by Defendant InterExchange, Inc.. (Vickles, Heather) (Entered: 01/09/2015) |
| 01/12/2015 | 23 | | MOTION for Extension of Time to File Answer or Otherwise Respond by Defendant American Cultural Exchange, LLC. (Birenbach, Brian) (Entered: 01/12/2015) |

| 01/12/2015 | 24 | | MOTION for Extension of Time to File Answer or Otherwise Respond by Defendant Au Pair International, Inc.. (Birenbach, Brian) (Entered: 01/12/2015) |
|---|---|---|---|
| 01/13/2015 | 25 | | ORDER granting 22 Motion for Extension of Time to Answer or Otherwise Respond. Defendant InterExchange, Inc., shall have up to and including 1/30/2015 within which to file its Answer or otherwise respond to the Complaint. SO ORDERED BY Judge Christine M. Arguello on 1/13/2015. Text Only Entry (cmalc2) (Entered: 01/13/2015) |
| 01/14/2015 | 26 | | NOTICE of Entry of Appearance by Walter Vernon Bernie Siebert on behalf of Cultural Care, Inc.Attorney Walter Vernon Bernie Siebert added to party Cultural Care, Inc.(pty:dft) (Siebert, Walter) (Entered: 01/14/2015) |
| 01/14/2015 | 27 | | SUMMONS Returned Executed. Cultural Homestay International served Summons and Complaint on 12/23/2014, answer due 1/13/2015. (athom, ) (Entered: 01/14/2015) |
| 01/14/2015 | 28 | | SUMMONS Returned Executed. 20/20 Care Exchange, Inc served Summons and Complaint on 1/7/2015, answer due 1/28/2015. (athom, ) (Entered: 01/14/2015) |
| 01/14/2015 | 29 | | NOTICE of Entry of Appearance by James Edward Hartley on behalf of Cultural Homestay InternationalAttorney James Edward Hartley added to party Cultural Homestay International(pty:dft) (Hartley, James) (Entered: 01/14/2015) |
| 01/14/2015 | 30 | | SUMMONS Returned Executed. Agent Au Pair served Summons and Complaint on 1/7/2015, answer due 1/28/2015. (athom, ) (Entered: 01/14/2015) |
| 01/14/2015 | 31 | | SUMMONS Returned Executed. APF Global Exchange, NFP served Summons and Complaint on 12/23/2014, answer due 1/13/2015. (athom, ) (Entered: 01/14/2015) |
| 01/14/2015 | 32 | | SUMMONS Returned Executed. AuPairCare, Inc. served Summons and Complaint on 12/18/2014, answer due 1/8/2015. (athom, ) (Entered: 01/14/2015) |
| 01/14/2015 | 33 | | NOTICE of Entry of Appearance by Jeffrey Paul Allen on behalf of Cultural Care, Inc.Attorney Jeffrey Paul Allen added to party Cultural Care, Inc.(pty:dft) (Allen, Jeffrey) (Entered: 01/14/2015) |
| 01/15/2015 | 34 | | SUMMONS Returned Executed. A.P.E.X. American Professional Exchange, LLC served Summons and Complaint on 1/5/2015, answer due 1/26/2015. (athom, ) (Entered: 01/15/2015) |
| 01/15/2015 | 35 | | SUMMONS Returned Executed. EuRaupair InterCultural Child Care Programs served Summons and Complaint on 1/5/2015, answer due 1/26/2015. (athom, ) (Entered: 01/15/2015) |
| 01/20/2015 | 36 | | SUMMONS Returned Executed by Johana Paola Beltran. Cultural Care, Inc. served on 1/9/2015, answer due 1/30/2015. (evana, ) (Entered: 01/21/2015) |
| 01/22/2015 | 37 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint,, by Defendant Cultural Care, Inc.. (Siebert, Walter) |

| | | | |
|---|---|---|---|
| | | | (Entered: 01/22/2015) |
| 01/23/2015 | 38 | | NOTICE of Entry of Appearance by Neal J.G. McConomy on behalf of 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLCAttorney Neal J.G. McConomy added to party 20/20 Care Exchange, Inc(pty:dft), Attorney Neal J.G. McConomy added to party A.P.E.X. American Professional Exchange, LLC(pty:dft) (McConomy, Neal) (Entered: 01/23/2015) |
| 01/23/2015 | 39 | | ORDER granting 23 Motion for Extension of Time to Answer or Otherwise Respond. American Cultural Exchange, LLC shall have up to and including 1/30/2015 to answer or otherwise respond to the Complaint. SO ORDERED BY Judge Christine M. Arguello on 1/23/2015. Text Only Entry (cmalc2) (Entered: 01/23/2015) |
| 01/23/2015 | 40 | | ORDER granting 37 Motion for Extension of Time to Answer or Otherwise Respond. Defendant Cultural Care, Inc. shall have up to and including 2/16/2015 to answer or otherwise respond to the Complaint. SO ORDERED BY Judge Christine M. Arguello on 1/23/2015. Text Only Entry (cmalc2) (Entered: 01/23/2015) |
| 01/23/2015 | 41 | | NOTICE of Entry of Appearance by William James Kelly, III on behalf of USAuPair, INCAttorney William James Kelly, III added to party USAuPair, INC(pty:dft) (Kelly, William) (Entered: 01/23/2015) |
| 01/23/2015 | 42 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint,, *and to Establish Common Response Date* by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc., Cultural Care, Inc., Cultural Homestay International, InterExchange, Inc., Pamela H Noonan, Thomas J Noonan, USAuPair, INC. (Colaizzi, Brooke) (Entered: 01/23/2015) |
| 01/23/2015 | 43 | | NOTICE of Entry of Appearance by Kathryn A. Reilly on behalf of Agent Au PairAttorney Kathryn A. Reilly added to party Agent Au Pair(pty:dft) (Reilly, Kathryn) (Entered: 01/23/2015) |
| 01/26/2015 | 44 | | ORDER REFERRING CASE to Magistrate Judge Craig B. Shaffer. Magistrate Judge Shaffer is designated to conduct NDISPO proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a) and (b). The parties should expect to be given a firm trial setting that is 60 to 120 days from the date of the final pretrial conference, and should be available for trial accordingly. FURTHER, Court–sponsored alternative dispute resolution is governed by D.C. COLOLCivR 16.6. On the recommendation or informal request of the magistrate judge or on the request of the parties by motion, the Court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. SO ORDERED BY Judge Christine M. Arguello on 1/26/2015. Text Only Entry (cmalc2) (Entered: 01/26/2015) |
| 01/26/2015 | 45 | | MEMORANDUM regarding 42 Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint,, *and to Establish Common Response Date* filed by 20/20 Care Exchange, Inc, Cultural Care, Inc., Au Pair International, Inc., A.P.E.X. American Professional Exchange, LLC, Pamela H Noonan, InterExchange, Inc., Agent Au Pair, American |

| | | | |
|---|---|---|---|
| | | | Cultural Exchange, LLC, Cultural Homestay International, Thomas J Noonan, USAuPair, Inc.. Motions referred to Magistrate Judge Craig B. Shaffer by Judge Christine M. Arguello on 1/26/2015. Text Only Entry (cmalc2) (Entered: 01/26/2015) |
| 01/26/2015 | 46 | | ORDER granting 42 Motion for Extension of Time to Answer or Otherwise Respond re 1 Complaint. The responsive pleading deadline is extended to on or before 2/23/2015 for the following defendants: Cultural Care, Inc.; A.P.E.X. American Professional Exchange, LLC; Thomas J Noonan; Pamela H Noonan; Au Pair International, Inc.; Agent Au Pair; InterExchange, Inc.; American Cultural Exchange, LLC; 20/20 Care Exchange, Inc; Cultural Homestay International; USAuPair, INC and finding as moot 24 Motion for Extension of Time to Answer or Otherwise Respond. Text Only Entry by Magistrate Judge Craig B. Shaffer on 1/26/15. (cbssec) (Entered: 01/26/2015) |
| 01/26/2015 | 47 | | MINUTE ORDER setting a Scheduling Conference for 3/25/2015 at 10:00 AM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. ORDERED that parties shall adhere to the deadlines and instructions as set forth in  Preparation for Rule 16(b) Scheduling Conference, located on the court's website under "Judicial Officers." Text Only Entry by Magistrate Judge Craig B. Shaffer on 1/26/15. (cbssec) (Entered: 01/26/2015) |
| 01/26/2015 | 48 | | MOTION to Withdraw by Defendant Cultural Homestay International. (Neguse, Joseph) (Entered: 01/26/2015) |
| 01/27/2015 | 49 | | ORDER granting 48 Motion to Withdraw. Attorney Joseph Neguse is permitted to withdraw as counsel for Defendant Cultural Homestay International. The Court notes that Defendant Cultural Homestay International continues to be represented by James Hartley. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Neguse's email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 1/27/2015. Text Only Entry (cmalc2) Modified on 1/27/2015 to correct text (athom, ). (Entered: 01/27/2015) |
| 01/28/2015 | 50 | | SUMMONS Returned Executed by Johana Paola Beltran. USAuPair, INC served on 1/16/2015, answer due 2/6/2015. (evana, ) (Entered: 01/28/2015) |
| 01/28/2015 | 51 | | SUMMONS Returned Executed by Johana Paola Beltran. GreatAuPair, LLC served on 1/21/2015, answer due 2/11/2015. (evana, ) (Entered: 01/28/2015) |
| 01/30/2015 | 52 | | NOTICE of Entry of Appearance by Bogdan Enica on behalf of Expert Group International, IncAttorney Bogdan Enica added to party Expert Group International, Inc(pty:dft) (Enica, Bogdan) (Entered: 01/30/2015) |
| 02/02/2015 | 53 | | NOTICE of Entry of Appearance by Lawrence Daniel Stone on behalf of 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLCAttorney Lawrence Daniel Stone added to party 20/20 Care Exchange, Inc(pty:dft), Attorney Lawrence Daniel Stone added to party A.P.E.X. American Professional Exchange, LLC(pty:dft) (Stone, Lawrence) (Entered: 02/02/2015) |
| 02/03/2015 | 54 | | MOTION to Withdraw as Attorney by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (McConomy, Neal) (Entered: 02/03/2015) |

| 02/04/2015 | 55 | | ORDER granting 54 Motion to Withdraw as Attorney. Attorney James Kilroy is permitted to withdraw as counsel for Defendants A.P.E.X. American Professional Exchange, L.L.C. and 20/20 Care Exchange, Inc.. The Court further notes that these Defendants continue to be represented by Lawrence Daniel Stone and Christian D. Hammond. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Kilroy's email address from future ECF filings and electronic notifications in this case. The Court also notes that it did not need terminate Attorney Neal McConomy because he did not enter an appearance in this case. SO ORDERED BY Judge Christine M. Arguello on 2/4/2015. Text Only Entry (cmalc2) (Entered: 02/04/2015) |
|------------|----|----|----|
| 02/09/2015 | 56 | | NOTICE of Entry of Appearance by Mher Hartoonian on behalf of Cultural Homestay InternationalAttorney Mher Hartoonian added to party Cultural Homestay International(pty:dft) (Hartoonian, Mher) (Entered: 02/09/2015) |
| 02/10/2015 | 57 | | NOTICE of Entry of Appearance *for Meshach Rhoades and Martin Estevao* by Meshach Yustine Rhoades on behalf of GreatAuPair, LLCAttorney Meshach Yustine Rhoades added to party GreatAuPair, LLC(pty:dft) (Rhoades, Meshach) (Entered: 02/10/2015) |
| 02/11/2015 | 58 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond by Defendant Expert Group International, Inc. (Enica, Bogdan) (Entered: 02/11/2015) |
| 02/11/2015 | 59 | | STIPULATION for Extension of Time to Answer or Respond to the Complaint *(Joint)* by Defendant GreatAuPair, LLC.. (Rhoades, Meshach) (Entered: 02/11/2015) |
| 02/11/2015 | 60 | | NOTICE of Entry of Appearance by Martha Louise Fitzgerald on behalf of EuRaupair InterCultural Child Care ProgramsAttorney Martha Louise Fitzgerald added to party EuRaupair InterCultural Child Care Programs(pty:dft) (Fitzgerald, Martha) (Entered: 02/11/2015) |
| 02/11/2015 | 61 | | NOTICE of Entry of Appearance *on Behalf of American Institute for Foreign Study DBA Au Pair in America* by Lawrence L. Lee on behalf of American Institute for Foreign StudyAttorney Lawrence L. Lee added to party American Institute for Foreign Study(pty:dft) (Lee, Lawrence) (Entered: 02/11/2015) |
| 02/11/2015 | 62 | | NOTICE of Entry of Appearance by Kathryn Anne Barrett on behalf of EuRaupair InterCultural Child Care ProgramsAttorney Kathryn Anne Barrett added to party EuRaupair InterCultural Child Care Programs(pty:dft) (Barrett, Kathryn) (Entered: 02/11/2015) |
| 02/11/2015 | 63 | | NOTICE of Entry of Appearance *on Behalf of APF Global Exchange, NFP* by Lawrence L. Lee on behalf of APF Global Exchange, NFPAttorney Lawrence L. Lee added to party APF Global Exchange, NFP(pty:dft) (Lee, Lawrence) (Entered: 02/11/2015) |
| 02/11/2015 | 64 | | NOTICE of Entry of Appearance *on Behalf of American Institute for Foreign Study dba Au Pair In America* by Daniel C. Perkins on behalf of American Institute for Foreign StudyAttorney Daniel C. Perkins added to party American Institute for Foreign Study(pty:dft) (Perkins, Daniel) (Entered: 02/11/2015) |
| 02/11/2015 | 65 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Entry of Appearance *on Behalf of APF Global Exchange, NFP* by Daniel C. Perkins on behalf of APF Global Exchange, NFPAttorney Daniel C. Perkins added to party APF Global Exchange, NFP(pty:dft) (Perkins, Daniel) (Entered: 02/11/2015) |
| 02/12/2015 | 66 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint,, by Defendant EuRaupair InterCultural Child Care Programs. (Attachments: # 1 Proposed Order (PDF Only))(Fitzgerald, Martha) (Entered: 02/12/2015) |
| 02/12/2015 | 67 | | ORDER granting 58 Motion for Extension of Time to Answer or Otherwise Respond. Defendant Expert Group International, Inc. shall have up to and including 3/5/2015 to answer or otherwise respond to the Complaint. SO ORDERED BY Judge Christine M. Arguello on 2/12/2015. Text Only Entry (cmalc2) (Entered: 02/12/2015) |
| 02/12/2015 | 68 | | ORDER granting 66 Motion for Extension of Time to Answer or Otherwise Respond. Defendant EuRaupair InterCultural Child Care Programs shall have up to and including 2/23/2015 to answer or otherwise respond to the Complaint. SO ORDERED BY Judge Christine M. Arguello on 2/12/2015. Text Only Entry (cmalc2) (Entered: 02/12/2015) |
| 02/19/2015 | 69 | | CORPORATE DISCLOSURE STATEMENT. (Stone, Lawrence) (Entered: 02/19/2015) |
| 02/19/2015 | 70 | | CORPORATE DISCLOSURE STATEMENT. (Reilly, Kathryn) (Entered: 02/19/2015) |
| 02/20/2015 | 71 | | CORPORATE DISCLOSURE STATEMENT. (Colaizzi, Brooke) (Entered: 02/20/2015) |
| 02/20/2015 | 72 | | NOTICE of Entry of Appearance by Donald Joseph Gentile on behalf of Cultural Care, Inc.Attorney Donald Joseph Gentile added to party Cultural Care, Inc.(pty:dft) (Gentile, Donald) (Entered: 02/20/2015) |
| 02/20/2015 | 73 | | CORPORATE DISCLOSURE STATEMENT identifying Corporate Parent Cultural Care Management, Inc. for Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 02/20/2015) |
| 02/20/2015 | 74 | | MOTION to Dismiss for Failure to State a Claim by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit)(Allen, Jeffrey) (Entered: 02/20/2015) |
| 02/20/2015 | 75 | | MOTION to Dismiss *Counts II, III, IV, and V of the Complaint* by Defendant InterExchange, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Colaizzi, Brooke) (Entered: 02/20/2015) |
| 02/20/2015 | 76 | | CORPORATE DISCLOSURE STATEMENT. (Moore, Brian) (Entered: 02/20/2015) |
| 02/23/2015 | 77 | | CORPORATE DISCLOSURE STATEMENT. (Fitzgerald, Martha) (Entered: 02/23/2015) |
| 02/23/2015 | 78 | | NOTICE of Entry of Appearance by Chanda Marie Feldkamp on behalf of USAuPair, INCAttorney Chanda Marie Feldkamp added to party USAuPair, |

| | | | |
|---|---|---|---|
| | | | INC(pty:dft) (Feldkamp, Chanda) (Entered: 02/23/2015) |
| 02/23/2015 | 79 | | CORPORATE DISCLOSURE STATEMENT. (Enica, Bogdan) (Entered: 02/23/2015) |
| 02/23/2015 | 80 | | CORPORATE DISCLOSURE STATEMENT. (Hartley, James) (Entered: 02/23/2015) |
| 02/23/2015 | 81 | | NOTICE of Entry of Appearance by Kathryn A. Reilly on behalf of American Cultural Exchange, LLCAttorney Kathryn A. Reilly added to party American Cultural Exchange, LLC(pty:dft) (Reilly, Kathryn) (Entered: 02/23/2015) |
| 02/23/2015 | 82 | | Joint MOTION to Dismiss *by Certain Sponsor Defendants* by Defendant Cultural Homestay International. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order (PDF Only))(Hartley, James) (Entered: 02/23/2015) |
| 02/23/2015 | 83 | | Unopposed MOTION to Stay *ALL DEADLINES FOR DEFENDANTS PAMELA AND THOMAS NOONAN PENDING SETTLEMENT* by Plaintiff Johana Paola Beltran. (Hood, Alexander) (Entered: 02/23/2015) |
| 02/23/2015 | 84 | | Joint MOTION to Supplement 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* by Defendants American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., EuRaupair InterCultural Child Care Programs, Expert Group International, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Moore, Brian) (Entered: 02/23/2015) |
| 02/23/2015 | 85 | | MOTION for Joinder re 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* by Defendant 20/20 Care Exchange, Inc. (Stone, Lawrence) (Entered: 02/23/2015) |
| 02/23/2015 | 86 | | MOTION for Joinder re 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* by Defendant A.P.E.X. American Professional Exchange, LLC. (Stone, Lawrence) (Entered: 02/23/2015) |
| 02/24/2015 | 87 | | MEMORANDUM regarding 85 MOTION for Joinder re 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* filed by 20/20 Care Exchange, Inc., 83 Unopposed MOTION to Stay *ALL DEADLINES FOR DEFENDANTS PAMELA AND THOMAS NOONAN PENDING SETTLEMENT* filed by Johana Paola Beltran, 75 MOTION to Dismiss *Counts II, III, IV, and V of the Complaint* filed by InterExchange, Inc., 84 Joint MOTION to Supplement 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* filed by American Cultural Exchange, LLC, Au Pair International, Inc., American Institute for Foreign Study, Expert Group International, Inc, EuRaupair InterCultural Child Care Programs, 74 MOTION to Dismiss for Failure to State a Claim filed by Cultural Care, Inc., 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* filed by Cultural Homestay International, 86 MOTION for Joinder re 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* filed by A.P.E.X. American Professional Exchange, LLC. Motions referred to Magistrate Judge Craig B. Shaffer by Judge Christine M. Arguello on 2/24/2015. Text Only Entry (cmalc2) (Entered: 02/24/2015) |
| 02/24/2015 | 88 | | CORPORATE DISCLOSURE STATEMENT. (Lee, Lawrence) (Entered: 02/24/2015) |
| 02/24/2015 | 89 | | |

| | | | |
|---|---|---|---|
| | | | CORPORATE DISCLOSURE STATEMENT. (Lee, Lawrence) (Entered: 02/24/2015) |
| 02/24/2015 | 90 | | CORPORATE DISCLOSURE STATEMENT. (Kelly, William) (Entered: 02/24/2015) |
| 02/24/2015 | 91 | | CORPORATE DISCLOSURE STATEMENT. (Reilly, Kathryn) (Entered: 02/24/2015) |
| 02/25/2015 | 92 | | ORDER granting 83 Motion to Stay. Pursuant to the request in Plaintiff's Motion, Defendants Pamela and Thomas Noonan may have a three week extension of time, up to and including March 18, 2015, to answer or otherwise respond to the complaint. By Magistrate Judge Craig B. Shaffer on 02/25/2015. Text Only Entry(cbslc2) (Entered: 02/25/2015) |
| 02/27/2015 | 93 | | NOTICE of Entry of Appearance by John Roger Mann on behalf of AuPairCare, Inc.Attorney John Roger Mann added to party AuPairCare, Inc.(pty:dft) (Mann, John) (Entered: 02/27/2015) |
| 02/27/2015 | 94 | | NOTICE of Entry of Appearance by Thomas Baker Quinn on behalf of AuPairCare, Inc.Attorney Thomas Baker Quinn added to party AuPairCare, Inc.(pty:dft) (Quinn, Thomas) (Entered: 02/27/2015) |
| 02/27/2015 | 95 | | CORPORATE DISCLOSURE STATEMENT. (Mann, John) (Entered: 02/27/2015) |
| 02/27/2015 | 96 | | CORPORATE DISCLOSURE STATEMENT. (Rhoades, Meshach) (Entered: 02/27/2015) |
| 03/02/2015 | 97 | | JOINDER re 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* by Defendant AuPairCare, Inc.. (Mann, John) (Entered: 03/02/2015) |
| 03/04/2015 | 98 | | SUMMONS Returned Executed by Johana Paola Beltran. American Institute for Foreign Study served on 2/6/2015, answer due 2/27/2015. (evana, ) (Entered: 03/04/2015) |
| 03/13/2015 | 99 | | ORDER converting defendants American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., EuRaupair InterCultural Child Care Programs, and Expert Group International, Inc.'s 84 Motion to Supplement into a JOINDER to 82 Motion to Dismiss. Text Only Entry by Magistrate Judge Craig B. Shaffer on 3/13/15.(cbssec) (Entered: 03/13/2015) |
| 03/13/2015 | 100 | | ORDER converting 20/20 Care Exchange, Inc's 85 Motion for Joinder and A.P.E.X. American Professional Exchange, LLC's 86 Motion for Joinder into JOINDERS to 82 Motion to Dismiss. Text Only Entry by Magistrate Judge Craig B. Shaffer on 3/13/15.(cbssec) (Entered: 03/13/2015) |
| 03/13/2015 | 101 | | AMENDED COMPLAINT against All Defendants, filed by Johana Paola Beltran.(Hood, Alexander) (Entered: 03/13/2015) |
| 03/13/2015 | 102 | | NOTICE re 101 Amended Complaint by Plaintiff Johana Paola Beltran (Attachments: # 1 Ex. A –– Redline of First Amended Complaint)(Hood, Alexander) (Entered: 03/13/2015) |
| 03/13/2015 | 103 | | RESPONSE to 85 MOTION for Joinder re 82 Joint MOTION to Dismiss *by Certain Sponsor Defendants* , 75 MOTION to Dismiss *Counts II, III, IV, and* |

| | | | |
|---|---|---|---|
| | | | *V of the Complaint*, <u>84</u> Joint MOTION to Supplement <u>82</u> Joint MOTION to Dismiss *by Certain Sponsor Defendants* , <u>74</u> MOTION to Dismiss for Failure to State a Claim , <u>82</u> Joint MOTION to Dismiss *by Certain Sponsor Defendants*, <u>86</u> MOTION for Joinder re <u>82</u> Joint MOTION to Dismiss *by Certain Sponsor Defendants and* <u>97</u> *JOINDER re 82 Joint MOTION to Dismiss by Certain Sponsor Defendants by Defendant AuPairCare, Inc.* filed by Plaintiff Johana Paola Beltran. (Hood, Alexander) (Entered: 03/13/2015) |
| 03/16/2015 | 104 | | MINUTE ORDER re: March 25, 2015 Scheduling Conference. ORDERED that out−of−state counsel may participate by telephone. Counsel shall first initiate a conference call among themselves before contacting the court (303.844.2117) at the scheduled time. Text Only Entry by Magistrate Judge Craig B. Shaffer on 3/16/15. (cbssec) (Entered: 03/16/2015) |
| 03/17/2015 | <u>105</u> | | NOTICE of Entry of Appearance *for Great AuPair, LLC (Martin Estevao)* by Meshach Yustine Rhoades on behalf of GreatAuPair, LLC (Rhoades, Meshach) (Entered: 03/17/2015) |
| 03/17/2015 | 106 | | ORDER finding as moot <u>74</u> Motion to Dismiss for Failure to State a Claim; <u>75</u> Motion to Dismiss; and <u>82</u> Motion to Dismiss, in light of Plaintiffs' <u>101</u> First Amended Complaint. Text Only Entry by Magistrate Judge Craig B. Shaffer on 3/17/2015. (cbssec) (Entered: 03/17/2015) |
| 03/17/2015 | <u>107</u> | | MOTION to Continue *Scheduling Conference by Defendant American Cultural Exchange, LLC d/b/a GoAuPair and* by Defendant InterExchange, Inc.. (Colaizzi, Brooke) (Entered: 03/17/2015) |
| 03/18/2015 | 108 | | MEMORANDUM regarding MOTION to Continue *Scheduling Conference by Defendant American Cultural Exchange, LLC d/b/a GoAuPair* filed by InterExchange, Inc. <u>107</u> . Motion referred to Magistrate Judge Craig B. Shaffer by Judge Christine M. Arguello on 3/18/2015. Text Only Entry (cmalc2) (Entered: 03/18/2015) |
| 03/18/2015 | <u>109</u> | | Joint MOTION to Continue *Scheduling Conference* by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 03/18/2015) |
| 03/18/2015 | <u>110</u> | | RESPONSE to <u>107</u> MOTION to Continue *Scheduling Conference by Defendant American Cultural Exchange, LLC d/b/a GoAuPair and CONSENTING TO MOTION* filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # <u>1</u> Ex. A − 3/17/2015 Letter to B. Colaizzi)(Hood, Alexander) (Entered: 03/18/2015) |
| 03/19/2015 | 111 | | ORDER granting <u>107</u> Motion to Continue. The Scheduling Conference set for March 25, 2015, is vacated. The Scheduling Conference will be reset upon notice from counsel for the parties. All counsel shall confer and choose a new date and time for the Scheduling Conference from the following: May 5, 2015 at 11:00 AM; May 6, 2015 at 9:00 AM or 10:00 AM; May 7, 2015 at 9:00 AM or 11:00 AM; May 8, 2015 at 9:00 AM or 1:30 PM; or May 11, 2015 at 9:00 AM or 11:00 AM. Counsel shall notify chambers of their choice no later than March 27, 2015. By Magistrate Judge Craig B. Shaffer on 03/19/2015. Text Only Entry(cbslc2) (Entered: 03/19/2015) |
| 03/20/2015 | <u>112</u> | | NOTICE of Change of Address/Contact Information by Alexander Neville Hood (Hood, Alexander) (Entered: 03/20/2015) |

| 03/23/2015 | 113 | | NOTICE of Voluntary Dismissal of Party *ASSOCIATES IN CULTURAL EXCHANGE dba GOAUPAIR* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni (Hood, Alexander) (Entered: 03/23/2015) |
| 03/26/2015 | 114 | | MINUTE ORDER A Scheduling Conference is set for 5/26/2015 at 11:00 AM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. ORDERED that parties shall adhere to the deadlines and instructions as set forth in Preparation for Rule 16(b) Scheduling Conference, located on the court's website under "Judicial Officers." FURTHER ORDERED that out−of−state counsel may participate by telephone. Counsel shall first initiate a conference call among themselves before contacting the court (303.844.2117) at the scheduled time. By Magistrate Judge Craig B. Shaffer on 03/26/2015. Text Only Entry (cbslc2) (Entered: 03/26/2015) |
| 03/26/2015 | 115 | | STIPULATION for Extension of Time to Answer or Respond to the Complaint by Defendants Cultural Care, Inc., A.P.E.X. American Professional Exchange, LLC, Expert Group International, Inc, American Cultural Exchange, LLC, 20/20 Care Exchange, Inc, American Institute for Foreign Study, AuPairCare, Inc., GreatAuPair, LLC, EuRaupair InterCultural Child Care Programs, APF Global Exchange, NFP, Agent Au Pair, Au Pair International, Inc., InterExchange, Inc., Cultural Homestay International, USAuPair, INC. Cultural Care, Inc. answer due 4/20/2015; A.P.E.X. American Professional Exchange, LLC answer due 4/20/2015; Expert Group International, Inc answer due 4/20/2015; American Cultural Exchange, LLC answer due 4/20/2015; 20/20 Care Exchange, Inc answer due 4/20/2015; American Institute for Foreign Study answer due 4/20/2015; AuPairCare, Inc. answer due 4/20/2015; GreatAuPair, LLC answer due 4/20/2015; EuRaupair InterCultural Child Care Programs answer due 4/20/2015; APF Global Exchange, NFP answer due 4/20/2015; Agent Au Pair answer due 4/20/2015; Au Pair International, Inc. answer due 4/20/2015; InterExchange, Inc. answer due 4/20/2015; Cultural Homestay International answer due 4/20/2015; USAuPair, INC answer due 4/20/2015. (Colaizzi, Brooke) (Entered: 03/26/2015) |
| 03/27/2015 | 116 | | Unopposed MOTION for Leave to File Excess Pages *(Enlarged Motion to Dismiss)* by Defendant Cultural Care, Inc.. (Gentile, Donald) (Entered: 03/27/2015) |
| 03/31/2015 | 117 | | Unopposed MOTION for Leave to File Excess Pages *(to File Enlarged Motion to Dismiss)* by Defendant InterExchange, Inc.. (Colaizzi, Brooke) (Entered: 03/31/2015) |
| 04/03/2015 | 118 | | NOTICE of Voluntary Dismissal of Party *PAMELA H NOONAN and THOMAS J NOONAN* by Plaintiff Johana Paola Beltran (Hood, Alexander) (Entered: 04/03/2015) |
| 04/07/2015 | 119 | | ORDER GRANTING Motion for Leave to File Excess Pages 116 . Defendant Cultural Care is permitted to file its Motion to Dismiss in excess of this Court's page limitations, NOT TO EXCEED 25 pages in total, excluding the Certificate of Service. SO ORDERED BY Judge Christine M. Arguello on 4/7/2015. Text Only Entry(cmalc2) Modified on 4/7/2015 to correct text (athom, ). (Entered: 04/07/2015) |

| 04/07/2015 | 120 | | ORDER GRANTING Motion for Leave to File Excess Pages 117 . Defendant InterExchange, Inc. is permitted to file its Motion to Dismiss in excess of this Court's page limitations, NOT TO EXCEED 25 pages in total, excluding Certificate of Service. SO ORDERED BY Judge Christine M. Arguello on 4/7/2015. Text Only Entry(cmalc2) (Entered: 04/07/2015) |
|---|---|---|---|
| 04/13/2015 | 121 | | Unopposed MOTION for Leave to File Excess Pages by Defendant Cultural Homestay International. (Attachments: # 1 Proposed Order (PDF Only))(Hartley, James) (Entered: 04/13/2015) |
| 04/14/2015 | 122 | | ORDER granting Motion for Leave to File Excess Pages 121 . Defendant Cultural Homestay International is permitted to file its Motion to Dismiss in excess of this Court's page limitations, NOT TO EXCEED 25 pages in total, excluding the Certificate of Service. SO ORDERED BY Judge Christine M. Arguello on 4/14/2015. Text Only Entry(cmalc2) (Entered: 04/14/2015) |
| 04/14/2015 | 123 | | MINUTE ORDER setting a Telephone Discovery Conference for 4/16/2015 at 3:00 PM before Magistrate Judge Craig B. Shaffer. *The conference call arrangements shall be made utilizing a dial–in number and passcode that will be electronically distributed to all case participants (court included) prior to the hearing.* Text Only Entry by Magistrate Judge Craig B. Shaffer on 4/14/15. (cbssec) (Entered: 04/14/2015) |
| 04/14/2015 | 124 | | ORDER finding as moot 109 Motion to Continue Scheduling Conference. Upon agreement by the parties the Scheduling Conference was reset to 5/26/15 (see doc. #114). Text Only Entry by Magistrate Judge Craig B. Shaffer on 4/14/15.(cbssec) (Entered: 04/14/2015) |
| 04/14/2015 | 125 | | Pursuant to the 118 notice of dismissal of party filed in this case, Pamela H Noonan and Thomas J Noonan dismissed on 04/14/2015. Text Only Entry (athom, ) (Entered: 04/14/2015) |
| 04/16/2015 | 126 | | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Craig B. Shaffer: Telephonic Discovery Hearing held on 4/16/2015. ORDERED: Discovery is STAYED, including initial disclosures, until the Scheduling Conference set for May 26, 2015. FTR: Courtroom A–402. (amont, ) (Entered: 04/16/2015) |
| 04/17/2015 | 127 | | MOTION to Dismiss for Failure to State a Claim by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Allen, Jeffrey) (Entered: 04/17/2015) |
| 04/20/2015 | 128 | | NOTICE of Entry of Appearance by Toren G. E. Mushovic on behalf of American Cultural Exchange, LLCAttorney Toren G. E. Mushovic added to party American Cultural Exchange, LLC(pty:dft) (Mushovic, Toren) (Entered: 04/20/2015) |
| 04/20/2015 | 129 | | NOTICE of Entry of Appearance by Toren G. E. Mushovic on behalf of Agent Au PairAttorney Toren G. E. Mushovic added to party Agent Au Pair(pty:dft) (Mushovic, Toren) (Entered: 04/20/2015) |
| 04/20/2015 | 130 | | MOTION to Dismiss *First Amended Complaint* by Defendant InterExchange, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(Colaizzi, Brooke) (Entered: 04/20/2015) |

| 04/20/2015 | 131 | | MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* by Defendant American Cultural Exchange, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Reilly, Kathryn) (Entered: 04/20/2015) |
|---|---|---|---|
| 04/20/2015 | 132 | | Joinder in Motion to Dismiss by Defendant 20/20 Care Exchange, Inc. (Hammond, Christian) Modified on 5/11/2015 to correct event text (athom, ). (Entered: 04/20/2015) |
| 04/20/2015 | 133 | | Joinder in Motion to Dismiss by Defendant A.P.E.X. American Professional Exchange, LLC. (Hammond, Christian) Modified on 5/11/2015 to correct event text (athom, ). (Entered: 04/20/2015) |
| 04/20/2015 | 134 | | Joint MOTION to Strike 101 Amended Complaint *Sections 90 to 94 by Certain Moving Defendants* by Defendant USAuPair, INC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11–A through 11–P, # 12 Exhibit 12)(Kelly, William) (Entered: 04/20/2015) |
| 04/20/2015 | 135 | | Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants* by Defendant Cultural Homestay International. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Proposed Order (PDF Only))(Hartley, James) (Entered: 04/20/2015) |
| 04/20/2015 | 136 | | MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint* by Defendant American Institute for Foreign Study. (Lee, Lawrence) (Entered: 04/20/2015) |
| 04/21/2015 | 137 | | SUPPLEMENT/AMENDMENT to 134 Joint MOTION to Strike 101 Amended Complaint *Sections 90 to 94 by Certain Moving Defendants* by Defendant AuPairCare, Inc.. (Attachments: # 1 Exhibit A)(Mann, John) (Entered: 04/21/2015) |
| 04/23/2015 | 138 | | MEMORANDUM REGARDING MOTION to Dismiss *First Amended Complaint* filed by InterExchange, Inc. 130 ; Joint MOTION to Dismiss *the First Amended Complaint* filed by Cultural Homestay International 135 ; Joint MOTION to Strike Amended Complaint *Sections 90 to 94 by Certain Moving Defendants* filed by USAuPair, INC. 134 ; MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint* filed by American Institute for Foreign Study 136 ; MOTION to Dismiss for Failure to State a Claim filed by Cultural Care, Inc. 127 ; MOTION for Joinder *of and Supplement to Joint Motion to Dismiss* filed by 20/20 Care Exchange, Inc. 132 ; MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* filed by American Cultural Exchange, LLC 131 ; AND MOTION for Joinder *in and Supplement to Joint Motion to Dismiss* filed by A.P.E.X. American Professional Exchange, LLC 133 . Motions referred to Magistrate Judge Craig B. Shaffer by Judge Christine M. Arguello on 4/23/2015. Text Only Entry (cmalc2) (Entered: 04/23/2015) |
| 04/30/2015 | 139 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants*, 136 MOTION |

| | | | |
|---|---|---|---|
| | | | to Dismiss *Counts I–X of Plaintiff's First Amended Complaint*, 127 MOTION to Dismiss for Failure to State a Claim , 132 MOTION for Joinder *of and Supplement to Joint Motion to Dismiss*, 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VII, VIII, IX and X of the First Amended Complaint*, 133 MOTION for Joinder *in and Supplement to Joint Motion to Dismiss* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Hood, Alexander) (Entered: 04/30/2015) |
| 05/01/2015 | 140 | | ORDER granting 139 Plaintiffs' Motion for Extension of Time to File Response. Plaintiffs shall up to and including 6/1/2015 within which to Respond to Defendants' Motions to Dismiss Docs. 127 , 130 , 131 , 132 , 133 , 135 , and 136 . SO ORDERED by Judge Christine M. Arguello on 5/1/2015. Text Only Entry(vbarn) (Entered: 05/01/2015) |
| 05/08/2015 | 141 | | ORDER OF RECUSAL by Magistrate Judge Craig B. Shaffer on 5/8/15. The Clerk of Court shall assign another magistrate judge to this case. The May 26, 2015 Scheduling Conference is vacated. (nmarb, ) (Entered: 05/08/2015) |
| 05/08/2015 | 142 | | Utility Setting/Resetting Deadlines/Hearings: 5/26/15 Scheduling Conference vacated pursuant to 141 Order of Recusal. Text Only Entry (nmarb, ) (Entered: 05/08/2015) |
| 05/08/2015 | 143 | | CASE REASSIGNED pursuant to 141 Order of Recusal. This case is reassigned to Magistrate Judge Kathleen M. Tafoya in the referral role. All future pleadings should be designated as 14–cv–03074–CMA–KMT. (Text Only Entry) (nmarb, ) (Entered: 05/08/2015) |
| 05/11/2015 | 144 | | ORDER Setting Rule 16(b) Scheduling Conference and Rule 26(f) Planning Meeting. The court shall hold a Fed. R. Civ. P. 16(b) scheduling and planning conference on 7/6/2015 at 09:45 AM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya. By Magistrate Judge Kathleen M. Tafoya on 05/11/2015. (athom, ) (Entered: 05/11/2015) |
| 05/13/2015 | 145 | | ORDER re: 130 MOTION to Dismiss *First Amended Complaint* filed by InterExchange, Inc., 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants* filed by Cultural Homestay International, 134 Joint MOTION to Strike 101 Amended Complaint *Sections 90 to 94 by Certain Moving Defendants* filed by USAuPair, INC, 136 MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint* filed by American Institute for Foreign Study, 127 MOTION to Dismiss for Failure to State a Claim filed by Cultural Care, Inc., 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* filed by American Cultural Exchange, LLC, no longer referred. By Judge Christine M. Arguello on 05/13/2015. Text Only Entry (athom, ) (Entered: 05/13/2015) |
| 05/13/2015 | 146 | | MEMORANDUM regarding 130 MOTION to Dismiss *First Amended Complaint* filed by InterExchange, Inc., 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants* filed by Cultural Homestay International, 134 Joint MOTION to Strike 101 Amended Complaint *Sections 90 to 94 by Certain Moving Defendants* filed by USAuPair, INC, 136 |

| | | | |
|---|---|---|---|
| | | | MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint* filed by American Institute for Foreign Study, 127 MOTION to Dismiss for Failure to State a Claim filed by Cultural Care, Inc., 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* filed by American Cultural Exchange, LLC. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 5/13/2015. Text Only Entry (vbarn ) (Entered: 05/13/2015) |
| 05/13/2015 | 147 | | RESPONSE to 134 Joint MOTION to Strike 101 Amended Complaint *Sections 90 to 94 by Certain Moving Defendants* filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Declaration of Alexander Hood, # 2 Ex. A to Hood Declaration, # 3 Ex. B to Hood Declaration, # 4 Ex. C to Hood Declaration)(Hood, Alexander) (Entered: 05/13/2015) |
| 05/13/2015 | 148 | | OBJECTIONS to 137 Supplement/Amendment *RESPONSE TO DEFENDANT AUPAIRCARE, INC.S SUPPLEMENT TO JOINT MOTION TO STRIKE CERTAIN ALLEGATIONS* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Hood, Alexander) (Entered: 05/13/2015) |
| 05/19/2015 | 149 | | NOTICE of Change of Address/Contact Information by William James Kelly, III (Kelly, William) (Entered: 05/19/2015) |
| 05/19/2015 | 150 | | NOTICE of Change of Address/Contact Information by Chanda Marie Feldkamp (Feldkamp, Chanda) (Entered: 05/19/2015) |
| 05/20/2015 | 151 | | NOTICE of Entry of Appearance by Erica Herrera Gutherz on behalf of InterExchange, Inc.Attorney Erica Herrera Gutherz added to party InterExchange, Inc.(pty:dft) (Gutherz, Erica) (Entered: 05/20/2015) |
| 05/21/2015 | 152 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants*, 136 MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint*, 127 MOTION to Dismiss for Failure to State a Claim , 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* , 132 MOTION for Joinder of and Supplement to Joint *Motion to Dismiss*, 133 MOTION for Joinder in and Supplement to Joint *Motion to Dismiss, and for Leave to File Excess Pages* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Hood, Alexander) (Entered: 05/21/2015) |
| 05/22/2015 | 153 | | Unopposed MOTION to Continue *Stay of Discovery* by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Associates In Cultural Exchange, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Mann, John) (Entered: 05/22/2015) |

| 05/22/2015 | 154 | | MEMORANDUM REGARDING Unopposed MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo 152* . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 5/22/2015. Text Only Entry (cmalc2) (Entered: 05/22/2015) |
| --- | --- | --- | --- |
| 05/22/2015 | 155 | | MEMORANDUM REGARDING Unopposed MOTION to Continue *Stay of Discovery* filed by 20/20 Care Exchange, Inc, Cultural Care, Inc., Associates In Cultural Exchange, Au Pair International, Inc., A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, GreatAuPair, LLC, Expert Group International, Inc, EuRaupair InterCultural Child Care Programs, InterExchange, Inc., Agent Au Pair, American Cultural Exchange, LLC, Cultural Homestay International, American Institute for Foreign Study, USAuPair, INC, AuPairCare, Inc. 153 . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 5/22/2015. Text Only Entry (cmalc2) (Entered: 05/22/2015) |
| 05/22/2015 | 156 | | MINUTE ORDER granting 153 Motion to Continue Stay of Discovery. The stay of discovery shall remain in effect through the 7/6/2015 Scheduling Conference. By Magistrate Judge Kathleen M. Tafoya on 5/22/2015. Text Only Entry (kmtlc2) (Entered: 05/22/2015) |
| 05/26/2015 | 157 | | MINUTE ORDER granting 152 Motion for Extension of Time to Respond to Defendants' Motions to Dismiss and for Leave to File Excess pages. Plaintiffs shall respond to Defendants' Motions to Dismiss no later than 6/26/2015. Further, in light of the fact that Plaintiffs would be permitted to file 5 separate 15–page responses, Plaintiffs are granted leave to file a consolidated response not to exceed 75 pages. By Magistrate Judge Kathleen M. Tafoya on 5/26/2015. Text Only Entry (kmtlc2) (Entered: 05/26/2015) |
| 05/29/2015 | 158 | | NOTICE *OF HIRING OF COURT'S FORMER LAW CLERK* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni (Hood, Alexander) (Entered: 05/29/2015) |
| 06/01/2015 | 159 | | REPLY to Response to 134 Joint MOTION to Strike 101 Amended Complaint *Sections 90 to 94 by Certain Moving Defendants* filed by Defendants APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Perkins, Daniel) (Entered: 06/01/2015) |
| 06/04/2015 | 160 | | MOTION for Protective Order by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit)(Allen, Jeffrey) (Entered: 06/04/2015) |
| 06/05/2015 | 161 | | MEMORANDUM regarding 160 MOTION for Protective Order filed by Cultural Care, Inc.. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 6/5/2015. Text Only Entry (vbarn ) (Entered: 06/05/2015) |
| 06/09/2015 | 162 | | Joint MOTION for Protective Order *Joint Motion by Certain Sponsor Defendants for Protective Order* by Defendants 20/20 Care Exchange, Inc, |

| | | | |
|---|---|---|---|
| | | | A.P.E.X. American Professional Exchange, LLC. (Hammond, Christian) (Entered: 06/09/2015) |
| 06/10/2015 | 163 | | MEMORANDUM REGARDING Joint MOTION for Protective Order *Joint Motion by Certain Sponsor Defendants for Protective Order* filed by 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC 162 . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 6/10/2015. Text Only Entry (cmalc2) (Entered: 06/10/2015) |
| 06/12/2015 | 164 | | MOTION for Protective Order *to Stay Discovery Pending Resolution of Motions to Dismiss* by Defendant InterExchange, Inc.. (Colaizzi, Brooke) (Entered: 06/12/2015) |
| 06/15/2015 | 165 | | MINUTE ORDER re: 160 Defendant Cultural Care, Inc.'s MOTION for Protective Order, 162 Joint MOTION by Certain Sponsor Defendants for Protective Order, and 164 Defendant Interexchange, Inc., American Cultural Exchange, LLC, and American Institute for Foreign Study's Motion for Protective Order to Stay Discovery Pending Resolution of Motions to Dismiss. Plaintiff shall respond to the motions for protective order later than 6/24/2015, and Defendants may file replies no later than 7/2/2015. The motions for protective order will be addressed at the Scheduling Conference set for 7/6/2015. By Magistrate Judge Kathleen M. Tafoya on 6/15/2015. Text Only Entry (kmtlc2) (Entered: 06/15/2015) |
| 06/16/2015 | 166 | | JOINDER re 164 MOTION for Protective Order *to Stay Discovery Pending Resolution of Motions to Dismiss*, 162 Joint MOTION for Protective Order *Joint Motion by Certain Sponsor Defendants for Protective Order* by Defendant EuRaupair InterCultural Child Care Programs. (Fitzgerald, Martha) (Entered: 06/16/2015) |
| 06/18/2015 | 167 | | MEMORANDUM REGARDING MOTION for Protective Order *to Stay Discovery Pending Resolution of Motions to Dismiss* filed by InterExchange, Inc. 164 . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 6/18/2015. Text Only Entry (cmalc2) (Entered: 06/18/2015) |
| 06/24/2015 | 168 | | NOTICE of Entry of Appearance by Matthew Lane Schwartz on behalf of Johana Paola Beltran, Lusapho HlatshaneniAttorney Matthew Lane Schwartz added to party Johana Paola Beltran(pty:pla), Attorney Matthew Lane Schwartz added to party Lusapho Hlatshaneni(pty:pla) (Schwartz, Matthew) (Entered: 06/24/2015) |
| 06/24/2015 | 169 | | NOTICE of Entry of Appearance by Peter Murray Skinner on behalf of Johana Paola Beltran, Lusapho HlatshaneniAttorney Peter Murray Skinner added to party Johana Paola Beltran(pty:pla), Attorney Peter Murray Skinner added to party Lusapho Hlatshaneni(pty:pla) (Skinner, Peter) (Entered: 06/24/2015) |
| 06/24/2015 | 170 | | NOTICE of Entry of Appearance by Randall Wade Jackson on behalf of Johana Paola Beltran, Lusapho HlatshaneniAttorney Randall Wade Jackson added to party Johana Paola Beltran(pty:pla), Attorney Randall Wade Jackson added to party Lusapho Hlatshaneni(pty:pla) (Jackson, Randall) (Entered: 06/24/2015) |
| 06/24/2015 | 171 | | NOTICE of Entry of Appearance by Lauren Fleischer Louis on behalf of Johana Paola Beltran, Lusapho HlatshaneniAttorney Lauren Fleischer Louis |

| | | | |
|---|---|---|---|
| | | | added to party Johana Paola Beltran(pty:pla), Attorney Lauren Fleischer Louis added to party Lusapho Hlatshaneni(pty:pla) (Louis, Lauren) (Entered: 06/24/2015) |
| 06/24/2015 | 172 | | NOTICE of Entry of Appearance by Sigrid Stone McCawley on behalf of Johana Paola Beltran, Lusapho HlatshaneniAttorney Sigrid Stone McCawley added to party Johana Paola Beltran(pty:pla), Attorney Sigrid Stone McCawley added to party Lusapho Hlatshaneni(pty:pla) (McCawley, Sigrid) (Entered: 06/24/2015) |
| 06/24/2015 | 173 | | BRIEF in Opposition to 164 MOTION for Protective Order *to Stay Discovery Pending Resolution of Motions to Dismiss*, 162 Joint MOTION for Protective Order *Joint Motion by Certain Sponsor Defendants for Protective Order*, 160 MOTION for Protective Order filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Exhibit A)(Jackson, Randall) (Entered: 06/24/2015) |
| 06/24/2015 | 174 | | MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants*, 136 MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint*, 127 MOTION to Dismiss for Failure to State a Claim , 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Skinner, Peter) (Entered: 06/24/2015) |
| 06/25/2015 | 175 | | RESPONSE to 174 MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by C filed by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 06/25/2015)* |
| 06/25/2015 | 176 | | BRIEF in Opposition to 174 MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by C filed by Defendants APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, AuPairCare, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, InterExchange, Inc., USAuPair, INC. (Attachments: # 1 Exhibit A – Email fro Alex Hood re Motions to Dismiss Response Extension)(Mushovic, Toren) (Entered: 06/25/2015)* |
| 06/25/2015 | 177 | | JOINDER re 176 Brief in Opposition to Motion,, by Defendant GreatAuPair, LLC. (Rhoades, Meshach) (Entered: 06/25/2015) |
| 06/25/2015 | 178 | | MEMORANDUM REGARDING MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss First Amended Complaint, 135 Joint MOTION to Dismiss the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by C filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, |

| | | | |
|---|---|---|---|
| | | | Dayanna Paola Cardenas Caicedo 174 . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 6/25/2015. Text Only Entry (cmalc2) (Entered: 06/25/2015) |
| 06/25/2015 | 179 | | REPLY to Response to 174 MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by C filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 06/25/2015)* |
| 06/25/2015 | 180 | | NOTICE of Entry of Appearance *of Toren Mushovic and Kathryn Reilly* by Toren G. E. Mushovic on behalf of Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc.Attorney Toren G. E. Mushovic added to party Au Pair International, Inc.(pty:dft) (Mushovic, Toren) (Entered: 06/25/2015) |
| 06/26/2015 | 181 | | MINUTE ORDER granting in part 174 Motion for an Extension of Time to Respond to Defendants' Motions to Dismiss. Plaintiffs shall respond to Defendants' Motions to Dismiss no later than 7/10/2015. By Magistrate Judge Kathleen M. Tafoya on 6/26/2015. Text Only Entry (kmtlc2) (Entered: 06/26/2015) |
| 06/26/2015 | 182 | | NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES re 179 : Matthew Lane Schwartz ; Peter Murray Skinner has failed to comply with D.C.COLO.LCivR 5.1(a) and one or more of the following Electronic Case Filing Procedures(Civil Cases): 1.1, 1.3(f), 4.1(a), and/or 4.3, which mandate, with exceptions inapplicable here, that all documents filed in civil cases must be filed electronically, shall be converted directly to portable document format (PDF) from software applications in which they were created (i.e., No scanned documents), shall include a signature block with the filer's typed name, typed signature and must match the filers login and password (i.e. a filer may not use non–signatory's login and password to file a document). See ECF Procedure 4.3. Failure in the future to follow these procedures may lead to mandatory CM/ECF training. (Text Only Entry) (athom, ) (Entered: 06/26/2015) |
| 06/26/2015 | 183 | | Unopposed MOTION for Leave to Appear *at Scheduling Conference by Telephone* by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (Stone, Lawrence) (Entered: 06/26/2015) |
| 06/29/2015 | 184 | | MEMORANDUM REGARDING UNOPPOSED MOTION for Leave to Appear *at Scheduling Conference by Telephone* filed by 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC 183 . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 6/29/2015. Text Only Entry (cmalc2) (Entered: 06/29/2015) |
| 06/29/2015 | 185 | | Unopposed MOTION to Withdraw as Attorney by Defendant Au Pair International, Inc.. (Moore, Brian) (Entered: 06/29/2015) |
| 06/29/2015 | 186 | | NOTICE of Entry of Appearance by Kathryn A. Reilly on behalf of Au Pair International, Inc.Attorney Kathryn A. Reilly added to party Au Pair International, Inc.(pty:dft) (Reilly, Kathryn) (Entered: 06/29/2015) |

| 06/29/2015 | 187 | | MINUTE ORDER granting 183 Motion to Appear at Scheduling Conference by Telephone. Counsel for Defendants A.P.EX American Professional Exchange and 20/20 Care Exchange may attend the Scheduling Conference telephonically by calling chambers, 303–335–2780, at the scheduled time. By Magistrate Judge Kathleen M. Tafoya on 6/29/2015. Text Only Entry (kmtlc2) (Entered: 06/29/2015) |
| 06/29/2015 | 188 | | Proposed Scheduling Order by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Hood, Alexander) (Entered: 06/29/2015) |
| 07/01/2015 | 189 | | ORDER granting 185 Unopposed Motion to Withdraw as Attorney. ORDERED that Attorney Brian T. Moore is permitted to withdraw as counsel for Defendant Au Pair International, Inc. The Court notes that Defendant Au Pair International, Inc. continues to be represented by Toren G. E. Mushovic. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Moore's email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 7/1/2015. Text Only Entry(vbarn ) (Entered: 07/01/2015) |
| 07/01/2015 | 190 | | REPLY to Response to 160 MOTION for Protective Order filed by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 07/01/2015) |
| 07/02/2015 | 191 | | REPLY to Response to 162 Joint MOTION for Protective Order *Joint Motion by Certain Sponsor Defendants for Protective Order* filed by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (Hammond, Christian) (Entered: 07/02/2015) |
| 07/02/2015 | 192 | | REPLY to Response to 164 MOTION for Protective Order *to Stay Discovery Pending Resolution of Motions to Dismiss of Defendants Interexchange, Inc., American Cultural Exchange, LLC, and American Institute for Foreign Study* filed by Defendant InterExchange, Inc.. (Vickles, Heather) (Entered: 07/02/2015) |
| 07/05/2015 | 193 | | NOTICE of Entry of Appearance by Matthew Lane Schwartz on behalf of Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette GonzalezAttorney Matthew Lane Schwartz added to party Dayanna Paola Cardenas Caicedo(pty:pla), Attorney Matthew Lane Schwartz added to party Beaudette Deetlefs(pty:pla), Attorney Matthew Lane Schwartz added to party Alexandra Ivette Gonzalez(pty:pla) (Schwartz, Matthew) (Entered: 07/05/2015) |
| 07/05/2015 | 194 | | NOTICE of Entry of Appearance by Peter Murray Skinner on behalf of Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette GonzalezAttorney Peter Murray Skinner added to party Dayanna Paola Cardenas Caicedo(pty:pla), Attorney Peter Murray Skinner added to party Beaudette Deetlefs(pty:pla), Attorney Peter Murray Skinner added to party Alexandra Ivette Gonzalez(pty:pla) (Skinner, Peter) (Entered: 07/05/2015) |
| 07/05/2015 | 195 | | NOTICE of Entry of Appearance by Randall Wade Jackson on behalf of Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette GonzalezAttorney Randall Wade Jackson added to party Dayanna Paola Cardenas Caicedo(pty:pla), Attorney Randall Wade Jackson added to party Beaudette Deetlefs(pty:pla), Attorney Randall Wade Jackson added to party Alexandra Ivette Gonzalez(pty:pla) (Jackson, Randall) (Entered: 07/05/2015) |

| 07/05/2015 | 196 | | NOTICE of Entry of Appearance by Sigrid Stone McCawley on behalf of Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette GonzalezAttorney Sigrid Stone McCawley added to party Dayanna Paola Cardenas Caicedo(pty:pla), Attorney Sigrid Stone McCawley added to party Beaudette Deetlefs(pty:pla), Attorney Sigrid Stone McCawley added to party Alexandra Ivette Gonzalez(pty:pla) (McCawley, Sigrid) (Entered: 07/05/2015) |
|---|---|---|---|
| 07/05/2015 | 197 | | NOTICE of Entry of Appearance by Lauren Fleischer Louis on behalf of Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette GonzalezAttorney Lauren Fleischer Louis added to party Dayanna Paola Cardenas Caicedo(pty:pla), Attorney Lauren Fleischer Louis added to party Beaudette Deetlefs(pty:pla), Attorney Lauren Fleischer Louis added to party Alexandra Ivette Gonzalez(pty:pla) (Louis, Lauren) (Entered: 07/05/2015) |
| 07/06/2015 | 198 | | COURTROOM MINUTES for Scheduling Conference held on 7/6/2015 before Magistrate Judge Kathleen M. Tafoya. ORDERED: Defendant Cultural Care, Inc.'s Motion for Protective Order 160 is GRANTED. Joint Motion by Certain Sponsor Defendants for Protective Order 162 is GRANTED. Defendant InterExchange, Inc., American Cultural Exchange, LLC, and American Institute for Foreign Study's Motion for Protective Order to Stay Discovery Pending Resolution of Motions to Dismiss 164 is GRANTED. Discovery is STAYED pending the issuance of a recommendation on Defendants' motions to dismiss. The parties shall file a Status Report within 10 days of the recommendation on the motions to dismiss indicating the next course of action, as discussed. FTR: KMT C201. (sgrim) (Entered: 07/06/2015) |
| 07/10/2015 | 199 | | BRIEF in Opposition to 130 MOTION to Dismiss *First Amended Complaint*, 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint*, 133 MOTION for Joinder *in and Supplement to Joint Motion to Dismiss*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants*, 136 MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint*, 127 MOTION to Dismiss for Failure to State a Claim , 132 MOTION for Joinder *of and Supplement to Joint Motion to Dismiss* filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Schwartz, Matthew) (Entered: 07/10/2015) |
| 07/17/2015 | 200 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 127 MOTION to Dismiss for Failure to State a Claim *and Leave to File Enlarged Reply* by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 07/17/2015) |
| 07/20/2015 | 201 | | MEMORANDUM regarding 200 Unopposed MOTION for Extension of Time to File Response/Reply as to 127 MOTION to Dismiss for Failure to State a Claim *and Leave to File Enlarged Reply* filed by Cultural Care, Inc.. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 7/20/2015. Text Only Entry (vbarn ) (Entered: 07/20/2015) |
| 07/20/2015 | 202 | | MINUTE ORDER granting 200 Motion for Extension of Time to File Reply and for Leave to File Enlarged Reply by Defendant Cultural Care, Inc. Defendant Cultural Care, Inc. may file a reply not to exceed fifteen (15) pages |

| | | | |
|---|---|---|---|
| | | | no later than 8/10/2015. By Magistrate Judge Kathleen M. Tafoya on 7/20/2015. Text Only Entry (kmtlc2) (Entered: 07/20/2015) |
| 07/21/2015 | 203 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants*, 136 MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint*, 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint and for Leave to File Enlarged Reply (Jointly with Certain Sponsor Defendants)* by Defendants Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc.. (Mushovic, Toren) (Entered: 07/21/2015) |
| 07/22/2015 | 204 | | MEMORANDUM regarding 203 Unopposed MOTION for Extension of Time to File Response/Reply as to 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard filed by Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc.. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 7/22/2015. Text Only Entry (vbarn ) (Entered: 07/22/2015)* |
| 07/22/2015 | 205 | | MINUTE ORDER granting in part 203 Motion for Extension to File Reply and for Leave to File Enlarged Reply. The Moving Defendants may file replies not to exceed fifteen (15) pages in length no later than 8/10/2015. However, the court will not exempt any pages from this page limitation other than those already exempt under District Judge Arguello's Civil Practice Standards. The court sees no reason why 15–page replies would require a table of contents or table of authorities. By Magistrate Judge Kathleen M. Tafoya on 7/22/2015. Text Only Entry (kmtlc2) (Entered: 07/22/2015) |
| 08/06/2015 | 206 | | MOTION to Strike by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 08/06/2015) |
| 08/06/2015 | 207 | | REPLY to Response to 127 MOTION to Dismiss for Failure to State a Claim filed by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit)(Allen, Jeffrey) (Entered: 08/06/2015) |
| 08/07/2015 | 208 | | MEMORANDUM regarding 206 MOTION to Strike filed by Cultural Care, Inc.. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 8/7/2015. Text Only Entry (vbarn) (Entered: 08/07/2015) |
| 08/07/2015 | 209 | | NOTICE of Entry of Appearance by Susan M. Schaecher on behalf of American Institute for Foreign StudyAttorney Susan M. Schaecher added to party American Institute for Foreign Study(pty:dft) (Schaecher, Susan) (Entered: 08/07/2015) |
| 08/07/2015 | 210 | | NOTICE of Entry of Appearance by Susan M. Schaecher on behalf of APF Global Exchange, NFPAttorney Susan M. Schaecher added to party APF Global Exchange, NFP(pty:dft) (Schaecher, Susan) (Entered: 08/07/2015) |
| 08/10/2015 | 211 | | REPLY to Response to 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants and Reply Memo in Response to Plaintiffs'* |

| | | | |
|---|---|---|---|
| | | | *Consoidated Opposition 199* filed by Defendant Cultural Homestay International. (Hartley, James) (Entered: 08/10/2015) |
| 08/10/2015 | 212 | | MOTION for Joinder re 211 Reply to Response to Motion, by Defendant A.P.E.X. American Professional Exchange, LLC. (Stone, Lawrence) (Entered: 08/10/2015) |
| 08/10/2015 | 213 | | MOTION for Joinder re 211 Reply to Response to Motion, by Defendant 20/20 Care Exchange, Inc. (Stone, Lawrence) (Entered: 08/10/2015) |
| 08/10/2015 | 214 | | REPLY to Response to 130 MOTION to Dismiss *First Amended Complaint* filed by Defendant InterExchange, Inc.. (Colaizzi, Brooke) (Entered: 08/10/2015) |
| 08/10/2015 | 215 | | REPLY to Response to 136 MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint* filed by Defendant American Institute for Foreign Study. (Lee, Lawrence) (Entered: 08/10/2015) |
| 08/10/2015 | 216 | | REPLY to Response to 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* filed by Defendant American Cultural Exchange, LLC. (Attachments: # 1 Exhibit I, # 2 Exhibit J, # 3 Envelope K)(Reilly, Kathryn) (Entered: 08/10/2015) |
| 08/11/2015 | 217 | | MEMORANDUM regarding 213 MOTION for Joinder re 211 Reply to Response to Motion, filed by 20/20 Care Exchange, Inc, 212 MOTION for Joinder re 211 Reply to Response to Motion, filed by A.P.E.X. American Professional Exchange, LLC. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 8/11/2015. Text Only Entry (vbarn) (Entered: 08/11/2015) |
| 08/14/2015 | 218 | | TRANSCRIPT of Scheduling Conference held on July 6, 2015 before Magistrate Judge Tafoya. Pages: 1–56.<br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Avery Woods Reporting, ) (Entered: 08/14/2015) |
| 08/18/2015 | 219 | | NOTICE *of Change of Law Firm Affliation* by Defendant GreatAuPair, LLC (Rhoades, Meshach) (Entered: 08/18/2015) |
| 08/31/2015 | 220 | | BRIEF in Opposition to 206 MOTION to Strike filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 08/31/2015) |
| 08/31/2015 | 221 | | Cross MOTION to Strike by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho |

| | | | |
|---|---|---|---|
| | | | Hlatshaneni. (Schwartz, Matthew) (Entered: 08/31/2015) |
| 08/31/2015 | 222 | | Unopposed MOTION for Leave to *Cite New Relevant Authority in Opposition to Defendants' Motions to Dismiss* 199 Brief in Opposition to Motion,,, by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 08/31/2015) |
| 09/01/2015 | 223 | | MEMORANDUM REGARDING Cross MOTION to Strike filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo 221 , Unopposed MOTION for Leave to *Cite New Relevant Authority in Opposition to Defendants' Motions to Dismiss* 199 Brief in Opposition to Motion, filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo 222 . Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 9/1/2015. Text Only Entry (cmalc2) (Entered: 09/01/2015) |
| 09/16/2015 | 224 | | MINUTE ORDER granting 222 Unopposed Motion for Leave to Cite New Relevant Authority. The court will consider the new authority in connection with the motions to dismiss. By Magistrate Judge Kathleen M. Tafoya on 9/16/15. Text Only Entry(kmtlc1 ) (Entered: 09/16/2015) |
| 09/17/2015 | 225 | | REPLY to Response to 206 MOTION to Strike filed by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 09/17/2015) |
| 09/24/2015 | 226 | | BRIEF in Opposition to 221 Cross MOTION to Strike filed by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 09/24/2015) |
| 09/24/2015 | 227 | | RESPONSE to 221 Cross MOTION to Strike *(Joint Response by Certain Sponsor Defendants)* filed by Defendants APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Mushovic, Toren) (Entered: 09/24/2015) |
| 09/28/2015 | 228 | | Unopposed MOTION for Leave to *Cite New Relevant Authority* 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7.1D by Certain Sponsor Defendants*, 136 MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint*, 131 MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* by Defendant Cultural Homestay International. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hartley, James) (Entered: 09/28/2015) |
| 09/29/2015 | 229 | | MEMORANDUM regarding 228 Unopposed MOTION for Leave to *Cite New Relevant Authority* 130 MOTION to Dismiss *First Amended Complaint*, 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Practice Standard 7. filed by Cultural Homestay International. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 9/29/2015. Text Only Entry (vbarn) (Entered: 09/29/2015)* |

| 09/29/2015 | 230 | | MINUTE ORDER granting <u>228</u> Motion for Leave to Cite New Relevant Authority. The court will consider the new authority when it considers the motions to dismiss. By Magistrate Judge Kathleen M. Tafoya on 9/29/15. Text Only Entry(kmtlc1 ) (Entered: 09/29/2015) |
|---|---|---|---|
| 10/08/2015 | <u>231</u> | | REPLY to Response to <u>221</u> Cross MOTION to Strike filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 10/08/2015) |
| 11/03/2015 | <u>232</u> | | NOTICE of Entry of Appearance by Margo J. Arnold on behalf of EuRaupair InterCultural Child Care ProgramsAttorney Margo J. Arnold added to party EuRaupair InterCultural Child Care Programs(pty:dft) (Arnold, Margo) (Entered: 11/03/2015) |
| 11/05/2015 | <u>233</u> | | MOTION for Leave to *Cite New Relevant Authority* <u>130</u> MOTION to Dismiss *First Amended Complaint*, <u>136</u> MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint*, <u>127</u> MOTION to Dismiss for Failure to State a Claim , <u>131</u> MOTION to Dismiss for Failure to State a Claim *Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint* by Defendant InterExchange, Inc.. (Attachments: # <u>1</u> Exhibit)(Colaizzi, Brooke) (Entered: 11/05/2015) |
| 11/06/2015 | 234 | | MEMORANDUM regarding <u>233</u> MOTION for Leave to *Cite New Relevant Authority* <u>130</u> MOTION to Dismiss *First Amended Complaint*, <u>136</u> MOTION to Dismiss *Counts I–X of Plaintiff's First Amended Complaint*, <u>127</u> MOTION to Dismiss for Failure to Sta filed by InterExchange, Inc.. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 11/6/2015. Text Only Entry (vbarn) (Entered: 11/06/2015) |
| 11/16/2015 | <u>235</u> | | ORDER denying <u>134</u> Joint Motion to Strike Certain Allegations, by Magistrate Judge Kathleen M. Tafoya on 11/16/15.(nmarb, ) (Entered: 11/16/2015) |
| 12/02/2015 | 236 | | MINUTE ORDER granting <u>233</u> Motion for Leave to Cite New Relevant Authority. The court will consider the additional authority. By Magistrate Judge Kathleen M. Tafoya on 12/2/15. Text Only Entry(kmtlc1 ) (Entered: 12/02/2015) |
| 02/12/2016 | <u>237</u> | | Second MOTION for Leave to *Cite New Relevant Authority in Opposition to Defendants' Motions to Dismiss* <u>199</u> Brief in Opposition to Motion,,, by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # <u>1</u> Exhibit A)(Schwartz, Matthew) (Entered: 02/12/2016) |
| 02/16/2016 | 238 | | MEMORANDUM regarding <u>237</u> Second MOTION for Leave to *Cite New Relevant Authority in Opposition to Defendants' Motions to Dismiss* <u>199</u> Brief in Opposition to Motion,,, filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 2/16/2016. Text Only Entry (vbarn) (Entered: 02/16/2016) |
| 02/16/2016 | 239 | | MINUTE ORDER denying <u>237</u> Motion for Leave to Cite New Relevant Authority. Further supplemental authority is unnecessary to resolve the five |

| | | | |
|---|---|---|---|
| | | | Motions to Dismiss currently pending before the court. Additionally, no further supplemental authority will be entertained. By Magistrate Judge Kathleen M. Tafoya on 2/16/16.(kmtlc2 ) (Entered: 02/16/2016) |
| 02/22/2016 | 240 | | RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE; This Court respectfully RECOMMENDS that the Joint Motion by Certain Defendants to Dismiss the FirstAmended Complaint and Certification of Compliance with Civil Practice Standard 7.1D. 135 be DENIED; RECOMMENDS Defendant Cultural Care, Inc.s Motion to Dismiss All Claims in First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(B)(6) 127 , Motion to Dismiss the First Amended Complaint by Defendant InterExchange, Inc. 130 , Defendant American Cultural Exchange, L.L.C., D/B/A Go Au Pairs Motion to Dismiss Counts I, III, IV, V, VI, VII, VIII, IX and X of the First Amended Complaint 131 , Defendant American Institute for Foreign Studys Motion to Dismiss Amended Complaint 136 should be GRANTED in part and DENIED in part. Additionally, it is ORDERED that Defendant Cultural Care, Inc.s Motion to Strike Material in PlaintiffsConsolidated Opposition to Defendants Motions to Dismiss 206 and PlaintiffsCross–Motion to Strike Certain Exhibits Submitted by the Defendants 221 are DENIED as moot, by Magistrate Judge Kathleen M. Tafoya on 2/22/16. (morti, ) (Entered: 02/22/2016) |
| 02/22/2016 | 241 | | ORDER denying as moot 206 Defendant Cultural Care, Inc.s Motion to Strike Material in Plaintiffs Consolidated Opposition to Defendants Motions to Dismiss and 221 Plaintiffs Cross–Motion to Strike Certain Exhibits Submitted by the Defendants, by Magistrate Judge Kathleen M. Tafoya on 2/22/16. Entry made pursuant to the 240 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE filed on 2/22/16. Text Only Entry(morti, ) (Entered: 02/22/2016) |
| 02/24/2016 | 242 | | NOTICE of Entry of Appearance by William Leitzsey Monts, III on behalf of Cultural Care, Inc.Attorney William Leitzsey Monts, III added to party Cultural Care, Inc.(pty:dft) (Monts, William) (Entered: 02/24/2016) |
| 02/29/2016 | 243 | | MOTION for Extension of Time to *File Objections to Recommendations of U.S. Magistrate Judge [Doc. # 240 ]* by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Associates In Cultural Exchange, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc. (Colaizzi, Brooke) Modified on 2/29/2016 to correct text (athom, ). (Entered: 02/29/2016) |
| 03/01/2016 | 244 | | ORDER GRANTING IN PART AND DENYING IN PART Motion for Extension of Time to File 243 . The Court recognizes that **some** additional time is necessary, in light of the fact that there are a significant number of claims and fifteen Defendants remaining in this matter, and, also, that there are logistical issues in consolidating a single pleading with Defendants' objections. However, the Court does not believe that an additional **two weeks** are necessary; Defendants are plainly conversant with the relevant arguments at this juncture, and the objections process is not intended to allow Defendants to make new arguments, or to merely reargue their positions on the Motion to |

| | | | |
|---|---|---|---|
| | | | Dismiss, but rather, to **specifically analyze why the Magistrate Judge erred** in her conclusions. *See United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (emphasis added) (noting that an objection must be sufficiently specific to focus the district court's attention on the factual and legal issues **that are truly in dispute**); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("[I]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *United States v. Berryman*, No. 11–CV–02708–WYD–KLM, 2012 WL 3245415, at *5 (D. Colo. Aug. 8, 2012) (overruling an objection that "simply re–hash[ed] the same contentions" that the Magistrate Judge rejected) (citing *Claytor v. Computer Associates Intern., Inc.*, 211 F.R.D. 665, 667 (D. Kan. 2003)) ("The court reiterates that this [objections process] is not a de novo review permitting a second shot based on new arguments."). Accordingly, the Court GRANTS the instant Motion in part. Specifically, Defendants may have an additional seven days –– up to and including March 14, 2016 –– within which to file their Objection to Magistrate Judge Tafoya's February 22, 2016 Recommendation in this matter. SO ORDERED by Judge Christine M. Arguello on 3/1/2016. Text Only Entry(cmalc2) Modified on 3/1/2016 to correct text (athom, ). (Entered: 03/01/2016) |
| 03/03/2016 | 245 | | Joint STATUS REPORT by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 03/03/2016) |
| 03/10/2016 | 246 | | MOTION to Withdraw as Attorney by Defendant Cultural Homestay International. (Attachments: # 1 Proposed Order (PDF Only))(Hartoonian, Mher) (Entered: 03/10/2016) |
| 03/14/2016 | 247 | | OBJECTION to 240 Report and Recommendations filed by Defendants American Cultural Exchange, LLC, American Institute for Foreign Study, Cultural Care, Inc., InterExchange, Inc.. (Colaizzi, Brooke) (Entered: 03/14/2016) |
| 03/14/2016 | 248 | | OBJECTION to 240 Report and Recommendations *of U.S. Magistrate Regarding Dismissal of Count I* filed by Defendant EuRaupair InterCultural Child Care Programs. (Fitzgerald, Martha) (Entered: 03/14/2016) |
| 03/22/2016 | 249 | | ORDER granting 246 Motion to Withdraw as Attorney. Attorney Mher Hartoonian is permitted to withdraw as counsel for Defendant Cultural Homestay International. The Court notes that Defendant Cultural Homestay International continues to be represented by James Hartley. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Hartoonian's email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 3/22/2016. Text Only Entry(vbarn) (Entered: 03/22/2016) |
| 03/24/2016 | 250 | | MOTION to Withdraw as Attorney *of Record* by Defendant EuRaupair InterCultural Child Care Programs. (Arnold, Margo) (Entered: 03/24/2016) |
| 03/24/2016 | 251 | | Unopposed MOTION for Leave to *File Excess Pages* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Proposed Order (PDF Only))(Skinner, Peter) (Entered: 03/24/2016) |
| 03/25/2016 | 252 | | |

| | | | |
|---|---|---|---|
| | | | BRIEF in Opposition to 251 Unopposed MOTION for Leave to *File Excess Pages [Limited Opposition]* filed by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit)(Allen, Jeffrey) (Entered: 03/25/2016) |
| 03/28/2016 | 253 | | ORDER granting 250 Motion to Withdraw as Attorney. Attorney Margo J. Arnold is permitted to withdraw as counsel for Defendant EurAupair Intercultural Child Care Programs. The Court notes that Defendant EurAupair Intercultural Child Care Programs continues to be represented by Martha Fitzgerald and Kathryn Barrett. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Ms. Arnold's email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 3/28/2016. Text Only Entry(vbarn) (Entered: 03/28/2016) |
| 03/28/2016 | 254 | | REPLY to Response to 251 Unopposed MOTION for Leave to *File Excess Pages* filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 03/28/2016) |
| 03/28/2016 | 255 | | ORDER GRANTING MOTION for leave to file excess pages 251 . Plaintiffs are permitted to file their consolidated Response to Defendants' Objections to the Magistrate Judge's Recommendation in excess of this Court's page limitations, NOT TO EXCEED 30 pages in total, excluding the certificate of service. SO ORDERED BY Judge Christine M. Arguello on 3/28/2016. Text Only Entry(cmalc2) (Entered: 03/28/2016) |
| 03/28/2016 | 256 | | RESPONSE to Objection to 240 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 130 MOTION to Dismiss *First Amended Complaint* filed by InterExchange, Inc., 135 Joint MOTION to Dismiss *the First Amended Complaint and Certification of Compliance with Civil Prac filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 03/28/2016)* |
| 03/31/2016 | 257 | | Unopposed MOTION for Order to *for Oral Argument Re: Recommendation of U.S. Magistrate Judge* by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Associates In Cultural Exchange, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc., Pamela H Noonan, Thomas J Noonan, USAuPair, INC. (Colaizzi, Brooke) (Entered: 03/31/2016) |
| 03/31/2016 | 258 | | ORDER Adopting and Affirming in Part 240 February 22, 2016 Recommendation of United States Magistrate Judge as indicated in the attached Order. Defendants' Objections (Doc. ## 247 , 248 ) are OVERRULED IN PART. 127 , 130 , 131 , and 136 Motions to Dismiss are GRANTED IN PART as indicated in the attached Order. 135 Motion to Dismiss is DENIED in its entirety. Defendants' Unopposed Motion for Oral Argument Regarding Recommendation of United States Magistrate Judge (Doc. # 257 ) is hereby DENIED AS MOOT. By Judge Christine M. Arguello on 03/31/2016. (athom, ) (Entered: 03/31/2016) |

| 04/01/2016 | 259 | | NOTICE of Entry of Appearance by Brian P. Maschler on behalf of AuPairCare, Inc.Attorney Brian P. Maschler added to party AuPairCare, Inc.(pty:dft) (Maschler, Brian) (Entered: 04/01/2016) |
|---|---|---|---|
| 04/01/2016 | 260 | | NOTICE of Entry of Appearance by Peggy E. Kozal on behalf of AuPairCare, Inc.Attorney Peggy E. Kozal added to party AuPairCare, Inc.(pty:dft) (Kozal, Peggy) (Entered: 04/01/2016) |
| 04/01/2016 | 261 | | Unopposed MOTION for Extension of Time to *Respond to Plaintiffs' Discovery Requests* by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 04/01/2016) |
| 04/01/2016 | 262 | | Unopposed MOTION for Extension of Time to *for Defendants to Respond to Plaintiffs' Discovery Requests (Amended)* by Defendant InterExchange, Inc.. (Vickles, Heather) (Entered: 04/01/2016) |
| 04/04/2016 | 263 | | MEMORANDUM regarding 262 Unopposed MOTION for Extension of Time to *for Defendants to Respond to Plaintiffs' Discovery Requests (Amended)* filed by InterExchange, Inc., 261 Unopposed MOTION for Extension of Time to *Respond to Plaintiffs' Discovery Requests* filed by Cultural Care, Inc. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 4/4/2016. Text Only Entry (vbarn) (Entered: 04/04/2016) |
| 04/04/2016 | 264 | | MINUTE ORDER granting 261 Motion for Extension of Time for Defendants to Respond to Plaintiffs' Discovery Requests and granting 262 Motion for Extension of Time for Defendants to Respond to Plaintiffs' Discovery Requests. Defendants shall respond to Plaintiffs' discovery requests no later than 5/4/16. By Magistrate Judge Kathleen M. Tafoya on 4/4/16. Text Only Entry(kmtlc2 ) (Entered: 04/04/2016) |
| 04/06/2016 | 265 | | MINUTE ORDER: A Scheduling Conference is set for 4/25/16 at 10:15 AM before Magistrate Judge Kathleen M. Tafoya. The parties shall submit a proposed amended Scheduling Order no less than seven days prior to the Scheduling Conference. By Magistrate Judge Kathleen M. Tafoya on 4/6/16. Text Only Entry (kmtlc2 ) (Entered: 04/06/2016) |
| 04/07/2016 | 266 | | AMENDED MINUTE ORDER: The Scheduling Conference set for 4/25/16 at 10:15 a.m. is RESET for 4/25/16 at 3:30 p.m. before Magistrate Judge Kathleen M. Tafoya. By Magistrate Judge Kathleen M. Tafoya on 4/7/16. Text Only Entry (kmtlc2 ) (Entered: 04/07/2016) |
| 04/07/2016 | 267 | | AMENDED MINUTE ORDER: The previous 266 Amended Minute Order was entered in error. The Scheduling Conference is set for 4/25/16 at 10:15 a.m. before Magistrate Judge Kathleen M. Tafoya, as originally scheduled. By Magistrate Judge Kathleen M. Tafoya on 4/7/16. Text Only Entry (kmtlc2 ) (Entered: 04/07/2016) |
| 04/13/2016 | 268 | | STIPULATION for Extension of Time to Answer or Respond to the Complaint *(First Amended) [Doc. 101]* by Defendants InterExchange, Inc., 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Associates In Cultural Exchange, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, Pamela H Noonan, Thomas J |

| | | | |
|---|---|---|---|
| | | | Noonan, USAuPair, INC. All Defendants. (Vickles, Heather) (Entered: 04/13/2016) |
| 04/15/2016 | 269 | | MOTION to Withdraw as Attorney by Defendants APF Global Exchange, NFP, American Institute for Foreign Study. (Perkins, Daniel) (Entered: 04/15/2016) |
| 04/18/2016 | 270 | | ORDER granting 269 Motion to Withdraw as Attorney. ORDERED that Attorney Daniel C. Perkins is permitted to withdraw as counsel for Defendants American Institute for Foreign Study d/b/a Au Pair in America and APF Global Exchange, NFP d/b/a Au Pair Foundation. The Court notes that Defendants American Institute for Foreign Study d/b/a Au Pair in America and APF Global Exchange, NFP d/b/a Au Pair Foundation continues to be represented by Lawrence Lee and Susan Schaecher. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Perkins' email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 4/18/2016. Text Only Entry(vbarn) (Entered: 04/18/2016) |
| 04/18/2016 | 271 | | MOTION to Withdraw as Attorney *re Kathryn A. Barrett* by Defendant EurAupair InterCultural Child Care Programs. (Attachments: # 1 Proposed Order (PDF Only))(Fitzgerald, Martha) (Entered: 04/18/2016) |
| 04/18/2016 | 272 | | AMENDED ORDER granting 271 Motion to Withdraw as Attorney. ORDERED that Attorney Kathryn A. Barrett is permitted to withdraw as counsel for Defendant EurAupair Intercultural Child Care Programs. The Court notes that Defendant EurAupair Intercultural Child Care Programs continues to be represented by Martha L. Fitzgerald. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Ms. Barrett's email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 4/18/2016. Text Only Entry(vbarn) Modified on 4/18/2016 to reflect the correct attorney withdrawn from the case. (vbarn). (Entered: 04/18/2016) |
| 04/18/2016 | 273 | | Unopposed MOTION for Extension of Time to *Submit Proposed Scheduling Order By One Day* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Skinner, Peter) (Entered: 04/18/2016) |
| 04/19/2016 | 274 | | MEMORANDUM regarding 273 Unopposed MOTION for Extension of Time to *Submit Proposed Scheduling Order By One Day* filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 4/19/2016. Text Only Entry (vbarn) (Entered: 04/19/2016) |
| 04/19/2016 | 275 | | MINUTE ORDER granting 273 Application for One–Day Extension of Time to File Proposed Scheduling Order. The parties shall file their proposed Revised Scheduling Order no later than 4/19/16. By Magistrate Judge Kathleen M. Tafoya on 4/19/16. Text Only Entry(kmtlc2 ) (Entered: 04/19/2016) |
| 04/19/2016 | 276 | | Proposed Scheduling Order by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Skinner, Peter) (Entered: 04/19/2016) |

| 04/20/2016 | 277 | | ANSWER to 101 Amended Complaint by Cultural Care, Inc..(Allen, Jeffrey) (Entered: 04/20/2016) |
|---|---|---|---|
| 04/20/2016 | 278 | | NOTICE of Entry of Appearance by Adam A. Hubbard on behalf of Cultural Homestay InternationalAttorney Adam A. Hubbard added to party Cultural Homestay International(pty:dft) (Hubbard, Adam) (Entered: 04/20/2016) |
| 04/21/2016 | 279 | | ANSWER to 101 Amended Complaint by InterExchange, Inc..(Vickles, Heather) (Entered: 04/21/2016) |
| 04/21/2016 | 280 | | ANSWER to 101 Amended Complaint by Cultural Homestay International.(Hubbard, Adam) (Entered: 04/21/2016) |
| 04/21/2016 | 281 | | ANSWER to 101 Amended Complaint by GreatAuPair, LLC.(Rhoades, Meshach) (Entered: 04/21/2016) |
| 04/21/2016 | 282 | | ANSWER to 101 Amended Complaint by Agent Au Pair.(Reilly, Kathryn) (Entered: 04/21/2016) |
| 04/21/2016 | 283 | | ANSWER to 101 Amended Complaint by Au Pair International, Inc..(Reilly, Kathryn) (Entered: 04/21/2016) |
| 04/21/2016 | 284 | | ANSWER to 101 Amended Complaint by American Cultural Exchange, LLC.(Reilly, Kathryn) (Entered: 04/21/2016) |
| 04/21/2016 | 285 | | ANSWER to 101 Amended Complaint by American Institute for Foreign Study.(Lee, Lawrence) (Entered: 04/21/2016) |
| 04/21/2016 | 286 | | ANSWER to 101 Amended Complaint by AuPairCare, Inc..(Quinn, Thomas) (Entered: 04/21/2016) |
| 04/21/2016 | 287 | | ANSWER to 101 Amended Complaint by APF Global Exchange, NFP.(Lee, Lawrence) (Entered: 04/21/2016) |
| 04/21/2016 | 288 | | ANSWER to 101 Amended Complaint by 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC.(Stone, Lawrence) (Entered: 04/21/2016) |
| 04/21/2016 | 289 | | ANSWER to 101 Amended Complaint by EuRaupair InterCultural Child Care Programs.(Fitzgerald, Martha) (Entered: 04/21/2016) |
| 04/21/2016 | 290 | | ANSWER to 101 Amended Complaint by USAuPair, INC.(Kelly, William) (Entered: 04/21/2016) |
| 04/21/2016 | 291 | | ANSWER to 101 Amended Complaint by Expert Group International, Inc.(Enica, Bogdan) (Entered: 04/21/2016) |
| 04/22/2016 | 292 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 281 Answer to Amended Complaint : **DO NOT REFILE THE DOCUMENT. Action to take** – counsel must submit a change of contact request through the Attorney Services Portal Account pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 04/22/2016) |
| 04/22/2016 | 293 | | Proposed Scheduling Order *Defendants Addendum to Proposed Amended Civil Scheduling Order* by Defendant AuPairCare, Inc.. (Quinn, Thomas) (Entered: 04/22/2016) |

| | | | |
|---|---|---|---|
| 04/25/2016 | 294 | | COURTROOM MINUTES for Scheduling Conference held on 4/25/2016 before Magistrate Judge Kathleen M. Tafoya. ORDERED: Plaintiffs shall file a motion for conditional certification of an FLSA class, if any, on or before August 15, 2016. A response to the motion shall be filed within 30 days of the motion. A reply shall be filed within 21 days after the 30 day response time. Discovery due by 7/17/2017. Status Conference set for 4/13/2017 09:30 AM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya. Defendants' motion to de−certify collective class, if any, shall be filed 60 days after the close of the last opt−in period. FTR: KMT C201. (sgrim) (Entered: 04/28/2016) |
| 04/25/2016 | 295 | | SCHEDULING ORDER by Magistrate Judge Kathleen M. Tafoya on 4/25/16. (sgrim) (Entered: 04/28/2016) |
| 04/29/2016 | 296 | | MOTION to Withdraw *as Counsel for* by Defendants Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc.. (Attachments: # 1 Exhibit A)(Mushovic, Toren) (Entered: 04/29/2016) |
| 04/29/2016 | 297 | | NOTICE of Entry of Appearance by David Meschke on behalf of EuRaupair InterCultural Child Care ProgramsAttorney David Meschke added to party EuRaupair InterCultural Child Care Programs(pty:dft) (Meschke, David) (Entered: 04/29/2016) |
| 05/02/2016 | 298 | | ORDERED that Attorney Toren G.E. Mushovic permitted to withdraw as counsel for Defendants Agent Au Pair, Inc., American Cultural Exchange LLC, d/b/s GoAuPair and Au Pair International, Inc. The Court notes that Defendants Agent Au Pair, Inc., American Cultural Exchange LLC, d/b/s GoAuPair and Au Pair International, Inc. continue to be represented by Kathryn A. Reilly, Brian Moore, and Brian Birenbach. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Attorney Toren Muschovics email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 5/2/2016. Text Only Entry(vbarn) (Entered: 05/02/2016) |
| 05/03/2016 | 299 | | Unopposed MOTION for Extension of Time to *Respond to Plaintiffs' Discovery Requests* by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 05/03/2016) |
| 05/03/2016 | 300 | | MEMORANDUM regarding 299 Unopposed MOTION for Extension of Time to *Respond to Plaintiffs' Discovery Requests* filed by Cultural Care, Inc. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 5/3/2016. Text Only Entry (vbarn) (Entered: 05/03/2016) |
| 05/03/2016 | 301 | | MINUTE ORDER granting 299 Motion for Extension of Time for Cultural Care, Inc. to Respond to Plaintiffs' Discovery Requests. Defendant Cultural Care, Inc. shall respond to Plaintiffs' discovery requests no later than 5/13/16. By Magistrate Judge Kathleen M. Tafoya on 5/3/16. Text Only Entry(kmtlc2 ) (Entered: 05/03/2016) |
| 05/05/2016 | 302 | | Joint MOTION for Protective Order by Defendants APF Global Exchange, NFP, American Institute for Foreign Study. (Attachments: # 1 Proposed Order (PDF Only) Stipulated Protective Order, # 2 Exhibit A to Stipulated Protective Order)(Schaecher, Susan) (Entered: 05/05/2016) |
| 05/06/2016 | 303 | | |

| | | | |
|---|---|---|---|
| | | | MEMORANDUM regarding <u>302</u> Joint MOTION for Protective Order filed by American Institute for Foreign Study, APF Global Exchange, NFP. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 5/6/2016. Text Only Entry (vbarn) (Entered: 05/06/2016) |
| 05/06/2016 | 304 | | MINUTE ORDER granting <u>302</u> Motion for Entry of Stipulated Protective Order. The proposed Protective Order shall be entered. By Magistrate Judge Kathleen M. Tafoya on 5/6/16. Text Only Entry(kmtlc2 ) (Entered: 05/06/2016) |
| 05/06/2016 | <u>305</u> | | PROTECTIVE ORDER by Magistrate Judge Kathleen M. Tafoya on 5/6/16. (sgrim) (Entered: 05/06/2016) |
| 05/12/2016 | <u>306</u> | | NOTICE of Filing Amended Pleading *First Amended Answer to First Amended Complaint* by Defendant American Cultural Exchange, LLC (Attachments: # <u>1</u> Exhibit A – First Amended Answer)(Reilly, Kathryn) (Entered: 05/12/2016) |
| 05/17/2016 | <u>307</u> | | TRANSCRIPT of Scheduling Conference held on April 25, 2016 before Magistrate Judge Tafoya. Pages: 1–113.<br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 05/17/2016) |
| 06/20/2016 | <u>308</u> | | MOTION to Withdraw *of Walter V. Siebert as Counsel for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair* by Defendant Cultural Care, Inc.. (Siebert, Walter) (Entered: 06/20/2016) |
| 06/20/2016 | <u>309</u> | | NOTICE of Entry of Appearance by Joan A. Lukey on behalf of Cultural Care, Inc.Attorney Joan A. Lukey added to party Cultural Care, Inc.(pty:dft) (Lukey, Joan) (Entered: 06/20/2016) |
| 06/20/2016 | <u>310</u> | | NOTICE of Entry of Appearance by Robert M. Buchanan, Jr on behalf of Cultural Care, Inc.Attorney Robert M. Buchanan, Jr added to party Cultural Care, Inc.(pty:dft) (Buchanan, Robert) (Entered: 06/20/2016) |
| 06/20/2016 | <u>311</u> | | NOTICE of Entry of Appearance by Michael T. Gass on behalf of Cultural Care, Inc.Attorney Michael T. Gass added to party Cultural Care, Inc.(pty:dft) (Gass, Michael) (Entered: 06/20/2016) |
| 06/20/2016 | <u>312</u> | | NOTICE of Entry of Appearance by Justin J. Wolosz on behalf of Cultural Care, Inc.Attorney Justin J. Wolosz added to party Cultural Care, Inc.(pty:dft) (Wolosz, Justin) (Entered: 06/20/2016) |
| 06/20/2016 | <u>313</u> | | NOTICE of Entry of Appearance by Lyndsey Marie Kruzer on behalf of Cultural Care, Inc.Attorney Lyndsey Marie Kruzer added to party Cultural Care, Inc.(pty:dft) (Kruzer, Lyndsey) (Entered: 06/20/2016) |

| 06/20/2016 | 314 | | MOTION to Withdraw as Attorney by Defendant Cultural Care, Inc.. (Allen, Jeffrey) (Entered: 06/20/2016) |
|---|---|---|---|
| 06/20/2016 | 315 | | MOTION to Withdraw as Attorney by Defendant Cultural Care, Inc.. (Gentile, Donald) (Entered: 06/20/2016) |
| 06/21/2016 | 316 | | ORDER granting 308 , 314 , and 315 Motions to Withdraw as Attorney. Attorneys Walter V. Siebert, Jeffrey P. Allen, and Donald J. Gentile are permitted to withdraw as counsel for Defendant Cultural Care, Inc., d/b/a Cultural Care AuPair. The Court notes that Defendant Cultural Care, Inc., d/b/a Cultural Care AuPair, continues to be represented by William Monts, III, Joan A. Lukey, Justin J. Wolosz, Lyndsey Kruzer, Michael T. Gass, and Robert Buchanan, Jr. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Walter V. Siebert, Jeffrey P. Allen, and Donald J. Gentile's email addresses from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 6/21/2016. Text Only Entry(vbarn) (Entered: 06/21/2016) |
| 06/21/2016 | 317 | | NOTICE of Entry of Appearance by James Michael Lyons on behalf of Cultural Care, Inc.Attorney James Michael Lyons added to party Cultural Care, Inc.(pty:dft) (Lyons, James) (Entered: 06/21/2016) |
| 06/21/2016 | 318 | | NOTICE of Entry of Appearance by Jessica Lynn Fuller on behalf of Cultural Care, Inc.Attorney Jessica Lynn Fuller added to party Cultural Care, Inc.(pty:dft) (Fuller, Jessica) (Entered: 06/21/2016) |
| 06/21/2016 | 319 | | NOTICE of Entry of Appearance by Diane Rebecca Hazel on behalf of Cultural Care, Inc.Attorney Diane Rebecca Hazel added to party Cultural Care, Inc.(pty:dft) (Hazel, Diane) (Entered: 06/21/2016) |
| 07/05/2016 | 320 | | MOTION to Withdraw as Attorney by Defendant Cultural Care, Inc.. (Monts, William) (Entered: 07/05/2016) |
| 07/05/2016 | 321 | | NOTICE of Change of Address/Contact Information *Notice of Change of Law Firm Affiliation* by Lawrence Daniel Stone (Stone, Lawrence) (Entered: 07/05/2016) |
| 07/06/2016 | 322 | | NOTICE of Entry of Appearance by Kathleen E. Craigmile on behalf of 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLCAttorney Kathleen E. Craigmile added to party 20/20 Care Exchange, Inc(pty:dft), Attorney Kathleen E. Craigmile added to party A.P.E.X. American Professional Exchange, LLC(pty:dft) (Craigmile, Kathleen) (Entered: 07/06/2016) |
| 07/07/2016 | 323 | | ORDER granting 320 Motion to Withdraw as Attorney. Attorney William L. Monts, III is permitted to withdraw as counsel for Defendant Cultural Care, Inc, d/b/a Cultural Care Au Pari. The Court notes that Defendant Cultural Care, Inc, d/b/a Cultural Care Au Pari continues to be represented by Diane Hazel, James Lyons, Jessica Fuller, Joan Lukey, Justin Wolosz, Lyndsey Kruzer, Michael Gass, and Robert Buchanan, Jr. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Monts email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 7/7/2016. Text Only Entry(vbarn) (Entered: 07/07/2016) |

| 07/20/2016 | 324 | | NOTICE of Entry of Appearance by Jonathan S. Bender on behalf of Cultural Homestay InternationalAttorney Jonathan S. Bender added to party Cultural Homestay International(pty:dft) (Bender, Jonathan) (Entered: 07/20/2016) |
|---|---|---|---|
| 07/25/2016 | 325 | | MOTION to Certify Class by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Exhibit 1 – Declaration of Lauren F. Louis With Exhibits A–L, # 2 Exhibit 2 – Notice and Opt–In Form, # 3 Proposed Order (PDF Only))(Schwartz, Matthew) (Entered: 07/25/2016) |
| 07/27/2016 | 326 | | NOTICE *OF FILING CONSENTS TO BECOME PARTY PLAINTIFFS* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni (Louis, Lauren) (Entered: 07/27/2016) |
| 08/11/2016 | 327 | | Joint MOTION to Strike *Repudiated Allegations and for Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated Memorandum* by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Proposed Order (PDF Only))(Hazel, Diane) (Entered: 08/11/2016) |
| 08/12/2016 | 328 | | NOTICE of Entry of Appearance by Grace Anne Fox on behalf of Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc.Attorney Grace Anne Fox added to party Agent Au Pair(pty:dft), Attorney Grace Anne Fox added to party American Cultural Exchange, LLC(pty:dft), Attorney Grace Anne Fox added to party Au Pair International, Inc.(pty:dft) (Fox, Grace) (Entered: 08/12/2016) |
| 08/15/2016 | 329 | | MOTION to Amend/Correct/Modify 101 Amended Complaint by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Exhibit 1 (Second Amended Complaint), # 2 Exhibit 2 (Redlined Second Amended Complaint), # 3 Exhibit 3 (Excerpt from April 25, 2016 Transcript), # 4 Exhibit 4 (Proposed Order))(Schwartz, Matthew) (Entered: 08/15/2016) |
| 08/15/2016 | 330 | | Second MOTION to Certify Class by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Exhibit 1 (Declaration of Matthew L. Schwartz with Exhibits A–F), # 2 Exhibit 2 (Proposed Notice), # 3 Exhibit 3 (Proposed Order))(Schwartz, Matthew) (Entered: 08/15/2016) |
| 08/19/2016 | 331 | | NOTICE of Entry of Appearance *of Joseph H. Hunt* by Joseph H. Hunt on behalf of InterExchange, Inc.Attorney Joseph H. Hunt added to party InterExchange, Inc.(pty:dft) (Hunt, Joseph) (Entered: 08/19/2016) |
| 08/19/2016 | 332 | | MINUTE ORDER: An Informal Discovery Conference is set for 8/19/16 at 3:00 PM before Magistrate Judge Kathleen M. Tafoya The parties shall initiate a conference call and then call chambers at 303–335–2780 at the scheduled time. By Magistrate Judge Kathleen M. Tafoya on 8/19/16. Text Only Entry (kmtlc2 ) (Entered: 08/19/2016) |
| 08/19/2016 | 333 | | COURTROOM MINUTES for Telephonic Informal Discovery Conference held before Magistrate Judge Kathleen M. Tafoya on 8/19/2016. Defendants shall respond to Plaintiffs' Motion for Conditional Collective Action Certification and Incorporated Memorandum of Law 325 , Plaintiffs' Second |

| | | | |
|---|---|---|---|
| | | | Motion for Conditional Collective Action Certification and Incorporated Memorandum of Law 330 , and Plaintiffs' Motion to Amend and Incorporated Memorandum of Law 329 on or before 9/15/2016. Plaintiffs' replies, if any, shall be due on or before 10/6/2016. FTR: Courtroom C–201. (ebuch) (Entered: 08/19/2016) |
| 08/22/2016 | 334 | | MEMORANDUM REGARDING JOINT MOTION to Strike *Repudiated Allegations and for Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated Memorandum* filed by Cultural Care, Inc. 327 . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 8/22/2016. Text Only Entry (cmalc2) (Entered: 08/22/2016) |
| 08/22/2016 | 335 | | MEMORANDUM REGARDING MOTION to Amend/Correct/Modify 101 Amended Complaint filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo 329 . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 8/22/2016. Text Only Entry (cmalc2) (Entered: 08/22/2016) |
| 08/25/2016 | 336 | | MINUTE ORDER. Status Conference reset for 4/11/2017 09:30 AM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya, by Magistrate Judge Kathleen M. Tafoya on 8/25/16. Text Only Entry (sgrim) (Entered: 08/25/2016) |
| 08/31/2016 | 337 | | MOTION for Sanctions *Pursuant to Rule 37(d) and Incorporated Memorandum* by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit 1 to Rule 37 Motion (Notice of Deposition Caicedo), # 2 Exhibit 2 to Rule 37 Motion (Emails with L. Louis), # 3 Exhibit 3 to Rule 37 Motion (Caicedo transcript), # 4 Exhibit 4 to Rule 37 Motion (Lemke case), # 5 Exhibit Declaration of Justin Wolosz, # 6 Exhibit A to Wolosz Declaration (Receipts), # 7 Exhibit B to Wolosz Declaration (Invoices), # 8 Exhibit C to Wolosz Declaration (Attorneys Fees), # 9 Proposed Order (PDF Only) Granting Rule 37 Motion)(Hazel, Diane) (Entered: 08/31/2016) |
| 08/31/2016 | 338 | | MEMORANDUM regarding 337 MOTION for Sanctions *Pursuant to Rule 37(d) and Incorporated Memorandum* filed by Cultural Care, Inc. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 8/31/2016. Text Only Entry (vbarn) (Entered: 08/31/2016) |
| 08/31/2016 | 339 | | MINUTE ORDER Setting Hearing on Motion: Motion Hearing set for 10/25/16 at 1:30 PM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya regarding 337 MOTION for Sanctions Pursuant to Rule 37(d), and Incorporated Memorandum. By Magistrate Judge Kathleen M. Tafoya on 8/31/16. Text Only Entry (kmtlc2 ) (Entered: 08/31/2016) |
| 09/02/2016 | 340 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 330 Second MOTION to Certify Class by Defendant AuPairCare, Inc.. (Attachments: # 1 Exhibit A – Email, # 2 Proposed Order (PDF Only))(Kozal, Peggy) (Entered: 09/02/2016) |
| 09/02/2016 | 341 | | MOTION to Compel by Defendant American Institute for Foreign Study. (Attachments: # 1 Exhibit A to Motion to Compel, # 2 Exhibit B to Motion to Compel)(Schaecher, Susan) (Entered: 09/02/2016) |
| 09/06/2016 | 342 | | |

| | | | |
|---|---|---|---|
| | | | MEMORANDUM regarding 340 Unopposed MOTION for Extension of Time to File Response/Reply as to 330 Second MOTION to Certify Class filed by AuPairCare, Inc., 341 MOTION to Compel filed by American Institute for Foreign Study. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 9/6/2016. Text Only Entry (vbarn) (Entered: 09/06/2016) |
| 09/06/2016 | 343 | | MINUTE ORDER granting 340 Motion for One–Week Extension of Time to Respond to Plaintiffs' Second Motion for Conditional Collective Action Certification. Defendant, AuPairCare, Inc. shall file its Response to Plaintiffs' Second Motion for Conditional Collective Action Certification no later than 9/22/16. By Magistrate Judge Kathleen M. Tafoya on 9/6/16. Text Only Entry(kmtlc2 ) (Entered: 09/06/2016) |
| 09/06/2016 | 344 | | MINUTE ORDER denying 341 Motion to Compel Production of Documents based on counsels' failure to adequately and meaningfully meet and confer, as required by D.C.COLO.LCivR 7.1(a), and failure to comply with Judge Tafoya's Civil Practice Standards Section III.A. By Magistrate Judge Kathleen M. Tafoya on 9/6/16. Text Only Entry(kmtlc2 ) (Entered: 09/06/2016) |
| 09/06/2016 | 345 | | BRIEF in Opposition to 327 Joint MOTION to Strike *Repudiated Allegations and for Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated Memorandum* filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 09/06/2016) |
| 09/06/2016 | 346 | | Joint MOTION for Extension of Time to File Response/Reply as to 330 Second MOTION to Certify Class by Defendant Expert Group International, Inc. (Attachments: # 1 Proposed Order (PDF Only))(Enica, Bogdan) (Entered: 09/06/2016) |
| 09/08/2016 | 347 | | MEMORANDUM REGARDING JOINT MOTION for Extension of Time to File Response/Reply as to 330 Second MOTION to Certify Class filed by Expert Group International, Inc 346 . Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 9/8/2016. Text Only Entry (cmalc2) (Entered: 09/08/2016) |
| 09/08/2016 | 348 | | MINUTE ORDER granting 346 Motion for Extension of Time. Defendant Expert Group International Inc. d/b/a Expert AuPair shall file its response to 330 Motion for Conditional Collective Action Certification and Incorporated Memorandum of Law no later than 10/6/16 and Plaintiff's Reply to the same shall be filed no later than 10/12/16. By Magistrate Judge Kathleen M. Tafoya on 9/8/16. Text Only Entry(kmtlc2 ) (Entered: 09/08/2016) |
| 09/08/2016 | 349 | | MINUTE ORDER: An Informal Telephonic Discovery Conference is set for 9/8/16 at 1:45 PM before Magistrate Judge Kathleen M. Tafoya. The parties shall initiate a conference call and then call chambers at 303–335–2780 at the scheduled time. By Magistrate Judge Kathleen M. Tafoya on 9/8/16. Text Only Entry (kmtlc2 ) (Entered: 09/08/2016) |
| 09/08/2016 | 350 | | COURTROOM MINUTES for Telephonic Informal Discovery Conference held on 9/8/2016 before Magistrate Judge Kathleen M. Tafoya. FTR: KMT C201. (sgrim) (Entered: 09/08/2016) |
| 09/09/2016 | 351 | | |

| | | |
|---|---|---|
| | | Unopposed MOTION for Extension of Time to File Response/Reply as to 325 MOTION to Certify Class by Defendant Cultural Care, Inc.. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order Granting Extension of Time)(Hazel, Diane) (Entered: 09/09/2016) |
| 09/12/2016 | 352 | MEMORANDUM regarding 351 Unopposed MOTION for Extension of Time to File Response/Reply as to 325 MOTION to Certify Class by Cultural Care, Inc. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 9/12/2016. Text Only Entry (vbarn) (Entered: 09/12/2016) |
| 09/12/2016 | 353 | MINUTE ORDER granting 351 Motion for Extension of Time. Defendant Cultural Care, Inc. shall file its Response to Plaintiff's Second Motion for Conditional Collective Action Certification and Incorporated Memorandum of Law no later than 9/23/16. By Magistrate Judge Kathleen M. Tafoya on 9/12/16. Text Only Entry(kmtlc2 ) (Entered: 09/12/2016) |
| 09/12/2016 | 354 | NOTICE of Entry of Appearance by Sabria Alexandria McElroy on behalf of All Plaintiffs Attorney Sabria Alexandria McElroy added to party Johana Paola Beltran(pty:pla), Attorney Sabria Alexandria McElroy added to party Dayanna Paola Cardenas Caicedo(pty:pla), Attorney Sabria Alexandria McElroy added to party Beaudette Deetlefs(pty:pla), Attorney Sabria Alexandria McElroy added to party Alexandra Ivette Gonzalez(pty:pla), Attorney Sabria Alexandria McElroy added to party Lusapho Hlatshaneni(pty:pla) (McElroy, Sabria) (Entered: 09/12/2016) |
| 09/15/2016 | 355 | UNRESTRICTED DOCUMENT – Level 1: SEE PUBLIC ENTRY DOC 356 FOR TITLE OF DOCUMENT by Defendant InterExchange, Inc. (Attachments: # 1 Exhibit A part 1, # 2 Exhibit A part 2, # 3 Exhibit B, # 4 Exhibit C)(Colaizzi, Brooke) Modified on 10/21/2016 to add text unrestrict pursuant to D.C.COLO.LCivR 7.2(e) (athom, ). (Entered: 09/15/2016) |
| 09/15/2016 | 356 | Response in Opposition to 325 MOTION to Certify Class filed by Defendant InterExchange, Inc. (Public Entry for Level 1 Restricted Document 355 ) Text Only Entry (athom, ) (Entered: 09/15/2016) |
| 09/15/2016 | 357 | TRANSCRIPT of Telephonic Informal Discovery Conference held on September 8, 2016 before Magistrate Judge Tafoya. Pages: 1–37. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 09/15/2016) |
| 09/15/2016 | 358 | JOINDER *in Opposition to Motion for Conditional Certification* by Defendant American Institute for Foreign Study. (Schaecher, Susan) (Entered: 09/15/2016) |
| 09/15/2016 | 359 | |

| | | | |
|---|---|---|---|
| | | | BRIEF in Opposition to 325 MOTION to Certify Class filed by Defendant American Cultural Exchange, LLC. (Attachments: # 1 Exhibit A – Declaration of Bill Kapler, # 2 Exhibit Ex 1 to Kapler Declaration, # 3 Exhibit Ex 2 to Kapler Declaration, # 4 Exhibit Ex 3 to Kapler Declaration, # 5 Exhibit Ex B – Notice Conferral, # 6 Exhibit C – Proposed Notice – Clean, # 7 Exhibit D – Proposed Notice – Redlined)(Reilly, Kathryn) (Entered: 09/15/2016) |
| 09/22/2016 | 360 | | RESPONSE to 330 Second MOTION to Certify Class filed by Defendant AuPairCare, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B – Part 1 of 4, # 3 Exhibit B – Part 2 of 4, # 4 Exhibit B – Part 3 of 4, # 5 Exhibit B – Part 4 of 4)(Maschler, Brian) (Entered: 09/22/2016) |
| 09/23/2016 | 361 | | REPLY to Response to 327 Joint MOTION to Strike *Repudiated Allegations and for Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated Memorandum* filed by Defendant Cultural Care, Inc.. (Hazel, Diane) (Entered: 09/23/2016) |
| 09/23/2016 | 362 | | BRIEF in Opposition to 325 MOTION to Certify Class filed by Defendant Cultural Care, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Lyons, James) (Public Entry for Restricted Level 1 Document 363 ) Modified on 9/26/2016 to add public entry text (athom, ). (Entered: 09/23/2016) |
| 09/23/2016 | 363 | | UNRESTRICTED DOCUMENT – Level 1: SEE PUBLIC ENTRY DOC 362 FOR TITLE OF DOCUMENT by Defendant Cultural Care, Inc. (Attachments: # 1 Exhibit E, # 2 Exhibit F, # 3 Exhibit G)(Lyons, James) Modified on 9/26/2016 to correct filer (athom, ). Modified on 10/21/2016 to add text and unrestrict pursuant to D.C.COLO.LCivR 7.2(e) (athom, ). (Entered: 09/23/2016) |
| 09/23/2016 | 364 | | NOTICE *of Filing Motion and Exhibits Restricted Access Level One* by Defendant Cultural Care, Inc. (Hazel, Diane) (Entered: 09/23/2016) |
| 09/26/2016 | 365 | | MOTION for Protective Order by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Exhibit 1 (Proposed Protective Order))(Skinner, Peter) (Entered: 09/26/2016) |
| 09/26/2016 | 366 | | DECLARATION of *Dayanna Paola Cardenas Caicedo* by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Skinner, Peter) (Entered: 09/26/2016) |
| 09/26/2016 | 367 | | DECLARATION of *Lauren F. Louis* regarding MOTION for Sanctions *Pursuant to Rule 37(d) and Incorporated Memorandum* 337 by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Skinner, Peter) (Entered: 09/27/2016) |
| 09/27/2016 | 368 | | BRIEF in Opposition to 337 MOTION for Sanctions *Pursuant to Rule 37(d) and Incorporated Memorandum* filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette |

| | | | |
|---|---|---|---|
| | | | Gonzalez, Lusapho Hlatshaneni. (Skinner, Peter) (Entered: 09/27/2016) |
| 09/27/2016 | 369 | | MEMORANDUM regarding 365 MOTION for Protective Order filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 9/27/2016. Text Only Entry (vbarn) (Entered: 09/27/2016) |
| 09/27/2016 | 370 | | MINUTE ORDER: Defendants shall file a Consolidated Response to Plaintiffs 365 MOTION for a Protective Order no later than 10/13/16 and Plaintiffs shall file a Reply, if any, no later than 10/24/16. By Magistrate Judge Kathleen M. Tafoya on 9/27/16. Text Only Entry (kmtlc2 ) (Entered: 09/27/2016) |
| 09/30/2016 | 371 | | MINUTE ORDER re: 355 Restricted Document – Level 1 filed by InterExchange, Inc. The Court notes that this document was filed under restriction, but it was not accompanied by a Motion for Leave to Restrict. D.C.COLO.LCivR 7.2(c) provides that all restricted documents must be filed with a Motion for Leave to Restrict that addresses, among other things, "the interest to be protected and why such interest outweighs the presumption of public access." Additionally, D.C.COLO.LCivR 7.2(e) provides that "If a document is filed as a restricted document without an accompanying motion to restrict, it shall retain a Level 1 restriction for 14 days. If no motion to restrict is filed within such time period, the restriction shall expire and the document shall be open to public inspection." Accordingly, InterExchange, Inc. is hereby ORDERED to file a Motion for Leave to Restrict the material filed at Doc. 355 forthwith. If this Motion is not filed on or before [10/7/2016], the Court will unrestrict Doc. 355 . By Judge Christine M. Arguello on 09/30/2016. Text Only Entry (athom, ) (Entered: 09/30/2016) |
| 10/03/2016 | 372 | | NOTICE of Entry of Appearance by Dawn Smalls on behalf of All Plaintiffs Attorney Dawn Smalls added to party Johana Paola Beltran(pty:pla), Attorney Dawn Smalls added to party Dayanna Paola Cardenas Caicedo(pty:pla), Attorney Dawn Smalls added to party Beaudette Deetlefs(pty:pla), Attorney Dawn Smalls added to party Alexandra Ivette Gonzalez(pty:pla), Attorney Dawn Smalls added to party Lusapho Hlatshaneni(pty:pla) (Smalls, Dawn) (Entered: 10/03/2016) |
| 10/04/2016 | 373 | | MOTION for Extension of Time to File Response/Reply as to 330 Second MOTION to Certify Class by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Attachments: # 1 Appendix 1 (Proposed Order))(Louis, Lauren) (Entered: 10/04/2016) |
| 10/05/2016 | 374 | | ORDER granting 373 Motion for Extension of Time to File Reply Brief. Plaintiff's Reply Brief due on or before 10/12/2016, NOT TO EXCEED 40 pages in total, excluding Certificate of Service. SO ORDERED BY Judge Christine M. Arguello on 10/5/2016. Text Only Entry(vbarn) (Entered: 10/05/2016) |
| 10/06/2016 | 375 | | UNRESTRICTED DOCUMENT – Level 1: SEE PUBLIC ENTRY DOC 379 FOR TITLE OF DOCUMENT by Defendant Expert Group International, Inc. (Attachments: # 1 Exhibit Declaration of Mark Gaulter, # 2 Exhibit Exhibit 1, # 3 Exhibit Exhibit 2, # 4 Exhibit Exhibit 3, # 5 Exhibit Exhibit 4, # 6 Exhibit Declaration of Mark Jeffery, # 7 Exhibit Draft Deposition Excerpt)(Enica, |

| | | | |
|---|---|---|---|
| | | | Bogdan) Modified on 11/10/2016 to unrestrict pursuant to D.C.COLO.LCivR 7.2(e)(athom, ). (Entered: 10/06/2016) |
| 10/06/2016 | 379 | | RESPONSE in Opposition to 330 Second MOTION to Certify Class filed by Defendant Expert Group International, Inc. (Public Entry for RESTRICTED Document 375 , filed 10/6/2016) TEXT ONLY ENTRY (evana, ) (Entered: 10/07/2016) |
| 10/07/2016 | 376 | | Joint MOTION for Leave to File Excess Pages *[Expedited Review Requested]* by Defendant Cultural Care, Inc.. (Attachments: # 1 Proposed Order (PDF Only))(Hazel, Diane) (Entered: 10/07/2016) |
| 10/07/2016 | 377 | | MEMORANDUM regarding 376 Joint MOTION for Leave to File Excess Pages *[Expedited Review Requested]* filed by Cultural Care, Inc. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 10/7/2016. Text Only Entry (vbarn) (Entered: 10/07/2016) |
| 10/07/2016 | 378 | | MINUTE ORDER granting 376 Motion for Leave to Exceed Page Limitation [Expedited Review Requested]. Defendants Cultural Care d/b/a Cultural Care Au Pair, InterExchange, Agent Au Pair, Go Aupair, American Institute for Foreign Study d/b/a Au Pair in America, and AuPairCare, Inc.'s Consolidated Response to Plaintiffs' 365 Motion for a Protective Order shall not exceed 25 pages. By Magistrate Judge Kathleen M. Tafoya on 10/7/16. Text Only Entry(kmtlc2 ) (Entered: 10/07/2016) |
| 10/11/2016 | 380 | | MOTION to Withdraw as Attorney by Defendant InterExchange, Inc.. (Attachments: # 1 Proposed Order (PDF Only))(Herrera, Erica) (Entered: 10/11/2016) |
| 10/12/2016 | 381 | | ORDER granting 380 Motion to Withdraw as Attorney. Attorney Erica L. Herrera is permitted to withdraw as counsel for Defendant InterExchange, Inc. The Court notes that Defendant InterExchange, Inc. continues to be represented by Raymond M. Deeny, Heather F. Vickles, Brooke A. Colaizzi, and Joseph J. Hunt. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Ms. Herreras email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 10/12/2016. Text Only Entry(vbarn) (Entered: 10/12/2016) |
| 10/12/2016 | 382 | | MOTION for Leave to Restrict by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Schwartz, Matthew) (Entered: 10/12/2016) |
| 10/12/2016 | 383 | | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni.. (Attachments: # 1 Exhibit 1 (Declaration of L. Louis with Exs. A–Q), # 2 Exhibit 2 (Proposed Notice))(Schwartz, Matthew) (Entered: 10/12/2016) |
| 10/12/2016 | 384 | | REPLY Memorandum of Law to Response in Further Support of 330 Second MOTION to Certify Class , 325 MOTION to Certify Class filed by Plaintiffs Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Lusapho Hlatshaneni. (Public Entry for Level 1 Restricted Document 383 ). Text Only Entry (athom, ) Modified on 10/17/2016 to create linkage (athom, ). (Entered: 10/13/2016) |

| 10/13/2016 | 385 | | NOTICE *of Filing Opposition to Plaintiffs' Motion for a Protective Order and Exhibits as Restricted Access Level One* by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Associates In Cultural Exchange, Au Pair International, Inc., Cultural Care, Inc., Cultural Homestay International, Expert Group International, Inc, USAuPair, INC (Hazel, Diane) (Entered: 10/13/2016) |
|---|---|---|---|
| 10/13/2016 | 386 | | UNRESTRICTED DOCUMENT – Level 1: SEE PUBLIC ENTRY DOC 388 FOR TITLE OF DOCUMENT by Defendant Cultural Care, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q (Part 1), # 18 Exhibit Q (Part 2), # 19 Exhibit R, # 20 Exhibit S)(Hazel, Diane) Modified on 11/3/2016 to unrestrict pursuant to D.C.COLO.LCivR 7.2(e) (athom, ). (Entered: 10/13/2016) |
| 10/13/2016 | 388 | | Opposition to 365 MOTION for Protective Order filed by Defendant Cultural Care, Inc. (Public Entry for Level 1 Restricted Document 386 ). Text Only Entry (athom, ) (Entered: 10/14/2016) |
| 10/14/2016 | 387 | | MEMORANDUM regarding 382 MOTION for Leave to Restrict filed by Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 10/14/2016. Text Only Entry (vbarn) (Entered: 10/14/2016) |
| 10/14/2016 | 389 | | NOTICE *of Filing Reply in Support of Motion for Sanctions Pursuant to Rule 37(d) as Restricted Access Level One* by Defendant Cultural Care, Inc. (Hazel, Diane) (Entered: 10/14/2016) |
| 10/14/2016 | 390 | | UNRESTRICTED DOCUMENT – Level 1: SEE PUBLIC ENTRY DOC 391 FOR TITLE OF DOCUMENT by Defendant Cultural Care, Inc. (Hazel, Diane) Modified on 11/3/2016 to unrestrict pursuant to D.C.COLO.LCivR 7.2(e) (athom, ). (Entered: 10/14/2016) |
| 10/14/2016 | 391 | | REPLY to Response to 337 MOTION for Sanctions *Pursuant to Rule 37(d) and Incorporated Memorandum* filed by Defendant Cultural Care, Inc. (Public Entry for Level 1 Restricted Document 390 ). Text Only Entry (athom, ) (Entered: 10/14/2016) |
| 10/14/2016 | 392 | | Conventionally Submitted Material : 1 Flash Drive – Exhibit F to Public Entry Opposition to Motion 388 for Restricted Document – Level 1, 386 by Defendant Cultural Care, Inc. Text Only Entry (athom, ) (Entered: 10/17/2016) |
| 10/14/2016 | 393 | | LETTER re: 392 Conventionally Submitted Material by Defendant Cultural Care, Inc. (athom, ) (Entered: 10/17/2016) |
| 10/17/2016 | 394 | | MINUTE ORDER granting Plaintiffs' Unopposed 329 Motion to Amend and Incorporated Memorandum of Law. The proposed Second Amended Complaint shall be entered. Defendants' 327 Motion to Strike remains pending and is not affected by this ruling. By Magistrate Judge Kathleen M. Tafoya on 10/17/16. Text Only Entry(kmtlc2 ) Modified to correct text on 10/17/2016 |

| | | | |
|---|---|---|---|
| | | | (jgonz, ). (Entered: 10/17/2016) |
| 10/17/2016 | 395 | | SECOND AMENDED COMPLAINT against 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Associates In Cultural Exchange, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC, GoAuPair Operations, LLC Attorney Alexander Neville Hood added to party Sarah Carolina Azuela Rascon(pty:pla), Attorney Alexander Neville Hood added to party Laura Mejia Jimenez(pty:pla), Attorney Alexander Neville Hood added to party Juliane Harning(pty:pla), Attorney Alexander Neville Hood added to party Nicole Mapledoram(pty:pla), filed by Beaudette Deetlefs, Johana Paola Beltran, Lusapho Hlatshaneni, Dayanna Paola Cardenas Caicedo, Alexandra Ivette Gonzalez, Juliane Harning, Nicole Mapledoram, Laura Mejia Jimenez, Sarah Carolina Azuela Rascon.(jgonz, ) (Entered: 10/18/2016) |
| 10/19/2016 | 396 | | Joint MOTION for Hearing/Conference re 337 MOTION for Sanctions *Pursuant to Rule 37(d) and Incorporated Memorandum*, 365 MOTION for Protective Order *(Oral Argument)* by Defendant Cultural Care, Inc.. (Attachments: # 1 Proposed Order (PDF Only))(Hazel, Diane) (Entered: 10/19/2016) |
| 10/19/2016 | 397 | | MINUTE ORDER granting 382 Motion to Restrict Public Access to Plaintiffs' Reply Memorandum of Law in Further Support of their Motions for Conditional Collective Action Certification. Doc. No. 383 shall remain restricted at Level 1. By Magistrate Judge Kathleen M. Tafoya on 10/19/16. Text Only Entry(kmtlc2 ) (Entered: 10/19/2016) |
| 10/19/2016 | 398 | | SUPPLEMENT/AMENDMENT to 396 Joint MOTION for Hearing/Conference re 337 MOTION for Sanctions *Pursuant to Rule 37(d) and Incorporated Memorandum*, 365 MOTION for Protective Order *(Oral Argument) Amended Proposed Order* by Defendant Cultural Care, Inc.. (Hazel, Diane) (Entered: 10/19/2016) |
| 10/19/2016 | 399 | | MEMORANDUM regarding 396 Joint MOTION for Hearing/Conference re 337 MOTION for Sanctions *Pursuant to Rule 37(d) and Incorporated Memorandum*, 365 MOTION for Protective Order *(Oral Argument)* filed by Cultural Care, Inc. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 10/19/2016. Text Only Entry (vbarn) (Entered: 10/19/2016) |
| 10/19/2016 | 400 | | MINUTE ORDER granting 396 Motion for Oral Argument on Plaintiffs' Motion for a Protective Order Scheduled in Conjunction with Defendant Cultural Care, Inc.'s Motion for Sanctions. Plaintiffs' 365 Motion for Protective Order will be heard with Defendants' 337 Motion for Sanctions on 10/25/16 at 1:30 p.m. in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya. Counsel who cannot be present may participate by phone by initiating a conference call and calling chambers at 303−335−2780 at the scheduled time. The parties are further directed to use a LAND LINE; NO CELLULAR, CORDLESS OR SPEAKER PHONES ARE PERMITTED. By Magistrate Judge Kathleen M. Tafoya on 10/19/16. Text Only Entry(kmtlc2 ) (Entered: 10/19/2016) |

| 10/20/2016 | 401 | | Utility Setting/Resetting Deadlines/Hearings: Text Only Entry Motion Hearing set for 10/25/2016 01:30 PM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya. (jgonz, ) (Entered: 10/20/2016) |
|---|---|---|---|
| 10/20/2016 | 402 | | MINUTE ORDER: Plaintiffs may file their reply to 365 MOTION for Protective Order, if any, no later than 12:00 p.m. on October 24, 2016. By Magistrate Judge Kathleen M. Tafoya on 10/20/16. Text Only Entry (kmtlc1 ) (Entered: 10/20/2016) |
| 10/21/2016 | 403 | | MINUTE ORDER re: 375 Restricted Document – Level 1, filed by Expert Group International, Inc. The Court notes that this document was filed under restriction, but it was not accompanied by a Motion for Leave to Restrict. D.C.COLO.LCivR 7.2(c) provides that all restricted documents must be filed with a Motion for Leave to Restrict that addresses, among other things, "the interest to be protected and why such interest outweighs the presumption of public access." Additionally, D.C.COLO.LCivR 7.2(e) provides that "If a document is filed as a restricted document without an accompanying motion to restrict, it shall retain a Level 1 restriction for 14 days. If no motion to restrict is filed within such time period, the restriction shall expire and the document shall be open to public inspection." Accordingly, Expert Group International, Inc. is hereby ORDERED to file a Motion for Leave to Restrict the material filed at Doc. 375 forthwith. If this Motion is not filed on or before 10/28/2016, the Court will unrestrict Doc. 375 . By Judge Christine M. Arguello on 10/21/2016. Text Only Entry (athom, ) (Entered: 10/21/2016) |
| 10/24/2016 | 404 | | MOTION for Leave to *File a Consolidated Sur–Reply Memorandum of Law in Further Opposition to Plaintiffs' Motions for Conditional Collective Action Certification* 325 MOTION to Certify Class , 330 Second MOTION to Certify Class by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit Ex. A to Motion for Leave (Sur–Reply), # 2 Exhibit Ex. A to Sur–Reply, # 3 Exhibit Ex. B to Sur–Reply, # 4 Proposed Order (PDF Only) Proposed Order to Motion for Leave to File Sur–Reply)(Hazel, Diane) (Entered: 10/24/2016) |
| 10/24/2016 | 405 | | REPLY to Response to 365 MOTION for Protective Order Attorney Peter Murray Skinner added to party Sarah Carolina Azuela Rascon(pty:pla), Attorney Peter Murray Skinner added to party Juliane Harning(pty:pla), Attorney Peter Murray Skinner added to party Laura Mejia Jimenez(pty:pla), Attorney Peter Murray Skinner added to party Nicole Mapledoram(pty:pla) filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 10/24/2016) |
| 10/25/2016 | 406 | | MOTION for Leave to Restrict by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC. (Attachments: # 1 Exhibit A – Sur–Reply)(Reilly, Kathryn) (Entered: 10/25/2016) |
| 10/25/2016 | 407 | | RESTRICTED DOCUMENT – Level 1: by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC.. (Attachments: # 1 Exhibit A – Sur–Reply)(Reilly, Kathryn) (Entered: 10/25/2016) |
| 10/25/2016 | 408 | | MEMORANDUM regarding 404 MOTION for Leave to *File a Consolidated Sur–Reply Memorandum of Law in Further Opposition to Plaintiffs' Motions for Conditional Collective Action Certification* 325 MOTION to Certify Class |

| | | |
|---|---|---|
| | | , 330 Second MOTION to Certify C filed by Cultural Care, Inc., 406 MOTION for Leave to Restrict filed by American Cultural Exchange, LLC, GoAuPair Operations, LLC. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 10/25/2016. Text Only Entry (vbarn) (Entered: 10/25/2016) |
| 10/25/2016 | 409 | MOTION for Leave to File Sur–Reply in Opposition to Plaintiffs' Motion for Conditional Collective Action Certification by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC. (Public Entry for Level 1 Restricted Document 407 ). Text Only Entry (athom, ) (Entered: 10/25/2016) |
| 10/25/2016 | 411 | COURTROOM MINUTES for Motion Hearing held on 10/25/2016 before Magistrate Judge Kathleen M. Tafoya. ORDERED: Motion of Defendant Cultural Care, Inc. for Sanctions Pursuant to Rule 37(d), and Incorporated Memorandum 337 is GRANTED IN PART. Defendant Cultural Care is awarded costs and attorney fees, jointly and severally against Plaintiff Dayanna Paola Cardenas Caicedo and the law firm of Boise, Schiller & Flexner, incurred in the preparation of Ms. Cardenas Caicedo's deposition in the amount of $19,807.19. The court RECOMMENDS that Plaintiff Dayanna Paola Cardenas Caicedo be dismissed as agreed to by the parties. Plaintiffs' Motion for Protective Order 365 is DENIED, as discussed. AUPAIRCARE INC.'s oral motion to reconsider the court's previous ruling with respect to asking questions about an au pair's immigration status is DENIED. Plaintiffs' oral motion to file a response to Defendants' Motion for Leave to File a Consolidated Sur–Reply Memorandum of Law in Further Opposition to Plaintiffs' Motion for Conditional Collective Action Certification 404 is GRANTED. Plaintiff shall file a response by October 26, 2016. FTR: KMT C201. (sgrim) (Entered: 10/26/2016) |
| 10/25/2016 | 412 | RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE. The court RECOMMENDS that Plaintiff Dayanna Paola Cardenas Caicedo be dismissed as agreed to by the parties, by Magistrate Judge Kathleen M. Tafoya on 10/25/16. Oral recommendation pursuant to Courtroom Minutes 411 . Text Only Entry (sgrim) (Entered: 10/26/2016) |
| 10/26/2016 | 410 | ORDER re: 404 MOTION for Leave to *File a Consolidated Sur–Reply Memorandum of Law in Further Opposition to Plaintiffs' Motions for Conditional Collective Action Certification* 325 MOTION to Certify Class , 330 Second MOTION to Certify C filed by Cultural Care, Inc., 406 MOTION for Leave to Restrict filed by American Cultural Exchange, LLC, GoAuPair Operations, LLC. Motions no longer referred to Magistrate Judge Kathleen M. Tafoya. By Judge Christine M. Arguello on 10/26/2016. Text Only Entry (athom, ) (Entered: 10/26/2016) |
| 10/26/2016 | 413 | NOTICE re 386 Restricted Document – Level 1, *of Filing Corrected Exhibit in Support of Defendants' Opposition to Plaintiffs' Motion for a Protective Order* by Defendant Cultural Care, Inc. (Attachments: # 1 Exhibit Attachment – Corrected Exhibit M)(Hazel, Diane) (Entered: 10/26/2016) |
| 10/26/2016 | 414 | BRIEF in Opposition to 404 MOTION for Leave to *File a Consolidated Sur–Reply Memorandum of Law in Further Opposition to Plaintiffs' Motions for Conditional Collective Action Certification* 325 MOTION to Certify Class , 330 Second MOTION to Certify Class; 409 Public Text Only Entry MOTION for Leave to File Sur–Reply in Opposition to Plaintiffs' Motion for |

| | | | |
|---|---|---|---|
| | | | Conditional Collective Action Certification for <u>407</u> Restricted Document filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) Modified on 10/27/2016 to create linkage and to add text (athom, ). (Entered: 10/26/2016) |
| 10/27/2016 | <u>415</u> | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re <u>395</u> Amended Complaint,,,, by Defendant AuPairCare, Inc.. (Attachments: # <u>1</u> Proposed Order (PDF Only))(Kozal, Peggy) (Entered: 10/27/2016) |
| 10/28/2016 | 416 | | MEMORANDUM regarding <u>415</u> Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re <u>395</u> Amended Complaint filed by AuPairCare, Inc. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 10/28/2016. Text Only Entry (vbarn) (Entered: 10/28/2016) |
| 10/28/2016 | 417 | | MINUTE ORDER granting <u>415</u> Motion for One−Week Extension of Time to Respond to Plaintiffs' Second Amended Complaint. Defendant Au Pair Care, Inc. shall file its Answer or otherwise respond to Plaintiffs' Second Amended Complaint no later than 11/10/16. By Magistrate Judge Kathleen M. Tafoya on 10/28/16. Text Only Entry(kmtlc2 ) (Entered: 10/28/2016) |
| 10/28/2016 | <u>418</u> | | REPLY to Response to <u>404</u> MOTION for Leave to *File a Consolidated Sur−Reply Memorandum of Law in Further Opposition to Plaintiffs' Motions for Conditional Collective Action Certification* <u>325</u> MOTION to Certify Class , <u>330</u> Second MOTION to Certify C filed by Defendant Cultural Care, Inc.. (Hazel, Diane) (Entered: 10/28/2016) |
| 11/01/2016 | <u>419</u> | | NOTICE of Entry of Appearance by John B. Fulfree on behalf of American Institute for Foreign StudyAttorney John B. Fulfree added to party American Institute for Foreign Study(pty:dft) (Fulfree, John) (Entered: 11/01/2016) |
| 11/01/2016 | <u>420</u> | | NOTICE of Entry of Appearance by Joseph B. Cartafalsa on behalf of American Institute for Foreign StudyAttorney Joseph B. Cartafalsa added to party American Institute for Foreign Study(pty:dft) (Cartafalsa, Joseph) (Entered: 11/01/2016) |
| 11/01/2016 | <u>421</u> | | NOTICE of Entry of Appearance by Robert M. Tucker on behalf of American Institute for Foreign StudyAttorney Robert M. Tucker added to party American Institute for Foreign Study(pty:dft) (Tucker, Robert) (Entered: 11/01/2016) |
| 11/01/2016 | <u>422</u> | | NOTICE of Entry of Appearance by Stephen J. Macri on behalf of American Institute for Foreign StudyAttorney Stephen J. Macri added to party American Institute for Foreign Study(pty:dft) (Macri, Stephen) (Entered: 11/01/2016) |
| 11/01/2016 | <u>423</u> | | MOTION for Extension of Time to File Answer or Otherwise Respond re <u>395</u> Amended Complaint,,,, *by Moving Defendants filed* by Defendant InterExchange, Inc.. (Colaizzi, Brooke) (Entered: 11/01/2016) |
| 11/02/2016 | 424 | | MEMORANDUM regarding <u>423</u> MOTION for Extension of Time to File Answer or Otherwise Respond re <u>395</u> Amended Complaint, *by Moving Defendants filed* filed by InterExchange, Inc. Motion referred to Magistrate |

| | | | |
|---|---|---|---|
| | | | Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 11/2/2016. Text Only Entry (vbarn) (Entered: 11/02/2016) |
| 11/02/2016 | 425 | | MINUTE ORDER granting 423 Motion for Extension of Time to Respond to Second Amended Complaint. The Moving Defendants shall file their Answer or otherwise respond to Plaintiffs' Second Amended Complaint no later than 12/2/16. By Magistrate Judge Kathleen M. Tafoya on 11/2/16. Text Only Entry(kmtlc2 ) (Entered: 11/02/2016) |
| 11/03/2016 | 426 | | MINUTE ORDER re: 375 Restricted Document – Level 1, filed by Expert Group International, Inc. The Court notes that this document was filed under restriction, but it was not accompanied by a Motion for Leave to Restrict. D.C.COLO.LCivR 7.2(c) provides that all restricted documents must be filed with a Motion for Leave to Restrict that addresses, among other things, "the interest to be protected and why such interest outweighs the presumption of public access." Additionally, D.C.COLO.LCivR 7.2(e) provides that "If a document is filed as a restricted document without an accompanying motion to restrict, it shall retain a Level 1 restriction for 14 days. If no motion to restrict is filed within such time period, the restriction shall expire and the document shall be open to public inspection." Accordingly, Expert Group International, Inc. is hereby ORDERED to file a Motion for Leave to Restrict the material filed at Doc. 375 forthwith. If this Motion is not filed on or before 11/10/2016, the Court will unrestrict Doc. 375 . By Judge Christine M. Arguello on 11/03/2016. Text Only Entry (athom, ) (Entered: 11/03/2016) |
| 11/03/2016 | 427 | | TRANSCRIPT of Motion Hearing held on October 25, 2016 before Magistrate Judge Tafoya. Pages: 1–106. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 11/03/2016) |
| 11/07/2016 | 428 | | Amended TRANSCRIPT of Amended Motion Hearing held on October 25, 2016 before Magistrate Judge Tafoya. Pages: 1–106. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 11/07/2016) |

| 11/08/2016 | 429 | | STIPULATION of Dismissal of Party *Dayanna Paola Cardenas Caicedo (Without Prejudice)* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 11/08/2016) |
|---|---|---|---|
| 11/09/2016 | 430 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 429 Stipulation of Dismissal of Party, filed by attorney Peter Murray Skinner. The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 11/09/2016) |
| 11/10/2016 | 431 | 111 | MOTION to Compel *Arbitration and Dismiss or Alternatively Stay Lawsuit* by Defendant AuPairCare, Inc.. (Attachments: # 1 Exhibit A–Ex A – McNamara Declaration ISO Motion to Compel Arbitration–pp 1–10, # 2 Exhibit A–Ex A – McNamara Declaration ISO Motion to Compel Arbitration–pp11–17, # 3 Exhibit B–Ex B – Maschler Declaration ISO Motion to Compel Arbitration–pp 1–78, # 4 Exhibit A–Ex B – Maschler Declaration ISO Motion to Compel Arbitration– pp 79–149, # 5 Proposed Order (PDF Only))(Quinn, Thomas) (Entered: 11/10/2016) |
| 11/14/2016 | 432 | | ORDER Adopting and Affirming October 25, 2016 412 Recommendation of United States Magistrate Judge and Entering Stipulated Order of Dismissal re 429 Stipulation of Dismissal of Party. Plaintiff Dayanna Paola Cardenas Caicedo's claims against Defendant Cultural Care are DISMISSED WITHOUT PREJUDICE. By Judge Christine M. Arguello on 11/14/2016.(athom, ) Modified on 11/15/2016 to correct text (athom, ). (Entered: 11/15/2016) |
| 11/15/2016 | 433 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 431 MOTION to Compel *Arbitration and Dismiss or Alternatively Stay Lawsuit* filed by attorney Thomas Baker Quinn. The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 11/15/2016) |
| 12/02/2016 | 434 | | TRANSCRIPT of Telephonic Informal Discovery Conference held on August 19, 2016 before Magistrate Judge Tafoya. Pages: 1–28. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 12/02/2016) |

| 12/02/2016 | 435 | | ANSWER to 395 Amended Complaint,,,, by APF Global Exchange, NFP.(Schaecher, Susan) (Entered: 12/02/2016) |
|---|---|---|---|
| 12/02/2016 | 436 | | ANSWER to 395 Amended Complaint,,,, by Cultural Care, Inc..(Hazel, Diane) (Entered: 12/02/2016) |
| 12/02/2016 | 437 | | ANSWER to 395 Amended Complaint,,,, by InterExchange, Inc..(Colaizzi, Brooke) (Entered: 12/02/2016) |
| 12/02/2016 | 438 | | *Cultural Homestay International's* ANSWER to 395 Amended Complaint,,,, by Cultural Homestay International.(Hartley, James) (Entered: 12/02/2016) |
| 12/02/2016 | 439 | | ANSWER to 395 Amended Complaint,,,, by American Institute for Foreign Study.(Fulfree, John) (Entered: 12/02/2016) |
| 12/02/2016 | 440 | | ANSWER to 395 Amended Complaint,,,, by EuRaupair InterCultural Child Care Programs.(Fitzgerald, Martha) (Entered: 12/02/2016) |
| 12/02/2016 | 441 | | ANSWER to 395 Amended Complaint,,,, by Expert Group International, Inc.(Enica, Bogdan) (Entered: 12/02/2016) |
| 12/02/2016 | 442 | | *Defendant GreatAuPair LLCs* ANSWER to 395 Amended Complaint,,,, by GreatAuPair, LLC.(Estevao, Martin) (Entered: 12/02/2016) |
| 12/02/2016 | 443 | | ANSWER to 395 Amended Complaint,,,, by American Cultural Exchange, LLC.(Reilly, Kathryn) (Entered: 12/02/2016) |
| 12/02/2016 | 444 | | ANSWER to 395 Amended Complaint,,,, by Agent Au Pair.(Reilly, Kathryn) (Entered: 12/02/2016) |
| 12/02/2016 | 445 | | ANSWER to 395 Amended Complaint,,,, by Au Pair International, Inc..(Reilly, Kathryn) (Entered: 12/02/2016) |
| 12/02/2016 | 446 | | ANSWER to 395 Amended Complaint,,,, by USAuPair, INC.(Kelly, William) (Entered: 12/02/2016) |
| 12/02/2016 | 447 | | ANSWER to 395 Amended Complaint,,,, by 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC.(Stone, Lawrence) (Entered: 12/02/2016) |
| 12/05/2016 | 448 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 439 Answer to Amended Complaint filed by attorney Stephen J. Macri; John B. Fulfree.The s/signature did not match the filers name on the account for which the login and password are registered. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 12/05/2016) |
| 12/05/2016 | 449 | | BRIEF in Opposition to 431 MOTION to Compel *Arbitration and Dismiss or Alternatively Stay Lawsuit* filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit 1 – Harning Declaration, # 2 Exhibit 2 – Mejia Declaration, # 3 Exhibit 3 – Hood Declaration (with Exhibits A–G))(Hood, Alexander) (Entered: 12/05/2016) |

| 12/12/2016 | 450 | | Unopposed MOTION to Amend/Correct/Modify 295 Scheduling Order by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Proposed Order (PDF Only))(Skinner, Peter) (Entered: 12/12/2016) |
| --- | --- | --- | --- |
| 12/13/2016 | 451 | | MEMORANDUM regarding 450 Unopposed MOTION to Amend/Correct/Modify 295 Scheduling Order filed by Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo, Nicole Mapledoram, Johana Paola Beltran, Sarah Carolina Azuela Rascon, Laura Mejia Jimenez. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 12/13/2016. Text Only Entry (vbarn) (Entered: 12/13/2016) |
| 12/13/2016 | 452 | | MINUTE ORDER granting in part 450 Motion for Amendment of the Scheduling Order [D.E. 295]. The parties shall exchange affirmative expert witness disclosures regarding class action issues no later than 1/13/17 and exchange rebuttal expert witness disclosures regarding class action issues no later than 2/3/17. Plaintiffs shall file their Motion for Class Certification under Fed. R. Civ. P. 23 no later than 2/24/17, Defendants shall file their Response to the same no later than 3/24/17, and Plaintiffs may file a Reply no later than 4/14/17. By Magistrate Judge Kathleen M. Tafoya on 12/13/16. Text Only Entry (kmtlc2 ) (Entered: 12/13/2016) |
| 12/19/2016 | 453 | | REPLY to Response to 431 MOTION to Compel *Arbitration and Dismiss or Alternatively Stay Lawsuit* filed by Defendant AuPairCare, Inc.. (Quinn, Thomas) (Entered: 12/19/2016) |
| 01/09/2017 | 454 | | MOTION for Protective Order by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 01/09/2017) |
| 01/09/2017 | 455 | | DECLARATION of *Dawn L. Smalls* regarding MOTION for Protective Order 454 by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit Exhibits A–H, # 2 Exhibit Exhibits I–J, # 3 Exhibit Exhibits K–R, # 4 Exhibit Exhibits S–DD)(Skinner, Peter) (Entered: 01/09/2017) |
| 01/09/2017 | 456 | | Exhibit 2 to Docket Entry 454 Motion for Protective Order by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) Modified on 1/10/2017 to correct event text and create linkage (athom, ). (Entered: 01/09/2017) |
| 01/10/2017 | 457 | | MEMORANDUM regarding 454 MOTION for Protective Order filed by Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo, Nicole Mapledoram, Johana Paola Beltran, Sarah Carolina Azuela Rascon, Laura Mejia Jimenez. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. |

| | | | |
|---|---|---|---|
| | | | Arguello on 1/10/2017. Text Only Entry (cmasec) (Entered: 01/10/2017) |
| 01/10/2017 | 458 | | MINUTE ORDER: Defendants shall file Response, which may be consolidated, to 454 MOTION for Protective Order or, in the Alternative, Amendment of the Scheduling Order no later than 1/31/17. Plaintiffs may file a Reply no later than 2/14/17. By Magistrate Judge Kathleen M. Tafoya on 1/10/17. Text Only Entry (kmtlc2 ) (Entered: 01/10/2017) |
| 01/17/2017 | 459 | | MINUTE ORDER: An Informal Telephonic Discovery Conference is set for 1/24/17 at 10:00 AM before Magistrate Judge Kathleen M. Tafoya. Counsel shall initiate a conference call and then call chambers at 303–335–2780 at the scheduled time. The parties are further directed to use a LAND LINE; NO CELLULAR, CORDLESS OR SPEAKER PHONES ARE PERMITTED. By Magistrate Judge Kathleen M. Tafoya on 1/17/17. Text Only Entry (kmtlc2 ) (Entered: 01/17/2017) |
| 01/20/2017 | 460 | | NOTICE of Entry of Appearance by Brian P. Maschler on behalf of AuPairCare, Inc. (Maschler, Brian) (Entered: 01/20/2017) |
| 01/20/2017 | 461 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 460 Notice of Entry of Appearance filed by attorney Brian P. Maschler. The format for the attorneys signature block is not correct. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Civil Cases). Also the document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 01/20/2017) |
| 01/24/2017 | 462 | | COURTROOM MINUTES for Telephonic Informal Discovery Conference held on 1/24/2017 before Magistrate Judge Kathleen M. Tafoya. ORDERED: Plaintiff shall file a motion, as discussed, on or before January 26, 2017. A response to the motion shall be filed on or before February 9, 2017. A reply shall be filed on or before February 16, 2017. A Status Conference is set for March 10, 2017 at 8:30 a.m. in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya. If the parties wish to appear by telephone, they shall file a motion. Defendant US AuPair shall produce responsive documents on or before February 3, 2017. The court has advised counsel that sanctions, including entry of default judgment, could be imposed for failure to comply with this order. FTR: KMT C201. (sgrim) (Entered: 01/24/2017) |
| 01/24/2017 | 463 | | Utility Setting Hearings: Text Only Entry. Status Conference set for 4/13/2017 09:30 AM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya pursuant to 294 . Status Conference set for 3/10/2017 08:30 AM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya pursuant to 462 . (sgrim) (Entered: 01/24/2017) |
| 01/26/2017 | 464 | | MOTION for Leave to Restrict by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 01/26/2017) |
| 01/26/2017 | 465 | | |

| | | | |
|---|---|---|---|
| | | | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Skinner, Peter) (Entered: 01/26/2017) |
| 01/26/2017 | 466 | | MOTION for Leave to Restrict by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 01/26/2017) |
| 01/26/2017 | 467 | | RESTRICTED DOCUMENT – Level 1: Declaration of Dawn L. Smalls in Support 469 Motion to Compel by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB, # 29 Exhibit CC, # 30 Exhibit DD, # 31 Exhibit EE, # 32 Exhibit FF, # 33 Exhibit GG, # 34 Exhibit HH, # 35 Exhibit II, # 36 Exhibit JJ, # 37 Exhibit KK, # 38 Exhibit LL, # 39 Exhibit MM, # 40 Exhibit NN, # 41 Exhibit OO, # 42 Exhibit PP, # 43 Exhibit QQ, # 44 Exhibit RR, # 45 Exhibit SS, # 46 Exhibit TT, # 47 Exhibit UU, # 48 Exhibit VV, # 49 Exhibit WW, # 50 Exhibit XX, # 51 Exhibit YY, # 52 Exhibit ZZ)(Skinner, Peter) Modified on 1/27/2017 to add title of document (athom, ). (Entered: 01/27/2017) |
| 01/26/2017 | 469 | | MOTION to Compel Answer to Plaintiffs' Interrogatory No. 1 and Request for Production No. 1 Pursuant to Rule 37(a) by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Public Entry for Level 1 Restricted Document 465 ). Text Only Entry (athom, ) (Entered: 01/27/2017) |
| 01/27/2017 | 468 | | MOTION to Withdraw as Attorney *CHRISTIAN D. HAMMOND AS COUNSEL FOR DEFENDANTS A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC AND 20/20 CARE EXCHANGE, INC.*, Proposed MOTION for Order to *WITHDRAW – CHRISTIAN D. HAMMOND AS COUNSEL FOR DEFENDANTS A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC AND 20/20 CARE EXCHANGE, INC.* by Defendants 20/20 Care Exchange, Inc. A.P.E.X. American Professional Exchange, LLC (Attachments: # 1 Proposed Order (PDF Only) [PROPOSED] ORDER GRANTING MOTION FOR WITHDRAWAL OF CHRISTIAN D. HAMMOND AS COUNSEL FOR DEFENDANTS A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC AND 20/20 CARE EXCHANGE, INC.)(Hammond, Christian) Modified on 1/30/2017 to correct filers (athom, ). (Entered: 01/27/2017) |
| 01/27/2017 | 470 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 464 MOTION for Leave to Restrict, 466 MOTION for Leave to Restrict filed by attorney Peter Murray Skinner. The |

| | | | |
|---|---|---|---|
| | | | format for the attorneys signature block is not correct. The documents are missing the 's/' for the electronic signature **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 01/27/2017) |
| 01/27/2017 | 471 | | MEMORANDUM regarding 469 MOTION to Compel filed by Nicole Mapledoram, Johana Paola Beltran, Laura Mejia Jimenez, Sarah Carolina Azuela Rascon, Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 1/27/2017. Text Only Entry (cmasec, ) (Entered: 01/27/2017) |
| 01/30/2017 | 472 | | MEMORANDUM regarding 464 MOTION for Leave to Restrict filed by Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo, Nicole Mapledoram, Johana Paola Beltran, Sarah Carolina Azuela Rascon, Laura Mejia Jimenez, 466 MOTION for Leave to Restrict filed by Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo, Nicole Mapledoram, Johana Paola Beltran, Laura Mejia Jimenez, Sarah Carolina Azuela Rascon. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 1/30/2017. Text Only Entry (cmasec) (Entered: 01/30/2017) |
| 01/30/2017 | 473 | | ORDER granting 468 Motion to Withdraw as Attorney. ORDERED that Attorney Christian Hammond is permitted to withdraw as counsel for Defendant A.P.E.X. American Professional Exchange, LLC and 20/20 Care Exchange, Inc. The Court notes that these Defendants continue to be represented by Lawrence Stone and Kathleen Craigmile. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Ms. Hammonds email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 1/30/2017. Text Only Entry (cmasec) (Entered: 01/30/2017) |
| 01/30/2017 | 474 | | NOTICE of Entry of Appearance by Natalie Elizabeth West on behalf of Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc.Attorney Natalie Elizabeth West added to party Agent Au Pair(pty:dft), Attorney Natalie Elizabeth West added to party American Cultural Exchange, LLC(pty:dft), Attorney Natalie Elizabeth West added to party Au Pair International, Inc.(pty:dft) (West, Natalie) (Entered: 01/30/2017) |
| 01/31/2017 | 475 | | MOTION for Leave to Restrict by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (Stone, Lawrence) (Entered: 01/31/2017) |
| 01/31/2017 | 476 | | RESPONSE to 454 MOTION for Protective Order filed by Defendants APF Global Exchange, NFP, Agent Au Pair, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 |

| | | | |
|---|---|---|---|
| | | | Exhibit)(Colaizzi, Brooke) (Entered: 01/31/2017) |
| 01/31/2017 | 477 | | RESTRICTED DOCUMENT – Level 1: Exhibit to 478 Response to 454 Motion for Protective Order by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (Stone, Lawrence) Modified on 2/1/2017 to add title of document (athom, ). (Entered: 01/31/2017) |
| 01/31/2017 | 478 | | RESPONSE to 454 MOTION for Protective Order filed by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 1–A page)(Stone, Lawrence) (Entered: 01/31/2017) |
| 02/01/2017 | 479 | | MEMORANDUM regarding 475 MOTION for Leave to Restrict filed by 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 2/1/2017. Text Only Entry (cmasec) (Entered: 02/01/2017) |
| 02/02/2017 | 480 | | MINUTE ORDER granting 464 Motion to Restrict Access (Level One) to Plaintiffs' Motion to Compel Answer to Plaintiffs' Interrogatory No. 1 and Request for Production No. 1 Pursuant to Rule 37(a). Doc. 465 shall remain restricted at Level 1 access. By Magistrate Judge Kathleen M. Tafoya on 2/2/17. Text Only Entry (kmtlc2 ) (Entered: 02/02/2017) |
| 02/02/2017 | 481 | | MINUTE ORDER granting 466 Motion to Restrict Public Access (Level One) to Declaration of Dawn Smalls' in Support of Plaintiffs' Motion to Compel Answer to Plaintiffs' Interrogatory No. 1 and Request for Production No. 1 Pursuant to Rule 37(a). Doc. 467 shall remain restricted at Level 1 access. By Magistrate Judge Kathleen M. Tafoya on 2/2/17. Text Only Entry (kmtlc2 ) (Entered: 02/02/2017) |
| 02/03/2017 | 482 | | MOTION to Amend/Correct/Modify 295 Scheduling Order *(as amended by Minute Order [D.E. 452])* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Skinner, Peter) (Entered: 02/03/2017) |
| 02/06/2017 | 483 | | MEMORANDUM regarding 482 MOTION to Amend/Correct/Modify 295 Scheduling Order *(as amended by Minute Order [D.E. 452])* filed by Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo, Nicole Mapledoram, Johana Paola Beltran, Sarah Carolina Azuela Rascon, Laura Mejia Jimenez. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 2/6/2017. Text Only Entry (cmasec) (Entered: 02/06/2017) |
| 02/08/2017 | 484 | | TRANSCRIPT of Telephonic Informal Discovery Conference held on January 24, 2017 before Magistrate Judge Tafoya. Pages: 1–71. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased |

| | | | |
|---|---|---|---|
| | | | through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 02/08/2017) |
| 02/08/2017 | 485 | | MINUTE ORDER: No later than 2/14/17, Defendants shall file a Response to 482 MOTION to Amend the Scheduling Order [D.E. 295, 452] and for Expedited Briefing and Consideration of the Requested Relief. The court encourages Defendants to file a consolidated Response. Plaintiffs shall file a Reply to the same no later than 2/21/17. The current deadline to file a motion requesting Rule 23 Class Certification is stayed pending ruling on the 482 Motion to Amend. By Magistrate Judge Kathleen M. Tafoya on 2/8/17. Text Only Entry (kmtlc2 ) (Entered: 02/08/2017) |
| 02/08/2017 | 486 | | MINUTE ORDER granting 475 Motion to Restrict Public Access to Exhibit 1–A to Response to Motion for Protective Order or, in the Alternative, Amendment to the Scheduling Order. Doc. 477 shall remain restricted at Level 1 access. By Magistrate Judge Kathleen M. Tafoya on 2/8/17. Text Only Entry (kmtlc2 ) (Entered: 02/08/2017) |
| 02/09/2017 | 487 | | RESPONSE to 482 MOTION to Amend/Correct/Modify 295 Scheduling Order *(as amended by Minute Order [D.E. 452]) filed by Defendants Cultural Care, Inc. (d/b/a Cultural Care Au Pair), InterExchange, Inc., USAuPair, Inc., GreatAuPair, LLC, Expert Group International, Inc., EurAupair InterCultural Child Care Programs, Cultural Homestay International, Au Pair International, Inc., American Cultural Exchange, LLC (d/b/a/ GoAuPair), Agent Au Pair, APF Global Exchange, NFP (d/b/a/ Aupair Foundation) and American Institute for Foreign Study (d/b/a Au Pair in America) filed by* Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Fuller, Jessica) (Entered: 02/09/2017) |
| 02/09/2017 | 488 | | RESPONSE to 482 MOTION to Amend/Correct/Modify 295 Scheduling Order *(as amended by Minute Order [D.E. 452]) filed by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC.* (Stone, Lawrence) (Entered: 02/09/2017) |
| 02/09/2017 | 489 | | RESPONSE to 469 MOTION to Compel *filed by All Defendants filed by* Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Fuller, Jessica) (Entered: 02/09/2017) |
| 02/13/2017 | 490 | | ORDER denying 327 Moving Defendants Joint Motion to Strike Repudiated Allegations and For Leave to File Reconstituted Motion to Dismiss Antitrust Claim, and Incorporated Memorandum, by Magistrate Judge Kathleen M. Tafoya on 2/13/2017. (jgonz, ) (Entered: 02/13/2017) |
| 02/14/2017 | 491 | | REPLY to Response to 454 MOTION for Protective Order filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 02/14/2017) |
| 02/16/2017 | 492 | | REPLY to Response to 469 MOTION to Compel *Plaintiffs' Interrogatory No. 1 and Request for Production No. 1 Pursuant to Rule 37(a) filed by* Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 02/16/2017) |

| 02/16/2017 | 493 | | ORDER granting in part 482 Plaintiffs Motion to Amend the Scheduling Order [D.E. 295, 452] and for Expedited Briefing and Consideration of the Requested Relief. Rule 23 Certification Motions: Opening Brief 4/25/2017; Response Briefs 5/23/2017; Reply Brief 7/13/2017; Fact Discovery Cut–off Date is 7/17/2017; Expert Discovery Cut Off Date is 10/16/2017; Affirmative Expert Disclosure 7/17/2017; Rebuttal Expert Disclosure 8/16/2017; Dispositive Motion Deadline 10/16/2017, by Magistrate Judge Kathleen M. Tafoya on 2/16/2017. (jgonz, ) (Entered: 02/17/2017) |
| --- | --- | --- | --- |
| 02/17/2017 | 494 | | MINUTE ORDER Setting Hearing on Motion: Motion Hearing set for 3/10/17 at 8:30 AM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya regarding 469 MOTION to Compel. By Magistrate Judge Kathleen M. Tafoya on 2/17/17. Text Only Entry (kmtlc2 ) (Entered: 02/17/2017) |
| 02/27/2017 | 495 | | OBJECTION/Appeal of Magistrate Judge Decision to District Court re 490 Order on Motion to Strike by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit A to Rule 72(a) Objections, # 2 Exhibit B to Rule 72(a) Objections, # 3 Exhibit C to Rule 72(a) Objections, # 4 Exhibit D to Rule 72(a) Objections)(Fuller, Jessica) (Entered: 02/27/2017) |
| 02/27/2017 | 496 | | MOTION for Hearing/Conference re 495 OBJECTION/Appeal of Magistrate Judge Decision to District Court re 490 Order on Motion to Strike by Defendant Cultural Care, Inc.. by Defendant Cultural Care, Inc.. (Lyons, James) (Entered: 02/27/2017) |
| 03/02/2017 | 497 | | MINUTE ORDER: An Informal Telephonic Discovery Conference will be held on 3/9/17 at 3:30 PM before Magistrate Judge Kathleen M. Tafoya. The parties shall initiate a conference call and then call chambers at 303–335–2780 at the scheduled time. By Magistrate Judge Kathleen M. Tafoya on 3/2/17. Text Only Entry (kmtlc2 ) (Entered: 03/02/2017) |
| 03/08/2017 | 498 | | MOTION for Leave to *Appear at Status Conference by Telephone* by Defendant Expert Group International, Inc. (Enica, Bogdan) (Entered: 03/08/2017) |
| 03/08/2017 | 499 | | MEMORANDUM regarding 498 MOTION for Leave to *Appear at Status Conference by Telephone* filed by Expert Group International, Inc. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 3/8/2017. Text Only Entry (cmasec) (Entered: 03/08/2017) |
| 03/08/2017 | 500 | | MINUTE ORDER granting 498 Motion to Appear at Status Conference by Phone. Counsel for Expert Group International, Inc. d/b/a Expert AuPair shall call chambers at 303–335–2780 at the scheduled time. By Magistrate Judge Kathleen M. Tafoya on 3/8/17. Text Only Entry (kmtlc2 ) (Entered: 03/08/2017) |
| 03/08/2017 | 501 | | MOTION for Leave to *Appear at Status Conference by Telephone* by Defendant USAuPair, INC. (Kelly, William) (Entered: 03/08/2017) |
| 03/08/2017 | 502 | | MEMORANDUM regarding 501 MOTION for Leave to *Appear at Status Conference by Telephone* filed by USAuPair, INC. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 3/8/2017. Text Only Entry (cmasec) (Entered: 03/08/2017) |
| 03/08/2017 | 503 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Entry of Appearance by Joshua James Libling on behalf of Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole MapledoramAttorney Joshua James Libling added to party Sarah Carolina Azuela Rascon(pty:pla), Attorney Joshua James Libling added to party Johana Paola Beltran(pty:pla), Attorney Joshua James Libling added to party Beaudette Deetlefs(pty:pla), Attorney Joshua James Libling added to party Alexandra Ivette Gonzalez(pty:pla), Attorney Joshua James Libling added to party Juliane Harning(pty:pla), Attorney Joshua James Libling added to party Lusapho Hlatshaneni(pty:pla), Attorney Joshua James Libling added to party Laura Mejia Jimenez(pty:pla), Attorney Joshua James Libling added to party Nicole Mapledoram(pty:pla) (Libling, Joshua) (Entered: 03/08/2017) |
| 03/08/2017 | 504 | | MINUTE ORDER granting 501 Motion for Leave to Appear at Status Conference by Telephone. All counsel appearing by telephone for the hearing set for 3/10/17 shall initiate a conference call and then call chambers at 303–335–2780 at the scheduled time. Counsel are further directed to use a LAND LINE; NO CELLULAR, CORDLESS OR SPEAKER PHONES ARE PERMITTED. By Magistrate Judge Kathleen M. Tafoya on 3/8/17. Text Only Entry (kmtlc2 ) (Entered: 03/08/2017) |
| 03/09/2017 | 505 | | COURTROOM MINUTES for Telephonic Informal Discovery Conference held on 3/9/2017 before Magistrate Judge Kathleen M. Tafoya. ORDERED: Plaintiff shall file a motion to compel, as discussed, on or before March 13, 2017. A response t o the motion shall be filed on or before March 27, 2017. A reply shall be filed on or before April 3, 2017. FTR: KMT C201. (sgrim) (Entered: 03/09/2017) |
| 03/10/2017 | 506 | | COURTROOM MINUTES for Motion Hearing held on 3/10/2017 before Magistrate Judge Kathleen M. Tafoya. ORDERED: Motion to Compel Answer to Plaintiffs' Interrogatory No. 1 and Request for Production No. 1 Pursuant to Rule 37(a) 469 is GRANTED IN PART AND DENIED IN PART. The motion is granted as to the production of contact information with respect to the host families, including the names of the sponsored aupairs, as discussed. The motion is denied in all other respects. The parties shall determine the provisions and terms of the protection encompassing the lists of host families and their contact information, as discussed, on or before March 20, 2017. Defendants shall produce the host families information to Plaintiffs on or before March 31, 2017. The deadline for Plaintiffs to file a motion for class certification is extended to May 19, 2017. Defendants' responses to the motion shall be filed on or before June 19, 2017. A reply shall be filed on or before July 19, 2017. The fact discovery deadline is extended to September 22, 2017. The dispositive motions deadline will remain as previously set. Plaintiffs' Motion for Protective Order Or, in the Alternative, Amendment of the Scheduling Order 454 is DENIED WITHOUT PREJUDICE AS MOOT, as stated on record. The Status Conference set for April 13, 2017 is VACATED. FTR: KMT C201. (sgrim) (Entered: 03/10/2017) |
| 03/13/2017 | 507 | | MOTION to Compel *Response to Document Request No. 16* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 03/13/2017) |

| 03/14/2017 | 508 | | TRANSCRIPT of Motion Hearing held on March 10, 2017 before Magistrate Judge Tafoya. Pages: 1–91. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 03/14/2017) |
| 03/20/2017 | 509 | | RESPONSE to 495 Objection/Appeal of Magistrate Judge Decision filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Libling, Joshua) (Entered: 03/20/2017) |
| 03/21/2017 | 510 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 509 Response to Objection/Appeal of Magistrate Judge Decision, filed by attorney Peter Murray Skinner; Joshua James Libling. The s/signature did not match the filers name on the account for which the login and password are registered. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (athom, ) (Entered: 03/21/2017) |
| 03/27/2017 | 511 | | RESPONSE to 507 MOTION to Compel *Response to Document Request No. 16* filed by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit A – Wolosz Declaration with exhibits)(Fuller, Jessica) Modified on 3/29/2017 to RESTRICT attachment 1 pursuant to chambers(jgonz, ). (Entered: 03/27/2017) |
| 03/27/2017 | 512 | | MOTION for Leave to Restrict by Defendant AuPairCare, Inc.. (Kozal, Peggy) (Entered: 03/27/2017) |
| 03/27/2017 | 513 | | RESTRICTED DOCUMENT – Level 1: by Defendant AuPairCare, Inc... (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Kozal, Peggy) (Entered: 03/27/2017) |
| 03/27/2017 | 514 | | MOTION for Hearing/Conference re 507 MOTION to Compel *Response to Document Request No. 16* by Defendant AuPairCare, Inc.. (Quinn, Thomas) (Entered: 03/27/2017) |
| 03/27/2017 | 515 | | RESPONSE to 507 MOTION to Compel Response to Document Request No. 16 filed by Defendant American Institute for Foreign Study. (Attachments: # 1 Declaration of Stephen J. Macri, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Envelope 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Affidavit of James Mahoney)(Macri, Stephen) (Modified on 3/28/2017 edited duplicate text)(evana, ). (Entered: 03/27/2017) |
| 03/27/2017 | 516 | | CERTIFICATE of Mailing/Service re 515 Response to Motion, by Defendant American Institute for Foreign Study. (Macri, Stephen) (Entered: 03/27/2017) |

| 03/27/2017 | 517 | | RESPONSE to 507 MOTION to Compel *Response to Document Request No. 16* Attorney Grace Anne Fox added to party GoAuPair Operations, LLC(pty:dft) filed by Defendants Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc., GoAuPair Operations, LLC. (Fox, Grace) (Entered: 03/27/2017) |
|---|---|---|---|
| 03/27/2017 | 518 | | Opposition to 507 MOTION to Compel *Response to Document Request No. 16* filed by Defendant AuPairCare, Inc. (Public Entry for Level 1 Restricted Document 513 ). Text Only Entry (athom, ) (Entered: 03/28/2017) |
| 03/29/2017 | 519 | | MEMORANDUM regarding 512 MOTION for Leave to Restrict filed by AuPairCare, Inc., 514 MOTION for Hearing/Conference re 507 MOTION to Compel *Response to Document Request No. 16* filed by AuPairCare, Inc. Motions referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 3/29/2017. Text Only Entry (cmasec) (Entered: 03/29/2017) |
| 03/29/2017 | 520 | | Joint MOTION for Protective Order *Entry of First Addendum to Stipulated Protective Order (ECF No. 305)* by Defendant AuPairCare, Inc.. (Attachments: # 1 Proposed Order (PDF Only))(Kozal, Peggy) (Entered: 03/29/2017) |
| 03/29/2017 | 521 | | MEMORANDUM regarding 520 Joint MOTION for Protective Order *Entry of First Addendum to Stipulated Protective Order (ECF No. 305)* filed by AuPairCare, Inc. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 3/29/2017. Text Only Entry (cmasec) (Entered: 03/29/2017) |
| 03/29/2017 | 522 | | MINUTE ORDER granting 520 Motion for Entry of First Addendum to Stipulated Protective Order (ECF No. 305). The proposed First Addendum to Stipulated Protective Order (ECF No. 305) shall be entered. By Magistrate Judge Kathleen M. Tafoya on 3/29/17. Text Only Entry (kmtlc2 ) (Entered: 03/29/2017) |
| 03/30/2017 | 523 | | First Addendum to Stipulated Protective Order (ECF No. 305 ) by Magistrate Judge Kathleen M. Tafoya on 3/30/2017. (jgonz, ) (Entered: 03/30/2017) |
| 03/30/2017 | 524 | | MEMORANDUM regarding 507 MOTION to Compel *Response to Document Request No. 16* filed by Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez, Dayanna Paola Cardenas Caicedo, Nicole Mapledoram, Johana Paola Beltran, Sarah Carolina Azuela Rascon, Laura Mejia Jimenez. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 3/30/2017. Text Only Entry (cmasec) (Entered: 03/30/2017) |
| 03/31/2017 | 525 | | ORDER. Plaintiffs' Motion for Conditional Collective Action Certification (Doc. # 325 ) and Plaintiffs' Second Motion for Conditional Collective Action Certification (Doc. # 330 ) are GRANTED. By Judge Christine M. Arguello on 03/31/2017. (athom, ) (Entered: 03/31/2017) |
| 03/31/2017 | 526 | | NOTICE to Parties by Magistrate Judge Kathleen M. Tafoya on 3/31/2017 (jgonz, ) (Entered: 03/31/2017) |
| 04/03/2017 | 527 | | MINUTE ORDER granting 512 Motion to Restrict Public Access (Level One) to Defendant's Response to Plaintiffs' Motion to Compel Response to Document Request No. 16 [ECF No. 507]. Doc. No. 513 shall remain |

| | | | restricted at Level 1 access. By Magistrate Judge Kathleen M. Tafoya on 4/3/17. Text Only Entry (kmtlc2 ) (Entered: 04/03/2017) |
|---|---|---|---|
| 04/03/2017 | 528 | | REPLY to Response to 507 MOTION to Compel *Response to Document Request No. 16*, 514 MOTION for Hearing/Conference re 507 MOTION to Compel *Response to Document Request No. 16* filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 04/03/2017) |
| 04/05/2017 | 529 | | NOTICE of Entry of Appearance by Eric Jonathan Stock on behalf of American Institute for Foreign StudyAttorney Eric Jonathan Stock added to party American Institute for Foreign Study(pty:dft) (Stock, Eric) (Entered: 04/05/2017) |
| 04/05/2017 | 530 | | NOTICE of Entry of Appearance by Alyssa Lauren Levy on behalf of InterExchange, Inc.Attorney Alyssa Lauren Levy added to party InterExchange, Inc.(pty:dft) (Levy, Alyssa) (Entered: 04/05/2017) |
| 04/05/2017 | 531 | | NOTICE of Entry of Appearance by Nathan Andrew Huey on behalf of AuPairCare, Inc.Attorney Nathan Andrew Huey added to party AuPairCare, Inc.(pty:dft) (Huey, Nathan) (Entered: 04/05/2017) |
| 04/07/2017 | 532 | | TRANSCRIPT of Telephonic Informal Discovery Conference held on March 9, 2017 before Magistrate Judge Tafoya. Pages: 1–23. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 04/07/2017) |
| 04/10/2017 | 533 | | MOTION "LETTER" for Reconsideration re: 465 Restricted Document – Level 1, *Request to Renew Motion to Compel* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Libling, Joshua) Modified on 4/11/2017 to correct event type (cmasec). (Entered: 04/10/2017) |
| 04/11/2017 | 534 | | MEMORANDUM regarding 533 MOTION for Reconsideration filed by Nicole Mapledoram, Johana Paola Beltran, Laura Mejia Jimenez, Sarah Carolina Azuela Rascon, Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 4/11/2017. Text Only Entry (cmasec) (Entered: 04/11/2017) |
| 04/11/2017 | 535 | | MINUTE ORDER striking 533 Letter from counsel. The filing party may refile the request in the form of a proper motion, including supporting argument and legal authority, rather than in the form of personal |

| | | | correspondence to the court. Additionally, pursuant to D.C.COLOLCivR 77.2, parties are prohibited from communicating directly about the proceeding in any manner with a judicial officer assigned to the proceeding. By Magistrate Judge Kathleen M. Tafoya on 4/11/17. Text Only Entry (kmtlc2) (Entered: 04/11/2017) |
|---|---|---|---|
| 04/18/2017 | 536 | | MINUTE ORDER: A Status Conference is set for 5/11/17 at 9:00 AM (MST) in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya regarding 465 Motion to Compel, limited to addressing Plaintiff's request for au pair contact information and related matters. Counsel choosing to appear by telephone shall initiate a conference call and then call chambers at 303−335−2780 at the scheduled time. Counsel are further directed to use a LAND LINE; NO CELLULAR, CORDLESS OR SPEAKER PHONES ARE PERMITTED. By Magistrate Judge Kathleen M. Tafoya on 4/18/17. Text Only Entry (kmtlc2 ) (Entered: 04/18/2017) |
| 04/26/2017 | 537 | | MINUTE ORDER: An Informal Discovery Conference is set for 5/11/2017 at 9:00 AM before Magistrate Judge Kathleen M. Tafoya. Counsel for Plaintiff, Defendant AuPairCare, Inc., and Defendant American Institute for Foreign Study will remain in the courtroom and/or on the conference call following the Status Conference previously set in this case. By Magistrate Judge Kathleen M. Tafoya on 4/26/17. Text Only Entry (kmtlc2 ) (Entered: 04/26/2017) |
| 04/26/2017 | 538 | | MINUTE ORDER: An Informal Discovery Conference is set for 5/10/17 at 10:30 AM before Magistrate Judge Kathleen M. Tafoya. Counsel for Plaintiff and Defendant Cultural Care, Inc. shall initiate a conference call and then call chambers at 303−335−2780 at the scheduled time. Counsel are further directed to use a LAND LINE; NO CELLULAR, CORDLESS OR SPEAKER PHONES ARE PERMITTED. By Magistrate Judge Kathleen M. Tafoya on 4/26/17. Text Only Entry (kmtlc2 ) (Entered: 04/26/2017) |
| 04/28/2017 | 539 | | AMENDED ORDER re: 525 Order. By Judge Christine M. Arguello on 04/28/2017. (athom, ) (Entered: 04/28/2017) |
| 05/01/2017 | 540 | | MINUTE ORDER: Based on Judge Arguellos' 539 Order clarifying the dates for au pair information to be produced, the Status Conference set for May 11, 2017, is vacated. **The Telephonic Informal Discovery Conferences are reset as follows: At 9:00 AM on May 11, 2017, Counsel for Plaintiff and Defendant Cultural Care, Inc. shall initiate a conference call and then call chambers, 303−335−2780. Defendants AuPairCare, Inc., American Institute for Foreign Study shall be available beginning at 10:00 AM. Immediately following the informal discovery conference involving Plaintiff and Defendant Cultural Care, Inc., Plaintiff will initiate another conference call with Defendants Defendants AuPairCare, Inc., American Institute for Foreign Study.** Counsel are directed to use a LAND LINE; NO CELLULAR, CORDLESS OR SPEAKER PHONES ARE PERMITTED. By Magistrate Judge Kathleen M. Tafoya on 5/1/17. (kmtlc1 ) (Entered: 05/01/2017) |
| 05/04/2017 | 541 | | MINUTE ORDER: A Telephonic Status Conference is set for 5/11/17 at 9:00 AM before Magistrate Judge Kathleen M. Tafoya regarding 465 Motion to Compel, limited to addressing Plaintiff's request for au pair contact information from non−FLSA Defendants. Counsel shall initiate a conference call and then contact chambers at 303−335−2780. Following the Status |

| | | | |
|---|---|---|---|
| | | | Conference, the previously scheduled Discovery Conferences will proceed in the manner described in 540 Minute Order. By Magistrate Judge Kathleen M. Tafoya on 5/4/17. Text Only Entry (kmtlc2 ) (Entered: 05/04/2017) |
| 05/10/2017 | 542 | | Unopposed MOTION to Amend/Correct/Modify 539 Order by Defendant Cultural Care, Inc.. (Fuller, Jessica) (Entered: 05/10/2017) |
| 05/10/2017 | 543 | | NOTICE of Entry of Appearance by Kevin Patrick O'Keefe on behalf of Cultural Care, Inc.Attorney Kevin Patrick O'Keefe added to party Cultural Care, Inc.(pty:dft) (O'Keefe, Kevin) (Entered: 05/10/2017) |
| 05/10/2017 | 544 | | NOTICE of Entry of Appearance by Jennifer Wirkus Vedra on behalf of AuPairCare, Inc.Attorney Jennifer Wirkus Vedra added to party AuPairCare, Inc.(pty:dft) (Vedra, Jennifer) (Entered: 05/10/2017) |
| 05/11/2017 | 556 | | MINUTE ENTRY for Telephonic Discovery Conference and Status Conference held before Magistrate Judge Kathleen M. Tafoya on 5/11/2017. FTR: KMT Courtroom C201. (lgale, ) (Entered: 05/22/2017) |
| 05/12/2017 | 545 | | NOTICE of Entry of Appearance by Sean Phillips Rodriguez on behalf of All Plaintiffs Attorney Sean Phillips Rodriguez added to party Sarah Carolina Azuela Rascon(pty:pla), Attorney Sean Phillips Rodriguez added to party Johana Paola Beltran(pty:pla), Attorney Sean Phillips Rodriguez added to party Beaudette Deetlefs(pty:pla), Attorney Sean Phillips Rodriguez added to party Alexandra Ivette Gonzalez(pty:pla), Attorney Sean Phillips Rodriguez added to party Juliane Harning(pty:pla), Attorney Sean Phillips Rodriguez added to party Lusapho Hlatshaneni(pty:pla), Attorney Sean Phillips Rodriguez added to party Laura Mejia Jimenez(pty:pla), Attorney Sean Phillips Rodriguez added to party Nicole Mapledoram(pty:pla) (Rodriguez, Sean) (Entered: 05/12/2017) |
| 05/12/2017 | 546 | | NOTICE of Entry of Appearance by Daniel R. Schwartz on behalf of All Plaintiffs Attorney Daniel R. Schwartz added to party Sarah Carolina Azuela Rascon(pty:pla), Attorney Daniel R. Schwartz added to party Johana Paola Beltran(pty:pla), Attorney Daniel R. Schwartz added to party Beaudette Deetlefs(pty:pla), Attorney Daniel R. Schwartz added to party Alexandra Ivette Gonzalez(pty:pla), Attorney Daniel R. Schwartz added to party Juliane Harning(pty:pla), Attorney Daniel R. Schwartz added to party Lusapho Hlatshaneni(pty:pla), Attorney Daniel R. Schwartz added to party Laura Mejia Jimenez(pty:pla), Attorney Daniel R. Schwartz added to party Nicole Mapledoram(pty:pla) (Schwartz, Daniel) (Entered: 05/12/2017) |
| 05/12/2017 | 547 | | NOTICE of Entry of Appearance by Juan Pablo Valdivieso on behalf of All Plaintiffs Attorney Juan Pablo Valdivieso added to party Sarah Carolina Azuela Rascon(pty:pla), Attorney Juan Pablo Valdivieso added to party Johana Paola Beltran(pty:pla), Attorney Juan Pablo Valdivieso added to party Beaudette Deetlefs(pty:pla), Attorney Juan Pablo Valdivieso added to party Alexandra Ivette Gonzalez(pty:pla), Attorney Juan Pablo Valdivieso added to party Juliane Harning(pty:pla), Attorney Juan Pablo Valdivieso added to party Lusapho Hlatshaneni(pty:pla), Attorney Juan Pablo Valdivieso added to party Laura Mejia Jimenez(pty:pla), Attorney Juan Pablo Valdivieso added to party Nicole Mapledoram(pty:pla) (Valdivieso, Juan) (Entered: 05/12/2017) |
| 05/12/2017 | 548 | | NOTICE of Entry of Appearance by Heather K. Kelly on behalf of AuPairCare, Inc.Attorney Heather K. Kelly added to party AuPairCare, |

| | | | |
|---|---|---|---|
| | | | Inc.(pty:dft) (Kelly, Heather) (Entered: 05/12/2017) |
| 05/12/2017 | 549 | | MOTION to Withdraw as Attorney *of Brian P. Maschler as Co−Counsel* by Defendant AuPairCare, Inc.. (Maschler, Brian) (Entered: 05/12/2017) |
| 05/12/2017 | 550 | | MOTION to Withdraw as Attorney by Defendant AuPairCare, Inc.. (Attachments: # 1 Proposed Order (PDF Only))(Mann, John) (Entered: 05/12/2017) |
| 05/15/2017 | 551 | | ORDER granting 549 and 550 Motions to Withdraw as Attorney. Attorneys Brian P. Maschler and John R.Mann are permitted to withdraw as counsel for Defendant AuPairCare, Inc. The Court notes that Defendant AuPairCare, Inc. continues to be represented by Thomas Quinn, Peggy Kozal, Heather Kelly, Jennifer Vedra, and Nathan Huey. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Messrs.. Maschler and Mann's email addresses from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 5/15/2017. Text Only Entry (cmasec) (Entered: 05/15/2017) |
| 05/15/2017 | 552 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 549 MOTION to Withdraw as Attorney *of Brian P. Maschler as Co−Counsel* filed by attorney Brian P. Maschler. The format for the attorneys signature block is not correct. **DO NOT REFILE THE DOCUMENT. Action to take −** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 05/15/2017) |
| 05/16/2017 | 553 | | Stipulated MOTION for Extension of Time to *File Class Certification Motion, and for Order re Page Limitations re Same* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Proposed Order (PDF Only))(Rodriguez, Sean) (Entered: 05/16/2017) |
| 05/19/2017 | 554 | | ORDER. The parties have filed "All Parties' Stipulated Motion Concerning Scheduling and Class Certification Page Limits" [Doc. 553]. This motion has not been referred to this court for ruling and is therefore beyond this court's jurisdiction. The parties have expressed concern given that the original date by which Rule 23 Class Certification briefs were to be filed is today, May 19, 2017. Therefore, in order to assure fair and orderly process concerning this fully stipulated motion, this court will stay the current deadline for the filing of Plaintiffs' Rule 23 Class Certification briefs, pending further Order of the District Court. Entered by Magistrate Judge Kathleen M. Tafoya on 05/19/17. Text Only Entry (kmt, ) (Entered: 05/19/2017) |
| 05/19/2017 | 555 | | ORDER Granting All Parties' 553 Stipulated Motion Concerning Scheduling and Class Certification Page Limits as indicated in the attached Order. Discovery due by 10/6/2017. Dispositive Motions due by 10/30/2017. By Judge Christine M. Arguello on 05/19/2017. (athom, ) (Entered: 05/19/2017) |
| 05/25/2017 | 557 | | TRANSCRIPT of Telephonic Informal Discovery/Status Conference held on May 11, 2017 before Magistrate Judge Tafoya. Pages: 1−87. **NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from** |

| | | | |
|---|---|---|---|
| | | | **the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 05/25/2017) |
| 06/02/2017 | 558 | | RESTRICTED DOCUMENT – Level 1: Declaration of Sean P. Rodriguez and Exhibits in Support of 562 Motion for Rule 23 Class Certification and Appointment of Class Counsel by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit, # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit, # 54 Exhibit, # 55 Exhibit, # 56 Exhibit, # 57 Exhibit, # 58 Exhibit, # 59 Exhibit, # 60 Exhibit, # 61 Exhibit, # 62 Exhibit, # 63 Exhibit, # 64 Exhibit, # 65 Exhibit, # 66 Exhibit, # 67 Exhibit, # 68 Exhibit, # 69 Exhibit, # 70 Exhibit, # 71 Exhibit, # 72 Exhibit, # 73 Exhibit, # 74 Exhibit, # 75 Exhibit, # 76 Exhibit, # 77 Exhibit, # 78 Exhibit, # 79 Exhibit, # 80 Exhibit, # 81 Exhibit, # 82 Exhibit, # 83 Exhibit, # 84 Exhibit, # 85 Exhibit, # 86 Exhibit, # 87 Exhibit, # 88 Exhibit, # 89 Exhibit, # 90 Exhibit, # 91 Exhibit, # 92 Exhibit, # 93 Exhibit, # 94 Exhibit, # 95 Exhibit, # 96 Exhibit, # 97 Exhibit, # 98 Exhibit, # 99 Exhibit)(Rodriguez, Sean) Modified on 6/5/2017 to correct filers (athom, ). Modified on 6/5/2017 to add title of document (athom, ). (Entered: 06/03/2017) |
| 06/03/2017 | 559 | | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Attachments: # 1 Appendix Appendix A, # 2 Appendix Appendix B, # 3 Proposed Order (PDF Only) Proposed Order)(Schwartz, Matthew) Modified on 6/5/2017 to correct filers (athom, ). (Entered: 06/03/2017) |
| 06/03/2017 | 560 | | RESTRICTED DOCUMENT – Level 1: CONTINUATION of 558 Exhibits that are in Support of 562 Motion for Rule 23 Class Certification and Appointment of Class Counsel by Plaintiffs Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # |

| | | |
|---|---|---|
| | | 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit, # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit, # 54 Exhibit, # 55 Exhibit, # 56 Exhibit, # 57 Exhibit, # 58 Exhibit, # 59 Exhibit, # 60 Exhibit, # 61 Exhibit, # 62 Exhibit, # 63 Exhibit, # 64 Exhibit, # 65 Exhibit, # 66 Exhibit, # 67 Exhibit, # 68 Exhibit, # 69 Exhibit, # 70 Exhibit, # 71 Exhibit, # 72 Exhibit, # 73 Exhibit, # 74 Exhibit, # 75 Exhibit, # 76 Exhibit, # 77 Exhibit, # 78 Exhibit, # 79 Exhibit, # 80 Exhibit, # 81 Exhibit, # 82 Exhibit)(Rodriguez, Sean) Modified on 6/5/2017 to add title of document (athom, ). (Entered: 06/03/2017) |
| 06/03/2017 | 561 | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Attachments: # 1 Affidavit, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9)(Libling, Joshua) (Entered: 06/03/2017) |
| 06/03/2017 | 562 | MOTION for Rule 23 Class Certification and Appointment of Class Counsel by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Public Entry for Level 1 Restricted Document 559 ). Text Only Entry (athom, ) (Entered: 06/05/2017) |
| 06/03/2017 | 564 | MOTION to Amend and Incorporated Memorandum of Law by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Public Entry for Level 1 Restricted Document 561 ). Text Only Entry (athom, ) (Entered: 06/05/2017) |
| 06/05/2017 | 563 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 558 Restricted Document – Level 1, 560 Restricted Document – Level 1, filed by attorney Sean Phillips Rodriguez. The format for the attorneys signature block is not correct. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 06/05/2017) |
| 06/05/2017 | 565 | RESTRICTED DOCUMENT – Level 1: Notice of Errata for 562 MOTION for Rule 23 Class Certification and Appointment of Class Counsel by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Redline (Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel & Corrected Motion), # 2 Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel (Corrected), # 3 Appendix A to Motion, # 4 Appendix B to Motion, # 5 Proposed Order (PDF Only), # 6 Exhibit 153 to Rodriguez Declaration (Amended))(Schwartz, Matthew) Modified on 6/6/2017 to add title of document (athom, ). (Entered: 06/05/2017) |
| 06/07/2017 | 566 | |

| | | |
|---|---|---|
| | | NOTICE of Entry of Appearance by Vance Orlando Knapp on behalf of GreatAuPair, LLCAttorney Vance Orlando Knapp added to party GreatAuPair, LLC(pty:dft) (Knapp, Vance) (Entered: 06/07/2017) |
| 06/09/2017 | 567 | ORDER. Defendant Cultural Care, Inc.'s Rule 72(a) Objections to Order on Defendants' Motion to Strike (Doc. # 495 ) are OVERRULED and the Motion for Oral Argument Regarding Its Rule 72(a) Objections to Order on Defendants' Motion to Strike (Doc. # 496 ) is DENIED AS MOOT. By Judge Christine M. Arguello on 06/09/2017. (athom, ) (Entered: 06/09/2017) |
| 06/09/2017 | 568 | ORDER Granting 542 Stipulated Motion to Correct Clerical Error. The Court will issue an amended order reflecting the dismissal of Plaintiff Cardenas Caicedo. By Judge Christine M. Arguello on 06/09/2017. (athom, ) (Entered: 06/09/2017) |
| 06/09/2017 | 569 | SECOND AMENDED ORDER re: 525 Order. By Judge Christine M. Arguello on 06/09/2017. (athom, ) (Entered: 06/09/2017) |
| 06/12/2017 | 570 | MOTION to Withdraw as Attorney *Daniel R. Schwartz* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Schwartz, Daniel) (Entered: 06/12/2017) |
| 06/13/2017 | 571 | ORDER granting 570 Motion to Withdraw as Attorney. Attorney Daniel Schwartz is permitted to withdraw as counsel for Plaintiffs. The Court notes that Plaintiffs continue to be represented by Matthew L. Schwartz, Peter M. Skinner, Sean P. Rodriguez, Randall W. Jackson, Dawn L. Smalls, Joshua J. Libling, Juan P. Valdivieso, Sigrid S. McCawley, Lauren F. Louis, Peter Skinner, Sabria McElroy, and Alexander N. Hood. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Schwartz' email address from future ECF filings and electronic notifications in this case. SO ORDERED BY Judge Christine M. Arguello on 6/13/2017. Text Only Entry (cmasec) (Entered: 06/13/2017) |
| 06/16/2017 | 572 | Unopposed MOTION for Leave to Restrict by Defendant InterExchange, Inc.. (Attachments: # 1 Exhibit)(Colaizzi, Brooke) (Entered: 06/16/2017) |
| 06/16/2017 | 573 | MOTION for Leave to Restrict *Unopposed Motion for Restricted Access (Level One) to Confidential Exhibits to Declaration of Sean Rodriguez* by Defendant AuPairCare, Inc. (Attachments: # 1 Exhibit A–Unopposed Motion for Restricted Access (Level One) to Confidential Exhibits to Declaration of Sean Rodriguez, # 2 Exhibit B–Unopposed Motion for Restricted Access (Level One) to Confidential Exhibits to Declaration of Sean Rodriguez, # 3 Proposed Order (PDF Only))(Kelly, Heather) Modified on 6/16/2017 to correct event (athom, ). Modified on 8/22/2017 to add a Level 1 Restriction to all exhibits pending filing of Motion for Leave to Restrict (athom, ). (Entered: 06/16/2017) |
| 06/16/2017 | 574 | Unopposed MOTION for Leave to Restrict by Defendant Cultural Homestay International. (Attachments: # 1 Proposed Order (PDF Only), # 2 Exhibit 37, # 3 Exhibit 66, # 4 Exhibit 69, # 5 Exhibit 70)(Hartley, James) (Entered: 06/16/2017) |
| 06/16/2017 | 575 | Unopposed MOTION for Leave to Restrict by Defendant Au Pair International, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Reilly, |

| | | | |
|---|---|---|---|
| | | | Kathryn) (Entered: 06/16/2017) |
| 06/16/2017 | 576 | | Unopposed MOTION for Leave to Restrict by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC. (Attachments: # 1 Exhibit A)(Reilly, Kathryn) (Entered: 06/16/2017) |
| 06/16/2017 | 577 | | Unopposed MOTION for Leave to Restrict by Defendant American Institute for Foreign Study. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Fulfree, John) (Entered: 06/16/2017) |
| 06/16/2017 | 578 | | Unopposed MOTION for Leave to Restrict by Defendant APF Global Exchange, NFP. (Attachments: # 1 Exhibit A)(Schaecher, Susan) (Entered: 06/16/2017) |
| 06/16/2017 | 579 | | Unopposed MOTION for Leave to Restrict by Defendant Cultural Care, Inc.. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order, # 2 Exhibit A to Unopposed Motion to Restrict Motion for Rule 23 Class Certification, # 3 Exhibit B to Unopposed Motion to Restrict Motion for Rule 23 Class Certification, # 4 Exhibit C to Unopposed Motion to Restrict Motion for Rule 23 Class Certification)(Fuller, Jessica) (Entered: 06/16/2017) |
| 06/16/2017 | 580 | | Unopposed MOTION for Leave to Restrict by Defendant Cultural Care, Inc.. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order, # 2 Exhibit A to Motion to Restrict Motion to Amend, # 3 Exhibit B to Motion to Restrict Motion to Amend, # 4 Exhibit C to Motion to Restrict Motion to Amend, # 5 Exhibit D to Motion to Restrict Motion to Amend, # 6 Exhibit E to Motion to Restrict Motion to Amend, # 7 Exhibit F to Motion to Restrict Motion to Amend, # 8 Exhibit G to Motion to Restrict Motion to Amend, # 9 Exhibit H to Motion to Restrict Motion to Amend)(Fuller, Jessica) (Entered: 06/16/2017) |
| 06/16/2017 | 581 | | Unopposed MOTION for Leave to Restrict by Defendant Expert Group International, Inc. (Attachments: # 1 Proposed Order (PDF Only), # 2 Exhibit A)(Enica, Bogdan) (Entered: 06/16/2017) |
| 06/19/2017 | 582 | | Unopposed MOTION for Leave to Restrict by Defendant EuRaupair InterCultural Child Care Programs. (Attachments: # 1 Proposed Order (PDF Only))(Fitzgerald, Martha) (Entered: 06/19/2017) |
| 06/22/2017 | 583 | | ORDER granting 572 , 573 , 574 , 575 , 576 , 577 , 578 , 579 , 580 , and 581 Motions for Leave to Restrict. Docs. #### 558 , 559 , 560 , and 561 shall have a Level 1 Restriction. SO ORDERED by Judge Christine M. Arguello on 6/22/2017. Text Only Entry (cmasec) (Entered: 06/22/2017) |
| 06/23/2017 | 584 | | ORDER granting 582 Motion for Leave to Restrict. Doc. 565 shall have a Level 1 Restriction. Docs. ### 558 , 559 , and 560 have been restricted pursuant to Doc. # 583 . SO ORDERED by Judge Christine M. Arguello on 6/23/2017. Text Only Entry (cmasec) (Entered: 06/23/2017) |
| 06/23/2017 | 585 | | MOTION for Leave to *Make a Special Appearance to Oppose Plaintiffs' Motion to Amend Second Amended Complaint* by Movant International Care Limited. (Attachments: # 1 Exhibit Memorandum in Support of Motion for Leave to Make Special Appearance, # 2 Proposed Order (PDF Only) [Proposed] Order Granting Leave to Make Special Appearance)(Wolkoff, Harvey) Modified on 6/23/2017 to add a Level 1 Restriction to [585−1] − Counsel will be filing a motion for leave to restrict (athom, ). (Entered: |

| | | | |
|---|---|---|---|
| | | | 06/23/2017) |
| 06/23/2017 | 586 | | RESTRICTED DOCUMENT – Level 1: Declaration and Exhibits in Support of 585 Motion for Leave to Make a Special Appearance to Oppose Plaintiffs' Motion to Amend Second Amended Complaint by Movant International Care Limited. (Attachments: # 1 Exhibit ICL Agreement with Plaintiff Dayanna Paola Cardenas Caicedo, # 2 Exhibit ICL Agreement with Plaintiff Beaudette Elizabeth Deetlefs)(Wolkoff, Harvey) Modified on 6/23/2017 to add title of document (athom, ). (Entered: 06/23/2017) |
| 06/23/2017 | 587 | | BRIEF in Opposition to 564 MOTION to Amend/Correct/Modify filed by Defendant American Institute for Foreign Study. (Macri, Stephen) (Entered: 06/23/2017) |
| 06/23/2017 | 588 | | DECLARATION of *Stephen J. Macri* regarding Brief in Opposition to Motion 587 by Defendant American Institute for Foreign Study. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Macri, Stephen) (Entered: 06/23/2017) |
| 06/23/2017 | 589 | | BRIEF in Opposition to 564 MOTION to Amend/Correct/Modify filed by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit Declaration of Justin Wolosz, # 2 Exhibit A to Declaration of Justin Wolosz, # 3 Exhibit B to Declaration of Justin Wolosz, # 4 Exhibit C to Declaration of Justin Wolosz, # 5 Exhibit D to Declaration of Justin Wolosz, # 6 Exhibit E to Declaration of Justin Wolosz, # 7 Exhibit F to Declaration of Justin Wolosz, # 8 Exhibit G to Declaration of Justin Wolosz, # 9 Exhibit H to Declaration of Justin Wolosz, # 10 Exhibit I to Declaration of Justin Wolosz, # 11 Exhibit J to Declaration of Justin Wolosz, # 12 Exhibit K to Declaration of Justin Wolosz)(Fuller, Jessica) (Entered: 06/23/2017) |
| 06/26/2017 | 590 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 588 Declaration filed by attorney Stephen J. Macri. The format for the attorneys signature block is not correct. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 06/26/2017) |
| 07/07/2017 | 591 | | Unopposed MOTION for Leave to Restrict by Movant International Care Limited. (Attachments: # 1 Exhibit 1, # 2 Proposed Order (PDF Only))(Wolkoff, Harvey) (Entered: 07/07/2017) |
| 07/07/2017 | 592 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 591 Unopposed MOTION for Leave to Restrict filed by attorney Harvey J. Wolkoff. Attorney or pro se has used an incorrect signature format in violation of D.C.COLO.LCivR 5.1(a) and 4.3(a) of the Electronic Case Filing Procedures (Civil cases). **DO NOT REFILE THE DOCUMENT.** In the future, the filer must affix an electronic s/signature and s/followed by a typed, not an inked, signature to all future documents. (Text Only Entry) (athom, ) (Entered: 07/07/2017) |
| 07/07/2017 | 593 | | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Libling, Joshua) (Entered: 07/07/2017) |

| 07/07/2017 | 594 | | RESTRICTED DOCUMENT – Level 1: Declaration of Joshua J. Libling in Further Support of 564 Motion to Amend by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Libling, Joshua) Modified on 7/7/2017 to add title of document (athom, ). (Entered: 07/07/2017) |
| 07/07/2017 | 595 | | REPLY in Further Support to Response to 564 MOTION to Amend filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Public Entry for Level Restricted Document 593 ). Text Only Entry (athom, ) (Entered: 07/07/2017) |
| 07/13/2017 | 596 | | MOTION for Order to Show Cause *for Failure to Comply with the Court's Order Granting Conditional Collective Action Class Certification, for Immediate Corrective Action, Sanctions and Expedited Consideration filed by Certain Defendants and* by Defendant AuPairCare, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Kozal, Peggy) (Entered: 07/13/2017) |
| 07/14/2017 | 597 | | MINUTE ORDER. In reviewing the pending 431 Motion to Compel Arbitration, the Court has determined that it would benefit from additional briefing on the narrow issue of whether APC–sponsored au pairs would be permitted to arbitrate collectively or forced to arbitrate as individuals in the event that this Court compels arbitration, and how any limitations on collective action would impact the unconscionability analysis. The parties are ordered to submit supplemental briefing on or before Friday, July 28, 2017. SO ORDERED by Judge Christine M. Arguello on 07/14/2017. Text Only Entry. (cmalc3) (Entered: 07/14/2017) |
| 07/14/2017 | 598 | | BRIEF in Opposition to 585 MOTION for Leave to *Make a Special Appearance to Oppose Plaintiffs' Motion to Amend Second Amended Complaint* filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Affidavit, # 2 Exhibit 1)(Libling, Joshua) (Entered: 07/14/2017) |
| 07/17/2017 | 599 | | RESPONSE to 562 MOTION to Certify Class filed by Defendant InterExchange, Inc.. (Attachments: # 1 Exhibit EX A part 1 – Declaration of McHugh, # 2 Exhibit EX A part 2, # 3 Exhibit EX A part 3, # 4 Exhibit EX A part 4, # 5 Exhibit EX A part 5, # 6 Exhibit EX B – Beltran deposition, # 7 Exhibit EX C – McHugh deposition)(Colaizzi, Brooke) (Entered: 07/17/2017) |
| 07/17/2017 | 600 | | ERRATA re 599 Response to Motion, *for Rule 23 Class Certification* by Defendant InterExchange, Inc.. (Colaizzi, Brooke) (Entered: 07/17/2017) |
| 07/17/2017 | 601 | | RESTRICTED DOCUMENT – Level 1: by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC.. (Attachments: # 1 Exhibit A (part 1) – Declaration of Bill Kapler, # 2 Exhibit A (part 2) – Declaration of Bill Kapler, # 3 Exhibit A (part 3) – Declaration of Bill Kapler, # 4 Exhibit B – Declaration of Natalie West, # 5 Exhibit C (Part 1) – Gonzalez Deposition Excerpts, # 6 Exhibit C (Part 2) – Gonzalez Deposition Excerpts, # 7 Exhibit |

| | | | |
|---|---|---|---|
| | | | D – Gonzalez Deposition Exhibit 109)(Reilly, Kathryn) (Entered: 07/17/2017) |
| 07/17/2017 | 602 | | UNRESTRICTED DOCUMENT – Level 1: PLEASE SEE PUBLIC ENTRY DOC 609 FOR TITLE OF DOCUMENT by Defendant AuPairCare, Inc. (Attachments: # 1 Exhibit A – Deposition of Juliane Harning, Sept. 8, 2016, # 2 Exhibit B – Deposition of Laura Mejia–Jimenez, Sept. 14, 2016, # 3 Exhibit C – Deposition of APC 30(b)(6) designee, May 4, 2017, # 4 Exhibit D – Plaintiffs Host Family Survey, # 5 Exhibit E – Declaration of Peggy Kozal, July 17, 2017, # 6 Exhibit F – Plaintiffs Host Family Survey, # 7 Exhibit G – Calendar Entries of Laura Mejia–Jimenez)(Quinn, Thomas) Modified on 8/23/2017 to unrestrict pursuant to D.C.COLO.LCivR 7.2(e) (athom, ). (Entered: 07/17/2017) |
| 07/17/2017 | 603 | | RESTRICTED DOCUMENT – Level 1: by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC.. (Attachments: # 1 Appendix (Addendum A), # 2 Appendix (Addendum B), # 3 Exhibit A, # 4 Exhibit A–A, # 5 Exhibit A–B, # 6 Exhibit A–C (part 1), # 7 Exhibit A–C (part 2), # 8 Exhibit A–C (part 3), # 9 Exhibit A–C (part 4), # 10 Exhibit A–C (part 5), # 11 Exhibit A–C (part 6), # 12 Exhibit A–C (part 7), # 13 Exhibit A–D, # 14 Exhibit A–E, # 15 Exhibit B, # 16 Exhibit C, # 17 Exhibit D, # 18 Exhibit E, # 19 Exhibit F, # 20 Exhibit G, # 21 Exhibit H, # 22 Exhibit I, # 23 Exhibit J (part 1), # 24 Exhibit J (part 2), # 25 Exhibit J (part 3), # 26 Exhibit K, # 27 Exhibit L, # 28 Exhibit M, # 29 Exhibit N, # 30 Exhibit O (part 1), # 31 Exhibit O (part 2), # 32 Exhibit O (part 3), # 33 Exhibit O (part 4), # 34 Exhibit P, # 35 Exhibit Q, # 36 Exhibit R, # 37 Exhibit S, # 38 Exhibit T (part 1), # 39 Exhibit T (part 2), # 40 Exhibit T (part 3), # 41 Exhibit U, # 42 Exhibit V, # 43 Exhibit W, # 44 Exhibit X, # 45 Exhibit Y, # 46 Exhibit Z, # 47 Exhibit AA, # 48 Exhibit AB, # 49 Exhibit AC, # 50 Exhibit AD, # 51 Exhibit AE, # 52 Exhibit AF, # 53 Exhibit AG, # 54 Exhibit AH, # 55 Exhibit AI)(Fuller, Jessica) (Entered: 07/17/2017) |
| 07/17/2017 | 604 | | UNRESTRICTED DOCUMENT – Level 1: PLEASE SEE PUBLIC ENTRY DOC 611 FOR TITLE OF DOCUMENT by Defendant Cultural Care, Inc. (Fuller, Jessica) Modified on 8/23/2017 to unrestrict pursuant to D.C.COLO.LCivR 7.2(e) (athom, ). (Entered: 07/17/2017) |
| 07/17/2017 | 605 | | RESTRICTED DOCUMENT – Level 1: by Defendant American Institute for Foreign Study.. (Attachments: # 1 Exhibit Declaration of Stephen J. Macri, # 2 Exhibit Ex. A Declaration of Stephen J. Macri, # 3 Exhibit Ex. B Declaration of Stephen J. Macri, # 4 Exhibit Declaration of Ruth F. Ferry, # 5 Exhibit Ex. A Declaration of Ruth F. Ferry, # 6 Exhibit Ex. B Declaration of Ruth F. Ferry, # 7 Exhibit Ex. C, Part 1 Declaration of Ruth F. Ferry, # 8 Exhibit Ex. C, Part 2 Declaration of Ruth F. Ferry, # 9 Exhibit Ex. D Declaration of Ruth F. Ferry, # 10 Exhibit Ex. E Declaration of Ruth F. Ferry)(Macri, Stephen) (Entered: 07/17/2017) |
| 07/17/2017 | 606 | | UNRESTRICTED DOCUMENT – Level 1: MOTION to Exclude Expert Testimony of William Kerr Pursuant to F.R.E. 702 by Defendants 20/20 Care |

| | | | |
|---|---|---|---|
| | | | Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Fuller, Jessica) Modified on 8/23/2017 to add motion event and text and to unrestrict pursuant to D.C.COLO.LCivR 7.2(e) (athom, ). (Entered: 07/17/2017) |
| 07/17/2017 | 607 | | RESTRICTED DOCUMENT – Level 1: by Defendant Expert Group International, Inc.. (Attachments: # 1 Exhibit Exhibit A, Declaration of Mark Gaulter, # 2 Exhibit Exhibit B, Deposition of Mark Gaulter, # 3 Exhibit Exhibit C, Deposition of Nicole Mapledoram)(Enica, Bogdan) (Entered: 07/17/2017) |
| 07/17/2017 | 608 | | Opposition to 562 MOTION for Rule 23 Class Certification filed by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC. (Public Entry for Level 1 Restricted Document 601 ). Text Only Entry (athom, ) (Entered: 07/18/2017) |
| 07/17/2017 | 609 | | BRIEF in Opposition to 562 MOTION for Rule 23 Class Certification filed by Defendant AuPairCare, Inc. (Public Entry for Level 1 Restricted Document 602 ). Text Only Entry (athom, ) (Entered: 07/18/2017) |
| 07/17/2017 | 610 | | RESPONSE in Opposition to 562 MOTION for Rule 23 Class Certification and Appointment of Class Counsel filed by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Public Entry for Level Restricted Document 603 ). Text Only Entry (athom, ) (Entered: 07/18/2017) |
| 07/17/2017 | 611 | | RESPONSE in Opposition to 562 MOTION for Rule 23 Class Certification filed by Defendant Cultural Care, Inc. (Public Entry for Level 1 Restricted Document 604 ). Text Only Entry (athom, ) (Entered: 07/18/2017) |
| 07/17/2017 | 612 | | Supplemental Opposition to 562 MOTION for Rule 23 Class Certification filed by Defendant American Institute for Foreign Study. (Public Entry for Level 1 Restricted Document 605 ). Text Only Entry (athom, ) (Entered: 07/18/2017) |
| 07/17/2017 | 613 | | MOTION to Exclude Expert Testimony of William Kerr Pursuant to F.R.E. 702 by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Public Entry for Level 1 Restricted Document 606 ). Text Only Entry (athom, ) (Entered: 07/18/2017) |
| 07/17/2017 | 614 | | |

| | | | |
|---|---|---|---|
| | | | RESPONSE in Opposition to 562 MOTION for Rule 23 Class Certification filed by Defendant Expert Group International, Inc. (Public Entry for Level 1 Restricted Document 607 ). Text Only Entry (athom, ) (Entered: 07/18/2017) |
| 07/20/2017 | 615 | | ORDER granting 585 . FURTHER ORDERED granting 591 Motion for Leave to Restrict. Docs. ####[585–01], 586 , [586–1], and [586–2] shall have a Level 1 Restriction. FURTHER ORDERED that Clerk of the Court is directed to file 591–1 as a separate document. SO ORDERED by Judge Christine M. Arguello on 7/20/2017. Text Only Entry (cmasec) (Entered: 07/20/2017) |
| 07/20/2017 | 616 | | REDACTED Opposition to 564 MOTION to Amend filed by Movant International Care Limited pursuant to 615 Order. (athom, ) (Entered: 07/20/2017) |
| 07/20/2017 | 617 | | BRIEF in Opposition to 596 MOTION for Order to Show Cause *for Failure to Comply with the Court's Order Granting Conditional Collective Action Class Certification, for Immediate Corrective Action, Sanctions and Expedited Consideration filed by Certain Defendants and* filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Appendix 1 & 2)(Smalls, Dawn) (Entered: 07/20/2017) |
| 07/20/2017 | 618 | | MOTION to Expedite *Forthwith Hearing on Motion to Amend FLSA Notice Documents* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Motion to Amend FLSA Notice Documents, # 2 Proposed Order (PDF Only))(Smalls, Dawn) (Entered: 07/20/2017) |
| 07/20/2017 | 619 | | DECLARATION of *Dawn L. Smalls* regarding Brief in Opposition to Motion,, 617 , MOTION to Expedite *Forthwith Hearing on Motion to Amend FLSA Notice Documents* 618 by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30)(Smalls, Dawn) (Entered: 07/20/2017) |
| 07/20/2017 | 620 | | MOTION to Expedite *Forthwith Hearing on Motion to Amend Scheduling Order* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Motion to Amend Scheduling Order, # 2 Declaration of Peter M. Skinner, # 3 Proposed Order (PDF Only))(Skinner, Peter) (Entered: 07/20/2017) |
| 07/21/2017 | 621 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 619 Declaration filed by attorney Dawn Smalls. The format for the attorneys signature block is not correct. **DO NOT REFILE** |

| | | | |
|---|---|---|---|
| | | | THE DOCUMENT. Action to take – future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Civil Cases). (Text Only Entry) (athom, ) (Entered: 07/21/2017) |
| 07/21/2017 | 622 | | ORDER: This matter is before the Court sua sponte. A Motion Hearing is set for 9/21/2017, at 02:00 PM in Courtroom A 602 before Judge Christine M. Arguello. The Court has set aside three hours for this hearing and the following Motions will be addressed: 596 Defendants' Motion for Order to Show Cause; 618 Plaintiffs' Motion to Amend the FLSA Notice Documents; and Plaintiffs' Motion to Amend Scheduling Order. SO ORDERED by Judge Christine M. Arguello on 7/21/2017. Text Only Entry (cmasec) (Entered: 07/21/2017) |
| 07/21/2017 | 623 | | REPLY to Response to 585 MOTION for Leave to *Make a Special Appearance to Oppose Plaintiffs' Motion to Amend Second Amended Complaint* filed by Movant International Care Limited. (Wolkoff, Harvey) (Entered: 07/21/2017) |
| 07/24/2017 | 624 | | ORDER granting in part and denying in part 507 Motion to Compel Response to Document Request No. 16 from Defendants Apex, 20/20, Agent Au Pair, AIFS, Au Pair Care, Au Pair International, Cultural Care, Expert Au Pair, and Go Au Pair; denying 514 Defendant AuPairCare, Inc.s Motion for Oral Argument Regarding Plaintiffs Motion to Compel Response to Document Request No. 16 [ECF No. 507] by Magistrate Judge Kathleen M. Tafoya on 7/24/2017. (jgonz, ) (Entered: 07/24/2017) |
| 07/26/2017 | 625 | | ORDER as to 593 and 594 . Counsel has failed to comply with D.C.COLO.LCivR 7.2(c), despite repeated requests from the court. Counsel shall file the appropriate motion by no later than, 8/3/2017, or Docs. ## 593 and 594 shall be unrestricted. SO ORDERED by Judge Christine M. Arguello on 7/26/2017. Text Only Entry (cmasec) (Entered: 07/26/2017) |
| 07/27/2017 | 626 | | SUPPLEMENT to 620 MOTION to Expedite *Forthwith Hearing on Motion to Amend Scheduling Order* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit 1)(Skinner, Peter) Modified to correct title on 7/27/2017 (cthom, ). (Entered: 07/27/2017) |
| 07/27/2017 | 627 | | Unopposed MOTION to Amend/Correct/Modify 624 Order on Motion to Compel,, Order on Motion for Hearing/Conference, by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (Attachments: # 1 Exhibit A)(Stone, Lawrence) (Entered: 07/27/2017) |
| 07/27/2017 | 628 | | MEMORANDUM regarding 627 Unopposed MOTION to Amend/Correct/Modify 624 Order on Motion to Compel,, Order on Motion for Hearing/Conference, filed by 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 7/27/2017. Text Only Entry (cmasec) (Entered: 07/27/2017) |
| 07/27/2017 | 629 | | NOTICE *of FLSA Opt–Ins* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A, # 3 |

| | | | |
|---|---|---|---|
| | | | Exhibit B, Part 1, # 4 Exhibit B, Part 2, # 5 Exhibit B, Part 3)(Smalls, Dawn) (Entered: 07/27/2017) |
| 07/28/2017 | 630 | | RESPONSE to 626 Supplement to 620 MOTION to Expedite *Forthwith Hearing on Motion to Amend Scheduling Order* filed by Defendant Cultural Care, Inc. (Hazel, Diane) Modified on 7/28/2017 to correct text (athom, ). (Entered: 07/28/2017) |
| 07/28/2017 | 631 | | BRIEF in Support of 431 MOTION to Compel *Arbitration and Dismiss or Alternatively Stay Lawsuit in Response to Minute Order [Doc. No. 597] for Additional Briefing Regarding Permissibility of Collective Action Arbitration and Impact of Collective Action Limitations on Unconscionability Analysis* filed by Defendant AuPairCare, Inc.. (Attachments: # 1 Exhibit A – Declaration of Sara V. McNamara)(Kozal, Peggy) (Entered: 07/28/2017) |
| 07/28/2017 | 632 | | BRIEF in Opposition to 431 MOTION to Compel *Arbitration and Dismiss or Alternatively Stay Lawsuit (PLAINTIFFS SUPPLEMENTAL MEMORANDUM OF LAW)* filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Hood, Alexander) (Entered: 07/28/2017) |
| 07/31/2017 | 633 | | Unopposed MOTION for Leave to Restrict by Defendant Cultural Care, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Proposed Order (PDF Only))(Hazel, Diane) Modified on 8/22/2017 to add a Level 1 Restriction to all exhibits pending filing of Motion for Leave to Restrict (athom, ). (Entered: 07/31/2017) |
| 07/31/2017 | 634 | | Unopposed MOTION for Leave to Restrict by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Reilly, Kathryn) Modified on 8/22/2017 to add a Level 1 Restriction to all exhibits pending filing of Motion for Leave to Restrict (athom, ). (Entered: 07/31/2017) |
| 07/31/2017 | 635 | | Unopposed MOTION for Leave to Restrict by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (Attachments: # 1 Exhibit A)(Stone, Lawrence) Modified on 8/22/2017 to add a Level 1 Restriction to exhibit pending filing of Motion for Leave to Restrict(athom, ). (Entered: 07/31/2017) |
| 07/31/2017 | 636 | | Unopposed MOTION for Leave to Restrict by Defendant American Institute for Foreign Study. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D)(Fulfree, John) Modified on 8/22/2017 to add a Level 1 Restriction to all exhibits pending filing of Motion for Leave to Restrict (athom, ). (Entered: 07/31/2017) |
| 07/31/2017 | 637 | | MOTION for Leave to Restrict by Defendant Expert Group International, Inc. (Enica, Bogdan) (Entered: 07/31/2017) |
| 07/31/2017 | 638 | | Exhibits in Support of 637 MOTION for Leave to Restrict by Defendant Expert Group International, Inc. (Enica, Bogdan) Modified on 8/22/2017 to add a Level 1 Restriction pending filing of Motion for Leave to Restrict (athom, ). (Entered: 07/31/2017) |

| 08/02/2017 | 639 | | Unopposed MOTION for Leave to Restrict by Defendant Cultural Care, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Proposed Order (PDF Only))(Hazel, Diane) Modified on 8/22/2017 to add a Level 1 Restriction to all exhibits pending filing of Motion for Leave to Restrict (athom, ). (Entered: 08/02/2017) |
|---|---|---|---|
| 08/02/2017 | 640 | | NOTICE re 629 Notice (Other), *of FLSA Opt−Ins* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A, # 3 Exhibit B)(Smalls, Dawn) (Entered: 08/02/2017) |
| 08/02/2017 | 641 | | RESTRICTED DOCUMENT – Level 1: Declaration of Juan P. Valdivieso and Exhibits in Support of 643 Reply to Response to 562 MOTION for Rule 23 Class Certification and Appointment of Class Counsel by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, Part 1, # 3 Exhibit 2, Part 2, # 4 Exhibit 2, Part 3, # 5 Exhibit 2, Part 4, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Exhibit 8, # 12 Exhibit 9, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13, # 17 Exhibit 14, # 18 Exhibit 15, # 19 Exhibit 16, # 20 Exhibit 17, # 21 Exhibit 18, # 22 Exhibit 19, # 23 Exhibit 20, # 24 Exhibit 21, # 25 Exhibit 22, # 26 Exhibit 23, # 27 Exhibit 24, # 28 Exhibit 25, # 29 Exhibit 26, # 30 Exhibit 27, # 31 Exhibit 28, # 32 Exhibit 29, # 33 Exhibit 30, # 34 Exhibit 31, # 35 Exhibit 32, # 36 Exhibit 33, # 37 Exhibit 34, # 38 Exhibit 35, # 39 Exhibit 36, # 40 Exhibit 37, # 41 Exhibit 38, # 42 Exhibit 39, # 43 Exhibit 40)(Valdivieso, Juan) Modified on 8/3/2017 to add title of document (athom, ). (Entered: 08/02/2017) |
| 08/02/2017 | 642 | | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Schwartz, Matthew) (Entered: 08/02/2017) |
| 08/02/2017 | 643 | | REPLY to Response to 562 MOTION for Rule 23 Class Certification and Appointment of Class Counsel filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Public Entry for Level 1 Restricted Document 642 ) Text Only Entry (athom, ) (Entered: 08/03/2017) |
| 08/03/2017 | 644 | | RESTRICTED DOCUMENT – Level 1: by Defendant InterExchange, Inc... (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Colaizzi, Brooke) (Entered: 08/03/2017) |
| 08/03/2017 | 645 | | Certain Defendants' REPLY to Response to 596 MOTION for Order to Show Cause *for Failure to Comply with the Court's Order Granting Conditional Collective Action Class Certification, for Immediate Corrective Action, Sanctions and Expedited Consideration filed by Certain Defendants and* filed by Defendant InterExchange, Inc. (Public Entry for Level 1 Restricted Document 644 ). Text Only Entry (athom, ) (Entered: 08/04/2017) |
| 08/04/2017 | 646 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Leave to *File a Sur−Reply* to 623 Reply to 598 Response to 585 Motion for Leave to Make a Special Appearance, by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit A: Plaintiffs' Proposed Sur−Reply, # 2 Proposed Order (PDF Only))(Libling, Joshua) Modified on 8/7/2017 to correct event text (athom, ). (Entered: 08/04/2017) |
| 08/07/2017 | 647 | | ORDER granting 627 "Defendants Apex, 20/20, and Expert Au Pair's Unopposed Motion to Clarify or Amend Order [Doc. 624] Granting in Part and Denying in Part Plaintiff's Motion to Compel Responses to Document Request No. 16 from Certain Defendants [Doc. 507]." These parties correctly observed that in their Reply, Plaintiffs agreed to dismiss their Motion as to these named Defendants. Therefore the Court's Order [Doc. No. 624] is amended to reflect that the Order does not apply to A.P.E.X. American Professional Exchange, LLC, d/b/a ProAuPair (APEX), 20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange (20/20), and Expert Group International, d/b/a Expert Au Pair (Expert Au Pair). Entered by Magistrate Judge Kathleen M. Tafoya on 08/07/2017. Text Only Entry (kmt, ) (Entered: 08/07/2017) |
| 08/07/2017 | 648 | | RESPONSE to 646 MOTION for Leave to *File a Sur−Reply Regarding International Care Limited's Reply in Support of Its Motion for Special Appearance* 586 Restricted Document − Level 1, 623 Reply to Response to Motion, 598 Brief in Opposition to Mot filed by Movant International Care Limited. (Wolkoff, Harvey) (Entered: 08/07/2017) |
| 08/07/2017 | 649 | | RESTRICTED DOCUMENT − Level 1: Declaration of Sean P. Rodriguez and Exhibits in Support of 651 Opposition to 606 MOTION to Exclude Expert Testimony of William Kerr Pursuant to F.R.E. 702 by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, Part 1, # 5 Exhibit 4, Part 2, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Envelope 9, # 11 Exhibit 10, # 12 Envelope 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, Part 1, # 22 Exhibit 20, Part 2, # 23 Exhibit 21, # 24 Exhibit 22, # 25 Exhibit 23, # 26 Exhibit 24, # 27 Exhibit 25, # 28 Exhibit 26, # 29 Exhibit 27, # 30 Exhibit 28, # 31 Exhibit 29, # 32 Exhibit 30, # 33 Exhibit 31, # 34 Exhibit 32, # 35 Exhibit 33, # 36 Exhibit 34, # 37 Exhibit 35, # 38 Exhibit 36, # 39 Exhibit 37)(Rodriguez, Sean) Modified on 8/8/2017 to add title of document (athom, ). Modified on 9/13/2017 to correct linkage (athom, ). (Entered: 08/08/2017) |
| 08/08/2017 | 650 | | UNRESTRICTED DOCUMENT − Level 1: PLEASE SEE PUBLIC ENTRY DOC 651 FOR TITLE OF DOCUMENT by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) Modified on 8/24/2017 to unrestrict pursuant to D.C.COLO.LCivR 7.2(e) (athom, ). (Entered: 08/08/2017) |
| 08/08/2017 | 651 | | Opposition to 606 MOTION to Exclude Expert Testimony of William Kerr Pursuant to F.R.E. 702 filed by Plaintiffs Sarah Carolina Azuela Rascon, |

| | | |
|---|---|---|
| | | Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Public Entry for Level 1 Restricted Document 650 ). Text Only Entry (athom, ) Modified on 9/13/2017 to correct linkage (athom, ). (Entered: 08/08/2017) |
| 08/10/2017 | 652 | RESPONSE to 620 MOTION to Expedite *Forthwith Hearing on Motion to Amend Scheduling Order (Response to Motion to Amend Scheduling Order [620−1])* filed by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Fuller, Jessica) (Entered: 08/10/2017) |
| 08/10/2017 | 653 | RESPONSE to 618 MOTION to Expedite *Forthwith Hearing on Motion to Amend FLSA Notice Documents (Response to Motion to Amend the FLSA Notice Documents [618−1])* filed by Defendants American Cultural Exchange, LLC, American Institute for Foreign Study, AuPairCare, Inc., Cultural Care, Inc., Expert Group International, Inc, GoAuPair Operations, LLC, InterExchange, Inc.. (Fuller, Jessica) (Entered: 08/10/2017) |
| 08/11/2017 | 654 | ORDER: This matter is before the Court sua sponte. Due to a conflict in the Court's Calendar the Motion Hearing re 596 and 618 set for 9/21/2017 is VACATED and RESET to 8/31/2017, at 09:00 AM in Courtroom A 602 before Judge Christine M. Arguello. The Court has set aside three hours for this hearing. SO ORDERED by Judge Christine M. Arguello on 8/11/2017. Text Only Entry (cmasec) (Entered: 08/11/2017) |
| 08/11/2017 | 655 | NOTICE re 640 Notice (Other), 629 Notice (Other), *of FLSA Opt−Ins* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A)(Smalls, Dawn) (Entered: 08/11/2017) |
| 08/15/2017 | 656 | ORDER granting 633 , 634 , 635 , 636 , 637 , and 639 Motions for Leave to Restrict. Docs. 603 , 601 , 605 , and 607 shall have a Level 1 Restriction. SO ORDERED by Judge Christine M. Arguello on 8/15/2017. Text Only Entry (cmasec) (Entered: 08/15/2017) |
| 08/16/2017 | 657 | Unopposed MOTION for Leave to Restrict by Defendant Cultural Care, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Lyons, James) Modified on 8/22/2017 to add a Level 1 Restriction to all exhibits pending filing of Motion for Leave to Restrict (athom, ). (Entered: 08/16/2017) |
| 08/16/2017 | 658 | Unopposed MOTION for Leave to Restrict by Defendant American Institute for Foreign Study. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Fulfree, John) Modified on 8/22/2017 to add a Level 1 Restriction to all exhibits pending filing of Motion for Leave to Restrict (athom, ). (Entered: 08/16/2017) |
| 08/16/2017 | 659 | Unopposed MOTION for Leave to Restrict by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC. (Attachments: # 1 Exhibit |

| | | | |
|---|---|---|---|
| | | | A)(Reilly, Kathryn) Modified on 8/22/2017 to add a Level 1 Restriction to exhibit pending filing of Motion for Leave to Restrict (athom, ). (Entered: 08/16/2017) |
| 08/17/2017 | 660 | | MOTION for Leave to *Reschedule Motions Hearing Addressing ECF Nos. 596, 618 and 620* by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Attachments: # 1 Proposed Order (PDF Only))(Reilly, Kathryn) (Entered: 08/17/2017) |
| 08/17/2017 | 661 | | Unopposed MOTION for Leave to Restrict by Defendant Au Pair International, Inc. (Attachments: # 1 Exhibit A to Motion to Restrict Access to ECF 644–2 (Lehan Declaration))(Reilly, Kathryn) Modified on 8/22/2017 to add a Level 1 Restriction to exhibit pending filing of Motion for Leave to Restrict (athom, ). (Entered: 08/17/2017) |
| 08/18/2017 | 662 | | ORDER granting 660 Motion for Leave to Reschedule Motions Hearing. The Motions Hearing re 596 , 618 , and 620 set for 8/31/2017 is VACATED and RESET to 8/25/2017, at 09:00 AM in Courtroom A 602 before Judge Christine M. Arguello. The Court has set aside three hours for this hearing. SO ORDERED by Judge Christine M. Arguello on 08/18/2017. Text Only Entry. (cmalc3) (Entered: 08/18/2017) |
| 08/18/2017 | 663 | | Utility Setting/Resetting Deadlines/Hearings: Motion Hearing set for 8/25/2017 09:00 AM in Courtroom A 602 before Judge Christine M. Arguello pursuant to 662 Order. Text Only Entry (athom, ) (Entered: 08/18/2017) |
| 08/18/2017 | 664 | | NOTICE re 640 Notice (Other), 629 Notice (Other), 655 Notice (Other), *of FLSA Opt–Ins* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Smalls, Dawn) (Entered: 08/18/2017) |
| 08/21/2017 | 665 | | MINUTE ORDER. Counsel for Plaintiffs maintain that, contrary to their instructions, an email vendor erroneously sent FLSA notice to au pairs who worked for non–FLSA Defendants. Counsel is ordered to file all correspondence with the email vendor related to the erroneous transmission by close of business on Wednesday, August 23, 2017. SO ORDERED by Judge Christine M. Arguello on 08/21/2017. Text Only Entry. (cmalc3) (Entered: 08/21/2017) |
| 08/21/2017 | 666 | | RESTRICTED DOCUMENT – Level 1: by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC.. (Attachments: # 1 Exhibit AJ, # 2 Exhibit AK)(Hazel, Diane) Modified on 9/13/2017 to change to a Level 1 Restricted Document pursuant to 700 Order (athom, ). (Entered: 08/21/2017) |

| 08/21/2017 | 667 | | REPLY to Response to 618 MOTION to Expedite *Forthwith Hearing on Motion to Amend FLSA Notice Documents (Reply to Response to Motion to Amend the FLSA Notice Documents [618–1])* filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Smalls, Dawn) (Entered: 08/21/2017) |
|---|---|---|---|
| 08/21/2017 | 668 | | Unopposed MOTION for Leave to Restrict by Defendant APF Global Exchange, NFP. (Schaecher, Susan) (Entered: 08/21/2017) |
| 08/21/2017 | 669 | | Unopposed MOTION for Leave to Restrict by Defendant Cultural Care, Inc. (Attachments: # 1 Exhibit A, # 2 Proposed Order (PDF Only))(Hazel, Diane) Modified on 8/22/2017 to add a Level 1 Restriction to exhibit pending filing of Motion for Leave to Restrict (athom, ). (Entered: 08/21/2017) |
| 08/21/2017 | 670 | | Unopposed MOTION for Leave to Restrict by Defendant AuPairCare, Inc.. (Kozal, Peggy) (Entered: 08/21/2017) |
| 08/21/2017 | 671 | | MOTION for Leave to Restrict by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC. (Stone, Lawrence) (Entered: 08/21/2017) |
| 08/21/2017 | 672 | | Unopposed MOTION for Leave to Restrict by Defendant American Institute for Foreign Study. (Fulfree, John) (Entered: 08/21/2017) |
| 08/21/2017 | 673 | | Unopposed MOTION for Leave to Restrict by Defendants American Cultural Exchange, LLC, GoAuPair Operations, LLC. (Reilly, Kathryn) (Entered: 08/21/2017) |
| 08/21/2017 | 701 | | REDACTED REPLY in Support to Response to 606 MOTION to Exclude filed by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Public Entry for Level 1 Restricted Document 666 ). Filed pursuant to 700 Order. (athom, ) (Entered: 09/13/2017) |
| 08/22/2017 | 674 | | MOTION for Leave to *Appear at Motion Hearing by Telephone* by Defendant Expert Group International, Inc. (Enica, Bogdan) (Entered: 08/22/2017) |
| 08/22/2017 | 675 | | NOTICE of Entry of Appearance by Byron Pacheco on behalf of All Plaintiffs Attorney Byron Pacheco added to party Sarah Carolina Azuela Rascon(pty:pla), Attorney Byron Pacheco added to party Johana Paola Beltran(pty:pla), Attorney Byron Pacheco added to party Beaudette Deetlefs(pty:pla), Attorney Byron Pacheco added to party Alexandra Ivette Gonzalez(pty:pla), Attorney Byron Pacheco added to party Juliane Harning(pty:pla), Attorney Byron Pacheco added to party Lusapho Hlatshaneni(pty:pla), Attorney Byron Pacheco added to party Laura Mejia Jimenez(pty:pla), Attorney Byron Pacheco added to party Nicole Mapledoram(pty:pla) (Pacheco, Byron) (Entered: 08/22/2017) |
| 08/22/2017 | 676 | | REPLY to Response to 626 MOTION to Supplement 620 MOTION to Expedite *Forthwith Hearing on Motion to Amend Scheduling Order* , 620 |

| | | | |
|---|---|---|---|
| | | | MOTION to Expedite *Forthwith Hearing on Motion to Amend Scheduling Order (Reply in Further Support of Motion to Amend Scheduling Order)* filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Skinner, Peter) (Entered: 08/22/2017) |
| 08/23/2017 | 677 | | NOTICE of Entry of Appearance by Aubrey Jane Markson on behalf of 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLCAttorney Aubrey Jane Markson added to party 20/20 Care Exchange, Inc(pty:dft), Attorney Aubrey Jane Markson added to party A.P.E.X. American Professional Exchange, LLC(pty:dft) (Markson, Aubrey) (Entered: 08/23/2017) |
| 08/23/2017 | 678 | | ORDER granting 657 , 658 , 659 , and 661 , Motions for Leave to Restrict. Docs. 641 , 642 , and 644 shall have a Level 1 Restriction. SO ORDERED by Judge Christine M. Arguello on 8/23/2017. Text Only Entry (cmasec) (Entered: 08/23/2017) |
| 08/23/2017 | 679 | | NOTICE of Entry of Appearance by Jennifer Arnett Roehrich on behalf of AuPairCare, Inc.Attorney Jennifer Arnett Roehrich added to party AuPairCare, Inc.(pty:dft) (Arnett Roehrich, Jennifer) (Entered: 08/23/2017) |
| 08/23/2017 | 680 | | Unopposed MOTION for Leave to Restrict by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, USAuPair, INC. (Attachments: # 1 Proposed Order (PDF Only))(Hazel, Diane) (Entered: 08/23/2017) |
| 08/23/2017 | 681 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 679 Notice of Entry of Appearance filed by attorney Jennifer Arnett Roehrich. **DO NOT REFILE THE DOCUMENT. Action to take –** counsel must submit a change of contact request through the Attorney Services Portal Account pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases). (Text Only Entry) (athom, ) (Entered: 08/23/2017) |
| 08/23/2017 | 682 | | RESTRICTED DOCUMENT – Level 2: by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29)(Smalls, Dawn) (Entered: 08/23/2017) |
| 08/24/2017 | 683 | | ORDER granting 674 Motion for Leave to Appear at Motion Hearing by Telephone. Defendant Expert Group International, Inc.'s counsel, Bogdan Enica, is directed to call chambers (303–335–2174) five minutes before the |

| | | | |
|---|---|---|---|
| | | | appropriate time in order to participate in the Motion Hearing by telephone. Mr. Enica is further directed to use a LAND LINE; no cellular, cordless or speaker phones are permitted. SO ORDERED by Judge Christine M. Arguello on 8/24/2017. Text Only Entry (cmasec) (Entered: 08/24/2017) |
| 08/24/2017 | 684 | | MOTION for Leave to Restrict by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Attachments: # 1 Exhibit A)(Smalls, Dawn) (Entered: 08/24/2017) |
| 08/25/2017 | 685 | | ORDER granting 668 , 669 , 670 , 671 , 672 , and 673 , Motions for Leave to Restrict. Docs. 641 and 649 , shall have a Level 1 Restriction. SO ORDERED by Judge Christine M. Arguello on 8/25/2017. Text Only Entry (cmasec) (Entered: 08/25/2017) |
| 08/25/2017 | 686 | | MINUTE ENTRY for proceedings held before Judge Christine M. Arguello: Motion Hearing held on 8/25/2017. Parties admonished as to counsels' professionalism and filings. ORDERED: Denying Without Prejudice 596 Defendants' Motion for Orders to Show Cause; Denying Without Prejudice 618 Plaintiffs' Motion to Expedite Forthwith Hearing on Motions; Taking Under Advisement 620 Plaintiffs' Motion to Expedite Forthwith Hearing on Motion to Amend Scheduling Order. DEADLINES: On or before Wednesday, August 30, 2017, the parties are ordered to confer and produce joint language for the 60–day reminder email scheduled for September 3, 2017. When an agreement is reached, Plaintiffs counsel is ordered to file a brief notice with this Court indicating as much. If the parties are unable to agree on appropriate language, they are ordered to submit briefing identifying areas of disagreement by close of business on Thursday, August 3, 2017. On or before Wednesday, September 6, 2017, the parties are ordered to confer and produce joint language for the second–wave notice transmittal email and notice website. When an agreement is reached, Plaintiffs counsel is ordered to file a brief notice with this Court indicating as much. If the parties are unable to agree on appropriate language, they are ordered to submit briefing identifying areas of disagreement by close of business on Thursday, September 7, 2017. Plaintiffs counsel shall transmit the second–wave notice on Monday, September 11, 2017. The reminder shall be transmitted 60 days later on November 10, 2017, and the opt–in window will close 60 days after that on January 9, 2018. Any transmittal emails, including the 60–day reminder, and the website should make clear: (1) that the communication is Court–authorized, (2) that joining the lawsuit includes certain responsibilities, as set forth in Section 4 of the Notice Document, and (3) that sponsor–families are not defendants in the lawsuit. (Total time: 1:08, Hearing time: 9:03 a.m. – 10:11 a.m.)<br><br>**APPEARANCES**: Dawn Smalls, Joshua Libling, Alex Hood, and David Seligman on behalf of the Plaintiffs; Thomas Quinn and Peggy Kozal for Defendant AuPairCare, Inc.; Katie Reilly for Defendants Au Pair International Inc., American Cultural Exchange, LLC, Agent Au Pair and GoAuPair Operations LLC; James Lyons, Diane Hazel and Justin Wolosz for Defendant Culture Care, Inc.; Jonathan Bender and Adam Hubbard for Cultural Homestay International; Martha Fitzgerald and David Meschke for Defendant EuRaupair InterCultural Child Care; Brooke Colaizzi and Alyssa Levy for Defendant InterExchange, Inc.; Martin Estevao and Meshack Rhoades for Defendant GreatAuPair, LLC; William Kelly for Defendant USAuPair, Inc.; |

| | | | |
|---|---|---|---|
| | | | Robert Tucker for Defendant American Institute for Foreign Study; Lawrence Lee for Defendant APF Global Exchange; Lawrence Stone for Defendnats A.P.E.X. American Professional Exchange, LLC and 20/20 Care Exchange, Inc.; Bogdan Enica for Defendant Expert Group International, Inc. (telephonically). Court Reporter: Darlene Martinez. (swest) Text Only Entry (Entered: 08/25/2017) |
| 08/28/2017 | 687 | | ORDER Granting in Part Plaintiffs' 620 Motion to Amend Scheduling Orde. Discovery due by 11/3/2017. Dispositive Motions due by 2/16/2018. By Judge Christine M. Arguello on 08/28/2017. (athom, ) (Entered: 08/28/2017) |
| 08/29/2017 | 688 | | TRANSCRIPT of Motions Hearing held on 8/25/17 before Judge Arguello. Pages: 1–52. <br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (dmart, ) (Entered: 08/29/2017) |
| 08/30/2017 | 689 | | ORDER granting 680 Motion for Leave to Restrict. All exhibits attached to 573 , 633 , 634 , 635 , 636 , 638 , 639 , 657 , 658 , 659 , 661 , and 669 shall have a Level 1 Restriction. SO ORDERED by Judge Christine M. Arguello on 8/30/2017. Text Only Entry (cmasec) (Entered: 08/30/2017) |
| 08/30/2017 | 690 | | ORDER granting 684 Motion for Leave to Restrict. Doc. 682 shall have a Level 2 Restriction. SO ORDERED by Judge Christine M. Arguello on 8/30/2017. Text Only Entry (cmasec) (Entered: 08/30/2017) |
| 08/30/2017 | 691 | | Joint MOTION to Amend/Correct/Modify 305 Protective Order by Defendants 20/20 Care Exchange, Inc, A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, Au Pair International, Inc., AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GoAuPair Operations, LLC, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Attachments: # 1 Exhibit A – Amended Stipulated Protective Order)(Hazel, Diane) (Entered: 08/30/2017) |
| 08/31/2017 | 692 | | MEMORANDUM regarding 691 Joint MOTION to Amend/Correct/Modify 305 Protective Order filed by 20/20 Care Exchange, Inc, Cultural Care, Inc., Au Pair International, Inc., A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, GreatAuPair, LLC, Expert Group International, Inc, EuRaupair InterCultural Child Care Programs, InterExchange, Inc., Agent Au Pair, American Cultural Exchange, LLC, Cultural Homestay International, American Institute for Foreign Study, GoAuPair Operations, LLC, USAuPair, INC, AuPairCare, Inc. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 8/31/2017. Text Only Entry (cmasec) (Entered: 08/31/2017) |

| 08/31/2017 | 693 | | MINUTE ORDER granting 691 Motion to Amend the Stipulated Protective Order. The proposed Amended Protective Order shall be entered. However, the parties are reminded they must comply with the Order issued by District Judge Christine M. Arguello during the Motion Hearing held on 8/25/17 requiring that when multiple documents are filed under restriction in one filing, if an opposing party intends to file a motion to restrict pursuant to D.C.COLO.LCivR 7.2, they must confer with co−counsel, if applicable, and file one joint or consolidated Motion to Restrict identifying every document for which they are seeking restriction and the basis for said restriction. The parties are also reminded that merely being subject to a stipulated protective order is not, standing alone, sufficient to warrant restriction. By Magistrate Judge Kathleen M. Tafoya on 8/31/17. Text Only Entry (kmtlc2 ) (Entered: 08/31/2017) |
| 08/31/2017 | 694 | | AMENDED PROTECTIVE ORDER by Magistrate Judge Kathleen M. Tafoya on 8/31/17. (sgrim) (Entered: 08/31/2017) |
| 08/31/2017 | 695 | | NOTICE re 664 Notice (Other), of FLSA Opt−Ins by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Smalls, Dawn) (Entered: 08/31/2017) |
| 08/31/2017 | 696 | | NOTICE of Agreement by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Libling, Joshua) (Entered: 08/31/2017) |
| 09/05/2017 | 697 | | Unopposed MOTION for Leave to Restrict by Defendant American Institute for Foreign Study. (Attachments: # 1 Exhibit A − Redacted Copy of ECF No. 666)(Fulfree, John) (Entered: 09/05/2017) |
| 09/07/2017 | 698 | | NOTICE of Agreement by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Smalls, Dawn) (Entered: 09/07/2017) |
| 09/11/2017 | 699 | | NOTICE re 695 Notice (Other), of FLSA Opt−Ins by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A, # 3 Exhibit B, Part 1, # 4 Exhibit B, Part 2, # 5 Exhibit C)(Smalls, Dawn) (Entered: 09/11/2017) |
| 09/13/2017 | 700 | | ORDER granting 697 Motion for Leave to Restrict. Doc. # 666 's restriction level is being changed from Level 2 to Level 1 and shall remain under a Level 1 restriction. The Clerks Officer is directed to file Doc. #[697−1] as a separate document. SO ORDERED by Judge Christine M. Arguello on 9/13/2017. Text Only Entry (cmasec) (Entered: 09/13/2017) |
| 09/18/2017 | 702 | | NOTICE re 699 Notice (Other), of FLSA Opt−Ins by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 |

| | | | |
|---|---|---|---|
| | | | Exhibit A, # 3 Exhibit B, Part 1, # 4 Exhibit B, Part 2, # 5 Exhibit C)(Smalls, Dawn) (Entered: 09/18/2017) |
| 09/19/2017 | 703 | | MINUTE ORDER: An Informal Telephonic Discovery Conference is set for 9/21/17 at 4:00 PM before Magistrate Judge Kathleen M. Tafoya. The parties shall initiate a conference call and then call chambers at 303–335–2780 at the scheduled time. The parties are further directed to use a LAND LINE; NO CELLULAR, CORDLESS OR SPEAKER PHONES ARE PERMITTED. By Magistrate Judge Kathleen M. Tafoya on 9/19/17. Text Only Entry (kmtlc2 ) (Entered: 09/19/2017) |
| 09/21/2017 | 704 | | MOTION to Withdraw as Attorney by Defendant AuPairCare, Inc.. (Kelly, Heather) (Entered: 09/21/2017) |
| 09/21/2017 | 705 | 304 | ORDER denying 431 Motion to Compel and Dismiss or, Alternatively, Stay Lawsuit. By Judge Christine M. Arguello on 09/21/2017. (athom, ) (Entered: 09/21/2017) |
| 09/21/2017 | 706 | | COURTROOM MINUTES for Telephonic Discovery Hearing held on 9/21/2017 before Magistrate Judge Kathleen M. Tafoya. Plaintiffs are permitted to file a motion to compel, as discussed, on or before September 27, 2017. A response to the motion shall be filed on or before October 6, 2017. A reply, if any, shall be filed on or before October 11, 2017. Motion Hearing set for 10/18/2017 01:30 PM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya. FTR: KMT C201. (sgrim) (Entered: 09/21/2017) |
| 09/22/2017 | 707 | | ORDER granting 704 Motion to Withdraw as Attorney. Attorney Heather K. Kelly is permitted to withdraw as counsel for Defendant AuPairCare, Inc. The Court notes that Defendant AuPairCare, Inc. continues to be represented by Thomas Quinn, Peggy Kozal, Nathan Huey, and Jennifer Arnett–Roehrich. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Ms. Kelly's email address from future ECF filings and electronic notifications in this case. SO ORDERED by Judge Christine M. Arguello on 9/22/2017. Text Only Entry (cmasec) (Entered: 09/22/2017) |
| 09/23/2017 | 708 | | NOTICE re 702 Notice (Other), of FLSA Opt–Ins by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A, # 3 Exhibit B, Part 1, # 4 Exhibit B, Part 2, # 5 Exhibit B, Part 3, # 6 Exhibit C)(Smalls, Dawn) (Entered: 09/23/2017) |
| 09/27/2017 | 709 | | RESTRICTED DOCUMENT – Level 1: Declaration of Juan P. Valdivieso and Exhibits in Support of 711 Motion to Compel and for Relief Under Federal Rules of Civil Procedure 26, 37, and 45 by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 2, # 4 3, # 5 4, # 6 5, # 7 6, # 8 7, # 9 8.1, # 10 8.2, # 11 8.3, # 12 8.4, # 13 8.5, # 14 8.6, # 15 8.7, # 16 8.8, # 17 9, # 18 10, # 19 11, # 20 12, # 21 13, # 22 14, # 23 15, # 24 16, # 25 17, # 26 18, # 27 19, # 28 20, # 29 21, # 30 22, # 31 23, # 32 24, # 33 25, # 34 26, # 35 27)(Valdivieso, Juan) Modified on 9/28/2017 to correct filers and to add title of document (athom, ). (Entered: 09/28/2017) |
| 09/27/2017 | 710 | | |

| | | | |
|---|---|---|---|
| | | | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Rodriguez, Sean) Modified on 9/28/2017 to correct filers (athom, ). (Entered: 09/28/2017) |
| 09/27/2017 | 711 | | MOTION to Compel and for Relief Under Federal Rules of Civil Procedure 26, 37, and 45 by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (Public Entry for Level 1 Restricted Document 710 ). Text Only Entry (athom, ) (Entered: 09/28/2017) |
| 09/28/2017 | 712 | | MEMORANDUM regarding 711 MOTION to Compel filed by Nicole Mapledoram, Johana Paola Beltran, Laura Mejia Jimenez, Sarah Carolina Azuela Rascon, Lusapho Hlatshaneni, Beaudette Deetlefs, Juliane Harning, Alexandra Ivette Gonzalez. Motion referred to Magistrate Judge Kathleen M. Tafoya by Judge Christine M. Arguello on 9/28/2017. Text Only Entry (cmasec) (Entered: 09/28/2017) |
| 10/02/2017 | 713 | | NOTICE re 708 Notice (Other), *of FLSA Opt−Ins* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Smalls, Dawn) (Entered: 10/02/2017) |
| 10/06/2017 | 714 | | MOTION for Leave to Restrict by Defendants A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Arnett Roehrich, Jennifer) (Entered: 10/06/2017) |
| 10/06/2017 | 715 | | RESTRICTED DOCUMENT – Level 1: by Defendants A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4 (Restriction Requested), # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8 (Restriction Requested))(Arnett Roehrich, Jennifer) (Entered: 10/06/2017) |
| 10/06/2017 | 717 | | Defendants' OPPOSITION to 711 Plaintiffs' MOTION to Compel filed by Defendants A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (PUBLIC ENTRY FOR 715 RESTRICTED DOCUMENT) (cthom, ) (Entered: 10/10/2017) |
| 10/10/2017 | 716 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE re 713 Notice (Other), *of FLSA Opt−Ins* by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram (Attachments: # 1 Declaration of Jennifer M. Keough, # 2 Exhibit A, # 3 Exhibit B)(Smalls, Dawn) (Entered: 10/10/2017) |
| 10/11/2017 | 718 | | (RESTRICTED DOCUMENT – Level 1) Declaration of Juan P. Valdivieso re 719 by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Dayanna Paola Cardenas Caicedo, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Attachments: # 1 Exhibit Exhibit 28)(Valdivieso, Juan) Modified to add title on 10/11/2017 (cthom, ). (Entered: 10/11/2017) |
| 10/11/2017 | 719 | | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram.. (Valdivieso, Juan) (Entered: 10/11/2017) |
| 10/11/2017 | 720 | | MOTION for Leave to Restrict by Defendants A.P.E.X. American Professional Exchange, LLC, APF Global Exchange, NFP, Agent Au Pair, American Cultural Exchange, LLC, American Institute for Foreign Study, AuPairCare, Inc., Cultural Care, Inc., Cultural Homestay International, EuRaupair InterCultural Child Care Programs, Expert Group International, Inc, GreatAuPair, LLC, InterExchange, Inc., USAuPair, INC. (Arnett Roehrich, Jennifer) (Entered: 10/11/2017) |
| 10/11/2017 | 721 | | REPLY in Support to 711 MOTION to Compel and Relief Under Federal Rules of Civil Procedure 26, 37, and 45 filed by Plaintiffs Sarah Carolina Azuela Rascon, Johana Paola Beltran, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Juliane Harning, Lusapho Hlatshaneni, Laura Mejia Jimenez, Nicole Mapledoram. (PUBLIC ENTRY FOR 719 RESTRICTED DOCUMENT) (cthom, ) (Entered: 10/11/2017) |
| 10/11/2017 | 722 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 719 Restricted Document – Level 1 filed by attorney Sean P. Rodriguez. The s/signature did not match the filers name on the account for which the login and password are registered. **DO NOT REFILE THE DOCUMENT. Action to take −** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (cthom, ) (Entered: 10/11/2017) |
| 10/11/2017 | 723 | 324 | NOTICE OF APPEAL as to 705 Order on Motion to Compel by Defendant AuPairCare, Inc. (Filing fee $ 505, Receipt Number 1082−5752536) (Quinn, Thomas) (Entered: 10/11/2017) |
| 10/12/2017 | 724 | | MINUTE ORDER: In light of the 723 Notice of Appeal, the Motion Hearing currently set on 10/18/17 is VACATED. By Magistrate Judge Kathleen M. Tafoya on 10/12/17. Text Only Entry (kmtlc2 ) (Entered: 10/12/2017) |

Case No. 1:14-cv-03074-CMA-KMT Document 725-13 filed 10/11/17 USDC Colorado pg 111
Case 1:14-cv-03074-CMA-KMT Document 431 Filed 11/10/16 Page 2 of 29
of 327

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

**DEFENDANT AUPAIRCARE, INC.'S MOTION TO COMPEL ARBITRATION AND
DISMISS OR, ALTERNATIVELY, STAY LAWSUIT (RESPONSE TO SECOND
AMENDED COMPLAINT, DOC. #395); SUPPORTING MEMORANDUM OF POINTS
AND AUTHORITIES**

---

Case No. 1:14-cv-03074-CMA-KMT Document 725-13 Filed 10/11/17 USDC Colorado pg 112
Case 1:14-cv-03074-CMA-KMT Document 131 Filed 11/10/16 Page 2 of 29
of 327

Defendant, AuPairCare, Inc. ("AuPairCare" or "APC"), submits this Motion to Compel Arbitration and Dismiss, or Alternatively, Stay Lawsuit, and supporting Memorandum of Points and Authorities.

## INTRODUCTION

Plaintiffs Juliane Harning ("Harning") and Laura Mejia Jimenez ("Mejia") were added as plaintiffs to this case in the Second Amended Complaint ("SAC"), filed in this Court on October 18, 2016. (Doc #395). Before the filing of the SAC, no persons currently or formerly sponsored as *au pairs* by APC had been in this case, and the sole cause of action asserted against APC had been Plaintiffs' antitrust claim. (*See* First Amended Complaint, Doc. #101). This Motion is thus APC's first occasion to respond to alleged claims brought by new plaintiffs Harning and Mejia.

The claims of Harning and Mejia brought in this action are subject to and barred by the mandatory arbitration and forum selection provisions of their contracts with APC. (*See* Exh.1 to Declaration of Sarah V. McNamara, p.6, ¶ 77, Exh.2, p. 6, ¶ 80). Those contracts ("APC Agreement" or "Agreement") expressly provide that Harning and Mejia, and APC, "acknowledge and agree that any dispute or claim arising out of [those] Agreement[s], including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by mutual, exclusive and binding arbitration in San Francisco, California..." (*Id.*). The causes of action alleged in the SAC unquestionably arise from these Agreements. The SAC so alleges. (Doc. #395, ¶¶ 192, 213, 348-350) APC has invoked this mandatory arbitration clause, and preserved the defense of mandatory arbitration at every available opportunity – even before this

- 1 -

issue became ripe by virtue of Plaintiffs' first filing of a version of the Complaint that included former APC-sponsored *au pairs* subject to this clause. APC has requested that Plaintiffs stipulate to referring to arbitration Harning's and Mejia's claims. Plaintiffs have not responded to these requests.

The Court should enforce these mandatory arbitration provisions according to their terms. These arbitration agreements are valid and enforceable, and entered into voluntarily by these two plaintiffs. In the face of APC's repeated assertions that the arbitration clause would and does control when, as now, there are plaintiffs in the case subject to it, Plaintiffs have not once asserted the clause is unenforceable. They cannot in any event meet their heavy burden of demonstrating that these arbitration agreements should not be enforced. The bedrock policies favoring arbitration, codified in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") and recognized time and again by the United States Supreme Court, courts in this Circuit and California courts, compel that this case be referred to arbitration and this action be dismissed or in the alternative stayed as to these Plaintiffs.

The Agreements also provide that "in the event that the arbitration clause is deemed void or inapplicable, [the parties] consent to and submit to the personal jurisdiction of the federal or state courts of San Francisco County, California." (McNamara Dec., Exh. 1, p. 6, ¶ 77, Exh. 2, p. 6, ¶ 80). Thus, if this Court were to rule that the subject arbitration clauses are void or inapplicable, this case as against these Plaintiffs must be transferred to federal court in San Francisco.

- 2 -

## RELEVANT FACTS

### I.    PLAINTIFFS' ARBITRATION AGREEMENTS

In or about August, 2013, Harning signed an APC Agreement (Exh. 1 to McNamara Dec).[1] In or about July 2014, Mejia signed an APC Agreement (Exh. 2 to McNamara Dec). The Agreements describe the nature of the relationship between these *au pairs* and their host families, the basic requirements to serve as an *au pair*, the minimum compensation and other benefits to which the *au pairs* would be entitled from the host families, and other terms and conditions of the program.    They expressly provide that any disputes arising from their *au pair* engagements are subject to mandatory arbitration:

> The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party.

> ...The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

> In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. contract.)

(McNamara Dec, Exh. 1, p.6, ¶ 77; Exh. 2, p.6, ¶ 80).

The Agreements further provide that their "validity, construction, breach, performance and interpretation shall be governed by the State of California, U.S." (Exh.

---

[1] This was Harning's second engagement as an *au pair* sponsored by APC.  (*See* Doc. #330-1, ¶ 16.) She also worked as an *au pair* in the UK and the Netherlands. (Exh. 7 to Maschler Dec., pp. 122, 125).

- 3 -

Case No. 1:14-cv-03074-CMA-KMT   Document 725-1   filed 10/11/17   USDC Colorado   pg 115
of 327
Case 1:14-cv-03074-CMA-KMT   Document 431   Filed 11/10/16   Page 5 of 29

1, ¶75, Exh. 2, ¶ 77 to McNamara Dec.).

Harning and Mejia testified in deposition that before signing these Agreements they read and understood their provisions. (Maschler Dec., Exh. 7, pp. 14-16; Exh. 8, pp. 152-157, 162). Pursuant to these Agreements, Harning and Mejia served as *au pairs* with host families with which they were matched. There is no claim in this case (1) that APC breached its Agreements with these Plaintiffs or (2) seeking to declare void or rescind them, or any portion thereof.

## II. THE COURT-APPROVED FILING OF THE SAC, WHICH ADDED PLAINTIFFS HARNING AND MEJIA, TRIGGERED, FOR THE FIRST TIME, THE MANDATORY ARBITRATION PROVISIONS OF THE APC AGREEMENTS

### A. Although The Prior Versions Of The Complaint Did Not Name As Plaintiffs Any APC-Sponsored *Au Pairs* Who Were Subject To These Mandatory Arbitration Provisions, APC Expressly Preserved Its Mandatory Arbitration Defense

APC's motion to compel arbitration is timely. Before the Court approved the filing of the SAC and Plaintiffs filed it, there were no plaintiffs in the case who were subject to the mandatory arbitration provisions of the APC Agreements. The FAC did not list any such person as a plaintiff, and contained only a single count against APC, for violation of Section 1 of the Sherman Act. (Doc. # 101). Nevertheless, to ensure its defense of mandatory arbitration was preserved and Plaintiffs were on notice of its existence in the event any former (or current) APC-sponsored *au pairs* were added to the case, APC asserted this defense at every available opportunity. Thus, in its Answer to the FAC, it asserted the affirmative defense that "[a]ny alleged disputes between this Defendant and the au pairs it has sponsored are subject to mandatory arbitration provisions." (Doc # 286 at p. 91, "Second Defense" [Exh. 1 to Maschler Dec]).

- 4

In responding to discovery, APC again preserved its objections regarding the mandatory arbitration bar. In its written responses to Plaintiffs' First Request for Production of Documents and First Set of Interrogatories, APC asserted this mandatory arbitration defense in its first General Objection and in response to each and every individual request and interrogatory:

> Defendant objects to these requests on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper. AuPairCare expressly reserves the right to move to dismiss this action and/or compel arbitration. Nothing in these responses or objections may be deemed a waiver of that right.

(Maschler Dec.; Exh. 2, at 2 [emphasis in original], *see also id.* at 4-20, Exh. 3 at 2, 4, 6, 7). In response to the Request for Production, APC produced copies of its AuPairCare Agreement forms for 2010-2015, all of which contained mandatory arbitration provisions. (Maschler Dec. ¶ 5, Exh. 4)

Plaintiffs' counsel, having been apprised of the AuPairCare mandatory arbitration provisions, then propounded a Second Request for Production requesting "all arbitration agreements that you contend apply to these claims." In APC's Response, it specifically referred by Bates-numbers to the APC Agreements already produced. (Exh. 5 to Maschler Dec. at p. 5). APC again asserted the same objections regarding mandatory arbitration. (*Id.* at 2, 4-5). Thus, Plaintiffs knew of the existence of the mandatory arbitration provisions of these APC Agreements nearly four (4) months before filing their motion for leave to file the SAC and their second motion for conditional collective action certification.

- 5 -

B.  **Plaintiffs' Simultaneous Filing, On August 15, 2015, Of A Motion To Amend The Complaint And A Second Motion For Conditional Certification Of A Collective FLSA Class**

On August 15, 2015, the last day allowed in the Court's Scheduling Order, Plaintiffs filed both their motion to amend (Doc #329) and their second motion for conditional certification (Doc #330). In their motion to amend, Plaintiffs sought to add as new plaintiffs, Harning and Mejia. The proposed SAC also alleged, for the first time, a proposed collective FSLA class and sub-class consisting of APC-sponsored *au pairs*. Plaintiffs' second motion for conditional certification sought conditional certification of the alleged APC classes and approval of Harning and Mejia as class representatives, even before the Court had approved the filing of a SAC.[2]

C.  **APC's Request That Plaintiffs Stipulate To Referring Harning And Mejia's Claims To Arbitration; Plaintiffs' Failure To Respond**

On September 14, 2016, defense counsel sent to Plaintiffs' counsel a letter reminding them of the mandatory arbitration provisions to which Harning and Mejia are bound, and requesting that Plaintiffs' counsel agree to refer their claims in the proposed SAC to arbitration. Plaintiffs' counsel did not respond. (Maschler Dec. ¶ 8, Exh. 6).

---

[2] At the request of the parties, the Court convened an informal discovery conference on August 19, 2016. At this hearing Defendants requested a modified scheduling order that (1) coordinated the briefing on the two pending motions for conditional certification, (2) allowed time in the schedule for defendants to take the depositions of the proposed, new class representatives before opposing conditional certification, and (3) scheduled the briefing on the motion for leave to amend and the Court's ruling thereon to precede the briefing on the second motion for conditional certification. The Court declined to stagger the filing deadlines for the oppositions to the motion to amend the complaint and the second motion for conditional certification. It did order that the briefing in opposition to the first and second motions for conditional certification be coordinated and set a schedule that permitted Defendants to take the depositions of proposed collective class representatives before they had been approved as plaintiffs in the case. (*See* Doc #333). In accordance with the Court's Order, APC took the depositions of Harning and Jimenez on September 8 and 14, 2016, respectively -- before the Court had ruled on the pending motion to amend, and, thus, before the issue of whether the SAC violated the mandatory arbitration clauses in the APC Agreements was ripe. (Exhs. 7, 8 to Maschler Dec).

- 6 -

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 Filed 10/11/17 USDC Colorado pg 118
Case 1:14-cv-03074-CMA-KMT Document 131 Filed 11/10/16 Page 8 of 29
of 327

**D.    AuPairCare's Opposition To Motion For Conditional Certification**

In APC's Opposition to Plaintiffs' Second Motion for Conditional Collective Action Certification (Doc. # 360), APC again raised the issue of Harning's and Mejia's mandatory arbitration clauses, as a basis for denying that motion.  (*Id.* at 1, 6-8.) Harning's and Mejia's signed APC Agreements, which contain the subject mandatory arbitration clauses, were filed with the Court with APC's Opposition. (Doc. # 360-1, pp. 30-43).  As shown in APC's Opposition, because all members of the proposed APC classes were subject to the same mandatory arbitration provisions and thus are free to arbitrate any disputes arising from their APC Agreements, those Agreements preclude the maintenance of the proposed, collective action. (*See* Doc. # 360, at pp. 7-8; Doc. # 360-1, ¶ 4; Exhs. 1-4 to Doc. # 360-1, pp. 1-29).

## LEGAL ARGUMENT

### I.    THE LAW FAVORS ARBITRATION AND REQUIRES THE ENFORCEMENT OF VALID ARBITRATION AGREEMENTS

Both federal law and California law strongly favor the enforcement of arbitration provisions.  Regardless of which is applied here, the result must be the same:  the arbitration agreements signed by Harning and Mejia must be enforced, their claims referred to arbitration, and this action dismissed, or in the alternative, stayed as to them.

In general, the FAA applies to "a written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract…" 9 U.S.C. § 2.   The FAA's term "involving commerce" is interpreted broadly. *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). This case involves a J-1 visa program created by Congress and administered by the

- 7 -

Department of State ("DOS")  (*See* SAC Doc. # 395, ¶46: "The J-1 visa *au pair* program is one of several official J-1 visa 'cultural exchange' programs overseen and administered by the U.S. Department of State.")  Plaintiffs allege in the SAC that "[t]he conduct of the Sponsor Defendants, as described herein, substantially affected interstate and international commerce…" (*Id.* at ¶ 568).[3] The FAA applies to the claims in this case.

However, as noted above, the APC Agreements have California choice of law provisions. Therefore, we examine the enforceability of these mandatory arbitration agreements under both federal and California law.

As affirmed by the Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) ("*Concepcion*"), the FAA declares and embodies a liberal policy favoring the enforcement of arbitration provisions:   "A written provision in any ….contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or contraction… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. "Section 2 [of the FAA] is a Congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.  The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act."  *Moses H. Cone Memorial Hospital v.*

---

[3]*See also id.* at ¶ 578 (alleging wire fraud affecting interstate commerce as RICO predicate); ¶ 598 (Defendants "handled goods or materials that had been moved in or produced for interstate commerce…")

- 8 -

*Mercury Construction Corp.*, 460 U.S. 1, 24 (1983); *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (quoting *Moses H. Cone*). In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement or arbitration agreements. *See Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).

The Supreme Court has recognized that the FAA permits private parties to "trade [] the procedures…of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991); *see also Moses H. Cone*, 460 U.S. at 22 (the FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible").

Section 4 of the FAA provides that: "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

The courts' role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. (*See* 9 U.S.C. §§ 4; *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Hosam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). "Any doubt concerning the scope of arbitrable issues should be resolved

- 9 -

in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F. 3d 716, 719 (9th Cir 1999) (citing *Moses H. Cone*, 460 U.S. at 24-25); *Mortenson v. Bresnam Comm., LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) ("*Concepcion* crystalized the directive that the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions.") This strong presumption favoring arbitration "applies with even greater force" when a broad arbitration clause is at issue. *P&P Indus., Inc. v. Sutter Corp.*, 179 F. 3d 861, 871 (10th Cir. 1999). The APC Arbitration Agreement is particularly broad and inclusive.

"California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Foundation Health Psych Care Services, Inc.*, 24 Cal. 4th 83, 97 (2000). "There is a strong public policy in favor or arbitration agreements." *Blake v. Ecker*, 93 Cal.App.4th 728, 744 (2001). "The strong public policy of this state favoring arbitration as a means of dispute resolution requires courts to indulge every intendment to give effect to such proceedings." *Martinez v. Scott Specialty Gases, Inc.*, 83 Cal.App.4[th] 1236, 1249 (2000), citing *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992); *see also Coast Plaza Doctors Hospital v. Blue Cross of California*, 83 Cal.App.4[th] 677, 686 (2000) ("California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration"); *Cione v. Foresters Equity Serv. Inc.*, 58 Cal.App.4[th] 625, 641 (1997) ("A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted unless it can be said with positive assurance that the

- 10 -

Case No. 1:14-cv-03074-CMA-KMT Document 225-1 filed 10/11/16 USDC Colorado pg 122
Case 1:14-cv-03074-CMA-KMT Document 225-1 filed 11/10/16 USDC Colorado Page 22 of 25
of 327

arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") [4]

## II. THE AUPAIRCARE ARBITRATION AGREEMENTS ARE ENFORCEABLE AND COVER THE SUBJECT MATTER OF THIS CASE

### A. The APC Agreements Are Valid

"Whether the parties agree to arbitrate 'is a threshold matter,'" *Avedon Engineering, Inc. v. Seatex*, 126 F. 3rd 1279, 1287 (10th Cir. 1997), governed by state law contract principles. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995).[5] Under California law, arbitration can be denied only where a party proves a defense to enforcement of the agreement, such as unconscionability. *E.g., Hoffman v. Citibank*, N.A., 546 F.3d 1078, 1082 (9th Cir. 2008). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Id.*; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 235 (2012).

Plaintiffs bear the burden of proving that the agreement is *both* procedurally and substantively unconscionable. *Pinnacle Museum*, 55 Cal. 4th at 247; *Armendariz*, 24 Cal. 4th at 89 ("no matter how heavily one side of the scale tips, both procedural and substantive unconscionability are required for a court to hold a arbitration agreement

---

[4] The California counterpart to the FAA, Cal.Code of Civ. Proc. § 1281.2, states that on petition of a party to an arbitration agreement , if the court determines that an agreement to arbitrate a controversy exists and there are no grounds for waiver or revocation, then it "shall order the petitioner and the respondent to arbitrate the controversy." This language is mandatory, not precatory." *Post Plaza Doctors Hospital*, 83 Cal.App.4th at 687 (2002).

[5] While generally courts should apply "ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute," 465 F.3d 470 (10th Cir. 2006), the state law contract analysis must also give "due regard...to the federal policy favoring arbitration." *Volt Info. Sciences Inc. v. Bd. of Trustees*, 489, 475-76 (1989).

- 11 -

unenforceable."). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise." *Pinnacle Museum*, 55 Cal. 4[th] at 246; *Kilgore v. KeyBank Nat'l Ass'n*, 673 F. 3d 947, 964 (9th Cir. 2012). Substantive unconscionability focuses on whether the terms of the contract "shock the conscience," *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4[th] 1224, 1245 (2007), or a person would have to be "under delusion" to accept. *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4[th] 205, 214-215 (1994). *See also Pinnacle Museum*, 55 Cal. 4[th] at 246.

Under California's "sliding scale" approach to unconscionability, if "the procedural unconscionability, although extant, [is] not great," the party attacking the term must provide "a greater degree of substantive unconscionability." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng., Inc.*, 89 Cal. App. 4th 1042, 1057 (2001); *Armendariz*, 24 Cal. 4th at 114.

### 1. APC Arbitration Clause is not procedurally unconscionable.

As noted, Harning and Mejia have testified they read and understood the AuPair Agreements before signing them.[6] Harning signed up with APC for two *au pair* engagements. She was well-acquainted with the APC Agreement.

---

[6] Indeed, their Agreements state immediately above their signature lines, as follows:

Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English.
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety.
- I accept the terms of this entire Agreement and understand that is legally binding. .
- I have retained a copy of this Agreement for my own records.

(McNamara Dec., Exh. 1, p. 6, ¶ 79; Exh. 2, p. 6, ¶ 82).]

Mejia, before signing her au pair agreement, consulted with other au pairs and with Interexchange, the agency in Columbia that guided her through the application process. (Doc. #330-1, p. 42, ¶¶ 4-5; Maschler Dec., Exh. 8, pp. 87, 96-97, 99-100, 107, 109, 116).

Harning and Mejia were free to pursue *au pair* engagements through other sponsoring agencies, and in fact considered other such sponsors before deciding to sign on with APC. (Maschler Dec., Exh. 7, p. 171; Exh. 8, p. 116-19; Doc. #330-1, p. 42, ¶3). They were under no duress or compulsion to sign any agreement with APC.

The mandatory arbitration provisions of the APC Agreement are clear and straightforward. There is no effort to surprise or avoid detection. The clear intent of these provisions is to apprise the *au pair* of her right to arbitrate and the meaning of these arbitration terms. There is no procedural unconscionability here. *See Robison v. City of Manteca*, 78 Cal. App. 4th 452, 459 (2000) (upholding arbitration clause where there is no lack of disclosure of material contract terms or "unfair surprise"); *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1165 (2004) (the fact that a form contract is used does not make it procedurally unconscionable); *Cardenas v. AmeriCredit Fin. Serv. Inc.*, 2010 WL 3619851,*4 (N.D. Cal. Sept. 13, 2010) (same.)

**2. The Arbitration Clause is not substantively unconscionable.**

Because the APC Arbitration Agreement is not procedurally unconscionable, the Court need not reach the issue of substantive unconscionability. *Kilgore*, 473 F. 3rd 964; *Armendariz*, 24 Cal. 4th at 14 (both must be present for a court to refuse to enforce an agreement). Even if the Court reaches this issue, Plaintiffs cannot meet their burden

- 13 -

of proving substantive unconscionability. There is nothing unfair, "shocking to the conscience" or "one-sided" about the Arbitration Agreement. *First*, it is bilateral – both the *au pair* and APC may elect to arbitrate a dispute arising from the Agreement. *Second*, it provides for neutral arbitrators. *Third*, it provides for full and fair discovery as sanctioned by Cal. Code Civ. Proc. §§1282.6, 1283, and 123.05. *Fourth,* it provides that if the arbitration provision is deemed void or inapplicable, the *au pair* will have recourse in court. *Fifth*, it does not require the *au pair* to bear any unreasonable arbitration costs or expenses. *Sixth*, there is no limitation on the types of relief recoverable in arbitration. In short, this arbitration agreement meets all of the requirements of California law. *Armendariz*, 24 Cal.App.4th 102-13, 17, 124-25; *Cheng-Canindin v. Renaissance Hotel Assoc.*, 50 Cal. App. 4th 676, 684-85 (1996).[7]

Applying the standards discussed above, Plaintiffs cannot demonstrate substantive unconscionability. The APC Arbitration Agreement is valid, and should be enforced according to its terms.

B.     **The Claims In The SAC Are Covered By The APC Agreement**

As noted above, the Agreement encompasses "any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the

---

[7] *Armendariz*, which sets forth these arbitration criteria, applies specifically to *employment* agreements. The *au pairs* sponsored by AuPairCare are not employees. (*See* Agreement, p. 1, ¶ 9 ("Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.") Plaintiffs have proffered a theory under which AuPairCare is a "joint employer" of *au pairs*. APC vigorously disputes that theory. Leaving aside the merits, it is questionable whether *Armendariz* survived the Supreme Court's decision in *Concepcion*, which limits a state's ability to impose conditions on the enforceability of arbitration agreements that effectively discourage arbitration, such as applying more stringent unconscionability standards than those applicable to contracts in general. *See Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1137 (2012), ("*Concepcion* adopts a sweeping rule of FAA preemption. Under *Concepcion*, the FAA preempts any rule or policy rooted in state law that subjects agreements to arbitrate particular kinds of claims to more stringent standards of enforceability than contracts generally.")

- 14 -

relationship of the parties." (McNamara Dec.,Exh. 1, ¶77, Exh.2, ¶80). Courts interpreting such expansive language has given it a broad construction. *E.g., Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F. 3d 1288, 1289-92 (10th Cir. 2004); *ARW Exploration Corp. v. Aguirre*, 45 F. 3d 1455, 1461-62 (10th Cir. 1995).[8] Here, as noted, Plaintiffs in the SAC predicate their claims against APC on its Au Pair Agreement (Doc. #395, ¶¶ 192, 213, 347-350; *see also id.* at ¶¶ 519, 551, 566, 575, 582, 585, 588, 594, 605, 620 [incorporating by reference all previous paragraphs of the SAC]). This case and controversy, as alleged in the SAC, are clearly encompassed by APC's Arbitration Agreement. The Agreement should be enforced.

## CONCLUSION

For the foregoing reasons, the Court should grant AuPairCare's motion to compel arbitration, and dismiss this action in its entirety as to them. In the alternative, it should stay this action.

Respectfully submitted,

*s/Thomas B. Quinn*
Thomas B. Quinn
GORDON & REES LLP
555 17th Street, Suite 3400
Denver, Colorado 80202

*Attorneys for Defendant
AuPairCare, Inc.*

---

[8] Thus, such arbitration agreements extend to tort claims arising from contractual relationships, *see P&P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (reasoning that "arising out of and relating to" language includes all claims that "touch matters" covered by the parties' contract, including tort claims), and anti-trust disputes. *See Coors Brewing Co. v. Molson Breweries*, 51 F. 3d 1511 (10th Cir. 1995).

- 15 -

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on November 10, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
BOIES SCHILLER & FLEXNER, LLP
llouis@bsfllp.com
smccawley@bsfllp.com
smcelroy@bsfllp.com
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com

        *and*

Alexander N. Hood
TOWARDS JUSTICE – DENVER
alex@towardsjustice.org
**Attorneys for Plaintiffs**


Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
Joseph H. Hunt
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
jhunt@shermanhoward.com
**Attorneys for Defendant InterExchange, Inc.**


William J. Kelly, III
Chanda M. Feldkamp
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com
**Attorneys for Defendant USAuPair, Inc.**

Meshach Y. Rhoades
Martin J. Estevao
ARMSTRONG TEASDALE, LLP
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
**Attorneys for Defendant GreatAuPair, LLC**

Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
bogdane@hotmail.com
**Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair**

David B. Meschke
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
dmeschke@bhfs.com
mfitzgerald@bhfs.com
**Attorneys for Defendant EurAupair InterCultural Child Care Programs**

James E. Hartley
Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART, LLP
jhartley@hollandhart.com
aahubbard@hollandhart.com
jsbender@hollandhart.com
**Attorneys for Defendant Cultural Homestay International**

Brian A. Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

   *and*

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
**Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair**

- - 17 - -

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
*Attorney for Defendant Agent Au Pair*

Lawrence L. Lee
Susan M. Schaecher
FISHER & PHILLIPS, LLP
llee@laborlawyers.com
sschaecher@laborlawyers.com

and

John B. Fulfree
Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
PUTNEY, TWOMBLY, HALL & HIRSON, LLP
jfulfree@putneylaw.com
jcartafalsa@putneylaw.com, jbc54@cornell.edu
rtucker@putneylaw.com, robert.m.tucker1@gmail.com
smacri@putneylaw.com

*Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation;
American Institute for Foreign Study d/b/a Au Pair in America*


Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
CHOATE, HALL & STEWART, LLP
joan.lukey@choate.com
rbuchanan@choate.com
mgass@choate.com
jwolosz@choate.com
lkruzer@choate.com

*and*

- - 18 - -

Diane R. Hazel
James M. Lyons
Jessica L. Fuller
LEWIS ROCA ROTHGERBER CHRISTIE LLP
dhazel@lrrc.com
jlyons@lrrc.com
jfuller@lrrc.com
*Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair*


Christian D. Hammond
DUFFORD & BROWN, P.C.
chammond@duffordbrown.com

    *and*

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com
*Attorneys for Defendants A.P.E.X. American*
*Professional Exchange, LLC d/b/a*
*ProAuPair;*
*20/20 Care Exchange, Inc.*
*d/b/a The International Au Pair Exchange*


Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
BOIES SCHILLER & FLEXNER, LLP
llouis@bsfllp.com
smccawley@bsfllp.com
smcelroy@bsfllp.com
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com

    *and*

- - 19 - -

Alexander N. Hood
TOWARDS JUSTICE – DENVER
alex@towardsjustice.org
*Attorneys for Plaintiffs*


Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
Joseph H. Hunt
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
jhunt@shermanhoward.com
*Attorneys for Defendant InterExchange, Inc.*


William J. Kelly, III
Chanda M. Feldkamp
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com
*Attorneys for Defendant USAuPair, Inc.*


Meshach Y. Rhoades
Martin J. Estevao
ARMSTRONG TEASDALE, LLP
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
*Attorneys for Defendant GreatAuPair, LLC*


Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
bogdane@hotmail.com
*Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair*


David B. Meschke
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
dmeschke@bhfs.com
mfitzgerald@bhfs.com
*Attorneys for Defendant EurAupair InterCultural Child Care Programs*

- - 20 - -

Case No. 1:14-cv-03074-CMA-KMT Document 725-31 filed 10/11/17 USDC Colorado pg 132
Case 1:14-cv-03074-CMA-KMT Document 431 filed 11/10/16 USDC Colorado page 22 of 25
of 327

James E. Hartley
Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART, LLP
jhartley@hollandhart.com
aahubbard@hollandhart.com
jsbender@hollandhart.com
**Attorneys for Defendant Cultural Homestay International**


Brian A. Birenbach
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

     *and*

Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
**Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair**


Kathryn A. Reilly
Grace A. Fox
WHEELER TRIGG O'DONNELL, LLP
reilly@wtotrial.com
fox@wtotrial.com
**Attorney for Defendant Agent Au Pair**

Lawrence L. Lee
Susan M. Schaecher
FISHER & PHILLIPS, LLP
llee@laborlawyers.com
sschaecher@laborlawyers.com

and

John B. Fulfree
Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
PUTNEY, TWOMBLY, HALL & HIRSON, LLP
jfulfree@putneylaw.com
jcartafalsa@putneylaw.com, jbc54@cornell.edu
rtucker@putneylaw.com, robert.m.tucker1@gmail.com
smacri@putneylaw.com


- - 21 - -

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/17 USDC Colorado pg 133
Case 1:14-cv-03074-CMA-KMT Document 431 Filed 11/10/16 Page 25 of 25
of 327

*Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation;
American Institute for Foreign Study d/b/a Au Pair in America*


Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
CHOATE, HALL & STEWART, LLP
joan.lukey@choate.com
rbuchanan@choate.com
mgass@choate.com
jwolosz@choate.com
lkruzer@choate.com


    *and*


Diane R. Hazel
James M. Lyons
Jessica L. Fuller
LEWIS ROCA ROTHGERBER CHRISTIE LLP
dhazel@lrrc.com
jlyons@lrrc.com
jfuller@lrrc.com
*Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair*


Christian D. Hammond
DUFFORD & BROWN, P.C.
chammond@duffordbrown.com

    *and*

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com
*Attorneys for Defendants A.P.E.X. American
Professional Exchange, LLC d/b/a
ProAuPair;
20/20 Care Exchange, Inc.
d/b/a The International Au Pair Exchange*


/s/ Fran Aragon Eaves
For Gordon & Rees LLP

- - 22 - -

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/16 USDC Colorado pg 134
Case 1:14-cv-03074-CMA-KMT Document 187-31 Filed 11/10/16 Page 24 of 25
of 327

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

     Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

     Defendants.

---

**CERTIFICATE OF COMPLIANCE WITH D.C. COLO. LCivR. 7.1 (a)**

---

I, Brian P. Maschler, certify as follows:

    1,    I am an attorney at Gordon & Rees, LLP, counsel of record for Defendant

AuPairCare, Inc. ("APC").

    2.    Before filing APC's Motion to Compel Arbitration and Dismiss or,

Alternatively, Stay Lawsuit, counsel for APC conferred with Plaintiffs' counsel to resolve

the matters raised in this Motion. Specifically, we requested that Plaintiffs stipulate to referring this case, as against Plaintiffs Juliane Harning and Laura Mejia Jimenez, to arbitration.

3. Thus, on September 14, 2016, we sent to Plaintiffs' counsel a letter (Exhibit 6 to the Maschler Declaration, filed herewith) requesting that Plaintiffs so stipulate. Plaintiffs' counsel did not respond to that letter.

4 On November 9, 2016, I sent to Plaintiff's counsel, Lauren Louis, an email advising Plaintiffs of APC's intention to file the instant motion and inquiring whether Plaintiffs would agree to arbitration. I stated that if Plaintiffs' counsel did not notify APC counsel that it would stipulate to arbitration and dismiss or stay this lawsuit, we would inform the Court that Plaintiffs are opposed.

5. Plaintiffs' counsel did not respond to this email. They oppose this motion.

I hereby certify that the foregoing is true and correct.

Dated: November 10, 2016

/s/ Brian P. Maschler
Brian P. Maschler

Case No. 1:14-cv-03074-CMA-KMT   Document 725-1   filed 10/11/17   USDC Colorado   pg 136
Case 1:14-cv-03074-CMA-KMT   Document 431-1   Filed 11/10/16   Page 1 of 20
of 327

# EXHIBIT A

Case No. 1:14-cv-03074-CMA-KMT Document 2543-1 filed 11/17/16 USDC Colorado pg 137
Case 1:14-cv-03074-CMA-KMT Document 531 Filed 11/10/16 Page 2 of 20
of 327

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT
JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

_____

**DECLARATION OF SARAH V. McNAMARA IN SUPPORT OF DEFENDANT
AUPAIRCARE, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS OR,
ALTERNATIVELY, STAY LAWSUIT (RESPONSE TO SECOND AMENDED
COMPLAINT, DOC. # 395)**

_____


1.    My name is Sarah V. McNamara.  I am over the age of 18.  I have personal

knowledge of the matters set forth in this Declaration, except matters stated on

information and belief, and as to those matters, I am informed and believe they are true.

1

If called as a witness, I could and would testify competently to the matters set forth in this declaration.

2.      Juliane Harning signed an Au Pair Agreement with AuPairCare in or about August 2013.  A true and correct copy of this Agreement is attached as **Exhibit 1**.

3.      Laura Mejia Jimenez signed an Au Pair Agreement with AuPairCare in 2014.  A true and correct copy of this Agreement is attached as **Exhibit 2.**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 10th day of November, 2016, in San Francisco, California.


_____*/s/  Sarah  V.  McNamara*
                     Sarah V. McNamara

# Exhibit 1



# AU PAIR AGREEMENT

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____ (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

5. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

6. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

7. Au Pair understands that they cannot be married, engaged to be married or have children of their own and participate in AuPairCare's au pair program.

8. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

9. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee to Originating Exchange Organization.

10. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

11. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

12. Au Pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

13. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

14. Au pair agrees to pay a $300.00 USD cancellation fee, plus the actual cost of international and/or domestic airfare (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

15. Au pair agrees to pay a $300.00 USD change fee and any applicable airfare penalties, in the event he/she requests to change their arrival date.

### D. Responsibilities

16. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

17. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per

rev 02/11/2013

Page 1 of 6

Au Pair's Initials _____

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY  APC 000490



month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

20. Au Pair is hereby advised and understands that if there is an **infant under the age of two years old** in the household, the au pair must **have 200 hours of documented experience working with children under the age of two**. Such documented experience shall be verified by AuPairCare prior to au pair placement.

21. Au Pair understands that in the event there is an **infant under the age of three months** in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.

22. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

23. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

24. If Au Pair is expected or permitted to drive the family car(s), Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense. Failure to do so may result in termination from the program.

25. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

26. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

27. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

29. Au Pair agrees to exercise sound judgment and caution while participating in internet-based communities, dating and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

30. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program. Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

31. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

32. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

rev 2/11/2013

Au Pair's Initials_____

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY  APC 000491

# AuPairCare

33. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be implemented in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child(ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

### F. Compensation and Financial Responsibility

34. Au Pair will receive room and board in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

35. Au Pair will receive a weekly stipend in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

36. Au Pair will receive two calendar weeks paid vacation (10-days), to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

37. Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.

38. Au Pair will receive subsidy of educational costs from the Host Family as outlined in the "Training and Education Requirements" section of this document.

39. Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

40. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore Au Pair is required to file U.S. individual tax returns, even if no taxes are due.

41. Au Pair is responsible for complying with any Federal or state labor and/or income tax laws that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

42. Au Pair is wholly responsible for personal expenses and management of personal finances. AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

43. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said

coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

44. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

45. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

46. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

47. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

48. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY  APC 000492

142

AuPairCare

49. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

50. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

51. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

52. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project as defined by AuPairCare.

53. Au Pair understands that all 12-month program Au Pairs are required to attend courses of study at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

54. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

55. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

56. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

57. Au Pair understands that Extension Au Pairs are required to repeat the educational component of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

### J. Problem Resolution and Placement Changes

58. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

59. Au Pair is hereby advised and understands that AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

60. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change. If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

61. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.

62. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, Au Pair agrees to cooperate with AuPairCare during the entire re-matching process, including but not limited to ensuring

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY  APC 000493

**AuPairCare**

that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family may be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

63.  If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

64.  If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

65.  In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.

66.  AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

67.  Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

68.  In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

<u>K. Other Terms and Conditions</u>

69.  Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

70.  Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

71.  Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

72.  Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

73.  Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

74.  Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

75.  Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

rev 2/11/2013

Au Pair's Initials_____

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY  APC 000494

# AuPairCare

76. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

77. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party.

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction

of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

78. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

79. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

**ENTIRE AGREEMENT**
Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
- I accept the terms of this entire Agreement and understand that it is legally binding
- I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
- No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
- I have retained a copy of this Agreement for my own records

Au Pair Full Name (Signature): _____

Au Pair Full Name (Print): _____          Date : _____

Month/Day/Year

rev 02/11/2013                                   **Page 6 of 6**                          Au Pair's Initials____

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY  APC 000495

Case No. 1:14-cv-02074-CMA-KMT    Document 725-1    filed 10/11/17    USDC Colorado    pg 146
Case 1:14-cv-03074-CMA-KMT    Document 431-2    Filed 11/10/16    Page 1 of 7
of 327

# Exhibit 2



## 2014 AU PAIR AGREEMENT

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____ (Country) _____ ". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://j1visa.state.gov/programs/au-pair

3. Au Pair understands their rights as visa participant under the Wilberforce Trafficking Victims Act. Said rights and resources for can be found by visiting: https://travel.state.gov/pdf/Pamphlet-Order.pdf

4. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

5. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

6. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

7. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

8. Au Pair understands that they cannot be married, engaged to be married or have children of their own and participate in AuPairCare's au pair program.

9. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

10. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee to Originating Exchange Organization.

11. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

12. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

13. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

14. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

14. Au pair agrees to pay a $300.00 USD cancellation fee, plus the actual cost of international and/or domestic airfare (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

15. Au pair agrees to pay a $300.00 USD change fee and any applicable airfare penalties, in the event he/she requests to change their arrival date.

### D. Responsibilities

16. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

rev 12/18/2013          Page 1 of 6          Au Pair's Initials _____

HIGHLY CONFIDENTIAL ATTORNEY EYES ONLY
http://casper.aupaircare.com/apc/imageFrame.cfm?id=968720          9/9/2016

**AuPairCare**

17. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

20. Au Pair is hereby advised and understands that if there is an infant under the age of two years old in the household, the au pair must have 200 hours of documented experience working with children under the age of two. Such documented experience shall be verified by AuPairCare prior to au pair placement.

21. Au Pair understands that in the event there is an infant under the age of three months in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.

22. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

23. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

24. If Au Pair is expected or permitted to drive the family car(s), Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense. Failure to do so may result in termination from the program.

25. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

26. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

27. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

29. Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities, dating and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

30. Au Pair agrees not to send, receive or view inappropriate content (sexual or violent) in the host family home, or outside of the home using the host family's equipment (i.e. computer, cell phone, handheld device, tablet, DVD player, television, etc.) by means of, but not limited to: live video, photos, pre-recorded videos, instant messages, sexting/texting, social media posts/updates. Failure to adhere to this agreement may result in immediate termination from the program.

31. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program. Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of the legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

32. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

33. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this

rev 12/18/2013

Au Pair's Initials_____

HIGHLY CONFIDENTIAL ATTORNEY EYES ONLY

APC 000592

148



Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

34. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be implemented in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child(ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

## F. Compensation and Financial Responsibility

35. **Au Pair will receive room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

36. **Au Pair will receive a weekly stipend** in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

37. **Au Pair will receive two calendar weeks paid vacation (10-days),** to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

38. Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.

39. **Au Pair will receive subsidy of educational costs** from the Host Family as outlined in the "Training and Education Requirements" section of this document.

40. Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

41. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore **Au Pair is required to file U.S. individual tax returns, even if no taxes are due.**

42. **Au Pair is responsible for complying with any Federal or state labor and/or income tax laws** that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

43. **Au Pair is wholly responsible for personal expenses and management of personal finances.** AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

## G. Travel and Accident Insurance

44. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website: http://www.aupaircare.com/current-au-pair/insurance. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes. *Note: This section [43] does not apply to au pairs recruited by Originated Exchange Organization; STS Student Travel Schools AB. STS Travel School AB au pairs should refer to section [44].*

45. If recruited by Originating Organization, STS Student Travel Schools AB, Au Pair will receive travel and accident insurance provided by STS Student Travel Schools AB through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed by visiting www.falck.com/travelcare. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

46. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

47. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

48. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

HIGHLY CONFIDENTIAL ATTORNEY EYES ONLY

APC 000593

149



49. **If Au Pair's medical condition changes (including pregnancy),** between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

50. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

51. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

52. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

53. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

54. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project** as defined by AuPairCare.

55. **Au Pair understands that all 12-month program Au Pairs are required to attend courses of study** at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

56. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

57. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

58. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

59. Au Pair understands that **Extension Au Pairs are required to repeat the educational component** of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

60. Au Pair is hereby advised that by extending their program they must complete the new program terms in order to be eligible for a return flight home arranged by AuPairCare. In the event that the au pair chooses to leave the program early, he/she will be responsible for booking and paying for their own return flight home.

### J. Problem Resolution and Placement Changes

61. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

62. Au Pair is hereby advised and understands that **AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered;** however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

Page 4 of 6

Au Pair's Initials_____

HIGHLY CONFIDENTIAL ATTORNEY EYES ONLY

APC 000594

150

# AuPairCare

63. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.** If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

64. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. **Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.**

65. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, **Au Pair agrees to cooperate with AuPairCare during the entire re-matching process**, including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

66. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

67. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

68. In the event Au Pair does not successfully complete their first year program, and extension program, if applicable, Au Pair is responsible for his/her return travel expenses.

69. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

70. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

71. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

## K. Other Terms and Conditions

72. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

73. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

74. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

75. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

76. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

77. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

78. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

HIGHLY CONFIDENTIAL ATTORNEY EYES ONLY

APC 000595

151

# AuPairCare

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and;

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

79.   This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

80.   The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party.

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration.

81.   If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

82.   An electronic or facsimile signature on this Agreement shall be considered the same as an original.

**ENTIRE AGREEMENT**
Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
- I accept the terms of this entire Agreement and understand that it is legally binding
- I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
- No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
- I have retained a copy of this Agreement for my own records

Au Pair Full Name (Signature): _____

Au Pair Full Name (Print): _____        Date : _____
                                                                              Month/Day/Year

HIGHLY CONFIDENTIAL ATTORNEY EYES ONLY
http://casper.aupaircare.com/apc/imageFrame.cfm?id=968729

APC 000596

152

9/9/2016

Case No. 1:14-cv-03074-CMA-KMT   Document 725-1   filed 10/11/17   USDC Colorado   pg 153
Case 1:14-cv-03074-CMA-KMT   Document 431-8   Filed 11/10/16   Page 1 of 8
of 327

# EXHIBIT B

Case No. 1:14-cv-03074-CMA-KMT Document 2431-8 filed 11/10/16 USDC Colorado pg 154
Case 1:14-cv-03074-CMA-KMT Document 385-1 Filed 11/10/16 Page 2 of 78
of 327

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT
JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

_____

**DECLARATION OF BRIAN P. MASCHLER IN SUPPORT OF DEFENDANT
AUPAIRCARE, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS OR,
ALTERNATIVELY, STAY LAWSUIT (RESPONSE TO SECOND AMENDED
COMPLAINT, DOC. # 395)**

_____

I, Brian P. Maschler, declare as follows:

1.    I am a partner in the law firm of Gordon & Rees, LLP, counsel of record for

Defendant AuPairCare, Inc. ("AuPairCare") in the above-caption matter.  I am over the

age of 18.  I have personal knowledge of the matters set forth in this Declaration, except

1

those stated on information and belief, and as to those matters, I am informed and believe they are true.  If called as a witness, I could and would testify competently to the matters set forth in this declaration.

2.      The First Amended Complaint filed in this action (Doc. No. 101) did not list as plaintiffs any current or former au pairs at AuPairCare, and did not allege any claim under the Fair Labor Standards Act ("FLSA") against AurPairCare.   The Second Amended Complaint, which adds as plaintiffs Juliane Harnig ("Harning") and Laura Mejia Jimenez ("Mejia") and adds AuPairCare as a defendant in the FLSA count, is the first version of the pleading that identifies any former AuPairCare-sponsored au pair.

3.      AuPairCare's Agreement with the au pairs it sponsors contains a mandatory arbitration provision as well as a forum selection clause specifying that any court action arising from the au pair relationship be venued in San Francisco, California. To ensure that this defense of mandatory arbitration was preserved, in AuPairCare's Answer to the First Amended Complaint (Doc. No. 286), it stated in response to Paragraph 16, as follows: "Defendant AuPairCare asserts that in the event the First Amended complaint is amended, AuPairCare expressly reserves the right to challenge the Court's jurisdiction on the grounds that claims alleged…are subject to mandatory arbitration." (Doc. No. 286 at p. 3)  AuPairCare also asserted the affirmative defense that "[a]ny alleged disputes between this Defendant and the au pairs it has sponsored are subject to mandatory arbitration provisions."   (*Id.* at p. 91, "Second Defense, MANDATORY ARBITRATION").  A true and correct copy of excerpts from AuPairCare's Answer to Frist Amended Complaint is attached as **Exhibit 1**.

4.      In AuPairCare's responses to Plaintiffs' First Request for Production of Documents and First Set of Interrogatories, AuPairCare again preserved its objections regarding the arbitration bar.  True and correct copies of AuPairCare's Responses to Plaintiffs' First Request for Production of Documents and its Responses to Plaintiffs' First Set of Interrogatories are attached as **Exhibits 2** and **3**, respectively.

5.      In response to Plaintiffs' First Request for Production on March 3, 2016, AuPairCare produced copies of the Au Pair Agreements (for 2010-2015) which contain the subject mandatory arbitration and forum selection provisions.  (True and correct copies of those documents produced to Plaintiffs are attached as **Exhibit 4**).

6.      Plaintiffs' counsel, having been apprised of the AuPairCare mandatory arbitration provisions, then propounded, on or about May 7, 2016, a Second Request for Production upon AuPairCare that specifically requested "all arbitration agreements that you contend apply to these claims."  In AuPairCare's response, dated June 6, 2016, it specifically referred Plaintiffs to the AuPairCare Agreement previously produced (Bates-numbered APC 000254-APC 000298).  In addition, in its General Objections (at p. 2) and its Response to Request for Production No. 21 (at pp. 3-4), AuPairCare again asserted the objection of the mandatory arbitration bar.  A true and correct copy of AuPairCare's Answer to Plaintiffs' Second Request for Production is attached as **Exhibit 5**.

7.      Thus, Plaintiffs were on notice of the existence of this mandatory arbitration provision nearly four (4) months before filing their motion for leave to file a second amended complaint and their second motion for conditional collective action certification.

Case No. 1:14-cv-03074-CMA-KMT Document 521-13 filed 10/11/17 USDC Colorado pg 157
of 327
Case 1:14-cv-03074-CMA-KMT Document 254-1 filed 11/10/16 USDC Colorado Page 5 of 78

8.  On September 14, 2016, I caused to be sent to Plaintiffs' counsel a letter in which we reminded them of the mandatory arbitration provisions to which proposed plaintiffs Harning and Mejia are bound, and requested that Plaintiffs' counsel agree to refer their claims to arbitration and dismiss or stay their claims proposed in this action. A true and correct copy of this letter is attached as **Exhibit 6**.

9.  As of the date of this declaration, we have received no response to this letter from Plaintiffs' counsel.

10. Attached as **Exhibit 7** is a true and correct copy of excerpts from the deposition of Juilane Harning, taken on September 8, 2016.

11. Attached as **Exhibit 8** is a true and correct copy of excerpts from the transcript of the deposition of Laura Mejia Jimenez, taken on September 14, 2016.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 10th day of November, 2016, in San Francisco, California.


_____     */s/  Brian  P.  Maschler*_____
Brian P. Maschler

Case No. 1:14-cv-03074-CMA-KMT   Document 725-1   filed 10/11/17   USDC Colorado   pg 158
Case 1:14-cv-03074-CMA-KMT   Document 481-8   Filed 11/10/16   Page 6 of 78
of 327

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

      Defendants.

_____

**ANSWER TO FIRST AMENDED COMPLAINT OF DEFENDANT AUPAIRCARE, INC.**
_____

      Defendant AuPairCare, Inc. (AuPairCare), by and through its counsel of record, hereby answers and defends the First Amended Complaint (Doc. 101) pursuant to Fed.R.Civ.P. 8 and 12, denying each and every allegation not specifically admitted, and, without assuming any burden of proof that otherwise would not be placed on AuPairCare, averring separate defenses as follows:

## INTRODUCTORY STATEMENT

1.      Defendant AuPairCare denies the allegations of paragraph ("¶") 1 of the First Amended Complaint.

2.      Defendant AuPairCare denies the allegations of ¶ 2 of the First Amended Complaint.

3.      Defendant AuPairCare denies the allegations of ¶ 3 of the First Amended Complaint.

4.      Defendant AuPairCare denies the allegations of ¶ 4 of the First Amended Complaint.

5.      Defendant AuPairCare denies the allegations of ¶ 5 of the First Amended Complaint.

6.      Defendant AuPairCare denies the allegations of ¶ 6 of the First Amended Complaint.

7.      Defendant AuPairCare denies the allegations of ¶ 7 of the First Amended Complaint.

8.      Defendant AuPairCare denies the allegations of ¶ 8 the First Amended Complaint.

9.      Defendant AuPairCare denies the allegations of ¶ 9 of the First Amended Complaint.

10.     Defendant AuPairCare denies the allegations of ¶ 10 of the First Amended Complaint.

11.     Defendant AuPairCare denies the allegations of ¶ 11 of the First Amended Complaint.

12.     Defendant AuPairCare denies the allegations of ¶ 12 of the First Amended Complaint.

## NATURE OF THE ACTION

13.     Although ¶ 13 of the First Amended Complaint does not appear to contain any factual allegations, to the extent that ¶ 13 contains factual allegations, Defendant AuPairCare denies the allegations of ¶ 13 of the First Amended Complaint.

14.     Although ¶ 14 of the First Amended Complaint does not appear to contain any factual allegations, to the extent that ¶ 14 contains factual allegations, Defendant AuPairCare denies the allegations of ¶ 14 of the First Amended Complaint.

15.     Although ¶ 15 of the First Amended Complaint does not appear to contain any factual allegations, to the extent that ¶ 15 contains factual allegations, Defendant AuPairCare denies the allegations of ¶ 15 of the First Amended Complaint.

## JURISDICTION

16.     Defendant AuPairCare admits the Court currently has jurisdiction over the claim brought under Sherman Act, 15 U.S.C. § 1.   However, Defendant AuPairCare asserts that in the event the First Amended Complaint is amended, AuPairCare expressly reserves the right to challenge the Court's jurisdiction on the grounds that claims alleged herein are subject to mandatory arbitration.

17.     Defendant AuPairCare denies the allegations of ¶ 17 of the First Amended Complaint.

The First Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
MANDATORY ARBITRATION

Any alleged disputes between this Defendant and the au pairs it has sponsored are subject to mandatory arbitration provisions.

## THIRD DEFENSE
NO DUTY

This Defendant had no duty or obligation to the Plaintiffs under the circumstances forming the basis for the First Amended Complaint and no other duty or obligation on the part of this Defendant exists as a matter of law.

## FOURTH DEFENSE
LACK OF STANDING TO SUE

Plaintiffs lack standing to sue on all or a portion of the claims for relief asserted in the First Amended Complaint, and in particular but without limitation, lack antitrust standing.

## FIFTH DEFENSE
REAL PARTY IN INTEREST

Plaintiffs are not the real parties in interest to prosecute all or a portion of the claims for relief asserted in the First Amended Complaint.

## SIXTH DEFENSE
NO ANTITRUST INJURY

Plaintiffs' claims are barred, in whole or in part, because plaintiffs have not suffered antitrust injury proximately caused by the conduct of CHI and/or have not

- 91 -

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/17 USDC Colorado pg 163
Case 1:14-cv-03074-CMA-KMT Document 431-5 Filed 11/10/16 Page 11 of 78
of 327

# Exhibit 2

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

      Defendants.

---

**DEFENDANT AUPAIRCARE, INC.'S ANSWERS
TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION**

---

      Defendant AuPairCare, Inc. ("Defendant," "AuPairCare" or "Responding Party"), by counsel, Gordon & Rees LLP, submits the following response to Plaintiffs' First Requests for Production of Documents pursuant to Fed.R.Civ.P. 34:

**GENERAL OBJECTIONS**

      Defendant makes the following general objections, to which each of the

responses set forth below is subject:

A.      Defendant objects to these requests on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.   Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.   <u>AuPairCare expressly reserves the right to move to dismiss this action and/or compel arbitration.   Nothing in these responses or objections may be deemed a waiver of that right.</u>

B.      Defendant objects to Plaintiffs' instructions to the extent they require acts inconsistent with the Federal Rules of Civil Procedure or the Local Rules of this Court.

C.      Defendant objects to Plaintiffs' requests for production to the extent they improperly seek class-wide merits or damages discovery before any class or collective action has been certified or any motion for certification filed.   At present, the only plaintiffs in this case are the named Plaintiffs.   In particular but without limitation, Defendant objects to requests seeking the identity of and private and confidential information concerning putative class members prior to class certification.

D.      Defendant generally objects to Plaintiffs' requests for production of documents to the extent that Plaintiff seeks financial information and documents.  Evidence of a defendant's financial status is not discoverable.  Absent relevancy and a compelling need, a party may not obtain a defendant's financial records through discovery. *See Bonanno v. Quizno's Franchise Co. LLC*, 255 F.R.D. 550, 555-56 (D. Colo. 2009) (*citing Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 159

- 2 -

(Colo. 2008)); *In re Dist. Ct., City & Cnty. of Denver*, 256 P.3d 687, 691 (2011); *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 721 n.4, 723 (Colo. 1999); *see also Leidholt v. Dist. Ct.*, 619 P.2d 768, 770 (Colo. 1980); *Packard v. Moore*, 71 P.2d 922 (Cal. 1937); *Baggett v. Davis*, 169 So. 372 (Fla. 1936); *Laidlaw v. Sage*, 52 N.E. 679 (N.Y. 1899); and 1 Jones on Evidence, §§ 4.48, 49 (6th ed. 1972)).

E.    Defendant objects to Plaintiffs' requests for production to the extent they seek information pertaining to claims in the First Amended Complaint that are not brought against Defendant.

F.    Defendant objects to Plaintiffs' requests for production to the extent they require production of attorney-client or work product privileged information. Defendant's production of such privileged materials is unintentional and inadvertent. Defendant requests that Plaintiff immediately return to Defendant all documents that appear to be subject to the attorney-client privilege or work product doctrine.

G.    Defendant objects to Plaintiffs' requests for production to the extent they would require production of Defendant's proprietary business information or trade secrets.

H.    Defendant objects to Plaintiffs' requests for production to the extent they would require production of documents and things that are not in Defendant's possession, custody, or control.

I.    Defendant objects to Plaintiffs' requests for production to the extent they seek information that violates the privacy rights of non-parties.

J.    A response that Defendant "will produce" responsive documents means

- 3 -

that if such documents exist, are within Defendant's possession, custody and control, and are not privileged, they will be produced subject to the Court's protective order.

      K.    Defendant objects to Plaintiffs' requests for production to the extent they are irrelevant and reserves all rights and objections with respect to relevance, materiality and admissibility.

      L.    Defendant objects to Plaintiffs' requests for production pursuant to Fed.R.Civ.P. 26(b)(1) to the extent they are not proportional to the needs of the case or seek information that is not proportional to the needs of the case.

      M.    Defendant objects to Plaintiffs' requests for production insofar as they seek production of documents prior to the entry of an appropriate protective order. Defendant's production of documents shall be subject to that protective order.

      N.    Defendant reserves the right to supplement its responses as additional information and things are discovered, if any.

## RESPONSE TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Documents sufficient to identify all au pairs you have sponsored, including the period of sponsorship, the state in which each au pair worked, and the family for whom each au pair worked.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

      Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

- 4 -

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant further objects to this request for production on the grounds it is overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint and unduly burdensome. Defendant further objects to this request on the grounds it seeks documents that are not relevant to any issue at this phase of the case, it seeks information that is not proportional to the needs of the case, it is not reasonably calculated to lead to the discovery of relevant or admissible evidence and is compound and contains multiple sub-parts. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare.

**REQUEST FOR PRODUCTION NO. 2:** Documents concerning au pair compensation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At

- 5 -

present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant AuPairCare objects to this request for production on the ground that it is vague and ambiguous, overbroad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint and is unduly burdensome. Defendant further objects to this request for production on the grounds that it seeks documents that are subject to AuPairCare's privacy policy, that it seeks information that is not proportional to the needs of the case, and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 3:** Documents concerning any other sponsor's rate of au pair compensation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendant objects to this request on the grounds that alleged any disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Subject to and without waiving this objection, Defendant does not possess documents responsive to this request. Discovery is continuing.

**REQUEST FOR PRODUCTION NO. 4:** Documents concerning any meetings between

- 6 -

you and any other sponsor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendant objects to this request on the grounds that alleged any disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

**REQUEST FOR PRODUCTION NO. 5:** Correspondence with or about any other defendant in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it seeks documents and information subject to the joint defense privilege, attorney-client privilege and/or work product doctrine. Defendant further objects to this request for

- 7 -

production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request insofar as it seeks information protected from disclosure by the joint defense privilege.

**REQUEST FOR PRODUCTION NO. 6:** Documents concerning agreements, contractual or otherwise, entered into between or among defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not pro-portional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

Defendant further objects to this request for production on the grounds it seeks documents and information that are protected by the attorney-client and attorney work

- 8 -

product privileges, and by a joint defense agreement between the parties and their counsel. Subject to and without waiving these objections, Defendant responds that it does not possess non-privileged documents responsive to this request. Discovery is continuing.

**REQUEST FOR PRODUCTION NO. 7:** Correspondence with any Putative Class member in this lawsuit, including contracts executed by or provided to such class member.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper. AuPairCare expressly reserves the right to dismiss this action and/or move to compel arbitration. Nothing in these responses or objections may be deemed a waiver of that right.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties to whom documents are properly discoverable are the named Plaintiffs. Defendant objects to this request for production on the ground that it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, and is unduly burdensome. Defendant further objects to this request for production on the grounds that it seeks documents that are subject to AuPairCare's privacy policy, documents that are not relevant to any issue in the case or

- 9 -

reasonably calculated to lead to the discovery of admissible evidence and seeks information not proportional to the needs of the case. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare. Subject to and without waiving these objections, following the entry of a suitable protective order, Defendant will produce sample form contracts between it and au pair sponsor candidates.

**REQUEST FOR PRODUCTION NO. 8:** Contracts between defendants and host families relating to the Putative Class members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the

- 10 -

discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare. Subject to and without waiving these objections, upon entry of a suitable protective order, Defendant will produce exemplars of contracts between Defendant and host families.

**REQUEST FOR PRODUCTION NO. 9:** Any document relating to any named plaintiff in this case, excluding filed pleadings in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Subject to and without waiving this objection, Defendant responds that it does not possess any documents responsive to this request. Discovery is continuing.

**REQUEST FOR PRODUCTION NO. 10:** Time records sufficient to show the actual number of hours worked by the putative class members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks

- 11 -

class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant further objects to this request on the grounds that it pertains to claims or causes of action in the First Amended Complaint that are not asserted against Defendant. Defendant further objects to this request on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare.

**REQUEST FOR PRODUCTION NO. 11:** Documents supporting defendants' claim that the government has mandated a uniform wage.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:** Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Without waving these objections, Defendant responds that it does not claim that the government has mandated a uniform wage. It possesses no documents responsive to this request.

- 12 -

**REQUEST FOR PRODUCTION NO. 12:** Documents concerning statements you have made to host families regarding compensation to au pair [sic].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs. Defendant objects to this request on the grounds it is vague, is overbroad, is not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, and is unduly burdensome. Defendant further objects to this request on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

- 13 -

**REQUEST FOR PRODUCTION NO. 13:** Documents concerning statements you have made to host families regarding the number of hours au pairs may be required to work.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request insofar as it pertains to claims or causes of action in the First Amended Complaint that are not asserted against Defendant. Defendant further objects to this request on the grounds it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, and is unduly burdensome. Defendant further objects to this request on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 14:** Documents concerning or constituting complaints from au pairs about an au pair's compensation or work schedule, including but not limited to complaints that the au pair was working more than ten hours per day or 45

- 14 -

hours per week; that the au pair's work schedule prevented the au pair from attending school; that the au pair was not permitted days off or vacation time; or that the au pair was required to be "on call" for the host family.  This Request includes responses made to au pairs and any discussion about the complaint(s).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.  Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed.  At present, the only parties as to whom documents are properly discoverable are the named Plaintiffs.  Defendant further objects to this request on the grounds it seeks information and documents pertaining to claims and causes of action, including FLSA and state law wage and hour claims, that are not brought against Defendant.

**REQUEST FOR PRODUCTION NO. 15:** Communications concerning au pair compensation between you and any government entity or nongovernment entity representing au pairs, including but not limited to the U.S. Department of State, the U.S. Department of Labor, the Alliance for International Educational and Cultural Exchange, or the International Au Pair Association.

- 15 -

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request on the ground that the government and nongovernment entities identified in the Request—the U.S. Department of State, the U.S. Department of Labor, the Alliance for International Educational and Cultural Exchange, or the International Au Pair Association—do not "represent" au pairs. Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request for production to the extent that it calls for production of documents that are matters of public record and which are therefore available to Plaintiffs from the government agency with which they were filed. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 16:** Your audited or unaudited financial statements, including documents sufficient to show your annual revenue and income derived from participating in the au pair program during each year in which you have partici-

- 16 -

pated in the program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the grounds it seeks documents and information that are proprietary and confidential to Defendant and in the nature of a trade secret.

Defendant further objects to Plaintiffs' Requests for Production of Documents to the extent that Plaintiff seeks financial information and documents. Evidence of a defendant's financial status is not discoverable. Absent a compelling need, a party may not obtain a defendant's financial records through discovery. *See Bonanno v. Quizno's Franchise Co. LLC*, 255 F.R.D. 550, 555-56 (D. Colo. 2009) (*citing Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 159 (Colo. 2008)); *In re Dist. Ct., City & Cnty. of Denver*, 256 P.3d 687, 691 (2011); *Corbetta v. Albertson's, Inc.,* 975 P.2d 718, 721 n.4, 723 (Colo. 1999); s*ee also Leidholt v. Dist. Ct.*, 619 P.2d 768, 770 (Colo. 1980);

- 17 -

*Packard v. Moore*, 71 P.2d 922 (Cal. 1937); *Baggett v. Davis*, 169 So. 372 (Fla. 1936); *Laidlaw v. Sage*, 52 N.E. 679 (N.Y. 1899); and 1 Jones on Evidence, §§ 4.48, 49 (6th ed. 1972)).

**REQUEST FOR PRODUCTION NO. 17:** Documents sufficient to show your corporate structure, including your internal reporting lines as well as the existence of parent companies, affiliates and subsidiaries, including but not limited to organizational charts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request for production on the ground that it seeks documents and information that are proprietary and confidential to Defendant.

**REQUEST FOR PRODUCTION NO. 18:** Documents sufficient to identify your employees, including names, titles and reporting lines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:** Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has

- 18 -

sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this request on the ground it seeks documents and information that are proprietary and confidential to Defendant. Subject to and without waiving these objections, Defendant will produce documents responsive to this request following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 19:** All advertisements intended to reach potential au pairs concerning compensation, including all prior versions of your website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request for production on the grounds it is vague and ambiguous with respect to the phrase "intended to reach potential au pairs concerning compensation," it is overly broad, not reasonably limited in time to the facts

- 19 -

and transactions alleged in the First Amended Complaint, seeks information that is not proportional to the needs of the case, and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving these objections, Defendant will produce responsive documents following the entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 20:** Documents concerning training provided to au pairs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this request insofar as it pertains to claims or causes of action in the First Amended Complaint that are not asserted against Defendant. Defendant further objects to this request for production on the grounds that it is vague and ambiguous, overly broad, not reasonably limited in time to the facts and transactions alleged in the First Amended Complaint, seeks information that is not pro-portional to the needs of the case and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

- 20 -

DATED this 4th day of May, 2016.

s/Peggy Kozal
Thomas B. Quinn
Peggy Kozal
GORDON & REES LLP
555 17th Street, Suite 3400
Denver, Colorado 80202
Tel: 303-534-5160
tquinn@gordonrees.com
pkozal@gordonrees.com

-and-

Brian P. Maschler
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94579
Tel: 415-875-3127
bmaschler@gordonrees.com

Attorneys for Defendant
AuPairCare, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2016, I served the foregoing Defendant AuPairCare, Inc.'s Answers to Plaintiffs' First Requests For Production via email and regular U.S. Mail on all counsel of record as follows:

| Attorneys for Plaintiffs: | Alexander N. Hood |
|---|---|
| | Towards Justice-Denver |
| | Suite 300 |
| Alexandra Ivette Gonzalez | 1535 High Street |
| Beaudette Deetlefs | Denver, CO 80218 |
| Dayanna Paola Cardenas Caicedo | alex@towardsjustice.org |
| Johana Paola Beltran | |
| Lusapho Hlatshaneni | -and- |
| | |
| | Randall W. Jackson |
| | Matthew L. Schwartz |
| | Peter M. Skinner |
| | Boies Schiller & Flexner, LLP-New York |
| | 7th Floor |
| | 575 Lexington Avenue |
| | New York, NY 10022 |

- 21 -

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

## DEFENDANT AUPAIRCARE, INC.'S ANSWERS
## TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

---

Defendant AuPairCare, Inc., ("AuPairCare," "Defendant" or "Responding Party"), by counsel, Gordon & Rees LLP, submits the following answers to Plaintiffs' First Set of Interrogatories pursuant to Fed.R.Civ.P. 33:

### GENERAL OBJECTIONS

AuPairCare makes the following general objections, to which each of the

responses set forth below are subject:

A.     Defendant objects to these interrogatories on the grounds that alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.   Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.   <u>AuPairCare expressly reserves the right to move to dismiss this action and/or compel arbitration.  Nothing in these responses or objections may be deemed a waiver of that right.</u>

B.     Defendant objects to Plaintiffs' instructions to the extent they require acts inconsistent with the Federal Rules of Civil Procedure or the Local Rules of this Court.

C.     Defendant objects to Plaintiffs' interrogatories to the extent they improperly seek class-wide merits or damages discovery before any class or collective action has been certified or any motion for certification filed.   At present, the only plaintiffs in this case are the named Plaintiffs.   In particular but without limitation, Defendant objects to interrogatories seeking the identity of and private and confidential information concerning putative class members prior to class certification.

D.     Defendant objects to Plaintiffs' interrogatories to the extent they seek information pertaining to claims in the First Amended Complaint that are not brought against Defendant.

E.     Defendant objects to Plaintiffs' interrogatories to the extent they would require production of attorney-client or work-product privileged information. Defendant's production of such privileged materials or information is unintentional

- 2 -

and inadvertent. Defendant requests that Plaintiffs immediately return to Defendant all documents that appear to be subject to the attorney-client privilege or work product doctrine.

F.      Defendant objects to Plaintiffs' interrogatories to the extent they would require production of Defendant's proprietary business information or trade secrets.

G.      Defendant objects to Plaintiffs' interrogatories to the extent they seek information that violates the privacy rights of non-parties.

H.      Defendant objects to Plaintiffs' interrogatories to the extent they seek information that violates the privacy rights of non-parties.

I.      Defendant objects to Plaintiffs' interrogatories pursuant to Fed.R.Civ.P. 26(b)(1) to the extent they are not  proportional to the needs of the case or seek information that is not proportional to the needs of the case.

J.      Defendant reserves the right to supplement its responses as additional information and things are discovered, if any.

K.      Any information disclosed in response to these interrogatories shall be subject to a suitable protective order.


### ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify all au pairs that you have sponsored, past and present.  For each au pair, identify the au pair's name, home address, last known contact information (e.g., email addresses, phone numbers, etc.), country of origin, date of sponsorship, duration of sponsorship, host family(ies), host family address(es), last known contact information for each host family identified (e.g., email addresses, phone

- 3 -

numbers, etc.), duration of placement with each host family, foreign agent(s) involved in facilitating sponsorship, total fees charged to each au pair (including an itemization of what the fee was for), and total fees charged.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant objects to this interrogatory on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this interrogatory insofar as it seeks discovery relating to claims of causes of action in the First Amended Complaint not asserted against Defendant. Defendant further objects to this interrogatory on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified or any motion for certification filed.

Defendant AuPairCare further objects to this interrogatory as having multiple discrete subparts that should count as at least thirteen separate interrogatories pursuant to Fed.R.Civ.P. 33(a)(1). Defendant further objects to this interrogatory on the grounds that it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the Amended Complaint, seeks information that is not proportional to the needs of the case, and is unduly burdensome. Defendant also objects to this interrogatory on the grounds that it seeks information that is subject to AuPairCare's privacy policy and is violative of the privacy rights of host families and others who are not parties to this action, that is not relevant to any issue in the case, and that is not

- 4 -

reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this interrogatory on the grounds it seeks information that is proprietary and confidential to AuPairCare.

**INTERROGATORY NO. 2:** Identify all steps you take to ensure that program participants satisfy all requirements as mandated by 22 C.F.R. § 62.31, including but not limited to steps you take to ensure that au pairs are not working more than 10 hours per day or 45 hours per week; are permitted required time off including paid vacation; and are completing educational requirements.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects to this interrogatory on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this interrogatory insofar as it seeks information pertinent to claims or causes of action in the First Amended Complaint that are not asserted against Defendant. Defendant further objects to this interrogatory on the grounds it is compound and improperly contains multiple subparts. Subject to and without waiving these objections, Defendant responds as follows:

Defendant's specific obligations with respect to the au pair exchange program are set forth in 22 CFR 62.31. Defendant complies with all of these requirements, including but not limited to requiring monthly personal contact by the local counselor with each au pair and host family; requiring quarterly contact by the regional counsel

- 5 -

with each au pair and host family; and requiring that all local and regional counselors are appraised of their obligation to report unusual or serious situations or incidents involving either the au pair or host family. Defendant further fulfills its obligations under 22 C.F.R. §62.31 by providing the disclosures, documents, and agreements specifically referenced in that regulation to au pairs and host families.

**INTERROGATORY NO. 3:** Identify each time you have communicated to anyone that au pairs in your sponsorship may be compensated more than the weekly stipend. For each responsive communication, identify the audience by name, whether an au pair, host family, government entity or other; the forum in which the communication was made; the date or, if published, range of dates the communication was viewable; and the precise communication.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects to this interrogatory on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this interrogatory on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified or any motion for certification filed.

Defendant further objects to this interrogatory as having multiple discrete subparts that should count as at least five separate interrogatories pursuant to Fed.R.Civ.P. 33(a)(1). Defendant further objects to this interrogatory on the grounds

- 6 -

that it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the Amended Complaint, seeks information that is not proportional to the needs of the case, and is unduly burdensome. Defendant also objects to this interrogatory on the grounds it seeks information that is subject to AuPairCare's privacy policy and/or is violative of the privacy rights of host families and others who are not parties to this action, that it is not relevant to any issue in the case, and that it is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendant further objects to this interrogatory on the grounds it seeks information that is proprietary and confidential to AuPairCare.

**INTERROGATORY NO. 4:** Identify all putative Class members who have been paid more than $195.75 per week. For each Putative Class member that has been paid Compensation in excess of the $195.75 weekly stipend, state how much the Putative Class member was paid and the dates of employment.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to this interrogatory on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.

Defendant further objects to this interrogatory on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified or any motion for certification filed.

Defendant further objects to this interrogatory as having multiple discrete

- 7 -

subparts that should count as at least three separate interrogatories pursuant to
Fed.R.Civ.P. 33(a)(1).  Defendant further objects to this interrogatory on the grounds it
is overly broad, is not reasonably limited in time to the facts and transactions alleged in
the Amended Complaint, seeks information that is not proportional to the needs of the
case, and is unduly burdensome.  Defendant also objects to this interrogatory on the
grounds it seeks information that is subject to AuPairCare's privacy policy and/or is
violative of the privacy rights of host families and others who are not parties to this
action, that it is not relevant to any issue in the case, and that it is not reasonably
calculated to lead to the discovery of relevant or admissible evidence. Defendant further
objects to this interrogatory on the grounds that it seeks information that is proprietary
and confidential to AuPairCare.

# VERIFICATION

I, Marcie Schneider, President of AuPairCare, declare that the foregoing AUPAIRCARE, INC.'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES are true and correct.

May 4, 2016 (Date) _____ (Signature)

STATE OF CALIFORNIA )

)

COUNTY OF *SAN FRANCISCO* )

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Subscribed and sworn to before me, a Notary Public, this 4th day of May, 2016, Witness my hand and official seal. BY MARCIE LYN SCHNEIDER

My commission expires: 12/17/19 (Date)

Signature *M. Vdovychenko*

MARIYA VDOVYCHENKO
COMM. # 2137186
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXPIRES DEC. 17, 2019

- 9 -

DATED this 4th day of May, 2016.

s/Thomas B. Quinn
Thomas B. Quinn
GORDON & REES LLP
555 17th Street, Suite 3400
Denver, Colorado 80202

*Attorneys for Defendant*
*AuPairCare, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2016, I served the foregoing via electronic mail and regular U.S. mail on the following:

Alexander Neville Hood
Towards Justice
1535 High Street, Suite 300
Denver, CO 80218
alex@towardsjustice.org
**Attorney for Plaintiffs**

Lauren F. Louis
Sigrid S. McCawley
Boies, Schiller & Flexner, LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
**Attorney for Plaintiffs Deetlefs,
Caicedo and Gonzalez**

Randall W. Jackson
Peter M. Skinner
Matthew L. Schwartz
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor

New York, NY 10022
**Attorney for Plaintiffs Deetlefs,
Caicedo and Gonzales**

Sigrid S. McCawley
Lauren F. Louis
Randall W. Jackson
Peter M. Skinner
Matthew L. Schwartz
Boies, Schiller & Flexner, LLP
401 E. Las Olas Blvd., Ste. 1200
Ft. Lauderdale, FL 33301
**Attorney for Plaintiffs Beltran and
Hlatshaneni**

Brooke A. Colaizzi
Raymond Myles Deeny
Heather Fox Vickles
Sherman & Howard, LLC

- 10 -

# Exhibit 4

ATTORNEY EYES ONLY



*Connecting People and Cultures*

## AuPairCare
## Au Pair Agreement
### (rev. 11/2009)

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

5. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

6. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

7. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee in the amount of US $_____.

8. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

9. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not

CONFIDENTIAL            APC 000254

## ATTORNEY EYES ONLY

covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

10. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

11. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

12. Au pair agrees to pay a **$300.00 USD** cancellation fee, **plus the actual cost of international and/or domestic airfare** (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

13. Au pair agrees to pay a **$300.00 USD** change fee and **any applicable airfare penalties**, in the event he/she requests to change their arrival date.

### D. Responsibilities

14. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

15. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

16. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

17. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

18. Au Pair is hereby advised and understands that if there is an **infant under the age of two years** old in the household, the **au pair must have 200 hours of documented experience working with children under the age of two.** Such documented experience shall be verified by AuPairCare prior to au pair placement.

19. Au Pair understands that in the event there is an **infant under the age of three months** in the household, a parent or other responsible adult shall be present in the home at all times, and **Au Pair shall not be the sole caregiver for that child at any time.**

20. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

21. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

**Au Pair Agreement Page 2 of 8**
**Rev 11/09**

CONFIDENTIAL         APC 000255

## ATTORNEY EYES ONLY

22. If Au Pair is expected or permitted to drive the family car(s), **Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

23. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

24. Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair.

25. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. **Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

26. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

27. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

### F. Compensation and Financial Responsibility

28. **Au Pair will receive room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

29. **Au Pair will receive a weekly stipend** in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

30. **Au Pair will receive two calendar weeks paid vacation (10-days)**, to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

**Au Pair Agreement Page 3 of 8**
**Rev 11/09**

## ATTORNEY EYES ONLY

31. **Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.**

32. **Au Pair will receive subsidy of educational costs** from the Host Family as outlined in the "Training and Education Requirements" section of this document.

33. **Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare** to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

34. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore **Au Pair is required to file U.S. individual tax returns, even if no taxes are due.**

35. **Au Pair is responsible for complying with any Federal or state labor and/or income tax laws** that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

36. **Au Pair is wholly responsible for personal expenses and management of personal finances.** AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses **not covered by insurance.** Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

37. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

38. **Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.**

39. **Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment.** It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

40. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

41. **If Au Pair's medical condition changes (including pregnancy),** between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

42. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant

**Au Pair Agreement Page 4 of 8**
**Rev 11/09**

ATTORNEY EYES ONLY

to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

43. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

44. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

45. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

46. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project** as defined by AuPairCare.

47. **Au Pair understands that all 12-month program Au Pairs are required to attend courses of study** at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

48. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

49. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

50. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

51. Au Pair understands that **Extension Au Pairs are required to repeat the educational component** of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

### J. Problem Resolution and Placement Changes

52. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant

**Au Pair Agreement Page 5 of 8**
**Rev 11/09**

CONFIDENTIAL

APC 000258

ATTORNEY EYES ONLY

event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

53. Au Pair is hereby advised and understands that **AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered**; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

54. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.** If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

55. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. **Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.**

56. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, **Au Pair agrees to cooperate with AuPairCare during the entire re-matching process**, including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

57. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

58. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

59. **In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.**

60. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

61. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

62. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

63. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

Au Pair Agreement Page 6 of 8
Rev 11/09

CONFIDENTIAL

APC 000259

## ATTORNEY EYES ONLY

64. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

65. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

66. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

67. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

68. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year.

69. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

70. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

71. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party.

**Au Pair Agreement Page 7 of 8**
**Rev 11/09**

CONFIDENTIAL APC 000260

## ATTORNEY EYES ONLY

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

72. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

73. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

**Please initial each of the below statements:**

_____ (initial) **I promise that the information I have given in the application form completed by me is accurate, I have read this entire agreement carefully, and I have had the opportunity to ask questions, obtain advice as to its meaning, and I understand it. I am capable of reading and understanding this agreement in English. I do not rely on any promises, statements or representations that are not expressly stated in this Agreement. I have retained a copy of this Agreement for my files.**

_____ (initial) **I agree to provide childcare services for my host family. I understand that my hours will not exceed forty-five (45) hours per week, for a maximum of ten (10) hours on any given day, over a period of five and one-half (5 ½) days on a given week, and that I will have at least one (1) full weekend free each month, scheduled in advance.**

_____ (initial) **My signature below indicates acceptance of the terms of this Agreement, and is legally binding. No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing.**

AU PAIR NAME (PRINT): _____

AU PAIR NAME (SIGNATURE): _____ DATE:_____

CONFIDENTIAL          APC 000261

**ATTORNEY EYES ONLY**

**AuPairCare**

## Au Pair Agreement

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

5. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

6. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

7. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

8. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee in the amount of US $_____.

9. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

10. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

11. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program,

ATTORNEY EYES ONLY

including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

12. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

13. Au pair agrees to pay a **$300.00 USD** cancellation fee, **plus the actual cost of international and/or domestic airfare** (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

14. Au pair agrees to pay a **$300.00 USD** change fee and **any applicable airfare penalties**, in the event he/she requests to change their arrival date.

### D. Responsibilities

15. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

16. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

17. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

19. Au Pair is hereby advised and understands that if there is an **infant under the age of two years** old in the household, the au pair must have **200 hours of documented experience working with children under the age of two.** Such documented experience shall be verified by AuPairCare prior to au pair placement.

20. Au Pair understands that in the event there is an **infant under the age of three months** in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not **be the sole caregiver for that child at any time.**

21. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

22. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

23. If Au Pair is expected or permitted to drive the family car(s), **Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

**Au Pair Agreement Page 2 of 7**
**Rev 11/2010**

CONFIDENTIAL       APC 000263

## ATTORNEY EYES ONLY

24. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

25. Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

26. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. Au Pair understands that **the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

27. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

28. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

### F. Compensation and Financial Responsibility

29. **Au Pair will receive room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

30. **Au Pair will receive a weekly stipend** in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

31. **Au Pair will receive two calendar weeks paid vacation (10-days)**, to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

32. **Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.**

33. **Au Pair will receive subsidy of educational costs** from the Host Family as outlined in the "Training and Education Requirements" section of this document.

34. Upon successful completion of the program, **Au Pair will receive a return flight airline ticket** from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

35. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore **Au Pair is required to file U.S. individual tax returns, even if no taxes are due.**

**Au Pair Agreement Page 3 of 7**
**Rev 11/2010**

## ATTORNEY EYES ONLY

36. Au Pair is responsible for complying with any Federal or state labor and/or income tax laws that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

37. Au Pair is wholly responsible for personal expenses and management of personal finances. AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

38. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

39. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

40. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

41. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

42. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

43. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

44. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

45. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

46. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

47. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project as defined by AuPairCare.

48. Au Pair understands that all 12-month program Au Pairs are required to attend courses of study at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay

**Au Pair Agreement Page 4 of 7**
**Rev 11/2010**

CONFIDENTIAL                    APC 000265

ATTORNEY EYES ONLY

tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

49. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

## I. Extension of Au Pair Program

50. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

51. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

52. Au Pair understands that **Extension Au Pairs are required to repeat the educational component** of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

## J. Problem Resolution and Placement Changes

53. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

54. Au Pair is hereby advised and understands that **AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered**; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

55. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change. If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

56. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.

57. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, Au Pair agrees to cooperate with AuPairCare during the entire re-matching process, including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host

**Au Pair Agreement Page 5 of 7**
**Rev 11/2010**

ATTORNEY EYES ONLY

Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

58. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

59. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

60. **In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.**

61. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

62. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

63. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

64. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

65. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

66. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

67. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

68. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

69. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

70. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

CONFIDENTIAL          APC 000267

## ATTORNEY EYES ONLY

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

71. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

72. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party.

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

73. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

74. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

**Please initial each of the below statements:**

_____ (initial) I promise that the information I have given in the application form completed by me is accurate, I have read this entire agreement carefully, and I have had the opportunity to ask questions, obtain advice as to its meaning, and I understand it. I am capable of reading and understanding this agreement in English. I do not rely on any promises, statements or representations that are not expressly stated in this Agreement. I have retained a copy of this Agreement for my files.

_____ (initial) I agree to provide childcare services for my host family. I understand that my hours will not exceed forty-five (45) hours per week, for a maximum of ten (10) hours on any given day, over a period of five and one-half (5 ½) days on a given week, and that I will have at least one (1) full weekend free each month, scheduled in advance.

_____ (initial) My signature below indicates acceptance of the terms of this Agreement, and is legally binding. No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing.

AU PAIR NAME (PRINT): _____

AU PAIR NAME (SIGNATURE): _____  DATE: _____

**Au Pair Agreement Page 7 of 7**
**Rev 11/2010**

ATTORNEY EYES ONLY

# AuPairCare

## 2012 AU PAIR AGREEMENT

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1.  Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2.  Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3.  Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4.  Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

5.  Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

6.  AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

7.  Au Pair understands that they cannot be married, engaged to be married or have children of their own and participate in AuPairCare's au pair program.

8.  Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

9.  Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee in the amount of US $_____ to Originating Exchange Organization.

10. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

11. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

12. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

13. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

14. Au pair agrees to pay a $300.00 USD cancellation fee, plus the actual cost of international and/or domestic airfare (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

15. Au pair agrees to pay a $300.00 USD change fee and any applicable airfare penalties, in the event he/she requests to change their arrival date.

### D. Responsibilities

16. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

17. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per

**ATTORNEY EYES ONLY**

# AuPairCare

month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

20. Au Pair is hereby advised and understands that if there is an infant under the age of two years old in the household, the **au pair must have 200 hours of documented experience working with children under the age of two.** Such documented experience shall be verified by AuPairCare prior to au pair placement.

21. Au Pair understands that in the event there is an infant under the age of three months in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall **not be the sole caregiver for that child at any time.**

22. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

## E. Behavior and Comportment

23. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

24. If Au Pair is expected or permitted to drive the family car(s), **Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program.

25. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

26. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

27. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

29. Au Pair agrees to exercise sound judgment and caution while participating in internet-based communities, dating and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

30. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. **Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

31. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

32. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

rev 1/2012

Au Pair's Initials_____

CONFIDENTIAL

APC 000270

# ATTORNEY EYES ONLY

**AuPairCare**

33. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be implemented in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child(ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

### F. Compensation and Financial Responsibility

34. Au Pair will receive **room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

35. Au Pair will receive a **weekly stipend** in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

36. Au Pair will receive **two calendar weeks paid vacation (10-days)**, to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

37. Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.

38. Au Pair will receive **subsidy of educational** costs from the Host Family as outlined in the "Training and Education Requirements" section of this document.

39. Upon **successful completion** of the program, Au Pair will receive a **return flight airline ticket** from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

40. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore Au Pair is **required to file U.S. individual tax returns**, even if no taxes are due.

41. Au Pair is responsible for complying with any Federal or state labor and/or income tax laws that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

42. Au Pair is **wholly responsible for personal expenses and management of personal finances**. AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

43. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said

   coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

44. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

45. Au Pair understands that the **dental insurance** provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

46. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

47. If Au Pair's **medical condition changes (including pregnancy)**, between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

48. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

rev 1/2012

Au Pair's Initials_____

**CONFIDENTIAL**                    **APC 000271**

ATTORNEY EYES ONLY

# AuPairCare

49. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

50. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

51. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

52. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project as defined by AuPairCare.

53. Au Pair understands that all 12-month program Au Pairs are required to attend courses of study at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

54. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

55. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

56. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

57. Au Pair understands that Extension Au Pairs are required to repeat the educational component of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

### J. Problem Resolution and Placement Changes

58. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

59. Au Pair is hereby advised and understands that AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

60. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change. If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

61. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.

62. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, Au Pair agrees to cooperate with AuPairCare during the entire re-matching process, including but not limited to ensuring

ATTORNEY EYES ONLY

**AuPairCare**

that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

63. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

64. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

65. In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.

66. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

67. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

68. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

69. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

70. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

71. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

72. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

73. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

74. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

75. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

Au Pair's Initials_____

rev 1/2012

**CONFIDENTIAL**

**APC 000273**

# ATTORNEY EYES ONLY

**AuPairCare**

76. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

77. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party.

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction

of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

78. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

79. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

Please initial each of the below statements:

_____ (initial) I promise that the information I have given in the application form completed by me is accurate, I have read this entire agreement carefully, and I have had the opportunity to ask questions, obtain advice as to its meaning, and I understand it. I am capable of reading and understanding this agreement in English. I do not rely on any promises, statements or representations that are not expressly stated in this Agreement. I have retained a copy of this Agreement for my files.

_____ (initial) I agree to provide childcare services for my host family. I understand that my hours will not exceed forty-five (45) hours per week, for a maximum of ten (10) hours on any given day, over a period of five and one-half (5 ½) days on a given week, and that I will have at least one (1) full weekend free each month, scheduled in advance.

_____ (initial) My signature below indicates acceptance of the terms of this Agreement, and is legally binding. No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing.

AU PAIR NAME (PRINT): _____

AU PAIR NAME (SIGNATURE): _____  DATE: _____

month/day/year

rev 1/2012

**CONFIDENTIAL**

**APC 000274**

ATTORNEY EYES ONLY

# AuPairCare

## AU PAIR AGREEMENT

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://exchanges.state.gov/jexchanges/index.html.

3. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

4. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

5. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

6. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

7. Au Pair understands that they cannot be married, engaged to be married or have children of their own and participate in AuPairCare's au pair program.

8. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

9. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee in the amount of US $_____ to Originating Exchange Organization.

10. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

11. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

12. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for: to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

13. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

14. Au pair agrees to pay a $300.00 USD cancellation fee, plus the **actual cost of international and/or domestic airfare** (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

15. Au pair agrees to pay a $300.00 USD change fee and **any applicable airfare penalties**, in the event he/she requests to change their arrival date.

### D. Responsibilities

16. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

17. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per

rev 2/11/2013

CONFIDENTIAL

APC 000275

ATTORNEY EYES ONLY

## AuPairCare

month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

20. Au Pair is hereby advised and understands that if there is an **infant under the age of** two years old in the household, the **au pair must have 200 hours of documented experience** working with children under the age of two. Such documented experience shall be verified by AuPairCare prior to au pair placement.

21. Au Pair understands that in the event there is an **infant under the age of three months** in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.

22. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

23. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

24. If Au Pair is expected or permitted to drive the family car(s), Au Pair **will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license** at his/her own expense. Failure to do so may result in termination from the program.

25. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

26. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

27. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

29. Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities, dating and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

30. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. **Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

31. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

32. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

rev 2/11/2013

CONFIDENTIAL

APC 000276

Au Pair's Initials_____

220

ATTORNEY EYES ONLY

# AuPairCare

33. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be implemented in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child(ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

## F. Compensation and Financial Responsibility

34. Au Pair will receive room and board in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

35. Au Pair will receive a weekly stipend in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

36. Au Pair will receive two calendar weeks paid vacation (10-days), to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

37. Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.

38. Au Pair will receive subsidy of educational costs from the Host Family as outlined in the "Training and Education Requirements" section of this document.

39. Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

40. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore Au Pair is required to file U.S. individual tax returns, even if no taxes are due.

41. Au Pair is responsible for complying with any Federal or state labor and/or income tax laws that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

42. Au Pair is wholly responsible for personal expenses and management of personal finances. AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

## G. Travel and Accident Insurance

43. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said

coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website, www.aupaircare.com. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

44. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

45. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

46. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

47. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

48. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

Page 3 of 6

Au Pair's Initials_____

**ATTORNEY EYES ONLY**

# AuPairCare

49. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

50. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

51. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

#### H. Training and Education Requirements

52. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project** as defined by AuPairCare.

53. **Au Pair understands that all 12-month program Au Pairs are required to attend courses of study** at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

54. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

#### I. Extension of Au Pair Program

55. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

56. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

57. Au Pair understands that **Extension Au Pairs are required to repeat the educational component** of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

#### J. Problem Resolution and Placement Changes

58. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

59. Au Pair is hereby advised and understands that AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

60. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.** If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

61. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. **Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.**

62. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, Au Pair agrees to cooperate with AuPairCare during the entire re-matching process, including but not limited to ensuring

rev 2/11/2013
**CONFIDENTIAL**

**APC 000278**

Au Pair's Initials_____

ATTORNEY EYES ONLY

# AuPairCare

that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that Host Family is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

63. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

64. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

65. In the event Au Pair does not successfully complete the program year, Au Pair is responsible for his/her return travel expenses.

66. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

67. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

68. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

69. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

70. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

71. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

72. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

73. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

74. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

75. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair and/or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

rev 2/11/2013

**CONFIDENTIAL**

**APC 000279**

Au Pair's Initials_____

ATTORNEY EYES ONLY

# AuPairCare

76. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

77. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party. In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

   In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

78. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

79. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

**ENTIRE AGREEMENT**
Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
- I accept the terms of this entire Agreement and understand that it is legally binding
- I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
- No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
- I have retained a copy of this Agreement for my own records

Au Pair Full Name (Signature): _____

Au Pair Full Name (Print): _____     Date : _____

                                                                              Month/Day/Year

rev 2/11/2013
CONFIDENTIAL                              APC 000280

**ATTORNEY EYES ONLY**

# AuPairCare

**2014 AU PAIR AGREEMENT**

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____". Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://j1visa.state.gov/programs/au-pair

3. Au Pair understands their rights as visa participant under the Wilberforce Trafficking Victims Act. Said rights and resources for can be found by visiting: http://travel.state.gov/pdf/Pamphlet-Order.pdf

4. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

5. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

6. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

7. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

8. Au Pair understands that they cannot be married, engaged to be married or have children of their own and participate in AuPairCare's au pair program.

9. Au Pair is not an employee, agent or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

10. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee to Originating Exchange Organization.

11. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

12. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

13. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to this United States. Au Pair may not under any circumstances solicit funds from Host Family for to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

14. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

14. Au pair agrees to pay a $300.00 USD cancellation fee, plus the actual cost of international and/or domestic airfare (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

15. Au pair agrees to pay a $300.00 USD change fee and any applicable airfare penalties, in the event he/she requests to change their arrival date.

### D. Responsibilities

16. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household and community.

rev 12/18/2013

Au Pair's Initials_____

**CONFIDENTIAL**　　　　　　**APC 000281**

**ATTORNEY EYES ONLY**

# AuPairCare

17. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

18. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45 hour weekly limit, babysitting for other families, or tutoring language students.

20. Au Pair is hereby advised and understands that if there is an **infant under the age of two years old in the household, the au pair must have 200 hours of documented experience working with children under the age of two.** Such documented experience shall be verified by AuPairCare prior to au pair placement.

21. Au Pair understands that in the event there is an **infant under the age of three months in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.**

22. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

## E. Behavior and Comportment

23. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer or other perks.

24. If Au Pair is expected or permitted to drive the family car(s), **Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program.

25. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

26. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

27. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

29. Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities, dating and social networking websites such as Facebook, Orkut, MySpace or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

30. Au Pair agrees not to send, receive or view inappropriate content (sexual or violent) in the host family home, or outside of the home using the host family's equipment (i.e. computer, cell phone, handheld device, tablet, DVD player, television, etc.) by means of, but not limited to: live video, photos, pre-recorded videos, instant messages, sexting/texting, social media posts/updates. Failure to adhere to this agreement may result in immediate termination from the program.

31. Au Pair agrees not to buy, possess or consume any controlled or illegal substances, except those prescribed by a physician. Au Pair understands that the legal drinking age in the United States is age 21, and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program. Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

32. Au Pair agrees to abide by all local, state and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

33. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this

rev 12/18/2013

Au Pair's Initials_____

**CONFIDENTIAL**                    **APC 000282**

ATTORNEY EYES ONLY

**AuPairCare**

Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

34. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be implemented in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child(ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

### F. Compensation and Financial Responsibility

35. **Au Pair will receive room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

36. **Au Pair will receive a weekly stipend** in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

37. **Au Pair will receive two calendar weeks paid vacation (10-days)**, to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

38. Au Pair understands that he/she is not entitled to paid or unpaid holiday time-off.

39. **Au Pair will receive subsidy of educational costs** from the Host Family as outlined in the "Training and Education Requirements" section of this document.

40. **Upon successful completion of the program, Au Pair will receive a return flight airline ticket** from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

41. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore Au Pair is required to file U.S. individual tax returns, even if no taxes are due.

42. **Au Pair is responsible for complying with any Federal or state labor and/or income tax laws** that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws which may vary from state to state, and are subject to change from time to time.

43. **Au Pair is wholly responsible for personal expenses and management of personal finances.** AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses **not covered by insurance.** Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

44. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website: http://www.aupaircare.com/current-au-pair/insurance. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for coverage issues and/or disputes. *Note: This section [43] does not apply to au pairs recruited by Originated Exchange Organization; STS Student Travel Schools AB. STS Travel School AB au pairs should refer to section [44].*

45. If recruited by Originating Organization, STS Student Travel Schools AB, Au Pair will receive travel and accident insurance provided by STS Student Travel Schools AB through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed by visiting www.falck.com/travelcare. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

46. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

47. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination so that no unexpected complications arise during the period of residence abroad.

48. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

rev 12/18/2013

CONFIDENTIAL

APC 000283

Au Pair's Initials_____

**ATTORNEY EYES ONLY**

# AuPairCare

49. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

50. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms of set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

51. Insurance provided by AuPairCare is valid for 365 days from Au Pair's arrival in the US and Au Pair accepts responsibility for payment of an extension fee to receive any coverage after the 365 days.

52. Au Pair accepts full responsibility for any medical expenses which are not covered by the insurance policy provided by AuPairCare through a third party.

53. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

### H. Training and Education Requirements

54. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project as defined by AuPairCare.

55. Au Pair understands that all 12-month program Au Pairs are required to attend courses of study at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

56. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to submit an Education Plan at the start of the program year to outline coursework plans. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

### I. Extension of Au Pair Program

57. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

58. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

59. Au Pair understands that Extension Au Pairs are required to repeat the educational component of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

60. Au Pair is hereby advised that by extending their program they must complete the new program terms in order to be eligible for a return flight home arranged by AuPairCare. In the event that the au pair chooses to leave the program early, he/she will be responsible for booking and paying for their own return flight home.

### J. Problem Resolution and Placement Changes

61. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

62. Au Pair is hereby advised and understands that AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered; however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

**Page 4 of 6**

CONFIDENTIAL

**APC 000284**

Au Pair's Initials_____

**ATTORNEY EYES ONLY**

# AuPairCare

63. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change. If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

64. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or perks provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.

65. In the event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, **Au Pair agrees to cooperate with AuPairCare during the entire re-matching process**, including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

66. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, in its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $25.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

67. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

68. In the event Au Pair does not successfully complete their first year program, and extension program, if applicable, Au Pair is responsible for his/her return travel expenses.

69. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

70. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

71. In the event of accident or serious illness or medical condition that, in the judgment of AuPairCare, prevents Au Pair from continuing her/his duties, she/he will end the program early and return home.

### K. Other Terms and Conditions

72. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

73. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

74. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

75. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

76. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

77. Au Pair agrees not to post any Host Family personal information, images or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

78. Au Pair understands that AuPairCare will make its best, reasonable and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

CONFIDENTIAL
APC 000285

Au Pair's Initials_____

**ATTORNEY EYES ONLY**

# AuPairCare

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

79. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S.

80. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S before an arbitration provider selected by AuPairCare, upon the petition of either party.

In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

81. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

82. An electronic or facsimile signature on this Agreement shall be considered the same as an original.

**ENTIRE AGREEMENT**
Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
- I accept the terms of this entire Agreement and understand that it is legally binding
- I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
- No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
- I have retained a copy of this Agreement for my own records

Au Pair Full Name (Signature): _____

Au Pair Full Name (Print): _____     Date : _____

Month/Day/Year

rev 12/18/2013

**CONFIDENTIAL**

**APC 000286**

Au Pair's Initials_____

ATTORNEY EYES ONLY

# AuPairCare

**2015 AU PAIR AGREEMENT**

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____." Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

### A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://j1visa.state.gov/programs/au-pair

3. Au Pair understands their rights as visa participant under the Wilberforce Trafficking Victims Act. Said rights and resources for can be found by visiting: http://travel.state.gov/content/visas/english/general/rights-protections-temporary-workers.html

4. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

5. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

6. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

7. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

8. Au Pair understands that they cannot be married, engaged to be married or have children of their own, and participate in AuPairCare's au pair program.

9. Au Pair is not an employee, agent, or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

### B. Fees and Program Costs

10. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee to Originating Exchange Organization.

11. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

12. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

13. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to the United States. Au Pair may not under any circumstances solicit funds from Host Family to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

14. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

### C. Au Pair Cancellations/Flight Change Requests

15. Au pair agrees to pay a $300.00 USD cancellation fee, plus the actual cost of international and/or domestic airfare (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

16. Au pair agrees to pay a $300.00 USD change fee and any applicable airfare penalties, in the event he/she requests to change their arrival date.

### D. Responsibilities

17. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household, and community.

**rev** 11/07/2014

CONFIDENTIAL

APC 000287

**ATTORNEY EYES ONLY**

# AuPairCare

18. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

20. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45-hour weekly limit, babysitting for other families, or tutoring language students.

21. Au Pair is hereby advised and understands that if there is an **Infant under the age of two years old** in the household, **the au pair must have 200 hours of documented experience working with children under the age of two.**

22. Au Pair understands that in the event there is an **infant under the age of three months** in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.

23. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

24. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer, or other benefits.

25. If Au Pair is expected or permitted to drive the family car(s), **Au Pair will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program.

26. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

27. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

29. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

30. Au Pair agrees to exercise sound judgment and caution while participating in Internet-based communities, dating and social networking websites such as Facebook, Orkut, Myspace, or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

31. Au Pair agrees not to send, receive or view inappropriate content (sexual or violent) in the host family home, or outside of the home using the host family's equipment (i.e. computer, cell phone, handheld device, tablet, DVD player, television, etc.) by means of, but not limited to: live video, photos, pre-recorded videos, instant messages, sexting/texting, social media posts/updates. Failure to adhere to this agreement may result in immediate termination from the program.

32. Au Pair agrees not to buy, possess, or consume any controlled or illegal substances, except those prescribed by a physician. Au Pair understands that the **legal drinking age in the United States is age 21 and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

33. Au Pair agrees to abide by all local, state, and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

rev 11/07/2014

**CONFIDENTIAL**                    **APC 000288**

**ATTORNEY EYES ONLY**

# AuPairCare

34. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

35. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be present in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child (ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

### F. Compensation and Financial Responsibility

36. Au Pair will receive **room and board** in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

37. Au Pair will receive **a weekly stipend** in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

38. Au Pair will receive **two calendar weeks paid vacation (10-days)**, to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

39. Au Pair understands that he/she is not entitled to paid or unpaid time-off on U.S. holidays.

40. Au Pair will receive **subsidy of educational costs** from the Host Family as outlined in the "Training and Education Requirements" section of this document.

41. Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

42. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore **Au Pair is required to file U.S. individual tax returns, even if no taxes are due.**

43. Au Pair is responsible for complying with any Federal or state labor and/or income tax laws that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws, which may vary from state to state, and are subject to change from time to time.

44. Au Pair is wholly responsible for personal expenses and management of personal finances. AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

### G. Travel and Accident Insurance

45. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website: http://www.aupaircare.com/current-au-pair/insurance. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

46. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

47. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination prior to arrival in the U.S. so that no unexpected complications arise during the period of residence abroad.

48. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

49. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

50. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best

CONFIDENTIAL

**ATTORNEY EYES ONLY**

# AuPairCare

interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

51. Insurance provided by AuPairCare is valid for duration of their program participation. Au Pair accepts responsibility for payment to extend insurance during their 30-day grace period.

52. Au Pair accepts full responsibility for any medical expenses that are not covered by the insurance policy provided by AuPairCare through a third party.

53. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

## H. Training and Education Requirements

54. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project** as defined by AuPairCare.

55. **Au Pair understands that all 12-month program Au Pairs are required to attend courses of study** at an accredited U.S. post-secondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

56. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

## I. Extension of Au Pair Program

57. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

58. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

59. Au Pair understands that **Extension Au Pairs are required to repeat the educational component** of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

60. Au Pair is hereby advised that by extending their program they must complete the new program terms in order to be eligible for a return flight home arranged by AuPairCare. In the event that the au pair chooses to leave the program early, he/she will be responsible for booking and paying for his or her own return flight home.

## J. Problem Resolution and Placement Changes

61. Au Pair is living as a member of a Host Family and is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

62. Au Pair is hereby advised and understands that **AuPairCare requires an initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered;** however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

63. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.** If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate the Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

64. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or benefits provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location, and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. Changes **in Host Family needs do not constitute grounds for Au Pair to request a placement change.** In the

**Page 4 of 6**

**CONFIDENTIAL**                         APC 000290

234

**ATTORNEY EYES ONLY**

# AuPairCare

event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, **Au Pair agrees to cooperate with AuPairCare during the entire re-matching** process, including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

65.   If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, at its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $35.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

66.   If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

67.   In the event Au Pair does not successfully complete their first year program, and/or extension program, if applicable, Au Pair is responsible for his/her return travel expenses.

68.   AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

69.   Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

### K. Other Terms and Conditions

70.   Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

71.   Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

72.   Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

73.   Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

74.   Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

75.   Au Pair agrees not to post any Host Family personal information, images, or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

76.   Au Pair understands that AuPairCare will make its best, reasonable, and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees, and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

rev 11/07/2014

**CONFIDENTIAL**                    **APC 000291**

**ATTORNEY EYES ONLY**

# AuPairCare

77. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party. In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and It submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California. In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

78. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

79. A DocuSign signature on this Agreement shall be considered the same as an original.

**ENTIRE AGREEMENT**
Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
- I accept the terms of this entire Agreement and understand that it is legally binding
- I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
- No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
- I have retained a copy of this Agreement for my own records

Au Pair Full Name (Signature): _____

Au Pair Full Name (Print): _____     Date : _____

Month/Day/Year

rev 11/07/2014
CONFIDENTIAL
APC 000292

**ATTORNEY EYES ONLY**

# AuPairCare

**AU PAIR AGREEMENT**

This AuPairCare Au Pair Agreement (the "Agreement") is entered into between AuPairCare, a California Corporation and "Au Pair" (first and last name of Au Pair) _____ of (City) _____, (Country) _____." Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein. "Host Family" is the family in the United States with whom Au Pair has agreed to match, and with whom Au Pair will live and work.

## A. General Provisions

Au Pair is hereby advised and acknowledges that the parties agree as follows:

1. Au Pair will abide by the terms and conditions of this Agreement for the duration of Au Pair's participation in the AuPairCare program, unless and until this Agreement is replaced or modified by a subsequent written agreement executed by AuPairCare and Au Pair.

2. Au Pair is hereby advised and acknowledges that all Au Pairs are participants in a cultural exchange program, and agrees to comply with all of the regulations published by U.S. Department of State in 22 CFR Part 514, as the same may be amended from time to time in the future ("the Regulations"). Said regulations can be found by visiting: http://j1visa.state.gov/programs/au-pair

3. Au Pair understands their rights as visa participant under the Wilberforce Trafficking Victims Act. Said rights and resources for can be found by visiting: http://travel.state.gov/content/visas/english/general/rights-protections-temporary-workers.html

4. Au Pair represents that all information provided throughout the application process is true and that no relevant information has been excluded or misrepresented in the application process and documents, including representation of the level of English proficiency, health and/ or childcare experience. Au Pair agrees that all such disclosures will be full and accurate, up to and through the date of departure from Au Pair's country of origin.

5. Au Pair agrees to complete all visa screening requirements in accordance with the instructions given and will be responsible for obtaining a valid passport and complying with all vaccinations and immunization requirements.

6. Au Pair agrees to immediately amend any disclosures should new information become available to Au Pair in any regard or at any time of participation in the program. Au Pair represents that s/he will personally conduct all written and phone correspondence with Host Family during the interviewing process. Au Pair understands that exaggeration or falsification of any application information by Au Pair, references or Originating Exchange Organization may result in immediate dismissal from the program and return to Au Pair's home country at Au Pair's expense.

7. AuPairCare has the exclusive right to determine suitability of Au Pair to participate in the program both before and during participation in the program. Au Pair agrees that in determining suitability, AuPairCare may make inquiries to third parties about Au Pair, including but not limited to medical personnel and insurance agencies otherwise covered by federal HIPAA regulations.

8. Au Pair understands that they cannot be married, engaged to be married or have children of their own, and participate in AuPairCare's au pair program.

9. Au Pair is not an employee, agent, or independent contractor of AuPairCare, and AuPairCare does not exercise dominion or control over the actions of the Host Family.

## B. Fees and Program Costs

10. Participation in the AuPairCare program requires Au Pair to pay a non-refundable program fee to Originating Exchange Organization.

11. Originating Exchange Organization may charge Au Pair additional fees to cover their administrative costs in promoting the AuPairCare program and processing au pair applications. The fees may include, but are not limited to, an application fee, processing fee, handling fee, and interview fee. These fees may vary across Originating Exchange Organizations. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization regarding additional fees.

12. Au Pair will be responsible for additional costs, including but not limited to, baggage check fees for arrival and return flights, personal expenses while at the Au Pair arrival orientation, medical expenses not covered by insurance and all incidentals and personal expenses while on the program. Au Pairs should be prepared to cover these costs.

13. Au pair will pay all applicable fees to Originating Exchange Organization before beginning travel to the United States. Au Pair may not under any circumstances solicit funds from Host Family to cover personal costs of program, including but not limited to fees due to the Originating Exchange Organization, costs associated with securing a visa, or incidental travel costs.

14. Au Pair agrees that s/he has adequate financial resources to satisfy all obligations as an AuPairCare Au Pair, including payment for a return flight if Au Pair does not successfully complete the program.

## C. Au Pair Cancellations/Flight Change Requests

15. Au pair agrees to pay a $300.00 USD cancellation fee, plus the actual cost of international and/or domestic airfare (if travel has been arranged), in the event he/she cancel from the program after matching with a family but prior to arrival at the host family home.

16. Au pair agrees to pay a $300.00 USD change fee and any applicable airfare penalties, in the event he/she requests to change their arrival date.

## D. Responsibilities

17. Au Pair understands that during the first three (3) days of an au pair's stay in the home, a parent or another responsible adult shall remain in the home to facilitate the adjustment of the au pair into the family, household, and community.

Rev 9FEB2016

Page 1 of 6

**CONFIDENTIAL**          **APC 000293**

**ATTORNEY EYES ONLY**

# AuPairCare

18. Au Pair agrees to perform childcare services and light housekeeping related to childcare that shall not exceed forty-five (45) hours per week, five and one half (5 1/2) days per week, with a maximum of ten (10) hours per day. Au Pair will have one full weekend off per month (Friday evening to Monday morning). If a dispute arises as to any of these limits or requirements, AuPairCare shall resolve said dispute, and its decision shall be final.

19. Au Pair's responsibilities will be limited to childcare and child-related tasks for the Host Family. This may include duties such as general supervision, preparing and cleaning up after children's meals, straightening children's rooms, doing children's laundry, preparing the children for school, assisting with homework, and being present when children are sleeping. The Au Pair's responsibilities will not include heavy housework, yard work or other non-child related labor for the household. If a dispute arises concerning the scope of the Au Pair's responsibilities, AuPairCare shall resolve said dispute, and its decision shall be final.

20. Au Pair understands that U.S. Department of State regulations prohibit Au Pair employment beyond the au pair arrangement with the Host Family. Au Pair may not undertake any other paid work while in the U.S., including babysitting for Host Family for extra pay beyond the 45-hour weekly limit, babysitting for other families, or tutoring language students.

21. Au Pair is hereby advised and understands that if there is an infant under the age of two years old in the household, the **au pair must have 200 hours of documented experience working with children under the age of two.**

22. Au Pair understands that in the event there is an infant under the age of three months in the household, a parent or other responsible adult shall be present in the home at all times, and Au Pair shall not be the sole caregiver for that child at any time.

23. Au Pair agrees to perform the childcare responsibilities to the best of his/ her ability, and make every effort to act as a caring, responsible Host Family member.

### E. Behavior and Comportment

24. Au Pair agrees to abide by Host Family rules as they are determined by the Host Family, and will behave as a responsible member of the Host Family at all times. If a dispute arises concerning the Host Family rules, AuPairCare shall resolve said dispute, and its decision shall be final. Au Pair understands that Host Family is not required to provide access to a car, personal phone line, personal television, computer, or other benefits.

25. If Au Pair is expected or permitted to drive the family car(s), Au Pair **will obtain a valid international driver's license prior to arrival in the United States, and if required by law, obtain a U.S. driver's license at his/her own expense.** Failure to do so may result in termination from the program.

26. Au Pair understands that if s/he is expected or permitted to drive the family car(s), the Host Family must provide sufficient automobile insurance to comply with all applicable laws, and which insurance shall in no event cover less than $10,000 in medical coverage. Au pair understands that it is their responsibility to ensure said policy is active throughout their program participation, if they will be expected or permitted to drive. Au Pair will not be responsible for payment of any automobile insurance deductibles that exceed $250 per accident. Au Pair agrees never to use the car(s) without the express permission of Host Family or to use the car for purposes not approved by the Host Family.

27. Au Pair agrees to follow all local and state laws concerning cell phone use and driving, and at a minimum agrees to not use a cell phone while driving a motor vehicle unless it has been connected to a hands-free device AND he/she has received permission from his/her Host Family to use said equipment. Failure to adhere to this agreement may result in immediate termination from the program.

28. Au Pair agrees not to web surf, send, or read text-based communication on electronic wireless communications devices, such as cell phones, while driving a motor vehicle. Failure to adhere to this agreement may result in immediate termination from the program.

29. Au Pair agrees not to hitchhike at any time, due to the dangerous nature of hitchhiking in the United States.

30. Au Pair agrees to exercise sound judgment and caution while participating in internet-based communities, dating and social networking websites such as Facebook, Orkut, Myspace, or other sites. Au Pair understands that Host Family information, including but not limited to phone numbers, addresses, family names, information about Host Family children, or photos of Host Family home and household members may not be posted online by Au Pair, without the Host Family's prior consent.

31. Au Pair agrees not to send, receive or view inappropriate content (sexual or violent) in the host family home, or outside of the home using the host family's equipment (i.e. computer, cell phone, handheld device, tablet, DVD player, television, etc.) by means of, but not limited to: live video, photos, pre-recorded videos, instant messages, sexting/texting, social media posts/updates. Failure to adhere to this agreement may result in immediate termination from the program.

32. Au Pair agrees not to buy, possess, or consume any controlled or illegal substances, except those prescribed by a physician. Au Pair **understands that the legal drinking age in the United States is age 21 and that the legal ramifications of underage drinking in the United States are serious and can result in immediate termination from the AuPairCare program.** Au Pair agrees not to consume alcoholic beverages at any time if Au Pair is under the legal drinking age of 21. If Au Pair is of legal drinking age, Au Pair agrees not to excessively consume alcoholic beverages at any time. Au Pair agrees never to drive an automobile after consuming alcoholic beverages. **Au Pair agrees never to consume alcoholic beverages while on duty caring for Host Family children.** As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

33. Au Pair agrees to abide by all local, state, and federal laws. If Au Pair is arrested and/or is in police custody under suspicion of committing a crime, AuPairCare will not arrange or pay for legal assistance or representation for Au Pair. Au Pair will be responsible for resolving any legal matters independently and without the assistance of AuPairCare and its staff. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

Rev 9FEB2016

**CONFIDENTIAL**　　　　　　　　　**APC 000294**

ATTORNEY EYES ONLY

# AuPairCare

34. Au Pair understands that the AuPairCare program is a smoke free program and agrees not to smoke while participating in the AuPairCare program. This includes, but is expressly not limited to, smoking in or around the Host Family home. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

35. Au Pair understands and agrees that monitoring and recording devices, including but not limited to nanny cams may be present in common areas of the Host Family home in order to monitor Au Pair's performance and interaction with the child (ren) whom Au Pair is caring for, and consents thereto and waives any and all claim of privacy rights with respect thereto.

## F. Compensation and Financial Responsibility

36. Au Pair will receive room and board in the form of meals and a suitable private bedroom in Host Family's home, which has been approved by a local AuPairCare representative.

37. Au Pair will receive a weekly stipend in accordance with the U.S. Department of State Regulations in the amount of $195.75. Said stipend shall be paid by the Host Family on the same mutually agreed upon day each week in the payment method chosen by the Host Family, and cannot be withheld for any reason.

38. Au Pair will receive two calendar weeks paid vacation (10-days), to be taken at mutually agreed upon times. Vacation days shall accrue on the basis of one day per month from the beginning of Au Pair's third month in the U.S. During Au Pair's extension program, Host Family will provide 9-month and 12-month extension Au Pair with two calendar weeks (10-days) of paid vacation, to be taken at mutually agreed upon times. A 6-month extension Au Pair will receive one calendar week (5-days) of paid vacation. Vacation days shall accrue on the basis of one day per month from the beginning of the Au Pair's thirteenth month in the U.S. If any disputes arise concerning vacation issues, AuPairCare shall resolve said dispute, and its decision shall be final.

39. Au Pair understands that he/she is not entitled to paid or unpaid time-off on U.S. holidays.

40. Au Pair will receive subsidy of educational costs from the Host Family as outlined in the "Training and Education Requirements" section of this document.

41. Upon successful completion of the program, Au Pair will receive a return flight airline ticket from AuPairCare to Au Pair's home country. Au Pair will be responsible for planning and paying for travel from the international destination airport to Au Pair's final destination in home country. Au Pair understands that in the event Au Pair does not elect to use the return air ticket provided by AuPairCare for any reason, no refund, credit, or travel voucher will be provided.

42. Au Pair understands that in 1994, the U.S. Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the Host Family. Au Pair's wages are essentially in the nature of household employment, and therefore Au Pair is required to file U.S. individual tax returns, even if no taxes are due.

43. Au Pair is responsible for complying with any Federal or state labor and/or income tax laws that may apply to Au Pair. AuPairCare does not provide legal advice regarding any such laws and is not responsible for informing Au Pair of, or overseeing compliance with, any such labor laws, including but not limited to Worker's Compensation laws and/or income or other tax laws, which may vary from state to state, and are subject to change from time to time.

44. Au Pair is wholly responsible for personal expenses and management of personal finances. AuPairCare shall not be responsible for any personal bills incurred by the Au Pair or Host Family, such as (without limitation) telephone bills, automobile expenses, travel expenses, and/or health expenses not covered by insurance. Accordingly, Au Pair agrees not to seek payment or assistance in recovering any such expenses or costs from AuPairCare.

## G. Travel and Accident Insurance

45. Au Pair will receive travel and accident insurance provided by AuPairCare through a third-party insurance carrier, and such coverage contains limitations and exclusions. Au Pair agrees to review the scope of said coverage and the limitations and exclusions contained therein prior to arrival in the United States. Said information can be accessed on AuPairCare's website: http://www.aupaircare.com/current-au-pair/insurance. Au Pair is advised and agrees that any disputes pertaining to coverage issues are strictly between Au Pair and the third-party insurance company, and agrees that AuPairCare is not responsible for any coverage issues and/or disputes.

46. Au Pair understands that pre-existing medical conditions will not be covered by the third-party travel and accident insurance.

47. Au Pair understands that the dental insurance provided to them only covers injuries that are the result of an accident, and does not cover the cost of standard dental treatment. It is therefore important for Au Pair to receive a thorough dental examination prior to arrival in the U.S. so that no unexpected complications arise during the period of residence abroad.

48. Au Pair represents that the medical history provided to AuPairCare is true, and gives full consent to release all medical and psychiatric history information to potential host families.

49. If Au Pair's medical condition changes (including pregnancy), between the time of signing this document and Au Pair's departure to the U.S., Au Pair understands that s/he is required to notify AuPairCare and resubmit another Physician Verified Medical History document prior to arrival. As with all other terms of this Agreement, if Au Pair violates this term of the Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

50. Au Pair agrees that AuPairCare and/or its affiliates or agents may, without liability or expense to themselves, take whatever action they deem appropriate with regard to Au Pair's health and safety, including, but not limited to having Au Pair hospitalized for medical services and treatment. Au Pair further agrees that if hospitalization is not feasible for any reason, AuPairCare and/or its affiliates or agents may rely upon the advice and medical judgment of local medical staff in order to make a decision as to what is in Au Pair's best

Rev 9FEB2016

CONFIDENTIAL

APC 000295

**ATTORNEY EYES ONLY**

# AuPairCare

interests. Au Pair hereby gives full consent to be medically treated pursuant to the terms set forth herein, and/or to undergo any treatment, including but not limited to surgery, which is determined to be necessary to Au Pair's health and well-being during Au Pair's stay abroad.

51. Insurance provided by AuPairCare is valid for duration of their program participation. Au Pair accepts responsibility for payment to extend insurance during their 30-day grace period.

52. Au Pair accepts full responsibility for any medical expenses that are not covered by the insurance policy provided by AuPairCare through a third party.

53. In the event Au Pair displays a serious medical condition that in the judgment of AuPairCare prevents the Au Pair from continuing in the program (including but not limited to mental illness, substance abuse, eating disorders and/or pregnancy), whether said condition is pre-existing or new, Au Pair will be terminated from the au pair program at AuPairCare's sole discretion.

## H. Training and Education Requirements

54. Au Pair agrees to complete 32 hours of training prior to arrival at Host Family home, as required by the United States Department of State. To meet this requirement, **Au Pair will attend in full the Au Pair Academy training program upon arrival in the United States and complete a required Pre-Departure Project as defined by AuPairCare.**

55. **Au Pair understands that all 12-month program Au Pairs are required to attend courses of study** at an accredited U.S. postsecondary institution for a minimum of six (6) credit hours or its equivalent in credit hours. Host Family will provide Au Pair with time off and provide adequate transportation to and from the place of instruction, and will pay tuition up to a maximum of $500 per au pair per year. Local AuPairCare Area Directors are available to provide information about this requirement and acceptable schools; however, it is Au Pair's responsibility to plan appropriately so that s/he is able to fulfill the requirement.

56. Au Pair understands that all courses shall be taken at mutually agreed upon times with the Host Family. Au Pair shall be responsible for costs associated with such educational study that exceed the amount paid by Host Family. Au Pair agrees to provide documentation of coursework completion towards the end of the program year. In the event Au Pair does not complete the educational requirement, Au Pair will be ineligible to apply for an extension of the au pair program.

## I. Extension of Au Pair Program

57. Au Pair is hereby advised and understands that au pairs wishing to participate on the Extension Program must submit their application on or before AuPairCare's published deadline date and AuPairCare does not guarantee that AuPairCare or the Department of State will approve any extension request or that au pairs who choose to self-extend will match with a new Host Family.

58. Au Pair is hereby advised and understands that au pairs participating on the extension program will receive an updated DS-2019 form that reflects the 6, 9, or 12-month program extension. Although au pairs will have a valid DS-2019 form, the J-1 visa in his/her passport may have expired during the first 12-months of stay in the U.S. Any travel outside the U.S. is at the au pair's own risk, and AuPairCare cannot assist Au Pair or Host Family in resolving any visa concerns they may encounter.

59. Au Pair understands that **Extension Au Pairs are required to repeat the educational component** of the program during the extension time as follows: The educational component for a 6-month extension is not less than three (3) semester hours of academic credit or its equivalent. Host Family will contribute up to $250 toward the educational component. The educational component for a 9 and 12-month extension is not less than six (6) semester hours of academic credit or its equivalent. Host Family will contribute up to $500 toward the educational component.

60. Au Pair is hereby advised that by extending their program they must complete the new program terms in order to be eligible for a return flight home arranged by AuPairCare. In the event that the au pair chooses to leave the program early, he/she will be responsible for booking and paying for his or her own return flight home.

## J. Problem Resolution and Placement Changes

61. Au Pair is living as a member of a Host Family and **is not under continual oversight or control of AuPairCare staff. Therefore, it is Au Pair's responsibility to promptly advise AuPairCare** of any significant problems or events that occur during the program, including but not limited to Au Pair's health, safety, welfare, or adjustment to family, culture, or languages. For purposes of this Agreement, a "significant event or problem" is any change in Au Pair's circumstance that may affect an au pair's well-being and/or living situation.

62. Au Pair is hereby advised and understands that AuPairCare requires an **initial adjustment period of 60 days following Au Pair's arrival before any placement change is considered;** however, any decision regarding Au Pair removal is at AuPairCare's sole discretion and can be made at any time.

63. Au Pair should notify the local AuPairCare representative of any misunderstandings or problems with the Host Family if they persist after Au Pair has tried to address them with Host Family. AuPairCare will work with both Au Pair and Host Family to attempt to resolve the problem before authorizing a placement change. **Au Pair must show a sustained good faith effort to resolve the issues with Host Family before AuPairCare will approve an Au Pair's request for a placement change.** If Au Pair does not make a good faith and substantial effort to resolve the problems or misunderstandings with Host Family, or if Au Pair violates any terms of this Agreement, AuPairCare may in its sole discretion terminate Au Pair's participation in the program and immediately repatriate Au Pair to his/her home country at Au Pair's expense.

64. Au Pair understands that the nature of the au pair program is one of flexibility and cultural exchange, and that placement changes may not be requested in order to achieve a preferred work schedule, location, or benefits provided by Host Family. Once Au Pair agrees to match with a Host Family, Au Pair has in effect agreed to that Host Family's required schedule, location, and benefits provided by the Host Family to Au Pair. Au Pair agrees to remain flexible in order to continually meet Host Family needs as they evolve over the course of the program year. **Changes in Host Family needs do not constitute grounds for Au Pair to request a placement change.** In the

**Rev 9FEB2016**

Page 4 of 6

CONFIDENTIAL

APC 000296

# ATTORNEY EYES ONLY

**AuPairCare**

event Au Pair's first placement is not successful, and AuPairCare determines in its sole judgment that Au Pair shall be placed in a new family, Au Pair agrees to cooperate with AuPairCare during the entire re-matching process, including but not limited to ensuring that potential new Host Families can easily reach Au Pair by e-mail and phone in a timely manner to arrange interviews. Au Pair is hereby advised and agrees that a replacement Host Family will be provided at the sole discretion of AuPairCare and may be dependent upon current Host Family availability. A replacement Host Family may not be available. In the event that AuPairCare is unable to provide a replacement Host Family within 14 days from the end of the first placement, Au Pair's participation in the program will end and Au Pair will have to return home at his/her personal expense.

65. If the Host Family is willing to house Au Pair until she or he is re-matched, and AuPairCare, at its sole discretion, determines that under the circumstances it would be reasonable for Au Pair to remain in the home, but the Au Pair refuses to stay with the family, Au Pair will be required to pay a $35.00 per day housing stipend to the party who houses him/her, typically an AuPairCare field staff member.

66. If Au Pair leaves the host family home without notice to AuPairCare and/ or Host Family and does not contact AuPairCare within 24 hours from departure, Au Pair may be subject to dismissal from the program, and Au Pair may be immediately repatriated to his/her home country at Au Pair's expense.

67. In the event Au Pair does not successfully complete their first year program, and/or extension program, if applicable, Au Pair is responsible for his/her return travel expenses.

68. AuPairCare is not responsible for any economic damage or loss alleged to arise from loss of or unavailability of a replacement Host Family.

69. Au Pair agrees that any decision regarding an au pair's program status, dismissal, or re-placement will be made at the sole discretion of AuPairCare, and said decisions shall be considered final.

### K. Other Terms and Conditions

70. Au Pair agrees to leave the United States within 30 days of the conclusion of his/her program. Au Pair understands that any stay beyond the 30-day grace period is a direct breach of the Regulations of the Department of State, and that Au Pair's future ability to travel, work or live in the United States may be compromised.

71. Au Pair understands that if he/she is terminated or voluntarily leaves the program for any reason, they are not eligible for the 30-day grace period benefit and must depart the United States immediately.

72. Au Pair agrees not to enter into any kind of contractual agreement during the program year in the United States, including but not limited to business, employment, marital or religious contracts.

73. Au Pair consents and authorizes AuPairCare to use Au Pair's name, photographs, file, application content, video resume (video CV), or video likeness of Au Pair or any comments or statements from host in materials or publications to promote the AuPairCare program.

74. Au Pair understands that AuPairCare is not a party to any agreement between Au Pair and the Originating Exchange Organization located in Au Pair's home country ("Originating Exchange Organization"). Au Pair acknowledges and agrees that the Originating Exchange Organization is solely responsible to Au Pair for injury or damage from a violation of any such agreement. AuPairCare assumes no duties or responsibilities for any acts or omissions of the Originating Exchange Organization.

75. Au Pair agrees not to post any Host Family personal information, images, or video online or in publicly accessible areas at any time, including before, during or after duration of official program year, without the Host Family's prior consent.

76. Au Pair understands that AuPairCare will make its best, reasonable, and diligent efforts at locating and screening all Host Families. Au Pair agrees to assume the risks involved in the matching with a Host Family, and hereby irrevocably, unconditionally, and fully waives, releases and forever discharges AuPairCare, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by Au Pair or any guest, employee or agent, due to:

(i) events beyond AuPairCare's reasonable control, including without limitation acts of God, acts of war or government actions or restrictions.

(ii) any events and/or acts directly or indirectly caused by any intentional or negligent acts or omissions at any time, in whole or in part, by any Au Pair and/or Host Family or by any third party, including but not limited to any member, guest, employee or agent of the Host Family or other persons in the host country, even if AuPairCare's negligence is alleged to have contributed to the event,

(iii) risks associated with foreign travel and living abroad, including but not limited to risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values,

(iv) any differences in the living conditions and standards between Au Pair's home and home country and the host home and host country, and,

(v) any act or omission of the Originating Exchange Organization.

In this respect, Au Pair acknowledges that neither Host Family nor Au Pair are an employee or agent of AuPairCare and actions or omissions of Au Pair or Host Family are not to be attributed in any way to AuPairCare. Au Pair fully agrees to assume all such risks and agrees to indemnify and hold harmless AuPairCare, its subsidiaries, officers, employees, and/or agents for any liability or expense, including court costs and legal fees incurred, that Au Pair has in any way caused or contributed to, whether directly or indirectly, and whether intentionally or unintentionally.

Rev 9FEB2016

CONFIDENTIAL

APC 000297

**ATTORNEY EYES ONLY**

# AuPairCare

77. This Agreement shall be deemed to have been made in the State of California, U.S., and its validity, construction, breach, performance and interpretation shall be governed by the laws of the State of California, U.S. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party. In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California. In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration

78. If there are any differences between this Agreement and any other program materials, this Agreement shall control. AuPairCare cannot be legally bound or committed by any person other than a duly authorized representative. Parties are required to follow this Agreement and cannot vary from its terms.

79. A DocuSign signature on this Agreement shall be considered the same as an original.

**ENTIRE AGREEMENT**
Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:

- I am capable of reading and understanding this Agreement in English
- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
- I accept the terms of this entire Agreement and understand that it is legally binding
- I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
- No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
- I have retained a copy of this Agreement for my own records

Au Pair Full Name (Signature): _____

Au Pair Full Name (Print): _____     Date : _____

Month/Day/Year

Page 6 of 6

Rev 9FEB2016

CONFIDENTIAL

APC 000298

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

      Defendants.

---

## DEFENDANT AUPAIRCARE, INC.'S ANSWER
## TO PLAINTIFFS' SECOND REQUEST FOR PRODUCTION

---

Defendant AuPairCare, Inc. ("Defendant," "AuPairCare" or "Responding
Party"), by counsel, Gordon & Rees LLP, submits the following response to
Plaintiffs' Second Requests for Production of Documents pursuant to Fed.R.Civ.P.
34:

## GENERAL OBJECTIONS

Defendant makes the following general objections, to which each of the responses set forth below is subject:

A.    Defendant objects to these requests on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration provisions.  Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper.  AuPairCare expressly reserves the right to move to dismiss this action and/or compel arbitration.  Nothing in these responses or objections may be deemed a waiver of that right.

B.    Defendant objects to Plaintiffs' instructions to the extent they require acts inconsistent with the Federal Rules of Civil Procedure or the Local Rules of this Court.

C.    Defendant objects to Plaintiffs' requests for production to the extent they improperly seek class-wide merits or damages discovery before any class or collective action has been certified or any motion for certification filed.  At present, the only plaintiffs in this case are the named Plaintiffs.  In particular but without limitation, Defendant objects to requests seeking the identity of and private and confidential information concerning putative class members prior to class certification.

D.    Defendant generally objects to Plaintiffs' requests for production of documents to the extent that Plaintiff seeks financial information and documents.  Evidence of a defendant's financial status is not discoverable.  Absent relevancy

- 2 -

and a compelling need, a party may not obtain a defendant's financial records through discovery. See *Bonanno v. Quizno's Franchise Co. LLC,* 255 F.R.D. 550, 555-56 (D. Colo. 2009) (*citing Stone v. State Farm Mut. Auto. Ins. Co.,* 185 P.3d 150, 159 (Colo. 2008)); *In re Dist. Ct., City & Cnty. of Denver,* 256 P.3d 687, 691 (2011); *Corbetta v. Albertson's, Inc.,* 975 P.2d 718, 721 n.4, 723 (Colo. 1999); *see also Leidholt v. Dist. Ct.,* 619 P.2d 768, 770 (Colo. 1980); *Packard v. Moore,* 71 P.2d 922 (Cal. 1937); *Baggett v. Davis,* 169 So. 372 (Fla. 1936); *Laidlaw v. Sage,* 52 N.E. 679 (N.Y. 1899); and 1 Jones on Evidence, §§ 4.48, 49 (6th ed. 1972)).

   E.   Defendant objects to Plaintiffs' requests for production to the extent they seek information pertaining to claims in the First Amended Complaint that are not brought against Defendant.

   F.   Defendant objects to Plaintiffs' requests for production to the extent they require production of attorney-client or work product privileged information. Defendant's production of such privileged materials is unintentional and inadvertent. Defendant requests that Plaintiff immediately return to Defendant all documents that appear to be subject to the attorney-client privilege or work product doctrine.

   G.   Defendant objects to Plaintiffs' requests for production to the extent they would require production of Defendant's proprietary business information or trade secrets.

   H.   Defendant objects to Plaintiffs' requests for production to the extent they would require production of documents and things that are not in Defendant's possession, custody, or control.

- 3 -

I. Defendant objects to Plaintiffs' requests for production to the extent they seek information that violates the privacy rights of non-parties.

J. A response that Defendant "will produce" responsive documents means that if such documents exist, are within Defendant's possession, custody and control, and are not privileged, they will be produced subject to the Court's protective order.

K. Defendant objects to Plaintiffs' requests for production to the extent they are irrelevant and reserves all rights and objections with respect to relevance, materiality and admissibility.

L. Defendant objects to Plaintiffs' requests for production pursuant to Fed.R.Civ.P. 26(b)(1) to the extent they are not proportional to the needs of the case or seek information that is not proportional to the needs of the case.

M. Defendant's production of documents shall be subject to the Protective Order entered by the Court on May 6, 2016.

N. Defendant reserves the right to supplement its responses as additional information and things are discovered, if any.

## RESPONSE TO REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 21:** All arbitration agreements that you contend apply to these claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendant objects to this request on the grounds that any alleged disputes between it and the au pairs it has sponsored are subject to mandatory arbitration

- 4 -

provisions. Therefore, as to AuPairCare, discovery propounded under the auspices of this court proceeding is improper. AuPairCare expressly reserves the right to dismiss this action and/or move to compel arbitration. Nothing in these responses or objections may be deemed a waiver of that right.

Defendant further objects to this request on the grounds it improperly seeks class-wide discovery before any class or collective action has been certified, conditionally or otherwise, and before any motion for certification has been filed. At present, the only parties to whom documents are properly discoverable are the named Plaintiffs.

Defendant objects to this request for production on the grounds that it seeks documents that are subject to AuPairCare's privacy policy. Defendant further objects to this request on the grounds that it seeks information that is proprietary and confidential to AuPairCare.

Subject to and without waiving these objections, Defendant previously produced sample form contracts between it and au pair sponsor candidates. See APC 000254 – APC 000298 (Attorney Eyes Only and Confidential documents). Examples of applicable arbitration agreements are within these contracts.

- 5 -

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 Filed 10/11/17 USDC Colorado pg 249
Case 1:14-cv-03074-CMA-KMT Document 431 Filed 11/10/16 Page 19 of 71 pg 249
of 327

DATED this 6th day of June, 2016.

> s/Peggy Kozal
> Thomas B. Quinn
> Peggy Kozal
> GORDON & REES LLP
> 555 17th Street, Suite 3400
> Denver, Colorado 80202
> Tel: 303-534-5160
> tquinn@gordonrees.com
> pkozal@gordonrees.com
>
> -and-
>
> Brian P. Maschler
> GORDON & REES LLP
> 275 Battery Street, Suite 2000
> San Francisco, CA 94579
> Tel: 415-875-3127
> bmaschler@gordonrees.com
>
> Attorneys for Defendant
> AuPairCare, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2016, I served the foregoing Defendant AuPairCare, Inc.'s Answers to Plaintiffs' First Requests For Production via email on all counsel of record as follows:

| Attorneys for Plaintiffs:<br><br>*Alexandra Ivette Gonzalez*<br>*Beaudette Deetlefs*<br>*Dayanna Paola Cardenas Caicedo*<br>*Johana Paola Beltran*<br>*Lusapho Hlatshaneni* | Alexander N. Hood<br>Towards Justice-Denver<br>Suite 300<br>1535 High Street<br>Denver, CO 80218<br>alex@towardsjustice.org<br><br>-and-<br><br>Randall W. Jackson<br>Matthew L. Schwartz<br>Peter M. Skinner<br>Boies Schiller & Flexner, LLP-New York<br>7th Floor<br>575 Lexington Avenue<br>New York, NY 10022<br>rjackson@bsfllp.com<br>mlschwartz@bsfllp.com<br>pskinner@bsfllp.com<br><br>-and-<br><br>Sigrid S. McCawley<br>Lauren F. Louis<br>Boies Schiller & Flexner, LLP-Ft. Lauderdale<br>Suite 1200<br>401 E. Las Olas Boulevard<br>Ft. Lauderdale, FL 33301<br>smccawley@bsfllp.com<br>llouis@bsfllp.com |
| *Attorneys for Defendants:*<br><br>*20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange* | Lawrence D. Stone<br>Christian D. Hammond<br>Dufford & Brown, P.C.<br>Suite 2100 |

- 7 -

| | |
|---|---|
| -and-<br>*A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair* | 1700 Broadway<br>Denver, CO 80290-2101<br>lstone@duffordbrown.com<br>chammond@duffordbrown.com |
| **Attorneys for Defendants:**<br><br>*Agent Au Pair, Inc.*<br>-and-<br>*American Cultural Exchange, LLC d/b/a GoAuPair*<br>-and-<br>*Au Pair International, Inc.* | Kathryn A. Reilly<br>Wheeler Trigg O'Donnell, LLP<br>Suite 4500<br>370 17th Street<br>Denver, CO 80202-5647<br>reilly@wtotrial.com |
| **Attorneys for Defendants:**<br><br>*APF Global Exchange, NFP d/b/a Aupair Foundation*<br>-and-<br>*American Institute for Foreign Study d/b/a Au Pair in America* | Lawrence L. Lee<br>Susan M. Schaecher<br>Fisher & Phillips LLP<br>Suite 2700<br>1801 California Street<br>Denver, CO 80202<br>llee@laborlawyers.com<br>sschaecher@laborlawyers.com |
| **Attorneys for Defendants:**<br><br>*Au Pair International, Inc.*<br>-and-<br>*American Cultural Exchange, LLC d/b/a GoAuPair* | Brian Alan Birenbach<br>Rietz Law Firm, LLC<br>Suite 301<br>114 Village Place<br>Dillon, CO 80435<br><br>brian@rietzlawfirm.com |
| **Attorneys for Defendant:**<br><br>*Cultural Care, Inc.* | Jeffrey Paul Allen<br>Donald J. Gentile<br>Lawson & Weitzen, LLP<br>Suite 345<br>88 Black Falcon Avenue<br>Boston, MA 02210<br>jallen@lawson-weitzen.com<br>dgentile@lawson-weitzen.com<br><br>-and-<br><br>Walter V. Siebert<br>Sherman & Howard L.L.C.<br>Suite 3000<br>633 17th Street<br>Denver, CO 80202<br>bsiebert@shermanhoward.com |

- 8 -

| | |
|---|---|
| | -and-<br><br>William L. Monts III<br>Hogan Lovells US LLP<br>Suite 1300<br>555 Thirteenth St., N.W.<br>Washington, CO 20004-1109<br>William.monts@hoganlovells.com |
| *Attorneys for Defendant:*<br><br>*Cultural Homestay International* | Adam A. Hubbard<br>Holland & Hart LLP<br>Suite 300<br>1800 Broadway<br>Boulder, CO 80302<br>aahubbard@hollandhart.com<br><br>James E. Hartley<br>Holland & Hart, LLP<br>Suite 3200<br>555 17th Street<br>Denver, CO 80202<br>jhartley@hollandhart.com |
| *Attorneys for Defendant:*<br><br>*EurAupair Intercultural Child Care Programs* | David B. Meschke<br>Martha L. Fitzgerald<br>Brownstein Hyatt Farber Schreck, LLP<br>Suite 2200<br>410 17th Street<br>Denver, CO 80202<br>dmeschke@bhfs.com<br>mfitzgerald@bhfs.com<br><br>-and-<br><br>Margo J. Arnold<br>Brownstein Hyatt Farber Schreck, LLP<br>Suite 3550<br>2049 Century Park East<br>Los Angeles, CA 90067<br>marnold@bhfs.com |
| *Attorney for Defendant:*<br>*Expert Group International, Inc.* | Bogdan Enica<br>Bogdan Enica, Attorney at Law<br>Suite 213<br>111 2nd Avenue NE<br>St. Petersburg, FL 33701-3440<br>bogdane@hotmail.com |

| Attorneys for Defendant:<br>*Great AuPair, LLC* | Meshach Y. Rhoades<br>Martin J. Estevao<br>Armstrong Teasdale LLP<br>Suite 800<br>4643 S. Ulster Street<br>Denver, CO 80237<br>mrhoades@armstrongteasdale.com<br>mestevao@armstrongteasdale.com |
|---|---|
| Attorneys for Defendant:<br>*InterExchange, Inc.* | Heather Fox Vickles<br>Brooke A. Colaizzi<br>Raymond M. Deeny<br>Sherman & Howard, LLC<br>Suite 3000<br>633 17th Street<br>Denver, CO 80202<br>hvickles@shermanhoward.com<br>bcolaizzi@shermanhoward.com<br>rdeeny@shermanhoward.com |
| Attorneys for Defendant:<br>*USAuPair, Inc.* | William J. Kelly, III<br>Chandra M. Feldkamp<br>Kelly & Walker LLC<br>Suite 200<br>1512 Larimer Street<br>Denver, CO 80202<br>wkelly@kellywalkerlaw.com<br>cfeldkamp@kellywalkerlaw.com |

*/s/ Lacey Fachan*

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/17 USDC Colorado pg 254
Case 1:14-cv-03074-CMA-KMT Document 431-4 Filed 11/10/16 Page 24 of 71
of 327

# Exhibit 6

**GORDON&REES**
**SCULLY MANSUKHANI**
ATTORNEYS AT LAW
275 BATTERY STREET, SUITE 2000
SAN FRANCISCO, CA 94111
PHONE: (415) 986-5900
FAX: (415) 986-8054
WWW.GORDONREES.COM

BRIAN P. MASCHLER
BMASCHLER@GORDONREES.COM

September 14, 2015

***Via E-Mail and First Class Mail***
Lauren F. Louis, Esq.
Boies, Schiller & Flexner, LLP
401 E. Las Olas Boulevard
Suite 1200
Fort Lauderdale, Florida 33301

   Re: *Beltran v. InterExchange, et al.*
      U.S. District Court for the District Court of Colorado,
      Case No. 1:14-cv-03074-CMA-KMT
      Mandatory Arbitration for Proposed Plaintiffs Laura Mejia Jimenez
      and Juilane Harning

Dear Ms. Louis:

   As you know, the contracts between AuPairCare, Inc. ("APC" or "AuPairCare") and proposed plaintiffs, Juilane Harning and Laura Mejia Jimenez, as well as APC's with other au pairs, contain mandatory arbitration and forum selection clauses, which provide as follows:

> **The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon the petition of either party.**

> **In such proceeding, the parties may utilize subpoenas and have discovery as provided in California Code of Civil Procedure Sections 1282.6, 1283 and enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California**

> **In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the**

September 14, 2015
Page 2

> **prevailing party shall be entitled to recover reasonable attorney's fees and
> costs, including but not limited to the costs of arbitration.**

(*See* Attachments A, B hereto)

AuPairCare previously produced a sample contract between it and Au Pair candidates in
response to Plaintiff's First Request for Production (*See* APC000-254-APC000298). In addition,
in response to Plaintiffs' Second Request for Production, which specifically requested "all
arbitration agreements that you contend apply to these claims," AuPairCare again referred
Plaintiffs to that previously produced contract form. (*See* Attachment C)

On August 15, 2016, the last day allowed by the Court for potential amendments to the
pleadings, your office filed a motion to amend complaint that requested that Ms. Jimenez and
Ms. Harning be added as named plaintiffs in this lawsuit. That motion currently is pending
before the Court.

We believe that adding Ms. Jimenez and Ms. Harning as plaintiffs in this lawsuit without
the consent of AuPairCare is improper in that it violates the mandatory arbitration and forum
selection provisions identified above. Please advise at your earliest opportunity whether you are
willing to stipulate to submitting the claims of Ms. Jiminez and Ms. Harning to arbitration in
accordance with the APC contract, and to dismiss them from the Colorado lawsuit, or in the
alternative, stay the Colorado lawsuit as to them pending the outcome of arbitration.

Thank you in advance for your consideration and prompt response.

Very truly yours,

GORDON & REES, LLP

Brian P. Maschler

BPM/jv
cc: Beltran Defense Counsel

Case No. 1:14-cv-03074-CMA-KMT   Document 725-1   filed 10/11/17   USDC Colorado   pg 257
Case 1:14-cv-03074-CMA-KMT   Document 431-4   Filed 11/10/16   Page 27 of 71
of 327

# Exhibit 7

Case No. 1:14-cv-03074-CMA-KMT Document 725-11 filed 10/11/17 USDC Colorado pg 258
of 327
Case 1:14-cv-03074-CMA-KMT Document 431-1 Filed 11/10/16 Page 28 of 71

*Johana Paola Beltran, et al. vs.*

*Interexchange, Inc., et al.*

---

*Confidential Video Deposition of Juliane Harning*

*September 08, 2016*

---



700 17th Street, Suite 1750
Denver, CO 80202
303-988-8470 (Office) 303-988-8478 (Fax)
SKReporting.com

Case No. 1:14-cv-03074-CMA-KMT Document 531-4 filed 10/11/17 USDC Colorado pg 259
Case 1:14-cv-03074-CMA-KMT Document 251-1 Filed 11/10/16 Page 29 of 71
of 327

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
 2
     Civil Action No. 1:14-cv-03074-CMA-KMT
 3   _____

 4   JOHANA PAOLA BELTRAN; AND THOSE SIMILARLY SITUATED,

 5       Plaintiffs,

 6   vs.

 7   INTEREXCHANGE, INC.; USAUPAIR, INC.; GREATAUPAIR, LLC;
     EXPERT GROUP INTERNATIONAL, INC., D/B/A EXPERT AUPAIR;
 8   EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS; CULTURAL
     HOMESTAY INTERNATIONAL; CULTURAL CARE, INC., D/B/A
 9   CULTURAL CARE AU PAIR; AUPAIRCARE, INC.; AU PAIR
     INTERNATIONAL, INC.; APF GLOBAL EXCHANGE, NFP; AMERICAN
10   INSTITUTE FOR FOREIGN STUDY D/B/A AU PAIR IN AMERICA;
     AMERICAN CULTURAL EXCHANGE, LLC, D/B/A GOAUPAIR; AGENT AU
11   PAIR; A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, D/B/A
     PROAUPAIR; AND 20/20 CARE EXCHANGE, INC., D/B/A THE
12   INTERNATIONAL AU PAIR EXCHANGE,

13       Defendants.
     _____

14
            CONFIDENTIAL VIDEO DEPOSITION OF JULIANE HARNING
15                    September 8, 2016
     _____

16

17

18

19

20

21

22

23

24

25
```

Page 13

```
 1    ten years; is that a fair estimate?

 2              A.   What do you understand by fluent?

 3              Q.   Sure.  You can -- you can read English?

 4              A.   Yes.

 5              Q.   And comprehend English?

 6              A.   To most parts.

 7              Q.   Okay.  And what are -- when you say for

 8    the most part, are there certain things that you do not

 9    comprehend in English?

10              A.   Well, they're like idioms, for example,

11    that are hard to understand if English is not your first

12    language.

13              Q.   But otherwise if you take a written

14    document, you can read it and understand it for the most

15    part; is that correct?

16              A.   I don't understand like medical terms or

17    legal terms, like terms like that.

18              Q.   You were able to sign an affidavit in this

19    case; is that correct?

20              A.   Yes.

21              Q.   Did you read it before you signed it?

22              A.   Yes.

23              Q.   Did you understand it before you signed

24    it?

25              A.   Yes.
```

Page 14

```
 1              Q.    You signed a contract with AuPairCare

 2    twice in the past, haven't you?

 3              A.    Yes.

 4              Q.    Did you understand it before you signed

 5    it?

 6              A.    Yes, because we got it in German.

 7              Q.    Okay.  All right.

 8                    UNIDENTIFIED SPEAKER:  Joining the

 9    meeting.

10                    MR. QUINN:  Whoever joined, could you

11    please enter your appearance for today?

12                    MS. FITZGERALD:  Hi.  It's Martha

13    Fitzgerald.  I got cut off.  I apologize.

14                    MR. QUINN:  Oh, no problem.

15              Q.    (By Mr. Quinn)  I'm going to hand you

16    what's been marked as Exhibit 41.  If you'll take a

17    moment and review it.

18                    MR. HOOD:  Thank you, Tom.

19                    MR. QUINN:  I've got more for folks that

20    want it.

21                    MR. HOOD:  Tom, could we get two, one for

22    Nina and --

23                    MR. QUINN:  Sure.  They're in --

24                    MR. HOOD:  Oh, perfect.

25                    (Exhibit 41 was marked.)
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 15

```
 1              Q.  (By Mr. Quinn)  Oops.  Hang on.  Wait a
 2    minute.  I gave you -- he's got the marked ones.  I
 3    apologize.  I marked the wrong one.  My apologies.
 4              A.   I have the marked one too.
 5                   MR. HOOD:  Did you say I have --
 6                   MR. QUINN:  No.  My mistake.  It was my
 7    mistake.
 8              A.   You want me to look at it, not read it
 9    all, right?
10              Q.  (By Mr. Quinn)  Right.  What I'm going to
11    ask you to do is take a look and confirm that's your
12    signature on the last page of Exhibit 41.
13              A.   It's really hard to tell, but it looks
14    like my signature.
15              Q.   Okay.  Do you have a recollection of
16    signing -- excuse me, of reviewing the Au Pair Agreement
17    with AuPairCare before you started your engagement --
18    your au pair engagements here in the United States?
19              A.   Yes, I had the paperwork.
20                   MR. HOOD:  Tom, I apologize.  But my copy
21    of this has work product on it.
22                   MR. QUINN:  You know, they copied it in
23    color.
24                   MR. HOOD:  Okay.
25                   MR. QUINN:  It's just highlights.  We're
```

Page 16

```
 1    going to talk about those, but thanks.  I just realized
 2    that just now.
 3            Q.  (By Mr. Quinn)  Were there any portions of
 4    this Au Pair Agreement that you had any confusion about
 5    or misunderstandings or needed any counseling on?
 6            A.   I don't remember exactly, but I don't
 7    think so.
 8            Q.   Okay.  So when you signed it, you agreed
 9    to abide by the terms of the Au Pair Agreement, right?
10            A.   Yes.  I -- yeah.
11            Q.   Okay.  All right.  You talked a moment
12    about your declaration.  I'll have you take a look at
13    what's been marked as Exhibit 42.
14            (Exhibit 42 was marked.)
15            MR. HOOD:  Thank you.
16            MR. QUINN:  Can you give me one of those
17    back, please?
18            MS. CRAIGMILE:  Sure.
19            MR. QUINN:  Thank you.
20            Q.  (By Mr. Quinn)  Have you had a chance to
21    look at that?
22            A.   Yes.
23            Q.   Okay.  Why don't you tell me how this
24    document came into being.
25            A.   What do you mean by "this"?
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 88

1    know everything about it.

2              Q.    Okay.  Did you -- you seem like a smart,

3    careful person.  Did you do any internet research to see

4    if there were other ways for you to earn a living in the

5    United States other than being an au pair?

6              MR. HOOD:  Objection as to form.

7         A.    I don't recall.

8         Q.    (By Mr. Quinn)  Do you think you did?

9         A.    I don't recall.

10             Q.    Well, you had just been in -- before you

11   came back, you had three au pair job -- experiences,

12   right?

13            A.    That's correct.

14             Q.    And in two of them you worked less hours

15   and made more money than you did in the United States,

16   correct?

17            A.    That's correct.

18             Q.    And you wanted to come back to the United

19   States and still be involved in the childcare industry,

20   correct?

21            A.    Yes.

22             Q.    Did you look into whether you could be a

23   nanny and be in the United States?

24            A.    No, because I knew you can only come here

25   legally as an au pair and only be paid 195.75.

Case No. 1:14-cv-03074-CMA-KMT Document 751-1 Filed 10/11/17 USDC Colorado pg 265
Case 1:14-cv-03074-CMA-KMT Document 1531-4 Filed 11/10/16 Page 89 of 91 pg 265
of 327

 1    nannies get paid more than au pairs?

 2             A.   I think everybody gets paid more than

 3    au pairs.

 4             Q.   When you came back to the United States to

 5    work for the Russell family, you knew that you had

 6    opportunities to be an au pair in other countries where

 7    you could work less hours and make more money, correct?

 8             A.   Yes.

 9             Q.   But you chose not to engage in those

10    au pair opportunities because you wanted to come to the

11    United States, correct?

12             A.   Can you rephrase that?

13             Q.   What about that do you not understand?

14             A.   I don't -- I don't get the point.

15             Q.   Okay.  You could have worked elsewhere for

16    more money, right, elsewhere other than the United

17    States?

18             A.   Yeah.

19             Q.   But you didn't want to go work elsewhere.

20    You wanted to work in the United States, right?

21             A.   I wouldn't say it like that.

22             Q.   How would you say it?

23             A.   That was my only option to come here.

24             Q.   Your only option to come here was to work

25    as an au pair; is that right?

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 91

```
 1              A.   Or travel, like -- and finance it myself.
 2              Q.   Let me just -- I appreciate that, and
 3    you've helped me understand what your -- what your
 4    desires were, but I just want to go back to my point.
 5    You could -- if you wanted to be an au pair, you could
 6    have done so in a different country, worked less hours,
 7    and made more money in 2014; is that right?
 8              MR. HOOD:  Objection to form.
 9              A.   I think so.
10              Q.   (By Mr. Quinn)  Okay.  But you wanted to
11    either work or travel in the United States, so that's why
12    you chose to come here, right?
13              A.   I chose to come here because I wanted to
14    see if I could have a better experience than I had the
15    first time, and I think that was the main reason why I
16    decided to do it again.
17              Q.   And you knew that by coming here you would
18    make less money and work more hours than you would
19    working in a different country.  That was part of the
20    compromise in coming here, right?
21              MR. HOOD:  Objection.
22              A.   I don't know if I would say it like that.
23              Q.   (By Mr. Quinn)  How would you say it?
24              A.   I was led to believe that the only way I
25    could come here, maybe travel here while living here
```

Case 1:14-cv-03074-CMA-KMT Document 711-1 Filed 11/10/16 Page 37 of 71

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 106

1      Q.  (By Mr. Quinn)  Sure.  You might have

2  complained to someone and said, I don't like that wage,

3  it stinks?

4      A.   I don't recall, maybe.

5      Q.   Okay.  And can I have more?  Can I get --

6  earn more?  You asked for that, didn't you?

7           MR. HOOD:  Objection.

8      A.   No, I didn't.

9      Q.  (By Mr. Quinn)  At any rate, you decided to

10  come to -- knowing that you didn't like the wage, you

11  decided to come to the United States anyway and work for

12  the Russell family as an au pair in 2014, correct?

13      A.   Yes.

14      Q.   Okay.

15           THE VIDEOGRAPHER:  Ms. Harning, can I ask

16  you to adjust your microphone, please.

17           THE DEPONENT:  Sure.  Is that better?

18           THE VIDEOGRAPHER:  Yes.

19      Q.  (By Mr. Quinn)  Did you ever make any

20  complaints to the Russell family about your au pair

21  engagement with them?

22      A.   What do you mean by that?

23      Q.   Did you ever complain about the hours?

24      A.   Maybe.

25      Q.   When you say "maybe," what do you mean by

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/17 USDC Colorado pg 268
of 327

**Johana Paola Beltran, et al. vs.**
**Interexchange, Inc., et al.**

**Confidential Video Deposition of Juliane Harning**
**September 08, 2016**

Page 122

```
 1    first -- the first time you had worked for AuPairCare; is
 2    that a fair statement?
 3            A.   Say again.
 4            Q.   Let me rephrase it.  When you filled this
 5    Exhibit 49 out, you previously had been an au pair in the
 6    United States; is that right?
 7            A.   That's correct.
 8            Q.   And you worked with the Catton family?
 9            A.   Catton.
10            Q.   Thank you for correcting me.  C-a-t-t-o-n.
11    And you had previously filled out an application that was
12    similar to this, correct?
13            A.   Yes.
14            Q.   Can I get you to take a look at the --
15    appears to be the fifth page of this application?  Do you
16    see that?  Are you there?
17            A.   I don't know.  What page are you on?
18            Q.   You're in the right area.  You're exactly
19    in the right area.  It says -- we're going to talk about
20    the very first section that says, Employer: Walter
21    Catton.  Do you see that?
22            A.   Uh-huh, yes.
23            Q.   It says here, "How many hours per week (on
24    average) did you work at this location?"
25            A.   Uh-huh.
```

Case No. 1:14-cv-03074-CMA-KMT Document 1031-1 filed 10/11/17 USDC Colorado pg 269 of 327

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 123

| | | |
|---|---|---|
| 1 | Q. | Do you see where I just read that? |
| 2 | A. | Yes. |
| 3 | Q. | What was your answer? |
| 4 | A. | I said 45. |

5   Q.   That was a true and accurate answer when
6   you filled this out, correct?

7        A.   Well, that was the allowed number of hours
8   I was supposed to be working.

9        Q.   That wasn't my question.  My question was
10  you filled this out --

11       A.   Uh-huh.

12       Q.   You already told me you filled this out
13  honestly and accurately, correct?

14       A.   I said I believed I did.

15       Q.   Well, okay.

16       A.   It's not the same --

17       Q.   And here you wrote you worked an average
18  of 45 hours for the Catton family; is that correct?

19       A.   That's what I wrote, yes.

20       Q.   Let's go -- let's go all the way back to
21  near the back of the application where it says, "Number
22  8, Personality."  Are you there?

23       A.   Uh-huh.

24       Q.   Is that a yes?

25       A.   That's a yes.

Page 125

```
 1    next page on Section 9 you gave -- you answered some
 2    questions where you typed out answers; is that right?
 3            A.   Yes.
 4            Q.   Okay.  And then in the first -- the first
 5    answer that you provided to the first question was, I am
 6    currently at university studying -- excuse me, studying
 7    teaching --
 8                 UNIDENTIFIED SPEAKER:  Joining the
 9    meeting.
10                 MR. HUBBARD:  Adam Hubbard.
11            Q.  (By Mr. Quinn)  -- parentheses, English,
12    philosophy, end parentheses, which I intend to finish
13    after my final year as an Au Pair.  I have been an
14    au pair in the USA and The Netherlands and the UK, and
15    therefore I know what to expect; is that right?  You
16    wrote that?
17            A.   That's what it says, yes.
18            Q.   So you knew what to expect in terms of
19    receiving room and board, right?
20            A.   I don't know if that's what I meant with
21    "I know what to expect."
22            Q.   Okay.  Well, you knew you should expect
23    room and board, correct?
24                 MR. HOOD:  Object to form and foundation.
25            A.   I didn't know that from being an au pair
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 171

```
 1                A.    What do you mean?
 2                Q.    Sure.  Have you ever applied to be an
 3    au pair with anyone else other than AuPairCare in the
 4    United States?
 5                A.    Do you mean signing a contract?
 6                Q.    I mean submitting an application.
 7                A.    I can't recall if I have submitted several
 8    applications.  I might have.
 9                Q.    Okay.  Do you recall which agencies you
10    might have submitted an application to with here in the
11    United States?
12                A.    Probably -- maybe Cultural Care.  That's
13    like one of the bigger ones.  AuPairCare, Cultural Care,
14    and it's probably Expert AuPair, yeah.  Those are like
15    the biggest ones in Germany, so that would be the most
16    likely.
17                Q.    When was the last time you submitted an
18    application to be an au pair?
19                A.    When I applied to be an au pair in 2013.
20                Q.    To be with the Russell family?
21                A.    Well, I didn't apply to be with them,
22    but --
23                Q.    But for that placement?
24                A.    For that placement, yeah.
25                Q.    Have you ever applied for any other
```

Johana Paola Beltran, et al. vs.
Interexchange, Inc., et al.

Confidential Video Deposition of Juliane Harning
September 08, 2016

Page 206

```
 1                 CERTIFICATE OF DEPOSITION OFFICER

 2    STATE OF COLORADO              )

 3    CITY AND COUNTY OF DENVER      )

 4              I, Deborah A. VanDemark, a Registered

 5    Professional Reporter and Notary Public within and for

 6    the State of Colorado, commissioned to administer oaths,

 7    do hereby certify that previous to the commencement of

 8    the examination, the witness was duly sworn by me to

 9    testify to the truth in relation to matters in

10    controversy between the said parties; that the said

11    deposition was taken in stenotype by me at the time and

12    place aforesaid and was thereafter reduced to typewritten

13    form by me; and that the foregoing is a true and correct

14    transcript of my stenotype notes thereof.

15              That I am not an attorney nor counsel nor in any

16    way connected with any attorney or counsel for any of the

17    parties to said action nor otherwise interested in the

18    outcome of this action.

19              My commission expires:  March 4, 2017.

20

21              _____
                DEBORAH A. VANDEMARK
22              Registered Professional Reporter
                Colorado Realtime Certified Reporter
23              Notary Public, State of Colorado

24

25
```

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/17 USDC Colorado pg 273
Case 1:14-cv-03074-CMA-KMT Document 431-4 Filed 11/10/16 Page 43 of 71
of 327

# Exhibit 8

LAURA MEJIA-JIMINEZ on 09/14/2016

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLORADO

 3   JOHANA PAOLA BELTRAN; and      )
     those similarly situated,      )
 4                                  )
                     Plaintiffs,    )
 5                                  ) Case No.
        vs.                         ) 1:14-cv-03074-CMA-KMT
 6                                  )
     INTEREXCHANGE, INC.;           )
 7   USAUPAIR, INC.; GREAT AUPAIR,  )
     LLC; EXPERT GROUP              )
 8   INTERNATIONAL, INC., DBA       )
     EXPERT AUPAIR; EURAUPAIR       )
 9   INTERCULTURAL CHILD CARE       )
     PROGRAMS; CULTURAL HOMESTAY    )
10   INTERNATIONAL; CULTURAL CARE,  )
     INC.; D/B/A CULTURAL CARE      )
11   AUPAIR; AUPAIRCARE, INC.;      )
     AUPAIR INTERNATIONAL, INC.;    )
12   APF GLOBAL EXCHANGE, NFP;      )
     AMERICAN INSTITUTE FOR         )
13   FOREIGN STUDY DBA AU PAIR IN   )
     AMERICA; AMERICAN CULTURAL     )
14   EXCHANGE, LLC, DBA GOAUPAIR;   )
     AGENT AU PAIR; A.P.E.X.        )
15   AMERICAN PROFESSIONAL          )
     EXCHANGE, LLC DBA PROAUPAIR;   )
16   and 20/20 CARE EXCHANGE,       )
     INC., DBA THE INTERNATIONAL    )
17   AU PAIR EXCHANGE,              )
                                    )
18                   Defendants.    )
     _____)
19

20        VOLUME ONE TELECONFERENCED VIDEO DEPOSITION OF

21                   LAURA MEJIA-JIMINEZ

22                San Francisco, California

23              Wednesday, September 14, 2016

24   Reported By:  KIMBERLY E. D'URSO, RPR, CSR No. 11372

25   Job No. 18766
```



```
 1      Q.    That's not my question.

 2            Do you recall signing a document, a contract,

 3      in which you acknowledged that you were not an employee

 4      of AuPairCare?

 5      A.    This is a confusing question.  Why are you        11:30:56

 6      saying not to be?

 7      Q.    Well, I've got a lot of reasons for saying

 8      that, but I'll just ask you the question again.

 9            Do you recall signing a contract with

10      AuPairCare?  We'll start with that.                     11:31:26

11      A.    Yes.

12      Q.    And when you signed that contract, did you

13      agree to abide by its terms and conditions?

14      A.    Yes.

15      Q.    And do you recall that in signing that           11:31:48

16      contract, you acknowledged that by serving as an au pair

17      for the host family, you were not an employee of

18      AuPairCare?

19            MS. LOUIS:  Object to form.

20            THE WITNESS:  Well, I don't remember, but I       11:32:12

21      worked for AuPairCare, because if you have to do a

22      rematch, it's the agency that does it, not the family.

23      If you have a problem, you have to talk to your agency,

24      not the family.  If you need something, you speak to the

25      agency, not the family.                                 11:32:40
```



LAURA MEJIA-JIMINEZ on 09/14/2016

Page 87

```
 1    it in quotations.  Why did you put it in quotations?
 2        A.   Because the agency told me -- in Colombia told
 3    me.
 4        Q.   Okay.  All right.  And did you ever see the
 5    word "stipend" in any other -- in any document that was    11:49:55
 6    provided you in connection with your au pair engagement
 7    for the Mele family?
 8        A.   I don't remember.
 9        Q.   Okay.  So the Colombian agent told you that the
10    United States government had set the stipend; is that      11:50:23
11    right?
12        A.   Yes.
13        Q.   And when were you told that?
14        A.   When I was looking at the possibility of going
15    as an au pair.                                             11:50:45
16        Q.   And that was sometime prior to July of 2014?
17        A.   Yes.  I think it was more or less in April.
18        Q.   Who was that Colombian agent?
19        A.   The agency is called InterExchange.
20        Q.   Do you remember the name of the agent?           11:51:11
21        A.   No.
22        Q.   Okay.  Did you undertake to determine whether,
23    in fact, the stipend had been set by the United States
24    government when you were told that in or about April of
25    2015 [sic]?                                                11:51:41
```



LAURA MEJIA-JIMINEZ on 09/14/2016

Page 97

```
 1      A.   No.  He's an architect.  But he speaks English
 2  very well because he lived in London and England for a
 3  long time.
 4      Q.   Okay.  Did you receive any response to that
 5  letter from AuPairCare?                                  12:09:39
 6      A.   No, they never did, and I waited for a long
 7  time.
 8      Q.   And you sent that letter, you believe, in
 9  January of 2015?
10      A.   Yes.                                            12:09:57
11      Q.   Okay.  Now, go back to your --
12           THE INTERPRETER:  Counsel, is there -- I need a
13  break --
14           MR. MASCHLER:  Well, just -- in a minute.
15           THE INTERPRETER:  -- soon.  I just wanted to    12:10:06
16  let you know.
17           MR. MASCHLER:  Okay.  We're going to break for
18  lunch in minute.
19  BY MR. MASCHLER:
20      Q.   Going back to your declaration again -- we've   12:10:12
21  marked it as Exhibit 50 -- paragraph 6 refers to a
22  statement the agent in Colombia made to you about the
23  stipend.  Do you see that?
24      A.   Yes.
25      Q.   And it says that it was an amount set by the    12:10:34
```



Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/17 USDC Colorado pg 278 of 327

```
 1    United States government.  Do you see that?

 2        A.   Yes.

 3        Q.   Do you have any reason to believe that that

 4    statement is not true?

 5        A.   No.                                            12:10:47

 6        Q.   Okay.

 7             MR. MASCHLER:  Let's break for lunch.

 8             THE VIDEOGRAPHER:  Going off the record, the

 9    time is 12:11.

10             (Lunch break taken.)                           12:11:09

11             THE VIDEOGRAPHER:  Coming back on the record,

12    the time is 1:15.

13    BY MR. MASCHLER:

14        Q.   Ms. Mejia, do you understand you're still

15    testifying under oath this afternoon?                   01:15:36

16        A.   Yes.

17        Q.   How did you first learn about the possibility

18    of becoming an au pair?

19        A.   Are you asking me about the date?

20        Q.   How did you first learn?  How did that come    01:15:58

21    into your range of consideration?

22        A.   I was looking into how to study -- well, I was

23    looking for a way to study English in a foreign country.

24        Q.   Yes, okay.  And how were you looking into that?

25        A.   I was talking to travel agencies.  I was       01:16:39
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

```
 1    talking to friends of mine who had already traveled

 2    outside the country and some friends who had already

 3    been au pairs.

 4         Q.    Okay.  Who first told you about the United

 5    States au pair program?                          01:17:03

 6         A.    One of my very best friends who was thinking of

 7    becoming an au pair at that time.

 8         Q.    Who was that?

 9         A.    Ana Isabel Tomiyo.

10         Q.    Did they ever become an au pair in the U.S.?  01:17:28

11         A.    Yes.

12         Q.    When?

13         A.    I don't remember the exact date.

14         Q.    Before or after you were an au pair or during

15    the same time?                                   01:17:42

16         A.    Before.

17         Q.    Where did you she live as an au pair in the

18    U.S.?

19         A.    New York.

20         Q.    Had Ana Isabel completed her au pair engagement  01:17:55

21    when you first applied to be an au pair?

22         A.    No.  She was an au pair at that time.

23         Q.    So she was an au pair at the time you first

24    applied to become an au pair; is that right?

25         A.    Yes.                                  01:18:26
```


EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Case No. 1:14-cv-03074-CMA-KMT   Document 751-1   filed 11/10/16   USDC Colorado   pg 280 of 327

```
 1        Q.    Do you know what agency -- what au pair agency
 2   she signed up with?
 3        A.    Cultural Care.
 4        Q.    And while she was an au pair, before you
 5   applied to become an au pair, did you have discussions     01:18:47
 6   with her about her experience as an au pair in New York?
 7        A.    Yes.
 8        Q.    What did she tell you about that experience?
 9        A.    She told me about the program, how it worked,
10   what I could do in order to become an au pair.            01:19:18
11        Q.    What did she tell you about the program?
12        A.    She told me it was a program where you would
13   work in the United States taking care of kids, that --
14   where you had some minimum work hours, and you would
15   work during those hours, and rest of the time, you could  01:19:54
16   do whatever you want, so -- but I could use those hours
17   to go to school, and the family would give you $500.
18   And she told me which agencies I could go to to see
19   about this.
20        Q.    When she referred to $500, was that for an      01:20:13
21   educational subsidy?
22        A.    No.  It was some money that the family would
23   give us so -- that we could use to pay for what we
24   wanted to study.
25        Q.    That's what I meant as an educational subsidy.  01:20:40
```



Case No. 1:14-cv-03074-CMA-KMT Document 531-1 filed 10/11/17 USDC Colorado pg 281 of 327

```
 1       Q.   What did she say about that?

 2       A.   The same, that it was 195 a week.

 3       Q.   Okay.  And did any of them indicate that $195 a

 4  week was in the form of a stipend?

 5       A.   Yes --                                           01:25:34

 6       Q.   Okay.

 7       A.   -- for the work that was done.

 8       Q.   Did you speak to Ms. Isabel other times, after

 9  you had applied to become a U.S. au pair, about her

10  experience as an au pair?                                 01:25:50

11            THE INTERPRETER:  I'm sorry.  Could the

12  question be repeated?

13            MR. MASCHLER:  Read it back, please.  There's a

14  dangling participle in there.  I apologize.

15            (Record read.)                                  01:26:12

16            (Question interpreted again.)

17            THE WITNESS:  Yes.

18  BY MR. MASCHLER:

19       Q.   What did she tell you about her experience on

20       those other occasions?                               01:26:44

21       A.   She was very happy with the program.  She had

22  three kids to take care of.  She would take them to

23  school in the morning and then pick them up in the

24  afternoon.  So in the morning, she had some free time,

25  and she wanted to study English, so she was studying      01:27:13
```



Case No. 1:14-cv-03074-CMA-KMT   Document 531-1   Filed 10/11/17   USDC Colorado   pg 282
of 327

```
 1  was correct, what the interpreter said.

 2  BY MR. MASCHLER:

 3      Q.   Okay.  So you spoke to Ana Isabel, Ana Maria

 4  Gomez, and Laura, last name you don't know.  Were there

 5  any other current or former au pair or au pair          01:31:40

 6  applicants with whom you spoke before you signed up to

 7  be an au pair in the U.S.?

 8      A.   Well, I didn't speak to any more au pairs, but

 9  I went to some agencies, travel agencies in my country.

10      Q.   Travel agencies?                                01:32:11

11      A.   Yes.

12      Q.   What travel agencies?

13      A.   I went to one called Viajes & Viajes, and I

14  went to InterExchange.  And they also had an au pair

15  program, and they told me about the options available.   01:32:38

16          They told me about the option of going to study

17  in an English-speaking country, and they told me how

18  much it would cost.  And they told me that if I wanted

19  to get into the au pair program, how much it would cost

20  me to get into that program and the advantages of doing  01:33:04

21  that.

22      Q.   What did they say were the advantages of doing

23  that?

24      A.   That it's much cheaper than paying for a school

25  to study English, that you can work and you can study at 01:33:23
```



Case No. 1:14-cv-03074-CMA-KMT   Document 751-4   Filed 11/10/16   USDC Colorado   pg 283 of 327

```
 1    the same time.
 2        Q.    Was your main reason for becoming an au pair in
 3    the U.S. to learn English?
 4            MS. LOUIS:  Object to form.
 5            THE WITNESS:  What is the question?          01:33:49
 6    BY MR. MASCHLER:
 7        Q.    Was the main reason you decided to become an
 8    au pair in the U.S. to learn English?
 9        A.    Yes, and because I could have the experience.
10        Q.    Did you ask Laura, the former au pair who      01:34:08
11    terminated her au pair engagement six months in -- did
12    you ask her about the types of work she did as an
13    au pair?
14        A.    Yes.
15        Q.    What did she tell you?                        01:34:33
16        A.    That she had to take care of the kids; she had
17    to feed them, take them to school, stay with them in the
18    evening until the mom got back.
19            And since the house was so dirty, she had to
20    clean the house.  Sometimes they told her to do it.     01:35:00
21    Sometimes she just did it on her own because it was so
22    dirty.
23        Q.    Did she tell you about the compensation she
24    earned as an au pair?
25        A.    She told me they gave her 195, like everybody,  01:35:26
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Case No. 1:14-cv-03074-CMA-KMT Document 1151-4 filed 11/10/16 USDC Colorado pg 284 of 327

```
 1   per week.
 2        Q.    And that was in the form of a stipend?
 3             MS. LOUIS:  Object to form.
 4             MR. MASCHLER:  Did you get her answer?
 5             THE REPORTER:  "Object to form."  And I have
 6   not gotten an answer yet.
 7             MR. MASCHLER:  She said "Si."
 8             THE REPORTER:  That's not in English.
 9             MR. MASCHLER:  I know.  I know.
10             But I'm wondering, did you get her answer?        01:35:57
11             THE INTERPRETER:  I was in the middle of
12   listening to her response when your question came up, so
13   I need to have her answer repeated to me.
14             (Pause.)
15             THE WITNESS:  That they paid her $195 a week     01:36:07
16   for her work.
17   BY MR. MASCHLER:
18        Q.    Okay.  And did she indicate that that was in
19    the form of a stipend?
20             MS. LOUIS:  Object to form.                       01:36:21
21             THE WITNESS:  Yes.
22   BY MR. MASCHLER:
23        Q.    Okay.  So other than Ana Isabel and Ana Maria
24    Gomez and Laura, whose name we don't recall, and the
25    travel agents, did you speak to anyone else, other than   01:36:35
```



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

1    representatives of the agencies, about the au pair

2    program in the U.S.?

3        A.    Yes.  I sent an e-mail to Cultural Care

4    requesting information about the program.

5        Q.    Yeah.  My earlier question excluded au pair                01:37:07

6    agencies, such as Cultural Care.  Okay?  So I'll ask the

7    question again, leaving to one side the information you

8    received from the agencies you consulted or did research

9    about.

10            Other than Ana Isabel and Ana Maria Gomez and             01:37:34

11    Laura, the travel agency, and InterExchange, was there

12    anyone else that you talked to about the U.S. au pair

13    program or the possibility of you joining it before you

14    signed up for that program?

15            MS. LOUIS:  Object to form.                                 01:37:55

16            THE WITNESS:  No.

17    BY MR. MASCHLER:

18        Q.    Okay.  Did any -- withdrawn.

19            Did you rely on the information provided to you

20    by the former au pair and by the travel agencies in         01:38:21

21    deciding to sign up for the U.S. au pair program?

22        A.    Yes, of course.  I figured that I had already

23    found the information I needed in order to make a

24    decision.

25        Q.    Okay.  Did any of the information that you were       01:38:59



```
 1    become an au pair in the U.S., the highest paying job
 2    you had in Colombia was working in a clothing store in
 3    2012; is that right?
 4        A.   Yes.
 5        Q.   Now, you testified that in making the decision     01:50:58
 6    whether to apply for an au pair job, you received
 7    information from former au pair and from travel agents
 8    and that you relied on that information in making that
 9    decision; is that correct?
10        A.   Yes.                                                01:51:27
11        Q.   Did you also do research about the au pair
12    program online as part of that decision-making process?
13        A.   Yes.
14        Q.   What Internet sites did you research or do
15    research on?                                                 01:51:54
16        A.   At the Cultural Care website, AuPair in
17    America, and AuPairCare.  And I looked on some
18    blocks [sic], but I don't remember the numbers exactly.
19        Q.   Blogs, b-l-o-g-s?
20        A.   Blogs.                                              01:52:17
21        Q.   Okay.  You don't remember the name of the
22    blogs?
23        A.   No, because I would go to Google and put -- do
24    a search, and then some of them would show up, and I
25    would look at them, and then I would go on to other         01:52:42
```



LAURA MEJIA-JIMINEZ on 09/14/2016

Page 117

```
 1    ones.  So I didn't really pay attention to what each one
 2    was named.
 3         Q.   Okay.  Did the blogs that you did go onto, did
 4    they say anything about the U.S. au pair program that
 5    was different than what the other au pairs you talked to    01:52:58
 6    said about it?
 7         A.   No.  It was all the same.
 8         Q.   Okay.  So they talked about the compensation
 9    that you could expect to earn as an au pair; is that
10    right?                                                     01:53:31
11         MS. LOUIS:  Object to form.
12         THE WITNESS:  Yes.
13    BY MR. MASCHLER:
14         Q.   And those blogs also talked about the types of
15    duties and responsibilities you would be expected to       01:53:39
16    perform as an au pair; is that right?
17         A.   Yes.
18         Q.   And did they talk about the maximum hours that
19    you could expect to work as an au pair in the U.S.?
20         A.   Yes.                                             01:54:04
21         Q.   Okay.  Did any of them tell you that --
22    withdrawn.
23         Did any of them indicate, in words or
24    substance, that as an au pair you could expect to earn
25    more than the $195-and-change stipend?                     01:54:17
```



Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/17 USDC Colorado pg 288 of 327

```
 1        A.    No.
 2        Q.    Okay.  Did the au pairs that you spoke to
 3   before applying to become an au pair -- did they tell
 4   you that you would receive room and board as an au pair?
 5        A.    Yes.                                                01:54:54
 6        Q.    And did the blogs also mention that as an
 7   au pair in the U.S., you could expect to receive room
 8   and board?
 9        A.    Yes.
10        Q.    And did you rely on the information you saw in   01:55:14
11   the blogs on the Internet in making your decision to
12   become an au pair?
13        A.    Not just in the blogs.
14        Q.    I wasn't saying just the blogs, but that
15   would -- did they factor into your decision-making         01:55:37
16   process?
17        A.    Yes.
18        Q.    Okay.  He has to change the tape.
19              THE VIDEOGRAPHER:  This marks the end of Video
20   Number 2 in the deposition of Laura Mejia.  Going off the  01:55:46
21   record, the time is 1:55.
22              (Break taken.)
23              THE VIDEOGRAPHER:  Here begins Video Number 3
24   in the deposition of Laura Mejia-Jimenez.  Coming back on
25   the record, the time is 2:06.                              02:06:00
```



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/11/17 USDC Colorado pg 289 of 327

```
 1   BY MR. MASCHLER:

 2        Q.   Ms. Mejia, would you please refer to your

 3   declaration, which we've marked as Exhibit 50?

 4             If you look at paragraph 3 of your declaration,

 5   it says that you "looked into different au pair agencies     02:06:17

 6   before becoming an au pair, in an attempt to select the

 7   best one."

 8             Do you see that?

 9        A.   Yes.

10        Q.   What did you do to look into different au pair     02:06:42

11   agencies?  If you would, describe the process by which

12   you selected an au pair agency.

13        A.   Well, aside from the information that I had

14   already gathered, I sent an e-mail to Cultural Care

15   asking about the program.                                    02:07:19

16             I asked my friends which companies they had

17   worked with and Laura, who's the friend of a friend, and

18   the travel agency and my girlfriends when they -- they

19   told me that -- the agency that they had worked for is

20   one that I took.                                             02:07:48

21        Q.   All right.  So you looked at Cultural Care,

22   AuPair in America, and AuPairCare; is that right?

23        A.   Yes.

24        Q.   Did you look into any other au pair agencies in

25   the U.S.?                                                    02:08:06
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Case No. 1:14-cv-03074-CMA-KMT  Document 1211-4  filed 11/10/16  USDC Colorado  pg 290
of 327

```
 1      A.    No.
 2      Q.    Okay.  So you did some research on Cultural
 3  Care, AuPair in America, and AuPairCare before a
 4  applying for an au pair position; correct?
 5      A.    Yes.                                          02:12:23
 6      Q.    And when you sent a letter to Cultural Care
 7  asking for information, did you receive anything back?
 8      A.    Yes.
 9      Q.    What did you get back from Cultural Care?
10      A.    I don't remember exactly.                    02:12:39
11      Q.    Okay.  In paragraph -- well, withdrawn.
12            What information about Cultural Care did you
13  consider in making this decision where to apply?
14      A.    I don't remember.
15      Q.    Well, was it publically available information? 02:13:28
16      A.    Yes.  It was on the Internet on their page.
17      Q.    Okay.  And do you recall what Cultural Care
18  said about its program on its website?
19      A.    I don't remember exactly, but I remember the
20  pages of the three agencies gave the same information. 02:14:02
21      Q.    Okay.  Did the agencies all indicate that
22  the -- withdrawn.
23            Did the web pages of the three agencies --
24  Cultural Care, AuPair in America, and AuPairCare --
25  indicate that the au pair program in the United States 02:14:23
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Case 1:14-cv-03074-CMA-KMT Document 1531-1 Filed 10/11/16 Page 61 of 71 pg 291

LAURA MEJIA-JIMINEZ on 09/14/2016

Page 123

```
 1    was administered by the United States Department of

 2    State?

 3              MS. LOUIS:  Object to form.

 4              THE WITNESS:  I don't remember.

 5    BY MR. MASCHLER:                                       02:14:46

 6       Q.   Did those three websites indicate that the

 7    Department of State set the stipend that was to be paid

 8    as a minimum to au pairs in the U.S. program?

 9              MS. LOUIS:  Object to form.

10              THE WITNESS:  I don't remember.            02:15:01

11    BY MR. MASCHLER:

12       Q.   Did those three websites for Cultural Care,

13    AuPair in America, and AuPairCare, respectively,

14    indicate that as an au pair in the U.S., you would be

15    entitled to room and board?                          02:15:27

16              MS. LOUIS:  Object to form.

17              THE WITNESS:  I don't remember.

18    BY MR. MASCHLER:

19       Q.   Did any of those websites discuss an

20    educational payment or subsidy that might be available  02:15:46

21    to you as an au pair in the U.S.?

22       A.   I don't remember.

23       Q.   Okay.  Did any of those three websites mention

24    the maximum hours expectation that would apply to an

25    au pair engagement in the U.S.?                      02:16:14
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

```
 1        A.    I don't remember.  I remember that the websites

 2   were general, but I don't remember the exact

 3   information.

 4        Q.    Okay.  How did you decide on AuPairCare over

 5   Cultural Care or AuPair in America?                          02:16:41

 6        A.    Because I talked to a travel agency that had a

 7   connection with an agency here, and I thought that they

 8   would be able to help me with the process, and that was

 9   my agency, the one that I worked for.

10        Q.    You worked for a travel agency?                   02:17:14

11        A.    No.

12        Q.    I think we have a disconnect in the testimony.

13              Okay.  When you say that you worked for an

14   agency, what do you mean?

15        A.    For AuPairCare.                                   02:17:33

16        Q.    Okay.  I'm now talking about information that

17   you received or reviewed before making the decision to

18   become -- to apply for an au pair position.  Okay?

19        A.    Yes, I understand.

20        Q.    All right.  And so did you speak to anyone who    02:18:04

21   worked for Cultural Care about possibly applying for an

22   au pair position sponsored by Cultural Care?

23        A.    No.  I just sent an e-mail requesting

24   information.  They wrote me back an e-mail.  But at that

25   time, I had already decided to go work with that travel     02:18:43
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Case No. 1:14-cv-03074-CMA-KMT    Document 531-4    filed 10/11/16    USDC Colorado    pg 293
of 327

 1    agency who could help me out with the process.

 2        Q.    What travel agency was this?

 3        A.    InterExchange.

 4        Q.    Okay.  And who from InterExchange did you

 5    interact with?                                          02:19:01

 6        A.    You already asked me the question, and I said I

 7    didn't remember.

 8        Q.    Okay.  You don't remember any of the people at

 9    InterExchange with whom you spoke in connection with

10    applying for an au pair position in the U.S.?           02:19:22

11        A.    No.

12        Q.    Okay.  Did the agent with whom you communicated

13    in 2014 make any statements to you or promises about the

14    AuPairCare program that were different than what

15    AuPairCare said in its website?                         02:19:51

16        A.    No.

17        Q.    Okay.  So after you decided on AuPairCare, what

18    was the next step in the process?

19        A.    I had to pay.

20        Q.    Okay.  Did you ever consult the Department of   02:20:29

21    State website in connection with your decision to apply

22    for an au pair position in the U.S.?

23        A.    When you're talking about Department of State,

24    are you talking about the United States government

25    website?                                               02:21:00



Case No. 1:14-cv-03074-CMA-KMT Document 751-1 filed 11/10/16 USDC Colorado pg 294
of 327

```
 1        Q.   I'm talking about the United States government

 2   Department of State website.

 3        A.   You're asking if I looked at it?

 4        Q.   Yes.  I'm asking if you looked at it --

 5        A.   No.                                            02:21:16

 6        Q.   -- before you applied to become an au pair in

 7   the U.S.

 8        A.   No.

 9        Q.   Have you ever gone onto or reviewed the United

10   States Department of State's website that addresses the   02:21:35

11   au pair program in the United States?

12        A.   Yes.

13        Q.   When did you do that?

14        A.   I don't remember exactly.

15        Q.   Was it in 2016?                                02:21:57

16        A.   Well, it was in 2014 when I had applied for the

17   program, because I had to get a visa, because I had to

18   find out what type of visa I had to get.

19        Q.   Okay.

20        A.   I wanted to get information.                   02:22:24

21        Q.   Okay.  And was that before or after you applied

22   for an au pair position at the AuPairCare agency?

23        A.   After.

24        Q.   Was your going online onto the Department of

25   State website before or after you traveled to the United  02:22:47
```



LAURA MEJIA-JIMINEZ on 09/14/2016

Page 154

```
 1              THE INTERPRETER:  I'm sorry.  Could that be
 2  repeated?
 3              MR. MASCHLER:  Read it back, please.
 4              (Record read.)
 5              (Question interpreted again.)                    10:18:38
 6              THE WITNESS:  At that time, yes.
 7  BY MR. MASCHLER:
 8      Q.   Okay.  If you turn to the first page of this
 9  exhibit, paragraph number 2, it says "au pair," and that
10  "au pair" refers to you.  Do you understand that?          03:39:05
11      A.   Yes.
12      Q.   Okay.  "Au pair is hereby advised and
13  acknowledges that all au pairs are participants in a
14  cultural exchange program."
15              Do you see that?                                 03:39:21
16              THE INTERPRETER:  Which paragraph is that,
17  Counsel?
18              MR. MASCHLER:  2.
19              (Question interpreted again.)
20              THE WITNESS:  Yes.                               03:39:54
21  BY MR. MASCHLER:
22      Q.   Did you understand, as of the date you signed
23  this agreement, that you were a participant in a
24  cultural exchange program?
25              MS. LOUIS:  Object to form.                      03:40:02
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Case No. 1:14-cv-03074-CMA-KMT Document 531-4 filed 11/10/16 USDC Colorado pg 296 of 327

```
 1            THE WITNESS:  Yes.

 2   BY MR. MASCHLER:

 3       Q.   This same paragraph, number 2, says that the

 4   "au pair," you, "agree to comply with all of the

 5   regulations published by the U.S. Department of State in    03:40:19

 6   22 CFR, part 514."

 7            And it refers you to a link where those

 8   regulations may be found.  Do you see that?

 9       A.   Yes.

10       Q.   Before signing this 2014 au pair agreement, did   03:41:00

11   you review those regulations published by the U.S.

12   Department of State?

13       A.   No.

14       Q.   Have you ever gone to this link or otherwise

15   reviewed the U.S. Department of State regulations           03:41:22

16   referred to in this paragraph?

17       A.   No.

18       Q.   Okay.  Please turn to paragraph 9 of the first

19   page of the 2014 au pair agreement.  It says that

20   "Au pair," you, "is not an employee, agent, or             03:41:54

21   independent contractor of AuPairCare."

22            Do you see that?

23       A.   Yes.

24       Q.   Okay.  Did you understand that that statement

25   was true as of the time you signed this agreement?         03:42:20
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Case No. 1:14-cv-03074-CMA-KMT Document 531-4 filed 11/10/16 USDC Colorado pg 297 of 327

```
 1            MS. LOUIS:  Object to form.

 2            THE REPORTER:  Can I ask them to --

 3            Can you scoot back just a little bit so I can

 4  see you?  Thank you.  Appreciate it.

 5            THE WITNESS:  I always thought I was an          03:42:26

 6  employee of AuPairCare.  Until I signed that contract, I

 7  thought I was an employee of AuPairCare, in spite of the

 8  fact that I read that section, but -- because of the fact

 9  that my Visa is backed up by AuPairCare and because of

10  the fact that the agency takes -- is what's backing us up  03:43:17

11  in the United States.

12            I always thought that AuPairCare is the company

13  that contracted me, because if I were an independent

14  contractor at the time when I did a rematch, my area

15  manager wouldn't be so concerned about where I was going   03:43:53

16  or what I'm going to do -- what's going to happen with my

17  visa, because if I was independent contractor, she would

18  have nothing to do with me.

19            But that wasn't the case, and that's the way I

20  thought, and I still think that AuPairCare contracted me.  03:44:17

21  BY MR. MASCHLER:

22       Q.   Well, you entered into a contract with the

23   AuPairCare in 2014; is that right?

24       A.   Yes.  That's this one.

25       Q.   And this line in number 9 -- paragraph 9 says    03:44:34
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

LAURA MEJIA-JIMINEZ on 09/14/2016

Page 157

```
 1    that you're not an independent contractor of AuPairCare.

 2    Do you see that?

 3         A.   Yes, I see it.

 4         Q.   Okay.  And did you ever understand that you

 5    were an independent contractor of AuPairCare?              03:44:52

 6         A.   No.

 7         Q.   In your previous answer, did you list all the

 8    reasons that you surmised that you might be an employee

 9    of AuPairCare?

10         MS. LOUIS:  Objection.                                03:45:13

11         THE WITNESS:  Yes.

12   BY MR. MASCHLER:

13         Q.   But in signing this agreement, you were advised

14    and acknowledged that you agreed that you were not an

15    employee of au pair.  Do you see that?                     03:45:33

16         A.   Yes.

17         Q.   Did you ever tell anyone at AuPairCare or

18    anyone else that you could not sign this agreement

19    because you disagreed with any of its provisions?

20         A.   I told the travel agency that it didn't seem     03:46:12

21    right to me, but they told me -- and so they told me

22    that if I didn't like that, then I couldn't be in the

23    program.  But I decided to be in the program because I

24    wanted to.

25         Q.   Well, the Mele family paid you your weekly       03:46:33
```



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Case No. 1:14-cv-03074-CMA-KMT Document 1251-1 filed 10/11/17 USDC Colorado pg 299
of 327

```
 1   STATE OF CALIFORNIA        )
                                ) ss:
 2   COUNTY OF NEVADA           )

 3

 4             I, KIMBERLY E. D'URSO, do hereby certify:

 5        That the witness named in the foregoing

 6   deposition was present and duly sworn to testify to the

 7   truth in the within-entitled action on the day and date

 8   and at the time and place therein specified;

 9        That the testimony of said witness was reported

10   by me in shorthand and was thereafter transcribed through

11   computer-aided transcription;

12        That the foregoing constitutes a full, true and

13   correct transcript of said deposition and of the

14   proceedings which took place;

15        Further, that if the foregoing pertains to the

16   original transcript of a deposition in a federal case,

17   before completion of the proceedings, review of the

18   transcript [ ] was [ ] was not requested.

19        That I am a disinterested person to the said

20   action;

21             IN WITNESS WHEREOF, I have hereunder subscribed

22   my hand this 19th day of September, 2016.

23

24   _____
     KIMBERLY D'URSO
25   CSR NO. 11372, STATE OF CALIFORNIA
```



EXCEEDING YOUR EXPECTATIONS
Combs REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

## DECLARATION OF LAURA MEJIA JIMENEZ

---

I, Laura Mejia Jimenez, declare as follows:

1.     My name is Laura Mejia Jimenez and I am over the age of 18.

2.     Sometime in or about early 2014 I was hired to be an au pair by AuPairCare, Inc. ("AuPairCare") through its agent in Colombia.

3.     I looked into different au pair agencies before becoming an au pair in an attempt to select the best one. I looked at Cultural Care, Au Pair in America, and AuPairCare.

4.     I did not base my selection on how much I could earn because the information that was publicly available from the sponsors told me that I would be paid the same amount no matter which one accepted my application.

5.     Among other things, AuPairCare's Colombian agent told me that the "stipend" for working in the United States as an au pair was $195 and some amount of cents per week. I do not remember the amount of cents, but am certain about the number of dollars.

6.     That agent also told me the "stipend" was an amount set by the United States Government and so that is what I would be paid.

7.     That agent also told me that this would equal a lot of money in Colombia.

8.     In or about April 2014, I paid the agent of AuPairCare in Colombia approximately 3,800,000 COP. In or about June 2014, I paid approximately $150 USD to the United States embassy for my visa.

9.     In or about July 21, 2014, I flew to New York, New York and was driven to somewhere in New Jersey for approximately 4 days of training by AuPairCare. My


EXHIBIT
50
9/14/16
300

understanding is that all AuPairCare au pairs are trained in New Jersey and that none of them are paid for training.

10.     The training covered all aspects of the duties I would be expected to perform as an au pair.

11.     At the training, AuPairCare told me that the stipend was $195 and some amount of cents per week. I do not remember the amount of cents, but am certain about the number of dollars. We were also told that all au pairs were paid the same, no matter where they work and no matter how many children they care for.

12.     After training I was picked up by my host family and traveled to or near Philadelphia, Pennsylvania, where my host family lived, by car.

13.     My host family had two young girls that I cared for as an au pair.

14.     During the entirety of my time as an au pair, my host family paid me $200 for each 45 hour week of work.

15.     However, after the first month, my host family left me with the children in excess of 45 hours per week. When they did so, they gave me $10 per hour for hours worked in excess of 45 in a week.

16.     I am acquainted with many other au pair who were recently working in the United States. I am not aware of one au pair earning more than $200 per week (other than amounts paid for hours worked in excess of 45 in a week); our wages have all been based on the stipend of $195.75 advertised by all of the sponsor defendants.

I solemnly affirm under the penalties of perjury that the contents of this

Declaration are true and correct to the best of my knowledge.


Dated: August 15, 2016


LAURA MEJIA JIMENEZ

Case No. 1:14-cv-03074-CMA-KMT   Document 725-1 filed 10/11/17   USDC Colorado   pg 302
Case 1:14-cv-03074-CMA-KMT   Document 431-5   Filed 11/10/16   Page 1 of 2
of 327

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.
_____

**[PROPOSED] ORDER GRANTING DEFENDANT AUPAIRCARE, INC.'S MOTION TO
COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY LAWSUIT
(RESPONSE TO SECOND AMENDED COMPLAINT, DOC#395); SUPPORTING
MEMORANDUM OF POINTS AND AUTHORITIES**
_____

The court has reviewed Defendant AuPairCare, Inc.'s Motion to Compel

Arbitration and Dismiss and is otherwise fully advised on the matter.  It is hereby

ORDERED that the Motion is **GRANTED**.

Case No. 1:14-cv-03074-CMA-KMT  Document 725-1  filed 10/11/17  USDC Colorado  pg 303
Case 1:14-cv-03074-CMA-KMT  Document 431-5  Filed 11/10/16  Page 2 of 2
of 327

DATED this _____ day of _____ 2016.


BY THE COURT



_____

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 Filed 10/10/17 USDC Colorado pg 304
Case 1:14-cv-03074-CMA-KMT Document 705 Filed 09/21/17 Page 1 of 20
of 327

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Christine M. Arguello

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ, and
SARAH CAROLINE AZUELA RASCON,

      Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a/ Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a ProAuPair,
20/20 CARE EXCHANGE, INC., d/b/a The International Au Pair Exchange,
ASSOCIATES IN CULTERUAL EXCANGE, d/b/a GoAu Pair, and
GOAUPAIR OPERATIONS, LLC,

      Defendants.

---

## ORDER DENYING DEFENDANT AUPAIRCARE, INC.'S MOTION TO COMPEL ARBITRATION

---

Case No. 1:14-cv-03074-CMA-KMT Document 735-1 filed 10/09/17 USDC Colorado pg 305
Case 1:14-cv-03074-CMA-KMT Document 705 Filed 09/21/17 Page 2 of 20
of 327

This matter is before the Court on Defendant AuPairCare, Inc.'s Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit.  (Doc. # 431.)  For the reasons detailed herein, the Motion is DENIED.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Defendant AuPairCare, Inc. ("APC") is one of several federally authorized business entities that recruits and places au pairs with host families in the United States pursuant to the J-1 visa program.  In brief, this suit arises from allegations that APC and its fellow Defendants conspired to set weekly wages for sponsored au pairs at unlawfully low rates in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, et seq., and the FLSA.  The factual background of this dispute has been set forth in greater detail in prior orders, *see* (Doc. ## 240, 569), and will be reiterated only to the extent necessary to adjudicate the instant motion to compel arbitration.

### a)  APC

When this suit was initiated in November of 2014, the original complaint did not name as plaintiffs any APC-sponsored au pairs, and the allegations against APC were limited to an antitrust claim brought pursuant to 15 U.S.C. § 1, et seq.  Nevertheless, in apparent anticipation of a day when the scope of the suit might expand to include au pairs it had sponsored, APC asserted as an affirmative defense in its answer to the Complaint that "[a]ny alleged disputes between [APC] and the au pairs it has sponsored are subject to mandatory arbitration provisions."  (Doc. # 286 at 91.)

2

Case No. 1:14-cv-03074-CMA-KMT Document 735-1 filed 10/09/17 USDC Colorado pg 306
Case 1:14-cv-03074-CMA-KMT Document 431-1 Filed 09/21/17 USDC Colorado Page 3 of 20
of 327

In response to discovery requests, APC framed objections with the explicit

purpose of preserving a right to assert a mandatory arbitration defense should APC-

sponsored au pairs join the suit.  Specifically, in its written responses to Plaintiffs' First

Request for Production of Documents and First Set of Interrogatories, APC asserted the

mandatory arbitration defense in its first General Objection and in response to each and

every individual request and interrogatory:

> Defendant Objects to these requests on the grounds that
> any alleged disputes between it and the au pairs it has
> sponsored are subject to mandatory arbitration provisions.
> Therefore, as to AuPairCare, discovery propounded under
> the auspices of this court proceeding is improper.
> <u>AuPaireCare expressly reserves the right to move to dismiss
> this action and/or compel arbitration.  Nothing in these
> responses or objections may be deemed a waiver of that
> right.</u>

(Doc. # 431-3 at 35–44) (emphasis in original).  As part of that discovery, APC produced

sample au pair agreements containing the mandatory arbitration provisions.  (*Id.* at 4.)

Thereafter, Plaintiffs' counsel propounded a Second Request for Production, requesting

"all arbitration agreements that you contend apply to these claims."  (Doc. # 431-4 at

17–18.)  In response, APC reiterated the objections designed to preserve arbitration,

and referred Plaintiffs' counsel to the Bates-stamped sample agreements produced in

response to the first request for production.  (*Id.*)

On August 15, 2015, Plaintiffs filed a Motion to Amend Complaint.  (Doc. # 329.)

The proposed Second Amended Complaint added Juliane Harning and Laura Mejia

Jimenez—both APC-sponsored au pairs—as plaintiffs, and alleged, for the first time, a

proposed collective FLSA class and sub-class consisting of APC-sponsored au pairs.

3

Case No. 1:14-cv-03074-CMA-KMT   Document 725-1   filed 10/06/17   USDC Colorado   pg 307
Case 1:14-cv-03074-CMA-KMT   Document 705   Filed 09/21/17   Page 4 of 20
of 327

*See* (Doc. # 321-1).  On October 17, 2016, this Court granted the Motion to Amend, and accepted the Second Amended Complaint.  (Doc. # 394.)

**b)  Harning, Jimenez, and the APC Agreements**

In or about August, 2013, Harning signed an APC "Au Pair Agreement."  (Doc. # 431-1 at 5-10.)  In or about July, 2014, Jimenez signed an APC "Au Pair Agreement" (collectively, the " APC Agreements").  (Doc. # 431-2 at 2–7.)  The APC Agreements describe the nature of the relationship between au pairs and host families, the basic requirements to serve as an au pair, the minimum compensation and other benefits to which the au pairs would be entitled from the host families, and other terms and conditions of the program.  Both APC Agreements expressly provide that any disputes arising from an APC au pair engagement are subject to mandatory arbitration:

> The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon petition of either party.
>
> . . . The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction. Au Pair agrees that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Court of the State of California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.
>
> In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S.

Case No. 1:14-cv-03074-CMA-KMT Document 725-1 filed 10/06/17 USDC Colorado pg 308
Case 1:14-cv-03074-CMA-KMT Document 431-5 Filed 09/21/17 Page 5 of 20
of 327

(*Id.*) The APC Agreements further provide that their "validity, construction, breach, performance and interpretation shall be governed by the State of California, U.S." (*Id.*) Both include a final acknowledgement before the signature, which reads:

> Please read the following statements carefully. Your signature below indicates you have read and understood these statements and that you agree to them:
>
> - I am capable of reading and understanding this Agreement in English
> - I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety
> - I accept the terms of this entire Agreement and understand that it is legally binding
> - I do not rely on any promises, statements or representations that are not expressly stated in this Agreement
> - No alteration of the terms of this Agreement will be valid unless approved by AuPairCare in writing
> - I have retained a copy of this Agreement for my own records

(*Id.*) Harning and Jimenez both testified that they read Agreements before signing them, (Doc. # 431-4 at 30–31, 45), but neither understood the meaning of the term "arbitration" (Doc. ## 449-1 at 2, 449-2 at 2).

On September 14, 2016, counsel for APC sent Plaintiffs' counsel a letter raising the mandatory arbitration provisions in its agreements with Harning and Jimenez, and requested that counsel agree to refer the claims related to APC for arbitration. (Doc. # 431-4 at 25–26.) Plaintiffs' counsel did not respond. (*Id.*)

### c) The Motion to Compel Arbitration

On November 11, 2016, APC filed the instant Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit, seeking enforcement of the mandatory

5

Case No. 1:14-cv-03074-CMA-KMT   Document 725-1   filed 10/06/17   USDC Colorado   pg 309
Case 1:14-cv-03074-CMA-KMT   Document 705   filed 09/21/17   Page 6 of 20
of 327

arbitration provisions in the agreements signed by Harning and Jimenez.  (Doc. # 431.)

Plaintiffs' counsel responded to the Motion on December 5, 2016, arguing that APC

waived its right to invoke arbitration by "strategically avoid[ing] arbitration for two years

in the hope of getting a clean win on the merits."  (Doc. # 449 at 7.)  Alternatively,

Plaintiffs' counsel argue that the arbitration provisions are unenforceable for procedural

and substantive unconscionability.  APC filed a reply on December 19, 2016.  (Doc. #

453.)

## II.  <u>DISCUSSION</u>

Both federal law and California law[1] strongly favor the enforcement of arbitration

provisions.  The Federal Arbitration Act ("FAA") declares and embodies a liberal policy

favoring the enforcement of arbitration provisions: "A written provision in any . . .

contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or contraction . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has described this

provision as reflecting both a "liberal federal policy favoring arbitration," *Moses H. Cone*

*Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and the

"fundamental principle that arbitration is a matter of contract," *Rent–A–Center, West,*

*Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  *See also AT&T Mobility LLC v. Concepcion*,

563 U.S. 333, 339 (2011).

---

[1] The parties agree that, because the APC Agreements have California choice of law provisions,
it is appropriate to evaluate the enforceability of the arbitration provisions under both federal and
California law.  (Doc. ## 431 at 8, 449 at 11.)

"California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). "The strong public policy of [California] favoring arbitration as a means of dispute resolution requires courts to indulge every intendment to give effect to such proceedings." *Martinez v. Scott Specialty Gases, Inc.*, 83 Cal. App. 4th 1236, 1246 (2000); *see also Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 686 (2000) ("California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration."); *Cione v. Foresters Equity Serv. Inc.*, 58 Cal. App. 4th 625, 641 (1997) ("A heavy presumption weighs in favor or arbitrability; an order directing arbitration should be granted unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

A court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Hosam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).

With respect to the second issue, "[a]ny doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing Moses H. Cone, 460 U.S. at 24–25). This presumption regarding the scope of arbitrable issues "applies with even greater force" when a broad arbitration clause is at issue. *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999). The Court concludes that, in this case, the scope of the arbitration clause

7

Case No. 1:14-cv-03074-CMA-KMT    Document 725-1 filed 10/09/17   USDC Colorado    pg 311
Case 1:14-cv-03074-CMA-KMT   Document 277   Filed 09/21/15   Page 8 of 20
of 327

covers all causes of actions brought against APC, including the FLSA and antitrust

claims.  The terms of the arbitration provision are broad, encompassing "any dispute or

claim arising out of this Agreement, including but not limited to any resulting or related

transaction or the relationship of the parties."  (Doc. ## 431-1 at 5-10, 431-2 at 2–7.)

Courts interpreting similarly expansive language have broadly construed the range of

arbitrable issues.  *See P&P Indus.*, 179 F.3d at 871 ("If the allegations underlying the

claims touch matters covered by the parties' contract, then those claims must be

arbitrated, whatever the legal labels attached to them.") (citations omitted); *see also*

*Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1289–92 (10th Cir. 2004);

*AW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1461–62 (10th Cir. 1995). For their part,

Plaintiffs' counsel, who are silent on the issue of scope, apparently concede that the

APC arbitration provisions encompass all claims against APC.

However, with respect to validity, Plaintiffs make two arguments.  First, Plaintiffs

argue that APC has waived its right to invoke arbitration by failing to raise the issue at

an earlier stage of litigation. Second, and in the alternative, Plaintiffs argue that the

arbitration provisions are procedurally and substantively unconscionable.  The Court will

address each argument in turn.

### a)  Waiver

"[T]he right to arbitration, like any other contract right, can be waived."  *Reid*

*Burton Constr., Inc. v. Carpenter's Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th

Cir. 1980).  "A party asserting a waiver of arbitration has a heavy burden of proof."

*Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464,466 (10th Cir. 1988).  "[I]n

Case No. 1:14-cv-03074-CMA-KMT Document 25-1 filed 10/30/17 USDC Colorado pg 312
Case 1:14-cv-03074-CMA-KMT Document 705 Filed 09/21/17 Page 9 of 20
of 327

assessing whether that burden has been met, [the Tenth Circuit] gives substantial

weight to the strong policy encouraging the expeditious and inexpensive resolution of

disputes through arbitration." *Hill v. Ricoh Americas Corp.*, 603 F.3d. 766, 755 (10th

Cir. 2010) (internal citation omitted). Though there is no set rule as to what constitutes

waiver of the right to arbitrate, the Tenth Circuit has noted several factors useful in

making the assessment:

> (1) whether the party's actions are inconsistent with the right
> to arbitrate;
> (2) whether "the litigation machinery has been substantially
> invoked" and the parties "were well into preparation of a
> lawsuit" before the party notified the opposing party of an
> intent to arbitrate;
> (3) whether a party either requested arbitration enforcement
> close to the trial date or delayed for a long period before
> seeking a stay;
> (4) whether a defendant seeking arbitration filed a
> counterclaim without asking for a stay of the proceedings;
> (5) "whether important intervening steps [e.g., taking
> advantage of judicial discovery procedures not available in
> arbitration] had taken place"; and
> (6) whether the delay "affected, misled, or prejudiced" the
> opposing party.

*Peterson*, 849 F.2d at 467–68 (quoting *Reid Burton*, 614 F.2d at 702) (brackets in

original). The Tenth Circuit has also observed that a party need not engage in futile

gestures to avoid a claim of waiver of arbitration. *Id.* at 466.

The gist of Plaintiffs' waiver argument is that APC "strategically avoided

arbitration for two years in the hope of getting a clean win on the merits" and, in so

doing, foreclosed any opportunity to enforce the arbitration provisions in its au pair

agreements. (Doc. # 449 at 7.) Plaintiffs also assert that "APC hid its intention to seek

arbitration." (*Id.* at 9.)

9

Case No. 1:14-cv-03074-CMA-KMT   Document 725-7   filed 10/03/17   USDC Colorado   pg 313
Case 1:14-cv-03074-CMA-KMT   Document 625-7   Filed 09/21/17   Page 20 of 20
of 327

APC moved for arbitration on November 10, 2016, a little over a month after this Court accepted the Second Amended Complaint, which added for the first time APC-sponsored au pairs as plaintiffs.  Essentially, it is the Plaintiffs' position that APC waived its right to arbitrate because it did not assert arbitration at a time when no APC au pairs, and consequently no APC au pair agreements, were implicated in the suit.  That argument boggles the mind.  Had APC filed a motion to enforce an arbitration agreement based on the hypothetical possibility that one or more current or former APC au pairs might be added to the case, APC would have been seeking an advisory opinion—an idle act beyond this Court's Article III jurisdiction and one which would have no doubt been opposed by the Plaintiffs as premature.  Counsel for APC had no obligation to file a futile motion to compel arbitration in order to preserve the right to move for arbitration at a later, appropriate time.

It is especially absurd to suggest that APC in any way concealed its intention to seek arbitration should APC-sponsored au pairs join the suit.  As detailed *supra*, at every practicable opportunity, counsel for APC endeavored—almost compulsively—to communicate and preserve arbitration objections.

Applying the guidance set forth by the Tenth Circuit to the particular facts and circumstances of this case, this Court has no trouble concluding that APC did not waive its right to arbitrate.  Filing a motion to compel arbitration within one month of the introduction of APC-sponsored au pairs and au pair agreements is not inconsistent with the right to arbitrate—indeed, the timing was perfectly reasonable given that any motion prior to the Second Amended Complaint would have been procedurally and

jurisdictionally defective.  Nor could a reasonable person construe APC's behavior as an effort to mislead or prejudice the Plaintiffs in this case, who were clearly and repeatedly put on notice that APC would move for arbitration should APC-sponsored au pairs join the suit.

### b) Unconscionability

Under the Federal Arbitration Act, an agreement to arbitrate is "valid, irrevocable and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Here, under the applicable choice of law provision, California law governs.

Under California law, the unconscionability analysis begins with an inquiry into whether the contract is one of adhesion.  *Armendariz*, 6 P.3d at 766–67.  "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961).  If the contract is adhesive, the court must then determine whether "other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable]."  *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 172 (Cal. 1981).  "Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof.  The first is that such a contract or provision which does not fall within the reasonable expectations of the

11

Case No. 1:14-cv-03074-CMA-KMT Document 625-7 filed 10/03/17 USDC Colorado pg 315
Case 1:14-cv-03074-CMA-KMT Document 225-7 Filed 09/21/17 USDC Colorado Page 12 of 20
of 327

weaker or 'adhering' party will not be enforced against him.  The second—a principle of

equity applicable to all contracts generally—is that a contract or provision, even if

consistent with the reasonable expectations of the parties, will be denied enforcement if,

considered in its context, it is unduly oppressive or 'unconscionable.' "  *Id.* at 172–73.

More recently, California Courts have referred to both the "reasonable expectations"

and the "oppressive" limitations as dimensions of the unconscionability inquiry.  *See*

*Armendariz*, 6 P.3d at 767.

Unconscionability has a "procedural" and a "substantive" element, and both must

be present in order for a court to exercise its discretion to refuse to enforce a contract or

clause.  *Id.* at 768.  "[T]he former focus[es] on oppression or surprise due to unequal

bargaining power, the latter on overly harsh or one-sided results."  *Id.*  Although both

must be present for a court to refuse to enforce a contract, they need not be present to

the same degree.  *Id.*  In short, the "more substantively oppressive the contract term,

the less evidence of procedural unconscionability is required to come to the conclusion

that the term is unenforceable, and vice versa."  *Id.*  The party opposing arbitration has

the burden of showing the arbitration agreement is both procedurally and substantive

unconscionable.  *Carmax Auto Superstores Cal. Ltd. Liabl. Co. v.Hernandez*, 94 F.

Supp. 3d 1078, 1104 (C.D. Cal. 2015).

Applying the guidance of the California Courts, this Court first concludes that the

APC Agreements are adhesive.  There can be little dispute on this point.  The APC au

Agreements were presented both to Harning and Jimenez as a take-it-or-leave-it

proposition.  The contracts contain blanks for the au pair's name and home city, but are

otherwise identical. Both Harning and Jimenez confirmed that they were not given an opportunity to negotiate terms, (Doc. ## 449-1 at ¶¶ 6–7, 449-2 at ¶¶ 6–7), and counsel for APC essentially concede that prospective au pairs were not permitted to negotiate terms by repeatedly characterizing the arbitration and forum selection clause in each agreement as "mandatory." *See*, *e.g.,* (Doc. # 449-3.) What remains is to determine whether the agreements are infected with sufficient procedural and substantive unconscionability to justify a discretionary refusal to enforce the arbitration provisions.

    *i. Procedural unconscionability*

"Procedural unconscionability addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1005 (N.D. Cal. 2015). "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 805 (Cal. Ct. App. 2005) (quotation omitted). "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises." *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016).

The APC Agreements at issue in this case are unquestionably contracts of adhesion that carry an inherent degree of procedural unconscionability. However, after considering the nature of the APC Agreements in conjunction with the unique vulnerabilities of the Plaintiffs, the Court perceives a degree of procedural

Case No. 1:14-cv-03074-CMA-KMT Document 725-5 filed 10/13/17 USDC Colorado pg 317
Case 1:14-cv-03074-CMA-KMT Document 225-7 Filed 03/21/17 Page 14 of 20
of 327

unconscionability that exceeds what one would reasonably expect from a standard
adhesion contract.

When evaluated in context, the APC Agreements are unquestionably oppressive.
At the time they first contracted with APC, Harning and Jimenez were 19 and 22-years
old, respectively. (Doc. ## 449-1 at 1, 449-2 at 1); *see Higgins v. Superior Court*, 140
Cal. App. 4th 1238, 1252 (2006) (finding youth and vulnerability of plaintiffs—aged 21,
19, 17, 16, and 14—contributed to procedural unconscionability of arbitration clause).
Both were foreigners, both spoke English as a second language, and neither had
experience with contracts or contract law. (Doc. ## 449-1 at 1–2, 449-2 at 1–2); *see
Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (finding that the
sophistication of the party being asked to submit to arbitration is relevant to the
unconscionability analysis). Though both testified that they read the contract before
signing, neither understood what the word "arbitration" meant. (Doc. ## 449-1 at 1, 449-
2 at 1.) It is beyond dispute that neither Harning nor Jimenez was afforded an
opportunity to negotiate terms. Indeed, after Ms. Jimenez indicated that she did not
want to sign the contract, an APC representative told her that she "had to." (Doc. # 449-
2 at 2.)

The procedural unconscionability of the APC Agreements is compounded by the
element of surprise.[2] The arbitration provision is buried at the end of an 82-paragraph,

---

[2] Because this Court concluded that the APC Agreements are oppressive, it need not consider
the element of surprise. *See Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 656
(2004) ("Where an adhesive contract is oppressive, surprise need not be shown."). Still, the
presence of both oppression and surprise only bolsters this Court's conclusion that the
Agreements are infected with a high degree of procedural unconscionability.

14

Case No. 1:14-cv-03074-CMA-KMT Document 725-7 filed 10/13/17 USDC Colorado pg 318
Case 1:14-cv-03074-CMA-KMT Document 295-7 Filed 09/21/17 USDC Colorado Page 15 of 20
of 327

prolix, form contract, under the exceedingly nondescript header "Other Terms and Conditions." *Compare, e.g., Pinnacle Museum Tower Assoc. v. Pinnacle Market Dev. (US) LLC*, 282 P.3d 1217, 1232 n.12 (Cal. 2012) (finding no surprise where the arbitration provisions of an agreement appeared under "bold, capitalized, and underlined" captions) *with Higgins*, 140 Cal. App. 4th at 1252–53 (finding procedural unconscionability where "[i]n contrast to several other paragraphs, no text in the arbitration provision is highlighted. No words are printed in bold letters or larger font; nor are they capitalized."). Moreover, the arbitration clause does not explain, in plain English or otherwise, that it purports to waive the au pair's rights to access to the U.S. court system, trial by jury, or appeal.

In light of the oppressive circumstances surrounding the formation of the APC Agreements, the degree to which the arbitration provisions were buried, and the extreme disparity in the bargaining power between the parties, this Court concludes that the APC Agreements are significantly undermined by procedural unconscionability.

    *ii.  Substantive unconscionability*

Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. *Pinnacle Museum Tower Assn. 0076. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012). A contract term is not substantively unconscionable merely because it gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience. *Id.* (citations omitted).

Case No. 1:14-cv-03074-CMA-KMT   Document 625-7   filed 09/21/17   USDC Colorado   pg 319
Case 1:14-cv-03074-CMA-KMT   Document 625-7   Filed 10/03/17   USDC Colorado   Page 16 of 20
of 327

Plaintiffs argue that the APC Agreements are substantively unconscionable for three reasons: (1) the arbitration provisions contain an improper fee shifting mechanism; (2) the arbitration provisions give APC the exclusive right to choose the arbitration provider; and (3) the arbitration provisions require that the dispute be decided in San Francisco.

As applied to the facts of this case, Plaintiffs' first argument is a red herring. Although the APC Agreements do contain a fee shifting mechanism that permits the prevailing party "to recover reasonable attorney's fees and costs, including but not limited to the costs or arbitration," the fee provision applies only to "any action . . . brought for breach of [the APC] Agreement." (Doc. # 431-1 at 10.) The action APC is now seeking to arbitrate was brought for violations of the FLSA and Sherman Act, not breach of the APC Agreements. Because the fee shifting provision would not apply in an arbitration of this action, this Court need not consider it.

With respect to the second argument, the Court agrees that the provision vesting APC with the right to unilaterally select an arbitrator is substantively unconscionable. In *Magno v. College Network, Inc.*, the California Court of Appeals considered an arbitration provision which allocated to the drafting party a right to unilaterally select the arbitrator. 1 Cal. App. 5th 277, 290 (Ct. App. 2016). The Court concluded that the provision was unconscionable, in spite of a clause that permitted the opposing parties to withhold consent, so long as consent was not "unreasonably withheld." *Id.*

The provision at issue in this case is more troublesome. Though it calls for the appointment of a "neutral" arbitrator, there is no mechanism through which Harning and

16

Jimenez could withhold consent, reasonably or otherwise.  In practice, APC—by fiat—
would name an arbitrator, leaving Harning and Jimenez with no opportunity to oppose
the pick, let alone confirm the arbitrator's neutrality.  Under California law, "an adhesive
agreement that gives the employer the right to choose a biased arbitrator is
unconscionable."  *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 207 (Cal. 2013).
Because the arbitration provision, in function if not form, allocates to APC the unilateral
and unreviewable right to select a biased arbitrator, the provision is substantively
unconscionable.  *Magno*, 1 Cal. App. 5th at 287 (citing *Sanchez v. Valencia Holding
Co., LLC,* 353 P.3d 741

      Finally, the Court concludes that the forum selection clause requiring any dispute
to be decided by arbitration in San Francisco is another indicium of unconscionability.
"[F]orum selection clauses are valid and should be given effect unless enforcement of
the clause would be unreasonable."  *Intershop Commc'ns, AG v. Superior Court*, 104
Cal. App. 4th 191, 196 (2002) (citing *Smith, Valentino & Smith, Inc. v. Superior Court*,
551 P.2d 1206 (Cal. 1976)).  However, if the "place and manner" restrictions of a forum
selection provision are "unduly oppressive," *see Bolter v. Superior Court*, 87 Cal. App.
4th 900, 909–10 (2001), or have the effect of shielding the stronger party from liability,
*see Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165, 1177 (N.D.Cal.2002), then the forum
selection provision is unconscionable.  California Courts have also found
unconscionability in forum selection clauses where they "seek to negate the reasonable
expectations of the nondrafting party."  *Magno*, 1 Cal. App. 5th at 287 (citing *Sanchez v.
Valencia Holding Co., LLC,* 353 P.3d 741, 748 (Cal. 2015)).

<div align="center">17</div>

There is nothing in the record to suggest Harning or Jimenez could have reasonably expected that they would be required to resolve any disputes in San Francisco, California. Harning and Jimenez are, by definition, foreign nationals. They prepared their APC applications in their respective home countries. (Doc. # 379 at 89-93.) Prior to placement, both attended a mandatory training session in New Jersey. (*Id.*) Harning did two stints as an APC au pair—once in Michigan, and once in Virginia. (*Id.*) Jimenez was placed with a family in Pennsylvania. (*Id.*) The only apparent connection this case has to the state of California is that APC is headquartered there, and there is nothing in the record to suggest that either au pair was aware of that fact.

The arbitration provision is silent with regard to whether Harning or Jimenez would be permitted to appear by phone or video. Even assuming *arguendo* that they would be allowed to participate electronically, they are left with a Hobbesian choice: incur significant expenses to pursue their claims in an unreasonable and inconvenient forum or appear remotely, foregoing the ability to testify in person, while APC participates in proceedings in its own backyard. Absent reasonable justification for this arrangement, "arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing [the stronger party's] advantage." *Armendariz*, 6 P.3d at 692. "Arbitration was not intended for this purpose." *Id.*; *see also Comb*, 218 F.Supp. 2d 1165, 1177 ("Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes.").

18

Case No. 1:14-cv-03074-CMA-KMT Document 725-7 filed 10/13/17 USDC Colorado pg 322
Case 1:14-cv-03074-CMA-KMT Document 225-2 Filed 09/21/17 Page 19 of 20
of 327

The Court perceives substantive unconscionability in both the provision vesting
APC with the unilateral authority to pick an arbitrator and the forum selection clause.
Considered in conjunction with the procedural unconscionability infecting the core of the
APC Agreements, the arbitration provisions shock the conscience of this Court, and are
unenforceable.

    *iii. Severability*

If an agreement to arbitrate is unconscionable, "the court may refuse to enforce
the contract, or it may enforce the remainder of the contract without the unconscionable
clause, or it may so limit the application of any unconscionable clause as to avoid any
unconscionable result." *Magno*, 1 Cal. App. 5th at 291. "In deciding whether to sever
terms rather than to preclude enforcement of the provision altogether, the overarching
inquiry is whether the interests of justice would be furthered by severance; the strong
preference is to sever unless the agreement is 'permeated' by unconscionability."
*Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 802 (2012).

An agreement to arbitrate is considered "permeated" by unconscionability where
it contains more than one unconscionable provision. *Armendariz*, 6 P.3d at 696. "Such
multiple defects indicate a systematic effort to impose arbitration on [the nondrafting
party] not simply as an alternative to litigation, but as an inferior forum that works to the
[drafting party's] advantage." *Id.* at 697. An arbitration agreement is also deemed
"permeated" by unconscionability if "there is no single provision a court can strike or
restrict in order to remove the unconscionable taint from the agreement." *Id.* If "the
court would have to, in effect, reform the contract, not through severance or restriction,

19

Case No. 1:14-cv-03074-CMA-KMT   Document 225-7   filed 10/03/17   USDC Colorado   pg 323
Case 1:14-cv-03074-CMA-KMT   Document 685-7   Filed 09/21/17   Page 20 of 20
of 327

but by augmenting it with additional terms," the court must void the entire agreement. *Id.*

The Court concludes that the APC Agreements are so permeated with unconscionability that severance or reformation is inappropriate.  The APC Agreements contain more than one substantively unconscionable provision.  Moreover, the APC Agreements are, at their very core, infected with a degree of procedural unconscionability that renders them irredeemable.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court ORDERS that Defendant AuPairCare, Inc.'s Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit (Doc. # 431) is DENIED.

DATED:  September 21, 2017                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

Case No. 1:14-cv-03074-CMA-KMT  Document 725-1  Filed 10/11/17  USDC Colorado  pg 324
Case 1:14-cv-03074-CMA-KMT  Document 725  Filed 10/11/17  Page 1 of 4
of 327

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.
_____

**NOTICE OF APPEAL BY DEFENDANT AUPAIRCARE, INC.**
_____

Notice is hereby given, pursuant to Fed.R.App.Proc. 4(a)(1)(A), that AuPairCare,

Inc., defendant in the above-captioned case, hereby appeals to the United States Court

of Appeals for the Tenth Circuit from the Order entered in this action on September 21,

2017 (Doc. 705), denying AuPairCare, Inc.'s Motion to Compel Arbitration and Dismiss

or, Alternatively, Stay Lawsuit (Doc. 431).

1

Defendant has the right, as a matter of law, to appeal the September 21, 2017,

Order pursuant to 9 U.S.C. §16(a).

This Notice of Appeal is timely filed pursuant to Fed.R.App.Proc. 4(a)(1).


Respectfully submitted this 11th day of October, 2017.

> _/s/ Thomas Quinn_
> Thomas B. Quinn
> Peggy E. Kozal
> Nathan Huey
> Jennifer Arnett-Roehrich
> GORDON & REES LLP
> 555 Seventeenth Street, Suite 3400
> Denver, Colorado 80202
> Tel: (303) 534-5160
> Fax: (303) 534-5161
> tquinn@grsm.com
> pkozal@grsm.com
> nhuey@grsm.com
> jarnett-roehrich@grsm.com
> **_Attorneys for Defendant-Appellant_**
> **_AuPairCare, Inc._**

2

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system, which will send notification to all counsel referenced below, and/or sent via electronic mail on this the 11th day of October, 2017 addressed to:

| | | |
|---|---|---|
| Lauren F. Louis<br>Sigrid S. McCawley<br>Sabria McElroy<br>Matthew L. Schwartz<br>Peter M. Skinner<br>Randall W. Jackson<br>Dawn L. Smalls<br>Joshua Libling<br>Sean P. Rodriguez<br>Juan P. Valdivieso<br>BOIES SCHILLER &<br>FLEXNER, LLP<br>llouis@bsfllp.com<br>smccawley@bsfllp.com<br>smcelroy@bsfllp.com<br>mlschwartz@bsfllp.com<br>pskinner@bsfllp.com<br>rjackson@bsfllp.com<br>dsmalls@bsfllp.com<br>jlibling@bsfllp.com<br>srodriguez@bsfllp.com<br>jvaldivieso@bsfllp.com<br>*and*<br>Alexander N. Hood<br>TOWARDS JUSTICE –<br>DENVER<br>alex@towardsjustice.org<br>***Attorneys for Plaintiffs*** | Brooke A. Colaizzi<br>Raymond M. Deeny<br>Heather F. Vickles<br>Joseph H. Hunt<br>Alyssa L. Levy<br>SHERMAN & HOWARD,<br>LLC<br>bcolaizzi@shermanhoward.<br>com<br>rdeeny@shermanhoward.c<br>om<br>hvickles@shermanhoward.<br>com<br>jhunt@shermanhoward.co<br>m<br>alevy@shermanhoward.co<br>m<br>***Attorneys for Defendant<br>InterExchange, Inc.*** | William J. Kelly, III<br>Chanda M. Feldkamp<br>KELLY & WALKER, LLC<br>wkelly@kellywalkerlaw.com<br>cfeldkamp@kellywalkerlaw.<br>com<br>***Attorneys for Defendant<br>USAuPair, Inc.*** |
| Meshach Y. Rhoades<br>Martin J. Estevao<br>Vance O. Knapp<br>ARMSTRONG TEASDALE,<br>LLP<br>mrhoades@armstrongteasdale<br>.com<br>mestevao@armstrongteasdale.<br>com<br>vknapp@armstrongteasdale.co<br>m<br>***Attorneys for Defendant<br>GreatAuPair, LLC*** | Bogdan Enica<br>BOGDAN ENICA,<br>ATTORNEY AT LAW<br>bogdane@hotmail.com<br>***Attorney for Defendant<br>Expert Group<br>International, Inc. d/b/a<br>Expert AuPair*** | David B. Meschke<br>Martha L. Fitzgerald<br>BROWNSTEIN HYATT<br>FARBER SCHRECK, LLP<br>dmeschke@bhfs.com<br>mfitzgerald@bhfs.com<br>***Attorneys for Defendant<br>EurAupair InterCultural<br>Child Care Programs*** |
| James E. Hartley | Brian A. Birenbach | Kathryn A. Reilly |

3

Case No. 1:14-cv-03074-CMA-KMT    Document 725-1    Filed 10/11/17    USDC Colorado    pg 327
Case 1:14-cv-03074-CMA-KMT    Document 1725-1 Filed 10/11/17 USDC Colorado Page 4 of 40
of 327

| | | |
|---|---|---|
| Adam A. Hubbard<br>Jonathan S. Bender<br>HOLLAND & HART, LLP<br>jhartley@hollandhart.com<br>aahubbard@hollandhart.com<br>jsbender@hollandhart.com<br>**Attorneys for Defendant**<br>**Cultural Homestay**<br>**International** | RIETZ LAW FIRM, LLC<br>brian@rietzlawfirm.com<br>*and*<br>Kathryn A. Reilly<br>Grace A. Fox<br>Natalie West<br>WHEELER TRIGG<br>O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>**Attorneys for Defendants**<br>**Au Pair International, Inc.;**<br>**American Cultural**<br>**Exchange, LLC d/b/a**<br>**GoAuPair** | Grace A. Fox<br>Natalie West<br>WHEELER TRIGG<br>O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>**Attorney for Defendant**<br>**Agent Au Pair** |
| Lawrence L. Lee<br>Susan M. Schaecher<br>FISHER & PHILLIPS, LLP<br>llee@laborlawyers.com<br>sschaecher@laborlawyers.com<br><br>and<br><br>John B. Fulfree<br>Joseph B. Cartafalsa<br>Robert M. Tucker<br>Stephen J. Macri<br>PUTNEY, TWOMBLY, HALL &<br>HIRSON, LLP<br>jfulfree@putneylaw.com<br>jcartafalsa@putneylaw.com,<br>jbc54@cornell.edu<br>rtucker@putneylaw.com,<br>robert.m.tucker1@gmail.com<br>smacri@putneylaw.com<br><br>**Attorneys for Defendants**<br>**APF Global Exchange, NFP**<br>**d/b/a Aupair Foundation;**<br>**American Institute for**<br>**Foreign Study d/b/a Au Pair**<br>**in America** | Eric J. Stock<br>Gibson, Dunn & Crutcher<br>LLP<br>estock@gibsondunn.com<br>mao@gibsondunn.com<br>**Attorneys for Defendant**<br>**American Institute for**<br>**Foreign Study d/b/a Au**<br>**Pair in America**<br><br>Lawrence D. Stone<br>Kathleen E. Craigmile<br>NIXON SHEFRIN HENSEN<br>OGBURN, P.C.<br>lstone@nixonshefrin.com<br>kcraigmile@nixonshefrin.co<br>m<br><br>**Attorneys for Defendants**<br>**A.P.E.X. American**<br>**Professional Exchange,**<br>**LLC d/b/a**<br>**ProAuPair;**<br>**20/20 Care Exchange, Inc.**<br>**d/b/a The International Au**<br>**Pair Exchange** | Joan A. Lukey<br>Robert M. Buchanan, Jr.<br>Michael T. Gass<br>Justin J. Wolosz<br>Lyndsey M. Kruzer<br>Kevin P. O'Keefe<br>CHOATE, HALL &<br>STEWART, LLP<br>joan.lukey@choate.com<br>rbuchanan@choate.com<br>mgass@choate.com<br>jwolosz@choate.com<br>lkruzer@choate.com<br>kokeefe@choate.com<br>  *and*<br>Diane R. Hazel<br>James M. Lyons<br>Jessica L. Fuller<br>LEWIS ROCA<br>ROTHGERBER CHRISTIE<br>LLP<br>dhazel@lrrc.com<br>jlyons@lrrc.com<br>jfuller@lrrc.com<br>**Attorneys for Defendant**<br>**Cultural Care, Inc. d/b/a**<br>**Cultural Care Au Pair** |

/s/Lisa Riggenbach
For Gordon & Rees LLP