IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

PLAINTIFFS' OPPOSITION TO AUPAIRCARE'S MOTION
TO STAY PENDING APPEAL

---

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ........................................................................................... 2

LEGAL STANDARD ..................................................................................... 4

ARGUMENT ................................................................................................ 5

I.      AUPAIRCARE REMAINS AN ACTIVE LITIGANT AGAINST TENS OF
        THOUSANDS OF PLAINTIFFS AND PUTATIVE CLASSMEMBERS. ................ 5

II.     NO BROADER STAY IS APPROPRIATE ............................................... 9

        A.      AuPairCare Must Not Be Permitted To Use Its (Unconscionable)
                Arbitration Provisions To Obstruct Claims It Cannot Arbitrate ................... 9

        B.      The Discretionary Stay Factors Militate Against Any Broader Stay ......... 10

                1.      AuPairCare is unlikely to prevail in its appeal ............................... 10

                2.      AuPairCare will not suffer irreparable harm absent a stay ............ 11

                3.      AuPairCare's proposed stay will cause substantial harm to Plaintiffs
                        ...................................................................................... 12

                4.      The public interest weighs against a stay...................................... 13

        CONCLUSION ........................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Benham v. Ozark Materials River Rock, LLC*,
  No. 11-CV-339-JED-FHM, 2013 WL 5372301 (N.D. Okla. Sept. 24, 2013) ........ 11, 13

*Boardman v. Pac. Seafood Grp.*,
  822 F.3d 1011 (9th Cir. 2016) ................................................................................... 13

*Braley v. Campbell*,
  832 F.2d 1504 (10th Cir. 1987) ................................................................................... 4

*C.F.T.C. v. Chilcott Portfolio Mgmt., Inc.*,
  713 F.2d 1477 (10th Cir. 1983) ................................................................................... 5

*E.E.O.C. v. Joslin Dry Goods Co.*,
  240 Fed. Appx. 255 (10th Cir. 2007) ...................................................................... 7, 8

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ................................................................................................ 7, 8

*E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*,
  330 F.Supp.2d 1049 (D. Neb. 2004) ........................................................................... 9

*Garcia v. Burlington N.R.R. Co.*,
  818 F.2d 713 (10th Cir. 1987) ..................................................................................... 6

*GEA Group AG v. Flex-N-Gate Corp.*,
  740 F.3d 411 (7th Cir. 2014) ................................................................................... 7, 9

*Gladd v. Landmark Logistics, Inc.*,
  No. CIV-16-894-D, 2016 WL 6407436 (W.D. Okla. Oct. 28, 2016) ........................... 12

*Griggs v. Provident Consumer Disc. Co.*,
  459 U.S. 56 (1982) ...................................................................................................... 6

*Howards v. Reichle*,
  No. 06–CV–01964, 2009 WL 2338086 (D. Colo. July 28, 2009) ................................ 4

*In re Blood Reagents Antitrust Litig.*,
  756 F. Supp. 2d 623 (E.D. Pa. 2010) ....................................................................... 14

*In re Cotton Yarn Antitrust Litig.*
   505 F.3d 274 (4th Cir. 2007) .................................................................................... 14

*In re Petrobras Sec.*,
  193 F. Supp. 3d 313 (S.D.N.Y. 2016) ....................................................................... 12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  286 F.R.D. 88 (D.D.C. 2012) ................................................................. 12

*In re Wholesale Grocery Prod. Antitrust Litig.*,
  707 F.3d 917 (8th Cir. 2013) ................................................................... 9

*Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*,
  No. 2:07-CV-116, 2009 WL 10679587 (S.D. Ohio Jan. 7, 2009) ............................ 7, 9

*KK Motors, Inc. v. Brunswick Corp.*,
  No. CIV. 98-2307(JRT/RLE, 1999 WL 246808 (D. Minn. Feb. 23, 1999) ................... 5

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ......................................................................... 4

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322 (1955) ......................................................................... 14

*Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*,
  Civ. No. 14-cv-01600 (D. Colo. Mar. 26, 2015) ........................................ 7, 8

*McCauley v. Halliburton Energy Services, Inc.*,
  413 F.3d 1158 (10th Cir. 2005) ...................................................... 4, 5, 6

*N. Carolina State Bd. of Dental Examiners v. F.T.C.*,
  135 S. Ct. 1101 (2015) ..................................................................... 14

*Narragansett Elec. Co. v. Constellation Energy Commodities Grp., Inc.*,
  563 F. Supp. 2d 325 (D.R.I. 2008) ................................................... 7, 10

*Pueblo of Pojoaque v. New Mexico*,
  214 F. Supp. 3d 1028 (D.N.M. 2016), *aff'd*, 863 F.3d 1226 (10th Cir. 2017) .............. 5

*Span–Eng Assoc. v. Weidner*,
  771 F.2d 464 (10th Cir. 1985) ...................................................... 5, 10, 11

*Strougo v. Barclays PLC*,
  194 F. Supp. 3d 230 (S.D.N.Y. 2016) ...................................................... 13

*United States v. Apple Inc.*,
  992 F. Supp. 2d 263 (S.D.N.Y. 2014), *aff'd*, 787 F.3d 131 (2d Cir. 2015) ................ 14

*United Steelworkers of Am. v. Oregon Steel Mills, Inc.*,
  322 F.3d 1222 (10th Cir. 2003) ..................................................... 4, 10

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*,
  489 U.S. 468 (1989) ............................................................. 4, 7, 14

iii

*Zenith Radio Corp. v. Hazeltine Research*,
     395 U.S. 100 (1969) ................................................................................................. 14


Statutes

9 U.S.C. § 16(a) ........................................................................................................... 6

## PRELIMINARY STATEMENT

AuPairCare's motion to stay rests on the premise that the Court is entirely without jurisdiction as to any Plaintiff's claim against AuPairCare.  ECF No. 726 (hereafter the "Stay Motion" or "Stay Mot.").  That is false as a matter of black-letter law. AuPairCare's notice of appeal can have jurisdictional effect only as to the AuPairCare *au pairs* on whom AuPairCare imposed form employment agreements that contain an arbitration provision and, furthermore, only as to those *au pairs*' claims against AuPairCare—not against the other fourteen Defendants (hereafter the "Other Defendants").  Thus, Plaintiffs do not oppose a stay solely as to claims between AuPairCare *au pair*s and AuPairCare.

But AuPairCare's Stay Motion seeks to stay the claims of every Plaintiff and putative class member in this litigation against AuPairCare without justification.  The Stay Motion makes no attempt to show why a stay could serve any purpose other than delay as to the <u>tens of thousands</u> of non-AuPairCare *au pairs* who have active antitrust conspiracy claims against AuPairCare.

The non-AuPairCare *au pairs* have no arbitration agreement with AuPairCare; they are strangers to the AuPairCare contracts at issue, to the appealed order, and to the appeal.  AuPairCare is liable to those non-AuPairCare *au pairs* as a co-conspirator, and those *au pair*s cannot be compelled to resolve their claims in arbitration.  Thus, AuPairCare will remain a litigant in this Court regardless of how the Tenth Circuit rules on AuPairCare's interlocutory appeal.  The only question is whether they proceed now or in a year or two from now, after the Tenth Circuit rules.

Nor would granting AuPairCare's stay provide any other path to significantly narrowing the litigation before this Court.  For instance, it could not reduce the number of litigants because the antitrust claims of every AuPairCare *au pair* against the fourteen Other Defendants must be resolved here notwithstanding the arbitration clause in their contracts with AuPairCare:  No arbitration provision exists between any AuPairCare *au pair* and any Other Defendant, and therefore no AuPairCare *au pair* can be compelled to arbitrate their claims against any Other Defendant.

In short, to grant AuPairCare's requested stay would allow an unconscionable term in a relatively small portion of Plaintiffs' employment agreements to delay justice for everyone.

## **BACKGROUND**

AuPairCare moved to compel arbitration as to named Plaintiffs Juliane Harning and Laura Mejia Jimenez, arguing that they are subject to mandatory arbitration for "any dispute or claim arising out of" their employment agreements with AuPairCare.  ECF No. 431, at 4.  On September 21, 2017, the Court denied the motion.  ECF No. 705 (hereafter the "Denial Order").  The Denial Order found that those agreements "are so permeated with unconscionability that severance or reformation is inappropriate" and denied AuPairCare's motion.  *Id.* at 20.

Those agreements—the Denial Order defines them as the "APC Agreements"— were the forms AuPairCare says it used when Harning agreed to be an *au pair* in August 2013, and when Jimenez agreed to be an *au pair* in January 2014.  *See* ECF No. 431, at 2 (defining the "APC Agreement" or "Agreement" as the Harning APC Agreement, ECF Nos. 431-1, and the Jimenez APC Agreement, ECF No. 431-2).

2

Those two agreements were attached as Exhibits 1 and 2 to the Declaration of Sarah V. McNamara submitted in support of AuPairCare's motion to compel arbitration. *Id.* Only these two agreements were discussed in AuPairCare's motion to compel arbitration, and they are the only agreements on which the Court issued a ruling. *See* ECF No. 705, at 5-6 & 4 (defining "APC Agreements" as Exhibits 1 and 2 of the McNamara Declaration).[1] No Other Defendant could join AuPairCare's motion to compel arbitration (and none did).

On October 11, 2017, AuPairCare noticed an interlocutory appeal of the Denial Order. ECF No. 723 (hereafter the "Notice"). No Other Defendant could join AuPairCare's Notice; none tried.

On October 12, 2017, AuPairCare filed its Stay Motion. ECF No. 726. AuPairCare's Stay Motion contends that the Notice immediately divested the district court of jurisdiction over AuPairCare, and that because its appeal is "not frivolous," the district court should "stay the case as against" it. Stay Mot. at 2. Thus, the Stay Motion falsely asserts that the Notice ousted jurisdiction as to "all causes of action brought against" AuPairCare, regardless of who brought them or whether those litigants are parties to any AuPairCare agreement. *Id.* at 3.

---

[1] The opt-ins to date include AuPairCare *au pairs* from 2008 onwards. AuPairCare needs to meet its burden to demonstrate, with evidence, that its *au pair* employment agreements from 2008-12 and 2015-present had the same terms as Ms. Harning's and Ms. Jimenez's and that every one of their *au pairs* signed those agreement. Plaintiffs have requested that AuPairCare informally cooperate by providing them such evidence. At this time, Plaintiffs will assume that all AuPairCare *au pairs* worked under agreements that contained arbitration clauses identical to those at issue in the Denial Order. If this assumption is incorrect, then this Court retains jurisdiction over any AuPairCare *au pairs* whose employment agreements do not contain an arbitration provision.

**LEGAL STANDARD**

Litigation pending the interlocutory appeal of an order denying arbitration should usually be stayed as to the claims between the parties to the arbitration agreement, but only as to those claims that would be arbitrated if the appeal were successful. *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1160-61 (10th Cir. 2005). The stay may be called "automatic" because a notice of appeal presumptively suspends district court jurisdiction over claims between the parties to the arbitration agreement. *Id.* at 1162; *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475 (1989).  A court may retain jurisdiction and deny a stay as to matters that are involved in the appeal if it certifies the appeal as "frivolous or forfeited."  *McCauley*, 413 F.3d at 1162.  An appeal is frivolous if the appellant's "arguments of error are wholly without merit."  *Braley v. Campbell*, 832 F.2d 1504, 1510-11 (10th Cir. 1987) (*en banc*); *see also Howards v. Reichle*, No. 06–CV–01964, 2009 WL 2338086, at *2 (D. Colo. July 28, 2009) (a "colorable" appeal will not be stayed).

As for everything else, the Court has inherent power to stay the proceedings of an action in order "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  "In assessing the propriety of a stay, a district court should consider:  [1] whether the defendants are likely to prevail in the related proceeding; [2] whether, absent a stay, the defendants will suffer irreparable harm; [3] whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and [4] the public interests at stake."  *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003).

4

Courts exercise their discretion to stay cases sparingly because the "right to proceed in court should not be denied except under the most extreme circumstances." *Pueblo of Pojoaque v. New Mexico*, 214 F. Supp. 3d 1028, 1085 (D.N.M. 2016), *aff'd*, 863 F.3d 1226 (10th Cir. 2017) (quoting *C.F.T.C. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)).  "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." *Chilcott,* 713 F.2d at 1484; *see also Span–Eng Assocs. v. Weidner*, 771 F.2d 464, 468 (10th Cir. 1985).  And even if the movant can justify some stay, the stay should be "limited in its scope to restrain only those aspects of the case that give rise to the effects justifying its imposition."  *KK Motors, Inc. v. Brunswick Corp.*, No. CIV. 98-2307(JRT/RLE), 1999 WL 246808, at *2 (D. Minn. Feb. 23, 1999) (granting a stay in part but exempting issues unlikely to be affected by a pending court of appeals decision).

## ARGUMENT

### I.   AUPAIRCARE REMAINS AN ACTIVE LITIGANT AGAINST TENS OF THOUSANDS OF PLAINTIFFS AND PUTATIVE CLASSMEMBERS.

AuPairCare moves pursuant only to the Tenth Circuit's "automatic" or "mandatory" stay rule.  *See* Stay Mot. 2.  A stay is "automatic" only to the extent that the Notice had any jurisdictional effect.  *See McCauley*, 413 F.3d at 1161 (the district court "retains jurisdiction to proceed with matters not involved in that appeal").  The Notice had limited jurisdictional effect:  Concerning, at most, claims by AuPairCare *au pairs* against AuPairCare (and only AuPairCare, not the Other Defendants).  Plaintiffs do not

at this time oppose a stay limited to those claims between those parties.[2]  But AuPairCare remains an active Defendant as to every other Plaintiff and putative class member because there are no arbitration agreements between those Plaintiffs and AuPairCare.

Under the Federal Arbitration Act ("FAA"), an order that denies a motion to compel arbitration is considered a "final" order that may be subject to interlocutory appeal.  9 U.S.C. § 16(a)(1)(C).  When a party files a notice of appeal, the notice "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  By the same token, a notice of interlocutory appeal has no effect on any other proceedings before the district court.  *Garcia v. Burlington N.R.R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987).  The merits between parties to an arbitration order are involved in an appeal only to the extent that there will necessarily be no district court merits litigation if the appellant succeeds (except perhaps to challenge to the arbitration award).  *See McCauley*, 413 F.3d at 1161-62.

The Notice thus had jurisdictional effect only to the same extent that AuPairCare's appeal, if successful, could halt litigation before this Court—that is, with respect to the claims against AuPairCare asserted by AuPairCare *au pairs*.  The district court retains jurisdiction over all parties and claims not subject to the arbitration

---

[2]  AuPairCare's appeal is doomed to fail, but the standard for frivolousness is extremely high and the decision at issue is sufficiently factbound that there is no precedent so squarely against AuPairCare that it lacks any colorable argument. Therefore, and without waiving any right to change position in light of AuPairCare's actual arguments on appeal, Plaintiffs do not at this time oppose the limited stay for which *McCauley* provides.

agreements on appeal because non-parties cannot be forced into litigation.  *Volt Info.*, 489 U.S. at 475 (rejecting claim that state law required a stay of litigation involving parties not bound by the arbitration agreement because the FAA "confers only the right to obtain an order directing that arbitration proceed <u>in the manner provided for in [the parties'] agreement</u>.") (emphasis and alterations in original; internal quotation marks omitted); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that [an arbitration agreement] cannot bind a nonparty."); *E.E.O.C. v. Joslin Dry Goods Co.*, 240 Fed. App'x 255, 258 (10th Cir. 2007); *GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 416 (7th Cir. 2014); *see also, e.g.*, *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2009 WL 10679587, at *4 (S.D. Ohio Jan. 7, 2009); *Narragansett Elec. Co. v. Constellation Energy Commodities Grp., Inc.*, 563 F. Supp. 2d 325, 331 (D.R.I. 2008) ("litigation may proceed against parties not subject to an arbitration agreement, even though claims against arbitrating parties have been stayed").

Every Plaintiff and putative class member in this case asserts antitrust claims against every Defendant.  Second Am. Compl., at ¶¶ 566-574 (ECF No. 395).  Only the claims of AuPairCare *au pairs* could possibly be arbitrated or affected by the Denial Order.  Thus, <u>every</u> Plaintiff and putative class member except AuPairCare *au pairs* has an antitrust claim against AuPairCare that is unaffected by the appeal and cannot be subject to an automatic stay.[3]

---

[3]   AuPairCare's cited cases accord with Plaintiffs' arguments in this section.  Mot. 4 & Exs. 1-2 (*Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*, Civ. No. 14-cv-01600 (D. Colo. Mar. 26, 2015); *Belnap v. IASIS Healthcare Corp.*, Case No. 2:14-cv-00086 (D. Utah Feb. 20, 2015)).  In *Let's Go*, an arbitration clause existed between the

*Joslin Dry Goods* illustrates.  *E.E.O.C. v. Joslin Dry Goods Co.*, No. CIV.A. 05-CV-00177WD, 2007 WL 433144 (D. Colo. Feb. 2, 2007).  The defendant there sought to compel arbitration against one plaintiff and, after losing the motion, sought to stay <u>all</u> claims against it pending appeal, even those brought by a co-plaintiff not subject to the arbitration agreement.  *Id*. at *1.  *Joslin* denied the stay, reasoning that regardless of the success of defendant's appeal, it "would still have to litigate" the co-plaintiff's claims.  *Id*. at *2.  On appeal the Tenth Circuit dismissed the appeal as moot, following a settlement by plaintiff and defendant (but not co-plaintiff).  240 Fed. App'x at 258.  In discussing its rationale, the Tenth Circuit cited *Waffle House* for the proposition that "the arbitration agreement which forms the basis of the appeal does not bind the [co-plaintiff] or preclude litigation between the [co-plaintiff] and [defendant], the only two remaining parties in this case."  *Id*.

The same is true here.[4]

---

sole plaintiff and the sole defendant.  *Let's Go* did not address the situation where fewer than all parties on one side of the *v.* had no arbitration clause with a party on the other side.  In the *Belnap* order that AuPairCare cites, the issue was whether the notice of appeal itself terminated jurisdiction and presumptively created the "automatic" stay, or whether the parties appealing the arbitration order had to move for a stay.  Mot. Ex. 2 at 1-2.  The answer is a black-letter rule of procedure that the parties here do not dispute. Furthermore, *Belnap* was a multi-defendant case where the district court properly granted a stay as to the entire case after the notice of appeal because the appeal could have ended litigation in the district court as to <u>every one</u> of that case's multiple parties: The appealed order denied a motion to compel arbitration brought by every one of the defendants against a single plaintiff.  *See Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017) (resolving issues that affected every defendant—which forum would decide arbitrability and whether all defendants could compel arbitration of the entire case).  Thus, the *Belnap* order AuPairCare cites fully comports in both result and reasoning with every one of the principles Plaintiffs explain above.

[4]     As explained above, the Denial Order defined the term "APC Agreement" to refer to the agreements signed by Plaintiffs Harning and Jimenez, and those were the only

## II.     NO BROADER STAY IS APPROPRIATE

### A. AuPairCare Must Not Be Permitted To Use Its (Unconscionable) Arbitration Provisions To Obstruct Claims It Cannot Arbitrate

It would be perverse to permit AuPairCare to use its unconscionable employment agreements with a relatively small percentage of the Plaintiffs and putative class members to delay justice for tens of thousands of litigants who were never subject to any agreement that contained an arbitration provision.

Indeed, it is "not only reasonable but eminently sensible" that litigation continue between parties without arbitration agreements while an interlocutory order is on appeal between different parties.  *GEA Group*, 740 F.3d at 416; *see also, e.g.*, *In re Wholesale Grocery Prod. Antitrust Litig.*, 707 F.3d 917, 919 (8th Cir. 2013) (holding that plaintiffs could litigate antitrust claims against defendant with whom they did not have arbitration agreements even though they had arbitration agreements with another defendant); *Joslin*, 2007 WL 433144, at *2 (D. Colo. Feb. 2, 2007) (denying stay as to party not subject to arbitration agreement); *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y,* 330 F.Supp.2d 1049, 1056 (D. Neb. 2004) (same); *Inhalation Plastics*, 2009 WL 10679587, at *4 (staying case as to claim potentially subject to arbitration pending

---

agreements before the Court.  *See* Denial Order at 4 (defining "APC Agreement"). Thus, the Denial Order makes its limitations express:  It goes only to those claims made by parties bound by a particular arbitration clause—*i.e.*, what was before the Court when it ruled.  *Waffle House,* 534 U.S. at 294 ("It goes without saying that a[n] [arbitration agreement] cannot bind a nonparty.").

In a filing directed to Magistrate Judge Tafoya, AuPairCare went a step further, saying that Plaintiffs agreed with or waived any objection to its overbroad view because the parties relevant to that motion—Harning and Jimenez—did not dispute that the arbitration agreement concerned all claims <u>they</u> asserted against AuPairCare.  ECF No. 737, at 3.  Plaintiffs did not and do not contest a stay as Harning and Jimenez's claims against AuPairCare because those are claims between AuPairCare *au pairs* and AuPairCare. There is no inconsistency; there was no waiver.

appeal while allowing discovery to proceed as to claim not subject to arbitration);
*Narragansett Elec.*, 563 F. Supp. 2d at 331.

### B.  The Discretionary Stay Factors Militate Against Any Broader Stay

AuPairCare is not entitled to stay the claims of parties who did not work under AuPairCare's form *au pair* employment agreements.  The Court, however, has discretion to stay proceedings before it.  AuPairCare has not requested such a discretionary stay and has not attempted to make the showing required for one (nor could it).  The Court should not grant one in any event.[5]

The factors that a Court should consider when determining whether to grant a discretionary stay are (1) likelihood of success; (2) any irreparable harm to the movant; (3) any substantial harm to the other parties in this case; and (4) the public interest. *United Steelworkers*, 322 F.3d at 1227.  This section addresses each of those factors in turn, explaining why AuPairCare cannot make the "strong showing of necessity" needed to justify "delay[ing] court proceedings by other litigants."  *Chilcott,* 713 F.2d at 1484; *see also Span–Eng Assocs.*, 771 F.2d at 468.

### 1.  AuPairCare is unlikely to prevail in its appeal

AuPairCare is unlikely to prevail in its appeal.  This Court applied the law correctly, and it is obvious that young people who live in foreign countries and come to

---

[5]  This section anticipates AuPairCare's arguments rather than waiting for AuPairCare to file a motion using the correct standard and analysis.  The issues are straightforward, and there is no reason for AuPairCare to consume more resources by filing a second motion to stay making the arguments it should have made the first time. However, because Plaintiffs are opposing arguments they have never seen, Plaintiffs may seek leave for a short sur-reply if AuPairCare's reply makes inaccurate statements or different arguments.

the United States to work for one or two years would effectively give up any right for redress under the terms of AuPairCare's form agreements.  Denial Order at 13-19.

AuPairCare's explanation of its appeal confirms the weakness of its arguments. AuPairCare says only that it "will argue that, contrary to this Court's Order, the terms of the mandatory arbitration provision should be enforced in accordance with the California and federal 'presumption in favor of arbitrability.'"  *Id.* at 5.  But the Court specifically recognized the presumption in favor of arbitrability, and found that it was overcome on the facts of this case.  *See* Denial Order at 7.  The Court held that the presumption was overcome: "Considered in conjunction with the procedural unconscionability infecting the core of the APC Agreements, the arbitration provisions shock the conscience of this Court, and are unenforceable."  *Id.* at 19.  AuPairCare does not explain why the facts of this case do not overcome the presumption, or why its assertions are correct as a matter of law.  *Cf. Benham v. Ozark Materials River Rock, LLC*, No. 11-CV-339-JED-FHM, 2013 WL 5372301, at *2 (N.D. Okla. Sept. 24, 2013) (failure to show likelihood of success where movant does "little to explain its claims in the collateral proceeding").

## 2.  AuPairCare will not suffer irreparable harm absent a stay

AuPairCare does not argue that it will suffer any harm should this Court deny its motion to stay, let alone make the required "strong showing of necessity," or "a case of hardship or inequity." *Span-Eng*, 771 F.2d at 468.  It cannot.

Even if AuPairCare believes that it would be expensive and inconvenient to litigate in two fora, that argument has been rejected in exactly this context.  *See Joslin*, 2007 WL 433144, at *4 ("The problem and expense of having to possibly litigate in two fora, if the Tenth Circuit rules in favor of [the defendant], would be a function of the

existence of arbitrable and non-arbitrable claims (depending on the identity of the plaintiff), a circumstance that the district courts routinely encounter."). It was AuPairCare's decision to try to split the litigation into two fora. Any "harm" to AuPairCare was a foreseeable consequence of its own tactical decisions.

### 3. AuPairCare's proposed stay will cause substantial harm to Plaintiffs

On the other hand, AuPairCare's proposed stay would prejudice Plaintiffs' rights to the "the just, speedy, and inexpensive determination" of their action. *See Gladd v. Landmark Logistics, Inc.*, No. CIV-16-894-D, 2016 WL 6407436, at *3 (W.D. Okla. Oct. 28, 2016). Delaying Plaintiffs' ability to recover from AuPairCare and to obtain its evidence would be particularly unfair here where AuPairCare's issue on appeal is "subordinate" in light of the large number of Plaintiffs and Defendants not affected by the order. *Cf. In re Petrobras Sec.*, 193 F. Supp. 3d 313, 317 (S.D.N.Y. 2016) ("It is notorious that the bane of the American legal process is expensive, dispiriting, undue delay, and in this case, given the relative subordinate position of the class action, the requested stay would serve to magnify these difficulties."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 93–94 (D.D.C. 2012) ("In this five-year old lawsuit, delayed resolution of the claims would substantially harm class members, as a stay would postpone summary judgment and trial for many months, or possibly over a year."). "A stay would postpone any compensation that class members might receive if plaintiffs succeed on the merits, and would delay a definitive resolution of the case regardless of who ultimately prevails." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. at 94.

In fact, the harm at stake here far exceeds the "substantial" threshold.  The Defendants inflict <u>irreparable</u> harm to the market and competition every day AuPairCare's antitrust conspiracy is allowed to continue.  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) ("lessening of competition constitutes an irreparable injury").

### 4.   <u>The public interest weighs against a stay</u>

The public interest favors "expeditious resolution of civil litigation."  *Benham v. Ozark Materials River Rock, LLC*, No. 11-CV-339-JED-FHM, 2013 WL 5372301, at *3 (N.D. Okla. Sept. 24, 2013).  Here, no judicial resources will be saved with a stay because, as discussed above, regardless of how the Tenth Circuit rules on AuPairCare's appeal, AuPairCare will still have to litigate Plaintiffs' antitrust claims in this Court (even if a small subset of Plaintiffs are compelled to arbitrate).  *See Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) ("judicial economy is not promoted if the issue on appeal will not be dispositive of the entire case").  To the contrary, AuPairCare's requested stay can only consume more resources:  Even if AuPairCare wins its appeal and the relief it seeks, there will still be antitrust claims between Plaintiffs and AuPairCare that will proceed in this Court—which means that discovery and other proceedings would have to re-open as to AuPairCare approximately 1-2 years from now.  That is far less efficient than proceeding with the live antitrust claims against AuPairCare in concert with the same claims for the same conspiracy against the Other Defendants.

As for the AuPairCare *au pairs* whose claims against AuPairCare are appropriately stayed, even if AuPairCare were correct that its arbitration provisions

could be enforced, its *au pairs* would only have agreed to arbitration between them and AuPairCare. *Volt Info.*, 489 U.S. at 475. The Notice would not affect whether they can proceed in this Court against the Other Defendants—that is, AuPairCare's co-conspirators. *See also In re Cotton Yarn Antitrust Litig.,* 505 F.3d 274, 284 (4th Cir. 2007) (antitrust "co-conspirators are not necessary parties; a plaintiff can prove the existence of a conspiracy in an action against just one of the members of the conspiracy" and "defendants would be jointly and severally liable"). Since the appeal cannot reduce the number of litigants ultimately before this Court by a single person, it would be most efficient to continue proceeding on the non-AuPairCare *au pair*s' antitrust claims against AuPairCare in tandem with every Plaintiff's antitrust claim against every other Defendant.

The public interest also favors promptly and efficiently vindicating the antitrust laws. The public interest lies in the competition this case seeks to reinstate. *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 130-31 (1969) (private antitrust suits such as this one have the "high purpose" of protecting competition and consumers); *United States v. Apple Inc.*, 992 F. Supp. 2d 263, 290 (S.D.N.Y. 2014), *aff'd*, 787 F.3d 131 (2d Cir. 2015) (the "public interest in vigilant enforcement of the antitrust laws is indisputable" (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955)); *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 636 (E.D. Pa. 2010) ("the public's interest in the enforcement of the antitrust laws is furthered by the expeditious resolution of this class-action lawsuit."); *see also N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101, 1110 (2015) ("the fundamental national values of

free enterprise and economic competition . . . are embodied in the federal antitrust laws").

For all these reasons, AuPairCare cannot meet its burden to show that any discretionary stay is warranted.

## **CONCLUSION**

The Court should deny AuPairCare's motion to stay pending appeal insofar as it seeks to stay the claims of *au pair*s who did not sign an AuPairCare agreement containing an arbitration clause.

Dated: October 20, 2017

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

   */s/Sean P. Rodriguez*
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com

jvaldivieso@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

Certificate of Service

I hereby certify that on October 20, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Heather Fox Vickles, Esq.
Brooke A. Colaizzi, Esq.
Raymond M. Deeny, Esq.
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: 303-297-2900
Fax: 303-298-0940
hvickles@shermanhoward.com
bcolaizzi@shermanhoward.com
redeeny@shermanhoward.com

William J. Kelly, III, Esq.
Chandra Marie Feldkamp, Esq.
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
Tel: 720-236-1800
Fax: 720-236-1799
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

Meshach Y. Rhoades, Esq.
Martin J. Estevao, Esq.
ARMSTRONG TEASDALE, LLP
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Tel: 720-722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

Bogdan Enica, Esq.
111 Second Avenue NE, Suite 204
St. Petersburg, FL 33701
Tel: 727-388-3472
bogdane@hotmail.com
Martha L. Fitzgerald, Esq.
David Meschke, Esq.

BROWNSTEIN HYATT FARBER
SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1219
Fax: 303-223-1111
mfitzgerald@bhfs.com
dmeschke@bhfs.com

James Hartley, Esq.
Jonathan S. Bender, Esq.
HOLLAND & HART
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Tel: 303-295-8000
jhartley@hollandhart.com
jsbender@hollandhart.com

Adam A. Hubbard, Esq.
HOLLAND & HART
1800 Broadway, Suite 300
Boulder, CO 80302-5234
Tel: 303-473-2700
aahubbard@hollandhart.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
P.O. Box 5268
114 Village Place, #301
Dillon, CO 80435
Tel: 970-468-0210
Fax: 970-468-0371
brian@rietzlawfirm.com

Robert M. Buchanan, Jr.
Joan A. Lukey
Lyndsey M. Kruzer
Michael T. Gass

i

Justin J. Wolosz
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
rbuchanan@choate.com
joan.lukey@choate.com
lkruzer@choate.com
mgass@choate.com

Lawrence, D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN
OBURN, P.C.
5619 DTC Parkway, Suite 1200
Greenwood, Village, CO 80111
303-773-3500
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

Jessica L. Fuller
Diane Hazel
James M. Lyons
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
jfuller@lrrc.com
dhazel@lrrc.com
jlyons@lrrc.com

Christian Hammond, Esq.
DUFFORD & BROWN, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
chammond@duffordbrown.com
Thomas B. Quinn, Esq.
Peggy E. Kozal, esq.
John R. Mann, Esq.
GORDON & REES, LLP

555 Seventeenth Street, Suite 3400
Denver, CO 80202
Tel: 303-534-5160
Fax: 303-534-5161
tquinn@gordonrees.com
pkozal@gordonrees.com
jmann@gordonrees.com

Brian P. Maschler, Esq.
GORDON & REES, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-986-5900
Fax: 415-986-8054
bmaschler@gordonrees.com

Kathryn A. Reilly, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: 303.244.1983
Fax: 303.244.1879
reilly@wtotrial.com

Lawrence L. Lee, Esq.
Susan M. Schaecher, Esq.
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651
llee@laborlawyers.com
sschaecher@laborlawyers.com

Eric J. Stock
GIBSON DUNN & CRUTCHER, LLP
200 Park Avenue, 48th Floor
New York, NY 10166-0193
estock@gibsondunn.com

 *s/Sean P. Rodriguez*
Sean P. Rodriguez