**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ, and
SARAH CAROLINE AZUELA RASCON,

Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a/ Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a ProAuPair,
20/20 CARE EXCHANGE, INC., d/b/a The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GoAu Pair, and
GOAUPAIR OPERATIONS, LLC,

Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT AUPAIRCARE, INC.'S MOTION TO STAY**

---

This matter is before the Court on Defendant AuPairCare, Inc.'s Motion to Stay Pending Appeal. (Doc. # 726.) For the reasons detailed herein, the Motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND AND PROCEDURAL HISTORY

Defendant AuPairCare, Inc. ("APC") is federally authorized to recruit and place au pairs with host families in the United States pursuant to the J-1 visa program. This suit arises from allegations that APC and other Defendants, all of which are in the business of placing au pairs, conspired to set wages for their sponsored au pairs at unlawfully low rates, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq*., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, *et seq*., and the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*. The Court's prior orders have detailed the factual background of this dispute. *See* (Doc. ## 249, 569, 705.) Accordingly, the Court reiterates only the facts relevant to APC's instant motion to stay.

### A. AUPAIRCARE

At the outset of this case in November 2014, no APC-sponsored au pairs were plaintiffs, and Plaintiffs' sole allegation against APC was an antitrust claim. (Doc. # 101 at 85.) APC nonetheless asserted as one of its affirmative defenses that "[a]ny alleged disputes between [APC] and the au pairs it has sponsored are subject to mandatory arbitration provisions." (Doc. # 286 at 91.) APC continued to assert a mandatory arbitration defense in its objections to discovery requests. *See, e.g.*, (Doc. # 431-3 at 36.)

Plaintiffs' Second Amended Complaint, entered on October 17, 2016, added two APC-sponsored au pairs, Juliana Harning and Laura Meija Jimenez, as plaintiffs on an FLSA claim against APC. (Doc. # 395.) It also proposed a collective FLSA class and a sub-class composed of APC-sponsored au pairs. (*Id.* at 110–12.)

**B. THE APC AGREEMENTS, HARNING, AND JIMENEZ**

Harning and Jimenez (collectively, the "APC Plaintiffs") both signed APC's "Au Pair Agreement" ("APC Agreements") when they were hired in August 2013 and July 2014, respectively. (Doc. ## 431-1, 431-2.) The six-page-long APC Agreements describe the terms of employment for APC-sponsored au pairs. (*Id.*) The APC Agreements require that any disputes arising from the contract are subject to mandatory arbitration:

> The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, U.S. before an arbitration provider selected by AuPairCare, upon petition of either party.
>
> . . . The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction.

(*Id.*) The APC Agreements provide that their "validity, construction, breach, performance and interpretation shall be governed by the State of California." (*Id.*) They also include a final acknowledgement from the au pair that he/she has "read and understood" the contract's terms and accept that the contract is legally binding. (*Id.*)

APC sent Plaintiffs' counsel a request on September 14, 2015, that they refer Plaintiffs' claims against APC to arbitration, pursuant to the mandatory arbitration provision. (Doc. # 431-3 at 25–26.) Plaintiffs' counsel did not respond.

**C. APPEAL OF ORDER DENYING MOTION TO COMPEL ARBITRATION**

APC filed its Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit on November 11, 2016. (Doc. # 431.) It sought to enforce the mandatory arbitration provisions in the APC Agreements signed by Harning and Jimenez. (*Id.*) Plaintiffs opposed arbitration, arguing that APC waived its right to invoke arbitration under the doctrine of implied waiver and, alternatively, that the APC Agreements were procedurally and substantively unconscionable and thus unenforceable. (Doc. # 449.)

The Court denied APC's Motion to Compel Arbitration in a written order on September 21, 2017. (Doc. # 705.) The Court reviewed applicable authority, including the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, and California law, and first determined that "the scope of the arbitration clause [in the APC Agreements] covers all causes of action brought against APC, including the FLSA and antitrust claims."[1] (Doc. # 705 at 7–8.) Turning to the validity of the mandatory arbitration provision, the Court rejected Plaintiffs' argument that APC waived its right to invoke arbitration. (*Id.* at 8–11).

However, the Court ordered that the mandatory arbitration provision is unenforceable because it is unconscionable, agreeing with Plaintiffs' alternative argument. (*Id.* at 11–19.) Applying California law, the Court first determined that the

[1] The Court noted that "Plaintiffs' counsel, who are silent on the issue of scope, apparently concede that the APC arbitration provisions encompass all claims against APC." (*Id.* at 8.)

APC Agreements are adhesive. (*Id.* at 12–13.) The Court then decided that the APC Agreements are "significantly undermined by procedural unconscionability." (*Id.* at 13–15.) In light of the provision vesting APC with unilateral authority to pick an arbitrator and the forum selection clause, the APC Agreements are also substantively unconscionable, the Court determined. (*Id.* at 15–19.) The Court concluded that the APC Agreements "are so permeated with unconscionability" that severance is inappropriate, and it therefore denied APC's Motion to Compel Arbitration. (*Id.* at 20.)

APC notified the Court on October 11, 2017, that APC is appealing the Court's Order Denying APC's Motion to Compel Arbitration to the Tenth Circuit. (Doc. # 723.) The following day, APC filed the instant Motion to Stay. (Doc. # 726.) APC argues that the Court "must stay all proceedings against [APC]." (*Id.* at 5.) Plaintiffs do not oppose a stay "solely as to claims between [APC au pairs, i.e., Harning and Jimenez] and [APC]" but oppose a broader stay that would stay the claims of au pairs who did **not** sign the APC Agreements and were sponsored by other agencies ("Non-APC Plaintiffs"). (Doc. # 740.)

## II.     LEGAL STANDARD FOR A STAY

Two types of stays are at issue in the instant motion. First, APC argues that a stay is mandatory because the Court has been automatically divested of jurisdiction by its notice of appeal to the Tenth Circuit. (Doc. # 726.) The Court will refer to this type of stay as a "mandatory stay" for purposes of this order. Section 16(a) of the FAA permits a party to immediately appeal an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(B). In the Tenth Circuit, a district court is "automatically and immediately,"

*Hardin v. First Cash Financial Serv., Inc.*, 465 F.3d 470, 474 (10th Cir. 2006), divested of jurisdiction "upon the filing of a non-frivolous § 16(a) appeal" and does not regain jurisdiction "until the appeal is resolved on the merits," *McCauley v. Halliburton Energy Serv., Inc.*, 413 F.3d 1158, 1160 (10th Cir. 2005). A district court retains jurisdiction only where it has taken "the affirmative step, after a hearing, of certifying the §16(a) appeal as frivolous or forfeited."[2] *Id.* at 1162. However, the district court retains jurisdiction "to proceed with matters not involved in that appeal." *Id.* at 1161 (quoting *Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990)); *see also Coxcom, Inc. v. Egghead Telecom, Inc.*, No. 08-CV-698-TCK-PJC, 2009 WL 4042906, at *1 (N.D. Okla. Nov. 19, 2009) (holding that the court was automatically divested of jurisdiction "over all matters involved in the appeal").

Second, a court has inherent, discretionary power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (observing that docket management "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"). The Court will refer to this type of stay as a "discretionary stay" for purposes of this order. When determining the propriety of a discretionary stay, "a district court should consider: whether the defendants are likely to prevail in the related proceeding; whether, absent a stay, the defendants will suffer irreparable harm; whether the issuance of a stay will cause substantial harm to

[2] The Tenth Circuit has not identified a specific definition of a "frivolous" appeal. Other district courts in this jurisdiction have stated that "the party opposing appeal faces a rather difficult burden to overcome an interlocutory appeal and maintain jurisdiction in the district court." *E.g.*, *Howards v. Reichle*, No. 06-CV-01964, 2009 WL 2338086, at *2 (D. Colo. July 28, 2009).

the other parties to the proceeding; and the public interests at stake." *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). The "proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). "In particular," according to the Tenth Circuit, "where a movants seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." *C.F.T.C. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 2983).

## III. ANALYSIS

### A. APC PLAINTIFFS' FLSA CLAIM AGAINST APC

APC Plaintiffs, Harning and Jimenez, claim in part that APC willfully violated the FLSA by failing to pay overtime and at least minimum wage. (Doc. # 395 at 110–12.) As the Court previously explained, both Harning and Jimenez signed the APC Agreements when they were hired. (Doc. ## 431-1, 431-2.) APC has appealed the Court's ruling on the enforceability of the APC Agreements—and specifically, the enforceability of the mandatory arbitration provisions—to the Tenth Circuit pursuant to section 16(a) of the FAA. (Doc. # 723.)

The Court grants APC's Motion to Stay (Doc. # 726) as to APC Plaintiffs' FLSA claims against APC. APC's appeal of the Court's Order Denying APC's Motion to Compel Arbitration (Doc. # 705) is not frivolous, as the parties agree. *See* (Doc. # 740 at 5–6 & n.2); (Doc. # 748 at 3). Thus, under *McCauley*, 413 F.3d at 1160, and its progeny, the Court has been automatically divested of its jurisdiction over APC Plaintiffs' FLSA claim against APC. A stay of this claim is therefore necessary.

## B. ANTITRUST CLAIMS AGAINST APC

All Plaintiffs assert an antitrust claim against APC and other Defendants. (Doc. # 395 at 104–05). APC argues that the Court must also stay "the entire case against APC", including this entire antitrust claim, because it is appealing the Court's Order Denying APC's Motion to Compel Arbitration to the Tenth Circuit. (Doc. # 726.)

The Court disagrees. For the following reasons, neither a mandatory stay nor a discretionary stay of the antitrust claim is warranted.

1. Mandatory Stay

As the Court described above, when a district court's jurisdiction over an issue is automatically divested pursuant to section 16(a) of the FAA, the court retains jurisdiction "to proceed with **matters not involved** in that appeal." *McCauley*, 413 F.3d at 1161 (emphasis added); *see also Stewart*, 915 F.2d at 575–76; *Garcia v. Burlington N. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987) (holding that when an interlocutory appeal is taken, "the district court retains jurisdiction to proceed with matters not involved in that appeal"); *Coxcom,* 2009 WL 4042906, at *1. The question before the Court is thus whether Plaintiffs' antitrust claim against APC and other Defendants is "involved" in the matter on appeal—the enforceability of the APC Agreements' mandatory arbitration provisions. Stated differently, the Court must decide whether Plaintiffs' antitrust claim is within the scope of the APC Agreements and their mandatory arbitration provisions.

The Court concludes today that Plaintiffs' antitrust claim is **not** within the scope of the APC Agreements and their mandatory arbitration provisions. In its Order Denying APC's Motion to Compel Arbitration, the Court stated, "in this case, the scope of the

arbitration clause covers all causes of actions brought against APC, including the FLSA and antitrust claims." (Doc. # 705 at 7–8.) The Court noted that "[t]he terms of the arbitration provision are broad," (*id.* at 8), encompassing "any dispute or claim arising out of this Agreement, including but not limited to any resulting or related transaction or the relationship of the parties" (Doc. ## 431-1 at 10; Doc. # 431-2 at 7).

"It goes without saying that a contract cannot bind a nonparty," however. *E.E.O.C. v. Waffle House, Inc.*, 524 U.S. 279, 294 (2002); *see also Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (holding that "arbitration clauses and contracts do not bind non-parties in the absence of . . . extraordinary relationships"); *Buckner v. Tamarin*, 119 Cal. Rptr. 2d 489, 490–91 (Cal. Ct. App. 2002) (explaining that the "strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement"); *NORCAL Mutual Ins. Co. v. Newton*, 100 Cal. Rptr. 2d 683, 693 (Cal. Ct. App. 2000). Though the Court did not think it necessary to make this explicit in its Order Denying APC's Motion to Compel Arbitration, it now clarifies that the APC Agreements and their mandatory arbitration provisions reach **only** APC Plaintiffs and APC. Nonparties to the APC Agreements are not bound by the agreements' terms. The APC Agreements themselves make this clear: the terms encompass any dispute "arising out of this Agreement, . . . including but not limited to . . . the relationship **of the parties**" to the contract—that is, APC Plaintiffs and APC itself. *See* (Doc. ## 431-1 at 10; Doc. # 431-2 at 7). The APC Agreements are not nearly as broad as APC now contends.

Every Plaintiff and putative class member—possibly "tens of thousands of litigants," (Doc. # 740 at 9)—brings the antitrust claim against all Defendants (Doc. # 395 at 104–05). There are sixteen Defendants, and each may be liable to Plaintiffs as a co-conspirator. With the exception of the small number of APC Plaintiffs, the remaining Non-APC Plaintiffs are not parties to APC Agreements, nor are other Defendants. Thus, the antitrust claims of Non-APC Plaintiffs against Defendants, including APC, does not fall within the scope of the APC Agreements' mandatory arbitration provisions.

Accordingly, APC's appeal does not automatically divest this Court of jurisdiction over the antitrust claims against all Defendants. The Court retains jurisdiction over this and other matters not involved in the appeal. *See E.E.O.C. v. Joslin Dry Goods Co.*, No. 05-CV-00177WD, 2007 WL 433144 (D. Colo. Feb. 2, 2007).

The Court is not persuaded by APC's argument that Plaintiffs waived any argument that the antitrust claim should not be stayed. *See* (Doc. # 748 at 4–6.) APC asserts that "Plaintiffs had ample opportunity to argue that any stay of claims against APC pending arbitration should not apply to claims by non-APC au pairs," such as the antitrust claim. (*Id.* at 5.) However, when APC moved to compel arbitration, or, alternatively, stay the suit, it was not clear that it sought to arbitrate or stay all claims against it, including the antitrust claim asserted by all Plaintiffs. APC asserted then that "[t]he claims of [APC Plaintiffs] Harning and [Jimenez] brought in this action are subject to and barred by the mandatory arbitration . . . provisions of their contracts with APC." (Doc. # 431 at 2.) APC made no mention of the claims asserted by Non-APC Plaintiffs.

Thus, Plaintiffs had no reason to argue that the APC Agreements bound only APC Plaintiffs and APC. Like the Court, Plaintiffs presumably thought it unnecessary to state the basic tenet that contracts do not bind nonparties.

2. Discretionary Stay

When considering the suitability of a discretionary stay, a court considers "whether the defendants are likely to prevail in the related proceeding; whether, absent a stay, the defendants will suffer irreparable harm; whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and the public interests at stake." *United Steelworkers of Am.*, 322 F.3d at 1227. Applying these factors to this case, the Court concludes that a discretionary stay of Plaintiffs' antitrust claim is not warranted.

First, APC is unlikely to prevail in its appeal. For the reasons explained in the Court's Order Denying APC's Motion to Compel (Doc. # 705), the APC Agreements are unenforceable because they are infused with procedural and substantive unconscionability. APC has not identified novel arguments it will raise before the Tenth Circuit as to why the APC Agreements or their mandatory arbitration provisions are enforceable. *See* (Doc. # 748 at 8–9.) Rather, APC suggests that it will reprise the contentions it "argued in its motion to compel arbitration," such as the presumption in favor of arbitration. (*Id.*) This Court expressly considered and rejected those arguments, including the presumption in favor of arbitration, in its previous order. *See* (Doc. # 705 at 7.)

Second, APC and other Defendants will not suffer irreparable harm absent a stay. The Court is not persuaded by APC's argument that allowing Non-APC Plaintiffs' antitrust claims to proceed against all Defendants, including APC, would result in "the very real possibility of inconsistent rulings" if APC prevails on its appeal to the Tenth Circuit "regarding the enforceability of its arbitration provision with respect to [APC Plaintiffs]." (Doc. # 748 at 9–10.) Even if the Tenth Circuit were to reverse this Court's decision denying APC's Motion to Compel Arbitration and compel the APC Plaintiffs to submit their claims against APC to arbitration, that arbitration would not reach the Non-APC Plaintiffs' antitrust claim against Defendants.

Third, Plaintiffs would suffer substantial harm were the Court to grant a discretionary stay of all claims. The parties have already litigated this action for more than three years. Further delay is not warranted, especially because APC's issue on appeal is minor in light of the large number of Plaintiffs and Defendants not affected by this Court's Ordering Denying APC's Motion to Compel Arbitration. The Court agrees with Plaintiffs that their right to a "just, speedy, and inexpensive determination" of the action would be prejudiced by a stay. *See* (Doc. # 740 at 12 (quoting *Gladd v. Landmark Logistics, Inc.*, No. CIV-16-894-D, 2016 WL 6407436, at *3 (W.D. Okla. Oct. 28, 2016)); Fed. R. Civ. Pro. 1.

Fourth, the Court rejects APC's contention that "[t]here will be no impact on the public interest." (Doc. # 748 at 10.) "The public interest is a uniquely important consideration in evaluating a request for [interim relief]." *Citizens for Responsibility and Ethics in Washington v. Office of Admin.*, 565 F. Supp. 2d 23, 31 (D.D.C. 2008) (internal

quotations omitted). Here, the public's interest "in the resolution of disputes with minimal delay," *Alcala v. Texas Webb Cty.*, 625 F. Supp. 2d 391, 407 (S.D. Tex. 2009), would undoubtedly be impacted by a stay.

For these reasons, the Court declines to exercise its discretion to stay all claims between all parties, including Plaintiffs' antitrust claim against APC.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that APC's Motion to Stay Pending Appeal (Doc. # 726) is GRANTED IN PART as to APC Plaintiffs' claims against APC. It is

FURTHER ORDERED that APC's Motion to Stay Pending Appeal (id.) is DENIED IN PART as to all other claims against APC and other Defendants.

DATED: November 15, 2017

BY THE COURT:

Christine M Arguello

CHRISTINE M. ARGUELLO
United States District Judge