**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

     Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

     Defendants.

---

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE TAFOYA'S ORDER ON
NONDISPOSITIVE MATTER [ECF NO. 763]
UNDER FEDERAL RULE OF CIVIL PROCEDURE 72(A)**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ............................................................................... 3

STANDARD OF REVIEW .............................................................................. 5

ARGUMENT.................................................................................................. 6

I.     THE ALLIANCE AND DEFENDANTS LACK IDENTICAL LEGAL INTERESTS... 6

     A.     The Interest Articulated By the Order Is Contrary To Tenth Circuit Law. ... 7

     B.     The Order Has Serious Policy Effects On Trade Associations. ............... 11

II.     THE ORDER ERRED IN FINDING THE MATERIAL WAS WORK PRODUCT.. 12

     A.     A Non-Representative Non-Party Cannot Create Work Product.............. 12

     B.     The Order's Work Product Theory Is Contrary To Law. ........................... 13

III.     THERE WAS NO ATTORNEY-CLIENT PRIVILEGE.......................................... 15

CONCLUSION ........................................................................................... 15

i

## TABLE OF AUTHORITIES

**Cases**

*BancInsure, Inc. v. McCaffree*,
No. 12-CV-2110-KHV-GLR, 2013 WL 5769918 (D. Kan. Oct. 24, 2013).................. 10

*BASF Akteingesellschaft v. Reilly Indus., Inc.*,
224 F.R.D. 438 (S.D. Ind. 2004) ............................................................... 8, 9

*Black v. Southwestern Water Conservation Dist.*,
74 P.3d 462 (Colo. App. 2003) ......................................................... 8, 9, 15

*Bohannon v. Honda Motor Co.*,
127 F.R.D. 536 (D. Kan. 1989) .................................................................... 12

*Broessel v. Triad Guar. Ins. Corp.*,
238 F.R.D. 215 (W.D. Ky. 2006) ................................................................. 12

*Carrion v. For Issuance of a Subpoena
Under 28 U.S.C. Sec. 1782(a)* (*In re Republic of Ecuador*),
735 F.3d 1179 (10th Cir. 2013).................................................................... 14

*Frontier Ref., Inc. v. Gorman-Rupp Co.*,
136 F.3d 695 (10th Cir. 1998).................................................................... 6, 9

*Gallegos v. Safeco Ins. Co. of Am.*,
No. 14-CV-01114-WJM-MJW, 2015 WL 1009247 (D. Colo. Mar. 4, 2015) ................ 7

*Grace United Methodist Church v. City of Cheyenne*,
451 F.3d 643 (10th Cir. 2006).................................................................... 13

*Hedquist v. Patterson*,
215 F. Supp. 3d 1237 (D. Wyo. 2016) ........................................................ 7

*Howards v. Reichle*,
No. 06-CV-01964-CMA-CBS, 2009 WL 10676995 (D. Colo. Mar. 2, 2009) ............... 8

*In re Motor Fuel Temperature Sales Practices Litig.*,
707 F. Supp. 2d 1145 (D. Kan. 2010) ........................................................ 6

*In re Qwest Commc'ns Int'l Inc.*,
450 F.3d 1179 (10th Cir. 2006)................................................................... 6

*In re Urethane Antitrust Litig.*,
No. 04-MD-1616-JWL, 2013 WL 4781035 (D. Kan. Sept. 5, 2013) ........................ 6

*Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*,
No. 12-CV-3012-WJM-BNB, 2014 WL 5599127 (D. Colo. Nov. 4, 2014) ................... 6

*Kovacs v. Hershey Co.*,
    4-CV-01881-WYD-BNB, 2006 WL 2781591 (D. Colo. 2006)................................. 8, 11

*Kurlander v. Kroenke Arena Co.*, LLC,
    No. 16-CV-02754-WYD-NYW, 2017 WL 3084473 (D. Colo. July 20, 2017)............. 12

*Marianist Province of U.S., Inc. v. Century Indem. Co.*,
    No. 08-CV-01760-WYD-MEH, 2010 WL 3938355 (D. Colo. Oct. 5, 2010) ............. 8, 9

*McDougall v. Dunn*,
    468 F.2d 468 (4th Cir. 1972)........................................................................................ 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Intrawest ULC*,
    No. 13-CV-00079-PAB-KMT, 2015 WL 5047635 (D. Colo. Aug. 27, 2015)............... 12

*Ocelot Oil Corp. v. Sparrow Indus.*,
    847 F.2d 1458 (10th Cir. 1988)..................................................................................... 6

*Plaza Ins. Co. v. Lester*,
    No. 14-CV-01162-LTB-CBS, 2015 WL 3528336 (D. Colo. June 4, 2015) .................. 7

*R.W. Beck, Inc. v. E3 Consulting, LLC*,
    577 F.3d 1133 (10th Cir. 2009)..................................................................................... 8

*Ritter v. Jones*,
    207 P.3d 954 (Colo. App. 2009) ................................................................................... 8

*Roe v. Catholic Health Initiative Colorado*,
    281 F.R.D. 632 (D. Colo. 2012) ................................................................................... 7

*Running Foxes Petroleum, Inc. v. Nighthawk Prod. LLC*,
    No. 14-CV-01466-MSK-MJW, 2015 WL 9312097 (D. Colo. Dec. 23, 2015)............. 15

*Scott Paper Co. v. Ceilcote Co.*,
    103 F.R.D. 591 (D. Me. 1984) .................................................................................... 15

*Servicemaster of Salina, Inc. v. United States*,
    No. 11-1168-KHV-GLR, 2012 WL 1327812 (D. Kan. Apr. 17, 2012)........... 7, 8, 10, 11

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
    250 F.R.D. 575 (D. Colo. 2007) ................................................................................. 14

*Thomas Organ Co. v. Jadranska Slobodna Plovidba*,
    54 F.R.D. 367 (N.D. Ill. 1972) .............................................................................. 14, 15

*United States v. Hudson*,
    No. CRIM.A. 13-20063-01, 2013 WL 4768084 (D. Kan. Sept. 5, 2013) ..................... 7

*United States v. Krug*,
    868 F.3d 82 (2d Cir. 2017)........................................................................................... 13

*United States v. Nobles*,
    422 U.S. 225 (1975) .................................................................................................... 14

**Statutes**

28 U.S.C. § 636(b)(1)(A) ................................................................................ 6

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) .................................................................... 2, 12, 15

Fed. R. Civ. P. 72(a) ...................................................................................... 6

**Other Authorities**

12 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus,
     Federal Prac. & Proc. § 3069 (2d ed., 2017 update) .................................. 6

Eric A. Franz,
     *Anything but Common: New York's "Pending or Anticipated Litigation" Limitation to
     the Common Interest Doctrine Creates More Problems Than It Solves*, 92 Wash. L.
     Rev. 983, 1003 & n.158 (2017)................................................................. 10

Jared S. Sunshine,
     *Seeking Common Sense for the Common Law of Common Interest in the D.C.
     Circuit*, 65 Cath. U. L. Rev. 833, 850 (2016)............................................. 11

## **PRELIMINARY STATEMENT**

Courts have repeatedly held that trade associations play an important role in antitrust cases.  The gathering of industry players under one roof creates an environment ripe for conspiratorial discussions, and the combination can be used to exert pressure on other market participants.  Indeed, this Court found allegations of Defendants' use of trade associations to be part of Plaintiffs' "sufficient circumstantial evidence of a viable economic theory of collusion."  ECF No. 258, at 16-17.

Defendants are attempting to cloak their interactions with these trade groups with legal privilege.  In particular, Defendants have claimed privilege over a 77-page document that was actually produced (without a claim of privilege) by third-party the Alliance for International Exchange, including notes of Alliance meetings, conference calls, and a draft memorandum that discuss the au pair stipend.  But as a matter of law, communications with and among a third party such as an industry association – especially ones without the presence of any lawyers at all – cannot be privileged.

A direct analogy proves the point:  If Plaintiffs had asserted RICO and antitrust conspiracy claims, among other things, against the "five families" of *La Cosa Nostra*, then no one would dispute that conversations amongst the lawyers for the families might be privileged.  If, however, the heads of the five families met, without their lawyers but *with* other members of the "Commission," no one could seriously claim that those conversations were privileged[1] – especially where, as here, the Commission was not a signatory to the parties' written joint defense agreement.  Thus, if the five families sat around a table with other members of the Commission, nothing that was said in that meeting could retain any privileged character, even if they were relaying otherwise-privileged legal advice.

In holding otherwise with respect to the Alliance here, ECF No. 763 (the "Order"), Magistrate Judge Tafoya made several errors of law, any one of which justifies

---

[1]     *See* https://en.wikipedia.org/wiki/The_Commission_(mafia).

reversing her decision.

*First*, the Order relied on a theory of "common interest" between the Alliance and Defendants that was not advanced by Defendants themselves, and which is in any case insufficient as a matter of law.  In their papers and at oral argument, Defendants proffered a common interest in a shared desire to prevail in litigation.  That interest is legally insufficient to extend the privilege in a situation where it would otherwise plainly have been waived, and Defendants' failure to articulate anything beyond that should have sealed their fate.  Instead, however, Judge Tafoya *sua sponte* articulated a different theory, improperly shifting the burden of persuasion off of Defendants.  And that hypothetical common interest – that the Alliance might potentially someday become a defendant in this action – is itself insufficient under Tenth Circuit law, which requires that parties have an "identical" (not similar), "legal" (not commercial) interest in order for the common interest doctrine to potentially apply.  Under the standard articulated in the Order, any discussion between a trade association and its members concerning ongoing litigation would be privileged – a holding other district courts and commentators have squarely rejected, especially in the antitrust context.

*Second*, the Order erred in finding that the attorney work product doctrine applies to documents that were not created by or at the direction of Defendants' attorneys but were instead created by a non-attorney, non-party.  Defendants have admitted that the Alliance is neither their agent nor legal representative and thus, as a matter of law, it cannot fall under the categories to which the work product doctrine applies.  *See* Fed. R. Civ. P. 26(b)(3)(A).  The Order also erred to the extent it found that Defendants' mental impressions, conclusions, opinions, or theories were protected work product even though they were untethered from attorney involvement.

*Third*, the Order erred in finding that the attorney-client privilege applied to communications between Defendants and the Alliance.  Since Defendants conceded that the Alliance was neither their attorney, nor their agent in dealing with their attorney,

nor their attorney's agent, the privilege cannot apply.  The Order also erred to the extent it considered statements made in the context of Defendants' legislative efforts to be a basis for finding that they were covered by the attorney-client privilege.

## FACTUAL BACKGROUND

The Alliance is "an association of 90 nongovernmental organizations comprising the international educational and cultural exchange community in the United States." Order 2-3.  It therefore has many more members, and a correspondingly broader set of interests, than just *au pair* sponsor agencies.  Still, of the 90 member organizations, 13 are *au pair* sponsor agencies, all of whom are Defendants.[2]  *Id.* at 3.

Plaintiffs served an initial Rule 45 subpoena on the Alliance in January 2017, followed by an amended subpoena in May.  Order 3.  Before serving these subpoenas, Plaintiffs provided notice and copies of the subpoena to the Defendants, as required by Rule 45.  Vald. Obj. Decl. Ex. 29 & 30.[3]

Beginning in June 2017, Plaintiffs' counsel and counsel for the Alliance engaged in ongoing discussions regarding the Alliance's compliance with the subpoena, and in particular the possibility of the Alliance asserting any privilege claims.  *See* Order 3; Vald. Exs. 4-6.  On August 23, 2017, the Alliance made its initial document production. Order 3.  In its cover letter, the Alliance implied that the documents being produced had been reviewed for privilege, whereas "additional" documents were still being reviewed:

> Enclosed please find documents responsive to your subpoena. We also have a large volume of potentially responsive documents but which have taken more time to get through than expected.
>
> Accordingly,  in  an  effort  to  get  you  those  documents  as  soon  as

---

[2]     Defendants Au Pair International and 20/20 Care Exchange did not join Defendants' Opposition and are not members of the Alliance.

[3]     Declarations of Juan P. Valdivieso in support of Plaintiffs' Motion, ECF No. 709, Plaintiffs' Reply, ECF No. 718, and Plaintiffs' Objections, ECF No. 772, are referred to as "Vald. Decl.", "Vald Reply Decl.", and "Vald. Obj. Decl.", respectively.

practicable, I propose that we enter into a clawback agreement, such that we could produce additional documents now while preserving our rights to clawback any documents which are determined to be privileged or otherwise confidential. Let me know if you agree. [ . . . ]

Vald. Decl. Ex. 7.  Plaintiffs immediately agreed and offered a claw-back agreement, Vald. Decl. Ex. 9, but the Alliance never responded, Vald. Decl. ¶ 14.

The following day, Plaintiffs deposed Susan Hayes, an executive with Defendant EurAuPair.  Vald. Decl. Ex. 10.  Having received documents from the Alliance, Plaintiffs intended to use certain of those documents at the deposition.  Unbeknownst to Plaintiffs, however, counsel for the Alliance had not "told the sponsors he was turning over the documents," Hr'g Tr. 18:18-21,[4] nor had the Alliance "sent [them] out to the sponsors" before the deposition.  Hr'g Tr. 23:10-11.  When Plaintiffs' counsel learned this (on the day of the deposition), counsel immediately emailed the Alliance's production to Defendants and confirmed receipt before proceeding with the deposition. Hr'g Tr. 37:9-12.  Defendants permitted questioning related to the documents, subject to their objections that such use in the deposition did not constitute a waiver of potential privilege claims.  *See* Vald. Decl. Ex. 11 (Hayes Dep. Tr. 190:6-11); Hr'g Tr. 37:19-24.[5]

Three weeks of silence followed, during which the Alliance missed its deadline to produce the remaining documents as agreed.  *See* Vald. Decl. ¶ 17 & Ex. 12 at 2 (memorializing production agreement).  Defendants waited until the last possible minute—after close of business on the eve of Alliance Chairman (and Defendant AIFS's CEO) William Gertz's deposition—to demand immediate return or destruction of the entire Alliance production.  Vald. Decl. Ex. 14.  As a result of this request, Plaintiffs were

---

[4]    The transcript of the November 17, 2017 hearing before Magistrate Judge Tafoya is referred to as "Hr'g Tr."  The relevant portions are attached as Vald. Obj. Decl. Ex. 32.

[5]    These facts are immaterial to the legal issues raised by Plaintiffs' motion, and played little part in the briefing.  *See* Mot. 3; Opp. 4-5.  At the hearing, Defendants shifted from arguments on the merits to mischaracterizing these events and falsely accusing Plaintiffs' counsel of unethical behavior (again).  Hr'g Tr. 21:12-23:17; 35:2-7; 36:6-38:17.  We therefore set out this more complete account so that the Court has a fuller factual record should Defendants continue to press those attacks.

unable to question Mr. Gertz about the documents produced by the Alliance, and were forced to hold open his deposition pending resolution of this dispute.  Vald. Ex. 15.

By September 15, the Alliance had obtained new counsel who, in an about face, agreed with the Defendants and claimed that all of the previously-produced documents were privileged.  Vald. Decl. ¶ 21 & Vald. Reply Decl. Ex. 28.

Plaintiffs continued to diligently confer with the Alliance, urging them to promptly comply with their obligations under the subpoena.  *See* Vald. Obj. Decl. Ex. 31 & ¶ 5. But the Alliance has still not produced any documents since their initial, now clawed-back production, nor have Plaintiffs been able to depose the current and former Executive Directors of the Alliance.  Vald. Obj. Decl. ¶ 8.

Unable to reach a resolution regarding Defendants' broad privilege claims, on September 27, 2017, Plaintiffs moved for relief under Federal Rules of Civil Procedure 26, 37, and 45, for an order determining that the documents were not privileged.  The Court held a hearing on the motion on November 17, 2017, during which Defendants admitted that they interfered with the third party subpoena by "immediately nix[ing]" the Alliance's August 23 proposal to complete its production.  Hr'g Tr. 40:16-18.

On December 4, 2017, Magistrate Judge Tafoya issued her Order.  According to the Order, the documents "reflect communications about the issues underlying the claims in this lawsuit."  Order 3.  Because the Defendants and the Alliance were communicating about the lawsuit and "the allegations contained in the [Second Amended Complaint], the court [found] that with respect to whether *au pairs* brought in through the J-1 Visa program should be subject to state and federal labor laws rather than a fixed stipend, the Alliance and its members' interests are identical and that the Alliance may be considered as a 'potential defendant.'"  Order 12.

## STANDARD OF REVIEW

Upon objection to a magistrate judge order on a non-dispositive matter, the

district court must modify or set aside any portion of the order which it finds to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The district court independently reviews legal issues.  *See In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1148 (D. Kan. 2010); *see also* 12 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Prac. & Proc. § 3069 (2d ed., 2017 update).  This legal review is plenary and the district court may set aside the magistrate judge decision "if it applied the wrong legal standard or applied the appropriate legal standard incorrectly."  *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, 2014 WL 5599127, at *1 (D. Colo. Nov. 4, 2014).  Fact findings are reviewed for clear error.  *See In re Motor Fuel*, 707 F. Supp. 2d at 1147.  Under this standard, the district court is required to affirm the magistrate judge order unless the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

## ARGUMENT

### I.    THE ALLIANCE AND DEFENDANTS LACK IDENTICAL LEGAL INTERESTS

In the Tenth Circuit, the common interest doctrine is a narrow exception to the general rule that a party waives attorney-client privilege or work product protection over material disclosed to a third party.  *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006) (noting that "'common interest' doctrine provides an exception to waiver because disclosure advances the representation of the party and the attorney's preparation of the case"); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998).  Only where parties' interests are "identical, not similar" and "legal, not solely commercial" will disclosure of privileged information between them not result in a waiver.  *See Order 5* (citing *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2013 WL 4781035, at *2 (D. Kan. Sept. 5, 2013)).

As Magistrate Judge Tafoya noted, the doctrine was "designed to protect

communications between co-defendants or co-litigants." *Roe v. Catholic Health Initiative Colorado*, 281 F.R.D. 632, 638 (D. Colo. 2012). It is undisputed that the party claiming privilege bears the burden of showing that it has not been waived and must meet its burden with a "clear showing" and "precise reasons." *See* Mot. 4-5 (citing *Plaza Ins. Co. v. Lester*, No. 14-CV-01162-LTB-CBS, 2015 WL 3528336, at *5 (D. Colo. June 4, 2015); *Gallegos v. Safeco Ins. Co. of Am.*, No. 14-CV-01114-WJM-MJW, 2015 WL 1009247, at *2 (D. Colo. Mar. 4, 2015)). Thus, it was Defendants' "burden to show the applicability of the common interest doctrine." *Servicemaster of Salina, Inc. v. United States*, No. 11-1168-KHV-GLR, 2012 WL 1327812, at *3 (D. Kan. Apr. 17, 2012).

### A.  The Interest Articulated By the Order Is Contrary To Tenth Circuit Law.

The only "common interest" Defendants purported to share with the Alliance was a shared desire "to prevail" in the litigation. Opp'n 13-14 (citing no authority); Hr'g Tr. 27:20. As Plaintiffs noted in their briefs and the Order acknowledged, district courts in the Tenth Circuit routinely reject such a reason. Order 5 (citing *United States v. Hudson*, No. CRIM.A. 13-20063-01, 2013 WL 4768084, at *2 (D. Kan. Sept. 5, 2013) ("shared desire to see same outcome in legal matter is insufficient to establish common interest"); *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1246 (D. Wyo. 2016) (same), *reconsideration denied*, No. 14-CV-45-ABJ, 2016 WL 8453415 (D. Wyo. July 1, 2016)).

At the hearing, Defendants re-formulated their shared interest with the Alliance as "ensuring that the [*au pair*] cultural exchange program survives" in the form most beneficial to Defendants' pocketbooks. Hr'g Tr. 28:19-20. That merely re-states the commercial interest to "prevail," and, in any event, Defendants admitted that the Alliance's interests are broader than just the *au pair* program. Hr'g Tr. 28:21-24. The Alliance has 90 members, the vast majority of which are not involved in *au pair* programs. Thus, Defendants' asserted interest is not legally identical. *See*

*Servicemaster*, 2012 WL 1327812, at *3.

Rather than ruling on Defendants' proffered interests (which were insufficient under Tenth Circuit law), the Order hypothesized different common interests: (1) a desire keep the stipend received by *au pairs* "fixed," that is, "exempt . . . from the FLSA and other state wage laws," Order 10, 12; and (2) being a "potential defendant" as "an active aider and abettor . . . or as a co-conspirator" in Defendants' antitrust conspiracy to fix the stipend at an artificially low level.  Order 12.

As an initial matter, the *sua sponte* nature of the Order impermissibly relieved Defendants of their burden and unfairly deprived Plaintiffs of the opportunity to respond. This alone is reason to reverse the Order.  *Cf. Howards v. Reichle*, No. 06-CV-01964-CMA-CBS, 2009 WL 10676995, at *6 (D. Colo. Mar. 2, 2009) (Arguello, J.) (overturning Magistrate Judge order for improperly shifting burden to party seeking discovery); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1137 (10th Cir. 2009) (reversing grant of summary judgment where district court decided issue *sua sponte* without providing party opportunity to respond); *Kovacs v. Hershey Co.*, 4-CV-01881-WYD-BNB, 2006 WL 2781591, at *11 (D. Colo. 2006) (sustaining objection for misplacing burden).

But even taken at face value, the alternative purported common interests that the Order recognized are insufficient as a matter of law, and the Magistrate Judge made a number of legal errors in concluding otherwise.

To begin, although the parties agreed that federal law applies, Mot. 8-9 & n.7; Opp'n 6, the Order relied on state privilege doctrine.  Order 4-5 (citing cases).[6]  By relying on the wrong body of privilege law, the Magistrate Judge was able to find support for an extension of the common interest privilege that is plainly impermissible

---

[6]      *Marianist Province of U.S., Inc. v. Century Indem. Co.*, 2010 WL 3938355, at *2 (D. Colo. Oct. 5, 2010) (Colorado state law); *Black v. Southwestern Water Conservation Dist.*, 74 P.3d 462, 469 (Colo. App. 2003) (Colorado state law); *BASF Akteingesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 442 (S.D. Ind. 2004) (Indiana state law);  *Ritter v. Jones*, 207 P.3d 954, 960 (Colo. App. 2009) (Colorado state law).

under controlling Tenth Circuit law.  Indeed, it is not clear that the Order applied any coherent legal theory of "common interest," because that portion of the "Analysis" section does not cite any cases.  Order 10-13.  However, it appears that in finding that "the communications memorialized in the notes written by the staff member of the Alliance are communications given in confidence and intended and reasonably believed to be part of an on-going and joint effort to set up a common legal strategy concerning entities with identical interests," the Order improperly applied the standard from Colorado state law, rather than the Tenth Circuit's stricter test.  Compare *Black*, 74 P.3d at 469 (merely requiring a common enterprise) *with Frontier*, 136 F.3d 695, 705 (requiring identical legal interest).

In any event, even if the other authorities relied on were binding on this Court, they did not support finding a common interest here.  In *Marianist Province*, unlike here the parties asserting a common interest were <u>co-defendants</u> with a joint-defense agreement (albeit oral) and the relevant communications occurred between the co-defendants' counsel and concerned a witness interview (a traditional subject of work product protection).  2010 WL 3938355, at *2.  Although Defendants' representatives on the Alliance's calls (the notes of which are at issue here) claim to have believed they were operating under a common interest agreement, Opp'n 2, unlike the party in *Marianist Province*, they did not assert that such an agreement actually existed.  To the contrary, in this case, the Defendants had a written joint defense agreement to which the Alliance was *not* a party.  Mot. 13; Vald. Decl. Ex. 18 at 4.  Further, Plaintiffs submitted evidence showing that the Alliance did not believe that its communications were covered by any privilege.  Mot. 11 (citing Vald. Decl. Ex. 19) (email from Alliance to Defendants stating that it would be inappropriate to discuss litigation on a call).  *BASF*, another cited case, did not actually decide that the common interest applied, 224 F.R.D. at 443 n.4, and, unlike here, the document at issue was prepared by defendant's employee *at the direction of counsel* and shared with a third party bound by a

9

confidentiality agreement.  *Id.* at 441-43.

The Order cites *Beneficial Franchise* for the proposition that the common interest doctrine applies to any parties who have a "common interest" in current or potential litigation, either as "actual or potential plaintiffs or defendants."  Order 4-5.  But there, unlike here, the parties asserting a common interest were also co-defendants with a joint defense agreement.  *Beneficial*, 205 F.R.D. at 220.  Moreover, under law in this Circuit, being a *potential* defendant is insufficient to trigger a common interest.  *See BancInsure, Inc. v. McCaffree*, No. 12-CV-2110-KHV-GLR, 2013 WL 5769918, at *7 (D. Kan. Oct. 24, 2013) (no common interest where third party *could have* but had not been added as a party); *Servicemaster*, 2012 WL 1327812, at *4 (D. Kan. Apr. 17, 2012) (interest in avoiding suit and *potential* legal claims by disappointed clients insufficient to create common interest).[7]

*Servicemaster* is instructive.  The court found the common interest doctrine did not apply where the plaintiffs' and third parties' legal interests were not identical.  Like the Order's articulation of Defendants' common interest in having a fixed stipend exempt from state and federal law, the third parties in *Servicemaster* asserted an identical interest to plaintiffs' in defending treatment of an employee benefit plan under the tax code.  *Id.* at *3.  Although the third parties could have benefited if plaintiffs' view of the law prevailed, they would not be entitled to the same deductions if plaintiffs prevailed.  *Id.*  As in *Servicemaster*, even the Order's articulation of common interest falls short.  Plaintiffs have not alleged, nor could they, that the Alliance is a joint employer subject to liability for underpayments under the FLSA or state and local minimum wage laws.  Because the Alliance and Defendants' legal interest is not

---

[7]    Given that the circuits are split regarding whether pending or anticipated litigation is a limitation to the common interest doctrine, it is particularly important to follow Tenth Circuit law.  *See* Eric A. Franz, *Anything but Common: New York's "Pending or Anticipated Litigation" Limitation to the Common Interest Doctrine Creates More Problems Than It Solves*, 92 Wash. L. Rev. 983, 1003 & n.158 (2017).

identical, the common interest does not apply.  *Id.*  The Order's finding otherwise is clearly erroneous and contrary to law and should be aside.

**B.  The Order Has Serious Policy Effects On Trade Associations.**

Under the Order's expansive definition of common interest, the doctrine could apply to virtually all discussions between a trade association and its members.  Trade associations, after all, by definition advance some common commercial interest of its members.  In many instances, an industry's commercial interests may be dictated by legal or regulatory issues – tax incentives, tariffs, IP protection, regulatory requirements about record keeping or reserve balances, or a host of other concerns.  Where, as here with the J-1 visa program, the entire industry exists only by virtue of the state of the law, trade associations are even more inherently tied up in legal issues, and views expressed during trade association meetings necessarily reflect legal advice at some level.  Discussions in the context of trade association meetings about the law, or about potential changes in the law, or about how best to lobby for legislation or regulation – all of which would inevitably benefit the members in any pending litigation – cannot be shielded by privilege without massively expanding the common interest doctrine.

Plaintiffs pointed the Magistrate Judge at numerous authorities warning of the dangers of applying the common interest broadly in the antitrust context.  Reply 13 & n.10 (citing, e.g., Jared S. Sunshine, *Seeking Common Sense for the Common Law of Common Interest in the D.C. Circuit*, 65 Cath. U. L. Rev. 833, 850 (2016) (noting how "rivals cannot be allowed to conceal anticompetitive collusion behind a fig leaf of putative common interest, which would impermissibly co-opt the shield of privilege for violations of the law")).  The Order clearly erred in failing to consider this authority.  *Kovacs*, 2006 WL 2781591, at *7.  The only case Defendants cited to support finding a common interest between a trade association and its members is distinguishable because in that case, unlike here, the trade association and its members shared an

interest "beyond pooling their resources to prepare a common or united defense to the claims asserted in an alleged class action suit," and it was not in the antitrust context. *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 220 (W.D. Ky. 2006).

## II.   THE ORDER ERRED IN FINDING THE MATERIAL WAS WORK PRODUCT

The Alliance documents are also not work product.  The work product doctrine protects "documents" or "tangible things" that are "prepared in anticipation of litigation or for trial by or for [a] party or its representative (including [the party's] attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A). "Materials covered by the work-product doctrine fall into two categories:  fact work product, consisting of materials compiled <u>by the attorney</u> and <u>agents of the attorney</u> which do not contain the mental impressions, conclusions or opinions <u>of the attorney</u>; and opinion work product, consisting of <u>the attorney's</u> mental impressions, conclusions, opinions, or legal theories."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Intrawest ULC*, 2015 WL 5047635, at *1 (D. Colo. Aug. 27, 2015) (Tafoya, J.) (emphases added).

### A.  A Non-Representative Non-Party Cannot Create Work Product.

The only documents or tangible things at issue here were created by non-legal staff from the Alliance, a third party.  Defendants admit that the Alliance documents were not created by or at the direction of an attorney (let alone an attorney for any of the parties), and that the Alliance was not Defendants' representative.  Opp'n 9 & n.7; Hr'g Tr. 41:12-13 ("The Alliance is not an agent or representative here as we make clear in our papers.").  Accordingly the work product doctrine does not apply as a matter of law. *Kurlander v. Kroenke Arena Co.*, LLC, No. 16-CV-02754-WYD-NYW, 2017 WL 3084473, at *5 (D. Colo. July 20, 2017) (party must show author falls into categories "identified in Rule 26(b)(3), that justifies the extension of the work product doctrine."); *Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 539 (D. Kan. 1989) (work product doctrine does not apply to documents created or produced by a third party).

The Order reasoned that the "redacted information uniformly involved the mental impressions, conclusions, opinions, or legal theories of the speaking Defendant representative, often directly attributable to the party's received legal advice.  All of the redacted material appears to have been prepared in anticipation of litigation by or for a party."  Order 9-10.  Even assuming that description is factually correct, it does not support a finding of work product protection.

As the Tenth Circuit has noted, the doctrine "only applies to <u>attorneys' or legal representatives'</u> mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation."  *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (emphasis added); *cf. United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) (party's own research, though shared with attorney, not privileged when shared with co-defendant).  The Alliance material is none of those things – it is a document created by a non-lawyer, third party, reflecting statements made by a party (and not in the presence of that party's lawyer).  The fact that a defendant's comments may have been informed by legal advice does not render those comments (or notes reflecting them) work product; to the contrary, the fact that a defendant representative chose to share legal advice in the presence of the Alliance demonstrates that the defendants waived any protection.

Moreover, to the extent the Order found the material to be fact work product, it erred in not considering whether Plaintiffs' substantial need for the material overcomes the protection.  Mot. 7; Reply 8 n.5.

**B.  The Order's Work Product Theory Is Contrary To Law.**

By holding that an employee's mental impressions constitute work product where they are "attributable to the party's received legal advice," Order 9-10, the Order fails to address the core dispute concerning work product's scope.  According to Defendants, employees create work product if what they say or do has some connection—any

connection—to litigation.  From that premise, Defendants contend that "communications concerning litigation by non-attorneys" are the "essence of work product."  Opp. 7.[8]

The Tenth Circuit rejects any such notion.  *Carrion v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)* (*In re Republic of Ecuador*), 735 F.3d 1179 (10th Cir. 2013) reiterated the "traditional understanding of the work-product doctrine." *Id.* at 1185.  It quotes the Supreme Court's observation that it is "necessary" that "the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."  *Id.* at 1184 (quoting *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)).  The Tenth Circuit went on to explain that the work product doctrine exists to protect the "mental impressions of an attorney," and that the Rules codified the doctrine in order to stop the "confusion" that had led courts to extend the work product doctrine so far that it covered work performed by experts.  *Id.* at 1185.

*Carrion* holds that the 2010 Amendments changed the rules for experts—and only experts—precisely because the work product doctrine is not broad enough to encompass experts' work.  735 F.3d at 1187.  Those Amendments were intended to stop the undisciplined expansion of work product that Defendants advocate; they were created in order to "refocus" attorney work product protection to where it belongs—the "theories or mental impressions of <u>counsel</u>."  (quoting 2010 A.C.N.) (emphasis added*); accord McDougall v. Dunn*, 468 F.2d 468, 473 (4th Cir. 1972) (citing the "painstaking and thorough consideration of the construction to be given Rule 26(b)(3)" by the court in *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372 (N.D. Ill. 1972) (explaining that Rule 26(b)(3) was intended to keep the focus on attorneys' "legal

---

[8]     At the hearing, Defendants could articulate a limit on their theory only by re-stating the common-interest doctrine. Hr'g Tr. 30:6-11.  That is backwards:  The common-interest doctrine requires an underlying valid privilege.  Not vice-versa. *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 250 F.R.D. 575, 578 (D. Colo. 2007).

expertise")); *Scott Paper Co. v. Ceilcote Co.*, 103 F.R.D. 591, 594 (D. Me. 1984).[9]

The mere fact the notes reveal employees' "mental impressions" about the litigation does not make them work product. The Order's finding to the contrary extends Rule 26 far beyond the "agents" listed in the Rule, and effectively extends work product protection to anything employees write or say about the litigation, and in doing so converts every waiver of the privilege into an invocation of work product protection – a result that obviously makes no sense.

## III.      THERE WAS NO ATTORNEY-CLIENT PRIVILEGE

The Order also erroneously found that the attorney-client privilege applied to communications between Defendants and the Alliance, which Defendants conceded was neither their attorney, nor their agent in dealing with their attorney, nor their attorney's agent. *See, e.g.*, *Running Foxes Petroleum, Inc. v. Nighthawk Prod. LLC*, No. 14-CV-01466-MSK-MJW, 2015 WL 9312097, at *5 (D. Colo. Dec. 23, 2015); Hr'g Tr. 41:12-13. To do so, the Order incorrectly relied on <u>state</u> law. Order at 9 (citing *Reginald Martin Agency, Inc.*, 460 F. Supp. 2d 915, at 919-920 (S.D. Ind. 2006); Order 7 (citing *Barfield v. Sho-Me Power Elc. Co-op*, 2014 WL 2575220, at *3 (W.D. Mo. June 9, 2014) (Missouri state law); *Black*, 74 P.3d at 469 (Colorado state law)). The Order applied the wrong law and got the wrong result.

<u>CONCLUSION</u>

Plaintiffs respectfully request that the Court reverse the Magistrate's Order.

---

[9]      Plaintiffs also cited decades of authority at all levels of the federal judiciary consistently supporting this interpretation of Rule 26's 2010 amendment, Reply 6-7, all of which the Order ignored. Since it was first added by amendment in 1970, Rule 26(b)(3) has been properly interpreted to require that the work be undertaken to assist an attorney or legal representative in litigation. See *Thomas Organ*, 54 F.R.D. at 372; *Scott Paper*, 103 F.R.D. at 594. The "agents" and others listed in the Rule, however, are there to clarify that an attorney need not be the actual author, recognizing the reality that non-attorneys must often assist attorneys or other legal representatives in litigation.

Dated: December 18, 2017

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

___ /s/ Sean P. Rodriguez _____
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606

16

Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2017, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such

filing to all counsel of record.

Heather Fox Vickles, Esq.
Brooke A. Colaizzi, Esq.
Raymond M. Deeny, Esq.
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: 303-297-2900
Fax: 303-298-0940
hvickles@shermanhoward.com
bcolaizzi@shermanhoward.com
redeeny@shermanhoward.com

William J. Kelly, III, Esq.
Chandra Marie Feldkamp, Esq.
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
Tel: 720-236-1800
Fax: 720-236-1799
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

Meshach Y. Rhoades, Esq.
Martin J. Estevao, Esq.
ARMSTRONG TEASDALE, LLP
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Tel: 720-722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

Bogdan Enica, Esq.
111 Second Avenue NE, Suite 204
St. Petersburg, FL 33701
Tel: 727-388-3472
bogdane@hotmail.com

Martha L. Fitzgerald, Esq.
David Meschke, Esq.
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1219
Fax: 303-223-1111
mfitzgerald@bhfs.com
dmeschke@bhfs.com

James Hartley, Esq.
Jonathan S. Bender, Esq.
HOLLAND & HART
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Tel: 303-295-8000
jhartley@hollandhart.com
jsbender@hollandhart.com

Adam A. Hubbard, Esq.
HOLLAND & HART
1800 Broadway, Suite 300
Boulder, CO 80302-5234
Tel: 303-473-2700
aahubbard@hollandhart.com

Brian Alan Birenbach
RIETZ LAW FIRM, LLC
P.O. Box 5268
114 Village Place, #301
Dillon, CO 80435
Tel: 970-468-0210
Fax: 970-468-0371
brian@rietzlawfirm.com

Robert M. Buchanan, Jr.
Joan A. Lukey
Lyndsey M. Kruzer
Michael T. Gass
Justin J. Wolosz
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
rbuchanan@choate.com
joan.lukey@choate.com
lkruzer@choate.com
mgass@choate.com

Lawrence, D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN
OBURN, P.C.
5619 DTC Parkway, Suite 1200
Greenwood, Village, CO 80111
303-773-3500
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

Jessica L. Fuller
Diane Hazel
James M. Lyons
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
jfuller@lrrc.com
dhazel@lrrc.com
jlyons@lrrc.com

Christian Hammond, Esq.
DUFFORD & BROWN, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
chammond@duffordbrown.com
Thomas B. Quinn, Esq.
Peggy E. Kozal, esq.
John R. Mann, Esq.
GORDON & REES, LLP

555 Seventeenth Street, Suite 3400
Denver, CO 80202
Tel: 303-534-5160
Fax: 303-534-5161
tquinn@gordonrees.com
pkozal@gordonrees.com
jmann@gordonrees.com

Brian P. Maschler, Esq.
GORDON & REES, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-986-5900
Fax: 415-986-8054
bmaschler@gordonrees.com

Kathryn A. Reilly, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: 303.244.1983
Fax: 303.244.1879
reilly@wtotrial.com

Lawrence L. Lee, Esq.
Susan M. Schaecher, Esq.
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651
llee@laborlawyers.com
sschaecher@laborlawyers.com

Eric J. Stock
GIBSON DUNN & CRUTCHER, LLP
200 Park Avenue, 48th Floor
New York, NY 10166-0193
estock@gibsondunn.com


___/s/ Sean P. Rodriguez_____
Sean P. Rodriguez

2