# Exhibit 33

1

```
 1           IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
 2
     Case No. 14-cv-03074-CMA-KMT
 3   _____

 4   JOHANA PAOLA BELTRAN, et al.,

 5       Plaintiffs,

 6   vs.

 7   INTEREXCHANGE, INC., et al.,

 8       Defendants.
     _____
 9

10           Proceedings before KATHLEEN M. TAFOYA, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 9:42 a.m., November 17,

13   2017, in the United States Courthouse, Denver, Colorado.

14   _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                         APPEARANCES

19           SEAN RODRIGUEZ, NINA DISALVO, and JUAN VALDIVIESO,

20   Attorneys at Law, appearing for plaintiffs.

21           JOSEPH HUNT, Attorney at Law, appearing for

22   defendant InterExchange, Inc.

23   _____

24                        MOTION HEARING

25
```

18

```
 1   rules they had to, when the issue was raised, and they've
 2   agreed to sequester those documents pending this ruling.
 3           There is no way that any attorney could ever look
 4   at these documents and not feel as if she or he are had just
 5   inadvertently been joined on a conference call that was a
 6   strategy session of the adverse parties.
 7           This might as well have been a situation where the
 8   Alliance's facilitator, through its staff member, made a
 9   mistake and sent the invite, not simply to the sponsors, but
10   somehow to the plaintiffs' attorney.
11           An attorney in that circumstance would, of course,
12   to abide by ethical principles hang up the phone and/or,
13   hopefully, alert the other parties first and then hang up the
14   phone.
15           Here the documents were produced, apparently only
16   one day earlier, according to the papers of Boies Schiller;
17   but, nonetheless, no disclosure was made by Boies Schiller
18   that they had the documents.  The Alliance attorney hadn't
19   told the sponsors he was turning over the documents, and the
20   Alliance attorney was subsequently replaced on this case with
21   somebody who was retained for handling this matter.
22           Now, the Alliance obviously can't waive the
23   privilege of the parties to whom it belongs.  So the
24   facilitator's counsel, and the facilitator had to hire
25   counsel because they were subpoenaed, did something he wasn't
```

1    employee, as I understand it, of the Alliance -- those are
2    the two Alliance employees who are known to be present.  The
3    executive director and the person who is taking notes on his
4    behalf, although, again, the sponsors were unaware that the
5    notes were being taken.
6            So if we have a common interest with the Alliance,
7    and again -- I would like to come back to that in just a
8    moment, but I had a couple of other points I wanted to make
9    first -- then none of that would be a problem because this is
10   a discussion among the parties who were sharing information
11   that their lawyers are also sharing.
12           So what was occurring during the time period --
13   this is so extraordinary, actually, I've never had a
14   circumstance where discovery was made of documents when
15   litigation was pending that relate to discussion of the
16   strategy by a joint defense group be the subject of a motion
17   to compel.  That is a highly unusual circumstance.  Nor have
18   I ever had a circumstance where notes that clearly relate --
19   remember, they saw the notes that talk about the advice of
20   counsel -- ended up in the hands of the adverse party and not
21   have those lawyers reveal that fact and disgorge the
22   documents as they're ethically required do, unless they get a
23   court order which they're now seeking.
24           But instead of doing that, they were using them at
25   the deposition, springing them on the sponsors which, of

```
 1    course, is not the way the system is designed to work.
 2              So we are in a circumstance in the middle of
 3    litigation where a joint defense group is trying to talk to
 4    each other; principals are trying to understand what's
 5    happening, as well as their attorneys having their separate
 6    meetings.
 7              So what you have are regular discussions among
 8    counsel as a group and periodic discussions, as reflected in
 9    these notes, that are among the principals themselves trying
10    to understand what is happening.
11              To the extent that there are redactions, you have
12    from two of -- I believe there are three parties involved in
13    the redactions.  You have the declarations in which they
14    expressly say to you, I thought I was having a privileged
15    conversation among the defense group facilitated by a
16    nonparty that clearly has the identical interest to us, the
17    Alliance, our trade association, to assist us in getting
18    together and trying to understand.
19              When you read these, you will see that four of
20    them, as I started to say earlier, actually referred to the
21    fact that they are describing what their attorneys told them.
22              I do not, for the life of me, understand how it
23    could be that at that moment Boies Schiller didn't stop
24    reading and call one of us or alert us by e-mail.  I cannot
25    imagine how it is that we learned of this in the deposition
```

```
 1     when the documents were placed in front of a totally
 2     blind-sided director of one of the sponsors.
 3               THE COURT:  Well, they got it from a third party,
 4     that's why.
 5               MS. LUKEY:  Well, Your Honor, that's not the way
 6     the rules work.  If you get -- if you subpoena materials from
 7     a third party, you are obligated to provide them to the
 8     adverse side.  That's always been the case.  You don't just
 9     get to just keep them.  They got it from a third party.  The
10     third party's lawyer didn't have the sense to send it out to
11     the sponsors, the other parties or their lawyers; but Boies
12     Schiller certainly knew they were obligated to turn over what
13     they got on subpoena from third parties.  We've been
14     obligated to do the same.  You don't hold onto them until
15     after you spring them on the other side.  Were we to have
16     done this to one of the plaintiffs, we would have heard about
17     it, I'm quite sure.
18               THE COURT:  I do want to hear from the other side
19     later that because this is the second time -- this is none of
20     your faults, but just to let you know, yesterday I had
21     exactly the same thing happen, where somebody subpoenaed a
22     third party, got the documents and just kept them, never gave
23     them up.  And as I was of the understanding, and I wasn't the
24     civil lawyer that all of you, I was the criminal lawyer, so,
25     of course, we gave everything up.  But for civil, I was under
```

1  were a little embarrassed about turning them over, but there
2  is no reason for you not to see again.  Again, there is
3  nothing inappropriate, just consternation reflected.
4        So when you see these, you will see that everyone
5  of them has to do with strategy:  What do we do?  What is our
6  position?  Or it has do with:  Is this a strong point?  Or
7  is this a weak point.
8        I, for one, really don't like at all that we're now
9  in a circumstance where Boies Schiller has seen, read,
10  analyzed enough to start questioning a witness where we think
11  our strengths and our weaknesses are.  That is not a place I
12  like to be.
13       Turning now to the question that you first raised,
14  which is that of the common interest privilege, our
15  discussion of the law -- and the law is pretty extensive,
16  actually, in the Tenth Circuit -- appears on page 12 of our
17  opposition brief.
18       The description of the common interest is both the
19  Alliance and the sponsors obviously wished -- had a need to
20  prevail in this litigation.  The plaintiffs contend that that
21  common interest in assuring that this matter proceeded
22  successfully could not constitute a common interest.  That's
23  not true.  As you read through a common interest is the same
24  interest in a legal matter in a litigation.
25       In the notes that you already have unredacted

28

1   Ms. Jordan, who is from my client, states why there is a need
2   to prevail.  And she puts it in her own words thinking she's
3   in the midst of a privileged conversation.  She said, If we
4   lose this case, the AuPair program is gone, it dies.  That
5   was the common interest.
6          The sponsors, as the Court has heard in various
7   financials -- we've done the filings about the financial
8   issues -- do not operate at high margin, many of them are not
9   for profits.  This is not a high profit industry or
10  profession.  This is a circumstance where entities have
11  decided to proceed with a cultural exchange program.
12         So they don't have a lot of money, excess money
13  around.  And if it is determined that this is predominantly a
14  work program, thereby bringing into play domestic workers
15  bills and the like, and the need to have 50 different states
16  minimum wages reviewed, as well as all the municipalities,
17  then the program doesn't survive.  It's that simple.  So
18  there is the common interest.
19         The interest in ensuring that this cultural
20  exchange program survives, the Alliance is very interested in
21  that because this is a substantial subgroup of the Alliance
22  which represents, I believe it is four, it may be five,
23  cultural exchanges programs, of which this is one of the more
24  prominent ones.
25         Obviously, the sponsors who have devoted what they

30

1   business interests of that entity is protected.  That is not
2   the case and that is abundantly apparent when you look at
3   these redacted extracts, which they've already seen, even if
4   they are now sequestered.
5              They are saying we cannot read Rule 26(b)(3)
6   literally.  Well, I think we can read it for what it fairly
7   says as interpreted in this circuit.  And what it fairly says
8   is that if different persons have the same -- have legal
9   interests, identical legal interests with respect to the
10  subject matter of the communication that is protected, the
11  Common Interest Doctrine protects that communication.
12             I would like to -- if the Court -- when the Court
13  is done with any questions it may have, to give a copy of the
14  pages which have redactions.  What we have done is to
15  highlight them in red.  We will then file them under the
16  provision that actually doesn't allow Boies Schiller to look
17  at them either until the Court rules.  They've already seen
18  them, they possess them, they've sequestered them.  And this
19  Court will then see what it is the defendants were trying to
20  protect.  And perhaps the Court will understand the level of
21  my distress because I've done a lot of work in the legal
22  ethics field, with the notion that these materials were
23  received, reviewed, used and undisclosed until the time that
24  they were used.  And even greater distress with the concept
25  of moving forward in a circumstance where the plaintiffs' law

35

1   portions that concern legal matters.

2            Finally, and before I leave the subject, I would
3   like to note that the last time we were before Judge Tafoya,
4   Judge Tafoya made very clear -- my mistake, Judge Arguello.
5   Judge Arguello made very clear that she would no longer
6   tolerate defendants constant accusations of misconduct by my
7   firm.

8            Concerning the Common Interest Doctrine, as
9   Ms. Lukey correctly said, the legal interests must be
10  identical; it must be a legal interest.  She did not identify
11  a legal interest.  She identified an interest in the business
12  continuing as it has.  That is a business interest.  That is
13  not a legal interest.  And it is not identical because the
14  Alliance is not a participant in the business itself.

15           I'm not going to engage with Ms. Lukey on the
16  merits of the case or the equities, except to note that, as
17  in the tobacco example I used earlier, any defendant who is
18  charged with misconduct that goes to the core of its present
19  business model or its preferred business model can say that
20  the matter is so important that there should be an exception
21  to the law.  There is no such thing as an exception to the
22  law because it's important to a defendants' business.

23           Now, I would like with Your Honor's permission,
24  Mr. Valdiviceso to give some more facts concerning the
25  deposition where the documents were used.

36

```
1                THE COURT:  All right.
2                MR. VALDIVIESO:  Good morning, Your Honor.
3                THE COURT:  None of them are tall enough for you,
4      right.  talk louder.
5                MR. VALDIVIESO:  I'm happy to answer any questions
6      that you may have about the timing of the production of
7      documents and the use of the deposition.  I was there, I took
8      the deposition.
9                I had been in contact with the Alliance for several
10     months trying to obtain these documents.  They had agreed to
11     produce them months -- weeks before, and they eventually
12     produced it the day before when I was already traveling to
13     Orange County to take this deposition.
14               I was reviewing other documents in preparation for
15     this deposition.  And we got these documents, and I didn't
16     even have time to review the whole production before the
17     deposition took place.  I identified pages where the deponent
18     appeared.  And I actually -- I spoke with my opposing
19     counsel, counsel for EuRaupair, fairly extensively during the
20     deposition in an effort to not do anything unfair.  I spoke
21     with her and told her that I intended to use these documents.
22     I told her that, from my understanding that because it had
23     been produced by a third party, that I didn't believe that
24     any privilege applied, and she did not -- she did not contest
25     that.  And so when I -- this was during a break.
```

37

```
 1              After the break, I was going to use the documents
 2   and some of the defense counsel objected.  And I -- excuse
 3   me, I actually spoke with my opposing counsel at the
 4   deposition to ask her if she had received the documents from
 5   the Alliance, and she told me that she wasn't sure.  And
 6   neither of us was really sure whether any of it had been
 7   produced, but then I confirmed that it had been produced the
 8   day before.
 9              And so when I realized that the other defense
10   counsel had not received the documents, I immediately
11   e-mailed it to them, and I confirmed that they had received
12   them before I proceeded with the deposition.
13              So I just want to clear up any confusion that use
14   of these documents was an attempt to spring a fast one on my
15   opponents, an attempt to use documents that were, on their
16   face, privileged and that I was aware of that because I did
17   not have an opportunity to review these documents extensively
18   for any privilege until after that deposition had concluded.
19              And at that point, Your Honor, the defendants had
20   said at the deposition, We would like to designate the
21   portion of this transcript attorneys eyes only and we would
22   like an opportunity to review these documents for privilege
23   and call up docket if necessary.  And I said, Understood.
24   And I gave the opportunity -- I gave the defendants the
25   opportunity to so.  And then they took three weeks before
```

 1     reaching back to me with a letter finally asserting privilege

 2     over these documents when they knew the contents of the

 3     documents and they knew that these were important documents

 4     that we were trying to use in a deposition and they asserted

 5     privilege the night before we were going to be deposing

 6     someone else that was involved in with the Alliance.

 7            So I just wanted to clear up the facts regarding

 8     the timing.  I was, frankly, disappointed that there were any

 9     allegations of unethical behavior with respect to our

10     handling of the documents.

11            As soon as my opposing counsel sent us the letter,

12     I had the documents sequestered, and I worked with them in

13     good faith to go through the process with the Court, the

14     processes required by Rule 45 to sequester the documents and

15     to bring them before the Court for the Court to make a

16     determination as to whether the documents were subject to any

17     privilege or work product claim.

18            Thank you, Your Honor.

19            THE COURT:  All right, thank you.

20            MS. LUKEY:  May I very briefly respond, Your Honor?

21            THE COURT:  Yes.

22            MS. LUKEY:  Your Honor will now have the

23     opportunity to review the documents yourself.  You are going

24     to find actual references to "our counsel confirms X" and

25     then someone else responding "that may not be so clear on one

40

1    they do -- and I believe that they do -- that they weren't
2    privileged, and he turned them over.
3           So it's kind of hard for me to look at the
4    defendants with anything but somewhat, Well, what do you do,
5    you know?  You subpoenaed them.  Their lawyer looked at them
6    and said, They're not the privileged, here you go.
7           MS. LUKEY:  That actually, Your Honor, you'll see
8    in the papers that there is a discussion of the communication
9    that came from this lawyer who was very shortly thereafter
10   off the case, as you can imagine, replaced by somebody else.
11   The lawyer was not a regular for the Alliance.
12          There is a letter from him in which he says --
13   Okay, here are the first 77 pages and we've got a ton more
14   documents, but it's going to take a long time to review them
15   for privilege and I don't have time to it that so why don't I
16   just do that all to you, subject to a clawback agreement,
17   which, of course, the sponsors and the Alliance immediately
18   nixed.
19          There is no indication that he made a privilege
20   review on these documents, nor could he have, frankly,
21   although if he bothered to read them, he would surely have
22   recognized the legal strategy was contained within the notes.
23   But if he was concerned about privilege attaching to the
24   80,000, or whatever it is, pages of records of the Alliance,
25   that he wasn't going to go through, he was just going to

41

1  throw them all at plaintiffs because he wasn't going to look
2  for privilege, that would have to be on the same basis, the
3  privilege either existed or didn't exist, and he was
4  concerned about there being a privilege, but he wasn't going
5  to go to the trouble of figuring it out.  Again, unthinkable,
6  but that's what his communication says.
7            So I do not believe this Court can infer, nor do I
8  believe that the plaintiffs could infer, that he had actually
9  made a privilege review, even if he could have.
10           Now, just to go back to a point that you just made,
11 the Common Interest Doctrine only comes into play with a
12 separate entity, a nonparty.  The Alliance is not an agent or
13 representative here as we make clear in our papers.  They are
14 a nonparty separate entity that has a common interest with
15 the sponsors; namely -- and this is what the notes in their
16 entirety are about -- Can we save this program?  What can we
17 do?  Can we get the State Department to stop hiding, sitting
18 back and refusing to say anything and to come forward?
19 That's all in there.  And I don't know how you look at that
20 and don't recognize that you just have a road map to the
21 views of various counsel.
22           What they will now know that they may not have
23 quickly realized before is where comments are made that
24 clearly involve legal principles and knowledge being stated
25 by non-lawyers where it is not expressly noted, My counsel