IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

      Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

      Defendants.

_____

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE TAFOYA'S ORDER ON NONDISPOSITIVE MATTER [ECF NO. 763] UNDER FEDERAL RULE OF CIVIL PROCEDURE 72(A)**

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS............................................................................................... 2

ARGUMENT.................................................................................................................. 3

I.      LEGAL STANDARD ............................................................................................. 3

II.     THE MAGISTRATE JUDGE PROPERLY CONCLUDED THAT THE
        REDACTIONS ARE PROTECTED BY THE ATTORNEY-CLIENT
        PRIVILEGE......................................................................................................... 4

        A.     Applicable Law ........................................................................................ 5

        B.     The Magistrate Judge Correctly Concluded that the
              Communications Were Privileged and the Privilege Was Not
              Waived. .................................................................................................. 6

        C.     Plaintiffs' Arguments Are Unavailing. ..................................................... 8

III.    THE MAGISTRATE JUDGE PROPERLY CONCLUDED THAT THE
        REDACTIONS ARE PROTECTED WORK PRODUCT. ..................................... 11

        A.     Applicable Law ...................................................................................... 11

        B.     The Magistrate Judge Correctly Concluded that the
              Communications Are Protected as Work Product. ................................ 12

CONCLUSION ........................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Broessel v. Triad Guar. Ins. Corp.*,
   238 F.R.D. 215 (W.D. Ky. 2006) .................................................................................. 11

*Cejka v. Vectrus Sys. Corp.*,
   No. 15-cv-02418, 2017 U.S. Dist. LEXIS 117419 (D. Colo. July 27, 2017) ........ 5, 7, 10

*Grand Jury Proceedings, In re*,
   616 F.3d 1172 (10th Cir. 2010) .................................................................................. 5, 6

*Hedquist v. Patterson*,
   215 F. Supp. 3d 1237 (D. Wyo. 2016) ........................................................................ 10

*Hickman v. Taylor*,
   329 U.S. 495 (1947) .................................................................................................... 11

*L-3 Comm's Corp. v. Jaxon Eng'g & Maint., Inc.*,
   No. 10-cv-02858, 2014 WL 3732943 (D. Colo. July 29, 2014) ................................... 14

*Leprino Foods Co. v. DCI, Inc.*,
   No. 13-cv-02430, 2014 WL 2922667 (D. Colo. June 27, 2014) ........................... 12, 13

*Nat'l Union Fire Ins. Co. v. Intrawest ULC*,
   No. 13-cv-00079, 2015 WL 5047635 (D. Colo. Aug. 27, 2015) ................................. 12

*Ocelot Oil Corp. v. Sparrow Indus.*,
   847 F.2d 1458 (10th Cir. 1988) .................................................................................... 4

*Pac. Pictures Corp. v. United States District Court*,
   679 F.3d 1121 (9th Cir. 2012) ........................................................................... 6, 9, 10

*Pertile v. GM, LLC*,
   No. 15-cv-0518, 2017 WL 3767780 (D. Colo. Aug. 31, 2017) ..................................... 4

*Plasma-Deriv. Protein Therapies Antitrust Litig., In re*,
   No. 09-cv-7666, 2013 WL 791432 (N.D. Ill. Mar. 4, 2013) ......................................... 11

*Qwest Comm's Int'l, In re*,
   450 F.3d 1179 (10th Cir. 2006) ........................................................................... 5, 9, 11

*Schaeffler v. United States*,
   806 F.3d 34 (2d Cir. 2015) ................................................................................... 5, 7, 9

*United States v. BDO Seidman LLP*,
   492 F.3d 806 (7th Cir. 2007) ...................................................................................... 10

*United States v. Deloitte, LLP*,
   610 F.3d 129 (D.C. Cir. 2010) ....................................................................... 12, 13, 14

*United States v. Hudson*,
No. 13-20063-01 2013 WL 476804 (D. Kan. Sept. 5, 2013) ...................................... 10

*United States v. Ill. Power Co.*,
No. 99-cv-0833, 2003 WL 25593221 (S.D. Ill. Apr. 24, 2003) .................................. 11

*United States v. Nobles*,
422 U.S. 225 (1975) ................................................................................................ 12

*United States v. Ohio Edison Co.*,
No. C2-99-1181, 2003 U.S. Dist. LEXIS 25029 (S.D. Ohio Jan. 6, 2003) ................ 11

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) .................................................................................................. 5

*Violetta v. Steven Bros. Sports Mgmt. LLC*,
No. 16-1193, 2017 WL 3675090 (D. Kan. Aug. 24, 2017) .................................. 6, 7, 9

*Wall v. Astrue*,
561 F.3d 1048 (10th Cir. 2009) .................................................................................. 6

*Wallin v. Alfaro*,
No. 03-cv-00281, 2005 WL 2125224 (D. Colo. Sept. 2, 2005) .................................. 4

## RULES

Fed. R. Civ. P. 26 ............................................................................................. 12, 13, 15

Fed. R. Civ. P. 72 .................................................................................................... 1, 4

## OTHER AUTHORITIES

8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROCEDURE §
2024 (3d ed. 2017) ................................................................................................ 14

Restatement (Third) of the Law Governing Lawyers § 76(1) (2000) ............................ 10

**PRELIMINARY STATEMENT**

On Plaintiffs' telling, Magistrate Judge Tafoya permitted Defendants to withhold a "77-page document" under a theory that would insulate the criminal conversations of *La Cosa Nostra*" from discovery. Pls' Objections to Magistrate Judge Tafoya's Order on Nondispositive Matter [ECF No. 763] Under Fed. R. Civ. P. 72(A) 1, ECF No. 771 ("Obj."). The Magistrate Judge purportedly did so by failing to apply, in Plaintiffs' words, "any coherent legal theory" to a key question presented by Plaintiffs' motion and by confusing state law with federal law. Obj. 9. Plaintiffs also argue that the order relating to the document (the "Order") likewise could insulate "virtually all discussions between a trade association and its members" from discovery. Obj. 11.

In fact, Defendants redacted a small fraction of the document—only 10 of the 77 pages were redacted at all, and most of those redactions covered only a few lines—and submitted the redactions for *in camera* review. ECF No. 758 (unredacted Alliance notes submitted for *in camera* review). The Magistrate Judge conducted a "careful review" of the redactions and found that Defendants and the Alliance were "communicating about the current litigation," "the legal effect of the litigation on themselves," and "the Department of State's [] position on the central issue in the case." Order 9. Plaintiffs do not challenge those findings here—indeed, they do not even ask this Court to review the *in camera* materials.

Having ascertained the relevant facts (which are now undisputed), the Magistrate Judge conducted an ordinary privilege analysis. Because the communications reflected legal advice that Defendants had received from their attorneys, the communications

were protected by the attorney-client privilege.  Order 9–10.  Because Defendants

shared a common legal interest with the Alliance in the subject matter of the

communications—namely, retaining the current legal rules concerning the method of

paying au pair stipends—the disclosure of the information to the Alliance did not waive

the privilege.  Order 10–12.  And, because the communications reflected the "mental

impressions" of counsel and were prepared "in anticipation of litigation," the

communications were protected by the work-product privilege.  Order 9–10.

Despite Plaintiffs' hyperbolic treatment of her analysis, each of the Magistrate

Judge's conclusions is amply supported by authorities from inside and outside this

Circuit, as set forth in greater detail below.  Plaintiffs' objections should be overruled.

## STATEMENT OF FACTS

The Alliance is "an association of 90 nongovernmental organizations comprising

the international educational and cultural exchange community in the United States."

Order 2–3.  Au pair sponsor organizations, including most of the Defendants in this

case, form a 13-member subgroup of the Alliance.  *Id.* at 3.  Officers of several

Defendants serve on the Alliance's board of directors.  *Id.*

After Plaintiffs filed this suit, the Alliance hosted discussions with its au pair

sponsor members, including discussions about this litigation and responses to it.  *See*

ECF Nos. 715-1 ¶ 4, 715-2 ¶ 3.  During these conversations, Defendant members

discussed advice they had received from their attorneys.  *See* ECF Nos. 715-1 ¶¶ 6–13,

715-2 ¶ 5.  In light of the pending litigation and the character of the discussions,

participants expected and understood that these conversations would remain

confidential and were within the scope of a common interest agreement.  Defs.' Opp'n to Pls.' Mot. to Compel 3, ECF No. 715 ("Opp'n") (and declarations cited therein).

Ultimately, Plaintiffs subpoenaed the Alliance.  The Alliance produced notes of the conversations described above, all of which occurred when this litigation was underway.  *See* Opp'n 4–5.  Defendants asserted that portions of the notes reflected materials protected by the attorney-client privilege and the work-product doctrine, and therefore redacted a small fraction of the notes.  *See* ECF Nos. 715-5 (privilege log); 758 (collecting and displaying redactions to facilitate *in camera* review).

Plaintiffs moved to compel production of the unredacted notes.  After reviewing the notes *in camera*, the Magistrate Judge denied Plaintiffs' motion, concluding that the redactions reflected information that was "quite obviously 'based on attorney advice.'" Order 9.  The redactions "uniformly involved the mental impressions, conclusions, opinions, or legal theories of the speaking Defendant representative, often directly attributable to the party's received legal advice."  *Id.* at 9–10.  All of the information had been "prepared in anticipation of litigation by or for a party."  *Id.* at 10.  The Magistrate Judge therefore properly concluded that the redactions reflected work product and information protected by the attorney-client privilege, and held that all of the redactions were proper.  Plaintiffs have objected.

## **ARGUMENT**

### I.    **LEGAL STANDARD**

 "A litigant who seeks to overturn a magistrate's discovery order bears a heavy burden."  *Wallin v. Alfaro*, No. 03-cv-00281, 2005 WL 2125224, at *5 (D. Colo. Sept. 2,

2005).  Where a party objects to a magistrate judge's nondispositive order, the District Court must "modify or set aside" parts of the order only where they are "clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  The "clearly erroneous" standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotations omitted).  The district court may conduct a "plenary review as to matters of law," but the Court should set aside a Magistrate's order "only if he or she applied the wrong legal standard or applied the appropriate legal standard incorrectly."  *Pertile v. GM, LLC*, No. 15-cv-0518, 2017 WL 3767780, at *1 (D. Colo. Aug. 31, 2017) (internal quotations omitted).  Ultimately, "the court will overrule the magistrate judge's determination only if his discretion is abused."  *Id.* (internal quotations omitted).

## II.   THE MAGISTRATE JUDGE PROPERLY CONCLUDED THAT THE REDACTIONS ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

The Magistrate Judge correctly held that the redactions contained privileged attorney-client communications.  The redacted materials reflected confidential legal advice given to Defendants by their counsel.  The privilege therefore applies, and Plaintiffs do not seriously contend otherwise.  The real question presented by Plaintiffs' motion (and objections) is whether the Defendants waived the privilege by discussing that legal advice with each other and employees of the Alliance.  They did not.  As the Magistrate Judge properly held, disclosure of privileged communications to a third party with a common interest does not constitute a waiver of the privilege.

- 4 -

### A.     Applicable Law

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The privilege protects (i) "confidential communications by a client to an attorney made in order to obtain legal assistance" and (ii) communications "from attorney to client" that constitute legal advice or "tend directly or indirectly to reveal the substance of a client confidence."  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)).

The disclosure of privileged information to someone other than attorney or client can result in a waiver of the privilege.  When the disclosure is made to a party with a "common interest," however, the "'common interest' doctrine provides an exception to waiver because disclosure advances the representation of the party and the attorney's preparation of the case."  *In re Qwest Comm's Int'l*, 450 F.3d 1179, 1195 (10th Cir. 2006).  The common-interest doctrine applies if (1) the relevant communications were made "in the course of a joint-defense effort" and (2) the communications "were designed to further that effort."  *See id.* (internal quotation marks omitted).  Parties may engage in a joint-defense effort regarding any legal issue as to which they share an "identical legal interest."  *See Cejka v. Vectrus Sys. Corp.*, No. 15-cv-02418, 2017 U.S. Dist. LEXIS 117419, at *8 (D. Colo. July 27, 2017) (attached as Exhibit A); *see also Schaeffler v. United States*, 806 F.3d 34, 42 (2d Cir. 2015) (applying common interest doctrine where parties share "a common legal interest or strategy in obtaining a particular legal goal whether or not litigation is ongoing").  This standard is satisfied if

the party asserting the privilege shows that it made the communication "in pursuit of a joint strategy." *Pac. Pictures Corp. v. United States District Court*, 679 F.3d 1121, 1129 (9th Cir. 2012); *see Schaeffler*, 806 F.3d at 42; *Violetta v. Steven Bros. Sports Mgmt. LLC*, No. 16-1193, 2017 WL 3675090, at *13 (D. Kan. Aug. 24, 2017) ("The relevant question with which the Court reviews the communications is this: were Defendants and their third-party insurers communicating to formulate a common legal strategy . . . .").

### B.    The Magistrate Judge Correctly Concluded that the Communications Were Privileged and the Privilege Was Not Waived.

The Magistrate Judge engaged in a straightforward application of the law and reached the correct conclusion.  Again, Plaintiffs do not seriously argue that the redacted material was not privileged, nor could they.[1]  The Magistrate Judge concluded that the communications concerned this litigation, "the legal effect" of the litigation, and the Department of State's "position on the central issue in the case."  Order 9.  The information "was quite obviously based on attorney advice" and was "often directly attributable" to legal advice that Defendants had received from their counsel.  Order 9–10 (internal quotation marks omitted).  The redactions thus reflected confidential communications between Defendants and their attorneys and were therefore privileged.  Order 9–10; *In re Grand Jury Proceedings*, 616 F.3d at 1182.

---

[1] Plaintiffs make only a cursory suggestion to the contrary.  Obj. 15.  Apparently, Plaintiffs understand Magistrate Judge Tafoya to have held that Defendants' communications with the Alliance were themselves protected by the attorney-client privilege.  *See id.*  Insofar as Plaintiffs developed an argument on this score at all, it is wrong.  *See, e.g.*, *Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) (holding argument was waived where it was not supported by "developed argumentation").  As Magistrate Judge Tafoya explained, the communications reflect Defendants' privileged communications with their counsel.  The question presented is whether the disclosure of those communications to the Alliance waived the privilege.  *See* Order 4–5, 9–10.

Having concluded that the redacted materials were privileged, the Court properly analyzed whether the privilege was waived by Defendants' discussions in the presence of Alliance employees, and properly concluded that it was not.  Order 10.  Defendants share a common legal interest with the Alliance.  In particular, as the Magistrate Judge held, the Alliance and the Defendants have precisely the same legal goal:  "to retain the current method of paying stipends."  *Id.* at 11.  That goal requires Defendants to prevail in this case—and gives the Alliance a substantial interest in seeing that they do so—but it also requires the Defendants and the Alliance to coordinate their legislative and regulatory lobbying efforts.  *See id.* at 10.

That is why Defendants' and the Alliance's shared "lobbying efforts were laid out side-by-side with tactics to pursue in the litigation, as well as the effect certain DOS positions might have on the current litigation."  Order 10 (internal footnote omitted).  Indeed, the Magistrate Judge opined that Defendants' interests were so precisely aligned with the Alliance's that the Alliance could itself be held liable if Defendants lose.  *Id.* at 12.  Because Defendants and the Alliance pursued a shared legal strategy to achieve their common interest, any or all of the interests identified by Magistrate Judge Tafoya suffice to trigger the common-interest doctrine and prevent waiver.  *See, e.g.*, *Schaeffler*, 806 F.3d at 42 (holding doctrine applied where parties employed common "strategy in obtaining a particular legal goal"); *Violetta*, 2017 WL 3675090, at *13, *15–16 (asking whether defendants and third-party were communicating "to formulate a common legal strategy" and holding they were as to certain communications); *Cejka*,

- 7 -

2017 U.S. Dist. LEXIS 117419, at *12 (applying doctrine where one party faced "potential litigation" but was not sued).

### C.    Plaintiffs' Arguments Are Unavailing.

The gravamen of Plaintiffs' objections to the Magistrate Judge's disciplined analysis is two-fold:  first, they claim that the Magistrate Judge invented the common interests she cited from whole-cloth; and second, they argue that those common interests fail as matter of law.  Obj. 7–12.  Neither argument withstands scrutiny.

The first half of Plaintiffs' objections overlooks important parts of Defendants' arguments.  They claim that "[t]he only 'common interest' Defendants purported to share with the Alliance was a shared desire 'to prevail' in the litigation."  Obj. 7.  Not so.  From start to finish, Defendants' claims of privilege reflected that the outcome of this litigation is inextricably bound up with the legal regime that governs the method of determining the au pair stipend.  That is clear from Defendants' privilege log,  ECF No. 715-5 at 3 (repeatedly listing "[d]iscussion of regulatory advocacy in connection with litigation status and posture"), the briefing, ECF No. 715 at 14 (arguing Defendants' "discussions about this lawsuit" and "about possible legislative solutions to issues raised in this lawsuit" are common legal interests and not business interests) (emphasis omitted), and the hearing before Magistrate Judge Tafoya, *see, e.g.*, ECF No. 772-4 at 28:12–24 (explaining Defendants and Alliance share common interest in seeing that program survives, which it would not if 50 state minimum wage laws applied to au pairs).[2]

---

[2] Without explanation, Plaintiffs dismiss the shared interest in the survival of the au pair program as a "commercial interest."  Obj. 7.  A shared legal interest may be motivated by financial concerns, but that in no way detracts from the fundamentally legal character

Defendants thus have consistently pointed to the relationship between this litigation, their regulatory efforts, and the overarching common interest that the Magistrate Judge cited—"retain[ing] the current method of paying stipends."  Order 11.

The second half of Plaintiffs' objections is similarly off-target.  Plaintiffs claim that the common interests the Magistrate Judge identified fail as a matter of law.  Obj. 8–9.  This argument misstates the law of this Circuit, mischaracterizes the Court's decision, and invites this Court to err.

Plaintiffs begin by offering a hyper-technical parsing of what it means for parties to share an "identical legal interest."  According to Plaintiffs, the Magistrate Judge improperly required that the parties share a "common enterprise" rather than an "identical interest."  Obj. 9.  The Court did no such thing.  On the contrary, she held as follows:  "In its independent efforts to retain the current method of paying stipends, the Alliance is acting in complete conformance with the position taken by the sponsor Defendants <u>and therefore their interests are identical</u>."  Order 11 (emphasis added).

Moreover, courts in this Circuit and elsewhere routinely test for whether the common-interest doctrine applies by asking whether the parties pursued a "common legal strategy."  *See, e.g.*, *In re Qwest*, 450 F.3d at 1195 (asking whether communications were made to further joint-defense effort); *Schaeffler*, 806 F.3d at 42 (holding doctrine applied where parties employed common "strategy in obtaining a particular legal goal"); *Pac. Pictures Corp.*, 679 F.3d at 1129 (doctrine applies if parties

---

of the interest.  *Schaeffler*, 806 F.3d at 42 ("[T]hat the Consortium stood to lose a lot of money (along with appellants) if appellants' tax arguments failed <u>is not support</u> for the position that no common legal interest existed.") (emphasis added).

"make the communication in pursuit of a joint strategy"); *Violetta*, 2017 WL 3675090, at *13 (asking whether defendants and third-party were communicating "to formulate a common legal strategy").[3]  The Magistrate Judge's analysis, conclusions, and the cases she cited are wholly consistent with such an approach.[4]  Order 4–5; 9–12.

Plaintiffs then proceed to stake out a novel and unsupported legal position:  that parties whose interests are so closely aligned that they might be co-defendants cannot invoke the common-interest doctrine.  Obj. 10.  Courts in this Circuit, commentators, and the weight of authority from across the country all point to the opposite conclusion.  *See, e.g.*, *Cejka*, 2017 U.S. Dist. LEXIS 117419, at *12 (holding doctrine applied where one party faced "potential litigation" but was not sued); *United States v. BDO Seidman LLP*, 492 F.3d 806, 815-16, 816 n.6 (7th Cir. 2007) (observing "the weight of authority favors our conclusion that litigation need not be actual or imminent" for the doctrine to apply, and collecting cases); Restatement (Third) of the Law Governing Lawyers § 76(1) (2000) (explaining doctrine can apply to a "nonlitigated matter").

---

[3] Lest Plaintiffs object that these cases applied something less than the "identical interest" standard, their lead cases from this Circuit all cited *Pacific Pictures Corp.* with approval.  *United States v. Hudson*, No. 13-20063-01, 2013 WL 476804, at *2 (D. Kan. Sept. 5, 2013) (citing *Pacific Pictures* for proposition that "shared desire to see same outcome in legal matter is insufficient to establish [a] 'common interest'"); *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1246 (D. Wyo. 2016) (same).

[4] Plaintiffs' complaint that the Magistrate Judge improperly relied on state law is therefore beside the point.  *See* Obj. 8–9.  The Magistrate Judge correctly applied "federal common law," with citation to state law that is persuasive, not controlling.  Order 6.  In any event, Plaintiffs fail to identify any meaningful difference between the state-law cases the Magistrate Judge cited and the federal standards recited above.  *See* Obj. 8–9 (attempting to distinguish the cases the Magistrate Judge cited on other grounds and never explaining how or whether they depart from federal law).

The Magistrate Judge's conclusions and the common interests she identified

accord with federal law from this Circuit and elsewhere.  Her ruling should be affirmed.[5]

## III.  THE MAGISTRATE JUDGE PROPERLY CONCLUDED THAT THE REDACTIONS ARE PROTECTED WORK PRODUCT.

The Magistrate Judge's decision should be affirmed for a second, independent

reason:  she correctly held that the redactions reflect work product.  The redacted

materials contained legal advice and the mental impressions of Defendants and their

counsel, which were prepared in connection with this ongoing litigation.

### A.  Applicable Law

The Supreme Court established the work-product doctrine in *Hickman v. Taylor*,

329 U.S. 495 (1947).  "At its core, the work-product doctrine shelters the mental

processes of the attorney, providing a privileged area within which he can analyze and

prepare his client's case."  *In re Qwest*, 450 F.3d at 1186 (internal quotations omitted).

It is an "intensely practical [doctrine], grounded in the realities of litigation in our

---

[5] Plaintiffs warn that any ruling in Defendants' favor would "massively expand[] the common interest doctrine," because Defendants share their common interest with a trade association.  Obj. 11.  As Plaintiffs' own citations demonstrate, cases involving trade associations and privilege—like every other kind of case—must be judged on their own facts.  ECF No. 719 at 12 (citing *In re Plasma-Deriv. Protein Therapies Antitrust Litig.*, No. 09-cv-7666, 2013 WL 791432, at *3 (N.D. Ill. Mar. 4, 2013) (holding whether communications with trade association are privileged must be evaluated on a "case-by-case basis")).  Courts therefore routinely apply the common interest doctrine in the trade-association context where, as here, the claim is legitimate.  *See, e.g.*, *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 220 (W.D. Ky. 2006) (applying common interest doctrine in trade-association context); *United States v. Ill. Power Co.*, No. 99-cv-0833, 2003 WL 25593221, at *4 (S.D. Ill. Apr. 24, 2003) (holding "no waiver of privilege through disclosure to third parties because [the trade association's] members were joined in a common interest in current and potential litigation"); *cf. United States v. Ohio Edison Co.*, No. C2-99-1181, 2003 U.S. Dist. LEXIS 25029, at *11 (S.D. Ohio Jan. 6, 2003) (applying attorney-client privilege to communications with a trade association) (attached as Exhibit B).

adversary system." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Work product may be created by a party as well as its attorney or other agent. Fed. R. Civ. P. 26(b)(3)(A).

If work product was prepared in connection with anticipated or ongoing litigation, it is protected regardless of whether it is tangible or intangible. *Leprino Foods Co. v. DCI, Inc.*, No. 13-cv-02430, 2014 WL 2922667, at *4 (D. Colo. June 27, 2014) ("*Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3), which applies only to documents and tangible things") (citing *United States v. Deloitte, LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010)); *Nat'l Union Fire Ins. Co. v. Intrawest ULC*, No. 13-cv-00079, 2015 WL 5047635, at *1 (D. Colo. Aug. 27, 2015) (explaining work-product doctrine applies to materials prepared "to assist in anticipated or ongoing litigation"). Likewise, the protection does not depend on "who created the document or how they are related to the party asserting work-product protection." *Deloitte*, 610 F.3d at 136. Ultimately, the questions are whether the document was prepared in connection with anticipated or pending litigation (Fed. R. Civ. P. 26(b)(3)(A)), and, for the higher-level attorney work product, whether the document contains "the thoughts and opinions of counsel." *Id.* That a third party prepared a document thus "does not exclude the possibility" that it contains another party's work product. *Id.*

> **B.    The Magistrate Judge Correctly Concluded that the Communications Are Protected as Work Product.**

Again, the Magistrate Judge correctly applied the law to this case. After reviewing the materials *in camera*, she found that: "the redacted information uniformly

involved the <u>mental impressions</u>, conclusions, opinions, or legal theories of the speaking Defendant representative, <u>often directly attributable to the party's received legal advice</u>." Order 9–10 (emphases added). The documents thus reflected the mental impressions of Defendants and (more often) their counsel, which are protected if they were prepared in anticipation of litigation. *See Deloitte*, 610 F.3d at 136; Fed. R. Civ. P. 26(b)(3)(A) (work product may be prepared by a party as well as its counsel).

The Magistrate Judge therefore examined whether the mental impressions had been formed "in anticipation of litigation by or for a party." Order 9–10; *see Leprino Foods Co.*, 2014 WL 2922667, at *4. She concluded that the limited redactions from the 77-page collection of notes had been formed for this purpose. Order 10. Indeed, they concerned not merely anticipated litigation, but this case in particular—which was pending when the Defendants received the legal advice reflected in the notes. *See* Order 3, 9–10 (observing notes concerned "the current litigation," "the legal effect of the litigation," and "the central issue in this case," and all of the redactions are "dated after the filing of this litigation"). In other words, Plaintiffs are not merely seeking materials that were prepared in anticipation of possible litigation; they are trying to obtain Defendants' legal advice that was delivered in connection with this case. The Magistrate Judge correctly held that those mental impressions are work product. *Leprino Foods Co.*, 2014 WL 2922667, at *4; *Deloitte*, 610 F.3d at 136.

Plaintiffs resist Magistrate Judge Tafoya's conclusion for three reasons, none of which justifies reversal. First, Plaintiffs contend that the redacted materials cannot be work product because the "only documents or tangible things at issue here" were

created by the Alliance, not the Defendants or their counsel.  Obj. 12.  It is true that the Alliance created the notes, but also entirely beside the point.  Although the notes were physically created by a third party, they reflect Defendants' and their attorneys' mental impressions.  Order 9–10.  Those mental impressions are protected regardless of who produced the document.  *Deloitte*, 610 F.3d at 136 (holding "the question is not who created the document or how they are related to the party asserting work-product protection, but whether the document contains work product").

Plaintiffs' second argument reveals that this dispute is really about whether Defendants waived the work-product protection, not whether it applies.  According to Plaintiffs, Defendants "waived any protection" when they "chose to share legal advice in the presence of the Alliance."  Obj. 13.  No citation supports that contention, because none exists.  Unlike the attorney-client privilege, "work product immunity is not automatically waived by disclosure of protected material to third parties."  *L-3 Comm's Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02858, 2014 WL 3732943, at *6 (D. Colo. July 29, 2014) (internal quotations omitted); 8 CHARLES A. WRIGHT & ARTHUR R. MILLER FED. PRACTICE & PROCEDURE § 2024 (3d ed. 2017).  Work-product protection is waived only if the disclosure "substantially increase[s] the opportunities for potential adversaries to obtain the information."  WRIGHT & MILLER § 2024.  Plaintiffs do not—and cannot— argue that disclosure to the Alliance substantially increased the likelihood of disclosure to an adverse party.  *See* Obj. 12–13.  That failure dooms Plaintiffs' argument.

Plaintiffs' final argument combines caricature with the failings of the prior two. According to Plaintiffs, the Magistrate Judge erred by adopting Defendants' suggestion

that "employees create work product if what they say or do has some connection—any connection—to litigation." Obj. 13–14. By so holding, Plaintiffs claim the Magistrate Judge extended Rule 26 "far beyond the 'agents' listed in the Rule" and transformed "every waiver of the privilege into an invocation of work product protection." Obj. 14.

That simply is not so. First, Defendants did not merely discuss "litigation"; they discussed information that was "quite obviously based on attorney advice" and counsel's "mental impressions" to formulate a joint legal strategy concerning this very lawsuit. Order 9. Second, Rule 26 itself contemplates that parties—like Defendants— as well as their attorneys can create work product. Fed. R. Civ. P. 26(b)(3)(A). Third, Plaintiffs' arguments about waiver reflect the same misunderstanding described above. The Magistrate Judge thus reached the correct conclusion, and none of Plaintiffs' arguments provides any basis for reversing her reasoned decision.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' objections should be overruled and the order of the Magistrate Judge affirmed.

Dated: January 10, 2018               Respectfully submitted,

                                      *s/ Diane R. Hazel*
                                      Joan A. Lukey
                                      (joan.lukey@choate.com)
                                      Robert M. Buchanan, Jr.
                                      (rbuchanan@choate.com)
                                      Michael T. Gass
                                      (mgass@choate.com)
                                      Justin J. Wolosz
                                      (jwolosz@choate.com
                                      Lyndsey M. Kruzer
                                      (lkruzer@choate.com)
                                      Samuel N. Rudman

(srudman@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

s/ Kathryn A. Reilly
Kathryn A. Reilly
(reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Natalie E. West
(west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

**Attorneys for Defendants Agent Au Pair, Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair**

s/ Lawrence D. Stone
Lawrence D. Stone
(lstone@nixonshefrin.com)
Katheleen E. Craigmile
(kcraigmile@nixonshefrin.com)
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111

**Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair**

s/ James E. Hartley
James E. Hartley
(jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302

**Attorneys for Defendant Cultural Homestay International**


s/ Susan M. Schaecher
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

**Attorneys for Defendants APF Global Exchange, NFP**

*s/ Stephen J. Macri*
Stephen J. Macri
(smacri@putneylaw.com)
Joseph B. Cartafalsa
(jcartafalsa@putneylaw.com)
Robert M. Tucker
(rtucker@putneylaw.com)
John B. Fulfree
(jfulfree@putneylaw.com)
Putney, Twombly, Hall & Hirson
LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

*s/ Eric J. Stock*
Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301

**Attorneys for Defendant
American Institute for Foreign
Study d/b/a Au Pair in America**

*s/ Bogdan Enica*
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert
Group International, Inc. d/b/a
Expert Au Pair**

s/ Peggy E. Kozal
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey
(nhuey@gordonrees.com)
Heather K. Kelly
(hkelly@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant
AuPairCare, Inc.**

s/ Martha L. Fitzgerald
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck,
LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant
EurAuPair Intercultural Child
Care Programs**

s/ Brooke A. Colaizzi
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

**Attorneys for Defendant
InterExchange, Inc.**

s/ William J. Kelly III
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

**Attorneys for Defendant
USAuPair, Inc.**

s/ Meshach Y. Rhoades
Meshach Y. Rhoades
Martin J. Estevao
1700 Broadway, Suite 2100
Denver, CO 80290-2101
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

**Attorneys for Defendant
GreatAuPair, LLC**

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on January 10, 2018, I caused to be electronically filed the foregoing DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE TAFOYA'S ORDER ON NONDISPOSITIVE MATTER [ECF NO. 763] UNDER FEDERAL RULE OF CIVIL PROCEDURE 72(A) with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Diane R. Hazel*