# Exhibit A

 Neutral
As of: January 10, 2018 3:47 AM Z

# Cejka v. Vectrus Sys. Corp.

United States District Court for the District of Colorado

July 27, 2017, Decided; July 27, 2017, Filed

Civil Action No. 15-cv-02418-MEH

**Reporter**
2017 U.S. Dist. LEXIS 117419 *

VICTOR CEJKA, JAMES WALKER, STEVEN WASCHER, JAMIE LYTLE, and PAUL CROSS, Plaintiffs, v. VECTRUS SYSTEMS CORPORATION, f/k/a Exelis Systems Corporation, Defendant.

**Prior History:** Cejka v. Vectrus Sys. Corp., 2016 U.S. Dist. LEXIS 30087 (D. Colo., Mar. 9, 2016)

## Core Terms

notice, work-product, common interest, common-interest, documents, communications, joint-defense, disclosure, materials, briefing

**Counsel:** **[*1]** For Victor Cejka, James Walker, Steven Wascher, Jamie Lytle, Paul Cross, Plaintiffs: Julian C. Wierenga, Richard Anthony Fiore, Steven Michael Hartmann, Terrence Joseph Sheahan, Freeborn & Peters-Chicago, Chicago, IL; Raymond W. Martin, Wheeler Trigg O'Donnell, LLP, Denver, CO.

For Vectrus Systems Corporation a Delaware corporation formerly known as Exelis Systems Corporation, Defendant: Emily Fontelle Keimig, LEAD ATTORNEY, Sherman & Howard, L.L.C.-Denver, Denver, CO; Ann Kotlarski, Payne & Fears, Los Angeles, CA; Daniel F. Lula, Payne & Fears LLP, Irvine, CA; Glenn H. Schlabs, Sherman & Howard, L.L.C.-Colorado Springs, Colorado Springs, CO.

**Judges:** Michael E. Hegarty, United States Magistrate Judge.

**Opinion by:** Michael E. Hegarty

## Opinion

### ORDER RE: COMMON INTEREST DOCTRINE

**Michael E. Hegarty, United States Magistrate Judge.**

At the parties' request, the Court held a hearing on June 19-20, 2017 to permit Defendant Vectrus Systems Corporation ("Vectrus") to "present evidence establishing the steps Vectrus has taken to preserve, collect, and produce documents as necessary to fulfill its discovery obligations" and to allow Plaintiffs to present contrary evidence in support of their request for an adverse inference or other **[*2]** sanction against Vectrus for a "discrete set of documents," which "existed at one point" but "no longer exist." Tr. 287: 12-20. At the close of the hearing, Vectrus raised an objection to Plaintiffs' proposed Rule 30(b)(6) topic seeking testimony regarding communications between Vectrus and Fluor Corporation, and asserted such information was privileged by the "common interest doctrine." *See* Tr. 361: 18-25, 362: 1-7; 371: 23-25, 372: 1-6. The Court ordered briefing by the parties on this single issue (Tr. 379: 1-9) and now finds that testimony sought by Plaintiffs' Rule 30(b)(6) Topic #1 concerning the July 2015 legal hold notice addressed by Vectrus to Fluor and any communications regarding the legal hold notice occurring from July 2015 to October 2015 are not discoverable pursuant to the work-product and common-interest doctrines.

In an effort to show the Court the steps it has taken to respond to discovery, Vectrus argued at the hearing that it had placed several "legal holds" on information and documents it possessed concerning potential witnesses in this case:

(By Ms. Kotlarski) Mr. [Chris] Rather, what are the basic steps that you take with respect to legal holds? What's your role [as in-house counsel]? **[*3]** Right, so it's really twofold. One piece is to send the legal hold to specific people in the IT department for the purpose of informing the IT department to preserve the identified individuals' mailboxes and

computers. The second part is to send a legal hold to the specifically identified individuals. The legal hold itself is -- contains a very explicit description of what the individuals are directed to do in order to preserve and not delete any information relative to the subject matter. And we ask that the individual then sign an acknowledgment that they're going to comply with that directive and they send back a signed statement.

Tr. 88: 10-14. Vectrus asserts that it has withheld from production to Plaintiffs all "legal hold [notices] on the basis of privilege and work product as well." Tr. 86: 11-13. At the hearing, Vectrus produced to the Court *in camera* copies of legal hold notices in "four folders" as follows: (1) those issued in February 2014 after receipt of a charge of discrimination filed by Robert Redd; (2) those issued in January 2015 after receipt of the Department of Defense IG inquiry; (3) those issued in June 2015 after receipt of the draft Complaint in this case; **[*4]** and (4) those issued after this action was filed. In addition, Vectrus produced for *in camera* review an email from Mr. Rather to a representative of the Fluor Corporation, for which Vectrus is a subcontractor, notifying Fluor of its request for a legal hold. *See* Tr. 345: 16-23.

Near the end of the hearing, the parties stated their agreement that discovery was closed, except for one deposition of a Fluor corporate representative, noticed pursuant to Fed. R. Civ. P. 30(b)(6). Vectrus had no objections to Plaintiffs' proposed Deposition Topics ## 2, 3, and 4, but objected to the last clause in Topic #1:

> Fluor's retention or destruction of information, emails or documents generated by Vectrus, relevant to the above-captioned case, *and any request to retain the same by Vectrus or anyone on behalf of Vectrus.*

Tr. 361: 10-23 (emphasis added). Vectrus contended that there were "communications" within and subsequent to its written request to Fluor for a legal hold "that may implicate or share views of the case, views of witnesses," which it argues are protected from disclosure by the common-interest doctrine. *Id.* at 371: 23-25, 372: 1-3; *see also* Declaration of Christopher S. Rather, June 26, 2017 ("Rather Decl."), ¶¶ 4, 8. Plaintiffs **[*5]** objected to the application of the common-interest doctrine. Vectrus asked to brief the issue, and the Court set a briefing schedule. *Id.* at 375: 25, 376: 1-2; 379: 4-9. The matter is now ripe for consideration.

First, Vectrus argues that the legal hold notice addressed to Fluor is protected from disclosure to Plaintiffs by the attorney work-product doctrine. Vectrus next contends that the common-interest doctrine precludes any waiver—by Vectrus' disclosure of the notice to Fluor—of the work-product doctrine. Plaintiffs counter that Vectrus cannot have it both ways—assert that it has a common interest with Fluor *and* claim that it has no control over documents in Fluor's possession, custody, or control. "Simply put, if the Court finds that the common interest doctrine applies to Vectrus and Fluor in the manner requested by Vectrus, then it necessarily should find that Vectrus's duty to preserve documents in its possession, custody, or control extended to materials maintained on Fluor-owned assets." Resp. 6. Vectrus replies that Plaintiffs' argument is not proper for the single issue addressed in this briefing: whether the common-interest doctrine applies to preclude testimony on the last clause **[*6]** of the Rule 30(b)(6) Topic #1.

"The work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining, Inc. v. Gorman—Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (internal quotation omitted). To be subject to the work-product doctrine the materials must have been "prepared in anticipation of litigation. It does not protect materials prepared in the 'ordinary course of business.'" *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993) (citation omitted). Thus, to receive work product protection, the party resisting discovery must demonstrate that the information at issue "was prepared by the attorney in anticipation of litigation or for trial." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184-85 (10th Cir. 2010); *see also Pepsico, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002) (stating that "[i]n order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the *prospect* of litigation") (emphasis added).

At the outset, the Court agrees that the only issue before it supported by the current briefing is whether Vectrus' challenge to Plaintiffs' Rule 30(b)(6) Deposition Topic #1, seeking to preclude testimony regarding communications between Vectrus and Fluor concerning Vectrus' request for a legal hold in July 2015, is proper.

First, the Court finds the legal hold notice issued by Vectrus' in-house **[*7]** counsel to a Fluor attorney on July 20, 2015 is protected from disclosure by the work-product doctrine. Although this action was not filed until

2017 U.S. Dist. LEXIS 117419, *7

October 30, 2015, it is undisputed that Vectrus received a copy of the draft complaint from Plaintiffs' counsel in June 2015, and the Court finds the legal hold notice was prepared because of the prospect of litigation. In addition, the Court finds that the notice contains Vectrus' counsel's mental impressions, which are clearly protected by the work-product doctrine. *See United States v. Nobles*, 422 U.S. 225, 238, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." ); *see also Upjohn Co. v. United States*, 449 U.S. 383, 400, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) (even when work-product materials are ordered to be produced, ". . . the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.").

Second, however, "[t]he protection provided by the work-product doctrine is not absolute, and it may be waived." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (citation omitted). That is, the work product qualified privilege "may be waived by the voluntary release of materials otherwise [*8] protected by it." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (quoting *Simmons, Inc. v. Bombardier, Inc.*, 221 F.R.D. 4, 8 (D.D.C. 2004)). Certainly, it is not disputed that Vectrus disclosed to Fluor, an entity not a party to this case, the litigation hold notice, and the entities proceeded to communicate concerning the notice. Therefore, Vectrus has waived its work-product privilege attached to the legal hold notice, unless an exception to waiver applies.

In *Frontier Refining, Inc.*, the Tenth Circuit found the "common interest" doctrine "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." 136 F.3d at 705. The court narrowly construed the common interest doctrine to apply when "different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice.... The key consideration is that the nature of the interest is identical, not similar." *Id.* (quoting *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230-31 (D.N.J. 1992)).

Later, the Tenth Circuit appeared to acknowledge the doctrine also applied in the work-product context. *See In re Qwest*, 450 F.3d at 1195 ("when the disclosure is to a party with a common interest, the 'joint defense' or 'common [*9] interest' doctrine provides an exception to waiver because disclosure advances the representation of the party *and the attorney's preparation of the case*.") (emphasis added); *see also P.J. ex rel. Jensen v. Utah*, 247 F.R.D. 664, 675 (D. Utah 2007). Notably, the *Qwest* court likened the "common-interest" doctrine to the "joint-defense privilege" and cited its previous decision in *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042-43 (10th Cir. 1998) for the proposition that establishing a joint-defense privilege requires showing "(1) the documents were made in the course of a joint-defense effort; and (2) the documents were designed to further that effort." *In re Qwest*, 450 F.3d at 1195; *see also Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 250 F.R.D. 575, 578 (D. Colo. 2007) (noting that the doctrine was more "frequently referred to by federal courts as the joint defense privilege.").

Recently, the District of Wyoming addressed the "imprecision" with which courts have defined the "common-interest" and "joint-defense" doctrines. *See Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1246 n.3 (D. Wyo. 2016). The court noted that "[w]hile some courts have used the terms interchangeably, the privileges appear distinct." *Id.* The *Hedquist* court concluded, and this Court agrees, that the "common-interest doctrine, which may apply without a joint-defense agreement or to communications and documents produced before litigation begins against co-defendants, appears broader than the joint-defense privilege, which [*10] is generally applied after defendants have entered into a formal agreement." *Id.*

Thus, the Court finds here, where Vectrus and Fluor were not parties to the current litigation, the Court must determine whether the common-interest doctrine, rather than the joint-defense privilege, applies as an exception to waiver of the work-product doctrine. The Court notes that, although its reach may be broader than a joint-defense privilege, the common-interest doctrine remains "narrowly construed" by the Tenth Circuit. *Frontier Refining, Inc.*, 136 F.3d at 705.

The briefing raises an issue as to "when" any common interest arose between Fluor and Vectrus; however, for purposes of resolving the challenge to Deposition Topic #1 and, as particularly argued by Vectrus, whether the request to Fluor for a litigation hold in July 2015 was protected, the Court will determine whether a common interest arose at that time.

2017 U.S. Dist. LEXIS 117419, *10

Again, "[t]he key consideration is that the nature of the interest be identical, not similar." *Id.* Vectrus argues that it had three common interests with Fluor: (1) provision of services under the LOGCAP program and protecting any information created under the program; (2) the barring of both Vectrus and Fluor employees following the **[*11]** November 2013 raid; and (3) the possibility of litigation against both Fluor and Vectrus in connection with the raid and Plaintiffs' terminations. Declaration of Donald Yenovkian III, June 26, 2017, ¶¶ 5-7. The Court finds Vectrus has demonstrated that only the third stated interest may be applicable here.

That is, it is undisputed that in June 2015, Vectrus received a draft complaint from Plaintiffs' counsel very similar to the pleading filed in this case, except that the filed Complaint omitted Richard Diaz, Vectrus Program Manager, as a defendant and one claim. Rather Decl. ¶ 3. In the Complaint, the Plaintiffs recognize Fluor as the prime contractor for the Department of Defense at Bagram Air Force base at the relevant time. Compl. ¶ 24. In addition, Plaintiffs' duties as security investigators were defined by Fluor (*id.* ¶ 33) and the allegations concerned, in part, a Fluor employee, James Brown, who was removed from his position, along with several Vectrus employees, following the November 2013 raid (*id.* ¶¶ 38, 70). Moreover, the Plaintiffs do not dispute that they and other Vectrus employees were required to use Fluor "assets" and were assigned Fluor email accounts while they **[*12]** served at Bagram.

Although Fluor was not actually named as a party to this case, the Court finds that these facts, known at the time Vectrus and Fluor were made aware of potential litigation by the Plaintiffs in June and July 2015, suffice to demonstrate a common interest between Vectrus and Fluor concerning their involvement in and preparation for such litigation. In other words, the Court concludes that the nature of the interests between Vectrus and Fluor starting in July 2015 regarding potential litigation by the Plaintiffs were identical, and the legal hold notice and communications between Vectrus' and Fluor's attorneys arising therefrom "advance[d] the representation of the part[ies] and the attorney[s'] preparation of the case." *See In re Qwest*, 450 F.3d at 1195.

The Court notes that its conclusion does not encompass any other documents exchanged or communications between Vectrus and Fluor, nor any time periods other than June 2015 to October 2015, at which time the Plaintiffs filed this action. Accordingly, the Court will not accept at this time or for purposes of this order the

Plaintiffs' invitation to find generally that "Vectrus' duty to preserve documents in its possession, custody, or control extended to materials maintained **[*13]** on Fluor-owned assets" or that "Vectrus anticipated litigation, and accordingly had an obligation to preserve relevant materials, beginning on November 5, 2013." *See* Resp. at 6-7.

Therefore, to the extent that Plaintiffs' Rule 30(b)(6) Topic #1 seeks testimony concerning the July 2015 legal hold notice addressed by Vectrus to Fluor and any communications regarding such legal hold notice between representatives of these entities occurring from July 2015 to October 2015, such testimony is not discoverable pursuant to the work-product and common-interest doctrines.

Dated at Denver, Colorado, this 27th day of July, 2017.

BY THE COURT:

/s/ Michael E. Hegarty

Michael E. Hegarty

United States Magistrate Judge

---

**End of Document**