# Exhibit B

⚠️ Caution
As of: January 10, 2018 3:46 AM Z

# United States v. Ohio Edison Co.

United States District Court for the Southern District of Ohio, Eastern Division

January 6, 2003, Decided ; January 6, 2003, Filed

Case No. C2-99-1181

**Reporter**
2003 U.S. Dist. LEXIS 25029 *

United States of America, et al., Plaintiffs/ Counterclaim Defendants, v. Ohio Edison Company, et al., Defendants/ Counterclaim Plaintiffs.

**Subsequent History:** Motion denied by United States v. Ohio Edison Co., 2003 U.S. Dist. LEXIS 25030 (S.D. Ohio, Jan. 6, 2003)

**Prior History:** United States v. Ohio Edison Co., 2002 U.S. Dist. LEXIS 14290 (S.D. Ohio, July 11, 2002)

**Disposition:** [*1] Plaintiff's motion to compel discovery denied.

## Core Terms

documents, legal advice, communications, attorney-client, privileged, regulations, advice, flow chart, diagrams, withheld, waived, privilege log, attorney-initiated, plaintiffs', attorneys, concludes, projects

## Case Summary

**Procedural Posture**
Plaintiff United States and other sued defendant electric utilities and associations of electric utilities companies under the Clean Air Act. The United States and others filed a motion to compel discovery, arguing that documents involving an industry trade association and certain flow charts prepared by two attorneys were not privileged.

**Overview**
The documents related to the trade association were subject to the attorney-client privilege because the communications were made in response to an ongoing relationship between the trade association and the law firm and that relationship was created at least in part to keep the trade association's members apprised of legal developments relating to the Clean Air Act and its implementing regulations. Thus, although there was not evidence that a specific request for legal advice preceded each of the memoranda at issue, the law firm clearly generated the memoranda in response to an ongoing relationship involving the rendition of legal advice at the request of the trade association's members. Moreover, the United States offered nothing but speculation that the documents may have contained advice about non-legal subjects and the unauthorized disclosure of one memo by persons who were not members of the trade association did not support a finding that the trade association waived the attorney-client privilege. The flow charts were also subject to the attorney-client privilege as there was no evidence that they were the same diagrams prepared for publication.

**Outcome**
The motion to compel discovery was denied.

## LexisNexis® Headnotes

Civil Procedure > ... > Discovery > Privileged Communications > General Overview

Evidence > Privileges > Attorney-Client Privilege > Scope

Evidence > Privileges > Attorney-Client Privilege > General Overview

***HN1***[⬇] **Discovery, Privileged Communications**

There is a difference between the amount of information required to be supplied on a privilege log and the amount of information necessary to sustain a claim of attorney-client privilege. The former is simply a device by which documents withheld on privilege grounds are identified, and where enough information is provided to

enable the party requesting the documents to make an initial determination as to whether the claim of privilege appears to be valid, or whether more information should be requested.

Civil Procedure > ... > Discovery > Privileged Communications > General Overview

Evidence > Privileges > Attorney-Client Privilege > Scope

Evidence > Privileges > Attorney-Client Privilege > General Overview

*HN2*[ ] Discovery, Privileged Communications

Despite the existence of some authority for a narrow interpretation of the attorney-client privilege as it relates to attorney-initiated communications, the greater and more persuasive weight of authority holds that generalized legal communications are privileged. The United States District Court for the Southern District of Ohio, Eastern Division, agrees with the general proposition that the attorney-client privilege extends to communications from counsel to client for the purpose of giving legal advice. Although it is essential that the communications between client and attorney concern legal assistance and advice in order to be privileged, it is not essential that the request for advice be express. Client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications may also be protected.

**Counsel:** For USA, PLAINTIFF: Mark Thomas D'Alessandro, Deborah F Sanders, United States Attorney's Office, Columbus, OH USA.

For USA, PLAINTIFF: Robert Rosenthal, New York Attorney General's Office the Capitol, Albany, NY USA.

For USA, PLAINTIFF: Ann C Hurley, US Department of Justice Environmental, James A Lofton, Jon A Mueller, Environmental Enforcement Section, Jennifer A Lukas-Jackson, U S Department of Justice, Jerome W MacLaughlin, US Department of Justice, Washington, DC USA.

For USA, PLAINTIFF: John C Matson, Office of Regional Counsel C, Chicago, IL USA.

For State of New Jersey, Allegheny County Health Department, State of New York, State of Connecticut, Intervenor PLAINTIFF: Donell Roy Grubbs, Buckley King & Bluso, Columbus, OH USA.

For State of New Jersey, Intervenor PLAINTIFF: Kevin P Auerbacher, Christopher D Ball, Dante Dipirro, Howard Geduldig, New Jersey Attorney General, James M Murphy, Division of Law, Jean P Reilly, Attorney General State of New Jersey, Jon C Martin, State of New Jersey, Division of Law, Maurice A Griffin, New Jersey Attorney General's Office, Ruth E Carter, [*2] Trenton, NJ USA.

For Allegheny County Health Department, Intervenor PLAINTIFF: Henry Miller, III, Allegheny County Health Department, Pittsburgh, PA USA.

For State of New York, State of Connecticut, Intervenor PLAINTIFF: Gary Douglas Greenwald, Shayne & Greenwald, Columbus, OH USA.

For State of New York, Intervenor PLAINTIFF: J Jared Snyder, New York Attorney General's Office the Capitol, Albany, NY USA.

For State of Connecticut, Intervenor PLAINTIFF: Vickie J Harrell, Judith A Merrill, Richard Blumenthal, Connecticut Attorney General's Office, Lori D Dibella, Assistant Connecticut Attorney General, Jose A Suarez, Hartford, CT USA.

For Ohio Edison Company, Pennsylvania Power Company, DEFENDANTS: James A King, James B Hadden, Mason Evans, IV, Robert Loring Brubaker, Ralph F Gildehaus, III, Porter Wright Morris & Arthur, Columbus, OH USA.

For Ohio Edison Company, Pennsylvania Power Company, DEFENDANTS: Douglas J Weber, Firstengergy Corporation, Akron, OH USA.

For Ohio Edison Company, Pennsylvania Power Company, DEFENDANTS: Michael L Hardy, Thompson Hine & Flory, Cleveland, OH USA.

For Ohio Edison Company, Pennsylvania Power Company, DEFENDANTS: [*3] Paul E Gutermann, Gump Strauss Hauer & Feld LLP, Perry M Rosen, Rachel L Gibson, Akin Gump Strauss Hauer & Feld LLP, Washington, DC USA.

**Judges:** Terence Kemp, United States Magistrate Judge. JUDGE SARGUS.

**Opinion by:** Terence Kemp

## Opinion

Case No. 1:14-cv-03074-CMA-KMT   Document 802-2   filed 01/10/18   USDC Colorado   pg 4 of 7

Page 3 of 6
2003 U.S. Dist. LEXIS 25029, *3

OPINION AND ORDER

On September 6, 2002, the plaintiffs filed a motion to compel discovery. In their motion, they argue that a number of documents withheld by the defendants on grounds of privilege, including documents involving the Utility Air Regulatory Group (UARG) and certain flow charts prepared by two attorneys should either be considered not to be privileged, or should be inspected by the Court *in camera* to determine if they are. Responsive and reply memoranda have been filed. For the following reasons, the Court will deny the plaintiffs' motion.

I.

The first group of documents described in plaintiffs' motion are approximately 40 documents which were authored by the law firm of Hunton & Williams, counsel to UARG, and relating to the regulations at issue in this case. The parties agree that UARG is an industry trade association and that the defendants, as well as a number of other electric utilities and associations of electric utilities, compromise **[*4]** UARG's membership. All of the documents were withheld on grounds that they contained privileged communications between attorney and client. Plaintiffs' primary argument with respect to these documents is that the privilege log does not contain enough information from which it could be determined that the documents are privileged. Alternatively, plaintiffs argue that it is likely the documents are not privileged because they contain either generalized legal advice unrelated to any specific set of facts conveyed to Hunton & Williams by any UARG members, or they contain either business advice or descriptions of Hunton & Williams' lobbying efforts. Plaintiffs also argue that their acquisition of the "Dairyland Memo" indicates that UARG (or the defendants, as members of UARG) waived the privilege because one of the members of an association which is a member of UARG disclosed information related to UARG by Hunton & Williams to an electric power cooperative which is a not a member of UARG.

The other documents which plaintiffs seek to have produced are flow charts or drafts of flow charts which apparently were used by defendants to determine whether the regulations at issue apply to contemplated **[*5]** maintenance, repair, or renovation projects. Although the documents were all prepared by either David Feltner, who is an in-house attorney with Ohio Edison, or Robert Brubaker, who is outside counsel, plaintiffs argue that any privilege with respect to the flow chart was waived because Messrs. Feltner and Brubaker submitted a version of it for publication. The Court will review each of these categories of documents separately.

II.

Plaintiffs begin by attacking the level of detail provided by the defendants in the privilege log relating to the UARG documents. However, as this Court has previously concluded, **HN1**[↑] there is a difference between the amount of information required to be supplied on a privilege log and the amount of information necessary to sustain a claim of attorney-client privilege. The former is simply a device by which documents withheld on privilege grounds are identified, and where enough information is provided to enable the party requesting the documents to make an initial determination as to whether the claim of privilege appears to be valid, or whether more information should be requested. The Court concludes that defendants complied with their obligations under **[*6]** Fed. R. Civ. P. 26(b)(5) with respect to the UARG documents. Even if they had not, however, because they have supplied additional information in response to the motion to compel, it would be improper for the Court to order production of the documents based simply upon an alleged lack of information contained in the privilege log. The Court will therefore turn to the substantive question of whether defendants have adequately met their burden of demonstrating that the documents in question are privileged.

The parties appear to agree on the basic facts concerning how UARG is constituted and the role that Hunton & Williams plays with respect to UARG. There is no dispute that Hunton & Williams is legal counsel to UARG and may be consulted by UARG members for legal advice on issues which are common to some or all of the members. There is also no dispute that Hunton & Williams authored 39 of the 40 documents at issue. Further, it is apparent that issues relating to whether UARG members are in compliance with federal environmental regulations and whether those regulations apply to specific projects being considered by the members are matters about which **[*7]** legal advice can properly be rendered. Given these undisputed matters, the only remaining issue is whether there is enough evidence from which the Court can conclude that, in these documents, Hunton & Williams actually rendered protected legal advice.

The direct evidence on this issue is somewhat sparse. Although defendants have submitted an affidavit in support of their opposing memorandum, that affidavit states in rather conclusory fashion that the UARG documents "contain or reflect confidential attorney-client communications." The Court understands the reluctance of the defendants to be more forthcoming with information about the documents lest they be accused of having waived the privilege by describing the subject matter of the communications themselves. However, defendants could have addressed some of the other components of attorney-client privilege without running the risk of waiving the privilege by doing so.

In determining whether the record is sufficient to support a finding of attorney-client privilege, the Court is mindful that the elements of the federal attorney-client privilege are those set forth in numerous decisions within this circuit, including Magistrate Judge **[\*8]** King's opinion in Guy v. United Healthcare Corp., 154 F.R.D. 172, 178 (S.D. Ohio 1993). Although eight elements of the privilege are traditionally described, for purposes of the instant motion, the most significant question is whether communications initiated by Hunton & Williams occurred in response to a request of legal advice from UARG or any of its members. Defendants' affidavit does not directly address this point, and plaintiffs argue that it is likely from the surrounding circumstances that one or more of the memoranda from Hunton & Williams were not prepared in direct response to requests for legal advice but rather were informative memoranda designed to keep UARG members abreast of developments relating to the regulations at issue and ways in which those regulations either had been or might be interpreted. Because of this possibility, plaintiffs insist that the Court should, at a minimum, review the UARG documents *in camera* to determine whether they contain unsolicited and therefore unprivileged communications.

One of the assumptions underlying the plaintiffs' position is that if a communication between attorney and client is initiated by the attorney, **[\*9]** and if it is a "generalized" rendition of legal advice as opposed to a response to a specific problem, it may not be privileged. There is some authority for the proposition that the information which the attorney-client privilege is designed to protect is the client's communication of facts to the attorney, and if the attorney, when rendering legal advice, does not disclose the facts which were related to the attorney by the client, the advice itself is not privileged. A cogent discussion of conflicting authorities on this subject can be found in Loftis v. Amica Mutual Insurance Co., 175 F.R.D. 5 (D. Conn. 1997). See also SCM Corp. v. Xerox Corp., 70 F.R.D. 508 (D. Conn. 1976). SCM Corp., for example, discusses the "broad" and "narrow" views relating to attorney-initiated communications, and concludes that although the broad view, which considers all attorney-initiated communications to a client to be privileged, is too expansive, a "modified narrow view" will be sufficient to protect advice given by attorneys that arguably reveals client confidences.

*HN2*[↑] Despite the existence of some authority for a narrow interpretation of the attorney-client privilege **[\*10]** as it relates to attorney-initiated communications, the greater and more persuasive weight of authority holds that exactly the type of generalized legal communications which, plaintiffs argue, are not covered by the attorney-client privilege, are privileged. This Court agrees with the general proposition that "the [attorney-client] privilege …. extends to communications from counsel to client for the purpose of giving legal advice." Resolution Trust Corp. v. Diamond, 773 F.Supp 597, 600 (S.D.N.Y. 1991). Although

> "it is essential that the communications between client and attorney concern legal assistance and advice in order to be privileged[,] it is not essential … that the request for advice be express. Client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications may also be protected."

Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 144 (D. Del. 1977). See also McCook Metals v. Alcoa, 192 F.R.D. 242, 254 (N.D. Ill. 2000) **[\*11]** (holding that documents which offer legal advice or strategy from counsel, as well as memoranda including factual information upon which legal advice was sought, are privileged).

It is not necessary to choose here between the broad and narrow interpretations of the attorney-client privilege as they relate to attorney-initiated renditions of legal advice. The Court concludes, from the facts surrounding the nature of Hunton & Williams' representation of UARG and the types of communications which appear to have occurred, that these communications were, at a minimum, made in response to an ongoing relationship between UARG and Hunton & Williams, and that the relationship was created at least in part to keep UARG's

2003 U.S. Dist. LEXIS 25029, *11

members apprised of legal developments relating to the Clean Air Act and implementing regulations. Thus, although there may not be evidence that a specific request for legal advice preceded each one of the memoranda at issue, Hunton & Williams clearly generated these memoranda in response to an ongoing relationship involving the rendition of legal advice at the request of UARG's members.

It is entirely possible that some of these memoranda do not contain a recitation of the **[\*12]** specific facts upon which the request for legal advice was made. However, the only rational conclusion which can be drawn from the record before the Court is that, at a minimum, these communications from Hunton & Williams would at least arguably reveal client confidences, including the types of subjects about which the UARG members sought legal advice. Thus, under either the broad interpretation of the attorney-client privilege that relates to attorney-initiated communications, or under the more restrictive view espoused by decisions such as SCM Corp. v. Xerox Corp., supra, the Court concludes that the Hunton & Williams communications are privileged.

Plaintiffs make two additional arguments concerning these documents. The first is that it is impossible to tell from the privilege logs whether the Hunton & Williams documents also contained advice about non-legal subjects, such as business advice or information about lobbying efforts. Defendants, however, have sworn that they do not, and plaintiffs have presented nothing more than speculation that Hunton & Williams may have given this type of advice in the memoranda at issue. Such speculation will support neither an **[\*13]** order compelling production of the documents nor the expenditure of the resources required to conduct an in *camera* review of the documents.

Finally, plaintiffs contend that the circumstances surrounding the creation and dissemination of the "Dairyland Memo" evidence a waiver of the attorney-client privilege. Defendants have established, however, that to the extent that the receipt of the Dairyland Memo by persons not members of UARG might, under some circumstances, be construed to be a waiver, the dissemination of that memorandum was in violation of UARG's guidelines and was not authorized by the association. The Court does not believe that such an unauthorized disclosure of a single document, which occurred in 1989, can form the basis for a holding that UARG waived the attorney-client privilege with respect to all of the documents at issue here. Consequently, the Court concludes that the attorney-client privilege was properly invoked with respect to the UARG documents.

III.

The other category of documents requested by the plaintiffs are various drafts or versions of a flow chart which was apparently designed to assist the defendants, and perhaps other utilities, in determining **[\*14]** whether contemplated projects were subject to the regulations as interpreted in the Wisconsin Electric Power Company (WEPCo) case. Although it appears undisputed that the flow charts were prepared by attorneys for the purpose of rendering legal advice to the defendants, plaintiffs assert that because the attorneys attempted to publish a law review article and submitted one version of the flow chart to a publisher, they thereby waived any privilege which might attach to other versions of the document.

According to defendants, the flow charts, or "internal logic diagrams" at issue, are of two types. The first are more general diagrams used as a template for providing legal advice, and the second are diagrams used to analyze specific projects and to provide advice to the defendants on ways in which the legal requirements of the Clean Air Act might be implicated if the projects proceeded along certain paths. It is undisputed that none of the specific diagrams withheld were ever shared with third parties, and defendants state, without contradiction, that the versions of the non-specific diagrams which were withheld are different from the diagram which was submitted to the Law Review for **[\*15]** publication.

Plaintiffs do not appear to have any evidence that the flowchart submitted for publication is the same as the diagrams which are being withheld on grounds of privilege. The Court agrees with defendants that an effort to publish information of a legal nature cannot be held to constitute a waiver of the attorney-client privilege with respect to other instances where that information is provided to a client in response to a general or specific request for legal advice. Had the attorneys in question authored an article dealing generally with the requirements of the Clean Air Act and implementing regulations, it could not successfully be argued that because they made public their views on that issue, that constituted a waiver of the attorney-client privilege with respect to specific instances of legal advice which they rendered to various clients on the same subject. Although a waiver might occur if, as part of the publication of an article, documents containing legal advice rendered to a client were submitted for review by third parties, the document which was submitted in this

case does not appear to be a document containing any legal advice, either generalized or specific, **[*16]** but rather is simply an illustration of a method by which certain compliance issues may be analyzed. Because defendants have established, without any contradictory evidence, that the documents which were prepared for and shared with their clients are different from the one prepared for publication, there simply cannot be a waiver under those circumstances.

IV.

The Court has found plaintiffs' arguments concerning either the inapplicability of the attorney-client privilege, or the waiver of that privilege, to lack merit as they relate to the specific documents which are the subject of the September 6, 2002 motion to compel. That motion (file doc. # 152) is therefore denied.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636 (b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting **[*17]** party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

01-06-03

Terence Kemp

United States Magistrate Judge

**End of Document**