# EXHIBIT A

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO COMPEL PRODUCTION OF DEFENDANT AMERICAN INSTITUTE FOR FOREIGN STUDY'S FINANCIAL RECORDS [D.E. 624]**

---

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO. LCivR 7.1(A)

Pursuant to D.C.Colo.LCivR 7.1(a), Plaintiffs have conferred with counsel for defendant American Institute for Foreign Study, which opposes the motion.

### PRELIMINARY STATEMENT

On the basis of information that only became available at the deposition of American Institute for Foreign Study ("AIFS") Chief Executive Officer ("CEO") William Gertz on September 14, 2017, Plaintiffs seek reconsideration of the July 24, 2017 order denying Plaintiffs' motion to compel the production of financial information from defendant AIFS (the "July 24 Order", D.E. 624). Specifically, the July 24 Order was premised on AIFS's representations concerning its financial record-keeping, which representations have now proven to be inaccurate.

1

The July 24 Order explained the factual predicate for its decision: "AIFS argues that as to the APIA [Au Pair in America] program individually, such financial statements [as were requested] do not exist and strict compliance with the request is therefore impossible." (July 24 Order at 16.) Contrary to its representations to the Court, however, AIFS does maintain separate financial information for each of its divisions, including APIA. Indeed, as discussed below, AIFS's CEO William Gertz testified at his deposition that he reviews statements that detail AIFS's performance by division, including for APIA. His testimony also made clear that the financial information that had been produced to Plaintiffs was inadequate and incomplete. Looking at the very documents AIFS produced to Plaintiffs, AIFS' CEO could not discern key information about the au pair program that other sponsors have produced, such as fees generated from host families, fees from au pairs, marketing costs, and the nature of the cost categories in the document. Plaintiffs sought the financial information Mr. Gertz testified about six weeks after his deposition and have been in conferrals since then. (Ex. 1.) However, to date, AIFS has failed to produce such documents.

In light of Mr. Gertz's testimony, reconsideration of the July 24 Order is appropriate: the Order's factual basis is incorrect, and the new information that has come to light demonstrates the insufficiency of AIFS's existing production of financial information.

## BACKGROUND

On March 3, 2016, Plaintiffs propounded Document Request No. 16, which sought "audited or unaudited financial statements, including documents sufficient to show your annual revenue and income derived from participating in the au pair program

2

during each year in which you have participated in the program." (Ex. 2 at 7.) Despite the clear relevance of such information to the antitrust conspiracy alleged in the Amended Complaint, for nearly one year, Defendants refused to produce documents responsive to this request. After the parties entered into a protective order, and the Court gave clear indications that the financial information is relevant – including denying Defendants' motion to dismiss (*see* D.E. 258 at 17) – some Defendants gradually produced relevant financial information. On March 13, 2017, Plaintiffs were forced to move to compel the information from the remaining non-compliant Defendants, including AIFS. (*See* D.E. 507.)

In its initial response to Request No. 16 dated May 4, 2016, AIFS insisted that the financial information was not relevant, was confidential and proprietary, and that "[e]vidence of a defendant's financial status is not discoverable." (Ex. 3 at 2.) In February 2017, through new counsel, AIFS argued that Plaintiffs could piece together its financial information from the various interrogatory responses AIFS had provided. (Ex. 4.) Nearly three weeks after Plaintiffs moved to compel, and several days before their opposition brief was due, on March 23, 2017, AIFS shifted positions again: this time it supplied Plaintiffs with a newly-created document purporting to comply with Request No. 16. Rather than simply produce the relevant financial information AIFS maintains in the ordinary course of business, AIFS created a 6-page document, replete with typos and generic categories and dollar amounts, such as "revenue" and "overhead." (Ex. 5.) The document provides no detail as to what its overarching categories include or exclude, and it includes no basis for Plaintiffs to understand how the program's fees are generated or how its expenses are allocated. AIFS justified this

3

unusual move claiming it "does not maintain isolated financial statements for the APIA [au pair] Program." (Ex. 6.) AIFS stated that it is comprised of multiple divisions, only one of which directly involves the au pair program, and it "creates and maintains a single annual financial statement for all of its programs and entities" – which somehow does not involve reviewing records that show the performance for each division separately, including the au pair program. (*Id.*)

On March 27, 2017, AIFS filed the identical, newly-created document with the Court, along with an affidavit from the creator of the document, its CFO James Mahoney, as part of its opposition to Plaintiffs' motion to compel. Mahoney in his affidavit, however, provided a slightly different explanation. He stated that AIFS maintains "consolidated financial statements [that] reflect the aggregate revenue and expenses attributable to all of those AIFS' programs. The [consolidated] financial statements do not segregate information by program and, thus, the statements do not demonstrate revenue, expenses and/or income solely attributable to APIA." (Ex. 7 at ¶ 5.)

On July 24, 2017, the Court granted Plaintiffs' motion to compel the production of financial records responsive to Request No. 16 as to all non-compliant Defendants except AIFS. Although the Court found that "there can be no credible dispute that financial statements, which show profits and losses, are relevant to Plaintiffs' antitrust claim" (July 24 Order at 11), the Court denied the motion with respect to AIFS on the basis that its 6-page document "satisfied its burden of production with respect to" Request No. 16. (*Id.* at 17.) The Court relied on Mahoney's Affidavit and AIFS's representations to the Court "that as to the APIA program individually, such financial

4

statements do not exist and strict compliance with the request is therefore impossible." (*Id.* at 16.) The Court also reasoned that Plaintiffs had been unable to show that AIFS's responses to the Request, including its newly created 6-page document, were "incomplete, inadequate, or false." (*Id.* at 17.)

Separately, beginning on June 15, 2017, Plaintiffs' counsel sought to depose AIFS's CEO, William Gertz. Mr. Gertz is also the current chairman of the Alliance for International Exchange, a trade association to which most of the Defendants belong. When Mr. Gertz was finally deposed on September 14, 2017, he provided a different account of AIFS's financial record keeping. As part of his duties as CEO, Mr. Gertz testified that he is responsible for "oversight and management" of AIFS's various divisions, including APIA. (Ex. 8 at 24:13-21.) As such, he is "generally familiar" with APIA's financial information. (*Id.* at 113:17-20.) Mr. Gertz further testified that he is able to compare each division and is aware from year to year of the relative revenues generated by each division. (*Id.* at 31:20-32:4.) He estimated that APIA program revenues typically account for ■ of overall revenues. (*Id.* at 139:4-18.) Mr. Gertz specifically testified to having reviewed segregated financial statements for each of AIFS's divisions separately:

> Q. …do you know if the costs are delineated by division or are they delineated only AIFS wide?
> **A. They would be by division.**
> Q. What kind of costs are included in those statements?
> A. Land costs, air costs, every program has land and air costs. I don't know where marketing is here [referring to AIFS's 6-page financial production], but that would be in the sales generally, administrative, so there might be more detail.
> Q. So the financial statements would include how much had been spent on marketing, would that be --

5

> A. It would be somewhere, yes, somewhere, but I'm not really looking at that, but I know it exists.

(*Id*. at 93:20-94:12 (emphasis added).) Later in the deposition Mr. Gertz re-confirmed his answer: "Q…so we've established there are other financial statements that include more detail, is that correct? A. Yes." (*Id.* at. 100:3-6.) Mr. Gertz's testimony, therefore, necessarily implies that AIFS' previous representations that its production "provides [Plaintiffs] all the information that would be covered by Plaintiffs' request" are inaccurate. (July 24 Order at 16.)

Mr. Gertz further testified that he could not discern any relevant financial information about the au pair program, such as fees generated from host families, fees from au pairs, marketing costs, and the nature of the cost categories, from the financial document produced by AIFS. (*See, e.g.*, Ex. 8 at 119:3-13 ("Q. Can you tell from this document how much of your revenue comes from host family fees versus au pair fees? A. No. Q. … Would you be able to discern it or decipher from the information provided here how much you got from host families versus au pairs? A. No.").)

After Mr. Gertz's deposition, Plaintiffs contacted AIFS' counsel to again request AIFS' financial statements, noting that it was now "clear that segregated financial statements do exist" and that the production was "inadequate and incomplete." (Ex. 1.) After a meet-and-confer on November 14, 2017, AIFS provided its response on December 8, 2017, inquiring whether it could again provide information in lieu of financial documents that its CEO had already confirmed existed.

In sum, AIFS's CEO and counsel both appear to confirm that AIFS has APIA-specific financial information. To date, however, AIFS has offered no explanation for

6

the fact that it represented to the Court that compliance with Plaintiffs' document request was "impossible" because APIA-specific "financial statements do not exist." Plaintiffs therefore request reconsideration of the July 24 Order on the basis of newly discovered information and seek an order requiring AIFS to produce any financial information, whether statements, records, or some other format, showing the performance of its au pair program, including, the records AIFS's CFO James Mahoney reviewed in order to create AIFS's 6-page financial production.

## **LEGAL STANDARD**

"[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case." *Dietz v. Bouldin*, 136 S.Ct. 1885, 1892 (2016) (citing Fed. R. Civ. P. 54(b) (district court can revise partial final judgment order absent certification of finality)). Further, Federal Rule of Civil Procedure 60(b) provides the grounds for reconsideration of a prior order, including "mistake," "misrepresentation…by an opposing party," and "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (3), (6). Rule 60 imposes a one-year deadline for reconsideration sought on the basis of "misrepresentation" or "mistake", but otherwise requires only that the motion be made within "a reasonable time." Fed. R. Civ. P. 60(c)(1). Federal Rule of Civil Procedure 54(b) provides grounds for revision of "any order or other decision…that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties… before the entry of a judgment…". In the Tenth Circuit, a motion for reconsideration should be granted where there is "new evidence previously unavailable, [or]… the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000). In

7

particular, the court should consider whether it is based on "supporting facts which were available at the time of the original motion" and whether the arguments "could have been raised in the prior briefing." *Id.* The motion is "appropriate where the court has misapprehended the facts," or "a party's position". *Id.*

## ARGUMENT

### I. AIFS' previous representations to the Court regarding the existence of separate financial records for its au pair program are inaccurate.

Reconsideration is justified because the Court relied on inaccurate and misleading factual representations from AIFS in making its ruling. The key fact underlying AIFS's opposition to Plaintiffs' motion to compel was that financial records specific to the au pair division, APIA, do not exist. In its opposition, AIFS represented that "as APIA is one of five distinct AIFS programs, AIFS consolidated financial statements do not demonstrate revenue, expenses and income that is attributable solely to APIA. (Mahoney Aff. ¶ 5). In fact, AIFS financial statements **have no specific information** about annual revenue and income derived from participating in the au pair program during each year in which AIFS have participated in the program as stated in Request No. 16." (Ex. 9 at 3-4 (emphasis in original; internal quotation marks and brackets omitted).) The Court adopted AIFS's representations regarding the non-existence of APIA-specific records as a key basis of its ruling. (July 24 Order at 16.)

At his September 14, 2017 deposition, Mr. Gertz directly contradicted the assertions of his counsel, assertions that the Court had relied on, regarding the existence of APIA-specific financial records. As detailed above, Mr. Gertz testified to reviewing cost and revenue information by division. (*See, e.g.*, Ex. 8 at 93:13-23 ("Q.

8

Do you look at the costs that are associated with each program? A. If I hear about a cost, I might look at it . . . Q. And when – do you know if the costs are delineated by division or are they delineated only AIFS wide? A. They would be by division.").) Indeed, Mr. Gertz was able to estimate the percentage of revenues associated with APIA. When asked "What percentage [of revenues] does the au pair program generally make up?" Mr. Gertz responded, ▮▮▮▮▮▮▮▮▮. It depends on the year also, every year is different, some years au pair has a bad year, other divisions have great years, it kind of fluctuates." (*Id.* at 139:10-18.) This testimony is irreconcilable with the representation that "AIFS consolidated financial statements do not demonstrate revenue, expenses and income that is attributable solely to APIA." (Ex. 9 at 3.)

AIFS further represented to the Court that "AIFS has provided Plaintiffs with information and data about the APIA Program's annual revenue and income as well as its allocated expenses for each of the years from 2009 through 2014. (Mahoney Aff. ¶ 6). Accordingly, Plaintiffs already possess all the financial information necessary to know and/or calculate the information that they purportedly seek from AIFS' financial statements." (Ex. 9 at 4 (internal quotations omitted).) Mr. Gertz, however, again testified to the contrary. When shown AIFS's 6-page financial statement, Mr. Gertz stated that he had never seen the document; instead, he testified that he was familiar with a different format which he reviews for the au pair program. (Ex. 8 at 90:24-92:22.) He stated, "[t]his format, I don't know where this came from, I don't know this document, I don't know where it came from." (*Id.* at 91:3-5.) Mr. Gertz even remarked that the 6-page statement "is short and ours seemed to be longer." (*Id.* at 92:21-22; *see also id.* at 101:7 ("This looks more like a short form").) Most importantly, he testified that the

9

longer statements he has seen for the au pair program contain more detailed breakdowns of information including about the sources of revenue, and costs. (*See id*. at 99:25-100:6 ("Q. Let's go back. This is exhibit [6], these financial statements and so we've established there are other financial statements that include more detail, is that correct? A. Yes."); *id*. at 92:8-19 ("Q. What is usually included on your financial statement? A. These kinds of things, revenues, costs. . . . Q. Are there are other points of information that are included on your financial reports? A. Yeah. Q. That are not included here? A. Yeah.").)

In short, Mr. Gertz confirmed that documents responsive to Request No. 16 exist, that they are kept in the ordinary course of business, that he regularly reviews them, and that they contain more detail than the error and typo-filled document AIFS's counsel created in haste for this litigation. The factual underpinnings of the Court's order, therefore, were incorrect, and reconsideration is justified. *See, e.g., Stine v. Nafziger*, 2009 WL 82481, at *1 (D. Colo. Jan. 13, 2009) (granting reconsideration of motion to compel where prior order was based on inaccurate factual assertions).

II. **AIFS's own CEO confirmed that its financial production is not adequate and complete.**

Reconsideration is also justified for the separate reason that new information has come to light since the July 27 Order. In denying Plaintiffs' motion to compel with respect to AIFS, the Court held that Plaintiffs had failed "to prove that the answers before the court are incomplete, inadequate, or false." (July 24 Order at 17.) Mr. Gertz's deposition provided new information that allows Plaintiffs to satisfy that burden.

10

Mr. Gertz testified that based on the 6-page document produced by AIFS, he had no way of knowing any detail about AIFS's au pair program's performance. (Ex. 8 at 119:3-15.) Indeed, AIFS's production provides no information about the sources of its revenue, such as what portion comes from host family fees, or about AIFS's costs associated with running the au pair program. The Court, of course, has already determined that there is a "compelling need" for this information. (July 27 Order at 14.)

Until Mr. Gertz's deposition, Plaintiffs could not demonstrate that these information gaps were the result of a failure of production as opposed to a simple absence of available information. Mr. Gertz, however, testified not only that the usual financial information he reviews contains more detail, but also that based on what the produced document showed, he could not understand the categories or discern what was included in them. For example, with respect to revenues, Mr. Gertz surmised that the lump sums contained in the produced document presumably contained host family fees, but that "I'm not sure what else is in there". (Ex. 8 at 101:14-15.) Further, Mr. Gertz testified that based on the document, he had no way of knowing what portion of revenues were from host family versus au pair fees. (*Id.* at 119:3-13 ("Q. Can you tell from this document how much of your revenue comes from host family fees versus au pair fees? A. No.").) Mr. Gertz had substantially the same problem with the figures for "land costs" (*id.* at 103:14-17 ("I don't know exactly what's in that category.")), marketing (*id.* at 117:22 -118:2 ("Q. . . . Please refer to this document and tell me what you spent on marketing in 2009? A. I don't know.")), and the "Selling, General & Administrative" lump sum category (*id.* at 104:23-105:6 ("I don't know exactly what's in there.")). But Mr. Gertz testified that additional information is available. For example, with regards to

11

costs for recruiting au pairs, Mr. Gertz testified that AIFS does "know how much we pay agents." (*Id.* at 96:11-18.) More generally, when asked whether he believed the produced financial document gives "a sufficient amount of detail to describe the costs and revenues associated with running the au pair program," Mr. Gertz stated, "Yes, but there is more detail. This looks very short to me." (*Id.* at 115:5-10.)

In short, based on new information, Plaintiffs can now demonstrate both that the production is "inadequate" and that it is "incomplete." (July 27 Order at 17.) The production is inadequate because even AIFS's own CEO cannot understand it. It is incomplete because there is "more detail" in AIFS's records specific to the costs and revenues of the Au Pair Division. Given AIFS's prior representations, Plaintiffs could not have obtained this information any earlier: Mr. Gertz's deposition occurred on September 14, 2017, over one year after Plaintiffs first requested AIFS's financial information, six months after AIFS first produced its 6-page financial document, nearly three months after Plaintiffs first attempted to depose Mr. Gertz, and nearly two months after the Court issued the July 24 Order. Reconsideration, therefore, is warranted. *See Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000).

## **CONCLUSION**

For the reasons given above, Plaintiffs' motion for reconsideration should be granted. In particular, AIFS should be ordered to produce any financial records, whether as statements, records, or some other format, showing the performance of its au pair program, including records for its au pair program alone, and consolidated records, to the extent they contain any detail about the au pair program.

12

Dated: January 5, 2018

/s/ Dawn L. Smalls
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Tel: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado 80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org
*Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2018, I electronically served the foregoing motion on all counsel of record.

/s/ Dawn L. Smalls
Dawn L. Smalls

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO COMPEL PRODUCTION OF DEFENDANT AMERICAN INSTITUTE FOR FOREIGN STUDY'S FINANCIAL RECORDS [D.E. 786]**

The Court has reviewed Plaintiffs' Motion for Reconsideration of Order Denying Motion to Compel Production of Defendant American Institute for Foreign Study's Financial Records [D.E. 786] and is otherwise fully advised on the matter. It is hereby ORDERED that the Motion is **GRANTED**. Defendant American Institute for Foreign Study shall produce any financial records, whether as statements, records, or some other format, showing the performance of its au pair program, including records for its au pair program alone, and consolidated records, to the extent they contain any detail about the au pair program.

1

DATED this _____day of _____ 2017.

                                         BY THE COURT

                                         _____