**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

**MOTION TO EXTEND THE EXPERT DISCOVERY DEADLINE**

---

## CERTIFICATE OF CONFERAL PURSUANT TO D.C. COLO.LCiv.R. 7.1(A)

As described in more detail below, the Plaintiffs and Defendants (hereafter the "Parties") conferred pursuant to D.C. Colo.L.Civ.R. 7.1(a).  Defendants oppose this motion.[1]

## MOTION TO EXTEND THE EXPERT DISCOVERY DEADLINE

Plaintiffs seek a limited extension of the expert discovery deadline to depose two of Defendants' four expert witnesses.  Plaintiffs' request, which affects no other scheduled dates (including the dates for dispositive motions), is amply justified because Defendants and a third party — a trade group called the Alliance for International Exchange that engages in public advocacy and lobbying on behalf of the Defendants — waited until after the discovery cutoff to produce information relevant to the expert depositions.

From January 4, 2018 — the day before the January 5, 2018 cutoff — until January 17, 2018, Defendants and their proxy dumped roughly 82,000 pages of new documents on Plaintiffs.  Moreover, important Alliance witnesses will not be deposed until the end of January.  Plaintiffs had diligently sought these documents and depositions for months prior to the close of discovery.  They should not be prevented from deposing Defendants' experts with the benefit of this information now that it is finally rolling in.

Indeed, the relief sought in this motion is so obviously warranted that Defendants' refusal to agree raises legitimate questions as to whether they intended all along to

---

[1]   Defendants A.P.E.X. American Professional Exchange, LLC and 20/20 Care Exchange, Inc. are not parties to this motion.  They made separate expert disclosures and produced their own expert, whom Plaintiffs do not seek leave to depose.

seek strategic advantage from their own delays.  Regardless, there can be no credible dispute that Defendants' refusal to make their experts available after the discovery cutoff "absent a court order" while at the same time agreeing to extend the fact cutoff date to accommodate the Alliance's late discovery has caused, yet again, unnecessary motion practice on what should be an uncontroversial issue.

## BACKGROUND

### A.    The Schedule

The parties previously agreed to extend the discovery schedule for virtually the same reasons that Plaintiffs now seek limited relief with respect to the timing of the depositions of the two defense experts.  The Parties further anticipated the limited relief sought here — an adjustment of the expert discovery schedule depending upon the ultimate completion of fact discovery.

First, in July 2017, the Court granted Plaintiffs' motion to compel Defendants to produce financial information.  ECF No. 624.  In light of the timing of that production, the parties stipulated to adjust the discovery schedule.  *See* ECF Nos. 620, 687, 742, 745. Fact discovery was set to end on November 3, 2017.  ECF No. 687.  And expert discovery was set to end *two months later*, on January 5, 2018.  ECF No. 745.

Later, on November 3, 2017, the Parties filed a "Stipulated Motion to Amend Scheduling Order" in which they again agreed that an extension was warranted because, *inter alia*, the Alliance had "not yet completed its document production or made available its deposition witnesses, pursuant to a Rule 45 subpoena served in May [2017]."  ECF No. 747 at 2.  In that November 3, 2017 motion, the Parties informed the Court that they were "not currently in a position to identify a date certain by which fact discovery could reasonably be completed" because the Court had not yet resolved a

privilege dispute (ECF No. 710) with respect to the Alliance's documents. *See* ECF No. 747 at 3. The Parties further foretold that they might have to seek further relief with respect to the schedule "depending on the timing of the close of fact discovery." *Id.* Given that they could not predict when fact discovery might end, the Parties agreed to "meet and confer . . . within one week from the date of the ruling" on the privilege dispute and to then "propose a deadline for the close of fact discovery." *Id.* "[S]ubject to" any additional relevant developments, the Parties further agreed to leave the close of expert discovery at January 5, 2018. *Id.* at 4.

On December 4, 2018, Judge Tafoya resolved the privilege dispute — in an opinion that is now being reviewed by Judge Arguello. Rather than permitting the parties to confer on the discovery cutoff, the Court set fact and expert discovery to end on the same day — January 5, 2018. ECF No. 763.

As everyone has known all along, such a schedule would only work if both sides cooperated to ensure that fact discovery relevant to the experts was completed before the experts were deposed. But that is not what has happened here.

## B.    Discovery from the Alliance

Plaintiffs first served a Rule 45 subpoena on Defendants' trade association, the Alliance for International Exchange, in January 2017, followed by an amended subpoena in May. *See* ECF Nos. 709-2, 709-3. Beginning in June 2017, Plaintiffs' counsel and counsel for the Alliance began discussions regarding the Alliance's compliance with the subpoena. *See* ECF Nos. 709-4, 709-5, 709-6, 709-7. Finally, on August 23, 2017, the Alliance made its first document production (77 pages) — a production they appeared to have reviewed for privilege. *See* ECF No. 709-8.

The following day, Plaintiffs deposed an executive of Defendant EurAuPair. ECF No. 709-18.  A dispute arose during the deposition when Plaintiffs' counsel offered an Alliance document as an exhibit.  ECF No. 709-19 (Hayes Tr. 189:6-190:11). Defendants objected that they had not been provided copies of the document in advance, but permitted questions nonetheless, without waiving any objections.  *Id.*

Three weeks of silence followed, during which the Alliance missed its deadline to produce the remaining documents as agreed.  *See* ECF No. 709-20.  Then, at the last possible moment—after the close of business on the eve of the deposition of William Gertz, the Alliance's Chairman (and Defendant AIFS's CEO), Defendants asserted privilege over the entire Alliance production and demanded its immediate return or destruction.  ECF No. 709-22.  As a result, Plaintiffs were unable to question Mr. Gertz about the Alliance's own documents, and his deposition remains open to this day.  ECF No. 709-23 (Gertz Tr. 209:15-21).

Defendants' assertion of privilege over documents created and authored by Alliance employees (outside the presence of any counsel) led to the aforementioned discovery dispute.  *See* ECF No. 710.  Following briefing and hearings, that dispute is now before Judge Arguello.  *See* ECF Nos. 710, 717, 721, 728, 738, 757.  Ostensibly as a result of this extensive motion practice, the Alliance's compliance with Plaintiffs' year-old document demand was repeatedly delayed.  Although Defendants now appear to disavow the Alliance's conduct, they spent several months preceding the deadline claiming a "common interest" with the Alliance in this litigation, claiming privilege over the Alliance's documents, and conducting extensive motion practice to claw back the Alliance's productions.  *See* ECF No. 709-22.

On January 5, 2018, the Parties reached an agreement to extend fact discovery

because "[c]ertain depositions have not been concluded due to factors outside of the

Parties' control and cannot be concluded before the Court's existing January 5, 2018

fact discovery cutoff."  ECF No. 788 at 1.  The Parties agreed to allow for depositions of

Alliance employees after the Alliance produced its long-awaited documents.  *Id.* at 3.

For its part, the Alliance produced 32,814 pages of documents on January 10, 2018,

and 1,298 pages of documents on January 17, 2018.  Ex. 1 & 2.[2]  Depositions of

Alliance employees are currently scheduled for January 25, 26 and 29, 2018.  Ex. 3.

**C.     The January 4, 2018 Production**

Following Mr. Gertz's September 14, 2017 deposition, the parties engaged in

protracted conferrals over Plaintiffs' belief that Mr. Gertz's testimony revealed that AIFS

had not produced documents responsive to Plaintiffs discovery demands.  *See* ECF No.

787-1.  Some of those discussions resulted in Plaintiffs' recent motion to compel AIFS

to produce financial information (ECF No. 786) — a motion that is not yet fully briefed

but, if granted, will yield yet another reason to grant the instant motion.  Of greater

import, however, was AIFS's failure to produce documents regarding its overseas

recruiting operations.  ECF No. 787-1.

On November 2, 2017, Plaintiffs alerted AIFS to the deficiency.  *Id.*  Initially

AIFS's counsel claimed that such documents had been produced.  Ex. 4.  But Plaintiffs

had never received the production.  *Id.*  Finally, on January 4, 2018, two months after

Plaintiffs first raised the issue and one day before the close of discovery, AIFS produced

---

[2]      "Ex" refers to the exhibits attached to the Declaration of Juan P. Valdivieso filed
herewith in support of the motion.

almost 50,000 pages of new material.  Ex. 5.

**D.    Expert Discovery**

On the expert side, the Parties exchanged merits reports in October 2017.  Ex. 6.

On November 28, 2017, Defendants asked to take the deposition of Plaintiffs' expert —

Dr. William O. Kerr — two weeks later, on either December 14, 2017 or December 15,

2017.  Ex. 7.  Plaintiffs offered to make Dr. Kerr available on December 21, 2017,

January 17, 2018 or January 18, 2018 — indeed, Plaintiffs were already anticipating

that the expert depositions for both sides would likely need to take place *after* the

January 5 cutoff.  *Id.*  Defendants elected to depose Dr. Kerr on December 21.[3]

On December 29, 2017, having still not received the AIFS documents, the

Alliance documents, or dates for the Alliance depositions, Plaintiffs told Defendants'

counsel that they wanted to depose Defendants' experts after the January 5, 2018

discovery cutoff, "on a date convenient to the experts and Defendants."  Ex. 9.  Much to

Plaintiffs' surprise, on December 30, 2017, Defendants declined without explaining why:

---

[3]    At that Deposition, Dr. Kerr explained how the type of financial information AIFS has withheld is relevant to the antitrust issues in this case:

> A.    I would have liked to review that information, and in fact, I think it was sought.  But in fact, we got very spotty information from the defendants about their expenses in a way that allowed me -- the material we got even, the material that we got was not even in most cases usable for that purpose.  Do we need it?  No.  Would it be useful to have it?  Yes, it would.  It would bear on some of the questions that might arise in this case because it would allow us to say something about the profitability of the sponsors with respect to their provision of their services and the extent to which they are able to make money and increase their -- make money relating to their services in this market.  Their profitability has some bearing on their ability to exercise market power.

Ex. 8 (Kerr Tr. 286: 6-25).

Dawn —
We are not interested in proceeding as you suggest.
Thank you.
Joan Lukey

Ex. 9.

Sensing that Defendants were playing games and seeking to capitalize on the timing of the Alliance depositions, and with the discovery cutoff looming, Plaintiffs on January 3, 2018 noticed the expert depositions for January 5, 2018 — after all, incomplete expert depositions were better than no expert depositions.  Ex. 10.  As Plaintiffs explained, the notices were placeholders and not a demand for depositions to occur on the noticed date, though they were prepared to proceed on January 5 if necessary.  Ex. 11.

On January 4, 2018, Plaintiffs went back to Defendants a second time and proposed a "broader agreement" regarding expert depositions, FLSA opt-in discovery, summary judgment, and Alliance-related discovery, so as to avoid "serial court proceedings."  Ex. 12.  Defendants again demurred, agreeing only to discuss Alliance-related discovery.  Ex. 13.  Defendants further claimed (not incorrectly, but quite unfairly given the circumstances) that Plaintiffs had not complied with Local Rule 30.1's requirement that depositions be scheduled fourteen days in advance.[4]  Ex. 11. Defendants also stated for the first time that they would not make their experts available for depositions "absent a court order".  *Id*.

---

[4]     Plaintiffs have routinely waived the 14-day requirement to allow Defendants to schedule FLSA opt-in depositions on short notice.  *E.g.*, Swartz Deposition (Ex. 14) (1-day notice period); Pavot Deposition (*Id.*) (2 day-notice period); Krushcwitz Deposition (*Id.*) (4-day notice period).  In each case Plaintiffs conferred in good faith with Defendants and overlooked their technical violation of the Rule.

Plaintiffs responded to Defendants' concerns later that day by email, pointing out the inconsistent nature of a schedule where the experts were offering their opinions *before* certain of the relevant fact discovery had even been completed (i.e., the Alliance document production and depositions). Ex. 11. Plaintiffs' counsel also asked what prejudice there would be to holding expert depositions after the deadline. *Id.* Plaintiffs further pointed out that Defendants' basis for refusing to extend *expert depositions* was unclear given that they had agreed to extend the January 5th deadline for *fact depositions*. *Id.*

On January 8, 2018, Defendants acknowledged that although the expert depositions would benefit from having "all the facts" available (i.e., the Alliance-related discovery would be completed by the time the depositions were held), that it would be "unfair" to Defendants because Plaintiffs' expert had already been deposed. Ex. 11. Defendants failed to raise this concern before deposing Dr. Kerr and failed to consider any other relief that might address the issue.

Left with no other alternative other than foregoing expert depositions altogether, Plaintiffs have been forced to bring this motion.

## **ARGUMENT**

The decision to modify a scheduling order "is committed to the sound discretion of the trial court." *Smith v. United States,* 834 F.2d 166, 169 (10th Cir. 1987). Such deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). To demonstrate good cause pursuant to Rule 16, the moving party must "show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins,* 315 Fed. Appx. 57, 61 (10th Cir. 1009) (citation omitted). "Properly construed, 'good cause' means that

scheduling deadlines cannot be met despite a party's diligent efforts." *Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) (internal quotation and citation omitted).

Plaintiffs have a compelling need to depose two of Defendants' experts following the close of fact discovery.  To begin, Plaintiffs cannot depose the defense experts until after they have digested the discovery from the Alliance — including both the voluminous document productions from January 10 and 17 as well as the depositions scheduled for January 25, 26 and 29.  Defendants' experts dispute the existence of anticompetitive conduct and collusion among the sponsors.  Indeed, they collectively spend 89 pages of their merits reports addressing the purported lack of evidence of collusion in this case.  Putting aside the obvious defects with Defendants' expert opinions on the merits, Plaintiffs should have the opportunity to examine Defendants' experts' opinions with the benefit of the Alliance's evidence.  After all, as in many antitrust cases where trade organizations facilitate illegal conduct, the Alliance may very well be a mechanism for the Defendants' collusion.

Moreover, Plaintiffs have been diligently attempting, for many months, to resolve issues related to the Alliance.  Defendants for their part have in the past stipulated to amend the schedule because of these exact issues.  *See* ECF Nos. 687, 742, 747.  And they have agreed to extend the *fact* discovery deadline to accommodate the Alliance's productions and depositions in January 2018.  Their refusal in virtually the same breath to offer a comparable extension of the *expert* discovery schedule makes no sense.

Defendants' delays of their own making further justify Plaintiffs' depositions of Defendants' experts after the close of discovery.  AIFS dumped nearly 50,000 pages of

documents on Plaintiffs' counsel the day before the discovery cutoff.  Ex. 5.  Although Plaintiffs' counsel has not yet had the opportunity to fully review those documents, they are responsive to Plaintiffs' request for information on AIFS's overseas operations and, as such, are plainly relevant to the expert opinions in this case.  For instance, the Parties' experts have offered competing opinions about an "excess supply" of potential au pairs overseas; AIFS's documents about overseas recruiting practices will shed light on this issue.  Likewise, the documents will address AIFS's cost structure, including its costs for recruiting au pairs abroad, and how that relates to its incentives to depress au pair wages.  Plaintiffs should not have to confront Defendants' experts without the benefit of these documents.

And again, the AIFS documents were produced late, through no fault of Plaintiffs and despite Plaintiffs' diligent efforts.  Indeed, Plaintiffs first told AIFS on November 2, 2017, that they had not received records about AIFS's overseas operations.  Ex. 4.  For reasons known only to AIFS, it failed to produce the records for another two months.  This eleventh-hour production alone would justify depositions of the defense experts after the close of discovery.  When coupled with the timing of the Alliance depositions, the limited relief Plaintiffs seek is amply justified.

On the other side of the ledger, there can be no harm to Defendants in having their experts sit for depositions on the basis of a fuller factual record.  Indeed, the newly-produced evidence may very well buttress their opinions.  A fuller record will also benefit the Court, which will soon be considering summary judgment motions and deciding whether there are issues of fact warranting a trial.  It simply makes no sense to submit expert opinions to the Court that, by Defendants' own admission, are not based on all

the available facts.  Yet Defendants propose to do exactly that, while simultaneously claiming that they will be prejudiced by a more complete record.[5]

At bottom, Defendants' only real complaint is that it is "unfair" for their experts to sit for depositions now because they did not have the "benefit" of the facts that recently came out when they deposed Dr. Kerr in December.  Ex. 11.  Defendants are mistaken for many reasons.  First, they *did* have the benefit of the information when they deposed Dr. Kerr, as the Alliance is their trade group and AIFS is a defendant; indeed, the argument that they could not benefit from their own documents impeaches itself. Second, they could have asked to depose Dr. Kerr after the Alliance and AIFS made their productions; instead, they rushed to depose Dr. Kerr in the apparent hope that they could then force Plaintiffs to depose the Defendants' experts with incomplete information.  And third, they can of course *still seek* additional deposition time with Dr. Kerr to address their own newly-produced documents.

In short, Defendants' timeliness concerns cannot be squared with their conduct: they refuse to make their expert witnesses available, yet they agree that there is no prejudice in deposing the Alliance's witnesses after the deadline.  Timeliness cuts both ways; Defendants cannot invoke it as "prejudice" only when it suits them.

---

[5]     It is also worth noting that trial is not imminent (as no date has been set), and that the issues that have caused the delays, such as AIFS's document dump or withholding of records relevant to the experts' opinions, were not foreseeable.  *See Lehman Brothers Holdings Inc. v. Universal American Mortgage Company, LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014) (citing *Smith*, 834 F.2d at 169).

## CONCLUSION

For the foregoing reasons, good cause exists for the Court to modify the expert discovery deadlines.  Accordingly, Plaintiffs respectfully request that the Court provide thirty (30) additional days for the Parties to conduct expert depositions.

Dated: January 26, 2018

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

   /s/ Peter M. Skinner
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301

Tel: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2018, I electronically served the foregoing motion on all counsel of record.

*/s/ Peter M. Skinner*
Peter M. Skinner
