IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

_____

**CERTAIN DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND THE EXPERT DISCOVERY DEADLINE [ECF NO. 816]**

## INTRODUCTION

Plaintiffs' Motion to Extend the Expert Discovery Deadline ("Motion to Extend" or "Motion") is an attempt to correct Plaintiffs' failure to schedule expert depositions in a timely manner that would allow them to comply with the Court-ordered expert discovery deadline. All Defendants, other than APEX and 20/20 who may choose to respond separately, oppose the Motion. Although the Motion suggests various reasons why Plaintiffs now contend that a later deadline is necessary, Plaintiffs offer no explanation as to why they failed to bring those arguments to the Court before the deadline passed, before Defendants had deposed Plaintiffs' experts in compliance with the Court's schedule, and, perhaps most significantly, when Defendants' drafting of their summary judgment papers was in its final stages. Far from raising this issue in a timely manner, Plaintiffs have come to the Court seeking relief almost three weeks *after* the deadline has passed, and at a point when Defendants cannot meaningfully adjust their summary judgment papers – which discuss each parties' expert testimony in some detail – while Plaintiffs presumably can adjust their own, claiming only now that the matter is urgent

and requires forthwith treatment.

Regardless of the reason for their untimeliness – which their motion never candidly provides – Plaintiffs should not be permitted after the deadline has already passed and at a point where Defendants will be prejudiced by an extension, to obtain extra time that the Defendants did not have for expert depositions, and to obtain discovery that Defendants will not be able to address in the summary judgment motion and memorandum.  Particularly so because Plaintiffs' problems are entirely of their own making.  They failed to download documents that AIFS produced to them in April, 2017, and did not realize their mistake until December.  Yet they waited another two months to bring this motion.  Plaintiffs thus have no legitimate excuse for their actions that could establish the required "good cause."  The Court should deny Plaintiffs' Motion to Extend.

## STATEMENT OF FACTS

Although Plaintiffs attempt to frame their request as a response to delay by Defendants, the facts are very much to the contrary.

*The Alliance Production and Depositions*

Plaintiffs discussed the Alliance in the First Amended Complaint (ECF No. 101) filed on March 13, 2015, but waited more than two years to serve the operative subpoena on May 25, 2017.[1]  Motion 3.  The Alliance made its first production – 77 pages of handwritten notes reflecting conversations among representatives of

---

[1]  Plaintiffs have stated previously that this subpoena corrected a "technical defect" from one served a few months earlier.  *See* Pls.' Mot. to Amend Scheduling Order 3 (ECF 620-1).

Defendants – on August 23, 2017. *Id.*

Before making the production, the Alliance's then-counsel never contacted the Defendants' representatives whose comments were reflected in the Alliance notes. *See* N. Jordan Decl. ¶ 14 (ECF No. 715-1); G. Rannefors Decl. ¶ 6 (ECF No. 715-2); W. Gertz Decl. ¶ 14 (ECF No. 715-3). In particular, they were not asked about the context of their comments, including whether they were based on attorney advice, nor were they asked if they intended to waive privilege. N. Jordan Decl. ¶ 14 (ECF No. 715-1); G. Rannefors Decl. ¶ 6 (ECF No. 715-2); W. Gertz Decl. ¶ 14 (ECF No. 715-3). If asked, Defendants would have stated that they intended for these discussions to remain confidential and did not intend to waive the confidentiality and privileges protecting their conversations. *See* N. Jordan Decl. ¶ 14 (ECF No. 715-1); G. Rannefors Decl. ¶ 6 (ECF No. 715-2); W. Gertz Decl. ¶ 14 (ECF No. 715-3).

During a deposition on August 24, 2017, Plaintiffs' counsel presented the witness the collection of handwritten notes without Bates numbers. S. Hayes Dep. 191:22-25 (ECF 715-8). Plaintiffs' counsel represented that the document was produced by the Alliance. *Id.* at 187:25-188:3. Having never received copies of the documents themselves, Defendants had not previously even been aware that the Alliance had produced documents. *Id.* at 188:5-9, 189:14-17. Counsel for Defendants requested that the documents not be used during the depositions, but Plaintiffs' counsel refused to honor the request. *Id.* at 188:11-16. During a break in the deposition, Plaintiffs' counsel provided a copy of the production to Defendants, *id.* at 189:6-12, and counsel for Defendants reserved all rights, *id.* at 189:14-18, 190:2-10, 197:9-16.

3

Once Defendants had the opportunity to review the dense 77 pages of notes (and determine the context of the dozens of conversations they reflected), Defendants asserted a privilege over a limited number of partial pages.  *See* Defs.' Opp'n to Pls.' Mot. to Compel 4-5 (ECF No. 715).  Plaintiffs chose to challenge that assertion, and filed a motion to compel, which Magistrate Judge Tafoya denied on December 4, 2017.  ECF No. 763.  Plaintiffs have opted to seek further review, and have filed an Objection with the District Court that challenges the Magistrate Judge's decision.  ECF No. 771.

The complex privilege issues, which were prolonged as a result of Plaintiffs' decision to bring their unsuccessful motion to compel, no doubt impacted the timing of the Alliance's production.  In part because of the timing of that production, when Plaintiffs approached Defendants and asked that the three Alliance depositions occur after the January 5 cutoff for discovery, Defendants assented to that requested relief.  The depositions concluded on January 29, 2018.

*The AIFS Documents*

Plaintiffs' description of the AIFS Documents inappropriately fails to disclose that the documents "produced" on January 4, 2018 were actually a re-production.  *See* Ex. A*,* Decl. of J. Fulfree ¶¶ 3–9, 20–21.  In fact, AIFS produced the documents to Plaintiffs in April 2017, but for some inexplicable reason, Plaintiffs failed to download a large batch of documents from that production.  *See id.* ¶¶ 3, 7–9, 13–21.  In the more than eight months that followed, Plaintiffs apparently never discovered their error – even though the failure to download these documents left a "gap" of 50,000 pages in the set

of AIFS documents with which Plaintiffs were working.  *See id.* ¶¶ 12–16.

When Plaintiffs finally raised an issue with AIFS, they still had not identified the "gap."  *See id.*  Instead, Plaintiffs claimed that certain categories of documents had not been produced.  *Id.* ¶ 19.  AIFS was (understandably) confused regarding the claimed deficiency, given that many of the documents claimed to be missing had been produced.  *See id.* ¶¶ 17–21.  When the parties finally realized what had happened, AIFS made the "gap" documents available a second time on January 4, 2018.  *Id.* ¶ 22.  This was done as an accommodation to correct Plaintiffs' error; the documents were not "dumped" on Plaintiffs late in the case, as they now claim.  Motion 1.

<u>*Expert Reports and Depositions*</u>

The Expert Discovery Deadline was set in response to the parties' Joint Motion to Extend Expert Discovery Deadline (ECF No. 742), filed on October 24, 2017.  The parties filed that joint motion because the operative schedule, which had been set based on a prior joint request (ECF No. 687), inadvertently failed to address the expert discovery deadline.  The October submission sought to correct that oversight, and was promptly granted by the Court.  ECF No. 745.  Although Plaintiffs suggest that a different "Stipulated Motion to Amend Scheduling Order," filed a week later, left open a possible extension of the expert discovery deadline (Motion 2-3), at no time since the parties filed the October motion (until now) has any party requested such an extension from the Court.

As the time remaining for expert discovery advanced, Defendants diligently

ensured that they had the opportunity to depose Plaintiffs' experts before the deadline. Counsel for Cultural Care contacted Plaintiffs' counsel on November 28, 2017, asking for Dr. Kerr's availability in mid-December. *See* Ex. B. After a short back-and-forth, Plaintiffs responded on December 1 and offered one date in December and two in January, after the relevant cutoff. *Id.* Plaintiffs said nothing about an extension in this communication. Defendants promptly accepted the December date and issued a deposition notice. *Id.* Defendants deposed Dr. Kerr on December 21, 2017.

Throughout this exchange, and even thereafter, Plaintiffs never asked for available dates to depose Defendants' experts, nor did they make any other effort to arrange expert depositions. The first suggestion that Plaintiffs even wanted to take additional depositions of Defendants' experts[2] came on Friday, December 29, 2017 – the last business day before the New Year's holiday – at 6:39 PM. ECF No. 817-9 at 1. The parties had been engaged in correspondence regarding depositions that both parties sought of certain Department of State ("DOS") witnesses. Because the administrative process for seeking DOS depositions is complicated, the parties had been discussing a possible joint motion that would allow those DOS depositions, and the Alliance depositions discussed above, to occur after the January 5 deadline. *Id.* Late that day, counsel for Plaintiffs made the out-of-the-blue suggestion that Plaintiffs would agree to an extension for the DOS depositions if Defendants would agree to an extension for them to depose Defendants' experts. *Id.* Defendants declined.

---

[2] Plaintiffs have deposed all of Defendants' experts previously, following issuance of reports in opposition to class certification.

Plaintiffs next raised the issue of expert depositions at 6:35 p.m. on January 3, 2018, the eve of a major snowstorm in the northeast, when they emailed Defendants with notices of deposition for Defendants' three experts to commence about 39 hours later. *See* ECF No. 817-10 at 1. In choosing these dates, Plaintiffs ignored D.C.COLO.LCivR 30.1, which requires at least 14 days' notice before scheduling a deposition, unless otherwise ordered by the Court,[3] as well as the logistical impossibility of bringing in three witnesses from the mid-west and west coast in the middle of a blizzard. Defendants promptly informed Plaintiffs that the depositions would not proceed on one-day notice. *See* ECF No. 817-11 at 4.

On January 8, in response to a further communication from Plaintiffs' counsel, Defendants made clear that it would not be fair or appropriate for Plaintiffs to have additional time and the benefit of full discovery to conduct expert depositions after Defendants abided by the deadline and proceeded with the depositions before all discovery was completed. *See id.* at 1–2. Plaintiffs did not respond to this communication and said nothing further to Defendants regarding expert depositions until almost three weeks later, when they filed their Motion.

---

[3] Plaintiffs' suggestion that they have routinely waived the 14-day requirement (Motion 7, n. 4) appears to have been written by someone uninformed of the facts. For example, counsel for Cultural Care requested a date to depose Ms. Swartz on December 19, 2017. Plaintiffs' counsel responded on January 4, 2018 and *offered* January 13 for the deposition. Cultural Care accepted the offer the next day, and sent the notice – which at this point was merely a formality, since obviously the Plaintiffs knew about the date *they had proposed* – the following week. *See* Ex. C. The other two depositions referenced, Ms. Pavot and Ms. Krushcwitz, were likewise scheduled based on availability provided by the Plaintiffs, after which notices were sent as a formality. *See* Exhs. D, E.

**ARGUMENT**

**I.     LEGAL STANDARD**

A Scheduling Order that sets deadlines for litigation "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Catholic Health Initiatives Colo. v. Gross*, No. 06-cv-01366-REB-BNB, 2007 WL 3232455, at *1 (D. Colo. Oct. 29, 2007).  "[S]cheduling orders are contemplated and designed to offer a degree of certainty in pretrial proceedings, ensuring at some point that the claims and evidence are fixed so that the parties may proceed to trial." *Dedmon v. Cont'l Airlines, Inc.*, No. 13-cv-0005-WJM-NYW, 2015 WL 4639737, at *4 (D. Colo. Aug. 5, 2015) (citing *Home Design Servs. v. Trumble*, No. 09-cv-00964-WYD-CBS, 2010 WL 1435382, at *6 (D. Colo. Apr. 9, 2010)).

Federal Rule of Civil Procedure 16 dictates that a scheduling order may be modified only for good cause and by leave of the Court.  *Home Design Servs.*, 2010 WL 1435382, at *16-18 (denying motion to extend discovery and dispositive motions deadlines). The decision to modify a scheduling order "to extend or reopen discovery is committed to the sound discretion of the Court."  *Benton v. Avedon Eng'g, Inc.*, No. 10-cv-01899-RBJ-KLM, 2013 WL 1751886, at *1 (D. Colo. Apr. 23, 2013) (internal quotation omitted).  When exercising their discretion, courts in this Circuit consider: (1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for additional discovery in light of the time

allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence. *Id.*

Balancing these factors here leads to the clear conclusion that Plaintiffs' after-the-fact request to extend the expert discovery deadline should be denied, especially given the unfair advantage to the party that ignored the deadline of proceeding after full discovery, and the unfair prejudice to the party who complied with the deadline of proceeding without full discovery. Disregard of discovery deadlines should not be rewarded in that fashion.

## II. PLAINTIFFS CANNOT DEMONSTRATE GOOD CAUSE TO EXCUSE THEIR FAILURE TO COMPLY WITH THE SCHEDULING ORDER AND EXTEND THE DEADLINE FOR EXPERT DISCOVERY.

Plaintiffs missed the deadline to depose Defendants' experts. If their intention had been to seek to extend the deadline, as they now suggest, they would have contacted Defendants to schedule expert depositions more than forty-eight hours before the deadline. Plaintiffs' failure now to own up to their error is without consequence, however, because regardless of the real reason, Plaintiffs offer no compelling excuse for their actions and no justification for an extension. As the parties seeking the extension, who bear the burden, Plaintiffs' inability to show good cause warrants denial of their request. *Home Design Servs.,* 2010 WL 1435382, at *16-18.

Consideration of the relevant factors, set forth above (which Plaintiffs fail to discuss), confirms this conclusion. First, although Plaintiffs are correct that trial is not imminent (factor #1), the Court and Defendants have been attempting to move the case along, given the amount of time that it has remained on the docket. The parties now

have finally completed fact discovery (other than with respect to FLSA opt-ins) and are briefing summary judgment, so that the Court will have an opportunity to adjudicate what claims, if any, remain for trial. If Plaintiffs are successful in obtaining the requested thirty (30) additional days for expert discovery, the depositions they seek will likely occur *after* Defendants have filed their motions for summary judgment on February 16, 2018. This timing is likely to lead to downstream requests to supplement the summary judgment motions, and may even require re-shuffling the entire summary judgment schedule. Injecting that kind of delay without justification is inconsistent with the efforts that the Court and the Defendants have been taking to move this case along. *See, e.g.*, *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 496–97 (S.D. Tex. 2009) (denying an unopposed motion to extend discovery for the purpose (in part) of permitting expert depositions because the extension would threaten the "integrity of the Court's scheduling order").

With respect to factor #2, Defendants oppose Plaintiffs' request.

Although Plaintiffs attempt to give short shrift to the issue, there would be clear prejudice to Defendants (factor #3) if Plaintiffs are allowed to depose Defendants' experts late. The Alliance is not Defendants' "proxy" as Plaintiffs claim. Motion 1. The Alliance is "an association of 90 nongovernmental organizations comprising the international educational and cultural exchange community in the United States." http://www.alliance-exchange.org/about-alliance (last visited Sept. 28, 2017). Undisputed testimony submitted in this case shows that the Alliance made the decision to produce the 77 pages of notes referenced above, over which Defendants claim

privilege (in part), without even consulting with the relevant Defendants whose representatives had taken part in the conversations. Accordingly, although the Defendants may be members of the Alliance, it is wrong to presume that they have full access to Alliance documents or witnesses, and wrong to suggest that Defendants would not have preferred to depose Plaintiffs' expert after the Alliance and all other fact discovery was over.

Moreover, if Plaintiffs obtain the extension they seek, they will have in-hand the Defendants' motions for summary judgment before they move forward with these expert depositions. It would be unfair and prejudicial to force Defendants, who complied with the Court-ordered deadline, to take expert depositions without even the benefit of all discovery having been completed, and then allow Plaintiffs to wait until they have the benefit of full discovery and the Defendants' motion for summary judgment to depose Defendants' experts. *See, e.g.*, *Malik v. Amini's Billiard & Bar Stools, Inc.*, No. 04-2074-KGS, 2005 WL 3591932, at *2 (D. Kan. Dec. 30, 2005) (denying a motion to amend the scheduling order and observing that the defendant would be prejudiced because it "has already filed its summary judgment motion"); *Wilson v. Wal-Mart Stores, Inc.*, No. 07-2263-JWL, 2008 WL 2622895, at *4 (D. Kan. June 30, 2008) (similar). There is no justification for allowing that kind of unequal treatment on matters as crucial as expert depositions and dispositive motions.

With respect to factor #4, Plaintiffs have no reasonable argument that they have been diligent in attempting to complete the expert depositions within the guidelines established by the Court. The January 5 deadline was set in October by agreement of

the parties. It has never been amended. Despite this fact, it was not until December 29 – already too late to schedule expert depositions in compliance with D.C.COLO. LCivR 30.1 – that Plaintiffs first raised the issue of an extension. ECF No. 817-9 at 1. Even then, Plaintiffs did not ask for more time on the grounds that it was "so obviously warranted" as they now contend (Motion 1); they attempted to horse-trade and buy back more time for expert depositions in exchange for agreeing to DOS depositions that Defendants had requested. *Id.* Respectfully, that is the act of a party who has missed a deadline, not the act of a party who intended all along to request more time because the need for an extension is so obvious. Nor can Plaintiffs plausibly claim that they diligently pursued the AIFS documents. On the contrary: they (i) failed to download documents that were made available to them in April, 2017, and (ii) failed to realize their mistake until eight months later. *See* Ex. A, Decl. of J. Fulfree ¶¶ 3–9, 14.

Likewise, the foreseeability of the need for this discovery in light of the time allowed by the Court (factor #5) tips squarely against allowing the extension that Plaintiffs seek. Plaintiffs cannot – and do not – claim that they only recently determined that it was necessary to depose Defendants' experts. Yet, the January 5 deadline has been in place since the parties requested it in October, and the Defendants' experts (and their reports) were disclosed long ago. Although Plaintiffs now attempt to say that the delay relates to the AIFS and Alliance production and depositions, Plaintiffs were aware in November and December of these issues, yet they took no steps to raise the deadline with Defendants (until it was too late) or to move the Court for relief. *See id.* ¶ 13.

The final factor is the likelihood that the discovery will lead to relevant evidence. Plaintiffs never explain how this factor should be applied in the context of this case, and indeed, it is unclear what they would say in their favor. For example, although it is clear that being able to depose Defendants' experts would be desirable from Plaintiffs' perspective, they fail to adequately explain how the Alliance production, the Alliance depositions, or the AIFS re-production, were needed in order to conduct those depositions.[4] In this regard, it is misleading to suggest that the thrust of Defendants' expert reports (89 pages, according to Plaintiff) has anything to do with discovery likely to be elicited in the Alliance production or depositions. Defendants' experts opine at length about the lack of *economic* evidence of anticompetitive conduct and collusion. Plaintiffs make no suggestion that Alliance discovery would impact those opinions.

Indeed, it is telling that, despite the fact that the complained-of productions occurred on January 4 and January 10 (by far the larger of the two Alliance productions referenced), Plaintiffs' motion filed on January 26 says nothing about how those documents are important for the expert depositions. Plaintiffs' failure to tie the AIFS and Alliance materials to the depositions of Defendants' experts all but concedes that this Motion to Extend is not a legitimate attempt to structure the schedule in a way that is fair, and is merely an attempt to correct their error after the fact.

---

[4] Plaintiffs include a curious statement by their own expert, Dr. Kerr, claiming that certain recently-produced information is relevant to the antitrust issues. If accurate – which Defendants do not concede – that would only underscore that it is Defendants who would be prejudiced if Plaintiffs get an extension, because Defendants deposed Dr. Kerr in compliance with the Court's schedule before this supposed production.

13

## CONCLUSION

Plaintiffs' Motion to Extend – the most recent in their attempts to inject delay into this case – seeks to manufacture reasons why the Court should extend time for expert depositions, but never establishes anything that would constitute the required good cause for that relief. For all of the foregoing reasons, Plaintiffs' Motion to Extend should be denied.

Dated: February 2, 2018                Respectfully submitted,

*s/Diane R. Hazel*
Joan A. Lukey
(joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass
(mgass@choate.com)
Justin J. Wolosz
(jwolosz@choate.com)
Lyndsey M. Kruzer
(lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

14

*s/ Kathryn A. Reilly*
Kathryn A. Reilly
(reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Natalie E. West
(west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

***Attorneys for Defendants Agent Au Pair, Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair***

*s/ James E. Hartley*
James E. Hartley
(jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302

***Attorneys for Defendant Cultural Homestay International***

*s/ Susan M. Schaecher*
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

***Attorneys for Defendants APF Global Exchange, NFP***

15

*s/ Stephen J. Macri*
Stephen J. Macri
(smacri@putneylaw.com)
Joseph B. Cartafalsa
(jcartafalsa@putneylaw.com)
Robert M. Tucker
(rtucker@putneylaw.com)
John B. Fulfree
(jfulfree@putneylaw.com)
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

*s/ Eric J. Stock*
Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301

**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**

*s/ Bogdan Enica*
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair**

*s/ Peggy E. Kozal*
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey
(nhuey@gordonrees.com)
Heather K. Kelly
(hkelly@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**

*s/ Martha L. Fitzgerald*
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant EurAuPair Intercultural Child Care Programs**

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

***Attorneys for Defendant InterExchange, Inc.***

*s/ William J. Kelly III*
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

***Attorneys for Defendant USAuPair, Inc.***

*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
1700 Broadway, Suite 2100
Denver, CO 80290-2101
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

***Attorneys for Defendant GreatAuPair, LLC***

18

**CERTIFICATE OF SERVICE (CM/ECF)**

  I hereby certify that on February 2, 2018, I caused to be electronically filed the foregoing CERTAIN DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND THE EXPERT DISCOVERY DEADLINE [ECF NO. 816] with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver
*Counsel for Plaintiffs*


Lawrence Stone (lstone@nixonshefrin.com)
Kathleen E. Craigmile (kcraigmile@nixonshefrin.com)
*Counsel for Defendants A.P.E.X. American*
*Professional Exchange, LLC d/b/a ProAuPair*


              *s/ Diane R. Hazel*