IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

      Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

      Defendants.

_____

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE TAFOYA'S
ORDER ON NONDISPOSITIVE MATTER [ECF NO. 813] UNDER
FEDERAL RULE OF CIVIL PROCEDURE 72(A)**

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS.............................................................................. 2

ARGUMENT.................................................................................................. 3

I.    THE ORDER ERRED BY ADMITTING A LABOR-LAW DAMAGES
      MODEL TO MEASURE AN ANTITRUST INJURY. .............................. 3

      A.    Applicable Law ......................................................................... 4

      B.    Discussion ................................................................................ 5

II.   THE ORDER APPLIED THE WRONG LEGAL STANDARD TO THE
      PRICE-COMPETITION MODEL............................................................ 7

      A.    Applicable Law ......................................................................... 7

      B.    Discussion ................................................................................ 8

III.  THE ORDER DID NOT ADDRESS DEFENDANTS' OBJECTIONS TO
      THE HOST-FAMILY SURVEY............................................................ 10

      A.    The Court Should Vacate This Portion of the Order............................. 11

      B.    The Host-Family Survey Is Inadmissible. .............................................. 13

CONCLUSION ............................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bitler v. A.O. Smith Corp.*,
400 F.3d 1227 (10th Cir. 2004) ................................................................... 4

*Bitler v. A.O. Smith Corp.*,
400 F.3d 1227 (10th Cir. 2005) ................................................................... 4

*Blue Cross & Blue Shield United v. Marshfield Clinic*,
152 F.3d 588 (7th Cir. 1998) .................................................................... 10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ............................................................................. 4, 6

*Chavez v. IBP, Inc.*,
No. CV-01-5093-RHW, 2004 WL 5520002 (E.D. Wash. Dec. 8, 2004) .................... 15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ................................................................. 4, 5, 7, 8, 10

*Conroy v. Vilsack*,
707 F.3d 1163 (10th Cir. 2013) ................................................................ 14

*Daubert v. Merrell Down Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ............................................................................. 2, 4

*Dodge v. Cotter Corp.*,
328 F.3d 1212 (10th Cir. 2003) ................................................................. 9

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
423 F. Supp. 2d 173 (S.D.N.Y. 2006) .......................................................... 6

*Elliott Indus v. BP Am. Prod. Co.*,
407 F.3d 1091 (10th Cir. 2005) ................................................................. 4

*Hill v. Kemp*,
478 F.3d 1236 (10th Cir. 2007) ................................................................ 12

*Hughes v. Ester C Co.*,
317 F.R.D. 333 (E.D.N.Y. 2016) ................................................................. 9

*In re Blood Reagents Antitrust Litig.*,
783 F.3d 183 (3d Cir. 2015) ................................................................. 7, 8, 9

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) ................................................................. 11, 12

*In re Pharm. Benefit Managers Antitrust Litig.*,
No. 06-1782, 2017 WL 275398 (E.D. Pa. Jan. 18, 2017) .................................. 10

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) ..................................................................................... 8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   MDL No. 1869, 2017 WL 5311533 (D.D.C. Nov. 13, 2017) ......................................... 9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................... 14

*Navelski v. Int'l Paper Co.*,
   244 F. Supp. 3d 1275 (N.D. Fla. 2017) ........................................................................ 9

*New York v. United Parcel Serv., Inc.*,
   No. 15-CV-1136 (KBF), 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) ...................... 14

*Phila. Taxi Ass'n v. Uber Techs., Inc.*,
   218 F. Supp. 3d 389 (E.D. Pa. 2016) ........................................................................... 6

*San Francisco v. Sheehan*,
   135 S. Ct. 1765 (2015) ............................................................................................... 12

*Sharp v. United Airlines, Inc.*,
   967 F.2d 404 (10th Cir. 1992)............................................................................. 4, 5, 7

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................................................................. 9

*Wallace v. Countrywide Home Loans, Inc.*,
   No. SACV 08-1463-JST, 2012 WL 11896333 (C.D. Cal. Aug. 31, 2012) ................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................................... 7

### RULES

Fed. R. Civ. P. 72 ......................................................................................................... 12

## PRELIMINARY STATEMENT[1]

Throughout this litigation, Plaintiffs have sought to fashion an antitrust case from a labor-law dispute.  For the first time at the class certification phase, Plaintiffs were put to the test by the requirement that they demonstrate that the putative class suffered a common antitrust impact.  To meet that requirement, typically an expert economist would examine the market, determine what the putative class would have earned under competitive conditions, and compare that stipend to the one that the au pairs received.

But, that is not what Plaintiffs' expert did.  Instead, he built two damages models, neither of which identified the stipend that au pairs would have earned in the but-for world.  The first model, consistent with the theme of treating a labor-law case as an antitrust case, compared the stipend au pairs received to the amount that they allegedly should have received under the minimum wage laws.  The second model asked the right question—what would au pairs have earned under competitive conditions?—but failed to answer it.  As Plaintiffs' expert admitted, the model was so incomplete that it did not permit him to estimate what au pairs would have earned in the but-for world.

For the reasons that follow, Defendants posit that neither of these models nor a host-family survey designed by Plaintiffs' expert economist are admissible in the class certification phase: (i) the first model does not measure an antitrust injury, (ii) the

---

[1] Defendants recognize that the Court has now issued a class certification order (ECF No. 827), without awaiting these Objections, which pertain to issues intertwined with the class certification order.  Defendants are nonetheless filing the Objections because (a) this Court should have the opportunity to review a critical order denying a motion integrally related to the class certification order, and (b) preservation of the Objections is a necessary prerequisite to presenting the issues to which the Objections relate, if permitted, in an appeal to the Court of Appeals.

second model is not sufficiently developed to pass muster under *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and (iii) the survey is little more than an unscientific group e-mail.  Defendants therefore respectfully contend that the Magistrate Judge erred by denying Defendants' motion.  To correct that error, and to preserve their appellate rights, Defendants submit these objections.

## STATEMENT OF FACTS

When Plaintiffs moved for class certification, they relied on the testimony of their expert economist, William Kerr ("Kerr").  Defendants responded by moving to exclude three parts of his testimony.  First, Defendants sought to exclude Kerr's "wage and hour law compliance model" (the "wage-law compliance model").  Defs.' Mot. to Exclude Expert Testimony of William Kerr, ECF No. 606 (the "Motion").  The wage-law compliance model compares the stipends au pairs received to what Plaintiffs claim was the applicable minimum wage.  *Id.*  Defendants objected that this model fails as a matter of law to identify an antitrust injury—i.e., a loss arising from a reduction in competition—and therefore could not support the certification of an antitrust class.

Second, Defendants moved to exclude Kerr's "price-competition" model.  Motion 10.  Unlike the wage-law compliance model, Kerr claimed that this model could measure the difference between the stipend au pairs received and the stipend they would have received in a freely competitive market.  *Id.*  Kerr admitted, however, that this model was incomplete, and that he could not use it even to estimate what the competitive stipend would have been.  *Id.*  Defendants therefore contended that this model was not sufficiently reliable to satisfy the *Daubert* standard.

- 2 -

Finally, Defendants argued that Kerr's host-family survey was inadmissible. Motion 11.  Kerr purported to conduct a census of host families, which asked how much they paid their au pair.  Roughly 18% of host families responded, and Kerr did not examine whether the large population of non-respondents would have rendered different results.  *Id.* at 13.  Defendants argued that the survey should be excluded.

Magistrate Judge Tafoya denied Defendants' motion and admitted all of Kerr's testimony.  ECF No. 813 (the "Order").  First, the Magistrate Judge found Kerr's wage-law compliance model to be "appropriate under the holding of *Comcast*" and supportive of "one theory of antitrust injury derived from Defendants' alleged antitrust behavior." *Id.* at 11.  Second, the Magistrate Judge acknowledged that Kerr's price-competition model was "incomplete," but declined to apply a "full and stringent" *Daubert* analysis and also admitted this model.  *Id.* at 16-17.  Finally, the Magistrate Judge did not address Defendants' objections to the host-family survey, finding instead that "even if the [host-family] survey and its results were discounted entirely, Kerr's conclusion that 'all, or a substantial majority of, au pairs were offered and paid a weekly stipend of $195.75' is amply supported by the other overwhelming evidence he considered."  *Id.* at 6-7.

## ARGUMENT

## I.    THE ORDER ERRED BY ADMITTING A LABOR-LAW DAMAGES MODEL TO MEASURE AN ANTITRUST INJURY.

The Order erred by admitting Kerr's wage-law compliance model as evidence of antitrust impact.  The wage-law compliance model compares the stipend that au pairs allegedly received to what Plaintiffs allege was the applicable minimum wage.  Class Cert. Report of William Kerr ¶ 91, ECF No. 560-65 ("Kerr Class Cert. Rpt.").  In other

words, it assumes a labor-law injury and measures Plaintiffs' alleged labor-law damages. Because an alleged violation of the minimum wage laws cannot serve as proof of antitrust injury, the wage-law compliance model cannot support Plaintiffs' antitrust claims and should be excluded.

### A.      Applicable Law

To determine whether expert evidence is admissible, a trial court must examine "the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005). "The Supreme Court has described the consideration of relevant evidence as one of 'fit.'" *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)).

Any damages model that relates to Plaintiffs' antitrust claim must measure damages that flow from an "antitrust injury." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). An "antitrust injury" is "an injury of the type the antitrust laws were intended to prevent." *Elliott Indus v. BP Am. Prod. Co.*, 407 F.3d 1091, 1124 (10th Cir. 2005) (internal quotations omitted). To prove antitrust injury, Plaintiffs must trace their alleged injury to a reduction of competition. *See Sharp v. United Airlines, Inc.*, 967 F.2d 404, 408 (10th Cir. 1992). A damages model that cannot measure an antitrust injury cannot assist a court in deciding whether to certify an antitrust class: "[A]t the class certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (internal quotations omitted).

**B.      Discussion**

As the Order correctly observed, Plaintiffs have alleged "two types of antitrust injury."  Order 9.  One of those injuries is "the failure to pay au pairs at least a minimum wage as prescribed by law."  *Id.*  This is the injury that the wage-law compliance model is designed to detect.  *See* Kerr Class Cert. Rpt. ¶ 92.  The question presented by Defendants' *Daubert* motion is whether this injury—the alleged deprivation of "a minimum wage prescribed by law," Order 9, qualifies as an antitrust injury.

The Order failed to address that question.  Instead, the Order held that "*Comcast* does not bar a model of damage calculation based on au pairs' entitlement to at least the federal, state and local minimum wage laws, simply because a similar method would be used to calculate damages for the labor law claims involving the same classes of au pairs also brought in this case."  Order 10.  The problem with the model, however, is not that it is merely "similar" to a labor-law damages model.  The problem is that the model cannot detect an antitrust injury as a matter of law, because it does not trace the alleged damages to any reduction of competition.  *See Sharp*, 967 F.2d at 408.

On the contrary, the model merely measures what au pairs allegedly should have been paid if certain minimum wage laws applied.  Kerr Class Cert. Rpt. ¶ 91.  As Defendants' counsel contended at the hearing, observing a difference between the allegedly applicable minimum wage and what au pairs received says nothing about whether the au pairs suffered "a competitive injury."  Ex. B, Kerr Daubert Hr'g Tr. at 44:4–8.  Indeed, the expert testimony confirms what common sense suggests: legislative bodies enact minimum wages to pull compensation up, not push it down,

such that market forces would push stipends downwards if the DOS-prescribed minimum stipend were removed.  *See* Stiroh Class Cert. Rpt. ¶ 22, ECF No. 603-45.  In other words, given that a minimum wage can be expected to increase the recipient's compensation, the compelled inference is that au pairs would have received less, not more, than $195.75 in a freely competitive market, and the alleged deprivation of a higher stipend that is required by law has nothing to do with competitive forces.  *See* Ex. C, Excerpts of Merits Deposition of William Kerr at 16:6–8 ("Minimum wage laws are not set by economic forces at all.  They're set by legislative fiat.").  Plaintiffs did not put forward a shred of evidence indicating that *competition* would pressure sponsors to raise stipends to levels purportedly required by minimum wage laws—on the contrary, the evidence showed just the opposite.  *See, e.g.*, Ferry Decl. ¶ 8, ECF No. 605-4.

That is why an alleged labor law violation does not establish antitrust injury.  As the Supreme Court has explained, antitrust plaintiffs "must prove more than injury causally linked to an illegal presence in the market."  *Brunswick Corp.*, 429 U.S. at 489.  The something "more" that antitrust law requires is a direct link between the challenged conduct and a diminution in competition that caused Plaintiffs' injury.  *See id.*  Courts therefore reject claims that violations of other laws result in antitrust injury.  *See, e.g.*, *Phila. Taxi Ass'n v. Uber Techs., Inc.*, 218 F. Supp. 3d 389, 393 (E.D. Pa. 2016) ("violation of state law or municipal regulations does not give rise to an antitrust injury"); *Doron Prec. Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 183 (S.D.N.Y. 2006) ("To the extent that the [challenged conduct] violated state or local law, Doron's proper remedy is a bid protest or a lawsuit in New York state courts, not a federal antitrust lawsuit.").

Because Plaintiffs' wage-law compliance model does not even attempt to trace Plaintiffs' alleged harm to a reduction of competition, it cannot serve as proof of antitrust injury.  *See Sharp*, 967 F.2d at 408.[2]  For the same reasons, the model fails to satisfy *Comcast*'s requirement that Plaintiffs' evidence of harm must accord with their theory of liability.  569 U.S. at 27, 35.  The Court therefore should exclude the wage-law compliance model at the class certification stage.

## II.     THE ORDER APPLIED THE WRONG LEGAL STANDARD TO THE PRICE-COMPETITION MODEL.

### A.     Applicable Law

To carry their burden at class certification, Plaintiffs must come forward with "evidentiary proof" that they have satisfied Rule 23's requirements.  *Comcast*, 569 U.S. at 33; *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  That means any expert testimony proffered to satisfy Rule 23 needs to pass muster under *Daubert*.  *See, e.g.*, *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) ("We join certain of our sister courts to hold that a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial courts finds, that the expert testimony satisfies the standard set out in *Daubert*.").

Because courts must conduct a "rigorous analysis" of the evidence that purportedly makes a case fit for class treatment, nothing less than a full *Daubert*

---

[2] Indeed, even if this model could demonstrate an antitrust impact at all, it is not clear how it could establish a common one.  21 states do not have minimum wages that are higher than the federal minimum wage.  Kerr Class Cert. Rpt. at Ex. 20.  For au pairs who worked in those states, this model therefore would show no impact.

analysis will suffice.  *See Comcast*, 569 U.S. at 35 (internal quotations omitted).  "Expert

testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot 'prove'"

that Plaintiffs have satisfied Rule 23.  *In re Blood Reagents*, 783 F.3d at 187.  A district

court therefore may not consider insufficiently developed expert evidence at class

certification on the theory that it "could evolve to become admissible evidence at trial."

*Id.* at 186 (explaining that the "could evolve" standard "did not survive *Comcast*")

(internal quotations omitted).  If a plaintiff offers a damages model at the class

certification stage, that model must be sufficiently reliable to assist the Court *at the class

certification stage*:  "No damages model, no predominance, no class certification."  *In re

Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013).

**B.   Discussion**

The Order failed to apply these principles.  First and foremost, Magistrate Judge

Tafoya declined to conduct a "full and stringent application of *Daubert*."  Order 17. The

Magistrate Judge recognized that the price-competition model was "incomplete."  *Id.* at

16.  She also recognized that the model is "insufficient to attribute any difference in pay

between the [benchmark] groups to the antitrust conduct allegedly engaged in by the

defendants."  *Id*.  In other words—as Kerr admitted—the model did not even permit an

estimate of what the but-for stipend would have been.  Ex. A, Excerpts of Class Cert.

Deposition of William Kerr ("Ex. A") at 253:17-25.  Yet, the Order admitted the model

because it was "workable," and because Kerr may be able to "analyze[] and account[]

for" differences between au pairs and the benchmark groups later.  Order 16.  The

Order concluded that this sufficed, and declined to conduct the "full and stringent

application of *Daubert*' to the model that Defendants contend was required.  Order 17.

The Tenth Circuit has not yet addressed the post-*Comcast* expert-evidence requirement at the class certification stage; but, in the wake of *Comcast*, courts routinely require expert evidence at class certification to satisfy *Daubert*.  *See, e.g.*, *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1285 (N.D. Fla. 2017) ("[T]he Court must perform a full *Daubert* analysis before resolving the class certification motion."); *Hughes v. Ester C Co.*, 317 F.R.D. 333, 340 (E.D.N.Y. 2016).[3]  Indeed, courts have specifically recognized that a damages model is not admissible merely because it is "workable" or may be usable at some later date.  *In re Blood Reagents*, 783 F.3d at 187 (rejecting expert evidence that "could evolve to become admissible evidence[] at trial") (internal quotations omitted); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 2017 WL 5311533, at *11 (D.D.C. Nov. 13, 2017) (explaining that "[a]fter *Comcast*' a merely "workable" model is "no longer enough").  The Order thus erred by failing to subject the price-competition model to a rigorous *Daubert* analysis.

Under *Daubert*, the price-competition model simply is not admissible in its current form.  Expert opinions must be "based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).  If an expert uses a benchmark, he

---

[3] Plaintiffs claim that *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016), somehow suggests that courts should apply less than a full *Daubert* analysis at class certification.  Pls.' Opp'n to Defs.' *Daubert* Mot. as to Class Cert. Ops. 14-16, ECF No. 650.  But *Tyson* plainly had nothing to do with *Daubert*: the expert testimony at issue in that case was not challenged under *Daubert* at all.  136 S. Ct. at 1049 (explaining that there had been no *Daubert* challenge).

must control for "salient factors, not attributable to the defendant's misconduct," that may explain any observed differences between the relevant market and the benchmarks. *Blue Cross & Blue Shield United v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998). An expert may not simply compare two markets, observe a difference, and attribute that difference to an antitrust violation. *In re Pharm. Benefit Managers Antitrust Litig.*, No. 06-1782, 2017 WL 275398, at *18 (E.D. Pa. Jan. 18, 2017).

Kerr's analysis falls short of these standards. Far from offering a "reasonably accurate conclusion," the price-competition model did not equip him even to make an estimate. Ex. A, Kerr Class Cert. Dep. at 253:17-25. As the Order observed, Kerr has not yet "analyzed and accounted for" differences between his benchmarks and au pairs. Order 16. For all of these reasons, it is undisputed that the price-competition model is "incomplete," Order 16, and permits only a "preliminary" analysis. Kerr Class Cert. Rpt. ¶¶ 102-103. Although the Order hypothesized that this model might work at some later date, discovery (except with regard to opt-in Plaintiffs) is now closed, and it is clear that the model therefore cannot benefit from further discovery. In his merits report, Dr. Kerr did not even *attempt* to fill in this model. Instead, he purported to calculate damages by observing the sponsors' revenue growth during the damages period, without reference to either of the benchmarks that formed the basis for his price-competition model. *See* Ex. D, Merits Report of William Kerr ¶¶ 135–139. An incomplete model and a "preliminary" analysis cannot withstand the "rigorous" examination that *Comcast* requires at the class certification stage. *See* 569 U.S. at 35.

## III.     THE ORDER DID NOT ADDRESS DEFENDANTS' OBJECTIONS TO THE HOST-FAMILY SURVEY.

The Order did not address the admissibility of the host-family survey, and instead resolved a question that the Court reserved for itself.  After Plaintiffs moved for class certification, Defendants opposed that motion and moved to exclude parts of Plaintiffs' expert evidence.  Defs.' Response in Opp'n to Pls.' Mot. for Rule 23 Class Cert., ECF No. 603; Motion, ECF No. 606.  This Court divided responsibility for the motions by retaining the motion for class certification but referring the *Daubert* motion to the Magistrate Judge.  Mem. Referring Mot. to Magistrate Judge Kathleen M. Tafoya, ECF No. 766.  This meant that the Magistrate Judge would be responsible, in the first instance, for determining what expert evidence was admissible, and the District Court would weigh the competing expert opinions to see whether Rule 23 was satisfied.  *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2008) (resolving disputes between experts "may be integral to the rigorous analysis Rule 23 demands.").

Rather than address the sufficiency of Plaintiffs' host-family survey under *Daubert*, however, the Order proceeded to weigh the evidence that was properly before the Court at class certification.  Order 4–6.  The Order concluded that (i) "voluminous evidence" supported Kerr's opinion that "au pairs were almost uniformly paid" $195.75 per week, and (ii) it was therefore unnecessary to determine whether the host-family survey was admissible, because any shortcomings in the survey amounted to harmless error.  *Id.* at 6–7.  The Order reached this result even though Plaintiffs defended the host-family survey on the merits, and did not contend that any error was harmless.

### A.    The Court Should Vacate This Portion of the Order.

Courts should not decide questions that are not presented by the parties.  *See,*

*e.g.*, *Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) (explaining that "to avoid error, we are dependent on the full development of issues through the adversarial process"). Although the rule against deciding questions that are not briefed ordinarily may be one of prudence, where Magistrate Judges are involved, it is also one of authority.  Absent the consent of the parties, a Magistrate Judge may resolve only those questions referred to her by the District Court.  *See* Fed. R. Civ. P. 72(a).

The Order did not address the question that the parties briefed and the Court referred to the Magistrate Judge, i.e., whether the host-family survey passes muster under a *Daubert* or *Daubert*-like standard.  Order 6–7.  Instead, the Order essentially held that any error in the survey was harmless because other evidence supported Kerr's opinion that "all, or a substantial majority of, au pairs were offered and paid a weekly stipend of approximately $195.75."  *See id.* (internal quotation marks omitted).  That question simply was not before the Magistrate Judge.  The Court did not refer the class certification motion—which required the Court to weigh Plaintiffs' admissible expert evidence against Defendants'—to the Magistrate Judge.  *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 323.  Tellingly, Plaintiffs responded to Defendants' argument that the survey was inadmissible under *Daubert*, and did not argue that any error was harmless.  *See* Pls.' Opp'n to Defs.' *Daubert* Mot. at 24–27, ECF No. 650.

Indeed, the Order demonstrates the perils of resolving questions not briefed by the parties.  Because the weight of the expert evidence was not before the Magistrate Judge, Defendants had no occasion to brief (in the context of this motion) the many shortcomings of the evidence that purportedly renders any error in the host-family

survey harmless.  For example, the Order relied in part on "Defendants' standard form contracts, which attempt to legally bind *au pairs* to the represented stipend."  Order 5. In fact, the "standard form contracts" are anything but common evidence that au pairs all received a stipend of $195.75.  Four sponsors had contracts that simply referred to the stipend as $195.75.  Kerr Class Cert. Rpt. at Ex. 8 (rows 1, 3, 7, and 12).  Three others expressly indicated that the stipend was merely a minimum.  *Id.* (rows 4, 11, 13). And the largest sponsor—Cultural Care—had no such standard contract at all.  *Id.* (row 8).  So, too, with much of the other evidence cited in the Order.[4]

The Order thus resolved a question that the Court did not refer on the basis of an argument that the parties did not present.  The Order did not resolve, however, the admissibility of the host-family survey.  The Court therefore should apply *Daubert* to the host-family survey itself.

### B.    The Host-Family Survey Is Inadmissible.

For all the reasons set forth in Defendants' original motion, but which the Magistrate Judge did not address, the host-family survey is not admissible.  Kerr is unqualified to conduct the survey, and his methodology falls well short of the standards that govern survey research.  The host-family survey therefore should be excluded.

---

[4] For example, the Magistrate Judge referred to "Defendants' own ordinary-course surveys, showing that host families uniformly adhere to Defendants' fixed wages." Order 5 (citing Kerr's Rebuttal Report).  As the Court is presumably aware from the class certification briefing—those surveys show nothing of the kind.  As discussed in that briefing, the parties' testimony and Defendants' records show that the payments made by host families vary.  *See, e.g.*, Defs.' Response in Opp'n to Pls.' Mot. for Rule 23 Class Cert. 9–10, ECF No. 603 (explaining, among other things, that one named plaintiff received "amounts ranging from $200 to $600 per week, and that 58% of one sponsor's au pairs received a stipend exceeding $195.75).

To determine whether an expert is qualified, courts examine if the witness has specialized knowledge in the "particular field" about which he or she is testifying. *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (quotation omitted).  Where a party retains an expert to design a survey, as Plaintiffs have here, the expert must be qualified in the field of survey design.  *See New York v. United Parcel Serv., Inc.*, No. 15-CV-1136 (KBF), 2016 WL 4735368, at *7-8 (S.D.N.Y. Sept. 10, 2016).  When determining if an expert is qualified, courts examine whether the witness has "researched, written about, or opined" on the topic before.  *Conroy*, 707 F.3d at 1169.

Plaintiffs do not claim that Kerr has "researched, written about, or opined" on survey design.  *Id.* at 1169.  Kerr has not authored any articles on survey design, he is not a member of any professional organizations that focus on survey-design research, he has never taken or taught a class focused on survey design, and he has never been qualified by any Court to testify as a survey-design expert.  *See* Ex. A at 343:13-22, 213:14-17; 343:25-344:5.  These admissions demonstrate that Kerr is not qualified to design the host-family survey.  *See Conroy*, 707 F.3d at 1168-69.

Even if Kerr were qualified, the survey still would be inadmissible.  An expert must employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Kerr's survey fell well short of the professional standards that govern survey research.

Most notably Kerr did not properly account for nonresponse bias—the possibility that those who fail to respond to a survey may differ in meaningful ways from those who respond.  Ex. W to Defs.' Response in Opp'n to Pls.' Mot. for Rule 23 Class Cert. and

Appointment of Class Counsel 9-10, ECF No. 603-43 ("Ex. W").  Nonresponse bias is a serious problem, and courts have repeatedly held that experts proffering results of a survey must take steps to control for it.  *See, e.g.*, *Wallace v. Countrywide Home Loans, Inc.*, No. SACV 08-1463-JST, 2012 WL 11896333, at *3 (C.D. Cal. Aug. 31, 2012) (excluding survey "infect[ed]" with nonresponse bias).

Nonresponse bias should have been of particular concern to Kerr, because his response rate was only 18%.  Kerr Aff. ¶ 8, ECF No. 560-68.  "The U.S. Office of Statistical Standards suggests that because nonresponse is often not random, a survey should maintain a response rate of 75% or above."  *Chavez v. IBP, Inc.*, No. CV-01-5093-RHW, 2004 WL 5520002, at *10 (E.D. Wash. Dec. 8, 2004).  Kerr's affidavit, however, contained no analysis of nonresponse bias.  *See generally* Kerr Aff.  That failure shows that the survey is unreliable and should be excluded.  Ex. W at 10-11.

## CONCLUSION

The Court should reject the Order and grant Defendants' Motion, ECF No. 606.

Dated:  February 7, 2018

Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey
(joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass
(mgass@choate.com)
Justin J. Wolosz
(jwolosz@choate.com
Lyndsey M. Kruzer
(lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane R. Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair**

s/ Kathryn A. Reilly
Kathryn A. Reilly
(reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Natalie E. West
(west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

**Attorneys for Defendants Agent
Au Pair, Go Au Pair Operations,
and American Cultural
Exchange, LLC d/b/a Go Au Pair**


s/ James E. Hartley
James E. Hartley
(jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302

**Attorneys for Defendant Cultural
Homestay International**

s/ Susan M. Schaecher
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

**Attorneys for Defendants APF Global Exchange, NFP**

s/ Stephen J. Macri
Stephen J. Macri
(Stephen.macri@ogletree.com)
Joseph B. Cartafalsa
(joseph.cartafalsa@ogletree.com)
Ogletree, Deakins, Nash, Smoak & Stewart P.C.
1745 Broadway
New York, NY  10019
(212) 582-2120

Robert M. Tucker
(rtucker@putneylaw.com)
John B. Fulfree
(jfulfree@putneylaw.com)
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

s/ Eric J. Stock
Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301

**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**

- 18 -

s/ Bogdan Enica
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair**

s/ Peggy E. Kozal
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey
(nhuey@gordonrees.com)
Heather K. Kelly
(hkelly@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**

s/ Martha L. Fitzgerald
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant EurAuPair Intercultural Child Care Programs**

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

**Attorneys for Defendant
InterExchange, Inc.**

*s/ William J. Kelly III*
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

**Attorneys for Defendant
USAuPair, Inc.**

*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
1700 Broadway, Suite 2100
Denver, CO 80290-2101
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

**Attorneys for Defendant
GreatAuPair, LLC**

- 20 -

_s/ Lawrence D. Stone_
Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN
OGBURN, P.C.
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

**_Attorneys for Defendants_**
**_A.P.E.X. American Professional_**
**_Exchange, LLC d/b/a ProAuPair_**

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on February 7, 2018, I caused to be electronically filed the foregoing **DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE TAFOYA'S ORDER ON NONDISPOSITIVE MATTER [ECF NO. 813] UNDER FEDERAL RULE OF CIVIL PROCEDURE 72(A)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Diane R. Hazel*