EXHIBIT 16

1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
     Case No. 14-cv-03074-CMA-KMT
3    _____

4    JOHANA PAOLA BELTRAN, et al.,

5         Plaintiffs,

6    vs.

7    INTEREXCHANGE, INC., et al.,

8         Defendants.
     _____
9

10           Proceedings before KATHLEEN M. TAFOYA, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 9:42 a.m., November 17,

13   2017, in the United States Courthouse, Denver, Colorado.

14   _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                           APPEARANCES

19           SEAN RODRIGUEZ, NINA DISALVO, and JUAN VALDIVIESO,

20   Attorneys at Law, appearing for plaintiffs.

21           JOSEPH HUNT, Attorney at Law, appearing for

22   defendant InterExchange, Inc.

23   _____

24                          MOTION HEARING

25
```

2

```
 1                APPEARANCES (Cont'd)
 2           BOGDAN ENICA, ttorney at Law, appearing for
 3   defendant Expert Group International, Inc. d/b/a Expert
 4   AuPair.
 5           MARTHA FITZGERALD and DAVID MESCHKE, Attorneys at
 6   Law, appearing for defendant EuRaupair InterCultural Child
 7   Care Program.
 8           JONATHAN BENDER, Attorney at Law, appearing for
 9   defendant Cultural Homestay International.
10           JOAN LUKEY and DIANE HAZEL, Attorneys at Law,
11   appearing for defendant Cultural Care, Inc.
12            KATHRYN REILLY, Attorney at Law, appearing for
13   defendants Au Pair International, Inc., Agent Au Pair and
14   GoAuPair.
15           SUSAN SCHAECHER, Attorney at Law, appearing for
16   defendant APF Global Exchange, NFP.
17           ROBERT TUCKER, Attorney at Law, appearing for
18   defendant American Institute for Foreign Exchange, d/b/a Au
19   Pair in America.
20           MARTIN ESTEVAO, Attorney at Law, appearing for
21   defendant GreatAuPair, LLC.
22           LARRY STONE, Attorney at Law, appearing for
23   defendant A.P.E.X. American Professional Exchange, LLC.
24   _____
25
```

3

```
 1                P R O C E E D I N G S
 2            (Whereupon, the within electronically recorded
 3   proceedings are herein transcribed, pursuant to order of
 4   counsel.)
 5            THE COURT:  Good morning, everyone.  Please be
 6   seated.
 7            MS. LUKEY:  Good morning, Your Honor.
 8            MR. RODRIGUEZ:  Good morning.
 9            THE COURT:  We're here today in case number
10   14-cv-3074, Johana Beltran, et al., versus a number of
11   defendants that I'll read out as we go along for appearances.
12   Let me advise you we have a couple of situations today, just
13   so all you know what's going on.
14            There are two -- at least two people that were
15   going to appear by phone and our phone system doesn't seem to
16   be working.  They've called in, then we tried to transfer
17   them, and they aren't on.  So if you hear a ring starting, it
18   means that we finally got that fixed.  We've got IT looking
19   at it.  So we'll stop if you hear this loud ringing.  The
20   phone will automatically answer and then we'll connect them
21   in.
22            The other thing is, I have a terrible cold and I
23   can't hear very well, so please talk into the microphone for
24   me because otherwise I won't be able to hear you.  And does
25   anybody -- do I sound like I'm shouting to any of you?  Okay.
```

1  yield.
2           THE COURT:  All right.
3           MR. RODRIGUEZ:  Thank you.
4           THE COURT:  Thank you.
5           MS. LUKEY:  Were you planning a second part of the
6  argument, Sean?
7           MR. RODRIGUEZ:  No.
8           MS. LUKEY:  No?
9           MR. RODRIGUEZ:  Well, after, in rebuttal, yes.
10          MS. LUKEY:  Okay.  Good morning, Your Honor.
11          As previously indicated, I'm Joan Lukey here for
12  Cultural Care.  I'm speaking on behalf of the defendants and
13  would like to reserve the right of other defendants in case I
14  miss something to bring it to your attention.  I think it's
15  important for the Court to know that not all defendants were
16  involved in redactions; hence, there are some who are not
17  present as a result.
18          Briefly, I would like to talk to you about the
19  context in which this all arose, particularly in light of
20  something that was just said by my brother.  These were not
21  Alliance meetings, as should be apparent from the papers,
22  from the logs, and from the notes -- that have the materials
23  that have been turned into you as Exhibit 4 to defendants'
24  opposition; that is, we gave you the complete set of
25  materials with the very limited redactions that are in them.

14

1       These were circumstances where generally phone
2  calls, I think there may have been one meeting, were convened
3  for the sponsors only to discuss the litigation.  Every one
4  of these communications occurred well after the litigation
5  was filed.  Every one of the conversations occurred to
6  discuss how to go forward handling the litigation.
7       As I prepared my outline for the argument today,
8  one thing occurred to me.  I was going to say to the Court
9  that the matters that were redacted were not business
10 discussions; they are clearly specific discussions of legal
11 strategy which, in four instances on their face, reveal that
12 is a recitation of advice from counsel.  And with regard to
13 the declarations on file of Ms. Jordan and Mr. Ranforce (ph)
14 from Cultural Care and Mr. Goertz (ph) from AFIS, they were
15 reciting advice from their counsel, passing it along to the
16 group in a circumstance where, as Boies Schiller well knows,
17 there was an in-place written joint defense agreement, in
18 part, a function of this Court's understandable order to
19 control the discovery process in an efficient way of
20 requiring the defendants to act cooperatively with each
21 other.  Hence, a joint defense group was required to decide,
22 for example, with the limited number of depositions
23 available, whom they would be calling as witnesses.  There
24 had to be a cooperation.  The experts had to be selected as a
25 group.  There was no way for a defendant to avoid being part

15

1   of the joint defense group.  Plaintiffs know about the
2   existence of the agreement, they are aware of the existence
3   of the group.  They even have our joint defense e-mail
4   distribution which says "Beltran Defendants" on it and have
5   it available to them to use when they wish to do so to
6   communicate with all of us at once.
7           But I was thinking of saying to you what was in and
8   not in the redactions, it became apparent to me that this
9   Court needs to see the full version of this document.  This
10  Court needs to have the portions that are redacted.  And just
11  this morning I consulted with all of the other members of the
12  group and asked their permission to provide that to the
13  Court.  I am going to suggest that I hand it to the clerk
14  before I am finished and that we then go through, so that you
15  have it available quickly, and then that we then go through a
16  formal filing using the sealed process to get it into the
17  record so you don't have to worry about doing that piece if
18  you don't want to.
19          When you get it, you are going to see this.  There
20  are entries in which non-lawyer sponsors are talking about
21  principles, which clearly are principles of law that wouldn't
22  be known to a non-lawyer.  Those can be matched to the
23  declarations, whoever was taking the notes from the Alliance
24  usually it was Ms. Heinz.  And by the way, the only people
25  from the Alliance present as indicated are a scribner,

16

1     usually Ms. Heinz; and the executive director of the
2     Alliance, who was the facilitator on behalf of the sponsors,
3     the au pair sponsors.  These were not open meetings involving
4     others.
5              THE COURT:  Who -- what's the name of the
6     facilitator, the director?
7              MS. LUKEY:  Ellier (ph) -- what's Ellier's last
8     name?
9              UNIDENTIFIED SPEAKER:  Zyrka (ph).
10             MS. LUKEY:  Ellier Zyrka (ph).  He happens to be a
11    lawyer, by the way, but that is not referenced in the paper
12    as he's not acting as counsel.  But he's not a non-lawyer; he
13    is just not a lawyer to the parties.  He's a facilitator.
14             The Alliance exists for the purpose of furthering
15    the interests of its members and they come in subsets and
16    this subset is -- they're all exchange programs.  This subset
17    is of the au pair program and 13 of the 16 defendants are
18    members of the Alliance.  He, therefore, facilitated these
19    calls for them to discuss what to do.
20             THE COURT:  And was the -- was the Alliance's
21    attorney there other than Zyrka?
22             MS. LUKEY:  The Alliance doesn't have a regular
23    attorney, Your Honor.  And the answer is, no, the Alliance
24    did not have an attorney present.  It was only the Alliance
25    acting as facilitator and a member of his staff, Ms. Heinz,

17

1  acting as the scribner to keep notes that, by the way, the
2  participants who were on the phone didn't know were being
3  kept.  So the context in which this arose, the way these
4  notes came to the attention of the sponsors for the first
5  time was when one of the Boies Schiller lawyers pulled them
6  out at a deposition and started questioning the principal of
7  one of the sponsors.  The attorneys who were physically
8  present quickly recognized there were no Bates numbers on the
9  documents and asked where they were, where they had come
10 from.  And that was the first that the sponsors learned that
11 there had been a production of documents that included notes
12 containing what the defendants, the sponsors, thought were
13 privileged communications with each other and with the
14 Alliance, which shares a common interest with them.  And I
15 will obviously come back to that point very shortly.
16         But again, going back to what you're going to see
17 in the redactions which are extremely limited, they are
18 statements of legal principle made by laypersons who have now
19 given you declarations saying, I was reciting what our
20 attorneys told us.  And that was apparently made clear, but
21 the scribner didn't happen to note that.  In four other
22 instances, the notes actually say, Our counsel tells us X,
23 and then there is a response, Well, our counsel says Y.
24         Now, BSF -- Boies Schiller has already seen this.
25 They agreed to the clawback, as we would suggest under the