**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ, and
SARAH CAROLINE AZUELA RASCON,

      Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a Au Pair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a ProAuPair,
20/20 CARE EXCHANGE, INC., d/b/a The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GoAu Pair, and
GOAUPAIR OPERATIONS, LLC,

      Defendants.

**ORDER REVERSING IN PART UNITED STATES MAGISTRATE JUDGE'S ORDER ON PLAINTIFFS' MOTION TO COMPEL AND FOR RELIEF**

This matter is before the Court on Plaintiffs' Objections (Doc. # 771) to an Order issued by United States Magistrate Judge Kathleen M. Tafoya on December 4, 2017 (the "Magistrate Judge's Order") (Doc. # 763), wherein the Magistrate Judge **denied** Plaintiffs' Motion to Compel and for Relief. In Plaintiffs' Motion to Compel and for Relief, Plaintiffs moved the Court to compel the Alliance for International Exchange (the "Alliance") to produce seventy-seven pages of the Alliance's communications **without** redactions. (Doc. # 710 at 1–2.) Plaintiffs also asked the Court to impose monetary sanctions on Defendants and to order Defendants to pay Plaintiffs' reasonable expenses incurred in regards to their Motion to Compel. (*Id.* at 15.)

For the following reasons, the Court affirms Plaintiffs' Objections (Doc. # 771) and reverses in part the Magistrate Judge's Order (Doc. # 763).

## I.     BACKGROUND

The factual and procedural background of this case has been extensively detailed in the Court's previous orders and the Magistrate Judge's recommendations. *See, e.g.*, (Doc. ## 240, 569, 828.) The matter now before the Court concerns a discovery dispute. Additional factual and procedural background is detailed here to the extent necessary to address Plaintiffs' Objections.

The Alliance is a trade association of ninety non-governmental organizations "comprising the international education and cultural exchange community in the United States." (Doc. # 717 at 7) (internal quotation omitted). It predates this action and

continues to conduct its business as this action is litigated. (Doc. # 763 at 2–3.)
Thirteen *au pair* sponsor organizations, including most Defendants, form an Au Pair
Program sub-group within the Alliance.[1] (*Id.* at 3) (internal citation omitted). Officers of
three Defendants serve on the Alliance's Board of Directors as Chairperson, Treasurer,
and general board member.[2] (*Id.* at 3.) After service of the instant suit, the Alliance's
Au Pair Program sub-group hosted discussions among its members to address this
litigation and potential responses to it. (Doc. # 717 at 2.) Hand-written notes taken by
and a draft letter composed by Alliance staff members at these discussions are the
subject of Plaintiffs' Objections. (Doc. # 771.)

Plaintiffs served an initial subpoena on the Alliance on or about January 30, 2017
(Doc. # 709-2), and an amended subpoena on May 25, 2017 (Doc. # 709-3), pursuant
to Federal Rule of Civil Procedure 45.[3] (Doc. # 763 at 3.) Defendants objected to the
subpoena on June 6, 2017. (Doc. # 709-4.) Plaintiffs and Defendants conferred on
several occasions about the subpoena and specifically about potential privileges
throughout June 2017. *See* (Doc. ## 709-5–709-7.)

---

[1] Defendants Au Pair International, Inc. and 20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange, are not members of the Alliance and do not join Defendants' briefing as to Plaintiffs' Motion to Compel and for Relief and as to Plaintiffs' Objections. *See* (Doc. # 763, 802).

[2] William Gertz, of Defendant American Institute for Foreign Study, d/b/a Au Pair in America, is the Chairperson of the Alliance's Board of Directors. Ellen Hoggard, of Defendant APF Global Exchange, NFP, d/b/a Au Pair Foundation, is the Board's Treasurer. Marcie Schneider, formerly of Defendant AuPairCare is a general member of the Alliance's Board of Directors. (Doc. # 763 at 3.)

[3] Plaintiffs state that they simultaneously provided Defendants notice and copies of the subpoena, as required by Rule 45(a)(4). (Doc. # 771 at 3.) Defendants do not contradict that statement but assert that "Defendants who participated in the conversations reflected in the Alliance production were never contacted about their comments[,] . . . were not asked about the context of their comments[, and] . . . were never asked if they intended to waive their privileges." (Doc. # 717 at 3.)

The Alliance produced a seventy-seven page, partially-redacted document of its communications to Plaintiffs on August 23, 2017. (Doc. ## 709-9–709-16.) In its cover letter to Plaintiffs, the Alliance stated that additional, potentially-responsive documents were still being reviewed. (Doc. # 709-8.) The Alliance proposed a claw-back agreement, "such that [the Alliance] could produce additional documents now while preserving [its] rights to clawback any documents which are determined to be privileged or otherwise confidential." (*Id.*) Plaintiffs promptly agreed to a claw-back arrangement (Doc. # 709-17) in an email to which the Alliance did not reply. The Alliance has not produced any documents since this correspondence.

On September 13, 2017, one day before the Chairperson of the Alliance's Board of Directors was to be deposed, Defendants sent a letter to Plaintiffs "assert[ing] that certain portions of the documents produced by the Alliance [on August 23, 2017,] are protected by the work product privilege, the common interest and joint defense doctrines, and possible the attorney client privilege." (Doc. # 709-22.) Defendants requested that Plaintiffs "immediately destroy or return to counsel for the Alliance the documents" in the August 23, 2017 production. (*Id.*) The parties conferred on September 15, 2017, but failed to reach agreement on the Alliance's production. (Doc. # 717 at 5.) Shortly thereafter, Defendants produced a redacted version of the Alliance's production and a privilege log. (Doc. # 709-1; Doc. # 717-5.) The privilege log contains ten entries and states that the bases for withholding information are "work product, [and] common interest" for all ten entries and also "attorney-client privilege reflecting legal advice of Jeffrey Allen, Esq. of Lawson & Weitzen, LLC" for five entries

4

(entries 2–6).[4]  (Doc. # 717-5.)  Mr. Allen previously served as counsel for Defendant Cultural Care, Inc.

On September 27, 2017, Plaintiffs filed their Motion to Compel and for Relief Under Federal Rules of Civil Procedure 26, 37, and 45, asserting that Defendants could not assert privileges over documents the Alliance produced on August 23, 2017.  (Doc. # 710.)  Plaintiffs asked the Court to compel production of **unredacted** versions of the documents and suggested that the Court sanction Defendants for their conduct.  (*Id.*)  Plaintiffs also requested that the Court impose monetary sanctions on Defendants and award Plaintiffs attorneys' fees and costs.  (*Id.*)  Defendants responded in opposition on October 6, 2017.  (Doc. # 717.)  Plaintiffs replied in support of their Motion to Compel and for Relief on October 11, 2017.  (Doc. # 721.)  This Court referred Plaintiffs' Motion to Magistrate Judge Tafoya pursuant to 28 U.S.C. § 636(b)(1)(A).  (Doc. # 712.)  The Magistrate Judge heard argument on November 15, 2017, *see* (Doc. # 757), and subsequently conducted an *in camera* review of the unredacted version of the Alliance's documents, *see* (Doc. # 763.)

The Magistrate Judge denied Plaintiffs' Motion to Compel and for Relief in her Order on December 4, 2017, concluding that "the common interest doctrine . . . protect[s] . . . privileged portions of the communications from disclosure."[5]  (Doc. # 763 at 13.)  Plaintiffs objected to the Magistrate Judge's Order pursuant to Rule 72(a) on

---

[4] The Court granted Mr. Allen's Motion to Withdraw as Attorney on June 21, 2016.  (Doc. # 316.)
[5] In this Order, the Magistrate Judge also granted the parties' Stipulated Motion to Amend Scheduling Order (Doc. # 747).  (Doc. # 763 at 13.)  The amendment of the scheduling order is not presently before the Court.

5

December 18, 2017.  (Doc. # 771.)  Defendants responded in opposition to Plaintiffs'
Objections on January 10, 2017.  (Doc. # 802.)

## II.      STANDARD OF REVIEW

Where a magistrate judge issues an order on a non-dispositive, pretrial order, "[a]
party may serve and file objections to the order to the district court within 14 days after
being served with a copy." Fed. R. Civ. Pro. 72(a).  The district court must modify or set
aside any part of the order that "is clearly erroneous or is contrary to law." Fed. R. Civ.
Pro. 72(a); 28 U.S.C. § 636(b)(a)(A); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992,
995 (10th Cir. 2000).

With regard to legal matters, the district court conducts an independent, plenary
review of the magistrate judge's order.  *In re Motor Fuel Temperature Sales Practice
Litigation*, 707 F. Supp. 2d 1145, 1148 (D. Kan. 2010); *see also* 12 Charles Alan Wright,
et al., Federal Practice & Procedure § 3069 (2d ed. 2017).  Under the 'contrary to law'
standard, the reviewing court "set[s] aside the magistrate order only if it applied an
incorrect standard," *Dias v. City & Cty. of Denver*, No. 07-cv-00722-WDM-MJW, 2007
WL 4373229, *2 (D. Colo. Dec. 7, 2007) (internal quotations omitted), or applied the
appropriate legal standard incorrectly, *Kissing Camels Surgery Ctr., LLC v. Centura
Health Corp.*, No. 12-cv-3012-WJM-BNB, 2014 WL 5599127, *1 (D. Colo. Nov. 4,
2014).

As to factual findings by the magistrate judge, the 'clearly erroneous' standard
"requires that the reviewing court affirm unless it 'on the entire evidence is left with the
definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v.*

*Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). This is a deferential standard. *In re Motor Fuel Temperature Sales Practice Litigation*, 707 F. Supp. 2d at 1147.

### III.   ANALYSIS

### A.   RELEVANT LAW

Federal Rule of Civil Procedure 26(b)(1) requires production of "any **nonprivileged** matter that is relevant to any party's claim or defense and proportional to the needs of the case." (Emphasis added.) The Alliance's documents satisfy the broad relevancy standard of Rule 26. The question for the Court is whether Plaintiffs' discovery request for the Alliance's unredacted documents covers privileged information. Privileges "further the administration of justice and should not be set aside lightly." *Plaza Ins. Co. v. Lester*, No. 14-cv-01162-LTB-CBS, 2015 WL 3528336, *4 (D. Colo. June 4, 2015) (internal quotation omitted). However, federal courts "narrowly construe all privileges."[6] *Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710 (1074); *see also Herbert v. Lando*, 441 U.S. 153, 175 (1979) ("Evidentiary privileges in litigation are not favored."). The party resisting discovery and asserting privilege bears the burden of establishing that

---

[6] Because the majority of the governing substantive law in this case is federal law, the federal common law of privileges governs. *See Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990); F.R.E. 501.

the privilege applies. *Peat, Marwick, Mitchell &Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); Fed. R. Civ. P. 26(b)(5).

Defendants assert two privileges: (1) work product privilege, and (2) attorney-client privilege. *See* (Doc. # 717-5.) Work product privilege is governed by the "uniform federal standard embodied in [Rule] 26(b)(3*)." Frontier Ref., Inc. v. Gorman-Rupp, Co., Inc.*, 136 F.3d 695, 703 n.10 (10th Cir. 1998) (quoting *United Coal Co. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)). The privilege protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial **by or for [a] party or its representative**." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). However, such materials may be discovered if the party requesting production shows that it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Martin v. Monfort, Inc.*, 150 F.R.D. 172, 172–73 (D. Colo. 1993) (describing the sequential approach to resolving work product privilege claims). Work product privilege exists because "[p]roper preparation of a client's case demands that [counsel for a party] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495 (1947). Accordingly, "work product protection only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006).

The attorney-client privilege protects "confidential communications **by a client to an attorney** made in order to obtain legal assistance."[7] *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records*, 697 F.2d 277, 278 (10 Cir. 1983) (emphasis added) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The "mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege," *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995); rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client," *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). Another critical component of the privilege is "whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence." *In re Qwest Commc'n Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985)). The purpose of attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

---

[7] Consequently, the privilege directly protects confidential communications **from** the **client** to the attorney "but only a derivative protection for communications **from** the **attorney** to the client, and only then to the extent that the responsive attorney communications reveal the substance of protected communications from the client." 1 Paul R. Rice, Attorney-Client Privilege in the U.S. § 5:2 (2017); *see also In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) ("it is generally also recognized that 'the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client" (internal quotation omitted)).

It is well-settled that when privileged communications are voluntarily disclosed to a third-party, the privilege is waived. The Tenth Circuit explained, "the confidentiality of communications covered by [a] privilege must be jealously guarded by the holder of the privilege lest is be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *United States v. Ryans*, 902 F.2d 731, 741 n.13 (10th Cir. 1990) (internal quotation omitted). The proponent of the privilege bears the burden of establishing non-waiver. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868-MSK-KMT, 2014 WL 3732943, *5 (D. Colo. July 29, 2014). Because work product privilege and attorney-client privilege are "two distinct concepts," different standards for waiver apply and "waiver of one does not necessarily waive the other." *Id.*; *see also United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975) ("the work-product doctrine is distinct from and broader than the attorney-client privilege."). Work product privilege is waived "when protected materials are disclosed in a manner which 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Martin*, 150 F.R.D. at 174 (quoting *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 590 (N.D.N.Y. 1989)). In contrast, attorney-client privilege is waived by **any** voluntary disclosure. *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989); *Ryans*, 903 F.2d at 741 n.13 ("The attorney-client privilege is lost if the client discloses the substance of any otherwise privileged communication to a third party.").

The common interest doctrine, also known as the joint defense doctrine, is an exception to the general rule that a privilege is waived when the communication at issue

is disclosed to a third party.[8]  *Roe v. Catholic Health Initiatives Colo.*, 281 F.R.D. 632,

638 (D. Colo. 2012) (citing *In re Qwest Commc'n Intern. Inc.*, 450 F.3d at 1195).  The

doctrine operates "as a shield to preclude waiver of [a privilege] when a disclosure of

confidential information is made to a third party who **shares a community of interest**

with the represented party."  *Frontier Ref., Inc.*, 136 F.3d at 705 (emphasis added).  A

"community of interest" exists "where different persons or entities have an **identical**

**legal interest** with respect to the subject matter of a communication between an

attorney and a client concerning legal advice . . . The key consideration is that the

nature of the interest be **identical**, not similar."  *Id.* (emphases added) (quoting *NL*

*Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230–31 (D.N.J. 1992)); *see*

*Gebremedhin v. Am. Family Mut. Ins. Co.*, No. 13-cv-02814-CMA-NYW, 2015 WL

4272716, *6 (D. Colo. July 15, 2015), *objections overruled*, 2015 WL 12967849 (D.

Colo. Aug. 18, 2015).  In short, the common interest doctrine is designed "to protect

communications between co-defendants or co-litigants."  *Roe*, 281 F.R.D.  at 638 (citing

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3rd Cir.

1991) ("[c]ourts have also held that the client may disclose communications to co-

defendants or co-litigants without waiving the privilege"); *In re Grand Jury Proceedings*,

156 F.3d 1038, 1042–43 (10th Cir. 1998) ("to establish a joint-defense privilege, [the

party is] required to demonstrate (1) the documents were made in the course of a joint-

---

[8] Because the common interest doctrine is "merely an extension of the attorney-client privilege
and the work-product doctrine," for documents or information to be eligible for protection under
the common interest doctrine, "it must be established that the materials fall within the ambit of
either the attorney-client privilege or the qualified immunity afforded to work product."  *Metro*
*Wastewater Reclamation Dist. v. Continental Cas. Co.*, 142 F.R.D. 471, 478 (D. Colo. 1998)
(citing, *e.g.*, *In re Grand Jury Subpoenas*, 902 F.2d 244 (4th Cir. 1999)).

defense effort; and (2) the documents were designed to further that effect.")).  A common commercial interest and a common desire for the same outcome in a legal matter are **not** sufficient to establish a common interest.  *In re Urethane Antitrust Litigation,* MDL No. 1616, 2013 WL 4781035, *2 (D. Kan. Sept. 5, 2013); *United States v. Hudson*, No. 13-20063-01-JWL, 2013 WL 4768084, *2 (D. Kan. Sept. 5, 2013).

**B.    THE MAGISTRATE JUDGE'S ORDER**

The Magistrate Judge made the following findings of fact about the Alliance's redactions:

> Upon review of the notes *in camera*, the [C]ourt finds that the notes are all dated after the filing of this litigation and that the redacted portions of the notes do reflect communications about the issues underlying the claims in this lawsuit between Defendants who are all signatories to a Joint Defense Agreement and two staff members of the Alliance who are neither defendants in this suit nor signatories to the Joint Defense Agreement.

(Doc. # 763 at 3–4.)

The Magistrate Judge first concluded that the redacted material is "either attorney-client privileged or work product privileged, and sometimes both." (*Id*. at 10.) She explained that the redacted notes evidenced that Defendants and the Alliance's staff members communicated about the instant lawsuit and that their communications were "quite obviously 'based on attorney advice' even though many of the communications did not quote or paraphrase the actual advice rendered by an attorney." (*Id*. at 9) (citing *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 460 F. Supp. 2d 915, 919–20 (S.D. Ind. 2006); *Catholic Health Initiatives Colo.*, 281 F.R.D. at 637). "The redacted information uniformly involved the mental impressions, conclusions, opinions, or legal theories of the speaking Defendant representative, often

directly attributable to the party's legal advice," the Magistrate Judge described, and it all "appears to have been prepared in anticipation of litigation by or for a party." (*Id*. at 9–10.) After determining that the work product privilege and the attorney-client privilege protected the redactions from discovery, the Magistrate Judge observed that "the information was shared with members of the Alliance who are non-parties" and therefore moved on to the common interest doctrine. (*Id*. at 10.)

The Magistrate Judge ultimately decided that the common interest doctrine protects the redacted portions of the Alliance's documents. (*Id*. at 13.) It appears that the Magistrate Judge considered numerous factors in arriving at her conclusion. *See* (*id*. at 10–13.) First, the Magistrate Judge inferred that the Alliance "clearly considered itself to be working in concert with its members on the legal of [sic] issue of applicability of federal and state wage laws to *au pairs*," citing the Alliance's use of first person, plural pronouns (e.g., "we") and its lobbying efforts. (*Id*. at 10.) Second, the Magistrate Judge determined that the Alliance "may be considered as a 'potential defendant'" in this action. (*Id*. at 11–12.) She explained that Plaintiffs' allegations that Defendants "cheated *au pairs* out of even minimum wage," "intentionally confuse[d] them about their rights," and "conspired and agreed to fix all of their sponsored standard *au pairs*' weekly wages" at an artificially depressed wage, *see* (Doc. # 395 at 4, 19), "could be made against the Alliance as well considering the Alliance's own lobbying efforts" (Doc. # 763 at 11–12). The Magistrate Judge thus reasoned that "the Alliance could be named, at the very least, as an active aider and abettor of this so-called cartel, or indeed, as a co-conspirator." (*Id*. at 12.) Finally, the Magistrate Judge stated that the interests of the

Alliance and Defendants are "identical" because "the Alliance is acting in complete conformance with the position taken by . . . Defendants" in "[the Alliance's] independent efforts to retain the current method of paying stipends." (*Id.* at 11.)

For these reasons, the Magistrate Judge concluded that the common interest doctrine applies to the Alliance's redacted documents. (*Id.* at 13.) She noted that there "is no necessity to address the subject of waiver of privilege by disclosure to third parties." (*Id.*) Accordingly, the Magistrate Judge denied Plaintiffs' Motion to Compel and for Relief (Doc. # 710) and left all restrictions in place. (Doc. # 763 at 13.)

## C. APPLICATION

The Court now sets aside the Magistrate Judge's Order to the extent that it denied Plaintiffs' Motion to Compel and for Relief because the Magistrate Judge's conclusion is contrary to law. *See* Fed. R. Civ. Pro. 72(a); 28 U.S.C. § 636(b)(a)(A). The Magistrate Judge applied the appropriate legal rules to Plaintiffs' request for production of the Alliance's unredacted documents but did so incorrectly as described below.

The Court accepts as true the Magistrate Judge's factual findings, *see* (Doc. # 763 at 3–4), but disagrees with her legal conclusion that the redacted portions of the Alliance's documents are protected by "either attorney-client privileged or work product privileged, and sometimes both," (*id.* at 10). The Magistrate Judge's brief analysis of these privileges conflates the requirements of work product privilege and of attorney-client privilege. *See* (*id.* at 9–10.) The Court addresses each privilege separately in recognition that they are "distinct." *See Nobles*, 422 U.S. at 238 n.11. The Court then

turns to whether Defendants waived any privilege, and if so, whether the common interest doctrine excuses the waiver.

### 1. <u>Work Product Privilege</u>

Work product privilege does not protect the Alliance's documents because the documents—handwritten notes taken at meetings between the Alliance's staff members and Defendants—were not "prepared in anticipation of litigation or for trial **by or for [a] party or its representative** (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *See* Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).

Defendants fail to meet their burden to show that the documents were prepared "by or for [a] party or its representative." Every entry in Defendants' privilege log invokes "work product" but indicates that Lisa Hines, Ilir Zherka, or another "Alliance staff" member was the author of each redacted document. *See* (Doc. # 717-5.) In short, the documents were created by the Alliance's non-legal staff, as the Magistrate Judge found as a matter of fact. *See* (Doc. # 763 at 3.) The Alliance and its staff members are not party to this action. Nor is the Alliance a representative of Defendants in this action. Defendants stated as much in the Magistrate Judge's hearing: "The Alliance is not an agent or representative here. . . . They are a nonparty separate entity." (Doc. # 761 at 41.) Accordingly, Defendants cannot show that the documents were prepared "**by or for [a] party or its representatives**." The work product privilege does not protect the Alliance's notes as a matter of law. *See, e.g., Kurlander v. Kroenke Arena Co., LLC*, No. 16-cv-02754-WYD-NJW, 2017 WL 3084473, *5 (D. Colo. July 20, 2017) (holding that a party and a third party must have a relationship identified

in Rule 26(b)(3) for the work product doctrine to extend to the third party's communications); *Bohannon v. Honda Motor Co. Ltd.*, 127 F.R.D. 536, 539 (D. Kan. 1989) ("work product status does not apply to documents . . . received from a third party.").

The Magistrate Judge's determination that the information exchanged "was quite obviously 'based on attorney advice'" and "uniformly involved the mental impressions, conclusions, opinions, or legal theories of the speaking Defendant representative, often directly attributable to the party's received legal advice" is insufficient to satisfy Rule 26(b)(3)'s requirement that a document must be prepared "by or for [a] party or its representative."[9] *See* (Doc. # 763 at 9–10.)  Her analysis appears to be an extension of her statement of law that "[w]here a client's discussion or writing is **based on** attorney advice, the privilege is extended to that communication, because 'such statements involve counsel's advice and/or mental impressions.'"[10]  (*Id.* at 7) (quoting *Reginald Martin Agency, Inc.*, 460 F. Supp. 2d at 919–20; *Catholic Health Initiatives Colo.*, 281 F.R.D. at 637).  However, the Magistrate Judge's understanding of this legal issue is imprecise.

The cases the Magistrate Judge relied on, *Reginald Martin Agency, Inc.*, and *Catholic Health Initiatives Colorado*, do **not** establish a broad principle that where a

---

[9] Defendants assert that the Magistrate Judge properly concluded that the redactions are privileged work product because they "contained legal advice and the mental impressions of Defendants and their counsel."  (Doc. # 802 at 11.)  The Court rejects Defendants' argument for the same reasons it disagrees with the Magistrate Judge's legal analysis.

[10] The Magistrate Judge describes her understanding of this principle in her overview of attorney-client privilege.  *See* (Doc. # 763 at 7.)  Her overview of work product privilege does not elaborate on Rule 26(b)(3)'s requirement that a document must be prepared "by or for another party or its representative."  *See* (*id.* at 8–9.)

client's communication is based on attorney advice, work product privilege is extended to the communication. In *Reginald Martin Agency, Inc.*, for example, the defendant argued that communications between the six plaintiffs outside the presence of their counsel were discoverable because the common interest doctrine did not apply. 460 F. Supp. 2d at 917. The district court, applying Indiana law, *id.*, rejected the plaintiffs' position that **any** communications among themselves, even those outside the presence of counsel, were protected so long as they discussed the lawsuit, *id.* at 19–20. The court held that for conversations that occurred outside the presence of counsel, the communications would need to "not only concern the lawsuit, but also implicate counsel's legal advice or mental impressions." *Id.* at 20. The court explained by way of example:

> [I]f outside of counsel's presence Plaintiffs discussed their counsel's advice on how to make a good impression on the jury during trial, where a witness might be vulnerable on cross examination, or counsel's impressions of the strength of Plaintiffs' damages claims, such statements among the Plaintiffs would be protected. This is so **because such statements involve counsel's advice and/or mental impressions**. However, if outside of counsel's presence the Plaintiffs were discussing their *personal views* concerning how they should conduct themselves in the courtroom, the credibility of witnesses, or the amount of damages that might be awarded, such statements among the Plaintiffs would not be protected. This is so because such statements do not involve counsel's legal advice or mental impressions. Rather, such statements involve Plaintiffs' personal views and opinions.

*Id.* (emphasis added). *Reginald Martin Agency, Inc.* is easily distinguished from the matter now before this Court. Unlike in *Reginald Martin Agency, Inc.*, where co-plaintiffs were communicating amongst themselves, the material at issue in this case are documents created by a non-lawyer **third party**, reflecting the third party's mental

impressions of Defendants' statements. *Reginald Martin Agency, Inc.* did not address the documents of a third party and is thus inapposite.

The Magistrate Judge also misunderstands the scope of work product privilege. Her conclusion—very similar to Defendants' argument[11]—that a Defendant's employee's ("the speaking Defendant representative," in her terms) "mental impressions . . . opinions, or legal theories" are protected as work product where they are "attributable to the party's received legal advice" grossly overstates work product privilege's reach. *See* (Doc. # 763 at 9–10.) The Court agrees with Plaintiffs that the Magistrate Judge's Order and Defendants' argument "effectively extends work product protection to anything [a party's] employees write or say about the litigation, and in doing so converts every waiver of privilege into an invocation of work product protection." *See* (Doc. # 771 at 15.) The Tenth Circuit is clear that work product privilege concerns the mental impressions of **counsel**:

> The Supreme Court has stated that, "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Nobles,* 422 U.S. at 238. We have said the same: "the work product doctrine is intended only to guard against divulging the attorney's strategies or legal impressions." *Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir. 1995). This understanding of the work-product doctrine was "substantially incorporated in Federal Rule of Civil Procedure 26(b)(3)." *Upjohn Co.,* 449 U.S. at 398. Ever since the Supreme Court first articulated the work-product doctrine in *Hickman v. Taylor*, the scope of discovery under Rule 26 has been understood to preclude "inquiries into the files and the mental impressions of an attorney." 329 U.S. at 510.

---

[11] Defendants argue that "discussions concerning this litigation, among and between the Alliance and its members are the very essence of work product" because work product privilege does not require an attorney to be involved. (Doc. # 717 at 6.)

*Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1185 (10th Cir. 2013); *see also Grace United Methodist Church,* 451 F.3d at 668 ("work product protection only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation").

For these reasons, the Court concludes that the Magistrate Judge's conclusion that the redactions are protected by work product privilege is contrary to law and must be set aside. The five entries on the privilege log for which "work product, common interest" is the only stated basis for redaction (entries 1, 7–10) are therefore not privileged. *See* (Doc. # 717-5).

### 2. **Attorney-Client Privilege**

The Court now turns to whether the remaining five redactions (entries 2–6 on the privilege log) are, as Defendants assert, protected by "[a]ttorney-client privilege reflecting advice from Jeffrey Allen, Esq. of Lawson & Weitzen LLP." *See id.* It is undisputed that confidential communications between Mr. Allen and his client, Defendant Cultural Care, Inc., are protected by attorney-client privilege if Defendant Cultural Care, Inc. was seeking counsel about this litigation. *See In re Qwest Commc'n Intern. Inc.*, 450 F.3d 1179, 1185. Thus, to the extent that the five redactions involved or are "based on [Mr. Allen's] advice," the Court agrees with the Magistrate Judge's conclusion that attorney-client privilege protects the five remaining redactions. *See* (Doc. # 763 at 9–10.)

### 3. Waiver

The Court agrees with Defendants that "the real question presented by Plaintiffs' [Motion to Compel and Objections] is whether Defendants waived [attorney-client] privilege by discussing that legal advice with each other and employees of the Alliance." *See* (Doc. # 802 at 4.) Defendants bear the burden of establishing non-waiver. *See L-3 Commc'ns Corp.*, 2014 WL 3732943 at *5. As the Court previously explained, attorney-client privilege is waived by **any** voluntary disclosure. *Bernard*, 877 F.2d at 1465; *Ryans*, 903 F.2d at 741 n.13.

The Court concludes that Defendant Cultural Care, Inc. waived its attorney-client privilege over its communications with its counsel, Mr. Allen, when it discussed those communications with the Alliance's staff members at the Alliance's meetings. *See* (Doc. # 717-5.) Alliance's staff members, and the Alliance itself, are third parties to this case. The other sponsor organizations are co-defendants to Defendant Cultural Care, Inc. but had separate counsel. And there is no doubt that Defendant Cultural Care, Inc. did discuss its privileged communications with the Alliance; the privilege log shows that the five redactions at issue related to "[d]iscussion on regulatory advocacy in connection with litigation status and posture." *See* (Doc. # 717-5.) By sharing its privileged communications with third parties, Defendant Cultural Care, Inc. waived its attorney-client privilege. *See Catholic Health Initiatives Colo.*, 281 F.R.D. at 636. The parties do not dispute seriously dispute this point.[12] *See* (Doc. # 710 at 10–12; Doc. # 802 at 4–8.)

---

[12] Defendants assert that attorney-client privilege was not waived because "Defendants share a common interest with the Alliance." (Doc. # 802 at 7.) It appears to the Court that Defendants

### 4. **The Common Interest Doctrine**

Having applied the general rule of waiver to the five remaining redactions (entries 2–6 in the privilege log, *see* (Doc. # 717-5)), the Court now turns to whether the common interest doctrine—an exception to that general rule, *Catholic Health Initiatives Colo.*, 281 F.R.D. at 638—shields the redactions at issue from disclosure. As the Court explained above, the common interest doctrine "preclude[s] waiver of [a privilege] when a disclosure of confidential information is made to a third party" who has an "**identical legal interest** with respect to the subject matter of a communication between an attorney and a client concerning legal advice." *Frontier Ref., Inc.*, 136 F.3d at 705 (emphasis added). "The doctrine does not apply when the parties merely have similar legal interests or when the interests are solely commercial or business in nature." *Servicemaster of Salina, Inc. v. United States*, No. 11-1168-KHV-GLR, 2012 WL 1327812, *3 (D. Kan. April 17, 2012).

The common interest doctrine does not protect the five redactions at issue because Defendant Cultural Care, Inc., the holder of the attorney-client privilege, disclosed the privileged information to the Alliance, which does **not** have an identical legal interest. Defendants' argument, that "[w]ith respect to this litigation, the Alliance and Defendants have an identical interest—to prevail," an argument the Magistrate Judge adopted, is inaccurate. *See* (Doc. # 717 at 13; Doc. # 763 at 11.) For Defendants to "prevail" in this action is for them to escape liability for the underpayment

---

collapse waiver and the common interest doctrine into one inquiry. The Court addresses Defendants' lengthy argument about the common interest doctrine in the next section.

of au pairs under the FLSA or state minimum wage laws.  The Alliance does not, and cannot have, that interest because the Alliance cannot be held liable for underpayments to *au pairs*.  The Alliance is differently-situated to Plaintiffs' claims than Defendants are, for the Alliance is not an employer of *au pairs* and did not pay *au pairs*.  In short, the Alliance has no interest in escaping liability, unlike Defendants.  *See Servicemaster*, 2012 WL 1327812 at *4 (holding that plaintiffs' and third parties' interests were not identical where third parties would not be entitled to the same tax deductions as plaintiffs if plaintiffs' interpretation of the law was upheld).  Therefore, though the Alliance and Defendants may share a common interest in retaining the current method of paying *au pairs*, *see* (Doc. # 802 at 7), it is a common business or commercial interest.  *See Servicemaster*, 2012 WL 1327812 at *3.  Defendants thus have failed to carry their burden to show an identical legal interest with the Alliance.  The common-interest doctrine does not protect the attorney-client privileged information Defendant Cultural Care, Inc. divulged to third party the Alliance.

The Magistrate Judge's conclusion that Defendants and the Alliance have an identical legal interest in "retain[ing] the current method of stipends" is contrary to law.  *See* (Doc. # 763 at 11.)  That is not an identical legal interest; it is a business or commercial interest.  *See Servicemaster*, 2012 WL 1327812 at *3.  The Magistrate Judge also erred in stating that "the Alliance could be named . . . an active aider and abettor" or "a potential defendant" in this action.  See (Doc. # 763 at 12.)  As the Court has discussed at length, the Alliance cannot be named a defendant to Plaintiffs' claims because the Alliance is not responsible for paying *au pairs*.

Additionally, the Magistrate Judge's analysis is contrary to law in part because it did not address waiver and instead went directly from privileges to the common interest doctrine. *See* (Doc. # 763 at 13) ("Having found that the common interest doctrine applies between the Alliance and Defendants . . . , there is no necessity to address the subject of waiver of privilege."). The common interest doctrine is an exception to the general rule of waiver, and a court must determine that a party waived a privilege before it can consider whether the exception applies. Finally, the Court observes that the Magistrate Judge's description of the common interest doctrine relies largely on Colorado's privilege doctrine. *See* (*id.* at 4–5.) Federal common law—not state law— governs this case, as the parties agree and this Court has explained. (Doc. # 710 at 8 n.7; Doc. # 717 at 6.)

The Court thus concludes that the common interest doctrine does not shield the five attorney-client privileged redactions from discovery. The Magistrate Judge's Order is set aside because its application of the common interest doctrine is contrary to law.

### 5. **Plaintiffs' Request for Costs, Attorneys' Fees, and Sanctions**

Plaintiffs also requested in their Motion to Compel and for Relief an award of costs, attorneys' fees, and sanctions against Defendants to pay for "Plaintiffs' expenses associated with this dispute." (Doc. # 710 at 15.) The Magistrate Judge did not address this request, presumably because she did not grant Plaintiffs' motion. *See* (Doc. # 763.) Plaintiffs did not raise their request in their Objections to the Magistrate Judge's Order. *See* (Doc. # 771.) The Court addresses Plaintiffs' request for costs, fees, and sanctions in this Order in the interest of judicial efficiency.

Federal Rule of Civil Procedure 37 governs costs and fees related to discovery disputes. Where, like here, a motion to compel disclosure or discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court "must **not** order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response or objection was **substantially justified**; or (iii) other circumstances make an award of expenses unjust." *Id*. (emphases added). Substantial justification requires that an argument or response is "justified to a degree that could satisfy a reasonable person," but it need not be correct. *Pierce v. Underwood*, 487 U.S. 552, 565, 566 n.2 (1988). *See also Peterson v. Hantman*, 227 F.R.D. 13, 16 (D.D.C. 2005) ("a party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the action" (quoting *Pierce*, 487 U.S. at 565)).

In this case, the Court has reviewed Defendants' Response (Doc. # 717) to Plaintiff's Motion to Compel and for Relief and the Magistrate Judge's Order (Doc. # 763), and is of the opinion that Defendants' opposition to Plaintiffs' discovery request was substantially justified. The fact that this Court and the Magistrate Judge reached opposite conclusions as to the applicability of privileges and the common interest doctrine is evidence that reasonable people could—and do—differ as the

appropriateness of Defendants' and the Alliance's actions. Pursuant to Rule 37(a)(5)(A)(II), the Court therefore declines Plaintiffs' request for costs, attorneys' fees and sanctions.

## IV.    CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Plaintiffs' Objections (Doc. # 771) to the Magistrate Judge's Order (Doc. # 763) are SUSTAINED;

2.  The Magistrate Judge's Order (Doc. # 763) is VACATED as an Order and is instead construed as a Report and Recommendation, which is ADOPTED IN PART **only** as to its recommendation that the parties' Stipulated Motion to Amend Scheduling Order (Doc. # 747);

3.  Defendants and the Alliance are ORDERED to provide Plaintiffs **unredacted** versions of the Alliance's documents at issue.

DATED:  February 12, 2018

BY THE COURT:

Christine M Arguello

_____

CHRISTINE M. ARGUELLO
United States District Judge