IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ, and
SARAH CAROLINE AZUELA RASCON,

  Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a Au Pair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a ProAuPair,
20/20 CARE EXCHANGE, INC., d/b/a The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GoAu Pair, and
GOAUPAIR OPERATIONS, LLC,

  Defendants.

**ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND VACATING IN PART DOC. # 624, PREVIOUS ORDER DENYING IN PART PLAINTIFFS' MOTION TO COMPEL RESPONSE TO DOCUMENT REQUEST NO. 16**

This matter is before the Court on Plaintiffs' Motion for Reconsideration of the Order (Doc. # 624) Denying Motion to Compel Production of Defendant American Institute for Foreign Study's Financial Records (the "Motion for Reconsideration"). (Doc. # 786.) Because Plaintiffs adequately allege misrepresentation by Defendant American Institute for Foreign Study ("AIFS") and the disclosure of new information, Plaintiffs' Motion for Reconsideration is granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' Motion for Reconsideration concerns the discovery of financial information from only one Defendant, AIFS. AIFS operates five programs "for purposes of foreign study or cultural exchange," (Doc. # 814 at 3); relevant here is its Au Pair in America ("APIA") program.

Plaintiffs made their First Request for the Production of Documents on March 3, 2016. (Doc. # 787-2.) Document Request Number 16 requested from each Defendant:

> Your audited or unaudited **financial statements, including documents sufficient to show your annual revenue and income derived from participating in the *au pair* program** during each year in which you have participated in the program.

(*Id.* at 7) (emphasis added). Plaintiffs filed their Motion to Compel Response to Document Request No. 16 from Defendants Apex, 20/20, Agent Au Pair, AIFS, Au Pair Care, Au Pair International, Cultural Care, Expert Au Pair, and Go Au Pair (the "Motion to Compel") on March 13, 2017. (Doc. # 507.)

2

On March 23, 2017, Defendant AIFS produced a six-page document, purporting to comply with Request No. 16. (Doc. # 515-8 at 4–9 (redacted.)) Each page reflects one year between 2009 and 2014 and contains eleven generic fields of information, such as "Revenues" and "Selling, General & Administrative Allocated Overhead." (*Id.*) AIFS explained to Plaintiffs:

> AIFS creates and maintains a single annual **financial statement** for all of its programs and entities; it does not maintain isolated financial statements for the APIA Program. Accordingly, the consolidated information contained in AIFS' financial statements incorporates data above five programs that are entirely unrelated to the instant litigation. . . . Notwithstanding, [the six-page document is] **financial information** prepared and compiled by [AIFS], which accurately demonstrates the actual revenue, allocated expenses and income of its APIA Program for the years 2009 through 2014. This information . . . allows Plaintiffs to make any and all financial contentions desired for the years relevant to the instant action.

(*Id*. at 3) (emphases added.)

Defendant AIFS timely responded to Plaintiffs' Motion to Compel on March 27, 2017, citing to the six-page document as evidence that "AIFS has provided Plaintiffs with **information** and data about the APIA's Program 'annual revenue and income' as well as its allocated expenses." (Doc. # 515 at 4) (emphasis added). Defendant AIFS argued that it was not required by law or regulation to makes its **financial statements** public and emphasized to the Court that "AIFS consolidated financial statements do not demonstrate revenue, expenses and income that is attributable solely to APIA." (*Id.* at 3–4.) Other named Defendants also responded, *see* (Doc. # 511, 607, 513, 517), and Plaintiffs replied in support of their Motion to Compel on April 3, 2017 (Doc. # 528).

United States Magistrate Judge Kathleen M. Tafoya granted Plaintiffs' Motion to Compel as to all named Defendants **except** AIFS in an Order on July 24, 2017 ("July 24

3

Order"). (Doc. # 624.) The Magistrate Judge found that: (1) the financial information sought by Plaintiffs was relevant; (2) Defendants had a legitimate expectation of confidentiality; (3) Plaintiffs had a compelling need to the information; and (4) the information was not available from other sources. (*Id.* at 15.) She therefore ordered named Defendants to "comply fully" with Request No. 16 and to "provide to Plaintiffs their audited or unaudited financial statements, including documents to show their annual revenue and income derived from participating in the *au pair* program during the period January 1, 2009 through present." (*Id.*)

With regard to AIFS, however, the Magistrate Judge denied Plaintiffs' Motion to Compel because she concluded that "AIFS has satisfied its burden of production with respect to [Request No. 16]." (*Id.* at 17.) The Magistrate Judge emphasized AIFS' argument that as to APIA individually, **financial statements** "sufficient to show annual revenue and income derived from participating in the *au pair* program . . . do not exist and strict compliance with the request is therefore impossible." (*Id.* at 16.) She also restated AIFS' position that the six-page production, "albeit in a different format, provides [Plaintiffs] all the information that would be covered by Plaintiffs' request." (*Id.*) Finding that Plaintiffs did not "further state why the [six-page] production was inadequate," the Magistrate Judge concluded that "Plaintiffs ha[d] failed in their burden 'to prove that the answers before the [C]ourt are incomplete, inadequate, or false.'" (*Id.* at 16–17.) Accordingly, the Magistrate Judge concluded that AIFS had fulfilled its burden of production by producing the six-page document. (*Id.* at 17.)

4

Several weeks after the July 24 Order, Plaintiffs deposed AIFS' CEO, William Gertz.[1]  *See* (Doc. # 787-8.)  Mr. Gertz testified that he is responsible for "oversight and management" of AIFS and five other divisions and is "generally familiar" with the financials of AIFS.  (*Id.* at 8, 30.)  He stated that AIFS "do[es] have a way" of "**accounting internally how each program uses [AIFS'] support** divisions," though he was unsure of the details of internal accounting.  (*Id*. at 19) (emphasis added.)  Similarly, he also testified that AIFS has **financial statements** that include revenues and costs and that the financial statements are **delineated "by division**."  (*Id.* at 25) (emphasis added); *see also* (*id.* at 27).  When shown the six-page document AIFS had produced to Plaintiffs in March 2017, Mr. Gertz said that he did not know where it came from and did not recognize its format.  (*Id.* at 25.)  Mr. Gertz acknowledged that he could not discern from the document **any** details of APIA's finances, such as how much APIA spent on marketing or how much revenue comes from host family fees versus *au pair* fees.  (*Id.* at 31–32.)

After Mr. Gertz's deposition, Plaintiffs contacted AIFS' counsel and again requested AIFS' financial statements on November 3, 2017.  (Doc. # 787-1.)  Plaintiffs stated that Mr. Gertz's deposition made clear that "segregated financial statements do exist" and that "the financial information that had been produced to Plaintiffs was inadequate and incomplete."  (*Id.* at 2.)  According to Plaintiffs, AIFS responded by inquiring whether it could again provide information in lieu of financial statements.  (Doc. # 786 at 6.)

---

[1] Mr. Gertz is also the current chairman of the Alliance for International Exchange.

Plaintiffs filed the instant Motion for Reconsideration of the July 24 Order on January 5, 2018. (Doc. # 786.) They argue that reconsideration is appropriate because Mr. Gertz's deposition showed "[the July 24] Order's factual basis is incorrect" and produced "new information . . . demonstrat[ing] the insufficiency" of AIFS's six-page production. (*Id.* at 2.) AIFS responded in opposition to reconsideration on January 26, 2018 (Doc. # 814), to which Plaintiffs replied on February 9, 2018 (Doc. # 836).

## II.    LEGAL STANDARDS FOR RECONSIDERATION

The Federal Rules of Civil Procedure do not explicitly authorize a motion for reconsideration. However, the Rules allow a litigant who was subject to an adverse judgment to file a motion to change the judgment pursuant to Rule 59(e) or a motion seeking relief from the judgment pursuant to Rule 60(b). *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). In this case, Plaintiffs move for reconsideration under Rule 60(b). (Doc. # 786 at 7–8.)

Relief under Rule 60(b) "is extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F.2d 1437, 1440 (10th Cir. 1990). A litigant shows exceptional circumstances by satisfying one or more of Rule 60(b)'s six grounds for relief from judgment. *Van Skiver*, 952 F.2d at 1243–44. These six grounds are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). In the Tenth Circuit, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Here, Plaintiffs assert that reconsideration is proper pursuant to Rule(60)(b)(2) for newly discovered evidence and pursuant to Rule 60(b)(3) for misrepresentation by AIFS. (Doc. # 836 at 2.)

### III. ANALYSIS

Newly-discovered evidence from Mr. Gertz's deposition indicates that AIFS materially misrepresented the availability of its financial information and that the July 24 Order was therefore based on the Magistrate Judge's misapprehension of the facts. Reconsidering and vacating the July 24 Order as to AIFS is appropriate for two reasons.

### A. THE AVAILABILITY OF APIA-SPECIFIC FINANCIAL INFORMATION

First, the Magistrate Judge took AIFS at its word that it does not have financial statements specific to APIA that satisfy Plaintiffs' Request No. 16 because their financial statements "do not segregate information by program and thus . . . do not demonstrate revenue, expenses and/or income solely attributable to APIA." (Doc. # 624 at 16) (quoting Doc. # 515-11 at 2). The Magistrate Judge concluded that "strict compliance with the request is therefore impossible." (*Id.*)

However, Mr. Gertz's deposition testimony is new evidence that flatly contradicts AIFS' representations. Mr. Gertz testified that he reviews cost and revenue numbers **by division**. (Doc. # 787-8 at 25) ("Q. . . . [D]o you know if the costs are delineated by division or are they delineated only AIFS wide? A. They would be by division."). Additionally, he was able to estimate that APIA accounts for twenty percent of AIFS' revenues. (*Id.* at 37.) These statements, in addition to his repeated references to sophisticated analyses by AIFS' chief financial officer and finance department (*see*, *e.g.*, *id.* at 12), is evidence that AIFS misrepresented that APIA-specific financial information is unavailable. Because the Magistrate Judge relied on these misrepresentations, reconsideration of the July 24 Order is appropriate pursuant to Rule 60(b)(2) and (3).

## B. THE INSUFFICIENCY OF THE SIX-PAGE PRODUCTION

Second, the Magistrate Judge credited AIFS' assertion that the six-page production, "albeit in a different format, provides [Plaintiffs] all the information that would be covered by Plaintiffs' [Request No. 16]."[2] (Doc. # 624 at 16.) She acknowledged that Plaintiffs argued that the six-page document does not provide all requested information but faulted Plaintiffs for "not further stat[ing] why the production was inadequate, what is missing that Plaintiffs believes [sic] is encompassed in their request, or how the production could be supplemented to satisfy the request for production." (*Id.*) Thus, the Magistrate Judge found that Plaintiffs did not meet their burden to prove that the six-page production was incomplete, inadequate, or false. (*Id.* at 17.)

---

[2] The Magistrate Judge stated that the Court's copy of the six-page production "contain[ed] no figures in the category boxes," as it was heavily redacted. (Doc. # 624 at 16 n.7.) In contrast, this Court has reviewed an unredacted version of the six-page production, which contains figures for each category. *See* (Doc. # 787-5.)

As a result of new evidence from Mr. Gertz's deposition, Plaintiffs can now prove that the six-page document AIFS produced does **not** satisfy Request No. 16. When Plaintiffs' counsel showed Mr. Gertz the six-page production during his deposition, Mr. Gertz testified that he did not recognize the format nor know who at AIFS composed the document. (Doc. # 787-8 at 25, 27.) Upon being asked to interpret the document, he was unable to identify details or draw conclusions about APIA's financial performance. (*Id.* at 29–34.) For example, Mr. Gertz was unable to discern how much APIA had spent on marketing in a year from the document. (*Id.* at 31–32) ("Q. What are the marketing costs for the year 2009 . . . that you paid out for the au pair program? A. I don't know."). Plaintiffs' counsel asked him, "From this document, which is the only document that has been provided to [P]laintiffs, if you cannot tell and if you are CEO of the company, what the marketing expenses were from 2009, would somebody who does not work at AIFS and is seeing this document for the first time be able to determine how much AIFS spent on marketing in 2009?"; Mr. Gertz flatly replied, "No." (*Id.* at 32.) He was also unable to determine what portion of APIA's revenue is from "host family fees versus au pair fees", (*id.*), to describe what the land costs category is, (*id.* at 28) ("Q. [D]o you know what land costs are? A. I don't. . . . I don't know exactly what's in that category"), and to explain what is included in the "selling, general and administrative allocated overhead" category, (*id.*). In short, Mr. Gertz—the CEO of AIFS—demonstrated that the six-page document insufficiently responds to Plaintiffs' Request No. 16. Reconsideration of the July 24 Order is therefore justified under Rule 60(b)(2).

## C. AIFS' INEFFICACIOUS ATTEMPT TO DISTINGUISH "FINANCIAL STATEMENTS" FROM "FINANCIAL INFORMATION"

The Court is not persuaded by AIFS' futile Response. AIFS now concedes that "[c]ertainly [it] has the ability to allocate revenues and expenses by division/program." (Doc. # 814 at 11.) However, it argues, program-specific allocations are not found in AIFS' "financial statements," which "make no such allocation by program/division and contain no financial information specific to the APIA Program." (*Id.*) AIFS suggests that program-specific financial data belongs to some other amorphous category of "financial information." (*Id.* at 10–13.) And Plaintiffs did not request "financial information" in Request No. 16, AIFS asserts; Plaintiffs asked only for "financial statements." Accordingly, AIFS reasons, Plaintiffs cannot now ask for any documents other than "financial statements." (*Id.* at 13.)

AIFS' distinction between "financial statements" and "financial information" rings hollow. This Court will not hold Plaintiffs to an AIFS-specific trifle of nomenclature. This is especially true given that Plaintiffs' Request No. 16 was not so narrowly-worded as AIFS would have the Court believe. Plaintiffs' requested each Defendant's "audited or unaudited financial statements, **including documents sufficient to show your annual revenue and income derived from participating in the *au pair* program** during each year in which you have participated in the program." (# 787-2 at 7) (emphasis added). The participle phrase "including documents sufficient to show . . ." clearly widens the scope of Plaintiffs' request beyond whatever a Defendant may identify as a "financial statement."

### D. ATTORNEYS' FEES AND COSTS

Plaintiffs also requested in their Motion to Compel an award of costs and attorneys' fees against AIFS to pay for Plaintiffs' expenses associated with this discovery dispute. (Doc. # 507 at 6.) The Magistrate Judge did not address this request, presumably because she did not grant Plaintiffs' Motion to Compel. *See* (Doc. # 624.) Plaintiffs did not raise their request in their Motion for Reconsideration. *See* (Doc. # 786.) The Court addresses Plaintiffs' request for costs and fees in this Order in the interest of judicial efficiency.

Federal Rule of Civil Procedure 37 governs costs and fees related to discovery disputes. Where, like here, a motion to compel disclosure or discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court "must **not** order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response or objection was **substantially justified**; or (iii) other circumstances make an award of expenses unjust." *Id*. (emphases added). Substantial justification requires that an argument or response is "justified to a degree that could satisfy a reasonable person," but it need not be correct. *Pierce v. Underwood*, 487 U.S. 552, 565, 566 n.2 (1988). *See also Peterson v. Hantman*, 227 F.R.D. 13, 16 (D.D.C. 2005) ("a party meets the 'substantially justified' standard when there is a 'genuine dispute' or if

11

'reasonable people could differ' as to the appropriateness of the action" (quoting *Pierce*, 487 U.S. at 565)).

In this case, the Court has reviewed AIFS's Response to Plaintiffs' Motion to Compel (Doc. # 515) and its Response to Plaintiffs' Motion for Reconsideration (Doc. # 814), and is of the opinion that AIFS' responses to Plaintiffs' Request No. 16 were **not** substantially justified. There is no justification for wasting the Courts' and Plaintiffs' resources with an unreasonable argument. Pursuant to Rule 37(a)(5)(A)(II), the Court therefore grants Plaintiffs' request for costs and attorneys' fees.

### IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' Motion for Reconsideration (Doc. # 786) is GRANTED;

2. The July 24 Order by Magistrate Judge Tafoya (Doc. # 624) is VACATED **only** to the extent that it denied Plaintiffs' Motion to Compel as to Defendant AIFS;

3. Defendant AIFS shall produce financial documents fully responsive to Plaintiffs' Request No. 16 on or before March 2, 2018.

4. Plaintiffs shall submit supplemental briefing as to the amount of costs and attorneys' fees it requests on or before March 2, 2018.

DATED: February 16, 2018

BY THE COURT:

*Christine M. Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge