IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al;
and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC., et al;

      Defendants.

---

**DEFENDANT INTEREXCHANGE, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant InterExchange, Inc. ("InterExchange") moves for summary judgment pursuant to Fed. R. Civ. P. 56 on the claims brought by Plaintiff Johana Paola Beltran ("Beltran") on behalf of herself and those similarly situated (collectively "Plaintiffs").

## I.  INTRODUCTION.

The purpose of the au pair program is outlined in the introduction to its regulations:  to afford foreign nationals the opportunity to live with an American host family and participate directly in the home life of that host family.  Although cast by some as "low-wage immigrant workers," au pairs are neither immigrants nor in the United States for the purpose of work.  They are temporary visitors to the United States to participate in a cultural exchange opportunity thoroughly regulated by the U.S. Department of State (DOS).  Plaintiffs' attempt to characterize InterExchange's

compliance with DOS regulations as widespread legal violations fundamentally misconstrues the au pair program and InterExchange's role in it.  Plaintiffs' claims do not succeed as a matter of law, and InterExchange is entitled to summary judgment on all claims.[1]

## II.   **ANTITRUST.**

In addition to the arguments set out in the master brief, nothing in the record supports a conclusion that InterExchange entered into any kind of agreement related to the amount, or the communication of the amount, of the stipend.  Plaintiffs allege the antitrust "conspiracy" to be an agreement to "fix" the au pair stipend at exactly $195.75 per week and to communicate the same to host families and au pairs.  (Doc. # 395 at ¶ 570; Doc. # 559 at pp. 4-5.)  However, Plaintiffs have failed to identify any evidence of an agreement between InterExchange and any other sponsor regarding setting the amount of the stipend or the communication of the same.  Prior to the lawsuit, InterExchange rarely discussed the stipend with other sponsors because it was clear what the stipend was based on DOS communications.  (Defs.' Appx. 922 at 272:3-14.) DOS repeatedly communicated to sponsors the specific amount of $195.75 and the specific formula DOS used to derive that figure.  (Id. 1004-10.)  InterExchange's communication of the $195.75 figure does not infer an agreement with any other sponsor that host families could not pay more.

---

[1] InterExchange joins the arguments presented in the master brief filed on behalf of all Defendants pursuant to the briefing logistics agreed to by the parties and approved by the Court.  (Doc. # 825.)

Active/47999365.4

InterExchange's membership in the Alliance for International Exchange ("Alliance") does not support the existence of a conspiracy because Plaintiffs' assertion that the Alliance is a vehicle through which the sponsors conspire is nothing but unsupported conclusion.  (Doc. # 395 at ¶¶ 128-29.)  Membership and involvement in a trade association, by itself, cannot establish the existence of a conspiracy for antitrust purposes.  Llacua v. W. Range Assoc., No. 15-1889-REB-CBS, 2016 WL 9735747, at *12-14 (D. Colo. June 3, 2016), adopted in relevant part by 2016 WL 9735748 (D. Colo. Sept. 6, 2016).  Nor does the mere fact that Alliance activities provide sponsors with an opportunity to talk to one another establish a conspiracy.  Id. at *15.  Plaintiffs have no evidence of InterExchange representatives discussing the "fixing" of the stipend or communication of the stipend with other sponsors in the context of Alliance meetings.  Plaintiffs must provide sufficient evidence of an actual *agreement* to which InterExchange was a party, and they have none.  See Llacua, 2016 WL 9735747, at *15 (finding that trade association statement to members to immediately adjust wage payments to the new DOL wage floor did not infer an instruction or agreement that the members could not pay more than the minimum).  Communication of $195.75 cannot establish a conspiracy as a matter of law because it is equally consistent with InterExchange communicating the amount repeatedly communicated to it by DOS. Llacua, 2016 WL 9735747, at *16.

Moreover, InterExchange cannot be part of a conspiracy to fix the stipend if it has no idea whether or not host families are paying in conformance with the alleged conspiracy.  Dahl v. Bain Capital Partners, LLC, 963 F. Supp. 2d 38, 48-49 (D. Mass.

3

2013) (summary judgment proper when alleged co-conspirator's actions were inconsistent with the conspiracy).  InterExchange does not collect information about the specific amount of the stipend host families pay to each au pair over and above $195.75.  (Defs.' Appx. 933 at ¶ 26, 1018-19.)  InterExchange has no idea whether or not host families are paying exactly $195.75 or something more.  InterExchange is entitled to summary judgment for lack of any price-fixing agreement.

## III.   **CIVIL RICO.**

InterExchange joins the civil RICO argument presented in the master brief. Although InterExchange has many families who have hosted more than one au pair, they are in no way obligated to use InterExchange from one year to the next, and InterExchange has no long-term exclusive agreements of any kind with host families. (Defs.' Appx. 931-32 at ¶ 21.)  Plaintiffs present no evidence of an "enterprise."

## IV.   **FLSA.**[2]

### a.  **Joint Employment – Burden of Proof and Elements of Claim.**

The precise test for joint employment has not been articulated in the Tenth Circuit.  However, one recent case considered the four factors set out in Bonnette v. Cal. Health & Water Agency, 704 F.2d 1465 (9th Cir. 1983) and the test set forth in Salinas v. Commercial Interiors Inc., 848 F.3d 125 (4th Cir. 2017).  See Sanchez v. Simply Right, Inc., No. 15-cv-00974, 2017 WL 2222601, at *6, n.13 (D. Colo. May 22, 2017) (adopting Magistrate Judge's review of the Bonnette factors but stating approval

---

[2] InterExchange addresses the issues of joint employment and overtime. InterExchange joins and incorporates herein the master brief arguments related to the room and board deduction.

Active/47999365.4

for the Salinas test).  The four Bonnette factors focus on whether the putative employer controls hiring and firing, rate and method payment, employment records, and work schedules and conditions.  Sanchez, 2017 WL 2222601, at *7.  The Salinas test looks at the totality of the circumstances but specifically considers whether there is joint supervision, joint authority over employer functions, whether the putative joint employers are under common control, where the services are performed, and the degree of permanency and duration of the relationship between the putative joint employers.  Salinas, 848 F.3d at 141-42.

InterExchange's responsibility is to monitor the entirety of an au pair's participation in the program, including all elements that do not involve the childcare that au pairs provide to their host families.  22 C.F.R. § 62.31(l).  The childcare that an au pair provides to his or her host family is only one piece of the overall au pair experience, and taken as a whole, InterExchange is not au pair employer.

  i. <u>The elements/factors defeat any notion of joint employment.</u>

   1. InterExchange does not have the right to "hire" or "fire" au pairs.

InterExchange does not "hire" au pairs.  It does not match or place an au pair with a host family or vice versa.  (Defs.' Appx. 928 at ¶ 7.)  Provided that they otherwise meet program requirements, it is the fact that a host family and au pair have decided to match with one another that entitles the au pair to visa sponsorship by InterExchange.[3] (Id. at ¶ 8.)  Some host families and au pairs pre-match and utilize InterExchange only

---

[3] And it is a U.S. Consular Official in the au pair's home country who determines if the au pair issued a J-1 visa.  (Defs.' Appx. 924.)

to facilitate the J-1 visa process.  (Id. at ¶ 9; Defs.' Appx. 920-21 at 200:17-202:15.)

InterExchange's agreement with its au pairs clearly states that it is not the au pairs'

employer and functions only as a visa sponsor.  (Defs.' Appx.  at 942.)[4]

Nor does InterExchange "fire" au pairs.  Either the host family or the au pair can

end the relationship at any time.  (Defs.' Appx. 905 at 113:24-114:5.)  The host family

can fire an au pair at any time, without InterExchange's permission, and can insist that

the relationship end immediately.  (Id. 914 at 78:5-10; 79:4-9.)  InterExchange can

remove an au pair only for overarching programmatic concerns or factors, such as

program ineligibility, accidents, illness, exploitation, or illegal acts on the part of the host

family or au pair.  (Id. 1009-10.)

2.   InterExchange does not control conditions of employment.

DOS regulations limit au pairs to working no more than 45 hours per week and

no more than 10 hours per day.  22 C.F.R. § 62.31(c)(2).  Au pairs enter into individual

agreements with their host families that address schedule, tasks, hours, and stipend,

subject to DOS regulations.  (Defs.' Appx. 929-30 at ¶ 13.)  Au pairs and host families

also enter into separate agreements with InterExchange.  (Id. 929 at ¶ 13.)  These

agreements describe generally the categories of duties that the regulations permit—

"child care and activities related to the care of children" —but they are non-exclusive

and non-specific to any particular host family.  (Id. 939.)  InterExchange does not

collaborate with host families in establishing au pairs' schedules or duties, except as

---

[4] DOS and its predecessor, USIA, informed InterExchange and other sponsors that au pairs and host families have an employment relationship but au pairs and sponsors do not.  (Defs.' Appx. 1004, 1005, 1009.)

6

needed to address a conflict and ensure that the host family is complying with DOS

regulations.  (Id. 931-32 at ¶¶ 19, 21.)  None of the duties that au pairs perform benefit

InterExchange in any way.  (Id. 931 at ¶ 20.)  The host family is responsible for its own

home; InterExchange enforces the *program* requirements in the regulations.

InterExchange's limited role in monitoring what duties au pairs are being asked to

perform does not indicate "control" over au pairs' work responsibilities or duties.  See

Sanchez, 2017 WL 2222601, at *8 (finding request by putative employer that employees

clean theaters "between 'box office close and two hours prior to theatre opening'" did

not constitute control over work schedules for purposes of joint employment analysis).

3. InterExchange did not determine the rate or method of<br>payment.

Since 2009, DOS has communicated to InterExchange that the minimum weekly

stipend is $195.75.  (Defs.' Appx. 1004-10.)  The DOS' publicized calculation is based

on 45 hours of work per week and includes a 40 percent credit for room and board,

approved, according to DOS, by the Department of Labor.  (Id.)  InterExchange's

agreements with au pairs and host families clearly refer to the stipend generally and to

$195.75 specifically as a minimum. (Id. 938, 940, 956, 958.)  If the host family pays

more than $195.75 per week, that payment is a matter of agreement between the host

family and the au pair.  (Id. 933 at ¶ 26.)  InterExchange does not participate in those

negotiations, nor does it track the ultimate stipend agreed upon.  (Id.)  InterExchange's

role is solely to ensure that the host family meets minimum program requirements.  Nor

does InterExchange dictate the method of payment.  The au pair agreement states, "If

paid by check, I agree to deposit or cash my Stipend within four (4) weeks of receiving

7

the Stipend from the Host Family." (Id. 940.)  The host family agreement states, "If

paying by check, Host Family must maintain sufficient funds in the applicable checking

account to fund all outstanding Stipend checks." (Id. 958.)  Aside from these minor

requests to ensure smooth payment, the host family and the au pair agree on the

method of payment.

> 4.   InterExchange does not maintain employment records or
>        perform the traditional functions of an employer.

The records that InterExchange maintains are those that relate to regulation

requirements that InterExchange must enforce as to au pairs and host families for

program participation:  the au pair's application, interview report, English evaluation,

child care references, character references, personality test results, education

certification, medical report, contact logs, and copies of other important visa-related

documents, such as the au pair's passport. (Defs.' Appx. 930 at ¶ 15.)  These materials

are required by the regulations. See 22 C.F.R. § 62.31.  Even if an au pair meets all

program requirements, he or she must match with a host family to receive visa

sponsorship and program participation.  (Id. 928 at ¶ 7.)  Thus, InterExchange's records

relate to *program participation*, not employment.

InterExchange does not perform traditional functions of an employer because

InterExchange does not track, report, or maintain records of the number of hours that au

pairs work each week.  (Defs.' Appx. 930-31 at ¶¶ 16, 19.)  DOS requires only that

InterExchange verify that host families stay within the 45-hours-per week, 10-hours-per

day limits in the regulations.  (Id.)  InterExchange also does not assign tasks to the au

pairs and does not evaluate the au pairs' performance of childcare duties.  Although the

host family pays fees to InterExchange to participate in the program, InterExchange does not receive any fees related specifically to the au pair's childcare duties. InterExchange does not pay taxes on behalf of any au pair and does not take any stipend or tax deductions related to the au pair.  (Id. 931-32 at ¶¶ 19-21.) InterExchange's responsibilities do not resemble the functions of an employer.

> 5. The relationship between InterExchange and any particular host family is of limited duration and permanency, and no common control exists.

InterExchange does not have any long-term relationships with host families. Although InterExchange has many families who have hosted more than one au pair over the years, host families are not obligated to use InterExchange from one year to the next and are not parties to exclusive agreements.  (Defs.' Appx. 931-32 at ¶ 21.) Host families are InterExchange's "clients" or "customers."  Although InterExchange and host families have to comply with DOS regulations, there is no common control of any kind among them.  (Id. 929 at ¶ 11.)

> 6. All of the au pairs' work is performed in the host families' homes.

Au pairs do not perform any work for InterExchange or on InterExchange's premises.  (Defs.' Appx. 931 at ¶ 19.)  Au pairs provide childcare solely to their host families, as requested by the host family wherever the host family happens to be.  (Id.)

The factors overwhelmingly weigh against a finding of joint employment, and InterExchange is entitled to summary judgment on all FLSA claims.

Active/47999365.4

**b.  Overtime – Burden of Proof and Elements.**

As discussed above and in the master brief, Plaintiffs first have to prove that InterExchange was an "employer" of the au pairs.  To recover overtime compensation, Plaintiffs have the burden of proving by a preponderance of the evidence the number of hours of overtime worked each week and the amount of wages due each pay period.  Brubach v. City of Albuquerque, 893 F. Supp. 2d 1216, 1224 (D.N.M. 2012); see also Archuleta v. Wal-Mart Stores, Inc., 543 F.3d 1226, 1233 (10th Cir. 2008) (it is employee's burden to prove the employer is violating the FLSA).  InterExchange was not an "employer," and Plaintiffs cannot provide evidence to meet their burden.

The overtime claim also fails for want of a class representative.  Beltran is not entitled to overtime pursuant to the Court's Order on Defendant's Motions to Dismiss (Doc. #258.)  The Court held that Plaintiffs stated a viable claim for overtime for any work performed only after January 1, 2015.  (Doc. #258 at p. 27.)  Beltran was an au pair in 2012.[5]  (Doc. # 395 at ¶¶ 374-75, 394-95.)  Plaintiffs also declined to request conditional certification of an overtime class for InterExchange, whereas they did so for the other FLSA Defendants, so no overtime class was certified.  (See Doc. #325 at pp. 3-4; Doc. #525 at pp. 4-5, 14.)  As no overtime class or class representative exists, InterExchange is entitled to summary judgment on the claim.  Williams v. Boeing Co., No. C98-761P, 2005 WL 2921960, at *5-7 (W.D. Wash. Nov. 4, 2005) (claim must be dismissed if no named plaintiff suffered injury during the relevant time period).

---

[5] An overtime claim against InterExchange remains in the operative Second Amended Complaint.  (Doc. # 395 at ¶¶ 355-63; 602.)

## V.    TRAINING (FLSA AND NY).

### a.  Training as Compensable Time Under The FLSA.

InterExchange joins the argument regarding training time under the FLSA presented in the master brief.

### b.  Training Time Under New York Law – Burden of Proof and Elements.

Plaintiffs have the burden of proving that they performed work for which they were not properly compensated.  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 41-42 (E.D.N.Y. 2015).  Plaintiffs cannot prove the training time is compensable under New York law.  Plaintiffs seek to recover for training in New York prior to arriving at their host families' homes.  (Doc. #642 at p. 37-38.)  As a J-1 visa sponsor, InterExchange was required to provide an orientation that included information about life and customs in the United States, local community resources, the exchange visitor program generally, sponsor rules and information, and DOS information.  22 C.F.R. § 62.10.  As a sponsor for au pairs specifically, InterExchange was required by DOS to provide au pairs with "not less than eight hours of child safety instruction, no less than 4 of which shall be infant-related" and "not less than twenty-four hours of child development instruction of which no less than 4 shall be devoted to specific training for children under the age of two."  22 C.F.R. § 62.31(g).  InterExchange did not provide host family-specific training.  (Defs.' Appx. 929 at ¶ 12.)  Under New York law, training that is required by law is not compensable.  NYSDOL RO-08-0020; see also Moreno v. Future Care Health Svcs., Inc., No. 500569/13, 2015 WL 1969753 (N.Y. Sup.), *6 (N.Y. Sup. Ct. May 4, 2015) (adopting DOL letter); Lai Chan v. Chinese-Am. Planning Council

Home Attendant Program, Inc., 50 Misc. 3d 201, 216 (N.Y. Sup. Ct. 2015) (same).  The au pair training is mandated by DOS—*not by InterExchange*.  Plaintiffs cannot recover for training time as it is required by law.

## VI.   COLORADO MINIMUM WAGE ORDER (CMWO).

### a.  Burden of Proof and Elements.

Colorado-based Plaintiffs allege that InterExchange failed to pay au pairs the Colorado minimum wage and overtime.  (Doc. # 395 at ¶¶ 605-613.)  Per the preamble to 7 CCR § 1103-1, Colorado's minimum wage applies to employees covered by the minimum wage provisions of the CMWO or employees covered by the minimum wage provisions of the FLSA.  The preamble then states that "[s]ome restrictions and exemptions may apply."  7 CCR § 1103-1.  Section 1:5 of the regulation states that employees in certain occupations, including domestic employees employed by households or family members to perform duties in private residences, are exempt from "all provisions of [the] Minimum Wage Order."  InterExchange has the burden to prove an exemption applies.  Kennett v. Bayada Home Health Care, Inc., 135 F. Supp. 3d 1232, 1238 (D. Colo. 2015).

### b.  Au Pairs Are Exempt From All Provisions of the CMWO.

Au Pairs are domestic employees within the meaning of the CMWO.  Au pairs live with and are employed by host families to provide child care to the children of the family.  22 C.F.R. § 62.31(a).  By the plain language of the CMWO, au pairs are "domestic employees employed by households or family members to perform duties in private residences."  The preamble to the CMWO states that "restrictions and

exemptions may apply" to the general statements of minimum wage coverage.  Indeed, the CMWO specifically states with respect to domestic employees, they are exempt "from all provisions of" the CMWO.  In interpreting the CMWO, the Court looks first to the plain meaning of the language used.  Deherrera v. Decker Truck Line, Inc., 820 F.3d 1147, 1160 (10th Cir. 2016).  "All provisions of" is not susceptible to more than one meaning:  all provisions means all provisions.  Therefore, domestic employees are exempt from everything in the CMWO, including the minimum wage.  This conclusion is reinforced by another provision of the CMWO which exempts certain employees only from the overtime provisions.  See 7 CCR § 1103-1 § 6 (providing overtime exemptions for certain salespersons, ski industry employees, and medical transportation employees).  InterExchange is entitled to summary judgment Plaintiffs' claims for minimum wage and/or overtime compensation the CMWO.

## VII.   FRAUD CLAIMS GENERALLY.

### a.  Burden of Proof and Elements – Generally.

Addressed more specifically below, Plaintiffs claims for breach of fiduciary duty, consumer fraud, negligent misrepresentation, and constructive fraud all require Plaintiffs to prove by a preponderance of the evidence that InterExchange made a misrepresentation.  Doc. # 130 at pp. 13-14; Fresh Direct, LLC v. Blue Martini Software, Inc., 7 A.D.3d 487, 489 (Sup. Ct. N.Y. 2004); C.R.S. § 6-1-105.  The alleged misrepresentations Plaintiffs attempt to attribute to InterExchange relate to (1) the stipend being "fixed" at $195.75; (2) the stipend being the result of a specific formula; (3) a warning that scammers may offer more than $195.75; and (4) a statement that au

pairs could earn nearly $10,000 during the year.  (Doc. #395 ¶¶ 234-66; Doc. #559 at p. 44.)  Plaintiffs cannot recover on these claims because the alleged "misrepresentations" amount to no more than InterExchange communicating to sponsors and host families what DOS communicated to the sponsors and because they are true.

### b.  Plaintiffs Cannot Prove a Misrepresentation.

Since the 1990s, DOS—the only agency with Congressional authority to run the au pair program—has communicated to sponsors both that the stipend is $195.75 (or the specific dollar amount based on the federal minimum wage at the time) and the specific formula DOS used, in consultation with DOL, to arrive at that number.  (Defs.' Appx. 933 at ¶ 25, 1004-10.)  For example, the USIA's 1997 Fact Sheet:  Au Pair Stipend stated, "[T]he au pair stipend is $128.25."  (Id. 1004.)  It went on to state, "Effective September 1, 1997, the au pair stipend will be increased to $139.05."  (Id.)  DOS' 2000-2001 notice entitled "Weekly Wage due to Au Pair Program Participants" stated, "[T]he weekly wage due to au pairs is $139.05."  (Id. 1005.)  DOS' 2009 communication states what the stipend will be, in a specific dollar amount, effective on a given date.  (Id. 1006-08.)  None of these communications characterize the stipend as a minimum.  Every single one of these communications in some fashion lays out the formula DOS used to arrive at the stipend number, the formula that InterExchange communicated to au pairs and host families.

The alleged "misrepresentation" about scams is nothing of the sort.  Plaintiffs allege that InterExchange communicated that scammers *may* offer more than $195.75.  And indeed that is the case.  InterExchange is aware of many scam emails, almost all of

14

which offer more than $195.75.  (Defs.' Appx. 935 at ¶ 35, 1035-36.)  For example, one

scam email offered a stipend of $300.75.  (Id. 1035-36.)  Similarly, stating that au pairs

can earn "nearly $10,000" is not a misrepresentation.  A full year of stipend payments at

$195.75 equates to $10,179.00.  Representing that they can earn nearly $10,000—

which is an understatement if anything—does not misrepresent anything about the

stipend or induce them into joining the program under detrimental pretenses.

## VIII.    BREACH OF FIDUCIARY DUTY.[6]

### a.  Burden of Proof and Elements.

Beltran asserts that InterExchange breached a fiduciary duty to au pairs by

"setting an illegal wage and by misleading the au pairs to believe that the weekly wage

was fixed by law and could not be altered."  (Doc. #101 at ¶ 484.)  To recover on a

claim of breach of fiduciary duty, Beltran must prove by a preponderance of the

evidence that  (1) InterExchange was acting as a fiduciary of Beltran with respect to the

stipend; (2) InterExchange breached the fiduciary duty; (3) Beltran had damages; and

(4) InterExchange's breach of fiduciary duty was the cause of the damages.  CJI 26:1.

### b.  Elements that Beltran cannot prove.

#### i.  InterExchange did not breach any fiduciary duty.

Plaintiffs' claim that InterExchange breached a fiduciary duty by setting an illegal

wage fails.  InterExchange did not "set" any stipend or wage.  It is undisputed that DOS

is the sole source of the stipend amount and the formula that InterExchange

---

[6] In Colorado, a breach of fiduciary duty constitutes constructive fraud.  Nat'l Bank v. Peters, Writer & Christensen, Inc., 569 P. 2d 875, 881 (Colo. App. 1977).  Therefore, the arguments InterExchange makes here are equally applicable to Plaintiffs' claim of constructive fraud.

Active/47999365.4

communicated to au pairs and host families.  (Defs.' Appx. 1004-10.)  To the extent any

class member's alleged damages for breach of fiduciary duty are based on

InterExchange's alleged failure to pay the correct minimum wage and/or overtime under

the FLSA or state law, this claim and the specific request for damages are preempted

by the FLSA and state statutory law.  <u>Johnston v. Davis Security, Inc.</u>, 217 F. Supp. 2d

1224, 1227-28 (D. Utah 2002); <u>see</u> <u>also</u> <u>Bonham v. Wolf Creek Academy</u>, 767 F. Supp.

2d 558, 566-67 (W.D.N.C. 2011) (noting that FLSA remedies for FLSA violations are

exclusive, and state common-law claims are preempted under an obstacle preemption

theory).  Plaintiffs' remedies for improper payment of wages are derived from the FLSA

and state wage statutes, not fiduciary law.  <u>Bonham</u>, 767 F. Supp. 2d at 566-67.

*If* a fiduciary duty existed, its source has to be the au pair program regulations,

and the regulations therefore define the duty.  <u>See</u>, <u>generally</u>, <u>United States v. Mitchell</u>,

445 U.S. 535, 542-543 (1980) (in context of Indian land management, the applicable

statutes and regulations created the fiduciary relationship *and defined the contours of it*)

(emphasis added).  The regulations do not suggest that InterExchange had a duty, even

if acting as a fiduciary, to do more than communicate to au pairs and host families what

DOS communicated to it with respect to the stipend.  DOS has never required

InterExchange to track the specific stipend paid to each au pair; rather, InterExchange

is required to confirm that the au pairs received at least $195.75 per week.  (Defs.'

Appx. 930 ¶ 15.)  InterExchange submits a yearly audit report to DOS with these

16

confirmations.[7]  (Id.) Plaintiffs do not allege with any specificity that anyone from InterExchange told them the stipend was fixed or could not be negotiated.

                ii.  Plaintiffs cannot prove damages.

Plaintiffs must prove by a preponderance of the evidence that they suffered actual damages as a result of the alleged breach of fiduciary duty.  CJI 26:1, 26:5.  To prove actual damages, Plaintiffs must prove they would have negotiated for a higher stipend, what that higher stipend was, and that their respective host families would have paid it.[8]  They cannot do so.  For example, Beltran had no understanding of the value of "$195.75" until after she arrived in the United States.  (Defs.' Appx. 905 at 115:10-116:1.)  She had no motivation or knowledge base from which to negotiate.  Because Plaintiffs cannot prove that their host families would have agreed to a higher stipend, they cannot satisfy the actual damages element of the claim.  InterExchange is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim.

## IX.    **CONSUMER FRAUD.**

###     a.  **Burden of Proof and Elements.**

To prove a consumer fraud claim under New York General Business Law § 349, Plaintiffs must prove InterExchange engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.  Xiaolu Peter Yu v. Vassar Coll., 97 F. Supp. 3d 448, 482

---

[7] InterExchange has never been corrected, reprimanded, sanctioned, or otherwise disciplined by DOS regarding its approach to or representations about the stipend. (Defs.' Appx. 29 at ¶ 29.)

[8] Again, if Plaintiffs' argument is that they would have received a different stipend based on federal and/or state minimum wage law, then those damages are recoverable only under the FLSA and state wage statutes

(S.D.N.Y. 2015).  The Court of Appeals of New York has addressed the territorial application of the New York statute.  The transaction in which the consumer is deceived *must occur in New York*; it is not enough that the alleged bad actor is operating in New York.  Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 (July 2, 2002) (emphasis added).  The residency of the parties is irrelevant, as "the intent is to protect consumers in their transactions that take place in New York State."  Id. at 325.  Compliance with statutes, rules, and regulations is a complete defense to a claim of a deceptive act or practice.  N.Y. Gen. Bus. Law § 349 (2014).

To prove a claim under the Colorado Consumer Protection Act, C.R.S. § 6-1-101, et seq., (CCPA), Plaintiffs must show (1) InterExchange engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of InterExchange's business, vocation, or occupation; (3) the public is significantly impacted; (4) Plaintiffs suffered injury in-fact to a legally protected interest; and (5) the challenged practice caused Plaintiffs' injury.  Rector v. City and Cty of Denver, 122 P.3d 1010, 1016-17 (Colo. App. 2005).  Compliance with statutes, rules, and regulations is a defense under both states' statutes.  C.R.S. § 6-1-106(1)(a); Rector, 122 P.3d at 1017 N.Y. Gen Bus. Law § 349 (2014).

### b.  Plaintiffs Cannot Prove That a Deceptive Transaction Occurred in New York or That They Engaged in a Deceptive Act or Practice.

Plaintiffs cannot recover under the New York consumer protection law because by the time they arrived in New York, they already had entered into the allegedly deceptive transactions.  At time they arrived in New York, they had applied to the program, paid their fees, matched with a host family, signed their agreements, and were

18

days away from arriving at their host families' homes.  Indeed, Plaintiffs allege that "[t]he Sponsors . . . tricked the au pairs to sign up for their programs based on false and misleading representations about the wage."  (Doc. #395 at ¶ 593.)  The territorial reach of the New York law does not extend to agreements entered into in other countries, even if the alleged bad actor was acting from New York.  Moreover, Plaintiffs have not alleged a deceptive act by InterExchange.  InterExchange's representations about the stipend are consistent with DOS regulations and DOS' own explanation and description of the stipend.  As such, they cannot constitute a deceptive trade practice.

## X.   NEGLIGENT MISREPRESENTATION.

### a.  Burden of Proof and Elements.

Both Colorado and New York law requires Plaintiffs to prove that InterExchange supplied false information, that InterExchange had a duty to use reasonable care in communicating the information, and that Plaintiffs reasonably relied on the false information.  Colo. Visionary Acad. v. Medtronic, Inc., 397 F.3d 867, 870 (10th Cir. 2005); Fresh Direct, 7 A.D.3d at 488-89.

### b.  Plaintiffs Cannot Prove that InterExchange Gave False Information or Failed to Exercise Reasonable Care.

As set forth above, Plaintiffs have not identified any false information that InterExchange allegedly conveyed to au pairs.  As such, they cannot recover on negligent misrepresentation claims.  Nor can Plaintiffs prove that InterExchange failed to exercise reasonable care.  InterExchange communicated to au pairs and host families what DOS communicated to it.  As DOS has the authority to regulate the au pair program, InterExchange's adoption of DOS' communications was reasonable.

Active/47999365.4

XI. __PUNITIVE DAMAGES.__

Under New York law, punitive damages are available only if the tortious conduct is egregious and directed at the public at large. Rocanova v. Equitable Assur. Soc. of U.S., 634 N.E.2d 940, 943-44 (N.Y. App. 1994). In Colorado, punitive or exemplary damages are available only pursuant to statute. Corbetta v. Albertson's, Inc., 975 P.2d 718, 721 (Colo. 1999). Pursuant to the exemplary damages statute, Plaintiffs must prove *beyond a reasonable doubt* that InterExchange acted with fraud, malice, or willful and wanton conduct in order to recover exemplary damages. C.R.S. 13-21-102(1)(a); Frick v Abell, 602 P.2d 852, 853 (Colo. 1979). Given the overwhelming evidence that at most InterExchange communicated to host families and au pairs what DOS communicated to it regarding the stipend, Plaintiffs cannot meet the standard in either jurisdiction.

XII. __CONCLUSION[9]__

For the reasons stated above and in the master brief filed on behalf of all Defendants, InterExchange is entitled to judgment as a matter of law on all claims.

---

[9] The Court let stand a quantum meruit claim against InterExchange in its Order on InterExchange's Motion to Dismiss. (Doc. #258 at p. 34.) However, Plaintiffs did not include this claim in the operative Second Amended Complaint (Doc. #395.) Therefore, InterExchange deems this claim waived. Murray v. Archambo, 132 F.3d 609, 612 (10th Cir. 1998) (properly filed amended complaint supersedes the original). Should Plaintiffs argue that this claim remains viable, InterExchange reserves its rights to move for summary judgment on that claim at that time.

DATED this 16th day of February, 2018.

Respectfully submitted,

s/ Brooke A. Colaizzi
Brooke A. Colaizzi
Heather F. Vickles
Raymond M. Deeny
Joseph H. Hunt
Alyssa L. Levy
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Fax: (303) 298-0940
Email:  bcolaizzi@shermanhoward.com
Email:  hvickles@shermanhoward.com
Email:  rdeeny@shermanhoward.com
Email:  jhunt@shermanhoward.com
Email:  alevy@shermanhoward.com

ATTORNEYS FOR DEFENDANT
INTEREXCHANGE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2018, I electronically filed the foregoing **DEFENDANT INTEREXCHANGE, INC.'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, CO  80218
Email: alex@towardsjustice.org

Brian A. Birenbach
THE RIETZ LAW FIRM, L.L.C.
114 Village Place, Suite 301
Dillon, CO  80435
Email: brian@rietzlawfirm.com

Lawrence D. Stone
Kathleen E. Craigmile
Aubrey J. Markson
NIXON SHEFRIN HENSEN OGBURN,
    P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
E-mail: LStone@Nixonshefrin.com
E-mail:
    kcraigmile@nixonshefrin.com
E-mail:
    amarkson@nixonshefrin.com

Kathryn A. Reilly
Natalie E. West
Brett M. Mull
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver CO  80202-5647
Email: reilly@wtotrial.com
Email: West@wtotrial.com
Email: Mull@wtotrial.com

William J. Kelly III
Chanda M. Feldkamp
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO  80202
Email: wkelly@kellywalkerlaw.com
Email: cfeldkamp@kellywalkerlaw.com

Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Email: aahubbard@hollandhart.com
Email: jsbender@hollandhart.com

Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
OGLETREE, DEAKINS, NASH, SMOAK &
    STEWART, P.C.
1745 Broadway, 22nd Floor
New York, NW 10019
Email: joseph.cartafalsa@ogletree.com
Email: Robert.tucker@ogletree.com
Email:  Stephen.macri@ogletree.com

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
Kevin P. O'Keefe
Samuel N. Rudman
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 82110
Email: joan.lukey@choate.com
Email: rbuchanan@choate.com
Email: mgass@choate.com
Email: jwolosz@choate.com
Email: lkruzer@choate.com
Email: kokeefe@choate.com
Email: srudman@choate.com

James M. Lyons
Jessica L. Fuller
Diane R. Hazel
LEWIS ROCA ROTHGERBER CHRISTIE
    LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Email: jlyons@lrrc.com
Email: jfuller@lrrc.com
Email: dhazel@lrrc.com

Martha L. Fitzgerald
David B. Meschke
Margo J. Arnold
BROWNSTEIN HYATT FARBER
    SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Email: mfitzgerald@bhfs.com
Email: dmeschke@bhfs.com
Email: marnold@bhfs.com

Thomas B. Quinn
Peggy E. Kozal
Jennifer W. Vedra
Nathan A. Huey
Jennifer Arnett-Roehrich
GORDON & REES, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email: tquinn@gordonrees.com
Email: pkozal@gordonrees.com
Email: jvedra@gordonrees.com
Email: nhuey@gordonrees.com
Email: jarnett-roehrich@gordonrees.com

Meshach Y. Rhoades
Martin Estevao
Vance O. Knapp
ARMSTRONG TEASDALE LLP
4643 S. Ulster St., Suite 800
Denver, CO  80237
Email: mrhoades@armstrongteasdale.com
Email: mestevao@armstrongteasdale.com
Email: vknapp@armstrongteasdale.com

Active/47999365.4

Bogdan Enica
Bogdan Enica, Attorney at Law
111 Second Avenue, NE, Suite 213
St. Petersburg, FL  33701
Email: Bogdane@hotmail.com

Susan Penniman Klopman
H & K Law, LLC
3900 East Mexico Ave, Suite 330
Denver, CO 80210
Email: sklopman@hklawllc.com

Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Email: llouis@bsfllp.com
Email: smccawley@bsfllp.com
Email: smcelroy@bsfllp.com

John B. Fulfree
PUTNEY, TWOMBLY, HALL & HIRSON
    LLP
521 Fifth Avenue
New York, NW 10175
Email: jfulfree@putneylaw.com

Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Email: estock@gibsondunn.com

Sean P. Rodriguez
Juan P. Valdivieso
Boies Schiller Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Email:  srodriguez@bsfllp.com
Email:  jvaldivieso@bsfllp.com

Matthew L. Schwartz
Peter M. Skinner
Dawn L. Smalls
Randall W. Jackson
Joshua J. Libling
Byron Pacheco
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY  10022
Email:  mlschwartz@bsfllp.com
Email:  pskinner@bsfllp.com
Email: dsmalls@bsfllp.com
Email:  rjackson@bsfllp.com
Email: jlibling@bsfllp.com
Email: bpacheco@bsfllp.com

James E. Hartley
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO  80302
Email: jhartley@hollandhart.com

*s/ Laura Lewis*

Active/47999365.4