Defs.' Appx. 00000144

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

           Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

           Defendants.

---

**DECLARATION OF NATALIE JORDAN IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

1.      My name is Natalie Jordan.  I am a Senior Vice President at Cultural Care, Inc. ("Cultural Care").

2.      As a Senior Vice President at Cultural Care, I am familiar with and involved in Cultural Care's business operations.

3.      Cultural Care is a designated sponsor of the federal au pair program.

4.      The Department of State ("DOS"), in its role as the exclusive regulator and administrator of the federal au pair program, requires sponsors to submit annual audits demonstrating compliance with the regulations governing the au pair program, 22 C.F.R. § 62.31.

5.      Cultural Care has retained Leonard, Mulherin & Greene, P.C. as an independent auditor to assess Cultural Care's compliance with the governing regulations.

6.      Cultural Care's auditor has conducted annual reviews of Cultural Care's operations in accordance with the procedures prescribed by DOS.  The

auditor has submitted these reports to DOS each year since the enactment of the rule, including from 2009 through the present.

7.      Among numerous other components, the auditor's review selects a sample of au pairs for compliance testing.  The auditor delivers a questionnaire to the au pairs directly.  One of the questions asked is "Do you receive a stipend of at least $195.75 per week?"

8.      Cultural Care's audit reports reflect near perfect compliance with respect to this test.

9.      The audit reports for the years 2009 through 2013 are attached as Exhibits A through E.

10.      DOS has not identified any compliance-related issues or concerns to Cultural Care in response to the submission of these audit reports.

11.      Cultural Care has never been sanctioned or otherwise admonished with respect to au pairs' receipt of the weekly stipend amount as reflected in the annual audit reports.

12.      In addition to the auditor's submission of annual reports, Cultural Care also conducts annual surveys in accordance with DOS instructions.

13.      Cultural Care submits results of these surveys to DOS with the auditors' reports.

14.      Results of surveys submitted to au pairs for the years 2009 through 2015 are attached as Exhibits F through L.

Defs.' Appx. 00000146

15.     As part of Cultural Care's standard business practices, Local Childcare Consultants ("LCCs") conduct monthly meetings with au pairs.  At these meetings, LCCs ask au pairs to confirm whether the minimum stipend amount has been paid and whether au pairs have performed less than 45 hours of childcare on a weekly basis.  The LCCs separately contact host families to confirm that they have paid the minimum weekly stipend amount to their au pairs and that their au pairs have been on duty for less than 45 hours each week.  This is to ensure that our host families are in compliance with State Department regulations for the au pair program.

16.     The standard form for LCCs (which was converted to an online system in 2013) to confirm that au pairs' received the weekly stipend and performed fewer than the maximum number of hours of childcare asks yes/no questions: whether the stipend was reported as paid each week, and whether the au pair reported performing less than 45 hours of childcare each week.  Accordingly, Cultural Care's LCCs do not record actual amounts paid or hours of childcare performed, except in case of inadvertent error.

17.     Prior to 2013, LCCs maintained records of these confirmations on paper forms, known as "Contact Sheets."  As noted above, contact sheets were intended to record only yes/no answers.  A sample of Contact Sheets on which an LCC chose to record actual stipend payments that the au pair reported, as opposed to only a "yes" confirmation that the minimum stipend was paid, are attached as Exhibits M and N.

Defs.' Appx. 00000147

18.     In October 2012, I attended a meeting with DOS and other au pair sponsors.  As reflected in my email summary dated October 26, 2012, attached as Exhibit O, a DOS representative held up Cultural Care's policies and operations as an example of how to ensure compliance with the au pair regulations.

19.     Cultural Care has received notices from DOS (and before that, the United States Information Agency) concerning the calculation of the minimum legal stipend in accordance with the au pair regulations.

20.     DOS distributes notices to Cultural Care, and presumably other au pair sponsors, when the federal minimum wage increases.  The most recent notice issued by DOS concerning the minimum stipend amount was dated June 24, 2009.

21.     Cultural Care understood that DOS intended that sponsors would distribute the information contained in these notices to host families to inform them of the legal stipend requirements.  Cultural Care communicated the information in these notices to host families.

22.     Occasionally, as part of my duties, I conduct training sessions for Cultural Care's LCCs.

23.     In 2012, I administered a series of training sessions for Cultural Care's LCCs across the country in several regional meetings.  At each of these sessions, I confirmed for the LCCs in attendance that host families are free to pay more than the minimum stipend amount.  I intended that the LCCs would communicate this information to host families.

Defs.' Appx. 00000148

24.     Copies of these presentations and correspondence related to the drafting and delivery of the presentations are attached as Exhibits P through R.

25.     I delivered the presentation at three separate regional meetings in three different states in 2012.  LCCs were required to attend these meetings, including my presentation in particular because of its focus on regulatory compliance, such that substantially all of Cultural Care's LCCs attended a presentation during which I told them that host families can pay more than the minimum stipend amount.  In addition, digital copies of the presentation were delivered to LCCs upon request.  I recall that this presentation in particular was well received, and LCCs reported a number of favorable comments to me afterwards.

26.     As a matter of practice, Cultural Care has distributed information forms to host families and au pairs concerning federal income tax requirements. These tax guidance documents have been distributed via email to host families and au pairs on occasion, as reflected in Exhibit S.  The same forms are always available at any time to host families, au pairs, and LCCs through an online portal maintained by Cultural Care.

27.     The tax guidance states in several instances that au pairs receiving more than the minimum stipend amount may have tax obligations, and host families paying more than the minimum stipend may have income tax withholding obligations.

Defs.' Appx. 00000149

28.     Cultural Care distributes brochures and other informational materials to its current host families to consider extending with their current au pairs for another year.

29.     Among other items, the brochures ask host families to consider raising their au pairs' stipends during an extension year.  The brochures also advise host families that the question of whether host families should increase stipends for their au pairs in an extension year is a matter for the host family and au pair to decide.

30.     As a sponsoring agency, DOS directs Cultural Care to ensure that au pairs and host families comply with the applicable regulations and goals of the program.

31.     Host families and au pairs each have the authority to decide whether they should continue participating together in the au pair program, or whether they should terminate an au pair placement, which Cultural Care refers to as "a transition."  However, an au pair's or host family's failure to adhere to the program rules may require removal of either from the au pair program as administered by Cultural Care.  Decisions to remove participants from the program involuntarily are based on violations of program requirements made on a case-by-case basis, and Cultural Care reports each instance of an au pair being removed from the program prior to full completion to DOS each year.  Circumstances requiring involuntary removal of either a host family or au pair from the program based on violations of the federal regulatory requirements have included: failure by host families to pay

Defs.' Appx. 00000150

the weekly stipend; demanding more than 45 hours of childcare per week or otherwise violating the hours limitations in the regulations; failing to ensure adequate room and board is available; an au pair undertaking employment outside of the program; and a demonstrable unwillingness to participate in the cultural exchange purposes of the program.  In addition, the DOS requires that, if an au pair and/or host family ends their relationship and the au pair is unable to match with another host family within several weeks, the au pair must leave the program and the country.

32.     Cultural Care may also remove an au pair or host family from the program if either's health, safety, or welfare is endangered.  For example, au pair and host family relationships have been ended due to arrests or criminal law violations, allegations of abuse or mistreatment, and medical conditions preventing continued participation in the program.

33.     I have inquired within Cultural Care, and to the best of my knowledge, Cultural Care did not receive a demand letter or other pre-litigation notice of this lawsuit from Sarah Carolina Azuela Rascon.


I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 15th day of February 2018.


*/s/ Natalie Jordan*
Natalie Jordan

RELEASED IN FULL

## CULTURAL CARE, INC.

Report of Independent Auditors
On Application of Agreed-Upon Procedures

Year ended December 31, 2009

REVIEW AUTHORITY:  Robert Strand, Senior Reviewer

CERTIFIED

Defs.' Appx. 0000152

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

# CULTURAL CARE, INC.

Report of Independent Auditors
On Application of Agreed-Upon Procedures

Year ended December 31, 2009

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

Exhibit A

Defs.' Appx. 0000153

UNCLASSIFIED U.S. Department of State Case No. F-2011-25445 Doc No. C05145346 Date: 10/10/2012



## Leonard, Mulherin & Greene, P.C.
### CERTIFIED PUBLIC ACCOUNTANTS

625 Grove Street
Braintree, MA 02184
Phone (781) 356-4800
Fax (781) 356-5800

### REPORT OF INDEPENDENT AUDITORS
### ON APPLICATION OF AGREED-UPON PROCEDURES

To the Management and Board of Directors
Cultural Care, Inc.
d/b/a Cultural Care Au Pair, P-4-10181
One Education Street
Cambridge, MA

We have performed the procedures included in the Au Pair Compliance Audit Procedures which were supplementally issued in connection with the Exchange Visitor Program Regulations (the "Regulations"), Au Pair "Final Rule" [60 FR 8552], dated February 15, 1995, as amended by the former United States Information Agency, now administered by the United States Department of State (the "Department of State"), and enumerated below, for Cultural Care, Inc. These procedures were agreed to by the management of Cultural Care, Inc. solely to assist you in your assertion of compliance with certain Department of State regulations during the year ended December 31, 2009. This agreed-upon procedures engagement was performed in accordance with standards established by the American Institute of Certified Public Accountants. The sufficiency of these procedures is solely the responsibility of the specified users of the report. Consequently, we make no representation regarding the sufficiency of the procedures described below either for the purpose for which this report has been requested or for any other purpose.

1.  We requested confirmation from the Department of State that Cultural Care, Inc. (the "Sponsor") is designated as a bona-fide program Sponsor authorized by the Department of State as of December 31, 2009. Julia Findlay, Educational & Cultural Exchange Officer, Office of Designation, confirmed on January 28, 2010 that the Sponsor was a Department of State designated exchange visitor program sponsor for the category of au pair for the year ended December 31, 2009.

From the Sponsor's listing of au pair participants who arrived in the United States during the year ended December 31, 2009, we randomly selected 115 program participant files, as well as the associated host family files for testing. In connection with those files:

2.  We inquired of Sponsor personnel and found that the Sponsor limits participation of foreign nationals in the program to not more than one year, except for those who participate in the extended program.

3.  We read the program literature and the signed agreement between the host family and the au pair participant (the "host family/au pair acknowledgement) to determine that these documents limit the number of hours an au pair participant is obligated to provide childcare services to not more than 10 hours per day and 45 hours per week. Of the 115 agreements reviewed, 115 were present and signed. We have confirmed directly with the au pair participants whether this provision was adhered to (see results at items 28a and b).

Exhibit A

Defs.' Appx. 0000154
UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

4.   We read the program literature and the host family/au pair agreements to determine that these documents include the requirement that the au pair participant register and attend classes offered by an accredited U.S. post-secondary institution for not less than six semester hours of academic credit or its equivalent.  Of the 115 files we reviewed, all contained signed agreements by the host families and au pair participants. We have confirmed directly with the au pair participants and host families whether the au pair participants have enrolled or will enroll in an accredited U.S. post-secondary institution (see results at items 28k and 29d).

5.   We inquired of Sponsor personnel and were informed that all officers, employees, agents and volunteers acting on their behalf are trained and supervised.  We reviewed the listing of the Sponsor's annual training conference to determine local organizational representatives who attended.  Those who did not attend the annual conference were required to attend regional meetings.  We determined in our testing that all local and regional organizational representatives attended either the annual training conference, regional training sessions or participated in one-on-one training sessions.  In addition, of the 192 local organizational representatives hired in 2009, all attended training sessions.  No exceptions were found as a result of applying this procedure.

6.   We inquired of Sponsor personnel and were informed that each au pair participant is placed with a host family within one hour's driving time of the home of their local organizational representative authorized to act on the Sponsor's behalf.  We reviewed and tested the Sponsor's mileage reports identifying the distance between the host families selected for testing and their respective local organizational representative (the "LCC") to determine that the distance was within one hour's driving time.  Of the 115 mileage reports reviewed, 114 were within a one hour's driving time. 1 mileage report was one hour and nine minutes.

7.   We selected 20 au pairs and read the actual contact records prepared by the local organizational representatives to determine that each local organizational representative maintained a schedule of monthly personal contact with each au pair participant and host family for which he or she was/is responsible.  Of the 20 contact records that were reviewed, all contained evidence that the local organizational representative contacted the au pair/host family on a monthly basis.  We confirmed directly with the au pair participants and host families whether the local organizational representative maintained monthly contact (see results at items 28j and 29c).

8.   We read the actual contact records to determine that all local organizational representatives contacted au pair participants and host families twice monthly for the first two months following a placement other than the initial placement (a "rematch") for which the au pair entered the United States.  There was a total of 18 rematched au pairs in our sample. Of the 18 contact records reviewed, we found that 11 and 16 had evidence that host families and au pairs, respectively, were contacted twice in the first and second months of placement. Of the remaining contact records, 6 and 1 indicated that the local organizational representatives did not contact the host families and au pair participants twice, respectively, in the second month of placement; 1 host family and 1 au pair were not contacted in the second month as the au pair left the program.

We confirmed directly with the au pair participants and host families that the local organizational representatives contacted them twice monthly for the first two months following a rematch. Of the 150 au pair and host families contacted, 100 of the au pair participants and 110 host families responded to the confirmations. Of the au pair participants and host families that did respond, 73 au pairs and 84 host families indicated "N/A". 3 of the host families who answered N/A were in fact re-matched.

_____  2

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

Exhibit A

Defs.' Appx. 0000155

UNCLASSIFIED U.S. Department of State Case No. F-2011-25445 Doc No. C05145346 Date: 10/10/2012

Of the 27 au pairs and 26 host families who answered the question, 9 au pairs and 23 host families indicated that they had received the required twice-monthly contact. 14 au pairs and 3 host families either answered "no" or did not answer the question. However according to representation from Sponsor personnel, of those that did not answer or answered "no", 13 au pairs and 3 host families have not been in a rematch situation. Of those that answered no or did not answer, we reviewed monthly contact reports for 1 au pair and 1 host family, noting they had received the required twice-monthly contact. 4 au pairs answered that they were re-matched, however, per Sponsor personnel, they were not re-matched.

9. We inquired of Sponsor personnel and were informed that the local organizational representatives not devoting their full time and attention to the program are responsible for not more than 15 au pairs and host families. We randomly selected 20 local organizational representatives and asked them directly, via email, whether they devoted their full time and attention to the program. If they indicated that they did not devote their full time and attention to the program, we confirmed with them that they are responsible for not more than 15 au pair participants and host families. We also verified their response with the Sponsor's records of au pair/host family allocation. We determined that no part-time local organizational representatives were responsible for more than 15 au pairs and host families. However, we noted that certain host families have been assigned a temporary LCC due to occasional lapses between LCC departures and the commencement of the contracting of their replacements. In these temporary situations, an LCC may have more than 15 au pair participants and host families.

10. We inquired of Sponsor personnel and were informed that each local organizational representative acting on their behalf is provided adequate support service by a regional organizational representative. We reviewed the allocation of local organizational representatives to the regional organizational representatives. We then randomly selected 19 local organizational representatives and read the personnel evaluation reports prepared by the regional organization representatives to determine that local organization representatives are supervised. No exceptions were found as a result of applying this procedure.

11. We examined the au pair participant files which include the application, interview worksheets, physical examinations and signed au pair agreements to determine that each au pair participant selected satisfied each of the following requirements to be eligible to participate in the program:
    a. Are between the ages 18 and 26;
    b. Are secondary school graduates, or equivalent;
    c. Are proficient in spoken English;
    d. Are capable of fully participating in the Program as evidenced by the satisfactory completion of a physical examination;
    e. Have been personally interviewed, in English, by an organizational representative; and
    f. Have not previously participated in an au pair program.

We examined the au pair participant files to determine that each au pair participant selected met the above requirements. Of the 115 au pair participant files examined, all were complete with documentation and demonstrated that the au pair participant met each criterion.

12. We examined the au pair participant files for completeness and to determine that each au pair participant selected had successfully passed a background investigation that included:
    a. Verification of school/presence of high school diploma;
    b. Three non-family related personal and employment references and notations of verification for each reference;
    c. A criminal background check or its recognized equivalent; and

Defs.' Appx. 0000156

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

    d.  A personality profile based upon a psychometric test designed to measure differences in characteristics among applicants against those characteristics considered most important to successfully participate in the au pair program.

In addition, the files included:
- e. A signed au pair/host family agreement; and
- f. Notation that host family interviewed the au pair by telephone prior to his/her departure from the home country.

We examined the au pair participant files to determine that each au pair participant selected satisfied the above requirements. Of the 115 au pair participant files examined there were no exceptions found related to procedures "a" through "e" above.

In order to satisfy procedure "f" above, we confirmed directly with the au pair participants that the host family interviewed the au pair participant before the au pair participant left the home country. Of the 100 au pair participants who responded to our confirmations, 98 answered that they had been contacted and interviewed by the host family prior to their departure from their home countries. 2 au pairs answered no but both subsequently confirmed via email that they were in fact contacted before they left their home country.

We further confirmed directly with the host families that they interviewed the au pair participant before the au pair participant left the home country. Of the 110 host families who responded to our confirmations, 105 confirmed that they had contacted and interviewed the au pair prior to their departure from their home country. 5 host families noted their au pair was being re-matched, and thus already in the country. However, they interviewed and/or met with them prior to the au pair's arrival in their home.

13.  We read the signed host family agreements to determine that the host family agreed to comply with the requirement that a parent or other responsible adult will remain in the home for the first three days following the au pair participant's arrival.  All 115 files reviewed contained signed agreements which complied with this regulation.

14.  We read the signed host family agreements and program literature to determine that any host family with a child less than three months of age agreed that a parent or other responsible adult would be present in the home.  No exceptions were noted as a result of applying this procedure. All program literature, materials, websites, applications and contractual agreements comply with Department of State program regulations relative to this requirement.

15a.  We read the childcare references and the au pair application of au pair participants who are placed with host families that have a child under the age of two, to determine that the au pair participant had at least 200 hours of documented infant child care experience. Of the 115 files reviewed, 42 au pair participants were placed in host families with a child/ren under the age of two. Of these, all au pair participants reviewed possessed the required 200 hours of documented infant child care experience.

15b.  We read the childcare references and the au pair application of au pair participants who are placed with host families having a special needs child, as so identified by the host family, to determine that the au pair participants have specifically identified their prior experience, skills, or training in the care of special needs children and the host family has reviewed and acknowledged in writing the au pair participant's prior experience, skills, or training so identified. Of the 115 host family files reviewed, 4 files were found to contain reference to a special needs child. All 4 of these host families indicated on the application that an au pair with special needs experience is not necessary.

4

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

Exhibit A

Defs.' Appx. 0000157

UNCLASSIFIED U.S. Department of State Case No. F-2011-25445 Doc No. C05145346 Date: 10/10/2012

16. We read the signed host family agreement to determine that each host family agreed to provide a suitable private bedroom for the au pair participant. Of the 115 files reviewed, all included the signed agreement. We confirmed with the au pair participants whether a private bedroom has/had been made available for their use (see confirmation results at item 28g).

17. We inquired of Sponsor personnel and read the au pair pre-departure program literature to determine that the Sponsor has provided the au pair participant with the following prior to their departure from their home country:

    a. A copy of all operating procedures, rules and regulations, grievance procedures, and the Department of State's written statement regarding the au pair program that govern the au pair's participation in the exchange program;

    b. A detailed profile of the host family and community in which the au pair participant will be placed;

    c. A detailed profile of the educational institutions in the community where the au pair participant will be placed, including the cost of attendance at these institutions;

    d. A detailed summary of travel arrangements; and

    e. A pre-departure package clearly describing childcare responsibilities and expectations, and enumerating behavior that is unacceptable.

No exceptions were found as a result of applying these procedures.

18. We read the materials used by the instructor for the au pair participants' training program including a detail of time by activity and discussed the orientation time and activities with the appropriate Sponsor's personnel (management) to determine that the Sponsor had provided the au pair participants with the following prior to the placement with the host family:

    a. Not less than 8 hours of child safety instruction, no less than 4 of which was infant-related; and

    b. Not less than 24 hours of child development instruction, of which no less than 4 was devoted to specific training for children under the age of two.

Of the 115 au pair participant files reviewed, all included documentation showing that the required 8 hours of child safety instruction training was completed prior to placement with the host family. Also, all of the au pair participant files reviewed included documentation showing that the required 24 hours of child development instruction training was completed prior to placement with the host family. We confirmed with the au pair participants that the orientation program included child safety and child development instruction (see results at item 28m).

19. We examined the host family files for completeness, and to determine that each file examined contains the application, personal interview form, employment and personal references and a signed host family agreement and to determine that all host families met the following requirements:

    a. Host parents are U.S. citizens or legal permanent residents;

    b. The host parents are fluent in spoken English;

    c. All adult family members resident in the home have been personally interviewed by an organizational representative;

    d. The host parents have successfully passed a background investigation, including employment and personal references;

    e. The host family has financial resources to undertake hosting obligations; and

    f. The host family has been provided with a written detailed summary of the exchange program and the parameters of their and the au pair participant's duties, participation and obligations.

5

UNCLASSIFIED U.S. Department of State Case No. F-2011-25445 Doc No. C05145346 Date: 10/10/2012

Exhibit A

Defs.' Appx. 0000158

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

Of the 115 files reviewed, all were complete and satisfied the above requirements.

20. We read the program literature and the signed host family agreement to determine that the Sponsor has informed the host families of the philosophy, rules and regulations governing the au pair exchange program, and that the host family has received a copy of the Department of State's written statement regarding the au pair program and promulgated regulations including the published supplemental information. No exceptions were found as a result of applying this procedure.

21. We read the program literature and the signed host family agreement to determine that the Sponsor has informed the host families of their obligation to attend at least one family day conference to be held by the Sponsor during the course of the placement year. No exceptions were found as a result of applying this procedure.

We selected 20 host families and examined the monthly contact records maintained by the local organizational representative to determine that the families have attended at least one family day conference, as required by the program regulations. Of the files and contact records examined, we noted evidence that all host families attended at least one family day conference.

22. We read the program literature to determine that the Sponsor's counselors are responsible for contacting the au pair participant and the host family within 48 hours of the au pair's arrival and must meet, in person, in the host family's home, with the au pair and the host family within two weeks of the au pair's arrival at the host family home. All materials, websites, applications and contractual agreements comply with program regulations relative to this requirement.

We selected 115 au pairs and read two-week host family and au pair orientation forms prepared by the local organizational representatives to determine compliance with these two requirements. Of the 115 files tested, 115 forms all indicated that the meeting took place within 2 weeks and 48 hours of their arrival.

We confirmed with the au pair participants and host families that these requirements were met (see confirmation results at items 28h and 28i, and 29a and 29b).

23. We read the signed host family/au pair agreements to determine that the host family has agreed that the au pair participants will:
    a. be compensated at a weekly rate based on 45 hours per week and paid in conformance with the requirements of the Fair Labor Standards Act. Compensation must be no less than $176.85 per week prior to 7/24/2009 and $195.75 per week after 7/24/2009;
    b. not provide more than ten hours of childcare on any given day;
    c. receive a minimum of one and a half days off per week, in addition to one complete weekend off each month;
    d. receive two weeks of paid vacation; and
    e. receive up to $500 toward the costs of required academic course work.

We read the signed host family/au pair agreements to determine that the host family agreed that the au pair participants will receive the required wages and time off, and that they will not be required to work beyond the stated number of work hours per day and per week. Of the 115 host au pair files reviewed, all host family/au pair agreements were included and signed.

6

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

Exhibit A

Defs.' Appx. 0000159

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

We have confirmed with the au pair participants that the above provisions were adhered to (see results at items 28c, 28d, 28e and 28f).

24. We read the program literature to determine that the Sponsor requires the au pair participants to enroll in an accredited U.S. post-secondary institution for not less than six semester hours of academic credit or its equivalent. All materials, websites, applications and contractual agreements comply with these program regulations.

   We also read the signed host family/au pair agreements to determine that as a condition of program participation, the host family participant agrees to facilitate the enrollment and attendance of the au pair participant at an accredited U.S. post-secondary education institution and to reimburse or pay the first $500 toward the costs of required academic coursework incurred by the au pair participant in meeting this education requirement. All 115 host family/au pair agreements reviewed were signed and contained provisions that outlined responsibilities for the host family and au pairs relating to the education requirement.

   We confirmed directly with au pair participants that the education reimbursement requirement is being met (see results at item 28l).

25. We read the actual contact records prepared by the local and regional counselors that document contact between the au pair participants, host families and their local organizational representatives, to determine that the Sponsor requires monthly contact among them and quarterly contact between the au pair participants, host families, and the regional organizational representatives (see item 7 for results of monthly contact records review). We inquired of Sponsor personnel regarding quarterly contact of the au pair participant and host family by the regional representative. We determined that the Sponsor requires that regional representatives contact the au pair participant and host family on a quarterly basis throughout the placement period. This requirement was satisfied with the issue of a monthly newsletter, and program satisfaction survey and the Department of State regulations update to each au pair participant and host family from the regional representative. Per the Sponsor, program directors also contact the au pairs via phone call within 3 weeks of their arrival to answer any questions or concerns.

26. We read all reports, which counselors are required to prepare for unusual or serious situations, as defined in the Regulations, or incidents involving either the au pair of host family. Any incidents involving or alleging a crime of moral turpitude or violence, as defined in the Regulations, are to promptly be reported to the Department of State. Of the documentation and files reviewed, we noted no incidents of serious or unusual nature that should have been reported to the Department of State.

27a. We have reviewed all complaints submitted to the Sponsor, including those initiated by au pair participants and those initiated by the host family participants for completeness. A summation of each complaint setting forth the following details is appended:
   a. The name of the host family and the number of years participating in the program;
   b. The name of the au pair, and whether placement is first or subsequent (rematch);
   c. Who initiated complaint and date of complaint;
   d. Whether complaint was reported to the Department of State, and if so, date of report; and
   e. How complaint was resolved (action taken by Sponsor) and date of resolution.

7

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

Exhibit A

Defs.' Appx. 0000160

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-2445  Doc No. C05145346  Date: 10/10/2012

27b. We have reviewed all reports of incidents involving or alleging a crime of moral turpitude or violence, including those committed by au pair participants and those committed by any member of the host family, for completeness and to determine if the Sponsor submitted the reports to the Department of State.  We found that all incident reports were properly submitted.

28. We sent confirmations to 150 au pair participants selected for testing.  Of the 150 confirmations sent, 100 have responded.  The following presents the responses received from the au pair participants to the confirmation questions:

    a.  <u>98</u>   responded that they worked 45 hours or less per week. Of the two remaining au pairs who answered that they worked more than 45 hours per week, one confirmed subsequently via email that they do not work more than 45 hours per week.

    b.  <u>97</u>   responded that they were required to provide no more than 10 hours per day of childcare. Of the remaining three au pairs who answered that they worked more than 10 hours per day, two confirmed subsequently via email that they do not work more than 10 hours per day.

    c.  <u>100</u>   responded that they received at least $176.85 prior to 7/24/2009 and $195.75 after 7/24/2009 per week as compensation.

    d.  <u>99</u>   responded that they received at least one and one half days off per week. One au pair answered that they did not receive at least one and one half days off per week.

    e.  <u>98</u>   responded that they received one complete weekend off per month. Of the two au pairs who answered no, one subsequently confirmed via email that they did receive the required time off.

    f.  <u>99</u>   responded that they did, or will receive two weeks paid vacation. One au pair did not answer the question.

    g.  <u>98</u>   responded that they were provided a private bedroom. Two au pairs did not answer the question.

    h.  <u>90</u>   responded that their local organizational representative contacted them within 48 hours of their arrival at the host family's home. However, we examined two week host family and au pair orientation forms for the remaining 10 au pairs who answered that contact had not been made or did not answer, and found that the required contact had been made.

    i.  <u>97</u>   responded that the local organizational representative met with them and their host family, in person, within two weeks of their arrival at the host family's home. We examined two week host family and au pair orientation forms for two of the au pairs who answered that they did not meet with the local organizational representative, and found that the required contact had been made. The remaining au pair subsequently confirmed via email that the required contact had been made.

    j.  <u>97</u>   responded that they had monthly contact with their local organizational representative.  Two au pairs answered that they did not have monthly contact, however, we examined monthly contact reports and found that the required monthly contact had been made. The remaining au pair did not answer the question but confirmed subsequently via email that the required contact had been made.

*Report of Independent Auditors on Application of Agreed-Upon Procedures*
*Year ended December 31, 2009*

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-2445  Doc No. C05145346  Date: 10/10/2012

Exhibit A

Defs.' Appx. 0000161

k.  <u>98</u>  responded that they had enrolled, or will enroll before the completion of the year, in a U.S. post-secondary institution of higher learning, or its equivalent. One au pair did not answer the question however we viewed a certificate of completion showing that the au pair had completed the required educational requirements. One au pair answered that they had not enrolled in any educational classes, however, they subsequently confirmed via email that they have enrolled in classes.

l.  <u>76</u>  responded that they were reimbursed or paid for the first $500 toward the costs of the required academic coursework. Of the remaining twenty-four au pairs who answered that they were not reimbursed or did not answer the question, we confirmed via email that eighteen of the au pairs were reimbursed (or will be) for their educational costs. Of the remaining six au pairs, one au pair answered that they did not receive reimbursement; however, she left the program early and did not complete the classes. The remaining five au pairs did not answer the question.

m.  <u>99</u>  responded that the orientation program they attended included 8 hours of child safety and 24 hours of child development instruction, and that the training was completed prior to their arrival at the host family's home. One au pair answered that they did not attend training, however, we reviewed the certificate of completion noting the au pair completed all required training.

29.  We sent confirmations to 150 US host families (including rematches) selected for testing and received 110 responses. The following presents the host family responses to the confirmation questions:

a.  <u>106</u>  responded that their local organizational representative contacted them within 48 hours of the au pair participant's arrival at their home. We examined two week host family and au pair orientation forms for the four remaining host families and found that the required contact had been made.

b.  <u>108</u>  responded that their local organizational representative met with them and their au pair participant, in person, within two weeks of the au pair participant's arrival at their home. We examined two week host family and au pair orientation form for the two remaining host families and found that the required contact had been made.

c.  <u>101</u>  responded they had monthly contact with their local organizational representative. We examined contact reports for eight of the remaining host families who answered that they did not have monthly contact and noted that the required contact had been made. One host family did not answer the question but noted their au pair was re-matched within one month of their arrival with this host family.

d.  <u>102</u>  responded that their au pair participant had enrolled or will enroll before the completion of the year in a U.S. post-secondary institution of higher learning, or its equivalent. Of the remaining eight families, support was provided that showed that two au pairs had properly enrolled in educational classes, two au pairs left the program prior to completing their classes, one au pair was re-matched within one month of their stay and one au pair came in transition from another family. One family did not respond to the question.

9

Exhibit A

Defs.' Appx. 0000162

30.  We sent confirmations to 25 au pair participants in the extension program.  Of the 25 confirmations sent, 12 au pairs have responded.  The following presents the responses received from the au pair participants to the confirmation questions:

   a.   <u>12</u>   responded that they worked 45 hours or less per week.

   b.   <u>12</u>   responded that they were required to provide no more than 10 hours per day of childcare.

   c.   <u>12</u>   responded that they received at least $176.85 per week prior to 7/24/2009 and $195.75 per week after 7/24/2009 per week as compensation.

   d.   <u>12</u>   responded that they received at least one and a half days off per week.

   e.   <u>12</u>   responded that they received one complete weekend off per month.

   f.   <u>12</u>   responded that they did, or will receive two weeks paid vacation.

   g.   <u>12</u>   responded that they had a private bedroom.

   h.   <u>12</u>   responded that they had monthly contact with their local organizational representative.

   i.   <u>12</u>   responded that they enrolled, or will enroll before completion of the year, in a U.S. post-secondary institution of higher learning, or its equivalent.

   j.   <u>10</u>   responded that they were reimbursed or paid for the first $500 ($250 for a 6 month extension) toward the costs of the required academic coursework. Two au pairs subsequently confirmed via email that they were reimbursed.

31.  We sent confirmations to 25 U.S. host families in the extension program and received 15 responses.  The following presents the host family responses to the confirmation questions:

   a.   <u>15</u>   responded that they had monthly contact with their local organizational representative.

   b.   <u>15</u>   responded that their au pair participant had enrolled or will enroll before the completion of the year in a U.S. post-secondary institution of higher learning.

32.  We read the draft of the annual report to be filed by the Sponsor with the Department of State noting that the following requirements were included therein:

   a.   Summation of the results of an annual survey of all host families and au pair participants regarding their satisfaction with the program and its strengths and weaknesses, as defined in the regulations;

   b.   A summation of all complaints regarding host families or au pair participants in the program, specifying the nature of the complaint, its resolution, and whether any unresolved complaints are outstanding;

   c.   A summation of all situations that resulted in the placement of an au pair with more than one host family;

   d.   A report detailing the name of the au pair participant, his or her host family placement, location, and names of the local and regional organizational representatives; and

   e.   A complete set of all promotional materials, brochures or pamphlets distributed to host family and au pair participants.

*Report of Independent Auditors on Application of Agreed-Upon Procedures*
*Year ended December 31, 2009*

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

No exceptions were noted as a result of applying this procedure.

We were not engaged to, and did not, perform an examination, the objective of which would be the expression of an opinion on management's assertions. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

This report is intended solely for the use of the management of Cultural Care, Inc. and the Department of State and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes.

*Leonard, Mulherin & Greene, P.C.*

Leonard, Mulherin and Greene, P.C.
May 18, 2010

UNCLASSIFIED  U.S. Department of State  Case No. F-2011-25445  Doc No. C05145346  Date: 10/10/2012

Exhibit A

**RESTRICTED - EXHIBIT B TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000015.**

Defs.' Appx. 0000165

**RESTRICTED - EXHIBIT C TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000027.**

Defs.' Appx. 0000166

**RESTRICTED - EXHIBIT D TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000040.**

**RESTRICTED - EXHIBIT E TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000052.**

**RESTRICTED - EXHIBIT F TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' Appx. 00000065.**

**RESTRICTED - EXHIBIT G TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000066.**

Defs.' Appx. 0000170

**RESTRICTED - EXHIBIT H TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000067.**

**RESTRICTED - EXHIBIT I TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000068.**

Defs.' Appx. 0000172

**RESTRICTED - EXHIBIT J TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000069.**

Defs.' Appx. 0000173

**RESTRICTED - EXHIBIT K TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000070.**

Defs.' Appx. 0000174

**RESTRICTED - EXHIBIT L TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000071.**

Defs.' Appx. 0000175

**RESTRICTED - EXHIBIT M TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000072.**

Defs.' Appx. 0000176

**RESTRICTED - EXHIBIT N TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000086.**

**RESTRICTED - EXHIBIT O TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000121.**

Defs.' Appx. 0000178

**RESTRICTED - EXHIBIT P TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000124.**

Defs.' Appx. 0000179

**RESTRICTED - EXHIBIT Q TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000195.**

**RESTRICTED - EXHIBIT R TO NATALIE JORDAN'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000264.**

Defs.' Appx. 0000181

| | |
|---|---|
| **From:** | Lauren Kostoulakos </O=EF/OU=USB/CN=RECIPIENTS/CN=LAUREN.HETHERINGTON> |
| **Sent:** | Monday, October 17, 2011 10:37 AM |
| **To:** | Nicole Schroder <Nicole.Schroder@culturalcare.com>; Judith DeKort <Judith.DeKort@culturalcare.com> |
| **Subject:** | FW: Taxes |
| **Attach:** | tax information final.pdf |

**Lauren A. Kostoulakos | Director of Government Relations/ARO**
Cultural Care Au Pair | One Education Street | Cambridge, MA 02141
(ph) 800.333.6056, 3587 | (f) 617.619.1101
*Connect with Cultural Care Au Pair on:*

Over 20 years of flexible, affordable childcare: www.culturalcare.com

**From:** Kimberly Luciani
**Sent:** Monday, October 17, 2011 10:12 AM
**To:** Lauren Kostoulakos
**Subject:** FW: Taxes

**Kimberly Luciani | Senior Accountant**
Cultural Care Au Pair | One Education Street | Cambridge, MA 02141
(ph) 617.619.2005 | (f) 617.812.6374
*Connect with Cultural Care Au Pair on:*

Over 20 years of flexible, affordable childcare: www.culturalcare.com

**From:** Natalie Jordan
**Sent:** Tuesday, January 11, 2011 1:03 PM
**To:** Cultural Care Boston; Cultural Care Boston Field Staff
**Subject:** Taxes

Good Afternoon,

It's that time of year when you may receive questions regarding taxes.  As you know, we cannot provide tax advice to any individual family or au pair, however, the "Taxes & Financial Matters" section of InfoSource has a great deal of information on this topic.  For your convenience, I have pasted the information below and have also included the piece we sent to all families and au pairs last year via email.  We will be sending another email to all of our program participants in the coming weeks, but as there are already questions coming in, here's info for your immediate reference.

Please let me now if you have any questions,
Natalie

Source: http://infosource.lcc.culturalcare.com/host-families/resources/taxes--financial-matters.aspx

**Important Au Pair Tax Information**

The IRS considers au pairs to be "employees" of the host family for tax reasons, even though they are in the United States on a "cultural exchange" visa.  This means that **au pairs are required to file U.S. individual income tax returns even though many au pairs will not owe any taxes**
  By April 15, the au pair should file form 1040NR-EZ or 1040NR to report his or her au pair stipend for the previous calendar year
  In order to file income taxes in the United States, all au pairs need to have either a social security number or an Individual Taxpayer Identification Number ("ITIM")
  Au pairs are allowed to claim a personal exemption for themselves, but are not eligible for the standard deduction in their

**CONFIDENTIAL**

CC00014851
Exhibit S

ïiling.   As stated above, au pairs are not considered "students" by the IRS so they are also not eligible to exclude au pair wages from gross income under the student article of any U.S. income tax treaty

Because the maximum tax burden for the vast majority of au pairs is less than $1,000, there is usually no need for the au pair to make quarterly estimated payments, or to have the host family withhold taxes.  There are some exceptions to this rule which are explained in our more detailed guide which is downloadable above.

**Important Host Family Tax Information**

**Child and Dependent Care Tax Credit:** As long as you have used the au pair's child care services in order to work or look for employment, the stipend paid to your au pair, the costs of room and board and the program fees paid to Cultural Care are all eligible under the Child and Dependent Care Tax Credit.  Cultural Care's federal tax ID number is **20-2020345**

**Dependent Care Reimbursement Programs:** The eligibility requirements for these programs (often called "Flex-Spending Accounts" or "FSAs") are usually identical to those for the Child and Dependent Care Tax Credit.  Please note that expense paid for using Dependent Care Reimbursement Program funds are not also eligible for the Child and Dependent Care Tax Credit

**Flex-Spending Account Paperwork:** Cultural Care is happy to provide host families with a summary statement of payments received during a tax year.  We are also able to sign and complete most forms that your plan might require for reimbursement.  Please note, however, that we are only able to provide you either the total amount you paid in a given calendar year, or the amount you paid in a given calendar year with the dates of the applicable full au pair term of service (e.g. one year, six months, etc.).  Cultural Care cannot provide documentation explicitly pro-rating payments received to a specified range of dates.  Contact our office if you require any assistance in claiming a Dependent Care reimbursement

**Withholding for Au Pair Taxes:** Because the maximum tax burden for the vast majority of au pairs is less than $1,000, there is no need for the au pair to make quarterly estimated payments.  In addition, because au pair wages are deemed by the IRS to be paid for domestic service in a private home, they are not subject to mandatory income tax withholding on Forms 941 and W-2 by the host family. Host families usually do not need to pay federal unemployment taxes for their au pair or to withhold Social Security and Medicare taxes.  There are some rare cases where this rule might not apply - please refer to our downloadable guide for more details

**Other Potential Host Family Tax and Financial Issues:** We strongly recommend that you inquire with a professional insurance advisor about specific state laws and requirements which may include, but not be limited to, workers' compensation insurance and state unemployment taxes

Defs.' Appx. 0000183

 **Cultural Care Au Pair**

# Taxes and personal financial matters

## Introduction

While Cultural Care is not able to provide specific tax information for host families because their circumstances vary a great deal, we are pleased to outline some general guidelines regarding host family and au pair taxes. We hope that this information is a useful resource for host families and au pairs, as well as helpful preparatory material for a conversation with a professional tax advisor or the Internal Revenue Service ("IRS"). Additional information on au pair taxes can be found by going to **www.irs.gov** and entering the words "au pair" in the search box.

Please note that Cultural Care is not licensed to provide official tax advice, so our staff is unable to answer specific questions regarding individual host family or au pair tax issues beyond the scope of topics covered in this document. Since tax laws vary from state to state and are changed on a frequent basis, we advise host families and au pairs to speak with a local professional tax advisor or directly with the IRS for definitive answers to any specific questions regarding taxation.

Cultural Care Inc.'s federal tax ID number: 20-2020345

## Au Pair Taxes

The IRS considers au pairs to be "employees" of the host family for tax reasons, even though they are in the United States on a "cultural exchange" visa. This means that au pairs are required to file U.S. individual income tax returns even though many au pairs will not owe any taxes. By April 15, au pairs should file form 1040NR-EZ or 1040NR to report their au pair stipend for the previous calendar year. Au pairs will need to provide some record of stipend payments received from the host family, so we recommend keeping a list of weekly payments showing the dates, amounts and payment method used to record the total stipend paid by the host family to the au pair during his or her time with the family.

In order to file income taxes in the United States, all au pairs need to have either a social security number or an Individual Taxpayer Identification Number ("ITIN"). Your LCC can provide advice on how to apply for this number, or au pairs can visit the Social Security Administration's web page on this topic: **http://www.ssa.gov/ pubs/10181.html**

Au pairs are allowed to claim a personal exemption for themselves, but are not eligible for the standard deduction in their tax filing. This means that the au pairs will usually owe taxes on the difference between their total stipend earnings and the current personal exemption amount. The au pair should almost always be in the lowest tax bracket (currently 10% for 2009 federal taxes), but they should confirm this in the applicable tax tables for the current year. Au pairs are explicitly not eligible for the Earned Income Tax Credit, The Hope

Credit or the Lifetime Learning Credits. As stated above, au pairs are not considered "students" by the IRS so they are also not eligible to exclude au pair wages from gross income under the student article of any U.S. income tax treaty.

***Example:***
*An au pair earns a total of $5,872.50 from 30 weeks of stipend during a calendar year. After deducting the $3,650 personal exemption (tax year 2009) and assuming no other deductions or credits, s/he has taxable income of $2,222.50. Using the 2009 tax tables, the au pair would owe $221 in federal taxes.*

Host families should remind their au pair that s/he needs to be ready to file and pay taxes on or, before, April 15, as au pairs might need to plan ahead and have these funds available. Au pairs who will no longer be in the United States on April 15 may file their tax return early, before they leave, or they can submit it online using one of the many third-party services currently available.

We have included a sample form 1040NR-EZ from tax year 2009 which au pairs can use as a guide to completing their own form. Please remember that any specific tax questions or issues with the form should be addressed to a tax preparation professional.

Because the maximum tax burden for most au pairs will be less than $1,000, there is no need for au pairs to make quarterly estimated payments, or for host families to withhold taxes. However, if an au pair is paid a particularly large stipend amount*, they and their host family should consult with a tax advisor to check whether there is a need to withhold taxes or make quarterly estimated payments. In the rare case that an au pair has previously been in the United States with a F, J, M or Q non-immigrant visa *before becoming an au pair,* she might be considered a "resident alien" for tax purposes. In such a case, the host family and au pair should consult a tax advisor because the host family may need to withhold Social Security and Medicare taxes and to pay Federal Unemployment Tax for their au pair.

## Host Family Taxes

There are three specific issues that typically concern host families with regards to taxes and the au pair program:
- Child and Dependent Care Tax credits
- Dependent Care Reimbursement Programs ("FSAs")
- Withholding requirements for au pair taxes

### Child and Dependent Care Tax Credit

As long as the host family has used an au pair's child care services in order to work or look for employment, the stipend paid to the au pair, the costs of room and board and the fees paid to Cultural Care are all eligible under the Child and Dependent Care Tax Credit.

*Some families choose to pay more than the required $195.75 stipend. However, this is not an exchange for more hours. Many families choose to increase the stipend during an extension year.*

**CC00014853**

Exhibit S

Defs.' Appx. 0000184

Fees paid to Cultural Care are eligible for the credit only once the au pair begins to provide services. However, if a host family pays a fee in one calendar year (e.g. an application, selection fee or program fee), but the au pair does not begin to provide services until the next year, the fee paid is eligible in the year during which the au pair began to provide services. For example, fees paid in December 2009 for a February 2010 au pair arrival are eligible for the credit in the 2010 tax year. As tax and eligibility laws are continually changing, we recommend that host families contact a tax professional to confirm expense eligibility for the Child and Dependent Care Tax Credit. Please note that Cultural Care's federal tax ID number may only be used to claim the tax credit for fees paid to Cultural Care – it may not be used to claim a credit for stipend paid to an au pair or for the cost of room and board.

To claim the Child and Dependent Care Tax Credit for au pair stipend and the costs of room and board, the host family will need to provide their au pair's social security number or ITIN. You can read more about this tax credit on the IRS website:
*http://www.irs.gov/pub/irs-pdf/p503.pdf*

## Dependent Care Reimbursement Programs
The eligibility requirements for these programs (often called "Flex-Spending Accounts" or "FSAs") are usually identical to those for the Child and Dependent Care Tax Credit. Please note that expenses paid for using Dependent Care Reimbursement Program funds are not also eligible for the Child and Dependent Care Tax Credit.

Cultural Care Au Pair is happy to provide host families with a summary statement of program and other payments received during a tax year. We are also able to sign and complete most forms required by an FSA administrator for reimbursement. Please note, however, that we are only able to provide letters that list either the total amount paid in a given calendar year, or the amount paid in a given calendar year with the dates of the applicable full au pair term of service (e.g. one year, six months, etc.). Cultural Care cannot provide documentation explicitly pro-rating payments received to a specified range of dates. Contact our office if you require any assistance in claiming a Dependent Care reimbursement.

## Withholding for Au Pair Taxes
Because the maximum tax burden for most au pairs will be less than $1,000, there is no need for the au pair to make quarterly estimated payments. In addition, because au pair wages are deemed by the IRS to be paid for domestic service in a private home, they are not subject to mandatory income tax withholding on Forms 941 and W-2 by the host family. As mentioned above, if an au pair is paid a particularly large stipend amount, the host family should consult with a professional tax advisor to check whether they need to withhold taxes or have their au pair make quarterly estimated payments.

Host families usually do not need to pay federal unemployment taxes for their au pair or withhold Social Security and Medicare taxes. In the rare case that an au pair has previously been in the United States on a F, J, M or Q non-immigrant visa *before becoming an au pair,* then they might be considered a "resident alien" during their current stay in the United States. If this is the case, the host family should consult with their tax advisor to determine whether they need to make these withholdings and payments for their au pair.

## Helpful tips for filling out the 1040NR-EZ Form (see sample form on the following page)

1) Enter only your US source income (au pair stipend) on line 3
2) Almost all au pairs should have no itemized deductions to list unless their host family withheld state or local income taxes from their stipend (very, very rare cases)
3) Enter the current exemption amount. This is a standard amount that all tax payers can use to reduce taxable income – you can find the applicable amount in the instructions that came with your tax form
4) Line 16 should almost always read "$0" as au pair wages are not typically subject to social security and Medicare taxes because of the au pair's status as a J-1 non-immigrant and as a non-resident alien. In the rare case that an au pair has previously been in the United States with a F, J, M or Q non-immigrant visa before becoming an au pair, she might be considered a "resident alien" for tax purposes. Please check with a tax professional if this is the case
5) Again, the vast majority of au pairs will report "$0" on line 21 because their host families have not withheld taxes for them, and because the au pairs have not been making quarterly estimated payments during the tax year. If either of these cases did happen, you should enter the appropriate amounts on lines 18 and 19 and then add them up on line 21
6) If line 21 is greater than line 17 you have overpaid your taxes and are due a refund. This should be the case ONLY if you paid estimated taxes during the year or your host family withheld taxes from your stipend payments. In that case, you can put the total overpaid amount on line 23a along with your bank account information to receive a refund from the IRS
7) If line 17 is greater than line 21 (this should be the case for almost all au pairs), then you need to pay the difference between the two lines as tax. Enter the difference on line 25 and follow the directions in the instruction booklet that came with your form to pay by check, electronic fund transfer, credit or debit card
8) As long as line 25 is less than $1,000 you can put "$0" on line 26. If you ended up paying more than $1,000 because your stipend payment was significantly higher than the minimum amount, you may have to pay an additional penalty – see the instructions for more details
9) Remember to sign and date your return! If you used a professional tax advisor to prepare your form, they should have signed it as well in the space provided below your signature
10) You need to answer all the questions on Page 2 ("Other Information")
11) You should enter your home country on this line
12) The answers to sections C, D and F should almost always be "No", but you should always answer all questions truthfully
13) For section E you should write "J-1"
14) In section G you should start with your arrival date at the au pair school in New York and list any dates when you left the country for any trips (both personal and with your host family). In the example, this au pair took a holiday trip outside the country with her family from December 15 to December 30. You then need to total up all days in the United States during the tax calendar year and enter that in section H. Please note that au pairs from Canada or Mexico can check the appropriate box and skip to section H
15) Au pair stipend wages are generally not exempt under any U.S. tax treaties so you should usually ignore section J. If you believe there is an applicable tax treaty with your home country, you should consult with a tax professional for more details

CC00014854

Exhibit S

Defs.' Appx. 0000185

Form **1040NR-EZ**

**U.S. Income Tax Return for Certain Nonresident Aliens With No Dependents**

OMB No. 1545-0074

2009

Department of the Treasury
Internal Revenue Service

| Please print or type. | Your first name and initial | Last name | Identifying number (see page 4) |
|---|---|---|---|
| | Jane | Au Pair | 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 |

Present home address (number, street, and apt. no., or rural route). If you have a P.O. box, see page 4.
123 Main Street

City, town or post office, state, and ZIP code. If you have a foreign address, see page 4.
Anytown, MA 00000

Country ▶ USA

**Filing Status**
Check only one box.

1 ☑ Single nonresident alien    2 ☐ Married nonresident alien

**Attach Forms W-2 or 1042-S here.**
Also attach Form(s) 1099-R if tax was withheld.

Enclose, but do not attach, any payment.

| | | | |
|---|---|---|---|
| 3 | Wages, salaries, tips, etc. Attach Form(s) W-2 (see pages 4 and 5) | 3 | 6200 | ① |
| 4 | Taxable refunds, credits, or offsets of state and local income taxes (see page 5) | 4 | 0 | |
| 5 | Scholarship and fellowship grants. Attach Form(s) 1042-S or required statement (see page 5) | 5 | 0 | |
| 6 | Total income exempt by a treaty from page 2, Item J(1)(e) .  6 | 0 | | |
| 7 | Add lines 3, 4, and 5. | 7 | 6200 | |
| 8 | Scholarship and fellowship grants excluded (see page 6)  8 | 0 | | |
| 9 | Student loan interest deduction (see page 6) .  9 | 0 | | |
| 10 | Subtract the sum of line 8 and line 9 from line 7. This is your **adjusted gross income** . | 10 | 6200 | |
| 11 | **Itemized deductions** (see page 7) . | 11 | 0 | ② |
| 12 | Subtract line 11 from line 10 | 12 | 6200 | |
| 13 | Exemption (see page 7) . | 13 | 3650 | ③ |
| 14 | **Taxable income.** Subtract line 13 from line 12. If line 13 is more than line 12, enter -0- | 14 | 2550 | |
| 15 | **Tax.** Find your tax in the Tax Table on pages 17 through 25 | 15 | 254 | |
| 16 | Unreported social security and Medicare tax from Form:  a ☐ 4137  b ☐ 8919 | 16 | 0 | ④ |
| 17 | Add lines 15 and 16. This is your **total tax** . ▶ | 17 | 254 | |
| 18 | Federal income tax withheld (from Forms W-2, 1042-S, and 1099-R) .  18 | 0 | | |
| 19 | 2009 estimated tax payments and amount applied from 2008 return .  19 | 0 | | |
| 20 | Credit for amount paid with Form 1040-C .  20 | 0 | | |
| 21 | Add lines 18 through 20. These are your **total payments** . ▶ | 21 | 0 | ⑤ |

**Refund**

Direct deposit? See page 8 and fill in 23b, 23c, and 23d, or Form 8888.

| | | | |
|---|---|---|---|
| 22 | If line 21 is more than line 17, subtract line 17 from line 21. This is the amount you **overpaid** | 22 | | |
| 23a | Amount of line 22 you want **refunded to you.** | | | |
| | If Form 8888 is attached, check here . ▶ ☐ | 23a | | ⑥ |
| b | Routing number | | | |
| | c Type: ☐ Checking ☐ Savings | | | |
| d | Account number | | | |
| e | If you want your refund check mailed to an address outside the United States not shown above, enter that address here: | | | |
| 24 | Amount of line 22 you want applied to your 2010 estimated tax  ▶  24 | | | |

**Amount You Owe**

| | | | |
|---|---|---|---|
| 25 | **Amount you owe.** Subtract line 21 from line 17. For details on how to pay, see page 9 ▶ | 25 | 254 | ⑦ |
| 26 | Estimated tax penalty (see page 9). Also include on line 25  26 | 0 | ⑧ | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see page 10)? ☐ **Yes.** Complete the following. ☑ **No**

Designee's name ⑨    Phone no. ▶ ( )    Personal identification number (PIN) ▶

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and accurately list all amounts and sources of U.S. source income I received during the tax year. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Keep a copy of this return for your records.

| Your signature | Date | Your occupation in the United States |
|---|---|---|
| | | Au Pair |

**Paid Preparer's Use Only**

| Preparer's signature | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | | EIN | |
| | | Phone no. ( ) | |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 15.    Cat. No. 21534N    Form **1040NR-EZ** (2009)

CC00014855
Exhibit S

Defs.' Appx. 0000186

Form 1040NR-EZ (2009)                                                                                          Page **2**

## Other Information (see page 10)  ⑩

**A**  Of what country or countries were you a citizen or national during the tax year?  Germany ....................................

**B**  In what country did you claim residence for tax purposes during the tax year?  **United States** .........................  ⑪

**C**  Have you ever applied to be a green card holder (lawful permanent resident) of the United States? . . .  ☐ Yes ☑ No ◄

**D**  Were you ever:
   **1.** A U.S. citizen?  . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes ☑ No ◄⑩
   **2.** A green card holder (lawful permanent resident) of the United States?  . . . . . . . . . . .  ☐ Yes ☑ No ◄
   If you answer "Yes" to **1** or **2**, see Pub. 519, chapter 4, to see expatriation rules that apply to you.

**E**  What was your visa type on the last day of the tax year?  J-1 ....................................  ⑬

**F**  Have you ever changed your visa type (nonimmigrant status)?  . . . . . . . . . . . . . . . .  ☐ Yes ☑ No ◄

**G**  List all dates you entered and left the United States during 2009 (see page 10).
   **Note.** If you are a resident of Canada or Mexico AND enter and leave the United States at frequent
   intervals, **check the box for Canada or Mexico** and skip to question H . . . . . . . . . .  ☐ Canada  ☐ Mexico

| Date entered United States mm/dd/yy | Date departed United States mm/dd/yy | | Date entered United States mm/dd/yy | Date departed United States mm/dd/yy |
|---|---|---|---|---|
| 07 / 24 / 09 | 12 / 15 / 09 | ⑭ | / / | / / |
| 12 / 30 / 09 | / / | | / / | / / |
| / / | / / | | / / | / / |
| / / | / / | | / / | / / |
| / / | / / | | / / | / / |
| / / | / / | | / / | / / |
| / / | / / | | / / | / / |
| / / | / / | | / / | / / |

**H**  Give number of days (including vacation, nonworkdays, and partial days) you were present in the United States during
   2007 ............ 0 ............ , 2008 ............ 0 ............ , and 2009 ............ 146 ............ .

**I**  Did you file a U.S. income tax return for any prior year?  . . . . . . . . . . . . . . . .  ☐ Yes ☑ No
   If "Yes," give the latest year and form number you filed ▶ ............................................

**J**  Income Exempt from Tax—If you are claiming the benefits of a U.S. income tax treaty with a foreign country, complete 1
   and 2 below. See Pub. 901 for more information on tax treaties.

   **1.** Enter the name of the country, the applicable tax treaty article, the number of months in prior years you claimed the
   treaty benefit, and the amount of exempt income in the columns below. Attach Form 8833 if required (see page 10).

| (a) Country | (b) Tax treaty article | (c) Number of months claimed in prior tax years | (d) Amount of exempt income in current tax year |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  | ⑮
|  |  |  |  |
|  |  |  |  |
| **(e) Total.** Enter this amount on Form 1040NR-EZ, line 6. Do not enter it on line 3 or line 5 . . . . | | | |

   **2.** Were you subject to tax in a foreign country on any of the income shown in 1(d) above? . . .  ☐ Yes ☐ No

Form **1040NR-EZ** (2009)

CC00014856
Exhibit S



**New York State Department of Labor**
David A. Paterson, *Governor*
M. Patricia Smith, *Commissioner*

August 27, 2008



Re:  Request for Opinion
     Employee Training
     RO-08-0020

Dear ▮▮▮▮:

    I have been asked to respond to your letter of February 28, 2008. Please accept my apology for the time it has taken to respond. Your letter states that you own a day care center and that under New York State law; teachers are required to obtain 30 hours of childcare training in designated subjects every two years. Your letter asks whether you are required to pay the teachers for time spent in training.

    New York State Labor Law §2(7) defines the term "employed" to include persons "permitted or suffered to work." It is the opinion of this Department that, generally, a person is "employed" by another when he/she is acting under the direction and control of that person, or if he/she is doing some act for the benefit of that person. Therefore, the answer to the question of whether a person is "employed" by another during education or training depends on whether the alleged employee is receiving such training for his/her own benefit or for the benefit of his/her employer. If, for example, your business had its own unique standards and procedures for child care in addition to those mandated by New York State, and if the business required all childcare workers in its employ to receive training in such standards and procedures, the time spent in such training would be for the benefit of the employer, and the employees would have to be paid for the time spent in such training.

    However, in the situation you have described, the employees attend State-mandated classes to maintain their certification as childcare workers. Presumably, this training and certification could be used by the employee to obtain employment with any other child care provider in New York State. This training, therefore, is not unique to your business, and would have to be obtained by a childcare worker whether or not he/she was employed by your business. It is the Department's opinion, therefore, that the training you describe is for the benefit of the employee, not the employer. Therefore, these childcare workers are not "employed" by your business during their State-mandated training and your business is not obligated by New York State law to compensate these employees for time spent by them in such training.

Tel: (518) 457-4380, Fax: (518) 485-1819
W. Averell Harriman State Office Campus, Bldg. 12, Room 509, Albany, NY 12240

www.labor.state.ny.us                                                    bcejjs@labor.state.ny.us

Please be advised, however, that the above opinion applies only to that portion of employee training which is necessary to meet State mandates. Any portion of an employee's training which is not State mandated and is specific to an individual employer would be considered time spent in employment for which the employee would have to be paid.

Your letter also asks whether training time must be compensated at time and one half for all hours in excess of forty in one week. Should the total hours "employed," as described above, by your workers total more then forty hours in one week, the excess hours must be paid at time and one half.

This opinion is based on the information provided in your letter of February 28, 2008. A different opinion might result if the facts provided were not accurate, or if any other relevant fact was not provided.

Very truly yours,

Maria L. Colavito, Counsel

By:   Benjamin T. Garry
        Senior Attorney

cc:   Carmine Ruberto

Bcc: OPINION FILE
        DAYFILE

Defs.' Appx. 0000189



**United States Department of State**

***Bureau of Educational and Cultural Affairs***

***Washington, DC 20522***

February 1, 2017

Dear American Host Family:

On behalf of the U.S. Department of State, I welcome your decision to host an au pair, which is a French term meaning "on par with." The au pair program, one of many ways that citizens from other countries participate in people-to-people exchange programs in the United States, offers a unique opportunity for you to experience firsthand the richness and diversity of a culture different from your own. This is also an opportunity to share American values and culture with someone. Through this program, you will join thousands of American families who serve as citizen ambassadors of the United States.

The au pair program is primarily an exchange opportunity with the goal of increasing mutual understanding between foreign nationals and Americans. The way you interact with your au pair will have a significant impact on the way he or she understands this country and also Americans. Your au pair will likely have much to learn about American customs and culture, and may begin the exchange with only basic English language skills. The most successful host families expend the time, energy and initiative necessary to help their au pair adjust to American life and ensure their au pair feels safe, stays healthy, and engages in educational and cultural activities.

Secondly, while you are hosting a young person who will help you care for your children, the ultimate responsibility for your children's well-being will continue to rest with you. You must be prepared to work with your au pair to establish the best care for your children. Keeping a transparent schedule that both you and your au pair agree to is important and will reduce misunderstandings.

We also want to call your attention to the federal regulations. Au pairs' responsibilities may not exceed 10 hours of childcare a day or 45 hours a week. EduCare participants may not work more than 10 hours a day or 30 hours a week, nor may they be placed in a home with pre-school children unless alternative arrangements for full-time care are in place. Au pairs may not be placed with a host family that has children under the age of two, unless the au pair has at least 200 hours of documented infant child care experience. In addition, au pairs may not be placed with a host family that has a special needs child (as so identified by the host family), unless the au pair has specifically identified his or her prior experience, skills, or training in the care of special needs children and the host family has reviewed and acknowledged in writing the au pair's prior experience, skills, or training. Assigning general housekeeping chores unrelated to the care of your children is prohibited. All au pairs receive one and a half days off each week, a complete weekend off each month, and two weeks of paid vacation during their program.

Information about the au pair program can be found on our website at http://j1visa.state.gov/programs/au-pair. The regulations governing the program (22 CFR 62 - Exchange Visitor Program) are found here — Exchange Visitor Program regulations. These regulations address the most frequently asked questions about the program and provide the rules under which the program operates. It is extremely important that you notify your sponsoring organization if you have any concerns or if your au pair's personal health, safety or well-being is threatened in any way. If the sponsoring organization is not responsive to your concerns, you should contact us directly at JVisas@state.gov.

The au pair program offers you, your children, and your au pair the opportunity to create a strong lifelong relationship. I hope this will be a positive and rewarding experience for all of you. The U.S. Department of State is deeply appreciative of your participation in ensuring the au pair program reaches its maximum potential as a quality educational and cultural exchange experience.

Sincerely,

G.K. Saba
Director, Policy & Program Support
 for Private Sector Exchange

Defs.' Appx. 0000190

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No.  1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.,*

Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.,*

Defendants.

---

### DEFENDANT CULTURAL CARE, INC.'S AMENDED ANSWER TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

---

Pursuant to Fed. R. Civ. P. 33, Defendant Cultural Care, Inc. ("Defendant" or "Cultural Care") submits the following amended response to Plaintiffs' First Set of Interrogatories.  Cultural Care is amending its answer to Interrogatory No. 3 at Plaintiffs' request, as expressed during meet and confer conferences and in correspondence the parties have exchanged.  In so doing, Cultural Care does not agree that its initial answer is deficient in any manner.

### GENERAL OBJECTIONS

Cultural Care incorporates the General Objections set forth in Defendant Cultural Care, Inc.'s Answers to Plaintiffs' First Set of Interrogatories.

### ANSWER TO INTERROGATORY NO. 3

**INTERROGATORY NO. 3:** Identify each time you have communicated to anyone that au pairs in your sponsorship may be compensated more than the weekly stipend. For

Defs.' Appx. 0000191

each responsive communication, identify the audience by name, whether an au pair, host family, government entity or other; the forum in which the communication was made; the date or, if published, range of dates the communication was viewable; and the precise communication.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant further objects to this interrogatory on the grounds that it is overly broad, is not reasonably limited in time to the facts and transactions alleged in the Amended Complaint, seeks information that is not proportional to the needs of the case, and is unduly burdensome. It would be impossible to catalog and provide the requested detail with respect to every time that anyone on behalf of Cultural Care communicated the information set forth in this interrogatory, both because records do not exist for all oral communications and because of the sheer volume of communications that would be involved. Cultural Care objects to any suggestion that it is required to undertake such an exercise, and will not attempt to do so here. Without waiving the aforementioned objections, Cultural Care responds as follows:

Cultural Care representatives have had thousands of conversations and other communications with current or prospective *au pairs,* Host Families, and others regarding the *au pair* program. Cultural Care does not keep a transcript of each conversation, and this topic could be covered in emails and other documents located in the files of virtually any employee. Cultural Care does confirm that all *au pairs* it sponsors are compensated weekly. Cultural Care also provides host families with

Defs.' Appx. 0000192

written information regarding taxes and personal financial matters.  This includes information regarding taxes if the families choose to pay more than the DOS-required $195.75 stipend, thereby potentially triggering quarterly estimated taxes and withholding. *See, e.g.*, CC00001310 (attached).  If a host family is nonetheless uncertain and asks whether it may pay more than the required minimum, Cultural Care's policy is to inform them that they are free to pay more than $195.75, provided it is not dependent on the au pair increasing hours or responsibilities to a level not permitted by the DOS regulations.

Answering further, pursuant to Fed. R. Civ. P. 33(d), there are additional marketing materials and informational documents for the host families, as well as internal training documents, that set forth and/or are consistent with Cultural Care's policy regarding this issue.  By way of example only, Cultural Care directs Plaintiffs to CC00000005; CC00000013-14; CC00000021-22; CC00000030; CC00000036; CC00000047; CC00000068-70. In addition, Cultural Care has proposed a comprehensive search of its documents, including the email files of twelve key personnel, which will include search terms relevant to this topic.  To the extent that process identifies documents that discuss the ability of host families to pay a stipend in excess of $195.75, they will be produced to the Plaintiffs.

Answering further, Plaintiff Beaudette Deetlefs testified during her deposition that individuals she described as representatives of Cultural Care informed her that an *au pair* may be compensated more than $195.75 per week.  Cultural Care directs the

Defs.' Appx. 0000193

Plaintiffs to that deposition transcript for further information regarding Ms. Deetlefs'

testimony.

Dated:  October 24, 2016                    Respectfully submitted,

                                            s/ Joan A. Lukey
                                            Joan A. Lukey (joan.lukey@choate.com)
                                            Robert M. Buchanan, Jr.
                                            (rbuchanan@choate.com)
                                            Michael T. Gass (mgass@choate.com)
                                            Justin J. Wolosz (jwolosz@choate.com
                                            Lyndsey M. Kruzer (lkruzer@choate.com)
                                            CHOATE HALL & STEWART LLP
                                            Two International Place
                                            Boston, Massachusetts 02110
                                            Telephone: (617) 248-4790

                                            James M. Lyons (jlyons@lrrc.com)
                                            Jessica L. Fuller (jfuller@lrrc.com)
                                            Diane Hazel (dhazel@lrrc.com)
                                            LEWIS ROCA ROTHGERBER CHRISTIE LLP
                                            One Tabor Center, Suite 3000
                                            1200 Seventeenth Street
                                            Denver, CO 80202
                                            Tel: (303) 623-9000
                                            Fax: (303) 623-9222

                                            **Attorneys for Defendant Cultural Care, Inc.
                                            d/b/a Cultural Care Au Pair**

Defs.' Appx. 0000194

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on October 24, 2016, I served the foregoing on the following e-mail addresses.

**Lauren Fleischer Louis**
llouis@bsfllp.com

**Sigrid Stone McCawley**
smccawley@bsfllp.com

**Matthew Lane Schwartz**
mlschwartz@bsfllp.com

**Peter Murray Skinner**
pskinner@bsfllp.com

**Randall Wade Jackson**
rjackson@bsfllp.com

**Alexander Hood**
alex@towardsjustice.org

**Bogdan Enica**
bogdane@hotmail.com

**Brian A. Birenbach**
brian@rietzlawfirm.com

**Brooke A. Colaizzi**
bcolaizzi@shermanhoward.com

**Chandra M. Feldkamp**
cfeldkamp@kellywalkerlaw.com

**Christian D. Hammond**
chammond@duffordbrown.com

**Adam A. Hubbard**
aahubbard@hollandhart.com

**Heather F. Vickles**
hvickles@shermanhoward.com

**Kathryn A. Reilly**
reilly@wtotrial.com

**James E. Hartley**
jhartley@hollandhart.com

**John R. Mann**
jmann@gordonrees.com

**Lawrence D. Stone**
lstone@duffordbrown.com

**Lawrence L. Lee**
llee@laborlawyers.com

**Martin J. Estevao**
mestevao@armstrongteasdale.com

**Martha L. Fitzgerald**
mfitzgerald@bhfs.com

**Meshach Y. Rhoades**
rhoadesm@armstrongteasdale.com

**Mher Hartoonian**
mhartoonian@hollandhart.com

**Raymond M. Deeny**
rdeeny@shermanhoward.com

**Thomas B. Quinn**
tquinn@gordonrees.com

**W.V. Bernie Siebert**
bsiebert@shermanhoward.com

**William J. Kelly III**
wkelly@kellywalkerlaw.com

**Erica L. Herrera**
eherrera@shermanhoward.com

**William L. Monts III**
William.monts@hoganlovells.com

**Susan M. Schaecher**
sschaecher@laborlawyers.com

**David Meschke**
dmeschke@bhfs.com

*s/ Joan A. Lukey*
Joan A. Lukey

Defs.' Appx. 0000195

 **Cultural Care Au Pair**

# Taxes and personal financial matters

## Introduction
While Cultural Care Au Pair is not able to provide specific tax information for host families because their circumstances vary a great deal, we are pleased to outline some general guidelines regarding host family and au pair taxes. We hope that this information is a useful resource for host families and au pairs, as well as helpful preparatory material for a conversation with a professional tax advisor or the Internal Revenue Service ("IRS"). Additional information on au pair taxes can be found by going to **www.irs.gov** and entering the words "au pair" in the search box.

Please note that Cultural Care Au Pair is not licensed to provide official tax advice, so our staff is unable to answer specific questions regarding individual host family or au pair tax issues beyond the scope of topics covered in this document. Since tax laws vary from state to state and are changed on a frequent basis, we advise host families and au pairs to speak with a local professional tax advisor or directly with the IRS for definitive answers to any specific questions regarding taxation.

Cultural Care Inc.'s federal tax ID number: 20-2020345

## Au Pair Taxes
The IRS considers au pairs to be "employees" of the host family for tax reasons, even though they are in the United States on a "cultural exchange" visa. This means that au pairs are required to file U.S. individual income tax returns even though many au pairs will not owe any taxes. By April 15, au pairs should file form 1040NR-EZ or 1040NR to report their au pair stipend for the previous calendar year. Au pairs will need to provide some record of stipend payments received from the host family, so we recommend keeping a list of weekly payments showing the dates, amounts and payment method used to record the total stipend paid by the host family to the au pair during his or her time with the family.

In order to file income taxes in the United States, all au pairs need to have either a social security number or an Individual Taxpayer Identification Number ("ITIN"). Your LCC can provide advice on how to apply for this number, or au pairs can visit the Social Security Administration's web page on this topic: **http://www.ssa.gov/pubs/10181.html**

Au pairs are allowed to claim a personal exemption for themselves, but are not eligible for the standard deduction in their tax filing. This means that the au pairs will usually owe taxes on the difference between their total stipend earnings and the current personal exemption amount. The au pair should almost always be in the lowest tax bracket (currently 10% for 2013 federal taxes), but they should confirm this in the applicable tax tables for the current year. Au pairs are explicitly not eligible for the Earned Income Tax Credit, The Hope Credit or the Lifetime Learning Credits. As stated above, au pairs are not considered "students" by the IRS so they are also not eligible to exclude au pair wages from gross income under the student article of any U.S. income tax treaty.

### Example:
*An au pair earns a total of $5,872.50 from 30 weeks of stipend during a calendar year. After deducting the $3,900 personal exemption (tax year 2013) and assuming no other deductions or credits), s/he has taxable income of $2,300. Using the 2013 tax tables, the au pair would owe $216 in federal taxes.*

Host families should remind their au pair that s/he needs to be ready to file and pay taxes on, or before, April 15, as au pairs might need to plan ahead and have these funds available. Au pairs who will no longer be in the United States on April 15 may file their tax return early, before they leave, or they can submit it online using one of the many third-party services currently available.

We have included a sample form 1040NR-EZ from tax year 2013 which au pairs can use as a guide to completing their own form. Please remember that any specific tax questions or issues with the form should be addressed to a tax preparation professional.

Because the maximum tax burden for most au pairs will be less than $1,000, there is no need for au pairs to make quarterly estimated payments, or for host families to withhold taxes. However, if an au pair is paid a particularly large stipend amount*, they and their host family should consult with a tax advisor to check whether there is a need to withhold taxes or make quarterly estimated payments. In the rare case that an au pair has previously been in the United States with a F, J, M or Q non-immigrant visa *before becoming an au pair*, she might be considered a "resident alien" for tax purposes. In such a case, the host family and au pair should consult a tax advisor because the host family may need to withhold Social Security and Medicare taxes and to pay Federal Unemployment Tax for their au pair.

## Host Family Taxes
There are three specific issues that typically concern host families with regards to taxes and the au pair program:
- Child and Dependent Care Tax credits
- Dependent Care Reimbursement Programs ("FSAs")
- Withholding requirements for au pair taxes

## Child and Dependent Care Tax Credit
As long as the host family has used an au pair's child care services in order to work or look for employment, the stipend paid to the au pair, the costs of room and board and the fees paid to Cultural Care are all eligible under the Child and Dependent Care Tax Credit.

*Some families choose to pay more than the required $195.75 stipend. However, this is not an exchange for more hours. Many families choose to increase the stipend during an extension year.*

CC00001310

Defs.' Appx. 0000196

Fees paid to Cultural Care Au Pair are eligible for the credit only once the au pair begins to provide services. However, if a host family pays a fee in one calendar year (e.g. an application, selection fee or program fee), but the au pair does not begin to provide services until the next year, the fee paid is eligible in the year during which the au pair began to provide services. For example, fees paid in December 2012 for a February 2013 au pair arrival are eligible for the credit in the 2013 tax year. As tax and eligibility laws are continually changing, we recommend that host families contact a tax professional to confirm expense eligibility for the Child and Dependent Care Tax Credit. Please note that Cultural Care's federal tax ID number may only be used to claim the tax credit for fees paid to Cultural Care – it may not be used to claim a credit for stipend paid to an au pair or for the cost of room and board.

To claim the Child and Dependent Care Tax Credit for au pair stipend and the costs of room and board, the host family will need to provide their au pair's social security number or ITIN. You can read more about this tax credit on the IRS website:
*http://www.irs.gov/pub/irs-pdf/p503.pdf*

## Dependent Care Reimbursement Programs
The eligibility requirements for these programs (often called "Flex-Spending Accounts" or "FSAs") are usually identical to those for the Child and Dependent Care Tax Credit. Please note that expenses paid for using Dependent Care Reimbursement Program funds are not also eligible for the Child and Dependent Care Tax Credit.

Cultural Care Au Pair is happy to provide host families with a summary statement of program and other payments received during a tax year. We are also able to sign and complete most forms required by an FSA administrator for reimbursement. Please note, however, that we are only able to provide letters that list either the total amount paid in a given calendar year, or the amount paid in a given calendar year with the dates of the applicable full au pair term of service (e.g. one year, six months, etc.). Cultural Care Au Pair cannot provide documentation explicitly pro-rating payments received to a specified range of dates. Contact our office if you require any assistance in claiming a Dependent Care reimbursement.

## Withholding for Au Pair Taxes
Because the maximum tax burden for most au pairs will be less than $1,000, there is no need for the au pair to make quarterly estimated payments. In addition, because au pair wages are deemed by the IRS to be paid for domestic service in a private home, they are not subject to mandatory income tax withholding on Forms 941 and W-2 by the host family. As mentioned above, if an au pair is paid a particularly large stipend amount, the host family should consult with a professional tax advisor to check whether they need to withhold taxes or have their au pair make quarterly estimated payments.

Host families usually do not need to pay federal unemployment taxes for their au pair or withhold Social Security and Medicare taxes. In the rare case that an au pair has previously been in the United States on a F, J, M or Q non-immigrant visa *before becoming an au pair*, then they might be considered a "resident alien" during their current stay in the United States. If this is the case, the host family should consult with their tax advisor to determine whether they need to make these withholdings and payments for their au pair.

## *Helpful tips for filling out the 1040NR-EZ Form* (see sample form on the following page)

1) Enter only your US source income (au pair stipend) on line 3
2) Almost all au pairs should have no itemized deductions to list unless their host family withheld state or local income taxes from their stipend (very, very rare cases)
3) Enter the current exemption amount. This is a standard amount that all tax payers can use to reduce taxable income – you can find the applicable amount in the instructions that came with your tax form
4) Line 16 should almost always read "$0" as au pair wages are not typically subject to social security and Medicare taxes because of the au pair's status as a J-1 non-immigrant and as a non-resident alien. In the rare case that an au pair has previously been in the United States with a F, J, M or Q non-immigrant visa before becoming an au pair, she might be considered a "resident alien" for tax purposes. Please check with a tax professional if this is the case
5) Again, the vast majority of au pairs will report "$0" on line 21 because their host families have not withheld taxes for them, and because the au pairs have not been making quarterly estimated payments during the tax year. If either of these cases did happen, you should enter the appropriate amounts on lines 18 and 19 and then add them up on line 21
6) If line 21 is greater than line 17 you have overpaid your taxes and are due a refund. This should be the case ONLY if you paid estimated taxes during the year or your host family withheld taxes from your stipend payments. In that case, you can put the total overpaid amount on line 23a along with your bank account information to receive a refund from the IRS
7) If line 17 is greater than line 21 (this should be the case for almost all au pairs), then you need to pay the difference between the two lines as tax. Enter the difference on line 25 and follow the directions in the instruction booklet that came with your form to pay by check, electronic fund transfer, credit or debit card
8) As long as line 25 is less than $1,000 you can put "$0" on line 26. If you ended up paying more than $1,000 because your stipend payment was significantly higher than the minimum amount, you may have to pay an additional penalty – see the instructions for more details
9) Remember to sign and date your return! If you used a professional tax advisor to prepare your form, they should have signed it as well in the space provided below your signature
10) You need to answer all the questions on Page 2 ("Other Information")
11) You should enter your home country on this line
12) The answers to sections C, D and F should almost always be "No", but you should always answer all questions truthfully
13) For section E you should write "J-1"
14) In section G you should start with your arrival date at the au pair school in New York and list any dates when you left the country for any trips (both personal and with your host family). In the example, this au pair took a holiday trip outside the country with her family from December 15 to December 30. You then need to total up all days in the United States during the tax calendar year and enter that in section H. Please note that au pairs from Canada or Mexico can check the appropriate box and skip to section H
15) Au pair stipend wages are generally not exempt under any U.S. tax treaties so you should usually ignore section J. If you believe there is an applicable tax treaty with your home country, you should consult with a tax professional for more details

Defs.' Appx. 0000197

Form **1040NR-EZ**

Department of the Treasury
Internal Revenue Service

**U.S. Income Tax Return for Certain Nonresident Aliens With No Dependents**

OMB No. 1545-0074

20**13**

Please print or type. See separate instructions.

| | |
|---|---|
| Your first name and initial: Jane | Last name: Au Pair |
| | Identifying number (see instructions): 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 |

Present home address (number, street, and apt. no., or rural route). If you have a P.O. box, see instructions.
123 Main street

City, town or post office, state, and ZIP code. If you have a foreign address, see instructions.
Anytown, MA 00000

Foreign country name | Foreign province/state | Foreign postal code

**Filing Status** Check only one box.

1 ☑ Single nonresident alien   2 ☐ Married nonresident alien

**Attach Form(s) W-2 or 1042-S here.** Also attach Form(s) 1099-R if tax was withheld.

| | | | |
|---|---|---|---|
| 3 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 3 | 6200 ① |
| 4 | Taxable refunds, credits, or offsets of state and local income taxes | 4 | 0 |
| 5 | Scholarship and fellowship grants. Attach Form(s) 1042-S or required statement. | 5 | 0 |
| 6 | Total income exempt by a treaty from page 2, Item J(1)(e) | 6 | |
| 7 | Add lines 3, 4, and 5 | 7 | 6200 |
| 8 | Scholarship and fellowship grants excluded | 8 | |
| 9 | Student loan interest deduction | 9 | |
| 10 | Subtract the sum of line 8 and line 9 from line 7. This is your **adjusted gross income** | 10 | 6200 |
| 11 | **Itemized deductions** | 11 | 0 ② |
| 12 | Subtract line 11 from line 10 | 12 | 6200 |
| 13 | Exemption | 13 | 3900 ③ |
| 14 | **Taxable income.** Subtract line 13 from line 12. If line 13 is more than line 12, enter -0- | 14 | 2300 |
| 15 | **Tax.** Find your tax in the Tax Table on pages 17 through 25 | 15 | 216 |
| 16 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | 16 | 0 ④ |
| 17 | Add lines 15 and 16. This is your **total tax** ▶ | 17 | 216 |

Enclose, but do not attach, any payment.

| | | | |
|---|---|---|---|
| 18a | Federal income tax withheld from Form(s) W-2 and 1099-R | 18a | |
| b | Federal income tax withheld from Form(s) 1042-S | 18b | |
| 19 | 2013 estimated tax payments and amount applied from 2012 return | 19 | ⑤ |
| 20 | Credit for amount paid with Form 1040-C | 20 | |
| 21 | Add lines 18a through 20. These are your **total payments** ▶ | 21 | 0 |

**Refund**

| | | | |
|---|---|---|---|
| 22 | If line 21 is more than line 17, subtract line 17 from line 21. This is the amount you **overpaid** | 22 | |
| 23a | Amount of line 22 you want **refunded to you.** If Form 8888 is attached, check here ▶ ☐ | 23a | ⑥ |
| b | Routing number | c Type: ☐ Checking ☐ Savings | |
| d | Account number | | |

Direct deposit? See instructions.

e If you want your refund check mailed to an address outside the United States not shown above, enter that address here:

| | | |
|---|---|---|
| 24 | Amount of line 22 you want applied to your 2014 estimated tax ▶ | 24 |

**Amount You Owe**

| | | | |
|---|---|---|---|
| 25 | **Amount you owe.** Subtract line 21 from line 17. For details on how to pay, see instructions ▶ | 25 | 216 ⑦ |
| 26 | Estimated tax penalty (see instructions) | 26 | ⑧ |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ Yes. Complete the following. ☑ No

Designee's name ▶ ⑨   Phone no. ▶   Personal identification number (PIN)

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and accurately list all amounts and sources of U.S. source income I received during the tax year. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Keep a copy of this return for your records.

Your signature | Date | Your occupation in the United States: Au Pair

**Paid Preparer Use Only**

Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN

Firm's name ▶   Firm's EIN ▶

Firm's address ▶   Phone no.

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.   Cat. No. 21534N   Form **1040NR-EZ** (2013)

CC00001312

Defs.' Appx. 0000198

Form 1040NR-EZ (2013)     Page **2**

## Schedule OI- Other Information (see instructions)
### Answer all questions ⑩

| | | |
|---|---|---|
| **A** | Of what country or countries were you a citizen or national during the tax year? | Germany |
| **B** | In what country did you claim residence for tax purposes during the tax year? | United States   ⑪ |

**C** Have you ever applied to be a green card holder (lawful permanent resident) of the United States? . . . . ☐ Yes ☑ No

**D** Were you ever:
   **1.** A U.S. citizen? . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No
   **2.** A green card holder (lawful permanent resident) of the United States? . . . . . . . . ☐ Yes ☑ No   ⑩
If you answer "Yes" to **(1)** or **(2)**, see Pub. 519, chapter 4, for expatriation rules that may apply to you.

**E** If you had a visa on the last day of the tax year, enter your visa type. If you did not have a visa, enter your U.S. immigration status on the last day of the tax year.    J-1    ⑬

**F** Have you ever changed your visa type (nonimmigrant status) or U.S. immigration status? . . . . . . . ☐ Yes ☑ No
If you answered "Yes," indicate the date and nature of the change. ▶

**G** List all dates you entered and left the United States during 2013 (see instructions).
   **Note.** If you are a resident of Canada or Mexico AND commute to work in the United States at frequent intervals, **check the box for Canada or Mexico** and skip to item H . . . . . . . . . . . . . ☐ Canada ☐ Mexico

| Date entered United States mm/dd/yy | Date departed United States mm/dd/yy | | Date entered United States mm/dd/yy | Date departed United States mm/dd/yy |
|---|---|---|---|---|
| 07/24/13 | 12/15/13 | ⑭ | | |
| 12/30/13 | | | | |
| | | | | |
| | | | | |

**H** Give number of days (including vacation, nonworkdays, and partial days) you were present in the United States during:
2011    0   , 2012    0   , and 2013    146  .

**I** Did you file a U.S. income tax return for any prior year? . . . . . . . . . . . . . ☐ Yes ☑ No
If "Yes," give the latest year and form number you filed ▶

**J** Income Exempt from Tax—If you are claiming exemption from income tax under a U.S. income tax treaty with a foreign country, complete (1) and (2) below. See Pub. 901 for more information on tax treaties.

   **1.** Enter the name of the country, the applicable tax treaty article, the number of months in prior years you claimed the treaty benefit, and the amount of exempt income in the columns below. Attach Form 8833 if required (see instructions).

| (a) Country | (b) Tax treaty article | (c) Number of months claimed in prior tax years | (d) Amount of exempt income in current tax year | |
|---|---|---|---|---|
| | | | | ⑮ |
| | | | | |
| | | | | |
| | | | | |

**(e) Total.** Enter this amount on Form 1040NR-EZ, line 6. Do not enter it on line 3 or line 5 . . . . . . ▶

   **2.** Were you subject to tax in a foreign country on any of the income shown in 1(d) above? . . . . . ☐ Yes ☐ No

Form **1040NR-EZ** (2013)

CC00001313

Defs.' Appx. 00000199



**Bureau of Educational and Cultural Affairs**

# Au Pair
# Sponsor Meeting



July 17, 2015

AAP_46

Defs.' Appx. 00000200

# WELCOME



- Opening Remarks & Introductions

- Private Exchange Office Dialogue
  - Designation (D)
  - Exchange Visitor Program Administration (OPA)
  - Compliance
  - Regulatory Review and Process Update

- Category Review – Mission Focused
  - Strengthening the Au Pair Exchange Experience
  - SWOC
  - Reinforcing a Zero Incident Culture (ZIC)
  - Preliminary Observations

2

Defs.' Appx. 00000201

# Office of Designation



- Reviews new applications for designation and applications for re-designation.

- Reviews annual reports, placement reports, and management audits.

- Assists sponsors with J-visa related inquiries and requests for allotments, extensions, reinstatements, etc.

- Conducts sponsor outreach to assist sponsors and to evaluate the health of program categories.

AAP_48

Defs.' Appx. 00000202



# Break 10:00-10:15

2

Defs.' Appx. 00000203

# U.S. Department of State

 

## OFFICE OF PRIVATE SECTOR EXCHANGE ADMINISTRATION (OPA)

## J1 EXCHANGE VISITOR PROGRAM

## AU PAIR PROGRAM

Defs.' Appx. 00000204

# Office of Private Sector Exchange





AAP_51

Defs.' Appx. 00000205

# Office of private sector Exchange administration (OPA) – Au Pair Program staff

### Office Director
- Henry Scott

### Team Leader
- Darra Klein

### Program Analysts
- Maha Ammar
- Joy Proctor

### Program Support Specialist
- Lauren Grimes

AAP_52

Defs.' Appx. 00000206

# Introducing opa



**Foreign Affairs Manual – U.S. Department of State**

**(10 FAM 252):**

- – Reviews and responds to all complaints and incidents.
- – Monitors the operations of designated sponsors.
- – Conducts on-site and electronic sponsor reviews.

AAP_53

Defs.' Appx. 00000207

# Monitoring



— E-mail and J-1 helpline

— Sponsor reports

— SEVIS data

— Discussion groups

— Surveys

— Outreach

Defs.' Appx. 00000208

# Au pair reporting rubric



### AU PAIR PROGRAM INCIDENT REPORTING RUBRIC

The reporting rubric is to be used as a general guideline for reporting incidents to the U.S. Department of State pursuant to 22 CFR 62.13(d). The examples provided below are not meant to be exhaustive (e.g., there may be other serious situations, not listed below, that could endanger the health, safety, or welfare of an exchange visitor or otherwise could be expected to bring the Department of State, the Exchange Visitor Program, or the sponsor's exchange visitor program into notoriety or disrepute). Please inform DOS' Office of Private Sector Exchange Administration (OPA) of the following by emailing an incident report to the OPA mailbox AuPairProgram@state.gov. For emergency situations, we urge sponsors to notify DOS first by means of a brief email or phone call and investigate later for formal reporting purposes.

| Natures of Incidents or Allegations To Be <u>Promptly</u> Reported * |
| --- |
| ➤ **Dangerous and Unsuitable Living Conditions:** au pair removal from the host family home for health, safety and/or welfare reasons (e.g., non-vetted people in the home, host parent arrest or involvement in crime, pest infestations, mold, filth, etc.) |
| ➤ **Exchange Visitor Death** |
| ➤ **Exchange Visitor Missing:** absence without authorized leave where sponsor is unable to communicate with the au pair |
| ➤ **Harassment, Violent Behavior, Threats, or Bullying:** verbal and/or physical aggressions or coercion |
| ➤ **Incidents Involving Child Protective Services:** child abuse, endangerment, and/or neglect |
| ➤ **Incidents Involving the Criminal Justice System:** reported acts involving law enforcement where arrest, citation, detention, and/or incarceration have taken place |
| ➤ **Lawsuits or Legal Actions:** filed by either an au pair or a host family against the other party or the sponsor |
| ➤ **Payment Issues:** repeat complaints of host family failure to pay stipend to au pair, or failure to pay stipend to au pair in a timely manner |
| ➤ **Potential for Notoriety or Disrepute:** incidents that could bring DOS, the Exchange Visitor Program, or the sponsor's exchange visitor program into notoriety or disrepute including contentious issues involving a foreign government, litigation, negative press, etc. |
| ➤ **Public Events or Natural Disasters Directly Involving Exchange Visitor Safety:** bombing/shooting/stabbing/violence, earthquake, fire, flood, hurricane, tornado, etc. |
| ➤ **Duties Beyond Childcare Violations:** repeat complaints/concerns reported to sponsor regarding general household chores not related to childcare, caregiving to host family members other than host children, etc. |
| ➤ **Serious Medical Problems:** due to an accident, communicable disease (e.g. tuberculosis, meningitis, etc.), chronic or terminal illness, hospitalization, mental health issues, surgery, etc. |
| ➤ **Serious Third Party Issues:** sponsor terminating partnership agreements with third parties due to repeat serious concerns and/or regulatory infractions |
| ➤ **Sexual-Based Harassment:** incidents of unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature |
| ➤ **Sexual-Based Violence:** physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent due to incapacitation (e.g. use of drugs or alcohol, etc.). Sexual violence includes rape, sexual assault, sexual battery, sexual abuse, and sexual coercion |
| ➤ **Sponsor Violations:** self-recognition of regulatory shortfalls involving vetting, oversight, staffing, etc. |
| ➤ **Work Hour Violations:** repeat complaints of excessive daily or weekly work hours reported to sponsor |
| *Reporting depends on the level of seriousness, the impact to the health, safely, and welfare of the exchange visitor, and the impact to the surrounding community. It is a Department of State best practice for sponsors to report particularly serious matters within 24 hours, and other matters within 72 hours, depending on the seriousness of an incident. |

AAP_55

Defs.' Appx. 00000209

# Complaints and incidents



- Non-childcare duties

- Work hours / schedule issues

- Auto-related accidents and violations

- Crime and arrests

- Child endangerment

- Serious illness and/or hospitalization

AAP_56

# CONTACT INFORMATION



- General inquiries: **jvisas@state.gov**

- Au Pair program incident reporting: **AuPairProgram@state.gov**

- For emergencies Au Pairs can contact the Department of State's Emergency Hotline: 866-283-9090

- For more information about our programs, visit our website at **http://J1visa.state.gov**

AAP_57

Defs.' Appx. 00000211

# Office of Exchange Coordination and Compliance

- Provide monitoring and oversight of the Exchange Visitor Program through site visits, on-site reviews, and requests for information.
- Coordinate with law enforcement federal government agencies.
- Oversee the Department of State's operations and management of the Student and Exchange Visitor Information System (SEVIS).
- Manages sanction sponsors for regulatory noncompliance.

2

AAP_58

Defs.' Appx. 00000212

Defs.' Appx. 00000213

# Au Pair definition



"A foreign national who comes to the United States for the purpose of residing with an American host family and participating directly in their home life, while providing limited childcare services, and fulfilling an educational requirement."

15

AAP_60

Defs.' Appx. 00000214

# Cultural Activities Definition



It is the Department's view that cultural programming should provide exchange visitors the opportunity to  -
1) learn about U.S. society and culture outside of their placement,
2) share their own cultures, traditions, and views with Americans,
3) experience the United States and its diversity,
4) encourage EVs see the world from another perspective,
5) help EVs be more tolerant and respectful of differences, and
6) allow EVs to appreciate similarities that bring people of different nationalities and backgrounds together.





AAP_61

Defs.' Appx. 00000215

# Educational Requirement



Host families must facilitate the enrollment and attendance of au

pairs in accredited U.S. post secondary institutions and to pay the cost of such academic coursework.

- Sponsors should try to find au pair candidates that have an interest in educational aspects of the program.

- Host families must make sufficient time available for the au pair to take coursework.

17

AAP_62

Defs.' Appx. 00000216

# English Language Proficiency



Exchange visitors may come to the U.S.
under the Exchange Visitor
Program as long as the sponsor documents
that their English proficiency is sufficient to -



- meet their program requirements, and
- function on a day-to-day basis.

Under Section 62.10(a)(2) of the new Subpart A, sponsors must ensure that each
"exchange visitor possesses **sufficient proficiency in the English language** *(italics added)*,
as determined by an objective measurement of English language proficiency, **successfully
to participate in his or her program and to function on a day-to-day basis."**

Sponsors must "verify an applicant's English language proficiency through a recognized
English language test, by signed documentation from an academic institution or English
language school, or through a documented interview conducted by the sponsor either in-
person or by videoconferencing, or by telephone if videoconferencing is not a viable
option."

Defs.' Appx. 00000217



# Documenting English Language Proficiency



- The Department leaves the definition of "objective measurement of English language proficiency" up to the discretion of the sponsor;
- A sponsor must maintain the evidence of how it measured applicants' English language proficiency and whether this is sufficient proficiency for the exchange visitor to participate in the program and function on a day-to-day basis.
- A sponsor needs to keep on file the documentation on how it assessed the exchange visitor's language ability, through signed documentation, interview, videoconference, etc. and whether/how this is at a suitable level, depending upon how their program is run.

*The au pair program regulations at 62.32(d) must ensure that all participants are proficient in spoken English and have been personally interviewed, I in English, by an organizational representative...*

Defs.' Appx. 00000218

# Subpart A insurance provisions



- **Exchange Visitor Insurance**:  Sponsors must require that all exchange
- visitors have insurance in effect that covers them for sickness
- or accidents during the period of time that they participate in the
- sponsor's exchange visitor program.
- **Dependent Insurance**:  Sponsors must require that accompanying spouses and
  dependents of exchange visitors have insurance for sickness and accidents.

**As of May 15, 2015, minimum insurance amounts** required under the insurance provisions in new Subpart A are:
- Medical benefits of at least $100,000 per accident or illness;
- $25,000 for repatriation of remains;
- $50,000 for medical evacuation; and
- deductibles not to exceed $500 per accident or illness.

**Affordable Care Act:**  Sponsors also must inform all exchange visitors that they, and any accompanying spouse and dependent(s), may be subject to the requirements of the Affordable Care Act.  Whether or not exchange visitors are subject to the ACA depends upon the length and other specific attributes of the exchange visitor's program in the U.S.

Defs.' Appx. 00000219

# Transparency provisions



62.10(b) - Sponsors must provide for pre-arrival orientation –

(5) An itemized list of all fees to be paid by a potential exchange visitor (i.e. fees paid to the sponsor or a third party.

(6) Description and amount of other costs that the exchange visitor will likely incur (e.g. insurance, living expenses, transportation expenses) while in the United States.

21

Defs.' Appx. 00000220

# Representations and Disclosures



62.9(d) –

(2) Provide accurate information to the public when advertising their exchange visitor program(s) or responding to public inquiries;

(3) Provide accurate program information and materials to prospective exchange visitors, host organizations, and host employers, if applicable, at the time of recruitment and before exchange visitors enter into agreements and/or pay non-refundable fees.  This information must clearly explain program activities and terms and conditions of program, including the terms and conditions of an y employment activities (job duties, number of work hours, wages and compensation, and any typical deductions for housing and transportation.

22

AAP_67

Defs.' Appx. 00000221

 # List of fees

62.9(3) continued – Sponsors must also provide "an itemized list of all fees charged to the exchange visitor (i.e. fees paid to the sponsor or a third party, including the host employer), insurance costs, other typical costs, conditions and restrictions of the exchange visitor program(s), and the type, duration, nature and importance of the cultural components of the program."

23

Defs.' Appx. 00000222

# Lunch
# 12:00 - 1:15





24

AAP_69

Defs.' Appx. 00000223

# Patricia Davidson

## Deputy Administrator for Program Operations

## Wage and Hour Division



AAP_70

Defs.' Appx. 00000224



# Category Review

Evaluate the contribution of program categories to the ECA Mission and U.S. Department of State foreign policy priorities.

"Reinforcing a Zero Incident Culture (ZIC) and Strengthening the Au Pair Exchange Experience"



26

Defs.' Appx. 00000225

# ECA MISSION



TO INCREASE MUTUAL UNDERSTANDING BETWEEN THE PEOPLE OF THE

UNITED STATES  AND THE PEOPLE OF OTHER COUNTRIES BY MEANS OF

EDUCATIONAL AND CULTURAL EXCHANGE THAT ASSIST IN THE

DEVELOPMENT OF PEACEFUL RELATIONS BETWEEN THE UNITED STATES

AND OTHER COUNTRIES OF THE WORLD.

27

Defs.' Appx. 00000226

# Three Components





28

Defs.' Appx. 00000227

# **Strategic Goal 1:** ECA advances U.S. foreign policy priorities through international educational and cultural programs that build mutual understanding

– Objective 1: Strategically  align resources to meet short and long-term U.S. diplomatic opportunities and challenges through increased collaboration within ECA, within the State Department and with external stakeholders.

– Objective 2: Increase awareness of ECA programs and policies among State Department offices to ensure more effective and efficient use of Bureau capabilities.

– Objective 3: Leverage alumni and other ECAs networks to strengthen U.S. relationships with current and emerging leaders.

29

Defs.' Appx. 00000228

# **Strategic Goal 2:** International educational and cultural exchange in the U.S. and abroad  includes robust participation of youth, women, minorities and underserved communities

– Objective 1:  To ensure the safety, health and well being of exchange program participants, particularly youth exchange programs which require effective oversight.

– Objective 2: Broaden the network of diverse organizations that apply for grants, participate in programs, become our partners and/or advocate on behalf of the value of exchange programs.

– Objective 3: Expand program promotion and recruitment to reach the target population in the U.S. and abroad, in collaboration with our grantee organizations, partners, and posts.

30

Defs.' Appx. 00000229

# **Strategic Goal 3:** American global competitiveness and Americans' understanding of the world are enhanced through international educational and cultural exchange



— Objective 1: Promote study abroad opportunities for Americans to help them gain the necessary skills, including foreign language competencies and cultural awareness, to compete in the global economy and to cooperate internationally in addressing issues of mutual concern.

— Objective 2:  Promote internationalization of U.S. campuses and workplaces by supporting exchanges of foreign participants who bring a global perspective to Americans.

— Objective 3: Promote investment in ECA international educational and cultural exchange programs.

— Objective 4: Promote English language study globally.

31

AAP_76

Defs.' Appx. 00000230

# Strategic Goal 4: ECA is the recognized US government leader in the effective management of international educational and cultural programs

- – Objective 1: Strengthen communication, engagement and outreach to critical audiences.

- – Objective 2: Strengthen our internal and external management controls to ensure more efficient resources.

- – Objective 3: Hire, retain and train a diverse and representative workforce that delivers premier international educational and cultural programs.

32

AAP_77

Defs.' Appx. 00000231



# ECA Goal Hierarchy



AAP_78

Defs.' Appx. 00000232

# EC STRATEGIC GOALS



- Strengthening the integrity of the Exchange Visitor Program by refocusing on its core purpose of increasing mutual understanding through educational, cultural, and professional exchange.

- Promoting effective communication, collaboration, and outreach with internal and external stakeholders.

- Supporting organizational excellence by recruiting, training, and retaining the best employees.

- Developing and implementing innovative tools and technology solutions to advance the work of Private Sector Exchange.

34

Defs.' Appx. 00000233

# Category Review Research



| INTERNAL | EXTERNAL |
|---|---|
| • SWOC analysis of categories<br><br>• Internal research into regulatory characteristics<br><br>• SEVIS data<br><br>• Incidents and complaints<br><br>• Monitoring reports<br><br>• Study of economic, political & legal environment<br><br>• Study of Au Pair Audit Statements | • U.S. Discussion Groups<br><br>• SWOC<br><br>• U.S. Site Visits<br>   • Houston, TX, Seattle, WA, San Francisco and San Diego, CA, Stamford, CT, New York, NY, Denver, CO<br>   • About 400 Au Pairs<br><br>• Dialogue Discussion<br>• Sponsor Survey |

35

AAP_80

Defs.' Appx. 00000234

# Category Review - Key Criteria





AAP_81

Defs.' Appx. 00000235

# Category Rankings



- **Existing Core** - Category is clearly linked to overall EC Objectives (and ultimately Mission success).  These should be sustained or grown.

- **Existing Value-Added** – Category adds value to EC and clearly aligns to Objectives but not seen as critical to Mission success.  The category is worthy of continued investment and may at some point become a core category.

- **Rehabilitation or Sunset Candidates** – Category or components that do not have a clear linkage to Bureau Objectives and long term efficacy is questionable. These categories (or components) need rehabilitation, or an exit strategy needs to be developed to ease transition of resources to value-added or core categories.

- **New Categories** – Any new categories or category components (targeted exchanges for example) that represent a potential to contribute to EC Mission.

37

Defs.' Appx. 00000236

# Preliminary Observations



38

AAP_83

Defs.' Appx. 00000237

# Au Pair
# Category Specifics (2014)



**16.035 Au Pairs**



Au Pairs are placed in all 50 states.

Au Pairs come from 93 countries and territories!

AAP_84

Defs.' Appx. 00000238



# Participation trends in Au Pair



40

Defs.' Appx. 00000239





41

AAP_86

Defs.' Appx. 00000240

# 2014 Au Pair Participation



### Top Sending Countries

| Country of Citizenship | Au Pair Participation |
|---|---|
| GERMANY | 4,141 |
| COLOMBIA | 1,475 |
| BRAZIL | 1,361 |
| MEXICO | 1,145 |
| FRANCE | 1,133 |
| SWEDEN | 790 |
| SOUTH AFRICA | 624 |
| AUSTRIA | 523 |
| POLAND | 475 |
| SPAIN | 436 |
| ITALY | 380 |
| CHINA | 368 |
| THAILAND | 359 |

42

AAP_87

Defs.' Appx. 00000241

# 2014 Au Pair Participation





EUR – Europe and Eurasia
EAP – East Asia and the Pacific
WHA – Western Hemisphere
SCA – South and Central Asia
AF – Sub Saharan Africa
NEA – Middle East and North Africa

43

AAP_88

Defs.' Appx. 00000242



# Age range of Au Pairs (CY 2014)



AAP_89

Defs.' Appx. 00000243

# Discussion groups



45

AAP_90

Defs.' Appx. 00000244

# Discussion group locations

Bethesda, MD

Denver, CO

Greenwich, CT

Houston, TX

Portland, OR

San Diego, CA

San Francisco, CA

Arlington, VA

Seattle, WA

46

AAP_91

Defs.' Appx. 00000245

# Some things we are hearing from au pairs so far...



47

AAP_92

Defs.' Appx. 00000246

# Motivation for applying to the program



- Study English in a fun way
- Improve English skills
- See the United States
- Work with children
- Have a cultural exchange and learn
- about a new culture
- Live in the U.S. as Americans do
- Make use of the educational opportunity
- Learn to become a teacher
- Develop a sense of responsibility and
- independence
- Needed a change
- Gap year
- Have new adventures



48

Defs.' Appx. 00000247



# Improving the pre-departure orientation

- Talk more about cultural differences au pairs will find in U.S.

- Give more detailed information on educational opportunities in the U.S.

- Discuss how au pairs can best improve their language skills

- Discuss details of the re-match process, taxes and fees; pre-departure orientation is too vague.

- Provide more information on traveling internationally for those who have not before.

- Need to say that sometimes the program will be hard.

- Too much talk about caring for babies when most au pairs present at orientation did not have this age group in their assignment.

- Could bring current or former au pairs to tell new au pairs about their experience.

49

Defs.' Appx. 00000248



# Improving the arrival orientation

- Should cover more basic know-hows and possible areas where there might be challenges

- Should cover what are acceptable work duties

- Should not be too close to the arrival date when au pairs still have jetlag

- Should spend more time on the re-matching process

- Should leave more time for interaction among the au pairs who are there

- Should be more realistic about the au pair experience and not paint everything as rosy

- Should give more tips on how the au pair can best communicate with the host family

- Group au pair going to the same state for discussions.

50

AAP_95

Defs.' Appx. 00000249

# What au pairs say they like about the program



51

AAP_96

Defs.' Appx. 00000250

- Meeting people from all over the world
- Gaining confidence
- Learning how to manage away from own family at home
- Feeling part of the host family and doing activities with them
- Not living alone in the U.S.
- Caring for children
- Opportunities to travel
- Speaking English with Americans
- Experiencing something new, seeing new places

52

Defs.' Appx. 00000251

# Concerns about the program

- No job security; host families can cancel au pairs almost immediately
- Sponsor doesn't care about the au pair; they only care about the host family and the money
- Having to ask for salary, food, and gas money from the host family
- Local coordinator doesn't seem concerned about me; doesn't contact me enough
- Local coordinators not helpful enough even when contacted
- Local coordinators do not have enough knowledge to answer questions
- Re-matching process depends mainly on the sponsor and host family and au pair is less involved
- If no rematch occurs, the au pair loses the fee paid for the program.

53

Defs.' Appx. 00000252

# Concerns about the educational component



- Education is too expensive for the educational allowance provided
- Education allowance is not enough to take something one would really be interested in
- Not enough information about educational opportunities;



- Hard to find useful classes
- Often au pairs have to make difficult trade-offs between working for host family and doing the educational component well

AAP_99

Defs.' Appx. 00000253

# Concerns about money and work conditions

- Stipend is too low -
    $195.75 doesn't pay for much
- Need more money for food or the board should be guaranteed
- Using part of stipend to help feed children
- Working more than 45 hours per week
- Only one weekend off; only two weeks vacation
- Host family not oriented enough on the role of an au pair
- "How au pairs can get help in unjust situations"

55

AAP_100

Defs.' Appx. 00000254

# Au Pair responsibilities other than childcare

- "I do just about everything"
- Buying groceries
- Cleaning the house/vacuuming/mopping floors
- Doing the dishes
- Laundry for the whole family
- Feeding the dog
- Doing chores that were supposed to be accomplished by the children
- "When I do something to help the host family, they never say anything."

AAP_101

Defs.' Appx. 00000255

# What has surprised Au Pairs the most?



- Americans are so friendly and willing to help
- Americans have great personal freedom
- Americans try not to discriminate
- There is a drive-thru for everything in the U.S.
- The complexity of getting a driver's license
- The junk kids eat and the poor discipline of the children, which parents seem unable to stem
- How strong I have grown personally
- How much my confidence has improved

57

AAP_102

Defs.' Appx. 00000256

# Cultural activities of au pairs

- No cultural activities
- American holidays
- Doing things with American friends
- Enjoying musical events
- Taking tours
- Art in America and painting
- Seeing comedy shows
- Traveling on personal time
- Hiking
- Seeing museums

- American carnivals and fairs
- Barbeques
- Taking part in family parties
- Baseball games, Superbowl
- Hebrew school
- Yoga at the beach
- Going to the gym





AAP_103

Defs.' Appx. 00000257

# SWOT/C Analysis



**Given the ECA Mission, Strategic Goals & EC Objectives, what are the Au Pair categories Strengths, Weaknesses, Opportunities and Threats/Challenges?**

## Strengths
- What do we do exceptionally well?
- What advantages do we have?
- What valuable assets do we have?
- How do others view us?

## Weaknesses
- What are we criticized about?
- What could we do better?
- Where are we vulnerable?

## Opportunities
- Known, but not yet addressed?
- Emerging trends upon which we can capitalize?

## Threats/Challenges
Critical vulnerabilities?
Internal/External roadblocks?
Competitors doing anything different?
Significant change coming?
Technology, economic conditions affect us?

AAP_104

Defs.' Appx. 00000258

# Discussion





AAP_105

Defs.' Appx. 00000259

# Closing

61

AAP_106