**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.,

Plaintiffs,

v.

INTEREXCHANGE, INC., et al.,

Defendants.

**CULTURAL HOMESTAY INTERNATIONAL'S
MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   Burden of Proof and Elements ................................................................................. **1**

II.  Factual Background ................................................................................................. **1**

    A.   CHI Relied Upon the Department of State For the Minimum Stipend Amount. ........................................................................................ 1

    B.   CHI Properly Communicated the State Department-Approved Stipend Amount to Host Families and Au Pairs. ......................... 3

    C.   The State Department Approved CHI's Communications With Prospective Au Pairs and Host Families. ........................................... 4

III. Argument ................................................................................................................. **4**

    A.   There is No Direct Evidence of CHI's Participation in a Conspiracy. ................................................................................................ 5

    B.   There Is No Indirect, Circumstantial Evidence of CHI's Participation in the Alleged Conspiracy ..................................................... 7

IV.  Conclusion ............................................................................................................. **10**

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
   181 F.3d 216 (2d Cir. 1999) ...................................................................................... 1

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 9

*In re Chocolate Confectionary Antitrust Litig.*,
   801 F.3d 383 (3rd Cir. 2015) ................................................................................ 8, 9

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ................................................................................................. 7

*GF Gaming Corp. v. City of Black Hawk*,
   405 F.3d 876 (10th Cir. 2005) .................................................................................. 7

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
   527 F. Supp. 2d 1257 (D. Kan. 2007) ...................................................................... 1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................ 7, 9

Defendant Cultural Homestay International ("CHI") is named as a defendant only on the antitrust claim asserted in the Second Amended Complaint. ECF No. 395, ¶¶ 44, 566-74. CHI respectfully submits this individual motion to highlight certain facts that demonstrate that Plaintiffs cannot prove that CHI participated in the alleged conspiracy.

**I.      Burden of Proof and Elements**

The elements and burden of proof for Plaintiffs' antirust claim are set forth at pages 4-5 of Certain Defendants Motion for Summary Judgment (ECF. No. 860) ("Joint Brief"), and are incorporated by this reference. While CHI joins in each of the arguments raised in the Joint Brief, this motion addresses only the conspiracy element, on which Plaintiffs bear the burden of proof.

Importantly, to survive summary judgment, Plaintiffs "must first demonstrate the existence of an agreement" *as to each defendant. AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) ("[w]e require a factual showing that each defendant conspired in violation of the antitrust laws . . . ."); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 527 F. Supp. 2d 1257, 1302 (D. Kan. 2007) ("[E]ach defendant must be shown to have participated in the conspiracy . . . .").

**II.     Factual Background**

The following facts are undisputed.

    **A.      CHI Relied Upon the Department of State For the Minimum Stipend Amount.**

When CHI entered the program in 2004, the weekly stipend had been set by the Department of State ("State Department") at $139.05. Defs.' Appx., p. 476 – Decl. of

Christina Reilly ("Reilly Decl."), Ex. A.1.  Then, on June 14, 2007, the State Department issued a "Notice" indicating that the weekly stipend would be increased as follows:

| | |
|---|---|
| July 24, 2007 | $157.95 |
| July 24, 2008 | $176.85 |
| July 24, 2009 | $195.75 |

*Id.*, p. 477 – Reilly Decl., Ex. A.2 (the "June 14, 2007 DOS Notice").

The June 14, 2007 DOS Notice explained that the "Au Pair stipend is based on a U.S. Department of Labor's formula that includes credit for the room and board Host Families provide for their Au Pairs."  *Id.*  The notice further explained that the "room and board credit currently is 40% of the au pair's credited compensation."  *Id.*  The notice concluded that following the increase in the federal minimum wage effective July 24, 2009, the au pair weekly stipend would increase to $195.75 per week.  *Id.*  An identical Notice was issued by the State Department on June 24, 2009.  Defs.' Appx., p. 478 – Reilly Decl., Ex. A.3.

Significantly, the 2007 and 2009 notices did not use the word "minimum" in reference to the weekly stipend amount of $195.75.  *Id.*  Instead, the notices simply stated that the weekly stipend would increase to $195.75.  *Id.*  However, because the weekly stipend was linked to the federal minimum wage, CHI always assumed the weekly stipend of $195.75 was a minimum and host families could pay their au pairs more if they wanted.  *Id.*, p. 457 – Reilly Decl., ¶ 13.

CHI has never received a communication from the State Department modifying or retracting either the 2007 or the 2009 notice.  Nor has the State Department modified its regulations governing how the stipend is calculated.  *Id.*, ¶ 14.

### B. CHI Properly Communicated the State Department-Approved Stipend Amount to Host Families and Au Pairs.

CHI communicates with au pairs and host families about the amount of the weekly stipend in several ways. *First*, through its website, advertising materials and promotional emails, CHI provides a brief summary of the au pair program, its benefits, and the general cost of participation. *Id.*, p. 457-58 – Reilly Decl., ¶ 16. These materials are intended to be purely introductory and generally refer to the weekly stipend as $195.75. *Id.*

*Second*, as the prospective au pair and host family move through the screening and selection process, each receives a handbook that has very specific details about the program and the DOS regulations. *Id.*, p. 458-59 – Reilly Decl., ¶ 17. In particular, the au pair handbook states that the au pair will "receive a weekly stipend based upon the U.S. minimum wage standard," and attaches a copy of the June 14, 2007 DOS Notice. *Id.* The host family handbook states that the stipend is $195.75 per week and also attaches a copy of the June 14, 2007 DOS Notice. *Id.*

*Third*, once an au pair has been matched with a host family, CHI has separate, written agreements with both the au pair and the host family that, among other things, refer to the weekly stipend as "based upon minimum wage in accordance with current U.S. Government regulations." *Id.*, p. 459-60 – Reilly Decl., ¶ 18.

Importantly, the host family and au pair determine the actual amount of the stipend. *Id.*, p. 467 – Reilly Decl., ¶¶ 25, 26. CHI confirms that the host family pays a weekly stipend in the amount of "at least $195.75," but otherwise does not know and

3

does not track the amount of the weekly stipend actually paid by the host family.  *Id.*, p. 464-65 – Reilly Decl., ¶ 22; *id.*, p. 469 – Reilly Decl., ¶ 29.

### C. The State Department Approved CHI's Communications With Prospective Au Pairs and Host Families.

The State Department monitors CHI's communications with au pairs and host families in various ways.  *Id.*, p. 460 – Reilly Decl., ¶ 20.  Most importantly, as part of the annual audit required by the State Department regulations, CHI submits to the State Department copies of all of the CHI marketing and advertising materials and agreements with au pairs and host families.  *Id.*  The State Department reviews these materials to ensure they comply with the regulations.  For example, in 2011, Maha Ammar, Senior Program Analyst at the State Department, reviewed and asked questions about CHI's promotional materials, including the reference to the $195.75 stipend.  *Id.*, p. 461 – Reilly Decl., ¶ 21.  After CHI explained the promotional materials, Au Pair and Host Family Handbooks and agreements, and the communications role played by each, Ms. Ammar stated:  "I appreciate the detailed clarification of CHI's business model and the one-on-one attention and support provided to host families." *Id.*, p. 464 – Reilly Decl., ¶ 21.h.

### III.    Argument

Plaintiffs allege that CHI agreed with the other Sponsors to communicate to au pairs and host families that the weekly stipend must be "precisely $195.75."  Plaintiffs' Motion for Rule 23 Certification (ECF No. 565-2) at 5; *see also id.* at 1, 4.  Below, CHI highlights specific, undisputed facts that make it clear Plaintiffs cannot prove that CHI engaged in the alleged conspiracy.  Because Plaintiffs can offer no direct or indirect

evidence of CHI's participation in the alleged conspiracy, summary judgment in CHI's favor is appropriate.

### A. There is No Direct Evidence of CHI's Participation in a Conspiracy.

CHI has denied categorically that it participated in any conspiracy to suppress the au pair weekly stipend by communicating to au pairs and host families that the stipend must be "precisely $195.75." Defs.' Appx., p. 473 – Reilly Decl., ¶ 48. Additionally, as set forth above, CHI's practice—approved by the State Department—was to tell au pairs that the weekly stipend was "based upon minimum wage in accordance with current U.S. Government regulations." *Supra* at 4. To that end, CHI also gave prospective au pairs and host families a copy of the June 14, 2007 DOS Notice, which specifically addressed the amount of the stipend. *Supra* at 4. Plainly, CHI's communications with au pairs and host families are inconsistent with the alleged conspiracy.

In support of their conspiracy allegation, Plaintiffs have relied on statements that employees of three Defendants allegedly made to a private investigator retained by Plaintiffs to anonymously call the sponsor agencies. *See* Order Concerning Defendants' Motions to Dismiss (ECF No. 258) at 9-10.[1] The investigator posed leading questions designed to elicit admissions regarding the existence of an industry-wide agreement to fix the stipend and recorded any affirmative answers he received. *See* Defs.' Appx., p. 602 – Keil Memorandum. The Keil Memorandum references

---

[1] In the order, the Court characterized Plaintiffs' allegations of conspiracy as "weak" and noted that no information was provided by Plaintiffs to establish "whether such individuals (who allegedly identified themselves as "Directors") had the 'authority to speak for one, much less all, of sponsor Defendants.'" ECF No. 258 at 14 (citing Doc. # 248 at 14).

conversations with three individuals: (1) Carrie Crompton, the director of field operations for Au Pair Foundation, (2) Joanna Gorry, a placement coordinator/area director for Au Pair International, Inc., and (3) Irina Gussev (now Irina Shetty), a regional director for EurAuPair.  *Id.*  The conversations occurred in late November 2014, several days after Plaintiffs filed their complaint.  *See* Compl. (ECF No. 1).

CHI is not mentioned in the Keil Memorandum and none of the interviewees worked for CHI.  One of the persons contacted by Mr. Keil, Carrie Crompton, eventually joined CHI as a regional administrator, but not until November 2015—that is, a year *after* this litigation commenced and a year after she was contacted by Mr. Keil.  *See* Defs.' Appx., p. 593 – Crompton Dep., at 10:7-8; 11:21-23.  Accordingly, Ms. Crompton had no first-hand knowledge of CHI's conduct or practices when she spoke to Mr. Keil, and she certainly did not speak on CHI's behalf.

Moreover, when she was deposed, Ms. Crompton testified that she was not aware of any agreement among sponsors to set the stipend at $195.75.  *Id.* p. 597 - Crompton Dep. 125:8-11.  She also testified that the weekly stipend of $195.75 was a minimum and host families were free to pay more.  *Id.* p. 594-97 – Crompton Dep., at 73:5-10; 114:21 - 115:4.  Indeed, when Ms. Crompton participated in the au pair program, she herself paid her au pairs more than $195.75.  *Id.*, at 74:22 - 75:1.

Finally, even if the Court were to credit the Keil testimony and Memorandum, this evidence establishes only that three sponsor representatives contacted by Plaintiffs' investigator agreed with the uncontroversial proposition that the State Department set a minimum stipend of $195.75 and that a host family is free to pay more.  *Id.* p. 601 – Keil

6

Dep. at 180:4-8 ("[t]he individuals I spoke to in these conversations plus others that are not documented here led me to believe it was a minimum amount set by law and that everyone in the industry followed that minimum amount").  In no respect is the Keil evidence sufficient to raise a question of fact concerning *CHI's participation* in a conspiracy to communicate that au pairs must be paid a weekly stipend of "precisely $195.75"—particularly in the face of the undisputed documentary record to the contrary. *See* Joint Brief at 12 (citing case law).[2]

### B.    There Is No Indirect, Circumstantial Evidence of CHI's Participation in the Alleged Conspiracy.

Given the lack of direct evidence, Plaintiffs no doubt will seek to avoid summary judgment by pointing to purported circumstantial evidence, including allegedly parallel conduct.  But a conspiracy cannot be inferred from parallel conduct alone.  Instead, to reach a jury, Plaintiffs must present circumstantial evidence that is not merely consistent with conspiracy, but instead tends to exclude the possibility that the parallel conduct is the result of independent decision-making by each defendant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *see also* Joint Brief at 6.  Plaintiffs cannot carry their burden with respect to CHI.

---

[2] Additionally, Plaintiffs cannot rely on statements made at meetings of the "Alliance," which is trade association in which a number of au pair sponsors are participants.  As pertinent here, the Alliance activities represent joint efforts by certain sponsors to lobby the State Department (their regulator) and/or oppose the instant lawsuit, both of which are protected activity under the First Amendment and not evidence of any "conspiracy."  *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961); *GF Gaming Corp. v. City of Black Hawk*, 405 F.3d 876, 884 (10th Cir. 2005).

*First*, Plaintiffs may argue that CHI engaged in parallel conduct by stating in advertising materials that the weekly stipend was $195.75.  Yet, once prospective au pairs and host families showed interest in the program, CHI told them that the weekly stipend was "based upon minimum wage in accordance with current U.S. Government regulations," and gave the au pairs and host families a copy of the June 14, 2007 DOS Notice.  *See supra* at 4.  References to $195.75 were limited to preliminary promotional materials and emails, and CHI later gave au pairs and host a copy of the regulations and June 14, 2007 DOS Notice.

Therefore, not only was CHI's conduct *not* parallel to the alleged communications by other Sponsors, *CHI's communications were directly contrary to the alleged conspiracy*.  In no way were the communications "so unusual that in the absence of an advance agreement, no reasonable firm would have engaged in it."  *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 400 (3rd Cir. 2015).

*Second*, the undisputed evidence shows that CHI's communications with au pairs and host families were fully consistent with CHI's independent, unilateral motivation and decision-making.  Indeed, it is readily apparent that CHI's primary motivation was to ensure that host families complied with the regulations and paid at least the minimum stipend announced by the State Department.  *See, e.g.*, Defs.' Appx., p. 455 – Reilly Decl., ¶ 7.  Even Plaintiffs' expert acknowledged that it "certainly would have been rational" for a sponsor to pass on information received from the State Department to prospective host families and au pairs.  *Id.*, p. 1193 – Kerr Dep. 65:15-23.  Moreover, CHI had an independent, unilateral economic motivation to highlight the affordability of

the cultural exchange program, which it did. CHI's motivation and decision-making, even if similar to other Defendants, constitutes nothing more than an "independent response[] to common stimuli." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.4 (2007). CHI's conduct certainly does not "tend[] to exclude the possibility" that CHI acted independently. *Matsushita*, 475 U.S. at 588 (quotation omitted); Joint Brief at 17.

*Third*, CHI's marketing of its au pair program has been consistent over time. There is no evidence that CHI suddenly changed its marketing or any other relevant behavior. *See In re Chocolate*, 801 F.3d at 410 (declining to infer a conspiracy that was consistent with how the industry historically operated).

*Fourth*, CHI has no economic incentive to participate in a conspiracy. To the contrary, it would be better for CHI if the other sponsors were to require a higher stipend from host families. It is in CHI's economic interest to attract as many host families to its program as possible. To do so, it markets the program as an affordable cultural exchange program. Defs.' Appx., p. 458 – Reilly Decl., ¶ 16.a; *id.*, p. 487 – Reilly Decl., Ex. A.4 (advertising affordability in addition to the cultural exchange benefits of the program). If CHI were to advertise a higher stipend, the program would be less affordable and, due to competitive pressure from other sponsors, CHI would have a harder time recruiting host families. *Id.*, p. 471 – Reilly Decl. ¶ 39. As it stands, CHI operates the program at a loss almost every year.[3] *Id.*, p. 470 – Reilly Decl. ¶ 36.

The bottom line is that CHI's actions and communications with au pairs and host families are designed to ensure that the host family pays a stipend of at least the State

---

[3] These losses have been acceptable to CHI because it is a non-profit organization that truly believes in the value of cultural exchange. Defs.' Appx., p. 455 – Reilly Decl., ¶ 4.

Department-approved minimum. Beyond that, host families are free to pay whatever they want. CHI's conduct and communications are totally consistent with CHI's independent self-interest, and totally inconsistent with the alleged conspiracy.

## IV. Conclusion

This is not an antitrust case; at most it is an FLSA and common law dispute. Plaintiffs simply cannot offer any evidence to establish that CHI was involved in any agreement to fix the stipend or communicate to host families and au pairs that the stipend must be "precisely $195.75." Thus, the Court should enter summary judgment in favor of CHI and dismissing the antitrust claim.

Dated February 16, 2018.

Respectfully submitted,

*s/ James E. Hartley*
James E. Hartley
Adam A. Hubbard
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO  80302
Phone: 303-473-2700
jhartley@hollandhart.com
aahubbard@holandhart.com

Jonathan S. Bender
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone:  303-295-8000
jsbender@hollandhart.com

**ATTORNEYS FOR DEFENDANT
CULTURAL HOMESTAY INTERNATIONAL**

## CERTIFICATE OF SERVICE

I certify that on February 16, 2018, I served the foregoing on the following counsel of record by email:

| | |
|---|---|
| **BOISE, SCHILLER & FLEXNER LLP**<br>Lauren F. Louis<br>Sigrid S. McCawley<br>Matthew L. Schwartz<br>Peter M. Skinner<br>Randall W. Jackson<br>Sabrina A. McElroy<br>Dawn L. Smalls<br>Joshua J. Libling<br>Sean P. Rodriguez<br>Daniel R. Schwartz<br>Juan P. Valdivieso<br>llouis@bsfllp.com<br>smccawley@bsfllp.com<br>mlschwartz@bsfllp.com<br>pskinner@bsfllp.com<br>rjackson@bsfllp.com<br>smcelroy@bsfllp.com<br>dsmalls@bsfllp.com<br>jlibling@bsfllp.com<br>srodriguez@bsfllp.com<br>dschwartz@bsfllp.com<br>jvaldivieso@bsfllp.com<br><br>**TOWARDS JUSTICE**<br>Alexander Hood<br>alex@towardsjustice.org | *Attorneys for All Plaintiffs* |
| **SHERMAN & HOWARD L.L.C.**<br>Brooke A. Colaizzi<br>Heather F. Vickles<br>Raymond Myles Deeny<br>Joseph H. Hunt<br>bcolaizzi@shermanhoward.com<br>hvickles@shermanhoward.com<br>rdeeny@shermanhoward.com<br>jhunt@shermanhoward.com | *Attorneys for Defendant:*<br><br>*InterExchange, Inc.* |

11

| | |
|---|---|
| **KELLY & WALKER, LLC**<br>William J. Kelly II<br>Chandra M. Feldkamp<br>wkelly@kellywalkerlaw.com<br>cfeldkamp@kellywalkerlaw.com | *Attorneys for Defendant:*<br><br>*USAupair, Inc.* |
| **ARMSTRONG TEASDALE LLP**<br>Meshach Y. Rhoades<br>Martin J. Estevao<br>mrhoades@armstrongteasdale.com<br>mestevao@armstrongteasdale.com | *Attorneys for Defendant:*<br><br>*Great AuPair, LLC* |
| **BOGDAN ENICA, ATTORNEY AT LAW**<br>Bogdan Enica<br>bogdane@hotmail.com | *Attorneys for Defendant:*<br><br>*Expert Group International, Inc., d/b/a Expert Aupair* |
| **BROWNSTEIN HYATT FARBER SCHRECK, LLP**<br>David B. Meschke<br>Martha L. Fitzgerald<br>mfitzgerald@bhfs.com<br>dmeschke@bhfs.com | *Attorneys for Defendant:*<br><br>*EurAupair Intercultural Child Care Programs* |
| **CHOATE HALL & STEWART LLP**<br>Robert M. Buchanan, Jr<br>Joan A. Lukey<br>Michael T. Gass<br>Justin J. Wolosz<br>Lindsey M. Kruzer<br>rbuchanan@choate.com<br>joan.lukey@choate.com<br>mgass@choate.com<br>jwolosz@choate.com<br>lkruzer@choate.com<br><br>**LEWIS ROCA ROTHGERBER CHRISTIE LLP**<br>James M. Lyons<br>Jessica L. Fuller<br>Diane Hazel<br>Jonelle Martinez<br>jlyons@lrrc.com<br>jfuller@lrrc.com<br>dhazel@lrrc.com<br>jmartinez@lrrc.com | *Attorneys for Defendant:*<br><br>*Cultural Care, Inc., d/b/a Cultural Care Au Pair* |

| | |
|---|---|
| **GORDON & REES LLP**<br>Thomas B. Quinn<br>Peggy E. Kozal<br>Jennifer W. Vedra<br>Nathan A. Huey<br>Heather K. Kelly<br>tquinn@gordonrees.com<br>pkozal@gordonrees.com<br>nhuey@gordonrees.com<br>jvedra@gordonrees.com<br>hkelly@gordonrees.com | *Attorneys for Defendant:*<br><br>*AuPairCare, Inc.* |
| **FISHER & PHILLIPS LLP**<br>Lawrence L. Lee<br>Susan M. Schaecher<br>llee@laborlawyers.com<br>sschaecher@laborlawyers.com | *Attorneys for Defendants:*<br><br>*APF GlobalExchange, NFP, d/b/a Aupair Foundation;*<br>*American Institute for Foreign Study, d/b/a Au Pair in America* |
| **PUTNEY, TWOMBLY, HALL & HIRSON LLP**<br>Joseph B. Cartafalsa<br>Stephen J. Macri<br>Robert M. Tucker<br>John B. Fulfree<br>jcartafalsa@putneylaw.com<br>smacri@putneylaw.com<br>rtucker@putneylaw.com<br>jfulfree@putneylaw.com | *American Institute for Foreign Study, d/b/a Au Pair in America* |
| **WHEELER TRIGG O'DONNELL, LLP**<br>Kathryn A. Reilly<br>Grace Anne Fox<br>reilly@wtotrial.com<br>fox@wtotrial.com | *Attorneys for Defendants:*<br><br>*Agent Au Pair;*<br>*Au Pair International, Inc;*<br>*American Cultural Exchange, d/b/a GoAuPair* |
| **NIXON SHEFRIN HENSEN OGBURN, P.C.**<br>Lawrence D. Stone<br>Kathleen E. Craigmile<br>lstone@nixonshefrin.com<br>kcraigmile@nixonshefrin.com | *Attorneys for Defendants:*<br><br>*20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange;*<br>*A.P.EX. American Professional Exchange LLC, d/b/a*<br>*ProAuPair* |

s/ Craig Radoci
Paralegal

10627407_6

13