IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

---

**DEFENDANT GREATAUPAIR, LLC'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 8

I.     PLAINTIFFS' ANTITRUST CLAIM FAILS BECAUSE THEY CANNOT PROVE
       THAT GAP PARTICIPATED IN THE ALLEGED CONSPIRACY ........................... 8

CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Champagne Metals, Inc. v. Ken-Mac Metals, Inc.*, 458 F.3d 1073 (10th Cir. 2006). ....... 8

*Dahl v. Bain Capital Partners, LLC*, 963 F. Supp. 2d 38 (D. Mass. 2013) ..................... 10

*Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652 (E.D.N.C. 2003) .............................. 9

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 527 F. Supp. 2d 1257 (D. Kan. 2007) ................................................................................................................ 8

*In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709 (E.D. Pa. 2011) ............ 9

*In re Urethane Antitrust Litig.*, 237 F.R.D. 440 (D. Kan. 2006) ....................................... 8

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ....................................... 8

*United States v. Townsend*, 924 F.2d 1385 (7th Cir. 1991) ............................................. 8

Defendant GreatAuPair, LLC ("GAP"), by and through its undersigned counsel, hereby respectfully moves for an order entering summary judgment against Plaintiffs on the single antitrust claim asserted against GAP.[1]

## INTRODUCTION

Plaintiffs cannot prevail on their antitrust claim against the J-1 sponsors, who did not conspire or collude by simply complying with and communicating longstanding U.S. State Department ("DOS") guidance about the au pair stipend paid by host families. The claim cannot stand because Plaintiffs' evidence—consisting almost exclusively of references to the DOS $195.75 stipend amount in advertising and promotional materials—is perfectly consistent with independent decision-making by the individual sponsors, including GAP, in response to specific government directives.

GAP respectfully submits this individual brief to further highlight its own unique background and competitive position in the J-1 au pair program that set it apart from the other sponsors and belie any inference that GAP participated in the alleged conspiracy. These key, undisputed facts include: (1) GAP's history as a passive third-party online "matching platform" over several years while the alleged conspiracy was taking place; (2) GAP's very recent designation and newcomer status in the J-1 program; and (3) at least one other sponsor's recent opposition to GAP's approval and designation as a J-1

---

[1] GAP also joins Defendants' Joint Motion for Summary Judgment (the "Joint MSJ") filed February 16, 2018, and respectfully incorporates by reference all applicable legal standards and arguments set forth therein, including for purposes of complying with CMA Civ. Practice Standard 7.1E(b).  However, GAP submits and references its own individual appendix herein and does not cite to Defendants' omnibus appendix (also containing GAP's exhibits) attached to the Joint MSJ.

sponsor, which contradicts any alleged conspiracy involving GAP. Such evidence clearly distinguishes GAP from other sponsors and establishes that any possible participation by GAP *itself* in the alleged conspiracy is even more remote than the virtually-foreclosed possibility that any agreement or conspiracy existed with respect to others. When considered alongside additional GAP-specific evidence showing that its actions were inconsistent with the alleged conspiracy's purported objective, these facts preclude GAP's involvement and justify the antitrust claim's dismissal. GAP therefore respectfully requests that the Court enter summary judgment in its favor on Count I of the Second Amended Complaint.

**STATEMENT OF FACTS**

GAP was not designated by DOS as an approved J-1 visa sponsor until October 2013. (GAP Appx., p. 0006 - Pitts Deposition; GAP Appx., p. 0001 - Internal Record) GAP is one of the very smallest J-1 sponsors with few sponsored au pairs each year. (GAP Appx., p. 0023–25 - Response to Plaintifffs' Interrogatory No. 10) GAP's first year operating as a sponsor was 2014—the same year this lawsuit was filed and nearly 30 years after the J-1 au pair cultural exchange program began in 1986. (GAP Appx., p. 0006 - Pitts Deposition) Before GAP became a designated sponsor in late 2013, it acted as a passive, third-party online matching platform that could be used by host families and au pairs coordinating through the existing J-1 sponsors. (GAP Appx., p. 0003 - Pitts Deposition) As a passive matching platform, GAP only received and communicated information about the J-1 program that was publically available through the sponsors' websites and the DOS website, including notices about the DOS-calculated au pair weekly stipend. (GAP Appx., p. 0007–08 - Pitts Deposition) Of

2

course, while GAP was still just a passive, third-party matching platform during the years the alleged conspiracy was happening among the existing designated J-1 sponsors, GAP did not sponsor au pairs, contract with host families, or otherwise agree on anything with respect to au pair compensation, as it lacked any legal or practical ability to do so.

Despite its unique history as a matching platform, GAP had very little contact with other sponsor agencies, at least one of which vehemently objected to GAP's approval as a sponsor and its membership in the Alliance for International Exchange organization (the "Alliance").  In fact, as late as 2013, one sponsor's president urged the DOS to deny GAP's sponsor application "in the interest of the entire J-1 visa industry."  (GAP Appx., p. 0034–40 - Email from Bill Kapler to David Eckenrode and Robin Lerner, "Strategic Issues – Employment Agency Sponsor Designations" (January 14, 2013))  In a lengthy email to the DOS exchange program directors, the sponsor representative voiced its "concern[s] about the strategic issues related to [GAP and other internet-based companies seeking to become sponsors], the implications, and the risks to both the DOS and the industry if they are approved."  (GAP Appx., p. 0035 - *Id.*)  This representative warned against GAP's operation as an internet-based "employment agency" potentially covering various personal and in-home services in addition to the J-1 au pair program, and recommended that GAP's application "should be denied for strategic issues."  (GAP Appx., p. 0039 - *Id.*)  As communicated directly to DOS, it appears that the sponsor's fundamental objection to GAP stemmed from the perception that "[b]y denying the employment agencies [like GAP] the DOS can prevent having an employment agency directly promoting/comparing domestic cost rates versus the J-1

3

cost rates." (GAP Appx., p. 0039 - *Id.*) This sponsor representative communicated these same negative views about GAP to the Alliance organization in a presumed effort to prevent GAP from becoming a member. (GAP Appx., p. 0034 - *Id.*) (forwarding email to Alliance and referencing "original planned next steps")

Although GAP ultimately became a sponsor and non-active Alliance member in late 2014 (a mere several weeks before this lawsuit was filed), separate communications from late 2014 indicate that multiple sponsors still had questions and concerns about GAP's potential membership. (GAP Appx., p. 0041–45 - Email from Michael McCarry to Shannon Pitts, "Application for GreatAuPair" (September 17, 2014)) In particular, "[s]ome wondered about the broad reach of [GAP's] activities . . . and the suggested dues level in the lowest rung." (GAP Appx., p. 0041 - *Id.*; GAP Appx., p. 0005; 0017 - Pitts Deposition) (noting other sponsors' perceived "concern about [GAP] getting into the J-1 space") After becoming a member, GAP attended its first annual Alliance meeting in October 2014, approximately one month before this lawsuit was filed. (GAP Appx., p. 0005 - Pitts Deposition) GAP also attended the Alliance annual meetings in 2015 and 2016, which, like the 2014 meeting, broadly addressed many international exchange programs among different visa programs, but GAP did not attend any other Alliance meetings. (GAP Appx., p. 0005; 0014 - Pitts Deposition) (stating that GAP did not attend the July 2015 meeting about au pair compensation that included other sponsors, and explaining that "we're probably one of the smaller agencies in existence, and we don't take an active role in . . . advocating or anything with the Alliance or the DOS, and we have much more of a . . . back seat position . . . ."); (GAP Appx., p. 0046 - Email from Lisa Heyn to Ruth Ferry, "Pax list" (October 18,

4

2016) (listing participants for Alliance meeting and not including GAP))  GAP did not request updates from other sponsors about Alliance meetings that it did not attend. (GAP Appx., p. 0014 - Pitts Deposition)

Unlike other sponsors, GAP is not a member of the International Au Pair Association ("IAPA"), which flatly denied GAP's application for membership.  (GAP Appx., p. 0005; 0016 - Pitts Deposition)  GAP paid the application fees twice to join IAPA, but was denied both times on the grounds that GAP had an online matching platform that distinguished it from the other sponsors.  (GAP Appx., p. 0016 - Pitts Deposition)  GAP is also not a member of World Youth and Student Travel Conference, another international au pair association that counts other J-1 sponsors as members. (GAP Appx., p. 0005 - Pitts Deposition)

GAP hardly met or communicated with sponsors at all after it started operating as a competing sponsor in 2014.  (GAP Appx., p. 0017 - Pitts Deposition)  GAP's communications with sponsors were mainly limited to "cease and desist requests" in connection with violations of GAP's trademark rights and terms of service for its website.  (GAP Appx., p. 0017 - Pitts Deposition; GAP Appx., p. 0049–50 - Email from GAP support personnel to Cultural Care Local Childcare Coordinator, "Violation – Local childcare coordinators Not allowed to use GreatAuPair" (September 8, 2014)[2])  GAP similarly protected and preserved its rights against website violations by the sponsors even before it was designated as a sponsor itself.   (GAP Appx., p. 0051–52 - Email

---

[2] "Please update your company information and make sure all your fellow [Cultural Care] LCCs know it's against our rules for you to register or have your AuPairs register on GreatAuPair.  We have notified the Cultural Care Management team countless times in the past about the continued violations . . . ."

5

from GAP support personnel to Cultural Care Local Childcare Coordinator, "Agency Violation – Local Coordinators Not allowed to use our site" (June 28, 2011)[3])

As a recently designated sponsor, GAP now competes directly with the other sponsors.  (GAP Appx., p. 0004 - Pitts Deposition ("[W]hen we became a J-1 sponsor, we ended all advertising relationships with other J-1 sponsors [in connection with the matching platform] because we are in a competitive relationship with them at that point.")); (GAP Appx., p. 0018 - Pitts Deposition (noting that GAP "wanted to keep the families and the au pairs for its own J-1 program, rather than giving away the potential participants to other agencies, where they would then . . . take them away from us.  It . . . became a competitive situation [after GAP became a sponsor].")); (GAP Appx., p. 0053 - Internal Email referring to "the competitors' program costs pages" from their websites"))   GAP also leverages its technical expertise to further distinguish itself from other sponsors, including through a novel online training program for au pairs.  (GAP Appx., p. 0010 - Pitts Deposition ("My vision for creating a J-1 program was much more technologically advanced, and I had a different vision than . . . [the other sponsors] had in terms of what they had created.  So [GAP] wanted to create something different.")); (GAP Appx., p. 0011–12 - Pitts Deposition (explaining that the DOS suggested that GAP share its online training program with other sponsors, but GAP "felt it was propriet[ar]y and didn't want to necessarily give that away to our competitors"))  This unique and proprietary program allows au pairs to complete the training required by the DOS in their home countries rather than after arrival in the U.S., as most other sponsors

---

[3] "[Y]our agency continues to violate our terms of service by registering directly, rather than allowing your aupair candidates to create their own profiles . . . .We have notified the Cultural Care Management team countless times in the past about the continued violations . . . ."

require. (GAP Appx., p. 0011–12 - Pitts Deposition) GAP also offers discounts and reduced fees to convince host families to sign up with GAP and not another competing sponsor. (GAP Appx., p. 0018 - Pitts Deposition)

In communicating au pair compensation requirements to host families, GAP simply followed the DOS guidance in official notices and website postings that had set the weekly stipend for au pairs at $195.75. (GAP Appx., p. 0009–10; 0013; 0019; - Pitts Deposition) Before becoming a sponsor, GAP acted as a passive matching platform and observed that other sponsors, some of whom advertised on the site, similarly followed the DOS guidance defining the weekly stipend as $195.75. (GAP Appx., p. 0010 - Pitts Deposition) GAP would sometimes refer to the DOS's prescribed stipend as a negotiable "minimum" wage or "starting salary." (GAP Appx., p. 0054 - Internal email stating that "Salary is not dependent on the need of the individual, rather on the value they provide based on their experience. Remember that the *starting salary* for a live-in au pair is defined by the [DOS] is US . . . $195.75 [per week]"); (GAP Appx., p. 0055 - Email to potential au pair stating that the "au pair program weekly stipend benefit is set by the DOS at $195.75 per week. . . . [A] host family can certainly elect to pay more than the *minimum stipend amount*. . . ."); (GAP Appx., p. 0056 - Email to potential au pair stating that "the salary will be determined by you and the host family," and that the "*starting salary* for a live-in au pair is defined by the [DOS] [as] US $195.75 [per week]"); (GAP Appx., p. 0057 - Au Pair online job description listing au pair "wage/salary" as "negotiable") Plaintiffs' surveys revealed that host families who employed au pairs sponsored through GAP actually paid varying stipend amounts: Out of the 12 such host families who responded to the survey, one reporting paying

7

"approximately $300 per week," another paid $160 per week (despite GAP communications about the DOS-calculated stipend requirement for host families), three paid exactly $195.75 per week, two paid $196.00 per week, and five paid $200 per week. (GAP Appx., p. 0059 - Plaintiffs' Host Family Survey Results).

## ARGUMENT

### I. PLAINTIFFS' ANTITRUST CLAIM FAILS BECAUSE THEY CANNOT PROVE THAT GAP PARTICIPATED IN THE ALLEGED CONSPIRACY

A successful antitrust claim requires proof of (1) an antitrust violation, (2) antitrust injury, and (3) the measure of damages. *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 449 (D. Kan. 2006). The "essence" of a Section 1 violation "is the agreement itself." *Champagne Metals, Inc. v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1082 (10th Cir. 2006). Thus, to survive summary judgment, Plaintiffs "must first demonstrate the existence of an agreement," and they must do so *as to each defendant*. *Id.* (emphasis added); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 527 F. Supp. 2d 1257, 1302 (D. Kan. 2007) ("[E]ach defendant must be shown to have participated in the conspiracy alleged . . . ."). Without proof that GAP itself "conscious[ly] commit[ted]" to the alleged conspiracy, Plaintiffs' antitrust claims against it cannot succeed. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) (Section 1 violation requires proof that defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective"). Accordingly, evidence that a particular person merely joined a group whose members allegedly conspired together is insufficient. *See United States v. Townsend*, 924 F.2d 1385, 1390 (7th Cir. 1991) ("To join a conspiracy, then, is to join an agreement, rather than a group. It follows that to be

8

a conspirator you must know of the agreement . . . and must intend to join it."); *see also In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 723 (E.D. Pa. 2011) ("[A]ctive participation, rather than merely passive presence, becomes key in inferring agreement to the conspiracy and potential liability."). Of course, "mere membership in a trade association and attendance at trade association meetings . . . are not, in and of themselves, condemned or even discouraged by the antitrust laws . . . There must instead be some evidence of factual knowledge of, and participation in, an illegal scheme in order to establish an antitrust violation." *Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 664 (E.D.N.C. 2003) (citations and internal marks omitted).

Plaintiffs define the alleged conspiracy as an agreement among the designated J-1 sponsors to "fix" the au pairs' weekly stipend "at <u>exactly</u>" $195.75. (Second Am. Compl. ("Compl.") ¶ 570, ECF No. 395. Thus, they must present evidence showing that GAP had a "conscious commitment" to that objective, but the undisputed facts preclude such an inference. First, GAP did not even become a designated, operating J-1 sponsor until 2014 and therefore could not have participated in the alleged years-long conspiracy before that time. Second, the fierce opposition to GAP's approval as a designated J-1 sponsor flatly contradicts any inference that GAP could have possibly participated—or been invited to join—in the alleged conspiracy. The fact that at least one sponsor tried to prevent GAP from entering and participating in the au pair "market" at all—"in the interest of the entire J-1 visa industry"—is direct evidence against any alleged agreement involving GAP. This conclusion is supported by the frequent cease and desist letters GAP sent to other sponsors to remain competitive and protect its own individual rights.

Third, the evidence refutes any inference that GAP joined the alleged conspiracy because it shows that GAP's actions were completely inconsistent with the conspiracy's purported objective. Multiple emails show that GAP sometimes referred to the weekly DOS stipend as a negotiable "minimum" or "starting salary," and, in fact, host families that employed au pairs sponsored through GAP paid varying amounts to their au pairs. Accordingly, Plaintiffs cannot succeed on their antitrust claim against GAP because the evidence shows that GAP acted inconsistently with the alleged conspiracy's purported objective of "fixing" the weekly stipend at "exactly" $195.75. GAP is therefore entitled to summary judgment on Plaintiffs' antitrust claim. *See Dahl v. Bain Capital Partners, LLC*, 963 F. Supp. 2d 38, 48-49 (D. Mass. 2013) (granting summary judgment to alleged antitrust co-conspirator when evidence showed that its actions were "inconsistent with the overarching conspiracy").

## CONCLUSION

For the reasons stated herein, Defendant GreatAuPair, LLC respectfully requests that the Court enter an order granting summary judgment in its favor on Count I of the Second Amended Complaint.

Respectfully submitted this 16th day of February, 2018.

*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
Armstrong Teasdale LLP
4643 S. Ulster Street, Suite 800
Denver, Colorado 80237
720-722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

***Attorneys for Defendant GreatAuPair, LLC***

Case No. 1:14-cv-03074-CMA-KMT   Document 864   filed 02/16/18   USDC Colorado   pg 14 of 17

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2018, I caused to be electronically filed the foregoing **DEFENDANT GREATAUPAIR, LLC'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Byron Pacheco
Juan Pablo Valdivieso
Lauren F. Louis
Sean Phillips Rodriguez
Sigrid S. McCawley
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Sabrina A. McElroy
Dawn L. Smalls
Joshua J. Libling
BOIES SCHILLER & FLEXNER, LLP
bpacheco@bsfllp.com
jvaldivieso@bsfllp.com
llouis@bsfllp.com
srodriguez@bsfllp.com
smccawley@bsfllp.com
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
smcelroy@bsfllp.com
DSmalls@bsfllp.com
jlibling@bsfllp.com

Alexander N. Hood
TOWARDS JUSTICE – DENVER
alex@towardsjustice.org

*Attorney for Plaintiffs*

Susan Penniman Klopman
H&K LAW, LLC
sklopman@hklawllc.com

*Attorney for Defendants Pamela H. Noonan and Thomas J. Noonan*

Brooke A. Colaizzi
Raymond Myles Deeny
Alyssa Lauren Levy
Heather Fox Vickles
Joseph H. Hunt
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
alevy@shermanhoward.com
hvickles@shermanhoward.com
jhunt@shermanhoward.com

*Attorneys for InterExchange, Inc.*

William James Kelly, III
Chanda M. Feldkamp
KELLY & WALKER LLC
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

*Attorneys for USAuPair, Inc.*

Bogdan Enica
Bogdan Enica, Attorney at Law
bogdane@hotmail.com

*Attorney for Expert Group International, Inc. d/b/a Expert AuPair*

David B. Meschke
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
dmeschke@bhfs.com
mfitzgerald@bhfs.com

*Attorneys for Defendant EurAupair InterCultural Child Care Programs*

Adam A. Hubbard
Jonathan S. Bender

12

James Edward Hartley
HOLLAND & HART, LLP
aahubbard@hollandhart.com
jsbender@hollandhart.com
jhartley@hollandhart.com

*Attorneys for Cultural Homestay International*

Diane R. Hazel
James M. Lyons
Jessica L. Fuller
LEWIS ROCA ROTHGERBER CHRISTIE LLP
dhazel@lrrc.com
jlyons@lrrc.com
jfuller@lrrc.com

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Kevin Patrick O'Keefe
Lyndsey M. Kruzer
Samuel Newland Rudman
CHOATE, HALL & STEWART, LLP
joan.lukey@choate.com
rbuchanan@choate.com
mgass@choate.com
jwolosz@choate.com
kokeefe@choate.com
lkruzer@choate.com
srudman@choate.com

*Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair*

Jennifer Arnett Roehrich
Nathan Andrew Huey
Peggy E. Kozal
Thomas Baker Quinn
GORDON & REES LLP
Jarnett-roehrich@grsm.com
jmann@gordonrees.com
nhuey@gordonrees.com
pkozal@gordonrees.com
tquinn@gordonrees.com

*Attorneys for Defendant AuPairCare, Inc.*

Brett Michelle Mull
Kathryn A. Reilly
Natalie Elizabeth West
WHEELER TRIGG O'DONNELL LLP
mull@wtotrial.com
reilly@wtotrial.com
west@wtotrial.com

Brian Alan Birenback
RIETZ LAW FIRM, LLC
brian@rietzlawfirm.com

*Attorneys for Defendants Au Pair International, Inc., American Cultural Exchange, LLC d/b/a GoAuPair and Agent Au Pair*

Susan M. Schaecher
FISHER & PHILLIPS LLP
sschaecher@laborlawyers.com

*Attorneys for APF Global Exchange, NFP*

Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
estock@gibsondunn.com

John B. Fulfree
PUTNEY, TWOMBLY, HALL & HIRSON LLP
jfulfree@putneylaw.com

Joseph B. Cartafalsa
Stephen J. Macri
Robert M. Tucker
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
Joseph.cartafalsa@ogletree.com
Stephen.macri@ogletree.com
Robert.tucker@ogletree.com

*Attorneys for Defendants American Institute for Foreign Study d/b/a Au Pair in America*

Aubrey Jane Markson

13

Kathleen E. Craigmile
Lawrence Daniel Stone
NIXON SHEFRIN HENSEN OGBURN
amarkson@nixonshefrin.com
kcraigmile@nixonshefrin.com
lstone@nixonshefrin.com

*Attorneys for A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair and 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange*

Lawrence Daniel Stone
Christian D. Hammond
DUFFORD & BROWN, P.C.
lstone@duffordbrown.com
chammond@duffordbrown.com

Kathryn A. Barrett
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
kbarrett@bhfs.com
mfitzgerald@bhfs.com

*Attorneys for EurAupair Intercultural Child Care Programs*

Harvey J. Wolkoff
ROPES & GRAY, LLP-BOSTON
Harvey.wolkoff@ropesgray.com
*Attorneys for International Care Limited*

*/s/ Barbara L. Werner*
Barbara L. Werner

14