IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

        Defendants.

_____

**EXPERT AU PAIR'S INDIVIDUAL BRIEF IN SUPPORT OF THE MOTION FOR
SUMMARY JUDGMENT**
_____

## STATEMENT OF FACTS

In order to increase mutual understanding between the people of the United States and the people of other countries, the Congress enacted Mutual Educational and Cultural Exchange Act of 1961 (the "Act"), as amended, Public Law 87-256, 22 U.S.C. 2451, *et seq.* (1988). 22 C.F.R. § 62.1(a). The Department of State ("DOS") facilitates such activities, in part, by designating public and private entities to act as sponsors of the Exchange Visitor Programs. C.F.R. § 62.1(b).

Expert AuPair is a small business, operating as an Exchange Visitor Program sponsor. There are 16 sponsor organizations designated by the Department of State ("DOS") to administer the au pair exchange-visitor program (the "Au Pair Program"), which is one of several such exchange programs overseen by DOS. (*See* Defs. Joint Brief in Supp. of Mot. for Summ. J., Defs. Appx. 00001058 - 00001062, Dec. of Mark Gaulter in Supp. of Expert AuPair's Mot. for Summ. J. ("Gaulter Dec.") ¶ 2.) *See also* 22

C.F.R. Part 62. As a DOS-designated sponsor, Expert AuPair is required to ensure participants' compliance with the program regulations established by DOS. 22 C.F.R. §§ 62.1-62.17, § 62.31. (*See* Gaulter Dec. ¶ 3).

All the DOS-designed sponsors, including Expert AuPair are initially approved and reassessed by DOS every two years through a process called re-designation. In order to be able to receive re-designation, Expert AuPair must demonstrate compliance with all programs guidelines and regulations. 22 C.F.R. § 62.7. (*See also* Gaulter Dec. ¶ 3). As part of regulating the Au Pair Program, DOS has the ability to approve, amend or terminate a sponsor's designation. 22 C.F.R. § 62.7(d).

As part of its obligations as a sponsor, Expert AuPair is required to submit a yearly audit to DOS while following a template provided by the Department. (*See* Gaulter Dec. ¶15). Since au pairs are exchange visitors, an officer of Expert AuPair is also required to enroll in the Student and Exchange Visitor Information System and maintain accurate and up-to-date information about the au pairs sponsored in the United States. 22 C.F.R. § 62.70. (*See also* Gaulter Dec. ¶14).

As a sponsor organization, Expert AuPair strives to help foreign au pairs and host families located thought the country to select each other through a process called "matching", to comply with the DOS regulations, while making sure that they are informed of their rights and responsibilities associated to participation in this program. (*See* Gaulter Dec. ¶¶ 7, 9).

As required by the DOS regulations (*See* 22 C.F.R. §62.31(g)), Expert AuPair provides training related to child development and child safety to the au pairs who cannot prove previous satisfactory knowledge in this area (*See* Gaulter Dec. ¶ 15), prior

to the au pair's start date with the host family.  Such training is not compulsory for all au pairs and is provided for free by Expert AuPair by using specialized contractors like the St. Petersburg Fire Department. (*Id.*)

Expert AuPair shall adequately screen all potential host families 22 C.F.R. §62.31(i) and inform them of the requirements related to payment of a certain minimum weekly stipend while limiting the au pair duties to "childcare" and the au pair hours to 10 hours per day and 45 hours per week. (*See* Gaulter Dec. ¶ 9).

During the au pair's stay in the United States, Expert AuPair is not involved in day-to-day management or oversight of the au pairs, and does not monitor or evaluate the au pair's childcare services. (*See* Gaulter Dec. ¶ 12).

## ARGUMENT

### I.   EXPERT AUPAIR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' ANTITRUST CLAIM

Plaintiffs define the alleged conspiracy as an agreement to "fix the au pair's weekly stipend at exactly $195.75. (Second Amended Complaint, ECF No. 395 ("Complaint") ¶ 570; see also Plaintiffs' Motion for Rule 23 Class Certification, ECF No. 599 (alleging that every defendant told au pairs and host families that au pairs should be paid precisely 195.75 per week)). In order to prevail on this claim, the Plaintiffs should present evidence showing that Expert AuPair, part of an agreement to suppress wages, committed itself to the conspiracy. *Dahl v. Bain Capital Partners, LLC,* 963 F. Supp. 2d 43-44 (D.Mass. 2013) Not only that the Plaintiffs have to show that Expert AuPair told its host families that [au pairs] must be paid precisely $195.75 per week, but they must show the existence of an agreement between sponsors and, furthermore, prove Expert AuPair's participation in such an agreement. *Heartland Surgical Specialty*

*Hosp., LLC v Midwest Div., Inc.*, 527 F. Supp. 2d 1257, 1301 (D. Kan. 2007).

Plaintiffs had no choice but admitting in their pleadings that "certain Sponsors have acknowledged that $195.75 per week is merely a programmatic wage floor." (Complaint ¶ 173). Furthermore, as mentioned in the Complaint, "Expert AuPair notes on its website that 197.75 per week is "the <u>minimum</u> required." (*Id*.) (emphasis added).

Not only that the families and au pairs are advised by Expert AuPair that the published stipend amount is a minimum, but they are encouraged to pay more (Gaulter Dec. ¶ 11; *see also* Defs.' R. Appx., pp. 00001055-0001056 – Excerpts of Mark Gaulter 5-9-17 Deposition ("Gaulter 1st Dep.") 179:2-7, 208:1-6). The concept of the stipend being a minimum is consistent in communication between Expert AuPair and its au pairs and host families. (*Id.*) Au pairs referred to Expert AuPair by international recruiters are also informed that the amount is a minimum. Mark Jeffery (the owner and operator of Christian Au Pairs, an overseas company that recruited and matched Nicole Mapledoram with her host family in the U.S) testified that he always treated $195.75 as a minimum and conveyed this information to all the au pairs, including the named plaintiff, Nicole Mapledoram. (Defs.' R. Appx., pp. 00001047-00001052 – Excerpts of Mark Jeffery Deposition ("Jeffery Dep.") 112:23-25, 113:2-3, 113:20-22, 209:22-25, 210:2-8).

Furthermore, host families and au pairs are required to fill in an agreement specifying the agreed-upon weekly stipend. Expert AuPair provides such agreement containing empty fields for the number and schedule of hours, the rate of pay, the method of payment, the number of children, the duties to be performed, and other information specific for each family. (*See* Contract of Nicole Mapledoram, Defs.' R.

Appx., pp. 00001040 – 00001046 ("Mapledoram Contract"). Expert AuPair does not fill in the number of hours or the weekly stipend and does not advise as to the maximum stipend or the minimum number of hours to be handwritten by parties. (*See* Gaulter Dec. ¶ 8). Furthermore, both the number of hours of childcare provided and stipend paid to au pairs sponsored by Expert AuPair varied significantly since 2009. (Gaulter Dec. ¶ 18).

While all the evidence, including the Plaintiffs' own pleadings, demonstrate unequivocally that Expert AuPair advertised the amount of $195.75 as a minimum stipend, such conduct is inconsistent with uniform action and does not fit in a scenario alleging that every defendant has agreed that standard au pairs should be paid precisely $195.75 per week.

Plaintiffs also face the burden of proffering evidence tending "to exclude the possibility that the [Defendant] was acting independently." *Monsanto Co. v. Spray Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). In 2007, DOS advised Expert AuPair that beginning July 24, 2019 the required minimum amount of the weekly stipend would be 195.75. (Gaulter Dec. ¶ 10).   Merely referencing the Department of State's $195.75 stipend amount in advertising and promotional materials is perfectly consistent with independent decision making by Expert AuPair. In fact, Expert AuPair is required to inform families of the minimum stipend. (*See* Gaulter Dec. ¶ 9). So far discovery has revealed no direct evidence regarding Expert AuPair's participation in the alleged conspiracy, and any circumstantial evidence does not support an inference of conspiracy as a matter of law.

As the evidence shows clearly that Expert AuPair acted inconsistently with the

alleged conspiracy's purported objective of "fixing" the weekly stipend at exactly $195.75, plaintiffs cannot succeed on an antitrust claim against Expert AuPair. *See Dahl v. Bain Capital Partners, LLC*, 963 F. Supp. 2d 38, 48-49 (D.Mass.2013).

## II. EXPERT AUPAIR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' MINIMUM WAIGE AND OVERTIME CLAIMS AS IT IS NOT AN EMPLOYER FOR THE AU PAIRS

In order for the Plaintiffs to maintain minimum wage and overtime claims against Expert AuPair, they have to show that Expert AuPair is the au pairs' employer. 29 U.S.C. § 216(b). Whether an entity is an employer, is a question of law. *Coldwell v. Ritecorp Envt'l Prop. Solutions,* 2017 WL 1737715, at *5 (D. Colo. May 4, 2017). All au pair participants provide child care services to the host family and attend a U.S. post-secondary educational institution. 22 C.F.R. § 62.31(a). As such, the host families are the ones providing work for the au pairs. The Plaintiffs claim that Expert AuPair qualifies as a joint employer of au pairs, together with their host families, as Expert AuPair does not directly employ the au pairs.

While the standard for articulating a claim if joint employment under the FLSA is different in various districts, courts in the Tenth Circuit applied mostly the "economic realities" test in response to this question. See. *Fuentes v. Compadres, Inc.* No. 17-cv-01180-CMA-MEH, 2017 WL 6335669 at*11-13 (D.Colo.Dec.12, 2017).

When applying the test, the courts have considered the following factors regarding the alleged joint employer: had the power to hire and fire workers; supervised and controlled the worker's schedules and conditions of employment; determined the rate and method of pay; maintained employment records. See *Coldwell v. Ritecorp. Envt'l Prop. Solutions*, No. 16-cv-01998-NYW, 2017 WL 1737715 at *5 (D.Colo. 2017).

When addressing the issue of oversight and control, courts found that monitoring

for compliance with legal requirements, safety concerns or quality control do not give rise to joint employment. See *Salinas v. Commercial Interiors Inc.,* 848 F.3d 125, 148 (4th Cir. 2017), *Moreau v. Air France* 356 F. 3d 942, 951 (9th Cir 2004), *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 75 (2nd Cir.2007). As a designated sponsor, Expert AuPair has duties and responsibilities related to monitoring all au pair exchanges. 22 C.F.R. 62.31(l). For example, Expert Au Pair's counselors are required to perform a monthly personal contact with each au pair and host family for which the counselor is responsible. (*Id.*). Such contact doe s not raise to the level of monitoring the au pair's activity or performance of childcare duties. In fact, Expert AuPair is not involved in day-to-day management or oversight of au pairs, does not conduct performance reviews and does not evaluate the au pair's childcare services. (Gaulter Dec. ¶ 10).  The contract provided by Expert AuPair to host families allow for negotiation between au pairs and host families both at the "matching" stage and afterwards. Also, the contract allows for the host family to decide the method of pay and the frequency of paying the stipend to the au pair (*See* Mapledoram Contract).

The evidence in this case also shows that Expert Au Pair does not control essential terms of employment, keep or maintain records of the actual amounts of the stipend paid or the hours of childcare provided by each au pair. (Gaulter Dec. ¶ 13). While informing the families about the minimum to be paid, Expert AuPair is advising them to pay more than the minimum stipend amount (Gaulter Dec. ¶ 11).

Expert AuPair does not have the power to fire of hire au pairs. (Gaulter Dec. ¶ 14). Host families, in their own discretion, interview and select the au pairs they want to host. Some of the au pairs that Expert AuPair sponsors are in fact "matching" with a

family even prior to contacting Expert AuPair. (Gaulter Dec. ¶ 7).  Nicole Mapledoram, the named plaintiff is an example of such au pair.

In case of non-compliance with the program rules Expert AuPair has an obligation cancel the au pair's participation in the J-1 program and to record such event in the Student and Exchange Visitor System ("SEVIS") 22 C.F.R. §62.40. While the term used in SEVIS to describe such action is called "termination," Expert AuPair does not "terminate" the relationship between the au pair and the host family in the sense of employment "termination." (Gaulter Dec. ¶ 14). Expert AuPair has no role or authority in terminating the relationship between a host family and a compliant au pair. (*Id.*).

Expert AuPair does not keep records of the actual amount of stipend paid or the number of hours of childcare provided by each au pair. (Gaulter Dec. ¶ 10).  While the host family may have access to pay records or other "employment"-related information, such documents are not maintained or collected by Expert AuPair. (*Id.*)

Au Pairs are afforded the opportunity to live with an American host family and participate directly in the home life of the host family. 22 C.F.R. §62.31(a). Expert AuPair does not own or control the host family's residence or the equipment used by au pair in performance of childcare services.

In applying the joint employment test to the relationship between Expert AuPair and the au pairs it sponsors, the test fails at every prong. The incontestable evidence shows that Expert AuPair does not the power to hire and fire au pairs; it does not supervise or control the au pairs' schedules and conditions of work; does not determine the rate and method of pay for au pairs; and does not maintain employment records. Furthermore, the au pairs do not work on Expert AuPair premises and does not use

tools or equipment provided by Expert AuPair. For that reason, Expert AuPair is entitled to summary judgment on Plaintiffs' wage and hour claims.

### III.  EXPERT AUPAIR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' MISREPRESENTATION CLAIMS

Nicole Mapledoram asserts the following claims against Expert AuPair: breach of fiduciary duty, negligent misrepresentation, constructive fraud or fraudulent concealment, and violation of consumer protection laws.

While Mapledoram does not articulate reliance on any representations made by Expert AuPair, the claims asserted are based on the fact that the sponsors were misleading the au pairs to believe that the weekly wage was fixed by law and could not be altered. (Complaint ¶ 584). Furthermore, the sponsors allegedly misrepresented the legality and set nature of the [stipend] (Complaint ¶ 587; see id. ¶¶ 548, 590, 593)

As discussed above, Expert AuPair did not represent that the stipend is fixed. In fact, even Nicole Mapledoram received more than $195.75 from her host family (Complaint ¶ 517) and was informed prior to her participation in the program that the amount is a minimum (Jeffery Dep. 112:23-25, 113:2-3, 113:20-22). The DOS regulations prescribe the minimum amount of compensation, and in 2014 the amount was $195.75. (Gaulter Dec. ¶ 10). As DOS close monitoring of the program provided Expert AuPair with the assurance needed that the amount is legal, Expert AuPair cannot be found liable for fraud simply because the courts may decide that the law is "other than he claimed it to be." *Amherst College v. Ritch*, 45 N.E. 876, 886 (N.Y. 1897).

### IV.  EXPERT AUPAIR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM UNDER FLSA FOR UNPAID TRAINING

Training time is not compensable under the FLSA if it occurs outside regular business hours, attendance is voluntary, is not directly related to employee's job and the

employees do not perform any productive work during training. 29 C.F.R.§ 785.27

DOS Regulations require sponsor organizations to provide training to au pairs related to child development and child safety prior to their arrival to the host family's residence. 22 C.F.R. §62.31(g). As such, for the au pair candidates that cannot prove such knowledge, Expert AuPair, using specialized contractors like the St. Petersburg Fire Department, provides, free of charge, the required training. (Gaulter Dec. ¶ 15).

For the duration of the training, Expert AuPair provides the participants with free hotel accommodation, free breakfast and lunch. (*Id.*). The training is mandated by DOS, therefore the training is considered "voluntary" for the purpose of FLSA. *Kosakow v. New Rochelle Radiology Assocs. P.C.*, 272 F.3d 706, 721-722 (2nd Cir. 2001), *Freeman v. Total Sec. Mgmt. – Wisconsin LLC.* No.12-cv-461-WMC, 2013 WL 4049542, at *7-10 (W.D. Wis, Aug. 2013). It is undisputed that for the duration of the training au pairs perform no childcare duties.

For these reasons, the au pairs' training time is not compensable and Expert AuPair is entitled to summary judgment on Plaintiffs' claim for unpaid training.

### CONCLUSION

For the reasons set forth herein and in Defendants' master brief, Defendant Expert AuPair is entitled to summary judgment on all of Plaintiffs' claims.

Dated: February 16, 2018

Respectfully submitted,

s/Bogdan Enica
Bogdan Enica, Esq.
111 Second Avenue NE, Suite 900
St Petersburg, FL 33701
Phone: 727-388-3472
bogdane@hotmail.com
EXPERT GROUP INTERNATIONAL INC.
D/B/A EXPERT AUPAIR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of February, 2018, I have caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/Bogdan Enica

Bogdan Enica, Esq.