# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

## DEFENDANT USAUPAIR, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant, USAuPair, Inc. ("USAP"), an "antitrust only" Defendant, hereby moves for an order entering summary judgment against Plaintiffs. USAP joins Certain Defendants' Joint Motion for Summary Judgment, ECF No. 860 ("Defs.' Joint MSJ") filed February 16, 2018, and incorporates by reference all applicable arguments and legal standards set forth there. USAP submits this individual Motion for Summary Judgment ("Motion") to highlight those facts and arguments discrete to it.[1]

### INTRODUCTION

USAP is a sole proprietorship owned by Helene Young ("Ms. Young") in the hamlet of Lake Oswego, Oregon. From 2009 to 2015, this company of one has made a total of 151 placements, averaging 21 placements per year.

---

[1] This Court has contemplated and permitted individual motions for summary judgment in its order dated January 31, 2018 (ECF No. 825).

In this complex, fiercely litigated class action, there is no named plaintiff attributed to USAP. No Plaintiff asserts any claim or allegation specifically against USAP. Instead, USAP has been swept into the antitrust claim through the collective pleadings in the Second Amended Complaint ("SAC")."[2]

This Motion demonstrates that there is no evidence, whether direct or circumstantial, that USAP was somehow involved with any conspiracy, plan or agreement to fix the stipend for the Au Pair industry at exactly $195.75. There is no evidence to credibly support that other Au Pair Sponsors cared what USAP did, or that she had the kind of power that could influence the United States Department of State (the "State Department") or the industry in any way. This Motion also demonstrates that USAP's communications to host families and au pairs are inconsistent with a conspiracy to fix the stipend amount at exactly $195.75. In the end, this Motion shows that including this remote and small sponsor as a defendant to claims of this magnitude, and to append her to this international class action as a conspirator against antitrust law, stretches credulity until it breaks.

## I. PLAINTIFFS' CANNOT PROVE THAT USAP PARTICIPATED IN THE ALLEGED CONSPIRACY

### A. Burden of Proof.

---

[2] The only mention of USAP in the SAC is in the caption, the "Parties" section (SAC ¶28, listing USAP's business address), and in asserting that USAP advertises a weekly stipend of $195.75 (SAC ¶103) (but failing to include the footnote reference that stipend amounts are "subject to minimum wage laws"). Beyond those three references, the SAC refers to all Defendants, together, as "Sponsor Defendants." (SAC ¶44).

This Motion focuses on the first prong of Plaintiff's *prima facie* case. Specifically, to survive summary judgment, Plaintiffs "must first demonstrate the existence of an agreement" as to "*each* defendant." *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) (emphasis added); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 527 F. Supp. 2d 1257, 1302 (D. Kan. 2007).

### B.  Each element that must be proved.

The "essence" of a Section 1 violation "is the agreement itself." *Champagne Metals, Inc. v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1082 (10th Cir. 2006). Absent proof that USAP "conscious[ly] commit[ted]" to the alleged conspiracy, Plaintiffs' antitrust claims against it necessarily fail. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) (Section 1 violation requires proof that defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective"); *Dahl v. Bain Capital Partners, LLC*, 963 F. Supp. 2d 38, 43-44 (D. Mass. 2013) ("Plaintiffs must satisfy [the evidentiary requirements for summary judgment] with respect to each defendant alleged to have participated in the purported conspiracy to show that each defendant committed themselves to the conspiracy.").

### C.  Material, undisputed, or admitted facts that prove that element.

Discovery has revealed no direct or circumstantial evidence of a conspiracy by USAP with any other Defendant. To the contrary, the uncontroverted evidence is that Ms. Young relied upon publications of the State Department and applicable regulations to represent the stipend amount to host families. USAP's statements regarding the stipend amount took on different forms. Defs.' Appx. 1037-1042, Declaration of Helene

3

Young ("Young Decl."). Specifically:

- On its website, USAP indicated that au pairs will "receive $195.75 USD each week" with other terms consistent with the State Department regulations and law. Defs.' Appx. 1039, ¶ 10; *Id.*, p.1043-1045, USAP website excerpts.

- In its "Program Fees & Schedules" form, which USAP updates annually and delivers to all host families in its program, USAP indicates that the "Weekly Stipend for 51 weeks is $195.75 (effective July 24, 2009)" and also indicate that this weekly stipend is "subject to change in accordance with Federal Minimum Wage Laws." Defs.' Appx. 1039, ¶ 11; *Id.,* p. 1046, Ex. B to Young Decl.[3]

- USAP's standard contracts reflect State Department requirements, but otherwise allow host families and au pairs to specify and agree to their own terms. In its Host Family Agreement, used in each placement, the Host Family agrees and acknowledges that the au pair will receive "a weekly stipend consistent with applicable law and paid weekly." Defs.' Appx. 1039, ¶ 12; *Id.,* p. 1054, ¶ 4, Ex. J to Young Decl., Host Family Agreement.

- Each host family is provided a copy of the applicable regulations. Defs.' Appx. 1039, ¶ 13.

---

[3] Each of USAP's Program Fees and Schedules from 2009-2016 are at Defs' Appx. 1047-53.

4

- As part of the onboarding and matching process for a host family and an au pair, around the time of executing the Host Family Agreement, USAP would also always provide the host family a copy of the program regulations and the program fee schedule which included a statement of the minimum stipend amount. *Id.*

- On the host family questionnaire, USAP would ask that the host family assure it is operating in compliance with all laws and regulations attributable to the au pair exchange program. Specifically, the questionnaire asks: "Have you paid your au pair the *minimum* weekly stipend of $195.75?" Defs.' Appx. 1040, ¶ 18; *Id.*, p. 1056, Ex. K to Young Decl., at Q9 (emphasis added). Each host family would receive the Host Family Confirmation questionnaire, meaning that each host family matched with an au pair at USAP was advised that the stipend of $195.75 was a minimum. *Id.*, p. 1040, ¶ 19.

- In all of USAP's documentation, marketing materials, or agreements nothing indicates that au pairs may not be compensated more than the weekly stipend amount of $195.75. *Id.*, ¶ 16.

Moreover, the evidence in this case is undisputed that Ms. Young, acting on behalf of USAP, obtained the stipend amount from State Department published bulletins, corresponding regulations, and communication with the State Department. Defs.' Appx. 1041, ¶ 22. USAP relied on those statements as having the force of law and as mandating what it could advise hosts and au pairs as to the minimum stipend

5

amount. *Id.* This reliance is reflected not only in Ms. Young's declaration, but in USAP's Program Fees & Schedules. *Id.,* p. 1046-1053.  Those documents, on their face, rely on the State Department guidance and notice, indicating the effective date to set the minimum amount of the stipend will be July 24, 2009. *Id.*[4]

Simply stated, Plaintiffs have no evidence to demonstrate that the $195.75 stipend amount originated with a conspiracy among the Sponsors rather than in reliance on State Department and regulations.  USAP did not reach this stipend amount independently, or as a result of any coordination, discussion or agreement with any other sponsor organization.  Defs.' Appx. 1041, ¶ 23. USAP reached the stipend amount of $195.75 in review of what Ms. Young considered to be the mandate of the State Department, to be effective July 24, 2009. *Id.*

### D. Elements which Plaintiffs cannot prove.

#### 1. No Direct or Circumstantial Evidence of a Conspiracy.

Plaintiffs define the alleged conspiracy as an agreement to "fix" the au pairs' weekly stipend "at <u>exactly</u>" $195.75. (SAC, ¶ 570 (emphasis added), ECF No. 395; *see also* Pls.' Mot. for R. 23 Class Cert. ("Pls.' Mot. for Class Cert.") 4-5, ECF No. 559 (alleging that "every defendant has agreed that all standard au pairs should be paid

---

[4] As is more fully set-forth in the Defs.' Joint MSJ, the State Department issued a "Notice of Federal Minimum Wage Increase" in 2007 confirming that the "weekly stipend" is "directly connected to the federal minimum wage" and should increase accordingly.  Defs.' Appx., p. 75 - ("2007 DOS Fed. Min. Wage Handout").  The Notice specified that "the weekly stipend for the standard Au Pair Program" would increase to "$195.75" on July 24, 2009. In June 2009, the State Department again advised au pair sponsors that, as of July 24, 2009, "the weekly stipend for the standard Au Pair Program" would increase to "$195.75."  Defs.' Appx., p. 478 - ("2009 DOS Fed. Min. Wage Handout").  USAP's documents, on their face, match these guides and notices, in amount and as to the effective date.

$195.75 per week" and "told au pairs and host families that [au pairs] must be paid <u>precisely</u> $195.75 per week" (emphasis added).) Thus, they must present evidence showing that USAP had a "conscious commitment" to that objective. They cannot.

As to direct evidence of any conspiracy, Plaintiffs' only proffer emanates from purported statements that employees of three other Defendants, unaffiliated with USAP, allegedly made to a private investigator.  *See* Defs.' Appx., p. 602 - Keil Memorandum; *see, also*, Order Concerning Defendants' Motions to Dismiss (ECF No. 258) at 9–10.[5] The Keil Memorandum references conversations of Au Pair Foundation, Au Pair International, Inc., and EurAuPair.  *Id.*  The so-called "direct evidence" has been revealed as baseless.  But as to USAP, specifically, the proffer says nothing.  USAP is not referenced in the Keil Memorandum and none of the interviewees worked for USAP. Thus, even if this Court were to somehow find that the Keil Memorandum creates a triable issue by way of direct evidence, which all Defendants dispute, that finding would have no bearing on USAP, who is nowhere mentioned in the memorandum.

Plaintiffs must therefore resort to circumstantial evidence to show that USAP engaged in a conspiracy.  When seeking to prove a conspiracy based on parallel conduct rather than direct evidence, the Supreme Court has strictly limited "the range of permissible inferences" that can be drawn from "ambiguous evidence." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).  Conduct that is "as

---

[5] In its order, the Court characterized Plaintiffs' allegations of conspiracy as "weak" and noted that no information was provided by Plaintiffs to establish "whether such individuals (who allegedly identified themselves as "Directors") had the 'authority to speak for one, much less all, of sponsor Defendants.'" (citing ECF No. 248 at 14).  *See,* ECF No. 258 at 14.

7

consistent" with unilateral action "as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Id*. To reach a jury, Plaintiffs must present circumstantial evidence that is not merely consistent with conspiracy, but instead tends to exclude the possibility that the parallel conduct is the result of independent decision-making by each defendant. *Matsushita*, 475 U.S. at 588.

As is set-forth in Section "C" above, it is clear that USAP's reliance on the State Department's statements and publications constitutes independent decision-making by Ms. Young in connection with USAP's various statements about the stipend amount.

### 2. USAP's Conduct is Inconsistent with the Overarching Conspiracy.

The evidence also conclusively refutes any inference that USAP committed to the alleged conspiracy by showing that its actions were inconsistent with the purported objective of the conspiracy. There is no evidence that USAP told host families or au pairs that $195.75 was the only permitted weekly stipend or that it required host families to pay that amount. USAP materials reference the State Department regulations. USAP provides a copy of the regulations to each host family. It references "federal minimum wage laws" and it asks host families if they are paying a "minimum" of $195.75 per week to au pairs.

Accordingly, the evidence overwhelmingly shows that USAP acted inconsistently with the alleged conspiracy's purported objective of "fixing" the weekly stipend at "exactly" $195.75. This is fatal to the antitrust claim against USAP. *See Dahl v. Bain Capital Partners, LLC*, 963 F. Supp. 2d 38, 48 (D. Mass. 2013) (granting summary judgment to alleged antitrust co-conspirator when evidence showed that its actions were

"inconsistent with the overarching conspiracy").

## **CONCLUSION**

Ms. Young did her best to assure that USAP complied with applicable law and regulations. There is no Plaintiff attributable to USAP, there is no Plaintiff who has made any allegations specifically against USAP, and there exists a vacuum of any direct or circumstantial evidence that USAP was somehow involved in some conspiracy to fix the stipend amount. Plaintiffs simply cannot offer any evidence, whether direct or circumstantial, to establish that USAP did anything but rely on State Department regulations and publications with regard to the stipend. USAP acted inconsistently with the alleged conspiracy's purported objective of "fixing" the weekly stipend at "exactly" $195.75

**WHEREFORE**, Defendant USAuPair, Inc. respectfully requests entry of an order granting summary judgment in its favor, and for such other relief as is just and proper under the circumstances.

Respectfully submitted this 16th day of February, 2018.

**KELLY & WALKER LLC**

*/s/ William J. Kelly III*
William J. Kelly III, No. 38749
Chanda M. Feldkamp, No. 44260
1512 Larimer Street, Suite 200
Denver, Colorado 80202
720-236-1800 (Telephone)
720-236-1799 (Facsimile)
Email: wkelly@kellywalkerlaw.com
          cfeldkamp@kellywalkerlaw.com
**ATTORNEY FOR DEFENDANT USAUPAIR, INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 16, 2018, I electronically filed the foregoing defendant USAUPAIR'S MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

                                    *s/ William J. Kelly III*