IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

    Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

    Defendants.

_____

**AUPAIRCARE, INC.'S MOTION FOR SUMMARY JUDGMENT**
_____

Defendant AuPairCare, Inc. ("APC"), through its undersigned counsel, hereby moves for summary judgment on the antitrust claim asserted against it by au pairs who were sponsored by other Defendants. APC also joins Defendants' Joint Motion for Summary Judgment ("Joint MSJ") filed on February 16, 2018, to the extent that the Joint MSJ requests dispositive relief against APC on the antitrust claim brought by au pairs who were sponsored by other Defendants. The remaining claims asserted against APC

1

are currently stayed. See Order Granting in Part and Denying in Part AuPairCare, Inc.'s Motion to Stay [ECF No. 756]. APC reserves all rights to move for appropriate relief on the stayed claims if this Court regains jurisdiction over the stayed causes of action.

**I.      Statement of Facts**

APC is an au pair sponsor agency that has been in operation since 1989. Defs. Appx. 00000043-44, at 43, https://www.aupaircare.com/about-us (last visited Feb. 13, 2018).[1] It is a Designated Sponsor Organization approved to sponsor J-1 visa recipients. See Defs. Appx. 00000045-53, at 46 https://j1visa.state.gov/sponsors/sponsor-by-country/?program=all (last visited Feb. 13, 2018). As a Designated Sponsor Organization, APC conveyed the directive on au pair stipends that was issued by the Department of State ("DOS") to both prospective au pairs and host families. As explained in an informational brochure issued by DOS, "Sponsoring organizations in the U.S. have the responsibility for administering the program, within the regulations set by the Department of State." Defs. Appx. 00001214-1219, at 1215, The Au Pair Exchange Program Brochure, *available at* https://j1visa.state.gov/sponsors/current/regulations-compliance/ (last visited Feb. 6, 2018). DOS explains that sponsoring organizations convey information to au pairs:

> Sponsoring organizations provide au pairs with a copy of all operating procedures, rules, and regulations, including a grievance process, which govern the au pair's participation in the exchange program; a detailed profile of the host family and community into which they will be placed; a detailed profile of the educational institutions available in the community

---

[1] All references to "Defs. Appx." are to the Appendix of Certain Defendants in Support of Motions for Summary Judgment. ECF No. 861.

>where the au pair will be placed, including the financial cost of attendance; a detailed summary of travel arrangements; and a copy of the Department of State's written statement and brochure on the program.

Id.

Since the inception of the au pair program, the federal agency tasked with oversight of the program (first the U.S. Information Agency, and then DOS) has issued statements to au pair sponsor organizations showing that the minimum weekly stipend that au pairs were to receive was tied to the federal minimum wage. See Defs. Appx. 00000059-75, at 62, Decl. of Stanley Colvin, June 15, 2017, at ¶ 14. This amount, conveyed by DOS, was based on an au pair performing childcare services for up to 45 hours a week, at the federal minimum wage, with a 40% credit for room and board. Id. at 64, ¶ 20.

APC had no role in determining the minimum stipend amount for au pairs. Rather, APC simply relayed to au pairs and host families the minimum stipend amount that DOS communicated to sponsor organizations, including APC. Defs. Appx. 00000076-81, at 77-78, Dep. Tr. of M. Schneider, May 4, 2017, at 27:6-22, 47:8-19. APC's reference to the specific amount of $195.75 was based on the notices received from DOS. Id. at 79-80, 38:6-22, 42:15-44:17; Defs. Appx. 00000082-88, at 84, S. McNamara Dep. Tr., May 4, 2017, 17:13-15, 17:24-18:4.

In addition, the $195.75 minimum weekly stipend that APC communicated was just that – a minimum. Host families and au pairs were free to negotiate a higher rate, and they often did so. Id. at 85, 23:10-19. Based on survey responses that Plaintiffs' counsel received from host families, fewer than 25% of APC host families reported

paying exactly $195.75 to their au pairs. Defs. Appx. 00000089-116, at 90-91, Declaration of P. Kozal, ¶ 5, July 17, 2017, attached as Ex. E to APC's Brief in Opp'n to Pls.' Mot. for Class Certification [ECF No. 602-5] (referencing Defs. Appx. 00000092-109 (Ex. D to APC's Brief in Opp'n to Pls.' Mot. for Class Certification, ECF No. 602-4)). The Plaintiffs' survey results show that 57% of APC host families reported paying $200 or more per week. Id.

APC's concern was that host families paid au pairs at least the minimum weekly amount that had been communicated by DOS. As the Senior Vice President of APC testified at her deposition, "Our role as a designated sponsor is to ensure that she's paid $195.75. And we're not – if au pairs are paid more than that, there's – we're not monitoring that. But we need to ensure that she's paid $195.75 a week per – per the Department of State." Defs. Appx. 00000082-88, at 85, S. McNamara Dep. Tr., at 23:10-15. When asked whether "ensuring someone is paid $195 a week, does that mean that the au pair must be paid at least $195.75 a week but could be paid more?", Ms. McNamara stated, "Yes." Id. at 85, 23:16-19. Indeed, APC advertisements stated that the cost to host families for an au pair was "about $350 per week" or "about $340 per week." Defs.' Appx. 00001230-1234, at 1231 and Defs.' Appx. 00001230-1234, at 1235, APC internet advertisements, produced at APC 000126-129, at 127; and APC 000130-131, at 130.

APC had no agreement with other sponsor organizations regarding the minimum stipend amount or how to convey the minimum stipend amount to au pairs and host families. Defs. Appx. 00000082-88, at 87, S. McNamara Dep. Tr., at 89:6-12 (Q: Has

4

AuPairCare and its competitors ever discussed how to present the stipend in marketing materials? A: I have not had that discussion. Q: Have others at AuPairCare had that discussion? A: Not to my knowledge."). In addition to APC unambiguously rejecting that there is any agreement, Plaintiffs can show no evidence of any agreement between APC and other sponsor organizations. Plaintiffs cite to an investigator's report on anonymous calls that he made to certain sponsors – evidence cited as "weak" by this Court in its Order adopting the Report and Recommendation in which Magistrate Judge Tafoya recommended denying defendants' motions to dismiss. [ECF No. 258, at 14.] But even this weak evidence does not report on any conversation with any representative of APC. There simply is no evidence of any agreement between APC and any other sponsor organization about how to convey the minimum stipend amount to au pairs. APC's advertising of the cost of an au pair as "about $340 a week" or "about $350 a week," contradicts Plaintiffs' claim that APC and other sponsor organizations agreed to state that the stipend was exactly $195.75, and belies any assertion that APC had any agreement with other sponsor organizations about how to convey the stipend amount.

Contrary to having an agreement with other sponsor organizations, APC viewed other sponsor organizations as competitors. Defs. Appx. 00000082-88, at 86, S. McNamara Dep. Tr., at 85:20-22. To set itself apart from its competitors, APC implemented a unique Infant Specialized Program. See Defs.' Appx. 00001220-1229, at 1220, AuPairCare promotional brochure, APC 000013-23, at 13, discussing the Infant Specialized Program. Au pairs who wanted to be paired with a host family with infants

5

were provided additional training. Id. This infant specialization program set APC apart from its competitors, and also let individual au pairs market themselves as more attractive candidates to certain host families.

Further, APC undertook efforts to ensure that its marketing was competitive vis-à-vis other sponsor organizations. For example, APC changed the content of its website in an effort to keep up with its competitors. Defs. Appx. 00000082-88, at 86, S. McNamara Dep. Tr., at 86:12-14 ("[W]e look at our competitors' [web]sites and we look at the landscape and we make updates accordingly."); Defs. Appx. 00000076-81, at 78, M. Schneider Dep. Tr., at 46:12-21 (describing APC's competitive analysis tasks, including "looking at websites of competitors").

APC competed with other au pair sponsor organizations, and it conveyed to au pairs and host families the minimum weekly stipend amounts that had been communicated to APC by DOS. This compliance in no way shows that APC somehow colluded with its competitors. There was no agreement between APC and its competitors regarding the communication of DOS minimum requirements to host families and au pairs. APC's concern in this regard was to do its part to ensure that host families complied with the minimum requirements, plain and simple.

## II. LEGAL ANALYSIS

### A. Burden of Proof and Elements

As laid out in more detail in the Defendants' Joint Motion for Summary Judgment, filed simultaneously herewith, to prevail on their antitrust claim filed under 15 U.S.C. § 1, Plaintiffs must prove that (1) there was an agreement, (2) which constituted an

6

unreasonable restraint of trade, (3) and which caused Plaintiffs both antitrust injury and (4) damages. See Joint MSJ at pp. 4-5. With respect to APC, Plaintiffs cannot satisfy the first two elements – they can show no evidence of any agreement between APC and any other sponsor organization that constitutes a restraint of trade – negating the necessity of analyzing the third and fourth elements (which Plaintiffs also fail to prove).

### B. Plaintiffs Can Show No Evidence of Any Agreement in Restraint of Trade Between APC and Any Other Sponsor Organization

"The essence of a claim of violation of Section 1 of the Sherman Act is the agreement itself." Champagne Metals, Inc. v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1082 (10th Cir. 2006). To show such an agreement, the plaintiff must prove that the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective." Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 768 (1984). Many of the Supreme Court's rulings on the "agreement" requirement for a section 1 claim have focused on ambiguous evidence, where "conduct [is] as consistent with permissible competition as with illegal conspiracy." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). Here, there is no ambiguous evidence for the Court to wade through – there is no evidence *at all* that APC had an agreement with its competitors to hold down the wages of au pairs. As such, Plaintiffs cannot meet the threshold requirement of showing with evidence the existence of an agreement with respect to defendant APC. Champagne Metals, 458 F.3d at 1082.

As this Court explained in its Order Adopting and Affirming in Part Feb. 22, 2016 Recommendation of United States Magistrate Judge ("Order Denying Motion to

7

Dismiss"), "a plaintiff must withstand a relatively higher burden to survive a defendant's summary judgment motion than a motion to dismiss, especially in the antitrust context, which limits the range of permissible inferences from ambiguous evidence." ECF No. 258, at 15 n.9. This Court relied heavily on the Tenth Circuit case Champagne Metals, 458 F.3d 1073, particularly that case's guidance for courts presented with both direct evidence and circumstantial evidence regarding a possible antitrust agreement. With respect to situations where only circumstantial evidence is presented, the Champagne Metals court explained:

> Circumstantial evidence may support the existence of an illegal § 1 agreement. However, on summary judgment, antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case. To survive a motion for summary judgment, a plaintiff seeking damages for a violation of § 1 must present evidence that tends to exclude the possibility that the alleged conspirators acted independently. Thus, the acceptable inferences which we can draw from circumstantial evidence vary with the plausibility of the plaintiffs' theory and the danger associated with such inferences.

Id. at 1085 (quoting, Mitchael v. Intracorp, Inc., 179 F.3d 847, 858 (10th Cir. 1999)).

Here, Plaintiffs allege that Defendants "conspired and agreed to fix all of their sponsored standard au pairs' weekly wages at exactly the minimum amount viewed as allowable under the FLSA," purportedly resulting in a per se violation of section 1 of the Sherman Act. SAC ¶ 570 [ECF NO. 395]. As discussed above, APC did not "fix" the wages of au pairs – host families and au pairs determined what au pairs' weekly stipends would be, and in the majority of cases, the stipend was above the minimum amount. See Defs. Appx. 00000089-116, at 90-91, Decl. of P. Kozal at ¶ 5 (fewer than 25% of APC host families reported paying exactly $195.75 to their au pairs).

Further, Plaintiffs can point to no evidence of any conspiracy or agreement, because there was none. APC representatives deny that there has ever been an agreement, and Plaintiffs cannot show with any direct evidence that APC had any sort of agreement with any other sponsor organization, either for the setting of stipend amounts or for how stipend amounts were to be communicated. The evidence relied on by this Court in denying Defendants' motion to dismiss the antitrust claim – the "weak" investigator report submitted by Plaintiffs – does not implicate APC. The report makes no mention of any conversations with APC, much less conversations that would bind APC and show some sort of agreement. As such the only direct evidence presented by Plaintiffs, described by this Court as "weak," is no evidence at all insofar as APC is concerned. With respect to circumstantial evidence, Plaintiffs cannot point to any evidence that "tends to exclude the possibility that APC acted independently." <u>Champagne Metals</u>, 458 F.3d at 1085. As detailed above, APC acted entirely independently – it communicated the minimum stipend amount and other program requirements to host families and au pairs, as that information was conveyed to it by the DOS, and it acted in accordance with its view of other sponsor organizations as competitors.

Plaintiffs have failed to meet their burden to prove existence of an agreement between APC and any other sponsor organization. Summary judgment should therefore be entered, and the antitrust claim against APC dismissed.

9

Respectfully submitted this 16th day of February, 2018.

*s/ Thomas B. Quinn*
Thomas B. Quinn
Peggy E. Kozal
Nathan Huey
Jennifer Arnett-Roehrich
GORDON & REES LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
Fax: (303) 534-5161
tquinn@grsm.com
pkozal@grsm.com
nhuey@grsm.com
jarnett-roehrich@grsm.com

***Attorneys for Defendant AuPairCare, Inc.***

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system, which will send notification to all counsel referenced below, and/or sent via electronic mail on this the 16th day of February, 2018 addressed to:

| | | |
|---|---|---|
| Lauren F. Louis<br>Sigrid S. McCawley<br>Sabria McElroy<br>Matthew L. Schwartz<br>Peter M. Skinner<br>Randall W. Jackson<br>Dawn L. Smalls<br>Joshua Libling<br>Juan P. Valdivieso<br>Byron Pacheco<br>BOIES SCHILLER & FLEXNER, LLP<br>llouis@bsfllp.com<br>smccawley@bsfllp.com<br>smcelroy@bsfllp.com<br>mlschwartz@bsfllp.com<br>pskinner@bsfllp.com<br>rjackson@bsfllp.com<br>dsmalls@bsfllp.com<br>srogriguez@bsfllp.com<br>jlibling@bsfllp.com<br>jvaldivieso@bsfllp.com<br>bpacheco@bsfllp.com<br><br>    and<br>Alexander N. Hood<br>TOWARDS JUSTICE – DENVER<br>alex@towardsjustice.org<br>***Attorneys for Plaintiffs*** | Brooke A. Colaizzi<br>Raymond M. Deeny<br>Heather F. Vickles<br>Joseph H. Hunt<br>Alyssa L. Levy<br>SHERMAN & HOWARD, LLC<br>bcolaizzi@shermanhoward.com<br>rdeeny@shermanhoward.com<br>hvickles@shermanhoward.com<br>jhunt@shermanhoward.com<br>alevy@shermanhoward.com<br>***Attorneys for Defendant InterExchange, Inc.*** | William J. Kelly, III<br>Chanda M. Feldkamp<br>KELLY & WALKER, LLC<br>wkelly@kellywalkerlaw.com<br>cfeldkamp@kellywalkerlaw.com<br>***Attorneys for Defendant USAuPair, Inc.*** |
| Meshach Y. Rhoades<br>Martin J. Estevao<br>Vance Orlando Knapp<br>ARMSTRONG TEASDALE, LLP<br>mrhoades@armstrongteasdale.com<br>mestevao@armstrongteasdale.com<br>vknapp@armstrongteasdale.com | Bogdan Enica<br>BOGDAN ENICA, ATTORNEY AT LAW<br>bogdane@hotmail.com<br>***Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair*** | David B. Meschke<br>Martha L. Fitzgerald<br>BROWNSTEIN HYATT FARBER SCHRECK, LLP<br>dmeschke@bhfs.com<br>mfitzgerald@bhfs.com<br>***Attorneys for Defendant EurAupair InterCultural Child Care Programs*** |

| | | |
|---|---|---|
| ***Attorneys for Defendant GreatAuPair, LLC*** | | |
| James E. Hartley<br>Adam A. Hubbard<br>Jonathan S. Bender<br>HOLLAND & HART, LLP<br>jhartley@hollandhart.com<br>aahubbard@hollandhart.com<br>jsbender@hollandhart.com<br>***Attorneys for Defendant Cultural Homestay International*** | Brian A. Birenbach<br>RIETZ LAW FIRM, LLC<br>brian@rietzlawfirm.com<br>   *and*<br>Kathryn A. Reilly<br>Grace A. Fox<br>Natalie West<br>WHEELER TRIGG O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>***Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair*** | Kathryn A. Reilly<br>Grace A. Fox<br>Natalie West<br>WHEELER TRIGG O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>***Attorney for Defendant Agent Au Pair*** |
| Lawrence L. Lee<br>Susan M. Schaecher<br>FISHER & PHILLIPS, LLP<br>llee@laborlawyers.com<br>sschaecher@laborlawyers.com<br><br>and<br><br>John B. Fulfree<br>Joseph B. Cartafalsa<br>Robert M. Tucker<br>Stephen J. Macri<br>Joseph B. Cartafalsa<br>OGLETREE, DEAKINS<br>Stephen.macri@ogletree.com<br>Jopseh.cartafalsa@ogletree.com<br>***Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation; American Institute for Foreign Study d/b/a Au Pair in America*** | Eric J. Stock<br>Gibson, Dunn & Crutcher LLP<br>estock@gibsondunn.com<br>mao@gibsondunn.com<br>***Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America***<br><br>Lawrence D. Stone<br>Kathleen E. Craigmile<br>NIXON SHEFRIN HENSEN OGBURN, P.C.<br>lstone@nixonshefrin.com<br>kcraigmile@nixonshefrin.com<br>***Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair; 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange*** | Joan A. Lukey<br>Robert M. Buchanan, Jr.<br>Michael T. Gass<br>Justin J. Wolosz<br>Lyndsey M. Kruzer<br>Kevin P. O'Keefe<br>CHOATE, HALL & STEWART, LLP<br>joan.lukey@choate.com<br>rbuchanan@choate.com<br>mgass@choate.com<br>jwolosz@choate.com<br>lkruzer@choate.com<br>kokeefe@choate.com<br>   *and*<br>Diane R. Hazel<br>James M. Lyons<br>Jessica L. Fuller<br>LEWIS ROCA ROTHGERBER CHRISTIE LLP<br>dhazel@lrrc.com<br>jlyons@lrrc.com<br>jfuller@lrrc.com<br>***Attorneys for Defendant*** |

| | | ***Cultural Care, Inc. d/b/a Cultural Care Au Pair*** |
|---|---|---|

*/s/ Thomas B. Quinn*
For Gordon & Rees LLP