IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

### DEFENDANT AU PAIR INTERNATIONAL, INC.'S
### MOTION FOR SUMMARY JUDGMENT

Defendant Au Pair International, Inc. ("API") hereby moves for an order entering summary judgment against Plaintiffs on all claims asserted against API.[1]

### INTRODUCTION

Plaintiffs' antitrust claim fails as to API for one simple reason: Plaintiffs cannot prove that API agreed to or participated in the alleged conspiracy to "fix" the au pairs' stipend at "exactly" $195.75 per week. (*See* Second Am. Compl. ("Compl.") ¶ 570.) To the contrary, the evidence shows that API acted inconsistently with the objective of that purported conspiracy by telling host families that $195.75 was the federally-required

---

[1] API also joins Certain Defendants' Motion for Summary Judgment ("Defs.' MSJ") [ECF 860] filed February 16, 2018, and incorporates by reference all applicable legal standards set forth therein.

1

minimum weekly stipend and allowing them to pay more than that amount if they chose to do so. API is therefore entitled to summary judgment on Plaintiffs' antitrust claim.

## STATEMENT OF FACTS

API is one of 16 sponsor organizations designated by the Department of State ("DOS") to administer an au pair exchange-visitor program (the "Au Pair Program"), which is one of several J-1 visa exchange programs overseen by DOS. (Certain Defs.' App'x in Supp. of Mots. for Summ. J. ("App.") 120 (Lehan Dec.).) As an Au Pair Program sponsor, API is required to communicate, and ensure compliance with, the stipend requirement established by DOS. 22 C.F.R. §§ 62.1-62.17, § 62.31(j). To that end, API advises host families that they must pay their au pairs a weekly stipend of at least $195.75, the amount DOS has identified as the required minimum stipend for all au pairs. (App. 121 (Lehan Dec.); Defs.' MSJ 7-8.) Additionally, API advertises a higher minimum stipend of $225 for au pairs who qualify for API's "Professional Program."[2] (App. 121 (Lehan Dec.).) API, however, permits host families and au pairs to negotiate a different stipend amount, provided that the agreed-upon stipend is not less than the minimum amount required by DOS. (*Id.*)

API's training materials and standard contracts with program participants reflect this policy. API instructs its staff, local representatives, and international partners that au pairs must be paid in conformance with the DOS-identified minimum stipend amount, but that host families may agree to pay a higher stipend if they want. (App. 122-23

---

[2] "Professional" au pairs, as defined by API, either have a post-secondary degree in the teaching or medical professions or a minimum of two years of full-time childcare experience. (*Id.*)

(Lehan Dec.) (discussing training materials).) Pursuant to its contract with all host families (the "Host Family Agreement"), each host family expressly agrees it will "provide the Au Pair a stipend of no less than: $195.75 per week." (App. 124 (HF Agmt.)) (emphasis added).) The standard written agreement between host families and au pairs (the "Host Family-Au Pair Agreement") similarly refers to the "minimum weekly stipend" required by DOS regulations. (App. 127-31 (HF-AP Agmt.).)

## ARGUMENT

For their antitrust claim, Plaintiffs must prove a Section 1 violation, the "essence" of which "is the agreement itself." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1082 (10th Cir. 2006).[3] Thus, to survive summary judgment, Plaintiffs "must first demonstrate the existence of an agreement," *id.*, and they must do so as to "each defendant," *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 527 F. Supp. 2d 1257, 1302 (D. Kan. 2007) (emphasis added).[4] Absent proof that API "conscious[ly] commit[ted]" to the alleged conspiracy—defined by Plaintiffs as one to "fix" the au pairs' weekly stipend as "precisely" $195.75 (*see* Defs.' MSJ 2-3)—the antitrust claims against it fail. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). This requires proof of more than mere parallel conduct explained by "independent responses

---

[3] The elements of a Section 1 claim, and the evidentiary burden Plaintiffs must meet to survive summary judgment, are more fully set forth in Certain Defendants' Motion for Summary Judgment. (Defs.' MSJ 4-5.)

[4] *Accord AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) (requiring "a factual showing that each defendant conspired in violation of the antitrust laws"); *Dahl v. Bain Capital Partners, LLC*, 963 F. Supp. 2d 38, 43-44 (D. Mass. 2013) ("Plaintiffs must satisfy [the evidentiary requirements for summary judgment] with respect to each defendant alleged to have participated in the purported conspiracy to show that each defendant committed themselves to the conspiracy.").

to common stimuli." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.4 (2007). Rather, Plaintiffs must offer proof that "tends to exclude the possibility" that API acted independently. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Plaintiffs cannot satisfy this burden.

> **A. There Is No Direct Evidence that API Agreed to or Participated in the Alleged Conspiracy**

Plaintiffs have no direct evidence that API entered into any agreement to "fix" the weekly stipend at "exactly" $195.75 because no such agreement was ever made. (App. 121 (Lehan Dec.); *see also* Defs.' MSJ 2-19.)

Further, to the extent Plaintiffs try to raise an inference of agreement based on some defendants' involvement with the Alliance—they cannot (*see* Defs.' MSJ 13)—that inference cannot extend to API. API is not and has never been a member of the Alliance. (App. 120 (Lehan Dec.).)

> **B. There Is No Circumstantial Evidence Showing that API Agreed to or Participated in the Alleged Conspiracy**

Plaintiffs also lack probative circumstantial evidence from which a jury may infer any agreement by API. Rather than supporting Plaintiffs' conspiracy claim, evidence of API's conduct conclusively refutes any inference that it committed to the alleged conspiracy. Moreover, any purportedly "parallel" conduct by API is just as easily explained by independent motivation to comply with DOS guidelines.

> 1. <u>API's conduct is inconsistent with the alleged conspiracy</u>

Although Plaintiffs claim every defendant uniformly said that au pairs "must" be paid "exactly" $195.75 per week, the evidence shows that API did the opposite. This

4

alone warrants summary judgment on Plaintiffs' antitrust claim. *See Dahl v. Bain Capital Partners, LLC*, 963 F. Supp. 2d 38, 48-49 (D. Mass. 2013) (granting summary judgment to alleged antitrust co-conspirator when evidence showed that its actions were "inconsistent with the overarching conspiracy").

API's policy is, and has always been, that host families are free to pay their au pairs any weekly stipend amount that complies with the minimum required amount identified by DOS. (App. 121 (Lehan Dec.); App. 141-42, 146-47 (Gorry Dep 112:11-114:3, 146:16-147:13).) This policy is communicated to, and reflected in the training materials received by, all API staff and local representatives, as well as to the international partners with whom API works. (App. 122-23 (Lehan Dec.).) For example, materials provided to the local representatives who interview and support host families expressly state that the au pair's stipend must be a "minimum" of $195.75 per week and that host families have the discretion to pay a higher amount. (App. 123 (Lehan Dec.); App. 135-36 (HF Meeting Agenda) ("The minimum stipend must be paid regardless of the hours worked. Host families are free to pay the au pair more at their discretion."); App. 139 (Area Director Handbook) ("The [host] family can pay the au pair as much as the[y] want, including buying things for her, paying her extra per week or giving her bonuses. They cannot pay less than the minimum au pair wage[.]").) Likewise, materials provided to international partners similarly refer to the weekly stipend as a "minimum." (App. 122-23 (Lehan Dec.); App. 134 (Int'l Sending Agent Handbook).)

Moreover, there is no evidence that API ever told host families or au pairs that $195.75 was the only permitted weekly stipend or that it required host families to pay

that amount. To the contrary, as shown by API's standard contracts, API told both host families and au pairs that $195.75 is the DOS-required <u>minimum</u> stipend (not a "fixed" amount). Indeed, by signing the Host Family Agreement, every host family expressly agrees that it will "provide the Au Pair a stipend of <u>no less than</u>: $195.75 per week." (App. 124 (HF Agmt.) (emphasis added).) The Host Family and Au Pair Agreement, signed by host families and au pairs, similarly refers to the "<u>minimum</u> weekly stipend" of $195.75 set by DOS. (App. 127-31 (HF-AP Agmt.) (emphasis added).)

Finally, while API advertises a base stipend of $195.75 for "Regular" au pairs, it also advertises a higher stipend of $225 for more experienced au pairs who qualify for its "Professional" program. (App. 121 (Lehan Dec.).) Critically, this specialized category is not recognized and defined across the au pair industry; thus, au pairs who qualify for one sponsor's specialized program may only qualify for another sponsor's "standard" or "regular" program.[5] Thus, Plaintiffs' attempt to carve-out their own category of "standard" au pairs to meet the needs of their antitrust claim is both artificial and unavailing. That API advertises stipend amounts above $195.75 for <u>any</u> au pair

---

[5] *Compare, e.g.*, http://www.goaupair.com/au-pairs/3-steps-to-become-an-au-pair/apply-now (advertising stipend of $215 for Plus Au Pairs, who "must have previous experience as an Au Pair in another country" and $255 for Premier Au Pairs who must have a "[d]egree in child care related field or at least 2 years of full-time child care experience," as well as "[a]t least 6 months of driving experience" and "[s]trong English skills") (last visited Jan. 24, 2018), *with* https://www.euraupair.com/host-family/in-home-child-care-programs/ (advertising only one specialized category of au pairs who have "at least 2 years of full time child care experience or [are] a certified child care provider or hold a kindergarten or elementary school teaching degree") (last visited Jan. 24, 2018), *with* http://www.aupairint.com/program-options/ (advertising one specialized program for "Professional" au pairs who "have post-secondary degrees in the teaching or medical professions, or a minimum of two years full-time childcare experience").

disproves that it agreed to or participated in the alleged conspiracy. Indeed, API's unilateral creation of this differentiated offering is <u>exactly</u> the type of conduct Plaintiffs say should happen in a freely competitive marketplace.

        2.    <u>API's Independent Response to DOS Guidance on the Stipend Does Not Support Plaintiffs' Antitrust Claim</u>

Plaintiffs' antitrust claim against API relies solely on certain advertisements stating that the weekly stipend "is" $195.75, without expressly specifying that $195.75 is a minimum amount. Plaintiffs cannot survive summary judgment with such "evidence."

Any statement by API that the "stipend is $195.75" is not by itself probative of a conspiracy. That language mirrors DOS's own statements about the stipend (*see* Defs.' MSJ 7-8), which provides an equally plausible explanation as to why API would, acting on its own initiative and absent collusion, represent that the "stipend is $195.75." Such "evidence" cannot by itself create an inference of conspiracy, let alone when stacked against the overwhelming countervailing evidence showing that API's business practices are inconsistent with the conspiracy Plaintiffs allege. *See Llacua v. W. Range Assocs.*, No. 15-cv-1889-REB-CBS, 2016 WL 9735747, at *10 (D. Colo. June 3, 2016) (allegations of "conduct equally likely to result from Defendants' independent, lawful action based on the H–2A program and DOL regulations that established the minimum wage" did not give rise to inference of conspiracy), *approved in relevant part*, 2016 WL 9735748 (D. Colo. Sept. 6, 2016).

In sum, because there is no proof that API agreed to or participated in the alleged conspiracy, it is entitled to summary judgment on Plaintiffs' antitrust claim.

7

## **CONCLUSION**

For all the reasons stated herein, Defendant Au Pair International, Inc. respectfully requests entry of an order granting summary judgment in its favor on all claims asserted against them.

Dated:  February 16, 2018.            Respectfully submitted,


*s/ Kathryn A. Reilly*
Kathryn A. Reilly
Brett M. Mull
Natalie West
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:  Reilly@wtotrial.com
            Mull@wtotrial.com
            West@wtotrial.com

Attorneys for Defendant Au Pair International, Inc.

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on February 16, 2018, I electronically filed the foregoing DEFENDANT AU PAIR INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

*s/ Claudia Jones*