IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

                Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

                Defendants.

_____

## CULTURAL CARE, INC.'S INDIVIDUAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Defendant Cultural Care, Inc. ("CCI") submits this individual brief in further support of Certain Defendants' Motion for Summary Judgment, ECF No. 860 ("Joint Brief"), addressing nineteen state-based claims under the laws of the states where CCI's named plaintiffs (Deetlefs and Azuela Rascon) resided, *i.e.*, Maryland, Massachusetts, Utah, and Virginia (Rule 23 Mot. App. A, ECF No. 559-1), as well as arguments specific to CCI regarding Plaintiffs' Fair Labor Standards Act ("FLSA") claims.  With the exception of FLSA opt-in discovery, discovery is complete, and Plaintiffs have adduced no genuine issues of material fact to defeat summary judgment.

      As an initial matter, Plaintiffs have no claims based on Pennsylvania and Texas law, as there is no named plaintiff who resided or worked in those states.  *See Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2011 WL 2791331, at *8-10 (D. Colo. July 14, 2011); Order Denying Mot. to Amend, ECF No. 850.

## I.    MISREPRESENTATION CLAIMS GENERALLY

      Plaintiffs' claims based on breach of fiduciary duty, negligent misrepresentation,

fraudulent concealment, and state consumer protection laws are each predicated upon two fundamental theories, *i.e.*, that CCI allegedly misrepresented that (1) the stipend was fixed; and (2) a stipend of $195.75 was in compliance with the law.  *See* Second Amended Complaint ("SAC") ¶¶ 584, 587, 590, 593, ECF No. 395.

To prevail, Plaintiffs must prove misrepresentations by CCI with respect to all four of these claims in each of the four states, as discussed *infra*.  But Plaintiffs have offered no credible evidence, much less evidence sufficient to create a genuine issue of material fact, that CCI represented to the host families with whom it contracted that the DOS stipend was fixed.  The host families decide, subject to the minimum required by the State Department, how much to pay au pairs.  R. App. 264[1] – CCI Presentation (CC00000068-70); App. 262 – Program Brochure (CC00000047); R. App. 530 – Jordan Dep. 181-84.  And CCI, as a matter of consistent corporate policy, informs host families with whom it contracts that host families are free to pay more than the stipend mandated by DOS.  App. 190-93 – CCI Interrogatory; R. App. 264 – Presentation (CC00000068-70); App. 262 – Program Brochure (CC00000047); App. 181 – Tax Guidance (CC00014853-54).[2]

For example, CCI suggests in its Tax Guidance that families consult about quarterly obligations if their payments to their au pair materially exceed the DOS stipend

---

[1] Citations in the format "App. _" refer to Defendants' appendix in support of the Joint Brief.  Citations in the format "R. App. _" refer to the combined restricted appendix.

[2] CCI disputes Plaintiffs' allegations that its personnel told au pairs that they could not earn more than the minimum.  *Contra* SAC ¶¶ 421-23.  Regardless, Plaintiffs' allegation is irrelevant for this motion, because the undisputed evidence shows that (1) host families decided the stipend amounts with au pairs; and (2) CCI informed host families that they could pay more than the minimum.

amount (App. 181 – Tax Guidance (CC00014853-54)), and encourages families to consider paying more if the au pair extends for a second year (App. 262 – Program Brochure (CC00000047)).  In addition, CCI's Senior Vice President, Natalie Jordan presented nationwide guidance to CCI's Local Childcare Consultants ("LCCs") that payments above the stipend amount are permissible, as long as extra payments are not made in exchange for extra work (*i.e.*, more than 45 hours/week).  App. 144 – Jordan Decl. ¶¶ 22-29; R. App. 124 – Jordan Decl. Ex. P (CC00013218-20); R. App. 195 – Jordan Decl. Ex. Q (CC00015930-32); R. App. 264 – Jordan Decl. Ex. R (CC00000068-70).  CCI's guidance with respect to this issue has been consistent and uniform, without any credible or material evidence to the contrary.[3]  *See, e.g.*, R. App. 561 – Rannefors Dep. 146; *compare* App. 1008 – DOS Notice ("The Au Pair stipend [of $195.75] is based on a U.S. Department of Labor's [sic] formula . . . ."); *with* App. 350 – CCI Host Family Handbook (CC00000734) ("The weekly stipend . . . of $195.75 . . . is calculated with a formula . . . determined by the U.S. Department of Labor . . . .").  Accurate statements regarding the DOS stipend amount cannot constitute a misrepresentation.  Joint Brief pt. I.B.2.a.

---

[3] Plaintiffs have proffered a statement from one former CCI host mother who alleged in a declaration that a CCI LCC told her on one occasion that she "was not allowed to pay more" than the minimum stipend.  This host mother subsequently testified that she does not remember what the LCC said.  App. 421 – Boehne Dep. 100-01. Plaintiff Deetlefs also testified that her host family told her that they had received instruction from CCI that they could not pay more than the minimum.  App. 424 – Deetlefs Dep. 124.  Not only is this testimony double hearsay from a vaguely described and unidentified source, it is also inconsistent with CCI's instructions to host families.  *See supra*.  Ms. Deetlefs may be confusing the uncontroversial DOS prohibition on au pairs performing more than 45 hours of childcare service for more money, with her stated premise that au pairs could not be paid more money.  *See id.*

Finally, Plaintiffs cannot base their claims on any alleged statements made by non-CCI personnel.  CCI's offices are located in Massachusetts, Colorado, and a handful of remote United States working sites.  R. App. 561 – Rannefors Dep. 19, errata.  CCI markets the au pair program to host families in the United States and performs program management and oversight through U.S. employees and a network of LCCs across the country.  R. App. 530 – Jordan Dep. 25, 105; R. App. 561 – Rannefors Dep. 29.  CCI contracts with a third-party affiliate based in Switzerland, International Care, Ltd. ("ICL"),[4] to advertise to, recruit, and perform initial screening of potential au pairs.  R. App. 530 – Jordan Dep. 29-30, 33; R. App. 561 – Rannefors Dep. 242-43; App. 271 – CCI Host Family Handbook (CC00000342-43).  CCI does not market to or contract with au pairs.  R. App. 530 – Jordan Dep. 37, 41-42; R. App. 561 – Rannefors Dep. 243; Order Denying Mot. to Amend, ECF No. 850.  Upon completion of the application process, CCI facilitates the matching process between au pairs and host families.  R. App. 530 – Jordan Dep. 41-42.  Plaintiffs' misrepresentation claims therefore "fail[] as a matter of law because Plaintiffs offered no evidence that [CCI] made any . . . [alleged] misrepresentations" to au pairs that the stipend was fixed.  *Savers Prop. & Cas. Ins. Co. v. Admiral Ins. Agency, Inc.*, 807 N.E.2d 842, 851 (Mass. App. Ct. 2004); *accord White v. Kennedy Krieger Inst.*, 110 A.3d 724, 756 (Md. App. 2015); *Layton Constr. Co. v. Wrapid Specialty, Inc.*, No. 2:14-cv-00402, 2015 WL 7312896, at *16  (D. Utah Nov. 19, 2015); *Shirland Arms Corp. v. Hall Constr., Inc.*, 67

---

[4] ICL was previously named Cultural Care, Ltd.  R. App. 561 – Rannefors Dep. 244. Plaintiffs made a tardy attempt to add ICL as a defendant, which was denied.  Order Denying Mot. to Amend, ECF No. 850.

Va. Cir. 299, 301-03 (Va. Cir. Ct. 2005).

## II.    BREACH OF FIDUCIARY DUTY SPECIFICALLY[5]

Plaintiffs cannot premise their breach of fiduciary claims on alleged statements by ICL personnel because CCI did not make those statements. *See supra*; *Adams v. Whitman*, No. 01-1989B, 2007 WL 2706148, at *8 (Mass. Super. Ct. Aug. 20, 2007) (claim dependent upon fiduciary relationship between the parties); *IOSTAR Corp. v. Stuart*, No. 1:07-CV-133, 2009 WL 270037, at *9, 20 (D. Utah. Feb. 3, 2009) (same).

In addition, claims for breach of fiduciary duty can only result in awards based on reasonable expectations. *See Brodie v. Jordan*, 857 N.E.2d 1076, 1082 (Mass. 2006); *McLaughlin v. Schenk*, 2009 UT 64, ¶ 28, 220 P.3d 146, 158; *Williams v. Dominion Tech. Partners, L.L.C.*, 576, S.E.2d 752, 758-59 (Va. 2003).  With minimal exceptions, each CCI au pair has received at least the DOS-calculated weekly stipend purportedly as represented, or more.  *See, e.g.,* App. 151, R. App. 15, 27, 40, 52 – CCI Audit Reports; App. 144 – Jordan Decl. ¶¶ 15-17; R. App. 1068 – Bobboni Dep. 101-02; App. 440 – Sahin Dep. 110; App. 444 – Swartz Dep. 139.  In the period covered by this lawsuit, *i.e.*, 2009 when Defendants' purported collusion allegedly began, CCI au pairs have consistently reported satisfaction rates on exit surveys above 75%.  App. 144 – Jordan Decl. ¶¶ 12-14; R. App. 65-71 - CCI Surveys.  Plaintiffs have raised no genuine issue of material fact that expectations were not met.

Finally, Plaintiffs have not proven that but for CCI's alleged breach (which is not

---

[5] Maryland does not recognize a generalized tort of breach of fiduciary duty.  *Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997) ("[[T]here is no universal or omnibus tort for the redress of breach of fiduciary duty . . . .); *accord 1st Team Ritness, LLC v. Illiano*, 137 A.3d 317, 324-35 (Md. Ct. Spec. App. 2016).

established), host families would have paid more.  Therefore, they cannot establish that any purported misrepresentations caused damages.  As noted above, host families who contracted with CCI were told they could pay more than the DOS stipend, and they then decided what they would pay subject to the minimum prescribed by DOS.  App. 190-92 – CCI Interrogatory; R. App. 264 – Presentation (CC00000068-70); App. 262 – Program Brochure (CC00000047); App. 181 – Tax Guidance (CC00014853-54); R. App. 1072 – Bobboni Dep. 122:3-9; App. 432 – Ligarreto Dep. 89; App. 440 – Sahin Dep. 111.  Au pairs routinely received stipends higher than the DOS minimum without any adverse consequences.  R. App. 72-117 – CCI Contact Sheets;[6] R. App. 264 – (Presentation CC00000068-70); App. 440 – Sahin Dep. 110.  Plaintiffs have "the burden of proving each link in the chain of causation" linking the alleged breach to the alleged damages. *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 132, 372 P.3d 629, 677; *see also DiStefano v. Stern (In re JFD Enters.)*, No. 99-2034, 2000 WL 560189, at *4-5 (1st Cir. May 1, 2000) (intervening discretionary act by third party precludes breach of fiduciary duty); *id.* at *7 ("Even on summary judgment, we cannot credit unsupported conjecture and speculation linking [the alleged breach to the damages.]").

## III.   NEGLIGENT MISREPRESENTATION SPECIFICALLY

Virginia does not recognize a claim for negligent misrepresentation separate and

---

[6] The DOS' prescribed audit form for sponsors asks only whether compensation received by au pairs "was no less than $195.75" and whether au pairs "worked 45 hours or less;" accordingly, CCI as part of its normal compliance processes does not record actual amounts paid to au pairs or hours of childcare.  App. 144 – Jordan Decl. ¶¶ 15-17; App. 400 – Audit Template.  However, in limited instances, LCCs recorded amounts, and many of which reflect payments well above the minimum.  R. App. 72-117 – CCI Contact Sheets.

apart from constructive fraud (discussed *infra*).  *See Sun Hotel, Inc. v. Summitbridge Credit Invs. III, L.L.C.*, 86 Va. Cir. 189, 194 (2013).  This negligent misrepresentation claim must be dismissed as a matter of law.

In Maryland, Massachusetts, and Utah, Plaintiffs must prove that (1) CCI, owing a duty of care to Plaintiffs, negligently made a false statement; (2) intending that Plaintiffs would act upon the statement; (3) with knowledge that Plaintiffs would probably rely on it, causing loss or injury; and (4) that Plaintiffs justifiably relied upon the statement; (5) suffering damage proximately caused by the negligence.  *See White*, 110 A.3d at 747-48; *O'Connor v. Merrimack Mut. Fire Ins. Co.*, 897 N.E.2d 593, 600-02 (Mass. App. Ct. 2008); *Sheedy v. BSB Props.*, No. 2:13-cv-290-JNP, 2016 U.S. Dist. LEXIS 178427, at *15-16 (D. Utah Jan. 26, 2016) (attached hereto as Exhibit A).  Utah also requires proof by clear and convincing evidence.  *Jardine v. Brunswick Corp.*, 423 P.2d 659, 663 (Utah 1967).

Plaintiffs have adduced no admissible evidence suggesting that CCI told host families that the amount of the stipend was fixed.  *See supra* pt. I.[7]  Silence on this point in marketing materials—apparently the materials upon which Plaintiffs rely—cannot support a claim, where contracting families were informed that the choice was theirs. Nor can Plaintiffs prove in any event that merely passing along the language of the DOS' guidance regarding the minimum weekly stipend was false or constituted

---

[7] As discussed *supra* note 2, Plaintiffs' allegations that CCI made such misrepresentations to au pairs, while false and unsupported, are not relevant to decide these claims as a matter of law in consideration of the breadth of contradictory communications to host families.

negligence.  Such an assertion would impermissibly impose a duty for sponsors to verify independently, and potentially contradict, the promulgating agencies' interpretation of their own regulations.  No such duty exists.  *Cf. Kiribati Seafood Co. v. Dechert LLP*, 83 N.E.3d 798, 806 (Mass. 2017) (negligence claim cannot be founded upon duty to foresee all legal errors); *Watkiss & Saperstein v. Williams*, 931 P.2d 840, 851 (Utah 1996) (no liability for erroneous interpretation of uncertain law without finding that the interpretation was wholly uninformed).

Even if Plaintiffs had produced credible evidence that CCI told host families that the stipend was "fixed" (which they have not), Plaintiffs have proffered no admissible evidence that host families set the stipend based on such hypothetical statements. Indeed, many Plaintiffs received stipends in excess of the minimum – from a few dollars to substantially more.  App. 432 – Ligarreto Dep. 81; App. 440 – Sahin Dep. 110; R. App. 72-117 – CCI Contact Sheets.  Plaintiffs can hardly show that families relied on alleged statements that $195.75 was a "cap" when Plaintiffs admit, on many occasions, families paid more.  Likewise, Plaintiffs have no admissible evidence that au pairs relied upon statements from CCI to host families, or that CCI expected that they would. Absent such reliance, Plaintiffs' negligent misrepresentation claims fail.  *See White*, 110 A.3d at 749 (reasoning that negligent misrepresentation claims for pecuniary harm cannot be founded on indirect reliance); *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 50 n.26 (Mass. 2009) (negligent misrepresentation cannot be founded on indirect reliance by third parties absent proof of knowledge of reliance by particular third parties); *Se. Directional Drilling, LLC v. Kern River Gas Transmission*

*Co.*, No. 2:11-cv-1035, 2013 WL 209492, at *3-4 (D. Utah Jan. 17, 2013) (same).

Finally**,** Plaintiffs' alleged reliance and harm is contingent on two assumptions: that au pairs would have negotiated higher stipend amounts, and that they would have been paid more as a result.  But Plaintiffs can only recover for actual pecuniary loss, not for theoretical musings.  *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 837 N.E.2d 1121,1135-36 (Mass. 2005); *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶¶ 18-23, 221 P.3d 234, 242-43; *Goldstein v. Miles*, 859 A.2d 313, 326-27 (Md. Ct. Spec. App. 2004) (to obtain expectation damages, plaintiffs must prove warranty or agreement).  As to the alleged misrepresentation of the stipend (which Plaintiffs cannot prove, as discussed *supra*), Plaintiffs cannot prove any resulting loss.  There is no allegation that Plaintiffs did not receive what they had been promised, and they cannot claim damages.  *See Citaramanis v. Hallowell*, 613 A.2d 964, 967 (Md. 1992); *Hershenow v. Enter. Rent-A-Car Co. of Boston*, 840 N.E.2d 526, 534-35 (Mass. 2006).

## IV.    CONSTRUCTIVE FRAUD SPECIFICALLY

The fraud claims based on CCI's dissemination of the DOS-issued notices[8] fail for the reasons discussed *supra*.  If the DOS' information is now deemed unlawful, CCI cannot be held liable for the agency's mistake.  *Cf. Smith v. McLaughlin*, 769 S.E.2d 7, 13-14 (Va. 2015) (no liability for failure to anticipate reversal of law or for error concerning unsettled legal issue).  In addition, Plaintiffs' bare allegations that they would

---

[8] The fraud allegation apparently is twofold: that the notice stipend was a cap, which, as discussed *supra*, is wholly unsupported, and that the DOS calculation regarding room and board and overtime, and disregarding state and local minimum wages, was unlawful.

have been paid more (which must rise to the level of clear and convincing in Maryland and Virginia) cannot be proven.  Plaintiffs cannot stand on speculative damages theories alone.  *Cent. Truck Ctr., Inc. v. Cent. GMC, Inc.*, 4 A.3d 515, 525-26 (Md. Ct. Spec. App. 2010); *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 337 (Utah 1997) (no constructive fraud where injury is lost opportunity for more money); *Evanston Ins. Co. v. Gayatree, Inc.*, No. 2:13cv134, 2013 WL 12097454, at *3 (E.D. Va. Aug. 16, 2013) (expectation damages not recoverable under constructive fraud); *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 163 (D. Mass. 2010) (same).

To prove constructive fraud in Maryland, Plaintiffs must prove by clear and convincing evidence that CCI breached a legal or equitable duty, declared fraudulent by law because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.  *See Canaj, Inc. v. Baker & Div. Phase III*, 893 A.2d 1067, 1095-96 (Md. 2006); *Cent. Truck*, 4 A.3d at 521 n.6.  Plaintiffs have offered no legal or factual justification to expand Maryland's fraud doctrine to create a new duty to oversee and correct DOS' interpretations of its own regulations.  *See Johnson v. Nationstar Mortg., LLC*, No. GJH-14-02536, 2014 WL 5377636, at *4  (D. Md. Oct. 21, 2014).

In Massachusetts, Plaintiffs must prove that CCI made a false statement, about which CCI had no knowledge, which was capable of ascertainment.  *See Petricca v. Simpson*, 862 F. Supp. 13, 16 (D. Mass. 1994).  Plaintiffs cannot prove that repetition of the DOS guidance was false or that it was ascertainable that the DOS calculations would later be deemed unlawful.  *Cf. Kiribati Seafood*, 83 N.E.3d at 806 (judicial error not foreseeable).

In Utah, Plaintiffs must prove a confidential relationship with CCI, and CCI's failure to disclose material facts.  *Jensen*, 944 P.2d at 339.  CCI has no duty to disclose information that it does not know or have reason to know, *i.e.*, the DOS' alleged error.  *See id.*, 944 P.2d at 339-40 (doctor had no duty to "disclose" legal opinion that he had committed malpractice, when he did not believe he had); *see also Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 42-43, 56 P.3d 524, 537 (good faith mistake of law not actionable).

In Virginia, Plaintiffs must prove by clear and convincing evidence that CCI falsely represented a material fact upon which Plaintiffs relied and were damaged.  *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994).  CCI cannot be liable for failing to anticipate the DOS' alleged error or for erring in an unsettled area of law.  *Smith*, 769 S.E.2d at 13-14.

## V.    STATE CONSUMER PROTECTION LAWS SPECIFICALLY

Plaintiffs have not proven that the conduct of which they complain is covered by any of the state consumer statutes.[9]  Massachusetts, Utah, and Virginia exempt parties if their actions are permitted and in compliance with state and federal law.  Mass. Gen. Laws ch. 93A, § 3 (2017); Utah Code Ann. § 13-11-22(a) (2017); Va. Code Ann. § 59.1-199(A) (2017).  CCI conducts its operations strictly in accordance with DOS regulations.  R. App. 517 – CCI Interrogatory 5-7; App. 151, R. App. 15, 27, 40, 52 – CCI Audit

---

[9] The statutes have substantially similar general requirements, in addition to the specific requirements discussed below.  *Compare Mass. Eye & Ear Infirm. v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009), *Ayala v. Am. Home Mortg. Servicing*, No. 2:11-cv-77-DB-PMW, 2011 WL 3319543, at *3 (D. Utah June 8, 2011); *Seeman v. Oxfordshire, LLC*, 83 Va. Cir. 442, 445 (2011).

Reports; R. App. 530 – Jordan Dep. 185-91; App. 144 – Jordan Decl. ¶¶ 4-11.  Indeed, DOS has required annual compliance audit reports from CCI and the other sponsors, performed an on-site audit of CCI in 2013, and cited CCI's practices as an example of how to ensure compliance with the stipend and hour requirements of the regulations at a 2012 meeting.  R. App. 516 - Ltr from DOS; App. 144 – Jordan Decl. ¶¶ 4-11; R. App. 121 – Meeting Summary (CC00009061).  CCI's actions are therefore exempt from the referenced consumer laws.  *Bierig v. Everett Square Plaza Assocs.*, 611 N.E.2d 720, 728 (Mass. App. Ct. 1993); *Thomas v. Wells Fargo Bank, N.A.*, No. 2:13-cv-686-PMW, 2014 WL 657394, at *3 (D. Utah Feb. 20, 2014); *Oberto v. Grogan*, 88 Va. Cir. 188, 190 (2014).

In addition, each of Plaintiffs' consumer protection claims requires proof of intent or recklessness.  *See Allen v. Bank of Am. Corp.*, No. CCB-11-33, 2011 WL 3654451, at *7 (D. Md. Aug. 18, 2011); *Darviris v. Petros*, 812 N.E.2d 1188, 1192 (Mass. 2004); *Midland Funding LLC v. Sotolongo*, 2014 UT App 95, ¶¶ 32-33, 825 P.3d 871, 881; *Weiss v. Cassidy Dev. Corp.*, 63 Va. Cir. 76, 78 (2003).  As discussed *supra* pt. III, there is no basis to assert that CCI's actions were negligent, much less reckless, knowing or intentional, and CCI cannot be liable for not disclosing information it did not know, *i.e.*, that the DOS-prescribed minimum was purportedly unlawful.  *Underwood v. Risman*, 605 N.E.2d 832, 835-36 (Mass. 1993).  As to Plaintiffs' alternative theory, that CCI allegedly misrepresented that the stipend amount was fixed, there is no evidence that CCI made such representations to host families, and therefore could not have been the legal cause of any purported loss.  *See supra* pt. I.

Plaintiffs also fail to adduce sufficient evidence of injury or damages under any of the relevant states' law. Plaintiffs' failure to prove injury or loss beyond a theoretical lost opportunity to negotiate a higher stipend defeats the claim. *See McDaniel v. Baranowsky*, 19 A.3d 927, 943 (Md. 2011) (no proof of actual loss is fatal to Maryland statute); *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 482-83 (D. Mass. 2015) (speculative damages not sufficient for Massachusetts statute); *Reynolds v. Reliable Transmissions, Inc.*, No. 3:09cv238, 2010 WL 2640065, at *3 (E.D. Va. June 29, 2010) (Virginia statute requires proof of loss with reasonable certainty).

Plaintiffs' evidence falls short in other respects specific to each state's laws:

Under the Maryland Consumer Protection Act, Md. Ann. Code, Comm. Law § 13-101 *et seq.*, "the deceptive practice must occur in the sale or offer for sale to consumers." *Morris v. Osmose Wood Preserving*, 340 Md. 519, 542 (1995). Plaintiffs' claim involves no "merchant," "consumer," or "consumer services" as defined in the statute (*see* Md. Code Ann. Com. Law § 13-101), therefore requiring dismissal (*see Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt.*, 95 F. Supp. 3d 886, 909 (D. Md. 2015)).

The Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 *et seq.*, *forbids damages on a class-wide basis*. Utah Code Ann. § 13-11-19(2) ("A consumer who suffers a loss . . . may recover, but not in a class action, actual damages . . . .").

In Massachusetts, Plaintiffs must also prove that they sent a pre-suit demand letter outlining their claims 30 days in advance of filing (*see Thorpe v. Mut. of Omaha Ins. Co.*, 984 F.2d 541, 544 (1st Cir. 1993)), even in class actions (*Lewis v. Collective*

*Brands, Inc.*, No. 13-12702-GAO, 2014 WL 4924413, at *1 (D. Mass. Sept. 29, 2014)).

Plaintiffs did not send the required demand letter before filing.  App. 144 - Jordan Decl.

¶ 33.  The demand letter is a jurisdictional element, and the failure to issue the demand

requires dismissal of the claim.  *Roberts v. Crowley*, 538 F. Supp. 2d 413, 420-21 (D.

Mass. 2008).  In addition, lost wage claims in an alleged employment relationship

(which Plaintiffs allege and Defendants dispute), are not within the purview of the act.

*See Manning v. Zuckerman*, 444 N.E.2d 1262, 1264-65 (Mass. 1983); *see also Debnam*

*v. FedEx Home Delivery*, 766 F.3d 93, 96-97 (1st Cir. 2014) (private services offered

pursuant to an alleged employment relationship are not covered).

## VI.     FEDERAL MINIMUM WAGE AND OVERTIME CLAIMS

Plaintiffs can only prevail on their wage claims under the FLSA and state law if

such laws apply to the au pair program.  *See* Joint Brief pts. III-IV, incorporated here by

reference.  If such laws even apply, Plaintiffs must then establish that CCI is Plaintiffs'

"employer" under the FLSA, and that Plaintiffs worked compensable time for which they

were not paid in conformance with the FLSA.  *See, e.g.*, *Martinez-Mendoza v.*

*Champion Int'l Corp.*, 340 F.3d 1200, 1209 (11th Cir. 2003); *Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680, 687 (1946); *Baker v. Barnard Constr. Co.*, 146 F.3d 1214,

1220 (10th Cir. 1998).  Plaintiffs cannot satisfy their burden of proof because they

cannot establish either (i) that Sponsors are joint employers under the FLSA (*see*

*Ivanov v. Sunset Pools Mgmt.*, 567 F. Supp. 2d 189, 195 (D.D.C. 2008)),[10] or (ii) that

---

[10] Judge Casper in the District of Massachusetts found that CCI could not be held liable
for a variety of common law claims brought by a host parent who alleged that a CCI au
pair had assaulted her child.  Judge Casper reasoned that, per the host family

the DOS' minimum stipend violates the FLSA (Joint Brief pt. IV.B).

Furthermore, CCI does not conduct the recruiting, screening, or "hiring" of au pairs, and CCI does not enter into any contractual relationships with au pairs.  *See, e.g.*, Kerr Class Cert. Rpt. Ex. 8, row 8, ECF No. 560-65 (showing no standard contracts with au pairs), *accord* R. App. 530 – Jordan Dep. 37.  Instead, CCI contracts with ICL to fulfill these functions.  *See id.*  Moreover, as the Department of Labor ("DOL") has noted, host families (rather than sponsors) manage the childcare responsibilities of the au pair. 60 Fed. Reg. 8547, 8551; *see also* App. 189 – DOS Ltr. to Host Families; R. App. 264 – CCI Presentation (CC00000088-90); App. 347 – CCI Host Family Contract ¶ 10; App. 271 – CCI Host Family Handbook (CC00000359); App. 426 – Eastridge Dep. 56-57; App. 441 – Sahin Dep. 98; App. 424 – Ligarreto Dep. 70.

Thus, CCI does not "share or co-determine [with host families] those matters governing the essential terms and conditions of employment" or "exercise significant control over the same employees." *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002) (*en banc*).  Rather, CCI's interactions  with the au pairs fall far short of the indicia of control necessary to establish an employment relationship.  *See Sanchez v. Simply Right, Inc.*, No. 15–cv–00974–RM–MEH, 2017 WL 2222601, at *12 (D. Colo. May 22, 2017).

---

agreement, "Cultural Care is not charged with 'supervision' of the au pair[;] . . . Cultural Care has 'no dominion or control' over the au pair and . . . the au pair is not an 'employee, servant or agent' of Cultural Care[;] . . . 'it is the Host's sole responsibility to thoroughly interview and carefully choose an au pair' [and] the host is responsible for paying a stipend to the au pair, providing appropriate board and lodging, . . . and paying for certain expenses incurred by the au pair."  *Doe v. Cultural Care, Inc.*, No. 10-11426-DJC, 2011 WL 4738558, at *5 (D. Mass. Oct. 7, 2011).

**VII.    STATE LAW MINIMUM WAGE AND OVERTIME CLAIMS.**

Plaintiffs' state wage claims are preempted.  *See* Joint Brief pt. III, incorporated here by reference.  In addition, the state wage laws likewise require Plaintiffs to prove that CCI is a joint employer.  Just as Plaintiffs' FLSA claim fails to meet this burden, Plaintiffs' state wage claims fail for the same reason.

Maryland courts adopt an "economic realities test" to evaluate joint employer status.  *Newell v. Runnels*, 967 A.2d 729, 772 (Md. 2009).  The courts consider a four factor test in determining who controls the employee: (1) the ability to hire and fire, (2) supervision and control of the employee's work schedule and conditions, (3) the rate and method of payment, and (4) the maintenance of records.  *Id.*  Similarly, in Virginia "[t]he elements of an employment relationship are: (1) selection and engagement of the employee, (2) payment of wages, (3) power of dismissal, and (4) power of control of the employee's action. The most important of these is the element of control." *Stover v. Ratliff*, 272 S.E.2d 40, 42 (Va. 1980); *Behrensen v. Whitaker*, 392 S.E.2d 508, 509 (Va. Ct. App. 1990).

As discussed herein and in the Joint Brief, CCI does not hire the au pairs.  *See, e.g.*, App. 347 – CCI Host Family Contract ¶ 5; *Stover*, 272 SE.2d at 42 ("selection and engagement" of employee is an indicia of employment relationship); *Newell*, 967 A.2d at 772 (ability to hire is an indicia of employment relationship).  Each host family interviews and selects its own au pair.  R. App. 530 – Jordan Dep. 178-79, 183-84; App. 271 – CCI Host Family Handbook (CC00000346-49).  CCI does not participate in the pre-match screening interviews conducted by ICL or in the interviews between a host

family and potential au pairs, and does not select the au pairs for placement with a family.  *See* R. App. 530 – Jordan Dep. 29-30, 33, 37, 41-42, 178-85; R. App. 561 – Rannefors Dep. 242-43.

Likewise, CCI does not fire au pairs.  *See* App. 144 – Jordan Decl. ¶¶ 30-32; *Stover*, 272 S.E.2d at 4 ("power of dismissal"); *Newell*, 967 A.2d at 772 (ability to fire). If a host family is unhappy with its au pair, it may initiate a "transition," *i.e.*, end its relationship with the au pair.  R. App. 1061 – Jordan Dep. 206-209; App. 271 – CCI Host Family Handbook (CC00000386-87).

CCI does not remove either au pairs or host families from the program unilaterally except, consistent with its DOS-approved role, for violations of DOS requirements and/or to ensure the health, welfare, and safety of au pairs or host family members.  App. 199 – DOS Presentation (AAP_54-56); R. App. 530 – Jordan Dep. 209; *see also, e.g.*, R. App. 336-42 – CCI Emails.  Even if an au pair or host family requests a separation, CCI seeks to rematch both the au pair and the host family.  App. 271 – CCI Host Family Handbook (CC00000389-90).  CCI will only end an au pair's participation involuntarily if the au pair engages in unlawful or harmful behavior that endangers the au pair, the host family, or others and/or leads to the revocation of the J-1 visa by DOS, or otherwise demonstrates unwillingness to continue with the program in accordance with the DOS's rules and goals.  *See* 22 C.F.R. § 62.31(l)(3-4) (requiring sponsors to report to DOS "unusual or serious incidents" and "incidents involving or alleging a crime of moral turpitude"); App. 144 – Jordan Decl. ¶¶ 30-32; R. App. 530 – Jordan Dep. 209; App. 260 – DOS Incident Report Rubric.  Therefore, CCI never

"terminates" an au pair in an employment sense, and only ends the au pair's exchange program participation if it is legally required to do so to fulfill its obligations as a DOS-designated sponsor.  *See id.*

Nor does CCI pay au pairs,[11] or choose the amount or manner in which au pairs are paid, other than to monitor compliance with the DOS minimum.  R. App. 264 – CCI Presentation (CC00000068-70); App. 262 – CCI Brochure (CC00000047); R. App. 530 – Jordan Dep. 204-05.  Host families choose the amount and manner of payments to au pairs.  *See id.*  Some host families choose to pay more than the minimum.  R. App. 72-117 – CCI Contact Sheets; App. 426 – Eastridge Dep. 57; App. 432 – Ligaretto Dep. 81; App. 440 – Sahin Dep. 110.  Moreover, families choose whether to pay in cash, by check, by bank transfer, or by some other method.  App. 426 – Eastridge Dep. 57; App. 430 – Kruschwitz Dep. 69; App. 440 – Sahin Dep. 98, 110-11.  CCI maintains no records of au pairs' hours worked or host families' stipends paid.  *See supra* n.6.

Finally, CCI neither sets nor supervises au pairs' childcare duties or schedule.  As the DOL acknowledged, "[t]he 'family' determines what hours of the day the au pair will work."  Exchange Visitor Program, 60 Fed. Reg. 8547, 8551 (Feb. 15, 1995).[12]  "The 'family' determines what additional duties may be necessary for the au pair to

---

[11] On rare occasions only, when a host family has refused to pay an au pair who leaves the family for her last week of childcare, CCI has paid the au pair directly and then deducted that amount from whatever refund is due to the family for its early termination.  *See* R. App. 530 - Jordan Dep. 212-13; R. App. 514 - CCI Email.  These isolated accommodations to the au pair do not convert CCI into an employer.

[12] *See, e.g.*, App. 426 – Eastridge Dep. 56; App. 438 – Pavot Dep. 67; App. 440 – Sahin Dep. 98; R. App. 1071 – Bobboni Dep. 113.

perform on a daily basis." *Id.*[13]  "The 'family' dictates what the child, under the care of the au pair, will eat, when he will play, and when he will nap."  *Id.*  CCI monitors only regulatory compliance to ensure that au pairs' duties do not fall outside of the "childcare" permitted by the regulations.  22 C.F.R. § 62.31.

In addition, the Virginia Minimum Wage Act, § 40.1-28.8 *et seq* ("Virginia MWA"), which governs wage and hour violations, explicitly exempts "any person employed in domestic service or in or about a private home . . . ."  Va. Code. Ann. § 40.1-28.9(B)(2).  Plaintiffs have asserted throughout this suit that au pairs are "domestic workers" (*see, e.g.*, SAC ¶ 154), thereby effectively conceding that  the Virginia MWA is inapplicable.[14]

## VIII.   CLAIMS REGARDING DEPARTMENT OF STATE-MANDATED TRAINING

Plaintiffs bear the burden of proving that they worked compensable time for which they were not properly compensated under the FLSA in connection with their claim relating to time spent in DOS-mandated training.  *Baker*, 146 F.3d at 1220.  The DOL has enunciated the tests to determine whether training is compensable.  *See* Joint Brief pt. V.A, incorporated here; *see also* App. 1121 - Dep't of Labor Field Operations Handbook § 10b(11); *see also Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947); *Bienkowski v. Northeastern Univ.*, 285 F. 3d 138, 141 (1st Cir. 2002); *Choa v. Tradesmen Int'l, Inc.* 310 F. 3d 905 (6th Cir. 2001); 29 C.F.R. § 785.27.

Under New York law (where CCI conducts all of its au pair training), Plaintiffs

---

[13] *See, e.g.*, App. 426 – Eastridge Dep. 56-57.

[14] In addition, if this Court finds that Plaintiffs are covered by the FLSA, then Plaintiffs are not covered by Virginia law. The law covers only employees *not* covered by the FLSA.  Va. Code. Ann. § 40.10-28.9.

likewise bear the burden of showing that they worked compensable time for which they were not properly compensated. *See Martinez v. Alimentos Saludables Corp.*, No. 16-cv-1997, 2017 WL 503350, at *9 (S.D.N.Y. Sept. 22, 2017).  Training time is not compensable, however, if the training is required by law.  *See* App. 187 - NYSDOL RO-08-0020 (advising that a daycare provider need not pay its employees for engaging in state-mandated training for childcare providers); *Moreno v. Future Care Health Servs., Inc.*, No. 500569/13, 2015 WL 1969753, at *6 (N.Y. Sup. Ct. May 4, 2015) (training required by NY Department of Health regulations is not compensable). DOS regulations dictate that the training must occur, how long it is, and the content.  22 C.F.R. § 62.31(b)-(c), (f)-(g).  CCI's training adheres to these requirements, and therefore is not compensable under the FLSA.  R. App. 530 – Jordan Dep. 185, 199-200; R. App. 343 – CCI Training Workbook.

Nor can Plaintiffs recover for training under New York law.  New York explicitly exempts legally-required training from compensable time under its wage statute.  App. 187 - NYSDOL RO-08-0020; *Moreno*, 2015 WL 1969753, at *6.  Indeed, the DOS-required training, including child safety and development, is directly analogous to daycare provider training, which the New York State Department of Labor has opined is not compensable.  App. 187 - NYSDOL RO-08-0020.

## **CONCLUSION**

For the foregoing reasons and the reasons discussed in the Joint Brief, CCI respectfully requests that judgment enter in its favor on all counts.

Dated:  February 16, 2018.        Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane R. Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

**Attorneys for Defendant Cultural Care, Inc.
d/b/a Cultural Care Au Pair**

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on February 16, 2018, I have caused to be electronically filed **CULTURAL CARE, INC.'S INDIVIDUAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Matthew L. Schwartz (mlschwartz@bsfllp.com) Peter M. Skinner (pskinner@bsfllp.com) Randall W. Jackson (rjackson@bsfllp.com) Dawn L. Smalls (dsmalls@bsfllp.com) Joshua J. Libling (jlibling@bsfllp.com) Lauren F. Louis (llouis@bsfllp.com) Sigrid S. McCawley (smccawley@bsfllp.com) Sabria A. McElroy (smcelroy@bsfllp.com) Byron Pacheco (bpacheco@bsfllp.com) Sean P. Rodriguez (srodriguez@bsfllp.com) Juan P. Valdivieso (jvaldivieso@bsfllp.com) Boies Schiller & Flexner, LLP<br><br>Alexander N. Hood (alex@towardsjustice.org) Towards Justice-Denver<br><br>*Counsel for Plaintiffs* | Brooke A. Colaizzi (bcolaizzi@shermanhoward.com) Raymond Myles Deeny (rdeeny@shermanhoward.com) Alyssa Lauren Levy (alevy@shermanhoward.com) Heather Fox Vickles (hvickles@shermanhoward.com) Joseph H. Hunt (jhunt@shermanhoward.com)<br><br>*Counsel for InterExchange, Inc.* |
| Chanda Marie Feldkamp (cfeldkamp@kellywalkerlaw.com) William James Kelly, III (wkelly@kellywalkerlaw.com)<br><br>*Counsel for USAuPair, Inc.* | Martin Jose Estevao (mestevao@armstrongteasdale.com) Meshach Yustine Rhoades (mrhoades@armstrongteasdale.com) Vance Orlando Knapp (vknapp@armstrongteasdale.com)<br><br>*Counsel for GreatAuPair, LLC* |
| Bodgan Enica (bogdane@hotmail.com)<br><br>*Counsel for Expert Group International, Inc. d/b/a Expert AuPair* | David Meschke (dmeschke@bhfs.com) Martha Louise Fitzgerald (mfitzgerald@bhfs.com)<br><br>*Counsel for Euraupair InterCultural Child* |

| | Care Programs |
|---|---|
| Adam Hubbard (ahubbard@hollandhart.com) James Edward Hartley (jhartley@hollandhart.com) Jonathan S. Bender (jsbender@hollandhart.com) *Counsel for Cultural Homestay International* | Jennifer Arnett Roehrich (jarnett@roehrich@grsm.com) Nathan Andrew Huey (nhuey@gordonrees.com) Peggy Kozal (pkozal@gordonrees.com) Thomas Baker Quinn (tquinn@gordonrees.com) *Counsel for AuPairCare, Inc.* |
| Brett Michelle Mull (mull@wtotrial.com) Kathryn A. Reilly (reilly@wtotrial.com) Natalie Elizabeth West (west@wtotrial.com) *Counsel for Au Pair International, Inc., American Cultural Exchange, LLC d/b/a GoAuPair, Agent Au Pair, and GoAuPair Operations, LLC* | Susan M. Schaecher (sschaecher@fisherphillips.com) *Counsel for APF Global Exchange d/b/a Aupair Foundation* |
| Eric Jonathan Stock (estock@gibsondunn.com) John B. Fulfree (jfulfree@putneylaw.com) Joseph B. Cartafalsa (joseph.cartafalsa@ogletreedeakins.com) Robert M. Tucker (Robert.tucker@ogletreedeakins.com) Stephen J. Macri (Stephen.macri@ogletree.com) *Counsel for American Institute for Foreign Study d/b/a Au Pair in America* | Brian Alan Birenbach (brian@rietzlawfirm.com) *Counsel for Au Pair International, Inc. and American Cultural Exchange, LLC d/b/a GoAuPair* |
| Aubrey Jane Markson (amarkson@nixonshefrin.com) Kathleen E. Craigmile (kcraigmile@nixonshefrin.com) Lawrence Daniel Stone (lstone@nixonshefrin.com) *Counsel for A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair and 20/20 Care Exchange, LLC* | Harvey J. Wolkoff (Harvey.wolkoff@ropesgray.com) *Counsel for International Care Limited* |

| *d/b/a International Au Pair Exchange* | |

*s/ Diane R. Hazel*