IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

　　　　　Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

　　　　　Defendants.

---

**DEFENDANTS AMERICAN CULTURAL EXCHANGE, LLC D/B/A GO AU PAIR AND
GO AU PAIR OPERATIONS LLC'S MOTION FOR SUMMARY JUDGMENT**

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

ARGUMENT ...................................................................................................... 5

I.  PLAINTIFFS' ANTITRUST CLAIM FAILS BECAUSE THEY CANNOT PROVE THAT GO AU PAIR PARTICIPATED IN THE ALLEGED CONSPIRACY ............................................................................................. 5

    A.  There Is No Direct Evidence of an Agreement by Go Au Pair .................... 6

    B.  There Is No Circumstantial Evidence of an Agreement by Go Au Pair ........ 7

        1.  Go Au Pair's conduct is inconsistent with the alleged conspiracy .......................................................................................... 7

        2.  Go Au Pair's Independent Response to DOS Guidance on the Stipend Does Not Support Plaintiffs' Antitrust Claim ......................... 8

II. THE MINIMUM-WAGE AND OVERTIME CLAIMS FAIL BECAUSE GO AU PAIR IS NOT THE AU PAIRS' EMPLOYER .......................................................... 9

    A.  Legal Standard for Joint Employment ...................................................... 10

    B.  Go Au Pair's Practices Refute Plaintiffs' Claim of Joint Employment ......... 12

        1.  Host families set the stipend amount and when and how to pay it .............................................................................................. 13

        2.  Go Au Pair does not have the power to hire and fire au pairs ......... 13

        3.  Host families supervise au pairs and control their work schedules and employment conditions ........................................... 15

        4.  Go Au Pair does not maintain employment records ....................... 16

III. ALL MISREPRESENTATION-BASED CLAIMS FAIL AS A MATTER OF LAW ................................................................................................................ 17

    A.  Breach of Fiduciary Duty Is Not a Recognized Claim in Maryland ............. 17

i

B.     Plaintiffs Cannot Prove that Go Au Pair Made, and that They
Justifiably Relied on, Any Alleged Misrepresentation................................. 18

C.     Plaintiffs Are Not Entitled to Punitive Damages ......................................... 20

CONCLUSION .......................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**

*Alexander v. Randall*,
   133 N.W.2d 124 (Iowa 1965) ........................................................................... 19

*Alvarez-Soto v. B. Frank Joy, LLC*,
   258 F. Supp. 3d 615 (D. Md. 2017) ........................................................... 10, 11

*Amherst College v. Ritch*,
   45 N.E. 876 (N.Y. 1897) ................................................................................ 19

*Beall v. Holloway-Johnson*,
   130 A.3d 406 (Md. 2016) ................................................................................ 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 6

*Blondell v. Littlepage*,
   991 A.2d 80 (Md. 2010) .................................................................................. 18

*Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*,
   312 F.3d 1213 (10th Cir. 2002) ...................................................................... 10

*Canaj, Inc. v. Baker & Div. Phase III, LLC*,
   893 A.2d 1067 (Md. 2006) .............................................................................. 18

*Champagne Metals v. Ken-Mac Metals, Inc.*,
   458 F.3d 1073 (10th Cir. 2006) .................................................................... 5, 6

*Coldwell v. Ritecorp Envt'l Prop. Solutions*,
   No. 16-cv-01998-NYW, 2017 WL 1737715
   (D. Colo. May 4, 2017) ............................................................................. 10, 11

*Dahl v. Bain Capital Partners, LLC*,
   963 F. Supp. 2d 38 (D. Mass. 2013) ................................................................ 7

*Ellerin v. Fairfax Sav., F.S.B.*,
   652 A.2d 1117 (Md. 1995) .............................................................................. 20

*Fuentes v. Compadres, Inc.*,
   No. 17-cv-1180-CMA-MEH, 2017 WL 6335669
   (D. Colo. Dec. 12, 2017) ................................................................................ 11

*Godlewska v. HDA*,
  916 F. Supp. 2d 246 (E.D.N.Y. 2013) ...................................................................passim

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
  527 F. Supp. 2d 1257 (D. Kan. 2007) ............................................................................ 6

*Int'l Brotherhood of Teamsters v. Willis Corroon Corp. of Md.*,
  802 A.2d 1050 (Md. 2002) ............................................................................................ 17

*Ivanov v. Sunset Pools Mgmt., Inc.*,
  567 F. Supp. 2d 189 (D.D.C. 2008) ................................................................. 12, 14, 17

*Jacobson v. Comcast Corp.*,
  740 F. Supp. 2d 683 (D. Md. 2010) .............................................................................. 11

*Johnson v. Serenity Transp., Inc.*,
  No. 15-cv-02004, 2017 WL 1365112
  (C.D. Cal. Apr. 14, 2017) .............................................................................................. 17

*Llacua v. W. Range Assocs.*,
  No. 15-cv-1889-REB-CBS, 2016 WL 9735747
  (D. Colo. June 3, 2016), *adopted in relevant part*,
  2016 WL 9735748 (D. Colo. Sept. 6, 2016) ............................................................. 6, 9

*Martinez-Mendoza v. Champion Int'l Corp.*,
  340 F.3d 1200 (11th Cir. 2003) .................................................................................... 10

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ....................................................................................................... 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ....................................................................................................... 6

*Moreau v. Air France*,
  356 F.3d 942 (9th Cir. 2004) ................................................................................. 12, 16

*Newell v. Runnels*,
  967 A.2d 729 (Md. 2009) .............................................................................................. 11

*Philip Morris Inc. v. Angeletti*,
  752 A.2d 200 (Md. 2000) .............................................................................................. 18

*Russell v. Sunburst Refining Co.*,
  272 P. 998 (Mont. 1928) ............................................................................................... 19

*Salinas v. Commercial Interiors, Inc.*,
848 F.3d 125 (4th Cir. 2017) ........................................................................................... 11

*Sanchez v. Simply Right, Inc.*,
No. 15-cv-974-RM-MEH, 2017 WL 2222601
(D. Colo. May 22, 2017) ........................................................................................... 11, 12

*Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*,
190 F. Supp. 2d 785 (D. Md. 2002) ................................................................................ 17

U.S. Dep't of Labor, Wage & Hour Div., Adm'r Interpretation
No. 2014-2, 2014 WL 2816951
(June 19, 2014) ................................................................................................................ 13

*Zhao v. Bebe Stores, Inc.*,
247 F. Supp. 2d 1154 (C.D. Cal. 2003) ......................................................................... 12

*Zheng v. Liberty Apparel Co.*,
355 F.3d 61 (2d Cir. 2003) .............................................................................................. 12

**STATUTES**

29 U.S.C. § 203 ................................................................................................................... 10

29 U.S.C. § 216 ..................................................................................................................... 9

**RULES**

22 C.F.R. § 62.10 ................................................................................................................ 16

22 C.F.R. § 62.15 ................................................................................................................ 16

22 C.F.R. § 62.31 ........................................................................................................ passim

22 C.F.R. § 62.40 ................................................................................................................ 14

22 C.F.R. §§ 62.1-62.17 ....................................................................................................... 2

**FEDERAL REGULATIONS**

59 Fed. Reg. 64296 ............................................................................................................ 16

59 Fed. Reg. 64299 ............................................................................................................ 16

60 Fed. Reg. 8547 .............................................................................................................. 10

60 Fed. Reg. 8550..............................................................................................10

**OTHER AUTHORITIES**

Md. Code Ann., Lab. & Empl. § 3-401(b) ...........................................................10

Md. Code Ann., Lab. & Empl. § 3-427(a) ...........................................................10

Defendants American Cultural Exchange, LLC d/b/a Go Au Pair and Go Au Pair Operations LLC (together, "Go Au Pair") move for an order entering summary judgment against Plaintiffs on all claims asserted against Go Au Pair.[1]

## INTRODUCTION

Go Au Pair's <u>unique</u> business practices, standing alone, require dismissal of Plaintiffs' claims against Go Au Pair. Those claims rest on Defendants' (supposedly uniform) communications about the weekly stipend for the Department of State's ("DOS") au pair exchange-visitor program (the "Au Pair Program"). Specifically, each claim depends on the allegation that Defendants misrepresented that host families must pay au pairs "exactly" $195.75, the stipend amount calculated and publicized by DOS.

Go Au Pair's individual practices refute that central allegation. Go Au Pair has always (1) informed au pairs (in signed agreements) they are entitled to a stipend that is <u>no less than</u> $195.75 before permitting au pairs to interview and match with prospective host families; (2) required <u>host families</u> to determine and manually insert into their placement offers a stipend amount that is <u>no less than</u> $195.75; and (3) permitted au pairs to <u>freely accept or reject</u> placement offers from host families based on the proposed stipend amount, childcare schedule, or any other factor. Under this structure, Go Au Pair au pairs have been fully informed of— and have in many cases exercised— their right to reach agreement with their host families on a higher stipend amount.[2]

---

[1] Go Au Pair also joins Defendants' Joint Motion for Summary Judgment ("Defs.' MSJ"). All exhibits in support of this motion are included in Certain Defendants' Appendix in Support of Motions for Summary Judgment ("App.").

[2] As set forth below, more than half of the au pairs Go Au Pair sponsored in 2010-2015

Given Go Au Pair's express clarification to every au pair and every host family at the outset of the matching process and again when they agree to placement terms that the DOS stipend is a minimum, and its unique practice of requiring host families to specify in their placement offers the specific proposed stipend amount—which the au pairs were free to accept or reject—Plaintiffs cannot meet their burden to establish that (1) Go Au Pair conspired with other sponsors to fix the stipend at "exactly" $195.75; (2) Go Au Pair set the stipend amount for each placement and is thus the au pairs' joint employer; or (3) Go Au Pair misrepresented to au pairs that they were not permitted to receive stipends above $195.75. Summary judgment should thus be granted in Go Au Pair's favor on all of Plaintiffs' claims.

## STATEMENT OF FACTS

Go Au Pair is one of 16 "sponsors" designated by DOS to conduct an au pair exchange-visitor program. (App. 728 (Kapler Dec.).) As a sponsor, Go Au Pair functions in an administrative and oversight capacity: it provides support to au pair and host family participants and ensures, monitors, and reports on their compliance with governing regulations. *See generally* 22 C.F.R. §§ 62.1-62.17, § 62.31. But the program's central component—the au pair's host-family placement—is initiated, defined, and controlled by the host families and au pairs.

Go Au Pair's standard contracts with host families and au pairs (the "Host Family Agreement" and "Au Pair Agreement"), as well as the contract between the host family

---

agreed their host families would pay a weekly stipend of more than $195.75, and more than 11% agreed to stipends in excess of $200.

and au pair (the "HF-AP Agreement"), reflect this dynamic. The Host Family and Au Pair Agreements set forth Go Au Pair's obligations as a sponsor and the au pairs' and host families' responsibilities as program participants, including their agreement to comply with all DOS regulations. (App. 729-31 (Kapler Dec.).) But, the HF-AP Agreement—the substance of which is determined by the host family and accepted by the au pair—defines the placement terms, including the stipend amount and childcare terms. (App. 730-31, 736-37 (*id.*).) Go Au Pair is not a party to that contract. (App. 730 (*id.*).)

The process by which au pairs and host families enter into and participate in the Au Pair Program underscores this allocation of responsibility. Go Au Pair vets prospective au pairs and host families for program eligibility under DOS guidelines. (App. 731 (Kapler Dec.).) If eligible, prospective participants must then sign the Host Family or Au Pair Agreement with Go Au Pair before they can look for a suitable host family or au pair. (App. 745 (*id.*).)  Consistent with DOS guidance, these agreements specify that the required stipend must be "no less than" or "not less than" $195.75 per week. (App. 735-36 (*id.*); App. 752, 760, 773 (HF Agmt); App. 779, 785 (AP Agmt.).)

To actually participate in the Au Pair Program, a prospective au pair must find or "match" with a host family. This "matching" process operates as an open, free-market exchange controlled by host families and au pairs. (App. 733-34 (Kapler Dec.).) Host families and au pairs choose who they want to "interview" and, subject to DOS requirements, they can freely negotiate the terms of a potential placement. (*Id.*) If both parties desire, the host family will then send the proposed HF-AP Agreement—which requires the host family to manually fill in the stipend amount, anticipated schedule and

duties, and other placement terms—to the au pair, who is then free to accept or reject that offer. (App. 733, 736-37 (Kapler Dec.), 703 (Gonzalez Dep.), 688 (Aguilar Dep.).) The signed HF-AP Agreement, which states a second time that $195.75 is a "minimum" required stipend amount, signifies the au pair's acceptance of the unique placement terms set by or negotiated with the host family. (App. 736-37 (Kapler Dec.); App. 689 (Aguilar Dep.) (au pair asked host family for higher stipend; Go Au Pair played no role in negotiating the $840 per month stipend host family agreed to pay).)

Consistent with this practice, undisputed evidence shows that host families offered au pairs, and au pairs accepted, a wide variety of stipend amounts and work schedules. (App. 743-44 (Kapler Dec.).) From 2010 to 2015: (1) host families agreed to pay over 60 different stipend amounts; (2) 58% of host families agreed to a weekly stipend above $195.75; (3) 11% to a weekly stipend above $200; (3); (4) host families listed weekly schedules with 125 different hourly totals; and (5) host families offered 485 different combinations of weekly stipends and hours. (*Id.*)

Once the HF-AP Agreement is offered and accepted, the match proceeds. Go Au Pair, in its role as a sponsor, assists the au pair in completing all eligibility requirements for the Au Pair Program, securing a visa, and traveling to the United States. (App. 750 (Kapler Dec., Ex. A (overview of GAP-HF-AP relationship)); *see* Defs.' MSJ 38.) Per DOS regulations, Go Au Pair conducts an initial orientation with the host family and au pair to ensure they understand their mutual obligations under DOS regulations and the HF-AP Agreement they have negotiated. (App. 737-38 (Kapler Dec.), 812-818 (Orientation).) After that, Go Au Pair's role as a visa sponsor is limited to supporting the

host family and au pair as necessary and to fulfilling its compliance-monitoring duties via periodic contact with host families and au pairs. (App. 738-42 (Kapler Dec.); *see also* Defs.' MSJ 38.)

In sum, under Go Au Pair's contracts and DOS regulations, the parties' roles and responsibilities are allocated as follows:



## <u>ARGUMENT</u>

### I.   PLAINTIFFS' ANTITRUST CLAIM FAILS BECAUSE THEY CANNOT PROVE THAT GO AU PAIR PARTICIPATED IN THE ALLEGED CONSPIRACY

For their antitrust claim, Plaintiffs must prove a Section 1 violation, the "essence" of which "is the agreement itself." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d

1073, 1082 (10th Cir. 2006).[3] Thus, to survive summary judgment, Plaintiffs "must first demonstrate the existence of an agreement," *id.*, and they must do so as to "each defendant," *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 527 F. Supp. 2d 1257, 1302 (D. Kan. 2007) (emphasis added). Absent proof that Go Au Pair "conscious[ly] commit[ted]" to the alleged conspiracy—defined by Plaintiffs as one to "fix" the au pairs' weekly stipend at "precisely" $195.75 (*see* Defs.' MSJ 2-3)—the antitrust claims against it fail. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). This requires proof of more than mere parallel conduct explained by "independent responses to common stimuli." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.4 (2007). Rather, Plaintiffs must offer proof that "tends to exclude the possibility" that Go Au Pair acted independently. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Plaintiffs cannot satisfy this burden.

## A.     There Is No Direct Evidence of an Agreement by Go Au Pair

Plaintiffs have no direct evidence that Go Au Pair entered into any agreement to "fix" the weekly stipend at "exactly" $195.75 because no such agreement was ever made. (App. 735 (Kapler Dec.); *see also* Defs.' MSJ 2-19.)

Plaintiffs cannot escape summary judgment by relying on evidence of Go Au Pair's membership in the Alliance or its participation in Alliance activities. "Mere membership in a trade association is not suggestive of conspiracy." *Llacua v. W. Range Assocs.*, No. 15-cv-1889-REB-CBS, 2016 WL 9735747, at *11 (D. Colo. June 3, 2016), *adopted in relevant part*, 2016 WL 9735748 (D. Colo. Sept. 6, 2016). Nor is Go Au

---

[3] The elements of a Section 1 claim, and Plaintiffs' summary-judgment burden, are fully set forth in Defendants' Motion for Summary Judgment. (Defs.' MSJ 4-5.)

Pair's involvement in Alliance activities probative of a conspiracy, as any relevant activities are constitutionally immune from antitrust challenge under the First Amendment and the *Noerr-Pennington* doctrine. (*See* Defs.' MSJ 13.)

**B.   There Is No Circumstantial Evidence of an Agreement by Go Au Pair**

Plaintiffs also lack probative circumstantial evidence of any agreement by Go Au Pair. Instead, evidence of Go Au Pair's conduct refutes any inference that it committed to the alleged conspiracy. And any purportedly "parallel" conduct by Go Au Pair is just as easily explained by independent motivation to comply with DOS guidelines.

1.   Go Au Pair's conduct is inconsistent with the alleged conspiracy

Although Plaintiffs claim every defendant uniformly said that au pairs "must" be paid "exactly" $195.75 per week, Go Au Pair's conduct actually shows the opposite. This alone warrants summary judgment on Plaintiffs' antitrust claim. *See Dahl v. Bain Capital Partners, LLC*, 963 F. Supp. 2d 38, 48-49 (D. Mass. 2013) (granting summary judgment to alleged antitrust co-conspirator when evidence showed that its actions were "inconsistent with the overarching conspiracy").

There is no evidence that Go Au Pair told host families or au pairs that au pairs must be paid weekly stipends of exactly $195.75. To the contrary, Go Au Pair consistently told host families and au pairs, and they uniformly agreed—twice—that the weekly stipend must be "no less than" or "not less than" $195.75, thus clarifying that $195.75 is the required minimum (not a fixed amount). (App. 735-36 (Kapler Dec.); App. 752 (HF Agmt ¶ 2.10), 760 (HF Agmt. ¶ 3.3), 773 (HF Agmt., App'x A); 779, 785 (AP Agmt.); App. 701 (Gonzalez Dep.) (admitting she understood she would be paid "at

least" $195.75 per week); App. 687 (Aguilar Dep.) (admitting she was told she could ask host family for higher stipend).) Further, the HF-AP Agreement—which has a blank requiring host families to <u>write in</u> the stipend amount—gave host families discretion to pay "whatever they want to," subject only to DOS requirements. (App. 719 (Kapler Dep.), 736-37 (Kapler Dec.), 795-811 (HF-AP Agmt.).) This alone refutes any claim that Go Au Pair tried to "fix" the weekly stipend at "precisely" $195.75 per week. Indeed, over half of Go Au Pair's host families chose to offer their au pairs <u>more</u> than the allegedly "fixed" amount of $195.75, and over 11% agreed to pay more than $200 per week. (App. 743-44 (Kapler Dec.).)

Additionally, while Go Au Pair advertises a base stipend of $195.75 for "standard" au pairs, it also advertises higher minimum stipends for more experienced au pairs who qualify for one its "Plus" or "Premiere" skill levels.[4] (App. 744-45 (Kapler Dec.).) That Go Au Pair advertises stipend amounts above $195.75 for <u>any</u> au pair alone disproves that Go Au Pair agreed to or participated in the alleged conspiracy.

      2.    <u>Go Au Pair's Independent Response to DOS Guidance on the Stipend Does Not Support Plaintiffs' Antitrust Claim</u>

Plaintiffs' antitrust claim relies solely on certain Go Au Pair advertisements stating that the weekly stipend "is" $195.75, without expressly specifying that amount as a minimum. They cannot meet their burden with such "evidence."

---

[4] Go Au Pair's Plus and Premiere categories are not commonly recognized and defined across the au pair industry but, rather, are Go Au Pair's independent creation. (App. 745 (Kapler Dec.).) Go Au Pair's unilateral creation of this differentiated offering is <u>exactly</u> the type of conduct Plaintiffs say should happen in a freely competitive market.

Initially, any statement by Go Au Pair that the "stipend is $195.75" is not by itself probative of a conspiracy. That language mirrors DOS's own statements about the stipend, which provides an equally plausible explanation as to why Go Au Pair would, acting on its own initiative and absent collusion, represent that the "stipend is $195.75." *See Llacua v. W. Range Assocs.*, No. 15-cv-1889-REB-CBS, 2016 WL 9735747, at *10 (D. Colo. June 3, 2016) (allegations of "conduct equally likely to result from Defendants' independent, lawful action based on the H-2A program and DOL regulations that established the minimum wage" did not raise inference of conspiracy).

Moreover, as already explained, Go Au Pair repeatedly clarified that $195.75 is, in fact, a <u>minimum</u> amount, including in its standard contracts with host families and au pairs. (App. 735-36 (Kapler Dec.).) That is, prospective au pairs are <u>always</u> told that $195.75 is a minimum required amount <u>before</u> they ever speak (and negotiate terms) with a potential host family. Some au pairs in fact ask host families for a higher stipend. (App. 689 (Aguilar Dep.).) The only inference to be drawn from this evidence is that Go Au Pair's business practices are inconsistent with the conspiracy Plaintiffs allege.

In sum, because there is no proof that Go Au Pair agreed to or participated in the alleged conspiracy, it is entitled to summary judgment on Plaintiffs' antitrust claim.

## II.    THE MINIMUM-WAGE AND OVERTIME CLAIMS FAIL BECAUSE GO AU PAIR IS NOT THE AU PAIRS' EMPLOYER

To succeed on their wage and hour claims, under the FLSA or the Maryland Wage and Hour Law ("MWHL"), Plaintiffs must prove that Go Au Pair is their "employer."[5]

---

[5] Go Au Pair's status as an "employer" under the FLSA or the MWHL is a threshold issue, and the only aspect of Plaintiffs' claims discussed herein. *See* 29 U.S.C. § 216(b)

*See Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209 (11th Cir. 2003) (worker must prove inference of joint employment); *Alvarez-Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615, 630-31 (D. Md. 2017) (FLSA and MWHL). Although fact-intensive, whether an entity is an "employer" is a question of law. *Coldwell v. Ritecorp Envt'l Prop. Solutions*, No. 16-cv-01998-NYW, 2017 WL 1737715, at *5 (D. Colo. May 4, 2017).

Plaintiffs cannot satisfy their burden. Plaintiffs claim only that Go Au Pair qualifies as a "joint employer" with their host families. (*See* Defs.' MSJ 36 n.24.) It is not. While Go Au Pair administers an exchange program through which foreign nationals may legally reside in the United States while living with and providing childcare for a host family, it is the host families that provide them work. *See* 60 Fed. Reg. 8547-02, 8550 (Feb. 15, 1995) (recognizing au pair-host family employment relationship because the au pair provides services to the host family and "is dependent upon [it] for subsistence"). This dichotomy does not result in joint employment under the FLSA or MWHL.

A.    **Legal Standard for Joint Employment**

Under the FLSA and MWHL, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *accord* Md. Code Ann., Lab. & Empl. § 3-401(b). Separate entities may be "joint employers" if they "exercise significant control over the same employees." *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1218-19 (10th Cir. 2002) (en banc); *accord Coldwell*, 2017 WL 1737715, at *4.

---

(establishing cause of action by "employee" against "employer" who violates FLSA); Md. Code Ann., Lab. & Empl. § 3-427(a) (same for MWHL). The remaining elements of Plaintiffs' wage and hour claims are addressed in Defendants' Joint Motion for Summary Judgment. (*See* Defs.' MSJ 42-46.)

The Tenth Circuit has not articulated standards for evaluating a claim of joint employment under the FLSA, but courts in this circuit have applied the "economic realities" test when facing that question. *See, e.g.*, *Coldwell*, 2017 WL 1737715, at *5-9; *Fuentes v. Compadres, Inc.*, No. 17-cv-1180-CMA-MEH, 2017 WL 6335669, at *11-13 (D. Colo. Dec. 12, 2017) (Hegarty, M.J.). Courts use the same analysis under the MWHL. *See, e.g.*, *Alvarez-Soto*, 258 F. Supp. 3d at 631; *Newell v. Runnels*, 967 A.2d 729, 771-72 (Md. 2009). Adapting this test to the joint-employer inquiry, courts have focused almost exclusively on indicia of the putative employer's control, asking whether it: (1) determined the rate and method of payment; (2) had the power to hire and fire the workers; (3) supervised and controlled the worker's schedules and conditions of employment; and (4) maintained employment records. *See, e.g.*, *Coldwell*, 2017 WL 1737715, at *7-9; *Fuentes*, 2017 WL 6335669, at *12-13. No one factor is dispositive; rather, the inquiry should evaluate the totality of circumstances. *See Sanchez v. Simply Right, Inc.*, No. 15-cv-974-RM-MEH, 2017 WL 2222601, at *13 (D. Colo. May 22, 2017).

Further, the purpose and "nature of the alleged control is highly relevant." *Godlewska v. HDA*, 916 F. Supp. 2d 246, 260 (E.D.N.Y. 2013); *see also Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 690-91 (D. Md. 2010) ("differences in the purpose and focus of the control" may produce "divergent conclusions"). A putative employer's "effective control over the schedule and conditions of employment" is probative of joint employment. *Jacobson*, F. Supp. 2d at 690. <u>By contrast, oversight and monitoring for compliance with legal requirements, safety concerns, or quality control is not.</u> *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 148 (4th Cir. 2017) ("[A]n entity

does not become a joint employer by engaging in the oversight necessary to ensure that a contractor's services meet contractual standards of quality and timeliness."); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 67-68 (2d Cir. 2003) (monitoring for quality control "has no bearing on the joint employment concept"); *Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004) (monitoring for compliance with safety and security regulations is "qualitatively different" than control indicating employment relationship).[6]

Consistent with this authority, performance of a J-1 visa sponsor's regulatory obligations does not to give rise to joint-employer status. *See Ivanov v. Sunset Pools Mgmt., Inc.*, 567 F. Supp. 2d 189, 195-96 (D.D.C. 2008) (sponsor's obligations under DOS regulations, such as recruitment, orientation training, health insurance, and employment monitoring, did not show control over plaintiffs as employees).

### B.   Go Au Pair's Practices Refute Plaintiffs' Claim of Joint Employment

Go Au Pair does not exercise the requisite control over the terms and conditions of the au pair's host-family placement to make it the au pairs' joint employer. Host families, not Go Au Pair, interview and select their au pairs, set the au pair's stipend and schedule, determine their au pair's duties, supervise the work, pay their au pairs, and have the discretion to end the placement.

---

[6] *See also Godlewska*, 916 F. Supp. 2d at 260-61 (holding that monitoring for legal compliance, which stemmed from the nature of defendant's business of "providing heavily-regulated, government-funded health services," was not indicative of joint-employer status); *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1160-61 (C.D. Cal. 2003) ("The Court is aware of no authority for the proposition that [defendant's] adoption of monitoring [for compliance with labor laws] . . . can or should be used to find the existence of a joint employment arrangement."); *Sanchez v. Simply Right, Inc.*, No. 15-cv-974-RM-MEH, 2017 WL 2222601, at *13 (D. Colo. May 22, 2017) (monitoring to "ensure effective compliance" with putative joint employer's service contract with plaintiffs' employer did not translate to "control of plaintiffs' employment").

1.   <u>Host families set the stipend amount and when and how to pay it</u>

DOS regulations require a minimum stipend amount, 22 C.F.R. § 62.31(j), which DOS identified at all relevant times to be $195.75 per week. (Defs.' MSJ 7-8.) Thus, Go Au Pair tells host families they must pay at least—i.e., "<u>not less than</u>"—$195.75. (Defs.' App. 735-36 (Kapler Dec); App. 752 (HF Agmt ¶ 2.10), 760 (HF Agmt. ¶ 3.3), 773 (HF Agmt., App'x A).) That, however, does not amount to "setting" the au pairs' stipend. *See Godlewska*, 216 F. Supp. 2d at 261 (contractual requirement to pay union wages was not attributable to city when regulations required that contract term).

To the contrary, as Plaintiffs admit, it is the host families who decide "when and how much" to pay the au pair. (App. 707 (Gonzalez Dep. 116:14-19) (host family decided to pay weekly stipend of $200 every two weeks); *accord* App. 689 (Aguilar Dep.) (host family offered stipend of $840 per month).) Host families, in fact, must write in the stipend amount and payment interval in the HF-AP Agreement (App. 795, 803 (HF-AP Agmt.)), and the variation in the amounts they offer shows they independently decide what amount to pay their au pairs. (*Id.* 743-44 (Kapler Dec.).) Go Au Pair does not effectively dictate any specific stipend amount, let alone the supposedly fixed amount of $195.75. *See* U.S. Dep't of Labor, Wage & Hour Div., Adm'r Interpretation No. 2014-2, 2014 WL 2816951, at *8-9 (June 19, 2014) ("DOL No. 2014-2") (third-party's retention of discretion in setting pay rate weighs against joint employment).

2.   <u>Go Au Pair does not have the power to hire and fire au pairs</u>

Host families, not Go Au Pair, "hire" the au pairs. All host families agree they are "fully responsible" for choosing the au pair; Go Au Pair is not involved their interviews or

selection of au pairs. (App. 751 (HF Agmt. ¶¶ 1.5, 1.7); *accord* App. 758-59 (HF Agmt ¶¶ 1.2, 2.8).) Host families make all critical decisions in that selection, as they:

- screen prospective au pairs for their unique hiring criteria and decide who to interview (App. 732-33 (Kapler Dec.); App. 702 (Gonzalez Dep.));

- interview prospective au pairs without Go Au Pair (App. 690 (Aguilar Dep.); App. 702 (Gonzalez Dep. 63:22-64:9));

- decide—on their own—to whom they want to make a placement offer (App. 733-34 (Kapler Dec.); App. 703 (Gonzalez Dep.); *id.* 689 (Aguilar Dep.)).

By contrast, Go Au Pair acts only as a DOS-designated sponsor: it vets prospective au pairs for program eligibility under DOS regulations and facilitates the matching process. (App. 731-34 (Kapler Dec.); *see also* Defs.' MSJ 38.) These activities do not translate to "hiring" au pairs, particularly when the host families control that decision.[7]

Nor does Go Au Pair have the authority to unilaterally "fire" au pairs from their employment with host families. Decisions to end the placement rest with the au pair and/or the host family.[8] (App. 740-41 (Kapler Dec.).) Plaintiff au pairs, for example, have admitted that either they and/or their host families decided to end the placement early.

---

[7] *See Godlewska*, 216 F. Supp. 2d at 258 (defendant lacked "power to hire" plaintiffs when city regulations, not defendant, set minimum standards for workers and separate entity chose "which ones to hire"); *Ivanov*, 567 F. Supp. 2d at 196 (fact that visa sponsor recruited plaintiffs into exchange program and helped them find employment did not mean sponsor "hired" plaintiffs when separate entity "interviewed and hired them").

[8] Go Au Pair's authority to cancel an au pair's <u>participation in the Au Pair Program</u> when he or she fails to comply with the rules and regulations governing the program, *see* 22 C.F.R. § 62.40, is conceptually distinct from termination of the au pair's host-family placement; thus, that authority should not be construed as—or confused with—an ability to "fire" the au pair from his or her <u>employment with the host family</u>. Indeed, early termination of the placement by either the au pair or host family does not require cancelling the au pair's program participation, provided that he or she is able to rematch with another host family. (App. 740 (Kapler Dec. ¶ 40).)

(*Id.* 709 (Gonzalez Dep.) (saying she decided to terminate placement); *id.* 726 (Gonzalez RFA Resp.) (admitting host family terminated placement); *id.* 696 (Aguilar Dep.) (host mom ended placement).)

### 3. Host families supervise au pairs and control their work schedules and employment conditions

Go Au Pair does not control the terms and conditions of the au pair's placement. DOS, not Go Au Pair, sets certain minimum conditions that host families must observe, such as the type of work au pairs may do (i.e., "child care services"), the minimum stipend amount, the maximum number of hours an au pair may work, and the minimum amount of paid time off the au pair must be given. *See* 22 C.F.R. § 62.31(a), (j); *Godlewska*, 916 F. Supp. 2d at 258, 261 (regulatory requirements are not attributable to putative joint employer). All other conditions are up to the host families, who:

- set au pairs' work schedules (App. 690-91 (Aguilar Dep.), 704 (Gonzalez Dep.); *accord* App. 736-37 (Kapler Dec.), 795, 801(HF-AP Agmt.));

- decide what specific tasks the au pairs will perform (App. 692-94 (Aguilar Dep.); *accord* App. 736-37 (Kapler Dec.), 795, 802 (HF-AP Agmt.));

- set and enforce house rules the au pair is expected to follow (App. 704 (Gonzalez Dep.) (host family set curfew); App. 795, 805 (HF-AP Agmt.));

- grant specific time-off requests and decide what additional benefits to offer, e.g., use of car, cell phone, etc. (App. 795-96, 803-05 (HF-AP Agmt.).

Each of these terms is subject to negotiation between, and ultimately agreed to by, the host family and au pair, without participation by Go Au Pair. (App. 739 (Kapler Dec.).)

Similarly, host families handle the day-to-day management and supervision of their au pairs. (Defs.' MSJ 38-39 (explaining sponsor's role).) All host families agree that "Go Au Pair does not provide . . . supervision of child care services" and that they are

"responsible for supervising the Au Pair." (App. 751, 758 (HF Agmt.), 767 (HF Agmt., App'x A ¶ 1.4); *accord* App. 686, 695 (Aguilar Dep.) (Go Au Pair did not supervise her)). That is, host families instruct their au pairs on how and when tasks are to be performed and address any issues in performance. (*Id.* 708 (Gonzalez Dep.), 694 (Aguilar Dep.).)

Finally, Go Au Pair's limited monitoring of the au pair's placement—done solely for regulatory compliance—is not sufficient "control" to make it a joint employer.[9] Pursuant to DOS regulations, a designated Go Au Pair representative (the "Local Area Representative" or "LAR") checks in with host families and au pairs at regular intervals to assess their compliance with regulatory requirements and their satisfaction with the program. (App. 741-42 (Kapler Dec.); App. 706 (Gonzalez Dep. (LAR "would always ask how we were doing in general").) But LARs do not give instruction or feedback on the au pair's performance of childcare services. (App. 739 (Kapler Dec.), 695 (Aguilar Dep.) (LAR did not give feedback).) These monitoring activities are "qualitatively different" than the "supervision and control" indicative of an employment relationship. *See Moreau*, 356 F.3d at 951 ("indirect supervision and control . . . to ensure compliance with various safety and security regulations" was not indicative of joint employment).

### 4.  Go Au Pair does not maintain employment records

Go Au Pair does not keep employment-type records, such as performance reviews or evaluations, documentation of hours worked, payroll information, or the

---

[9] *See* 22 C.F.R. § 62.31(l) (requiring sponsor's monthly and quarterly contact with host family and au pair); 59 Fed. Reg. 64296-01, 64299 ("monitoring requirements [were] designed to ensure satisfactory compliance with these regulatory provisions").

like.[10] (App. 740 (Kapler Dec.).) While Go Au Pair collects copies of the HF-AP

Agreement signed by each au pair and host family, it does not know or have records of

the stipend host families actually pay, or the hours the au pair actually works. (*Id.*)

In sum, the evidence shows that Go Au Pair is not the au pairs' joint employer;

thus, it is entitled to summary judgment on Plaintiffs' claims under the FLSA and MWHL.

## III.   ALL MISREPRESENTATION-BASED CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs assert the following misrepresentation-based claims under Maryland

law: (1) breach of fiduciary duty; (2) negligent misrepresentation; (3) fraudulent

concealment and/or constructive fraud; and (4) violation of the Maryland Consumer

Protection Act ("MCPA"). (*See* Compl., Counts III-VI.) Go Au Pair is entitled to summary

judgment on each of these claims.[11]

### A.   Breach of Fiduciary Duty Is Not a Recognized Claim in Maryland

Breach of fiduciary duty is not recognized as an independent cause of action

under Maryland law. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*,

190 F. Supp. 2d 785, 801 (D. Md. 2002); *Int'l Brotherhood of Teamsters v. Willis

Corroon Corp. of Md.*, 802 A.2d 1050, 1051 n.1 (Md. 2002). Plaintiffs' breach-of-

---

[10] Go Au Pair's record-keeping in compliance with DOS regulations does not suggest joint employment, *see* 22 C.F.R. §§ 62.10(h), 62.15, 62.31(l)-(m), as such documentation is qualitatively different from employment records. *See Ivanov*, 567 F. Supp. 2d at 197 (drawing distinction between defendant's record-keeping and obligations as an exchange-program sponsor, on one hand, and employment records maintained by third-party employer, on the other). Similarly, any records maintained to ensure "regulatory compliance . . . do[] not constitute maintenance of employment records to satisfy" this factor of the economic realities test. *See Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004, 2017 WL 1365112, at *10 (C.D. Cal. Apr. 14, 2017).

[11] The elements of each of these claims are identified in Addendum A, but are discussed herein only insofar as they are relevant to Go Au Pair's arguments.

fiduciary-duty claim must be dismissed.

**B.     Plaintiffs Cannot Prove that Go Au Pair Made, and that They Justifiably Relied on, Any Alleged Misrepresentation**

For their remaining claims, each of which rests on alleged misrepresentations about the stipend,[12] Plaintiffs must prove that (1) Go Au Pair made the alleged misrepresentation and (2) Plaintiffs justifiably relied on it.[13] They can prove neither.

As Go Au Pair never represented that au pairs must be paid "exactly $195.75," the only purported representation Plaintiffs attribute to Go Au Pair is that the "weekly stipend is $195.75." (Mot. for Class Cert. 44 (citing Go Au Pair website); App. 721-22 (Gonzalez Interrog. Resp.) (Gonzalez was orally informed she "would be paid a $195.75 weekly stipend").) Specifically, they complain that Go Au Pair misrepresented the nature of the stipend because, in some ads and communications, it said the stipend "is" $195.75 without stating it was a minimum. This is not a misrepresentation, as it mirrors DOS's own representations about the stipend. (Defs.' MSJ 7-8.) Moreover, <u>before</u> prospective au pairs interview with a host family, Go Au Pair informs them through the Au Pair Agreement and other communications that $195.75 is just a minimum and that host families may pay more. (App. 745-46 (Kapler Dec.), 687 (Aguilar Dep.).) And, the

---

[12] Plaintiffs premise each of these claims on alleged misrepresentations about the stipend. (*See* Mot. for Class Cert. 41-42 ("Plaintiffs' common law misrepresentation or fraud-based theories . . . all rely on those misrepresentations."); Compl. ¶ 593 (alleging that Defendants violated state consumer protection statutes by making "false and misleading representations about the wage").)

[13] *See Blondell v. Littlepage*, 991 A.2d 80, 94 (Md. 2010) (fraudulent concealment requires reliance); *Canaj, Inc. v. Baker & Div. Phase III, LLC*, 893 A.2d 1067, 1095 (Md. 2006) (constructive fraud has "the inherent requirement that the [plaintiff] must have been in some way deceived or misled"); *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 234-35 (Md. 2000) (MCPA and negligent misrepresentation claims require reliance).

HF-AP Agreement signed by the au pair—signifying acceptance of the host family's specified terms, including the stipend amount—again clarifies that $195.75 is only a minimum required amount. (App. 797 (HF Agmt.), 803 (HF-AP Agmt. ¶ 3.1).) These undisputed facts show that: (1) Go Au Pair did not make any misrepresentation about the stipend but, instead, tracked the same language used by DOS; and (2) given the more detailed statements in Go Au Pair's standard contracts, which clarify that $195.75 is a minimum, Plaintiffs cannot prove they reasonably relied on generic advertisements to believe they must be paid precisely $195.75 per week.

Plaintiffs also cannot prove that Go Au Pair misrepresented the origin or legality of the stipend amount. It is undisputed that: (1) DOS regulations require that au pairs receive a minimum stipend amount, 22 C.F.R. § 62.31(j); (2) DOS advised all sponsors that, as of July 24, 2009, the required minimum stipend was $195.75; and (3) Go Au Pair's annual audit reports to DOS reflected host families' compliance with that specific minimum stipend amount. (App. 742 (Kapler Dec.), 819-852 (audit reports ¶¶ 23, 28); *see also* Def.'s MSJ 7-8 (summarizing DOS guidance on stipend).) Although Plaintiffs now argue that $195.75 is an illegal amount, no such determination has been made by DOS or any court, and neither Plaintiffs' litigation position nor a future determination by this or another court make Go Au Pair's previous representations fraudulent.[14]

---

[14] *See Alexander v. Randall*, 133 N.W.2d 124, 127 (Iowa 1965) ("[A] subsequent legal decision, adverse to a statement or representation previously expressed as to the law, cannot establish prior fraud."); *Russell v. Sunburst Refining Co.*, 272 P. 998, 1007 (Mont. 1928) ("A legal decision adverse to the statements and representations made cannot establish deceit for which a party may be held liable in an action."); *Amherst College v. Ritch*, 45 N.E. 876, 886 (N.Y. 1897) ("One who neither withholds nor

Accordingly, Plaintiffs' misrepresentation-based claims should be dismissed.

## C.      Plaintiffs Are Not Entitled to Punitive Damages

Under Maryland law, punitive damages may be awarded only when the plaintiff

has established by clear and convincing evidence that the defendant acted with "actual

malice" or "conscious wrongdoing." *Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1125

(Md. 1995); *accord Beall v. Holloway-Johnson*, 130 A.3d 406, 420 (Md. 2016). In the

context of fraud, this requires proof of "the defendant's actual knowledge of falsity,

coupled with his intent to deceive the plaintiff by means of the false statement." *Ellerin*,

652 A.2d at 1126. "Ignorance, mistake, or negligence" is not enough. *Id.* at 1125.

Plaintiffs cannot meet this standard. They cannot show that Go Au Pair <u>knew</u>

$195.75 was an illegal stipend when: (1) that determination has not been made; (2) the

undisputed evidence shows that DOS told Go Au Pair that $195.75 was the required

minimum weekly stipend; and (3) DOS regularly monitored and approved Go Au Pair's

practice of ensuring host family compliance with <u>that</u> minimum amount. (App. 742

(Kapler Dec.).) Nor can they show that Go Au Pair <u>knowingly</u> misrepresented the

stipend as a "fixed" amount when all of its standard contracts with au pairs expressly

confirm that $195.75 is the required <u>minimum</u>. (App. 735-36 (Kapler Dec.); App. 779,

785 (AP Agmt.).) Thus, Plaintiffs' punitive-damages claim should be dismissed.

## <u>CONCLUSION</u>

Go Au Pair respectfully requests entry of an order granting summary judgment in

their favor on all claims asserted against them.

---

misstates the facts cannot be adjudged guilty of fraud simply because the courts finally
decide the law to be other than he claimed it to be.").

Dated:  February 16, 2018.          Respectfully submitted,


                                    s/ Kathryn A. Reilly
                                    Kathryn A. Reilly
                                    Brett M. Mull
                                    Natalie West
                                    Wheeler Trigg O'Donnell LLP
                                    370 Seventeenth Street, Suite 4500
                                    Denver, CO  80202-5647
                                    Telephone:  303.244.1800
                                    Facsimile:  303.244.1879
                                    Email:  Reilly@wtotrial.com
                                            Mull@wtotrial.com
                                            West@wtotrial.com

                                    Attorneys for Defendants American Cultural
                                    Exchange, LLC d/b/a Go Au Pair and Go Au
                                    Pair Operations LLC


## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on February 16, 2018, I electronically filed the foregoing defendant GO AU PAIR'S MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:


                                    s/ Kathryn A. Reilly