**No. 18-____**

IN THE

# United States Court of Appeals

### FOR THE TENTH CIRCUIT

_____

INTEREXCHANGE, INC., GREATAUPAIR, LLC, EXPERT GROUP INTERNATIONAL, INC., EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS, CULTURAL HOMESTAY INTERNATIONAL, CULTURAL CARE, INC., AUPAIRCARE, INC., AU PAIR INTERNATIONAL, INC., APF GLOBAL EXCHANGE, NFP, AMERICAN INSTITUTE FOR FOREIGN STUDY, AMERICAN CULTURAL EXCHANGE, LLC, AGENT AU PAIR, A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC, 20/20 CARE EXCHANGE, INC., GOAUPAIR OPERATIONS, LLC

*Petitioners.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
No. 1:14-cv-03074-CMA

_____

## PETITION FOR PERMISSION TO APPEAL FROM CLASS CERTIFICATION ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F)

Joan A. Lukey
Justin J. Wolosz
CHOATE HALL & STEWART LLP
2 International Place
Boston, MA 02110
(617) 248-5000
joan.lukey@choate.com
jwolosz@choate.com

James M. Lyons
Jessica L. Fuller
Diane R. Hazel
Lewis Roca Rothberger Christie LLP
1200 17th Street
One Tabor Center, Suite 3000
Denver, CO 80202-5855
(303) 623-9000
jlyons@lrrc.com
jfuller@lrrc.com
dhazel@lrrc.com

*Counsel for Petitioner Cultural Care, Inc. d/b/a Cultural Care Au Pair*
(Additional Counsel Listed on Inside Pages)

Stephen J. Macri
Robert M. Tucker
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
1745 Broadway, 22nd Floor
New York, NY 10019
(212) 492-2071
stephen.macri@ogletree.com
robert.tucker@ogletree.com

Theane Evangelis
Bradley Hamburger
Gibson Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, California 90071
(213) 229-7804
tevangelis@gibsondunn.com
bhamburger@gibsondunn.com

Eric J. Stock
Gibson Dunn & Crutcher, LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
estock@gibsondunn.com

*Counsel for Petitioner American Institute for Foreign Study d/b/a/ Au Pair in America*

Bogdan Enica
Bogdan Enica, Attorney at Law
111 2nd Avenue NE
Suite 213
St Petersburg, FL 33701-3440
727-225-2649
bogdane@expertaupair.com

*Counsel for Petitioner Expert Group International, Inc. d/b/a Expert Au Pair*

Thomas B. Quinn
Peggy E. Kozal
Nathan A. Huey
Gordon & Rees LLP
555 Seventeenth Street
Suite 3400
Denver, CO 80202
303-534-5160
tquinn@grsm.com
pkozal@grsm.com
nhuey@grsm.com

*Counsel for Petitioner AuPairCare, Inc.*

Martha L. Fitzgerald
David B. Meschke
Brownstein Hyatt Farber Schreck,
LLP-Denver
410 17th Street
Suite 2200
Denver, CO 80202-4432
(303) 223-1100
mfitzgerald@bfhs.com
dmeschke@bhfs.com

*Counsel for EurAuPair*
*Intercultural Child Care Programs*

Lawrence D. Stone
Kathleen E. Craigmile
Nixon Shefrin Hensen Ogburn,
P.C.
5619 DTC Parkway
Suite 1200
Greenwood Village, CO 80111-
3061
(303) 773-3500
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

*Counsel for A.P.E.X. American*
*Professional Exchange, LLC d/b/a*
*ProAuPair and 20/20 Care*
*Exchange, Inc. d/b/a The*
*International Au Pair Exchange*

Kathryn A. Reilly
Theresa R. Wardon
Wheeler Trigg O'Donnell, LLP
370 Seventeenth Street
Suite 4500
Denver, CO 80202-5647
(303) 244-1800
reilly@wtotrial.com
wardon@wtotrial.com

*Counsel for Petitioners Agent Au*
*Pair, Au Pair International, Go Au*
*Pair Operations, and American*
*Cultural Exchange, LLC d/b/a Go*
*AuPair*

William J. Kelly III
Chanda M. Feldkamp
Kelly & Walker LLC
1512 Larimer Street
Suite 200
Denver, CO 80202
(720) 236-1800
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

*Counsel for Petitioner USAuPair,*
*Inc.*

James E. Hartley
Adam A. Hubbard
Holland & Hart, LLP
1800 Broadway
Suite 300
Boulder, CO 80302
(303) 245-2075
jhartley@hollandhart.com
aahubbard@hollandhart.com

Jonathan S. Bender
Holland & Hart, LLP
555 Seventeenth Street
Suite 3200
Denver, CO 80201-8749
(303) 295-8000
jsbender@hollandhart.com

*Counsel for Petitioner Cultural Homestay International*

Meshach Y. Rhoades
Martin J. Estevao
Armstrong Teasdale, LLP-Denver
4643 South Ulster Street
Suite 800
Denver, CO 80237
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

*Counsel for Petitioner GreatAuPair, LLC*

Susan M. Schaecher
Fisher & Phillips, LLP
1801 California Street
Suite 2700
Denver, CO 80202-3025
(303) 218-3650
sschaecher@laborlawyers.com

*Counsel for Petitioners APF Global Exchange, NFP*

Brooke A. Colaizzi
Heather F. Vickles
Raymond M. Deeny
Joseph H. Hunt
Alyssa L. Levy
Sherman & Howard L.L.C.
633 Seventeenth Street
Suite 3000, Denver, CO 80202
303-297-2900
bcolaizzi@shermanhoward.com
hvickles@shermanhoward.com
rdeeny@shermanhoward.com
jhunt@shermanhoward.com
alevy@shermanhoward.com

*Counsel for Petitioner InterExchange, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioners make the following disclosures:

**Does said party have a parent corporation or does any publicly held corporation own 10% or more of the party's stock?**

Cultural Care, Inc.: Yes.

American Institute for Foreign Study:  No.

Expert Group International, Inc.:  No.

AuPairCare, Inc.:  Yes.

EurAuPair:  No

A.P.E.X. American Professional Exchange, LLC:  No.

20/20 Care Exchange, Inc.:  No.

Agent Au Pair:  No.

Au Pair International:  No.

Go Au Pair Operations, LLC:  Yes.

American Cultural Exchange, LLC:  No.

USAuPair, Inc.:  No.

GreatAuPair, LLC:  No.

Cultural Homestay International:  No.

APF Global Exchange, NFP:  No.

InterExchange, Inc.:  No.

**If YES, list the identity of such parent corporation or identify the publicly held corporation:**

Cultural Care, Inc.: Cultural Care Management, Inc. is the parent corporation of Cultural Care, Inc.

AuPairCare, Inc.:  AuPairCare, Inc. is 100% owned by Intrax, Inc.

Go Au Pair Operations, LLC:  The sole member of Go Au Pair Operations, LLC, is American Cultural Exchange, LLC.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................... 1

QUESTIONS PRESENTED .............................................................. 2

STATEMENT OF THE CASE ........................................................... 3

REASONS FOR GRANTING THE PETITION ........................................ 8

I.   RULE 23(F) REVIEW IS WARRANTED TO SETTLE THE
     STANDARD THAT COURTS MUST APPLY WHEN
     EXAMINING EXPERT EVIDENCE AT THE CLASS-
     CERTIFICATION STAGE. ................................................. 9

     **A.   The District Court Failed to Resolve the Key
            Dispute Between the Parties' Experts:  Whether
            Antitrust Impact Could Be Established Through
            Common Proof** ...................................................... 9

     **B.   The District Court Did Not Apply *Daubert* to
            Plaintiffs' Expert Evidence** ................................. 11

     **C.   This Court's Review Is Necessary to Prevent
            Courts From Misreading *Urethane* as Having
            Mandated Class Certification of Any Alleged
            Price-Fixing Case** ............................................... 15

II.  THE DISTRICT COURT DRAMATICALLY EXPANDED
     THE LIMITED CIRCUMSTANCES IN WHICH AN
     INFERENCE OF RELIANCE CAN BE USED TO CERTIFY
     A RICO CLASS ACTION. ................................................ 18

III. THE DISTRICT COURT FAILED TO UNDERTAKE A
     RIGOROUS ANALYSIS BEFORE CERTIFYING CLASSES
     COVERING SIXTY-FOUR STATE LAW-BASED CAUSES
     OF ACTION ................................................................... 21

CONCLUSION ............................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blades v. Monsanto, Co.*,
 400 F.3d 562 (8th Cir. 2005)..........................................................................18

*In re Blood Reagents Antitrust Litig.*,
 783 F.3d 183 (3d Cir. 2015) ....................................................................14-15

*Brown v. Am. Honda*,
 522 F.3d 6 (1st Cir. 2008) ............................................................................17

*Casey v. Merck & Co.*,
 283 Va. 411 (2012) ........................................................................................23

*CGC Holding Co., LLC v. Broad & Cassel*,
 773 F.3d 1076 (10th Cir. 2014)................................................8, 18-19, 20-22

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) ..................................................................................10, 12

*In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust
 Litig.*,
 No. 09-ML-2048-C, 2011 WL 6826813 (W.D. Okla. Dec. 28,
 2011) ..............................................................................................................14

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011)........................................................................10

*In re Hydrogen Peroxide Antitrust Litig.*,
 552 F.3d 305 (3d Cir. 2008) ..................................................................10, 17

*Kann v. Kann*,
 344 Md. 689 (1997)........................................................................................23

*McLaughlin v. Am. Tobacco Co.*,
 522 F.3d 215 (2d Cir. 2008) ........................................................................21

*Menocal v. Geo Grp., Inc.*,
 No. 17-1125, 2018 WL 797165 (10th Cir. Feb. 9, 2018)..............................20

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012).................................................................. 14

*Miller v. Farmers Ins. Grp.*,
  No. CIV-10-466-F, 2012 WL 8017244 (W.D. Okla. Mar. 22,
  2012) ......................................................................................................... 14

*Poulos v. Caesars World, Inc.*,
  379 F.3d 654 (9th Cir. 2004)................................................................... 21

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013)........................................................... 10, 18

*In re Urethane Antitrust Litigation*,
  768 F.3d 1245 (10th Cir. 2014)................................................ 2, 7, 15, 16

*Vallario v. Vandehey*,
  554 F.3d 1259 (10th Cir. 2009).................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................... 14, 21

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  644 F.3d 604 (8th Cir. 2011)................................................................... 15

**Statutes**

Fulbright-Hays Act, 22 U.S.C. § 2451 *et seq.* ............................................. 3, 19

Mass. Gen. Laws ch. 93A § 9.............................................................................. 23

Utah Code Ann. § 13-11-19 ............................................................................... 23

**Other Authorities**

22 C.F.R. § 62.1 ........................................................................................... 3, 19

22 C.F.R. § 62.12 ...............................................................................................3

22 C.F.R. § 62.31 ......................................................................................... 3, 4

60 Fed. Reg. 8547, 8548 (Feb. 15, 1995) .................................................. 19-20

Federal Rule of Civil Procedure 23 ....................................... 9, 11, 15, 17, 22, 23

Pursuant to Federal Rule of Civil Procedure 23(f), Defendants-Petitioners (the "Sponsors") respectfully petition for leave to appeal from the District Court's February 2, 2018, class certification order (the "Order").

## INTRODUCTION

The District Court certified more than a dozen classes—including nationwide antitrust and RICO classes—based almost entirely on Plaintiffs' allegations, rather than the competing evidence regarding whether class treatment was appropriate.  In so doing, it relied on Plaintiffs' expert's assertion that all class members had suffered a common antitrust injury, without examining the disputed assumptions underlying that conclusion or evaluating whether the expert's testimony was admissible under *Daubert*. And it permitted Plaintiffs to rely on presumptions and allegations—rather than proof—to establish that their proposed classes satisfied Rule 23.

The District Court's Order contains numerous manifest errors of law, and implicates important and recurring questions of class certification law that this Circuit has not yet had the opportunity to address.  And this ruling comes in a high-profile, closely watched case, which concerns the viability of a three-decades old federal cultural-exchange program for au pairs (the "Program").  *See, e.g.*, Josh Eidelson, *Au Pair Class Action Could Upend Decades-Old Program*, Bloomberg Businessweek (Feb. 13, 2018), https://goo.gl/4EbSnu.  Moreover, as a result of the District Court's sweeping

certification ruling, the Sponsors—several of whom are small non-profits—face the prospect of ruinous treble damages in an amount that far exceeds their *combined* revenues for the entire class period. This enormous potential liability puts the very survival of the Program in jeopardy, and places immense settlement pressure on the Sponsors.

In light of the significant stakes, the Order's numerous errors, and the unsettled issues it raises, the petition should be granted.

## QUESTIONS PRESENTED

1.     Whether the District Court erred in certifying Plaintiffs' antitrust claim where it (a) failed to resolve key disputes between the parties' experts that addressed the propriety of class certification, (b) did not conduct a full *Daubert* analysis of Plaintiffs' expert testimony before relying on it to grant certification, and (c) interpreted this Court's decision in *In re Urethane Antitrust Litigation*, 768 F.3d 1245 (10th Cir. 2014), as excusing Plaintiffs from their burden of identifying common proof of class-wide impact?

2.     Whether the District Court erred in certifying Plaintiffs' RICO claim by adopting an inference of class-wide reliance on alleged misrepresentations, despite evidence demonstrating that au pairs decided to join the Program for a variety of individualized reasons?

3.     Whether the District Court erred as a matter of law by failing to rigorously analyze the elements and issues implicated by Plaintiffs' sixty-four

state-based claims before certifying sixteen state-based classes and subclasses?

## STATEMENT OF THE CASE

Plaintiffs are current and former participants in the Program, which is a cultural-exchange program established pursuant to the Fulbright-Hays Act, 22 U.S.C. § 2451, and administered by the State Department, 22 C.F.R. § 62.1. The State Department has designated sixteen sponsor agencies to facilitate the distribution of J-1 visas to au pair applicants who wish to "live with an American host family and participate directly in the home life of the host family." 22 C.F.R. § 62.31(a).

Prospective au pairs apply to the Program through foreign agents and affiliates located in their home countries. *See id.* § 62.12(d)(2) (discussing overseas affiliates). Sponsors operate domestically, finding prospective host families who wish to participate in the Program. *See id.* § 62.31(h). Upon completion and acceptance of their respective applications, Sponsors facilitate the process by which au pairs and host families interview each other and subsequently "match" to join the Program. *See id.* § 62.31(e). In 2016, families in all fifty states and the District of Columbia hosted au pairs as part of the Program. *See* State Department, J-1 Visa Facts and Figures, https://goo.gl/E4ubnK (last visited Feb. 15, 2018).

3

After an au pair joins a host family, Sponsors ensure that both parties' participation in the Program complies with federal law. The State Department's regulations require the host family to provide the au pair with room and board, a private bedroom, a $500 credit to take post-secondary level courses, and a weekly stipend. 22 C.F.R. § 62.31(e), (j), (k). The au pair may provide childcare services for the host family for up to 45 hours per week. *See id.* § 62.31(j).

The State Department has issued guidance to Sponsors regarding the stipend that host families must pay. It explains that the State Department calculated the stipend amount based on the federal minimum wage. State Department, Notice: Federal Minimum Wage Increase (June 14, 2007) (Ex. A). Since the most recent increase in the federal minimum wage in 2009, the State Department has explained that "the weekly stipend" for au pairs is "$195.75." *See id.*

Plaintiffs commenced this action in 2014. They alleged that all of the Sponsors conspired to fix the stipend paid by host families to au pairs at $195.75 per week, in violation of Section 1 of the Sherman Act. *See* Second Amended Complaint ("SAC") ¶ 570, ECF No. 395. Additionally, Plaintiffs allege that a weekly payment of $195.75 violates state and federal minimum wage laws, and that the Sponsors—rather than the host families who pay the stipend to au pairs—are liable to the au pairs as joint-employers under the

4

Fair Labor Standards Act and state wage-and-hour laws. SAC ¶¶ 599, 604, 611. Plaintiffs also brought claims under the Racketeer Influenced and Corrupt Organizations Act against four of the Sponsors, Au Pair in America, AuPairCare, Inc.,[1] Cultural Care, Inc., and InterExchange, Inc. (the "RICO Defendants"). *Id.* ¶ 577. Plaintiffs alleged that the RICO Defendants fraudulently induced au pairs to join the Program through misrepresentations by them and their agents concerning the amount of the stipend. *Id.* ¶¶ 575-81.

Finally, Plaintiffs pleaded, in summary fashion, claims for breach of fiduciary duty, negligent misrepresentation, violations of consumer protection laws, and fraudulent concealment or constructive fraud under the laws of the fifty states and the District of Columbia, founded upon alleged misrepresentations and purported misconduct related to the stipend amount. *Id.* ¶¶ 582-93.

Plaintiffs sought certification of the following classes against various Sponsors: a national antitrust class, a national RICO Class, several sponsor-specific and state-specific state-law classes, a nationwide class asserting state-law wage claims, and a national class on behalf of au pairs who

---

[1] By joining this petition, AuPairCare does not waive the jurisdictional and other arguments set forth in its separate petition, also filed this day.

allegedly were not paid for their attendance at au pair training school. Plaintiffs' Mot. for R. 23 Class Certification and Appointment of Class Counsel ("Rule 23 Motion") at 3, ECF No. 559. In advance of class certification, both Plaintiffs and Sponsors retained expert economists to examine the economic evidence and determine whether the alleged conspiracy inflicted any common injury on the putative class.

The Sponsors' expert, Dr. Lauren Stiroh, concluded that Plaintiffs could not prove injury on a class-wide basis. She observed an excess supply of au pair candidates in the market. Ex. B, ¶¶ 37-39; Ex. C, 66:11-16. In short, because there are far more prospective au pairs than available host families at current stipend levels, average stipends would have *fallen* in a free market if not for the regulatory minimum of $195.75. Ex. B, ¶¶ 37-39. Because no *market-based* methodology would predict an increase in stipends, individualized inquiries would be necessary to determine which au pairs—if any—would have received a higher stipend if not for the Sponsors' purported conduct. *See* Ex. D, ¶¶ 4, 38–39. Such individualized inquiries are not susceptible of the type of common proof that may be appropriate in some antitrust cases, *i.e.*, a model predicting but-for market conditions assuming a free market. *Id.*

Plaintiffs' expert, Dr. William Kerr, disagreed. He asserted that the class had suffered a common injury and constructed two purported damages

models, which Plaintiffs submitted as common proof of impact. *See* Ex. E, ¶ 88. The first model (the "wage-law" model) assumed that, absent the alleged conspiracy, Sponsors would have advertised (and host families would have paid) a stipend equal to what Plaintiffs allege was the applicable minimum wage. *See id.* ¶ 91. The second model (the "price-competition" model) purported to calculate what the stipend would have been if competition had been permitted to take its course in the alleged market. *Id.* ¶ 101. Dr. Kerr described this model as "preliminary," and admitted that it did not permit him even to estimate what the stipend would have been. *Id.* ¶ 103; Ex. F, 222:10-14.

The District Court certified all but one of Plaintiffs' proposed classes. Order at 7. It certified the antitrust class because "[i]f Plaintiffs' antitrust allegations are true, it logically follows that Plaintiffs were injured." *Id.* at 21. Purporting to follow this Court's decision in *In re Urethane*, 768 F.3d 1245, the District Court therefore presumed that the class suffered a common injury. Order at 21. The District Court relied on Dr. Kerr's assertion that "'harm to [Antitrust Class] members is common, and arises from [Defendants'] unitary course of conduct.'" Order at 21-22. The Order did not assess the reliability of Dr. Kerr's expert opinion, or otherwise evaluate it in any way. Nor did the District Court address the central expert dispute regarding whether competitive forces could have pushed the stipend higher

7

absent the alleged conspiracy.  Indeed, the Order did not mention Dr. Stiroh at all.

With respect to the RICO class, the District Court rejected the Sponsors' argument that individualized issues regarding the effect of the alleged stipend misrepresentations on each class member's decision to join the Program would predominate over common issues.  *Id.* at 23.  The District Court found that class members could rely on an inference of class-wide reliance to prove causation, relying principally on this Court's decision in *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014).

The District Court's finding of predominance for the state-based classes was derivative of its prior reasoning as to the RICO and antitrust classes.  It found that the Sponsors' alleged misrepresentations and alleged policies of underpayment meant that predominance was satisfied as to all sixty-four state law claims.  *See* Order at 26-31.  The Order did not recite, much less address, the elements of the state-law claims or defenses.  *See id.*

## REASONS FOR GRANTING THE PETITION

This Court has "unfettered" discretion to grant a petition under Rule 23(f).  *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009).  The Court may grant a petition for any reason it "find[s] persuasive," and it has traditionally done so in three circumstances, two of which are present here. *Id.* at 1262–63.  First, where the decision involves "an unresolved issue of law

relating to class actions that is likely to evade end-of-case review," and the issue is "significant to the case at hand, as well as to class action cases generally." *Id.* at 1263. And second, where the decision is "manifestly erroneous," and reversal will spare "the parties from a long and costly trial that is potentially for naught." *Id.* at 1263–64.

## I. RULE 23(F) REVIEW IS WARRANTED TO SETTLE THE STANDARD THAT COURTS MUST APPLY WHEN EXAMINING EXPERT EVIDENCE AT THE CLASS-CERTIFICATION STAGE.

The Order raises important and recurring questions about how district courts should treat expert evidence at the class-certification stage that this Court has not sufficiently addressed. This Court should grant review to address whether courts must resolve disputes among the parties' experts that are determinative of whether a class can be certified, and whether a district court must find that expert testimony satisfies *Daubert* before certifying classes based on that testimony.

### A. The District Court Failed to Resolve the Key Dispute Between the Parties' Experts: Whether Antitrust Impact Could Be Established Through Common Proof.

Courts must conduct a "rigorous analysis" to determine if certification is proper, even if the analysis "overlap[s] with the merits of the plaintiff's underlying claim." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013) (quotations omitted). As other Circuits have recognized, this analysis often requires a district court to "judg[e] the persuasiveness" of conflicting expert

opinions. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). Indeed, "[w]eighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2008); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013) ("Rule 23 not only authorizes a hard look at the soundness of statistical models that purport to show predominance—the rule commands it.").

Judging and weighing conflicting expert testimony before certification was integral and required here because Plaintiffs' case for predominance as to the antitrust class turned on their expert's disputed conclusion that antitrust injury could be proven on a class-wide basis. But the District Court conducted no such judging or weighing. Instead, it merely asserted in conclusory fashion that "there is evidence that the conspiracy artificially deflated the baseline for au pairs' wages." Order at 19. The only support for that conclusion was the mere "assert[ion]" from Plaintiffs' expert that "his analysis demonstrates [that] 'harm to Antitrust Class members is common, and arises from Defendants' unitary course of conduct.'" *Id.* at 21-22.

Of course, Dr. Kerr's assertion was vigorously contested by the Sponsors' expert, Dr. Stiroh. According to Dr. Stiroh, competitive forces could not have caused stipends to rise if the challenged conduct ceased, so there

would have been no general increase in the amount of the stipend. Ex. D, ¶ 18. The bulk of the class therefore was not harmed by the challenged conduct and suffered no antitrust impact. Ex. D, ¶¶ 37-38. Insofar as any of the au pairs would have received a higher stipend in the but-for world, proving so would require individualized inquiries. *Id.*

Thus, Rule 23 required the District Court to resolve whether Dr. Stiroh was correct, because if she was then the class could not have been certified. Yet, perhaps because this Court (unlike other Circuits) has not yet had the opportunity to say so expressly, the District Court failed to resolve the critical dispute between the parties' experts. Review is appropriate for this reason alone.

## B. The District Court Did Not Apply *Daubert* to Plaintiffs' Expert Evidence.

The District Court's treatment of the expert evidence implicates another fundamental question. In addition to contesting its reliability and soundness, Sponsors separately challenged whether Plaintiffs' expert evidence was even admissible under *Daubert*. Defs.' Mot. to Exclude Expert Testimony of William Kerr ("*Daubert* Mot."), ECF No. 606. But the District Court did not address that challenge before relying on Plaintiffs' expert's testimony and reports. As numerous courts of appeals and courts in this Circuit have held, resolving *Daubert* challenges is a prerequisite to class

certification, particularly where, as here, the challenged testimony is critical to certification.  This Court should grant review to provide guidance on this unsettled, recurring, and important issue.

Sponsors sought to exclude both of Dr. Kerr's models.  Specifically, they contended that the wage-law model could not support certification of an antitrust class because it was not an *antitrust* damages model, and thus violated *Comcast*'s holding that a plaintiff's theory of injury must match its theory of liability.  *See* 569 U.S. at 35 ("[A]t the class certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case.") (quotations omitted); *Daubert* Mot. at 2-5.  Sponsors likewise sought to exclude the price-competition model because it was, by Dr. Kerr's own admission, only a "preliminary" model.  Ex. E, ¶ 103; s*ee also* Ex. F, 222:10-14 (admitting that he could not estimate what the stipend would have been using the price-competition model).  Such an incomplete, undeveloped model was insufficiently reliable to satisfy *Daubert*.  *Daubert* Mot. at 10-11.

The District Court referred the *Daubert* motion to the Magistrate Judge, who recommended denying the motion.  Jan. 24, 2018 Order, ECF No. 813.  But the Magistrate Judge (relying on Eighth Circuit cases) declined to conduct a "full and stringent application of *Daubert*," and recommended permitting Plaintiffs to use the wage-law model, despite *Comcast*.  *Id.* at 11,

17.  The Magistrate Judge also recommended admitting the price-competition model, despite acknowledging that this model was "incomplete" and "insufficient to attribute any difference in pay" to the "antitrust conduct allegedly engaged in by the defendants." *Id.* at 16.

During the 14-day objection period, but before Sponsors filed their objections, the Court issued its ruling on class certification.  The Order does not mention the *Daubert* motion.[2]  The District Court thus failed to resolve a question that should have preceded the analysis of the expert evidence (which the Court did not conduct):  What parts of the expert evidence, if any, were admissible?

In recent years, every Circuit faced with this issue has held that district courts must satisfy themselves that an expert opinion is admissible before considering it in connection with a class certification motion.  *See, e.g.*, *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) (requiring plaintiff to demonstrate "that [its] expert testimony satisfies the standard set out in *Daubert*" at class certification); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012) (explaining that "a district court must make a conclusive ruling on any challenge" to critical

---

[2] Sponsors thereafter filed timely objections.  Defs.' Objections to Order on Nondispositive Matter [ECF No. 813], ECF No. 830.

expert evidence at class certification); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354 (2011) (expressing "doubt" that district court's holding "that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings" was correct). This Court should grant review to clarify that district courts in this Circuit must do so as well.

Review also is necessary to clarify *how* courts should apply *Daubert* at class certification. The better view, which other district courts in this Circuit have adopted, is that *Daubert* applies in full.[3] That is because "[e]xpert testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot 'prove'" that Plaintiffs have satisfied Rule 23. *In re Blood Reagents*, 783 F.3d at 187. The minority view, adopted by the Eighth Circuit and followed by the Magistrate Judge here, is that a less stringent version of *Daubert* may be applied at the class-certification stage. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 611–13 (8th Cir. 2011).

This Court, however, has not addressed whether and to what degree *Daubert* applies at class certification. Given the unsettled nature of that

---

[3] *See, e.g.*, *Miller v. Farmers Ins. Grp.*, No. CIV-10-466-F, 2012 WL 8017244, at *4 (W.D. Okla. Mar. 22, 2012) (unpublished); *In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*, No. 09-ML-2048-C, 2011 WL 6826813, at *14 (W.D. Okla. Dec. 28, 2011) (unpublished).

question, and its importance to this case and class actions generally, the Court should grant the petition.

### C. This Court's Review Is Necessary to Prevent Courts From Misreading *Urethane* as Having Mandated Class Certification of Any Alleged Price-Fixing Case.

Immediate review also is warranted to clarify this Court's decision in *In re Urethane*, 768 F.3d 1245, which the District Court repeatedly cited to justify certification of the antitrust class. If *Urethane* means what the District Court says, then any allegation of price-fixing will satisfy the requirements of Rule 23. Nothing in *Urethane* supports such a radical view— and if it did, it would render this Court's approach to class certification in price-fixing cases a national outlier.

*Urethane* was a price-fixing case involving a putative class of purchasers of polyurethane products. *Id.* at 1249. This Court approved certification of that class, and held that the element of antitrust impact was susceptible of class-wide proof. *Id.* at 1256, 1264. The *Urethane* Court observed that price-fixing creates "an inference of class-wide impact," which is "especially strong where, as here, there is *evidence* that the conspiracy artificially inflated the baseline for price negotiations." *Id.* at 1254 (emphasis added). But the Court did not hold that a presumption of impact applied whenever a price-fixing scheme was alleged. Rather, the Court detailed the considerable common evidence of impact in the record, which included,

among other things, expert testimony, the parallel issuance of price-increase announcements, and party admissions that those announcements had affected the starting point for negotiations. *Id.* at 1254–55 & n.7. Only then did this Circuit conclude that "[t]he district judge could reasonably *weigh the evidence* and conclude that price-fixing would have affected the entire market." *Id.* at 1255 (emphasis added).

By contrast, the District Court here held that, under *Urethane*, a presumption of class-wide impact applied in light of Plaintiffs' *allegations*—not because it was supported by the evidence. Order at 21–22. The District Court reasoned that the "nature of the *alleged* conspiracy implies common injury," and the fact of injury "logically follow[ed]" from "Plaintiffs' antitrust *allegations*." Order at 21 (emphasis added). Therefore, the District Court explained, there was "no reason to reject [the] inference" of class-wide injury in this case. *Id.*

But there was a good reason to reject that inference, which the District Court did not address. As explained above, the issue of common injury turned on, among other things, a hotly disputed factual question: Whether the minimum stipend required by federal regulations was actually *higher* than the stipend that would have prevailed under competitive conditions, such that there was no common antitrust injury at all. The answer to that

question could not be presumed; it required weighing of expert evidence, which the District Court failed to undertake.

The District Court's reading of *Urethane* is a recipe for automatic certification in every case that alleges price-fixing. If a presumption of class-wide impact arises from allegations of price-fixing alone—and does not require detailed examination of the economic evidence—then almost any allegation of price-fixing will satisfy Rule 23. The existence of a conspiracy always would be a common question, and the "inference" of impact would guarantee that common questions predominate as to injury, too.

No other Circuit has approved such an approach; in fact, several have expressly rejected it. *See In re Hydrogen Peroxide*, 552 F.3d at 326 (refusing to apply "a presumption of impact based solely on an unadorned allegation of price-fixing"); *Brown v. Am. Honda*, 522 F.3d 6, 20 (1st Cir. 2008) (declining to presume that the class suffered a common impact in light of the economic evidence). And courts routinely deny certification in price-fixing cases where plaintiffs have failed to prove that impact can be established with common evidence. *See, e.g.*, *In re Rail Freight*, 725 F.3d at 252; *Blades v. Monsanto, Co.*, 400 F.3d 562, 566 (8th Cir. 2005).

This case shows, however, that courts are misreading *Urethane* as having adopted a presumption of class-wide impact in any price-fixing case.

Given the stakes if that erroneous reading of *Urethane* takes hold, this Court should grant review and clarify its precedent.

## II.   THE DISTRICT COURT DRAMATICALLY EXPANDED THE LIMITED CIRCUMSTANCES IN WHICH AN INFERENCE OF RELIANCE CAN BE USED TO CERTIFY A RICO CLASS ACTION.

Review is also necessary because the District Court misapplied the limited exception to the requirement of individual proof of reliance in RICO class actions. The Order's finding of predominance despite the undisputed record here—which shows competing motivations for class members to join the Program—constitutes an unprecedented expansion of a narrowly tailored doctrine of permissible inferences and requires immediate review.

Reliance, "as a means of establishing RICO causation and beyond, takes on uncommon gravity when it arises in the context of establishing predominance under Rule 23." Order at 22 (quoting *CGC Holding*, 773 F.3d at 1089). Indeed, using reliance on a purported misrepresentation to satisfy RICO's causation requirement most often precludes a finding of predominance. *CGC Holding*, 773 F.3d at 1089. This Court, however, has held that in some cases circumstantial evidence can be used to create a class-wide inference of reliance where "the behavior of plaintiffs and the members of the class cannot be explained in any way other than reliance upon the defendant's conduct." *Id.* at 1089–90. Yet for this limited exception to apply, the class members' behavior must be susceptible to a common explanation,

and thus evidence of varying motivations will defeat the inference of reliance. *See id.* at 1092.

The record is replete with such varying motivations here, but the District Court relied on an inference of reliance anyway. The Program exists under the auspices of the Fulbright-Hays Act. By law, as explicitly set forth in the governing regulations, the Program must further educational and cultural-exchange purposes. *See* 22 C.F.R. § 62.1(a). Although Plaintiffs allege that the Program is strictly a labor program, any analysis of the RICO claim must take into account the cultural and educational aspects of the Program, including: au pairs' opportunity to travel to and in the U.S. and improve their English, the requirement for au pairs to attend post-secondary education, the requirement that au pairs reside with U.S. host families— whom they personally interview before arrival to ensure a good cultural and personal "fit"—and the mandatory cultural-exchange purpose. Indeed, the State Department could not allow the Program to continue as strictly a labor program. *See* Exchange Visitor Program, 60 Fed. Reg. 8547, 8548 (Feb. 15, 1995) (explaining that the Program must be "primarily a cultural and educational exchange program which incidentally provides child care.").

In adopting a class-wide inference of reliance, the Order finds that class members would not have joined the Program but for the representations regarding the stipend amount. But the Order does not mention, much less

address, all of the record evidence showing that class members joined the Program for reasons that had nothing to do with the stipend. Indeed, the named Plaintiffs testified that one or more of these elements was at least part of the reason why they joined the Program, and several of them learned about the stipend from parties other than the Sponsors, or after they had joined the program.[4] The logic of the class-wide inference of reliance cannot hold in the face of these varied and mixed motivations for class members.[5]

The Program here is far from the simplistic "quid pro quo" contemplated by this Court in *CGC Holding*. *See* 773 F.3d at 1093. Unlike *CGC Holding*, where the plaintiff class would not have any reason to advance fees for loan commitments other than the expectation that they would be honored, au pairs' reasons to join the Program cannot be reduced to a single motivation to be paid a certain wage that is inextricably linked to the alleged misrepresentations. *See CGC Holding*, 773 F.3d 1091-92. Instead, the more appropriate comparison should be drawn to the Ninth Circuit's analysis in *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004). Where "there [is]

---

[4]   *See, e.g.*, Defs.' Resp. in Opp'n to Rule 23 Mot. at 6 & n.8, 7 & n.10, 29, 32, ECF No. 603.

[5]   Given the evidence in the record, this case is distinguishable from *Menocal v. Geo Grp., Inc.*, No. 17-1125, 2018 WL 797165, at *8 (10th Cir. Feb. 9, 2018), in which the defendants attempted to rely on "the mere speculative possibility that a class-wide inference would not apply."

no single, logical explanation" for Plaintiffs' behavior, the Court cannot infer reliance. *Poulos*, 379 F.3d at 668; *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 225 (2d Cir. 2008) (declining to infer class-wide reliance because "each plaintiff . . . could have elected to purchase light cigarettes for any number of reasons").

If an inference of reliance is permissible under these circumstances, it is hard to imagine what RICO class action could not be certified. This Court's review is necessary to ensure that the exception to the requirement that reliance must be shown on an individualized basis in RICO actions does not swallow the rule.

## III.   THE DISTRICT COURT FAILED TO UNDERTAKE A RIGOROUS ANALYSIS BEFORE CERTIFYING CLASSES COVERING SIXTY-FOUR STATE LAW-BASED CAUSES OF ACTION.

Because "Rule 23 does not set forth a mere pleading standard," it requires the "party seeking class certification" to "affirmatively demonstrate his compliance with the Rule." *Dukes*, 564 U.S. at 350. In turn, Rule 23 requires courts "to survey the elements of the class's . . . claims to consider (1) which of those elements are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not." *CGC Holding*, 773 F.3d at 1087.

With respect to the state-law causes of action in this case, the elements of the claims and defenses have never been adequately described—not in the Complaint, Plaintiffs' class certification motion, or the Order. And while the requirements of Rule 23 must be proven with actual evidence, the Order is replete with references to disputed allegations and inferences untethered to any evidence. *See, e.g.*, Order at 30 (accepting as true Plaintiffs' allegation "that host families did not have **any** discretion over *au pairs'* compensation").

Given the nature of the District Court's treatment of the state-law claims, there is insufficient space to outline every error in this aspect of the Order. But the following examples, each constituting clear and manifest errors of law, demonstrate the numerous flaws in the Order's perfunctory analysis:

- The District Court certified three subclasses of state-based claims where no named Plaintiff resided or worked. *See* Rule 23 Motion App. A at 4, 7, ECF No. 559-1 (proposing state-based subclasses solely represented by non-plaintiffs Mmes. Perez Reyes, Elizabeth, and Caramelo); Order at 35-36 (certifying Perez Reyes, Elizabeth, and Caramelo subclasses). Notably, twelve days *after* certifying these subclasses, the Court denied a motion to amend that sought to add named plaintiffs who claimed they could represent these classes. Order Denying Mot. to Amend, ECF No. 850.

- The Order certifies without limitation two Maryland subclasses, purporting to assert five causes of action, one of which (breach of fiduciary duty) is not recognized as pled (*see Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997)), and a Massachusetts class asserting a consumer-protection claim despite Plaintiffs' failure to comply with the jurisdictional requirement of serving a demand letter. *See* Mass. Gen. Laws ch. 93A § 9(3).

- The Order certifies without limitation Utah and Virginia subclasses asserting state causes of action without addressing those states' explicit prohibitions against asserting such claims in a class action. Utah Code Ann. § 13-11-19(2) (precluding damages for class actions premised on consumer protection act); *Casey v. Merck & Co.*, 722 S.E.2d 842, 846 (Va. 2012) (discussing Virginia's longstanding doctrine that named plaintiffs do not have standing to assert claims for putative class members).

The cursory acceptance of sixty-four causes of action for certification in subclasses under thirteen different jurisdictions calls into question whether any rigorous analysis was conducted. Indeed, considering the number of claims that should have been dismissed as a matter of law, it is hard to believe that the strictures of Rule 23 were met. Review is required to correct the resulting series of manifest errors, and to ensure that unmanageable, multi-state classes are not certified just because they meet the minimal requirements of standing.

## CONCLUSION

The petition for permission to appeal should be granted.

_s/ Diane R. Hazel_

Joan A. Lukey
(joan.lukey@choate.com)
Justin J. Wolosz
(jwolosz@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
(617) 248-4790

James M. Lyons
(jlyons@lrrc.com)
Jessica L. Fuller
(jfuller@lrrc.com)
Diane R. Hazel
(dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
(303) 623-9000

**_Attorneys for Petitioner Cultural Care, Inc. d/b/a Cultural Care Au Pair_**

_s/ Eric J. Stock_

Theane Evangelis
(tevangelis@gibsondunn.com)
Bradley Hamburger
(bhamburger@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071
(213) 229-7804

Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue

New York, NY 10166
(212) 351-2301


*s/ Stephen J. Macri*
Stephen J. Macri
(stephen.macri@ogletree.com)
Robert M. Tucker
(robert.tucker@ogletree.com)
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
1745 Broadway, 22nd Floor
New York, NY 10019
(212) 492-2071

**Attorneys for Petitioner American Institute for Foreign Study d/b/a Au Pair in America**

*s/ Kathryn A. Reilly*
Kathryn A. Reilly (reilly@wtotrial.com)
Natalie E. West (west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
(303) 244-1800

**Attorneys for Petitioners Agent Au Pair, Au Pair International, Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair**

*s/ Lawrence D. Stone*
Lawrence D. Stone
(lstone@nixonshefrin.com)
Kathleen E. Craigmile
(kcraigmile@nixonshefrin.com)
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111

(303) 773-3500

**Attorneys for Petitioners A.P.E.X.
American Professional Exchange,
LLC d/b/a ProAuPair and 20/20
Care Exchange, Inc. d/b/a The
International Au Pair Exchange**

_s/ James E. Hartley_
James E. Hartley
(jhartley@hollandhart.com)
Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302
(303) 245-2075

Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
(303) 295-8000

**Attorneys for Petitioner Cultural
Homestay International**

_s/ Susan M. Schaecher_
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
(303) 218-3650

**Attorneys for Petitioner APF Global
Exchange, NFP**

_s/ Bogdan Enica_

Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701
(727) 225-2649

***Attorney for Petitioner Expert
Group International, Inc. d/b/a
Expert Au Pair***

*s/ Peggy Kozal*
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey
(nhuey@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202
(303) 534-5160

***Attorneys for Petitioner
AuPairCare, Inc.***

*s/ Martha L. Fitzgerald*
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
(303) 223-1100

***Attorneys for Petitioner EurAuPair
Intercultural Child Care Programs***

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi

27

(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph H. Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
(303) 297-2900

***Attorneys for Petitioner
InterExchange, Inc.***

*s/ William J. Kelly III*
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chanda M. Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202
(720) 236-1800

***Attorneys for Petitioner USAuPair,
Inc.***

*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
1700 Broadway, Suite 2100
Denver, CO 80290-2101
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
(720) 722-7195

***Attorneys for Petitioner
GreatAuPair, LLC***

28

## CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,179 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (a)(6), and 10th Cir. R. 32(a) because it was prepared in Microsoft Office Word in 13-point, proportionally spaced Century Schoolbook font.

3.     This brief complies with 10th Cir. R. 25.5.  The filer has complied with all privacy and redaction requirements.

4.     This electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses as required by ECF User Manual, Section II, Policies and Procedures for Filing Via ECF, Part J(c).

5.     Hard copies to be submitted to the Court are exact copies of the version submitted electronically pursuant to ECF User Manual, Section II, Policies and Procedures for Filing Via ECF, Part J(b).


*s/ Diane R. Hazel*
Diane R. Hazel

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2018, I have served the foregoing

by email to the following:

Matthew L. Schwartz
(mlschwartz@bsfllp.com)
Peter M. Skinner
(pskinner@bsfllp.com)
Randall W. Jackson
(rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling
(jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley
(smccawley@bsfllp.com)
Sabria A. McElroy
(smcelroy@bsfllp.com)
Byron Pacheco (bpacheco@bsfllp.com)
Sean P. Rodriguez
(srodriguez@bsfllp.com)
Juan P. Valdivieso
(jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood
(alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

                    *s/ Diane R. Hazel*
                    Diane R .Hazel

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ, and
SARAH CAROLINE AZUELA RASCON,

      Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a ProAuPair,
20/20 CARE EXCHANGE, INC., d/b/a The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GoAu Pair, and
GOAUPAIR OPERATIONS, LLC,

      Defendants.

Case 1:14-cv-03074-CMA-KMT Document 825-1 Filed 02/02/18 USDC Colorado Page 2 of 43
Case 1:14-cv-03074-CMA-KMT Document 828-1 Filed 02/08/20... USDC Colorado page 2 of 38 of 77

Appellate Case: 18-702    Document: 01019946958    Date Filed: 02/16/2018    Page: 41

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

---

This matter is before the Court on Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel.  (Doc. # 559.)  Pursuant to Federal Rule of Civil Procedure 23, named Plaintiffs seek certification of several classes and subclasses.  (*Id.* at 2.)  Plaintiffs also request an order appointing class counsel and requiring the parties to submit a joint notification plan.  (*Id.* at 3, 50.)

Plaintiffs allege in the underlying action that each of the Defendants falsely represented that *au pair* wages were set at $195.75 per week "as part of an illegal agreement to suppress wages and accordingly inflate their own fees" and thereby violated federal and state wage laws.  (*Id.* at 1.)  Plaintiffs make ten claims against Defendants, including that they violated the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1694, *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the laws of several states.  (Doc. # 395 at 94–100, 104–16.)

For the reasons detailed below, Plaintiffs' Motion for Rule 23 Class Certification is granted in part and denied in part.

## I.    <u>BACKGROUND</u>

The Court's previous Orders and United States Magistrate Judge Kathleen M. Tafoya's Report and Recommendation on past motions provide detailed recitations of the factual and procedural background of this case and are incorporated herein.  *See,*

*e.g.*, (Doc. ## 569, 240.)  The background of this dispute will thus be reiterated here

only to the extent necessary to address Plaintiffs' Motion for Class Certification.

Defendants are business entities authorized by the United States Department of

State ("DOS") pursuant to the J-1 visa program to recruit and place *au pairs* with host

families in the United States.  Plaintiffs, former *au pairs* sponsored by Defendants,

initiated this action more than three years ago, *see* (Doc. # 1), and the parties have

vehemently litigated it since then.  Plaintiffs assert several claims:

     I.    Restraint of Trade in Violation of the Sherman Antitrust Act
    II.   Violation of Civil RICO
   III.   Breach of Fiduciary Duty Under the Laws of the Several States and the District of Columbia
   IV.   Negligent Misrepresentation Under the Laws of the Several States and the District of Columbia
    V.   Constructive Fraud or Fraudulent Concealment Under the Laws of the Several States and the District of Columbia
   VI.   Violation of Several States' and the District of Columbia's Consumer Protection Laws
  VII.   [Count VII is not included in Plaintiffs' Second Amended Complaint]
 VIII.   Failure to Pay Minimum Wage and Overtime in Violation of FLSA
   IX.   Claims for Unpaid Wages Under the Laws of Several States and the District of Columbia
    X.   Violations of the New York Wage Act
   XI.   Violations of the New Jersey Wage Act

(Doc. # 395 at 104–18.)  Relevant here, Plaintiffs allege that Defendants maintain a

"uniform policy" and have a "collective agreement" to "artificially suppress *au pair* wages

at an unlawfully low level."  (Doc. # 559 at 4.)  This, Plaintiffs contend, is "the product of

[Defendants'] *per se* illegal price fixing, . . . fraud, . . . and collusion."  (*Id.* at 7–8.)

Plaintiffs allege that Defendants' conduct "adversely affected" each Plaintiff and every

potential class member "by keeping their wages illegally low, and by lying to them about

their ability to seek higher wages."  (*Id.* at 10.)

On June 6, 2017, Plaintiffs filed this Motion for Rule 23 Class Certification and

Appointment of Counsel on all claims other than the FLSA Claim (Claim VIII).[1]  (Doc.

# 559.)  Plaintiffs seek certification of six classes and thirteen subclasses.  (*Id.*)  First,

Plaintiffs request certification of two national classes under federal law:

> 1. A national "Antitrust Class": "all persons sponsored by any Defendant to work as a standard *au pair* in the United States pursuant to a J-1 Visa"
> 2. A national "RICO Class": "all persons sponsored by Defendants Au Pair in America, AuPairCare, Inc., Cultural Care, Inc., or InterExchange, Inc. to work as a standard *au pair* in the United States pursuant to a J-1 Visa"

(*Id*. at 3; Doc. # 559-1.)  Second, Plaintiffs propose national classes against Defendants

who require *au pairs* to attend unpaid training in a specific state, regardless of where

the *au pairs* are ultimately placed:

> 3. A national "NJ Training Class": "all *au pairs* who were subjected to mandatory unpaid training in New Jersey by AuPairCare"
> 4. A national "NY Training Class": all *au pairs* who were subjected to mandatory unpaid training in New York "by InterExchange, Au Pair in America, Cultural Care, and GoAuPair"
> 5. A national "FL Training Class": all *au pairs* subject to "unpaid training in Florida by Expert Au Pair"

(*Id*.)  Third, Plaintiffs seek certification of national and state-specific classes arising

under state law.  (*Id.*)

> 6. A nationwide "State-Claim Class": all *au pairs* "asserting state law claims against certain defendants"
> 7. Subclasses specific to the defendant and where the current named Plaintiffs worked, the "defendant-and-state-specific Subclasses"
>     a. An "Au Pair in America California Subclass"

---

[1] The Court conditionally certified eleven plaintiff opt-in classes and subclasses pursuant to the FLSA's collective action provision, 29 U.S.C. § 216(b), in June 2017.  (Doc. # 569.)  That conditional certification concerned only six Defendants (the "FLSA Defendants") and Claim VIII.  (*Id.* at 2.)  Pursuant to the Court's certification and a motion hearing, Plaintiffs and the FLSA Defendants agreed to notification procedures and deadlines.  *See* (Doc. # 686.)  The opt-in window for potential FLSA collective action plaintiffs is due to close on April 19, 2018.  (Doc. # 795.)

    b.  An "Au Pair in America Illinois Subclass"
    c.  An "AuPairCare Michigan Subclass"
    d.  An "AuPairCare Pennsylvania Subclass"
    e.  A "Cultural Care Maryland Subclass"
    f.  A "Cultural Care Massachusetts Subclass"
    g.  A "Cultural Care Pennsylvania Subclass"
    h.  A "Cultural Care Texas Subclass"
    i.  A "Cultural Care Utah Subclass"
    j.  A "Cultural Care Virginia Subclass"
    k.  An "Expert Au Pair Colorado Subclass"
    l.  A "GoAuPair Maryland Subclass"
    m.  An "InterExchange Colorado Subclass"

(*Id*.)  Plaintiffs also move the Court to appoint Boies Schiller Flexner ("BSF") and Towards Justice as co-class counsel.  (*Id.* at 49–50.)  Finally, should the Court grant Plaintiffs' Motion, Plaintiffs ask that the Court order the parties to confer about class notice procedures and to submit a plan and proposed notice form(s) within ten days of the Court's order on the instant Motion.  (*Id*. at 50.)

      Defendants jointly filed a Response in Opposition to Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel on July 17, 2017.  (Doc. # 610.) A number of Antitrust Defendants also independently filed additional briefs in opposition to class certification.  (Doc. ## 599, 608, 609, 611, 612, 614.)  Plaintiffs thereafter replied on August 2, 2017.  (Doc. # 643.)  Many of the arguments in these briefs far exceed the analysis required for class certification pursuant to Rule 23, but the Court has nonetheless diligently reviewed all filings.

## II.   <u>LEGAL STANDARD</u>

      When addressing class certification, the district court undertakes a "rigorous analysis" to satisfy itself that the prerequisites of Federal Rule of Civil Procedure 23 are met.  *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014).

Under Rule 23(a), plaintiffs seeking class certification bear the burden of establishing

four threshold requirements:

> (1) "the class is so numerous that joinder of all members is impracticable";
> (2) "there are questions of law or fact that are common to the class";
> (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and
> (4) "the representative parties will fairly and adequately represent the interests of the class."

*Id.*

Plaintiffs must also show that the case falls into one of the three categories set

forth in Rule 23(b).  *Trevizo v. Adams*, 455 F.3d 1155, 1161–62 (10th Cir. 2006); *Shook*

*v. El Paso Cty.*, 386 F.3d 963, 971 (10th Cir. 2004).  In this case, Plaintiffs move for

class certification under Rules 23(b)(2) and 23(b)(3).  (Doc. # 559 at 11.)  Certification is

available under Rule 23(b)(2) where the class seeks declaratory or injunctive relief

because "the party opposing the class has acted or refused to act on grounds that apply

generally to the class."  Fed. R. Civ. P. 23(b)(2).  Certification is available under Rule

23(b)(3) where "questions of law or fact common to class members predominate over

any questions affecting only individual members, and . . . a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy."  Fed. R.

Civ. P. 23(b)(3).

When deciding whether the proposed class meets the requirements of Rule 23,

the Court accepts a plaintiff's substantive allegations as true, though it need not blindly

rely on conclusory allegations and may consider the legal and factual issues which the

complaint presents. *Shook*, 386 F.3d at 968; *see also Vallario v. Vandehey*, 554 F.3d

1259, 1265 (10th Cir. 2009); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228,

1234 (11th Cir. 2000) ("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.").

The decision whether to grant or deny class certification "involves intensely practical considerations and therefore belongs within the discretion of the trial court." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013). In doubtful cases, class certification is favored. *See Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); *Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 218 (D.N.M. 2016).

### III.  ANALYSIS

### A.  SATISFACTION OF RULE 23(A) REQUIREMENTS

The Court is satisfied that each of Plaintiffs' proposed classes, with one exception explained below, satisfy the four prerequisites of Rule 23(a) for the following reasons.

#### 1.  Numerosity

In order to meet the first element of Rule 23(a), "[t]he burden is upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable." *Peterson v. Okla. City Hous. Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976). However, there is "no set formula to determine if the class is so numerous that it should be certified." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). Rather, "the determination is to be made in the particular circumstances of the case," *id.*, and is "a fact-specific inquiry best left to the district court's discretion," *Gonzales v. City of Albuquerque*, No. CIV 09-0520 JB/RLP, 2010 WL 4053947, *7

(D.N.M. Aug. 21, 2010).  Factors bearing on this inquiry include "the nature of the action, the size of the individual claims, and the location of the members of the class . . . that is the subject matter of the dispute."  *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*,  765 F.3d 1205, 1215 (10th Cir. 2014) (quoting 7A Charles Alan Wright, et al., Federal Practice & Procedure § 1762, at 206–07 (3d ed. 2005)).  This Court and others within the Tenth Circuit have certified classes ranging in size from tens to hundreds of thousands of class members.  *See, e.g.*, *Rex*, 585 F.2d at 435 ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class"); *Bennett v. Sprint Nextel Corp.,* 298 F.R.D. 498, 504–05 (D. Kan. 2014) ("Courts have found that classes as small as twenty members can satisfy the numerosity requirement, and a good faith estimate of at least 50 members is a sufficient size to maintain a class action" (internal quotations omitted)).

In the matter presently before the Court, it is indisputable that Plaintiffs' proposed classes are sufficiently numerous to satisfy Rule 23(a)(1).  At the time Plaintiffs filed their Motion for Rule 23 Class Certification in mid-2017, the proposed national classes had more than 91,201 members, with new class members frequently being added. (Doc. # 559 at 13.)  It would be impracticable for these class members to pursue individual actions against their sponsoring organizations.  Former *au pairs* reside internationally and are generally young people for whom English is a second language. (*Id*. at 13–14.)  It is also economically unreasonable to expect the *au pairs* to pursue their own claims against one or more Defendant, given the high cost of litigation.  *Cf. Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1085 (D. Colo. 2016)

("The class members are Mexican nationals with limited access to U.S. courts, and the value of any individual's claims is likely to small to make individual litigation cost effect. These factors suggest that individualized resolution of claims would be both unlikely and impractical.").  As Defendants concede, (Doc. # 610 at 12 n.19), Plaintiffs' proposed classes easily satisfy the numerosity requirement of Rule 23(a).

### 2.   **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Not all questions of law and fact need be common to the class.  "[E]ven a single common question will do."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations omitted).  However, this requirement is not met merely because the putative class members allegedly "all suffered a violation of the same provision of law."  *See id.* at 350.  Indeed, it is not just the presence of a common question that matters, but the ability of the class action device to "resolve an issue that is central to the validity of each one of the claims in one stroke."  *See id.*  "The district court retains discretion to determine commonality because it is 'in the best position to determine the facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case and . . . to select the most efficient method for their resolution.'"  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (internal citation omitted).

Numerous courts have determined that the commonality prerequisite of Rule 23(a) was satisfied in antitrust and RICO class actions.  In antitrust class actions, "the claimed existence of a conspiracy to fix prices . . . in violation of antitrust laws has been

found to present common questions in actions brought by plaintiffs who asserted that

they had been harmed by those activities." 7A Charles Alan Wright, et al., *Federal*

*Practice & Procedure* § 1763 (3d ed. 2017). *See, e.g.*, *In re High-Tech Employee*

*Antitrust Litigation*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (in former employees'

class action alleging that employers conspired to suppress wages to artificially low

levels in violation of the Sherman Antitrust Act, finding that adjudication of the

employers' alleged antitrust violations would turn on "overwhelmingly common legal and

factual issues"); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y.

1982) ("antitrust price-fixing conspiracy cases, by their nature, deal with common legal

and factual questions about the existence, scope and effect of the alleged conspiracy"

(internal quotation omitted)). The same is true of RICO class actions. As the Third

Circuit described, a RICO allegation "will often contain common issues because . . . a

RICO allegation is informed by the defendant's conduct as to all class members and

any resulting injuries common to all class members." *Reyes v. Netdeposit, LLC*, 802

F.3d 469, 487 (3d Cir. 2015) (internal quotations omitted). *See, e.g.*, *In re U.S.*

*Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 120 (2d Cir. 2013) (finding common

issues of law and fact in customers' putative class action where customers alleged a

national food distributor violated RICO).

A multitude of common issues of law and fact exist in this matter. As the Court

observed when it conditionally certified classes for purposes of collective FLSA action,

Plaintiffs have adequately alleged an antitrust conspiracy that "represents [a] . . . 'single

decision, policy, or plan.'" (Doc. # 569 at 8–9.) The same is true of Plaintiffs' RICO and

state-law claims because those claims arise from the same alleged conduct that

furthered the overall conspiracy.  The Court identified other common legal and factual

questions in its Order Adopting and Affirming In Part the February 22, 2016

Recommendation of United States Magistrate Judge Tafoya, which concerned various

Defendants' Motions to Dismiss.  *See* (Doc. # 258.)  Because these numerous class-

wide questions of law and fact may be resolved with common answers drawn from

common proof, Plaintiffs' proposed classes satisfy Rule 23(a)'s commonality

requirement.[2]

### 3.      __Typicality__

The third prerequisite for class certification is that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P.

23(a)(3).  "[D]iffering fact situations of class members do not defeat typicality under Rule

23(a)(3) so long as the claims of the class representative and class members are based

on the same legal or remedial theory."  *Adamson v. Bowen*, 855 F.2d 668, 676 (10th

Cir. 1988); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir.

2010) ("typicality exists where . . . all class members are at risk of being subjected to the

same harmful practices, regardless of any class member's individual circumstances.").

---

[2] Defendants do not explicitly argue that the commonality prerequisite of Rule 23(a)(2) is not
satisfied.  (Doc. # 610.)  Rather, they argue that individualized issues will predominate over any
purported common questions, an argument addressing Rule 23(b)(3).  (*Id.* at 13.)  Courts often
discuss commonality and predominance together "because the commonality inquiry is
subsumed into the predominance inquiry."  *Reyes*, 802 F.3d at 486.  However, in the interest of
clarity, the Court addresses each requirement separately.  The Court addresses Defendants'
predominance arguments below.  *See In re LifeUse Holding Inc.*, 242 F.3d 136, 145 (3d Cir.
2001) ("Because common questions (commonality) must be established before predominance
can be found, we turn to that element.")

For nearly all of Plaintiffs' claims, each named Plaintiff is typical of the proposed classes.  First, "typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants."  *In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (internal quotations omitted); *see also In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346, 351 (N.D. Cal. 2005).  As this Court has previously stated, *see* (Doc. # 569 at 8–9), that is certainly true here.  Plaintiffs and members of the proposed national Antitrust Class all allege a common agreement among Defendants to fix wages at an unlawfully low level.  (Doc. # 395 at 104–05.)

Second, in the context of a RICO claim, "the proposed class representative's claims are generally held to be typical of the class members' claims if the allegations can be traced to the same overall fraud."  *Robert v. C.R. England, Inc.*, 318 F.R.D. 457, 511 (D. Utah 2017) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:36 (5th ed. 2012)).  Here, Plaintiffs' and members of the proposed national RICO Class's RICO claim "arise[s] out of the same course of events," *id.*, and the same purported overall fraud.  (Doc. # 395 at 105–06.)

With regard to most of Plaintiffs' state-law claims, the Court is satisfied that Plaintiffs' claims are typical of potential class members' claims.  It appears to the Court that Plaintiffs have carefully crafted their Defendant-and-State-Specific Subclasses to "ensure that each defendant on those claims is aligned with a plaintiff who worked for that defendant in a particular state."  (Doc. # 559 at 20.)  Named Plaintiffs and class

members of each Subclass will invoke the same state statutes and common law
doctrines.

Various Defendants attempt in their individual Responses to defeat the typicality
requirement by arguing that each *au pairs*' pay and work conditions are "unique and
individual."[3]  *E.g.*, (Doc. # 599 at 2; Doc. # 609 at 7–9.)  While *au pairs*' experiences
may have varied, the core of each claim remains the same for all *au pairs* in the
aforementioned classes—all that the typicality element requires.  *See DG ex rel.
Stricklin*, 594 F.3d at 1195 ("Every member of the class need not be in a situation
identical to that of the named plaintiff to meet Rule 23(a)'s . . . typicality requirement.").
The Court therefore concludes that Plaintiffs' proposed Antitrust Class, RICO Class,
Training Classes, and Defendant-and-State-Specific Subclasses meet the third
prerequisite of Rule 23(a).

### a.   The nationwide State-Claim Class

Plaintiffs' proposed nationwide State-Claim Class fails to meet the typicality
requirement.  Plaintiffs state that this "overarching national class asserting state law
claims" for breach of fiduciary duty (Claim III), negligent misrepresentation (Claim IV),
constructive fraud or fraudulent concealment (Claim V), violation of consumer protection
statutes (Claim VI), and violation of minimum wage statutes (Claim IX) will be
represented by all named Plaintiffs.  (Doc. # 559 at 3 n.4; Doc. # 559-1 at 1.)  They
propose that the nationwide State-Claim Class include:

---

[3] Defendants' joint Response does not discuss Rule 23(a)(3); it "directs the Court to
[Defendants'] individual briefs."  (Doc. # 610 at 12 n.19.)

> **All persons** sponsored by any of the following Defendants to work as a standard *au pair* **in the United States** pursuant to a J-1 Visa: AuPairCare, Inc.; Au Pair in America (American Institute for Foreign Study); Cultural Care, Inc., Expert Group International, Inc.; Associates in Cultural Exchange (dba GoAuPair), or InterExchange, Inc.

(*Id.*) (emphasis added). Plaintiffs do not identify **which states' laws** they assert these claims under. Rather, in their Complaint, Plaintiffs merely reference "the laws of several states and the District of Columbia." *See* (Doc. # 395 at 104–14.) The Court therefore assumes that Plaintiffs do not intend to limit the states under which class members bring state claims.

Named Plaintiffs lack Article III standing to assert claims under the laws of states in which they did **not** work, live, or reside. To the best of this Court's knowledge, named Plaintiffs were employed in or resided in **only** the following states: Colorado; California; Utah; Pennsylvania; Massachusetts; Maryland; Virginia; Texas; Michigan; and Illinois. *See* (Doc. # 395 at 8–9; Doc. # 559-1 at 5–10.) No named Plaintiffs worked in or lived in the remaining forty states or the District of Columbia during their employment as *au pairs*. Thus, named Plaintiffs are without standing in regard to their nationwide State-Claim Class because that class is not limited to the states in which named Plaintiffs were employed or resided.

This Court previously explained this analysis at length in *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2011 WL 2791331, *1 (D. Colo. July 14, 2011), and *Avendano v. Averus, Inc.*, No. 14-cv-01614-CMA-MJW (D. Colo. Sept. 29, 2016)

(unpublished), *see* (Doc. # 610-52).[4]  Article III standing "focuses on whether the

plaintiff is the proper party to bring this suit," a determination informed by "the nature

and source of the claim asserted."  *Raines v. Byrd*, 5210 U.S. 811, 818 (1997) (quoting

*Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  To meet the standing requirement, "a

plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute,

and that the alleged injury is particularized as to him."  *Id*.  This does not change in the

context of a class action.  "[E]ven named plaintiffs who represent a class 'must allege

and show that they personally have been injured, not that injury has been suffered by

other, unidentified members of the class to which they belong and which they purport to

represent.'"  *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 40 n.20 (1976) (quoting

*Warth*, 422 U.S. at 502)).  Accordingly, named plaintiffs lack standing to bring claims

under the laws of states where the named plaintiffs have not worked or resided.  *See,

e.g*., *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (holding that each claim

must be analyzed separately, and "a claim cannot be asserted on behalf of a class

unless at least one named plaintiff has suffered the injury that gives rise to the claim");

*In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla.

2010) (holding that in a class action, the plaintiffs "may only assert a state statutory

claim if a named plaintiff resides in that state"); *Pizza Hut, Inc.*, 2011 WL 2791331 at *9

(collecting cases).  With regard to Plaintiffs' proposed nationwide State-Claim Class,

---

[4] Plaintiffs acknowledge that this Court twice previously rejected a proposed national class
asserting state law claims in *Pizza Hut* and *Avendano*.  (Doc. # 559 at 3–4 n.4); *see also* (Doc.
# 559 at 39 n.50).  Plaintiffs explain, "Notwithstanding that authority, [they] believe that an
overarching national Class asserting state law claims is appropriate in this case, and [P]laintiffs
seek certification of such a class, **particularly in the event of after-arising law or appeal**."
(*Id.*) (emphasis added.)

named Plaintiffs in this case lack standing to bring claims under the state laws of the

forty states and the District of Columbia where named Plaintiffs did **not** work or live.

*See Pizza Hut, Inc.*, 2011 WL 2791331 at *10; *Avendano*, No. 14-cv-01614-CMA-MJW

at (Doc. # 610-52 at 15–16).

Though this Court sympathizes with low-wage, immigrant workers—including *au

pairs* employed pursuant to a J-1 Visa—who may face real risks in pursuing wage-and-

hour claims and, thus, may benefit from an opt-out action certified under Rule 23, *see

Avendano*, No. 14-cv-01614-CMA-MJW at (Doc. # 610-52 at 12–13 n.4), the Court is

bound by the Tenth Circuit's holding in *Rector v. City and County of Denver*, 348 F.3d

935 (10th Cir. 2003).  The Tenth Circuit held therein that "class representatives who do

not have Article III standing to pursue the class claims fail to meet the typicality

requirement of Rule 23."  *Id*. at 950.  Because named Plaintiffs do not have standing

and fail to satisfy the typicality requirement of Rule 23 for the nationwide State-Claim

Class, the Court denies Plaintiffs' Motion for Rule 23 Class Certification as to the State-

Claim Class.  *See Avendano*, No. 14-cv-01614-CMA-MJW at (Doc. # 610-52 at 15–16).

### 4.    Fair and Adequate Representation of the Class

The final requirement of Rule 23(a) is that "the representative parties will fairly

and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution

of two questions determines legal adequacy: (1) do the named plaintiffs and their

counsel have any conflicts of interests with other class members and (2) will the named

plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)

(quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  The plaintiffs

bear the initial burden of demonstrating facts to support a finding that they will

adequately protect the interests of the class.  *Decoteau v. Raemisch*, 304 F.R.D. 683,

689 (D. Colo. 2014).  If the plaintiffs make a *prima facie* case of adequate

representation, the burden shifts to the defendant.  *Id*.  Absent evidence to the contrary,

a presumption of adequacy applies.  *Id*.

Plaintiffs have alleged facts demonstrating that they will fairly and adequately

represent the proposed Classes and Subclasses.  First, Plaintiffs state that there are no

conflicts of interest among proposed representatives, counsel, and potential members.

(Doc. # 559 at 27.)  Second, Plaintiffs' counsel, BSF and Towards Justice, have

sufficient experience and expertise, and the Court trusts that they will prosecute the

action vigorously on behalf of all Classes and Subclasses.  *See* (*id*. at 26–27.)

Defendants fail to present evidence to the contrary.  Only two Defendants, APC

and Cultural Care, challenge Plaintiffs' satisfaction of Rule 23(a)(4).  (Doc. ## 609, 611.)

However, neither APC nor Cultural Care argues that: (1) there are conflicts of interest,

or (2) named Plaintiffs and their counsel will fail to prosecute the action vigorously.  (*Id*.)

Rather, they each take issue specific named Plaintiffs, asserting, for example, that one

Plaintiff "harbors racist views," (Doc. # 611 at 7), and two others are not "suited to the

task of representing the interests of Plaintiffs' proposed subclasses" (Doc. # 609 at 8).

These assertions are not substantiated with factual allegations or citations to the record,

and they therefore fail to persuade the Court.  The Court thus concludes that Plaintiffs

satisfy the adequacy element of Rule 23(a).

For these reasons, Plaintiffs fulfill all four prerequisites to class certification pursuant to Rule 23(a) for all proposed classes and subclasses except their proposed nationwide State-Claim Class.  The Court turns to whether Plaintiffs can also show that the qualified classes and subclasses fall into one of the three categories of Rule 23(b). *See Trevizo v. Adams*, 455 F.3d at 1161–62.

## B.  CERTIFICATION UNDER RULE 23(B)(3)

Plaintiffs seek certification primarily under Rule 12(b)(3), which allows for class certification where: (1) "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) the court finds "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.  <u>Predominance</u>

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Courts must give "careful scrutiny to the relation between common and individual questions in a case."[5]  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016).  They must ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-

---

[5] Issues are described as common or individual questions "primarily based on the nature of the evidence":

> If the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.  If the same evidence will suffice for each member to make a prima facie showing, or if the issue is susceptible to generalized, class-wide proof, then it is a common issue.

2 William B. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2017) (internal quotations omitted).

defeating, individual issues." *Id.* (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)). If "one or more of the central issues in the action" are common to the class and can be said to predominate, the class may be certified under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quoting 7AA Charles Alan Wright, *et al.*, Federal Practice & Procedure § 1778 (3d ed. 2005)).

Defendants argue that for all proposed Classes and Subclasses, individualized issues will predominate over common questions. (Doc. # 610 at 13.) The Court disagrees.

### a.    The Antitrust Class

Rule 23(b)(3) is frequently invoked in antitrust cases. 7A Charles Alan Wright, *et al.*, Federal Practice & Procedure § 1781 (3d ed. 2017). Generally, "whether a conspiracy [in restraint of trade] exists is a common question that is thought to predominate over the other issues in the case and has the effect of satisfying the first prerequisite in Rule 23(b)(3)." *Id.* (citations omitted). As the Tenth Circuit explained, "[u]nder the prevailing view, price-fixing affects all market participants, creating an inference of class-wide impact . . . The inference of class-wide impact is especially strong where . . . there is evidence that the conspiracy artificially inflated the baseline for price negotiations." *In re Urethane Antitrust Litigation*, 768 F.3d 1245, 1254 (10th Cir. 2014). The same is presumably true where, as here, there is evidence that the conspiracy artificially deflated the baseline for *au pairs*' wages.

19

The Court agrees with Plaintiffs that the alleged common agreement amongst Defendants is "the foundational liability issue" in Plaintiffs' Antitrust Claim.  (Doc. # 559 at 28.)  As it explained in a previous Order, the "**crucial question**" about a claim under Section 1 of the Sherman Antitrust Act is "**whether the challenged anticompetitive conduct stems from independent decision or from an agreement**."  (Doc. # 258 at 6) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 553 (2007)) (emphasis in order).  This common issue—the existence of a conspiracy to suppress *au pairs*' wages—predominates over any individual issues.

Defendants do not respond to Plaintiffs' analysis and instead argue at length that the Antitrust Class cannot be certified under Rule 23(b)(3) because Plaintiffs have failed to show "common evidence" that Defendants inflicted an "antitrust impact," or common injury, on the class.[6]  (Doc. # 610 at 14–27.)  Defendants are correct that the second element of a price-fixing claim is that the proposed class "suffered injury from the antitrust violation—an element commonly called 'impact.'"  *In re Urethane Antitrust Litigation*, 251 F.R.D. 629, 634 (D. Kan. 2008).  The antitrust injury requirement "ensures that a plaintiff can recover only if the loss stems from a competition-**reducing** aspect or effect of the defendant's behavior."  *Elliott Indus. Ltd. P'ship v. BP America Prod. Co.*, 407 F.3d 1091, 1124–25 (10th Cir. 2005) (quoting *Atl. Richfield Co. v. USA*

---

[6] Defendants assert that "Plaintiffs cannot carry their burden of establishing common evidence of antitrust impact for four separate reasons": (1) because "an oversupply of au pairs exists at the stipend levels that Plaintiffs claim resulted from the conspiracy, . . . the stipend would not rise if the challenged conduct ceased;" (2) Plaintiffs do not identify an "economic model or analysis that could serve as common proof of impact;" (3) Plaintiffs' "attempt to substitute a wage-law damages model as common proof of an antitrust injury . . . fails as a matter of law;" and (4) assuming Plaintiffs have identified evidence of common impact, "unacceptable intra-class conflicts" would violate Rule 23(a)(4)."  (Doc. # 610 at 15–16.)

*Petroleum Co.*, 495 U.S. 328, 344 (1990)).  However, "[t]he existence of occasional outliers does not defeat predominance of common issues of antitrust impact." *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 847 (D.N.J. 2015) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate.")).

The Court rejects Defendants' argument.  First, the "appropriate analysis" of Defendant's argument "begins with a recognition that defendants seeking to defeat class certification in horizontal price-fixing cases such as this one face an uphill battle," *In re Urethane Antitrust Litigation*, 251 F.R.D. at 635, because, as the Court just stated, proof of the conspiracy is a common question that predominates over the other issues of the case, 7AA Charles Alan Wright, *et al.*, Federal Practice & Procedure § 1781 (3d ed. 2005).

Second, with this recognition in mind, the Court concludes that common issues will dominate the issue of antitrust impact.  *See In re Urethane Antitrust Litigation*, 251 F.R.D. at 636.  The very nature of the alleged conspiracy implies common injury.  As the Tenth Court explained, the "prevailing view" is that "price-fixing **affects all market participants**, creating an **inference of class-wide impact**." *In re Urethane Antitrust Litigation*, 768 F.3d at 1254.  There is no reason to reject that inference in this case.  If Plaintiffs' antitrust allegations are true, it logically follows that Plaintiffs were injured from the artificially-suppressed wages.  *See id*. at 1255.  Moreover, Plaintiffs present record testimony by and the report of economist Dr. Kerr, who asserts that his analysis

demonstrates "harm to [Antitrust Class] members is common, and arises from [Defendants'] unitary course of conduct." (Doc. # 559 at 33–35). Accepting Plaintiffs' substantive allegations as true, *see Shook*, 386 F.3d at 968, the Court is not convinced otherwise by Defendants' four theories of common impact. (Doc. # 610 at 14–27.) For these reasons, the Court concludes that Plaintiffs' proposed Antitrust Class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

### b.   The RICO Class

To prove a RICO violation, a plaintiff must show that the defendant violated the RICO statute and that the plaintiff was injured "by reason of" of that violation. 18 U.S.C. §§ 1962, 1964(c). In the Tenth Circuit, a plaintiff's reliance on the purported RICO violation, "**as a means of establishing causation** and beyond, takes on uncommon gravity when it arises in the context of establishing predominance under Rule 23." *CGC Holding Co., LLC*, 773 F.3d at 1089 (emphasis added). Class certification "is proper when 'causation can be established through an inference of reliance where the behavior of plaintiffs and the members of the case cannot be explained in any way other than reliance upon the defendant's conduct.'" *Id*. at 1089–90 (quoting *In re Countryside Fin. Corp. Mortg. Mktg. & Sales Practices Litigation*, 277 F.R.F. 586, 503 (S.D. Cal. 2011)).

Plaintiffs claim that Defendants collectively "operated through patterns of racketeering activity," including "multiple fraudulent acts intended to deprive *au pairs* . . . of wages, including by using electronic communications, such as internet publications, and . . . by using materially false statements." (Doc. # 395 at 48.) Such conduct,

Plaintiffs allege, injured *au pairs* by causing them to "suffer loss of . . . wages." (*Id*. at

49.)  At the heart of their RICO claim is the question—**common to all** Plaintiffs and

potential class members—of whether Defendants "function[ed] together as one

enterprise" to expose potential *au pairs* to "generally uniform" misrepresentations about

wages through "advertisements, marketing materials, websites, and other 'generally

uniform' misrepresentations." (Doc. # 559 at 30.)  The Court concludes that this

common question may predominate over any individual questions about reliance or

damages.

The Court is not moved by Defendants' arguments that Plaintiffs' RICO Class

cannot be certified "because individual questions of injury, reliance, and

misrepresentation predominate." (Doc. # 610 at 27.)  Defendants first assert that

Plaintiffs "cannot prove with common evidence that all *au pairs* received an allegedly

'uniform' misrepresentation." (*Id*. at 28.)  They rely on the Second Circuit's position that

"each plaintiff must prove that he or she personally received a material

misrepresentation, and that his or her reliance on this misrepresentation was the

proximate cause of his or her loss" in order to recover for a defendant's fraudulent

conduct. (Doc. # 610 at 27–29) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247,

1253 (2d Cir. 2002)).  Defendants also selectively quote statements made by four

named Plaintiffs to contend that that "*au pairs* did not uniformly consider allegedly

deceptive materials," such as the advertisements contained in Plaintiffs' Complaint, *see*

(Doc. # 295 at 23–30). (Doc. # 610 at 27–29.)  However, Defendants did not cite, nor

could this Court find, authority applying the Second Circuit's *Moore* rule in this Circuit,

and the Court observes that other circuits have expressly rejected *Moore*. *See, e.g.*, *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 n.3 (9th Cir. 2006). With regard to Defendants' selective quotation of named Plaintiffs' statements, Defendants seem to have forgotten that the predominance inquiry does **not** require that **all** issues are identical. It requires only that "one or more of the central issues in the action are common to the class and can be said to predominate." *Tyson Foods, Inc.*, 136 S. Ct. at 1045. The quotations Defendants relied on, *see* (Doc. # 610 at 29) are, at this juncture, outweighed by the more numerous statements by named Plaintiffs presenting evidence of uniform misrepresentations. *See* (Doc. # 643 at 24.) The Court therefore rejects Defendants' first assertion that Plaintiffs do not provide common evidence that all *au pairs* received an allegedly uniform misrepresentation.

Second, Defendants assert that whether Plaintiffs were injured "by reason of" the alleged RICO violation is "an individualized inquiry that predominates." (Doc. # 610 at 30.) But as the Court stated above, the Tenth Circuit permits causation to be established "through an **inference of reliance** where the behavior of plaintiffs and the members of the class cannot be explained in any way other than reliance upon the defendant's conduct." *CGC Holding Co., LLC*, 773 F.3d at 1089–90 (emphasis added). Defendants attempt to argue that this inference is not appropriate because this case is not a "transactional situation," quoting the Tenth Circuit in *CGC Holding Co., LLC*, 773 F.3d at 1091 n.9, but Defendants fail to examine the entirety of the Tenth Circuit's opinion. In explaining when inference of reliance is appropriate, the Tenth Circuit relied

Case No. 1:14-cv-03074-CMA-KMT    Document 823    Filed 02/02/18    USDC Colorado    Page 25 of 38
Case 1:14-cv-03074-CMA-KMT    Document 823-1    Filed 02/02/18    USDC Colorado    Page 290 of 77
Appellate Case: 18-702    Document: 01019946958    Date Filed: 02/16/2018    Page: 64

on the "persuasive" logic of the Eleventh Circuit's decision in *Klay v. Humana, Inc.*, 382

F.3d 1241 (11th Cir. 2004):

> [T]he Eleventh Circuit in *Klay v. Humana* found that an inference of reliance was appropriate where "circumstantial evidence that can be used to show reliance is common to the whole class.  That is, the same considerations could lead a reasonable factfinder to conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' representations."  *Klay,* 382 F.3d at 1259.  *Klay* involved class claims brought by doctors against health maintenance organizations (HMOs), **alleging a conspiracy to systematically underpay** physicians on reimbursements for their services.  *Id.* at 1246.  To rebut the HMOs' claims that this inference was inappropriate, the court commented that **"[i]t does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due."**  *Id.* at 1259.

*CGC Holding Co., LLC*, 773 F.3d at 1090 (internal quotations and citations omitted).

The instant matter is analogous to *Klay* in that they both arise from a class action

brought by employees against their employers, alleging a conspiracy to systematically

underpay employees.  As in *Klay*, it "does not strain credulity" in this case to conclude

that Plaintiffs, in entering into contracts with Defendants, relied upon Defendants'

representations and assumed they would be paid the represented wages.  *Klay*, 382

F.3d at 1259.

For these reasons, the Court concludes that certification of the RICO Class is

appropriate under Rule 23(b)(3) because common questions predominate over any

individual issues and because an inference of reliance is warranted.

### c.    The State-Specific Training Classes

The three proposed state-specific (New Jersey, New York, and Florida) Training

Classes will represent *au pairs* allegedly required by certain Defendants to attend

Case No. 1:14-cv-03074-CMA-KMT · Document 823 · filed 02/02/18 · USDC Colorado · pg 26 of 65
Case 1:14-cv-03074-CMA-KMT Document 898-1 Filed 02/20/18 USDC Colorado Page 26 of 77
Appellate Case: 18-702     Document: 01019946958     Date Filed: 02/16/2018     Page: 65

unpaid training in one of these three states.  (Doc. # 559 at 3.)  The Training Classes

assert (1) state wage-and-hour law claims (Counts IX–XI); and (2) state law claims

"founded on fraud, misrepresentations, omissions, or deception" (Counts III–VI).  (*Id.* at

35.)

i.  <u>State wage-and-hour law claims of the Training Classes</u>

Plaintiffs clarify that the NJ, NY, and FL Training Classes bring state wage-and-

hour claims to "compensate *au pairs* for the days that they spent in unpaid,

standardized training."  (Doc. # 643 at 36–37.)  According to Plaintiffs, "[t]raining is work

that must be compensated under the law of each of those states."  (*Id.*)

The Court concludes that common issues predominate in the resolution of the

Training Classes' wage-and-hour claims.  Plaintiffs allege that named Defendants

"employ a standard training protocol" and do not pay *au pairs* for the required training

time.  (*Id.*)  Questions common to the Training Classes that bear on their claims, such

as whether the states' wage-and-hour laws require employees to be paid for training

time and, if so, the amount of class members' damages, will predominate.  Certification

of the Training Classes as to their wage-and-hour claims is therefore appropriate under

Rule 23(b)(3).

ii.  <u>State fraud and misrepresentation claims of the Training Classes</u>

With regard to the Training Classes' fraud-based claims, Plaintiffs explain that

their claims "accrued when their damages became complete—*i.e.*, when the *au pairs*

began working without pay in the mandatory training programs."  (*Id.* at 37.)  "The same

26

Case No. 1:14-cv-03074-CMA-KMT   Document 838   filed 02/02/18   USDC Colorado   pg 27 of 38
Case 1:14-cv-03074-CMA-KMT   Document 828   Filed 02/02/18   USDC Colorado   Page 27 of 38
of 77

Appellate Case: 18-702   Document: 01019946958   Date Filed: 02/16/2018   Page: 66

fraud," Plaintiffs contend, "foreseeably and directly caused all the subsequent harm, even though some of it occurred in another state." (*Id.*)

The Court is satisfied that common issues will be more prevalent than individual questions in adjudicating the Training Classes' fraud-based claims. All members of the proposed Training Classes were allegedly defrauded by the same misrepresentations of Defendants requiring the training programs, and all raise tort claims that accrued in the same state (New Jersey, New York, or Florida) under the same circumstance (required, unpaid training). The Training Classes are sufficiently cohesive as to their fraud-based claims as "to warrant adjudication by representation." *See Amchem Prod., Inc.,* 521 U.S. at 623.

Defendants characterize Plaintiffs' proposed Training Classes as "a wholly improper attempt to certify nationwide classes," in disregard of this Court's orders in *Avendano*, No. 14-cv-01614-CMA-MJW at (Doc. # 610-52), and *Pizza Hut, Inc.*, No. 09-2011 WL 2791331 at *1. (Doc. # 610 at 42.) In considering a motion for class certification of state wage-and-hour claims, this Court in *Pizza Hut* held that "a plaintiff does not have standing to allege claims on his own behalf under the laws of states where he has never lived or resided because he has not suffered an injury under those laws, nor is he protected by those laws." *Pizza Hut, Inc.*, 2011 WL 2791331 at *8. Applying that holding to this case, Defendants assert that because "[n]o named Plaintiff ever lived or resided in states where the training occurred," Plaintiffs "do not have standing to assert claims for *au pairs* who were placed with host families in states other than those which they [the named Plaintiffs] were placed." (Doc. # 610 at 42.)

Defendants argue that "Plaintiffs, like all of the putative class members, resided in their host family's state(s)," not New Jersey, New York, or Florida, and thus could only bring claims in their host family's states.  (*Id.*)

Defendants misunderstand this Court's reasoning in *Pizza Hut*.  Because the Pizza Hut plaintiff **had not worked**, lived, or resided in several states, the Court concluded that the plaintiff "ha[d] not suffered an injury under those laws, nor [was] he protected by those laws."  *Pizza Hut, Inc.*, 2011 WL 2791331 at *8.  That conclusion— that the plaintiff had no connection to a state—triggered this Court's holding.  *Id*. at *8– 9.  The case now before the Court is materially different.  Here, Plaintiffs of the Training Classes allegedly **did** work in a state (New Jersey, New York, or Florida) with wage- and-hour laws.  Plaintiffs of the Training Classes are therefore protected with New Jersey's, New York's, or Florida's labor laws and have standing to bring these claims.

### d.     The Defendant-and-State-Specific Subclasses

Finally, Plaintiffs seek to certify thirteen Defendant-and-State-Specific Subclasses:

1. An "Au Pair in America California Subclass"
2. An "Au Pair in America Illinois Subclass"
3. An "AuPairCare Michigan Subclass"
4. An "AuPairCare Pennsylvania Subclass"
5. A "Cultural Care Maryland Subclass"
6. A "Cultural Care Massachusetts Subclass"
7. A "Cultural Care Pennsylvania Subclass"
8. A "Cultural Care Texas Subclass"
9. A "Cultural Care Utah Subclass"
10. A "Cultural Care Virginia Subclass"
11. An "Expert Au Pair Colorado Subclass"
12. A "GoAuPair Maryland Subclass"
13. An "InterExchange Colorado Subclass"

(Doc. # 559-1 at 5–10.)  At least one named Plaintiff represents each proposed

subclass.  (*Id.*)  Each subclass asserts (1) state wage-and-hour claims; (2) state

misrepresentation and fraud claims; and (3) state consumer protection claims.  (Doc.

# 559 at 39.)

      i.      <u>State wage-and-hour claims</u>

The Defendant-and-State-Specific Subclasses' wage-and-hour claims assert that

each Defendant for whom Plaintiffs propose a subclass has a policy or practice to

consistently set *au pair* wages unlawfully low, in violation of state law.  (*Id.* at 39–40.)

Plaintiffs' claims are supported by specific factual allegations.  (*Id.* at 40–41.)  For

example, Plaintiffs allege that Defendant Cultural Care consistently advertises that all of

its *au pairs* earn the same weekly stipend, an allegation supported by transcripts of a

Cultural Care's employee's deposition and by exhibits.  (*Id.* at 40.)

The determination of whether a particular Defendant has such a policy or

practice of underpayment is common to each subclass's members and can be achieved

through generalized proof.  *See, e.g.*, *Pliego v. Los Arcos Mexican Rest., Inc.*, 313

F.R.D. 117, 126–27 (D. Colo. 2016) (finding that common issues of law and fact

predominated over individual issues where the plaintiffs alleged they were "subject to

the same alleged company-wide policies of non-payment of overtime premiums");

*Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 249 (W.D. Ark. 2010) (holding that

common issues predominated over individual questions in a class action brought by

guest workers employed on farms pursuant to H-2A temporary work visa, where the

plaintiffs alleged failure to pay a lawful hourly wage and overtime).

The Court is not persuaded by Defendants' argument that host families "solely control" the terms of *au pairs*' employment, including "the ultimate amount of . . . compensation."  (Doc. # 610 at 34–35.)  Defendants characterize host families as the "employer[s]-in-fact" for *au pairs* and rely on *Wal-Mart Stores, Inc.,* 564 U.S. at 355, to assert that a policy "of allowing discretion by local supervisors over employment matters . . . is just the opposite of a uniform employment practice that would provide the commonality needed for a class action."  (Doc. # 610 at 34–35.)  This Court already held that the employer(s)-employee relationship between Defendants, host families, and *au pairs* is a merits question common to all parties.  (Doc. # 258 at 19–21.)  Moreover, Defendants' reliance on *Wal-Mart* is inapposite.  The *Wal-Mart* plaintiffs alleged that local stores' supervisors had too **much** discretion, which enabled supervisors to discriminate against employees.  *Wal-Mart Stores, Inc.,* 564 U.S. at 343.  Here, Plaintiffs allege the opposite: uniformity of employment practices—*i.e.*, that host families did not have **any** discretion over *au pairs*' compensation.

ii.     State misrepresentation and fraud claims

Plaintiffs' common law misrepresentation and fraud claims all arise from the same alleged misrepresentations Defendants communicated to prospective *au pairs* and host families, just as Plaintiffs' RICO claim does.  *See* (Doc. # 395 at 106–09.)  For the reasons this Court previously analyzed in the predominance inquiry for Plaintiffs' proposed RICO Class, *see supra*, the Court is also satisfied that common issues predominate over individual questions in resolving Plaintiffs' Defendant-and-State-Specific Subclasses' misrepresentation and fraud claims.

iii.     State consumer protection claims

The proposed subclasses' state consumer protection claims arise from the

uniform misrepresentations Defendants allegedly made.  *See* (Doc. # 395 at 109–10.)

The same common issues relevant to Plaintiffs' RICO claim and state-law

misrepresentation claims will determine resolution of Plaintiffs' state consumer

protection claims.[7]

For the aforementioned reasons, the Court concludes that Plaintiffs' proposed

classes and subclasses[8] raise questions of law or fact common among class members

that predominate over any individual considerations.  Plaintiffs' proposed classes and

subclasses thus meet the first element of Rule 23(b)(3).

## 2.     **Superiority**

The second requirement for certification under Rule 23(b)(3) is that "a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule identifies four factors relevant to this

inquiry:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
> (D) the likely difficulties in managing a class action.

---

[7] Defendants do not raise a specific argument about the subclasses' state consumer protection
claims in their joint discussion of predominance.  *See* (Doc. # 610.)

[8] Because the Court already concluded that Plaintiffs' proposed nationwide State-Claim Class
fails to meet the prerequisites of Rule 23(a) and therefore cannot be certified, the Court need
not address it here.

*Id*. In the Tenth Circuit, these factors are non-exhaustive. *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 345 (10th Cir. 1973). Class treatment is superior in this jurisdiction if "it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results.'" *CGC Holding Co., LLC*, 773 F.3d at 1089 (quoting *Amchem*, 521 U.S. at 615).

Plaintiffs have satisfactorily demonstrated the superiority of class action. To the Court's knowledge, absent class members have not shown any interest in controlling the litigation of separate actions, and no other litigation regarding Plaintiffs' claims has been commenced. *See Pliego*, 313 F.R.D. at 127. Concentrating litigation of Plaintiffs' claims in a class action will avoid identical efforts across multiple suits in a number of state and federal courts. Class action is also the superior method for adjudicating this controversy "because it involves the relatively small claims of low-wage workers," some with limited English proficiency or currently living abroad, "and most of whom" were allegedly paid below the minimum wage. *Pliego*, 313 F.R.D. at 127 (holding that class action was superior to other vehicles where plaintiffs were current and former restaurant employees alleging violation of FLSA and the state minimum wage order.)

The Court also agrees with Plaintiffs that it is equipped to address any manageability challenges that may arise.[9] *See* (Doc. # 559 at 47.) Manageability is a critical concern in determining whether a class action is the superior means of adjudication, but "courts deny class certification on manageability grounds relatively

---

[9] The Court has and will continue to address challenges like identification and notification of class members as it adjudicates Plaintiffs' FLSA collective action. *See* (Doc. # 569.)

infrequently."  2 William B. Rubenstein, Newberg on Class Actions § 4:72 (5th ed. 2017).  Defendants' argument that differences in state law render this case unmanageable as a class action falls flat.  *See* (Doc. # 610 at 45–48.) First, Plaintiffs' proposed classes and subclasses turn on a single course of alleged conduct by Defendants.  Many factual and legal issues related to this course of conduct can be resolved collectively.  Second, courts routinely certify subclasses specific to different states' laws, as Plaintiffs observe, (Doc. # 643 at 35–36 (collecting cases)). *See, e.g.*, *In re Checking Account Overdraft Litigation*, 281 F.R.D. 667, 680 (S.D. Fla. 2012) (certifying thirteen subclasses to address minor variations in state law).

For these reasons, the Court concludes that class treatment of Plaintiffs' claims "will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results,'" *CGC Holding Co., LLC*, 773 F.3d at 1089 (quoting *Amchem*, 521 U.S. at 615), and is superior to other methods of adjudication.

Plaintiffs' proposed classes and subclasses satisfy both elements of Rule 23(b)(3) and are certified accordingly.  The Court need not reach Plaintiffs' alternative argument that certification is also warranted under Rule 23(b)(2).  *See* (Doc. # 559 at 48–49.)

## C.  APPOINTMENT OF CLASS COUNSEL AND ORDER FOR A JOINT PROPOSED NOTICE AND NOTICE PLAN

An order that certifies a class action must also appoint class counsel under Rule 23(g).  Fed. R. Civ. P. 23(c)(1)(B).  Rule 23(g) requires courts to consider the following in appointing class counsel:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs move the Court to appoint BSF and Towards Justice as co-class counsel.  (Doc. # 559 at 49–50.)  The Court agrees that BSF and Towards Justice have already put in a great deal of work into this action, have extensive experience in handling complex class action suits, are knowledgeable about relevant law, and have ample resources to vigorously advocate for Plaintiffs.  Additionally, the Court has already determined that BSF and Towards Justice will "fairly and adequately represent the interests of the class[es]."  *See supra*.  The Court therefore appoints BSF and Towards Justice co-class counsel in this matter.

The Court also grants Plaintiffs' request for an order regarding proposed notices and notice procedure, as described in the Conclusion below.  *See* (Doc. # 559 at 50.)

## IV.   CONCLUSION

For the reasons detailed above, the Court GRANTS IN PART Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel (Doc. # 559).  Having found the requirements of Rule 23(a) and Rule 23(b)(3) satisfied, the following proposed classes and subclasses, as defined below, are certified under Federal Rule of Civil Procedure 23:

i.   **Antitrust Class**: All persons sponsored by any Defendant to work as a standard *au pair* in the United States pursuant to a J-1 Visa.

ii.   **RICO Class**: All persons sponsored by Defendants Au Pair in America (American Institute for Foreign Study), AuPairCare, Inc., Cultural Care, Inc., or InterExchange, Inc. to work as a standard *au pair* in the United States pursuant to a J-1 Visa.

iii.   **Florida Training Subclass**: All persons subjected to unpaid standard *au pair* training by Defendant Expert Group International, Inc. in Florida.

iv.   **New York Training Subclass**: All persons subjected to unpaid standard *au pair* training by Defendants Au Pair in America (American Institute for Foreign Study), Cultural Care, Inc. or InterExchange, Inc. in New York.

v.   **New Jersey Training Subclass**: All persons subjected to unpaid standard *au pair* training by Defendant AuPairCare in New Jersey.

vi.   **Au Pair in America California Subclass**: All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study) to work as a standard *au pair* in the State of California pursuant to a J-1 Visa.

vii.   **Au Pair in America Illinois Subclass**: All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study) to work as a standard *au pair* in the State of Illinois pursuant to a J-1 Visa.

viii.   **AuPairCare Michigan Subclass**: All persons sponsored by Defendant AuPairCare, Inc. to work as a standard *au pair* in the State of Michigan pursuant to a J-1 Visa.

ix.    **AuPairCare Pennsylvania Subclass**: All persons sponsored by Defendant AuPairCare, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa.

x.    **Cultural Care Maryland Subclass**: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Maryland pursuant to a J-1 Visa.

xi.    **Cultural Care Massachusetts Subclass**: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Massachusetts pursuant to a J-1 Visa.

xii.    **Cultural Care Pennsylvania Subclass**: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa.

xiii.    **Cultural Care Texas Subclass**: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Texas pursuant to a J-1 Visa.

xiv.    **Cultural Care Utah Subclass**: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Utah pursuant to a J-1 Visa.

xv.    **Cultural Care Virginia Subclass**: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Virginia pursuant to a J-1 Visa.

xvi.   **Expert Au Pair Colorado Subclass**: All persons sponsored by Defendant

Expert Group International, Inc. to work as a standard *au pair* in the State of

Colorado pursuant to a J-1 Visa.

xvii.   **GoAuPair Maryland Subclass**: All persons sponsored by Defendant Associates

in Cultural Exchange (d/b/a GoAuPair) to work as a standard *au pair* in the State

of Maryland pursuant to a J-1 Visa.

xviii.   **InterExchange Colorado Subclass**: All persons sponsored by Defendant

InterExchange, Inc. to work as a standard *au pair* in the State of Colorado

pursuant to a J-1 Visa.

It is

FURTHER ORDERED that Plaintiffs' Motion for Rule 23 Class Certification and

Appointment of Class Counsel (Doc. # 559) is DENIED IN PART as to Plaintiffs'

proposed nationwide State-Claim Class.  It is

FURTHER ORDERED that Boies Schiller Flexner LLP and Towards Justice are

appointed co-class counsel.  It is

FURTHER ORDERED that the parties confer regarding class notice procedures.

The parties submit proposed notices and a proposed notification plan within ten (10)

days of this Order.  The parties are directed to reach agreement on as many issues as

possible and set forth their proposals and points of dispute in a concise joint filing.

DATED:  February 2, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge