**18-_____**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

## JOHANA PAOLA BELTRAN, *et al.*,

*Plaintiffs-Respondents*,

v.

## AMERICAN CULTURAL EXCHANGE, LLC,
## D/B/A GO AU PAIR AND GO AU PAIR OPERATIONS, LLC,

*Defendants-Petitioners*,

On petition from the United States District Court
for the District of Colorado
No.: 1:14-CV-03074-CMA-KMT

---

**Petitioners American Cultural Exchange, LLC d/b/a Go Au Pair and
Go Au Pair Operations LLC
Petition for Permission to Appeal
Under Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5**

---

WHEELER TRIGG O'DONNELL LLP
Kathryn A. Reilly
Theresa R. Wardon
370 Seventeenth Street, Suite 4500
Denver, Colorado  80202
Phone:   303.244.1800
Fax:       303.244.1879
Email:    reilly@wtotrial.com
             wardon@wtotrial.com

*Attorneys for Petitioners American Cultural Exchange, LLC d/b/a Go Au Pair and Go Au Pair Operations LLC*

## CORPORATE DISCLOSURE STATEMENT

Petitioners-Defendants American Cultural Exchange, LLC d/b/a Go Au Pair and Go Au Pair Operations LLC (together, "Go Au Pair") do not have parent corporations or have publicly held corporations owning 10% or more of their stock.


Dated: February 16, 2018             *s/ Theresa R. Wardon*
                                     Theresa R. Wardon

# CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................1

INTRODUCTION ................................................................................................1

RELIEF REQUESTED .........................................................................................3

QUESTION PRESENTED ....................................................................................3

BACKGROUND ...................................................................................................4

I.      AU PAIRS' WEEKLY STIPEND AND HOURS ARE
DETERMINED BY HOST FAMILIES—NOT GO AU PAIR—AND
VARY WIDELY ..........................................................................................4

II.    THE DISTRICT COURT'S CERTIFICATION OF A NATIONWIDE
ANTITRUST AND MARYLAND STATE LAW CLASS AGAINST
GO AU PAIR...............................................................................................7

REASONS FOR GRANTING THE PETITION.....................................................8

I.      LEGAL STANDARD ..................................................................................8

II.    THE DISTRICT COURT'S PREDOMINANCE FINDING WAS
MANIFESTLY ERRONEOUS BECAUSE IT IMPERMISSIBLY
RELIED ON PLAINTIFFS' ALLEGATIONS AND
DISREGARDED GO AU PAIR'S CONTRARY EVIDENCE ....................8

CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................... passim

*Eisen v. Carlisle & Jaquelin*, 417 U.S. 156 (1974) .................................................10

*Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147 (1982).........................................9

*J.B. ex rel Hart v. Valdez*, 186 F.3d 1288 (10th Cir. 1999).....................................10

*Shook v. El Paso Cnty.*, 386 F.3d 963 (10th Cir. 2004)............................... 9, 10, 11

*Vallario v. Vandehey*, 554 F.3d 1259 (10th Cir. 2009) .............................................8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).................................... passim

## STATUTES

Md. Code Ann., Lab. & Empl. § 3-413 ........................................................... 14, 15

Md. Code Ann., Lab. & Empl. § 3-415 ...................................................................14

Md. Code Ann., Lab. & Empl. § 3-420 ...................................................................14

Md. Code Ann., Lab. & Empl. § 3-427 ...................................................................14

## RULES

Federal Rule of Civil Procedure 23 ................................................................. passim

## REGULATIONS

22 C.F.R. § 62.31(j) .....................................................................................................4

# INTRODUCTION

Petitioners-Defendants American Cultural Exchange, LLC d/b/a Go Au Pair and Go Au Pair Operations LLC (together, "Go Au Pair") petition for permission to appeal the district court's February 2, 2018 order certifying for trial a nationwide antitrust class and a Maryland subclass against Go Au Pair ( the "Order"), because the Order was the result of manifest error.[1] Go Au Pair joins the petition filed by all Defendants (the "Joint Petition"), but files this separate petition to assert grounds for review that are unique to Go Au Pair and that provide further justification for review of all the certified classes, or alternatively, review of the classes certified against Go Au Pair.

Plaintiffs have not shown through evidence that any claim against Go Au Pair is susceptible to classwide adjudication. They won class certification based  on a single, fatally-flawed argument: certification is appropriate because each Defendant supposedly engaged in the same alleged conduct—"setting" au pairs' weekly stipend at $195.75 and representing it to be a "fixed" amount—as to each putative class member. Plaintiffs, followed by the district court in its Order, then infer that all au pairs were equally and uniformly impacted by this alleged conduct

---

[1] Order Granting in Part and Denying in Part Pls.' Mot. for Rule 23 Class Certification and Appointment of Class Counsel ("Order"), ECF. No. 828, attached as Exhibit 1.

because (most) au pairs received (about) $195.75 per week for (an assumed) 45 hours of work.

This assumption, which is the crux of the Order, is based on Plaintiffs' allegations, not evidence. And the evidence—proffered by Go Au Pair, and ignored by the district court—shows the opposite: (1) Go Au Pair told host families and au pairs that $195.75 was the *minimum* stipend required by the Department of State; (2) it required host families to determine and specify the amount of the au pairs' stipends and their schedules in their placement offers (which terms au pairs were free to accept or reject); and (3) host families did, in fact, agree to pay au pairs different weekly stipends for different hours of work. As a result, proving Go Au Pair's liability for each claim and as to each au pair requires individual inquiries that will overwhelm any trial on the merits. Certification should have been denied as to each of the classes Plaintiffs sought to certify against Go Au Pair.

To overcome this individualized evidence, Plaintiffs did not rely on evidence of their own, but instead their factual allegations. And the district court allowed them to do just that, repeatedly relying on Plaintiffs' "allegations" and ignoring Defendants', but particularly Go Au Pair's, contrary evidence. Rule 23, as interpreted by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), and *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), is not the "pleading standard"

that the district court allowed it to become. Accordingly, the district court's application of the wrong legal standard to allow certification of classes against Go Au Pair is manifest error, requiring this Court's immediate review.

## RELIEF REQUESTED

Go Au Pair respectfully requests permission to appeal the district court's class certification order, entered February 2, 2018. If permission is granted, Go Au Pair will argue that this Court should reverse the district court's order certifying a nationwide antitrust class and a Maryland state subclass[2] against Go Au Pair. Go Au Pair also respectfully requests an opportunity to fully brief and argue the issues raised here should this Court grant the petition.

## QUESTION PRESENTED

Whether the district court, in finding predominance was satisfied, impermissibly relied on Plaintiffs' allegations, rather than requiring them to marshal supporting evidence as required by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), and *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)?

---

[2] The Order certifies a Maryland subclass for "[a]ll persons sponsored by Defendant Associates in Cultural Exchange (d/b/a GoAuPair)," Order at 37, presumably meaning Petitioner American Cultural Exchange, LLC d/b/a Go Au Pair, because Associates in Cultural Exchange is not a Go Au Pair entity and has been dismissed from the case.

# BACKGROUND

Go Au Pair incorporates the "Statement of the Case" set forth in the Joint Petition and thus limits this section to facts necessary to understand the district court's manifestly erroneous failure to consider Go Au Pair's evidence showing that individual issues predominate, thus precluding certification of Plaintiffs' nationwide antitrust and Maryland subclass against Go Au Pair.

## I.    Au Pairs' Weekly Stipend And Hours Are Determined By Host Families—Not Go Au Pair—And Vary Widely

Contrary to Plaintiffs' central allegations of uniformity, Go Au Pair does not "fix" the weekly stipend at $195.75 and not all au pairs work 45 hours per week. (*See* Pls.' Mot. for Rule 23 Class Certification & Appointment of Class Counsel ("Pls.' Mot.") at 4-5, ECF No. 559.) Rather, Go Au Pair's policy (pursuant to its regulatory obligations) is to communicate, and ensure compliance with, the stipend and hour requirements established by the Department of State ("DOS")—a *minimum* weekly stipend of $195.75 in exchange for which au pairs may provide childcare for a *maximum* of 45 hours per week. *See* 22 C.F.R. § 62.31(j).[3] Beyond

---

[3] In 2009, when the federal minimum wage increased, DOS advised Go Au Pair that the weekly minimum rate was now $195.75. (Decl. of Bill Kapler in Supp. of Go Au Pair's Opp'n to Pls.' Mot. for Class Certification ("Kapler Decl."),¶ 3 & Ex. 1, ECF No. 601-1, attached as Exhibit 3.)

that, the host family has discretion to determine the au pair's stipend and hours. (Kapler Decl., ¶¶ 5-7, 10, ECF No. 601-1.)[4]

Go Au Pair unequivocally communicates this fact to every host family and au pair. Go Au Pair's standard contracts with both the host family and the au pair, as well as the contract between the host family and au pair ("HF-AP Agreement"), clarify that $195.75 is a mandatory *minimum*, not a "fixed" amount. (*Id.*, ¶ 4-7 & Exs. 2-3, 5, ECF No. 601-1.) Each also states that an au pair may work a *maximum* of 45 hours a week. (*Id.*) The HF-AP Agreement even provides blank spaces for the host family to fill in the anticipated work schedule and the amount of the stipend they choose to pay:

**Work Schedule**

| | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|------|--------|--------|---------|-----------|----------|--------|----------|
| From | | | | | | | |
| To | | | | | | | |
| From | | | | | | | |
| To | | | | | | | |

I/we hereby agree that the Au Pair will not provide more than forty-five (45) hours per week, and no more than ten (10) hours per day, of childcare services for us. I/we also agree to provide at least 1.5 consecutive days off per week and one full weekend off per month, starting Friday evening and ending Monday morning.

\*\*\*

---

[4] Go Au Pair's Opposition to Plaintiffs' Motion for Class Certification ("Opposition"), ECF No. 601, is attached as Exhibit 2. Mr. Kapler's declaration and Exhibits 1-8 to his declaration, ECF Nos. 601-1 and 601-2 and Exhibit A to the Opposition, are attached as Exhibit 3. Ms. West's declaration, ECF No. 601-4 and Exhibit B to the Opposition, is attached as Exhibit 4. Deposition excerpts, ECF Nos. 601-5 and 601-6 and Exhibit C to the Opposition, are attached as Exhibit 5. A deposition exhibit, ECF No. 601-7 and Exhibit D to the Opposition, is attached as Exhibit 6.

**Compensation**

The Host Family agrees to pay the Au Pair pocket money in the amount of $_____ (minimum of $195.75, subject to The Department of State regulations and the Department of Labor) per week. The stipend will be paid every _____.

(*See id.*, Ex. 4, ECF No. 601-1; *accord id.*, Ex. 6, ECF No. 601-2.) Plaintiff

Gonzalez signed these agreements. (*Id.*, Exs. 2, 5, ECF No. 601-1.)

Consistent with this practice, evidence shows that Go Au Pair-sponsored au

pairs received different weekly stipends and worked varying hours. (Kapler Decl.,

¶¶ 12-13, ECF No. 601-1.) An analysis of HF-AP Agreements from 2010 to 2015

shows that:

- Host families agreed to pay over 60 different weekly stipend amounts;

- 58% of host families agreed to a weekly stipend above $195.75;

- Over 11% of host families agreed to a weekly stipend above $200;

- 53% of au pairs were scheduled to work under 45 hours per week; and

- 34% of au pairs were scheduled to work under 40 hours per week.

(*Id.*) Even the stipend survey on which Plaintiffs relied to show "uniformity"

actually shows similar variation—20% of the relevant responding Go Au Pair host

families said they paid their au pairs over $200 per week. (*See* Decl. of Natalie

West, ¶ 6, ECF No. 601-4, attached as Exhibit 4.)

Moreover, an au pair's hours and stipend may vary during her placement.

Just six weeks into her placement, Plaintiff Gonzalez told Go Au Pair that she

worked an average of 40 hours a week, while she now claims she worked 45 hours

every week. (*Compare* Dep. of Ivette Alexandra Gonzalez ("Gonzalez Dep.")
118:24-119:19, ECF No. 601-6, attached as Exhibit 5 *and* Dep. Ex. 109, ECF No.
601-7, attached as Exhibit 6), *with* Rodriguez Decl., Ex. 116 ¶ 8, ECF No. 560-30.)
Plaintiff Gonzalez also testified there were several weeks when she worked over
45 hours, but on at least one occasion her host family gave her an additional $20.
(Gonzalez Dep. 74:11-76:9, 109:9-110:25, 116:20-118:4, ECF No. 601-5 & ECF
No. 601-6.) She admits, however, that she has no documentation of the hours she
worked. (*Id.* 111:1-11, ECF No. 601-6.)

## II.   The District Court's Certification of a Nationwide Antitrust and Maryland State Law Class Against Go Au Pair

Plaintiffs sought certification of the following classes against various
sponsor defendants: a national antitrust class, a national RICO class, several
sponsor-specific and state-specific state law classes, a nationwide class asserting
state law wage claims, and a national class on behalf of au pairs who allegedly
were not paid for their attendance at au pair training. (Pls.' Mot. at 3, ECF No.
559.) As against Go Au Pair, Plaintiffs sought certification of a national antitrust
Class, a nationwide class asserting state-law claims, and a sponsor-specific and
state-specific state law class(the "Maryland Class"), which included numerous
state law claims, such as wage-and-hour, fraud, and breach of fiduciary duty. With
one exception, the district court certified all of the classes sought by Plaintiffs. In
so doing, the district court ignored Go Au Pair's record evidence, which

necessarily would have required individualized determinations that defeat predominance, and instead relied solely on Plaintiffs' allegations in concluding that Plaintiffs satisfied Rule 23(b)(3)'s predominance prong.

## REASONS FOR GRANTING THE PETITION

### I.   Legal Standard

This Court has "unfettered" discretion to grant review of a class certification order based on any consideration that it finds persuasive. *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009) (citations omitted). No rigid test governs this Court's discretion to grant a petition, but this Court has traditionally done so in three circumstances, one of which is present here. That is where a decision is "manifestly erroneous" and reversal will spare "the parties from a long and costly trial that is potentially for naught." *Id.* at 1263–64 (citations omitted). In concluding that the predominance prong was satisfied based on Plaintiffs' allegations, rather than evidence, the district court applied the wrong legal standard. This manifest error requires this Court's immediate review.

### II.   The District Court's Predominance Finding Was Manifestly Erroneous Because It Impermissibly Relied on Plaintiffs' Allegations and Disregarded Go Au Pair's Contrary Evidence

Review is necessary because the district court applied the wrong standard in determining that Plaintiffs' proposed classes meet the Rule 23(b)(3) predominance standard. Rather than require Plaintiffs to "affirmatively demonstrate [their] compliance with Rule 23," *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*, 564 U.S.

at 350), and "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)," *id.* at 33, the district court simply accepted "plaintiff's substantive allegations as true." Order at 6 (citing *Shook v. El Paso Cnty.*, 386 F.3d 963 (10th Cir. 2004)); *see also id.* at 22 (accepting Plaintiffs' substantive allegations as true for purposes of finding predominance met in antitrust class); *id.* at 29 (relying on Plaintiffs' "factual allegations" in finding predominance was met for state wage-and-hour claims).[5]

Courts, including the Tenth Circuit, have long accepted that determining whether Rule 23 is met requires a "rigorous analysis." *Shook*, 386 F.3d at 968 (citing *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 161 (1982)). But many courts, including the Tenth Circuit in *Shook*, previously held that when conducting

---

[5] As further proof that the district court applied the wrong standard, the Order stated that "[i]n doubtful cases, class certification is favored." Order at 7 (citing *Esplin v. Hirschi*, 402 F. 2d 94, 101 (10th Cir. 1968); *Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 218 (D.N.M. 2016)). *Esplin*, however, was decided decades before *Wal-Mart* and *Comcast* (and *Abraham* does nothing more than cite *Esplin*). More to the point, this proposition cannot be squared with *Wal-Mart* and *Comcast*, both of which require a plaintiff to *prove* entitlement to Rule 23 certification with *evidence. Comcast*, 569 U.S. at 33; *Wal-Mart*, 564 U.S. at 350 (Rule 23 "does not set forth a mere pleading standard"). Indeed, *Comcast* noted that "Rule 23(b)(3), [i]s an 'adventuresome innovation,' '[] designed for situations' 'in which 'class-action treatment is not as clearly called for.'" *Comcast*, 569 U.S. at 34 (quoting *Wal-Mart*, 564 U.S. at 362). Accordingly, this "innovation" must be accompanied by "procedural safeguards," including a court's "duty to take a 'close look' at whether common questions predominate over individual ones." *Id.* (citation omitted.) Favoring class certification in "doubtful cases" does not comport with this procedural safeguard.

this "rigorous analysis," "the court must accept the substantive allegations of the complaint as true." *Id.* (citing *J.B. ex rel Hart v. Valdez*, 186 F.3d 1288, 1290 n.7 (10th Cir. 1999) and *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 178 (1974)). To be sure, *Shook* acknowledged that a court "need not blindly rely on conclusory allegations which parrot Rule 23," and "may consider the legal and factual issues presented by plaintiff's complaints." *Id.* (citing *J.B.*, 186 F.3d at 1290 n. 7). The focus, however, remained on a plaintiff's *allegations*, and not the *evidence* marshalled in support. Indeed, some courts considered venturing into evidence an impermissible look at the merits. *See Shook*, 386 F.3d at 971 (quoting *Eisen*, 417 U.S. at 177 ("[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.")).

That changed in 2011 when the Supreme Court, in *Wal-Mart*, held that Rule 23 "does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. 350. To meet the burden for Rule 23 certification, a plaintiff must be "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Id.* at 350 (emphasis in original). And *Comcast* ensured that a plaintiff's evidentiary burden did not end when he or she crossed the Rule 23(a) finish line, but required that a plaintiff "must also satisfy *through evidentiary proof*

at least one of the provisions of Rule 23(b)." *Comcast*, 569 U.S. at 33 (emphasis added). If this standard requires a district court to delve into the merits, so be it, *Wal-Mart* held. 564 U.S. at 351 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

After *Wal-Mart* and *Comcast*, there is no doubt that a plaintiff cannot achieve Rule 23 certification on allegations, but must instead put forth evidence. But here, the district court, in certifying Plaintiffs' class claims, did not mention *Comcast* at all, and referenced *Wal-Mart* only for its definition of commonality, not the legal standard by which to assess compliance with Rule 23. Order at 9, 30. Instead, the district court relied on *Shook*—repeatedly stating that the court could (and did) accept Plaintiffs' "substantive allegations" as true. *Id.* at 6, 22. This application of the wrong legal standard was manifestly erroneous.

Further underscoring this error is that *Shook* relied in large part on the Supreme Court's decision in *Eisen* as support for its conclusion that courts should stick to the allegations when deciding Rule 23 certification. *Shook*, 386 F.3d at 968. *Wal-Mart*, however, not only held that district courts could delve into the merits, but specifically disavowed such a reading of *Eisen*, stating that *Eisen* is mistakenly cited to support the notion that a district court may not delve beyond the pleadings or otherwise get into the merits when determining whether a class

satisfies Rule 23. *Wal-Mart*, 564 U.S. at 352 n.6. The language frequently cited, the Court said, is pure dicta. *Id.*

Moreover, here, not only did the district court repeatedly accept Plaintiffs' allegations as true, thereby relieving Plaintiffs of their obligation to satisfy Rule 23 with *evidence*, the district court *ignored* both Go Au Pair's contrary evidence and Plaintiffs' own survey results. For instance, in finding individual issues did not predominate when certifying the antitrust claim, the district court accepted Plaintiffs' allegations of conspiracy and common impact as true. Order at 22. The district court did so even though those allegations are contrary to Go Au Pair's *evidence*, which is that *all* of Go Au Pair's contracts with au pairs and host families show that Go Au Pair specified that $195.75 is the DOS-required *minimum* (not a "fixed" amount). (Background § I, *supra*.) The HF-AP Agreement, in fact, required host families to write in the stipend amount they were going to pay, thereby giving host families discretion to pay more than the minimum. (*Id.*) Tellingly, *more than half* of Go Au Pair-sponsored au pairs received *more* than $195.75 per week, and a statistically-significant percentage (over 11%) received over $200 per week. (*Id.*) Similarly, even Plaintiffs' survey shows that 20% of the responding Go Au Pair host families paid their au pairs more than $200 per week. In other words, Plaintiffs' assumption—adopted by the district court—that all

putative class members received the same "fixed" stipend of $195.75 is refuted by all available evidence.[6]

The same manifest error infected the district court's finding of predominance on Plaintiffs' state law misrepresentation and fraud claims. Order at 30-31 (finding predominance satisfied for the same reasons as RICO claim). Once again, the district court relied on Plaintiffs' "*claim* that Defendant collectively 'operated through patterns of racketeering activity,' including 'multiple fraudulent acts . . . and . . . by using materially false statements,'" Order at 22 (emphasis added), and allegations that Defendants exposed au pairs to "generally uniform" misrepresentations about wages, *id.* at 23. The court ignored or discounted Go Au Pair's refuting evidence, discussed above (Background, § I, *supra*), which showed that individual inquiries would be required to resolve these claims, thus defeating predominance.

Likewise, in certifying state law wage claims, the district court held that "each Defendant for whom Plaintiffs propose a subclass has a policy or practice to consistently set au pair wages unlawfully low, in violation of state law." Order at

---

[6] This evidence similarly refutes any assumption that Go Au Pair uniformly misrepresented—and that all au pairs understood—the weekly stipend to be a "fixed" $195.75. (*See* Gonzalez Dep. 51:16-52:17; *id.* at 116:9-19, ECF Nos. 601-5 & 601-6 (admitting that she understood she would be paid "at least $195.75 a week" and that her host family chose to pay her $200).) Rather, the evidence shows that the only representation all au pairs definitively received from Go Au Pair is that the $195.75 is a *minimum* amount.

29. But that conclusion is belied by Go Au Pair's evidence. As described above, there was not a uniform "policy or practice," but instead, Go Au Pair informed host families of the DOS-required minimum amount and allowed host families to fill in the amount of the stipend. (*Id*.) Moreover, liability under Maryland's wage laws does not—and cannot—"turn entirely" on Go Au Pair's alleged wrongful conduct as the district court's order allows. Rather, Plaintiffs must prove that each Go Au Pair-sponsored au pair received less than Maryland's minimum wage and worked more than 40 hours in any given week. *See* Md. Code Ann., Lab. & Empl. §§ 3-413, 3-415, 3-420, 3-427 (West 2014). Because each au pair's stipend and schedule is determined by—and, in fact, varied with—each host family, individual issues will necessarily overwhelm adjudication of these claims.

Take Plaintiffs' overtime claims. To establish injury, each au pair must show that she worked more than 40 hours without overtime pay. *Id.* § 3-415, 3-420. Plaintiffs offer no classwide evidence from which this determination can be made, and the available evidence indicates that at least *a third of the class* never worked more than 40 hours in a week. (Background, § 1, *supra*.) Further, absent standardized records documenting hours—which Go Au Pair is not required to and does not keep—*proof* that each au pair worked over 40 hours a week will require highly-individualized evidence from each au pair. And because few au pairs or host families recorded hours, this proof will likely turn entirely on the oral

14

testimony of the au pair and any conflicting evidence. Plaintiff Gonzalez's own experience exemplifies the need for such mini-trials, as her own testimony is internally inconsistent. (*Id.*) Thus, determining Go Au Pair's liability for Plaintiffs' overtime claim will devolve into thousands of mini-trials, rendering class treatment inappropriate.[7] The district court ignored this evidence, however, and accepted Plaintiffs' unsubstantiated allegations instead.

In sum, the district court did not undertake the "rigorous analysis" required before finding predominance satisfied. It did not make Plaintiffs meet their required burden to prove compliance with Rule 23(b)(3) with *evidence*, relying instead on Plaintiffs' allegations. It did so even when those allegations were refuted by Go Au Pair's evidence and Plaintiffs' own survey results. This constitutes manifest error and requires this Court's immediate review.

## CONCLUSION

For these reasons, Go Au Pair respectfully requests permission to appeal the district court's class certification order.

---

[7] Plaintiffs' minimum-wage claim presented a similar problem. Whether an au pair received a rate below Maryland's minimum wage can only be determined by looking at the actual stipend (and other compensation) received *and* the actual number of hours worked. An exception to Maryland's minimum-wage law, which allows employers to pay employees under 20 years old a rate of 85% of the minimum wage for the first six months, further complicates this inquiry. Md. Code Ann., Lab. & Empl. § 3-413(d)(1). The district court did not undertake this analysis at all.

Dated:  February 16, 2018                    Respectfully submitted,


                                             *s/ Theresa R. Wardon*
                                             Kathryn A. Reilly
                                             Theresa R. Wardon
                                             Wheeler Trigg O'Donnell LLP
                                             370 Seventeenth Street, Suite 4500
                                             Denver, CO  80202-5647
                                             Telephone:303.244.1800
                                             Facsimile:  303.244.1879
                                             Email:  reilly@wtotrial.com
                                                         wardon@wtotrial.com

                                             *Attorneys for American Cultural*
                                             *Exchange, LLC d/b/a Go Au Pair and Go*
                                             *Au Pair Operations LLC*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This document complies with Fed. R. App. P. 5(c)(1) because, excluding the

parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,664 words.

This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and 10th Cir. R. 32(a), and the type-style requirements of Fed. R. App. P.

32(a)(6) because it has been prepared in a proportionally spaced typeface using

Microsoft Word in 14-point Times New Roman font.

Dated: February 16, 2018                    *s/ Theresa R. Warson*
                                            Theresa R. Wardon

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1.      All required privacy redactions have been made per 10th Cir. R. 25.5;

2.      If required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3.      The digital submissions have been scanned for viruses with the Microsoft System Center Endpoint Protection, Version 1.261.1278.0, Virus Definition File updated on February 16, 2018, and according to the program, is free of viruses.

*s/ Theresa R. Wardon*
Theresa R. Wardon

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned does hereby certify pursuant to Fed.R.App.P. 25 that on this 16th day of February, 2018, a true and correct copy of the foregoing Petitioners' Petition for Permission to Appeal Under Fed.R.Civ.P. 23(f) and Fed. R. App. P. 5 was served via the ECF Court filing system or email to:

Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua Libling
Juan P. Valdivieso
Byron Pacheco
BOIES SCHILLER & FLEXNER, LLP
llouis@bsfllp.com
smccawley@bsfllp.com
smcelroy@bsfllp.com
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
srogriguez@bsfllp.com
jlibling@bsfllp.com
jvaldivieso@bsfllp.com
bpacheco@bsfllp.com

*and*

Alexander N. Hood
TOWARDS JUSTICE – DENVER
alex@towardsjustice.org
*Attorneys for Plaintiffs*

Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
Joseph H. Hunt
Alyssa L. Levy
SHERMAN & HOWARD, LLC
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com
jhunt@shermanhoward.com
alevy@shermanhoward.com

*Attorneys for Defendant InterExchange, Inc.*

William J. Kelly, III
Chanda M. Feldkamp
KELLY & WALKER, LLC
wkelly@kellywalkerlaw.com
cfeldkamp@kellywalkerlaw.com

*Attorneys for Defendant USAuPair, Inc.*

Meshach Y. Rhoades
Martin J. Estevao
Vance Orlando Knapp
ARMSTRONG TEASDALE, LLP
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
vknapp@armstrongteasdale.com

*Attorneys for Defendant GreatAuPair, LLC*

Bogdan Enica
BOGDAN ENICA, ATTORNEY AT LAW
bogdane@hotmail.com

*Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair*

David B. Meschke
Martha L. Fitzgerald
BROWNSTEIN HYATT FARBER SCHRECK, LLP
dmeschke@bhfs.com
mfitzgerald@bhfs.com

*Attorneys for Defendant EurAupair InterCultural Child Care Programs*

James E. Hartley
Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART, LLP
jhartley@hollandhart.com
aahubbard@hollandhart.com
jsbender@hollandhart.com

*Attorneys for Defendant Cultural Homestay International*

Lawrence L. Lee
Susan M. Schaecher
FISHER & PHILLIPS, LLP
llee@laborlawyers.com
sschaecher@laborlawyers.com

*and*

John B. Fulfree
Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
PUTNEY, TWOMBLY, HALL & HIRSON, LLP
jfulfree@putneylaw.com
jcartafalsa@putneylaw.com, jbc54@cornell.edu
rtucker@putneylaw.com, robert.m.tucker1@gmail.com
smacri@putneylaw.com

*Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation;
American Institute for Foreign Study d/b/a Au Pair in America*

Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
estock@gibsondunn.com
mao@gibsondunn.com

*Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America*

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
lstone@nixonshefrin.com
kcraigmile@nixonshefrin.com

*Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair; 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange*

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
Kevin P. O'Keefe
CHOATE, HALL & STEWART, LLP
joan.lukey@choate.com
rbuchanan@choate.com
mgass@choate.com
jwolosz@choate.com
lkruzer@choate.com
kokeefe@choate.com

*and*

Diane R. Hazel
James M. Lyons
Jessica L. Fuller
LEWIS ROCA ROTHGERBER CHRISTIE LLP
dhazel@lrrc.com
jlyons@lrrc.com
jfuller@lrrc.com

*Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair*

Thomas B. Quinn
Peggy E. Kozal
Nathan A. Huey
Jennifer Arnett-Roehrich
GORDON & REES LLP
tquinn@grsm.com
pkozal@grsm.com
nhuey@grsm.com
jarnett-roehrich@grsm.com

*Attorneys for Defendant-Petitioner AuPairCare, Inc.*


       *s/ Theresa R. Wardon*
       Theresa R. Wardon