**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

    Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

    Defendants.

---

**PLAINTIFFS' MOTION TO COMPEL AND FOR RELIEF UNDER FEDERAL RULES**
**OF CIVIL PROCEDURE 26 AND 37**

---

Due to the case schedule[1] and Defendants' contentions that Judge Tafoya's order, currently before this Court on Plaintiffs' Objection (ECF No. 771) controls the outcome of this dispute, Plaintiffs respectfully request that it be entertained by Judge Arguello in the first instance.  To that end, Plaintiffs are simultaneously filing a motion seeking (1) a hearing forthwith and (2) relief from the discovery-reference order, ECF Nos. 44, 143.

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO. LCivR. 7.1(A)

Pursuant to D.C. Colo. LCivR. 7.1(a), Plaintiffs conferred with counsel for Cultural Care regarding Cultural Care's claim to privilege at the deposition of nonparty Ilir Zherka

---

[1]     The summary judgment phase begins with opening briefs due on February 16. ECF No. 687.  Plaintiffs will be prejudiced if they cannot use the documents and information at issue in their summary judgment oppositions.

on January 29, 2018, and thereafter by email.  Valdivieso Decl. Ex. (hereafter "Ex.") 23.

On February 1, 2018, counsel for Plaintiffs and Cultural Care, Expert Au Pair, and

GoAuPair, called Magistrate Judge Tafoya's chambers to schedule an informal

discovery conference to resolve this issue, among others.  Magistrate Judge Tafoya's

chambers set an informal discovery conference for February 12, 2018 as a placeholder,

pending Plaintiffs' motion.  ECF No. 826.  On Tuesday, February 6, Cultural Care

clawed back additional versions of the documents and information at issue in this

motion.  Ex. 24.  On February 7, the parties confirmed that meet and confer efforts were

concluded as to both the January 29, 2018 clawback and a further clawback concerning

the same information on February 6.  Ex. 25

*               *               *

# TABLE OF CONTENTS

CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO. LCivR. 7.1(A) .............. 1

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 5

    I.      FIRST DOCUMENT ................................................................................ 5

    II.     SECOND DOCUMENT .......................................................................... 6

LEGAL STANDARD ...................................................................................................... 7

ARGUMENT .................................................................................................................. 8

    I.      THE ZHERKA DOCUMENTS ARE NOT ATTORNEY WORK
         PRODUCT ........................................................................................... 8

        A.      The Attorney Work Product Doctrine................................................. 8

        B.      A Non-Representative Non-Party Cannot Create Work
            Product.............................................................................................. 9

        C.      Plaintiffs' Substantial Need Overcomes Work Product Claim ....... 11

    II.     THE ATTORNEY CLIENT PRIVILEGE DOES NOT APPLY ................... 11

    III.    ANY COCIEVABLE PRIVILEGE OR PROTECTION HAS BEEN
         WAIVED.............................................................................................. 12

        A.      Defendants And The Alliance Waived Any Privilege Or
            Protection Through Third-Party Disclosure. .................................. 13

        B.      Defendants Also Waived Protection Through Litigation
            Conduct.......................................................................................... 14

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Arkansas River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*,
     No. 14-CV-00638-CMA-NYW, 2015 WL 4031846 (D. Colo. June 30, 2015) .......... 14

*Bautista v. MVT Servs.*, LLC,
     No. 16-CV-01086-NYW, 2017 WL 2082925 (D. Colo. Mar. 20, 2017) .................... 15

*Bohannon v. Honda Motor Co.*,
     127 F.R.D. 536 (D. Kan. 1989) ................................................................................ 10

*Burton v. R.J. Reynolds Tobacco Co.*,
     170 F.R.D. 481 (D. Kan. 1997) ......................................................................... 10, 12

*Certain Underwriters at Lloyd's London v. Natl. R.R. Passenger Corp.*,
     14-cv-4717(FB), 2016 WL 6875968 (E.D.N.Y. Nov. 17, 2016) ............................... 14

*Everitt v. Brezzel*,
     750 F. Supp. 1063 (D. Colo. 1990) ........................................................................... 8

*Frontier Ref., Inc. v. Gorman-Rupp Co.*,
     136 F.3d 695 (10th Cir. 1998) ............................................................................ 8, 13

*Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*,
     *No. 12-CV-00587-BNB-KMT*, 2014 WL 943115 (D. Colo. Mar. 10, 2014) .............. 14

*Gallegos v. Safeco Ins. Co. of Am.*,
     No. 14-CV-01114-WJM-MJW, 2015 WL 1009247 (D. Colo. Mar. 4, 2015)............... 8

*Gebremedhin v. Am. Family Mut. Ins. Co.*,
     No. 113CV02813CMANYW, 2015 WL 4272716 (D. Colo. July 15, 2015),
     No. 13-CV-02813-CMA-NYW, 2015 WL 12967849 (D. Colo. Aug. 18, 2015).......... 13

*Grace United Methodist Church v. Cheyenne*,
     427 F.3d 775 (10th Cir. 2005) ................................................................................. 12

*Grace United Methodist Church v. City of Cheyenne*,
     451 F.3d 643 (10th Cir. 2006) ............................................................................ 9, 13

*Hedquist v. Patterson*,
     215 F. Supp. 3d 1237 (D. Wyo. 2016) .................................................................... 14

*Hunter's Ridge Golf Co. v. Georgia-Pac. Corp.*,
     233 F.R.D. 678 (M.D. Fla. 2006)............................................................................. 10

*IMC Chemicals, Inc. v. Niro Inc.*,
No. CIV.A.98-2348-JTM, 2000 WL 1466495 (D. Kan. July 19, 2000) ...................... 15

*In re Motor Fuel Temperature Sales Practices Litig.*,
707 F. Supp. 2d 1145 (D. Kan. 2010) ...................................................................... 12

*In re Qwest Commc'ns Int'l Inc.*,
450 F.3d 1179 (10th Cir. 2006) ................................................................................ 13

*In re Urethane Antitrust Litig.*,
No. 04-MD-1616-JWL, 2013 WL 4781035 (D. Kan. Sept. 5, 2013) ......................... 13

*McDougall v. Dunn*,
468 F.2d 468 (4th Cir. 1972) ...................................................................................... 9

*Nevada v. J–M Mfg. Co., Inc.*,
555 F. App'x. 782 (10th Cir. 2014) ........................................................................... 11

*Plaza Ins. Co. v. Lester*,
No. 14-CV-01162-LTB-CBS, 2015 WL 3528336 (D. Colo. June 4, 2015) .................. 8

*Prince Lionheart, Inc. v. Halo Innovations, Inc.*,
2007 WL 2728343 (D. Colo. Sept. 18, 2007) ..................................................... 14, 15

*Republic of Ecuador v. For Issuance of a s Subpoena Under 28 U.S.C. Sec. 1782(a)*,
735 F.3d 1179 (10th Cir. 2013) .................................................................................. 8

*Ricoh Co. Ltd., v. Aeroflex Inc.*,
219 F.R.D. 66 (S.D.N.Y. 2003) ................................................................................. 10

*Roe v. Catholic Health Initiatives Colorado*,
281 F.R.D. 632 (D. Colo. 2012) ............................................................................... 12

*Scott Paper Co. v. Ceilcote Co.*,
103 F.R.D. 591 (D. Me. 1984) .................................................................................... 9

*Silverstein v. Fed. Bureau of Prisons*,
No. CIV.A07CV02471PABKMT, 2009 WL 4949959 (D. Colo. Dec. 14, 2009) ......... 12

*Thane v. GEICO Cas. Co.*,
No. 16-CV-02940-CMA-MEH , 2017 WL 3157966 (D. Colo. July 25, 2017) ............ 11

*Thomas Organ Co. v. Jadranska Slobodna Plovidba*,
54 F.R.D. 367 (N.D. Ill. 1972) ................................................................................... 9

*United States v. Hudson*,
No. CRIM.A. 13-20063-01, 2013 WL 4768084 (D. Kan. Sept. 5, 2013) ................... 14

*United States v. Johnston*,
   146 F.3d 785 (10th Cir. 1998) ................................................................ 12

*United States v. Krug*,
   868 F.3d 82 (2d Cir. 2017) ..................................................................... 9

*United States v. Nixon*,
   418 U.S. 683 (1974) ............................................................................... 8

*United States v. Nobles*,
   422 U.S. 225 (1975) ............................................................................... 8

*United States v. Smith*,
   502 F.3d 680 (7th Cir. 2007) ................................................................. 4

*Williams v. Sprint/United Mgmt. Co.*,
   245 F.R.D. 660 (D. Kan. 2007) ............................................................ 12

*Young v. Dollar Tree Stores, Inc.*,
   No. 11-CV-01840-REB-MJW, 2012 WL 1015771 (D. Colo. Mar. 23, 2012) ............. 14

**Rules**

D.C. Colo. LCivR. 7.1 ................................................................................ 1

Fed. R. Civ. P. 26 ............................................................................. 8, 10, 11

### PRELIMINARY STATEMENT

This motion challenges Cultural Care's decision to claw back documents – documents that were neither created nor produced by Cultural Care – documents that three different Defendants produced without redaction beginning over a year ago (in November 2016), and that Plaintiffs first used in a deposition more than eight months ago (May 2017) and subsequently used at six more depositions.  Cultural Care appeared at every single one of those depositions, and never objected or asserted a claim of privilege.

As set forth below, the relevant documents were never privileged or constituted work product.  And even if they did, any privilege or protection was waived long ago.

\*                     \*                     \*

Alliance for International Exchange (the "Alliance") Executive Director Ilir Zherka wrote the documents at issue here (the "Zherka Documents").  Exs. 1 & 2.  The Alliance is a nonparty trade association that represents Defendants' business interests, as well as those of other visa-reliant industries. The Alliance also counts thirteen of the fifteen Defendants as members, *see* ECF No. 763, at 2-3.

The Alliance and Zherka are key facilitators of the price-fixing and other unlawful conduct that permeates the *au pair* industry. ███████████████

███████████████████████████

███████████████████████████████

███████████████████████████

██████  The handwritten notes of an Alliance employee record a few of the teleconferences where several of the Defendant-competitors were present.  They confirm Defendants' coordination and intent not to compete on *au pair* wages. ██████

███████████████████████████████

███████████████████████████

1



Ex. 6 (McCarry Dep. Tr. 72:12-17 & 163:9-12 (███████████████████████████████████); Ex. 7 (Zherka Dep. Tr. 38:20:39-5; 41:6-11 (same)); Ex. 8 (Heyn Dep. Tr. 219:11-13 (same)).

The Zherka Documents further illustrate the Alliance's role in the conspiracy; confirm Defendants' intent and knowledge; and disprove one of Defendants' central contentions:  That Defendants have "no incentive" to collude with respect to the stipend. Ex. 9, at 10-14 (Defendants' expert merits report, devoting its first substantive section to assertions that Defendants have "no incentive" to conspire).

███████; *see also* ECF No. 565-2 at n.14 (class certification motion; discussing Defendants' coordinated walkout when the Department of Labor attempted to present to them).  These attempts at plausible deniability or willful ignorance show their intent and knowledge of guilt.

Thus, contrary to Defendants' contentions, the Defendants have more than an "incentive" to collude.  They in fact recognize the economic benefit they receive with respect to *au pair* wages, intend to keep them low, and work together to ensure an industry-wide practice.

For those reasons, Cultural Care disrupted the Zherka deposition on January 29, 2018 with new privilege claims over the Zherka Documents.  The claims are incredible. Three different Defendants produced the Zherka Documents without redaction.  Exs. 1

& 2; Valdivieso Decl. ¶ 4 & 6.  The Documents were first used in a deposition on <u>May 2, 2017</u>, Ex. 12 (Mispagel Dep. Tr. 218:23-25), and have subsequently been used at six additional depositions (for <u>seven</u> total).  Ex. 13 (McNamara Dep. Tr. 89:13-25); Ex. 14 (Nelson Dep. Tr. 248:19-249:8); Ex. 15 (Kapler Dep. Tr. 224:2-16); Ex. 16 (Pitts Dep. Tr. 156:17-21); Ex. 17 (Hoggard Dep. Tr. 157:13-158:2); Ex. 18 (Hayes Dep. Tr. 183:7-25).  At each and every one of those depositions, Cultural Care participated in person, by phone, or both.  Exs. 12-18 (noting counsels' appearances after cover pages).[2]  Yet on January 29, 2018, Cultural Care objected to any use of the Zherka Documents, even though it had neither authored nor produced them, and had never once previously objected or asserted a claim of privilege.  Ex. 7 (Zherka Dep. Tr. 42:8-60:3; 62:10-75:10).  Cultural Care pressed its meritless objections and made other disruptions that consumed about an hour of deposition time.  *See generally id.*, *passim* (about an hour total privilege discussion).  Counsel did so despite ready agreement by the Plaintiffs that questioning on the documents at that deposition would not itself constitute waiver.  *Id.* at 55:3-8.  Counsel was undeterred from speeches – and accusations of unethical conduct – notwithstanding that counsel did not know the history of the Zherka Documents.  *See, e.g.*, Ex. 7 (Zherka Dep. Tr. 43:17-21 (speculating that if Cultural Care produced one of the documents it must have been in redacted form)), *and id.* at 56:9-19 & 57:18-22 (suggesting that Plaintiffs' use of document at prior depositions was improper because

---

[2]   Cultural Care contends that it only recently "realize[d]" facts giving rise to its privilege claim.  Ex. 7 (Zherka Dep. Tr. 75:1-8 (previously believed documents were "Mr. Zherka's own musings" but "only when we saw them in the context of the Alliance documents . . . did the team realize that they were part of the Cultural Care privilege documents").  The real reason is that the erroneous order before this Court on Plaintiffs' Pending Objections is working exactly the mischief Plaintiffs foresaw.  Ex. 11 (Nov. 11, 2017 Hr'g Tr. 45:24-46:5); Ex. 27 at 5-6 & n.1 (claiming a vague work product doctrine extending "past attorneys to the party <u>or any representative acting on its behalf</u>; specifically withholding documents after the complaint's filing in 2014; refusing to provide a privilege log).

Cultural Care produced it in redacted form), *with id.* at 58:15-59:3 (claiming that Cultural Care never produced the document).

All that was for naught.  The Zherka Documents could never have been privileged.  They make no mention of litigation, attorneys, or any legal advice. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ They bear no indicia of privilege.  The only connection to this case is that the subject-matter (*au pair* wages) is involved, and the discussion occurred after the complaint was filed.  A party cannot choose to hide material simply because it touches on a litigation's subject and was created after a complaint was filed.  There could never be party admissions after a commencing litigation, and privilege would be invoked at the parties' convenience to hide the truth.  *Cf. United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007) ("the work-product privilege protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case . . .  It is not up to the client to determine whom to make an agent for the purposes of asserting the work-product privilege").  Cultural Care's new theory extends beyond Defendants' amorphous attempt at a limiting principle in the last privilege dispute:  At that time, Defendants claimed they could withhold or redact "all of their discussions about legislative efforts (underline the presence of lobbyists)."  ECF No. 715, at 11 n.10 (emphasis added).[3]  Now Cultural Care feels entitled to withhold its discussions about legislative efforts in the presence of lobbyists, *i.e.*, third parties who break any claim of privilege.

Moreover, any privilege over the Zherka Documents that could conceivably have

---

[3]    The Magistrate's Order from this previous dispute is currently before this Court on Plaintiffs' objections ("Pending Objections").  ECF No. 763; ECF No. 771.  Cultural Care has asserted that the Order controls the Zherka Documents' analysis.  In fact, Cultural Care's position on the Zherka Documents cannot be justified by the Order; its assertion of privilege here is far more extreme than those at issue in the Pending Objections.  Cultural Care's contentions do, however, show the mischief that Defendants can make with the Order.  Ex. 27 at 5-6 & n.1

applied was waived long ago.  The Zherka Documents were first produced well over a year ago, and Cultural Care's lawyers were actually aware of them for at least nine months.  The Zherka Documents themselves evidence additional disclosures to nonparty the Alliance and the Alliance's lobbying firm, Sixkiller Consulting.

And to the extent Cultural Care has a conceivable work product claim (it does not), Plaintiffs' need for the Zherka Documents would overcome that claim.  Plaintiffs spent substantial amounts of their limited deposition time using the documents.  The documents give lie to no less than a third of a report by one of Defendants' proffered experts.  And due to Defendants' selective memories, only by showing the documents could Plaintiffs obtain a shred of testimony.[4]

Finally, all fees and costs associated with this dispute should be awarded to Plaintiffs.  Cultural Care's claims have caused even more filings without cause over an already over-litigated case.  The claims have further disrupted the case schedule, and delayed the Alliance deposition and document production for months (and they remain held open for this privilege issue).

## FACTUAL BACKGROUND

**I.     FIRST DOCUMENT**



_____

[4]    _E.g._, Ex. 18

█████████████ Ex. 1, at 1.  Defendants produced versions of the document on March 20, June 28, and November 7, 2017, without any redactions or claims to attorney client privilege or work product protection.  *See* Ex. 1; Valdivieso Decl. ¶¶ 3-4.

The First Document was marked as an exhibit and used between May and August 2017 in questioning during six depositions, all of which were attended by at least one attorney representing Cultural Care, either in person or by phone or both.  *See* Exs. 13-18 (depositions of Sarah McNamara (J. Fuller and L. Kruzer by phone); Theresa Nelson (J. Fuller in person); William Kapler (J. Fuller in person); Shannon Pitts (L. Kruzer by phone); Ellen Hoggard (L. Kruzer in person), and Susan Hayes (K. O'Keefe by phone)).  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████ *See, e.g.*, Ex. 14 (Nelson Dep. Tr. 251:7-24 (no understanding)); Ex. 17 (Hoggard Dep. Tr. 167:8-168:11 (no recollection or knowledge)); Ex. 18 (Hayes Dep. Tr. 186:9-187:20 (no understanding or recollection)).

Plaintiffs finally had the opportunity to question the author of the First Document at Zherka's January 31 deposition.  But Cultural Care interrupted the questioning and asserted a claim of privilege for the first time, attempting to claw the document back.  Ex. 7 (Zherka Tr. 41:17-42:12).  After Plaintiffs challenged Cultural Care's claim to privilege, the Parties agreed to allow questioning of Zherka to proceed, with a reservation by Cultural Care to claw back the testimony if this Court rules that the First Document is in fact privileged.  *Id.* at 73:2-74:22.

## II.   SECOND DOCUMENT

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 2.  ███████████

████████████████████████████████████████

███████████████  Ex. 6 (McCarry Dep. Tr. 72:12-17); Ex. 7 (Zherka Dep. Tr. 165:6-9). ██████████████████████████████████

██████████  Defendants produced it on November 18, 2016, and May 16 and June 28, 2017, without redaction or other attempt to preserve any conceivable privilege. *See* Ex. 2; Valdivieso Decl. ¶¶ 5-6.

The Second Document was marked as an exhibit and used in May and August 2017 during questioning in two depositions, both of which were attended by an attorney representing Cultural Care in person, and one of which also had an attorney representing Cultural Care attending by telephone. Exs. 12 & 17 (depositions of Heidi Mispagel (J. Fuller in person and J. Wolosz by telephone) and Ellen Hoggard (L. Kruzer in person)). ██████████████████████████████████

████████████████████████████████████████

██████  *See, e.g.*, Ex. 12 (Mispagel Dep. Tr. 213:10-214); Ex. 17 (Hoggard Dep. Tr. 158:3-25).

The Alliance itself finally produced the Second Document in redacted form on January 17, 2018, without a privilege log. *See* Exs. 19-22. The redacted content in Exhibit 19 was also forwarded to linda.i.kinney@gmail.com, Zherka's wife who, as far as we know, has no connection to the *au pair* industry and whose inclusion on the email plainly destroyed any conceivable claim of privilege. Ex. 19. At Zherka's deposition the Alliance made clear that it was asserting Cultural Care's privilege claim on Cultural Care's behalf. Ex. 7 (Zherka Dep. Tr. at 64:8-14).

At the deposition of Zherka, the parties agreed to proceed under the same terms as the First Document. Ex. 7 (Zherka Dep. Tr. 73:2-74:22).

## **LEGAL STANDARD**

"[F]ederal courts narrowly construe *all* privileges, whether of constitutional,

common-law, or statutory origin." *Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990); *see also United States v. Nixon*, 418 U.S. 683, 710 (1974) ("exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."). The party asserting privilege bears the burden to show that the privilege applies. *Plaza Ins. Co. v. Lester*, No. 14-CV-01162-LTB-CBS, 2015 WL 3528336, at *5 (D. Colo. June 4, 2015). The party asserting privilege also bears the burden to establish non-waiver. *See Gallegos v. Safeco Ins. Co. of Am.*, No. 14-CV-01114-WJM-MJW, 2015 WL 1009247 at *2 (D. Colo. Mar. 4, 2015). The party claiming privilege should meet its burden with a "clear showing" and "precise reasons." *Plaza Ins. Co.*, 2015 WL 3528336, at *5.

## ARGUMENT

## I.   THE ZHERKA DOCUMENTS ARE NOT ATTORNEY WORK PRODUCT

### A.   The Attorney Work Product Doctrine

The "uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)" governs all work product claims in federal court. *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). The work product doctrine protects "documents" or "tangible things" that are "prepared in anticipation of litigation or for trial by or for [a] party or its representative (including [the party's] attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

The Tenth Circuit endorses the "traditional understanding of the work-product doctrine." *Republic of Ecuador v. For Issuance of a s Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1184 (10th Cir. 2013) (quoting *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)). That is, work product protection applies only to documents created by or for attorneys, in connection with actual or anticipated litigation. *Id.* The Tenth Circuit has explained that Rule 26(b)(3)(A) should not be construed more broadly than is necessary to protect the "mental impressions of an attorney." *Id.* at 1184-85.

Specifically, the Tenth Circuit explained that litigants had erroneously read "party or its representatives" so broadly as to bring materials not created by or for attorneys in anticipation of litigation within the doctrine. *Id.*

The Supreme Court approved in 2010 an amendment to Rule 26 to "refocus" attorney work product protection to where it belongs: The "theories or mental impressions of counsel." *Id.* at 1187 (quoting 2010 A.C.N.). The attorney's theories and mental impressions are the touchstones of Rule 26(b)(3)'s protections, and what stops the work product doctrine from becoming an unbounded and arbitrary protection for anything related to "litigation." *Accord McDougall v. Dunn*, 468 F.2d 468, 473 (4th Cir. 1972) (citing the "painstaking and thorough consideration of the construction to be given Rule 26(b)(3)" by the court in *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372 (N.D. Ill. 1972) (explaining that Rule 26(b)(3) was intended to keep the focus on attorneys' "legal expertise")); *Scott Paper Co. v. Ceilcote Co.*, 103 F.R.D. 591, 594 (D. Me. 1984); *see also* ECF Nos. 710, at 5-7; 715, at 3-8; 771, at 12-15.

### B.     A Non-Representative Non-Party Cannot Create Work Product.

As the Tenth Circuit has noted, the work product doctrine "only applies to <u>attorneys' or legal representatives'</u> mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (emphasis added); *see also United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) (party's own research, though shared with attorney, not privileged when shared with co-defendant). Weakening the link between the litigating attorney and the work product doctrine gives parties discretion to hide the truth and claim privilege over any inconvenient document. *Smith*, 502 F.3d at 689 ("the work-product privilege protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case . . . It is not up to the client to determine whom to make an agent for the purposes of asserting the work-product

privilege; the privilege extends to the work of the attorney's agents, not the client's agents." (citations omitted)).

The Zherka Documents cannot meet this standard.  Defendants concede Zherka is not a legal representative.  ECF No. 715, at 9 & n.7; Hr'g Tr. 41:12-13. Nor could Zherka have been acting as an attorney.  He is not an active member of any bar, and was not providing legal advice to Defendants.  Ex. 7 (Zherka Tr. 12:12-15:11).  Zherka is a third party, and he is legally incapable of creating work product under these circumstances.  *Cf. Ricoh Co. Ltd., v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003) ("Courts have routinely held that documents prepared by one who is not a party to the case at bar are not protected by Rule 26(b)(3), even if the non-party is itself a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the instant suit."); *Hunter's Ridge Golf Co. v. Georgia-Pac. Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006) ("ordinarily, the work product doctrine does not shield from discovery documents created by third-parties") (citing cases); *see also Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 539 (D. Kan. 1989) (documents "submitted to or received from a third party" cannot be protected).

Cultural Care's claim that Zherka's emails may have been informed – in some undefined sense –  by discussions with Defendants, who in turn may have had contact with attorneys, does not render Zherka's emails Cultural Care's attorney work product. Work product must be a "document or tangible thing."  Fed. R. Civ. P. 26(b)(3)(A); *Burton v. R.J. Reynolds Tobacco Co.*,170 F.R.D. 481, 485 (D. Kan. 1997) ("The party claiming the immunity afforded under the doctrine must establish that the material is (i) a document or tangible thing . . . .").  Zherka created the relevant documents, so the eligible candidates for work product protection are conduct the documents reflect (*i.e.*, what the Defendants did) or some abstraction from an attorney-client communication (*e.g.*, a business or political strategy that had a lawyer's input).  It is hornbook law that conduct is not privileged, and merely seeking an attorney's advice when forming or

implementing a strategy does not convert a third party's materials into attorney work product.  The attorney-client privilege exists to protect legal advice, and if having a lawyer's input on a business decision converted communications about that decision into attorney work product entire companies and industries would be shielded from discovery.

### C.    Plaintiffs' Substantial Need Overcomes Work Product Claim

Assuming, counterfactually, that work product protection could apply, Plaintiffs would overcome that protection by demonstrating "substantial need for the materials to prepare its case" and that they "cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Thane v. GEICO Cas. Co.*, No. 16-CV-02940-CMA-MEH, 2017 WL 3157966, at *8 (D. Colo. July 25, 2017) (citing Fed. R. Civ. P. 26(b)(3)(A)); *see also Nevada v. J–M Mfg. Co.*, 555 F. App'x 782, 785 (10th Cir. 2014).  Here, there is substantial need because the two documents provide information regarding discussions and an agreement between Defendants regarding the *au pair* stipend, information that is both central to Plaintiffs' allegations and otherwise unattainable.  *See* ECF No. 710 at 7 n.6. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████  And it would be particularly unfair to allow Defendants to claw these documents back now, after Plaintiffs have spent some of their valuable time at eight depositions using the documents.

## II.    THE ATTORNEY CLIENT PRIVILEGE DOES NOT APPLY

To qualify for the attorney client privilege, a "communication between a lawyer

and client must relate to legal advice or strategy sought by the client." *Id.* (citing *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (emphasis in original)). "[A]ttorney-client communications in the presence of a third-party not the agent of either are generally not protected by privilege." *Id.* at 637 (citation omitted).  Business advice is not legal advice, and in "mixed" business and legal communications, the legal aspect must predominate. *Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 667 (D. Kan. 2007); *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kan. 1997).

The attorney client privilege cannot apply because, as explained in the prior section, Zherka, his wife, Sixkiller, and the Alliance are all third party non-attorneys.

Further, any advice was business advice, not legal advice.  At most it concerned lobbying and political decisions.  Defendants' businesses are built on government programs, and the Alliance exists to protect and promote those business interests— which include government funding and favors.  Nothing about that is privileged. *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1158–59 (D. Kan. 2010).

## III.   ANY COCIEVABLE PRIVILEGE OR PROTECTION HAS BEEN WAIVED

It "is well-settled that when a client voluntarily discloses privileged communications to a third-party, the privilege is waived." *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 637 (D. Colo. 2012); *see also Silverstein v. Fed. Bureau of Prisons*, No. CIV.A07CV02471PABKMT, 2009 WL 4949959, at *9 (D. Colo. Dec. 14, 2009) ("The Tenth Circuit recognizes that production of work-product material during discovery waives a work-product objection." (citing *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 801–02 (10th Cir. 2005)).  A waiver may be express – "i.e., a party may affirmatively consent to disclosure of the information" – or implied through conduct. *Gebremedhin v. Am. Family Mut. Ins. Co.*, No. 113CV02813CMANYW, 2015 WL 4272716, at *5 (D. Colo. July 15, 2015), *objections*

*overruled*, No. 13-CV-02813-CMA-NYW, 2015 WL 12967849 (D. Colo. Aug. 18, 2015) (Arguello, J.).

> ### A. Defendants And The Alliance Waived Any Privilege Or Protection Through Third-Party Disclosure.

Assuming (counterfactually) that the information in the two documents at issue here could be covered by the work product or attorney client doctrines, any such privilege or protection was waived when Cultural Care knowingly and voluntarily disclosed to Zherka. *Grace*, 451 F.3d at 668 (10th Cir. 2006). Further waiver occurred when the Zherka Documents were knowingly and voluntarily disclosed to third parties Sixkiller Consulting and Zherka's wife by forwarding. Disclosure to the Alliance, Sixkiller Consulting, and Ms. Kinney made it likely that the information would get to the Plaintiffs. ECF No. 710, at 10.

Cultural Care may not rely upon the common interest doctrine to avoid this plain waiver. In the Tenth Circuit, the common interest doctrine is a narrow exception to the general rule that a party waives attorney-client privilege or work product protection over material disclosed to a third party. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006) (noting that "'common interest' doctrine provides an exception to waiver because disclosure advances the representation of the party and the attorney's preparation of the case"); *Frontier Ref., Inc.*, 136 F.3d 695 at 705). Only where parties' interests are "identical, not similar" and "legal, not, solely commercial" will disclosure of privileged information between them not result in a waiver. *See* Order 5 (citing *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2013 WL 4781035, at *2 (D. Kan. Sept. 5, 2013)). Zherka, the Alliance, and Sixkiller Consulting (let alone Ms. Kinney) do not share a common interest with Cultural Care for the same reasons the Alliance and Defendants do not share a common interest. *See* ECF No. 771, at 6-12; ECF No. 710, at 12-14; ECF No. 719, at 11-13.

The Alliance is an association of more than 90 entities. Some of the other

Alliance members are aligned with the *au pair* sponsors and some are not.  Ex. 6 (McCarry Tr. 13:6-19).  Moreover, Cultural Care has not explained how its interests are legally identical to the Alliance's and Sixkiller Consulting.  A common interest to "prevail" is insufficient.  *United States v. Hudson*, No. CRIM.A. 13-20063-01, 2013 WL 4768084, at *2 (D. Kan. Sept. 5, 2013) ("shared desire to see same outcome in legal matter is insufficient to establish common interest"); *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1246 (D. Wyo. 2016) (same).

### B.   Defendants Also Waived Protection Through Litigation Conduct.

"In certain cases, a party may waive privileges by its conduct."  *Arkansas River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 14-CV-00638-CMA-NYW, 2015 WL 4031846, at *5 (D. Colo. June 30, 2015).  A party is required to "take reasonable precautions against disclosure of privileged documents and to take reasonable and immediate actions when a disclosure of an otherwise privileged document is discovered."  *Galena St. Fund, L.P. v. Wells Fargo Bank, N.A., No. 12-CV-00587-BNB-KMT*, 2014 WL 943115, at *9 (D. Colo. Mar. 10, 2014) (internal quotations and citation omitted).

Cultural Care further waived any protection that could have remained by failing to assert any privilege when its co-defendants produced the documents approximately a year ago and when Plaintiffs used the documents at seven depositions at which Cultural Care appeared over the course of several months.  *See, e.g.*, *Young v. Dollar Tree Stores, Inc.*, No. 11-CV-01840-REB-MJW, 2012 WL 1015771, at *2 (D. Colo. Mar. 23, 2012) (failure to raise privilege at deposition effects waiver); *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, 2007 WL 2728343, *5–6 (D. Colo. Sept. 18, 2007) (same); *see also Certain Underwriters at Lloyd's London v. Natl. R.R. Passenger Corp.*, 14-cv-4717(FB), 2016 WL 6875968, at *6-7 (E.D.N.Y. Nov. 17, 2016) (same); *IMC Chemicals, Inc. v. Niro Inc.*, No. CIV.A.98-2348-JTM, 2000 WL 1466495, at *17 (D. Kan. July 19,

2000) (same).  Indeed, it is "beyond dispute that, in the context of a deposition, an objection asserting attorney-client privilege must ordinarily be raised when the question seeking privileged material is asked."  *Prince Lionheart*, 2007 WL 2728343, at *5.  Since the scope of the documents here covers the same scope of the material at issue in the Pending Objections ██████████████████████████████████████, the disclosure and subsequent failure to preserve the privilege effected a waiver as to those documents as well.  *Id.* at *6 (scope of waiver covers scope of subject matter disclosed).  Further, Cultural Care's timing demands waiver, and its belated assertion of privilege has disrupted deposition proceedings and threatens to disrupt the summary judgment briefing schedule.

Here, Cultural Care did not simply fail to object when the Zherka Documents were first produced, or even when they were first used in deposition.  Instead, Cultural Care failed to object the first seven times the documents were used at deposition, and waited well over a year since they were first produced.  This litigation conduct demands a finding of waiver; indeed, it is hard to imagine a more belated assertion of privilege short of a party trying to claw back a document in the middle of trial.  Here, Cultural Care's long belated assertion of privilege has prejudiced Plaintiffs, disrupted depositions (seven of which will have to be re-taken, if the Zherka Documents are excluded), and threatens to disrupt the summary judgment briefing schedule.

## CONCLUSION

Plaintiffs respectfully request that the Court reject Cultural Care's privilege claims and compel production of the Zherka Documents without redaction.  Further, Cultural Care should pay all fees and costs associated with this dispute in light of Culture Care's belated and unreasonable positions.  *Skepnek v. Roper & Twardowsky*, LLC, No. 11-4102-KHV, 2013 WL 6071992, at *5 (D. Kan. Nov. 18, 2013); *Bautista v. MVT Servs.*, LLC, No. 16-CV-01086-NYW, 2017 WL 2082925, at *7 (D. Colo. Mar. 20, 2017).

Dated: February 10, 2018

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

___*s/ Sean P. Rodriguez*_____
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

Sigrid S. McCawley
Lauren Fleischer Louis
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com
llouis@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606

Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<u>    *s/ Sean P. Rodriguez*    </u>
Sean P. Rodriguez