Highly Confidential - Attorneys' Eyes Only

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

JOHANA PAOLA BELTRAN, ET AL.,    :

        Plaintiffs,       :    Case No.:

        VS.           :    14-CV-03074-CMA-KMT

INTEREXCHANGE, INC., ET AL.,    :

        Defendants       :    Page 1-208

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

- - -

Monday, January 29, 2018

- - -

Videotaped Deposition of ILIR ZHERKA taken at Boies, Schiller & Flexner, 1401 New York Avenue, NW, Washington, DC 20005 commencing at 10:05 a.m. before Sherry L. Brooks, Certified LiveNote Reporter and Notary Public, in and for the District of Columbia.

- - -

MAGNA LEGAL SERVICES

WWW.MAGNALS.COM



Highly Confidential - Attorneys' Eyes Only

| | Page 2 |
|---|---|
| 1 | A P P E A R A N C E S : |
| 2 | |
| 3 | BOIES, SCHILLER & FLEXNER, LLP |
| | BY: DAWN SMALLS, ESQUIRE |
| 4 | JUAN P. VALDIVIESO, ESQUIRE |
| | 1999 Harrison Street |
| 5 | Suite 900 |
| | Oakland, CA 94612 |
| 6 | (510) 874-1010 |
| | E-mail: Jvaldivieso@bsfllp.com |
| 7 | Representing the Plaintiffs |
| 8 | |
| | CHOATE, HALL & STEWART, LLP |
| 9 | BY: JOAN LUKEY, ESQUIRE |
| | Two International Place |
| 10 | Boston, MA 02110 |
| | (617) 248-4949 |
| 11 | E-mail: Joan.Lukey@choate.com |
| | Representing Defendant Cultural Care, Inc. |
| 12 | |
| 13 | SHERMAN & HOWARD, LLC |
| | BY: BROOKE A. COLAIZZI, ESQUIRE   (via telephone) |
| 14 | 633 Seventeenth Street |
| | Suite 3000 |
| 15 | Denver, CO 80202 |
| | (303) 299-8271 |
| 16 | (303) 298-0940 (Fax) |
| | E-mail: Bcolaizzi@shermanhoward.com |
| 17 | Representing Defendant InterExchange, Inc. |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

| | Page 4 |
|---|---|
| 1 | APPEARANCES CONTINUED: |
| 2 | |
| 3 | GORDON & REES, LLP |
| | BY: THOMAS B. QUINN, ESQUIRE       (via telephone) |
| 4 | 555 Seventeenth Street |
| | Suite 3400 |
| 5 | Denver, CO 80202 |
| | (303) 200-6888 |
| 6 | E-mail: Tquinn@gordonrees.com |
| | E-mail: Pkozal@grsm.com |
| 7 | Representing Defendant AuPairCare |
| 8 | |
| | VERDI & OGLETREE, PLLC |
| 9 | BY: FAITH KALMAN REYES, ESQUIRE |
| | BENJAMIN R. OGLETREE, ESQUIRE |
| 10 | 1325 G Street, NW |
| | Suite 500 |
| 11 | Washington, DC 20005 |
| | (202) 449-7703 |
| 12 | E-mail: Bogletree@verdiogletree.com |
| | Representing Ilir Zherka |
| 13 | |
| | ALSO PRESENT: |
| 14 | |
| | Nancy Holmstock, Videographer |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

| | Page 3 |
|---|---|
| 1 | APPEARANCES CONTINUED: |
| 2 | |
| 3 | PUTNEY, TWOMBLY, HALL & HIRSON, LLP |
| | BY: ANDREW C KARTER, ESQUIRE     (via telephone) |
| 4 | 521 Fifth Avenue |
| | New York, NY 10175 |
| 5 | (212) 682-0020 |
| | (212) 682-9380 (Fax) |
| 6 | E-mail: Akarter@putneylaw.com |
| | Representing Defendant American Institute for Foreign |
| 7 | Study d/b/a Au Pair in America |
| 8 | |
| | FISHER & PHILLIPS, LLP |
| 9 | BY: SUSAN SCHAECHER, ESQUIRE       (via telephone) |
| | 1801 California Street |
| 10 | Suite 2700 |
| | Denver, CO 80202 |
| 11 | (303) 218-3676 |
| | E-mail: Sschaecher@fisherphillips.com |
| 12 | Representing Defendant APF Global Foundation d/b/a Au |
| | Pair Foundation |
| 13 | |
| 14 | NIXON SHEFRIN HENSEN OGBURN |
| | BY: KATHLEEN E CRAIGMILE, ESQUIRE   (via telephone) |
| 15 | 5619 DTC Parkway |
| | Suite 1200 |
| 16 | Greenwood Village, CO 80111 |
| | (303) 874-3435 |
| 17 | (303) 779-0740 (Fax) |
| | E-mail: Kcraigmile@nixonshefrin.com |
| 18 | Representing Defendant APEX, LLC and 20/20 Care |
| | Exchange, Inc |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

| | Page 5 |
|---|---|
| 1 | I N D E X |
| 2 | - - - |
| 3 | TESTIMONY OF: Ilir Zherka |
| 4 | By Ms. Smalls                                    10 |
| 5 | By Ms. Lukey                                    201 |
| 6 | |
| 7 | |
| 8 | E X H I B I T S |
| 9 | EXHIBIT NUMBER   DESCRIPTION         PAGE MARKED |
| 10 | Exhibit 1      2016 Report/Alliance Membership  23 |
| 11 | Exhibit 2      Memorandum Dated 2/23/16      26 |
| 12 | Exhibit 3      Memorandum: Alliance Bkgd. Info. 26 |
| 13 | Exhibit 4      Memorandum Dated 2/19/16      41 |
| 14 | Exhibit 5      Memorandum Dated 1/29/16      72 |
| 15 | Exhibit 6      Alliance Issues/Mbrshp Briefing  91 |
| 16 | Exhibit 7      Memorandum Dated 12/22/15      92 |
| 17 | Exhibit 8      Alliance Letter Dated 1/22/16  114 |
| 18 | Exhibit 9      Memorandum Dated 3/3/16      124 |
| 19 | Exhibit 10     Memorandum Dated 3/13/15      129 |
| 20 | Exhibit 11     Memorandum Dated 2/2/16      157 |
| 21 | Exhibit 12     Handwritten Notes - (HC-AEO)    164 |
| 22 | Exhibit 13     Handwritten Notes - (HC-AEO)    171 |



Highly Confidential - Attorneys' Eyes Only

| Page 10 | Page 12 |
|---|---|

**Page 10**

1 others who are joining in the objection to say so?
2 Because it's going to slow things down with people on
3 the phone.
4     MS. SMALLS: Yes. That's fine. If that
5 defendant would like to join in on that objection,
6 they can do that by virtue of you objecting.
7     MS. LUKEY: Thank you.
8     EXAMINATION BY COUNSEL FOR PLAINTIFFS
9     BY MS. SMALLS:
10   Q. Good morning.
11   A. Good morning.
12   Q. Can you please state your name for the
13 record?
14   A. My name is Ilir Zherka.
15   Q. Okay. Have you ever been deposed before?
16   A. I have not.
17   Q. Okay. Have you ever given testimony in a
18 non-deposition setting?
19   A. I have not.
20   Q. I'm just going to go over a couple of
21 ground rules. If you can wait until I finish
22 speaking before you give your answer, this will make

**Page 11**

1 it easier for both the court reporter and the
2 videographer and make sure that we have a clear
3 record about what I'm asking and what you're
4 answering.
5     If there's anything that I'm asking that
6 is unclear, please let me know that and I will
7 rephrase the question.
8     And please remember to give verbal
9 answers, rather than nods or shakes just, again, so
10 that we can have a clear record and the stenographer
11 can accurately get down your answers.
12     If you need to take a break, please let me
13 know. I'm happy to do that. I would just ask that
14 you finish -- you answer the question that I have --
15 that I have asked and then we can break right after
16 that. And with that, is there --
17     MS. LUKEY: Dawn, we got an email -- and I
18 don't know who to address this to in here -- from
19 Brooke saying she cannot hear anything. She's on the
20 line.
21     MS. COLAIZZI: This is Brooke Colaizzi on
22 behalf of InterExchange. I cannot hear Ms. Smalls or

**Page 12**

1 the witness at all.
2     MS. LUKEY: Alright. We just unmuted the
3 closer --
4     MS. SMALLS: Brooke, can you hear me now?
5     MS. COLAIZZI: Yes. That's much better.
6 Thank you.
7     MS. LUKEY: I'm sorry to interrupt.
8     BY MS. SMALLS:
9   Q. Is there any reason that you might not be
10 able to provide accurate testimony today?
11   A. There isn't.
12   Q. Okay. Are you a lawyer?
13   A. I am.
14   Q. Where did you graduate law school?
15   A. The University of Virginia.
16   Q. And what degree did you obtain from the
17 University of Virginia?
18   A. Juris Doctorate.
19   Q. And what year did you graduate?
20   A. 1992.
21   Q. Did you practice?
22   A. I did not.

**Page 13**

1   Q. Okay. What was your first position after
2 you graduated from UVA in 1992?
3   A. I worked as legislative counsel for a
4 Congressman, George Miller.
5   Q. Have you ever practiced law?
6   A. I have not.
7   Q. Are you admitted to practice law?
8   A. I am.
9   Q. Where are you admitted to practice law?
10   A. In New York and the District of Columbia.
11   Q. Okay. Are you active members -- are you
12 an active member of the bar in both jurisdictions?
13   A. I am not.
14   Q. Okay. What jurisdiction are you active in
15 -- an active member in and what jurisdiction are you
16 not an active member in?
17   A. I am inactive in both the District of
18 Columbia and in New York.
19   Q. I didn't hear that. So I'm just going to
20 reask my question. Are you active -- I'm going to
21 ask it in a different way to make it clearer.
22     Are you active -- an active member of the



Highly Confidential - Attorneys' Eyes Only

Page 14

1   bar in New York?
2     A.  I am not.
3     Q.  Are you an active member of the bar in DC?
4     A.  I am not.
5     Q.  What is your current position?
6     A.  I'm the executive director of the Alliance
7   for International Exchange.
8     Q.  Do you act as an attorney in your position
9   as executive director for the Alliance?
10     A.  I do not.
11     Q.  Do you provide the Alliance legal advice?
12     A.  I do not.
13     Q.  Do you represent the Alliance as an
14   attorney?
15     A.  I do not.
16     Q.  Okay. You testified that you are an
17   inactive member of the bar in both New York and DC.
18   How long have you been inactive in both
19   jurisdictions?
20     A.  Since I was -- I want to say I'm not
21   entirely sure, but sometime in the '90s.
22     Q.  Were you ever an active member of the bar

Page 15

1   in New York?
2     A.  I can't recall.
3     Q.  Okay. Were you ever an active member of
4   the bar in DC?
5     A.  I can't recall.
6     Q.  Okay. But you have not been an active
7   member of the bar for at least the last 20 years; is
8   that correct?
9     A.  For quite some time, I don't know if it's
10   exactly 20 years, but it's been over a decade for
11   sure and certainly more than that.
12     Q.  Great. Thank you. Who is representing
13   you today?
14     A.  My attorneys, Ben Ogletree and Faith
15   Reyes.
16     Q.  How long have they been representing you?
17     A.  I believe since September of 2017.
18     Q.  Did you have representation prior to
19   September 2017?
20     A.  We did.
21     Q.  Okay. Who were you represented by?
22     A.  I can't recall our attorney's name. We

Page 16

1   didn't work with him for too long. I want to say Jon
2   Hathway, I believe.
3     Q.  Does the Alliance always have counsel on
4   retainer?
5     A.  It does not.
6     Q.  Other than the part -- let's just call him
7   Mr. Hathway, understanding that that may or may not
8   be exactly his name --
9     A.  Right.
10     Q.  -- how long -- how long were you
11   represented by Mr. Hathway?
12     A.  We were represented by Mr. Hathway when I
13   joined the Alliance through September, so starting in
14   at least January of 2016 through September of 2017,
15   roughly speaking.
16     Q.  So you were represented by Mr. Hathway for
17   over a year and a half; is that correct?
18     A.  That's right.
19     Q.  And how long have you been represented by
20   Ms. Reyes and Mr. Ogletree?
21     A.  Over the past four or five months.
22     Q.  Have you had other counsel, other than Mr.

Page 17

1   Hathway and Ms. Reyes and Mr. Ogletree?
2     A.  You mean at the Alliance?
3     Q.  I will rephrase my question.
4     A.  Okay.
5     Q.  Other than Ms. Reyes and Mr. Ogletree and
6   Mr. Hathway, has the Alliance retained other counsel?
7     A.  Not since I've been at the Alliance.
8     Q.  Okay. So when you say that Mr. Hathway
9   didn't represent you for very long, there's no other
10   counsel that represented you longer; is that correct?
11     A.  Since I've been at the Alliance, that's
12   correct.
13     Q.  Okay. And in fact, Ms. Reyes and Mr.
14   Ogletree have represented you for much less time than
15   Mr. Hathway did; is that correct?
16     A.  Yes.
17     Q.  Why did you decide to switch counsel?
18     MS. REYES: I'm going to object with
19   regard to that based on the attorney/client
20   privilege. I mean, it's -- I think that that -- if
21   -- can you --
22     Let me put it this way: Based on my



Highly Confidential - Attorneys' Eyes Only



Page 34

Page 36

1    BY MS. SMALLS:
2    Q.   Mr. Zherka, before your counsel pulled you
3    out of the room --
4    A.   I believe I asked for a break.

Page 37

3    MS. REYES:  We've been going about an
4    hour.  Let's take a break.
5    MS. SMALLS:  I'm not done.
6    MS. REYES:  Mr. Zherka, do you want to
7    take a break?
8    THE WITNESS:  I was actually thinking
9    about that.  That would be great.
10   MS. SMALLS:  I'm not done with my
11   question.  Our agreement was I'd finish with my
12   question and then we could take a break.  He didn't
13   ask for a break.  You asked for a break.  I want to
14   finish my question, and then we can take a break.
15   Okay.  Let the record show that counsel
16   has unilaterally asked for a break and directed their
17   witness to leave the room.
18   THE VIDEOGRAPHER:  It is 11:06.  Going off
19   the record.
20   (Discussion held off the record.)
21   THE VIDEOGRAPHER:  We're back on the
22   record.  The time is now 11:25.

1    Q.   Okay.  Are there any other instances in
2    which you in your role as executive director of the
3    Alliance made the view of the au pair sponsors clear?
4    MS. LUKEY:  Objection to form.
5    A.   We represent our members, including
6    members who have au pair programs.  And when we
7    discuss policy issues, we are making our views clear
8    to people we're talking to, ours being the Alliance,
9    and, thereby, representing our members.
10   BY MS. SMALLS:
11   Q.   Are there some topics that are appropriate
12   for the common strategy of the Alliance and some that
13   are not?
14   MS. LUKEY:  Objection to form.
15   A.   Our focus is on public policy, and that's
16   what we focus on.
17   BY MS. SMALLS:



10 (Pages 34 to 37)

Highly Confidential - Attorneys' Eyes Only



Page 38

1            BY MS. SMALLS:

Page 40

6    Q.   But you've testified that you have -- in
7  your role at the Alliance, you advance the collective
8  view of au pair sponsors; is that correct?
9       MS. LUKEY:  Objection to form.
10      MS. REYES:  Object to the form.
11    A.   That is not correct.
12      BY MS. SMALLS:
13    Q.   Okay.
14    A.   That is not correct.  We advance our --
15  the Alliance's views on public policy.  In advancing
16  the Alliance's views on public policy, we do talk to
17  members of the Alliance.
18    Q.   Do you ever organize au pair sponsors
19  towards collective action?
20      MS. LUKEY:  Objection to form.
21    A.   We do ask Alliance sponsors to do certain
22  things that we ask of all of them.

Page 41

1      BY MS. SMALLS:
2    Q.   Do you ever tell au pair sponsors to take
3  one position over another?
4    A.   We -- in interacting with our members, we
5  do share with them what our positions are.

12      MS. SMALLS:  Could you mark this as 4,
13  please?
14      (Exhibit Number 4 was marked for
15  identification and was attached to the deposition.)
16      MS. LUKEY:  And for those on the phone,
17  Exhibit 4 is ExpertAuPair 028121.
18      MS. REYES:  And before you start asking
19  questions on this regard, I see that this is produced
20  by ExpertAuPair.
21      I know in our production we've redacted
22  the first part of this pursuant to the privilege and



Highly Confidential - Attorneys' Eyes Only

| Page 42 |
|---|
| 1   the Common Interest Doctrine. |
| 2       So I'm a little alarmed that we're using |
| 3   the version that came from ExpertAuPair when our |
| 4   version was redacted. I don't think this is an |
| 5   appropriate document to be questioning this witness |
| 6   about. I don't know what the defendants' perspective |
| 7   is. |
| 8       MS. LUKEY: Well, if this has been |
| 9   redacted by the Alliance, then the defendants' |
| 10   position is that we have to claw it back because it |
| 11   contains privilege. But I haven't even had a chance |
| 12   to read it yet. |
| 13       MS. SMALLS: You can't claw back on behalf |
| 14   of ExpertAuPair. |
| 15       MS. LUKEY: I can claw back on behalf of |
| 16   other sponsors whose privilege is impacted. That's |
| 17   why I have to read it, Dawn, because I have to see |
| 18   whether it relates to my client or potentially the |
| 19   other clients on the phone who may have issues with |
| 20   this. And they probably don't have the document in |
| 21   front of them. |
| 22       MS. REYES: It may be easier -- |

| Page 43 |
|---|
| 1       MS. LUKEY: I'm clawing it back on behalf |
| 2   of Cultural Care. |
| 3       MS. REYES: And it says at the bottom |
| 4   Exhibit 40 as Hayes 8/24/2017, if that helps identify |
| 5   the document. |
| 6       MS. SMALLS: I'd like to note for the |
| 7   record that this document was an exhibit in the |
| 8   deposition. It was not subject to a previous |
| 9   clawback. And now that we are using it as -- it's a |
| 10   perfectly produced document, and we're using it as an |
| 11   exhibit at this deposition. |
| 12       MS. LUKEY: Well, I can tell you there's |
| 13   one other document which you may come to which I am |
| 14   aware of that is similar in nature to this. |
| 15       MS. SMALLS: Well, let's get to that when |
| 16   we get to that. |
| 17       MS. LUKEY: Well, no, because I'm going to |
| 18   state the principle here because it applies. If |
| 19   there is a redacted version of this document, and my |
| 20   guess is that if Cultural Care produced it, it also |
| 21   produced it redacted. |
| 22       But the Alliance produced it redacted, and |

| Page 44 |
|---|
| 1   there's a reason for that. When you've got one |
| 2   document redacted, that is a claim of privilege on |
| 3   behalf of a party. |
| 4       If somebody else has the document but it's |
| 5   not their privilege and they produce it, they can't |
| 6   waive for the party to whom the privilege belongs. |
| 7       And I am looking at this -- I need to |
| 8   check it out. But I believe, because this very often |
| 9   is the case, that this is very likely a product of |
| 10   both the attorney/client privilege of Cultural Care |
| 11   and work product related to it. |
| 12       So if this has been produced in redacted |
| 13   form, I think it is improper to take advantage of the |
| 14   fact that someone else produced the document. |
| 15       This is Cultural Care's privilege and it |
| 16   is the privilege of other sponsors on the phone, I am |
| 17   betting, and not on the phone. The fact that |
| 18   ExpertAuPair produced it does not waive my client's |
| 19   privilege. |
| 20       MS. SMALLS: And I'm sorry. Can you |
| 21   identify the attorney that is on this document? |
| 22       MS. LUKEY: It isn't on the document. |

| Page 45 |
|---|
| 1   It's the same principles that Magistrate Judge Tafoya |
| 2   has already dealt with. You have an appeal pending |
| 3   to Judge Arguello, but that order stands, as you know |
| 4   from the argument -- well, I don't remember if you |
| 5   were present for the argument. |
| 6       You probably read the transcript, because |
| 7   you know, from our argument, my predecessor counsel |
| 8   was regularly giving advice to Cultural Care |
| 9   representatives who were conveying it as part of the |
| 10   joint defense in this case. |
| 11       That's the problem with these |
| 12   interrogations that relate to the period after the |
| 13   filing of the litigation. |
| 14       As I said to Magistrate Judge Tafoya at |
| 15   that hearing, the joint defense was a matter of |
| 16   necessity because the court ordered us to proceed in |
| 17   concert with regard to discovery. |
| 18       So in a joint defense agreement with |
| 19   common interest among the sponsors, and the court |
| 20   found also with regard to the Alliance, there are |
| 21   various situations in which privilege advice from my |
| 22   client's counsel was conveyed to other sponsors. |



Highly Confidential - Attorneys' Eyes Only

Page 46

1  That did not waive the privilege.
2         That's the whole point of Magistrate Judge
3  Tafoya's order, and this is going to be part of the
4  same thing. We're talking here about the same thing,
5  the advice that was being given and then the work
6  product that flowed from that advice.
7         This falls squarely under her order, even
8  though this wasn't one of the documents that was in
9  the first 77 pages of production. So it's been
10 redacted by the Alliance. I think it was likely
11 redacted by us at Cultural Care and we, therefore,
12 under the agreement claw it back.
13        MR. VALDIVIESO: Joan, if I may jump in
14 here since I was at Ms. Hayes's deposition, as you
15 are aware, the whole issue that was resolved by
16 Magistrate Judge TaFoya came about as a result of
17 defendants noticing the documents that were produced
18 by the Alliance asking that those documents be marked
19 attorneys' eyes only.
20        Defendants took an opportunity to review
21 those documents with privilege and several weeks
22 later came back to plaintiffs seeking to claw those

Page 47

1  documents back.
2         This document was used in a deposition.
3  Cultural Care's lawyers were following that
4  deposition. This was used during the deposition.
5  The witness was questioned about it.
6         Our position -- and we're going to just
7  state the position on the record -- is that having
8  used this deposition, having had (sic) noticed that
9  some materials over which defendants were claiming a
10 privilege, defendants had wrong notice. They had an
11 opportunity to seek to claw it back.
12        Now, almost five months later we believe
13 that with respect to -- at least with respect to the
14 particular document here and the language here that
15 any privilege that defendants may have as to this
16 document has been waived.
17        Now, with respect to any privilege that
18 the Alliance may be asserting here, I have requested
19 that the Alliance prepare a privilege log to explain
20 to us what the basis for their privilege is with
21 respect to documents that are being used here.
22        That has not been produced yet. So on the

Page 48

1  days before you arrived, counsel --
2         MS. REYES: Well, I just articulated it.
3         MR. VALDIVIESO: If I could just finish,
4  please.
5         MS. REYES: I just articulated it,
6  attorney/client and common interest.
7         MR. VALDIVIESO: If I could just finish.
8  We discussed with counsel for the Alliance in the
9  prior days as to how we were going to be handling
10 privileged documents, given that they hadn't produced
11 a privilege log.
12        And we agreed that they would provide the
13 information that they would usually include on a
14 privilege log so that we could make a determination.
15 And if we need to bring it to the magistrate judge
16 today, we can do so.
17        MS. REYES: It wouldn't go to the
18 magistrate judge. We're not in Colorado.
19        MS. LUKEY: Right. You would have to go
20 to the judge here.
21        I'm just going to point out, Cultural Care
22 did not have anybody present in person at the Hayes

Page 49

1  deposition. I'm sure there was somebody on the
2  telephone.
3         But for the fact that I have been given
4  the page numbers as each exhibit was marked today, I
5  don't believe there has been any instance, or maybe
6  just one, in which you folks even stated what the
7  document was.
8         So if there was somebody on the phone
9  sitting there trying to track the deposition, I am
10 relatively certain the record will show, if today is
11 any indication of what's been going on, that nobody
12 told them what the document was.
13        So I also need to check and see if we have
14 this document and produced it. I don't have any
15 question but that the claim of privilege relates to
16 Cultural Care and that Cultural Care's attorney was
17 given advice and work product was being carried out
18 in accordance with it.
19        Our position, therefore, is we're entitled
20 to claw it back. I see it now just as I just saw
21 another one because the Alliance drew it to our
22 attention in advance of the deposition today that we



Highly Confidential - Attorneys' Eyes Only

| Page 50 |
| --- |

1 had marked as confidential and that you had used in
2 another deposition without any of us being aware of
3 it because someone else produced it in unredacted
4 form. It's our privilege. We're asserting it.
5 　　　MR. VALDIVIESO: Joan, respectfully, my
6 practice is -- and I conducted the Hayes deposition.
7 But my practice is to state out loud on the phone
8 what the document is. And so we can go back and
9 check the transcript.
10 　　　But irrespective of whether it was
11 announced, I do believe that all defendants received
12 a transcript and with the transcript was included the
13 exhibits that were used. And so it is our position
14 that the defendants have waived any privilege with
15 respect to this document.
16 　　　MS. LUKEY: Well, it isn't the
17 defendants', plural, privilege. It's Cultural Care's
18 privilege, and it's my position that we didn't waive
19 it and I've stated my position.
20 　　　MS. SMALLS: I think we need to figure out
21 what to do.
22 　　　MS. REYES: Yes.

| Page 51 |
| --- |

1 　　　MS. SMALLS: And so I am --
2 　　　MR. QUINN: If I may -- this is Tom Quinn
3 from AuPairCare. We joined in. Obviously, there is
4 an assertion of a protective -- of a privilege, and
5 counsel has known about this since last week. You
6 know we've had this for a while.
7 　　　I suggest that you note it and you move on
8 or we seek a protective order. And if you force us
9 to seek a protective order, that has its own
10 ramifications.
11 　　　I think the best thing at this stage is to
12 wait (sic) your motion for reconsideration to see
13 what's resolved and go from there. But right now
14 you've been advised that this is privileged material.
15 　　　MS. LUKEY: I mean, honestly, my position
16 is if I get something produced from multiple parties
17 and we've got one that's marked privileged and
18 redacted, then I'm not going to use that document
19 until I find out whose privilege it was and whether
20 somebody else had turned over a document that was not
21 their right to turn over.
22 　　　MS. SMALLS: So I think the choices are --

| Page 52 |
| --- |

1 I mean, we can leave the deposition open and so defer
2 issue of this -- I guess you say this document and
3 then one other document.
4 　　　MS. LUKEY: I'm aware of one other.
5 　　　MS. SMALLS: Okay. But this general
6 principle that we fundamentally disagree with and
7 also think to the extent that there was any privilege
8 that you've waived it.
9 　　　MS. LUKEY: We didn't waive anything.
10 　　　MS. SMALLS: Regardless, I don't want to
11 argue it because we're clearly not going to resolve
12 it.
13 　　　Like, we are firm in our position that
14 this is entirely proper and inappropriate. We waited
15 for six, eight months for this deposition -- it's
16 finally here -- trying to get the right documents,
17 trying to get the redactions, trying to get the
18 privilege log.
19 　　　We're here. We have a document that was
20 properly produced to us that we reviewed that we are
21 ready to question Mr. Zherka about.
22 　　　If you want to fight over the privilege --

| Page 53 |
| --- |

1 I mean, I'm trying to figure out a path forward.
2 We're not conceding the point, nor are we conceding
3 the point that we are just going to defer for this
4 general -- I mean, there's a waiver -- there's a
5 waiver issue here as well.
6 　　　And so my proposal would be to hold open
7 the deposition for this document and your other
8 document that you are clawing back or making whatever
9 common interest argument that you are making.
10 　　　We don't know what other documents you're
11 claiming privilege on and on what basis. That hasn't
12 been produced to us. So I think that's the most
13 constructive way to move forward.
14 　　　But if you don't want to do that and you
15 want to call the court and try to explain what's
16 going on here, whatever jurisdiction you think is
17 appropriate, we're happy to do that.
18 　　　MS. REYES: So first of all, this document
19 was produced. It was produced in redacted form. So
20 what I am saying is right now I am articulating, as
21 we agreed on the first day, that this is -- the
22 redaction is based on the attorney/client privilege



Highly Confidential - Attorneys' Eyes Only

Page 54

1  and the Common Interest Doctrine.
2       So -- and it sounds like a work product
3  privilege as well.
4       MS. SMALLS:  And we disagree with that
5  designation.  I can read it.
6       MS. REYES:  I understand, but I'm just
7  trying to --
8       MS. SMALLS:  I'm looking at an unredacted
9  copy of this document and we disagree that there is
10  any basis to withhold it on the basis of
11  attorney/client privilege.
12       MS. REYES:  One of the few documents I've
13  read in this case is the magistrate judge's order on
14  the production of 1377.  And I was very mindful of
15  that in going through these documents.
16       And this first email, not the one from
17  designation, Aupair@state.gov.  But this email that
18  starts with greetings, that is covered by what the
19  magistrate judge found.  That was my reading of it.
20  That's how I applied it, and that is why.
21       We are not leaving this deposition open,
22  so we won't agree to that.  Let me just ask you a --

Page 55

1  as we make this determination, let me just ascertain
2  factors.
3       I don't have a position on the defendants,
4  et cetera, so I'm just asking on behalf of the
5  Alliance.  If we allow Mr. Zherka to testify about
6  it, will you agree that it's a non-waiver of the
7  Alliance's assertion of privileges?
8       MS. SMALL:  Yes.
9       MS. REYES:  Okay.  And can you give us a
10  minute so that we can consult and determine how we
11  want to proceed forward?  Because I need to make sure
12  that --
13       MS. SMALLS:  Sure.
14       MS. LUKEY:  That doesn't mean that I'm
15  going to agree that it can be used if it was our
16  claim of privilege.
17       MS. REYES:  Agreed.  Agreed.  We just need
18  to take a break because I need to work this through.
19       MR. VALDIVIESO:  And Joan, I would advise
20  or suggest, respectfully, that if you're going to
21  take a position with respect to a waiver that you do
22  go -- I think it might be helpful for you to see what

Page 56

1  went down at Ms. Hayes's deposition and what
2  information Cultural Care was aware of to determine
3  whether you in good faith think that there was a
4  waiver for her or not because my position, and I
5  believe it's a good faith position, is that there was
6  a waiver here.
7       And we can discuss it after you've had a
8  chance to review it.
9       MS. LUKEY:  I'm sure that there was an
10  associate on the phone.  I'm not going to hang the
11  associate out to dry here.  But I am going to say
12  that if somebody referenced a document and you don't
13  have the documents in front of you, if you didn't
14  know what it was or if he didn't know what it was,
15  I'm not going to blame her or him for what happened.
16       But that doesn't mean we're not going to
17  take the position that the document should not have
18  been used.  I mean, you had it in redacted form.
19       MR. VALDIVIESO:  And one other thing I
20  will say during -- while you all are conferring, I do
21  believe that this document has not only been used at
22  Ms. Hayes' deposition, but it's been used in several

Page 57

1  depositions throughout this matter.
2       So not only was there an opportunity to
3  assert privilege and claw it back once, but I believe
4  -- and I will confirm this, but -- that it was used
5  -- I believe it was used at Ms. Hoggard's deposition.
6       But I will confirm it's been used not only
7  once, but at least more than once in my recollection.
8       MS. LUKEY:  One of the big problems with
9  joint defense agreements, which in this case was -- I
10  was going to say foisted.  I'll be more polite --
11  imposed on us by the court, which Magistrate Judge
12  Tafoya acknowledged at the hearing when I said that
13  in front of her, is that you get into a situation
14  where every party is entitled to see the documents of
15  the others except if they happen to fall into
16  proprietary exception for attorneys' eyes only and
17  then you're at other people's mercy.
18       So if this privilege belongs to Cultural
19  Care and you talked about it in depositions, knowing
20  that it was in redacted form and you choose to ignore
21  that and accept it from someone who was not the
22  source of the privilege, I think that's improper.



Highly Confidential - Attorneys' Eyes Only

Page 58

1      MR. VALDIVIESO:  And one last thing, Joan.
2   I don't believe -- I'm unaware that Cultural Care has
3   sought to redact this document.  I will try to
4   confirm during a break, but --
5      MS. LUKEY:  I just sent an email.  I don't
6   even know if we produced this document.
7      MR. VALDIVIESO:  And if you hadn't
8   produced that document, I believe that in itself
9   would have been improper, given that it's clearly
10  responsive to the issues here.
11     MS. SMALLS:  Before we go off the record,
12  I just want to ask one more question that is not
13  related to the document and --
14     (Simultaneously speaking.)
15     MS. LUKEY:  If I could just clarify that,
16  Dawn.  This document is dated February 19th, 2016.
17  We have an agreement with Boies Schiller that dates
18  back to our first entry into the case that our ESI
19  production would stop on the day of service of
20  Cultural Care in January of 2015.
21     All of your liability allegations in your
22  amended complaint precede the filing of the lawsuit.

Page 59

1   We entered into an agreement that we were not going
2   to produce ESI that came after that.  It was accepted
3   and that's -- you don't have documents from us.
4      MS. SMALLS:  That's not correct, Joan.
5      MS. LUKEY:  It is correct.  We did not
6   make an ESI production after the date of service.
7      MS. SMALLS:  Whether you made an ESI
8   production or not, you and I have gone back and forth
9   about whether there was an agreement between Boies,
10  Schiller --
11     MS. LUKEY:  It was done by Lauren Lewis
12  (phonetic).
13     MS. SMALLS:  Okay.  Regardless --
14     MR. VALDIVIESO:  And if that's the case,
15  then I don't understand how you could have produced
16  it in redacted form.
17     MS. LUKEY:  Well, we wouldn't have.
18     MS. SMALLS:  Let's just take a break and
19  figure out how we're going to proceed because I think
20  we -- there is no point in litigating this.  There is
21  no arbiter in this room.  There is no judge to come
22  out, one way or the other.

Page 60

1      So we as counsel need to figure out how
2   we're going to proceed.  This is the document before
3   us at this time.
4      Before that, I have one question not
5   related to this document that I would like to ask
6   before we break.  And then we can figure out how to
7   go from there.
8      MS. REYES:  That sounds good.
9      BY MS. SMALLS:
10   Q.   Mr. Zherka, is the Alliance part of the
11  joint defense agreement?
12     MS. REYES:  Oh, I'm sorry.
13     MS. LUKEY:  I would ask that the witness
14  answer, not counsel.
15     MS. REYES:  Hold on.
16     MS. SMALLS:  Hold on.  I'll rephrase.
17     BY MS. SMALLS:
18   Q.   Do you know what the joint defense
19  agreement is?
20   A.   Do I know what the joint -- I know what a
21  joint defense agreement is, yes.
22   Q.   Do you know what it is in theory?

Page 61

1    A.   Generally, yes.  I do know what it is in
2   theory.
3    Q.   Okay.  So you know what a joint defense
4   agreement is in general.  Do you know what a joint
5   defense agreement is in the context of this
6   litigation?
7      MS. REYES:  And let me just say that to
8   the extent your answer involves information that was
9   given to you by legal counsel that you don't have
10  independent of legal counsel -- am I correct in that
11  assumption?
12     THE WITNESS:  You're correct.
13     MS. REYES:  So I'm going to instruct the
14  witness not to answer that question because it's
15  based on advice of counsel, information given to him
16  by legal counsel.
17     BY MS. SMALLS:
18   Q.   Do you know whether the Alliance is part
19  of a joint defense agreement?
20     MS. REYES:  And I have the same -- that
21  information is provided one way or another only by
22  legal counsel, correct?



16 (Pages 58 to 61)

Highly Confidential - Attorneys' Eyes Only

Page 62

1    A.   By legal counsel, yes.
2         MS. REYES:  So I'm going to instruct the
3    witness not to answer.
4         MS. SMALLS:  Okay.  We can break.
5         THE VIDEOGRAPHER:  The time is now 11:53.
6    Going off the record ending video number 1.
7         (A break was taken.)
8         THE VIDEOGRAPHER:  We're back on the
9    record.  The time is 12:07.
10        MS. REYES:  So before we went off the
11   record, we were talking about how we were going to
12   approach Exhibit 4 to Mr. Zherka's deposition.
13        And based on the fact that we have
14   redacted this every time it appears, we are not going
15   to allow Mr. Zherka to answer questions about this
16   document.
17        MS. LUKEY:  For the record, that was
18   Cultural Care's claim of redaction that caused the
19   Alliance to redact it.
20        MS. SMALLS:  It keeps changing --
21        MS. LUKEY:  Claim of privilege.
22        MS. REYES:  It's asserted by both the

Page 63

1    Alliance and Cultural Care, in other words, the
2    redactions.
3         MR. VALDIVIESO:  I will say a couple
4    things on the record.  First of all, this document
5    was produced by two of the defendants.  ExpertAuPair
6    produced it at Bates No. 28121 and GoAuPair produced
7    it at 67099.  GoAuPair designated it attorneys' eyes
8    only and confidential.
9         The document has been used at least in the
10   depositions of Sarah McNamara, Theresa Nelson, Bill
11   Capler, Shannon Pitts, Ellen Hoggard, and Susan
12   Hayes.  At none of those depositions did any
13   defendant assert a claim of privilege.
14        Now, my question for you, Ms. Reyes, is
15   just so that we can have a clear record, I understand
16   that -- and correct me if I'm wrong.
17        But I'm understanding that Cultural Care
18   has asserted an attorney/client privilege over the
19   portions that you sought to redact and that you are
20   asserting a common interest privilege and that your
21   basis for redaction is the underlying privilege
22   belongs to Cultural Care, but you, as a common

Page 64

1    interest -- you're alleging that you're in a common
2    interest position with respect to Cultural Care.
3         So you're seeking to redact the document;
4    is that correct?
5         MS. REYES:  That's correct.  I think it's
6    not just attorney/client privilege.  I think it's
7    also work product, but yeah.
8         MR. VALDIVIESO:  But my question is:  Is
9    any of the attorney/client privilege or work product
10   claim, is it specific -- does the Alliance have an
11   independent attorney/client privilege claim or work
12   product claim as to this document or are you
13   asserting it on behalf of Cultural Care?
14        MS. REYES:  The latter.
15        MS. LUKEY:  I can't comment, obviously, on
16   the depositions you just referenced because I haven't
17   had the opportunity to look at anything.
18        MR. VALDIVIESO:  Okay.  But given that
19   that's the position, our position is that -- given
20   that the claim to privilege here is based on
21   underlying claim to privilege that belongs -- that is
22   asserted by Cultural Care, our position is that given

Page 65

1    that it's been used at least at six depositions that
2    Cultural Care has waived that privilege because it
3    had the opportunity to claw those documents back at
4    least six times.
5         And in particular with Ms. Hayes'
6    deposition, by that point, defendants had notice of,
7    in particular, the time frame over which you are
8    claiming privilege for the Alliance documents.  And
9    so, you know, it's been -- our position is it's been
10   waived six times over.
11        MS. LUKEY:  And we disagree.
12        MR. VALDIVIESO:  And we understand that.
13   So I think we might want to take a break.  But I
14   think this could be easily resolved by a call to the
15   DC district court if you want to keep the position
16   that you haven't waived it.
17        MS. LUKEY:  I'm maintaining that position
18   and you're going to have to explain how you made
19   known to people on the phone what it was you were
20   questioning about.
21        And I have not had the opportunity to look
22   at any of the transcripts you're talking about to



Highly Confidential - Attorneys' Eyes Only

Page 66

1  verify, nor do I know who, if anyone, was on the
2  phone in each instance.
3       And I would want them to be able to
4  comment obviously on this issue, because obviously,
5  sitting here today, as I've said, unless I was the
6  one who told the people on the phone the number, they
7  wouldn't get it.
8       And secondly, we're talking about a case
9  in which the documents number in the tens of
10  thousands. I'm not exactly sure how you would expect
11  somebody on the sitting -- sitting on the phone as
12  you're going through saying, okay, even if you gave
13  them the page number, to be able to instantly know
14  what document that is.
15       I would not be able to and I'm the senior
16  member of the trial team.
17       MR. VALDIVIESO: Understood.
18       MS. SMALLS: So let me just say a couple
19  of things. 1) it has been used, as Juan said, at at
20  least six depositions and at least certain of those
21  witnesses have said that they cannot comment on the
22  document because they did not author it.

Page 67

1       And so I'd like to state for the record
2  that after using the document at at least six
3  depositions we have the author of the email at issue
4  and are being -- and the witness has been instructed
5  not to answer counsel's questions.
6       So, again, I come to the proposition of
7  what to do. Ms. Lukey has raised several points
8  about how she has not had a chance to review
9  transcripts and consult with her colleagues. It is a
10  privilege asserted on behalf of Cultural Care.
11       Again, we are not waiving our right to
12  question the witness about this document, so there
13  are only two options.
14       The option is that we leave the
15  deposition open for this document or any other
16  documents with which you are withholding or redacting
17  based on a common interest or other privilege, or we
18  go to the court and explain this issue and get a
19  ruling on it today.
20       MS. REYES: So we are not willing to leave
21  the deposition open. Regardless, obviously, if an
22  appropriate judge says you're going back for a

Page 68

1  deposition, that is an order that we would follow.
2  But we are not going to voluntarily agree to leave
3  the deposition open.
4       I think even if you say, we want to leave
5  it open, we wouldn't consent absent a court order.
6       With regard to having a judge decide it at
7  this particular point in time, you know, you would
8  need, it seems to me -- I don't know, but it seems to
9  me that you would need to get that judge -- the
10  magistrate court's order because that's what we're
11  basing -- it is our reading of that that has informed
12  our discovery production in this case, including of
13  this document.
14       I have no idea if a DC court judge will
15  hear it or not hear it.
16       MS. SMALLS: I agree with all of the kind
17  of fundamental propositions that you have put
18  forward.
19       We have a dispute that needs to be
20  resolved by an arbiter as to whether the designation
21  that you have given this document is appropriate, 1);
22  and 2) if it's not appropriate, plaintiffs have a

Page 69

1  right to question the witness who authored the
2  document about the document.
3       So I mean --
4       MS. LUKEY: Can I make a suggestion here?
5       MS. SMALLS: Sure.
6       MS. LUKEY: Functionally, it doesn't
7  really matter whether the Alliance says we're not
8  willing to, quote, hold the deposition open, which
9  has always been an amorphous concept to which we as
10  lawyers taking a deposition say, I'm holding it open,
11  and we as lawyers defending say, we're not agreeing
12  to hold it open.
13       At the end of the day, it's the court that
14  tells us. And this in particular where it falls into
15  an issue of privilege and work product and appears to
16  fall under the purview of the magistrate judge's
17  order, which is now an appeal, is one of those
18  situations where we're only going to know whether the
19  questions have to be answered when a court says so.
20       And I'm sure there is a way that this can
21  be wrapped into the appeal so that the court knows
22  about it.



Highly Confidential - Attorneys' Eyes Only

Page 70

1    MS. SMALLS:  Well, let me ask Ms. Reyes
2  another question, which may be -- may be the same
3  question, but I will ask it.
4    Will you agree to continue the deposition
5  or open -- reopen the deposition if a court
6  determines -- makes a ruling that this document is,
7  in fact, not privileged?
8    MS. REYES:  Let me put it this way:  If a
9  court orders that Mr. Zherka reappear for a
10  deposition on that particular question, we're going
11  to follow an appropriate court order.
12    MS. SMALLS:  Of course, you are.  You're a
13  member of the bar.
14    MS. REYES:  Right.  Exactly.
15    MS. SMALLS:  That's the question I was
16  asking.
17    MS. REYES:  So the answer to your
18  question, I guess, is if there's a court order that
19  requires him to resit for a deposition as a result of
20  the court's ruling, then we would sit for a
21  deposition, if it's by the right court.
22    MS. SMALLS:  So if a court determines that

Page 71

1  this document was not privileged and that you
2  directing your witness not to answer was
3  inappropriate or not based on proper privilege, you
4  are not voluntarily going to reproduce your witness.
5  The court would also have to order him to reappear.
6    MS. REYES:  The appropriate court with
7  jurisdiction would have to order him to appear.
8    MS. SMALLS:  Or a court.
9    MS. REYES:  Whatever the court is with
10  jurisdiction over Mr. Zherka, but yes.  Correct.
11  Your proposition is --
12    MS. SMALLS:  I mean, a court.
13    (Simultaneously speaking.)
14    MS. REYES:  I think a subpoena -- there is
15  no subpoena for Mr. Zherka.  But I think if -- had
16  there been a subpoena, it would have to be issued out
17  of -- it would only be enforceable in DC.  So I don't
18  think the Colorado court could -- would have
19  jurisdiction to order Mr. Zherka back in.
20    I think it would have to be a DC court and
21  I think a subpoena would have to be issued.  There
22  isn't one for today.

Page 72

1    MS. SMALLS:  All right.  Let's break.
2    THE VIDEOGRAPHER:  The time is now 12:17.
3  Going off the record.
4    (Whereupon, at 12:17 p.m., a
5    luncheon recess was taken.)
6    - - -
7    A F T E R N O O N   S E S S I O N
8    (1:13 p.m.)
9  Whereupon,
10    ILIR ZHERKA
11  was called for continued examination, and having been
12  previously duly sworn was examined and testified
13  further as follows:
14    (Exhibit Number 5 was marked for
15  identification and was attached to the deposition.)
16    THE VIDEOGRAPHER:  We are on the record.
17  The time is now 1:13.
18    MS. REYES:  So a couple of things.  I
19  don't know how relevant they are.  But we had agreed
20  during the break that if this issue were to be
21  decided by the magistrate judge we would bring Mr.
22  Zherka back if the magistrate judge found that this

Page 73

1  was not a properly privileged document.
2    I think -- and correct me if I'm wrong --
3  that we also -- the resolution during the break --
4  and I'm articulating what I understand it to be -- is
5  that there are two documents that were marked for
6  redactions by the Alliance as a result of an
7  assertion by Cultural Care of the privilege and Work
8  Product Doctrine.
9    One is Deposition Exhibit 4.  The other
10  one hasn't been marked yet, but will be marked as
11  Deposition Exhibit 5.
12    For both of those, what we are going to do
13  is mark this portion of the transcript, highly
14  confidential.  You will question Mr. Zherka about
15  both Exhibits 4 and 5 when you get to it.  Neither
16  side -- none of us will have waived our positions
17  with regard to these documents.
18    And I'll let each of you articulate that
19  instead.  But the bottom-line is we're going to go
20  forward with your questioning to Mr. Zherka and
21  appropriately mark the transcript as highly
22  confidential in that regard.



Highly Confidential - Attorneys' Eyes Only

**Page 74**

1    MS. LUKEY: So highly confidential and
2  attorneys' eyes only. And Cultural Care's position,
3  as indicated off the record, is that permitting
4  questioning to go forward, which is the most
5  expedient way to handle the problem now, will not be
6  used to claim waiver of any privilege or Work Product
7  Doctrine.
8    While you preserve all prior claims, what
9  happens now in this questioning will not be used as a
10  basis of claiming it as a waiver.
11    MS. SMALLS: Okay. And plaintiffs agree
12  to those terms to allow the deposition to proceed.
13    MR. VALDIVIESO: The only thing that I
14  will add on the record now, which kind of had been
15  stated on the record before, with respect to Exhibit
16  5, that exhibit has been used in prior depositions as
17  well and has been used in the depositions of Ellen
18  Hoggard and the deposition of Ruth Ferry.
19    And so our position is the same as with
20  respect to Exhibit 4, which the prior use of that
21  exhibit in a deposition with the failure to timely
22  claw it back constituted a waiver.

**Page 75**

1    MS. LUKEY: I've received a response from
2  my office that the documents previously reviewed were
3  believed to be simply Mr. Zherka's own musings and
4  only when we saw them in the context of the Alliance
5  documents did we realize -- or did the team realize
6  that they were part of the Cultural Care privilege
7  documents based on advice from Cultural Care's
8  attorney passed on to others.
9    But anyway, we've got agreement for moving
10  forward now.
11    EXAMINATION BY COUNSEL FOR PLAINTIFFS
12    CONTINUED
13    BY MS. SMALLS:
14    Q.  So Mr. Zherka, before the break, I asked
15  you whether you ever told au pair sponsors to take
16  one position over another. So I will ask that
17  question again.
18    Do you ever tell au pair sponsors to take
19  one position over another?
20    A.  We advise au pair sponsors of the Alliance
21  position when we have one.
22    Q.  Okay. Okay. And when you advise au pair

**Page 76**

1  sponsors of your position, do you urge them to follow
2  it?
3    A.  You're asking me a hypothetical. The
4  answer is we share our positions. We make it known
5  to our members, and then we act -- we, being the
6  Alliance -- accordingly.
7    Q.  Okay. Let's go to Exhibit 4.
8    MS. REYES: And this is where we start the
9  highly confidential attorneys eyes only?
10    MS. SMALLS: Yes.
11    BY MS. SMALLS:
12    Q.  Do you need a moment to review this
13  document?
14    A.  I've reviewed it.



Highly Confidential - Attorneys' Eyes Only



Page 78



Highly Confidential - Attorneys' Eyes Only



Page 82



Highly Confidential - Attorneys' Eyes Only

Page 146



2          BY MS. SMALLS:
3          Q.   Okay.  In your understanding, are EF and
4    Cultural Care the same thing?
5          MS. LUKEY:  Objection.  How can he have
6    any knowledge of that?
7          MS. SMALLS:  Because he --
8          A.   I don't have specific knowledge of whether
9    they're the same thing.  EF is the member
10   organization of the Alliance.
11         BY MS. SMALLS:
12         Q.   EF is the member organization of the
13   Alliance.  And is EF the participant on the Au Pair
14   Program group?
15         MS. LUKEY:  Objection.
16         A.   The program group.  I don't know that we
17   have a program group.
18         BY MS. SMALLS:
19         Q.   Well, your au pair --
20         A.   Do we --
21         Q.   -- Au Pair Program sponsors.  So is EF the
22   member of the Alliance for the J-1 au pair designee?

Page 147

1          A.   Yes I believe so.
2          Q.   So when you're referring to EF in this
3    email, you're referring to EF as the au pair sponsor
4    designee; is that correct?
5          MS. LUKEY:  Objection to form.
6          A.   I believe I'm just referring to EF.
7          BY MS. SMALLS:

Page 148



38 (Pages 146 to 149)

Highly Confidential - Attorneys' Eyes Only

Page 150

1  being made in your questions and carried forward.
2       EF foundation is a member. It's not the
3  au pair member. So we're going to be going back
4  through all of this when you're done for me to
5  clarify that. Cultural Care, Inc. is the au pair
6  member.
7       MS. SMALLS: I can't believe you just did
8  that on the record. The witness is testifying. I
9  mean, this is a member organization of -- I mean,
10 he's got to know who is -- who is the au pair
11 designee that can speak --
12      MS. LUKEY: The au pair designee of the
13 state department is Cultural Care, Inc. The
14 designation of the student summer -- now I forget
15 which the other two programs are.
16      MS. SMALLS: Well, you just offered
17 testimony about your client.
18      MS. LUKEY: I am saying to you that you
19 are creating a misimpression.
20      MS. SMALLS: I'm not creating a
21 misimpression. I'm going based on the document and
22 I'm going based on what he's testifying, what his

Page 151

1  impression is of who he's dealing with and --
2       (Simultaneously speaking addressed by the
3  reporter.)
4       MS. LUKEY: He, obviously, doesn't have
5  the knowledge.
6       MS. SMALLS: Okay. Well, that's not what
7  he said. He didn't say he didn't have knowledge.
8       MS. LUKEY: Well, that's why I'm saying
9  we're going to be spending an hour and a half with me
10 having to cross-examine him about what he does and
11 doesn't know because he clearly doesn't know that.
12      MS. SMALLS: Well, the record is the
13 record.
14      MS. LUKEY: Well, the state department has
15 the record of who the sponsor is. So why would you
16 want to create a misimpression?
17      MS. SMALLS: I'm not creating a
18 misimpression.
19      MS. LUKEY: There is no --
20      MS. SMALLS: You're client has created a
21 misimpression to the point where even the Alliance
22 doesn't know who they're dealing with, and that's

Page 152

1  what I was asking him.
2       But that's fine. You've now done a
3  soliloquy on the record clarifying the distinction
4  between EF Foundation and Cultural Care, which is not
5  of common knowledge to anybody, including the Chair
6  of the Alliance.
7       But it's fine. I will ask questions
8  specifically of Cultural Care. This document says
9  EF. He referred to EF. He referred to counsel for
10 EF being in the room. And I was asking him --
11      MS. LUKEY: I should be so lucky. I'm not
12 counsel for EF, which is the umbrella organization.
13 I'm counsel for Cultural Care.
14      MS. SMALLS: Okay. I understand. Joan,
15 you and I are fully aware of what I was asking and
16 why I was asking it.
17      MS. LUKEY: Yeah, but you then included in
18 your questions that Cultural Care was the sponsor.
19 That's a matter of record -- I mean that -- sorry --
20 that EF was a sponsor. Cultural Care is the sponsor.
21      MS. SMALLS: Okay. I'm going to go back
22 to my question.

Page 153

1       BY MS. SMALLS:



Highly Confidential - Attorneys' Eyes Only



**Page 154**

1     MS. SMALLS: I'm on APEX 20/20 10085. So
2  that's the reason that I'm referring to EF because EF
3  is what is referred to in that document about setting
4  up meetings on the hill.
5     MS. LUKEY: You can refer to it as you
6  wish. What I'm saying to you is that the entity
7  which is the sponsor in the Au Pair Program, as
8  opposed to other programs, is Cultural Care, Inc.
9     Now, whether he mixed them up, I can't
10  tell you.
11     MS. SMALLS: I understand, but I'm trying
12  to ask --
13     MS. LUKEY: Well, then ask about Cultural
14  Care if you're asking about the Au Pair Program.
15     MS. SMALLS: I'm just trying to ask about
16  what he said in this document. He refers to it as,
17  "EF."
18     MS. LUKEY: Then do as you wish. I can't
19  control how you question him. I'm just telling you
20  that a misimpression is being created.
21     MS. SMALLS: But you did. I mean, you
22  shut down questioning to provide a clarification that

**Page 155**

1  was not necessary.
2     MS. LUKEY: I did so because you referred
3  to "EF" as being the sponsor -- the designated
4  sponsor. It is not.
5     MS. SMALLS: Okay. Can I say EF/Cultural
6  Care for the purposes of referring back to this
7  document so that you -- I'm not trying to do a
8  gotcha. I'm just trying to ask a question about this
9  document.
10     MS. LUKEY: I can't give you guidance on
11  that. All I can tell you is who the sponsor is. If
12  you want to refer to the document by --
13     (Simultaneously speaking.)
14     MS. SMALLS: Alright. Then I will do
15  that, which is where I started.
16     BY MS. SMALLS:

**Page 156**

13     MS. SMALLS: Exhibit No. 11.
14     (Exhibit Number 11 was marked for
15  identification and was attached to the deposition.)
16     MS. LUKEY: Are we still on the
17  confidential attorneys' eyes only?
18     MS. SMALLS: I don't know. Are you
19  designating this --
20     MS. LUKEY: I haven't looked at it. Is
21  this the one you just handed me? Just a second.
22  This is not one of the letters that we were talking



Highly Confidential - Attorneys' Eyes Only

Page 162

1    Q.   So you learned about the Au Pair Program
2  upon assuming this position; is that correct?
3    A.   No.
4    Q.   Okay.  How did you learn about the Au Pair
5  Program?
6    A.   I was generally aware of the Au Pair
7  Program, but I didn't have any personal experience
8  with it.  No.
9    Q.   For this position that you say that you
10 came to on your own, when did you form that position?
11   A.   Which position is that?
12   Q.   About the need for a national uniform au
13 pair stipend.
14   A.   I think what I said was -- is my
15 understanding of federal policy is that federal
16 policies have various elements.
17        Typically, in response to a bill passed by
18 Congress or regulatory action by the Executive
19 Branch, that includes an opportunity for comment and
20 review, and that policies go through that process
21 starting with the U.S. Congress and through a federal
22 agency have policies that are uniform across the

Page 163

1  United States to achieve a federal purpose.
2        So I understood the Au Pair Program as
3  part of the J-1 programs to be federal in nature and
4  have, as a result, those attributes.

Page 164

2        BY MS. SMALLS:
3    Q.   Okay.  Thank you.
4        THE WITNESS:  I wonder if this would be a
5  good time to head to the men's room.
6        THE VIDEOGRAPHER:  The time is now 4:04.
7  We're going off the record.
8        (A break was taken.)
9        (Exhibit Number 12 was marked for
10 identification and was attached to the deposition.)
11       THE VIDEOGRAPHER:  Back on the record.
12 The time is now 4:20.
13       BY MS. SMALLS:

MAGNA
LEGAL SERVICES

