1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
     Case No. 14-cv-03074-CMA-KMT
3    _____

4    JOHANA PAOLA BELTRAN, et al.,

5         Plaintiffs,

6    vs.

7    INTEREXCHANGE, INC., et al.,

8         Defendants.
     _____
9

10           Proceedings before KATHLEEN M. TAFOYA, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 9:42 a.m., November 17,

13   2017, in the United States Courthouse, Denver, Colorado.

14   _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                           APPEARANCES

19           SEAN RODRIGUEZ, NINA DISALVO, and JUAN VALDIVIESO,

20   Attorneys at Law, appearing for plaintiffs.

21           JOSEPH HUNT, Attorney at Law, appearing for

22   defendant InterExchange, Inc.

23   _____

24                         MOTION HEARING

25
```

Case No. 1:14-cv-03074-CMA-KMT Document 918-11 filed 03/01/18 USDC Colorado pg 2 of 10
Case 1:14-cv-03074-CMA-KMT Document 830-11 Filed 02/10/18 USDC Colorado Page 2 of 10

2

```
1                    APPEARANCES (Cont'd)
2              BOGDAN ENICA, ttorney at Law, appearing for
3    defendant Expert Group International, Inc. d/b/a Expert
4    AuPair.
5              MARTHA FITZGERALD and DAVID MESCHKE, Attorneys at
6    Law, appearing for defendant EuRaupair InterCultural Child
7    Care Program.
8              JONATHAN BENDER, Attorney at Law, appearing for
9    defendant Cultural Homestay International.
10             JOAN LUKEY and DIANE HAZEL, Attorneys at Law,
11   appearing for defendant Cultural Care, Inc.
12              KATHRYN REILLY, Attorney at Law, appearing for
13   defendants Au Pair International, Inc., Agent Au Pair and
14   GoAuPair.
15              SUSAN SCHAECHER, Attorney at Law, appearing for
16   defendant APF Global Exchange, NFP.
17              ROBERT TUCKER, Attorney at Law, appearing for
18   defendant American Institute for Foreign Exchange, d/b/a Au
19   Pair in America.
20              MARTIN ESTEVAO, Attorney at Law, appearing for
21   defendant GreatAuPair, LLC.
22              LARRY STONE, Attorney at Law, appearing for
23   defendant A.P.E.X. American Professional Exchange, LLC.
24   _____
25
```

40

1    they do -- and I believe that they do -- that they weren't

2    privileged, and he turned them over.

3    So it's kind of hard for me to look at the

4    defendants with anything but somewhat, Well, what do you do,

5    you know?  You subpoenaed them.  Their lawyer looked at them

6    and said, They're not the privileged, here you go.

7    MS. LUKEY:  That actually, Your Honor, you'll see

8    in the papers that there is a discussion of the communication

9    that came from this lawyer who was very shortly thereafter

10    off the case, as you can imagine, replaced by somebody else.

11    The lawyer was not a regular for the Alliance.

12    There is a letter from him in which he says --

13    Okay, here are the first 77 pages and we've got a ton more

14    documents, but it's going to take a long time to review them

15    for privilege and I don't have time to it that so why don't I

16    just do that all to you, subject to a clawback agreement,

17    which, of course, the sponsors and the Alliance immediately

18    nixed.

19    There is no indication that he made a privilege

20    review on these documents, nor could he have, frankly,

21    although if he bothered to read them, he would surely have

22    recognized the legal strategy was contained within the notes.

23    But if he was concerned about privilege attaching to the

24    80,000, or whatever it is, pages of records of the Alliance,

25    that he wasn't going to go through, he was just going to

41

1    throw them all at plaintiffs because he wasn't going to look
2    for privilege, that would have to be on the same basis, the
3    privilege either existed or didn't exist, and he was
4    concerned about there being a privilege, but he wasn't going
5    to go to the trouble of figuring it out.  Again, unthinkable,
6    but that's what his communication says.
7              So I do not believe this Court can infer, nor do I
8    believe that the plaintiffs could infer, that he had actually
9    made a privilege review, even if he could have.
10             Now, just to go back to a point that you just made,
11   the Common Interest Doctrine only comes into play with a
12   separate entity, a nonparty.  The Alliance is not an agent or
13   representative here as we make clear in our papers.  They are
14   a nonparty separate entity that has a common interest with
15   the sponsors; namely -- and this is what the notes in their
16   entirety are about -- Can we save this program?  What can we
17   do?  Can we get the State Department to stop hiding, sitting
18   back and refusing to say anything and to come forward?
19   That's all in there.  And I don't know how you look at that
20   and don't recognize that you just have a road map to the
21   views of various counsel.
22             What they will now know that they may not have
23   quickly realized before is where comments are made that
24   clearly involve legal principles and knowledge being stated
25   by non-lawyers where it is not expressly noted, My counsel

Case No. 1:14-cv-03074-CMA-KMT Document 918-11 filed 03/01/18 USDC Colorado pg 5 of 10
Case 1:14-cv-03074-CMA-KMT Document 838-11 Filed 02/10/18 USDC Colorado Page 5 of 10

42

1 said X, maybe they thought these sponsors were very
2 sophisticated about the law, even though they weren't
3 lawyers, although I think that's unlikely. But where the
4 comments are made, Here is what the lawyers said, there is no
5 question in my mind. It is what it is. I did not hear any
6 statement from my brother that he had not read them, just
7 that he hadn't studied them in detail.
8 They were starting to be used at the deposition,
9 and I don't know about the conversation he is alluding to. I
10 don't know who was there for the deponent.
11 I do know there was often confusion because
12 multiple attorneys at multiple law firms actually have to
13 cover because there is so much going on in the case. And
14 whoever this attorney is, I don't know if she was one who
15 should or would have been aware of what the Alliance did, but
16 the truth is -- and there is no disputing this -- that
17 attorney, who was quickly removed from the case, didn't
18 provide it to anybody, except the plaintiff's counsel. And
19 the plaintiff's counsel had an obligation before using it to
20 provide it to defendants.
21 We think that was recognized because as soon as
22 other defendants present objected, we all then received
23 scanned copies in the midst of the deposition after the
24 objections were put on the record. In the confusion that
25 ensued, plaintiff's counsel wanted to proceed with the

43

1 deposition; defendants who couldn't reach the full defense
2 group to reach a coordinated decision said, Okay, but this is
3 all without prejudice, it's all basically protected under our
4 protective order, and we reserve our rights until we can sort
5 out what happened here.
6            But the only attorneys in this case who knew what
7 the Alliance had done were the plaintiff's attorney -- and
8 what the Alliance attorney had done, I should say, and not
9 the defendants.
10           So that's why we're now in a posture where you two
11 get to know what some of the strategy decisions have been and
12 where we think the strengths and weaknesses are, and what we
13 think about the FLSA claims and the like.  So be it.
14           It is not as I would prefer it, it is not as it
15 should be.  But it is what, it is.  Thank you.
16           THE COURT:  Let me ask you one question that I'm a
17 little bit -- I think I know the answer to this by the fact
18 that it has not been said, but I want to make sure of it.
19           The meeting -- and I don't know if there was more
20 than one, but the meeting that we've been talking about that
21 were facilitated, using your word, by the Alliance, was any
22 attorney directing that those meetings be held or facilitated
23 by the Alliance, the defense attorneys?
24           MS. LUKEY:  It's more than one meeting.  I know the
25 answer because it has it to do with my predecessor; but it is

Case No. 1:14-cv-03074-CMA-KMT Document 918-11 filed 03/01/18 USDC Colorado pg 7 of 10
Case 1:14-cv-03074-CMA-KMT Document 838-11 Filed 02/10/18 USDC Colorado Page 7 of 10

44

1  not in the record and I don't know whether the Court would
2  like to us do a supplement or would rather let the record
3  stand.  I'm not sure that I should be making a representation
4  about what my predecessor may or may not have instructed, but
5  if it's of import to the Court, we will.
6            I can I think say this much, which can be inferred
7  from the record, clearly my predecessor anticipated and
8  expected that his advice was doing to be shared.
9            THE COURT:  All right.
10           MS. LUKEY:  Without getting an affidavit from him,
11 I don't think I can say to you:  Did he direct it to happen?
12 It was more than one meeting, as you will see.
13           And when you go through it, you're going to find
14 that all of it relates to the litigation.  I just want to
15 point out that on page 1 on the right-hand side -- and this
16 probably should have been taken out -- is a completely
17 unrelated discussion of an American Friends Service Committee
18 meeting, which has nothing to do with this.  And I don't
19 think there is anything in there of consequence, but I
20 apologize to the American Friends Service Committee for
21 including notes of that --
22           THE COURT:  All right.
23           MS. LUKEY:  -- with the others.  Everything else
24 you will see is a discussion of the strategy about what do in
25 had litigation.  All that was redacted was when lawyers

1    advice had been discussed or lawyers comments before the
2    developments in the litigation, such as Your Honor's earlier
3    ruling on the motion or recommendation on the motion to
4    dismiss.
5             THE COURT:  All right.
6             MR. RODRIGUEZ:  Your Honor, may I very briefly be
7    heard?
8             THE COURT:  Yes.
9             MR. RODRIGUEZ:  Your Honor, the cover e-mail from
10   the Alliance attorney that produced the documents is at
11   Valdiviceso Exhibit 7.  And he writes, Enclosed please find
12   documents responsive to your subpoena.  We also have a large
13   volume of potentially responsive documents, but which we have
14   not taken more time to -- but which have taken more time to
15   get through than expected.  He is distinguishing these
16   documents from another set.
17            Next paragraph.  He says, I propose that we enter
18   into a clawback agreement, such that we can produce
19   additional documents now while preserving our rights to
20   clawback any documents which are determined to be privileged.
21   Again, he is distinguishing what he is producing, these 77
22   pages, from different documents that he wants more time do a
23   privilege review on.
24            And finally, though my colleague says that the
25   limiting principle is now comments made about the law to

46

1    other business people are privileged, the papers that they

2    submitted say that communications concerning litigation by

3    non-attorneys are the essence of work product. And if that

4    contention is allowed to stand, Your Honor, I think there

5    will be many, many more privilege disputes in this case.

6         Thank you.

7         THE COURT: All right. Great. Anybody else have

8    anything else to add before the Court closes the hearing and

9    I'll take this under advisement, issue a written order, which

10   I'm sorry, that always does take awhile to get to. It's

11   holidays. So I'll do my best to get to this quickly, but I

12   just can't promise. I wish I could. It would be nice, if I

13   could just, Hey, here's something new, I think I'll work on

14   that, right. But that's not how it works, unfortunately.

15        So anything for plaintiffs?

16        MR. RODRIGUEZ: No, thank you.

17        THE COURT: Defendants.

18        MS. LUKEY: No, thank you, Your Honor.

19        THE COURT: All right, Court will be in recess.

20        (Whereupon, the within hearing was then in

21   conclusion at 10:46 a.m.)

22

23

24

25

47

1

2   I certify that the foregoing is a correct transcript to the

3   best of my ability to hear and understand the audio recording

4   and based on the quality of the audio recording from the

5   above-entitled matter.

6

7   /s/ Dyann Patterson                    November 27, 2017

8   Signature of Transcriber               Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25