IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

_____

**MOTION OF DEFENDANT CULTURAL CARE, INC. FOR CLARIFICATION OF TOPICS THAT REMAIN OPEN AND APPROPRIATE FOR DEPOSITIONS OF FLSA OPT-IN PLAINTIFFS**

Defendant Cultural Care, Inc. ("CCI") brings this motion, pursuant to Fed. R. Civ. P. 30 and D.C.COLO.LCivR. 7.1, seeking clarification from the Court as to (a) topics that may be foreclosed due to apparent determinations already made by the Court, and (b) the scope of topics generally available when deposing FLSA Opt-In Plaintiffs.  CCI brings this motion in an effort to avoid further contentions by Plaintiffs that CCI's questioning exceeds the scope of permissible inquiry, and in hopes of unnecessarily involving the Court in continuing disagreements regarding the scope of the depositions.

**CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCivR. 7.1(A)**

Pursuant to D.C.COLO.LCivR. 7.1(a), CCI conferred about this Motion with counsel for Plaintiffs by phone on February 19, 2018.  Plaintiffs do not consent to the relief sought herein.

## PROCEDURAL BACKGROUND AND ARGUMENT

1.     The Opt-In discovery deadline is April 9, 2018. Order Granting In Part Plaintiffs' Motion to Amend Scheduling Order, ECF No. 687 at 2.

2.     The number of Opt-In Plaintiffs currently totals approximately 4,272 (Declaration of Jennifer M. Keough, ECF No. 920-1 at 2) of which approximately 1,780 au pairs were (or are) sponsored by CCI. To date, CCI has conducted depositions ("Opt-In Depositions") of 29 Opt-In Plaintiffs, at different locations within and outside of the United States.

3.     CCI's counsel has worked (and will continue to work) cooperatively with Plaintiffs' counsel to conduct the depositions of a reasonable number of the Opt-In Plaintiffs (thus far, CCI has deposed about 1.6% of the Opt-In Plaintiffs alleging claims against CCI), while remaining mindful of the need to take sufficient depositions to support its forthcoming motion to decertify the conditional collective action. CCI's counsel will also continue to schedule and conduct depositions in a good faith effort to minimize inconvenience to the Opt-In Plaintiffs. For example (and without limitation), CCI has: conducted Opt-In Depositions on Saturdays, Sundays and holidays, and both before and after normal business hours on weekdays, to accommodate the work and personal schedules of witnesses; conducted depositions at locations more convenient to the witnesses; conducted depositions *via* teleconference in the cases of Opt-In Plaintiffs residing in distant countries (*e.g.* South Africa, Australia); in some instances offered to pay for an au pair's reasonable expenses for travel within the European Union; and, in the case of nine Opt-In Plaintiffs residing in countries with deposition

blocking statutes, offered to pay for travel to Boston for their depositions.

4. CCI also has endeavored to conduct Opt-In Depositions efficiently. To date, the majority of the Opt-In Depositions conducted by CCI have taken between approximately 2.5 and 3.5 hours of time on the record. (Where translators are involved, the time consumed is, not surprisingly, longer.)

5. During the course of most (if not all) Opt-In Depositions conducted thus far by CCI, Plaintiffs' counsel have objected to certain lines of questioning on relevance grounds, based on Plaintiffs' view that the scope of the depositions should be extremely narrow. On several occasions, Plaintiffs' counsel have also asserted – both on the record during depositions and in post-deposition email correspondence – that CCI's inquiries have constituted harassment. CCI vehemently disagrees with that assertion but very much wishes to avoid any such continuing accusations.

6. CCI's and Plaintiffs' disagreement about the proper scope of inquiry of the Opt-In Plaintiffs persists at depositions currently occurring. CCI does not propose to reopen depositions that have already occurred where topics were deemed foreclosed by Plaintiffs' counsel.

7. Plaintiffs' proposed limitations are inconsistent with the rules of discovery, contrary to applicable case law, and unjustifiably impede CCI's ability (i) to seek decertification of the conditional collective action, (ii) if necessary, to defend

substantively against the Plaintiffs' FLSA claims, and (iii) to assess credibility and test the truthfulness of a deponent's survey responses.[1]

8.  To prevail on their claims under the FLSA and state law, Plaintiffs must first demonstrate that such laws apply to the Au Pair Program, which requires a factual determination as to whether the Au Pair Program is predominantly a cultural exchange program or predominantly a work program, or, otherwise stated, whether au pairs are predominantly cultural exchange visitors or predominantly workers.  If  Plaintiffs meet the  burden of proving that the program is predominantly a work program and the au pairs predominantly workers, Plaintiffs must then establish that au pairs are covered "employees" under the FLSA and that sponsor organizations are Plaintiffs' "employers" under the FLSA.  *See, e.g.*, *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209 (11th Cir. 2003)  (plaintiff bears burden of establishing by a preponderance of the evidence that an entity is a joint employer under the FLSA). The only court to have determined whether a sponsor is an employer under a J-1 program – in that case the Summer Work Travel program  – concluded that sponsors are not joint employers.  *See Ivanov v. Sunset Pools Mgmt.*, 567 F. Supp. 2d 189, 195-96 (D.D.C. 2008).  Even if Plaintiffs are able to establish the foregoing, they must then establish that they worked compensable time for which they were not paid in conformance with the FLSA.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1220 (10th Cir. 1998).  In order to make such a showing,

---

[1] By stipulation, the surveys were sent to Opt-In Plaintiffs, combining questions from Plaintiffs' own counsel and questions from CCI, as a proxy for, and with the effect of, interrogatory responses.

Plaintiffs must establish that the stipend calculated and published by the State Department violates the FLSA because (i) the State Department's application of a room and board credit is unlawful; and/or because (ii) the au pairs should be entitled to overtime pay between 40 and the program maximum 45 hours per week.

9. All of the factual predicates set forth in the preceding paragraph are relevant to whether these Plaintiffs can be part of an FLSA class at all and therefore whether the FLSA conditional collective actions should be decertified. It is well-recognized that permissible uses of opt-in depositions in FLSA cases include collecting evidence for use in a motion to decertify. *See, e.g., Forauer v. Vermont Country Store, Inc.,* No. 5:12-cv-276, 2014 WL 2612044, at *4-5 (D. Vt. June 11, 2014) (allowing all opt-in plaintiffs to be deposed where defendant intended to challenge certification).

10. The FLSA conditional collective actions and state labor classes must also be decertified if the facts as revealed in discovery support a holding of preemption.[2]

---

[2] Plaintiffs apparently take the position that the Court conclusively ruled that preemption did not apply in denying the Motion to Dismiss in 2016. *See* Order Adopting and Affirming in Part February 22, 2016 Recommendation of United States Magistrate Judge, ECF No. 258 at 27-29. CCI believes that the Court's comments, as with the comments regarding joint employment, were indications of preliminary thoughts based only on the pleadings. The statute from which the preemption claim derives, the Fulbright-Hays Act, 22 U.S.C. § 2451 *et seq,* is a foreign relations act as discussed *infra*, such that a holding of preemption could be made as a matter of law. CCI believes, however, that the converse is not true: A holding that preemption does *not* apply would require a fact-based determination that, notwithstanding the genesis of the Au Pair Program under a foreign relations statute, the predominant purpose of the program is labor, not cultural exchange. *See Bausch v. Stryker Corp.,* 630 F.3d 546, 558, 561 (7th Cir. 2010) (holding that conducting discovery was necessary before determining whether federal law preempts parallel state claims); *Samuel R. Jahnke & Sons, Inc. v. Blue Cross/Blue Shield of Kansas*, No. 10-4098-JTM, 2011 WL 4526778, at *7-8 (D. Kan. Sept. 28, 2011) (holding that ERISA preemption depended on factual question of whether payments to the policy were made by plaintiff as an individual or as

5

The Au Pair Program exists pursuant to the Fulbright-Hays Act, 22 U.S.C. § 2451 *et seq* (the "Act"), which is a foreign relations statute. As argued more extensively in the summary judgment papers, (Certain Defendants' Motion for Summary Judgment, ECF No. 860 at 26-34), statutes or regulations that relate to foreign relations on their face would be preempted as a matter of law, as foreign relations are within the exclusive purview of the federal government. *See Hines v. Davidowitz*, 312 U.S. 52, 62-63 (1941). To the extent that Plaintiffs seek to assert a private cause of action under the Department of State regulations promulgated pursuant to the Act,[3] at the very least, facts pertinent to the preemption issue are also appropriate topics for the depositions of Opt-In Plaintiffs. Because the preemption in this circumstance is implied, rather than express, the key factual issues are (i) whether the Au Pair Program is predominantly a cultural exchange program as Defendants suggest, or predominantly a labor program as Plaintiffs suggest, and (ii) what the Department of State intended in requiring au pairs to be "paid in conformance with the requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor." 22 C.F.R. § 62.31(j)(1).

11. In connection with a motion for decertification, courts are to make "a conclusive determination as to whether *each plaintiff* who has opted in to the collective action *is in fact* similarly situated to the named plaintiff." *Symczyk v. Genesis*

---

an employer); *see also Prejean v. Foster,* 227 F.3d 504, 509 (5th Cir. 2000) ("Legislative motivation or intent is a paradigmatic fact question."); *id.* at 514 (because "the legislature's motivation is itself a factual question" it was error "to resolve the disputed fact of motivation at the summary judgment stage").

[3] Whether that is even possible will be dealt with in CCI's summary judgment Reply.

*Healthcare Corp.,* 656 F.3d 189, 193 (3d Cir. 2011) (emphasis added), *rev'd on other grounds*, 133 S. Ct. 1523 (2013). Thus, it is "essential for a defendant to take individualized discovery of the opt-in plaintiffs to determine if they are 'similarly situated' within the meaning of [the] FLSA." *Khadera v. ABM Indus.*, No. 08-cv-417, 2011 WL 3651031, at *3 (W.D. Wash. Aug. 18, 2011).

12. The Court has certified Plaintiffs' antitrust claims for class action treatment. Order Granting in Part and Denying in Part Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel, ECF No. 828 at 34. As discussed in Certain Defendants Motion For Summary Judgment (ECF No. 860 at 20), to prevail on their antitrust claims Plaintiffs must prove (among other things) that they suffered an "antitrust injury." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Plaintiffs cannot satisfy this requirement unless they can show that competitive conditions, where the au pairs were free to negotiate with the host families, would have resulted in a higher stipend. Deposition questions bearing on that issue are thus relevant.

13. In sum with regard to commonality and applicability of the FLSA to individual Opt-In Plaintiffs, CCI believes that it should be permitted, and requests leave, to inquire as to:

    a. hours worked per day and per week;

    b. tasks performed;

    c. monetary and non-monetary compensation;

7

    d.  relative ease or difficulty of tasks performed, *e.g.*, number, ages, and grade levels of children; other assistance with childcare, such as at-home parent, second au pair, or baby-sitter;

    e.  participation in family and cultural exchange activities;

    f.  degree and nature of control exercised by individual sponsor;

    g.  training provided by individual sponsor; and

    h.  nature and extent of interaction with individual sponsor.

14.    In sum with regard to preemption (including predominance of cultural exchange versus work aspects of the Au Pair Program), CCI believes that it should be permitted, and requests leave, to inquire as to:

    a.  the Opt-In Plaintiff's principal intent in participating in the program (including the importance, or lack thereof, assigned to the stipend amount), *i.e.*, for cultural and education purposes or as employment;

    b.  the Opt-In Plaintiff's comparative compensation before entering the program, and after leaving the program;

    c.  the Opt-In Plaintiff's comparative employment positions before and after participating in the Au Pair Program;

    d.  whether the Opt-In Plaintiff extended or returned to the Au Pair Program;

    e.  whether and why the Opt-In Plaintiff chose to return to the United States; and

      f. the importance assigned by the Opt-In Plaintiff to the cultural exchange aspects of her participation in the Program.

15. In sum with regard to antitrust injury, CCI believes that it should be permitted, and requests leave, to inquire as to:

      a. the Opt-In Plaintiff's principal intent in participating in the program (including the importance, or lack thereof, assigned to the stipend amount);

      b. whether the Opt-In Plaintiff ever asked the host family for a higher stipend amount or otherwise sought to negotiate the stipend amount; and

      c. whether the Opt-In Plaintiff had alternatives to an au pair program and, if so, whether the alternatives were for amounts that were lower, higher or the same as the stipend amount.

16. In sum with regard to background and credibility, both bearing on the individual sponsor's selection of potential witnesses whose testimony will be offered at trial, CCI believes that it should be permitted, and requests leave, to inquire as to:

      a. general background;

      b. confirmation or rebuttal of the individual Opt-In Plaintiff's survey responses; and

      c. communications with Plaintiffs' counsel before opting in to the class.

17. CCI already agreed to limit its direct examination of Opt-In Plaintiffs with English proficiency that do not require a translator to three hours of record time. Hence

it will be CCI's responsibility to determine which among the permissible topics it wishes to pursue if time is short.

18. Each of the Opt-In Plaintiffs has *affirmatively chosen to participate as a party* in this action and to recover damages from CCI and the other defendants. Thus, in addition to reaping whatever benefit (if any) such participation may yield, CCI suggests that each Opt-In Plaintiff noticed for deposition is obliged to answer, under oath, questions bearing on the issues described above, each of which is plainly relevant to the claims and defenses at issue in this case.

Wherefore, CCI respectfully moves for an Order in the form appended hereto setting the parameters for permissible inquiry at Opt-In depositions on a going-forward basis.

## **CONCLUSION**

For the foregoing reasons, CCI respectfully requests that the Court instruct the parties as set forth in the proposed Order, filed herewith, and for such other relief as the Court deems necessary under the circumstances.

Dated:  March 5, 2018.                    Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane R. Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on March 5, 2018, I have caused to be electronically filed the foregoing **MOTION OF DEFENDANT CULTURAL CARE, INC. FOR CLARIFICATION OF TOPICS THAT REMAIN OPEN AND APPROPRIATE FOR DEPOSITIONS OF FLSA OPT-IN PLAINTIFFS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Matthew L. Schwartz (mlschwartz@bsfllp.com) <br> Peter M. Skinner (pskinner@bsfllp.com) <br> Randall W. Jackson (rjackson@bsfllp.com) <br> Dawn L. Smalls (dsmalls@bsfllp.com) <br> Joshua J. Libling (jlibling@bsfllp.com) <br> Lauren F. Louis (llouis@bsfllp.com) <br> Sigrid S. McCawley (smccawley@bsfllp.com) <br> Sabria A. McElroy (smcelroy@bsfllp.com) <br> Byron Pacheco (bpacheco@bsfllp.com) <br> Sean P. Rodriguez (srodriguez@bsfllp.com) <br> Juan P. Valdivieso (jvaldivieso@bsfllp.com) <br> Boies Schiller & Flexner, LLP <br><br> Alexander N. Hood (alex@towardsjustice.org) <br> Towards Justice-Denver <br><br> *Counsel for Plaintiffs* | Brooke A. Colaizzi (bcolaizzi@shermanhoward.com) <br> Raymond Myles Deeny (rdeeny@shermanhoward.com) <br> Alyssa Lauren Levy (alevy@shermanhoward.com) <br> Heather Fox Vickles (hvickles@shermanhoward.com) <br> Joseph H. Hunt (jhunt@shermanhoward.com) <br><br> *Counsel for InterExchange, Inc.* |
| Chanda Marie Feldkamp (cfeldkamp@kellywalkerlaw.com) <br> William James Kelly, III (wkelly@kellywalkerlaw.com) <br><br> *Counsel for USAuPair, Inc.* | Martin Jose Estevao (mestevao@armstrongteasdale.com) <br> Meshach Yustine Rhoades (mrhoades@armstrongteasdale.com) <br> Vance Orlando Knapp (vknapp@armstrongteasdale.com) <br><br> *Counsel for GreatAuPair, LLC* |
| Bodgan Enica (bogdane@hotmail.com) <br><br> *Counsel for Expert Group International, Inc. d/b/a Expert AuPair* | David Meschke (dmeschke@bhfs.com) <br> Martha Louise Fitzgerald (mfitzgerald@bhfs.com) |

| | |
|---|---|
| | *Counsel for Euraupair InterCultural Child Care Programs* |
| Adam Hubbard (ahubbard@hollandhart.com) James Edward Hartley (jhartley@hollandhart.com) Jonathan S. Bender (jsbender@hollandhart.com) *Counsel for Cultural Homestay International* | Jennifer Arnett Roehrich (jarnett@roehrich@grsm.com) Nathan Andrew Huey (nhuey@gordonrees.com) Peggy Kozal (pkozal@gordonrees.com) Thomas Baker Quinn (tquinn@gordonrees.com) *Counsel for AuPairCare, Inc.* |
| Brett Michelle Mull (mull@wtotrial.com) Kathryn A. Reilly (reilly@wtotrial.com) Natalie Elizabeth West (west@wtotrial.com) *Counsel for Au Pair International, Inc., American Cultural Exchange, LLC d/b/a GoAuPair, Agent Au Pair, and GoAuPair Operations, LLC* | Susan M. Schaecher (sschaecher@fisherphillips.com) *Counsel for APF Global Exchange d/b/a Aupair Foundation* |
| Eric Jonathan Stock (estock@gibsondunn.com) John B. Fulfree (jfulfree@putneylaw.com) Joseph B. Cartafalsa (joseph.cartafalsa@ogletreedeakins.com) Robert M. Tucker (Robert.tucker@ogletreedeakins.com) Stephen J. Macri (Stephen.macri@ogletree.com) *Counsel for American Institute for Foreign Study d/b/a Au Pair in America* | Brian Alan Birenbach (brian@rietzlawfirm.com) *Counsel for Au Pair International, Inc. and American Cultural Exchange, LLC d/b/a GoAuPair* |
| Aubrey Jane Markson (amarkson@nixonshefrin.com) Kathleen E. Craigmile (kcraigmile@nixonshefrin.com) Lawrence Daniel Stone (lstone@nixonshefrin.com) *Counsel for A.P.E.X. American Professional Exchange, LLC d/b/a* | Harvey J. Wolkoff (Harvey.wolkoff@ropesgray.com) *Counsel for International Care Limited* |

| | |
|---|---|
| *ProAuPair and 20/20 Care Exchange, LLC d/b/a International Au Pair Exchange* | |

            *s/ Diane R. Hazel*
            Diane R. Hazel