IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al;
and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC., et al;

      Defendants.

---

## DEFENDANT INTEREXCHANGE, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #916-1)

---

Defendant InterExchange, Inc. ("InterExchange") responds to Plaintiffs' Motion for Partial Summary Judgment (Doc. #916-1) ("Plaintiffs' Motion") as follows:

### I.   <u>INTRODUCTION.</u>

Plaintiffs' request for partial summary judgment suffers from three fatal flaws: First, Plaintiffs make no serious attempt to analyze their claims *as to InterExchange specifically.*  Plaintiffs must prove the elements of their claims against InterExchange; they cannot prove them against another sponsor based on evidence related to that sponsor and recover against InterExchange.  Plaintiffs' Motion is rife with inaccurate citations to InterExchange evidence and attempts to attribute overbroad statements or allegations related to other sponsors to InterExchange without any record support. Second, Plaintiffs ignore the undisputed fact that the au pair program is regulated by the

Department of State, and the factors of "control" that Plaintiffs attribute to the sponsors are *explicit requirements* of the DOS regulations.  Plaintiffs have proceeded in this case by attempting to ignore DOS altogether and attributing everything about the program about which they complain to the sponsor defendants.  Third, Plaintiffs also ignore the undisputed fact that DOS—*not the sponsors, and certainly not InterExchange*—is the source of the $195.75 stipend figure and the formula used to derive the number.  As much as Plaintiffs have attempted to characterize the stipend number as a manipulative creation of the sponsors, they acknowledge in their own Second Amended Complaint that DOS developed and has communicated the stipend figure (as it has changed over time with changes to the federal minimum wage) and its formula for many years.  (Doc. #395 at ¶¶ 62, 84, 86, 156-57, 159, 166, 168, 169.)  Plaintiffs' Motion should be denied.[1]

## II.   THE FLSA DOES NOT COMPEL THAT AU PAIRS BE PAID FOR 45 HOURS PER WEEK IF THEY WORKED FEWER HOURS.

Legal authority does not support Plaintiffs' assertion that au pairs are entitled *under the FLSA* to be paid for 45 hours of work per week, even if they worked less. (Doc. #886 at p. 5.)  InterExchange does not dispute that the au pair program regulations require that au pairs work no more than 45 hours per week.  22 C.F.R. § 62.31(c)(2).  InterExchange also does not dispute that the au pair program regulations provide that an au pair's weekly *rate* may not be reduced if he or she provides fewer

---

[1] Nothing in this response is intended to suggest that InterExchange is not entitled to summary judgment on the issues raised in Certain Defendants' Motion for Summary Judgment (Doc. #860) and InterExchange's Motion for Summary Judgment (Doc. #859).

than 45 hours of childcare per week.  22 C.F.R. § 62.31(j)(1).  However, these requirements are DOS-mandated au pair requirements; they are not FLSA requirements and do not determine the measure of damages under any claim brought by Plaintiffs.

FLSA damages are actual damages calculated based on actual hours worked. Arenas v. Unified Sch. Dist. No. 223, No. 15-cv-9359-JWL-TJJ, 2016 WL 5122872, at *3 (D. Kan. Sept. 21, 2016); Moschos v. Creighton Univ., No. 8:11CV403, 2013 WL 3005560, at *5 (D. Neb. June 4, 2013).  Plaintiffs attempt to circumvent this damages standard by stating that the DOS regulations are consistent with FLSA regulations, citing to 29 C.F.R. § 785.23.  Plaintiffs' comparison merely demonstrates that DOS has affirmatively *departed* from the normal operation of the FLSA.  The cited FLSA regulation allows an employer and employee to reach a reasonable agreement on "hours worked" for purposes of the FLSA when the employee lives on the employer's premises, to take into consideration the time the employee spends sleeping and on other personal pursuits.  29 C.F.R. § 785.23.  As noted in the regulation, "It is . . . difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted."  Id.  Au pairs and host families do not enjoy the benefit of that regulation, however, because DOS mandates that au pairs *actually work* no more than 45 hours per week, no more than ten hours per day, and no more than five and one-half days per week.  22 C.F.R. § 62.31(j)(2), (3).  These requirements thus require host families and au pairs to track actual hours worked on a daily basis in order to comply with DOS regulations.  The DOL's FLSA regulation is wholly irrelevant to the au pair

experience.  Moreover, nothing in the FLSA regulation would prevent an employer from adjusting or setting compensation to match the agreed-upon number of compensable work hours.  As a matter of DOS regulation, an au pair must receive at least the same minimum weekly rate whether she works one hour per week or 45 hours per week. Rather than demonstrating consistency between the DOS and DOL regulations, Plaintiffs have emphasized the fact that DOS *has overridden DOL's interpretation and implementation of the FLSA* for purposes of the au pair program.  As such, Plaintiffs cannot leverage the DOS regulations to secure a different measure of damages than that authorized by the FLSA.

### III.   PLAINTIFFS HAVE NOT SHOWN THEY ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF JOINT EMPLOYMENT.

In its Motion for Summary Judgment (Doc. #859), InterExchange set forth the reasons why the joint employment issue should be decided in InterExchange's favor on summary judgment.  (Doc. #859 at pp. 4-9.)  Plaintiffs have not demonstrated that InterExchange and au pairs have the kind of relationship that establishes a joint employment situation.

A.   Monitoring Legal Compliance is not "Joint Employment."

Plaintiffs list the various DOS regulatory requirements of the au pair program and equate them to sponsor control over au pairs akin to employment.  (Doc. #886 at pp. 7-13.)  However, Plaintiffs fail to offer any authority that communicating federal government program requirements, or even monitoring compliance with those requirements, is "control" of the type exercised by employers.  Indeed, the overwhelming weight of authority holds otherwise.  See, e.g., Local 777, Dem. Union

48206434.1

Org. Comm., Seafarers Int'l Union of N. Am. v. N.L.R.B., 603 F.2d 862, 875 (D.C. Cir. 1978) ("Government regulations constitute supervision not by the employer but by the state."); Godlewska v. HDA, 916 F. Supp. 2d 246, 260 (E.D.N.Y. 2013) (monitoring for legal compliance did not indicate joint-employer status); Sanchez v. Simply Right, Inc., No. 15-cv-974-RM-MEH, 2017 WL 2222601, at *13 (D. Colo. May 22, 2017) (monitoring for contractual compliance did not constitute control of employment).  The requirements come from DOS; InterExchange's obligation, essentially, is to confirm "yay" or "nay" as to whether the requirements are being met.  (Doc. # 886-6 at 1081 218:20-219:12.)  In one of the few cases that address joint employment in the J-1 visa context, the United States District Court for the District of Columbia found that the regulatory monitoring and compliance associated with the summer work-travel program—also a J-1 program—did not constitute joint employment.   See Ivanov v. Sunset Pools Mgmt. Inc., 567 F. Supp. 2d 189, 195 (D.D.C. 2008) ("[E]ven though Intrax kept tabs on plaintiffs while they remained in the United States, that control was unrelated to their lifeguard positions and thus was not indicative of a joint employment relationship.); see also 22 C.F.R. § 62.32 (requiring work-travel sponsors to monitor the relationship throughout the placement).

B.      InterExchange Does Not Hire or Fire Au Pairs.

Plaintiffs make little effort to demonstrate that InterExchange, specifically, is a joint employer, and an analysis of the relevant factors shows that InterExchange, not Plaintiffs, is entitled to summary judgment on this issue.  (See Doc. #859 at pp. 5-9.) Plaintiffs' statement that all sponsors "recruit au pairs and place them with host families"

48206434.1

is false as to InterExchange.[2]  Au pairs are recruited by companies ("international cooperators") in other countries with whom InterExchange works pursuant to independent contractor agreements.  (Doc. #861-14 at 915 103:12-104:9.)  These companies do not necessarily work exclusively with InterExchange.  (IEX App. at p. 2 108:13-24.)  The international cooperators collect applications from prospective au pairs and send them to InterExchange.  (Doc. #861-14 at 915 103:12-20.)  Moreover, the international cooperators are recruiting candidates for the au pair *program*, which is much broader than the specific childcare duties that an au pair performs for a host family in that it involves, primarily, cultural exchange and also has an education component.  22 C.F.R. § 62.31(a).  Even if it could be attributed to InterExchange, such recruitment is not "control" for purposes of joint employment.  See Ivanov, 567 F. Supp. 2d at 190, 195-96 (in context of summer work-travel J-1 program, firm that recruited foreign workers for J-1 work travel visas and helped them obtain visas was not employer of foreign workers).[3]

---

[2] As their sole source of evidence on this point, Plaintiffs points to testimony from InterExchange's 30(b)(6) witness that has nothing whatsoever to do with recruitment activities.  The cited testimony discusses InterExchange personnel who communicate with the State Department about au pair matters.  (Doc. #886-6 at 1070.)

[3] In making her Recommendation on InterExchange's (and other sponsors') Motions to Dismiss, Magistrate Judge Tafoya found that Ivanov did not merit dismissal, relying specifically on Plaintiffs' allegations that sponsors set wages, draft employment contracts, and have the authority to remove au pairs from their host families and what Magistrate Judge Tafoya considered to be the sponsors' "more in depth" obligations under the regulations.  (Doc. # 240 at p. 22.)  As an initial matter, the agency in Ivanov had obligations pursuant to DOS regulations that are very similar to those of au pair sponsors.  Both the au pair and work travel J-1 programs are subject to 22 C.F.R. § 62.10.  Summer work travel sponsors are also required by regulation to screen applicants; conduct a participant orientation program; verify the terms and conditions of the participants' employment; ensure that participants are compensated according to

Nor does InterExchange "place au pairs with host families" or "hire" or "fire" them. The matching decision between host family and au pair is made between them. (Doc. #861-14 928 at ¶¶ 7-8.)  InterExchange does not participate in the interviews between host families and prospective au pairs and does not require either a host family or an au pair to accept any particular match. (Id.)  Host families can terminate an au pair at any time and ask him or her to leave the house, without InterExchange's permission. (Id. 905 at 113:24-114:5; 914 at 78:5-10; 79:4-9.)  An au pair can also end his or her relationship with a host family at any time. (Id. 905 at 113:24-114:5.)  InterExchange has the authority to make determinations about whether or not au pairs or host families are qualified to participate or continue in the *program*, but effects on the actual employment relationship are incidental to those programmatic decisions.  No evidence exists that InterExchange exercises termination authority over any au pair's employment in and of itself.

C.      InterExchange Does Not—Effectively or Otherwise—Dictate Wages.

Plaintiffs have not established that InterExchange dictates the stipend paid to host families or to au pairs.  The evidence shows just the opposite.  The $195.75 figure and the formula used to compute it come from DOS, not from InterExchange. (Doc. #861-16 1004-10; Doc. #395 at ¶¶ 62, 84, 86, 156-57, 159, 166, 168, 169.)  Plaintiffs

---

the higher of minimum or prevailing wage rates; maintain monthly contact with participants; provide as-needed assistance as facilitators or counselors; and make certain reports to DOS.  22 C.F.R. § 62.32.  The conclusion that work travel sponsors are subject to less stringent or less detailed regulations is unsupported.  Also, Magistrate Judge Tafoya was obligated to accept Plaintiffs' allegations as true.  As noted herein, following discovery Plaintiffs' allegations as to InterExchange are unsupported.

48206434.1

have no good-faith basis to state otherwise.  Second, Plaintiffs have not proven that InterExchange requires host families to pay only $195.75.  InterExchange's separate agreements with host families and au pairs define the stipend as the "minimum" amount that an au pair must receive.  (Doc. #861-14 938, 940, 956; Doc. #861-15 958.)  InterExchange does not monitor or track the actual stipend paid, beyond confirming that au pairs received at least $195.75.  (Doc. #861-14 933 at ¶ 26.)  It goes without saying that InterExchange cannot dictate or control the au pair stipend if its involvement goes no farther than confirming that au pairs are paid at least $195.75.

  D. <u>Au Pairs' Hours Limits and Vacation Entitlements are a Matter of Regulation, Not InterExchange Policy.</u>

  Although au pairs are limited *by DOS, not by InterExchange* to a certain number of hours and to performing childcare and related tasks, within those limitations it is the host families, not InterExchange, that assign duties, create schedules, and pay the stipend, educational expenses, and vacation time.  (Doc. #861-14 929-30 at ¶ 13; 931-32 at ¶¶ 19-21; 939.)  As noted above, legal precedent does not support the conclusion that InterExchange's monitoring of these requirements amounts to employment.

  E. <u>Host Families, Not InterExchange, Control Working Conditions.</u>

  Contrary to Plaintiffs' blanket assertion that all sponsors exert control over au pair working conditions, InterExchange does nothing more than communicate, as it is required to do, the scope of duties that an au pair may perform as a condition of his or her visa.  (Doc. #886 at p. 9.)  Because the au pair program is a DOS cultural exchange program, au pairs are restricted to performing duties that are consistent with the purpose of the program.  <u>See</u> 22 C.F.R. §§ 62.10(b) (requiring sponsors to inform au

48206434.1

pairs of their job duties and conditions and restrictions of their exchange visitor status); 62.31(h)(6) (requiring sponsors to inform host families of the "parameters of their and the au pair's duties").  InterExchange's au pair and host family agreements do nothing more than provide a non-exhaustive, representative list of the types of duties that are permitted by DOS under au pairs' visa status.  (Doc. #861-14 at 939 ¶ 4(c)(ii); 861-15 at 960-61 ¶ 7(f)-(g).)  Beyond these general descriptions, InterExchange plays no role whatsoever in the host family's assignment of duties to an au pair.  (Doc. #861-14 at 929, 931 ¶¶ 13, 19-20.)  Indeed, because au pairs are living with individual host families, as a practical matter InterExchange could not exercise control over their daily activities, as those activities are determined by the host family's individual circumstances, such as the number of children, age of children, employment situation, availability of other childcare help, and other factors.

Plaintiffs fail to identify any specific way in which InterExchange "go[es] beyond" statutory requirements in monitoring au pairs.  (See Doc. # 886 at p. 9.)  Moreover, they make no effort to demonstrate that the alleged extra monitoring is relevant to the joint employment analysis.  As a sponsor, InterExchange is responsible for monitoring the entirety of an au pair's experience in the United States, only a part of which is providing childcare.

The cases Plaintiffs cite demonstrate the marked difference between InterExchange's role vis-à-vis au pairs and a true joint employment arrangement.  For example, in Donovan v. Tavern Talent and Placements, Inc., No. 84-F-401, 1986 WL 32746, at *1-2 (D. Colo. 1986), the putative joint employer (under Plaintiffs' theory, the

equivalent of the sponsors), hired and placed the managers who supervised the employees (nude dancers); hired and fired, through the managers, other employees of the nightclubs; supervised the dancers' daily activities through daily checks; kept time records for all employees and supervised the work schedules; calculated payroll; and collected money daily from the nightclubs.  It is irrational beyond all belief to equate these activities with the infrequent and minimal involvement that sponsors have with activities in host families' homes.

F.      InterExchange's Training is Required by DOS.

Although InterExchange provides training to au pairs prior to them moving in with their host families, both the fact of the training and its content is dictated by DOS regulations.  22 C.F.R. §§ 62.10(c); 62.31(f), (g).

G.      InterExchange's Provision of Health Insurance Does Not Establish Joint Employment.

InterExchange does provide health insurance for au pair program participants. However, this lone factor does not establish InterExchange as an employer.  See Sanchez v. Simply Right, Inc., No. 150cv000974-RM-MEH, 2017 WL 2222601, at *14 (D. Colo. May 22, 2017) (applying the totality of the factors and circumstances in reaching decision regarding joint employment).

H.      InterExchange Is Not the Final Arbiter of Employment Disputes.

Plaintiffs' blanket statement that sponsors are the "final arbiters" is also untrue as to InterExchange, as made clear by the evidence to which Plaintiffs cite. InterExchange's host family agreement states that InterExchange "*may* reasonably attempt to mediate in the case of misunderstandings or serious problems for the au pair

and/or host family."  (Doc. # 886 at p. 10 n.17.)  Similarly, although Plaintiffs state that InterExchange "would pay" if a host family refused to pay an au pair, InterExchange's 30(b)(6) witness actually testified that InterExchange would act as an intermediary and "in some situations," if a host family did not pay an au pair, InterExchange would pay the au pair and then recoup the money from the host family.  (Doc. #886-6 at 1073 140:12-23.)  Plaintiffs grossly mischaracterize the evidence related to InterExchange's approach to dispute resolution, and the evidence does not support summary judgment for Plaintiffs.

      I.     <u>InterExchange Does Not Dictate the Terms of Host Family-Au Pair Agreements.</u>

Plaintiffs err in stating that InterExchange drafts the agreement between host families and au pairs.  (Doc. # 886 at p. 11.)  Plaintiffs cite to an agreement between host families and *InterExchange*, not between host families and au pairs.  (Doc. # 886-7 at p. 1097.)  The terms of the relationship between a host family and its au pair— including family and house rules, specific stipend, specific duties, and the like—are decided between them.  (Doc. #861-14 at 929-30 ¶ 13.)

Plaintiffs cite <u>Bureerong v. Uvawas</u>, 922 F. Supp. 1450 (C.D. Cal. 1996) as authority that supposedly supports a finding of joint employment in this case.  (Doc. #886 at p. 13.)  Like the other cases to which Plaintiffs cite, the reality of InterExchange's relationship with host families and au pairs departs markedly from the type of relationship at issue in <u>Bureerong</u>.  <u>Bureerong</u> involved allegations that garment manufacturing facility operators involuntarily enslaved employees.  922 F. Supp. at 1459-60.  The Plaintiffs also sued the retail establishments who commissioned and

purchased the garments, alleging they were joint employers.  Id. at 1460.  The case is wholly inapposite because the Court was ruling on the sufficiency of joint employment allegations at the motion to dismiss stage.  Id. at 1469.  Thus, the Court was concerned only about the sufficiency of the plaintiffs' allegations and not the sufficiency of the evidence for trial.

Although Bureerong itself is irrelevant because of its procedural posture, the Court in Bureerong noted a critical consideration regarding joint employment factors: "These factors 'provide a useful framework for analysis,' but are neither exclusive nor conclusive . . . .  '[T]hey are not etched in stone and will not be blindly applied."  922 F. Supp. at 1468.  By attempting to corral all Defendants with vague, overbroad, and largely unsupported and undifferentiated allegations, Plaintiffs are asking this Court for a "blind application" of the joint employment factors.  A fair analysis of the true relationships among InterExchange, host families, and au pairs compels the conclusion that the joint employment issue should be resolved in favor of InterExchange, as requested in its Motion for Summary Judgment.

Because joint employment must be resolved in InterExchange's favor, all of Plaintiffs' FLSA and state and local wage law claims against InterExchange must be dismissed.  InterExchange is not au pairs' employer and thus is not liable for wage claims.

IV.   **PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON FEDERAL OR STATE WAGE LAW LIABILITY.**

A.  Federal Statutes and Regulations Preempt State and Local Wage Law.

InterExchange, along with certain other sponsors, moved for summary judgment on the grounds that the Fulbright-Hays Act and its implementing regulations preempt state and local wage-and-hour laws in the context of the au pair program.  (Doc. #860 at pp. 25-34.)  For the reasons stated in Certain Defendants' Motion, Plaintiff's request for summary judgment on their federal and state wage claims should be denied.

The statutes and regulations governing the au pair program preempt state and local laws as a matter of field and conflict preemption, as explained in detail in Certain Defendants' Motion.  (Doc. #860 at pp. 25-29, 32-34.)  Plaintiffs have not—because they cannot—point to any DOS regulation, guidance, or statement to the effect that state and local wage laws apply to the au pair program.  And DOS knows how to specify that state and local wage laws apply.  DOS' regulations regarding compensation for other J-1 programs specify that participants in those programs must receive state or local minimum wage, or, in some cases, wages commensurate with those received by American workers.  22 C.F.R. §§ 62.32(i), 62.24(e)(5), 62.30(f).  DOS says nothing of the sort with respect to the au pair program.  The regulation's reference to the FLSA does not compel a different conclusion.  The FLSA does not incorporate state or local wage law; it merely disavows preemption of it.  (Doc. #860 at pp. 29-30.)  As to the au pair program, preemption does not come from the FLSA but from the statutes and regulation creating and implementing the program.

48206434.1

B.      Plaintiffs Have No Basis for Class-Wide FLSA Liability.

Even though Plaintiffs do not move for summary judgment on their antitrust

claim, see Doc. #886 at page 13 n.22, they inappropriately attempt to use their

allegations of an unproved conspiracy to circumvent the certification and decertification

process and the distinction between liability and damages.  (Doc. #886 at p. 13.)  The

wage claims classes are certified against individual sponsors; there is no cross-sponsor

wage class under either the FLSA or state law.  Plaintiffs have not proven wage claim

liability *against InterExchange* based upon InterExchange's business practices and

policies.  The $195.75 figure was calculated and promulgated by DOS, not by

InterExchange.  (Doc. #861-14 at 932 ¶ 25.)  No evidence exists suggesting that

InterExchange ever communicated to au pairs or host families that $195.75 is a stipend

ceiling.[4]  Both the au pair and host family agreements define $195.75 as the "minimum"

stipend.[5]  (Id. at 938; Doc. #861-15 at 956.)  Also, InterExchange's audit reports do not

demonstrate a "near uniform practice of paying $195.75."  (Doc. #886 at p. 19.)

InterExchange does not pay au pairs and thus does not have any practice beyond

communicating the minimum stipend, as required by DOS.  The audit report only

identifies the number of respondees who confirmed that they "received at least $195.75

per week."  (Doc. #886-45 at 2643.)  InterExchange does not track the stipend actually

---

[4] Plaintiffs drop a footnote related to an alleged statement by Defendant Cultural
Homestay that stipend negotiation is not permitted.  (Doc. #886 at p. 17 n.25.)
However, the information they cite to from InterExchange says nothing whatsoever
about the permissibility of negotiation.  (Doc. #886-44 at 2628.)

[5] Although Plaintiffs state that Plaintiff Beltran testified that InterExchange told her she
would be paid $195.75, her actual testimony was that she read the number in one of her
agreements.  (IEX App. at p. 4 87:13-16.)

paid, beyond this minimal confirmation in connection with the audit process to ensure DOS requirements are met.  (Doc. #861-14 at 930 ¶ 15.)  Indeed, because InterExchange does not get involved in conversations between host families and au pairs, as a practical matter InterExchange can only advertise the $195.75 number, as any higher number is a matter of negotiation solely between host families and au pairs. (Id. at 929 ¶ 13.)  Therefore, there is no method by which this Court can look at any individual or subset of au pairs and find class-wide liability against InterExchange.[6]

C.    Plaintiffs Have No Named Plaintiff with a Valid FLSA Overtime Claim Against InterExchange.

As to Plaintiffs' minimum wage claims against InterExchange, those claims fail because of preemption and the joint employment analysis outlined above.  The overtime claim against InterExchange must be dismissed because, as stated in InterExchange's Motion to Dismiss, the only named Plaintiff sponsored by InterExchange does not have an overtime claim.  Beltran was an au pair in 2012; the Court held that overtime claims run only from January 2015 forward.  (Doc. #258 at p. 27.)  Thus, Beltran has no overtime claim against InterExchange.  As the only named Plaintiff in this case sponsored by InterExchange, if Beltran cannot sustain an overtime claim then opt-in class members cannot move forward on the claim, either.  See Williams v. Boeing Co., No. C98-761P, 2005 WL 2921960, at *5-7 (W.D. Wash. Nov. 4, 2005) (claim must be dismissed if no named plaintiff suffered injury during the relevant time period).

---

[6] Plaintiffs continue to misstate information that InterExchange distributed about scam au pair emails.  (Doc. #886 at p. 16.)  InterExchange did not represent that every offer about $195.75 was a scam; rather, InterExchange told au pairs that scammers *may* offer more than $195.75.  (Doc. #861-17 at 1035-36.)  And, indeed, InterExchange has the scam emails that do just that.  (Doc. #861-14 at pp. 935-36 ¶ 35;

D.    The Room and Board Credit is Proper, and In Any Event InterExchange, as a Sponsor, Does Not Take or Benefit from the Credit.

DOS has included for many years in its communications with sponsors the specific formula used to calculate the minimum au pair stipend, and the stipend contains a 40 percent credit for room and board.  (See Doc. #860 at pp. 31-32.)  Per the DOS' official guidance to sponsors, this credit is DOL-approved.  As noted in Certain Defendants' Motion, DOS' long-standing guidance and policy is entitled to judicial deference.  (Doc. #860 at pp. 30-31.)  The generic legal principle that an employer may not take a facilities credit if the facilities must be provided as a matter of law does not trump the specific au pair guidance and policy presented by DOS—ostensibly with DOL's approval—for more than 20 years.  Moreover, InterExchange does not take or benefit from the room and board credit because InterExchange does not pay au pairs.

Lawful wage credits are considered a part of the minimum wage.  They are not deductions that can drop an employee below minimum wage, as Plaintiffs suggest. (See Doc. # 886 at p. 21.)  The cases to which Plaintiffs cite involved deductions not authorized by statute or regulation and thus are inapposite.  See Donovan v. Simmons Petroleum Corp., 725 F. 2d 83, 84 (10th Cir. 1983) (cash register shortages and uncollectible checks); Solis v. Supporting Hands, LLC, No. 11-cv-406, 2013 WL 1897822, at *7 (D.N.M. Apr. 30, 2013) (loan deductions).

E.    Under New York Law, The Training Time is Not Compensable.

As set out in InterExchange's Motion for Summary Judgment, training required by law has been interpreted in New York to be *not compensable.*  NSDOL RO-08-0020; Moreno v. Future Care Health Svcs., Inc., No. 500569/13, 2015 WL 1969753 (N.Y.

48206434.1

Sup.), at *6 (N.Y. Sup. Ct. May 4, 2015); Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc., 50 Misc. 3d 201, 216 (N.Y. Sup. Ct. 2015). InterExchange is *required by regulation* to provide the training they give to au pairs.  22 C.F.R. §§ 62.10; 62.31(g).  Although Plaintiffs cite to both the Moreno and the Lai Chan cases, Doc. # 886 at p. 23, they fail to acknowledge those cases' clear holdings, and in fact, suggest that the cases held something other than what they did.  InterExchange is entitled to summary judgment on Plaintiffs' claim for uncompensated training time.

    F.    Au Pairs Are Exempt From Colorado Minimum Wage and Overtime.

InterExchange moved for summary judgment on the Colorado state wage claims because Colorado's Minimum Wage Orders specifically exempt "domestic employees" from "all provisions of [the] Minimum Wage Order."  This language is in contrast to other provisions of the Minimum Wage Orders, which exempt certain employees from only the overtime provisions of the Wage Orders.  See 7 CCR § 1103-a § 6.  Plaintiffs focus entirely on the changing language in the preamble but make no attempt to refute the application of the domestic employee exemption (which InterExchange addresses in its Motion for Summary Judgment), or explain how or why the language "all provisions of the Minimum Wage Order" does not include the provisions about minimum wage.  By the plain language of the Minimum Wage Order, domestic employees like au pairs are exempt from ALL provisions, including minimum wage.

V.    <u>**CONCLUSION**</u>

For the reasons stated above and in Certain Defendants' and InterExchange's

Motions for Summary Judgment, InterExchange is entitled to summary judgment on all

claims, and Plaintiffs' Motion for Partial Summary Judgment should be denied.

DATED this 16th day of March, 2018.

Respectfully submitted,


*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
Heather F. Vickles
Raymond M. Deeny
Joseph H. Hunt
Alyssa L. Levy
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Fax: (303) 298-0940
Email:  bcolaizzi@shermanhoward.com
Email:  hvickles@shermanhoward.com
Email:  rdeeny@shermanhoward.com
Email:  jhunt@shermanhoward.com
Email:  alevy@shermanhoward.com

ATTORNEYS FOR DEFENDANT
INTEREXCHANGE, INC.

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2018, I electronically filed the foregoing **DEFENDANT INTEREXCHANGE, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, CO  80218
Email: alex@towardsjustice.org

Brian A. Birenbach
THE RIETZ LAW FIRM, L.L.C.
114 Village Place, Suite 301
Dillon, CO  80435
Email: brian@rietzlawfirm.com

Lawrence D. Stone
Kathleen E. Craigmile
Aubrey J. Markson
NIXON SHEFRIN HENSEN OGBURN,
     P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
E-mail: LStone@Nixonshefrin.com
E-mail:
     kcraigmile@nixonshefrin.com
E-mail:
     amarkson@nixonshefrin.com

Kathryn A. Reilly
Natalie E. West
Brett M. Mull
V. William Scarpato III
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver CO  80202-5647
Email: reilly@wtotrial.com
Email: West@wtotrial.com
Email: Mull@wtotrial.com
Emal: Scarpato@wtotrial.com

William J. Kelly III
Chanda M. Feldkamp
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO  80202
Email: wkelly@kellywalkerlaw.com
Email: cfeldkamp@kellywalkerlaw.com

Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Email: aahubbard@hollandhart.com
Email: jsbender@hollandhart.com

Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
OGLETREE, DEAKINS, NASH, SMOAK &
    STEWART, P.C.
1745 Broadway, 22nd Floor
New York, NW 10019
Email: joseph.cartafalsa@ogletree.com
Email: Robert.tucker@ogletree.com
Email:  Stephen.macri@ogletree.com

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
Kevin P. O'Keefe
Samuel N. Rudman
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 82110
Email: joan.lukey@choate.com
Email: rbuchanan@choate.com
Email: mgass@choate.com
Email: jwolosz@choate.com
Email: lkruzer@choate.com
Email: kokeefe@choate.com
Email: srudman@choate.com

James M. Lyons
Jessica L. Fuller
Diane R. Hazel
LEWIS ROCA ROTHGERBER CHRISTIE
    LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Email: jlyons@lrrc.com
Email: jfuller@lrrc.com
Email: dhazel@lrrc.com

Martha L. Fitzgerald
David B. Meschke
Margo J. Arnold
BROWNSTEIN HYATT FARBER
    SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Email: mfitzgerald@bhfs.com
Email: dmeschke@bhfs.com
Email: marnold@bhfs.com

Thomas B. Quinn
Peggy E. Kozal
Jennifer W. Vedra
Nathan A. Huey
Jennifer Arnett-Roehrich
GORDON & REES, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email: tquinn@gordonrees.com
Email: pkozal@gordonrees.com
Email: jvedra@gordonrees.com
Email: nhuey@gordonrees.com
Email: jarnett-roehrich@gordonrees.com

Meshach Y. Rhoades
Martin Estevao
Vance O. Knapp
ARMSTRONG TEASDALE LLP
4643 S. Ulster St., Suite 800
Denver, CO  80237
Email: mrhoades@armstrongteasdale.com
Email: mestevao@armstrongteasdale.com
Email: vknapp@armstrongteasdale.com

48206434.1

Bogdan Enica
Bogdan Enica, Attorney at Law
111 Second Avenue, NE, Suite 213
St. Petersburg, FL  33701
Email: Bogdane@hotmail.com

Susan Penniman Klopman
H & K Law, LLC
3900 East Mexico Ave, Suite 330
Denver, CO 80210
Email: sklopman@hklawllc.com

Lauren F. Louis
Sigrid S. McCawley
Sabria McElroy
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Email: llouis@bsfllp.com
Email: smccawley@bsfllp.com
Email: smcelroy@bsfllp.com

John B. Fulfree
PUTNEY, TWOMBLY, HALL & HIRSON
    LLP
521 Fifth Avenue
New York, NW 10175
Email: jfulfree@putneylaw.com

Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Email: estock@gibsondunn.com

Sean P. Rodriguez
Juan P. Valdivieso
Boies Schiller Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Email:  srodriguez@bsfllp.com
Email:  jvaldivieso@bsfllp.com

Matthew L. Schwartz
Peter M. Skinner
Dawn L. Smalls
Randall W. Jackson
Joshua J. Libling
Byron Pacheco
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY  10022
Email:  mlschwartz@bsfllp.com
Email:  pskinner@bsfllp.com
Email: dsmalls@bsfllp.com
Email:  rjackson@bsfllp.com
Email: jlibling@bsfllp.com
Email: bpacheco@bsfllp.com

James E. Hartley
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO  80302
Email: jhartley@hollandhart.com

*s/ Laura Lewis*

48206434.1