**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.,

      Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.,

      Defendants.

_____

**APIA'S BRIEF IN OPPOSITION TO**
**PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

American Institute for Foreign Study, d/b/a Au Pair in America ("APIA") submits this brief in opposition to Plaintiffs' Motion for Partial Summary Judgment (ECF Dkt #886, as corrected; *see* ECF Dkt #915-916). APIA incorporates, as if fully set forth herein, Defendants' Joint Motion for Summary Judgment (ECF Dkt #860) ("Joint MSJ Brief") and APIA's Supplemental Brief in Support of Defendants' Joint Motion for Summary Judgment (ECF Dkt #883).

**I.      STATE AND LOCAL WAGE LAWS DO NOT APPLY TO AU PAIRS[1]**

Plaintiffs request that the Court hold: "Au pairs are entitled to receive from their employers the minimum federal, state, or local wage, including overtime." (ECF Dkt #915,

_____

[1] For the reasons set forth in Section III of Defendants' Joint Motion for Summary Judgment (ECF Dkt #860) ("Joint MSJ Brief"), which APIA incorporates as if fully set forth herein, the Fulbright-Hays Act and its implementing regulations preempt state and local wage laws as applied to au pairs.

at 3).  In order to establish entitlement to minimum wage and overtime, however, Plaintiffs bear the burden of proving that they are covered "employees" within the meaning of applicable wage laws.  *See, e.g.*, *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209 (11th Cir. 2003).  Under the Fair Labor Standards Act ("FLSA"), an "employee" is "any individual employed by an employer."  29 U.S.C. § 203(e)(1); accord Cal. Labor Code § 350(a).

"[A]lthough some persons are literally 'suffer[ed] or permit[ted] to work,' they do not qualify as 'employees' for purposes of the FLSA."  *Johns v. Stewart*, 57 F.3d 1544, 1587 (10th Cir. 1995) (citing *Marshall v. Regis Educ. Corp.*, 666 F.2d 1324, 1328 (10th Cir. 1981)).  The Tenth Circuit uses the "economic reality" test to determine whether individuals are employees within the meaning of wage laws.  *Johns*, 57 F. 3d at 1557-58.  Courts addressing California Labor Law claims have used substantially the same analysis.  *See, e.g., Johnson v. Serenity Transportation, Inc.*, 2017 WL 1365112, at *19 (N.D. Cal. Apr. 14, 2017).  Under this test, courts consider the "whole circumstances" to determine whether the relationship is predominately based in employment.  *Id.* at 1588; *Marshall*, 666 F.2d at 1326-27.

In *Marshall*, the Tenth Circuit held that student resident-hall assistants ("RA's") were not college employees.  *Marshall*, 666 F.2d at 1328.  In reaching this holding, the Tenth Circuit found that the RA program had educational value and, thus, RA "work" was only one component of the overall educational experience.  *Id.* at 1327-28.  Similarly, in *Johns*, the Tenth Circuit found that federal assistance program participants were not

2

employees because "work" was "simply one component of [the] comprehensive assistance plans" and, thus, the "overall nature of the relationship" was "assistance, not employment." *Johns*, 57 F.3d at 1558.

The Tenth Circuit's findings in *Marshall* and *Johns* compel the same result in this case.  Starting with the unequivocal fact that the Department of Labor is not involved in the J-1 visa authorization process, it is undeniable the United States Au Pair Program (the "Program") has cultural exchange as its central purpose.  The Program provides non-immigrant foreign nationals—many of whom would not otherwise have the means to study or travel abroad—with the opportunity to immerse themselves for a finite period in United States cultural experiences.  As with the RAs in *Marshall* and the program participants in *Johns,* childcare assistance is simply one element of a program with a much wider scope and purpose, which includes residency with an American family, formal educational classes, various travel and cultural exchange activities, as well as the sustained opportunity to improve language skills.  The record is replete with evidence establishing that the overall J-1 Visa Program is based in cultural exchange and education – not work; and that childcare assistance, which enables ongoing interaction and exchange between au pair, hosts and their children, is simply one component of the program.  *See, e.g.*, (ECF Dkt #603, at 6-7);[2] (ECF Dkt #605); 60 Fed. Reg. 8547-02, 8550 (Feb. 15, 1995).

---

[2] Ex. J (ECF Dkt #603-23), 98:20-23, 138:16-139:12, Ex. 52 (looking "to study English in a foreign country" and "love[d] the American lifestyle"); Ex. K (ECF Dkt #603-26) 34:18-

For these same reasons, au pairs cannot be deemed "employees" under the wage laws. *See Johns*, 57 F. 3d at 1557-58; *Marshall*, 666 F.2d at 1327-28.  Therefore, au pairs are not entitled to minimum wage and overtime as a matter of law.

Plaintiffs' requested holding also must be rejected because it seeks to bootstrap state and local wage law requirements into the DOS regulations and the FLSA savings clause.  The DOS regulation requires nothing more than the payment of au pairs "in conformance with the *requirements* of the Fair Labor Standards Act."  22 C.F.R. § 62.31(j)(1) (emphasis added).  The au pair program regulations stand in stark contrast to those for the "summer work travel" program, which expressly require participants to receive at least "the applicable Federal, State, or Local Minimum Wage (including overtime)".  22 C.F.R. § 62.32(i).  Similarly, nothing within the FLSA, or its savings clause "requires" compliance with state or local wage laws.  On the contrary, courts have consistently held that the FLSA does not incorporate applicable state and local wage laws or adopt state or local requirements for purposes of determining liability and/or damages under the FLSA.  *See, e.g., Bruns v. Municipality of Anchorage*, 182 F.3d 924, 1999 WL 288910, at *2 (9th Cir. May 10, 1999) ("29 U.S.C. § 218(a) simply makes clear that the

---

21 ("I thought it might be an adventure it would be good to experience a different culture."); Ex. L (ECF Dkt #603-27) 32:24-33:2 ("Q: . . . you . . . wanted to travel and practice English, is that right? A: Yes."); Ex. M (ECF Dkt #603-28), 39:5-8 (opportunity to "have an intercultural exchange in the United States and get to know another culture"); Ex. N (ECF Dkt #603-29) 44:18-25 (learning new language, experiencing new culture, and making new friends).

FLSA does not preempt any existing state law that establishes a higher minimum wage or a shorter workweek than the federal statute.  It does not purport to incorporate existing state law") (internal punctuation omitted) (citing *Cosme Nieves v. Deshler*, 786 F.2d 445, 452 (1st Cir. 1986)); *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011), *report and recommendation adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (recognizing that the FLSA does not make it a violation of federal law to fail to pay the state minimum wage rate).  As neither the DOS regulation nor the FLSA incorporates or adopts state and local wage laws, Plaintiffs have failed to identify any federal law that mandates adherence to state and local wage requirements.

## II. PLAINTIFFS MUST ESTABLISH THE ACTUAL NUMBER OF HOURS OF COMPENSABLE WORK IN ORDER TO ESTABLISH LIABILITY AND DAMAGES

Assuming *arguendo*, that Plaintiffs are "employees" subject to wage laws, Plaintiffs cannot establish liability for unpaid minimum wage and overtime as a matter of law.   In order to establish *liability* (not simply damages), Plaintiffs bear the burden of proving: (1) that their total compensation fell below the minimum wage rate for all hours actually worked; and (2) that they actually worked and were not compensated for hours in excess of the threshold for overtime wages.  *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 578 (N.D. Cal. 2016), *on reconsideration in part*, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017).

Plaintiffs have failed to eliminate any question of fact surrounding the number of hours actually worked by the nominal Plaintiffs; their failure becomes particularly acute

when actual hours worked analysis is extended to any of the class members. Notwithstanding, Plaintiffs concoct a standard wholly outside of the FLSA's requirements and request that the Court hold that: "au pairs are entitled to be paid a 45-hour 'weekly rate' *regardless of the number of hours actually worked*."[3] (ECF Dkt #915, at 5.) (emphasis added).  Under this requested holding, Plaintiffs imply (and state expressly in the section heading) that they are entitled to assume that they worked – and thus be paid for – 45 hours each week even when they actually provided fewer than 45 hours of service.   This assumption has no basis in fact or law.

The plain language of the FLSA and its regulations requires courts to analyze the number of hours <u>actually worked</u>.  *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1313 (10th Cir. 2011); *Rojas v. Westco Framers, LLC*, 2016 WL 8540842, at *3 (D. Colo. July

---

[3] To the extent that Plaintiffs' holding requests liability for compensation beyond unpaid minimum wage and overtime, such a request is beyond the scope of minimum wage and overtime laws.  Under those laws, employees are entitled to minimum wage and overtime compensation, assuming they qualify for it, and nothing else.  *See, e.g.*, *Trejo v. Ryman Hosp. Properties, Inc.*, 795 F.3d 442, 450 (4th Cir. 2015) (noting Congress created an express private cause of action for FLSA violations limited to the recovery of "unpaid minimum wages" or "unpaid overtime compensation" and there is "no ground for [courts] to go beyond what Congress has done by implying an additional and broader private cause of action."); *Buck v. Lindsey Mgmt. Co.*, 2014 WL 3446779, at *5 (E.D. Ark. July 15, 2014) (holding "private suits brought by employees under § 216(b) of the FLSA are limited to violations of the FLSA's minimum wage, overtime, and retaliation provisions. . . .).  Additionally, any attempt by Plaintiffs to imply a private right of action under 22 C.F.R. § 62.31 must be rejected because a private right of action cannot be implied from a federal regulation as a matter of law.  *See Alexander v. Sandoval*, 532 U.S. 275, 289–293 (2001); *Freeman v. Costa*, 2012 WL 683509, at *2 (D. Colo. Mar. 2, 2012) ("[A]dministrative [regulations]—unlike legislative enactments—neither create private causes of action for their violation nor relieve litigants of their evidentiary burdens in private litigation.").

25, 2016).  The amount of the weekly payment and the amount of scheduled/permissible work are not relevant to such a determination.  *Id*.  In *Chavez*, the Tenth Circuit held that there is no liability, "if the employee does not actually work the requisite number of hours in a week, regardless of whether the employee is compensated as though he or she did work."  630 F.3d 1300, 1313 (10th Cir. 2011).  Thus, the mere existence of a regulatory maximum of 45 weekly hours and a weekly stipend, which is derived from that number, does not either legally or factually establish proof that any au pair actually worked 45 hours in any particular week.

Plaintiffs argue that the DOS regulation constitutes an agreement under 29 C.F.R. § 785.23 that entitles them to compensation based on that agreement rather than the number of hours actually worked.  (ECF Dkt #915, at 5-6).  Contrary to Plaintiffs' contention, the regulation does not suggest actual hours of work to be are "immaterial." *Id*.  There is no authority holding the regulation may be used to provide a right to recover statutorily-mandated hourly compensation based on hours a claimant admittedly did not work.  The regulation provides that "where it is difficult to determine the exact hours worked," a "reasonable agreement of the parties which takes in consideration all of the pertinent facts will be accepted."  29 C.F.R. § 785.23.  The DOS regulation is not such an "agreement." Similarly, Plaintiffs have not and cannot identify any such agreement between APIA and au pairs who participate in its program.

Courts interpreting 29 C.F.R. § 785.23 have enforced agreements only when: (i) the parties include a specific schedule or number of hours; (ii) the specific schedule or

number of hours is formed by the anticipated hours of that will actually be worked; and (iii) the parties actually negotiate the terms and conditions of the agreement. *See, e.g., Brock v. City of Cincinnati,* 236 F.3d 793, 805 (6th Cir. 2001); *Barraza v. Pardo*, 2015 WL 4450069 (S.D. FL. 2015); *Rudolph v. Metro. Airports Comm'n*, 103 F.3d 677 (8th Cir. 1996). Plaintiffs have failed to demonstrate that either the DOS regulation or the Host Family and Au Pair / Companion Agreement (the "Agreement") satisfies any of these requirements.

First, the DOS regulation and the Agreement do not contain a specific schedule or number of hours; both simply state that au pairs may not provide more than 45 weekly hours of childcare assistance. 22 C.F.R. § 62.31(j)(1); ECF Dkt #861-1, at 16-18. Mere enunciation of the DOS programmatic maximum hours is insufficient. *See, e.g.*, *Holzapfel v. Town of Newburgh*, 145 F. 3d 516, 526 (2d Cir. 1998) (noting that a reasonable agreement must be one that the parties to the agreement negotiated and both parties were involved in developing).

Second, the purported "agreement" fails to either consider or account for the anticipated schedule or actual hours of work.[4] In *Leever v. Carson City*, the Ninth Circuit

---

[4] In addition, courts have held that "all pertinent facts" must be considered when determining whether an agreement is reasonable under 29 C.F.R. § 785.23. *See, e.g., Leever v. Carson City*, 360 F.3d 1014 (9th Cir. 2004). Here, there is abundant evidence that many host families provided benefits and compensation beyond the specified weekly stipend. *See, e.g.*, ECF Dkt # 605-9 at 12 ($220.75 weekly stipend); *Id.* at 22 (host parent pays for additional language courses); *Id.* at 10 ($200 per month Uber allowance); *Id.* at

held that an agreement was not reasonable for purposes of § 785.23 because it "failed to take into account the number of hours . . . actually worked."  360 F.3d 1014 (9th Cir. 2004). The *Leever* court explained:

> [R]equiring parties to approximate the number of hours worked when forming an agreement pursuant to § 785.23 is consistent with the purpose of the FLSA, which is to ensure that employees are paid for "all hours worked."

*Id.* at 1019-20.  As each host family and their selected, resident au pair were free to determine, based upon their respective individual needs, the actual number of hours within the DOS-established maximum, the number of hours actually worked must also vary on an au pair by-au pair basis.  APIA has supplied ample evidence demonstrating that many host families required far fewer hours of assistance than the weekly maximum.[5] Therefore, a purported one-size-fits-all agreement adopting the 45-hour maximum to approximate the weekly hours of work for <u>all</u> au pairs – regardless of residential

---

11 (additional time off / extra paid vacation days); *Id.* at 5 ($200 bonus, and $75 in gift cards); *Id.* at 6 (bonus); *Id.* at 14 (cell phone and a gift card).

[5] The agreement must demonstrate a consideration of circumstances other than hours, including wages and benefits, which will necessarily differ from host family to host family. *See, e.g.*, ECF Dkt #605-9, at 15 ("won't need as many hours" because child will be in school); *Id.* at 19 (anticipated schedule is only 5 hours on Monday and "some hours" on Saturday); *Id.* at 23 (anticipated schedule is only 5 hours on Monday through Friday and "as needed" on Saturday; off on Sunday); *Id.* at 27 (fewer than 35 hours per week); *Id.* at 17 (au pair "will work very few hours"); *Id.* at 7 (only  provides four days of assistance per week); *Id.* at 26-27 ("does not really need" the au pair's childcare that much, and au pair "does not work very many hours…[.]"); *Id.* at 8 (au pair typically provides 33 hours, 4 days of service per week).

circumstances and individual preferences – is both unreasonable and unenforceable. *Leever*, 360 F.3d at 1019-20.

Lastly, Plaintiffs cannot establish that the purported agreement was the product of arms-length negotiations because they have simultaneously and continuously argued that the terms and conditions of "employment" have been unilaterally imposed by APIA and other sponsors.  (ECF Dkt #325, at 12).  Plaintiffs cannot have it both ways.  *See, e.g., Holzapfel,* 145 F.3d at 526 (stating that there is no agreement for the purpose of Section 785.23 where the terms are "unilaterally imposed" by the employer).

## III.   PLAINTIFFS HAVE NOT PROVED AND CANNOT PROVE THAT APIA EMPLOYED HLATSHANENI OR OTHER APIA-SPONSORED AU PAIRS

Plaintiffs request the Court to hold that "sponsors are the joint employers of their au pairs."  (ECF Dkt #915, at 16).  Plaintiffs aggregate evidence from unrelated sponsors in an attempt to support this request and to convert the Court's denial of Defendants' motions to dismiss into an entry of judgment for Plaintiffs.   Specifically, the Plaintiffs rely upon eight allegations identified by the Court "that, accepted as true, satisfied Plaintiffs' burden [to establish joint employment]." (ECF Dkt #915, at 7).  The Court's Order on the motions to dismiss merely states that "Plaintiffs have alleged facts upon which a reasonable person could conclude that they were jointly employed by Defendants and their respective host families." (ECF Dkt #240, at 18).  At most, the Court found that proof of all of Plaintiffs' allegations would be enough to *avoid* summary judgment, not enough to obtain it.

As the wage law claims are asserted by each Plaintiff solely against the particular defendant who sponsored the au pair's program participation, the Court must evaluate Plaintiffs' joint-employer evidence on a sponsor-by-sponsor basis. *Delgado v. Directv, Inc.*, 2016 WL 1043725, at *5 (S.D. Ind. Mar. 16, 2016) (holding joint employment factors must be considered separately and independently for each defendant in a case with multiple defendants). Nevertheless, Plaintiffs have aggregated evidence from different sponsors to paper over their evidentiary gaps. It is unequivocal that evidence of another sponsor's business practices cannot be used to satisfy Plaintiffs' burden to prove that APIA was the employer of au pairs who participated in its program. Accordingly, the Court must disregard all allegations that are not supported by evidence specific to APIA (*see* ECF Dkt #915, at 17-19, 25-30, 33-35), which are discussed sequentially below.

a. "***Sponsors recruit, interview and hire au pairs for host families***"

Contrary to Plaintiffs' unsubstantiated assertion, APIA does not "hire" au pairs for host families. The host family – au pair matching and selection process is within the exclusive control of prospective au pairs and host families. (ECF Dkt 861-1, at ¶ 6). Au pairs and host families (not APIA) decide whether to match. (*Id.*; ECF Dkt #861-1, at 26, 28-30, 33, 80:3-8; 91:1-3; 91:8-17; 93:4-6; 93:24-94:7; 100:6-10.) Indeed, Ms. Hlatshaneni admitted at her deposition, and several times thereafter confirmed, that she was hired by her host family. (ECF Dkt #861-1, at 26, 28-30, 33, 80:3-8).

The DOS-required screening and recruitment functions performed by APIA are not indicative of employer/joint-employer status. *Montoya v. 3PD, Inc.*, 2014 WL 3385116,

at *3 (D. Ariz. July 10, 2014) (screening employees for satisfaction of certain minimum regulatory requirements and requiring a worker to pass a criminal background check are not indicia of joint-employer status); *see also Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004).  Moreover, these functions are regularly performed by recruiters and placement agencies; the only court to have considered this specific issue held that such entities are ***not*** joint employers of the individuals whom they recruit/place.  *See Ivanov v. Sunset Pools Mgmt.*, 567 F. Supp. 2d 189, 196 (D.D.C. 2008).

    b.  "***Sponsors effectively dictate au pair wages***"

As discussed extensively in APIA's Supplemental Opposition to Plaintiffs' Motion for Class Certification (ECF Dkt #612, at 6-9) and Supplemental Brief in Support of Defendants' Motion for Summary Judgment (ECF Dkt #883, at 3-6, 13), APIA has provided substantial evidence that: (i) APIA consistently communicated that $195.75 was the ***minimum*** stipend amount;[6] (ii) host families retained discretion to pay more than $195.75;[7] and (iii) host families, including a family who hosted Ms. Hlatshaneni, regularly

---

[6] *See, e.g.*, ECF Dkt #861-1, at 11, ¶ 10 (Copies of APIA Website from years 2009 through 2017 referencing "minimum weekly stipend"); *Id.* at 16-18 (Host Family and Au Pair/Companion Agreements); ECF Dkt #605-7, at 11-18; ECF Dkt #605-7, at 9-10 (Host Family Agreements with APIA); ECF Dkt #605-8, at 17 (APIA Extension Program); ECF Dkt #605-8, at 18 and ECF Dkt #605-7, at 8 (APIA Program Costs & Payment Information forms); ECF Dkt #605-8, at 13-15 (APIA Brochure); ECF Dkt #605-7, at 2-4, 6-7 (APIA Program Fees Brochure); *Id.* at 7 (Host family presentation excerpt).

[7] *See, e.g.*, ECF Dkt #605-9, at 2 ("family is free to pay anything above stipend amount"); *Id.* at 9 ("Any additional payments/bonuses/gifts over the weekly stipend are completely up to you"); *Id.* at 13 ("Host families have the option to pay more than the minimum

exercised their discretion to provide compensation beyond the minimum weekly stipend.[8])

Plaintiffs have **once again**[9] misled this Court and blatantly omitted critical words from the express language of the Agreement in use by APIA in an effort to overcome APIA's overwhelming evidence on the stipend.  Plaintiffs exclude the critical prefatory phrase "**at a minimum**" from the Agreement language cited in their brief, in furtherance of their contention that (along with other sponsors) APIA's Agreement mandated that that the au pair "'will receive a weekly stipend in accordance with the US Department of State Regulations in the amount [of] $195.75' no more, and no less." (ECF Dkt #915, at 23).

The complete language of the Agreement states exactly as follows:

> I/We understand that an au pair/companion is to receive, **at a minimum**, the weekly stipend as stipulated by regulations governing au pair programs and set forth in Au Pair in America's program materials.

(ECF Dkt #861-1, at 19) (emphasis added).  This material omission misleads the Court and highlights Plaintiffs' dearth of evidence for the contention that APIA imposed a

---

standards but under no circumstance may the host family pay less than the minimum nor may the family have the au pair provide more than 45 hours per week).

[8] *See, e.g.*, ECF Dkt #605-9, at 12 ($220.75 weekly stipend); *Id.* at 22 (host parent pays for additional language courses); *Id.* at 10 ($200 per month Uber allowance); *Id.* at 5 ($200 bonus, and $75 in gift cards); *Id.* at 6 (bonus); *Id.* at 14 (cell phone and a gift card); *Id.* at 8 ($200 birthday present); ECF Dkt #605-3, at 120:10-24, 145:5-18, and 149:1-10 (Hlatshaneni testified she received $200 weekly stipend, $200 cash gift, $100 for gas, a Kindle, a watch, and other items and gift cards). ECF Dkt #560-42, at ¶ 7 ($200 weekly stipend); ECF Dkt #861-1, ¶¶ 6-8.

[9]       *See* ECF Dkt #605, at 7-8.

maximum of $195.75 for the weekly stipend.

c. "***Sponsors have a statutory obligation to ensure that au pairs are paid a stipend, do not provide more than 10 hours of child care per day or 45 hours of child care in any week, receive a minimum of one and one-half days off per week in addition to one complete weekend off each month, and receive two weeks of paid vacation***"

"***Sponsors exert control over au pair working conditions***"

"***Sponsors draft the contracts governing the relationship between au pairs and their host families***"

"***Sponsors provide au pairs with health insurance***"

All of these contentions derive from program elements specified by DOS regulations. These government-mandated obligations do not convert the relationship between au pairs and APIA into an employee/employer relationship. *See Ivanov*, 567 F. Supp. 2d at 195; *Democratic Union Organizing Comm., etc. v. NLRB*, 603 F.2d 862, 876 (D.C. Cir. 1978) ("incorporation of government regulations into a contract does not alone establish an employer/employee relationship"). Joint-employer status cannot be established when the control is limited to monitoring compliance with statutory/regulatory requirements. *See, e.g., Godlewska v. HDA*, 916 F. Supp. 2d 246, 260-61 (E.D.N.Y. 2013), *aff'd sub nom. Godlewska v. Human Dev. Ass'n, Inc.*, 561 F. App'x 108 (2d Cir. 2014); *Ivanov*, 567 F. Supp. 2d at 195; *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1161 (C.D. Cal. 2003).

d. "***Sponsors act as the final arbiters of any disputes between au pairs and host families regarding wages and hours***"

At times, host families and/or au pairs enlist their Community Counselor to assist

in resolving their disputes.  (ECF Dkt #861-1, at 12-13, ¶¶ 13-16).  In this role, Community Counselors listen to each party and, when appropriate, offer suggestions for resolution. Provided that the disputes do not concern adherence to DOS requirements, Community Counselors do *not* act as arbiters, nor do they wield any decision-making authority. Rather, resolution of disputes is within the exclusive control of the host family and its au pair.  APIA's limited role in assisting with host family – au pair disputes is not indicative of joint employment.  *See Ivanov*, 567 F. Supp. 2d at 196.

e. "***Sponsors can terminate au pairs without the consent of the host family and cause their removal from the United States, and a host family cannot terminate an au pair without approval from the Sponsor***"

Plaintiffs have conflated the role of a DOS-authorized sponsor to monitor J-1 visa program requirements with the role of an "employer" in the au pair placement.  If an au pair and/or host family are unwilling or unable to adhere to a DOS requirement, it may be necessary to conclude participation in the APIA program and, thus, "break" a host family placement.  (ECF Dkt #861-1, at 12-13, ¶ 16).  Decisions to involuntarily remove participants from the program are made by APIA on a case-by-case basis. Circumstances requiring involuntary removal from the program have included: failure to pay the minimum weekly stipend; providing more than 45 hours of childcare assistance per week or otherwise violating the hours limitations in the regulations; failing to ensure adequate room and board is available; and undertaking outside employment.

Provided that they are complying with DOS requirements, however, each host family and each au pair together retain sole Provided that they are complying with DOS

requirements, however, each host family and each au pair together retain sole discretion to: terminate the placement and/or participation in the program before the conclusion of the placement period; or continue the placement through the conclusion of the placement period. (ECF Dkt #861-1, at 13, ¶ 18). APIA cannot and does not force a particular au pair to remain with a particular host family or a particular host family to continue hosting a particular au pair. (Declaration of Ruth Ferry, attached as Exhibit 1, at ¶ 6).

Plaintiffs have failed to provide evidence in support of their assertion that a host family cannot "terminate" an au pair without APIA's approval. In fact, Hlatshaneni testified at her deposition that both au pairs and host families retain authority to terminate the au pair – host family relationship. (ECF Dkt #861-1, at 32, at 97:15-97:18).

## IV.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON LIABILITY FOR THEIR WAGE AND HOUR CLAIMS

Plaintiffs request the following additional holdings:

-   The FLSA classes have established liability.[10]

---

[10] Plaintiffs contend that host families may not credit room and board expenses toward any wage obligation because room and board is provided in accordance with regulation. (ECF Dkt #915, at 5.)   For the reasons discussed in Defendants' Joint Motion for Summary Judgment Brief (ECF Dkt #860, at 34-46) and APIA's Supplemental Motion for Summary Judgment Brief (ECF Dkt #883, at 14), Plaintiffs' contention is utterly without merit. In any event, Plaintiffs misrepresent the DOS regulation. It does not, as Plaintiffs suggest, expressly require a host family or a sponsor to provide board. 22 C.F.R. § 62.31(e)(6). Rather, the regulation merely provides that a host family must be able to "provide the au pair with a suitable private bedroom. . . ." *Id.* Hence, Plaintiffs have no legal basis for their contention with respect to wage credits taken for the cost of weekly meals provided to au pairs.

- The State Classes have established liability on their wage-and-hour claims.[11]

- The Training Subclasses have established liability on their wage-and-hour claims.[12]

In order to establish *class-wide* liability for unpaid minimum wage and overtime, Plaintiffs bear the burden of supplying class-wide proof: (1) that total compensation for class members fell below the minimum wage rate for all hours actually worked; and (2) that class members actually worked hours in excess of the threshold for overtime wages but did not receive overtime payments. *Senne*, 315 F.R.D. at 578.  Plaintiffs have not provided, and cannot provide, any representative or uniform evidence on these two critical issues: compensation and hours worked.

As discussed above, Plaintiffs have failed to demonstrate that au pairs (including Hlatshaneni) uniformly received weekly stipends of $195.75.  They have also failed to demonstrate the actual weekly stipend(s) that each APIA au pair received during her participation in the program. These failures alone are sufficient to preclude a holding of class-wide liability.

--------------------

[11] For the reasons discussed in APIA's Supplemental Brief in Support of Defendants' Joint Motion for Summary Judgment (ECF Dkt #883, at 16-17), Plaintiffs also cannot establish overtime liability for the APIA California Subclass.

[12] For the reasons discussed in Defendants' Joint Motion for Summary Judgment (ECF Dkt #860, at 47-49) and APIA's Supplemental Brief in Support of Defendants' Joint Motion for Summary Judgment (ECF Dkt #883, at 14-15), Plaintiffs have not established liability on their unpaid training claims.  Rather, APIA has demonstrated that time spent in DOS-required training is not compensable under the FLSA or the NYLL.

Plaintiffs have also failed to provide representative or uniform evidence on the other critical issue: the actual weekly hours of childcare assistance provided by au pairs. As discussed above, neither the DOS au pair regulation nor the Host Family / Au Pair Agreement obviate the need to supply this evidence.  Critically, Plaintiffs cannot provide evidence of common class-wide hours of work because each au pair was placed with a different host family, and each such pairing resulted in distinct weekly hours based upon the unique circumstances of each household. Those unique factors include, but are not limited to, the following: ages of the host family children; host family instructions (if any) when direct supervision of children was not required (*e.g.,* after dropping children at school or an activity); and one or more parents working from home.  These varied circumstances require case-by-case analysis and eliminate the possibility of a single class-wide number of weekly hours.

Plaintiffs' deficiency in proof of actual hours of childcare assistance is so complete that they even fail to provide such information from the specific family who hosted Hlatshaneni.  Instead, Plaintiffs simply offer a conclusory affidavit from Hlatshaneni, which suggests a weekly average amount.  (ECF Dkt #886-53, at 68-69).   Such limited anecdotal evidence from a single class member is woefully insufficient to demonstrate evidence of actual hours worked by that particular class member, much less the entire class.  *See Rojas v. Westco Framers, LLC*, 2016 WL 8540842, at *3 (D. Col. July 25, 2016) ("conclusory assertions from some of the Plaintiffs – that every other [putative class member] worked more than 40 hours – are not enough to demonstrate that this question

has a single classwide answer").

Plaintiffs' reliance on *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1249 (10th Cir. 2014) is misplaced.[13]   *Urethane*'s holding regarding common proof of impact of a conspiracy in a Sherman Antitrust Act case has no applicability to class-wide proof for liability in wage law claims.[14]  Assuming *arguendo*, that Plaintiffs have proven there was a conspiracy to fix the stipend at $195.75 (they have not and cannot), the existence of that conspiracy, by itself, is insufficient to establish wage law liability for <u>any</u> member of the wage classes much less all of them.  The mere existence of a conspiracy would not prove the amount of compensation each au pair actually received nor would it prove that each au pair received sub-minimum wage compensation.   Instead, the *actual* compensation received **and** hours worked must be proven to establish class-wide liability.[15]  Plaintiffs' failure to supply this critical evidence is fatal to their wage-law class claims.

---

[13] For the reasons discussed in Defendants' Joint Opposition to Plaintiffs' Motion for Class Certification (ECF Dkt #605, at 39-42), Plaintiffs' reliance on *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016), is also misplaced.

[14] *Urethane*'s holding has not been applied in any wage and hour case.

[15] Plaintiffs conflate the fact of damages (*i.e.,* liability) with the calculation of damages. The fact that courts do not necessarily require that calculations of damages be supported by class-wide proof, does not relieve Plaintiffs from the obligation to prove liability on a class-wide basis.

**CONCLUSION**

For all the foregoing reasons, APIA respectfully requests that the Court deny the instant Motion in its entirety, together and with such other and further relief as the Court deems just and proper.

Respectfully submitted this 16th day of March, 2018.

s/ *Robert M. Tucker*
Stephen J. Macri
Robert M. Tucker
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1745 Broadway, 22nd Floor
New York, NY 10019
(212) 492-2071
Email:   stephen.macri@ogletree.com
            robert.tucker@ogletree.com

*Attorneys for American Institute for Foreign Study d/b/a Au Pair in America*

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on March 16, 2018, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, including:

Adam A. Hubbard      aahubbard@hollandhart.com

Alexander Neville Hood      alex@towardsjustice.org

Alyssa Lauren Levy      alevy@shermanhoward.com

Aubrey Jane Markson      amarkson@nixonshefrin.com

Bogdan Enica      bogdane@hotmail.com

Brett Michelle Mull      mull@wtotrial.com

Brian Alan Birenbach      brian@rietzlawfirm.com

Brooke A. Colaizzi      BColaizzi@shermanhoward.com

Byron Pacheco      bpacheco@bsfllp.com

Chanda Marie Feldkamp      cfeldkamp@kellywalkerlaw.com

David Meschke      dmeschke@bhfs.com

Dawn Smalls      DSmalls@BSFLLP.com

Diane Rebecca Hazel      dhazel@lrrc.com

Eric Jonathan Stock      estock@gibsondunn.com

Harvey J. Wolkoff      harvey.wolkoff@ropesgray.com

Heather Fox Vickles      hvickles@shermanhoward.com

James Edward Hartley      jhartley@hollandhart.com

James Michael Lyons      jlyons@lrrc.com

Jennifer Arnett Roehrich      jarnett-roehrich@grsm.com

Jessica Lynn Fuller      jfuller@lrrc.com

Joan A. Lukey      joan.lukey@choate.com

John B. Fulfree      jfulfree@putneylaw.com

Jonathan S. Bender      jsbender@hollandhart.com

Joseph B. Cartafalsa      joseph.cartafalsa@ogletreedeakins.com

Joseph H. Hunt      jhunt@shermanhoward.com

Joshua James Libling      jlibling@bsfllp.com

Juan Pablo Valdivieso      jvaldivieso@bsfllp.com

Justin J. Wolosz      jwolosz@choate.com

Kathleen E. Craigmile      kcraigmile@nixonshefrin.com

Kathryn A. Reilly      reilly@wtotrial.com

Kevin Patrick O'Keefe      kokeefe@choate.com

Lauren Fleischer Louis      llouis@bsfllp.com

Lawrence Daniel Stone      lstone@nixonshefrin.com

Lyndsey Marie Kruzer      lkruzer@choate.com

Margo J. Arnold (Terminated)      marnold@bhfs.com

Martha Louise Fitzgerald      mfitzgerald@bhfs.com

Martin Jose Estevao      mestevao@armstrongteasdale.com

Matthew Lane Schwartz      mlschwartz@bsfllp.com

Meshach Yustine Rhoades      mrhoades@armstrongteasdale.com

Michael T. Gass      mgass@choate.com

Natalie Elizabeth West      west@wtotrial.com

Nathan Andrew Huey      nhuey@gordonrees.com

Peggy E. Kozal      pkozal@gordonrees.com

Peter Murray Skinner      pskinner@bsfllp.com

Randall Wade Jackson      rjackson@bsfllp.com

Raymond Myles Deeny      rdeeny@shermanhoward.com

Robert M. Buchanan , Jr      rbuchanan@choate.com

Sabria Alexandria McElroy      smcelroy@bsfllp.com

Samuel Newland Rudman      srudman@choate.com

Sean Phillips Rodriguez      srodriguez@bsfllp.com

Sigrid Stone McCawley      smccawley@bsfllp.com

Susan M. Schaecher      sschaecher@fisherphillips.com

Susan Penniman Klopman      sklopman@hklawllc.com

Thomas Baker Quinn      tquinn@gordonrees.com

Vance Orlando Knapp      vknapp@armstrongteasdale.com

William James Kelly , III      wkelly@kellywalkerlaw.com

s/ _Robert M. Tucker_
Robert M. Tucker
