IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

   Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

   Defendants.

---

**DEFENDANTS AMERICAN CULTURAL EXCHANGE, LLC D/B/A/ GO AU PAIR
AND GO AU PAIR OPERATIONS LLC'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      PLAINTIFFS DO NOT PROVE THAT GO AU PAIR IS THEIR EMPLOYER ........ 2

      A.      The Joint-Employer Determination Requires an Individualized Analysis of How Go Au Pair Conducts Its Au Pair Exchange Program ................................................................................................ 2

            1.      DOS regulations are legally insufficient to establish that Go Au Pair is Plaintiffs' joint employer ................................... 3

            2.      Joint employment requires a sponsor-specific analysis .................. 4

      B.      Go Au Pair Does Not Conduct Its Exchange Program in a Way that Establishes Joint Employment .................................................... 5

            1.      Power to "hire" au pairs .................................................................. 5

            2.      Power to "fire" au pairs .................................................................. 7

            3.      Setting the rate and method of payment ........................................ 8

            4.      Supervision and control of au pairs' schedules and conditions of employment ........................................................... 12

II.     PLAINTIFFS FAIL TO PROVE LIABILITY ON THEIR FLSA OR MWHL CLAIMS ........................................................................................................ 17

      A.      Plaintiffs' FLSA Claims for Unpaid Training Fail as a Matter of Law ........ 18

      B.      Plaintiffs Are Not Entitled to Compensation for Time Not Worked ........... 18

      C.      Plaintiffs Do Not Present Sufficient Proof of Liability ............................... 19

      **CONCLUSION** ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Baker v. Barnard Constr. Co.*,
  146 F.3d 1214 (10th Cir. 1998) ...................................................................................... 18

*Chavez v. City of Albuquerque*,
  630 F.3d 1300 (10th Cir. 2011) ...................................................................................... 18

*Francois v. Gulf Coast Transp., Inc.*,
  No. 8:16-cv-1061-T-24 TBM, 2016 WL 4097108 (M.D. Fla. Aug. 2, 2016) ................ 3, 4

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*,
  683 F.3d 462 (3d Cir. 2012) ........................................................................................... 11

*Ivanov v. Sunset Pools Mgmt., Inc.*,
  567 F. Supp. 2d 189 (D.D.C. 2008).......................................................................... 6, 17

*Jean-Louis v. Metro. Cable Comm'ns, Inc.*,
  838 F. Supp. 2d 111 (S.D.N.Y. 2011)....................................................................... 8, 12

*Johnson v. Serenity Transp., Inc.*,
  No. 15-cv-02004-JSC, 2017 WL 1365112  (N.D. Cal. Apr. 14, 2017) ............................ 4

*Leever v. City of Carson*,
  360 F.3d 1014 (9th Cir. 2004) ........................................................................................ 19

*Local 777, Democratic Union Org. Comm. v. N.L.R.B.*,
  603 F.2d 862 (D.C. Cir. 1978) ...................................................................................... 3, 6

*N.L.R.B. v. Associated Diamond Cabs, Inc.*,
  702 F.2d 912 (11th Cir. 1983) ...................................................................................... 3, 4

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722 (1947)........................................................................................................ 3

*Sanchez v. Simply Right, Inc.*,
  No. 15-cv-00974-RM-MEH, 2017 WL 2222601 (D. Colo. May 22, 2017)................. 5, 15

*Seneca Coal & Coke Co. v. Lofton*,
  136 F.2d 359 (10th Cir. 1943) ....................................................................................... 20

*Turner v. Human Genome Sci., Inc.*,
  292 F. Supp. 2d 738 (D. Md. 2003)............................................................................... 18

U.S. Dep't of Labor, Wage & Hour Div., Adm'r Interpretation
  No. 2014-2, 2014 WL 2816951(June 19, 2014) .............................................. 4, 6, 8, 11

## RULES

29 U.S.C. § 206 ........................................................................................................ 20

29 U.S.C. § 213 ........................................................................................................ 18

## FEDERAL REGULATIONS

59 Fed. Reg. 64296-01 (Dec. 14, 1994) ................................................................ 16

60 Fed. Reg. 8547-02 (Feb. 15, 1995) ................................................................... 17

## REGULATIONS

22 C.F.R. § 62.10 .................................................................................................... 17

22 C.F.R. § 62.11 .................................................................................................... 17

22 C.F.R. § 62.13 .................................................................................................... 17

22 C.F.R. § 62.2 ...................................................................................................... 17

22 C.F.R. § 62.31 ....................................................................................... 6, 9, 13, 16

22 C.F.R. § 62.40 ...................................................................................................... 8

22 C.F.R. § 62.8 ...................................................................................................... 17

22 C.F.R. § 62.9 ...................................................................................................... 14

29 C.F.R. § 785.23 .................................................................................................. 19

## OTHER AUTHORITIES

Md. Code Ann., Lab. & Empl. §§ 3-415, 3-420 ................................................... 20

## INTRODUCTION

Plaintiffs' Motion[1] asks the Court to ignore the evidence in the record—including each sponsor's individual business practices—and simply convert its order denying Defendants' motions to dismiss into an entry of judgment for Plaintiffs on their wage-and-hour claims.[2] That approach must fail, as it is finally time to pull back the curtain of Plaintiffs' conclusory, generalized allegations and reveal the truth.

To prove that Go Au Pair is a joint employer, Plaintiffs cannot rely solely on regulatory obligations or general statements about other sponsors; instead, they must show that Go Au Pair's business practices meet the test for joint-employer liability. Plaintiffs do not even attempt that analysis, and for good reason. Go Au Pair's standard contract templates, and even the testimony of au pairs, demonstrate that host families, not Go Au Pair, decide Plaintiffs' "wages" and key terms of their "employment contracts," as they must manually insert the au pair's stipend amount, schedule, and specific duties into their agreements with au pairs. (*See* Rec. of U.S. Magis. J. on Mots. to Dismiss 22 [ECF 240]). It is also the host families, not Go Au Pair, who interview and select their au pairs (who are free to accept or reject interview requests and placement offers as they see fit). Likewise, host families and au pairs each have discretion to end their relationship without Go Au Pair's approval, and there is no evidence Go Au Pair ever "fired" an au

---

[1] As used herein, "Plaintiffs' Motion" or "Pls.' MSJ" refers to Plaintiffs' Motion for Partial Summary Judgment [ECF 886, 915], and "Pls.' App." refers to Movants' Appendix filed in connection therewith [ECF 886-1 to 886-62]. "Defs.' App." refers to Certain Defendants' Appendix in Support of Motions for Summary Judgment [ECF 861 to 861-17]. "GAP App." refers to Go Au Pair's appendix filed simultaneously with this response.

[2] Plaintiffs assert claims against Go Au Pair under the Fair Labor Standards Act ("FLSA") and the Maryland Wage and Hour Law ("MWHL").

pair over a host family's objection. (*See id.* 20 (stating that Plaintiffs' termination allegations are "most significant").) In other words, the allegations on which this Court relied in denying Go Au Pair's motion to dismiss have been refuted. Plaintiffs' request for summary judgment on Go Au Pair's status as a joint employer should be denied.

Plaintiffs' remaining arguments for partial summary judgment are also meritless. Proof of liability on their minimum-wage and overtime claims inherently requires evidence of the number of hours Plaintiffs worked in a given week and the amount of benefits they received. They offer no such evidence. Instead, they claim they are entitled to recover statutorily-mandated compensation "as if" they worked a 45-hour week, even though the contracts they signed with their host families and the au pairs' own testimony show they did not. (Pls.' MSJ 5.) Plaintiffs fail to offer any valid legal or factual justification for such a stunning assertion. Plaintiffs' Motion should be denied.

## **ARGUMENT**[3]

## I.   **PLAINTIFFS DO NOT PROVE THAT GO AU PAIR IS THEIR EMPLOYER**

Plaintiffs' Motion should be denied in full because they do not—and cannot— prove a threshold issue: that Go Au Pair is their "employer." (*See* GAP MSJ 9-17.)

### A.   **The Joint-Employer Determination Requires an Individualized Analysis of How <u>Go Au Pair</u> Conducts Its Au Pair Exchange Program**

Plaintiffs' Motion rests on two flawed assumptions: (1) that a sponsor's regulatory obligations, standing alone, can establish its status as a joint employer[4] and (2) that

---

[3] Go Au Pair's Motion for Summary Judgment ("GAP MSJ") [ECF No. 884] gives a detailed explanation of Go Au Pair's business practices and other relevant evidence.

[4] Importantly, Go Au Pair is not claiming its status as a J-1 visa sponsor necessarily <u>precludes</u> a finding of joint employer liability—rather, the regulatory obligations that

evidence about other sponsors can be used to establish <u>Go Au Pair's</u> status as a joint

employer. In fact, the joint-employer inquiry must address <u>how</u> each sponsor complies

with regulatory requirements—*i.e.*, each sponsor's individual business practices. Under

that proper analysis, it is clear that Go Au Pair is not Plaintiffs' employer.

### 1. DOS regulations are legally insufficient to establish that Go Au Pair is Plaintiffs' joint employer

Plaintiffs rely on Go Au Pair's regulatory obligations to show that it exerts enough

"control" over au pairs to be their employer. That position, however, "evinces a

misunderstanding of the effect of [government] regulation on the nature of the employer-

employee relationship." *Local 777, Democratic Union Org. Comm. v. N.L.R.B.*, 603 F.2d

862, 875 (D.C. Cir. 1978). Courts have "[c]onsistently . . . held that regulation imposed

by governmental authorities <u>does not evidence control by the [putative] employer</u>."

*N.L.R.B. v. Associated Diamond Cabs, Inc.*, 702 F.2d 912, 922 (11th Cir. 1983)

(emphasis added).[5] That is because "agency regulations are evidence of <u>government</u>

rather than <u>employer</u> control." *Local 777,* 603 F.2d at 899 (emphasis added).

That distinction is critical. The Labor Department has expressly said that the

source of control exercised when running a government-regulated program "needs to be

understood and appropriately appreciated when determining" joint employment. *See*

U.S. Dep't of Labor, Wage & Hour Div., Adm'r Interpretation No. 2014-2, 2014 WL

accompany that status are not alone sufficient to establish joint-employer liability.

[5] "Decisions that define the coverage of the employer-employee relationship under the [National Labor Relations Act] . . . are persuasive in the consideration of similar coverage under the [FLSA]." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 723 (1947); *accord Francois v. Gulf Coast Transp., Inc.*, No. 8:16-cv-1061-T-24 TBM, 2016 WL 4097108, at *3 n.2 (M.D. Fla. Aug. 2, 2016) (applying the rule recognized in *Associated Diamond Cabs* to question of employment status under the FLSA).

2816951, at *4 (June 19, 2014) ("DOL 2014-2"). To evince an employment relationship, there "must be control by the [putative] employer, not simply employer oversight of control exercised by a regulatory governmental body." *Associated Diamond Cabs, Inc.*, 702 F.2d at 920. What matters, then, is the way in which Go Au Pair implements its regulatory mandates—not the fact that such mandates exist. *See* DOL 2014-2, 2014 WL 2816951, at *4 ("[T]he manner in which states choose to implement [the] federal mandates [imposed by Medicaid law] must be closely examined and considered in assessing whether a public entity is a [provider's] employer.").

Thus, to resolve Plaintiffs' joint-employer claim, the Court must look not to regulatory obligations that apply to all sponsors, but to Go Au Pair's individual business practices. Those reflecting mere enforcement of DOS-imposed requirements do not show control by Go Au Pair and, thus, do not indicate joint employment. *See Assoc. Diamond Cabs*, 702 F.2d at 922 ("[E]mployer imposed regulations that incorporate governmental regulations do not evidence an [employment] relationship . . . unless pervasive control by the employer exceeds to a significant degree the scope of government imposed control.").[6]

### 2.   Joint employment requires a sponsor-specific analysis

Because it is the way in which Go Au Pair conducts its program that informs the joint-employer inquiry, it follows that only Go Au Pair's business practices are relevant

---

[6] *Accord Francois*, 2016 WL 4097108, at *3 ("[T]o the extent that Defendant is merely requiring compliance with [county rules], such will not be considered control by Defendant."); *Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2017 WL 1365112, at *10 (N.D. Cal. Apr. 14, 2017) ("[C]ompliance with legal requirements is not indicative of control for purposes of establishing [joint employment].").

to whether it is a joint employer. Thus, while Plaintiffs' generalized assessment glosses over differences among the sponsor-defendants, the Court must still resolve their joint-employer claims on an individualized basis.[7] Plaintiffs, therefore, cannot prove Go Au Pair is their employer by resorting to evidence of other sponsors' business practices. *Id.* The Court should thus ignore all factual assertions that are not supported by evidence pertaining to Go Au Pair. (*See* Pls.' MSJ nn.17-19, 25-30, 33-35 & related text.)

### B. Go Au Pair Does Not Conduct Its Exchange Program in a Way that Establishes Joint Employment

Plaintiffs put forth eight generalized allegations about <u>all</u> sponsors as proof that Go Au Pair is their joint employer. But, <u>as to Go Au Pair</u>, each allegation is supported only by evidence of its regulatory compliance or by a mischaracterization of its business practices. As addressed below in accordance with the relevant joint-employment factors set forth in Go Au Pair's summary judgment motion (GAP MSJ 10-12), the undisputed evidence of Go Au Pair's business practices proves it is not Plaintiffs' employer.

### 1. Power to "hire" au pairs

| Allegation | Applicable Regulation(s) and Alleged Support re: Go Au Pair |
|---|---|
| (1) "Sponsors recruit, interview, and hire au pairs for host families." (Pls.' MSJ 7; *see also id.* 1 (asserting that sponsors "assigned au pairs to homes")). | <u>Regulations</u>: 22 C.F.R. § 62.31(d), (e)<br><br><u>Plaintiffs' Evidence</u>: Go Au Pair's executive director supervises "placement coordinators" (*see* Pls.' MSJ 7-8 n.12 (citing Pls.' App. 978-79 (GAP 30(b)(6) Tr. 13:17-14:1))) |

***Program compliance.*** Plaintiffs rely almost entirely on the sponsors' regulatory

---

[7] *Cf. Sanchez v. Simply Right, Inc.*, No. 15-cv-00974-RM-MEH, 2017 WL 2222601, at *6 (D. Colo. May 22, 2017) (joint employment analysis required evaluation of facts "relevant to a <u>particular</u> plaintiff," not the aggregate of all circumstances involving the putative employer and all plaintiffs seeking relief (emphasis added)).

obligations to prove that Go Au Pair "hire[s] au pairs for host families." (Pls.' MSJ 7 (citing 22 C.F.R. §§ 62.31 (d), (e)).) But it is DOS, not Go Au Pair, who sets the basic eligibility criteria for participating in the Au Pair Program and who requires that au pairs secure a host family placement before departing their home country.[8] Those requirements thus reflect "government rather than employer control," *Local 777*, 603 F.2d at 899.[9] Moreover, Go Au Pair's compliance with those requirements—*i.e.*, vetting program applicants to ensure they meet the eligibility criteria set by DOS or assisting au pair candidates in finding a host family—does not mean that it "hires au pairs for host families" (Pls.' MSJ 7), or even that it "hires" them at all.[10] Accordingly, these actions cannot make Go Au Pair a joint employer. *See Ivanov v. Sunset Pools Mgmt., Inc.*, 567 F. Supp. 2d 189, 196 (D.D.C. 2008) (fact that exchange-program sponsor "recruited plaintiffs and assisted in placing them with a [US] employer" did not "make it an employer under the FLSA"); DOL 2014-2, 2014 WL 2816951, at *7 (Medicaid consumer's ability to hire any provider meeting basic qualifications set by public entity would counsel against public entity being provider's joint employer).

**Go Au Pair's business practices.** Other than sponsors' regulatory obligations, Plaintiffs rely solely on testimony that Go Au Pair's executive director supervises

---

[8] In practice, the sponsors' obligation to "secure . . . a host family placement for each [au pair] participant" before departure from his or her home country means only that Go Au Pair cannot sponsor an au pair's visa application unless he or she has "matched" with a host family. (Defs.' App. 731-32 (Kapler Dec. ¶ 15).)

[9] *See also Godlewska v. HDA*, 916 F. Supp. 2d 246, 258 (E.D.N.Y. 2013) (government-required minimum qualifications were not attributable to putative joint employer).

[10] Notably, the preliminary interview required by DOS regulations as part of the vetting process is different than and does not replace the "hiring" interview conducted by the host family—the au pair's employer. *See* 22 C.F.R. §§ 62.31 (d)(5), (e)(7).

"placement coordinators." (Pls.' MSJ 7-8 n.12 (citing Pls.' App. 978-79 (GAP 30(b)(6) Tr. 13:17-14:1)).) That testimony, however, says nothing about the functions of placement coordinators (who do not assign au pairs to host families) and on its face is not at all probative of whether Go Au Pair "hires" au pairs.

Go Au Pair's actual business practices (which Plaintiffs ignore) demonstrate that, beyond complying with its regulatory obligations, Go Au Pair exercises no control over the host family/au pair "hiring" process. Go Au Pair offers a free-market matching platform through which host families may access a pool of eligible prospective au pairs, but host families must screen them (per their unique criteria), interview them, and select them for "employment" as au pairs—all without substantive involvement from Go Au Pair. (GAP MSJ 13-15.) Go Au Pair-sponsored plaintiffs have, in fact, confirmed this. (*See id.* 4, 13-15; GAP App. 101 (Balta Dep.).) Under these circumstances, it is clear that Go Au Pair does not "hire" au pairs.[11] That a substantial percentage of prospective au pairs vetted by Go Au Pair never secure a host family placement underscores that fact. (Defs.' R. App. 820 (Kapler Dec. ¶ 64) [ECF 862-21].)

## 2. Power to "fire" au pairs

| Allegation | Applicable Regulation(s) and Alleged Support re: Go Au Pair |
|---|---|
| (2) "Sponsors can terminate au pairs without the consent of the host family . . . and a host family cannot terminate an au pair without approval from the Sponsor." (Pls.' MSJ 11.) | Regulation: 22 C.F.R. § 62.40<br>Plaintiffs' Evidence: NONE |

---

[11] *See Godlewska*, 916 F. Supp. 2d at 258 (defendant lacked "power to hire" plaintiffs when city regulations, not defendant, set minimum standards for workers and separate entity chose "which ones to hire").

**Program compliance.** Pursuant to regulation, Go Au Pair may terminate a host family's or an au pair's <u>participation in the Au Pair Program</u> when either violates the rules and regulations governing their participation. *See* 22 C.F.R. § 62.40. But, that limited authority—which is conferred on <u>all</u> sponsors of <u>all</u> exchange programs—is not the same as a power to "fire" an employee, and is not indicative of joint employer status.[12]

**Go Au Pair's business practices.** Plaintiffs offer <u>no</u> evidence supporting their claim that <u>Go Au Pair</u> can fire "au pairs without the consent of the host family" or that "a host family cannot terminate an au pair without [its] approval." (Pls.' MSJ 11 n.19 (citing no evidence for Go Au Pair).) Ending a placement is up to the host family and/or au pair, and neither needs Go Au Pair's "approval" to do so. (GAP MSJ 14-15.) Nor is there any evidence that Go Au Pair has terminated a placement without the au pair or host family having initiated and consented to that outcome. (Defs.' App. 740-41 (Kapler Dec.).)

### 3. Setting the rate and method of payment

| Allegation | Applicable Regulation(s) and Alleged Support re: Go Au Pair |
|---|---|
| (3) "Sponsors effectively dictate au pair wages." (Pls.' MSJ 8; *see also id.* 1, 12 (claiming that sponsors set the "level of au pair wages").) | <u>Regulation</u>: 22 C.F.R. § 62.31(j)(1) |
| | <u>Plaintiffs' Evidence</u>: <br>• Website advertising $195.75 weekly stipend <br>• HF Agreement showing that host family agrees to pay au pair "<u>not less than</u> $195.75 per week" (*see* Pls.' MSJ  18 n.32 (citing Pls.' App. 2426 (HF Agmt)) |

**Program compliance.** There is no dispute that DOS regulations require that au

---

[12] *See* DOL 2014-2, 2014 WL 2816951, at *7 (public entity's right, pursuant to Medicaid regulations, to terminate provider for fraud or abuse does not favor its status as provider's joint employer); *cf. Jean-Louis v. Metro. Cable Comm'ns, Inc.*, 838 F. Supp. 2d 111, 124-25 (S.D.N.Y. 2011) (putative employer's limited right to take action that could effectively end employment did not show power to fire when evidence did not show regular exercise of that right).

pairs receive a minimum weekly stipend, 22 C.F.R. § 62.31 (j), or that DOS repeatedly advised sponsors that the minimum required stipend was $195.75.[13] (Pls.' Opp. to Defs.' Mots. to Dismiss ("Pls.' MTD Opp.") 5 (describing "the $195.75 figure" as a "weekly minimum programmatic wage floor" set by DOS) [ECF 199]; Certain Defs.' Mot. for Summ. J. ("Defs.' MSJ") 7-8 (summarizing DOS guidance on stipend) [ECF 860].). DOS has also monitored, and <u>continues</u> to monitor, compliance with that specific minimum amount. (GAP App. 2-3 (Kapler Dec. ¶¶ 6-9), 43-44, 51-52 (audit reports ¶ 28); GAP MSJ 19-20.) DOS regulations further require that sponsors give "accurate program information" to prospective program participants, 22 C.F.R. § 62.9(a)(3), and DOS monitors all promotional materials—including those advertising a weekly stipend of $195.75—for accuracy and compliance with program requirements, *id.* § 62.31 (m)(6).

Go Au Pair's compliance with these regulatory mandates, including DOS's specific guidance on them, does not make Go Au Pair responsible for "set[ting] the level of au pairs' wages." (Pls.' MSJ 1, 12.) *Cf. Godlewska*, 916 F. Supp. 2d at 261 (contractual requirement to pay union wages was not attributable to putative joint employer when regulations essentially required that contract term). Rather, DOS calculated and set the minimum "level" of au pairs' stipends at $195.75. Regardless of whether that amount complies with the stipend regulation as interpreted by the Court,[14] it is still a product of

---

[13] DOS has not issued any guidance advising Go Au Pair that its prior notices stating the required weekly stipend is $195.75 should not be followed, as is customary when it rescinds guidance or seeks to correct sponsors' conduct. (GAP App. 3-5 (Kapler Dec.).)

[14] Critically, whether a minimum stipend of $195.75 complies with DOS regulations (or wage laws) and whether Go Au Pair independently "set" au pairs' stipends for purposes of the joint-employment inquiry are—and must be analyzed as—two separate issues.

DOS's control over minimum stipend levels, not that of Go Au Pair. (*See* § I.A.1.)

**Go Au Pair's business practices.** Moreover, under Go Au Pair's business practices, it is the host families who determine the amount of their au pair's stipend and when and how it is paid. (GAP MSJ 13.) In fact, Go Au Pair's standard template for the HF-AP Agreement requires host families to insert both the specific stipend amount and when it will be paid. (*Id.*) Plaintiffs' Motion, like all of their other submissions in this case, ignores this dispositive fact—despite Plaintiffs' own admissions that their host families decided "when and how much" to pay them. (Defs.' App. 707 (Gonzalez Dep. 116:14-19) (host family decided to pay weekly stipend of $200 every two weeks); *accord* Defs.' App. 689 (Aguilar Dep.) (host family offered stipend of $840 per month).)

Plaintiffs fall back on evidence showing that Go Au Pair told host families and au pairs that the minimum stipend amount was $195.75—the amount undisputedly calculated and provided by DOS. Specifically, Plaintiffs cite Go Au Pair's standard Host Family Agreement and its website. (Pls.' MSJ 16 n.24 (Go Au Pair's website), 18 n.31 (same), 18 n.32 (Host Family Agreement), 20 n.36 (demonstrative reflecting testimony about video on Go Au Pair's website).) Neither supports their argument. For one, the Host Family Agreement does not "provide for a weekly wage of $195.75." (Pls.' MSJ 18 (emphasis added).) Instead, consistent with DOS guidance, that contract secures the host family's agreement to pay its au pair a stipend "of not less than $195.75 per week." (Pls.' App. 2426 (HF Agmt ¶ 2.4) (emphasis added); *see also* GAP MSJ 13.)

Similarly, that Go Au Pair's website advertised the DOS-specified stipend of $195.75 without saying it was a "minimum" does not show that it controlled au pairs'

stipends, especially when Go Au Pair: (1) informs host families and au pairs before interviewing with each other that $195.75 is just a minimum; (2) allows host families and au pairs to negotiate placement terms, including the stipend, during their interviews; and (3) requires host families to decide on and manually insert into their placement offers, which become their agreements with the au pair upon his or her acceptance of the offer, a stipend amount of (again) "no less than" $195.75. (GAP MSJ 4, 7-8, 13; GAP App. 1-2 (Kapler Dec. ¶ 4).) Nor does Go Au Pair's website show that it "paid [au pairs] $195.75," as Plaintiffs assert. (*See* Pls.' MSJ 20 n.36 (citing testimony about Go Au Pair's website).) Instead, it confirms that the host family pays the stipend to each au pair. (Pls.' App. 1325 (screenshot of webpage); Defs.' App. 740 (Kapler Dec. ¶ 37).)

Go Au Pair's practice of informing host families and au pairs of the DOS minimum stipend and requiring host families to determine the specific stipend amount does not mean, as Plaintiffs argue, that Go Au Pair "set[s] the level of" or "effectively dictate[s]" au pair stipends. (Pls.' MSJ 8, 12.) The Labor Department recognizes that a putative joint employer is not deemed to "set" a wage when the direct employer (here, the host family) otherwise retains and exercises discretion in choosing the rate it pays a worker. *See* DOL 2014-2, 2014 WL 2816951, at *8-9 (that an entity sets a cap or range on rate Medicaid consumer may pay provider does not indicate the entity is a joint employer when the consumer retains discretion over what rate to actually pay). This is true even when the putative employer has some influence on that rate. *Id.; see also In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 466, 471 (3d Cir. 2012) (that parent company "recommends salary ranges" for subsidiary's employees

did not indicate joint employment); *Jean-Louis*, 838 F. Supp. 2d at 129-30 ("[T]he test is whether a putative joint employer determines pay rates, not whether it affects them.").

Plaintiffs' reliance on evidence allegedly proving that most au pairs received a weekly stipend around $195.75 is equally unavailing. Even if it were reliable (it is not), that evidence does not show that Go Au Pair controlled host families' decisions about the stipend, and any such inference is undermined by contrary evidence showing material variation in the stipends paid.[15] (*See* GAP MSJ 4, 7-8, 13.) That most host families independently <u>chose</u> to pay at or near the minimum required stipend does not mean Go Au Pair dictated the amount au pairs were paid. (*See* Defs.' MSJ 20-22 (the oversupply of prospective au pairs means the "market equilibrium" for stipends is below the DOS-required minimum) [ECF 860]; Defs.' App. 745 (Kapler Dec. (64% of au pairs qualifying for higher advertised stipend nonetheless accepted stipend of $200 or less)).)

### 4. Supervision and control of au pairs' schedules and conditions of employment

Plaintiffs' remaining allegations relating to the supervision-and-control factor again rely entirely on program regulations—many of which do not even relate to au pairs' "employment" with host families. Plaintiffs fail to show that Go Au Pair exercises any control beyond enforcing the minimum employment terms and conditions required by DOS regulations. Go Au Pair's business practices in fact demonstrate it is the <u>host families</u> who supervise the au pairs and control the terms of their "employment."

---

[15] A statistically significant percentage of host families offered their au pairs a weekly stipend above $200. (GAP MSJ 4).

a.   DOS-imposed terms of employment

| Allegation | Applicable Regulation(s) and Alleged Support re: Go Au Pair |
|---|---|
| (4) "Sponsors have a statutory obligation to ensure that au pairs are paid a stipend, do not provide more than 10 hours of child care per day or 45 hours of child care in [a] given week, receive a minimum of one and one-half days off per week [plus] one complete weekend off each month, and receive two weeks of paid vacation." (Pls.' MSJ 8.) | Regulation: 22 C.F.R. § 62.31(j)<br><br>Plaintiffs' Evidence: testimony reflecting acknowledgement of the regulatorily-defined role of local representatives (*see* Pls.' MSJ 8 (citing Pls.' App. 982 (GAP 30(b)(6) Tr. 111:1-16))) |
| (5) "Sponsors exert control over au pair working conditions" by:<br>• providing training[16]<br>• ensuring "the child is not too young"<br>• specifying "the kinds of childcare [au pairs] are expected to provide."<br><br>(Pls.' MSJ 8-9.) | Regulations:<br><br>• 22 C.F.R. § 62.31(g)<br>• 22 C.F.R. § 62.31(e)<br>• 22 C.F.R. § 62.31(a); *see also* 22 C.F.R. § 62.4(h)(5)<br><br>Plaintiffs' Evidence: misleading excerpt of HF-AP Agreement (Pls.' MSJ 9 n.16 (citing Pls.' App. 1035 (HF-AP Agmt.))) |
| (7) "Sponsors draft the contracts governing the relationships between au pairs and the host families." (Pls.' MSJ 11.) | Regulation: 22 C.F.R. § 62.31(e)(5)<br><br>Plaintiffs' Evidence: testimony that Go Au Pair provides a standard form for contracts between host families and au pairs (*see* Pls.' MSJ 11 n.20 (citing Pls.' App. 985 (GAP 30(b)(6) Tr. 122:13-20))) |

***Program compliance.*** In addition to the stipend, hours, and time-off requirements

noted above, DOS regulations limit the services au pairs may provide to "childcare

services." 22 C.F.R. § 62.31 (a). Further, all host families and au pairs must enter into a

"written agreement . . . detailing the au pair's obligation to provide child care." *Id.*

§ 62.31 (e)(5). These requirements, and Go Au Pair's enforcement of them, reflect

---

[16] Notably, the only training Go Au Pair provides is the 32 hours of child development and safety instruction required by regulation. (*See* Pls.' App. 985 (Kapler Dep. 125:6-7); Defs.' App. 741 (Kapler Dep.).) Plaintiffs do not claim otherwise. (*See* Pls.' MSJ 9 & n.14.)

13

DOS's control over Plaintiffs' working conditions, not Go Au Pair's. (*See* § I.A.1.)

**Go Au Pair's business practices.** Rather than controlling the terms of the au pair-host family relationship, Go Au Pair's business practices actually cede control to those parties (subject only to regulatory compliance). (*See* GAP MSJ 3-5, 12-16.) While the written agreement between host families and au pairs is based on a standard Go Au Pair-drafted <u>template</u>, that template puts the onus on host families to <u>manually fill in</u> the material substance of their agreements with au pairs, including the au pair's duties, the stipend and interval of pay, anticipated hours and schedule, holidays the au pair may take, house rules, and additional privileges or benefits host families choose to provide.[17] (*See* Pls.' App. 1036-45 (HF-AP Agmt.); GAP MSJ 3-4.) Plaintiff au pairs have confirmed that host families set these terms. (GAP App. 102-04 (Balta Dep.); GAP MSJ 12-16.) The resulting contract is, thus, a unique agreement reflecting the terms and conditions set by or negotiated between each host family and au pair, not those dictated by Go Au Pair.

Moreover, Plaintiffs' attempt to show that <u>Go Au Pair</u> specifies the "kind of child care [au pairs] are expected to provide" is misleading. (*See* Pls.' MSJ 9.) To comply with its regulatory obligations, Go Au Pair's standard template includes a non-exhaustive list of generic tasks commonly included in the category of "childcare services."[18] But, the host family must still specify and provide more detailed instructions regarding <u>which</u> of those generic tasks <u>it</u> expects the au pair to perform:

---

[17] The fact that Go Au Pair's template includes standard language incorporating DOS requirements for the au pair's employment does not indicate joint employment, as such incorporated requirements reflect DOS, not Go Au Pair, control. (*See* § I.A.1.)

[18] All exchange-program sponsors must "explain program activities" and the "terms and conditions of any employment activities" to all program participants. 22 C.F.R. § 62.9(d).

(Pls.' App. 1038 (HF-AP Agmt.) (partial image).) Listing possible tasks host families <u>may</u> require is "not enough" to make Go Au Pair a joint employer, especially "when faced by the countervailing force of the facts stacked against [such a] finding." *Sanchez*, 2017 WL 2222601, at *12 (evidence that putative employer set plaintiffs' work duties was "not enough" to make it a joint employer when it did not hire or fire plaintiffs, control their schedules, set pay rates, or maintain employment records). (*See also* GAP MSJ 12-17.)

> b.   <u>Supervision of au pairs</u>

| Allegation | Applicable Regulation(s) and Alleged Support re: Go Au Pair |
|---|---|
| (5) "Sponsors exert control over au pair working conditions" by "monitor[ing] 'au pair exchanges[.]'" (Pls.' MSJ 8-9 (quoting 22 C.F.R. § 62.31(l)).) | <u>Regulations</u>: 22 C.F.R. § 62.31(l) <br> <u>Plaintiffs' Evidence</u>: NONE |

***Program compliance.*** As required by DOS, Go Au Pair monitors host families' compliance with regulatory requirements concerning their au pair's stipend, hours, time-off, etc.[19] (GAP MSJ 16.) This required oversight typically requires only that the au pair confirm that these requirements have been met. (GAP App. 2 (Kapler Dec. ¶ 5).)

***Go Au Pair's business practices.*** Go Au Pair does not "actively monitor" au pairs' working conditions in a manner that would suggest joint employment. (*See* Pls.' MSJ 8.) It does <u>not</u> manage or supervise au pairs, direct the performance of their

---

[19] As discussed in the next section, Go Au Pair's monitoring activities also extend to oversight of au pairs <u>as exchange participants</u>.

services, or keep track of when and how many hours they actually work. (GAP MSJ 15-16; Defs.' App. 740 (Kapler Dec. ¶ 36); Defs.' App. 686, 695 (Aguilar Dep.) (Go Au Pair did not supervise her); GAP App. 105 (Balta Dep.) (same).) Plaintiffs cite no contrary evidence. The testimony they cite merely reflects Go Au Pair's recognition of the regulatorily-defined role of local representatives. (*See* Pls.' MSJ 8 n.13 (citing GAP 30(b)(6) Tr. 111:1-16 (discussing duties of local representatives set forth in 22 C.F.R. §§ 62.31 (c)(5), (h)(3), (i)(4), (l)(1))).)

c.   Regulatory requirements that relate to cultural exchange rather than employment

| Allegation | Applicable Regulation(s) and Alleged Support re: Go Au Pair |
|---|---|
| (5) "Sponsors exert control over au pair working conditions" by:<br>• monitoring "'au pair exchanges'" and reporting "'serious or unusual' problems"<br>• ensuring au pairs have a private room<br>• ensuring au pairs meet educational requirements<br><br>(Pls.' MSJ 8-9 (quoting 22 C.F.R. § 62.31(l)).) | Regulations:<br><br>• 22 C.F.R. § 62.31(l); 22 C.F.R. § 62.13(d)<br>• 22 C.F.R. § 62.31(e)(6)<br>• 22 C.F.R.§ 62.31(k)<br><br>Plaintiffs' Evidence: NONE |
| (6) "Sponsors act as the final arbiters of any disputes between au pairs and host families regarding wages and hours." (Pls. MSJ 10.) | Regulations:<br>22 C.F.R. § 62.31(f)(1),(l)(4)[20]<br><br>Plaintiffs' Evidence: NONE |
| (7) "Sponsors provide au pairs with health insurance." (Pls.' MSJ 11.) | Regulation: 22 C.F.R. § 62.14<br><br>Plaintiffs' Evidence: au pairs "receive basic health insurance"[21] (Pls.' MSJ 11 (citing Pls.' App. 1032 (LAR Manual))) |

---

[20] *See* 59 Fed. Reg. 64296-01, 64299 (Dec. 14, 1994) (explaining that new monitoring requirement for "monthly contact will also allow for the resolution of conflicts between the host family and au pair before conflicts become insurmountable").

[21] While Go Au Pair handles the administrative aspects of securing insurance for au pairs, host families pay for that insurance and may increase coverage at their discretion. (Defs.' App. 742-43 (Kapler Dec. ¶ 47); Defs.' App. 796 (HF-AP Agmt.).)

Plaintiffs' reliance on the above regulations as evidence of Go Au Pair's control over au pairs' "working conditions" (Pls.' MSJ 9-10) is doubly misplaced. Not only do they again substitute DOS control as "evidence" of Go Au Pair's (*see* § I.A.1), they also conflate the <u>Au Pair Program</u> with the au pair's <u>employment</u>, which is only one aspect of that program. *See* 60 Fed. Reg. 8547-02, 8550 (Feb. 15, 1995) (au pair's employment is a "work component that is an integral part of the program"). Thus, in addition to enforcing certain conditions of au pairs' employment, as required by regulation, sponsors must also ensure that their experiences fulfill the cultural-exchange goals the program serves and that they comply with the DOS-imposed terms of their visas. *See, e.g.*, 22 C.F.R. §§ 62.1, 62.8, 62.10(d), 62.11, 62.13. (*See also* GAP App. 95-99 (DOS notice).)

By relying on regulations that do not bear directly on the au pair's <u>employment</u>, *i.e.*, providing child care for host families, Plaintiffs confuse Go Au Pair's oversight of au pairs as "<u>exchange visitors</u>," 22 C.F.R. § 62.2, with purported control over them as <u>employees</u>. *See Ivanov*, 567 F. Supp. 2d at 194-95 (recognizing distinction between sponsor's oversight of plaintiffs as exchange visitors and alleged control over them as employees). Go Au Pair's compliance with these regulations does not establish Go Au Pair "exert[s] control" over Plaintiffs' employment (Pls.' MSJ 9); it merely reflects Go Au Pair's "sponsor[ship of] foreign exchange [visitors]." *Ivanov*, 567 F. Supp. 2d at 195-96.

In sum, Plaintiffs have not met their burden to show—with probative <u>evidence</u>— that Go Au Pair is their employer. Their Motion must therefore be denied.

## II.   PLAINTIFFS FAIL TO PROVE LIABILITY ON THEIR FLSA OR MWHL CLAIMS

Even if Go Au Pair were Plaintiffs' joint employer (it is not), their claims under the

FLSA and MWHL still fail. Their state wage claims are preempted and the $195.75 DOS stipend amount complies with the FLSA. (Defs.' MSJ 25-46 [ECF 860].) Moreover, Plaintiffs do not <u>prove</u> they are entitled to further compensation under either statute.[22]

### A.     Plaintiffs' FLSA Claims for Unpaid Training Fail as a Matter of Law

The FLSA's minimum-wage and overtime requirements do not apply to an "employee whose services . . . are performed in a workplace [in] a foreign country." 29 U.S.C. § 213(f). Like all Go Au Pair-sponsored au pairs, Plaintiff Gonzalez received the 32 hours of DOS-required instruction through a multi-media training course taken in her home country. (Defs.' App. 741 (Kapler Dec. ¶ 43); GAP App. 112 (Gonzalez Dep.).) Plaintiffs' training claims thus fail as a matter of law.

### B.     Plaintiffs Are Not Entitled to Compensation for Time Not Worked

The FLSA and MWHL do not provide a cause of action to recover wages for time <u>not</u> worked.[23] Yet, here, Plaintiffs argue they are entitled to statutorily-required pay "<u>as if</u>" they worked a 45-hour week "<u>even if they work[ed] less</u>." (Pls.' MSJ 5 (emphasis added).) As justification, they rely on a Labor Department regulation that states:

> An employee who resides on his employer's premises on a permanent basis . . . is not considered as working all the time he is on the premises. . . . It is, of course, difficult to determine the exact hours worked under these circumstances and <u>any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted</u>.

29 C.F.R. § 785.23 (emphasis added). While there is little authority defining the contours

---

[22] "The requirements under the MWHL mirror those of the [FLSA]." *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).

[23] *See Chavez v. City of Albuquerque*, 630 F.3d 1300, 1310 (10th Cir. 2011) ("The DOL's position is that FLSA overtime applies only to hours actually worked."); *Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1220 (10th Cir. 1998) (employee must prove "he <u>performed work</u> for which he was not properly" paid) (emphasis added).

of this provision, there is <u>nothing</u> to suggest that it requires payment of wages for time a claimant admittedly did not work. Such an unreasonable interpretation would effectively create a right of action when none otherwise exists.[24]

Moreover, it defies logic to substitute the DOS stipend regulation for the "reasonable agreement of the parties" (as Plaintiffs do) when there is, in fact, a written agreement between the parties specifying the anticipated number of hours each au pair is expected to work.[25] (*See* Defs.' App. 736-37 (Kapler Dec. ¶¶ 28-29); Pls.' App. 1036-45 (HF-AP Agmt.).) And the agreements here refute Plaintiffs' position. Analysis of those agreements from 2010-2015 shows that 53% of au pairs were scheduled to work 45 hours or less per week, 34% for 40 hours or less, 16% for 35 hours or less, and 7% for 30 hours or less. (Defs.' App. 743-44 (Kapler Dec.).) This variation precludes any assumption that every au pair agreed to work 45 hours per week.

### C.      Plaintiffs Do Not Present Sufficient Proof of Liability

Plaintiffs attempt to prove Go Au Pair's class-wide liability for unpaid minimum-wage and overtime by showing that 90% of au pairs surveyed by their expert reported receiving about $195.75 per week. (Pls.' MSJ 19.) Even leaving aside the many reasons that evidence is inadmissible, it is still legally insufficient to meet their burden.

To prove liability, Plaintiffs must show the number of hours they worked, and the amount of benefits they received, in any given week. Overtime liability requires proof that Plaintiffs worked in excess of 40 hours in a week. See 29 U.S.C. § 206; Md. Code

---

[24] Notably, there is no private right of action under the DOS stipend regulation.

[25] *See Leever v. City of Carson*, 360 F.3d 1014, 1018-21 (9th Cir. 2004) ("[A]t a minimum, an agreement under § 785.23 must take into account some approximation of the hours actually worked, or reasonably required to be worked, by the employee.").

Ann., Lab. & Empl. §§ 3-415, 3-420. Plaintiffs' minimum-wage claims turn on whether their <u>weekly</u> stipends fell below the applicable <u>hourly</u> minimum-wage rate; thus, those claims can be resolved only by comparing the actual stipend (and other compensation) received <u>with</u> the actual number of hours worked.[26]

Plaintiffs present insufficient class-wide proof of both. They offer <u>no</u> evidence of the number of hours au pairs worked on a weekly basis, and for good reason. Contrary to their improper assumption of a 45-hour workweek, actual evidence shows that about a third of au pairs did not work overtime hours. (Defs.' App. 743-44 (Kapler Dec.).) And, while Plaintiffs argue that most au pairs received close to $195.75 per week, the evidence also shows that au pairs' stipends varied (*id.*), and that some received added benefits that must be considered. (*E.g.*, GAP App. 107 (Balta Dep.).) Thus, at a minimum fact issues exist that preclude summary judgment on a class-wide basis.

Similarly, conflicting evidence of the number of hours Plaintiff Gonzalez worked on a weekly basis creates a fact issue precluding summary judgment on her individual claims. Just six weeks into her placement, Gonzalez told Go Au Pair that she worked an average of 40 hours a week, while she now—years after the fact—claims she worked 45 hours every week. (*Compare* GAP App. 115 (Gonzalez Dep.) *and* 120 (Gonzalez Dep. Ex. 109), with Pls.' App. 3260 (Gonzalez Dec. ¶ 8).)

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion should be denied.

---

[26] *Cf. Seneca Coal & Coke Co. v. Lofton*, 136 F.2d 359, 362 (10th Cir. 1943) ("[W]here a 'regular rate' is not expressly provided . . . the court will not supply [one] by implication, but will . . . divid[e] the total weekly compensation by the total hours worked.").

Dated: March 16, 2018.           Respectfully submitted,


*s/ Kathryn A. Reilly*
Kathryn A. Reilly
Brett M. Mull
V. William Scarpato III
Natalie West
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:  Reilly@wtotrial.com
        Mull@wtotrial.com
        Scarpato@wtotrial.com
        West@wtotrial.com

Attorneys for Defendants American Cultural Exchange, LLC d/b/a Go Au Pair and Go Au Pair Operations LLC

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on March 16, 2018, I electronically filed the foregoing DEFENDANTS AMERICAN CULTURAL EXCHANGE, LLC D/B/A/ GO AU PAIR AND GO AU PAIR OPERATIONS LLC'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

*s/ Claudia Jones*