IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

      Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

      Defendants.

_____

**OPPOSITION OF DEFENDANT CULTURAL CARE, INC. TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF 915]**

## **TABLE OF CONTENTS**

RESPONSE TO "PRELIMINARY STATEMENT" ............................................................. 1

RESPONSE TO "LEGAL STANDARD" .......................................................................... 1

ARGUMENT ................................................................................................................. 2

I.      AU PAIRS ARE NOT ENTITLED TO THE HIGHER OF FEDERAL,
        STATE, OR LOCAL MINIMUM WAGES, INCLUDING OVERTIME. .................... 2

II.     THE WAGE AND HOUR STATUTES DO NOT ENTITLE AU PAIRS TO
        BE PAID FOR A 45 HOUR WEEK IF THEY WORK FEWER THAN 45
        HOURS. ............................................................................................................ 7

III.    PLAINTIFFS ARE NOT ENTITLED TO A RULING THAT CCI WAS OR IS
        THEIR JOINT EMPLOYER ................................................................................. 9

IV.     PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT OF
        LIABILITY FOR THEIR WAGE AND HOUR CLAIMS ......................................... 13

        A.      "The FLSA classes have established liability."  (Pl. S.J. Br. 13) .............. 14

                1.      Sufficient Uniformity in the Stipend (*Id.*) ........................................ 14

        B.      Summary Judgment for FLSA Classes and Named Plaintiffs. ................. 18

                1.      Training ......................................................................................... 18

                2.      The Room and Board Credit ......................................................... 19

CONCLUSION .......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) .................................................................... 3

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) .................................................................... 15

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) .................................................................................... 7

*Bausch v. Stryker Corp.*,
   630 F.3d 546 (7th Cir. 2010) ...................................................................... 2

*Bedford v. City of Del City*,
   No. 93-6154, 1994 WL 273825 (10th Cir. June 22, 1994) .......................... 4

*Behrens v. Pelletier*,
   516 U.S. 299 (1996) .................................................................................... 2

*Bienkowski v. Northeastern Univ.*,
   285 F.3d 138 (1st Cir. 2002) .................................................................... 19

*Braddock v. Madison Cty.*,
   34 F. Supp. 2d 1098 (S.D. Ind. 1998) ........................................................ 8

*Brock v. City of Cincinnati*,
   236 F.3d 793 (6th Cir. 2001) ...................................................................... 7

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 326 (E.D. Mich. 2001) ............................................................ 15

*Carpenter v. DirecTV, LLC*,
   No. 14-cv-02854-MJW, 2017 WL 4225797 (D. Colo. May 16, 2017) .......... 9

*Cejka v. Vectrus Sys. Corp.*,
   No. 15-cv-02418-MEH, 2016 WL 898815 (D. Colo. Mar. 9, 2016) .............. 3

*Chavez v. City of Albuquerque*,
   630 F.3d 1300 (10th Cir. 2011) .................................................................. 8

*Christopher v. Smithkline Beecham Corp.*,
    567 U.S. 142 (2012) ................................................................................................. 20

*ClearOne Commc'ns, Inc. v. Biamp Sys.*,
    653 F.3d 1163 (10th Cir. 2011) ................................................................................ 3

*Coldwell v. RiteCorp Envtl. Prop. Sols.*,
    No. 16-cv-01998-NYW, 2017 WL 1737715 (D. Colo. May 4, 2017) ........................ 13

*Cosme Nieves v. Deshler*,
    786 F.2d 445 (1st Cir. 1986) .................................................................................... 4

*Cultural Care, Inc. v. Office of the Att'y Gen. of Mass.*,
    No. 16-cv-11777-IT, 2017 WL 3272011 (D. Mass. Aug. 1, 2017) ........................... 18

*Hanson v. Wyatt*,
    552 F.3d 1148 (10th Cir. 2008) ................................................................................ 6

*Ivanov v. Sunset Pools Mgmt.*,
    567 F. Supp. 2d 189 (D.D.C. 2008) ........................................................................ 12

*Kleen Prods. LLC v. Int'l Paper*,
    306 F.R.D. 585 (N.D. Ill. 2015) ............................................................................... 15

*Knitter v. Corvias Military Living, LLC*,
    758 F.3d 1214 (10th Cir. 2014) .............................................................................. 13

*Leber v. Berkley Vacation Resorts, Inc.*,
    No. 2:08-CV-01752-PMP-PAL, 2009 WL 2252517
    (D. Nev. July 27, 2009) .......................................................................................... 10

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013) .................................................................................. 14

*Moreau v. Air France*,
    356 F.3d 942 (9th Cir. 2004) .................................................................................. 12

*Moreno v. Future Care Health Servs., Inc.*,
    No. 500569/13, 2015 WL 1969753 (N.Y. Sup. Ct. May 4, 2015) ............................ 19

*Rojas v. Westco Framers, LLC*,
    15-cv-0168-WJM-KLM, 2016 WL 8540842 (D. Colo. July 25, 2016) ........................ 8

*Salinas v. Commercial Interiors, Inc.*,
    848 F.3d 125 (4th Cir. 2017) .................................................................................. 12

*Sanchez v. Simply Right, Inc.*,
No. 15-cv-00974-RM-MEH, 2017 WL 2222601 (D. Colo. May 22, 2017) .......... 10, 16

*Schneider v. Landvest Corp.*,
No. 03-cv-02474-WYD-PAC, 2006 WL 322590 (D. Colo. Feb. 9, 2006).................... 7

*Schor v. Abbott Labs.*,
457 F.3d 608 (7th Cir. 2006) .................................................................................... 3

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) .................................................................................. 14

*Taylor v. Colo. Dep't of Health Care Policy & Fin.*,
811 F.3d 1230 (10th Cir. 2016)................................................................................ 6

*Torres v. Nation One Landscaping, Inc.*,
No. 12 CV 9723, 2016 WL 7049048 (N.D. Ill. Dec. 5, 2016).................................... 17

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ........................................................................................... 15

*Unger v. Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) .................................................................................. 15

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) .............................................................................. 14

*Wise v. T-Man, LLC*,
No. 1:14-CV-630, 2016 WL 3544715 (N.D. Ohio June 29, 2016) ........................... 10

*Zachary v. Rescare Oklahoma, Inc.*,
471 F. Supp. 2d 1175 (N.D. Okla. 2006).................................................................. 13

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
644 F.3d 604 (8th Cir. 2011) .................................................................................. 15

## Statutes

Fair Labor Standards Act, 29 U.S.C. § 206, et seq.  ............................................. *passim*

29 U.S.C. § 213............................................................................................................ 6

29 U.S.C. § 218........................................................................................................ 2, 4

Fulbright-Hays Act, 22 U.S.C. § 2451, et seq. ............................................................. 4

**Other Authorities**

20 C.F.R. § 655.122 ................................................................................... 20

22 C.F.R. pt. 62 ......................................................................................... 4

22 C.F.R. § 62.10 ...................................................................................... 12

22 C.F.R. § 62.31 ................................................................................. *passim*

22 C.F.R. § 62.32 ...................................................................................... 12

22 C.F.R. § 62.40 ...................................................................................... 11

29 C.F.R. § 552.100 .................................................................................. 20

29 C.F.R. § 552.109 ................................................................................. 5, 6

29 C.F.R. § 785.23 ...................................................................................... 7

59 Fed. Reg. 64,296 .................................................................................. 11

60 Fed. Reg. 8547 ..................................................................................... 11

Fed. R. Civ. P. 23 .................................................................................. 14, 15

Fed. R. Civ. P. 56 .................................................................................. 14, 15

Plaintiffs affirmatively seek summary judgment on their Fair Labor Standards Act, ("FLSA") claim and their state wage and hour claims.  As argued below, tracking Plaintiffs' own motion and briefing structure, that motion must be denied because (a) Plaintiffs have impliedly acknowledged that their claims are not directly under the FLSA and state wage and hour acts (together, the "Wage and Hour Statutes"), and the Department of State ("DOS") au pair program regulations (22 C.F.R. § 62.31) do not give rise to a private cause of action, and (b) to the extent that any of Plaintiffs' claims are deemed to be directly under the Wage and Hour Statutes, genuine issues of material fact exist as to the hours worked and the stipend amount received by each Plaintiff sponsored by Cultural Care, Inc. ("CCI"), thereby defeating summary judgment.

## RESPONSE TO "PRELIMINARY STATEMENT"

Plaintiffs contend that the "framework of this case" is that "Defendants profit from sponsoring visas for young women from overseas who work as domestic childcare providers in American homes for low wages," and that Plaintiffs are "low-wage foreign workers."  Plaintiffs' Motion for Partial Summary Judgment ("Pl. S.J. Br.") 1, ECF 915. Plaintiffs further contend that "factual disputes," as well as legal disagreements, can be resolved in this motion.  *Id.*  As explained below and in CCI's Motion for Summary Judgment ("CCI S.J. Br."), ECF 879, CCI strongly disputes the purported "framework of this case."  In addition, factual disputes are not resolved at the summary judgment stage.  To the contrary, they defeat summary judgment.

## RESPONSE TO "LEGAL STANDARD"

Plaintiffs move for partial summary judgment, a possible, but disfavored, remedy.

CMA Civ. Practice Standard 7.1E(c).  Plaintiffs correctly state, but cannot satisfy, the requirements of entitlement to judgment as a matter of law and the absence of any genuine issues of material fact.

## ARGUMENT

## I.   AU PAIRS ARE NOT ENTITLED TO THE HIGHER OF FEDERAL, STATE, OR LOCAL MINIMUM WAGES, INCLUDING OVERTIME.

Plaintiffs' first requested ruling of law, that "[a]u pairs are entitled to receive from their employers the minimum federal, state, or local wage, including overtime" (Pl. S.J. Br. 3), must be denied.  Plaintiffs combine abbreviated arguments as to why they are purportedly entitled to this holding as a matter of law with the premise that this Court has already definitively ruled in this case that (a) "the FLSA applies to Plaintiffs' claims;" (b) "the FLSA, in turn, explicitly provides that, if a state sets a higher minimum wage than that mandated by the FLSA, employees within that state are entitled to receive that higher wage;"[1] and (c) "[w]ith regards to overtime, . . . after January 1, 2015, au pairs are entitled to compensation for overtime under the FLSA."  *Id.* at 3-4.

Preliminary Rulings:  Plaintiffs' invocation of law of the case is impermissible as a matter of law.  *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized . . . . On summary judgment, however, the plaintiff can no longer rest on the pleadings . . . .");  *Bausch v. Stryker Corp.,* 630 F.3d 546, 558, 561 (7th Cir. 2010) (discovery may be necessary before determining whether federal law preempts parallel

---

[1]   Plaintiffs posit that the Court reached this early ruling in reliance on 29 U.S.C. § 218(a), *i.e.*, the FLSA savings clause.  Pl. S.J. Br. 4.  As discussed below, any such reliance would be misplaced.

state claims); *see also Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1175 (9th Cir. 2016) ("[A]necdotal speculation and supposition are not a substitute for evidence").  The same is true in the related context of issue preclusion.  *See Schor v. Abbott Labs.*, 457 F.3d 608, 615 (7th Cir. 2006) (under federal law, denial of a dispositive motion, "so that a suit continues and the issue remains alive, has no preclusive effect."); *Cejka v. Vectrus Sys. Corp.*, No. 15-cv-02418-MEH, 2016 WL 898815, at *15-16 (D. Colo. Mar. 9, 2016) (denial of motion to dismiss and summary judgment motion founded on preemption does not preclude preemption defense in subsequent action).

Plaintiffs criticize CCI for taking the position in other litigation that this Court's denial of Defendants' motion to dismiss is to be revisited after discovery.  Pl. S.J. Br. 3 n.6.  But, the Tenth Circuit requires nothing less.  *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1171-73 (10th Cir. 2011) (orders denying arguments raised in unsuccessful dispositive motions are not final judgments and must be re-litigated to preserve appellate review).

<u>Minimum Wage (Substantive Arguments)</u>:  CCI does not dispute Plaintiffs' contention embedded in its first requested holding that au pairs must be compensated in conformance with the federal minimum wage required by the FLSA (Pl. S.J. Br. 4).[2] The DOS au pair regulation and official stipend notices require as much, and provide definitive guidance on what room and board credit conforms with the FLSA in this

---

[2]  The subject regulation requires that au pairs be "paid in conformance with the requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor."  22 C.F.R. § 62.31(j)(1).

regard. 22 C.F.R. § 62.31(j)(1).  Defs. S.J. App. 70-75 - DOS and USIA Notices, ECF 861-1.[3]

Where Plaintiffs err as a matter of law is the conclusory assertion that, by extension, "[w]here state or local law requires a higher minimum wage, the FLSA requires that higher wage.  29 U.S.C. § 218(a)."  Pl. S.J. Br. 4.  Not only does federal preemption preclude this conclusion,[4] but Plaintiffs misread the FLSA, which does not contain a requirement that au pairs be paid the higher of federal, state, or local minimum wage.  The only reference to non-federal minimum wages in the FLSA is in 29 U.S.C. § 218(a), which is a classic savings clause.  The FLSA savings clause does not create a private cause of action.  *Cosme Nieves v. Deshler*, 786 F.2d 445, 452 (1st Cir. 1986); *accord Bedford v. City of Del City*, No. 93-6154, 1994 WL 273825, at *2  (10th

---

[3]  Citations in the format "Defs. S.J. App. _" and "Defs. S.J. R. App. _" refer to Defendants' unrestricted and restricted appendices, respectively, in support of summary judgment, ECF 861 and 862.  Citations in the format "Pl. S.J. App. _" refer to Plaintiffs' Appendix, ECF 886-1-62.  Citations in the format "App. _" and "R. App." refer to the Appendix and Restricted Appendix filed herewith.

[4]  CCI continues to maintain that au pairs are predominantly cultural exchange visitors, not workers; and that the Fulbright-Hays Act (22 U.S.C. § 2451, et seq.), and by extension the J-1 exchange visitor regulations (22 C.F.R. pt. 62) and au pair regulations (22 C.F.R. § 62.31), preempt the application of state and local wage and hour laws. *See* Certain Defendants' Motion for Summary Judgment ("Defs. Jt. S.J. Br.") pt. III, ECF 860.  This issue is dealt with at length in Defendants' affirmative papers and incorporated here by reference.  Succinctly stated, preemption, predominantly premised on the concept that au pairs are principally exchange visitors, not workers, is confirmed by (1) the administrative record, (2) the sworn testimony of the legal officer principally responsible for the applicable regulations and guidance documents (Defs. S.J. App. 59-68 - Colvin Decl., ECF 861-1), (3) the State Department's and Labor Department's decisions not to sanction or otherwise reprimand sponsors who have represented since 2007 that au pairs are paid at least $195.75 (Defs. S.J. App. 144 - Jordan Decl. ¶¶ 10-11, ECF 861-2; App. 1 - Supp. Jordan Decl. ¶¶ 4-5), and (4) the State Department's internal correspondence dated just prior to the filing of this suit (App. 4 - Sept. 18, 2014 DOS Email).

Cir. June 22, 1994) ("[The FLSA] does not incorporate the labor law of all cities and states.") (quotations omitted).  In addition, as this Court earlier noted, the United States Information Agency ("USIA") and the DOS believe that the addition of the "in conformance" regulation by the USIA (*see* n.2) was "to ensure that there is no future confusion regarding payment of *the* minimum wage" (Pl. S.J. App. 24-25, ECF 886-1) (emphasis added), not of multiple possible minimum wages.  Hence, Plaintiffs cannot support a state or local wage action derivatively through the FLSA.

Nor can Plaintiffs support a cause of action directly under state or local minimum wage laws, even apart from preemption, because of their assertion that all Plaintiffs are entitled to be paid for 45 hours per work week regardless of the number of hours worked (the "45 Hour Claim").  Pl. S.J. Br. 5-6.  As explained *infra* part II, the Wage and Hour Statutes do not contain any programmatic 45 hour provision, thus indicating that Plaintiffs are attempting to seek relief, not under the Wage and Hour Statutes, but under the regulations promulgated by the DOS, 22 C.F.R. § 62.31 (the "DOS Regulations").

Overtime:  Plaintiffs next argue that, "[t]he FLSA requires overtime for work in excess of 40 hours in a week."  Pl. S.J. Br. 4.  Plaintiffs argue that this Court has already held that, "after January 1, 2015, au pairs are entitled to compensation for overtime under the FLSA."  *Id.* (citing Pl. S.J. App. 28, ECF 886-1 and 29 C.F.R. § 552.109(c)).  As noted above, that ruling, at the motion to dismiss stage, is not preclusive.  Indeed, the ruling is dependent on a question of fact that the Court could not yet have determined because discovery had not yet been conducted, and no evidence had been presented to the Court, at the time of the ruling.  By its express

terms, the Department of Labor's ("DOL") limitation to the statutory exemption of overtime for live-in domestic workers (29 U.S.C. § 213(b)(21)) only applies where there is a third-party employment relationship (*see* 29 C.F.R. § 552.109(c)); primary domestic employers have been and remain  exempt.  Otherwise stated, the Court cannot rule on the availability of overtime to Plaintiffs without a fact-dependent determination as to whether CCI is a joint employer.  That issue is addressed *infra* part III.  In addition, with the advantage of discovery, CCI has offered in its own summary judgment motion, incorporated here by reference, an extensive evidentiary record demonstrating that, at the very least, a genuine issue of material fact exists precluding summary judgment for Plaintiffs on the issue of their entitlement to overtime.

And, again, Plaintiffs' strategic decision to pursue the 45 Hour Claim (Pl. S.J. Br. 5-6) defeats summary judgment with regard to overtime because the 45 Hour Claim does not derive directly from the Wage and Hour Statutes, the exclusive sources of the overtime requirement.

By pursuing the 45 Hour Claim, Plaintiffs acknowledge, by necessary implication, that they are not asserting claims directly under the Wage and Hour Statutes.  This creates an insurmountable obstacle for Plaintiffs because they did not assert a cause of action under the DOS Regulations, nor could they because the regulations do not support a private right of action.  *See Taylor v. Colo. Dep't of Health Care Policy & Fin.*, 811 F.3d 1230, 1235 & n.6 (10th Cir. 2016) (federal regulation placing obligation on Medicaid sponsors created no private right of action and could not supply basis for discrimination claim); *Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008) (finding no

private right of action where "[t]he statute authorizing the regulation . . . contained no 'rights-creating' language"). This defeats summary judgment for Plaintiffs on their first requested holding in its entirety.

## II.     THE WAGE AND HOUR STATUTES DO NOT ENTITLE AU PAIRS TO BE PAID FOR A 45 HOUR WEEK IF THEY WORK FEWER THAN 45 HOURS.

Plaintiffs' second requested holding is that "[a]u pairs are entitled to be paid a 'weekly rate' as if they worked 45 hours."  Pl. S.J. Br. 5.  Plaintiffs premise this assertion on language in the DOS Regulations, specifically 22 C.F.R. §§ 62.31(c)(2) and 62.31(j)(1), that respectively set the maximum hours of childcare services permitted per week and provide that au pairs will be compensated at a weekly rate based upon 45 hours of childcare services.  *Id.*  But this effort to impose liability as a matter of law for time not actually worked is directly contrary to federal and state wage and hour laws.  It is one of the most fundamental principles of wage and hour liability that "[a]n employee who brings suit . . . for unpaid minimum wages or unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated."[5]  *Schneider v. Landvest Corp.*, No. 03-cv-02474-WYD-PAC, 2006 WL

---

[5] Plaintiffs' reliance on 29 C.F.R. § 785.23 and *Brock v. City of Cincinnati*, 236 F.3d 793 (6th Cir. 2001) is misplaced.  To the extent that Plaintiffs, as "employees" residing in the homes of their host families, reached some agreement regarding the hours of childcare, that agreement would have been with their host families and not with CCI.  Indeed, the record has significant evidence that Plaintiffs either had variable schedules (and therefore no agreement at all about hours) or agreements to work a schedule of significantly fewer than 45 hours per week.  *See, e.g.*, R. App. 5 - Tayida Dep. 91:11-17; R. App. 8-9 - Pavot Dep. 64:20-65:4; n.6, *infra.*  DOS, and accordingly CCI, require only that au pairs provide *no more* than 45 hours of childcare per week.  22 C.F.R. § 62.31(c)(2).  CCI has no agreement, policy, or requirement that au pairs work 45 or approximately 45 hours per week.  Nor do the DOS Regulations establish a schedule or an "agreement." They merely state a maximum number of hours for childcare in a week.

322590, at *21 (D. Colo. Feb. 9, 2006) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)).  Under federal and state wage and hour laws, courts must analyze the number of hours actually worked in order to determine liability.  *See, e.g., Rojas v. Westco Framers, LLC*, No. 15-cv-0168-WJM-KLM, 2016 WL 8540842, at *3 (D. Colo. July 25, 2016).  The number of hours for which an employee was compensated, or was expected or scheduled to work, is irrelevant to such a determination.  In *Chavez v. City of Albuquerque*, the Tenth Circuit held that there is no liability, "if the employee does not actually work the requisite number of hours in a week, regardless of whether the employee is compensated as though he or she did work." 630 F.3d 1300, 1310 (10th Cir. 2011); *see also Braddock v. Madison Cty.*, 34 F. Supp. 2d 1098, 1112 (S.D. Ind. 1998) ("The FLSA does not provide a federal remedy for any and all breaches of payment obligations under employment contracts. . . . The general 'remedial purpose' of the FLSA does not support its expansion to a mechanism for employees to enforce a broad range of employers' contractual obligations beyond the minimum wage and overtime requirements enacted by Congress.").

The inquiry is not academic: Discovery has demonstrated that many au pairs provide childcare for fewer—sometimes significantly fewer—than 45 hours per week.[6] This record evidence combined with discovery demonstrating a variation of stipend amounts received precludes liability even if Plaintiffs' claims challenging the DOS-

---

[6]  R. App. 12-13 - Fitzpatrick Dep. 82:17-83:1 (20 hours per week); R. App. 15 - Escalante Dep. 62:21-22 (25 hours per week); R. App. 19 - Wiggett Dep. 39:3-5 (25 hours per week); R. App. 23 - Lozano Dep. 100:11-23 (30 hours per week); R. App. 25 - Mhlanzi Dep. 62:7-25 (30 hours per week).

designated room and board credit are adopted.[7]  Plaintiffs cannot prove as a general

proposition that au pairs provided 45 hours of childcare each week.[8]  Hence, they are

not entitled to summary judgment with regard to their second requested holding.

## III.   PLAINTIFFS ARE NOT ENTITLED TO A RULING THAT CCI WAS OR IS THEIR JOINT EMPLOYER.

Plaintiffs' third requested holding is that "[s]ponsors are joint employers of their

au pairs."  Pl. S.J. Br. 6.  This uniquely fact-dependent—and sponsor/host family

dependent—determination is not suited for summary judgment.  Plaintiffs contend that

"there can be no material dispute" on several issues that are hotly disputed.[9]  And,

although a joint employment analysis is incredibly fact-dependent by sponsor and host

family, Plaintiffs make no directed attempt in their Motion to prove that CCI is a joint

employer of the au pairs whose visas it sponsors.  *See Carpenter v. DirecTV, LLC*, No.

14-cv-02854-MJW, 2017 WL 4225797, at *4 (D. Colo. May 16, 2017) (whether a

defendant is a joint employer under the FLSA "is a fact-intensive individualized inquiry").

---

[7]  Based on the current federal minimum wage of $7.25 (regardless of the room and board credit), there would be no liability for an au pair who received the $195.75 stipend and worked 27 hours or less per week.  So, too would there be no liability for an au pair who received $250 per week and worked less than 34 hours a week.

[8]  By way of example, Plaintiffs have included as an exhibit a host family application with a proposed weekly schedule of 20.45 hours.  *See* Pl. S.J. App. 2205 - CCI Application, ECF 886-27; *see also* Pl. S.J. App. 2166-2197 - CCI Contact Sheets, ECF 886-25-26 (au pairs and host families reporting as few as 20 hours worked per week).

[9]  Contrary to Plaintiffs' assertions, CCI does not "dictate[] to both au pairs and host families the level of au pair wages."  Pl. S.J. Br. 1.  It merely informs them of the DOS minimum stipend.  Defs. S.J. App. 144 - Jordan Decl. ¶ 21, ECF 861-2.  Nor does CCI "recruit[]" or perform initial screening of prospective au pairs or "assign[]" them to homes.  Pl. S.J. Br. 1.  A non-defendant entity handles recruitment and preliminary screening abroad (Defs. S.J. R. App. 535 – Jordan Dep. 37, ECF 862-19; Defs. S.J. R. App. 565 – Rannefors Dep. 242-43, ECF 862-19), and au pairs and host families choose their own matches (Defs. S.J. R. App. 543 – Jordan Dep. 181-84, ECF 862-19).

Rather, Plaintiffs focus on the sponsors as a group, making several conclusory statements about what sponsors in general do in order to comply with their regulatory obligations.  Pl. S.J. Br. 7-13.  Plaintiffs then seek to support those statements with a series of footnotes and record citations pertaining to several different sponsors – including the nine program sponsors who are not even the subject of this motion.

Plaintiffs cannot rely on other Sponsors' conduct to support a finding that CCI is a joint employer.  *See Leber v. Berkley Vacation Resorts, Inc.*, No. 2:08-CV-01752-PMP-PAL, 2009 WL 2252517, at *5-6, at *16-17 (D. Nev. July 27, 2009) ("The fact that all Defendants conduct business in the same industry and utilize similar compensation schemes is insufficient to establish joint employer status . . . Accordingly, Plaintiffs must allege facts which show they plausibly are entitled to relief from *each* Defendant as an employer or joint employer.") (emphasis added).  Of course, allegations will not suffice for summary judgment.  *See id.*; *Wise v. T-Man, LLC*, No. 1:14-CV-630, 2016 WL 3544715, at *5-6 (N.D. Ohio June 29, 2016) (denying summary judgment "request[ing] that the Court determine that *all* defendants are 'joint employers,' yet mak[ing] no argument regarding some defendants."); *cf. Sanchez v. Simply Right, Inc.*, No. 15-cv-00974-RM-MEH, 2017 WL 2222601, at *6 (D. Colo. May 22, 2017) (joint employment analysis evaluates the circumstances "relevant to a *particular* plaintiff," not the aggregate of all circumstances involving the putative joint employer and all plaintiffs) (emphasis added).  It logically follows that this Court must analyze whether CCI is a joint employer based only on CCI's actions and relationship with the au pairs asserting wage-and-hour claims.  Once the references to other sponsors are disregarded,  it is

obvious that CCI does not exert the degree of control necessary to be a joint employer.

Among the few allegations relating to CCI, most involve its regulatory obligations, *i.e.*, training (Pl. S.J. Br. 7-8) (22 C.F.R. §§ 62.31(f)-(g)); ensuring compliance with maximum hours and minimum stipend (Pl. S.J. Br. 7-10) (22 C.F.R. § 62.31(j, l)); ensuring compliance with DOS Regulations regarding continual monitoring of placements (Pl. S.J. Br. 9) (22 C.F.R. § 62.31(l)); ensuring that assigned tasks comply with DOS Regulations and visa requirements (Pl. S.J. Br. 11) (22 C.F.R. § 62.40(b)); and mediating disputes (Pl. S.J. Br. 10) (59 Fed. Reg. 64,296, 64,299).  Other allegations relate to responsibilities, not of CCI, but of an international affiliate for recruiting and screening (Pl. S.J. Br. 7-8) and securing health and accident insurance (*id.* 11).  The final two allegations relate to humanitarian efforts (*id.*) (making au pairs whole on "very rare occasions" when a host family refused to pay a stipend, (Pl. S.J. App. 641), or are hotly disputed by CCI (Pl. S.J. Br. 11) (terminating, other than as required by DOS, au pairs who become pregnant or get married) (*but see* App. 1-3 - Supp. Jordan Decl. ¶¶ 7-9).[10]  Noticeably absent are the traditional indicia of hiring, firing, determining compensation, scheduling, determining childcare assignments, and supervising performance.[11]

Regulatory Compliance:  As discussed extensively in Defendants' and CCI's

---

[10]  CCI does not exclude or remove married or pregnant au pairs as a matter of policy or practice.  Instead, DOS Regulations and visa requirements, as well as au pair and host family preferences, determine whether au pairs leave the program.  App. 1-3 - Supp. Jordan Decl. ¶¶ 6-9.

[11]  It is worth noting that DOL, looking at sponsors as a group, found an employment relationship between au pairs and host families but not between au pairs and sponsors. *See* Exchange Visitor Program, 60 Fed. Reg. 8547, 8550-51 (Feb. 15, 1995).

Motions for Summary Judgment, incorporated here, monitoring for compliance with regulations and performing government-mandated responsibilities does not give rise to joint employer liability.  *See, e.g., Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 148 (4th Cir. 2017); *Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004); *Ivanov v. Sunset Pools Mgmt.*, 567 F. Supp. 2d 189, 195 (D.D.C. 2008).

Plaintiffs completely ignore this body of case law.  Perhaps most notably, they do not even mention *Ivanov* – the only case in which a court has opined on whether a J-1 visa sponsor is a joint employer.[12]  An examination of the regulations for the two programs shows that au pair sponsors exert even less control over au pair visitors placed in American homes than SWT sponsors who place workers in American businesses.  *Compare* 22 C.F.R. §§ 62.31 and 62.32.[13]  Plaintiffs themselves cite to the Code of Federal Regulations for nearly every activity in which sponsors engage, thus

---

[12]  Although Magistrate Judge Tafoya discussed this case at the motion to dismiss stage, and noted that on the basis of Plaintiffs' allegations, au pair sponsors may exert greater control than summer work travel ("SWT") sponsors, the Court can no longer rely on Plaintiffs' unsubstantiated allegations.

[13]  For example, SWT sponsors "are solely responsible for adequately screening and making the final selection" of program participants, by "conduct[ing] and document[ing] interviews," verifying English language proficiency, and selecting applicants "who demonstrate their intention to participate in the cultural aspects" of the program.  22 C.F.R. § 62.32(d).  *Compare* 22 C.F.R. § 62.31(d)(3).  SWT sponsors must also "offer and record participation in an appropriate orientation."  22 C.F.R. §§ 62.10(c), 62.32(e).  *Compare* 22 C.F.R. § 62.31(f).  These sponsors are required to vet and select potential employers, and they are required to inform the employers of applicable minimum wage laws and monitor to make sure participants are receiving appropriate compensation "commensurate with those offered to their similarly situated U.S. counterparts."  22 C.F.R. §§ 62.32(g)-(i). *Compare* 22 C.F.R. §§ 62.31(j), (n)(3).  In addition, SWT sponsors must monitor any changes in job placements or requirements, ensure that housing offered by the employers is suitable, and ensure the health, safety, and welfare of participants.  22 C.F.R. § 62.32(o). *Compare* 22 C.F.R. §§ 62.31(e)(6), (l).

indicating that CCI and other sponsors are merely monitoring for regulatory compliance.

To the extent that Plaintiffs allege that CCI's activities exceed monitoring for regulatory compliance, CCI has presented evidence that squarely challenges this contention.  *See supra* pp. 11-12.  Likewise, if this Court rejects existing legal precedent that regulatory compliance does not give rise to a joint employment relationship, CCI is entitled to present evidence to a jury concerning the nature and extent of control exercised by CCI over the au pairs whom it sponsors.

Actual control: In addition, to prevail on the fact-dependent finding of joint employment, Plaintiffs must prove that CCI actually exerted control over the employment relationship, not merely that it could have done so. *See Coldwell v. RiteCorp Envtl. Prop. Sols.*, No. 16-cv-01998-NYW, 2017 WL 1737715, at *9 (D. Colo. May 4, 2017) (to find joint employment, plaintiff must show that defendant "not only had the authority to exercise control over employment decisions but *did* exercise this control") (emphasis in original) (quoting *Zachary v. Rescare Oklahoma, Inc.*, 471 F. Supp. 2d 1175, 1180 (N.D. Okla. 2006)).

Thus, Plaintiffs fall far short of showing, based on undisputed facts, that CCI exerts the requisite control to be considered a joint employer.  *See also Knitter v. Corvias Military Living, LLC,* 758 F.3d 1214 (10th Cir. 2014) (finding no joint employment because defendant could not terminate plaintiff, did not pay her directly, and did not regularly supervise plaintiff).

## IV.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT OF LIABILITY FOR THEIR WAGE AND HOUR CLAIMS.

Plaintiffs' fourth requested holding comes in three parts, some with sub-parts.

The topics encompassed are broad and mixed, and following the structure is difficult.

**A.      "The FLSA classes have established liability."  (Pl. S.J. Br. 13)**

**1.      Sufficient Uniformity in the Stipend (*Id.*)**

Plaintiffs argue that, for wage and hour liability, they "need not establish that every au pair was paid $195.75," but rather "must establish a class-wide practice reducing the wages of the class and inconsistent with FLSA or minimum wage." *Id.* Plaintiffs' contention that, "[f]or the purposes of summary judgment on liability" they need only prove a "class-wide practice" (Pl. S.J. Br. 13) is legally incorrect, and none of the authority that Plaintiffs cite supports this proposition.  Instead, all of Plaintiffs' authority concerns factual inferences to be drawn for purposes of certifying classes, not to impose liability through summary judgment.  *See In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1254-55 (10th Cir. 2014) (reviewing district court's class certification decisions); *Leyva v. Medline Indus.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (reviewing district court's certification denial and noting that the putative class needs to prove liability); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("[E]ven where there are individual variations in damages**,** the requirements of Rule 23(b)(3) are satisfied[14] if the plaintiffs can establish that the defendants conspired to interfere with

---

[14] Plaintiffs' selective quotation of this case best demonstrates why their argument is flawed.  *See* Pl. S.J. Br. 14 (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535, but omitting the explicit reference to Rule 23).  It is troubling, to say the least, that Plaintiffs saw fit to quote this case as authority that purportedly supports their motion for summary judgment under Rule 56, while choosing to omit the specific phrase referencing "Rule 23(b)(3)" as the relevant legal standard.

the free-market pricing structure.").[15]  The Supreme Court's dicta in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), which Plaintiffs also cite as support, best explains why all of Plaintiffs' class certification authority and evidence is inapposite:

> Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury. Reasonable minds may differ as to whether the average time [Plaintiffs' expert] calculated is probative as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury.

*Id.* at 1049.

Plaintiffs' attempt to transform preliminary and provisional inferences from class certification into a finding "that there is no genuine dispute as to any material fact" (Fed. R. Civ. P. 56(a)) has no basis in the law.  "This argument fails because it conflates the issue of [proof of harm] for purposes of establishing predominance under Rule 23 with the issue of [proving harm] on the merits."  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 229 (5th Cir. 2009).  Indeed, "the court's determination for class certification purposes may be revised (or wholly rejected) by the ultimate factfinder . . ." *Unger v. Amedisys Inc.*, 401 F.3d 316, 323 (5th Cir. 2005).[16]  Nor is that proposition at

---

[15] *See also Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 600 (N.D. Ill. 2015) ("Defendants' arguments that, in fact, most class members were not impacted by the alleged conspiracy may ultimately prove successful at trial or summary judgment."); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 345-47, 350 (E.D. Mich. 2001); Pl. S.J. App. 75, 77-78 (this Court's class certification order, which "[a]ccept[ed] Plaintiffs' substantive *allegations* as true" to dispute Defendants' evidence that there was no common impact) (emphasis added).

[16] *See also In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("[A] decision to certify a class is far from a conclusive judgment on the merits of the case . . ."); *Alaska Elec. Pension Fund*, 572 F.3d at 229 ("[Plaintiff] bore the burden of establishing loss causation by a preponderance of the evidence in order to obtain certification of its proposed class. This burden was independent of [Plaintiff's] obligation to establish reliance on the merits . . .").

all affected by the "evidence" that Plaintiffs cite.

First, Plaintiffs cite to the provisional findings of Magistrate Judge Tafoya in her Order denying Defendants' motion to exclude Dr. Kerr's class certification reports.  But the language of the Order itself demonstrates that this reliance is flawed:

> Maintaining this distinction between the evidentiary requirement of reliability and *the higher standard of whether the expert's conclusions are correct or sufficient to prove the merits* is indeed significant as it preserves the fact finding role of the jury.  A key component of the analysis here is that the expert testimony is offered to assist the court, not the jury, in making a decision concerning certification . . .

Pl. S.J. App. 49-50, ECF 886-1 (emphasis added, internal quotes and citations omitted).

Second, Plaintiffs cite to Dr. Kerr's "survey" of host families.  As discussed by Defendants' survey expert Dr. Lavrakas, ECF 603-43, incorporated here, Dr. Kerr attempted to create a census, from which he concluded that only 4,577 results were "useable."  Kerr Merits Rpt. Appx. C, ECF 831.  At most the census purports to prove that 4,120 au pairs were paid stipends of $195.75,[17] such that only 5.3% of the 91,201-member au pair class may have been paid $195.75.  Plaintiffs declined to conduct a valid statistical sample, nor did they control for bias from 94.6% of families who did not participate, and therefore this data has no probative value.  The census does not even address hours of childcare per week, a necessary component of the Wage and Hour Statutes.  *See supra* pt. II.  This aggregated data would not be relevant to an individual's claim, and therefore it cannot be used for Plaintiffs' claims.  *See Sanchez v. Simply Right, Inc.*, 2017 WL 2222601, at *6 ("[P]laintiffs do not even explain why the

---

[17]  989 families could not recall the exact amount paid, and over 27% of them reported paying approximately $250 or $300 per week.  Kerr Merits Rpt. tbl. 6, ECF 831.

evidence . . . should be considered representative in the sense that the evidence applies equally or, at least, approximately equally to each plaintiff."); *Torres v. Nation One Landscaping, Inc.*, No. 12 CV 9723, 2016 WL 7049048, at *8 (N.D. Ill. Dec. 5, 2016) (denying summary judgment where sample was not "statistically adequate").

Third, Plaintiffs cite CCI advertisements which merely state an undisputed fact, that all au pairs earn at least $195.75, the minimum required by law.  Pl. S.J. Br. 16. Lacking any other evidence, Plaintiffs use these statements in an attempt to disprove that many au pairs sponsored by CCI, including named plaintiff Sarah Carolina Azuela Rascon, received stipends greater than $195.75.  App. 7-10 - Rascon Dep. 137:6-138:5.  Plaintiffs also do not account for the undisputed evidence that CCI's internal policies, as well as documents distributed externally, make explicitly clear that au pairs can make more than the minimum stipend amount.  *See* Defs. S.J. App. 144 - Jordan Decl. ¶¶ 21-29, ECF 861-2.  Most importantly, Plaintiffs have not offered evidentiary proof that a single CCI host family believed that the stipend was fixed at $195.75.[18]

Fourth, Plaintiffs cite limited records in CCI's possession that may reflect hours of childcare and/or stipends paid by host families.  Pl. S.J. Br. 19 & n.34 (citing Pl. S.J. App. 2166-98, ECF 886-25-26).  Plaintiffs, however, ignore that nearly all of these records (as reported by au pairs and host families) reflect that au pairs often worked

---

[18] Plaintiffs have cited a declaration from a former CCI host mother, Eileen Boehne.  Pl. S.J. App. 1728-32, ECF 886-12.  In direct contradiction to her declaration, she testified that she did not recall whether a CCI representative told her that she was not allowed to pay more than the minimum.  Defs. S.J. App. 421 - Boehne Dep. 100:9-101:18, ECF 861-7.  The remainder of Plaintiffs' evidence concerning host families is inadmissible hearsay or double hearsay proffered by Plaintiffs themselves.

well below 45 hours and received stipends well above $195.75.[19]  Plaintiffs do not explain how those records square with their inferences needed for summary judgment.

Plaintiffs then resort to mischaracterizing CCI's filings in other litigation.  Pl. S.J. Br. 20.  Those documents also undercut Plaintiffs' claims.  *See* Pl. S.J. App. 3538, ECF 886-62 ("Au Pairs are participating in a cultural exchange, they are not Cultural Care employees as reflected in the Host Family Agreement . . ."); *Cultural Care, Inc. v. Office of the Att'y Gen. of Mass.*, No. 16-cv-11777-IT, 2017 WL 3272011, at *8 (D. Mass. Aug. 1, 2017) (referencing CCI allegations concerning the "minimum au pair compensation").

Finally, CCI cannot be judged as a matter of law by the conduct of other sponsors.  Pl. S.J. Br. 17-18.

**B.      Summary Judgment for FLSA Classes and Named Plaintiffs.**

In this odd amalgam of requests for rulings, Plaintiffs state that the FLSA Classes and named plaintiffs "assert four FLSA violations: (1) failure to pay them the minimum wage; (2) failure to pay them for their mandatory week-long training; (3) unlawful deductions of room and board from their wages; and (4) failure to pay overtime compensation after January 1, 2015."  Pl. S.J. Br. 20.  Factors (1) and (4) are addressed above.  Factors (2) and (3) are addressed here:

**1.      Training**

Plaintiffs' Motion as it concerns time spent in training fails as a matter of law, as explained in detail in Defendants' Summary Judgment Motion.  CCI incorporates, rather

---

[19] *See* Pl. S.J. App. 2168, ECF 886-25.  Plaintiffs neglected to include the monthly contact sheets reflecting weekly stipend payments of $250 and $300.  *See* Defs. S.J. R. App. 72-85 - CCI Contact Sheets, ECF 862-4.

than reciting, the entirety of the arguments but notes that, because training is required by DOS, it is not compensable under either the FLSA or New York law. *Bienkowski v. Northeastern Univ.*, 285 F.3d 138, 141 (1st Cir. 2002) (FLSA regulations do not require compensation "where the training is not continuing education relating to existing job duties, but instead a pre-condition for employment"); *Moreno v. Future Care Health Servs., Inc.*, No. 500569/13, 2015 WL 1969753, at *6 (N.Y. Sup. Ct. May 4, 2015) (childcare training required by NY Department of Health is not compensable).

### 2.    The Room and Board Credit

The federal minimum wage is the foundation upon which the DOS stipend is calculated. *See* Defs. S.J. App. 70-71 - 1997 Fact Sheet, ECF 861-1; Defs. S.J. App. 59 - Colvin Decl. ¶¶ 20-21, ECF 861-1.  The calculation since 2009 has been $7.25 X 45 – 40%, *i.e.*, federal minimum wage times the programmatic maximum of 45 hours minus a room and board credit of 40%.  DOS confirmed as recently as September 18, 2014 that: "$195.75 a week meets the FLSA minimum wage standards and accounts for 40% au pair room and board credit."  App. 4 - Sept. 18, 2014 DOS Email.  Moreover, the USIA and DOS have instructed sponsors since 1995 to inform host families that the credits are appropriate.  Defs. S.J. App. 144 - Jordan Decl. ¶ 21, ECF 861-2; Defs. S.J. App. 59 - Colvin Decl. ¶ 21, ECF 861-1; Defs. S.J. App. 70-75 – DOS/USIA Notices, ECF 861-1.  DOS in its annual audits of CCI has never suggested that informing host families of the stipend, including the room and board credit, was in any way improper. Defs. S.J. App. 144 - Jordan Decl. ¶¶ 10-11, ECF 861-2.  Similarly, DOL has initiated no enforcement actions against CCI or one of its host families, nor has it indicated that the

credit is a violation of law.  App. 1 - Supp. Jordan Decl. ¶¶ 4-5.  "While it may be possible for an entire industry to be in violation of the [FLSA] for a long time without the Labor Department noticing, the more plausible hypothesis is that the Department did not think the industry's practice was unlawful."  *Christopher v. Smithkline Beecham Corp.*, 567 U.S. 142, 158 (2012) (quotation marks and citation omitted).  DOS calculated this amount according to DOL regulations that explicitly allow these credits.  *See* 29 C.F.R. § 552.100(c); Defs. S.J. App. 70-75 – DOS/USIA Notices, ECF 861-1.

Rather than challenging the calculation or percentage of the credit, Plaintiffs instead posit that au pairs do not voluntarily accept room and board, such that no credit should be allowed.  *See* Pl. S.J. Br. at 4-5.  DOL's inaction suggests that it does not agree.[20]  Indeed, Plaintiffs' testimony has confirmed many times over that room and board is welcomed, not just voluntarily accepted.[21]  Finally, DOL has acknowledged that, if meals are offered as a condition to employment, as they are, acceptance of employment indicates voluntary acceptance of the meals.  *See* Defs. S.J. App. 1111 - Dec. 17, 2015 DOL Field Assistance Bulletin, ECF 861-17.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

---

[20]  *Contrast, e.g.,* 22 C.F.R. § 62.31(e)(6) (stating that au pairs must have a private bedroom); *with* 20 C.F.R. § 655.122(d)(1) ("The employer must provide housing at no cost to the H-2A workers . . .").

[21]  R. App. 7 - Pavot Dep. 24:4-20; R. App. 28-29 - Leon Dep. 33:21-34:11; R. App. 11 - Fitzpatrick Dep. 32:4-7; R. App. 22 - Lozano Dep. 59:10-23; R. App. 31 - Simpson Dep. 42:7-14; R. App. 17-18 - Wiggett Dep. 25:22-26:20; R. App. 33 - Sahin Dep. 52:4-14; R. App. 3-4 - Tayida Dep. 62:25-63:6.

Dated:  March 16, 2018                    Respectfully submitted,


s/ Diane R. Hazel
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane R. Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

**Attorneys for Defendant Cultural Care,
Inc. d/b/a Cultural Care Au Pair**

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on March 16, 2018, I have caused to be electronically filed the foregoing **Opposition of Defendant Cultural Care, Inc.to Plaintiffs' Motion for Partial Summary Judgment [ECF 915]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Lauren F. Louis (llouis@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Diane R. Hazel*