IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

       Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

       Defendants.

_____

**EXPERT AU PAIR'S RESPONSE IN OPPOSITION TO PLAINTIFF' MOTION FOR
SUMMARY JUDGMENT**

_____

A

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... B

TABLE OF AUTHORITIES .............................................................................................. C

INTRODUCTION .............................................................................................................1

ARGUMENT ....................................................................................................................2

    A.   PLAINTIFFS DID NOT PROVE THAT AU PAIRS ARE WORKERS RATHER THAN CULTURAL EXCHANGE VISITORS............................2

    B.   AU PAIRS ARE NOT ENTITLED TO BE PAID FOR 45 HOURS UNDER THE FLSA IF THEY WORKED FEWER HOURS ....................3

    C.   PLAINTIFFS DID NOT PROVE THAT EXPERT AUPAIR IS THE EMPLOYER OF AU PAIRS ..................................................................5

    D.   PLAINTIFFS DID NOT SHOW SUFFICIENT PROOF OF LIABILITY FOR TRAINING .....................................................................10

    E.   PLAINTIFFS HAVE NOT ESTABLISHED LIABILITY FOR THEIR WAGE AND HOUR CLAIMS................................................................11

CONCLUSION...............................................................................................................13

## TABLE OF AUTHORITIES

Cases

*Anderson v. Mt. Clemons Pottery Co.* 328 U.S. 680 (1946)..............................................3

*Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013) .......3

Fortner Enterprises v. United States Steel Corp,, 349 U.S. 495, 505 (1969)................12

*Freeman v. Total Sec. Mgmt. – Wisconsin LLC.* No.12-cv-461-WMC, 2013 WL
    4049542, at *7-10 (W.D. Wis, Aug. 2013.....................................................................10

Martinez v. Ford Midway Mall Inc., 59 So.3d 168 (Fla. App., 2011)...............................10

*Mckinney v. United Stor-All Centers LLC.*, 656 F. Supp.2d 114 (D.D.C. 2009) ..............9

*Moreau v. Air France* 356 F. 3d 942, 951 (9th Cir 2004).................................................7

*Salinas v. Commercial Interiors Inc.,* 848 F.3d 125, 148 (4th Cir. 2017).........................7

*Schumann v. Collier Anesthesia, P.A.* 803 F.3d 1199 (11th Cir., 2015). ......................10

*Walling v. v. Portland Terminal Co*, 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947) ..11

*White Motor Co. v. United States.* 372. U.S. 253, 259 (1963).......................................12

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 75 (2nd Cir.2007). .......................................7

Statutes

7 CCR § 1103-a ..........................................................................................................12

22 CFR § 62.31(j)(1).........................................................................................2, 3, 4, 9

29 C.F.R.§ 785.27 ..........................................................................................................8

C

## INTRODUCTION

Plaintiff's Motion for Partial Summary Judgment, [ECF No. 915], ("Motion") asks this Court to enter partial summary judgment on several disputed issues, without passing the evidentiary threshold required at this stage. Not only that most of the evidence presented in support of the Motion is not attributed to Expert AuPair[1], but also the evidence in the case points exactly to the opposite conclusion.

At the request of Plaintiffs, Expert AuPair produced over 60,000 pages of documents in this case and the evidence shows clearly that Expert AuPair's told its host families that they can pay their au pair's more than $195.75[2] without further interfering in the stipend-negotiation process. Also, the evidence shows that Expert AuPair does not recruit all of its au pairs[3], does not place, supervise or pay any of its au pairs, and cannot dismiss au pairs from their positions. It is the host families who have the power to decide which au pair to hire, who supervise the au pairs, and monitors the quality of the childcare services provided, and who can ultimately "fire" the au pairs. Similarly, it is the au pair who is required to select a host family (through a process called "matching") and who can terminate the relationship with their host family by entering a rematch, deciding to return home, or deciding to change immigration status.  As the evidence shows, both host families and au pairs routinely decide to terminate their "employment"

---

[1] The Motion mentions Cultural Care 58 times, APIA 26 times, and AuPairCare 23 times, while Expert AuPair is only mentioned 14 times.

[2] "For instance, Expert AuPair notes on its website that $195.75 per week is "the minimum required."" Second Amended Complaint [ECF No.395] at ¶ 173.

[3] The named plaintiff, Nicole Mapledoram, found her host family prior to contacting a sponsor and contacted Expert AuPair for the sole purpose of facilitating her visa. At the time of interviewing with her host family, Mapledoram was still "looking at different agencies" EAP R. App. 003-007 - Mapledoram Depo. Tr. pp. 51-55.

relationship, while there is no evidence that Expert AuPair ever "fired" an au pair. The information presented at the Motion to Dismiss stage was not confirmed by discovery, as Plaintiffs, so far, failed to prove their case.

As most of the evidence presented in the Motion is aimed at sponsors other than Expert AuPair[4], the Plaintiffs failed to show how actions taken by other sponsors had any impact on the au pairs sponsored by Expert AuPair.

Plaintiffs request that the Court enters an order based on the findings at the Motion to Dismiss stage, and ignoring the overwhelming evidence contradicting their arguments. For these reasons and the one below, the Plaintiff's Motion should be denied.

**ARGUMENT**

### A.  PLAINTIFFS DID NOT PROVE THAT AU PAIRS ARE WORKERS RATHER THAN CULTURAL EXCHANGE VISITORS

Plaintiffs are stating that the language of the governing regulation, 22 C.F.R. § 62.31(j)(1) deems that au pairs are covered by every provision of the Fair Labor Standard Act ("FLSA"). 29 U.S. Code Chapter 8. However, the plain language of the regulation is clear and required the United States Department of Labor ("DOL") to interpret the applicability of FLSA to the au pair program participants. The evidence shows that the DOL interpretation of the regulation pointed the Department ("DOS") to issue a notice stating that the minimum stipend for au pairs, corresponding to the

_____

[4] On discussing liability, Plaintiffs extensively cite the record in order to prove uniformity in stipend amount. (*See* Motion at pp. 16-19). Thought the entire argument, evidence collected from Expert AuPair is mentioned only once and refers only to a document that is an internal marketing report, showing the minimum stipend advertised by other agencies, and not to any documents or information presented by Expert AuPair to the public, the au pairs or the host families. *See.* Movant' APP 02399, ECF No. 886-37

minimum wage for the U.S. economy is $195.75.

The FLSA states that employers must pay the minimum wage, however, here, the language of the regulation qualifies the applicability of FLSA to au pairs, subjecting it to interpretation. The Plaintiffs did not prove that DOL interpreted the FLSA as applying in its totality to au pairs.

As evidence in this case showed, the au pairs are issued a J-1 visa and are considered exchange visitors for the duration of their stay in the United States. As the Plaintiffs failed to show that the FLSA applies in its entirety, despite the opposite interpretation of the DOL, the Court should deny entering the requested holding.

Furthermore, the Plaintiffs ask that the court holds that the au pairs are entitled to "minimum federal, state, or local wage [...]" *Motion at 3*, while not offering any argument in support of the fact that the minimum state or local wage applies. Their entire argument is based on the FLSA with no mention to state or local regulations. As the plaintiffs failed to address the applicability of state and local wage laws, the Court should deny entering the requested holding in its entirety.

**B.     AU PAIRS ARE NOT ENTITLED TO BE PAID FOR 45 HOURS UNDER THE FLSA IF THEY WORKED FEWER HOURS**

Plaintiffs combine two sets of legal rules that are distinct and should be treated as such. If FLSA applies, the au pairs are entitled to be compensated for the number of hours actually worked. See. *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013), *Anderson v. Mt. Clemons Pottery Co.* 328 U.S. 680 (1946).

Without any legal support, while citing 29 C.F.R. § 785.23, Plaintiffs are making an argument stating that 22 CFR § 62.31(j)(1) should be interpreted as an agreement

between the au pairs and host families for the purpose complying with FLSA. There is no factual or legal support for such interpretation. As required by the regulations, the au pairs should enter into a written agreement with their host families "detailing the au pair's obligation to provide child care." 22 CFR § 62.31(e)(5). In the case of Expert AuPair, such contract includes the daily number of hours the au pair is required to provide childcare[5]. This document represents an actual contract between the au pair and their host family. As such a contract exists and it is easily ascertainable, replacing it with a legal fiction is not appropriate.

Furthermore, the DOS regulations require that the au pair does not actually work more than 10 hours a day and 45 hours per week. 22 C.F.R § 62.31 (j)(2), (3). In order to comply with these requirements, the host family and au pairs are required to track the hours worked on a daily basis and further comply with the terms of their written agreement. Therefore, Plaintiffs err in their interpretation of the FLSA.

The FLSA provides a cause of action only to recover unpaid minimum wage or overtime pay for compensable time actually worked. There is no relief under FLSA for time not worked. *See* Lab. & Empl. §§ 3-413, 3-415, 3-420, 3-427. *See also Arenas v. Unified Sch. Dist. No. 223*, Case No.150-cv-09359-JWL-TJJ, 2016 WL 5122872 (D. KAn. Sept. 21, 2016). The contracts introduced in evidence and the witness testimony in this case show that the number of hours worked can be considerably less than 45. Mapledoram, for example, testified that, at times, she provided childcare for only 25 hours per week[6].

---

[5] See the Employment Agreement template.

[6] Mapledoram testified that: "Sometimes I worked half of my hours and received half of my pay. Sometimes I worked a quarter of my hours and got a quarter of my pay." EAP

The Plaintiffs suggest that the FLSA applies to the au pair program as interpreted by DOL. And the DOL interpretation regarding damages for overtime is clear: damages are based on the number of hours worked. Therefore, the Court should deny entering the requested holding.

### C.     PLAINTIFFS DID NOT PROVE THAT EXPERT AUPAIR IS THE EMPLOYER OF AU PAIRS

Under several headings, the Plaintiffs identify alleged behavior that, in their opinion, suggests joint employment. While most of this behavior is not attributable to Expert AuPair, the actions mentioned in the Motion do not point to joint employment. The Court has to assess the issue of joint employment based on the existing evidence attributable to each of the defendants. The Plaintiffs failed to present facts or evidence regarding Expert AuPair's role as a joint employer of au pairs.

For example, the Plaintiffs state that sponsors recruit, interview and hire au pairs for host families and cites behavior attributable to ten other sponsor agencies. Motion at p.7[7]. There is no proof whatsoever that Expert AuPair engages in this type of business. Indeed the Plaintiffs are pointing to recruiting and screening practices of few organizations and by a leap of faith conclude that the sponsors hire the au pairs. In Expert AuPair's case, the sponsor did not recruit Nicole Mapledoram ("Mapledoram"), the named plaintiff against Expert AuPair and class representative for the classes certified against Expert AuPair. In fact Mapledoram actually meet her host family long before contacting Expert AuPair for visa sponsorship. Both Mapledoram and her

---

R. App. pp. 3-7 - Mapledoram Depo. Tr. p. 51-54.

[7] The Motion cites Expert AuPair 30(b)(6). Tr.37:5-38:15 and interprets as a discussion about 11 organizations overseas recruiting for Expert AuPair. In reality the statement refers to organizations recruiting au pairs for the program, in order to be matched with host families.

overseas agency admit the fact that she indeed "matched" with a host family and negotiated her terms of employment with her host family before approaching Expert AuPair. Also Mapledoram found another host family in the U.S. without the help of Expert AuPair[8].

Au Pairs are afforded the opportunity to live with an American host family and participate directly in the home life of the host family. 22 C.F.R. §62.31(a). Expert AuPair does not own or control the host family's residence or the equipment used by au pair in performance of childcare services.

The Plaintiffs did not show any evidence that Expert AuPair dictates the au pairs' wages. On the contrary, the evidence shows that many au pairs sponsored by Expert Au Pair are paid varied amounts and always the au pair negotiates the amount with their host family. Mapledoram admits to deciding on the stipend, together with the host family, before contacting Expert AuPair. The amount of $195.75, which Expert AuPair clearly represented as a minimum, is an amount that was communicated by DOS. There is no evidence that Expert AuPair dictated the amount of pay or that Expert AuPair's monitoring went beyond making sure that the amount represents the minimum that an au pair receives on a weekly basis.

While citing depositions of various defendants as well as 22 C.F.R. § 62.31(j), the Plaintiffs conveniently use the words "monitor" and "supervise" interchangeably. Motion at p. 8. While the sponsors have an obligation to monitor the au pair's wellbeing by

---

[8] Mapledoram testified that she found her second host family through a friend and they contacted Expert AuPair together in order to process her visa documentation. "And we became friends because the au pairs are from New Zealand, and I'm from Australia. And Jodi is also from New Zealand, and so we're all just naturally friends." states Mapledoram about Jodi Kelloff, her host father's sister-in-law. *See* EAP R. App. 008 - Mapledoram Depo. Tr. p.251:12-15

providing twelve monthly contacts a year, they do not supervise the au pair, nor do they monitor the performance of the childcare duties. Even if the word "supervise" would be the right word, supervision of au pairs pursuant to 22 C.F.R. 62.31 is nothing else than supervision by the state. *See Godlewska v. HAD*, 916 F.Supp. 2d 246, 260 (E.D.N.Y. 2013). Monitoring for legal compliance, especially in the context of a J-1 does not constitute joint employment and it is not a factor to consider when analyzing a sponsor's joint employer status. *See Ivanov v. Sunset Pools Mgmt. Inc.* 567 F. Supp. 2d 189, 195 (D.D.C.2008). When addressing the issue of oversight and control, courts found that monitoring for compliance with legal requirements, safety concerns or quality control do not give rise to joint employment. *See Salinas v. Commercial Interiors Inc.,* 848 F.3d 125, 148 (4th Cir. 2017), *Moreau v. Air France* 356 F. 3d 942, 951 (9th Cir 2004), *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 75 (2nd Cir.2007).

As reflected by the standard contract provided by Expert AuPair, it is the host family alone who is responsible for setting the hours of work, the tasks to be performed, the monitoring of these tasks and the payment of stipend. The contract used by Expert AuPair's families and au pairs is a proof that the sponsor does not exert control over au pair's working conditions. Even the Plaintiffs recognize such fact by citing documents belonging to another 11 sponsors and not document belonging to Expert AuPair. Motion at p. 9[9]. Expert AuPair does nothing to interfere with the au pair's providing of childcare services. Such services are dependent of various factors like the number of children, the ages of children, the parents' schedules, etc. and are considered by host families when deciding on choosing an au pair. None of these factors are under the control of

---

[9] In Footnotes 15 and 16, The Plaintiffs only cite to the 30(b)(6) deposition of Expert AuPair while not citing to any document.

Expert AuPair.

Furthermore, the host family and the au pair often agree on different stipend amounts and a different number of work hours without Expert AuPair's approval or knowledge. For example, Mapledoram worked as less as 12 hours per week without even informing Expert AuPair[10].

In arguing that the sponsors are joint employers of au pairs, Plaintiffs state "Sponsors draft the contracts governing the relationship between the au pairs and their host families." While the Plaintiffs brief only cites to the contracts belonging to other ten sponsors, the evidence shows that Expert AuPair does not provide a drafted contract to the au pairs and host families. It rather provide a template allowing for the host family and the au pair to fill in the specifics that governs the relationship between them. While the template is provided for free, this is not different from an office supplies store providing blank forms for its customers and has no bearing on the joint employment status.

The Plaintiffs' use one instance where Expert AuPair used the host family's funds to issue a check to an au pair as a proof of joint employment. Nothing can be further from the truth. The sponsor does not have an obligation and does not pay au pairs for the childcare provided to host families. While the evidence is overwhelming that Expert AuPair wants the au pairs to be happy, the one-time payment does not constitute proof that a sponsor is obligated or has engaged in paying the au pairs.

As a designated sponsor, Expert AuPair has duties and responsibilities related to monitoring all au pair exchanges. 22 C.F.R. 62.31(l). For example, Expert Au Pair's

---

[10] "Q. And did you inform Expert AuPair about the change in the number of hours? A. I don't believe I did […]"EAP R. 009 - Mapledoram Depo. Tr. p. 265:14-16.

counselors are required to perform a monthly personal contact with each au pair and host family for which the counselor is responsible. (*Id.*). Such contact doe s not raise to the level of monitoring the au pair's activity or performance of childcare duties. In fact, Expert AuPair is not involved in day-to-day management or oversight of au pairs, does not conduct performance reviews and does not evaluate the au pair's childcare services. The contract provided by Expert AuPair to host families allow for negotiation between au pairs and host families both at the "matching" stage and afterwards. Also, the contract allows for the host family to decide the method of pay and the frequency of paying the stipend to the au pair[11].

As the overwhelming evidence shoes that Expert AuPair is not the Plaintiffs' employer, it cannot be held responsible for the FLSA alleged violations[12].

In applying the joint employment test to the relationship between Expert AuPair and the au pairs it sponsors, the test fails at every prong. The incontestable evidence shows that Expert AuPair does hire au pairs for the host families, it does not dictate au pair wages, it does not supervise or control the au pairs' schedules and working condition, it does not determine the rate and method of pay for au pairs; and does not maintain employment records. Furthermore, Expert AuPair is not the final arbiter of disputes between au pairs and host families regarding wages and hours and never terminated an au pair's program without the consent of the host family. Expert AuPair does not provide legal services and does not draft the contracts between the au pairs and their host families.

---

[11] *See See* EAP R. App. 0010-16 – Template contract between the au pair and the host family provided by Expert AuPair to its clients.

[12] *See Mckinney v. United Stor-All Centers LLC.*, 656 F. Supp.2d 114 (D.D.C. 2009)

For the reasons above the Court should deny entering the requested holding regarding joint employment status.

### D.   PLAINTIFFS DID NOT SHOW SUFFICIENT PROOF OF LIABILITY FOR TRAINING

Training time is not compensable under the FLSA if it occurs outside regular business hours, attendance is voluntary, is not directly related to employee's job and the employees do not perform any productive work during training. 29 C.F.R.§ 785.27

DOS Regulations require sponsor organizations to provide training to au pairs related to child development and child safety prior to their arrival to the host family's residence. 22 C.F.R. §62.31(g). As such, for the au pair candidates that cannot prove such knowledge, Expert AuPair, using specialized contractors like the St. Petersburg Fire Department, provides, free of charge, the required training.

The training is mandated by DOS, therefore the training is considered "voluntary" for the purpose of FLSA. *Kosakow v. New Rochelle Radiology Assocs. P.C.*, 272 F.3d 706, 721-722 (2nd Cir. 2001), *Freeman v. Total Sec. Mgmt. – Wisconsin LLC*. No.12-cv-461-WMC, 2013 WL 4049542, at *7-10 (W.D. Wis, Aug. 2013). It is undisputed that for the duration of the training au pairs perform no childcare duties.

The Plaintiffs erroneously cite *Martinez* to the proposition that MWA adopts the 59 So.3d 168, 173FLSA when in reality the case referred to the Florida Statutes and the constitutionality of FLSA, as interpreted and implemented by federal law. Martinez v. Ford Midway Mall Inc., 59 So.3d 168 (Fla. App., 2011).

While attending the training, the au pairs are not employees in accordance with Florida law. In *Schumann*, for example, the courts decided that a universal clinical-placement requirement necessary to obtain a generally applicable […] professional

certification" is not compensable under the FLSA. *Schumann v. Collier Anesthesia*, *P.A.* 803 F.3d 1199 (11th Cir., 2015). The Supreme Court reached the same conclusion in *Walling* deciding that "the Fair Labor Standards Act was not intended to penalize railroads for providing, free of charge, the same kind of instruction at a place and in a manner which would most greatly benefit the trainees. *Walling v. v. Portland Terminal Co*, 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947). The situation is identical in Expert AuPair's case. The training provided relates to "child safety and child development" and it is provided by independent contractors. The Plaintiffs do not attempt to convince the Court that the knowledge obtained by the au pairs regarding "child safety and child development" (including First Aid and CPR certification) could only be used while working for the benefit of Expert AuPair, nor do they attempt to argue that such knowledge would not benefit the trainees in any other jobs or in their private life. Therefore, the Court should deny entering the requested holding regarding liability for training.

### E.   PLAINTIFFS HAVE NOT ESTABLISHED LIABILITY FOR THEIR WAGE AND HOUR CLAIMS

In order for the Plaintiffs to support their liability model they state that every sponsor markets the program at $195.75. In order to prove that Expert AuPair does that, despite the fact that the website was clear, despite the fact that the contracts allow for the host family and the au pair to negotiate wages, the Plaintiffs use an internal document of Expert AuPair, that was never made available to the public or disclosed in any marketing campaign[13].

---

[13] The document was produced as part of the ESI provided by Expert AuPair as it existed on one if its computers. This is just an internal document. See APP2400 (Expert AuPair ("Sponsor Organizations Comparison').

Plaintiffs' request for establishing liability for their wage and hour claims is premature. For the purpose of establishing liability the Plaintiffs are assuming collusion, even if they don't move for summary judgment on the issue of collusion. (Motion at p. 13, n.1). This is not the state of the law. All the cases cited by Plaintiffs in their Motion are cases where, unlike here, liability not was determined prior to a determination of collusion or price fixing. This is not the case here, as the issue of collusion is an issue for the jury to decide. *See. White Motor Co. v. United States*. 372. U.S. 253, 259 (1963), *Fortner Enterprises v. United States Steel Corp*,, 349 U.S. 495, 505 (1969).

There is no basis for class-wide FLSA liability as there is no certified wage class under the FLSA or state law that includes all sponsors. The only class certified against all sponsors in this case is an antitrust class and the Plaintiffs are not moving for summary judgment on anti-trust issues (Motion at p. 13, n.1). The evidence shows that Expert AuPair clearly communicated to both au pairs and host families that $195.75 represents a minimum[14]. The Court could not find stipend uniformity where there is none, therefore it cannot find class-wide liability against Expert AuPair.

Regarding the Colorado class, au pairs are not subject to Colorado Minimum Wage and Overtime. Colorado Minimum Wage Orders specifically exempt "domestic employees" from all provisions of the Minimum Wage Order. *See* 7 CCR § 1103-a. While the Plaintiffs focus on their Motion in trying to refute the plain language of the Order, such arguments have no merit. There is no legal or factual inference to support the Plaintiff's position. Therefore this Court should deny entering Plaintiffs' requested holding.

---

[14] The Plaintiffs cite in their Motion business practices attributable to other defendants, but not to Expert AuPair. (Motion at p. 17, n.25).

**CONCLUSION**

For the reasons set forth herein, the Court should deny Plaintiffs' Motion for

Partial Summary Judgment on all of Plaintiffs' claims.

Dated: March 16, 2018

Respectfully submitted,

s/Bogdan Enica

Bogdan Enica, Esq.
111 Second Avenue NE, Suite 900
St Petersburg, FL 33701
Phone: 727-388-3472
bogdane@hotmail.com
EXPERT GROUP INTERNATIONAL INC.
D/B/A EXPERT AUPAIR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of March, 2018, I have caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/Bogdan Enica

Bogdan Enica, Esq.