THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

---

**MOTION TO EXCLUDE THE SUMMARY JUDGMENT
TESTIMONY OF STANLEY COLVIN, ESQ.**

---

**CERTIFICATE OF CONFERRAL PURSUANT TO D.C. COLO.LCivR. 7.1(A)**

    Pursuant to D.C. Colo.LCivR. 7.1(a), Plaintiffs have conferred with counsel for the Defendants.  On the morning of March 16, 2018, Plaintiffs e-mailed Defendants' counsel stating Plaintiffs' understanding that Defendants would oppose the relief requested herein and asking any Defendant who did not oppose the motion to identify themselves.  Defendants Cultural Care, InterExchange, AIFS, and Expert AuPair explicitly stated their opposition, and no Defendant indicated that they would not oppose.

**PRELIMINARY STATEMENT**

    Defendants paid Stanley Colvin, who claims to be a fact witness, $375 per hour in exchange for a declaration opining about the meaning of au pair program regulations and their application to the facts of this case.  In their summary judgment motion

1

Defendants offer the Court an affidavit from Mr. Colvin that is little more than testimony concerning legal principles and interpretation.  Mr. Colvin explains the intent of Congress and the State Department, proffers how the Court should apply the legislation and regulations at issue, discusses the meaning and legal effect of State Department notices and fact sheets, and purports to rebut Plaintiffs' factual allegations.  He bases his legal opinions on his time as an attorney at the State Department working with the au pair program, where he was viewed as "very helpful" to the Defendants.  Mr. Colvin's legal opinions are inadmissible because they intrude on the Court's exclusive province to interpret the law.  There is no such thing as fact or expert testimony on ultimate questions of law.

Since leaving the State Department Mr. Colvin has also represented one of the Defendants in a different case, and has even offered legal advice to the Defendants in this case.  In effect he functions as Defendants' lawyer, expert, consultant, and character witness, all at once.  To the extent that Mr. Colvin is as he claims to be, *i.e.*, a fact witness, his testimony is inadmissible because Mr. Colvin is hopelessly conflicted and his testimony was purchased.

## **STATEMENT OF FACTS**

Stanley Colvin is an attorney who operates a consulting firm, Colvin Consulting, based out of a suite in the Watergate complex in Washington, D.C.  Exs. 1, 4.[1]  From 1990 to 2015, Mr. Colvin was employed in various roles within the United States Information Agency ("USIA") and later the Department of State ("DOS").  Ex. 1 (Colvin

---

[1] "Ex." refers to the exhibits to the Declaration of Dawn L. Smalls submitted herewith.  "Tr." refers to the transcript of the deposition of Stanley S. Colvin, dated July 25, 2017, the entirety of which is included as Exhibit 3 to the Smalls Declaration.

Decl. ¶¶ 4-7).  Outside observers have described Mr. Colvin's tenure overseeing DOS exchange visitor programs as a "visa mill," with "minimal oversight," operating mainly to enable private sponsors to collect fees.  *See* Ex. 7.  The Government Accountability Office also issued a report to Congress during Colvin's tenure about the "need[] to improve oversight" of these programs.  Ex. 6.  After this lawsuit was filed, Defendants boasted that Mr. Colvin had been "very helpful" in their past "pursuits," and he has continued to be as Defendants crafted their response to this litigation.  *See* Ex. 11 (email among and between Colvin and some Defendants).[2]

In or about August 2016, Defendants executed a "Consultant Agreement" with "Stanley Colvin, Esq." of "Colvin Consulting."  Ex. 4 at 3.  Defendants paid him a $10,000 retainer up front, and agreed to pay him at a rate of $375 per hour, "[i]n consideration of" their retention of Mr. Colvin "for consulting services in connection with" this litigation.  *Id.* at 1.  The scope of his assignment included "investigation, document review, studies and research so as to be able to consult with" Defendants, and to "report his facts, conclusions and findings", including a "written report", if requested by Defendants.  *Id.*  Although Mr. Colvin claims he "never g[ave] a written report," he admitted that the Declaration is "encompassed" by the Agreement.  *See* Tr. 106:2-11.[3]

---

[2]   In this email dated January 11, 2016, Mr. Colvin shared his views with Bill Gustafson (executive with EurAuPair) on how the Defendants should respond to this lawsuit: "The most compelling argument is federal preemption and that as a U.S. wide program federal minimum wage should apply."  Ex. 11.  Mr. Colvin's advice was shared with William Gertz, CEO of Defendant AIFS, who then shared it with Defendants' trade association, the Alliance for International Exchange.  *Id.*

[3]   Eight attorneys representing a subset of the Defendants signed the Consultant Agreement.  Ex. 4 at 3-7.  Invoices covering 2016 and 2017 are attached, showing a 5.25-hour charge ($1,968.75) for "Prepare Declaration" dated June 15, 2017, the same day that Mr. Colvin executed the Declaration he provided in this litigation.  *Compare* Ex. 4 at 10, *with* Ex. 1 at 12.

*Colvin's Declaration*

On June 20, 2017, counsel for defendant Cultural Care emailed the "Declaration of Stanley Colvin" to Plaintiffs' counsel. Ex. 2. The ten-page Declaration contains a dozen footnotes replete with legal citations, as well as three exhibits, comprised of outdated fact sheets and notices about the au pair program. *See* Ex. 1.[4] The first seven paragraphs contain a description of Mr. Colvin's assignment, his billing rate, and his background and credentials. *Id.* ¶¶1-7. In paragraphs eight through twenty-four, Mr. Colvin provides his own narrative of the history of the au pair program, complete with legal citations. *Id.* ¶¶8-24.

Mr. Colvin claims that his Declaration is a factual report, rather than a legal opinion or an expert report.[5] Presumably for that reason, the Declaration does not contain the disclosures that would be required were Mr. Colvin to be offered as an expert witness. *See* Fed. R. Civ. P. 26(a)(2)(B). For example, it contains no list of his prior testimony, all of the facts or data upon which he relies, or a complete list of his relevant qualifications, including any publications.

The "facts" offered by Mr. Colvin, however, are nothing of the sort. Paragraphs 8-19 of his declaration are little more than legislative history with Mr. Colvin's personal spin on the lawmakers' intentions. *See, e.g.*, ¶ 9 ("In 1988 Congress directed the USIA to continue the pilot program for an additional two years in its current form. Importantly,

---

[4] Indeed, the Court addressed Defendants' arguments about at least one of these documents: "the Sponsors have cited no legal authority for the notion that the conduct of an agency like the DOS can somehow trump the plain language of a regulation. Regardless, these Notices in no way support Defendants' theory that an entirely separate, DOS regime governs *au pair* wages." ECF No. 258 at 24.

[5] He explained that his "role is that of a fact witness . . . to supply, in a[n] organized fashion, the context under which the Au Pair Program grew and -- from what it was to what it is." Tr. 50:21-51:5.

Congress specifically noted that the Au Pair Program was 'in keeping with the goals and directives of the Fulbright-Hayes [sic] Act' and prohibited the USIA from altering the Au Pair Program in any respect."). Mr. Colvin then goes on to analyze Plaintiffs' Class Certification Motion and provide his opinion of the merits of the allegations contained therein. *See, e.g.*, Colvin Decl. ¶¶ 27 ("The Class Certification Motion states on Page 4 that 'each and every defendant has agreed that all standard au pairs should be paid $195.75 per week.' That statement is erroneous and not supported by the unambiguous regulations governing the relationship between host families and the au pair participants whom they host.'"). In this manner, Mr. Colvin purports to provide factual evidence about the "purpose" of certain regulations and their proper interpretation. *See id.* ¶¶ 18-10, 21. He also purports to know as a fact that Congress was "satisfied" with a particular view of the purpose of the *au pair* program when it enacted a statute. *Id.* ¶ 22. In sum, his declaration simply reasserts Defendants' legal theories, many of which have already been rejected by the Court.

Mr. Colvin is not the Department of State. Mr. Colvin is not Congress. And, Mr. Colvin is not the Court. He has no role to play in the legal interpretation of legislative history, statutes, and regulations, and he certainly cannot cloak his legal opinions as "facts" simply because he once worked in a non-policy making role for a government agency.

### Colvin's Deposition

Plaintiffs subpoenaed Mr. Colvin for a deposition on July 25, 2017. Mr. Colvin also produced documents, including a redacted letter he wrote to the New York Department of Labor ("NYDOL") in his capacity as an attorney for one of the Defendants

5

in this action, in a different case. Ex. 5. In that letter, he requested that the NYDOL "withdraw [its] finding of any underpayment of wages due" against the sponsor, because the hosts had "fully complied with" au pair program regulations, including by paying the au pair $195.75 per week. *Id.* Mr. Colvin claimed that he redacted portions identifying the client (also a Defendant in this lawsuit) based on attorney client privilege. *See* Tr. 109-120. But after the deposition Mr. Colvin produced an un-redacted version identifying EurAuPair as the client. Ex. 9.

While under oath Mr. Colvin opined on a variety of legal issues related to the au pair program based on his review of the program's regulations. Among these legal views were some with which Plaintiffs agree. For example:

- Sponsors cannot evade liability for the action of third party agents (Tr. 129:2-13) *But see* Cultural Care's Motion for Summary Judgment, ECF No. 879 at 5, 15-16 (arguing that Cultural Care should not be held liable for its agents' actions);

- Sponsors must provide accurate advertising (Tr. 133:9-22).

But regardless of whether or not Mr. Colvin was right about some of his legal opinions, Mr. Colvin's testimony shows why his legal opinions are inadmissible. Far from offering some percipient view of events, as fact witnesses are supposed to do, Mr. Colvin's testimony is based on his purported expertise on the legal meaning of exchange visa regulations:

> **Q.** In terms of the qualifications and your experience you offer to people as – as a consultant –
> **A.** Yes.
> **Q.** -- would you say to people or is it part of your experience that you are an expert on au pair regulations --
> **A.** I --
> **MS. LUKEY**: Objection.
> **BY MS. SMALLS**:

> **Q.** -- relations -- an expert on the regulations that relate to the Au Pair Program?
> **MS. LUKEY**: Objection. He can't declare himself to be an expert. That's up to the Court. I mean, what do you mean, is he an expert? That is an ambiguous phrase.
> **THE WITNESS**: In -- in my --
> **MS. SMALLS**: It's not ambiguous, but --
> **MS. LUKEY**: Form and foundation.
> **THE WITNESS**: Yes, ma'am.

Tr. 22:17-23:16.  Indeed, while insisting that he was testifying not as an expert but as a "fact witness," *see* Tr. 17:13-15; 21:20-22:4; 22:9-15, Mr. Colvin described his role as providing "context" by directing the parties to legal authorities:

> **Q**. Okay. And are you providing context in that statement in Paragraph 9?
> **A.** I'm reciting … what the law is.
> **Q.** Okay. Can you read Paragraph 10?
> **A.** Paragraph 10 -- when I say I'm providing what the law is, I'm referencing specifically the statute that makes that statement.
> **Q.** Um-hum.

Tr. 55:12-21.

> **Q...**what is the basis of you making the statement that Congress, in 1997, was satisfied that the program was a cultural exchange program in which participants were being fairly and lawfully compensated?
> **A.** The series of legislation that went on from 1986 to 1997; the Congress' direction to expand the program; Congress' direction to regulate the program; Congress' direction to report -- provide them a report on the program as a condition precedent to permanent authorization.

Tr. 89:4-16.  Finally, Mr. Colvin acknowledged that other government employees involved in drafting legislation, such as "Congressional staffers", could also offer the kind of "fact" testimony he was paid to offer here.  Tr. 26:18-27:2.

Again, it is the Court's role to say what the law is and to determine the legal import of legislative history.  Mr. Colvin has no such role under Article III.

7

## LEGAL STANDARD

"In the Tenth Circuit, evidence considered by the court in ruling on a motion for summary judgment must be evidence that is admissible at trial." *Daviscourt v. Columbia State Bank*, 2007 WL 2889705, at *6 (D. Colo. 2007) (citing *Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1541 (10th Cir. 1995)). The Federal Rules of Evidence apply, and courts should not "relax the[ir] content or substance" at summary judgment. *Vitamins Online, Inc. v. Heartwise, Inc.*, 2016 WL 538458, at *2 (D. Utah 2016).

## ARGUMENT

### I.   If Mr. Colvin Is Being Offered As An Expert Witness, His Testimony Is Inadmissible Legal Opinion.

It is black letter law that attorney-witnesses cannot offer opinions about the ultimate issues of law that are in dispute. *See Specht v. Jensen*, 853 F.2d 805, 806 (10th Cir. 1988) ("The question considered is whether Fed. R. Evid. 702 will permit an attorney…to state his views of the law which governs the verdict and opine whether defendants' conduct violated that law. We conclude the testimony was beyond the scope of the rule and thus inadmissible."). "In no instance can a witness be permitted to define the law of the case." *Id.* at 810; *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) (witness "may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts"). As discussed above, Mr. Colvin's testimony is replete with explanations of the law, and how it applies in this case.

Defendants cite Mr. Colvin's Declaration as support for their position on several disputed legal issues including: that "the DOS never withdrew the 2007 Notice"; that it "still accurately reflects the administering agencies' view"; and that "the minimum

8

stipend is calculated by applying a particular federal formula to the federal minimum wage." ECF No. 860 at 31-32 (citing Colvin).  Defendant AuPairCare also cites his testimony for the proposition that "[s]ince the inception of the au pair program," the USIA and DOS issued statements tying the au pair stipend to the federal minimum wage (as opposed to state and local wages laws, as Plaintiffs argue).  ECF No. 871 at 3 (citing Colvin).  This is improper.  There can be no doubt that under *Specht*, Mr. Colvin's testimony must be excluded.  *Specht*, 853 F.2d at 808 ("There is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness.").

Defendants' attempt to sidestep *Specht* and FRE 702 by labelling Mr. Colvin a "fact witness" does not change the analysis.  *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) (parties cannot "circumvent Rule 702 by offering expert testimony as lay opinion"); *Dowdy v. Coleman Company, Inc.*, 2012 WL 12888581, at *3 (D. Utah 2012) (litigants "are prohibited from offering expert testimony cloaked as fact witness testimony").  Just as with expert witnesses, "lay [fact] witnesses. . . are [also] not permitted to give opinions as to what the law is." *United States v. Kingston*, 971 F.2d 481, 486 (10th Cir. 1992).  Accordingly, it would be error to admit any of his testimony into the Court's review of the summary judgment record.  It is solely the Court's constitutional mandate to "say what the law is."  *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803).

## II. If Mr. Colvin Is Being Offered As a Fact Witness, His Testimony Is Inadmissible Because Defendants Purchased It.

Even if the Court can find an issue on which Mr. Colvin could properly offer percipient evidence, as he claims to do, the fact that Mr. Colvin was paid in exchange

9

for his testimony renders it inadmissible.  "[C]ontracts to pay fact witnesses are void as violative of public policy." *United States v. Singleton,* 144 F.3d 1343, 1347 (10th Cir.1998) *vacated on other grounds,* 165 F.3d 1297 (10th Cir. 1999).  This policy is "expressed in the majority of states in both the law of contracts and in ethical rules." *Id.* Colorado's Rules of Professional Conduct provide that a lawyer shall not "offer an inducement to a witness that is prohibited by law."  Rule 3.4(b).  Comment [3] to this Rule states that while "it is not improper to pay a witness' expenses," "it is improper to pay an occurrence witness any fee for testifying."  Further, under Colorado law, paid fact witness testimony may be excluded.  *Murray v. Just In Case Business Lighthouse, LLC*, 374 P.3d 443, 452 (Colo. 2016).  The same is true under Federal law.  *See, e.g., Rocheux Intern. of New Jersey v. U.S. Merchants Financial Group, Inc.*, 2009 WL 3246837, at *4 (D.N.J. 2009); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1526–27 (S.D. Fla. 1994).  This rule comports with the common sense intuition that purchased fact testimony "leans toward the procurement of perjury; toward the raising up of a class of witnesses who, for a sufficient consideration, will give testimony that shall win or lose the lawsuit, toward the perversion of justice; and toward corruption in our courts."  *Hamilton v. General Motors Corp.,* 490 F .2d 223, 228 (7th Cir. 1973).

There can be no doubt that Mr. Colvin was paid in exchange for his testimony. The entire basis of his testimony is memorialized in a contract that makes issuance of his Declaration contingent on hourly payments from the Defendants.[6]  This bargained-for exchange is a quintessential example of paid testimony that must be excluded.

---

[6] *See* Tr. 106:6-8 ("Q. Is the declaration that you prepared encompassed by this consulting agreement? A. I believe it is, yes ma'am.").

### III. Admission of Mr. Colvin's Testimony Would Be Highly Prejudicial.

Federal Rule of Evidence 403 allows a court to exclude prejudicial testimony. Fed. R. Evid. 403. Mr. Colvin is at once a lawyer for at least one Defendant, see Ex. 9, and a former government attorney, each of which may give rise to certain privilege duties. His selectively invokes these privileges, such that he is able to testify against Plaintiffs by opining on certain aspects of his government career, but somehow unable to testify about others that might be helpful to Plaintiffs, citing attorney-client privilege and an unknown "proprietary governmental information" privilege. Tr. 40:5-18; 45:15-46:18. Defendants, in other words, use Mr. Colvin's experience as both a sword and a shield: allowing Mr. Colvin to testify on the aspects of his State Department tenure that would help their case, but invoking an amorphous privilege on others that might undermine it. This is highly prejudicial.

Nor is Mr. Colvin's testimony probative of anything. Even putting aside that he invades the Court's exclusive province, Mr. Colvin's opinions about State Department policy are contrary to what the State Department itself has said.[7] Although the State

---

[7] In February 2016, Defendants refused to engage in a discussion with senior State Department officials with responsibility for the au pair program "related to the stipend other than a prospective conversation." See Ex 12 at 2 ("Our members have not requested any clarification regarding the history of the stipend as the Department of State has made the appropriate implementation of the stipend policy clear through its directives, its own website, as well as ongoing program audits."). The State Department responded by deferring the meeting due to Defendants' position that "any discussion specifically related to the au pair stipend other than a prospective conversation will not be possible with the Alliance's members at this time because of ongoing litigation." Ex. 12 at 1. In its correspondence, the Department went on to say: "Regarding your comments on the 'stipend policy,' we want to make sure that there is no misunderstanding about the Department's views on this question. Thus, we refer you and the sponsors to the e-mail the Department sent to sponsors on March 13, 2015 (attached again to this message) on au pair wages, and to the Department's regulation on au pair wages and the Fair Labor Standards Act (FLSA). The March email reminded

Department has declined to weigh in on this lawsuit, *see* Ex. 10, from the only indications that are in the record, its position is not consistent with Mr. Colvin's. *See* Ex. 15 (Washington Post article quoting State Department spokesman).[8] Indeed, Defendants have gone to extraordinary lengths to block the State Department from offering guidance that would confirm what this lawsuit has made clear – that they have been operating in violation of the wage laws and au pairs regulations for years.[9] Although the record reflects that Mr. Colvin was involved with the au pair program in his various government roles, he is one of many, and was by no means the authoritative voice of the State Department. Plaintiffs have no way to know the inner workings of the State Department. Nor need they. The regulations speak for themselves.[10]

---

sponsors that their obligations with respect to au pair wages are set forth at 22 CFR 62.31(j)(1) and that, in addition to meeting those regulatory requirements for au pair wages, they must operate their au pair programs in conformance with all other applicable federal, state, and local laws." *Id.*

[8] It is also highly inappropriate for a former government employee to opine about the position of the Department after their time of service. Mr. Colvin admitted as much, citing a longstanding privilege that Government employees not speak about the Department when they leave service. *See* Tr. 46:14-18; *cf.* 18 U.S.C. § 207 (making it a criminal offense for certain former government employees to participate in legal matters in which they also "participated personally and substantially" while employed by the government).

[9] Defendants hired a phalanx of lobbyists to delete or soften a requirement included in an omnibus funding bill that would have required a written report within 45 days "on whether State and local minimum wage levels apply to the Au Pair Program, and if so, the Department of State guidelines for applying such wage levels." Ex. 13 at 2. The Alliance for International Exchange, working with lobbyists for Defendants Cultural Care and AIFS, were successful in getting the report to be made orally rather than in writing, where it could be used in this litigation. *See* Ex. 14 at 3.

[10] Nor are the Department's inner workings, or Mr. Colvin's musings about them, relevant. The Court's task is to review properly enacted regulations and statutes, which does not take into account the views of the individual employees who helped draft them. If that were the case, there would be endless discovery in cases like this, from Congressional staffers to agency legal advisors, all of whom had some involvement in the process that created these statutes and regulations.

Accordingly, exclusion is also appropriate under FRE 403. Mr. Colvin's testimony is biased and incomplete (making it prejudicial), and Plaintiffs cannot effectively cross-examine him given his multiple allegiances, and the privileges that may come with them (heightening the prejudice). At the same time, it is probative of nothing.

## CONCLUSION

For all the reasons stated above, the Court should exclude Mr. Colvin's Declaration, and all references to it, from the summary judgment record.

Dated: March 16, 2018

                                           */s/* Dawn L. Smalls
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

13

Sigrid S. McCawley
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Tel: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*