# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

    Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

    Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT CULTURAL CARE, INC.'S MOTION FOR CLARIFICATION OF TOPICS THAT REMAIN OPEN AND APPROPRIATE FOR DEPOSITIONS OF FLSA OPT-IN PLAINTIFFS [ECF No. 924]**

---

## **INTRODUCTION**

In the course of FLSA opt-in depositions, Cultural Care's attorneys have inquired into everything from *au pairs*' love lives to details about why a child's potty training came late. Cultural Care has demanded names and addresses of *au pairs* current and pre-*au pair* employers' and other irrelevant information about their lives—which makes the already uncomfortable young deponents fear retaliation. The meandering depositions are wasteful. The only issues relevant to the FLSA claims here are the number of hours worked; the wage paid; and joint employer issues.

Plaintiffs raised these, and other issues, on February 13, 2018. Rodriguez Decl. Ex. A (February 13, 2018 email from S. Rodriguez to Defendants). On February 19, counsel for all FLSA Defendants and Plaintiffs conferred on a range of issues including the number of depositions and the scope of questioning. Plaintiffs and the FLSA Defendants other than Cultural Care have thus far managed their opt-in deposition disagreements, without the need for motion practice.

Cultural Care indicated on the February 19 call that it wanted to file its own motion on some of the same issues Plaintiffs identified. It offered no reason why the issues could not be addressed in one motion. Cultural Care on March 5 filed the present submission (ECF No. 924) without further notice to Plaintiffs.

Cultural Care's best-defense-is-offense submission omits a significant portion of the disputes concerning FLSA opt-in depositions. As required by Local Civil Rule 7.1(d), Plaintiffs will move contemporaneously by separate motion to resolve additional issues and avoid further motion practice. The following points in opposition briefly rebut the numbered paragraphs in which Cultural Care makes largely citation-free assertions about relevance. Plaintiffs respectfully refer to their contemporaneous cross motion for a fuller exposition of the facts and issues.[1]

---

[1] Cultural Care provides no legal authority on which it bases its "motion" or the

**POINTS IN OPPOSITION**

A.   **Preemption Is An Issue Of Law Already Decided**

Responding to: ¶ 10, fn.2

Cultural Care's preemption argument has already been decided against it.  MTD Order, ECF No. 258, at 28-29 ("Although Defendants have slightly recast their arguments from those that appeared before Judge Tafoya [ . . . ] the Court nevertheless agrees that Judge Tafoya properly decided that state wage laws are not preempted.").  That holding established the law of the case, and there is no reason to relitigate or reconsider it.  *Arizona v. California*, 460 U.S. 605, 618 (1983).

Cultural Care therefore cannot justify discovery on any "preemption" argument because it no longer has a preemption defense.  *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) ("it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken"); *Millennium Marketing Group, Ltd. v. Simonton Bldg. Products, Inc.*, No. 08-2198-JWL-DJW, 2009 WL 2407723, at *7 (D. Kan., Aug. 4, 2009) ("courts have repeatedly held that it is proper to deny discovery of information that is relevant only to claims or defenses that have been dismissed"); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 634 (2011) ("pre-emption is an affirmative defense").

B.   ***Au Pairs'*** **Beliefs and Experiences Have Nothing To Do With Whether Congress Intended Preemption**

Responding to: ¶¶ 8-10.

The Motion to Dismiss Order addressed Cultural Care's legal arguments about preemption of the state claims at issue.  MTD Order, ECF No. 258, at 28-29.  The Order

---

relief it seeks – contrary to the Federal and Local Rules.  *See* Fed. R. Civ. P. 7(b); D.C. Colo.LCivR 7.1(d); CMA Civ. Practice Standard 7.1A(e) (discussing "non-compliant" motions).  Plaintiffs construe the "motion" as one for relief under Federal Rules of Civil Procedure 26(c) and 30, which govern discovery protective orders and oral depositions.

reached a legal holding about how two statutes interact, not what a particular *au pair* might believe or experience.  *See id.*  No discovery can change that reasoning or result.  *See United States v. Supreme Court of New Mexico*, 839 F.3d 888, 904-906 (10th Cir. 2016) (affirming denial of motion for discovery on preemption claim because the "facts, even if established, would not have affected the district court's central legal conclusion"); *see also Garley v. Sandia Corp.*, 236 F.3d 1200, 1206 (10th Cir. 2001) ("Whether state law is preempted by federal law is a conclusion of law which we [ . . . ] review de novo").  Cultural Care's argument that *au pair* depositions could be relevant to preemption goes wrong in at least three ways.

*First*, Cultural Care devises a nonsensical legal test.  Cultural Care presumes that there is a "cultural exchange"-"work program" dichotomy, and argues that the parties must somehow prove that the program is "predominantly" one or the other to answer the preemption question.  *See* Mot. at ¶ 8.  Congress and the regulations made clear there is no such dichotomy.  MTD Order, ECF No. 258, at 28-29; 22 C.F.R. § 62.9(c); 22 C.F.R. §§ 62.11(a), 62.31(j)(1).  The *au pair* program expressly has aspects of both.  Identifying a single or predominant "purpose" is futile,[2] and Cultural Care cites no law for its reductivist approach.

*Second*, Cultural Care confuses *au pairs* with legislators.  "Facts" about what the legislature's members and committees said or wrote may assist in statutory interpretation under some circumstances.  *Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227, 1228 (10th Cir. 2016) (some statutes require "comb[ing] the annals of legislative history to divine Congress' intent").  But *au pairs* have nothing to say about what Congress intended when enacting a law, and *au pairs*' experiences and motivations having nothing to do with the Court's legal analysis of Congress's intent.

---

[2] "Legislation is compromise and it's rare to find a statute that pursues a single purpose unrelentingly." *United States v. Rentz*, 777 F.3d 1105, 1113 (10th Cir. 2015) (Gorsuch, J.).

4

*Third*, Cultural Care mistakes the "legislative facts" that may be used in statutory interpretation with the facts that decide a particular case ("adjudicative" or "juridical" facts). *See* FRE 201, Adv. Comm. Note (a). Legislative facts are those with "relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." *Id.* Legislative facts are a species of legal text, not "facts" about a particular dispute. *See id.* By contrast, Cultural Care in depositions can obtain only "adjudicative facts," *i.e.*, facts about the particular case. *United States v. Iverson*, 818 F.3d 1015, 1030 (10th Cir. 2016) ("When a court finds facts concerning the immediate parties who did what, where, when, how, and with what motive or intent the court is performing an adjudicative function, and the facts are conveniently called adjudicative facts"); FRE 201, Adv. Comm. Note (a). Thus, the facts Cultural Care seeks through discovery have nothing to do with determining the correct legal rule on preemption.

Nor can Cultural Care re-characterize the evidence it seeks in discovery as probative of "legislative facts" that might somehow help the Court construe the statutes at issue. As Wright and Miller explain, no discovery can be taken on the "legislative facts" that matter to statutory interpretation because the only "facts" that can be considered are legislative history materials that do not invoke the Federal Rules of Evidence at all. *See* 21B Wright & Miller § 5103.2 (2d ed.) (explaining why discovery is prohibited in cases where the question is statutory interpretation; "judicial 'lawmaking' legitimizes the power of courts by allowing them to smooth unexpected kinks in statutes [ . . . ] Requiring the parties to prove 'legislative facts' with admissible evidence [as part of such interpretive decisionmaking] would inhibit the courts and be time-consuming and costly to the parties—perhaps even favoring those with deep pockets"); *see also U.S. v. Supreme Court*, 839 F.3d at 905 (affirming denial of motion for discovery on preemption claim because the "facts, even if established, would not have affected the district court's central legal conclusion").

The legislative-adjudicative distinction also helps explain Cultural Care's confused citations. Mot. at ¶ 10 n.2. The issue in the cited cases was not whether a law was preempted. The preemption rules were established, and the statutes at issue were preempted in part (*e.g.*, the "legislative" function was complete). Cultural Care's cases ask the **next** question: Whether the facts of the particular case fell within the preempted statute.

The first case Cultural Care cites illustrates the point. The Seventh Circuit in *Bausch* addressed a medical device claim. *Bausch v. Stryker Corp.*, 630 F.3d 546, 558, 560-61 (7th Cir. 2010). The *Bausch* preemption rule turned on whether the claim was "based entirely on a specific defect [ . . . ] entirely outside the knowledge and regulation of the FDA." *Id.* at 560. Determining that rule involved analyzing law, not the case's facts or factual allegations. *Id.* at 555-56. The passage Cultural Care cites comes next, after the panel made its legal conclusion about the scope of preemption:

> "For [the plaintiff] to plead with any more detail that her claims were 'based entirely on a specific defect in the [device] that existed outside the knowledge and regulations of the FDA,' she would need access to the confidential materials in the premarket approval application setting forth the medical device's specifications. This is simply not possible without discovery."

630 F.3d at 561. But here, Cultural Care seeks discovery on the prior legal question of what the preemption rule is.

Similarly, in *Samuel R. Jahnke & Sons, Inc. v. Blue Cross/Blue Shield of Kansas*, No. 10-4098-JTM, 2011 WL 4526778, at *7-8 (D. Kan. Sept. 28, 2011), the question was whether an insurance claim satisfied certain ERISA definitions (whether it was an "employee benefit plan" and whether it satisfied the safe-harbor provisions). *Id.* Again,

the legal test for preemption was established without reference to any adjudicative facts. *See id.* The only question was whether the facts of the case satisfied the test.[3]

### C. The FLSA Opt-In Depositions Are Not Free-Roaming Inquiries into Rule 23 Claims

Responding to: ¶¶ 12, 15.

Cultural Care offers its theory of antitrust injury as a justification for its wide-ranging inquiries at FLSA opt-in depositions. But discovery from absent Rule 23 class members is the exception, not the rule, and as a result, requests for such discovery are "generally disfavored." *Sibley v. Sprint Nextel Corp.*, No. 08-2063-KHV, 2009 WL 3244696, at *2 (D. Kan. Oct. 6, 2009). Indeed, absent plaintiffs in a class action are "not required to do anything" and "may sit back and allow the litigation to run its course." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985). Where, as here, there are FLSA and Rule 23 classes, the discovery obligations for each are separate because they are driven by different statutory regimes and legal standards. *See, e.g., Charles v. Nationwide Mut. Ins. Co.*, Inc., No. 09 CV 94(ARR), 2010 WL 7132173, at *1 (E.D.N.Y., May 27, 2010) (distinguishing the "procedural mechanism" for FLSA discovery from Rule 23 discovery, and analyzing plaintiff's motion to compel each type of discovery separately); *Dziennik v. Sealift, Inc.,* No. 05-CV-4659 (DLI)(MDG), 2006 WL 1455464, at *2 (E.D.N.Y., May 23, 2006) (distinguishing Rule 23 discovery from FLSA discovery).

---

[3]   Cultural Care's last citation, *Prejean v. Foster,* 227 F.3d 504, 509 (5th Cir. 2000), is not a case about preemption, at all. Cultural Care's *Prejean* citation suggests it may mistake statutory interpretation for as-applied challenges in constitutional litigation. *Prejean* considered legislative intent in Fourteenth Amendment litigation, where legislators' **subjective intent** was a **substantive** requirement for making out a constitutional violation. *See id.* at 508-10. That is, the issue was whether the facts fit the standard, not what the correct standard was. Further, and as Wright and Miller explain, constitutional cases are not illuminating when "approaching 'legislative facts' from the point of view of the law of evidence," because the "facts" noticed in the constitutional context are often not "legislative facts" in the usual sense, but opinions or assertions about the state of the world or society. 21B Wright & Miller § 5103.2 (2d ed).

The FLSA-Rule 23 claim distinction is no mere formalism.  The Plaintiffs in this case are young foreign nationals for whom the US legal system is foreboding—they know it only as portrayed on TV and in movies—and who fear retaliation and deportation.  Worse, Cultural Care's irrelevant questions have lacked decorum.  Plaintiffs' contemporaneously filed motion discusses more examples, but to take one: An *au pair* was asked why she left a pre-*au pair* job.  Rodriguez Decl. Ex. B at 37:13.  The answer is that her ex-boyfriend was harassing her on the job.  *Id*. at 37:14-19.  The incredulous questioner demanded to know whether the *au pair* "reported" that harassment to anyone.  *Id*. at 37:23-24.  Whether an *au pair* reported harassment by her ex-boyfriend after her time as an *au pair* is irrelevant, and there is no reasonable evidentiary theory under which Cultural Care's insinuations could be used in this case.  *See, e.g.*, FRE 403 (more prejudicial than probative) & 404 (prior acts).[4]

In sum, depositions of FLSA opt-ins cannot be used as a backdoor into Rule 23 discovery that Cultural Care would not otherwise be entitled to.  The purpose of these depositions is to address Plaintiffs' FLSA claims, and Cultural Care's defenses to those claims, nothing more.  The depositions' scope should be accordingly narrow.

**D.     Three Issues Are Relevant In FLSA Opt-In Depositions**

Cultural Care lists issues it contends are relevant.  Mot. at ¶¶ 13-16.  Few are.  "The requirements to state a claim of a FLSA violation are quite straightforward, requiring plaintiff to show a failure to pay overtime compensation and/or minimum wages to covered employees'—no more." *Rayfield v. Sandbox Logistics*, *LLC*, 217 F.

---

[4]     Preventing Cultural Care's attempt to take Rule 23 classmember discovery under the guise of FLSA opt-in deposition moots the facts that Cultural Care asserts are relevant to "antitrust injury."  Mot. at ¶¶ 12, 15.  Plaintiffs will not repeat the now thrice-argued reasons why Cultural Care's version of "antitrust injury" is far removed from the antitrust doctrine of that name and attempts to create an impermissible but-for world that bears little resemblance to the real world. ECF No. 642, at 5-18 (class cert reply); ECF No. 907, at 5-10 (response to *Daubert* objections); ECF No. 942, at 54-65 (summary judgment opposition).

Supp. 3d 1299, 1300 (D. Colo. 2016).  Thus, every subparagraph of Cultural Care's ¶ 13 is irrelevant except for hours worked (¶ 13(a))[5], wages (see ¶ 13(c))[6], and whether the *au pair* "extended or returned" to the program because that fact matters for the damages formula (¶ 14(d)).  Plaintiffs never contended otherwise.  See Rodriguez Decl. Ex. A (February 15, 2018 email from S. Rodriguez to Defendants).

However, a worker's motivations do not matter to a FLSA claim.  *Haught v. U.S. Eng'g Contractors Corp.*, No. 07-80436-CIV, 2009 WL 36591, at *3 (S.D. Fla., Jan. 6, 2009) ("motivations are irrelevant" to whether the defendant violated FLSA); see also *Dole v. International Ass'n Managers, Inc.*, No. 90-0219-PHX-RCB , 1991 WL 270194 at *4, (D. Ariz. 1991).  Cultural Care's ¶¶ 14(a), (e), (f) & 15, seek information about *au pairs*' motivations.  They should be disregarded.

Information about payments from other employers is also "irrelevant to whether the employer properly paid its employees and otherwise complied with the [FLSA's] requirements."  *See Chao v. Westside Drywall, Inc.*, 254 F.R.D. 651, 660 (D. Or. 2009); *Campos v. Zopounidis*, No. 3:09-cv-1138 (VLB), 2011 WL 4852491, at *3 (D. Conn., Oct. 13, 2011).  That eliminates ¶ 14(b) and (c).

Finally, Plaintiffs already told Cultural Care (and the other Defendants) it would not attempt to stop questioning on issues that have a colorable connection to the joint employment test.  Rodriguez Decl. Ex. A (February 15, 2018 email from S. Rodriguez to Defendants).  Plaintiffs agree that certain questions on ¶ 13(f)-(h) may be relevant.[7]

---

[5] Indeed the only hours that matter are those worked above 45, since *au pairs* must be paid, at a minimum, a weekly rate that reflects a 45-hour work week.  See 22 C.F.R. § 62.31(j)(1).

[6] By "non-monetary" compensation in ¶ 13(c), Cultural Care means gifts and fringe benefits.  Neither matters to FLSA, which permits narrow types of room-and-board-related deductions under narrow circumstances not present here.  See 29 U.S.C. § 203(m) & 29 C.F.R. § 521.32(a).

[7] Cultural Care's theory on ¶ 13(d) (difficulty of tasks) is puzzling.  Difficulty does not matter to joint employment.  This case involves wage-and-hour claims, not employee-classification claims.  As for ¶ 13(e) ("participation in family and cultural

9

**CONCLUSION**

For the foregoing reasons, Cultural Care's motion regarding the opt-in depositions' scope should be denied in all respects except for those points that the parties agree are relevant.  Plaintiffs respectfully refer the Court to their proposed order on their contemporaneous motion, which would limit the questioning to those areas where that the parties agree are relevant.

Dated: March 26, 2018

                                                Respectfully Submitted,

                         BOIES, SCHILLER & FLEXNER LLP

                              /s/ *Sean P. Rodriguez*
                         Matthew L. Schwartz
                         Peter M. Skinner
                         Randall W. Jackson
                         Dawn L. Smalls
                         Joshua J. Libling
                         Byron Pacheco
                         575 Lexington Avenue
                         New York, New York 10022
                         Tel: (212) 446-2300
                         Fax: (212) 446-2350
                         mlschwartz@bsfllp.com
                         pskinner@bsfllp.com
                         rjackson@bsfllp.com
                         dsmalls@bsfllp.com
                         jlibling@bsfllp.com
                         bpacheco@bsfllp.com

                         Sean P. Rodriguez
                         Juan P. Valdivieso
                         1999 Harrison Street, Suite 900
                         Oakland, CA 94612
                         Tel: (510) 874-1000
                         Fax: (510) 874-1460
                         srodriguez@bsfllp.com
                         jvaldivieso@bsfllp.com

---

exchange activities"), those are permissible to the extent Cultural Care believes it can carve out compensable time by re-categorizing child-tending outside the home as a "family activity."  There is no other connection between ¶ 13(e) and any FLSA issue.

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

**Certificate of Service**

I hereby certify that on March 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

      /s/ *Sean P. Rodriguez*
    Sean P. Rodriguez