FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-03074-CMA-CBS

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ, and
SARAH CAROLINE AZUELA RASCON,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., d/b/a Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., d/b/a Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, d/b/a Au Pair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GoAuPair,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a ProAuPair,
20/20 CARE EXCHANGE, INC., d/b/a The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GoAu Pair, and
GOAUPAIR OPERATIONS, LLC,

    Defendants.

# ORDER ON ALL PARTIES' JOINT REPORT REGARDING PROPOSED RULE 23 NOTIFICATION PLAN

This matter is before the Court on all parties' Joint Report Regarding Proposed Rule 23 Notification Plan, in which the parties request that the Court resolve their disputes about class notice procedures. (Doc. # 851.)

## I. BACKGROUND AND PROCEDURAL HISTORY

The factual and procedural background of this case has been extensively detailed in the Court's previous orders and the Magistrate Judge's recommendations. *See, e.g.*, (Doc. ## 240, 569, 828.) Additional information is included here only to the extent necessary to address the parties' Joint Report.

On February 2, 2018, this Court granted in part Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel, certifying eighteen classes and subclasses and appointing class counsel. (Doc. # 828.) The Court ordered the parties to confer about class notice procedure and to "submit proposed notices and a proposed notification plan within ten (10) days of th[e] Order." (*Id.* at 37.) It also directed the parties to "reach agreement on as many issues as possible and set forth their proposals and points of dispute in a concise joint filing." (*Id.*) Subsequently, the parties moved for and the Court granted a two-day extension for the submission of proposed notices and notification plan. (Doc. ## 844, 845.)

On February 14, 2018, the parties submitted the Joint Report Regarding Proposed Rule 23 Notification Plan now before the Court.[1] (Doc. # 851.) The Joint Report states that the parties conferred and largely agree to a proposed notice and notification plan.[2] (Doc. # 851.) However, the parties cannot reach agreement on five issues. (*Id.*) They "request that the Court enter a Rule 23 Notification Plan . . . or set a streamlined schedule for deciding remaining issues necessary for a Rule 23 Plan." (*Id.* at 1.) The Court addresses each disputed issue below.

## II. CLARIFICATION OF CERTIFIED CLASSES

In its February 2, 2018, certification order, the Court certified eighteen classes and subclasses. (Doc. # 828 at 34–37.) Three certified subclasses are relevant to this disputed issue:

1. **Au Pair in America Illinois Subclass**, defined as "All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study) to work as a standard *au pair* in the State of Illinois pursuant to a J-1 Visa";

2. **Cultural Care Pennsylvania Subclass**, defined as "All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa"; and

3. **Cultural Care Texas Subclass**, defined as "All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Texas pursuant to a J-1 Visa."

---

[1] Defendant EurAuPair Intercultural Child Care Programs did not consent to the parties' Joint Report prior to the filing of the report.
[2] The parties also filed the notice and a notification plan they had agreed to thus far. (Doc. ## 851-1, 851-3.)

*See* (*id.*); (Doc. # 851 at 2.)

A.     **PROCEDURAL HISTORY**

When Plaintiffs filed their Motion for Rule 23 Class Certification and Appointment of Class Counsel on June 3, 2017, Plaintiffs stated in a footnote that "[c]ertain of [the listed Plaintiffs] have not yet been joined but are the subject of a pending motion for leave to amend." (Doc. # 559 at 3 n.3.) In the attached appendix, Plaintiffs represented that the Au Pair in America Illinois Subclass was represented by Camila Gabriela Perez Reyes, the Cultural Care Pennsylvania Subclass was represented by Linda Elizabeth, and the Cultural Care Texas Subclass was represented by Cathy Caramelo and Linda Elizabeth. (Doc. # 559-1 at 4–7.)

Separately, Plaintiffs also filed a Motion to Amend Complaint on June 3, 2017. (Doc. # 564.) Plaintiffs sought leave to file a third amended complaint that "add[ed] as named plaintiffs Linda Elizabeth, Camila Gabriela Perez Reyes, and Cathy Caramelo" and named an additional defendant. (*Id*. at 2.) Defendants Cultural Care and Defendant American Institute for Foreign Study ("AIFS"), d/b/a Au Pair in America, responded in opposition on the same day. (Doc. ## 589, 587.) Plaintiffs replied on July 7, 2017. (Doc. # 595.)

The Court denied Plaintiffs' Motion to Amend Complaint on February 13, 2018. (Doc. # 850.) With regard to Plaintiffs' request to add named plaintiffs, the Court concluded that Plaintiffs did not satisfy the good cause standard of Federal Rule of Civil Procedure 16(b)(4) and thus failed to demonstrate the elements necessary for amendment after a scheduling order deadline. (*Id.* at 3–6) (*citing Gorsuch, Ltd., B.C. v.*

4

*Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230 (10th Cir. 2014)). The Court reasoned that Plaintiffs did not demonstrate that they had previously engaged in diligent efforts to locate proposed plaintiffs.

The parties gently point out in their Joint Motion that the Court's February 2, 2018, class certification order (Doc. # 828) and its February 13, 2018, order denying Plaintiffs' motion to add named plaintiffs (Doc. # 850) are in tension. (Doc. # 851 at 2.) The Court certified the Au Pair in America Illinois Subclass, the Cultural Care Pennsylvania Subclass, and the Cultural Care Texas Subclass in the certification order, (Doc. # 828 at 34–37), but rejected Plaintiffs' request to add the named plaintiffs that were to be those subclasses' representatives in its denial of Plaintiffs' Motion to Amend eleven days later (Doc. # 850 at 3–6). Accordingly, the Au Pair in America Illinois Subclass, the Cultural Care Pennsylvania Subclass, and the Cultural Care Texas Subclass do not currently have representative class members.

The parties "request a clarifying order as to the status of an Au Pair in America Illinois Subclass, [a] Cultural Care Pennsylvania Subclass, and [a] Cultural Care Texas Subclass." (Doc. # 851 at 2.) The Joint Motion does not detail the parties' positions; it merely states "Plaintiffs refer to the [February 2, 2018, certification order]; Defendants refer to the [February 13, 2018, order denying Plaintiffs' Motion to Amend Complaint] and the [c]ertification [o]rder's discussion of standing." (*Id.*)

B. ***SUA SPONTE* RECONSIDERATION OF PLAINTIFFS' MOTION TO AMEND COMPLAINT**

To resolve this tension, the Court *sua sponte* reconsiders its Order Denying Plaintiffs' Motion to Amend. (Doc. # 850.) An order on a motion to amend a complaint

5

is an interlocutory order. *See Lanier Const., Inc. v. Carbone Prop. of Mobile, LLC*, 253 F. App'x 861, 863 (11th Cir. 2007) ("[T]he district court's denial of [the plaintiff's] motion for leave to amend the complaint was simply an interlocutory decision, which the district court had ample discretion to reconsider."); *Smith v. Liberty Mut. Ins. Co.*, 569 F.2d 325, 326 (5th Cir. 1978) (describing the district court's denial of a motion to amend the complaint to include punitive damages as interlocutory). A district court may reconsider its own interlocutory order, *sua sponte* or on motion, at any time prior to the entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b). *Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006); *NAACP v. Acusport Corp.*, 216 F. Supp. 2d 59, 61 (E.D.N.Y. 2002); *Young v. Murphy*, 161 F.R.D. 61, 61 (N.D. Ill. 1995). Rule 54(b) "provides that a district court can freely reconsider its prior rulings; and . . . puts no limit or governing standard of the district court's ability to do so, other than that it must do so 'before the entry of judgment,'" and "[t]he Tenth Circuit has not cabined district courts' discretion beyond what [R]ule 54(b) provides." *Lujan v. City of Santa Fe*, 122 F. Supp. 3d 1215, 1238 (D.N.M. 2015) (citing *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007)).

> In short, a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order. It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

*Id*.

Upon *de novo* reconsideration, the Court grants in part Plaintiffs' Motion to Amend Complaint (Doc. # 564) as to the addition as named plaintiffs Linda Elizabeth,

6

Camila Gabriela Perez Reyes, and Cathy Caramelo and vacates in part its February 13, 2018, order denying Plaintiffs' Motion to Amend Complaint (Doc. # 850) to the extent that it ruled otherwise. The Court is now satisfied that Plaintiffs demonstrate "(1) good cause for seeking modification under [Federal Rule of Civil Procedure] 16(b)(4) and (2) satisfaction of the [Federal Rule of Civil Procedure] 15(a) standard." *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).

The first factor, good cause for seeking modification pursuant to Rule 16(b)(6), "requires the movant to show the 'scheduling deadlines cannot be met despite the movant's diligent efforts.'" *Id*. The good cause standard of Rule 16(b)(4) may be satisfied "if a plaintiff learns new information through discovery or if the underlying law has changed," for example. *Id*. Here, Plaintiffs assert that they "did not learn the information necessary to add the . . . proposed plaintiffs until May 2017," several months after the deadline to amend had passed. (Doc. # 595 at 6.) Plaintiffs also assert that Defendant Cultural Care "delayed producing information at every turn." (*Id.* at 1.) Upon re-examination of Plaintiffs' Reply (*id.*), the Court is satisfied that they had good cause for belatedly seeking to add the three named plaintiffs. *See XY, LLC v. Trans Ova Genetics, LC*, No. 13-cv-0876, 2015 WL 9489608, *1 (D. Colo. 2015) (finding good cause for amendment of a pleading where additional facts were presented in a reply brief).

As to the second factor, Rule 15(a)(2) directs a trial court to "freely give leave when justice so requires," a rule intended "to provide litigants the maximum opportunity

7

for each claim to be decided on its merits rather on procedural niceties," *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Mintowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). In this case, the Court sees no reason why it should not freely give Plaintiffs leave to amend the complaint. Moreover, because the Court already inadvertently certified subclasses that are to be represented by the three additional plaintiffs, justice requires that the Court not hold its error against Plaintiffs.

Therefore, the Court vacates in part its February 13, 2018, order denying Plaintiffs' Motion to Amend Complaint (Doc. # 850) so far as it concerned adding named plaintiffs. It now grants in part Plaintiffs' Motion to Amend Complaint (Doc. # 564) as to the addition of named plaintiffs. Plaintiffs are granted leave to amend their Complaint to add these individuals as named Plaintiffs. Plaintiffs shall file a Third Amended Complaint including them, and the Third Amended Complaint shall be the operative complaint going forward. The case caption in all future filings shall include the additional named Plaintiffs. The Third Amended Complaint shall relate back to the date of Plaintiff's first Complaint.

Pursuant to the Court's reconsideration, the Au Pair in America Illinois Subclass, the Cultural Care Pennsylvania Subclass, and the Cultural Care Texas Subclass will have named representative class members. These subclasses are valid for all purposes.

### 4. **CONTENTS OF THE NOTICE**

The parties have essentially agreed upon a notice to the class, save for two issues. (Doc. # 851 at 2); *see* (Doc. # 851-2.)

## A. CLASS END DATE

The parties dispute whether the classes and subclasses should close and, if so, when they should do so. (Doc. # 851 at 3–4.) In their Complaint, Plaintiffs allege that Defendants "continue to set *au pair* wages as an illegal cartel, to the detriment of *au pairs* and the relevant labor markets," and that their "fixed weekly rate was and continues to be an artificially depressed wage for standard au pair services." (Doc. # 395 at 17–19.) Plaintiffs propose that the classes and subclasses should end "120 days before trial, with [Defendants] to supplement their production of *au pair* contact information in advance of that date to permit a supplemental notice to be sent to the *au pairs* added to the class between the initial notice and that date." (*Id.* at 3.) Plaintiffs argue that the classes and subclasses should remain open until trial approaches because there is "no material difference between an *au pair* hired today and the rest of the class." (*Id.*)

Defendants disagree with that assumption, stating that "[c]laims by individuals who became *au pairs* after the lawsuit was filed . . . are different than those brought by the named plaintiffs" because the sponsoring organizations have "changed representations they make regarding the stipend, and the case has been widely publicized." (*Id.*) Defendants request that the Court grant them "an opportunity to present further argument" on the question of a class period end date and propose an expedited schedule for simultaneous briefing. (*Id.* at 3–4.)

The Courts orders that the eighteen classes and subclasses it certified on February 2, 2018, shall close 120 days before trial. (Doc. # 828) Defendants shall

continue to produce recent *au pair* contact information in advance of that date, so that a supplemental notice can be sent to class members added after the initial notice. If later events suggest that an earlier end date is appropriate, the Court has the power to amend the classes' end dates.

Case law guides this Court's conclusion. Where a "reasonable dispute exists" as to the end date of a class at the certification stage, courts often will not close the class at the earlier of the proposed dates/times. *See, e.g., In re Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572, 580 (D. Colo. 2001) (where both parties "presented persuasive arguments" about the curative effects of a press release, concluding that there was a "substantial question of fact" as to whether the alleged injury ended and declining to close the class); *cf. Abdulina v. Eberl's Temp. Serv., Inc.*, No. 14-cv-00314, 2015 WL 4624251, *3 (D. Colo. Aug. 4, 2015) (where evidence was "uncontroverted" that the defendant ended its per diem pay program on a particular date, finding that the class was closed as of that date). Courts regularly recognize that they may later alter the end date of a class, should later-discovered facts suggest that a narrower class is appropriate. *See In re Ribozyme*, 205 F.R.D. at 581 (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968)).

**B.    NUMBER OF NOTICES**

Plaintiffs and at least two Defendants disagree on how many notices should be sent and how classes and subclasses should be identified in the notice(s). (Doc. # 851 at 4.) Only the nationwide Antitrust Class brings an action against Defendants APEX American Professional Exchange, LLC, d/b/a ProAuPair, and 20/20 Care Exchange,

Inc., d/b/a The International Au Pair Exchange, *see* (Doc. # 559-1 at 1); the other certified classes and subclasses do not allege claims against these two Defendants. These two Defendants "request that a separate notice be sent regarding the anti-trust only claims asserted against [them] instead of one notice addressing all claims." (Doc. # 851 at 4.) Defendants have not explained why the Court should order separate notices. *See* (id.)

Plaintiffs propose a single notice to the entire *au pair* population with an appendix defining the classes and subclasses. (*Id.*); *see also* (Doc. # 851-3). This proposal, according to Plaintiffs, "serves the goal of informing the class members of which classes they are members while still being administratively manageable." (*Id.*) Plaintiffs argue that Defendants' proposal to send at least three separate notices would "increase confusion and add unnecessary administrative complexity, burden, and cost for no material benefit." (*Id.*) The Court agrees, as it seeks to minimize the complexity of this Byzantine action.

The parties shall issue one notice to all *au pairs*. The notice shall include an appendix, like the one Plaintiffs propose, (Doc. # 851-3), that clearly defines each class and subclass.

### 5. **NOTICE PROCEDURE**

The parties have largely agreed on a notice procedure. (Doc. # 851 at 4); *see* (Doc. # 851-1.) Two procedural issues remain unresolved.

11

**A.     TIMING**

On February 16, 2018, Defendants petitioned the Tenth Circuit for leave to appeal this Court's February 2, 2018, order certifying eighteen classes and subclasses. (Doc. # 898-1.)  On February 28, 2018, Defendants moved the Court to stay the distribution of class notice until after the Tenth Circuit has ruled on Defendants' Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f).  (Doc. # 914.)  The Court denied Defendants' motion for a limited stay on March 5, 2018, because it had not yet ruled on the Joint Report now before the Court and thus, there was not yet any notice distribution to stay.  (Doc. # 925.)

Plaintiffs argue that the first round of class notices should be sent without further delay because the classes and subclasses have been certified.  (Doc. # 851 at 4.)  According to Plaintiffs, *au pairs* "have a right to know about the lawsuit being prosecuted on their behalf, and a right to opt out if they so choose."  (*Id.* at 5.)  Defendants counter that class notices should not be sent "at least until" the Tenth Circuit has ruled on their Rule 23(f) Petition for Permission to Appeal.  (*Id.*)  They assert that "it would be confusing and prejudicial to both parties if notices are being distributed and class members are communicating regarding opting out at the same time that the question of class certification is being considered by the Tenth Circuit."  (*Id.*)

The question of when notice is given directly relates to the ability to assure that the absent class members' rights are fully protected.  7AA Charles Alan Wright, et al., Fed. Prac. & Proc. Civ. § 1788 (3d ed.)  "It is well established that," to protect those rights, "notice must be distributed to all class members at the earliest possible time."  *In*

12

re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 380 (N.D. Okla. 1977) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)); *McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013); Wright, et al., § 1788.  A court may decide to postpone formal notice "if there is a reason for the delay and it would not prejudice those class members who are not before the court."  *McKinney*, 292 F.R.D. at 68 (quoting Wright, et al., § 1788); *Tylka v. Gerber Prod. Co.*, 182 F.R.D. 573, 579 (N.D. Ill. 1998).  Notice is most frequently delayed where it is necessary to wait until discovery has taken place "to be in a better position to determine the propriety of class-action treatment and to define the class."  Wright, et al., § 1788; *see Cusick v. N. V. Nederlandsche Combinatie Voor Chemische Industrie*, 317 F. Supp. 1022, 1025 (E.D. Pa. 1970) (postponing notice because the class membership was not yet identifiable); *Fischer v. Kletz*, 41 F.R.D. 377, 386 (S.D.N.Y. 1966) (holding that notice would be premature where discovery was "far from completed" and might indicate that a class action was inappropriate).

In the instant matter, the Court concludes that there is no reason to delay class notification.  The Court will **not** condition the sending of notice on the Tenth Circuit's ruling on Defendants' Rule 23(f) Petition for Permission to Appeal.  Waiting until the Tenth Circuit resolves the petition will unacceptably further delay the resolution of this litigation.  *See R & D Bus. Sys. v. Xerox Corp.*, 150 F.R.D. 87, 91–92 (E.D. Tex. 1993) (declining to delay the sending of notice in anticipation of a motion for decertification).  The parties are ordered to notify *au pairs* expeditiously.

## B. AU PAIR CARE'S INVOLVEMENT

The Court denied Defendant AuPairCare's Motion to Compel Arbitration and Dismiss or Alternatively Stay Lawsuit (Doc. # 431) on September 21, 2017. (Doc. # 705.) Defendant AuPairCare appealed the Order Denying its Motion to Compel Arbitration to the Tenth Circuit on October 11, 2017. See (Doc. # 723.) The following day, Defendant AuPairCare moved to stay the case against it until the Tenth Circuit resolved its appeal. (Doc. # 726.) The Court denied in large part Defendant AuPairCare's request to stay the case against it on November 15, 2017. (Doc. # 756.) However, the Court stayed the wage and hour claims asserted by Defendant AuPairCare's former *au pairs* against it. (*Id.* at 13.)

Defendant AuPairCare argues that in light of its appeal and the limited stay, "the Court only has jurisdiction to certify a class against [it] to the extent that it asserts an antitrust claim by *au pairs* who were sponsored by [D]efendants other than AuPairCare." (Doc. # 851 at 6.) It asks that "[t]he notice be revised to reflect that," and, according to Plaintiffs, have specifically asked to modify the notice by omitting the New Jersey Training Subclass, the AuPairCare Michigan Subclass, and the AuPairCare Pennsylvania Subclass. (*Id.*)

Plaintiffs argue that such modifications are unnecessary because Defendant AuPairCare "cannot be prejudiced if its *au pairs* receive accurate information about the claims in this lawsuit and their status." (*Id.* at 5.) Plaintiffs state:

> In an effort to compromise, Plaintiffs have agreed to withhold notice to Au Pair Care sponsored *au pairs* at this time. Further, to ensure that any AuPairCare *au pairs* who learn of the notice through other channels, Plaintiffs have guarded against any confusion by agreeing to include the

14

following language in the notice: "AuPairCare is currently appealing a decision that will determine whether *au pairs* sponsored by AuPairCare can be part of the class before the court in Colorado. If the appeal is resolved in Au Pair Care's favor, Au Pair Care sponsored *au pairs* will not be part of this case and any claim that Au Pair Care au pairs have must be brought in arbitration. In the event that AuPairCare-sponsored *au pairs* are ultimately made part of the class, AuPairCare *au pairs* will receive a separate notice and opportunity to opt out."

(*Id.* at 6.)

The Court is satisfied with Plaintiffs' proposed compromise. The Court orders the parties to withhold notice to *au pairs* sponsored by Defendant AuPairCare and to insert the proposed language about the appeal into the notice.

### 6. **CONCLUSION**

Accordingly, the Court ORDERS as follows:

1. Plaintiffs shall file a Third Amended Complaint that includes the three additional named plaintiffs on or before April 16, 2018. The Third Amended Complaint shall be the operative complaint going forward. The case caption in all future filings shall include the newly-added named plaintiffs.

2. The parties shall confer regarding the Court's resolutions of their disputes described herein. The parties shall submit a revised proposed notice and a revised proposed notification plan that incorporate the Court's rulings in this Order on or before April 16, 2018.

DATED: April 9, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge