IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

        Defendants.

_____

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE SUMMARY JUDGMENT TESTIMONY OF STANLEY COLVIN, ESQ. [ECF NO. 944]**

## PRELIMINARY STATEMENT

Plaintiffs' Motion to Exclude the Summary Judgment Testimony of Stanley Colvin (the "Motion") is a transparent attempt to avoid highly probative facts that undercut their theory of the case. In particular, after years of discovery, Plaintiffs are unable to controvert some of the most relevant facts in this litigation, *viz*: in conformance with its regulations, the United States Department of State ("DOS") adopted a formula for calculating the stipend for the United States au pair program (the "Program") (Ex. 1 to Declaration of Dawn Smalls ("Smalls Decl."), Decl. of Stanley Colvin ¶¶ 17, 19, ECF No. 945-01 ("Colvin Decl.")); DOS issued an official notice to host families and Sponsors to inform them of the stipend calculation and amount ($195.75) (Colvin Decl. ¶¶ 17, 18, 23, 27); and the United States Department of Labor ("DOL") was aware of and approved the stipend amount (including room and board credits) (Colvin Decl. ¶¶ 14, 19).

Mr. Colvin provides key context on these central issues that would otherwise be

lacking from this case, and nothing about his testimony is improper.  In informed conformance with local rules and ethical standards, Defendants have reimbursed Mr. Colvin for his time at his regular consulting rate.  The scope of Mr. Colvin's testimony is proper.  And, his testimony is obviously relevant to, and highly probative of, the claims and defenses in this case.

## STATEMENT OF FACTS

Mr. Colvin ("Colvin") has twenty-five years of professional experience involving exchange visitor programs, including the Program.  Colvin Decl. ¶¶ 4-7.  His various positions at the United States Information Agency ("USIA") and the DOS (which absorbed the USIA in 1999) included day-to-day administration of the Program and drafting and reviewing regulations, proposed regulations, and guidance documents pertaining to the Program.  *Id.*  In particular, Colvin was the principal author of the Program regulations and the initial stipend notices.  Colvin Decl. ¶¶ 13, 17.

Colvin is now a Principal at Colvin Consulting.  Colvin Decl. ¶ 1.  He charges his clients between $375 and $500 per hour for his consulting services.  Ex. 3 to Smalls Decl., Dep. of Stanley Colvin 105:13-18, ECF No. 945-03 ("Colvin Dep.").  Defendants are compensating Colvin for his time at his lowest standard rate, i.e., $375 per hour.  *Id.*; Colvin Decl. ¶ 3.  Colvin did not serve as legal counsel for any of the Defendants prior to being retained in this matter.[1]  Defendants engaged Colvin to discuss the history

---

[1] Subsequent to offering his affidavit in this litigation, Colvin wrote an informational letter regarding the history of the Program regulations to the New York Department of Labor, on behalf of an au pair sponsor in another, unrelated matter.  Colvin Dep. 109:11-111:16.

2

of the Exchange Visitor Program, based upon his extensive hands-on experience with the Program. Colvin has provided valuable factual context to the regulations and the administration of the Program. *See, e.g.*, Colvin Decl. ¶ 2; Colvin Dep. 48:9-50:13. Colvin has *not* provided legal opinions on the regulations at issue in this litigation, and he acknowledges that he is not in a position to do so. Colvin Dep. 124:20-125:12.

Plaintiffs have presented no relevant or compelling challenge to Colvin's credibility or knowledge. Presumably after a thorough search for materials to impugn Colvin, Plaintiffs could do no better than a single online article in which anonymous sources allegedly question Colvin's administration of the summer work-travel program, a J-1 visa program that is not at issue in this case. Ex. 7 to Smalls Decl., ECF No. 945-07.

Colvin has offered both a declaration and deposition testimony, but he has not prepared a written report. Colvin Dep. 106:6-11. His testimony provides historical context for the Program and its regulations and factual information concerning the DOS's administration of the program. Colvin Dep. 149:1-5; Colvin Decl. ¶¶ 16, 17, 23, 28-29. In particular, Colvin testifies regarding relevant information the DOS communicated to Sponsors and host families regarding the stipend, how the DOS communicated such information, and when the DOS did so. *Id.*

## **LEGAL STANDARD**

Plaintiffs fail to meet the general standard for excluding evidence at the summary judgment phase. They also fail to acknowledge that "[e]xcluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely

3

necessary, because no harm is done by admitting it at that stage." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990). Moreover, Federal Rule of Evidence 403 (on which Plaintiffs largely rely) "is a trial-oriented rule" and "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." *Id.*

## ARGUMENT

I. <u>Mr. Colvin Is Properly Offered As A Fact Witness</u>.

    A.    <u>Mr. Colvin Provides Factual Context, Not Expert Testimony</u>.

Defendants have not proffered Colvin as an expert witness. Rather, as he made clear at his deposition, Colvin is providing factual context concerning the Program regulations and the DOS's enforcement history concerning the regulations. Colvin Dep. 48:9-50:13. For example, Colvin has offered testimony concerning his own discussions with DOL, which provide context for the stipend calculation, stipend notices, and enforcement history. Colvin Decl. ¶¶ 4-7. While Plaintiffs would like to ignore this testimony and pretend that DOL has never weighed in on the Program stipend, Plaintiffs' position is blatantly counterfactual. Their obviously biased preference to avoid this important evidence is hardly reason to exclude it.

Colvin's testimony also provides key context for the stipend notices. As demonstrated in the parties' summary judgment briefing, the stipend notices and their import are highly relevant issues in this case. Defendants maintain that USIA and DOS provided sponsors and host families with stipend notices in order to inform them of the legally-required stipend. This fact is central to Defendants' antitrust defenses and

4

relevant to the wage-and-hour claims.  *See, e.g.,* Certain Defs.' Joint Mot. for Summ. J. 8-9, ECF No. 860 ("Joint Mot. for Summ. J.") (arguing that Defendants did not conspire, but rather responded to common stimuli, primarily DOS stipend notices).  Plaintiffs, on the other hand, seek to ignore these notices or to dismiss them as irrelevant.  *See, e.g.*, Pls.' Opp'n to Defs.' Mots. for Summ. J. 24, ECF No. 942 ("Pls.' Opp'n") (dismissing the stipend notices as "informal documents on the [DOS] website").  Because of the centrality of stipend notices to the litigation – and in particular Plaintiffs' manufactured dispute about their purpose, background, and import – Colvin's contextual testimony is highly relevant.

      B.      <u>Mr. Colvin Does Not Offer Legal Opinions</u>.

Colvin does *not* offer any legal opinions.[2]  Plaintiffs' argument that Colvin offers opinions about the ultimate issues of law that are in dispute (Mot. 8) is misguided and should be rejected.

As the Tenth Circuit has held:

> The line we draw here is narrow. We do not exclude all testimony regarding legal issues. We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, **a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms**.

*Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) (emphasis added).  As is apparent from his declaration and deposition testimony, Colvin does exactly what the

---

[2] To the extent Plaintiffs were confused about this point, Colvin clarified in his deposition that he has not offered – and is in no position to offer – legal opinions in this litigation. Colvin Dep. 124:20-125:12.

5

*Specht* court says is permissible: he provides helpful context to the facts of the case, sometimes with references to statutes or regulations in order to aid in the process. Unlike the witness in *Specht*, Colvin does not "state his views of the law which governs the verdict and opine whether defendants' conduct violated the law."[3] *Id.* at 806. Instead, he offers factual context based on his personal knowledge and experience – concerning what he personally did and observed during his tenure – rather than a legal opinion concerning how this Court (or anyone else) should apply the laws at issue in this case.

The passages of Colvin's declaration cited by Plaintiffs show *on their face* that Colvin is offering factual testimony, rather than a legal opinion. For example, Plaintiffs challenge Colvin's testimony regarding the process of withdrawing an agency notice. Plaintiffs quote Defendants' legal arguments (that "the DOS never withdrew the 2007 Notice" and that the 2007 Notice "still accurately reflects the administering agencies' views") instead of quoting Colvin's actual testimony. Mot. 8. On this point, Colvin's affidavit states: "A Notice is not 'withdrawn' by removing it from a website. This Notice in question was provided to Au Pair Program sponsors for their use in program administration. Notice can only be 'withdrawn' by formal agency action, which has not occurred here." Colvin Decl. ¶ 28. This testimony is factual in nature, as Colvin describes – based on his 25 years of experience – the process for withdrawing a

---

[3] The witness (an attorney) in *Specht* was called as an expert witness after being provided "a hypothetical of the facts" that were in evidence in this matter. 853 F.2d at 806. The attorney's testimony consisted entirely of opining about whether the facts supported the legal conclusion that the search in question was unlawful under the Fourth Amendment. *Id.*

6

previously-issued notice.  He also testifies to the fact that the DOS provided this notice to Sponsors to guide them in administering their programs.  Again, this is a **fact** about which he has first-hand knowledge from his time at DOS.  Colvin Decl. ¶¶ 16, 17, 23, 28-29.

Plaintiffs likewise improperly characterize as a "legal opinion" clear factual testimony about how the DOS calculated the stipend for purposes of the notice.  Mot. 8-9.  Colvin testified that he was, in fact, involved in deploying the regulatory formula for calculating the stipend.  Colvin Decl. ¶ 23; Colvin Dep. 92:2-18.  Having firsthand knowledge about the Program stipend, he further testified that DOS has "deployed the Department of Labor regulatory formula based on the Federal minimum wage and DOL room and board credit calculation to determine the minimum weekly stipend to be paid to Au Pair Program participants."  Colvin Dep. 92:2-18.  Plaintiffs argue that this is a statement of "what law should govern the case."  To the contrary, however, Colvin makes no statement or judgment whatsoever about governing law in this litigation.  Rather, he describes a series of facts: (1) the DOL weighed in on a regulatory formula for the Program stipend, (2) which was based on the federal minimum wage and DOL's room and board credit calculation, and (3) this formula was deployed by DOS in notifying Program Sponsors of the au pair stipend.  Ultimately, this Court – or a jury – can decide whether this process complied with applicable laws, but the fact that a formula exists, the components of the formula, and how the formula and resulting stipend were communicated to Sponsors are all highly relevant  facts.

### C. Defendants' Compensation Of Mr. Colvin Is Proper And Permissible.

Plaintiffs argue that Colvin was compensated in exchange for his testimony, rendering it inadmissible. This argument misrepresents the facts and supporting case law, and ignores applicable ethical rules.

Under the American Bar Association's Rules of Professional Conduct, which have been adopted by Colorado, it is permissible to compensate a fact witness for the reasonable value of the witness's time spent, so long as the payment is not contingent on the content of the testimony and is not so significant as to be considered an inducement.[4]

Plaintiffs' suggestion that fact witnesses cannot be paid anything but their expenses is wrong, as various courts have held. In *United States v. Singleton*, for example, the court states that "reimbursements for travel, subsistence, and *the reasonable value of time lost in attendance*" are all permitted under the "general rule against payment to fact witnesses[.]" *United States v. Singleton,* 144 F.3d 1343 n. 2 (10th Circ. 1998), *vacated on other grounds*, 165 F.3d 1297 (10th Cir. 1999) (quoting *Hamilton v. General Motors Corp.,* 490 F.2d 223, 229 (7th Cir. 1973)) (emphasis

---

[4] According to the Colorado Rules of Professional Conduct, a lawyer shall not "(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law." Colo. R. Prof'l Conduct 3.4. Comment 3 to this rule further states, "With regard to paragraph (b), it is not improper to pay an expert or non-expert's expenses or to compensate an expert witness on terms permitted by law. It is improper to pay any witness a contingent fee for testifying. *A lawyer may reimburse a non-expert witness not only for expenses incurred in testifying but also for the reasonable value of the witness's time expended in testifying and preparing to testify, so long as such reimbursement is not prohibited by law.* The amount of such compensation must be reasonable based on all relevant circumstances, determined on a case-by-case basis." *Id.* cmt. 3 (emphasis added).

added).

Colvin's Consultant Agreement with the Defendants provides that he will be paid at a rate of $375 an hour for his time.  *See* Colvin Dep. 105:6-18.  Plaintiffs take the position that because Colvin's agreement to provide testimony is "memorialized in a contract" that requires hourly payments, his Declaration was provided on a contingent basis.  That argument makes no sense.  The Consulting Agreement only evinces that Colvin was being reimbursed for the reasonable value of his time spent.  Ex. 4 to Smalls Decl. ¶ 3, ECF No. 945-04.  The Consulting Agreement is devoid of any suggestion, let alone any agreement, that payment for the time Colvin spent testifying was or is in any way contingent on the content or character of his testimony.

The Colorado Ethics Committee (the "Committee") notes that when a witness is self-employed, it may be more difficult to determine the reasonableness of the fee.  Colo. Ethics Comm., Formal Op. 103 (1998) (attached as **Exhibit A**).  Thus, the Committee recommends that courts make fact-specific determinations when deciding whether or not a payment was reasonable.  *Id.*  The Committee notes that other jurisdictions, such as California and New York, have stated that the witness's "current rate of pay" or the amount that the witness "could expect to be paid in the ordinary course of his or her profession or business" can be determinative.  *Id.* (citing Cal. State Bar Standing Comm. on Prof'l Responsibility and Conduct, Formal Op. 149 (1997) (attached as **Exhibit B**); N.Y. State Bar Assoc. Comm. on Prof'l Ethics, Op. 668 (1994) (attached as **Exhibit C**)).

During his deposition, Colvin testified that he charges *all* of his clients between

$375 and $500 an hour for his time. *See* Colvin Dep. 105:6-18. He also testified that the hourly rate he charged for his time testifying in this case was at the low end of his normal rate of pay.[5] *See id.* Under the circumstances at bar, this Court can easily determine that the hourly rate paid to Colvin for his time testifying in this case is unquestionably reasonable.

II.     Mr. Colvin's Testimony Should Not Be Excluded Under FRE 403.

Plaintiffs' attempt to exclude Mr. Colvin's testimony under Rule 403 is premature and unfounded. "Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." *In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859. *See also Brimberry v. Nw. Mut. Life Ins. Co.*, No. CV 13-00127 RSWL (AJWx), 2013WL 4677592, at *3 (C.D. Cal. Aug. 28, 2013) ("In the summary judgment context, a court need not exclude evidence for danger of unfair prejudice, confusion of issues, or any of the other grounds outlined in Federal Rule of Evidence 403"). *Cf. United States v. Kienlen*, 349 F. App'x 349, 351 (10th Cir. 2009) (unpublished) ("Other circuits have held, and we agree, that excluding evidence in a bench trial under Rule 403's weighing of probative value against prejudice [is] improper.") (internal quotation marks omitted).

A.     Mr. Colvin's Testimony Is Highly Probative.

---

[5] It should be noted that David Keil, a witness for the Plaintiffs, also has a written retention agreement that provides for compensation of $250 an hour. When asked about his fee at his deposition he stated, "when I'm giving testimony or a deposition, I charge my normal hourly rate because it is taking me away from normally billing—normal billing to other clients, so it replaces the income I'm losing from not being – working for other cases today." Keil Dep. 68: 14-23 (attached as **Exhibit D**).

As discussed in Sections I.A and I.B, *supra*, Colvin offers key testimony on multiple issues that are central in this case. As is readily apparent from the parties' summary judgment briefing, Plaintiffs and Defendants have very different views on the history and administration of the Program. *Compare* Joint Mot. for Summ. J. 1-2 *with* Pls.' Opp'n 1-3. These views inform the parties' positions on central claims and defenses in the case, including antitrust, fraud, misrepresentation, and labor claims. *See, e.g.,* Joint Mot. for Summ. J. 31-32, 35, 44. Colvin's testimony speaks to a number of these issues that are presumably of significant import to the Court. For example, Plaintiffs dispute the lawfulness of the room and board credit, insinuating that the Sponsors pulled it out of the air in order to pay au pairs sub-minimum wages. *See, e.g.*, Pls.' Mot. for Partial Summ. J. 20-21, ECF No. 886. Contrary to the insinuation, Colvin testifies about the genesis of the room and board credit – including DOL's involvement. Colvin Decl. ¶¶ 14, 19-21. Furthermore, Plaintiffs discount Defendants' antitrust defense that the Sponsors engaged in parallel activity based on communications from DOS. *See, e.g.*, Pls.' Opp'n 24-26. Plaintiffs argue that Defendants' reliance on the stipend notices was unreasonable and that the stipend notices make it clear that the stipend was a minimum. *Id.* Here, Colvin provides insight into the purpose, content, messaging, and distribution of the notices. Colvin Decl. ¶¶ 17, 18, 21, 23, 28. This testimony also is relevant to the question of whether Sponsors defrauded and/or misled au pairs by providing information which, Sponsors contend, came directly from DOS. *See, e.g.,* Cultural Care's Mot. For Summ. J. 9-10, ECF No. 879.

Plaintiffs attempt to counter this reality by simply arguing that Colvin's testimony

is not probative because his "opinions about State Department policy are contrary to what the State Department itself has said." Mot. 11. Defendants strongly disagree with this characterization, as well as the purported "evidence" Plaintiffs include in the corresponding footnote to support it.[6] Plaintiffs' "evidence" relates to communications post commencement of this litigation, and Plaintiffs have publicly boasted that DOS changed course regarding its stipend guidance *because of* the filing of the litigation. According to Plaintiffs, "the State Department pulled down the June 2007 notice because they realized it was erroneous **once Towards Justice filed this suit**." Bryce Covert, *Can Au Pairs Legally Be Paid Less Than $5 An Hour?*, Think Progress (July 25, 2015), goo.gl/cyhYuS (last visited April 9, 2018) (quoting Plaintiffs' counsel) (emphasis added). In any event, what Plaintiffs have most amply demonstrated in making this argument is that they believe they are in possession of evidence to dispute Colvin's testimony. Instead of seeking to exclude probative evidence proffered at summary judgment that is unfavorable to their case, Plaintiffs' proper course is to offer their

---

[6] Plaintiffs' footnote 7 is a lengthy recitation of post-litigation communications between DOS and the Alliance for International Exchange (the "Alliance"), a trade organization to which some Sponsors belong. In these communications, the Alliance takes the position that Sponsors are willing to talk to the DOS about the stipend on a going-forward basis. Ex. 12 to Smalls Decl. 2, ECF No. 945-12. The Alliance further clarifies that Sponsors are not able to engage in a discussion with DOS regarding the history of the stipend "[g]iven the ongoing litigation." *Id.* The DOS responded to this email with a vague "reminder" that Sponsors' "obligations with respect to au pair wages are set forth at 22 CFR 62.31(j)(1) and that, in addition to meeting those regulatory requirements for au pair wages, they must operate their au pair programs in conformance with all other **applicable** federal, state, and local laws." *Id.* at 1 (emphasis added). DOS did not, however, state that its previous interpretation of 22 CFR 62.31(j)(1) – as memorialized and distributed in the stipend notices – had changed, nor did it offer any guidance as to which federal, state, and local laws are, in fact, applicable.

12

countervailing evidence, if indeed it exists and is admissible.

B. Plaintiffs Have Not Met Their Burden For Showing That This Testimony Is So Prejudicial That It Should Be Excluded At Any Point, Much Less At The Summary Judgment Phase.

As discussed above, testimony is rarely excluded under Rule 403 at the summary judgment phase, and asking the court to do so is an "extreme measure." *In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859; *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000). In support of that extreme measure, Plaintiffs, spend a single paragraph making unsubstantiated allegations against Colvin, namely that he "selectively invokes… privileges" and has "testif[ied] on the aspects of his State Department tenure that would help their case, but invok[ed] an amorphous privilege on others that might undermine it." Mot. 11. Plaintiffs offer no factual basis for these bald allegations, however, as shown by their conspicuous lack of citations.[7]

---

[7] The only two citations upon which Plaintiffs rely in this entire argument are two passages of deposition testimony, which in no way show a "selective" invocation of privilege. Instead, they contain Mr. Colvin's explanation, and appropriate invocation of, his obligation to maintain attorney-client and deliberative process privileges. Immediately following the passage to which Plaintiffs cite, Mr. Colvin further explains how his testimony methodically complies with, rather than "selective[ly] invok[ing]") these privileges.

> Q. Okay. And understanding that there is a fairly well-settled doctrine or rule that former employees of the Government can't go out and discuss confidential workings of the Government, how is it that you're able to offer this declaration about the inner workings and the intent of the State Department during the time that you were there?
>
> A. I think it's fairly straightforward. If we would go back to the declaration, you'll find that all the statements are footnoted, and those footnotes all refer to public documents. And the -- specifically the stat -- statutes and the regulations themselves. The regulations spell out the thought process that went into the adoption of each of those regulations. So I'm not revealing anything that is not within the public -- this -- that is -- I'm making

13

Moreover, Plaintiffs completely ignore the body of law that permits Colvin to testify, as he has here, regarding what he communicated to Sponsors and others about the stipend and other contextual and historical facts that do not reveal the deliberative process.  *See, e.g.*, *SEC v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2009 WL 211511, at *3 (D. Colo. Jan. 29, 2009) (The deliberative process privilege applies to "pre-decisional" communications, *i.e.* "the give and take of the consultative process … such as drafts, recommendations, proposals, and suggestions….Factual material that does not reveal the deliberative process is not protected.") (quoting *Feshbach v. SEC,* 5 F. Supp. 2d 774, 784 (N.D. Cal. 1997)).

Finally, Plaintiffs miss the mark in arguing that Colvin cannot be a witness in this case because he subsequently wrote a letter on behalf of a Defendant in an unrelated matter.  Even if Plaintiffs were able to show that Colvin was acting as an attorney when sending that letter, "[a]ttorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law or their employment by a party to represent them in litigation …This district has allowed the depositions of counsel of record in pending cases when the deposition relates to the attorney's role as a fact witness rather than the attorney's role in representing a client…." *Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015).

As discussed above, Colvin has limited his testimony to non-privileged, factual

---

    no revelations of any internal proprietary information. Everything I say in this declaration has a reference to a document in the public domain.
Colvin Dep. 46:19-47:18.

matters, and Plaintiffs have provided no basis under existing law to exclude that testimony.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion should be denied, and this Court should consider Mr. Colvin's testimony in making its summary judgment decision.

Dated: April 9, 2018                    Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

*s/ Kathryn A. Reilly*
Kathryn A. Reilly (reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Brett M. Mull (mull@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

***Attorneys for Defendants Agent Au Pair, Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair***

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

*s/ Stephen J. Macri*
Stephen J. Macri
(stephen.macri@ogletree.com)
Joseph B. Cartafalsa
(joseph.cartafalsa@ogletree.com)
Robert M. Tucker
(robert.tucker@ogletreedeakins.com)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1745 Broadway
New York, New York
(212) 492-2071

John B. Fulfree
(jfulfree@putneylaw.com)
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-0020 ext. 221

*s/ Eric J. Stock*
Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301

**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**

*s/ James E. Hartley*
James E. Hartley
(jhartley@hollandhart.com)
Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302

Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

**Attorneys for Defendant Cultural Homestay International**

*s/ Susan M. Schaecher*
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

**Attorneys for Defendants APF Global Exchange, NFP**

*s/ Bogdan Enica*
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair**


*s/ Peggy E. Kozal*
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey (nhuey@gordonrees.com)
Heather K. Kelly (hkelly@gordonrees.com)
Jennifer Arnett-Roehrich (jarnett-roehrich@grsm.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**


*s/ Martha L. Fitzgerald*
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant EurAuPair Intercultural Child Care Programs**

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

***Attorneys for Defendant InterExchange, Inc.*** 

*s/ William J. Kelly III*
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

***Attorneys for Defendant USAuPair, Inc.***

*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
Vance O. Knapp
1700 Broadway, Suite 2100
Denver, CO 80290-2101
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com
vknapp@armstrongteasdale.com

***Attorneys for Defendant GreatAuPair, LLC***

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on April 9, 2018, I have caused to be electronically filed the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE SUMMARY JUDGMENT TESTIMONY OF STANLEY COLVIN, ESQ. [ECF NO. 944]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Diane R. Hazel*