# Exhibit D

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
 2
      Civil Action No. 14-cv-03074-CMA-KMT
 3    _____

 4    VIDEOTAPE DEPOSITION OF:  DAVID KEIL - July 21, 2016
      _____
 5
      JOHANA PAOLA BELTRAN; LUSAPHO HLATSHANENI; BEAUDETTE
 6    DEEELEFS; DAYANNA PAOLA CARDENA CAICEDO; ALEXANDRA
      IVETTE GONZALEZ; on behalf of themselves and others
 7    similarly situated,

 8    Plaintiffs,

 9    v.

10    INTEREXCHANGE, INC.; USAUPAIR, INC.; GREATAUPAIR, LLC;
      EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT AUPAIR;
11    EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS; CULTURAL
      HOMESTAY INTERNATIONAL; CULTURAL CARE, INC. d/b/a
12    CULTURAL CARE AU PAIR; AUPAIRCARE INC.; AU PAIR
      INTERNATIONAL, INC.; APF GLOBAL EXCHANGE, NFP d/b/a
13    AUPAIR FOUNDATION; AMERICAN INSTITUTE FOR FOREIGN STUDY
      d/b/a AU PAIR IN AMERICA; AMERICAN CULTURAL EXCHANGE,
14    LLC, d/b/a GOAUPAIR; AGENT AU PAIR, INC.; A.P.EX.
      AMERICAN PROFESSIONAL EXCHANGE, LLC d/b/a PROAUPAIR;
15    and 20/20 CARE EXCHANGE, INC. d/b/a THE INTERNATIONAL
      AU PAIR EXCHANGE, and ASSOCIATES IN CULTURAL EXCHANGE,
16    d/b/a GOAUPAIR,

17    Defendants.
      _____
18

19

20

21

22

23

24

25
```

H+G

Hunter+Geist, Inc.

303.832.5966
800.525.8490

1900 Grant Street, Suite 1025
Denver, CO 80203

■ www.huntergeist.com
■ scheduling@huntergeist.com

Your Partner in Making the Record

Court Reporting, Legal Videography, and Videoconferencing

                                                                 65

```
10:16:06   1        Q.  And in the course of that preparation
10:16:09   2   session were you shown documents?
10:16:14   3        A.  I was shown exhibits to a pleading that --
10:16:22   4   I believe it was a pleading filed by or for Mr. Hood,
10:16:27   5   and there was an exhibit to that that I was given the
10:16:30   6   opportunity to read.
10:16:31   7        Q.  Are you talking about the declaration or
10:16:34   8   affidavit of Mr. Hood --
10:16:35   9        A.  Yes.
10:16:37  10        Q.  -- pertaining to your role in this case?
10:16:40  11        A.  Yes.
10:16:40  12        Q.  Okay.  At this time, sir, I'm going to
10:16:58  13   hand you my copy.  We will have copies made for
10:17:00  14   everyone.  But I want this to be marked as an exhibit.
10:17:03  15   The document that I will ask our reporter to mark is
10:17:06  16   entitled Response to Joint Motion to Strike Amended
10:17:09  17   Complaint Sections 90 to 94 by Certain Moving
10:17:13  18   Defendants.  Appended to it is the Declaration of
10:17:20  19   Alexander Hood, Esquire.  And once this is marked and
10:17:24  20   handed to you, I would ask you to review it and tell us
10:17:26  21   whether this is the pleading and the declaration to
10:17:29  22   which you just made reference.
10:17:39  23           (Deposition Exhibit 4 was marked.)
10:17:39  24           THE DEPONENT:  Thank you.
10:17:41  25           THE REPORTER:  You're welcome.
```

                                                                 66

```
10:18:17   1           (The deponent perused the exhibit.)
10:18:20   2        A.  Well, I did not read the entire pleading
10:18:25   3   yesterday.  I did peruse it, and based on that, I
10:18:28   4   believe this is either all or part of what I saw
10:18:32   5   yesterday.
10:18:32   6           MS. LOUIS:  And, Joan, before you begin
10:18:35   7   questioning, we don't have a copy of that.
10:18:37   8           MS. LUKEY:  I'm actually not going to
10:18:39   9   question him until I can have copies made.
10:18:41  10           MS. LOUIS:  Okay.
10:18:41  11        Q.  (BY MS. LUKEY)  Just one other question,
10:18:43  12   which is had you ever previously seen either the
10:18:46  13   pleading or Mr. Hood's declaration?
10:18:47  14        A.  I had not.
10:18:49  15           MS. LUKEY:  We're not going to break quite
10:18:51  16   yet, although I imagine you'll need a break in about
10:18:54  17   15 minutes.  But I'm going to ask that this be copied,
10:18:57  18   and then we'll go back to questions about it.  Could I
10:19:04  19   have the copy, sir.
10:19:07  20           THE DEPONENT:  Certainly.
10:19:08  21           MS. LUKEY:  Thank you.
10:19:10  22        Q.  (BY MS. LUKEY)  So this may be slightly
10:19:13  23   disjointed, but in order to ensure that everybody has
10:19:15  24   Exhibit 4, we'll leave that subject.  It will come up
10:19:18  25   in the ordinary course anyway as we go forward with the
```

                                                                 67

```
10:19:22   1   other questioning.  So let us now, for 15 or 20 minutes
10:19:27   2   before we take a break, go into the issues of the
10:19:31   3   actual work that you performed.  But let me, before I
10:19:36   4   forget myself, ask you, what are the terms of your
10:19:39   5   employment?
10:19:39   6        A.  I'm sorry?
10:19:41   7        Q.  What is your retention agreement?
10:19:42   8        A.  I don't recall my agreement with Mr. Hood
10:19:45   9   per se.  I can tell you what my standard fee agreement
10:19:48  10   is.
10:19:49  11        Q.  Do you recall what you are charging
10:19:51  12   Towards Justice or Boies Schiller as your fee?
10:19:53  13        A.  My -- my hourly fee currently is $250 an
10:19:58  14   hour.  I believe the fee that I charged Mr. Hood was a
10:20:03  15   slight reduction on that amount.  I think we were just
10:20:05  16   going through a fee change at the first of this
10:20:08  17   year -- or the first of 2015.  So I don't recall the
10:20:12  18   fee.  It might have been $200 an hour.  We were -- I
10:20:17  19   was at $200 an hour for many, many years.  So I don't
10:20:20  20   remember which fee we charged him.
10:20:22  21        Q.  I'm going to ask you again if you can to
10:20:23  22   keep your voice up, sir.
10:20:24  23        A.  Yes.  I'm sorry.
10:20:26  24        Q.  For the benefit of those at the end of the
10:20:28  25   table.  Sir, did you give Mr. Hood, Towards Justice, a
```

                                                                 68

```
10:20:33   1   reduced fee because they are a not for profit, or did
10:20:38   2   you just --
10:20:39   3        A.  No.  I --
10:20:40   4        Q.  -- have a lower fee at one point?
10:20:42   5        A.  No.  I had a lower fee.  Throughout the
10:20:45   6   recession of 2008 through about 2014 I did not raise my
10:20:49   7   rates at all, so my rates remained 200 an hour
10:20:54   8   throughout that time.  I charge less when working for
10:20:56   9   the U.S. District Court 'cause they pay less.  But all
10:20:59  10   private clients paid 200 an hour until sometime in late
10:21:03  11   '14, early '15.  I don't really recall where Mr. Hood
10:21:09  12   falls in that, but since early 2015 my rate's been $250
10:21:13  13   an hour.
10:21:13  14        Q.  Is your fee arrangement with Boies
10:21:17  15   Schiller different from or the same as that you have
10:21:19  16   with Towards Justice?
10:21:20  17        A.  The different -- my agreement with Boies
10:21:23  18   Schiller is at my current hourly rate of 250 an hour.
10:21:27  19   I generally, when I'm giving testimony or a deposition,
10:21:31  20   I charge my normal hourly rate because it is taking me
10:21:36  21   away from normally billing -- normal billing to other
10:21:39  22   clients, so it replaces the income I'm losing from not
10:21:42  23   being -- working for other cases today.
10:21:44  24        Q.  Before I move on, you just referenced
10:21:46  25   doing work for the district court.
```

                                                  17 (Pages 65 to 68)