IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al;
and those similarly situated,

    Plaintiffs,

v.

INTEREXCHANGE, INC., et al;

    Defendants.

---

**DEFENDANT INTEREXCHANGE, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT[1]**

---

Defendant InterExchange, Inc. ("InterExchange") submits this reply in support of its Motion for Summary Judgment.

**I.    INTRODUCTION.**

Consider the following statements about the au pair stipend:

- "The weekly stipends for the standard Au Pair Program are directly connected to the federal minimum wage."

- "The Au Pair stipend is based on a U.S. Department of Labor's formula that includes credit for the room and board Host Families provide for their Au Pairs.

---

[1] InterExchange joins the master reply filed on behalf of certain defendants in all respects and addresses InterExchange-specific issues herein. The omission or any claim or element from this brief is not intended to be a concession or waiver of that issue.

48241801.2

The room and board credit currently is 40% of an au pair's credited compensation."

- "The following are the increases in weekly stipend (including room and board) for the standard Au Pair participants as follows:

    Phase I – July 24, 2007          $157.95

    Phase II – July 24, 2008         $176.85

    Phase III – July 24, 2009        $195.75

Plaintiffs ask this Court to hold that InterExchange—a non-profit, and in no way the "multimillion dollar" behemoth that Plaintiffs suggest—is liable under multiple legal theories for making statements like these and for applying them to the stipend component of its au pair program.  But these are not InterExchange's statements, nor those of any other au pair sponsor.  They are the statements of the U.S. Department of State (DOS), the agency charged by Congress with the administration of the au pair program.  (Doc. #861-16 at 1004, 1008.)  DOS made these exact statements to au pair program sponsors in the form of formal notices.  (Id.)  Plaintiffs admit as much in their Third Amended Complaint, as they affirmatively allege that DOS sent these notices to the sponsors.  (Doc. #983 at ¶¶ 169-72.)  The notices are affirmative representations from DOS to the sponsors about the agency's interpretation of its regulation regarding the stipend.  The notices communicate a formula that originated with the 1995 regulations and has remained consistent through and after subsequent regulation amendments.  See 60 Fed. Reg. 8551 (Feb. 15, 1995); Doc. #861-16 at 1004 (Fact Sheet dated Mar. 13, 1997); Doc. #861-16 at 1005 (DOS Weekly Wage Due to Au Pair

Program Participants dated 2001); Doc. #861-16 at 1008 (DOS Notice Federal Minimum Wage Increase dated June 24, 2009).  Indeed, the notion of a "uniform national stipend" came from the United States Information Agency, DOS' predecessor for purposes of the au pair program, *not from InterExchange or another sponsor.*  60 Fed. Reg. 8551.  Although Plaintiffs claim that the sponsors are burying their heads in the sand with respect to the stipend, see Doc. #942 at p. 32, they have never been able to answer to the fact that at no time in the history of the au pair program has DOS counseled or reprimanded InterExchange for its communications about the stipend, nor has the DOS ever declared that state and local wage laws apply, even though they have done so *explicitly* with other J-1 programs.

DOS' long and consistent guidance about the stipend is directly relevant to each claim that Plaintiffs bring and to the reasons why InterExchange is entitled to summary judgment in this case.  Plaintiffs cannot in good faith argue that this guidance is meaningless, as it clearly represents agency interpretation of its regulations.[2]  Although Plaintiffs cheekily call Defendants' position with respect to the stipend the "DOS website" defense, see Doc. #942 at p. 34, they themselves have referred to the DOS website as the "virtual front door" to the au pair program.  (Doc. #983 at ¶ 162.)  All Plaintiffs can muster with respect to the notices is a vague representation that DOS made a "mistake," without any authority whatsoever.  It is undisputed that the DOS is

---

[2] Plaintiffs certainly cannot disregard these official notices if they believe a Washington Post article to be dispositive authority.  (See Doc. #942 at p. 32.)  Even the article does not say what Plaintiffs claim it says.  The article stated that sponsors must comply "with all other *applicable* federal, state, and local laws."  (Doc. #942 at p. 32.)  The State Department has *never* produced any regulation, notice, or other authority stating that state or local wage laws apply to the au pair program.

48241801.2

well aware of how the sponsors, including InterExchange, communicate the stipend. If InterExchange were violating the regulations, DOS could simply revoke its designation. 22 C.F.R. § 62.31(n). Yet, DOS has never reprimanded, disciplined or sanctioned InterExchange for violating the regulations as to the stipend, much less revoked its designation. (Doc. #861-14 at 932-33 ¶ 25.) When the evidence is examined, Plaintiffs' claims and conclusions disintegrate into little more than wishful thinking. InterExchange is entitled to summary judgment on all claims.

## II.    THE "CONSPIRACY" REMAINS PURE SPECULATION.

As a careful review of their antitrust "InterExchange" section makes starkly clear, Plaintiffs have no evidence whatsoever that InterExchange was part of any conspiracy to fix the stipend, relying only on vague allegations of "motive" and "opportunity." (Doc. #942 at pp. 41-43.) They offer no evidence of "agreement." Plaintiffs continue to either misstate evidence related to InterExchange or attempt to sweep InterExchange up in broad statements about sponsors generally that do not hold true as to InterExchange. For example, Plaintiffs disingenuously state that InterExchange represents the stipend as "exactly" $195.75. (Doc. #942 at p. 42.) Their only support for that statement is evidence that at times InterExchange has represented that the stipend "is $195.75." (Id) As noted above, those statements do not differ from the guidance of DOS itself, which varies as to whether $195.75 is described as "the stipend" or as a minimum stipend. Nor does InterExchange use "form contracts that made *au pairs* and host families agree to $195.75 per week." (Doc. #942 at p. 60.) InterExchange's contracts clearly state that $195.75 is a minimum. (Doc. #861-14 at 938, 940; #861-15 at 956, 958.) Moreover,

4

even if true, neither allegation is evidence—much less evidence sufficient to survive summary judgment--of a *conspiracy* with other sponsors to fix the stipend.

Plaintiffs suggest that sponsors had intimate knowledge of each other's fees and identical stipends to an extent sufficient for a jury to infer that such information was circulated as part of the conspiracy.  (See Doc. #942 at p. 26, 41-42.)  As noted in its Motion for Summary Judgment, InterExchange does not collect information about or monitor what host families pay above $195.75.  (Doc. #859 at p. 7.)  InterExchange certainly could not have participated in an information exchange when it did not have any information to share, nor could other sponsors have intimate knowledge of InterExchange's stipends if InterExchange did not have such knowledge itself.

Plaintiffs also continue to insist that InterExchange's scam warnings are evidence of a conspiracy.  (Doc. #942 at p. 27.)  They completely fail to acknowledge, much less address, the specific scam emails that InterExchange has produced in this case which demonstrate the truth of InterExchange's representations.  (Doc. #861-14 935 at ¶ 35; #861-17 1035-36.)  Moreover, Plaintiffs do not explain how those warnings, whether accurate or not, are evidence of a conspiracy with other sponsors.

Plaintiffs make a lot of noise about "conspiracy" but in reality offer no evidence of an agreement.  InterExchange is entitled to summary judgment on the antitrust claim

### III. PLAINTIFFS FAIL TO REBUT THE EVIDENCE THAT INTEREXCHANGE IS NOT A JOINT EMPLOYER.

Plaintiffs present the same arguments regarding joint employment as to InterExchange nearly verbatim in their Response (Doc. #942 at pp. 116-131.) and their Motion for Partial Summary Judgment (Doc. #915 at pp. 12-19).  InterExchange

5

48241801.2

thoroughly explained in its Motion for Summary Judgment (Doc. # 859 at pp. 4-9) and its response to Plaintiff's Motion for Partial Summary Judgment (Doc. #931 at pp. 4-12) why it is not a joint employer of the au pairs that it sponsors.  Rather than rebut this information, Plaintiffs merely repeat now what they have said before, which did not address InterExchange specifically.  InterExchange is entitled to summary judgment on the issue of joint employment.

## IV. PLAINTIFFS PROVIDE NO EVIDENCE THAT INTEREXCHANGE REQUIRES TRAINING BEYOND THAT REQUIRED BY DOS.

Plaintiffs make the odd argument that the fact that at one time InterExchange required au pairs to complete some or all of their DOS-mandated training in New York rather than in their home countries makes the training compensable.  (Doc. #942 at p. 151.)  The regulations do not specify a location for the training.  Plaintiffs also fail to point to any authority that location by itself matters.  What Plaintiffs do not do is point to any evidence that the *content* of the training extends beyond that which is required by 22 C.F.R. §§ 62.10 and 62.31.  Plaintiffs concede that they are not entitled to compensation for the DOS-mandated training.  ("Plaintiffs are not seeking compensation for the mandatory training required by the *au pair* program regulations." [Id.].)

The lack of evidence that InterExchange's training goes beyond that mandated by DOS is exactly why the New York Department of Labor letter is on point.  Because the employer addressed in the letter did not require training beyond that required by New York State, the training was not specific to that employer and was non-compensable.  N.Y. St. Dep't of Labor, Op. No. RO-08-0020.  Plaintiffs never rebut the

6

48241801.2

notion that the training is not specific to InterExchange or to any host family. Indeed, the training would be useful for a variety of careers and pursuits. Moreover, the notion that the training is for the benefit of the sponsors is ridiculous. (See Doc. #942 at pp. 151-153.) Au pairs cannot become au pairs without it, and the training focuses on information DOS deems important for an au pair exchange visitor to live with and provide child care for a host family. The training is for the benefit of the au pairs and their host families, not InterExchange.

## V. AU PAIRS ARE EXEMPT UNDER COLORADO WAGE ORDER.

The cases to which Plaintiffs cite, Kennett v. Bayada Home Health Care, Inc., 135 F. Supp. 3d 1232 (D. Colo. 2015) and Jordan v. Maxim Healthcare Services, Inc., No. 15-cv-1372, 2016 WL 1059540 (D. Colo. Mar. 17, 2016) are inapposite because they involved "companion" employees who were employed by a third party and *not by a household or family member*. Kennett, 135 F. Supp. 3d at 1245-46 (companion exemption did not apply because workers were employees of third party and court found they were not jointly employed by households); Jordan, 2016 WL 1059540, at *5 (same and adopting holding of Kennett). Plaintiffs do not dispute, and in fact affirmatively allege, that host families are employers of au pairs. (Doc. #983 at ¶ 319.) Au pairs are domestic employees, as they live with a family and provide childcare services to the family in the family's home. Although Plaintiffs focus on the preamble language to the CMWO, which has changed, they never address—and thus concede-- the fact that the domestic employee exemption exempts domestic employees from *all* provisions of the Colorado Minimum Wage Order, which includes minimum wage and

7

overtime.  (Doc. #859 at pp. 12-13.)  InterExchange is entitled to summary judgment on the Colorado wage claims.

## VI. <u>INTEREXCHANGE IS ENTITLED TO SUMMARY JUDGMENT ON THE FLSA OVERTIME CLAIM.</u>

Plaintiffs acknowledge that their overtime claim against InterExchange cannot proceed without a viable class representative, and Beltran is not such a representative. (Doc. #942 at p. 157.)  However, they erroneously state that the reason that the class wants for a representative is because their motion to amend was denied.  <u>Id.</u>  Their motion to amend sought to add named plaintiffs sponsored by other defendants, but none by InterExchange.  (Doc. #561 at p. 2.)  Plaintiffs have known since March 31, 2016, when this Court adopted in relevant part Magistrate Judge Tafoya's Recommendation on Defendants' Motions to Dismiss (Doc. #258), that Plaintiff Beltran could not serve as representative for the overtime class.  They have not sought to add a named plaintiff, and thus InterExchange is entitled to summary judgment on the claim.[3]

## VIII. <u>PLAINTIFFS OFFER INFLAMMATORY ACCUSATIONS, BUT NO EVIDENCE, TO SUPPORT THEIR FRAUD CLAIMS.</u>

Setting aside the issue of whether state or local wage laws apply, Plaintiffs make the extraordinary assertion that $195.75—the number derived from a formula communicated to sponsors for more than 20 years as "the stipend" or the "minimum stipend"—is itself illegal *in all cases*.  Plaintiffs allege that even though the United States agency responsible for regulating the au pair program relayed a consistent message

---

[3] The Court's Order of April 9, 2018 does not change this conclusion.  (Doc. # 977). Although the Court reversed its previous order denying Plaintiffs' Motion to Amend, the Court's order relates only to three proposed named plaintiffs and three subclasses related to Au Pair in America and Cultural Care.  (<u>Id.</u> at p. 3, 8.)

8

48241801.2

about the stipend, InterExchange committed fraud by repeating that message to au pairs and host families. (Doc. #942 at p. 71.) Such an untenable claim fails.

Plaintiffs trot out a litany of supposed "lies" by InterExchange about the stipend. (Doc. # 942 at pp. 79-80.) In truth, these so-called "lies" do not differ in content from the communications from DOS to the sponsors about the stipend. And the record is completely void of any evidence that DOS considered these communications to be "lies." Like all sponsors, InterExchange is required to submit an audit, as well as its complete marketing materials, to DOS each year. 22 C.F.R. § 62.31(m).

Moreover, Plaintiffs fail to explain how they can prove detrimental reliance. Even if Plaintiffs could prove misrepresentations, by their own admissions au pairs received exactly what they were told they would receive - $195.75. InterExchange did not pay au pairs; host families did. Plaintiffs have no evidence that misrepresentations caused detrimental reliance in the form of suppressed wages because they fail to account for the actual employer and payor of the au pairs. Simply stating that au pairs were induced to accept underpayment ignores the fact that it was not up to InterExchange how much they would be paid above the DOS minimum. (See Doc. #942 at p. 101.)

As to their claim under New York's consumer protection statute, Plaintiffs grossly overstate the Second Circuit's decision. The court was considering the matter on a motion to dismiss and was careful to note that it was limiting its decision to the case before it and was mindful of the procedural posture. Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 119, 123 (2d Cir. 2013). Moreover, at least one court has rejected the expansive reading of the Cruz court. See Cline v. TouchTunes Music Corp., 211 F.

9

48241801.2

Supp. 3d 628, 634-35 (S.D.N.Y. 2016) (rejecting Cruz's expansive reading and finding that accepting payments in New York, a choice-of-law provision, and New York-based servers did not, at the motion to dismiss stage, state a claim under the New York statute).  Notably, the Goshen decision was rendered by a New York state court interpreting its own statute, and the court specifically warned against an expansive reading.  Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 325 (N.Y. App. Ct. 2002).

Plaintiffs' negligent misrepresentation and constructive fraud claims also fail because, as noted above in the context of other claims, Plaintiffs cannot, in fact, prove that InterExchange made misrepresentations or that au pairs detrimentally relied.

## IX. PLAINTIFFS' RICO "EVIDENCE" IS A FARCE.

As to InterExchange, Plaintiffs' allegation that InterExchange intimidated au pairs by making them believe they would be "punished" if they accepted more than $195.75 is outrageous.  They cite only to InterExchange's blog, which informs au pairs about scammers that often prey on au pairs.  (Doc. #942 at p. 92 n.209.)  They continuously and deliberately misstate the blog, which stated that scammers *may* offer more than $195.75.  InterExchange has disclosed as evidence examples of those scam emails. InterExchange has never stated that any offer above $195.75 is a scam.  Plaintiffs have never addressed, much less offered any evidence, related to those emails.

## X. PUNITIVE DAMAGES.

The DOS communications and lack of any action against the sponsors negates any suggestion of conscious wrongdoing or egregious behavior.  As to InterExchange, Plaintiffs' claim for punitive damages must be dismissed.  (Doc. #942 at pp. 115-16.)

10

48241801.2

DATED this 13th day of April, 2018.

        Respectfully submitted,

        *s/ Brooke A. Colaizzi*
        Brooke A. Colaizzi
        Heather F. Vickles
        Raymond M. Deeny
        Joseph H. Hunt
        Alyssa L. Levy
        SHERMAN & HOWARD L.L.C.
        633 Seventeenth Street, Suite 3000
        Denver, CO 80202
        Tel: (303) 297-2900
        Fax: (303) 298-0940
        Email: bcolaizzi@shermanhoward.com
        Email: hvickles@shermanhoward.com
        Email: rdeeny@shermanhoward.com
        Email: jhunt@shermanhoward.com
        Email: alevy@shermanhoward.com

        ATTORNEYS FOR DEFENDANT
        INTEREXCHANGE, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2018, I electronically filed the foregoing **DEFENDANT INTEREXCHANGE, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, CO  80218
Email: alex@towardsjustice.org

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
E-mail: LStone@Nixonshefrin.com
E-mail: kcraigmile@nixonshefrin.com

Brian A. Birenbach
THE RIETZ LAW FIRM, L.L.C.
114 Village Place, Suite 301
Dillon, CO  80435
Email: brian@rietzlawfirm.com

Kathryn A. Reilly
Natalie E. West
Brett M. Mull
V. William Scarpato III
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver CO  80202-5647
Email: reilly@wtotrial.com
Email: West@wtotrial.com
Email: Mull@wtotrial.com
Email: Scarpato@wtotrial.com

William J. Kelly III
Chanda M. Feldkamp
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO  80202
Email: wkelly@kellywalkerlaw.com
Email: cfeldkamp@kellywalkerlaw.com

Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Email: aahubbard@hollandhart.com
Email: jsbender@hollandhart.com

48241801.2

Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1745 Broadway, 22nd Floor
New York, NW 10019
Email: joseph.cartafalsa@ogletree.com
Email: Robert.tucker@ogletree.com
Email:  Stephen.macri@ogletree.com

Martha L. Fitzgerald
David B. Meschke
Margo J. Arnold
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Email: mfitzgerald@bhfs.com
Email: dmeschke@bhfs.com
Email: marnold@bhfs.com

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
Kevin P. O'Keefe
Samuel N. Rudman
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 82110
Email: joan.lukey@choate.com
Email: rbuchanan@choate.com
Email: mgass@choate.com
Email: jwolosz@choate.com
Email: lkruzer@choate.com
Email: kokeefe@choate.com
Email: srudman@choate.com

Thomas B. Quinn
Peggy E. Kozal
Jennifer W. Vedra
Nathan A. Huey
Jennifer Arnett-Roehrich
GORDON & REES, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email: tquinn@gordonrees.com
Email: pkozal@gordonrees.com
Email: jvedra@gordonrees.com
Email: nhuey@gordonrees.com
Email: jarnett-roehrich@gordonrees.com

James M. Lyons
Jessica L. Fuller
Diane R. Hazel
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Email: jlyons@lrrc.com
Email: jfuller@lrrc.com
Email: dhazel@lrrc.com

Meshach Y. Rhoades
Martin Estevao
Vance O. Knapp
ARMSTRONG TEASDALE LLP
4643 S. Ulster St., Suite 800
Denver, CO  80237
Email: mrhoades@armstrongteasdale.com
Email: mestevao@armstrongteasdale.com
Email: vknapp@armstrongteasdale.com

48241801.2

Bogdan Enica
Bogdan Enica, Attorney at Law
111 Second Avenue, NE, Suite 213
St. Petersburg, FL  33701
Email: Bogdane@hotmail.com

Susan Penniman Klopman
H & K Law, LLC
3900 East Mexico Ave, Suite 330
Denver, CO 80210
Email: sklopman@hklawllc.com

Sigrid S. McCawley
Sabria McElroy
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Email: smccawley@bsfllp.com
Email: smcelroy@bsfllp.com

Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Email: estock@gibsondunn.com

Sean P. Rodriguez
Juan P. Valdivieso
Boies Schiller Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Email:  srodriguez@bsfllp.com
Email:  jvaldivieso@bsfllp.com

Matthew L. Schwartz
Peter M. Skinner
Dawn L. Smalls
Randall W. Jackson
Joshua J. Libling
Byron Pacheco
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY  10022
Email:  mlschwartz@bsfllp.com
Email:  pskinner@bsfllp.com
Email: dsmalls@bsfllp.com
Email:  rjackson@bsfllp.com
Email: jlibling@bsfllp.com
Email: bpacheco@bsfllp.com

James E. Hartley
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO  80302
Email: jhartley@hollandhart.com


*s/ Laura Lewis*

14

48241801.2