IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

       Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

       Defendants.

---

**DEFENDANT GREATAUPAIR, LLC'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

CONCLUSION ................................................................................................................... 5

# TABLE OF AUTHORITIES

**Cases**

*Martinez v. CO2 Servs., Inc.*, 12 F. App'x 689 (10th Cir. 2001).................................... 1, 2

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ........................................ 2

Defendant GreatAuPair, LLC ("GAP"), by and through its undersigned counsel, hereby respectfully submits this Reply in support of its Motion for Summary Judgment on the single antitrust claim asserted against GAP, and further states as follows:[1]

## INTRODUCTION

Plaintiffs' two-page response presents no evidence whatsoever that GAP—a feared, competitive newcomer with technological prowess—consciously joined an alleged long-standing agreement among the designated J-1 sponsors to fix the au pair weekly stipend at exactly $195.75. (Pl. Resp. at 45–47)  In fact, after years of broad document discovery and dozens of depositions, Plaintiffs <u>cannot identify a single word or action suggesting *any* communications about the stipend between GAP and the other J-1 sponsors, much less an inference that GAP consciously "acceded to the conspiracy's terms in order to be accepted by the incumbents</u>."  (*Id.* at 45)  Not surprisingly, Plaintiffs do not even attempt to contradict the obvious: In communicating au pair compensation requirements following its late designation as a sponsor in 2014, GAP made no agreement with anyone and simply followed consistent Department of State ("DOS") guidance in official notices and website postings that set the weekly stipend for au pairs at $195.75. (GAP Mtn. at 7)

Instead, in a desperate attempt to sway this Court into believing that a genuine factual issue exists, Plaintiffs misstate the record and concoct baseless theories that cannot be used to defeat summary judgment.  *See, e.g.*, *Martinez v. CO2 Servs., Inc.*,

---

[1] GAP also joins Defendants' Joint Reply in Support of Motion for Summary Judgment filed April 13, 2018, and respectfully incorporates by reference all applicable legal standards and arguments set forth therein.

12 F. App'x 689, 694–95 (10th Cir. 2001) ("Because the party opposing a motion for summary judgment must set forth specific facts to defeat the motion, . . . unsupported conclusory allegations . . . do not create a genuine issue of fact. . . . Similarly, mere speculation unsupported by evidence is insufficient to resist summary judgment.") (internal marks and citations omitted). Plaintiffs' failure to present *any* credible evidence for the antitrust claim against GAP warrants summary judgment. *See id.* ("To be entitled to summary judgment, defendant is not required to disprove plaintiff's claims. While defendant bears the burden of showing the absence of a genuine issue of material fact, defendant need not negate plaintiff's claim, but need only point to an absence of evidence to support plaintiff's claim.") (internal marks and citations omitted).

## ARGUMENT

### Plaintiffs Do Not—and Cannot—Raise a Genuine Factual Dispute

Because no evidence even suggests that GAP "had a conscious commitment" to "accede to the conspiracy's terms in order to be accepted by the incumbents," Plaintiffs' are left scrambling for ways to fabricate a genuine factual dispute. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984); (Pl. Resp. at 45). Plaintiffs' arguments lack any merit and should be summarily disregarded.

First, Plaintiffs' counsel assert—without any evidence—that GAP "disable[d]" the ability for potential au pairs to indicate a desired wage on GAP's website "in order to be accepted by the other sponsors at the Alliance." (Pl. Resp. at 45–46) Plaintiffs apparently believe that this was done to allay another sponsor's concern that "[GAP's] service allowed users to 'easily search/compare rates for care givers . . . [that] would

highlight the differences between domestic nanny costs . . . versus an au pair' and that '[c]are giver[s] and [j]ob provider[s] can communicate directly and make their own agreement . . . .'" (*Id.* at 45, fn. 125 (also referencing irrelevant deposition transcript portions pertaining only to Care.com)).  To the contrary, www.greataupair.com still allows anyone, including potential au pairs and host families, to easily search through and compare all posted childcare positions using the "slider tool" to set a minimum and/or maximum desired wage across multiple caregiver categories. (GAP Appx. p. 0008 - Pitts Dep. at 45:9–15); GAP Appx. p. 0061 - Pitts Affidavit at ¶ 4].  Individual caregivers and families can also communicate and negotiate directly through the site. (GAP Appx. p. 0061 - Pitts Affidavit at ¶ 5).  If the ability to easily communicate and "search/compare rates for care givers" was the key concern for the sponsor "lobbying the Department of State and the Alliance to block [GAP]'s entrance into the market and acceptance into the Alliance," as Plaintiffs' counsel put it, then the evidence shows that GAP took no action to address it or to change its unique, competitive posture in any way.  Of course, when GAP was designated as a sponsor in 2014, it was ordered by the DOS to create an exclusive J-1 au pair online platform on www.greataupairusa.com, which communicated au pair compensation requirements based on DOS guidance setting the weekly stipend for au pairs at $195.75.  (GAP Appx. p. 0004 - Pitts Dep. at 28:21–29:6; GAP Appx. p. 0061 - Pitts Affidavit at ¶ 6)  GAP made no other substantive changes to its original website, which continues to cater to au pairs and other international childcare workers.  (GAP Appx. p. 0061 - Pitts Affidavit at ¶ 7)  Importantly, even if GAP had disabled the ability for users to indicate desired wages and compare

3

various positions—which is not true—there is simply no evidence that GAP communicated about the au pair stipend with other sponsors at all, much less negotiated and executed an alleged quid pro quo agreement to help fix au pair wages at the DOS-set stipend amount. (*See* Pl. Resp. at 45 (arguing that "[GAP] acceded to the conspiracy's terms in order to be accepted by the incumbents")). Plaintiffs' unfounded speculations do not raise any genuine factual issue.

Second, Plaintiffs' counsel knowingly exploit an obvious typo in an email from 2010 (years before GAP's designation as a sponsor) to make a false, inflammatory statement that is neither relevant to the claim against GAP nor admissible for consideration. (Pl. Resp. at 46) GAP never described the au pair stipend as "slave labor wages." As Plaintiffs' counsel must be fully aware from using the complete email in deposition, the beginning of the employee's email response to the au pair applicant begins: "Dear Carlo, This is the first we have ever heard of GreatAuPair referred to as a '[c]heap labor or slave labor website'. *That is certainly not how we want to be seen*." (GAP Appx. p. 0063 - Email Response from GAP Employee to Au Pair Candidate, "Re: Is this a cheap labor web site?" (September 22, 2010) (emphasis added)) As GAP's CEO further explained at his deposition, the errant sentence in the email reading, "However, the salary set for this au pair visa program (by the USDOS) is slave labor wages," was clearly intended to include the phrase "*is not*" following "(by the USDOS)." (GAP Appx. p. 0066 - Pitts Dep. at 50:15–51:17) Plaintiffs' counsel's attempt to mislead the Court on this point is somewhat surprising, since it has nothing to do with the antitrust claim and would not help support the foreclosed speculation that GAP

somehow "acceded to the conspiracy's terms in order to be accepted by the incumbents." (Pl. Resp. at 45)

Third, Plaintiffs reiterate the expected survey results showing au pair stipends hovering around $195.75 as paid by host families. As explained in the Motion, GAP communicated its good-faith understanding to au pairs and host families that the weekly stipend was defined or set at $195.75 based on official DOS notices and website postings, which Plaintiffs do not attempt to dispute. (GAP Mtn. at 7) Moreover, Plaintiffs do not address GAP's statements referring to the stipend as a negotiable "minimum" wage or "starting salary," which rebuts Plaintiffs' conspiracy theory as alleged. (GAP Mtn. at 7–8) Above all, Plaintiffs do not—and cannot—present any evidence even suggesting that GAP communicated with other sponsors about the stipend amount, let alone that GAP gave or accepted anything to fulfill an imagined quid pro quo arrangement with existing sponsors. (*See* Pl. Resp. at 45)

## CONCLUSION

For the reasons stated above, Defendant GreatAuPair, LLC respectfully requests that the Court enter an order granting summary judgment in its favor on Count I of the Second Amended Complaint.

Respectfully submitted this 13th day of April, 2018.

*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
Armstrong Teasdale LLP
4643 S. Ulster Street, Suite 800
Denver, Colorado 80237
720-722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

*Attorneys for Defendant*
*GreatAuPair, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13 day of April, 2018, a true and correct copy of the foregoing **DEFENDANT GREATAUPAIR, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served on all counsel of record through the Court's CM/ECF electronic filing system.

*/s/ Alyssa R Gilliam*
Alyssa R Gilliam