IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.,

Plaintiffs,

v.

INTEREXCHANGE, INC., et al.,

Defendants.

---

**CULTURAL HOMESTAY INTERNATIONAL'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (ECF No. 863)**

To survive summary judgment, Plaintiffs "must first demonstrate the existence of an agreement" as to each defendant. *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999). Plaintiffs' response does not meet that burden – certainly not with respect to CHI.

In fact, the response does nothing to undermine two undisputed facts: (1) for years, the Department of State ("DOS") expressly stated that $195.75 (or lesser amounts in the early years) was a lawful weekly stipend; (2) CHI decided to market the au pair program as an "affordable childcare alternative," as it had every right to do. Therefore, it made perfect economic sense for CHI, acting unilaterally, to advertise that the weekly stipend was $195.75, the lowest lawful amount.

In the face of these undisputed facts, Plaintiffs' purported direct and circumstantial evidence that CHI participated in an alleged conspiracy is all smoke and mirrors. Thus, this is not an antitrust case because there is no conspiracy.

## Argument

**Plaintiffs' Direct Evidence.**  Plaintiffs attempt to establish an antitrust conspiracy and connect CHI to it by offering only two pieces of allegedly "direct" evidence.[1]  First, Plaintiffs note that CHI is a member of the Alliance.  Opp. at 10-11.  Second, Plaintiffs rely on their private investigator's conversation with three employees who worked for other sponsors.  *Id.* at 16-19.

With respect to CHI's participation in the Alliance, "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement."  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015).  Plaintiffs cite to only three documents related to the Alliance that even reference CHI; none establishes or implicates CHI in any conspiracy:

- The first is an email from the Alliance executive director to members attaching an April 19, 2011 meeting agenda.  Opp. at 11 n.7, PRA 1470.  The stipend is not referenced in this document at all.

- The second is the minutes from the April 19, 2011 Alliance meeting, which CHI attended.  *Id.* at 11 n.7, PRA 787.  Plaintiffs disingenuously suggest that a "minimum wage violation" was discussed in the meeting.  While this phrase appears in the document, it is in the context of performance bonds and has nothing to do with the stipend.

- The third is a February 2016 email authored by CHI's executive director Tom Areton to CHI's lawyers Jim Hartley and Tom Harriman, as well as CHI directors and the Alliance executive director.  *Id.* at 11 n.9, PRA 647.  The email was sent over *two years* after this case was filed, and mentioned points Mr. Areton wanted to make *in this lawsuit*.  After noting that adjustments to the stipend could render the program unaffordable, Mr. Areton wrote, "The time is now to contact Secretary Clinton or our legislators."  This email represents unilateral action

---

[1]  Plaintiffs also assert that sponsors openly acknowledge that "wages" are uniform, but the evidence they cite does not mention CHI.

2

relating to petitioning and lobbying activities, which are protected activities and are not evidence of conspiracy. *GF Gaming Corp. v. City of Black Hawk*, 405 F.3d 876, 884 (10th Cir. 2005).

With respect to the private investigator conversations with three sponsor employees, the following facts are undisputed: (i) none of the individuals who spoke with him were CHI employees at the time of the conversations; (ii) Carrie Crompton, who would eventually join CHI as an employee, had no basis to know anything about CHI's approach to the stipend when she answered the investigator's leading questions; and (iii) she clarified her comments in deposition. Defs.' Appx., p. 597 – Crompton Dep., at 125:8:11 (no awareness of any agreement among sponsors to set the stipend).

**Plaintiffs' Indirect Evidence**. When an antitrust plaintiff relies on circumstantial evidence to prove concerted action, "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Abraham v. Intermountain Health Care, Inc.*, 461 F.3d 1249, 1257 (10th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)).

With respect to Plaintiffs' "plus factors," only two categories of evidence touch on CHI: the sharing of business methods with other sponsors, Opp. at 20 nn.29, 31, and that CHI "admit[s] . . . the uniformity" of the stipend. *Id.* at 21 n.38. Plaintiffs argue that both are rationally explained by a conspiracy.

In response, CHI incorporates by reference points raised in Defendants' joint reply on these issues. Joint Reply at 11-12 (ECF. No. 988). Additionally, none of Plaintiffs' conclusions concerning CHI are supported by the underlying evidence. Equally important, none of Plaintiffs' evidence tends to exclude the inference that CHI

3

was rationally acting unilaterally, in its own self-interest, and without any agreement with other sponsors:

- Plaintiffs claim that CHI "confessed its motives to enter the conspiracy." Opp. at 43 n.114, PRA 647. But the referenced document does not reflect a motive to participate *in the alleged conspiracy*. Instead, the thrust of Mr. Areton's email is his desire to keep the au pair program affordable. If the cost of the program were to increase substantially, he was concerned that it would be "completely unaffordable to 99% of AP families." Mr. Areton's desire to keep the program affordable is entirely consistent with CHI's unilateral interest in marketing the au pair program as "affordable childcare." Defs.' Appx., p. 467, 471 – Reilly Decl., ¶¶ 28, 39.

- They also allege that Carrie Crompton, who spoke to Plaintiffs' private investigator, "brought her knowledge of the conspiracy with her to CHI." Opp. at 43 n.115, PRA 4373. But this record cite merely establishes that Ms. Crompton's current employer at the time she was deposed was CHI. Plaintiffs cite to no evidence of what Ms. Crompton did or did not do when she was at CHI.

- Next, plaintiffs argue that CHI "abide[s] by the wage-fixing agreement" because the word "minimum" did not appear on the website and CHI continues to advertise the stipend as a "set" cost of $195.75. *Id.* at 43 n.116-17. But, in light of the DOS notices referring to $195.75, CHI always assumed that $195.75 was a lawful weekly stipend. Defs.' Appx., p. 457 – Reilly Decl., ¶ 13. In any event, the website also stated that "The stipend is set and regulated by the U.S. Department of State in conformance with *federal minimum wage law* and adjustments."[2] (Emphasis added.)

- Plaintiffs assert that CHI had an "explicit policy" of prohibiting au pairs from negotiating higher stipends and communications about the stipend were not as clear as they could have been. Opp. at 43-44 nn.118-19, PRA 6213, 1345-46. The email in question reflects only that the au pair might be confused over the higher stipend paid to an experienced au pair under a program run by another sponsor. PRA 1345. In fact, it is clear that it was *not* CHI's policy to advise that au pairs were only entitled to $195.75. PRA 6213 at 148: 8-10.

- Plaintiffs also claim that CHI's au pairs have been paid an "artificially low wage." Opp. at 44 n.120, PRA 388. Yet, Plaintiffs ignore that in the years prior to the filing of the complaint, DOS repeatedly and expressly stated that $195.75 was a lawful weekly stipend. Joint Reply Brief at 2-5. And again, there are unilateral, procompetitive reasons for CHI to advise host families that $195.75 was a lawful

---

[2] https://www.chinet.org/au-pair/pricing/, last visited April 4, 2018.

4

weekly stipend.  CHI advertised the au pair program as affordable childcare and, if CHI told host families that they needed to pay more, it would risk losing them to other sponsors. Defs.' Appx., p. 467 – Reilly Decl., ¶ 28.

- Finally, Plaintiffs argue that CHI "cooperated closely with, communicated frequently, and shared extensive information" with other sponsors.  Opp. at 44 n.122.  *None* of the cited documents refer to sharing information about the weekly stipend*.*  Viewed generously, Plaintiffs' evidence reflects the sharing of best practices to ensure regulatory compliance and improve the quality of the program – both of which are expressly endorsed by the State Department.  Defs.' Appx., p. 473 – Reilly Decl., ¶ 49; *id.*, p. 589.  ("The State Department emphasized the importance of sponsors working together to connect and share our stories.").  There is nothing wrong with competitors sharing this kind of information.  *See, e.g.*, *United States v. United States Gypsum Co.,* 438 U.S. 422, 441 n.16 (1978) (information sharing "can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive."). Plaintiffs' make no effort to establish how sharing information about regulatory compliance issues could be anticompetitive and emails discussing dog walking and line dancing is comical.  *See* Opp. at 44 n.122, PRA 1391, 1386.

## Conclusion

Plaintiffs simply cannot establish that CHI was involved in any agreement to fix the stipend or communicate to host families and au pairs that the stipend must be "precisely $195.75."  The Court should enter summary judgment in favor of CHI and dismiss the antitrust claim against it.

5

Dated April 13, 2018.

        Respectfully submitted,

        *s/*_____
        James E. Hartley
        Adam A. Hubbard
        HOLLAND & HART LLP
        1800 Broadway, Suite 300
        Boulder, CO  80302
        Phone: 303-473-2700
        jhartley@hollandhart.com
        aahubbard@holandhart.com

        Jonathan S. Bender
        HOLLAND & HART LLP
        555 Seventeenth Street, Suite 3200
        Denver, CO 80202
        Phone:  303-295-8000
        jsbender@hollandhart.com

        **ATTORNEYS FOR DEFENDANT**
        **CULTURAL HOMESTAY INTERNATIONAL**

## CERTIFICATE OF SERVICE

I certify that on April 13, 2018, I served the foregoing on the following counsel of record by email:

| | |
|---|---|
| **BOISE, SCHILLER & FLEXNER LLP**<br>Sigrid S. McCawley<br>Matthew L. Schwartz<br>Peter M. Skinner<br>Randall W. Jackson<br>Sabrina A. McElroy<br>Dawn L. Smalls<br>Joshua J. Libling<br>Sean P. Rodriguez<br>Daniel R. Schwartz<br>Juan P. Valdivieso<br>smccawley@bsfllp.com<br>mlschwartz@bsfllp.com<br>pskinner@bsfllp.com<br>rjackson@bsfllp.com<br>smcelroy@bsfllp.com<br>dsmalls@bsfllp.com<br>jlibling@bsfllp.com<br>srodriguez@bsfllp.com<br>dschwartz@bsfllp.com<br>jvaldivieso@bsfllp.com<br><br>**TOWARDS JUSTICE**<br>Alexander Hood<br>alex@towardsjustice.org | *Attorneys for All Plaintiffs* |
| **SHERMAN & HOWARD L.L.C.**<br>Brooke A. Colaizzi<br>Heather F. Vickles<br>Raymond Myles Deeny<br>Joseph H. Hunt<br>bcolaizzi@shermanhoward.com<br>hvickles@shermanhoward.com<br>rdeeny@shermanhoward.com<br>jhunt@shermanhoward.com | *Attorneys for Defendant:*<br><br>*InterExchange, Inc.* |
| **KELLY & WALKER, LLC**<br>William J. Kelly II<br>Chandra M. Feldkamp<br>wkelly@kellywalkerlaw.com<br>cfeldkamp@kellywalkerlaw.com | *Attorneys for Defendant:*<br><br>*USAupair, Inc.* |

| | |
|---|---|
| **ARMSTRONG TEASDALE LLP**<br>Meshach Y. Rhoades<br>Martin J. Estevao<br>mrhoades@armstrongteasdale.com<br>mestevao@armstrongteasdale.com | *Attorneys for Defendant:*<br><br>*Great AuPair, LLC* |
| **BOGDAN ENICA, ATTORNEY AT LAW**<br>Bogdan Enica<br>bogdane@hotmail.com | *Attorneys for Defendant:*<br><br>*Expert Group International, Inc., d/b/a Expert Aupair* |
| **BROWNSTEIN HYATT FARBER SCHRECK, LLP**<br>David B. Meschke<br>Martha L. Fitzgerald<br>mfitzgerald@bhfs.com<br>dmeschke@bhfs.com | *Attorneys for Defendant:*<br><br>*EurAupair Intercultural Child Care Programs* |
| **CHOATE HALL & STEWART LLP**<br>Robert M. Buchanan, Jr<br>Joan A. Lukey<br>Michael T. Gass<br>Justin J. Wolosz<br>Lindsey M. Kruzer<br>rbuchanan@choate.com<br>joan.lukey@choate.com<br>mgass@choate.com<br>jwolosz@choate.com<br>lkruzer@choate.com<br><br>**LEWIS ROCA ROTHGERBER CHRISTIE LLP**<br>James M. Lyons<br>Jessica L. Fuller<br>Diane Hazel<br>Jonelle Martinez<br>jlyons@lrrc.com<br>jfuller@lrrc.com<br>dhazel@lrrc.com<br>jmartinez@lrrc.com | *Attorneys for Defendant:*<br><br>*Cultural Care, Inc., d/b/a Cultural Care Au Pair* |
| **GORDON & REES LLP**<br>Thomas B. Quinn<br>Peggy E. Kozal | *Attorneys for Defendant:*<br><br>*AuPairCare, Inc.* |

| | |
|---|---|
| Jennifer W. Vedra<br>Nathan A. Huey<br>Heather K. Kelly<br>tquinn@gordonrees.com<br>pkozal@gordonrees.com<br>nhuey@gordonrees.com<br>jvedra@gordonrees.com<br>hkelly@gordonrees.com | |
| **FISHER & PHILLIPS LLP**<br>Lawrence L. Lee<br>Susan M. Schaecher<br>llee@laborlawyers.com<br>sschaecher@laborlawyers.com | *Attorneys for Defendants:*<br><br>*APF GlobalExchange, NFP, d/b/a*<br>*Aupair Foundation;*<br>*American Institute for Foreign Study, d/b/a*<br>*Au Pair in America* |
| **PUTNEY, TWOMBLY, HALL & HIRSON LLP**<br>Joseph B. Cartafalsa<br>Stephen J. Macri<br>Robert M. Tucker<br>John B. Fulfree<br>jcartafalsa@putneylaw.com<br>smacri@putneylaw.com<br>rtucker@putneylaw.com<br>jfulfree@putneylaw.com | *American Institute for Foreign Study, d/b/a*<br>*Au Pair in America* |
| **WHEELER TRIGG O'DONNELL, LLP**<br>Kathryn A. Reilly<br>Grace Anne Fox<br>reilly@wtotrial.com<br>fox@wtotrial.com | *Attorneys for Defendants:*<br><br>*Agent Au Pair;*<br>*Au Pair International, Inc;*<br>*American Cultural Exchange, d/b/a*<br>*GoAuPair* |
| **NIXON SHEFRIN HENSEN OGBURN, P.C.**<br>Lawrence D. Stone<br>Kathleen E. Craigmile<br>lstone@nixonshefrin.com<br>kcraigmile@nixonshefrin.com | *Attorneys for Defendants:*<br><br>*20/20 Care Exchange, Inc., d/b/a*<br>*The International Au Pair Exchange;*<br>*A.P.EX. American Professional Exchange*<br>*LLC, d/b/a*<br>*ProAuPair* |

          *s/ Craig Radoci*
          Paralegal

10835272_5