IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

## DEFENDANT AU PAIR INTERNATIONAL INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [ECF NO. 873]

Defendant Au Pair International Inc. ("API") submits this reply in support of its Motion for Summary Judgment ("API MSJ") [ECF 873] and in response to Plaintiffs' Opposition to Defendants' Motions for Summary Judgment ("Pls.' Opp.") [ECF 942].[1]

## INTRODUCTION

Plaintiffs fail to refute the core premise underlying API's motion—namely, that its <u>documented</u> policy of treating the DOS-calculated stipend as a required <u>minimum</u> that host families may exceed is inconsistent with, and thus dispositive of, their conspiracy theory. (*See* API MSJ 5-6.) Instead, ignoring that premise (and evidence) altogether, Plaintiffs resort to innuendo and misrepresentation to manufacture a fact dispute. But neither Plaintiffs' evidence, nor their characterization of it, raises a <u>reasonable</u> inference that API joined the alleged conspiracy. API is therefore entitled to summary judgment on Plaintiffs' antitrust claim.

---

[1] API also joins Certain Defendants' Reply in Support of their Motion for Summary Judgment ("Defs.' Reply").

# ARGUMENT

### A. The Undisputed Evidence Shows that API's Business Practices Are Inconsistent with the Alleged Conspiracy

Plaintiffs' Opposition proves API's point: summary judgment is warranted here because API's business practices are <u>inconsistent</u> with Plaintiffs' foundational allegations. They claim that Defendants "implement[ed] their conspiracy" to "fix" au pairs' stipends at "exactly $195.75" by telling host families and au pairs that amount was a "mandatory rate," not the "minimum" requirement DOS intended it to be. (Pls.' Opp. 1, 24.) But the evidence—which Plaintiffs do not challenge—shows that API does (and has done) the opposite: it tells all host families (through signed contracts) that $195.75 is only a required minimum. (API MSJ 5-6.) Plaintiffs do not contend with this fact.

Nor do Plaintiffs respond in any meaningful way to API's substantive arguments. They claim that API's statements that the stipend "is" $195.75 suggest it joined the alleged conspiracy, but that argument fails for reasons already stated.[2] (API MSJ 7.) Their dismissal of API's Professional au pair offering is similarly superficial. Plaintiffs' conspiracy theory rests on the incorrect assumption that all sponsors treat all non-EduCare[3] sponsors identically. In fact, however, premium au pair categories—which

---

[2] Plaintiffs also assert that API told a host family that au pairs "receive a set weekly stipend of $195.75," but the evidence they cite does not reflect the language they quote. (*Compare* Pls.' Opp. 48 n.135, *with* Pls.' Resp. App. 1100-02.) Further, such evidence fails to raise a <u>reasonable</u> inference that API joined the alleged conspiracy when viewed—as it must be—in context with the undisputed proof that API tells all host families (through signed contracts) that $195.75 is just a minimum requirement. (API MSJ 5-6.)

[3] The so-called "standard" category of au pairs is defined solely by the minimal eligibility requirements set by DOS and, thus, includes <u>all</u> "non-EduCare [au pair] participants," *see, e.g.,* 22 C.F.R. § 62.31 (recognizing only "EduCare" and "non-EduCare" au pairs).

only API and a few other sponsors offer—are non-uniform, sponsor-defined subsets within that broader category of "standard," non-EduCare au pairs (API MSJ 6-7). Thus, the same au pair who qualifies for one sponsor's premium category and is, thus, eligible for a higher minimum stipend would be treated as a "standard" au pair eligible for a minimum stipend of $195.75 by other sponsors.[4]

Moreover, API's differentiated offerings reflect the exact conduct Plaintiffs say should be happening but for the imaginary conspiracy. API's practice of advertising higher minimum stipends for Professional au pairs is thus inconsistent with—and dispositive of—their antitrust theory. (*Compare* API MSJ 6-7, *with* Pls.' Opp. 21-22.)

### B. Plaintiffs Identified No Probative Evidence that API Joined the Alleged Conspiracy

In addition to their allegation that Defendants told host families and au pairs that the $195.75 stipend amount was "nonnegotiable" (which is patently false as to API), Plaintiffs primarily rely on evidence relating to Defendants' Alliance activities. That evidence is irrelevant to API, which has never been a member of the Alliance. Aware of this obstacle, Plaintiffs attempt to squeeze blood from a stone by arguing that that API attended a single Alliance meeting, IAPA conferences, and meetings hosted by DOS at which other sponsors were present. (*See* Pls.' Opp. 47-48.) But the mere fact that API attended one Alliance meeting (in preparation for a meeting with DOS) and other

---

[4] *Compare* http://www.aupairint.com/program-options/ (advertising specialized program for "Professional" au pairs who "have post-secondary degrees in the teaching or medical professions, or a minimum of two years full-time childcare experience," in addition to the "Regular" au pair program for other non-EduCare au pairs) (last visited Apr. 12, 2018), *with, e.g.,* http://www.expertaupair.com/web/expert-aupair-au-pair.php (offering only two au pair options, "Regular" and "EduCare," for individuals who meet minimum eligibility requirements set by DOS) (last visited Apr. 12, 2018).

3

meetings hosted by DOS cannot give rise to an inference of conspiracy, as participation in those meetings is protected by the *Noerr-Pennington* doctrine. *See Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n*, 256 F. Supp. 2d 249, 277 (D.N.J. 2003) ("disregarding . . . communications protected by the *Noerr-Pennington* doctrine" when determining if evidence raised inference of conspiracy). (*See also* Defs.' MSJ 13; Defs.' Reply 7.)

Even if not protected by *Noerr-Pennington*, API's attendance at meetings hosted by DOS or the Alliance does not create a disputed fact issue that precludes summary judgment. Plaintiffs' evidence proves only that API was "in the same place at the same time" as other sponsors, "which is insufficient to support a reasonable inference of concerted activity." *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 409 (3d Cir. 2015) (defendants' attendance "trade show meetings" did not raise inference of conspiracy).[5] None of the evidence Plaintiffs cites reflects any discussion about the stipend, and their attempt to argue otherwise is disingenuous. In particular, Plaintiffs insinuate that API attended a sponsor-only Alliance meeting at which a "'minimum wage violation' was discussed." (Pls.' Opp. 47 & n.132.) But the cited evidence in fact does not suggest the stipend was discussed at the meeting. (*See* Pls.' Resp. App. 1470-72, at 1470 (agenda for sponsor meeting).) Rather, the language Plaintiffs quote comes from minutes of a different meeting <u>with DOS</u> at which a <u>DOS official</u> stated that <u>securing a performance bond</u> from au pairs is a "minimum wage violation." (*See* Pls.'

---

[5] *See also Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1362-63 (N.D. Ga. 2012) ("The fact that persons have an opportunity to conspire does not give rise to a <u>plausible</u> inference that they, in fact, did conspire." (emphasis in original)); *Carpet Grp. Int'l*, 256 F. Supp. 2d at 273-74 (D.N.J. 2003) ("[O]pportunities to conspire are not probative of whether firms did in fact conspire; an opportunity to conspire will always exist." (internal quotation marks omitted)).

Resp. App. 787 (meeting minutes).[6]) Those minutes say nothing about the stipend. This evidence of API's legitimate, constitutionally-protected activities provides no basis from which to infer that API engaged in an alleged conspiracy to fix the stipend.

Plaintiffs' claim that API shared "proprietary pricing information" with other sponsors is equally hollow, as the cited evidence—two emails—show nothing of the sort. (Pls.' Opp. 47 & n.131 (citing PRA 1169, 1172).) At the time of the first, a 2010 email with ProAuPair, that entity was <u>not a sponsor</u> but, instead, an international sending agent through with which API recruited au pairs. (API Supp. App. 1-2 (Lehan Dec.).) ProAuPair became a sponsor only <u>after</u> that communication. (*Id.*) Moreover, that email refers to the <u>publicly advertised</u> stipend for API's Professional program, not "proprietary" information. (*Compare* Pls.' Resp. App. 1169 (email), *with* http://www.aupairint.com/program-fees/ (last visited Apr. 12, 2018).) The second email reflects only communications among API staff and between API and a host family. (*See* Pls.' Opp. 47 n.131 (citing PRA 1172).)

Plaintiffs' remaining "evidence" proves, at most, that au pairs' stipends cluster around the required minimum of $195.75. (Pls.' Opp. 48.) That fact merely reflects host families' economically rational decisions; it does not suggest a conspiracy. (Defs.' MSJ 15-16; Defs.' Reply 12-13.) Thus, Plaintiffs fall far short of meeting their Rule 56 burden to raise, through evidence, a reasonable inference that API joined the alleged conspiracy.

## CONCLUSION

For these reasons, the Court should grant API's motion for summary judgment.

---

[6] Plaintiffs appear to have mistakenly cited to Plaintiffs' Response Appendix page 789. (*Compare* Pls.' Opp. 47 n.132 (citing "PRA 789 (AIFS0003868)"), *with* Pls.' Resp. App. 785-87 (meeting minutes bearing beginning bates number AIFS0003868).)

5

Dated:  April 13, 2018.              Respectfully submitted,


                                              *s/ Kathryn A. Reilly*
                                              Kathryn A. Reilly
                                              Brett M. Mull
                                              Natalie West
                                              Wheeler Trigg O'Donnell LLP
                                              370 Seventeenth Street, Suite 4500
                                              Denver, CO  80202-5647
                                              Telephone:  303.244.1800
                                              Facsimile:  303.244.1879
                                              Email:  Reilly@wtotrial.com
                                                                      Mull@wtotrial.com
                                                                     West@wtotrial.com

                                              Attorneys for Defendant Au Pair International Inc.


## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on April 13, 2018, I electronically filed the DEFENDANT AU PAIR INTERNATIONAL INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [ECF NO. 873] with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:


                                              *s/ Claudia Jones*