IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

      Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

      Defendants.

**DEFENDANT GO AU PAIR'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT [ECF NO. 884]**

Defendants American Cultural Exchange, LLC d/b/a Go Au Pair and Go Au Pair Operations LLC (together, "Go Au Pair") submit this reply in support of its Motion for Summary Judgment ("GAP MSJ") [ECF 884] and in response to Plaintiffs' Opposition to Defendants' Motions for Summary Judgment ("Pls.' Opp.") [ECF 942].[1]

## **INTRODUCTION**

Plaintiffs' Opposition reveals the utter absence of any probative evidence supporting their claims against Go Au Pair. Plaintiffs repeatedly mischaracterize evidence and treat Defendants as interchangeable actors, making assertions that are supported (if at all) with evidence germane to only a few sponsors (at most). In fact, the relevant evidence—reflective of Go Au Pair's conduct—unequivocally shows that those central, predicate factual claims do not apply to Go Au Pair. Time has run out on Plaintiffs' strategy of simply ignoring that evidence; Go Au Pair is entitled to summary judgment.

---

[1] Go Au Pair also joins Certain Defendants' Reply in Support of their Motion for Summary Judgment ("Defs.' Reply").

## ARGUMENT

Plaintiffs' Opposition attempts to avoid dismissal by asserting generalized, foundational allegations against all sponsors. This approach underscores why summary judgment is warranted here—each of the allegations from which Plaintiffs' claims flow is <u>inconsistent</u> with and refuted by evidence of Go Au Pair's actual business practices:

| Plaintiffs' Claim | Undisputed Go Au Pair Evidence |
|---|---|
| Defendants "set" or "fixed" the stipend for standard au pairs at "exactly $195.75." (*See, e.g.*, Pls.' Opp. 24.) | • Host families decide and must <u>manually write in</u> the stipend amount (in a blank space) in their contracts with au pairs. (GAP MSJ 8.)<br>• Go Au Pair allows host families to offer and pay a stipend amount above $195.75. (GAP MSJ 7-8, 13; Pls.' Opp. 39 (admitting that Go Au Pair's contracts "did not force host families . . . to pay exactly $195.75").)<br>• Host families in fact have chosen to pay a variety of stipend amounts, and a statistically significant percentage paid stipends of over $200 per week. (GAP MSJ 4; *cf.* Pls.' Opp. 39.) |
| "To implement their conspiracy, [Defendants] consistently misrepresented to au pairs and host families . . . that $195.75 per week was a <u>nonnegotiable, mandatory rate</u>." (Pls.' Opp. 1 (emphasis added).) | • Both at the beginning of the application process (prior to any host family interviews) and again upon matching, Go Au Pair required Plaintiffs to execute agreements expressly stating that $195.75 was the **minimum** stipend amount. (GAP MSJ 18-19)<br>• Plaintiff au pairs sponsored by Go Au Pair admit that: (1) they understood $195.75 was only a minimum; and (2) they were told they could ask host families for a higher stipend. (Defs.' App. 687 (Aguilar Dep.); GAP Supp. App. 7 (Myshchenko Dep. 31:4-16).)[2]<br>• Go Au Pair's "Mutual Match" process operates as an open, free-market exchange in which host families and au pairs may freely negotiate the terms of a potential placement, including the |

---

[2] "Defs.' App." refers to Certain Defendants' Appendix in Support of Motions for Summary Judgment [ECF 861]. "GAP Supp. App." refers to Go Au Pair's Supplemental Appendix [ECF 999], which contains evidence obtained after Go Au Pair filed its motion.

2

| **Plaintiffs' Claim** | **Undisputed Go Au Pair Evidence** |
|---|---|
|  | stipend amount. (GAP MSJ 1-5; GAP Supp. App. 8 (Myshchenko Dep.).) <br><br>• Plaintiff au pairs admit they negotiated stipends with their host families. (Defs.' App. 689 (Aguilar Dep.); *cf.* GAP Supp. App. 4 (Mamane Dep.).) |
| "The [DOS notices] Defendants rely on refer to the federal *minimum* wage, which . . . allow the inference that Defendants were free to interpret the amount calculated by [DOS] as a <u>minimum</u>, rather than a set amount, <u>but agreed not to</u> for their financial gain." (Pls.' Opp. 24 (emphasis added).) | • Go Au Pair' has always told <u>all</u> host families and au pairs—in agreements they sign—that the au pair's stipend must be "no less than" or "not less than" $195.75. (GAP MSJ 7.) <br><br>• The Host Family-Au Pair Agreement completed and signed by <u>all</u> host families and au pairs states that the stipend must be a "<u>minimum</u>" of $195.75 per week. (Defs.' App. 795 (HF-AP Agmt.), 803 (HF-AP Agmt. § 3.) |
| Defendants' failure to provide "differentiated" offerings on "price and quality" are "inconsistent with competition." (Pls.' Opp. 21-22.) | • Go Au Pair provides exactly the kind of "differentiated" offerings Plaintiffs claim would arise in a competitive market; it advertises higher minimum stipends for more-experienced au pairs who qualify for its premium au pair categories. (GAP MSJ 8 & n.4.) <br><br>• Au pairs qualifying for these categories would be categorized as "standard" au pairs by other sponsors. (*See* Argument § I, *supra*.) |
| "[Go Au Pair] induced plaintiffs to participate in the au pair program through . . . misrepresentations about the amount they could be paid." (Pls. Opp. 111.) | • Plaintiff Gonzalez and other au pairs have <u>repeatedly</u> testified that the stipend amount was <u>not</u> even a factor in their decision to participate in the au pair program. (Defs.' App. 700 (Gonzalez Dep.); GAP Supp. App. 10 (Tuk Dep.), 6 (Myshchenko Dep.), 2 (Bohorquez Dep.), 15 (Zhang Dep.), 12-13 (Xueting Dep.).) <br><br>• Au pairs eligible for higher minimum stipend amounts through Go Au Pair's "Plus" and "Premiere" offerings instead chose to accept lower stipend amounts to more quickly match with host families and participate in an American cultural experience. (Defs.' App. 745 (Kapler Dec. ¶ 54).) |
| "Defendants' employment policies go far beyond 'double checking' compliance with regulations . . . ." (Pls.' Opp. 114.) | • Go Au Pair's business practices cede maximum control over employment terms to host families, subject only to DOS regulations. (GAP MSJ 12-16; GAP MSJ Resp. 1-17.) |

3

Plaintiffs dispute <u>none</u> of this evidence. Their arguments and the evidence they rely on must, therefore, be viewed in light of these undisputed facts. In that context, their Opposition is laid bare for what it is—a collection of bald assertions and empty rhetoric.

## I. PLAINTIFFS DO NOT RAISE A JUSTIFIABLE INFERENCE THAT GO AU PAIR PARTICIPATED IN THE ALLEGED CONSPIRACY

Plaintiffs do not meaningfully respond to Go Au Pair's position. They claim Go Au Pair's statements that the stipend "is" $195.75 suggest it joined the alleged conspiracy, but they ignore the undisputed fact that Go Au Pair tells <u>every</u> host family and au pair that amount is just a minimum. (GAP MSJ 8-9.) Their dismissal of Go Au Pair's Plus and Premiere au pair offerings also ignores the facts. Plaintiffs assume that all sponsors treat non-EduCare au pairs[3] uniformly, but that assumption—which the Court may not accept at face value at summary judgment—fails on two levels. First, sponsors have different business practices with respect to subcategories of non-EduCare au pairs. Some (e.g., Expert Au Pair or Au Pair Foundation) only recognize a single category of non-EduCare au pairs and, thus, refer to <u>all</u> non-EduCare au pairs as "standard" or "regular" au pairs.[4] But other sponsors (e.g., Go Au Pair or Au Pair International) carve out unique subcategories of non-EduCare au pairs based on independently-created criteria.[5] Thus,

---

[3] The so-called "standard" category of au pairs is defined solely by the minimal eligibility requirements set by DOS and, thus, includes <u>all</u> "non-EduCare [au pair] participants," *see, e.g.*, 22 C.F.R. § 62.31 (recognizing only "EduCare" and "non-EduCare" au pairs).

[4] *See, e.g.*, http://www.expertaupair.com/web/expert-aupair-au-pair.php (offering only "Regular" and "EduCare" au pair options for individuals who meet DOS eligibility criteria) (last visited Apr. 12, 2018); https://www.aupairfoundation.org/costs/ (showing stipend amounts for "Standard Care" and "EduCare" au pairs only) (last visited Apr. 12, 2018).

[5] *See, e.g.*, http://www.goaupair.com/au-pairs/3-steps-to-become-an-au-pair/apply-now (Plus au pairs "must have … experience as an Au Pair in another country" and Premiere au pairs must have a "[d]egree in child care related field or at least 2 years of full-time child

the same person who qualifies as a "Premiere" au pair for Go Au Pair, and is thus eligible for a minimum weekly stipend of $250, would be treated by Expert Au Pair as a "standard" au pair entitled to receive a weekly stipend of no less than $195.75.

Second, Plaintiffs ignore that the premium categories created by Go Au Pair are precisely the type of differentiated offerings Plaintiffs claim would develop but for the alleged conspiracy. These premium categories show that instead of "commoditizing" "standard" (i.e., non-EduCare) au pairs, as Plaintiffs claim, Go Au Pair has created unique offerings (beyond those of its competitors) that are designed to (1) attract higher-skilled or more-experienced au pairs by offering a higher minimum stipend and (2) attract host families who desire such au pairs.[6] Thus, Go Au Pair's practice of advertising higher minimum stipends for Plus and Premiere au pairs itself refutes Plaintiffs' antitrust theory.

Having failed to contend with Go Au Pair's arguments, Plaintiffs attempt to manufacture a fact dispute by citing evidence that is irrelevant, mischaracterized, or both. All of this evidence is addressed in Addendum 1 attached hereto, but a few items bear further comment. To insinuate Go Au Pair's participation in the alleged conspiracy, Plaintiffs misleadingly claim that it attended meetings at which "wages and hours" or "minimum wage violation[s]" were discussed. (Pls.' Opp. 38-39 n.96; *id.* 11 n.7). But the cited evidence reveals that these discussions did not concern the stipend amount:

---

care experience," as well as "6 months of driving experience" and "[s]trong English skills") (last visited Apr. 12, 2018); http://www.aupairint.com/program-options/ ( "Professional" au pairs must "have post-secondary degrees in the teaching or medical professions," or at least "two years full-time childcare experience") (last visited Apr. 24, 2018).

[6] That Go Au Pair differentiates au pairs according to skill, not geography or number of kids (as Plaintiffs suggest should happen), does not mean it has commoditized au pairs. Under Plaintiffs' circular reasoning, <u>any</u> specialized au pair offering (e.g., a New York City offering with a higher stipend) would be irrelevant as falling outside the "standard" label.

- minutes of an April 2011 meeting with DOS refer to a DOS official's advisement that securing a performance bond from au pairs was a "minimum wage violation" (Pls.' Opp. 11 n.7 (citing Pls.' Ex. 92 (PRA 784-87); *see* Defs.' Reply 9); and

- a post-meeting email states that, in relation to a potential rulemaking, DOS requested an official comment letter from the Alliance on a list of issues, including "wages and hours" in connection with DOS's request for "language about hours as related to overnight duties" (Pls.' Opp. 39 n.96 (citing Pls.' Resp. App. 1608-09)).

Plaintiffs also claim that Go Au Pair participated in a February 2016 call in preparation for a meeting with DOS representatives. (Pls.' Opp. 38-39 n.96 (citing PRA 431-32).) As part of the Alliance's lobbying efforts, both that meeting and the preparatory call are protected by the *Noerr-Pennington* doctrine; thus, the mere fact that Go Au Pair was on that call (in 2016) does not raise an inference that it joined the alleged conspiracy (back in 2009), regardless of the subject of the call.[7] (GAP MSJ 6-7; Defs.' Reply 7.)

## II.  PLAINTIFFS CANNOT PROVE THAT GO AU PAIR IS THEIR EMPLOYER

Plaintiffs offer no legal or evidentiary support for finding that Go Au Pair is their joint employer. While they admit that the "import of the au pair program regulations" is crucial to their claim (Pls.' Opp. 112), they provide no legal support for finding that those regulations, or sponsors' compliance with them, standing alone, create an employment relationship.[8] There is none—their position is soundly refuted by a wealth of case law

---

[7] *See Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n*, 256 F. Supp. 2d 249, 277 (D.N.J. 2003) ("disregarding . . . communications protected by the *Noerr-Pennington* doctrine" when determining if evidence raised inference of conspiracy); *cf. Hunt v. Mobil Oil Corp.*, 465 F. Supp. 195, 231 (S.D.N.Y. 1978) ("[t]he fact that [defendants] attended meetings at which the subject of the conspiracy was discussed would not by itself establish intentional membership in the conspiracy), *aff'd*, 610 F.2d 806 (2d Cir. 1979).

[8] None of the cases Plaintiffs cite in fact address this issue. *See, e.g.*, *Donovan*, No. 84-F-401, 1986 WL 32746, at *3 (D. Colo. Jan. 8, 1986) (finding that defendant was joint employer on basis of its business practices, and also noting that "[i]f a[] [plaintiff] acts in

and agency guidance illuminating the role of government regulations in determining the existence of an employment relationship. (GAP MSJ Resp. 3-4; GAP MSJ 11-12.) That authority establishes that "agency regulations" reflect "<u>government rather than employer control</u>" and, thus, a putative employer's enforcement of agency-imposed rules does not evince an employment relationship. *Local 777, Democratic Union Org. Comm. v. N.L.R.B.*, 603 F.2d 862, 899 (D.C. Cir. 1978) (emphasis added); *accord Air Transit, Inc. v. N.L.R.B.*, 679 F.2d 1095, 1100 (4th Cir. 1982). Not only is *Local 777* and similar authority relevant here—the Supreme Court found long ago that such decisions are persuasive under the FLSA (GAP MSJ Resp. 3 n.5)—but the source-of-control principle stated there is <u>also</u> reflected in the FLSA case law Plaintiffs try to distinguish[9] <u>and</u> the agency guidance[10] they ignore (which is directly on point). (*Compare* Pls.' Opp. 113-14, *with* GAP MSJ 11-15 & n.7; *see also* GAP MSJ Resp. 3-4, 6-9, 11, 17.)

For evidence, Plaintiffs' just repeat their own summary judgment motion—the evidentiary failings of which Go Au Pair has already shown (*see* GAP MSJ Resp. 1-17).

---

a manner [that] could jeopardize the liquor license of the club, then [defendant] may require that employee to leave the nightclub"); *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) (noting that defendant <u>supervised</u> plaintiff to ensure that the <u>services performed</u> on its behalf met government standards for patient care).

[9] Plaintiffs do <u>not</u> respond to authority holding that the source, purpose, and "'nature of the [employer's] alleged control is highly relevant'" to the joint-employer analysis and that "'differences in the purpose and focus of the control' may produce 'divergent conclusions'" on that question. (*See* GAP MSJ 11-12 (quoting *Godlewska v. HDA*, 916 F. Supp. 2d 246, 260 (E.D.N.Y. 2013), *and Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 690-91 (D. Md. 2010), respectively).) Nor do they point to any contrary authority.

[10] The Labor Department advised that the "<u>source of [] control</u>" exercised when running a government-regulated program (i.e., whether it is government-imposed or at the entity's "discretion") "needs to be understood and appropriately appreciated when determining" joint employment under the FLSA. *See* U.S. Dep't of Labor, Wage & Hour Div., Adm'r Interpretation No. 2014-2, 2014 WL 2816951, at *4-5 (June 19, 2014) (emphasis added).

In light of relevant authority (*see* GAP MSJ 10-17), the undisputed evidence raises only one reasonable inference: that Go Au Pair is not Plaintiffs' joint employer.

### III. GO AU PAIR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FRAUD-BASED AND PUNITIVE-DAMAGES CLAIMS

#### A. Breach of Fiduciary Duty Is Not a Recognized Claim in Maryland

The Maryland Supreme Court has held that "Maryland does not recognize a separate tort action for breach of fiduciary duty." *Int'l Brotherhood of Teamsters v. Willis Corroon Corp. of Md.*, 802 A.2d 1050, 1051 n.1 (Md. 2002) (citing *Kann v. Kann*, 690 A.2d 509, 520-21 (Md. 1997)). Courts applying this precedent have repeatedly concluded that a "purported breach of fiduciary duty . . . cannot, standing alone, constitute a separate and distinct cause of action [for monetary damages] under Maryland law." *Novara v. Mfrs. & Traders Trust Co.*, No. ELH-11-736, 2011 WL 3841538, at *12 (D. Md. Aug. 26, 2011) (reviewing Maryland case law).[11] Plaintiffs' claim must be dismissed.

#### B. Plaintiffs Offer No Proof that Go Au Pair Made, or that They Justifiably Relied on, any Actionable Misrepresentation

Plaintiffs do not dispute that each of their claims requires proof of reliance on an actionable misrepresentation. They fail to raise a triable issue as to either element.

##### 1. Plaintiffs present no proof of reliance

Nowhere in their 170-page Opposition or 6,200-page appendix do Plaintiffs offer a shred of evidence that they relied on any alleged misrepresentations about the stipend. Instead, they claim their reliance may somehow be inferred because they "will show"

---

[11] *See also, e.g.*, *Totalogistix, Inc. v. Marjack Co., Inc.*, No. 06–5117 (JAG), 2009 WL 901768, at *5 (D.N.J. Mar. 31, 2009) ("This Court is convinced that under Maryland law breach of fiduciary duty . . . cannot stand as an independent cause of action."); *McGovern v. Deutsche Post Glob. Mail, Ltd.*, No. CIV. JFM-04-0060, 2004 WL 1764088, at *12 (D. Md. Aug. 4, 2004) (same).

that each plaintiff supposedly received the alleged misrepresentations.[12] (Pls.' Opp. 89.) The available proof, however, belies their bare assertions of reliance.

Plaintiffs' Opposition clarifies their fraud theory, i.e., that Go Au Pair (and other sponsors) allegedly "induced [them] to participate in the *au pair* program through a series of misrepresentations about the amount they could be paid." (Pls.' Opp. 111; *accord id.* 65). Thus, to prove detrimental reliance, Plaintiffs must show that these misrepresentations "substantially induced" their decision to participate in the Au Pair Program.[13] *Sass v. Andrew*, 832 A.2d 247, 267 (Md. App. 2003). They cannot. Plaintiff au pairs have consistently testified that the amount of the stipend did not factor into their decisions to apply for and participate in the program.[14] These disclaimers render any inference of reliance manifestly unreasonable. Go Au Pair is thus entitled to summary

---

[12] This theory is illogical and contrary to law, as proof of a misrepresentation derives from the fraudfeasor's conduct while proof of reliance must derive from the plaintiff's. *See CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014) (inference of reliance permitted when "the behavior of plaintiffs . . . cannot be explained in any way other than reliance upon the defendant's conduct" (emphasis added)).

[13] The Court's willingness to presume reliance at the class-certification stage provides no substitute for proof of reliance at summary judgment. The Court did not consider the merits of Plaintiffs' claims—and, thus, the evidence—at class-certification, as it must do here. (*See* ECF 828 at 25.) Further, Plaintiffs' Opposition shows that the inference of reliance on which the Court based its class-certification decision is not, in fact, what Plaintiffs allege. The Court previously found reliance could be inferred on a class-wide basis because plaintiffs, in entering into contracts with defendants, obviously "relied upon Defendants' representations and assumed they would be paid the represented wages." (*Id.* (emphasis added).) But Plaintiffs do not claim they were paid something other than the stipend represented in their contracts with host families (or that it was inconsistent with their contracts with Go Au Pair) but, rather, that Go Au Pair misled them about the source, nature, or legality of the amount they did, in fact, receive. (Pls.' Opp. 66; Defs.' App. 699 (Gonzalez Dep.) ("No, [Go Au Pair] didn't lie because . . . they told me the salary that it was going to be, no more or less. It was what it was." (emphasis added)).

[14] (Defs.' App. 700 (Gonzalez Dep. 40:2-15); GAP Supp. App. __ (Tuk Dep.), __ (Myshchenko Dep.), __ (Bohorquez Dep.), __ (Zhang Dep.), __ (Xueting Dep.).)

9

judgment regardless of whether Plaintiffs manage to create a fact issue as to whether any actionable misrepresentation was made (which they have not).

        2.      <u>Plaintiffs do not offer proof of any actionable misrepresentation</u>

The undisputed evidence of Go Au Pair's business practices—which Plaintiffs do not refute—shows that it tells every au pair and host family at least <u>twice</u> before they contract with each other that a stipend of $195.75 is only a required <u>minimum</u>. (GAP MSJ 18-19; Argument, *supra*.) When viewed in that context—as it must—the evidence Plaintiffs raise cannot support a <u>reasonable</u> inference that Go Au Pair made any uniform misrepresentation about the supposedly "fixed" or "nonnegotiable" nature of the stipend.

Plaintiffs also now argue that "some" sponsors lied by representing the <u>DOS-calculated</u> stipend amount as a "minimum" requirement because, according to them, it is not the "correct" minimum stipend amount. (Pls.' Opp. 66.) But this theory fails, too, as Go Au Pair's statements were consistent with DOS guidance on the stipend and, even if incorrect, were not actionable misrepresentations of fact. (GAP MSJ 19 & n.14.)

**C.**    **Plaintiffs Are Not Entitled to Punitive Damages**

To save their punitive-damages claim, Plaintiffs just reassert their false claim that Go Au Pair misrepresented the stipend as a "fixed" or "mandated" amount. (Pls.' Opp. 111; *see* Argument, *supra*; GAP MSJ 18.) They offer no proof any such affirmative statement or policy, and their bald assertion, especially given the unrefuted proof of Go Au Pair's business practices and DOS's guidance on the stipend, cannot give rise to reasonable inference of "actual malice." (*See* GAP MSJ 20.)

## **CONCLUSION**

For these reasons, Court should grant Go Au Pair's summary judgment motion.

Dated: April 13, 2018.  Respectfully submitted,

                                    *s/ Kathryn A. Reilly*
Kathryn A. Reilly
Brett M. Mull
Natalie West
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:  Reilly@wtotrial.com
        Mull@wtotrial.com
        West@wtotrial.com

Attorneys for Defendants Agent Au Pair, Inc., American Cultural Exchange, LLC d/b/a Go Au Pair, Go Au Pair Operations LLC, and Au Pair International Inc.

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on April 13, 2018, I electronically filed the foregoing DEFENDANT GO AU PAIR'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [ECF No. 884] with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

                                    *s/ Claudia Jones*