IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

        Defendants.

_____

**[CORRECTED] CULTURAL CARE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

_____

Cultural Care, Inc. ("CCI" or "Cultural Care") submits this reply brief in order to address key errors of law and fact in Plaintiffs' briefing.

## I.  PLAINTIFFS DO NOT IDENTIFY ANY MATERIAL FACTS FILLING IN THE EVIDENTIARY GAPS WITH RESPECT TO CULTURAL CARE

CCI's moving papers identified four critical facts that undercut all of Plaintiffs' theories of liability, and nowhere in Plaintiffs' 170-page tract are these facts disputed:

- As a matter of consistent corporate policy, CCI informs host families that they are free to pay more than the minimum stipend amount, CCI's Mot. for Summ. J. 2, ECF 879 ("CCI Br.") at 2;

- CCI accurately conveyed the minimum weekly stipend guidance from the United States Department of State ("DOS") to host families and au pairs, which DOS and CCI honestly and in good faith believed—and currently believe—to be legal;[1]

- Plaintiffs offer *no* direct or circumstantial evidence of CCI agreeing to fix stipend amounts, and instead recite CCI's confidential discussions with only *some* of the co-defendants in Alliance meetings that (1) lack any probative value, (2) are protected by the First Amendment, and (3) were engendered for the most part by this very litigation; and

- No host family has testified that Cultural Care told them that the minimum stipend amount was fixed.

These undisputed facts preclude liability for substantially all of Plaintiffs' claims.

---

[1] Plaintiffs cite to a meeting with DOS where a so-called "minimum wage violation" was purportedly discussed. Pls.' Opp. to Defs.' Mots. for Summ. J., ECF 942 ("Opp.") at 11 n.7, 28 n.52, 47 n.132. This "minimum wage violation" was the reiteration of DOS guidance that overseas recruiters should not collect security deposits, *see* PRA 787, a discontinued practice that did not merit even a mention in Plaintiffs' affirmative summary judgment motion for their FLSA claims.

Plaintiffs also misrepresent the testimony of CCI's 30(b)(6) representative, claiming that she admitted that the description of the stipend in certain of CCI's advertising materials and handbooks was "not 'accurate.'" Opp. 71, 98. As is clear from the testimony, the statement in question was inaccurate only insofar as CCI described the minimum stipend amount as having been calculated by the Department of Labor, instead of DOS. PRA 4443 (CCI 30(b)(6) Dep. Tr. at 108:25-109:8).

1

**II.   PLAINTIFFS CANNOT IMPUTE CONDUCT OF FOREIGN ENTITIES TO CCI**

Plaintiffs' argument concerning CCI's affiliate, International Care, Ltd. ("ICL") is misplaced in circumstances where the Court denied the Motion to Amend the Complaint to add ICL as a party on timeliness grounds. ECF 850 at 5-6. Plaintiffs do not have any viable alter ego or veil piercing claim, but nevertheless seek to invoke the doctrines to avoid dismissal of their claims against CCI. This effort must fail.

Plaintiffs argue that the au pair regulations impute ICL's conduct to CCI, but that argument is illusory because Plaintiffs have not asserted claims pursuant to the au pair regulations. *See* CCI Opp. to Pls.' Mot. for Partial Summ. J., ECF 937 ("CCI S.J. Opp.") 6-7. Moreover, even if the regulations were the touchstone for CCI's liability, the absence of any enforcement by the DOS against CCI or ICL, along with its regular re-designation of CCI as a sponsor (including DOS' re-designation less one month ago), proves the legality of CCI's conduct. *See* Certain Defs.' Reply Br. § II, ECF 988.

In addition, Plaintiffs fail to cite a single case that supports the argument that ICL's conduct can be imputed to CCI for the purposes of their federal and state law claims, whether under the laws of Massachusetts or Switzerland, the states where CCI and ICL are incorporated, or the laws of Maryland, Utah, or Virginia. Instead, Plaintiffs cite to wholly inapposite authorities that analyze veil-piercing for jurisdictional purposes. *See In re Lyondell Chem. Co.*, 543 B.R. 127,141 (Bankr. S.D.N.Y. 2016). Plaintiffs cannot credibly claim that conduct of wholly separate foreign entities must be imputed to CCI, without legal support, expecting the court fill in the gaps. *Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC*, 912 F. Supp. 2d 1320, 1330 (S.D. Ala. 2012).

## III. EACH OF PLAINTIFFS' REMAINING NON-EMPLOYMENT BASED CLAIMS ARE DEFICIENT

### A. Breach of Fiduciary Duty

Plaintiffs rely on Colorado law to establish a fiduciary duty claim in four separate states. Opp. 91. In contrast, CCI's brief included substantive arguments according to the laws of each state. Plaintiffs' failure to address these issues requires dismissal of their claims as a matter of law. *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 526 n.4 (D.N.J. 2012). Plaintiffs' reliance on *Flute v. United States* does not salvage their claim, as that case concerned an explicit statutory trust relationship created by Congress for Native Americans. 808 F.3d 1234, 1243 (10th Cir. 2015). Even that case undercuts Plaintiffs' claim to a generalized fiduciary relationship. *Id.* ("[T]his general trust relationship 'is not comparable to a private trust relationship' with all of its attendant fiduciary obligations.").

Equally disqualifying, Plaintiffs misconstrue the undisputed facts. There is no evidence of any "confidential" relationship with au pairs. CCI imposed no confidentiality obligations on au pairs; ICL only warranted to keep confidential health-related information that au pairs are required by the regulations to submit with their application. Furthermore, au pairs were free to report any issues whatsoever to anyone, including directly to DOS through designated communication channels.[2] Even without analyzing each state claim, Plaintiffs failed to prove a breach of fiduciary duty.

In lieu of addressing CCI's specific arguments as to Massachusetts, Utah, and

---

[2] *See, e.g.*, U.S. Dep't of State, *Contacts*, J-1 Visa Exchange Visitor Program, https://j1visa.state.gov/contacts/ (last visited Apr. 11, 2018).

3

Virginia, Plaintiffs instead reformulate their fiduciary duty claims as claims for fraudulent misrepresentation, but offer no proof that CCI knowingly misrepresented any material facts. *See supra*. Plaintiffs' only response to CCI's substantive arguments is to insist that Maryland recognizes a breach of fiduciary duty claim, notwithstanding the clear direction of Maryland's Court of Appeals in *Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997). To the extent Plaintiffs require a clearer statement of the law, this should suffice: "In a claim for monetary damages at law, however, an alleged breach of fiduciary duty . . . does not, standing alone, constitute a cause of action. Here, the allegations in the count are relevant to other causes of action . . . , but they do not constitute a standalone nonduplicative cause of action." *Wasserman v. Kay*, 197 Md. App. 586, 631-32 (2011).

### B.   Negligent Misrepresentation and Constructive Fraud

Plaintiffs cannot establish a claim for constructive fraud or negligent misrepresentation in any of the four states.[3] Plaintiffs do not rebut CCI's argument that an honest mistaken belief of law is not actionable under any state's law. It is undisputed that CCI accurately conveyed the DOS stipend information to host families, and Plaintiffs have offered no evidence that any host family believed that the stipend amount was fixed or not in compliance with the law. Plaintiffs do not even recite the varying elements of the constructive fraud causes of action in those jurisdictions. Instead, Plaintiffs rely on the arguments made in support of "their other fraud-related claims," and do not address in any respect their burden to demonstrate concrete proof of harm.

---

[3] Plaintiffs agree that there is no negligent misrepresentation claim under Virginia law. Opp. 103 n.229.

As discussed *supra* and in Defendants' joint reply brief, Plaintiffs' arguments concerning "their other fraud-related claims" are not supported by law or fact, and their inability to even posit some kind of discrete pecuniary harm is fatal to their claims.

### C. Consumer Protection Laws

As an initial matter, Plaintiffs concede both that their consumer protection claims fail if CCI complied with the law and that consumer protection laws do not apply in the context of an alleged employment relationship. Opp. 101 n.225. Additionally, Plaintiffs do not rebut that intent is required under each state's consumer protection law, nor do they rebut the fact that they have not proven any actual, identifiable losses. For those reasons alone, Plaintiffs' claims under each state's law are unsustainable.

Plaintiffs fare no better with respect to CCI's substantive arguments addressed to each state. First, Plaintiffs offer no contrary authority in support of their Maryland Consumer Protection Act ("MCPA") claim. Instead, Plaintiffs continue to insist that Plaintiffs are "consumers" and Defendants are "merchants" under the MCPA without any support whatsoever. Plaintiffs' bare assertions do not suffice for law.

Second, Plaintiffs' citation to Utah's class certification procedure is strange and beside the point. The Utah statute prohibiting recovery of class action damages under its consumer protection law is explicit. Utah Code Ann. § 13-11-19(2) ("A consumer who suffers a loss . . . may recover, but not in a class action, actual damages . . . ."). Plaintiffs offer only one argument in rebuttal to this explicit statutory prohibition, invoking the *Erie* doctrine to posit that Utah's substantive limitation of remedies is actually a procedural rule. Opp. 100 n.224 (*citing Shady Grove Orthopedic Assocs., P.A. v.*

5

*Allstate Ins. Co.*, 559 U.S. 393 (2010)).  However, the majority portion of *Shady Grove*'s 4-1-4 opinion explicitly stated that the Court did not decide whether "a law that sets a ceiling on damages (or puts other remedies out of reach) in properly filed class actions" was superseded by Rule 23.  559 U.S. at 401.  Indeed, the Supreme Court has rightly recognized state limitations on remedies as substantive.  *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 428-29 (1996) (accepting parties' stipulation to the obvious conclusion that a state cap on damages is substantive law).

      Third, Plaintiffs concede that they did not issue a demand letter pursuant to Mass. Gen. Laws. c. 93A, § 9, but nonetheless argue that this jurisdictional requirement can be waived.  Plaintiffs' authority, however, concerns "the contested issue [of] the sufficiency of the demand letter actually sent, not the failure to send a demand letter at all."  *Roberts v. Crowley*, 538 F. Supp. 2d 413, 421 (D. Mass. 2008) (citing *Fredericks v. Rosenblatt*, 40 Mass. App. Ct. 713 (1996)).  In any event, CCI could not have waived this defense when Plaintiffs identified the Massachusetts consumer protection claim specifically for the first time in July 2017 at class certification, CCI raised this defense in opposition to that motion, and raises it again in this motion.  *See Spilios v. Cohen*, 38 Mass. App. Ct. 338, 342 (1995) ("The plaintiff has the burden of . . . proving the timely sending of a letter . . . , and the defendant's motion for summary judgment, alleging omission to send such a letter, put on the plaintiff the obligation of showing that she would be able to sustain her burden of proof.").  Facing automatic dismissal, Plaintiffs now claim that the au pairs are "businesses" such that Mass. Gen. Laws c. 93A, § 11 applies.  However, the au pairs do not engage in trade or commerce because they are

6

not holding their services out to the public, and they cannot sustain a claim under this provision. *Debnam v. FedEx Home Delivery*, 766 F.3d 93, 97-98 (1st Cir. 2014).

## IV. CCI IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' WAGE AND HOUR CLAIMS BECAUSE IT IS NOT A JOINT EMPLOYER

Summary judgment should be entered in favor of Cultural Care because the undisputed facts show that Cultural Care's actions are in furtherance of its obligations under the program regulations. Monitoring for compliance with regulations and performing government-mandated responsibilities cannot, as a matter of law, give rise to joint employer liability. *See, e.g., Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 148 (4th Cir. 2017); *Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004); *Ivanov v. Sunset Pools Mgmt.*, 567 F. Supp. 2d 189, 195 (D.D.C. 2008). Plaintiffs' attempt to evade the application of this well-established legal principle is almost entirely duplicative of the arguments made in their Motion for Partial Summary Judgment, and Cultural Care incorporates by reference its responses in its Opposition to Plaintiffs' Motion for Partial Summary Judgment. ECF 937 at 9-13.[4]

## V. AU PAIRS' TIME SPENT IN DEPARTMENT OF STATE-MANDATED TRAINING IS NOT COMPENSABLE

Plaintiffs offer a convoluted interpretation of existing law and the facts of this case in order to support their conclusion that training time should be compensable.

---

[4] Cultural Care notes that no such principle applies to Plaintiffs' motion for summary judgment. Plaintiffs must prove that Cultural Care fits the indicia of joint employment, which is highly fact dependent for each sponsor. *See, e.g., Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209 (11th Cir. 2003) (plaintiff bears burden of establishing by a preponderance of the evidence that an entity is a joint employer under the FLSA). Plaintiffs' "supporting" allegations are either not supported by the record or are hotly disputed. *See* ECF 937 at 9-13.

Plaintiffs concede that they "are not seeking compensation for the mandatory training required by the *au pair* program regulations." Opp. 146. That concession alone should be the end of the Court's analysis in granting summary judgment to Cultural Care. Regardless of Plaintiffs' counsel's opinion that it is "bizarrely self-contradictory," the law is clear that government-mandated training time is considered "voluntary," and therefore not compensable, under the FLSA and New York law.[5] Plaintiffs do not cite any legal authority to refute this proposition, and instead turn to a convoluted analysis of why Defendants nevertheless are not entitled to summary judgment. Opp. 146. It is undisputed that the program regulations mandate that all au pairs participate in "not less than" 32 total hours of training on child safety and child development. 22 C.F.R. § 62.31(f)-(g). CCI has presented undisputed evidence that its training adheres to the regulatory mandates. CCI Br. 20.

Left with no real arguments, Plaintiffs have attempted to manufacture a factual dispute as to whether Cultural Care's training goes beyond the regulatory requirements. This attempt should be rejected by the Court. Plaintiffs contend that CCI exceeded the requirements in two ways: (1) by conducting the training at a "week-long training camp" that is (2) in the United States. Plaintiffs' first contention—that the training somehow exceeds the regulations by being "week-long" —should be rejected because it is not supported by the record. Plaintiffs claim support from Cultural Care's 30(b)(6) deposition, but the cited deposition testimony speaks only to the location of the training

---

[5] At bottom, Plaintiffs hope to prevail by convincing this Court to ignore all existing legal precedent about what it means for training to be "voluntary" and instead to adopt a plain-language reading of the word "voluntary."

8

(a facility in New York) and is silent on the length of the training.  Elsewhere in the 30(b)(6) deposition, CCI testified that most au pairs arrive at training school on Sunday or Monday, and they depart to their host families on Friday.  Defs. S.J. R. App. 530 – Jordan Dep. 185.[6]  Thus, the au pairs have approximately three full days (Tuesday-Thursday) at the training school and partial days on Monday and Friday.  This testimony is consistent with the testimony of the only named Plaintiff for the Cultural Care sub-class, who testified she spent three days in training classes.  Reply App. 20 - Deetlefs Dep. 87:22-23.  Nothing about this schedule is inconsistent with CCI's testimony that it adheres to the regulatory-mandated training time (not less than 32 hours) and topics (child safety and development).  Therefore, no dispute of material fact exists.

Plaintiffs' claim that conducting the training at a fixed location takes the training outside the regulatory mandate is nonsensical.  The program regulations are silent on where training should occur.  While Plaintiffs are correct that some Sponsors conduct training online and others conduct it in person, that difference is no reason to conclude that in-person training exceeds what is required by the regulations.  This attempt to manufacture a factual dispute should be rejected, and the Court should grant summary judgment in favor of Cultural Care on the training sub-class.

This Court should also reject Plaintiffs' claim that the training is compensable under New York law because is not for the "benefit" of the au pairs.  Plaintiffs contend that, because Sponsors could not place untrained au pairs and charge placement fees

---

[6] Citations to "Defs. S.J. App. _" and "Defs. S.J. R. App. _" refer to Defendants' unrestricted and restricted appendices, respectively, in support of summary judgment, ECF 861 and 862. Citations to "Reply App." refer to the Appendix filed with Certain Defendants' Reply In Support of Their Motion for Summary Judgment, ECF 988-1.

on their behalf to host families, the training must be to the benefit of the Sponsors. This argument squarely contradicts the existing law in New York. As discussed previously, the New York Department of Labor has found that government-mandated training for daycare teachers is not compensable because it is for the benefit of the daycare teachers who are then able to work in the daycare. Defs. S.J. App. 187 - N.Y.S. Dep't of Lab. Opn. Ltr. ( 2008).[7] If the daycare teachers did not participate in the government-mandated training, the daycare likewise could not sell the services of those teachers to parents seeking childcare. Therefore, one could argue that—just like with Sponsors— some benefit of the training inures to the daycare. However, that benefit does not trump the *primary* benefit of the training to the individual, who could not otherwise participate in the program to which they applied and in which they sought to participate. Thus, the Court should reject Plaintiffs' attempt to escape the reality of New York law: government-mandated training time like the training at issue here is not compensable.

## CONCLUSION[8]

For the foregoing reasons and those presented in the Sponsors' summary judgment briefing, the Court should grant the Sponsors' Motion.

---

[7] Plaintiffs seek to avoid this point by arguing that the daycare teacher training qualifies an individual to work at any daycare in New York, not just the daycare at which they are then-employed. This is a distinction without a difference. An au pair who completes the federally-mandated training can likewise then serve as an au pair for *any* host family in the United States, not just the host family with which they are initially matched.

[8] In light of the Court's April 9, 2018 Order, CCI will address in subsequent briefing Plaintiffs' claims under Pennsylvania and Texas law that are pleaded in Plaintiffs' Third Amended Complaint, ECF 983. *See* Cultural Care Opp. to R. 23 Mot. 1 n.1, ECF 604 (reserving right to challenge new plaintiffs); *see also* CCI Br. 1; Opp. 70 n.189 (acknowledging no plaintiffs with standing for Pennsylvania and Texas claims).

Dated:  April 13, 2018

Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane R. Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on April 13, 2018, I have caused to be electronically filed the foregoing **[CORRECTED] CULTURAL CARE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Diane R. Hazel*