IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

       Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

       Defendants.

_____

**EXPERT AU PAIR'S INDIVIDUAL REPLY IN FURTHER SUPPORT
OF THE MOTION FOR SUMMARY JUDGMENT**
_____

## INTRODUCTION

Expert AuPair is entitled on summary judgment on all Plaintiffs' claims. The arguments raised in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, ECF No.942 ("Motion"), do not address facts specific to Expert AuPair, address facts that are taken out of context, or make claims that are disproved by evidence.

## ARGUMENT

**I.  EXPERT AUPAIR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
ANTITRUST CLAIM**

Plaintiffs' evidence regarding an alleged conspiracy is anecdotal and not plausible. In order to prove that Expert AuPair was part of an industry-wide conspiracy to set prices for tens of thousands of au pair exchange visitors entering the United States every year, the Plaintiffs points to a dinner meeting between the CEO of Expert

AuPair and the owner or USAuPair in order to discuss, among others, about a potential vendor that would offer payment plans for host families. Motion p. 49. Not only that discussing about potential vendors at a dinner meeting does not prove conspiracy in any way, shape, or form, but, according to Plaintiffs' expert, the two sponsors in question, Expert AuPair and USAuPair, place a �enter of the total number of au pairs in the United States. PRA 239 ▒▒▒▒ In other words the two entities that allegedly conspired to fix industry-wide prices have a combined market share of ▒▒▒▒ .  Furthermore, according to the same testimony cited by Plaintiffs, the owners of the two entities did not discuss about the au pair stipend, or anything related to the stipend, at dinner meeting. Expert Au Pair 30(b)(6) May 9, 2017 Dep. Tr. 145.

The Plaintiffs' evidence is also circular, as they are using the terms "defendants" to mean two, more, or all of the defendants, while imputing every action that may support their claim to all defendants, regardless of the existence or non-existence of proof as to some of the defendants' involvement. In other words, the Plaintiffs are assuming the existence of a conspiracy in order to prove the conspiracy.

As admitted by Plaintiffs in numerous fillings, Expert AuPair's policy is aimed at encouraging host families to pay the au pairs more than the minimum required by the Department of State. The Plaintiffs admit that Expert AuPair is one of the "certain Sponsors" that have acknowledged that $195.75 per week is merely a programmatic wage floor. (Second Amended Complaint, ECF No.395 ¶173). Furthermore, as mentioned in the Second Amended Complaint, "Expert AuPair notes on its website that 197.75 per week is "the minimum required." (*Id*.) (emphasis added). It comes at no

surprise that Plaintiffs' own expert report shows that only _____ of the au pairs Expert AuPair placed are receiving amounts in the vicinity of $195.75. PRA 388 _____ _____.

By ignoring the results of their own survey, the Plaintiffs either admit that the survey results are not reliable, or that au pairs placed by Expert AuPair are earning well in excess of $195.75. None of these explanations support Plaintiffs' theory that "all *au pairs* sponsored by Expert AuPair" were subject to a uniform stipend of $195.75. Motion p.72.

All the evidence in this case, including the Plaintiffs' own pleadings and their Motion, demonstrate unequivocally that Expert AuPair advertised and implemented a policy treating the amount of $195.75 as being a minimum stipend and, as Plaintiffs assert, at least _____ of Expert AuPair's host families paid more than $195.75 ± 2.5%. PRA 388 _____. Such conduct is inconsistent with uniform action and does not fit into a scenario alleging that Expert AuPair has agreed that standard au pairs should be paid underline precisely $195.75 per week. Furthermore there is no evidence whatsoever that Expert AuPair told host families that they cannot pay more than the minimum stipend and no family testified that such information was received from Expert AuPair.

While addressing the issue of conspiracy among all sponsors, the Plaintiffs chose to file two Annexes to their Motion. In Annex 1 (ECF No.942, pp. 159-169) the Plaintiffs mention 29 meetings of the Alliance for International Exchange ("Alliance"). It is alleged that Expert AuPair took part in 5 of the 29 meetings, three of which occurred at the beginning of 2016, long after the filing of this case. Furthermore the table is based

on the registration information, not on actual attendance at the meetings. Also, the Plaintiffs offer no evidence that any of these meetings was organized in furtherance of a conspiracy or that the minimum stipend paid by host families was ever discussed at these meetings.

The Plaintiffs are further relying on a number of handwritten notes from an Alliance phone conference stating that the sponsors discussed "how they pay au pairs" and which was allegedly part of the Alliance's strategy of maintaining a standard uniform stipend. Motion p. 49, PRA 431-32 (ALLI-000010-11). It is undisputed that sponsors do not pay au pairs. While reviewing the evidence, nothing in those notes points to a strategy of maintaining a standard uniform stipend as nothing shows that Expert AuPair was involved in any such conduct. Mere membership in a trade association cannot be construed as evidence of a conspiracy. *ADA v. Cigna Corp.*, 605 F.3d 1283, 1295–96 (11th Cir. 2010). Also, potential coordinated lobbying efforts by a trade organization in which Expert AuPair played a passive role cannot be construed as a conspiracy as a matter of law, under the *Noerr-Pennington* doctrine.

Annex 2 to the Motion (ECF No.942, pp. 170-172) presents a table allegedly representing "Admissions Regarding Lack of Competition." The Plaintiffs present 22 statements that, in their opinion, are somehow showing that the entities making such statements are not competitors. None of the statements cited in Annex 2 is attributable to Expert AuPair, and none of the said statements is about Expert AuPair.

To boost their claim of conspiracy and concerted action, the Plaintiffs misconstrue the existing evidence. They are alleging that the defendants "coordinated" a walk-out when the Department of Labor attempted to speak to them about wage and

hour law. Motion p. 176. The deposition transcript cited by Plaintiffs is clear. The witness specifically testified that no coordination took place and that his attorney advised him not to discuss a matter that is currently before courts. He acted on counsel's instruction, without coordinating his actions with any other sponsor, and without communicating his intention to any other sponsor. PRA 5393 (Expert AuPair 30(b)(6) Dep. Tr., 128:16-21.)

As the evidence shows clearly that Expert AuPair acted inconsistently with the alleged conspiracy's purported objective of "fixing" the weekly stipend received by au pairs from their host families at exactly $195.75, Plaintiffs' antitrust claim against Expert AuPair fails as a matter of law.

## II.   EXPERT AUPAIR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' MINIMUM WAIGE, OVERTIME AND TRAINING RELATED CLAIMS

Expert AuPair is not an employer of au pairs. There are several J-1 visa programs administered by the Department of State allowing tens of thousands of exchange visitors to enter the United States in any given year. The private entities entrusted with the program's management are called "sponsors."  The au pairs, on the other hand, provide childcare services for host families while living in their homes and participate directly in the home life of the host family 22 C.F.R. § 62.31(a). The designated sponsors for the au pair program are not the au pairs' employers. The Plaintiffs fail to show in their Motion how the evidence in this case point to Expert AuPair being a joint employer of the au pairs. They are solely relying on the arguments presented at the Motion to Dismiss stage and ignore mountains of evidence collected since. All the evidence points to only one conclusion: there is no joint employment relationship between the sponsors and the sponsored exchange visitors. Moreover,

Expert AuPair's Motion for Summary Judgment, as well as Defendant's Joint Motion for Summary Judgment explain why Expert AuPair cannot be a joint employer of the au pairs. Plaintiffs fail to rebut the arguments presented in these motions while merely repeating their previous arguments.

Plaintiffs do not dispute, but even admit that the host families are employers of au pairs. ECF No.993 at ¶ 319. Though, they are repeatedly assuring the au pairs that host families are not part of the lawsuit and no recovery is sought against host families. *See* Joint Report Regarding Proposed Rule 23 Notification Plan, ECF No.851. However Plaintiff's Motion fails to present a plausible theory as why the sponsors should be responsible for alleged damages caused by the host families underpaying au pairs.

In regards to the training-related claims, the Plaintiffs mention week-long "training camps at specific locations in the United States." Motion p. 146. Nothing is further from the truth. The same testimony that the Plaintiffs cite, shows that the training is actually 3-5 days long, and the au pairs are hosted in a hotel ⬛⬛⬛⬛ provided with free meals and receive instruction only about the topics that are mandated DOS. PRA 5381 (Expert Au Pair 30(b)(6) Tr. 81-83). As "Plaintiffs are not seeking compensation for the mandatory training required by the au pair program regulations," (Motion at p.46) and Plaintiffs did not show any part of the training being outside or beyond the DOS requirements, Expert AuPair is entitled to summary judgment on Plaintiffs' claim for unpaid training.

Regarding the state law claims, the arguments raised in Motion fail to demonstrate that au pairs are not except under Colorado Wage Order, as the cases presented are not analogous to the au pair program. The undisputed evidence here

shows that, unlike in the two cases cited by Plaintiffs, the au pairs are not paid by the sponsors and are not the sponsors' direct employees. The minimum wage provisions of the CMWO cannot apply to au pairs and therefore the state law claims fail as a matter of law.

## III.   EXPERT AUPAIR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' MISREPRESENTATION CLAIMS

In their Motion, Plaintiffs fail to articulate reliance on any representations made by Expert AuPair, the claims asserted relating back to the Second Amended Complaint. Specifically the Plaintiffs fail to show how the au pair's behavior can only be explained by relying on Expert AuPair's conduct. While most of the au pairs, including the named plaintiff testified that the amount of the stipend was not a factor in deciding to participate in the program (Deposition of Nicole Mapledoram, October 3, 2016, 43:3-12) the Plaintiffs cannot show that the alleged misrepresentations induced the au pairs to participate in the program.

As discussed in detain above, Expert AuPair did not represent that the stipend is fixed. In fact, despite the Plaintiff's assertions in the Motion (see Motion p. 176), even Nicole Mapledoram received more than $195.75 from her host family (Second Amended Complaint ¶ 517) and the Plaintiff's own survey shows that ████████ Expert AuPair's au pairs are receiving significantly more than $195.75. PRA 239 (Kerr Report - ████████ ). Nicole Mapledoram and was informed prior to her participation in the program and she was aware that the $195.75 amount was just a minimum (Jeffery Dep. 112:23-25, 113:2-3, 113:20-22). Therefore Plaintiffs raise cannot support a reasonable inference that Expert AuPair made any uniform misrepresentation about the supposedly "fixed" or "nonnegotiable" nature of the stipend.

**CONCLUSION**

Plaintiffs have failed to establish a triable issue of material fact regarding their antitrust, wage and hour and fraud claims. For the reasons set forth herein, in Defendants' master brief, and the Sponsors' summary judgment briefing, defendant Expert AuPair is entitled to summary judgment on all of Plaintiffs' claims.

Dated: April 13, 2018

Respectfully submitted,                     s/Bogdan Enica
                                            Bogdan Enica, Esq.
                                            111 Second Avenue NE, Suite 900
                                            St Petersburg, FL 33701
                                            Phone: 727-388-3472
                                            bogdane@hotmail.com
                                            EXPERT GROUP INTERNATIONAL INC.
                                            D/B/A EXPERT AUPAIR

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of April, 2018, I have caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/Bogdan Enica
_____

Bogdan Enica, Esq.