## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
        and those similarly situated,

        Plaintiffs,
v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

        Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS CULTURAL CARE, INC. AND GO AU PAIR'S JOINT MOTION TO COMPEL DISCOVERY [ECF No. 973]**

---

## PRELIMINARY STATEMENT

Although they claim not to be *au pairs'* employers, Cultural Care and Go Au Pair (the Moving Defendants, hereinafter "Defendants") have resorted to a textbook litigation tactic employers use in FLSA cases: impose extensive discovery burdens on employees, knowing full well that most will not be able to meet them, in hopes of trimming the class size and dissuading other employees from joining.  Defendants seek discovery from **all** of the nearly 2,000 *au pairs* who joined classes against them, and to seek sanctions in the form of dismissal from those who cannot provide discovery. Despite having admittedly been provided with written discovery from **nearly sixty percent** of their FLSA classes (far more than courts typically approve), they demand discovery from all opt-ins.  Along the way Defendants spin the facts in their brief about a stipulation governing opt in discovery they signed with Plaintiffs' counsel.  Their request is contrary to the FLSA and case law, both of which envision very limited discovery on opt-ins (if any is to be conducted beyond named plaintiffs), conducted primarily for the purpose of a defense decertification motion.  Defendants' proposal is none of those things: they seek highly detailed discovery on all *au pairs* (despite a wealth of discovery already at their fingertips)*,* not for any purpose related to the merits or decertification, but instead, solely to create a basis to later exclude *au pairs* from the case.  Other courts have rejected such overreach, and for the reasons discussed below, this Court should too.

1

# FACTUAL BACKGROUND

## I.   Written Discovery

### A.  Cultural Care

On October 4, 2017, Cultural Care propounded written discovery requests to all

Cultural Care opt-ins containing ten multi-part interrogatories, eight requests for

production, and six requests for admission.  *See* Declaration of Dawn L. Smalls ("Smalls

Decl.") Ex. 1.[1]  On October 12, 2017, Cultural Care amended its discovery requests.

Ex. 2.

On October 13, 2017, Plaintiffs' counsel proposed to Cultural Care that, in lieu of

each opt-in providing a formal discovery response, it could send a survey to each opt-in

to collect the same or substantially similar information.[2]  Ex. 3 (Oct. 13, 2017 email from

D. Smalls to all Defendants).  Plaintiffs' counsel provided a list of thirty-four questions

they would pose to each opt-in that were largely similar to Cultural Care's discovery

requests.  *Id.*  Although Plaintiffs proposed and agreed to contact all opt-ins, at no point

did Plaintiffs' counsel ever propose or agree to produce responses for every Cultural

---

[1]    All citations to "Ex." refer to the Exhibits attached to the Smalls Declaration.
[2]    As Defendants note, Plaintiffs had designed their own survey, prior to receipt of
Cultural Care' written discovery requests.  Mot. at 2 n.1.  In an attempt to streamline the
discovery process and maximize responses, upon receipt Plaintiffs voluntarily
incorporated many of Defendants' discovery requests into the survey, including a
number which Plaintiffs believed to be irrelevant (e.g. whether there were adults other
than the host parents living in the host family home) or improper (e.g. questions calling
for legal conclusions about who set an *au pair*'s schedule).  *See, e.g.*, Ex. 3 (Oct. 23
email from D. Smalls to J. Lukey); Ex. 5 (Nov. 7, 2017 email from D. Smalls to J.
Lukey).  Upon negotiation with Cultural Care's counsel, Plaintiffs agreed to include three
additional questions in the exact language proposed by Cultural Care, a request for
documents, and a confirmation by the opt-in that the information provided was correct.
*See id.*  While utilizing the survey reduced the administrative burden for Plaintiffs, it also
did so for Defendants, as all opt-in responses were produced in an easily reviewable
spreadsheet.  By accepting the survey, Defendants obtained opt-in information that they
otherwise would not have obtained as Plaintiffs would have maintained their objections
for many of the requests.  In short, there was compromise on both sides.

Care opt-in.  In fact, the written record, which Plaintiffs carefully preserved, makes clear that Plaintiffs would not agree to written discovery of all opt-ins, and repeatedly cites extensive case law rejecting such requests.  *See, e.g.*, Ex. 4 (Oct. 5, 2017 email from D. Smalls to all Defendants).  Instead, Plaintiffs proposed to request such information from each Cultural Care opt-in and to "produce whatever we receive from them."  Ex. 3 (Oct. 13, 2017 email from D. Smalls to all Defendants).

Plaintiffs stipulated that the survey answers would have the same evidentiary value as answers to interrogatories or requests for admissions.  ECF No. 973-2 at ¶ 6.

On November 27, 2017, Plaintiffs informed Cultural Care that they had received 600 completed responses to the survey and would produce them to Cultural Care once they signed the stipulation providing that the survey would serve the function of written discovery.  *See* Ex. 6 (Nov. 27, 2017 email from D. Smalls to J. Lukey).  On December 27, 2017, Plaintiffs and Cultural Care executed the stipulation.  *See* ECF No. 973-2. Plaintiffs thereafter provided survey responses to Cultural Care on a rolling basis and by early April, Plaintiffs had produced survey responses for 1,030 opt-ins.  Mot. at 2.

**B.  Go Au Pair**

On October 5, 2017, Go Au Pair propounded written discovery requests on all Go Au Pair opt-ins containing ten multi-part interrogatories, eight requests for production, and six requests for admission.  Ex. 7.  On November 6, 2017, Plaintiffs objected to these requests on several grounds, including that imposing discovery obligations on every opt-in was unreasonably burdensome and not proportional to the needs of the case, and that the information sought in the interrogatories was not relevant to Plaintiffs' FLSA claims, or Defendants' defenses to them.  *See* Ex. 8.

On November 7, 2017 Plaintiffs made the same offer to Go Au Pair—providing survey responses in lieu of forma written discovery—that it had made with Cultural Care. Ex. 9 (Nov. 7, 2017 email from D. Smalls to K. Reilly). On January 4, 2018, Go Au Pair formally accepted the offer and signed their own stipulation. *See* ECF No. 973-4. As with Cultural Care, Plaintiffs agreed to request information from each opt-in and "produce whatever we receive from them." Ex. 3 (Oct. 13, 2017 email from D. Smalls to all Defendants). Although Plaintiffs agreed to contact all Go Au Pair opt-ins with the survey, Plaintiffs never proposed or agreed to produce responses for all opt-ins. Thereafter, Plaintiffs provided survey responses to Go Au Pair on a rolling basis. To date, Plaintiffs have provided Go Au Pair with all responses received from its opt-ins -- 89 out of 155 members of the Go Au Pair class. Mot. at 3.

Go Au Pair claims that it did not receive responses from fifteen *au pairs* it "sought to depose" (Mot. at 3), which it later claims it "noticed" (Mot. at 6). This statement is misleading. Smalls Decl. ¶ 21. Go Au Pair did in fact receive survey responses for every au pair it actually deposed (and many more). *Id.* at ¶ 22. The fifteen *au pairs* Go Au Pair now refers to are among the group of *au pairs* that did not respond to the survey or respond to their request for deposition. Mot. at 3.

## II.     Cultural Care Depositions

Cultural Care began requesting and deposing opt-ins in mid-December 2017. *See* Ex. 10. Cultural Care conducted seven depositions in January and nineteen in February. Smalls Decl. ¶ 15. However, it conducted only six in March, and one in April, before the April 9, 2018 opt-in discovery end date. *Id.* In total, Cultural Care conducted

thirty-six depositions.  Mot. at 3.[3]  Throughout this period, Plaintiffs' counsel actively

coordinated with Cultural Care to schedule depositions.  *See, e.g.*, Exs. 12-14.  At the

end of February, Cultural Care made its last request to depose opt-ins, over six weeks

before the end of opt-in discovery.  *See* Ex. 13 (Mar. 13, 2018 email from D. Smalls to

J. Lukey following up on additional depositions).

## LEGAL STANDARD

The Court has authority under Federal Rules of Civil Procedure 26, 30(b)(4), 29

U.S.C. § 216(b), and its inherent power to manage litigation and protect the parties by

setting appropriate limitations on discovery.  "In large or complex litigation, the Court

may limit the scope of discovery to protect a party from unduly burdensome discovery

requests."  *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006).

Although "opt-in plaintiffs may be subject to some individualized discovery", *see*

*Green v. Drake Beam Morin, Inc.*, No. 11-cv-01063-REB-CBS, 2011 WL 6046940, at *1

n.2 (D. Colo. Dec. 6, 2011), defendants are "not entitled to individualized discovery from

each and every opt-in Plaintiff, but rather discovery from a certain number of Plaintiffs."

*In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS, 2009

WL 1120293, at *2 (D. Colo. Apr. 27, 2009).  Extensive individualized discovery is

contrary to FLSA's purpose, which is to promote the "efficient resolution" of claims by

lowering the cost for individuals to vindicate their rights and promoting judicial economy.

*See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  "Taken to its logical

limits, individualized discovery would prevent [collective] actions from being litigated."

*Adkins*, 141 F.R.D. at 468.  The party seeking FLSA opt-in discovery must show a

---

[3]      Defendants' motion, filed April 6, references that it had scheduled a 36th
deposition on April 7.  This deposition in fact occurred.  Smalls Decl. ¶ 15.

"particularized need . . . which generally requires a demonstration that the discovery is addressed to common issues (as opposed to individual issues), that it is not designed to force class members to opt out, and that it would not impose an undue burden or require the deponent to seek legal or technical assistance to respond." *Groth v. Robert Bosch Corp.*, No. 1:07-cv-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008) (internal citations omitted).

## ARGUMENT

**I.      There is No Basis for Written Discovery of All Opt-Ins.**

Having obtained discovery from nearly 60% of opt-ins, Defendants remain unsatisfied.  They now request that Court order 100% of opt-ins to provide written discovery responses, or else face dismissal.[4]  This request has no basis in law, or the facts and circumstances of this case, and should therefore be denied.

Plaintiffs did exactly as they committed to do, and provided the information received from opt-ins from the survey responses.  Plaintiffs also worked with Defendants to provide additional opt-ins for depositions if the ones they noticed were unavailable.  Defendants do not and have never articulated a basis for the need for the written discovery responses or the depositions of specific opt-ins.  That is because there is none. [5]  Instead, their motion is a thinly veiled attempt to dismiss any *au pair* they

---

[4]      While Defendants do not ask for dismissal in their current motion (Mot. at 8), they expressly anticipate moving to dismiss opt-ins who do not respond to written discovery or refuse to sit for a deposition.  Mot. at 5.

[5]      As demonstrated in Defendants' productions in response to Plaintiffs' Seventh Request to All Defendants for the Production of Documents and exhibits Defendants use in their opt-in depositions, Defendants have detailed information on each opt-in at their disposal that they in fact used to identify their deponents, including each opt-in's employment application, the host family application which includes number of children and a proposed schedule, and other personnel records.  Smalls Decl. ¶¶ 17, 23.

named and reduce the size of the class if they did not respond to written discovery or sit for a multi-hour deposition.

### A. Defendants Have Already Obtained More Than Enough Discovery.

FLSA cases typically proceed in two stages:  in the first, the court conditionally certifies the class, and in the second, following discovery, the defendants move to decertify the class.  *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132-33 (D. Colo. 2011).  During discovery, defendants seek information that is relevant to the merits of their defenses and their decertification motion.  *Id.*  Where courts approve individualized FLSA discovery, they typically do so in order to aid in the decertification motion by authorizing discovery from a sample of class members.  *See Ruggles v. Wellpoint, Inc.*, No. 1:08-CV-201 (LEK/RFT),  2010 WL 11574166, at *4 (N.D.N.Y. Jan. 4, 2010) (noting that "the majority of the cases denounce full-blown individualized discovery in FLSA … class actions"); *Nelson v. Am. Standard, Inc.*, Nos. 2:07-CV-10-TJW-CE, 2:08-CV-390-TJW-CE, 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4, 2009) (agreeing with "[n]umerous other courts" and ordering representative sample for written opt-in discovery).  This is because Congress intended the FLSA collective action device to "give 'plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources' and to give courts 'benefits by the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'"  *Drollinger v. Network Global Logistics, LLC*, No. 16-cv-00304-MSK-MJW, 2018 WL 1224889, at *2 (D. Colo. Mar. 9, 2018) (quoting *Hoffman-LaRoche, Inc.*, 493 U.S. at 170).  As a result, courts recognize that "full-scale, individualized discovery of all opt-in plaintiffs would frequently undermine the purpose

and usefulness of collective actions." *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 4464887, at *2 (N.D. Ill. Sept. 27, 2012).[6]

When considering how large of a sample to authorize, the larger the class, the smaller the proportion of the class sampled. *See, e.g.*, *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 CIV. 9305 (LTS)(HBP), 12 Civ. 2197(LTS)(HBP), 2015 WL 1283681, at *3 (S.D.N.Y. Mar. 20, 2015) (courts permit discovery from a sample "particularly when the opt-in plaintiffs are numerous" and citing cases); *Ross, v. Jack Rabbit Servs., LLC*, No. 3:14-cv-00044-DJH, 2015 WL 1565430, at *2 (W.D. Ky. Apr. 8, 2015) ("As class size increases, courts are generally less likely to require all plaintiffs to respond to discovery."). Federal courts around the country routinely follow this principle. *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 192 (S.D.N.Y. 2014) (written discovery of 73 of 582 opt-ins); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 354 (D. N.J. 1987) (discovery permitted of 51 of 1,312 opt-ins); *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008) (limiting individualized discovery to 10% representative sample); *Ross*, 2015 WL 1565430, at *4 (ordering random 10% sampling for class of 236 opt-ins); *Morales v. Farmland Foods, Incranneyc.*, No. 8:08CV504, 2010 WL 3447513, at *2-3 (D. Neb. Aug. 27, 2010) (ordering sampling of 15% of 281 opt-ins and characterizing plaintiffs' proposal of 15% sample as "generous"); *Nelson*, 2009 WL 4730166, at *3 (limiting individualized written

---

6       Defendants appear to be laboring under the false assumption that opting-in makes a FLSA plaintiff the same as any other individual party. Mot. at 4-5. Of course that is not the law—the purpose of FLSA is to aggregate claims to avoid the inefficiencies and expense of individually filed actions. *See Hoffmann-La Roche, Inc.*, 493 U.S. at 170 (collective action allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

discovery to 91 of 1,328 (less than 7% of opt-ins); *Kervin v. Supreme Service & Specialty Co., Inc.*, No. 15-01172, 2016 WL 8257256, at *6 (E.D. La. May 24, 2016) (written discovery of 20% sample of 157 opt-ins); *Scott v. Bimbo Bakeries USA, Inc.*, No. 10-3154, 2012 WL 6151734, at *6 (E.D. Pa. Dec. 11, 2012) (limiting written discovery to 10% sample for roughly 700 opt-ins).

Defendants, with classes of over 1,700 and 150 members, claim that written discovery from nearly 60% of their classes is not enough and move to compel written discovery from all opt-ins. They argue that they need discovery from 700 more opt-ins because they are "material[ly] imped[ed]" by not having every single opt-in's survey responses. Mot. at 6.[7] The relief they seek far exceeds anything supported by case

---

[7] Compounding their overreach, Defendants ask the Court to "admonish[]" Plaintiffs, claiming that Plaintiffs "fail[ed] to abide by their agreement" to provide Defendants with "100% of the survey responses." Mot. at 6. This is just not true. No such agreement with Plaintiffs' counsel ever existed—or could exist. Plaintiffs' counsel could not have lawfully or ethically agreed to impose additional conditions above what the FLSA requires on *au pairs*' participation in the case. To the contrary, Plaintiffs vigorously and repeatedly rebuffed any requests aimed at "all" opt-ins, and explicitly stated that they would only provide responses from those *au pairs* that responded to the survey. *See* Ex. 3 (Oct.13, 2017 email from D. Smalls to all Defendants). In fact, recognizing Plaintiffs' position, Defendants inserted a provision into the stipulation preserving their right to move for relief on the basis of non-response to the survey (which is the precise motion Defendants now make). *See* Ex. 14 (Dec. 11, 2017 email from J. Wolosz to J. Libling and D. Smalls and accompanying attachment "Redline Stipulation").

Defendants' brief, which falsely states that "Plaintiffs ***agreed to*** produce the responses for *all* of the au pairs" (Mot. at 2) (emphasis added), is also contradicted by Defendants' own declarants – neither of whom was willing to attest to that falsehood under oath. Both concede that Plaintiffs only agreed to "***attempt to*** obtain and produce survey responses for <u>all</u> opt-in plaintiffs." ECF No. 973-1, Kruzer Decl. ¶ 6 (first emphasis added); ECF No. 973-3, Reilly Decl. ¶ 4. Notably, Defendants' motion and Cultural Care's accompanying declaration were signed by attorneys who were not engaged in negotiating the stipulations (either as the lead negotiator or at all). Smalls Decl. ¶ 16. Indeed, consistent with the parties' actual agreement, Plaintiffs did in fact contact and request information from all opt-ins, and provided "whatever [responses were] receive[d] from them." Ex. 3 (Oct. 13, 2017 email from D. Smalls to all

law.[8]  Considering that courts frequently limit representative samples to 10-15% for opt-in classes as large as Defendants', the nearly 60% of written discovery from opt-ins that Defendants have already received is more than enough.

The cases Defendants cite do not change this analysis.  Mot. at 4-5.  As a preliminary matter, while Defendants can surely find outlier courts that occasionally allow more, it is the "more common approach" to allow discovery on the basis of a representative sample.  *See O'Toole v. Sears Roebuck and Co.*, No. 11 C 4611, 2014 WL 1388660, at *3 (N.D. Ill. Apr. 10, 2014).  Moreover, in the *Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1188 (E.D. Va. 1991) case Defendants cite, the court allowed depositions of opt-ins "at least until either party felt the record was sufficiently developed for the Court to determine whether the case should proceed as a representative action." In their other case, *Renfro v. Spartan Computer Servs., Inc.*, No. 06-2284-KHV, 2008 WL 821950 (D. Kan. Mar. 26, 2008), the written discovery was limited to fifteen form interrogatories to a class of 136.  *Id.* at *1.  There the court also noted that because plaintiffs had failed to show undue burden, at least "some amount of individualized discovery" would be justified.  By contrast, here Plaintiffs have provided extensive written discovery already directed at hundreds of *au pairs* across the globe.

---

Defendants).  Plaintiffs agreed to nothing more, and Defendants knew that at the time each executed the stipulation. Their allegations of bad faith are unwarranted and unsupported by the facts and the written record. Their request for admonishment is a part of their unfortunate and continued effort to malign Plaintiffs' counsel rather than argue the merits of their case.

[8]      Of course, Defendants have already been able to take extensive discovery from the named Plaintiffs–a fact that conveniently did not make its way into their motion.

10

### B. Defendants Fail to Justify The Burden Imposed By the Additional Discovery.

Obtaining written discovery for every opt-in would be a Herculean burden for Plaintiffs and their counsel.  Under Rule 26, "[i]n large or complex litigation, the Court may limit the scope of discovery to protect a party from unduly burdensome discovery requests."  *Smith*, 236 F.R.D. at 356.  "Rule 26(b)(2)(C) gives the court discretion to conduct a proportionality analysis and limit discovery that is unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome or less expensive, and to limit discovery if 'the burden or expense of proposed discovery outweighs its likely benefit.'"  *Cranney*, 2008 WL 2457912, at *3. As a result, courts permit discovery of named plaintiffs and limit individualized discovery of FLSA class members to a representative sample.  *Id.*

To date, Plaintiffs' counsel has expended enormous resources to provide extensive written discovery and to make themselves and witnesses available for depositions.  To do more would be a huge burden, with no evidentiary upside for anyone – including Defendants.  At most, it will result in the imposition of a wholly unnecessary hurdle for opt-ins, and when some do not meet it, Defendants will use that as a reason to seek their dismissal.  Notwithstanding their desire to set a dismissal trap, the burden Defendants seek to impose on opt-ins and their counsel is completely untethered to the needs of the case.  Because the parties have already submitted their summary judgment briefing, Defendants cannot argue that this discovery is needed to litigate the merits at summary judgment.  As for Defendants' decertification motion, they already have far more than nearly all defendants in reported cases have at this stage – with written discovery of nearly 60% of their classes, and 50 depositions between them.

11

And of course, the additional discovery would be needlessly duplicative: there is no

reason to believe (and Defendants have provided none) that the remaining 40% of their

classes will provide information materially different from the 60% that have already

participated.

Recognizing these unnecessary burdens, courts have limited discovery in similar

situations.  *See Smith*, 236 F.R.D. at 357-58 ("This Court agrees that limiting discovery

to a statistically significant representative sampling, at this juncture, will both reasonably

minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel

and yet afford the defendant a reasonable opportunity to explore, discover and establish

an evidentiary basis for its defenses."); *see also Geer v. Challenge Fin. Investors Corp.*,

No. 05-1109-JTM, 2007 WL 1341774, at *4 (D. Kan. May 4, 2007) ("[T]he burden and

expense the requested discovery (depositions of every opt-in plaintiff) would impose on

Plaintiffs clearly outweighs the likely benefit of such discovery.").  The same result is

justified here.

## II.      There is No Basis for the Extraordinary Discovery Sanction of Dismissal.

Defendants seek not only to compel written discovery for all opt-ins, they also

want the Court to affirmatively order them to respond, or warn them that they risk

dismissal.  Mot. at 8.  Of course the purpose of the warning is not to actually obtain any

discovery, but rather to lay the dismissal trap Defendants have been plotting for months.

*See Groth*, 2008 WL 2704709, at *1 (opt-in discovery should not be used "to force class

members to opt out").  When both parties agreed to the stipulation, they did so while

explicitly preserving their rights to later litigate this exact issue—whether failure to

respond to the opt-in survey was sufficient grounds to warrant dismissal from the case.

*See* ECF No. 973-2 at ¶ 7, ECF No. 973-4 at ¶ 6.  Recognizing that some *au pairs*

would likely not respond, Defendants inserted this clause in order to preserve their ability to later seek dismissal.[9]  But they remain undeterred by the fact that nearly 60% of their classes did respond, or the fact that they would have received far less from the vast majority of federal courts.

Were the Court even to entertain a dismissal warning (which is effectively a finding that *au pairs* will face dismissal), such relief is not justified because Defendants can show no prejudice from non-dismissal – nor do they even try.  As a threshold matter, Defendants face an uphill battle, given the large sample[10] they have obtained. *Adkins* is instructive.  143 F.R.D. 171.  There, the court reinstated 66 of 147 opt-ins who had not provided interrogatory responses and were dismissed by the Magistrate Judge. *Id.* at 173-74.  The court said that "[Defendant] will not be prejudiced by the continuation of these parties in the cases, whereas the plaintiffs would be irreparably prejudiced by the dismissal of their claims." *Id.* at 174.  The court continued "dismissal is inappropriate because conducting discovery on an individualized basis under the circumstances is improper." *Id.*  Just like *Adkins*, because a sample is all that Defendants are entitled to, they can suffer no actual or cognizable prejudice.  Other courts have similarly found lack of prejudice where the defendant receives a sufficiently large sample. *See, e.g.*, *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS, 2009 WL 1120293, at *2 (D. Colo. Apr. 27, 2009) ("it is not clear...

---

[9]     Defendants also claim that the Court-authorized notice, which states only that *au pairs* "**may** be required" to participate in discovery, means they all **must** be required to do so, or face reprisal.  Mot. at 6-7 (emphasis added).  The Notice speaks for itself; its plain language does not require the result Defendants seek.
[10]    Plaintiffs do not concede that the opt-in depositions Defendants have taken are a representative sample of their classes.  Their chosen *au pairs* were neither random, nor representative.  And the same is true of the six additional deponents Cultural Care demands.

that [Defendant] will suffer prejudice if it cannot obtain individualized discovery from
these particular opt-in Plaintiffs" who did not provide written discovery).  Indeed,
Defendants make no prejudice argument at all.  They advert to some "material
impediment" (Mot. at 6), but nowhere do Defendants explain why they will be
prejudiced.  They cannot be concerned about their decertification motion, for which they
have sufficient written discovery.  *See Reich v. Southern New England Telecomm.
Corp.*, 121 F.3d 58, 61, 66-67 (2d Cir. 1997) (at decertification, defendant "need not
present testimony from each underpaid employee").  Their position also finds no support
in the cases they cite.  Mot. at 6.  *Porter v. West Side Rest., LLC*, No. 13-1112-JAR-
KGG, 2014 WL 5430249, at *2 (D. Kan. Oct. 24, 2014) involved depositions, not written
discovery, of opt-ins who had been previously warned that dismissal may be a sanction
for their noncompliance with a court order.  Similarly, in *Scott v. Raudin McCormick,
Inc.*, No. 08-4045-EFM, 2010 WL 3125955 (D. Kan. Aug. 6, 2010), the court dismissed
opt-ins, after previously granting a motion to compel, because Defendants had proven
that they needed to obtain information about whether every opt-in fell within certain
FLSA exemptions.  *Id.* at *5.  Defendants have made no such showing here, nor has the
court entered any prior order.

## III.   Cultural Care Is Not Entitled to Additional Depositions.

Although Cultural Care took thirty-six depositions, it now seeks to compel the
appearance of six more *au pairs.*  Mot. at 8.  It also seeks to set another dismissal trap,
with a warning from the Court that failure to appear "may" (i.e., will) result in dismissal.
*Id.*  Defendants' motion should be denied for at least three reasons.

*First,* Cultural Care's thirty-six depositions are in line with classes similar to their
size.  *See, e.g.*, *Smith*, 2012 WL 4464887, at *3, *Scott*, 2012 WL 6151734, at *6 (finding

14

that defendants' desire to depose 40% of opt-ins "entirely unreasonable" and ordering 20 opt-in depositions for class of 710); *Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2011 WL 9686065, at \*5 (M.D. Pa. Feb. 7, 2011) (ordering 50 depositions for 1,073 opt-ins). This is particularly true in light of the circumstances here: class members are located across the world and in most cases continue to be low-wage workers who often have difficulty taking time off of work.

*Second*, Cultural Care dragged its feet for the last month of opt-in discovery. Although it took thirty depositions before March 5, 2018 (when it filed a discovery motion regarding opt-in depositions, *see* ECF No. 924), it took only six in the month of discovery remaining thereafter. Cultural Care had the opportunity to seek more depositions and chose not to. Having made this strategic choice it cannot now demand more, or sanction opt-ins.[11]

*Third*, Cultural Care has articulated no basis as to why additional or these specific depositions are necessary. It does not explain why, for example, these six *au pairs* will testify to information not covered by the prior thirty-six witnesses. In truth, these unnecessary depositions will lead to the "needless presentation of cumulative evidence" that FRE 403 was intended to prevent.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in all respects.[12]

---

[11]    Given the history of the questioning in the opt-in depositions, (*see* ECF No. 969), Plaintiffs are especially reluctant to subject more *au pairs* to this process.
[12]    Because their motion lacks merit, Defendants are not entitled to any fees. Further, because both parties envisioned and planned for briefing on this issue an award of fees and costs is unwarranted.

Dated: April 18, 2018

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

  /s/ *Dawn L. Smalls*
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on April 18, 2018, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.


 */s/ Dawn L. Smalls*
Dawn L. Smalls