# Exhibit 9

| | |
|---|---|
| **From:** | Dawn Smalls |
| **To:** | "Reilly, Katie" |
| **Cc:** | "West, Natalie" |
| **Subject:** | RE: Go Au Pair opt-ins |
| **Date:** | Tuesday, November 07, 2017 11:10:00 PM |

Katie,

The outline of the agreement is as follows:

Interrogatories/RFAs:

In lieu of traditional interrogatories, a survey would go to all Cultural Care opt-in plaintiffs. The survey would be comprised of the questions outlined below. Each responding au pair would certify at the end of the survey that her/his answers are true and complete. Plaintiffs will consolidate the answers for each responding au pair, by name, into a spreadsheet using the au pair's actual unedited answers. Cultural Care would then be served with the spreadsheets on a rolling basis as Plaintiffs compile information, in a timely enough fashion for Cultural Care to begin and to complete the deposition process, also on a rolling basis. Plaintiffs will provide Cultural Care with a stipulation that each responding au pair has certified that her/his answers are true and complete, and that it may use the spreadsheets in the same manner as interrogatory responses. Cultural Care preserves its position that any au pair who fails to respond is subject to a default judgment, and Plaintiffs preserve our position that she/he is not subject to a default judgment, reserving the issue for the court at a later point.

RFPs will be reduced to a single category, which will be posed to each Cultural Care opt-in plaintiff, to wit: "Any documents relating to amounts paid to you and hours that you worked." We agreed that a response that the au pair possesses no such documents is not a ground for default. However, Cultural Care preserves its right to argue that a failure to respond to the request at all is a ground for default, and Plaintiffs preserve our position that it is not.

We did not agree to the total number of depositions appropriate for opt in discovery and defer that issue for now. Plaintiffs will not require that we determine the total number of depositions before depositions begin and we agree that Cultural Care may begin noticing them when they choose to do so. We will revisit this issue once Cultural Care notices more than 5% of the opt-in Plaintiffs for depositions.

RFAs incorporated as questions into survey:

- On one or more occasions [did] you receive[] more than $195.75 in weekly payment(s) from your host family or host families?
- Was your schedule set by, or determined in conjunction with, your host family?
- Was your stipend paid by your host family?

Survey Questions

- Whether any adults other than the au pair and the host parents lived in the host family home, and if so whether they assisted in childcare and for how many hours a week.
- How their schedule was determined, and the number of hours and days per week they worked.
- With respect to payment, we would ask them in detail and by payment/benefit, to list what the payment or benefit was, estimated amount of benefit, and timeframe for benefit (per day, per month, per week, per year).
- The number of host families with which they were placed
- Full name/Full name when au pair
- Date of Birth
- Current Address

- Country They Were Living in Before Coming to the US as an Au Pair
- How they first learned of the opportunity to become an au pair
- Month and Year they first applied to join the au pair program
- Whether they applied to a single sponsor agency or one
- Organization that recruited them to be an au pair
- Key Benefits of being an au pair as they understood them
- Downsides of Being an Au Pair as they understood them.
- Whether they met with a staff member of the sponsor agency when being recruited
- Whether they paid fees to participate in the program
- Number of Interviews with Host Families before being accepted into the Program
- Whether training was required by the Sponsor agency
- Host Family Name and Begin and End Date of Placement with Host Family
- Full Names and Relation of any Adults that lived in the household while the au pair was there
- Whether the weekly stipend was discussed in the initial interview with the host family for the position
- How the au pair and the family decided the weekly stipend
- The weekly stipend paid
- Person or entity that paid them
- Whether the amount of the stipend every varied
- If it did vary, how and why
- How they were paid
- Whether they received any payments or benefits from the host family other than the weekly stipend
- Number of children in the host family
- Age of Each Child, whether they attended school or daycare, and numbers of hours in school or daycare
- Main childcare tasks performed for this family
- Other childcare activities the au pair spent time on
- Whether the au pair provided services other than childcare to the host family
- Expected to be on call when not actively scheduled to provide childcare?
- Whether they had responsibilities for children waking overnight
- Whether there were times that they provided childcare that were unexpected or outside of the normal schedule
- Whether they ever made a complaint and if so who it was reported to and how it was resolved

Please let me know if these terms will work for Go Au Pair and we will begin the process outlined above.

Dawn

---

**From:** Reilly, Katie [mailto:Reilly@wtotrial.com]
**Sent:** Tuesday, November 07, 2017 6:44 PM
**To:** Dawn Smalls
**Cc:** West, Natalie
**Subject:** RE: Go Au Pair opt-ins

Hi Dawn - Any chance you can talk now for a few minutes?  303.244.1983.

---

**From:** Dawn Smalls [mailto:DSmalls@BSFLLP.com]
**Sent:** Tuesday, November 7, 2017 4:42 PM
**To:** Reilly, Katie

**Cc:** West, Natalie
**Subject:** RE: Go Au Pair opt-ins

Katie,

We have just reached agreement with Cultural Care regarding written discovery. Would you like to discuss Plaintiffs' proposal further or otherwise meet and confer regarding Plaintiffs' Responses and Objections to your Discovery Requests? Please let me know. I am available for a call tomorrow or Tuesday.

Thanks,

Dawn

---

**From:** Reilly, Katie [mailto:Reilly@wtotrial.com]
**Sent:** Friday, October 20, 2017 10:38 AM
**To:** Dawn Smalls
**Cc:** West, Natalie
**Subject:** Re: Go Au Pair opt-ins

Thanks Dawn.

On Oct 20, 2017, at 8:27 AM, Dawn Smalls <DSmalls@BSFLLP.com<mailto:DSmalls@BSFLLP.com>> wrote:

Hi Katie,

Every opt in we have submitted has been matched to a file submitted by Go Au Pair, so I can ask the class administrator to tell me what files these au pairs matched to.

We can also ask the au pairs themselves to confirm their names and their names while they were an au pair, but will do this as a part of our scheduled outreach and communication with opt in plaintiffs.

Dawn

From: Reilly, Katie [mailto:Reilly@wtotrial.com]
Sent: Thursday, October 19, 2017 6:24 PM
To: Dawn Smalls
Cc: West, Natalie
Subject: Go Au Pair opt-ins

Hi Dawn,

Go Au Pair does not have any record of having sponsored the following opt-in plaintiffs, who are identified as having been Go Au Pair au pairs:

· Karen Hamilton (1st notice)

· Joana Hoffman (1st notice)

· Anne-Laure Cochrum (7th notice)

· Daria McCune (7th notice)

· Nkosazana Evans (8th notice)

· Danielle Lacy (10th notice)

· Zara Colvin (10th notice)

Could you please check with these plaintiffs to see if they participated in Go Au Pair's program under a different name?

Thank you,
Katie


Katie A. Reilly | Partner
Wheeler Trigg O'Donnell LLP
370 17th Street | Suite 4500 | Denver CO 80202
P 303.244.1983 | F 303.244.1879
reilly@wtotrial.com<mailto:reilly@wtotrial.com> | wtotrial.com<http://wtotrial.com/> |
vCard<http://www.wtotrial.com/getvcard.aspx?id=4600>
<image001.png><http://wtotrial.com/>

_____

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]