**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLI NA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
    and those similarly situated,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

    Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT INTEREXCHANGE'S
MOTION TO COMPEL DISCOVERY [ECF No. 970]**

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 1

I. InterExchange's Requested Discovery. ................................................................ 1

II. Existing Discovery InterExchange Has Access To. ............................................. 3

LEGAL STANDARD ............................................................................................. 4

ARGUMENT ......................................................................................................... 5

I. InterExchange Has No Basis to Compel Interrogatory Responses from the Ten Opt-Ins Who Did Not Respond. ............................................................................ 5

II. InterExchange's Interrogatories Seek Irrelevant or Duplicative Information. ............. 9

III. InterExchange Has No Basis to Demand Plaintiffs' Counsel's Privileged Material. 11

CONCLUSION .................................................................................................... 14

## PRELIMINARY STATEMENT

This motion is the result of strategic choices made by InterExchange during opt-in discovery, and the fact that it now regrets them. InterExchange fiercely negotiated written discovery from 25% of its class, and then only requested 15%. It stated that it only wanted written discovery from *au pairs* it identified, and then failed to identify additional *au pairs* from which to seek discovery when 10 did not respond. It rejected an offer for the survey responses and now seeks to compel them. Based on the facts presented, additional discovery is not warranted and the Court should deny its motion.

## FACTUAL BACKGROUND

### I.  InterExchange's Requested Discovery.

On September 29, 2017, InterExchange served its first set of written discovery requests on Plaintiffs. ECF No. 970-1. The requests consisted of 10 interrogatories (containing 36 parts), 8 requests for production, and 6 requests for admission, directed to "all InterExchange FLSA Opt-In Plaintiffs." *Id*.

Plaintiffs served their responses and objections to InterExchange's discovery requests on October 30, 2017. ECF No. 970-2. Plaintiffs objected to several interrogatories (including prior versions of current Interrogatories 2, 3, 5 and 6) because the information sought is not relevant to the FLSA claims in this action and/or because InterExchange already possessed such information in its own files. *See id*.; ECF No. 970-6.

As outlined in Plaintiffs' Opposition to Cultural Care and Go Au Pair's Motion to Compel Discovery (ECF No. 1017 at 2-4), Plaintiffs negotiated with certain Defendants to provide them with certain information provided by *au pairs* in the form of a survey in lieu of written discovery. InterExchange, however, refused to accept Plaintiffs survey,

and insisted on serving formal interrogatories, requests for production, and requests for admission on its selection of opt-ins.  *See* ECF No. 970-4 (Nov. 8, 2017 email from J. Hunt to D. Smalls).

Plaintiffs followed up with another proposal in response to InterExchange's insistence on written discovery from all opt-ins: written discovery from a sample of 20% of InterExchange opt-ins.  ECF No. 970-4 (Dec. 6, 2017 email from D. Smalls to J. Hunt).  On December 6, 2017, InterExchange responded: "We propose that InterExchange be permitted written discovery and discovery by deposition for 25% of the final number of its opt-in plaintiffs (right now, that stands at 45 out of 179 opt-in plaintiffs).  To avoid any confusion, we will provide a list of 45 opt-in plaintiffs whom we want to respond to written discovery, and a separate list of 45 opt-in plaintiffs whom we want to depose."  *Id.* (Dec. 6, 2017 email from J. Hunt to D. Smalls).  On December 22, 2017, Plaintiffs agreed to discovery from 25% of the opt-ins.  *Id.* (Dec. 22, 2017 email from D. Smalls to J. Hunt).

Plaintiffs did not hear back from InterExchange regarding the specific opt-ins from whom it wanted written discovery for almost a month.  On January 12, 2018, Plaintiffs' counsel emailed InterExchange asking if would be "forwarding the 45 names from which you would like us to seek that discovery."  Ex. 1 (Jan. 12, 2018 email from D. Smalls to J. Hunt).[1]  InterExchange responded the next week with written discovery requests and a handpicked list of 22 opt-ins.  *See* Ex. 1 (Jan. 17, 2018 email from J. Hunt to D. Smalls); ECF No. 970-5.  The written requests contained 18 items: 6 multi-part interrogatories, 6 requests for production and 6 requests for admission.  ECF No.

---

[1]   All citations to "Ex." refer to the Exhibits attached to the Smalls Declaration.  All citations to "Mot." refer to InterExchange's Motion to Compel Discovery, ECF No. 970.

970-5. Plaintiffs specifically objected to Interrogatories 2, 3, 5 and 6 because they called for information already in InterExchange's possession, and/or because they were irrelevant to any FLSA claim or defense in the case. *See e.g.*, ECF No. 970-6; Ex. 2 (Mar. 9, 2018 email from D. Smalls to J. Hunt); *id.* (Mar. 12, 2018 email from D. Smalls to J. Hunt).

Ultimately, InterExchange abandoned the attempt to get discovery responses from 25% of opt-ins. Plaintiffs provided discovery responses for 10 of the opt-ins from the list of 22 (two additional *au pairs* decided to withdraw from the lawsuit rather than respond) and were ready to seek discovery from more once InterExchange provided additional names. *See* Ex. 2 (Mar. 8, 2018 email from J. Hunt to D. Smalls; Mar. 9, 2018 email from D. Smalls to J. Hunt). But InterExchange never requested written discovery from any additional *au pairs*.

## II.  Existing Discovery InterExchange Has Access To.

In response to Plaintiffs' various requests for the production of documents, InterExchange produced nearly 10,000 pages of documents from opt-in *au pairs'* personnel files in its possession. Smalls Decl. ¶ 6. These documents included their contracts with host families, applications submitted by opt-ins, pre-application information provided to opt-ins, host family applications and interview reports, and notes of meetings between local coordinators and opt-ins. Twelve *au pairs* sat for depositions, amounting to nearly 30 hours of testimony, during which InterExchange used many of these documents as exhibits. *Id.* at ¶¶ 7-8.

In response to InterExchange's requests, Plaintiffs made multiple productions of documents collected from opt-ins, totaling nearly 400 pages. *Id.* at ¶ 9.

## **LEGAL STANDARD**

The Court has authority under Federal Rules of Civil Procedure 26, 30(b)(4), 29 U.S.C. § 216(b), and its inherent power to manage litigation and protect the parties by setting appropriate limitations on discovery. "In large or complex litigation, the Court may limit the scope of discovery to protect a party from unduly burdensome discovery requests." *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006).

Although "opt-in plaintiffs may be subject to some individualized discovery," *see Green v. Drake Beam Morin, Inc.*, No. 11-cv-01063-REB-CBS, 2011 WL 6046940, at *1 n.2 (D. Colo. Dec. 6, 2011), defendants are "not entitled to individualized discovery from each and every opt-in." *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS, 2009 WL 1120293, at *2 (D. Colo. Apr. 27, 2009). The party seeking FLSA opt-in discovery must show a "particularized need . . . which generally requires a demonstration that the discovery is addressed to common issues (as opposed to individual issues), that it is not designed to force class members to opt out, and that it would not impose an undue burden or require the deponent to seek legal or technical assistance to respond." *Groth v. Robert Bosch Corp.*, No. 1:07-cv-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008) (internal citations omitted).[2]

---

[2] InterExchange cites three cases that supposedly allow limitless discovery on opt-ins. Mot. at 5-6. The cases are outliers, and in any event, do not support the extensive interrogatories and document requests at issue here. *See, e.g., Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. CV-08-083-PHX-MHM, 2010 WL 3218598, at *1 (D. Ariz. Aug. 13, 2010) (allowing interrogatories where opt-ins were just "answering in a box"); *Evans v. Lowe's Home Ctrs., Inc.*, No. 3:03 CV 0438, 2005 WL 2100708, at *2 (M.D. Pa. Aug. 29, 2005) (no analysis of the scope or content of written discovery and the court refused to dismiss the opt-ins who had not responded); *Coldiron v. Pizza Hut, Inc.*, No. CV03-05865TJHMCX, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (the court conduced no analysis of the scope or content of the requested discovery and Plaintiffs did not object to the specific discovery requests at issue).

## ARGUMENT

### I. InterExchange Has No Basis to Compel Interrogatory Responses from the Ten Opt-Ins Who Did Not Respond.

InterExchange seeks to compel ten opt-ins to respond to its six interrogatories and six requests for production of documents, or face dismissal. There is no basis for this. InterExchange is not entitled to discovery from any specific opt-in and did not request written discovery for any opt-in other than the original 22. In short, InterExchange failed to follow through on the discovery it negotiated.

*First*, InterExchange's own discovery conduct undercuts any stated "need" or prejudice. After claiming it would seek written discovery from 25% of opt-ins, it only sought written discovery from 22 opt-ins (or roughly 15%). InterExchange had months to seek discovery from the full 25% or to seek written discovery from any number of its other 182 opt-ins, but it did nothing, preferring instead to wait until the close of discovery to file this motion. If InterExchange needed the information it would have sought it, rather than doing nothing. Indeed, if information had truly been InterExchange's goal, it could have accepted the survey responses and immediately received over 100 discovery responses. Smalls Decl. ¶ 15.

*Second*, InterExchange is not entitled to discovery from any specific opt-in. Discovery of opt-ins is typically of random samples. *See e.g. Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008) (limiting individualized discovery to 10% representative sample); *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-00044-DJH, 2015 WL 1565430, at *4 (W.D. Ky. Apr. 8, 2015) (ordering random 10% sampling for class of 236 opt-ins). InterExchange decided to forgo randomness (and, thus, fatally doom any conclusions it might seek to draw in

its upcoming decertification papers), but it is not entitled to forgo sampling. Nor did Plaintiffs agree to forgo sampling. Thus, if a particular opt-in was not responding to discovery requests, InterExchange should have simply provided a replacement name until it had achieved its 25% goal. Instead, InterExchange did not provide enough names to reach 25% even had everyone responded, nor did it provide replacement names for any opt-ins that did not respond to written discovery.

*Third*, even were InterExchange entitled to a specific opt-in's responses, dismissal is a "drastic sanction." *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS, 2009 WL 1120293, at *2 (D. Colo. Apr. 27, 2009). At the very least, imposing dismissal as a discovery sanction requires a showing of some prejudice. *Id*. Here, InterExchange has not and cannot demonstrate any prejudice from not obtaining written discovery from these specific ten opt-ins, out of a class of 182. *See Adkins v. Mid-American Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill. 1992) (refusing to dismiss opt-ins and finding that Defendant "will not be prejudiced by the continuation of these parties in the case, whereas the plaintiffs would be irreparably prejudiced by the dismissal of their claims."). It certainly cannot demonstrate prejudice sufficient to warrant dismissal. Moreover, additional discovery would be needlessly duplicative: there is no reason to believe (and InterExchange has provided none) that these specific ten opt-ins have information materially different from what InterExchange already has. *See In re Am. Family Mut. Ins. Co.,* 2009 WL 1120293, at *2 ("it is not clear…that [Defendant] will suffer prejudice if it cannot obtain individualized discovery from these particular opt-in Plaintiffs"). In fact, the only demonstrable prejudice is to the opt-ins

themselves: InterExchange's discovery demands have already caused two opt-ins to withdraw.  This is, of course, also the stated goal of InterExchange's motion.

*Fourth,* InterExchange cannot justify the additional burden its request will place on opt-ins and class counsel.  "Rule 26(b)(2)(C) gives the court discretion to conduct a proportionality analysis and limit discovery that is unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome or less expensive, and to limit discovery if 'the burden or expense of proposed discovery outweighs its likely benefit.'"  *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008).  This is particularly true for FLSA collective actions which provide "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche, Inc.*, 493 U.S. 165, 170 (1989).

Discovery conducted to date has revealed two certainties: (i) InterExchange already has access to tens of thousands of pages of documents on its opt-ins; and (ii) InterExchange has conducted depositions and obtained written discovery and documents from a reasonable number of its class.  On the former, InterExchange nowhere explains why the documents it has at its own fingertips are insufficient.  Indeed InterExchange used many of these documents during the twelve opt-in depositions it conducted.  On the latter, Plaintiffs' counsel has expended enormous resources to provide the existing written and document discovery and to make themselves and witnesses available for depositions.  But InterExchange fails to explain why the parties should undertake the additional burden it seeks to impose on opt-ins.

Notwithstanding their stated desire to set a dismissal trap, the burden InterExchange seek to impose on opt-ins and their counsel is untethered to the needs of the case.  Because the parties have already submitted their summary judgment briefing, InterExchange cannot argue that this discovery is needed to litigate the merits at summary judgment.  As for InterExchange's decertification motion, there is no dispute that InterExchange already has access to written discovery from ten other *au pairs*, thousands of pages of documents from its own files on even more opt-ins, deposition testimony from twelve opt-ins,[3] and nearly 400 pages of documents from opt-ins that have already been produced.  Recognizing these unnecessary burdens, courts have limited discovery where employers already have documents in their possession and/or fail to articulate a need for opt-in documents.  *See e.g., Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 193 (S.D.N.Y. 2014) (defendant "is in possession, or should be in possession, of much of the information or documentation it seeks"); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D. N.J. 2013) (denying written discovery where "much of the key factual information defendants need from each plaintiff…is likely already in their possession and control"); *Fast v. Applebee's Int'l Inc.*, No. 06-4146-CV-C-NKL, 2008 WL 5432288, at *2 (W.D. Mo. Dec. 31, 2008) (denying discovery because the "information which might be reasonably reconstructed by an opt-in Plaintiff, is already available to [Defendant] in its own records").

---

[3]   Plaintiffs do not concede that the opt-in discovery InterExchange has received is a representative sample of its class.  Its chosen *au pairs* were neither random, nor representative, but that is the result of how InterExchange chose to proceed.

**II.      InterExchange's Interrogatories Seek Irrelevant or Duplicative Information.**

InterExchange seeks to compel 22 opt-ins to respond to Interrogatories 2, 3, 5 and 6, and argues that Plaintiffs' objections are "meritless and in bad faith." Mot. at 6. This is false. In fact, the only bad faith is InterExchange's attempt to use opt-in discovery as a tool to reduce the size of its class. *See Groth*, 2008 WL 2704709, at *1 (FLSA opt-in discovery must not be "designed to force class members to opt out").

InterExchange also insists that the information must be relevant because Plaintiffs' counsel "collected" it. Mot. at 7. This is a red-herring. InterExchange purposely confuses "responsive" with "relevant". The act of gathering information from clients does not concede the evidentiary relevance of that information. Nor does it concede that a request about that information is warranted.

Each of Plaintiffs' objections is otherwise reasonable and should be sustained. The Court has already determined that opt-in discovery must be limited to "hours worked, tasks performed, wages and other compensation paid, and joint employer indicia." ECF No. 969 at 2. Interrogatories No. 2, 3, 5, and 6, either do not seek this information, or seek information InterExchange already possesses.

Interrogatory No. 2 seeks information about the age of host family children, their school attendance habits, and specific duties the *au pair* performed for each specific child. ECF No. 970-5 at 4. Interrogatory No. 3 seeks all information regarding the *au pair's* duties and responsibilities not covered by Interrogatory No. 2. *Id.* As a threshold matter, this is information InterExchange already has in its own files from host family applications. *See Scott*, 300 F.R.D. at 193; *Goodman*, 292 F.R.D. at 234; *Fast*, 2008 WL 5432288, at *2. InterExchange claims that this interrogatory is aimed at whether *au*

*pairs* are "on" or "off" duty. Mot. at 6. However, a child's age says nothing about on and off duty time – nor is it relevant to any FLSA claim or defense. *See Rayfield v. Sandbox Logistics, LLC*, 217 F. Supp. 3d 1299, 1300 (D. Colo. 2016) ("The requirements to state a claim of a FLSA violation are quite straightforward, requiring plaintiff to show a failure to pay overtime compensation and/or minimum wages to covered employees—no more.") (internal quotations and citations omitted). Similarly, the age and activities of specific children are not relevant to "hours worked, tasks performed, wages and other compensation paid, and joint employer indicia." InterExchange does not need to know about the details of diaper-changing and meal preparation to determine whether these *au pairs* have valid FLSA claims.

Interrogatory No. 5 demands information concerning what InterExchange terms "benefits" that *au pairs* may have received. ECF No. 970-5 at 5. It does not seek information about the weekly wage, but rather requests the information on the presumed rationale – that personal gifts, travel,[4] and other items *au pairs* received as part of their work are "benefits" that may be credited against their wage. These "benefits" do not matter to FLSA, which permits only narrow types of room-and-board-related deductions under narrow circumstances not present here. *See* 29 U.S.C. § 203(m) & 29 C.F.R. § 521.32(a).

Finally, Interrogatory No. 6 demands information about whether opt-ins complained to the State Department, host families, or anyone else about anything from their time as an *au pair*. ECF No. 970-5 at 5. The request is not limited to complaints

---

[4] The "travel" and "vacation" parts of this interrogatory relate to Defendants' failed "cultural exchange" preemption argument. *See* ECF No. 969 at 3 ("the deponents' beliefs and experiences would have no bearing on the Court's legal analysis" regarding preemption).

about the relevant topics, and not every complaint relates to the FLSA claims or defenses in this case.  InterExchange makes a conclusory statement that the interrogatory pertains to whether *au pairs* engaged in "protected activity under the FLSA."  Mot. at 6-7.  But InterExchange makes no effort to explain why whether *au pairs* engaged in "protected activity" has any relevance to the issue of whether the *au pairs* were paid in compliance with the applicable minimum wage.  In any event, InterExchange already has information about *au pairs*' complaints in their own files.

### III.   InterExchange Has No Basis to Demand Plaintiffs' Counsel's Privileged Material.

The survey InterExchange references in its brief is Plaintiffs' work product.  InterExchange has no basis to demand survey responses Plaintiffs' counsel collected from its clients.  Regardless of whether some of the responses to Plaintiffs' survey may be responsive to InterExchange's discovery requests, there is no question that they are privileged.  Whereas Plaintiffs' counsel waived that privilege for certain other Defendants in exchange for discovery concessions, InterExchange repeatedly refused to accept the survey as an efficient and less costly method of conducting opt-in discovery.  That was a choice to do so as evidenced by the fact that three other sponsors chose differently.  InterExchange now wants the benefit of an agreement that it refused to agree to.[5]

---

[5] InterExchange justifies its refusal on the basis that "the survey was optional for the opt-in plaintiffs to complete" (Mot. at 3, 7), and because "InterExchange wants all 178 of its opt-in plaintiffs to respond to discovery requests" (ECF No. 970-4 (Dec. 1, 2018 email from J. Hunt to D. Smalls)).  Both constituted requests for information from Plaintiff's counsel, and there was likely to be a greater response rate to the survey than InterExchange's formal requests, which contained pages of definitions and instructions and requested information in language the *au pairs* would likely have trouble understanding.  Further, Plaintiffs were willing to stipulate that the survey responses would be "usable for all purposes permitted through Federal Rule of Civil Procedure

As is common in class action cases, Plaintiffs' counsel decided to survey class members to gather information about them.  It included a range of topics, not all of which were directly relevant to a FLSA claim or defense.  It also later included questions inserted by other Defendants, which though irrelevant, Plaintiffs were willing to include so as to reach a compromise and avoid motion practice.  *See* ECF No. 1017 at 2 n.2.

The survey was sent to opt-ins after the class was certified and represented by Plaintiffs' counsel.  The opt-ins' responses to the survey are undoubtedly privileged, as both work product and attorney-client communications.  *See e.g.*, *Kallas v. Carnival Corp.*, No. 06-20115-CIV, 2008 WL 2222152, at *4 (S.D. Fla. May 27, 2008) ("no question" that survey created by plaintiffs and sent to putative class members was work product); *E.B. v. New York City Bd. of Educ.*, No. CV 2002-5118(CPS)(MDG), 2007 WL 2874862, at *3 (E.D.N.Y. Sept. 27, 2007) (responses to questionnaires sent by attorney were protected by attorney-client privilege); *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV-DJW, 2012 WL 646003, at *7 (D. Kan. Feb. 28, 2012) ("the class member survey responses sought by Defendants fall under the protection of the attorney-client privilege").

InterExchange provides no basis to violate privilege beyond stating that the survey responses are responsive to its discovery requests.  Privileged documents are often responsive to discovery requests and their responsiveness, alone, is not cause to

---

Rule 33(c) as if signed by counsel and the respective Opt-ins" and would not object to the survey being "admissible in all circumstances where such an interrogatory response would be admissible."  *See e.g.*, Stipulation with Cultural Care, ECF No. 973-2 at ¶¶ 5, 6; Stipulation with Go Au Pair, ECF No. 973 at ¶¶ 4, 5.  The stipulation signed with other Defendants further reserves both parties' positions on whether "failure of an Opt-In to answer one or any of the items in the questionnaire is sufficient to warrant an entry of default, as to that individual."  *See* ECF No. 973-2 at ¶ 7; ECF No. 973-4 at ¶ 6.

break privilege.  There has also been no waiver of privilege – and InterExchange cites none.  Although Plaintiffs' counsel inadvertently emailed two *au pair* responses to InterExchange,[6]  a review of the attendant facts shows that no waiver ever occurred. [7]

---

[6]   In exchanging emails with multiple Defendants regarding depositions (some of whom were entitled to survey responses), on March 21, 2018, Plaintiffs' counsel inadvertently sent InterExchange survey responses for two deponents.  *See* Ex. 3 (Mar. 21, 2018 email from S. Petterson to J. Hunt, B. Colaizzi, A. Levy).  Plaintiffs' counsel immediately informed InterExchange that the responses were sent in error and should be disregarded.  *See* Ex. 4 (Mar. 21, 2018 email from S. Petterson to J. Hunt, B. Colaizzi, A. Levy).  Under the applicable rules, Plaintiffs' counsel effectively retracted the inadvertent production.  *See* FRE 502(b) (no waiver where (1) the disclosure is advertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error); *see also* FRCP 26(b)(5); Amended Protective Order (ECF No. 694).  The parties' prior communications put InterExchange on notice that it should not have received the March 21st transmission.  And Plaintiffs' immediate retraction should have ended the matter.  *See Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2014 WL 943115, at *10 (D. Colo. Mar. 10, 2014) (no waiver even when invoked after discovery of error); *see also* Amended Protective Order (ECF No. 694 at ¶ 11) ("inadvertent production of privileged information . . . shall not constitute a waiver of such claim or privilege and may be corrected.").

[7]   Having received documents it knew it should not have, the good-faith reaction would have been for InterExchange to alert Plaintiffs' counsel.  But instead, InterExchange went further – immediately writing to a different member of Plaintiffs' legal team asking for more survey responses.  *See* Ex. 5 (Mar. 21, 2018 email from J. Hunt to B. Pacheco).  Plaintiffs' counsel then objected on the basis of attorney client privilege and work product when InterExchange tried to ask *au pairs* about the survey in a subsequent deposition.  *See* Ex. 6 at 16:17-17:24.  InterExchange knew that Plaintiffs were asserting work product and attorney-client privilege over the survey at least as of March 30.  Yet, rather than discarding them as requested, InterExchange later filed the *au pairs'* survey responses publicly on the Court's docket without prior notice to Plaintiffs, as "evidence" for why it should be entitled to all survey responses, publicly disclosing – without redaction – sensitive and confidential information about the responding *au pairs*, the host families, their children, and their daily schedules.  ECF No. 970-7.  To further compound the injury, at least one news outlet reported on InterExchange's motion, with links to these privileged documents.  *See* Ex. 7 (Law 360 Article).  InterExchange later retracted that filing after repeated demands from Plaintiffs' counsel.  Including the completed surveys was improper but also unnecessary, as InterExchange had already included the survey questions as Exhibit C to its motion.  *See* ECF No. 970-3 (Nov. 8, 2017 email from D. Smalls to J. Hunt providing the survey questions).

At no point did InterExchange agree to the relevant conditions, nor did Plaintiffs agree to waive privilege. Accordingly, InterExchange is not entitled to any survey responses.

## CONCLUSION

For the foregoing reasons, InterExchange's motion should be denied in all respects.[8]

Dated: April 25, 2018　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　BOIES SCHILLER FLEXNER LLP

　　　　　　　　　　　　　　　　　　　　　 /s/ *Dawn L. Smalls*
　　　　　　　　　　　　　　　　　　　　　Matthew L. Schwartz
　　　　　　　　　　　　　　　　　　　　　Peter M. Skinner
　　　　　　　　　　　　　　　　　　　　　Randall W. Jackson
　　　　　　　　　　　　　　　　　　　　　Dawn L. Smalls
　　　　　　　　　　　　　　　　　　　　　Joshua J. Libling
　　　　　　　　　　　　　　　　　　　　　Byron Pacheco
　　　　　　　　　　　　　　　　　　　　　575 Lexington Avenue
　　　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　　　Tel: (212) 446-2300
　　　　　　　　　　　　　　　　　　　　　Fax: (212) 446-2350
　　　　　　　　　　　　　　　　　　　　　mlschwartz@bsfllp.com
　　　　　　　　　　　　　　　　　　　　　pskinner@bsfllp.com
　　　　　　　　　　　　　　　　　　　　　rjackson@bsfllp.com
　　　　　　　　　　　　　　　　　　　　　dsmalls@bsfllp.com
　　　　　　　　　　　　　　　　　　　　　jlibling@bsfllp.com
　　　　　　　　　　　　　　　　　　　　　bpacheco@bsfllp.com

　　　　　　　　　　　　　　　　　　　　　Sean P. Rodriguez
　　　　　　　　　　　　　　　　　　　　　Juan P. Valdivieso
　　　　　　　　　　　　　　　　　　　　　1999 Harrison Street, Suite 900
　　　　　　　　　　　　　　　　　　　　　Oakland, CA 94612
　　　　　　　　　　　　　　　　　　　　　Tel: (510) 874-1000
　　　　　　　　　　　　　　　　　　　　　Fax: (510) 874-1460
　　　　　　　　　　　　　　　　　　　　　srodriguez@bsfllp.com
　　　　　　　　　　　　　　　　　　　　　jvaldivieso@bsfllp.com

---

[8] Because its motion lacks merit, InterExchange is not entitled to fees or costs.

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on April 25, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                                                           */s/ Dawn L. Smalls*
                                                                                           Dawn L. Smalls