# Exhibit F

EXHIBIT 1

Transcript of the Testimony of

**BEATRIZ FUESTE**
**April 5, 2018**

<u>Johana Paola Beltran, et al.</u>
<u>v</u>
<u>Interexchange, Inc., et al.</u>

# Diane Scholl, RMR

*Diane Scholl, RMR*
**Hansen and Company, Inc.**
Registered Professional Reporters
1600 Broadway, Ste. 470
Denver, Colorado 80202
Phone (303) 691-0202 * Fax (303) 691-2444



Johana Paola Beltran, et al.                    BEATRIZ FUESTE
Interexchange, Inc., et al.                      April 5, 2018

Page 12

```
 1      Q.    Can you spell that for the court reporter?

 2      A.    L-e-m-i-n-g.  Leming.

 3      Q.    How long did that placement last?

 4      A.    How long did it what?

 5      Q.    How long were you with the Lemings?  How long

 6   were you in their home?

 7      A.    From December 2014 until December of 2016.

 8      Q.    So two years?

 9      A.    Yes.

10      Q.    And why did your placement conclude?  Why did

11   you stop?

12      A.    Because the program is two years, and I

13   couldn't continue with them anymore.

14      Q.    Let's turn to Exhibit 5, EX-5, please.

15      A.    Sure.

16            Go ahead.

17      Q.    Have you seen this document before?

18      A.    Let me read first.

19      Q.    Sure.

20            (A pause occurred.)

21            MR. PETTERSON:  Can we go off the record for

22   just one second?

23            MR. REID:  Sure.

24            (Discussion off the record.)

25            MR. REID:  All right.  Thank you.
```

Hansen & Company, Inc. Registered Professional Reporters
(303) 691-0202 * (303) 691-2444

MOVANT'S APP. 2

Johana Paola Beltran, et al.                                    BEATRIZ FUESTE
Interexchange, Inc., et al.                                       April 5, 2018

```
                                                              Page 13

 1              MR. PETTERSON:  We can go back on.

 2              MR. REID:  All right.  So we're back on the

 3     record.

 4        A.    I don't remember -- I don't remember this

 5     document.

 6        Q.    (BY MR. REID)  You don't remember seeing this?

 7        A.    But reading -- but reading, it's something I

 8     would have signed when I started.

 9        Q.    Is there anything in here that's inconsistent

10     with your understanding of the au pair program

11     guidelines, referring to Exhibit 5?

12              MR. PETTERSON:  Objection.

13        Q.    (BY MR. REID)  You can answer.

14        A.    This is pretty accurate with everything, with

15     all the -- all the rules for the au pair program.

16        Q.    And aside from this agreement, did you enter

17     into any other contracts or agreements with the

18     Lemings?

19        A.    Besides from that?

20        Q.    Besides from -- besides this agreement, did

21     you sign any -- any agreements with the host family?

22        A.    No.

23              MR. PETTERSON:  Objection.

24        Q.    (BY MR. REID)  When you were living with the

25     host family, how many individuals resided in the home,
```

Hansen & Company, Inc. Registered Professional Reporters
(303) 691-0202 * (303) 691-2444

EXHIBIT 2

SANTOS DANIELA LEMUS TRIGUEROS - 03/23/2018

```
 1    UNITED STATES DISTRICT COURT

 2    FOR THE DISTRICT OF COLORADO

 3    ------------------------------------------------x
      JOHANA PAOLA BELTRAN, LUSAPHO HLATSHANENI,
 4    BEAUDETTE DEETLEFS, ALEXANDRA IVETTE GONZALEZ,
      JULIANE HARNING, NICOLE MAPLEDORAM, LAURA MEJIA
 5    JIMINEZ, and SARAH CAROLINE AZUELA RASCON,

 6                    Plaintiffs,

 7
                 -against-          Civil Action No:
 8                                  14-cv-03074-CMA-CBS

 9    INTEREXCHANGE, INC., USAUPAIR, INC., GREATAUPAIR,
      LLC, EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT
10    AUPAIR, EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
      CULTURAL HOMESTAY INTERNATIONAL, CULTURAL CARE,
11    INC., d/b/a CULTURAL CARE AU PAIR, AUPAIR INC.,
      AU PAIR INTERNATIONAL, INC., APF GLOBAL EXCHANGE,
12    NFP, d/b/a AU PAIR FOUNDATION, AMERICAN INSTITUTE
      FOR FOREIGN STUDY, d/b/a AU PAIR IN AMERICA,
13    AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GOAUPAIR,
      AGENT AU PAIR, A.P.E.X. AMERICAN PROFESSIONAL
14    EXCHANGE, LLC, d/b/a PROAUPAIR, 20/20 CARE EXCHANGE,
      INC., d/b/a THE INTERNATIONAL AU PAIR EXCHANGE,
15    ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GOAUPAIR, and
      GOAUPAIR OPERATIONS, LLC,
16                    Defendants.
      ------------------------------------------------x
17         EXAMINATION BEFORE TRIAL of the Plaintiff,

18    SANTOS DANIELA LEMUS TRIGUEROS, taken by the

19    Defendant, pursuant to Court Order, held at the

20    offices of Ogletree, Deakins, Nash, Smoak & Stewart,

21    P.C., 1745 Broadway, 22nd Floor, New York, New York

22    10019, on March 23, 2018, at 1:28 p.m., before a

23    Notary Public of the State of New York.

24    ****************************************************

25
```

MOVANT'S APP. 4

```
 1                        S. LEMUS
 2    screen a document that has been marked Trigueros
 3    Deposition Exhibit 3.
 4          Do you see this document on the screen?
 5    A.  Yes.
 6    Q.  Do you see where it says Host Family and Au
 7    Pair/Companion Agreement?
 8    A.  Yes.
 9    Q.  Can you take just a minute to review the
10    document, and I would ask that to the extent you
11    need Mr. Valdivieso to scroll down so you can see
12    the entire document, please just ask him when you
13    are ready.
14    A.  Okay.
15    Q.  After you are done reviewing, please let me
16    know.
17    A.  Okay.
18          THE WITNESS:  Can you scroll down,
19          please.
20    A.  Okay, I finished.
21    Q.  Okay, thank you.
22          Have you seen this document before?
23    A.  Yes.
24    Q.  What is it?
25    A.  It's, like, the agreement with the family and
```

MOVANT'S APP. 5

```
 1                       S. LEMUS
 2    the Au Pair in America program.
 3       Q.  Do you see at sort of the bottom of the
 4    agreement, the screen, where it says signature of au
 5    pair?  Do you see that?
 6       A.  Yes.
 7       Q.  Is that your signature?
 8       A.  Yes.
 9       Q.  Did you review this document before you
10    signed it?
11       A.  Yes.
12       Q.  Did you understand the document after you
13    reviewed it?
14             MR. VALDIVIESO:  Objection to form.
15             You may answer the question.
16       A.  Yes.
17       Q.  Did you understand the document when you
18    signed it?
19             MR. VALDIVIESO:  Objection to form.
20             You may answer it.
21       A.  Yes.
22       Q.  Is there anything in the document that is
23    inconsistent with your understanding of the au pair
24    program guidelines?
25             MR. VALDIVIESO:  Objection to form.
```

MOVANT'S APP. 6

```
 1                      S. LEMUS
 2           You may answer.
 3    A.  Can I have time to talk to my attorney?
 4    Q.  No, not while the question is pending.  You
 5  have to answer it first.
 6    A.  Yes.  I understood the form.
 7    Q.  Okay, but that was not my question.  Would
 8  you like me to have the court reporter read the
 9  question back?
10    A.  Yes.
11           (Whereupon, the record was read by the
12       reporter.)
13           MR. VALDIVIESO:  Objection to form and
14       foundation.
15           You may answer the question unless
16       Mr. Tucker is going to rephrase it.
17    Q.  Please go ahead.
18    A.  No, no.  Everything was fine.  I agreed with
19  the form.
20           MR. VALDIVIESO:  I am just going to make
21       a suggestion here.
22           If Ms. Lemus doesn't understand a
23       question, I am just reminding you that you
24       are allowed to ask for a translation if the
25       question isn't clear.
```

MOVANT'S APP. 7

```
 1                    S. LEMUS
 2             THE WITNESS:  Okay.
 3    Q.  Is there anything in this document that is
 4  inaccurate?
 5             MR. VALDIVIESO:  Objection to form.
 6    A.  No, there isn't.
 7             MR. TUCKER:  Can we look at Exhibit 4,
 8        please.
 9             MR. VALDIVIESO:  Yes.
10             MR. TUCKER:  Thank you.
11             THE WITNESS:  Can I have time to talk to
12        my lawyer?
13             MR. TUCKER:  Yes, that's fine.  How long
14        do you want to break?
15             THE WITNESS:  Just, like, three minutes.
16             MR. TUCKER:  Okay.  Just let us know when
17        you want to start.  So we are going to go off
18        the record on the video now.  So we are now
19        off the record.
20             (Whereupon, a recess was taken at this
21        time.)
22             MR. TUCKER:  I believe before we broke I
23        asked Mr. Valdivieso if he could put
24        Exhibit 4 on the screen.
25    Q.  Ms. Lemus, do you see the document on the
```

MOVANT'S APP. 8

EXHIBIT 3

LILIAM ARIAS - 03/29/2018

```
 1   UNITED STATES DISTRICT COURT

 2   FOR THE DISTRICT OF COLORADO

 3   -----------------------------------------------------x
     JOHANA PAOLA BELTRAN, LUSAPHO HLATSHANENI,
 4   BEAUDETTE DEETLEFS, ALEXANDRA IVETTE GONZALEZ,
     JULIANE HARNING, NICOLE MAPLEDORAM, LAURA MEJIA
 5   JIMINEZ, and SARAH CAROLINE AZUELA RASCON,

 6                   Plaintiffs,

 7
                 -against-          Civil Action No:
 8                                  14-cv-03074-CMA-CBS

 9   INTEREXCHANGE, INC., USAUPAIR, INC., GREATAUPAIR,
     LLC, EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT
10   AUPAIR, EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
     CULTURAL HOMESTAY INTERNATIONAL, CULTURAL CARE,
11   INC., d/b/a CULTURAL CARE AU PAIR, AUPAIR INC.,
     AU PAIR INTERNATIONAL, INC., APF GLOBAL EXCHANGE,
12   NFP, d/b/a AU PAIR FOUNDATION, AMERICAN INSTITUTE
     FOR FOREIGN STUDY, d/b/a AU PAIR IN AMERICA,
13   AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GOAUPAIR,
     AGENT AU PAIR, A.P.E.X. AMERICAN PROFESSIONAL
14   EXCHANGE, LLC, d/b/a PROAUPAIR, 20/20 CARE EXCHANGE,
     INC., d/b/a THE INTERNATIONAL AU PAIR EXCHANGE,
15   ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GOAU PAIR,
     and GOAUPAIR OPERATIONS, LLC,
16                   Defendants.
     -----------------------------------------------------x
17           EXAMINATION BEFORE TRIAL of the Plaintiff,

18   LILIAM ARIAS, taken by the Defendant, pursuant to

19   Court Order, held at the offices of Ogletree,

20   Deakins, Nash, Smoak & Stewart, P.C., 1745 Broadway,

21   22nd Floor, New York, New York 10019, on March 29,

22   2018, at 9:20 a.m., before a Notary Public of the

23   State of New York.

24   ***************************************************

25
```

```
 1                         L. ARIAS
 2      Q.  Was any of the training specific to the
 3  ▆▆▆▆▆▆▆  family?
 4      A.  No.
 5      Q.  How long was the orientation?
 6      A.  I don't remember.  It was three or four days.
 7      Q.  When did the orientation occur?
 8      A.  Before going to meet the ▆▆▆▆▆▆▆ family.
 9      Q.  Did you sign a written agreement with the
10  ▆▆▆▆▆▆▆  family and Au Pair in America?
11      A.  I don't remember.
12      Q.  I am going to ask you to please take a look
13  at the document that has been marked Exhibit 3.  It
14  looks like this (indicating).  So if you could, just
15  please review that document and after you have done
16  so, just let me know.
17      A.  Okay.
18      Q.  Thank you.
19      A.  Okay.
20      Q.  Have you seen this document before?
21      A.  Yes.
22      Q.  What is it?
23      A.  Like, it's an agreement that I have to sign
24  to be -- to say that I agree with the program.
25      Q.  Did you sign this agreement?
```

MOVANT'S APP. 10

```
 1                       L. ARIAS

 2      A.  Yes.

 3      Q.  Did you review the agreement before you

 4   signed it?

 5      A.  Yes.

 6      Q.  Did you understand the agreement after you

 7   reviewed it?

 8      A.  Yes.

 9      Q.  Is there anything in the agreement that is

10   inaccurate?

11      A.  Not sure, no.

12      Q.  Aside from this agreement -- and when I say

13   this agreement, we are talking about the document

14   that has been marked Exhibit 3 -- did you enter into

15   any other written agreements with the

16   family?

17      A.  I don't remember.
```



```
24      Q.  Does that include yourself or no?

25      A.  No.
```

Deposition of Lusapho Hlatshaneni          EXHIBIT 4
September 7, 2016

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

---

JOHANA PAOLA BELTRAN; et al.,

     Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.,

     Defendants.

---

VIDEO DEPOSITION OF LUSAPHO HLATSHANENI

SEPTEMBER 7, 2016

---

PURSUANT TO NOTICE and the Colorado
Rules of Civil Procedure, the video deposition of
LUSAPHO HLATSHANENI was taken on behalf of the
Defendant American Institute for Foreign Study,
Inc., Au Pair In America, Au Pair Foundation at
1801 California Street, Toronto Room, Denver,
Colorado, on September 7, 2016, at 9:11 a.m., before
Renee S. Wilson, Certified Shorthand Reporter and
Notary Public within the State of Colorado.

MOVANT'S APP. 12

Deposition of Lusapho Hlatshaneni
September 7, 2016

Page 144

1    A.    No.

2    Q.    **Why not?**

3    A.    Because he would pay me eventually.

4    Q.    **When you say he would pay you eventually,**

5    **what does that mean?**

6    A.    I would get paid.

7    Q.    **You would get paid the full amount?**

8    A.    Yes.

9    Q.    **Did he ever provide you any extra money**

10   **outside of what he owed you?**

11   A.    Yes.

12   Q.    **How much?**

13   A.    Well, he paid me $200.

14   Q.    **Per week?**

15   A.    Per week.

16   Q.    **How often did he do that?**

17   A.    All the time.

18   Q.    **Was his paying you $200 a week in compliance**

19   **with the Au Pair Program that you were trained on**

20   **and learned about?**

21   A.    No.

22   Q.    **Why was it not in compliance?**

23   A.    Because we were told by Au Pair In America

24   that we're supposed to get paid a stipend of $195.75

25   a week.

Wilson & Associates, LLC
(303) 588-0079

MOVANT'S APP. 13

EXHIBIT 5

Maidelyn Cristina Barrera Martinez
3/27/2018

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO


JOHANA PAOLA BELTRAN, et al.,*

      Plaintiffs,        *

v.                        *

INTEREXCHANGE, INC., et al., *Civil Action No.

      Defendants.      *1:14-cv-03074-CMA-KMT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

      The deposition of MAIDELYN CRISTINA BARRERA

MARTINEZ, a plaintiff and the witness herein, was

called for examination by counsel for the

defendants, pursuant to Amended Notice of

Deposition and Rules 26 and 30 of the Federal Rules

Rules of Civil Procedure, took  at 1:10 p.m. at

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.,

1909 K Street, Northwest, Suite 1000, Washington,

D.C., before Donna L. Linton, RMR-CLR, and a Notary

Public in and for the District of Columbia.


Reported By:

      Donna L. Linton, RMR-CLR

Al Betz & Associates, Inc.
877-402-DEPO (3376)

MOVANT'S APP. 14



Page 18

1   BY MR. TUCKER:
2       Q.  Ms. Barrera, the court reporter has just
3   handed you a document that has been marked as
4   Barrera Exhibit 3.  I'm going to ask you, please,
5   to review this document and let me know after
6   you've done so.
7       A.  Yes.
8       Q.  Thank you.
9       A.  Okay.
10      Q.  Have you seen this document before?
11      A.  Yes.
12      Q.  What is it?
13      A.  It's the agreement between the host family
14  and myself.
15      Q.  Is that your signature at the bottom of
16  the page?
17      A.  Yes.
18      Q.  Did you review this document before
19  signing it?
20      A.  Yes.
21      Q.  Did you understand the document after you
22  reviewed it?

Page 19

1       A.  Yes.
2       Q.  Is there anything inaccurate in this
3   document?
4       A.  No.
5       Q.  Aside from this agreement, did you enter
6   into any other agreements with your host family?
7       A.  No.

17      MR. PETTERSON:  Objection.

20      BY MR. TUCKER:

MOVANT'S APP. 15

Maidelyn Cristina Barrera Martinez
3/27/2018

11  (Pages 38 to 41)

Page 38

1  scheduled hours?
2      MR. PETTERSON:  Objection.
3      A.  Because I wanted to do it, and I always
4  keep track -- I like to do it.  That's the way I
5  like to do things so....
6  BY MR. TUCKER:
7      Q.  How do you define work?
8      MR. PETTERSON:  Objection.  It calls for a
9  legal conclusion.
10     A.  The time I'm dedicated to a certain
11  activity that I report, dedicated hours
12  specifically to that.
13  BY MR. TUCKER:
14
15
16
17
18
19
20
21     Q.  Did you receive a weekly stipend during
22  your placement?

Page 39

1      A.  Yes.
2      Q.  Did you receive a stipend every week?
3      A.  Every week.  Every Friday.
4      Q.  Who paid you your stipend?
5      A.  The host dad.
6      Q.  How was the stipend paid?
7      A.  By deposit.
8      Q.  And that was the only method of payment?
9      A.  Yes.
10     Q.  Did anyone other than your host family
11  ever pay you your stipend?
12     A.  No.
13     Q.  Did the amount of your stipend ever
14  change?
15     A.  No.
16     Q.  What was the amount of your stipend?
17     A.  $200 a week.
18     Q.  Did your host family determine the stipend
19  amount?
20     MR. PETTERSON:  Objection.
21     A.  The agency was $195 and some cents and
22  they said they would round it to 200 because it was

Page 40

1  easier.
2  BY MR. TUCKER:
3      Q.  Can you take a look at Exhibit 3?  Do you
4  see the fifth check mark on the left-hand side?
5      A.  Yes.
6      Q.  Can you read into the record what it says
7  there?
8      A.  I/We understand that an au pair/companion
9  is to receive, at a minimum, the weekly stipend as
10  stipulated by regulations governing au pair
11  programs and set forth in Au Pair in America's
12  program materials.
13     Q.  What does that mean?
14     MR. PETTERSON:  Objection.
15     A.  That we were to receive at the minimum
16  what they stipulated which is 195 and some cents.
17  I don't recall exactly what cents.
18  BY MR. TUCKER:
19     Q.  And you received more than the minimum,
20  correct?
21     A.  Yes.
22     Q.  Who decided to pay you more than the

Page 41

1  minimum?
2      A.  I guess the host parents.
3      Q.  Did you ever ask your host family to
4  increase the stipend?
5      A.  No.
6      Q.  Aside from the weekly stipend, did you
7  receive any monetary payments during your
8  placement?
9      A.  One time I baby sat the one weekend and
10  they paid me extra.
11     Q.  How much?
12     A.  I don't recall.
13     Q.  You testified earlier that was the one
14  time when you worked on a weekend.  Is that the
15  time to which you're referring?
16     A.  Yes.
17     Q.  Okay.  Got it.  Did you ever receive a
18  bonus?
19     A.  No.
20     Q.  Did you receive any benefits during your
21  placement?
22     MR. PETTERSON:  Objection.

EXHIBIT 6

**Page 1**

1                  UNITED STATES DISTRICT COURT

2                     DISTRICT OF COLORADO

3     _____

4     JOHANA PAOLA BELTRAN, et al.,

5                        Plaintiffs,

6         vs.              Case No. 1:14-CV-03074-CMA-KMT

7     INTEREXCHANGE INC., et al.,

8                        Defendants.

9     _____

10

11

12         THE VIDEOTAPED DEPOSITION OF EILEEN BOEHNE

13                    DECEMBER 20, 2017

14

15

16

17

18

19

20         PATRICIA A. NILSEN, RMR, CRR, CRC

21

22

23

24

25

MOVANT'S APP. 17

Page 129

```
 1      A.      Yes.
 2      Q.      Okay.  Was this part of the conversation
 3      that you just described?
 4      A.      Yes.
 5      Q.      Okay.  So just a minute ago you testified
 6      that Ms. Gabrachevsky -- Gabrachevsky, is that
 7      correct?
 8      A.      Yeah.
 9      Q.      You testified that Ms. Gabrachevsky said,
10      quote, we don't want you to pay more than that.
11      A.      Right.
12      Q.      Right?  But -- and here in paragraph six,
13      it says, I was told that we could not pay more than
14      that.
15              Do you see that?
16      A.      Yeah.
17      Q.      So isn't that inconsistent with your
18      earlier testimony?
19      A.      Well, I'm not sure if she was saying
20      that -- I don't remember if she said that it was --
21      which part she said, but she told me that the State
22      Department regulated how much they were supposed to
23      get.
24      Q.      Okay.  If you could just turn your eyes
25      down towards paragraph seven, please, and just
```

Page 132

1      that accurate?

2      A.       It's possible.  I'd have to go back to my

3      files.  It was a long time ago.  If I do, it would

4      be scanned, but I have -- I mean, I don't know.

5      Q.       Have you ever visited the APIA website?

6      A.       Yeah.

7      Q.       Do you recall when?

8      A.       Well, I -- over the years I've looked at

9      it a lot.  I looked at it the other day when I was

10     looking at the current fees.

11     Q.       Did you look at it while you were

12     participating in the program?

13     A.       Yeah.

14     Q.       Okay.  Now just to clarify some of the

15     earlier testimony.  I know you talked a little bit

16     about the stipend amounts, but I just want to be

17     specific to your APIA au pairs.  Did you ever

18     provide any of your APIA au pairs a weekly stipend

19     in excess of 195.75?

20     A.       Yeah.  The last -- starting in like 2011,

21     I just started doing the 200.  And then there was

22     one that we had that was considered a -- I don't

23     know what you call it, like an extraordinaire or

24     something.  She was in rematch for three months,

25     and we had her the last three months.  And so she

MOVANT'S APP. 19

1     got 250.

2     Q.     Okay.  Other than that particular au pair

3     who you paid 250, did you pay any of your APIA

4     au pairs a stipend in excess of 200 a week?

5     A.     No.

6     Q.     Okay.  Aside from the weekly stipend, did

7     you ever provide any other payments to any of your

8     APIA au pairs?

9     A.     I just gave them gifts and different

10     things.  And I, you know, paid for things, but I

11     didn't give them cash.

12     Q.     You said you didn't give them -- sorry.  I

13     couldn't hear that last part.

14     A.     I never gave them any kind of cash or

15     payments, but I was generous with gifts.

16     Q.     Can you give some examples of gifts?

17     A.     Well, we would take them on vacation with

18     us, or I would buy them things that maybe they

19     wouldn't have gotten for themselves, or give them

20     really nice Christmas gifts and birthday gifts.

21     Q.     Right.  But I'm asking specifically, like

22     the -- can you recall any Christmas gifts?

23     A.     Yes.  I gave Raquel a really nice external

24     hard drive that was probably like $100.  I gave --

25     well, Cynthia wasn't our au pair anymore, and she

MOVANT'S APP. 20