IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

        Defendants.

_____

**MOTION OF DEFENDANT CULTURAL CARE, INC.
TO DISMISS THE THIRD AMENDED COMPLAINT
IN PART PURSUANT TO FED. R. CIV. P. 12(b)(6)**
_____

Defendant Cultural Care, Inc. ("CCI") hereby moves to dismiss in part claims asserted by newly named Plaintiffs Cathy Caramelo ("Ms. Caramelo") and Linda Elizabeth ("Ms. Elizabeth") added in Plaintiffs' Third Amended Complaint, ECF 983 ("TAC").[1] Ms. Elizabeth, who is not even a member of the Cultural Care Pennsylvania Subclass that she purports to represent (*see infra* pt. I), waited too long to assert her claims under Pennsylvania law, and all of her claims are time-barred. In addition, Plaintiffs' generalized claims for breach of fiduciary duty, constructive fraud, and

---

[1] In their motion for leave to file the TAC, Plaintiffs posited that Ms. Caramelo, Ms. Elizabeth, and a third new named plaintiff would not be asserting new claims. Pls.' Mot. to Amend at 2, ECF 561. That is true only insofar as Plaintiffs have pleaded non-specific, categorical common law and statutory claims under the laws of the 50 states and the District of Columbia. *See* TAC ¶¶ 605-16, 628-36. As this Court recognized, the addition of these new plaintiffs allows Plaintiffs to assert new claims under the laws of Pennsylvania, Texas, and Illinois. *See* Order on Jt. Report for R.23 Notif. Plan at 3, 6-8, ECF 977. Presumably, Ms. Caramelo and Ms. Elizabeth intend to encompass such state-specific claims, without state-specific allegations, under Counts III (Breach of Fiduciary Duty), IV (Negligent Misrepresentation), V (Constructive Fraud or Fraudulent Concealment), VI (Consumer Protection), and IX (Claims for Unpaid Wages).

violation of consumer protection statutes are not cognizable under the substantive legal doctrines of Pennsylvania and Texas law.  Finally, Ms. Caramelo's and Ms. Elizabeth's claims founded on the Texas Minimum Wage Act, Tex. Lab. Code § 62.001, *et seq.* are barred by a number of statutory prohibitions.  For these reasons, and as discussed below, the Court should dismiss the referenced new claims asserted in the TAC.

## CERTIFICATION OF COMPLIANCE WITH CMA CIV. PRACTICE STANDARD 7.1D

The Court granted Plaintiffs leave to file a Third Amended Complaint in order to add certain new named Plaintiffs.  ECF 977.  Plaintiffs have now filed that Third Amended Complaint, and they do not have leave to make further amendments.  Nevertheless, pursuant to this Court's Civil Practice Standard 7.1D(a), counsel for CCI emailed Plaintiffs' counsel on April 25, 2018 outlining the grounds for dismissal set forth below and inviting further conferral.  Following further email exchanges, counsel agreed to schedule a teleconference.  Counsel participated in a teleconference on April 26, 2018.  During the telephonic conferral, the parties discussed the grounds for Cultural Care's motion and Plaintiffs' position.  Given that Cultural Care's motion addresses issue of law, Cultural Care determined that these issues are not subject to correction as contemplated by CMA Civ. Practice Standard 7.1D(a).

## BACKGROUND

Plaintiffs initiated this Action on November 13, 2014, identifying a single named plaintiff who was sponsored by defendant InterExchange, Inc. and who spent her au pair program term in Colorado.  Compl. at 3, ECF 1.  When Plaintiffs sought to amend the complaint on June 3, 2017 to add Ms. Caramelo and Ms. Elizabeth, there were no

2

named plaintiffs sponsored by CCI who had spent their au pair program term in Pennsylvania or Texas. *See* App. A to Pls.' Mot. for R.23 Cert. at 7, ECF 559-1 (identifying Ms. Caramelo and Ms. Elizabeth as the purported class representatives for the putative Cultural Care Pennsylvania and Texas Subclasses).

On February 13, 2018, the Court denied Plaintiffs leave to amend to add Ms. Caramelo and Ms. Elizabeth and a third former au pair as named plaintiffs. Order Denying Mot. to Amend, ECF 850. On April 9, 2018, the Court *sua sponte* reversed the Order in part, to the extent that Plaintiffs were granted leave to file a third amended complaint adding the three new plaintiffs. Order on Jt. Report for R.23 Notif. Plan at 3, 6-8, ECF 977. Plaintiffs filed the TAC on April 11, 2018.

## ARGUMENT

"The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). For the reasons discussed below, the referenced new state claims fail both procedurally and substantively.

### I. MS. ELIZABETH IS NOT A MEMBER OF THE SUBCLASS THAT SHE PURPORTS TO REPRESENT.

Ms. Elizabeth completed her au pair program term in Pennsylvania in 2008. TAC

¶ 530.[2]  Plaintiffs sought certification of a national class of au pairs sponsored by Defendants from 2009 to the present, and the state-based subclasses are subgroups within that national class.  Rodriguez Decl. for R.23 Cert. ¶ 162, ECF 558 (identifying size of putative class based on au pairs joining the program from 2009 onwards); R.23 Notice Plan ¶ V, ECF 1011-1 ("You are receiving this email because you were an au pair from 2009 – present. . . . [Y]ou are now a member of a Class of Au Pairs . . . ."); Proposed Class Notice at 1, ECF 1011-2 ("The Court has allowed this lawsuit to be a class action on behalf of au pairs who were sponsored by . . . J-1 visa sponsors at any time from 2009 to the present."); *id.* at 7 ("If you were an au pair sponsored by one of the Sponsors **before January 1, 2009**, you are not included in the Class.").

Plaintiffs sought to add Ms. Elizabeth as a plaintiff because no named plaintiff had standing to assert the Pennsylvania subclass claims against CCI.  *See* Class Cert. Order at 15, ECF 828.  In addition to the fact that Ms. Elizabeth's claims are barred by the statutes of limitation, *see infra* pt. II*,* leaving her without standing to assert these claims,[3] Ms. Elizabeth is not a member of the Cultural Care Pennsylvania Subclass because her tenure as a Pennsylvania au pair concluded before 2009.  Her claims must

---

[2]  After returning to Germany for several years, Ms. Elizabeth returned as an au pair in Texas in 2013.  *See* TAC ¶¶ 531, 533-34.

[3]  Ms. Elizabeth cannot rely on the class's membership to supply standing:  "[A] plaintiff 'may not use the procedural device of a class action to boot strap [her]self into standing [s]he lacks under the express terms of the substantive law.'"  *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 560 (D. Colo. 2014) (quoting *Akerman v. Oryx Comm'ns, Inc.*, 609 F. Supp. 363, 377 (S.D.N.Y. 1984)).  Moreover, Plaintiffs cannot rely upon Rule 15 to relate claims of subsequent intervenors like Ms. Elizabeth back to the original complaint where the single named Plaintiff lacked Article III standing to assert those Pennsylvania claims—and the Court lacked jurisdiction over those claims—at the outset.  *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 111 (2d Cir. 2013).

therefore be dismissed, and the Cultural Care Pennsylvania Subclass decertified.

## II. MS. ELIZABETH'S CLAIMS UNDER PENNSYLVANIA LAW ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

### A. The Allegations in the Third Amended Complaint Establish that the Pennsylvania Claims Are Barred by the Statutes of Limitations.

"Pennsylvania favors strict application of the statutes of limitation." *Wachovia Bank, N.A. v. Ferretti*, 2007 PA Super 320, ¶ 22. Upon establishing the applicability of the statute of limitations, Plaintiffs must prove that an exception applies. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985). As discussed below, there is no applicable exception to the bars against recovery for these untimely claims.

Even if Ms. Elizabeth were a member of the subclass, which she is not, the five claims that she asserts under Pennsylvania law arising out of her time as an au pair from 2007 to 2008—breach of fiduciary duty, negligent misrepresentation, constructive fraud, consumer protection, and a claim for unpaid wages, *see* TAC ¶¶ 526, 605-16, 628-36—are all untimely. The statutes of limitations for these claims were from two to six years duration, and all expired before the filing of this litigation. *See generally Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 468 A.2d 468, 471 (Pa. 1983) ("[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations, . . . even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy . . . .") (citations omitted); *accord* Class Cert. Order at 26, ECF 828 (claims accrued when plaintiffs began working).

Pennsylvania law requires Ms. Elizabeth to have asserted her common law claims (breach of fiduciary duty, negligent misrepresentation, and constructive fraud)

5

within two years of accrual.  See 42 Pa. Cons. Stat. § 5524(7) (two-year statute of limitations for tort actions).[4]  Accrual occurred at the beginning of her tenure in 2007, such that statute of limitations ran in 2009, five years before the filing of the litigation.  Even if the claims were incorrectly deemed to run from the last date of her au pair tenure in 2008, the statute of limitations had still run well before the filing.

The statute of limitations for Ms. Elizabeth's consumer protection claim asserted pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.* is six years from accrual.  Accrual occurred "as soon as the right to institute and maintain a suit arises, which generally is when the injury was inflicted."  *Drelles v. Mfrs. Life Ins. Co.*, 2005 PA Super 249, ¶ 13; *see also Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 816 n.4 (Pa. 2017) (claim accrued upon customer's purchase of insurance policy).  In this instance, accrual would be on her first day as an au pair, or no later than the first date on which a stipend was paid, because the basis for this claim is that the sponsors allegedly "tricked the *au pairs* to sign up for their programs based on false and misleading representations about the wage."[5]  TAC ¶ 616.

The statute of limitations for Ms. Elizabeth's claim for unpaid wages under the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. § 260.9a, is three years from accrual. *Evans v. Sodexho*, 2008 PA Super 53, ¶ 18 & n.7.  Even an accrual date

---

[4] *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 277 (Pa. Super. Ct. 2016) (breach of fiduciary duty); *Toy v. Metro. Life Ins. Co.*, 2004 PA Super 404, ¶ 17 (negligent misrepresentation); *Frost v. Zeff*, No. 003279, 2015 Phila. Ct. Com. Pl. LEXIS 100, at *5-6 (Pa. Ct. Com. Pl. Apr. 27, 2015) (constructive fraud) (attached hereto as Exhibit A).

[5] As discussed *infra*, *see especially* n.7 and p. 10, CCI did not recruit or contract with Ms. Elizabeth or any other au pair.  CCI recruits and contracts with host families.

on her last day as an au pair in 2008 would result in extinguishment of claims by 2011.

### B.     Ms. Elizabeth's Claims Are Not Saved by the Relation-Back Rule.

While Colorado's relation-back rule is in accord with the federal relation-back rule, *see* Colo. R. Civ. P. 15(c), Ms. Elizabeth's tenure as an au pair in Pennsylvania ended in September 2008, more than six years (the longest applicable statute of limitation) before the November 2014 filing.  Hence, all of Ms. Elizabeth's claims founded on Pennsylvania law are barred by the applicable statutes of limitation.

### C.     There Is No Legal Basis to Toll the Statutes of Limitations.

#### 1.     Pennsylvania's Discovery Rule Does Not Apply in the Absence of Reasonable Diligence by an Untimely Plaintiff.

Pennsylvania recognizes an exception to the statute of limitations known as the discovery rule in circumstances that "arise[] from the inability, despite the exercise of diligence, to determine the injury or its cause, not upon a retrospective view of whether the facts were actually ascertained within the period." *Pocono Int'l Raceway*, 468 A.2d at 471-72.  "The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997).  Reasonable diligence is an objective standard as applied to a reasonable person. *Id.*

Ms. Elizabeth cannot invoke the discovery rule because "[m]ere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the statute." *Taylor v. Tukanowicz*, 435 A.2d 181, 183 (Pa. Super. Ct. 1981).  Lack of understanding of the law or legal process likewise does not toll the statute.  *See Wachovia Bank*, 2007 PA Super 320, ¶¶ 22-23; *Namani v. Bezark, Lerner, & DeVirgilis, P.C.*, 160 A.3d 244

(table), 2017 WL 57153, at *2-3 (Pa. Super. Ct. Jan. 5, 2017).

The death knell for any claim of tolling is this: Publicly available documents comprise the factual foundation of Plaintiffs' claims, however meritorious or lacking in merit such claims may prove to be. Official public postings were readily available for review between 2008 and 2014 that indicated the purported basis for these claims. Such postings included the Department of State minimum weekly stipend notice on the Department's J-1 visa website, and the federal and state minimum wage laws. Non-governmental, but nonetheless publicly available, postings included the various sponsors' websites referencing the Department of State stipend and other applicable information. If Ms. Elizabeth had exercised objectively reasonable diligence, she would have discovered the basis for her alleged claims, however meritorious or lacking in merit such claims may prove to be, well before November of 2014, much less May of 2017 when she first came forward. Therefore, the discovery rule does not apply. *Pocono Int'l Raceway*, 468 A.2d at 471 ("The salient point giving rise to the equitable application of the exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff, to know of the injury.").

### 2. Plaintiffs Have Not Alleged the Fraudulent Concealment Exception.[6]

Pennsylvania also recognizes the equitable exception of fraudulent concealment to toll statutes of limitation. "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of

---

[6] Plaintiffs have asserted Restraint of Trade in Violation of 15 U.S.C. §§ 1 *et seq.* (Count I), RICO violations (Count II), and FLSA violations (Count VIII), which relate to the national class and are not the subject of this motion. TAC ¶¶ 589-603, 617-27.

8

concealment upon which the plaintiffs justifiably relied." *Kingston Coal Co. v. Felton Mining Co.*, 690 A.2d 284, 291 (Pa. Super. Ct. 1997). "The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005). "Mere mistake or misunderstanding is insufficient. Also, mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment." *Glenbrook Leasing Co. v. Beausang*, 2003 PA Super 489, ¶ 10 (quoting *Lange v. Burd*, 2002 PA Super 158).

With regard to Count III for Breach of Fiduciary Duty, Ms. Elizabeth claims that she had a "special relationship of trust" with her sponsor (TAC ¶ 607); but, at the same time, she alleges that the sponsor was her "third party" employer. *See, e.g.,* TAC ¶ 361. Employers do not stand in a fiduciary relationship to their employees, as discussed *infra* pt. III.A. In addition, a fiduciary relationship exists only under extraordinary circumstances that are not alleged to, and do not, exist here. *See infra* pt. III.A. The purported breach of the alleged duty was "setting an illegal wage and [] misleading the au pairs to believe that the weekly wage was fixed by law and could not be altered." TAC ¶ 607. But, purportedly "misleading" a plaintiff—which, of course, is denied—is not the equivalent of "an affirmative independent act of concealment upon which the plaintiffs justifiably relied." *Kingston Coal Co.*, 690 A.2d at 291. Ms. Elizabeth does not assert a single allegation of affirmative concealment by CCI that the Department of State-calculated stipend was a minimum, or that it was calculated on the basis of federal—not state—minimum wage. Such facts, including the public postings

9

referenced *supra*, belie any suggestion or inference of affirmative concealment.[7]

With regard to Count IV for negligent misrepresentation, Ms. Elizabeth alleged that the sponsors "made misstatements of material facts for the *au pairs'* guidance," including with regard to the legality and fixed nature of the stipend.  TAC ¶ 610.  An alleged *negligent* "misstatement" is the antithesis of an act of affirmative concealment.

With regard to Count V for constructive fraud,[8] Plaintiff alleges that "[t]he Sponsors, with the intent to get the *au pairs* to sign up at an exact wage of $195.75, failed to disclose" that "the $195.75 weekly wage could be illegal." TAC ¶ 613.  But, this allegation highlights the pleading deficiencies that treat all sponsors as if they operate in the same manner, when in fact they do not:  CCI recruits only host families, not au pairs, and therefore did not "sign up" Ms. Elizabeth, or any other au pair, at any wage level.  ECF 862-19 (Defs. S.J. R. App. 535 – Jordan Dep. 37; Defs. S.J. R. App. 565 – Rannefors Dep. 242-43).  While Count V lacks allegations sufficient to sustain a constructive fraud claim in any event, *see infra* pt. III.B, the allegations are inapplicable to CCI.  Fraudulent concealment will not save Ms. Elizabeth's untimely claims.

### III.  CERTAIN OF PLAINTIFFS' PENNSYLVANIA AND TEXAS CLAIMS ARE INAPPLICABLE OR OTHERWISE FAIL AS A MATTER OF LAW.

Plaintiffs have elected a broad brush, non-specific approach to pleading, *i.e.*,

---

[7]   In addition, CCI does not recruit or perform initial screening of prospective au pairs or assign them to homes.  A non-defendant entity handles recruitment and preliminary screening (ECF 862-19 (Defs. S.J. R. App. 535 – Jordan Dep. 37; Defs. S.J. R. App. 565 – Rannefors Dep. 242-43)), and au pairs choose their own host families (ECF 862-19 (Defs. S.J. R. App. 543 – Jordan Dep. 181-84)).

[8]   Although Plaintiffs label Count V as "Constructive Fraud or Fraudulent Concealment," there is no independent cause of action for fraudulent concealment in Pennsylvania.  *Battle v. Prison Health Servs.*, No. 1864 WDA 2013, 120 A.3d 391 (table), 2015 WL 6181266, at *5 (Pa. Super. Ct. Feb. 24, 2015).

identifying general common law doctrines (*e.g.*, negligent misrepresentation) and categories of state statutes (*e.g.*, consumer protection statutes), rather than alleging state-specific claims for each named Plaintiff.  *See* TAC ¶¶ 605-16, 628-36.  This approach necessarily limits the attention paid to the substantive law in each jurisdiction. The causes of action now claimed against CCI by Ms. Caramelo and Ms. Elizabeth under Pennsylvania and Texas law suffer from substantive deficiencies that require dismissal as a matter of law.

### A. Plaintiffs' Breach of Fiduciary Duty Claims Fail Under Pennsylvania and Texas Law.

It is difficult to discern upon which of the preceding 604 paragraphs of the TAC Mses. Caramelo and Elizabeth are relying in support of their breach of fiduciary duty claims (*see* TAC ¶ 605 (incorporating by reference each of the previous paragraphs to support the fiduciary duty claim)).  It appears that they are positing that the au pairs' mere participation in the au pair program establishes a fiduciary relationship with the sponsors.  In other words, CCI's purported fiduciary obligations are allegedly derived from the contract executed by the au pair—which CCI did not have with Mses. Caramelo or Elizabeth, or any other au pair, *see supra* n.7 & p. 10—or the regulations promulgated by the Department of State.  *See* TAC ¶ 607.

In Pennsylvania, a fiduciary duty will be imposed only where it is proven to exist by clear and convincing evidence.  *Yenchi*, 161 A.3d at 820 & n.10.  "The superior knowledge or expertise of a party does not impose a fiduciary duty on that party or otherwise convert an arms'-length transaction into a confidential relationship."  *Id.* at 823.  Ms. Elizabeth has asserted no allegations that CCI assumed decision-making

11

authority for her that would convert this arms-length relationship into a fiduciary duty.

Similarly, Texas requires more than an arms-length commercial transaction to create fiduciary duties. *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 861 (Tex. App. 2017) ("[T]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."). Plaintiffs offer no allegations that a special relationship of trust and confidence existed between CCI and either plaintiff, and subjective trust will not create a fiduciary obligation under Texas law. *Id.*

Plaintiffs' allegations do not state a plausible basis for the existence of a fiduciary relationship with respect to Ms. Caramelo and Ms. Elizabeth.

### B. Plaintiffs' Constructive Fraud Claims Are Not Cognizable Under Pennsylvania and Texas Law.

Plaintiffs' constructive fraud claims are founded on the theory that CCI allegedly made misrepresentations regarding the minimum weekly stipend amount to induce Ms. Caramelo and Ms. Elizabeth to join the au pair program. *See* TAC ¶ 613 ("The Sponsors, with the intent to get the *au pairs* to sign up at an exact wage of $195.75, failed to disclose . . . ."). As previously noted, CCI does not recruit or enter into contracts with au pairs at all. *See supra* n.7 & p. 10. Its sole recruiting efforts and contracts are with host families. *See supra* p. 11. As with the claim for breach of fiduciary duty, Pennsylvania and Texas law require a relationship of trust or confidence, *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 784 (E.D. Pa. 2008), and Texas requires "a preexisting special relationship of trust and confidence that is betrayed in *later* dealings." *Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App. 2004) (emphasis

12

added).  Because CCI did not recruit or contract with Ms. Caramelo or Ms. Elizabeth (*see supra* n.7 & p. 10), it had no pre-existing relationship with them.

      **C.**      **The Pennsylvania and Texas Consumer Protection Laws Do Not Apply Because the Claims Are Not Connected to the Purchase of Goods or Services and Are Founded Upon a Purported (But Disputed) Employment Relationship.**

Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq*. ("UTPCPL") applies only to purchasers of goods or services.  *See* 73 Pa. Stat. § 201-9.2(a) ("Any person who purchases or leases goods or services . . . may bring a private action . . . ."); *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241 (3d Cir. 2002).  "[Ms. Elizabeth] has not demonstrated that [s]he purchased or leased goods or services from [CCI], and therefore [her] UTPCPL claim must fail." *Shannon v. Equifax Info. Servs., LLC*, 764 F. Supp. 2d 714, 726 (E.D. Pa. 2011).  Moreover, if Plaintiffs argue that Ms. Elizabeth purchased a service through her application fee to seek employment, a characterization that Defendants deny, her fee was paid to an international entity that recruits and contracts with au pairs.  *See supra* n.7 & p. 10.  And, in any event, such an allegation, if accepted, would constitute a commercial transaction, *i.e.*, her purported employment, to which the UTPCPL does not apply.  *See Carpenter v. Shu-Bee's, Inc.*, No. 10-cv-0734, 2012 WL 2594276, at *6 (E.D. Pa. July 5, 2012) (dismissing UTPCPL claim based on purchase "for a commercial purpose which happened to take place in a residential setting" and "was not intended primarily for Plaintiff's personal, family or household use").

Plaintiffs' consumer protection claims are founded upon an alleged—and disputed—employment relationship with CCI.  However, Texas' Deceptive Trade

13

Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann.§ 17.41, *et seq.* ("DTPA") prohibits false, misleading, or deceptive acts in connection with *consumer* transactions. An employment relationship is a commercial transaction, not a consumer transaction. As with the UTPCPL, the DTPA applies to any person that "seeks or acquires by purchase or lease, any goods or services" (*id.* § 17.45(4)), such that the plain language of the statute precludes Plaintiffs' employment-based claims. *Lukasik v. San Antonio Blue Haven Pools*, 21 S.W.3d 394, 400 (Tex. App. 2000) ("To have standing to pursue a DTPA cause of action, a plaintiff must be a consumer. Therefore, consumer status is an essential element . . . .") (citations omitted). Texas law is clear that employment relationships are not within the purview of the DTPA, and this claim must be dismissed. *Stanissis v. DynCorp. Int'l LLC*, No. 3:14-CV-2736-D, 2015 WL 9478184, at *6 (N.D. Tex. Dec. 29, 2015) ("[P]laintiffs do not explain how entering into an employment contract with [defendant] qualifies as a 'purchase' from [defendant] . . . . Accordingly, plaintiffs have not pleaded sufficient facts . . . that they qualify as DTPA consumers."); *id.* at *6-7 (collecting cases); *see also Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex. App. 1991) ("[Plaintiff's relationship with defendant] is most closely akin to employment contracts, and no case has ever held employees are [DTPA] consumers under employment contracts.").

### D.   Plaintiffs' State-Based Wage-and-Hour Claims Are Exempted from the Texas Minimum Wage Act.

Both Ms. Caramelo and Ms. Elizabeth assert claims for unpaid wages under the Texas Minimum Wage Act, Tex. Lab. Code § 62.001, *et seq.* ("TMWA"). *See* TAC ¶¶ 628-36. Texas law, however, excludes domestic employment from the the TMWA:

14

> An employer is exempt from this [TMWA] with respect to the employment of a person who:
> (1) performs domestic services in or about a private home, including a person who performs the duties of baby-sitting in or out of the employer's home; or
> (2) lives in or about a private home and furnishes personal care for a resident of the home.

Tex. Lab. Code Ann. § 62.154.  Ms. Caramelo's and Ms. Elizabeth's duties were performed in a private home, in which they resided.  The exemption by its terms applies to joint employment relationships, including where the claimant resides in a home that is not the employer's.  *See id.*  These claims are expressly exempted from the TMWA.

Moreover, to the extent that Ms. Caramelo and Ms. Elizabeth are covered under the Fair Labor Standards Act, Texas law likewise excludes their claims from the TMWA. Tex. Lab. Code Ann. § 62.151.  This Court has already dismissed unpaid wages claims based on similar statutory provisions.  *See* Recommendation on Mot. to Dismiss at 35, ECF 240, *adopted in relevant part*, Order on Mot. to Dismiss at 35, ECF 258.

Finally, Texas law does not provide for overtime wages.  *See* Tex. Lab. Code Ann. § 62.051.  Plaintiffs cannot seek damages for overtime based on Texas law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Ms. Elizabeth's Pennsylvania claims in their entirety, as well as Ms. Caramelo's and Ms. Elizabeth's Texas claims for breach of fiduciary duty and constructive fraud and violations of Texas' Deceptive Trade Practices-Consumer Protection Act and Texas' Minimum Wage Act.

Dated:  April 27, 2018                              Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey (joan.lukey@choate.com)
Robert M. Buchanan, Jr. (rbuchanan@choate.com)
Michael T. Gass (mgass@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

16

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on April 27, 2018, I have caused to be electronically filed the foregoing **Motion of Defendant Cultural Care, Inc. to Dismiss the Third Amended Complaint in Part Pursuant to Fed. R. Civ. P. 12(b)(6)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Diane R. Hazel*