**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLI NA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
        and those similarly situated,

        Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

        Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT EXPERT AUPAIR'S
MOTION TO COMPEL DISCOVERY [ECF No. 978]**

---

## **Table of Contents**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT .................................................................................................................. 5

      I.     There is No Basis to Compel Responses to Expert AuPair's
Interrogatories. ...................................................................................................... 5

            A.   The Interrogatories Are Duplicative of Information Expert AuPair
Already Has Access To............................................................................. 5

            B.   The Interrogatories Seek Information Irrelevant to the FLSA Claims in
This Action. ............................................................................................. 8

      II.    *Au Pairs* Should Not Be Compelled to Respond to Improper Requests for
Admission. ......................................................................................................... 10

      III.   There is No Basis To Compel Any Additional Document Productions from
*Au Pairs*. ......................................................................................................... 12

CONCLUSION ............................................................................................................ 14

## PRELIMINARY STATEMENT

Through its motion, Expert AuPair is following the same playbook as other Defendants and attempting to use discovery to pick off opt-ins and reduce the size of its class.  Its motion makes passing reference to "21" *au pairs*, and to interrogatories, document requests, and requests for admission.  But it includes no specific demand for relief, or a proposed order, or similar indication that would clue the Court (and Plaintiffs' counsel) into precisely what it wants.  On the most generous tea-leaf reading of the brief, Expert AuPair seeks written and document discovery from some (or all) of a 21-member subset of its 27-member FLSA class.  It is unclear whether this is in addition to, or in lieu of, the class members who have already produced over 550 pages of documents and provided formal written discovery responses.  But regardless of how the motion is construed, it is a waste of the parties' and the Court's resources as it seeks information that Expert AuPair already possesses or that is plainly irrelevant to Expert AuPair's anticipated decertification motion.  Expert AuPair's only justification is that because its class size is "small" relative to other Defendants, its requests cannot be improper.  This is a red-herring: in evaluating discovery requests courts look not just to the size of a class, but to the substance of the actual requests and to the reality of the litigation as a whole.  Whether the class consists of 10 or 1,000 members, Expert AuPair cannot impose irrelevant and unduly burdensome requests, including for information that it already has access to.

## FACTUAL BACKGROUND

Expert AuPair has demanded written discovery and documents from nearly 78% of its FLSA opt-in class (21 *au pairs* out of class of 27).  *See* Declaration of Dawn L.

Smalls ("Smalls Decl.") Exs. 1-2, ECF No. 978-3.[1]  It issued three sets of discovery requests, comprised of 9 interrogatories (containing 29 sub-parts), 8 requests for production, and 7 requests for admission.  The first set of requests was served on Plaintiffs' counsel on November 8, 2017.  ECF No. 978-1.  The requests were directed to 12 *au pairs*, and upon receiving them, one withdrew from the lawsuit.  Ex. 1; Smalls Decl. ¶ 4.  On December 8, 2017, Expert AuPair directed the same requests at 7 additional *au pairs*[2] (Ex. 2), and on March 5, 2018, Expert AuPair issued the requests to one additional *au pair*.  ECF No. 978-3.[3]

On December 8, 2017, Plaintiffs served their responses and objections to Expert AuPair's discovery requests.  ECF No. 978-4.  Plaintiffs declined to respond to Interrogatory Nos. 2, 3, 5, 7, 8 and 9 on the grounds that the information sought is irrelevant to any FLSA claims in this case.  *Id.*  Plaintiffs agreed to respond to Interrogatory Nos. 1, 4 and 6, subject to their objections that the information sought is either not relevant to the FLSA claims in this action or already in Expert AuPair's custody.  *Id.* Plaintiffs also agreed to produce any relevant, non-privileged documents responsive to Requests for Production ("RFP") Nos. 1-5 after reasonable searches and subject to the objection that Expert AuPair already has many of the documents it requested.  *Id.*  Plaintiffs objected to RFP Nos. 6-8 on the grounds that the requested

---

[1]     All citations to "Ex." refer to the Exhibits attached to the Smalls Declaration.  All citations to "Mot." refer to Expert AuPair's Motion to Compel Discovery, ECF No. 978.

[2]     Expert AuPair listed 8 *au pairs*, but 1 of the 8 had never opted-in to the case.  Ex 2; Smalls Decl. ¶ 5.  Thus there was no basis to seek discovery from her.

[3]     Expert AuPair's Third Requests for Production contained 5 multi-part interrogatories, 6 requests for production and 6 requests for admission, which were all substantially similar to the requests from its previous two sets of requests. *Compare* ECF No. 978-3 *with* ECF No. 978-1.

documents are not relevant to the FLSA claims in this action.  *Id.*  Plaintiffs further agreed to respond to Requests for Admission ("RFA") Nos. 1-2, but objected to the remaining RFAs on the basis that they called for legal conclusions.  *Id.*

In January 2018, Plaintiffs provided written discovery responses from 6 *au pairs*: they contained substantive interrogatory responses and responses to RFAs from the *au pairs*, as well as legal objections from Plaintiffs' counsel.  Smalls Decl. ¶ 6.[4]  In response to Expert AuPair's RFPs, Plaintiffs' counsel collected, reviewed, and produced over 550 pages of documents from *au pairs*.  *Id.* at ¶ 11.

In September 2017, Plaintiffs issued a request to Expert AuPair for documents relevant to opt-ins.  Ex. 3.  In response, Expert AuPair produced 1,927 pages of documents regarding opt-ins from its own personnel files.  *Id.* at ¶ 7.  These documents included *au pair* applications, letters to *au pair* applicants, *au pair* contracts, notes on *au pair* and host families from Expert AuPair's local coordinators, host family applications, and contracts with host families, among other things.  Seven *au pairs* (*i.e.*, over 25% of the class) sat for depositions, during which Expert AuPair used many of these documents as exhibits.  *Id.* at ¶¶ 8, 10.

## **LEGAL STANDARD**

The Court has authority under Federal Rules of Civil Procedure 26, 30(b)(4), 29 U.S.C. § 216(b), and its inherent power to set appropriate limitations on discovery. "Rule 26(b)(2)(C) gives the court discretion to conduct a proportionality analysis and

---

[4]      Plaintiffs made the same proposal to Expert AuPair that it made to other Defendants: in lieu of formal discovery, Plaintiffs' counsel would provide responses opt-in *au pairs* gave to a survey designed by Plaintiffs' counsel.  *See* ECF No. 1018-3 (Oct. 13, 2017 email from D. Smalls to all Defendants).  Expert AuPair refused and instead insisted on serving formal discovery requests.

limit discovery that is unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome or less expensive, and to limit discovery if 'the burden or expense of proposed discovery outweighs its likely benefit.'" *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008) (quoting FRCP 26(b)(2)(C)).  This is particularly true for FLSA collective actions which provide "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Although "opt-in plaintiffs may be subject to some individualized discovery," *see Green v. Drake Beam Morin, Inc.*, No. 11-cv-01063-REB-CBS, 2011 WL 6046940, at *1 n.2 (D. Colo. Dec. 6, 2011), defendants are "not entitled to individualized discovery from each and every opt-in."  *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS, 2009 WL 1120293, at *2 (D. Colo. Apr. 27, 2009).  The party seeking FLSA opt-in discovery needs to show a "particularized need . . . which generally requires a demonstration that the discovery is addressed to common issues (as opposed to individual issues), that it is not designed to force class members to opt out, and that it would not impose an undue burden or require the deponent to seek legal or technical assistance to respond."  *Groth v. Robert Bosch Corp.*, No. 1:07-cv-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008) (internal citations omitted).

## ARGUMENT

**I.    There is No Basis to Compel Responses to Expert AuPair's Interrogatories.**

Expert AuPair seeks to compel additional interrogatory responses from 13 opt-ins.[5] It claims that the information is imperative to its upcoming decertification motion. Mot. at 3-4. However, as a threshold matter, Expert AuPair already has considerable written discovery for such a decertification motion. Expert AuPair has formal interrogatory responses from 22% of its class. *See Gentrup v. Renovo Servs., LLC,* No. 1:07-cv-430, 2010 WL 6766418, at *8 (S.D. Ohio Aug. 17, 2010) (limiting written discovery to 21% of opt-ins). Expert AuPair also has written discovery from Named Plaintiff Nicole Mapledoram, who provided over 2,000 pages of documents. Smalls Decl. ¶ 11. That aside, the additional information sought is already in Expert AuPair's possession, or is irrelevant to the FLSA claims in this action. Accordingly, *au pairs* should not be compelled to respond.

**A. The Interrogatories Are Duplicative of Information Expert AuPair Already Has Access To.**

Expert AuPair's own documents contain information more than sufficient to answer four of its nine interrogatories – Nos. 2, 3, 4 and 6. These interrogatories seek information about each *au pair's* duties, schedule, payment, and each host family's

---

[5]    Because Expert AuPair's motion does not specify the precise relief it seeks, Plaintiffs do not know whether it seeks additional responses for all interrogatories, or only those that Plaintiffs refused to respond to. Plaintiffs also do not know which *au pairs* Expert AuPair wants this information from. Plaintiffs deduce that that the motion covers an additional 13 because Expert AuPair mentions "discovery responses" from 15 opt-ins (Mot. at 2, 5), but one of the *au pairs* from whom discovery was sought had never joined the lawsuit, and another dropped out. Expert AuPair also appears to take issue with the interrogatory responses it received from 6 *au pairs*. Mot. at 3.

rules.  ECF No. 978-4 at 4-5.  Over the years, Expert AuPair has compiled thousands of documents on the *au pairs* it has sponsored.  Expert AuPair produced 1,927 pages of them to Plaintiffs' counsel, and used them as exhibits in its opt-in depositions.  Smalls Decl. ¶¶ 7, 10.  One type of document in Expert AuPair's trove that it has for each opt-in is the contract between the *au pair* and host family that both parties are forced to sign. These contracts contain precisely the information Expert AuPair now seeks to compel:

**Interrogatory No. 2**: Describe in detail the duties that each host family with whom you lived required you to perform as an au pair.

**Form Contract § 1.3 Duties**

Ex. 4 at 2.

**Interrogatory No. 3**: Describe in detail any rules, curfews, or other restrictions that each host family with whom you lived asked or required you to comply with during your time as an au pair.

**Form Contract § 3 Restrictions**

*Id*. at 4.

6

**Interrogatory No. 4** For each week that you lived with a host family as an au pair, identify (a) the amount you were paid for that week's work; (b) the date on which you were paid for that week's work; (c) the method by which you were paid…

**Form Contract § 1.4 Compensation**



1.4 Compensation

1.4.1 Stipend

The Host Family agrees to pay the Au Pair a weekly stipend of $ 195.75 (per week). This is the weekly amount regardless of the frequency of pay.
The appropriate stipend will be paid every: ☒week    ☒two weeks

Pay day will be _Saturday_

Payment will be made by ☐ check   ☒other (please specify) _direct deposit_

*Id.* at 2.

**Interrogatory No. 6**: For each week that you lived with a host family as an au pair, (a) describe your schedule, including the number of hours worked each day; (b) identify the days or partial days you were off that week…

**Form Contract § 1**

*Hours*

The workweek shall be from Monday until Sunday. The Au Pair is employed to work in the The Employer's home according to the following schedule:

| Day | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|
| Start time | 6:00 am | 6:00 am | 6:00 am | 6:00 am | 6:00 am | | |
| End time | 9:00 am | 9:00 am | 9:00 am | 9:00 am | 9:00 am | | |
| Start time | 3:00 pm | 3:00 pm | 3:00 pm | 3:00 pm | 3:00 pm | | |
| End time | 8:00 pm | 8:00 pm | 8:00 pm | 8:00 pm | 8:00 pm | | |

Ex. 5.

Courts routinely limit discovery in exactly these circumstances, where employers already possess the requested information.  *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 193 (S.D.N.Y. 2014) (defendant "is in possession, or should be in possession, of much of the information or documentation it seeks"); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D. N.J. 2013) (denying

7

written discovery where "much of the key factual information defendants need from each plaintiff…is likely already in their possession and control"); *Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2008 WL 5432288, at *2 (W.D. Mo. Dec. 31, 2008) (denying discovery because the "information which might be reasonably reconstructed by an opt-in Plaintiff, is already available to [defendant] in its own records").  Expert AuPair nowhere explains why its own contemporaneous documents are insufficient, or why *au pairs'* memories about events years prior would be any better.[6]

### B. The Interrogatories Seek Information Irrelevant to the FLSA Claims in This Action.

Plaintiffs also oppose Expert AuPair's motion because it seeks to compel responses to interrogatories that are irrelevant, including Nos. 5, 7, 8 and 9.[7]  The Court has previously determined that opt-in discovery must be limited to "hours worked, tasks performed, wages and other compensation paid, and joint employer indicia."  ECF No. 969 at 2; *see also Rayfield v. Sandbox Logistics, LLC*, 217 F. Supp. 3d 1299, 1300 (D. Colo. 2016) ("The requirements to state a claim of a FLSA violation are quite straightforward, requiring plaintiff to show a failure to pay overtime compensation and/or

---

[6]     Expert AuPair also seeks to compel responses to Interrogatory No. 1, which requests identifying information for opt-ins. Mot. at 5-6.  This request is hardly worth the Court's attention.  The information is either already in Expert AuPair's own files or in the "Consent to Join" form *au pairs* submitted to join the lawsuit which have been publicly filed.  *See, e.g.*, ECF No. 750-2.  Expert AuPair claims it needs answers to Interrogatory No. 1 because its files do not contain current surnames for *au pairs* that later married.  Mot. at 6.  This is the first time Expert Au Pair has raised this issue, which could have been solved without Court intervention.  Plaintiffs have resolved this issue with other Defendants with either a simple phone call or email whenever there has been a question about a name change or the identity of an *au pair*.

[7]     Plaintiffs cannot actually discern which interrogatories Expert AuPair seeks to compel responses to.  Plaintiffs therefore address Nos. 5, 7, 8 and 9, to the extent they may be covered by Expert AuPair's motion.

minimum wages to covered employees—no more.") (internal quotations and citations omitted).  Interrogatories 5, 7, 8 and 9 seek information far beyond that.

Interrogatory No. 5 seeks information about purported "benefits" that *au pairs* may have received.  ECF No. 978-4 at 5.  It does not seek information about the weekly wage, but rather requests the information on the presumed rationale that personal gifts, travel, and other voluntary items *au pairs* may have received are "benefits" that may be credited against their wage.  These "benefits" do not matter to the FLSA, which permits deductions only under narrow circumstances not present here.  *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.32(a).

Interrogatory No. 7 demands "every source of information that [*au pairs*] relied on in making the decision to participate in the au pair program and describe in detail the specific information that [*au pairs*] received from each source."  ECF No. 978-4 at 5. This interrogatory presumably relates to Defendants' failed "cultural exchange" pre-emption argument.  *See* ECF No. 969 at 3 ("the deponents' beliefs and experiences would have no bearing on the Court's legal analysis" regarding preemption).

Interrogatory No. 8 demands "a list containing the names of all potential au pairs you referred to Expert AuPair regardless if they signed up or participated in the program."  *Id.*  This interrogatory has no relevance to any FLSA claim in this case.

Finally, Interrogatory No. 9 demands information about whether opt-ins complained to the State Department, host families, Expert AuPair or anyone else about anything from their time as an *au pair*.  *Id.*  The request is not limited to complaints about relevant topics, and not every complaint relates to the FLSA claims in this case. Further, Expert AuPair makes no attempt to explain why complaints an *au pair* may or

9

may not have made has any relevance to the issues in this case.  In any event, Expert AuPair already has information about *au pairs'* complaints in their own files.

## II.  *Au Pairs* Should Not Be Compelled to Respond to Improper Requests for Admission.

Expert AuPair demands that the Court deem their 7 Requests for Admission ("RFAs") to be "admitted" for any opt-in that did not to respond to any (or all) of them.  Mot. at 3.  There is no basis for this relief: the RFAs call for legal conclusions, and they are drafted in such a way that they cannot be admitted or denied.  Accordingly, *au pairs* were right to refuse to respond, and should not be compelled to do so now.[8]

Opt-ins cannot be required to provide substantive responses to RFAs that demand legal analysis, rather than simple factual admissions.  *See United States v. Block 44, Lots 3, 6 Plus West 80 Feet of Lots 2 and 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997) ("[a] request for admission of a conclusion of law is improper").  Because such RFAs require them to interpose legal objections they are inappropriate, as they cannot be simply admitted or denied.  *See, e.g.*, *Climco Coils Co. v. Siemens Energy & Automation, Inc.*, No. 04 C 50342, 2006 WL 850969 at *1 (N.D. Ill. Mar. 28, 2006) (refused to require responses to RFAs that were not "simple and direct so that they [could] be readily admitted or denied"); *Tamas v. Family Video Movie Club, Inc.*, 301 F.R.D. 346, 347 (N.D. Ill. 2014) (excusing opt-ins from RFAs where they would "likely need to qualify each answer with detail").

---

[8]  Expert AuPair's claim that some *au pairs* failed to respond is misleading.  Mot. at 5, 6.  Plaintiffs' counsel timely served global responses and objections to Expert Au Pair's requests for admission.  *See* ECF No. 978-4.  Although Plaintiffs' counsel inadvertently omitted specific objections to RFAs No. 5, 6, and 7, they are objectionable for the same reason as the others: they call for complex legal conclusions, not simple factual admissions.

Each of the contested RFAs fit within the categories courts have refused to require.[9]  Nos. 3 and 4 ask each opt-in to admit that the "[*au pair*'s] daily schedule was set up by the host family and not by Expert AuPair" and that the "[*au pair*'s] stipend was paid to [the *au pair*] by [the *au pair*'s] host family and not by Expert AuPair."  ECF No. 978-1 at 7.  *Au pairs* could not respond to these RFAs without also interposing legal objections.  As evident in the parties' summary judgment filings, there is a legal dispute as to whether Expert AuPair's setting of general schedule parameters, and fixing of the stipend amount are joint employment indicia under the FLSA.  *See* ECF No. 860; ECF No. 915.

Likewise RFAs 5, 6, and 7 seek admissions about core legal issues in this case: No. 5 demands that opt-ins admit that Expert AuPair did not supervise them (despite Plaintiffs' legal claims that it did supervise and monitor); No. 6 demands that each opt-in admit that Expert AuPair did not "terminate" them (despite Plaintiffs' legal claims that Expert AuPair did have this power); and No. 7 demands that each opt-in admit that they are suing Expert AuPair as an "employer" for "damages" – two legal concepts *au pairs* cannot possibly answer.  ECF No. 987-2 at 8.  Like the requests for admission in *Climco* and *Tamas*, these requests could not be answered with a simple "admit" or "deny"; each would require a detailed objection, qualification and explanation, for which the assistance of counsel would also be necessary.  *See Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357-58 n.3 (S.D. Ohio 2006) ("It would be irresponsible indeed for class counsel to fail to assist each client in preparing his or her discovery responses.");

---

[9]  Subject to the global objections contained in Plaintiffs' Responses and Objections, Plaintiffs do not object to RFAs Nos. 1-2.

*see also Russell v. Illinois Bell Tel. Co.*, No. 08 C 1871, 2009 WL 1209025, at *4 (N.D. Ill. Apr. 30, 2009) ("requiring plaintiffs to respond to [RFAs] would impose a significant burden on them and an enormous burden on their counsel, and it would defeat the purpose of utilizing representative discovery in FLSA class actions.").

### III.   There is No Basis To Compel Any Additional Document Productions from *Au Pairs*.

In its brief, Expert AuPair complains that some number of opt-ins did not search for responsive documents and/or did not produce documents responsive to its RFPs. *See* Mot. at 3 n.1, 5 n.4.[10]  To the extent this is a complaint about deponents not having already searched for responsive documents before depositions (*see* Mot. at 3 n.1), as Expert AuPair knows, some depositions were scheduled with very little advance notice. As a result, it is not surprising that some *au pairs* had no time to search for documents *before* their depositions.  But many of Expert AuPair's deponents and opt-ins who provided formal discovery responses have searched their files and Plaintiffs have produced over 550 pages of documents in response to Expert AuPair's RFPs.  Smalls Decl. ¶ 11.

---

[10]   Expert AuPair claims that 2 opt-ins it deposed "did not provide any answers to written discovery or documents responsive to requests for production."  Mot. at 5 n.4. As with much of its motion, Expert AuPair does not bother to cite to anything indicating who it is referring to.  To clarify, Plaintiffs provided written discovery for 5 of Expert AuPair's 7 deponents; one *au pair* provided none prior to the deposition, and Expert AuPair never requested any from the other.  Smalls Decl. ¶ 8.  Regardless, there is no prejudice to Expert AuPair in not receiving formal written responses from these 2: Expert AuPair had 3 hours to depose each, during which it had the opportunity to gather substantially similar information as it sought in its RFAs and interrogatories. Indeed, both depositions ended in under 2 hours of record time.  *Id.* at ¶ 9.  If it failed to use its depositions appropriately that is its own fault, and in any event, it is not something to waste the Court's time with in a motion to compel.

To be clear, Plaintiffs also continue to maintain their objections to Expert AuPair's RFP Nos. 2, 3, 6, 7, and 8.  ECF No. 978-4 at 6-7.  These requests seek information entirely irrelevant to the FLSA claims at issue in this case.  Request No. 6 demands "[a]ll documents, including but not limited to calendars, diaries, notes, files, appointment books, emails, text messages, and social media postings, that describe or reflect your experiences as an au pair."  ECF No. 978-1 at 7.  Request No. 7 demands "[a]ll testimonials you published on any website, including social media, regarding Expert AuPair or the au pair program."  *Id.*  Both requests again seek information to buttress Defendants' failed "cultural exchange" preemption defense.  *See* ECF No. 969 at 3 ("the deponents' beliefs and experiences would have no bearing on the Court's legal analysis" regarding preemption).

Further, Request No. 8 demands "[a]ll communications with any other person about this lawsuit or your decision to participate in this lawsuit [not including communications involving your lawyers]."  ECF No. 978-1 at 7.  Similarly, Request No. 3 demands "[a]ll communications with your host families or host families before, during or after your time as an au pair related to hours, compensation, schedule, au pair duties, *or this lawsuit.*"  ECF No. 978-1 at 6 (emphasis added).  But *au pairs'* communications with their friends, family, host family, and any others regarding the lawsuit has nothing to do with whether they were paid in conformance with the FLSA.  Instead, these Requests appear to be aimed at bullying opt-ins into withdrawing from the case.  *See Groth*, 2008 WL 2704709, at *1.

Expert AuPair also seeks to burden opt-ins with searches for documents it already has.  Request No. 2 demands "[a]ll communications with or documents given or

13

sent to you by Expert AuPair . . . related to the au pair program." ECF No. 978-1 at 6. There is no basis for requiring them to produce the exact same communications Expert AuPair already has in its files.

In sum, to the extent that Expert AuPair seeks to compel the production of additional documents responsive to its RFPs, *au pairs* should not be required to produce irrelevant documents, or those that are duplicative of information Expert AuPair already has in its files, including RFP Nos. 2, 3, 6, 7 and 8.

<u>**CONCLUSION**</u>

For the foregoing reasons, Expert AuPair's motion should be denied in all respects.

Dated: April 30, 2018

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

 /s/ *Dawn L. Smalls*
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1535 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

**<u>Certificate of Service</u>**

I hereby certify that on April 30, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_/s/ Dawn L. Smalls_____
Dawn L. Smalls