IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINE AZUELA RASCON,
CAMILA GABRIELA PEREZ REYES,
CATHY CARAMELO, and
LINDA ELIZABETH,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., *d/b/a* Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., *d/b/a* Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, *d/b/a/* Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, *d/b/a* Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, *d/b/a* GoAuPair,
AGENT AU PAIR,
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC, *d/b/a* ProAuPair,
20/20 CARE EXCHANGE, INC., *d/b/a* The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE*, d/b/a* GoAuPair, and
GOAUPAIR OPERATIONS, LLC, *d/b/a* GoAuPair,

    Defendants.

## ORDER DENYING CERTAIN DEFENDANTS' MOTIONS TO COMPEL DISCOVERY AND RELATED MOTIONS FOR A FORTHWITH HEARING

This matter is before the Court on certain Defendants' Motions to Compel Discovery and related Motions for a Forthwith Hearing, in which moving Defendants request that the Court compel discovery from FLSA opt-in class members:

1. Defendant InterExchange Inc.'s ("Defendant InterExchange") Motion to Compel Discovery (Doc. # 970) and its Motion for a Forthwith Hearing on the Motion to Compel Discovery (Doc. # 971);

2. Defendants Cultural Care, Inc.'s ("Defendant Cultural Care"), American Cultural Exchange, LLC's, and GoAuPair Operations, LLC's (collectively, "Defendant GoAuPair") Joint Motion to Compel Discovery (Doc. # 973) and their Motion for Forthwith Hearing on their Joint Motion to Compel Discovery (Doc. # 974); and

3. Defendant Expert Group International, Inc.'s ("Defendant Expert AuPair") Motion to Compel Discovery (Doc. # 978.)

The Court denies all of these motions for the following reasons.

### I. BACKGROUND AND PROCEDURAL HISTORY

The factual and procedural background of this case has been extensively detailed in the Court's previous orders and the Magistrate Judge's recommendations. *See, e.g.*, (Doc. ## 240, 569, 828.) Additional information is included here only to the extent necessary to address the discovery disputes now before the Court.

The Court conditionally certified eleven classes and subclasses of opt-in Plaintiffs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on March 31, 2017. (Doc. # 525.) The deadline for completion of discovery pertaining to these opt-in FLSA Plaintiffs was April 9, 2018. (Doc. # 763 at 13); *see* (Doc. # 747 at 4.)

In March 2018, Defendant Cultural Care and Plaintiffs filed competing motions regarding the scope of Defendant Cultural Care's depositions of opt-in FLSA Plaintiffs it had previously sponsored. (Doc. ## 924, 953.) On April 4, 2018, the Court issued its Order on Depositions of FLSA Opt-In Class Members and defined the permissible breadth of Defendant Cultural Care's inquiries. (Doc. # 969.) Relevant here, Defendant Cultural Care's questions are to be limited to the period between when the deponent was recruited to join an *au pair* program and when his/her J-1 visa expired, and Defendant Cultural Care may ask about relevant issues outside of that time period only if the questions pertained solely to the deponent's *au pair* experience. (*Id.* at 2.) The Court limited inquiries about a deponent's personal life, background, and subjective states of mind. (*Id.* at 2–3.) It also ordered that opt-in class members residing in countries that restrict depositions shall not be required to travel internationally to be deposed. (*Id.* at 3.)

Also on April 4, 2018, Defendant InterExchange filed its Motion to Compel Discovery. (Doc. # 970.) It argues a court order compelling production of information is necessitated by: "(i) certain opt-in [P]laintiffs' failure to respond to [its] discovery requests, (ii) [P]laintiffs' refusal to respond to [its] Interrogatory Nos. 2, 3, 5, and 6, and (iii) [P]laintiffs' failure to respond to Requests for Production and failure to disclose the

3

opt-in [P]laintiffs' survey answers." (*Id.* at 5.) Defendant InterExchange simultaneously moved for a forthwith hearing on the ground that "the discovery end date [was] less than a week away, on April 9, 2018." (Doc. # 971 at 2.) Plaintiffs responded to Defendant InterExchange's Motion to Compel Discovery on April 25, 2018, asserting that Defendant InterExchange's motion "is the result of strategic choices [it made] during opt-in discovery" and that Defendant InterExchange is not entitled to relief just because it "regrets" its strategic decisions. (Doc. # 1039 at 3.)

On April 6, 2018, Defendants Cultural Care and GoAuPair filed their Joint Motion to Compel Discovery. (Doc. # 973.) They ask the Court to compel production of "survey responses from a survey prepared and sent out by Plaintiffs' counsel to all opt-in *au pairs*." (*Id.* at 2.) Defendant Cultural Care also requests that the Court compel Plaintiffs to produce "six remaining deponents" and to inform these deponents "that failing to comply with a court order may warrant dismissal." (*Id*. at 4, 8.) Defendants Cultural Care and GoAuPair filed a Motion for a Forthwith hearing on their Joint Motion to Compel Discovery on April 6, 2018. (Doc. # 974.) Plaintiffs filed a Response in Opposition to the Joint Motion to Compel Discover on April 18, 2018. (Doc. # 1017.) Plaintiffs argue Defendants Cultural Care's and GoAuPair's Joint Motion to Compel Discovery is "contrary to the FLSA and case law, both of which envision very limited discovery of opt-ins." (*Id.* at 2.) Defendants Cultural Care and GoAuPair timely replied in support of their Joint Motion on April 23, 2018. (Doc. # 1020.)

On April 9, 2018, Defendant Expert AuPair filed its Motion to Compel Discovery, asking the Court to enter "an order compelling Plaintiffs to provide responses to [Expert

AuPair's] discovery requests by the opt-in [P]laintiffs who have not responded." (Doc. # 978 at 6.) Plaintiffs did not respond.

April 9, 2018, was the close of the discovery period as to opt-in FLSA Plaintiffs, as the Court previously stated. (Doc. # 763 at 13); *see* (Doc. # 747 at 4.) The deadline for any motions to decertify the FLSA classes and subclasses is May 9, 2018. (*Id.*)

## II.  LEGAL STANDARDS FOR DISCOVERY IN FLSA COLLECTIVE ACTIONS

Collective actions are expressly authorized by Section 216(b) of the FLSA in cases where the complaining employees are "similarly situated." 29 U.S.C. § 216(b). The determination of whether employees are "similarly situated" is a two-step process. *Thiessan v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132–33 (D. Colo. 2011). At the first step, a court initially determines whether the employees are "similarly situated" for purposes of conditional certification, usually requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessan*, 267 F.3d at 1102. At the second step— which happens "[a]t the conclusion of discovery (often prompted by a motion to decertify)," *id.* at 1102–03—"the court applies a stricter standard of 'similarly situated,' including application of at least four factors, to determine whether the case can proceed as a class action," *Daugherty*, 383 F. Supp. 2d at 1132–33. The FLSA collective action presently before the Court finds itself in between these first and second steps. Defendants have been conducting discovery, in preparation of moving to decertify the FLSA classes and subclasses. *See, e.g.*, (Doc. # 973 at 8 n.3.)

5

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery "regarding any nonprivileged manner that is relevant to any party's claim or defense and is proportional to the needs of the case" unless "otherwise limited by court order." However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" pursuant to Rule 26(b)(2)(C)(i). *See Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1309 (10th Cir. 2014). This is particularly true in "large or complex litigation," in which a court "may limit the scope of discovery to protect a party from unduly burdensome discovery requests." *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006) (citing *Adkins v. Mid-American Growers, Inc.*, 141 F.R.D. 466 (N.D. Ill. 1992) (in FLSA class action, discovery should be conducted on a class-wide basis, rather than on an individual basis, in light of the burden of individualized discovery on the plaintiffs' counsel)).

In the context of an FLSA collective action, a court's "intent is not to authorize a fishing expedition or discovery that is unduly burdensome;" it aims rather to "permit the [parties] to conduct **reasonable** discovery" to determine whether the plaintiffs are, in fact, similarly situated. *Daugherty*, 838 F. Supp. 2d at 1134 (emphasis added). Once an FLSA collective action is initially certified, the opt-in plaintiffs may "be subject to **some** individualized discovery, following which they will be required to demonstrate that they are 'similarly situated' under [the] stricter standard." *In re American Family Mut.*

6

*Ins. Co. Overtime Pay Litigation*, 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009) (emphasis added) (citing *Thiessen*, 267 F.3d at 1102–03)).  However, though a defendant is entitled to discovery from a "certain number of [p]laintiffs," a defendant "is **not entitled to individualized discovery from each and every opt-in [p]laintiff**."  *In re American Family Mut. Ins. Co. Overtime Pay Litigation*, No. 06-cv-17430-WYD, 2009 WL 1120293, *2 (D. Colo. April 27, 2009) (emphasis added).  This is because

> [e]vidence concerning each individual plaintiff's job duties and responsibilities on a week-by-week . . . basis is not essential.  Because the court has already determined the plaintiffs are "similarly situated," individual depositions and interrogatories are not appropriate.  Individualized discovery is just too onerous.  The plaintiffs should be deposed on a representative basis . . . .  Although interrogatories may be served on a broader scale, they too should be served generally on a representative basis.

*Adkins v. Mid-American Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill. 1992) (internal citation omitted).  Moreover, to allow individualized discovery from each opt-in plaintiff would be at odds with the purposes of the FLSA's collective action provision, which "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefits the judicial system through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."  *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 4464887, *2 (N.D. Ill. Sept. 27, 2012) ("in FLSA collective actions, permitting full-scale, individualized discovery of all opt-in plaintiffs would frequently undermine the purpose and usefulness of collective actions.").

The percentage of opt-in plaintiffs from which a defendant may seek discovery is inversely proportional to the size of the class. As Plaintiffs accurately explain, "the larger the class, the smaller the proportion of the class sampled." (Doc. # 1017 at 8) (citing, *e.g.*, *Ross v. Jack Rabbit Services, LLC*, No. 3:14-cv-00044-DJH, 2015 WL 1565430, *2 (W.D. Ky. April 8, 2015) (explaining that "[as] class size increases, courts are generally less likely to require all plaintiffs to respond to discovery" because "the logistics and efforts to arrange for plaintiffs to respond to discovery requests increase considerably as class size swells" and collecting cases)). This is especially true where "the costs and burdens are significant," such as where plaintiffs are geographically spread out. *Ross*, 2015 WL 1565430 at *2 (limiting discovery to representative given "the burdensome nature of discovery upon 236 [p]laintiffs in 29 different states).

### III.    **<u>DISCUSSION</u>**

For the reasons explained below, the Court is satisfied that each moving Defendant has collected discovery from a sufficient number of Plaintiffs. None of the moving Defendants are entitled to individualized discovery of all opt-in Plaintiffs in its class. The Court therefore denies all Motions to Compel Discovery.

The Court also denies at the outset Defendant InterExchange's Motion for a Forthwith Hearing (Doc. # 971) and Defendants Cultural Care's and GoAuPair's Motion for a Forthwith Hearing (Doc. # 974). Defendants requested a forthwith hearing in advance of the April 9, 2018, close of discovery. (Doc. # 971 at 2; Doc. # 974 at 2.) That deadline has passed, rendering the basis for Defendants' Motions for a Forthwith Hearing moot.

## A. DEFENDANT INTEREXCHANGE'S DISCOVERY

### 1. Factual Background

Plaintiffs and Defendant InterExchange negotiated a discovery agreement in which 25% of the opt-in Plaintiffs formerly sponsored by Defendant InterExchange would participate in written discovery. (Doc. # 970 at 3; Doc. # 1039 at 4); *see also* (Doc. # 970-4 at 2–3.) Defendant InterExchange committed that, "[t]o avoid any confusion, [it would] provide a list of 45 opt-in [P]laintiffs whom [it] want[ed] to respond to written discovery." (Doc. # 970-4 at 3.) Defendant InterExchange served its discovery requests—six interrogatories, six requests for production, and six requests for admission—on 22 opt-in Plaintiffs on January 17, 2018. (Doc. # 970-5.) Defendant InterExchange never requested written discovery from additional Plaintiffs.

Of these 22 opt-in Plaintiffs served with discovery requests, ten Plaintiffs responded, ten Plaintiffs did not respond, and two Plaintiffs were dismissed from the lawsuit. (Doc. # 970 at 3; Doc. # 1039 at 4.) All ten responsive Plaintiffs objected to and declined to respond to four of Defendant InterExchange's interrogatories, claiming that they "called for information already in InterExchange's possession, and/or because they were irrelevant to any FLSA claim or defense in the case."[1] (Doc. # 1039 at 5.)

---

[1] The ten Plaintiffs who answered Defendant InterExchange's interrogatories objected to and did not answer Interrogatory Numbers 2, 3, 5, and 6:
> **Interrogatory Number 2**: For each host family with whom you were placed during your participation in the au pair program, for each child who lived in the family's home at any point during your placement, state (a) the child's age; (b) whether the child attended school; (c) if the child attended school, how many days each week and how many hours each day he or she attended school; and (d) for each day of the week, the specific duties and responsibilities you had with respect to that child.

9

Plaintiffs assert that Defendant InterExchange also has other discovery material, including "nearly 10,000 pages of documents from opt-in *au pairs*' personnel files," depositions by twelve *au pairs*, and approximately 400 pages of documents produced by Plaintiffs at Defendant InterExchange's request. (*Id.*)

On March 22, 2018, Plaintiffs' counsel mistakenly sent survey answers of two opt-in Plaintiffs to Defendant InterExchange. (Doc. # 970-7.) The survey was composed by Plaintiffs' counsel, and other Defendants had agreed to its use for discovery. *See* (Doc. # 1039 at 3, 14.) Defendant InterExchange, however, had previously "denied" Plaintiffs' survey, (Doc. # 970 at 3), and had "insisted on serving formal interrogatories, requests for production, and requests for admission," (Doc. # 1039 at 4). After inadvertently sharing two *au pairs*' survey responses, Plaintiffs' counsel informed Defendant InterExchange that they had been sent in error and that Defendant InterExchange had no right to use the survey responses. (Doc. # 970 at 4–

---

> **Interrogatory Number 3**: If your host family asked you to perform duties or take on responsibilities not listed in response to Interrogatory No. 2 above, describe in detail the specific duties and responsibilities and state the specific day or days of each week that you were required to perform that duty or responsibility.
> **Interrogatory Number 5**: Identify all other payments and/or benefits that you received from each host family with whom you lived. Examples of other payments and/or benefits include, but are not limited to, cash; gifts; bonuses; personal use of a car, cell phone, or computer; gas money; clothing; personal items; family vacations; and travel expenses.
> **Interrogatory Number 6**: If you made any complaint to your host family(ies), InterExchange, the United States Department of State, or any other person or entity regarding wages, benefits, the stipend, your responsibilities as an au pair, or living conditions, identify (a) the date of the complaint; (b) the method of communication of the complaint; (c) the person or entity to whom you directed the complaint; (d) the substance of the complaint; and (e) how the complaint was resolved.

(Doc. # 970 at 3–4.)

5.)  Plaintiffs have declined Defendant InterExchange's requests to disclose any other survey responses.  (*Id.* at 5.)

   2.   Application

First, the Court declines Defendant InterExchange's request to "compel responses . . . by the 10 opt-in [P]laintiffs who have not responded." *See* (Doc. # 970 at 8.)  Defendant InterExchange does not make **any** argument as to why it is entitled to written responses from the ten non-responsive opt-in Plaintiffs.  *See* (*id.* at 6.)  The Court therefore agrees with Plaintiffs that Defendant InterExchange is not entitled to discovery from the ten specific Plaintiffs.  *See* (Doc. # 1039 at 7.)

Second, the Court rejects Defendant InterExchange's Motion to Compel to the extent that it asks the Court to "deny [P]laintiffs' objections and compel answers to Interrogatory Nos. 2, 3, 5, and 6."  *See* (Doc. # 970 at 8.)  Plaintiffs' objections to these questions are reasonable.  Defendant InterExchange already has in its own records (*e.g.*, applications from host families) the information it seeks in Interrogatory Numbers 2 and 3, and further questioning about information it already has is unnecessarily burdensome to Plaintiffs.  *See, e.g.*, *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013) (limiting discovery where "much of the key factual information defendants need from each plaintiff, such as their dates of employment, hours worked, supervisors and salary, is likely already in their possession and control.").  Interrogatory Numbers 5 and 6 attempt to elicit irrelevant information from Plaintiffs, such as non-wage "benefits" and all claims made by an *au pair* to the

11

State Department. The Court therefore sustains Plaintiffs' reasonable objections to Interrogatory Numbers 2, 3, 5, and 6.

Third, the Court also declines Defendant InterExchange's request that the Court "compel production of survey answers for all opt-in [P]laintiffs." *See* (Doc. # 970 at 8–9.) The surveys and opt-in Plaintiffs' responses are privileged as both work product and attorney-client communications, as Plaintiffs explain. *See* (Doc. # 1039 at 14.) That Plaintiffs waived those privileges for other Defendants has no bearing on Defendant InterExchange's discovery requests. *See* (*id.*) Defendant InterExchange's assertion that the survey answers may be "responsive" to its requests for production does not overcome the work product and attorney-client privileges. *See* (Doc. # 970 at 8.)

For these reasons, the Court denies Defendant InterExchange's Motion to Compel. (*Id.*)

**B.    DEFENDANTS CULTURAL CARE'S AND GOAUPAIR'S DISCOVERY**

    1.    <u>Factual Background</u>

        *a.    Written discovery*

Plaintiffs entered into written discovery agreements with both Defendant Cultural Care and Defendant GoAuPair. (Doc. # 973 at 2–3; Doc. # 1017 at 2–4.) Pursuant to these agreements, Defendants Cultural Care and GoAuPair agreed to forfeit their rights to written discovery from opt-in Plaintiffs and to instead accept survey responses from opt-in Plaintiffs[2]. (Doc. # 973-2; Doc. # 973-4.) Plaintiffs' counsel agreed to "request

---

[2] The survey was initially designed by Plaintiffs' counsel, though Plaintiffs' counsel voluntarily incorporated multiple discovery requests from Defendant Cultural Care into the survey. (Doc. # 10177 at 2 n.2.)

12

[survey responses] for each opt-in and produce whatever [they] receive[d] from them in response to the questions." (Doc. # 1018-3 at 4.) Plaintiffs' counsel also agreed that the survey responses would have the same evidentiary value as answers to interrogatories and requests for admission. (Doc. # 973 at 3; Doc. # 1017 at 3.)

Defendant Cultural Care and Plaintiffs executed a formal stipulation reflecting this agreement on December 27, 2017. (Doc. # 973-2.) Since that time, Defendant Cultural Care has received completed survey responses from 1,030—or 58%—of the 1,752 opt-in Plaintiffs it had previously sponsored. (Doc. # 973 at 2; Doc. # 973-1 at 2.) Defendant Cultural Care asserts that it has requested survey responses from **all** opt-in Plaintiffs from Plaintiffs' counsel to no avail. (Doc. # 973-1 at 2.)

Defendant GoAuPair and Plaintiffs executed a nearly identical stipulation on January 4, 2018. (Doc. # 973-4.) Defendant GoAuPair has since received from Plaintiffs survey responses from 89—or 57%—of the 155 opt-in Plaintiffs it had previously sponsored. (Doc. # 973 at 3; Doc. # 973-3 at 2.) Like Defendant Cultural Care, Defendant GoAuPair also contends that it asked Plaintiffs for the rest of the survey responses on "numerous occasions" but has been turned down. (*Id.*)

    b.  *Defendant Cultural Care's depositions*

Defendant Cultural Care began requesting depositions of 52 opt-in Plaintiffs in December 2017. (Doc. # 1017 at 4.) By the close of the discovery period on April 9, 2018, Defendant Cultural Care had conducted 36 depositions. (*Id.* at 4–5; Doc. # 973 at 4.) Of the 16 Plaintiffs Defendant Cultural Care requested to depose but was not able to, Plaintiffs report that 10 of them live in countries with blocking statutes, and

13

Defendant Cultural Care therefore no longer seeks to depose them. (Doc. # 973 at 4); see (Doc. # 969.) Defendant Cultural Care takes issue with the "six remaining deponents that Plaintiffs have failed to produce for deposition without explanation." (Doc. # 763 at 4.) It requests that the Court "issue an order compelling the six requested opt-in [P]laintiffs to appear, noting that failing to comply with a court order may warrant dismissal." (*Id.* at 8.)

    2.    Application

        a.    *Written discovery*

The Court rejects Defendants Cultural Care's and GoAuPair's joint argument that they are entitled to survey responses from **all**—100% of—opt-in Plaintiffs in their respective FLSA classes. *See* (Doc. # 973 at 6.) Though Defendants Cultural Care and GoAuPair argue that Plaintiffs' counsel "agree[d] to provide [them] with 100% of the survey responses for their respective classes," there is no evidence that Plaintiffs' counsel ever made such a representation. *See* (*id.* at 2.) First, Plaintiffs' counsel did not discuss being able to provide survey responses from all opt-in Plaintiffs in the emails in which counsel negotiated the agreement. (Doc. # 1018-3.) Plaintiffs' counsel only proposed that they would "request this information from each opt-in and **produce whatever we receive** from them." (*Id.* at 4) (emphasis added). Second, the executed stipulations between the parties do not contain any mention that Plaintiffs' counsel was to provide survey responses from all opt-in Plaintiffs. (Doc. # 973-2; Doc. # 974-4.) The Court therefore concludes that Defendants Cultural Care and GoAuPair are not, and

never have been, entitled to survey responses from 100% of opt-in Plaintiffs in the relevant FLSA classes.

The Court is satisfied that the quantities of survey responses Defendants Cultural Care and GoAuPair have received are more than adequate. Defendant Cultural Care has survey responses from 58% of the 1,752 opt-in Plaintiffs in its FLSA class, (Doc. # 973-1 at 2), and Defendant GoAuPair has survey responses from 57% of the 155 opt-in Plaintiffs in its FLSA class, (Doc. # 973-3 at 2). The relief Defendants Cultural Care and GoAuPair seek—responses from 100% of Plaintiffs—far exceeds anything supported by case law. The Court described above that the percentage of opt-in plaintiffs from which a defendant may seek discovery is inversely proportional to the size of the class; the larger the class, the smaller the percentage of the class sampled. In the context of medium and large classes like the two FLSA classes at issue here, courts regularly limit representative samples to 10–15% of the opt-in class. *See, e.g., Gentrup v. Renovo Serv., LLC*, No. 1:07-cv-430, 2010 WL 6766418, *1 (S.D. Ohio Aug. 17, 2010) (rejecting the defendant's request for full discovery from all 106 opt-in plaintiffs across 20 states); *Lowe's Home Centers, Inc.*, 236 F.R.D. at 357–58 (denying the defendant's request to receive written discovery from all 1,500 opt-in plaintiffs and limiting it to representative sampling instead); *Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (where the FLSA class included more than 300 employees in 11 states, limiting the defendant to discovery from 25 plaintiffs). Defendants Cultural Care and GoAuPair have survey responses from nearly 60% of opt-in Plaintiffs—a far higher percentage than is the norm. The Court therefore declines

to "compel Plaintiffs to produce the remaining survey responses for their respective classes." *See* (Doc. # 973 at 7.)

### b. Defendant Cultural Care's depositions

Defendant Cultural Care has completed 36 depositions, but insists that the Court should compel at least six more opt-in Plaintiffs to appear for their depositions. Unfortunately, Defendant Cultural Care made no effort to explain to this Court why these additional six depositions of these particular opt-in class members are necessary. The Court recognizes that the 36 depositions comprise only about 2 percent of the opt-in class members and that this percentage is lower than the percentage allowed in other FLSA cases.[3] However, as previously stated, the percentage of opt-in plaintiffs from which a defendant may seek discovery is inversely proportional to the size of the class. These 36 depositions, combined with the written discovery Defendant Cultural Care has received via the completed survey responses from 1,030 or 58% of the opt-in class members, equate to sufficient and meaningful discovery for Defendant Cultural Care. Accordingly, the Court denies Defendant Cultural Care's request that the Court compel the six opt-in Plaintiffs to appear for their depositions.

---

[3] *See, e.g.*, *Scott v. Bimbo Bakeries USA, Inc.*, No. 10-3154, 2012 WL 6151734, *6 (E.D. Pa. Dec. 11, 2012) (where there at least 650 opt-in plaintiffs, rejected the defendant's request to depose 40% of the plaintiffs as "entirely unreasonable" and permitting only 20 depositions); *Family Video Movie Club, Inc.*, 2012 WL 4464887, *3 (where the 828 opt-in plaintiffs were low-paid retail workers, limiting each party to 42 depositions).

## C. DEFENDANT EXPERT AUPAIR'S DISCOVERY

### 1. Factual Background

The FLSA class against Defendant Expert AuPair has 29 opt-in Plaintiffs. (Doc. # 978 at 4.) Defendant Expert AuPair states that it "propounded written discovery to 21 class members and took the deposition[s] of 7 [P]laintiffs." (*Id.*) Its written discovery requests included several interrogatories, requests for production, and requests for admission. (*Id.* at 2.) Defendant Expert AuPair asserts that "Plaintiffs failed to respond or otherwise object to discovery requests" that it propounded. (*Id.* at 3.) This Court struggles to make sense of the numbers of responsive and unresponsive Plaintiffs Defendant Expert AuPair cites in its Motion to Compel, but to the best of the Court's understanding, Defendant Expert AuPair alleges that only six of the twenty-one Plaintiffs responded to its request for written discovery and that these six never produced responsive documents. (*Id.* at 2–3.) It also asserts that only the seven deposed Plaintiffs "produced responsive documents." (*Id.* at 3.)

### 2. Application

The Court declines Defendant Expert AuPair's request that it enter "an order compelling Plaintiffs to provide responses to Expert AuPair's discovery requests by the opt-in [P]laintiffs who have not responded." *See* (*id.* at 6.) Assuming that Defendant Expert AuPair seeks responses from **all** Plaintiffs in the relevant FLSA class, Defendant Expert AuPair fails to argue why individualized discovery from 100% of Plaintiffs is reasonable and necessary. The Court therefore has no reason to depart from the principle that a defendant "is not entitled to individualized discovery from each and

every opt-in [p]laintiff." See In re American Family Mut. Ins. Co. Overtime Pay Litigation, 2009 WL 1120293 at *2.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that the following motions are DENIED:

1. Defendant InterExchange's Motion to Compel Discovery (Doc. # 970) and its Motion for a Forthwith Hearing on the Motion to Compel Discovery (Doc. # 971);

2. Defendants Cultural Care and GoAuPair's Joint Motion to Compel Discovery (Doc. # 973) and their Motion for Forthwith Hearing on their Joint Motion to Compel Discovery (Doc. # 974); and

3. Defendant Expert AuPair's Motion to Compel Discovery (Doc. # 978).

It is

FURTHER ORDERED that the deadline for any motions to decertify the FLSA classes and subclasses remains May 9, 2018. (Id.)

DATED: May 2, 2018

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge