IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *et al.*,

     Plaintiffs,

v.

INTEREXCHANGE, INC., *et al.*,

     Defendants.

---

**DEFENDANT INTEREXCHANGE, INC.'S MOTION
TO DECERTIFY PLAINTIFFS' FLSA COLLECTIVE ACTION
AND INCORPORATED MEMORANDUM OF LAW**

---

Defendant InterExchange, Inc. ("InterExchange") moves to decertify the Plaintiffs' FLSA conditionally certified class.

**Certificate of Compliance**: Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel certifies that they conferred with counsel for Plaintiff Johana Paola Beltran and putative class members who were sponsored by InterExchange, and they oppose.

I.   **INTRODUCTION.**

InterExchange is a U.S. Department of State (DOS)-designated sponsor of the J-1 au pair program regulated by 22 C.F.R. §§ 62.10 and 62.31. Named Plaintiff Johana Paola Beltran was a participant in the au pair program, sponsored by InterExchange from August to November 2012. (Doc. #983 ¶¶ 376-80, 395-96.) On June 9, 2017, this Court conditionally certified an FLSA class against InterExchange defined as "all current

and former au pairs for whom Defendant InterExchange, Inc. was a J-1 Visa Sponsor." (Doc. #569 at p. 4.)  The Court permitted Plaintiffs to send notice to au pairs sponsored on or after July 24, 2009, reserving Plaintiffs' argument that the FLSA statute of limitations was equitably tolled based on alleged deception by InterExchange and other Defendants.  (Id. at pp. 14-15.)  To date, 184 au pairs sponsored by InterExchange have opted in to the lawsuit.  InterExchange deposed Plaintiff Beltran and 12 opt-in plaintiffs and obtained written discovery from Beltran and 10 opt-in plaintiffs.

The parties and the Court agreed that the standard for conditional certification was a lenient one; indeed, the Court's analysis consumed fewer than three pages of the Order and contained no analysis specific to InterExchange or to any one of the six FLSA Defendants.  (Doc. #569.)  But this case is no longer at the conditional certification stage.  Plaintiffs cannot meet their burden of proving that the putative class members are similarly situated, and the class must be decertified.

## II.   <u>LEGAL STANDARD.</u>

The FLSA authorizes collective actions for wage claims where the complaining employees are "similarly situated."  29 U.S.C. § 216(b).  In examining whether employees are similarly situated at the decertification phase, courts consider (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  <u>Theissen v. Gen. Elec. Capital Corp.</u>, 267 F.3d 1095, 1102-03 (10th Cir. 2001).  It is Plaintiffs' burden to show that the named Plaintiffs and opt-ins are similarly situated.  <u>Reab v. Elec. Arts, Inc.</u>, 214 F.R.D. 623, 627 (D.

Colo. 2002) (citing <u>Bayles v. Am. Med. Response of Colo., Inc.</u>, 950 F. Supp. 1053, 1067 (D. Colo. 1996)).  Courts also consider whether plaintiffs can show a "common policy or plan in violation of the FLSA."  <u>Garcia v. Tyson Foods, Inc.</u>, 890 F. Supp. 2d 1273, 1279 (D. Kan. 2012); <u>Frye v. Baptist Mem'l Hosp.</u>, No. 07-2708, 2010 WL 3862591, at *5 (W.D. Tenn. Sept. 27, 2010).

While at first blush this case may seem ideal for collective action treatment, the au pair program is a far cry from the type of employment situation that will support an FLSA collective action.  It is hotly disputed whether InterExchange is an employer of au pairs at all.  (<u>See</u> InterExchange, Inc.'s Motion for Summary Judgment, Doc. # 859 at pp. 4-9.)  If InterExchange is not an employer, FLSA claims will not lie against it.  Even if InterExchange were an employer of au pairs, courts have decertified cases in which employees worked in different locations, different departments, or for different supervisors, because such divergent circumstances result in employees not being "similarly situated."  <u>See</u> § III.B *infra*.  In this case, the alleged "employees"—the au pairs—do not just work in different locations or departments or for different "supervisors."  The au pairs live with individual host families, in their homes, in many different states and localities, participating in family life and providing childcare as consistent with the DOS regulations and the family's unique needs and circumstances.  Moreover, it is the host families who pay au pairs.  The operation of the au pair program presents even greater obstacles to collective treatment than more traditional employment situations that resulted in decertification.  Decertification is necessary here.

48266664.3

III.   **ARGUMENT.**[1]

    a.   **Plaintiffs Cannot Prove a Uniform Policy from InterExchange.**

Whether class members were impacted by a "single decision, policy, or plan" is considered a "particularly relevant factor" for purposes of FLSA certification.  Pacheco v. Boar's Head Provisions Co., Inc., 671 F. Supp. 2d 957, 961 (W.D. Mich. 2009).  In this case, analysis must account for the fact that the au pairs' employment with host families is thoroughly regulated, not by InterExchange, but by DOS.  Also, thousands of third parties—the host families—are intimately involved in the living and working conditions, duties, and compensation of au pairs far beyond any involvement by InterExchange.  In their motion for conditional certification, Plaintiffs asserted the following uniform "policies" from InterExchange:  1) InterExchange "uniformly determined that au pairs shall be paid $195.75 per week for up to 45 hours of work" in violation of the federal minimum wage; (2) InterExchange failed to pay overtime for hours worked over 40 in one week; (3) InterExchange deducted "room and board" from au pair wages; and (4) InterExchange failed to pay au pairs for mandatory training. (Doc. #325 at p. 9.)  An analysis of the au pair program shows that these "policies" are not those of InterExchange, and second, they do not uniformly impact au pairs.

---

[1] Exhibit references in this Motion are to opt-in depositions as follows:  Ex. 1 Sara Mejia Alvarez; Ex. 2 Wendy Rivera Arias; Ex. 3 Alejandra Marcela Garcia Vasquez; Ex. 4 Nayara Calvo Gomez; Ex. 5 Mineline Martins; Ex. 6 Gorana Momcicevic; Ex. 7 Laura Camilia Barriga Rodriquez; Ex. 8 Lucie Vocetkova; Ex. 9 Mylene Gry; Ex. 10 Mariane Melo Ridgeway; Ex. 11 Lady Milena Dederle Rodriguez; and Ex. 12 Tiffany Anne Michele Herzog.  Ex. 13 is named Plaintiff Johana Paola Beltran.

It is undisputed that the U.S. Department of State ("DOS") has statutory authority over the au pair program.  P.L. 104-72, 105-277, 105-48.  It is undisputed that DOS has repeatedly issued notices to sponsors and prospective au pairs and host families describing the stipend as "$195.75" and including the precise formula it used to derive that number, which includes a 40 percent deduction for room and board.  (Doc. #861-16 at 1004-08; #983 ¶¶ 168-72.)  It is undisputed that the minimum stipend calculated by DOS was communicated as a weekly amount for any hours worked up to the program maximum of 45 hours per week and did not include overtime.  (Doc. #861-16 at 1004-08.)  It is undisputed that DOS has attributed the deduction and approval of the compensation formula to the Department of Labor.  (Id.)  It is undisputed that DOS regulations require sponsors to communicate DOS' program rules and regulations to au pairs and host families.  22 C.F.R. §§ 62.10(b); 62.31(f)(1), (i)(1).  It also is undisputed that DOS requires InterExchange to provide training to au pairs, and that DOS does not require that these activities be paid.  22 C.F.R. §§ 62.10(c); 62.30(f), (g).

Simply put, the challenged policies are not InterExchange policies but DOS policies.  InterExchange's agreements with host families on the one hand and au pairs on the other clearly define $195.75 as a *minimum* stipend, consistent with DOS' position and the information InterExchange is required to relay to host families and au pairs.  (Doc. #861-15 at 938, 956.)  Plaintiffs have no evidence—aside from isolated, inadmissible hearsay—that host families' individual pay decisions were somehow

controlled or dictated class-wide by an InterExchange decision, policy, or plan.[2]  See Pacheco, 671 F. Supp. 2d at 964 (hearsay and speculation as to what happened in other departments is not sufficient to show that employees employed in different departments were similarly situated).  Indeed, for years, DOS' website, which in Plaintiffs' own words is the "virtual front door" to the au pair program, included the very same notices that sponsors received and communicated to host families and au pairs.  (Doc. #983 ¶¶ 168-72.)  Put another way, Plaintiffs have failed to identify a "decision, policy, or plan" that belongs to InterExchange.  Simply asserting that most au pairs were paid at or close to $195.75 does not demonstrate that au pairs were subject to a single policy, decision, or plan *from InterExchange* because $195.75 is DOS' number and DOS' decision, policy, and plan.  See Lugo v. Farmer's Pride Inc., 737 F. Supp. 2d 291, 303 (E.D. Penn. 2010) (simply alleging that a compensation system is a "scam" and undercompensates employees does not establish a single decision, policy, or plan).

The specific alleged practice of deducting room and board from au pair pay is not attributable to InterExchange.  First, the 40 percent room and board deduction is a specific element of DOS' formula for calculating the au pair stipend.  (Doc. #861-16 at 1004-08.)  Second, InterExchange does not pay au pairs, and it does not "take a deduction" from au pairs' pay.  The deduction is taken by the host families when they

---

[2] For example, in Plaintiffs' Motion for Conditional Collective Action Certification (Doc. # 383), their "confirmation" that InterExchange set the stipend amount was Plaintiff Beltran's testimony about what her family told her.  (Doc. #383 at p. 11.)  Such testimony is inadmissible hearsay.

48266664.3

pay au pairs, and it therefore benefits the host families.  InterExchange neither dictates

nor benefits from the room and board deduction, and it is not an InterExchange policy.

As set forth in Certain Defendants' Motion for Summary Judgment, the training

that au pairs receive is not compensable and therefore will not support a collective

action class.  (Doc. #860 at pp. 56-59.)  Also, two opt-ins testified that they were paid by

their host families for the training time.  (Ex. 8 32:14-25; Ex. 12 35:12-15.)  Thus, it is

impossible to determine class-wide whether any particular au pair has a claim for

unpaid training time (assuming the training time is compensable at all).

Although the existence of a single policy, decision, or plan is not mandatory to a

collective action, a collective action should proceed in the absence of one only when it

will promote judicial economy, due to the enormous manageability problems that

otherwise can result.  Kaiser v. At The Beach, Inc., No. 08-cv-586-TCK-FHM, 2010 WL

5114729, at *4 (N.D. Okla. Dec. 9, 2010).  As described in more detail below, judicial

economy does not justify this case proceeding as a collective action in the absence of a

single policy, decision, or plan that can be attributed to InterExchange.

> **b. Disparate factual and employment settings of the individual plaintiffs support decertification.**

Even a cursory examination of the au pair program reveals that au pairs are not

similarly situated in their employment circumstances.  Plaintiffs' claim that

(1) InterExchange failed to pay at least minimum wage for all hours worked; and (2)

failed to pay overtime.  (Doc. #983 at ¶¶ 624-25.)  Both of these claims require proof of

au pairs' "hours worked."  Analysis of just this one factor shows why this class must be

decertified.

Both liability and damages under the FLSA are based on *actual hours* worked, not theoretical hours worked.  Espinoza v. County of Fresno, 290 F.R.D. 494, 501 (E.D. Cal. 2013).  It is Plaintiffs' burden to prove that he or she performed work for which he or she was improperly compensated.  Donovan v. United Video, Inc., 725 F.2d 577, 583-84 (10th Cir. 1984) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946), superseded by statute on other grounds, 29 U.S.C. § 254(a)).  Hours worked must be proved as a matter of "just and reasonable inference."  Id.  Representative testimony cannot be used to establish "hours worked" as a "just and reasonable inference" without evidence that the testimony is, in fact, representative of the putative class.  Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 774-75 (7th Cir. 2013).

Plaintiffs would have the Court believe that "hours worked" is a simple assumption that every au pair worked 45 hours per week and should have been (and should now be) compensated as such.  (Doc. #915 at pp. 5-6.)  Nothing could be farther from the truth.  State Department regulations limit au pairs to working *no more* than 45 hours per week.  22 C.F.R. § 62.31(c)(2).  Nothing supports an assumption that 45 hours per week is a just and reasonable estimate for every putative class member.  One opt-in usually worked only 30-35 hours per week.  (Ex. 1 66:1-2.)  Another allegedly worked 45-48 hours per week.  (Ex. 2 37:8-10.)  Another opt-in worked 37-41 hours per week and never over 45 hours but worked fewer hours during summer vacation.  (Ex. 7 62:21-22; 65:17-19.)  Several au pairs allege they worked more than 10 hours per day or more than 45 hours per week only under unique circumstances.  (Ex. 1 33:2-14; Ex.

4 38:24-39:16; Ex. 6 47:17-19; 50:8-10, 14-15; Ex. 12 40:23-41:4.)  One au pair sometimes was relieved of her scheduled duties and hours early.  (Ex. 7 65:6-11.)  One au pair was not sure if she worked exactly 45 hours per week or over 45 hours per week.  (Ex. 8 41:15-21; 42:21-23; 48:20.)  One au pair never worked over 45 hours with her first host family but always worked over 45 hours with her second host family.  (Ex. 3 38:17-21.)  Some au pairs worked the same schedule each week (see Ex. 2 33:21-24; Ex. 5 48:3, 7-8; 58:11-16; Ex. 6 42:3-11; Ex. 9 51:8-10; Ex. 10: 47:20-22), and some au pairs' schedules changed every week (see Ex. 1 32:14-25; Ex. 3 23:2-3; Ex. 4 25:9-11; Ex. 8 78:10-14; Ex. 12 38:4-5).  One au pair's schedule was the same each week during the school year but different during summer and vacations.  (Ex. 7 46:17-18; 48:1-3; 72:12-18.)  Some au pairs had "on call" time and some did not.  (Compare Ex. 4 39:17-20; Ex. 5 58:17-25; Ex. 6 47:20-24; Ex. 7 64:1-4; Ex. 8 44:14-17; Ex. 10 53:2-4; Ex. 12 42:15-18 with Ex. 1 48:23-25; 49:1; Ex. 2 39:21-23; Ex. 9 53:4-5.)  Family dynamics, and thus hours worked, differed significantly.

An au pair's specific duties are also relevant to "hours worked" and whether an au pair has a claim and/or damages under the FLSA.  Au pairs' duties were assigned to them by their individual host families, not by InterExchange, as consistent with DOS regulations.[3]  Although all au pairs performed duties related to childcare, the different

---

[3] Each opt-in deposed confirmed that their duties came from her host family and never from InterExchange.  (Ex. 1 32:9-16; 48:17-19; 57:25; 58:1-18; Ex. 2 27:2-4; 34:14-17; 44:17-20; 46:12-19; Ex. 3 20:3-5; 42:18-21; 43:10-13; Ex. 4 25:15-17; 49:25-50:14; Ex. 5 43:24-44:2; 67:7-25; 71:9-11; Ex. 6 32:16-18; 58:9-14; Ex. 7 46:7-9; 62:13-17; 76:13-24; Ex. 8 28:17-19; Ex. 9 66:6-9; 71:17-20; Ex. 10 64:5-7; 66:2-4; Ex. 11 47:20-48:1; 57:5-10; Ex. 12 53:15-22.)

48266664.3

circumstances from one host family to the other, including but not limited to the number and age of children, school attendance, and parent schedules, render it impossible to make any class-wide determinations as to specific duties and the hours related to those duties.  For example, several au pairs worked with children who were in school during at least some days and hours during the week, but different days and different hours from one another.  (Ex. 1 42:1-2, 23-24; 43;2-3; 45:23-25; 46:1; Ex. 2 32:25-33:2; Ex. 5 51:20-25; 52:10-20; Ex. 6 40-:2-5, 16-18; Ex. 7 49:23-50:5; Ex.8 34:7-9; 35:21-36:1; 39:23-40:3; Ex. 10 46:12-15.)  At least two au pairs lived with families with infants.  (Ex. 3 21:20-25; 34:11-16; Ex. 4 30:21-31:2; 35:17-22.)  One host mom was a teacher and worked during the school year but was home during the summer.  (Ex. 5 48:18-22.) One au pair lived in a completely separate home from the host family.  (Ex. 4 11:3-9.) Two au pairs performed similar duties, but one worked 30-35 hours per week and one worked 12-13 hours per day five days per week.  (Ex. 1 44:18-24; 66:1-2; Ex. 5 48:3-13, 7-8; 50:18-19, 23; 53:8-19; 58:11-16.)  The "hours worked" inquiry is further complicated by the fact that the au pair program is, first and foremost, a cultural exchange program. The overarching purpose of the program is to give young people from other countries the opportunity to experience American life by living with and being part of an American family.   22 C.F.R. § 62.31(a).  Because the au pair lives with the host family, an au pair is not "working" every time he or she is with the children.  (See Ex. 1 39:19-22; 40:23-24 [one parent home for the first four months of the au pair's placement and then helped with kids two to three times per week]; Ex. 1 40:8-12 [parents were with kids anytime they could be, even if the au pair was there]; Ex. 2 39:13-18 [father took 20 minutes

breaks while working from home to help with childcare]; Ex. 4 30:21-31:2; 35:17-22 [mom worked from home and helped care for infant]; Ex. 11 38:9-12 [mom home on leave for three months]; Ex. 12 58:20-59:5 [grandparents visited often and cared for children].)  These instances do not even account for times when the au pair spent time with the host family in a non-working capacity.  An au pair's participation in home life is relevant to "hours worked" and has to be considered on a case-by-case basis.  See Espinoza v. County of Fresno, 290 F.R.D. 494, 501 (E.D. Cal. 2013) (each activity must constitute "work," undertaken for the benefit of the employer and controlled by the employer).

The parties may disagree whether a particular activity constitutes "hours worked" as opposed to participation in home life, and determination of the issue will require individualized testimony from and cross-examination of each au pair.  In sum, nothing about hours worked can be inferred from one au pair to another.

Au pairs did not work the same hours, nor were they all paid the same.  One au pair's host family offered $240 per week.  (Ex. 6 51:15-25.)  Several au pairs received $200 per week.  (Ex. 9 44:12-16; 76:1-3; Ex. 10 32:24-33:1; Ex. 11 33:19-21; Ex. 12 44:5-11.)  Another au pair lived with two different host families and received $200 per week from each; the second host family paid her $7.00 for every hour of "extra" work. (Ex. 3 9:15-21; 45:8-23.)  One au pair received $200 per week plus $25 per week for food.  (Ex. 4 24:1-9, 12-13, 16-17; 27:6-25; 41:20-24; 57:1-5.)  Two au pairs received $195.75 some weeks and $196 or $200 other weeks.  (Ex. 2 40:4-6, 9-11; 50:2-9; Ex. 8 55:7-10; 72:20-22.)  Many au pairs received additional benefits from their host families,

such as computer and cell phone usage, use of a car, clothes and paid trips.  (Ex. 1 52:14-25; 53:1-8, 19-25; 54:1-5; Ex. 2 41:10-16; 42:3-4; Ex. 3 25:1-4; 27:2-5; 46:12-14; Ex. 4 45:22-46:24; 49:6-8; Ex. 6 52:22-53:5; 54:14-21; 55:14-19; Ex. 7 60:10-13; 69:6-9, 23-25; 71:4-8; 89:6-9; Ex. 8 58:10-11; 59:5-10; 60:21-23; 62:13-15; Ex. 9 59:22-60:11; 61:1-5; 62:9-22; Ex. 10 57:6-19; 58:23-59:2, 17-24; Ex. 11 51:14-52:7; 53:13-17; 54:11-55:3; Ex. 12 47:16-48:13; 50:12-14.)  Any particular opt-in plaintiff's claim will depend on what he or she made in addition to hours worked.  Like hours worked, conclusions cannot be reached on a class-wide basis as to compensation.  See Lugo, 737 F. Supp. 2d at 295, 303-304 (decertifying class with claims for unpaid donning and doffing; plaintiffs worked in different positions and departments, on different shifts, subject to different schedules and time spent donning and doffing and liability could not be determined on a class-wide basis); see also Stiller v. Costco Wholesale Corp., 298 F.R.D. 611, 632 (S.D. Cal. 2014) (individualized inquiry was necessary to establish liability and weighed against a finding that employees were "similarly situated").

c. **Individualized defenses for class members support decertification.**

Because duties, pay, and hours worked are so critical to the claims in this case, InterExchange will need to explore each class member's allegations as to hours worked and the circumstances supporting or disproving those allegations.  Plaintiffs' estimates of hours worked are subject to cross-examination about relevant factors influencing them, including but not limited to each host family's unique environment, the number and ages of the children, the schedules of the parents, and the specific duties each host family asked its au pair to perform.  InterExchange also will have to explore each host

family-au pair compensation arrangement and the discussions surrounding that arrangement.  These types of inquiries would be highly individualized even in a more traditional employment situation.  See, e.g., Scott v. Raudin McCormick, Inc., No. 08-4045-EFM, 2010 WL 5093650, at *3-4 (D. Kan. Dec. 8, 2010) (defenses were individualized; opt-ins differed as to whether they received any or sufficient overtime pay or pay for training); Green v. Harbor Freight Tools USA, Inc., 888 F. Supp. 2d 1088, 1098-99 (D. Kan. 2010) (common job description was not representative of actual duties; Court had to conduct a fact-intensive inquiry into daily activities of each individual plaintiff); Zivali v. AT&T Mobility, LLC, 784 F. Supp. 2d 456, 468 (S.D.N.Y. 2011) (supervisor's knowledge of alleged off-the-clock work and whether alleged off-the-clock work was de minimis were individual inquiries).  Au pairs were not working at remote branches of InterExchange but were residing in the individual homes of parents who are not employees or affiliates of InterExchange and who, within the confines of DOS regulations, have complete control over their au pairs' living and working conditions.  InterExchange's defenses are individualized.  Decertification is appropriate.

Also, InterExchange's defenses to Plaintiffs' equitable tolling argument are highly individualized.  Plaintiffs alleged that the statute of limitations for putative class members was tolled effective July 2009 because "Defendants actively concealed the rights of the putative class members."  (Doc. #383 at p. 30.)  Equitable tolling is a doctrine that permits courts to extend statutes of limitations on a case-by-case basis in order to prevent inequity.  Stransky v. HealthONE of Denver, Inc., 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012).  It is left to the sound discretion of the trial court but should

be invoked sparingly.  Valverde v. Xclusive Staffing, Inc., No. 16-cv-00671-RM-MJW,

2017 WL 6945044, at *4 (D. Colo. Oct. 31, 2017) (quoting Young v. Dollar Tree Stores,

Inc., No. 11-cv-1840-REB-MJW, 2013 WL 1223613, at *2 (D. Colo. Mar. 25, 2013)).  It

requires proof that a defendant actively deceived or misled a plaintiff or "in some

extraordinary way" prevented a plaintiff from asserting his or her rights.  Valverde, 2017

WL 6945044, at *4.

  Every single InterExchange au pair deposed in this case was aware of the

$195.75 stipend figure and signed up to the program with that knowledge.  Plaintiffs

have not identified any evidence that InterExchange actively deceived or misled au

pairs as a putative class.  Of the opt-in au pairs deposed, only one testified that she was

told she could not be paid more than $195.75.  (Ex. 5 40:17-24; 76:17-22.)  In any

event, whether any particular opt-in was exposed to some sort of deceptive or

misleading activity by InterExchange is highly individualized.  By way of example,

Plaintiff Beltran, the only named plaintiff sponsored by InterExchange, did not visit

InterExchange's website or review InterExchange materials prior to becoming an au

pair, and she therefore could not prove that she was actively deceived or misled about

her FLSA rights.  (Ex. 13 57:21-58:2, 3-6.)  A similar inquiry would have to be made as

to every opt-in whose claim otherwise would be barred.  As of this filing, 63 of

InterExchange's 184 opt-ins were au pairs before 2013 and cannot proceed in this case

without the benefit of equitable tolling.  The class must be decertified.

**d.  The case would be unmanageable as a collective action.**

Fairness and procedural considerations also favor decertification.  Courts consider the objectives of a collection action (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact, as well as whether it can coherently manage the class in a nonprejudicial manner.  Kaiser, 2010 WL 5114729, at *8.  The highly individualized circumstances described above make coherent management impossible.  Courts have decertified FLSA classes when trial would involve the testimony of hundreds of witnesses and devolve into numerous mini-trials about evidence unique to individual plaintiffs.  Green, 888 F. Supp. 2d at 1104; see Scott, 2010 WL 5093650, at *4 (although decertification puts opt-in plaintiffs back at "square one," the Court must be confident that proceeding as a class would permit efficient resolution of claims in one proceeding).  That is precisely what would occur in this case.  Moreover, the opt-ins are scattered across the world; of InterExchange's opt-ins, 100 list addresses in foreign countries.  Given the individualized testimony that will be required, garnishing over 100 individuals from all across the world into one courtroom does not promote judicial efficiency.

**IV.   CONCLUSION**

InterExchange requests that the Court decertify the FLSA collective class.

48266664.3

DATED this 9th day of May, 2018.

Respectfully submitted,


*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
Heather F. Vickles
Raymond M. Deeny
Joseph H. Hunt
Alyssa L. Levy
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Fax: (303) 298-0940
Email:  bcolaizzi@shermanhoward.com
Email:  hvickles@shermanhoward.com
Email:  rdeeny@shermanhoward.com
Email:  jhunt@shermanhoward.com
Email:  alevy@shermanhoward.com

ATTORNEYS FOR DEFENDANT
INTEREXCHANGE, INC.

48266664.3

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2018, I served the foregoing **DEFENDANT INTEREXCHANGE, INC.'S MOTION TO DECERTIFY PLAINTIFFS' FLSA COLLECTIVE ACTION AND INCORPORATED MEMORANDUM OF LAW** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, CO  80218
Email: alex@towardsjustice.org

Brian A. Birenbach
THE RIETZ LAW FIRM, L.L.C.
114 Village Place, Suite 301
Dillon, CO  80435
Email: brian@rietzlawfirm.com

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
E-mail: LStone@Nixonshefrin.com
E-mail: kcraigmile@nixonshefrin.com

Kathryn A. Reilly
Natalie E. West
Brett M. Mull
V. William Scarpato III
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver CO  80202-5647
Email: reilly@wtotrial.com
Email: West@wtotrial.com
Email: Mull@wtotrial.com
Email: Scarpato@wtotrial.com

William J. Kelly III
Chanda M. Feldkamp
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO  80202
Email: wkelly@kellywalkerlaw.com
Email: cfeldkamp@kellywalkerlaw.com

Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Email: aahubbard@hollandhart.com
Email: jsbender@hollandhart.com

17

48266664.3

Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
OGLETREE, DEAKINS, NASH, SMOAK
   & STEWART, P.C.
1745 Broadway, 22nd Floor
New York, NW 10019
Email: joseph.cartafalsa@ogletree.com
Email: Robert.tucker@ogletree.com
Email:  Stephen.macri@ogletree.com

Martha L. Fitzgerald
David B. Meschke
Margo J. Arnold
BROWNSTEIN HYATT FARBER
   SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Email: mfitzgerald@bhfs.com
Email: dmeschke@bhfs.com
Email: marnold@bhfs.com

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
Kevin P. O'Keefe
Samuel N. Rudman
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 82110
Email: joan.lukey@choate.com
Email: rbuchanan@choate.com
Email: mgass@choate.com
Email: jwolosz@choate.com
Email: lkruzer@choate.com
Email: kokeefe@choate.com
Email: srudman@choate.com

Thomas B. Quinn
Peggy E. Kozal
Jennifer W. Vedra
Nathan A. Huey
Jennifer Arnett-Roehrich
GORDON & REES, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email: tquinn@gordonrees.com
Email: pkozal@gordonrees.com
Email: jvedra@gordonrees.com
Email: nhuey@gordonrees.com
Email: jarnett-roehrich@gordonrees.com

James M. Lyons
Jessica L. Fuller
Diane R. Hazel
LEWIS ROCA ROTHGERBER
   CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Email: jlyons@lrrc.com
Email: jfuller@lrrc.com
Email: dhazel@lrrc.com

Meshach Y. Rhoades
Martin Estevao
Vance O. Knapp
ARMSTRONG TEASDALE LLP
4643 S. Ulster St., Suite 800
Denver, CO  80237
Email:mrhoades@armstrongteasdale.com
Email: mestevao@armstrongteasdale.com
Email: vknapp@armstrongteasdale.com

48266664.3

Bogdan Enica
Bogdan Enica, Attorney at Law
111 Second Avenue, NE, Suite 213
St. Petersburg, FL  33701
Email: Bogdane@hotmail.com

Susan Penniman Klopman
H & K Law, LLC
3900 East Mexico Ave, Suite 330
Denver, CO 80210
Email: sklopman@hklawllc.com

Sigrid S. McCawley
Sabria McElroy
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Email: smccawley@bsfllp.com
Email: smcelroy@bsfllp.com

Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Email: estock@gibsondunn.com

Sean P. Rodriguez
Juan P. Valdivieso
Boies Schiller Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Email:  srodriguez@bsfllp.com
Email:  jvaldivieso@bsfllp.com

Matthew L. Schwartz
Peter M. Skinner
Dawn L. Smalls
Randall W. Jackson
Joshua J. Libling
Byron Pacheco
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY  10022
Email:  mlschwartz@bsfllp.com
Email:  pskinner@bsfllp.com
Email: dsmalls@bsfllp.com
Email:  rjackson@bsfllp.com
Email: jlibling@bsfllp.com
Email: bpacheco@bsfllp.com

James E. Hartley
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO  80302
Email: jhartley@hollandhart.com

*s/ Laura Lewis*

48266664.3