IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINE AZUELA RASCON,
CAMILA GABRIELA PEREZ REYES,
CATHY CARAMELO, and
LINDA ELIZABETH,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., *d/b/a* Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., *d/b/a* Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, *d/b/a/* Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, *d/b/a* Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, *d/b/a* GoAuPair,
AGENT AU PAIR,
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC, *d/b/a* ProAuPair,
20/20 CARE EXCHANGE, INC., *d/b/a* The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE*, d/b/a* GoAuPair, and
GOAUPAIR OPERATIONS, LLC, *d/b/a* GoAuPair,

    Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO EXCLUDE THE SUMMARY JUDGMENT TESTIMONY OF STANLEY COLVIN, ESQ.

The matter is before the Court on Plaintiffs' Motion to Exclude the Summary Judgment Testimony of Stanley Colvin, Esq. (the "Motion to Exclude"). (Doc. # 944.) For the reasons articulated below, the Court grants Plaintiffs' Motion to Exclude.

### I. BACKGROUND

The Court has repeatedly and extensively explained the factual and procedural background of this case in previous orders. *See, e.g.*, (Doc. ## 240, 569, 828.) The Court therefore recounts only the facts necessary to address Plaintiffs' instant Motion to Exclude.

Virtually all parties filed Motions for Summary Judgment on February 16, 2018, *see* (Doc. ## 859, 860, 863, 864, 866, 867, 869, 871, 873, 877, 879, 884, 890, 915), the deadline for parties to file dispositive motions, *see* (Doc. # 687). Two of those Motions for Summary Judgment are relevant to the matter now before the Court: (1) Certain Defendant's Joint Motion for Summary Judgment (Doc. # 860), and (2) Defendant AuPairCare,'s Inc.'s ("AuPairCare") Motion for Summary Judgment (Doc. # 871). In these Motions for Summary Judgment, Defendants draw on and cite to a "Declaration" from Stanley Colvin, which they present as an exhibit. (Doc. # 860 at 31–32; Doc. # 861-1 at 64–80; Doc. # 871 at 3.)

Colvin is an attorney with more than two decades of professional experience in visitor exchange programs. (Doc. # 979 at 2.) Between 1995 and 2015, Colvin was

2

employed at the United States Information Agency ("USIA") and the United States Department of States ("DOS"), and his principal responsibility was the "legal oversight of the Exchange Visitor Program," including "the legal, programmatic, and Congressional functions of the Au Pair Program." (Doc. # 945-1 at 2–3.) Colvin describes:

> I had direct responsibility for the drafting and review of dozens of regulations, proposed regulations, and guidance documents pertaining to the Exchange Visitor Program and its au pair component. Of particular note, and pursuant to Congressional directive, I was the principal author of the initial regulations governing the Au Pair Program.

(*Id.* at 4–5.)

Defendants retained Colvin as a "fact witness," (Doc. # 979 at 4), to, in his words, "discuss the history of the Exchange Visitor Program (a foreign affairs functions of the United States Government) and to review certain statements made in Plaintiffs' Motion for Rule 23 Class Certification." (Doc. # 861-1 at 2.) In August 2016, Defendants and Colvin entered into a Consultant Agreement, in which Colvin agreed to "verbally report his facts, conclusions and findings to [Defendants] and if requested, to prepare a written report and deliver it to [Defendants]." (Doc. # 945-4 at 2.) Defendants owed Colvin an initial retainer of $10,000, and thereafter have paid Colvin at a rate of $375 per hour. (*Id.*) Defendants state that Colvin "did not serve as legal counsel for any of the Defendants prior to be retained in this matter," though they acknowledge that Colvin subsequently wrote a letter on relevant regulations to the New York Department of Labor on behalf of a Defendant in an "unrelated matter." (Doc. # 979 at 2.) Defendants also maintain that Colvin "has not provided legal opinions on the regulations at issue in this litigation, and he acknowledges that he is not a position to do so." (*Id.* at 3.)

3

Rather, Defendants describe Colvin as "provid[ing] valuable factual context to the regulations and the administration" of the *au pair* program. (*Id.*)

On June 20, 2017, Defendant Cultural Care, Inc. emailed the "Declaration of Stanley Colvin" to Plaintiffs. (Doc. # 944 at 4.) Colvin summarized his credentials and then described at some length the history of the *au pair* program. *See* (Doc. # 945-1 at 2–8.) As Plaintiffs observe, Colvin used legal citations throughout his narrative. Colvin then analyzed Plaintiffs' Motion for Conditional Collective Action Certification, *see* (Doc. ## 325, 330), and opined on the merits of the Motion. For example, Colvin wrote that one of Plaintiffs' allegations "is erroneous and not supported by the unambiguous regulations governing the relationship between host families and the au pair participants." (Doc. # 945-1 at 9.)

Plaintiffs deposed Colvin on July 25, 2017. (Doc. # 945-3.) Colvin stated that he was testifying as a "fact witness," and to the extent that he described his responsibility for drafting and reviewing regulations in his declaration, he did so to "provide[] context to the declaration." (*Id.* at 8.) He testified to his belief "that there are Congressional staffers that could perhaps provide the same type of fact testimony." (*Id.* at 9.) He then answered questions about the *au pair* program for nearly six hours. *See generally* (*id.*)

Defendants cited Colvin's Declaration and testimony in two Motions for Summary Judgment. In their Joint Motion for Summary Judgment, Defendants argue that field preemption bars Plaintiffs' state wage-and-hour claims. (Doc. # 860 at 25.) They assert that, in determining whether the federal government intended statutes and regulations for the *au pair* program to preempt state and local regulation, any ambiguity in the

4

federal regulations should be resolved with deferral to the responsible administrative agencies' practices. (*Id.* at 26–30.) Defendants claim that Colvin's testimony is evidence that "[t]he agencies responsible for administering the [au pair program] have consistently interpreted the regulations to require the payment of a single, national, minimum stipend, which has been $195.75 since 2009." (*Id.* at 31–32.) Colvin's Declaration is included in full in Defendants' Joint Appendix. (Doc. # 861-1 at 64–80.) Defendant AuPairCare, in its own Motion for Summary Judgment, rely on Colvin's Declaration to support its factual allegation that "[s]ince the inception of the au pair program, the federal agency tasked with oversight of the program . . . has issued statements to au pair sponsor organizations showing that the minimum weekly stipend that au pairs were to receive was tied to the federal minimum wage." (Doc. # 871 at 3.)

After Defendants cited Colvin's Declaration and testimony in Motions for Summary Judgment, Plaintiffs filed the Motion to Exclude now before the Court on March 17, 2018. (Doc. # 944.) Defendants filed a Response to Opposition on April 9, 2018 (Doc. # 979), to which Plaintiffs replied on April 23, 2018 (Doc. # 1021). In advance of ruling on the various Motions for Summary Judgment, the Court now addresses the Motion to Exclude.

## II. LEGAL STANDARD

In the Tenth Circuit, evidence considered by a court in ruling on a motion for summary must be evidence that is admissible at trial. *Daviscourt v. Columbia State Bank*, No. No. 05-cv-00687, 2007 WL 2889705, *6 (D. Colo. Sept. 26, 2007). "It is well settled in this circuit that we can consider only admissible evidence in reviewing an

order granting summary judgment." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) (citing to *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)); *see also* 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2721 (4th ed. 2018). "[I]nadmissible evidence may not be considered." *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993). Federal Rule of Civil Procedure 56(c)(2) provides that a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." When considering such an objection, a court does not have "'a license to relax the content or substance of the Federal Rules of Evidence when viewing' summary judgment evidence." *Vitamins Online, Inc. v. Heartwise, Inc.*, No. 2:13-cv-982-DAK, 2016 WL 538458, *2 (D. Utah Feb. 9, 2016) (quoting *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010)).

Accordingly, the Federal Rules of Evidence govern the Motion to Exclude presently before the Court.

### III.     DISCUSSION

The Court concludes that Colvin's Declaration and Deposition must be excluded from the summary judgment record because Defendants have not qualified Colvin as an expert.

### A.     RELEVANT LAW

Federal Rule of Evidence 701(c) explicitly bars the admission of lay opinions that are based on specialized knowledge:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

6

The Advisory Committee explained that the purpose of Rule 701(c) is to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." F.R.E. 701 advisory committee's note; *see Peshlakai v. Ruiz*, No. CIV 13-0752, 2013 WL 6503629, *15 (D.N.M. Dec. 7, 2013) (explaining Rule 701(c) and the amendment that added it to Rule 701 in 2000). Accordingly, Rule 701(c) "makes clear that any part of a witness' testimony that is based upon scientific, technical, or other **specialized knowledge** within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules." *Id*. (emphasis added).

When determining whether testimony is permissible under Rule 701, the critical inquiry is whether the testimony is based upon "specialized knowledge." The Tenth Circuit explained that "[i]n other words, 'a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person.'" *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (quoting *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996)). In this case, the Court must determine whether a witness's professional experiences give rise to lay testimony or expert testimony.

For the clearest illustration of the distinction between lay testimony and testimony based upon specialized knowledge where a witness testifies about his or her professional experience, the Court turns to the decisions of other circuits. In *United States v. Vega*, for example, the First Circuit considered whether the prosecution had

improperly introduced expert testimony without qualifying the witnesses as experts. 813 F.3d 386, 393 (1st Cir. 2016). One lay witness, Jean Stone, "held a management position with the United States Department of Health and Human Services, where she helped oversee Medicare fraud prevention activities in [several states]" but did not assist with the investigation into the defendant. *Id*. During the course of her testimony, the witness "described the structure of the Medicare program; how [durable medical equipment ("DME")] suppliers received reimbursement; and how [the defendant's company] Medicare reimbursement claims showed conflicting DME prescriptions." *Id*.

The First Circuit held that the prosecution needed to qualify that witness as an expert witness pursuant to Rule 702 because her testimony was based on specialized knowledge. *Id*. at 394. It rejected the prosecution's argument that a lay witness may offer opinions based on the "particularized knowledge" he or she had by virtue of his or her employment without being qualified as an expert. *Id*. Acknowledging that Rule 701 is "meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job," *id*. (quoting *United States v. Maher*, 454 F.3d 13, 24 (1st Cir. 2006)), the First Circuit clarified:

> We have not stated, however, that all job-based knowledge is nontechnical or nonspecialized. Rather, we have stated that lay experiential expertise refers to those processes that are "well founded on personal knowledge and susceptible to cross-examination." Such lay expertise is "the product of reasoning processes familiar to the average person in everyday life."

*Id*. (internal citations omitted). The First Circuit therefore concluded that the witness's testimony "fell outside the boundaries of lay expertise." *Id*. at 395. Her opinion was "not based on the product of applying familiar reasoning processes to their job experience—

8

rather, [she] could form [her] opinions only by understanding technical Medicare laws and regulations." *Id*.

> [T]he fact that [the witness] had knowledge of Medicare law through [her] occupation[] does not make it "personal knowledge" qualifying as lay expertise under Rule 701. As stated above, our use of the term "personal knowledge" refers, generally, to the product of a witness's process of observing patterns and drawing logical conclusions. An understanding of what Medicare law allows and forbids cannot be developed through this process. . . . [The witness was] not relaying [her] personal observations for the jury to assess; rather, [she was] lending the jury [her] knowledge of Medicare law to provide definitive commentary on the matter.

*Id*.

Numerous other jurisdictions have developed similar distinctions between lay testimony and testimony based upon specialized knowledge. By way of illustration, the Second Circuit held in *Bank of China, New York Branch v. NBM LLC*, that the district court erred by allowing the plaintiff's witness, a Bank of China employee, to offer lay opinion testimony under Rule 701. 359 F.3d 171, 181 (2d Cir. 2004). "[T]o the extent [the witness's] testimony was not a product of investigation, but rather reflected **specialized knowledge he has because of his extensive experience** in international banking, its admission pursuant to Rule 701 was error." *Id*. at 182 (emphasis added). The Second Circuit acknowledged that the "opinions, may, nonetheless, have been admissible pursuant to Rule 702" as expert testimony, but stated that "before such testimony could have been proffered pursuant to Rule 702, [Plaintiff] was obligated to satisfy the reliability requirements set forth in that Rule, and disclose [the witness] as an expert." *Id*. *See also United States v. Oriedo*, 498 F.3d 593, 603–04 (7th Cir. 2007) (in a trial for distribution of crack cocaine, holding that a law enforcement agent's testimony

as to drug dealers' manner of using baggies to package drugs was improperly admitted as lay opinion and should have been subject to expert witness disclosures because the agent "brought the wealth of his experience as a narcotics officer to bear on those observations and made connections for the jury"); *People v. Ramos*, 2012 COA 191, ¶¶ 12–14, *aff'd*, 2017 CO 6, ¶¶ 12–14 ("To determine whether an opinion is based on specialized knowledge, we look to whether ordinary citizens can be expected to have known the information or have had the experiences that form the basis of the opinion. Thus, 'courts should also consider whether the opinion results from 'a process of reasoning familiar in everyday life,' or 'a process of reasoning which can be mastered only by specialists in the field.''" (internal citations omitted)).

### B. COLVIN'S TESTIMONY REQUIRES SPECIALIZED KNOWLEDGE

The Court concludes that Colvin's testimony in his Declaration and Deposition is based upon specialized knowledge within the scope of Rule 702. His testimony—offered as lay testimony—therefore cannot be considered at the summary judgment stage. *See* F.R.E. 701(c).

Colvin's testimony was undoubtedly based upon specialized knowledge of the statutes and regulations he had by virtue of his long tenure at USIA and DOS. As Defendants themselves emphasize, "Colvin was the principal author of the Program regulations and the initial stipend notices," and he was retained to "provide[] valuable factual context" to the program "based upon on his extensive hands-on experience with the Program." (Doc. # 979 at 2–3.) Colvin testified that he has "**extensive knowledge of the regulatory and statutory history**" of the program (Doc. # 945-1 at 9) (emphasis

added) and began his Declaration and his Deposition by summarizing his responsibilities at USIA and DOS (Doc. ## 945-1, 945-4). He explained in the Deposition that his professional experience "provides context for the nature of the declaration." (Doc. # 945-3 at 8.) Colvin's testimony itself also reflects specialized knowledge he accrued throughout his career. For example, Colvin testified to Congress's "knowledge of" and satisfaction with the *au pair* program when it enacted a governing statute in 1997 (Doc. # 945-1 at 8), which could only be perceived by an actor working with or for Congress. Colvin's opinions about Plaintiffs' Class Certification Motion in his Declaration similarly evidence particularized knowledge he had as a result of extensive experience with the *au pair* program. *See* (*id.* at 9–11.)

Colvin's testimony on the regulatory and statutory scheme is analogous to that at issue in *Vega*. Both Colvin and the witness in *Vega* held executive-level positions in federal agencies and, based on those professional experiences, described the regulatory and statutory structures at issue. *See Vega*, 813 F.3d at 393. And Colvin's testimony, like that of the witness in *Vega*, falls outside the boundaries of lay expertise. *See id*. at 395. Colvin's opinion was "not based on the product of apply familiar reasoning processes to [his] job experience." *Id.* Colvin could have formed his opinions only by understanding technical laws and DOS regulations. *See id*. Colvin was not relaying his personal observations; he was lending the Court his knowledge of technical regulations and statutes "to provide definitive commentary on the matter." *See id*.

In sum, Colvin's testimony is not admissible as lay opinion testimony pursuant to Rules 701(c) and 702 because it is based upon specialized knowledge. The Court

therefore excludes Colvin's Declaration and Deposition and Defendants' reliance on those documents from the summary judgment record.

## IV. Conclusion

For these reasons, Plaintiffs' Motion to Exclude the Summary Judgment Testimony of Stanley Colvin, Esq. (Doc. # 944) is GRANTED.

DATED: May 14, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge