Case 1:14-cv-03074-CMA-KMT Document 1076-5 Filed 05/09/18 USDC Colorado Page 1 of 16

# Exhibit 5

# JOHANA PAOLA BELTRAN

vs

# INTEREXCHANGE

Civil No. 1:14-cv-03074-CMA-KMT

## IRED

## SEVILLA

March 23, 2018

ADVANCED REPORTING SOLUTIONS
801-746-5080 | office@advancedrep.com | advancedrep.com
**SALT LAKE** | 159 West Broadway, Broadway Lofts, Suite 100 | Salt Lake City, Utah 84101
**PROVO** | 3507 North University Avenue, Suite 350-D | Provo, Utah 84604
**ST. GEORGE** | 20 North Main Street, Suite 301 | St. George, Utah 84770



REPORTING SOLUTIONS
ADVANCED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

JOHANA PAOLA BELTRAN, et al, )
)
)
    Plaintiffs, )
)
vs. )
) Civil Action No.
) 1:14-cv-03074-CMA-KMT
INTEREXCHANGE, INC., et al, )
)
)
    Defendants. )

DEPOSITION OF IRED SEVILLA

March 23, 2018 * 10:03 a.m.

Advanced Reporting Solutions
243 East 400 South, B101
Salt Lake City, Utah 84111

Reporter: Tamra J. Berry, CSR, RPR

```
 1            A P P E A R A N C E S

 2   FOR THE PLAINTIFFS:

 3         SEAN PHILLIPS RODRIGUEZ
           BOIES SCHILLER & FLEXNER, LLP
 4         Attorneys at Law
           1999 Harrison Street, 9th Floor
 5         Oakland, California  94612
           Tel:  510.874.1000
 6         srodriguez@bsfllp.com

 7

     FOR THE DEFENDANTS:
 8
           BOGDAN ENICA
 9         Attorney at Law
           111 Second Avenue NE, Suite 900
10         St. Petersburg, Florida
           Tel:  727.388.3472
11         bogdane@hotmail.com

12

13
                       -oOo-
14
                     I N D E X
15   IRED SEVILLA:                              PAGE

16     Examination by Mr. Enica.....................4
       Examination by Mr. Rodriguez................44
17
       Further Examination by Mr. Enica............45
18

19

20

21

22

23

24

25
```

```
 1  Expert AuPair?
 2       A.   Yes, I did.  I applied with them.
 3       Q.   And then they found the ▮?
 4       A.   Yes.
 5       Q.   And then were you ever in touch with the
 6  ▮ prior to signing this contract?
 7       A.   Yes, I was.  We did -- we were in contact
 8  before just to see if we were a match, a good match.
 9       Q.   Okay.  And when you received this
10  contract, it was already filled in with names and
11  hours on the first page?
12       A.   Yes, it was.  Uh-huh (affirmative).
13       Q.   And you don't remember -- strike that.
14            Did you receive this contract from Expert
15  AuPair or from the ▮ if you remember?
16       A.   I received this from the -- from Expert
17  AuPair.
18       Q.   And do you remember if it was signed by
19  the ▮ when you received it?
20       A.   I do -- I don't remember if it was already
21  signed, but they did send it to me for me to sign
22  after reviewing.
23       Q.   Okay.  And you reviewed the contract?
24       A.   Yes.
25       Q.   And then you signed and sent the copy back
```

Case No. 1:14-cv-03074-CMA-KMT Document 1076-85 Filed 05/09/18 USDC Colorado pg 6 of 16
Case 1:14-cv-03074-CMA-KMT Document 1085-12 filed 05/23/18 USDC Colorado pg 6 of 16

Ired Sevilla
March 23, 2018
Page 16

```
 1   to Expert AuPair or to         ?
 2        A.    To Expert AuPair.
 3        Q.    And the document in front of you looks
 4   like the copy you sent back to Expert AuPair, right?
 5        A.    Yes.
 6        Q.    If we look on the second page, there are
 7   three titles involved.  One is children, the other
 8   one duties, and the third one remuneration?
 9        A.    Uh-huh (affirmative).
10        Q.    By looking at duties, would you say that
11   the duties mentioned here reflect the duties you were
12   required to perform as part of your job in providing
13   for the         family?
14        A.    Yes, they do.
15        Q.    Do you think there were any additional
16   duties?
17        A.    No.
18        Q.    Would you say that any of the duties here
19   were not actually applicable?
20        A.    Oh, yeah, they look like what I performed
21   for the
22        Q.    Okay.  Going down, it says, "The employer
23   agrees to pay" -- under salary.
24        A.    Yes.
25        Q.    "The employer agrees to pay the au pair
```

Case No. 1:14-cv-03074-CMA-KMT Document 1076-9 Filed 05/09/18 USDC Colorado pg 7 of 16
Case 1:14-cv-03074-CMA-KMT Document 1085-12 Filed 05/23/18 USDC Colorado Page 7 of 16

Ired Sevilla
March 23, 2018
Page 17

```
 1   the salary of $200 per week."
 2              Was that accurate?  Did you receive the
 3   amount of $200 from the [REDACTED]?
 4        A.   I honestly don't remember, and I don't
 5   have any documents about it.  But if it is there on
 6   the contract, that should have been the amount I got
 7   per week.
 8        Q.   Okay.  On the next line it says, "Payment
 9   will be Friday."  And then the following line it
10   says, "Payment will be made by," and there is a cross
11   next to the word "check."  Do you remember if you
12   were paid by check or cash?
13        A.   I did -- I was paid by check on Fridays.
14        Q.   If you are to go home and take a look at
15   your bank statement, would you be able to confirm
16   that the amount was $200?
17        A.   Yes, I can go back and confirm that.
18              (EXHIBIT NUMBER 3 WAS MARKED.)
19        Q.   (BY MR. ENICA)  I would like you to take a
20   look at the document and let me know when you're
21   done.
22              Okay.  Have you seen this document before?
23        A.   Yes.
24        Q.   Is the signature on the last page your
25   signature?
```

Ired Sevilla
March 23, 2018
Page 18

1  A. It is my signature.
2  Q. Okay. And do you understand that by
3  signing this document, it has the same value as
4  signing it under oath, correct?
5  A. Yes, I do.
6  Q. Now, if you'd go to page 5.
7  MR. RODRIGUEZ: What is the paragraph
8  number?
9  MR. ENICA: Paragraph number 4.
10  MR. RODRIGUEZ: Okay.
11  Q. (BY MR. ENICA) Subsection A, it's asking
12  the amount that you were paid for that week's work.
13  And you mentioned $180?
14  A. Yes.
15  Q. How do you explain the discrepancy?
16  A. Because I do not remember how much I was
17  paid at the moment.
18  Q. Okay. But this is a declaration that you
19  took under oath. You understand that?
20  A. Right.
21  Q. So you are swearing that you are -- you
22  were paid $180?
23  A. Yes.
24  Q. Would you like to change your testimony
25  based on the information given to you today?

Case No. 1:14-cv-03074-CMA-KMT Document 1076-9 Filed 05/09/18 USDC Colorado pg 9 of 16
Case 1:14-cv-03074-CMA-KMT Document 1085-12 filed 05/23/18 USDC Colorado pg 9 of 16

Ired Sevilla
March 23, 2018
Page 19

1    A.    I know that I was paid between 180 and
2  200, but I don't remember what was the exact amount.
3    Q.    Okay.  Did you review your bank statements
4  before answering this question?
5    A.    No, I did not.
6    Q.    Okay.  But you could have?
7    A.    I could have, yeah.
8    Q.    Okay.  Did you review your bank statements
9  in preparation for today?
10    A.    No, I haven't.
11    Q.    Since we have this document, very briefly
12  if you'd look at page -- I think it's 6.  It says,
13  "Request for Production."
14    A.    Uh-huh (affirmative).  Yes.
15    Q.    Have you looked for any of the documents
16  mentioned in the request for production?
17    A.    No, I haven't looked for any document.
18    Q.    Okay.  And I will have the same question
19  about the last page, the request for admission.  It
20  says, "I received $180 in weekly payments from my
21  host family."
22         I just want to make sure the same
23  statement you made previously applied, which is you
24  did not look at your statements so you didn't know
25  exactly how much you received?

Ired Sevilla
March 23, 2018
Page 20

1   A.   That's right.  I did not look at my
2   statements, and I'm not sure of the exact amount.
3        Q.   Okay.
4             MR. RODRIGUEZ:  Just pause and give me a
5   second to make an objection, okay?
6             THE WITNESS:  Okay.
7             MR. ENICA:  Did you want to make an
8   objection now?
9             MR. RODRIGUEZ:  We're okay.  Thank you.
10       Q.   (BY MR. ENICA)  Let's go back to
11  Exhibit 2.  Exhibit 2 is titled "Employment
12  Contract," and I'm on the first page.  We're looking
13  under the title "Terms of Employment."  Hours, there
14  is a table showing the number of hours.
15       A.   Okay.
16       Q.   Would you say that the number of hours of
17  work mentioned in this table are accurate?
18       A.   No, they're not.
19       Q.   Okay.  How would they differ from the
20  actual number of hours that you are required to work?
21       A.   They say they start at 6:00 a.m. and
22  time -- oh, okay.  The end time was around 10:00.
23       Q.   Okay.  So the end time was not 8:00 p.m.
24  as written in the table?
25       A.   No, it wasn't.

1  Q. But it was 10:00 p.m.?
2  A. Yes.
3  Q. Other than that, would you say the rest is
4  pretty much accurate?
5  A. Yes, it is.
6  Q. You mentioned that you signed the last
7  page of this contract?
8  A. Yes.
9  Q. And sent it to Expert AuPair --
10  A. Yes.
11  Q. -- correct?
12  Did you inform Expert AuPair that your
13  schedule changed and it was 10:00 p.m., instead 8:00
14  p.m.?
15  MR. RODRIGUEZ: Objection,
16  mischaracterizes.
17  THE WITNESS: No, I never informed Expert
18  AuPair.
19  Q. (BY MR. ENICA) So did Expert AuPair know
20  that your end time was 10:00 p.m. rather than 8:00
21  p.m.?
22  A. No. I never mentioned that to them.
23  Q. Okay. If you look right underneath, there
24  is a note and there is a bolded paragraph. And it
25  says, "Au pairs may not work more than ten hours in

```
 1   any day or 45 hours in any work week."
 2        A.    Uh-huh (affirmative).
 3        Q.    Would you say you were working more than
 4   45 hours per work week?
 5        A.    Yes, I was.
 6        Q.    And did you inform Expert AuPair of the
 7   fact that you were working more than 45 hours per
 8   week?
 9        A.    I did not inform Expert AuPair.
10        Q.    Have you at any point told your employer
11   that you are not to work more than 45 hours a week?
12              MR. RODRIGUEZ:  Objection to the extent it
13   seeks a legal conclusion.
14              THE WITNESS:  I did not inform my
15   employer.
16        Q.    (BY MR. ENICA)  Let me rephrase it.  Have
17   you ever informed the [REDACTED], your host family, that
18   you are not supposed to work more than 45 hours per
19   week?
20        A.    No, I did not inform the [REDACTED].
21        Q.    I am moving to page 3 of the contract.  It
22   starts with "Deductions."  And I'm looking under
23   paragraph 5 or section 5, which says "Car."
24              "The au pair" -- and then there is an
25   "X" -- "will have access to a car."
```

```
 1  contract upon an agreement.
 2      Q.   Okay.  Who is we?
 3      A.   Jignesh Patel and me.
 4      Q.   So █████████████████████ and
 5  yourself talked and decided to terminate this?
 6      A.   Yes.  We did talk and terminate the
 7  contract.
 8      Q.   And what happened afterwards?
 9      A.   After we terminated the contract, I left
10  the host family's home.
11      Q.   Did you keep working as an au pair?
12      A.   No.
13      Q.   Okay.  And you said -- I don't remember if
14  you said that, so I'm going to ask you again.
15           Did you take any vacation while you were
16  working for the ███ family?
17      A.   No, not any vacation.
18      Q.   But they paid two weeks upon your
19  departing from their family, right?
20      A.   I don't remember.  But I could look it up
21  if it's necessary.
22      Q.   Have you ever complained to Mr. or Mrs.
23  ███ to Expert AuPair, or to the Department of
24  State about the amount that you were paid?
25           MR. RODRIGUEZ:  Objection, compound.
```

Ired Sevilla
March 23, 2018
Page 41

```
 1            THE WITNESS:  I never object.
 2       Q.   (BY MR. ENICA)  Okay.  I'll break it down
 3   in pieces.  Have you ever complained about the amount
 4   you received on a weekly basis to your host family
 5   which was Mr. and Mrs. ▓▓▓▓?
 6       A.   No, I did not complain.
 7       Q.   Okay.  Have you ever complained to Expert
 8   AuPair about the same thing?
 9       A.   I never complained.
10       Q.   Have you ever complained to the Department
11   of State?
12       A.   I never complained.
13       Q.   Okay.  Have you ever complained about the
14   number of hours that you worked?
15       A.   No, I did not never complain to the ▓▓▓▓
16   or to Expert AuPair.
17       Q.   How about the Department of State?
18       A.   No, I never did.
19       Q.   In your opinion was Meave -- and when I
20   say "Meave," I mean the person that you were in touch
21   with at Expert AuPair -- or Mark -- and again when I
22   say "Mark," I mean the person that you were in touch
23   with.  Were either Meave or Mark aware that you
24   worked more than 45 hours a week?
25       A.   No, they weren't aware.
```

Ired Sevilla
March 23, 2018
Page 42

```
 1      Q.   Did you have anybody else at Expert AuPair
 2  that you were in touch with?
 3      A.   No.
 4      Q.   And the location of your placement was in
 5  Florida, right?
 6      A.   Yes, it was.
 7      Q.   You mentioned that you were paid by check
 8  by Mr. ▓▓▓▓?
 9      A.   Yes.
10      Q.   Do you remember if it was a personal check
11  coming out from his account?
12      A.   I don't remember.
13      Q.   Do you remember if it was a business check
14  belonging, let's say, to Expert AuPair?
15      A.   No, I don't remember.
16      Q.   When we talked about the au pair program,
17  you mentioned you believed it was an intercultural
18  exchange program.  I know this program has an
19  educational component.  Did you go to school as part
20  of the educational component while you were here in
21  the au pair program?
22      A.   No, I did not go to school.
23      Q.   Again I don't want to relate this to the
24  immigration stages or anything else.  But is there a
25  specific reason why not?
```

REPORTER'S CERTIFICATE

STATE OF UTAH        )
                     )  ss.
COUNTY OF SALT LAKE  )

　　　　　I, Tamra J. Berry, Registered Professional Reporter in and for the State of Utah, do hereby certify:

　　　　　That prior to being examined, the witness, IRED SEVILLA, was by me duly sworn to tell the truth, the whole truth, and nothing but the truth;

　　　　　That said deposition was taken down by me in stenotype on March 23, 2018, at the place therein named, and was thereafter transcribed and that a true and correct transcription of said testimony is set forth in the preceding pages;

　　　　　I further certify that, in accordance with Rule 30(e), a request having been made to review the transcript, a reading copy was sent to Mr. Rodriguez for the witness to read and sign and then return to me for filing with Mr. Enica.

　　　　　I further certify that I am not kin or otherwise associated with any of the parties to said cause of action and that I am not interested in the outcome thereof.

　　　　　WITNESS MY HAND AND OFFICIAL SEAL this 3rd day of April, 2018.

_____
Tamra J. Berry, RPR, CSR