# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, *ET AL.*

      Plaintiffs,

v.

INTEREXCHANGE, INC., *ET AL.*

      Defendants.

### DECLARATION OF JOHANA PAOLA BELTRAN

I, Johana Paola Beltran, being duly sworn, deposes and says:

1. My name is Johana Paola Beltran and I am over the age of 18.

2. Beginning on or around early 2011, I visited the office of InterExchange, located in downtown Bogota, Colombia. I submitted an application to InterExchange.

3. A representative for InterExchange contacted me to provide me with the J-1 visa requirements in order to become an au pair. The agent explained that I would have to take English classes, obtain a driver's license, receive training in first aid, and take swimming lessons. I was also instructed to take two semesters at a post-secondary school. I took one class per semester, from 2011 until early 2012, at my own expense.

4. In early 2012, InterExchange contacted me to conduct a formal interview, including questions regarding my ability to provide childcare. InterExchange arranged for me to interview with a few families, to be conducted via Skype and/or telephone. I interviewed with the Noonan family. InterExchange later advised me that I would be working for the Noonan family and that InterExchange would facilitate a J-1 visa interview for me at the United States embassy in Bogota.

5. I paid $5,000,000 pesos ($2,500 USD) to InterExchange.

6. In May, 2012, I received my J-1 Visa.

7. In August, 2012, InterExchange made arrangements for me to travel from Bogota to New York.

8. Upon arrival in New York, InterExchange made arrangements for me to stay in a hotel with approximately 50 other au pairs for one week, to attend mandatory childcare training provided by InterExchange. I was not paid during this week of training.

9. Upon completion of the week-long training in New York, I flew to Denver, Colorado to begin working for the Noonan family as their au pair.

10. After my arrival in Denver, I was contacted by an InterExchange representative. I also attend one meeting with other au pairs and an agent of InterExchange.

11. In the Noonan family home, my job responsibilities were not limited to childcare services but included house work. I was responsible for cleaning the home, preparing dinner Monday through Saturday, laundry, packing and unpacking for the family before and after trips, cleaning the family vehicle daily, bringing in the groceries from the car, gardening, and tending to the family's outdoor pets (such as chickens, including the chicken coop).

12. The family did not provide me with three meals per day every day. I was not allowed to eat with the family. I was only allowed leftovers if any were available.

13. During my employment, I often worked more than 8 hours, sometimes 9-10 hours per day. I sometimes worked on Sunday, my day off. Ms. Noonan kept a schedule for me, but she did not keep track of the hours.

14. I often worked more than 40 hours per week. I was not paid any additional money for overtime or wages exceeding 40 hours in a work week.

15. I was paid $195.75 per week for each week that I worked in the Noonan home, even if I worked in excess of 40 hours that week.

16. I ceased working with the Noonan family in November, 2012. Ms. Noonan contacted InterExchange about me, and InterExchange then sent a representative to the family home and had me sign documents that I did not understand. I was not provided with an explanation or copy of what I signed.

I solemnly affirm under the penalties of perjury that the contents of this Declaration are true and correct to the best of my knowledge.

*Johana Paola Beltran*
JOHANA PAOLA BELTRAN

2