IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; LUSAPHO HLATSHANENI;
BEAUDETTE DEETLEFS; ALEXANDRA IVETTE GONZALEZ;
SARAH CAROLINA AZUELA RASCON; LAURA MEJIA JIMENEZ;
JULIANE HARNING; NICOLE MAPLEDORAM;
CATHY CARAMELO; LINDA ELIZABETH;
CAMILA GABRIELA PEREZ REYES;

and those similarly situated,

        Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC., D/B/A CULTURAL CARE AUPAIR;
AUPAIRCARE INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP; D/B/A AUPAIR FOUNDATION
AMERICAN INSTITUTE FOR FOREIGN STUDY, DBA AU PAIR IN AMERICA;
ASSOCIATES IN CULTURAL EXCHANGE D/B/A GOAUPAIR;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
GOAUPAIR OPERATIONS, LLC D/B/A/GOAUPAIR;
AGENT AU PAIR;
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC, DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC., DBA THE INTERNATIONAL AU PAIR EXCHANGE,

        Defendants.

---

**DEFENDANT INTEREXCHANGE, INC.'S REPLY IN SUPPORT OF MOTION TO
DECERTIFY PLAINTIFFS' FLSA COLLECTIVE ACTION (DOC. #1066)**

---

1

Defendant InterExchange, Inc. submits its Reply in support of its Motion to Decertify Plaintiffs' FLSA Collective Action (Doc. #1066).

## I.    INTRODUCTION.

In their response to InterExchange's Motion to Decertify, Plaintiffs take every opportunity to try to persuade the Court to simply disregard the substantial evidence of variation among putative class members, rather than providing any substantive reasons why the evidence supports class treatment.  As Plaintiffs believe they provided InterExchange with "extensive" opt-in discovery, they cannot now ignore the results of that discovery, which clearly support decertification.  (See Doc. #1093 at p. 10.)

## II.    RULE 23 CERTIFICATION IS NOT DISPOSITIVE OF FLSA DECERTIFICATION.

Plaintiffs assert that the Court need not pay any attention to InterExchange's motion to decertify the FLSA classes.  Indeed, Plaintiffs suggest that the Court can "summarily" deny the motion—and the motions of the other FLSA Defendants— because Rule 23 certification was granted, suggesting that the FLSA certification analysis is completely duplicative of the Rule 23 class certification process.  (Doc. #1093 at 22.)  This argument fails.  The Court ruled on Rule 23 class certification by accepting Plaintiffs' substantive allegations as true—which it must at that stage.[1]  (Doc. #828 at 6-7.)  By contrast, in addressing a motion to decertify conditionally certified FLSA classes, the court considers the evidence developed during discovery.  See, e.g.,

---

[1] Indeed, the Court's Rule 23 certification is not necessarily final, as the Court retains the discretion to determine, as a result of discovery, that Plaintiffs fail to meet Rule 23 certification standards.  DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188,1201-02 (10th Cir. 2010).

48556398.1

Daugherty v. Encana Oil & Gas (USA), Inc., 838 F. Supp. 2d 1127, 1132-33 (D. Colo. 2011) (noting that FLSA decertification comes "at the conclusion of discovery"); Koehler v. Freightquote.com, Inc., 93 F. Supp. 3d 1257, 1261 (D. Kan. 2015) (notice stage of FLSA certification process requires nothing more than "substantial allegations" that putative class were victims of single decision, policy, or plan; second stage occurs after discovery is complete and the court applies a stricter standard).  Rule 23 briefing took place between June and August 2017.  (Doc. #559, 599, 610, 643.)  The first round of opt-in notices for the FLSA claims were sent out in June, and the opt-in period for that first round did not close until November 2017.  Opt-in discovery as a whole did not close until April 2018. Thus, by a function of both timing and the Rule 23 standard, the Court had no opt-in discovery before it when it issued its Rule 23 order.[2]  Regardless of whether or not the Rule 23 standard is "more stringent" than the FLSA decertification standard, the evidence before the Court is different, and much more extensive, on FLSA decertification.  Plaintiffs' assertion that this discovery timing does not matter, that class variation was "widely known to the parties," is irrelevant, as widely known or not, evidence beyond Plaintiffs' allegations was not considered at the Rule 23 certification stage.  (Doc. #1093 at 8.)  The Court's Rule 23 Order has little, if any, bearing on FLSA decertification.

---

[2] The impact of this timing is emphasized by the fact that the Court's order on Rule 23 certification did not include any analysis specific to any individual Defendant.  (Doc. #828.)

3

III.   **PLAINTIFFS CANNOT AVOID DECERTIFICATION BY CLAIMING 45 HOURS OF WORK PER WEEK.**

As InterExchange presented in its Motion to Decertify, an au pair's *actual hours* worked is critical and necessary to both liability and damages under the FLSA.  (Doc. #1066 at 7-12.)  The evidence developed from InterExchange-sponsored au pairs during discovery reveals substantial variation not only in actual "hours worked," but also in the specific duties and host family arrangements that affect whether any particular hour is an "hour worked."  (Id.)  Plaintiffs seek to circumvent the problems this evidence creates for class certification by asserting that the Court can and should assume that all au pairs worked 45 hours per week, based on the fact that DOS regulations require compensation "at a weekly rate based upon 45 hours of child care services per week." 22 C.F.R. § 62.31(j).  Au pairs, Plaintiffs assert, are "weekly workers" not hourly workers.  (Doc. #1093 at 35.)

The FLSA, however, does not distinguish between a "weekly worker" and an "hourly worker."  The requirement that au pairs be paid for 45 hours per week regardless of actual hours worked is not an FLSA requirement, but a DOS requirement. The FLSA requires that non-exempt employees receive at least the federal minimum wage for each hour worked in a workweek.  29 U.S.C. § 206(a).  Generally, no FLSA violation exists if an employee received an average hourly rate at or above minimum wage for the hours *actually worked*.[3]  Taylor v. McLane Food Serv., Inc., No. 12-2697-JWL, 2013 WL 943531, at *3 (D. Kan. Mar. 11, 2013) (emphasis added).  Similarly, an

---

[3] Plaintiffs concede that not all au pairs worked 45 hours per week and that the au pairs did not each work the same number of hours.  (Doc. #1093 at 38.)

4

au pair is not entitled to compensation for overtime if he or she does not actually work overtime.  See 29 C.F.R. § 778.102 ("If no more than the maximum number of hours prescribed in the [FLSA] are actually worked in the workweek, overtime compensation . . . need not be paid.")  Under the FLSA, both liability and damages is determined by actual hours worked.  Arenas v.  Unified Sch. Dist. No. 223, No. 15-cv-9359-JWL-TJJ, 2016 WL 5122872, at *2 (D. Kan. Sept. 21, 2016); Moschos v Creighton Univ., No. 8:11CV403, 2013 WL 3005560, at *5 (D. Neb. June 4, 2013).  Au pairs have no FLSA-based entitlement to a weekly stipend irrespective of hours worked, and they therefore have no FLSA-based cause of action to recover for 45 hours of work per week if they did not actually work 45 hours per week.[4]

As InterExchange noted in response to Plaintiffs' Motion for Partial Summary Judgment, the DOS regulation capping hours at 45 per week is an affirmative departure from the normal operation of the FLSA.  As noted in the FLSA's implementing regulations, "[T]here is no absolute limitation in the [FLSA] . . . on the number of hours that an employee may work in any workweek."  29 C.F.R. § 778.102.  The DOS regulation is not a "reasonable agreement" as to hours worked under 29 C.F.R. § 785.23.  The DOS regulation is, by its very definition, a maximum.  22 C.F.R. § 62.31(e)(5).  InterExchange's contracts do not "incorporate a 45-hour workweek," as Plaintiffs suggest, but rather merely incorporate the hours cap from the regulations, with which host families must comply.  (Doc. #861-14 at 940; #861-15 at 959.)  Host families

---

[4] Plaintiff's theory grants a windfall to some au pairs and short-changes other au pairs. If Plaintiff's theory that the $195.75 stipend constitutes an FLSA violation succeeds, then those au pairs who worked more than 45 hours per week (and some testified that they did) would be entitled to compensation for hours worked over 45 in a week.

and au pairs are free to "agree" on any number of hours or work per week that does not exceed 45.  It would be this host family-au pair agreement, if any, that would implicate the FLSA regulation.  Any such agreement—and "all pertinent facts" substantiating the agreement—could only be determined by an individualized inquiry of each au pair and/or host family.  Because hours worked cannot be determined on a class-wide basis, liability cannot be determined on a class-wide basis.  Decertification is appropriate.

## IV.    EACH AU PAIR LIVED AND WORKED IN A UNIQUE ENVIRONMENT.

InterExchange agrees that differences among opt-ins must be material to the issues at hand in order to compel decertification.  And they are. The fact that each au pair resides with an individual host family has enormous, detrimental implications for collective action treatment. (See Doc. #1066 at 7-12.)  Plaintiffs assert that the variation in au pair worksites is "unremarkable and uncontested," but the collective action analysis does not require remarkable or contested circumstances.  Even the extremely small number of au pairs that InterExchange was able to depose testified to extremely varied circumstances in terms of hours worked, consistency of schedule, specific duties, additional childcare help, and family time.[5]  (Doc. #1066 at 7-12.)  All of these factors affect "hours worked," and thus in combination with evidence of stipend paid affects whether an individual au pair can establish liability and/or any particular amount of damages.  Plaintiffs do not present any substantive rebuttal to InterExchange's

---

[5] Notably, Plaintiffs' statement that "all au pairs perform childcare" was specifically denied by Beltran in her deposition.  Beltran testified that she spent very little time with the children, and the tasks she performed were those of a "housekeeper."   (Doc. #325-1 at 19; 395 at ¶ 385; 599-6 at 6-8.)

argument that these circumstances are highly diverse and absolutely critical to questions of both liability and damages.  (See Doc. #1066 at 7-12; #1093 at 28-32.)

## V.   PLAINTIFFS FAIL TO REBUT EVIDENCE SPECIFIC TO INTEREXCHANGE.

Of Plaintiffs' 60-page opposition, less than two pages is devoted specifically to InterExchange.  (Doc. #1093 at 13-15.)   As they have done repeatedly in this litigation, Plaintiffs attempt to conceal the unfavorable evidentiary record with respect to InterExchange by lumping all Defendants together, even though each Defendant is a separate company with individual business practices and wholly independent FLSA classes.  The evidence developed in discovery from InterExchange-sponsored au pairs favors decertification.

Plaintiffs flatly misrepresent au pair testimony about the stipend received. (Compare Doc. #1066 at 20-22 with Doc. #1095-13.)  Several au pairs testified that they received a stipend other than $195.75 or a stipend that varied, but Plaintiffs not only fail to respond to the significance of that variation but omit it completely from their evidentiary "summary."  (Id.)  With respect to the stipend, they rely heavily on a "survey" sent to host families.[6]  (Doc. #1094-21.)  However, the survey only bolsters InterExchange's argument that decertification of the FLSA classes is appropriate.  The mean—that is, the average—stipend identified by Plaintiffs' "survey" for InterExchange-sponsored au pairs was $206.07.  (Doc. #1094-21.)  This means, of course, that some reported stipends exceeded $206.07.  The mode (the number that occurred most often)

---

[6] The survey results are anonymous, so it is unknown whether any of the 221 responding host families overlap in any way with the 10 au pairs who returned written discovery responses or the 12 au pairs whom InterExchange deposed.

48556398.1

was $200, not $195.75.[7]  Of the ten au pairs who returned written discovery responses, only seven out of 10 stated they made exactly $195.75.  (Doc. #1095-8 at 6-7, 20, 34, 48, 62, 76, 90, 104, 118, 132.)  Some InterExchange-sponsored au pairs testified that they received extra money over and above the stipend for work performed or for room and board purposes. (doc. #1066 at 11-19.)  These extra sums, which can only be identified through individual inquiry, unquestionably affect the liability and damages analyses for alleged unpaid wages.  Rather than supporting collective action treatment, the data that Plaintiffs themselves present emphasizes the true lack of uniformity among au pairs with respect to the stipend.

With respect to training time, no dispute exists that InterExchange-sponsored au pairs were required to attend training because DOS requires sponsors to provide au pairs with training.  22 C.F.R. § 62.10(c), 62.31(f), (g).  Two of the nine deponents asked about training time stated they were paid.  (Doc. #1093 at 14-15.)  The only way to determine whether or not an au pair was paid for training is to ask each au pair individually.  Plaintiffs again simply ignore the variation in testimony.  If an au pair received payment for training, he or she has no claim, regardless of whether or not Plaintiffs prevail on their training wage theory.

Plaintiffs attempt to categorize the substantial differences in au pairs' circumstances as "minor variation."  (Doc. #1093 at 34.)  The evidence of dissimilarity is not minor but rather so substantial that decertification is appropriate.  Plaintiffs have not identified any way to determine liability on a class-wide basis.

---

[7] InterExchange does not concede the validity or reliability or Plaintiffs' survey.

## VI.   INDIVIDUALIZED DEFENSES COMPEL DECERTIFICATION.

InterExchange is entitled to cross-examine each au pair with respect to hours worked, stipend arrangement, and the family circumstances that he or she experienced for purposes of determining whether that particular au pair has a claim.  In their response, Plaintiffs do not challenge the need for this cross-examination.  (Doc. #1093 at 43-50.)  Because of the highly individualized circumstances with each host family, representative testimony is not appropriate in this case because none of it is "representative" of the class.[8]  (See Doc. #1066 at 8-11.)

Moreover, Plaintiffs' equitable tolling argument defeats collective action treatment.  The alleged equitable tolling at issue in this case is not merely a question of two years versus three years or whether certain events in the lawsuit tolled the limitations for class members.  Plaintiffs allege, specifically, that au pairs back to 2009 should be allowed to proceed in this lawsuit on the grounds that InterExchange (and all other sponsors) "actively lied to all au pairs about every feature of their weekly wage." As the lawsuit was filed in November 2014, a significant number of these statutes of limitations ran months, if not years, before the lawsuit was filed.  Plaintiffs have the burden of demonstrating why equitable tolling is appropriate in a given case.  Struck v. PNC Bank N.A., 931 F. Supp. 2d 842, 846 (S.D. Ohio 2013).  First and foremost, their allegation of "class-wide lies" is a bootstrap argument, as Plaintiffs are using their unproven allegations in this case to justify equitable tolling.  Second, none of their authority supports class-wise tolling in these circumstances.  All of Plaintiffs' cases

---

[8] For some unexplained reason, Plaintiffs state that InterExchange argued a failure to keep records as an individualized defense.  (Doc. #1093 at 45.)  It did no such thing.

48556398.1

involve common tolling that occurs in FLSA cases due to discovery delays or notice delays during litigation or a question as to whether the FLSA's two- or three-year statute of limitations applies.  (See Doc. #1093 at 51.)  None of Plaintiffs' cases supports class-wide tolling based on unproven allegations of fraud.  Common sense confirms that an equitable tolling argument based on "class-wide lies" cannot be determined on a class-wide basis because it is impossible to determine, without individual inquiry, whether any particular au pair heard or relied upon these alleged "lies."  The unique and individual testimony related to stipend and family circumstances and each affected au pair's needed testimony regarding equitable tolling defeats collective action treatment.

## VII.    FAIRNESS AND PROCEDURAL CONSIDERATIONS.

Although Plaintiffs apparently do not plan on calling many witnesses, Doc. #1093 at 53, Plaintiffs fail to address the reality that a trial in this case that proceeds on a collective basis will involve many, many witnesses testifying to the uniquely individual issues identified above, whether called by Plaintiffs or InterExchange.  These witnesses live in numerous countries and speak many different languages that will require significant logistical accommodations at trial.  As they do with most of InterExchange's arguments, Plaintiffs seek to avoid this reality by simply disregarding it.  This case is not manageable as a collective action.

## VIII.    CONCLUSION.

For the reasons stated above and in InterExchange's Motion for Decertification, InterExchange respectfully requests that the Court decertify the FLSA classes against InterExchange.

48556398.1

DATED this 11th day of July, 2018.

                                Respectfully submitted,

                                *s/Brooke A. Colaizzi*
                                Brooke A. Colaizzi
                                Heather F. Vickles
                                Raymond M. Deeny
                                Joseph H. Hunt
                                Alyssa L. Levy
                                SHERMAN & HOWARD L.L.C.
                                633 Seventeenth Street, Suite 3000
                                Denver, CO 80202
                                Tel: (303) 297-2900
                                Fax: (303) 298-0940
                                Email:  bcolaizzi@shermanhoward.com
                                Email:  hvickles@shermanhoward.com
                                Email:  rdeeny@shermanhoward.com
                                Email:  jhunt@shermanhoward.com
                                Email:  alevy@shermanhoward.com

                                ATTORNEYS FOR DEFENDANT
                                INTEREXCHANGE, INC.

48556398.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July, 2018, I electronically filed the foregoing **DEFENDANT INTEREXCHANGE, INC.'S REPLY IN SUPPORT OF MOTION TO DECERTIFY PLAINTIFFS' FLSA COLLECTIVE ACTION (DOC. #1066)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood
TOWARDS JUSTICE
1410 High Street, Suite 300
Denver, CO  80218
Email: alex@towardsjustice.org

Brian A. Birenbach
THE RIETZ LAW FIRM, L.L.C.
114 Village Place, Suite 301
Dillon, CO  80435
Email: brian@rietzlawfirm.com

Lawrence D. Stone
Kathleen E. Craigmile
NIXON SHEFRIN HENSEN OGBURN,
    P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
E-mail: LStone@Nixonshefrin.com
E-mail: kcraigmile@nixonshefrin.com

Kathryn A. Reilly
Natalie E. West
Brett M. Mull
V. William Scarpato III
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver CO  80202-5647
Email: reilly@wtotrial.com
Email: West@wtotrial.com
Email: Mull@wtotrial.com
Email: Scarpato@wtotrial.com

William J. Kelly III
Chanda M. Feldkamp
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO  80202
Email: wkelly@kellywalkerlaw.com
Email: cfeldkamp@kellywalkerlaw.com

Adam A. Hubbard
Jonathan S. Bender
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Email: aahubbard@hollandhart.com
Email: jsbender@hollandhart.com

48556398.1

Joseph B. Cartafalsa
Robert M. Tucker
Stephen J. Macri
OGLETREE, DEAKINS, NASH, SMOAK &
    STEWART, P.C.
1745 Broadway, 22nd Floor
New York, NW 10019
Email: joseph.cartafalsa@ogletree.com
Email: Robert.tucker@ogletree.com
Email:  Stephen.macri@ogletree.com

Martha L. Fitzgerald
David B. Meschke
Margo J. Arnold
Martine T. Wells
BROWNSTEIN HYATT FARBER
    SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Email: mfitzgerald@bhfs.com
Email: dmeschke@bhfs.com
Email: marnold@bhfs.com
Email: mwells@bhfs.com

Joan A. Lukey
Robert M. Buchanan, Jr.
Michael T. Gass
Justin J. Wolosz
Lyndsey M. Kruzer
Kevin P. O'Keefe
Samuel N. Rudman
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 82110
Email: joan.lukey@choate.com
Email: rbuchanan@choate.com
Email: mgass@choate.com
Email: jwolosz@choate.com
Email: lkruzer@choate.com
Email: kokeefe@choate.com
Email: srudman@choate.com

Thomas B. Quinn
Peggy E. Kozal
Jennifer W. Vedra
Nathan A. Huey
Jennifer Arnett-Roehrich
GORDON & REES, LLP
555 17th Street, Suite 3400
Denver, CO 80202
Email: tquinn@gordonrees.com
Email: pkozal@gordonrees.com
Email: jvedra@gordonrees.com
Email: nhuey@gordonrees.com
Email: jarnett-roehrich@gordonrees.com

James M. Lyons
Jessica L. Fuller
Diane R. Hazel
LEWIS ROCA ROTHGERBER CHRISTIE
    LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Email: jlyons@lrrc.com
Email: jfuller@lrrc.com
Email: dhazel@lrrc.com

Meshach Y. Rhoades
Martin Estevao
Vance O. Knapp
ARMSTRONG TEASDALE LLP
4643 S. Ulster St., Suite 800
Denver, CO  80237
Email: mrhoades@armstrongteasdale.com
Email: mestevao@armstrongteasdale.com
Email: vknapp@armstrongteasdale.com

48556398.1

Bogdan Enica
Bogdan Enica, Attorney at Law
111 Second Avenue, NE, Suite 213
St. Petersburg, FL  33701
Email: Bogdane@hotmail.com

Susan Penniman Klopman
H & K Law, LLC
3900 East Mexico Ave, Suite 330
Denver, CO 80210
Email: sklopman@hklawllc.com

Sigrid S. McCawley
Sabria McElroy
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Email: smccawley@bsfllp.com
Email: smcelroy@bsfllp.com

Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Email: estock@gibsondunn.com

Sean P. Rodriguez
Juan P. Valdivieso
Boies Schiller Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Email:  srodriguez@bsfllp.com
Email:  jvaldivieso@bsfllp.com

Matthew L. Schwartz
Peter M. Skinner
Dawn L. Smalls
Randall W. Jackson
Joshua J. Libling
Byron Pacheco
Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY  10022
Email:  mlschwartz@bsfllp.com
Email:  pskinner@bsfllp.com
Email: dsmalls@bsfllp.com
Email:  rjackson@bsfllp.com
Email: jlibling@bsfllp.com
Email: bpacheco@bsfllp.com

James E. Hartley
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO  80302
Email: jhartley@hollandhart.com

*s/ Laura Lewis*

48556398.1