IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.,

      Plaintiffs,

v.

INTEREXCHANGE, INC., et al.,

      Defendants.

---

**BRIEF IN FURTHER SUPPORT OF APIA'S MOTION
TO DECERTIFY THE COLLECTIVE ACTION**

---

Defendant, American Institute for Foreign Study, d/b/a Au Pair in America ("APIA"), respectfully submits this brief in further support of APIA's motion to Decertify the Collective Action (hereinafter "Motion").

Plaintiffs have failed to meet their burden of proving that their FLSA claims should proceed collectively. Specifically, Plaintiffs have not supplied evidence sufficient to demonstrate that the opt-in Plaintiffs are similarly situated such that liability could be determined on a class-wide basis. The most glaring omission in Plaintiffs' Opposition is the dearth of evidence of opt-in Plaintiffs' weekly hours "worked," which is critical to establishing liability for minimum wage and overtime violations. The little evidence that Plaintiffs have proffered on this critical issue supports APIA's position that weekly hours worked differ greatly among the opt-in Plaintiffs. As different weekly hours result in different liability determinations, Plaintiffs cannot demonstrate liability (or damages) on a class-wide basis.

# ARGUMENT

## THE OPT-IN PLAINTIFFS ARE NOT SIMILARLY SITUATED[1]

### a.   Opt-in Plaintiffs Had Disparate Terms and Conditions of "Work"

Plaintiffs do not contest that each au pair had an unrelated "worksite" and each had a unique host family "employer-in-fact." Instead, they argue that these variations are "unremarkable" because "there was a 'company wide decision that applied regardless of size, location, or any other individual factors.'" (Dkt. #1093, pp. 28-29).  To the contrary, these variations are quite remarkable because they ensure material differences in "employment" conditions that render collective treatment wholly inappropriate.

The "company wide decision" to which Plaintiffs refer, is APIA's monitoring for compliance with DOS *minimum* and *maximum* program requirements.  Within the programmatic minimum stipend and maximum hours established by the DOS, each host family, and *not* APIA, independently determined the two most critical "employment" factors associated with liability in any FLSA minimum wage and overtime action: actual hours "worked" and actual compensation paid each week.

The evidence adduced during opt-in discovery confirms that the "worksite" and "employer-in-fact" variations have resulted in different weekly compensation and hours

---

[1] In their Opposition, Plaintiffs responded to arguments made by two other Sponsors that equitable tolling cannot be decided on a class-wide basis.  Although the Court permitted Plaintiffs to notify pre-2013 au pairs that they "*may* have a claim," the Court did not conditionally certify pre-2013 au pairs or decide the equitable tolling issue. (Dkt. #539, p. 15 fn. 4) (emphasis added).  To date, Plaintiffs have not moved to toll the statute of limitations for pre-2013 au pairs and they cannot do so in an opposition to an unrelated motion.  Plaintiffs haven not met the heavy burden for tolling.  Moreover, they have not shown that alleged misrepresentations warranting tolling exist on a class-wide basis.

"worked" among opt-in Plaintiffs. (Dkt. #1070, pp. 3-10). Indeed, Plaintiffs concede that opt-in Plaintiffs did not uniformly receive the minimum weekly stipend or provide the maximum number of weekly hours of childcare assistance. (Dkt. #1093, pp. 38-39). As each host family exercises sole discretion to determine the critical "employment" conditions for their au pair, Plaintiffs cannot rely upon APIA's oversight of DOS programmatic requirements to demonstrate that opt-in Plaintiffs are similarly situated for purposes of establishing class-wide liability.

      **b.     Individual Liability Determinations Are Inescapable**

              i.     **Hours and Compensation Vary Plaintiff-by-Plaintiff**

Consistent with the approach taken by Plaintiffs throughout this litigation, the Opposition focuses on the weekly stipends received by opt-in Plaintiffs and practically ignores their actual weekly hours of childcare assistance. Plaintiffs assert several arguments in a failed attempt to cure or hide this deficiency.

First, Plaintiffs contend that the DOS au pair regulation constitutes a "reasonable agreement" under 29 C.F.R. § 785.23, which obviates the need to establish evidence of the actual number of hours worked. This contention fails for the reasons stated in APIA's Brief in Opposition to Plaintiffs' Partial MSJ. (Dkt. #932, pp. 7-10).

Assuming *arguendo*, that Plaintiffs could establish a "reasonable agreement" under 29 C.F.R. § 785.23, they would still not be relieved from the obligation to establish the actual number of hours "worked." Actual hours worked must be evaluated on an individualized basis to determine whether the agreed-upon schedule or hours are reasonable for purposes of § 785.23. *Leever v. Carson City*, 360 F.3d 1014, 1019-20

3

(9th Cir. 2004).

Second, Plaintiffs' argue that under *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016), they are entitled to use representative evidence to establish the hours worked for all au pairs. But, *Bouaphakeo* and the record evidence provide no such support for Plaintiffs.

In *Bouaphakeo*, the Supreme Court found that the individual employees' experiences were "sufficiently similar"—"each employee worked in the same facility, did similar work, and was paid under the same policy"—that the Plaintiffs could use an expert's representative sample of the time it took workers to don and doff equipment in order to establish class-wide liability. *Bouaphakeo*, 136 S. Ct. at 1048. *Bouaphakeo* is readily distinguishable from this case.

Reliance on the representative sample in *Bouaphakeo* was permissible in part because it "fill[ed] an evidentiary gap created by the employer's failure to keep adequate records" of the time spent donning and doffing equipment. *Bouaphakeo*, 328 S. Ct. at 1047; *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Under these circumstances, the employees were entitled to produce "sufficient evidence to show the amount and extent of [] work as a matter of just and reasonable inference" in lieu of actual documentary evidence. *Id*. (internal citations omitted).

As the host family "employers-in-fact" were responsible for keeping all legally-required records concerning hours worked and compensation paid,[2] any "evidentiary gap" in records of hours of "work" would necessarily vary by host family on an individualized

---

[2]    (Dkt. #1070, p. 3 fn. 1).

4

basis.  Here, Plaintiffs have not even attempted to obtain any evidence or records from host families. As Plaintiffs have failed to ascertain whether an "evidentiary gap" even exists, they may not use representative evidence to establish the amount of hours merely by "a matter of just and reasonable inference."  See *Bouaphakeo*, 328 S. Ct. at 1047.

Even if Plaintiffs could prove an "evidentiary gap," the numerous individual factors affecting the number of hours actually "worked" by au pairs renders any representative evidence of same to be wildly erratic and, therefore, meaningless.[3]  As the Supreme Court in *Bouaphakeo* cautioned, "representative evidence that is statistically inadequate or based on implausible assumptions could not lead to a fair or accurate estimate of the uncompensated hours an employee has worked."  *Bouaphakeo*, 328 S. Ct. at 1048-49; *see Sanchez v. Simply Right, Inc.*, 2017 WL 2222601, at *6 (D. Colo. May 22, 2017). Unlike in *Bouaphakeo* where all of the class members worked for the same single employer in the same workplace and performed the same brief and discrete donning and doffing task, the au pairs all "worked" for separate, unrelated "employers-in-fact" at separate "workplaces" under separate "working conditions."  The evidence in the record establishes that those different circumstances resulted in wide variations in weekly hours "worked."  Plaintiffs have not identified any representative evidence of hours worked and their expert witness concedes that it would be "too cumbersome" and "complex" to

---

[3]    *See Local 589 v. Massachusetts Bay Transportation Auth.*, 13-CV-11455-ADB, 2016 WL 5109508, at *3-4 (D. Mass. Sept. 20, 2016); *Steger v. Life Time Fitness, Inc.*, 14-CV-6056, 2016 WL 6647922, at *2 (N.D. Ill. Nov. 10, 2016) (questioning reliance on representative evidence where "the proposed class includes multiple types of employees, from over a hundred locations, all of whom worked under different managers at different times and thus were subject to different policies"); *see also Arnold v Directv, LLC*, 4:10-CV-352-JAR, 2017 WL 1251033, at *7 (E.D. Mo. Mar. 31, 2017).

conduct a representative survey of "hours worked."  (Dkt. #603, Ex. V-2, 357:9–358:8).  For these reasons, *Bouaphakeo* is distinguishable and Plaintiffs cannot rely on representative evidence of hours worked to establish liability on a class-wide basis.

Third, Plaintiffs argue in the alternative that there is "more than enough evidence" to establish hours worked for au pairs who have opted in to the collective action and that such evidence shows little variation in hours worked by the opt-in Plaintiffs. (Dkt. #1093, p. 38).  Plaintiffs rely solely on uncorroborated estimates from 16 APIA opt-in Plaintiff deponents in support of this contention.  However, this evidence is woefully insufficient to meet Plaintiffs' burden of establishing the hours actually "worked" by the nearly 1,000 au pairs who have opted in to the collective action.  It also dispels any inference of the same or similar weekly hours of childcare assistance across the class.

As discussed in the Motion, the evidence gleaned from opt-in depositions demonstrates that hours "worked" and, thus, liability vary starkly across the class.  (Dkt. #1070, pp. 6-9).   Based solely upon their own testimony regarding weekly compensation and hours, there is no liability for the following opt-in Plaintiffs:

- <u>Overtime</u>:
    - Amanda Hardman
    - Epiphanie Gomes
    - Robyn Mason
    - Grace Probyn
    - Beatriz Fusete
    - Jessica Kivedo
    - Lena Gruenwald
    - Liliam Arias
    - Cara Ouwerkerk
    - Erika Dion
    - Lisly Diaz
    - Julie Vogt

- <u>Minimum Wage</u>:

    o  If room and board credits are rejected:

    - Liliam Arias
    - Cara Ouwerkerk
    - Beatriz Fusete

    o  Additional au pairs if room credit is rejected, but board credit is accepted:

    - Robyn Mason
    - Jessica Kivedo
    - Erika Dion
    - Amanda Hardman
    - Lena Gruenwald
    - Julie Vogt

    o  Additional au pairs if room and board credits are accepted:

    - Eileen Geoffroy
    - Grace Probyn
    - Lisly Diaz

(Dkt. #1070, pp. 6-9).  Indeed, the only deponents whose testimony on compensation and hours infers liability for minimum wage and overtime are Plaintiffs Trudel, Segura, Barrera, Ortega, Guzema and Trigueros.  The disparate experiences of the opt-in Plaintiff deponents confirm that there is no common proof of the hours each au pair "worked."

APIA demonstrated in its Motion that there is also no common proof of the weekly compensation each au pair received.  (Dkt. #1070, pp. 9-10).  Plaintiffs criticized APIA for relying upon the testimony of "non-standard" au pairs, Cara Ouwerkerk, Erika Dion, Vicki Trudel, and Lisly Diaz[4] to show variation in compensation.  (Dkt. #1093, pp. 57-58).  They

---

[4] These opt-in Plaintiffs each participated in APIA's Extraordinaire Program. Extraordinaire Program participants have a degree in childcare or two years of full-time childcare experience; they received a minimum weekly stipend of $250.00. (Dkt. #325-1, ¶ 11, pp. 57 and 64).

7

insist that these "non-standard" au pairs are not part of the FLSA collective action and that APIA provided "flawed" au pair contact information to Plaintiffs by including information for "non-standard" au pairs. *Id*.

Contrary to Plaintiffs' assertions, Plaintiffs did not limit the FLSA collective action to "standard" au pairs in the Complaint[5] or their motion for conditional certification.[6] Similarly, the Court's Order granting Plaintiffs' conditional certification did not limit certification to "standard" au pairs.[7] (Dkt. #539). Plaintiffs have nevertheless disingenuously claimed for the first time in their Opposition that the class is and has always been limited to "standard" au pairs, which they define as "those that are paid $195.75 each week for up to 45 hours of childcare." (Dkt. #1093, p. 63).

This ad-hoc modification of the class definition is problematic. As APIA does not

---

[5] "Ms. Hlatshaneni preliminarily defines the "Au Pair in America 216(b) Class" as follows: ALL CURRENT AND FORMER AU PAIRS FOR WHOM DEFENDANT AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA WAS A J-1 VISA SPONSOR." (Dkt. #983, ¶ 578). "Ms. Hlatshaneni preliminarily defines the "Au Pair in America Sub-216(b) Class" as follows: ALL CURRENT AND FORMER AU PAIRS FOR WHOM DEFENDANT AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA WAS A J-1 VISA SPONSOR AND WHO WERE NOT PAID OVERTIME FOR HOURS WORKED IN EXCESS OF 40 IN A WEEK FOR WORK PERFORMED AFTER 1/1/2015." (Dkt. #983, ¶ 579).

[6] *See*, *e.g*., Dkt. #325, p. 1 ("Plaintiffs seek conditional certification under the . . . FLSA . . . with respect to all current and former *au pairs* who were sponsored by Defendants . . . Au Pair in America . . . at any time during the last three (3) years."; *Id*., at p. 3 ("Plaintiffs seek conditional certification . . . for the following classes of employees: . . . All current and former *au pairs* for whom Defendant [APIA] was a J-1 Visa Sponsor.").

[7] Accordingly, APIA fully complied with the Court's Order on conditional certification by providing contact information for <u>all</u> au pairs who participated in the APIA program on or after July 24, 2009. (Dkt. #539, p. 12).

pay the stipend or determine the amount, a rigorous factual analysis is necessary to determine whether an individual even belongs in the class as defined by Plaintiffs. The necessity of such analysis renders Plaintiffs' class definition, and the class, unworkable.[8]

### ii. Joint Employment Analysis Varies Plaintiff by Plaintiff.

Plaintiffs have also failed to present sufficient proof that the joint-employment inquiry may be resolved on a class-wide basis. Instead of meeting *their* burden, Plaintiffs claim that **APIA** has not demonstrated how the joint employment analysis would vary by au pair. (Dkt. #1093, p. 45). In fact, APIA's Motion provides ample support for the possibility of variation on the joint employment issue. (Dkt. #1070, pp. 11-12). Specifically, opt-in Plaintiff deposition testimony suggests that critical factors in assessing control over "employment," including the level of involvement with APIA community counselors and APIA's alleged involvement in determining the weekly stipend amount(s), varied on an au pair-by-au pair basis. *Id*.

APIA did not, as Plaintiffs claim, misconstrue the court's holding in *Sanchez v. Simply Right, Inc*. Although the court in *Sanchez* acknowledged that certain evidence might be representative and apply with equal force to each member of the class, it emphasized that other evidence such as interactions between one member of the class and the putative employer are not representative and apply only to that particular member

---

[8] *See e.g., Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 53 (D. Conn. 2004) (holding FLSA collective action was inappropriate where court would have to conduct individual inquiry regarding the merits of each proposed plaintiff's claim in order to determine class membership); *de la Cruz v. Gill Corn Farms, Inc.*, 2005 WL 5419056, at *6 (N.D.N.Y. Jan. 25, 2005) (holding class definition that depended on an unresolved legal determination was unworkable and, therefore, inappropriate).

of the class. *Sanchez*, 2017 WL 2222601, at *6. As courts must consider the "totality of the circumstances" when analyzing joint employment, the existence of this individualized evidence – even in the presence of some representative evidence – necessitates an individualized joint employment analysis:

> As such, going forward, to the extent that evidence is representative of each non-stayed plaintiff's work, the Court will consider it as being relevant to said plaintiff's claims. To the extent the evidence is not representative, though, it will only be considered as relevant to the specific plaintiff to whom it applies. ***To be clear, therefore, the non-stayed plaintiffs' claims will be assessed individually***.

*Id*. (emphasis added).

The deposition testimony regarding one-on-one interactions with Community Counselors and APIA representatives cited in the Motion is precisely the sort of evidence that is only relevant to the specific au pair to whom it applies. This and other individualized evidence regarding the APIA's post-placement involvement with the "employment" of au pairs is especially common here where au pairs do not have any "coworkers" and, thus, they frequently communicate with APIA representatives outside of the presence of other au pairs. The mere fact that Plaintiffs purport to rely on representative evidence does not paper over individualized evidence or dispense with the requisite au pair-by-au pair joint-employment analysis. *Sanchez*, 2017 WL 2222601, at *6.

## **CONCLUSION**

For these reasons and the reasons set forth the moving papers, APIA respectfully requests an Order (1) decertifying this matter as a collective action under the FLSA, (2) dismissing the improperly joined FLSA Plaintiffs' claims without prejudice, and (3)

10

severing any remaining named Plaintiffs' claims.

Respectfully submitted this 11th day of July, 2018.

>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
>
> /s/ *Robert M. Tucker*
> Stephen J. Macri
> Robert M. Tucker
> 1745 Broadway, 22nd Floor
> New York, NY 10019
> (212) 492-2071
> Email:   stephen.macri@ogletree.com
>          robert.tucker@ogletree.com
>
> ***Attorneys for American Institute for Foreign Study d/b/a Au Pair in America***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of June, 2018, I electronically filed the foregoing **BRIEF IN FURTHER SUPPORT OF APIA'S MOTION TO DECERTIFY THE COLLECTIVE ACTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

| | |
|---|---|
| **Adam A. Hubbard** | **aahubbard@hollandhart.com** |
| **Alexander Neville Hood** | **alex@towardsjustice.org** |
| **Alyssa Lauren Levy** | **alevy@shermanhoward.com** |
| **Bogdan Enica** | **bogdane@hotmail.com** |
| **Brett Michelle Mull** | **mull@wtotrial.com** |
| **Brian Alan Birenbach** | **brian@rietzlawfirm.com** |
| **Brooke A. Colaizzi** | **BColaizzi@shermanhoward.com** |
| **Byron Pacheco** | **bpacheco@bsfllp.com** |
| **Chanda Marie Feldkamp** | **cfeldkamp@kellywalkerlaw.com** |
| **David Meschke** | **dmeschke@bhfs.com** |
| **Dawn Smalls** | **DSmalls@BSFLLP.com** |
| **Diane Rebecca Hazel** | **dhazel@lrrc.com** |
| **Eric Jonathan Stock** | **estock@gibsondunn.com** |
| **Harvey J. Wolkoff** | **harvey.wolkoff@ropesgray.com** |
| **Heather Fox Vickles** | **hvickles@shermanhoward.com** |
| **James Edward Hartley** | **jhartley@hollandhart.com** |
| **James Michael Lyons** | **jlyons@lrrc.com** |
| **Jennifer Arnett Roehrich** | **jarnett-roehrich@grsm.com** |
| **Jessica Lynn Fuller** | **jfuller@lrrc.com** |

| | |
|---|---|
| Joan A. Lukey | joan.lukey@choate.com |
| Jonathan S. Bender | jsbender@hollandhart.com |
| Joseph B. Cartafalsa | joseph.cartafalsa@ogletreedeakins.com |
| Joseph H. Hunt | jhunt@shermanhoward.com |
| Joshua James Libling | jlibling@bsfllp.com |
| Juan Pablo Valdivieso | jvaldivieso@bsfllp.com |
| Justin J. Wolosz | jwolosz@choate.com |
| Kathleen E. Craigmile | kcraigmile@nixonshefrin.com |
| Kathryn A. Reilly | reilly@wtotrial.com |
| Kevin Patrick O'Keefe | kokeefe@choate.com |
| Lawrence Daniel Stone | lstone@nixonshefrin.com |
| Lyndsey Marie Kruzer | lkruzer@choate.com |
| Martha Louise Fitzgerald | mfitzgerald@bhfs.com |
| Martin Jose Estevao | mestevao@armstrongteasdale.com |
| Matthew Lane Schwartz | mlschwartz@bsfllp.com |
| Meshach Yustine Rhoades | mrhoades@armstrongteasdale.com |
| Michael T. Gass | mgass@choate.com |
| Natalie Elizabeth West | west@wtotrial.com |
| Nathan Andrew Huey | nhuey@gordonrees.com |
| Peggy E. Kozal | pkozal@gordonrees.com |
| Peter Murray Skinner | pskinner@bsfllp.com |
| Randall Wade Jackson | rjackson@bsfllp.com |

| | |
|---|---|
| **Raymond Myles Deeny** | rdeeny@shermanhoward.com |
| **Robert M. Buchanan, Jr** | rbuchanan@choate.com |
| **Sabria Alexandria McElroy** | smcelroy@bsfllp.com |
| **Samuel Newland Rudman** | srudman@choate.com |
| **Sean Phillips Rodriguez** | srodriguez@bsfllp.com |
| **Sigrid Stone McCawley** | smccawley@bsfllp.com |
| **Susan M. Schaecher** | sschaecher@fisherphillips.com |
| **Susan Penniman Klopman** | sklopman@hklawllc.com |
| **Thomas Baker Quinn** | tquinn@gordonrees.com |
| **Vance Orlando Knapp** | vknapp@armstrongteasdale.com |
| **William James Kelly, III** | wkelly@kellywalkerlaw.com |

/s/ *Robert M. Tucker*
Robert M. Tucker