IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

    Defendants.

### GO AU PAIR'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY PLAINTIFFS' FLSA COLLECTIVE ACTION

Defendants American Cultural Exchange, LLC d/b/a Go Au Pair and Go Au Pair Operations LLC (together, "Go Au Pair") submit this reply in support of their Motion to Decertify Plaintiffs' FLSA Collective Action ("Motion" or "Mot.") [ECF 1072] and in response to Plaintiffs' Consolidated Opposition to Defendants' Motions to Decertify the FLSA Classes ("Opposition" or "Opp.") [ECF 1093].

### **INTRODUCTION**

Plaintiffs' Opposition rests on a fatally flawed premise: that they can prove their FLSA claims by showing a violation of the regulations governing the United States Au Pair Program ("Au Pair Program"), specifically 22 C.F.R. § 62.31(j) (the "Stipend Regulation"). But Plaintiffs cannot borrow from the Stipend Regulation to supply a class-wide 45-hour benchmark for lawful compensation. They must, instead, prove they were improperly compensated for time they actually worked, as required by the FLSA. Given their disparate employment settings, this cannot be done with common proof.

Further, the Court's earlier certification of the state wage-and-hour subclasses

under Federal Rule of Civil Procedure 23 does not relieve Plaintiffs of their evidentiary burden. Unlike their Rule 23 burden, Plaintiffs must now prove they are in fact similarly situated, based on a full evidentiary record. Their failure to do this warrants decertification.

## ARGUMENT

### I. CERTIFICATION OF THE RULE 23 CLASSES IS NOT DISPOSITIVE

The Court's certification of state wage-and-hour classes under Rule 23 does not justify denial of the Motion. Courts routinely reassess and decertify FLSA collective actions despite earlier certification of similar Rule 23 classes when discovery reveals material differences among class members. *See Blair v. TransAm Trucking, Inc.*, 2018 WL 1523101, at *27 (D. Kan. Mar. 28, 2018); *Weil v. Metal Techs., Inc.*, 260 F. Supp. 3d 1002, 1020 (S.D. Ind. 2017). That is the case here. The Court relied on Plaintiffs' allegations—specifically "that host families did not have any discretion over au pairs' compensation"—in concluding there was sufficient "uniformity of employment practices" to certify the state wage-and-hour classes. (ECF 828 at 30 (emphasis by court).) But now, the Court must consider the evidence, which shows that host families' individual practices have a material impact on whether au pairs' compensation violated the FLSA.

### II. PLAINTIFFS' WAGE AND HOUR CLAIMS REQUIRE PROOF OF AN FLSA VIOLATION, NOT A VIOLATION OF THE STIPEND REGULATION

Plaintiffs theorize a common injury that stems not from a violation of the FSLA itself, but from a purported violation of the Stipend Regulation. In characterizing the "FLSA violations at issue," Plaintiffs argue they received "far below the weekly wage that would result from applying the [FLSA's] minimum wage" and overtime mandates to the 45-hour benchmark specified in the Stipend Regulation. (Pls.' Opp. 24.) They do

2

not, however, identify a common injury resulting from Plaintiffs receiving less pay than the FLSA requires for the hours of work they actually performed.

Plaintiffs cannot prove a violation of the FLSA—which guarantees minimum pay only for time actually worked—by borrowing from the Stipend Regulation—a separate, unrelated regulation without a private right of action.[1] Instead, their claims must rise or fall based on the mandates of the FLSA alone. *See Chavez v. City of Albuquerque*, 630 F.3d 1300, 1310 (10th Cir. 2011) (rejecting argument that "the FLSA should incorporate the [contract's] definition of hours worked" because "[c]ontractual overtime and FLSA overtime are not the same things"); *Cabrera v. Town of Lady Lake, Fla.*, 2013 WL 12092573, at *13 (M.D. Fla. Mar. 28, 2013) (the FLSA requires only that "employee[s] be paid at least the minimum wage for all hours worked, and . . . overtime pay for each hour" above the 40-hour statutory maximum). Thus, "[t]he amount of money an employee should receive" under the FLSA, and whether his or her pay complies with that statute, "cannot be determined without knowing the number of hours worked." 29 C.F.R. § 785.1.

Agency guidance and case law reinforce this basic precept. The Labor Department has advised—specifically in regards to the Au Pair Program—that "[t]he FLSA only requires payment of the minimum wage for hours actually worked." U.S. Dep't of Labor, Wage & Hour Div., Opinion Ltr. (Aug. 19, 1997), 1997 WL 998029, at *2 (emphasis

---

[1] The Mutual Educational and Cultural Exchange Act does not provide a private right of action; thus, any right conferred solely by the Stipend Regulation is not enforceable through private litigation. *See, e.g.*, *Cuba Soil & Water Conservation Dist. v. Lewis*, 527 F.3d 1061, 1064 (10th Cir. 2008) ("Absent Congressional intent to create both a right and a remedy in favor of a plaintiff, a cause of action does not exist. . . . And we are not authorized to create a cause of action, no matter how desirable that might be as a policy matter or how compatible with the statute." (internal quotation marks omitted)).

added). Thus, there is no minimum-wage violation if an employee's total pay, averaged over the hours actually worked, exceeds the minimum wage. Similarly, "[t]he FLSA does not provide a right to overtime until an employee has first worked forty hours." *Chavez*, 630 F.3d at 1311.[2] Thus, the FLSA's overtime mandate is not implicated when an employee works less than the 40-hour statutory threshold, "regardless of whether the employee is compensated as though he or she did work" over 40 hours. *Id.* at 1310.

### III.  PLAINTIFFS ARE NOT SIMILARLY SITUATED

#### A.  Plaintiffs' Disparate Employment Settings Are Legally Relevant

Plaintiffs argue they are similarly situated irrespective of their disparate employment settings because they were subject to the same stipend and hours policies. (Opp. 19-23.) Courts, however, have repeatedly held that employees are not similarly situated, despite being subject to a uniform policy that allegedly violates the FLSA, when each plaintiff's right to recover under that statute nonetheless turns on his or her individual circumstances. *See, e.g.*, *Creely v. HCR Manorcare, Inc.*, 920 F. Supp. 2d 846, 857 (N.D. Ohio 2013) (decertifying FLSA class "[d]espite the fact that defendant's auto-deduct policy applied to all Plaintiffs" because "Plaintiffs' right to compensation hinges on their individual experiences").[3]

That is precisely the case here. To prove a FLSA violation, Plaintiffs must show they were improperly compensated under that statute for time they actually worked.

---

[2] *Accord* 29 C.F.R. § 778.102 ("If no more than [40 hours] are actually worked in the workweek, overtime compensation pursuant to section 7(a) need not be paid.").

[3] *See Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-cv-04175, 2013 WL 12153518, at *11 (W.D. Mo. July 8, 2013); *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2011 WL 2009967, at *7 (W.D. Wis. May 23, 2011), *aff'd*, 705 F.3d 770 (7th Cir. 2013).

(*See* Argument § II, *supra*.) Thus, here, FLSA liability turns not on the existence of the alleged policy (i.e., whether Go Au Pair advised host families to pay a minimum weekly stipend of $195.75 for up to 45 hours of work), but on whether that alleged policy resulted in host families' failure to pay minimum wage or overtime for all compensable time their au pairs actually worked. Here, material differences in Plaintiffs' employment settings—all of which are undisputed—preclude any common answer to this question. Consequently, the alleged policy on which Plaintiffs rest their FLSA claims "cannot serve as the lone point of similarity supporting class certification." *Frye v. Baptist Mem. Hosp., Inc.*, 495 F. App'x 669, 673 (6th Cir. 2012) (affirming decertification of FLSA collective action). Instead, the Court must make individualized findings regarding Plaintiffs' actual pay and the hours they actually worked.

    1.    <u>Hours</u>

Plaintiffs do not dispute the obvious difficulty in determining the number of hours each Plaintiff actually worked, or that such a determination is inherently individualized.[4] Instead, they try to avoid the consequence of this admitted circumstance with a series of misguided arguments that are nothing more than red herrings.

*First*, Plaintiffs cannot use the Stipend Regulation (or "Defendants' policies" or contracts) to define "hours worked." (*See* Opp. 24, 30). Compensable time under the Stipend Regulation, or Go Au Pair's policies or contracts, is not controlling as to the amount of time compensable <u>under the FLSA</u>. The Tenth Circuit already rejected the

---

[4] This determination is made even more difficult by the uncontested fact that Plaintiffs performed varying duties for hundreds of different host families. (*See* Mot. 5-8; Opp. 23 n.16 (acknowledging that "[d]uties may be relevant to calculating hours worked").)

contrary claim, concluding that a contractual definition of "hours worked" cannot override the "overtime threshold . . . defined in the [FLSA] itself." *Chavez*, 630 F.3d at 1310-11.

*Second*, that Plaintiffs were paid on a weekly basis does not render their actual hours irrelevant. (*See* Opp. 28-29.) FLSA compliance is measured "in terms of hours and hourly rates," regardless of how employees are paid. *United States v. Rosenwasser*, 323 U.S. 360, 364 (1945).[5] Thus, calculating the hourly rate is how courts "test[] compliance with the FLSA, even for [employers] who do not pay their employees on an hourly basis." *Taylor v. McLane Foodservice, Inc.*, 2013 WL 943531, at *7 (D. Kan. Mar. 11, 2013.[6] Even Plaintiffs concede their claims are "based on having been paid an unlawful hourly rate." (Pls.' MSJ Reply 9, ECF 985.) Here, calculating that hourly rate requires an individualized inquiry that accounts for hours actually worked. (Mot. 11-13.)

And, *third*, Plaintiffs' reliance on 29 C.F.R. § 785.23 is unavailing (Opp. 29), both on its merits and as a means of avoiding individualized inquiries. There is no common "agreement" that satisfies § 785.23, as it defies logic to use a generic agreement to work "up to" 45 hours in place of the more specific, individualized contracts each opt-in signed with his or her host family. (*See* GAP MSJ Resp. 19, ECF 933; GAP MSJ Sur-Reply 10, ECF 1065.) Further, the reasonableness of any agreement under § 785.23 is itself an individualized inquiry that must account for "all . . . pertinent facts," 29 C.F.R. § 785.23,

---

[5] *See also* 29 C.F.R. § 776.5 ("[W]hatever the basis on which the workers are paid, whether it be monthly, weekly or on a piecework basis, they must receive at least the equivalent of the minimum hourly rate." (emphasis added)).

[6] *Accord Espenscheid*, 705 F.3d at 774 (hourly rate was proper measure for compliance with FLSA when employees were paid on a piece-rate basis); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986) (no FLSA violation because pay exceeded minimum wage "when translated into an hourly rate for all hours worked").

including the non-monetary benefits derived from and the "nuanced circumstances" of the employment relationship. *Brock v. City of Cincinnati*, 236 F.3d 793, 806 (6th Cir. 2001); *accord Myers v. Baltimore Cty., Md.*, 50 F. App'x 583, 589 (4th Cir. 2002). Here, that requires consideration of the individual agreements each opt-in signed with his or her host family, which more accurately identify the hours the au pair was expected to work, as well as the unique circumstances of their individual employment settings.[7]

### 2. Compensation

Plaintiffs argue that "minor" variation in their stipends is immaterial because most of them were paid "close" to $195.75 per week. (Opp. 32-34.) Plaintiffs miss the point. Because each Plaintiff's compensation is relevant to determining his or her hourly rate—as required to test compliance with the FLSA and, thus, Go Au Pair's liability— even slight differences in the amount of compensation necessitate individual inquiries.[8] And the burden of that inquiry is magnified when coupled with the undisputed variation in, and difficulty of determining, the number of hours each Plaintiff worked. (Mot. 6-8,

---

[7] The actual hours each au pair worked is also relevant to this inquiry, as an agreement under § 785.23 may be unreasonable if evidence shows that the contractually-specified amount of time was an unfair estimate of time needed to complete assigned tasks. *See, e.g., Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 200-01 (4th Cir. 2005). Plaintiffs' assertion that a 45-hour benchmark is reasonable as to all au pairs fails to account for this case law, as well as evidence that Plaintiffs worked both far less than and in excess of 45 hours per week. (*See* Mot. 4 n.4, 6-8.) Thus, a blanket finding of reasonableness would be unfair to both Plaintiffs and Go Au Pair, as it would (1) preclude individual opt-ins from proving the agreement is unreasonable—and, thus, unenforceable—as to them because they were required to work more than 45 hours per week (thereby preventing recovery of any compensation for that time) and (2) prevent Go Au Pair from raising an individualized defense of unreasonableness as to opt-ins who worked far less than 45 hours per week.

[8] This variation "presents a barrier to establishing liability in the first instance," *Nobles*, 2013 WL 12153518, at *8, not simply a damages issue as Plaintiffs insist (Opp. 34).

11-12.) Thus, that most Plaintiffs report being paid a stipend of $195.75 to $200 per week does not simplify adjudication of Plaintiffs' FLSA claims.

### B. Individualized Defenses Further Warrant Decertification

#### 1. Challenging liability

Continued certification of a collective action is improper in the face of "wide-ranging diversity along key [liability] criteria," as defendants should not be required to "pick the class apart, plaintiff by plaintiff" in order to defend against a collective claim. *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 586 (E.D. La. 2008). But that is what Go Au Pair would be required to do here should this case proceed as a collective action, as the absence of complete, accurate documentary evidence of Plaintiffs' weekly hours necessitates individual evidentiary hearings and factual findings on that predicate issue. (Mot. 11-13; Argument § II, *supra*.) Thus, because the hours Plaintiffs worked must be established individually—Plaintiffs offer no "representative" evidence on this—"there is no fair way to proceed as a class action without either denying [Go Au Pair] the opportunity" to challenge liability as to each Plaintiff "or forcing [it] to prepare for and present a multitude of trials simultaneously." *Nobles*, 2013 WL 12153518, at *11.

Plaintiffs' invocation of the burden-shifting framework of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), to avoid this hurdle is unavailing. (Opp. 41.) While *Anderson* relaxes the evidentiary burden for proving the amount of damages, it does not relieve Plaintiffs of showing they are similarly situated or relax their initial burden of proving an FLSA violation has occurred. *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013); *Frye*, 495 F. App'x at 672. Thus, the

8

lack of accurate time-keeping records (even if attributable to Go Au Pair) "does not excuse [Plaintiffs] from having to establish the amount of . . . time" they worked, as such facts are essential to proving an FLSA violation. *Espenscheid*, 705 F.3d at 775.

        2.      <u>Room and board credit</u>

Plaintiffs argue that the propriety of the so-called room-and-board "deduction" does not create an individualized defense because (1) the issue has purportedly been decided as a matter of law and (2) Plaintiffs' individual circumstances are irrelevant to answering that question. (Opp. 46-48.) Plaintiffs are wrong on both counts.

First, in denying Defendants' motions to dismiss, the Court did not hold that the cost of room and board may not be credited against minimum wage as a matter of law. Rather, Magistrate Judge Tafoya determined that "[t]his court cannot conclude that Plaintiffs have failed to state a viable claim" based on the categorical propriety of that credit, while also acknowledging that "it may well be ultimately resolved" that such a credit may be taken against au pairs' compensation. (ECF 240 at 26.) In adopting this conclusion, this Court held only that "Judge Tafoya did not err in determining that Plaintiffs have stated a plausible claim that the Sponsors' unlawfully deducted the cost of room and board from their wages." (ECF 258 at 26-27.) Because the test for applying such a credit calls for a fact-based inquiry concerning the circumstances of employment, it is appropriate to revisit this issue in light of discovery. *See, e.g., Roces v. Reno Hous. Auth.*, 300 F. Supp. 3d 1172, 1183-91 (D. Nev. 2018) (examining evidence).

Second, the individual circumstances of each Plaintiff, including their reasons for participating in the Au Pair Program, are relevant to this inquiry under the Labor

9

Department's test. (*See* Mot. 10.) If, as evidence indicates, some Plaintiffs chose to participate in the Au Pair Program <u>because</u> they wanted to live with an American host family (*id.*), it cannot be said that provision of room and board was not "a benefit running primarily to the employee." *See Roces*, 300 F.3d at 1189-90 (although living on-site was condition of employment, provision of housing primarily benefited employee when "free housing was the main attraction in accepting" the job).

### 3. Statute of limitations

Plaintiffs' theory of equitable tolling belies their claim that it applies here as an all or nothing prospect. Plaintiffs advance a theory of active deception, arguing that every pre-2013 au pair was misled by Go Au Pair's alleged misrepresentations about the stipend. But whether an au pair was deceived for purposes of equitable tolling, meaning he or she was "lulled into inaction" or otherwise "prevented from asserting his or her rights," is itself an individualized inquiry. *See United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001). Thus, equitable tolling does not rest solely on whether Go Au Pair made the alleged misrepresentations, but on their impact in delaying Plaintiffs' assertion of their rights. *See Aly v. Butts Cty., Ga.*, 841 F. Supp. 1199, 1202 (M.D. Ga. 1994). Plaintiffs cite no authority finding otherwise.[9]

### **CONCLUSION**

For these reasons, Go Au Pair requests that the Court grant its Motion.

---

[9] None of the cases Plaintiffs cite involved a classwide tolling claim premised on fraud. At most, those cases held that limited tolling on a collective basis was appropriate to ensure that opt-ins had enough time to receive notice of the action and file their consent to join. (*See* Opp. 44 (citing cases).)

Dated: July 11, 2018.                    Respectfully submitted,


                                              *s/ Kathryn A. Reilly*
Kathryn A. Reilly
Brett M. Mull
V. William Scarpato III
Natalie West
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:  Reilly@wtotrial.com
        Mull@wtotrial.com
        Scarpato@wtotrial.com
        West@wtotrial.com

Attorneys for Defendants Agent Au Pair, Inc., American Cultural Exchange, LLC d/b/a Go Au Pair, Go Au Pair Operations LLC, and Au Pair International Inc.


## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on July 11, 2018, I electronically filed the foregoing GO AU PAIR'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY PLAINTIFFS' FLSA COLLECTIVE ACTION with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


                                              *s/ Claudia Jones*