IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.

    Plaintiffs,

v.

INTEREXCHANGE, INC., et al.

    Defendants.

_____

**DEFENDANT EXPERT AUPAIR'S REPLY IN FURTHER SUPPORT OF MOTION TO DECERTIFY PLAINTIFFS' FLSA COLLECTIVE ACTION**
_____

Defendant Expert Group International, Inc. d/b/a Expert AuPair ("Expert AuPair"), hereby submits this Reply in support of its Motion to Decertify Plaintiffs' FLSA Collective Action (ECF No.1076). As grounds therefore, Expert AuPair state:

**INTRODUCTION**

In their opposition to Expert AuPair's Motion to Decertify Plaintiffs' FLSA Collective Action, Plaintiffs fail to refute the arguments showing that the FLSA class should be decertified. The provisionally certified class against Expert AuPair has 27 individual au pairs that are not "similarly situated" when it comes to their "employment". As discovery showed, the circumstances were different for each individual au pair and her/his host family, the employment conditions were different, and the host families, without Expert AuPair's approval or knowledge, took all the decisions regarding au pair's employment. Almost all opt-in plaintiffs

1

deposed, which Plaintiffs considered being a sufficient sample (*See* ECF No. 1050), testified that their host family set the duties and hours of work, without following Expert AuPair's procedures, and without informing Expert AuPair of the actual number of hours worked or the actual tasks performed by their au pair. *See* testimony excerpts in Expert AuPair's Motion Decertify Plaintiffs' FLSA Collective Action ("Motion").

## LEGAL STANDARD

It is the Plaintiffs' burden to show that their claim should proceed collectively and that the au pairs are "similarly situated." 29 U.S.C. § 216(b). *See Bayles v. Am. Med. Response*, 950 F. Supp 1053, 1067 (D.Colo. 1996). See also *Reab. V. Elec. Arts, Inc*. 214 F.R.D. 623, 627 (D.Colo. 2002), *Comer v. Wal-Mart Stores, Inc.,* 454 F. 3d 544 (6th Cir. 2006). At the decertification stage, by analyzing the factors in *Thiessen*, the court should determine if the individuals who opted in are similarly situated for the purpose of class certification. *Thiessen v. GE Capital Corp*., 267 F.3d 1095, 1102 (10th Cir. 2001). Unlike the Rule 23 class certification process, the FLSA certification should take into account all the evidence developed through discovery. *See Daugherty v. Encana Oil & Gas (USA) Inc*. 838 F. Supp 2d 1127, 1132-33 (D.Colo. 2011).

Whether or not Expert AuPair is the au pairs' employer is a question of fact to be determined by the jury (*See* Order Denying Motions For Summary Judgment, ECF No. 1102).

## ARGUMENT

The factual record is clear, however, in their Consolidated Opposition to

2

Defendants' Motions to Decertify the FLSA Classes ("Opposition") the Plaintiffs decide to ignore or mischaracterize the facts while arguing that the FLSA Classes should remain certified. For the reasons stated in the Motion and the reasons below, the FLSA Classes should be decertified.

The Plaintiffs filed a Consolidated 54-page Opposition while discussing facts specific to Expert AuPair only in seven paragraphs and three footnotes. The rest of the facts addressed in the Opposition concern other defendants in this lawsuit and are not attributable to Expert AuPair[1]. In the few instances Expert AuPair is mentioned, the Plaintiffs claim that Expert AuPair "places its au pairs," that Expert AuPair was somehow informed of the tasks the au pairs were performing, and that Expert AuPair's au pairs reported wages between $195.75 and $225. All these facts are inaccurate.

### A. DIFFERENCES IN AU PAIR'S WORK WARRANT DECERTIFICATION

The Plaintiffs argue that au pairs in each FLSA class were subject to identical policies regarding their wages and hours. The evidence shows exactly the opposite: each host family set individual schedules, assigned different tasks, and, most of the time, disregarded any instructions received from Expert AuPair. If a uniform set of policies exists, such policies are mere reiterations of the Department of State (DOS) regulations. Even so, as deposition testimony shows, the host families did not follow the guidance provided by Expert AuPair or DOS. More than half of the au pairs providing discovery testified that they did not abide

---

[1] Plaintiffs also misstate facts attributable to Expert AuPair: "*Go Au Pair claims that the fact of "different locations through the United States" means its class is too disparate. Expert AuPair Mot. at. 4.*" Opposition at 21. Expert AuPair did not mention Go Au Pair in its Motion.

3

by the contract signed with their host family.

Nicole Mapledoram is not similarly situated with the opt-ins. The Plaintiffs are using a Declaration signed by Mapledoram which proved to be inaccurate. During her testimony, Mapledoram provided testimony that directly contradicted the Declaration. For example, Plaintiffs are ignoring the evidence in the record regarding training. They are stating that "Ms. Mapledoram also testified that she participated in a five-day training covering the duties she would be expected to perform as an *au pair*." Opposition at 11. During her deposition, Ms. Mapledoram testified that she landed in Florida on Monday at 4:30 PM and departed for Colorado on Saturday, early morning; therefore she participating in training for four days, not five days. The discrepancy counts for 20% of the number of days the Plaintiffs claim that Mapledoram attended training. Also, Ms. Mapledoram could not remember much about what was covered at training; she mostly remembered a firefighter talking about cardio-pulmonary resuscitation (aka CPR). Ms. Mapledoram did not enter the U.S. as a nurse or paramedic and CPR is definitely not a duty that she is required to perform while an au pair. CPR knowledge is required, as the au pairs are required to take care of children. As Ms. Mapledoram did not poses such knowledge, Expert AuPair hired a third-party contractor to provide the necessary training. Mapledoram Depo.[2] p.90-94.

**I. The number of hours worked varied between au pairs.**

As showed in Expert AuPair's Motion, the au pairs that were deposed claimed that they worked: 30, 45, 47.5, 55, 65 and 168 hours per week. In their

---

[2] Mapledoram Depo. was filed as Exhibit 8 to the Opposition.

Opposition, the Plaintiffs chose to ignore the discrepancies by selecting the evidence to boost their position and conveniently ignoring the evidence not favoring their argument. While categorizing one of the au pairs as an "outlier" they are also dismissing the information contained in the agreements in Expert AuPair's possession. With such amazing discrepancies, no sound argument was made on how to get to a common number of ours worked among the class members.

As the number of hours worked is an individualized inquiry, the Plaintiffs failed to demonstrate that the Court should ignore the numbers of hours actually worked by each au pair and the obvious dissimilarities. *See also Espinoza v. County of Fresno*, 290 F.R.D. 494, 501 (E.D. Cal. 2013).

While the Plaintiffs admit that working more than 45 hours per week is contrary to the Department of State Regulations governing the J-1 visa for au pairs. 22 C.F.R. 62.31(c)(2). (*see* Opposition at FN 19) they don't address the fact that the FLSA opt-ins requested to work an increased number of hours, addressing this request directly to heir host families. "Once I asked, but I asked for extra hours, because I send money back home every month, so I thought more would be better." Ex.1 92:10-12[3]. "So they [the Host Family] asked me if I'm okay to work extra, but that they would pay me extra, but when I realized -- I agreed." See also Ex. 4 30:7-34.

## II.  The stipend received varied among au pairs

The Plaintiffs fail to address in their Opposition the variances in the

---

[3] The Exhibit numbers cited in this Reply refer to the exhibits filed with the Motion (ECF No.1076).

amount paid to au pairs on a weekly basis. As specified in the Motion, the amount varied between $180 and $225 (a 25% variation) without even considering additional amounts received "for babysitting." If we consider $8 to $10 per hour for babysitting, twice a week (see Ex. 7 44:11-12) we are looking at a variation of more than 50% among the amounts received by the members of the conditionally certified class. And there is no reason not to add the amounts received by the au pair for babysitting while the Plaintiffs are obviously adding the hours worked by au pairs for the same or a similar purpose.

### *B. INDIVIDUALIZED DEFENSES POINT TO DECERTIFICATION*

As stated in the Motion, Expert AuPair did not "place its au pairs." There is no question about the fact that Expert AuPair sponsored the au pairs in the conditionally certified class, most of which found host families by themselves, prior to even contacting Expert AuPair. In fact, Nicole Mapledoram ("Mapledoram"), the named plaintiff, was not recruited nor placed by Expert AuPair. As the Plaintiffs are citing in their own Opposition, "she testified that she did not choose a sponsor agency based on the wage amount". Opposition at 10. Indeed, Mapledoram actually testified that she matched with her host family prior to contacting any sponsor. Mapledoram Depo. 74:20-23. She changed host families afterwards, after she found another host family, again, without being "placed" by Expert AuPair. "I had already pre-matched and found my new host family." Mapledoram Depo. 150:2-3. She actually found her host family through a friend and negotiated her conditions of employment prior to even informing Expert AuPair about it. Mapledoram Depo. 130:13-24, 251:2-8.

6

As discovery showed, most of the FLSA class members found host families by themselves and approach Expert AuPair afterwards in order to be able to enter and work in the United States with a J-1[4].

Some other au pairs applied to Expert AuPair and afterwards were matched with a host family. *See* Lubnevska Depo. 55:1-11. There is no common denominator between the two clearly distinct categories.

Out of the 7 opt-in plaintiffs deposed by Expert AuPair, one testified that she was an au pair in a family with no children. The Plaintiffs admit the fact that the au pair, together with her host family, decided to circumvent the DOS Regulations and set up a work schedule of more than 45 hours per week. Such a departure from the program's rules represented a breach of both their contracts with Expert AuPair, was contrary to the Expert AuPair guidelines, violated the program regulations, and it was done without informing EAP[5]. While admitting that the Plaintiff violated the DOS regulations and the conditions of her visa, the Plaintiffs go as far as calling her an "extreme outlier."  But this au pair is one of the "extreme outliers" that Plaintiffs are citing in their motions, while trying to prove that the au pairs worked at least 45 hours. We cannot ignore is the fact that both au pair and her host family failed to inform Expert AuPair of their "side agreement." They both signed a "staged" agreement that they filed with EAP in

---

[4] See the example on the Motion as well as Courtney Flynn: A. I met with my family and then my family found Expert AuPair. Q. So your host family found Expert AuPair? A. Yes. Flynn Depo. 14:16-20

[5] Of note, the au pair in question is a British national, having English as mother tongue and found her host family by herself, without Expert AuPair's involvement. After finding the family, she approached Expert AuPair in order to adjust her J-1 immigration status.

order to ripe the benefits of the J-1 visa while having a separate agreement among themselves and circumventing the sponsor's policies and the DOS regulations. And this is not a unique case. In fact, in one form or another, the majority of the au pairs deposed testified that they made separate agreements with their host families, that they did not follow Expert AuPair's guidelines, and they never informed the sponsor about these side agreements.

The Plaintiffs also fail to address the additional tasks performed by au pairs. As mentioned in Expert AuPair's Motion, such tasks varied greatly from plaintiff to plaintiff, covering not only childcare, but, against Expert AuPair's policies, housekeeping, car fixing, driving, party planning, food shopping, furniture shopping, etc.

While Expert AuPair was only able to conduct discovery on a relatively small percentage of the class members, individualized inquiry is necessary in order to determine the actual schedules, the duties performed and the amounts received by each one of the conditionally certified class members.

### B. DEFENSES AVAILABLE IN EACH INDIVIDUAL CASE

Expert AuPair was able to take limited discovery regarding the class. In their Opposition the Plaintiffs claim: "out of ten placements eight resulted in a wage between $195.75 and $200. The remaining two opt-ins testified that they were paid $220 and $225." Plaintiffs conveniently fail to consider testimony evidence of amounts received in excess of the weekly stipend. For example Courtney Flynn was paid "$8 - $10/hour extra" for babysitting every other the weekend. Ex. 7 44:21-22. Based on her testimony, every other week, Courtney

Flynn would receive approximately $200 + ($9.00 x 8hours x 2days) = $344/week.

Also, as discovery revealed, some of the opt-in plaintiffs did not work more than 40 hours/week. As showed in our Motion, Erick Kovolos, for example, worked 37 hours a week and, therefore, cannot invoke the overtime provision of the FLSA.

Even if we would presume that au pairs have a generic job description and ignore the obvious differences between the opt-in plaintiffs, it is still not sufficient to allow for this action to proceed collectively, as long as Expert AuPair's defenses are individualized.

## CONCLUSION

For the reasons stated above and in the Motion to Decertify Plaintiffs' FLSA Collective Action, Expert AuPair respectfully requests that the Court determine that collective treatment is inappropriate and decertify the FLSA class asserted against Expert AuPair.

Dated this 11th day of July 2018.

        Respectfully submitted,

        *s/Bogdan Enica*
        Bogdan Enica, Esq.
        111 Second Avenue NE, Suite 204
        St Petersburg, FL 33701
        Phone:  727-388-3472
        bogdane@hotmail.com
        ATTORNEY FOR DEFENDANT EXPERT GROUP INTERNATIONAL INC. D/B/A EXPERT AUPAIR

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2018, I electronically filed the foregoing *Defendant Expert AuPair's Reply In Further Support Of Motion To Decertify Plaintiffs' FLSA Collective Action* with the Clerk of Court using the CM/ECF system which sends notification of such filing to all counsel of record.

s/Bogdan Enica
Bogdan Enica, Esq.
