IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINE AZUELA RASCON,
CAMILA GABRIELA PEREZ REYES,
CATHY CARAMELO,
LINDA ELIZABETH, and
Those similarly situated,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., *d/b/a* Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., *d/b/a* Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, *d/b/a/* Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, *d/b/a* Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, *d/b/a* GoAuPair,
AGENT AU PAIR,
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC, *d/b/a* ProAuPair,
20/20 CARE EXCHANGE, INC., *d/b/a* The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE*, d/b/a* GoAuPair, and
GOAUPAIR OPERATIONS, LLC, *d/b/a* GoAuPair,

    Defendants.

**ORDER GRANTING PLAINTIFFS' MOTION TO CLARIFY THE ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND, UPON RECONSIDERATION, GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Plaintiffs' Motion to Clarify the Order Denying Motions for Summary Judgment, in which Plaintiffs request that the Court resolve tension between the Court's Order Denying Motions for Summary Judgment (Doc. # 1102) and its previous orders, with regard to Defendants' preemption defense. (Doc. # 1118.)

## I. BACKGROUND AND PROCEDURAL HISTORY

The factual and procedural background of this case has been comprehensively detailed in the Court's previous orders and the Magistrate Judge's recommendations. *See, e.g.*, (Doc. ## 240, 569, 828.) Additional information is included here only to the extent necessary to address Plaintiffs' Motion to Clarify.

### A. INITIAL ARGUMENTS REGARDING PREEMPTION

Various Defendants first raised preemption as an affirmative defense to Plaintiffs' state law wage claims in their Motions to Dismiss. *E.g.*, (Doc. # 127 at 12–17; Doc. # 130 at 8–12; Doc. # 131 at 5; Doc. # 136 at 4–6.) For example, Defendant Cultural Care, Inc. ("Cultural Care"), argued that Plaintiffs' "state-law wage claims in Counts IX and X are preempted by the Exchange Act and the [Department of State ("DOS")] regulations because the DOS regulations encompass the subject matter of Plaintiffs' claims as well as every other facet of the *au pair* program. Thus, the U.S. government

occupies the 'field.'" (Doc. # 127 at 12–13.) It also asserted that "[t]he application of state law minimum wages to the exchange program would . . . directly conflict with the DOS regulations and the Stipend Notice." (*Id.* at 13.)

Shortly after filing Motions to Dismiss, several Defendants filed Motions for a Protective Order, seeking a stay of discovery pending resolution of their Motions to Dismiss. *E.g.*, (Doc. ## 160, 162, 164, 166.) Defendants reasoned that their arguments in their Motions to Dismiss, including their argument that Plaintiffs' state law wage claims "are preempted by federal law," were "based on threshold **legal issues**" that could be resolved on the briefings alone, (Doc. # 160 at 9–10, 12) (emphasis added); *see also* (Doc. # 164 at 10), and that a stay of discovery would not prejudice Plaintiffs (Doc. # 160 at 12). Magistrate Judge Tafoya conducted a scheduling conference on July 6, 2015, to address Defendants' Motions for a Protective Order, at which counsel for Defendant Cultural Care reiterated that it sought dismissal based on its legal defenses, including preemption. (Doc. # 218 at 20.) Magistrate Judge Tafoya granted Defendants' Motions for a Protective Order, thereby staying discovery "pending the issuance of a recommendation on Defendants' Motions to Dismiss." (Doc. # 198 at 2.)

Magistrate Judge Tafoya issued her Recommendation on February 22, 2016, advising this Court to largely deny the Motions to Dismiss.[1] (Doc. # 240 at 43.) Relevant here, Magistrate Judge Tafoya rejected Defendants' argument that any state law wage claims are preempted by DOS regulations. (*Id.* at 28–32.) She first

---

[1] Magistrate Judge Tafoya recommended that various Defendants' Motions to Dismiss should be granted in part as to Plaintiffs' claim under the Utah Minimum Wage Act and their claim for breach of contract. (Doc. # 240 at 43.)

3

addressed Defendants "fragmented argument that begins with the premise that the *au pair* program falls under immigration law," dismissing Defendants' reliance on *Arizona v. United States*, 567 U.S. 387 (2012), as irrelevant because the state laws "at issue herein do not pertain to immigration." (Doc. # 240 at 29.) Rather, the *au pair* program is a "cultural exchange" outside of Immigration and Naturalization Services' authority, she explained. (*Id.*)

Magistrate Judge Tafoya then determined that "the federal laws and regulations unambiguously contemplate the application of state wage laws to *au pairs*." (*Id.* at 29–32.) She wrote, "[F]ederal regulations are explicitly clear that the [Fair Labor Standards Act (the "FLSA")] applies to the *au pair* program," citing 29 C.F.R. § 62.31(j)(1), which requires that *au pairs* be paid in conformance with the FLSA.[2] (Doc. # 240 at 30.) She also cited the Wilberforce Pamphlet on the Rights and Protections for Temporary Workers, which sponsoring organizations are required to distribute to *au pairs*, *see* 22 C.F.R. § 62.10(c)(8); this pamphlet advises holders of J-1 visas, such as *au pairs*, "You have the right to earn at least the federal legal minimum wage, $7.25 per hour, in the same manner as U.S. workers. Also check [t]he minimum wage for the **state** in which you work. If that wage is higher, you have the right to be paid the higher amount," (Doc. # 199-1 at 8). (Doc. # 240 at 31.)

---

[2] 29 C.F.R. § 62.31 governs the "Department of State-designated exchange visitor programs" for *au pairs*. Regarding wages and hours, it requires that *au pair* sponsor organizations, like Defendants, shall require that *au pairs* "[a]re compensated at a weekly rate based upon 45 hours of child care services per week and **paid in conformance with the requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor**." 29 C.F.R. § 62.31(j)(1) (emphasis added).

The Magistrate Judge continued, "[f]urther, the FLSA mandates that state minimum wage laws control within each respective state," citing the FLSA's "savings clause," 29 U.S.C. § 218(a).[3] (Doc. # 240 at 30.) Magistrate Judge Tafoya observed that Defendants "fail[ed] to cite to any federal law, regulation or guideline that provides for what would essentially be an exemption to the FLSA's savings clause." (*Id.*) For those reasons, Magistrate Judge Tafoya found "Defendants' contention that an overall federal scheme and/or federal regulations pre-empt the state minimum wage laws in this country as applied to *au pairs* has no support in federal law." (*Id.* at 32.)

Certain Defendants objected to the Magistrate Judge's Recommendation, taking issue with her analysis of their preemption defense. (Doc. # 247 at 9–11.) Defendants argued that Magistrate Judge Tafoya's assessment of the regulations and statutes was erroneous because "preemption does not flow from the FLSA but rather from the regulatory framework designed by [the United States Information Agency ("USIA"), DOS's predecessor], which embodies the government's policy judgments regarding *au pair* compensation." (*Id.* at 10.) "Application of state minimum wage laws," according to Defendants, was an obstacle to the accomplishment of USIA's and DOS's policy goal of "a uniform wage." (*Id.*) Defendants asserted, "[a]ccordingly, Plaintiffs' state law wage claims are preempted pursuant to traditional conflict-preemption principles." (*Id.*)

---

[3] The FLSA's savings clause provides:
> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter.

29 U.S.C. § 218(a).

Plaintiffs filed a Response to Defendants' Objections, arguing that DOS "actually clearly expressed the exact opposite" of Defendants' position. (Doc. # 256 at 11.)

On March 31, 2016, this Court adopted and affirmed most of Magistrate Judge Tafoya's Recommendation on the Motions to Dismiss, including her analysis of Defendants' preemption argument. (Doc. # 258.) The Court first observed that Defendants had "slightly recast" their preemption argument, which had previously focused on the *au pair* program being an immigration matter, and deemed as waived any arguments Defendants were raising for the first time in their Objection. (*Id.* at 28 n.22.) Nevertheless, the Court held that Magistrate Judge Tafoya properly decided that state wage laws are not preempted. (*Id.* at 28.) The Court affirmed that "the regulations implemented by the USIA expressly provided that the *au pair* program **must** conform with the FLSA, **without exception**," and that the "FLSA, in turn, explicitly provides that, if a state sets a higher minimum wage than that mandated by the FLSA, employees within that state are entitled to receive that higher wage." (*Id.*) The Court also agreed with Magistrate Judge Tafoya's analysis of Defendants' argument regarding USIA and DOS's wage uniformity policy goals. (*Id.* at 28–29.) The Court therefore affirmed that "Plaintiffs' claims under state wage laws are not, in fact, preempted by some kind of amorphous 'federal framework.'" (*Id.* at 29.)

In late 2017 and early 2018, Defendant Cultural Care deposed *au pairs* on topics related to Defendants' preemption defense, such as the *au pair*'s views on the cultural exchange aspect of being an *au pair*. *See, e.g.*, (Doc. # 954-19 at 10) (Defendant's

counsel requesting an *au pair*'s journals on the ground that "[t]hey're at least facially relevant. We're raising a cultural exchange preemption argument".)

On March 5, 2018, Defendant Cultural Care filed its Motion for Clarification of Topics That Remain Open and Appropriate for Depositions of FLSA Opt-In Plaintiffs, alleging that "Plaintiffs' counsel [had] objected to certain lines of questioning on relevance grounds, based on Plaintiffs' view that the scope of the depositions should be extremely narrow." (Doc. # 924 at 3.) It characterized the Court's previous holdings on preemption as "preliminary thoughts based only on the pleadings." (*Id.* at 5 n.2.) Defendant Cultural Care argued that a "holding that preemption does not apply would require a fact-based determination that . . . the predominant purpose of the program is labor, not cultural exchange," (*id.*), and that, accordingly, it was permissible to ask deponents about their "principal intent in participating in the program," their "comparative compensation" before entering and after exiting the program, and "the importance" they assigned "to the cultural exchange aspects of [their] participation" in the *au pair* program. (*Id.* at 8–9.)

On March 26, 2018, Plaintiffs filed a competing Motion for a Protective Order Regarding Defendant Cultural Care's Depositions of FLSA Opt-In Class Members, alleging that Defendant Cultural Care subjected "young deponents, who [were] unfamiliar with the U.S. legal system and ha[d] varying levels of English proficiency . . . to hours of unnecessary, anxiety-provoking questions." (Doc. # 953 at 1.) Plaintiff rejected Defendant Cultural Care's justification that the questions were necessary to prove its preemption on the grounds that "(i) its preemption defense was denied as a

7

matter of law at the pleading stage; (ii) preemption is a matter of law, not fact to be established by deposition testimony; and (iii) preemption considers legislative or regulatory intent, but the *au pairs* are neither legislators nor regulators." (*Id.* at 13) (internal citations omitted); *see also* (Doc. # 951 at 2–7.) Plaintiffs thrice reiterated that Defendants' preemption defense had already been dismissed. (*Id.* at 13–15.)

This Court issued its Order on Depositions of FLSA Opt-In Class Members on April 4, 2018, and largely adopted Plaintiffs' position regarding the impropriety of questions related to Defendants' preemption defense. (Doc. # 969.) It ordered that:

> Defendant Cultural Care shall not ask questions regarding its preemption defense, including questions about a deponent's motivations for participating in the program. *See* (Doc. # 924-1 at 2.) **This Court already concluded that "Plaintiffs' claims under state wage laws are not, in fact, preempted by some kind of amorphous 'federal framework,'"** (Doc. # 258 at 29), when it affirmed and adopted United States Magistrate Judge Kathleen M. Tafoya's finding that Defendants' preemption argument "has no support in federal law," *see* (Doc. # 240 at 32). Moreover, were the Court to entertain Defendants' position on preemption, the deponents' beliefs and experiences would have no bearing on the Court's legal analysis of Congress's intent.

(Doc. # 969 at 3) (emphasis added.)

**B.    MOTIONS FOR SUMMARY JUDGMENT**

Defendants reasserted their preemption defense in their Motions for Summary Judgment. *See, e.g.*, (Doc. # 859 at 16; Doc. # 860 at 25–34; Doc. # 879 at 16.) In Certain Defendants' Joint Motion for Summary Judgment, Defendants argued at length that "federal preemption entitle[d] [them] to summary judgment on Plaintiffs' state wage-and-hour claims." (Doc. # 860 at 25.) First, they asserted field preemption barred application of state wage and hour statutes because the *au pair* program "operates in

8

two fields that have long been considered the exclusive province of the federal government: foreign affairs and immigration" and because DOS has long promulgated "exactingly precise" regulations that amount to a "comprehensive scheme." (*Id.* at 25–29.) Defendants disputed Plaintiffs' previously-made argument that the FLSA's savings clause required compliance with state wage laws, asserting that "the FLSA does not incorporate state wage-and-hour laws into federal law;" it "simply makes clear that the FLSA does not preempt any existing state law." (*Id.* at 29–30) (internal quotations omitted.) Second, Defendants argued conflict preemption precluded Plaintiffs' state wage claims. According to Defendants, the federal government has a "programmatic need for a uniform wage" among *au pairs*, and applying state wage laws to *au pairs* would create "untenable conflicts." (*Id.* at 32–34.)

Plaintiffs vociferously disputed Certain Defendants' Joint Motion on the ground that the Court "ha[d] rejected [Defendants' preemption] defense twice over in this litigation." (Doc. # 942 at 126–45.) Plaintiffs asserted that "[b]ased on what was a pure issue of law, the Court held, unequivocally," in its Order Adopting and Affirming in Part Magistrate Judge Tafoya's Recommendation on the Motions to Dismiss that Defendants "have no preemption defense to paying state and local minimum wages." (Doc. # 942 at 127.) Plaintiffs urged the Court to therefore summarily dismiss Defendants' preemption defense under the law of the case doctrine. (*Id.* at 128–31.) Plaintiffs also responded to the merits of Defendants' field preemption argument, describing that the relevant regulations "expressly contemplate concurrent compliance with state and local law," (*id.* at 132–33), and to the merits of Defendants' conflict preemption argument,

asserting that application of state wage laws to *au pairs* "does not stand as an obstacle" but "rather . . . furthers the goal of ensuring that people of other countries that in the United States for education and cultural exchanges receive sufficient protection while here," (*id.* at 143–54).

And in their own Motion for Summary Judgment, Plaintiffs requested that the Court hold that "[a]*u pairs* are entitled to receive from their employers the minimum federal, state, or local wage, including overtime," though Plaintiffs did not explicitly mention preemption. (Doc. # 915 at 3–5.) Citing the Court's previous holding that the FLSA applies to their claims, Plaintiffs again told the Court that the FLSA's savings clause incorporates state wage and hour laws. (*Id.* at 4.)

Several Defendants filed Responses in objection to Plaintiffs' Motion for Summary Judgment. (Doc. ## 931–33, 937, 940.) Defendant Cultural Care, for example, maintained that "federal preemption preclude[s]" Plaintiffs' arguments. (Doc. # 937 at 4.) It also asserted that Plaintiffs "misread" the FLSA's savings clause, which "does not create private cause of action." (*Id.*)

On June 19, 2018, this Court denied all parties' Motions for Summary Judgment. (Doc. # 1102.) The Court held that "numerous genuine issues of material fact" preclude summary judgment on any claim and listed five examples of such issues. (*Id.* at 5–6.) Among these five examples of disputed issues was "[w]hether the federal government intended for the statutes and regulations governing the *au pair* program to preempt state and local regulations." (*Id.* at 6.)

Plaintiffs now request that the Court clarify its Order Denying Motions for Summary Judgment based "on the procedural history of this case and the Court's prior holdings." (Doc. # 1118 at 5.) They assert that preemption is a purely legal issue, one not subject to "genuine issues of material fact." (*Id.* at 6–9.) Plaintiffs perceive incongruity between the Court's prior rulings on preemption and its Order Denying Motions for Summary Judgment. (*Id.* at 6–11.)

## II. LEGAL STANDARD

An order denying summary judgment is interlocutory in nature. *Rodabaugh v. Continental Cas. Co.*, 62 F.2d 1429 (10th Cir. 1995) ("Because an order denying summary judgment is not a 'final order or decision' under 28 U.S.C. 1291, 'it is reviewable only pursuant to the provisions for interlocutory appeal set forth in 28 U.S.C. 1292(b).'" (internal citations omitted*));* see also In re C and M Properties, L.L.C.*, 563 F.3d 1156, 1167 (10th Cir. 2009); *Garcia v. Tyson Foods, Inc.*, 534 F.3d 1320, 1326 (10th Cir. 2008).

A district court may reconsider its own interlocutory order, *sua sponte* or on motion, at any time prior to the entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b). *Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006); *NAACP v. Acusport Corp.*, 216 F. Supp. 2d 59, 61 (E.D.N.Y. 2002); *Young v. Murphy*, 161 F.R.D. 61, 61 (N.D. Ill. 1995). Rule 54(b) "provides that a district court can freely reconsider its prior rulings; and . . . puts no limit or governing standard on the district court's ability to do so, other than that it must do so 'before the entry of judgment,'" and "[t]he Tenth Circuit has not cabined district courts' discretion beyond what [R]ule 54(b) provides."

11

*Lujan v. City of Santa Fe*, 122 F. Supp. 3d 1215, 1238 (D.N.M. 2015) (citing *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007)). In short, a district court can employ whatever standard it wishes to revisit an interlocutory order. It can review the earlier ruling *de novo* and essentially reanalyze the earlier motion from scratch, it can review the ruling *de novo* but limit its review, it can require parties to establish one of the law of the case grounds, or it can refuse to entertain motions to reconsider altogether. *Id.*

### III. ANALYSIS

The Court unintentionally created confusion about the status of Defendants' preemption defense in its Order Denying Motions for Summary Judgment by listing "[w]hether the federal government intended for the statutes and regulations governing the *au pair* program to preempt state and local regulations" as an example of a genuine issue of material fact. (Doc. # 1102 at 6.) The Court agrees with Plaintiffs that clarification is necessary and accordingly grants Plaintiffs' Motion to Clarify Denying Motions for Summary Judgment (Doc. # 1118).

Upon *de novo* reconsideration of the stack of lengthy summary judgment filings in this case, the Court grants summary judgment in favor of Plaintiffs on Defendants' preemption defense. Plaintiffs' state law wage claims are **not** preempted by federal statutes and regulations as a matter of law, and Defendants' arguments otherwise are summarily dismissed.

## A. PREEMPTION IS A QUESTION OF LAW

Summarily dismissing Defendants' preemption defense is warranted because preemption is purely a legal issue. Federal courts in this Circuit and across other jurisdictions agree as much. *See, e.g., Allison v. UNUM Life Ins. Co. of Am.*, 381 F.3d 1015, 1027 n.1 (10th Cir. 2004) ("we agree that preemption of state law by federal law . . . presents a pure federal-law question" (internal quotations omitted)); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1206 (10th Cir. 2001) ("[w]hether state law is preempted by federal law is a conclusion of law*"); Panhandle E. Pipeline Co. v. State of Okla. ex rel. Comm'rs of Land Office*, 83 F.3d 1219, 1225 (10th Cir. 1996) (describing a district court's decision that a state law was preempted by federal law as "a conclusion of law").

Preemption is a question of law because it "fundamentally is a question of congressional intent." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990); *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("Our inquiry . . . is guided by the rule that 'the purpose of Congress is the ultimate touchstone in every pre-emption case'")). A court assessing a question of preemption begins "with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Altria Grp.*, 555 U.S. at 77 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). This assumption applies with particular force where, like here, Congress has legislated in a field traditionally occupied by the states. *Id.* "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the

State.  Child labor laws, [and] minimum and other wage laws . . . are only a few examples." *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 756 (1985) (quoting *Slaughter-House Cases*, 83 U.S. 36, 62 (1872)).  In such circumstances, "courts readily 'accept the reading that disfavors pre-emption'" where "the text of a pre-emption clause is susceptible of more than one plausible reading." *Altria Grp.*, 555 U.S. at 77 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

Congress's intent "primarily is discerned from the language of pre-emption statute and the 'statutory framework' surrounding it." *Lohr*, 518 U.S. at 486 (citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring in part and in judgment)).  Also relevant is the "structure and purposes of the statute as a whole," *Gade*, 505 U.S. at 112, "as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law," *Lohr*, 518 U.S. at 486.  The history of the federal regulation may bear on a court's determination of congressional intent as well.  *See Wyeth*, 555 U.S. at 566 (briefly reviewing the history of federal regulation of drug and drug labeling in order to identify congressional purpose behind the Federal Food, Drug, and Cosmetic Act).

Because preemption presents a question of law reserved for the court, "if the court concludes that a state law is preempted, summary judgment is proper as to that claim." *Dobbs v. Wyeth Pharm.*, 797 F. Supp. 2d 1264, 1267 (W.D. Okla. 2011); *see United States v. Supreme Court of New Mexico*, 839 F.3d 888, 904–06 (10th Cir. 2016); (affirming the district court's denial of motion for discovery on preemption claims

because further facts, "even if established, would not have affected the district court's central legal conclusion"—that partial summary judgment was warranted on preemption grounds); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 607–10 (8th Cir. 1999) (affirming the district court's grant of summary judgment on preemption grounds); *Flibotte v. Penn. Truck Lines, Inc.*, 131 F.3d 21, 25 n.1 (1st Cir. 1997) (finding no error where the district court did not weigh any underlying facts because "the critical issue—preemption—embodies a pure question of law susceptible to resolution on the face of the pleadings."). Such is the case in the matter now before the Court, as the Court previously stated in its Order on Depositions of FLSA Opt-In Class Members on April 4, 2018: "were the Court to entertain Defendants' position on preemption, the deponents' [the *au pairs*'] beliefs and experiences would have no bearing on the Court's legal analysis of Congress's intent." (Doc. # 969 at 3.) The Court later erred when, as an example of a disputed issue of material fact that justified denial of the Motions for Summary Judgment, it included "[w]hether the federal government intended for the statutes and regulations governing the *au pair* program to preempt state and local regulations." *See* (Doc. # 1102 at 6.)

### B. THIS COURT HAS ALREADY HELD THAT DEFENDANTS' PREEMPTION DEFENSE FAILS AS A MATTER OF LAW

Defendants failed to assert any new arguments in support of their preemption defense in their Motions for Summary Judgment and related filings. For example, in their Joint Motion for Summary Judgment, Certain Defendants did not even acknowledge that the Court had ruled against them on preemption; they instead merely repeated the arguments they had already presented in their Motions to Dismiss and in

their Objections to the Magistrate Judge's Recommendation on the Motions to Dismiss. *See* (Doc. # 860 at 25–34.) Defendant Cultural Care, in its Response to Plaintiffs' Motion for Partial Summary Judgment, simply told the Court that it "continue[d] to maintain that *au pairs* are predominately exchange visitors . . . ; and that . . . regulations preempt the application of state and local wage and hour laws," without any mention of the Court's prior rulings concerning preemption. (Doc. # 937 at 4 n.4.)

This utter absence of any reference to the Court's prior rulings contributed to the Court's error. The Court now reaffirms its holdings and, for the reasons set forth in those previous rulings, *see* (Doc. ## 240, 258, and 969), holds that, as a matter of law, Plaintiffs' state law claims are not preempted by federal statutes or regulations. *See also Cultural Care, Inc. v. Office of the Attorney General of Massachusetts*, No. 16-cv-11777-IT, 2017 WL 3272011, *3–10 (D. Mass. Aug. 1, 2017) (the district court summarily dismissed Defendants' preemption defense in a related proceeding).

## IV. CONCLUSION

For the aforementioned reasons, the Court ORDERS as follows:

1. Plaintiffs' Motion to Clarify the Order Denying Motions for Summary Judgment (Doc. # 1118) is GRANTED; and
2. Defendants' preemption defense is SUMMARILY DISMISSED pursuant to Federal Rule of Civil Procedure 56.

DATED: August 6, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge