IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

　　　　　Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

　　　　　Defendants.

_____

**CERTAIN DEFENDANTS' MOTION TO RECONSIDER ORDER GRANTING
PLAINTIFFS' MOTION TO CLARIFY THE ORDER DENYING MOTIONS FOR
SUMMARY JUDGMENT AND, UPON RECONSIDERATION, GRANTING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 1126]**

**CERTIFICATE OF CONFERRAL**

As required by D.C.COLO.LCivR 7.1(A), counsel for Cultural Care conferred on behalf of Moving Defendants with Plaintiffs' counsel in good faith regarding the subject of this motion.  Plaintiffs oppose this motion and the relief sought herein.

**PRELIMINARY STATEMENT**

The initial version of this submission was prepared to be filed this week as Defendants' Opposition to Plaintiffs' Motion To Clarify The Order Denying Motions For Summary Judgment [ECF No. 1118] (the "Motion"). However, the Court granted the Motion one day before the Opposition deadline on the basis of Plaintiffs' moving papers.  The Motion argued at length that preemption is a pure question of law, and the Court did not have the benefit of Defendants' full argument about the circumstances in which preemption is a mixed question of fact and law.   Because preemption is or would have been a very important affirmative defense, Defendants must fully preserve their appellate rights regarding the granting of the Motion.  Hence, they have repurposed and restructured their Opposition as a Motion for Reconsideration.  Defendants recognize that the Court is highly unlikely to revisit this issue and therefore suggest  that Plaintiffs be excused from filing opposing papers, unless the Court expressly requests that they do so.

**INTRODUCTION**

Moving Defendants[1] respectfully submit that the Court should reconsider its Order Granting Plaintiffs' Motion To Clarify The Order Denying Motions For Summary

---

[1] All Defendants join this Motion except A.P.E.X. American Professional Exchange, LLC and 20/20 Care Exchange, Inc.

- 1 -

Judgment And, Upon Reconsideration, Granting In Part Plaintiffs' Motion For Summary Judgment [ECF No. 1126] (the "Order").  Less than two months ago, this Court unambiguously held that "genuine issues of material fact" prevented it from entering summary judgment regarding preemption.  Plaintiffs requested that the Court "clarify" its holding, and enter summary judgment in their favor on preemption.  No subsequent developments suggested that reconsideration was necessary, and Plaintiffs did not identify any.  On the contrary, Plaintiffs' request obscured a critical new development, which confirmed that the Court was originally correct not to resolve the preemption issue on summary judgment.

Defendants, however, had no opportunity to present their arguments to the Court.  The Court entered the Order one day before Defendants' response was due, so it was equipped only with Plaintiffs' brief in support of their motion.  That brief had two critical shortcomings.  First, it omitted a new and crucially important regulatory development:  the United States is poised to announce the Department of State's ("DOS") official interpretation of the regulations that govern the au pair program on September 11, 2018.  Second, Plaintiffs' brief presented an incomplete picture of the law of preemption—one that cannot be reconciled with controlling precedent.  The Court should reconsider the Order so that it can address both of those issues on a full record, and with the benefit of adversarial presentation.

For the better part of four years, the parties have argued about the meaning of the federal regulations that govern the au pair program, which were promulgated by DOS.  Now, in response to a request from the United States Court of Appeals for the

- 2 -

First Circuit, the United States is set to provide DOS's official interpretation of what those regulations mean.  And, it has agreed to do so on or about September 11, 2018, more than five months before trial will begin in this case.

Plaintiffs nevertheless asked this Court to render an interim ruling on preemption, without the benefit of DOS's forthcoming interpretation of its own regulations.  They offered no reason why the Court should rush to judgment before the United States files its amicus brief.  Indeed, Plaintiffs failed to mention that DOS was considering the issue at all in their Motion.  Whether and when to reconsider a prior order is left to the discretion of this Court.  If the Court is inclined to rule on preemption as a matter of law, then it should do so after it is equipped with DOS's views.  Any other course would be inefficient, would invite further motions for reconsideration, and would result in a ruling on a key question that was made without the benefit of critical information that the Court will possess literally in a matter of weeks.

Even if the First Circuit had not requested DOS's interpretation, reconsideration still would be appropriate.  Despite Plaintiffs' claims to the contrary, courts have recognized that factual questions sometimes must be resolved by the jury before a preemption determination can properly be made as a matter of law.  Preemption therefore is not always "purely a legal issue," and there are fact questions in this case that must be resolved before the Court—or the jury—can reject Defendants' preemption arguments.  *Contra* Order at 13.  None of the Court's prior orders compels a contrary conclusion, because these factual questions were not before the Court on Defendants' motion to dismiss, or on the parties' cross-motions regarding discovery.  The Court

- 3 -

therefore should reconsider the Order.

## BACKGROUND

Throughout the pendency of this suit, Defendants have maintained that the federal laws and regulations governing the au pair program preempt state law.  Plaintiffs have argued the opposite, and both sides have recognized the importance of this issue. To support their preemption arguments, both parties sought evidence relating to DOS's interpretation of its own regulations through discovery.  For example, Plaintiffs served document requests on DOS pursuant to the Freedom of Information Act.  Ex. A, FOIA Log of Requests ("FOIA Log") at 382; Ex. B, Office of Information Programs and Servs. Letter to A. Hood ("Letter to A. Hood").  They sought "All correspondence/records regarding 'Au Pair' J1 Visa Program; wages, hours mandated, stipends and predecessor regulations."  Ex. A, FOIA Log at 382; Ex. B, Letter to A. Hood.  They also attempted to depose former DOS employees.  *See* Ex. C, Ammar Subpoena.  And, they broadly requested that Defendants produce communications to and from DOS relating to the au pair program.  *See, e.g.*, Ex. D, Pls.' First Request for Prod. of Docs. at 6; Ex. E, Pls.' Fourth Request to All Defs. for Prod. of Docs. at 3; Ex. F, Pls.' Sixth Request to All Defs. for Prod. of Docs. at 4-6.

The First Circuit's request for DOS's interpretation arose in this context:   in early 2015—after Plaintiffs filed this suit—the Office of the Attorney General of the Commonwealth of Massachusetts (the "OAG") met with Cultural Care to inform the latter that the OAG  was considering enforcing the Massachusetts Domestic Workers Bill of Rights, M.G.L. c. 149, § 190, and the accompanying regulations, 940 CMR § 32,

for the first time against au pair sponsor agencies and host families.  Ex. G, Complaint

¶¶ 28-29, *Cultural Care, Inc. v. Office of the AG of Mass.* ("*Mass AG*"), No. 16-cv-

11777-IT (D. Mass. Aug. 1, 2017).  At a subsequent meeting, the OAG confirmed that it

had decided to move forward with its planned enforcement.  *Id.* ¶ 33.  If effectuated, the

OAG's enforcement would have transformed au pairs from cultural exchange visitors

into domestic workers, meaning, among other things, that all host families participating

in the au pair program would henceforth be required to comply with the Massachusetts

minimum wage law, overtime rules, and a broad definition of what qualifies as

compensable time.  *Id.* ¶¶ 30-31, 33.  In response, Cultural Care sought a declaratory

judgment to confirm that the federal laws and regulations governing the au pair program

preempted the Massachusetts Domestic Workers Bill of Rights.  *Id.* at 1-2.

The OAG moved to dismiss, arguing that the Commonwealth's laws and

regulations were not preempted.  Ex. H, Defs.' Mot. to Dismiss ¶¶ 3-4, *Mass. AG*.  The

District Court agreed, and Cultural Care appealed.  *Cultural Care, Inc. v. Office of the

Attorney General of Mass.,* No. 16-cv-11777-IT, 2017 WL 3272011, at *8-9 (D. Mass.

Aug. 1, 2017).  After full briefing and oral argument, the First Circuit solicited DOS's

views.  Ex. I, First Circuit Order, *Capron, et al. v. Office of the Attorney General of the

Commonwealth of Mass., et al.* ("*Capron*"), No. 17-2140 (1st Cir. June 13, 2018).  The

First Circuit did so because of "the importance of the issues and the extent to which

their resolution may depend on the interpretation of the statutes and regulations

governing the federal au pair program."  Ex. J, First Circuit Letter to DOS at 1-2.

The First Circuit asked the United States to respond on behalf of DOS to six

questions that embrace many of the key issues presented by this case.  The first

question squarely asks "[t]o what extent, if any, does 22 C.F.R. § 62.31, and in

particular 22 C.F.R. § 62.31(j), preempt state and local labor and employment laws,

including state and local laws that impose a higher minimum-wage requirement than

federal law?"  Ex. J, First Circuit Letter to DOS at 2.  The First Circuit also inquired

about how it should weigh the various regulatory materials that both sides in this case

have used to support their preemption arguments, such as the Wilberforce Pamphlet

and the stipend notices that set forth the formula on which the sponsors have relied.  *Id*.

at 2 ("For purposes of determining the preemptive effect, if any, of 22 C.F.R. § 62.31,

and in particular 22 C.F.R. § 62.31(j), on state and local labor and employment laws,

what is the significance, if any, of the various notices and other information provided by

the U.S. Department of State and the United States Information Agency concerning the

federal au pair program? . . . What level of deference should courts give to such notices

and other information?").

The First Circuit requested that the United States file its brief by September 11,

2018.  The United States confirmed that it would attempt to do so, and that it would

inform the Court if it required additional time.  Ex. K, DOJ Letter to First Circuit, *Capron,*

No. 17-2140.  As of the filing of this brief, the United States has not requested any

additional time.

Six days after the First Circuit requested DOS's views, this Court decided the

parties' cross-motions for summary judgment.  Order Denying Mots. for S.J., ECF No.

1102.  The Court rejected each party's argument that preemption should be resolved in

its favor as a matter of law, and held that "genuine issues of material fact" remained as to preemption.  *Id.* at 5–6.

Plaintiffs moved to "clarify" the Court's order, arguing that the Court should decide preemption in their favor now, five weeks before DOS is poised to address the issue.  Mot. at 1, 9.  Plaintiffs' Motion did not discuss the First Circuit's request, or the United States' response.  The Court granted the Motion before Defendants' time to respond had elapsed, so no opposition had been filed.  *See* D.C.COLO.LCivR 7.1(d) (providing 21 days for the filing of a response).

## ARGUMENT

### I.      LEGAL STANDARD

The Court has ample authority to reconsider the Order.  *See, e.g.*, Order on All Parties' Joint R. Regarding Proposed Rule 23 Notification Plan at 6, ECF No. 977 (explaining that the court "can freely reconsider its prior rulings").  The Court may reconsider interlocutory orders at any time before it enters a final judgment.  *See Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006).  So long as the Court has not entered a final judgment, the Federal Rules of Civil Procedure "put[] no limit or governing standard" on a district court's ability to reconsider its prior orders, and neither has the Tenth Circuit.  *See Lujan v. City of Santa Fe*, 122 F. Supp. 3d 1215, 1238 (D.N.M. 2015) (citing *Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007)).  The Court therefore has broad, "general discretionary authority to review and revise" the Order.  *See Fye v. Okla. Corp. Commc'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008).

- 7 -

## II.   DISCUSSION

### A.   The Court Should Not Enter Summary Judgment Regarding Preemption Until the Department of State Files its Brief in the First Circuit.

The Court should reconsider its decision to enter summary judgment on preemption before DOS files its amicus brief.  Plaintiffs cannot explain—and do not try to explain—why this Court should enter judgment now, when DOS's controlling interpretation of its own regulations will be available to the Court in a matter of weeks, and well in advance of trial.  Instead, Plaintiffs' Motion made no mention of the First Circuit's request.  Reconsideration is warranted so that the Court can rule on preemption with a full record, which includes the responsible agency's controlling interpretation of its own regulations.

As noted above, the United States is scheduled to announce DOS's interpretation of the au pair regulations on or about September 11, 2018.  Ex. K, DOJ Letter to First Circuit.  That interpretation will be entitled to deference.  As the Supreme Court and the Tenth Circuit have repeatedly explained, courts should defer to an agency's interpretation of its own regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation."  *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (holding that an agency's view is entitled to "substantial deference" and usually should be given "controlling weight"); *Mitchell v. Comm'r*, 775 F.3d 1243, 1249 (10th Cir. 2015).  That is so even when the agency interpretation comes to the Court in a brief, as it frequently does.  *Chase*, 562 U.S. at 208 (deferring to an agency interpretation set forth

in an amicus brief); *Auer v. Robbins*, 519 U.S. 452, 462 (1997) ("Petitioners complain that the Secretary's interpretation comes to us in the form of a legal brief; but that does not, in the circumstances of this case, make it unworthy of deference."); *Mitchell*, 775 F.3d at 1250–51 (deferring to an agency interpretation "advanced in [a] legal brief").

In light of the long line of cases that require deference to agency interpretations, ruling now without awaiting the responsible agency's imminent pronouncement likely would create more problems than it will solve.  DOS's interpretation is presumptively controlling, and neither the parties nor the Court can adequately address the legal effect of that interpretation without reviewing it.  *See, e.g.*, *Mellow Partners v. Comm'r*, 890 F.3d 1070, 1079 (D.C. Cir. 2018) (explaining that, "[i]n applying *Auer* deference," courts "must assume" that the agency's interpretation is reasonable and that the agency "has the authority to offer definitive interpretations" of its own regulations); *Sisseton-Wahpeton Oyate of the Lake Traverse Reservation v. United States Corps of Eng'rs*, 888 F.3d 906, 920 (8th Cir. 2018) (holding that federal courts "must defer" to reasonable agency interpretations under *Auer*); *Jarita Mesa Livestock Grazing Ass'n v. United States Forest Serv.*, 140 F. Supp. 3d 1123, 1169 (D.N.M. 2015) (expressing reservations about *Auer* deference but acknowledging that "it is, for the time being, the law of the land, and the Court must apply it").  And, in any event, the Order will not save the Court or the parties any time or effort, as either party could move for reconsideration once the United States files its brief.  *See, e.g.*, *Ferluga*, 236 F.R.D. at 549 (explaining that a district court can reconsider its prior orders at any time before the entry of final judgment).

- 9 -

For each of these reasons, the Court should reconsider the Order.  Insofar as the

Court is inclined to rule on preemption as a matter of law, it should do so after the

United States files its brief in the First Circuit.  At that point, Defendants anticipate

seeking leave to address the impact of DOS's interpretation on this case, so that the

Court will have the benefit of a full record—which includes the responsible agency's

official interpretation—before it enters judgment on this critically important issue.[2]

### B.   Questions of Fact Prevent the Court from Entering Summary Judgment in Plaintiffs' Favor Regarding Preemption.

The Court also should reconsider the Order because it overlooks questions of

fact that must be resolved before judgment can be entered for Plaintiffs.  Plaintiffs'

Motion broadly suggested that preemption always must be resolved by the Court as a

matter of law.  *See* Mot. at 9.  The Order largely adopted that argument, and held that

preemption is "purely a legal issue."  Order at 13.  Respectfully, that is not so.  Although

courts often describe preemption as a question of law, they also regularly explain that

preemption, like other affirmative defenses, can be bound up with questions of fact that

must be resolved by the jury.[3]

---

[2] Instead of addressing the potentially dispositive effect of DOS's forthcoming interpretation, Plaintiffs' Motion faulted Cultural Care for purportedly attempting to "re-litigate preemption in its home forum."  Mot. at 10.  That attack is misinformed and irrelevant in equal measure.  It is misinformed because the genesis of the Massachusetts litigation was the OAG's decision to initiate enforcement of the Massachusetts Domestic Workers Bill of Rights—a statute that is not at issue in this case—as well as various other state wage and hour laws that it had not previously applied against au pair sponsors.  *See* Ex. G, Complaint ¶ 29, *Mass. AG*.  It is irrelevant because DOS's interpretation will carry the same weight regardless of the forum in which it is initially offered, and Plaintiffs advance no reason to think otherwise.

[3] For example, whether a statute of limitations bars a claim is ultimately a question of law, but determining when a cause of action accrued may involve questions of fact that

Indeed, the Supreme Court of the United States has held as much. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 504, 512-14 (1988). In *Boyle*, the Court addressed whether and when federal common law preempts state tort claims against federal military contractors. *See id.* at 504 (explaining that some areas of law, such as military contracting, involve "uniquely federal interests" that may preempt state law). The Court held, as a matter of law, that "in some circumstances" state tort law "present[s] a significant conflict with federal policy" by imposing liability on federal military contractors and "must be displaced." *Id.* at 512. But the Court went on to explain that whether the defense applies in a particular case is a question of fact. *See id.* at 514. It could not have been clearer: "Whether the facts establish the conditions for the defense is a question for the jury." *Id.* The Court further explained that it would be error for the lower court to "assess[] on its own whether the defense had been established." *Id.*

Other courts have similarly recognized that preemption often involves fact questions for the jury. *See, e.g.*, *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 913 (6th Cir. 2007) (in the context of a securities claim, articulating the "basic principles for successfully asserting federal preemption as an affirmative defense on summary

---

must be resolved by a jury before the court can resolve the ultimate legal issue. *Compare, e.g.*, *Trustees of Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co.*, 850 F.2d 613, 617 (10th Cir. 1988) (explaining that "the applicability of a statute of limitations is, however, a question of law")*, with Aldrich v. McCulloch Props.*, 627 F.2d 1036, 1042 (10th Cir. 1980) ("The question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law.") *and Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 483 (D. Colo. July 28, 1998) ("'It is settled law in the majority of circuits that the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury.'") (citation omitted).

judgment" and observing that the inquiry includes "a mixed question" of fact and law, which may be "determined by the factfinder").[4]

In its current posture, this case involves fact questions that prevent the Court from entering summary judgment for Plaintiffs regarding preemption.  For example, Defendants have argued that applying state wage and hour laws to au pairs poses a straightforward conflict with federal law:  it will dramatically increase host-family costs, and therefore steeply reduce the number of host families willing to participate in the federal program.  *See, e.g.*, Certain Defs.' Mot. for S.J. at 34, ECF No. 860.  Plaintiffs responded by assuring the Court that "Defendants could keep costs to host families the same by lowering the fees they charge host families."  Pls.' Opp. to Defs.' Mots. for S.J. at 145, ECF No. 942.  No authority cited by Plaintiffs permits—let alone requires—the Court to accept Plaintiffs' contention as a matter of law.  On the contrary, the jury will need to weigh Plaintiffs' claim against the sworn testimony of their expert economist, who said just the opposite.  Ex. L, William Kerr Dep. 95:2-9 ("Q.  So is it your conclusion then that the sponsors could all increase the stipend to $344.38 a week and reduce their fees by that amount so that the total cost to the host family would stay the same?  A.  No.  Q.  You don't agree with that?  A.  Yes, I don't agree with it.").

Fact disputes of this kind demonstrate that the Court was correct when it originally refused to enter summary judgment for Plaintiffs regarding preemption, and

---

[4] *See also In re Fosamax Alendronate Sodium Prods. Liab. Litig.*, 852 F.3d 268, 288 (3d Cir. 2017) (in the context of a fraud on the FDA claim "it is equally clear that preemption can be, and sometimes must be, a fact question for the jury.") *cert. granted sub nom. Merck Sharp & Dohme Corp. v. Albrecht,* 138 S. Ct. 2705 (June 28, 2018).

nothing in the Court's prior orders compels a different result.  *See* Order Denying Mots. for S.J. at 5-6, ECF No. 1102 (holding that "genuine issues of material fact" remained as to preemption).  Neither the Court's Order denying Defendants' Motions to Dismiss nor the Court's Order limiting the permissible scope of opt-in depositions confronted the factual issues raised in the summary judgment briefs, such as the one discussed above. *See, e.g.*, *supra* at 11 (identifying the factual question of what will happen to host family participation if the minimum stipend sharply increases); Certain Defs.' Reply in Support of Their Mot. for S.J. at 17-18, ECF No. 988 (collecting evidence regarding preemption that was not before the Court when it ruled on the motion to dismiss or the opt-in discovery dispute).  And regardless of what the Court said before it faced those factual issues, the Court has ample authority to revisit its prior rulings insofar as it is actually necessary to do so.  *See, e.g.*, Order on All Parties' Joint Report Regard Proposed Rule 23 Notification Plan at 6, ECF No. 977 (explaining that the court "can freely reconsider its prior rulings").  For the reasons discussed above, the Court should reconsider the Order.[5]

---

[5] Despite Plaintiffs' suggestion to the contrary, *see* Mot. at 8-9, the reality of this and other factual disputes in no way undermines Defendants' position—which they maintain to this day—that preemption should be decided in their favor as a matter of law on the grounds of field preemption, and various significant conflicts that are clear from the face of the relevant laws, regulations, and the record.  Because the Court apparently disagrees, it is entirely appropriate for Defendants to pursue their alternative argument: that fact questions like the one above preclude the Court from resolving preemption in Plaintiffs' favor as a matter of law.

It is routine for parties to structure their arguments in this way, and Plaintiffs have done so as well.  For example, their opening position is that the joint-employment issue should be decided in their favor as a matter of law.  *See* Pls.' Mot. for Partial S.J. at 6, ECF No. 915 (requesting that the Court hold as a matter of law that "Sponsors are joint

# CONCLUSION

For the foregoing reasons, the Court should reconsider the Order.

Dated:  August 9, 2018

Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey
(joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass
(mgass@choate.com)
Justin J. Wolosz
(jwolosz@choate.com
Lyndsey M. Kruzer
(lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural
Care, Inc. d/b/a Cultural Care Au
Pair***

---

employers of their au pairs.").  Their back-up position is that fact issues exist for trial.
Pls.' Opp. to Defs.' Mots. for S.J. at 115, ECF No. 942 ("[R]egardless of whether
Plaintiffs are entitled to summary judgment now, the evidence is certainly sufficient to
avoid summary judgment in Defendants' favor, and send the issue to a jury to conduct
fact finding.").  So, too, for Defendants when it comes to preemption.

- 14 -

_s/ Kathryn A. Reilly_
Kathryn A. Reilly
(reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Natalie E. West
(west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

**_Attorneys for Defendants Agent Au Pair, Au Pair International, Inc., Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair_**


_s/ James E. Hartley_
James E. Hartley
(jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302

**_Attorneys for Defendant Cultural Homestay International_**

- 15 -

*s/ Susan M. Schaecher*
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

**Attorneys for Defendants APF Global Exchange, NFP**


*s/ Stephen J. Macri*
Stephen J. Macri
(Stephen.macri@ogletree.com)
Joseph B. Cartafalsa
(joseph.cartafalsa@ogletree.com)
Robert M. Tucker
(robert.tucker@ogletree.com)
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
1745 Broadway, 22nd Floor
New York, NY 10019
(212) 492-2071

*s/ Eric J. Stock*
Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301

**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**

*s/ Bogdan Enica*
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair**


*s/ Peggy E. Kozal*
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey
(nhuey@gordonrees.com)
Heather K. Kelly
(hkelly@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**


*s/ Martha L. Fitzgerald*
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant EurAuPair Intercultural Child Care Programs**

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

**Attorneys for Defendant InterExchange, Inc.**

*s/ William J. Kelly III*
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

**Attorneys for Defendant USAuPair, Inc.**
*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
4643 S. Ulster Street, Suite 800
Denver, CO 80237
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

**Attorneys for Defendant GreatAuPair, LLC**

- 18 -

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on August 9, 2018, I caused to be electronically filed the foregoing Certain Defendants' Motion To Reconsider Order Granting Plaintiffs' Motion To Clarify The Order Denying Motions For Summary Judgment And, Upon Reconsideration, Granting In Part Plaintiffs' Motion For Summary Judgment [ECF No. 1126] with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Byron Pacheco (bpacheco@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
David Seligman (david@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*


*s/ Diane R. Hazel*

- 19 -