# EXHIBIT L

```
                                                                  1

 1

 2    UNITED STATES DISTRICT COURT
      DISTRICT OF NEW YORK COLORADO
 3    ---------------------------------------X
      JOHANA PAOLA BELTRAN, et al.,
 4
                                PLAINTIFFS,
 5

 6            -against-         Case No.:
                                1:14-CV-03074-CMA-KMT
 7

 8    INTEREXCHANGE, INC., et al.,

 9                              DEFENDANTS.
      ---------------------------------------X
10

11                  DATE: December 21, 2017

12                  TIME: 9:03 A.M.

13

14            VIDEOTAPED and TELECONFERENCED

15    DEPOSITION of a Non-Party Witness, WILLIAM

16    O. KERR, Ph.D., taken by the Defendants,

17    pursuant to a Notice and to the Federal

18    Rules of Civil Procedure, held at the

19    offices of Putney Twombly Hall & Hirson,

20    LLP, 521 Fifth Avenue, New York, New York

21    10175, before Suzanne Pastor, an RPR and

22    Notary Public of the State of New York.

23

24

25
```

|  |  |
|---|---|
| 1 | W. KERR |
| 2 | have any reason to disagree with that? |
| 3 | A. No. I'll assume with you that |
| 4 | she did the arithmetic correctly. It's |
| 5 | going to be something like that. |
| 6 | Q. And you would agree with me |
| 7 | that in order for that increase in stipend |
| 8 | not to result in an increase in total host |
| 9 | family costs, the sponsors would have to |
| 10 | reduce their fees by $6,343? |
| 11 | A. That's right. |
| 12 | Q. So we agree on the math. |
| 13 | A. Yup. |
| 14 | Q. And you would agree with me |
| 15 | that none of these sponsors could reduce |
| 16 | their total fees by $6,343 and stay in |
| 17 | business, correct? |
| 18 | A. No. |
| 19 | Q. You don't agree or you do? |
| 20 | A. I don't. I would agree with |
| 21 | you that every one of them would go out of |
| 22 | business if they had to do that. I don't |
| 23 | agree with you that we can conclude that |
| 24 | every one of them would go out of business |
| 25 | if they had to do that. |

```
 1                    W. KERR
 2       Q.   So is it your conclusion then
 3    that the sponsors could all increase the
 4    stipend to $344.38 a week and reduce their
 5    fees by that amount so that the total cost
 6    to the host family would stay the same?
 7       A.   No.
 8       Q.   You don't agree with that?
 9       A.   Yes, I don't agree with it.
10       Q.   Do you know which ones could
11    and which ones couldn't?
12       A.   No.
13       Q.   Do you think it is more likely
14    than not that the increase in these -- in
15    the fees, the stipend, to 344.38 would
16    increase the total cost to the host
17    families of using an au pair?
18       A.   Yes.
19       Q.   And whether or not the host
20    families would be willing to pay the
21    increased total cost for an au pair depends
22    on the elasticity of host family demand,
23    correct?
24       A.   Primarily, yes.
25       Q.   And have you calculated that?
```

1                    W. KERR
2        A.    No.
3        Q.    Why not?
4        A.    We don't have the ability to do
5    that.
6        Q.    Wouldn't you need to know what
7    the elasticity of demand is to understand
8    the market impact of such an increase in
9    the stipend?
10       A.    If -- yes, if you were trying
11   to predict what would have happened in the
12   but-for world or what will happen in the
13   future if the cost of a significant input
14   such as the stipend for the au pairs goes
15   up significantly, you'd have to model what
16   would happen to the host family -- to the
17   sponsors and how they do their business.
18   And that would give you the supply side.
19                 And then you'd want to look at
20   the demand and see the extent to which host
21   families would operate in that but-for
22   world.
23       Q.    And that's an econometric
24   analysis that economists typically do in
25   calculating damages, correct?