**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
    and those similarly situated,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

    Defendants.

---

**PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO RECONSIDER ORDER GRANTING PLAINTIFFS' MOTION TO CLARIFY THE ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND, UPON RECONSIDERATION, GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 1126]**

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

LEGAL STANDARD ............................................................................................... 2

I.   DEFENDANTS' MOTION IS PART OF A PATTERN OF THEIR REFUSAL TO ACKNLOWLEDGE THE COURT'S AUTHORITY TO ADJUDICATE THE LAW AND EFFECTIVELY AND EFFICIENTLY MANAGE THIS LITIGATION. .................................. 3

II.  DEFENDANTS OFFER NO NEW LAW OR FACTS TO WARRANT RECONSIDERATION. ............................................................................................. 5

   A.   The Court has already considered and rejected Defendants' legal arguments. ... 5

   B.   Defendants' legal arguments are wrong on the merits. ......................................... 6

   C.   Defendants' new factual argument is also unavailing. .......................................... 8

III. NOTHING IN *CAPRON* JUSTIFIES RECONSIDERATION. ................................. 9

IV.  SANCTIONS ARE WARRANTED ...................................................................... 11

CONCLUSION ....................................................................................................... 14

## INTRODUCTION

Defendants have filed yet another motion to litigate the issue of preemption in continued disregard for this Court's authority. They did so under the pretense of preserving their appellate rights, while filing a motion that recycles old arguments and continues their pattern of maligning Plaintiffs' counsel rather that engaging in the facts and claims at issue in this case. Defendants cite the *Capron v. Office of the Attorney General of the Commonwealth of Massachusetts*, No. 17-2140 (1st. Cir. 2017) ("*Capron*") case that Cultural Care strategically filed as a collateral attack on this Court's earlier ruling on preemption as a reason to reconsider the Court's grant of partial summary judgment. Despite the findings of two district courts in two different jurisdictions that certain state and local employment laws are not preempted by the *au pair* regulations, Defendants now ask this Court to reconsider its ruling because Cultural Care has appealed the ruling of the second district court. In that appeal, the Department of State ("DOS") has indicated that it *may* file an amicus brief which *may* or *may not s*upport Cultural Care's effort to block the application of Massachusetts' Domestic Worker Bills of Rights ("DWBOR") – a law that Defendants concede is not at issue in this case – to *au pairs*.

The motion is not only unnecessary for its stated purpose, but also serves as another example of baseless motion practice this Court has warned the parties to avoid. Accordingly, Plaintiffs request that the Court deny Defendants' Motion for Reconsideration and issue an Order to Show Cause why sanctions should not be imposed for Defendants' counsels' vexatious litigation conduct.[1]

---

[1] Plaintiffs seek no sanctions against A.P.E.X. American Professional Exchange, LLC and 20/20 Care Exchange, Inc. d/b/a ProAuPair, which did not join the motion.

## **LEGAL STANDARD**

Where a party's motion seeks reconsideration of a non-final order, that motion falls within the Court's discretionary power to revisit and amend its interlocutory orders as justice requires. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008) ("The District Court's partial summary judgment ruling was not a final judgment. Thus, [plaintiff's] motion for reconsideration is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.").

"There are three major grounds justifying reconsideration of an interlocutory order: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Kennett v. Bayada Home Health Care, Inc.*, No. 14-cv-02005-CMA-MJW, 2016 WL 374231, at *1–2 (D. Colo. Feb. 1, 2016) (Arguello, J.) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Concomitantly, a motion to reconsider is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Id.* at *2. However, such motions are "inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)); *see also Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) ("Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider is not at the disposal of parties who want to rehash old arguments.... [a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence.")

2

(internal quotation marks and citation omitted). "Because the conditions that justify granting a motion to reconsider are rarely present, such motions are disfavored and should be equally rare." *Seabron v. American Family Mut. Ins. Co.*, No. 11-cv-01096-WJM-KMT, 2012 WL 3028224, at *1 (D. Colo. 2012).

## ARGUMENT

I. **DEFENDANTS' MOTION IS PART OF A PATTERN OF THEIR REFUSAL TO ACKNLOWLEDGE THE COURT'S AUTHORITY TO ADJUDICATE THE LAW AND EFFECTIVELY AND EFFICIENTLY MANAGE THIS LITIGATION.**

Contrary to Defendants' insinuations, ECF No. 1130 at 2, 7, this Court has the authority to "summarily" dismiss their preemption defense (i.e., without awaiting a response from them) and decline to entertain this issue for a fifth time. *See, e.g.*, *Smilde v. Mortg. Temps, Inc.*, 22 F. App'x 957, 958 (10th Cir. 2001) (affirming district court's summary denial of motion for reconsideration prior to receiving opposition brief). As their response-brief-turned-motion demonstrates, this is yet another example of Defendants' brazen refusal to acknowledge this Court's authority to make binding legal rulings. *See* Small Decl. Ex. A.

In order to seek a stay of discovery while their motions to dismiss were pending Defendants argued that preemption was a "threshold legal issue." *See* ECF Nos. 160 at 9-10. Judge Tafoya granted Defendants' requested discovery stay. *See* ECF Nos. 198, 218. Thereafter, Defendants lost on their motions to dismiss, both before Judge Tafoya, and this Court, who both held, as a matter of law, that federal law does not preempt the state and local wage laws at issue. ECF No. 240 at 28-32; ECF No. 258 at 27-29. Yet Defendants refused to accept that legally binding ruling, suggesting they were merely the Court's "preliminary thoughts" on the issue. ECF No. 924 at 5-6 n.2. To Plaintiffs' surprise, Defendants next began deposing *au pairs* about the cultural exchange aspects

3

of the program, on the basis that the testimony would somehow provide evidence of Congressional intent.[2] *See* ECF No. 969 at 3.[3] After motion practice on the proper scope of discovery for FLSA opt-ins, the Court ruled that Cultural Care could "not ask questions regarding its preemption defense" and noted that "were the Court to entertain Defendants' position on preemption, the deponents' beliefs and experiences would have no bearing on the Court's legal analysis of Congress's intent." *Id.* As the Court noted, Defendants also recycled their preemption arguments at summary judgment, without acknowledging that the Court had already ruled against them. ECF No. 1126 at 15-16.

In short, the Court has now held four times that Plaintiffs' state law wage claims are not preempted as a matter of law, ECF No. 240 at 28-32; ECF No. 258 at 27-29; ECF No. 969 at 3; ECF No. 1126 at 12, and Defendants have repeatedly refused to accept those rulings as binding law. Indeed Defendants now characterize the Court's grant of summary judgment on this issue—which is binding and final—as an "interim ruling on preemption." ECF No. 1130 at 3. And despite admitting that the "Court is

---

[2] Setting aside that there were no facts to discover because the preemption defense at issue here is purely legal, Cultural Care also violated black letter legal principles when it purported to conduct discovery on a defense that had already been dismissed from the case. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) ("it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken"); *Millennium Marketing Group, Ltd. v. Simonton Bldg. Products, Inc.*, No. 08-2198-JWL-DJW, 2009 WL 2407723, at *7 (D. Kan., Aug. 4, 2009) ("courts have repeatedly held that it is proper to deny discovery of information that is relevant only to claims or defenses that have been dismissed"); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 634 (2011) ("pre-emption is an affirmative defense").

[3] Defendants claim that Plaintiffs attempted to develop facts to rebut their preemption defense by seeking "evidence relating to DOS's interpretation of its own regulations through discovery." ECF No. 1130, at 4. Not so. Plaintiffs have brought numerous claims in this action that have nothing to do with Defendants' preemption defense, including antitrust, racketeering, fraud, breach of fiduciary duty and others. Plaintiffs sought evidence regarding DOS's communications with Defendants as potentially relevant to Defendants' "the Government made me do it" argument they have raised in response to various of Plaintiffs' non-state law wage claims.

highly unlikely to revisit this issue," they have challenged the Court to rule yet again on an issue for which the appellate record is already robust. *Id.* at 1. Accordingly, Plaintiffs urge the Court to summarily deny Defendants' motion, and award fees and costs for this latest round of baseless motion practice.

## II. DEFENDANTS OFFER NO NEW LAW OR FACTS TO WARRANT RECONSIDERATION.

### A. The Court has already considered and rejected Defendants' legal arguments.

Defendants argue that Plaintiffs misled the Court into overlooking case law where courts applying a preemption rule had to consider antecedent facts. ECF No. 1130 at 2, 10-13. Plaintiffs did no such thing. In fact, the Court already rejected and considered such case law.

In their effort to develop "facts" from individual *au pairs* about their failed preemption defense, Defendants cited non-binding cases for the proposition that certain preemption defenses can turn on antecedent factual questions. *See* ECF No. 924 at 5-6 & n.3 (citing *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010); *Samuel R. Jahnke & Sons, Inc. v. Blue Cross/Blue Shield of Kan.*, No. 10-4098-JTM, 2011 WL 4526778 (D. Kan. Sept. 28, 2011); *Prejean v. Foster*, 227 F.3d 504 (5th Cir. 2000)). In response, Plaintiffs explained why each of those cases was inapposite. *See* ECF No. 951 at 6-7 & n.3. Having considered the parties' arguments, the Court held that Cultural Care could not ask questions regarding its preemption defense because, as discussed above, those questions were irrelevant to "the Court's legal analysis of Congress's intent." ECF No. 969 at 3.

Defendants now cite different cases for the same proposition that, in the abstract, a legal ruling on preemption may require resolution of antecedent factual disputes. ECF

5

No. 1130 at 11-12 & n.3 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988); *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901 (6th Cir. 2007); *In re Fosamax Alendronate Sodium Prods. Liab. Litig.*, 852 F.3d 268 (3d Cir. 2017)).  But none of these cases are new; all were decided well before Defendants' most recent filings arguing preemption.  Their motion for reconsideration is therefore an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."  *Kennett*, 2016 WL 374231, at *2.

**B. Defendants' legal arguments are wrong on the merits.**

Defendants' framing of their newly cited cases is also wrong on the merits.  Although preemption itself is a "purely legal question," as the Tenth Circuit has acknowledged, applying that legal rule to the particular facts of a given case sometimes requires resolving antecedent or ancillary factual disputes.  *See Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1342-43 (10th Cir. 2015) (Gorsuch, J.) (acknowledging that "an antecedent dispute of material fact," such as whether a particular medical device is of the type to which a legal preemption rule applies, could preclude summary judgment on a preemption defense, but noting that preemption itself is a "purely legal question").  This is not such a case.  Here, all *au pairs* are subject to the federal regulations Defendants claim preempt state wage laws.  Accordingly, all of the *au pairs*' state wage claims at issue in this case are either preempted, or they are not.  There are no antecedent facts to be discovered or factual disputes to be resolved before a judgment on this issue can be made as a matter of law.

Indeed Defendants' newly cited authorities are just as inapposite as those they previously cited for the same proposition.  In each new case there were antecedent or

6

ancillary disputes of fact that needed to be resolved in order for the court to apply the legal preemption defense at issue.

In *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), the issue was whether the defendant had met the factual elements of the so-called military contractor defense (not federal preemption doctrine), which immunizes a contractor from state tort law claims. *Id.* at 512-14.

Similarly, *In re Fosamax Alendronate Sodium Prods. Liab. Litig.*, 852 F.3d 268 (3d Cir. 2017) held that whether a particular preemption defense applied turned on a disputed fact regarding an FDA labelling change, which it noted was a "question of fact for the jury." *Id.* at 293. However, the Third Circuit emphasized that, like here, "most preemption cases present purely legal questions—for example, whether Congress intended to preempt state law, how to interpret the scope of an express preemption provision, or whether two regulatory schemes are facially incompatible." *Id.* at 288.

Finally, *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 913 (6th Cir. 2007) is also unavailing. That court held that whether a particular security offering was immune from state registration requirements required resolution of disputed ancillary facts to determine whether the offering was covered under federal law. As with *Boyle* and *Fosamax* (and the case law Defendants previously cited for this exact same point, *see* ECF No. 924 at 5-6 & n.3), preemption itself in *Brown* was a legal issue, and its application turned on specific disputed facts. *Id.* at 913-14.

Here it is undisputed that all *au pairs* are subject to the DOS regulations. Moreover, the question of whether those regulations preempt state and local wage laws

7

...

is a purely legal one that turns on Congressional intent and statutory and regulatory interpretation, matters that are solely for this Court to decide.

### C. Defendants' new factual argument is also unavailing.

Defendants also raise a new argument regarding a "factual dispute" they claim precludes summary judgment on preemption: that state and local wage laws are preempted if they would increase financial costs for host families to participate in the *au pair* program. In other words, Defendants claim that the *au pair* program was intended to be a source of cheap foreign childcare workers for American families, and that any state law that would increase the cost of *au pair* labor must be preempted.

Whether adhering to state and local minimum wage laws raises costs to families is irrelevant to the question of whether Congress intended the DOS regulations to preempt such laws. Those regulations say nothing at all about *au pairs* being a low cost childcare option for American families. Indeed, one would imagine that if Congress intended for *au pairs* to be a cheap foreign alternative to domestic child care providers (who must obey state wage laws), Congress would have explicitly said so.[4] *See, e.g.*, 29 U.S.C. § 1144(a) (in the employee benefit context, Congress was explicit that the ERISA "shall supersede any and all State laws" for plans ERISA covers.); *see also Gross v. Sun Life Assur. Co. of Canada*, 734 F.3d 1, 5-6 (1st Cir. 2013). But to the contrary, the regulations at issue here explicitly contemplate the application of federal and state laws. *See* 22 C.F.R. § 62.31(j)(1). On Defendants' logic, state laws touching

---

[4] The reality is that keeping *au pairs* underpaid is Defendants' objective, not Congress's, because it allows Defendants to reap millions more in profits from the fees they charge to host families for each *au pair* placement. As Plaintiffs have argued extensively, if *au pairs* are paid more for their labor, Defendants worry that they will have to lower the fees they charge host families, which in some cases almost equals an *au pair*'s yearly salary. *See* ECF No. 240 at 6, 12.

8

upon federally-regulated subject matter would be routinely preempted if vague assertions of additional costs could establish preemption, when in fact compliance with state laws often implies higher costs.  See *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 89 (1st Cir. 2011) (rejecting argument that state law preempted when it would raise costs for consumers).  Further, the "newly discovered" evidence they cite is a deposition of Plaintiffs' expert that occurred on December 21, 2017, *see* ECF No. 1130 at 12, long before the motions for summary judgment were filed, evidence that was "available at the time of the original motion."  *Kennett*, 2016 WL 374231, at *2.

In short, Defendants raise no new facts or controlling law that warrant reconsideration.

### III.  NOTHING IN *CAPRON* JUSTIFIES RECONSIDERATION.

Defendants accuse Plaintiffs of omitting "a new and crucially important regulatory development: the United States is poised to announce the Department of State's ("DOS") official interpretation of the regulations that govern the *au pair* program on September 11, 2018."  ECF No. 1130 at 2; *see also id.* at 3 ("Indeed, Plaintiffs failed to mention that DOS was considering the issue at all in their Motion.").  This is inaccurate and misleading several times over, but in any event nothing in this "development" warrants reconsideration.

Plaintiffs' motion to clarify summarized the *Capron* litigation, including the appeal, and attached Cultural Care's own filing from *Capron* discussing the First Circuit's invitation to the DOS to submit an amicus brief.  See ECF No. 1118 at 11 & 1118-2.  As Cultural Care explained in that filing, it submitted a "Response to Motion to Clarify Court Order and Attached Letter to U.S. Department of State, and Statement of Additional Authority" in opposition to a motion filed by the Massachusetts Attorney General

9

seeking to clarify the First Circuit's letter to DOS soliciting an amicus brief.  Thus, far from obscuring this point, Plaintiffs affirmatively put Cultural Care's own document about the issue before the Court.

Moreover, there has been no "development."  Cultural Care's appeal in *Capron* has been pending since November 21, 2017, long before Defendants' summary judgment briefing was filed, or before Cultural Care began purporting to depose individual *au pairs* about preemption.  As the letter Defendants attached to their Motion shows, the Solicitor General, which represents the DOS, *may* file an amicus brief "***if*** authorized to do so."  ECF No. 1130-11 (emphasis added).  As is often the case, the Solicitor General may also decide not to file a brief.  Even if he does file a brief, the First Circuit could affirm the decision below (finding no preemption) based on the plain text of the regulation or give the brief little deference.[5]  And even if the First Circuit rules in Cultural Care's favor, that ruling would not be controlling law that binds this Court.  *See*

---

[5]  Even if the Solicitor General were to file a brief supporting Defendants' position, this Court need not defer to it.  The plain text 22 C.F.R. § 62.31(j) incorporates state and local law per the FLSA's savings clause, and it emits of no exception here.  *See* ECF No. 258 at 28.  However, to the extent any of DOS's interpretations is entitled to deference, it is the one set forth in the Wilberforce Pamphlet (that *au pairs* are entitled to the higher of the federal, state, or local wage).  As the considered product of Congressional legislation, *see* 8 U.S.C. § 1375b, and public notice and comment, it embodies precisely the gap-filling administrative function that *Chevron U.S.A. Inc. v. Natural Resources Def. Counc., Inc.*, 467 U.S. 837 (1984) and *U.S. v. Mead Corp.*, 533 U.S. 218 (2001) contemplate.  Because this interpretation has remained unchanged for nearly a decade, because it is not "clearly erroneous" or contrary to any statute or regulation, and because it was not advanced for the first time as a litigating position or post hoc rationalization, the Court should afford it substantial weight.  *Cf. Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012).  Were DOS to take a contrary position now, such an inconsistent position would be entitled to minimal deference.  *See Succar v. Ashcroft*, 394 F.3d 8, 36 (1st Cir. 2005) (An "agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.3 (1987)).

*Kennett*, 2016 WL 374231, at *1–2 ("intervening change in the **controlling** law" is a ground for reconsideration) (emphasis added). Thus, even if the First Circuit's ruling were binding on this Court (and it is not), Defendants' motion would at best be grossly premature and filing at this juncture (before DOS has decided whether to file a brief and before the First Circuit has ruled) only serves to unnecessarily multiply proceedings.

**IV. SANCTIONS ARE WARRANTED.**

Pursuant to 28 U.S.C. § 1927 (hereinafter "section 1927"): "Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In determining whether an attorney should be subject to sanctions under section 1927, the Tenth Circuit has rejected a subjective good faith inquiry in favor of an objective analysis. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir.1998). If an attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court," he is responsible for the excess costs, expenses, and attorney fees caused by his lack of care. *Id.* (internal quotations and citation omitted). "Sanctions are appropriate, then, when an attorney is cavalier or 'bent on misleading the court' . . . [or] intentionally acts without plausible basis . . . " *Id.* (internal citation omitted). District courts also have "inherent power . . . to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Shields v. Shelter*, 120 F.R.D. 123, 127 (D. Colo. 1988) (awarding attorneys' fees as a sanction for a frivolous motion for reconsideration) (citations and quotation marks omitted).

11

Plaintiffs respectfully submit that Defendants' counsel's conduct with respect to this motion meets this standard. This Court has repeatedly warned the parties not to needlessly file motions and cause "unnecessary, unprofessional delays." *See, e.g.*, Smalls Decl. Ex. B (Aug. 25, 2017 Hr'g Tr. at 6:8-10) ("if I get a sense that any of you are filing frivolous motions or being needlessly obstructive, I will not hesitate to impose sanctions"); *cf.* ECF No. 905 at 5. And Defendants have repeatedly refused to acknowledge that this Court has issued binding rulings against them.[6] As discussed above, Cultural Care forced over thirty *au pairs* to sit through hours of deposition questions on a matter that was not even subject to discovery, given that the Court had already resolved Defendants' preemption defense the prior year. Ignoring that, Cultural Care initiated additional motion practice around the issue. Meanwhile, other Defendants joined Cultural Care to re-litigate the preemption issue at summary judgment. Following all of that, Defendants now seek to re-litigate the issue again, based on a meritless motion that simply raises arguments that were (or could have been) raised before, under the pretense of preserving the record for appeal.[7]

---

[6] As here, after Cultural Care's preemption defense was dismissed in the *Capron* district court, Smalls Decl. Ex. D, it moved for reconsideration. Smalls Decl. Ex. E [39]. The district court denied that reconsideration motion because it "largely reiterate[d] prior arguments and d[id not] demonstrate a manifest error of law." Smalls Decl. Ex. F at 2.

[7] In weighing sanctions, the Court should also consider the value of deterrence, given that this is not the first baseless motion for reconsideration Defendants have filed in recent months. *See White v. GMC*, 908 F.2d 675, 684-85 (10th Cir. 1990) (sanctions are an opportunity to deter future misconduct). Defendants filed a baseless motion to reconsider the Court's exclusion of paid "fact" witness Stanley Colvin's summary judgment testimony. *See* ECF No. 1086. That motion raised no new law, new facts, or errors, but instead voiced disagreement with the Court's ultimate decision, and retread arguments Defendants had already made in the underlying motion. *See* ECF No. 1101. After the Court's June 19, 2018 summary judgment order (ECF No. 1102) admittedly mooted their motion, their reply brief argued that they were entitled to reconsideration because the Court had not addressed all of their original arguments—ignoring the

12

Mindful of the Court's admonitions, during the meet and confer over Defendants' instant motion, Plaintiffs clearly advised Defendants' counsel that there was no basis for reconsideration and that Plaintiffs would oppose this motion.  Smalls Decl. Ex. A.  Defense counsel responded that they had already drafted a brief and that filing it was the only way to preserve their clients' rights on appeal.  *Id.*  In an effort to compromise, Plaintiffs offered that if appellate waiver were truly the purpose of their motion, Plaintiffs would consent to Defendants' filing a short notice objecting to the Court's decision, which would require no response from Plaintiffs.  *Id.*  Defense counsel did not respond.  Instead, Defendants went ahead and filed this motion, which is a thinly veiled attempt to re-litigate the preemption issue for a fifth time.

Motions for reconsideration are not required to preserve appellate rights, where, as here, the issues have been litigated extensively in the trial court.  Also, that Defendants already had a brief prepared and "repurposed" it into a motion does not support reconsideration, but instead supports sanctions.  *See Shields*, 120 F.R.D. at 126 ("A motion for reconsideration is not a license for a losing party's attorney to get a 'second bite at the apple' by using a word processor to move around the paragraphs from a previously submitted brief, and file a retread of the old brief disguised as a motion for reconsideration.").  Because there were no legitimate grounds for moving to reconsider, and because Plaintiffs offered Defendants an opportunity to preserve their rights without needlessly multiplying these proceedings, Plaintiffs seek to recover their fees associated with opposing Defendants' motion.

---

power of the Court to decide motions on the legal grounds it determines most appropriate.  *See* ECF No. 1112 at 3.

13

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion and issue an Order to Show Cause why attorney sanctions should not be imposed.

Dated: August 15, 2018

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

  /s/ *Dawn L. Smalls*
Matthew L. Schwartz
Peter M. Skinner
Randall W. Jackson
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1410 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

**Certificate of Service**

I hereby certify that on August 15, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                         */s/ Dawn L. Smalls*
                                                        Dawn L. Smalls