**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-03074-CMA

**JOHANA PAOLA BELTRAN;**
**LUSAPHO HLATSHANENI;**
**BEAUDETTE DEETLEFS;**
**ALEXANDRA IVETTE GONZALEZ;**
**JULIANE HARNING;**
**NICOLE MAPLEDORAM;**
**LAURA MEJIA JIMENEZ;**
**SARAH CAROLINA AZUELA RASCON;**
**CATHY CARAMELO;**
**LINDA ELIZABETH;**
**GABRIELA PEREZ REYES, and those similarly situated,**

**Plaintiffs,**

**v.**

**INTEREXCHANGE, INC.;**
**USAUPAIR, INC.;**
**GREATAUPAIR, LLC;**
**EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT AUPAIR;**
**EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;**
**CULTURAL HOMESTAY INTERNATIONAL;**
**CULTURAL CARE, INC., d/b/a CULTURAL CARE AU PAIR;**
**AUPAIRCARE INC.;**
**AU PAIR INTERNATIONAL, INC.;**
**APF GLOBAL EXCHANGE;**
**NFP, d/b/a AUPAIR FOUNDATION;**
**AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a AU PAIR IN AMERICA;**
**ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GOAUPAIR;**
**AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GOAUPAIR;**
**GOAUPAIR OPERATIONS, LLC, d/b/a GOAUPAIR;**
**AGENT AU PAIR;**
**A.P.E.X., AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a PROAUPAIR; and**
**20/20 CARE EXCHANGE, INC., d/b/a THE INTERNATIONAL AU PAIR EXCHANGE,**

**Defendants.**

_____

**REPORTER'S TRANSCRIPT**
**(Status Conference)**

_____

*DARLENE M. MARTINEZ, RMR, CRR*
*United States District Court*
*For the District of Colorado*

Proceedings before the HONORABLE CHRISTINE M. ARGUELLO, Judge, United States District Court, for the District of Colorado, commencing at 9:00 a.m. on the 15th day of August, 2018, Alfred A. Arraj United States Courthouse, Denver, Colorado.

### A P P E A R A N C E S

**FOR THE PLAINTIFFS:**
PETER M. SKINNER, MATTHEW L. SCHWARTZ, and SEAN P. RODRIGUEZ, Boies Schiller & Flexner, LLP, 575 Lexington Ave., 7th Floor, New York, NY 10022
ALEXANDER N. HOOD, Towards Justice, 1410 High Street, Suite 300, Denver, 80218

**FOR DEFENDANT CULTURAL CARE, INC.:**
JOAN A. LUKEY and JUSTIN W. WOLOSZ, Choate, Hall & Stewart, LLP, Two International Place, Boston, MA 02110
JAMES M. LYONS and DIANE R. HAZEL, Lewis Roca Rothgerber Christie, LLP, 1200 17th St., One Tabor Center, Suite 3000, Denver, CO 80202

**FOR DEFENDANTS AGENT AU PAIR, AMERICAN CULTURAL EXCHANGE, LLC, AU PAIR INTERNATIONAL, INC., GOAUPAIR OPERATIONS, LLC:**
KATHERINE REILLY and BRETT M. MULL, Wheeler Trigg O'Donnell, LLP, 370 17th St., Suite 4500, Denver, CO 80202

**FOR DEFENDANT AUPAIRCARE, INC.:**
THOMAS B. QUINN and PEGGY E. KOZAL, Gordon & Rees, LLP, 555 17th St., Suite 3400, Denver, CO 80202

**FOR DEFENDANT 20/20 CARE EXCHANGE, INC.:**
LAWRENCE D.  STONE, Nixon Shefrin Hensen Ogburn, P.C., 5619 DTC Parkway, Suite 1200, Greenwood Village, CO 80111

**FOR DEFENDANT CULTURAL HOMESTAY INTERNATIONAL:**
JONATHAN S. BENDER, Holland & Hart, LLP, 555 17th St., Suite 3200, Denver, CO 80202

**FOR DEFENDANT GREAT AUPAIR, LLC:**
MARTIN J. ESTEVAO, Armstrong Teasdale, LLP, 4643 S. Ulster St., Suite 800, Denver, CO 80237

**FOR DEFENDANT AMERICAN INSTITUTE FOR FOREIGN STUDY:**
ROBERT M. TUCKER, Ogletree Deakins Nash Smoak & Stewart, P.C., 599 Lexington Ave, 17th Floor, New York, NY 10022

### A P P E A R A N C E S (Cont'd)

**FOR DEFENDANT APF GLOBAL EXCHANGE, NFP:**
SUSAN M. SCHAECHER, Fisher & Phillips, LLP, 1801
California St., Suite 2700, Denver, CO 80202

**FOR DEFENDANT INTEREXCHANGE, INC.:**
BROOKE A. COLAIZZI, JOSEPH H. HUNT, ALYSSA L. LEVY, and
HEATHER F. VICKLES, Sherman & Howard, LLC, 633 17th St.,
Suite 3000, Denver, CO 80202

**FOR DEFENDANT EURAUPAIR INTERCULTURAL CHILD CARE PROGRAM:**
MARTHA L. FITZGERALD, DAVID MESCHKE and MARTINE T. WELLS,
Brownstein Hyatt Farber Schreck, LLP, 410 17th St., Suite
2200, Denver, CO 80202

**FOR DEFENDANT USAUPAIR, INC: (Telephonically)**
WILLIAM J. KELLY, III, Kelly & Walker, LLC, 1512 Larimer
St., Suite 200, Denver, CO 80202

**FOR DEFENDANT EXPERT GROUP INTERNATIONAL, INC:**
BOGDAN ENICA, Bogdan Enica, Attorney at Law, 111 2nd Ave,
NE, Suite 213, St Petersburg, FL 33701-3440

```
 1                    AUGUST 15, 2018

 2          (Proceedings commence at 9:00 a.m.)

 3          THE COURT:  You may be seated.

 4          Court calls Civil Case No. 14-cv- 03074-CMA,

 5     encaptioned Johana Paola Beltran, et al v. InterExchange,

 6     Inc., et al.

 7          Counsel, would you please enter your appearances.

 8          MR. SKINNER:  Good morning, Your Honor, Peter

 9     Skinner, from Boies Schiller, on behalf of plaintiffs.  I

10     am joined by colleague Matthew Schwartz and Sean

11     Rodriguez, also from Boies Schiller, and Alex Hood, from

12     Towards Justice.

13          MS. LUKEY:  Good morning, Your Honor, Joan Lukey

14     for Cultural Care.  And with me, at the table behind, is

15     my partner, Justin Wolosz.  And my colleagues on this case

16     James Lyons, and in the back, also a colleague, Diane

17     Hazel.

18          THE COURT:  Good morning.

19          MS. REILLY:  Good morning, Your Honor.  I'm Katie

20     Riley, with Wheeler Trigg O'Donnell, on behalf of

21     GoAuPair, Agent Au Pair, and Au Pair International.

22          THE COURT:  Good morning.

23          MR. QUINN:  Good morning, Your Honor, Tom Quinn on

24     behalf of AuPairCare.  And Peggy Kozal is with me from my

25     firm.
```

1           THE COURT:  Good morning.

2           MR. STONE:  Good morning, Your Honor.  I'm Larry

3    Stone.  I'm appearing on behalf of A.P.E.X. and 20/20.

4           MR. BENDER:  Your Honor, Jon Bender from Holland &

5    Hart, for defendant Cultural Homestay International.

6           THE COURT:  Good morning.

7           MR. ESTEVAO:  Good morning, Your Honor, Martin

8    Estevao with Armstrong Teasdale, for GreatAuPair.

9           MR. TUCKER:  Good morning, Your Honor, Robert

10   Tucker from Ogletree Deakins, for defendant American

11   Institute for Foreign Study.

12          THE COURT:  Good morning.

13          MS. MULL:  Good morning, Your Honor, I am Brett

14   Mull from Wheeler Trigg, on behalf of GoAuPair, Au Pair

15   International, and Agent Au Pair.

16          THE COURT:  Good morning.

17          MS. SCHAECHER:  Good morning, Your Honor, Susan

18   Schaecher on behalf of APF Global.

19          MS. COLAIZZI:  Good morning, Your Honor, Brooke

20   Colaizzi, Heather Vickles, and Alyssa Levy and Joseph

21   Hunt, representing InterExchange.

22          MS. FTZGERALD:  Good morning, Your Honor, Martha

23   Fitzgerald, David Meschke, and Martine Wells from

24   Brownstein Hyatt, for EuRaupair InterCultural Child Care

25   Programs.

1          THE COURT:  Good morning.

2          I understand we have folks on the phone.

3          COURTROOM DEPUTY:  Yes, Your Honor.

4          THE COURT:  Who all is on the phone?

5          MR. KELLY:  William Kelly, representing USAuPair.

6   Good morning.

7          MR. ENICA:  And Bogdan Enica, representing Expert

8   AuPair.  Good morning, Your Honor.

9          THE COURT:  I can't hear you.  You are coming in

10   real fuzzy.  Are you on a speaker phone?

11          MR. ENICA:  No, Your Honor.

12          THE COURT:  Can you repeat, because we couldn't

13   understand anything you said.

14          MR. ENICA:  I am Bogdan Enica on behalf of Expert

15   AuPair.

16          THE COURT:  Anybody else?

17          All right.  Well, good morning to all of you.  We

18   are here this morning at the parties' request to address

19   certain scheduling and other trial matters.

20          Before we start, I just want to thank you, because

21   this is a very different hearing than we had a year ago in

22   this courtroom.  I want to thank you all for the

23   professionalism that you have shown in working together on

24   this matter to get this case ready for trial.

25          It is apparent to me from the joint status report

 1    that you all filed that you have thoroughly reviewed my

 2    civil practice standards and that you have conferred with

 3    one another in good faith and have now come to me with

 4    respect to your suggestions as to how we should modify my

 5    procedures.  I want to thank you for that.  It makes my

 6    job so much easier when I have professional counsel

 7    interacting with each other in a professional manner.

 8         So, this case is set for a six-week jury trial, to

 9    begin on Monday, February 25, 2019, at 8:00 a.m.  If the

10    trial lasts the full six weeks, it would end on Friday,

11    April 5, 2019.

12         As your filings indicate, you are aware that the

13    trials in my courtroom are what I call a "condensed" trial

14    schedule.  And I just want to give you a little bit of

15    background as to why I do the condensed trial schedule.

16         In 2011, after I had been a judge for more than 3

17    years, I was called to serve on jury duty in Adams County,

18    where I live.  I originally called and told them I

19    couldn't do it because I was in the middle of a five-week

20    criminal trial, and said that the first time I could be

21    available would be December 19th; that was my two-week

22    vacation for Christmas.

23         I thought, they will never call me.  They called

24    me.  I showed up, and low and behold, it is a four-week

25    trial.  It was a special jury panel.  I was Juror No. 11,

1    so I knew I was in the box.  It took two days to pick that

2    jury.  And, low and behold, I was selected, and served on

3    that jury trial for four weeks.

4         What I learned was invaluable.  It is tough work to

5    sit in that jury box.  We tell them, you come in and you

6    have to sit there.  You cannot talk to anybody about this

7    case.  You cannot conduct any research.  You can't ask any

8    questions -- although, I have had a few trials where I

9    have allowed them to ask questions, just because we were

10   allowed to ask questions, and I think it keeps them

11   listening more attentively if they get to do that.  So

12   that is something I may consider for this trial if I think

13   the issues are complex enough that we need to have them

14   ask questions.

15        But, we bring them in, and they know nothing about

16   your case.  You have been working with this case for 4

17   years now.  And sometimes it is hard as an attorney to

18   step back and say, okay, let me start from square one.

19   Where was I back in 2014 when I first knew about this?

20        So, we put them in the box, we throw all of these

21   facts at them, give them all these exhibits and all these

22   names.  And, I will tell you, by 2:30 or 3 o'clock every

23   day, we were brain dead.  If we managed to keep our eyes

24   open after lunch, and most of us did, we weren't hearing

25   anything that you were presenting after 3 o'clock anyway.

 1          Then, so much time was wasted.  I thought we were

 2     very -- and I had been sitting here for 3 years, and I

 3     didn't realize how inconsiderate we were of these jurors.

 4     We would take -- we would be told it was a 15-minute

 5     break, and 45 minutes later we are still sitting in the

 6     jury deliberation room waiting, because the judge and the

 7     lawyers are going through legal matters.

 8          We are told that you have an hour and a half for

 9     lunch, and we finish our lunch in less than half an hour,

10     and then we twiddle our thumbs for a wasted hour.  And

11     then at the end of the day, we were let go in the middle

12     of traffic rush, so it took another hour to get home.  And

13     it was just a really eye-opening experience for me.

14          So I said, I am going to be much more considerate

15     of my jurors.  I am going to make it a better experience

16     for them than what I experienced.  And, I'm going to give

17     -- do the lawyers a favor, because I am not going to have

18     you present testimony when they are not listening any

19     more.  So we went to the condensed trial day.

20          We don't waste any time in this Court when the jury

21     is here.  We don't waste any time anyway, but we don't

22     spend their time doing legal matters.  We will conduct all

23     of the evidentiary issues and legal matters either before

24     trial in the morning, and you have to be here at 7:00,

25     7:30, depending how long you think the issues will take,

1    or we wait until after I excuse hem for the day, if I

2    don't have other hearing set.

3         We don't take care of legal matters when the jury

4    is here.  They come in at 8 o'clock.  If they are here, we

5    start promptly at 8:00.  We go 2 hours.  They take their

6    bathroom break.  And it is truly 15 minutes.  We don't

7    conduct any legal matters at that point.  They are not

8    allowed to leave that jury deliberation room.  I have

9    snacks in there that I bring in from Costco for them.

10        So, it is 15 minutes.  They come back in, and we do

11   another 2 hours.  Then we have a half hour for lunch.

12   They are told they need to bring lunch, because it is only

13   half an hour.  That is about at 12:15 to 12:45.  And then

14   we go from about 12:45 until about 2:45.  And we will do

15   this for this trial, because that will make it an even 6

16   hours.  And then I let them go home.

17        They are much happier.  They are getting out of

18   downtown Denver before traffic rush.  If they have kids,

19   they can go pick them up after school.  If they have other

20   jobs, they can go back to their office.  They love the

21   schedule.

22        The lawyers actually love the schedule, because

23   instead of going back to your office at 6 o'clock and

24   putting in another day's work getting ready, you get to go

25   back at 3 o'clock, and maybe you can be home for dinner

1    with your family.

2         But, it is so much more, I think, civil to the

3    jury.  And it actually is all but maybe half an hour of

4    the trial transcript time you would get in a regular 9:00

5    to 5:00 day, when you take all those long breaks.  So it

6    is not that much shorter of a trial day.

7         So that is the schedule that we are going to

8    follow.  So, essentially that means, then, if we go from

9    8:00 to 2:45, that will give you each 6 hours of what I

10   call "transcript time," which is when they are on the

11   stand or you are making opening or closing.

12        For six weeks, that mean we have 180 hours to divvy

13   up.  That is 10,800.  So, while, it may not sound like a

14   lot, that is a lot of time.

15        I will first say that I think the defendants'

16   strategy to select a principal trial team is a wise move.

17   I think that is one way you can make sure you can cover

18   everything you need to cover in the time you have

19   allocated to you.

20        Mr. Stone, I did read your filing on behalf of

21   A.P.E.X. and 20/20, and you indicate that your clients

22   "cannot agree with the proposals regarding trial length

23   and lead trial counsel."  I understand the lead trial

24   counsel.  What is your objection to the trial length?

25        MR. STONE:  Would you like me to speak at the

1    podium?

2         THE COURT:  Probably, because you have a softer

3    voice, and Ms. Martinez needs to pick it up.

4         MR. STONE:  The question related to trial length?

5         THE COURT:  Trial length.  You said they could not

6    agree to the trial length.

7         MR. STONE:  Your Honor, if you look at the joint

8    status report filed by the parties, the plaintiffs are

9    requesting --

10        THE COURT:  If you are talking what they want

11   versus what you all want.  In terms of the six weeks,

12   though, do you have an objection to the six weeks?

13        MR. STONE:  Yes, because plaintiffs want four

14   weeks.

15        THE COURT:  I am not giving them four weeks.

16        MR. STONE:  Defendants want three weeks.  What is

17   proposed doesn't account for our time.  And given the 6

18   hours that is available for trial time each day, we are

19   going to need two to three days to put on our case.  We

20   are facing a 2-and-a-half billion dollar exposure.  If

21   there ever was a case to afford us full-blown --

22        THE COURT:  When you say "we" need, is that just

23   your client?

24        MR. STONE:  Yes.  Yes.

25        THE COURT:  Your client needs two to three days to

1    put on its defense?

2         MR. STONE:  Right.  There are two clients, Your

3    Honor.  We represent two defendants in the lawsuit, yes.

4         THE COURT:  All right.

5         MR. STONE:  Our facts are unique to us, and there

6    is no other party defendant that has facts remotely

7    similar to ours.

8         THE COURT:  Why does that take two to three days to

9    present?

10        MR. STONE:  Because we have an expert.  We have a

11   number of witnesses.  We have cross-examination to

12   consider.

13        THE COURT:  All right.  So what are your witnesses,

14   including your expert, going to take two to three days to

15   present a defense?

16        MR. STONE:  Part of the difficulty of providing any

17   kind of accurate estimate is we have still yet to see the

18   parties' trial witness list or exhibits.  So, in part,

19   what I am doing is I am guesstimating.  But we have an

20   expert witness, our own separate antitrust expert witness

21   that I anticipate is going to take 3-plus hours to present

22   his testimony.  We have got a couple of company

23   representatives which need to tell a story.  There are a

24   number of exhibits we have put together.  There are

25   spreadsheets that will take some time to lay foundation

1     for.  That is going to take some time, as well.

2          THE COURT:  You can get away without having to lay

3     foundation if you can get together and stipulate as to

4     exhibits.  There is no reason you need to lay foundation,

5     unless there is a true reason, a valid reason to oppose

6     the introduction of an exhibit.

7          MR. STONE:  It is going to require explanation, as

8     well, even if it is admitted.  What I was referring to is

9     even if it is admitted -- I am not anticipating it is

10    going to take much time to lay a foundation if there is an

11    objection.  But these exhibits need to be explained as to

12    our unique circumstances.

13         We are going to have, potentially, the company

14    accountant testify as a witness.  And there is

15    cross-examination that needs to be factored in.  And

16    that's my estimate, Your Honor.

17         THE COURT:  All right.  Thank you.

18         MR. STONE:  Thank you.

19         THE COURT:  I understand your objection to, or your

20    clients' objections to having other lead trial counsel

21    represent them in this case based on their position that

22    they're uniquely distinct from the other defendant

23    sponsors.  So I understand that reluctance.

24         I think that your proposal of being able to make

25    some limited opening and closing, presenting testimony of

1   your client's expert and, as you indicated, selectively

2   examining certain witnesses, is a reasonable one.

3        If your clients thinks that is what is needed for

4   their defense, then my suggestion is you need to

5   coordinate that with the principal trial team and figure

6   out how you can streamline it.  But this Court has no

7   intention of precluding any party from defending

8   themselves fully in this case.  You will have to work that

9   out with each other; meaning how you will get all of the

10  evidence in you need for your defense with one another.

11  But I am not going to step into that.  I think your

12  proposal is reasonable.

13       All right.  With respect to the 180 hours or 10,800

14  minutes of transcript time, how that will be split, the

15  Court appreciates the plaintiffs' sentiment that this

16  Court is well equipped to manage the trial in this case,

17  and that strict allocations of time are not necessary.

18       Unfortunately, my experience for the last 10 years

19  is that, in practice, this is not a problem with the

20  Court's management, it is actually counsels' need to turn

21  over every stone and spend unnecessary time examining and

22  cross-examining witnesses on issues that are not relevant

23  or only tangentially relevant.

24       So, for example, plaintiffs want four weeks to try

25  their case.  That would leave only two weeks for the

1    defendants.  That is a significant split, and it is not

2    going to happen.

3          In other cases I have had where we have had

4    situations like this, I have given plaintiffs a bit more

5    time than the defendants, because they do have the burden

6    of proof.  But it is not a 120/60 hour split.  That is not

7    reasonable.

8          And the defendants raise a good point; defendants

9    are doing all they can do to streamline the presentation

10   considering they have 15 different businesses and

11   organizations that are defending against the dozens of

12   claims that have been raised.  So it is going to be a time

13   consuming matter for the defendants, as well.

14         So, I don't know, Ms. Lukey, are you kind of lead

15   counsel here?

16         MS. LUKEY:  I am, Your Honor.

17         THE COURT:  All right.  Very good.  In the

18   briefing, the status report you all submitted, you

19   indicated that there were a number of key defenses,

20   including condition precedent and statute of limitations

21   that will take significant trial time.  Explain that to

22   me.

23         MS. LUKEY:  In this case, there are 29 classes and

24   subclasses.  Where we think the issue is going to arise

25   relates to the state classes or subclasses that you have

1    certified.  Those include, of course, the state labor

2    claims, but, in addition, they include fraud, negligent

3    misrepresentation, the consumer protection statute as to

4    four defendants.  There is a national RICO claim.  On the

5    consumer protection claims, the state labor claims, and

6    the common law claims for negligent misrepresentation or

7    fraud, every state has different prerequisites.

8         Just by way of example, because my own state is

9    Massachusetts, that is one of the subclasses, they have

10    asserted a 93(a) claim, which is a consumer protection

11    claim, which has unique prerequisites, including proof.

12    They sent a demand letter ahead of time, then certain

13    procedural steps.

14         We were hoping we may have streamlined the case and

15    got some of that out.  But, if those are in, we have to go

16    through the elements of each of the state claims for the

17    29 classes and subclasses.

18         THE COURT:  Right.  Plaintiffs have to do that.

19    You just have to disprove one of them.

20         MS. LUKEY:  Right.  But we might well have evidence

21    that disproves more than one.  I am not saying we will use

22    an inordinate amount of time on that, but given we have a

23    trial team that is acting for all of the defendants except

24    Mr. Stone's clients, we are in a position where we need to

25    be sure we don't shortchange somebody in Virginia with

1    unique aspects of their consumer protection statute or

2    their statutes of limitation.  It puts a special burden --

3         THE COURT:  All right.  But if the statute of

4    limitation is a legal matter, why was this not raised in

5    the Motion for Summary Judgment?

6         MS. LUKEY:  They were.

7         THE COURT:  I don't remember seeing them.

8         MS. LUKEY:  I don't blame you for not remembering,

9    because given the natural limitations on summary judgment

10   papers and the nature of the situation, it naturally had

11   to be streamlined, or you would still be reading them now.

12   For that reason, some of these appear literally in a

13   subsection of two sentences.  No one will fault the Court

14   for not even noticing them.

15        We did the best we could.  We did preserve each of

16   them.  Unfortunately, it will take a little longer when

17   presenting to actually put in that evidence.

18        THE COURT:  Well, it seems to me that -- because,

19   to me, statute of limitation issues, unless there is a

20   factual dispute -- are there factual disputes as to when

21   they knew about their claim?

22        MS. LUKEY:  Yes, Your Honor.  It is a condition

23   precedent.  And the same thing on the consumer protection;

24   there have to be findings of when knowledge occurred or

25   when a cause of action occurred.

1          THE COURT:  So I couldn't do that as a matter of

2     law moving forward if I were to give you more time for

3     that single issue?

4          MS. LUKEY:  We could, Your Honor.  We could try to

5     do it.  But I have a feeling that Your Honor is probably

6     going to stumble upon some of these factual issues.

7     Perhaps we can work something out with the plaintiffs on

8     some of these, because the damages are all, frankly,

9     subsumed lesser than the major claimed damages.

10          They are correct, they pointed out to us they

11     shouldn't have to streamline because summary judgment was

12     denied on all of these.  We recognize that is their right.

13     But, it would be a lot easier for everybody if we could

14     reach an agreement that here is a condition precedent we

15     have to admit didn't occur or, okay, that is a short

16     statute of limitation in that state.

17          Perhaps we could be given a little time for that.

18     We would be very glad to brief them again with a little

19     more space, but I recognize that ultimately imposes more

20     burden on the Court.

21          THE COURT:  Well, I will just say, the plaintiffs

22     are going to have 3 weeks to present its case.  I will not

23     tell it how it should present its case.  But sometimes I

24     see everything in the kitchen sink thrown into these

25     Complaints, and when it gets down to trial, they start

1    cutting claims, because they're duplicative of what they

2    can get under the federal statutes, so the state claims

3    sort of go.

4         They are going to have to make that decision.  They

5    have three weeks to present both their case and rebuttal

6    case.  Maybe they will have an extra today because of the

7    burden of proof, but it will not be more than that.  So

8    hopefully we can get this streamlined.

9         Okay.  Well, that being said, then, until we can

10   pin down what are the remaining legal claims and the

11   affirmative defenses in this case and I have a list of

12   witnesses with the summary of their testimony and the

13   anticipated times for their examinations for both sides, I

14   can't make a decision as to how much time should be

15   allocated.

16        So I am reserving ruling on the allocation of time

17   until I get a witness list with anticipated times for

18   direct and cross-examination and a summary of that

19   witness' testimony and what elements and claims it goes to

20   or defenses.

21        The way I keep time -- I don't have the chess clock

22   that I hear some other judges have, but I may get one,

23   because it may make my job easier.  But I keep detailed

24   time.  Any time one side or another is on that podium, my

25   clock is running.  And I keep detailed track of that on an

1    Excel spreadsheet.

2        If you are on your feet doing openings, closings,

3    any examination, that time is allocated to one side or the

4    other.

5        I just finished trial of a case that I took over on

6    an emergency basis for Judge Babcock.  It was set for

7    eight days, and I had to bump a two-day trial that I had

8    the beginning of the second week to Thursday.  So I told

9    the parties, you truly have only eight days.

10        And, for reasons I don't really understand,

11    plaintiff called all or most of the defendant's witnesses

12    in its case-in-chief.  I just don't understand why

13    plaintiffs do that.  If a plaintiff -- if the witness is

14    not needed to prove an element of the plaintiff's case, I

15    don't understand why plaintiff would put -- why they would

16    call them in their case-in-chief.

17        Anyway, they did.  And, as a result, plaintiff took

18    a lot more time in examining the defense witnesses than

19    they would have done if they just let the defendant call

20    them and then cross-examined them.

21        One of those witnesses they kept on the stand for

22    more than four hours.  That was longer than they had put

23    the plaintiff on the stand.  And there was no reason that

24    her cross-examination could not have been done in an hour

25    and a half.  They were delving into everything.

1          And it was amazing how plaintiff was able to

2     streamline its witness list after that and reduce the time

3     that they took to examine when I told them they had 5

4     hours left to finish presenting their case, to

5     cross-examine the defense witnesses, and to do their

6     closing.  And if they ran out of time, that was too bad;

7     they were not going to get cross-examination or any time

8     for closing.  That trial moved much more smoothly after

9     that.

10          So, I am just telling you that as an example of you

11     all have to figure out how you are going to present your

12     case.  And you need to make sure you are not wasting time

13     on irrelevant or tangentially irrelevant stuff, and that

14     you move your case along, because it will come off both

15     sides.  If you want, I can give you at the end of each day

16     how much time you have used up.

17          But, that being said let's now get back to the

18     claims and defenses.  I am aware that there are a number

19     of ripe motions that need to be ruled on.  I have on my

20     list the plaintiffs' motion on attorney fees, Document No.

21     922.

22          There were various motions to decertify FSLA

23     collective action.  I think I have one, two, three, four,

24     five of those.

25          Certain defendants also filed motions to reconsider

1        the Court's order excluding the testimony of Stanley

2        Colvin.

3              And then there are certain defendant's motion for

4        reconsideration of the order on plaintiff's motion to

5        clarify.

6              I will get to these motions.  I am trying to

7        strategize how we can get these rulings out, but it will

8        probably not be any earlier than mid-October.  So that's

9        when I plan to have those rulings out.  If I can do them

10       sooner, we will try to get that done.

11             But, what are other -- in the motion there were, or

12       in the status report it is indicated there were several

13       key legal issues in the case that remain unresolved and

14       which will influence witnesses and exhibits.  Other than

15       these motion that I just identified, what other key issues

16       are unresolved?

17             MS. LUKEY:  That may have been our entry.

18             Did you have anything, Peter?

19             MR. SKINNER:  No.

20             MS. LUKEY:  Your Honor, among the key ones was at

21       the point when the issue first arose regarding how far

22       back discovery relating to au pairs should go.  The ruling

23       was entered that at least discovery would be permitted to

24       go back to a July date in 2009, and that the Court would

25       later, when presented with the arguments, decide how far

1    back to go.  Because the filing was in 2014, 2009 is

2    obviously longer than the statute of limitations.

3         But there is a contention of a continuing violation

4    and related doctrine asserted.  That needs to be decided.

5    Right now --

6         THE COURT:  I can't decide it if it is not before

7    me.  Are you all going to file something?

8         MS. LUKEY:  It was going to be one of the motions

9    in limine, depending on the timing, Your Honor.  But if

10   that isn't at an early enough date -- we have a difference

11   on several of these dates.  We asked to move things up so

12   we could figure out what our trial list actually was.

13        THE COURT:  They are more evidentiary issues or

14   unresolved issues, there are no legal issues that I will

15   need to decide before then.

16        MS. LUKEY:  Your Honor, if I can just have one

17   moment.  The joint employer issue you have left for

18   factual issues, so that is not one.  There is a legal

19   issue potentially -- although, again, some of these get

20   mixed with fact questions about whether au pairs'

21   acceptance of housing is voluntary, that becomes an

22   important one.

23        The overtime claim, if the overtime claim on the

24   state basis survives.

25        There is an issue as to what it means for a meal to

1    be furnished under the FLSA.  These are all ambiguity

2    issues that exist because the regulations, themselves,

3    don't give adequate definitions.

4          Are au pairs domestic workers, as defined in

5    various of the state statutes, because every state has a

6    different definition?  For example, Massachusetts just

7    changed its law to make -- to extend the domestic worker

8    statute to au pairs.  And there are other states that have

9    their own comparable requirements.

10         If state and local minimum wage laws apply, are

11   host families entitled to room and board credit and, if

12   so, what?

13         Again, whether these can be treated as pure

14   questions of law or mixed questions is difficult to say.

15         Do plaintiffs have to show hours worked on a

16   class-wide basis?  Typically FLSA requires overtime be

17   shown as hours actually worked.  The argument here, as I

18   know the Court is aware, is that because DOS, the

19   Department of State regulation, presume 45 hours, does

20   that mean we use 45 hours and assume all au pairs worked

21   more than 40 hours, worked 40 to 45 hours or not?  There

22   is, obviously, on that, there is a lot of deposition

23   testimony that varies and interrogatory responses that

24   vary.

25         THE COURT:  So there are a lot of issues, actually?

1          MS. LUKEY:  Yes.

2          THE COURT:  So, I agree, then, with defendants,

3   that in order to streamline the claims and the defenses,

4   we're going to have to move the deadlines up.  I think

5   having a Final Pretrial Order sooner rather than later is

6   better.  So I think the October 23rd date --

7          MR. SKINNER:  Your Honor, may we be heard on that?

8          THE COURT:  You may.

9          MR. SKINNER:  I think those are the issues that

10  will be resolved when we finalize the jury instructions.

11         THE COURT:  Exactly.  I was just getting to that.

12         MR. SKINNER:  I don't know why we can't address

13  most of these as a part of jury instructions.

14         THE COURT:  I agree with that.  But we need to move

15  the jury instruction deadline up.

16         MR. SKINNER:  We agree to that, and sought to bring

17  that up from what the defendants proposed doing in the

18  joint pretrial order in October.  It gives us six weeks to

19  put together all of our evidence.  We are supposed to be

20  getting witness lists, exhibits.

21         THE COURT:  Why don't we do jury instruction by

22  October 23rd.  That is the law.  That will streamline,

23  then, the claims.  If we can do the jury instructions by

24  October 23rd, we are that much further ahead, and that is

25  just related to what law is going to be involved.

1          That is going to require, however, though, I think,

2     that plaintiffs are going to have to decide what it is

3     going to move forward with, in terms of these claims,

4     because I think the Final Pretrial Order needs to come

5     shortly thereafter.

6          But, I think, having you work on the jury

7     instructions will help you focus on the law involved in

8     the claims, which will focus on the law and claims and

9     defense asserted and what is the law with respect to

10    those.

11         So, do you all think you can have -- well, and I

12    don't want two separate sets of instructions.  If you have

13    read my practice standards, you all need to confer on

14    this, as well, see what you can agree to and what you

15    can't agree to, then we can have briefing on that.  Do you

16    think October 23rd is a feasible timeline for the jury

17    instructions?

18         MR. SKINNER:  We think so, Your Honor.  We agree

19    with the Court that the time between now and October 23rd

20    is focusing on agreement of law and getting the Court's

21    clarification on that.

22         MS. LUKEY:  We think that is a fine date, Your

23    Honor.

24         THE COURT:  So, then, after you get at least

25    that -- and I may not be able to rule on it right away,

1     but you will know where you are at with respect to the

2     law.

3            How soon after that do you think you can get the

4     final pretrial order?  Because doing the jury instructions

5     will make you focus on who you have to call to meet those

6     elements or defenses.  You are going to have to figure out

7     what it is you want to move forward and what you are not

8     going to move forward, and keeping in mind that you have

9     three weeks to present all of this.

10           So, how much longer would you need after that?

11           MR. SKINNER:  Your Honor, I think, in light of the

12    fact that we will be getting the Court's ruling on the

13    other motions in October, we will be looking -- we will do

14    our best to reach an agreement with the defendants on the

15    jury instructions.  But I expect there will be a few

16    issues we will be looking for rulings on to help us focus

17    on streamlining.

18           I think we would be looking to put the joint

19    pretrial order in 2 months after October 23rd, and put us

20    out maybe trying to do it right before the holidays.

21           THE COURT:  All right.  Ms. Lukey?

22           MS. LUKEY:  Your Honor, we think that is too far

23    out.  We really do need to see each other's list of

24    witnesses.  And that raises another issue, which we will

25    come to in a moment.  We respectfully suggest -- we know

1    it is a lot of work to try to accomplish this in 30 days,

2    but so the parties legitimately have 2 months to get ready

3    for trial.

4            THE COURT:  I think that is reasonable.

5            MS. LUKEY:  We do have the one issue I alluded to a

6    moment ago.  As the Court knows, we could not communicate

7    with any au pairs, and cannot communicate with any

8    au pairs until we know who opted out, because we don't

9    know of the 141,000 or so who should have received notice,

10   we don't know who opted out and who is, therefore,

11   potentially represented by Boies Schiller.

12           We would respectfully ask that the names of opt

13   outs be provided to us on a rolling basis so that we can

14   reach out to au pairs.  Right now, on the witness lists

15   that were exchanged earlier, what we did is have a

16   category that said "au pairs to be identified," but we

17   couldn't identify them because we couldn't talk to them

18   yet.

19           If we can get that on a rolling basis, they should

20   be getting opt out notices now.  Nobody expects the opt

21   out notices to be a huge number or percentage.  But we

22   would like to be able to identify witnesses, and let them

23   know, in case they want to do depositions for discovery

24   purposes or in case we need to do it for trial

25   preservation purposes, because the au pairs are not in

1    Colorado.

2         THE COURT:  All right.  So, are you saying that

3    defendants intend or are anticipating calling as witnesses

4    au pairs who opted out?

5         MS. LUKEY:  Well, we have to call some au pairs, we

6    assume, to talk about their experience.  We expect they

7    are doing so -- in fact, we know they are.  The only way

8    we can do that is once we are free to talk to au pairs,

9    which can only happen --

10        THE COURT:  Because they are their clients.  I am

11   sorry, I missed that.

12        MS. LUKEY:  We haven't been able to talk to them

13   yet.  That is what we are hoping to do.  The opt out

14   process has been under way for a few months.

15        THE COURT:  Have you gotten any report?

16        MS. LUKEY:  No.

17        THE COURT:  Why haven't the opt out names been

18   provided to defense counsel?

19        MR. SKINNER:  I think they were only recently

20   requested.  We don't have a problem with producing these

21   on some form of rolling basis, as long as we know what is

22   meant by "rolling."  We envision we can give them names

23   and batches in a couple weeks or so.

24        THE COURT:  Okay.  Do you have names now that you

25   can give to them?

 1          MR. SKINNER:  We have to talk to the claims

 2     administrator, but the claims administrator should have

 3     the names.

 4          THE COURT:  So I think you should be able to get

 5     them a list of all who have opted out now within a week,

 6     and then every 2 weeks thereafter.  If there are others

 7     that come in, if you can tell your claims administrator to

 8     let them know so you can forward those on to defense

 9     counsel.

10          MR. SKINNER:  Fine, Your Honor.

11          THE COURT:  All right.  So, we will set the jury

12     instructions -- you all have to confer and get me the best

13     set of instructions you can have in terms of stipulating,

14     competing, or otherwise, by October 23rd.  By, then,

15     November 26 -- or do you not want to mess up your

16     Thanksgiving?  We can make it November 19th to have the

17     final pretrial order.

18          MR. SKINNER:  Your Honor, could we consider having

19     final pretrial order hinge off the Court's resolution of

20     whatever issues arise out of jury instructions?

21          THE COURT:  No, because that will go too late.

22          MR. SKINNER:  My concern is the final pretrial

23     order, if you force us to do it that early, we are now 3

24     months ahead of the start of the trial, and we are going

25     to end up being conservative and overly designate

1    witnesses and exhibits.  We like to try to be practical

2    and be as streamline as possible and give as realistic --

3          THE COURT:  Witnesses are not dependent on jury

4    instructions, they will are dependent on outstanding

5    motions.

6          MR. SKINNER:  Some may be dependent on jury

7    instructions.

8          THE COURT:  In what regard?

9          MR. SKINNER:  Depending on how the Court resolves

10   some of the instructions, if there are disputes with

11   respect to elements of state law claims and the like, if

12   we then look and say, now we know we have to prove this.

13         THE COURT:  There should be no dispute over what

14   the law is for the elements of the claim.  It is usually

15   the wording.  Usually it is the words of how you put it.

16         MR. SKINNER:  Your Honor, the reason I am reluctant

17   to agree to a deadline in November is that it is so far in

18   front of the trial.  And I expect so much trial

19   preparation work is going to be done in December, and even

20   into January.  And I would like to have all of the parties

21   benefit from the work that is done to try to streamline

22   our proof, and not just end up giving them -- just

23   overdesignating things in order to protect ourselves.

24   That doesn't help any of us.

25         THE COURT:  I do notice that is what most parties

1    do in a final pretrial order.  Because we are coming up so

2    quickly on this trial, I think the most I would be willing

3    to extend it is to December 3rd for the final pretrial

4    order.  December 3rd.

5            MR. SKINNER:  Very well.

6            THE COURT:  So, let's just go -- if you don't mind,

7    if you can take the status report, and we will go down

8    through that so I can make a clear record.

9            Does anything that I have done today change the

10   date of November 5th for defendants to provide updated

11   class member information, other than the opt outs?

12           MS. LUKEY:  No, Your Honor.

13           THE COURT:  All right.  So the November 5, 2018

14   deadline is adopted as the date that defendants will

15   provide updated class member information.  Coupled with

16   that is my ruling that I just gave that the opt outs will

17   be provided within a week, and then on a rolling basis

18   every 2 weeks thereafter to defendants.

19           The final pretrial order is now going to be due --

20   hold on.  I changed that date, but I forgot I had the

21   final pretrial conference.  Ms. West, is December 10th

22   available?  Maybe we do December 11th.  Mondays are not

23   good.

24           COURTROOM DEPUTY:  December 11th is available.

25           THE COURT:  All right.  Why don't we set, then, the

1    final pretrial conference for 9:00 a.m. on December 11th.

2    Does that work?

3         MS. LUKEY:  Your Honor, it works for me as lead.

4    It works for Mr. Quinn.  Ms. Riley is in trial in Florida.

5    If she can be excused for that particular conference, with

6    Mr. Quinn and I covering.

7         THE COURT:  That would be fine.

8         Mr. Skinner, does that work for plaintiffs?

9         MR. SKINNER:  We will make it work, Your Honor.

10   Thank you.

11        THE COURT:  So the final pretrial conference is set

12   for December 11th at 9:00 a.m.  And I will do my best to

13   work on the jury instructions and try to get that out to

14   you as soon as possible.  It's just going to depend on

15   what type of condition they are in when they get to me.

16        Sometimes -- and I don't think you all will do this

17   because you have been working very well together and you

18   are very professional, but sometimes it is just like they

19   expect me to do the jury instructions, so that is what I

20   get.

21        Hold on, I was just told that that is a trial week

22   for me.  I don't have a trial in there, though.  All

23   right.  We need to move it to 3 o'clock, because that is a

24   trial week, and my criminal trials go in there.  So, can

25   we move it to 3 o'clock on the 11th as opposed to 9:00?

1    Does that still work for both parties?

2         MR. SKINNER:  Yes, Your Honor.

3         MS. LUKEY:  Yes, Your Honor.

4         THE COURT:  All right.  So it is 3 o'clock.

5         All right.  That takes care of that.

6         Final class notice, does -- why is there -- that is

7    agreed to, November 27th.  Does that still work for

8    everybody?

9         MR. SKINNER:  Yes, Your Honor.

10        MS. LUKEY:  Yes, Your Honor.

11        THE COURT:  All right.  With respect to the Rule

12   702 motions, I also agree with defendants that the sooner

13   the better.  These things can take time.  So is there any

14   reason we can't do the defendants' proposed deadline?

15        MR. SKINNER:  Your Honor, the issue there is that

16   we don't want to have the Daubert motions before the

17   classes are finalized when we get final disclosure of

18   class information from the defendants.

19        THE COURT:  Why not?  What difference does it make?

20        MR. SKINNER:  We don't want to have our experts

21   testifying in a Daubert motion on evidence that is not yet

22   final.  We want the class to be final.

23        THE COURT:  I don't know that we are going to have

24   a hearing on it, it depends what the issues are that are

25   raised.

1          MR. SKINNER:  Fair enough, Your Honor.  But we

2    don't want to have a situation where we are supplementing

3    these Daubert motions based upon information that we

4    receive.  We agree with the defendants, we want to get the

5    Daubert issues resolved as soon as possible.  The reason

6    we asked for the date we asked for is so it falls after we

7    get the final information from them, so we know what the

8    classes are.

9          MS. LUKEY:  I am sorry, I don't know what

10   information he is waiting for from us that relates to the

11   Daubert motions.

12         THE COURT:  I don't either.

13         MR. SKINNER:  We are going to be getting the final

14   information as to composition of the class not until

15   November 5th.

16         THE COURT:  That is not from the defendants.

17         MR. SKINNER:  Defendants would be giving us

18   information.

19         THE COURT:  That updated list --

20         MR. SKINNER:  Yes, exactly.

21         THE COURT:  -- on November 5th?

22         MR. SKINNER:  Yes, exactly.

23         THE COURT:  So you need maybe a little bit later

24   than November 9th?

25         MR. SKINNER:  Yes, Your Honor.

1           THE COURT:  So we could do November 19th.

2           MR. SKINNER:  We will make it work.

3           THE COURT:  All right.

4           MS. LUKEY:  Fine, Your Honor.

5           THE COURT:  All right.  Then that would shift,

6     then, opposition.  Can we just leave those the same?  The

7     7th would give you 2-and-a-half weeks for the opposition.

8     We leave that the same, and revise the 21st, so we don't

9     have to shift anything but the first date, which is the

10    19th.

11          MR. SKINNER:  That works for the plaintiffs, Your

12    Honor.

13          MS. LUKEY:  That is fine for the defendants, Your

14    Honor.

15          THE COURT:  All right.  Motions in limine.  I am

16    okay with January 18th, but I do think if there are issues

17    that have been raised, it is better you get them in to me

18    sooner rather than later.  So even if I set the 18th, if

19    you want to do motions in limine, that gives me more time

20    to review it and gives me more time to rule and get back

21    to you so we know what you are trying.  So I would

22    recommend -- I am okay with your date, but I would say if

23    you get them in to me sooner, I can rule on them sooner.

24          MS. LUKEY:  Would it be permissible, Your Honor --

25    I forgot that we do consolidated issues.  I was going to

1    suggest --

2        THE COURT:  If you have some legal issues like that

3    and you want to break them out, and you are not going to

4    exceed the 24 pages too much, if you want to submit and

5    say these are -- you want to identify for me the issues

6    you think you would like to have resolved sooner rather

7    than later, you can submit a motion, and I will either

8    approve or not approve that.  But I really do think the

9    sooner you can get motions in limine in to me, the better

10   off you will be in terms of saving time for trial

11   preparation.

12       MS. LUKEY:  Thank you, Your Honor.

13       THE COURT:  All right.  So we will go ahead and

14   stick with the January 18, 2019 -- I am sorry, yeah, as

15   the due date for motions in limine.  That is the deadline.

16   But, the sooner you can do them, the better.

17       I wasn't quite understanding the designation of

18   testimony.  I do think that the designation should come in

19   earlier rather than later.  But I am not sure why it takes

20   such an extension time to do designations.  If you go

21   through the deposition and you just essentially say these

22   are the ones I'm doing -- and I used to take a lot of time

23   on depositions.  I used to resolve those objections

24   earlier.  Now it is just like she is sitting in trial

25   doing that.

```
 1          So, I think an earlier date is better.  I don't
 2   know if what we have done here today brings that deadline
 3   any sooner.  But I would be inclined to go with
 4   defendants'.  The designation would be December 14th.
 5   Counter designations, then, come in, like, a week later.
 6   The 21st.  And if you have objections you need to -- you
 7   need to brief those.  But I will not rule on those until
 8   we get to trial as we are going through it.
 9          Jury instructions, we have already taken care of
10   that.  That date has been moved forward.  You all figure
11   out where you are going to confer with one another.  The
12   counter designation is now December 21st.  Remote witness
13   testimony, if you are okay with February 4th, I am okay
14   with that.  Proposed instructions are now due October
15   23rd.
16          What would help me tremendously, and I think it
17   would help you all, too, is if we have the witness list,
18   joint exhibit list, you can work on that as we go through.
19   I am okay with the January 22nd date, but the witness list
20   would be very helpful to me ahead of time to figure out
21   what time frames to be allocated.  So, I'm okay with that
22   being January 22nd for both of those if you all are okay
23   with that.
24          February 12th is fine for the voir dire questions.
25   The briefing with respect to the objections to
```

1    instructions should actually be on October 23rd.  So all

2    of that is moved forward.

3         Then, I think we have the motion for page extension

4    on the motion in limine.  I will grant that.  A single

5    consolidated motion, unless you submit something to me and

6    say these are the issues we think we can take care of

7    ahead of time, Judge, it will save you and me time.  You

8    tell me how many pages you need for that, and I will --

9    hopefully you guys can work that out with each other, and

10   I will more than likely approve that.

11        MS. LUKEY:  Thank you, Your Honor.

12        THE COURT:  Okay.  Are there any other issues?

13        MS. LUKEY:  Mr. Quinn will address the Court.

14        MR. QUINN:  If you can briefly describe for us how

15   you foresee the voir dire process working in this case or

16   the jury selection process.

17        THE COURT:  I don't see it will be any different.

18   We will have to have a bigger jury pool; 6 weeks, we will

19   lose a lot of folks to hardship.  The way I conduct voir

20   dire is I will take your case-specific questions.  I don't

21   need the general questions that get asked.  I have that

22   already.  But the ones that are specific to this type of

23   case is what I need from you.

24        I will take a look at those.  They need to be

25   questions that, for the most part, can be answered yes or

1    no, so I can ask them if they say yes, and I delve

2    further.  I will incorporate those into mine.  I do a

3    pretty deep drill down.  But then after that, I usually

4    give each side 15 minutes of voir dire.

5         In this case, I think, because there is so much

6    involved, I would be willing to go to half an hour for

7    each of you.  We are picking the jury a week in advance,

8    so that will not take out of your trial time, that is out

9    of courtesy to them, to make sure that they have time to

10   go back and re-adjust their schedules and do what they

11   need to do.

12        The questions you are allowed -- you are not

13   allowed to argue your case, you are just allowed to drill

14   down deeper than I drilled down if I missed something that

15   you all thought was important.

16        If I don't ask a question that you put on there,

17   that is because it is argumentative, and I do not allow

18   arguing your case in voir dire.  But I do understand there

19   are issues that, as familiar as I am with this case now, I

20   am not as nearly familiar with it as you are, and that

21   there may be issues that need to be drilled down deeper

22   into.  Does that respond to your question?

23        MR. QUINN:  I understand we can submit questions to

24   you, but will you allow a questionnaire to the jurors?

25        THE COURT:  I usually don't do questionnaires to

1    the jurors because it takes so darn much time.  But if

2    there is a particularly good reason to do it in this case,

3    and you want to make that case to me, I will consider it.

4    It is a lot of work for me and for you all, and I don't

5    think it really accomplishes much more than we do in voir

6    dire.

7         MR. QUINN:  How many jurors will you --

8         THE COURT:  I think, because this is a six-week

9    trial, I normally only seat 10.  I will seat the full 12,

10   just because I expect there will be some attrition over

11   the course of that, and we need to have six at the end of

12   the 6 weeks.

13        MR. QUINN:  Does a party representative have to be

14   present during jury selection?

15        THE COURT:  Not generally, when I pick them a week

16   in advance, they are not present.

17        MR. QUINN:  Okay.  Those are my questions.  Thank

18   you.

19        THE COURT:  Any other questions?

20        MS. LUKEY:  I have one question, Your Honor, and I

21   apologize I didn't have a chance to raise this with

22   plaintiffs ahead of time.  But the parties have attempted

23   in the past to see if there was any way we could resolve

24   this.  We are wondering -- we couldn't reach an agreement.

25   We came close.  We couldn't get the terms all put together

1    on who might be the appropriate person.

2            I wonder if this could be referred to a magistrate

3    so we can make one last effort.

4            THE COURT:  For what?

5            MS. LUKEY:  For settlement.

6            THE COURT:  Oh, all right.  I would love to do

7    that.  I wish Michael Hegarty were my judge on this.  It

8    is Kathy Tafoya.  But I may have that reassigned.  Maybe I

9    can, because she is in Colorado Springs now.  So maybe I

10   will get permission, if Michael Hegarty is willing.  That

11   would be the best shot.

12           MS. LUKEY:  We would appreciate that.

13           THE COURT:  File a motion so I have it, and I will

14   see if I can get Michael Hegarty on this.  And he will put

15   the time and effort in.  He is batting a thousand for me.

16   So hopefully this case won't mess it up.  In 10 years, he

17   is batting a thousand for me.

18           MS. LUKEY:  That is impressive.  Thank you.

19           THE COURT:  So that is very good.  All right.

20   Mr. Lyons, I keep seeing that you want to stand up.  Do

21   you have anything for me?

22           MR. LYONS:  It has all been covered.  Just my usual

23   Irish patience.

24           THE COURT:  Okay.  Anything from plaintiffs?

25           MR. SKINNER:  No, Your Honor.  Thank you very much.

1           THE COURT:  I really do want to commend you all.  I

2    am so pleased to see the professionalism that is being

3    displayed and the cooperation you are showing.  You are

4    advocates for your clients, but you are working as

5    professionals, and I really appreciate that.

6           All right.  Court will be in recess.

7           (Proceedings conclude at 9:52 a.m.)

8

9           **R E P O R T E R ' S    C E R T I F I C A T E**

10

11          I, Darlene M. Martinez, Official Certified

12   Shorthand Reporter for the United States District Court,

13   District of Colorado, do hereby certify that the foregoing

14   is a true and accurate transcript of the proceedings had

15   as taken stenographically by me at the time and place

16   aforementioned.

17

18          Dated this 24th day of August, 2018.

19

20          _____

21          s/Darlene M. Martinez

22          RMR, CRR

23

24

25