IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

        Defendants.

## **MOTION TO RECONSIDER ORDER DENYING CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The undersigned Defendants ("Defendants") hereby move, pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 54(b), that the Court reconsider, in part, its denial of Certain Defendants' Motion for Summary Judgment (ECF No. 860), as announced in the Court's Order Denying Motions for Summary Judgment (ECF No. 1102).[1]

On September 25, 2018, the United States filed a brief as *amicus curiae* (the "Amicus Brief") in the United States Court of Appeals for the First Circuit. The Amicus Brief refutes a central contention of Plaintiffs in this case, which they have advanced over the last four years. *See* Brief for the United States as Amicus Curiae, *Capron v.*

---

[1] In addition to the legal arguments raised herein, Defendants Go Au Pair and Au Pair International, Inc. are also evaluating the evidentiary impact of the Amicus Brief on the claims against them, particularly in light of the weak factual basis for those claims. Go Au Pair and Au Pair International therefore reserve the right to file a motion to reconsider denial of their individual motions for summary judgment should either conclude that such a motion is appropriate.

*Office of the Attorney General of the Commonwealth of Massachusetts*, No. 17-2140 (1st Cir. Sept. 25, 2018), a copy of which is attached hereto as Exhibit A. To the extent there was any doubt (and Defendants have maintained there was not), the United States has made clear that: (i) the au pair program is a federal cultural and educational exchange program, not a domestic worker program; (ii) the regulatory scheme put in place by the Department of State ("DOS"), which governs the federal au pair program, preempts state and local wage-and-hour laws; and (iii) payment of a weekly stipend in the amount previously calculated by DOS—i.e., $195.75—complies with the minimum stipend required by law. As a result, Plaintiffs' state wage-and-hour and Federal Fair Labor Standards Act ("FLSA") claims based on the stipend amount fail as a matter of law, and Plaintiffs' remaining claims fail as a matter of law to the extent they are based upon a theory that Defendants somehow "advertised" an illegal wage.

The parties are in the midst of exchanging jury instructions, identifying and briefing pretrial issues, and otherwise preparing this case for trial. Plaintiffs' now-debunked theory that a stipend payment of $195.75 is "illegal" is too central to work around as the parties refine these submissions and plan their trial presentations. To ensure that only outstanding issues will be addressed at trial, and to allow the parties to prepare for trial, this Court should revisit its order denying summary judgment on these issues and grant summary judgment for Defendants as requested herein.

## **BACKGROUND**

Since Plaintiffs filed this case, a central allegation has been that a weekly stipend payment of $195.75 is illegally low, both because it fails to comply with state and local

wage-and-hour laws, and because it fails to comply with the FLSA. *See, e.g.*, Third Am. Compl. ¶ 1, ECF No. 983 (averring that the amount "is so low that it also violates Federal and State minimum wage"). Plaintiffs have maintained this position despite Defendants' attempts to explain that: (i) the number $195.75 was calculated by DOS (and not the Sponsors) and accords with the requirements of the federal au pair regulations; (ii) DOS was well aware that this amount was advertised as the minimum au pair stipend; and (iii) DOS—which administers the program, promulgated the governing regulations, and oversees the Sponsors—has never taken action against Defendants or otherwise instructed that this weekly stipend figure is incorrect.

When Defendants moved to dismiss, they argued that the federal au pair regulations are a comprehensive and calibrated regime that preempt contrary state and local wage-and-hour laws. *See* Order Adopting and Affirming in Part February 22, 2016 R. of United States Magistrate Judge at 27, ECF No. 258 ("Motion to Dismiss Order"). The Amicus Brief had not yet been filed, and without the benefit of that filing, the Court permitted the case to proceed to discovery. *See id.* at 28-29.

### ***The Amicus Brief***

In August 2017, Cultural Care joined two host families in seeking a declaratory judgment in Massachusetts that the federal laws and regulations governing the au pair program preempted the Massachusetts Domestic Workers Bill of Rights. Complaint ¶¶ 28-29, *Cultural Care, Inc. v. Office of the AG of Mass.* ("*Mass AG*"), No. 16-cv-11777-IT (D. Mass. Aug. 1, 2017), Ex. G to Certain Defs.' Mot. to Reconsider Order Granting Pls.' Mot. to Clarify the Order Denying Mots. for Summ. J., ECF No. 1130-7. The Office of

3

Attorney General moved to dismiss, arguing that the Commonwealth's laws and regulations were not preempted. Defs.' Mot. to Dismiss ¶¶ 3-4, *Mass. AG*, Ex. H to Certain Defs.' Mot to Reconsider Order Granting Pls.' Mot. to Clarify the Order Denying Mots. for Summ. J., ECF No. 1130-8. The District Court agreed, and Cultural Care appealed. *Cultural Care, Inc. v. Office of the Attorney General of Mass.,* No. 16-cv-11777-IT, 2017 WL 3272011, at *8-9 (D. Mass. Aug. 1, 2017). After oral argument, the First Circuit solicited DOS's views. First Circuit Order, *Capron, et al. v. Office of the Attorney General of the Commonwealth of Mass., et al.* ("*Capron*"), No. 17-2140 (1st Cir. June 13, 2018), Ex. I to Certain Defs.' Mot. to Reconsider Order Granting Pls.' Mot. to Clarify the Order Denying Mots for Summ. J., ECF No. 1130-9.

On September 25, 2018, the United States filed its amicus brief in the First Circuit. *See* Ex. A. The Amicus Brief confirms that the federal au pair regulations preempt state and local laws which "impose terms of employment for au pairs that differ from the terms set forth in the [federal] regulations." Ex. A at 10. According to the Department of State's considered interpretation of its own regulations—and unlike other exchange visitor programs—the au pair program "does not incorporate or direct compliance with state or local minimum-wage laws, nor does it require pay commensurate with that received by similarly situated U.S. counterparts." Ex. A at 7; *see id.* at 3-4, 11-13. *Compare* 22 C.F.R. § 62.31(j)(1) (au pairs)*, with* 22 C.F.R. §§ 62.24(f)(5), 62.30(f), 62.32(i)(1) (teachers, camp counselors, and summer work-travel).

The United States explained that the preemptive effect of the au pair regulations is central to the success of the au pair program: "State and local regulations have the

4

potential to severely undermine the au pair program, particularly if increased costs or record-keeping burdens discourage participation by host families." Ex. A at 19–20. The au pair program is "a valuable tool of U.S. foreign policy," so the United States has a "quintessential[ly] federal interest" in the "viability" of the program, and any attempts to change the program "should be made not through litigation but through rulemaking by the State Department—as clearly intended by Congress." Ex A. at 20.

The United States' bottom-line conclusion—that the au pair regulations establish the terms and conditions of au pair service and compensation, and preempt state laws that impose different terms and conditions—has three implications that bear directly on key issues in this case, each of which the Amicus Brief expressly recognizes: (i) "states and municipalities have no license to require the payment of a greater wage than the federal government has chosen to require"; (ii) the au pair regulations "exempt host families from the requirement to pay overtime," and states and municipalities must respect this exemption; and (iii) the au pair regulations permit "deductions for room and board allowable under the FLSA," which states likewise cannot prohibit. Ex. A at 14–15.

## ARGUMENT

### I. LEGAL STANDARD

The Court has ample authority to reconsider its summary judgment decision. *See, e.g.*, Order on All Parties' Joint R. Regarding Proposed Rule 23 Notification Plan at 6, ECF No. 977 (explaining that the court "'can freely reconsider its prior rulings'") (citing Fed. R. Civ. P. 54(b)). The Court may reconsider interlocutory orders at any time before it enters a final judgment. *See Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006).

5

So long as the Court has not entered a final judgment, Federal Rule of Civil Procedure 54(b) "puts no limit or governing standard" on a district court's ability to reconsider its prior orders, and neither has the Tenth Circuit. *See Lujan v. City of Santa Fe*, 122 F. Supp. 3d 1215, 1238 (D.N.M. 2015) (citing *Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007)). The Court therefore has broad, "general discretionary authority to review and revise" the Order. *See Fye v. Okla. Corp. Commc'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008) (quoting *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991)).

## II. DISCUSSION

### A. The Court Should Grant Summary Judgment for Defendants on Plaintiffs' State Wage-and-Hour Claims.

#### 1. The Amicus Brief Confirms that the Au Pair Regulations Preempt State and Local Wage-and-Hour Laws as Applied to Au Pairs.

The Amicus Brief confirms that Plaintiffs' state wage-and-hour claims are preempted by the federal au pair regulations.[2] The brief declares, in no uncertain terms, that "states and municipalities have no license to require the payment of a

---

[2] Plaintiffs have argued that the Amicus Brief has no bearing on this case, because *Capron* formally arose under a Massachusetts law other than the wage-and-hour law. Pls.' Statement in Resp. to Certain Defs.' Supp. to Their Reply Br. in Support of Their Mot. for Recons. at 1-2, ECF No. 1147. *Capron*, the Amicus Brief, and this case, however, all involve an overlapping legal question: Do the au pair regulations preempt state and local law? If they do, then Plaintiffs' state wage-and-hour claims fail. The Amicus Brief squarely addresses that question, and explains the answer in the context of how the au pair stipend is calculated—a central issue in this litigation. Indeed, the Amicus Brief repeatedly refers to this lawsuit, *see, e.g.*, Ex. A at 8-9, before urging that any changes to the program "should be made not through litigation but through rulemaking," *id.* at 20. Plaintiffs have no credible basis to suggest that because the two cases arose in direct response to different statutes, the DOS's considered views on preemption and the calculation of the au pair stipend are somehow irrelevant.

greater wage than the federal government has chosen to require." Ex. A at 15; *see also id.* at 9 (explaining that the District Court in Massachusetts was "incorrect" to conclude that "the State Department's au pair regulations require host families to comply with applicable state and local minimum-wage laws").

The Amicus Brief stands in direct contravention to virtually all of the core claims advanced by Plaintiffs and relied upon by the Court in denying the Defendants' motions to dismiss based on preemption. Motion to Dismiss Order at 27-29. Most significantly:

1. The au pair program is a federal cultural and educational exchange program that "operates in the fields of foreign affairs and immigration— two fields that have long been reserved exclusively to the federal government." Ex. A at 16.

2. By incorporating certain "requirements of the FLSA," the DOS stipend regulation did <u>not</u> incorporate state labor laws via the FLSA's savings clause. Ex. A at 9-10 ("Because the savings clause does not transform state and local minimum-wage laws into 'requirement[s]' of the FLSA, the au pair regulations do not incorporate those state and local laws.").

3. Contrary to the Court's conclusion (Motion to Dismiss Order at 28), the au pair regulations serve a national federal interest by creating a programmatic, uniform minimum national stipend. The DOS and its predecessor, the USIA, "did not abandon an interest in a uniform basis of compensation for au pairs when it linked the au pair stipend to the requirements of the FLSA." Ex. A at 20.

7

4. The au pair regulations do not create an "amorphous 'federal framework'" (Motion to Dismiss Order at 29); rather, DOS promulgated "comprehensive" and "calibrated" au pair regulations that "do not leave room for a state or municipal government to impose" contrary terms. Ex. A at 10-11.

5. For certain other J-1 programs, DOS chose to expressly incorporate or direct compliance with state and local minimum-wage laws, and require pay commensurate with that received by similarly situated U.S. counterparts. The au pair regulations, "[b]y contrast," do not. Ex. A at 7.

6. The Wilberforce pamphlet does not contradict this interpretation; to the contrary, it "underscores that, when the State Department intends to recognize an entitlement to a higher wage, it says so expressly." Ex. A at 18. In any event, the Wilberforce pamphlet is not entitled to deference. Ex. A at 19 n.7.

7. The presumption against preemption does not apply in this case, because the program "implement[s] the foreign-policy and immigration objectives of the United States." Ex. A at 17. Even if the presumption against preemption did apply, however, the indicia of regulatory intent to preempt state and local law described above would suffice to rebut it. Ex. A at 17.

The agency that promulgated the au pair regulations has spoken, and spoken loudly: the regulations deliberately displace state wage-and-hours laws and require compliance with federal law only. Ex. A at 6 (explaining that the regulations require "a

weekly stipend that is based on the federal minimum wage); *id.* at 7 ("[T]he au pair regulation does not incorporate or direct compliance with state or local minimum-wage laws . . . ."). Because the au pair regulations preempt state law, the Court should enter summary judgment for Defendants on Plaintiffs' state wage-and-hour claims.

## 2. The United States' Brief Is Entitled to Deference.

The reasoning set forth in the Amicus Brief is entitled to deference. Courts should defer to an agency's interpretation of its own regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (holding that an agency's view is entitled to "substantial deference" and usually should be given "controlling weight"); *Mitchell v. Comm'r*, 775 F.3d 1243, 1249 (10th Cir. 2015). That is so even when the agency interpretation comes to the Court in a brief, as it frequently does. *Chase*, 562 U.S. at 208 (deferring to an agency interpretation set forth in an amicus brief); *Auer v. Robbins*, 519 U.S. 452, 462 (1997) ("Petitioners complain that the Secretary's interpretation comes to us in the form of a legal brief; but that does not, in the circumstances of this case, make it unworthy of deference."); *Mitchell*, 775 F.3d at 1249–51 (deferring to an agency interpretation "advanced in [a] legal brief").

That "deferential standard" means that DOS's interpretation of its own regulations should be "controlling" here. *Auer*, 519 U.S. at 461. The interpretation set forth in the Amicus Brief is entirely consistent with the regulatory text. As the brief details, the phrase "paid in accordance with the requirements of the FLSA" does not require

9

compliance with state and local law. Ex. A at 9, 14 (explaining that the FLSA "does not import [state and local wage-and-hour laws] into the FLSA"). Neither does any other part of the au pair regulations, which, unlike other J-1 regulations, do not reference state and local law at all. *See* Ex. A at 7 (comparing the au pair regulations to the regulations governing summer work-travelers, teachers, and camp counselors). The United States' interpretation is therefore entitled to deference. *Auer*, 519 U.S. at 461.[3]

At the end of the day, DOS is charged with maintaining the "viability" of the au pair program as a "valuable tool of U.S. foreign policy." Ex. A at 20. State and local wage-and-hour laws "have the potential to severely undermine the au pair program, particularly if increased costs or record-keeping burdens discourage participation by host families." Ex. A at 19-20. The DOS therefore designed the program to operate nationally based on the federal minimum wage, and to preempt state and local laws—including wage-and-hour laws—that imposed different terms of employment for au pairs. Ex. A at 10, 20 (explaining that the federal minimum wage is "uniform nationwide," and that the administering agencies "did not abandon an interest in a uniform basis of compensation for au pairs when it linked the au pair stipend to the

---

[3] Plaintiffs assert that the Amicus Brief adopts a "new position on the applicability of state wage laws to the *au pair* program" that is "wholly inconsistent with" DOS's prior position. ECF No. 1147 at 2. Not so. The Amicus Brief ratifies the formula that DOS has been distributing to Defendants since *1997*. *Compare* Fact Sheet: Au Pair Stipend, Defs.' SJ App. at 70, ECF No. 861-1 (outlining a formula that multiplies 45 hours by the federal minimum wage, and then subtracts 40% for room and board), *with* Ex. A at 7 (referring to the notices, reciting the same formula, and explaining that it shows how the federal minimum wage "could be applied to the regulatory requirements at 22 C.F.R. § 62.31(j) for au pairs."). The Amicus Brief is thus consistent with DOS's official guidance concerning the au pair regulations, and the purported statement of an unidentified DOS employee in a newspaper article cannot override such guidance.

requirements of the FLSA."). This is so whenever a state law is "inconsistent with the structure of the federal program—even if it is technically possible for a host family to comply with both the federal and state requirements." Ex. A at 14. Because that decision is reflected in the program's governing regulations—or, at a minimum, is consistent with those regulations—Defendants are entitled to summary judgment on Plaintiffs' state and local wage-and-hour claims.

**B.     The Court Should Grant Summary Judgment for Defendants on Plaintiffs' Federal Minimum Wage and Overtime Claims.**

For substantially the same reasons, the Court should grant Defendants summary judgment on Plaintiffs' FLSA claims. Plaintiffs' FLSA claims depend on the notion that $195.75 was an unlawfully low stipend for either or both of two reasons: (i) it reflected an improper room and board deduction, and (ii) it improperly excluded overtime payments. *See, e.g.*, [Corrected] Pls.' Mot. for Partial Summ. J. at 4-5, ECF No. 915. The Amicus Brief refutes both claims and confirms that a minimum stipend of $195.75 is legally permissible.

The Amicus Brief explains that the regulatory language, which requires a stipend "based upon 45 hours of child care services per week and paid in conformance with the requirements of the" FLSA, incorporates the federal minimum wage, an exemption from the requirement to pay overtime, and a permitted deduction for room and board. Ex. A at 3, 6-10, 14 (internal quotations omitted). The "in conformance with" language was used to ensure that the stipend would increase automatically when there was an increase in the federal minimum wage, without the need to promulgate a new regulation for each increase. *See* 62 F.R. 34632-01 (explaining that the change was designed to

"ensure that there is no future confusion" that au pairs "must receive federal minimum wage."); 22 C.F.R. §514.31(j)(1) (Apr. 1, 1997 ed.) (reflecting the prior language, which required payment of a stipend of "not less than $115 per week.").

The Amicus Brief ratifies prior DOS guidance regarding how to calculate this minimum au pair stipend. It explains that, since 2007, DOS has sent notices informing sponsors of changes to the federal minimum wage. Ex. A at 7. Those notices "went on to provide calculations illustrating *how the new federal minimum wage could be applied to the regulatory requirements*" for au pairs. *Id.* (emphasis added). It then recites the formula that Defendants have used at DOS's direction for decades: "$7.25 multiplied by 45 hours, less a 40% credit for room and board, for a total weekly stipend of $195.75." *Id.* A stipend of $195.75 thus complies with federal requirements.

The Amicus Brief confirms that the minimum stipend of $195.75 neither improperly excludes overtime nor improperly permits a room-and-board credit. On the contrary, it specifically observes that the au pair regulations: (i) "exempt host families from the requirement to pay overtime;" and (ii) "permit deductions for room and board allowable under the FLSA from an au pair's wages." Ex. A at 14. Accordingly, Defendants should be granted summary judgment on Plaintiffs' FLSA claims.

### C. The Court Should Grant Summary Judgment for Defendants on All of Plaintiffs Remaining Claims, to the Extent They Are Based on Plaintiffs' Allegation that a Stipend of $195.75 Is Illegal.

Because Plaintiffs' federal, state, and local wage-and-hour claims fail as a matter of law, so too do large parts of their other claims. The notion that a weekly stipend of $195.75 is illegally low runs throughout much of Plaintiffs' case. Indeed, Plaintiffs

explained at summary judgment that their claims based on RICO, fraud, breach of fiduciary duty, consumer protection, and negligent misrepresentation, all rely upon one of two separate contentions: that the Sponsors allegedly misrepresented that (i) the $195.75 weekly stipend was a "fixed" amount; or (ii) that the $195.75 stipend was the legal minimum, which is not accurate because "it is both below the actual federal minimum wage and it falsely represented the minimum wages in numerous states and localities . . . " Pls.' Opp'n to Defs.' Mots. for Summ. J., ECF No. 942, at 65-66, 103-104. Thus, one of the two theories Plaintiffs assert in support of all of these claims is based on their incorrect allegation that a $195.75 stipend is illegal.

Because the latter contention is foreclosed as a matter of law, the Court should grant to Defendants summary judgment on all of Plaintiffs' claims to the extent they depend on the allegation, now disproven, that a weekly payment of $195.75 was illegally low.

## CONCLUSION

For all of the foregoing reasons, the Court should reconsider its order denying Defendants' motion for summary judgment, and grant summary judgment for Defendants on Plaintiffs' state wage-and-hour claims, Plaintiffs' claims pursuant to the FLSA, and any remaining claims to the extent they are based on Plaintiffs' now disproven allegation that a stipend of $195.75 would fail to comply with state or federal law.

# CERTIFICATE OF CONFERRAL

As required by D.C.COLO.LCivR 7.1(A), counsel for Cultural Care conferred on behalf of Moving Defendants with Plaintiffs' counsel in good faith regarding the subject of this motion. Plaintiffs oppose this motion and the relief sought herein.

Dated: October 16, 2018

Respectfully submitted,

*s/ Diane R. Hazel*
Joan A. Lukey
(joan.lukey@choate.com)
Robert M. Buchanan, Jr.
(rbuchanan@choate.com)
Michael T. Gass
(mgass@choate.com)
Justin J. Wolosz
(jwolosz@choate.com
Lyndsey M. Kruzer
(lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-4790

James M. Lyons (jlyons@lrrc.com)
Jessica L. Fuller (jfuller@lrrc.com)
Diane Hazel (dhazel@lrrc.com)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

***Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair***

*s/ Kathryn A. Reilly*
Kathryn A. Reilly (reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Natalie E. West (west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

**Attorneys for Defendants Agent Au Pair, Au Pair International, Inc., Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair**


*s/ James E. Hartley*
James E. Hartley (jhartley@hollandhart.com)
Jonathan S. Bender (jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard (aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302

**Attorneys for Defendant Cultural Homestay International**

*s/ Susan M. Schaecher*
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

**Attorneys for Defendants APF Global Exchange, NFP**


*s/ Stephen J. Macri*
Stephen J. Macri
(Stephen.macri@ogletree.com)
Joseph B. Cartafalsa
(joseph.cartafalsa@ogletree.com)
Robert M. Tucker
(robert.tucker@ogletree.com)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
599 Lexington Avenue, 17th Floor
New York, NY 10022
(212) 492-2071

*s/ Eric J. Stock*
Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301

**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**

*s/ Bogdan Enica*
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair**


*s/ Peggy E. Kozal*
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey
(nhuey@gordonrees.com)
Heather K. Kelly
(hkelly@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**


*s/ Martha L. Fitzgerald*
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant EurAuPair Intercultural Child Care Programs**

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

***Attorneys for Defendant InterExchange, Inc.***


*s/ William J. Kelly III*
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chanda Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202


***Attorneys for Defendant USAuPair, Inc.***
*s/ Meshach Y. Rhoades*
Meshach Y. Rhoades
Martin J. Estevao
4643 S. Ulster Street, Suite 800
Denver, CO 80237
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

***Attorneys for Defendant GreatAuPair, LLC***

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on October 16, 2018, I caused to be electronically filed the foregoing Motion to Reconsider Order Denying Certain Defendants' Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Byron Pacheco (bpacheco@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
David Seligman (david@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

                                                                *s/ Diane R. Hazel*