FILED
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**October 30, 2018**

**FOR THE TENTH CIRCUIT**

_____

**Elisabeth A. Shumaker**
**Clerk of Court**

JOHANA PAOLA BELTRAN;
LUSAPHO HLATSHANENI;
BEAUDETTE DEETLEFS;
ALEXANDRA IVETTE GONZALEZ;
JULIANE HARNING; NICOLE
MAPLEDORAM; LAURA MEJIA
JIMINEZ; SARAH CAROLINE AZUELA
RASCON,

     Plaintiffs - Appellees,

v.

AUPAIRCARE, INC.,

     Defendant - Appellant,

and

INTEREXCHANGE, INC.; USAUPAIR,
INC.; GREATAUPAIR, LLC; EXPERT
GROUP INTERNATIONAL INC., d/b/a
Expert Au Pair; EURAUPAIR
INTERCULTURAL CHILD CARE
PROGRAMS; CULTURAL HOMESTAY
INTERNATIONAL; CULTURAL CARE,
INC., d/b/a Cultural Care Au Pair; AU
PAIR INTERNATIONAL, INC.; APF
GLOBAL EXCHANGE, NFP, d/b/a
Aupair Foundation; AMERICAN
INSTITUTE FOR FOREIGN STUDY,
d/b/a Au Pair in America; AMERICAN
CULTURAL EXCHANGE, LLC, d/b/a
GoAuPair; AGENT AU PAIR; A.P.E.X.
AMERICAN PROFESSIONAL
EXCHANGE, LLC, d/b/a ProAuPair;

No. 17-1359

20/20 CARE EXCHANGE, INC., d/b/a
The International Au Pair Exchange;
ASSOCIATES IN CULTURAL
EXCHANGE, d/b/a GoAu Pair;
GOAUPAIR OPERATIONS, LLC,

     Defendants.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:14-CV-03074-CMA-KMT)**

---

Thomas B. Quinn (Peggy E. Kozal, Nathan A. Huey, and Jennifer Arnett-Roehrich with him on the briefs), Gordon & Rees LLP, Denver, Colorado, for Defendant – Appellant.

David H. Seligman, Towards Justice, Denver, Colorado, for Plaintiffs – Appellees.

---

Before **McHUGH**, **KELLY**, and **MORITZ**, Circuit Judges.

---

**McHUGH**, Circuit Judge.

---

     Au pairs and former au pairs filed a class action lawsuit against AuPairCare, Inc. ("APC") and other au pair sponsoring companies in federal district court alleging violations of antitrust laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Fair Labor Standards Act ("FLSA"), federal and state minimum wage laws, and other state laws. Eventually, the au pairs amended their complaint and added two former au pairs, Juliane Harning and Laura Mejia Jimenez, who were sponsored by APC. In response, APC filed a motion to compel arbitration, which the district court denied. The district court found the arbitration provision between the parties both

2

procedurally and substantively unconscionable and declined to enforce it. APC now appeals that denial.

Because the arbitration provision contains only one substantively unconscionable clause, the district court abused its discretion by refusing to sever the offending clause and otherwise enforce the agreement to arbitrate. We therefore reverse the district court's ruling and remand for proceedings consistent with this decision.

## I. BACKGROUND

### A.   *Regulatory Framework*

To enter the United States, foreigners require a visa. One type of visa is granted under the J-1 Visa program, which the United States Department of State operates under authority from the Mutual Education and Cultural Exchange Act of 1961, 22 U.S.C. §§ 2451–2464. One of the J-1 Visa programs is the au pair program. 22 C.F.R. § 62.31. Au pairs are limited to one-year or less in the United States for each trip, *id.* § 62.31(c)(1), and are required to be "proficient in spoken English," *id.* § 62.31(d)(3), evidenced through a personal interview in English, *id.* § 62.31(d)(5). "Sponsors designated by the Department of State . . . conduct [the] au pair exchange program." *Id.* § 62.31(c). The sponsors are responsible for selecting au pairs, *id.* § 62.31(d), selecting suitable host families, *id.* § 62.31(h), and placing au pairs with particular host families, *id.* § 62.31(e). APC is a sponsor designated by the Department of State.

The au pair program affords foreign nationals "the opportunity to live with an American host family and participate directly in the home life of the host family." *Id.*

3

§ 62.31(a). Au pairs provide child care services for the host family subject to weekly and daily hour limitations, *id.* § 62.31(j)(2), pursue six semester hours of academic credit during their year in the United States, *id.* § 62.31(k)(1), and receive in exchange monetary compensation, *id.* § 62.31(j)(1), and two-weeks paid vacation over the course of the year, *id.* § 62.31(j)(4).

### B.   *Underlying Lawsuit*

Johana Beltran, a former au pair sponsored by InterExchange, Inc., filed suit in the United States District Court for the District of Colorado on November 13, 2014, against her host family, her sponsor InterExchange, APC, and other organizations approved to sponsor au pairs in the United States. Ms. Beltran amended her complaint on March 13, 2015, to add four former au pairs as plaintiffs. After receiving authorization, Ms. Beltran filed a second amended complaint that added an additional four plaintiffs, including Ms. Harning and Ms. Jimenez, in a class action against the sponsoring agencies. Of the named plaintiffs, APC sponsored only Ms. Harning and Ms. Jimenez. The second amended complaint alleged the sponsors had violated antitrust laws, RICO, the FLSA, federal and state minimum wage laws, and various other state laws.

### C.   *Factual History*

### 1.   **Ms. Harning**

Ms. Harning is originally from Germany. She signed two different agreements with APC that include arbitration provisions. Prior to her first stint as an au pair, Ms. Harning signed an agreement in 2007 when she was nineteen years old. She then worked as an au pair in Michigan in 2008. She applied to APC again in 2013, signed

another agreement when she was twenty-four or twenty-five, and worked as an au pair in Virginia in 2014. Ms. Harning alleges that "[a]t the time of signing the contract[s], [she] was not familiar with the concept of arbitration," and "was not aware of any provision regarding arbitration, or the meaning of the statutes cited in that provision." App. vol. 3 at 444. Earlier in the district court proceedings, however, she provided deposition testimony that she understood the contracts with APC "because [she] got it in German." App. vol. 2 at 384. During her deposition, she further stated that she did not think there were any portions of the au pair agreement that confused her.

## 2.     Ms. Jimenez

Ms. Jimenez is originally from Colombia. She signed her only agreement with APC in December 2013, when she was twenty-two years old. She worked as an au pair from July 2014 to July 2015 in Pennsylvania. "Spanish is [her] first language." App. vol. 3 at 445. Although Ms. Jimenez did not want to sign the au pair agreement, APC told her it would not place her as an au pair if she did not sign the agreement. Ms. Jimenez further avers that at the time of signing the contract, she "did not know the English word 'arbitration,'" she "did not understand the meaning of the statutes cited in the arbitration provision," and the "rules that would govern the arbitration were not attached to the contract." *Id.* at 446. Similar to Ms. Harning, however, Ms. Jimenez received the agreement in her native language before she signed it. She also claimed to have read it and to have found the statements and provisions acceptable before signing.

3.   **2013 and 2014 Au Pair Agreements**[1]

The 2013 Au Pair Agreement (signed by Ms. Harning) and the 2014 Au Pair

Agreement (signed by Ms. Jimenez) are largely identical. The opening paragraphs of both

agreements state that "This AuPairCare Au Pair Agreement (the 'Agreement') is entered

into between AuPairCare, a California Corporation and 'Au Pair.'" App. vol. 2 at 263,

270. The agreements also include identical choice of law provisions: "This Agreement

shall be deemed to have been made in the State of California, U.S., and its validity,

construction, breach, performance and interpretation shall be governed by the laws of the

State of California, U.S." *Id.* at 268, 275. Finally, the agreements contain identical

arbitration provisions:

### K. Other Terms and Conditions

. . . .

The parties to the Agreement acknowledge and agree that any dispute or
claim arising out of this Agreement, including, but not limited to any
resulting or related transaction or the relationship of the parties, shall be
decided by neutral, exclusive and binding arbitration in San Francisco,
California, U.S [*sic*] before an arbitration provider selected by AuPairCare,
upon the petition of either party.

In such proceeding, the parties may utilize subpoenas and have
discovery as provided in California Code of Civil Procedure Sections
1282.6, 1283 and 1283.05. The decision of the arbitrator shall be final and
binding and may be enforced in any court of competent jurisdiction. Au
Pair agrees that California is a fair and reasonable venue for resolution of
any such dispute and it submits to jurisdiction of the Courts of the State of

---

[1] APC references the 2007 Au Pair Agreement Ms. Harning signed in its opening
brief. Because APC did not make any arguments specific to the 2007 agreement before
the district court, it has forfeited these arguments and we will not consider them. *See
Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).

California because, among other reasons, this agreement was negotiated in large part in California, and AuPairCare is domiciled in California.

In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of San Francisco County, California, U.S. In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration [*sic*]

*Id.* at 267–68, 274–75 (paragraph number omitted).

Both Au Pair Agreements are six pages long and include approximately eighty numbered paragraphs. The arbitration provision in the agreements is located under the heading "Other Terms and Conditions" together with approximately ten other provisions. The 2013 and 2014 Au Pair Agreements state: "Au Pair has fully read this Agreement and agrees to the terms and conditions contained herein" and

- I am capable of reading and understanding this Agreement in English

- I have had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety

- I accept the terms of this entire Agreement and understand that it is legally binding

*Id.* at 263, 268, 270, 275.

### D.   *Procedural History*

After Ms. Beltran filed her second amended complaint, which added the former APC au pairs, APC filed a motion to compel arbitration and dismiss the lawsuit or alternatively to stay the lawsuit. Ms. Harning and Ms. Jimenez opposed APC's motion.

The district court denied APC's motion, finding the arbitration provision unconscionable. *Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-KMT, 2017 WL 4418711 (D. Colo. Sept. 21, 2017). The district court concluded the au pair agreements were contracts of adhesion and procedurally unconscionable because the au pairs were relatively young at the time they signed the contracts, were foreigners, spoke English as a second language, and had no experience with contracts or contract law. *Id.* at *6. And, although each had read the contract before signing it, the district court found that neither understood what "arbitration" meant. *Id.* The district court also found the element of surprise in the agreements because the arbitration provision was "buried" at the end of around eighty paragraphs under a nondescript header and did not explain in plain English that the au pairs were waiving their rights to access the United States court system. *Id.* Considering the overall circumstances of the contract formation, the district court determined the agreements were "significantly undermined by procedural unconscionability." *Id.* at *7.

The district court also concluded the arbitration provision was substantively unconscionable. The court rejected Ms. Harning's and Ms. Jimenez's reliance on the fee shifting clause as evidence of substantive unconscionability, holding that because it "would not apply in an arbitration of this action, [the] Court need not consider it." *Id.* But

the district court agreed with the au pairs that the clause "vesting APC with the right to unilaterally select an arbitrator is substantively unconscionable." *Id.*[2]

The district court then addressed the forum selection clause. Although it acknowledged that California generally enforces such clauses, the court noted that forum selection clauses are unconscionable if they "negate the reasonable expectations of the nondrafting party." *Id.* (quoting *Magno v. The College Network, Inc.*, 204 Cal. Rptr. 3d 829, 838 (Ct. App. 2016)). The court determined that Ms. Harning's and Ms. Jimenez's reasonable expectations had been negated:

> There is nothing in the record to suggest [Ms.] Harning or [Ms.] Jimenez could have reasonably expected that they would be required to resolve any disputes in San Francisco, California. [Ms.] Harning and [Ms.] Jimenez are, by definition, foreign nationals. They prepared their APC applications in their respective home countries. Prior to placement, both attended a mandatory training session in New Jersey. [Ms.] Harning did two stints as an APC au pair—once in Michigan, and once in Virginia. [Ms.] Jimenez was placed with a family in Pennsylvania. The only apparent connection this case has to the state of California is that APC is headquartered there, and there is nothing in the record to suggest that either au pair was aware of that fact.

*Id.* at *8.

Finding the arbitration provision both procedurally and substantively unconscionable, the district court refused to sever any offending clauses because the provision was "permeated" by unconscionability. *Id.* The district court thus denied APC's motion.

---

[2] The provision does not allow APC to select an *arbitrator*—instead it allows it to select an "arbitration *provider*." App. vol. 2 at 268, 275 (emphasis added). But, as discussed below, this distinction is meaningless for purposes of our analysis.

APC timely appealed from the district court's order, and we have jurisdiction under 9 U.S.C. § 16(a). *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376 n.1 (10th Cir. 2016) ("The FAA allows an interlocutory appeal from an order denying a motion to compel arbitration under 9 U.S.C. § 4." (internal quotation marks omitted)).

## II. DISCUSSION

We begin our analysis with a discussion of the legal background governing the enforcement of arbitration provisions. First, we provide an overview of the federal legislation favoring enforcement of arbitration provisions. Second, we undertake a review of relevant California law, which governs the au pair agreements. Finally, we address the applicable standard of review.

### A.  *Legal Background*

Congress enacted the Federal Arbitration Act ("FAA") "in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the FAA, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, if a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. The Supreme Court has recognized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration

10

any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds,*
*Inc.*, 537 U.S. 79, 83 (2002) (quoting *United Steelworkers of Am. v. Warrior & Gulf*
*Navigation Co.*, 363 U.S. 574, 582 (1960)).

 In deciding whether to grant a motion to arbitrate, courts must resolve "whether
the parties are bound by a given arbitration clause" and "whether an arbitration clause in
a concededly binding contract applies to a particular type of controversy." *Id.* at 84. The
first inquiry requires a court to determine whether the arbitration agreement should "be
declared unenforceable 'upon such grounds as exist at law or in equity for the revocation
of any contract.'" *Concepcion*, 563 U.S. at 339 (quoting 9 U.S.C. § 2). "This saving
clause permits agreements to arbitrate to be invalidated by 'generally applicable contract
defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only
to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at
issue." *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The
enforceability of the agreement is a matter of state law. *Id.* Assuming there is a valid
contract to arbitrate, "the first task of a court asked to compel arbitration of a dispute is to
determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp.*
*v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Ms. Harning and
Ms. Jimenez do not contest that this suit is subject to the arbitration provision of the au
pair agreement. But the two do contest that the arbitration provision is a valid agreement
to arbitrate. In particular, they argue the arbitration provision is unconscionable and
therefore unenforceable.

The parties agree that under the choice-of-law clause in the au pair agreements, California law governs the enforcement of the arbitration provision. "California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 678 (Cal. 2000). "In California, 'general principles of contract law determine whether the parties have entered a binding agreement to arbitrate.'" *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 282 P.3d 1217, 1224 (Cal. 2012) (quoting *Craig v. Brown & Root, Inc.*, 100 Cal. Rptr. 2d 818, 820 (Ct. App. 2000)). "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Id.* at 1224–25.

When California's "highest court has not definitively decided the precise issue we must decide, we nonetheless must determine what decision that court would make if faced with the same facts and issues that are before us." *Progressive Cas. Ins. v. Engemann*, 268 F.3d 985, 987 (10th Cir. 2001). Because the Supreme Court of California has not directly addressed the issues on appeal, we "must endeavor to predict how that high court would rule." *Stickley v. State Farm Mut. Auto. Ins.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quotation marks omitted). We start our analysis by giving proper regard to relevant rulings by other courts of the state because each ruling "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

We review a district court's denial of a motion to compel arbitration de novo. *Nesbitt*, 811 F.3d at 376. In doing so, we apply the same legal standard as the district court. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 796 (10th Cir. 1995). We must "evaluate whether the district court correctly found that no valid and enforceable agreement to arbitrate the parties' dispute exists." *Nesbitt*, 811 F.3d at 376 (quotation marks omitted). The district court denied APC's motion because it found the arbitration provision procedurally and substantively unconscionable under California law. We review the district court's interpretation of California law de novo. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). Any findings of fact underlying the district court's unconscionability decision are reviewed for clear error. *See In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115–16 (10th Cir. 2015) (reviewing district court's determination that the right to compel arbitration had been waived de novo but reviewing the factual findings for clear error); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1293 (10th Cir. 2015) (reviewing district court's decision as to default of arbitration de novo but reviewing the factual findings for clear error); *see also Magno*, 204 Cal. Rptr. 3d at 834 (reviewing the unconscionability decision de novo but reviewing the factual findings under California's equivalent to clear error review). The district court's decision to not sever unconscionable terms is reviewed for abuse of discretion. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010); *see also Armendariz*, 6 P.3d at 695; Cal Civ. Code § 1670.5(a).

With this legal backdrop, we now proceed to the question of whether the arbitration provision is unconscionable. Although we agree that the arbitration provision is unconscionable, we reach that conclusion for reasons more limited than those found by the district court. In light of our conclusions about the unconscionability of the arbitration provision, we then consider whether any offending clauses of the provision should be severed and the parties compelled to arbitrate, or whether the provision should be struck in its entirety. We ultimately conclude the provision is not permeated by unconscionability, and therefore the offending clause should have been stricken, so that the parties' agreement to arbitrate could be enforced.

## B. *Unconscionability*

Under California law, "[u]nconscionability consists of both procedural and substantive elements." *Pinnacle Museum*, 282 P.3d at 1232. "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Id.* "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the terms must be 'so one-sided as to "shock the conscience."'" *Id.* (quoting *24 Hour Fitness, Inc. v. Superior Court*, 78 Cal. Rptr. 2d 533, 541 (Ct. App. 1998)).

Because Ms. Harning and Ms. Jimenez are resisting arbitration, they bear the burden of showing both procedural and substantive unconscionability. *Id.* Procedural and substantive unconscionability need not be present in the same degree; rather, the "more

14

substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* We begin by addressing procedural unconscionability and then we consider whether the agreement is substantively unconscionable.

**1.     Procedural Unconscionability**

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 6 P.3d at 689. This is so because the "procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 194 (Cal. 2013) (quoting *Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 983 (Cal. 2003)). But, "recognition of the . . . agreement as an adhesion contract . . . heralds the beginning, not the end, of our inquiry into its enforceability." *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 807 (Ct. App. 2005). "A contract of adhesion is fully enforceable according to its terms unless certain other factors are present which, under established legal rules—legislative or judicial— operate to render it otherwise." *Perdue v. Crocker Nat'l Bank*, 702 P.2 503, 511 (Cal. 1985) (en banc) (quoting *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 172 (Cal. 1981)). "By itself, [an adhesive agreement] and arbitration provision establish only a modest degree of procedural unconscionability." *Carbajal v. CWPSC, Inc.*, 199 Cal. Rptr. 3d 332, 345 (Ct. App. 2016).

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12 (Cal. 2016). A contract may be oppressive if it involves a lack of negotiation and meaningful choice and may include surprise if the allegedly unconscionable provision is "hidden within a prolix printed form." *Pinnacle Museum*, 282 P.3d at 1232 (quoting *Morris*, 27 Cal. Rptr. 3d at 805). "There are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." *Baltazar*, 367 P.3d at 12 (quotation marks omitted). And "[b]ecause procedural unconscionability must be measured in a sliding scale with substantive unconscionability, our task is not only to determine *whether* procedural unconscionability exists, but more importantly, *to what degree* it may exist." *Morris*, 27 Cal. Rptr. 3d at 806.

Applying California law to the au pair agreement and arbitration provision at issue, we begin our analysis "with an inquiry into whether the contract is one of adhesion." *Armendariz*, 6 P.3d at 689. APC does not contest that its Au Pair Agreements are adhesive contracts. This, by itself, establishes only "a modest degree of procedural unconscionability," assuming other factors increasing or reducing the unconscionability are not present. *Carbajal*, 199 Cal. Rptr. 3d at 345. For example, the procedural unconscionability may be reduced if Ms. Harning and Ms. Jimenez had available "meaningful alternatives" to entering into a contract with APC. *Dean Witter Reynolds, Inc. v. Superior Court*, 259 Cal. Rptr. 789, 797 (Ct. App. 1989).

Ms. Harning and Ms. Jimenez argue that the "meaningful alternatives" inquiry is irrelevant in the employment context. We disagree. True, California courts have repeatedly emphasized that most employees are not in a position to reject employment offers because of "the economic pressure exerted by employers on all but the most sought-after employees." *Little*, 63 P.3d at 983–84. But California courts also recognize this is not a blanket rule. *See id.* The Supreme Court of California reasoned that such economic pressure is evident because "the arbitration agreement stands between the employee and *necessary employment* and *few employees* are in a position to refuse a job because of an arbitration requirement." *Armendariz*, 6 P.3d at 690 (emphasis added).

Ms. Harning's and Ms. Jimenez's argument is undercut by the nature of the au pair program: it is *not* employment in the traditional sense, and certainly cannot be described as "necessary employment." Instead, the program is designed to "increase mutual understanding between the people of the United States and people of other countries by means of educational and cultural exchange." 22 U.S.C. § 2451. The program provides foreign nationals with "the opportunity to live with an American host family and participate directly in the home life of the host family." 22 C.F.R. § 62.31(a). The program limits each term to one year. *Id.* § 62.31(c)(1). Under these circumstances, participation in the program is not a matter of "necessity." Indeed, both Ms. Harning and Ms. Jimenez testified they applied to the au pair program not because they needed employment but because it provided an opportunity to travel to the United States and to improve their English. And, as noted by APC, each of the au pairs had other options and considered other au pair sponsors before selecting APC. Indeed, there are over a dozen au

pair sponsors under the program. Thus, Ms. Harning and Ms. Jimenez had meaningful

alternatives, and the au pair experience is not "necessary employment," in any event.[3] We

therefore conclude that any procedural unconscionability from the adhesive nature of the

contract is at most modest.

We are likewise unconvinced that the fact both Ms. Harning and Ms. Jimenez

speak English as a second language increased the procedural unconscionability of the

agreement. It is uncontested that both Ms. Harning and Ms. Jimenez received translations

of the au pair agreement in their native languages. Despite their later declarations to the

contrary, both testified they understood the agreement when they received it *because they*

*received it in their native languages*. *See* App. vol. 2 at 384 ("Q. You signed a contract

with AuPairCare twice in the past, haven't you? A. Yes. Q. Did you understand it before

you signed it? A. Yes, because we got it in German."); App. vol. 3 at 527 ("Q. Did you

ever see a Spanish version of this Au Pair Agreement before you signed it? A.

Yes. . . . Q. Did you satisfy yourself that the statements and provisions in this document

were acceptable to you before you signed it? A. At that time, yes.").

The present facts are in stark contrast with cases where California courts have

found parties' lack of proficiency in English indicative of procedural unconscionability.

*See Samaniego v. Empire Today LLC*, 140 Cal. Rptr. 3d 492, 498 (Ct. App. 2012)

(finding procedural unconscionability when employees requested a Spanish translation of

---

[3] APC argued before the district court, and continues to argue here, that it is not an employer of the au pairs. We need not resolve this dispute because, even assuming the sponsors employ the au pairs, participation in the au pair program is not necessary employment.

the documents but the employer refused to provide any); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 171 Cal. Rptr. 3d 42, 47 (Ct. App. 2014) (finding procedural unconscionability when the employer provided partial Spanish translations but failed to translate part of the arbitration agreement). APC provided complete translations of the agreements into Ms. Harning's and Ms. Jimenez's native languages; to be eligible for participation in the au pair program Ms. Harning and Ms. Jimenez had to be "proficient in spoken English," 22 C.F.R. § 62.31(d)(3), as evidenced through a personal interview in English; *id.* § 62.31(d)(5), and both women acknowledged by signing the agreement that they were "capable of reading and understanding this Agreement in English," App. vol. 2 at 268, 275. As a result, Ms. Harning's and Ms. Jimenez's English language abilities are not indicative of additional procedural unconscionability, and the amount of procedural unconscionability in the adhesion agreements remains modest.

Ms. Harning and Ms. Jimenez also argue that their age, status as foreigners, inexperience with contract law, and lack of knowledge of the meaning of "arbitration" are factors increasing the procedural unconscionability of the contract formation. And they contend the arbitration provision includes an element of surprise because it was buried at the end of the contract, was not highlighted in any way, and did not explain the meaning of arbitration. APC forfeited any response to these factors by failing to respond to these arguments in the district court. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). But even accepting Ms. Harning's and Ms. Jimenez's reliance on these factors, we conclude that they do not increase the procedural unconscionability of the agreement beyond a "moderate" degree.

First, neither woman was a minor when she entered the agreement: Ms. Harning was twenty-four or twenty-five years old and Ms. Jimenez was twenty-two years old. Although California courts have sometimes relied on the youth of the weaker party in finding procedural unconscionability, they have done so in the context of other factors suggesting vulnerability and evidence that the stronger party was aware of the factors *and* targeted the parties because of their vulnerabilities. *See Higgins v. Superior Court*, 45 Cal. Rptr. 3d 293, 304 (Ct. App. 2006) (three of five children were minors, all had recently lost both parents, and the television company targeted the children because of these vulnerabilities); *Magno*, 204 Cal. Rptr. 3d at 836 (company targeted the students who were seeking licensing to become nurses and told the students they would be eligible to sit for the registered nurse examination when, in reality they would not). Such factors are simply absent here. Although Ms. Harning and Ms. Jimenez were relatively young adults at the time of contract formation, no other factors suggest any particular vulnerability on their part. And unlike *Higgins* and *Magno*, APC did not target them because of a perceived vulnerability—instead Ms. Harning and Ms. Jimenez approached APC because they wanted to travel to the United States.

Second, any impact being a foreigner might have on the sophistication of a party or on procedural unconscionability is significantly reduced here. APC provided each woman with a copy of the agreement in her native language, and Ms. Harning had previously participated in the au pair program and had previously lived in the United States for a year.

20

Third, their inexperience with contract law and their lack of understanding of "arbitration" also likely bear little weight on the procedural unconscionability of the contract under California law. Any unconscionability due to their inexperience was "self-imposed" because, as noted above, an au pair experience is not one of "life's necessities." *See West v. Henderson*, 278 Cal. Rptr. 570, 575 (Ct. App. 1991), *overruled on other grounds by Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 291 P.3d 316 (Cal. 2013). Here, the women affirmatively represented they had read and understood the agreement and further attested they "had the opportunity to ask questions and obtain advice, to ensure I understand this Agreement in its entirety." App. vol. 2 at 268, 275. But even if we were to accept that neither Ms. Harning nor Ms. Jimenez understood the arbitration provision despite receiving it in their respective native languages, they "kn[ew] [their] own inexperience" but signed the agreement without verifying that they understood all the provisions in the agreement. *West*, 278 Cal. Rptr. at 575.

Finally, we conclude that any surprise from the contract is negligible. The arbitration provision is not concealed in a "prolix printed form." *Pinnacle Museum*, 282 P.3d at 1232 (quoting *Morris*, 27 Cal. Rptr. 3d at 805). While the arbitration provision does not have a separate heading, there is no requirement in California law that it have one. *See Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 751 (Cal. 2015) ("Any state law imposing such an obligation [to call the arbitration provision to a party's attention] would be preempted by the FAA."). The contract is only six pages long and the provision appears on the last page, immediately before the signature

21

block, as a group of three paragraphs that are easy to see. Both Ms. Harning and

Ms. Jimenez signed the agreement, attesting they had read it, and both testified they

had read and understood the agreement. *See Alonso v. AuPairCare, Inc.*, No. 3:18-cv-

00970-JD, 2018 WL 4027834, at *3 (N.D. Cal. Aug. 23, 2018) ("The entire APC au

pair agreement is only eight pages long, uses plain language, and is organized by

topic. The arbitration provision appears on the last page before the signature page and

is reasonably eye-catching. Plaintiffs say that the arbitration provision should have

been included under the heading 'Problem Resolution and Placement Changes' rather

than under 'Other Terms and Conditions,' but the former deals with problems that

arise between the au pair and the host family. It was not surprising or misleading for

APC to place the arbitration provision under 'Other Terms and Conditions.'")

(citation omitted)).

\* \* \*

In summary, we conclude on de novo review that the Au Pair Agreements are

procedurally unconscionable, but to a moderate degree. The agreements are contracts of

adhesion, presented to the au pairs on a take-it-or-leave-it basis. Ms. Harning's and

Ms. Jimenez's youth, status as foreigners, and inexperience with contracts do not increase

the procedural unconscionability to any significant degree, and because the provision was

not concealed in the agreement, no element of surprise can be inferred. Where

Ms. Harning and Ms. Jimenez reviewed translations of the contract in their native

languages, we are also convinced no procedural unconscionability attaches to their

limited proficiency in English. Finally, participation in the au pair program is not

necessary employment and reasonable alternatives are viable, which weigh against

procedural unconscionability. Considering all of the circumstances as a whole, we find

the au pair agreement suffers from "moderate" procedural unconscionability.

## 2.   **Substantive Unconscionability**

Substantive unconscionability focuses on "'overly harsh' or 'one-sided' results."

*Armendariz*, 6 P.3d at 690 (quoting *A&M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114,

122 (Ct. App. 1982)). The Supreme Court of California has variously described this as

"overly harsh," "unduly oppressive," "so one-sided as to shock the conscience," or

"unfairly one-sided." *Baltazar*, 367 P.3d at 11 (collecting cases). "All of these

formulations point to the central idea that the unconscionability doctrine is concerned not

with 'a simple old-fashioned bad bargain,' but with terms that are 'unreasonably

favorable to the more powerful party.'" *Id.* (first quoting *Schnuerle v. Insight Commc'ns

Co.*, 376 S.W.3d 561, 575 (Ky. 2012), then quoting 8 Williston on Contracts § 18:10 at

91 (4th ed. 2010)).

> These include "terms that impair the integrity of the bargaining process or
> otherwise contravene the public interest or public policy; terms (usually of
> an adhesion or boilerplate nature) that attempt to alter in an impermissible
> manner fundamental duties otherwise imposed by the law, fine-print terms,
> or provisions that seek to negate the reasonable expectations of the
> nondrafting party . . . ."

*Id.* at 11–12 (quoting 8 Williston on Contracts § 18:10 at 91). "A party cannot avoid a

contractual obligation merely by complaining that the deal, in retrospect, was unfair or a

bad bargain. Not all one-sided contract provisions are unconscionable; hence the various

intensifiers in our formulations: *overly* harsh, *unduly* oppressive, *unreasonably* favorable." *Id.* at 12 (internal quotation marks omitted).

Ms. Harning and Ms. Jimenez argue three distinct clauses of the provision are unconscionable: the clause that allows APC to unilaterally select an arbitration provider, the forum selection clause, and the fee shifting clause. We address each clause in turn, concluding that only the arbitration provider selection clause is unconscionable.

a.   *Arbitrator provider selection*

Ms. Harning and Ms. Jimenez argue that allowing APC to choose an arbitration provider is substantively unconscionable. In support, they cite to California cases establishing that a clause allowing the party of superior bargaining strength to unilaterally select an *arbitrator*, not an arbitration *provider*, is substantively unconscionable. For example, in *Sonic-Calabasas A*, the Supreme Court of California held "an adhesive agreement that gives the employer the right to choose a biased arbitrator is unconscionable." 311 P.3d at 207; *see also id.* at 201 (stating that an adhesive agreement may not give "the party imposing [the] adhesive contract the right to choose a biased arbitrator"). APC argues this distinction is key and claims that because the clause here requires "neutral arbitration," allowing APC to select the arbitration provider is not unconscionable. We are not convinced.

There is no practical significance to the difference between allowing APC to select an arbitration provider and allowing it to select an arbitrator. Nothing would prevent APC from selecting an arbitration provider with only one arbitrator favorable to APC or from selecting an arbitration provider that employs only biased arbitrators. And the

24

agreement's inclusion of the phrase "neutral arbitration" does not cure this defect. In *Magno*, the California Courts of Appeal held that even an agreement that expressly requires arbitration before a "neutral arbitrator" may be unconscionable if, in practice, the stronger party may select a biased arbitrator with no recourse for the weaker party. *See* 204 Cal. Rptr. 3d at 840 (finding that a clause that required arbitration before a "neutral arbitrator" "contain[ed] no assurances of neutrality").

APC discounts the relevance of *Magno,* noting that the contract there did not "requir[e] an arbitrator to be selected from a neutral arbitration service," but instead allowed the party to "*unilaterally* select an arbitrator." *Id.* We do not view *Magno* so narrowly. Under our reading of *Magno,* an arbitration provision may be acceptable if it requires an arbitrator to be selected from an *identified* neutral arbitration service. Where the specific arbitration service is named in the agreement, the weaker party can assess the neutrality of that provider before executing the agreement and will not be subject to unfair surprise when the stronger party later selects a suspect arbitration service. Only if the contract names the particular arbitration service to be employed does the "provision contain[] . . . assurances of neutrality." *Id.*

We conclude the clause allowing APC to select unilaterally the arbitration provider has the same inherent unconscionability as allowing it to select the arbitrator. This clause has a high degree of substantive unconscionability.

b.     *Forum selection*

Ms. Harning and Ms. Jimenez next contend the forum selection clause designating San Francisco, California, as the arbitration forum is unconscionable. In some instances,

a forum selection clause may be indicative of substantive unconscionability. In *Smith, Valentino & Smith, Inc. v. Superior Court*, the Supreme Court of California provided guidelines for determining when a forum selection clause is enforceable. The court concluded that "forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." 551 P.2d 1206, 1209 (Cal. 1976) (en banc). The reasonableness of the forum selection clause is relevant both at the time of enforcement of an agreement and at the time of contract formation.

At the time of enforcement, a party may show that enforcing the clause would be "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Aral v. Earthlink*, 36 Cal. Rptr. 3d 229, 241–42 (Ct. App. 2005) *abrogated on other grounds by Concepcion*, 563 U.S. 333 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). But in attempting to satisfy its burden of demonstrating that a forum selection clause is unreasonable, a party's showing of "the additional expense and inconvenience attendant on the litigation of . . . claims in a distant forum" is insufficient. *Smith,* 551 P.2d at 1209. "Mere inconvenience or additional expense is not the test of unreasonableness." *Id.* (quoting *Cent. Contracting Co. v. C.E. Youngdahl & Co.*, 209 A.2d 810, 816 (Pa. 1965)). To be sure, *Smith* involved an arm's length transaction and a mutual forum selection clause, rather than an adhesion contract

with a unilateral forum selection clause.[4] But California Courts of Appeal have

interpreted *Smith* broadly to also apply to contracts of adhesion and unilateral clauses.

*See Aral*, 36 Cal. Rptr. 3d at 238–39; *Intershop Commc'ns, AG v. Superior Court*, 127

Cal. Rptr. 2d 847 (Ct. App. 2002); *Hunt v. Superior Court*, 97 Cal. Rptr. 2d 215 (Ct. App.

2000).

Alternatively, a party may show that at the time of contract formation, the clause

did not provide "adequate notice" to a party that the party "was agreeing to the

jurisdiction cited in the contract," *Hunt*, 97 Cal. Rptr. 2d at 219, such that being "required

to resolve any disputes in" the selected forum was not in a party's "reasonable

expectations," *Magno*, 204 Cal. Rptr. 3d at 838, 839, or that "one party has imposed a

remote alien forum bearing no relationship to the contract at issue," *Lu v. Dryclean-

U.S.A. of Cal., Inc.*, 14 Cal. Rptr. 2d 906, 908 & n.2 (Ct. App. 1992).

APC argues that, contrary to the district court's holding, there is evidence in the

record that suggests Ms. Harning and Ms. Jimenez should have reasonably expected they

would be required to arbitrate in California. We agree.[5]

The Au Pair Agreements themselves include references in multiple paragraphs to

California. First, the opening paragraph of the agreements indicates that AuPairCare is a

---

[4] In *Smith*, whichever party initiated an action was required to travel to the other party's forum. A unilateral forum selection clause requires all actions, regardless of who initiates the action, to take place in a particular forum.

[5] Ms. Harning and Ms. Jimenez argue APC has forfeited any arguments that they could have reasonably expected to arbitrate in San Francisco. We disagree. At no point did Ms. Harning and Ms. Jimenez allege they were unaware of the forum selection clause. On appeal, APC is addressing the reasoning of the district court, which was not apparent until it issued the decision denying APC's motion.

California corporation. The agreements also include a choice of law provision that dictates the application of California law. More importantly, the agreements expressly provide that arbitration will take place in San Francisco, California, and that California is a fair location because the "agreement was negotiated in large part in California, and AuPairCare is domiciled in California." App. vol. 2 at 268, 275. And in the event the arbitration clause is deemed void or inapplicable, the agreements state the parties agree to submit to personal jurisdiction in San Francisco County, California. In the face of these provisions, we cannot agree with the district court that "there is nothing in the record to suggest that either au pair was aware of" the obligation to arbitrate or litigate in California. *Beltran*, 2017 WL 4418711, at *8.

Ms. Harning's and Ms. Jimenez's argument to the contrary is essentially that they did not understand what arbitration meant and thus could not reasonably understand that they would be forced to "arbitrate" in California based on a contract they signed in their home countries to serve as au pairs in other states within the United States. But, similar to cases where California courts have found forum selection clauses enforceable, here "the forum selection clause plainly says that [San Francisco, California] is the selected forum." *Intershop Commc'ns*, 127 Cal. Rptr. 2d at 855. "Plaintiff[s] had full notice that [they were] agreeing to [San Francisco] as the place of [arbitration], even though [they] may have chosen not to read the [six]-page contract." *Id.*

Alternatively, arbitration in San Francisco would be unreasonable if Ms. Harning and Ms. Jimenez demonstrated it would be "gravely difficult and inconvenient." *Aral*, 36 Cal. Rptr. 3d at 241. In this regard, as discussed above, "[m]ere inconvenience or

28

additional expense is not the test of unreasonableness." *Smith*, 551 P.2d at 1209 (quoting

*Cent. Contracting Co.*, 209 A.2d at 816). But Ms. Harning and Ms. Jimenez do not allege

any particular difficulty of litigating in San Francisco other than the inconvenience and

the cost. And as one California court made clear, even the costs of traveling

internationally are not sufficient to render the forum selection clause in an employment

agreement unreasonable. *See Intershop Commc'ns*, 127 Cal. Rptr. 2d at 853. Yet,

Ms. Harning's and Ms. Jimenez's sole argument regarding hardship is that the two

"would need to incur significant expenses to pursue their claims in an inconvenient forum

if the forum selection clause is enforced." Appellee's Br. at 35. That is insufficient under

California law to establish unreasonableness. *See Smith*, 551 P.2d at 1209.

The women also argue that because Ms. Harning served as an au pair in Michigan

and Virginia and Ms. Jimenez served as an au pair in Pennsylvania, "it would have been

unreasonable and inconvenient for them to resolve any disputes with APC in California,

rather than any of those forums, or another forum of their choice where they could

consolidate their claims with other *au pairs*." Appellee's Br. at 35–36. They further

contend, "Forcing them into a forum where APC argues they must arbitrate their claims

individually would undoubtedly have the effect of 'shielding' APC 'from liability' and be

'so gravely difficult and inconvenient that' [Ms.] Harning and [Ms.] Jimenez would 'for

all practical purposes be deprived' of their day in court." *Id.* at 36. Again, the fact that

they served as au pairs in other states is not the test—"[m]ere inconvenience or additional

expense" is not sufficient. *Smith*, 551 P.2d at 1209 (quoting *Cent. Contracting Co.*, 209

A.2d at 816). And the alleged proscription against class arbitrations does not render the

clause unconscionable. *See Sanchez*, 353 P.3d at 757 (noting that, after the Supreme Court decided *Concepcion*, "the imposition of class action arbitration or litigation interferes 'with fundamental attributes of arbitration'" and "[t]o find the class action waiver here unconscionable would run afoul of *Concepcion*" (quoting *Concepcion*, 563 U.S. at 344)).

Ms. Harning's and Ms. Jimenez's reliance on *Bolter v. Superior Court*, 104 Cal. Rptr. 2d 888 (Ct. App.), *as modified on denial of reh'g* (Mar. 30, 2001), is also unavailing. In *Bolter*, the parties alleged *specific* facts demonstrating the distant forum was unreasonable: the franchisees were "small businesses" and the various franchisees explained they would need to be at their businesses "daily in order to receive calls from potential customers, schedule cleanings, and do all that must ordinarily be done in connection with such a family-run business," that they "would lose much of [their] business if forced to litigate the matter outside of California," and that "they are all suffering from severe financial hardships and could not afford to maintain their claims if forced to litigate the matter out of state." *Id.* at 895. Ms. Harning and Ms. Jimenez have made no such factual showing. Instead, they have made only conclusory statements that arbitrating in California would be "unreasonable and inconvenient" and have provided no specific factual support or detail why the expense of travelling to San Francisco would be unduly burdensome.

Ms. Harning and Ms. Jimenez have not shown that the forum selection clause is unreasonable and consequently, the clause is not unconscionable.

c.    *Fee shifting*

Finally, Ms. Harning and Ms. Jimenez argue that the fee shifting clause is

unconscionable. California courts have found fee shifting clauses in employment

contracts to be unconscionable under certain limited circumstances, none of which is

present here.

"In the context of mandatory employment arbitration of unwaivable statutory

rights, [the Supreme Court of California] ha[s] held that arbitration agreements 'cannot

generally require the employee to bear any *type* of expense that the employee would not

be required to bear if he or she were free to bring the action in court.'" *Sanchez*, 353 P.3d

at 754 (quoting *Armendariz*, 6 P.3d at 687); *see Sonic-Calabasas A*, 311 P.3d at 192 ("[In

*Armendariz*] [w]e concluded that arbitration agreements cannot be made to serve as a

vehicle for the waiver of unwaivable statutory rights, such as rights under the California

Fair Employment and Housing Act." (internal quotation marks omitted)). Thus, if a fee

shifting clause involves "unwaivable statutory rights," employees are protected against

bearing fees they would not otherwise bear in litigation. In other situations, however,

California courts have found fee and cost shifting clauses contribute to unconscionability

only when the clause is one-sided. *See Samaniego*, 140 Cal. Rptr. 3d at 499 (finding fee

shifting clause unconscionable because it required employees to pay fees of employer but

"impose[d] no reciprocal obligation on" the employer); *Carmona*, 171 Cal. Rptr. 3d at 53

(finding unconscionable a clause that allowed the employer to recover fees whenever it

instituted a proceeding regardless of whether it prevailed without a reciprocal clause in

favor of employees).

31

APC argued before the district court that the fee shifting clause is irrelevant to the substantive unconscionability analysis here and even if it were considered, it does not involve any unconscionability. The district court agreed that it was irrelevant and declined to consider the fee shifting clause because, "[a]s applied to the facts of this case," the fee shifting clause would not apply. *Beltran*, 2017 WL 4418711, at *7. Ms. Harning and Ms. Jimenez argue that, even if the clause would not apply to their current action, the clause provides "strong indicia of substantive unconscionability." Appellee's Br. at 38 (quoting *Samaniego*, 140 Cal. Rptr. 3d at 499–500)). We agree, in part, with Ms. Harning and Ms. Jimenez.

The district court erred in not including the fee shifting clause in its unconscionability analysis. Under California law, unconscionability is not determined based on the particular facts at the time of a lawsuit or motion to compel arbitration. Instead, "the unconscionability inquiry requires a court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided." *Sonic-Calabasas A*, 311 P.3d at 203. That is, unconscionability is determined looking at the contract "at the time it was made." Cal. Civ. Code § 1670.5(a). At the time the au pair contract was made, what remedies would be pursued either in court or in arbitration was unclear. Thus, whether an unconscionable clause applies at the time of the motion to compel arbitration is not determinative—the court should still consider the clause in connection with the complete agreement. *See Carmona*, 171 Cal. Rptr. 3d at 53 (considering unenforceable clause as

part of the unconscionability analysis); *Samaniego*, 140 Cal. Rptr. 3d at 500 (same). We undertake that analysis now.

The fee shifting clause in the agreement states: "In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration[.]" App. vol. 2 at 268, 275. By its own terms, the clause applies only to actions for breach of contract. Thus, the clause does not impact any "unwaivable statutory rights," such as California's FEHA. *See Sanchez*, 353 P.3d at 754 (holding that a fee shifting clause affecting unwaivable statutory rights is unenforceable and unconscionable). Similarly, contrary to Ms. Harning's and Ms. Jimenez's contentions, the fee shifting clause does not apply to their federal antitrust, RICO, or FLSA claims.

Ms. Harning's and Ms. Jimenez's reliance on *Samaniego* and *Carmona* as support for finding the fee shifting clause unconscionable is also misplaced. In both of those cases, the fee shifting clauses at issue were unilateral and therefore illegal under California statutory law. Ms. Harning and Ms. Jimenez have not cited to any California case or statute establishing that a bilateral fee shifting clause that does not impact unwaivable statutory rights is unconscionable. To the contrary, both cases cited by Ms. Harning and Ms. Jimenez reasonably imply that bilateral agreements are acceptable under California law. *See Samaniego*, 140 Cal. Rptr. 3d at 499 (noting that the agreement "impose[d] no reciprocal obligation on" the employer); *id.* at 500 ("[O]ne-way fee shifting provisions that benefit only employers violate both the Labor Code and commercial arbitration rules."); *Carmona*, 171 Cal. Rptr. 3d at 53 (noting that "[n]o

reciprocal provision exists allowing employees to recover attorney fees and costs"); *id.* (citing California Civil Code Section 1717, which was "enacted to make all parties to a contract, especially an 'adhesion contract,' equally liable for attorney's fees and other necessary disbursements" (quoting *Sys. Inv. Corp. v. Union Bank*, 98 Cal. Rptr. 735, 752 (Ct. App. 1971)). Because the clause here is bilateral and does not involve unwaivable statutory rights, it is not unconscionable.

* * *

Under de novo review and considering each Au Pair Agreement on the whole, the agreements have significant substantive unconscionability. The arbitration provider selection clause clearly lacks mutuality—the clause allows APC to select indirectly a biased arbitrator. But neither the fee shifting clause nor the forum selection clause is unconscionable or contributes to substantive unconscionability.

## 3.   Overall Unconscionability

Because the au pair agreements have moderate procedural unconscionability and significant substantive unconscionability due to the arbitration provider selection clause, the au pair agreement is unconscionable and unenforceable as written. We now determine whether the arbitration provider selection clause, the only substantively unconscionable clause, is severable from the agreement.

## C.   *Severance*

If a court finds a clause of a contract to be unconscionable, it "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as

34

to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). Although the statute gives "a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement," "it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." *Armendariz*, 6 P.3d at 695. "The overarching inquiry is whether the interests of justice would be furthered by severance." *Id.* at 696 (internal quotation marks omitted). The Supreme Court of California has identified at least two occasions in which a contract is permeated by unconscionability.

First, a contract that "contains more than one unlawful provision" is permeated by unconscionability. *Id.* at 696–97. "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* at 697. Second, permeation is "indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* California courts are unable to add additional terms, so only unconscionability that may be cured through severance or restriction is allowed. *Id.* "In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is 'permeated' by unconscionability." *Magno*, 204 Cal Rptr. 3d at 841 (quoting *Ajamian v. CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773, 799 (Ct. App. 2012)). California has recognized that arbitrator selection clauses may be severed from arbitration provisions. *Armendariz,* 6 P.3d at 697–98 (citing *Scissor-Tail*, 623 P.2d at

180). Where an arbitration provision is not permeated by unconscionability, the offending clause should be severed. *See Dotson v. Amgen, Inc.*, 104 Cal. Rptr. 3d 341, 350 (Ct. App. 2010) ("Even if we assume the discovery provision to be unconscionable, . . . the trial court abused its discretion by refusing to sever it. Where, as here, only one provision of the agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement, the proper course is to do so.").

Because we have found only one substantively unconscionable clause, the contract is not permeated by unconscionability. In this case, we can easily sever the offending clause from the remainder of the agreement. By simply striking the phrase "before an arbitration provider selected by AuPairCare," the substantively unconscionable clause is removed without needing to rewrite any portion of the contract because both California and federal law provide a default method for appointing an arbitrator. *See* 9 U.S.C. § 5 (if an arbitration agreement does not provide a method of selecting an arbitrator, "then upon the application of either party to the controversy the court shall designate and appoint an arbitrator"); Cal. Civ. Proc. Code § 1281.6 ("If the arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed."); *Armendariz*, 6 P.3d at 698 (noting that a clause calling for the selection of a biased arbitrator is severable because of the default method); *Scissor-Tail*, 623 P.2d at 180 (declining to invalidate entire arbitration provision and instead finding the appointment of a biased arbitrator severable based on the statutory default rule). Contrary to the district court, we identify only one offending clause in the

36

arbitration provision, and we hold that it should be severed and the parties' agreement to arbitrate their dispute otherwise enforced.

* * *

Because the arbitration provision has only one substantively unconscionable clause, the arbitration provider selection clause, the district court abused its discretion by not severing the offending clause.

### III. CONCLUSION

We **REVERSE** the district court's denial of APC's motion to compel arbitration. We **REMAND** to the district court to sever the arbitration provider selection clause and to compel the parties to arbitrate.[6]

---

[6] APC has also filed a motion to take judicial notice of "(1) geographical distances between certain cities; and (2) certain arbitration providers' rules and procedures" under Federal Rule of Evidence 201(b). Motion to Take Judicial Notice at 2 (Dec. 11, 2017). Because neither the distances nor the arbitration rules bear upon the disposition of this case, we **DENY** APC's motion. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

October 30, 2018

Chris Wolpert
Chief Deputy Clerk

Ms. Jennifer Arnett-Roehrich
Mr. Nathan Andrew Huey
Ms. Peggy E. Kozal
Mr. Thomas B. Quinn
Ms. Jennifer Wirkus Vedra
Gordon Rees Scully Mansukhani
555 Seventeenth Street, Suite 3400
Denver, CO 80202-0000

RE:     **17-1359, Beltran, et al v. Interexchange, Inc., et al**
        Dist/Ag docket: 1:14-CV-03074-CMA-KMT

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:     Jonathan S. Bender
        Brian Alan Birenbach
        Robert M. Buchanan Jr.
        Joseph B. Cartafalsa
        Brooke A. Colaizzi
        Kathleen Ellen Craigmile
        Raymond M. Deeny
        Bogdan Enica
        Martin Jose Estevao
        Chanda Marie Feldkamp
        Martha L. Fitzgerald
        Grace Anne Fox
        John B. Fulfree
        Jessica L. Fuller
        Michael T. Gass
        James E. Hartley
        Diane Rebecca Hazel
        Alexander Hood
        Adam A. Hubbard
        Joseph H. Hunt
        Randall Wade Jackson
        William J. Kelly III
        Vance Orlando Knapp
        Lyndsey Marie Kruzer
        Lawrence L. Lee
        Alyssa L. Levy
        Joshua James Libling
        Lauren Fleischer Louis
        Joan A. Lukey
        James Michael Lyons
        Stephen J. Macri
        Aubrey Jane Markson

Sigrid Stone McCawley
Sabria Alexandria McElroy
David Brandon Meschke
Kevin Patrick O'Keefe
Byron Pacheco
Kathryn A. Reilly
Meshach Y. Rhoades
Sean Phillips Rodriguez
Susan M. Schaecher
Matthew Lane Schwartz
David Hollis Seligman
Peter Murray Skinner
Dawn L. Smalls
Eric Jonathan Stock
Lawrence D. Stone
Robert M. Tucker
Juan Pablo Valdivieso
Heather Fox Vickles
Natalie Elizabeth West
Justin J. Wolosz


EAS/na