IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; LUSAPHO HLATSHANENI;
BEAUDETTE DEETLEFS; ALEXANDRA IVETTE GONZALEZ;
SARAH CAROLINE AZUELA RASCON; LAURA MEJIA JIMENEZ;
JULIANE HARNING; NICOLE MAPLEDORAM;
CATHY CARAMELO; LINDA ELIZABETH;
CAMILA GABRIELA PEREZ REYES;

and those similarly situated,


        Plaintiffs,
v.

INTEREXCHANGE, INC.; USAUPAIR, INC.;
GREATAUPAIR, LLC; EXPERT GROUP INTERNATIONAL INC.,
DBA EXPERT AUPAIR; EURAUPAIR INTERCULTURAL CHILD CARE
PROGRAMS; CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE INC.; AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
ASSOCIATES IN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

        Defendants.

_____

**DEFENDANTS' RESPONSE TO THE COURT'S REQUEST FOR SIMULTANEOUS
BRIEFING REGARDING STATUTES OF LIMITATIONS AND EQUITABLE TOLLING
[ECF NO. 1167]**

## INTRODUCTION

To prevail on their request for equitable tolling, which is an exception to the statutory limitations periods applicable to Plaintiffs' claims, Plaintiffs bear the burden of establishing that Defendants concealed—from all au pairs whose claims fall outside the statutory limitations period—that au pairs were permitted to receive a stipend of more than $195.75 per week.  Plaintiffs cannot make such a showing.[1]

The record developed in this case is extensive, and conclusively demonstrates that many au pairs knew full well (or at a minimum, should have known) that they could be paid more than $195.75.  For example, as described in greater detail with supporting authorities below, several sponsors used standard form contracts that expressly informed au pairs and host families that au pairs could be paid more than $195.75 per week.  The fact that many au pairs—including some named plaintiffs—signed these contracts belies any suggestion that the ability to pay more than the stipend was somehow concealed from them.  Other sponsor communications made the same point in different ways.  A variety of materials produced in this case show that various sponsors told host families, local coordinators, and/or au pairs themselves that the weekly stipend must be *at least* $195.75 per week, underscoring that a higher stipend was not prohibited.  Indeed, Plaintiffs' own expert admits that a substantial portion of the

---

[1] As explained *infra* n. 9, Plaintiffs likewise cannot establish equitable tolling with respect to their theory that the Defendants "failed to disclose" that "the $195.75 weekly wage could be illegal," Third Am. Compl. ¶ 613, ECF No. 983, which theory has in any event been debunked by the United States in a brief filed jointly by the Department of Justice and the Department of State in a pending case in the United States Court of Appeals for the First Circuit.

class received more than $195.75 (often $200) per week in every year that he examined (going back to 2009).  Surely au pairs will not be able to demonstrate that they believed $195.75 was a legal maximum when they were, in fact, often paid more.

Because this is a class action, Plaintiffs bear the burden of demonstrating on a class-wide basis that class members whose claims fall outside the statutory limitations period are entitled to equitable tolling.  Plaintiffs cannot make such a showing.  The proof in these circumstances must be class-wide, not individual; and the absence of such class-wide proof of universal "fraudulent concealment" is fatal to Plaintiffs' equitable tolling argument.  *See* § I.A.4 *infra*.  The Court should hold that, because Plaintiffs have insufficient evidence to prove equitable tolling at trial, the normal statutes of limitations apply to their claims, and establish the start dates for each class and sub-class accordingly.

## BACKGROUND

Plaintiffs have never fully articulated their argument for equitable tolling.  As far as Defendants can tell, however, Plaintiffs' tolling theory closely tracks their related allegations of fraud.  According to Plaintiffs, Defendants endeavored to place "downward pressure" on the amount of the stipend.  Ex. A, Kerr Dep. Tr. at 26:12–19 (12/21/2017).[2]  They allegedly did so by agreeing to "provid[e] information to au pairs that either explicitly or implicitly told the au pairs what they should be getting is

---

[2] Defendants rely on evidence previously cited by the parties on this docket.  For the convenience of the Court, Defendants have attached many of those documents previously cited on the docket as exhibits to this brief.  Defendants have not attached documents that were previously filed as restricted and instead reference the relevant ECF number of those restricted documents.

$[195.75] a week" and by giving "similar information to the host families."  Ex. A, Kerr Dep. Tr. at 26:23–27:14 (12/21/2017).  Plaintiffs also argue that the amount $195.75 itself fails to comply with the law.  *See, e.g.*, Third Am. Compl. ¶ 613, ECF No. 983.

For the reasons that follow, no theory of equitable tolling conceivably could apply to those allegations, particularly on a class-wide basis as would be required for Plaintiffs to invoke the doctrine here.

## ARGUMENT

### I.    LEGAL STANDARD

Statutes of limitations play a critical role in our legal system.  *See, e.g.*, *Rotella v. Wood*, 528 U.S. 549, 555 (2000).  As the Supreme Court of the United States has explained, they are "vital to the welfare of society," and advance several important goals:  "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and defendant's potential liabilities."  *Gabelli v. SEC*, 568 U.S. 442, 448–49 (2013).  Equitable tolling is therefore an exception to the general rule that courts should enforce statutes of limitations.  *See Rotella*, 528 U.S. at 561 (explaining that equitable tolling is "the exception, not the rule").

The burden of proving that a limitations period should be equitably tolled falls squarely on Plaintiffs.  *King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154–55 (10th Cir. 1981).  Because invocation of equitable tolling depends on active concealment of a party's rights, the Court has asked the parties to focus on whether Plaintiffs have evidence sufficient to prove that Defendants actively concealed the rights of class members.  *See* Order For Simultaneous Briefing, ECF No. 1167.  If Defendants

- 3 -

did not attempt to do so, then there can be no equitable tolling.  But, even if they did (which is not the case), the analysis does not end there:  Where a plaintiff nevertheless knew or reasonably should have known of the facts giving rise to her claim, the usual statute of limitations applies.  *See, e.g.*, *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 226–27 (2012) (holding that "tolling ceases" under the fraudulent concealment doctrine when the plaintiff discovers, or should have discovered, the facts defendants allegedly attempted to conceal).

## DISCUSSION

A.   **Plaintiffs Have Insufficient Evidence to Support a Claim that Sponsors Fraudulently Concealed from the Entire Class the Possibility that They Could be Paid More than $195.75.**

Plaintiffs cannot carry their burden of establishing equitable tolling.  Although they seem to suggest that there was some universal concealment of the fact that $195.75 was not the maximum permissible payment, in fact a number of Sponsors widely distributed materials indicating that au pairs could receive more.[3]  *See* §§ 1-4 *infra*.  This evidence disposes of any notion that every au pair seeking to have her or his claims revived through equitable tolling actually believed that $195.75 was the most s/he could receive. Because Plaintiffs cannot make any class-wide showing to carry

---

[3] In many other cases, communications simply relayed the dollar amount as it was conveyed in notices issued by the Department of State—which did not describe the stipend as either a minimum or a maximum.  *See, e.g.*, Ex. B, Defs.' SJ App. 00000478.

- 4 -

their burden, the Court should reject Plaintiffs' request for equitable tolling as a matter of law.[4]

### 1. Many Au Pairs Knew They Could Receive More than $195.75 Per Week Based on Language in the Contracts They Signed.

Although most sponsors do not contract with au pairs directly, several regularly ensured that au pairs were informed via form contracts signed with host families that $195.75 was a minimum.  For example, during the six-year period that preceded this lawsuit, APIA required each au pair and host parent to sign a written agreement.  Ex. C, Decl. of R. Ferry (2/12/2018) ¶¶ 10–11, Defs.' SJ App. 00000004 at 006.  Among other things, the agreement specified that the au pair "is to receive, **at a minimum**, the weekly stipend as stipulated by regulations governing au pair programs . . . ."  *Id.* (emphasis added).  Indeed, one of the named Plaintiffs signed such an agreement.  *Id.* ¶ 10; Ex. C, Defs.' SJ App. at 013-014 (contract signed by Lusapho Hlatshaneni and her host family).  Indeed, throughout the relevant time period, APIA's website provided that $195.75 was the "minimum" weekly stipend.  Decl. of Ruth Ferry ¶¶ 16-17 (7/17/2017), ECF No. 605-4 at 7-8, ECF No. 605-6 at 1-12.

APIA is not alone.  Go Au Pair similarly required every host family and every au pair to sign written contracts.  Ex. D, Decl. of Bill Kapler ¶¶ 27–28, Defs.' SJ App. 00000728 at 735-736.  These contracts trumpet the very fact that Defendants allegedly

---

[4] The same reasoning bars Plaintiffs from invoking other doctrines that might extend the limitations period.  For example, even where claims incorporate a so-called "discovery rule," the statutory period begins to run when the plaintiff "discovers or should have discovered the injury giving rise to the claim."  *See, e.g.*, *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 962 (2017).

conspired to conceal:  that the stipend must be at least $195.75 each week.  Ex. E, Defs.' SJ App. 00000751 at 752 (host family agreement stating "[w]e agree to provide the Au Pair with pocket money of **not less than** $195.75* per week") (emphasis added); Ex. F, Defs.' SJ App. 00000782 at 785 (au pair agreement stating "I agree my weekly stipend will be **no less than** the amount in the table below [i.e., $195.75]") (emphasis added).  One of the named Plaintiffs signed at least two agreements with Go Au Pair which explained that $195.75 was a minimum.  Ex. G, Defs.' SJ App. 00000778 at 779–081 ("Au Pair Agreement" signed by Ivette Alexandra Gonzalez Cortes).

So, too, for InterExchange.  InterExchange's standard "Au Pair Agreement" defines the "Stipend" as "**the minimum amount** that the Host family is required to pay the Au Pair . . . ."  Ex. H, Defs.' SJ App. 00000927 at 938 (emphasis added).  It goes on to explain that "[t]he current **minimum required weekly amount** is . . . $195.75."  *Id.* (emphasis added).  Named plaintiff Johana Paola Beltran's agreement included precisely those terms.  *See* Ex. H, Decl. of Michael McHugh ¶ 13, Defs.' SJ App. 00000927 at 929-930.  So did the standard "Host Family Agreement" that her InterExchange host family signed.  *Id.*; Ex. I, Defs.' SJ App. 00000953 at 956 (defining the "Stipend" in the same way).  These examples alone demonstrate that Plaintiffs cannot possibly establish that the entire class of au pairs was universally tricked into believing $195.75 was a maximum that could not be exceeded.

> ## 2. Many Au Pairs Knew That $195.75 Was a Minimum Because Host Families or Recruiters Told Them So, Or Other Information Provided by the Sponsors Said So.

- 6 -

In addition to the contracts, the myriad communications that the fifteen defendant sponsors had with the tens of thousands of au pairs and host families contain numerous communications reflecting that $195.75 was not a "ceiling."  For example, the standard agenda used by Au Pair International in its pre-match interviews with prospective host families, Ex. J, Decl. of Stephen Lehan ¶ 11, Defs.' SJ App. 00000120 at 123, contains a statement that au pairs must receive a "**minimum** stipend" of $195.75 per week, and expressly advises that host families have the discretion to pay a higher amount.  Ex. K, Defs.' SJ App. 00000132 at 136 (emphasis added).  Au Pair International's stock responses to "Frequently Asked Questions" likewise states that au pairs must receive "**minimum** $195.75 per week."  *Id.* at 138 (emphasis added).

As another example, Cultural Care instructed its local coordinators that host families are "free to pay more than the minimum stipend."  Ex. L, Decl. of Natalie Jordan ("Jordan Decl.") ¶¶ 23–25, Defs.' SJ App. 00000144 at 147–148.  It did so repeatedly, in a series of presentations, which stated that a host family could "pay their au pair **more than $195.75/week**."  Defs.' R. App. 00000144 at 144–145, ECF No. 862-6 (emphasis added); Defs.' R. App. 00000215 at 215–216, ECF No. 862-7 (same); Defs.' R. App. 00000283 at 283–284, ECF No. 862-11 (same).  Cultural Care communicated substantially the same point to host families and au pairs directly.  Throughout the class period, Cultural Care sent tax literature to host families and au pairs that acknowledged explicitly that au pairs could receive more than $195.75 per week.  Ex. L, Jordan Decl. ¶¶ 26-27, Defs.' SJ App. at 148; Ex. M, Defs.' SJ App. 00000183 at 183 ("[I]f an au pair is paid a particularly large stipend amount, they and their host family should consult with

a tax advisor . . . ."); ("Some families choose to pay more than the required $195.75 stipend."); ("Many families choose to increase the stipend during an extension year."). That information was "always" available to host families, au pairs, and local coordinators alike.  Ex. L, Jordan Decl. ¶ 26, Defs.' SJ App. at 148.  Consistent with these communications, one of the named plaintiffs sponsored by Cultural Care testified that she received stipends from her host family that ranged from $200 to $600 per week. Ex. N, Rascon Dep. Tr. at 137:9–11 ("For some weeks we see here that the lowest was $200 a week, is that right?  A. Yes."); 137:21–23 ("But then there are a number of weeks where the payment was $225, correct?  A.  Yes.); 137:24–138:2 ("I see one where the payment was $300, is that right? . . . . A.  Yes.); 138:3–5 ("And then the last payment was $600, is that right?  The last week.  A.  That's right.").

As another example, Cultural Homestay International conveyed information regarding the stipend by including a copy of the federal au pair regulations in its au pair handbook.  Ex. O, Decl. of Christina Reilly ¶ 17(a), Defs.' SJ App. 00000454 at 458–59. Cultural Homestay International likewise provided a copy of the regulations to host families in the host-family handbook.  *Id.* ¶ 17(b).  Like the contracts, these communications demonstrate that large parts of the class knew that $195.75 was a minimum.[5]

> **3.     Many Au Pairs Knew that $195.75 Was a Minimum Because They Received More than $195.75 Per Week.**

---

[5] Indeed, the United States has explained that the regulations themselves are clear that the calculated stipend is only a minimum.  Br. for United States as Amicus Curiae at 6, ECF No. 1156-1.

Many au pairs also knew that they could receive more than $195.75 per week *because they did*.  Indeed, although Defendants take issue with the methodology, even Plaintiffs' expert's "survey" (going back to 2009) concluded that the mean au pair stipend was greater than $200 per week.  Kerr Merits Rpt. Table 5B, ECF No. 886-12 at 10.[6]  Au pair testimony likewise confirms that many au pairs received more than $195.75 per week.  For example, several Cultural Care-sponsored au pairs received amounts that varied widely.  *See, e.g.*, Cultural Care Inc.'s Mot. to Decertify Collective Action, ECF No. 1068 at 2–3 (collecting au-pair testimony about receiving stipends of $200 per week, $220 per week, $225 per week, and $250–300 per week); Go Au Pair's Mot. for Summ. J. at 4, ECF No. 884 (11% of host families from 2010-2015 offered au pairs a stipend above $200); InterExchange, Inc.'s Motion to Decertify Plaintiffs' FLSA Collective Action, ECF No. 1066 at 11-12.  It goes without saying that an au pair who was paid more than $195.75 cannot possibly establish that he or she believed that $195.75 was a maximum; hence, he or she cannot establish that the statute of limitations should be tolled because of any alleged fraudulent concealment.[7]

---

[6] Defendants do not concede that Plaintiffs' expert's analysis is sufficiently reliable to be admitted at trial, and they reserve the right to challenge it under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702.  Defendants cite to it here because it apparently is the best evidence Plaintiffs have been able to muster regarding the stipends actually paid, and even it supports Defendants' position on equitable tolling (and a number of other issues).

[7] Several Sponsors were not operating before 2011.  *See* Stiroh Class Cert. Rpt. ¶ 21, Tbl. 1, ECF No. 603-45 (collecting the dates on which sponsors entered the program). These Sponsors join in this brief's arguments, but reserve the right to argue at a later date that they cannot be held jointly and severally liable for conduct that allegedly occurred before they were in business.

### 4. There Is No Class-Wide Evidence of Concealment that Plaintiffs Could Use to Carry Their Burden.

This is a class action.  To prove that they are entitled to an expanded limitations period and earlier class start dates, Plaintiffs must prove that equitable tolling is proper not just for some au pairs, but for all members of the class[8] who have claims that otherwise would be time-barred.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (holding that, although the rules allow plaintiffs to prosecute a case as a class action, the Rules Enabling Act "forbids interpreting Rule 23 to abridge, enlarge, or modify any substantive right") (internal quotation marks omitted); *cf. Blyden v. Mancusi*, 186 F.3d 252, 266–67 (2d Cir. 1999) (rejecting a class verdict that failed to establish the defendant's liability on a class-wide basis).  Any such showing would be impossible.  Not only does the record, discussed above, rebut Plaintiffs' central allegation regarding tolling—i.e., that Defendants successfully concealed that $195.75 was only a minimum—it forecloses any attempt they may make to establish that such tolling is appropriate on a class-wide basis.  Plaintiffs cannot credibly dispute that many class members knew that they could be paid more than $195.75.  This alone, without more, defeats any attempt to show class-wide equitable tolling.

---

[8] Although this brief refers to the time-barred plaintiffs as members of the class, the Court has never set a "start date," finding that it was appropriate to send notice to a broader group even if some of the individuals receiving notice ultimately will not have viable claims.  *See* Second Am. Order Granting Mot. for Conditional Collective Action Certification at 15 n.4, ECF No. 569 ("At this stage, the Court reserves ruling on the [statute of limitations] issue, because there is no prejudice to Defendants in notifying putative plaintiffs that may have a claim . . . .").

Moreover, even if the fact that many class members knew they could be paid more were not sufficient to defeat any claim of fraudulent concealment (which it is), Plaintiffs' request for class-wide equitable tolling would fail for another reason. They have identified no evidence that could reveal what each au pair understood about the stipend. In every case, an au pair could have learned from a host family, another au pair, a local coordinator, or any of the various sources of information cited above that he or she could receive a stipend of more than $195.75 per week. That is, no doubt, why Plaintiffs have never purported to identify any common proof tending to show what class members actually knew about the stipend. They cannot do so now, and that failure of proof is fatal to their tolling arguments.[9]

### B.   Plaintiffs' Failure of Proof Means that None of Their Claims Should be Equitably Tolled.

---

[9] Substantially the same problems doom any attempt by Plaintiffs to assert that Defendants fraudulently concealed the class members' alleged right to be paid the state or local minimum wage. Again, no source of class-wide proof conceivably could establish what each class member knew or did not know.

Moreover, any attempt to establish equitable tolling based on the state and local minimum wage theory would also fail because the theory is itself wrong. As the United States recently confirmed (consistent with what Defendants have argued previously), the federal au pair regulations preempt state and local minimum wage laws, which would conflict with the program's uniquely federal objectives. Mot. to Reconsider Order Denying Certain Defs.' Mot. for Summ. J. at 6-13, ECF No. 1156. In any event, Plaintiffs cannot contend *both* that publicly available materials distributed to each au pair clearly stated their rights *and* that those rights were successfully concealed from the au pairs. *See, e.g.*, Pls.' Opp'n to Defs.' Mot. for Summ J. at 26, ECF No. 942 (claiming that "Department of State's official, statutorily mandated documents issued to *au pairs* specify that *au pairs* are entitled to the protections of the federal and state wage and hour laws"); *cf. Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (the doctrine of judicial estoppel prevents a party from (i) taking "clearly inconsistent" positions, (ii) persuading a court to accept one of them, and (iii) later gaining an unfair advantage by asserting the opposite position).

Although the legal standard for tolling the statute of limitations varies somewhat from claim-to-claim, in order to avail themselves of a longer class period, all claims share in common that Plaintiffs must show that class members' rights were fraudulently concealed by Defendants.  Because Plaintiffs have failed to adduce any concealment of au pairs' rights, none of Plaintiffs' claims should be equitably tolled.

By way of example, as to their FLSA claims Plaintiffs bear the burden of showing that (a) equitable tolling applies and (b) that determination can be made collectively rather than on an individual basis.  *Chavez v. Milyard*, No. 10-cv-01122-BNB, 2010 WL 3155997, at *3 (D. Colo. Aug. 5, 2010) (Arguello, J); *Blair v. TransAm Trucking, Inc.* 2018 WL 1523101, at *27 (D. Kan. Mar. 28, 2018).  Under the FLSA, equitable tolling is to be applied "sparingly."  *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012).  Tolling is only appropriate "when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights."  *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001) (internal quotations omitted).  An alleged "misinterpretation of the applicable law and actions reliant upon that interpretation are not grounds for tolling the statute of limitations under the FLSA."  *Redmond v. Chains*, Inc., 996 P.2d 759, 763-64 (Colo. App. 2000) (citing *Shunney v. Fuller Co.*, 111 F. Supp. 543 (D.R.I. 1953) ("FLSA statute of limitations is not tolled where alleged misrepresentations were misrepresentations of law").  Consistent with this principle, equitable tolling is not warranted, for example, simply because an employer allegedly represents to employees

- 12 -

that they are not entitled to overtime pay.  *See Hart v. Sandridge Energy, Inc.*, No. CIV-14-178-R, 2014 WL 2983358, at *2-3 (W.D. Okla. July 1, 2014).  As discussed above, the factual record in this case plainly shows Plaintiffs have failed to meet the high bar for equitable tolling.  Moreover, Plaintiffs have not shown that the misrepresentations they allege were made on a class-wide basis.

The same conclusion is warranted when considering the four-year statute of limitations for Plaintiffs' antitrust or RICO claims.  As to their antitrust claims, Plaintiffs have "the burden of showing (1) the use of fraudulent means by the [Sponsors]; (2) successful concealment from the [au pairs]; and (3) that the [au pairs] did not know or by the exercise of due diligence could not have known that they might have a cause of action."  *Champlin Petroleum*, 657 F.2d at 1154–55.  The requirements to toll the RICO class are similar: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the claim within the limitations period and (3) due diligence in pursuing discovery of the claim.  *See Dumar v. Lummis*, 543 F.3d 614, 620–21 (10th Cir. 2008).

Plaintiffs' myriad state law claims follow similar standards.  *See, e.g., Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987) (explaining that the plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence); *Lutheran Hosp. of Md. v. Levy*, 482 A.2d 23, 29–30 (Md. App. 1984) (holding that plaintiffs must establish fraudulent concealment by "clear and convincing evidence").[10]  For example,

---

[10] For the convenience of the Court, Defendants have appended a list of claims for every class and subclass, with the applicable statutes of limitations.  *See* Appendix 1. As noted above, the principles for establishing equitable estoppel are sufficiently

Plaintiffs' negligent misrepresentation claim under Massachusetts law carries a limitations period of three (3) years.  Mass. Gen. Laws ch. 260, § 2A; *Passatempo v. McMenimen*, 960 N.E.2d 275, 288 (Mass. 2012).  In order to establish equitable tolling based on fraudulent concealment, Plaintiffs would be required to show that Defendants concealed the existence of the cause of action through affirmative acts performed with the intent to deceive.  *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189 (1st Cir. 2006). Nondisclosure alone will not suffice to prove concealment.  *See id.* at 190; *Szymanski v. Boston Mut. Life Ins. Co.*, 778 N.E.2d 16, 27 (Mass. App. Ct. 2002) ("Even when fraud is assumed in the initial transaction underlying the suit, mere silence in subsequent dealings between the parties does not amount to fraudulent concealment . . . ."). Plaintiffs will be unable to make such a showing, particularly on a class-wide basis, for the same reasons discussed above with respect to their other claims.

In addition, for Plaintiffs' various fraud-based state law claims, Plaintiffs would be required to point to a *later* fraud intended to cover up the initial alleged fraud.  *See, e.g., Zumpano v Quinn*, 849 N.E.2d 926, 931 (N.Y. Ct. App. 2006) (requiring some act subsequent to the alleged wrong that would have prevented the plaintiff from bringing his claim).  Plaintiffs' failure to uncover such evidence—much less, evidence that would satisfy this burden as to every class member seeking to have their limitations period extended—is fatal to their attempt to establish equitable tolling.

---

consistent to allow a ruling as a matter of law that equitable estoppel does not apply to any claims.  The start date for each class and sub-class would, thus, be tied to the start date for the limitations periods.

Because Plaintiffs have failed to make this showing as a matter of law, the Court should rule now that Plaintiffs' claims are limited to the applicable statutes of limitations. Plaintiffs should not be permitted to present argument at trial that any of these periods should be tolled.[11]

## **CONCLUSION**

For the foregoing reasons, the Court should hold that equitable tolling does not apply and that the usual statutes of limitations therefore govern the start date for each class and sub-class.

Dated:  November 13, 2018                    Respectfully submitted,

                                             *s/ Diane R. Hazel*
                                             Joan A. Lukey
                                             (joan.lukey@choate.com)
                                             Robert M. Buchanan, Jr.
                                             (rbuchanan@choate.com)
                                             Michael T. Gass
                                             (mgass@choate.com)
                                             Justin J. Wolosz
                                             (jwolosz@choate.com)
                                             Lyndsey M. Kruzer
                                             (lkruzer@choate.com)
                                             CHOATE HALL & STEWART LLP
                                             Two International Place
                                             Boston, Massachusetts  02110
                                             Telephone:  (617) 248-4790

                                             James M. Lyons (jlyons@lrrc.com)
                                             Jessica L. Fuller (jfuller@lrrc.com)
                                             Diane Hazel (dhazel@lrrc.com)

---

[11] In the event that the Court disagrees with Defendants and finds that Plaintiffs have set forth evidence that may justify equitable tolling, the proper procedure would be to allow Plaintiffs to present evidence of fraudulent concealment at trial so that the determination of whether the statutes of limitations were equitably tolled could be made at or after trial.

LEWIS ROCA ROTHGERBER
CHRISTIE LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 623-9000
Fax: (303) 623-9222

**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair**


s/ Kathryn A. Reilly
Kathryn A. Reilly
(reilly@wtotrial.com)
Grace A. Fox (fox@wtotrial.com)
Natalie E. West
(west@wtotrial.com)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647

**Attorneys for Defendants Agent Au Pair, Au Pair International, Inc., Go Au Pair Operations, and American Cultural Exchange, LLC d/b/a Go Au Pair**


s/ James E. Hartley
James E. Hartley
(jhartley@hollandhart.com)
Jonathan S. Bender
(jsbender@hollandhart.com)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Adam A. Hubbard
(aahubbard@hollandhart.com)
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302

**Attorneys for Defendant Cultural Homestay International**


*s/ Susan M. Schaecher*
Susan M. Schaecher, Esq.
(sschaecher@laborlawyers.com)
FISHER & PHILLIPS, LLP
1801 California Street, Suite 2700
Denver, CO 80202
Tel: 303-218-3650
Fax: 303-218-3651

**Attorneys for Defendants APF Global Exchange, NFP**


*s/ Stephen J. Macri*
Stephen J. Macri
(Stephen.macri@ogletree.com)
Joseph B. Cartafalsa
(joseph.cartafalsa@ogletree.com)
Robert M. Tucker
(robert.tucker@ogletree.com)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1745 Broadway, 22nd Floor
New York, NY 10019
(212) 492-2071

*s/ Eric J. Stock*
Eric J. Stock
(estock@gibsondunn.com)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-2301

**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**

<u>s/ Bogdan Enica</u>
Bogdan Enica
(Bogdan@expertaupair.com)
Expert AuPair
111 Second Ave NE, Ste. 213
St. Petersburg, FL 33701

**Attorney for Defendant Expert Group International, Inc. d/b/a Expert Au Pair**

<u>s/ Peggy E. Kozal</u>
Peggy E. Kozal
(pkozal@gordonrees.com)
Thomas Baker Quinn
(tquinn@gordonrees.com)
Nathan A. Huey
(nhuey@gordonrees.com)
Heather K. Kelly
(hkelly@gordonrees.com)
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202

**Attorneys for Defendant AuPairCare, Inc.**

<u>s/ Martha L. Fitzgerald</u>
Martha L. Fitzgerald
(mfitzgerald@bhfs.com)
David B. Meschke
(dmeschke@bhfs.com)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

**Attorneys for Defendant EurAuPair Intercultural Child Care Programs**

_s/ Brooke A. Colaizzi_
Brooke A. Colaizzi
(bcolaizzi@shermanhoward.com)
Heather F. Vickles
(hvickles@shermanhoward.com)
Raymond M. Deeny
(rdeeny@shermanhoward.com)
Joseph Hunt
(jhunt@shermanhoward.com)
Alyssa L. Levy
(alevy@shermanhoward.com)
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202

**_Attorneys for Defendant
InterExchange, Inc._**

_s/ William J. Kelly III_
William J. Kelly III
(wkelly@kellywalkerlaw.com)
Chandra Marie Feldkamp
(cfeldkamp@kellywalkerlaw.com)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, CO 80202

**_Attorneys for Defendant
USAuPair, Inc._**

_s/ Meshach Y. Rhoades_
Meshach Y. Rhoades
Martin J. Estevao
4643 S. Ulster Street, Suite 800
Denver, CO 80237
(720) 722-7195
mrhoades@armstrongteasdale.com
mestevao@armstrongteasdale.com

**_Attorneys for Defendant
GreatAuPair, LLC_**

- 19 -

s/ Lawrence D. Stone
Lawrence D. Stone
(lstone@nixonshefrin.com)
Katheleen E. Craigmile
(kcraigmile@nixonshefrin.com)
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111

**Attorneys for Defendants**
**A.P.E.X. American Professional**
**Exchange, LLC d/b/a ProAuPair**
**and 20/20 Care Exchange, Inc.**
**d/b/a The International Au Pair**
**Exchange**

**APPENDIX 1**

| Federal or State | Claim | Statute of Limitations | Authority |
|---|---|---|---|
| Federal | Antitrust | 4 years | 15 U.S.C. § 15b |
| Federal | RICO | 4 years | *Rotella v. Wood*, 528 U.S. 549 (2000) |
| Federal | FLSA | 2 years<br><br>3 years if willful | 29 U.S.C. § 255 |
| Federal | FLSA Overtime | 2 years<br><br>3 years if willful | 29 U.S.C. § 255 |
| California | Unpaid Wages | 3 years | Cal. Civ. Proc. Code § 338(a) |
| California | Breach of Fiduciary Duty | 4 years | Cal. Civ. Proc. Code § 343 |
| California | Negligent Misrepresentation | 2 years<br><br>3 years where allegations are based on deceit | *Ferguson v. JPMorgan Chase Bank, N.A.*, No. 2:14-CV-00328-KJM, 2014 WL 2118527, at *6–7 (E.D. Cal. May 21, 2014); Cal. Civ. Proc. Code § 338 |
| California | Constructive Fraud / Fraudulent Concealment | 3 years | 3 years. Cal. Civ. Proc. Code § 338(d) |
| California | Consumer Protection | 4 years | Cal. Bus. & Prof. Code § 17208 |
| Colorado | Unpaid Wages | 2 years<br><br>3 years if willful | 7 CCR 1103-1 (15) |
| Colorado | Breach of Fiduciary Duty | 3 years | C.R.S. § 13-80-101(1)(f) |

| Federal or State | Claim | Statute of Limitations | Authority |
|---|---|---|---|
| Colorado | Negligent Misrepresentation | 3 years | C.R.S. § 13-80-101(c); *Miller v. McCloud*, No. 14-cv-1156, 2016 WL 524357, at *5 (D. Colo. Feb. 10, 2016). |
| Colorado | Constructive Fraud / Fraudulent Concealment | 3 years | C.R.S. § 13-80-101(c) |
| Colorado | Consumer Protection | 3 years | C.R.S. § 6-1-115 |
| Florida | Unpaid Wages | 2 years | Fla. Stat § 95.11(4)(c) |
| Florida | Breach of Fiduciary Duty | 4 years | Fla. Stat § 95.11(3)(o) |
| Florida | Negligent Misrepresentation | 4 years | Fla. Stat § 95.11(3)(a) |
| Florida | Constructive Fraud / Fraudulent Concealment | 4 years | Fla. Stat § 95.11(3)(j) |
| Florida | Consumer Protection | 4 years | Fla. Stat § 95.11(3)(p) |
| Illinois | Unpaid Wages | 3 years | 820 Ill. Comp. Stat. 105/12(a) |
| Illinois | Breach of Fiduciary Duty | 5 years | 735 Ill. Comp. Stat. 5/13-205 |
| Illinois | Negligent Misrepresentation | 5 years | 735 Ill. Comp. Stat. 5/13-205 |
| Illinois | Constructive Fraud / Fraudulent Concealment | 5 years | *Fitton v. Barrington Realty Co.*, 273 Ill. App. 3d 1017, 1019 (App. Ct. 1st Dist. 1995) |

| Federal or State | Claim | Statute of Limitations | Authority |
|---|---|---|---|
| Illinois | Consumer Protection | 3 years | 815 Ill. Comp. Stat. 505/1-505/12 |
| New York | NYWA | 6 years | NY CLS Labor § 663(3) |
| New York | Breach of Fiduciary Duty | 3 years for monetary relief<br><br>6 years for equitable relief | *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132 (2009) |
| New York | Negligent Misrepresentation | 3 years | *Reilly Green Mtn. Platform Tennis v. Cortese*, 960 N.Y.S.2d 341 (2007) |
| New York | Constructive Fraud / Fraudulent Concealment | 6 years | NY CLS CPLR § 213(8) |
| New York | Consumer Protection | 3 years | NY CLS CPLR § 214(2) |
| Maryland | Unpaid Wages | 3 years | Md. Code Ann., Cts. & Jud. Proc. § 5-101 |
| Maryland | Breach of Fiduciary Duty | No such claim exists under state law | |
| Maryland | Negligent Misrepresentation | 3 years | Md. Code Ann., Cts. & Jud. Proc. § 5-101 |
| Maryland | Constructive Fraud / Fraudulent Concealment | 3 years | Md. Code Ann., Cts. & Jud. Proc. § 5-101 |
| Maryland | Consumer Protection | 3 years | Md. Code Ann., Cts. & Jud. Proc. § 5-101 |
| Massachusetts | Unpaid Wages | 3 years | MGL Ch. 149, § 150 |
| Massachusetts | Breach of Fiduciary | 3 years | MGL Ch. 260, § 2A |

| Federal or State | Claim | Statute of Limitations | Authority |
| --- | --- | --- | --- |
| | Duty | | |
| Massachusetts | Negligent Misrepresentation | 3 years | MGL Ch. 260, § 2A |
| Massachusetts | Constructive Fraud / Fraudulent Concealment | 3 years | *Mass. Higher Educ. Assistance Corp. v. Gutierrez*, 97-02447, 1998 Mass. Super. LEXIS 306, at *6 (Apr. 1, 1998) |
| Massachusetts | Consumer Protection | 4 years | M.G.L. Ch. 260, §5A |
| Pennsylvania | Unpaid Wages | 3 years | 43 P.S. § 260.9a |
| Pennsylvania | Breach of Fiduciary Duty | 2 years | 42 Pa.C.S. § 5524 |
| Pennsylvania | Negligent Misrepresentation | 2 years | 42 Pa.C.S. § 5524 |
| Pennsylvania | Constructive Fraud / Fraudulent Concealment | 2 years | 42 Pa.C.S. § 5524 |
| Pennsylvania | Consumer Protection | 2 years | 42 Pa.C.S. § 5524 |
| Texas | Unpaid Wages | 2 years | Tex. Lab. Code § 62.202 |
| Texas | Breach of Fiduciary Duty | 4 years | *Tex. Civ. Prac. & Rem. Code § 16.004* |
| Texas | Negligent Misrepresentation | 2 years | *Tex. Civ. Prac. & Rem. Code § 16.003* |
| Texas | Constructive Fraud / Fraudulent Concealment | 4 years | *Tex. Civ. Prac. & Rem. Code* § 16.004 |
| Texas | Consumer | 2 years | *Tex. Bus. & Com. Code* § |

| Federal or State | Claim | Statute of Limitations | Authority |
|---|---|---|---|
| | Protection | | 17.565 |
| Utah | Unpaid Wages | Dismissed | |
| Utah | Breach of Fiduciary Duty | 4 years | Utah Code Ann. § 78B-2-307 |
| Utah | Negligent Misrepresentation | 3 years | Utah Code Ann. § 78B-2-305 |
| Utah | Constructive Fraud / Fraudulent Concealment | 3 years | Utah Code Ann. § 78B-2-305 |
| Utah | Consumer Protection | 2 years | Utah Code Ann. § 13-11-19 (2014) |
| Virginia | Unpaid Wages | 2 years | Va. Code Ann. § 8.01-248 |
| Virginia | Breach of Fiduciary Duty | 2 years | Va. Code Ann. § 8.01-248 |
| Virginia | Negligent Misrepresentation | Abandoned (ECF 942) | |
| Virginia | Constructive Fraud / Fraudulent Concealment | 2 years | Va. Code Ann. § 8.01-243 |
| Virginia | Consumer Protection | 2 years | Va. Code Ann. § 59.1-204.1 |

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on November 13, 2018, I caused to be electronically filed the foregoing DEFENDANTS' RESPONSE TO THE COURT'S REQUEST FOR SIMULTANEOUS BRIEFING REGARDING STATUTES OF LIMITATIONS AND EQUITABLE TOLLING [ECF NO. 1167] with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Matthew L. Schwartz (mlschwartz@bsfllp.com)
Peter M. Skinner (pskinner@bsfllp.com)
Randall W. Jackson (rjackson@bsfllp.com)
Dawn L. Smalls (dsmalls@bsfllp.com)
Joshua J. Libling (jlibling@bsfllp.com)
Sigrid S. McCawley (smccawley@bsfllp.com)
Sabria A. McElroy (smcelroy@bsfllp.com)
Sean P. Rodriguez (srodriguez@bsfllp.com)
Juan P. Valdivieso (jvaldivieso@bsfllp.com)
Byron Pacheco (bpacheco@bsfllp.com)
Boies Schiller & Flexner, LLP

Alexander N. Hood (alex@towardsjustice.org)
David Seligman (david@towardsjustice.org)
Towards Justice-Denver

*Counsel for Plaintiffs*

*s/ Diane R. Hazel*