# Exhibit A

```
                                                            1

 1

 2     UNITED STATES DISTRICT COURT
       DISTRICT OF NEW YORK COLORADO
 3     ---------------------------------------X
       JOHANA PAOLA BELTRAN, et al.,
 4
                                PLAINTIFFS,
 5

 6           -against-         Case No.:
                           1:14-CV-03074-CMA-KMT
 7

 8     INTEREXCHANGE, INC., et al.,

 9                              DEFENDANTS.
       ---------------------------------------X
10

11                  DATE: December 21, 2017

12                  TIME: 9:03 A.M.

13

14           VIDEOTAPED and TELECONFERENCED

15     DEPOSITION of a Non-Party Witness, WILLIAM

16     O. KERR, Ph.D., taken by the Defendants,

17     pursuant to a Notice and to the Federal

18     Rules of Civil Procedure, held at the

19     offices of Putney Twombly Hall & Hirson,

20     LLP, 521 Fifth Avenue, New York, New York

21     10175, before Suzanne Pastor, an RPR and

22     Notary Public of the State of New York.

23

24

25
```

DIAMOND REPORTING   (877) 624-3287   info@diamondreporting.com

```
 1                      W. KERR
 2    reports and your prior deposition testimony
 3    that as part of your engagement in this
 4    case you have been asked to assume that
 5    there was an agreement among the 15 au pair
 6    sponsors, is that correct?
 7         A.    I don't think I was asked to
 8    assume that explicit language.  I was asked
 9    to assume that collusion would be shown on
10    the defendants.
11         Q.    But you assumed that that
12    collusion occurred as part of your
13    analysis, is that correct?
14         A.    Yes.  That is -- the collusion
15    is what I was asked to assume.  That the
16    collusion occurred, and if -- and to test
17    from an economic perspective whether that
18    is consistent and likely.
19         Q.    Okay.
20         A.    And to evaluate the market in
21    terms of that collusion.
22         Q.    And what you have -- strike
23    that.  One of your conclusions in this case
24    is that absent the alleged collusion
25    between the au pair sponsors, stipends
```

```
 1                    W. KERR
 2   would have been higher, is that correct?
 3         A.    Yes.
 4         Q.    Tell me exactly what the terms
 5   of that alleged agreement were.
 6         A.    I don't have any assumption
 7   about that.
 8         Q.    Well, you've been asked to
 9   assume an agreement, is that correct?
10         A.    No, I was asked to assume
11   collusion.
12         Q.    Okay, so I'll use your word
13   "collusion."  What exactly was the nature
14   of the collusion?
15         A.    The nature of the collusion was
16   to -- the nature of the collusion was to
17   keep downward pressure on the stipend, to
18   attempt to keep the amount of stipend as
19   low as possible.
20         Q.    And how did the defendants
21   effectuate that collusion?  What did they
22   do in furtherance of their collusion?
23         A.    Well, we went through a number
24   of different activities that were apparent.
25   They provided information to au pairs that
```

```
 1                       W. KERR
 2    either explicitly or implicitly told the au
 3    pairs what they should be getting is
 4    $197.50 a week.
 5         Q.    I think it's 195.75.
 6         A.    Sorry, I keep doing that.
 7    195.75 a week as a stipend.  And stating
 8    that it was because of a Department of
 9    State regulation that that was the case.
10    Giving similar information to the host
11    families, doing that in the form of
12    marketing material, doing that in the form
13    of providing contracts with the amount set
14    in.  And just generally trying to keep that
15    rate as close to the minimum as possible.
16         Q.    So I'm looking now at paragraph
17    105 of your merits reports.
18         A.    The first merits report?
19         Q.    The first merits report, which
20    would be Exhibit 3, where you say, "Absent
21    the alleged acts, misleading and inaccurate
22    communications regarding the stipend amount
23    for standard au pairs would cease."  Do you
24    see that?
25         A.    Yes.
```

```
 1                      W. KERR
 2         Q.    So the collusion, as I
 3   understand your report and your prior
 4   testimony, is that the defendants provided
 5   inaccurate information to both au pairs and
 6   host families, is that correct?
 7              MR. RODRIGUEZ:  Object to the
 8         form.
 9         A.    Yes, they did do that, yes.
10         Q.    And the nature of that
11   inaccurate information was that the $195.75
12   stipend was mandatory.
13         A.    In some cases, yes.
14         Q.    Okay.  And I believe you said
15   that -- in your report and your prior
16   testimony that if it was characterized as a
17   minimum, that that was not inaccurate, is
18   that correct?
19         A.    No.
20         Q.    It's not?  So it was incorrect
21   to characterize it as a minimum?
22         A.    Well, no, it was not correct to
23   characterize 195.75 as the appropriate
24   rate.
25         Q.    Right, but if it --
```