# Exhibit D

Defs.' Appx. 00000728

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

      Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

      Defendants.

---

**DECLARATION OF BILL KAPLER IN SUPPORT OF GO AU PAIR'S MOTION FOR SUMMARY JUDGMENT**

---

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

I, Bill Kapler, declare as follows:

1.    My name is Bill Kapler. I am over the age of 18, and I make this declaration based upon personal knowledge.

2.    I am the manager of both American Cultural Exchange, LLC and Go Au Pair Operations, LLC (together, "Go Au Pair"), defendants in the above-captioned action. Go Au Pair is one of 16 designated sponsors of the United States Department of State's J-1 visa au pair exchange program ("Au Pair Program").

3.    Given my responsibilities with Go Au Pair, I am familiar with all processes and procedures used by Go Au Pair to administer its program and to comply with all applicable regulations governing that program.

## I.     GO AU PAIR'S ROLE AS A J-1 VISA SPONSOR

4.     The Department of State ("DOS") has established a comprehensive set of regulations to protect the interests and safety of both the au pairs and the host families and their children. These regulations govern all J-1 visa exchange programs administered pursuant to the Au Pair Program.

5.     As a DOS-designated sponsor, Go Au Pair is required to ensure and monitor all Au Pair Program participants' compliance with the program guidelines established by DOS. As explained in more detail below, this function includes vetting applicants for eligibility under DOS guidelines,  ensuring that host-family placements conform to the minimum conditions set by DOS, and monitoring au pairs and host families to confirm continued compliance with DOS requirements.

6.     All sponsors are required to abide by DOS regulations. If a sponsor fails to comply with those regulations, it may be sanctioned by DOS, and its designation as a program sponsor could be canceled or not renewed.

### A.     Overview of Relationships Between and/or Among Go Au Pair, Host Families, and Au Pairs

7.     There are three core relationships in the Au Pair Program: (1) the sponsor-au pair relationship; (2) the sponsor-host family relationship; and (3) the host family-au pair relationship.

8.     Go Au Pair uses standard agreements with host families and au pairs (respectively, the "Host Family Agreement" and the "Au Pair Agreement") to clarify the relationship between and obligations of Go Au Pair vis-à-vis host families and au pairs,

**HIGHLY CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**

and vice versa. These agreements specify the services Go Au Pair provides (or does not provide) as a sponsor of the Au Pair Program, as well as host families' and au pairs' obligations and rights as related to their participation in the program. To that end, these agreements acknowledge host families' agreement to, and au pairs' understanding of, the program requirements set by DOS regulations (e.g., the au pair must receive a minimum weekly stipend, the au pair may work only a maximum of 45 hours per week or 10 hours per day, the au pair may only perform childcare-related duties, the au pair must receive a specified minimum amount time off, etc.). But, other than reflecting DOS-specified requirements, the Host Family Agreement and the Au Pair Agreement do not otherwise concern or relate to the au pair's host-family placement.

9.      As to the host-family placement, DOS regulations require that each host family and au pair enter into a written agreement "detailing the au pair's obligation to provide child care" before the au pair departs his or her home country (the "HF-AP Agreement"). 22 C.F.R. § 62.31(e)(5). Go Au Pair provides a standard template for this agreement that requires the host family to manually write in the essential terms of any placement with them, including the amount of the weekly stipend the host family agrees to pay, the payment interval, the au pair's anticipated work schedule and weekly hours, the au pair's expected duties, vacation days, any "house rules," car privileges, and any additional benefits or compensation.

10.     The HF-AP Agreement, to which Go Au Pair is not a party, defines the relationship and obligations between the au pair and his or her host family, including the

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

Defs.' Appx. 00000731

amount of the stipend, the au pair's duties, and the au pair's anticipated schedule. The HF-AP Agreement is, therefore, unique to each au pair and his or her host family.

11.     A visual overview of the nature of and responsibilities associated with Go Au Pair's separate relationships with host families and au pairs, as well as that between the host family and au pair, is attached hereto as Exhibit A.

12.     True and correct copies of each of these agreements are discussed in relevant detail in, and are attached as exhibits to, this declaration. *See* Exhibits B-C, E-I.

**B.    Go Au Pair Vets Applicants for Program Eligibility Pursuant to DOS Regulations, But Host Families Are Solely Responsible for Selecting Their Au Pairs**

13.     Under DOS regulations, foreign nationals who want to participate in the Au Pair Program must meet certain eligibility criteria. Au pair participants must be between the ages of 18 and 26, be a secondary school graduate (or equivalent), be "proficient in spoken English," and be "fully capable of participating in the program as evidenced by the satisfactory completion of a physical." 22 C.F.R. § 62.31(d).

14.     Through its application process, Go Au Pair vets program applicants to make sure they meet the eligibility requirements established by DOS. Pursuant to DOS regulations, this process includes a criminal background check, reference checks, completion of a psychometric test prescribed by DOS, and a personal interview in English. 22 C.F.R. § 62.31(d).

15.     To actually participate in the Au Pair Program as an au pair, an au pair applicant must successfully "match" with a host family. Only after an au pair has been selected by a host family can Go Au Pair issue a DS-2019, which permits the au pair to

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

schedule an interview at a United States embassy or consulate to request issuance of a

J-1 visa. Go Au Pair does not—and cannot—issue a visa; DOS must issue the au pair a

visa and is the only entity that may terminate that visa.

16.     Go Au Pair does not assign an au pair to a host family or vice versa.

Instead, it uses a "Mutual Match" process that operates like a free, open-market

exchange in which the host family and au pair control the matching process. All

applicants who satisfactorily demonstrate their eligibility to participate in the Au Pair

Program, per the requirements set by DOS, are placed in Go Au Pair's pool of available

au pair candidates. These candidates' profiles are made available to all prospective

host families looking for an au pair through Go Au Pair's online "host family portal."

Using this platform, host families may view all of the available au pair candidates and

perform whatever screening process they require to fulfill their unique family needs.

Host families can communicate with and interview as many candidates as they want.

They are ultimately responsible for choosing the au pair candidate they feel best meets

the needs of their home.

17.     While it offers support services, such as a Placement Coordinator, to help

host families and au pairs navigate the matching process, all communications and

decisions during that process—and the ultimate decision to match—are between and

made by the host family and au pair.  Host families set their own selection criteria and

independently search for prospective au pairs, or "au pair candidates," who meet their

unique criteria using the "host family portal." This portal allows host families to tag an au

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

Case No. 1:14-cv-03074-CMA-KMT Document 1072-4 filed 11/13/18 USDC Colorado pg 7 of 253

Defs.' Appx. 00000733

**RESTRICTED - PAGE 6 TO DECLARATION OF BILL KAPLER IN SUPPORT OF GO AU PAIR'S MOTION FOR SUMMARY JUDGMENT. SEE RESTRICTED APPENDIX AT Defs.' R. Appx. 00000817.**

one favorite to one au pair who had 236 favorites; (4) on average each au pair was provided 4.3 host family applications to review; (5) 199 au pairs rejected offers from host families. Go Au Pair's records show that during this same period, 37% of prospective au pairs did not match with a host family.

22.    Go Au Pair has no decision-making authority with respect to any host family's selection of an au pair. To the contrary, pursuant to the Host Family Agreement, every host family agrees that selecting the au pair is their sole responsibility. A true and correct copy of the Host Family Agreement signed by the host family with whom Plaintiff Ivette Alexandra Gonzalez Cortes was placed, which is reflective of and consistent with agreements signed by all host families from 2009 to early 2015, is attached hereto as Exhibit B. A true and correct copy of the revised Host Family Agreement signed by the host family with whom Michelle Carolina Del Pozo Aguilar (an FLSA opt-in plaintiff) was placed, which is reflective of and consistent with agreements signed by all host families from early 2015 to the present, is attached hereto as Exhibit C.

**C.    Subject to Federal Regulations, and Under Go Au Pair's Standard Agreements, the Au Pair's Weekly Stipend, Hours, and Duties Are Determined by the Host Family and Offered to and Accepted by the Au Pair**

23.    DOS regulations set forth certain minimum placement conditions to which host families must adhere. These include: (1) payment of a certain minimum weekly stipend, the amount of which is set by DOS; (2) limiting the au pair's duties to "childcare services"; and (3) limiting the au pairs hours to a maximum of 10 hours per day and 45 hours per week. 22 C.F.R. §§ 62.31(a), 62.31(j).

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

24.     In 2007, DOS advised sponsor organizations that, beginning July 24, 2009, the required minimum amount of the weekly stipend would be $195.75 (the "2007 DOS Notice"). A true and correct copy of the 2007 DOS Notice Go Au Pair received is attached hereto as <u>Exhibit D</u>.

25.     Go Au Pair never entered into any agreement with any other sponsor of an au pair program regarding the amount of the stipend Go Au Pair would advertise and communicate to prospective host families and au pairs. Rather, Go Au Pair understands that DOS sets the required minimum stipend amount and that Go Au Pair is required to communicate that minimum amount to host families and au pairs. All of Go Au Pair's promotional materials and Go Au Pair's standard contracts with both host families (the Host Family Agreement) and au pairs (the Au Pair Agreement) have always reflected this understanding and approach.

26.     As noted above, Go Au Pair requires that every host family enter into the Host Family Agreement. That agreement provides, among other things, that the host family agrees to pay a weekly stipend of "<u>not less than</u>" $195.75 (or the specific minimum stipend amount for the program in which the host family and au pair agree to participate) (emphasis added). *See* Exhibits B, C.

27.     Similarly, Go Au Pair requires every au pair to enter into the Au Pair Agreement before he or she is accepted as an au pair candidate and becomes available for matching with a host family. By signing this agreement, all prospective au pairs acknowledge and agree that they will be paid a weekly stipend that is "<u>no less than</u>"

**HIGHLY CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**

$195.75. A true and correct copy of the Au Pair Agreement Plaintiff Gonzalez signed,

which is indicative of and consistent with agreements signed by all prospective au pairs

from 2009 through early 2015, is attached hereto as Exhibit E. A true and correct copy

of the revised Au Pair Agreement signed by Plaintiff Aguilar, which is reflective of and

consistent with agreements signed by all prospective au pairs from early 2015 to the

present, is attached hereto as Exhibit F.

28.     As noted, all host families and au pairs must enter into a written

agreement—the HF-AP Agreement—that sets forth the unique details of the au pair's

host-family placement. Using the template provided by Go Au Pair, each host family

must manually write in the au pair's work schedule and weekly hours, vacation days,

any "house rules," the au pair's expected duties, the amount of the weekly stipend, the

pay interval, car privileges, and any additional benefits or compensation. The completed

form, which now reflects the host family's unique situation and requirements, is then

offered to au pairs for review and acceptance upon the prospect of a match. While each

agreement is individualized, all include standard contractual language that clearly

discloses the minimum amount of the weekly stipend required by DOS and the

maximum work hours allowed under DOS regulations. A true and correct copy of the

HF-AP Agreement prepared and signed by Plaintiff Gonzalez's host family (and sent to

Go Au Pair) is attached as Exhibit G. A true and correct copy of the countersigned HF-

AP Agreement, signed by Plaintiff Gonzalez upon her review and acceptance, is

attached as Exhibit H. In its blank form, the HF-AP Agreement executed by Plaintiff

**HIGHLY CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**

Gonzalez and her host family is reflective of and consistent with agreements signed by all au pairs and host families from 2009 to early 2015. (During this period, Go Au Pair referred to the HF-AP Agreement as the "Written Agreement").

29.     Beginning in early 2015, Go Au Pair revised the form of the HF-AP Agreement. The revised agreement also discloses the DOS requirements that host families must pay a <u>minimum</u> weekly stipend of $195.75, and that au pairs may work no more than 45 hours each week. Further, it maintains the practice of requiring the host family to describe the expected weekly schedule, including the anticipated number of hours per week, identify the au pair's responsibilities, and state the amount of the weekly stipend. A true and correct copy of the HF-AP Agreement prepared and signed by Plaintiff Aguilar's host family, and counter-signed upon acceptance by Plaintiff Aguilar, is attached hereto as <u>Exhibit I</u>. In its blank form, the HF-AP Agreement executed by Plaintiff Aguilar and her host family is reflective of and consistent with agreements signed by all au pairs and host families from early 2015 to the present. (The revised HF-AP Agreement is now titled the Child Care Services Agreement ("CCSA"). This declaration uses the term "HF-AP Agreement" to refer the Written Agreement and CCSA collectively.)

30.     DOS regulations require that, after the au pair arrives in the United States, each host family and au pair must complete an orientation with one of Go Au Pair's local area representatives ("LAR"). The purpose of the orientation is to help the parties adjust by ensuring that the host family and the au pair are "on the same page" as to the critical

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

elements of the HF-AP Agreement and the parties' living arrangements. The LAR records on Go Au Pair's orientation form ("Orientation") the important aspects of the relationship as described by the host family and au pair. This includes the au pair's responsibilities, hours, stipend amount, house rules, and the au pair's requirements. The host family and au pair each sign the Orientation, which then becomes part of the written contract between the host family and au pair. Like all other relevant agreements, the Orientation states that the weekly stipend—as determined by the host family and accepted by the au pair—must be a "minimum of $195.75" and that both parties "understand and will comply with . . . the 45 hours/week maximum." A true and correct copy of the Orientation signed by Plaintiff Gonzalez and her host family is attached as Exhibit J. In its blank form, the Orientation executed by Plaintiff Gonzalez and her host family is reflective of and consistent with agreements signed by all au pairs and host families from 2009 to the present.

31.     As reflected in its standard agreements, Go Au Pair has no policy regarding how much each host family should pay its au pair other than the amount must be no less than the weekly $195.75 required by DOS, regardless of how many hours the au pair actually works per week. It is the host family that determines the amount of the weekly stipend, as stated in the HF-AP Agreement.

32.     Similarly, Go Au Pair does not dictate the number of hours an au pair will work (other than to ensure compliance with maximum hours prescribed by regulation),

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

the au pair's schedule, or the au pair's specific duties. Each of these aspects of the au pair's placement is determined by the host family, as provided in the HF-AP Agreement.

33.     If a host family decides that it would like to match an au pair candidate after interviewing him or her, the host family will send a completed and signed copy of their unique HF-AP Agreement to the prospective au pair. Under Go Au Pair's "Mutual Match" policy, the prospective au pair can then review the HF-AP Agreement, potentially compare it against any offers made by other host families, and either accept or reject the stipend amount and other terms offered by the host family. Any substantial changes to the parties' agreement, as reflected in the HF-AP Agreement or Orientation, may only be made with the written consent of both parties.

34.     Other than to confirm that the au pair's placement conforms to the minimum requirements set by DOS, Go Au Pair does not exercise any approval or decision-making authority concerning the terms and conditions of the au pair's placement, to which the host family and au pair have mutually agreed.

35.     Similarly, Go Au Pair does not provide any day-to-day management or oversight of au pairs; nor does it create or keep any performance reviews or evaluations concerning the au pair's childcare services. Direction and supervision of the au pair's work is solely up to the host family. This includes, for example, enforcement of any house rules established by the host family, direction or critiques concerning the au pair's provision of childcare services, granting time off requests, and communicating with the au pair about his or her day-to-day duties and schedules.

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

36.     Go Au Pair maintains copies of all agreements executed by host families and au pairs. However, Go Au Pair does not keep, and does not have, records of the actual amount of the stipend paid to or the hours worked by au pairs. Since early 2015, Go Au Pair has recommended that au pairs track and record the hours they work and payments received from the host family so that they have documentation of these matters in the event a dispute with the host family arises. Au pairs do not submit these records to Go Au Pair, and Go Au Pair does not otherwise maintain them.

37.     Go Au Pair does not pay the au pair or perform any payroll activities with respect to au pairs.

38.     Go Au Pair does not create or maintain performance evaluations of au pairs.

**D.      Early Termination of the Au Pair's Placement Is at the Discretion of Host Families and Au Pairs**

39.     The decision to terminate an au pair's host-family placement early is wholly within the discretion of the host family and/or the au pair, provided that both the au pair and the host family have complied with the rules and regulations governing the program.

40.     If a host family and/or au pair decide to terminate the host-family placement early, the au pair may continue to participate in the Au Pair Program, provided that he or she is eligible to and does in fact rematch with another host family.

41.     In its role as an exchange-program sponsor, Go Au Pair is required by regulation to report changes to an au pair's program "status," in SEVIS, which is the

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

electronic system used by the Departments of State and Homeland Security to maintain and track information concerning J-1 visa holders. Under DOS regulations, Go Au Pair has the authority to cancel an au pair's participation in the Au Pair Program if he or she fails to comply with the rules and regulations governing the program. If necessary, this is done by changing the status of the au pair's electronic record in SEVIS.

42.     I am not aware of any instance in which Go Au Pair has needed to terminate an au pair's participation in the Au Pair Program despite both the host family's and the au pair's satisfaction with the placement.

### E.     Additional Sponsor Obligations

43.     DOS regulations require that all sponsor organizations provide au pairs with general training related to child safety and child development, which all au pairs must complete before they arrive at their host-family placement. 22 C.F.R. § 62.31(g). Go Au Pair provides this training through a multi-media training course that all Go Au Pair-sponsored au pairs complete in their home country. This training does not include any training specific to the au pair's host-family placement; any instruction related to the specific host family's needs or desires must be given by the host family directly.

44.     As required by DOS regulations, Go Au Pair monitors au pairs and host families through regular contact to gauge overall satisfaction with their experience and ensure compliance with regulatory requirements. On behalf of Go Au Pair, an assigned Local Area Representative ("LAR") will contact host families and au pairs on a monthly basis. Such contact often consists of a single call, text message, or email, but LARs may have further contact with au pairs and host families if necessary to address

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

questions or to help facilitate the resolution of any issues or disputes that have arisen during the au pair's placement.

45.     Go Au Pair is also required to submit annual audit reports to DOS, which reports include a summation of results from an annual survey of au pairs and host families conducted by independent auditors. The audit template provided by DOS includes a series of "confirmation questions" designed to monitor compliance with DOS regulations. One of these questions expressly asks how many au pairs within the survey "responded that they received at least $195.75 per week as compensation." True and correct copies of the relevant excerpts of the independent auditors' reports from 2010 through 2014, which Go Au Pair submitted to DOS, are attached hereto as Exhibits K-O, respectively.

46.     Go Au Pair's annual audit reports to DOS also include copies of all promotional materials used by Go Au Pair in advertising its au pair program to host families and au pairs. These materials include any brochures or pamphlets distributed to host families and au pairs and Go Au Pair's website. DOS has never advised Go Au Pair that any of its promotional materials is inaccurate or that any such materials misstate any aspect of the United States Au Pair Program.

47.     DOS regulations (22 C.F.R. § 62.14) require that au pairs have insurance that covers them for sickness and accidents while they participate in the Au Pair Program. To ensure compliance with this regulation, Go Au Pair handles the administrative aspects of securing insurance for au pairs, as well as canceling that

insurance when the au pair's participation in the Au Pair Program has ended. Go Au

Pair does not pay for this insurance. Rather, host families pay for their au pair's

insurance as part of the program fees they pay to Go Au Pair.

## II.  GO AU PAIR'S ANALYSIS OF HOST FAMILY-AU PAIR AGREEMENTS SHOWS SIGNIFICANT VARIATION AMONG THE STIPENDS PAID TO AU PAIRS AND THE HOURS THEY WORK

48.     Based on an analysis of all HF-AP Agreements executed in connection

with au pair placements from 2010 to 2015—totaling 3,750—Go Au Pair can confirm

that the agreed-upon stipend and the anticipated weekly work hours stated in those

agreements varies significantly. A true and correct copy of the spreadsheet showing the

results of that analysis, which Go Au Pair produced during discovery, is attached as

Exhibit P.[1]

49.     In particular, Go Au Pair's analysis of HF-AP Agreements shows that:

- Host families offered to pay, and au pairs accepted, over 60 different weekly stipend amounts;

- 58% of host families offered au pairs a weekly stipend above $195.75;

- Over 11% of host families offered au pairs a weekly stipend above $200;

---

[1] The spreadsheet containing Go Au Pair's analysis and underlying data was produced in native format as GAP_00035647. The native Excel spreadsheet contains three tabs, one showing the relevant raw data from each HF-AP Agreement (e.g., date, identifier, stipend amount, anticipated work hours, etc.) ("Placements2010-2015"); a second identifying whether fees were paid for a premiere placement (*see* Section III, *supra*) ("OppPremiereFees"); and a third showing Go Au Pair's analysis of the aggregate data ("Analysis-Stipend-Std-Hrs"). Exhibit P is a PDF of the "Analysis-Stipend-Std-Hrs" tab. Due to its size, Go Au Pair has not converted and filed the entire Excel file, but will provide it to the Court if requested.

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

Defs.' Appx. 00000744

- Only about 0.27% of host families offered au pairs a weekly stipend above $344;

- Host families requested, and au pairs agreed to, weekly schedules reflecting 125 different hourly totals;

- 53% of au pairs were scheduled to work less than 45 hours per week;

- Over 34% of au pairs were scheduled to work 40 hours or less per week;

- Over 16% of au pairs were scheduled to work 35 hours or less per week;

- Over 7% of au pairs were scheduled to work 30 hours or less per week;

- Host families offered 485 different combinations of weekly stipends and hours; and

- Only 19.8% of au pairs that accepted a stipend of $195.75 were scheduled to work 45 hours per week.

## III. GO AU PAIR ADVERTISES MINIMUM STIPEND AMOUNTS ABOVE THE DOS-REQUIRED MINIMUM OF $195.75 FOR MORE EXPERIENCED AU PAIRS

50.     Independent from the DOS program requirements and other Sponsors, Go Au Pair has created three au pair programs: the Standard Au Pair program, the Au Pair Plus program, and the Premiere Au Pair program. Prospective au pairs who qualify to participate in the Standard Au Pair program must only meet the minimum requirements for eligibility set by DOS. Go Au Pair created its Plus and Premiere programs to appeal to prospective au pairs who have more experience and qualifications than the typical au pair applicant, as well as to host families that want to host a more qualified au pair.

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

51.     To qualify for the Au Pair Plus program, prospective au pairs must have
previous experience as an au pair in another country. Go Au Pair advertises a minimum
weekly stipend of $215 for Plus Au Pairs.

52.     To qualify for the Premiere Au Pair program, prospective au pairs must me
the following criteria: (1) have a degree in a childcare-related field or at least two years
of full-time childcare experience; (2) be at least 20 years old; (3) have at least six
months of driving experience; and (4) have strong English skills. Go Au Pair advertises
a minimum weekly stipend of $255 for Premiere Au Pairs.

53.     Go Au Pair's "Plus" and "Premiere" programs are products of its own
creation. These skill levels or categories of au pairs are not recognized by DOS. Nor are
they commonly defined, or even recognized, across the au pair industry.

54.     Go Au Pair has found that au pairs who qualify for either the Plus or
Premiere programs—and, thus, one of the higher minimum stipend amounts—often
accept an offer for a lower stipend in order to match with a host family. Go Au Pair's
analysis of HF-AP Agreements from 2010 to 2015 indicates that 64% of au pairs who
qualified as a Plus or Premiere Au Pair nonetheless chose to accept a stipend of $200
or less.

## IV.     PROSPECTIVE AND PARTICIPATING AU PAIRS ARE REPEATEDLY TOLD THAT $195.75 IS A MINIMUM STIPEND AND THEY REGULARLY ASK QUESTIONS ABOUT THE TERMS OF THE AU PAIR AGREEMENT

55.     Prospective au pairs do not pay any fees to Go Au Pair to participate in
the Au Pair Program until they have matched with a host family. This means that all au
pairs must sign the Au Pair Agreement and the HF-AP Agreement before they pay any

**HIGHLY CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**

fees to Go Au Pair. Both of these agreements clarify that $195.75 is the required minimum stipend amount. Further, prospective au pairs first sign the Au Pair Agreement with Go Au Pair before they are interviewed by and presented with placement offers from host families. Accordingly, prior to interviewing with and accepting a host family's placement offer, au pairs have been advised in their Au Pair Agreement with Go Au Pair that they are entitled to a minimum stipend amount of $195.75. In addition, when the placement offer is conveyed by the host family in the form of the HF-AP Agreement, the au pairs are again informed in that agreement that the $195.75 stipend amount is only a minimum.

56.     Through its standard training process, Go Au Pair instructs all staff and local representatives that the current federally-required minimum stipend is $195.75 per week.

57.     As part of its regulatory compliance monitoring, and to assess the au pair's general satisfaction with his or her experience, Go Au Pair sends all participating au pairs a survey six weeks into their placement with a host family. This survey asks au pairs if they are "being paid a weekly stipend of at least $195.75."

58.     As part of the annual audit process required by DOS, independent auditors send a survey to approximately 160 to 200 au pairs, and the first 80 to 100 returned surveys are included in the annual audit. This survey also asks au pairs to confirm whether they "received at least $195.75 per week as compensation." *See* Exhibits K-O.

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

59.     Go Au Pair regularly receives questions or complaints from au pairs concerning their rights under the Au Pair Agreement, and we encourage prospective and participating au pairs to ask these questions. It is common for au pairs to ask for clarification about items addressed in the Au Pair Agreement after having reviewed it. The most common questions typically concern: (1) the required education credits (e.g., what institution is accredited versus not accredited and/or converting class hours to credit hours); (2) vacation time; (3) duration of the transition period when either party terminates a placement; (4) payment due from the host family to the au pair from the transition period; (5) return airfare (e.g., under what circumstances would the au pair be responsible for return airfare). Go Au Pair has also received questions about whether luggage fees charged by airlines are included in their covered airfare to/from their home country and America.

60.     To the best of my knowledge, other than this lawsuit, Go Au Pair has never received a single complaint from an au pair stating that she or he misunderstood the nature of the stipend amount or thought it was a fixed amount.

## V.     GO AU PAIR'S SUPPLY OF QUALIFIED AU PAIRS ALWAYS EXCEEDS HOST FAMILIES' DEMAND FOR AU PAIR SERVICES

61.     Given my responsibilities with Go Au Pair, I am familiar with Go Au Pair's processes and procedures for matching host families and au pairs, including the constraints on the number of au pairs it can sponsor due to the amount of available host families. I am also familiar with the supply/demand dynamics of au pairs and host families as they apply to the Au Pair Program generally.

HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY

Defs.' Appx. 00000748

**RESTRICTED - PAGES 21-23 TO DECLARATION OF
BILL KAPLER IN SUPPORT OF GO AU PAIR'S
MOTION FOR SUMMARY JUDGMENT.
SEE RESTRICTED APPENDIX AT
Defs.' R. Appx. 00000819.**

Defs.' Appx. 00000749

## VI. GO AU PAIR'S WEBSITE HAS ALWAYS INCLUDED INFORMATION ON THE CALCULATION OF THE MINIMUM STIPEND SET BY DOS

71.     In paragraph 102 of their Second Amended Complaint, Plaintiffs allege that, as of November 2014, Go Au Pair's website advertised the au pair stipend as $195.75 per week.

72.     Included within the table referenced by Plaintiffs is a hyperlink to further information on the "weekly stipend." That information included then, as it does now, a detailed description of the calculation of the minimum weekly stipend. In November 2014, as now, this information appears as follow Go Au Pair's website:

> The calculation for the Au Pair stipend is as follows:
> (Federal Minimum Wage) x (Number Hours worked per week) – (40% credit for room and board) = (Au Pair stipend)
>
> ($7.25) x (45 hours) – (40% credit) = $195.75 per week

73.     I declare under penalty of perjury that the foregoing is true and correct. Executed on February 13, 2018.

_Bill Kapler_
Bill Kapler

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**