# Exhibit L

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.

        Defendants.

---

**DECLARATION OF NATALIE JORDAN IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

1.    My name is Natalie Jordan. I am a Senior Vice President at Cultural Care, Inc. ("Cultural Care").

2.    As a Senior Vice President at Cultural Care, I am familiar with and involved in Cultural Care's business operations.

3.    Cultural Care is a designated sponsor of the federal au pair program.

4.    The Department of State ("DOS"), in its role as the exclusive regulator and administrator of the federal au pair program, requires sponsors to submit annual audits demonstrating compliance with the regulations governing the au pair program, 22 C.F.R. § 62.31.

5.    Cultural Care has retained Leonard, Mulherin & Greene, P.C. as an independent auditor to assess Cultural Care's compliance with the governing regulations.

6.    Cultural Care's auditor has conducted annual reviews of Cultural Care's operations in accordance with the procedures prescribed by DOS. The

Case No. 1:14-cv-03074-CMA-KMT Document 861-2 Filed 02/16/18 USDC Colorado pg 3 of 16
Case 1:14-cv-03074-CMA-KMT Document 1172-12 filed 11/13/18 USDC Colorado Page 2 of 8
Defs.' Appx. 00000145

auditor has submitted these reports to DOS each year since the enactment of the rule, including from 2009 through the present.

7. Among numerous other components, the auditor's review selects a sample of au pairs for compliance testing. The auditor delivers a questionnaire to the au pairs directly. One of the questions asked is "Do you receive a stipend of at least $195.75 per week?"

8. Cultural Care's audit reports reflect near perfect compliance with respect to this test.

9. The audit reports for the years 2009 through 2013 are attached as Exhibits A through E.

10. DOS has not identified any compliance-related issues or concerns to Cultural Care in response to the submission of these audit reports.

11. Cultural Care has never been sanctioned or otherwise admonished with respect to au pairs' receipt of the weekly stipend amount as reflected in the annual audit reports.

12. In addition to the auditor's submission of annual reports, Cultural Care also conducts annual surveys in accordance with DOS instructions.

13. Cultural Care submits results of these surveys to DOS with the auditors' reports.

14. Results of surveys submitted to au pairs for the years 2009 through 2015 are attached as Exhibits F through L.

2

Case 1:14-cv-03074-CMA-KMT Document 1172-12 Filed 02/16/18 USDC Colorado Page 5 of 8

Defs.' Appx. 00000146

15. As part of Cultural Care's standard business practices, Local Childcare Consultants ("LCCs") conduct monthly meetings with au pairs. At these meetings, LCCs ask au pairs to confirm whether the minimum stipend amount has been paid and whether au pairs have performed less than 45 hours of childcare on a weekly basis. The LCCs separately contact host families to confirm that they have paid the minimum weekly stipend amount to their au pairs and that their au pairs have been on duty for less than 45 hours each week. This is to ensure that our host families are in compliance with State Department regulations for the au pair program.

16. The standard form for LCCs (which was converted to an online system in 2013) to confirm that au pairs' received the weekly stipend and performed fewer than the maximum number of hours of childcare asks yes/no questions: whether the stipend was reported as paid each week, and whether the au pair reported performing less than 45 hours of childcare each week. Accordingly, Cultural Care's LCCs do not record actual amounts paid or hours of childcare performed, except in case of inadvertent error.

17. Prior to 2013, LCCs maintained records of these confirmations on paper forms, known as "Contact Sheets." As noted above, contact sheets were intended to record only yes/no answers. A sample of Contact Sheets on which an LCC chose to record actual stipend payments that the au pair reported, as opposed to only a "yes" confirmation that the minimum stipend was paid, are attached as Exhibits M and N.

3

Defs.' Appx. 00000147

18. In October 2012, I attended a meeting with DOS and other au pair sponsors. As reflected in my email summary dated October 26, 2012, attached as Exhibit O, a DOS representative held up Cultural Care's policies and operations as an example of how to ensure compliance with the au pair regulations.

19. Cultural Care has received notices from DOS (and before that, the United States Information Agency) concerning the calculation of the minimum legal stipend in accordance with the au pair regulations.

20. DOS distributes notices to Cultural Care, and presumably other au pair sponsors, when the federal minimum wage increases. The most recent notice issued by DOS concerning the minimum stipend amount was dated June 24, 2009.

21. Cultural Care understood that DOS intended that sponsors would distribute the information contained in these notices to host families to inform them of the legal stipend requirements. Cultural Care communicated the information in these notices to host families.

22. Occasionally, as part of my duties, I conduct training sessions for Cultural Care's LCCs.

23. In 2012, I administered a series of training sessions for Cultural Care's LCCs across the country in several regional meetings. At each of these sessions, I confirmed for the LCCs in attendance that host families are free to pay more than the minimum stipend amount. I intended that the LCCs would communicate this information to host families.

Case No. 1:14-cv-03074-CMA-KMT Document 861-2 Filed 02/16/18 USDC Colorado pg 6 of 8
Case 1:14-cv-03074-CMA-KMT Document 1172-12 filed 11/13/18 USDC Colorado Page 6 of 16
Defs.' Appx. 00000148

24. Copies of these presentations and correspondence related to the drafting and delivery of the presentations are attached as Exhibits P through R.

25. I delivered the presentation at three separate regional meetings in three different states in 2012. LCCs were required to attend these meetings, including my presentation in particular because of its focus on regulatory compliance, such that substantially all of Cultural Care's LCCs attended a presentation during which I told them that host families can pay more than the minimum stipend amount. In addition, digital copies of the presentation were delivered to LCCs upon request. I recall that this presentation in particular was well received, and LCCs reported a number of favorable comments to me afterwards.

26. As a matter of practice, Cultural Care has distributed information forms to host families and au pairs concerning federal income tax requirements. These tax guidance documents have been distributed via email to host families and au pairs on occasion, as reflected in Exhibit S. The same forms are always available at any time to host families, au pairs, and LCCs through an online portal maintained by Cultural Care.

27. The tax guidance states in several instances that au pairs receiving more than the minimum stipend amount may have tax obligations, and host families paying more than the minimum stipend may have income tax withholding obligations.

5

Case 1:14-cv-03074-CMA-KMT Document 861-2 Filed 02/16/18 USDC Colorado Page 8 of 18
Defs.' Appx. 00000149

28. Cultural Care distributes brochures and other informational materials to its current host families to consider extending with their current au pairs for another year.

29. Among other items, the brochures ask host families to consider raising their au pairs' stipends during an extension year. The brochures also advise host families that the question of whether host families should increase stipends for their au pairs in an extension year is a matter for the host family and au pair to decide.

30. As a sponsoring agency, DOS directs Cultural Care to ensure that au pairs and host families comply with the applicable regulations and goals of the program.

31. Host families and au pairs each have the authority to decide whether they should continue participating together in the au pair program, or whether they should terminate an au pair placement, which Cultural Care refers to as "a transition." However, an au pair's or host family's failure to adhere to the program rules may require removal of either from the au pair program as administered by Cultural Care. Decisions to remove participants from the program involuntarily are based on violations of program requirements made on a case-by-case basis, and Cultural Care reports each instance of an au pair being removed from the program prior to full completion to DOS each year. Circumstances requiring involuntary removal of either a host family or au pair from the program based on violations of the federal regulatory requirements have included: failure by host families to pay

6

Case No. 1:14-cv-03074-CMA-KMT Document 861-2 Filed 02/16/18 USDC Colorado pg 8 of 16
Case 1:14-cv-03074-CMA-KMT Document 1172-12 filed 11/13/18 USDC Colorado pg 7 of 8
Defs.' Appx. 00000150

the weekly stipend; demanding more than 45 hours of childcare per week or otherwise violating the hours limitations in the regulations; failing to ensure adequate room and board is available; an au pair undertaking employment outside of the program; and a demonstrable unwillingness to participate in the cultural exchange purposes of the program. In addition, the DOS requires that, if an au pair and/or host family ends their relationship and the au pair is unable to match with another host family within several weeks, the au pair must leave the program and the country.

32. Cultural Care may also remove an au pair or host family from the program if either's health, safety, or welfare is endangered. For example, au pair and host family relationships have been ended due to arrests or criminal law violations, allegations of abuse or mistreatment, and medical conditions preventing continued participation in the program.

33. I have inquired within Cultural Care, and to the best of my knowledge, Cultural Care did not receive a demand letter or other pre-litigation notice of this lawsuit from Sarah Carolina Azuela Rascon.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 15th day of February 2018.

                   */s/ Natalie Jordan*
                   Natalie Jordan