# Exhibit O

Case 1:14-cv-03074-CMA-KMT Document 817-5 Filed 02/16/18 USDC Colorado Page 1 of 2
Defs.' Appx. 00000454

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN, et al.,

Plaintiffs,

v.

INTEREXCHANGE, INC., et al.,

Defendants.

---

### DECLARATION OF CHRISTINA REILLY

1.      My name is Christina Reilly.  I am the director of the au pair program for

Cultural Homestay International.

2.      As director, I am responsible for directing and overseeing the au pair

program.  I supervise the communication with our international partners, oversee our

compliance efforts with the United States Department of State ("DOS"), and supervise

all staff, including our field staff that support our au pairs and host families.

3.      I was the primary representative for CHI designated to testify in response

to the deposition notice served on CHI by plaintiffs pursuant to Rule 30(b)(6) of the

Federal Rules of Civil Procedure.  As such, I familiarized myself with the "information

known or reasonably available to" CHI relating to the topics set forth in the notice for

which I was the designated representative.  The information set forth in this declaration

is based on my role and responsibilities at CHI, my personal knowledge, and/or the

**EXHIBIT A**

Defs.' Appx. 00000455

information reasonably available to me as the representative of CHI.  For these reasons, I am competent to testify on the matters addressed herein.

4.      CHI is a nonprofit cultural exchange organization.  We provide businesses, host families, and young Americans with opportunities to share their values with those from other countries.  We also administer programs to provide those from other countries with opportunities to share their culture, values, skills, and life experiences with Americans.  We believe this is the best way to promote trust and understanding among nations and build a more prosperous and peaceful world.

5.      CHI participates in a number of exchange programs, including Academic High School, Au Pair, Au Pair Abroad, Camp Counselor, Group Homestay, High School Abroad, Internship & Trainee, Private High School, Short-Term Enrichment, Summer Work & Travel and World Explorers (CHI's Outbound program for Americans).  Of these programs, the following are administered by the DOS: Au Pair, Camp Counselor, Internship/Trainee, 12 Month Australia, Summer Work Travel.

6.      CHI is one of 16 sponsor organizations designated by DOS to administer the au pair exchange visitor program, which is one of several J-1 visa exchange programs overseen by the DOS.  Our first year in the Au Pair Program was 2004.

7.      As an au pair program sponsor, we are required to ensure compliance with DOS's program regulations by the host families and au pairs.

8.      CHI screens, reviews, and evaluates all program applicants to ensure they meet DOS eligibility requirements.  For example, we ensure background and reference checks are administered, evaluate the applicant's English proficiency, and confirm that

Defs.' Appx. 00000456

the applicant meets educational, age, and other requirements necessitated by DOS regulations.

9.      We additionally screen prospective host families who, once committed to host an au pair through our program, are responsible for selecting their au pair. Host families choose who they want to interview, set their own criteria for the candidates they consider, and decide whether to make an offer to an au pair.

**The au pair weekly stipend is set by the Department of State**

10.      Our understanding has always been that the DOS set the au pair weekly stipend.

a.      When we entered the program in 2004, we understood that DOS had set the weekly stipend at $139.05. Ex. A.1 (1997 Fact Sheet).

b.      Subsequently, on June 14, 2007, DOS issued a Notice indicating that the weekly stipend would be increased as follows:

| July 24, 2007 | $157.95 |
| July 24, 2008 | $176.85 |
| July 24, 2009 | $195.75 |

Ex. A.2 (2007 Notice).

11.      The June 14, 2007 Notice explained that the "Au Pair stipend is based on a U.S. Department of Labor's formula that includes credit for the room and board Host Families provide for the Au Pairs." The Notice further explained that the "room and board credit currently is 40% of the au pair's credited compensation." The Notice

3

Defs.' Appx. 00000457

concluded that following the increase in the federal minimum wage effective July 24, 2009, the au pair weekly stipend would increase to $195.75 per week.

12. An identical Notice was issued by the State Department on June 24, 2009. Ex. A.3 (2009 Notice and Fact Sheet). We received both Notices shortly after they were issued.

13. Significantly, the DOS Notices did not use the word "minimum" in reference to the weekly stipend amount of $195.75. Instead, the Notices simply stated that the weekly stipend would increase to $195.75. However, because the weekly stipend was linked to the federal minimum wage, we always assumed the weekly stipend of $195.75 was a minimum and host families could pay their au pair more if they wanted to.

14. We have never received a communication from DOS modifying or retracting either the 2007 or the 2009 Notice. Nor has DOS modified its regulations governing how the stipend is calculated.

## CHI Brochures, Agreements, and Handbooks

15. CHI communicates with au pairs and host families in several ways.

16. First, we communicate with potential au pairs and host families through our website and promotional materials/advertisements that are intended to provide a general understanding of the au pair program, its benefits, and the general cost of participation. Exs. A.4 (Marketing Material 1) and A.5 (Marketing Material 2). These most basic flyers and brochures are intended to provide a basic summary of the program and are distributed at stores, fairs, and other events open to the general public.

4

Defs.' Appx. 00000458

a.     One of our marketing strategies is to advertise the au pair program as an affordable child care alternative.  Therefore, we think it is important to tell a prospective host family what the total weekly cost of the program is likely to be.

b.     For example, in 2010-11, our brochure directed primarily to host families indicated that the all-inclusive weekly cost for the host family would be $343, which was based on the minimum weekly stipend of $195.75 as set by DOS, the required educational contribution of up to $500, and the fees charged by CHI.  In the same brochure, consistent with our calculation of the weekly cost to the host family, we listed the au pair weekly stipend as $195.75.  Ex. A.4 (Marketing Material 1).

c.     In another flyer directed to prospective au pairs, we were not trying to market the affordability of the program.  So, we indicated that the au pair receives "a direct weekly payment from the Host Family based on U.S. minimum wage standards." Ex. A.5 (Marketing Material 2) at CHI0005134.

17.     Second, as the prospective au pair and host family move through the screening and selection process, each receives a handbook that has very specific details about the program and the DOS regulations.

a.     The au pair handbook states that the au pair will "receive a weekly stipend based upon the U.S. minimum wage standard . . . ."  Ex. A.6 (Au Pair Handbook) at CHI0006843.  The handbook refers the prospective au pair to the "Federal Minimum Wage notice" that is provided in the reference section of the handbook. *Id.* This notice is the DOS Notice dated June 14, 2007, which (as noted above) states the "weekly stipend (including room and board) for the standard Au Pair"

Defs.' Appx. 00000459

will be $195.75 as of July 24, 2009. *Id.* at CHI0006871. We also provide a copy of the DOS regulations in the au pair handbook. *Id.* at CHI0006865-67.

b. Similarly, the host family handbook states that the host family provides a "stipend of $195.75 per week," and also attaches copies of the June 14, 2007 DOS Notice and the DOS regulations. Ex. A.7 (Host Family Handbook) at CHI00018738, CHI00018757-61.

18. Third, once an au pair has been matched with a host family, we have separate, formal, written agreements with both the au pair and the host family that, among other things, refer to the weekly stipend. These agreements fulfill CHI's obligation to inform the au pair and host family of the au pair program requirements.

a. The au pair agreement (titled "Au Pair Promise and Agreement") states that the au pair understands "that I will receive a weekly stipend for the host family based upon minimum wage in accordance with current U.S. Government regulations." Ex. A.8 (Au Pair Agreement) at CHI0002325. Of course, this sentence references the regulations and DOS Notice previously provided to the au pair, although additional copies of these documents are not attached to the agreement.

b. In the same fashion, the host family agreement states that the host family will pay the au pair "a weekly stipend in accordance with current U.S. Government regulations." Ex. A.9 (Host Family Agreement) at CHI0018893-94. Once again, this sentence references the regulations and DOS Notice previously provided to the host family, although additional copies of these documents are not attached to the agreement.

Defs.' Appx. 00000460

c. Once we advise host families and au pairs of the minimum stipend set by the DOS, the host families may pay their au pairs whatever they wish, so long as they pay at least $195.75 per week.

### DOS closely monitors CHI's communications with au pairs and host families

19. CHI has a regulatory obligation to provide program-related information to au pairs and host families. *See, e.g.,* 22 C.F.R. § 62.9(d)(3). To meet that obligation, and based upon the guidance provided in the Notices, CHI, using our own words, has informed its au pairs and host families of the amount of the weekly stipend set by the DOS.

20. In multiple ways, the DOS monitors CHI's communications with au pairs and host families to confirm that we are complying with DOS regulations.

a. First, every year as part of the DOS annual audit of each sponsor, we submit to DOS copies of all of our marketing and advertising materials. We know that DOS reviews these carefully because they have asked us many questions about our materials to make sure they are compliant (which they always have been).

b. Second, each month, our au pair coordinators contact each au pair to ensure that the au pairs are receiving their weekly stipend.

c. Third, the regional counselor is required to make personal contact with each host family and au pair for which they counselor is responsible.

d. Fourth, once a year, in connection with the annual audit required by the regulations, an independent auditor uses a template prepared by DOS to survey a

Defs.' Appx. 00000461

sample of our au pairs to ensure that each is receiving a stipend of "at least" $195.75. 22 C.F.R. § 62.31(m)(4).

      e.      Finally, DOS conducted a site visit of our offices at which the DOS representatives reviewed all of our materials, including our communications with au pairs and host families regarding the weekly stipend. The site visit occurred in December 2013. Following the site visit, we received confirmation that we were operating our au pair program in conformance with the regulations. Exs. A.10 (Notice of On-Site Review) and A.11 (On-Site Review Follow Up).

      21.      The following description of a series of emails between Maha Ammar, a DOS Senior Program Analyst, and Linda Mori and Deborah Herlocker of CHI, demonstrates how closely DOS monitors our communications with potential host families, including our promotional materials, au pair and host family agreements, and related materials.

      a.      In 2011, in connection with CHI's annual compliance report, we sent samples of promotional materials and brochures we distribute to au pairs and host families to Maha Ammar of DOS. Ex. A.12 (Emails with Ms. Ammar).

      b.      The promotional brochure we provided to Ms. Ammar states that the host family provides the au pair a "stipend of $195.75 ($146.81 for Educare) paid per week." Ex. A.4 (Marketing Material 1).

      c.      After receiving the brochure, Ms. Ammar stated the "CHI Brochure is great and the transparent breakdown of program costs is appreciated." She then asked several questions:

Defs.' Appx. 00000462

      i.      "[D]oes CHI charge a fee for relocation/assignment of au pairs?"

     ii.      "[I]s health insurance information mentioned in the brochure and included in the program costs breakdown?"

    iii.      She also asked for clarification of our statement that participation in the au pair program would cost $343 per week per family, and that the au pair would be paid a weekly stipend of $195.75 per week.

Ex. A.12 (Emails with Ms. Ammar) at CHI0029131-32.

     d.     In response, CHI's Operations Manager, Deborah Herlocker, explained that the $343 cost figure "is the all inclusive cost which includes the weekly stipend of $195.75, the educational contribution of up to $500 and the agency fees." *Id.* at CHI0029130.

     e.     Ms. Ammar next asked whether the brochure should also include further information concerning the high cost of healthcare in the US, program cost items like relocation and cancellation fees, and CHI's refund policy.

     f.     Ms. Herlocker explained:

> We use the brochure as a marketing tool to provide a quick introduction to the main elements of the program and to garner interest in the program. Thus, the specific topics you mentioned are not covered in detail in that document. If after reviewing the brochure and website, the family is interested in learning more about the program, they will meet with our coordinators who will review the Host Family Handbook and the Host Family Agreement with them. These two documents cover the more specific details of the program, such as what you mentioned below.

*Id*. at CHI0029129.

       g.     Ms. Herlocker then provided Ms. Ammar detailed information about how CHI runs its marketing and screening operation:

         i.     "As we are smaller, we depend a lot more on one on one meetings and discussions to introduce families to the program and all of the components of the program." *Id.* at CHI0029126.

        ii.     "As you mentioned, [the au pair] program is very detail oriented so the details on the program are broken up through different documents as the families go through different stages of the screening process." *Id.* at CHI0029127

        iii.     The brochure "is the most basic flyer that is used to provide the basic summary of the program. . . ." *Id.* The purpose of the brochure is to "introduce the program to families who have no idea what an Au Pair or cultural exchange is." *Id.*

        iv.     If a family receives this document and has not yet spoken to someone at CHI, they are requested "to review our website and to contact someone at CHI. We will then review the government regulations and the set up of the program with them to ensure they understand and meet those basic requirements." *Id.*

v.      If the host family is still interested, "they will be provided with our Host Family Agreement to review and we will schedule an interview with our local coordinator." *Id.*

vi.     "Our local coordinator will meet in person with them and review the Host Family Agreement, which includes all the very specific details about replacement Au Pairs, refunds and of course, a review of the regulations" *Id.*

vii.    Ms. Herlocker concluded that the "reason I described the process so in detail is our Host Family Agreement and our Host Family Handbook are a very large part of our informational/screening process of Host Families." *Id.*

h.      Ms. Ammar closed by saying:  "I appreciate the detailed clarification of CHI's business model and the one-on-one attention and support provided to host families." *Id.* at CHI0029126.

22.    The annual audit ensures that CHI and our host families comply with the procedures and reporting requirements set forth in DOS regulations.

a.      For example the audit compliance procedure template issued by DOS, which we provide to our auditor, requires confirmation by au pairs that they received "at least [$195.75] per week as compensation."  *See* Ex. A.13 (Audit Template) at CHI0021151.

b.      The audit process requires a survey of a representative sample of host families and au pairs to compile information for the audit.  The host family

confirmation form asks, among other things, whether the host family has "paid your au pair a weekly stipend of at least $195.75." *See* Ex. A.14 (Host Family Confirmation Form) at CHI0026948.

       c.    The au pair confirmation form similarly asks whether the au pair "received at least $195.75 a week as a stipend." *See* Ex. A.15 (Au Pair Confirmation Form) at CHI0026935.

    23.    To prepare our audit reports, our auditor receives information from the sample of au pairs and host families, and then reviews our files. Our audit reports submitted annually to DOS reference the stipend in two separate instances. In our 2013 audit report, for example, our auditor certified the following:

       a.    "We read the signed Host Family/Au Pair Agreements to determine that the Host Family has agreed that Au Pair Participants will . . . be compensated at a weekly rate based on 45 hours per week and paid in conformance with the requirements of the Fair Labor Standards Act. Compensation must be no less than $195.75 per week . . . ." *See* Ex. A.16 (Audit Report) at CHI0025623.

       b.    "We sent confirmations to the 128 Au Pair Participants. Of the 128 confirmations sent, 76 have responded associated with the sample selected for testing. The following outlines the responses to the confirmation questions . . . .74 responded that they received at least $195.75 per week as compensation. 2 responded that they did not receive at least $195.75 per week as compensation." *Id.* at CHI0025624.

       c.    As noted above, in late 2013, CHI was selected by DOS to participate in an on-site review. The site visit required that we provide documents in

Defs.' Appx. 00000466

advance of the visit and host a team of DOS representatives to conduct interviews and review our files.  We were required to provide a list of key employees available to be interviewed, organizational charts, business operation and financial documents, documents related to foreign and domestic third parties, and host family price lists.  *See* Ex. A.10 (Notice of On-Site Review).  The information provided to DOS would have included materials indicating that the weekly stipend was $195.75.

      d.    CHI provided the documents requested, hosted a review team, and made multiple employees available for interviews.  Among the documents provided during the review was a 2013 au pair application issued by Au Pair Travel, one of our overseas partners we use to recruit prospective au pairs from South Africa.  This document also refers to the $195.75 weekly stipend as a minimum.  *See* Ex. A.17 (Au Pair Travel Agreement) at CHI0021306.

      e.    On June 30, 2014, after the on-site review process had been completed, DOS confirmed by letter that "CHI appears to be operating its au pair program in compliance with program regulations . . . Thank you for your continued support of this important international exchange initiative."  Ex. A.11 (On-Site Review Follow Up).

24.    From the time we began operating the au pair program to the present, DOS has never questioned us about the amount of the stipend host families have paid au pairs or indicated to us that $195.75 per week does not comply with regulations or any applicable laws.  Nor has DOS ever suggested that there was anything improper or misleading about the way we communicated with prospective au pairs and host families.

Case No. 1:14-cv-03074-CMA-KMT   Document 1181-15   filed 02/16/18   USDC Colorado   pg 1 of 15
Case 1:14-cv-03074-CMA-KMT   Document 861-8   Filed 02/16/18   USDC Colorado   Page 149 of 423
Defs.' Appx. 00000467

**The host family decides how much the au pair stipend
will be and pays that amount to the au pair**

25.     We understand that the $195.75 weekly stipend is a minimum.  Ultimately, CHI's host families determine what to pay their au pairs and may pay more if they wish.

26.     In fact, according to our local coordinators, some of our host families also round up to $200.00 per week or pay even more.  It is imperative that host families pay at least $195.75 for our program to comply with DOS regulations, but if they want to pay more, they are free to do so.

27.     As a practical matter, in addition to the weekly stipend of at least $195.75, most of our host families pay for benefits (such as cell phones, cell phone bills, birthday and holiday presents, paid vacations, and extra money for social or cultural outings).

28.     To ensure that the program remains affordable, we do not want au pairs to expect they will receive more than $195.75 per week.  Nor do we want host families to feel they need to pay more if they choose not to do so.  If we told host families they needed to pay more, we would risk losing them to other sponsors.  Ultimately, it is up to the host family to determine how much they pay their au pair, as long as they pay at least $195.75 per week.

29.     As far as the stipend is concerned, we are only required by DOS regulations to monitor, as we do, that au pairs receive their stipends every week.  DOS regulations also require us to monitor that au pairs (i) only perform childcare and light housework services, (ii) assist their host families no more than 10 hours per day and 45 hours per week, (iii) receive one and one half days off per week and one full weekend

Defs.' Appx. 00000468

off per month, and (iv) receive two weeks of paid vacation. Our local coordinators provide this oversight and ensure compliance.

30. On the rare occasion when a host family does not or cannot pay its au pair at least $195.75, or when a dispute arises over whether the stipend was paid, CHI intervenes immediately. If the situation cannot be remedied, we will remove the au pair from the home, make every effort to make a new placement, and pay the au pair any amounts owed to her.

31. From a review of the many thousands of documents produced in this case, and the hundreds of emails addressing the amount of the stipend, I am aware that in a few instances, one of our representatives mentioned that the amount of the stipend paid to au pairs placed through CHI was $195.75 and not open to negotiation. One such example is reflected in a 2011 email from one of our regional coordinators, Chris Burbach. Ex. A.18 (Email with Ms. Burbach).

    a. Chris's statement was a mistake. I believe the mistake arose out of an effort to distinguish CHI from other sponsors that offer experienced au pairs at a higher weekly stipend. For example, in the referenced email, our operations manager distinguished CHI from another sponsor, Au Pair International, which apparently offers experienced au pairs through their "Au Pair Professional" program. *Id.*

    b. To try and avoid mistakes in what au pairs might be told, we give each of the partners a manual that states: "As required by DoS regulations, the host family pays the Au Pair a weekly stipend. **Please refer to the stipend notice for information on the current stipend. The stipend is tied directly to the minimum**

wage, so when the minimum wage increases, the stipend will increase." Ex. A.19 (Partner Agent Manual) at CHI0002730 (emphasis in original). We then give the partners a notice containing the same information found in the DOS Notice dated June 14, 2007. Ex. A.20 (Notice to Partners) at CHI0002406.

        c.     CHI believes many of the au pairs we place would qualify as "experienced" under the guidelines used by other sponsors. Nonetheless, we do not have a separate program for "experienced"' au pairs who would be entitled to receive a higher weekly stipend. We have found that the market does not support an au pair program requiring a higher stipend because in our experience, the vast majority of host families prefer to pay a lower stipend in the range of the $195.75 amount set by DOS.

### The economics of CHI's au pair program

32.     CHI is a nonprofit organization and, as indicated, we market the au pair program to prospective host families as an affordable child care program. For example, recent CHI marketing materials refer to the program as "affordable" and a "tremendous value," particularly when compared to daycare or a nanny. *See* Ex. A.21 (Marketing Material 3) at CHI0000219.

33.     To that end, we try to provide our services at a cost to the host family that is near the low end of the wide range of fees charged by other sponsors. *See, e.g.,* Ex. A.22 (Weekly Update Email) at CHI0007134.

34.     It is not in our economic interest to advertise that our host families should pay more than the DOS weekly minimum of $195.75 because we compete with other sponsors to attract host families to our program. If we suggested or required host

Defs.' Appx. 00000470

families to pay more than $195.75, our program would be less affordable and, due to competitive pressure from the other sponsors, we would have a harder time recruiting host families to participate in CHI's au pair program.

35.    By the same token, we have no economic incentive to enter into an agreement with the other sponsors to tell prospective host families that the weekly stipend is $195.75.  We can decide to do so – as we have – without regard to what other sponsors might do.  In fact, we would be better off if all of the other sponsors told their prospective host families that the weekly stipend was $225, $250, or more because then we would have an advantage in the market and more appeal to potential host families looking for an affordable childcare plan.

36.     CHI's expenses and program costs for the au pair program outpaced revenues nearly every year from 2006 forward.  We were only net revenue positive in 2013 and 2014.  Otherwise, we have operated the au pair program at a loss every year since 2006.

37.    To the extent that we advertise a specific amount for the weekly stipend, we cannot realistically advertise that the stipend is either above or below $195.75.

38.    If we were to advertise a stipend *lower* than $195.75, our program would be more affordable and could attract additional host families, which is how we generate revenue.  But if we were to do so, we would be in violation of DOS regulations, lose our status as a sponsor, and risk legal action.

Defs.' Appx. 00000471

39.     If we were to advertise a stipend above $195.75, the program would be less affordable to host families and we would be disadvantaged in our efforts to compete with other sponsors to attract host families to our program.

a.     For example, as indicated above, in 2010-11, we told host families that the weekly cost of the au pair program was $343.

b.     If the weekly stipend were raised to $250, the weekly cost would be increased to almost $400.

c.     If the au pair were paid a stipend equal to $7.25 (the full federal minimum wage) per hour for a 45 week, the weekly cost to the host family would be about $475.

d.     When mandatory room and board is added to these weekly figures, the cost of the au pair is much less affordable.  Indeed, the au pair cost would approach the cost of a full-time nanny, which would make the au pair program considerably less desirable to many host families.

40.     Additionally, we do not need to advertise a program where the stipend is more than $195.75 in order to attract more au pairs.  In fact, we have more au pair candidates than we do host families.  *See, e.g.*, Ex. A.23 (Number of Au Pairs Email) at CHI0003367.

41.     Specifically, DOS allocates to CHI a certain number of au pairs.  Before 2016, the total allocation was 150.  In April 2016, the allocation increased to 400.  Every year, a number of our allocated slots go unfilled.  This is not because we lack qualified candidates to serve as au pairs.  Instead, the difficulty in utilizing our entire allocation is

Defs.' Appx. 00000472

based on finding and retaining host families. It is easier to increase the number of qualified au pairs than the number of host families.

42. We always have more au pairs that host families. This is for two main reasons.

      a. First, we need to have more au pairs on hand, in the event an initial match does not work out and a host family requests a replacement.

      b. Second, it is more difficult to find and recruit host families than it is to find young people around the world who want to come to the United States and participate in this cultural exchange program.

43. In sum, as a sponsor, we have a surplus of au pair candidates and therefore, we want to recruit as many host families to the program as possible. The host families want an affordable program, which by necessity involves the lowest stipend allowed by law.

**Competition with other sponsors and recruitment of au pairs**

44. As noted, we compete with other sponsors to recruit host families and retain them once they have hosted a CHI au pair. Finally, we compete with the other sponsors on the fees we charge host families. By way of example, from publicly available information, we monitor our competitors' application and program fees and make every effort to price our program at or below the prices charged by other sponsors. *See, e.g.,* Ex. A.22 (Weekly Update Email) at CHI0007134.

45.     We do not generally compete with other sponsors to find young people
qualified to serve as au pairs.  Our foreign partners handle the recruitment of au pairs in
their respective territories or countries.

### CHI has not entered into an agreement
### to suppress the amount of the weekly stipend

46.     I understand that Plaintiffs' counsel engaged a private investigator to
contact several sponsors about the stipend.  The investigator's notes do not reflect any
conversations with any CHI employee and, to my knowledge, no one from CHI was ever
contacted or provided any information to this investigator.  Nor do the investigator's
notes mention CHI.

47.     No one at CHI ever communicated with other sponsors on the issue of
whether host families should pay more than $195.75.

48.     CHI has never been a party to any agreement with any sponsor (or
anyone else) that the weekly stipend be "precisely $195.75," or anything like that.

49.     DOS encourages the sponsors to share "best practices" designed to
ensure compliance with the regulations and improve the quality of the au pair program.
These best practices endorsed by DOS include:

        a.      Requesting that local coordinators conduct regular monthly in
person check-ins;

        b.      Frequent training of local coordinators and foreign partners;

        c.      Thorough vetting of host families and their children;

        d.      Program transparency – "when in doubt, report;"

> e.     Providing guidance and support regarding tax preparation and
direction to IRS websites; and
>
> f.     Strong sponsor support for au pairs.

Ex. A.24 (Alliance Annual Meeting Notes) at CHI0029882.  The best practices do not
include any sort of agreement or discussion of whether the amount of the weekly
stipend should be limited to "precisely $195.75."

### Conclusion

50.     As noted, we have described the weekly stipend in various ways, with a
differing level of specificity depending on the context of the communication:

> a.     In our marketing and promotional materials provided to potential au
pairs and host families, we state the weekly stipend is "$195.75."
>
> b.     The agreements we have with au pairs and host families state that
the au pair will receive "a weekly stipend from the host family based upon minimum
wage in accordance to current U.S. Government regulations."  Exs. 8 (Au Pair
Agreement) at CHI0002325, 9 (Host Family Agreement) at CHI0018893-94.
>
> c.     We provide more information about the regulatory requirement for
the stipend by including a copy of the Notice described above in paragraph 10.b in the
host family orientation materials.  We understand the Notice to be the latest word from
DOS on the amount of the stipend.
>
> d.     In our au pair agreement, we state that the weekly stipend is
"based on the minimum wage in accordance to current U.S. Government regulations."
>
> e.     The host family agreement has similar language.

21

51.     After all of the DOS audits and monitoring activities described above, we have never been told by DOS that the means we have chosen to communicate the amount of the weekly stipend are contrary to the regulations, inaccurate, or deficient in any way.

52.     And, most importantly for this lawsuit, we have never been part of an agreement with any other sponsor to communicate that the weekly stipend for "standard" au pairs is precisely $195.75, or anything of the sort.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated February 12, 2018.


 /s/ Christina Reilly
Christina Reilly


10672657_6