# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLI NA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
     and those similarly situated,

     Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

     Defendants.

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF EQUITABLE TOLLING AND DELAYED ACCRUAL AS TO CERTAIN OF PLAINTIFFS' CLAIMS

---

## **PRELIMINARY STATEMENT**

Two buckets of statutes of limitation are critical at this time — those that run to six years and those that run to less.  For the former, there effectively is no limitations period, as the noticed classes go back less than six years from the date of filing.  For the latter, the statutes of limitation cannot be applied until factual disputes are resolved at trial.  Either way, no statute of limitations issue could alter the scope of trial.

*First*, there are questions of fact as to when Plaintiffs' claims accrued.  At least forty-four active claims in this case (out of sixty-eight) recognize a version of the "discovery rule," which holds that the statute does not begin running until a reasonable person in the Plaintiffs' shoes would have discovered the claim in the exercise of reasonable diligence.  That analysis implicates fact issues, such as the sophistication and experience of the *au pairs*, the degree of power and control the Defendants exercised over the *au pairs*, and the impact of the Defendants' fraudulent misrepresentations on the *au pairs'* ability to discover their claims.

*Second*, there are issues of fact as to whether Plaintiffs' claims were tolled as a result of fraudulent concealment.  The federal and state laws at issue generally provide that affirmative acts of concealment, as well as omissions in the face of a fiduciary or special duty to disclose information, may toll the limitations period as a matter of equity. If Defendants lied about *au pair* wages, or omitted material information, the limitations period for nearly every claim in this case will be tolled.[1]

---

[1]      The Court's Order that the parties brief "equitable tolling" necessarily covers both the discovery rule and fraudulent concealment.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (Posner, J.) ("Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the

For all of these reasons, while Plaintiffs would welcome further clarity on the temporal scope of any claims with a limitations period shorter than six years, that clarity cannot come until the end of trial. In fact, because of the fact issues and extrinsic evidence at issue, a non-advisory ruling on the limitations issues could not issue unless the present proceedings are expanded in accordance with Rule 56.

## BACKGROUND AND OVERVIEW OF PLAINTIFFS' CLAIMS

Plaintiffs filed their initial complaint on November 13, 2014. ECF Nos. 1-2. After motion practice, the Court certified eighteen (18) classes and subclasses pursuant to Fed. R. Civ. P. 23: one nationwide antitrust class, one civil RICO class, three "training" classes, and thirteen (13) defendant and state-specific subclasses who bring wage claims and state law misrepresentation-based claims under the laws of ten (10) states (the "Rule 23 Classes"). Only the nationwide antitrust class includes all Defendants; the remaining classes cover a subset of six Defendants: Cultural Care, Au Pair in America ("APIA"), AuPairCare,[2] InterExchange, Go Au Pair, and Expert Au Pair (the "Six Defendants").

Under the Fair Labor Standards Act (the "FLSA"), the Court has conditionally certified eleven (11) classes and subclasses for unpaid wages and overtime violations (the "FLSA Classes"). Of the eleven FLSA Classes, six classes were certified for wage violations (failure to pay the minimum wage, unlawful room and board deduction, and

---

discovery rule, should have discovered, that the defendant injured him . . . ."). At any rate, it is common to refer to the discovery rule (a legal rule concerning claim accrual) as "tolling," *see id.*, and its relevant facts overlap with tolling as a matter of equity.

[2] Pending final resolution of proceedings on AuPairCare's appeal of this Court's order denying arbitration for the claims of AuPairCare-employed au pairs, the AuPairCare-specific subclasses are not actively litigating in this forum. AuPairCare remains an active antitrust and RICO Defendant. *See* ECF No. 756 at 13.

unpaid training against the Six Defendants), and five were certified for unpaid overtime against five of the Six Defendants (excluding InterExchange).

In total, sixty-eight (68) claims survived Defendants' motions to dismiss and motions for summary judgment, and are headed to trial. The statute of limitations for the claims asserted by the FLSA and Rule 23 Classes are compiled in **Appendix A**. For the Rule 23 classes, the limitations periods range from 2 years to 6 years. Because Defendants' conduct was willful, the FLSA Classes are subject to a three-year statute of limitations. Thus, absent any tolling or accrual exception, timely claims include *au pairs* who worked on or after November 13, 2008 (6-year state law claims); November 13, 2010 (4-year antitrust and RICO claims); and November 13, 2011 (3-year FLSA non-overtime claims).

Although some claims extend to 2008, the certified Rule 23 and FLSA Classes only include "standard" *au pairs* who worked on or after January 1, 2009. This is because of discovery limitations and because standard *au pairs*, defined as those who earned the fixed $195.75 per week wage for up to 45 hours per week, with no pay for overtime, began earning that fixed wage in 2009. Accordingly, Plaintiffs' Rule 23 class notice, and FLSA class notice have each informed *au pairs* that they may be included in this lawsuit if they worked from 2009 to the present. *See, e.g.,* FLSA Class Notice, ECF No. 618-2 ("on or after July 25, 2009"); Rule 23 Notice, ECF No. 1011-2 ("between January 1, 2009 and the present").

## LEGAL STANDARD

The statute of limitations is an affirmative defense on which the defendant bears the initial burden of proof. F.R.C.P. 8(c); *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d

3

1036, 1041 n.4 (10th Cir. 1980).  After the defendant makes a *prima facie* showing, the plaintiff may demonstrate that an exception to the limitations rule applies.  *Aldrich*, 627 F.2d at 1041 n.4.  However, Rule 56 applies if the Court's determination of statute of limitations matters considers material outside the pleadings or judicial notice.  *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454, 456 (10th Cir. 1978) ("the trial court, though it did not say so in so many words, was treating the motions to dismiss as motions for summary judgment. In such circumstance there must then be compliance with Rule 56"; reversing summary judgment for the defendant).

Thus, Defendants must establish that Plaintiffs cannot raise at least a reasonable dispute of material fact concerning the statute of limitations issues—and Defendants must do so through a full summary judgment procedure.  *See State of Ohio*, 585 F.2d at 456 (reversing trial court that disposed of a discovery rule argument with reference to materials outside the pleadings because it had not "compli[ed] with Rule 56").

## THE DISCOVERY RULE AND FRAUDULENT CONCEALMENT

Though often called a matter of "tolling," the discovery rule prevents a claim from accruing—and therefore starting the limitations clock—unless a reasonable person in the plaintiff's position had notice of her injury and its cause and would, in the exercise of ordinary diligence, have discovered her claim.  *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998); *Estate of Stieb v. Johnson*, No. 16-CV-02548-KLM, 2018 WL 4111018, at *4 (D. Colo. Aug. 29, 2018); 51 Am. Jur. 2d Limitation of Actions § 158; 33 A.L.R. 5th 1.  And notwithstanding the reasonable person standard, "[w]hat a plaintiff should have known is a factual question usually reserved for the jury."  *Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 252 (10th Cir. 1994) (citing *Maughan v. SW*

4

*Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985)).  The discovery rule has no material variation across the claims to which it applies in this case.  *See* **Appendix B**; *see also Sawtell*, 22 F.3d at 250 ("Under a typical discovery rule, the statute of limitations begins to run at the time the plaintiff knew or with reasonable diligence should have known of the damage and the cause of the damage.").

Fraudulent concealment is a form of equitable tolling or equitable estoppel that prevents a defendant from benefitting from its wrongful acts.  *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1281–82 (10th Cir. 2014).  A defendant cannot engage in conduct that fraudulently conceals a claim from the putative plaintiff, then assert a limitations defense.  *Id.*  Only if the Court determines that Plaintiffs cannot meet the lower discovery rule standard do equity and fraudulent concealment come into play. *Cada*, 920 F.2d at 451 (Posner, J.) ("Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him . . . .").  Most jurisdictions apply the rule to situations where a defendant owed a fiduciary or special duty to disclose information, but failed to do so in a way that kept the plaintiff from learning about a claim.  51 Am. Jur. Limitation of Actions § 166; 173 A.L.R. 576; *see also* **Appendices B and C** (state- and claim-specific citations).[3]

---

[3]      There are other forms of equitable tolling at issue, such as the "exceptional circumstances" exception.  *Kach v. Hose*, 589 F.3d 626, 645 (3d Cir. 2009) (collecting examples); *see also Allred v. Chynoweth*, 990 F.2d 527, 530 (10th Cir. 1993).  However, that exception relies on the same facts and Plaintiffs understand that Defendants have been focused on FLSA equitable tolling (a version of fraudulent concealment) and, for the Rule 23 class, fraudulent concealment.

# ARGUMENT

**I.   THE COURT SHOULD NOT ADDRESS STATUTE OF LIMITATIONS ISSUES IN THE PRESENT PROCEDURAL POSTURE.**

**a. No ruling would narrow the scope of trial or otherwise bring this case closer to resolution.**

The ruling that certain Defendants seek would not narrow or resolve issues for trial because the evidence on both fraudulent concealment tolling and the discovery rule overlaps with the merits.  As explained above and illustrated in Section II.d. below, the discovery rule considers whether a reasonable person in her circumstances had sufficient notice, and the relevant circumstances included Defendants' continuous misrepresentations and misleading omissions about Plaintiffs' wages and their ability to negotiate them.  Fraudulent concealment is critically focused on the same statements, and the facts that give rise to Defendants' duty to disclose the truth are the same as those underlying Plaintiffs' claims for fiduciary duty.[4]

Nor could Defendants reduce the time period for damages by obtaining a ruling on the statutes of limitation.  As **Appendix A** shows, several of claims' limitations periods are six-years long (*i.e.*, accruing on November 13, 2008)—and therefore exceed the scope of the noticed classes in the case, which date back to 2009.

---

[4]      Given this factual overlap, it is no surprise that the discovery rule and fraudulent concealment are often tried classwide.  *E.g., Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 846 (S.D. Ohio 2013) (finding the interests of justice favored equitable tolling for FLSA opt-in plaintiffs); *Bolletino v. Cellular Sales of Knoxville, Inc.*, 3:12-cv-138, 2012 WL 3263941, at *4 (E.D. Tenn. Aug. 9, 2012) (granting equitable tolling to a class of opt-in plaintiffs); *Stransky v. HealthOne of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181-82 (D. Colo. 2012) (tolling FLSA's statute of limitations); *see also Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 313 (D. Md. 2014) (finding defendants purported "individualized defense" of statute of limitations "unavailing"); *Hernandez v. United Auto Credit Corp.*, No. C-08-03404 RMW, 2010 WL 1337702, at *5 (N.D. Cal. Apr. 2, 2010) (rejecting argument that statute of limitations defense required decertification).

**b. The statute of limitations decisions implicate fact issues that cannot be resolved without full Rule 56 procedure.**

In fact, a ruling that disposed of Plaintiffs' statute of limitations arguments would be error in the current posture.  *See State of Ohio*, 585 F.2d at 456 (reversing trial court that disposed of a discovery rule argument with reference to materials outside the pleadings because it had not "compli[ed] with Rule 56").  And the Tenth Circuit has explained that summary disposition of a limitations period is improper where the matter includes factual issues, such as "when a plaintiff knew or with reasonable diligence should have known of a cause of action."  *Maughan,* 758 F.2d at 1387-88.  It would be futile to re-open summary judgment proceedings under Rule 56 because the statute of limitations issues in this case turn on factual matters.

**II.     PLAINTIFFS CAN PURSUE DAMAGES THROUGH AT LEAST 2009.**

**a. Antitrust & civil RICO have both a discovery rule and permit tolling for fraudulent concealment.**

The accrual of antitrust and civil RICO claims may be delayed based on the "injury discovery rule," which "protects plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and [the cause of the injury] are in the control of the tortfeasor or otherwise not evident."  *Kirchhefer*, 764 F.3d at 1277; *In re: EpiPen Antitrust Litigation*, -- F. Supp. 3d --, 2018 WL 3973153, at *47 (D. Kan. Aug. 20, 2018) (applying injury discovery rule to antitrust and civil RICO claims).  In applying the rule, courts look objectively at whether the "reasonably diligent plaintiff would have discovered the injury."  *Kirchhefer*, 764 F.3d at 1279.

Tolling based on fraudulent concealment is available for both antitrust and civil

RICO claims.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95 (1984).  "To avail themselves of the doctrine of fraudulent concealment, class plaintiffs must show (1) the use of fraudulent means by the conspirators; (2) successful concealment from plaintiffs; and (3) that plaintiffs did not know or by the exercise of due diligence could not have known that they might have had a cause of action."  *In re Urethane Antitrust Litigation*, 913 F.Supp.2d 1145, 1158 (D. Kan. 2012) (citing *Ballen v. Prudential Bache Securities, Inc.,* 23 F.3d 335, 336-37 (10th Cir. 1994)).

**b.  FLSA uses a fraudulent concealment version of equitable tolling.**

The FLSA does not use a discovery rule.  *See* **Appendix B.**  However, the FLSA does recognize a fraudulent concealment version of equitable tolling, which considers (1) whether the plaintiffs lacked actual notice of their rights; (2) whether they lacked constructive notice; (3) the diligence with which they pursued their rights; (4) whether the defendant would be prejudiced by tolling; and (5) the reasonableness of the plaintiffs' remaining ignorant of their rights.  *Smith v. BNSF Ry. Co.*, 246 F.R.D. 652, 654–55 (D. Kan. 2007).

**c.  The state law at issue generally recognizes both the discovery rule and fraudulent concealment.**

As detailed in **Appendices B and C**, the vast majority of Plaintiffs' state law claims are subject to nearly identical tolling or delayed accrual doctrines.  Like federal law, state law generally permits tolling where Defendants' affirmative acts concealed information necessary for Plaintiffs to have sufficient notice.  Fraudulent concealment under state law is also generally permitted for Defendants' inaction or omissions because a fiduciary or special relationship creates a duty for the Defendant to disclose

information about Plaintiffs' rights.  51 Am. Jur. Limitation of Actions § 166; 173 A.L.R. 576.  The parties to this case are in fiduciary relationships.  *See* ECF No. 240 at 40 ("Defendants are legally responsible for training the *au pairs* for their employment and protecting their rights"), *adopted at* ECF No. 258 at 33-34.

### d. Defendants actively concealed the truth.

The au pairs—youths in a foreign country with a foreign language and foreign laws—looked to Defendants for accurate information.  Defendants not only omitted the accurate information they had a duty to disclose—they affirmatively misled *au pairs* about their rights by misrepresenting the specific amount due to be paid to them, that this amount was fixed or non-negotiable, and that the amount was mandated by the Department of State.  In particular, they lied by telling *au pairs* that the stipend was set at $195.75.  This was false and Defendants knew it.  The weekly wage is not "fixed", and to the extent the Department of State gave them guidance, it explicitly told Defendants that the wage was a "minimum," not a fixed amount.  *E.g.*, ECF No. 1146-1 at 6 ("sponsors are free to direct host families to pay au pairs . . . more than the minimum").  Moreover, describing $195.75 as the lawful amount for up to 45 hours of work is also false: it is below the actual federal minimum wage and it misrepresents the minimum wages in numerous states and localities where *au pairs* worked.  Defendants also failed to post or provide any notice explaining the FLSA to *au pairs*, as is required pursuant to 29 C.F.R. § 516.4.  For reasons including these, *au pairs* lacked notice of their claims.

Defendants concealed *au pairs*' rights in four steps.  First, during the recruitment process Defendants consistently told *au pairs* to expect a fixed $195.75 weekly wage.

9

Having set that expectation, Defendants next reinforced the unlawful wage during the onboarding process, as future *au pairs* met and interviewed with their future hosts, signed contracts, and attended training.  Then, after the *au pairs* arrived in the hosts' homes and began working, Defendants further concealed their rights by actively misleading them about the wages they were entitled to earn.  And finally, Defendants reinforced this scheme by telling host families to pay their *au pairs* a fixed weekly wage of $195.75.[5]

  ***Recruitment.***  On their websites and in advertisements, Defendants represented to potential *au pairs* that their weekly wage would be $195.75, and that it was fixed.  For example, APIA's website represents that *au pairs* earn a "Weekly payment of $195.75 US for working up to 45 hours per week."  Ex.[6] 15.  In response to the question, "How much will I be paid?", InterExchange's website states, "au pairs are paid about $195 per week."  Ex. 61.[7]  Defendants' advertisements contain near-identical representations.[8]

  After luring potential *au pairs* in with these falsehoods, many Defendants repeated the lies in person at recruitment sessions and interviews in the *au pairs'* home

---

[5] As the Court knows from previous filings, there is extensive evidence in this case.  The following is only an illustrative summary.

[6] "Ex." refers to the exhibits to the Decl. of Byron Pacheco submitted herewith.

[7] *See also* Au Pair International website ("program costs" showing weekly stipend of "$195.75" from 2001 through 2017) (Ex. 31); USAuPair website ("Weekly wage of $195.75 US (51 weeks)") (Ex. 67); EurAuPair ("Q.  What will be my stipend?  A.  Your weekly stipend will be of $195.75 if you are an au pair in the regular program . . .") (Ex. 66); APF Global Exchange ("Au Pairs are entitled to . . . a weekly stipend of $195.75") (Ex. 65); Go Au Pair ("[a]s a Standard Au Pair, you work up to 45 hours each week and receive a weekly stipend of $195.75 – that's more than $10,000 a year!") (Ex. 41).

[8] *E.g.*, APIA brochure ("[y]our host family will provide you with…US$195.75 weekly pocket money.") (Ex. 14); Cultural Care advertisement ("Au pair program benefits: outlined by the U.S. Department of State…US $195.75 weekly stipend.") (Ex. 35); InterExchange advertisement ("[e]xperience Life in the U.S" and "[e]arn $195.75 a week + free room and board") (Ex. 50).

countries.  For instance, APIA's recruitment presentation told potential applicants, "AP gets: US$195.75 pocket money per week/approx US$10,200 per year."[9]  Ex. 11.  Similarly, InterExchange's presentation to applicants described as a "Program Benefit[]" that *au pairs* would "[e]arn $195.75 each week".  Ex. 52.  Various Defendants instructed their foreign agents to make the same representations.[10]  For example, a "foreign consultant" for InterExchange was asked whether an "au pair [will] get paid more than $195.75/week if au pair graduated with a degree in Nursing/Child education."  Ex. 53.  InterExchange responded, "No, we only run the standard au pair program and all au pairs on our program receive the standard weekly stipend of $195.75."  *Id.*

Defendants' strategy worked.  Named plaintiffs testified that they received these representations about a fixed wage, which they had no reason to question.  InterExchange's agent in Colombia told named plaintiff Beltran to expect $195.75.  Ex 64 (Beltran Dep. Tr. at 87:13-16).  Similarly, APIA's agent in South Africa told named plaintiff Hlatshaneni that she "could not be paid more than $195.75 per week" and that if she accepted more, she would lose her visa.  Ex. 24 (Hlatshaneni Decl. ¶ 3).  Named plaintiffs Azuela Rascon testified that she answered a Cultural Care advertisement promising the "best years" of her life.  Ex. 37 (Azuela Dep. Tr. at 26:24-27:4).  Ms. Azuela Rascon met with a Cultural Care representative who told her that she was going to earn $196 dollars per week.  *Id.* at 29:18-21.  Named plaintiff Mapledoram likewise

---

[9]    APIA made the same representation to applicants across the globe, including in Italy (Ex. 16) and South Africa (Ex. 13).

[10]    *E.g.* InterExchange's "International Cooperator Handbook" ("Weekly stipend of $195.75 paid by the Host Family") (Ex. 59); Au Pair International's "International Sending Agent Handbook" ("au pair receives weekly stipend of $195.75.") (Ex. 30); Go Au Pair's International Representative Manual ("The stipend is set at $195.75/week for the Standard Program.") (Ex. 42).

applied to Expert Au Pair and two other Defendants, each of whom advertised that her wages would be $195.75 per week.  Ex. 40 (Mapledoram Decl. ¶ 2).  Named plaintiff Ivette Alexandra Gonzalez also testified that in her home country, "Go AuPair in Colombia told me the salary, and they told me that the family already know – or already knew the salary".  Ex. 48 (Gonzalez Cortes Dep. Tr. at 8:21-9:3).  Go Au Pair told her "the salary that it was going to be, no more less." *Id* at 9:12-21.  Go Au Pair's agent in Colombia told her that she would earn the same $195.75 regardless of whether she chose to work for Go Au Pair or EurAuPair.  Ex. 47 (Gonzalez Cortes Decl. ¶ 2).

*Onboarding.*  As applicants traveled down the road to becoming *au pairs*, Defendants continued to misrepresent the wages they were entitled to, and that they were fixed.  For example, APIA made clear to potential host families that the salary was not up for negotiation.  Its online *au pair* profiles (which host families use to select *au pairs*) state: "Weekly Stipend: The current weekly stipend is $195.75."  Ex. 10.  APIA's staff discussed such profiles by email, where they took for granted that the wage was fixed.  *See* Ex. 20 ("The current weekly stipend is $195.75.").

As part of the onboarding process Defendants also required *au pairs* to sign form contracts that acknowledged similar misrepresentations.  For example, Go Au Pair's form contract states, "I agree my weekly stipend will be no less than $195.75* per week."  Ex. 43.  Likewise, Agent Au Pair's host contract states, "[h]ost agrees to pay au pair the weekly stipend determined by the U.S. Department of State, currently $195.75 . . . .").  Exs. 4 & 5.  AuPairCare's contract states that the "[a]u pair will receive a weekly stipend in accordance with the US Department of State Regulations in the amount of $195.75.").  Ex. 27 at 3.  APF Global Exchange's contract similarly states that, "[h]ost

family will pay the Au Pair a week stipend of $195.75 ($146.81) in accordance with U.S. State Department and [FLSA] guidelines." Ex. 29. And APEX & 20-20's contracts contain nearly identical representations. *See* Ex. 3; Ex. 2.

In addition, the Training Classes assert claims against Defendants that require *au pairs* to attend week-long trainings, where they are again told that their wages are fixed at $195.75 per week. In Cultural Care's training, *au pairs* are told what to do if their hosts "forget to pay" on time, noting that "[y]our host family pays your weekly stipend of $195.75 via check." Ex. 34. InterExchange's training materials similarly state, "You will receive a weekly stipend, or payment, directly from your host family. You will receive $195.75 every week. The US government sets this amount, and your host family must pay this every week . . . ." Ex. 57.

***As harm continued.*** The most important concealment began after *au pairs* began working (whether in training or the host families' home) because that is when they would have suffered damages and therefore could have fully accrued claims. At this stage, Defendants reinforced, through direct communications, as well as handbooks and other written guidance, that *au pairs* had no right to earn more than $195.75. For example, AuPairCare sent an email to its *au pairs* warning that, "[l]egitimate host families will also not offer you a higher stipend than what is listed in the regulations published by the U.S. Department of State for the Au Pair Program." Ex. 26. Likewise, APIA sent the following letter to *au pairs*:

> **"Au Pair Pocket money increases again!** ...we are now very pleased to inform you that the weekly pocket money paid to au pairs will increase again from 24th July 2009! This means: **Au Pairs**: will receive weekly pocket money of **US$195.75**." Ex. 17 (emphasis in original).

13

APIA told *au pairs* looking to extend their employment for an additional year the same lie: "Really the only difference between being an extraordinaire au pair and a regular au pair is the weekly stipend ($250 versus $195.75).  If you're okay with it, then we can process the match for you as a regular au pair."  Ex. 19.  Indeed, "[a]lthough some host families may consider" paying more than $195.75, APIA has a "policy" of discouraging them from doing so.  Ex. 9.  For its part, InterExchange 'warned' *au pairs* that: "a scammer may pretend to be an *au pair* agency like InterExchange, or a host family that saw your profile online. . . . They may make you offers that sound amazing, like paying you more than the program amount of $195.75 per week."  Ex. 63.  InterExchange told the same lie to *au pairs,* host, and agents alike.  For instance, when an *au pair* inquired, "My friend said the first year is $195.75 and the extension year is $205.  Is it incorrect?", InterExchange responded, "No the stipend is regulated and does not increase."  Ex. 55.  Responding to a query from an agent, InterExchange wrote, "It sounds as if the family is not quite clear on certain program requirements…. let the family know the set weekly stipend requirement … which is $195.75 per wk."  Ex. 54.

Defendants reinforced that the stipend was fixed at $195.75 in written guidance to *au pairs*.  For example, APIA provided tax advice to *au pairs* to calculate their income as follows: "You were here for 31 weeks in 2015 and received a weekly stipend of $195.75* for those 21 weeks.  Your total would be 31 x $195.75…This rate will vary based upon when you arrived in 2015 and what program you were participating in when you earned the stipend [standard *au pair*, EduCare, or Extraordinaire]."  Ex. 23.  Defendants also provided *au pairs* with handbooks that contain policies for them to reference during their tenure.  AuPairCare's handbook advised, "[t]he weekly stipend

14

your host family has agreed to pay you is determined by the United States Department of State.  Your weekly stipend will be $195.75."  Ex. 28 at 40.

*Host families.*  Defendants ensured host families would not be sources of accurate information by providing identical representations to host families.  They did so in advertisements,[11] contracts,[12] and written guidance[13] for host families to rely on while the *au pairs* worked in their homes.  Defendants also did so when hosts asked specifically about how much *au pairs* should be paid.[14]

## CONCLUSION

For the reasons stated, Plaintiffs urge the Court not to rule on statute of limitations issues at this time.  Should the Court reach a decision, Plaintiffs respectfully request a holding that leaves damages available for all of the certified class members.

---

[11]     *E.g.* APIA advertisement ("you pay a Department of State regulated weekly stipend of $195.75 directly to your au pair") (Ex. 12); Cultural Care advertisement ("Salary negotiations are a hassle. All au pairs earn a weekly stipend of $195.75") (Ex. 32); Go Au Pair's marketing materials ("Right now, families are required to pay an au pair a weekly stipend of $195.75") (Ex. 45); InterExchange website ("Au Pair Stipend $195.75 per week") (Ex. 51).

[12]     *E.g.* Agent Au Pair Host family contract ("Host agrees to pay au pair the weekly stipend determined by the U.S. Department of State, currently $195.75 . . . ") (Exs. 4, 5).

[13]     *E.g.* InterExchange "Host Parent Survival Guide!" ("**Stipend is $195 and change.  Your choice to round up.**"  (Ex. 49) (emphasis in original).

[14]     For example, APIA wrote a host parent, "You would need to pay Wenjuan her weekly stipend of $195.75 plus a pro-rated program fee of $160 each week she is with you." Ex. 21.  APIA gave other hosts the same information: "Can you please review what my fee would be for me?  Standard fee with any discounts?"  APIA responded, ". . . There is a $35 sevis [sic] fee as well as the weekly stipend ($195.75) . . . ." Ex. 18.  Go Au Pair gave its host families the same information, that "[t]he weekly stipend to the au pair doesn't change, that is always the $195.75/week" (Ex. 46).  Some Defendants demand that host families expressly agree to pay "$195.75 per week."  Ex. 36 (Cultural Care host family application); *see also* Ex. 62 (InterExchange host family application).

Dated: November 13, 2018                    Respectfully Submitted,

                                            BOIES SCHILLER FLEXNER LLP

                                              /s/ *Sean P. Rodriguez*
                                            Matthew L. Schwartz
                                            Peter M. Skinner
                                            Dawn L. Smalls
                                            Joshua J. Libling
                                            Byron Pacheco
                                            575 Lexington Avenue
                                            New York, New York 10022
                                            Tel: (212) 446-2300
                                            Fax: (212) 446-2350
                                            mlschwartz@bsfllp.com
                                            pskinner@bsfllp.com
                                            dsmalls@bsfllp.com
                                            jlibling@bsfllp.com
                                            bpacheco@bsfllp.com

                                            Sean P. Rodriguez
                                            Juan P. Valdivieso
                                            1999 Harrison Street, Suite 900
                                            Oakland, CA 94612
                                            Tel: (510) 874-1000
                                            Fax: (510) 874-1460
                                            srodriguez@bsfllp.com
                                            jvaldivieso@bsfllp.com

                                            TOWARDS JUSTICE
                                            Alexander Hood
                                            1535 High Street, Suite 300
                                            Denver, Colorado  80218
                                            Tel: (720) 239-2606
                                            Fax: (303) 957-2289
                                            alex@towardsjustice.org

                                            *Attorneys for Plaintiffs*

# **APPENDIX**

**Appendix A: Statute of Limitations Applicable to Plaintiffs' Claims**

- Antitrust (Nationwide class against all defendants):  4 years
- RICO (Nationwide against APIA, AuPairCare[i], Cultural Care, InterExchange): 4 years
- FLSA (Nationwide AuPairCare, APIA, Cultural Care, Expert Au Pair, Go Au Pair, InterExchange):  2 years; 3 if willful

| Jurisdiction | Defendant(s) | State min. Wage | State overtime | Fraud | Negligent Misrep. | Breach of Fiduciary Duty | Consumer Protection |
|---|---|---|---|---|---|---|---|
| California | APIA | 3 years | 3 years | 3 years | 2 or 3 years[ii] | 3 or 4 years[iii] | 4 years |
| Colorado | Expert Au Pair, InterExchange | 2 years (3 if willful) | 2 years (3 if willful) | 3 years | 2 years | 3 years | 3 years |
| Florida | Expert Au Pair | 4 years (5 if willful)[iv] | N/A | 4 years | 4 years | 4 years | 4 years[v] |
| Illinois | APIA | 3 years | 3 years | 5 years | 5 years | 5 years | 3 years |
| Maryland | Cultural Care, Go Au Pair | 3 years + 2 weeks | 3 years + 2 weeks | 3 years | 3 years | 3 years[vi] | 3 years |
| Massachusetts | Cultural Care | 3 years | 2 years[vii] | 3 years | 3 years | 3 years | 4 years |
| Michigan | AuPairCare | 3 years | 3 years | 6 years | 6 years | 3 years | 6 years |
| New York | APIA, Cultural Care, InterExchange | 6 years | N/A | 6 years[viii] | 3 or 6 years[ix] | 6 years | 3 years |
| New Jersey | AuPairCare | 2 years | N/A | 6 years | 6 years | 2 or 6 years[x] | 6 years |
| Pennsylvania | AuPairCare, Cultural Care | 3 years | 3 years | 2 years | 2 years | 2 years | 6 years[xi] |
| Texas | Cultural Care | N/A[xii] | N/A | 4 years | 2 years | 4 years | 2 years |
| Utah | Cultural Care | N/A | N/A | 3 years | 3 years | 3 years | 2 years |
| Virginia | Cultural Care | N/A | N/A[xiii] | 2 years | 2 years | 2 years | 2 years |

---

[i]     Claims made by AuPairCare *au pairs* are included here only as a reference; those claims are stayed pending final resolution of proceedings on AuPairCare's appeal of this Court's order denying arbitration for the claims of AuPairCare-employed au pairs.

[ii]    *See R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *12 (N.D. Cal. Nov. 11, 2016) (Koh, D.J.) ("Where the "essence of th[e] [negligent misrepresentation] cause of action is negligence, not fraud," a two-year statute of limitations applies….However, where the essence of the negligent misrepresentation cause of action is "deceit," a three-year statute of limitations applies.").

[iii]   *See Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1010 (N.D. Cal. 2015) ("[T]he statute of limitations for breach of fiduciary duty is three years where the gravamen of the claim is fraud; otherwise it is four years under the catchall provision of California's Civil Procedure Code Section 343(a).").

[iv]    § 95.11(4)(c), Fla. Stat.

[v]     § 95.11(3)(f), Fla. Stat.

[vi]    *See Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443 (D. Md. 2010) (Plaintiffs' causes of action alleging, among other things, breach of fiduciary duty relating to injuries they sustained while having to defend against a civil lawsuit accrued under Maryland law, and three-year statute of limitations for civil actions began to run, on date such civil lawsuit was filed).

[vii]   *See Crocker v. Townsend Oil Co., Inc.*, 979 N.E.2d 1077, 1082, 464 Mass. 1, 7 (Mass. 2012) ("Although claims for time and a half are subject to 2 years statute of limitations, plaintiffs can still recover overtime wages at the regular rate under the 3 year statute of limitations.").

[viii]  *See Cusimano v. Schnurr*, 27 N.Y.S.3d 135, 140 (1st Dep't 2016) ("The statute of limitations for claims based on fraud is the greater of six years from the date the cause of action accrued or two years from the time plaintiff discovers the fraud, or could with reasonable diligence have discovered it (CPLR 213(8)).").

[ix]    *See New York State Workers' Compensation Board v. Compensation Risk Managers, LLC*, 67 N.Y.S.3d 792, 802 (N.Y. Sup. Ct. 2017) (the statute of limitations will be 6 years if grounded upon "essential allegations of actual or constructive fraud".).

[x]     For "[b]reach of fiduciary duty claims between a purely economic breach of fiduciary duty" the statute of limitations is six years; for breach of fiduciary duty claims premised "not [on] a person's economic well-being, but [on] his physical or emotional well-being" the statute of limitations is two years.  *See Buyofski v. St. Stephens Roman Catholic Church*, 2006 WL 2069149, at *4 (N.J. Super. A.D. 2006).

[xi]    *See In re Cabbagestalk*, 272 B.R. 865, 866 (Bkrtcy. W.D. Pa. 2002) ("six year statute of limitations of 42 Pa. Cons. Stat. Ann. § 5527 applies to causes of action under the [Unfair Trade Practices and Consumer Protection Law]").

[xii]   Under Texas law, workers covered by the FLSA cannot make state minimum wage and overtime claims.  If they could, the statute of limitations would be identical to the FLSA – 2 years, and 3 years if willful.

[xiii]  Although Virginia law follows the FLSA in all substantive respects, any employee covered by the FLSA is exempt from making claims under the Virginia minimum wage law.  *See VA Minimum Wage Act 40.1-28.9(B)(12).*  In addition, Virginia labor laws follow FLSA for overtime claims; there is no standalone Virginia claim for overtime.

## APPENDIX B: LEGAL STANDARDS FOR TOLLING & DISCOVERY RULE UNDER RELEVANT FEDERAL AND STATE LAW

### PLAINTIFFS' FEDERAL CLAIMS – Tolling & Discovery Rule Standards

| Claim | Tolling | Discovery Rule |
|---|---|---|
| **Antitrust** | *In re Urethane Antitrust Litigation*, 913 F. Supp. 2d 1145, 1158 (D. Kan. 2012).<br><br>"To avail themselves of the doctrine of fraudulent concealment, class plaintiffs must show (1) the use of fraudulent means by the conspirators; (2) successful concealment from plaintiffs; and (3) that plaintiffs did not know or by the exercise of due diligence could not have known that they might have had a cause of action." | *In re: EpiPen Antitrust Litigation*, -- F. Supp. 3d --, 2018 WL 3973153, at *46 (D. Kan. Aug. 20, 2018).<br><br>Allegations that plaintiffs "could not have discovered the alleged unlawful activity, including the conspiracy or combination alleged herein, at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants" were sufficient to invoke the discovery rule. |
| **RICO** | *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1281-82 (10th Cir. 2014) (citations omitted).<br><br>"Equitable tolling for fraudulent concealment requires "(1) the use of fraudulent means by the party who raises the ban of the statute; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of due diligence could not have known that he might have a cause of action. . . The plaintiff must show that the defendant prevented him from "knowing [an] element of his RICO claim." | *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 12-79-80 (10th Cir. 2014) (citations omitted).<br><br>"In applying the injury-discovery rule, we ask not only when a plaintiff actually discovers his injury, but also when a reasonably diligent plaintiff would have discovered the injury. . . . The second prong is an objective inquiry. . . The limitations period generally will not begin to run until the plaintiff either has actual or inquiry notice of the injury." |

3

| FLSA | *Smith v. BNSF Ry. Co.*, 246 F.R.D. 652, 654–55 (D. Kan. 2007) (citation omitted).<br><br>"[T]he following factors [are] to be considered when determining if the doctrine applies to a FLSA claim: (1) whether the plaintiffs lacked actual notice of their rights and obligations; (2) whether they lacked constructive notice; (3) the diligence with which they pursued their rights; (4) whether the defendant would be prejudiced if the statute were tolled; and (5) the reasonableness of the plaintiffs' remaining ignorant of their rights." | *Gessele v. Jack in the Box, Inc.*, 6 F.Supp.3d 1141, 1152 (D. Or. 2014) ("the discovery rule does not apply to claims under the FLSA"). |

**PLAINTIFFS' STATE CLAIMS – Tolling & Discovery Rule Standards**

| Jurisdiction | Tolling | Discovery Rule |
|---|---|---|
| **California** | *Britton v. Girardi*, 185 Cal.Rptr.3d 509, 519 (Cal. App. 2 Dist. 2015) (citations omitted).<br><br>"[T]he defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong. . . To take advantage of this doctrine the plaintiff must show . . . the substantive elements of fraud . . . and . . . an excuse for late discovery of the facts." | *Britton v. Girardi*, 185 Cal. Rptr. 3d 509, 518 (Cal. App. 2 Dist. 2015).<br><br>"The date the complaining party learns, or at least is put on notice, that a representation was false is the date the statute starts running." |

| | | |
|---|---|---|
| **Colorado** | *First Interstate Bank v. Piper Aircraft Corp.,* 744 P.2d 1197, 1200 (Colo. 1995).<br><br>"We have defined the elements of fraudulent concealment that a plaintiff must prove to toll a statute of limitations as follows: (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages." | *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004).<br><br>"To determine when an action accrues, the General Assembly has adopted a form of the "discovery rule," which states that an action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." |
| **Florida** | *Butler University v. Bahssin*, 892 So.2d 1087, 1092 (Fla. App. 2 Dist. 2004).<br><br>"[W]hen a defendant fraudulently conceals the existence of a cause of action, the statute of limitations is tolled during the time of the fraudulent concealment. . . [T]he fraudulent concealment doctrine operates to prevent defendants from benefitting from a statute of limitations when their own wrongdoing delays filing of a cause of action. . . ." | *Hearndon v. Graham,* 767 So.2d 1179, 1184 (Fla. 2000).<br><br>"The 'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." |
| **Illinois** | *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000) (citations omitted). | *Johnson v. Johnson*, 701 F. Supp. 1363, 1370 (N.D. Ill. 1988) (citations and alterations omitted). |

| | | |
|---|---|---|
| | "Under Illinois law, the fraudulent concealment will toll the statute of limitations if the plaintiff pleads and proves that fraud prevented the discovery of the cause of action. . . As a general matter, one alleging fraudulent concealment must show affirmative acts by the fiduciary designed to prevent the discovery of the action." | "By holding that Illinois would apply the discovery rule to this context, Plaintiff's cause of action accrues when the plaintiff knew or reasonably should have known of any injury and also knew or reasonably should have known that the injury was caused by the wrongful acts of another. . . At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." |
| **Maryland** | *Doe v. Archdiocese of Washington*, 689 A.2d 634, 643 (Md. App. 1997).<br><br>To toll the statute of limitations based on concealment, plaintiffs must show "how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." | *Poole v. Coakley & Williams Const., Inc.*, 31 A.3d 212, 236 (Md. 2011).<br><br>The "discovery rule . . . tolls the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." |
| **Massachusetts** | *Hays v. Ellrich*, 31 N.E.3d 1064, 1073 (Mass. 2015) (citation and alterations omitted).<br><br>Under the fraudulent concealment doctrine . . . if a person liable to a personal action fraudulently conceals the cause of such action from the | *Phinney v. Morgan*, 654 N.E.2d 77, 79 (Mass. App. Ct. 1995).<br><br>"[I]n the absence of a governing statute, [the] discovery rule . . . tolls the statute of limitations until a plaintiff discovers, or reasonably should |

| | | |
|---|---|---|
| | knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." | have discovered, that she has been harmed or may have been harmed by the defendant's conduct, has developed." |
| **Michigan** | *Hennigan v. General Elec. Co.*, No. 09-11912, 2010 WL 3905770, at *6 (E.D. Mich. Sept. 29, 2010) (citation and alterations omitted).<br><br>"To properly toll a statute of limitations under fraudulent concealment, the plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and must prove that the defendant committed affirmative acts of misrepresentation that were designed to prevent subsequent discovery." | *Brennan v. Edward D. Jones & Co.*, 626 N.W.2d 917, 920 (Mich. App. 2001) (citation and quotation marks omitted).<br><br>"[T]he period of limitations does not begin to run until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, that he had a possible cause of action." |
| **New York** | *State of N.Y. Workers' Compensation Bd. v Wang*, 147 A.D.3d 104, 112–13 (3d Dep't 2017) (citations and quotation marks omitted).<br><br>"Equitable estoppel may be invoked to defeat a statute of limitations defense so long as the plaintiff establishes that it was induced by fraud, misrepresentations or deception to refrain from filing a timely action . . . and that it was diligent in commencing the action 'within a reasonable time after the facts giving rise to the estoppel have ceased to be operational." | *Belair Care Center, Inc. v. Cool Insuring Agency, Inc.*, 2017 WL 1842284, at *10 (N.Y.Sup. 2017)<br><br>Under discovery rule, a claim accrues at "the time the fraud was discovered or could have been discovered through reasonable diligence." |

| | | |
|---|---|---|
| **Pennsylvania** | *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 278, 2005 PA Super 246, ¶ 20 (Pa. Super. 2005) (citations and quotation marks omitted).<br><br>"The doctrine of fraudulent concealment is an exception to the requirement that a complaining party must file suit within the statutory period. Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. . . The defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient ... mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." | *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 276, 2005 PA Super 246, ¶ 13 (Pa. Super. 2005) (citations and quotation marks omitted).<br><br>"The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The statute begins to run in such instances when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.  The party seeking to invoke the discovery rule "bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence." |
| **Texas** | *Etan Industries, Inc. v. Lehmann*, 359 S.W.3d 620 (Tex. 2011).<br><br>"A defendant's fraudulent concealment of wrongdoing can toll the running of a statute of limitations; however, the estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances | *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929–30 (Tex. 2011) (citations omitted).<br><br>"[T]he discovery rule . . . [is] a very limited exception to statutes of limitations, which defers the accrual of the cause of action until the injury was or could have reasonably been discovered. . . The discovery rule applies only when the nature |

| | | |
|---|---|---|
| | which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." | of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. . . An injury is inherently undiscoverable if by its nature, it is unlikely to be discovered within the prescribed limitations period despite due diligence." |
| **Utah** | *Russell Packard Development, Inc. v. Carson*, 108 P.3d 741, 748, 2005 UT 14, ¶ 29 (Utah 2005).<br><br>"[A] plaintiff may successfully toll a statute of limitations by showing that, given the defendant's concealment of the plaintiff's cause of action, the plaintiff neither discovered nor reasonably should have discovered the facts underlying the cause of action before the limitations period expired. Once a plaintiff makes this showing, the concealment version of the discovery rule will operate to toll the relevant statute of limitations, and the limitations period will not commence until the date the plaintiff possessed actual or constructive knowledge of the facts forming the basis of his or her cause of action." | *Mayall v. The Randall Firm, PLLC*, No. 1:13-cv-00166-TC, 2016 WL 5415659, at *2 (D. Utah Sept. 28, 2016) (citations and quotation marks omitted).<br><br>"[T]he discovery rule may toll an otherwise fixed statute of limitations (1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust." |
| **Virginia** | *Boykins Narrow Fabrics Corp. v. Weldon Roofing and Sheet Metal, Inc.*, 221 Va. 81, 86 (Va. 1980)<br><br>"[A] party seeking to invoke the doctrine of estoppel must prove by clear, precise, and | *Hansen v. Stanley Martin Companies, Inc.*, 266 Va. 345, 354 (Va. 2003)<br><br>The statute of limitations "begins to run from the date the fraud or negligent misrepresentation is discovered or by the exercise of due diligence |

| | unequivocal evidence the following elements: (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the fact; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury. | reasonably should have been discovered." |
| --- | --- | --- |

### APPENDIX C: APPLICABILITY OF TOLLING AND DISCOVERY RULE
### TO PLAINTIFFS' FEDERAL AND STATE CLAIMS[1]

**FEDERAL CLAIMS**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Antitrust | **Yes.**[2] *In re Urethane Antitrust Litigation*, 913 F. Supp. 2d 1145, 1158 (D. Kan. 2012). | **Yes.** *In re: EpiPen Antitrust Litigation*, -- F. Supp. 3d --, 2018 WL 3973153, at *47 (D. Kan. Aug. 20, 2018). |
| RICO | **Yes.** *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1281 (10th Cir. 2014). | **Yes.** *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1281 (10th Cir. 2014). |
| FLSA | **Yes.** *Smith v. BNSF Ry. Co.*, 246 F.R.D. 652, 654–55 (D. Kan. 2007). | **No.** *Gessele v. Jack in the Box, Inc.*, 6 F.Supp.3d 1141, 1152 (D. Or. 2014) ("the discovery rule does not apply to claims under the FLSA"). |

**CALIFORNIA**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *Britton v. Girardi*, 185 Cal. Rptr. 3d 509, 519 (Cal. App. 2 Dist. 2015). | **Yes.** *Britton v. Girardi*, 185 Cal. Rptr. 3d 509, 518 (Cal. App. 2 Dist. 2015). |
| Negligent Misrepresentation | **Yes.** *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007). | **Yes.** *William L. Lyon & Associates, Inc. v. Superior Court*, 139 Cal. Rptr. 3d 670, 684 (Cal. App. 3 Dist. 2012). |

---

[1]	Claims under New Jersey law for the AuPairCare Training Class are not included because those claims are stayed pending final resolution of proceedings on AuPairCare's appeal of this Court's order denying arbitration for the claims of AuPairCare-employed au pairs.

[2]	"Yes" means that the citation tends to support the availability of tolling or the discovery rule for a given claim in a given jurisdiction; "No" means that there is authority rejecting tolling or the discovery rule for a given claim in a given jurisdiction; "Unclear" means that Plaintiffs' research revealed no law directly on point; and "Not applicable" means a claim is unavailable as a matter of law.

| Breach of Fiduciary Duty | **Yes.** *Britton v. Girardi*, 185 Cal. Rptr. 3d 509, 519 (Cal. App. 2 Dist. 2015). | **Yes.** *Britton v. Girardi*, 185 Cal. Rptr. 3d 509, 518 (Cal. App. 2 Dist. 2015). |
|---|---|---|
| Wage Claims | **Unclear.** | **Unclear.** |
| Consumer Protection Claim | **Yes.** *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 907 (N.D. Cal. 2017); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1148 (N.D. Cal. 2005) (CLRA). | **Yes.** *Ivanoff v. Bank of Am., N.A.*, 9 Cal. App. 5th 719, 733, 215 Cal. Rptr. 3d 442, 454 (Ct. App. 2017) (UCL); *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1211 (N.D. Cal. 2015) (appropriate in fraud-based UCL cases); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1320 (C.D. Cal. 2013) (CLRA). |

## COLORADO

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *Sands v. New Age Family Partnership, Ltd.*, 897 P.2d 917, 922 (Colo. App. 1995). | **Yes.** *Hickerson v. Vessels*, 316 P.3d 620, 625 (Colo. 2014). |
| Negligent Misrepresentation | **Unclear.** | **Yes.** *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1151 (D. Colo. 2005). |
| Breach of Fiduciary Duty | **Yes.** *Grynberg v. Total S.A.,* 538 F.3d 1336, 1351 (10th Cir. 2008). | **Yes.** *Grant v. Pharmacia & Upjohn Co.*, 314 F.3d 488, 493 (10th Cir. 2002);. |
| Wage Claims | **Unclear.** | **Unclear.** |
| Consumer Protection Claim | **Yes.** *Damian v. Mountain Parks Elec., Inc.,* 2012 COA 217, ¶ 18, 310 P.3d 242, 246. | **Yes.** *Ramirez v. eWork, Inc.*, No. CIVA06CV-00686WDMBNB, 2007 WL 2746634, at *2 (D. Colo. Sept. 18, 2007). |

**FLORIDA**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *West Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So.3d 635, 639 (Fla.App. 2 Dist. 2015). | **Yes.** *Brooks Tropicals, Inc. v. Acosta*, 959 So.2d 288, 296 (Fla. App. 3 Dist. 2007). |
| Negligent Misrepresentation | **Yes.** *Fla. Dept. of Health and Rehabilitative Services v. S.A.P*, 835 So.2d 1091, 1099 (Fla. 2002). | **No.** *Ryan v. Lobo De Gonzalez*, 841 So.2d 510, 518 (Fla.App. 4 Dist. 2003). |
| Breach of Fiduciary Duty | **Yes.** *First Union Nat. Bank v. Turney*, 824 So.2d 172, 190 (Fla.App. 1 Dist. 2001). | **No.** *Patten v. Winderman*, 965 So.2d 1222, 1225 (Fla. App. 4 Dist. 2007). |
| Wage Claims | **Unclear.** | **No.** *Ryan v. Lobo De Gonzalez*, 841 So.2d 510, 518 (Fla.App. 4 Dist. 2003). |
| Consumer Protection Claim | **Yes.** *In re Takata Airbag Prod. Liab. Litig.*, 255 F. Supp. 3d 1241, 1259 (S.D. Fla. 2017). | **No.** *Ryan v. Lobo De Gonzalez*, 841 So.2d 510, 518 (Fla. App. 4 Dist. 2003). |

**ILLINOIS**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *Clay v. Kuh*l, 189 Ill. 2d 603, 613, 727 N.E.2d 217, 223 (2000). | **Yes.** *Johnson v. Johnson*, 701 F. Supp. 1363, 1369 (N.D. Ill. 1988). |
| Negligent Misrepresentation | **Yes.** *Landry v. Keene Corp.*, 811 F. Supp. 367, 372 (N.D. Ill. 1993); *see also Paulsen v. Grace*, No. 3-10-0214, 2011 WL 10468072 (Ill. App. Ct. Apr. 18, 2011). | **Yes.** *Moorman Mfg. Co. v. Nat'l Tank Co.*, 92 Ill. App. 3d 136, 150, 414 N.E.2d 1302, 1314 (1980), *aff'd in part, rev'd in part*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). |

13

| Breach of Fiduciary Duty | **Yes.** *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 258, 694 N.E.2d 604, 609 (1998). | **Yes.** *Fuller Family Holdings, LLC v. N. Tr. Co.*, 371 Ill. App. 3d 605, 618 (2007). |
|---|---|---|
| Wage Claims | **Yes.** *Ottaviano v. Home Depot, Inc.*, USA, 701 F. Supp. 2d 1005, 1011–12 (N.D. Ill. 2010). | **Unclear.** |
| Consumer Protection Claim | **Yes.** *Gredell v. Wyeth Labs., Inc.*, 346 Ill. App. 3d 51, 61, 803 N.E.2d 541, 548-49 (2004). | **Yes.** *Rasgaitis v. Waterstone Fin. Grp., Inc.*, 2013 IL App (2d) 111112, ¶ 30, 985 N.E.2d 621, 63 (citing *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1021 (2007)). |

**MARYLAND**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** Courts and Judicial Proceedings Article ("CJ") § 5-203; *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 187–88 (1997). | **Yes.** *Larocca v. Creig Northrop Team, P.C.*, No. 644, SEPT.TERM, 2016, 2018 WL 394883, at *6 (Md. Ct. Spec. App. Jan. 12, 2018). |
| Negligent Misrepresentation | **No.** *Johns Hopkins Hosp. v. Lehninger*, 48 Md. App. 549, 562, 429 A.2d 538, 545 (1981). | **Yes.** *Estate of Adams v. Cont'l Ins. Co.,* 233 Md. App. 1, 25, 161 A.3d 70, 84, *cert. denied*, 456 Md. 62, 170 A.3d 294 (2017). |
| Breach of Fiduciary Duty | **Yes.** *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 173, 857 A.2d 1095, 1107 (2004). | **Yes.** *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 174, 857 A.2d 1095, 1108 (2004). |
| Wage Claims | **No.** *Rose v. Harloe Mgmt. Corp.*, Civ. Action No. GLR-16-761, 2017 WL 193295, at *4 (D. Md. Jan. 17, 2017) ("A new cause of action accrues each time the employer issues a paycheck in violation of the FLSA or [the | **No.** *Rose v. Harloe Mgmt. Corp.*, Civ. Action No. GLR-16-761, 2017 WL 193295, at *4 (D. Md. Jan. 17, 2017) ("A new cause of action accrues each time the employer issues a paycheck in violation of the FLSA or [the Maryland Wage and Hour |

14

| | | |
|---|---|---|
| | Maryland Wage and Hour Law]."). | Law]."). |
| Consumer Protection Claim | **Yes.** *Spear v. Stonegate Title Co.*, No. 1656 SEPT.TERM 2015, 2016 WL 6583844, at *5 (Md. Ct. Spec. App. Nov. 3, 2016), cert. denied, 453 Md. 29, 160 A.3d 557 (2017). | **Yes.** *Spear v. Stonegate Title Co.*, No. 1656 SEPT.TERM 2015, 2016 WL 6583844, at *11 (Md. Ct. Spec. App. Nov. 3, 2016), cert. denied, 453 Md. 29, 160 A.3d 557 (2017). |

## MASSACHUSETTS

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *Hays v. Ellrich*, 471 Mass. 592, 603, 31 N.E.3d 1064, 1074 (2015). | **Yes.** *Kelly v. Waters Corp.*, No. SUCV201700064BLS1, 2017 WL 5985431, at *4 (Mass. Super. Sept. 27, 2017), *judgment entered*, (Mass. Super. 2017). |
| Negligent Misrepresentation | **Yes.** *Genovesi v. Nelson*, 85 Mass. App. Ct. 43, 46, 5 N.E.3d 571, 575 (2014). | **Yes.** *Genovesi v. Nelson*, 85 Mass. App. Ct. 43, 46, 5 N.E.3d 571, 575 (2014). |
| Breach of Fiduciary Duty | **Yes.** *Passatempo v. McMenimen*, 461 Mass. 279, 295, 960 N.E.2d 275, 289 (2012). | **Yes.** *Passatempo v. McMenimen*, 461 Mass. 279, 295, 960 N.E.2d 275, 289 (2012). |
| Wage Claims | **Yes.** *Salvas v. Wal-Mart Stores, Inc.*, 452 Mass. 337, 375-77 (2008). | **Yes.** *Salvas v. Wal-Mart Stores, Inc.*, 452 Mass. 337, 375-77 (2008). |
| Consumer Protection Claim | **Yes.** *Bridgwood v. A.J. Wood Constr., Inc.,* 480 Mass. 349, 359, 105 N.E.3d 224, 233 (2018). | **Yes.** *Bridgwood v. A.J. Wood Constr., Inc.,* 480 Mass. 349, 359, 105 N.E.3d 224, 233 (2018). |

**MICHIGAN**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *Nicholson-Gracia v. Gen. Ret. Sys. of Detroit*, No. 334556, 2018 WL 987212, at *3 (Mich. Ct. App. Feb. 20, 2018), *appeal denied*, 913 N.W.2d 655 (Mich. 2018). | **No.** *Makridakis v. Makridakis*, No. 269685, 2007 WL 2404622, at *4 (Mich. Ct. App. Aug. 23, 2007). |
| Negligent Misrepresentation | **Yes.** *Beck v. Park W. Galleries Inc.*, No. 319463, 2016 WL 3653955, at *3 (Mich. Ct. App. July 7, 2016). | **Yes.** *Williams v. Polgar,* 391 Mich. 6, 215 N.W.2d 149 (1974). |
| Breach of Fiduciary Duty | **Yes.** *Nicholson-Gracia v. Gen. Ret. Sys. of Detroit*, No. 334556, 2018 WL 987212, at *3 (Mich. Ct. App. Feb. 20, 2018), *appeal denied*, 913 N.W.2d 655 (Mich. 2018). | **No.** *In Matter of Jervis C. Webb Tr.*, No. 263759, 2006 WL 173172, at *3 (Mich. Ct. App. Jan. 24, 2006). |
| Wage Claims | **Unclear.** | **Unclear.** |
| Consumer Protection Claim | **Yes.** *Hennigan v. Gen. Elec. Co.*, No. 09-11912, 2010 WL 3905770, at *13 (E.D. Mich. Sept. 29, 2010). | **Yes.** *Manturuk v. Bergesen*, No. 245641, 2005 WL 387637, at *7 (Mich. Ct. App. Feb. 17, 2005). |

**NEW YORK**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *State, Workers' Comp. Bd. v. Wang*, 147 A.D.3d 104, 113 (3d Dep't 2017). | **Yes.** *Gonik v. Israel Discount Bank of New York*, 914 N.Y.S.2d 63, 64 (1st Dep't 2011). |
| Negligent Misrepresentation | **Yes.** *State, Workers' Comp. Bd. v. Wang*, 147 A.D.3d 104, 113 (3d Dep't 2017). | **Yes.** *Belair Care Ctr., Inc. v. Cool Insuring Agency, Inc.*, 58 N.Y.S.3d 873 (N.Y. Sup. 2017). |

16

| Breach of Fiduciary Duty | **Yes.** *State, Workers' Comp. Bd. v. Wang*, 147 A.D.3d 104, 112 (3d Dep't 2017); *see also Franklin v. Hafftka*, 140 A.D.3d 922, 924 (2d Dep't 2016). | **Yes.** *Gerschel v. Christensen*, 40 N.Y.S.3d 41, 43 (1st Dep't 2016). |
| Wage Claims | **Yes.** *Shu Qin Xu v. Wai Mei Ho*, 111 F.Supp.3d 274, 278 (E.D.N.Y. 2015). | **Unclear.** |
| Consumer Protection Claim | **Yes.** *Pirrelli v. OCWEN Loan Servicing, LLC*, 129 A.D.3d 689, 693 (2d Dep't 2015). | **No.** *Morson v. Kreindler & Kreindler, LLP*, 814 F. Supp. 2d 220, 228 (E.D.N.Y. 2011). |

## PENNSYLVANIA

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *McClean v. Djerassi*, 2013 PA Super 330, 84 A.3d 1067, 1070 (2013). | **Yes.** *Mahonski v. Engel*, 2016 PA Super 172, 145 A.3d 175, 183 (2016). |
| Negligent Misrepresentation | **Yes.** *Commc'ns Network Int'l, Ltd. v. Mullineaux*, 2018 PA Super 126, 187 A.3d 951, 963 (2018), *reargument denied* (July 17, 2018). | **Yes.** *McClean v. Djerassi*, 2013 PA Super 330, 84 A.3d 1067, 1070 (2013). |
| Breach of Fiduciary Duty | **Yes.** *See Genesis Underwriting Mgmt. Co. v. Ins. Mgmt. & Servs. Inc.*, 22 Pa. D. & C.4th 119, 122 (Com. Pl. 1994) | **Yes.** *Estate of Robinson*, No. 176 EDA 2017, 2018 WL 1165865, at *6 (Pa. Super. Ct. Mar. 6, 2018). |
| Wage Claims | **Yes.** *Friedrich v. U.S. Computer Servs., Inc.*, 833 F. Supp. 470, 478 (E.D. Pa. 1993). | **Unclear.** |
| Consumer Protection Claim | **Yes.** *Tress v. AXA Advisors, LLC*, No. CV 11-7713, 2013 WL 12248219, at *3 (E.D. Pa. June 6, 2013). | **Yes.** *Tress v. AXA Advisors, LLC*, No. CV 11-7713, 2013 WL 12248219, at *3 (E.D. Pa. June 6, 2013). |

**TEXAS**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229–30 (Tex. 2015). | **Yes.** *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). |
| Negligent Misrepresentation | **Yes.** *Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App. 1997). | **Yes.** *Swanson v. Stouffer & Assocs., LLP*, **No.** 03-12-00071-CV, 2014 WL 2522145, at *2 (Tex. App. May 30, 2014). |
| Breach of Fiduciary Duty | **Yes.** *Trousdale v. Henry*, 261 S.W.3d 221, 235 (Tex. App. 2008). | **Yes.** *Friddle v. Fisher*, 378 S.W.3d 475, 483–84 (Tex. App. 2012). |
| Wage Claims | **Not applicable.** | **Not applicable.** |
| Consumer Protection Claim | **Yes.** *Sw. Olshan Found. Repair Co., LLC v. Gonzales*, 345 S.W.3d 431, 438 (Tex. App. 2011), *aff'd,* 400 S.W.3d 52 (Tex. 2013). | **Yes.** *Sw. Olshan Found. Repair Co., LLC v. Gonzales*, 345 S.W.3d 431, 437 (Tex. App. 2011), *aff'd,* 400 S.W.3d 52 (Tex. 2013). |

**UTAH**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *Berenda v. Langford*, 914 P.2d 45, 51 (Utah 1996). | **Yes.** *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 16, 156 P.3d 806, 811. |
| Negligent Misrepresentation | **Yes.** *Berenda v. Langford*, 914 P.2d 45, 51 (Utah 1996). | **Yes.** *Mower v. Simpson*, 2017 UT App 23, ¶ 30, 392 P.3d 861, 869, *cert. denied,* 398 P.3d 51 (Utah 2017). |
| Breach of Fiduciary Duty | **Yes.** *Charlesworth v. Reyns*, 2005 UT App 214, ¶ 26, 113 P.3d 1031, 1037. | **Yes.** *Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 13, 78 P.3d 616, 620, *aff'd sub nom. Russell Packard Dev., Inc. v. Carson*, 2005 |

| | | UT 14, ¶ 13, 108 P.3d 741. |
|---|---|---|
| Wage Claims | **Not applicable.** | **Not applicable.** |
| Consumer Protection Claim | **Yes.** *Mayall v. The Randall Firm, PLLC*, No. 1:13-CV-00166-TC, 2016 WL 5415659, at *2 (D. Utah Sept. 28, 2016). | **Yes.** *Mayall v. The Randall Firm, PLLC*, No. 1:13-CV-00166-TC, 2016 WL 5415659, at *2 (D. Utah Sept. 28, 2016). |

**VIRGINIA**

| Claim | Tolling | Discovery Rule |
|---|---|---|
| Fraud | **Yes.** *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 86 (1980). | **Yes.** *Hansen v. Stanley Martin Companies, Inc.*, 266 Va. 345, 358 (Va. 2003). |
| Negligent Misrepresentation | **Yes.** *Newman v. Walker*, 270 Va. 291, 298 (2005). | **Yes.** *Hansen v. Stanley Martin Companies, Inc.*, 266 Va. 345, 358 (Va. 2003). |
| Breach of Fiduciary Duty | **Yes.** *Colgate v. Disthene Grp., Inc.*, 86 Va. Cir. 218 (2013). | **No.** *Colgate v. Disthene Grp., Inc.,* 86 Va. Cir. 218 (2013). |
| Wage Claims | **Not applicable.** | **Not applicable.** |
| Consumer Protection Claim | **Yes.** *Patterson v. Bob Wade Lincoln-Mercury, Inc.*, 48 Va. Cir. 471 (1999). | **Yes.** *Schmidt v. Household Finance Corp., II*, 276 Va. 108, 117 (Va. 2008). |

**<u>Certificate of Service</u>**

I hereby certify that on November 13, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<u>  /s/ Sean P. Rodriguez  </u>
Sean P. Rodriguez