# Exhibit 3



## TIAPE Host Family Service Agreement

As a Host Family participating in the J-1 Exchange Visitor Program, you must agree to and abide by the US Department of State program regulations and terms of this Host Family Service Agreement. Please carefully review the terms of this Agreement, then sign and date this Agreement via our secure electronic signature service.

### Host Family Service Agreement

We the undersigned we", "host family" or "host" to include all members of said person's household and family hereinafter, in the aggregate, referred to as "we", "host family" or "host"):

First and Last Name(s) of Parent(s)) have applied to be a host family with 20/20 Care Exchange dba TIAPE, a California Limited Liability Company.  In exchange for program fees paid by host family, TIAPE agrees to recruit, screen and train au pair candidates for our consideration and to provide reasonable support during our program term. Our electronic signature confirms that we have carefully reviewed the Agreement and understand and agree to the following terms.

### Department of State Program Requirements

1. We agree that TIAPE has the exclusive right to determine our eligibility to participate in the program.

2. We agree that we have adequate financial resources to satisfy all hosting obligations as required by the US Department of State.

3. We confirm that we are US citizens or lawful permanent residents and that English is the primary language spoken in our home.

4. We agree to reasonably attend to the health, safety and welfare of our au pair and to promptly notify TIAPE of any changes to our au pair's well being. We also agree to immediately report to TIAPE any incidents involving or alleging a crime or moral turpitude or violence, or any unusual situations or incidents involving either the au pair or our family.

5. As a participant in the Au Pair Program, we understand the importance of providing our au pair with a positive cultural exchange experience and will include our au pair in family activities.  We agree that English is the primary language spoken in our home.

6. We understand our au pair can perform childcare services and light housekeeping related to childcare for up to 45 hours per week, 5.5 days per week with a maximum of 10 hours per day.  We understand our obligation to provide our au pair with the following benefits as mandated by the Department of State:

    a) Room and board including a private bedroom that is approved by a TIAPE representative.

    b) A weekly minimum stipend based on the TIAPE program type selected. The minimum stipend currently published on the Department of State website as of November 2014 is based on the minimum federal wage and a 40% allowance for room and board. TIAPE minimum stipend amounts are as follows: TIAPE Professional Au Pair: $250.00 per week. TIAPE Traditional Au Pair: $195.75 per week. The stipend is to be paid to the au pair every week.

    c) A minimum of one full weekend off per month (Friday evening to Monday morning), at least 1.5 days off each week and two weeks (10 days) paid vacation over the 12-month program. Vacation

        time shall accrue on a basis of one day per month beginning upon the au pair's third month in the United States. 12 and 9-Month extending au pairs will receive two weeks (10 days) paid vacation, and 6-month extensions shall receive one week (5 days) of paid vacation. Vacation time for extension au pairs shall accrue on the basis of one day per month during the extension program.

    d) A $500 educational allowance to allow our au pair to complete up to six credit hours of study at an accredited post-secondary institution. We agree to facilitate our au pair's attendance by providing transportation and scheduling opportunities. The educational component for a 6-month extension is not less than three credit hours of academic credit or its equivalent and the host family contributes up to $250. The educational component for a 12-month and 9-month extension is not less than six credit hours and the host family contributes up to $500.

7. In addition to providing our au pair the above benefits, we understand and agree to abide by all TIAPE and Department of State guidelines as published by the Department of State in 22 CFR Part 514 and which may be amended periodically. We acknowledge receipt of a copy of the regulations and the brochure "The Au Pair Exchange Program" from TIAPE and we agree to the requirements therein which are not limited to, but include the following:

    a) We agree that a parent or other responsible adult will remain in the home for the first three days following the au pair's arrival.

    b) We understand that in the event we have a child under the age of two years old, our au pair must have 200 hours of documented childcare experience working with children in this age group. We agree to notify TIAPE in advance should a baby join our household during our program in order to ensure our au pair has the required experience.

    c) We understand that if we have a baby under three months of age, a parent or other responsible adult must be present in the home and that the au pair cannot be the sole caregiver of the baby at any time until the baby is three months of age.

    **d) We understand that if we have a child with special needs, our chosen au pair must have identified his or her prior experience, skills or training in the care of children with special needs and we will need to review and acknowledge in writing the au pair's prior experience, skills and training at the time of matching. We understand that the Department of State does not define "special needs" and makes clear that host families, and not Au Pair Sponsors must identify their child's special needs and must make the selection of an au pair based on their evaluation of the au pair's skills, education, training or prior experience. An au pair is not to replace the child's healthcare, special care or education providers (therapists, teachers, etc.).**

    e) We agree to speak with our TIAPE Area Director within 48 hours of our au pair's arrival.

    f) We agree to meet in person for an arrival orientation with our TIAPE Area Director within two weeks of our au pair's arrival.

    g) We agree to speak with our TIAPE Area Director on a monthly basis for the required contact call.

    h) We agree to facilitate our au pair's attendance at monthly TIAPE sponsored events. We also agree that per the Department of State requirements, we are required to attend at least one family day event sponsored by TIAPE during the course of the placement year. We understand that attending the gathering is a condition of our program participation and that failure to attend will be possible grounds for termination of and our continued or future participation in the program.

    i) We understand that we must live within one-hour's driving time of the home of the TIAPE Area Director. Should we relocate outside of a TIAPE serviced area during our program year, we understand we may not be eligible to continue in the program.

PLAINTIFFS' RESP. APP.0003183      APEX-20/20 293

j) We understand that our au pair's duties are limited to childcare and related tasks and that his/her responsibilities may not include heavy housework, yard work, or other labor related to the household. We agree not to enter into any agreements with our au pair outside of what is allowed by the Department of State and TIAPE.
k) We agree not to facilitate any unauthorized employment or any unlawful presence in the US by the au pair. Additionally, we agree that if the au pair does not depart the US by the end of the au pair's 30-day grace period upon program completion, the au pair will forfeit his/her return transportation provided by TIAPE.

**Selection of Au Pair Candidates**

8. We understand that it is our responsibility to choose an au pair and that TIAPE cannot guarantee our satisfaction with our selected au pair. We understand that TIAPE shall not be liable for the performance of the au pair and that the au pair is not an employee, independent contractor or agent of TIAPE. We understand that TIAPE is not liable for any act or omission on the part of our au pair. Prior to matching with an au pair, we confirm that we have completed the required interview via telephone or video and that we have had an opportunity to request any additional information before making the decision to match.

9. We agree not to solicit TIAPE candidates for employment opportunities outside of the TIAPE program.

**Additional Program Requirements**

10. We agree to provide automobile insurance to cover our au pair if she/he is permitted to drive our family car. We agree that our au pair will not be held liable for more than a $500 insurance deductible per accident. We agree not to hold TIAPE liable for any damages or loss due to the au pair's use or misuse of a vehicle.

11. We understand that we are responsible for determining whether our au pair will be able to legally drive in our state of residence as driving laws vary from state to state.

12. We understand and agree that TIAPE shall not be responsible for any personal bills incurred by the au pair or us, such as telephone bills, automobile expenses, travel expenses or health expenses not covered by insurance. We agree not to seek payment from TIAPE for any such expenses.

13. We understand that if we travel with our au pair outside of our local community and a problem arises, we are responsible for making arrangements at our expense to promptly return the au pair to our community. We understand that travel with our au pair in excess of 30-days within the US or outside of the US must have prior written approval from TIAPE.

14. We agree to complete a yearly TIAPE survey designed to measure our satisfaction with the Program and its strengths and weaknesses as required by the Department of State.

15. We agree to respond in a timely and complete manner to TIAPE's request for contact including the 48-hour welcome call, two-week arrival orientation, monthly contacts or any other request for communication.

**Program Extensions**

16. We understand that the Department of State, at its sole discretion, provides au pairs with the opportunity to extend their program for an additional 6, 9 or 12 months, provided the au pair has completed the educational component of the program at the time of requesting the extension. The Extension Program fees will be calculated as a percentage of the current published Program Fee for the 12-month program, which will be the fee used as the basis for the calculation. For example, in the case of a 6-month extension, the current 12-month fees will be divided by 12 to determine the monthly rate, and then multiplied by six. The Extension Fees shall be due at the time of processing the extension.

PLAINTIFFS' RESP. APP.0003184

APEX-20/20 294

### Placement Changes and Replacement Au Pairs

17. If we have concerns with our au pair's behavior or performance, we agree to work with a TIAPE representative to help resolve such concerns. If after everyone's best efforts a placement change is deemed necessary, we agree to continue housing the au pair for a period of up to 14 days if necessary. We agree that we will not ask the au pair to leave our home without the knowledge or involvement of a TIAPE staff member.

18. We understand and agree that TIAPE may immediately terminate our participation in the program and remove the au pair from our home if TIAPE determines, at its sole discretion, that the au pair is in an unsuitable environment or if we fail to comply with the terms of this Agreement or the Department of State Regulations that govern the Au Pair Program and that no refund will be provided by TIAPE.

19. We understand and agree that in the event of illness, injury or other medical condition that prevents our au pair from continuing his/her duties, she/he will not be eligible to continue in the program.

20. We understand and agree that TIAPE is the au pair's program sponsor, and as such, any decision regarding the au pair's program status will be made at the sole discretion of TIAPE.

21. We agree to provide our outgoing au pair with any stipend owed as well as payment for any accrued vacation owed.

22. Should a placement change occur, we understand that TIAPE will provide one replacement au pair within the first three months of our 12-month program but that a replacement au pair will be provided at the discretion of TIAPE and is subject to replacement au pair availability. If our placement change takes place beyond the third month in the program, we understand that we are not entitled to receive a replacement au pair and that in order to continue with the program we are required to update our host family profile and begin a new program year. We understand we will receive a program credit in the amount of $325 for each month of unused service time, which may be applied towards future program fees.

23. Should we receive a replacement au pair, we agree to the following:

    a. We understand that we will be responsible for paying TIAPE $950/month for Professional au pairs and $650/month for Traditional au pairs, for each additional month of our replacement au pair's service beyond our original 12-month program. Such payment is due in full 30 days prior to the start of the additional service.

    b. We understand and agree that we may be responsible for providing our replacement au pair with up to $500 in tuition reimbursement and up to two weeks (10 days) of paid vacation.

    c. We agree that we shall be responsible for paying for the replacement au pair's transportation to our home if the au pair is already in the US. If our replacement au pair is located outside of the US, we will pay a $450 domestic surcharge if we reside outside the New York/New Jersey area.

PLAINTIFFS' RESP. APP.0003185                                APEX-20/20 295

**Program Fees**

We understand that our participation in the program requires payment of fees as applicable below:

| Fee Type | Amount |
|---|---|
| Application Fee | $350 due upon application |
| Domestic Surcharge* | $450 due upon matching |
| International Air Surcharge** | $900 due upon matching |
| Traditional Program | $7895 ($4350 due upon match, balance due 45 days prior to arrival. Check or bank transfer only.) |
| Professional Program | $11,495 ($4350 due upon match, balance due 45 days prior to arrival. Check or bank transfer only.) |

\* Domestic Air Surcharge for au pairs arriving to airports other than JFK, LGA or EWR.
\*\* International Air Surcharge for au pairs from China, Australia and South Africa.

**Credit and Refund Policy**

24. We understand and agree that the refund policies set forth herein will be the exclusive remedy in the event TIAPE is unable or unwilling to provide a replacement au pair, and that TIAPE is not responsible for any economic hardship, damage or loss alleged to arise from the unavailability of the au pair's services.

25. We understand and agree that the majority of TIAPE's operating costs are incurred in the process of recruiting, screening, training and arranging the au pair's travel and that TIAPE's refund policy is limited. A refund, if owed, will be issued within 30 days of receiving the refund request and refunded to the original source of payment.

26. We understand and agree that any program credits expire twelve (12) months from the end date of the last placement, and that they have no cash value and are non-transferrable.

27. We understand and agree that in the event our au pair does not elect to use a return air ticket provided by TIAPE, no refund, credit, or travel voucher will be provided. If we allow our au pair to end her/his program early, no refund or credit will be provided for unused service.

28. We understand and accept that TIAPE's refund policy is as outlined below.

    a. We understand that if we cancel our au pair's arrival prior to his/her arrival to our home, we will be charged a cancelation fee in the amount of $800 plus the cost of any non-refundable airline tickets. We will be eligible to receive a refund of all other fees paid, excluding the application fee.

    b. After our au pair arrives, we understand TIAPE's refund policy to be as outlined below.

| Fee Type | Professional, Traditional & Extension Program |
|---|---|
| Application Fee | Non-refundable |
| Domestic Surcharge | Non-refundable |
| International Air Surcharge | Non-refundable |
| Placement Fee within the first 6 months of service | $325 per full month of unused service time |
| Placement Fee after 6 months of service | No cash refund; Credit issued in the amount of $325 per full month of unused service time |

### Other Terms and Conditions

29. We agree to submit all required payments to TIAPE on time and understand that failure to pay fees within 14 days of the due date may result in the removal of our au pair.

30. We understand that au pairs are provided with travel and accident insurance provided by a third-party insurance company, and that such coverage does contain limitations and exclusions. We agree that any disputes pertaining to coverage are strictly between the au pair and the insurance company and agree that TIAPE does not assist in any coverage disputes that may arise.

31. We understand and agree that TIAPE does not guarantee continuous childcare coverage at any time, including but not limited to situations involving arrival delays, au pair cancellations, visa denials, illness, and/or inability or unwillingness by an au pair to fulfill his/her duties. We hereby release TIAPE, its subsidiaries, officers, employees and/or agents from any and all claims for financial, incidental or consequential damages, including but not limited to costs of alternative or interim childcare, loss of income, travel costs, emotional or psychological injury, or other loss or damage of any kind which may arise from the unavailability of an au pair's services for any reason whatsoever.

32. We hereby irrevocably, unconditionally, and fully remise, release and forever discharge TIAPE, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by our family, guest, employee or agent, due to: (i) events beyond TIAPE's reasonable control, including without limitation, acts of God, acts of war or governmental restrictions, and, in the absence of gross negligence or willful misconduct by TIAPE (ii) any events directly or indirectly caused by any intentional or negligent acts or omissions by an au pair placed in our household. In this respect, we acknowledge that our au pair is not an employee or agent of TIAPE and actions or omissions of the au pair are not to be attributed in any way to TIAPE. We further agree to indemnify and hold harmless TIAPE, its subsidiaries, officers, employees and/or agents from any and all liability or expense, including court costs and legal fees incurred, that we in anyway caused or contributed to, whether directly or indirectly.

33. We understand that we are responsible for complying with any federal, state labor and/or income tax laws that may apply. We understand that TIAPE does not provide legal or income tax advice regarding any such laws and is not responsible for informing our family of, or overseeing compliance with, any such laws which vary from state to state and are subject to change from time to time.

34. We understand that due to the fact that an employee-employer relationship exists between our family and au pairs, we are responsible for determining whether Workers' Compensation insurance, or any other insurance, is mandatory under federal, state and/or local laws.

35. We understand that in 1994, the US Department of Labor determined that the au pair stipend constitutes "wages" because an employer-employee relationship exists between the au pair and the host family. Au pair wages are essentially in the nature of household employment and au pairs are required to file US individual tax returns.

36. Dispute Resolution. In the event of any dispute between the parties concerning the performance, enforcement or interpretation of this Agreement, such dispute shall be determined by binding arbitration before the Orange Country, California office of Judicial Arbitration and Mediation Services, upon the petition of either party. The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction on the petition of either party. We agree that California is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of California because among other reasons, TIAPE is domiciled in California.

### Privacy Consent

37. In the unlikely event of a legal claim, lawsuit or arrest in connection with our participation in the TIAPE program, we understand it may be necessary to provide our host family application and related information to attorneys, insurers, or the United States Department of State or, if TIAPE receives a valid Court order or

PLAINTIFFS' RESP. APP.0003187
APEX-20/20 297

subpoena, to whatever entity is determined to have a legal right to obtain this information. The TIAPE Privacy Policy provides that a host family's personal information will not be disclosed to any other parties unless it is given notice and an opportunity to object. TIAPE takes reasonable precautions to protect personal information from loss, misuse and unauthorized access, disclosure, alteration and destruction.

38. We agree that TIAPE has the exclusive right to determine suitability of our family to participate in the program. We agree that in determining suitability, TIAPE may make inquiries to third parties about family members and other individuals residing at or frequently staying at our residence. We confirm that all information submitted in our Host Family application is true and complete.

39. We authorize TIAPE to use, free of charge, statements, photographs, files or videos of our family to promote the TIAPE program, including providing family profile information to perspective au pairs. TIAPE will not sell this information to outside parties. All statements, photographs, files or videos become the property of TIAPE.

40. **We have read, understand and agree to the terms and conditions contained herein. Our physical or electronic signature below, confirms our acceptance of the terms and conditions of this Agreement, and are legally binding. No alteration of the terms or conditions of this Agreement shall be valid unless approved in writing by TIAPE. We have retained a copy of this Agreement.**

    **If signed by electronic signature, I confirm I have authority to sign for our family.**

PLAINTIFFS' RESP. APP.0003188

APEX-20/20 298