**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINE AZUELA RASCON,
CAMILA GABRIELA PEREZ REYES,
CATHY CARAMELO,
LINDA ELIZABETH,
And those similarly situated,

    Plaintiffs,
v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., *d/b/a* Expert AuPair,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC., *d/b/a* Cultural Care Au Pair,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, *d/b/a/* Aupair Foundation,
AMERICAN INSTITUTE FOR FOREIGN STUDY, *d/b/a* Au Pair in America,
AMERICAN CULTURAL EXCHANGE, LLC, *d/b/a* GoAuPair,
AGENT AU PAIR,
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC, *d/b/a* ProAuPair,
20/20 CARE EXCHANGE, INC., *d/b/a* The International Au Pair Exchange,
ASSOCIATES IN CULTURAL EXCHANGE, *d/b/a* GoAuPair, and
GOAUPAIR OPERATIONS, LLC, *d/b/a* GoAuPair

    Defendants.

**ORDER ON STATUTES OF LIMITATIONS**

This matter comes before the Court upon the parties' simultaneous briefing regarding whether the statutes of limitations for Plaintiffs' claims must be equitably tolled as a result of Defendants' alleged conduct. For the reasons discussed below, the Court concludes that Plaintiffs have failed to meet the burden of proof necessary to equitably toll the statutes of limitations relating to Plaintiffs' claims.

## I. BACKGROUND

The Court has repeatedly and extensively explained the factual and procedural background of this case in previous orders. *See, e.g.*, (Doc. ## 240, 569, 828.) The Court therefore recounts only the facts necessary to address questions regarding statutes of limitations.

### A. CONDITIONAL CERTIFICATION OF THE FLSA CLASSES

Plaintiffs moved to conditionally certify eleven classes and subclasses as collective actions under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on July 25 and August 15, 2016. (Doc. ## 325, 330.) Plaintiffs defined their proposed FLSA classes and subclasses as including "**all current and former** *au pairs*" sponsored by a particular Defendant, *see* (Doc. # 325 at 3–4) (emphasis added), but explained in both motions for conditional certification that they sought "collective action treatment for all *au pairs* who were sponsored by any of the FLSA Defendants **over the past three years**," *e.g.* (*id.* at 3) (emphasis added).

Defendant Interexchange, Inc. opposed conditional certification in part on grounds that Plaintiff Johana Paola Beltran, whom it had sponsored, could not serve as a class representative "because she is not a member of the proposed class." (Doc. # 355 at 3.) Defendant Interexchange explained that because Plaintiffs sought

conditional certification of *au pairs* sponsored "'during the last three (3) years,'" (*id.*) (quoting Doc. # 325 at 1), and Plaintiffs' motion for conditional certification was filed July 25, 2016, "the proposed class encompasses *au pairs* sponsored between July 25, 2013 and July 25, 2016." (*Id.* at 4.) Plaintiff Beltran, who participated in the program in 2012, is "not a member of the proposed class," according to Defendant Interexchange. (*Id.*)

In reply, Plaintiffs argued that Plaintiff Beltran is a member of the class, as the FLSA classes and subclasses were "defined without a start date because the statute of limitations for the FLSA claims against the Sponsor Defendants has been equitably tolled." (Doc. # 383 at 18, 30–33.) Plaintiffs briefly asserted that the statute of limitations was tolled "[**b**]**ecause Defendants actively concealed the rights** of the putative class members," the *au pairs*. (*Id.* at 30) (emphasis added.) To the best of the Court's knowledge, this was the **first and only time** Plaintiffs raised equitable tolling.

On June 9, 2017, this Court conditionally certified eleven classes and subclasses as collective actions under the FLSA:

- All current and former *au pairs* for whom Defendant InterExchange, Inc. was a J-1 Visa Sponsor.
- All current and former *au pairs* for whom Defendant American Institute for Foreign Study, d/b/a Au Pair in America, was a J-1 Visa Sponsor.
- All current and former *au pairs* for whom Defendant American Institute for Foreign Study, d/b/a Au Pair in America, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.
- All current and former *au pairs* for whom Defendant Cultural Care, Inc., d/b/a Cultural Care Au Pair, was a J-1 Visa Sponsor.
- All current and former *au pairs* for whom Defendant Cultural Care, Inc., d/b/a Cultural Care Au Pair, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.
- All current and former *au pairs* for whom Defendant GoAuPair was a J-1 Visa Sponsor.

> • All current and former *au pairs* for whom Defendant GoAuPair was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.
> • All current and former *au pairs* for whom Defendant AuPairCare Inc. was a J-1 Visa Sponsor.
> • All current and former *au pairs* for whom Defendant Au Pair Care Inc. was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.
> • All current and former *au pairs* for whom Defendant Expert Group International Inc., d/b/a Expert Au Pair, was a J-1 Visa Sponsor.
> • All current and former *au pairs* for whom Defendant Expert Group International Inc., d/b/a Expert Au Pair, was a J-1 Visa Sponsor and who were not paid overtime for hours worked in excess of 40 in a week for work performed after January 1, 2015.

(Doc. # 569 at 4–5, 14.) The Court observed that there "is some confusion among the parties, no doubt created by an inconsistency in both motions for conditional certification, concerning whether the classes are defined in reference to a specified range of time." (*Id.* at 4 n.3) (citing Doc. # 325 at 1; Doc. # 330 at 1.) Because the class definitions were not time-limited in the body of the motions for conditional certification and the Second Amended Complaint (Doc. # 395 at 100–03), the Court "construe[d] and evaluate[d] the request for conditional certification using the unconstrained class definition." (Doc. # 569 at 4 n.3.) When discussing to which class members notice and consent forms should be sent, the Court briefly addressed the "dispute as to whether the statute of limitations . . . has been tolled." (*Id.* at 14–15 n.4.) The Court reserved ruling on the issue "because there [was] no prejudice to Defendants in notifying putative plaintiffs that may have a claim." (*Id.*) This Court has not subsequently ruled on whether the statute of limitations has been tolled with respect to Plaintiffs' FLSA claims.

### B.     CERTIFICATION OF THE RULE 23 CLASSES AND SUBCLASSES

Plaintiffs moved to certify several more classes pursuant to Federal Rule of Civil Procedure 23 on June 3, 2017.  (Doc. # 559.)  Plaintiffs' proposed class definitions did not include time limitations; for example, Plaintiffs defined the "Antitrust Class" as including "[a]ll persons sponsored by any Defendant to work as a standard *au pair* in the United States pursuant to a J-1 Visa."  (Doc. # 559-1 at 1.)

Defendants did not explicitly take issue with the absence of time limits on Plaintiffs' proposed class definitions.  *See, e.g.*, (Doc. # 610.)  Instead, in their Joint Response in Opposition to Plaintiffs' Motion for Rule 23 Class Certification, Defendants argued briefly that common issues did not predominate Plaintiffs' proposed nationwide State-Claim Class in part because affirmative defenses, "such as the statute of limitations, provide further complications."  (*Id.* at 42.)  Defendants also asserted that differences in states' statutes of limitations rendered the case "unmanageable as a class action." (*Id.* at 45–47.)

On February 2, 2018, this Court granted in part and denied in part[1] Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Counsel, certifying the following classes:

- Antitrust Class: All persons sponsored by any Defendant to work as a standard *au pair* in the United States pursuant to a J-1 Visa.
- RICO Class: All persons sponsored by Defendants Au Pair in America (American Institute for Foreign Study), AuPairCare, Inc., Cultural Care, Inc., or InterExchange, Inc. to work as a standard *au pair* in the United States pursuant to a J-1 Visa.
- Florida Training Subclass: All persons subjected to unpaid standard *au pair* training by Defendant Expert Group International, Inc. in Florida.

---

[1] The Court denied certification of Plaintiffs' proposed nationwide State-Claim Class.  (Doc. # 828 at 37.)

5

- New York Training Subclass: All persons subjected to unpaid standard *au pair* training by Defendants Au Pair in America (American Institute for Foreign Study), Cultural Care, Inc. or InterExchange, Inc. in New York.
- New Jersey Training Subclass: All persons subjected to unpaid standard *au pair* training by Defendant AuPairCare in New Jersey.
- Au Pair in America California Subclass: All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study) to work as a standard *au pair* in the State of California pursuant to a J-1 Visa.
- Au Pair in America Illinois Subclass: All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study) to work as a standard *au pair* in the State of Illinois pursuant to a J-1 Visa.
- AuPairCare Michigan Subclass: All persons sponsored by Defendant AuPairCare, Inc. to work as a standard *au pair* in the State of Michigan pursuant to a J-1 Visa.
- AuPairCare Pennsylvania Subclass: All persons sponsored by Defendant AuPairCare, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa.
- Cultural Care Maryland Subclass: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Maryland pursuant to a J-1 Visa.
- Cultural Care Massachusetts Subclass: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Massachusetts pursuant to a J-1 Visa.
- Cultural Care Pennsylvania Subclass: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa.
- Cultural Care Texas Subclass: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Texas pursuant to a J-1 Visa.
- Cultural Care Utah Subclass: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Utah pursuant to a J-1 Visa.
- Cultural Care Virginia Subclass: All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Virginia pursuant to a J-1 Visa.
- Expert Au Pair Colorado Subclass: All persons sponsored by Defendant Expert Group International, Inc. to work as a standard *au pair* in the State of Colorado pursuant to a J-1 Visa.
- GoAuPair Maryland Subclass: All persons sponsored by Defendant Associates in Cultural Exchange (d/b/a GoAuPair) to work as a standard *au pair* in the State of Maryland pursuant to a J-1 Visa.
- InterExchange Colorado Subclass: All persons sponsored by Defendant InterExchange, Inc. to work as a standard *au pair* in the State of Colorado pursuant to a J-1 Visa.

(Doc. # 828 at 34–37.)  As is evident from the class definitions, these classes were certified without time limits as to when *au pairs* were sponsored by Defendants.

The Rule 23 Classes assert numerous claims against Defendants, including a claim of restraint of trade in violation of the Sherman Act, 15 U.S.C. §§ 1, *et seq.*; claims of violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c); state law claims grounded in tort, such as negligent representation and breach of fiduciary duty; claims of violations of states' wage and hour laws; and claims of violations of states' consumer protection laws.  (Doc. # 983 at 106–19.)

## C. RESOLUTION OF THE STATUTES OF LIMITATIONS

The parties continue to engage in settlement discussions with United States Magistrate Judge Michael J. Hegarty.  *See* (Doc. # 1163.)  It recently came to this Court's attention that whether the statutes of limitations for all claims were equitably tolled as a result of Defendants' alleged conduct bears on these discussions.  Accordingly, the Court ordered simultaneous briefing on this question and expressed its specific interest in evidence of Plaintiffs' contention that Defendants actively concealed the rights of class members.  (Doc. # 1167.)  Defendants jointly filed a brief on November 13, 2018 (Doc. # 1172), as did Plaintiffs (Doc. # 1173).[2]

---

[2] Plaintiffs argue as a threshold issue that the Court "should not address statute of limitations issues in the present procedural posture" because doing so requires full summary judgment procedure, relying primarily on *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454 (10th Cir. 1978). (Doc. # 1173 at 4–7.)  *State of Ohio* is plainly distinguishable from the instant case.  *State of Ohio* involved a grant of a motion to dismiss on statute of limitations grounds, which was reversed by the Court of Appeals for the Tenth Circuit.  *State of Ohio*, 585 F.2d at 456.  The Tenth Circuit held that because the district court relied heavily on matters outside of the pleadings, the district court should have converted the motion to dismiss into a motion for summary judgment and should have applied the requirements of Rule 56.  *Id.* at 456.  This case is well beyond the procedural posture of *State of Ohio*: all discovery is complete and

7

## II. ANALYSIS

### A. LEGAL STANDARDS: STATUTES OF LIMITATIONS AND EQUITABLE TOLLING

Statutes of limitations are "vital to the welfare of society" given the "security and stability" they provide "to human affairs." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879). Underlying statutes of limitations are basic policies of "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Rotella v. Wood*, 538 U.S. 549, 550 (2000). The Supreme Court of the United States has repeatedly recognized that limitations provisions "are intended 'to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013) (quoting *R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944)). The statute of limitations is an affirmative defense of which the defendant bears the initial burden of proof. Fed. R. Civ. P. 8(c); *Aldrich v. McColloch Prop., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

However, in this case, Plaintiffs are asserting that equitable tolling and the discovery rule[3] extend the otherwise applicable statutes of limitations. Thus, the burden

---

trial is set to begin in approximately three months. Thus, the Court finds *State of Ohio* to be inapposite.

[3] The Court notes that this is the first time Plaintiffs have raised the issue of the discovery rule. Its prior argument about the statutes of limitations was limited to the doctrine of equitable tolling. The Court rejects Plaintiffs' attempts to rope the discovery rule into their prior equitable tolling argument by asserting that equitable tolling "necessarily" includes the discovery rule. (Doc. # 1173 at 1 n.1.) This reflects "the all-too-common mistake by which the discovery rule is sometimes confused with the concept of fraudulent concealment of a cause of action." *S.E.C. v. Gabelli*, 653 F.3d 49, 59 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013). As other courts have done, the Court clarifies "that these two doctrines are distinct." *Id.* As the Court of Appeals for the Second Circuit ably explained:

of proof as to equitable tolling rests with Plaintiffs. *See King & King Enter. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154–55 (10th Cir. 1981). Because this is a class action, Plaintiffs bear the burden of proving that equitable tolling is merited on a class-wide basis—for **all** class members asserting claims that would be otherwise be time-barred. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'") A showing that the claims of only some class members warrant equitable tolling is insufficient. *See Kinne v. Rocky Mountain EMS, Inc.*, No. 12-cv-02710-REB-CBS, 2013 WL 487151, *2 (D. Colo. Sept. 11, 2013) ("If a particular putative opt-in plaintiff demonstrates circumstances that justify equitable tolling, then equitable tolling may be appropriate in that particular case. There is no basis, however, to assume, *a fortiori*, without evidence, that all opt-in plaintiffs . . . in this case somehow have been prevented from filing a timely FLSA claim").

Statutes of limitations "are generally subject to equitable principles of tolling." *Rotella*, 528 U.S. at 560 (citing *Holmberg v. Ambrecht*, 327 U.S. 392, 397 (1946)). "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations

---

Under the discovery rule, the statute of limitations for a particular claim does not accrue until that claim is discovered, or could have been discovered with reasonable diligence, by the plaintiff. . . . The fraudulent concealment doctrine, by contrast, is an equitable tolling doctrine, not an accrual doctrine. Under the fraudulent concealment doctrine, even when a claim has already accrued, a plaintiff may benefit from equitable tolling in the event that the defendant took specific steps to conceal her activities from the plaintiff.

*Id*. In the case cited by Plaintiffs, *see* (Doc. # 1173 at 1 n.1), *Cada v. Baxter Healthcare Corporation*, the Seventh Circuit similarly distinguished "between the **accrual** of the plaintiff's claim," to which the discovery rule pertains, and the **tolling** of the statute of the statute of limitations." 920 F.2d 446, 450–51 (7th Cir. 1990).

Thus, the Court declines to address these newly raised arguments about the applicability of the discovery rule.

9

when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Federal courts typically extend this equitable relief "only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). The Court of Appeals for Tenth Circuit has held that equitable tolling "is only available when [a petitioner] diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194 (2001). For example, the Tenth Circuit has applied equitable tolling "when the defendant's conduct rises to the level of **active deception**; where a plaintiff has been lulled into inaction by a defendant; and . . . if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights." *United States v. Clymore*, 245 F.3d 1196, 1199 (10th Cir. 2001) (emphasis added) (internal quotation omitted); *see Irwin*, 498 U.S. at 96 ("We have allowed equitable tolling . . . where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass").

Plaintiffs argue that the Defendants concealed *au pairs*' rights in four steps: 1) during recruitment, 2) during onboarding, 3) upon arrival at the host family, and 4) telling the host family what amount to pay. (Doc. # 1173 at 9–15.) For example, Plaintiffs argue that during onboarding, Defendants required *au pairs* to sign form contracts "that acknowledged . . . misrepresentations" of wages to which *au pairs* were entitled or that misrepresented that these wages were fixed. (*Id.* at 12.) However, Plaintiffs do not proffer evidence that Defendants actively concealed truthful wage and hour information from class members on **class-wide** bases. More importantly, the express language of

the contracts referenced by Plaintiffs disprove the Plaintiffs' assertions.[4] For example, Defendant Go Au Pair's form contract states, "I agree my weekly stipend will be **no less than** $195.75 per week." (*Id.*) (emphasis added) (quoting Doc. # 1174-43.) Defendant InterExchange's standard Au Pair Agreement defines the "Stipend" as "**the minimum amount** that the Host family is required to pay the *Au Pair*" and it goes on to explain that "the current **minimum required weekly amount** is $195.75." (Doc. # 1172-8) (emphasis added.) There is simply nothing fraudulent or deceiving in this language. This evidence[5] is insufficient to establish that Defendants fraudulently concealed wage and hour information from *au pairs* on class-wide bases.

Plaintiffs' FLSA claims illustrate their inability to prove their entitlement to inequitable tolling. Courts have equitably tolled statutes of limitations in FLSA actions "when doing so is in the interest of justice." *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1180–81 (D. Colo. 2012) (collecting cases). However, they have invoked equitable tolling "sparingly," *id.*, and only where "the defendant's conduct rises to the level of active deception," *Kinne*, 2013 WL 487151 at *2 (quoting *Clymore*, 245 F.3d at 1199). At least one court has held that "[a] misrepresentation of the applicable law and actions reliant upon that interpretation are not grounds for tolling the statute of limitations under the FLSA." *Redmond v. Chains, Inc.*, 996 P.2d 759, 763–64 (Colo.

---

[4] The Court's inquiry need not extend its analysis beyond the contracts between Plaintiffs and Defendants because the provisions of the contracts are unambiguous. Where, like here, contractual provisions are perspicuous, the parol evidence rule bars admission of any extrinsic evidence that contradicts or modifies the unambiguous provisions. *Electrical Distrib., Inc. v. SFR Inc.*, 166 F.3d 1074, 1082 (10th Cir. 1999) (citing *Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996) (*en banc*)).

[5] The evidence also shows that many *au pairs* knew that $195.75 was a minimum amount because other communications from Defendants told them so and some *au pairs* knew that $195.75 was a minimum amount because they were paid more than that amount. *See* (Doc. # 1172 at 6–9.)

App. 2000) (citing *Shunney v. Fuller Co.*, 111 F. Supp. 543 (D.R.I. 1953); *Simons v. Southwest Petro-Chem, Inc.*, 28 F.3d 1029 (10th Cir. 1994)). The Colorado Court of Appeals therein rejected the plaintiff's argument that the defendant, her employer, concealed her rights under the FLSA by not displaying required wage information and that the statute of limitations on her claim was equitably tolled as a result. *Id.* at 764. The Colorado Court of Appeals held that even assuming the defendant failed to display the required wage information, the plaintiff "did not present any evidence that defendants engaged in fraudulent conduct or actively deceived her . . . by not displaying such posters." *Id.* Similarly, a federal district court in the Tenth Circuit held that equitable tolling of a class's FLSA claim was not warranted where the plaintiffs alleged that the defendant, their employer, represented to them that they were not entitled to overtime pay. *Hart v. Sandbridge Energy, Inc.*, No. CIV-14-178-R, 2014 WL 2983358, *2–3 (W.D. Okla. July 1, 2014). Such cases demonstrate that allegations of misrepresentations of workers' rights under the FLSA do not, without more, amount to active deception justifying equitable tolling. And as the Court discussed above, Plaintiffs in this action fail to put forth evidence of fraudulent concealment that warrants tolling of the statutes of limitations for their FLSA claims or any other claims.

As the parties address in their briefs, the legal standard for tolling the statute of limitations varies somewhat depending upon the claim. *See* (Doc. # 1172 at 12–14; Doc. # 1173 at 7–9.) However, the various legal standards all require Plaintiffs to produce evidence that Defendants fraudulently concealed class members' rights. Plaintiffs have not produced such evidence. Accordingly, none of Plaintiffs' claims merit the tolling of their statutes of limitations.

For the foregoing reasons, the Court concludes that equitable tolling does not apply to any of Plaintiffs' claims.

DATED: November 20, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge