**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
    and those similarly situated,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

    Defendants.

---

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

---

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

NEGOTIATIONS AND OVERVIEW OF THE PROPOSED SETTLEMENT .................... 3

ARGUMENT............................................................................................................. 7

I. The Settlement should be preliminarily approved. .................................................... 7

   A. The Settlement is the product of informed, non-collusive negotiations................. 8

   B. The Settlement properly compensates class members for their injuries............... 8

   C. The Settlement satisfies all of the Rule 23(e) criteria. ........................................ 10

II. The Notice Plan should be approved and Administrator appointed........................ 14

CONCLUSION ......................................................................................................... 15

**Certificate of Conferral Pursuant to D.C.Colo.LCivR 7.1(A)**

Following extensive mediation and settlement efforts, all Parties support preliminary approval of the Settlement at issue in this motion. Defendants take no position on the plan of allocation or Class Counsel's request for fees and expenses, and they have not reviewed this motion.

**PRELIMINARY STATEMENT**

Class Counsel and the class representatives have secured one of the largest and most significant settlements in recent years on behalf of minimum-wage workers: $65.5 million in cash, plus important injunctive relief.

With respect to the monetary component of the Settlement, according to a regularly published annual survey, the $65.5 million recovery in this case is higher than any class action employment settlement last year. The Settlement funds will therefore provide meaningful compensation to past and present au pairs.

With respect to the injunctive relief, under the proposed Settlement, Defendants have to disclose to au pairs, host families, and the public that au pair wages are – like any other child caregiver's wages – completely negotiable, rather than fixed. The injunctive relief therefore directly addresses Plaintiffs' core factual allegation: that Defendants conspired to fix wages and then consistently and falsely represented that au pair wages were fixed and non-negotiable. Moreover, by encouraging negotiation, the prospective relief will discourage future collusion and promote increased wages.

The Settlement did not come easily. Class Counsel dedicated thousands of attorney hours to get to and prepare the case for trial. On the other side, more than a dozen law firms spent surely as much — and likely more — attorney time battling a

lawsuit they categorized as a threat to the entire au pair industry.  The Parties litigated vigorously across more than four years and twelve hundred docket entries.  Discovery involved 143 depositions (with deponents all over the world) and hundreds of thousands of documents.  And the disputes spilled over into other courts, too, as Plaintiffs and certain Defendants filed briefs in three different appellate proceedings in two Circuits.

The Parties did not reach agreement until shortly before trial, and in the midst of trial preparations.  Judge Hegarty, the court-appointed mediator, opened discussions with a 13-hour day of in-person talks.  Judge Hegarty and the Parties then worked another month before an agreement could be reached on the key Settlement terms, which were embodied in a term sheet.  It took almost two more months to agree on the final language in the Settlement Agreement.  The hard-fought negotiations resulted in the best-available benefits for the Classes, and a fair and efficient resolution for all.

For these reasons and those that follow, Plaintiffs respectfully request that the Court (1) preliminarily approve the Settlement; (2) approve the proposed class notices and notice plan, including the appointment of a Settlement Administrator; and (3) set a schedule for final Settlement approval proceedings.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs' complaint — first filed on November 13, 2014 and later amended three times pursuant to Court orders — alleged that au pairs were not paid in conformance with the Fair Labor Standards Act ("FLSA"), as required by Department of State ("DOS") regulations.  *See* 22 C.F.R. § 62.31(j)(1).  Specifically, the complaint claims that Defendants (the 15 companies then-authorized by the DOS to sponsor au pairs for visas) were the au pairs' "joint employers" (along with host families) and had caused host families to pay au pairs only $195.75 per week for up to 45 hours of work, which is

2

$4.35 per hour — far less than the minimum wage required by the FLSA and many states.  *See* ECF No. 983 ¶¶ 319-326 (Third Amended Complaint).  The au pairs also alleged that Defendants conspired to fix their wages at this unlawful amount and lied to them about their ability to negotiate.  *See, e.g.*, *id.* ¶¶ 8, 83.

Over more than four years, the Parties litigated scores of motions:  motions to dismiss and to compel arbitration (ECF Nos. 258, 705); FLSA conditional certification and decertification (ECF Nos. 569, 1066, 1069, 1070, 1072, 1077); Rule 23 class certification (ECF No. 828); motions to exclude expert and lay testimony (ECF Nos. 955, 1079); summary judgment motions (ECF No. 1102); numerous motions for reconsideration (ECF Nos. 411, 728, 858, 1126, 1130); many motions to compel the production of discovery (ECF Nos. 344, 506, 624, 969, 1061); as well as two appeals to the Tenth Circuit (ECF Nos. 723, 1041, 1161).  The Parties also engaged in a massive discovery effort, exchanging hundreds of thousands of pages of documents, conducting 143 depositions on three continents (plus two more, remotely), and subpoenaing records and depositions from third parties.  *See* Skinner Decl. ¶ 6; ECF No. 905.

The Court ultimately certified FLSA and Rule 23 classes that cover dozens of federal and state claims.  *See* ECF Nos. 569, 828.  Following the Court's denial of summary judgment, the eleven named Plaintiffs — representing approximately 100,000 current or former au pairs — were prepared to take the au pair industry to trial beginning February 25, 2019.  *See* ECF Nos. 558 at 29-30; 1124.

## **NEGOTIATIONS AND OVERVIEW OF THE PROPOSED SETTLEMENT**

At the final pretrial conference, after many abandoned efforts to pursue settlement discussions, Defendants requested the Court's assistance in mediating a settlement.  The Court referred the matter to Magistrate Judge Michael Hegarty, who

3

scheduled an in-person mediation session for October 17, 2018.  *See* ECF No. 1138.

In advance of that mediation, the Parties prepared and exchanged 10 mediation briefs, totaling more than 100 pages.  Skinner Decl. ¶ 8.  The extensive briefs, which also contained 75 exhibits totaling approximately 1,466 pages, were exchanged among the Parties and Judge Hegarty (along with a limited amount of *ex parte* material).  *Id.*

Dozens of lawyers representing all of the Parties traveled to Denver to participate in the mediation on October 17.  The Parties met with Judge Hegarty for more than thirteen hours.  Following that marathon session, which nearly broke down on multiple occasions, the Parties were still unable to reach an agreement.  Skinner Decl. ¶¶ 8-9.

The Parties then continued negotiations under the supervision of Judge Hegarty — while simultaneously preparing for trial — for another month.  *Id.* ¶ 9.  While difficult to quantify the attorney time spent on these continued negotiations, it surely required hundreds of additional hours of research and analysis.

Finally, on November 19, 2018, the Parties reached agreement on the core terms of a settlement, including the Settlement amount, the nature of the agreed-upon prospective relief, and scope of the releases Defendants would receive.  The Parties then negotiated the final language over several more weeks, finally agreeing upon the proposed Settlement Agreement on January 9, 2019.  *See* ECF No. 1187.

The Settlement will provide real relief for all of Plaintiffs' claims.  The substantial monetary payment — one of the largest wage and hour settlements in recent years[1] — will provide redress for Defendants' alleged failure to satisfy the applicable minimum wage statutes.  Although much smaller than the size of the judgment Plaintiffs would

---

[1] *See* 15th Annual Workplace Class Action Litigation Report, 34-35 (Jan. 2019), https://www.seyfarth.com/dir_docs/publications/2019_WCAR_Chapters_1-2.pdf.

seek at trial, Plaintiffs believe the Settlement figure is close to if not more than the maximum that they might realistically collect following a successful trial and any potential appeals given the exhaustion of available insurance and Defendants' financial limitations. Any post-verdict recovery would also have likely entailed substantial judgment enforcement efforts aimed at the Defendants' affiliates, introducing more risk.

Further, by requiring Defendants to disclose that au pairs are free to bargain for compensation that exceeds the applicable legal minimum, the Settlement ensures that au pairs will receive (1) accurate disclosures (addressing the fraud-based claims) of (2) information that will encourage informed negotiation and a well-functioning market (addressing the antitrust claims). Skinner Decl. Ex. 1 (Stipulation and Agreement of Settlement), at ¶ 12.

In exchange, the Classes are providing releases to the Defendants and to host families. *Id.* at ¶¶ 3-6. The Defendants will receive a standard general release. *Id.* The host families will receive a narrower release tailored to the claims asserted in the litigation. *Id.* at ¶ 4.

Plaintiffs propose that the Settlement amount be distributed pursuant to a Plan of Allocation that is designed to accomplish two goals: (1) to provide all class members with shares of the Settlement that reflect the relative strength of their claims; and (2) to acknowledge the efforts and sacrifices of those au pairs who participated in the lawsuit.

To accomplish the first goal, the Plan of Allocation first calculates a base comprised of class members who were au pairs on or after November 13, 2010. The Plan of Allocation refers to these as "Primary Claims." The Primary Claims begin on November 13, 2010, four years before the first complaint was filed, because the longest

statute of limitations for Plaintiffs' federal claims is four years (for the antitrust claims). As explained in Appendix A, the value of the Primary Claims is based on Plaintiffs' allegation that au pairs should have received weekly compensation of 40 hours at a minimum wage of at least $7.25 per hour, with no reduction for room and board, plus five hours of overtime (1.5 times the applicable minimum wage).

The Plan of Allocation also allows for adjustments to account for the relative value of certain claims: (i) a claim for unpaid training is worth 80% of a Primary Claim ("Training Claim"); (ii) a claim premised solely on state law, rather than federal (a "State Claim Class A"), is worth 40% of a Primary Claim;[2] and (iii) a claim outside of the statute of limitations period (a "State Claim Class B") is worth 20% of the Primary Claim.[3] These adjustments account for the additional risk associated with the Training and State claims.

For instance, Defendants argue that the Training Claims implicate a regulatory exemption concerning training — a defense that does not apply to the Primary Claims. *See* ECF 860, at 47-50. Claims premised solely on state, rather than federal, law are adjusted because the federal claims offer greater opportunity for treble recovery than the State claims. *See* 15 U.S.C. § 5(a) (antitrust); 18 U.S.C. §1964(c) (RICO). Further, although this Court has already ruled that Plaintiffs' state law claims are not preempted (*see* ECF No. 1126), the state claims face greater appellate risk given the government's

---

[2] The 40% weighting for state claims is also relevant to the Primary and Training Claims in calculating any additional recovery from a state minimum wage above the federal minimum wage. *See* App'x A, Step D.

[3] A single class member may have claims in more than one category. For example, a class member with two au pair placements could have a Primary Claim and a State Claim Class A depending on the timing of the placements. Plaintiffs expect that all class members with a Training Claim will also have a Primary Claim.

recent suggestion to the contrary in an amicus brief filed in the First Circuit (*see* ECF No. 1146-1).  Finally, claims outside the four-year federal limitations period are adjusted because they are subject to a limitations defense that does not apply to the Primary Claims, particularly given the Court's recent determination that Plaintiffs cannot extend the statute of limitations under a fraudulent concealment theory.  *See* ECF No. 1176.

To accomplish the second goal – recognizing the au pairs who actually participated in this lawsuit – the Settlement pays three types of "Participation Awards" to recognize the contributions certain au pairs made to advance the litigation.  Each named Plaintiff receives $5,000; each class member who was deposed receives $1,000; and each class member who opted-in to join a FLSA Class receives $100.  These awards are not cumulative (class members receive the largest to which they are entitled), but are in addition to the recovery they will receive as class members under the formula explained in Appendix A.  The awards recognize the service that certain au pairs provided and the sacrifices they made or were willing to make—*e.g.*, lost wages or personal time due to a deposition.  The Participation Awards total approximately $600,000, or less than 1% of the total Settlement amount.

## ARGUMENT

**I.    The Settlement should be preliminarily approved.**

Rule 23(e) requires judicial approval for class-wide settlements, which is subject to the Court's sound discretion.  *United States v. Hardage,* 982 F.2d 1491, 1495 (10th Cir. 1993).  The law favors and encourages settlements, especially in complex actions. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

At the preliminary approval stage, a court "makes a preliminary determination on

7

the fairness, reasonableness, and adequacy of the settlement terms." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (Arguello, D.J.). The Court must find that the Settlement is "likely" to be approved. Fed. R. Civ. P. 23(e)(1)(B) (Jan. 1, 2018 amend.).

### A. The Settlement is the product of informed, non-collusive negotiations.

There is a presumption that settlements are informed and non-collusive if the class is represented by experienced counsel, the settlement is the result of arms-length negotiation before an experienced mediator, and substantial discovery occurs prior to the settlement. *See Newberg on Class Actions* 5th § 13:14, nn.4.50, 5, 6 (collecting cases). This Settlement satisfies each criterion.

The Settlement was reached on the eve of trial after years of extensive and contentious discovery. The Settlement was also achieved through extensive mediation spread over months that was overseen by a skilled, experienced, independent, and incredibly patient mediator. Skinner Decl. ¶¶ 8-9. Finally, Plaintiffs are represented by experienced counsel, with expertise in class action litigation and deep experience in wage-and-hour, RICO, and antitrust litigation. *See* ECF Nos. 565-2 at 26-27; 828 at 33-34. The Settlement is thus informed and non-collusive.

### B. The Settlement properly compensates class members for their injuries.

"A district court has broad supervisory powers with respect to allocating a class action settlement and wide latitude in determining what to consider in approving a settlement allocation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987)). "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the

distribution plan must be fair, reasonable and adequate." *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000) (citations omitted) ("*NCAA*"). "As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 692–93 (D. Colo. 2014) (citations omitted).

Here, Class Counsel has devised a Plan of Allocation that will compensate class members based on both the extent of their injuries and the strength or viability of their claims. The allocation formula considers the length of an au pair's service (App'x A Step F), the relevant federal or state minimum wage (App'x A, Steps A, B), and the nature of the au pair's claims. This sort of multi-factor recovery ensures fairness to all class members. *See NCAA,* 108 F. Supp. 2d at 1196 ("[I]f differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set that was more likely to succeed.") (citations omitted). Moreover, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Crocs*, 306 F.R.D. at 692 (citation omitted); *see also NCAA*, 108 F. Supp. 2d at 1196 (courts "give[] substantial weight to the opinions of experienced counsel . . . regarding the fairness of the settlement and allocation.").[4]

---

[4] Plaintiffs expect all available funds to be distributed to au pairs through the claims process. The Settlement provides that any residual funds due to uncashed checks will be distributed *cy pres*. *See* Skinner Decl. Ex. 1, at ¶ 21c. Although any *cy pres* could be made after all checks are distributed, Plaintiffs want to ensure that all issues— including *cy pres* issues—can be fully and fairly aired and decided at final settlement approval, thereby avoiding any future *cy pres* proceedings. The Parties continue to work in good faith to identify an appropriate recipient, and will publicly file an update within seven days so that the Court and any interested class member will be fully informed of the Parties' position before the final approval proceedings.

### C. The Settlement satisfies all of the Rule 23(e) criteria.

#### 1. The Settlement was fairly and honestly negotiated at arm's length.

The Settlement was reached after protracted discovery, significant motion practice, and as a product of arm's length negotiations, as discussed above. *See also* Skinner Decl. ¶¶ 5-9; Fed. R. Civ. P. 23(e)(2)(B) (discussing "arm's length" negotiation).

#### 2. Serious questions of law and fact exist.

Serious questions of law and fact drove this Settlement. Defendants have vigorously contested Plaintiffs' legal and factual arguments throughout the litigation, including joint employer liability, preemption, the existence of an anti-competitive conspiracy, and the legality of a 40% room and board deduction. Moreover, in denying all Parties' summary judgment motions, the Court found that significant issues of fact remained. *See* ECF No. 1102. In addition, important motions remain pending, the outcome of which could materially alter the Parties' negotiating positions. These include Defendants' motions to decertify the FLSA classes and Defendants' motions to reconsider the Court's summary judgment rulings. *See* ECF Nos. 1066, 1068, 1070, 1072, 1077, 1130, 1156. Still other critical issues would be briefed and decided *in limine*. *See* ECF No. 1140 (Aug. 15, 2018 Hr'g Tr. at 37:15-38:11).

#### 3. The value of immediate recovery outweighs the possibility of future relief and protracted and expensive litigation.

In arriving at the Settlement, Plaintiffs have considered all material factors, including the "costs, risks, and delay of trial and appeal," as well as the ability to collect on a significant judgment. Fed. R. Civ. P. 23(e)(2)(C)(i); *New Eng. Carpenters' Health Benefits Fund v. First DataBank*, 602 F. Supp. 2d 277, 281 (D. Mass. 2009) (considering defendants' "limited finances and questionable insurance coverage"

because "you can't get blood from a stone"), *aff'd* 582 F.3d 30 (1st Cir. 2009). The proposed Settlement strikes an appropriate balance between the strength of the Plaintiffs' case and the benefit to the class of securing a settlement now, rather than after a lengthy trial, inevitable appeals, and a potentially lengthy judgment-enforcement process. Au pairs have a particularly strong interest in prompt payment given their youth and generally limited resources.[5] In addition, Plaintiffs believe the Settlement is at or near the limit of Defendants' ability to pay. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd sub nom.*, *In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997) (ability to pay "can be relevant to the Court's determination of the Settlement's fairness.").

### 4. The Settlement is fair and reasonable.

There are "no grounds to doubt [the Settlement's] fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys). . . ." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006). The $65.5 million recovery and injunctive relief are meaningful and beneficial to au pairs.

Although a small subset of class members will receive "Participation Awards," which will differentiate them slightly, these types of awards are well-supported by existing case law. Indeed, named plaintiffs, *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003), and FLSA opt-in plaintiffs who "dedicated considerable time to the prosecution of this matter," *Shaw v. Interthinx, Inc.*, 13-cv-01229-REB-NYW, 2015 WL 1867861, at *9 (D. Colo. April 22, 2015), are routinely compensated through incentive

---

[5] For example, named plaintiff Beltran had a minimum wage job and enrolled in school on scholarships following her au pair tenure. *See* ECF No. 943-48 (Beltran Dep. Tr. 33-37); *see also* 22 C.F.R. § 62.31(d)(1) (au pairs must be between the ages of 18 and 26).

11

payments. *See Chieftain Royalty Co. v. Enervest Energy Instit. Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017), *cert. denied,* 139 S. Ct. 482 (2018). When evaluating the reasonableness of service awards, courts may consider factors such as "(1) the actions that the [litigant] took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the [litigant] expended in pursuing the litigation." *Shaw*, 2015 WL 1867861, at *8.

These factors are met here. Each of the named Plaintiffs submitted declarations, sat for lengthy depositions, provided written and document discovery, and assisted Class Counsel in preparing the case. Therefore, the proposed $5,000 awards are reasonable. *See, e.g.*, *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award); *Rausch v. Hartford Fin. Servs. Grp.*, 2007 WL 671334, at *3 (D. Or. Feb. 26, 2007) (approving $10,000 award). The 90 FLSA opt-in deponents also contributed significantly to the case, often at great personal expense: many were required to appear for depositions on short notice, causing them to miss work, school and other appointments, and to find childcare. *Chieftain Royalty*, 888 F.3d at 467 (discussing burden as a significant factor). Each spent time with Class Counsel preparing for the depositions, and many also produced documents and answered written discovery requests from Defendants. *See id.* at 468. Regardless of whether they were deposed, the FLSA opt-ins also responded to surveys and exposed themselves to discovery. *See Ott v. Publix Super Markets, Inc.*, No. 12-cv-00486, ECF No. 247 at 15-17 (M.D. Tenn. Feb. 3, 2015); *id.* ECF No. 249 (approving settlement).

Finally, Class Counsel's request for 35% fees plus recovery of expenses is in line with similar cases. *See, e.g., Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo.

12

2018) (approving 37% in fees which was "well within the normal range for a contingent fee award"); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (39% of settlement fund as fees); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (requested fee was "in the middle of the ordinary 20%–50% range and is presumptively reasonable"). The fee is equally reasonable in terms of absolute dollars given the enormous amount of time and resources that were dedicated to pursuing the Classes' interests, as Class Counsel will establish in its final approval materials. For instance, a court in this Circuit recently "awarded total attorney fees in the amount of one third of the settlement fund, or $503,333,333.33." *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 6839380, at *1 (D. Kan. Dec. 31, 2018).

At this time, the Court is only asked to approve a notice of settlement reflecting the fee request—the same 35% figure included in a previously-approved class notice in this case. *See* ECF No. 569 (approving FLSA class notice with 35% attorneys' fees).

The recovery to the Classes; the arm's-length nature of the negotiations; the involvement of an independent and highly experienced mediator; and the participation of sophisticated counsel throughout the litigation all compel a finding that "probable cause" exists to conclude that the proposed Settlement is sufficiently fair, reasonable and adequate to justify dissemination of the Notice to the Classes and the scheduling of the Settlement Hearing. *See In Re Molycorp, Inc. Secs. Litig.*, No. 12-cv-00292, 2017 WL 4333997, at *3 (D. Colo. Feb. 15, 2017) (citation omitted).[6]

---

[6] Because the FLSA collective action has thus far only been conditionally certified, at the time that Plaintiffs move for final approval of the Settlement they will also move for final certification of the FLSA collective action and approval of the Settlement's FLSA

13

## II. The Notice Plan should be approved and Administrator appointed.

The Court should also approve the form, content, and method of distributing the proposed Settlement Notice. A class notice should be written in clear, straightforward language, and set out the key facts about the Settlement. Fed. R. Civ. P. 23(c)(2)(B); Fed. Judicial Ctr., Manual for Complex Litigation (4th ed. 2004). The methods of notice must be the best "practicable." Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B).

The proposed notice plan meets these standards. *See* Skinner Decl. Ex. 1-A. Plaintiffs, through an experienced claims administrator,[7] will cause the notice and claim form (which are attached as exhibits to the Settlement, and have been agreed upon by the Parties) to be sent by electronic mail to every class member who can be identified through reasonable effort, including through contact data provided by the Defendants. Class members who cannot be reached by e-mail will be contacted by text message. The content of any cover e-mail or text message will be agreed upon by the Parties and will direct the class member to the full, Court-approved notice. The notice will be made available in multiple languages: English, Spanish, and Portuguese. The Settlement Administrator will also maintain a website that provides detailed information in multiple languages. Class members will have ninety (90) days to complete a claim.

A different version of the proposed notice will go to class members sponsored by AuPairCare, and to recent (2017-2018) au pairs whose contact details were not available to Plaintiffs at the time of the original Rule 23 mailing, in July 2018. Unlike

---

component. *See Whittington*, 2013 WL 6022972, at *2; *see also Fails v. Pathway Leasing Ltd. Liab. Co.*, No. 18-cv-00308, 2018 U.S. Dist. LEXIS 196319, at *10-11 (D. Colo. Nov. 19, 2018) (Arguello, D.J.) (judicial approval of FLSA settlement necessary where number of opt-ins makes individual consent impracticable).

[7] Plaintiffs request that JND Class Action Administration ("JND") be appointed Settlement Administrator. JND has successfully administered FLSA opt-in procedures and distributed Rule 23 notices in this matter. *See* ECF No. 1057.

other class members who were previously notified and given 90 days to opt-out (*see* ECF No. 1057), these au pairs have had no such opportunity. Accordingly, they will receive a version of the notice that includes information about opting-out within 90-days, or (as with all other class members) submitting a claim within 90-days.[8] All class members, therefore, will have an opportunity to opt-out before final approval.

This notice method will provide class members with the best notice practicable, particularly given that most former au pairs return to their home countries, and current au pairs are dispersed around the United States. *See DeJulius v. New England Health Care Emps. Pension Fund,* 429 F.3d 935, 946-47 (10th Cir. 2005); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 601 (N.D. Cal. 2015) (approving e-mail notice); *Wallace v. Powell*, 301 F.R.D. 144, 159 (M.D. Pa. 2014) (approving notice plan that included detailed website with disclosures). The notice plan is also consistent with the notice plans already approved by the Court. *See* ECF Nos. 569 (approving FLSA notice plan); 1057 (approving Rule 23 notice plan).

## **CONCLUSION**

Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the attached Proposed Order, which sets a schedule for distributing notice, objections and exclusions (where applicable), and final approval.

---

[8] In the proposed notice submitted herewith, bracketed text (i.e., "[ ]") is intended for AuPairCare and certain 2017-2018 class members only. *See* Skinner Decl. Ex. 1-A.

| | |
|---|---|
| Dated: January 16, 2019 | Respectfully Submitted, |

BOIES SCHILLER FLEXNER LLP

  /s/ *Peter M. Skinner*
Matthew L. Schwartz
Peter M. Skinner
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
Juan P. Valdivieso
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1410 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## APPENDIX A: PLAN OF ALLOCATION

The full calculation that will be used in the Plan of Allocation (after payment of costs, expenses, fees, and participation awards) is as follows. The terms "Primary Claim," "Training Claim," "State Claim Class A," and "State Claim Class B" have the same meaning as used in the Settlement Agreement.

| Step | Description | Formula |
|---|---|---|
| A | Calculate federal wage per Plaintiffs' theory of the case for placements after November 13, 2010. | (40hrs * federal minimum) + (5hrs * federal minimum * 1.5) |
| B | Calculate state wage per Plaintiffs' theory of the case for placements after November 13, 2010. | (40hrs * state minimum) + (5hrs * state minimum * 1.5) |
| C | Take the difference between the federal and the state minimum wages, if the state minimum is larger. | B-A |
| D | Weight the state claim at 40% relative to the federal and calculate the weekly claim. | A+40%C |
| E | Calculate weekly damages. | D – weekly stipend |
| **F** | **Calculate Primary Claim.** | **E * weeks spent as an au pair** |
| **G** | **Calculate Training Claim.** | **80% of D** |
| H | Calculate weekly damages for placements prior to November 13, 2010. | Repeat steps A-E. |
| **I** | **Calculate State Claim Class A** (claims within a state limitations period)**.** | **40% of (H * weeks spent as an au pair)** |
| **J** | **Calculate State Claims Class B** (claims not within a state limitations period)**.** | **20% of (H * weeks spent as an au pair)** |
| K | Calculate total claimed by Settlement class. | F + G + I + J for all participating class members. |
| L | Calculate pro rata share. | K / funds available for disbursement to class members |
| **M** | **Calculate individual payments.** | **L * [F, G, I, or J, as appropriate]** |

## **Certificate of Service**

I hereby certify that on January 16, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                 */s/ Peter M. Skinner*
                                                 Peter M. Skinner