# Exhibit 1

EXECUTION VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
            and those similarly situated,

        Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. DBA CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GO AU PAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GO AU PAIR,
GO AU PAIR OPERATIONS, LLC, DBA GO AU PAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

        Defendants.
_____

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement, dated as of 3 January 2019 (the "Agreement," or "Settlement"), is made and entered into by and among (i) the Plaintiffs,[1] on behalf of themselves and each Settlement Class Member, by and through their undersigned counsel, and (ii) the Defendants, by and through their undersigned representatives; and is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The Settlement is intended by the Parties to fully, finally, and forever compromise, settle, release, resolve, discharge, and dismiss with prejudice this Litigation (*i.e.*, the above-captioned action, 1:14-cv-03074-CMA, pending in the U.S. District Court for the District of Colorado), and all Released Claims as against all Released Parties, subject to the terms and conditions stated in this Agreement and Final approval of the Court.

**WHEREAS:**

A.     On November 13, 2014, Plaintiff Johana Paola Beltran ("Beltran") commenced this action (the "Litigation") by filing a putative class action complaint against Pamela H. Noonan; Thomas J. Noonan; InterExchange, Inc. ("InterExchange"); USAuPair, Inc. ("USAuPair"); GreatAuPair, LLC ("GreatAuPair"); Expert Group International Inc., d/b/a Expert AuPair ("Expert AuPair"); EurAuPair Intercultural Child Care Programs ("EurAuPair"); Cultural Homestay International ("Cultural Homestay"); Cultural Care, Inc., d/b/a Cultural Care Au Pair ("Cultural Care"); AuPairCare Inc. ("AuPairCare"); Au Pair International, Inc. ("API"); APF Global Exchange, NFP, d/b/a

---

[1] All terms with initial capitalization used in this Agreement, and in any exhibits attached hereto and made a part hereof, shall have the meanings ascribed to them in Paragraph 1 below or as otherwise defined herein, except that any term with initial capitalization only defined in an exhibit shall have the meaning provided in that exhibit.

Au Pair Foundation ("APF"); American Institute for Foreign Study, Inc., d/b/a Au Pair in America ("AIFS"); Go Au Pair Operations, LLC; American Cultural Exchange, LLC, d/b/a Go Au Pair (together with Go Au Pair Operations, LLC, "Go Au Pair"); Agent Au Pair, Inc. ("Agent Au Pair"); A.P.EX. American Professional Exchange, LLC d/b/a ProAuPair ("ProAuPair"); and 20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange ("TIAPE," and, together with InterExchange, USAuPair, GreatAuPair, Expert Au Pair, EurAuPair, Cultural Homestay, Cultural Care, AuPairCare, API, APF, AIFS, Go Au Pair, Agent Au Pair, and ProAuPair, the "Defendants") in the United States District Court for the District of Colorado (the "Court").  The complaint asserted, *inter alia*, violation of the Sherman Act, 15 U.S.C. § 1, *et seq.* (the "Sherman Act"); failure to pay federal minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"); failure to pay wages under the laws of several states; breach of fiduciary duty; violations of the New York Wage Act; and failure to pay wages under the laws of Colorado.

      B.     On March 13, 2015, Beltran and additional Plaintiffs Lusapho Hlatshaneni ("Hlatshaneni"), Beaudette Deetlefs ("Deetlefs"), Dayanna Paola Cardenas Caicedo ("Caicedo"), and Alexandra Ivette Gonzalez ("Gonzalez") filed a first amended class complaint, asserting class claims under the Sherman Act against the Defendants and under the FLSA against InterExchange, Cultural Care, AIFS, and Go Au Pair; asserting an individual claim for unpaid wages under the laws of Colorado by Beltran against Pamela H. Noonan and Thomas J. Noonan; and adding putative class claims for: civil RICO, 18 U.S.C. § 1964(c) ("RICO") against InterExchange, Cultural Care, and AIFS; and breach of fiduciary duty, negligent misrepresentation, constructive fraud or

fraudulent concealment, violations of consumer protection statutes, breach of contract and quasi-contract, and unpaid wages under the laws of several states and the District of Columbia against InterExchange, Cultural Care, AIFS, and Go Au Pair; and violations of the New York Wage Act against InterExchange, Cultural Care, AIFS, and Go Au Pair.

C.     The First Amended Complaint and subsequent amended complaints filed in the Litigation allege, among other things, that the Defendants colluded to pay au pairs residing in the United States pursuant to a J-1 visa fixed wages below federal and state minimum wages and did in fact cause au pairs to be paid wages below federal and state minimum wages.

D.     The First Amended Complaint added Associates in Cultural Exchange, d/b/a GoAuPair as an additional defendant, which was then voluntarily dismissed from the Litigation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on March 23, 2015.

E.     Defendants Pamela H. Noonan and Thomas J. Noonan were voluntarily dismissed from the Litigation on April 3, 2015 pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

F.     The Defendants moved to dismiss the remaining claims on April 17, 2015. The motions to dismiss were fully briefed as of August 10, 2015.

G.     On February 22, 2016, Magistrate Judge Kathleen M. Tafoya issued a recommendation to grant in part and deny in part the Defendants' motions to dismiss. The decision recommended dismissal of Plaintiffs' claims for breach of contract and quasi-contract and for unpaid wages under the Utah Minimum Wage Act, and otherwise recommended denial of Defendants' motions to dismiss.  Defendants lodged objections to the recommendation on March 14, 2016, to which Plaintiffs responded on March 28, 2016.

H.      On March 31, 2016, the Court issued an order adopting and affirming in part the recommendation.  The Court dismissed Plaintiffs' claims for breach of contract and quasi-contract and for unpaid wages under the Utah Minimum Wage Act, and otherwise denied Defendants' motions to dismiss.

I.      On July 25, 2016, Plaintiffs Beltran, Deetlefs, Hlatshaneni, Gonzalez, and Caicedo moved for conditional collective action certification with respect to FLSA claims against InterExchange, Cultural Care, AIFS, and Go Au Pair.  On August 15, 2016, Plaintiffs filed a motion for conditional collective action certification with respect to FLSA claims against AuPairCare and Expert Au Pair on behalf of Laura Mejia Jimenez ("Jimenez"), Juliane Harning ("Harning"), and Nicole Mapledoram ("Mapledoram").

J.      Jimenez, Harning, and Mapledoram were identified as putative additional plaintiffs in Plaintiffs' motion to file a second amended complaint filed on August 15, 2016.  That motion was granted on October 17, 2016.

K.      On October 17, 2016, Plaintiffs Beltran, Hlatshaneni, Deetlefs, Caicedo, Gonzalez, Rascon, Jimenez, Harning, and Mapledoram filed a second amended class complaint, asserting putative class claims: under the Sherman Act against the Defendants; under RICO against AIFS, AuPairCare, Cultural Care, and InterExchange (together, the "RICO Defendants"); for breach of fiduciary duty, negligent misrepresentation, constructive fraud or fraudulent concealment, violations of consumer protection statutes, and unpaid wages under the laws of the several states and the District of Columbia against AIFS, AuPairCare, Cultural Care, Expert AuPair, Go Au Pair, and InterExchange (together, the "State Claim Defendants"); under the FLSA against AIFS, AuPairCare, Cultural Care, Expert AuPair, Go Au Pair, and

InterExchange (together, the "FLSA Defendants"); for unpaid wages under the New York Wage Act against AIFS, Cultural Care, Go Au Pair, and InterExchange (together, the "New York Wage Defendants"); and for unpaid wages under the New Jersey Wage Act against AuPairCare.

L.      On November 14, 2016, Plaintiff Caicedo was voluntarily dismissed from the Litigation without prejudice.

M.      On March 31, 2017, the Court granted Plaintiffs' motions for conditional collective action certification.  The order was subsequently amended by the Court on April 28, 2017 and June 9, 2017.

N.      On June 3, 2017, Plaintiffs filed a motion to certify classes and to appoint class counsel pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3); and filed a motion for leave to file a Third Amended Complaint.

O.      On February 2, 2018, the Court granted in part and denied in part Plaintiffs' motion to appoint class counsel and for certification of classes pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

P.      On February 16, 2018, the Parties filed motions for summary judgment.

Q.      On April 9, 2018, the Court granted in part and denied in part Plaintiffs' motion for leave to file a Third Amended Complaint.

R.      On April 11, 2018, Plaintiffs Beltran, Hlatshaneni, Deetlefs, Caicedo, Gonzalez, Rascon, Jimenez, Harning, and Mapledoram filed a third amended class complaint, asserting the same set of claims as the second amended complaint and adding Cathy Caramelo, Linda Elizabeth, and Camila Gabriela Perez Reyes as additional named Plaintiffs.

S.      On April 19, 2018, the time period to opt into the FLSA classes and subclasses ended.  On April 20, 2018, Plaintiffs filed a notice indicating that 4,283 individuals delivered consent forms to join the FLSA classes and subclasses.  Plaintiffs filed a subsequent notice on July 20, 2018, indicating that one individual had elected to withdraw her consent to join.

T.      On May 9, 2018, the FLSA Defendants each moved to decertify their respective conditionally certified FLSA classes and subclasses.

U.      On June 19, 2018, the Court denied the parties' cross motions for summary judgment.

V.      On July 17, 2018, Plaintiffs moved for reconsideration of the Court's order denying Plaintiffs' motion for partial summary judgment.  The Court granted Plaintiffs' motion on August 6, 2018, dismissing Defendants' defenses based on federal preemption.

W.      On August 8, 2018, certain Defendants moved for reconsideration of the Court's August 6, 2018 order dismissing their preemption defense.  Defendants filed a supplemental reply brief in support of reconsideration on September 27, 2018, attaching an amicus brief filed by the United States Department of Justice in a separate action that also addressed preemption.

X.      On August 15, 2018, the Court referred the parties to Magistrate Judge Michael E. Hegarty for a settlement conference.

Y.      On October 17, 2018, certain Defendants moved for reconsideration of the Court's June 19, 2018 order denying all Parties' motions for summary judgment.

Z.      The Parties appeared before Magistrate Judge Hegarty for mediation on October 17, 2018.  The Parties did not resolve their claims but continued negotiations over the next five weeks through Magistrate Judge Hegarty.

AA.     On November 13, 2018, the Parties filed briefs concerning the application of tolling doctrines to the statutes of limitations pertaining to Plaintiffs' claims at the instruction of the Court.  On November 20, 2018, the Court issued an order finding that equitable tolling would not apply to Plaintiffs' claims.

BB.     On November 20, 2018, after additional extensive arm's-length negotiations and exchange of multiple proposals, Plaintiffs and Defendants reached an agreement in principle to settle the Litigation, which was memorialized in a Term Sheet executed by the parties.  The Court subsequently vacated all pre-trial dates, excepting the Final Pretrial Conference and Trial Date, pending the submission of a settlement agreement.

CC.     At the time the Term Sheet was signed, the FLSA Defendants' motions for decertification of the FLSA classes and subclasses and certain Defendants' motions for reconsideration of the Court's order denying their motions for summary judgment and of the Court's order dismissing their defenses based on preemption remained pending.

DD.     Defendants have denied and continue to deny any fault, liability, or wrongdoing of any kind and dispute that the evidence developed supports in any way the claims asserted.  Defendants also have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs.  Defendants further have denied and continue to deny that Plaintiffs or any Settlement Class Members were harmed or suffered any loss as a result of any of the conduct alleged in the Litigation.  Defendants

are entering into the Settlement to eliminate the burden, expense, inconvenience, uncertainty, distraction, and risk of further litigation; in light of the length of continued proceedings necessary to defend the Litigation through trial and any appeals; and to avoid continued litigation.  Defendants therefore believe that it is desirable that the Litigation and any other current or future potential actions brought by Settlement Class Members that relate in any way to the allegations raised by the Plaintiffs be settled upon the terms and conditions set forth herein, in order to avoid the further expense and burden of protracted litigation.

**NOW THEREFORE**, without any admission or concession on the part of Defendants of any liability or wrongdoing or lack of merit of their defenses in the Litigation, it is hereby stipulated and agreed, by and among the Parties, through their respective attorneys and representatives, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and other conditions set forth herein, in consideration of the benefits flowing to the Parties from the Settlement, that the Litigation, and all Released Claims shall be fully, finally, and forever compromised, settled, released, resolved, discharged, and dismissed with prejudice against the Released Parties, upon and subject to the following terms and conditions:

I.      **Definitions**

1.      As used in this Agreement, the following terms shall have the following meanings:

a.      "Alternative Judgment" means a form of final judgment that may be entered by the Court in a form other than the form of the Order and Final Judgment provided for in this Agreement, and which is acceptable to all Parties.

b.      "Claim" has the meaning set forth in Paragraph 3.  For the avoidance of doubt, "Claims" shall include, but are not limited to, any and all causes of action, liabilities and demands of whatever kind or character for minimum wage, overtime, penalties, expenses, or other compensation (including but not limited to Claims under the Fair Labor Standards Act; state and local wage and hour laws; the Sherman Act, 15 U.S.C. §1, *et seq.*; civil RICO, 18 U.S.C. §1964(c); breach of fiduciary duty; negligent misrepresentation; constructive fraud or fraudulent concealment; and/or violations of consumer protection statues).

c.      "Claims Administrator" means the firm retained by Plaintiffs' Counsel on behalf of the Settlement Class and acceptable to the Defendants, subject to approval of the Court, to provide all notices approved by the Court to Settlement Class Members and to administer the Settlement.

d.      "Court" means the court or courts with jurisdiction over the above-captioned action, number 14-CV-03074-CMA pending in the U.S. District Court for the District of Colorado.

e.      "Defendants" means each Defendant named in the Third Amended Complaint (ECF No. 983).

f.      "Class Settlement Amount" means Sixty-Five Million and Five Hundred Thousand United States Dollars ($65,500,000.00), paid by or on behalf of the Defendants in connection with this Agreement.

g.      "Defendants' Counsel" means, with respect to each Defendant as indicated below, the law firms or lawyers:

          i.         Agent Au Pair, API, and Go Au Pair: Wheeler Trigg O'Donnell LLP.

          ii.        AIFS: Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Gibson, Dunn & Crutcher LLP.

          iii.      APF: Fisher & Phillips, LLP.

          iv.      AuPairCare: Gordon & Rees LLP.

          v.        Cultural Care: Choate, Hall & Stewart LLP and Lewis Roca Rothgerber Christie LLP.

          vi.      Cultural Homestay: Holland & Hart LLP.

          vii.      EurAuPair: Brownstein Hyatt Farber Schreck, LLP.

          viii.     Expert AuPair: Bogdan Enica, Esq.

          ix.      GreatAuPair: Armstrong Teasdale LLP.

          x.        InterExchange: Sherman & Howard L.L.C.

          xi.      ProAuPair and TIAPE: Nixon Shefrin Hensen Ogburn, P.C.

          xii.      USAuPair: Kelly & Walker LLC.

h.      "Effective Date" means the first date when all of the conditions set forth below in Paragraph 34 below have occurred.

i.      "Final," with respect to a court order, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of

any proceeding on certiorari to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for certiorari from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought).

j.      "Final Approval Hearing" or "Fairness Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

k.      "Litigation" means the above-captioned action, 1:14-cv-03074-CMA, pending in the U.S. District Court for the District of Colorado.

l.      "Litigation Expenses" means the reasonable costs and expenses incurred by counsel for Plaintiffs in connection with commencing and prosecuting the Litigation for which Plaintiffs' counsel intend to apply to the Court for payment from the QSF.

m.      "Notice" means the Notice of Proposed Settlement of Class and Collective Action, Fairness Hearing, and Right to Appear (substantially in the form attached hereto as Exhibit A), which is to be sent to Settlement Class Members.

n.      "Notice and Administration Expenses" means the costs, fees, and expenses that are incurred in connection with providing notice to the Settlement Class, in connection with the QSF, in connection with administering the

Settlement, and in providing notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

o.      "Order and Final Judgment" or "Judgment" means the order of final judgment to be entered in the Action, substantially in the form annexed hereto as Exhibit C.

p.      "Parties" means (i) Plaintiffs on behalf of themselves and each Settlement Class Member and (ii) the Defendants.

q.      "Person" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, as well as each of their spouses, domestic partners, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assigns.

r.      "Plaintiffs" means Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Sarah Carolina Azuela Rascon, Laura Mejia Jimenez, Juliane Harning, Nicole Mapledoram, Cathy Caramelo, Linda Elizabeth, and Camila Gabriela Perez Reyes.

s.      "Plaintiffs' Counsel" or "Class Counsel" means Boies Schiller Flexner LLP and Towards Justice.

t.      "Plan of Allocation" means the proposed plan for allocating funds from the QSF to Settlement Class Members, which, subject to approval of the Court, shall be substantially in the form described in the Notice.

u.      "Preliminary Approval Order" means the order (substantially in the form annexed hereto as Exhibit B) to be entered by the Court, preliminarily approving the Settlement, approving dissemination of the Notice, and scheduling the Final Approval Hearing.

v.      "Qualified Settlement Fund" or "QSF" has the meaning set forth in Paragraph 13.

w.      "Released Claims" means all claims released pursuant to Section III below.

x.      "Released Parties" has the meaning set forth in Paragraph 4.

y.      "Releasing Parties" has the meaning set forth in Paragraph 3.

z.      "Settlement Class" means all of the Classes identified in Paragraph 2, considered collectively.

aa.      "Settlement Class Member" means any Person that is a member of the Settlement Class.

bb.      "Taxes" means any taxes due and payable with respect to the income earned by the QSF, including any interest or penalties thereon.

cc.      "Tax Expenses" means any expenses and costs incurred in connection with the payment of Taxes (including, without limitation, expenses of tax attorneys, accountants, and other advisors and expenses relating to the filing or failure to file all necessary or advisable tax returns).

dd.     "Training Classes" means the Florida Training Subclass, the New York Training Subclass, and the New Jersey Training Subclass as those classes were defined in the Order Granting in Part and Denying in Part Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel (ECF No. 828). For avoidance of doubt, the Training Classes are a subset of the Settlement Class.

## II.     Settlement Class and Subclass Definitions

2.     The Settlement Class shall be comprised of the Classes already identified and defined by the existing Court Orders.  For avoidance of doubt, those Classes are comprised of the eleven classes or subclasses certified in the Second Amended Order Granting Motion for Conditional Collective Action Certification (ECF No. 569), and the eighteen Classes or Subclasses certified in the Order Granting in Part and Denying in Part Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel (ECF No. 828), and subject to Court's Order on Statute of Limitations (ECF No. 1176).

## III.     Releases

### A.     Discharge of All Released Claims

3.     Effective upon the Effective Date, Released Parties, as defined in the next paragraph, shall be released and forever discharged by all Settlement Class Members (the "Releasing Parties") from any and all causes of action, judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each a "Claim"), known or unknown, arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct,

representations, omissions, circumstances or other matters referenced in the Litigation, whether any such Claim was or could have been asserted by any Releasing Party on her or his own behalf or on behalf of other Persons.

4.      Released Parties means the Defendants in this action, together with their respective parents, subsidiaries, officers, directors, employees, contractors, shareholders, attorneys, agents, representatives, insurers, host families, and affiliates, expressly, but without limitation, including recruiting affiliates named and unnamed in the course of this Litigation for those Defendants who use the services of others to identify, recruit and/or screen au pair candidates.  Notwithstanding any other provision in this Agreement, however, this Release shall not extend to claims or potential claims that any au pair may possess against her or his host family or families if such claims are (i) unrelated to the Claims asserted in the Litigation or (ii) unrelated to host family obligations under the federal Au Pair Program requirements, e.g., compensation, hours, education, or services required.

**B.      Release of Unknown Claims**

5.      The Releasing Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true, with respect to the claims being released pursuant to this Agreement.  Nevertheless, it is the intention of the Releasing Parties in executing this Agreement that they fully, finally, and forever settle and release all such matters, and all claims relating thereto, which exist or might have existed (whether or not previously or currently asserted in any action or proceeding) against the Released Parties.  The Releasing Parties voluntarily waive and relinquish

any and all rights to seek relief for unknown, unsuspected, or unanticipated claims or damages which the Releasing Parties may have under any applicable statutes or principles of law that limit the release of unknown, unsuspected, or unanticipated claims or damages, including but not limited to California Civil Code § 1542, which, as of December 31, 2018, provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

and, as of January 1, 2019, is amended to read as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

6.      By executing this Agreement, the Releasing Parties acknowledge that (1) they are each represented by counsel; (2) they each have read and fully understand the provisions of California Civil Code § 1542; and (3) they each have been specifically advised by his or her counsel of the consequences of the above waiver and this Agreement generally.

### C.      Claims Relating to Settlement

7.      Notwithstanding any of the foregoing or any other provision, none of the Parties release any claims relating to the enforcement of this Agreement.

### IV.    Settlement Consideration

### A.      Monetary Payment

8.      The total settlement payment shall be in the amount of the Class Settlement Amount.  The Class Settlement Amount shall constitute the only payment

required by Defendants pursuant to the Settlement.  No further payment from Defendants shall be required with respect to the Claims, including for Plaintiffs' attorneys' fees or costs, for administration of the QSF, for the provision and administration of notice, or for any other purpose.

9.      Within fourteen (14) days after the Effective Date, Plaintiffs' Counsel shall provide Defendants' Counsel with wiring instructions and a Form W-9 for the QSF, and any other documents reasonably required by the Defendants to process the funding of their share of the Class Settlement Amount.  Defendants will pay their respective shares of the Class Settlement Amount, by wire transfer or otherwise, within thirty-five (35) days after the Effective Date.

10.      If any Defendant fails to meet their obligations under Paragraph 9, above, in full, Plaintiffs shall have the right of termination set forth in Paragraph 30, below, and to be returned to the pre-agreement status quo.  Under no circumstances shall the remaining Defendants be deemed responsible for paying the share of the Defendant or Defendants who have not satisfied their obligations and made payment in full.

11.      Other than the obligation of Defendants to pay or cause to be paid the Class Settlement Amount into the QSF, neither the Defendants nor any other of the Released Parties shall have any obligation to make any other payment pursuant to this Agreement.  Any interest earned on the Class Settlement Amount after having been paid into the QSF shall be for the benefit of the Settlement Class, except as set forth in Paragraph 14, below.

**B.      Prospective Commitment**

12.      In addition to the monetary payment described above, in compromise of this lawsuit Defendants further agree that, within thirty (30) days after the Effective Date:

a.      Each Defendant shall include a statement in an electronic or hard-copy communication to each host family upon enrollment in the federal au pair program sponsored by the Defendant to the effect that host families and au pairs are free to agree to compensation higher than the legally applicable minimum;

b.      each Defendant shall include where the compensation is referenced on its website, in its marketing materials, and/or in its contract with each new or returning host family, an express statement to the effect that host families and au pairs are free to agree to compensation higher than the legally applicable minimum;

c.      each Defendant that interacts directly with au pairs in their native or non-U.S. countries before their arrival in the United States shall include in an electronic or hard-copy communication to each au pair, in English and in the native language, or one of the native languages, of the au pair's country of residence, an express statement to the effect that host families and au pairs are free to agree to compensation higher than the legally applicable minimum; and

d.      each Defendant that has no direct communications with au pairs in their native or non-U.S. countries before their arrival in the United States shall request in an electronic or hard-copy communication that the person or entity that recruits au pairs on the Defendant's behalf include in an electronic or hard-copy communication to each au pair, in English and in the native language, or one of

the native languages, of the au pair's country of residence, an express statement to the effect that host families and au pairs are free to agree to compensation higher than the legally applicable minimum.

**V.    The Qualified Settlement Fund**

13.    The Parties agree that at the time set forth in Paragraph 9, each Defendant shall pay its agreed upon share of the Class Settlement Amount into a Qualified Settlement Fund ("QSF") within the meaning of Treasury Regulation § 1.468B-1, established by Plaintiffs' Counsel pursuant to an order of the Court, which a Claims Administrator (selected by Plaintiffs' Counsel) will be solely responsible for maintaining and administering, including with respect to all distributions.  The Claims Administrator shall be classified as the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3) and shall be responsible, on behalf of the QSF, for filing any and all required federal, state, and local tax returns; for filing all required federal, state, and local information returns; and for ensuring compliance with all tax payment, notice, and withholding requirements with respect to the Class Settlement Amount.  For the avoidance of doubt, the Released Parties will not be responsible for any payment, reporting, or withholding of taxes with respect to the Class Settlement Amount, and any taxes due shall be the responsibility of the Releasing Parties and the QSF.  The Parties agree to take all steps necessary to ensure that the QSF established by the Court will qualify as, and remain, a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and Treasury Regulations Sections 1.468B-1 through 1.468B-5 promulgated thereunder, and effectuate its intended purpose.  All fees and costs related to the creation and administration of the QSF shall be paid from the QSF, and no additional funds shall be required of the Released Parties.

14.     The QSF shall be used to pay:  (i) Taxes and Tax Expenses; (ii) Notice and Administration Expenses; (iii) any attorneys' fees and Litigation Expenses awarded by the Court; (iv) any other fees, costs, or expenses approved by the Court; and (v) amounts paid to Settlement Class Members.  Funds shall be distributed to Settlement Class Members as provided below and in the Plan of Allocation approved by the Court. All costs and expenses incurred by or on behalf of Plaintiffs and members of the Settlement Class shall be paid from the QSF, as approved by the Court or provided for in this Agreement.  No Released Party shall bear any further or additional responsibility to the Settlement Class or their counsel for any fees, costs or expenses beyond payment of the Class Settlement Amount.

**VI.     Attorneys' Fees and Litigation Expenses**

15.     Plaintiffs' Counsel intends to seek 35% of the Class Settlement Amount as attorneys' fee and also seek payment of litigation expenses from the QSF.  Defendants take no position with respect to this request.

**VII.    Plan of Allocation**

16.     The Plan of Allocation shall be as ordered by the Court.

17.     Defendants take no position with respect to the Plan of Allocation, and will not oppose the requested allocation.

18.     As used in this Section VII, the following terms shall have the following meanings:

a.     "Claim Form" shall mean a Court-approved form sent with the Notice that allows Settlement Class Members to request monetary participation in the settlement.

b.      "Claiming Class Member" shall mean any Settlement Class Member that submits a valid Claim Form.

c.      "Participation Bonuses" shall mean $5,000 for each Plaintiff, $1,000 for each Settlement Class Member who was deposed, and $100 for each Settlement Class Member who opted-in to a class certified in the Second Amended Order Granting Motion for Conditional Collective Action Certification (ECF No. 569).  In the event that a Settlement Class Member qualifies for multiple Participation Bonuses, that Settlement Class Member shall be entitled to the largest of the Participation Bonuses for which they qualify.

d.      "Primary Claim" shall mean a Claim for the period November 13, 2010, through the end of the class period belonging to a Claiming Class Member.

e.      "State Claim Class A" shall mean a Claim for the period prior to November 13, 2010, and for an au pair placement that occurred in Illinois, Michigan, New York, New Jersey, or Pennsylvania, belonging to a Claiming Class Member.

f.      "State Claim Class B" shall mean a Claim for the period prior to November 13, 2010, and for an au pair placement that occurred in any state other than those included in State Claim Class A, belonging to a Claiming Class Member.

g.      "Total Claim" shall mean the amount that a Claiming Class Member would receive pursuant to the Plan of Allocation prior to any weighting or pro rata distribution.  Plaintiffs shall seek Court approval for the formula used to calculate a Claiming Class Member's Total Claim, which formula Plaintiffs have shared

with Defendants and with respect to which Defendants have agreed to take no position. By agreeing to take no position with respect to the use of the formula for the purposes of this settlement only, Defendants do not thereby agree that the formula is generally appropriate for calculating au pair compensation.

h. "Training Claim" shall mean a Claim belonging to a Claiming Class Member who is also a member of the Training Classes. For Claiming Class Members who are members of a Training Class and also a member of another class or sub-class included in the Settlement Class, a Training Claim shall refer only to those claims they have as a result of their membership in a Training Class.

i. "Void Date" shall mean a date established by the Claims Administrator as of which any check issued but not cashed shall be void. The Void Date shall be not earlier than 180 days after the issue date of the check.

19. Monies from the QSF will be distributed first to pay costs, fees, or expenses chargeable to the QSF pursuant to this Agreement.

20. Monies from the QSF will be distributed second to pay Participation Bonuses.

21. Monies from the QSF will be distributed third to Settlement Class Members according to the following principles:

a. The Claims Administrator will be responsible for calculating the Total Claim for each Claiming Class Member.

b. The Claims Administrator will weight the Total Claim for each Claiming Class Member as 100% for Primary Claims, 80% for Training Claims,

40% for State Claims Class A, and 20% for State Claims Class B.  Based on this weighting, the Class Administrator will distribute funds to Claiming Class Members on a pro-rata basis.

       c.     To the extent that any funds remain in the QSF after the Void Date (from un-cashed checks or otherwise), such remaining funds shall be paid to an appropriate non-profit that is agreed upon by the Parties as a cy pres recipient.

## VIII.   Objections

22.     Any Settlement Class Member wishing to object to the Agreement may do so only according to the process ordered by the Court.

23.     Plaintiffs' Counsel may communicate with Settlement Class Members regarding any objection and may advise the Court of any Settlement Class Member that has communicated that he or she wishes to withdraw their objection.

24.     The Parties agree not to file, and to oppose, any objection to this Agreement.

## IX.   Request for Approval from Court

25.     Plaintiffs' counsel shall file this Agreement with the Court within two (2) business days after completion of its execution.  No later than five (5) business days after the Agreement is filed with the Court, Plaintiffs, by and through counsel, shall move for the Court's approval of the Preliminary Approval Order, which shall be substantially in the form attached hereto as Exhibit B. The Preliminary Approval Order will, *inter alia*, set the date for a Fairness Hearing and prescribe the method for giving notice of the Settlement to the Settlement Class.

26.     The Parties agree that au pairs who have already received an opportunity to opt-out do not need to be afforded a second opportunity.

27.     Au pairs who were sponsored by AuPairCare, and certain au pairs whose placements occurred in 2017 and 2018 (the "Opt-Out Au Pairs") did not receive an opportunity to opt-out.  The Parties agree that an opt-out period is necessary with respect to the Opt-Out Au Pairs.  The Notice issued to Opt-Out Au Pairs shall differ from the Notice sent to all other Settlement Class Members in that, in addition to the language sent in the Notice to other Settlement Class Members, it will offer the Opt-Out Au Pairs an opportunity to opt-out of the relevant Classes (including Subclasses) within ninety (90) days of sending the Notice.

28.     Not later than ten (10) days after the Settlement Agreement is filed in court, the Claims Administrator shall in consultation with Defendants' counsel provide notice of the proposed class action settlement to the appropriate state officials (i.e. each state attorney general) and the Attorney General of the United States pursuant to 28 U.S.C. § 1715, and the costs of such notice shall be paid from the QSF.

29.     The Settlement is expressly conditioned upon, among other things, the entry of a Judgment substantially in the form annexed hereto as Exhibit C. Plaintiffs, by and through counsel, shall move for entry of the Judgment, including, among other things, the releases described herein.

## X.     WAIVER OR TERMINATION

30.     Plaintiffs or Defendants shall have the right to terminate the Settlement in its entirety by providing written notice of their election to do so ("Termination Notice"), through counsel, to counsel for all other Parties hereto, within fourteen (14) calendar days of: (i) the Court's refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's refusal to enter the Judgment in any material respect or an alternative judgment acceptable to the Parties with respect to the Settlement; or (iii) the

date upon which the Judgment or Alternative Judgment is vacated, modified, or reversed in any material respect by a Final order of the United States Court of Appeals or the Supreme Court of the United States. Plaintiffs shall have the right to terminate the Settlement in its entirety by providing Termination Notice through counsel, to counsel for all other Parties hereto, within fourteen (14) calendar days of Defendants' failure to satisfy their obligations in Section IV.A, above.  In the event the Settlement is terminated, the provisions of Paragraphs 32 and 33 shall survive termination.  No Party shall have the right to terminate the Settlement due to any decision, ruling, or order regarding an application for attorneys' fees, Litigation Expenses, or the Plan of Allocation.

31.    If an option to withdraw from and terminate this Settlement arises under Paragraph 30 above, neither Plaintiffs nor Defendants will be required for any reason or under any circumstance to exercise that option.

32.    Except as otherwise provided herein, in the event the Settlement is terminated in its entirety, the Settlement will be without prejudice, and none of its terms shall be effective or enforceable, except as specifically provided herein.  Plaintiffs and Defendants shall be deemed to have reverted to their respective status in the Litigation as of January 3, 2019, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In such event, the fact and terms of the Term Sheet, this Agreement, or any aspect of the negotiations leading to this Agreement, shall not be admissible in this or other litigation and shall not be used by Plaintiffs against Defendants in any court filings, depositions, at trial, or otherwise.

33.     In the event the Settlement is terminated in its entirety, or if the Effective Date is barred from occurring, pursuant to the provisions above, any portion of the Class Settlement Amount that already has been paid by or on behalf of the Defendants, including any funds disbursed in payment of attorneys' fees, and/or Litigation Expenses, together with any interest earnings or appreciation thereon, less any Taxes and Tax Expenses paid or due with respect to such income, and less Notice and Administration Expenses actually and reasonably incurred and paid or payable from the QSF, shall be returned to Defendants within fourteen (14) business days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Plaintiffs' Counsel. At the request of Defendants' Counsel, the Plaintiffs' Counsel and/or the Claims Administrator shall apply for any tax refund owed on the amounts in the QSF and pay the proceeds, after any deduction of any fees or expenses actually and reasonably incurred in connection with such application(s), of such refund to the Person(s) that made the deposits or as otherwise directed.

## XI.    EFFECTIVE DATE OF SETTLEMENT

34.     The Effective Date of the Settlement shall be the first date when all of the following shall have occurred:

a.      entry of the Preliminary Approval Order;

b.      approval by the Court of the Settlement following notice to the Class and a hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure;

c.      entry of the Judgment, substantially in the form annexed hereto as Exhibit C, or entry of any Alternative Judgment; and

d.      the Judgment or any Alternative Judgment has become Final.

## XII.   NO ADMISSION OF WRONGDOING

35.     Except as provided in Paragraph 7 above, this Agreement and any negotiations, proceedings, or agreements relating to this Agreement, the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, shall not be offered or received against the Parties or Released Parties and their counsel for any purpose, and in particular:

a.      do not constitute, and shall not be offered or received against any Parties or Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Released Parties with respect to the truth of any fact alleged by Plaintiffs or any other Settlement Class Member or the validity of any Claim that has been or could have been asserted in the Litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault, or wrongdoing of the Released Parties;

b.      do not constitute, and shall not be offered or received against any Parties or Released Parties as evidence of a presumption, concession, or admission of any fault, misstatement, or omission with respect to any statement or written document approved or made by Released Parties, or against the Plaintiffs, or any other Settlement Class Member as evidence of any infirmity in the Claims or defenses that have been or could have been asserted in the Litigation;

c.      do not constitute, and shall not be offered or received against any Parties or Released Parties, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or

wrongdoing, or in any way referred to for any other reason against Released Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; and

      d.     do not constitute, and shall not be construed against any Parties or Released Parties, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

## XIII.   MISCELLANEOUS PROVISIONS

36.    The Parties agree that no Party was or is a "prevailing party" in the Litigation.

37.    In light of the several years and millions of pages of discovery in this matter, the Parties agree that this Settlement is not subject to confirmatory discovery.

38.    All of the exhibits attached to this Agreement are material and integral parts hereof and are fully incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Agreement and the terms of any exhibit attached hereto, the terms of this Agreement shall prevail.

39.    This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel or a representative for all of the Parties (or their successors-in-interest) materially and adversely affected by any such modification, amendment, or waiver.

40.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

41.     The Parties agree that the terms of the Settlement were negotiated at arm's length, in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

42.     The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

43.     This Agreement and its exhibits constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.

44.     This Agreement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

45.     Each person signing this Agreement represents that such person has authority to sign this Agreement on behalf of Plaintiffs or Defendants, as the case may be, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms.

46.     By entering into the Settlement, Plaintiffs represent and warrant that they have not assigned, hypothecated, conveyed, transferred, or otherwise granted or given any interest in the Released Claims, or any of them, to any other Person.

47.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party may merge, consolidate, or reorganize.

48.     If any Party is required to give notice to the other Parties under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, e-mail, facsimile, or in person to each of the signatories below.

49.     The administration, consummation, and enforcement of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders, providing for awards of attorneys' fees, and payment of Litigation Expenses, and enforcing the terms of this Agreement and the Settlement.

50.     The construction, interpretation, operation, effect, and validity of this Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

51.     This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of January __, 2019.

Executed by the Parties on the dates indicated below.

FOR PLAINTIFFS AND THE CLASS

Date: January 9 , 2019       By: _____

                             Name: _____

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

Counsel for the Plaintiffs and the Settlement Class

AGENT AU PAIR, INC.

Date: January ___, 2019      By:    _____

                             Name: _____

                             Title: _____

                             AMERICAN CULTURAL EXCHANGE, LLC, d/b/a
                             GO AU PAIR
Date: January ___, 2019      By:    _____

                             Name: _____

                             Title: _____

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of January ___, 2019.

Executed by the Parties on the dates indicated below.

FOR PLAINTIFFS AND THE CLASS

Date: January ___, 2019          By: _____

                                 Name: _____

                                 BOIES SCHILLER FLEXNER LLP
                                 575 Lexington Avenue
                                 New York, New York 10022
                                 Tel: (212) 446-2300
                                 Fax: (212) 446-2350

                                 Counsel for the Plaintiffs and the Settlement Class

                                 AGENT AU PAIR, INC.

Date: January _4_, 2019          By: _____

                                 Name: _Michael Di Mauro_____

                                 Title: _Chief Executive Officer_____

                                 AMERICAN CULTURAL EXCHANGE, LLC, d/b/a
                                 GO AU PAIR
Date: January ___, 2019          By: _____

                                 Name: _____

                                 Title: _____

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of January __, 2019.

Executed by the Parties on the dates indicated below.

FOR PLAINTIFFS AND THE CLASS

Date: January ___, 2019

By: _____

Name:_____

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

Counsel for the Plaintiffs and the Settlement Class

AGENT AU PAIR, INC.

Date: January ___, 2019

By: _____

Name:_____

Title: _____

AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GO AU PAIR

Date: January *5*, 2019

By: *A. William Kepler III*

Name: *A. William Kepler III*

Title: *LLC Manager*

GO AU PAIR OPERATIONS, LLC

Date: January _5_, 2019

By: _A. William Kapler III_

Name: _A. William Kapler III_

Title: _LLC Manager_


AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. D/B/A AU PAIR IN AMERICA

Date: January ___, 2019

By: _____

Name: _____

Title: _____


AU PAIR INTERNATIONAL, INC.

Date: January ___, 2019

By: _____

Name: _____

Title: _____


APF GLOBAL EXCHANGE, NFP D/B/A AU PAIR FOUNDATION

Date: January ___, 2019

By: _____

Name: _____

Title: _____

GO AU PAIR OPERATIONS, LLC

Date: January ___, 2019

By: _____

Name: _____

Title: _____


AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. D/B/A AU PAIR IN AMERICA

Date: January 4 , 2019

By: _____

Name: William Gertz

Title: Chairman


AU PAIR INTERNATIONAL, INC.

Date: January ___, 2019

By: _____

Name: _____

Title: _____


APF GLOBAL EXCHANGE, NFP D/B/A AU PAIR FOUNDATION

Date: January ___, 2019

By: _____

Name: _____

Title: _____

33

GO AU PAIR OPERATIONS, LLC

Date: January ___, 2019     By: _____

Name: _____

Title: _____


AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. D/B/A AU PAIR IN AMERICA

Date: January ___, 2019     By: _____

Name: _____

Title: _____


AU PAIR INTERNATIONAL, INC.

Date: January 7, 2019     By: _____

Name: _____Stephen B Lehan____

Title: _____President____


APF GLOBAL EXCHANGE, NFP D/B/A AU PAIR FOUNDATION

Date: January ___, 2019     By: _____

Name: _____

Title: _____

Date: January ___, 2019 By: _____

       Name:_____

       Title: _____


       AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. D/B/A AU PAIR IN AMERICA

Date: January ___, 2019 By: _____

       Name:_____

       Title: _____


       AU PAIR INTERNATIONAL, INC.

Date: January ___, 2019 By: _____

       Name:_____

       Title: _____


       APF GLOBAL EXCHANGE, NFP D/B/A AU PAIR FOUNDATION

Date: January 4, 2019 By: _Ellen B Hbgc_____

       Name:_Ellen B HOGGARD_____

       Title: _President_____


       AUPAIRCARE, INC.

AUPAIRCARE, INC.

Date: January _H_, 2019

By: _____

Name: _____ JOHN F. WILHELM

Title: ___ CHAIRMAN _____


CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR

Date: January ___, 2019

By: _____

Name: _____

Title: _____


CULTURAL HOMESTAY INTERNATIONAL

Date: January ___, 2019

By: _____

Name: _____

Title: _____


EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS

Date: January ___, 2019

By: _____

Name: _____

Title: _____

AUPAIRCARE, INC.

Date: January ___, 2019          By:      _____

                                 Name: _____

                                 Title:   _____


CULTURAL CARE, INC. D/B/A CULTURAL CARE
AU PAIR

Date: January 4, 2019            By:      _____

                                 Name: _GO1AN T RANNEFORS_

                                 Title:  _DIRECTOR_


CULTURAL HOMESTAY INTERNATIONAL

Date: January ___, 2019          By:      _____

                                 Name: _____

                                 Title:   _____


EURAUPAIR INTERCULTURAL CHILD CARE
PROGRAMS

Date: January ___, 2019          By:      _____

                                 Name: _____

                                 Title:   _____

34

AUPAIRCARE, INC.

Date: January ___, 2019        By:        _____

                               Name:_____

                               Title:     _____


CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR

Date: January ___, 2019        By:        _____

                               Name:_____

                               Title:     _____


CULTURAL HOMESTAY INTERNATIONAL

Date: January _4_, 2019        By:        _____

                               Name:  Thomas Areton

                               Title:     Executive Director


EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS

Date: January ___, 2019        By:        _____

                               Name:_____

                               Title:     _____

AUPAIRCARE, INC.

Date: January \_\_\_, 2019          By:     _____

                                 Name:_____

                                 Title:  _____

CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR

Date: January \_\_\_, 2019          By:     _____

                                 Name:_____

                                 Title:  _____

CULTURAL HOMESTAY INTERNATIONAL

Date: January \_\_\_, 2019          By:     _____

                                 Name:_____

                                 Title:  _____

EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS

Date: January _4_, 2019          By:     _Celia Parker_

                                 Name: _CELIA PARKER_

                                 Title: _Chief Legal & Compliance_
                                        _EA Executive Committee_

34

EXPERT GROUP INTERNATIONAL, INC. D/B/A
EXPERT AU PAIR

Date: January ___7___, 2019    By: _____

Name: ___MARK   GAULTER_____

Title: ___CEO_____


GREAT AUPAIR, LLC

Date: January ___, 2019    By: _____

Name: _____

Title: _____


INTEREXCHANGE, INC.

Date: January ___, 2019    By: _____

Name: _____

Title: _____


A.P.EX. AMERICAN PROFESSIONAL EXCHANGE,
LLC D/B/A PROAUPAIR

Date: January ___, 2019    By: _____

Name: _____

Title: _____

EXPERT GROUP INTERNATIONAL, INC. D/B/A
EXPERT AU PAIR

Date: January ____, 2019          By:      _____

                                  Name:_____

                                  Title:   _____


GREAT AUPAIR, LLC

Date: January 4, 2019             By:      _____

                                  Name:   SHANNON PITTS

                                  Title:   CEO


INTEREXCHANGE, INC.

Date: January ____, 2019          By:      _____

                                  Name:_____

                                  Title:   _____


A.P.EX. AMERICAN PROFESSIONAL EXCHANGE,
LLC D/B/A PROAUPAIR

Date: January ____, 2019          By:      _____

                                  Name:_____

                                  Title:   _____

35

EXPERT GROUP INTERNATIONAL, INC. D/B/A
EXPERT AU PAIR

Date: January ___, 2019    By:     _____

Name:_____

Title:   _____


GREAT AUPAIR, LLC

Date: January ___, 2019    By:     _____

Name:_____

Title:   _____


INTEREXCHANGE, INC.

Date: January 4TH, 2019    By:     _____

Name: _CHRISTINE LA MONICA-LUNN_

Title: _PRESIDENT + CEO_


A.P.EX. AMERICAN PROFESSIONAL EXCHANGE,
LLC D/B/A PROAUPAIR

Date: January ___, 2019    By:     _____

Name:_____

Title:   _____

35

EXPERT GROUP INTERNATIONAL, INC. D/B/A EXPERT AU PAIR

Date: January ___, 2019

By: _____

Name: _____

Title: _____


GREAT AUPAIR, LLC

Date: January ___, 2019

By: _____

Name: _____

Title: _____


INTEREXCHANGE, INC.

Date: January ___, 2019

By: _____

Name: _____

Title: _____


A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC D/B/A PROAUPAIR

Date: January 5 ___, 2019

By: *Susan Asay* _____

Name: Susan Asay _____

Title: CEO _____

35

20/20 CARE EXCHANGE, INC. D/B/A THE
INTERNATIONAL AU PAIR EXCHANGE

Date: January __5__, 2019          By: _Susan Asay_____

Name:__Susan Asay_____

Title:___CEO_____

USAUPAIR, INC.

Date: January ___, 2019          By: _____

Name:_____

Title: _____

20/20 CARE EXCHANGE, INC. D/B/A THE
INTERNATIONAL AU PAIR EXCHANGE

Date: January ___, 2019          By: _____

                                 Name: _____

                                 Title: _____

                                 USAUPAIR, INC.

Date: January 6, 2019            By: _____

                                 Name: Helene Young

                                 Title: President

36