# Exhibit 1-A

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

## NOTICE OF PROPOSED SETTLEMENT OF CLASS AND COLLECTIVE ACTION, FAIRNESS HEARING, AND RIGHT TO APPEAR

**If you were an au pair on a J-1 visa in the United States between Jan. 1, 2009, and October 28, 2018, you could get a payment from a settlement.**

*A Court authorized this notice.  This is **not** a solicitation from a lawyer.*

- The settlement resolves a lawsuit au pairs filed against U.S. State Department designated sponsors of the J-1 au pair program (the "Defendants"), alleging various claims against those Defendants arising from the weekly stipend hosting families pay to au pairs.  The Court has not ruled that the Defendants did anything wrong or violated any laws.

- The settlement creates a **$65,500,000** fund to pay individual claims from au pairs, expenses incurred in advancing this lawsuit, and the court-appointed lawyers for the au pairs ("Class Counsel").

- The settlement also requires that, going forward, the Defendants will clarify in a notice to au pairs and host families that the weekly au pair stipend is a minimum payment requirement.

- The court-appointed lawyers for the au pairs, who have handled all aspects of this case and have not been paid for their work, will ask the Court for 35% of the settlement for their fees and also for payment of litigation expenses.

| **YOUR LEGAL RIGHTS ARE AFFECTED NOW, AND YOU HAVE A CHOICE TO MAKE:** | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment.  Release your claims. |
| **[EXCLUDE YOURSELF** | Get no payment.  Retain your claims.] |
| **OBJECT** | Write to the Court about why you do not agree with the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment.  Release your claims. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.  **Please read this Notice carefully.**

- The Court still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.

| WHAT THIS NOTICE CONTAINS |
|---|

**Basic Information** ................................................................................................................... 3

    1.  Why did I get this notice? ............................................................................................. 3

    2.  What is this lawsuit about? ............................................................................................ 3

    3.  What is a class action and who is involved? ................................................................. 3

    4.  What is a collective action and who is involved? ......................................................... 4

    5.  Am I a member of the Class Action or the Collective Action? .................................... 4

**The Settlement** ......................................................................................................................... 5

    6.  Why is there a Settlement? ............................................................................................ 5

    7.  Am I part of Settlement? ............................................................................................... 5

    8.  Are any au pairs not included in the Settlement? ......................................................... 6

    9.  What does the Settlement provide? ............................................................................... 7

    10.  How will the Settlement funds be distributed? ............................................................ 7

    11.  How can I get money from the Settlement? ................................................................ 8

    12.  When will I get my Settlement payment? .................................................................... 8

    13.  Do I have to pay taxes on the money I receive from the Settlement? ......................... 9

**Your Rights and Options** ........................................................................................................ 9

    14.  What are my options for participating in the Settlement? .......................................... 9

    15.  What am I giving up if I submit a Claim Form? .......................................................... 9

    16.  What happens if I do nothing at all? ............................................................................ 9

    [17.  How do I exclude myself from the Settlement? ....................................................... 10

    17 [18].  How do I object to the Settlement? .................................................................. 10

    [19.  What is the difference between objecting and excluding? ...................................... 11

**The Lawyers Representing You** ......................................................................................... 11

    18 [20].  Who represents me in this case? ....................................................................... 11

    19 [21].  Should I get my own lawyer? ........................................................................... 11

    20 [22].  How will the lawyers be paid? .......................................................................... 11

**The Fairness Hearing** .......................................................................................................... 12

    21 [23].  When and where will the Court decide whether to approve the Settlement? .... 12

    22 [24].  Do I have to come to the Fairness Hearing? ..................................................... 12

**Getting More Information** .................................................................................................. 12

    23 [25].  Are more details available? ............................................................................... 12

# BASIC INFORMATION

### 1. Why did I get this notice?

This Notice is to tell you about a settlement in the class and collective action lawsuit involving sponsoring organizations of the J-1 au pair program (the "Defendants" listed below in Question 3) relating to the weekly stipend hosting families pay to au pairs. This notice is being sent to you because you have previously joined the Fair Labor Standards Act ("FLSA") claims in this case, or because you are a member of one or more of the classes certified by the Court. Judge Christine Arguello of the United States District Court for the District of Colorado is overseeing this case. The case is known as *Beltran, et al. v. Interexchange, et al.*, Case No. 14-cv-3074.

### 2. What is this lawsuit about?

As part of the J-1 au pair program, certain organizations (the "Defendants" listed below in question 3) are designated by the U.S. State Department as sponsors of the program, which allows au pairs to live and work in the United States on J-1 visas. The au pairs allege that those Defendants misrepresented the au pair stipend as a fixed amount, conspired to fix the au pair stipend at $195.75 per week, and that they violated federal, state, and local laws in doing so. The Defendants deny that they or the hosting families did anything wrong. The Court has not ruled that the Defendants committed any wrongdoing or violated any law.

You can read the Plaintiffs' Complaint at www.website.com.

This lawsuit has two components. **First**, this lawsuit is a "Class Action" under Federal Rule of Civil Procedure 23, in which numerous classes of au pairs assert federal and state claims against certain of the Defendants. **Second**, this lawsuit is a "Collective Action" under the FLSA, in which the au pairs allege that certain Defendants violated the FLSA by failing to pay them the appropriate minimum wage and for overtime. The differences between the Class Action and Collective Action are discussed further below.

### 3. What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" sue on behalf of all other people who have similar claims. Together they are the "Class Members." A class action resolves the claims for all Class Members, except for those who exclude themselves. The Court has appointed eleven current and former au pairs as Class Representatives. Together with the Class Members, they are also called the Plaintiffs. They sued the following Defendants:

- InterExchange, Inc.
- GreatAuPair, LLC
- AuPairCare Inc.
- Agent Au Pair
- Au Pair International, Inc.
- USAuPair, Inc.
- Expert Group International Inc., d/b/a Expert AuPair
- EurAuPair Intercultural Child Care Programs
- Cultural Homestay International
- American Institute for Foreign Study, Inc., d/b/a Au Pair in

- Cultural Care, Inc., d/b/a Cultural Care Au Pair
- APF Global Exchange NFP, d/b/a Aupair Foundation
- America
- 20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange
- A.P.EX. American Professional Exchange LLC, d/b/a ProAuPair
- American Cultural Exchange LLC d/b/a Go Au Pair and Go Au Pair Operations, LLC (together, "Go Au Pair").

### 4. What is a collective action and who is involved?

A collective action is similar to a class action in many respects: individuals with similar claims pursue those claims collectively against one of more defendants, through a class representative. However, the FLSA requires that individuals wishing to participate in a collective action "opt-in" to the class. In this case, the Court has conditionally certified eleven FLSA classes against six Defendants (the "FLSA Defendants") for alleged minimum wage and overtime violations which the Defendants deny: (1) AuPairCare Inc.; (2) American Institute for Foreign Study, Inc., d/b/a Au Pair in America; (3) Cultural Care, Inc., d/b/a Cultural Care Au Pair; (4) Expert Group International Inc., d/b/a Expert AuPair; (5) American Cultural Exchange LLC d/b/a Go Au Pair and Go Au Pair Operations, LLC (together, "Go Au Pair"); and (6) InterExchange, Inc. The Court has appointed eight current and former au pairs as representatives of the FLSA classes. The Court has not ruled on final certification of the FLSA classes.

Au pairs who were sponsored by the FLSA Defendants were separately provided notice of the FLSA Collective Action, and had the opportunity to "opt-in" by submitting a consent-to-join form. The deadline for submitting the consent-to-join form has passed, and any au pair who did not do so is not part of the Collective Action. As a result, they are not eligible for the additional settlement payment (as described in Question 10) for au pairs who opted-in. However, those au pairs who did not opt-in may also obtain settlement funds as members of the Class Action, if they fit the class definitions in Question 7, and return a completed Claim Form.

### 5. Am I a member of the Class Action or the Collective Action?

You may be a member of both. All current or former au pairs who fit the class definitions in Question 7 and have not requested to be excluded are automatically included in this lawsuit as Class Members in the Class Action; there is no need to file any consent or "opt-in" to be Class Members. However, to join the Collective Action, you had to return the consent-to-join form. Thus, only those au pairs who submitted a consent-to-join form by the appropriate deadline are part of the Collective Action.

Opting-in to the Collective Action, or deciding not to join the Collective Action, does not impact your membership in the Class Action. Au pairs who did not submit a consent-to-join the Collective Action may still be Class Members in the Class Action, and obtain funds under the Settlement as a Class Member.

To confirm whether you are a member of the Collective Action, you may contact the Claims Administrator by email, at info@email.com, or by telephone, at 1-800-000-0000.

# The Settlement

## 6. Why is there a Settlement?

The Court has not found in favor of the au pairs or the Defendants.  The au pairs and the Defendants have agreed to a Settlement which, if it is approved, will bring the claims against the Defendants to an end, and avoid a trial.  That way, both sides avoid the uncertainty of continuing the case and the cost of further litigation, and eligible au pairs will get the benefits of the Settlement.  Class Counsel and the Class Representatives support the Settlement.

## 7. Am I part of Settlement?

All au pairs who submitted valid consent-to-join forms in the Collective Action are included in the Settlement and may obtain funds, upon submitting a Claim Form.  In addition, all Class Members in the Class Action are included in the Settlement and may obtain funds, upon submitting a Claim Form.  Class Members are all persons who were standard au pairs on a J-1 visa sponsored by one of the Defendants listed in Question 3, between January 1, 2009, and October 28, 2018.  A "standard" au pair is an au pair who was expected to provide up to 45 hours of childcare per week, and for whom the advertised stipend was $195.75.  The Class is made up of eighteen (18) separate classes, each specific to certain legal claims, Defendants, and States.  If you are a member of any of the classes, you may be entitled to Settlement funds.

| | |
|---|---|
| **Antitrust Class:** | All persons sponsored by any Defendant to work as a standard *au pair* in the United States pursuant to a J-1 Visa. |
| **Racketeer Influenced and Corruption Organizations Act (RICO) Class:** | All persons sponsored by Defendants Au Pair in America (American Institute for Foreign Study, Inc.), AuPairCare, Inc., Cultural Care, Inc., or InterExchange, Inc. to work as a standard *au pair* in the United States pursuant to a J-1 Visa. |
| **Florida Training Subclass:** | All persons subjected to unpaid standard *au pair* training by Defendant Expert Group International, Inc. in Florida. |
| **New York Training Subclass:** | All persons subjected to unpaid standard *au pair* training by Defendants Au Pair in America (American Institute for Foreign Study, Inc.), Cultural Care, Inc. or InterExchange, Inc. in New York. |
| **New Jersey Training Subclass:** | All persons subjected to unpaid standard *au pair* training by Defendant AuPairCare in New Jersey. |
| **Au Pair in America California Subclass:** | All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study, Inc.) to work as a standard *au pair* in the State of California pursuant to a J-1 Visa. |
| **Au Pair in America Illinois Subclass:** | All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study, Inc.) to work as a standard |

| | |
|---|---|
| | *au pair* in the State of Illinois pursuant to a J-1 Visa. |
| **AuPairCare Michigan Subclass:** | All persons sponsored by Defendant AuPairCare, Inc. to work as a standard *au pair* in the State of Michigan pursuant to a J-1 Visa. |
| **AuPairCare Pennsylvania Subclass:** | All persons sponsored by Defendant AuPairCare, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa. |
| **Cultural Care Maryland Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Maryland pursuant to a J-1 Visa. |
| **Cultural Care Massachusetts Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Massachusetts pursuant to a J-1 Visa. |
| **Cultural Care Pennsylvania Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa. |
| **Cultural Care Texas Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Texas pursuant to a J-1 Visa. |
| **Cultural Care Utah Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Utah pursuant to a J-1 Visa. |
| **Cultural Care Virginia Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Virginia pursuant to a J-1 Visa. |
| **Expert Au Pair Colorado Subclass:** | All persons sponsored by Defendant Expert Group International, Inc. to work as a standard *au pair* in the State of Colorado pursuant to a J-1 Visa. |
| **Go Au Pair Maryland Subclass:** | All persons sponsored by Defendant American Cultural Exchange LLC d/b/a Go Au Pair and Go Au Pair Operations, LLC (together, "Go Au Pair") to work as a standard *au pair* in the State of Maryland pursuant to a J-1 Visa. |
| **InterExchange Colorado Subclass:** | All persons sponsored by Defendant InterExchange, Inc. to work as a standard *au pair* in the State of Colorado pursuant to a J-1 Visa. |

## 8. Are any au pairs not included in the Settlement?

If you were an au pair sponsored by one of the Defendants **before January 1, 2009 or after October 28, 2018**, you are not included in the Class, and therefore not included in the Settlement. The Class does not include non-standard J-1 visa au pairs, such as "Extraordinaire",

"EduCare," "Professional," "Premium," or "Plus" au pairs. The Class also does not include other providers of in-home childcare, such as nannies or babysitters.

### 9. What does the Settlement provide?

The Defendants will pay $65,500,000 into a Qualified Settlement Fund ("QSF"). After deducting attorneys' fees, costs, and other fees and expenses, the QSF will be distributed to all eligible Collective and Class Action members who submit a valid Claim Form (*see* Question 10). The Defendants have also agreed to clarify the information they provide to hosting families and au pairs regarding the weekly au pair stipend. In particular, the Defendants have agreed to take certain steps designed to notify au pairs and host families that the legal minimum weekly stipend is only a minimum and that au pairs and host families are allowed to agree to a higher weekly stipend.

In exchange for the right to receive your share of the QSF, you will give up, or "release," your claims against the Defendant that sponsored your J-1 visa and any other Defendant in this lawsuit. Those releases include any claims made or that could have been made arising from the facts alleged in this lawsuit. The releases are described in more detail in the Settlement Agreement and in Question 11 below. You can also view or download a copy of the Settlement Agreement, which contains more information on the releases, at www.wesbite.com.

### 10. How will the Settlement funds be distributed?

The precise amount each Class or Collective Action member will be paid depends on a number of factors such as (i) the number of au pairs who submit Claim Forms; (ii) when you were an au pair; (iii) where you were an au pair (which state); and (iv) whether you undertook uncompensated training in the United States.

The total settlement amount is $65,500,000. It is anticipated that after legal fees and administrative costs are paid, the amount available to distribute to Class or Collective Action members will be approximately $40,000,000. Au pairs who have personally participated in the lawsuit will then receive participation bonuses: $5,000 to each of the eleven Class Representatives (who attended depositions, provided documents, and assisted Class Counsel in preparing the case); $1,000 to each Collective Action member who participated in a deposition; and $100 for every au pair who opted-in to the Collective Action. These bonuses will be on top of any recovery to which those au pairs may otherwise be entitled as Class Members.

The remaining funds, which are anticipated to be approximately $39,500,000, will be distributed to au pairs who submit valid Claim Forms. **You must submit a Claim Form to participate in the settlement.**

Funds are distributed based upon a formula approved by the Court that is intended to fairly compensate every class member based on the relative strength of their claim. The complete Plan of Allocation is available on the class webpage at www.website.com. Summarized briefly, Class Members who were au pairs in the period starting November 13, 2010, will receive the largest

recovery as a percentage of their total claim, followed by Class Members who undertook compulsory training in the United States, followed by Class Members who were au pairs prior to November 13, 2010, in Illinois, Michigan, New York, New Jersey, or Pennsylvania, followed by class members who were au pairs prior to November 13, 2010, in any other state.

By way of example, if approximately 15,000 au pairs were to submit valid claims, each of those groups may expect recoveries of approximately the following size:

| | |
|---|---|
| Au Pairs For a Year Starting On or After November 13, 2010 | $2,500 |
| Au Pairs Who Undertook Compulsory Training in the United States For One Week | $90 (in addition to recovery awarded for the au pair placement) |
| Au Pairs For a Year Ending Before November 13, 2010, in Illinois, Michigan, New York, New Jersey, or Pennsylvania | $1,000 |
| Au Pairs For a Year Ending Before November 13, 2010, in Any Other State | $500 |

Other than the $65,500,000 total settlement amount, the figures provided in this answer are estimates and examples only. The actual figures may be higher or lower depending on the total number of claims received, and as determined by the Claims Administrator pursuant to the Plan of Allocation approved by the Court.

## 11. How can I get money from the Settlement?

To receive your share of the QSF, you must complete, sign, and return a Claim Form to the Claims Administrator. A Claim Form is attached to this Notice, and may also be obtained and submitted via the Claims Administrator's website, www.website.com. Claim Forms may also be submitted by mail, to the Claims Administrator at: Beltran v. InterExchange, c/o JND Legal Administration, P.O. Box 91345, Seattle, WA 98111. **Submitting a Claim Form is the only way to get paid from the Settlement. You must submit your Claim Form by Deadline.**

## 12. When will I get my Settlement payment?

The Court will hold a Fairness Hearing on **XX date at XX time a.m.**, to decide whether to approve the Settlement. If the Court approves the Settlement, there still may be appeals of that decision. If an appeal is filed, it is hard to estimate how long it might take for it to be resolved, but it can take a lot of time, perhaps more than a year. Settlement payments will be distributed if the Settlement is approved, and after any appeals are resolved.

Updates regarding the Settlement, including deadlines for the submission of Claim Forms, and the schedule for when payments may be made will be posted on the Claims Administrator's website, www.website.com.

### 13. Do I have to pay taxes on the money I receive from the Settlement?

The Claims Administrator will work with you to determine what, if any, taxes are to be withheld or paid on any funds you receive from the Settlement. You should also feel free to consult your own tax professional for guidance. Class Counsel cannot provide you with any tax advice.

## YOUR RIGHTS AND OPTIONS

### 14. What are my options for participating in the Settlement?

You have three [four] options: (1) submit a Claim Form by deadline; (2) object to the Settlement; [(3) exclude yourself from the Settlement;] or (3[4]) do nothing.

### 15. What am I giving up if I submit a Claim Form?

If you submit a valid Claim Form, you will release from liability the Defendants in this action, together with their respective parents, subsidiaries, officers, directors, employees, contractors, shareholders, attorneys, agents, representatives, insurers, host families, and affiliates, expressly, but without limitation, including recruiting affiliates named and unnamed in the course of this lawsuit for those Defendants who use the services of others to identify, recruit and/or screen au pair candidates (the "Released Parties"). That release will cover any and all causes of action, judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each a "Claim"), known or unknown, arising on or before any judgment issues in this lawsuit, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in this lawsuit, whether any such Claim was or could have been asserted by you on your own behalf or on behalf of others. However, your release does not extend to claims or potential claims that you may possess against your host family or families if such claims are (i) unrelated to the Claims asserted in this lawsuit or (ii) unrelated to host family obligations under the federal Au Pair Program requirements, *e.g.*, compensation, hours, education, or services required. This is only a summary of the release to which you will be bound; to review the full release, please visit the Claims Administrator's website, www.website.com, where you can review the Settlement Agreement in full.

### 16. What happens if I do nothing at all?

If you do nothing, you will receive no payment from the Settlement, **and** you will release your claims against the Defendants, as summarized in Question 15. This is because by doing nothing,

you will continue to be a member of the Class Action, including any classes you are part of, and if the Court approves the Settlement, you will not be able to sue, or continue to sue, any Defendant about the legal claims that are the subject of this lawsuit. This also means that if you do nothing, you will be legally bound by the orders and judgments the Court issues in this case.

### [17. How do I exclude myself from the Settlement?

Au pairs who were sponsored by Defendant AuPairCare, Inc. (from January 1, 2009 through October 28, 2018) and au pairs sponsored by any Defendant in 2017 and 2018 may still exclude themselves from the Class Action, and the Settlement.

To ask to be excluded, you must send an "Exclusion Request" form to the Claims Administrator. You may do so by email, mail, or online, no later than **Month 00, 0000.** You may complete an Exclusion Request Form directly on the www.website.com website. You may also obtain an Exclusion Request form on the class website, www.wesbite.com and mail the form to Beltran v. Interexchange, P.O. Box 91345, Seattle, WA 98111 by date. Or you may exclude yourself by mailing a letter to the Claims Administrator stating that you want to be excluded from *Beltran v. Interexchange*. In the letter, be sure to include your name and address, and sign the letter and send it to: Beltran v. Interexchange, P.O. Box 91345, Seattle, WA 98111. If you submit your own letter, or use the Exclusion Request form, you **must** indicate which of the individual classes listed in Question XX you are excluding yourself from and postmark the letter by Date. You may ask to exclude yourself entirely, or from only some classes.

If you choose to exclude yourself from the Class Action and Settlement, you will have no right to speak at the hearing about the Settlement or object to it, because the Settlement will no longer affect your rights.]

### 17 [18]. How do I object to the Settlement?

If you are a Class Member, you can comment on or object to the Settlement if you like or do not like any part of it. You can give reasons why you think the Court should or should not approve it. The Court will consider your views.

To comment or to object, you must send a letter to the Claims Administrator with your comments or objections to the proposed Settlement. Be sure to include:

- Your name, address, telephone number, email address and signature;
- If you object to the Settlement, a detailed list of any other objections that you or your lawyer have made to any class action settlements submitted to any court in the United States in the previous five (5) years; and
- A detailed statement of your comments or objections, including: whether your objection applies only to you, to a subset of the Class, or the entire Class; the grounds for your objections; and supporting documents, if any.

**If you object to the Settlement, you should still submit a Claim Form**.  If the Court approves the settlement, you will only participate in the proceeds if you have submitted a Claim Form.

You do not need to attend or speak at the Fairness Hearing (described in Question 12) for your comments or objections to be considered.  If you would like to speak at the Fairness Hearing, you must add to your letter a statement indicating such, for example, by stating "This is my Notice of Intention to Appear at the Fairness Hearing in *Beltran v. Interexchange*."

If you wish for the Court to consider your comments or objections, you must submit the comments or objections, along with a request to speak at the Fairness Hearing (if any), postmarked no later than **Date** (or received by the Claims Administrator by that date if sent by e-mail) to the following address:

JND Legal Administration<br>
P.O. Box 91345<br>
Seattle, WA 98111<br>
info@email.com

## [19.  What is the difference between objecting and excluding?

Objecting is telling the Court that you don't like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.]

# THE LAWYERS REPRESENTING YOU

## 18 [20].  Who represents me in this case?

The Court-appointed attorneys from Boies Schiller Flexner LLP, of New York, NY, and Towards Justice, of Denver, CO, represent the au pairs in the Class and Collective Actions.  Together they are "Class Counsel."  More information about each law firm, their practices, and their lawyers is available at www.bsfllp.com and www.towardsjustice.org.

## 19 [21].  Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf.  But, if you want your own lawyer, you are entitled to have one.  However, it will be your responsibility to pay that lawyer.  For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

## 20 [22].  How will the lawyers be paid?

Class Counsel will ask the Court to approve at the Fairness Hearing payment from the QSF of out-of-pocket costs and expenses, which includes all the costs of litigating the lawsuit and administering the settlement.  Class Counsel will also ask the Court to approve payment of

attorneys' fees of 35% percent (or $22,925,000) of the QSF.  These fees are intended to compensate Class Counsel for investigating the facts, litigating the case extensively over four years (including through any future appeals), and negotiating and administering the $65,500,000 Settlement.

# THE FAIRNESS HEARING

### 21 [23].  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing on **DATE** at **TIME** in Courtroom A602 at the United States District Court for the District of Colorado, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.

At this hearing, the Court will consider the Settlement and determine whether it is fair, reasonable, and adequate.  If there are written comments or objections, the Court will consider them.  The Court will decide whether to allow people who have raised objections or comments to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long this decision will take.  Also, the Court may reschedule the Fairness Hearing or change any of the deadlines described in this Notice.  Be sure to check the Claims Administrator's website, www.website.com, for news of any such changes.

### 22 [24].  Do I have to come to the Fairness Hearing?

No.  Class Counsel will be present at the Fairness Hearing to answer any questions the Court may have.  You are welcome to come at your own expense.  If you send comments or objections to the Settlement, you don't have to come to Court to talk about it.  As long as you mailed, faxed, or emailed your written comments or objections on time, the Court will consider them.  You may also pay your own lawyer to attend, but it is not required.

# GETTING MORE INFORMATION

### 23 [25].  Are more details available?

Yes.  This Notice only summarizes the Settlement.  More details about the Settlement are in the proposed Settlement Agreement itself, which you can view or print at www.website.com.  There you will also find more information about the lawsuit, including a Claim Form, important Court decisions, and updates on the status of the Settlement.  Also, if you are still not sure whether you are included in the Settlement, or have other questions about how the Settlement will be administered, you can call or write to the Claims Administrator: 1-800-000-0000, info@email.com.

# Exhibit 1

## AU PAIR CLASS & COLLECTIVE ACTION

## SETTLEMENT CLAIM FORM

In order to receive your portion of the Settlement, you **must** complete this Claim Form. Please answer the questions to the best of your knowledge and recollection. You do **not** need to submit any additional documentation at this time. However, the Claims Administrator may reach out to you if they require any additional information to process your claim.

Please read the Notice of Proposed Settlement of Class and Collective Action, Fairness Hearing, and Right to Appear ("Notice."). The Notice was sent to you along with this Claim Form and is also available at [www.website.com]. The Notice, and the Claims Administrator's website, [www.website.com], contain more information about your rights and options and may be useful to you in deciding whether to submit this Claim Form.

Completed Claim Forms must be sent to the Claims Administrator either by email as a PDF attachment to [info@email.com] or by mail to:

[Beltran v. InterExchange
c/o JND Legal Administration
P.O. Box 91345
Seattle, WA  98111]

Claim Forms can also be submitted online at the class website, [www.website.com].

**YOUR CLAIM FORM MUST BE SUBMITTED ELECTRONICALLY OR POSTMARKED BY [DEADLINE]**

NOTE: This Claim Form has six pages. Please provide ALL of the information requested. If you do not complete all sections of the form, your request may be rejected.

1. **CONTACT INFORMATION**

CURRENT FULL NAME (please print): _____

ADDRESS: _____

_____

CITY: _____   STATE/PROVINCE: _____

POSTAL CODE: _____   COUNTRY: _____

TELEPHONE NUMBER (with country code):  + ( _____ ) _____

EMAIL ADDRESS: _____

SOCIAL MEDIA CONTACT: _____

If your name has changed since you began working as an au pair, please also provide your former name(s):

ALTERNATIVE NAME(S) (please print): _____

## 2. FIRST AU PAIR PLACEMENT

Select the sponsor for your host family placement family from the list below.  If you had more than one host family placement, select the sponsor for your first host family placement (check only one):

- ☐ 20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange
- ☐ A.P.E.X. American Professional Exchange LLC, d/b/a ProAuPair
- ☐ Agent Au Pair
- ☐ American Cultural Exchange LLC, d/b/a Go Au Pair, and GoAuPair Operations, LLC
- ☐ American Institute for Foreign Study, d/b/a Au Pair in America
- ☐ APF Global Exchange NFP, d/b/a Aupair Foundation
- ☐ Au Pair International, Inc.
- ☐ AuPairCare Inc.
- ☐ Cultural Care, Inc., d/b/a Cultural Care Au Pair
- ☐ Cultural Homestay International
- ☐ EurAuPair Intercultural Child Care Programs
- ☐ Expert Group International Inc., d/b/a Expert AuPair
- ☐ Great AuPair, LLC
- ☐ InterExchange Inc.
- ☐ USAuPair, Inc.

   (i)   Please provide the dates for the **first** host family placement you had with the au pair sponsor you checked.

   START DATE:   (Day) ____   (Month) _____   (Year)____

   END DATE:     (Day) ____   (Month) _____   (Year)____

   (ii)  In what State did this placement take place? _____

   (iii) Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

   ☐ Yes     ☐ No

   (iv)  If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

## 3. ADDITIONAL PLACEMENTS

Complete this section only if you had more than one au pair placement (i.e., more than one host family).  If you were re-matched to a host family other than your first, that counts as an additional au pair placement.  If you extended your au pair placement with one host family, and were never placed with a second host family, you do not need to complete this section, but the dates you provided in question 2 should reflect the extension.

   (i)   Which agency from question 2 sponsored you for your **second** au pair placement?

2

        SPONSOR NAME: _____

(ii)    Please provide the dates for your **second** host family placement.

        START DATE:    (Day) ____    (Month) _____    (Year)____

        END DATE:    (Day) ____    (Month) _____    (Year)____

(iii)    In what State did this placement take place? _____

(iv)    Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

        ☐ Yes        ☐ No

(v)    If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

        \* \* \*

(i)    Which agency from question 2 sponsored you for your **third** au pair placement?

        SPONSOR NAME: _____

(ii)    Please provide the dates for your **third** host family placement.

        START DATE:    (Day) ____    (Month) _____    (Year)____

        END DATE:    (Day) ____    (Month) _____    (Year)____

(iii)    In what State did this placement take place? _____

(iv)    Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

        ☐ Yes        ☐ No

(v)    If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

        \* \* \*

Please use the attached placement form to list any additional placements.

## 4. **CERTIFICATION**

I certify that the information provided in this form is true and accurate to the best of my knowledge.

SIGNATURE: _____ DATE: _____

3

# ADDITIONAL AU PAIR PLACEMENTS

Please use this form if you had **more than three (3)** au pair placements.

- (i) Which agency from question 2 sponsored you for your **fourth** au pair placement?

    SPONSOR NAME: _____

- (ii) Please provide the dates for your **fourth** host family placement.

    START DATE:   (Day) \_\_\_\_   (Month) \_\_\_\_\_   (Year)\_\_\_\_

    END DATE:   (Day) \_\_\_\_   (Month) \_\_\_\_\_   (Year)\_\_\_\_

- (iii) In what State did this placement take place? _____

- (iv) Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

    ☐ Yes     ☐ No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

\* \* \*

- (i) Which agency from question 2 sponsored you for your **fifth** au pair placement?

    SPONSOR NAME: _____

- (ii) Please provide the dates for your **fifth** host family placement.

    START DATE:   (Day) \_\_\_\_   (Month) \_\_\_\_\_   (Year)\_\_\_\_

    END DATE:   (Day) \_\_\_\_   (Month) \_\_\_\_\_   (Year)\_\_\_\_

- (iii) In what State did this placement take place? _____

- (iv) Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

    ☐ Yes     ☐ No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

\* \* \*

4

(i)  Which agency from question 2 sponsored you for your **sixth** au pair placement?

SPONSOR NAME: _____

(ii)  Please provide the dates for your **sixth** host family placement.

START DATE:  (Day) \_\_\_\_  (Month) \_\_\_\_\_  (Year)\_\_\_\_

END DATE:  (Day) \_\_\_\_  (Month) \_\_\_\_\_  (Year)\_\_\_\_

(iii)  In what State did this placement take place? _____

(iv)  Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐ Yes    ☐ No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

\* \* \*

(i)  Which agency from question 2 sponsored you for your **seventh** au pair placement?

SPONSOR NAME: _____

(ii)  Please provide the dates for your **seventh** host family placement.

START DATE:  (Day) \_\_\_\_  (Month) \_\_\_\_\_  (Year)\_\_\_\_

END DATE:  (Day) \_\_\_\_  (Month) \_\_\_\_\_  (Year)\_\_\_\_

(iii)  In what State did this placement take place? _____

(iv)  Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐ Yes    ☐ No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

\* \* \*

(i)  Which agency from question 2 sponsored you for your **eighth** au pair placement?

SPONSOR NAME: _____

(ii)  Please provide the dates for your **eighth** host family placement.

START DATE:  (Day) \_\_\_\_  (Month) \_\_\_\_\_  (Year)\_\_\_\_

END DATE:  (Day) \_\_\_\_  (Month) \_\_\_\_\_  (Year)\_\_\_\_

5

    (iii)    In what State did this placement take place? _____

    (iv)    Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

    ☐ Yes    ☐ No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

\* \* \*

    (i)    Which agency from question 2 sponsored you for your **ninth** au pair placement?

    SPONSOR NAME: _____

    (ii)    Please provide the dates for your **ninth** host family placement.

    START DATE:    (Day) \_\_\_\_    (Month) \_\_\_\_\_    (Year)\_\_\_\_

    END DATE:    (Day) \_\_\_\_    (Month) \_\_\_\_\_    (Year)\_\_\_\_

    (iii)    In what State did this placement take place? _____

    (iv)    Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

    ☐ Yes    ☐ No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

6