**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
    and those similarly situated,

    Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

    Defendants.

---

**DECLARATION OF JOSHUA J. LIBLING ATTACHING OBJECTIONS OR
COMMENTS TO PROPOSED SETTLEMENT**

I, JOSHUA J. LIBLING, declare as follows:

1. I am an attorney duly licensed to practice law in the State of New York and am a Counsel with the law firm of Boies Schiller Flexner LLP, counsel for the Plaintiffs and for the Class. I am admitted to practice in the United States District Court for the District of Colorado.

2. The matters stated herein are based on my personal knowledge and, if called upon to testify, I could and would testify competently thereto.

3. Attached hereto as **Exhibit 1** is a true and correct copy of an objection or comment to the proposed settlement in this action received by the class administrator from Ms. Shireem Logan. The class administrator informs me that Ms. Logan matches our records as a member of the class who has not submitted a request for exclusion. Exhibit 1 has been modified from the original through the redaction of personal identifying information (address). The unredacted version was provided to Defendants and a copy can be provided to the Court at the Court's request.

4. Attached hereto as **Exhibit 2** is a true and correct copy of an objection or comment to the proposed settlement received by the class administrator from Ms. Sidimara Basso Magon. The class administrator informs me that Ms. Magon matches our records as a member of the class who has not submitted a request for exclusion. Exhibit 2 was received by the class administrator as an e-mail. Counsel for Plaintiffs and the Class converted the e-mail to a word document and copied over the "To," "From," and "Subject Fields" while omitting the class member's personal e-mail address. The native version was provided to Defendants and a copy can be provided to the Court at the Court's request.

5. Attached hereto as **Exhibit 3** is a true and correct copy of an objection to the proposed settlement in this action received by the class administrator from Ms. Sally F. Scholz. The class administrator informs me that Ms. Scholz matches our records as a member of the class who has not submitted a request for exclusion. Exhibit 4 was received by the class administrator as an e-mail. Counsel for Plaintiffs and the Class converted the e-mail to a word document and copied over the "To," "From," and "Subject Fields" while omitting the class member's personal e-mail address. The native version was provided to Defendants and a copy can be provided to the Court at the Court's request.

6. Attached hereto as **Exhibit 4** is a true and correct copy of an objection to the proposed settlement in this action received by the class administrator from Ms. Eva Bein. The class administrator informs me that Ms. Bein matches our records as a member of the class who has not submitted a request for exclusion. Exhibit 4 has been modified from the original through the redaction of personal identifying information (address, phone number, e-mail address). The unredacted version was provided to Defendants and a copy can be provided to the Court at the Court's request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 6th day of May, 2019 at New York, New York.

Respectfully submitted,

/s/ *Joshua J. Libling*
Joshua J. Libling
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel. (212) 446-2300
Fax. (212) 446-2350
jlibling@bsfllp.com

*Counsel for Plaintiffs*

# EXHIBIT 1

Shireem Logan

███████

███████

███████

United Kingdom

███████

To who it may concern,

Please consider and accept this document, as my formal objection, to the Notice of Intention to against the potential sum offered in the Fairness Hearing, *Beltran v. Interexchange*."

My name is Shireem Logan and i worked as an Aupair in the USA for two years.

I would like to object against the sum offered to Au Pairs for the reasons given below.

1- Should the courts deem that the pay given to Au Pairs was unlawful, then the sums offered at present, is not reflective of the financial deficiency, for under payment, accumulated over a two year period.

2- Monies offered at present is not reflective of the other expenses occurred. Details of this can be found in documents previously submitted by me, as part of this ongoing claim.

3- There was a 6 week period where I was not working. The agency Au Pair in America, did not know where, with, whom or in what state I was residing in during this period. No financial or housing support offered during this time. I was homeless and ate food from a shelter, in Boston MA until I was found another family to work for. I could have been exploited and abused and this is contrary to the agencies mission statement, policies and procedures. The agency knew I was homeless whilst employed by them, but did nothing to help or support me in a foreign country, where I had no family and very few friends.

I was placed in a home where sexual abuse was taking place between siblings. AQs the babysitter, I walked in and witnessed this happening. This caused a lot of emotional and post-traumatic stress, I have never seen anything like that before, it has damaged me for life as I have nightmares about what I saw to this day. I was not offered, and did not receive any professional or other counselling, support or intervention. I was not moved out of this families home and I am still affected by this experience today.

As I am now older and wiser, I would like the above factors, considered in this compensation claim, as I have been permanently scared and damaged by the lack of support and intervention given to me during my time as an Au Pair. I am able to evidence what I have stated above, and feel it is only fair, to be compensated, for the lack of care and support given to during my employment with Au Pair in America. They did not for fill the promises outlined

**EXHIBIT 2**

To: info@aupairclassaction.com

From: Sidimara Magon

Re: Au Pair Class Action Sidimara

Dear Sir or Madam,

I'm Sidimara Basso Magon, and I'm an Au Pair from Cultural Care, from June 2017 to June 2019. I submitted the Claim Form online (and it's also attached to this email), I want to be part of the Class Member in this Class Action and help with whatever I can. I have many voice records, text messages and messages from Facebook to prove all of my claims against the host families, like making me overworked and not paying for this extra hours, being responsible to take care of their dog, complaining about food that I ate, mocking me for my poor English by that time, taking away my vacations days when where convenient to them and telling me one day prior, psychological abuse mainly when I disagreed about something or when I complained with the area director. And I am complaining about Cultural Care, that knew everything that was happening and its omission about what was going on at my host family house. I was always told by them to withstand the situation, thinking on their side or going to a rematch (although they always say that a rematch is not good, you may not find a family and will end up going back to Brazil, or may find a worse host family, summing up they make you feel afraid of going to a rematch even showing it as an option). Another thing is a family made me sign a paper saying that I received $195,75 (one hundred and ninety five dollars and seventy five cents) for child take care per week, for their taxes deducts, although I'm not an American citizen, I'm in an exchange program, and Cultural Care didn't talk to the family, in fact the agency told me the family can do that, but I don't have to sign it if I don't want to. I had to call to many people to know if this is allowed or not and how would affect me and then I told the family that I wouldn't sign anymore papers.

In any moment before the program starts, someone explained to me about taxes and how to do my taxes, and our rights just our duties and how to be grateful for the families accepting us. We work for that money, we don't need to be grateful, and we receive much less than the national minimum wage. And lately, but not less important the unfair stipend, considering the national minimum wage and the high prices in the Bay Area in California, makes impossible doing trips around, going out to explore the area or simply hanging out with friends with $195,75 per week, which those activities are the main reason for us to come to United States, this is a misleading marketing that Cultural Care does.

For all of these reasons, I want to contribute with all the evidences that I have and even if you adjudicate my presence important at court. In formal words: "This is my Notice of Intention to Appear at the Fairness Hearing in Beltran v. Interexchange."

Hope I was clear and direct and that I can help providing documents and any other thing.

Kind regards,

Sidimara Basso Magon

**EXHIBIT 3**

To: info@aupairclassaction.com

From: Sally Scholz

Re: Object to the settlement

To whom it may concern:

First, I want to talk a little about my experience:

I was an Au Pair from 2014 to 2015 and it was definitely worth it. I placed with my former host family after about four or five interviews with families. I looked forward to be one year in America, I filled the contract, applied for the visa, insurance and everything there is to do. When I finally arrived, I of course was a little homesick, but my host family made me feel like I am an part of the family, which was great.

I can't say anything bad about my host family. There are always some up and downs, but overall I don't want to miss the time. I have a feeling that this settlement goes in a wrong direction. I am not sure how many host families will stay in the programm after this. It means that less Au Pairs can have an experience as mine was.

About the weekly wage:

I started the Au Pair year right after I graduated from the German High School. I didn't have any degree in child care. For me, I thought (almost) $200 per week PLUS all founds are **a lot**. With all founds I mean food and drinks, using the car, going on free vacation with them, getting to know another culture/traditions/people/and so on. If I'd add up the founds to my salary I might be at around $300, but that's not an exact number, I am just guessing. I didn't hear anything about a minimum wage until you started the lawsuit, I think it's completely normal that the sponsors or most host families didn't say anything that I could have made more money. I totally understand host families for taking Au Pairs, when childcare is extremely expensive in America. And I have no idea, why the government doesn't change it, because it should not be normal that a mother has to stay at home to take care for children when she rather wants to work and get some help. So the Au Pair programm is in my eyes a great opportunity for both parties.

I think the settlement is not bad. I know that there are Au Pairs who either get even less than $195.75 or don't get paid at all. That's the time when the sponsors should protect the Au Pairs, which they don't always do. I also know there host families who pay more. There are good families and bad ones, as there are Au Pairs. In my eyes the wage is enough for what we get out of it, but if there is a law about minimum wages for people on J-1 visa, then the sponsors have to follow it as anyone else.

There is one thing I am wondering about. Every Au Pair signs a contract about the work hours, free time, insurance, and the weekly wage, … . The salary in the contract is $195.75 per week. With signing it we agree. I am wondering why the Au Pairs who started the settlement haven't thought about that it is not be a fair salaray before they signed and agreed on it? Or is it normal to sign something but disagree after doing so?

I just hope that many young people get the chance of living in an foreign country, the possibility to learn things for life and not just be a worker but also a member of a family. I hope the sponsors start supporting Au Pairs who don't get paid and I hope you make a decision which looks at every side.

Yours sincerly,

Sally F. Scholz

Former Au pair in Maryland

# EXHIBIT 4

Dear Sir or Madam, your honor, all attorneys, plaintiffs, and jury,

My name is Eva Bein and I currently reside in ███████████████████████████, Germany. My phone number is ███████████ and my email address is ███████████. **I hereby object to the Au Pair Class Action as is my right as a former au pair during the period of January 1st, 2009 and October 28, 2019.**

While I acknowledge and understand the issues raised in the lawsuit, I do not agree with the approach chosen to pursue these concerns. Of course, forming cartels as well as price and wage fixing are serious problems, especially in a free market economy. However, the au pair program focuses on cultural exchange and should therefore be treated as a cultural program rather than as an employment relationship.

It is out of the question that abusing the au pair program to solely gain cheap child care is absolutely unacceptable. Thus, a solution must be found that focuses on the protection of au pairs whilst preserving and highlighting the cultural aspect of the au pair experience. In fact, most young people who become or try to become au pairs do so because they are interested in the US and excited for an opportunity to get to know American families, culture, everyday-life, education, and values. Almost all au pairs are looking forward to exploring the United States through travel, learn about subtleties of American life, taste American food, and gain an understanding of life outside of their home country. Becoming an au pair is a unique opportunity that provides a young person with a free plane ticket to their dream country, a home (rent free, including meals), a support system (host family, agency staff), some education (paid for mostly by the host family), and some money. Although some au pairs have negative experiences that can only be resolved by switching families or returning to their home country earlies than planned, most young women and men have an outstanding, positive stay in the states and build life-long relationships with their host families and the children in their care. Of course, getting paid is one of the motivating factors of becoming an au pair – however, the cultural aspect clearly outweighs the relevance of compensation. Honestly, young people who want to earn a lot of money will not go through the troubles of applying to become an au pair, they will rather work in their home country as the cultural exchange is definitely the focus of the program.

While valid criticism regarding the au pair program was presented by the plaintiffs, their demands and claims will not help to solve the problems discussed in the class action. As discussed above, young people become au pairs to experience life in the States. If they are mistreated by host families or neglected by agencies, as is sometimes cited in the lawsuit, these issues will not be resolved by increasing au pairs' stipend. Rather, the practices suggested in the claim will reshape the relationship between au pair and host family from family-focused to employment relationship. Host families will have to pay more for their child care and au pairs may be compensated according to local or state regulations; however, where will the cultural aspect of the au pair program go? When au pairs are treated as employees rather than family members, will they be able to experience American family life? Will their families be as willing to include them in family outings, take them on vacations, sit with them to help with culture shock and questions? In my opinion, instead of raising the stipend or fighting for au pairs to negotiate their pay, the lawsuit should obligate the agencies to be more involved in their participants' life, hire more and better staff, check on au pairs more often, and so forth. In doing that, the agencies could prevent abuse of the au pair program as well as problematic living- and working-arrangements such as those mentioned in the class action.

As au pairs are in vulnerable positions when they arrive in their new host families, au pair agencies should be bound to do more in-depth, critical, honest check ups on the au pairs to learn about the situation in their respective host family. Similarly, agencies should be obligated to do extensive background checks on the families and remove families that do not fit their standards from their

programs. Because the agencies act in order to please their paying clients (in other words, the host families), they have little interest in ensuring their au pairs well-being. This is an obvious problem which should be tackled by lawsuits. Making sure that au pairs get paired with loving, stable, reasonable families that appreciate them will most likely lower the dissatisfaction with the program. On the other hand, increasing the stipend will only cover the monetary part of becoming an au pair – the most important aspects are, however, left out.

As I do not agree with the lawsuits approach, I hereby object to the Au Pair Class Action. While I definitely agree that the program has flaws, they must be tackled differently in order to retain the au pair program's focus on cultural exchange. Accordingly, I do not suggest there should be more compensation from agencies to (former) au pairs. Rather, I request that the lawsuit be dropped or adapted to solve the underlying issues (understaffing and neglect in au pair agencies, etc). It would be a shame if the au pair program came to an end, yet the proposed proceedings will destroy the program in its current form.

I want to end this objection by shifting perspective to the host families, most of which mean well with their au pairs a follow the rules. Please consider that it is impossible for many, if not most families who invite au pairs in their homes to continue hosting au pairs under the circumstances proposed in the lawsuit. Additionally, I want to point out that all of my favorite memories and experiences during my au pair year include my host family, their warmth, friendliness, kindness, interest in my life, and willingness to help me learn and grow. None of them include my stipend. When I think back to my year abroad, I think of the surprise BBQ my host family threw for my birthday, or for the Tuesday before Thanksgiving that my host mom took off work to help me pick out an outfit to wear for the holidays at a friend's house. I think of my host family's invitations for iced coffee (which I had never seen or heard of, let alone tasted) and the joy in their faces when introducing me to foods that made my taste buds explode. A great au pair year is based on the amazing host families in the program and agencies should be held responsible for ensuring each and every au pair gets to enjoy such a family. The agencies must be held responsible for guaranteeing their au pair's safety and well-being for the entirety of their stay – not only the first week or every second Sunday. Please hold them accountable for not checking in properly, for fuzzy LCCs who are underpaid and overworked, for fishy regulations in difficult situations. Still, please also consider that simply paying au pairs more for their work will not solve a single one of these issues and is therefore not an adequate approach to these problems. Thank you for your time and attention.

Sincerely,

*[signature: Eva B.]*

[Eva Bein]