**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
            and those similarly situated,

            Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

            Defendants.

---

**MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT**

---

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND........................................... 3

NOTICE EFFORTS...................................................................................... 6

THE RESPONSE RATE................................................................................ 8

ARGUMENT................................................................................................. 8

     I.     THE SETTLEMENT SHOULD BE FINALLY APPROVED UNDER RULE 23. ............. 8

          A.     THE SETTLEMENT WAS HONESTLY AND FAIRLY NEGOTIATED. ................. 9

          B.     SERIOUS QUESTIONS OF LAW AND FACT EXIST. .................................... 10

          C.     THE VALUE OF IMMEDIATE RECOVERY OUTWEIGHS THE RISK OF PROTRACTED LITIGATION. ................................................................... 11

          D.     THE SETTLEMENT IS FAIR AND REASONABLE. ...................................... 12

          E.     THERE HAVE BEEN NO OBJECTIONS TO THE SETTLEMENT ................. 17

     II.     THE COURT SHOULD FINALLY CERTIFY THE FLSA CLASSES FOR SETTLEMENT PURPOSES. .......................................................................................... 19

     III.     ADDITIONAL ORDERS REQUESTED OF THE COURT ......................................... 23

CONCLUSION ........................................................................................... 24

## Table of Authorities

**Cases**

*Amoco Prod. Co. v. Fed. Power Comm'n*
   465 F.2d 1350 (10th Cir. 1972)....................................................................... 8

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*
   167 F. Supp. 2d 1216 (D. Colo. 2001) ........................................................... 8

*Chastain v. Cam*
   No. 3:13-CV-01802-SI, 2016 WL 1572542 (D. Or. Apr. 19, 2016)............................ 21

*Chavez v. Excel Services Southeast, Inc.*
   No. 13-cv-3299, 2015 WL 4512276 (D. Colo. July 27, 2015) ..................................... 16

*Chieftain Royalty Co. v. Enervest Energy Instit. Fund XIII-A, L.P.*
   888 F.3d 455 (10th Cir. 2017)....................................................................... 15

*Davis v. Crilly*
   292 F. Supp. 3d 1167 (D. Colo. 2018) .................................................. 17, 20, 22, 23

*DeJulius v. New England Health Care Employees Pension Fund*
   429 F.3d 935 (10th Cir. 2005)....................................................................... 17

*Dekeyser v. Thyssenkrupp Waupaca, Inc.*
   314 F.R.D. 449 (E.D. Wis. 2016) ................................................................. 21

*Hart v. Rick's Cabaret Int'l, Inc.*
   60 F. Supp. 3d 447 (S.D.N.Y. 2014)............................................................. 21

*In re Crocs, Inc. Secs. Litig.*
   306 F.R.D. 672 (D. Colo. 2014) ............................................................. 13, 14

*In re PaineWebber Inc. Ltd. P'ships Litig.*
   117 F.3d 721 (2d Cir. 1997)......................................................................... 11

*In re PaineWebber Ltd. P'ships Litig.*
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 11

*Jancich v. Stonegate Mortg. Corp.*
   2014 WL 1011480 (D. Kan. Mar. 17, 2014) .................................................. 22

*Kramer v. Am. Bank & Tr. Co., N.A.*
   No. 11 C 8758, 2017 WL 1196965 (N.D. Ill. Mar. 31, 2017) ...................................... 20

*Lane v. Page*
   862 F. Supp. 2d 1182 (D.N.M. 2012)........................................................... 15

*Law v. Nat'l Collegiate Athletic Ass'n*
   108 F. Supp. 2d 1193 (D. Kan. 2000) ....................................................... 13

*Lopez v. City of Santa Fe*
   206 F.R.D. 285 (D.N.M. 2002) ................................................................. 16

*Lucas v. Kmart Corp.*
   234 F.R.D. 688 (D. Colo. 2006) ................................................................. 9

*Lukas v. Advocate Health Care Network & Subsidiaries*
   No. 1:14-CV-2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015) ............... 21

*Marcus v. State of Kansas, Dept. of Revenue*
   209 F. Supp. 2d 1179 (D. Kan. 2002) ....................................................... 16

*Law v. NCAA*
   108 F. Supp. 2d 1193 (D. Kan. 2000) ....................................................... 13

*New Eng. Carpenters' Health Benefits Fund v. First DataBank*
   602 F. Supp. 2d 277 (D. Mass. 2009) ....................................................... 11

*Ott v. Publix Super Markets, Inc.*
   No. 12-cv-00486, ECF No. 247 (M.D. Tenn. Feb. 3, 2015) ....................... 16

*Pliego v. Los Arcos Mexican Restaurants, Inc.*
   313 F.R.D. 117 (D. Colo. 2016) ............................................................. 9, 19

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*
   237 F.R.D. 26 (E.D.N.Y. 2006) ................................................................. 12

*Rutter & Willbanks Corp. v. Shell Oil Co.*
   314 F.3d 1180 (10th Cir. 2002) ................................................................. 9

*Shaw v. Interthinx, Inc.*
   13-cv-01229-REB-NYW, 2015 WL 1867861 (D. Colo. April 22, 2015), ..... 15

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ................................................................... 15

*Thiessen v. GE Capital Corp.*
   267 F.3d 1095 (10th Cir. 2001) ............................................................... 19

*Tommey v. Computer Sciences Corp.*
   No. 11-cv-2214, 2015 WL 1623025 (D. Kan. April 13, 2015) .................... 19

*Tyson Foods, Inc. v. Bouaphakeo*
   136 S. Ct. 1036 (2016) ........................................................................... 21

*United States v. Hardage*
  982 F.2d 1491 (10th Cir. 1993)..................................................................... 8

*Van Vranken v. Atlantic Richfield Co.*
  901 F. Supp. 294 (N.D. Cal. 1995) ............................................................. 15

*Vaszlavik v. Storage Tech. Corp.*
  No. 95-B-2525, 2000 WL 1268824 (D. Colo. Mar. 9, 2000)....................................... 17

*Whittington v. Taco Bell of Am., Inc.*
  No. 10-cv-01884, 2013 WL 6022972 (D. Colo. Nov. 13, 2013) ........................... 17, 19

## Statutes & Rules

22 C.F.R. § 62.31 ......................................................................................... 3, 11

29 U.S.C. § 201 .............................................................................................passim

Fed. R. Civ. P. 23 ..........................................................................................passim

## Other Authorities

15th Annual Workplace Class Action Litigation Report
  34-35 (Jan. 2019)
  https://www.seyfarth.com/dir_docs/publications/2019_WCAR_Chapters_1-2.pdf..... 12

*Newberg on Class Actions*
  5th § 13:14.................................................................................................... 9

Seyfarth Shaw's 15th Annual Workplace Class Action Litigation Report
  January 2019
  https://www.seyfarth.com/dir_docs/publications/2019_WCAR_Chapters_1-2.pdf....... 6

www.aupairclassaction.com ........................................................................... 7

www.aupairwageaction.com............................................................................ 7

## Certificate of Conferral Pursuant to D.C.Colo.LCivR 7.1(A)

Defendants take no position on the matters in this Motion.

## PRELIMINARY STATEMENT

After over four years of litigation, this Court should approve a settlement that will, on average, provide approximately 50% of each claiming-class-member's actual damages, and achieves a settlement close to the limit of Defendants' ability to pay. The common fund of $65.5 million constitutes the largest employment law class action settlement of 2018. In addition, the settlement's injunctive relief ensures that future au pairs will receive accurate information about wages and their bargaining power. The injunctive relief therefore will remedy the key fraud allegations and will advance the antitrust purposes of this action by empowering au pairs to negotiate their own wages based on accurate information. Five potential Class[1] members submitted comments or objections, and none of those submissions provide a substantial reason to deny approval (indeed, several support approval).

This Court is well aware of how intensely contested this litigation has been. The Court is also aware that significant factual and legal issues remain unresolved. Were this case to proceed to trial, at the very minimum, Plaintiffs would need to establish that Defendants are au pairs' joint employers to prevail on their labor claims; that Defendants participated in a conspiracy to suppress wages to prevail on their antitrust claims; and that Defendants intentionally misled au pairs and host families to prevail on their fraud claims. Although Class Counsel is confident the Class would prevail, there is undeniable and significant risk. This Court's denial of Plaintiffs' summary judgment

---

[1] Unqualified references to the "Class" refer to all classes and subclasses, collectively.

motion is proof enough of that.  There is also not inconsiderable appellate risk, given the federal government's views on merits of Plaintiffs' labor law claims, as expressed in a recent *amicus curiae* brief submitted in the First Circuit.  Under these circumstances, and in a case that also poses considerable enforcement and collection issues, achieving a settlement at close to the limit of Defendants' ability to pay is an excellent result for the class.

Class Counsel provided notice to the class that went above and beyond the Federal Rules' requirements.  The Class is comprised of young, international travelers. This makes the class difficult to reach.  The Claims Administrator, therefore, provided multiple notices by e-mail, by text, or by mail to potential class members.  Notice was also available through a website maintained by the Claims Administrator. Through these means, and through an e-mail address, physical address, and telephone number that potential class members could contact, the Claims Administrator logged hundreds of thousands of attempts to contact potential class members, or interactions with them. Moreover, these efforts to provide notice to the class about the settlement were in addition to two prior rounds of notice (one each at the FLSA and Rule 23 certification stages) that potential class members received alerting them to the existence of the case, and the existence of the website by which they could monitor the case.

In sum, this litigation has been long and hard fought and its outcome was uncertain.  The settlement delivers meaningful injunctive relief and substantial financial relief close to the limit of Defendants' ability to pay, and the notice provided to the class was fair, reasonable, and appropriate.

For these reasons and those that follow, Class Counsel hereby request that the Court:

- grant final approval to the Rule 23 class members;

- finally certify the FLSA classes and confirm that the settlement also satisfies the FLSA settlement criteria;

- permit certain late class member claims;

- authorize communications with certain individuals who submitted both an exclusion and claim form in order to clarify their intentions;

- finalize the *cy pres* recipient for the common fund's residue of uncashed checks; and

- enter final judgment.

By separate simultaneous motion, Class Counsel request that the judgment provide for Class Counsel's fees and expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action on November 13, 2014.  ECF No. 1.  The complaint was subsequently amended three times to add new plaintiffs (*see* ECF No. 858), but the theory of the case has remained constant.  Plaintiffs alleged that au pairs were not paid in conformance with the Fair Labor Standards Act ("FLSA"), as required by Department of State ("DOS") regulations.  *See* 22 C.F.R. § 62.31(j)(1).  Specifically, the complaint claims that Defendants (the 15 companies then-authorized by the DOS to sponsor au pairs for visas) were the au pairs' "joint employers" and had caused host families to pay au pairs only $195.75 per week for up to 45 hours of work, which is $4.35 per hour — far less than the minimum wage required by the FLSA and many states.  *See* ECF

No. 983 ¶¶ 319-326 (Third Amended Complaint).  The au pairs also alleged that Defendants conspired to fix their wages at this unlawful amount and lied to them (among others) about their ability to negotiate.  *See, e.g.*, *id.* ¶¶ 8, 83.  The claims in this complex action, therefore, involved FLSA, antitrust, RICO, and state consumer protection and labor laws.

Over more than four years, the Parties litigated scores of motions:  motions to dismiss and to compel arbitration (ECF Nos. 258, 705); FLSA conditional certification and decertification (ECF Nos. 569, 1066, 1069, 1070, 1072, 1077); Rule 23 class certification (ECF No. 828); motions to exclude expert and lay testimony (ECF Nos. 955, 1079); summary judgment motions (ECF No. 1102); numerous motions for reconsideration (ECF Nos. 411, 728, 858, 1126, 1130); many motions to compel the production of discovery (ECF Nos. 344, 506, 624, 969, 1061); as well as two appeals to the Tenth Circuit (ECF Nos. 723, 1041, 1161).  The Parties also engaged in a massive discovery effort, exchanging hundreds of thousands of pages of documents, conducting 143 depositions on three continents (plus two more, remotely), and subpoenaing records and depositions from third parties.  *See* Decl. of Peter M. Skinner in Supp. Of Pls.' Mot. For Final Approval of Class and Collective Action Settlement and for Fees ("Skinner Decl.") ¶ 5; ECF No. 905.

The Court certified Rule 23 classes, and conditionally certified FLSA classes, that cover dozens of federal and state claims.  *See* ECF Nos. 569, 828.  Following the Court's denial of summary judgment, the eleven named Plaintiffs were prepared to take Defendants, who effectively constitute the entire au pair industry, to trial beginning February 25, 2019.  *See* ECF Nos. 558 at 29-30; 1124.

At the final pretrial conference, Defendants requested the Court's assistance in mediating a settlement.  The Court referred the matter to Magistrate Judge Michael Hegarty, who scheduled an in-person mediation session for October 17, 2018.  *See* ECF No. 1138.

In advance of that mediation, the Parties prepared and exchanged 10 mediation briefs, totaling more than 100 pages.  Skinner Decl. ¶ 7.  The extensive briefs, which also contained 75 exhibits totaling approximately 1,466 pages, were exchanged among the Parties and Judge Hegarty (along with a limited amount of *ex parte* material).  *Id.*

Dozens of lawyers representing all of the Parties traveled to Denver to participate in the mediation on October 17.  *Id.*  The Parties met with Judge Hegarty for more than thirteen hours.  *Id.*  Although the Parties were unable to reach an agreement at the initial mediation supervised by Judge Hegarty, it was the first time—in the face of the imminent start of trial—that the Defendants engaged in meaningful settlement discussions.  *Id.* ¶ 8.

The Parties then continued negotiations under the supervision of Judge Hegarty—while simultaneously preparing for trial—for another month.  *Id.* ¶¶ 8-9. Finally, on November 19, 2018, the Parties reached agreement on the core terms of a settlement, including the settlement amount, the nature of the agreed-upon prospective relief, and scope of the releases Defendants would receive.  *Id.* ¶ 9.  The Parties then negotiated the final language over several more weeks, finalizing the Settlement Agreement on January 9, 2019.  *See* ECF No. 1187.

The Settlement Agreement creates a settlement fund of $65,500,000. *Id.* That is the largest class action employment law settlement in 2018.[2] In addition, the Settlement Agreement's injunctive relief ensures that au pairs will receive (1) accurate disclosures (addressing the fraud-based claims) of (2) information that will encourage informed negotiation and a well-functioning market (addressing the antitrust claims).

On January 23, 2019, the Court granted preliminary approval of the proposed FLSA and Rule 23 collective and class action settlement, approved the Settlement Notice, appointed the Claims Administrator, and scheduled a fairness hearing. *See* ECF No. 1191. The Court further ordered class members to submit objections, exclusions, and claim forms by no later than May 2, 2019.

## NOTICE EFFORTS

The Claims Administrator received 209,267 individual au pair records from Defendants, representing 168,833 unique potential class members. *See* Decl. of Claims Administrator, attached as Exhibit 4 to the Rodriguez Decl. ("Keough Decl.") ¶ 3. Of those, 150,511 had e-mail addresses that were used to distribute the court-approved notice of settlement. *Id.* ¶ 6. A further 15,870 text message notices were sent, and 24,138 mailed notices were sent. *Id.* ¶¶ 7-8. The Claims Administrator provides additional details of the methods it used to verify mailing addresses and the success rates of the e-mail and text message notices in its declaration filed herewith. Ultimately, the Claims Administrator was able to deliver notice to 97.78% of potential class members. *Id.* ¶ 13. The total number of notices exceeds the number of class members

---

[2] The settlement is larger than any other class action employment law settlement reported in Seyfarth Shaw's 15th Annual Workplace Class Action Litigation Report, published before the Final Settlement's terms were public, in January 2019. https://www.seyfarth.com/dir_docs/publications/2019_WCAR_Chapters_1-2.pdf.

for two reasons: where an e-mail address or cell phone number resulted in an undeliverable message, an additional form of notice was utilized.  *Id.* ¶ 12.  Class Counsel also made the decision to mail notice to all potential class members in China after being made aware of a concern that electronic notice could be blocked by China's government.  *Id.*

The Claims Administrator also re-sent notice as a reminder by sending an additional 3,724 e-mails towards the end of the notice period.  *Id.* ¶ 14.  Finally, Class Counsel reached out to potential class members with whom counsel had previously had individualized contact (such as named plaintiffs, or deposed au pairs) to inform them of the notice period and assist them in responding to the notice.

Several methods of receiving information were available to potential class members in addition to the process outlined above.  The Claims Administrator maintained a tri-lingual website at www.aupairclassaction.com (also available at www.aupairwageaction.com) that contained the full Court-approved notice as well as other useful documents, an FAQ, and electronic means by which au pairs could submit a claim form or request for exclusion.  *Id.* ¶¶ 15-16.  The Claims Administrator also maintained a physical mailing address, e-mail address, and telephone number through which potential class members could seek information and, except in the case of the telephone number, submit claim forms, requests for exclusion, comments, objections, or notices of an intention to appear at the hearing.  *Id.* ¶¶ 18, 22.  The settlement website received almost 127,000 page views from over 33,000 unique users; the Claims Administrator responded to over 3,000 e-mails, and fielded over 450 phone calls.  *Id.* ¶¶ 17, 19-20.

## THE RESPONSE RATE

Because some au pairs responded by mail, which could have been posted from anywhere in the world as late as May 2, and because of duplicate claims submitted, late claims, and the possibility of fraudulent or invalid claims, it is not yet possible to provide a final claim count.  The Claims Administrator received at least 9,458 claims that appear to be both valid and timely.  *Id.* ¶ 27.  As a result of the original Rule 23 class certification phase of the case, the Claims Administrator had received 1,194 timely opt-outs.  *Id.* ¶¶ 24-25. During this settlement notice phase of the case, an incremental 8 timely opt-out forms have been received.  *Id.* ¶ 26.  As discussed further below, other than claims and opt-outs, the Claims Administrator received five comments or objections from Rule 23 class members.  *Id.* ¶ 23.  All five of those responses—none of which, as discussed below, actually objects to the Settlement as unfair or inadequate— have been filed on the docket.  ECF Nos. 1202, 1203; *see* Fed. R. Civ. Proc. R.  23(e)(5).

## ARGUMENT

## I.      THE SETTLEMENT SHOULD BE FINALLY APPROVED UNDER RULE 23.

Rule 23(e) requires judicial approval for class-wide settlements, which is subject to the Court's sound discretion.  *United States v. Hardage,* 982 F.2d 1491, 1495 (10th Cir. 1993).  The law favors and encourages settlements, especially in complex actions. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001). Courts in the Tenth Circuit use four factors to determine if a settlement is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e)(2): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and

fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citing *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). This standard substantially overlaps with the standard that courts apply in deciding whether to approve settlements under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016). In both cases, the touchstone of the analysis is fairness. *Id.*

### A.   The Settlement was honestly and fairly negotiated.

There is a presumption that settlements are informed and non-collusive if the class is represented by experienced counsel, the settlement is the result of arms-length negotiation before an experienced mediator, and substantial discovery occurs prior to the settlement. *See Newberg on Class Actions* 5th § 13:14, nn.4.50, 5, 6 (collecting cases). This Settlement satisfies each criterion.

The Settlement was reached after protracted discovery, significant motion practice, and as a product of arm's length negotiations. *See* Skinner Decl. ¶¶ 7-10; Fed. R. Civ. P. 23(e)(2)(B) (discussing "arm's length" negotiation). The parties decided to settle on the eve of trial, and with the aid of extensive mediation efforts spread over several months and overseen by a skilled, experienced, independent, and patient mediator. Skinner Decl. ¶¶ 7-10. Finally, Plaintiffs are represented by experienced counsel, with expertise in class action litigation and deep experience in wage-and-hour, RICO, and antitrust litigation. *See* ECF Nos. 565-2 at 26-27; 828 at 33-34. The Settlement is thus informed and non-collusive.

**B.      Serious questions of law and fact exist.**

Serious questions of law and fact drove this Settlement.  Defendants have vigorously contested Plaintiffs' legal and factual arguments throughout the litigation, including joint employer liability, preemption, the existence of an anti-competitive conspiracy, and the legality of a 40% room and board deduction from au pair wages. Moreover, in denying all Parties' summary judgment motions, the Court found that significant issues of fact remained.  *See* ECF No. 1102.  In addition, important motions remain pending, the outcome of which could materially alter the Parties' negotiating positions.  These include Defendants' motions to decertify the FLSA classes and Defendants' motions to reconsider the Court's summary judgment rulings.  *See* ECF Nos. 1066, 1068, 1070, 1072, 1077, 1130, 1156.  Still other critical issues would be briefed and decided *in limine*.  *See* ECF No. 1140 (Aug. 15, 2018 Hr'g Tr. at 37:15-38:11).

In addition, as the Court is aware, the federal government recently stated that it believes state and local laws are pre-empted by the au pair regulations and further suggested that a room and board deduction might be appropriate.  *See* Decl. of Sean P. Rodriguez in Supp. Of Pls.' Mots. For Final Approval and for Fees and Expenses ("Rodirguez Decl."), at Ex. 3.  Although Plaintiffs disagree with the government's conclusions and do not believe its views – advanced for the first time in an *amicus curiae* brief and notably at odds with prior statements by the government – are entitled to deference, the government's entry into this dispute is notable and, at a minimum, its newfound views enhanced the risk to the class on appeal of a successful trial judgment.

### C.     The value of immediate recovery outweighs the risk of protracted litigation.

In arriving at the Settlement, Plaintiffs have considered all material factors, including the "costs, risks, and delay of trial and appeal," as well as the ability to collect on a significant judgment.  Fed. R. Civ. P. 23(e)(2)(C)(i); *New Eng. Carpenters' Health Benefits Fund v. First DataBank*, 602 F. Supp. 2d 277, 281 (D. Mass. 2009) (considering defendants' "limited finances and questionable insurance coverage" because "you can't get blood from a stone"), *aff'd*, 582 F.3d 30 (1st Cir. 2009).  The proposed Settlement strikes an appropriate balance between the strength of the Plaintiffs' case and the benefit to the class of securing a settlement now, rather than after a lengthy trial, inevitable appeals, and a potentially lengthy judgment-enforcement process.  Au pairs have a particularly strong interest in prompt payment given their youth and generally limited resources.[3]  In addition, and after extensive financial discovery, Plaintiffs believe the Settlement is at or near the limit of Defendants' ability to pay, such that any recovery after trial would not be significantly higher regardless of the size of the award, absent inevitably lengthy, costly, and ultimately speculative efforts to enforce any judgment against the Defendants' corporate affiliates.  *See* Skinner Decl. ¶ 11; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd sub nom.*, *In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997) (ability to pay "can be relevant to the Court's determination of the Settlement's fairness.")

---

[3] For example, named plaintiff Beltran had a minimum wage job and enrolled in school on scholarships following her au pair tenure.  *See* ECF No. 943-48 (Beltran Dep. Tr. 33-37); *see also* 22 C.F.R. § 62.31(d)(1) (au pairs must be between the ages of 18 and 26).

### D.     The Settlement is fair and reasonable.

There are "no grounds to doubt [the Settlement's] fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys). . . ." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006).  The $65.5 million recovery and injunctive relief are meaningful and beneficial to au pairs.

The Settlement will provide real relief for all of Plaintiffs' claims.  The substantial monetary payment — one of the largest wage and hour settlements in recent years[4] — will provide redress for Defendants' alleged failure to satisfy the applicable minimum wage statutes.  Although much smaller than the size of the judgment Plaintiffs would seek at trial, Plaintiffs believe the Settlement figure is close to if not more than the maximum that they might realistically collect following a successful trial and any potential appeals, given the exhaustion of available insurance and Defendants' financial limitations.  Skinner Decl. ¶ 11.  Any post-verdict recovery would also have likely entailed substantial judgment enforcement efforts aimed at the Defendants' affiliates, introducing more risk.  In addition, one of the damages models advanced by Plaintiffs' expert returned a pre-trebled damages figure of $53.5 million, which is 18% *smaller* than the settlement figure.  *See* ECF No. 943-1 ¶ 139.

Further, by requiring Defendants to disclose that au pairs are free to bargain for compensation that exceeds the applicable legal minimum, the Settlement ensures that au pairs will receive (1) accurate disclosures (addressing the fraud-based claims) of (2) information that will encourage informed negotiation and a well-functioning market

---

[4] *See* 15th Annual Workplace Class Action Litigation Report, 34-35 (Jan. 2019), https://www.seyfarth.com/dir_docs/publications/2019_WCAR_Chapters_1-2.pdf.

(addressing the antitrust claims).  Rodriguez Decl. Ex. 1 ¶ 12.  In exchange, the Classes are providing releases to the Defendants and to host families.  *Id.* at Ex. 1 ¶¶ 3-6.

Further, Class Counsel has devised a Plan of Allocation that will compensate class members based on both the extent of their injuries and the strength or viability of their claims.  *See In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 692–93 (D. Colo. 2014) ("As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable.") (citations omitted).The allocation formula considers the length of an au pair's service (App'x A, Step F), the relevant federal or state minimum wage (App'x A, Steps A, B), and the nature of the au pair's claims.  This sort of multi-factor recovery ensures fairness to all class members.  *See Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000) ("[I]f differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set that was more likely to succeed.") (citations omitted).  Moreover, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re Crocs*, 306 F.R.D. at 692 (citation omitted); *see also Law v. NCAA*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000) (courts "give[] substantial weight to the opinions of experienced counsel . . . regarding the fairness of the settlement and allocation.").

The Plan of Allocation, the full calculation for which is attached as Appendix A,[5] provides for several payments before the payments can be made to the class as a whole.  The simultaneously-filed motion for fees and expenses seeks a total of

---

[5] Appendix A is identical in every respect to Appendix A of Plaintiffs' motion for preliminary settlement approval, ECF No. 1189.

$26,270,535.33 in fees and expenses.

In addition, "Participation Awards" will be paid to au pairs at the rate of $5,000 for a named Plaintiff, $1,000 for au pairs who were deposed, and $100 for each FLSA class member who opted-in.  These awards are not cumulative (class members receive the largest to which they are entitled), but are in addition to the recovery they will receive as class members.  The awards recognize the service that certain au pairs provided and the sacrifices they made or were willing to make—*e.g.*, lost wages or personal time due to a deposition.  The Participation Awards total approximately $600,000.

The class, therefore, will share in awards totaling approximately $38,600,000. With 9,458 claimants, the average recovery will be approximately $4,000.  Plaintiffs' expert previously estimated that the "typical standard au pair" who was entitled to the federal minimum wage would have damages of $7,500 for a full year's au pair placement.  *See* ECF No. 560-65 ¶ 96.  The average claimant, therefore, will receive approximately 54% of the total damages under this model—a rate of recovery far above the average class action settlement.[6]  *See In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. at 691 n.20 ("According to Plaintiff's damages expert, the $10 million cash Settlement, assuming a 100% claim rate, represents a recovery of approximately 1.3% of the amount of damages that could be achieved, assuming recovery by the entire Settlement Class for the entire Settlement Class Period. According to a recent survey of securities class action settlements, this is in line with the median ratio of settlement size to investor losses." (citations omitted)).

---

[6] If the Court grants Plaintiffs' request to honor late claims, as discussed in Section III, below, the number of claims is expected to increase to approximately 10,913, with an average recovery of approximately $3,500, or around 47% of actual damages.

Although a small subset of class members will receive "Participation Awards," which will differentiate them slightly, these types of awards are well-supported by existing case law.  Indeed, named plaintiffs, *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003), and FLSA opt-in plaintiffs who "dedicated considerable time to the prosecution of this matter," *Shaw v. Interthinx, Inc.*, 13-cv-01229-REB-NYW, 2015 WL 1867861, at *9 (D. Colo. April 22, 2015), are routinely compensated through incentive payments.  *See Chieftain Royalty Co. v. Enervest Energy Instit. Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017), *cert. denied,* 139 S. Ct. 482 (2018).  When evaluating the reasonableness of service awards, courts may consider factors such as "(1) the actions that the [litigant] took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the [litigant] expended in pursuing the litigation."  *Shaw*, 2015 WL 1867861, at *8; *see also Lane v. Page*, 862 F. Supp. 2d 1182, 1236-38 (D.N.M. 2012) (explaining that participation awards have been "consistently" justified for efforts that include "work" undertaken in service of the class).

These factors are met here.  Each of the named Plaintiffs submitted declarations, sat for lengthy depositions, provided written and document discovery, and assisted Class Counsel in preparing the case.  Therefore, the proposed $5,000 awards are reasonable.  *See, e.g.*, *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award); *Rausch v. Hartford Fin. Servs. Grp.*, 2007 WL 671334, at *3 (D. Or. Feb. 26, 2007) (approving $10,000 award).  The 90 FLSA opt-in deponents also contributed significantly to the case, often at great personal expense: many were required to appear for depositions on short notice, causing them to miss

15

work, school and other appointments, and to find childcare. *Chieftain Royalty*, 888 F.3d at 467 (discussing burden as a significant factor). Each spent time with Class Counsel preparing for the depositions, and many also produced documents and answered written discovery requests from Defendants. *See id.* at 468. Regardless of whether they were deposed, the FLSA opt-ins also responded to surveys and exposed themselves to discovery. *See Ott v. Publix Super Markets, Inc.*, No. 12-cv-00486, ECF No. 247 at 15-17 (M.D. Tenn. Feb. 3, 2015); *id.* ECF No. 249 (approving settlement).

Moreover, the named Plaintiffs and Class Counsel believe that the Settlement is fair and reasonable in light of all of the circumstances of the case. *See Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."); *see also Chavez v. Excel Services Southeast, Inc.*, No. 13-cv-3299, 2015 WL 4512276, at *5 (D. Colo. July 27, 2015) (Arguello, D.J.) (same for FSLA settlement approval). A court is "'entitled to rely upon the judgment of experienced counsel for the parties [and] absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 292 (D.N.M. 2002). Here, Class Counsel – law firms with extensive experience in the area of complex and class action litigation, and wage and hour law, and which are intimately familiar with the facts of this litigation – believe the Settlement provides a fair, reasonable and adequate result for the Class, in light of the risks and costs of continued litigation. Skinner Decl. ¶ 14.

The named Plaintiffs also endorse the Settlement, *id.* ¶ 12, as each has submitted claim forms and none have filed objections, Keough Decl. ¶ 29. Pursuant to the Settlement Notice and notice plan approved by the Court (*see* ECF No. 1191), the

Claims Administrator used its best efforts to notify class members – who are located all over the United States and the globe.  *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("[O]ur precedent focuses upon whether the district court gave the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.") (citation omitted).  In the end, and as detailed above, over 190,000 pieces of notice, or reminder notice, were sent by e-mail, text, or mail, in addition to the publication of the notice on a class website.  Against Class Counsel's extensive notice effort, only five class members submitted responses to the Settlement and, as discussed below, none of them objected to it as inadequate or unfair—to the contrary, the only true "objections" to the Settlement came from two au pairs, who believed that the $65.5 million Settlement payment was too big.

Finally, as detailed in Plaintiffs' Motion for Attorneys' Fees and Expenses, Class Counsel's request for 35% fees plus recovery of expenses is in line with similar cases.  *See, e.g., Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (approving 37% in fees which was "well within the normal range for a contingent fee award"); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (39% of settlement fund as fees); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (requested fee was "in the middle of the ordinary 20%–50% range and is presumptively reasonable").

## E.   There Have Been No Objections To The Settlement

As further evidence that the Settlement is fair, reasonable, and adequate, Class Counsel received only five formal responses to the Settlement, other than claims and

opt-outs.  None of those five responses objects to the Settlement as unfair or inadequate.

The submissions from Ms. Logan (ECF No. 1202 Ex. 1) and Ms. Ramirez (ECF No. 1203) raise serious issues, but ones that are predominantly beyond the scope of this lawsuit.  Both allege various forms of trauma that they suffered as a result of the behavior of their host families due to causes other than underpayment of legally required wages or related misrepresentations.  Because their grievances are outside of the scope of this lawsuit, the Final Settlement is no obstacle to redress for the issues in Ms. Logan and Ramirez's submissions, and any potential claims that Ms. Logan or Ms. Ramirez may have based on their treatment by their host families are not released by the settlement.  In fact, the Settlement Agreement expressly excludes "claims or potential claims that any au pair may possess against her or his host family or families if such claims are (i) unrelated to the Claims asserted in the Litigation or (ii) unrelated to host family obligations under the federal Au Pair Program requirements, e.g., compensation, hours, education, or services required."  (ECF No. 1190-1 § III.A.3.)

The submissions from Ms. Scholz (ECF No. 1202 Ex. 3) and Ms. Bein (ECF No. 1202 Ex. 4) assert that the settlement is too generous to the Class.  They believe they should receive less money because au pairs agreed to a wage of $195.75 in their contracts.  They further believe the "cultural" aspect of the au pair program is inconsistent with higher wages.  Class Counsel appreciates and understands the spirit of these comments, but there is no daylight between cultural exchange and better wages; better conditions and more resources promote better and more exchange.  To the extent these class members mean to object, they can suffer no actual harm and

therefore lack standing.  The au pair program sponsors have agreed to the common fund amount and the fund comes from them, not any class member.  Nor does the fund lessen any obligation or duty they owe to class members.

Ms. Magon (ECF No. 1202 Ex. 2) actively supports the settlement and seeks to help gain the Court's approval.

*      *      *

The recovery to the Classes; the arm's-length nature of the negotiations; the involvement of an independent and highly experienced mediator; the participation of sophisticated counsel throughout the litigation; and the overwhelming support from the members of the Classes all compel a finding that the Settlement is fair, reasonable, and adequate.  For the same reasons the Settlement meets Rule 23's fairness criteria, the Court should also find that it is fair and equitable under the FLSA.  *See Whittington v. Taco Bell of America, Inc.*, No. 10-cv-1884, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013) ("To determine whether a proposed settlement under Section 216(b) is fair and equitable to all parties, courts have regularly applied the same fairness factors as apply to a proposed class action settlement under Fed.R.Civ.P. Rule 23(e)…"); *see also Pliego*, 313 F.R.D. at 128 (Rule 23 and FLSA settlement approval overlap).

## II.    THE COURT SHOULD FINALLY CERTIFY THE FLSA CLASSES FOR SETTLEMENT PURPOSES.

"When parties settle FLSA claims before the Court has made a final certification ruling, the court must make some final class certification finding before it can approve a collective action settlement."  *Tommey v. Computer Sciences Corp.*, No. 11-cv-2214, 2015 WL 1623025, at *1 (D. Kan. April 13, 2015); *see also* ECF No. 1191 at 2-3 (citing *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001)).  "Final certification

for settlement purposes requires the Court to determine whether the settlement class members are similarly situated." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171 (D. Colo. 2018) (Arguello, J.).

On March 31, 2017, the Court conditionally certified eleven FLSA classes and subclasses for minimum wage, overtime, and unpaid training violations. *See* ECF No. 525 ("Certification Order").[7] The FLSA classes include au pairs who worked for six of the fifteen defendants in this lawsuit: AuPairCare, Au Pair in America ("APIA"), Cultural Care, Expert Au Pair, Go Au Pair, and InterExchange (collectively the "FLSA Defendants"). The Court certified a class each for wage violations (failure to pay the minimum wage, unlawful room and board deduction, unpaid training) for six FLSA Defendants, and certified five overtime subclasses for au pairs who worked after January 1, 2015, for each of AuPairCare, APIA, Cultural Care, Expert Au Pair and Go Au Pair. ECF No. 569. Pursuant to the Court's Certification Order, notice was first sent to potential class members in June 2017. *Id.* The opt-in period closed on April 19, 2018, by which time 4,283 au pairs had joined one of the six FLSA classes in the lawsuit. During the opt-in period the FLSA Defendants also conducted discovery on the au pairs that opted in to their classes. By the time that discovery closed, the FLSA Defendants had deposed 89 opt-in au pairs.

Where, as here, there are overlapping certified Rule 23 classes and conditionally certified FLSA collective action classes, courts routinely forgo the similarly situated FLSA analysis for purposes of final certification, because that standard had necessarily been met during Rule 23 certification. *See, e.g., See, e.g., Kramer v. Am. Bank & Tr.*

---

[7] The Court amended its Order on April 28, 2017 (ECF No. 539), and again on June 9, 2017 (ECF No. 569).

*Co., N.A.*, No. 11 C 8758, 2017 WL 1196965, at *11 (N.D. Ill. Mar. 31, 2017) ("For the same reasons that the Court finds that Plaintiffs have satisfied the commonality, typicality, and predominance requirements in Rule 23, the Court find that Plaintiffs have met their burden to show that the opt-in plaintiffs are 'similarly situated' under Section 216(b)."); *Chastain v. Cam*, No. 3:13-CV-01802-SI, 2016 WL 1572542, at *3 (D. Or. Apr. 19, 2016) ("if certification of a plaintiff's class action under Rule 23 is proper, certification of the collective action is proper as well" (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016))); *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 314 F.R.D. 449, 456 (E.D. Wis. 2016) ("[A] minimum logic would seem to dictate that a class satisfying Rule 23(a) and Rule 23(b)(3), including the requirements of commonality, typicality, adequacy of representation, predominance, manageability, etc., also satisfies the FLSA's less onerous 'similarly situated' requirement (even if it is conceivable that the converse may not always be true)."); *Lukas v. Advocate Health Care Network & Subsidiaries*, No. 1:14-CV-2740, 2015 WL 5006019, at *8 (N.D. Ill. Aug. 19, 2015) (holding that "[b]ecause Plaintiffs' proposed class meets the Rule 23 standards for class certification, it necessarily meets the much lower bar for FLSA collective action certification."); *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 473 n.12 (S.D.N.Y. 2014) (denying, in a footnote, motion to decertify FLSA collective action for the same reason as denying motion to decertify Rule 23 state minimum wage class).

Regardless, au pairs in the FLSA classes are similarly situated in two critical ways: (1) they all raise similar allegations and claims that the FLSA Defendants' policies violated the FLSA by failing to pay the correct minimum wage (they allege they were paid $195.75 per week for up to 45 hours of work, per the FLSA Defendants' policies),

overtime, and for training; and (2) the FLSA Defendants have asserted certain common defenses to those allegations and claims, including that they are not joint employers and that a room and board credit applies to au pair wages.  Thus, a "bona fide dispute" exists, and the au pairs are similarly situated because their claims and allegations are common to the FLSA classes, as are the defenses to those claims and allegations.  *See Davis*, 292 F. Supp. 3d at 1172.  Put differently, there is no scenario in which some au pairs in a particular FLSA class or subclass would succeed on their claims, while others would succumb to the relevant defense—they would rise and fall together.  Accordingly, the FLSA classes are similarly situated for settlement purposes.  *See id.* at 1171 (finding that FLSA classes were similarly situated where plaintiffs all paid according to same policy and "Defendants' defenses appear to apply equally" to all plaintiffs).

Moreover, "fairness and procedural considerations—such as allowing Plaintiffs to pool their resources for litigation—also favor collective treatment."  *Id.* at 1171-72.  "The FLSA's collective action has an important remedial purpose: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity."  *Jancich v. Stonegate Mortg. Corp.*, 2014 WL 1011480, at *4 (D. Kan. Mar. 17, 2014) (internal quotation marks omitted).  Through this litigation au pairs have been empowered to pursue claims against their visa sponsors that they would likely have never been able to pursue individually.  Also, although each individual FLSA opt-in has not personally approved the Settlement, all signed consent to join forms in which they "agree[d] to be bound by any settlement of this action approved by the

named Plaintiff for" the relevant FLSA Defendant.  Rodriguez Decl. Ex. 2; *see Davis* 292

F. Supp. 3d at 1172 (citing consent to be bound as a factor in favor of final certification).

For these reasons, Plaintiffs respectfully request that the Court finally certify the

FLSA Classes for settlement purposes.

## III.    ADDITIONAL ORDERS REQUESTED OF THE COURT

Certain potential class members submitted the required claims forms late or in a

contradictory manner.  Class Counsel requests approval to vary from strict enforcement

of the Court-approved notice plan in order to take account of the nature of the class and

to better serve the class members' wishes.  Class Counsel also seeks approval of a *cy*

*pres* recipient.

Late Claim Forms.  The Claims Administrator has received approximately 1,165

late claim forms (and 290 incomplete claim forms).[8]  Keough Decl. ¶ 27.  Although the

forms are untimely, the worldwide nature of the class and the difficulty of getting in

contact with a class that, by definition, is transient, counsels in favor of leniency.  The

number of late claim forms also argues in favor of relief from the deadline, as they

represent a significant portion of the claiming class members.  Class Counsel requests

that the Claims Administrator be permitted to honor any claim forms received prior to

the date of this brief, May 16, 2019.

Contradictory Submissions.  The Claims Administrator has received both a

request to exclude and a claim form from 25 potential class members.  *Id.* ¶ 28.  Class

Counsel requests that the Claims Administrator (or counsel) be permitted to reach out to

---

[8] The Claims Administrator also received 81 late requests for exclusion (55 of those late requests were received after the Rule 23 notice period, but *before* the settlement notice period; *i.e.*, they were reactions to the Rule 23 notice, not the settlement notice). Keough Decl. ¶¶ 25-26.  Plaintiffs asked the Defendants for their position on likewise permitting late opt-outs, and Defendants objected.

these au pairs, have them explain which option they want, and honor that choice. Again, this relief will permit the settlement to better reflect the wishes of the class members.

*Cy Pres* Recipient(s).  Under the Plan of Allocation, it is anticipated that only the funds from uncashed checks will remain in the common fund.  *See* Rodriguez Decl. Ex. 1 § VII.21.c.  The Claims Administrator will make reasonable efforts to ensure all claimants cash their checks, but some residue is inevitable.  Plaintiffs and Defendants have not been yet been able to agree on a recipient.  In order to facilitate the Court's appointment of a *cy pres* recipient at the Fairness Hearing, Plaintiffs and some Defendants have agreed that, with the Court's indulgence, they should continue to discuss and submit to the Court five business days prior to the Fairness Hearing either a joint nominee or competing nominees in submissions not to exceed 2-pages each for Plaintiffs and Defendants.[9]

## CONCLUSION

Plaintiffs respectfully request that the Court finally approve the Settlement, certify the FLSA classes, and enter the attached Proposed Order for Miscellaneous Relief, and Proposed Final Order and Judgment, both submitted herewith.

---

[9] AuPairCare, InterExchange, and Cultural Care explicitly agreed with Plaintiffs to this procedure.  Most other Defendants did not object to Plaintiffs' statement that it would propose this procedure to the Court.  AIFS/APIA and Expert AuPair agreed "provided that the page limit is increased to 3 pages per nominee and defendants preserve their right to separate submissions."

Dated: May 16, 2019                    Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

*/s/ Peter M. Skinner*
Matthew L. Schwartz
Peter M. Skinner
Dawn L. Smalls
Joshua J. Libling
Byron Pacheco
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
rjackson@bsfllp.com
dsmalls@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com
jvaldivieso@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1410 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## APPENDIX A: PLAN OF ALLOCATION

The full calculation that will be used in the Plan of Allocation (after payment of costs, expenses, fees, and participation awards) is as follows. The terms "Primary Claim," "Training Claim," "State Claim Class A," and "State Claim Class B" have the same meaning as used in the Settlement Agreement.

| Step | Description | Formula |
|------|-------------|---------|
| A | Calculate federal wage per Plaintiffs' theory of the case for placements after November 13, 2010. | (40hrs * federal minimum) + (5hrs * federal minimum * 1.5) |
| B | Calculate state wage per Plaintiffs' theory of the case for placements after November 13, 2010. | (40hrs * state minimum) + (5hrs * state minimum * 1.5) |
| C | Take the difference between the federal and the state minimum wages, if the state minimum is larger. | B-A |
| D | Weight the state claim at 40% relative to the federal claim and calculate the weekly claim. | A+40%C |
| E | Calculate weekly damages. | D – weekly stipend |
| **F** | **Calculate Primary Claim.** | **E * weeks spent as an au pair** |
| **G** | **Calculate Training Claim.** | **80%D** |
| H | Calculate weekly damages for placements prior to November 13, 2010. | Repeat steps A-E. |
| **I** | **Calculate State Claim Class A** (claims within a state limitations period)**.** | **40%(H * weeks spent as an au pair)** |
| **J** | **Calculate State Claims Class B** (claims not within a state limitations period)**.** | **20%(H * weeks spent as an au pair)** |
| K | Calculate total claimed by settlement class. | F + G + I + J for all participating class members. |
| L | Calculate pro rata share. | K / funds available for disbursement to class members |
| **M** | **Calculate individual payments.** | **L * [F, G, I, or J, as appropriate]** |

**<u>Certificate of Service</u>**

I hereby certify that on May 16, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

  */s/ Peter M. Skinner*
Peter M. Skinner