**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
        and those similarly situated,

        Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

        Defendants.

---

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES**

---

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................. 2

ARGUMENT.................................................................................................. 7

    I.    APPLYING THE *JOHNSON* FACTORS DEMONSTRATES
    THAT 35% IS APPROPRIATE UNDER THE PERCENTAGE
    OF THE FUND APPROACH.....................................................................7

        A.    The Settlement's True Economic Value Far Exceeds
        the Common Fund. ...........................................................7

        B.    Time and labor required. ..................................................8

        C.    The requisite skill and the difficulty of the questions
        presented. .................................................................... 10

        D.    Preclusion of other employment and time limitations. ................... 11

        E.    The customary fee and fees awarded in similar cases.................. 12

        F.    The contingency nature and "undesirability" of the
        case. ............................................................................ 13

        G.    Potential damages involved and the results obtained. .................. 14

        H.    The experience, reputation, and abilities of Class
        Counsel. ....................................................................... 15

        I.    Nature and length of the professional relationship with
        the client....................................................................... 16

    II.    PLAINTIFFS' EXPENSES ARE REASONABLE AND WERE
    NECESSARILY INCURRED IN THE PROSECUTION OF
    THIS ACTION. ................................................................................. 16

    III.    A LODESTAR CROSS-CHECK CONFIRMS THE
    REQUEST IS REASONABLE................................................................ 18

        A.    Class Counsel's hours and rates are reasonable......................... 19

        B.    The multiplier is reasonable (and, in fact,
        conservative)................................................................. 20

CONCLUSION ........................................................................................... 20

i

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Merit Energy Co.*
  2008 WL 3378526 (D. Colo. Oct. 20, 2009)................................................................ 6

*Barbosa v. Nat'l Beef Packing Co., LLC*
  No. 12-2311, 2015 WL 4920292 (D. Kan. Aug. 18, 2015) ......................................... 17

*Bee v. Greaves*
  910 F.2d 686 (10th Cir. 1990).................................................................................... 18

*Brown v. Phillip Petroleum Co.*
  838 F.2d 451 (10th Cir. 1988)................................................................................ 6, 14

*Centennial Archaeology, Inc. v. AECOM, Inc.*
  688 F.3d 673 (10th Cir. 2012).................................................................................... 20

*City of Almaty v. Ablyazov*
  15-CV-05345 (S.D.N.Y. Apr. 30, 2018)...................................................................... 20

*CompSource Oklahoma v. BNY Mellon, N.A.*
  No. 08-cv-469, 2012 WL 6864701 (E.D. Okla. Oct. 25, 2012)................................... 19

*Cultural Care, Inc. v. Massachusetts*
  2017 WL 327011 (D. Mass. Aug. 1, 2017).................................................................... 9

*Davis v. Crilly*
  292 F. Supp. 3d 1167 (D. Colo. 2018)......................................................................... 5

*Farrar v. Hobby*
  506 U.S. 103 (1992) .................................................................................................... 6

*Gottlieb v. Barry*
  43 F.3d 474 (10th Cir. 1994)................................................................................... 5, 6

*Gudenkauf v. Stauffer Commc'ns, Inc.*
  158 F.3d 1074 (10th Cir. 1998).................................................................................... 7

*In re Crocs, Inc. Securities Litigation*
  2014 WL 4670886 (D. Colo. Sept. 18, 2014)................................................... 8, 11, 21

*In re High Tech Employee Antitrust Litig.*
  2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ............................................................. 15

*In re Miniscribe Corp.*
  309 F.3d 1234 (10th Cir. 2002)................................................................................... 21

*In re Polyurethane Foam Antitrust Litig.*
  135 F. Supp. 3d 679 (N.D. Ohio 2015) ..................................................... 20

*In re Qwest Commc'ns Int'l, Inc. Secs. Litig.*
  625 F.Supp.2d 1143 (D. Colo. 2009) ................................................. 11, 14

*In re Syngenta AG MIR 162 Corn Litig.*
  2018 WL 6839380 (D. Kan. Dec. 31, 2018) ........................................ 13, 16

*Johnson v. Georgia Highway Express, Inc.*
  488 F.2d 714 (5th Cir.1974) ............................................................. 6, 7, 12

*Kosnitzky v. FDIC*
  2013 WL 12246258 (S.D. Fla. June 24, 2013) .......................................... 20

*Lane v. Page*
  862 F. Supp. 2d 1182 (D.N.M. 2012) ....................................................... 11

*Lucas v. Kmart*
  2006 WL 2729260 (D. Colo. 2006) ................................................. 6, 19, 20

*Lucken Family Partnership LLP v. Ultra Resources, Inc.*
  2010 WL 5387559 (D. Colo. Dec. 22, 2010) ........................................ 12, 14

*Mishkin v. Zynex, Inc.*
  2012 WL 4069295 (D. Colo. Sep. 14, 2012) ............................................. 21

*O'Bannon v. NCAA*
  114 F. Supp. 3d 819 (N.D. Cal. 2015) ...................................................... 20

*Robinson v. City of Edmund*
  160 F.3d 1275 (10th Cir. 1998) ................................................................. 6

*Shaw v. Interthinx, Inc.*
  2015 WL 1867861 (D.Colo. 2015) ................................................... passim

*Tennille v. W. Union Co.*
  No. 09-CV-00938-JLK-KMT, 2014 WL 5394624 (D. Colo. Oct. 15, 2014) ....... 7, 13, 19

*Turner Broad. Sys., Inc. v. F.C.C.*
  520 U.S. 180 (1997) ............................................................................. 17

*Uselton v. Commercial Lovelace Motor Freight, Inc.*
  9 F.3d 849 (10th Cir. 1993) ............................................................... 6, 19

*Vaszlavik v. Storage Technology Corp.*
  2000 WL 1268824 (D. Colo. March 9, 2000) .................................. 12, 13, 17

*Whittington v. Taco Bell of America, Inc.*
  2013 WL 6022972 (D. Colo. Nov 13, 2013) ............................................................... 12

**Statutes & Rules**

29 U.S.C. § 203 ................................................................................................passim

D.Colo. L. Civ. R. 54.3 .................................................................................................. 4

Fed. R. Civ. P. 23 ............................................................................................ 2, 9, 10, 18

Fed. R. Civ. P. 54 ....................................................................................................... 17

**Other Authorities**

Hon. J.S. Rakoff & H.W. Goldstein
  RICO Civil and Criminal Law and Strategy
  § 1.01 ............................................................................................................... 11

https://j1visa.state.gov/basics/facts-and-figures/ ............................................................ 8

P.E. Areeda & H. Hovenkamp
  Antitrust Law at Preface
  (4th ed. 2013) ..................................................................................................... 11

Seyfarth Shaw
  15th Annual Workplace Class Action Litigation Report
  January 2019
  https://www.seyfarth.com/dir_docs/publications/2019_WCAR_Chapters_1-2.pdf ....... 5

## Certificate of Conferral Pursuant to D.C.Colo.LCivR 7.1(A)

Defendants take no position on Class Counsel's requested fees and expenses.

## PRELIMINARY STATEMENT

After litigating this case for nearly five years, Class Counsel secured a historic recovery. The total monetary value of the settlement—$65.5 million—constitutes the largest class action employment settlement in 2018. As further elaborated in the simultaneous motion for final approval, the majority of Class members who made claims will receive payment of approximately 50% of the actual damages figures that Plaintiffs' expert would present at trial, even after Class Counsel's requested fees and expenses are deducted. The settlement also provides injunctive relief worth millions more by ensuring that current and future au pairs understand their rights.

As the Court is well aware, this victory did not come either quickly or easily. Settlement was achieved only after years of litigation and extensive motion practice – virtually all of which was decided favorably to the Plaintiffs – as well as exhaustive discovery, including 143 depositions and the exchange and review of hundreds of thousands of pages of documents. In total, Class Counsel devoted more than 19,000 hours to this case—with most of that time necessary to respond to Defendants' strategic choices. It was not until the proverbial eve of trial, when the Defendants faced what Class Counsel believe was the probability—based upon the record developed by Plaintiffs—of a substantial judgment, that the settlement was possible.

Under these circumstances, it is appropriate for the Court to award 35 percent of the common fund in fees ($22,925,000) and Class Counsel's litigation costs and nontaxable expenses ($3,345,535.33), or $26,270,535.33 in total. The requested award is modest compared with decisions in this District in both percentage and absolute-dollar

terms.  A lodestar cross check confirms the award would have a multiplier of less than 2.1x the common fund (which underlines the value of injunctive relief).  That multiplier is conservative relative to comparable cases in this district, and in line with multipliers awarded in less complex cases with significantly smaller common funds.  Furthermore, the lodestar calculation is based on rates discounted from Class Counsel's standard rates and considers only hours actually billed through May 15, 2019.

Class Counsel's request is reasonable in light of this case's complex nature and Tenth Circuit law regarding attorneys' fees in class cases that are designed to ensure that class counsel have proper incentives to take on difficult cases and pursue class members' best interests.  Class Counsel assumed significant risks and devoted extensive resources in pursuing a recovery for the Class—and did so efficiently and effectively.  Class Counsel should be properly rewarded for those efforts.

Under the law and practice of this jurisdiction, as well as the retainer agreements of the named Plaintiffs, costs and nontaxable expenses (hereafter "expenses" unless otherwise specified) should be added to the percentage fee award.  Class Counsel's known expenses to date are $3,264,535.33, and Class Counsel anticipates at least $81,000 in expenses in administering the disbursement phases.

For these reasons and those that follow, Class Counsel respectfully request a total of $26,270,535.33 in fees, costs, and nontaxable expenses pursuant to Federal Rules 23 (h) & 54(d), Local Civil Rule 54.3, and this Court's discretion under Rule 23 and in equity.  In addition, $536 should be taxed in favor of the United States to reimburse for the original named Plaintiff's *in forma pauperis* filing and service.

## **BACKGROUND**

In November 2014 the first named Plaintiff, Ms. Beltran, approached Towards

2

Justice, a nonprofit law firm that (among other things) represents low-wage workers. Hood Decl. ¶¶ 5-7.  Towards Justice began researching and soon came to appreciate the significance of Ms. Beltran's claims.  *Id.* ¶¶ 7-9.  Towards Justice moved swiftly, filing this case at the end of the same month.  *Id.* ¶ 10.

Towards Justice recognized even before filing this case that it required the resources of a national law firm.  Hood Decl. ¶¶ 9, 11-12.  But Towards Justice had significant difficulty finding a firm to take on the case.  *Id.* ¶ 12.  It was clear that Defendants were prepared to litigate for years, and many large firms had conflicts that could not be overcome.  *Id.*  For example, Towards Justice initially retained a private law firm on an hourly basis to assist with developing the complaint.  That firm, however, was unwilling to devote the resources necessary to litigate this case to judgment, and was also unwilling to serve as counsel of record for a labor-side plaintiff's class because of the unfortunate reality that – as with many law firms with the requisite subject matter expertise here – its defense-side clients would be offended by the "positional conflict." *Id.* ¶ 13.  After running into similar roadblocks with other large firms, and also being passed-over by several firms specializing in plaintiff's class action lawsuits (largely because those firms perceived, correctly, that litigating this case would require an enormous investment of both dollars and human resources), Towards Justice was referred to a Boies Schiller Flexner LLP ("BSF") partner who had previously worked with that partner when they were both Assistant United States Attorneys in the United States Attorney's Office for the Southern District of New York .  *Id.* ¶¶ 13-17.

Founded in 1997, BSF has more than 300 lawyers located in 15 offices across the United States and in London.  BSF has established a record of taking on and winning complex, groundbreaking, and cross-border matters in diverse circumstances and

industries for many of the world's most sophisticated companies.  Notably, BSF regularly represents its clients as both plaintiffs and defendants, believing that experience working on both sides contributes to its ability to successfully represent those clients.  BSF also regularly takes cases to trial, and litigates accordingly from the start.

After conducting due diligence, including speaking with and securing the consent of each of the named plaintiffs, BSF agreed to take over primary responsibility for the prosecution of this case and assembled a team of lawyers with the necessary expertise and experience.  BSF agreed to both take the case purely on contingency and to advance all the costs of litigation, without any external funding, with Towards Justice continuing as co-counsel and retaining a fractional interest in any fee award.

The joint BSF-Towards Justice team includes trial lawyers who had successfully prosecuted criminal RICO cases before entering private practice and who have successfully pursued civil RICO cases since; attorneys who litigated some of the most significant antitrust cases in recent years; and lawyers with experience representing plaintiffs in class and collective action employment cases.  **Appendix A** contains the attorney qualifications, an explanation of their work on the case, the hourly rate and amount of time billed by each attorney, together with the other information identified in Local Rule 54.3.[1]

---

[1] Appendix A provides all information identified in Local Rule 54.3, but the "detailed" description of each timekeeper's services do not include time card narratives.  In light of the length and size of this case, reviewing and redacting time card narratives for attorney client communications, attorney work product materials, mediation privilege, and any other applicable privilege is a great undertaking.  Class Counsel do not interpret the Local Rule to require extensive detail in this case because Class Counsel request a percentage award with a lodestar cross check – and are not "claim[ing]" fees "for" particular persons.  D.Colo.LCivR 54.3(b).  If Class Counsel are incorrect, or if the Court prefers that the record include time card narratives for any other reason, Class Counsel are prepared to review and file redacted time cards promptly.

After Court denial of summary judgment, the eleven named Plaintiffs — representing approximately 160,000 current or former au pairs — were prepared to take the au pair industry to trial beginning February 25, 2019.  *See* ECF Nos. 558 at 29-30, 1124.  In October 2018, as the parties were finishing up their proposed jury instructions, this case was referred to the Honorable Michael E. Hegarty, U.S. Magistrate Judge, for a final attempt at settlement.  ECF No. 1138.  The mediation discussions opened with a marathon day of about 13 hours of in-person meetings.  Skinner Decl. ¶ 8.   It then took two more months for the parties to reach an agreement in principle, and longer to agree to the final terms.  *Id*. ¶ 9.  Getting agreement from 15 different Defendants and consent from all 11 named Plaintiffs was no mean feat.  *See id*. ¶¶ 10-14.

The resulting settlement is the largest employment class action settlement in 2018 ($65.5 million) [2] and provides injunctive relief to protect current and future au pairs.

## LEGAL STANDARD

The Tenth Circuit has approved two methods for awarding attorneys' fees in common fund cases—the "percentage of the fund" and the "lodestar plus multiplier" methods.  *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994).  "[E]ither method is permissible," although the Tenth Circuit has expressed "a preference for the percentage of the fund method."  *Gottlieb,* 43 F.3d at 483 (class action); *see also Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173-74 (D. Colo 2018) (Arguello, *J.*) (citing *Gottlieb* and concluding that the percentage of fund approach is "standard" when reviewing FLSA settlements).

Under the "percentage of the fund" method, the fee award is based on a

---

[2] The settlement is larger than any other class action employment law settlement reported in Seyfarth Shaw's 15th Annual Workplace Class Action Litigation Report, which was published before the Final Settlement's terms were public, in January 2019. https://www.seyfarth.com/dir_docs/publications/2019_WCAR_Chapters_1-2.pdf

percentage of the total economic benefit obtained for the class the class. *See, e.g., Anderson v. Merit Energy Co.,* 2008 WL 3378526 at *3 (D. Colo. Oct. 20, 2009) (citing *Brown v. Phillip Petroleum Co.,* 838 F.2d 451, 454 (10th Cir. 1988)).  Alternatively, under the lodestar method, class counsel's reasonable hours are first multiplied by a reasonable hourly rate. *See, e.g., Robinson v. City of Edmund,* 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar is then increased by a multiplier to account for risk and other factors. *See, e.g., Lucas v. Kmart,* 2006 WL 2729260, at *3 (D. Colo. 2006).

No matter the method, these factors (the "*Johnson* factors") guide the Court's discretion:  (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case (*i.e.*, whether this was a case for which it was difficult to obtain qualified counsel); (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Gottlieb*, 43 F.3d at 482 n.4 (class action; citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)); *Davis*, 292 F. Supp. 3d at 1173-74 (same for FLSA settlements).

Not all factors are equal.  The "most critical factor is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quoting precedent).  Further, rarely are "all the factors applicable," *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993), so "not all of them need be considered" in every case. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

## ARGUMENT

I.   **APPLYING THE *JOHNSON* FACTORS DEMONSTRATES THAT 35% IS APPROPRIATE UNDER THE PERCENTAGE OF THE FUND APPROACH.**

   A.   **The Settlement's True Economic Value Far Exceeds the Common Fund.**

For ease of calculation, Class Counsel's request in this application is for a fee award equal to 35% of the common fund alone.  But when the value of the injunctive relief is considered, as the case law teaches it must be, the requested fee award becomes an even smaller percentage of the total recovery in this case, making clear just how conservative Class Counsel's request is.

The first step is to properly value the settlement.  *Tennille v. W. Union Co.*, No. 09-CV-00938-JLK-KMT, 2014 WL 5394624, at *3-4 (D. Colo. Oct. 15, 2014) (Kane, *J.*). Although the common fund is the most important indicator of the settlement's value, it "is but one aspect of the settlement and therefore understates the real and actual value realized." *Tennille*, 2014 WL 5394624 at *4.  The economic value of the injunctive relief should also be considered.  *Id.*  Injunctive relief can be highly valuable, as illustrated in *Tennille*, where the class received $19 million in actual payments, but the settlement as a whole was valued at $180 million (and the fee award was $54 million).  *Id.* at 1, 4.

Here, Class Counsel secured not only a $65.5 million common fund, but also injunctive relief of considerable economic benefit to the class and prospective au pairs. For example, some of Plaintiffs' core allegations in this lawsuit was that the Defendants misled au pairs and host families alike about their ability to vary from that set wage.  ECF No. 983 ¶¶ 136-43. As part of the settlement, the Defendants have agreed to several measures that will ensure au pairs and host families alike understand that au pair wages may be freely negotiated, and that – contrary to the Defendants' statements prior to and

at times during this lawsuit – au pair wages are not fixed by the government at $4.35 per hour.  For example, the Defendants agree to communicate to new host families that au pairs and host families are free to agree to wages higher than the minimum wage; to communicate the same to prospective au pairs in their home countries and native languages, before they travel to the United States and their bargaining power is diminished; and to include similar language on their websites, in au pair contracts, and in marketing materials.  Rodriguez Decl. Ex. 1 at ¶ IV.B.

There can be no doubt that this prospective relief is real, vindicates the Class's interests in this lawsuit by ensuring fairness in au pair pay, and has substantial economic benefit to the Class (and to future au pairs).  Although valuing the injunctive relief is difficult, this benefit is worth at least tens of millions of additional dollars.  For example, if the injunctive relief increases au pair wages by only a dime, the benefit to au pairs would amount to about $5 million each year.[3]

For all of these reasons, while it may be easiest to appreciate the value of the common fund, the true economic value of the settlement far exceeds $65.5 million.

## B.    Time and labor required.

The "complexity of the legal issues involved . . . justifies the time spent" by Class Counsel.  *In re Crocs, Inc. Securities Litigation*, 2014 WL 4670886, at *2 (D. Colo. Sept. 18, 2014).  This case has been intensively litigated for nearly five years.  Class Counsel logged 19,474.3 hours over 54 months, including 9,339.2 hours for partners and counsel, 5,427.2 hours for associates, and 4,069 hours for paralegals and staff.  Appendix A.

The litigation spawned over 1,200 docket entries, including motions to dismiss

---

[3] 10¢ per hour * 45 hours per week * 50 weeks per year * approximately 20,000 au pairs each year.  *See* https://j1visa.state.gov/basics/facts-and-figures/

and to compel arbitration (ECF Nos. 258, 705); FLSA conditional certification and decertification (ECF Nos. 569, 1066, 1069, 1070, 1072, 1077); Rule 23 class certification (ECF No. 828); motions to exclude expert and lay testimony (ECF Nos. 955, 1079); summary judgment motions (ECF No. 1102); numerous motions for reconsideration (ECF Nos. 411, 728, 858, 1126, 1130); many motions to compel the production of discovery (ECF Nos. 344, 506, 624, 969, 1061); and appeals to the Tenth Circuit at two points in the case (ECF Nos. 723, 1041).  Meanwhile, the parties engaged in a massive discovery effort, exchanging hundreds of thousands of pages of documents, conducting 143 depositions (several in foreign countries), and subpoenaing records and depositions from third parties.  *See* Skinner Decl. ¶ 5; ECF No. 905.[4]

Not only was Class Counsel's effort in this case by extensive, it was necessary. The fifteen Defendants filed repeated motions directed at the same legal issues (*see, e.g.*, ECF No. 1126 (order of the Court, reciting Defendants' numerous challenges to Plaintiffs' employment law claims on preemption grounds)).  Among other things, the Defendants demanded discovery from a substantial number of opt-in Plaintiffs, requiring dozens upon dozens of additional depositions of au pairs that had to be prepared by Class Counsel.  *See* ECF Nos. 953-54 & 969.  At every turn, Class Counsel tried to

---

[4] In addition, one of the Defendants filed a declaratory judgment action in Massachusetts in an attempt to litigate some of the preemption issues presented in this case in that defendant's home jurisdiction; in doing so, that defendant directly attacked this Court's rulings.  *Compare, e.g.*, ECF No. 1126 (dismissing preemption defense and reviewing prior consistent orders*) with Cultural Care, Inc. v. Massachusetts*, 2017 WL 327011, at *4 (D. Mass. Aug. 1, 2017) (discussing Cultural Care's preemption argument).  Class Counsel monitored that case, in which the District Court's decision accorded with this Court's rulings.  When the defendant appealed, however, the First Circuit called for the view of the federal government.  At that point, Class Counsel was forced to become involved, seeking and obtaining leave to file an *amicus* brief to protect the Class's interests, in addition to other efforts to ensure that the relevant actors fully appreciated the potential ramifications for the Class, such as advocating before the Solicitor General's Office.

respond appropriately but efficiently, for example by defending those opt-in depositions principally via Skype so as not to incur needless travel expenses.  Rodriguez Decl. ¶ 9.  Moreover, Class Counsel prevailed in virtually every facet of virtually every disputed motion throughout the nearly five-year history of this case, from the Defendants' initial motion to dismiss through their motion for reconsideration of summary judgment.

In the end, Class Counsel represent 29 certified FLSA and Rule 23 classes and subclasses asserting dozens of federal and state claims.  *See* ECF Nos. 569, 828.  Before the eve-of-trial settlement, Plaintiffs were prepared to try the case against fifteen defendants.  Such preparation required a great deal of work, and Class Counsel was only able to achieve the settlement that they did by virtue of having done that work.

**C.    The requisite skill and the difficulty of the questions presented.**

Much of Class Counsel's time and labor were dedicated to difficult questions.  This case raised numerous legal issues of regulatory law, state and federal employment law, antitrust, RICO, and state common law.  *See* ECF No. 983 (Third Am. Compl.).  Many issues were difficult and Defendants sought reconsideration of several orders.  (ECF Nos. 411, 728, 858, 1126, 1130.)

That is not surprising because this case involves some of the most specialized and difficult areas of the law.  For example, employment law issues such as those litigated here "are governed by highly technical state and federal wage statutes and regulations."  *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D.Colo. 2015).  The RICO "statute remains difficult to apply" because it uses specialized terms and concepts, and its body of case law reflects an "underlying tension" in views about RICO's application.  *See* Hon. J.S. Rakoff & H.W. Goldstein, RICO Civil and Criminal Law and Strategy § 1.01.  As for antitrust, the "statutes are extremely broad in scope and

application but elusive in their meaning."  P.E. Areeda & H. Hovenkamp, Antitrust Law at Preface, p. xix (4th ed. 2013).  Antitrust involves economic as well as legal principles, with the unfortunate result that it is easy for "lawyers and even economists [to] misuse or misunderstand the relevant economic concepts."  *Id.*

The record here confirms that this case required skilled counsel and implicated difficult and hotly-contested questions, which were litigated aggressively by numerous well-financed defendants.  *See* ECF Docket; Background Section, above.  The related appellate advocacy required an additional four briefs and one oral argument from Class Counsel.  10th Cir. Docket Nos. 17-1359, 18-702, 18-703, & 18-704; 1st Circuit Docket No. 17-2140 at Entry ID 6205558; *see also* footnote 4, above.

**D.    Preclusion of other employment and time limitations.**

"There is an inherent preclusion of other work in litigating a complex case . . . on a contingency fee basis."  *Shaw*, 2015 WL 1867861, at *6; *In re Crocs*, 2014 WL 4670886, at *3 ("Although Plaintiffs' Counsel does not provide specific examples of work they were forced to decline during the pendency of this action, common sense indicates that the nearly 3,900 hours spent litigating this case came at the expense of time that could have been devoted to other matters.").  Accordingly this factor is less significant in complex, multiyear litigation.  *See In re Qwest Commc'ns Int'l, Inc. Secs. Litig.,* 625 F.Supp.2d 1143, 1150 (D. Colo. 2009); *Lane v. Page,* 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012).

Both BSF and Towards Justice's services are in high demand, every hour spent on this case was an hour not spent serving another worker or representing a client that pays by the hour.  And by taking this case on contingency, BSF traded the stability and predictability of hourly clients – and the prospect of repeat business from those clients – for the possibility of payment years in the future, and after making substantial out-of-

pocket outlays, to boot.  *See Whittington v. Taco Bell of America, Inc.*, 2013 WL 6022972 at *6 (D. Colo. Nov 13, 2013).  There was always the possibility of zero recovery.  *See id.*

Similarly, another *Johnson* factor is whether the case's circumstances required a fast response because a lawyer's time comes at "a premium" and necessarily defers work for other clients.  *Shaw*, 2015 WL 1867861, at *7.  As this Court knows, the complexity and pace of this case required numerous expedited motions and document productions (among other things).  *E.g.*, ECF Nos. 593, 626, 644, 676, 839, 1061, 1062.

### E.   The customary fee and fees awarded in similar cases.

"The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."  *Lucken Family Partnership LLP v. Ultra Resources, Inc.*, 2010 WL 5387559 at *6 (D. Colo. Dec. 22, 2010); *see also Vaszlavik v. Storage Technology Corp.*, 2000 WL 1268824 at *4 (D. Colo. March 9, 2000).  Class Counsel's customary hourly rates are discussed with the lodestar cross check, Argument III, below.

Class Counsel's requested percentage of the common fund is well within the customary fee for complex contingency litigation in the Tenth Circuit, and highly conservative when the value of the injunctive relief is considered. In fact, Class Counsel's request for 35% of the common fund in fees and recovery of expenses is lower than percentages commonly awarded in this District.[5]

---

[5] *See, e.g., Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (approving 37% in fees and expenses which was "well within the normal range for a contingent fee award"); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (awarding 39% of settlement fund for attorneys' fees); *Vaszlavik v. Storage Technology Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (the requested fee was "in the middle of the ordinary 20%–50% range and is presumptively reasonable"); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.,* Nos. CIV 89–822–T & CIV–1186–T, 1993 WL 355466 (W.D. Okla. June 8, 1993) ("Fees in the

The requested award of $22,925,000 in fees is equally reasonable and consistent with the cases when viewed in absolute dollar terms. *See, e.g., In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380, at *1 (D. Kan. Dec. 31, 2018) (awarding "total attorney fees in the amount of one third of the settlement fund, or $503,333,333.33"); *Tennille*, 2014 WL 5394624, at *4 (awarding $54,000,000 on a $180 million settlement, as discussed in Section I.A, above).

### F.      The contingency nature and "undesirability" of the case.

BSF and Towards Justice accepted this case on a pure contingency basis.  As discussed, BSF attorneys spent 14,885.5 hours on this case, at a cost of $9,895,059. Towards Justice attorneys spent an additional 519.8 hours, at a cost of $233,910.

**Appendix A.**  In addition, BSF incurred over $3.25 million in out-of-pocket expenses, all with the risk of recovering nothing, barring a settlement or collectable judgment.  *Id.* Absent BSF's willingness to take these risks, it is virtually certain that no individual au pair acting alone, or even with Towards Justice, could have pursued such a complex and difficult case.  *See* Hood Decl. ¶¶ 9, 11.

Substantial fee awards are appropriate in cases such as this, where Class Counsel must "advance large amounts of time, money, and other resources to determine if any recovery might be had"—something "[m]ost attorneys" cannot do. *Shaw*, 2015 WL 1867861, at *7.  Accordingly, "[a] contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful." *In re*

range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("An award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases"), *vacated on other grounds*, 888 F.3d 455 (10th Cir. 2017).

*Qwest,* 625 F.Supp.2d at 1151.

And without the potential for such an award, there is a risk that cases like this one, with transient plaintiffs who work in low-wage positions, would never see the inside of a court room. *See Shaw*, 2015 WL 1867861, at *7 ("contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case . . . . Access to the courts would be difficult to achieve without compensating attorneys for that risk.") (citations and quotation marks omitted).

### G.      Potential damages involved and the results obtained.

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Lucken Family*, 2010 WL 5387559, at *3; *see also Brown*, 838 F.2d at 456 ("[T]he amount involved and the results obtained may be given greater weight when . . . the recovery was highly contingent and the efforts of counsel were instrumental in realizing recovery on behalf of the class.").

Here, the settlement achieved by Class Counsel is a resounding success under any metric.  In absolute dollar terms, it was the largest employment law settlement of last year.  *See* n.2, above.  In terms of available dollars, the settlement is at the limits of the Defendants' ability to pay.  And even when compared to the amount of a possible judgment – putting aside the difficulty, if not impossibility, of actually collecting such a judgment – Class Counsel obtained a common fund settlement equal to <u>at least</u> 8% of pre-trebled damages ($65.5M out of $800M, *see* ECF No. 943-1 (Merits Report of Wm. O. Kerr) ¶ 132, which is in line with antitrust wage suppression cases that had much

deeper-pocketed defendants.[6]  For example, *In re High Tech Employee Antitrust Litig.*, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015), where plaintiffs alleged an antitrust conspiracy to suppress their wages among and between tech companies like Apple, Google and Oracle, settled for 14% of pre-trebled antitrust damages.  Of course, the *au pair* agency Defendants are not billion-dollar tech companies like Apple and Google.

In this case, the settlement in terms of actual dollars recovered is potentially better than could be achieved at trial.  A successful verdict would have faced significant enforcement costs and risks, potentially driving some Defendants into bankruptcy and requiring complex international litigation to pursue the resources of other Defendants' related companies under alter ego or similar theories.  In addition, extensive financial discovery (*see*, ECF Nos. 624, 858) indicates that a verdict larger than the settlement may well have been beyond Defendants' ability to pay.  *See* Decl. of Peter M. Skinner in Supp. Of Pls.' Mots. for Final Approval of Class and Collective Action Settlement and For Fees ¶ 11.  Given these factors, the settlement is a fair percentage of the possible recovery at trial, and potentially greater than such possible recovery—even  before considering the injunctive relief that guarantee au pairs the information they need.

## H.     The experience, reputation, and abilities of Class Counsel.

Class Counsel from BSF and Towards Justice consisted of attorneys widely respected in the legal community.  Towards Justice is a preeminent workers' rights organization.  And BSF has successfully tried some of the most high profile, complex cases of the last decade.  BSF and Towards Justice were able to bring that reputation and experience to bear in order to achieve results for the Class.  Indeed, the Court has

---

[6] Under one of the expert's alternative models, the settlement <u>exceeds</u> pre-trebled damages by $11.5 million (though it remains significantly discounted compared to trebled damages).  *See* ECF No. 943-1 (Merits Report of Wm. O. Kerr) ¶ 139.

already reviewed Class Counsel's credentials when it appointed them class counsel, and found that they have "extensive experience in handling complex class action suits, are knowledgeable about relevant law, and have ample resources to vigorously advocate for Plaintiffs."  ECF No. 828 at 34; *see also* Appendix A.

**I.      Nature and length of the professional relationship with the client.**

Retainer agreements with named plaintiffs expressly state that BSF would seek 35% of any recovery in this action as fees, in addition to out-of-pocket costs and expenses advanced by BSF.  Rodriguez Decl. ¶ 10.  *See In re Syngenta*, 357 F. Supp. 3d at 1114 ("counsel have indicated that many plaintiffs in this case agreed to contingent-fee arrangements that allowed for fees of at least 40 percent of any recovery").  Class Counsel has also been transparent with potential class members about the intended fee request and additional request for litigation expenses.  The settlement notice and agreement each disclose those intended requests.  Rodriguez Decl. Ex. 1 at 21, Ex 1-A at 1, as did Class Counsel's Preliminary Approval Motion, ECF No. 1189 at 12-13.  No class members objected to the fee award.

In addition, substantial awards are justified when, as with the foreign national Plaintiffs in this case, "the likelihood that many class members will be seeking additional representation from Class Counsel is slim."  *Shaw*, 2015 WL 1867861, at *7.  This is particularly true because "wage claims . . . do not lend themselves to continuous" or repeat business.  *Id.*

**II.     PLAINTIFFS' EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED IN THE PROSECUTION OF THIS ACTION.**

An "attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred."  *Vaszlavik*, 2000 WL

1268824, at *4.  Class Counsel seeks reimbursement for the $3,345,535.33 in total costs and nontaxable expenses in prosecuting this action.  F.R.C.P. 54(d).  **Appendix B** breaks the total request into categories.  Such expenses "are awarded in addition to the attorney fee percentage."  *Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000); *see also Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311, 2015 WL 4920292, at *7 (D. Kan. Aug. 18, 2015).

As predictable in antitrust and other economically complex litigation, the bulk of expenses (over $2 million) come from expert and expert consultant invoices.  Appendix B at 2; *see, e.g. Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 223 (1997) ("complex antitrust litigation" may involve "extensive discovery, significant motions practice, appeals, and the payment of high legal fees throughout").  Plaintiffs required expert opinions for both class certification, ECF No. 560-65, and the merits, ECF No. 943-1. *See* ECF No. 828 at 21-22 (crediting Plaintiffs' expert at class certification).  Due to Defendants' positions as to the proof required to establish class-wide damages, Plaintiff's expert also had to conduct a survey.  *See* ECF No. 955 (affirming denial of motion to exclude Plaintiffs' expert at class certification, which motion focused considerable attention on the survey).  Economics experts, who typically employ teams to help them in their analysis, are expensive and given the multiple reports, motions, 3 depositions, the larger number of depositions that Defendants employed, and trial preparation, these costs represent an efficient use of experts.

The other major line-items include FLSA and Rule 23 class notification administrator costs ($498,834.23, including $75,000 in anticipated out-of-pocket costs associated with administering the settlement), as well as travel (including international

travel) for numerous depositions and hearings $143,648.95.[7]  As noted above, Class Counsel was conscientious about these costs, attending depositions via Skype when doing so did not result in a strategic disadvantage, and sending no more than one or two attorneys to all but a small handful of the most important proceedings.  *See, e.g.*, ECF No. 807 at 1-2 (approx.1 hour 40 minute oral argument re *Daubert* motion; 1 Class attorney and 9 defense attorneys appeared; Class Counsel's position adopted at ECF Nos. 813 & 955).  All expenses included in Class Counsel's request are the expenses that would be invoiced for hourly clients.  Rodriguez Decl. ¶ 2.  The requested expenses are therefore reasonable and appropriately paid in addition to the fees.  *Bee v. Greaves,* 910 F.2d 686, 690 (10th Cir. 1990).

In addition, the original named Plaintiff, Ms. Beltran, received the benefits of *in forma pauperis* initial filing and service by the U.S. Marshals Service.  Class Counsel believe it is appropriate to repay $536 to the Court for these services.  Appendix B.

## III.    A LODESTAR CROSS-CHECK CONFIRMS THE REQUEST IS REASONABLE.

"Courts using the percentage method will often crosscheck the requested award with the lodestar amount."  *Shaw*, 2015 WL 1867861, at *8.[8]  Class Counsel's requested fee award in this action is equal to the lodestar ($11,125,031) with a <u>2.06 multiplier</u>

---

[7] None of these expenses include first or business class airfare—not even for long-haul international travel, where business class would ordinarily be permitted by Firm policy. Rodriguez Decl. ¶ 12.  Class Counsel also followed Firm policy and practices regarding specially negotiated hotel rates.  *Id.* ¶ 13.

[8] However, the Court in the exercise of its discretion and in light of the facts of the case may choose to rely entirely on the percentage method.  *See Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (distinguishing "common fund" cases where the percentage method is permissible "rather than the lodestar method"; approving fee award without considering the lodestar); *see also CompSource Oklahoma v. BNY Mellon, N.A.*, No. 08-cv-469, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("A majority of circuits recognize that trial courts . . . are not required to conduct a lodestar analysis in common fund" cases).

based solely on the common fund.  That is conservative:  The lodestar rate Class

Counsel have applied is discounted from the standard rate hourly clients pay.  Rodriguez

Decl. ¶ 2.  Courts in this district "typically" use a 2-3x multiplier. *Lucas v. Kmart Corp.,*

No. 99–cv–01923–JLK–CBS, 2006 WL 2729260, at *6 (D. Colo. July 27, 2006).  And the

lodestar represents <u>actual billings</u> entered by May 15, 2019—*i.e.*, excluding tens of

thousands of dollars in fees for securing final approval and distribution of funds.

Class Counsel's request compares favorably to similarly sized settlements.  For

example, In the *Tennille* case discussed in Section I.A, above, the attorneys in a case

about unclaimed funds received $54,000,000 in fees on a lodestar of $8,076,308 in

actual billed fees ($9,451,308, after adding an estimate for additional fees after

judgment)—or a more than <u>6x lodestar</u> multiplier on actual billings.  *See Tennille*, 2014

WL 5394624, at *1-2.

### A. Class Counsel's hours and rates are reasonable.

"The best evidence of the value of the lawyer's services is what" a client willingly

pays. *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012).

Thus, Courts begin the analysis with the actual rates that attorneys charge in the

relevant market.  Where, as here, the case involves specialized areas of law and

expending "significant resources and skill," the "relevant community for purposes of

determining a reasonable billing rate for Class Counsel likely consists of attorneys who

litigate nationwide, complex class actions."  *Lucas v. Kmart Corp.*, 99-cv-01923, 2006

WL 2729260, at *4 (D. Colo. July 27, 2006).[9]

---

[9] This case is a paradigmatic nationwide—in fact, international—case. Defendants'
choices confirm that clients paying by the hour find it worthwhile to pay for some of the
largest and most well respected firms from all over the country—including lawyers from
New York, California, Boston, and Florida.  *See* ECF Docket (identifying counsel).

Here, Class Counsel logged 15,405.3 attorney hours at a blended rate of $657.50, and 4,069 paralegal hours at a blended rate of $244.79. **Appendix B**. These rates are a great value for the Class. They include a significant discount from BSF's standard rates willingly paid by clients. Rodriguez Decl. ¶ 2. Courts all over the country have found BSF's rates reasonable,[10] and Class Counsel respectfully submit that Tenth Circuit law and the circumstances of this case warrant the same conclusion.

**B.     The multiplier is reasonable (and, in fact, conservative).**

Even when claimed rates might be higher than rates typically charged by attorneys for local matters in the local market—a 2x loadstar multiplier is well within the range awarded by courts in this jurisdiction. *In re Crocs,* 2014 WL 4670886, at *4.[11] Here, Class Counsel's requested fee award represents a 2.06 multiplier of actual billings to date, at lower-than-standard rates.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant $22,925,000 in fees and $3,345,535.33 in expenses for Class Counsel's efforts.

---

[10] *E.g., O'Bannon v. NCAA*, 114 F. Supp. 3d 819, (N.D. Cal. 2015) (finding BSF attorney fees reasonable in antitrust class action, including partner rates of $600-985, associate rates of $370-490, and paralegal rates of $300-320), *aff'd in part and modified in part by* 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 689-90 (N.D. Ohio 2015) (finding, in antitrust class action, that BSF's "hourly rates are high, but those rates reflect the reputation and ability of their firms. The hourly rates are, moreover, Class Counsel's standard hourly rates, charged to paying customers."); *Kosnitzky v. FDIC*, 2013 WL 12246258 at *4 (S.D. Fla. June 24, 2013) ("After careful consideration of, among other things, the attorney's level of experience, and the Boies Schiller law firm's reputation in the community, the undersigned finds that the rate ranges provided are appropriate."). At least one court has approved the <u>undiscounted</u> hourly rates of the two lead lawyers for BSF in this case. *City of Almaty v. Ablyazov*, 15-CV-05345, ECF No. 628 (S.D.N.Y. Apr. 30, 2018).

[11] *See also In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming 2.57 multiplier); *Mishkin v. Zynex, Inc.,* 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting District of Colorado cases approving multipliers ranging from 2.5% to 4.6%).

Dated: May 16, 2019                    Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

  /s/ *Peter M. Skinner*
Matthew L. Schwartz
Peter M. Skinner
Joshua J. Libling
Byron Pacheco
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com
jlibling@bsfllp.com
bpacheco@bsfllp.com

Sean P. Rodriguez
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
srodriguez@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1410 High Street, Suite 300
Denver, Colorado  80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## APPENDIX A:  TIMEKEEPERS

<u>Sources</u>:  Rodriguez (BSF) and Hood (TJ) Declarations

| Attorneys | | | | | |
|---|---|---|---|---|---|
| **Name** | **Title[1]** | **Rate[2]** | **Hours** | **Billings** | **Description of work & qualifications** |
| DiSalvo, Nina (TJ) | Consultant (formerly Executive Director) | $450 | 38 | $17,100.00 | Initial investigation and complaint; motion to dismiss oppositions; strategy.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17; *see also Avendano v. Averus, Inc.*, 14-cv-01614-CMA, Doc. No. 92 at 10-11 (D. Colo. Sept. 29, 2016). |
| Esbenshade, Andrew (BSF) | Partner | $810 | 67.8 | $54,918.00 | Prepare for and defend au pair depositions<br><br>Qualifications available at https://www.bsfllp.com/lawyers/andy-esbenshade.html (last accessed May 10, 2019). |
| Hammer, Jeffrey (BSF) | Partner | $750 | 13.3 | $9,975.00 | Prepare for and defend au pair depositions<br><br>Qualifications available at https://www.bsfllp.com/lawyers/jeffrey-hammer.html (last accessed May 10, 2019). |
| Harris, Laura (BSF) | Associate | $630 | 146.7 | $92,421.00 | Depositions, jury instructions and trial preparation.<br><br>Qualifications available at https://www.bsfllp.com/lawyers/laura-harris.html (last accessed May 10, 2019). |

---

[1] For all attorneys, the title listed is the current title or title at the time of separation from the relevant firm.

[2] All BSF attorney rates are discounted from the attorney's standard rate charged to paying clients.  Rodriguez Decl. ¶ 2. Because rates may change annually and with promotions, the BSF rates are blended averages for each attorney's work on the case (total dollars in invoicing system divided by total hours).  *See id.*; Rodriguez Decl. ¶ 6(c).

## APPENDIX A:  TIMEKEEPERS

Sources:  Rodriguez (BSF) and Hood (TJ) Declarations

| Hood, Alexander (TJ) | Director of Litigation | $450 | 327.8 | $147,510.00 | Involved in all aspects of case; particular focus on initial investigation and complaint; motion to dismiss oppositions; au pair depositions; arbitration appeal; class communications; strategy; settlement and mediation.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17; *see also Avendano v. Averus, Inc.*, 14-cv-01614-CMA, Doc. No. 92 at 10-11 (D. Colo. Sept. 29, 2016) |
|---|---|---|---|---|---|
| Jackson, Randall (BSF) | Partner | $920 | 81.8 | $75,256.00 | Depositions; expert work; court submissions.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |
| Johnson, Sean (BSF) | Associate | $380 | 10.1 | $3,838.00 | Document review; research in response to motions to dismiss.<br><br>Mr. Johnson is a graduate of the University of Virginia Law School whose practice focuses on antitrust. |
| Libling, Joshua (BSF) | Counsel | $709.27 | 1,179.5 | $836,581.00 | Supervision and participation in FLSA certification, class certification, expert, summary judgment, and jury instruction and trial preparation phases; court appearances; depositions; written discovery and document production; expert work; court submissions.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |
| Louis, Lauren (BSF) | Counsel | $595.92 | 702.1 | $418,392.00 | Opposing motions to dismiss and moving for FLSA certification; depositions and document discovery; legal research and drafting re discovery motions.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |

2

## APPENDIX A:  TIMEKEEPERS

Sources:  Rodriguez (BSF) and Hood (TJ) Declarations

| McCawley, Sigrid (BSF) | Partner | $760 | 154.7 | $117,572.00 | Case investigation and complaint drafting; motion to dismiss opposition; discovery strategy and planning.<br><br>Qualifications available at https://www.bsfllp.com/lawyers/sigrid-s-mccawley.html (last accessed May 10, 2019). |
|---|---|---|---|---|---|
| McCawley, Thomas (BSF) | Staff Attorney | $340 | 300.5 | $102,170.00 | Legal research re regulations, regulatory history, and state employment laws in connection with motions to dismiss; document review.<br><br>Mr. McCawley is a staff attorney who has been with BSF since March 2008. |
| Idarraga, Sabria (BSF) | Partner | $560 | 246.4 | $137,984.00 | Written discovery, document productions, and meet and confer correspondence; depositions; experts; legal research and drafting re: discovery motions.<br><br>Qualifications available at https://www.bsfllp.com/lawyers/sabria-a-mcelroy.html (last accessed May 10, 2019). |
| Pacheco, Byron (BSF) | Associate | $618.19 | 2,825.9 | $1,746,932.00 | Depositions and document discovery; legal research and drafting re class certification, experts, discovery motion practice, summary judgment, jury instructions and trial preparation.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |
| Petterson, Sean (BSF) | Associate | $500 | 412.7 | $206,350.00 | Depositions and document discovery; legal research and drafting re discovery motions.<br><br>Qualifications:  Mr. Petterson is an NYU Law School graduate whose practice focuses on class action litigation.  Before, during, and after law school Mr. Petterson worked at Boies Schiller Flexner as a paralegal, summer associate, and then associate. |

3

## APPENDIX A:  TIMEKEEPERS

Sources:  Rodriguez (BSF) and Hood (TJ) Declarations

| | | | | | |
|---|---|---|---|---|---|
| Riley, Joshua (BSF) | Partner | $771.48 | 91.6 | $70,668.00 | Research and drafting in connection with motions to dismiss; communications with putative class members.<br><br>Qualifications available at https://www.bsfllp.com/lawyers/joshua-riley.html (last accessed May 10, 2019). |
| Rodriguez, Sean (BSF) | Partner | $765.65 | 1,449.4 | $1,109,732.00 | Supervision, strategy, and participation on class certification, expert, antitrust issues, summary judgment, jury instruction, trial preparation, and settlement phases; court appearances; depositions; expert work; court submissions; mediation and settlement.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |
| Schafler, Michael (BSF) | Partner | $800 | 57.5 | $46,000.00 | Prepare for and defend au pair depositions<br><br>Qualifications available at https://www.bsfllp.com/lawyers/michael-schafler.html (last accessed May 10, 2019). |
| Schwartz, Daniel (BSF) | Associate | $450.99 | 1,354.50 | $610,870.00 | Depositions and document discovery and review; legal research and drafting in connection to motions to dismiss, FLSA certification, and discovery motions.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |
| Schwartz, Matthew (BSF) | Partner | $960 | 261.8 | $251,328.00 | Supervision, strategy, and participation in all aspects and at all phases of the case; court appearances; motion practice and argument; depositions; expert work; court submissions; mediation and settlement.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |

## APPENDIX A:  TIMEKEEPERS

Sources:  Rodriguez (BSF) and Hood (TJ) Declarations

| Schwartz, Tara (BSF) | Associate | $420 | 620.2 | $260,484.00 | Depositions and document discovery; legal research and drafting re discovery motions.<br><br>Ms. Schwartz is a graduate of Columbia law school who is currently clerking for Judge Gerard Lynch of the Second Circuit. |
|---|---|---|---|---|---|
| Seligman, David (TJ) | Director | $450 | 154 | $69,300.00 | Litigated appeal re arbitration; strategy surrounding summary judgment, appellate work (including class certification appeal petitioners, arbitration appeal, and First Circuit matter); class communications; strategy; settlement and mediation.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17; *see also Avendano v. Averus, Inc.*, 14-cv-01614-CMA, Doc. No. 92 at 10-11 (D. Colo. Sept. 29, 2016) |
| Silver, Jonathan (BSF) | Staff attorney | $340 | 338.4 | $115,056.00 | Discovery strategy and plan; written and document discovery review; legal research and drafting re discovery motions.<br><br>Mr. Silver is a staff attorney who specializes in electronic discovery. |
| Skinner, Peter (BSF) | Partner | $928.98 | 1,176.3 | $1,092,756.00 | Supervision, strategy, and participation in all aspects and at all phases of the case; court appearances; motion practice and argument; depositions; expert work; court submissions; mediation and settlement.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |
| Smalls, Dawn (BSF) | Partner | $900 | 1,192.1 | $1,072,890.00 | Supervision, strategy, and participation in all aspects of strategy; motion practice and argument; court appearances; depositions; written discovery and document production; expert work; court submissions.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |

## APPENDIX A:  TIMEKEEPERS

Sources:  Rodriguez (BSF) and Hood (TJ) Declarations

| Valdivieso, Juan (BSF) | Counsel | $668.81 | 2,145.10 | $1,434,659.00 | Depositions and document discovery; court appearances; legal research and drafting re class certification, experts, discovery motion practice, summary judgment, jury instructions and trial preparation.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |
|---|---|---|---|---|---|
| Vallacher, Bret (BSF) | Associate | $494.34 | 57.1 | $28,227.00 | Depositions and document discovery; discovery vendor management.<br><br>Mr. Vallachar is a graduate of Stanford Law School who clerked for Judge Michael Moore in the Southern District of Florida. |

TOTAL ATTORNEY BILLINGS:        $10,128,969.00

6

## APPENDIX A:  TIMEKEEPERS

<u>Sources</u>:  Rodriguez (BSF) and Hood (TJ) Declarations

| Non-attorney timekeepers | | | | | |
|---|---|---|---|---|---|
| **Name** | **Title** | **Rate[3]** | **Hours** | **Billings** | **Description of work & qualifications** |
| [Five former employees] (BSF) | Summer associates and other nonattorney associate time | $389.65 | 133.1 | $51,863.00 | Legal research and drafting; deposition preparation.<br><br>Qualifications reviewed and previously approved as Class Counsel at ECF Nos. 559 at 26-27 & 828 at 17. |
| [Twenty-five employees and former employees] (BSF) | Paralegal, Case Manager, or Project Assistant[4] | $239.89 | 3,935.9 | $944,199.00 | Organize and manage filings, productions, correspondence, and deadlines; assist attorneys with various billable projects at the direction and under the close supervision of attorneys—*e.g.*, specific document review tasks, preparation of exhibits and other filings, and managing vendors. |

<u>TOTAL NONATTORNEY BILLINGS</u>:      $996,062.00

**<u>GRAND TOTAL:     $11,125,031.00</u>**

---

[3] All BSF rates are discounted from the standard rate charged to paying clients.  Rodriguez Decl. ¶ 2.  The rates provided are blended averages.  *Id.* ¶ 6(c).
[4] Title varies by individual job responsibilities and state regulation of nonattorneys who perform billable work at the direction and under the close supervision of attorneys.

## APPENDIX B:  COSTS AND EXPENSES

**Payable to United States Clerk of Court**

| Category | Amount | Notes |
|---|---|---|
| *In forma pauperis* filing fee | $400.00 | http://www.cod.uscourts.gov/CourtOperations/RulesProcedures/Filing CivilSuits.aspx |
| U.S. Marshal's service (*in forma pauperis*) | $136.00 | 17 mailed notices (ECF No. 8) at $8 per mailing, 28 CFR § 0.114(a)(2) |

*TOTAL PAYABLE TO UNITED STATES CLERK OF COURT:  $536.00*

**Payable to Towards Justice**

Source: Hood Declaration ¶ 27.

| Category | Amount | Notes |
|---|---|---|
| Printing/Copying | $785.04 | |
| Legal Research (Lexis/Westlaw) | $480.00 | |
| Client Communication /Investigation | $21,030.18 | |
| Meeting Expenses | $103.78 | |

*TOTAL PAYABLE TO TOWARDS JUSTICE:  $22,399.00*

## APPENDIX B:  COSTS AND EXPENSES

**Payable to Boies Schiller Flexner**

<u>Sources</u>:  Rodriguez Declaration (throughout); Keough Declaration (where noted)

| Category[1] | Amount | Notes |
|---|---|---|
| Court costs:  Court reporters and transcripts | $192,410.76 | Includes $14,444.39 that will become due and payable to vendors at the end of the case.  Rodriguez Decl. ¶ 8(c). |
| Court costs:  Filing fees | $2,631.00 | |
| Court costs:  Process servers | $1,776.50 | |
| Court costs:  Witness, admission, and misc. other fees | $1,896.87 | |
| Deposition conference room expenses | $5,491.29 | |
| Document reproduction | $31,974.77 | |
| Invoices paid to experts and expert consultants | $2,161,564.34 | Includes all fees and expenses billed by experts and expert consultants, including for three depositions, class certification and merits reports, and assistance in litigation Defendants' *Daubert* motion (including Defendants' appeal of Magistrate decision and Defendants' motion to reconsider this Court's order affirming that decision). |
| Legal research expenses | $240,780.01 | Computer research and case-specific book purchases. |
| Miscellaneous case-specific purchases and expenses | $1,787.78 | |
| Overtime and after-hours meals and local transportation | $25,208.47 | Includes local transportation where permitted by BSF policy (*e.g.*, for safety purposes when staff or attorneys work late). |
| Post, messenger, and | $4,050.18 | |

---

[1] All BSF cost categories and numbers, except those marked as "[Estimate]", are actual totals from the Firm's billing and invoice system.  These costs have been handled consistent with BSF billing practices for paying clients, and would ordinarily be invoiced to paying clients.  Rodriguez Decl. ¶¶ 3-4 & 7.

2

## APPENDIX B:  COSTS AND EXPENSES

| | | |
|---|---|---|
| courier services | | |
| Telephone | $4,536.18 | Includes international long-distance expenses |
| Travel expenses | $143,648.95 | Includes airfare, lodging, meal, and miscellaneous incidentals that directly enabled case work where permitted by BSF policy (*e.g.*, in-flight wireless internet connectivity).  Includes no business or first class airfare, not even for long-haul international travel where Firm policy would ordinarily permit business class.  Hotel expenses followed BSF policy regarding specially negotiated rates.  Rodriguez Decl. ¶¶ 12-13. |
| Class notice and administration expenses incurred to date | $423,843.23 | $356,843.23 from current class administrator.  Keough Decl. ¶ 31.<br><br>Remainder from previous vendor.  Due to issues with the previous vendor's services, BSF obtained a very significant refund from that vendor.  The amount requested has been reduced by the amount of that refund.  In addition and in an abundance of caution, BSF has further written down the amount paid to that vendor.  *See* Rodriguez Decl. ¶ 8(b). |
| [Estimated] Class administrator expenses for May 2019 through end of engagement | $75,000 | Keough Decl. ¶ 30. |
| [Estimated] Travel and reproduction expenses for final approval hearing | $6,000 | |

**TOTAL PAYABLE TO BOIES SCHILLER FLEXNER:  $3,322,600.33**

**GRAND TOTAL:          $3,345,535.33**

3

**<u>Certificate of Service</u>**

I hereby certify that on May 16, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.


     */s/ Peter M. Skinner*
     Peter M. Skinner