**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
     and those similarly situated,

     Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

     Defendants.

---

**DECLARATION OF ATTORNEY ALEXANDER HOOD**

---

1

I, Alexander Hood, declare that the following is true and correct based upon my personal knowledge:

1. I am an attorney for Plaintiffs and class counsel in the above-captioned action.

**Towards Justice**

2. I am a founding attorney at Towards Justice.

3. Towards Justice is a nonprofit law firm in Denver, Colorado that seeks to advance economic justice through impact litigation, strategic policy advocacy, and capacity building.

4. Towards Justice was founded in response to the high volume of wage theft complaints that were not being addressed in Colorado, but quickly broadened its scope to take on cases that dismantle the power imbalances that undermine the value of work and diminish worker rights. *See* www.towardsjustice.org.

**The *Beltran* Litigation**

5. In November 2014, Towards Justice was approached by the original named Plaintiff in this action, Paola Beltran.

6. In Ms. Beltran's intake interview, Towards Justice originally heard echoes of complaints from domestic workers complaining about mistreatment and underpayment of wages in other contexts.

7. In researching Ms. Beltran's claims, however, Towards Justice's attorneys discovered that Ms. Beltran had performed her childcare work while in the United States on a visa program that had thousands of participants, was national in

scope, and seemed to result in the payment of near-identical, low wages for all workers working on the visas.

8. In further research, attorneys at Towards Justice identified the facts and law underpinning the wage and hour, fraud, and antitrust violations that became the pillars of the claims in this case.

9. Towards Justice understood that filing the litigation would elicit a strong response from an industry that had relied on this business model for years. That was a tremendous risk for a young organization, but a risk that Towards Justice was eager to take to protect its client and tens of thousands of *au pairs* she sought to represent.

10. Towards Justice drafted and filed the original complaint and the first amended complaint, and managed all litigation between the filing of the case in November 2014 and the response to the motions to dismiss in June 2015.

11. Throughout this initial period of litigation, Towards Justice sought co-counsel from large nationwide firms, as it knew that the costs and attorney time associated with litigating a complex class action for over 100,000 class members spread across the globe would require significant resources and expertise.

12. Towards Justice had significant difficulty finding a firm to take on the case. It was clear that Defendants were prepared to litigate for years, and many large firms had conflicts that could not be overcome.

13. For example, Towards Justice initially retained a private law firm on an hourly basis to assist with developing the case. That firm, however, was unwilling to

3

devote the resources necessary to litigate this case to judgment, and was also unwilling to serve as counsel of record for an employee-side class because its defense-side clients would be offended by the "positional conflict."

14. After Towards Justice was also passed over by several firms specializing in plaintiff's class action lawsuits (largely because those firms perceived, correctly, that litigating this case would require an enormous investment of both dollars and human resources), Towards Justice was referred to a Boies Schiller Flexner LLP ("BSF") partner who had worked in the United States Attorney's Office for the Southern District of New York by a mutual acquaintance.

15. As a nationwide firm with 15 offices and hundreds of attorneys, BSF clearly had the resources to litigate the case.

16. But, more importantly, BSF's litigation team, composed of several former federal prosecutors, had the requisite experience to litigate—through trial if necessary— the antitrust and RICO fraud claims in this case.

17. To my knowledge, there is no Denver-based plaintiff-side law firm with this combination of expertise and resources.

18. After BSF joined the case, Plaintiffs survived the motions to dismiss, certified over 20 classes, survived summary judgment, and brought this case to its successful conclusion.

19. During the initial period of the litigation, the case was all-encompassing for Towards Justice, forcing the organization to forgo other litigation opportunities.

**Towards Justice's Education and Experience**

20. Towards Justice attorneys Alexander Hood, David Seligman, and Nina DiSalvo worked on this case.

21. The education and experience of Towards Justice's attorneys supports a billing rate of $450.00 per hour. *See, e.g., Saenz Mencia v. Allred*, 2017 WL 4480836, at *4 (D. Utah Oct. 6, 2017) (approving $450 hourly rate for attorney with 12 years of experience).

22. The Court already recognized these qualifications in its order certifying the Rule 23 classes. *See* ECF Doc. 828 at 34 ("The Court agrees that BSF and Towards Justice … have extensive experience in handling complex class action suits, are knowledgeable about relevant law, and have ample resources to vigorously advocate for Plaintiffs.").

23. Additional information regarding the attorneys at Towards Justice can be found on Towards Justice's website. *See* http://towardsjustice.org/who-we-are/our-staff

24. Given the length and complexity of the litigation, the following hours are reasonable for Towards Justice's attorneys:

    a. Alexander Hood: 327.8 hours

    b. David Seligman: 154 hours

    c. Nina DiSalvo: 38 hours

25. Towards Justice's attorneys were involved throughout the litigation, even after the retention of BSF. They were heavily involved in filing the case, litigating the motion to dismiss and other dispositive motions, litigating class certification, and

performing several discovery tasks. They were also principally responsible for litigation surrounding the enforceability of some Defendants' purported arbitration agreements.

26. I am the Chief Financial Officer at Towards Justice.

27. I have reviewed Towards Justice's financial records and Towards Justice expended $22,399.00 in costs in pursuing this litigation. These costs are categorized as follows:

| | |
|---|---|
| Printing/Copying | $       785.04 |
| Legal Research (Lexis/Westlaw) | $       480.00 |
| Client Communication/Investigation | $ 21,030.18 |
| Meeting Expenses | $       103.78 |
| **TOTAL** | **$ 22,399.00** |

Executed on May 16, 2019

s/Alexander Hood
Alexander Hood, Class Counsel