## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03074-CMA

**JOHANA PAOLA BELTRAN;**
**LUSAPHO HLATSHANENI;**
**BEAUDETTE DEETLEFS;**
**ALEXANDRA IVETTE GONZALEZ;**
**JULIANE HARNING;**
**NICOLE MAPLEDORAM;**
**LAURA MEJIA JIMENEZ;**
**SARAH CAROLINA AZUELA RASCON;**
**CATHY CARAMELO;**
**LINDA ELIZABETH;**
**GABRIELA PEREZ REYES, and those similarly situated,**

**Plaintiffs,**

**v.**

**INTEREXCHANGE, INC.;**
**USAUPAIR, INC.;**
**GREATAUPAIR, LLC;**
**EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT AUPAIR;**
**EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;**
**CULTURAL HOMESTAY INTERNATIONAL;**
**CULTURAL CARE, INC., d/b/a CULTURAL CARE AU PAIR;**
**AUPAIRCARE INC.;**
**AU PAIR INTERNATIONAL, INC.;**
**APF GLOBAL EXCHANGE;**
**NFP, d/b/a AUPAIR FOUNDATION;**
**AMERICAN INSTITUTE FOR FOREIGN STUDY, d/b/a AU PAIR IN AMERICA;**
**ASSOCIATES IN CULTURAL EXCHANGE, d/b/a GOAUPAIR;**
**AMERICAN CULTURAL EXCHANGE, LLC, d/b/a GOAUPAIR;**
**GOAUPAIR OPERATIONS, LLC, d/b/a GOAUPAIR;**
**AGENT AU PAIR;**
**A.P.E.X., AMERICAN PROFESSIONAL EXCHANGE, LLC, d/b/a PROAUPAIR; and**
**20/20 CARE EXCHANGE, INC., d/b/a THE INTERNATIONAL AU PAIR EXCHANGE,**

**Defendants.**

_____

## REPORTER'S TRANSCRIPT
## (Fairness Hearing)

_____

*DARLENE M. MARTINEZ, RMR, CRR*
*United States District Court*
*For the District of Colorado*

Proceedings before the HONORABLE CHRISTINE M. ARGUELLO, Judge, United States District Court, for the District of Colorado, commencing at 9:03 a.m. on the 18th day of July, 2019, Alfred A. Arraj United States Courthouse, Denver, Colorado.

### A P P E A R A N C E S

**FOR THE PLAINTIFFS:**
PETER M. SKINNER, BYRON PACHECO, MATTHEW L. SCHWARTZ, DAWN L. SMALLS, and SEAN P. RODRIGUEZ, Boies Schiller & Flexner, LLP, 575 Lexington Ave., 7th Floor, New York, NY 10022
ALEXANDER N. HOOD and DAVID SELIGMAN, Towards Justice, 1410 High Street, Suite 300, Denver, 80218

**FOR DEFENDANT CULTURAL CARE, INC.:**
JOAN A. LUKEY, Choate, Hall & Stewart, LLP, Two International Place, Boston, MA 02110
JAMES M. LYONS, Lewis Roca Rothgerber Christie, LLP, 1200 17th St., One Tabor Center, Suite 3000, Denver, CO 80202

**FOR DEFENDANTS AGENT AU PAIR, AMERICAN CULTURAL EXCHANGE, LLC, AU PAIR INTERNATIONAL, INC., GOAUPAIR OPERATIONS, LLC:**
KATHRYN A. REILLY, NATALIE WEST, and BRETT M. MULL, Wheeler Trigg O'Donnell, LLP, 370 17th St., Suite 4500, Denver, CO 80202

**FOR DEFENDANT AUPAIRCARE, INC.:**
PEGGY E. KOZAL, Gordon & Rees, LLP, 555 17th St., Suite 3400, Denver, CO 80202

**FOR DEFENDANT 20/20 CARE EXCHANGE, INC.:**
LAWRENCE D. STONE, Nixon Shefrin Hensen Ogburn, P.C., 5619 DTC Parkway, Suite 1200, Greenwood Village, CO 80111

**FOR DEFENDANT CULTURAL HOMESTAY INTERNATIONAL:**
JAMES HARTLY, Holland & Hart, LLP, 555 17th St., Suite 3200, Denver, CO 80202

**FOR DEFENDANT GREAT AUPAIR, LLC:**
MARTIN J. ESTEVAO, Armstrong Teasdale, LLP, 4643 S. Ulster St., Suite 800, Denver, CO 80237

**FOR DEFENDANT AMERICAN INSTITUTE FOR FOREIGN STUDY:**
STEPHEN J. MACRI, Ogletree Deakins Nash Smoak & Stewart, P.C., 599 Lexington Ave, 17th Floor, New York, NY 10022

**FOR DEFENDANT INTEREXCHANGE, INC.:**
BROOK A. COLAIZZI, Sherman & Howard, LLC, 633 17th St., Suite 3000, Denver, CO 80202

**FOR DEFENDANT EURAUPAIR INTERCULTURAL CHILD CARE PROGRAM:**
MARTHA L. FITZGERALD and DAVID MESCHKE, Brownstein Hyatt Farber Schreck, LLP, 410 17th St., Suite 2200, Denver, CO 80202

**FOR DEFENDANT APF GLOBAL EXCHANGE:**
SUSAN M. SCHAECHER, Fisher & Phillips, LLP, 1801 California St., Suite 2700, Denver, CO 80202

**FOR DEFENDANT USAUPAIR, INC.:**
WILLIAM J. KELLY, III, Kelly & Walker, LLC, 1512 Larimer St., Suite 200, Denver, CO 80202

**FOR DEFENDANT EXPERT GROUP INTERNATIONAL, INC.:**
BOGDAN ENICA, Attorney at Law, 111 2nd Ave NE, Suite 213, St. Petersburg, FL 33701

```
 1                    JULY 18, 2019

 2          (Proceedings commence at 9:03 a.m.)

 3          THE COURT:  Good morning.  You may be seated.

 4          Court calls Civil Action No. 14-cv-03074-CMA,

 5    encaptioned Johana Paola Beltran, et al, v. Interexchange,

 6    Inc., et al.

 7          Counsel, would you please enter your appearances.

 8          MR. SKINNER:  Good morning, Your Honor, Peter

 9    Skinner, from Boies Schiller Flexner on behalf of

10    plaintiffs.  I am joined at counsel table by Matthew

11    Schwartz, Dawn Smalls, Sean Rodriguez, and Byron Pacheco,

12    from my firm.  We are also joined by David Seligman and

13    Alexander Hood from Towards Justice, our co-counsel on

14    this case.

15          THE COURT:  Good morning.

16          MS. LUKEY:  Good morning, Your Honor, Joan Lukey

17    from Choate, Hall & Stewart in Boston, on behalf of

18    Cultural Care, Inc.

19          MS. REILLY:  Good morning, Your Honor, Katie Reilly

20    from Wheeler Trigg, on behalf of Agent Au Pair, Au Pair

21    International, and GoAuPair.

22          MS. KOZAL:  Good morning, Your Honor, Peggy Kozal

23    on behalf of AuPairCare.

24          MR. LYONS:  Good morning, Your Honor, Jim Lyons for

25    Cultural Care, Inc.
```

1          MS. COLAIZZI:  Good morning, Your Honor, Brooke

2    Colaizzi, Sherman & Howard, on behalf of InterExchange.

3          MR. KELLY:  Good morning, Your Honor, Bill Kelly,

4    Kelly & Walker, USAuPair.

5          MR. MACRI:  Good morning, Your Honor, Stephen Macri

6    on behalf of the American Institute for Foreign Study.

7          MR. HARTLEY:  Jim Hartley, Cultural Homestay

8    International.

9          MS. SCHAECHER:  Susan Schaecher, APF Global

10    Foundation.

11          MR. ESTEVAO:  Good morning, Your Honor, Martin

12    Estevao, GreatAuPair.

13          MR. MESCHKE:  Your Honor, David Meschke and Martha

14    Fitzgerald, Brownstein Hyatt Farber Schreck, on behalf of

15    EuRaupair InterCultural Child Care Programs.

16          MS. MULL:  Good morning, Your Honor, Brett Mull on

17    behalf of Au Pair International, Agent Au Pair, and

18    GoAuPair Operation, from Wheeler Trigg, with my colleague

19    Natalie West.

20          THE COURT:  Good morning to you all.  Oh, happy

21    day!

22          All right.  We are convened this morning for the

23    final fairness hearing in this matter.  Before the Court

24    are Plaintiffs' Motion for Final Approval of Class and

25    Collective Action Settlement and Plaintiffs' Motion for

1    Attorney Fees and Expenses.

2         I am sorry, there are two folks on the phone, I

3    believe.

4         MR. STONE:  Yes, Your Honor.  Larry Stone,

5    appearing on behalf of A.P.E.X.  and 20/20.

6         MR. ENICA:  And Bogdan Enica on behalf of Expert

7    Group International, Inc.

8         THE COURT:  Well, good morning to you all.

9         So, I am going to begin with a brief description of

10   my understanding of the factual and procedural background

11   of this case so that the parties can make any

12   clarifications, if necessary, for the record.

13        Plaintiffs, all current or former au pairs employed

14   by a defendant agency, initiated this action on November

15   13, 2014.  Their Complaint has been amended three times to

16   add additional plaintiffs.

17        All defendants are business entities authorized by

18   the United States Department of State pursuant to the J-1

19   visa program to recruit and place au pairs with host

20   families in the United States.

21        Plaintiffs' theory of the case is that defendants

22   did not pay them in accordance with the *Fair Labor*

23   *Standards Act*, or FLSA, as required by State Department

24   regulations or with state wage and hour laws.  They also

25   allege that defendants conspired to fix their wages at an

1   unlawfully low amount and misrepresented to au pairs their
2   power to negotiate wages with the host families.
3       Plaintiffs' claims include FLSA claims, antitrust
4   claims, *Racketeer Influenced and Corrupt Organizations Act*
5   claims, state consumer protection claims and state labor
6   law claims.
7       This Court ultimately certified 18 classes pursuant
8   to Federal Rule of Civil Procedure 23 and conditionally
9   certified 11 collective action classes pursuant to the
10  FLSA.
11      From the time this lawsuit was initiated in late
12  2014, the parties have vociferously litigated countless
13  motions and engaged in monumental discovery.  Following
14  this Court's denial of summary judgment in June of 2018,
15  the parties prepared to bring this suit to a 6-week jury
16  trial to begin on February 25, 2019.
17      At a trial preparation conference on August 24,
18  2018, defendants asked that the entire matter be referred
19  to a magistrate judge for a settlement conference; a
20  request that this Court enthusiastically granted.
21      The Court referred the matter to Magistrate Judge
22  Michael Hegarty, who conducted an in-person mediation
23  session on October 17th of 2018, where the parties met
24  with Judge Hegarty for more than 13 hours, as I
25  understand, and ultimately resolved to continue settlement

1   negotiations under his guidance during the following

2   month.

3         No doubt, in thanks to the parties' good faith

4   efforts and to Judge Hegarty's skillful leadership, the

5   parties ultimately reached agreement on the core terms of

6   its settlement agreement on November 19, 2018.  The final

7   language of that settlement was negotiated during the

8   winter holiday season, and on January 9, 2019, the parties

9   notified this Court that they had settled the matter, the

10  entire case, and had a lengthy settlement agreement which

11  they had entered into.

12        Soon thereafter, the plaintiffs filed, and this

13  Court granted, a Motion for Preliminary Approval of Class

14  and Collective Action Settlement and, in accordance with

15  this Court's Order, the parties disseminated notice of

16  this settlement to potential class members in February of

17  2019, and have been collecting au pairs' feedback since

18  then.

19        On May 16, 2019, plaintiffs filed their Motion for

20  Final Approval of Class and Collective Action Settlement

21  and their Motion for Attorney Fees and Expenses.  They

22  indicate that the defendants take no position on either

23  motion.  The Court set this hearing to make the required

24  findings and to rule on these motions.

25        In preparation for this hearing, the Court has

1   closely reviewed the following documents:   1205,

2   Plaintiffs' Motion for Final Approval of Class and

3   Collective Action Settlement.

4        1206, Plaintiffs' Motion for Attorney Fees and

5   Expenses and all appendices.

6        1223, Plaintiffs' proposed order thereon.

7        1221, Plaintiffs' Declaration of Class Counsel,

8   Joshua Libling, regarding the *Cy Pres* doctrine.

9        Document No. 1207 and exhibits, plaintiffs'

10   Declaration of Class Counsel Peter Skinner in support of

11   both motions and accompanying proposed orders.

12        Document 1208 and all exhibits, Plaintiffs'

13   Declaration of Class Counsel Sean Rodriguez in support of

14   both motions, the accompanying exhibits, including the

15   Settlement Agreement, itself, the Notice, the Claim Form,

16   and a Declaration by the Claims Administrator regarding

17   compliance with the notice requirements of the *Class*

18   *Action Fairness Act* or CAFA.

19        Document 1209, Plaintiffs' Declaration of Class

20   Counsel Alexander Hood.

21        1221-1, Declaration of the Class Administrator

22   regarding claim forms and request for exclusion.

23        All of the submitted objections and comments to the

24   Settlement, including 1202, 1204, 1203, and 1213.   And

25   although 1213 was received after the comment period

1    expired, this Court has reviewed it.

2         Are there any objections or comments that have been

3    submitted in response to the notice that I failed to

4    reference?

5         MR. SKINNER:  No, Your Honor.

6         THE COURT:  Are there any other pertinent facts or

7    relevant documents that I overlooked that the parties

8    would like to put on the record?

9         MR. SKINNER:  One minor fact, Your Honor, from the

10   brief citation earlier.  In addition to the various claims

11   that Your Honor had mentioned, the plaintiffs had also

12   brought the state law tort claims for fraud and negligent

13   misrepresentation.

14        THE COURT:  All right.  Anything from the

15   defendant?

16        MS. LUKEY:  No, Your Honor.

17        THE COURT:  All right.  This hearing today is to

18   make a final determination as to whether this action

19   satisfies the applicable prerequisites for class action

20   treatment under Rule 23; whether this action satisfies the

21   requirements to be treated as an FLSA collective action;

22   whether the notice and notice methodology implemented

23   pursuant to the settlement agreement met all applicable

24   requirements of the Federal Rules of Civil Procedure, the

25   United States Constitution, the rules of this Court, and

1    any other applicable law; whether the proposed settlement

2    is fair, reasonable, and adequate and should be approved

3    by this Court; and whether the Plaintiffs' Motion for

4    Attorney Fees and Expenses should be granted.

5            As mentioned previously, this case involves 18

6    classes and subclasses certified under Federal Rule of

7    Civil Procedure 23.  On February 2, 2018, the Court

8    concluded that these 18 classes and subclasses satisfy the

9    requirements of Rule 23(a) and Rule 23(b)(3) and,

10   therefore, formally certified them.

11           The Court is required to make a final determination

12   as to the appropriateness of certification of these 18

13   Rule 23 classes.  Because the classes have such similar

14   definitions, the Court will address all of the Rule 23

15   classes as one.

16           A Rule 23 class may be certified only if all four

17   of the following requirements are met:  Numerosity,

18   commonality, typicality, and adequacy of representation.

19   The parties must also show that this case falls into one

20   of the three categories set forth in Rule 23(b).  As this

21   Court concluded in its Order granting in part and denying

22   in part Plaintiffs' Motion for Rule 23 Class Certification

23   and Appointment of Class Counsel, each of these factors

24   has been met.

25           Rule 23(a)(1)'s numerosity requirement is easily

1   satisfied as the defendants conceded.  Based on

2   defendants' records, the Claim Administrator identified

3   168,833 potential class members.  Since delivering the

4   notice to more than 97 percent of these potential class

5   members, the Claim Administrator has received 9,684 valid

6   and timely claim submissions, in addition to many more

7   that were not filed timely.

8         It would be impracticable for these thousands of au

9   pairs to pursue individual actions and economically

10  unreasonable to expect them to do so.

11        Second, Rule 23(a)(2)'s commonality requirement is

12  satisfied.  Several questions of law and fact drive this

13  case and are common to each of the Rule 23 classes.  For

14  example, plaintiffs allege an antitrust conspiracy among

15  defendants that "represents a single decision or policy or

16  plan."

17        Similarly, plaintiffs' RICO and state law claims

18  arise from the same alleged conduct.  Because these many

19  class-wide questions of law and fact may be resolved with

20  common answer drawn from common proof, the Rule 23 class

21  has satisfied Rule 23(a)'s commonality requirement.

22        Third, Rule 23(a)(3)'s typicality requirement is

23  satisfied.  All class members allege the same injury by

24  defendants despite variances in their experiences as au

25  pairs.

1          Finally, Rule 23(a)(4)'s adequacy requirement is

2     satisfied.  As to the named plaintiffs, Class Counsel

3     report that they have prosecuted the action vigorously on

4     behalf of the classes by submitting declarations, sitting

5     for lengthy depositions, providing written and document

6     discovery, and assisting Class Counsel in preparing the

7     case.

8          As to Class Counsel, they have extensive experience

9     in litigating complex class actions in wage and hour law

10    and have become intimately familiar with the facts in

11    these claims.  The Court is not aware of any conflict of

12    interest concerning the named plaintiffs or Class Counsel.

13         All 18 Rule 23 classes have therefore satisfied the

14    four prerequisites for class certification under Rule

15    23(a).

16         Turning to the types of class actions under Rule

17    23(b), plaintiffs sought certification of the settlement

18    classes under Rule 23(b)(3), which allows for class

19    certification if "the Court finds that the questions of

20    law or fact common to the members of the class predominate

21    over any questions affecting only individual members, and

22    that a class action is superior to other available methods

23    for the fair and efficient adjudication of the

24    controversy."

25         Where common questions predominate, a class action

 1   can achieve economies of time, effort, and expense as

 2   compared to separate individual lawsuits.  They permit

 3   adjudication of disputes that cannot be economically

 4   litigated on an individual basis, and they avoid

 5   inconsistent outcomes.  That is all taken from the

 6   advisory committee's notes to 223(b)(3).

 7        The 18 Rule 23 classes meet Rule 23(b)(3)'s

 8   predominance requirements here for the same reasons that

 9   they meet the commonality and typicality requirements;

10   namely, the questions of law or fact common to the members

11   of the classes predominate over individual issues.

12   Additionally, the class action is a superior method to

13   adjudicate the claims in this case.

14        No class member has demonstrated an interest in

15   prosecuting a claim individually, nor would it be economic

16   for an individual to do so, given that litigation costs

17   would dwarf potential recovery.

18        The Settlement Agreement, in contrast, provides

19   class members with the opportunity to obtain prompt and

20   predictable relief.  Certifying the classes will likely

21   conserve judicial resources by preventing repetitive

22   proceedings and will preclude insistent judgment of

23   similar issues in individually-filed actions.

24        In summary, the Court confirms its certification of

25   18 classes and subclasses pursuant to Rule 23 of the

1    Federal Rules of Civil Procedure.

2        In addition to the certification of the classes and

3    subclasses under Rule 23, this Court conditionally

4    certified 11 opt-in classes and subclasses as FLSA

5    collective actions.  On March 31, 2017, the Court

6    concluded that plaintiff had satisfactorily alleged that

7    class members were "together the victims of a single

8    decision, policy, or plan," specifically a uniform and

9    conspiratorial policy among defendants to set equal wages

10   for au pairs below the federal minimum wage.

11       In order to approve a settlement prior to a final

12   collective action ruling, "the Court must make some final

13   class certification findings."  Final certification

14   requires the Court to determine whether the class members

15   are similarly situated, and doing so generally requires

16   consideration of the several factors, including disparate

17   factual and employment settings of individual plaintiffs,

18   various defenses available to defendants which appear to

19   be individual to each plaintiff, and fairness and

20   procedural questions.  That is Thiessen, T-H-I-E-S-S-E-N,

21   v. GE Capital Corp, 267 F.3d, 1095, at 1105, Tenth

22   Circuit, 2001.

23       The 11 FLSA classes and subclasses consists of au

24   pairs who are undoubtedly similarly situated.  Despite

25   minor variances in the individual circumstances of

1    particular plaintiffs, the collective action class members

2    allege that defendants conspired to pay all of their au

3    pairs well below the federal minimum wage, to not

4    compensate them for hours worked in excess of 40 hours per

5    week, and for time spent in training and to take illegal

6    deductions or credits from their wages.

7         Moreover, defendants asserted certain common

8    defenses to these allegations, including that they are not

9    joint employers and that a room-and-board deduction

10   applies to all au pair wages.

11        Finally, fairness and procedural considerations,

12   such as allowing plaintiffs to pool their resources for

13   litigation, weigh in favor of the collective treatment.

14   Accordingly, the Court grants plaintiffs' request for

15   final collective action certification of the 11 FLSA

16   classes and subclasses.

17        So we now turn to the adequacy of the Notice, which

18   is filed at Document No. 1208-1, beginning page 50.

19        During the Court's preliminary review of the

20   parties' Settlement Agreement, the Court reviewed the

21   substance of the parties' proposed Class Notice to ensure

22   that it complied with the legal requirements of Rule 23.

23   The Court found that the proposed Notice satisfied the

24   conditions of Rule 23 because it fairly and adequately

25   described the terms and effect of the Settlement Agreement

1    and would enable au pairs to make informed decisions as to

2    the Settlement Agreement and their rights to object to or

3    opt out of the Settlement Agreement.

4         The Court also approved the parties' proposed

5    notice plan, which called for sending Notice by

6    First-Class Mail, email, or text message.

7         The parties complied with the notice plan approved

8    by the Court, as the Claims Administrator details in her

9    Declaration at Document No. 1208-4.  Beginning on February

10   1, 2019, the Administrator was able to deliver notice to

11   more than 97 percent of the 168,833 potential class

12   members.

13        Additionally, the Administrator also published a

14   tri-lingual website and maintained a physical mailing

15   address and email address and a telephone number for

16   potential class members.

17        Class members had until May 2, 2019, to submit

18   their objections or exclusion requests.  The Court finds

19   that this objection and exclusion window afforded enough

20   time to allow class members to respond to the notice.

21        In determining whether notice to class members

22   comports with due process, actual notice to each party

23   intended to be bound by adjudication of the action is not

24   required.  Rather, the Court's inquiry focuses on whether

25   class members were provided with "the best notice

1    practicable under the circumstances, including individual

2    notice to all members who can be identified through

3    reasonable effort."  That is DeJulius, D-E-J-U-L-I-U-S, v.

4    New England Health Care Employees Pension Fund, 429 F.3d

5    935, at page 944, Tenth Circuit, 2005.

6         The legal standards for satisfying Rule 23(c)(2)(B)

7    and due process are coextensive and substantially similar.

8    Ultimately, the Court must ensure that the notices mailed

9    to class members "were sufficient to flush out any

10   objections that might arise to the fairness of the

11   settlement."  Also from DeJulius, at page 946.

12        The Court finds that the notice mechanism here

13   comported with all applicable requirements, as it was the

14   "best notice practicable under the circumstances," and the

15   parties met their obligation to identify all of the class

16   members they could through "reasonable effort."  The

17   notice was also "timely, accurate, and informative."  It

18   included information about the website, email address, and

19   phone number of the Class Administrator.

20        The Court believes that these efforts to inform

21   potential class members were reasonably calculated to

22   apprise the class members of the action, their right to

23   participate or object to the proposed settlement, and

24   their right to appear at the final fairness hearing today.

25        The Court concludes that the Notice and notice plan

1    were adequate under the circumstances and satisfied the

2    relevant requirements of Rule 23 and due process.

3         Moving on to discussion of the settlement terms,

4    the Settlement Agreement, in summary, creates a settlement

5    fund of $65,500,000.  According to the plan allocation,

6    class members will be compensated from this fund based on

7    the extent of their injuries and the strength of their

8    claims.

9         The allocation formula found in Appendix A to

10   Plaintiffs' Motion for Final Approval considers the length

11   of an au pairs service, the relevant federal or state

12   minimum wage, and the nature of the au pair's claim.

13        Plaintiffs represent that, assuming this Court

14   honors late claims, the 10,913 claimants will have an

15   average recovery of $3,500.

16        The settlement fund also accounts for

17   $26,270,535.44 in attorneys' fees and expenses for Class

18   Counsel; approximately $600,000 in non-cumulative

19   participation awards in amounts of:  $5,000 for a named

20   plaintiff, $1,000 for au pairs who were deposed, and $100

21   for each FLSA opt-in plaintiff.

22        The Settlement Agreement also provides for

23   injunctive relief.  It requires defendants to disclose to

24   au pairs and host families that au pairs are free to

25   bargain for compensation that exceeds the applicable legal

1    minimum.  Defendants must make accurate disclosures of

2    information that will encourage informed negotiations and

3    a well-functioning market.

4         In exchange, class members will release defendants

5    and host families from all claims related to the claims

6    asserted in this litigation.

7         The Court has reviewed all of the objections and

8    comments submitted by six au pairs, including the comments

9    that were submitted late.

10        Are there any class members here today?  None?

11        MR. SKINNER:  None that counsel is aware of, Your

12   Honor.

13        THE COURT:  All right.  The Court appreciates the

14   sentiments that were expressed by these au pairs.

15   However, it agrees with plaintiffs that the objections and

16   comments filed do not raise concerns that the Settlement

17   Agreement is unfair or inadequate to the au pairs.

18        Ms. Logan and Ms. Ramirez, in their objections,

19   allege that their sponsoring agencies harmed them in

20   concerning ways, but ultimately, these allegations are not

21   related to the issues raised in this litigation.  The

22   releases required by the Settlement Agreement do not

23   preclude Ms. Logan or Ms. Ramirez from asserting these

24   unrelated claims against defendants in any future action.

25        The agreement explicitly provides that "this

1    release shall not extend to claims or potential claims

2    that any au pair may possess against her or his host

3    family or families if such claims are unrelated to the

4    claims asserted in the litigation."  From Docket 1208-1,

5    page 17.  Thus, Ms. Logan's and Ms. Ramirez' comments do

6    not bear on this Court's analysis of the Settlement

7    Agreement.

8         Ms. Scholz and Ms. Bein, in their objections,

9    raised concerns that the Settlement Agreement is too

10   generous to the au pairs.  Ms. Scholz states that, "the

11   settlement is not bad" but worries that host families will

12   not employ au pairs if the Settlement Agreement goes into

13   effect.  She reflects on the au pair program as being a

14   "great opportunity" for both au pair and families.

15        Ms. Bein explicitly objects to the Settlement

16   Agreement because, in her view, the au pair program should

17   be treated "as a cultural program rather than as an

18   employment relationship."  She asserts that some of the

19   practices alleged in the claim will not be addressed by

20   increased compensation, and "requests that the lawsuit be

21   dropped or adapted to solve the underlying issues, like

22   understaffing and neglect in au pair agencies."  That is

23   from pages 12 and 13 of Ms. Bein's objection, which can be

24   found at 1202 -- Document 1202.

25        The Court finds Ms. Scholz' and Ms. Bein's comments

1    unpersuasive because, as plaintiffs assert, "there is no

2    daylight between cultural exchange and better wages;

3    better conditions and more resources promote better and

4    more exchange." Docket 1205, at 18.  Moreover, neither

5    Ms. Scholz nor Ms. Bein will suffer any actual harm from

6    the Settlement Agreement.  Defendants, not class members,

7    will fund the Settlement.

8         Finally, Ms. Magon, at Document 1202, argues in

9    favor of the Settlement Agreement and expresses wanting to

10   help it gain the Court's approval.

11        Regarding final approval, Rule 23(e) requires

12   judicial approval of the settlement of claims brought on a

13   class basis.  And the authority to approve is in the trial

14   court's sound discretion.

15        Rule 23(e)(2) provides that the parties must show

16   that the proposed class action settlement is "fair,

17   reasonable, and adequate."  In evaluating fairness of the

18   settlement, courts are not to decide the merits of the

19   case or resolve unsettled legal questions.

20        In assessing whether a proposed settlement is fair,

21   reasonable, and adequate, as required by Rule 23(e)(2),

22   the Court considers whether the proposed settlement was

23   fairly and honestly negotiated; whether serious questions

24   of law and fact exist, placing the ultimately outcome of

25   the litigation in doubt; whether the value of an immediate

1   recovery outweighs the mere possibility of future relief

2   after protracted and expensive litigation; and the

3   judgment of the parties that the settlement is fair and

4   reasonable.  That is <u>Rutter & Wilbanks Corp v. Shell Oil</u>

5   <u>Company</u>, 314 F.3d 1180, at page 1188, Tenth Circuit, 2002.

6        In determining whether a proposed settlement was

7   fairly and honestly negotiated, relevant factors include:

8   The reasonableness of any provisions for attorney fees,

9   including agreements on the division of fees among the

10  attorneys and whether the attorney fees are so high in

11  relation to the actual and probable class recovery that

12  the fees suggest a strong possibility of collusion.  And,

13  two, whether the settlement was competed at an early stage

14  of the litigation without substantial discovery and with

15  significant uncertainties remaining.  That is from the

16  *Manual for Complex Litigation,* Section 21.62, at pages

17  316-17.

18       Plaintiffs' Motion for Final Approval asserts that

19  the parties reached this Settlement Agreement after

20  protracted discovery, significant motion practice, and as

21  a product of arms-length negotiations.  Class Counsel,

22  Mr. Skinner, recounts these negotiations in his

23  Declaration.  "These negotiations happened on the eve of

24  trial and required skilled, independent, and patient

25  mediation by Judge Hegarty.  All of the parties are

```
 1    represented by experienced counsel with expertise in the

 2    subject matters involved in this suit."

 3         I do like to put a few extra things on the record

 4    during these hearings just in the event that an issue

 5    arises.  So, you have already discussed most of this in

 6    the Motions for Preliminary and Final Approval.  But I

 7    want to flesh out some of the details.

 8         So, from either side, can you please summarize how

 9    the 13-hour settlement conference on October 17, 2018, was

10    structured?

11         MR. SKINNER:  Sure, I would be happy to, Your

12    Honor.

13         Everyone -- so, the team of the plaintiffs' lawyers

14    from both Boies Schiller Flexner, as well as Towards

15    Justice, as well as representatives of all of the

16    defendants -- and I think there were in the neighborhood

17    of 60 lawyers on the defense side -- all convened at a

18    private law firm here in Denver, because we actually had

19    more people than the Court was able to accommodate.

20         We began by individually meeting with Magistrate

21    Judge Hegarty; first with the plaintiffs, then I think

22    collectively with the defendants.  That took most of the

23    morning, in going back and forth.  Then Judge Hegarty went

24    around and met individually with different defendant

25    representatives and, I think, with some subgroups of
```

1    defendants' representatives, through the afternoon.

2         We started out by giving him a sense of where the

3    plaintiffs felt a fair settlement might be.  And the

4    defendants had an offer, an initial offer in the morning.

5    Those figures were quite far apart.

6         As the day progressed, Judge Hegarty was able to

7    move the parties closer together and identify where some

8    of the substantive sticking points were, and provide, I

9    think, very helpful information from plaintiffs'

10   perspective with respect to some additional details as far

11   as ability to pay and things like that on the defense

12   side.

13        As the parties were at a long day and continued to

14   digest the information flowing back and forth between

15   them, we did get closer and closer, and had reached a

16   point where the plaintiffs, for the first time, felt there

17   might actually be a realistic chance of settlement.  I

18   will be frank, going in, we did not have high expectations

19   and were concurrently preparing for trial and ready to go

20   forward with the trial in February.

21        By the end of the day, we had not reached a final

22   agreement on the numbers, but we at least were within

23   shouting distance of each other.  And we agreed to

24   continue talking, per the supervision of Magistrate Judge

25   Hegarty.

 1          So everybody left from our physical meeting place,

 2     and we proceeded to continue talking, primarily with Judge

 3     Hegarty shuttling between the parties by telephone in the

 4     fall.  I believe we reached a final agreement on the key

 5     terms of the settlement, which was a settlement amount, as

 6     well as the prospective injunctive relief and the scope of

 7     the releases around Thanksgiving, if that is about right.

 8     And then turned to negotiating a term sheet that would

 9     memorialize those key terms.

10          We had the term sheet finalized, and notified Your

11     Honor, I think, just after Thanksgiving, that we had

12     reached an agreement principally on the settlement, and

13     requested that Your Honor take the dates for the trial and

14     preliminary proceedings off the calendar, which the Court

15     then did.

16          We then proceeded, as Your Honor said earlier, to

17     negotiate the final terms of settlement in December and

18     through the holidays, and reached a final agreement in

19     early January, on January 9th.  That memorialized the

20     final Settlement amount of $65.5 million.

21          The final prospective relief, where the defendants

22     agreed in various formats to notify host families and au

23     pairs of their right to agree to wages higher than the

24     legally-applicable minimum, as well as the scope of the

25     releases, all of which were unchanged from the final term

```
 1    sheet that we had reached earlier, but was put in the

 2    final form in the Settlement Agreement, and that was

 3    promptly filed with Your Honor.

 4            THE COURT:  Thank you, Ms. Skinner.

 5            Ms. Lukey, do you wish to add anything?

 6            MS. LUKEY:  Only to say, Your Honor, that in

 7    decades of practice, I have never seen more devotion or

 8    patience or skill in a mediation than we saw from Judge

 9    Hegarty.

10            THE COURT:  He is fabulous.

11            MS. LUKEY:  We thank you for that.  And when we

12    asked you if you could assist us in bringing in an

13    independent person to attempt to mediate, I think we, too,

14    went into it with low expectations of success.  We are

15    eternally grateful to him for his efforts, not only on

16    that 13-hour day, but on all of the phone calls and emails

17    that followed.

18            THE COURT:  He is very skilled.  He is very

19    patient.  He is very thorough.  I sat down with him at one

20    point early on in my career and I said, so, why are you so

21    successful with these?  And he says, because I work hard

22    at these.  He said, it is hard work.  But he is very

23    religious, he is very much a spiritual man.  He says, I

24    pray that God will give me the guidance.

25            I was kind of glad that Magistrate Tafoya was
```

1    unavailable; she is in the southern district now, and that

2    I would have the basis to ask to have Magistrate Judge

3    Hegarty, because he is batting a thousand for me.   Every

4    case I have sent to him, he has settled it.

5              MS. LUKEY:   We are very appreciative.

6              THE COURT:   I as well.

7              MS. LUKEY:   Your Honor, at some point, there is a

8    very minor point in your recitation as to the objections

9    that I would like to correct.   If we could do it now.

10             THE COURT:   Yes.

11             MS. LUKEY:   With regard to Logan and Ramirez, we

12   totally agree that their objections have nothing to do

13   with the process before the Court.   As noted on page 32 of

14   Document 1205, which is the Motion for Final Approval,

15   their complaints related to the host families and what is

16   preserved for them, and particularly is actually carved

17   out of release of claims against the host family.   If they

18   did not withdraw, which I don't think they did, then they

19   have no surviving claims against the sponsors.   That is

20   the only point.   Thank you for that.

21             THE COURT:   All right.

22             MR. SKINNER:   Your Honor, one other point with

23   respect to the objections that would be worth raising

24   right now.   Your Honor had indicated that you took into

25   consideration all six objections, and there were a total

1        of six objections.  In your recitation of the individual

2        objections, you went through five.  There was a sixth

3        objection received from Jan Feureisl, F-E-U-R-E-I-S-L,

4        that came in after our final approval motion, and I wanted

5        to ensure that the Court had taken that into account and

6        reviewed it.

7                THE COURT:  I had reviewed it.  I didn't think it

8        was necessary to address.

9                MR. SKINNER:  Very well.

10               THE COURT:  All right.  Is there anything else

11       anyone here would like to add to the record?

12               MS. LUKEY:  There is just one thing, since I have

13       been designated as lead defendant, I want to be sure, on

14       behalf of AuPairCare -- this is not my argument, but they

15       obviously want a slightly different schedule with regard

16       to the FLSA collective action because of the arbitration

17       provision and an appeal.

18               It is the intention of all parties that they be

19       subsumed in this, and they are parties to the Settlement

20       Agreement, but I believe most of the dates given may have

21       been more specific to the rest of us, and it was slightly

22       a different schedule, although I may be wrong on that, for

23       AuPairCare.

24               But, just for the record, to be clear, they, too,

25       have a collective action and already had your certified

1    classes in the other area.  Thank you.

2         THE COURT:  All right.  So, the Court is satisfied

3    that this Settlement was the product of real arms-length

4    negotiations among experienced counsel, who are all well

5    versed in the legal and factual issues presented by this

6    case.  Accordingly, this factor weighs in favor of

7    approval of the Settlement Agreement.

8         The presence of serious questions of law and fact

9    "augers in favor of settlement because settlement creates

10   certainty of some recovery and eliminates doubt, meaning

11   the possibility of no recovery after long and expensive

12   litigation."  In re:  Qwest Communications International,

13   Inc. Securities Litigation, 625 F.Supp. 2d, 1133, page

14   1138, District of Colorado, 2009.

15        In this case, the parties clearly dispute whether

16   defendants are liable under any theory in plaintiffs'

17   case.  Defendants do not concede liability in the

18   Settlement Agreement and have, over the lengthy course of

19   this litigation, forcefully contested joint employer

20   liability, preemption, the existence of a conspiracy among

21   them, the legality of a 40 percent deduction from au

22   pairs' wages for room and board.  As this Court explained

23   in its Order denying summary judgment, there exists

24   numerous genuine issue of material fact.

25        There are, actually, a number of motions that

1    remain pending that I would have to get to before we get

2    there, and I will tell you, I was dreading this trial,

3    because although you all are very experienced, it was

4    going to be a bear of a trial.

5        The Court finds that these disputes present serious

6    questions of law and fact.  And this factor also weighs in

7    favor of approval of the Settlement Agreement.

8        The Court also finds that in light of the risks of

9    further litigation, the value of this immediate recovery

10   outweighs the mere possibility of future relief after what

11   is likely to be an expensive trial with an indeterminate

12   outcome.  I think it could have gone either way, and it

13   would have been an all or nothing, as opposed to a

14   reasoned settlement.

15       Under the terms of the Settlement Agreement, class

16   members who submit valid claims will receive an average of

17   $3,500.  I expect the class members actually will fair

18   better under the terms of this settlement than they would

19   if they continued their litigation or if the individual

20   members could have individually pursued their claims.

21       Costly additional litigation could mean that class

22   members would not be able to recover anything or that

23   defendants might be rendered financially unviable, based

24   on the fact that these are not defendants who are in

25   really a profit mode, they are really here to push

1    cultural exchange and institute things like that.

2          So, it is apparent to the Court the value of

3    immediate settlement far outweighs the uncertainty of any

4    future relief pursuant to a trial.  So the third

5    consideration weighs in favor of approving the Settlement

6    Agreement.

7          Whether the parties believe the settlement was fair

8    and reasonable, Courts do provide considerable weight to

9    the judgment of experienced counsel on this factor,

10   because counsel is in the best position to evaluate the

11   relative strength and weaknesses of their respective

12   positions and to compare the benefits of the proposed

13   settlement to further litigation.  The Court believes that

14   deference is warranted in this case.  Class counsel

15   indicate that the Settlement Agreement is fair and

16   reasonable in light of all of the circumstances of this

17   case.

18         Defendants did not respond to the Motion for Final

19   Approval, but I assume that defendants agree with the

20   facts, because we are here today; that this is -- the

21   Settlement Agreement is fair and reasonable in light of

22   all of the circumstances.

23         MS. LUKEY:  Your Honor, we certainly are very

24   willing parties in the Settlement Agreement and agree with

25   its terms.  Obviously, in presenting a motion, sometimes

1   language varies; hence defendants took no position on the

2   motions, but are willing participants in the Settlement

3   Agreement.

4        THE COURT:  All right.  As mentioned previously,

5   the few objections and comments from class members have

6   not persuaded the Court this is not fair and reasonable,

7   for the reasons I have just explained.

8        In sum, because it is proper "to take the bird in

9   the hand instead of a prospective flock in the bush,"

10  particularly when that flock might well disappear given

11  the real litigation risks, this Court concludes that the

12  terms of the Settlement Agreement in this case are fair,

13  reasonable, and adequate.  And that quote was taken from

14  Oppenlander -- which I love that language -- v. Standard

15  Oil Company, 64 F.R.D. 597, District of Colorado, 1974.

16       The Court, therefore, approves the Final Settlement

17  Agreement, as the parties have satisfied their burden

18  under Rule 23(e)(2).

19       But, we are not done yet, because I also have to

20  analyze this under the FLSA collective statute.  In a suit

21  by employees against their employer to recover back wages

22  under the FLSA, the parties must present any proposed

23  settlement to the district court for review and a

24  determination of whether the settlement agreement is fair

25  and reasonable.

1          Fortunately for all of you, and for my vocal

2    chords, the standard for fair and reasonable under the

3    FLSA substantially overlaps with the standards employed

4    under Rule 23.  The Court is satisfied that this

5    litigation involves bona fide disputes, as is evidenced by

6    the sheer number of filings on the Court's docket.  The

7    Settlement Agreement is fair and reasonable for the

8    reasons the Court has already explained.  The Settlement

9    Agreement contains a reasonable award of attorney fees, as

10   the Court will go through in a few minutes.  And,

11   accordingly, the Court gives its final approval to the

12   Settlement Agreement pursuant to the FLSA.

13        The Court grants Plaintiffs' Motion for Final

14   Approval of Class and Collective Action Settlement,

15   Document No. 1205, as to the Settlement Agreement, itself.

16        The Court has reviewed Plaintiffs' Proposed Final

17   Order and Judgment.  It has made some minor changes to the

18   proposed Order, but it will enter those orders immediately

19   following this hearing.

20        The Court also grants Plaintiffs' Motion for Final

21   Approval as to the miscellaneous matters and additional

22   requested orders.

23        The Claims Administrator shall honor any valid

24   claims filed prior to May 16, 2019.  The Claims

25   Administrator shall not honor claims submitted after May

1   16, 2019.  The Administrator shall also reach out to the

2   42 potential class members who submitted both a request to

3   exclude and a claim form to resolve those issues.

4        The Court agrees that $536 shall be taxed from the

5   settlement fund in favor of the United States.

6        As to the *cy pres*, the Court approves the parties'

7   joint proposal for the use of residual funds, as is

8   articulated in Document No. 1221.  Residual funds will be

9   used to establish a scholarship program for current class

10  members and administered by the Institute of International

11  Education, subject to the conditions the parties have

12  agreed to.

13       The Court has reviewed proposed Order on the

14  miscellaneous matters.  It, again, has made some minor

15  changes, but will enter that Order immediately following

16  this hearing.

17       Finally, the Court turns to the Plaintiffs' Motion

18  for Attorney Fees and Expenses.

19       Rule 23(h) permits the Court to award "reasonable

20  attorney's fees and nontaxable costs that are authorized

21  by...the parties' agreement."  The FLSA also entitles a

22  prevailing plaintiff to recover reasonable attorneys' fee

23  and costs of the action.  The Court has broad authority to

24  determine the amount and reasonableness of the fees.

25       The Tenth Circuit requires this Court to analyze 12

1    factors, to the extent they are applicable, to determine

2    the reasonableness of the fee.

3         In this case, the plaintiffs' request that pursuant

4    to the Settlement Agreement, Class Counsel be awarded

5    $22,925,000 in attorney fees and $3,345,535.33 in

6    expenses.

7         With respect to the attorneys' fees, taking into

8    consideration the relevant factors -- which I am not going

9    to cite, but if you want to take a look at them, you can

10   find them at Gottlieb, 43 F.3d, at 483.  That is not the

11   cite, I apologize.  It is the Johnson factor.

12        With respect to those attorney's fees, taking into

13   account the relevant 12 factors, the Court finds that the

14   agreed-upon fee award is reasonable as a matter of law for

15   the reasons the plaintiffs outline in their motion for

16   attorney fees.

17        Class counsel expended a reasonable amount of time

18   and labor in this case, and the ultimate fee award is less

19   than what Class Counsel would receive under a lodestar

20   calculation, the amount.  More importantly, Class Counsel,

21   who are all experienced attorneys in this field, achieved

22   very positive results for plaintiffs, thus sparing the

23   class member from lost energy and funds that often come

24   with extended litigation.

25        The Court also approves the expenses Class Counsel

 1    has incurred for which they are now seeking reimbursement.

 2    The Court grants Plaintiffs' Motion for Attorney Fees and

 3    Expenses.

 4          It has, again, reviewed the Order and will enter

 5    that, after making some slight modifications to it,

 6    immediately following this hearing.

 7          The Court, in summary, grants Plaintiffs' Motion

 8    for Final Approval of Class and Collective Action

 9    Settlement, Document No. 1205, and Plaintiffs' Motion for

10    Attorney Fees and Expenses, Document No. 1206.  This case

11    will be finally concluded upon entry of the final

12    judgment.

13          So, that being said, I want to thank all of you,

14    all of the lawyers in this case.  Although there were a

15    few times I had to call you in and reel you in because it

16    was getting out of control, the emotions were running

17    high.  A lot of work was coming up, and I understand that

18    was because it is a very difficult case, with very novel

19    issues on certain issues.

20          But, I want to thank you for the quality of the

21    work you all submitted.  I can't tell you how important

22    the quality of your briefing and your argument is to help

23    this Court.  It is so much more time consuming if I can't

24    rely on what you submit to me, and I have to look at

25    everything you submit.  And I still do a lot of that, but

1   just the quality of the work that you all did, really

2   substantially assisted me in the rulings I had to make.

3        I agree with you, I give special thanks to

4   Magistrate Judge Hegarty.  I don't know what I am going to

5   do to thank him on this.  I am still trying to figure out

6   what would be a grand enough gesture of thankfulness to

7   him for his hard work and the effort he put in to

8   assisting you all in coming to this resolution, which I

9   firmly believe is the best outcome for all concerned.

10        And, finally, I have never done this before, but I

11   want to thank my law clerk, Isabel Broer, for all of the

12   efforts she put in to making sure I was on top of

13   everything; that orders were -- when I asked her to draft

14   an order a certain way, and she would come back and say, I

15   don't think that is the way you should go, and debating

16   with me on things.  I could not have gotten through this

17   case without Isabel.  And we have gone through four law

18   clerks, she is my fourth law clerk on this case.  They

19   have all been great, but she has been just phenomenal.

20   So, thank you.

21        All right.  Are there any other matters from you

22   all?

23        MS. LUKEY:  Your Honor, we don't oppose -- or,

24   excuse me, we take no position on the legal fees' motion,

25   but just so there is no subsequent issue raised by anyone,

```
 1    I believe your papers reflect a lodestar multiplier factor
 2    of 2.06.  And, again, we knew that, taking no position.
 3    We believe you stated it as even, without a multiplier,
 4    but to prevent any future issue, I just wanted to make the
 5    notation that our decision to take no position was fully
 6    informed with the 2.0 multiplier.
 7           THE COURT:  All right.  Very good.
 8           Mr. Skinner, anything further from you?
 9           MR. SKINNER:  That is all correct, Your Honor.  We
10    understood the Court to be referring to the lodestar being
11    calculated as opposed to the percentage of fund.
12           One minor housekeeping issue, we heard the Court to
13    say that the Claims Administrator should honor claims that
14    were filed up until May 16th, but we weren't sure if that
15    extended as well to opt outs.  We just wanted to clarify,
16    should we be honoring opt outs?
17           THE COURT:  They should honor the opt outs, yes.
18           MR. SKINNER:  Finally, we would like to extend our
19    profound thanks to the Court, to Your Honor, and through
20    Your Honor, to Judges Tafoya and Hegarty.  We appear in a
21    lot of courts, and we see a lot of different judges and
22    see a lot of different styles.  This was a particularly
23    difficult case.  It was hard fought; Hard fought in ways
24    that I am actually not even familiar with, and I
25    participate in difficult litigation all of the time.  And
```

1    I don't know how we would have gotten here today without

2    the collective oversight of all three of the fine judges

3    on this case.

4         And, on behalf of the entire Class of Plaintiffs,

5    we would like to extend our thanks to the Court.

6         MS. LUKEY:  And the defendants join in that, Your

7    Honor.  Thank you so much.

8         THE COURT:  All right.  Very good.  Well, one of

9    the things I do, and it will be difficult, but one of the

10   things I have done since I have taken the bench, because

11   Ken Salazar told me when he sent my name forward that if I

12   got confirmed he wanted me to change the culture on this

13   Court.  And I said, Ken, I will be the junior judge, I

14   don't think I can change certain people's way of doing

15   things here, but I will do my part to make sure parties,

16   litigants, lawyers, all feel welcome in my Court, and that

17   is when you appear before me for the first time, I invite

18   you back to chambers.

19        I didn't do that here, because there were so many

20   of you.  But I would invite you all to come back to

21   chambers.  I also like to show off my chambers.  I think

22   they are nicely done, and just to allow us to talk a

23   little less formally, now that we have gotten through this

24   case.  I am very relieved I didn't have to spend 6 weeks

25   with you or more on this trial.

1          But, I do love being in trial, so it would have

2     been a fun undertaking.  But I know I would have been

3     working nights and days, same as you all, because I know

4     issues would have arisen.  But I invite you to come back

5     to chambers immediately after I recess.

6          Court will be in recess.

7          (Proceedings conclude at 9:53 a.m.)

8

9          **R E P O R T E R ' S   C E R T I F I C A T E**

10

11          I, Darlene M. Martinez, Official Certified

12     Shorthand Reporter for the United States District Court,

13     District of Colorado, do hereby certify that the foregoing

14     is a true and accurate transcript of the proceedings had

15     as taken stenographically by me at the time and place

16     aforementioned.

17

18          Dated this 27th day of August, 2019.

19

20          _____

21          s/Darlene M. Martinez

22          RMR, CRR

23

24

25