# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
and those similarly situated,
    Plaintiffs,
v.

INTEREXCHANGE, INC.,
USAuPair, Inc.,
GreatAuPair, LLC,
Expert Group International Inc., dba Expert AuPair,
EurAuPair Intercultural Child Care Programs,
Cultural Homestay International,
Cultural Care, Inc. d/b/a Cultural Care Au pair,
AuPairCare Inc.,
Au pair International, Inc.,
APF Global Exchange, NFP, DBA aupair foundation,
American Institute For Foreign Study dba Au pair in America,
ASSOCIATES IN CULTURAL EXCHANGE dba GOAUPAIR,
American Cultural Exchange, LLC, dba goAuPair,
GoAuPair Operations, LLC, DBA GOAUPAIR,
Agent Au pair,
A.P.EX. American Professional Exchange, LLC dba ProAuPair, and
20/20 Care Exchange, Inc. dba The International Au pair Exchange,
    Defendants.

_____

**CLASS COUNSEL'S MOTION TO FUND SPECIAL DISTRIBUTION EFFORTS IN RESPONSE TO COVID-19-RELATED ISSUES**
_____

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

MEET-AND-CONFER STATEMENT ............................................................................ 1

AUTHORITY ................................................................................................................. 1

INTRODUCTION .......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

I.      COVID-19's Effect on Certain International Class Members ............................... 3

II.     Wire Transfers vs. Other Solutions ..................................................................... 5

III.    The Court-Authorized and Funded Procedures ................................................. 5

        A.     The "first distribution" ............................................................................... 6

        B.     The Class Administrator's work and funding ............................................ 7

PROPOSAL .................................................................................................................. 7

ARGUMENT ................................................................................................................. 8

I.      The Court May Order Special Efforts .................................................................. 8

        A.     The Court may authorize Special Efforts pursuant to the Amended Final Judgment and the Court's inherent authority. ............................................ 8

        B.     Alternatively, Special Efforts may be ordered under Rule 60(b)(6). ........... 9

II.     Special Efforts Are Appropriate ......................................................................... 10

III.    The Class Administrator Should Be Compensated for Any Special Efforts ........ 11

CONCLUSION ........................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Atlas Biologicals, Inc. v. Kutrubes*,
  No. 18-CV-00969-CMA-MEH, 2019 WL 1200809 (D. Colo. Mar. 14, 2019) .............. 10

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ................................................................................... 11

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  No. CIV.A. 04-374 JAP, 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ........................... 11

*Jenkins v. Weinshienk*,
  670 F.2d 915 (10th Cir. 1982) ................................................................................. 10

*Servants of Paraclete v. Does*,
  204 F.3d 1005 (10th Cir. 2000) ............................................................................... 11

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*,
  No. 11-CV-1468-WJM-BNB, 2018 WL 803663 (D. Colo. Feb. 9, 2018) .................... 11

**Statutes**

28 U.S.C. § 1715 ......................................................................................................... 8

**Rules**

Fed. R. Civ. Proc. 23 ......................................................................................... 2, 10, 11

Fed. R. Civ. Proc. 60 ............................................................................................ 2, 9, 10

**Other Authorities**

Denmark National Bank,
  "Danmarks Nationalbank 1818-2018," at 120,
  https://www.nationalbanken.dk/en/publications/anniversary%20publications/Documents/Nationalbanken%201818-2018_uk.pdf ................................................................ 5

South African Government,
  "South African Reserve Bank on discontinuation of cheques,"
  https://www.gov.za/speeches/south-african-reserve-bank-discontinuation-cheques-18-nov-2020-0000 ........................................................................................... 5

USPS,
  "International service disruptions,"
  https://about.usps.com/newsroom/service-alerts/international/welcome.htm .......... 4, 5

## MEET-AND-CONFER STATEMENT

On January 28, 2021, Class Counsel sent an email to all Defendants' counsel stating Class Counsel's intent to file this Motion.  No defense counsel objected.  Counsel for one Defendant asked for more information.  Decl. of S. Rodriguez, ¶ 2, Exhs. 1 & 2.

## AUTHORITY

Class Counsel moves pursuant to this Court's continuing jurisdiction under the Amended Final Judgment (Dkt. No. 1235 at 3) and further moves, alternatively and in an abundance of caution, under Federal Rules 23(h) and 60(b)(6), for an order authorizing and funding Special Efforts by the Class Administrator to overcome unforeseeable distribution issues created by COVID-19.  Class Counsel hereby requests authorization to pay the Class Administrator up to $65,000 for those efforts.  No attorneys' fees or other costs are sought.

## INTRODUCTION

Class Counsel obtained a $65 million settlement in this class action.  *See* Dkt. No. 1229 at 2-3 [hereafter Order Granting Final Approval].  Over the past year, the Class Administrator dispatched checks to more than 13,000 class members residing in over 75 foreign countries.  Decl. of J. Keogh, CEO of Class Administrator JND Legal Administration LLC [hereafter "JND Decl."] ¶¶ 7, 15-18 & JND Decl. Exh A.  The overall rate of check cashing has exceeded 75%, and the resulting payments amount to more than 89% of the claimed funds.  *Id.* at ¶ 17.  Those rates would be very good even in a case that involved only domestic payments.  *Id.* at ¶ 20.

1

Even so, COVID-19-created problems have lowered those aggregate figures. Hundreds of class members hold checks that they cannot safely or efficiently cash due to country-specific postal service interruptions and travel restrictions. Class Counsel believes this situation warrants special outreach and wire transfers to certain class members who have made claims but have not been able to cash their checks ("Special Efforts"). The Final Judgment anticipates a possible "second distribution" followed by a *cy pres* disbursement, but Class Counsel believes that the Special Efforts are more appropriate because hundreds of class members have reached out to explain that they have in hand their <u>first</u> distribution check, but have been unable to cash it.

The requested Special Efforts will require the Class Administrator to incur additional out-of-pocket costs and devote significant resources. JND Decl. ¶ 29-30. The Class Administrator has already gone above and beyond the distribution plan by offering free wire transfers to class members in certain extenuating circumstances, canceling and re-sending multiple checks when *au pairs* have reported that extraordinary COVID-related postal delays that resulted in checks not being delivered until after their expiration, and by maintaining and holding open the Qualified Settlement Fund ("QSF") longer than planned. *Id.* at ¶¶ 18 & 21-23. The Class Administer therefore seeks additional funding of up to $65,000, for the Special Efforts. This funding will <u>not</u> cause the QSF to run a negative balance or adversely affect the class; it would only lower the residual funds for a *cy pres* distribution.

For these reasons and those that follow, Class Counsel respectfully requests an order funding the Class Administrator's Special Efforts.

## BACKGROUND

The class members are young people largely residing in foreign countries, hundreds of whom have contacted the Class Administrator or Class Counsel to express how important the class settlement money is to them in these difficult times. The outstanding checks have a mean value of $1,845.95. JND Decl. ¶ 27.

The high overall check-cashing rate—89% of the claimed funds and over 75% of the checks—obscures significant discrepancies across countries. Brazil and the United States have check cashing rates of over 82%. JND Decl. at ¶ 17 & Ex. A. Germany, with 2,061 claimants, has a check-cashing rate of over 93%. *Id.* On the other hand, South Africa (319 claimants) has an **8%** check cashing rate. *Id.*

### I.  COVID-19's Effect on Certain International Class Members

COVID-19 has created problems for approximately 1,000 *au pairs*. Many of them have checks but are unable to cash them for reasons including:

- COVID-19 international postal delays and shutdowns have resulted in checks arriving to certain countries well after their expiration date, despite multiple attempts to send checks;

- Certain countries' postal systems appear not to have delivered a significant percentage of checks, including checks sent almost 12 months ago;

- Certain countries have few or no banks that will process paper checks, or international checks, and COVID-19 travel restrictions have left *au pairs* without a safe way to reach a check cashing location.

South Africa well illustrates all three of these problems. Throughout the year, South Africa's postal system has suffered significant postal delays.[1] Many checks have

---

[1] *See* USPS, "International service disruptions," https://about.usps.com/newsroom/service-alerts/international/welcome.htm; *see also* JND Decl. ¶ 21.

been delayed more than three months. JND Decl. at ¶ 21 & Exh. A. Moreover, South Africa has mandated its banks to stop paper check processing by December 31, 2020.[2] Thus, even though the U.S. Postal Service reports that South Africa was normalizing its international mail receipt (but not necessarily its domestic delivery) as of December, 2020, that is no help to *au pairs* who will be unable to cash the check domestically by the time it arrives.[3] The results are stark:

> "of 319 payments issued to Class members in South Africa, 197 were returned as undeliverable, and of the 28 payments that were completed, 13 were checks cashed more than 90 days after the date of issue and 6 were payments that were completed by wire, meaning only 9 checks to South Africa were cashed within 90 days of the date of issue.

JND Decl. ¶ 21.

Similarly, class members in some countries in the European Union—notably certain Scandinavian countries—either have few (if any) banks that accept international paper checks or do not accept or process paper checks within their borders.[4] JND Decl. ¶ 22. Even so, *au pairs* in these countries have been able to cash their checks (JND Decl. Exh. A)—presumably by traveling to neighboring countries—but COVID-19 makes such travel difficult and potentially dangerous.

---

[2] South African Government, "South African Reserve Bank on discontinuation of cheques," https://www.gov.za/speeches/south-african-reserve-bank-discontinuation-cheques-18-nov-2020-0000

[3] USPS, "International service disruptions," https://about.usps.com/newsroom/service-alerts/international/welcome.htm

[4] Denmark National Bank, "Danmarks Nationalbank 1818-2018," at 120, https://www.nationalbanken.dk/en/publications/anniversary%20publications/Documents/Nationalbanken%201818-2018_uk.pdf; JND Decl. ¶ 22; Denmark National Bank, "Danmarks Nationalbank 1818-2018," at 120, https://www.nationalbanken.dk/en/publications/anniversary%20publications/Documents/Nationalbanken%201818-2018_uk.pdf

Several South American countries have also had severe postal delays.  One country, Colombia, currently has more than 20 *au pairs* reporting that properly addressed checks sent as early as January 2020 were <u>never delivered</u>.  JND Decl. ¶ 23.  Multiple attempts to send checks have failed, and the Class Administrator has issued wire transfers when able.  JND Decl. ¶¶ 20-23 & Ex. A.

## II.     Wire Transfers vs. Other Solutions

Wire transfers are the fastest and most efficient way to transfer money other than a check.  Online "person-to-person" payment systems are not a good alternative.  Such systems have foreign exchange rules and fraud detection systems that make international payments difficult.  JND Decl. ¶¶ 24-25.  In the Class Administrator's experience, wire transfers are the most efficient means for sending money to a large number of foreign class members.  *See id.*

## III.    The Court-Authorized and Funded Procedures

The Court approved a total payment of $431,843.23 to the Class Administrator, of which $75,000 was a fixed fee arrangement with the Class Administrator for certain post-judgment work so that the plan of distribution would not result in a higher charge to the QSF.  *See* Dkt. No. 1230 at 2-3; *see also* Dkt. No. 1206 at 17-18 & Appendix B; Dkt. No. 1208-4 at ¶¶ 31-32 (Class Administrator's declaration concerning fee arrangements); JND Decl. ¶¶ 28-29.

In exchange, between April 2019 and November 2020, Class Administrator has performed over $800,000 of work—a far higher number than anticipated due largely to the extraordinary volume of class member communications and check-reissuing the Class Administrator has performed.  JND Decl. ¶¶ 28-29.  The Class Administrator has

5

performed the vast majority of that work without compensation due to Class Counsel's negotiation of a flat rate of $75,000.  *Id.*

In short, the Class Administrator has already been forced to exceed its budget plan by more than an order of magnitude as it issued multiple checks and wire transfers, even though those functions were not strictly within the original scope of the Class Administrator's work.  The Class Administrator has absorbed those significant costs without reimbursement.  JND Decl. ¶¶ 28-29.

### A.     The "first distribution"

The Amended Order Granting Final Approval orders funds disposition "pursuant to the conditions set forth in the Declaration of Joshua L. Libling Regarding *Cy Pres*." Dkt. No. 1234 at 4.  In turn, the Libling Declaration provides:

> "*First*, should the residual be sufficiently large as to make it administratively feasible (in class counsel's reasonable discretion), the Class Administrator will conduct a second distribution to the class prior to any *cy pres* distribution. The second distribution shall be distributed *pro rata* to those class members who (a) received a distribution in the first round and (b) cashed the check that they received. This second distribution, therefore, is designed to maximize the likelihood that all funds will be distributed directly to the class. Class members receiving a second distribution will receive amounts *pro rata* based on the same calculation as used in the first distribution, the details of which are contained in the Settlement Agreement and Motion for Final Approval."

Dkt. No. 1221 at 3.

Only the first distribution has been made, and though successful, for the reasons explained above, it could have been even more successful but for COVID-19.  As a result of pandemic-related issues, hundreds of class members have their first distribution payment in hand and want to cash it, but cannot.  It is unfair to leave those

class members unpaid while moving on to a second distribution.  Thus, Class Counsel requests approval for the Special Efforts in lieu of a second distribution.

### B. The Class Administrator's work and funding

The Special Efforts are not within the scope of the Claims Administrator's work, and Class Counsel does not believe it has the ability to authorize or pay for the Special Efforts.  The Amended Order Granting Final Approval provides for:

> "Class Counsel's litigation expenses, as well as Expenses for administration of the settlement . . . ."

Dkt. No. 1234 at 3-4.  However, the Order Granting Attorneys' Fees and Costs clarifies that the expense deduction was a sum certain,

> "In addition to attorneys' fees, Class Counsel shall receive $3,345,535.33 for litigation expenses and expenses for administration of the settlement and sending of notice pursuant to 28 U.S.C. § 1715, which shall also be deducted from the QSF"

Dkt. No. 1230 at 2.  The sum-certain approach is consistent with Class Counsel's moving papers in connection with final approval (*e.g.*, Dkt. No. 1206 at 17-18 & Appendix B; Dkt. No. 1208-4 at ¶¶ 31-32), and therefore Class Counsel believes it is not authorized to pay additional administrative expenses from the settlement fund absent Court approval.

### **PROPOSAL**

Class Counsel proposes the following plan (the "Proposal"):

1. The Class Administrator shall create a secure web form that permits *au pairs* who have already submitted valid claims to provide information verifying their identity and banking information sufficient to authorize a wire transfer;

2. The web form shall cause the class member's information, including banking information, to be transferred to the Class Administrator and stored using industry-standard encryption and security protocols;

7

3. The Class Administrator shall send an email communication to class members who have submitted valid claims but whose checks have not been cashed, and who have not previously obtained a wire payment (the "Potentially Affected Class Members"), notifying the Potentially Affected Class Members that they should contact the Class Administrator via the online web form within 30 days if they have been unable to receive or cash their settlement check and wish to request a wire transfer payment;

4. If the Class Administrator confirms the identity of a Potentially Affected Class Member and her or his eligibility for a wire, the Class Administrator will (a) stop payment on the check, (b) wait seven days, after which a wire transfer will be completed if the check has not been presented and payment has been successfully stopped;

5. The Class Administrator may initiate wire transfers for *au pairs* who have previously contacted the Class Administrator or Class Counsel to request a wire transfer;

6. Wire transfers may be made on a rolling basis throughout the period encompassed by Steps 1-5; and

7. Following completion of the foregoing steps, the QSF shall be closed consistent with Amended Order Granting Final Approval (Dkt. No. 1234) at 4.

## ARGUMENT

### I.    The Court May Order Special Efforts

#### A.    The Court may authorize Special Efforts pursuant to the Amended Final Judgment and the Court's inherent authority.

The Amended Final Judgment and Amended Order Granting Final Approval provide:

> that the Court retains continuing and exclusive jurisdiction over the parties and all matters relating to this matter, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this Order.

Dkt. No 1235 at 3 (Amended Final Judgment); 1234 at 9 (Amended Order Granting Final Approval).  The Court thereby retained continuing ancillary jurisdiction concerning the settlement and Order.  *See Atlas Biologicals, Inc. v. Kutrube*s, No. 18-CV-00969-

8

CMA-MEH, 2019 WL 1200809, at *5 (D. Colo. Mar. 14, 2019) (Arguello, J.).  The Court's power to administer, interpret, construe, effectuate, enforce, and oversee the consummation of the settlement and Order derive from its inherent authority to address "matters necessary to render complete justice."  *Id.*, *6 (quoting *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982)).

This Motion requests Special Efforts in order to "administer," "effectuate," "interpret," "construe," and "enforce" the Amended Final Judgment Order by entering an ancillary order expressly authorizing Special Efforts to relieve the effects of COVID-19.  The Court may therefore order the relief requested under the settlement and pursuant to the Court's inherent authority.

### B. Alternatively, Special Efforts may be ordered under Rule 60(b)(6).

If the Court declines to view the Special Efforts as within its inherent authority, then the Special Efforts should be considered a modification of the *cy pres* provisions in that Judgment because, in every reasonably possible scenario, there will be a residual of more than $65,000, meaning that the Special Efforts will only reduce the amount available for the *cy pres* distribution.  JND Decl. ¶ 26-27.  Rule 60(b)(6) permits this modification on:

> "motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."

Fed. R. Civ. Proc. 60(b)(6).

"Generally speaking, the grant of relief under Rule 60(b) lies within the Court's discretion, but is 'extraordinary and may only be granted in exceptional circumstances.'" *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-CV-1468-WJM-BNB, 2018 WL

9

803663, at *3 (D. Colo. Feb. 9, 2018) (Martinez, J.) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000)).

Rule 60(b)(6)'s extraordinary relief is justified. The problems that COVID-19 has created for international check processing are exceptional. The situation was unforeseeable, and blameless class members should not be deprived of their significant recoveries.[5]

## II. Special Efforts Are Appropriate

Class Counsel have framed the Proposal based on the following facts and principles:

<u>Fast resolution</u>. The proposed Special Efforts expressly permit wire transfers on a rolling basis. The proposed Special Efforts also expressly permit wire transfers for *au pairs* who have contacted the Class Administrator or Class Counsel about wire transfer payments. This will enable the Class Administrator to quickly resolve payment certain issues that the Administrator has been tracking and working on. *See* JND Decl. ¶ 23, 30. As for the Potentially Affected Class Members, the email notice and secure web form will make providing wire transfer fast and easy. *See also* JND Decl. ¶ 24 ("JND

---

[5] As a further alternative, Rule 23(h) authorizes the Court to award nontaxable costs after providing the class notice in a "reasonable manner," giving class members an opportunity to object, and making fact findings under Rule 52(b). *See In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 JAP, 2008 WL 9447623, at *34 (D.N.J. Dec. 9, 2008) ("Unlike Rule 23(c)(2), which requires 'best notice practicable under the circumstances,' the far more relaxed standard of Rule 23(h)(1) requires notice in a 'reasonable manner'"). Rule 23(h) orders may be made at a time the Court orders, including after final settlement approval. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 445 (3d Cir. 2016), *as amended (*May 2, 2016).
  However, proceeding under Rule 23(h) is not necessary and will only delay class member payments; the Court's inherent authority and Rule 60(b)(6) are more efficient. In any event, no class member could be harmed or have standing for any objection in response to a Rule 23(h) notice period.

has an existing relationship with Signature Bank, the bank where the settlement account is established, and as evidenced by the wire transfers that have already been conducted, JND is already in a position to coordinate payments of this type. Such payments are also conducted directly via the bank where the funds are held, meaning no intermediary entity involved.").

<u>No reduction to the principal, only the *cy pres* distribution.</u>  As noted above, it will be all but impossible to reach a threshold where less than $65,000 in residual funds remain. *See* JND Declaration at ¶¶ 26-27. The QSF's current balance and the high dollar amount of the individual checks ensure that even the highest check-cashing rates that are reasonably achievable will more than $65,000 in residue. *See id.*

### III.     The Class Administrator Should Be Compensated for Any Special Efforts

The Class Administrator has already done significantly more work and incurred more out-of-pocket expenses than was expected when the flat-fee arrangement was first made. JND Decl. at ¶¶ 28-29. Based on Class Counsel's experience, the Claims Administrator in this case has done a first-rate job. The Class Administrator's request for additional funding in order to take on the Special Efforts is modest in light of the Class Administrator's actual experience with the complexities of administering the QSF in this case, and it will not affect the class's recovery. Finally, the requested Special Efforts would involve authorizing the disbursement of funds for the Class Administrator's actual time and expense incurred, with a cap of $65,000 to ensure that the Special Efforts are completed efficiently.

**CONCLUSION**

For the foregoing reasons, Class Counsel respectfully requests that the Court order implementation of the Proposal on the terms stated herein.

Respectfully submitted this 11th day of February, 2021,

/s/ Sean P. Rodriguez
BOIES SCHILLER FLEXNER LLP

Matthew L. Schwartz
Peter M. Skinner
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com
pskinner@bsfllp.com

Sean P. Rodriguez
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6820
Fax: (415) 293-6899
srodriguez@bsfllp.com

TOWARDS JUSTICE
Alexander Hood
1410 High Street, Suite 300
Denver, Colorado 80218
Tel: (720) 239-2606
Fax: (303) 957-2289
alex@towardsjustice.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record identified on the Court's CM/ECF system for this matter.

I further certify that I have also e-mailed a copy of the foregoing to Mr. Eugene Schwartz at the address provided in ECF No. 1236.

*/s/ Sean P. Rodriguez*
Sean P. Rodriguez
BOIES SCHILLER FLEXNER LLP
44 Montgomery St, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6820
Fax: (415) 293-6899
srodriguez@bsfllp.com
*Attorneys for Plaintiffs*
