**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
        and those similarly situated,

        Plaintiffs,
v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

        Defendants.

---

**MOTION FOR INTERPRETION OF CLASS ACTION SETTLEMENT**

---

## Certificate of Conferral Pursuant to D.C.Colo.LCivR 7.1(A)

Class Counsel conferred with all Defendants that have appeared regarding this Motion on November 3, 2022. One Defendant, AuPairCare, Inc., responded that it may have a position. However, at the time of filing, no Defendant expressed a position— consent, opposition, or otherwise—regarding this Motion.

## INTRODUCTION

Class Members Sandra Peters and Tatiana Cuenca-Vidarte, (together, the "Maryland Au Pairs") seek this Court's interpretation of the scope of the *Beltran* Settlement—over whose "administration, interpretation, construction, effectuation, enforcement, and consummation" the Court has retained "continuing and exclusive jurisdiction"—so that these workers may proceed with their case in the United States District Court for the District of Maryland against the family that subjected them to labor trafficking, wage theft, and other labor abuses. *See* Doc. 1229 ¶ 11 (final approval order).

The Maryland Au Pairs sued Michele C. Samuel and Adam Ishaeik (together, the "Host Family") in the District of Maryland on June 30, 2020, asserting claims under the Trafficking Victims Protection Reauthorization Act (TVPRA), Fair Labor Standards Act (FLSA) and Maryland state law. More than two years later, District Judge George J. Hazel dismissed the Maryland Au Pairs' case, ruling *sua sponte* that his court lacked subject matter jurisdiction over their claims, reasoning that only *this* Court can decide whether the claims were released by the *Beltran* Settlement. *See* Ex. 1, Maryland Opinion at 25-26.

Following Judge Hazel's order, the Maryland Au Pairs ask this Court to decide whether the *Beltran* release covers the claims against the Host Family.  It does not.  To start, a Rule 23 class settlement can only reach claims sharing the same factual predicate.

The Maryland Au Pairs' TVPRA claims arise from the Host Family's repeated abuses of Maryland Au Pairs, a set of facts completely unlike those in *Beltran*. Indeed, the *Beltran* release expressly excludes claims and potential claims against host families that—like the Maryland Au Pairs' TVPRA claims—are "unrelated to the Claims asserted in the [*Beltran*] Litigation[.]" *See* Doc. 1187-1 ¶ 4, Settlement (also attached as Ex. 2). Second, as required under the FLSA, and explained in the *Beltran* collective action notices, the FLSA collective-action settlements in *Beltran* cover only former *au pairs* who affirmatively opted-in as party plaintiffs. The FLSA notices in *Beltran* explicitly state that any *au pair*— like the Maryland Au Pairs—who did not affirmatively join the FLSA collective action would maintain the right to bring their own, separate FLSA actions. And third, to the extent that *Beltran* released any Maryland-law claims, it did so only for subclasses of Maryland *au pairs* sponsored by agencies different than those that sponsored the Maryland Au Pairs' visas. The Maryland Au Pairs therefore were not part of the Maryland subclasses and are not bound by the settlement of the subclasses' state-law claims.

The Maryland Au Pairs ask this Court to rule that the *Beltran* Settlement does not bar their claims because they are plainly outside its scope. In the alternative, if this Court declines to decide whether *Beltran* bars the Maryland Au Pair's claims, they request an Order holding that this Court does not have exclusive jurisdiction to decide this issue.

## BACKGROUND

### A.  Procedural History

On June 30, 2020, the Maryland Au Pair Plaintiffs filed suit in the United States District Court for the District of Maryland against AuPair Inc., International Training and Exchange, Inc. d/b/a Intrax d/b/a AuPair Care, John Wilhelm and Takeshi Yokota (collectively "APC Defendants"), and the Host Family, alleging violations of the TVPRA,

the FLSA, Maryland Wage and Hour Law, the Maryland Wage Payment and Collection Law, and breach of contract under Maryland law.[1] On January 3, 2022, more than a year and half after the Maryland Au Pairs filed their case, but before any discovery, the Host Family Defendants moved to dismiss, asserting in relevant part that the Settlement in *Beltran* released each of the five Counts against them in the Amended Complaint.[2]  The Maryland Au Pairs opposed the Host Family Defendants' Motion to Dismiss, arguing that *Beltran* Settlement did not bar their claims. *See* Maryland ECF Doc. 50-1.

On September 30, 2022, Judge George J. Hazel of the District of Maryland granted the Host Family's Motion to Dismiss. Ex. 1, Maryland Opinion; Ex. 3, Order. Judge Hazel, however, did not reach the question of whether the *Beltran* Settlement barred the Maryland Au Pair Plaintiffs' claims. Instead, Judge Hazel ruled that *this* Court has exclusive jurisdiction over the interpretation of the Settlement, and that the District of Maryland therefore lacked subject matter jurisdiction to decide whether *Beltran* released the Maryland Au Pairs' claims. Judge Hazel pointed to the final Settlement Approval Order in *Beltran*, in which this Court stated that it retained "continuing and exclusive jurisdiction" over "all matters relating [to] this matter, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this Order." *See* Ex. 1, Maryland Opinion at 25 (citing *Beltran* Doc. 1229 ¶ 11). Reasoning that it would be inconsistent for this Court to retain jurisdiction for the purpose of

---

[1] On November 30, 2021, Judge Hazel granted the APC Defendants Motion to Compel Arbitration of the Maryland Au Pair Plaintiffs' claims. The Maryland Au Pairs' claims against the APC Defendants are no longer at issue.

[2] The Host Family's Motion to Dismiss also argued that each of Maryland Au Pair Plaintiffs' five counts failed to state a claim and that the claims of Plaintiff Sandra Peters should be dismissed on Statute of Limitation grounds.

administration, interpretation, construction, but allow another court to construe what it meant in that judgment, Judge Hazel granted the Host Family's motion to dismiss—on grounds not asserted by the Host Family—"without prejudice to the right of Plaintiffs to pursue their claims before the United States District Court for the District of Colorado." *Id.* at 27.

On October 26, 2022, the Maryland Au Pairs filed a Notice of Appeal of the Order dismissing their case. The Fourth Circuit docketed the appeal and issued a briefing order; Appellants' opening brief is due December 6, 2022. *See* USCA4 Appeal: 22-2113, Doc. 3. If this Court were to entertain this Motion, the Maryland Au Pairs still believe Judge Hazel erred in dismissing rather than staying the Maryland action pending a decision by this Court. After all, if the release does not bar the claims, the claims should proceed in Maryland before Judge Hazel, not here.

## B. <u>Statement of Facts</u>

The Maryland Au Pairs are former migrant workers who left their homes and families abroad to come to the United States to work in the Host Family's home. Ex. 4, Plaintiffs' First Amended Complaint at ¶ 1. Once the Maryland Au Pairs arrived, the Host Family used coercion and threats to subject them to wage theft and forced labor. *Id.*

The Maryland Au Pairs worked in the Host Family's home from June 16, 2016 to March 11, 2017 and from November 7, 2017 to September 28, 2018, respectively. *Id.* at ¶¶ 94 and 95. Under the J-1 visa program rules and contractually agreed upon terms and conditions of their employment, the Maryland Au Pairs were to provide childcare and child-related tasks for the Host Family's children. *Id.* at ¶¶ 34, 46, 79, and 144. These tasks were to include and be limited to general supervision, meal preparation, and light housekeeping as it related to the children. *Id.* at ¶¶ 46, 80, and 144. The Host Family

routinely flouted their statutory and contractual obligations as employers, requiring the Maryland Au Pairs to do heavy housework and to work far in excess of the maximum hours set by law. *Id.* at ¶¶ 49 and 80-81.

The Host Family paid the Maryland Au Pairs only $195.75 a week, resulting in wages well below the federal minimum of $7.25 per hour. Plaintiff Cuenca-Vidarte regularly worked over 45 hours a week, resulting in an hourly rate of at $4.35, *Id.* at ¶ 69, while Plaintiff Peters worked approximately 60 hours per week, for an hourly rate of about $3.26 per hour. *Id.* at ¶¶ 81 and 95. Neither received overtime pay. *Id.* at ¶¶ 69 and 133.

The Host Family regularly belittled and berated Plaintiffs, calling them "stupid," "dirty," "useless," and "slow." *Id.* at ¶¶ 3, 58 and 82. The Host Family threatened them with deportation and reputational harm (including adverse employment references and false accusations of crimes); subjected them to constant surveillance (including monitoring their communications); levied intolerable working conditions (including verbal abuse, malnutrition, excessive hours, and heavy housework); and restricted their contact with friends and families. *See id.* at ¶¶ 44-93.

The Host Family threatened the Maryland Au Pairs with criminal charges as well as actual and *de facto* deportation if they did not follow the Host Family's commands. *Id.* at ¶¶ 62 and 90. The Host Family even warned Plaintiff Cuenca-Vidarte that a former *au pair* was deported to her home country on the Host Family's recommendation. *Id.* at ¶ 63.

To prevent the Maryland Au Pairs from rematching within the program and working elsewhere, the Host Family repeatedly told them that no other family would accept them in their home and that, even if that were to happen, the Host Family would provide a negative recommendation to impede a rematch. *Id.* at ¶¶ 65 and 91. The Host Family

ultimately acted on this threat by blocking Plaintiff Cuenca-Vidarte's internet access and giving her negative references during the rematching period. *Id.* at ¶ 66. As to Plaintiff Peters, the Host Family restricted and later terminated her access to the cellphone which was her only means to communicate with her family. *Id.* at ¶ 89. Finally, on what was to be Plaintiff Peters last day of employment, the Host Family called her sponsor agency to falsely accuse her of hitting Defendant Samuel, barred Plaintiff Peters from the Host Family's home, and refused to return her personal belongings, including her visa, her passport, and clothes, until her sponsor agency intervened on her behalf. *Id.* at ¶ 93.

## THIS COURT'S JURISDICTION

This Court has jurisdiction to decide whether the *Beltran* release reaches the claims by the Maryland Au Pairs against the Host Family. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (federal courts must have subject matter jurisdiction and personal jurisdiction to bind parties to a dispute). The Court maintained that it has subject matter jurisdiction to interpret the Settlement in the final approval order. *See* Doc. 1229 ¶ 11. And the issue here—whether the Settlement's release language extends to the Maryland Au Pairs claims against the Host Family—requires such an interpretation.

While more complicated, this Court also has personal jurisdiction over the Host Family to decide the issue. Although the Maryland Au Pairs are class members and parties to this action, the Host Family is not. To be sure, many courts have found that interpreting a class action settlement should be left to the settlement court. *See* Ex. 1, Maryland Opinion at 25-26 (citing and quoting *Magnolia v. Connecticut Gen. Life Ins. Co.*, 157 F. Supp. 2d 583, 587 (D. Md. 2001); *Hankins v. CarMax, Inc.*, No. 11-cv-03685-RDB, 2012 WL 113824, at *5 (D. Md. Jan. 13, 2012); *Flanagan v. Arnaiz*, 143 F.3d 540, 545

(9th Cir. 1998)). But in every instance found by Class Counsel, only parties to a class action settlement are referred back to the settlement court for its interpretation. *See, e.g., id.*

Of course, the Host Family could consent to personal jurisdiction in this Court. *See United States v. Vreeken*, 803 F.2d 1085, 1089 (10th Cir. 1986). Counsel conferred to determine whether the Host Family would consent. *See* Ex.5, Email to Host Family. The Host Family was unequivocal: "[t]he answer is no." Ex.6, Email from Host Family.

The only other path to personal jurisdiction is the Settlement itself, which includes what amounts to a forum selection clause. The Settlement requires that enforcement of the Settlement shall occur **in this Court**. *See* Doc. 1187-1 ¶ 49. Thus, the Host Family's attempt to apply the *Beltran* release—contained in the Settlement—also invokes the Settlement's requirement that this Court hear the issue of whether the release applies. *See National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) ("A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court."). And a forum selection clause is a contractual consent to personal jurisdiction in the agreed forum. *See Leasing, Inc. v. Rsrv. Ctr., Inc.*, 2008 WL 5411478, at *1 (D. Colo. Dec. 29, 2008) ("When a defendant—by means of a valid forum selection clause—consents to personal jurisdiction in a certain forum, there is no need to inquire into the defendant's presence or actions within the forum state").

Left is the question of whether the Settlement's forum selection clause can bind the Host Family, a non-signatory third-party beneficiary to the Settlement. It can. "Non-signatories to a contract are subject to its valid forum selection clause if they, or the claims they bring, are closely related to the contractual relationship." *PFC Payment Sols., LLC*

*v. Element Payment Servs., Inc.*, No. 12-CV-01472-CMA-MJW, 2012 WL 3264305, at *3 (D. Colo. Aug. 10, 2012) (quotations and citations omitted); *See Tin Giant, LLC v. Atari VCS, LLC.*, No. 1:20-CV-00911-SKC, 2022 WL 911130, at *3 (D. Colo. Mar. 29, 2022) (same). A third-party beneficiary is always "closely related" under this test. *Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F.Supp.3d 1157, 1211 (D.N.M. 2015) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 203 (3d Cir. 1983)); *see also Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 n. 7 (7th Cir.1993) ("While it may be true that third-party beneficiaries of a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, a third party beneficiary status is not required.") (citation omitted); *Leviton Manufacturing Co. v. Reeve*, 942 F.Supp.2d 244, 258 (E.D.N.Y.2013) ("The 'closely related' test is necessarily satisfied where the defendant is a third-party beneficiary of the agreement, but that situation is not required.").

The Host Family is unquestionably a third-party beneficiary to the Settlement because the parties to the Settlement unequivocally intended for host families to benefit from the limited release of au pair claims against host families. *See* Doc. 1187-1 ¶ 4; *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710, 94 N.E.3d 456, 459 (2018).[3] The Host Family's claims are therefore "closely related" to the contractual relationship formed by the Settlement and the Host Family can therefore be bound by the Settlement's forum selection clause, providing the basis for personal jurisdiction.

Finally, the Maryland Au Pairs also note that the Host Family must receive notice of this Motion for due process to be met. The Maryland Au Pairs therefore intend to personally serve the Host Family with this Motion and will notify the Court when the Host

---

[3] The Settlement contains a New York choice of law clause. *See* Doc. 1187-1 ¶ 50.

Family has been personally served. If the Host Family refuses to respond, a hearing may need to be set.

## ARGUMENT

### A.  The *Beltran* Settlement does not bar the Maryland Au Pairs' claims.

Under longstanding Rule 23 precedent, the antitrust and RICO class settlements in *Beltran* could not have resolved the Maryland Au Pairs' labor trafficking and breach-of-contract claims, which are based on facts entirely different from those in *Beltran*. The *Beltran* release similarly could not cover Maryland Au Pairs' Maryland state wage claims since the only Maryland state subclasses in the case exclusively covered *au pair* sponsor agencies not at issue here. And as a matter of law, the FLSA collective-action settlement in *Beltran* could not cover the Maryland Au Pairs' claims since they indisputably did not opt in as "party plaintiffs" to the FLSA collective, and the *Beltran* class action settlement notice did not clearly advise of any preclusive effects on FLSA claims. All of the Maryland Au Pairs' claims at issue here therefore survive any application of the *Beltran* Settlement.

### 1. The TVPRA and Maryland State claims fall outside the scope of the *Beltran* class settlement because they are based on an entirely different set of facts.

Class action lawsuits and settlements are not all inclusive. Class action plaintiffs may only release claims that were or could have been pled in exchange for settlement relief. The "identical factual predicate" doctrine limits a class representative's authority to release claims.  *See Elna Sefcovic, LLC v. TEP Rocky Mt., LLC*, 807 Fed. App'x 752, 765 (10th Cir. 2020), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 208 L. Ed. 2d 425, 141 S. Ct. 851 (2020); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106–07 (2d Cir. 2005); *In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 860 F.3d 218, 225 (4th Cir. 2017) ("Moreover, it is clear that a judgment approving a settlement agreement

may involve the release of not only the claims presented in the class action, but also 'claims arising out of the 'identical factual predicate.'") (quoting *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015)). This doctrine allows plaintiffs to release only claims that share the "same integral facts as settled claims" and were adequately represented by an alignment of interests prior to settlement. *Wal-Mart*, 396 F.3d at 106–07.

"Claims arising from a shared set of facts will not be precluded where class plaintiffs have not adequately represented the interests of class members." *Id.* at 109. Further, named plaintiffs in a class action "cannot represent a class of whom they are not a part." *Bailey v. Patterson,* 369 U.S. 31, 32–33 (1962). A settlement agreement may preclude a related claim only if it is "based on the identical factual predicate as that underlying the claims in the settled class action." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (citing *TBK Partners, Ltd. V. W. Union Corp.,* 675 F.2d 456, 460 (2d Cir.1982)); *see also Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008); Newberg on Class Actions § 18:19 (5th ed.). A class action settlement release that purports to extend beyond the identical factual predicate is unenforceable. *Williams*, 517 F.3d at 1134. The identical factual predicate test addresses "the danger that a class representative not sharing common interests with other class members [will] 'endeavor( ) to obtain a better settlement by sacrificing the claims of others at no cost to themselves by throwing the others' claims 'to the winds.'" *TBK Partners,* 675 F.2d at 462.

Under the identical factual predicate rule, the *Beltran* Settlement could not have released the Maryland Au Pairs' TVPRA and Maryland-law claims. *Beltran* alleged no facts related to labor trafficking or breach of contract by *au pair* host families, nor did it assert legal claims based thereon. The *Beltran* plaintiffs alleged that *sponsor*

*organizations* colluded to illegally fix *au pair* wages. *See* Doc. 395. By contrast, the Maryland Au Pairs' human trafficking claims arise specifically from the Host Family's coercive and abusive treatment—facts the *Beltran* plaintiffs did not allege and claims they could not have stated. Further, the Maryland Au Pairs' trafficking claims fall under the *Beltran* settlement "Savings Clause," explicitly stating that the release "shall not extend to" claims against a host family that are "unrelated to the Claims asserted in the [*Beltran*] Litigation" or "to host family obligations under the federal Au Pair Program requirements." *See* Doc. 1187-1 ¶ 4, Settlement.

The *Beltran* Settlement has no bearing on Maryland Au Pairs' Maryland state claims. This Court expressly refused to certify a nationwide State-Claim Class including Maryland claims, as the plaintiffs "lack standing to bring claims under the state laws of the forty states and the District of Columbia where named Plaintiffs did not work or live." *Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 U.S. Dist. LEXIS 23940, at *21 (D. Colo. Feb. 2, 2018). Because the *Beltran* court rejected certification of a general Maryland state-claim class, the *Beltran* release did not include Maryland state claims as they were not adequately represented prior to settlement. *See* Doc. 1187-1 ¶ 2, Settlement (citing order certifying FLSA collectives, Doc. 596, and order certifying Rule 23 classes, Doc. 828). To the extent *Beltran* included Maryland state claims, the subclasses to which those claims applied were limited to Maryland *au pairs* sponsored by the agencies Cultural Care and Go Au Pair, neither of which sponsored the Maryland Au Pairs. *See id.*

Any argument by the Host Family that the presence of nationwide RICO and antitrust classes in *Beltran* satisfies the identical factual predicate rule is misplaced. The

Ninth Circuit rejected a similar attempt in *Hesse v. Sprint Corp.*, 598 F.3d 581, 590-92 (9th Cir. 2010). There, the plaintiffs brought class consumer protection claims based on a policy by Sprint, their cellphone provider, of passing on Washington state taxes to consumers. *Id.* at 584. Defendants argued that these Washington-specific claims were released by a previous class action settled on behalf of a nationwide class that claimed Sprint had passed on federal regulatory charges. *See id.* at 585-86. The court found that the claims in the previous class action based on a nationwide set of facts were not based on the identical factual predicate as the Washington-specific claims. *Id.* at 590-92

The same is true here. In *Beltran*, there were no Maryland claims asserted against the *au pair* sponsor agencies that employed the Maryland Au Pairs and there were no certified Maryland state subclasses in *Beltran* that covered them. Thus, the Maryland Au Pairs' state-law claims could not have been released.

**2. The claims under the FLSA survive any application of the *Beltran* settlement because the Maryland Au Pairs did not opt-in as party plaintiffs to the *Beltran* FLSA collective action.**

Under the FLSA, employees whose employer fails to pay them required minimum or overtime wages may file a "collective action" seeking unpaid wages and liquidated damages on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Unlike class actions under Rule 23, '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" *Id.*; *see Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (quoting 29 U.S.C. § 216(b)).

Thus, those who do not file consent to join a collective action can neither benefit from nor be bound by any judgment therein. *See Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1266 (10th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v.*

*Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989); *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1249 (11th Cir. 2003); *Top of Form Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008). Rather, employees who do not affirmatively opt-in to the collective action are not bound by the resulting decision and may subsequently pursue their own private action. *Id.*; *see, e.g.*, *EEOC v. Pan American World Airways, Inc.*, 897 F.2d 1499, 1508, n. 11 (9th Cir. 1990) ("The commencement of a private opt-in type [collective action under Section 216(b)] … does not extinguish the right of another aggrieved employee to bring a subsequent private action unless that employee has affirmatively opted into the litigation.").

Under these well-established authorities, the Maryland Au Pairs were not parties to nor bound by the *Beltran* collective-action settlement. It is undisputed that the Maryland Au Pairs did not opt-in to the collective action in *Beltran*. As noted above, the *Beltran* FLSA opt-in notices clearly state that if an *au pair* chose not to join the cases as a party plaintiff, the *au pair*'s "right[ ] to participate in any other action against the company will be preserved." *See* Doc. 325-2.[4] Further, the *Beltran* Settlement notice clearly distinguishes FLSA collective action members from the Rule 23 class action class, specifically indicating that class members who did not opt-in are not part of the FLSA collective action. Doc. 1187-1 at 53. Accordingly, the Maryland Au Pairs' FLSA claims may be brought in a subsequent private action.

Due process also bars claim preclusion in this matter. *See In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.,* 357 F.3d 800, 804 (8th Cir. 2004) ("[I]n class actions more than

---

[4] Notably, the FLSA notices of collective action refers only to "Defendants," which in each notice were sponsor agencies. The notices were silent as to potential claims against host families.

the usual requirements of *res judicata*, as applied in the traditional lawsuit between or among individuals, must be met. Among other things, a class member cannot be bound unless she has received due process."); *Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H-KS, 2017 WL 9439107, at *7 (E.D.N.C. Feb. 14, 2017) (class action notice not clearly stating preclusive effects on FLSA claims cannot preclude FLSA claims). As the Maryland Au Pairs did not affirmatively opt-in to the *Beltran* collective action, and the *Beltran* class action notice did not clearly advise of any preclusive effects on FLSA claims, they cannot now be denied their rights under FLSA to bring a subsequent private action.

The Settlement and notice make clear that the Rule 23 class action and the FLSA collective action clams involved two separate, albeit potentially overlapping, groups. It also set out the participation requirements for either group. However, the *Beltran* Settlement and notice were silent on the status of the FLSA claims for those who did not opt-in to the collective action. The Host Family argues that FLSA claims were subsumed by the class action; however, this would be in violation of the due process requirement of providing clear notice of any preclusive effects of a class action settlement release on FLSA claims. The Maryland Au Pairs' claims are not covered by the *Beltran* Settlement because they did not opt-in to the FLSA case, and the *Beltran* Settlement Notice failed to clearly state any preclusive effects of their failing to do so.

## CONCLUSION

The Maryland Au Pairs ask this Court to rule that the *Beltran* Settlement does not bar their claims because they are plainly outside its scope.  In the alternative, if this Court declines to decide whether the *Beltran* bars the Maryland Au Pairs' claims, they request an Order holding that this Court does not have exclusive jurisdiction to decide this issue.

Respectfully Submitted November 18, 2022

*s/Alexander Hood*
Alexander Hood
TOWARDS JUSTICE
PO Box 371680, PMB 44465
Denver, CO 80237-5680
Tel: (720) 239-2606
alex@towardsjustice.org

Class Counsel

*s/Christopher R. Ryon*
Christopher R. Ryon
KAHN SMITH & COLLINS, P.A.
201 North Charles Street, 10th Floor
Baltimore, Maryland 21201
(410) 244-1010 (telephone)
(410) 244-8001 (fax)
ryon@kahnsmith.com

Benjamin R. Botts*
CENTRO DE LOS DERECHOS DEL MIGRANTE, INC.
711 W 40th Street, Suite 412
Baltimore, MD 21211
Tel. (855) 234-9699
ben@cdmigrante.org

*Application for admission to D. Colo. forthcoming

Counsel to Sandra Peters and Tatiana Cuenca-Vidarte

**Certificate of Service**

I hereby certify that on November 18, 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Alexander Hood*
Alexander Hood