# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
      and those similarly situated,

      Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. DBA CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GO AU PAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GO AU PAIR,
GO AU PAIR OPERATIONS, LLC, DBA GO AU PAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

      Defendants.

_____

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement, dated as of 3 January 2019 (the "Agreement," or "Settlement"), is made and entered into by and among (i) the Plaintiffs,[1] on behalf of themselves and each Settlement Class Member, by and through their undersigned counsel, and (ii) the Defendants, by and through their undersigned representatives; and is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The Settlement is intended by the Parties to fully, finally, and forever compromise, settle, release, resolve, discharge, and dismiss with prejudice this Litigation (*i.e.*, the above-captioned action, 1:14-cv-03074-CMA, pending in the U.S. District Court for the District of Colorado), and all Released Claims as against all Released Parties, subject to the terms and conditions stated in this Agreement and Final approval of the Court.

**WHEREAS:**

A.      On November 13, 2014, Plaintiff Johana Paola Beltran ("Beltran") commenced this action (the "Litigation") by filing a putative class action complaint against Pamela H. Noonan; Thomas J. Noonan; InterExchange, Inc. ("InterExchange"); USAuPair, Inc. ("USAuPair"); GreatAuPair, LLC ("GreatAuPair"); Expert Group International Inc., d/b/a Expert AuPair ("Expert AuPair"); EurAuPair Intercultural Child Care Programs ("EurAuPair"); Cultural Homestay International ("Cultural Homestay"); Cultural Care, Inc., d/b/a Cultural Care Au Pair ("Cultural Care"); AuPairCare Inc. ("AuPairCare"); Au Pair International, Inc. ("API"); APF Global Exchange, NFP, d/b/a

---

[1] All terms with initial capitalization used in this Agreement, and in any exhibits attached hereto and made a part hereof, shall have the meanings ascribed to them in Paragraph 1 below or as otherwise defined herein, except that any term with initial capitalization only defined in an exhibit shall have the meaning provided in that exhibit.

Au Pair Foundation ("APF"); American Institute for Foreign Study, Inc., d/b/a Au Pair in America ("AIFS"); Go Au Pair Operations, LLC; American Cultural Exchange, LLC, d/b/a Go Au Pair (together with Go Au Pair Operations, LLC, "Go Au Pair"); Agent Au Pair, Inc. ("Agent Au Pair"); A.P.EX. American Professional Exchange, LLC d/b/a ProAuPair ("ProAuPair"); and 20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange ("TIAPE," and, together with InterExchange, USAuPair, GreatAuPair, Expert Au Pair, EurAuPair, Cultural Homestay, Cultural Care, AuPairCare, API, APF, AIFS, Go Au Pair, Agent Au Pair, and ProAuPair, the "Defendants") in the United States District Court for the District of Colorado (the "Court"). The complaint asserted, *inter alia*, violation of the Sherman Act, 15 U.S.C. § 1, *et seq.* (the "Sherman Act"); failure to pay federal minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"); failure to pay wages under the laws of several states; breach of fiduciary duty; violations of the New York Wage Act; and failure to pay wages under the laws of Colorado.

B.   On March 13, 2015, Beltran and additional Plaintiffs Lusapho Hlatshaneni ("Hlatshaneni"), Beaudette Deetlefs ("Deetlefs"), Dayanna Paola Cardenas Caicedo ("Caicedo"), and Alexandra Ivette Gonzalez ("Gonzalez") filed a first amended class complaint, asserting class claims under the Sherman Act against the Defendants and under the FLSA against InterExchange, Cultural Care, AIFS, and Go Au Pair; asserting an individual claim for unpaid wages under the laws of Colorado by Beltran against Pamela H. Noonan and Thomas J. Noonan; and adding putative class claims for: civil RICO, 18 U.S.C. § 1964(c) ("RICO") against InterExchange, Cultural Care, and AIFS; and breach of fiduciary duty, negligent misrepresentation, constructive fraud or

fraudulent concealment, violations of consumer protection statutes, breach of contract and quasi-contract, and unpaid wages under the laws of several states and the District of Columbia against InterExchange, Cultural Care, AIFS, and Go Au Pair; and violations of the New York Wage Act against InterExchange, Cultural Care, AIFS, and Go Au Pair.

C.     The First Amended Complaint and subsequent amended complaints filed in the Litigation allege, among other things, that the Defendants colluded to pay au pairs residing in the United States pursuant to a J-1 visa fixed wages below federal and state minimum wages and did in fact cause au pairs to be paid wages below federal and state minimum wages.

D.     The First Amended Complaint added Associates in Cultural Exchange, d/b/a GoAuPair as an additional defendant, which was then voluntarily dismissed from the Litigation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on March 23, 2015.

E.     Defendants Pamela H. Noonan and Thomas J. Noonan were voluntarily dismissed from the Litigation on April 3, 2015 pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

F.     The Defendants moved to dismiss the remaining claims on April 17, 2015. The motions to dismiss were fully briefed as of August 10, 2015.

G.     On February 22, 2016, Magistrate Judge Kathleen M. Tafoya issued a recommendation to grant in part and deny in part the Defendants' motions to dismiss. The decision recommended dismissal of Plaintiffs' claims for breach of contract and quasi-contract and for unpaid wages under the Utah Minimum Wage Act, and otherwise recommended denial of Defendants' motions to dismiss.  Defendants lodged objections to the recommendation on March 14, 2016, to which Plaintiffs responded on March 28, 2016.

H.     On March 31, 2016, the Court issued an order adopting and affirming in part the recommendation.  The Court dismissed Plaintiffs' claims for breach of contract and quasi-contract and for unpaid wages under the Utah Minimum Wage Act, and otherwise denied Defendants' motions to dismiss.

I.     On July 25, 2016, Plaintiffs Beltran, Deetlefs, Hlatshaneni, Gonzalez, and Caicedo moved for conditional collective action certification with respect to FLSA claims against InterExchange, Cultural Care, AIFS, and Go Au Pair.  On August 15, 2016, Plaintiffs filed a motion for conditional collective action certification with respect to FLSA claims against AuPairCare and Expert Au Pair on behalf of Laura Mejia Jimenez ("Jimenez"), Juliane Harning ("Harning"), and Nicole Mapledoram ("Mapledoram").

J.     Jimenez, Harning, and Mapledoram were identified as putative additional plaintiffs in Plaintiffs' motion to file a second amended complaint filed on August 15, 2016.  That motion was granted on October 17, 2016.

K.     On October 17, 2016, Plaintiffs Beltran, Hlatshaneni, Deetlefs, Caicedo, Gonzalez, Rascon, Jimenez, Harning, and Mapledoram filed a second amended class complaint, asserting putative class claims: under the Sherman Act against the Defendants; under RICO against AIFS, AuPairCare, Cultural Care, and InterExchange (together, the "RICO Defendants"); for breach of fiduciary duty, negligent misrepresentation, constructive fraud or fraudulent concealment, violations of consumer protection statutes, and unpaid wages under the laws of the several states and the District of Columbia against AIFS, AuPairCare, Cultural Care, Expert AuPair, Go Au Pair, and InterExchange (together, the "State Claim Defendants"); under the FLSA against AIFS, AuPairCare, Cultural Care, Expert AuPair, Go Au Pair, and

InterExchange (together, the "FLSA Defendants"); for unpaid wages under the New York Wage Act against AIFS, Cultural Care, Go Au Pair, and InterExchange (together, the "New York Wage Defendants"); and for unpaid wages under the New Jersey Wage Act against AuPairCare.

L.       On November 14, 2016, Plaintiff Caicedo was voluntarily dismissed from the Litigation without prejudice.

M.       On March 31, 2017, the Court granted Plaintiffs' motions for conditional collective action certification.  The order was subsequently amended by the Court on April 28, 2017 and June 9, 2017.

N.       On June 3, 2017, Plaintiffs filed a motion to certify classes and to appoint class counsel pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3); and filed a motion for leave to file a Third Amended Complaint.

O.       On February 2, 2018, the Court granted in part and denied in part Plaintiffs' motion to appoint class counsel and for certification of classes pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

P.       On February 16, 2018, the Parties filed motions for summary judgment.

Q.       On April 9, 2018, the Court granted in part and denied in part Plaintiffs' motion for leave to file a Third Amended Complaint.

R.       On April 11, 2018, Plaintiffs Beltran, Hlatshaneni, Deetlefs, Caicedo, Gonzalez, Rascon, Jimenez, Harning, and Mapledoram filed a third amended class complaint, asserting the same set of claims as the second amended complaint and adding Cathy Caramelo, Linda Elizabeth, and Camila Gabriela Perez Reyes as additional named Plaintiffs.

S.      On April 19, 2018, the time period to opt into the FLSA classes and subclasses ended.  On April 20, 2018, Plaintiffs filed a notice indicating that 4,283 individuals delivered consent forms to join the FLSA classes and subclasses.  Plaintiffs filed a subsequent notice on July 20, 2018, indicating that one individual had elected to withdraw her consent to join.

T.      On May 9, 2018, the FLSA Defendants each moved to decertify their respective conditionally certified FLSA classes and subclasses.

U.      On June 19, 2018, the Court denied the parties' cross motions for summary judgment.

V.      On July 17, 2018, Plaintiffs moved for reconsideration of the Court's order denying Plaintiffs' motion for partial summary judgment.  The Court granted Plaintiffs' motion on August 6, 2018, dismissing Defendants' defenses based on federal preemption.

W.      On August 8, 2018, certain Defendants moved for reconsideration of the Court's August 6, 2018 order dismissing their preemption defense.  Defendants filed a supplemental reply brief in support of reconsideration on September 27, 2018, attaching an amicus brief filed by the United States Department of Justice in a separate action that also addressed preemption.

X.      On August 15, 2018, the Court referred the parties to Magistrate Judge Michael E. Hegarty for a settlement conference.

Y.      On October 17, 2018, certain Defendants moved for reconsideration of the Court's June 19, 2018 order denying all Parties' motions for summary judgment.

Z.      The Parties appeared before Magistrate Judge Hegarty for mediation on October 17, 2018.  The Parties did not resolve their claims but continued negotiations over the next five weeks through Magistrate Judge Hegarty.

AA.     On November 13, 2018, the Parties filed briefs concerning the application of tolling doctrines to the statutes of limitations pertaining to Plaintiffs' claims at the instruction of the Court.  On November 20, 2018, the Court issued an order finding that equitable tolling would not apply to Plaintiffs' claims.

BB.     On November 20, 2018, after additional extensive arm's-length negotiations and exchange of multiple proposals, Plaintiffs and Defendants reached an agreement in principle to settle the Litigation, which was memorialized in a Term Sheet executed by the parties.  The Court subsequently vacated all pre-trial dates, excepting the Final Pretrial Conference and Trial Date, pending the submission of a settlement agreement.

CC.     At the time the Term Sheet was signed, the FLSA Defendants' motions for decertification of the FLSA classes and subclasses and certain Defendants' motions for reconsideration of the Court's order denying their motions for summary judgment and of the Court's order dismissing their defenses based on preemption remained pending.

DD.     Defendants have denied and continue to deny any fault, liability, or wrongdoing of any kind and dispute that the evidence developed supports in any way the claims asserted.  Defendants also have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs.  Defendants further have denied and continue to deny that Plaintiffs or any Settlement Class Members were harmed or suffered any loss as a result of any of the conduct alleged in the Litigation.  Defendants

are entering into the Settlement to eliminate the burden, expense, inconvenience, uncertainty, distraction, and risk of further litigation; in light of the length of continued proceedings necessary to defend the Litigation through trial and any appeals; and to avoid continued litigation.  Defendants therefore believe that it is desirable that the Litigation and any other current or future potential actions brought by Settlement Class Members that relate in any way to the allegations raised by the Plaintiffs be settled upon the terms and conditions set forth herein, in order to avoid the further expense and burden of protracted litigation.

**NOW THEREFORE**, without any admission or concession on the part of Defendants of any liability or wrongdoing or lack of merit of their defenses in the Litigation, it is hereby stipulated and agreed, by and among the Parties, through their respective attorneys and representatives, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and other conditions set forth herein, in consideration of the benefits flowing to the Parties from the Settlement, that the Litigation, and all Released Claims shall be fully, finally, and forever compromised, settled, released, resolved, discharged, and dismissed with prejudice against the Released Parties, upon and subject to the following terms and conditions:

## I.    Definitions

1.    As used in this Agreement, the following terms shall have the following meanings:

a.    "Alternative Judgment" means a form of final judgment that may be entered by the Court in a form other than the form of the Order and Final Judgment provided for in this Agreement, and which is acceptable to all Parties.

b.      "Claim" has the meaning set forth in Paragraph 3.  For the avoidance of doubt, "Claims" shall include, but are not limited to, any and all causes of action, liabilities and demands of whatever kind or character for minimum wage, overtime, penalties, expenses, or other compensation (including but not limited to Claims under the Fair Labor Standards Act; state and local wage and hour laws; the Sherman Act, 15 U.S.C. §1, *et seq.*; civil RICO, 18 U.S.C. §1964(c); breach of fiduciary duty; negligent misrepresentation; constructive fraud or fraudulent concealment; and/or violations of consumer protection statues).

c.      "Claims Administrator" means the firm retained by Plaintiffs' Counsel on behalf of the Settlement Class and acceptable to the Defendants, subject to approval of the Court, to provide all notices approved by the Court to Settlement Class Members and to administer the Settlement.

d.      "Court" means the court or courts with jurisdiction over the above-captioned action, number 14-CV-03074-CMA pending in the U.S. District Court for the District of Colorado.

e.      "Defendants" means each Defendant named in the Third Amended Complaint (ECF No. 983).

f.      "Class Settlement Amount" means Sixty-Five Million and Five Hundred Thousand United States Dollars ($65,500,000.00), paid by or on behalf of the Defendants in connection with this Agreement.

g.      "Defendants' Counsel" means, with respect to each Defendant as indicated below, the law firms or lawyers:

    i.  Agent Au Pair, API, and Go Au Pair: Wheeler Trigg O'Donnell LLP.

    ii.  AIFS: Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Gibson, Dunn & Crutcher LLP.

    iii.  APF: Fisher & Phillips, LLP.

    iv.  AuPairCare: Gordon & Rees LLP.

    v.  Cultural Care: Choate, Hall & Stewart LLP and Lewis Roca Rothgerber Christie LLP.

    vi.  Cultural Homestay: Holland & Hart LLP.

    vii.  EurAuPair: Brownstein Hyatt Farber Schreck, LLP.

    viii.  Expert AuPair: Bogdan Enica, Esq.

    ix.  GreatAuPair: Armstrong Teasdale LLP.

    x.  InterExchange: Sherman & Howard L.L.C.

    xi.  ProAuPair and TIAPE: Nixon Shefrin Hensen Ogburn, P.C.

    xii.  USAuPair: Kelly & Walker LLC.

  h.  "Effective Date" means the first date when all of the conditions set forth below in Paragraph 34 below have occurred.

  i.  "Final," with respect to a court order, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of

any proceeding on certiorari to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for certiorari from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought).

j.      "Final Approval Hearing" or "Fairness Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

k.      "Litigation" means the above-captioned action, 1:14-cv-03074-CMA, pending in the U.S. District Court for the District of Colorado.

l.      "Litigation Expenses" means the reasonable costs and expenses incurred by counsel for Plaintiffs in connection with commencing and prosecuting the Litigation for which Plaintiffs' counsel intend to apply to the Court for payment from the QSF.

m.      "Notice" means the Notice of Proposed Settlement of Class and Collective Action, Fairness Hearing, and Right to Appear (substantially in the form attached hereto as Exhibit A), which is to be sent to Settlement Class Members.

n.      "Notice and Administration Expenses" means the costs, fees, and expenses that are incurred in connection with providing notice to the Settlement Class, in connection with the QSF, in connection with administering the

Settlement, and in providing notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

o.      "Order and Final Judgment" or "Judgment" means the order of final judgment to be entered in the Action, substantially in the form annexed hereto as Exhibit C.

p.      "Parties" means (i) Plaintiffs on behalf of themselves and each Settlement Class Member and (ii) the Defendants.

q.      "Person" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, as well as each of their spouses, domestic partners, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assigns.

r.      "Plaintiffs" means Johana Paola Beltran, Lusapho Hlatshaneni, Beaudette Deetlefs, Alexandra Ivette Gonzalez, Sarah Carolina Azuela Rascon, Laura Mejia Jimenez, Juliane Harning, Nicole Mapledoram, Cathy Caramelo, Linda Elizabeth, and Camila Gabriela Perez Reyes.

s.      "Plaintiffs' Counsel" or "Class Counsel" means Boies Schiller Flexner LLP and Towards Justice.

t.      "Plan of Allocation" means the proposed plan for allocating funds from the QSF to Settlement Class Members, which, subject to approval of the Court, shall be substantially in the form described in the Notice.

u.      "Preliminary Approval Order" means the order (substantially in the form annexed hereto as Exhibit B) to be entered by the Court, preliminarily approving the Settlement, approving dissemination of the Notice, and scheduling the Final Approval Hearing.

v.      "Qualified Settlement Fund" or "QSF" has the meaning set forth in Paragraph 13.

w.      "Released Claims" means all claims released pursuant to Section III below.

x.      "Released Parties" has the meaning set forth in Paragraph 4.

y.      "Releasing Parties" has the meaning set forth in Paragraph 3.

z.      "Settlement Class" means all of the Classes identified in Paragraph 2, considered collectively.

aa.      "Settlement Class Member" means any Person that is a member of the Settlement Class.

bb.      "Taxes" means any taxes due and payable with respect to the income earned by the QSF, including any interest or penalties thereon.

cc.      "Tax Expenses" means any expenses and costs incurred in connection with the payment of Taxes (including, without limitation, expenses of tax attorneys, accountants, and other advisors and expenses relating to the filing or failure to file all necessary or advisable tax returns).

dd.    "Training Classes" means the Florida Training Subclass, the New York Training Subclass, and the New Jersey Training Subclass as those classes were defined in the Order Granting in Part and Denying in Part Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel (ECF No. 828). For avoidance of doubt, the Training Classes are a subset of the Settlement Class.

## II.    Settlement Class and Subclass Definitions

2.    The Settlement Class shall be comprised of the Classes already identified and defined by the existing Court Orders.  For avoidance of doubt, those Classes are comprised of the eleven classes or subclasses certified in the Second Amended Order Granting Motion for Conditional Collective Action Certification (ECF No. 569), and the eighteen Classes or Subclasses certified in the Order Granting in Part and Denying in Part Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel (ECF No. 828), and subject to Court's Order on Statute of Limitations (ECF No. 1176).

## III.    Releases

### A.    Discharge of All Released Claims

3.    Effective upon the Effective Date, Released Parties, as defined in the next paragraph, shall be released and forever discharged by all Settlement Class Members (the "Releasing Parties") from any and all causes of action, judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each a "Claim"), known or unknown, arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct,

representations, omissions, circumstances or other matters referenced in the Litigation, whether any such Claim was or could have been asserted by any Releasing Party on her or his own behalf or on behalf of other Persons.

4.      Released Parties means the Defendants in this action, together with their respective parents, subsidiaries, officers, directors, employees, contractors, shareholders, attorneys, agents, representatives, insurers, host families, and affiliates, expressly, but without limitation, including recruiting affiliates named and unnamed in the course of this Litigation for those Defendants who use the services of others to identify, recruit and/or screen au pair candidates.  Notwithstanding any other provision in this Agreement, however, this Release shall not extend to claims or potential claims that any au pair may possess against her or his host family or families if such claims are (i) unrelated to the Claims asserted in the Litigation or (ii) unrelated to host family obligations under the federal Au Pair Program requirements, e.g., compensation, hours, education, or services required.

**B.      Release of Unknown Claims**

5.      The Releasing Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true, with respect to the claims being released pursuant to this Agreement.  Nevertheless, it is the intention of the Releasing Parties in executing this Agreement that they fully, finally, and forever settle and release all such matters, and all claims relating thereto, which exist or might have existed (whether or not previously or currently asserted in any action or proceeding) against the Released Parties.  The Releasing Parties voluntarily waive and relinquish

any and all rights to seek relief for unknown, unsuspected, or unanticipated claims or damages which the Releasing Parties may have under any applicable statutes or principles of law that limit the release of unknown, unsuspected, or unanticipated claims or damages, including but not limited to California Civil Code § 1542, which, as of December 31, 2018, provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

and, as of January 1, 2019, is amended to read as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

6.      By executing this Agreement, the Releasing Parties acknowledge that (1) they are each represented by counsel; (2) they each have read and fully understand the provisions of California Civil Code § 1542; and (3) they each have been specifically advised by his or her counsel of the consequences of the above waiver and this Agreement generally.

**C.      Claims Relating to Settlement**

7.      Notwithstanding any of the foregoing or any other provision, none of the Parties release any claims relating to the enforcement of this Agreement.

**IV.   Settlement Consideration**

**A.      Monetary Payment**

8.      The total settlement payment shall be in the amount of the Class Settlement Amount.  The Class Settlement Amount shall constitute the only payment

required by Defendants pursuant to the Settlement. No further payment from Defendants shall be required with respect to the Claims, including for Plaintiffs' attorneys' fees or costs, for administration of the QSF, for the provision and administration of notice, or for any other purpose.

9.      Within fourteen (14) days after the Effective Date, Plaintiffs' Counsel shall provide Defendants' Counsel with wiring instructions and a Form W-9 for the QSF, and any other documents reasonably required by the Defendants to process the funding of their share of the Class Settlement Amount. Defendants will pay their respective shares of the Class Settlement Amount, by wire transfer or otherwise, within thirty-five (35) days after the Effective Date.

10.     If any Defendant fails to meet their obligations under Paragraph 9, above, in full, Plaintiffs shall have the right of termination set forth in Paragraph 30, below, and to be returned to the pre-agreement status quo. Under no circumstances shall the remaining Defendants be deemed responsible for paying the share of the Defendant or Defendants who have not satisfied their obligations and made payment in full.

11.     Other than the obligation of Defendants to pay or cause to be paid the Class Settlement Amount into the QSF, neither the Defendants nor any other of the Released Parties shall have any obligation to make any other payment pursuant to this Agreement. Any interest earned on the Class Settlement Amount after having been paid into the QSF shall be for the benefit of the Settlement Class, except as set forth in Paragraph 14, below.

**B.      Prospective Commitment**

12.      In addition to the monetary payment described above, in compromise of this lawsuit Defendants further agree that, within thirty (30) days after the Effective Date:

a.      Each Defendant shall include a statement in an electronic or hard-copy communication to each host family upon enrollment in the federal au pair program sponsored by the Defendant to the effect that host families and au pairs are free to agree to compensation higher than the legally applicable minimum;

b.      each Defendant shall include where the compensation is referenced on its website, in its marketing materials, and/or in its contract with each new or returning host family, an express statement to the effect that host families and au pairs are free to agree to compensation higher than the legally applicable minimum;

c.      each Defendant that interacts directly with au pairs in their native or non-U.S. countries before their arrival in the United States shall include in an electronic or hard-copy communication to each au pair, in English and in the native language, or one of the native languages, of the au pair's country of residence, an express statement to the effect that host families and au pairs are free to agree to compensation higher than the legally applicable minimum; and

d.      each Defendant that has no direct communications with au pairs in their native or non-U.S. countries before their arrival in the United States shall request in an electronic or hard-copy communication that the person or entity that recruits au pairs on the Defendant's behalf include in an electronic or hard-copy communication to each au pair, in English and in the native language, or one of

the native languages, of the au pair's country of residence, an express statement

to the effect that host families and au pairs are free to agree to compensation

higher than the legally applicable minimum.

**V.      The Qualified Settlement Fund**

13.      The Parties agree that at the time set forth in Paragraph 9, each

Defendant shall pay its agreed upon share of the Class Settlement Amount into a

Qualified Settlement Fund ("QSF") within the meaning of Treasury Regulation

§ 1.468B-1, established by Plaintiffs' Counsel pursuant to an order of the Court, which a

Claims Administrator (selected by Plaintiffs' Counsel) will be solely responsible for

maintaining and administering, including with respect to all distributions.  The Claims

Administrator shall be classified as the "administrator" within the meaning of Treasury

Regulation § 1.468B-2(k)(3) and shall be responsible, on behalf of the QSF, for filing

any and all required federal, state, and local tax returns; for filing all required federal,

state, and local information returns; and for ensuring compliance with all tax payment,

notice, and withholding requirements with respect to the Class Settlement Amount.  For

the avoidance of doubt, the Released Parties will not be responsible for any payment,

reporting, or withholding of taxes with respect to the Class Settlement Amount, and any

taxes due shall be the responsibility of the Releasing Parties and the QSF.  The Parties

agree to take all steps necessary to ensure that the QSF established by the Court will

qualify as, and remain, a "Qualified Settlement Fund" under Section 468B of the Internal

Revenue Code and Treasury Regulations Sections 1.468B-1 through 1.468B-5

promulgated thereunder, and effectuate its intended purpose.  All fees and costs related

to the creation and administration of the QSF shall be paid from the QSF, and no

additional funds shall be required of the Released Parties.

14.     The QSF shall be used to pay:  (i) Taxes and Tax Expenses; (ii) Notice and Administration Expenses; (iii) any attorneys' fees and Litigation Expenses awarded by the Court; (iv) any other fees, costs, or expenses approved by the Court; and (v) amounts paid to Settlement Class Members.  Funds shall be distributed to Settlement Class Members as provided below and in the Plan of Allocation approved by the Court. All costs and expenses incurred by or on behalf of Plaintiffs and members of the Settlement Class shall be paid from the QSF, as approved by the Court or provided for in this Agreement.  No Released Party shall bear any further or additional responsibility to the Settlement Class or their counsel for any fees, costs or expenses beyond payment of the Class Settlement Amount.

VI.     **Attorneys' Fees and Litigation Expenses**

15.     Plaintiffs' Counsel intends to seek 35% of the Class Settlement Amount as attorneys' fee and also seek payment of litigation expenses from the QSF.  Defendants take no position with respect to this request.

VII.    **Plan of Allocation**

16.     The Plan of Allocation shall be as ordered by the Court.

17.     Defendants take no position with respect to the Plan of Allocation, and will not oppose the requested allocation.

18.     As used in this Section VII, the following terms shall have the following meanings:

a.      "Claim Form" shall mean a Court-approved form sent with the Notice that allows Settlement Class Members to request monetary participation in the settlement.

       b.     "Claiming Class Member" shall mean any Settlement Class Member that submits a valid Claim Form.

       c.     "Participation Bonuses" shall mean $5,000 for each Plaintiff, $1,000 for each Settlement Class Member who was deposed, and $100 for each Settlement Class Member who opted-in to a class certified in the Second Amended Order Granting Motion for Conditional Collective Action Certification (ECF No. 569).  In the event that a Settlement Class Member qualifies for multiple Participation Bonuses, that Settlement Class Member shall be entitled to the largest of the Participation Bonuses for which they qualify.

       d.     "Primary Claim" shall mean a Claim for the period November 13, 2010, through the end of the class period belonging to a Claiming Class Member.

       e.     "State Claim Class A" shall mean a Claim for the period prior to November 13, 2010, and for an au pair placement that occurred in Illinois, Michigan, New York, New Jersey, or Pennsylvania, belonging to a Claiming Class Member.

       f.     "State Claim Class B" shall mean a Claim for the period prior to November 13, 2010, and for an au pair placement that occurred in any state other than those included in State Claim Class A, belonging to a Claiming Class Member.

       g.     "Total Claim" shall mean the amount that a Claiming Class Member would receive pursuant to the Plan of Allocation prior to any weighting or pro rata distribution.  Plaintiffs shall seek Court approval for the formula used to calculate a Claiming Class Member's Total Claim, which formula Plaintiffs have shared

with Defendants and with respect to which Defendants have agreed to take no position. By agreeing to take no position with respect to the use of the formula for the purposes of this settlement only, Defendants do not thereby agree that the formula is generally appropriate for calculating au pair compensation.

        h.    "Training Claim" shall mean a Claim belonging to a Claiming Class Member who is also a member of the Training Classes.  For Claiming Class Members who are members of a Training Class and also a member of another class or sub-class included in the Settlement Class, a Training Claim shall refer only to those claims they have as a result of their membership in a Training Class.

        i.    "Void Date" shall mean a date established by the Claims Administrator as of which any check issued but not cashed shall be void. The Void Date shall be not earlier than 180 days after the issue date of the check.

    19.    Monies from the QSF will be distributed first to pay costs, fees, or expenses chargeable to the QSF pursuant to this Agreement.

    20.    Monies from the QSF will be distributed second to pay Participation Bonuses.

    21.    Monies from the QSF will be distributed third to Settlement Class Members according to the following principles:

        a.    The Claims Administrator will be responsible for calculating the Total Claim for each Claiming Class Member.

        b.    The Claims Administrator will weight the Total Claim for each Claiming Class Member as 100% for Primary Claims, 80% for Training Claims,

40% for State Claims Class A, and 20% for State Claims Class B.  Based on this weighting, the Class Administrator will distribute funds to Claiming Class Members on a pro-rata basis.

        c.      To the extent that any funds remain in the QSF after the Void Date (from un-cashed checks or otherwise), such remaining funds shall be paid to an appropriate non-profit that is agreed upon by the Parties as a cy pres recipient.

## VIII.   Objections

22.     Any Settlement Class Member wishing to object to the Agreement may do so only according to the process ordered by the Court.

23.     Plaintiffs' Counsel may communicate with Settlement Class Members regarding any objection and may advise the Court of any Settlement Class Member that has communicated that he or she wishes to withdraw their objection.

24.     The Parties agree not to file, and to oppose, any objection to this Agreement.

## IX.   Request for Approval from Court

25.     Plaintiffs' counsel shall file this Agreement with the Court within two (2) business days after completion of its execution.  No later than five (5) business days after the Agreement is filed with the Court, Plaintiffs, by and through counsel, shall move for the Court's approval of the Preliminary Approval Order, which shall be substantially in the form attached hereto as Exhibit B. The Preliminary Approval Order will, *inter alia*, set the date for a Fairness Hearing and prescribe the method for giving notice of the Settlement to the Settlement Class.

26.     The Parties agree that au pairs who have already received an opportunity to opt-out do not need to be afforded a second opportunity.

27.     Au pairs who were sponsored by AuPairCare, and certain au pairs whose placements occurred in 2017 and 2018 (the "Opt-Out Au Pairs") did not receive an opportunity to opt-out.  The Parties agree that an opt-out period is necessary with respect to the Opt-Out Au Pairs.  The Notice issued to Opt-Out Au Pairs shall differ from the Notice sent to all other Settlement Class Members in that, in addition to the language sent in the Notice to other Settlement Class Members, it will offer the Opt-Out Au Pairs an opportunity to opt-out of the relevant Classes (including Subclasses) within ninety (90) days of sending the Notice.

28.     Not later than ten (10) days after the Settlement Agreement is filed in court, the Claims Administrator shall in consultation with Defendants' counsel provide notice of the proposed class action settlement to the appropriate state officials (i.e. each state attorney general) and the Attorney General of the United States pursuant to 28 U.S.C. § 1715, and the costs of such notice shall be paid from the QSF.

29.     The Settlement is expressly conditioned upon, among other things, the entry of a Judgment substantially in the form annexed hereto as Exhibit C. Plaintiffs, by and through counsel, shall move for entry of the Judgment, including, among other things, the releases described herein.

## X.     WAIVER OR TERMINATION

30.     Plaintiffs or Defendants shall have the right to terminate the Settlement in its entirety by providing written notice of their election to do so ("Termination Notice"), through counsel, to counsel for all other Parties hereto, within fourteen (14) calendar days of: (i) the Court's refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's refusal to enter the Judgment in any material respect or an alternative judgment acceptable to the Parties with respect to the Settlement; or (iii) the

date upon which the Judgment or Alternative Judgment is vacated, modified, or reversed in any material respect by a Final order of the United States Court of Appeals or the Supreme Court of the United States. Plaintiffs shall have the right to terminate the Settlement in its entirety by providing Termination Notice through counsel, to counsel for all other Parties hereto, within fourteen (14) calendar days of Defendants' failure to satisfy their obligations in Section IV.A, above.  In the event the Settlement is terminated, the provisions of Paragraphs 32 and 33 shall survive termination.  No Party shall have the right to terminate the Settlement due to any decision, ruling, or order regarding an application for attorneys' fees, Litigation Expenses, or the Plan of Allocation.

31.     If an option to withdraw from and terminate this Settlement arises under Paragraph 30 above, neither Plaintiffs nor Defendants will be required for any reason or under any circumstance to exercise that option.

32.     Except as otherwise provided herein, in the event the Settlement is terminated in its entirety, the Settlement will be without prejudice, and none of its terms shall be effective or enforceable, except as specifically provided herein.  Plaintiffs and Defendants shall be deemed to have reverted to their respective status in the Litigation as of January 3, 2019, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In such event, the fact and terms of the Term Sheet, this Agreement, or any aspect of the negotiations leading to this Agreement, shall not be admissible in this or other litigation and shall not be used by Plaintiffs against Defendants in any court filings, depositions, at trial, or otherwise.

33.     In the event the Settlement is terminated in its entirety, or if the Effective Date is barred from occurring, pursuant to the provisions above, any portion of the Class Settlement Amount that already has been paid by or on behalf of the Defendants, including any funds disbursed in payment of attorneys' fees, and/or Litigation Expenses, together with any interest earnings or appreciation thereon, less any Taxes and Tax Expenses paid or due with respect to such income, and less Notice and Administration Expenses actually and reasonably incurred and paid or payable from the QSF, shall be returned to Defendants within fourteen (14) business days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Plaintiffs' Counsel. At the request of Defendants' Counsel, the Plaintiffs' Counsel and/or the Claims Administrator shall apply for any tax refund owed on the amounts in the QSF and pay the proceeds, after any deduction of any fees or expenses actually and reasonably incurred in connection with such application(s), of such refund to the Person(s) that made the deposits or as otherwise directed.

**XI.     EFFECTIVE DATE OF SETTLEMENT**

34.     The Effective Date of the Settlement shall be the first date when all of the following shall have occurred:

        a.     entry of the Preliminary Approval Order;

        b.     approval by the Court of the Settlement following notice to the Class and a hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure;

        c.     entry of the Judgment, substantially in the form annexed hereto as Exhibit C, or entry of any Alternative Judgment; and

d. the Judgment or any Alternative Judgment has become Final.

## XII. NO ADMISSION OF WRONGDOING

35. Except as provided in Paragraph 7 above, this Agreement and any negotiations, proceedings, or agreements relating to this Agreement, the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, shall not be offered or received against the Parties or Released Parties and their counsel for any purpose, and in particular:

a. do not constitute, and shall not be offered or received against any Parties or Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Released Parties with respect to the truth of any fact alleged by Plaintiffs or any other Settlement Class Member or the validity of any Claim that has been or could have been asserted in the Litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault, or wrongdoing of the Released Parties;

b. do not constitute, and shall not be offered or received against any Parties or Released Parties as evidence of a presumption, concession, or admission of any fault, misstatement, or omission with respect to any statement or written document approved or made by Released Parties, or against the Plaintiffs, or any other Settlement Class Member as evidence of any infirmity in the Claims or defenses that have been or could have been asserted in the Litigation;

c. do not constitute, and shall not be offered or received against any Parties or Released Parties, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or

wrongdoing, or in any way referred to for any other reason against Released Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; and

       d.     do not constitute, and shall not be construed against any Parties or Released Parties, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

## XIII.   MISCELLANEOUS PROVISIONS

36.    The Parties agree that no Party was or is a "prevailing party" in the Litigation.

37.    In light of the several years and millions of pages of discovery in this matter, the Parties agree that this Settlement is not subject to confirmatory discovery.

38.    All of the exhibits attached to this Agreement are material and integral parts hereof and are fully incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Agreement and the terms of any exhibit attached hereto, the terms of this Agreement shall prevail.

39.    This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel or a representative for all of the Parties (or their successors-in-interest) materially and adversely affected by any such modification, amendment, or waiver.

40.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

41.     The Parties agree that the terms of the Settlement were negotiated at arm's length, in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

42.     The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

43.     This Agreement and its exhibits constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.

44.     This Agreement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

45.     Each person signing this Agreement represents that such person has authority to sign this Agreement on behalf of Plaintiffs or Defendants, as the case may be, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms.

46.     By entering into the Settlement, Plaintiffs represent and warrant that they have not assigned, hypothecated, conveyed, transferred, or otherwise granted or given any interest in the Released Claims, or any of them, to any other Person.

47.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party may merge, consolidate, or reorganize.

48.     If any Party is required to give notice to the other Parties under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, e-mail, facsimile, or in person to each of the signatories below.

49.     The administration, consummation, and enforcement of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders, providing for awards of attorneys' fees, and payment of Litigation Expenses, and enforcing the terms of this Agreement and the Settlement.

50.     The construction, interpretation, operation, effect, and validity of this Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

51.     This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of January __, 2019.

Executed by the Parties on the dates indicated below.

FOR PLAINTIFFS AND THE CLASS

Date: January 9 , 2019       By: _____

Name: Peter Skinner _____

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

Counsel for the Plaintiffs and the Settlement Class

AGENT AU PAIR, INC.

Date: January ___, 2019       By: _____

Name: _____

Title: _____

AMERICAN CULTURAL EXCHANGE, LLC, d/b/a
GO AU PAIR
Date: January ___, 2019       By: _____

Name: _____

Title: _____

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of January ___, 2019.

Executed by the Parties on the dates indicated below.

FOR PLAINTIFFS AND THE CLASS

Date: January ___, 2019          By:      _____

                                 Name:_____

                                 BOIES SCHILLER FLEXNER LLP
                                 575 Lexington Avenue
                                 New York, New York 10022
                                 Tel: (212) 446-2300
                                 Fax: (212) 446-2350

                                 Counsel for the Plaintiffs and the Settlement Class

                                 AGENT AU PAIR, INC.

Date: January 4, 2019            By:     _____

                                 Name:_____Michael Di Mauro_____

                                 Title: Chief Executive Officer

                                 AMERICAN CULTURAL EXCHANGE, LLC, d/b/a
                                 GO AU PAIR
Date: January ___, 2019          By:      _____

                                 Name:_____

                                 Title:  _____

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of January __, 2019.

Executed by the Parties on the dates indicated below.

FOR PLAINTIFFS AND THE CLASS

Date: January ___, 2019          By: _____

                                 Name:_____

                                 BOIES SCHILLER FLEXNER LLP
                                 575 Lexington Avenue
                                 New York, New York 10022
                                 Tel: (212) 446-2300
                                 Fax: (212) 446-2350

                                 Counsel for the Plaintiffs and the Settlement Class

                                 AGENT AU PAIR, INC.

Date: January ___, 2019          By: _____

                                 Name:_____

                                 Title: _____

                                 AMERICAN CULTURAL EXCHANGE, LLC, d/b/a
                                 GO AU PAIR
Date: January 5, 2019            By: _A. William Kuyler III_

                                 Name: _A. William Kuyler III_

                                 Title: _LLC Manager_

GO AU PAIR OPERATIONS, LLC

Date: January 5, 2019

By: _A Willam Kapler III_

Name: _A. William Kapler III_

Title: _LLC Manager_


AMERICAN INSTITUTE FOR FOREIGN STUDY,
INC. D/B/A AU PAIR IN AMERICA

Date: January ___, 2019

By: _____

Name: _____

Title: _____


AU PAIR INTERNATIONAL, INC.

Date: January ___, 2019

By: _____

Name: _____

Title: _____


APF GLOBAL EXCHANGE, NFP D/B/A AU PAIR
FOUNDATION

Date: January ___, 2019

By: _____

Name: _____

Title: _____

GO AU PAIR OPERATIONS, LLC

Date: January ___, 2019

By: _____

Name: _____

Title: _____

AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. D/B/A AU PAIR IN AMERICA

Date: January 4, 2019

By: _____

Name: William Gertz

Title: Chairman

AU PAIR INTERNATIONAL, INC.

Date: January ___, 2019

By: _____

Name: _____

Title: _____

APF GLOBAL EXCHANGE, NFP D/B/A AU PAIR FOUNDATION

Date: January ___, 2019

By: _____

Name: _____

Title: _____

GO AU PAIR OPERATIONS, LLC

Date: January ___, 2019        By:     _____

                               Name: _____

                               Title:  _____


AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. D/B/A AU PAIR IN AMERICA

Date: January ___, 2019        By:     _____

                               Name: _____

                               Title:  _____


AU PAIR INTERNATIONAL, INC.

Date: January 7, 2019          By:     _____

                               Name: _Stephen B Lehan_____

                               Title:  _President_____


APF GLOBAL EXCHANGE, NFP D/B/A AU PAIR FOUNDATION

Date: January ___, 2019        By:     _____

                               Name: _____

                               Title:  _____

Date: January \_\_\_, 2019

By: _____

Name: _____

Title: _____

AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. D/B/A AU PAIR IN AMERICA

Date: January \_\_\_, 2019

By: _____

Name: _____

Title: _____

AU PAIR INTERNATIONAL, INC.

Date: January \_\_\_, 2019

By: _____

Name: _____

Title: _____

APF GLOBAL EXCHANGE, NFP D/B/A AU PAIR FOUNDATION

Date: January 4, 2019

By: _Ellen B Hoge_

Name: _Ellen B HOGGARD_

Title: _President_

AUPAIRCARE, INC.

33

AUPAIRCARE, INC.

Date: January 1, 2019

By: _____

Name: _____ JOHN F. WILHELM

Title: _____ CHAIRMAN

CULTURAL CARE, INC. D/B/A CULTURAL CARE
AU PAIR

Date: January ___, 2019

By: _____

Name: _____

Title: _____

CULTURAL HOMESTAY INTERNATIONAL

Date: January ___, 2019

By: _____

Name: _____

Title: _____

EURAUPAIR INTERCULTURAL CHILD CARE
PROGRAMS

Date: January ___, 2019

By: _____

Name: _____

Title: _____

AUPAIRCARE, INC.

Date: January ___, 2019

By: _____

Name: _____

Title: _____


CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR

Date: January 4, 2019

By: _____

Name: _GORAN T RANNEFORS_

Title: _PINGETON_


CULTURAL HOMESTAY INTERNATIONAL

Date: January ___, 2019

By: _____

Name: _____

Title: _____


EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS

Date: January ___, 2019

By: _____

Name: _____

Title: _____

34

AUPAIRCARE, INC.

Date: January ___, 2019      By: _____

Name: _____

Title: _____

CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR

Date: January ___, 2019      By: _____

Name: _____

Title: _____

CULTURAL HOMESTAY INTERNATIONAL

Date: January _4_, 2019      By: _____

Name: _Thomas Areton_____

Title: __Executive Director_____

EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS

Date: January ___, 2019      By: _____

Name: _____

Title: _____

34

AUPAIRCARE, INC.

Date: January \_\_\_, 2019          By:      _____

                                 Name:_____

                                 Title:   _____

CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR

Date: January \_\_\_, 2019          By:      _____

                                 Name:_____

                                 Title:   _____

CULTURAL HOMESTAY INTERNATIONAL

Date: January \_\_\_, 2019          By:      _____

                                 Name:_____

                                 Title:   _____

EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS

Date: January 4, 2019          By:      *Celia Parker*

                                 Name: CELIA PARKER

                                 Title: Chief Legal & Compliance EA Executive Committee

34

EXPERT GROUP INTERNATIONAL, INC. D/B/A
EXPERT AU PAIR

Date: January ___7___, 2019     By: _____

Name: _____MARK   GAULTER_____

Title: _____CEO_____


GREAT AUPAIR, LLC

Date: January ____, 2019     By: _____

Name: _____

Title: _____


INTEREXCHANGE, INC.

Date: January ____, 2019     By: _____

Name: _____

Title: _____


A.P.EX. AMERICAN PROFESSIONAL EXCHANGE,
LLC D/B/A PROAUPAIR

Date: January ____, 2019     By: _____

Name: _____

Title: _____

EXPERT GROUP INTERNATIONAL, INC. D/B/A
EXPERT AU PAIR

Date: January ___, 2019            By:      _____

                                   Name:_____

                                   Title:   _____


GREAT AUPAIR, LLC

Date: January _4_, 2019            By:      _Shannon Pitts_____

                                   Name:  _SHANNON PITTS_____

                                   Title:   _CEO_____


INTEREXCHANGE, INC.

Date: January ___, 2019            By:      _____

                                   Name:_____

                                   Title:   _____


A.P.EX. AMERICAN PROFESSIONAL EXCHANGE,
LLC D/B/A PROAUPAIR

Date: January ___, 2019            By:      _____

                                   Name:_____

                                   Title:   _____

EXPERT GROUP INTERNATIONAL, INC. D/B/A
EXPERT AU PAIR

Date: January ___, 2019          By:      _____

                                 Name: _____

                                 Title:  _____


GREAT AUPAIR, LLC

Date: January ___, 2019          By:      _____

                                 Name: _____

                                 Title:  _____


INTEREXCHANGE, INC.

Date: January 4TH, 2019       By:      _____

                                 Name: _CHRISTINE  LA MONICA-LUNN_

                                 Title:  _PRESIDENT + CEO_


A.P.EX. AMERICAN PROFESSIONAL EXCHANGE,
LLC D/B/A PROAUPAIR

Date: January ___, 2019          By:      _____

                                 Name: _____

                                 Title:  _____

35

EXPERT GROUP INTERNATIONAL, INC. D/B/A EXPERT AU PAIR

Date: January ___, 2019

By: _____

Name: _____

Title: _____

GREAT AUPAIR, LLC

Date: January ___, 2019

By: _____

Name: _____

Title: _____

INTEREXCHANGE, INC.

Date: January ___, 2019

By: _____

Name: _____

Title: _____

A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC D/B/A PROAUPAIR

Date: January 5__, 2019

By: *Susan Asay*

Name: Susan Asay

Title: CEO

20/20 CARE EXCHANGE, INC. D/B/A THE INTERNATIONAL AU PAIR EXCHANGE

Date: January __5__, 2019          By: *Susan Asay*
                                                    _____

                                   Name: Susan Asay
                                        _____

                                   Title: CEO
                                        _____


USAUPAIR, INC.

Date: January ___, 2019          By: _____

                                   Name: _____

                                   Title: _____

20/20 CARE EXCHANGE, INC. D/B/A THE
INTERNATIONAL AU PAIR EXCHANGE

Date: January ___, 2019          By: _____

                                 Name: _____

                                 Title: _____


                                 USAUPAIR, INC.

Date: January 6, 2019            By: _____

                                 Name: Helene Young

                                 Title: President

36

# Exhibit A

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

## NOTICE OF PROPOSED SETTLEMENT OF CLASS AND COLLECTIVE ACTION, FAIRNESS HEARING, AND RIGHT TO APPEAR

### If you were an au pair on a J-1 visa in the United States between Jan. 1, 2009, and October 28, 2018, you could get a payment from a settlement.

*A Court authorized this notice.  This is **not** a solicitation from a lawyer.*

- The settlement resolves a lawsuit au pairs filed against U.S. State Department designated sponsors of the J-1 au pair program (the "Defendants"), alleging various claims against those Defendants arising from the weekly stipend hosting families pay to au pairs.  The Court has not ruled that the Defendants did anything wrong or violated any laws.

- The settlement creates a **$65,500,000** fund to pay individual claims from au pairs, expenses incurred in advancing this lawsuit, and the court-appointed lawyers for the au pairs ("Class Counsel").

- The settlement also requires that, going forward, the Defendants will clarify in a notice to au pairs and host families that the weekly au pair stipend is a minimum payment requirement.

- The court-appointed lawyers for the au pairs, who have handled all aspects of this case and have not been paid for their work, will ask the Court for 35% of the settlement for their fees and also for payment of litigation expenses.

| YOUR LEGAL RIGHTS ARE AFFECTED NOW, AND YOU HAVE A CHOICE TO MAKE: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment.  Release your claims. |
| **[EXCLUDE YOURSELF** | Get no payment.  Retain your claims.] |
| **OBJECT** | Write to the Court about why you do not agree with the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment.  Release your claims. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.  **Please read this Notice carefully.**

- The Court still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.

## WHAT THIS NOTICE CONTAINS

**Basic Information** ................................................................................................ 3
    1.  Why did I get this notice? ........................................................................... 3
    2.  What is this lawsuit about? .......................................................................... 3
    3.  What is a class action and who is involved? ................................................ 3
    4.  What is a collective action and who is involved? ......................................... 4
    5.  Am I a member of the Class Action or the Collective Action? ..................... 4

**The Settlement** ................................................................................................... 5
    6.  Why is there a Settlement? ......................................................................... 5
    7.  Am I part of Settlement? ............................................................................. 5
    8.  Are any au pairs not included in the Settlement? ......................................... 6
    9.  What does the Settlement provide? .............................................................. 7
    10.  How will the Settlement funds be distributed? ........................................... 7
    11.  How can I get money from the Settlement? ............................................... 8
    12.  When will I get my Settlement payment? .................................................. 8
    13.  Do I have to pay taxes on the money I receive from the Settlement? ......... 9

**Your Rights and Options** ................................................................................... 9
    14.  What are my options for participating in the Settlement? ........................... 9
    15.  What am I giving up if I submit a Claim Form? ......................................... 9
    16.  What happens if I do nothing at all? ......................................................... 9
    [17.  How do I exclude myself from the Settlement? ...................................... 10
    17 [18].  How do I object to the Settlement? ................................................... 10
    [19.  What is the difference between objecting and excluding? ....................... 11

**The Lawyers Representing You** ....................................................................... 11
    18 [20].  Who represents me in this case? ...................................................... 11
    19 [21].  Should I get my own lawyer? ........................................................... 11
    20 [22].  How will the lawyers be paid? .......................................................... 11

**The Fairness Hearing** ....................................................................................... 12
    21 [23].  When and where will the Court decide whether to approve the Settlement? .... 12
    22 [24].  Do I have to come to the Fairness Hearing? ..................................... 12

**Getting More Information** ................................................................................. 12
    23 [25].  Are more details available? ............................................................... 12

# BASIC INFORMATION

## 1. Why did I get this notice?

This Notice is to tell you about a settlement in the class and collective action lawsuit involving sponsoring organizations of the J-1 au pair program (the "Defendants" listed below in Question 3) relating to the weekly stipend hosting families pay to au pairs. This notice is being sent to you because you have previously joined the Fair Labor Standards Act ("FLSA") claims in this case, or because you are a member of one or more of the classes certified by the Court. Judge Christine Arguello of the United States District Court for the District of Colorado is overseeing this case. The case is known as *Beltran, et al. v. Interexchange, et al.*, Case No. 14-cv-3074.

## 2. What is this lawsuit about?

As part of the J-1 au pair program, certain organizations (the "Defendants" listed below in question 3) are designated by the U.S. State Department as sponsors of the program, which allows au pairs to live and work in the United States on J-1 visas. The au pairs allege that those Defendants misrepresented the au pair stipend as a fixed amount, conspired to fix the au pair stipend at $195.75 per week, and that they violated federal, state, and local laws in doing so. The Defendants deny that they or the hosting families did anything wrong. The Court has not ruled that the Defendants committed any wrongdoing or violated any law.

You can read the Plaintiffs' Complaint at www.website.com.

This lawsuit has two components. **First**, this lawsuit is a "Class Action" under Federal Rule of Civil Procedure 23, in which numerous classes of au pairs assert federal and state claims against certain of the Defendants. **Second**, this lawsuit is a "Collective Action" under the FLSA, in which the au pairs allege that certain Defendants violated the FLSA by failing to pay them the appropriate minimum wage and for overtime. The differences between the Class Action and Collective Action are discussed further below.

## 3. What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" sue on behalf of all other people who have similar claims. Together they are the "Class Members." A class action resolves the claims for all Class Members, except for those who exclude themselves. The Court has appointed eleven current and former au pairs as Class Representatives. Together with the Class Members, they are also called the Plaintiffs. They sued the following Defendants:

- InterExchange, Inc.
- GreatAuPair, LLC
- AuPairCare Inc.
- Agent Au Pair
- Au Pair International, Inc.

- USAuPair, Inc.
- Expert Group International Inc., d/b/a Expert AuPair
- EurAuPair Intercultural Child Care Programs
- Cultural Homestay International
- American Institute for Foreign Study, Inc., d/b/a Au Pair in

- Cultural Care, Inc., d/b/a Cultural Care Au Pair
- APF Global Exchange NFP, d/b/a Aupair Foundation

- America
- 20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange
- A.P.EX. American Professional Exchange LLC, d/b/a ProAuPair
- American Cultural Exchange LLC d/b/a Go Au Pair and Go Au Pair Operations, LLC (together, "Go Au Pair").

## 4. What is a collective action and who is involved?

A collective action is similar to a class action in many respects: individuals with similar claims pursue those claims collectively against one of more defendants, through a class representative. However, the FLSA requires that individuals wishing to participate in a collective action "opt-in" to the class. In this case, the Court has conditionally certified eleven FLSA classes against six Defendants (the "FLSA Defendants") for alleged minimum wage and overtime violations which the Defendants deny: (1) AuPairCare Inc.; (2) American Institute for Foreign Study, Inc., d/b/a Au Pair in America; (3) Cultural Care, Inc., d/b/a Cultural Care Au Pair; (4) Expert Group International Inc., d/b/a Expert AuPair; (5) American Cultural Exchange LLC d/b/a Go Au Pair and Go Au Pair Operations, LLC (together, "Go Au Pair"); and (6) InterExchange, Inc. The Court has appointed eight current and former au pairs as representatives of the FLSA classes. The Court has not ruled on final certification of the FLSA classes.

Au pairs who were sponsored by the FLSA Defendants were separately provided notice of the FLSA Collective Action, and had the opportunity to "opt-in" by submitting a consent-to-join form. The deadline for submitting the consent-to-join form has passed, and any au pair who did not do so is not part of the Collective Action. As a result, they are not eligible for the additional settlement payment (as described in Question 10) for au pairs who opted-in. However, those au pairs who did not opt-in may also obtain settlement funds as members of the Class Action, if they fit the class definitions in Question 7, and return a completed Claim Form.

## 5. Am I a member of the Class Action or the Collective Action?

You may be a member of both. All current or former au pairs who fit the class definitions in Question 7 and have not requested to be excluded are automatically included in this lawsuit as Class Members in the Class Action; there is no need to file any consent or "opt-in" to be Class Members. However, to join the Collective Action, you had to return the consent-to-join form. Thus, only those au pairs who submitted a consent-to-join form by the appropriate deadline are part of the Collective Action.

Opting-in to the Collective Action, or deciding not to join the Collective Action, does not impact your membership in the Class Action. Au pairs who did not submit a consent-to-join the Collective Action may still be Class Members in the Class Action, and obtain funds under the Settlement as a Class Member.

To confirm whether you are a member of the Collective Action, you may contact the Claims Administrator by email, at info@email.com, or by telephone, at 1-800-000-0000.

# The Settlement

## 6. Why is there a Settlement?

The Court has not found in favor of the au pairs or the Defendants. The au pairs and the Defendants have agreed to a Settlement which, if it is approved, will bring the claims against the Defendants to an end, and avoid a trial. That way, both sides avoid the uncertainty of continuing the case and the cost of further litigation, and eligible au pairs will get the benefits of the Settlement. Class Counsel and the Class Representatives support the Settlement.

## 7. Am I part of Settlement?

All au pairs who submitted valid consent-to-join forms in the Collective Action are included in the Settlement and may obtain funds, upon submitting a Claim Form. In addition, all Class Members in the Class Action are included in the Settlement and may obtain funds, upon submitting a Claim Form. Class Members are all persons who were standard au pairs on a J-1 visa sponsored by one of the Defendants listed in Question 3, between January 1, 2009, and October 28, 2018. A "standard" au pair is an au pair who was expected to provide up to 45 hours of childcare per week, and for whom the advertised stipend was $195.75. The Class is made up of eighteen (18) separate classes, each specific to certain legal claims, Defendants, and States. If you are a member of any of the classes, you may be entitled to Settlement funds.

| | |
|---|---|
| **Antitrust Class:** | All persons sponsored by any Defendant to work as a standard *au pair* in the United States pursuant to a J-1 Visa. |
| **Racketeer Influenced and Corruption Organizations Act (RICO) Class:** | All persons sponsored by Defendants Au Pair in America (American Institute for Foreign Study, Inc.), AuPairCare, Inc., Cultural Care, Inc., or InterExchange, Inc. to work as a standard *au pair* in the United States pursuant to a J-1 Visa. |
| **Florida Training Subclass:** | All persons subjected to unpaid standard *au pair* training by Defendant Expert Group International, Inc. in Florida. |
| **New York Training Subclass:** | All persons subjected to unpaid standard *au pair* training by Defendants Au Pair in America (American Institute for Foreign Study, Inc.), Cultural Care, Inc. or InterExchange, Inc. in New York. |
| **New Jersey Training Subclass:** | All persons subjected to unpaid standard *au pair* training by Defendant AuPairCare in New Jersey. |
| **Au Pair in America California Subclass:** | All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study, Inc.) to work as a standard *au pair* in the State of California pursuant to a J-1 Visa. |
| **Au Pair in America Illinois Subclass:** | All persons sponsored by Defendant Au Pair in America (American Institute for Foreign Study, Inc.) to work as a standard |

|  |  |
|---|---|
| | *au pair* in the State of Illinois pursuant to a J-1 Visa. |
| **AuPairCare Michigan Subclass:** | All persons sponsored by Defendant AuPairCare, Inc. to work as a standard *au pair* in the State of Michigan pursuant to a J-1 Visa. |
| **AuPairCare Pennsylvania Subclass:** | All persons sponsored by Defendant AuPairCare, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa. |
| **Cultural Care Maryland Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Maryland pursuant to a J-1 Visa. |
| **Cultural Care Massachusetts Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Massachusetts pursuant to a J-1 Visa. |
| **Cultural Care Pennsylvania Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Pennsylvania pursuant to a J-1 Visa. |
| **Cultural Care Texas Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Texas pursuant to a J-1 Visa. |
| **Cultural Care Utah Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the State of Utah pursuant to a J-1 Visa. |
| **Cultural Care Virginia Subclass:** | All persons sponsored by Defendant Cultural Care, Inc. to work as a standard *au pair* in the Commonwealth of Virginia pursuant to a J-1 Visa. |
| **Expert Au Pair Colorado Subclass:** | All persons sponsored by Defendant Expert Group International, Inc. to work as a standard *au pair* in the State of Colorado pursuant to a J-1 Visa. |
| **Go Au Pair Maryland Subclass:** | All persons sponsored by Defendant American Cultural Exchange LLC d/b/a Go Au Pair and Go Au Pair Operations, LLC (together, "Go Au Pair") to work as a standard *au pair* in the State of Maryland pursuant to a J-1 Visa. |
| **InterExchange Colorado Subclass:** | All persons sponsored by Defendant InterExchange, Inc. to work as a standard *au pair* in the State of Colorado pursuant to a J-1 Visa. |

## 8.  Are any au pairs not included in the Settlement?

If you were an au pair sponsored by one of the Defendants **before January 1, 2009 or after October 28, 2018**, you are not included in the Class, and therefore not included in the Settlement.  The Class does not include non-standard J-1 visa au pairs, such as "Extraordinaire",

"EduCare," "Professional," "Premium," or "Plus" au pairs. The Class also does not include other providers of in-home childcare, such as nannies or babysitters.

## 9. What does the Settlement provide?

The Defendants will pay $65,500,000 into a Qualified Settlement Fund ("QSF"). After deducting attorneys' fees, costs, and other fees and expenses, the QSF will be distributed to all eligible Collective and Class members who submit a valid Claim Form (*see* Question 10). The Defendants have also agreed to clarify the information they provide to hosting families and au pairs regarding the weekly au pair stipend. In particular, the Defendants have agreed to take certain steps designed to notify au pairs and host families that the legal minimum weekly stipend is only a minimum and that au pairs and host families are allowed to agree to a higher weekly stipend.

In exchange for the right to receive your share of the QSF, you will give up, or "release," your claims against the Defendant that sponsored your J-1 visa and any other Defendant in this lawsuit. Those releases include any claims made or that could have been made arising from the facts alleged in this lawsuit. The releases are described in more detail in the Settlement Agreement and in Question 11 below. You can also view or download a copy of the Settlement Agreement, which contains more information on the releases, at www.wesbite.com.

## 10. How will the Settlement funds be distributed?

The precise amount each Class or Collective Action member will be paid depends on a number of factors such as (i) the number of au pairs who submit Claim Forms; (ii) when you were an au pair; (iii) where you were an au pair (which state); and (iv) whether you undertook uncompensated training in the United States.

The total settlement amount is $65,500,000. It is anticipated that after legal fees and administrative costs are paid, the amount available to distribute to Class or Collective Action members will be approximately $40,000,000. Au pairs who have personally participated in the lawsuit will then receive participation bonuses: $5,000 to each of the eleven Class Representatives (who attended depositions, provided documents, and assisted Class Counsel in preparing the case); $1,000 to each Collective Action member who participated in a deposition; and $100 for every au pair who opted-in to the Collective Action. These bonuses will be on top of any recovery to which those au pairs may otherwise be entitled as Class Members.

The remaining funds, which are anticipated to be approximately $39,500,000, will be distributed to au pairs who submit valid Claim Forms. **You must submit a Claim Form to participate in the settlement.**

Funds are distributed based upon a formula approved by the Court that is intended to fairly compensate every class member based on the relative strength of their claim. The complete Plan of Allocation is available on the class webpage at www.website.com. Summarized briefly, Class Members who were au pairs in the period starting November 13, 2010, will receive the largest

recovery as a percentage of their total claim, followed by Class Members who undertook compulsory training in the United States, followed by Class Members who were au pairs prior to November 13, 2010, in Illinois, Michigan, New York, New Jersey, or Pennsylvania, followed by class members who were au pairs prior to November 13, 2010, in any other state.

By way of example, if approximately 15,000 au pairs were to submit valid claims, each of those groups may expect recoveries of approximately the following size:

| | |
|---|---|
| Au Pairs For a Year Starting On or After November 13, 2010 | $2,500 |
| Au Pairs Who Undertook Compulsory Training in the United States For One Week | $90 (in addition to recovery awarded for the au pair placement) |
| Au Pairs For a Year Ending Before November 13, 2010, in Illinois, Michigan, New York, New Jersey, or Pennsylvania | $1,000 |
| Au Pairs For a Year Ending Before November 13, 2010, in Any Other State | $500 |

Other than the $65,500,000 total settlement amount, the figures provided in this answer are estimates and examples only. The actual figures may be higher or lower depending on the total number of claims received, and as determined by the Claims Administrator pursuant to the Plan of Allocation approved by the Court.

## 11. How can I get money from the Settlement?

To receive your share of the QSF, you must complete, sign, and return a Claim Form to the Claims Administrator.  A Claim Form is attached to this Notice, and may also be obtained and submitted via the Claims Administrator's website, www.website.com.   Claim Forms may also be submitted by mail, to the Claims Administrator at: Beltran v. InterExchange, c/o JND Legal Administration, P.O. Box 91345, Seattle, WA 98111.  **Submitting a Claim Form is the only way to get paid from the Settlement.  You must submit your Claim Form by Deadline.**

## 12. When will I get my Settlement payment?

The Court will hold a Fairness Hearing on **XX date at XX time a.m.**, to decide whether to approve the Settlement.  If the Court approves the Settlement, there still may be appeals of that decision.  If an appeal is filed, it is hard to estimate how long it might take for it to be resolved, but it can take a lot of time, perhaps more than a year.  Settlement payments will be distributed if the Settlement is approved, and after any appeals are resolved.

Updates regarding the Settlement, including deadlines for the submission of Claim Forms, and the schedule for when payments may be made will be posted on the Claims Administrator's website, <mark>www.website.com</mark>.

| 13. | Do I have to pay taxes on the money I receive from the Settlement? |
|---|---|

The Claims Administrator will work with you to determine what, if any, taxes are to be withheld or paid on any funds you receive from the Settlement. You should also feel free to consult your own tax professional for guidance. Class Counsel cannot provide you with any tax advice.

# YOUR RIGHTS AND OPTIONS

| 14. | What are my options for participating in the Settlement? |
|---|---|

You have three [four] options: (1) submit a Claim Form by <mark>deadline</mark>; (2) object to the Settlement; [(3) exclude yourself from the Settlement;] or (3[4]) do nothing.

| 15. | What am I giving up if I submit a Claim Form? |
|---|---|

If you submit a valid Claim Form, you will release from liability the Defendants in this action, together with their respective parents, subsidiaries, officers, directors, employees, contractors, shareholders, attorneys, agents, representatives, insurers, host families, and affiliates, expressly, but without limitation, including recruiting affiliates named and unnamed in the course of this lawsuit for those Defendants who use the services of others to identify, recruit and/or screen au pair candidates (the "Released Parties"). That release will cover any and all causes of action, judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each a "Claim"), known or unknown, arising on or before any judgment issues in this lawsuit, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in this lawsuit, whether any such Claim was or could have been asserted by you on your own behalf or on behalf of others. However, your release does not extend to claims or potential claims that you may possess against your host family or families if such claims are (i) unrelated to the Claims asserted in this lawsuit or (ii) unrelated to host family obligations under the federal Au Pair Program requirements, *e.g.*, compensation, hours, education, or services required. This is only a summary of the release to which you will be bound; to review the full release, please visit the Claims Administrator's website, <mark>www.website.com</mark>, where you can review the Settlement Agreement in full.

| 16. | What happens if I do nothing at all? |
|---|---|

If you do nothing, you will receive no payment from the Settlement, **and** you will release your claims against the Defendants, as summarized in Question 15. This is because by doing nothing,

you will continue to be a member of the Class Action, including any classes you are part of, and if the Court approves the Settlement, you will not be able to sue, or continue to sue, any Defendant about the legal claims that are the subject of this lawsuit.  This also means that if you do nothing, you will be legally bound by the orders and judgments the Court issues in this case.

## [17.  How do I exclude myself from the Settlement?

Au pairs who were sponsored by Defendant AuPairCare, Inc. (from January 1, 2009 through October 28, 2018) and au pairs sponsored by any Defendant in 2017 and 2018 may still exclude themselves from the Class Action, and the Settlement.

To ask to be excluded, you must send an "Exclusion Request" form to the Claims Administrator. You may do so by email, mail, or online, no later than **Month 00, 0000.** You may complete an Exclusion Request Form directly on the www.website.com website.  You may also obtain an Exclusion Request form on the class website, www.wesbite.com and mail the form to Beltran v. Interexchange, P.O. Box 91345, Seattle, WA 98111 by date. Or you may exclude yourself by mailing a letter to the Claims Administrator stating that you want to be excluded from *Beltran v. Interexchange*.  In the letter, be sure to include your name and address, and sign the letter and send it to: Beltran v. Interexchange, P.O. Box 91345, Seattle, WA 98111.  If you submit your own letter, or use the Exclusion Request form, you **must** indicate which of the individual classes listed in Question XX you are excluding yourself from and postmark the letter by Date. You may ask to exclude yourself entirely, or from only some classes.

If you choose to exclude yourself from the Class Action and Settlement, you will have no right to speak at the hearing about the Settlement or object to it, because the Settlement will no longer affect your rights.]

## 17 [18].  How do I object to the Settlement?

If you are a Class Member, you can comment on or object to the Settlement if you like or do not like any part of it.  You can give reasons why you think the Court should or should not approve it.  The Court will consider your views.

To comment or to object, you must send a letter to the Claims Administrator with your comments or objections to the proposed Settlement.  Be sure to include:

- Your name, address, telephone number, email address and signature;
- If you object to the Settlement, a detailed list of any other objections that you or your lawyer have made to any class action settlements submitted to any court in the United States in the previous five (5) years; and
- A detailed statement of your comments or objections, including: whether your objection applies only to you, to a subset of the Class, or the entire Class; the grounds for your objections; and supporting documents, if any.

**If you object to the Settlement, you should still submit a Claim Form**.  If the Court approves the settlement, you will only participate in the proceeds if you have submitted a Claim Form.

You do not need to attend or speak at the Fairness Hearing (described in Question 12) for your comments or objections to be considered.  If you would like to speak at the Fairness Hearing, you must add to your letter a statement indicating such, for example, by stating "This is my Notice of Intention to Appear at the Fairness Hearing in *Beltran v. Interexchange*."

If you wish for the Court to consider your comments or objections, you must submit the comments or objections, along with a request to speak at the Fairness Hearing (if any), postmarked no later than **Date** (or received by the Claims Administrator by that date if  sent by e-mail) to the following address:

JND Legal Administration
P.O. Box 91345
Seattle, WA 98111
info@email.com

| [19.  What is the difference between objecting and excluding? |
|---|

Objecting is telling the Court that you don't like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.]

# THE LAWYERS REPRESENTING YOU

| 18 [20].  Who represents me in this case? |
|---|

The Court-appointed attorneys from Boies Schiller Flexner LLP, of New York, NY, and Towards Justice, of Denver, CO, represent the au pairs in the Class and Collective Actions. Together they are "Class Counsel."  More information about each law firm, their practices, and their lawyers is available at www.bsfllp.com and www.towardsjustice.org.

| 19 [21].  Should I get my own lawyer? |
|---|

You do not need to hire your own lawyer because Class Counsel is working on your behalf.  But, if you want your own lawyer, you are entitled to have one.  However, it will be your responsibility to pay that lawyer.  For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

| 20 [22].  How will the lawyers be paid? |
|---|

Class Counsel will ask the Court to approve at the Fairness Hearing payment from the QSF of out-of-pocket costs and expenses, which includes all the costs of litigating the lawsuit and administering the settlement.  Class Counsel will also ask the Court to approve payment of

attorneys' fees of 35% percent (or $22,925,000) of the QSF.  These fees are intended to compensate Class Counsel for investigating the facts, litigating the case extensively over four years (including through any future appeals), and negotiating and administering the $65,500,000 Settlement.

# THE FAIRNESS HEARING

| 21 [23].  When and where will the Court decide whether to approve the Settlement? |
|---|

The Court will hold a Fairness Hearing on **DATE at TIME** in Courtroom A602 at the United States District Court for the District of Colorado, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.

At this hearing, the Court will consider the Settlement and determine whether it is fair, reasonable, and adequate.  If there are written comments or objections, the Court will consider them.  The Court will decide whether to allow people who have raised objections or comments to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement. We do not know how long this decision will take.  Also, the Court may reschedule the Fairness Hearing or change any of the deadlines described in this Notice.  Be sure to check the Claims Administrator's website, www.website.com, for news of any such changes.

| 22 [24].  Do I have to come to the Fairness Hearing? |
|---|

No.  Class Counsel will be present at the Fairness Hearing to answer any questions the Court may have.  You are welcome to come at your own expense.  If you send comments or objections to the Settlement, you don't have to come to Court to talk about it.  As long as you mailed, faxed, or emailed your written comments or objections on time, the Court will consider them.  You may also pay your own lawyer to attend, but it is not required.

# GETTING MORE INFORMATION

| 23 [25].  Are more details available? |
|---|

Yes.  This Notice only summarizes the Settlement.  More details about the Settlement are in the proposed Settlement Agreement itself, which you can view or print at www.website.com.  There you will also find more information about the lawsuit, including a Claim Form, important Court decisions, and updates on the status of the Settlement.  Also, if you are still not sure whether you are included in the Settlement, or have other questions about how the Settlement will be administered, you can call or write to the Claims Administrator: 1-800-000-0000, info@email.com.

# Exhibit 1

Case No. 1:14-cv-03074-CMA-KMT Document 1250-2 Filed 01/19/22 USDC Colorado Page 64 of 86

## AU PAIR CLASS & COLLECTIVE ACTION

## SETTLEMENT CLAIM FORM

In order to receive your portion of the Settlement, you **must** complete this Claim Form.  Please answer the questions to the best of your knowledge and recollection.  You do **not** need to submit any additional documentation at this time.  However, the Claims Administrator may reach out to you if they require any additional information to process your claim.

Please read the Notice of Proposed Settlement of Class and Collective Action, Fairness Hearing, and Right to Appear ("Notice."). The Notice was sent to you along with this Claim Form and is also available at [www.website.com].  The Notice, and the Claims Administrator's website, [www.website.com], contain more information about your rights and options and may be useful to you in deciding whether to submit this Claim Form.

Completed Claim Forms must be sent to the Claims Administrator either by email as a PDF attachment to [info@email.com] or by mail to:

[Beltran v. InterExchange
c/o JND Legal Administration
P.O. Box 91345
Seattle, WA  98111]

Claim Forms can also be submitted online at the class website, [www.website.com].

## YOUR CLAIM FORM MUST BE SUBMITTED ELECTRONICALLY OR POSTMARKED BY [DEADLINE]

NOTE: This Claim Form has six pages.  Please provide ALL of the information requested.  If you do not complete all sections of the form, your request may be rejected.

## 1.  CONTACT INFORMATION

CURRENT FULL NAME (please print): _____

ADDRESS: _____

_____

CITY: _____ STATE/PROVINCE: _____

POSTAL CODE: _____ COUNTRY: _____

TELEPHONE NUMBER (with country code):  + (_____) _____

EMAIL ADDRESS: _____

SOCIAL MEDIA CONTACT: _____

If your name has changed since you began working as an au pair, please also provide your former name(s):

ALTERNATIVE NAME(S) (please print): _____

## 2.  FIRST AU PAIR PLACEMENT

Select the sponsor for your host family placement family from the list below.  If you had more than one host family placement, select the sponsor for your first host family placement (check only one):

☐  20/20 Care Exchange, Inc., d/b/a The International Au Pair Exchange

☐  A.P.E.X. American Professional Exchange LLC, d/b/a ProAuPair

☐  Agent Au Pair

☐  American Cultural Exchange LLC, d/b/a Go Au Pair, and GoAuPair Operations, LLC

☐  American Institute for Foreign Study, d/b/a Au Pair in America

☐  APF Global Exchange NFP, d/b/a Aupair Foundation

☐  Au Pair International, Inc.

☐  AuPairCare Inc.

☐  Cultural Care, Inc., d/b/a Cultural Care Au Pair

☐  Cultural Homestay International

☐  EurAuPair Intercultural Child Care Programs

☐  Expert Group International Inc., d/b/a Expert AuPair

☐  Great AuPair, LLC

☐  InterExchange Inc.

☐  USAuPair, Inc.

(i)  Please provide the dates for the **first** host family placement you had with the au pair sponsor you checked.

START DATE:        (Day) _____    (Month) _____    (Year)_____

END DATE:          (Day) _____    (Month) _____    (Year)_____

(ii)  In what State did this placement take place?  _____

(iii)  Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐  Yes          ☐  No

(iv)  If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

## 3.  ADDITIONAL PLACEMENTS

Complete this section only if you had more than one au pair placement (i.e., more than one host family).  If you were re-matched to a host family other than your first, that counts as an additional au pair placement.  If you extended your au pair placement with one host family, and were never placed with a second host family, you do not need to complete this section, but the dates you provided in question 2 should reflect the extension.

(i)  Which agency from question 2 sponsored you for your **second** au pair placement?

SPONSOR NAME:   _____

(ii)   Please provide the dates for your **second** host family placement.

START DATE:          (Day) _____     (Month) _____     (Year)_____

END DATE:            (Day) _____     (Month) _____     (Year)_____

(iii)   In what State did this placement take place?   _____

(iv)   Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐     Yes                ☐     No

(v)   If you checked "No", please tell us how much you were typically paid by your host family each week: $ _____

* * *

(i)   Which agency from question 2 sponsored you for your **third** au pair placement?

SPONSOR NAME:   _____

(ii)   Please provide the dates for your **third** host family placement.

START DATE:          (Day) _____     (Month) _____     (Year)_____

END DATE:            (Day) _____     (Month) _____     (Year)_____

(iii)   In what State did this placement take place?   _____

(iv)   Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐     Yes                ☐     No

(v)   If you checked "No", please tell us how much you were typically paid by your host family each week: $ _____

* * *

Please use the attached placement form to list any additional placements.

## 4.   CERTIFICATION

I certify that the information provided in this form is true and accurate to the best of my knowledge.

SIGNATURE: _____   DATE: _____

## ADDITIONAL AU PAIR PLACEMENTS

Please use this form if you had **more than three (3)** au pair placements.

(i)     Which agency from question 2 sponsored you for your **fourth** au pair placement?

SPONSOR NAME:   _____

(ii)    Please provide the dates for your **fourth** host family placement.

START DATE:        (Day) _____     (Month) _____     (Year)_____

END DATE:          (Day) _____     (Month) _____     (Year)_____

(iii)   In what State did this placement take place?   _____

(iv)    Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐   Yes              ☐   No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

\* \* \*

(i)     Which agency from question 2 sponsored you for your **fifth** au pair placement?

SPONSOR NAME:   _____

(ii)    Please provide the dates for your **fifth** host family placement.

START DATE:        (Day) _____     (Month) _____     (Year)_____

END DATE:          (Day) _____     (Month) _____     (Year)_____

(iii)   In what State did this placement take place?   _____

(iv)    Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐   Yes              ☐   No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

\* \* \*

4

(i)    Which agency from question 2 sponsored you for your **sixth** au pair placement?

       SPONSOR NAME: _____

(ii)   Please provide the dates for your **sixth** host family placement.

       START DATE:        (Day) _____    (Month) _____   (Year)_____

       END DATE:          (Day) _____    (Month) _____   (Year)_____

(iii)  In what State did this placement take place? _____

(iv)   Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

                    ☐    Yes             ☐    No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

                              *   *   *

(i)    Which agency from question 2 sponsored you for your **seventh** au pair placement?

       SPONSOR NAME: _____

(ii)   Please provide the dates for your **seventh** host family placement.

       START DATE:        (Day) _____    (Month) _____   (Year)_____

       END DATE:          (Day) _____    (Month) _____   (Year)_____

(iii)  In what State did this placement take place? _____

(iv)   Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

                    ☐    Yes             ☐    No

If you checked "No", please tell us how much you were typically paid by your host family each week: $_____

                              *   *   *

(i)    Which agency from question 2 sponsored you for your **eighth** au pair placement?

       SPONSOR NAME: _____

(ii)   Please provide the dates for your **eighth** host family placement.

       START DATE:        (Day) _____    (Month) _____   (Year)_____

       END DATE:          (Day) _____    (Month) _____   (Year)_____

5

(iii)   In what State did this placement take place? _____

(iv)   Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐   Yes          ☐   No

If you checked "No", please tell us how much you were typically paid by your host family each week: $ _____

* * *

(i)   Which agency from question 2 sponsored you for your **ninth** au pair placement?

SPONSOR NAME: _____

(ii)   Please provide the dates for your **ninth** host family placement.

START DATE:      (Day) _____    (Month) _____    (Year)_____

END DATE:        (Day) _____    (Month) _____    (Year)_____

(iii)   In what State did this placement take place? _____

(iv)   Were you typically paid a stipend of $195 to $200 per week by your host family during this placement?

☐   Yes          ☐   No

If you checked "No", please tell us how much you were typically paid by your host family each week: $ _____

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
     and those similarly situated,

     Plaintiffs,

v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GOAUPAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR,
GOAUPAIR OPERATIONS, LLC, DBA GOAUPAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

     Defendants.

---

## ORDER GRANTING PRELIMINARY APPROVAL OF
## PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT

---

Having considered Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement, this Court preliminarily approves the parties' proposed settlement.

The Court previously found that this matter meets the requirements for class certification under Federal Rule of Civil Procedure 23, and ordered that Class Members receive notice and an opportunity to exclude themselves from the class action.  (Doc. ## 828, 1057.)  The Court has also previously conditionally certified Fair Labor Standards Act ("FLSA") classes as to certain Defendants, and ordered that au pairs sponsored by those Defendants be provided with notice and the opportunity to opt-in to the collective action.  (Doc ## 525, 539, 569.)

This Court now finds that it may preliminarily approve the parties' proposed settlement, as it is fair, adequate, and reasonable, and because the parties reached their proposed agreement as a result of intensive, non-collusive, arm's-length negotiations.  *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) ("In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate.").

For the FLSA collective actions, it is necessary for the Court to finally certify the conditionally certified FLSA classes.  *See Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1102-03 (10th Cir. 2001) (outlining two-stage FLSA certification process).  At the time of the final settlement approval hearing, the Court will also review the settlement for fairness under the FLSA and for final certifications.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (requiring court approval of FLSA settlement); *Baker v. Vail Resorts Mgmt. Co.,* No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014) (same).  To that end, the Court orders that the

Plaintiffs will move for final certification of the FLSA classes together with their motion for final approval of the settlement.

This Court will hold a final hearing on the settlement (the "Fairness Hearing") on _____ ____, 2019, at _____, at the United States District Court for the District of Colorado, Alfred A. Arraj Courthouse, 901 19th Street, Denver, CO 80294, to determine whether this Court should finally approve the parties' proposed settlement, and to resolve all related matters.

Attendance by FLSA opt-in plaintiffs and Class Members at the Fairness Hearing is not necessary. They need not appear at the hearing or take any other action to indicate their approval of the proposed settlement. Class Members wishing to be heard are, however, required to appear at the Fairness Hearing or to submit an objection in accordance with the Settlement Notice described below. The Fairness Hearing may be postponed, adjourned, transferred, or continued without further notice to the Class Members.

Submissions by the parties, including memoranda in support of the proposed settlement, responses to any objections, petitions for attorney's fees and reimbursement of costs and expenses by Class Counsel, shall be filed with the Court no later than 21 days prior to the Fairness Hearing, *i.e.*, **no later than** _____. If reply papers are necessary, they are to be filed no later than seven (7) days prior to the Fairness Hearing.

This Court approves, as to form and content, the Notice of Proposed Settlement of Class and Collective Action, Fairness Hearing, and Right to Appear ("Settlement Notice"). The Court also approves JND Legal Administration as the Claims Administrator.

This Court finds that the proposed Settlement Notice, as reflected in the parties' Settlement Agreement and exhibits thereto, meets the requirements of due process under the Constitution and Federal Rule of Civil Procedure 23(e), that it is the best practicable notice under the circumstances, and that it constitutes due and sufficient notice to all persons entitled to notice of the class action settlement.

This Court finds that the proposed Settlement Notice is adequate and will give all Class Members sufficient information to enable them to make informed decisions as to the parties' proposed settlement, and the right to object to, or opt-out of it (where applicable). *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("[O]ur precedent focuses upon whether the district court gave 'the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'") (quoting *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001)).

The Court therefore orders that notice be disseminated by mail, e-mail, or text message depending on what contact information is available for each au pair. The parties may agree on the language for any short-form e-mail or text message notice, so long as the communication directs the Class Members to where they can find the full Settlement Notice and, in the case of e-mail, attaches the full Settlement Notice.

In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ("CAFA"), the Claims Administrator will serve the Settlement Notice and any other documents required by the CAFA, on the United States Attorney General and the Attorney Generals for the States where Class Members reside, unless such service is already completed at the time this order is issued.

Any Class or Collective Action Member who wishes to participate in the settlement must submit a valid claim form to the Claims Administrator no more than **ninety days** after the Settlement Notice is sent.

Any Class Member who is eligible for exclusion because they were sponsored by Defendant AuPairCare, Inc. (from January 1, 2009 through October 28, 2018) or by any Defendant in 2017 and 2018, and who wishes to be excluded from the class action settlement must do so no more than **ninety days** after the Settlement Notice is sent. To be excluded, a Class Member must return the Exclusion Request Form (attached to the Settlement Notice) or otherwise submit a written request to the Claims Administrator, which includes his or her:

        a. Full name;

        b. Address;

        c. Telephone number; and

        d. A statement indicating that he or she wishes to be excluded from the class action settlement.

Any Class Member who is eligible for exclusion and submits a valid and timely request for exclusion will neither be bound by the terms of the Settlement Agreement, nor receive any of the benefits of the Settlement Agreement.

Any Class Member who wishes to comment on or object to the proposed settlement must mail or e-mail a written notice of objection to the Claims Administrator, postmarked no more than **ninety days** after the Settlement Notice is sent. The objection should include the Class Member's name, address, telephone number, e-mail address and signature; a detailed list of any other objections that the Class Member or his or her lawyer has made to any class action settlements submitted to any court in the

United States in the previous five (5) years; a detailed statement of the Class Member's comments or objections, including: whether the objection applies only to the individual Class Member, to a subset of the Class, or the entire Class; the grounds for the objections; and supporting documents, if any.  Plaintiffs will be responsible for promptly filing and serving on all parties any objections or comments received with the Court. Class Members who do not submit a valid and timely objection will be barred from seeking review of the proposed class action settlement by appeal, or otherwise (to the extent that such review would otherwise be permitted).

This order should not be construed as, or deemed to be, evidence of a presumption, implication, concession, or admission by any Defendant concerning (1) any alleged liability, fault, or wrongdoing; or (2) the appropriateness of any measure of alleged loss or damages.

If the parties' Settlement Agreement is terminated pursuant to its terms, or if this Court does not finally approve the parties' proposed settlement, Plaintiffs and Defendants will be returned to the position they were in prior to execution of their Settlement Agreement, with the same *status quo* rights and interests as they had prior to execution their Settlement Agreement.

The Court retains continuing and exclusive jurisdiction over the action to consider all further matters arising out of or connected with the settlement, including the administration and enforcement of the Settlement Agreement.

The Court sets the following schedule:

| Event | Date |
|---|---|
| **Settlement Notice Sent** | [within 7 days of Preliminary Approval Order entry] |
| **Deadline to Submit Claim Form** | [90 days after Settlement Notice Sent] |

| Deadline to Submit Exclusion Form | [90 days after Settlement Notice Sent] |
|---|---|
| Deadline to Submit Comments or Objections | [90 days after Settlement Notice Sent] |
| Motion for Final Approval and Attorneys' Fees | [21 days before Fairness hearing] |
| Responses to Comments or Objections | [21 days before Fairness hearing] |
| Replies to Motions/Responses (if any) | [7 days before Fairness hearing] |
| Fairness Hearing | [at least 120 days after Settlement Notice Sent] |

Dated: January ___, 2019

**BY THE COURT:**

_____
Hon. Christine M. Arguello
United States District Judge

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN,
LUSAPHO HLATSHANENI,
BEAUDETTE DEETLEFS,
ALEXANDRA IVETTE GONZALEZ,
JULIANE HARNING,
NICOLE MAPLEDORAM,
LAURA MEJIA JIMENEZ,
SARAH CAROLINA AZUELA RASCON,
CATHY CARAMELO,
LINDA ELIZABETH,
GABRIELA PEREZ REYES,
        and those similarly situated,

        Plaintiffs,
v.

INTEREXCHANGE, INC.,
USAUPAIR, INC.,
GREATAUPAIR, LLC,
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR,
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS,
CULTURAL HOMESTAY INTERNATIONAL,
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR,
AUPAIRCARE INC.,
AU PAIR INTERNATIONAL, INC.,
APF GLOBAL EXCHANGE, NFP, DBA AUPAIR FOUNDATION,
AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. DBA AU PAIR IN AMERICA,
ASSOCIATES IN CULTURAL EXCHANGE DBA GO AU PAIR,
AMERICAN CULTURAL EXCHANGE, LLC, DBA GO AU PAIR,
GO AU PAIR OPERATIONS, LLC, DBA GO AU PAIR,
AGENT AU PAIR,
A.P.EX. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR, and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE,

        Defendants.

---

**FINAL ORDER AND JUDGMENT**

---

On _____, the parties reached a settlement agreement as a result of intensive, non-collusive, arm's-length negotiations.

On _____, Plaintiffs filed a Motion for Preliminary Approval of Class and Collective Action Settlement.

On _____, the Claims Administrator served the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715.

On _____, this Court granted Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement.

On _____, the Claims Administrator sent the Notice of Proposed Settlement of Class and Collective Action, Fairness Hearing, and Right to Appear ("Settlement Notice"), as ordered.

On _____, Plaintiffs filed their motion(s) for final approval, final certification of FLSA collective actions, and for attorneys' fees.

On _____, this Court held a fairness hearing regarding the parties' class and collective action settlement.

1.    Having considered Plaintiff's motion, this Court finally approves the class and collective action settlement.  This Court also finally certifies the FLSA classes that were conditionally certified in this action.  (*See* Doc. ## 525, 539, 569.)

2.    Any term with initial capitalization that is not defined in this Order and Final Judgment shall have the meaning provided in the Settlement Agreement.

3.    The Court confirms that it has jurisdiction over this matter and the parties to it.

4.    This Court approves the terms of the Settlement Agreement, and the Plan of Allocation, the material terms of which include, but are not limited to:

2

a. Class Counsel will establish a Qualified Settlement Fund ("QSF");

b. Defendants will pay their respective shares of the settlement amount, which totals $65,500,000, into the QSF;

c. Within thirty (30) days after the Effective Date, and going forward, Defendants (and their agents, where applicable) will provide a statement to host families and au pairs to the effect that the weekly au pair stipend is a minimum payment requirement and host families and au pairs are free to agree to compensation higher than the legally applicable minimum.

d. From the QSF, Class Counsel will receive attorneys' fees of $_____, representing __% of the QSF; each of the eleven class representatives will receive a service award of $5,000; each of the FLSA deponents will receive a service award of $1,000 (unless they are a class representative); and each FLSA opt-in plaintiff will receive $100 (unless they were deposed). The awards to class representatives, FLSA deponents, and FLSA opt-ins shall be in addition to any funds they receive as members of the Rule 23 Class Action;

e. Class Counsel's litigation expenses, as well as Expenses for administration of the settlement and sending of notice pursuant to 28 U.S.C. § 1715 will be deducted from the QSF;

f. The remainder of the QSF will be distributed to Class Members, as detailed in the Plan of Allocation;

g. Class Members who did not exclude themselves are bound by the terms of the Settlement Agreement, including all releases therein, and their claims are dismissed with prejudice.

5. This Court additionally finds that the Settlement Notice, and the distribution thereof, satisfied the requirements of due process under the Constitution and Federal Rule of Civil Procedure 23(e), that it was the best practicable under the circumstances, and that it constitutes due and sufficient notice to all persons entitled to notice of class action settlement. *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005).

6. This Court similarly finds that the Settlement Notice was adequate and gave all Settlement Class Members sufficient information to enable them to make informed decisions as to the parties' proposed settlement, and the right to object to, or opt-out of it (where applicable).

7. This Court additionally finds that the parties' settlement, on the terms and conditions set forth in their Settlement Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the Settlement Class Members. *See* Fed. R. Civ. P. 23(e); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) ("In assessing whether the settlement is fair, reasonable and adequate the trial court should consider: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable."). Moreover, this standard substantially overlaps with the standard that courts apply in

deciding whether to approve settlements under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").  *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016).  As such, the Court also finds that the parties' settlement is fair and reasonable under the FLSA.

8.  This Court further finds that the Settlement Class Members were given a fair and reasonable opportunity to object to the settlement.  [__#] of Settlement Class Members objected to the settlement.  And the class members who made valid and timely requests for exclusion are excluded from the class and settlement and are not bound by this order.  There are [__#] such persons, and they are listed on attached Exhibit A, along with the Defendant(s) that sponsored their J-1 visa(s).

9.  This Order is binding on all Settlement Class Members, except those individuals who validly and timely excluded themselves from the class or from the settlement.

10.  This action is dismissed with prejudice as to all other issues and as to all parties and claims.

11.  Effective upon the Effective Date, Released Parties, as defined in the next sentence, shall be released and forever discharged by all Settlement Class Members (the "Releasing Parties") from any and all causes of action, judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each a "Claim"), known or unknown, arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in the Litigation,

5

whether any such Claim was or could have been asserted by any Releasing Party on her or his own behalf or on behalf of other Persons. Released Parties means the Defendants in this action, together with their respective parents, subsidiaries, officers, directors, employees, contractors, shareholders, attorneys, agents, representatives, insurers, host families, and affiliates, expressly, but without limitation, including recruiting affiliates named and unnamed in the course of this Litigation for those Defendants who use the services of others to identify, recruit and/or screen au pair candidates. Notwithstanding the foregoing, this Release shall not extend to claims or potential claims that any au pair may possess against her or his host family or families if such claims are (i) unrelated to the Claims asserted in the Litigation or (ii) unrelated to host family obligations under the federal Au Pair Program requirements, e.g., compensation, hours, education, or services required.

12.     Except as set forth in the Settlement Agreement, this Order and Final Judgment and the Settlement Agreement shall not be offered or received against the Parties or Released Parties and their counsel for any purpose, and in particular:

a. do not constitute, and shall not be offered or received against any Parties or Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Released Parties with respect to the truth of any fact alleged by Plaintiffs or any other Settlement Class Member or the validity of any Claim that has been or could have been asserted in the Litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault, or wrongdoing of the Released Parties;

6

b.  do not constitute, and shall not be offered or received against any
    Parties or Released Parties as evidence of a presumption,
    concession, or admission of any fault, misstatement, or omission with
    respect to any statement or written document approved or made by
    Released Parties, or against the Plaintiffs, or any other Settlement
    Class Member as evidence of any infirmity in the Claims or defenses
    that have been or could have been asserted in the Litigation;

c.  do not constitute, and shall not be offered or received against any
    Parties or Released Parties, as evidence of a presumption,
    concession, or admission with respect to any liability, damages,
    negligence, fault, infirmity, or wrongdoing, or in any way referred to
    for any other reason against Released Parties, in any other civil,
    criminal, or administrative action or proceeding, other than such
    proceedings as may be necessary to effectuate the provisions of this
    Agreement; and

d.  do not constitute, and shall not be construed against any Parties or
    Released Parties, as an admission or concession that the
    consideration to be given hereunder represents the amount which
    could be or would have been recovered after trial.

13.     This Court retains continuing and exclusive jurisdiction over the parties
and all matters relating this matter, including the administration, interpretation,
construction, effectuation, enforcement, and consummation of the settlement and this
Order.

Dated: _____, 2019

**BY THE COURT:**

_____
Hon. Christine M. Arguello
United States District Judge