IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA-KMT

JOHANA PAOLA BELTRAN; and those similarly situated,

Plaintiffs,

v.

INTEREXCHANGE, INC.;
USAUPAIR, INC.;
GREATAUPAIR, LLC;
EXPERT GROUP INTERNATIONAL INC., DBA EXPERT AUPAIR;
EURAUPAIR INTERCULTURAL CHILD CARE PROGRAMS;
CULTURAL HOMESTAY INTERNATIONAL;
CULTURAL CARE, INC. D/B/A CULTURAL CARE AU PAIR;
AUPAIRCARE, INC.;
AU PAIR INTERNATIONAL, INC.;
APF GLOBAL EXCHANGE, NFP;
AMERICAN INSTITUTE FOR FOREIGN STUDY DBA AU PAIR IN AMERICA;
AMERICAN CULTURAL EXCHANGE, LLC, DBA GOAUPAIR;
AGENT AU PAIR;
A.P.E.X. AMERICAN PROFESSIONAL EXCHANGE, LLC DBA PROAUPAIR; and
20/20 CARE EXCHANGE, INC. DBA THE INTERNATIONAL AU PAIR EXCHANGE

Defendants.

---

## AUPAIRCARE, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR INTERPRETATION OF CLASS ACTION SETTLEMENT

---

Defendant AuPairCare, Inc. ("AuPairCare") by and through their attorneys of

Gordon & Rees, hereby responds in opposition to Plaintiff's Motion for Interpretation of

Class Action Settlement.

# INTRODUCTION

This case arises from a class action against 17 sponsoring organization defendants responsible for implementing the J-1 Visa/*Au Pair* program under the Department of State ("DOS") regulations. The plaintiffs were granted class action status pursuant to Federal Rule of Civil Procedure Rule 23, and collective action status for purposes of the Fair Labor Standards Act. The plaintiffs alleged numerous violations of state and federal law, largely arising out of violations of the DOS regulations, including but not limited to the $197.75 weekly stipend amount promulgated by DOS regulations.

On July 18, 2019, this Court entered an "Order Granting Final Approval of Class and Collective Action Settlement" related to a Settlement Agreement the parties executed on January 9, 2019. [Doc. 1229]. Pursuant to the Settlement Approval Order, the settlement class members "released and forever discharged" the:

> Released Parties [from] any and all causes of action, judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities, and demands of whatever kind or character (each a 'claim'), known or unknown, arising on or before the Effective Date [July 18, 2019] that are or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, course of conduct, representations, omissions, circumstances or other matters referenced in the Litigation, whether any such Claim was or could have been asserted by any Releasing Party on her or his own behalf or on behalf of other Persons. Settlement Approval Order [Doc. 1229], ¶ 7.

The "Settlement Class" was comprised of the eighteen classes and subclasses certified by the Court in its "Order Granting in Part and Denying in Part Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel." [Doc. 828]. In Section IV of the Class Certification Order, the Court certified: (i) the "Antitrust Class" as being

"All persons sponsored by any Defendant to work as a standard *au pair* in the United States pursuant to a J-1 Visa; and (ii) the "RICO Class" as comprised of "All persons sponsored by Defendants Au Pair Care in America (American Institute for Foreign Study), AuPairCare, Inc., Cultural Care, Inc. or InterExchange, Inc., to work as a standard *au pair* in the United States pursuant to a J-1 Visa."

Michaele C. Samuel and Adam Ishaeik ("the Samuels") acted as host family to Sandra Peters from June 16, 2016 through March 11, 2017. The sponsoring organization for Ms. Peters' assignment with the Samuels was American Institute for Foreign Study d/b/a Au Pair in America. The Samuels acted as host family to Tatiana Cuenca-Vidarte[1] from November 17, 2017 through September 28, 2018. The sponsoring organization for Ms. Cuenca-Vidarte's assignment with the Samuels was AuPairCare, Inc. Both Au Pair in America and AuPairCare, Inc. are defendants in this case. As such, both Au Pair in America and AuPairCare, Inc. are parties to the *Beltran* class action settlement agreement and subject to this Court's July 18, 2019 Order Granting Final Approval of Class and Collective Action Settlement. Doc. 1229.

On June 30, 2020, *Beltran* class members Peters and Cuenca-Vidarte filed a lawsuit in the District of Maryland, asserting claims related to their *au pair* assignments with the Samuels. The Maryland claims generally relate to violations of state and federal wage and hour laws, as well as violations of host family obligations under the federal *au pair* regulations and the host family agreements, which mirror the federal regulations.

---

[1] Throughout this response, Ms. Peters and Ms. Cuenca-Vidarte are collectively referred to as the "Maryland *au pairs.*"

Indeed, the Maryland Court generally described the allegations as concerning "heavy non-childcare related work," "restrictions on access to food," not being allowed "to use the kitchen," limiting shower time, requiring *au pairs* to "re-do cleaning tasks," forbidding use of the family's car, preventing use of the *au pairs'* vacation time, monitoring the *au pair's* "every move through a network of surveillance cameras placed throughout the house and front and back yards," and berating and reprimanding an *au pair* if she failed to comply with their "highly regimented daily schedule of childcare and house cleaning." Exhibit A, November 30, 2021 Opinion. The Maryland Court further acknowledged the Maryland *au pairs'* primary allegations, which relate to violations of federal wage and hour law. *Id.*

The Samuels filed a Motion to Dismiss the Maryland *au pairs'* claims, seeking to enforce the *Beltran* settlement agreement, which includes a release of claims against host families. The Maryland Court granted the Samuels' Motion to Dismiss on September 30, 2022. The Maryland Court held the Maryland *au pairs* are "indisputably Settlement Class Members." Exhibit 1 to Plaintiff's Motion, September 30, 2022 Opinion. The Maryland Court also held that, as to whether the Maryland *au pairs'* claims fall within or outside the *Beltran* settlement, this Court retained "continued and exclusive jurisdiction" over that issue. As a result of these holdings, the Maryland Court dismissed the Maryland *au pairs'* claims against the Samuels.

Class counsel, on behalf of all Settlement Class Members, including the Maryland *au pairs*, filed a Motion for Interpretation of the Settlement Agreement. Because the plain language of the Settlement Agreement clearly encompasses most, if not all, of the

Maryland *au pairs'* claims, and because the Settlement Agreement expressly releases claims against host families such as the claims asserted by the Maryland *au pairs*, the Court should find the Maryland *au pairs'* claims are barred by the *Beltran* settlement.

**ARGUMENT**

**A.    The plain language of the settlement agreement bars the Maryland plaintiffs' claims.**

**1. The Maryland *au pairs* are Settlement Class Members.**

The Maryland Court correctly found Ms. Peters and Ms. Cuenca-Vidarte are Settlement Class Members. Each is a member of the Antitrust Class, having been sponsored by Defendants Au Pair in America and AuPairCare, Inc. to work as standard *au pairs* in the United States under a J-1 Visa. Based on this same criteria, each is also a member of the RICO Class.

The Final Order provides that "[t]his Order is binding on all Settlement Class Members, except those individuals who validly and timely excluded themselves from the class or from the settlement." Final Order and Judgment [Doc. 1187], ¶ 9. The Maryland *au pairs* did not argue or provide any evidence that they validly excluded themselves from the *Beltran* settlement. Finally, the Maryland *au pairs'* dates of service in 2016 through 2018 are clearly within the time period covered by the class action settlement. Therefore, Ms. Peters and Ms. Cuenca-Vidarte are indisputably Settlement Class Members.

**2.  The Maryland *au pairs'* claims are Released Claims.**

The Settlement Agreement also operates as a release of most, if not all, of the Maryland *au pairs'* claims. "Issues involving the formation and construction of a purported

settlement agreement are resolved by applying state contract law even when there are federal causes of action in the underlying litigation." *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 Fed.Appx. 676, 682 (10th Cir. 2001). "Under Colorado law, the purpose of contract interpretation is to ascertain the intent of the parties by ensuring that contracts are construed 'consistently with the well-established principles of interpretation.'" *Taylor F. ex rel. Jon F. v. Arapahoe County School Dist. 5*, 954 F.Supp.2d 1197, 1202 (D. Colo. 2013) (quoting *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 973 (Colo. 2005)). The Court must examine the terms of the settlement agreement to determine the parties' intent. "If the terms of the agreement are unambiguous, 'the interpreting court's task is over' because 'in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence.'" *Taylor F.*, 954 F.Supp.2d at 1202 (quoting *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008)).

The Settlement Agreement contains the following unambiguous provisions relating to the releasing parties, the released parties, and the released claims under the agreement:

> The settlement class shall be comprised of the Classes already identified and defined by the existing Court Orders. For avoidance of doubt, those Classes are comprised of the eleven classes or subclasses certified in the Second Amended Order Granting Motion for Conditional Collective Action Certification (ECF No. 569), and the eighteen Classes or Subclasses certified in the Order Granting in Part and Denying in Part Plaintiffs' Motion for Rule 23 Class Certification and Appointment of Class Counsel (ECF No. 828), and subject to Court's Order on Statute of Limitations (ECF No. 1176). Exhibit 2 to Plaintiff's Motion, Settlement Agreement, Sec. III.A.2.

> Effective upon the Effective Date, Released Parties … shall be released and forever discharged by all Settlement Class Members (the "Releasing Parties") from any and all causes of action, judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities and

- 6 -

demands of whatever kind or character (each a "Claim"), known or unknown, arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in the litigation, whether any such Claim was or could have been asserted by any Releasing Party on her or his own behalf or on behalf of other Persons. Exhibit 2 to Plaintiff's Motion, Settlement Agreement, Sec. III.A.3.

Released Parties means the Defendants in this action, together with their respective parents, subsidiaries, officers, directors, employees, contractors, shareholders, attorneys, agents, representatives, insurers, host families, and affiliates, expressly, but without limitation, including recruiting affiliates named and unnamed in the course of this Litigation for those Defendants who use the services of others to identify, recruit and/or screen au pair candidates. Notwithstanding any other provision in this Agreement, however, this Release shall not extend to claims or potential claims that any au pair may possess against her or his host family or families if such claims are (i) unrelated to the Claims asserted in the Litigation or (ii) unrelated to host family obligations under the federal Au Pair Program requirements, e.g., compensation, hours, education, or services required. Exhibit 2 to Plaintiff's Motion, Settlement Agreement, Sec. III.A.4.

The Releasing Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true, with respect to the claims being released pursuant to this Agreement. Nevertheless, it is the intention of the Releasing Parties in executing this Agreement that they fully, finally, and forever settle and release all such matters, and all claims relating thereto, which exist or might have existed (whether or not previously or currently asserted in any action or proceeding) against the Released Parties. The Releasing Parties voluntarily waive and relinquish any and all rights to seek relief for unknown, unsuspected, or unanticipated claims or damages which the Releasing Parties may have under any applicable statutes or principles of law that limit the release of unknown, unsuspected, or unanticipated claims or damages…. Exhibit 2 to Plaintiff's Motion, Settlement Agreement, Sec. III.B.5.

As demonstrated by the provisions above, the only way for a Settlement Class Member to bring claims outside of *Beltran* is through the exception in Section III.A.4 of the Settlement Agreement, which disallows claims against a host family if such claims are either unrelated to the claims asserted in the *Beltran* litigation, or unrelated to host family

obligations under the *au pair* program requirements, such as compensation, hours, education, or services required. Regardless of the name or nature of the claims asserted, all of the allegations supporting Ms. Peters and Ms. Cuenca-Vidarte's claims arise out of the Samuels' obligations as a host family, and the *au pairs'* assertion that the Samuels failed to meet their obligations. To summarize, Ms. Peters and Ms. Cuenca-Vidarte allege "they routinely worked in excess of the 45 hours per week they were promised," they were "directed to perform work that was far beyond childcare and child-related tasks," and they were "cheated out of their hard-earned and legally mandated wages through manipulated contracts … in violation of federal and state minimum wage and overtime laws." Exhibit 4 to Plaintiff's Motion, First Amended Complaint, ¶ 7. These allegations all share a common theme – that the Samuels failed to meet their host family obligations under the *au pair* program requirements. Further, the damages the Maryland *au pairs* seek – compensatory damages for unpaid wages – are the type of damages the *Beltran* settlement covers. Ms. Peters and Ms. Cuenca-Vidarte's claims fall squarely within the Released Claims. As such, most, if not all, of their claims in the Maryland case are barred by the *Beltran* Settlement Agreement.

AuPairCare recognizes the FLSA, 29 U.S.C. § 216(b), requires that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." AuPairCare is unaware of whether Ms. Peters or Ms. Cuenca-Vidarte affirmatively opted-in to the FLSA collective action. Neither Ms. Peters nor Ms. Cuenca-Vidarte have provided any evidence or affidavit indicating they did not affirmatively opt-in

to the FLSA collective action. In the event either Ms. Peters or Ms. Cuenca-Vidarte did not affirmatively opt-in to the FLSA collective action, either may have a FLSA claim that falls outside the *Beltran* Settlement Agreement. In this event, the remainder of Ms. Peters and Ms. Cuenca-Vidarte's claims would remain barred by the Settlement Agreement.

### 3. The broad language of the relief concerning host family claims is permissible under the identical factual predicate test.

While the identical factual predicate doctrine limits a class representative's authority to release claims, the doctrine does not limit a class action settlement release to only those claims presented in the class action. "Under the identical factual predicate rule, 'a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 Fed.Appx. 752, 765 (10th Cir. 2020) (quoting *TBK Partners, Ltd. V. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)). "Under this principle, 'class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005)). "[A] court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint." *In re Corrugated Container Antitrust Litig.*, 643 F.3d 195, 221 (5th Cir. 1981) (quoting *Patterson v. Stovall*, 528 F.2d 108, 110 n.2 (7th Cir. 1976)), adopted by *Elna Sefcovic*, 807 Fed.Appx. at 765.

Consistent with the identical factual predicate doctrine, the Settlement Agreement explicitly waives and relinquishes "any and all rights to seek relief for unknown, unsuspected, or unanticipated claims or damages which the Releasing Parties may have under any applicable statutes or principles of law that limit the release of unknown, unsuspected, or unanticipated claims or damages[.]" Exhibit 2 to Plaintiff's Motion, Settlement Agreement, Sec. III.B.5. This includes claims such as the Maryland *au pairs'* claims related to the Samuels' compliance or non-compliance with their host family obligations under the J-1Visa/*au pair* regulations. Thus, most if not all of Ms. Peters and Ms. Cuenca-Vidarte's claims are also barred under the identical factual predicate doctrine.

## CONCLUSION

Ms. Peters and Ms. Cuenca-Vidarte are indisputably Settlement Class Members. As such, their claims in the Maryland case are governed by the *Beltran* Settlement Agreement. The *Beltran* Settlement Agreement releases claims in addition to the specific claims asserted in the *Beltran* litigation, including but not limited to claims against a host family arising from the host family's compliance or non-compliance with its regulatory obligations. The allegations in the Maryland *au pairs*' complaint relate entirely to the Samuels' regulatory obligations as a host family. As such, most, if not all, of the claims are barred by the *Beltran* Settlement Agreement. In the event Ms. Peters and/or Ms. Cuenca-Vidarte failed to affirmatively opt-in to the FLSA collective action, their FLSA claims may survive the *Beltran* settlement. The remainder of their claims, however, would remain barred.

WHEREFORE, Defendant AuPairCare, Inc. respectfully requests that the Court deny the Plaintiffs' Motion for Interpretation of the Settlement Agreement and find that Sandra Peters and Tatiana Cuenca-Vidarte's claims in the Maryland case are barred by the *Beltran* Settlement Agreement.

Respectfully submitted this 22nd day of December, 2022.

<u>s/ Thomas B. Quinn</u>
Thomas B. Quinn
Peggy E. Kozal
GORDON & REES
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
Fax: (303) 534-5161
tquinn@grsm.com
pkozal@grsm.com

***Attorneys for Defendant
AuPairCare, Inc.***

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system, which will send notification to all counsel referenced below, and/or sent via electronic mail on this the 22nd day of December, 2022 addressed to:

| | | |
|---|---|---|
| Sigrid S. McCawley<br>Sabria McElroy<br>Matthew L. Schwartz<br>Peter M. Skinner<br>Randall W. Jackson<br>Juan P. Valdivieso<br>BOIES SCHILLER & FLEXNER, LLP<br>smccawley@bsfllp.com<br>smcelroy@bsfllp.com<br>mlschwartz@bsfllp.com<br>pskinner@bsfllp.com<br>rjackson@bsfllp.com<br>srogriguez@bsfllp.com<br>jvaldivieso@bsfllp.com<br>*and*<br>Alexander N. Hood<br>TOWARDS JUSTICE – DENVER<br>alex@towardsjustice.org<br>***Attorneys for Plaintiffs*** | Brooke A. Colaizzi<br>Raymond M. Deeny<br>Heather F. Vickles<br>Alyssa L. Levy<br>SHERMAN & HOWARD, LLC<br>bcolaizzi@shermanhoward.com<br>rdeeny@shermanhoward.com<br>hvickles@shermanhoward.com<br>alevy@shermanhoward.com<br>***Attorneys for Defendant InterExchange, Inc.*** | William J. Kelly, III<br>Chanda M. Feldkamp<br>KELLY & WALKER, LLC<br>wkelly@kellywalkerlaw.com<br>cfeldkamp@kellywalkerlaw.com<br>***Attorneys for Defendant USAuPair, Inc.*** |
| Meshach Y. Rhoades<br>Martin J. Estevao<br>Vance Orlando Knapp<br>ARMSTRONG TEASDALE, LLP<br>mrhoades@armstrongteasdale.com<br>mestevao@armstrongteasdale.com<br>vknapp@armstrongteasdale.com<br>***Attorneys for Defendant GreatAuPair, LLC*** | Bogdan Enica<br>BOGDAN ENICA, ATTORNEY AT LAW<br>bogdane@hotmail.com<br>***Attorney for Defendant Expert Group International, Inc. d/b/a Expert AuPair*** | David B. Meschke<br>Martha L. Fitzgerald<br>Martine T. Wells<br>BROWNSTEIN HYATT FARBER SCHRECK, LLP<br>dmeschke@bhfs.com<br>mfitzgerald@bhfs.com<br>mwells@bhfs.com<br>***Attorneys for Defendant EurAupair InterCultural Child Care Programs*** |
| James E. Hartley<br>Adam A. Hubbard<br>Jonathan S. Bender<br>HOLLAND & HART, LLP<br>jhartley@hollandhart.com<br>aahubbard@hollandhart.com<br>jsbender@hollandhart.com<br>***Attorneys for Defendant Cultural Homestay International*** | Brian A. Birenbach<br>RIETZ LAW FIRM, LLC<br>brian@rietzlawfirm.com<br>*and*<br>Kathryn A. Reilly<br>Grace A. Fox<br>Natalie West<br>WHEELER TRIGG O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com | Kathryn A. Reilly<br>Grace A. Fox<br>Natalie West<br>WHEELER TRIGG O'DONNELL, LLP<br>reilly@wtotrial.com<br>fox@wtotrial.com<br>west@wtotrial.com<br>***Attorney for Defendant Agent Au Pair*** |

| | west@wtotrial.com<br>**Attorneys for Defendants Au Pair International, Inc.; American Cultural Exchange, LLC d/b/a GoAuPair** | |
|---|---|---|
| Lawrence L. Lee<br>Susan M. Schaecher<br>FISHER & PHILLIPS, LLP<br>llee@laborlawyers.com<br>sschaecher@laborlawyers.com<br><br>and<br><br>Joseph B. Cartafalsa<br>Robert M. Tucker<br>Stephen J. Macri<br>Joseph B. Cartafalsa<br>OGLETREE, DEAKINS<br>Stephen.macri@ogletree.com<br>Jopseh.cartafalsa@ogletree.com<br>**Attorneys for Defendants APF Global Exchange, NFP d/b/a Aupair Foundation; American Institute for Foreign Study d/b/a Au Pair in America** | Eric J. Stock<br>Gibson, Dunn & Crutcher LLP<br>estock@gibsondunn.com<br>mao@gibsondunn.com<br>**Attorneys for Defendant American Institute for Foreign Study d/b/a Au Pair in America**<br><br>Lawrence D. Stone<br>Kathleen E. Craigmile<br>NIXON SHEFRIN HENSEN OGBURN, P.C.<br>lstone@nixonshefrin.com<br>kcraigmile@nixonshefrin.com<br>**Attorneys for Defendants A.P.E.X. American Professional Exchange, LLC d/b/a ProAuPair; 20/20 Care Exchange, Inc. d/b/a The International Au Pair Exchange** | Joan A. Lukey<br>Robert M. Buchanan, Jr.<br>Michael T. Gass<br>Justin J. Wolosz<br>Lyndsey M. Kruzer<br>Kevin P. O'Keefe<br>CHOATE, HALL & STEWART, LLP<br>joan.lukey@choate.com<br>rbuchanan@choate.com<br>mgass@choate.com<br>jwolosz@choate.com<br>lkruzer@choate.com<br>kokeefe@choate.com<br>*and*<br>Diane R. Hazel<br>James M. Lyons<br>Jessica L. Fuller<br>LEWIS ROCA ROTHGERBER CHRISTIE LLP<br>dhazel@lrrc.com<br>jlyons@lrrc.com<br>jfuller@lrrc.com<br>**Attorneys for Defendant Cultural Care, Inc. d/b/a Cultural Care Au Pair** |

/s/ Karla M. Freeman
For Gordon & Rees