IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-03074-CMA

JOHANA PAOLA BELTRAN; et al.

        Plaintiffs,

v.

INTEREXCHANGE, INC.; et al.
        Defendants.

_____

**DEFENDANT CULTURAL CARE INC.'S RESPONSE TO MOTION FOR
INTERPRETATION OF CLASS ACTION SETTLEMENT**

_____

      Defendant Cultural Care, Inc. hereby responds to certain class members' Motion

for Interpretation of Class Action Settlement, ECF No. 1250 (the "Motion").

## INTRODUCTION

      This Motion has been filed by two former *au pairs* (the "MD Plaintiffs") who were

not sponsored by Cultural Care, and who make no allegations against Cultural Care.

Nevertheless, because they ask this Court to interpret the settlement agreement and

release, Cultural Care provides this response for the Court's consideration.

      The parties actively litigated this case ("*Beltran*")[1] for a number of years, before

they reached a settlement close to trial.  Defendants paid $65.5 million to the class and

agreed to non-monetary consideration, and class members who did not opt out agreed

---

[1] To be consistent with the Motion's terminology, Cultural Care refers to the instant case
as "*Beltran.*"

to a broad release of claims (the "Release"), which extended to sponsors and to host families.  Plaintiffs' allocation divided the settlement funds so that participating class members received a share calculated based on the federal minimum wage, an additional share if they were in states with a higher minimum wage, and additional shares in certain other circumstances.  As of February 11, 2021, Class Counsel reported that more than 89% of the settlement fund had been paid (ECF No. 1238) and Cultural Care assumes that by now, the funds have been fully distributed.

Despite the Release to which class members agreed in exchange for substantial consideration, the MD Plaintiffs argue that they may assert claims during the class period against host families for failure to pay minimum wage or overtime, failure to pay for all of their time, and related claims based on Au Pair Program requirements (collectively, the "MD Au Pair Program Claims").[2]  These claims and the allegations underlying them directly overlap with the claims and allegations that the class pursued and settled in *Beltran;* and, they fall squarely within the Release to which the class agreed, and this Court ordered, as part of the settlement.  Because class members cannot change their mind and pursue claims that they released, the Court should rule that the MD Plaintiffs are precluded from asserting the MD Au Pair Program Claims.

### STATEMENT OF FACTS

Plaintiffs filed *Beltran* in November 2014.  A full recounting of the procedural history is beyond the scope (and page limit) of this response, but Cultural Care

---

[2] The MD Plaintiffs also allege, in Count I of their First Amended Complaint, claims of forced labor or trafficking.  Cultural Care takes no position on those claims, and limits its arguments herein to the MD Au Pair Program Claims.

observes that the litigation of this multi-party case involved extensive motion practice on numerous issues, as well as wide-ranging discovery conducted throughout the world. As the litigation progressed, the Court decided a number of important issues.  Included among them were the conditional certification of Plaintiffs' FLSA collective action, and the certification of a number of Rule 23 classes and subclasses.

At the close of discovery, Defendants moved for summary judgment on all claims, and Plaintiffs moved for summary judgment on their state wage and hour claims. The Court initially denied all motions (ECF No. 1102), but in response to a motion for clarification by Plaintiffs, entered judgment on one issue (ECF No. 1126).  The parties set about preparing the case for trial based on the claims in the Third Amended Complaint:  antitrust claims against all defendants, RICO claims against four Defendants, and FLSA and state law claims (including fraud, misrepresentation, consumer protection, and state wage claims) against six Defendants.  ECF No. 983.

Following the final pretrial conference, the Court referred the matter to Magistrate Judge Michael E. Hegarty for a settlement conference.  ECF No. 1138.  The parties mediated with Judge Hegarty on October 17, 2018, and engaged in further conversations in the weeks that followed.  On November 19, 2018 the parties reached agreement on the core terms of a settlement.  They negotiated the details over the holidays and finalized the Settlement Agreement on January 9, 2019.  ECF No. 1187.

In the allocation of settlement funds that class counsel[3] proposed and that the Court approved, participating class members' shares were calculated based on a few inputs, which included an amount based on the federal minimum wage, including overtime pay, and an additional amount if the *au pair* served in a state that had a higher minimum wage.  ECF No. 1189 at 5-7 and Appendix A.  Both calculations were based upon "Plaintiffs' theory of the case."  *Id.*, Appendix A.  The federal portion was consistent with their FLSA, RICO and antitrust claims, while the state portion was consistent with their state wage and hour and other claims.  Importantly, the calculation of a state amount was not limited to *au pairs* in states where there was a sub-class certified against their particular sponsor.  *Id.*

On January 23, 2019, the Court granted preliminary approval of the settlement, and approved the notice to class members.  ECF No. 1191.  Following distribution of that notice and further proceedings, including a fairness hearing, the Court entered its Amended Order Granting Final Approval of Class and Collective Action Settlement (the "Final Approval Order," ECF No. 1234).  The Court incorporated by reference the Final Approval Order into the Amended Final Judgment (ECF No. 1235).

The Release is contained in the Settlement Agreement and the Final Approval Order.  ECF No. 1190-1 § III; ECF No. 1234 ¶ 7.  It extends to any possible claims before the Effective Date (30 days after the August 1, 2019 Judgment, ECF No. 1190-1 ¶ 34) that arise out of or relate to, "any of the facts, acts, events, transactions,

---

[3] Class counsel included the lead attorney who has filed the instant Motion.

occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in" the litigation.  ECF No. 1234 ¶ 7.  The Released Parties include both the sponsors and host families.  *Id.*

**ARGUMENT**

**I.     THE AU PAIR PROGRAM CLAIMS ARE BARRED BY THE RELEASE**

The MD Plaintiffs ask the Court to address whether their claims fall within the scope of the release (the "Release") that the parties agreed to in the settlement, which the Court approved and restated in the Final Approval Order.  *See* Motion at 2, 15.  With respect to the MD Au Pair Program Claims, they do.

**A.     The Language of the Release Covers the MD Au Pair Program Claims**

The relevant language releases sponsors, host families, and others:

> from any and all causes of action . . . obligations . . . claims, liabilities and demands of whatever kind or character (each a "Claim"), known or unknown, arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in the Litigation, whether any such Claim was or could have been asserted by any Releasing Party . . .

ECF No. 1234 (Final Approval Order) ¶ 7.  Consistent with this Release, class members like the MD Plaintiffs were advised as part of the Court-approved notice plan that by filing a Claim Form *or by doing nothing*, they were giving up claims against sponsors and host families (among others).  ECF No. 1190-2 at 9-10 (Q. Nos. 15-16).

The MD Plaintiffs' FLSA, Maryland wage and hour, and breach of contract claims are all "related to" facts, acts, transactions, occurrences, and courses of conduct at issue in this litigation.  In their First Amended Complaint, the MD Plaintiffs claim that the

defendants violated the law and breached their agreements by failing to pay minimum

wage and overtime, failing to limit their work to childcare and childcare-related tasks,

and failing to facilitate the education requirements of the Au Pair Program.  ECF No.

1250-4 ¶¶ 118-55.  These are exactly the types of claims that were litigated and settled

in this case.  By way of example only:

- The Maryland Plaintiffs claim that they were not paid in accordance with federal and state minimum wage and overtime laws. ECF No. 1250-4 ¶¶ 26, 77, 100-101, 118-34.  This claim was central to the *Beltran* litigation. *See, e.g.*, ECF No. 983 ¶¶ 563, 565, 574-88, 611-48.

- The Maryland Plaintiffs claim that they were required to work more than 45 hours per week and were not fully compensated. ECF No. 1250-4 ¶¶ 6, 48-49, 135-40, 149.  At least four of the named Plaintiffs in *Beltran* alleged that they were required to work more than 45 hours per week.  ECF No. 983 ¶¶ 495, 503, 515, 518, 534.  Countless others asserted this claim during depositions and discovery.

- The Maryland Plaintiffs claim that they were required to do work outside the permitted childcare. ECF No. 1250-4 ¶¶ 47, 49, 51, 150.  Plaintiffs in *Beltran* also alleged that they were required to do housework and other activities that were outside the scope of permissible Au Pair Program responsibilities.  ECF No. 983 ¶¶ 386, 525.  Again, countless others asserted this claim during depositions and discovery.[4]

There can be no reasonable dispute: the MD Au Pair Program Claims fall squarely

within the scope of the claims in *Beltran* and the language of the Release.

There is a limited carve-out in the Release, but it does not apply to the MD Au

Pair Program Claims.  It provides that *au pairs* retained the right to pursue claims

against host families "if such claims are (i) unrelated to the Claims asserted in this

---

[4] In the interest of brevity, Cultural Care includes only a few examples based largely on the Third Amended Complaint.  If desired, Cultural Care could pull numerous additional examples from motions, other filings, depositions, and other discovery.

lawsuit or (ii) unrelated to host family obligations under the federal Au Pair Program requirements, *e.g.*, compensation, hours, education, or services required." ECF No. 1234 ¶ 7. The MD Plaintiffs' claims for additional compensation or benefits, or for being asked to perform additional tasks, are all related to the Claims in *Beltran* and to host family obligations under the Au Pair Program.[5]

Despite the plain application of the Release, the Motion searches for some basis to contend that claims do not fall within its scope. None of the MD Plaintiffs' arguments withstand scrutiny.

### 1.   Class Members Released Their Claims, Whether or Not They Were a Member of a State Subclass

The MD Plaintiffs assert that Maryland wage and hour claims are not precluded because there was no sub-class in Maryland against the MD Plaintiffs' sponsors. This argument fails because class members released all of their claims within the scope of the Release, not only claims that fit within certified subclasses. At no time was there any agreement to a patchwork of releases that varied from state to state depending on subclasses. Defendants would never have settled and paid $65.5 million for such an incomplete resolution. Nor does the language of the Release allow for such an interpretation. ECF No. 1234 ¶ 7. To the contrary, as explained above, the settlement allocation took into account the state minimum wage and Plaintiff's state law "theory of the case." ECF No. 1189 at App'x A).

---

[5] The MD Plaintiffs do not argue otherwise. They raise the carve-out (which they call the "Savings Clause") only with respect to the trafficking claims, which Cultural Care does not address in this response. Motion at 12.

### 2.      Class Members Released FLSA Claims

FLSA claims were likewise not exempted from the release.  Motion at 13-15.

Here again, the MD Plaintiffs' argument is inconsistent with Plaintiffs' allocation formula,

which took into account their "theory of the case," applying federal minimum wage and

overtime, which Plaintiffs were seeking in their FLSA claims.  ECF No. 1189 at App'x A.

In any event, the chronology makes clear that the parties included such claims:

- The Court granted Plaintiffs' motions for conditional collective action certification of FLSA claims on March 31, 2017.  ECF No. 525.

- Following distribution of notice, some *au pairs* opted in to the FLSA collective action by the April 19, 2018 deadline; many did not.[6]

- Between November 2018 and January 2019, the named Plaintiffs, acting on behalf of all class members, negotiated a settlement of the entire litigation.  The Release discharged any "Claim" (ECF No. 1234 ¶ 7), which includes any cause of action "for minimum wage, overtime, penalties, expenses, or other compensation (**including but not limited to Claims under the Fair Labor Standards Act**; state and local wage and hour laws . . .").  ECF No. 1190-1 ¶ 1(b) (emphasis added); *see also* ECF No. 1234 (Final Approval Order) ¶ 2 (adopting definitions from the Settlement Agreement).

- Notice was provided to the class, and class members were not bound by the Release if they opted out.  The MD Plaintiffs did not.

Under the plain language of the settlement and the Release, the MD Plaintiffs, like other

class members who did not opt out, are barred from bringing FLSA claims.

The MD Plaintiffs challenge this conclusion by pointing to language in the earlier,

FLSA conditional collective action Notice.  Motion at 14.  This argument fails given the

chronology.  In April 2018, when the FLSA opt-in period closed, any eligible *au pair* who

---

[6] On May 9, 2018, several Defendants moved to decertify the collective action.  *E.g.*, ECF No. 1068.  The Court never had to decide that motion in light of the settlement.

did not opt into the collective action did preserve their FLSA claims as of that date.  That is not disputed.  But later, the *au pairs* – both those who opted into the FLSA collective action, and those who did not – compromised their claims, as they were free to do pursuant to a Court-approved settlement.  There is nothing inconsistent or unfair about that order of events; it merely reflects the fact that as the case evolved, and when a settlement fund of $65.5 million became available, the class chose to settle.  *See, e.g.*, *Kuncl v. IBM*, 660 F. Supp. 2d 1246, 1249-52, 1254 (N.D. Okla. Sept. 23, 2009) (holding that a party who failed to opt-out of the Rule 23 class but did not opt-in to the FLSA collective action was barred from raising FLSA claims in a subsequent suit).

Finally, the MD Plaintiffs argue that applying the Release to FLSA claims would violate due process.  Not so.  The Court-approved notice provided a link to a website with the Settlement Agreement, which defined "Claim" – as used in the Release – to include FLSA claims.  ECF No. 1190-1.  The notice itself advised class members of the broad scope of the Release.  ECF No. 1190-2 at 9-10 (Q. No 16: "If you do nothing, you will receive no payment . . . **and** you will release your claims against the Defendants, as summarized in Question 15"; Q. No. 15: "That release will cover any and all cause of action . . . related to . . . this lawsuit"); *see Lucas v. JBS Plainwell, Inc.*, No. 1:11-cv-302, 2012 U.S. Dist. LEXIS 198181, at *19-22, 2012 WL 12854880 (W.D. Mich. Mar. 8, 2012).  The document went on to explain that by doing nothing they: "continue to be a member of the Class Action;" they "will not be able to sue, or continue to sue, any Defendant about the legal claims that are the subject of this lawsuit;" and they "will be legally bound by the orders and judgments . . . in this case."  ECF No. 1190-2 at 9-10.

Class members were on notice that the Release covered FLSA claims.[7]

### B. The "Identical Factual Predicate" Test Does Not Change This Outcome

The MD Plaintiffs attempt to sidestep the language of the Release, claiming (it appears) that regardless of the Release language, their claims are only precluded if they share an "identical factual predicate" with the claims in *Beltran*. This is a curious argument given that the MD Plaintiffs' attorney was class counsel when the class negotiated and agreed to the Release language. Regardless, the argument is of no moment with respect to the MD Au Pair Program Claims, because application of that doctrine would lead to the same result.

The one Tenth Circuit case that has recognized[8] the "identical factual predicate" test when considering whether to approve a settlement explained it as follows:

> Under the identical factual predicate rule, "a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)); *see Fager* [*v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1175 (10th Cir. 2016)]. Under this principle, "class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct*." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) (quoting *TBK Partners*, 675 F.2d at 460).

---

[7] Plaintiffs' reliance on *Lorenzo v. Prime Commc'ns L.P.,* No. 5:12-cv-69, 2017 U.S. Dist. LEXIS 40331 (E.D.N.C. Feb. 14, 2017) is misplaced. Motion at 15. The defendant there argued that FLSA claims were precluded by a settlement from a prior action that *did not include FLSA claims*. *Lorenzo*, 2017 U.S. Dist. LEXIS 40331, at *4, *19-20. Here, FLSA claims were alleged and included in the settlement. ECF No. 1187-1 at 10 ("'Claims' shall include . . . Claims under the Fair Labor Standards Act . . . .).

[8] Another judge in this Circuit has discussed the doctrine in dissent. *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1286-87 (10th Cir. 2022) (Rossman, J., dissenting).

*Elna Sefcovic, LLC v. TEP Rocky Mt., LLC*, 807 F. App'x 752, 765 (10th Cir. 2020). Thus, even when this doctrine has been found to apply, preclusion based on a release can be quite broad, if the factual predicate is the same.

As explained above, the key allegations underlying *Beltran* involved claims for failure to pay state and federal minimum wage, failure to pay overtime, and failure to follow Au Pair Program requirements, including by limiting responsibilities to childcare and childcare-related tasks and providing all required benefits.  The MD Au Pair Program Claims are necessarily based on the same factual predicate because they allege the same thing, and seek the same relief.  The test is met.[9]

The MD Plaintiffs attempt again to slice up the release, arguing that the nationwide classes certified with respect to RICO and antitrust claims do not share the same factual predicate as the claims they are now seeking to assert.  Like elsewhere, this argument runs counter to the language of the Release, which applies to all covered claims of class members (regardless of which subclasses they were in).  It also fails to acknowledge the substantial overlap in *Beltran* between the RICO and antitrust claims, and the wage and hour and related claims.

The *Beltran* plaintiffs claimed that there was an agreement to advertise the stipend amount of $195.75 – an amount which they said violated the FLSA and state

---

[9] The Settlement's New York choice of law clause (ECF No. 1187-1 ¶ 50) would result in the same conclusion because New York law considers "the purpose for which the release was actually given."  *Matter of Empire State Bldg. Ass'n, LLC.*, No. 654456/2013, 2014 NY slip op. 31900(U), at *4-6 (N.Y. Com. Div. July 17, 2014) (quoting *Cahill v. Regan*, 157 N.E.2d 505, 510 (N.Y. 1959)).

wage and hour laws – and that this agreement formed the basis of their RICO and antitrust claims. *See, e.g.*, ECF No. 983 at 83-84, 86-101, 235-39, 242, 601-03. Indeed, as Magistrate Judge Tafoya herself noted, one of Plaintiffs' theories of antitrust damage was "the failure to pay au pairs at least a minimum wage as prescribed by law." ECF No. 813 at 9 (endorsed by Plaintiffs in ECF No. 907 at 5-6). Plaintiffs calculated their RICO and antitrust damages using the difference between the au pair stipend of $195.75 and what they claimed were the lawful wages under the FLSA and/or applicable state wage and hour claims. Their expert witness William Kerr relied so heavily on the alleged state and federal wage violations that he named his predominant damages model the "Wage and Hour Compliance Model." *See, e.g.*, ECF No. 606. Kerr opined that his "Wage and Hour Compliance Model" supported *both* the wage and hour claims **and** the antitrust claims. ECF No. 606 at 9, Ex. V-1 (ECF 603-42), 275:16-21. RICO and antitrust were merely different causes of action attempting to recover the same alleged underpayment (plus penalties) as Plaintiffs' other claims, based on many of the same alleged facts.[10]

The single case that the MD Plaintiffs cite to the contrary, *Hesse v. Sprint Corp.*, 598 F.3d 581, 590-92 (9th Cir. 2010), does not support their argument. They contend that "the presence of nationwide RICO and antitrust classes in *Beltran*" cannot satisfy

---

[10] It makes no difference that host families were not defendants with respect to these claims. The alleged underpayment was the same amount whether plaintiffs sought it from the sponsors or from host families. Accordingly, it is not surprising that the sponsors negotiated that host families would be included in the release, to prevent class members from compromising their claims against sponsors, only to then seek the same relief again from host families (as the MD Plaintiffs are attempting here).

the "identical factual predicate rule."  Motion at 12-13.  But, *Hesse* does not stand for that proposition.  The *Hesse* court reached a fact-specific conclusion that class members could pursue state surcharge claims, despite earlier litigation that addressed nationwide surcharges, because "they deal with different surcharges, imposed to recoup different costs, that were alleged to be improper for different reasons."  *Hesse*, 598 F.3d at 591.  This conclusion was also based, in part, on the court's finding that the plaintiffs in the later action were not adequately represented by the class representatives in the earlier one.  *Id.* at 587, 589.  There was no special rule created that nationwide RICO and antitrust classes cannot release other claims.  Indeed, other courts have rejected the notion urged by the MD Plaintiffs that *Hesse* stands for the proposition that plaintiffs cannot release a broader body of claims as part of a class settlement.  *See, e.g.*, *In re Metro. Life Ins. Co. Sales Practices Litig.*, No. 10-38725, 2012 U.S. Dist. LEXIS 55101, at *31 n.15, 2012 WL 1378307 (W.D. Pa. Apr. 19, 2012).

\*     \*     \*

All class members released claims related to the *Beltran* litigation, against both sponsors and host families.  The Court should answer the question presented by the Motion by finding that the MD Au Pair Program Claims are covered by, and prohibited by, the plain language of the Release to which the parties and the class agreed, which the Court approved, and which the Court entered as a binding court order.

## II.     ALTERNATIVELY, CLAIM PRECLUSION BARS THE MD PLAINTIFFS FROM ASSERTING THE MD PAYMENT CLAIMS

The MD Plaintiffs' claims are also barred based on claim preclusion or "res judicata."  Settlement agreements "have claim-preclusive effect between the parties to

the settlement." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1271 (10th Cir. 2022) (citation omitted).  Claim preclusion prohibits a party from bringing a cause of action "when there is '(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.'" *Id.* at 1271, 1274 (quoting *Johnson v. Spencer*, 950 F.3d 680, 693 (10th Cir. 2020)). Applying this test, claim preclusion prohibits the MD Payment Claims from proceeding.

The first two prongs are not subject to dispute.  There was a final judgment in *Beltran*, and Plaintiff agrees that host families were included within the Release.[11] Thus, the test turns on the third prong – a comparison of the causes of action.

"Claims do not need to be identical to satisfy the third element of claim preclusion."  *Grays v. Granicus, LLC*, No. 18-cv-02271, 2019 U.S. Dist. LEXIS 66196, at *20, 2019 WL 1724075 (D. Colo. Apr. 18, 2019).  The Tenth Circuit "has adopted the transactional test . . . [which precludes] a claim arising out of the same 'transaction, or series of connected transactions' as a previous suit, which concluded in a valid and final judgment."  *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006) (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999)).  "[T]he same transaction or series of transactions is '. . . determined pragmatically, . . . [by considering] whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding . . . .'"  *Id.* (quoting *Yapp*, 186 F.3d at

---

[11] The MD Plaintiffs refer to Host Families as third-party beneficiaries.  Motion at 9.

1227); *Denver Homeless Out Loud*, 32 F.4th at 1274-75.

Numerous courts in this Circuit[12] have held that claims arising out of the employment relationship prior to the date of a release necessarily arise from the same transaction or occurrence, and are barred by res judicata.  *See Wilkes v. Wyo. Dep't of Emp. Div. of Lab. Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (collecting cases for the proposition that "all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes" (citation omitted)); *see also Grays*, 2019 U.S. Dist. LEXIS 66196, at *21 (quoting *Wilkes* for the same proposition).  But whether or not that principle controls, for the reasons set forth above, the MD Au Pair Program Claims and the claims in *Beltran* are focused on the same facts and allegations.  As a result, claim preclusion applies.[13]

## CONCLUSION

For the reasons stated herein, Cultural Care respectfully requests that this Court find that class members like the MD Plaintiffs are precluded from asserting FLSA, state wage and hour, and breach of contract claims from during the class period because they compromised and released those claims as part of the settlement.

---

[12] Federal law determines the res judicata effects of a federal court judgment. Restatement (Second) of Judgments § 87 (Am. L. Inst.1982).

[13] Claim preclusion also applies to class members' FLSA claims.  "[T]he FLSA provides no exception to normal *res judicata* principles."  *Kuncl*, 660 F. Supp. 2d at 1254; *Lucas*, 2012 U.S. Dist. LEXIS 198181, at *16, *27-28.

Respectfully submitted this 23rd day of December, 2022

/s/  Justin J. Wolosz
Joan A. Lukey (joan.lukey@choate.com)
Justin J. Wolosz (jwolosz@choate.com
Lyndsey M. Kruzer (lkruzer@choate.com)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Telephone:  (617) 248-5000

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on December 23, 2022, I caused to be electronically filed the foregoing joinder with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/  Justin J. Wolosz

11145705